

1    O'MELVENY & MYERS

2    433 SOUTH SPRING STREET

3    LOS ANGELES, CALIFORNIA

4    MICHIGAN 2611

5    Attorneys for Answering
         Defendants.

6

7

8              IN THE UNITED STATES DISTRICT COURT

9        IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10                    SOUTHERN DIVISION

11

12   UNITED STATES OF AMERICA,     )         No. 1247

13              Plaintiff,          )    SEPARATE ANSWER OF DE-
                                         FENDANTS MARY VAIL WILKINSON,
14              v.                  )    MAHLON VAIL, EDWARD N. VAIL,
                                         MARGARET VAIL WISE AND NITA
15   FALLBROOK PUBLIC UTILITY       )    M. VAIL, TRUSTEES.
     DISTRICT, etc., et al.,        )
16
                                    )
17              Defendants.         )

18

19        Defendants Mary Vail Wilkinson, Mahlon Vail, Edward

20   N. Vail, Margaret Vail Wise and Nita M. Vail, as Trustees

21   under that Indenture of Trust dated December 31, 1912, re-

22   corded, among other places, in Book 371, page 279, of Deeds,

23   Riverside County Records, as from time to time thereafter

24   amended (also sued herein as Vail Company, a corporation),

25   severing themselves from their codefendants and answering for

26   themselves alone, for answer to the complaint herein, admit,

27   deny and allege as follows:

28

29                      FIRST DEFENSE

30        1.  Allege they are without knowledge or information

7282

1    sufficient to form a belief as to the truth of the allegations

2    contained in Paragraph II of the complaint, except they admit

3    that Camp Joseph H. Pendleton located near Oceanside, California,

4    the United States Naval Ammunition Depot, Fallbrook, California,

5    and the United States Naval Hospital located at Camp Joseph H.

6    Pendleton, situated in the Counties of San Diego and Orange,

7    State of California, are military establishments of the United

8    States of America; sites for these military establishments were

9    acquired by the United States of America in the years 1941, 1942

10   and 1943, and comprise approximately 135,000 acres of land in

11   said counties and state and fee simple title to said properties

12   now resides  in the United States of America.

13

14        2.  Allege they are without knowledge or information

15   sufficient to form a belief as to the truth of the allegations

16   contained in Paragraph III of the complaint.

17

18        3.  For answer to Paragraph IV of the complaint allege

19   that the Santa Margarita River is a  source of supply of water

20   for Camp Joseph H. Pendleton and the military establishments

21   located thereon.  Said stream, which is known in its upper

22   reaches as the Temecula River, is a non-navigable stream of fresh

23   water which rises near or on the northerly slope of Palomar

24   Mountain in San Diego County, California, approximately 17 miles

25   easterly of the boundary between Riverside County and San Diego

26   County, California.  Said river, fed by numerous tributaries,

27   flows in a general northwesterly direction through the lands of

28   these answering defendants and thence in a general southwesterly

29   direction approximately 25 miles to the Pacific Ocean.  Said

30   river and its tributaries flow partly on the surface and partly

7283

under the surface.    Underlying said river and its tributaries
are numerous underground basins composed of pervious materials,
sands, gravel, boulders and other fluvial deposits, the exact
depths of which are  unknown to these answering defendants.
No portion of any of said basins which underlie said river where
it crosses the lands of plaintiff herein underlie any portion
of said river where it crosses the lands of these answering de-
fendants.   Admit that said river in its course traverses ap-
proximately 21 miles of the property of plaintiff.  Admit there
are no water users below Camp Joseph H. Pendleton on said stream
and that the plaintiff owns the lands the entire distance from
the point where the Santa Margarita River enters upon plain-
tiff's property to the point where the river bed enters the
Pacific Ocean.  Deny that these answering defendants or any of
them have in any way encroached upon any rights plaintiff may
have in the waters of said river.  Deny that any acts of these
answering defendants, or any of them, have damaged in any way
any rights or property of plaintiff.

