1   ERNEST A. TOLIN
    United States Attorney
2
    BETTY MARSHALL GRAYDON
3   Assistant U. S. Attorney
    325 West "F" Street
4   San Diego 1, California
       Telephone: F 9-4101
5
    Attorneys for Plaintiff
6

**FILED**

MAR 26 1951

EDMUND L. SMITH, Clerk

_Minton_

**DEPUTY CLERK**

7               IN THE UNITED STATES DISTRICT COURT

8           IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

9                       SOUTHERN DIVISION

10

11   UNITED STATES OF AMERICA,           )
12                     Plaintiff,         )
                                          )
13            v.                          )        No. 1247 – Civil
                                          )
14   FALLBROOK PUBLIC UTILITY             )
     DISTRICT, a public service          )
15   corporation of the State of         )
     California, SANTA MARGARITA         )
16   MUTUAL WATER COMPANY, a pub-        )
     lic service corporation of         )
17   the State of California,            )
     et al.,                            )
18                     Defendants.        )

19

20      MEMORANDUM OF THE UNITED STATES OF AMERICA IN OPPOSITION

21      TO THE MOTION OF DEFENDANT TO DISMISS; MOTION TO STRIKE

22      AND FOR AN ORDER TO FILE A MORE DEFINITE STATEMENT

23

24          The United States of America has filed with this Court a

25   complaint seeking to quiet title to highly valuable rights to the use of

26   water from the Santa Margarita River acquired for military purposes,

27   to enjoin interference with those rights and for other relief.  Defendant

28   has moved to dismiss that complaint, to strike certain aspects of it

29   and for a more definite statement.  In the succeeding paragraphs the

30   United States responds in opposition to those motions and the authorities

31   which defendant cites.

32

82

- 1 -

1    In these terms Chief Justice Marshall declared the nature and

2 outlined the authority of the National Government: "If any one proposition

3 could command the universal assent of mankind, we might expect it would be

4 this - that the government of the Union, though limited in its powers, is

5 supreme within its sphere of action."  [1]  As authority for that declaration

6 Chief Justice Marshall referred to the organic law of this country which

7 provides that:

8       "This Constitution, and the Laws of the United States
        which shall be made in Pursuance thereof; * * * shall
9       be the supreme Law of the Land; * * *" - Constitution
        of the United States, Article VI, section 2.
10

11 Commenting in regard to that clause this statement was made: "It is of the

12 very essence of supremacy, to remove all obstacles to its action within

13 its own sphere, and so to modify every power vested in subordinate govern-

14 ments, as to exempt its own operations from their own influence.  This effect

15 need not be stated in terms.  It is so involved in the declaration of

16 supremacy, so necessarily implied in it, that the expression of it could not

17 make it more certain."  [2]

18       Among the delegated powers of the National Government are:

19       "The Congress shall have Power To * * * provide for
        the common Defence * * *." - Constitution of the
20      United States, Article I, section 8, clause 1.

21      "The Congress shall have power * * * To declare
        War, * * *." - Constitution of the United States,
22      Article I, section 8, clause 11.

23 Pursuant to those powers the United States of America, in the prosecution

24 of World War II, acquired the present site of Camp Joseph H. Pendleton,

25 the United States Naval Hospital, and the United States Naval Ammunition

26 Depot.  Traversing that land is the Santa Margarita River.  Fee simple title

27 to those lands and appurtenant water rights, by reason of purchase, now

28 resides in the United States.

29       Pursuant to those powers there were constructed on those sites

31  [1]  McCulloch v. Maryland, 17 U. S. 315, 405 (1819).

32  [2]  McCulloch v. Maryland, 17 U. S. 315, 427 (1819).

83

U. S. GOVERNMENT PRINTING OFFICE   16—33317-1

1  military establishments vital to the Nation's defense - to its successful

2  prosecution of the present conflict in Korea. Pursuant to those powers the

3  military installations are maintained.

4       All of the properties were acquired and are now used for military

5  purposes.

6       Invaluable rights to the use of water from the Santa Margarita River

7  are owned and exercised by the United States. Those rights were essential

8  to the prosecution of World War II. They are essential to the successful

9  prosecution of the present Korean conflict. They will be essential for the

10  "common Defence."

