UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF CALIFORNIA,

SOUTHERN DIVISION

**FILED**

MAR 27 1951

EDMUND L. SMITH, Clerk

By _____ DEPUTY CLERK

UNITED STATES OF AMERICA,           )
                                    )
                        Plaintiff,  )   No. 1247 - Civil
                                    )
        vs.                         )   SUPPLEMENTAL POINTS AND
                                    )   AUTHORITIES OF DEFENDANT
FALLBROOK PUBLIC UTILITY DISTRICT,  )   SANTA MARGARITA MUTUAL WATER
a public service corporation of     )   COMPANY IN SUPPORT OF ITS
the State of California, SANTA      )   MOTIONS TO DISMISS, TO
MARGARITA MUTUAL WATER COMPANY,     )   STRIKE AND TO MAKE MORE
a public service corporation of     )   CERTAIN.
the State of California, et al,     )
                                    )
                        Defendants. )

## STATEMENT

We believe that the citation of authorities without first calling the court's attention to the allegations and the lack of certain allegations in plaintiff's complaint, and the different types of water rights which exist in the State of California, would be confusing to the court. We are therefore taking the liberty of first calling the court's attention to plaintiff's complaint before discussing the authorities which we believe fully support this defendant's position.

## THE COMPLAINT

The complaint fails to state whether the plaintiff is claiming the right to the use of water of the Santa Margarita River and its tributaries by reason of the riparian nature of

94

plaintiff's lands, or by appropriation or by prescription. From a careful reading of the complaint, and considering the complaint as a whole, one is led to believe that plaintiff is basing its rights to the use of water from the Santa Margarita River solely from the artificial needs which have been created by the plaintiff by reason of the construction of the military establishments referred to in the complaint and the continual operation of said establishments. The following deficiencies are apparent:

- A. The plaintiff does not describe or attempt to describe any real property.
- B. The complaint contains no allegation that the lands upon which the site of Camp Joseph H. Pendleton, or the site of the United States Naval Ammunition Depot, or the site of the United States Naval Hospital, are located are (1) riparian to the Santa Margarita River or its tributaries; (2) are within the water shed of the Santa Margarita River or its tributaries.
- C. The complaint contains no allegation that the water or any part thereof which is being extracted by the plaintiff from the Santa Margarita River and which is being used by plaintiff, is being used on lands which are riparian to the Santa Margarita River or are being put to riparian use.
- D. The complaint contains no allegation that the plain-

-2-

95

tiffs have ever filed any notice of appropriation or received any permit from the Division of Water Resources of the State of California as required by the Water Code of the State of California.

E.  There is no allegation that the plaintiff has acquired title by prescription or otherwise to the right to use any of the waters of the Santa Margarita River or its tributaries, or a description or attempted description of the lands to which said water was being put to a beneficial use. A more careful inspection of the allegations of plaintiff's complaint disclose the reason for the lack of said allegations.

F.  The plaintiff alleges that it acquired the land upon which the sites of Camp Joseph H. Pendleton, the United States Naval Ammunition Depot and the United States Naval Hospital are situated, at different times and consequently in different parcels (p.2, par.2, line 7).

(Note: In referring to the complaint, it has been necessary to give the number of the page upon which the allegation appears, and the line in the numbered paragraph in which the allegation appears, because the copy of the complaint which was served upon the defendants does not contain line numbers at the side margin and counsel cannot be sure that the lines on the copy served upon defendants correspond with original pleading on file in this matter.)

-3-

96

G.  It affirmatively appears that all of the lands which were acquired by plaintiff and which are referred to very generally in the complaint, are not riparian to the Santa Margarita River, as the complaint alleges that the lands upon which the sites of Camp Joseph H. Pendleton, the United States Naval Hospital and the United States Naval Ammunition Depot are situated, have an area of 135,000 acres (p. 2, par. 2, line 8). That 38,739 acres of said land are riparian to the Santa Margarita River (p. 6, par. 5, line 2) and that of the lands which are riparian, only 12,375 acres are capable of being cultivated and irrigated economically (p. 5, par. 5, line 6).

