```
                                              (SPACE BELOW FOR FILING STAMP ONLY)

   SWING, SCHARNIKOW & STANIFORTH
          ATTORNEYS AT LAW
   604 SAN DIEGO TRUST & SAVINGS BUILDING
        SAN DIEGO 1, CALIFORNIA
            FRANKLIN 9-1131
```



FILED

JUN 18 1951

EDMUND L. SMITH, Clerk

By ........................
            DEPUTY CLERK

Attorneys for A. F. BOREL and LOUISE BOREL

UNITED STATES DISTRICT COURT

For The

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. 1247 - Civ. |
| Plaintiff ) | |
| ) | ANSWER OF A. F. BOREL and |
| -vs- ) | LOUISE BOREL |
| ) | |
| FALLBROOK PUBLIC UTILITY DISTRICT, ) | |
| a public service corporation of the ) | |
| State of California, et al., ) | |
| ) | |
| Defendants ) | |

    Comes now the Defendants, A. F. BOREL and LOUISE BOREL and separating themselves from the other defendants, allege, deny and admit as follows:

FIRST DEFENSE

I.

    These Defendants allege that they and each of them are without knowledge or information sufficient to form a belief as to the truth of the allegation that the above entitled action was commenced and the Complaint filed "at the request of the Secretary of the Department of the Navy" and therefore deny said allegation.

II.

Answering Paragraph I of the Complaint, these defendants and each of them, denies that any "actual controversy" had arisen prior to

7651

128

the commencement of this action or has arisen as between the United States of America and either of these defendants, as alleged in said paragraph and that as to the other defendants, these defendants and each of them allege that he is without knowledge or information sufficient to form a belief as to the truth of the allegation that "an actual controversy has arisen between the United States of America and the defendants named herein" and therefore denies said allegation. Answering Paragraph I of the Complaint, these defendants deny that they or either of them has unlawfully or otherwise interfered with the rights of the United States of America; admit the allegations in said Paragraph I contained except as herein denied.

III

Answering Paragraph II of the Complaint, thede defendants admit that the United States of America acquired the sites mentioned and described in said Paragraph at the times alleged and thereafter developed and installed the military establishments and constructed the facilities therein referred to, in said paragraph, but these defendants are informed and believe, and therefore allege the fact to be that the said military establishments do not occupy all of the 135,000 acres acquired by the United States in the Counties of San Diego and Orange, State of California, nor are all of said 135,000 acres utilized for military purposes but that several thousand acres of land, the exact amount being unknown to these defendants, has been, at all times since said property was acquired by the United States, and now is occupied, used and devoted to commercial farming, said land being rented out in varying sized tracts to various private persons, firms and corporations for that purpose.

IV.

Answering Paragraph III of the Complaint, these defendants

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
604 SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA
FRANKLIN 9-1131

allege that they and each of them is without knowledge or information sufficient to form a belief as to the truth of the facts alleged therein and therefore deny all the allegations of said Paragraph. However, these defendants allege that if it be true that the State of California has ceded any jurisdiction to the United States of America over said land, such cession was only operative and effective to the extent and for the time that said tract of land was to be used and actually was used for the purpose of erecting and maintaining forts, magazines, arsenals, dockyards and other needful buildings thereon and was not intended to, and in fact did not, extend to the thousands of acres of land occupied, used and devoted to commercial farming by private persons which these defendants are informed and believe to be the fact ever since the government acquired said land.

V.

Answering Paragraph IV of the Complaint, these defendants do not have nor do either of them have sufficient knowledge, information or belief to enable them to answer the allegations therein to the effect that salt water intrusion from the Pacific Ocean threatens the destruction of said basin or that two wells have been destroyed by reason of that intrusion and therefore deny said allegations. These defendants admit that the Santa Margarita River traverses a portion of the property of Plaintiff but allege that it is a non-navigable stream. Admit that in the dry season of the year the surface stream customarily and ordinarily disappears at a point on the lands of the United States at approximately eight miles from the ocean sinking into the sands and gravel of its bed and channel. That later it reappears as a surface stream two or three miles below, thence flowing as a surface stream but diminishing in volume to its confluence with tidewater. These Defendants allege that at various other points and places above

