```
SWING, SCHARNIKOW & STANIFORTH
       ATTORNEYS AT LAW
604 SAN DIEGO TRUST & SAVINGS BUILDING
       SAN DIEGO 1, CALIFORNIA
           FRANKLIN 9-1151
```

(SPACE BELOW FOR FILING STAMP ONLY)



FILED

NOV 1 1951

EDMUND L. SMITH, Clerk
By............................
          DEPUTY CLERK

Attorneys for Defendants FRANK R. CAPRA
   and LUCILLE W. CAPRA

UNITED STATES DISTRICT COURT

For The

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,  )
                Plaintiff  )
                           )  No. 1247 - Civ.
         -vs-              )  ANSWER OF FRANK R. CAPRA
                           )  and LUCILLE W. CAPRA.
FALLBROOK PUBLIC UTILITY DISTRICT, )
a public service corporation of the )
State of California, et al.,        )
                           )
                Defendants. )

Come now the Defendants FRANK R. CAPRA and LUCILLE W. CAPRA and separating themselves from the other defendants, allege, deny and admit as follows:

FIRST DEFENSE

I.

These Defendants allege that they and each of them are without knowledge or information sufficient to form a belief as to the truth of the Plaintiff's allegation that the above entitled action was commenced or that the Complaint was filed "at the request of the Secretary of the Department of the Navy" and therefore deny said allegation.

II.

Answering Paragraph I of the Complaint, these defendants and each of them, deny that any "actual controversy" or any

controversy at all, had arisen prior to the commencement of this action or has arisen as between the United States of America and either of these defendants, as alleged in said paragraph and that as to the other defendants, these defendants and each of them allege that he is without knowledge or information sufficient to form a belief as to the truth of the allegation that an actual controversy has arisen between the United States of America and the defendants named herein and therefore denies said allegation. Further answering Paragraph I of the Complaint, these Defendants deny that they have, or either of them has, unlawfully or otherwise interfered with the rights of the United States of America.

### III.

Answering Paragraph II of the Complaint, these Defendants admit that the United States of America acquired the Rancho Santa Margarita at the times alleged in said Paragraph and thereafter developed and installed the military establishments and constructed the facilities referred to, in said paragraph, on portions of said Rancho but these Defendants are informed and believe, and therefore allege the fact to be that the said military establishments do not occupy all of the 135,000 acres acquired by the United States in the Counties of San Diego and Orange, State of California, nor are all of said 135,000 acres utilized for military purposes but that several thousand acres of land, the exact amount being unknown to these defendants, has been, at all times since said property was acquired by the United States, and now is occupied, used and devoted to commercial farming, said land being rented out in varying sized tracts to various private persons, firms and corporations for that purpose. These defendants and each of them are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in said Paragraph and therefore deny each and every other allegation.

-2-

IV.

Answering Paragraph III of the Complaint, these defendants allege that they and each of them is without knowledge or information sufficient to form a belief as to the truth of the facts alleged therein and therefore deny all the allegations of said paragraph. However, these Defendants allege that if it be true that the State of California has ceded any jurisdiction to the United States of America over said land, such cession was only operative and effective to the extent and for the time that said tract of land was to be used and actually was used for the purpose of erecting and maintaining forts, magazines, arsenals, dockyards and other needful buildings thereon and was not intended to, and in fact did not, extend to the thousands of acres of land occupied, used and devoted to commercial farming by private persons which these Defendants are informed and believe to be the fact ever since the government acquired said land.

V.

Answering Paragraph IV of the Complaint, these Defendants do not have, nor do either of them have, sufficient knowledge, information or belief to enable them to answer the allegations therein to the effect that salt water intrusion from the Pacific Ocean threatens the destruction of said basin or that two wells have been destroyed by reason of that intrusion and therefore deny said allegations. These Defendants admit that the Santa Margarita River traverses a portion of the property of Plaintiff but allege that it is a non-navigable stream. Admit that in the dry season of the year the surface stream customarily and ordinarily disappears at a point on the lands of the United States at approximately eight miles from the ocean sinking into the sands and gravel of its bed and channel. That later it reappears as a surface stream two or three miles below, thence flowing as a surface stream but diminishing in volume to its confluence with tidewater. These Defendants allege that at various other points and places above

