BETTY MARSHALL GRAYDON
Assistant United States Attorney
1405 Fifth Avenue
San Diego 1, California
Telephone: F 9-4101

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,
Plaintiff,

v.

FALLBTOOK PUBLIC UTILITY DISTRICT, a public service corporation of the State of California;

ET AL.,
Defendants,

PEOPLE OF THE STATE OF CALIFORNIA,
Defendants in Intervention.

No. 1247

STATEMENT

FILED
DEC 3 - 1951
EDMUND L. SMITH, Clerk
By ... DEPUTY CLERK

The UNITED STATES OF AMERICA, pursuant to Rule 42 (b) of the Federal Rules of Civil Procedure, has moved this Court to separate for trial certain fundamental issues of law in regard to named defendants. In support of those motions there has been filed a memorandum of points and authorities. It is respectfully submitted that those authorities constitute ample grounds for granting those motions. For what added assistance it may be to the Court in making its determination there will be reviewed certain factors now before the Court or concerning which this Court will take judicial notice. Particularly important are certain physical phenomena to which counsel for the Fallbrook Public Utility District has referred as within the judicial knowledge of this Court. 1/ Those phenomena, it is believed, weigh heavily in favor of granting to the United States the motions which are now pending. Prior to discussing those features, however, brief reference will be made to another element of transcendent importance.

1/ Points and Authorities on Motions for a More Definite Statement and to Strike out Portions of Complaint - Fallbrook Public Utility District, page 3.

462

Stipulation Between the United States of America and the Vail Interests

There was filed with this Court on October 24, 1951, a stipulation with the Vails. In substance that stipulation resolves in this litigation all conflict between the two largest land owners in the watershed of the Santa Margarita River. When considered in the light of the Stipulated Judgment, Exhibit A of the Complaint in this cause, it is evident that there has been settled between those two claimants by far the greatest rights in that stream.

Geographical Aspects of the Santa Margarita River Watershed

From the map of the watershed the true purport of that statement is evident. It will be observed that as between the parties mentioned, all rights to the use of water have been determined in regard to:

(1) That reach of the Santa Margarita River consisting of the last twenty-one miles of river flowing between the eastern boundary of Camp Joseph H. Pendleton and the Pacific Ocean;

(2) That reach of the river extending from the mouth of Temecula Gorge to Nigger Canyon where the Vails have located their reservoir with a maximum capacity of 50,000 acre-feet of water with a priority of 1946.

Thus it will be seen that the portion of the Santa Margarita River not covered by the stipulation between the United States and the Vail interests is divided into two very distinct areas:

(1) The area between the western end of Temecula Gorge and the eastern boundary of Camp Pendleton - an area, due to encroachments and threatened encroachments upon vested rights of the United States, properly termed the critical area.

(2) The area above Nigger Canyon Reservoir.

The defendants Fallbrook Public Utility District, Santa Margarita Mutual Water Company and Pankoniens are within the critical area. Counsel for the Fallbrook

Public Utility District has emphasized that this Court will take judicial notice of the unique physical features of the Santa Margarita River. These are his words:

> "* * * this Court will take judicial notice of matters of common knowledge within the limits or boundaries of its jurisdiction * * * and physical and geographical facts set forth in public official documents, geographies and maps * * * The Court knows that the Temecula Canyon (called the Temecula Gorge in the Stipulated Judgment, Exhibit "A" of Plaintiff's Complaint) sharply divides and separates the lower portion commonly called the Santa Margarita River from the upper portion commonly called the Temecula River and that the Temecula River is itself divided into at least two major areas, one embracing the Temecula Creek and the other the Murrieta Creek." 2/

Counsel for the Fallbrook Public Utility District further commented as follows in regard to the physical features of the river:

> "I think it is admitted that there are three basins on the Rancho Santa Margarita; it is called the lower, the middle, and the upper basin, and there are other basins upstream in the Temecula area and the Murietta Creek area, and both, as I understand it, have basins." 3/

Thus by counsel's own argument it is evident that the geographical features of the Santa Margarita River readily lend themselves to the separation of issues pursuant to Rule 42 (b) as proposed.

