1  BETTY MARSHALL GRAYDON
   Assistant United States Attorney
2  1405 Fifth Avenue
   San Diego 1, California
3  Telephone: F 9-1101

4  Attorney for Plaintiff

F I L E D

JAN 7 - 1952

EDMUND L. SMITH, Clerk

*Jmon*

DEPUTY CLERK

8        IN THE UNITED STATES DISTRICT COURT

9      IN AID FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10               SOUTHERN DIVISION

11  UNITED STATES OF AMERICA,           )
                                        )
12              Plaintiff,              )
                                        )
13       v.                             )        No. 1247-SD
                                        )
14  FALLBROOK PUBLIC UTILITY DISTRICT, a)      ANSWERS TO INTERROGATORIES
       public service corporation of the)
15     State of California; et al.,     )              OF
                                        )
16              Defendants,             )      DEFENDANT, FALLBROOK PUBLIC
                                        )           UTILITY DISTRICT
17  PEOPLE OF THE STATE OF CALIFORNIA,  )
                                        )
18              Defendants in           )
                   Intervention.        )
19

20        Comes now WALTER J. TURNBULL, JR., Civilian in Charge, Office of Ground

21  Water Resources, Marine Barracks, Camp Joseph H. Pendleton, Oceanside, California,

22  on behalf of the UNITED STATES OF AMERICA, in response to the interrogatories

23  number one to twenty-five, inclusive, propounded by the defendant Fallbrook

24  Public Utility District, and says:

25        1.  ANSWERING INTERROGATORY NUMBER ONE (1), that the military

26  establishments and military installations situate upon approximately

27  135,000 acres of land acquired by the United States which comprise Camp

28  Joseph H. Pendleton, the United States Naval Ammunition Depot, Fallbrook,

29  California, and the United States Naval Hospital located at Camp Joseph H.

30  Pendleton, all of which are located near Oceanside, California, and situate

31  in the counties of San Diego and Orange, State of California, are noted and

32  evinced by attached Map Number One (1) which delineates lands riparian to the Santa

662

Margarita River as those lands lying between the thread of the stream, including
its various tributaries, and the drainage divides of the drainage area or areas.

2. ANSWERING INTERROGATORY NUMBER TWO (2), that attached is Table Number
One (1) which is a summary of available records indicating the quantities of water
used at each of said military establishments and military installations month by
month.

3. ANSWERING INTERROGATORY NUMBER THREE (3), that of the area acquired
pursuant to action Number 197 S.D. in the United States District Court in and for
the Southern District of California, Southern Division, approximately 34,716 acres
are riparian to the Santa Margarita River, and its tributaries, and that of the
area acquired pursuant to action Number 321 S.D. in the aforesaid Court, and
otherwise, approximately 3,228 acres are riparian to the Santa Margarita River
and its tributaries.  The aforesaid lands riparian to the Santa Margarita River
and its tributaries are indicated upon the attached Map Number One (1) as defined
in answer to Interrogatory Number One (1).

4. ANSWERING INTERROGATORY NUMBER FOUR (4), that attached marked Table
Number Two (2) are the only records maintained by the United States of America upon
the lands comprising the military establishments here involved.  Those records
relate only to the surface flow of the Santa Margarita River at a point approxi-
mately two miles from tidewater.  No records of subsurface flow are maintained.

5. ANSWERING INTERROGATORY NUMBER FIVE (5), that there has been no water
from the Santa Margarita River reaching tidewater since the Nigger Canyon Reservoir
situated on the Vail Estate went into operation in 1949.  Subject to subtraction for
quantities of water which seep into the underground basin attached Table Number
Two (2) contains the requested information.

6. ANSWERING INTERROGATORY NUMBER SIX (6), that underlying the lands
comprising the military installations here involved and acquired by the United
States, situate within the Santa Margarita River Watershed, there is one (1) large
underground basin composed of three (3) component parts which are interconnected
and continuous as outlined in map attached as Exhibit E to that memorandum served
upon counsel for the Fallbrook Public Utility District and filed May 1, 1951,
with Response of United States to Motion for More Definite Statement or for Bill

- 2 -

663

1  of Particulars; Motion to Strike; Motion for a More Definite Statement; Motion

2  to Dismiss, Motion to Strike, and for an Order Directing Plaintiff to File a

3  More Definite Statement, in the United States District Court in and for the

4  Southern District of California, Southern Division, in this action.

5       7.  ANSWERING INTERROGATORY NUMBER SEVEN (7), that the map, Exhibit E

6  as identified in answer to Interrogatory Number Six (6), immediately above,

7  discloses the location of the underground basin within the Santa Margarita River