        4.  For answer to Paragraph V of the complaint allege
that after the trial therein referred to, the decision of the
trial court was reversed by the Supreme Court of the State of
California in the case of <u>Rancho Santa Margarita v. Vail</u>, re-
ported in 11 California Reports, Second Series, pages 501-566
inclusive.  Thereafter and as a result of negotiation between
the parties, Rancho Santa Margarita, a corporation, the prede-
cessor of plaintiff herein, and these answering defendants
stipulated to the entry of a judgment, a copy of which marked
Exhibit A is attached hereto and made a part hereof.   Said
judgment was duly entered December 27, 1940.   These answering

7284

1    defendants and each of them deny that said stipulated judgment

2    was premised upon the findings of the trial court or the deci-

3    sion of the Supreme Court of the State of California in that

4    case. These answering defendants allege that the rights of the

5    plaintiff herein and of these answering defendants were and are

6    fixed and determined by said  judgment.

7

8         5.  For answer to Paragraph VI of the complaint allege

9    that all of the rights, titles, interests and privileges of

10   plaintiff and of these answering defendants are fixed, deter-

11   mined and declared in said judgment and said judgment is binding

12   upon plaintiff herein as the successor in interest of Rancho

13   Santa Margarita, a corporation.

14

15        6.  Allege they are without knowledge or information

16   sufficient to form a belief as to the truth of the allegations

17   contained in Paragraph VII of the complaint.

18

19        7.  Allege they are without knowledge or information

20   sufficient to form a belief as to the truth of the allegations

21   contained in Paragraph VIII of the complaint, except that these

22   answering defendants specifically deny that plaintiff has a

23   paramount right to any water from the Santa Margarita River and

24   deny that plaintiff has any rights in or to the waters of the

25   Santa Margarita River other than those set forth in said judg-

26   ment, Exhibit A attached hereto and made a part hereof.

27

28        8.  For  answer to Paragraph IX of the complaint deny

29   that these answering defendants have in any way violated any

30   of the rights of plaintiff as therein alleged, or at all.

4

| | |
|---|---|
| Cosgrove & O'Neil,<br>1031 Rowan Building,<br>458 South Spring St.,<br>Los Angeles, Calif.<br>   Trinity 6656.<br>Attorneys for Plaintiff. | O'Melveny & Myers,<br>900 Title Insurance Building,<br>433 South Spring St.,<br>Los Angeles, Calif.<br>   Michigan 2611.<br>Attorneys for Defendants. |

Entered:  Judgment Book 115
          Page 101 - Dec. 27, 1940
Docketed - 26-Page 174

FILED
Dec. 26, 1940
J. B. McLEES, Clerk
By J. G. Graebele

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

RANCHO SANTA MARGARITA,
a corporation,

                    Plaintiff,

          vs.

N. R. VAIL, MARY VAIL WILKINSON,
MAHLON VAIL, EDWARD N. VAIL,
MARGARET VAIL BELL, THE VAIL
COMPANY, an association of persons
transacting business under that
common name, N. R. VAIL, MARY VAIL
WILKINSON, MAHLON VAIL, EDWARD N.
VAIL and MARGARET VAIL BELL, as
Trustees of said Vail Company,
MAHLON VAIL, Executor of the Estate
of Margaret R. Vail, Deceased, and
LAURA PERRY VAIL, Executrix of the
Estate of William Banning Vail,
Deceased,

                    Defendants.

GUY BOGART, LUCY PARKMAN BOGART
and FRED REINHOLD, Executors of
the Will of Murray Schloss, de-
deased, and PHILIP PLAYTOR,

                    Interveners.