11       "The Congress shall have Power to dispose of and make
     all needful Rules and Regulations respecting the

12       Territory or other Property belonging to the United
     States; * * *." - Constitution of the United States,

13       Article IV, section 3, clause 2.

14       There can be no doubt that rights to the use of water are, in

15  the contemplation of the law, interests in real property and come within

16  the purview of the provisions of the Constitution of the United States above

17  quoted. In that regard the Supreme Court of the State of California has

18  made several pronouncements. In a relatively recent case that court has

19  declared that a right to the use of water is a corporeal hereditament

20  constituting an interest in real estate. [3/] The right to the use of water

21  is a natural right in the nature of an interest in real property. [4/] Relative

22  to the proposition the following comment has been made: "This usufructuary

23  right, or 'water right,' is the substantial right with regard to flowing

24  waters; is the right which is almost invariably the subject matter over

25  which irrigation or water power or similar contracts are made and litigation

26  arises; and is real property. It is as fundamental under the law of riparian

27  rights as under the law of appropriation." [5/] Power over the properties of

28

29  3/ Wright v. Best, 19 Cal.2d 368, 121 P.2d 702 (1942).

30  4/ Kinney, Irrigation and Water Rights, 2d ed., vol. 2, sec. 769,
    p. 1328 and cases cited.

31  5/ Wiel, Water Rights in the Western States, 3d ed., vol. 1, sec. 18,

32      p. 20.

U. S. GOVERNMENT PRINTING OFFICE 16—33517-1

84

the United States by reason of the constitutional provisions above mentioned is without limitation. 6/

> "The Congress shall have power * * * To exercise exclusive legislation in all Cases whatsoever, * * * over all Places purchased by the Consent of the Legislature of the State in which the same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; * * * . " - Constitution of the United States, Article I, section 8, clause 17.

Exclusive jurisdiction, with an exception not here important, resides in the United States in regard to the lands, appurtenances, and structures comprising Camp Pendleton, the United States Naval Hospital, and the United States Naval Ammunition Depot.  That jurisdiction was ceded to the United States by the State of California and evidence in that regard will be adduced.

When, as here, there has been a cession of exclusive jurisdiction, the highest Court has declared: "We mean by this statement to say that Federal officers who are discharging their duties in a State and who are engaged as this appellee was engaged in superintending the internal government and management of a Federal institution, under the lawful direction of its board of managers and with the approval of Congress, are not subject to the jurisdiction of the State in regard to those very matters of administration which are thus approved by Federal authority." 7/   Very recently that same high Court stated: "As respects such federal territory Congress has the combined powers of a general and a state government." 8/   In brief, those are the powers of the United States over the lands and appurtenant water rights comprising Camp Pendleton, the United States Naval Hospital, and the United States Naval Ammunition Depot.

---

6/ Arizona v. California, 283 U. S. 423, 451 (1930); United States v. California, 332 U. S. 19, 40 (1946); Hunt v. United States, 278 U. S. 96, 100 (1928); Johnson v. Maryland, 254 U. S. 51, 57 (1920); Camfield v. United States, 167 U. S. 518, 526 (1896).

7/ Ohio v. Thomas, 173 U. S. 276, 282, 283 (1898).

8/ Pacific Coast Dairy v. Dept. of Agriculture of California, 318 U.S. 285, 294 (1943).  See also Surplus Trading Company v. Cook, 281 U.S. 647, 652 (1929); Standard Oil Co. v. California, 291 U. S. 242, 244 (1934); Collins v. Yosemite Park Company, 304 U. S. 518, 530 (1937).

85

U. S. GOVERNMENT PRINTING OFFICE   16—34317-1

Turning now to the movant's contention that the complaint should be dismissed for failure to state a claim, it is necessary to consider the complaint of the United States now before this Court. There, having declared that Camp Pendleton, the United States Naval Hospital, and the United States Naval Ammunition Depot are vital to the National defense; having alluded to the fact that the continued maintenance of those vital installations is dependent upon the supply of water acquired by the United States in the Santa Margarita River, the United States asserts in substance and in part as follows: that the acts of the defendants have caused the intrusion of salt water from the Pacific Ocean into the source of supply for the military uses in question; encroach upon the rights of the United States; and have caused and threatened to cause irreparable damage. Following those averments in the complaint the United States prays that the defendants be required to answer and set up their claims; that this Court quiet the title of the United States in and to its rights to the use of water in the Santa Margarita River; that it declare those rights paramount to those of the defendants; that the defendants be forever enjoined from interfering with those rights. Testing those averments against the construction which has been placed upon the applicable rule of civil procedure, 9/ it is respectfully submitted, will necessarily result in a denial of that motion to dismiss. For it has been authoritatively stated: "A motion to dismiss is limited to the allegations of the complaint, and, being the equivalent of a demurrer, the court is called upon to interpret the allegations of such complaint, and to accept all such allegations as being true, and to determine whether such complaint presents a cause of action. In weighing the validity of a motion to dismiss a complaint for insufficiency the duty of the court is not to test the final merit of the claim in order to determine which party is to prevail. But in ruling on the motion, the court must proceed in the light of the present principles as to liberal interpretation of pleadings. On a motion to dismiss