H.  The complaint affirmatively sets forth that the requirements of the plaintiffs are for military needs (p. 2, par. 2, subdiv. a, b and c, and p.7, par. 8, line 4) and the complaint contains no allegation that a military use is a riparian use, a beneficial use or a reasonable use of water.

I.  It would appear that the only right which plaintiff is claiming to use water from the Santa Margarita River is by virtue of its rights under a stipulated judgment which is attached to plaintiff's complaint (p. 6, par. 6 and p. 7, par. 8, line 1; p. 7, par. 8, line 5; p. 7, par. 8, line 16) and it nowhere appears that this de-

-4-

97

fendant Santa Margarita Mutual Water Company was a
party to said action or that it is a successor or
assignee of any party to said action.

In the prayer, the plaintiff asked that its title to the waters
of the Santa Margarita River be quieted, although there is no
allegation in plaintiff's complaint describing or defining its
rights, nor are there any allegations contained in plaintiff's
complaint wherein they allege that a dispute has arisen between
this defendant and the plaintiff.

### ARGUMENT

IT IS ELEMENTARY IN QUIET TITLE ACTIONS THAT
PLAINTIFF MUST ADEQUATELY DESCRIBE THE PROPERTY
WHICH HE CLAIMS TO OWN.

See <u>Aalwyh's Law Institute vs. Martin</u>  173 Cal. 21.

In this action the plaintiff in its complaint alleged
that the Ocean Shore Railway Company was the owner in fee of cer-
tain property located in the City and County of San Francisco
and in the Counties of San Mateo and Santa Cruz, more particular-
ly described as follows: "rights of way, terminal lands and all
the property known as 'Ocean Shore Railway Property' more parti-
cularly described in the public records of said City and County
of San Francisco, Liber 62 of Mortgages, p. 29 et seq. and to
which reference is hereby made for said description." The de-
fendant filed a general demurrer to plaintiff's complaint, which
demurrer was sustained, and plaintiff appealed. In support of

-5-

98

the trial court's judgment, the defendant asserted that there was no land described in the complaint, and therefore the complaint failed to state a cause of action. The appellants on the other hand claimed that the description was good, and that if it was insufficient it was only vulnerable for uncertainty, which could only be raised by special demurrer. The court held that both contentions of the appellant were erroneous, saying:

> "There is no description of the rights of way and terminal lands at all, while the other property is vaguely designated as that known as the Ocean Shore Railway Property. It is a general rule of pleading that a complaint in an action to quiet title must contain a pertinent description of the land in controversy. The court, passing upon the demurrer from the face of the pleading itself, could not possibly determine the location of the property unless recourse were had to the books and records indicated, and this could not be required of the court. To be sure, Ocean Shore Railway Property is given as a common designation of the part of the realty to which plaintiff seeks to quiet title, but this does not bring the pleading within the rule of those cases where a well-known tract of land is described by name and by the enumeration of some other identifying characteristics, and the whole description aided by reference to the public records. There must be something in the pleading itself by way of actual description. Courts have shown great liberality in permitting pleaders to set forth very general descriptions which may be made more certain by reference to indicated records, but we know of no authority in which a pleading has been tolerated which attempted no description possible of any sort of identification without reference to a record. It is impossible to tell from the face of the pleading whether or not the public record to which reference is made includes within the property described all of that mentioned in the pleadings as 'rights of way', 'terminal lands' and the 'Ocean Shore Railway Property', or only that last named. This is not mere ambiguity to be attacked only by

> special demurrer. It is a failure of description and is vulnerable to a general demurrer. The pleading is to be construed most strongly against the pleader and this complaint is entirely susceptible of an interpretation which would describe the 'rights of way' and 'terminal lands' as somewhere in one of the two counties or in the City and County mentioned, and the 'Ocean Shore Railway Property' vaguely located somewhere within the same vast territory but described particularly in a public record. Such pleading is too vague to be dignified as a mere incomplete description."