-3-

7653

Plaintiff's said property the river disappears as a surface stream and sinks into the sands and gravels of one or more of the numerous basins which exist underneath each of the valleys which are found along the said river and along its several tributaries before said river enters the property of Plaintiff. Allege that no portion of any of these basins form any part of the basin or basins which underlie Plaintiff's said property nor do any part of these basins underlie any portion of Plaintiff's said property. These defendants deny that they have in anyway encroached upon any rights which Plaintiff may have or by their alleged encroachment, threaten a destruction of the basin referred to in said Complaint. Deny that the activities of these Defendants have in anyway encroached upon or through their alleged encroachments upstream, they have reduced the quantities available to the United States of America from the "subterranean sources" mentioned in said Paragraph or that there has been a reduction in the surface flow of the Santa Margarita River through the alleged encroachment of these defendants. Deny that any acts of either of these defendants, has damaged any rights or property of Plaintiff. Defendants allege that, if it is true that there exists a threat of salt water intrusion into the basin or basins in which Plaintiff's wells are located, or if it is true that two of Plaintiff's wells have been destroyed by reason of that intrusion, such injury, or threatened injury, was not the result of the activities of these defendants or either of them, nor brought about through their alleged encroachment upstream but was in part at least, the result of a severe and protracted drought affecting all of Southern California and affecting not only the wells of Plaintiff but all wells in the Santa Margarita watershed and also wells in every other watershed throughout Southern California. Furthermore defendants are informed and believe, and therefore allege the fact to be that Plaintiff's injury, or threatened injury, was brought about principally as the

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
604 SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA
FRANKLIN 9-1131

direct result of Plaintiff's misuse of the basin or basins underlying its said property and mismanagement of its said wells and the operation thereof and in the misuse and misapplication of the water produced therefrom and the wrongful, excessive and unreasonable diversions and uses and places of use of said water, including the exportation by Plaintiff of large quantities of said water beyond the basin and watershed of said Santa Margarita River from whence said water, or any part thereof, could never return.

As to the allegation that "underlying the river and its tributaries is a vast underground basin" and that "the basin as a whole creates a large underground reservoir into which a high proportion of the Santa Margarita River sinks" and that "this vast subterranean reservoir constitutes one of the principal sources of water for the military purposes declared above", these defendants allege that they and each of them are without knowledge and information sufficient to form a belief as to the truth of said allegations and therefore deny each and every one of said allegations.

VI

Answering Paragraph V of the Complaint, these defendants admit the trial of the suit referred to in said Paragraph being Action No. 42850 in the Superior Court of the State of California in and for the County of San Diego, but allege that the decision of the trial court was reversed by the Supreme Court of the State of California (Rancho Santa Margarita v. Vail 11C(2) 501) and thereafter a Stipulation or Agreement was entered into between the Plaintiff in said action and the Defendant Vail interests calling for the entry of the stipulated judtment therein, a copy of which is attached to and made a part of the Plaintiff's Complaint as Exhibit "A". These Defendants deny that the parties to said litigation declared their rights or fixed their aliquot shares of all the waters of the Santa Margarita River, premised upon the findings

-5-

7655

/32

of the trial court or upon the decision of the California Supreme Court when the matter was on appeal before it. These Defendants deny that they or their predecessors in interest, were parties to said suit or to said Stipulation and deny that any of the rights of these Defendants in the Santa Margarita River were adjudicated in said suit or fixed by said Judgment. These Defendants allege that they are not bound in anyway by said Stipulated Judgment, nor are their rights limited or controlled by it. That these Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in said paragraph and therefore deny each and all the said other allegations.

VII

Answering Paragraph VI of the Complaint, these defendants admit that Plaintiff is the successor in interest of the Rancho Santa Margarita but deny that it is entitled to, or can claim, as against these defendants, all rights, titles, interest and privileges purported to have been given to said Rancho Santa Margarita by the said Stipulated Judgment or that Plaintiff is entitled to or can claim, as against these Defendants, any more water than the amount which is or may be reasonably and actually required for riparian uses and purposes on that portion of said Rancho Santa Margarita which is actually riparian to said Santa Margarita River, which amount of water is, under present conditions, as these Defendants are informed and believe, and therefore allege the fact to be, not to exceed 2,620 acre-feet per annum.

VII

Answering Paragraph VII of the Complaint, these Defendants allege that they are without knowledge and information sufficient to form a belief as to the truth of the allegations therein contained and therefore deny each and all of the allegations of said

-6-

7656

Paragraph.