Plaintiff's said property the river disappears as a surface stream and sinks into the sands and gravels of one or more of the numerous basins which exist underneath each of the valleys which are found along the said river and along its several tributaries before said river enters the property of Plaintiff. Allege that no portion of any of these basins form any part of the basin or basins which underlie Plaintiff's said property nor do any part of these basins underlie any portion of Plaintiff's said property. These Defendants deny that they have in anyway encroached upon any rights which Plaintiff may have or by their alleged encroachment, threaten a destruction of the basin referred to in said Complaint. Deny that the activities of these Defendants, or either of them, have in anyway encroached upon or through their alleged encroachments upstream, they have reduced the quantities available to the United States of America from the "subterranean sources" mentioned in said Paragraph or that there has been a reduction in the surface flow of the Santa Margarita River through the alleged encroachment of these Defendants. Deny that any acts of either of these Defendants, has damaged any rights or property of Plaintiff. Defendants allege that, if it is true that there exists a threat of salt water intrusion into the basin or basins in which Plaintiff's wells are located, or if it is true that two of Plaintiff's wells have been destroyed by reason of that intrusion, such injury, or threatened injury, was not the result of the activities of these Defendants, or either of them, nor brought about through their alleged encroachment upstream but was, in part at least, the result of a severe and protracted drought affecting all of Southern California and affecting not only the wells of Plaintiff but all wells in the Santa Margarita watershed and also wells in every other watershed through Southern California. Furthermore, Defendants are informed and believe, and therefore allege the fact to be, that Plaintiff's injury, or threatened

injury, was brought about principally as the direct result of Plaintiff's misuse of the basin or basins underlying its said property and mismanagement of its said wells and the operation thereof and in the misuse and misapplication of the water produced therefrom and the wrongful, excessive and unreasonable diversions and uses and places of use of said water, including the exportation by Plaintiff of large quantities of said water beyond the basin and watershed of said Santa Margarita River from whence said water, or any part thereof, could never return.

As to the allegation that "underlying the river and its tributaries is a vast underground basin" and that "the basin as a whole creates a large underground reservoir into which a high proportion of the Santa Margarita River sinks" and that "this vast subterranean reservoir constitutes one of the principal sources of water for the military purposes declared above", these Defendants allege that they and each of them are without knowledge and information sufficient to form a belief as to the truth of said allegations and therefore deny each and every one of said allegations.

VI.

Answering Paragraph V of the Complaint, these Defendants admit the trial of the suit referred to in said paragraph being Action No. 42850 in the Superior Court of the State of California in and for the County of San Diego, but allege that the decision of the trial court was reversed by the Supreme Court of the State of California (Rancho Santa Margarita v. Vail 11C(2) 501) and thereafter a Stipulation or Agreement was entered into between the Plaintiff in said action and the Defendant Vail interests calling for the entry of the stipulated judgment therein, a copy of which is attached to and made a part of the Plaintiff's Complaint as Exhibit "A". These Defendants deny that the parties to said litigation declared their rights or fixed their aliquot shares of all

-5-

8698
/3

the waters of the Santa Margarita River, premised upon the findings of the trial court or upon the decision of the California Supreme Court when the matter was on appeal before it. These Defendants deny that they or their predecessors in interest, were parties to said suit or to said stipulation and deny that any of the rights of these Defendants in the Santa Margarita River or its tributaries were adjudicated in said suit or fixed by said Judgment. These Defendants allege that they are not bound in anyway by said Stipulated Judgment, nor are their rights limited or controlled by it. That these Defendants and each of them are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in said paragraph and therefore deny each and all the said other allegations.

VII.

Answering Paragraph VI of the Complaint, these Defendants admit that Plaintiff is the successor in interest of the Rancho Santa Margarita but deny that it is entitled to, or can claim, as against these Defendants, all rights, titles, interest and privileges purported to have been given to said Rancho Santa Margarita by the said Stipulated Judgment or that Plaintiff is entitled to or can claim, as against these Defendants, any more water than the amount which is or may be reasonably and actually required for riparian uses and purposes on that portion of said Rancho Santa Margarita which is actually riparian to said Santa Margarita River, which amount of water is, under present conditions, as these Defendants are informed and believe, and therefore allege the fact to be, not to exceed 2,620 acre-feet per annum.