Available Supply of Water Within the Watershed of the Santa Margarita River

Respecting the extremely limited yield of the Santa Margarita River counsel for the Fallbrook Public Utility District has stated:

---

2/ Points and Authorities on Motions for a More Definite Statement, etc.- Fallbrook Public Utility District, page 3.

3/ Hearings before a Special Subcommittee on Irrigation and Reclamation of the Committee on Interior and Insular Affairs, House of Representatives, August 13 and 14, 1951, page 64.



464

"Now the Santa Margarita is very much overappropriated, if I might use that expression. If all the water that the United States Government is in a position to claim is the unappropriated water I don't know what good that will do them to get a decree saying that they are the owners of the unappropriated water when there isn't any unappropriated water left." 4/

He likewise stated in regard to the lands of the United States: "Only 35,000 acres of this ranch, out of 135,000, are riparian * * *." 5/ That accords substantially with counsel's previous statements. 6/ Regarding the quantity of water in the river, counsel stated: "he asserts that the Government's right to 35,000 acre-feet of water a year, which is more water than there is in the river, on the average, that the Government has the paramount right to it." 7/ Thus, there is less than one acre-foot per acre. Counsel there was simply reiterating what the Supreme Court of the State of California had previously declared. Speaking in regard to the respective rights of the Vails and the Rancho Santa Margarita, predecessor in interest of the United States, that forum declared:

"* * * the normal flow of the Temecula-Santa Margarita River is not sufficient to supply all the riparian needs of all of the riparian lands of either respondent or appellants, and that there is only enough water available for the irrigation of a portion of their riparian lands and for the uses thereon which are most valuable and profitable." 8/

Adopting counsel's earlier statement that this Court will take judicial notice of characteristics of a river, this Court will, it is respectfully submitted,

---

4/ Hearings before a Special Subcommittee, etc., August 13 and 14, 1951, page 62.

5/ Hearings before a Special Subcommittee, etc., August 13 and 14, 1951, page 62.

6/ Please refer to Exhibit F, Brief of the United States in Response to Motions, May 1, 1951.

7/ Hearings before a Special Subcommittee, etc., August 13 and 14, 1951, page 53.

8/ Rancho Santa Margarita v. Vail, 11 Cal.2d 546, 81 P.2d 533, 541 (1938).

take judicial notice of the fact that the supply of water available to the Vails is insufficient to irrigate the many thousand acres of riparian lands. Thus if the Vails were to exercise their full riparian rights during the irrigation season no water from the Temecula-Santa Margarita River would enter Temecula Gorge, concerning which counsel for the Fallbrook Public Utility District has stated this Court will take judicial notice. However, by reason of the force and effect of the Stipulated Judgment, Exhibit A of the Complaint, the Vails, among many other things, are required to maintain at the mouth of Temecula Gorge a flow of three cubic feet of water per second of time. There devolves upon the Vails, as revealed by Exhibit A of the Complaint, an obligation to maintain that flow at the head of Temecula Gorge although pumping from Temecula Basin to accomplish that end would be required. Accordingly, it is evident from the location of defendants Fallbrook Public Utility District, Santa Margarita Mutual Water Company, and Pankoniens, that they are so situated between the point where the Vails release water to fulfill their responsibility to the United States and the boundary of Camp Joseph H. Pendleton that they present a unique situation. Thus diversions - particularly such as that of the Fallbrook Public Utility District taking water out of the watershed of the Santa Margarita River - encroach directly upon waters released by the Vails to fulfill their responsibility to the United States under the Stipulated Judgment. From the answers now before this Court it will be observed that the Fallbrook Public Utility District alone is diverting that water out of the watershed - a factor justifying the separation of that claimant from all others for the purpose of trial. Likewise from the pleadings and statements made by representatives of the Fallbrook Public Utility District it will be observed that:

(1) The Fallbrook Public Utility District has for many years past obtained its water from sources other than the Santa Margarita River and is today receiving water from those sources; 9/

9/ Hearings before a Special Subcommittee, etc., August 13 and 14, 1951, page 20, page 22, and page 24.