8  Watershed lying beneath the lands in question.  With releases of water as

9  provided for in the Stipulated Judgment, Exhibit A of the complaint, without

10  encroachments by the Fallbrook Public Utility District or any other diverter of

11  water out of the watershed, the average annual safe yield of the basin is

12  estimated to be approximately 7,000 acre-feet.  Upstream encroachments on the

13  Santa Margarita River resulting in insufficient water reaching the basin to

14  recharge it, reduce proportionately the safe net yield of the basin.  All water

15  in the basin above the net safe yield is required to prevent salt intrusion.  The

16  depths throughout the basin are unknown.  The capacity and the pervious material

17  throughout the basin are unknown.  The basin varies in width from approximately

18  one-eighth (1/8) of a mile to approximately one and one-half (1½) miles, as

19  revealed by the mentioned Exhibit E.

20       8.  ANSWERING INTERROGATORY NUMBER EIGHT (8), that there presently

21  exist two hundred six (206) wells upon the property.  There are attached photo-

22  static reproductions of preliminary United States Geological Survey Well Logs,

23  sheets numbered one (1) through one hundred eighty-four (184), with sheet numbered

24  eighty-three A (83A) inclusive, herein identified as Table Number Three (3)

25  which defines the location, size, depth, and strata of materials penetrated

26  by one hundred sixty-five (165) of such wells.  Well Logs relative to the

27  balance, or remaining forty-one (41) wells, are unavailable.  Reference is also made

28  to attached Map Number One (1), submitted in the answer to Interrogatory Number

29  One (1), above, which also defines the location of all wells located upon the lands

30  lying within the Santa Margarita River Watershed boundaries.

31       9.  ANSWERING INTERROGATORY NUMBER NINE (9), that submitted are Tables

32  Number Four (4) and Number Four-A (4-A) which define, describe, and outline, where

664

1    records are available, the type, make, size, and the rated capacity of each

2    pump located in each well; and also the kind, type, and horsepower of each

3    motor installed to operate each pump and the quantities of water which have

4    been produced from each of the wells, month by month.

5          10.   ANSWERING INTERROGATORY NUMBER TEN (10), that attached Table

6    Number Five (5) shows the static water level and the operational draw-down for

7    each well during the time the United States has owned the property.

8          11.   ANSWERING INTERROGATORY NUMBER ELEVEN (11), that attached Table

9    Number Six (6) shows the number of reservoirs, tanks, lakes, or ponds; and also

10   defines and describes the size and capacity and the purpose or use of each

11   reservoir, tank, lake, or pond.  Attached Maps Numbers Two (2) and Two-A (2-A)

12   are also submitted in answer to Interrogatory Number Eleven (11), indicating

13   the location and situs of each of the reservoirs, tanks, lakes, or ponds.

14         12.   ANSWERING INTERROGATORY NUMBER TWELVE (12), that reference is made

15   to Maps Numbers Two (2) and Two-A (2-A) submitted in answer to Interrogatory

16   Number Eleven (11) above, upon which are also shown all distribution pipe-lines,

17   the size of each, the source of water distributed thereby, and place of use of

18   the water, whether on or off riparian lands as indicated by the watershed boundary

19   lines which are also included on the map.

20         13.   ANSWERING INTERROGATORY NUMBER THIRTEEN (13), that attached Table

21   Number Seven (7) shows the quantities of water, where records are available,

22   for military, agricultural, and domestic purposes, month by month, since acquisi-

23   tion by the United States of the property.  Attached Maps Numbers One (1), Two (2)

24   and Two-A (2-A) submitted in answer to Interrogatories Numbers One (1) and Eleven

25   (11), respectively, are also referred to in answer to Interrogatory Number Thirteen

26   (13) indicating the situs where the water was used.

27         14.   ANSWERING INTERROGATORY NUMBER FOURTEEN (14), that the "other needs

28   * * * other than military" for which the United States is demanding water are

29   domestic needs in connection with the temporary agricultural uses made of the

30   water when not needed for immediate military demands.  No information is available

31   as to quantity.

32         15.   ANSWERING INTERROGATORY NUMBER FIFTEEN (15), that records are not

1  available which define the quantity of water used on riparian lands and on

2  non-riparian lands.  The only basic records of pumped water are obtained from

3  meters at the individual pumps from which primary source water is commingled in

4  reservoirs, tanks and distribution system as outlined on Maps Numbers Two (2)

5  and Two-A (2-A) submitted in answer to Interrogatory Number Eleven (11).