No. 42850

STIPULATED JUDGMENT

This cause came on regularly for trial in the above entitled court and department thereof on Monday, October 18, 1926, at the hour of 10:00 o'clock A.M., before the court, Honorable L. D. Jennings, Judge, presiding;  Messrs. Hunsaker, Britt & Cosgrove appearing as attorneys for plaintiff, Messrs. Haas & Dunnigan, Messrs. Ward, Ward & Ward, Messrs. Stephens & Stephens, and

EXHIBIT A

7288

1   Messrs. O'Melveny, Milliken & Tuller appearing as attorneys for

2   defendants, and Walter Gould Lincoln, Esq. appearing as attorney

3   for interveners.  The introduction of evidence, oral and documen-

4   tary, being completed, arguments, oral and in writing, having been

5   submitted, the court having considered the same and being fully

6   advised in the premises, findings of fact and conclusions of law

7   having been signed by the court and filed with the clerk thereof,

8   and judgment on said findings and conclusions having been signed

9   and entered; defendants and each of them thereupon appealed from

10  said judgment and from each part thereof, but said interveners

11  did not appeal from said judgment; the Supreme Court of said State

12  of California upon said appeal having reversed said judgment and

13  directed a new trial upon certain issues designated in the opinion

14  of said court reported Rancho Santa Margarita, a corporation, vs.

15  Margaret R. Vail, et al., L. A. No. 15078, 11 Cal. (2d) 501,

16  and said plaintiff and defendants having stipulated to the entry

17  of the following judgment,

18        Now, Therefore, IT IS ORDERED, ADJUDGED AND DECREED that:

19

20        Section First:  The plaintiff, Rancho Santa Margarita, a cor-

21  poration, and defendants, N. R. Vail, Mary Vail Wilkinson, Mahlon

22  Vail, Edward N. Vail, Margaret Vail Bell, The Vail Company, an

23  association of persons transacting business under that common name,

24  N. R. Vail, Mary Vail Wilkinson, Mahlon Vail, Edward N. Vail and

25  Margaret Vail Bell, as Trustees of said Vail Company, Mahlon Vail,

26  Executor of the Estate of Margaret R. Vail, Deceased, and Laura

27  Perry Vail, Executrix of the Estate of William Banning Vail,

28  Deceased, and interveners, Guy Bogart, Lucy Parkman Bogart and

29  Fred Reinhold, Executors of the Will of Murray Schloss, Deceased,

30  and Philip Playtor, have and each has rights in and to the waters

31  of the Temecula-Santa Margarita River and its tributaries, and

32  in and to the use of said waters for all beneficial and useful

2.

7289

1   purposes on their respective lands herein more specifically

2   described.

3      Section Second:  The plaintiff is entitled to take and use

4   upon the whole or any part of its lands lying within the Rancho

5   Santa Margarita y Las Flores, San Diego County, California,

6   sixty-six and two-thirds per cent (66-2/3%) of the water of said

7   Temecula-Santa Margarita River and all its tributaries which

8   naturally, when not artificially diverted or abstracted, flows and

9   descends in the channel thereof at that certain joint gauging

10   station hereinafter in this judgment designated as Measuring

11   Station No. Six (6).

12      Section Third:  Defendants are entitled to take and use upon

13   the whole or any part of their lands hereinafter mentioned,

14   thirty-three and one-third per cent (33-1/3%) of the water of said

15   Temecula-Santa Margarita River and all its tributaries which

16   naturally, when not artificially diverted or abstracted, flows and

17   descends in the channel thereof at that certain joint gauging

18   station hereinafter designated as Measuring Station No. Six (6).