---

9/  Rule 12 (b), Amendments to Rules of Civil Procedure for the District
    Courts of the United States, December 27, 1946.

86

U. S. GOVERNMENT PRINTING OFFICE   10—34317-1

the plaintiff is entitled to the most favorable intendments to be drawn from the facts pleaded. As it has been expressed, the question presented by a motion to dismiss a complaint is whether the complaint, construed in the light most favorable to the plaintiff and with all doubts resolved in favor of its sufficiency, states a claim upon which relief could be granted." [10/]

Movant neither cites authority to the contrary nor alludes to elements in the complaint which he considers to be insufficient. To the contrary, the authorities which are cited reveal that pleadings, the gravamen of which is considered to be far less serious, have been sustained. More particularly movant cites the decision of the Supreme Court of the State of California involving the rights to the use of water here involved, and to which the United States succeeded. [11/] It will be observed that California's highest court described that litigation as an action "to secure a declaration of its riparian rights in the waters of the Temecula-Santa Margarita River and its tributaries, and for an injunction * * *." [12/] Here the United States seeks relief of the same character, with the additional factors which attach to a proceeding by a sovereign vested with exclusive jurisdiction of rights concerning which the relief is sought. Under the circumstances it is, therefore, difficult to perceive the basis upon which the motion to dismiss is premised. In that regard reference is made to the requirements of the Federal Rules of Civil Procedure which specify, among other things, that applications for orders of the nature here involved must "state with particularity the grounds therefor." [13/] By reason of the nature of the motion and the absence of authorities to support it, it appears that there has not been compliance by the movant with the rule last cited.

---

10/  Cyc. Fed. Proc. 2d ed., vol. 5, Sec. 1601, pp. 266-267; Please consider also the numerous decisions Cyc. Fed. Proc., 2d ed., 1950 cumulative supplement at the same reference.

11/  Rancho Santa Margarita v. Vail, et al., 11 Cal. 2d 501; 81 P.2d 533 (1938).

12/  11 Cal.2d 501, 508.

13/  Rule 7 (b) (1) Federal Rules of Civil Procedure.

- 6 -

87

1    Extended comment is not necessary on the subject.  Relief of the

2  character for which the United States petitions this Court has been granted

3  in numerous instances both by the courts of the State of California [14/]

4  and in the Federal courts. [15/]    For the reasons stated above, this Court

5  is respectfully requested to deny the motion of defendant to dismiss this

6  cause for failure to state a claim.

7

8    ### RESPONSE TO MOTION TO STRIKE AND FOR AN ORDER TO FILE A

9    ### MORE DEFINITE STATEMENT

10    In that phase of this consideration relative to the motion to

11  dismiss it was emphasized that movant's authorities did not support the

12  motion.  To the contrary, those authorities revealed that California's

13  highest court has entertained many cases similar in character to this case.

14  Reexamination of those authorities reveals that they either tend to support

15  the position of the United States or are entirely inapplicable to the situation

16  presented.

17    Here the United States is seeking to have quieted its title against

18  adverse claimants and to enjoin encroachment upon its rights to the use of

19  water from the Santa Margarita River.  Those rights, as averred in the

20  complaint, were acquired by the United States from the Rancho Santa Margarita.

21  Those rights are required for purposes of National defense.  They were

22  acquired for that purpose.  They are now exercised for that purpose.  They

23  are now defended for that purpose.