See also  Title Ins. etc. Co. vs. Miller & Lux,
          183 Cal. 71, 81,

in which the court said:

> "The Agreement of 1879 is not sufficient in itself to establish the riparian rights of the parties thereto in any land. It is too uncertain to have that effect. It does not describe any land but merely shows the area 'signed for', as one of the witnesses has expressed it, by one of the several parties. Riparian rights can exist only as parts or parcels of specific tracts of land and any contract relating thereto would be void for uncertainty and of no avail unless it describes or refers to the land in a manner sufficient for identification."

It has also been held that damages cannot be obtained for injury to lands which are not described in the complaint. (See Heinlein vs. Heilbron, 71 Cal. 557-562) If this is true, it must necessarily follow that the plaintiff must describe adequately the lands or rights to which he is asking the court to quiet his title.

If the plaintiff was bringing this suit to quiet title to an easement which was appurtenant to certain lands, there could be no question in the court's mind but what the plaintiff would have to describe the easement and describe the lands to

-7-

100

which it was appurtenant, and it is a well established principle of water law that a riparian right is appurtenant to certain lands and that it is part and parcel of the land itself. See <u>Carlsbad Mutual Water Company vs. San Luis Rey Development Co.</u> 78 Cal. Ap. 2, 900, 911, the court saying:

> "A riparian right has been well defined and such right is a part and parcel of the land."

However, if the plaintiff's right to use the water of the river was based upon a prescription or appropriation, it is not a part or parcel of any particular tract of land. See <u>Elbaugh vs. Mt. Shasta Power Co.</u>, 3 Cal. 2, 751, 765, in which it was said:

> "The right being a prescriptive one, is a usufructuary right, not a part or parcel of any particular land."

## II.

THE OWNER OF LANDS WHICH ARE RIPARIAN TO A RIVER DOES NOT HAVE THE RIGHT TO USE THE WATERS OF THE RIVER ON NON-RIPARIAN LANDS OR ON LANDS WHICH EXTEND BEYOND THE WATER SHED OF THE RIVER.

See <u>Anaheim Mutual Water Co. vs. Fuller</u>, 150 Cal. 327-330,

in which the court said:

> "Land which is not within the water shed of the river is not riparian thereto and it is not entitled as riparian land to the use or benefit of the water from the river, although it may be part of an entire tract which does extend to the river." (<u>Chauvet vs. Hill</u>, 93 Cal.410, 28 Pac.1066, <u>Bathgate vs. Irvine</u>, 126 Cal. 135, 77 Am.St.Rep. 158, 58 Pac. 442, <u>So. Cal. I. Co. vs.</u>

-8-

101

<u>Wilshire</u>, 144 Cal. 68, 77 Pac. 767, <u>Watkins L. Co. vs. Clements</u>, 98 Texas 578, 107 Am.St.Rep. 653, 86 S.W.733)

### III.

IN DETERMINING WHETHER OR NOT LANDS ARE RIPARIAN TO A WATER COURSE, THREE ELEMENTS MUST BE CONSIDERED: FIRST, THE LAND MUST ABUT UPON THE STREAM; TWO, THE LAND MUST LIE WITHIN THE WATER SHED OF THE STREAM; AND THREE, THE LAND MUST HAVE REMAINED RIPARIAN THROUGH ITS ENTIRE CHAIN OF TITLE.

See <u>Rancho Santa Margarita vs. Vail</u>, 11 Cal. 2, 501, 528

in which the following language appears:

> "It is well settled that the extent of land having riparian status is determined by its 3 criteria: 1, the land in question must be contiguous to or about on the stream except in certain cases not now involved.... 2, the riparian right extends only to the smallest tract held under one title in the chain of title leading to the present owner (<u>Boehmer vs. Big Rock Irr. Dist.</u> 117 Cal.19, 48 Pac. 908).... 3, the land in order to be riparian must be within the water shed of the stream."