IX

Answering Paragraph VIII of the Complaint, these Defendants deny that Plaintiff has a paramount right to 35,000 acre-feet of water annually or a paramount right to any quantity of water except as hereinafter admitted. Defendants allege that they are without knowledge or information sufficient to form a belief as to the truth of the other allegations contained in said paragraph and therefore deny each and all of the other allegations of said paragraph not herein specifically admitted.

X

Answering Paragraph IX of the Complaint, these defendants deny that they have made any diversions from the Santa Margarita River in violation of rights of the United States of America; deny that these Defendants or either of them by reason of their diversions from the Santa Margarita River has caused the intrusion of salt water from the Pacific Ocean, or otherwise caused damage to the United States of America; deny that they or either of them have repeatedly or at all, through overt acts or otherwise, displayed their disregard for the rights of the United States of America or declared claims in contravention of the rights of the United States of America. These Defendants deny that their rights were acquired subsequent to the rights of the United States; deny that these Defendants, or either of them, have asserted that their rights were or are paramount to the rights of the United States except these Defendants admit that they have asserted that their rights were and are paramount in part, correlative in part, and subordinate in part, to the rights of the United States of America and admit that their appropriative rights to the waters of said Santa Margarita River are subordinate to Plaintiff's rights to that amount of

-7-

7657

134

1  water which is, or may be reasonably and actually required by it
2  for riparian uses and purposes on its riparian lands, which amount,
3  at the present time, as these Defendants are informed and believe,
4  does not exceed 2,620 acre-feet per annum but allege that their
5  riparian rights hereinafter referred to are correlative with the
6  riparian rights of Plaintiff and that as to all other rights, or
7  claims of rights, of Plaintiff to the use of the waters of said
8  river, these Defendants allege that such rights are subordinate to
9  the rights of these Defendants to take such amounts of water as
10 may be reasonably required to meet their needs up to 3650 acre-feet
11 per annum;  that the prescriptive rights of these defendants
12 hereinafter set forth in their Further, Second and Separate
13 Defense are paramount to the rights of Plaintiff;  deny that they
14 or either of them have proceeded to encroach upon, or now are
15 encroaching upon, or threaten to encroach upon, the water supply
16 of Camp Pendleton, the United States Naval Hospital or the Naval
17 Ammunition Depot.  Allege that but for Plaintiff's excessive
18 diversions, unreasonable uses and wrongful exportation of water to
19 places outside the basin and watershed of Santa Margarita River,
20 as alleged in Paragraph V hereof, there would be a sufficient
21 supply of water to meet the rightful needs and lawful requirements
22 of plaintiff and these defendants.  These defendants allege that
23 there exists in said river and basin on Plaintiff's said property
24 and at the point where these Defendants divert their water, a
25 surplus or excess of water over and above the amount necessary to
26 supply Plaintiff's reasonable actual legal requirements.
27         These Defendants and each of them, is without knowledge
28 or information sufficient to form a belief as to the truth of the
29 remaining averments in said Paragraph IX contained and therefore
30 deny both generally and specifically each and all of the said
31 allegations except as herein expressly admitted or expressly
32 denied.

-8-

7658

FOR A FURTHER SECOND AND SEPARATE DEFENSE, THESE DEFENDANTS ALLEGE:

I.

These defendants are, and with their predecessors in interest, have been, for many years past, the owners of and in possession of certain lands upstream from the lands of Plaintiff and all said lands are within the watershed of the Santa Margarita River and its tributaries and are riparian to said river and particularly to the tributaries of said river which flow across, through or under said lands of these defendants and have rights in and to the percolating waters which are in the underground basins and strata of water-bearing sand and gravel over which their said lands lie. That all of said lands lie in a semi arid region and are of little value without water for the irrigation thereof. That the lands so owned by these defendants are as follows:

All those certain Parcels of real property situated, lying and being in the County of Riverside, State of California, more particularly described as follows, to-wit:

PARCEL 1:

Southwest 1/4 of Section eight (8), Township seven (7) South, Range two (2) West, S.B.M.

PARCEL 2:

East 1/2 of Lot 1 in Northwest 1/4; Lot 1 in Southwest 1/4; North 1/2 of Lot 2 in Southwest 1/4 and that portion of the South 1/2 of Lot 2 in the Southwest 1/4 described as follows: Beginning at the southeast corner of Lot 2 in Southwest 1/4, thence North 1320 feet, thence West 531 Feet, thence Southwest 1358 feet; thence East 751 feet to point of beginning, all in Section six (6), Township seven (7) South, Range two (2) West, S.B.M.