VIII.

Answering Paragraph VII of the Complaint, these Defendants allege that they are without knowledge and information sufficient

to form a belief as to the truth of the allegations therein contained and therefore deny each and all of the allegations of said Paragraph.

IX.

Answering Paragraph VIII of the Complaint, these Defendants deny that Plaintiff has a paramount right to 35,000 acre-feet of water annually or a paramount right to any quantity of water except as hereinafter admitted. Defendants allege that they are without knowledge or information sufficient to form a belief as to the truth of the other allegations contained in said paragraph and therefore deny each and all of the other allegations of said paragraph not herein specifically admitted.

X.

Answering Paragraph IX of the Complaint, these Defendants deny that they or either of them have made any diversions from the Santa Margarita River in violation of rights of the United States of America; deny that these Defendants or either of them by reason of their diversions from the Santa Margarita River has caused the intrusion of salt water from the Pacific Ocean, or otherwise caused damage to the United States of America; deny that they or either of them have repeatedly or at all, through overt acts or otherwise, displayed their disregard for the rights of the United States of America or declared claims in contravention of the rights of the United States of America. These Defendants deny that their rights were acquired subsequent to the rights of the United States; deny that these Defendants, or either of them, have asserted that their rights were or are paramount to the rights of the United States except as set forth in the Second Defense of this Answer to which reference is hereby made for the nature and extent of said asserted rights and claims; deny that they, or either of them, have proceeded to encroach upon or are

-7-

8690

now encroaching upon, or threaten to encroach upon, the water supply of Camp Pendleton, the United States Naval Hospital or the Naval Ammunition Depot. These Defendants are informed and believe and therefore allege that but for Plaintiff's excessive diversions, unreasonable uses and wrongful exportation of water to places outside the basin and watershed of Santa Margarita River, as alleged in Paragraph V hereof, there would be a sufficient supply of water to meet the rightful needs and lawful requirements of plaintiff and these defendants.

These Defendants and each of them, is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in said Paragraph IX contained and therefore deny both generally and specifically each and all of the said allegations except as herein expressly admitted or expressly denied.

8691

FOR A FURTHER, SECOND AND SEPARATE DEFENSE, THESE DEFENDANTS ALLEGE:

I.

That these defendants are the owners of and in possession of all that certain real property situated lying and being in the County of San Diego, State of California, known as the "Red Mountain Ranch" and particularly described as follows:

> A portion of the Southwest Quarter of Section 16, Township 9 South, Range 3 West, San Bernardino Base and Meridian, in the County of San Diego, State of California, described as follows:
>
> Beginning at a point on the South line of said Southwest Quarter of Section 16, distant North 89° 05' East 2071.45 feet from the Southwest corner thereof; thence North 21° 38' 20" East, 167.76 feet; thence North 46° 13' 50" East 576.56 feet; thence North 0° 43' West 344.26 feet; thence North 20° 10' 10" East 162.69 feet; thence North 20° 34' 40" West 170.72 feet; thence North 0° 43' West, 1447.00 feet to the North line of said Southwest Quarter of Section 16; thence thereon North 89° 01' 10" East 157.64 feet to the Northeast corner thereof; thence along the East line thereof South 0° 01' 20" East 2651.36 feet to the Southeast corner thereof; thence along said South line thereof South 89° 05' West 610.55 feet to the point of beginning.

That the record title to said last described land is vested in FRANK CAPRA and LUCILLE CAPRA, husband and wife, as joint tenants.

These defendants also own as part of said "Red Mountain Ranch"

> The Southwest Quarter of the Northeast Quarter; the Northeast Quarter of the Northwest Quarter; the South Half of the Northwest Quarter; the Southwest Quarter; all in Section Fifteen, Township Nine South, Range Three West, San Bernardino Meridian.