(2) It was not until February 18, 1948, that the diversions by that District were "legalized" [the true meaning of legalization is a matter which at the trial of the facts will be disclosed] under the laws of the State of California.[10/] Those factors go far in substantiating the position that the United States and the Fallbrook Public Utility District should try out the issues mentioned in the motion and should separately try out the facts regarding their respective claims.

A further and additional element revealed by the pleadings of the Fallbrook Public Utility District is of extreme importance in regard to separation and trial of that claim. Seeking to justify its diversion of Santa Margarita River water it alleges that it exports large quantities of Colorado River water and San Luis Rey River water which in some unfathomable way is exchanged for its encroachment upon the Santa Margarita River. By trying out that question of alleged exchange, it will be possible to disprove it and having disproved it, many defendants within the Fallbrook Public Utility District may be dismissed. Thus, by trying out that issue in advance it will be possible to reduce the number of defendants, further expediting the trial of the case.

Though the adverse claims of the Santa Margarita Mutual Water Company and Pankoniens involve problems similar in character to those presented by the Fallbrook Public Utility District, they raise, as the motions before this Court reveal, additional problems of law warranting their separation.

Statements and Acts Strongly Support Granting Motions

Counsel for the Fallbrook Public Utility District has made statements which, it is respectfully submitted, appear to be conclusive in the matter here under consideration. On the subject of parties, counsel declared:

"As I said to Mr. Veeder in the last conference I had with him - and I did not hear him dissent from it - 90 percent of these defendants use less than 10 percent of the water of the Santa Margarita. Ten percent is the estimated loss,

---

10/ Hearings before a Special Subcommittee, etc., August 13 and 14, 1951, page 30. Note: Under a license, revocable in character, the Rancho Santa Margarita at a relatively recent date, allowed the Fallbrook Public Utility District to divert a minuscule quantity of water from the Santa Margarita River.

anyway, in transportation in ordinary water activities, and 10 percent are users of 90 percent of the water;"

Then counsel added this statement - a statement, it is respectfully submitted, that fully justifies the motion which has been filed against the Fallbrook Public Utility District:

"the Vails, the Rancho Santa Margarita, or the Government, and probably Fallbrook and one or two others, and that by confining themselves to 10 percent they could have got a practical adjudication of everything that they ever could enforce." 11/

To this statement:

"* * * for all practical purposes, since there is transperation and evaporation, and since it is impractical to police the whole river, a determination of the Government rights under the purchase documents, whatever they are, could be had in a suit involving a handful of defendants?"

counsel responded:

"Absolutely." 12/

Counsel well knows that this suit may not be concluded by a determination of the rights of a mere handful of people. Litigation on the Santa Margarita River above Nigger Canyon Reservoir initiated by counsel for Fallbrook Public Utility District precludes the trial of the issues against a mere handful of water claimants. 13/

Counsel for the Fallbrook Public Utility District has also stated:

"We are at this minute conducting the hearing within the Santa Margarita watershed, and one of its principal tributaries runs just beyond the schoolgrounds, between here and the Santa Fe depot. It runs through the town of Fallbrook and on down and finally reaches the Santa Margarita." 14/

11/ Hearings before a Special Subcommittee, etc., August 13 and 14, 1951, page 55.
12/ Hearings before a Special Subcommittee, etc., August 13 and 14, 1951, page 56.
13/ Barbey v. Oviatt, et al., No. 154140, In the Superior Court of the State of California, in and for the County of San Diego.
14/ Hearings before a Special Subcommittee, etc., August 13 and 14, 1951, page 29.



10—20905-1 GPO O - 879013

Thus by two separate actions directly involving the rights of the United States, counsel for the Fallbrook Public Utility District has rendered this cause against many defendants inevitable. Nevertheless, it is respectfully submitted that by the separation for trial of the Fallbrook Public Utility District and the other defendants named in the motions, it will be possible:

(1) to simplify the issues;

(2) to render more convenient the trial of the remaining issues;

(3) to drop from the action many defendants.

For the reasons reviewed here and the propositions of law previously filed, this Court is respectfully petitioned to grant the motions now pending before it.

Dated: Dec. 3 - 1951

Betty Marshall Graydon
BETTY MARSHALL GRAYDON,
Assistant United States Attorney

William H. Veeder
WILLIAM H. VEEDER,
Special Assistant to the Attorney General



469