6          16.  ANSWERING INTERROGATORY NUMBER SIXTEEN (16), that the present

7  location of establishments supplied with water from the Santa Margarita River

8  are indicated on attached Maps Numbers Two (2) and Two-A (2-A) in answer to

9  Interrogatory Number Eleven (11).  Attached Table Number Nine (9) which is

10  submitted also in answer to Interrogatory Number Sixteen (16) defines the

11  quantities of water which have been supplied, month by month, from the Santa

12  Margarita River.

13          17.  ANSWERING INTERROGATORY NUMBER SEVENTEEN (17), that attached

14  Table Number Ten (10) indicates, month by month, where records are available,

15  the sewage effluence from sewage disposal plants temporarily exported and

16  discharged out of the Santa Margarita River Watershed, except Plants Nos. 1 and

17  3, but now being completed is a system which will retain within the watershed

18  all that effluence.

19          18.  ANSWERING INTERROGATORY NUMBER EIGHTEEN (18), that attached Table

20  Number Eleven (11) summarizes available records listing the tenants or lessees

21  occupying or farming lands on the Rancho Santa Margarita at the time the property

22  was acquired.  That table reveals known descriptions of the lands each of the

23  tenants or lessees occupied.  There are no available records of the use of land

24  or the acreage cultivated.

25          19.  ANSWERING INTERROGATORY NUMBER NINETEEN (19), that all land-use

26  occupation is under written documents and subject to the predominant military

27  uses for which the lands were acquired.  As stated by General Anderson in his

28  affidavit filed with this Court December 3, 1951: "any rights to the use of

29  water utilized for agricultural purposes are subject to the primary military

30  purpose for which the rights to the use of water were purchased.  * * * any rights

31  to the use of water utilized for agricultural purposes within Camp Joseph H.

32  Pendleton are exercised pursuant to revocable licensing agreements with the

1  understanding of the licensee that at any time the waters used by them are

2  required for military purposes, that the waters will no longer be used for

3  agricultural purposes."  There are twenty-nine (29) occupants of the lands held

4  under those circumstances.  The water temporarily used for agricultural purposes

5  is to avoid waste.  Tables Numbers Twelve (12) and Twelve-A (12-A) reveal the

6  requested data respecting the temporary agricultural use, where such records are

7  available, the occupants with a description of the lands, the acreages embraced,

8  and the quantities of water delivered to or used upon the lands month by month.

9      20.  ANSWERING INTERROGATORY NUMBER TWENTY (20), that exclusive

10 jurisdiction was ceded to the United States of America in accordance with the

11 pertinent provisions of the law by three separate letters dated respectively,

12 January 12, 1943, September 8, 1943, and February 18, 1944, from the Acting

13 Secretary of the Navy to Governor Warren.  The cession was acknowledged by

14 Governor Warren.  Copies of the mentioned letters are now before this Court as

15 Exhibits A, B and C of the Memorandum of the United States of America filed

16 May 1, 1951; all of which were served on counsel for the Fallbrook Public Utility

17 District on or about May 1, 1951; and which Memorandum is alluded to in the

18 answer to Interrogatory Number Six above.

19      21.  ANSWERING INTERROGATORY NUMBER TWENTY-ONE (21), that the United

20 States of America is exercising exclusive jurisdiction over the approximately

21 135,000 acres of land comprising the vital military establishments here involved.

22      22.  ANSWERING INTERROGATORY NUMBER TWENTY-TWO (22), that pursuant to

23 a "Revocable License and Permit to Use Water from the Santa Margarita River" the

24 Fallbrook Public Utility District, at the sufferance of the United States of

25 America and its predecessor in interest, diverted from the Santa Margarita River

26 ten miner's inches of water solely for domestic purposes.  That practice continued

27 until the year 1948.  Thus there is no reason for asserting a prescriptive right

28 against its former licensee, the Fallbrook Public Utility District, and none is

29 asserted.  Premised upon irrigated and irrigable acreage riparian to the stream

30 the United States of America is entitled to quantities of water from the Santa

31 Margarita River which far exceed the natural flow of that stream.  That riparian

32 acreage and the duty of water for crops customarily grown in the area in question

- 6 -

667

1  entitle the United States to divert annually 54,307 acre-feet of water - a

2  quantity, as stated, far exceeding the historical supply of the Santa Margarita

3  River.

4  Respecting certain waters historically diverted and applied to beneficial

5  use there arise mixed questions of law and fact to be determined by the Court.