19      The lands of the defendants herein referred to consist

20   of those certain lands in Riverside County, California, known as

21   Pauba Grant, Lots A, B, C, and D of Little Temecula Grant, or

22   Rancho as shown on the Wolf partition map of Little Temecula Grant

23   as described in the final decree of partition in the case of

24   William Wolf vs. Ramona Wolf, being Case No. 5756 in the Superior

25   Court of San Diego County, State of California, said final decree

26   of partition being recorded in Book 199 of Deeds, page 464, et seq.,

27   records of San Diego County, California, the southeasterly approx-

28   imately one-half of Temecula Grant, excluding therefrom the town

29   site of the unincorporated city or town of Temecula and the various

30   parcels of land owned by persons other than the defendants herein,

31   as shown by map entitled "Triangulation Map of Pauba Ranch and

32   Vicinity, Riverside County" received in evidence in this case and

1   marked "Plaintiff's Exhibit No. U-4", which exhibit has been

2   incorporated into and constitutes a part of the Transcript on

3   Appeal in this action, (reference is hereby made to said

4   Transcript and to said Exhibit No. U-4 and by such reference said

5   exhibit is incorporated into and constitutes a part of this judg-

6   ment), Santa Rosa Grant, and Vail government lands, which said

7   Vail government lands, approximately four hundred sixty (460)

8   acres in area, are more particularly described as:  Those certain

9   lands lying within sections twenty-one (21), twenty-seven (27),

10  twenty-eight (28) and twenty-nine (29) of Township Eight (8) South,

11  Range Two (2) west, S. B. B. M., Riverside County, California, and

12  being more particularly identified as Lots Nineteen (19), Twenty

13  (20), Twenty-one (21), Twenty-six (26), Twenty-seven (27), Thirty

14  (30) and Thirty-one (31) of Block Fifteen (15), and those portions

15  of Lots Seventeen (17) and Eighteen (18) of said Block Fifteen(15)

16  lying without but contiguous to the southeasterly boundary of

17  Lot D of said Little Temecula Grant.

18      Section Fourth:  The intervener Philip Playtor is entitled

19  to take and use upon the whole or any part of his lands riparian

20  to said Temecula-Santa Margarita River, as hereinafter delineated

21  and defined, one (1) miner's inch continuous flow of the waters

22  of said Temecula-Santa Margarita River.  The lands of said Philip

23  Playtor riparian to said river are described as follows:  The

24  northwest one-quarter (NW 1/4) of the southeast one-quarter (SE-1/4)

25  and the south one-half (S 1/2) of the south one-half (S 1/2) of

26  section thirty-three (33) and the southwest one-quarter (SW 1/4)

27  of the southwest one-quarter (SW 1/4) of section thirty-four (34),

28  Township Eight (8) South, Range Three (3) West, S. B. M., Riverside

29  County, California.

30      Section Fifth:  The interveners Guy Bogart, Lucy Parkman

31  Bogart and Fred Reinhold, as executors under the will of Murray

32  Schloss, deceased, own certain real property in San Diego County,

7291

California, of which approximately twenty (20) acres are riparian
to a certain tributary of said Temecula-Santa Margarita River by
the name of Stone Creek and are susceptible of practical and
profitable irrigation with the waters of said creek, said approx-
imately twenty (20) acres being described as follows:  The south
one-half (S 1/2) of the northeast one-quarter (NE 1/4) of the
northeast one-quarter (NE 1/4) of Section four (4), Township Nine
(9) south, Range Three (3) west, S. B. M., San Diego County, in
said state.  Said interveners are entitled to take from the surface
and subsurface waters of said Stone Creek and use the same on said
twenty (20) acres riparian to said Stone Creek, throughout said
dry or irrigation season of each calendar year and from the 1st
day of May of each year until the 31st day of October of the same
calendar year, the entire flow of the waters of said Stone Creek
and all its tributaries which naturally, when not artificially
diverted or abstracted, flows or descends in the channel thereof
to and upon said twenty (20) acre parcel; and are entitled to take
from said Stone Creek, during the rainy or winter season of each
year, for use upon said twenty (20) acres of riparian land for all
beneficial purposes, five (5) miner's inches continuous flow.

Section Sixth:  The waters of said stream and its tributaries
herein apportioned to the interveners shall be deducted from the
fractional part of the waters of said stream herein allotted to
plaintiff.

Section Seventh:  For the purpose of dividing among, and
allocating to, the parties to this action, the waters of the
Temecula-Santa Margarita River and its tributaries, at the places
and in the amounts specified in this judgment, the plaintiff and
the defendants immediately shall establish, and thereafter shall
maintain jointly (unless established and/or maintained by U.S.
Geological Survey, Division of Water Resources, State Department
of Public Works, or other public body), stream-flow (automatically