24

25  14/  San Diego v. Cuyamaca Water Co., 209 Cal. 105, 287 Pac. 475, 496 (1930);
     City of Los Angeles v. City of Glendale, 23 Cal.2d 68, 142 P.2d 289 (1943);
26  Anaheim Union Water Co. v. Fuller, 150 Cal. 327, 88 Pac. 978 (1907); Burr v.
    Maclay Rancho Water Co., 154 Cal. 428, 98 Pac. 260 (1908), 160 Cal. 268, 116 Pac.
27  715 (1911); Chow v. Santa Barbara, 217 Cal. 673, 22 P.2d 5 (1933); Peabody v.
    Vallejo, 2 Cal.2d 351, 40 P.2d 486 (1935).

28

29  15/  United States v. Humboldt Lovelock Irr. Light & Power Co., 97 F.2d 38
     C.A. 9, 1938), cert. denied 305 U.S. 630; Ramshorn Ditch Co. v. United
30  States, 269 Fed. 80 (C.A. 8, 1920); Brooks v. United States, 119 F.2d 636
    (C.A. 9, 1941), cert. denied 313 U. S. 594; Ide v. United States, 263 U. S.
    497 (1923); Union Mill & Mining Co. v. Dangberg, 81 Fed. 73 (C.C.D. Nevada
31  1897); Vineyard Land & Stock Co. v. Twin Falls Salmon River Land & Water Co.,
    245 Fed. 9 (C.A. 9, 1917).

32

- 7 -

88

1    In complete disregard of those facts the movant would have this
2    Court strike from the complaint the allegations describing the uses to
3    which that water is being placed.  To strike, as movant requests, the
4    description of the military needs for training Marines and other military
5    personnel and the water needed to provide hospitalization for casualties
6    in Korea would present an anomalous situation.  For those needs constitute
7    the primary reasons for the acquisition of the rights to the use of water
8    which the United States here seeks to preserve and defend. $\frac{16}{}$   Difficulty
9    is encountered in attempting to understand how allegations respecting those
10   military needs could be either redundant, immaterial, or impertinent.  The
11   Marine who can thank his training at Camp Pendleton for surviving in combat
12   in Korea would no doubt be inclined to disagree that such allegations are
13   redundant or immaterial.  He might well discount the charge that they are
14   impertinent.  That same Marine whose very existence depends upon support
15   from the sea by Naval units, might have the same view in regard to
16   maintenance of the United States Naval Ammunition Depot.  A similar view
17   would no doubt be taken by those men who, for the defense of our Nation,
18   find themselves in the United States Naval Hospital which is dependent
19   upon the source of supply of water which the United States is here seeking
20   to preserve.
21        Movant would have this Court strike the allegations that in
22   reliance upon the rights to the use of water which it acquired and here is
23   defending, the United States of America has expended $100,000,000 for the
24   development of the vital military establishments involved. $\frac{17}{}$   Response
25   to that phase of the motion to strike may be very brief – it may well be
26   that this Court will wish to balance equities and hardships in reaching its
27   ultimate decision.  In fairness, therefore, the United States believes that
28   it is entitled to aver affirmatively and to prove the great expenditures which
29   it has made in reliance upon the continuance of the supply of water for the
30   military installations which it describes in the complaint.
31
32   16/  Motions of defendant, page 2, paragraphs B, C.
     17/  Motions of defendant, page 2, paragraph A.

89

1     Exclusive jurisdiction over Camp Pendleton, the United States
2     Naval Hospital and the United States Naval Ammunition Depot has been ceded
3     by the State of California to the United States.  This Court may well
4     attribute to that fact far-reaching legal effect.  Certainly it is a matter
5     of primary concern to the United States for, as revealed above, that cession
6     establishes the relationship which here exists between the Nation and the
7     State.  Nevertheless the movant requests that clause be stricken from the
8     complaint. [18]

9          Described in detail in the complaint are the rights to the use of
10    water acquired by the United States from the Rancho Santa Margarita. [19]
11    Asserted by the United States is a claim that it succeeded to the rights, title
12    and interest of the Rancho Santa Margarita. [20]  Defendant, however, seeks an
13    order requiring the United States to describe with greater particularity
14    the lands, riparian acreage and quantities of water. [21]  Yet in its motion
15    accompanying the application for the order in question the defendant asks this
16    Court to strike from the complaint the description of the land, the riparian
17    acreage and the quantities of water set forth in those paragraphs as being
18    redundant, immaterial, and impertinent. [22]  Similarly this Court is requested
19    to strike the aggregate quantity of water, the uses to which the water is
20    applied, and practices of the United States to avoid waste during periods
21    when not confronted with maximum demands for military purposes. [23]  Defendant's
22    motion to strike would leave intact a sentence which refers to paragraphs
23    which movant earlier requested to be stricken. [24]  Disregarding the motion to