See also <u>Silver Creek Etc. Co. vs. Hayes</u>, 113 Cal. 142. In this action, the defendant answered and filed a cross complaint. Plaintiff demurred to the cross complaint for want of sufficient facts, and on the trial objected to evidence in support of the claim of defendant inserted in the cross complaint on the same ground. The plaintiff appealed and the court stated that a demurrer filed to the cross complaint on the grounds that it did not state a cause of action should have been sustained, saying:

-9-

102

> "The cross complaint nowhere shows by statement of facts that defendant owns or holds by right any lands which are riparian to Panoche Creek. He avers that he owns three lots in Sec. 16 and has possession and control of three other lots, and that said creek flows through the natural channel thereof over and across the lands of defendant as aforesaid. This would be true though the creek only flows over three lots of which he is possessed and which he controls but does not own. He does not aver that he possesses or controls by right and the presumption is that this allegation is as strong as he could make it. The presumption therefore is that he has taken possession of the other three lots without right and that the water only flows over those lots in which he has no right. A trespasser on public lands is for some purposes deemed the owner, but when one asserts riparian rights as against an upper appropriator of water, he must show some right inchoate or otherwise to the land.
> In another paragraph of the cross complaint, it is averred that the defendant has a large amount of land which it is necessary to irrigate, and the only waters available for that purpose are the waters of Panoche Creek. It is not intimated in any way that this large trace of land is part of the lots described or that it is riparian to Panoche Creek. In short, in the cross complaint, the defendant does not show any right to the waters of Panoche Creek."

It is necessary for plaintiff to set forth in his complaint by appropriate allegations of fact, facts that show that his lands are riparian or that his rights are appropriative or prescriptive. There are no presumptions that his lands are riparian, and a mere statement that the lands are riparian, without facts sustaining such allegation, is a mere conclusion of law and will not support the complaint.

IV.

A PLEADING MUST ALLEGE THE NATURE OF THE WATER RIGHT AND THE AMOUNT OF WATER WHICH THE PARTY CAN PUT TO BENEFICIAL USE.

See <u>Riverside Water Co. vs. Gage</u>, 89 Cal. 410, 420, in which the court said:

> "But in addition to the appropriation upon which the defendant seems mainly to have relief, he did allege in his answer that he was the owner of a tract of land containing about 2600 acres through and over which the Santa Ana River flowed for a distance of about three miles, and that most of the tract was susceptible of and would be benefited by irrigation. He did not however allege that he was entitled as a riparian owner to any definite quantity of water for the irrigation of his riparian lands, nor did he allege any facts showing or tending to show what proportion of the waters of the stream he could reasonably exhaust for that purpose.... In short, we think the answer insufficient to raise any issue as to the extent of defendant's right as a mere riparian proprietor to divert and exhaust any portion of the waters of the stream."

V.

TO CONSTITUTE A JUDGMENT AN ESTOPPEL OR RES JUDICATA THERE MUST BE A SUBSTANTIAL IDENTITY OF PARTIES AS WELL AS OF THE SUBJECT MATTER, THAT IS IT IS NECESSARY THAT THE PARTIES AS BETWEEN WHOM THE JUDGMENT IS CLAIMED TO BE AN ESTOPPEL MUST HAVE BEEN PARTIES TO THE ACTION IN WHICH IT WAS RENDERED OR THEY MUST BE IN PRIVITY WITH THE PARTIES IN SUCH FORM OR ACTION.

See <u>Whitney vs. City and County of San Francisco,</u> 52 Cal. Ap. 2, 363, 365

-11-

104

in which the court said:

> "A party to an action in a subsequent proceeding is not bound by the judgment in a prior proceeding and the doctrine of res judicata does not operate as an estoppel unless he was a party or privy to such action and the identical issues raised in the subsequent proceeding was determined therein."

See also New Orleans vs. Warner, Law Ed. 96, 103, in which the court said:

> "A defense of res judicata not noticed by the court below is set up as arising from a decree of the circuit court affirmed by this court in the case of Peake vs. New Orleans, 139 U.S. 342, 35 L.ed. 131, 11 Sup.Ct.Rep.541. This plea is based upon the fact that in that case one James Jackson appeared by intervening petition as the holder of eight purchase warrants identical in character as those sued upon by the plaintiffs, part of those given in payment of the purchase price of the drainage plant from the canal company and Van Norden, that the decree in the Peake case was a dismissal of complainant's bill and of all intervening petitions and that the decree upon the warrant suit brought by Jackson was decisive of the whole series of purchase warrants. It is a sufficient reply to this plea to say that the complainant Warner was neither a party nor privy to this litigation and that the decree was binding only upon Peake and such others as actually intervened. (Hook vs. Paine, 14 Wall 252, 20 L.ed. 887)."