PARCEL 3:

Northeast 1/4 of Section eight (8), Township seven (7) South, Range two (2) West, S.B.M.

7659

136

PARCEL 4:

Lots 1 and 2 in Northwest 1/4 of Section eighteen (18) Township seven (7) South, Range two (2) West, S.B.M.

PARCEL 5:

Southeast 1/4 of Section twelve (12), Section thirteen (13); and Northeast 1/4 and South 1/2 of Section fourteen (14), all in Township seven (7) South, Range two (2) West, S.B.M.

PARCEL 6:

Lots No. 12, 13, 14, 15 and 16 in Block 29 in the Townsite of Temecula as per map of record in the office of the Recorder of Riverside County, State of California.

II.

The property embraced in Parcel 1 consists of 160 acres, more or less, of which approximately 40 acres is range land principally useful for grazing but that 120 acres thereof is arable and suitable for cultivation and is highly productive when water is available for its irrigation. Said property is traversed by the Tuealota Creek which is a tributary of the Murrieta Creek which is a tributary of the Santa Margarita River. The title to this property was acquired by Alexander Borel, the father of defendant A.F. Borel on or about the year 1906 and ever since has been occupied and farmed by said father and these defendants. On or about the year 1915, defendant's father built a dam on said property for the storage of water of certain springs located on said property and ever since which time said dam has been utilized continuously by said father and by his successors in interest, including these defendants, for the storage of the waters of said springs, using the said stored water for the irrigation of said lands. Normally the amount of water so stored and so used was and is approximately

-10-

7660

137

15 miners inches or 218 acre-feet per annum and all of said stored water to the extent available up to 218 acre-feet per annum has been and is beneficially used on said lands openly, notoriously, continiously, adversely and under right so to do, since said year 1915.

That said lands overlie an underground stratum of sand and gravel containing percolating water which yields a usable supply when wells are dug therein and water pumped therefrom. In the year 1928 a well was dug upon said property from which these defendants normally are able to secure approximately $2\frac{1}{2}$ miners inches of water which has been, since the year 1928, and now is, stored in a 10,000 gallon tank or reservoir and used for domestic and stock water and for irrigating a garden upon said lands. The said $2\frac{1}{2}$ miners inches or $36\frac{1}{4}$ acre-feet of water per annum has been so produced and so used continuously since 1928. These defendants are the owners of the right to take from said Tuealota Creek, from said springs and from the underground percolating water for beneficial use on the aforesaid premises 420 acre-feet of water per annum, to 254.25 acre-feet of which their right is paramount to the rights of Plaintiff; that their rights to the remainder thereof are correlative with plaintiff's said riparian rights.

III.

The property embraced in Parcel 2 consists of approximately 215 acres and is traversed by the East Branch of Warm Springs Creek and French Creek, tributaries of Warm Springs Creek which is a tributary of Murrieta Creek, which is a tributary of the Santa Margarita River. That the title to said property was acquired by Alexander Borel, the father of defendant A.F. Borel in 1910 and has been owned continuously since by said father and these defendants. That on or about the year 1926, there was constructed upon said premises a dam and reservoir for the storage of the water of the certain springs and the flow of said East Branch of Warm Springs Creek and the flow of said French Creek and the waters from said

-11-

7661

reservoir and dam have been used continuously, openly, notoriously, adversely and under claim of right, since 1926 up to __25__ acre-feet per annum for the irrigation of approximately 30 acres of said premises.

    That of the said 215 acres, at least 130 acres are arable and capable of growing valuable crops thereon if irrigated, the remainder being range land useful for grazing. That said lands overlie an underground stratum of water bearing sand and gravel which yields a substantial supply of water when wells are dug therein and water pumped therefrom.