-9-

8692

Excepting therefrom all that portion of the Southeast Quarter of the Southwest Quarter of said Section Fifteen, described as follows:

Beginning at the point of intersection of the Northerly line of the State Highway with the East line of said Southwest Quarter of said Section 15, said point being North 3° 00' West, 1036.18 feet from the Southeast corner of said Southwest Quarter of said Section; thence North 3°00' West along said East line of said Southwest Quarter, 183.18 feet; thence South 80° 45' West, 217.60 feet; thence South 24° 20' West, 150 feet to a point on said Northerly line of said State Highway; thence South 65°40' East along said Northerly line 15.0 feet to the beginning of a tangent curve therein, concave to the North, whose center bears North 24° 20' East 270.00 feet from said beginning of said curve; thence Easterly along said curve, 150.00 feet to the end thereof; thence North 82° 30' East along said Northerly line of said Highway, 127.10 feet to the point of beginning.

Also excepting all that portion of said Southeast Quarter of the Southwest Quarter of said Section 15, described as follows:

Beginning at the point of intersection of the Southerly line of the above mentioned State Highway with said East line of said Southwest Quarter of said Section 15, said point being North 3° 00' West, 976.00 feet from the Southeast corner of said Southwest Quarter of said Section; thence South 82° 30' West along said Southerly line of said Highway, 76.50 feet to its intersection with the Northeasterly line of the County Road; thence Southeasterly along said Northeasterly line of said County Road; being also along a curve concave Southwesterly to its intersection

-10-

8693

with said East line of the Southwest Quarter of said Section 15; thence North 3° 00' West along said East line, 52.00 feet to the point of beginning.

The Southeast Quarter of Section Sixteen, Township Nine South, Range Three West, San Bernardino Meridian, and all that portion of the Southwest Quarter of said Section Sixteen, described as follows:

Beginning at a point on the South line of said Southwest Quarter of Section 16, distant North 89° 05' East, 2071.45 feet from the Southwest corner thereof; thence North 21° 38' 20" East, 167.76 feet; thence North 46° 13' 50" East, 576.56 feet; thence North 0°43' West, 344.26 feet; thence North 20° 10' 10" East, 162.69 feet; thence North 20° 34'40" West, 170.72 feet; thence North 0° 43' West 1447.00 feet to the North line of said Southwest Quarter of Section 16; thence thereon North 89° 01' 10" East, 157.64 feet to the Northeast corner thereof; thence along the East line thereof South 0° 01'20" East, 2651.36 feet to the Southeast corner thereof; thence along said South line thereof South 89°05' West 610.55 feet to the point of beginning.

The Northwest Quarter of the Northwest Quarter of Section Twenty-two, Township Nine South, Range Three West San Bernardino Meridian.

Also all that portion of Section Twenty-one, Township Nine South, Range Three West, San Bernardino Meridian, described as follows:

Commencing at the Northeast corner of said Section 21, and running thence South along the East line of said Section 21, 28 rods; thence West 28-1/2 rods; thence North 28 rods to a point in the North line of said Section 21; thence East along the North line of said Section 28-1/2 rods

-11-

8694    19

to the point of commencement.

That the record title to the foregoing described lands is vested in FRANK CAPRA, a married man.

That these defendants are also the owners of that certain real property situated, lying and being in the County of San Diego, State of California, known as the "Rainbow Ranch" and particularly described as follows:

> The Southwest Quarter; The Southeast Quarter of the Northwest Quarter; The South Half of the Northeast Quarter of the Northwest Quarter; the North Half of the Northeast Quarter of the Northwest Quarter; The West Half of the Northwest Quarter; the Northwest Quarter of the Northeast Quarter, all in Section 10, Township 9 South, Range 3 West, S B M; The North Half of the Southeast Quarter and the East Half of the Northeast Quarter in Section 9, Township 9 South, Range 3 West, S B M, all in the County of San Diego, State of California, according to the United States Government Survey approved April 21, 1890.

That the record title to the last described land is vested in FRANK CAPRA, a married man.

II.

That all of said lands are located in a semi-arid region of the country and without water are un-productive and of little value and are hardly inhabitable, but with water, the arable lands thereof are highly productive and of great value.