6  Those rights involve the diversion and temporary impounding of water historically

7  utilized to irrigate lands and recharge the underground basin referred to above.

8  Those rights involve a surface diversion to fill what is known as Lake O'Neill

9  which has a total capacity of 1,700 acre-feet, which, dependent on the availability

10  of water during the summer months, is filled and refilled.  Certain other lands

11  referred to as Stuart Mesa have been historically irrigated and are claimed here

12  as within the riparian acreage.  Whether those lands have a riparian status is

13  a mixed question of law and fact.

14  Exhibit A of the Complaint, Stipulated Judgment:- Pursuant to that

15  Stipulated Judgment the Vail Estate is required during each irrigation season to

16  deliver three cubic feet per second of time of water to the United States of

17  America at the head of Temecula Canyon.  Except for that delivery the stream

18  during the period mentioned would be virtually dry.  The United States claims

19  that certain flow of three cubic feet of water per second of time delivered by

20  the Vail Estate during the mentioned period.  That three cubic feet of water per

21  second of time is in the nature of developed water, being there due to pumping

22  of water or releasesof it by the Vail Estate.

23  In addition, the United States of America, pursuant to the Stipulated

24  Judgment, has a right to two-thirds of all of the water which the combined rights

25  of the Vail Estate and the Rancho Santa Margarita, predecessor in interest of the

26  United States, would yield.  Included in that right, but not limited to it, is

27  the right of the United States of America to participate, on the basis provided

28  in the Stipulated Judgment, in the waters impounded in the Nigger Canyon Reservoir

29  which has a capacity of 50,000 acre-feet, with a priority date of August 16, 1946,

30  No. 11518.

31  23.  ANSWERING INTERROGATORY NUMBER TWENTY-THREE (23), that the specific

32  act of encroachment complained of:  After termination of the "Revocable License

663

- 7 -

1   and Permit to Use Water from the Santa Margarita River," pursuant to which the

2   Fallbrook Public Utility District, at the sufferance of the United States of

3   America, diverted water from the Santa Margarita River, the Fallbrook Public

4   Utility District committed its first encroachment upon the rights of the United

5   States.  That first encroachment was immediately subsequent to twelve (12)

6   o'clock Midnight July 31, 1948.  The specific act is pumping water from the

7   Santa Margarita River totaling approximately 1,800 acre-feet of water a year

8   at the rate of two and one-half (2½) cubic feet per second.  The Fallbrook Public

9   Utility District presumably acted alone.

10        24.   ANSWERING INTERROGATORY NUMBER TWENTY-FOUR (24), that Table Number

11   Thirteen (13) shows the legal description of those lands acquired by the United

12   States and presently used for Camp Joseph H. Pendleton, United States Naval

13   Ammunition Depot, and the United States Naval Hospital.  Map Number Six (6)

14   shows the above-mentioned areas as separately acquired.

15        25.   ANSWERING INTERROGATORY NUMBER TWENTY-FIVE (25), that all of the

16   approximately 135,000 acres of land have been used for the military purposes in

17   question since their acquisition.

18

19

20                                        Walter J. Turnbull
                                          Walter J. Turnbull, Jr.

21

22

23

24   Presented by:

25

26   Betty Marshall Graydon
     BETTY MARSHALL GRAYDON

27   Assistant United States Attorney

28

29

30

31

32

663

UNITED STATES OF AMERICA      )

SOUTHERN DISTRICT OF CALIFORNIA )     ss.

SOUTHERN DIVISION             )


WALTER J. TURNBULL, JR., being by me first duly sworn, deposes and says:

That he is the Civilian in Charge of the Office of Ground Water Resources, the United States Marine Corps, at Camp Joseph H. Pendleton, Oceanside, California;

That he has read the foregoing answers to interrogatories of defendant Fallbrook Public Utility District and knows the contents thereof and that the same is true of his own knowledge, except as to the matters which are stated therein upon his information or belief and as to those matters that he believes it to be true.


_Walter J. Turnbull Jr._
WALTER J. TURNBULL, JR.


Subscribed and sworn to before me this 7th day of January, 1952.

EDMUND L. SMITH, Clerk of the United States District Court for the Southern District of California

By _signature_
J. M. Horn, Deputy Clerk


Received copy of the within answers to interrogatories this _7th_ day of January, 1952.

SWING, SCHARNIKOW & STANIFORTH

By _Phil D. Swing_


670

- 9 -

GPO  16-29905-1