7292

1   registering) gauging stations at the following three locations on
2   the Temecula-Santa Margarita River;
3       Station No. One (1):  The upper end of Nigger Canyon at or
4   near the present location of the Nigger Canyon gauging station;
5       Station No. Three (3):  The upper end of Temecula Gorge, im-
6   mediately downstream from the confluence of Murrieta Creek, at or
7   near the present location of the Temecula Gorge gauging station;
8       Station No. Six (6):  The Narrows, at or near the present
9   location of the Ysidora gauging station.
10      And plaintiff and defendants shall establish and main-
11  tain jointly (unless established and/or maintained by U. S.
12  Geological Survey, Division of Water Resources State Department
13  of Public Works, or other public body), gauging stations for
14  measuring (and automatically registering) the surface flow of said
15  stream, or any of its tributaries, at any point thereon where the
16  plaintiff, the defendants, or the interveners, or any of them,
17  hereafter may construct or maintain appliances for the diversions
18  of the surface flow of said stream, or any of its tributaries.
19  (The cost of establishing and maintaining joint gauging stations
20  as are required hereunder, including the taking of measurements
21  and observations thereof, shall be borne equally by the plaintiff
22  and the defendants.)
23      Each party shall establish and maintain meters to deter-
24  mine and automatically register the amount of the underground
25  waters abstracted or diverted by such party from the underground
26  waters of Temecula-Santa Margarita River and/or its tributaries by
27  means of wells, either artesian or pumped (except windmill wells
28  and/or domestic use wells of the parties and/or their tenants);
29  such meters shall be of a type which will meet the approval of both
30  plaintiff and defendants or the approval of either party and the
31  engineer in charge of the Los Angeles office of the U.S. Geological
32  Survey, and shall be installed and maintained in such manner and

7293

1    place as to be available for inspection by either plaintiff or

2    defendants at all times.

3        Section Eighth:  Whenever the total normal flow of said

4    Temecula-Santa Margarita River (when not artificially diverted or

5    abstracted) measured at Gauging Station No. Three (3) exceeds

6    the total normal flow measured at Gauging Station No. Six (6),

7    then and in that instance the flow of said stream at said Gauging

8    Station No. Three (3) shall be considered as the total flow

9    of said stream, and at such time the apportionments and allotments

10   herein provided for shall be predicated upon the flow of said

11   stream at said Gauging Station No. Three (3).

12       Section Ninth:  For the purpose of apportioning to defendants

13   thirty-three and one-third per cent (33-1/3%) of the waters of

14   said stream as in Section Third provided, it shall be deemed that

15   an amount of water equal to one-half (1/2) the surface flow at

16   Station No. Six (6) or Station No. Three (3), wherever the flow

17   is the greater (as provided in Section Eighth), pumped and/or

18   diverted from the subsurface and/or surface waters of said river

19   at points upstream from said Station No. Three (3), shall consti-

20   tute thirty-three and one-third per cent (33-1/3%) of the waters

21   of said stream.

22       It is recognized that the practical operation of the

23   various pumping plants upon defendants' lands for irrigation

24   makes it difficult, if not impossible, for defendants to abstract

25   and divert each day an amount of water the exact equivalent of

26   the proportion of the stream flow measured at Station No. Six (6)

27   or Station No. Three (3) to which defendants are entitled under

28   this decree.  Accordingly, whenever it is observed that defendants

29   are abstracting and diverting, or have abstracted and diverted,

30   surface and/or underground waters in amounts in excess of that to

31   which they are entitled hereunder, defendants, upon learning or

32   being informed of such fact, thereupon shall reduce their

7294

1 diversions below the amount to which they are entitled under this

2 decree, and shall continue such reduced diversions for the same

3 period of time as near as is practicable and in an amount equiv-

4 alent to the amount of water which defendants had diverted in

5 excess of that to which they were entitled under this decree.