---

25    [18]  Motion of defendant, page 2, paragraph D.
26    [19]  Complaint paragraph V.
27    [20]  Complaint paragraph VI.
28    [21]  Motion of defendant, page 3, paragraphs A, B, C.
29    [22]  Motion of defendant, page 2.
30    [23]  Complaint, paragraphs VII and VIII.
31    [24]  Motion of defendant, page 2, referring to paragraph VIII of the complaint,
32         which has reference to paragraphs II and VII thereof.

U. S. GOVERNMENT PRINTING OFFICE   16—33317-1

90

1    strike, the movant requests a more definite statement of the factors which
2    this Court is petitioned to eliminate. 25/

3           These conclusions, it is respectfully submitted, seem necessarily
4    to follow – defendant by its motions would confuse rather than clarify, would
5    delay rather than expedite, professes difficulty to comprehend where none
6    should exist.  Here the United States acquired vast areas of land for military
7    purposes.  Reasons for the selection of the sites are declared with much
8    detail in the complaint.  Averred, among other things, are the unique
9    qualities for military purposes of which that area is possessed.   Among
10   the primary reasons, from the military standpoint, was the availability of
11   water from the Santa Margarita River.  Rights to the use of water from that
12   stream were appurtenant to that land.  Those rights had been settled after
13   long and contentious litigation between two principal claimants who owned
14   by far the greatest share of riparian lands.  The Supreme Court of California
15   reviewed the findings and pronounced in its decision a basis of settlement.
16   Those rights were defined as being riparian in character and acreages and
17   quantities were meticulously defined.  By a consent judgment, premised on
18   the trial court's findings and the law as pronounced by California's highest
19   court, the rights were settled.  To approximately two-thirds of those rights
20   the United States succeeded.  Those rights were purchased for military purposes.
21   They are now and in the future will be used for those purposes.  To strike
22   from the complaint references to those rights and the other salient factors
23   attacked by movant would be a denial of the right of the United States to be
24   heard in this case.  A succinct and authoritative statement is particularly
25   applicable under the circumstances:  "A motion to strike immaterial matter
26   should be denied where granting such motion would strike out allegations
27   without which the complaint would be meaningless.  And, certainly, matter
28   which under a proper theory has a legitimate place in the pleading should
29   not be stricken." 26/    This suit is to protect those military rights.
30
31   25/  Motion of defendant, page 4, paragraphs E, F, G, H.
32   26/  Cyc. Fed. Proc., Vol. 5, sec. 1776, p. 429.

U. S. GOVERNMENT PRINTING OFFICE   16—53317-1

91

1   It is not contended that anyone not a party to or a successor in interest

2   to the rights determined by the above-mentioned litigation could be bound

3   by the judgment, Exhibit A of the complaint. The need for this suit stems

4   primarily from the fact that the claimants here named are not bound by that

5   judgment, except, of course, the Vail or other interests who are subject to it.

6       Further comment would not aid this Court. Suffice to say that the

7   United States seeks but the opportunity to prove its rights as against the named

8   defendants and to have settled for all time the respective rights of the

9   parties. In no other way can the continuance of the military installations

10   in question be assured.

11       To be noted is the fact that few cases lend themselves more readily

12   to the benefits which may be derived from an order entered pursuant to

13   Rule 16 of the Federal Rules of Civil Procedure. When the case is at issue

14   the United States will petition this Court for a pre-trial hearing which,

15   it is believed, will not only be of aid to the Court but will expedite the

16   early settlement of the present conflict. Because the United States, due to

17   the encroachments described in its complaint, has suffered irreparable

18   injury and will in the future suffer still greater injury, this Court is

19   respectfully requested to deny the motions here presented and require

20   defendant to answer the complaint of the United States.

A. DEVITT VANECH
Assistant Attorney General
Washington, D. C.

ERNEST A. TOLIN
United States Attorney
Los Angeles, California

BETTY MARSHALL GRAYDON
Assistant United States Attorney
San Diego, California

WILLIAM H. VEEDER
Special Assistant to the Attorney General
Washington, D. C.

- 11 -

92

WHV