## VI.

A RIPARIAN OWNER HAS NO RIGHT TO ANY MATHEMATICAL OR SPECIFIC AMOUNT OF WATER IN A STREAM.

See Prather vs. Hoburg, 24 Cal. 2, 549, 560, in which the court says:

> "A riparian owner has no right to any mathematical or specific amount of waters of a stream as against other land owners. He has only a right

-12-

105

in common with the owners to take a proportional share from the stream - a correlative right which he shares reciprocally with the other riparian owners."

## VII.

THERE IS NO ALLEGATION IN THE COMPLAINT THAT PLAINTIFF OR ITS PREDECESSORS IN INTEREST HAVE COMPLIED WITH THE PROVISIONS OF THE WATER CODE OF THE STATE OF CALIFORNIA.

See Section 1200 of the Water Code of the State of California:

> Sec. 1200. <u>Terms referring to surface water and subterranean streams</u>. Whenever the terms stream, lake or other body of water, or water occurs in relation to applications to appropriate water or permits or licenses issued pursuant to such applications, such term refers only to surface water, and to subterranean streams flowing through known and definite channels.
>
> Sec. 1201. <u>Water declared public and subject to appropriation</u>. All water flowing in any natural channel, excepting so far as it has been or is being applied to useful and beneficial purposes upon, or inso far as it is or may be reasonably needed for useful and beneficial purposes upon lands riparian thereto, or otherwise appropriated, is hereby declared to be public water of the State and subject to appropriation in accordance with the provisions of this code.
>
> Sec. 1202. <u>Waters declared unappropriated</u>. The following are hereby declared to constitute unappropriated water:
>   (a) All water which has never been appropriated.
>   (b) All water appropriated prior to December 19, 1914, which has not been in process, from the date of the initial act of appropriation, of being put, with due diligence in proportion to the magnitude of the work necessary properly to utilize it for the purpose of the appropriation, or which has not been put, or which has ceased to be put to some

-13-

106

useful or beneficial purpose.

(c) All water appropriated pursuant to the Water Commission Act or this code which has ceased to be put to the useful or beneficial purpose for which it was appropriated, or which has been or may be or may have been appropriated and is not or has not been in the process of being put, from the date of the initial act of appropriation, to the useful or beneficial purpose for which it was appropriated, with due diligence in proportion to the magnitude of the work necessary properly to utilize it for the purpose of the appropriation.

(d) Water which having been appropriated or used flows back into a stream, lake or other body of water.

Sec. 1225. *Compliance with provisions of division.* No right to appropriate or use water subject to appropriation shall be initiated or acquired except upon compliance with the provisions of this division.

Sec. 1240. *Appropriation for useful or beneficial purpose; Cessation of use.* The appropriation must be for some useful or beneficial purpose, and when the appropriator or his successor in interest ceases to use it for such a purpose the right ceases.

Sec. 1252. *Permit for unappropriated water: Right to apply for and secure.* Any person may apply for and secure from the department, in conformity with this part and in conformity with reasonable rules and regulations adopted from time to time by it, a permit for any unappropriated water.

Sec. 1253. *Allowance of appropriation for beneficial purposes.* The department shall allow the appropriation for beneficial purposes of unappropriated water under such terms and conditions as in its judgment will best develop, conserve, and utilize in the public interest the water sought to be appropriated.

Sec. 1254. *Highest and next highest uses of water.*

In acting upon applications to appropriate water the department shall be guided by the policy that domestic use is the highest use and irrigation is the next highest use of water.

Sec. 1255. *Rejection of application.* The department shall reject an application when in its judgment the proposed appropriation would not best conserve the public interest.

-14-                                               107

We respectfully submit that the Complaint does not state a cause of action in that it is uncertain and contains immaterial, redundant and impertinent matter as specified in this defendant's motion to strike.

Respectfully submitted,

*W. B. Dennis*
W. B. Dennis
Attorney for Defendant
SANTA MARGARITA MUTUAL WATER COMPANY.