    That in the latter part of the year 1950, defendant A. F. Borel made application No. 13577 to the Division of Water Resources of the State of California for permission to appropriate 200 acre-feet of water from the East fork of Warm Springs Creek, tributary to the Murrieta Creek which is a tributary to the Santa Margarita River, 100 acre-feet of which water was to be diverted and directly applied to beneficial use without storage and 100 acre-feet to be stored temporarily for later beneficial use. All such appropriated water to be beneficially used on said lands within the watershed, to-wit: on 30 acres within the Southwest 1/4 of the Southwest 1/4 and 30 acres within the Southeast 1/4 of the Southwest 1/4 of Section 6, Township 7 South, Range 2 West, S.B. M. That a hearing by the said Division was duly and regularly held thereon February 6, 1951 and defendants are informed and believe and therefore allege the fact to be that the evidence produced at said hearing showed that these defendants are entitled to have said application No. 13577 granted and that it will be granted by said Division of Water Resources and by the State Engineer of the State of California and that these defendants are entitled to and have a right to appropriate and use 200 acre-feet of water per annum on said lands as proposed in said application subject to all vested rights of all other land owners and water

users down stream from these defendants. That in many years there exists in said river, streams and basins a surplus or an excess of water, both on Plaintiff's property and at the point on these defendant's property where these defendants propose to build a dam and appropriate, divert and use said water, over and above the amount necessary to supply plaintiff's reasonable, actual, legal requirements and those of all other down stream land owners and water users having prior vested rights and to supply the reasonable requirements of these defendants including the said water proposed to be appropriated.

These defendants, as the owners of said lands, are the owners of the right to use beneficially thereon __25__ acre-feet of water per annum which right is paramount to plaintiff's rights; that these defendants are the owners of the right to use beneficially on said lands a reasonable amount of the percolating waters underlying said lands, to-wit: __430__ acre-feet per annum which right is correlative with Plaintiff's riparian rights but paramount to any other rights claimed by Plaintiff; and Defendants have the appropriative right to beneficially use on said lands, 200 acre-feet per annum, which right is subordinate to Plaintiff's rights.

IV.

That the property embraced in Parcel 3 consists of 160 acres, was acquired by Alexander Borel, the father of Defendant A.F. Borel, in 1910 and has ever since been owned and occupied by the said father and these defendants. That said premises are traversed by an unnamed water course which is a tributary of the Tuealota Creek. That said unnamed creek has no surface flow except intermittently during rainy seasons but has a subsurface flow. That said lands overlie an underground stratum of water bearing sand and gravel containing percolating water which can be

-13-

7663

obtained therefrom by boring wells therein and pumping water therefrom. That two wells have been dug on said property, one producing nine miners inches of water which is used for watering stock and for irrigation of some of the land. That the other well is capable of producing 15 miners inches of water and will be used for stock water and for irrigating more of said lands. All of said 160 acres is arable and capable of producing valuable crops when irrigated. That these defendants are the owners of the right to beneficially use on said lands a reasonable amount of the waters of said unnamed creek and said underground percolating water, to-wit: 320 acre-feet per annum consumptive use which right is correlative with Plaintiff's riparian rights but paramount to any other rights claimed by Plaintiff.

V.

The property embraced in Parcel 4 consists of approximately 180 acres of which 130 acres are arable and capable of producing valuable crops when irrigated and the remainder is useful as range land for cattle grazing. That said premises are traversed by the Tuealota Creek, a tributary of the Murrieta Creek, a tributary of Santa Margarita River. Said lands also overlie an underground stratum of water bearing gravel containing percolating water which can be obtained therefrom by boring wells therein and pumping water therefrom. That these defendants have a right to the beneficial use of a reasonable portion of said percolating waters and of the flow of said creek for beneficial use on said lands up to 455 acre-feet per annum, which said rights are correlative with Plaintiff's riparian rights but paramount to any other rights claimed by Plaintiff.

VI.

That the property embraced in Parcel 5 consists of

-14-

7664

approximately 1280 acres which are traversed by the Santa Gertrudis Creek and unnamed tributaries thereof. That said Santa Gertrudis Creek is a tributary of Murrieta Creek which is a tributary of the Santa Margarita River. That of said 1280 acres, approximately 1000 acres are arable and capable of producing valuable crops when irrigated and approximately 280 acres are range land useful for cattle grazing. That on said premises is and has been for the past 40 years a well which has been used in connection with a storage tank of 6000 gallon capacity which has been used to supply domestic water. Also on said premises there is and has been for the past 30 years another well used in connection with another 1000 gallon storage tank, the water from which is and has been used principally for stock. That said wells and tanks and the water therefrom have been used beneficially on said lands openly, notoriously, continuously, adversely and under claim of right ever since said wells were dug.