III.

That the "Red Mountain Ranch" is one of the oldest and best known ranches in the northern part of San Diego County, having been settled prior to 1887 and before the turn of the century was developed as a citrus ranch with large plantings of navel orange and lemon trees, and operating its own packing house.

-12-

0695

20

Among the early plantings also were 25 acres of apricots. Shortly after the turn of the century there was added extensive plantings of olive trees followed by the building of a packing and processing plant to handle the output thereof. Residences, required for homes for the owners and other employees engaged in operating the ranch, were constructed thereon from time to time to the number of twelve and barns, warehouses and various farm structures were built as needed to serve the purposes of the ranch. Under the present owners, a 4000-chicken poultry farm has been installed on the ranch equipped with poultry houses, pens and other facilities incidental to the operation of such an activity. Keeping pace with the plantings and development of the ranch there was developed and constructed extensive water works and irrigation system, including wells, reservoirs and pipelines, to supply the domestic, livestock and irrigation requirements of the ranch and the people living thereon. The value of said wells, reservoirs, pipe lines and irrigation facilities is in excess of $150,000.00. That the value of the administration building, two ware-houses, olive processing plant, 12 residences and other farm buildings and structures now on the ranch is in excess of $100,000.00.

IV.

That the immediate requirements for the original settler on this property was made from a spring (later developed into Well No. 5) beside which he built his house, but succeeding owners who planted the orange and lemon trees found it necessary in 1890 to dig Wells No. 1 and 2 and flume water from another spring (later developed as Well No. 3) to supply irrigation water for their groves. Further plantings and increased requirements for water resulted in opening up and developing the last named spring and constructing the first of four reservoirs. Around 1928 the last mentioned spring was converted into Well No. 3 and Wells No. 4 and 5

-13-

8696

were dug and shortly thereafter a large reservoir was constructed on the premises and added to the ranch irrigation system. Later in 1946, Wells No. 6 and 7 were dug and tied into the irrigation system. That under normal conditions said wells have a productive capacity of approximately 800 acre-feet per annum but due to the current severe drought their production has been reduced to a present capacity of approximately 435 acre-feet per annum.

V.

That all the lands constituting said "Red Mountain Ranch" have been at all times, and now are, farmed and operated as a unit, and the waters produced from one well intermingled with the water produced from the others and used wherever on the ranch seemed best and expedient. That in the year 1949 these defendants sold and conveyed to the Falbrook Public Utility District 59.77 acres in the West 1/2 of Section 15, Township 9 South, Range 3 W S B M for reservoir purposes. That of the remaining 465.23 acres, approximately 221 acres are planted and under irrigation. That approximately 60 additional acres are arable and will be planted and put under irrigation. That the remainder of said ranch is valuable for grazing lands.

VI.

That the lands constituting the said "Red Mountain Ranch" are traversed by several natural watercourses or creeks which drain into other water courses and creeks which are tributaries of the San Luis Rey River and said lands are riparian to said watercourses and creeks. That there are no watercourses, creeks or streams on the lands of said "Red Mountain Ranch" which drain into the Santa Margarita River or any of its tributaries. That all the lands constituting the said "Red Mountain Ranch" are within the watershed of the said San Luis Rey River except possibly

-14-

8697

23 or 24 acres in the northwest corner of the Ranch, to-wit: in the Northwest 1/4 of the Southeast 1/4 of Section 16, Township 9 S. R. 3 W. S B M. That none of the wells on said Ranch are located within the Santa Margarita River watershed and no water originating in the Santa Margarita Watershed has ever been diverted to or used upon any of the lands of said Ranch, but substantial amounts of water produced from the wells of said Ranch located within the San Luis Rey River watershed have been diverted to and used upon the said lands of said Ranch lying within said Santa Margarita Watershed, the return flow from which water has and does drain into tributaries of the Santa Margarita River increasing the flow of said river to that extent.

VII.

That most of said lands constituting said "Red Mountain Ranch" overlie strata of underground percolating water from which an adequate supply may be obtained for use thereon by digging wells therein and pumping water therefrom.

VIII.