6     Section Tenth:  In addition to the thirty-three and one-third

7 per cent (33-1/3%) of the waters of said stream herein in Section

8 Third allotted to defendants, they may also divert or abstract from

9 the underground waters of said Temecula-Santa Margarita River, but

10 not from the surface waters of said stream, at the places, during

11 the times and upon the conditions hereinafter in this Section

12 specifically set forth, but not otherwise, a specified amount of

13 subsurface water herein in this judgment referred to as "Storage

14 Water". The amount of Storage Water which the defendants may

15 divert or abstract during any irrigation season shall be determined

16 by the elevation of water (when not artifically disturbed) on

17 May 1st of each year in a certain well located on defendants'

18 land known as Windmill Well, in accordance with the following

19 table:

| Depth to water below ground surface as shown in casing of Windmill Well on May 1st | Amount of Storage Water defendants may divert and apply to beneficial use during irrigation season |
|---|---|
| 20 feet or less | 1,500 acre feet |
| 30 feet | 1,125 acre feet |
| 40 feet | 750 acre feet |
| 50 feet | 375 acre feet |
| 60 feet or more | No acre feet |

28 At depths to water intermediate to those above stated proportionate

29 quantities of water may be taken.

30     The spreading of flood water which does not involve

31 surface impoundment (either temporary or otherwise) but which may

32 raise the level of water in the underground basin in which said

8.

1  Windmill Well is drilled and upon which said well is located, shall

2  not be considered as an artificial disturbance of the elevation of

3  water in said Windmill Well.  Storage water may be diverted and

4  used only upon said lands of defendants hereinbefore described and

5  not elsewhere.

6      For the purpose of indicating the places at which said

7  Storage Water may be pumped, reference is hereby made to "Plain-

8  tiff's Exhibit No. 265".  Said Exhibit by reference has been in-

9  corporated into and constitutes a part of the Transcript on Appeal

10  in this action.  Reference is hereby made to said Transcript and to

11  said Exhibit No. 265 and by such reference said Exhibit is incor-

12  porated into and constitutes a part of this judgment.

13      Shown upon said Exhibit No. 265, and extending in a

14  generally northerly and southerly direction, is a certain line of

15  wells (hereafter referred to as the E line of wells) designated

16  on said Exhibit as E-3 North, E-2 North, E-1 North, E-1 South,

17  and E-2 South.

18      Easterly thereof, shown upon said Exhibit, and extending

19  in a generally northwesterly and southeasterly direction, is a

20  certain line of wells (hereafter referred to as the P.V. line of

21  wells) designated on said Exhibit as P.V. 9, P.V. 6, and P.V. 6X.

22  Immediately adjacent to said P.V. line of wells, and parallel

23  thereto, is a certain highway commonly known as Old Warners Ranch

24  Road (now not in common use).

25      (a)  Not more than thirty per cent (30%) of said Storage

26  Water which defendants are entitled to pump during any irrigation

27  season may be pumped from that portion of defendants' lands lying

28  between a line drawn through said E line of wells and extended

29  across said underground basin, and a line drawn through said P.V.

30  line of wells and extended across said basin.

31      (b)  At least seventy per cent (70%) of said Storage Water

32  which defendants are entitled to pump during any irrigation season

9.

7296

1  shall be pumped from that portion of defendants' lands lying

2  easterly of a line drawn through said P.V. line of wells and ex-

3  tended across said underground basin.

4  The well hereinabove described as Windmill Well is

5  situated on Pauba Grant South sixty-seven degrees fifteen minutes

6  (S 67° 15') East of B.M. 11 a distance of approximately eleven

7  hundred (1100) feet, and South forty-seven degrees twenty minutes

8  (S 47° 20') West of B.M. 12 a distance of approximately fifteen

9  hundred eighty (1580) feet, said bench marks being designated as

10  Nos. 11 and 12 on said Exhibit No. 265.

11  Should said Windmill Well collapse or otherwise cease to

12  be available or useful for the purpose of determining ground water

13  elevations in the vicinity thereof, then another well shall be

14  drilled by the defendants in the same general location, at approx-

15  imately the same ground surface elevation above sea level, but not

16  to exceed a distance of one hundred (100) feet from the location

17  of said Windmill Well.  Such new well shall be approximately the

18  same depth and diameter of casing as said Windmill Well.  In event

19  the parties hereto are unable to agree upon location, depth and

20  diameter of casing of such well, these matters, upon petition of

21  the parties hereto or either of them, shall be determined by order

22  of this court.