That said lands overlie an underground stratum of water bearing sand and gravel containing percolating water which can be obtained by boring wells therein and pumping water therefrom. That these defendants have the right to the use of a reasonable amount of said underground percolating water for the beneficial use thereon and these defendants intend and will use a reasonable amount of said underground percolating water for beneficial use on said lands. That these defendants own the right, for beneficial use on said lands to take 2000 acre feet per annum from said underground percolating waters and from the tributaries of said Santa Margarita River, of which the right to __25__ acre-feet per annum is paramount to Plaintiff's right and the right to the remainder thereof is correlative with Plaintiff's riparian rights but paramount to all other rights claimed by Plaintiff.

VII.

That the property embraced in Parcel 6 consists of four

1  contiguous lots in the Townsite of Temecula improved by a one-
2  story building 100 feet by 50 feet and another building 20 feet
3  by 30 feet which buildings are and have been for many years
4  occupied and used for store purposes. That on said property is
5  located a well from which water is pumped into a tank for the
6  purpose of supplying the domestic, commercial and business require-
7  ments of the tenants occupying said property and buildings. That
8  the production of said well is and has been for approximately 20
9  years at the rate of five gallons per minute. Said well and said
10 water has been so used by these defendants and their predecessors
11 in interest at the rate of 5 gallons per minute for approximately
12 20 years. That said lots overlie an underground basin or stratum
13 of water bearing sand and gravel through which water percolates
14 and from which an adequate supply of water may be obtained by
15 sinking wells therein and pumping water therefrom. That these
16 defendants own the right to the use of a reasonable amount of said
17 underground percolating water for use on each and every one of
18 said lots. The right of these defendants to so use said water, up
19 to 5 gallons per minute, is paramount to the rights of Plaintiff
20 and the right to use an additional reasonable amount of said water
21 up to 5 gallons per minute on each of said lots is correlative to
22 the rights of Plaintiff to use a reasonable amount of the waters
23 of said river for riparian purposes on its riparian lands but is
24 paramount to all other rights claimed by plaintiff.

FOR A FURTHER, THIRD AND SEPARATE DEFENSE, THESE DEFENDANTS ALLEGE:

I.

That the defendants are the owners of the real property described and set forth in the Further, Second and Separate Defense of this Answer and are the owners of the water rights claimed therein and said Further, Second and Separate Defense is hereby referred to and made a part hereof by reference as fully as if the same were herein set forth verbatim.

II.

That a great distance separates the properties of these defendants and the Plaintiff's property, as the course of the water in said river and tributaries flows and one or more basins intervene between their respective properties which said basin or basins consist of alluvial fill with great underground strata of sand and gravel into which the normal flow of the Murrieta Creek and its tributaries sink and are trapped.

III.

That very little water from the Murrieta Creek flows into the Santa Margarita River except in seasons of exceptional heavy rainfall which occur only at intervals of from seven to ten years. That the water which these defendants use on their said lands would never reach the property of Plaintiff or be of any benefit thereto, even if these defendants diverted none of it.

IV.

That the only time the Murrieta Creek discharges any substantial amount of run-off into the Santa Margarita River is when heavy rainfall occurs within its watershed and when heavy rainfall occurs within the watershed of Murrieta Creek it likewise

-17-

7687

occurs over most of the watershed of the Santa Margarita River including its tributary the Temecula Creek and other tributaries producing a greater run-off from the Temecula and other watersheds than from the Murrieta Creek, so that more water wastes into the ocean than is contributed to the Santa Margarita River by the Murrieta Creek.

V.

That Plaintiff, as the owner of said Rancho Santa Margarita and of the properties on which are located its said military establishments, has no right or title in or to said flood or excess waters as against these defendants or a right to object to these defendants diverting or using a reasonable amount thereof, upon their said lands.

FOR A FURTHER, FOURTH AND SEPARATE DEFENSE THESE DEFENDANTS ALLEGE:

I.

That said purported cause of action set forth in Plaintiff's complaint herein is barred by the provisions of Section 318, 319, 336 and 338(2) of the Code of Civil Procedure of the State of California.

WHEREFORE these defendants pray:

1. That Plaintiff take nothing by its action.
2. That the rights of these defendants, as against plaintiff, be declared and held to be as set forth in this Answer.
3. That they have judgment for their costs incurred herein and for such other and further relief as the Court may deem proper.

SWING, SCHARNIKOW & STANIFORTH

BY *[signature]*
Attorneys for Defendants A.F. BOREL and LOUISE BOREL

*[handwritten: Rec'd copy this 18th day of June, 1951 Betty Marshall Seyda Asst. U.S. Atty]*

-18-

7668