That all of the water developed and produced on said Ranch, and more, is reasonably required to supply the reasonable requirements of said Ranch and the rights to all said water and water supply, present and potential belongs to these defendants and their right and title thereto is paramount to any right or claim of right which plaintiff has or may have therein.

IX.

That the lands constituting the "Rainbow Ranch" are traversed by the Rainbow Creek, a tributary of the Santa Margarita River for a distance of a mile and a quarter. That said Rainbow Creek, at the places where it crosses said Ranch is a live stream with a

substantial surface flow throughout the entire year. Also there are several watercourses and creeks crossing said property which watercourses and creeks are tributaries of said Rainbow Creek. That all of the lands constituting said "Rainbow Ranch" are riparian to said Rainbow Creek and its said tributaries except a small strip of land along the southern boundary line of the Southwest 1/4 of Section 10, Township 9 South, Range 3 West S B M not exceeding 15 acres in area, which said strip lies in the San Luis Rey River watershed.

X.

That substantial portions of said Ranch overly strata of underground percolating water from which an adequate supply may be obtained for use thereon by digging wells therein and pumping water therefrom.

XI.

That approximately 200 acres of the lands constituting said "Rainbow Ranch" lying and being in the watershed of said Rainbow Creek and riparian thereto are arable and suitable for growing avocados and other fruits, vegetables and alfalfa. That the remainder of said lands are valuable for stock grazing and adequate for feeding approximately 200 head of cattle. These defendants plan and intend to plant the said arable lands to avocados and other fruit trees and to irrigate the same by direct diversion from said Rainbow Creek and its tributaries or by means of wells to be dug into the said strata of underground percolating water and by pumping a supply therefrom, or by both direct diversion and by such wells.

XII.

That said ranch is improved by being completely fenced and cross-fenced with private roads thereon connecting the various areas thereof for ready access and has located thereon a five-room house and a well nearby adequate for the domestic needs of the residents of said house.

-16-

8699

## XIII.

That the defendants, as the owners of said "Rainbow Ranch", are the owners of the riparian water rights and the right to take a reasonable quantity of water from said Rainbow Creek and its several tributaries for beneficial use on the lands riparian thereto. That these defendants are the owners of the right to take from said creeks and watercourses and from the strata of underground percolating water, up to 600 acre-feet per annum for domestic, irrigation and stock water purposes and that said right of these defendants is correlative with the right of plaintiff to take a reasonable amount of water of the Santa Margarita River for reasonable, beneficial and riparian uses on its riparian lands which at the present time, as these defendants are informed and believe and therefore allege to be, not exceeding 2620 acre-feet per annum. That as to all other rights and claims of rights of plaintiff in and to the waters of said Santa Margarita River and its tributaries, the rights of these defendants, as the owners of said "Rainbow Ranch", are paramount thereto.

WHEREFORE these Defendants pray:

1. That Plaintiff take nothing by its action.

2. That these Defendants be found and declared to be the owners, as against the Plaintiff herein, of a prior and paramount right to all the waters and water supply developed and to be developed on said "Red Mountain Ranch".

3. That these Defendants be found and declared to be the owners, as against the plaintiff herein, of a right to beneficially use on all of the lands of said "Rainbow Ranch" lying within the watershed of the Santa Margarita River, a reasonable amount of the

waters of the Rainbow Creek and its tributaries and a reasonable amount of the percolating waters underlying said lands up to 600 acre-feet of water per annum and that said right be found and declared to be correlative with the right of the Plaintiff to use a reasonable amount of the waters of the Santa Margarita River on its riparian lands for riparian purposes; that as against all other rights and claims of rights of Plaintiff to the waters of said Santa Margarita River and its tributaries, the said rights of these defendants be declared to be prior and paramount thereto.

4. That these Defendants have judgment for their costs incurred herein and for such other and further relief as may to the court seem meet and proper.

SWING, SCHARNIKOW & STANIFORTH

BY *[signature]*

Attorneys for Defendants

FRANK CAPRA and LUCILLE W. CAPRA

RECEIVED copy of within Answer this 1st day of Nov., 1951

*[signature]*

Attorneys for Plaintiff