23  For the purpose of determining defendants' total diver-

24  sions of the waters of the Temecula-Santa Margarita River and its

25  tributaries (meaning thereby to include both the allotment of

26  thirty-three and one-third per cent (33-1/3%) of the waters of the

27  river as defined in Section Third, and the additional Storage Water

28  as defined in this Section Tenth hereof), any water abstracted or

29  diverted by defendants from the underground waters of said river

30  (including underground basins of percolating water within the

31  watershed of said river and its tributaries) by use of wells or

32  pumps or other means of diversion, whether now existing or hereafter

7297

established, except as hereinafter in this section provided, shall

be added to any surface diversions by the defendants from the waters

of said river.  Such abstractions by the defendants of the under-

ground waters of the Temecula-Santa Margarita River are, and for

all purposes of this judgment shall be (except as hereinafter pro-

vided) considered as diversions of the waters of said river, and

are and shall be chargeable against the fractional part of the

surface flow of said stream and the additional amount of Storage

Waters herein allotted to defendants.

Waters abstracted or diverted from said underground

waters of said river which shall not be subject to the provisions

of this section are as follows:

1.  Windmill wells maintained by defendants for the

purpose of supplying water for cattle;

2.  Water used by defendants or their tenants for domestic

use exclusively (but not including any irrigation use);

3.  Waters which defendants may pump directly into the

surface flow of said stream pursuant to the requirements of

Section Eleventh hereof.

Section Eleventh:

Part I.  During the irrigation season of each year, to wit,

May 1 to October 31, inclusive, excepting as otherwise in Part I

of this Section permitted, defendants shall cause to be maintained

at Gauging Station No. Three (3) a constant surface flow of

water of not less than three (3) cubic feet per second (one (1)

cubic foot per second being the equivalent of fifty (50) miner's

inches.)

The surface flow at said Station No. Three (3) may

be permitted to fall below three (3) cubic feet per second during

said irrigation season upon the following conditions and not

otherwise:

1.  Said surface flow shall not be permitted to fall

11.

1  below three (3) cubic feet per second for any continuous period

2  of more than ten (10) days;

3      2.  An interval of at least ten (10) days shall elapse

4  between periods during which said surface flow falls below three

5  (3) cubic feet per second.

6      3.  Defendants shall contribute to the surface flow at

7  Station No. Three (3), by means of pumping from Temecula Alluvial

8  Basin, or otherwise, an amount of water equal to the amount that

9  the actual flow during said period was less than the required

10  flow of three (3) second feet;

11      4. Such contribution shall be made at the same rate and

12  over the same period (as near as is practicable) as the rate at

13  which said surface flow was less than three (3) second feet;

14      5. Such contribution shall be made immediately following

15  the period in which said required flow of three (3) second feet

16  was not maintained;

17      6. Defendants by means of pumping underground waters directly

18  into the surface flow of the stream or otherwise during any period

19  in which said required flow of three (3) second feet was not

20  maintained, shall always maintain a constant surface flow at

21  Station No. Three (3) of not less than two (2) second feet.

22      Part II.  In the event that, during the irrigation season of

23  any year, to wit, May 1 to October 31, inclusive, the irrigation

24  of crops on said lands of defendants reasonably requires more

25  water than they otherwise are entitled to take under this decree,

26  defendants may abstract and divert underground waters only, in

27  amounts in excess of that to which they are otherwise entitled

28  hereunder.  Such excessive diversions may be made upon the follow-

29  ing conditions and not otherwise:

30      1.  Excessive diversions shall not continue for a period

31  to exceed eight (8) days consecutively.

32      2.  Following any period of excessive diversion, an

7299

interval shall elapse before any further period of excessive
diversion, which interval shall be not less than the number of
days during the period of excessive diversions immediately pre-
ceding;

3. Defendants shall reduce their diversions below the
amount to which they are otherwise entitled under this decree,
such reductions to be in an amount not less than the amount of
water which defendants have diverted in excess of that to which
they are otherwise entitled under this decree;

4. Such reduction of their diversions shall be made by
defendants immediately following the period during which such
excessive diversions were made and shall be completed within
ten (10) days thereafter;

5. Defendants, at least one (1) day in advance of the
commencement of such excessive diversions, shall advise plaintiff
in writing of their requirement and of their intention to avail
themselves of the privilege of excessive diversions afforded
under Part II of this Section.

Parts I and II of this Section Eleventh are complementary
one of the other and not inconsistent one with the other and here-
after shall be so construed. The purpose of Part I is to require
defendants to maintain a constant flow at Station No. Three (3)
of not less than three (3) cubic feet per second excepting under
the conditions stated when the flow may be permitted to fall below
three (3) cubic feet per second but not below two (2) cubic feet
per second, and when such diminution of the stream flow occurs
the amount of such diminution shall be contributed by the defend-
ants by pumping directly into the surface flow of the stream from
the Temecula Alluvial Basin or otherwise. Part II permits defend-
ants under the conditions stated to use for short periods amounts
of water in excess of their allotment but requires them to con-
tribute shortly thereafter the amount of such excessive diversions

13.

7300

1  by reducing (in an amount not less than the amount of such

2  excessive diversions) the amount of the diversions to which they

3  are otherwise entitled.  No part of such excessive diversions is

4  required to be contributed by defendants through direct pumping

5  from the subsurface waters of the Temecula Alluvial Basin into

6  the surface flow of the stream if, during the period of such

7  excessive diversions, the constant stream flow at Station No.

8  Three (3) equals or exceeds three (3) second feet.

9      Section Twelfth:  Defendants at all times shall be entitled

10 to divert from the Temecula-Santa Margarita River and its tribu-

11 taries, and to apply to beneficial use upon their said lands, an

12 amount of water equal to one-half the amount which the plaintiff

13 is entitled to divert from said river and its tributaries and

14 apply to beneficial use upon its lands.

15      For the purpose of determining the amount of water which

16 defendants are entitled to divert and apply to such beneficial

17 use, computations of the amount of water diverted and applied to

18 beneficial use by each of the parties hereto shall be made

19 monthly, based on joint measurements maintained as herein re-

20 quired.  In the event said measurements disclose that the amount

21 of water which defendants are entitled to divert and apply to

22 beneficial use pursuant to the provisions of this judgment is

23 less than one-half the amount being applied to beneficial use by

24 plaintiff, thereupon defendants shall be entitled to increase

25 their diversions and applications to beneficial use to an amount

26 sufficient to make defendants' diversions and applications to

27 beneficial use equal to one-half the amount diverted and applied

28 by plaintiff; provided, however, that such additional diversions

29 and applications, if and when made, shall be in addition to

30 diversions made under Sections Third and Tenth hereof, and shall

31 be made by defendants during the irrigation season in which such

32 right accrues, or in the first subsequent season, or part in the

7301

1  same season and the remainder in the first subsequent season, and

2  such diversions, if any, shall be made by pumping from the under-

3  ground basin at points easterly from said P.V. line of wells.

4      Section Thirteenth:  Each of the parties hereto shall have

5  the right to construct dams or reservoirs on its or their

6  respective lands or elsewhere, for the purpose of intercepting or

7  impounding or conserving such party's share of the flood waters of

8  said river and its tributaries; provided, however, in the event any

9  such dam or reservoir is hereafter constructed by defendants for

10  such purpose, the rights of defendants to abstract and divert

11  Storage Water pursuant to Section Tenth hereof shall cease and

12  terminate.

13      Defendants shall not make, during any irrigation season,

14  any surface diversions of the waters of said river at the Bridge

15  Pumping Plant, the Cantarini Pumping Plant or the Tule Pumping

16  Plant referred to in the Findings herein, or at any other point on

17  said Temecula-Santa Margarita River below the point of Rising Water

18  as shown on said Exhibit No. 265.

19      Section Fourteenth:  The plaintiff, Rancho Santa Margarita,

20  a corporation, shall have and recover of and from the defendants,

21  its costs and disbursements herein taxed at Six Thousand Thirty-

22  six and 62/100 Dollars ($6,036.62).

23      Dated at San Diego, California, this 26 day of December,

24  1940.

25

26                      GORDON THOMPSON

27                          JUDGE.

28

29

30

31

32

7302