BETTY MARSHALL GRAYDON
Assistant United States Attorney
1405 Fifth Avenue
San Diego 1, California
 Telephone:  F 9-4101

Attorney for Plaintiff

**FILED**

JAN 31 1952

EDMUND L. SMITH, Clerk

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY CLERK

SOUTHERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,      )        CIVIL NO. 1247-SD
                                )
        v.                      )   MEMORANDUM OF POINTS AND AUTHORITIES
                                )   IN OPPOSITION TO MOTION OF JOSEPH
FALLBROOK PUBLIC UTILITY DISTRICT, a )  HOSANG AND RUTH L. HOSANG TO DISMISS,
    public service corporation of the )  AND MAKE MORE DEFINITE, AND TO
    State of California;        )   STRIKE
JOSEPH HOSANG and               )
RUTH L. HOSANG;                 )
ET AL.,                         )
                                )
                Defendants.     )

Response in opposition to the motions will be made in the order in
which they appear.  Brief reference, at the outset, will be directed to the
property rights involved and the character of relief which the United States
of America is here seeking.  In the complaint the United States has described
its rights, praying that "the defendants named in this action be required to
answer this complaint and set up fully their claims to the use of water from
the Santa Margarita River."  Thus, the claims of the United States of America
relate only to the Santa Margarita River and to any claims asserted in that
stream adverse to the claims of the United States.

RESPONSE TO THE MOTION TO DISMISS

Turning to the motion to dismiss "because the complaint fails to state
a claim * * * upon which relief can be granted," reference is first made to
statements of this Court on May 9, 1951.  There this statement was made: "It
appears that the complaint sets forth that the government is seeking to have its
rights declared and the title quieted to those rights, as they relate to the use
of water in the Santa Margarita River and its tributaries." [1]  That statement,

[1]  Transcript of hearing May 9, 1951, page 12.

1  part of a most searching review of the matter, preceded this ruling of the Court:

2  "IT IS ORDERED:  The motions to dismiss are denied without prejudice;. The motions

3  to make more definite and certain are denied; The motions to strike are denied." [2/]

4  Subsequently, Judge Yankwich declared: "Now I point to the fact that

5  this complaint could not have been drawn in any other form, and that the complaint

6  was sustained by Judge Weinberger." [3/]

7  It is manifest, therefore, that the motion to dismiss is not well

8  founded and, it is respectfully submitted, should be dismissed.  For such

9  assistance as it may be to the Court and to defendants there is attached,

10  marked Exhibit A and made a part of this memorandum, a copy of a brief previously

11  written in response to the precise motion here involved filed by other litigants. [4/]

12  Contained in that brief are authorities which accord with the earlier ruling

13  of this Court sustaining the complaint.

14  RESPONSE TO THE MOTION TO MAKE MORE DEFINITE, AND TO STRIKE

15  Turning to the motion to make more definite, and to strike, this Court

16  deliberated at length in regard to similar motions filed by other defendants.

17  Premised upon that deliberation this Court declared as follows: "It is my thought

18  that, in line with the decided cases on the subject of pleadings, this complaint

19  should be construed so as to do substantial justice.

20  "It is my view that the complaint is so framed that the defendants can

21  answer; * * *

22  "I can see no reason why counsel cannot frame answers setting up in

23  full the basis on which their clients claim the right to the use of any of the

24  waters of the Santa Margarita River." [5/]  Premised upon that declaration this

25  Court entered an order: "IT IS ORDERED: * * * The motions to make more definite

26  and certain are denied; The motions to strike are denied." [6/]  Those statements

27

28  2/ · Order denying motions, filed May 11, 1951.

29  3/  United States v. Fallbrook Public Utility District, et al., 101 F. Supp. 298, 301,
    (D.C.S.D. Cal. S.D., 1951).

30

31  4/  Please refer to Exhibit A, page 15; page 43 et seq.

    5/  Transcript of hearing May 9, 1951, page 49.

32

    6/  Order denying motions, filed May 11, 1951.

1  and the order reflect, of course, the complete answer to the request for a more

2  definite statement.  (Observed in passing is the fact that the defendants request

3  a bill of particulars in connection with paragraphs 2 (a) and 2 (b) for which

4  the Federal Rules of Civil Procedure make no provision, thus eliminating the

5  necessity of considering that phase of the request.)

6        To be observed is this fact in regard to the request for a more

7  definite statement:

8        Responses have been made to comprehensive interrogatories filed by the

9  Fallbrook Public Utility District.  Those responses and the data upon which

10  they are predicated are matters of court record available to defendants for

11  examination.  It is evident, wholly aside from the earlier ruling denying

12  motions for more definite statements, the data to which defendants refer in

13  paragraphs 2 (a) and 2 (b) of their motions, are readily available for considera-

14  tion by defendants in the preparation of their answers.  In view of the numerous

15  answers filed in this case and the character of them it is evident, however, that

16  as this Court stated: "I can see no reason why counsel cannot frame answers

17  setting up in full the basis on which their clients claim the right to the use

18  of any of the waters of the Santa Margarita River." 1/

19        A more definite statement is requested as to how or why it is claimed

20  that the defendants should be bound by the Stipulated Judgment.  The short answer

21  to that inquiry is this:

22        If the defendants or their privies are not parties to the

23        Stipulated Judgment they are not, of course, bound by it.

24        Nevertheless, the Vail Estate delivers water to the United

25        States pursuant to that Stipulated Judgment.  That water

26        would not be in the stream were it not for the Stipulated

27        Judgment.  Accordingly, although a party may not be bound

28        by the Stipulated Judgment, he may very well encroach upon

29        rights of the United States under the Judgment.  Thus the

30        importance of the Stipulated Judgment in this litigation,

31        wholly aside from the parties or their successors who are

32        directly bound by it.

1/  Transcript of hearing May 9, 1951, page 49.

- 3 -

749

1   Accordingly, although a party may not be bound by the stipulated judgment, he

2   may very well encroach upon rights of the United States under the judgment.   Thus

3   the importance of the stipulated judgment in this litigation wholly aside from

4   the parties or their successors who are directly bound by it is demonstrated.

5   Like similar motions, previously denied by this Court, this motion should likewise

6   be denied.

7          Finally this Court is requested to strike certain paragraphs from this

8   complaint.   Motions of like character relating to the same matters in the com-

9   plaint have previously been denied.   In regard to the present motion it is to

10  be observed that the defendants would have this court strike matters concerning

11  which they have requested a more definite statement.   It is respectfully submitted

12  that inconsistency should weigh heavily against the motion to strike.   Moreover

13  as this Court succintly pointed out regarding similar motions: "* * * I see

14  nothing to which a motion to strike has been directed which will prejudice the

15  defendants.   In fact, most of the material mentioned in the motions consitutes

16  (sis) subjects which are within the judicial notice of this court and are matters

17  of common knowledge of the public."

18         For such assistance as it may be to the Court brief reference will be

19  made to authorities bearing on the subject.   It has been recently stated: "At

20  the outset, attention may well be directed to recent judicial declarations that

21  motions to strike under Rule 12 (f) are not favored and will be granted only

22  when the allegations have no possible relation to the controversy, and a failure

23  to strike will unduly prejudice the adverse party."[8/]   From the same source is

24  taken this authoritative comment:   "Where no harm can come to the defendant

25  ordinarily the court is very cautious about disturbing the pleading, unless the

26  court can see that the allegations have no possible bearing upon the subject

27  matter of litigation."   It has likewise been authoritatively stated: "It should

28  be noted, that under subdivision (f) a court should hesitate to strike matter

29  unless it clearly appears to be 'redundant, immaterial, impertinent or

30  scandalous.'"[9/]

---

8/ Cyc. Fed. Proc., 2d ed., vol. 5, sec. 1774, page 424.

9/ Moore's Federal Practice, Vol. 1, sec. 12.08, page 660.

750

7

1    From the authorities it is evident that the motions of the defendants

2  are not well grounded.  Moreover the defendants have cited no authority to

3  support their motions.  Accordingly this Court is requested to deny each of the

4  motions to which this memorandum is presented in opposition.

5

6

7

8                                              WILLIAM H. VEEDER.
                                               Special Assistant to the
9                                                 Attorney General

10

11
       Dated: Jan 31, 1952
12                                             BETTY MARSHALL GRAYDON
                                               Assistant United States Attorney
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

- 5 -

751

ERNEST A. TOLIN
United States Attorney

BETTY MARSHALL GRAYDON
Assistant United States Attorney
325 West "F" Street
San Diego 1, California
  Telephone:  F 9-4101

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CIVIL NO. 1247 |
| | ) | |
| Plaintiff, | ) | RESPONSE OF UNITED STATES |
| v. | ) | |
| | ) | TO |
| | ) | |
| FALLBROOK PUBLIC UTILITY DISTRICT, a | ) | MOTION FOR MORE DEFINITE STATEMENT |
| public service corporation of the | ) | OR FOR BILL OF PARTICULARS; |
| State of California; | ) | |
| ET AL.; | ) | MOTION TO STRIKE |
| | ) | |
| JAMES OVIATT; | ) | MOTION FOR A MORE DEFINITE STATEMENT |
| | ) | |
| SANTA MARGARITA MUTUAL WATER COMPANY, | ) | MOTION TO DISMISS, MOTION TO STRIKE, |
| a public service corporation of the | ) | AND FOR AN ORDER DIRECTING PLAINTIFF |
| State of California, | ) | TO FILE A MORE DEFINITE STATEMENT |
| | ) | |
| Defendants. | ) | |

PRELIMINARY STATEMENT

To be noted is the fact that there is before this Court but a single
motion to dismiss.  That has been filed by the Santa Margarita Mutual Water
Company.  Motions for a more definite statement have been filed by that Company
and by the other defendants named above.  A paragraph-by-paragraph response
has been made to the several items referred to in those motions for a more
definite statement.  Better to clarify the information submitted exhibits
in the form of maps and letters with full descriptions of the lands have been
prepared and incorporated into this memorandum.  Thus, it is believed that this
Court will find that all of the information desired by the defendants has been
supplied to them.

Important is the fact that counsel for the Fallbrook Public Utility

- i -

8 A

District has answered for one of the named defendants, though he makes numerous requests on behalf of other defendants. For that reason it is difficult to perceive why this matter should be further delayed and the Court is respectfully requested to require the defendants here named to answer.

Motions to strike have likewise been filed. They are responded to paragraph by paragraph. It will be observed that the data which the movants seek to strike would eliminate from the complaint allegations respecting the military uses to which the rights to the use of water here involved are of utmost importance and it is believed do not prejudice the movants in any way. Accordingly, this Court is requested to deny those motions to strike.

Extended comment from the standpoint of the law is made to the motion to dismiss and it is believed those authorities will reveal that the motion should be denied.

**SYNOPSIS OF MEMORANDUM**

Constitutional Law:

1. The United States of America is a sovereign of delegated powers. Within its sphere of delegated powers it exercises supreme authority ........................ pages 1 - 4

2. The Congress has the power to provide for the common defense and to declare war. For those purposes the properties here involved were acquired and are now maintained ........................ pages 4 - 5

3. The authority residing in Congress to administer the properties of the United States is without limitation ........................ pages 5 - 8

4. Exclusive jurisdiction over the military establishments here involved resides in the United States. Thus Congress alone insofar as this case is concerned has legislative powers over the properties ........................ pages 8 - 15

Character of Relief Sought by the United States:

1. Rules of Civil Procedure require a simple statement of fact and prayer for relief ........................ pages 15 - 16

2. In an action to quiet title the petitioner is not
   called upon in his complaint to deraign his title
   or to allege the character of the adverse claim
   asserted by the defendant                              pages 17 – 21

3. Inconsistencies in position assumed by the Fallbrook
   Public Utilities District, et al.                      page 21

Response

1. To motion for more definite statement and
   authorities of Fallbrook Public Utility District,
   et al.                                                 pages 21 – 35

2. To motion to strike of Fallbrook Public Utility
   District, et al.                                       pages 35 – 39

3. To motion for a more definite statement –
   James Oviatt                                           pages 39 – 43

4. To motion to dismiss, motion to strike, for
   a more definite statement and supplemental
   authorities – Santa Margarita Mutual Water
   Company                                                pages 42 – end

Exhibits –

A    Letter of January 12, 1943, ceding jurisdiction to certain lands.

B    Letter of September 8, 1943, ceding jurisdiction to certain lands.

C    Letter of February 18, 1944, ceding jurisdiction to certain lands.

D    Letter dated January 24, 1950, from James Don Keller, District Attorney
     and County Counsel to the Superintendent of Schools of San Diego, Cal.

E    Map of underground basin.

F    Letter dated July 22, 1949, from Phil D. Swing, Attorney for
     Fallbrook Public Utility District, to Bureau of Yards and Docks,
     Department of the Navy.

G    Vicinity map showing watershed of the Santa Margarita River.

H    Map classifying lands riparian to the Santa Margarita River.

– iii –

754

M E M O R A N D U M

Manifest from the motions and authorities to which this memorandum makes response is one paramount fact:

Movants fail to accept the unequivocal allegations of the complaint that the United States of America acquired, now uses, and in the foreseeable future will use for <u>military purposes</u> all of the rights to the use of water in the Santa Margarita River which were owned by the Rancho Santa Margarita y las Flores.

Those rights were acquired and are now used by the United States of America for military purposes.  Measure of those rights is commensurate with the rights of the Rancho Santa Margarita at the time they were acquired by the United States of America, plus whatever increment may have accrued by reason of that ownership through the years.

Patent from the motions here involved, the requests for more definite statements and the authorities cited, is a need for clarification of the status occupied by the United States of America in regard to its rights to the use of water in the Santa Margarita River.  Thus, at the outset there will be reviewed the character of the sovereignty of the United States of America, the pertinent provisions of the Constitution of the United States, and the decisions interpreting those provisions.

<u>The United States is a sovereign of delegated
Powers - within the sphere of its delegated powers it
exercises supreme authority.</u>

Any consideration of the constitutional powers of the United States of America entails a discussion of the nature of the National Government.  On the subject this statement has been made: "The government of the United States is one of enumerated powers; the national Constitution being the instrument which specifies them, and in which authority should be found for the exercise of any power which the national government assumes to possess." [1]

_____

1/  Cooley's Constitutional Limitations, 8th ed., Carrington, vol. 1, Chap. II, p. 11.

- 1 -

755

A correlative principle of constitutional law, equally important as the tenet enunciated in regard to the character of the powers of the United States, is that the Constitution "and the laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." [2/] By that provision it is manifest that the framers of the Constitution intended to establish a government sovereign in its sphere of delegated authority. [3/] Moreover, in the performance of its delegated authority it matters not whether the United States is assisting in the development of the arid west, acting in furtherance of commerce between the States, or, as here, endeavoring to prevent aggression, its acts are all of equal dignity. That conclusion is premised upon the decision of the Supreme Court of the United States in which it declared: "The federal government is one of delegated powers, and from that it necessarily follows that any constitutional exercise of its delegated powers is governmental." [4/]

Respecting the powers conferred upon the National Government, Chief Justice Marshall, in the formative years of our Nation, declared: "If any one proposition could command the universal assent of mankind, we might expect it would be this — that the government of the Union, though limited in its powers, is supreme within its sphere of action." [5/] Specifically in regard to the cited clause of the Constitution, Justice Marshall continued: "It is of the very essence of supremacy, to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their own influence. This effect need not be stated in terms. It is so involved in the declaration of

---

2/   Article VI, Clause 2, Constitution of the United States.

3/   United States v. California, 332 U. S. 19 (1946).

4/   Federal Land Bank v. Bismarck Co., 314 U. S. 95, 102 (1941).

5/   McCulloch v. Maryland, 17 U. S. 315, 405 (1819).

- 2 -

756

supremacy, so necessarily implied in it, that the expression of it could not make it more certain." [6/]   He further stated:  "No trace is to be found in the constitution of an intention to create a dependence of the government of the Union on those of the states, for the execution of the great powers assigned to it. Its means are adequate to its ends; and on those means alone was it expected to rely for the accomplishment of its ends." [7/]   Moreover, the Federal Government is not only supreme in fulfilling its delegated responsibility, it is free to accomplish the ends for which it was established, without interference from the States.  Speaking with reference to that immunity of the National Government, the Supreme Court of the United States, in connection with a case much in point on the subject being discussed, said this: "/Arizona's/ statutes prohibit the construction of any dam whatsoever until written approval of plans and specifications shall have been obtained from the State Engineer * * *.  The United States has not secured such approval; nor has any application been made by Wilbur, who is proceeding to construct said dam in complete disregard of this law of Arizona.

"The United States may perform its functions without conforming to the police regulations of a State. * * * Wilbur is under no obligation to submit the plans and specifications to the State Engineer for approval." [8/] In denying the right of a State to require truck drivers for the Post Office to secure licenses to drive within its jurisdiction the Court observed:  "It seems to us that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer upon examination that they are competent for a necessary part of them and pay a fee for permission to go on." [9/]

In words of infinite clarity Chief Justice Marshall expressed the

---

6/  McCulloch v. Maryland, 17 U. S. 315, 427 (1819).

7/  McCulloch v. Maryland, 17 U. S. 315, 424 (1819).

8/  Arizona v. California, 283 U. S. 423, 451 (1930).

9/  Johnson v. Maryland, 254 U. S. 51, 57 (1920).

- 3 -

757

reason for imparting to the National Government the attributes of sovereignty which have been discussed, and the reason for investing it with freedom from restraint within its sphere of authority:  "To impose on it /the United States7 the necessity of resorting to means which it cannot control, which another government may furnish or withhold, would render its course precarious, the result of its measures uncertain, and create a dependence on other governments, which might disappoint its most important designs, and is incompatible with the language of the constitution." 10/

Abundantly clear from the cited authorities is the fact that the United States of America has been vested with power commensurate with the responsibilities which devolve upon it by reason of the Constitution.  From that general resume of the powers of the National Government, consideration now will be given to the pertinent provisions of the Constitution which are here applicable.

"The Congress shall have Power To * * * provide for the common Defence * * *." 11/
"The Congress shall have power * * * To declare War, * * *." 12/

Exercising the power to provide for the common defense and exercising the power to wage war against the Axis powers, the United States of America during World War II acquired the land comprising Camp Joseph H. Pendleton, the United States Naval Hospital and the United States Naval Ammunition Depot. As alleged in the complaint, that land is traversed by the Santa Margarita River. Fee simple title to that land and appurtenant rights to the use of water now resides in the United States of America.

Pursuant to those constitutional powers there were constructed on those sites military establishments vital to the Nation's defense – to its successful prosecution of the present conflict in Korea.  Pursuant to those powers the military installations are maintained.

---

10/  McCulloch v. Maryland, 17 U. S. 315, 424 (1819).

11/  Article I, section 8, clause 1, Constitution of the United States.

12/  Article I, section 8, clause 11, Constitution of the United States.

- 4 -

All of the properties were acquired and are now used for military purposes.

Invaluable rights to the use of water from the Santa Margarita River are owned and exercised by the United States.  Those rights were essential to the prosecution of World War II.  They are essential to the successful prosecution of the present Korean conflict.  They will be essential for the "common Defence."

Seldom, previous to this case, has there been challenged the authority of the United States of America to utilize water essential to the National defense.  Where, however, the question has been presented, the courts have uniformly adhered to the same principles which govern other property rights held for National defense purposes.  Obviously, there could be no other course which in logic could be pursued.  A different rule would nullify every National defense effort for without water Camp Pendleton or any other military installation could not be maintained.  13/

"The Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States; * * *." 14/

There can be no doubt that rights to the use of water are, in the contemplation of the law, interests in real property and come within the purview of the provisions of the Constitution of the United States above quoted. In that regard the Supreme Court of the State of California has made several pronouncements.  In a relatively recent case that court has declared that a right to the use of water is a corporeal hereditament constituting an interest in real estate.  15/  The right to the use of water is a natural right in the nature of an interest in real property.  16/  Relative to the proposition the following

---

13/  For authorities in regard to the use of water for purposes of National defense please refer to Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 326, 327 (1935); Tennessee Electric Power Co. v. Tennessee Valley Authority, 21 F. Supp. 947, 958; affirmed 306 U.S. 118 (1938).

14/  Article IV, section 3, Clause 2, Constitution of the United States.

15/  Wright v. Best, 19 Cal. 2d 368, 121 P. 2d 702 (1942).

16/  Kinney, Irrigation and Water Rights, 2d ed., vol. 2, sec. 769, p. 1328 and cases cited.

- 5 -

comment has been made: "This usufructuary right, or 'water right,' is the substantial right with regard to flowing waters; is the right which is almost invariably the subject matter over which irrigation or water power or similar contracts are made and litigation arises; and is real property. It is as fundamental under the law of riparian rights as under the law of appropriation." [17/] That principle is recognized by one of the defendants in the authorities now before this Court. [18/]

Having established that rights to the use of water are interests in real property, there will be examined the full purport of the clause of the Constitution set forth above and which pertains to the power of Congress over property. That power, as the authorities in the succeeding paragraphs will reveal, is without limitation. Worthy of note at the outset is the fact that the United States has been invested with power adequately to protect its own property without regard to the States. For, as the highest Court has observed: "A different rule would place the public domain of the United States completely at the mercy of the state legislature." [19/]

Consonant with the principle that the United States may act to protect the property which it holds in the several States the highest Court recognized the power of the National Government to establish forest reserves on the public land [20/] and to make needful regulations for the administration of those reserves. [21/]

When deer were killed at the instance of the Secretary of Agriculture in violation of State game laws to prevent overgrazing in a national forest and the forestry official was threatened with arrest, the highest Court stated: "the power of the United States to thus protect its lands and property does

---

17/   Wiel, Water Rights in the Western States, 3d ed., vol. 1, sec. 18, p. 20.

18/   Supplemental Points and Authorities of Defendant Santa Margarita Mutual Water Company in Support of its Motions to Dismiss, to Strike and to Make More Certain, pages 7 and 8.

19/   Camfield v. United States, 167 U. S. 518, 526 (1896).

20/   Light v. United States, 220 U. S. 523, 536 (1911).

21/   United States v. Grimaud, 220 U. S. 506, 521 (1911).

- 6 -

not admit of doubt * * * the game laws or any other statute of the state to
the contrary notwithstanding."[22/]

More recently the highest Court had occasion to consider the purport
of an act of Congress granting certain lands and rights-of-way in Yosemite
National Park and Stanislaus National Forest, both in the State of California.[23/]
In declaring valid the conditions upon which a right-of-way was granted, the
Court first referred to the Property Clause of the Constitution, then stated:
"The power over the public land thus entrusted to Congress is without limitations.
'And it is not for the courts to say how that trust shall be administered.  That
is for Congress to determine.'  Thus, Congress may constitutionally limit the
disposition of the public domain to a manner consistent with its views of public
policy.  And the policy to govern disposal of rights to develop hydroelectric
power in such public lands may, if Congress chooses, be one designed to avoid
monopoly and to bring about a wide-spread distribution of benefits."[24/] Few
cases better exemplify the breadth of application of the power conferred upon
the United States by the Constitutional clause in question.

Too clear for question, therefore, is the fact that Congress and
Congress alone is empowered to administer the properties of the United States.
Equally clear is the fact that in the absence of Congressional authorization
there may be no disposition of property by acts of the agents of the United States.
For, recently declared by the highest Court:  "The Government, which holds its
interests here as elsewhere in trust for all the people, is not to be deprived
of those interests by the ordinary court rules designed particularly for private
disputes over individually owned pieces of property; and officers who have no
authority at all to dispose of Government property cannot by their conduct cause
the Government to lose its valuable rights by their acquiescence, laches, or
failure to act."[25/]

---

22/  Hunt v. United States, 278 U. S. 96, 100 (1928).

23/  United States v. San Francisco, 310 U. S. 16 (1939).

24/  United States v. San Francisco, 310 U. S. 16, 29, 30 (1939).

25/  United States v. California, 332 U. S. 19, 40 (1946).

- 7 -

Reiterating the precept that "The power over the public land thus entrusted to Congress is without limitations," consideration will next be directed to the fact that exclusive jurisdiction resides in the United States over the properties involved in this litigation.

> "The Congress shall have power * * * To exercise exclusive legislation in all Cases whatsoever, * * * over all Places purchased by the Consent of the Legislature of the State in which the same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; * * *." 26/

Exclusive jurisdiction over Camp Joseph H. Pendleton and the United States Naval Ammunition Depot and the United States Naval Hospital resides in the United States of America, subject to exceptions not here important. That cession of jurisdiction was effectuated pursuant to the applicable Federal and State laws. 27/

---

26/   Article I, section 8, clause 17, Constitution of the United States.

27/   Act of October 9, 1940, Public No. 825, 76th Congress, 3d Session, Ch. 793, 54 Stat. 1083, 1084 - "* * * Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."

Political Code of California, Section 34 as amended by Chapter 710 of the 1939 Statutes and Amendments to the Codes: "The Legislature consents to the purchase or condemnation by the United States of any tract of land within this State for the purpose of erecting forts, magazines, arsenals, dockyards, and other needful buildings, upon the express condition that all civil process issued from the courts of this State, and such criminal process as may issue under the authority of this State, against any person charged with crime, may be served and executed thereon in the same mode and manner and by the same officers as if the purchase or condemnation had not been made and upon the further express condition that the State reserves its entire power of taxation with respect to such tracts of land and may levy and collect all taxes now or hereafter imposed in the same manner and to the same extent as if this consent had not been granted."

- 8 -

Governor Earl Warren of the State of California has acknowledged
that exclusive jurisdiction resides in the United States. [28/] Due to the
immense importance of the cession of jurisdiction by the State of California
to the United States of America over Camp Pendleton, the United States Naval
Hospital and the United States Naval Ammunition Depot, brief reference is
warranted to the historical background of the last above-quoted provision
of the Constitution of the United States.

Of particular interest is the change made in the draft of the
Constitution before the Convention which first adopted our organic law. As
originally presented to the Convention the clause in question provided that
the National Government would exercise "exclusive legislation" over the now
District of Columbia. Similarly, it provided that "like authority /would
be exercised/ over all places purchased for the erection of forts, magazines,
arsenals, dock-yards, and other needful buildings." Mr. Elbridge Gerry of
Massachusetts objected that the power in question could be exercised as a
means "of awing the state into an undue obedience to the general government." [29/]
To alleviate the concern expressed by the opponents of the Constitution, it was
proposed, and the amendment was adopted, to interpolate following the word
"purchased" this clause: "by the consent of the legislature of the state." [30/]
Respecting the proviso and the amendment to it, Mr. James Madison succinctly

---

28/  Letter of January 12, 1943, from James Forrestal, Acting Secretary
of the Navy, to Earl Warren, Governor of the State of California,
respecting the lands acquired by the United States in a condemnation
proceeding designated United States of America v. 9,147.55 acres of land,
more or less, in San Diego, San Diego County, California, Rancho Santa
Margarita, a corporation, et al., No. 139, acknowledged by Governor Warren
January 18, 1943;
        Letter of September 8, 1943, from James Forrestal, Acting Secretary
of the Navy, to Earl Warren, Governor of California, respecting lands acquired
by the United States in proceedings designated United States of America v.
123,620 acres of land in San Diego and Orange Counties, California, Maud Lee
Flood, et al., Civil No. 197-SD, acknowledged by Governor Warren September 13,
1943;
        Letter of February 18, 1944, from A. L. Gates, Acting Secretary of
the Navy, to Earl Warren, Governor of California, respecting lands acquired
by the United States in proceedings designated United States of America v.
1,676.58 acres of land in San Diego County, California, George Henry Hutson, et
al., Civil No. 321-SD, acknowledged by Governor Warren February 23, 1944;
        Attached to this memorandum and marked Exhibits A, B and C are true
copies of the letters in question together with the description of the lands
involved.

29/  Elliot's Debates on the Federal Constitution, vol. 5, page 511.

30/  Elliot's Debates on the Federal Constitution, vol. 5, page 511.

commented as follows:  "The necessity of a like authority /as that exercised over the seat of the National Government/ over forts, magazines, etc., established by the general government, is not less evident.  The public money expended on such places, and the public property deposited in them, requires that they should be exempt from the authority of the particular State.  Nor would it be proper for the places on which the security of the entire Union may depend, to be in any degree dependent on a particular member of it.  All objections and scruples are here also obviated, by requiring the concurrence of the States concerned, in every such establishment." [31]

Of innumerable cases involving the status of lands, held as here under the exclusive jurisdiction of the National Government, space will allow the consideration of but a few.  Those authorities will, however, constitute a background for the ultimate trial of the issues of this case.  In that regard reference is first made to an important State case.  There are recognized the principles that the United States, where jurisdiction has been ceded to it, is free from any restraints by State law. [32]   That case arose with respect to fencing of a right-of-way as required by local law.  Disregarding that law the Secretary of War forbade the fencing of certain tracks which traversed Fort Robinson Military Reservation.  The Supreme Court of Nebraska in that case declared that refusal of the Secretary of War to permit the erection of fences along the right-of-way constituted a defense to an action against the railroad company for the killing of cattle, although a statute of the State, if it had governed the case, would have made the company liable because of the failure to enclose its tracks.  In another important decision the Supreme Court of the United States stated that when the United States acquires title to lands, which are purchased by the consent of the legislature of the State within which they are situated "for the erection of forts, magazines, arsenals, dockyards and other needful buildings," the Federal jurisdiction is exclusive of all State authority. [33]   That view is consistent with the principles enunciated in

---

[31] The Federalist, vol. 1, 1914, p. 295.
[32] Anderson v. Chicago & Northwestern RR., 102 Neb. 578, 168 N.W. 196 (1918).
[33] United States v. Unzeuta, 281 U. S. 138 (1929).

764

regard to the jurisdiction in question. [34/]   There it was stated in substance that lands purchased by the United States with the consent of California, upon which a custom house and other buildings had been erected, were under the exclusive jurisdiction of the United States.  Again, on the subject, the Supreme Court stated this:  "The question is not an open one.  It long has been settled that where lands for such a purpose are purchased by the United States with the consent of the state legislature the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, [Article I, Sec. 8, Clause 17 of the Constitution of the United States] to the United States, thereby making the jurisdiction of the latter the sole jurisdiction." [35/]

In a highly important decision the Supreme Court of the United States has before it for consideration the question of whether the State law respecting oleomargarine controlled in an area set aside as a national home for volunteer soldiers.  Having reviewed the action of Congress in providing funds for the purchase of food for the soldiers in the home in question the Supreme Court made this comment:  "In making provision for so feeding the inmates, the governor, under the direction of the board of managers and with the assent and approval of Congress, is engaged in the internal administration of a Federal institution, and we think a state legislature has no constitutional power to interfere with such management as is provided by Congress." [36/]   Continuing, the Court stated:  "Whatever jurisdiction the State may have over the place or ground where the institution is located, it can have none to interfere with the provision made by Congress for furnishing food to the inmates of the home, nor has it power to prohibit or regulate the furnishing of any article of food which is approved by the officers of the home, by the board of managers and by Congress.  Under such circumstances the police power of the State has no application.

"We mean by this statement to say that Federal officers who are

---

34/   Sharon v. Hill, 24 Fed. 726 (C.C.A. Calif., 1885).
35/   Surplus Trading Company v. Cook, 281 U. S. 647, 652 (1929).
36/   Ohio v. Thomas, 173 U. S. 276, 282, 283 (1898).

- 11 -

discharging their duties in a State and who are engaged as this appellee was engaged in superintending the internal government and management of a Federal institution, under the lawful direction of its board of managers and with the approval of Congress, are not subject to the jurisdiction of the State in regard to those very matters of administration which are thus approved by Federal authority."

On several occasions cases involving the respective jurisdiction of the State of California and the United States have arisen. One of these cases involves the sale of oil within an area long held and occupied by the United States for military purposes. That area was the Presidio of San Francisco. There the plaintiff delivered gasoline and the State of California undertook to collect from the plaintiff the taxes levied upon that commodity. Having recognized the fact that this was a military establishment over which jurisdiction had been ceded by the State of California, the Supreme Court of the United States made this succinct statement: "In three recent cases * * * we have pointed out the consequences of cession by a State to the United States of jurisdiction over lands held by the latter for military purposes. Considering these opinions, it seems plain that by the Act of 1897 California surrendered every possible claim of right to exercise legislative authority within the Presidio - put that area beyond the field of operation of her laws. Accordingly, her legislature could not lay a tax upon transactions begun and concluded therein. * * *

"The principle approved in these cases applies here. A State cannot legislate effectively concerning matters beyond her jurisdiction, and within territory subject only to control by the United States." [37]

Again, the Supreme Court, in a case involving a jurisdictional dispute between the State of California and the United States, had before it the question of that State's control over the sale and distribution of milk. It appears that the Department of Agriculture of the State of California endeavored to revoke the license of a distributor of milk who sold to

---

[37]  Standard Oil Co. v. California, 291 U. S. 242, 244 (1934).

- 12 -

766

Moffett Field, a base purchased by the United States. There the appellant sought a writ of mandamus to restrain the Department of Agriculture from proceeding to hear and act upon the pending complaint. Of importance is the fact that Moffett Field was acquired by the United States under an act of Congress and it is conceded by the State of California that the United States has always had exclusive jurisdiction.

In contending the State of California was empowered to control the appellant in the sale and distribution of milk even though the contract was entered into and sales made on property within the exclusive jurisdiction of the United States, it was urged by the State that the regulation of business in the manner outlined was a valid exercise of police power. Denial of the validity of that contention by the highest Court was in these terms: "The exclusive character of the jurisdiction of the United States on Moffett Field is conceded. Article I, Section 8, Clause 17 of the Constitution of the United States declares that Congress shall have power 'To exercise exclusive legislation in all Cases whatsoever, over' the District of Columbia, 'and to exercise like Authority over all Places purchased by the consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; * * *.'" Having declared that the State statutes were inoperative insofar as Moffett Field was concerned, the highest Court stated: "To hold otherwise would be to affirm that California may ignore the Constitutional provision that 'This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; * * * shall be the supreme Law of the Land; * * *.' It would be a denial of the federal power 'to exercise exclusive Legislation.' As respects such federal territory Congress has the combined powers of a general and a state government."[38/]

Another important case before the Supreme Court of the United States involving jurisdiction arose in connection with the sale of intoxicating liquors in the Yosemite National Park.[39/]    There exclusive jurisdiction had been ceded to

---

38/  Pacific Coast Dairy v. Dept. of Agriculture of California, 318 U. S. 285, 294 (1943).

39/  Collins v. Yosemite Park Company, 304 U. S. 518, 530 (1937).

- 13 -

767

the United States subject to the right to tax persons and corporations on the lands included in the park.  It was contended by the State of California that the Alcoholic Beverage Control Act applied within Yosemite Park and that appellee was obliged to apply for permits for importation and sale of liquor. It was likewise contended that the appellee was subject to the provisions of the act prohibiting the issuance of importer's licenses to persons holding on-sale retail licenses.  Having reviewed the facts of the case with particular reference being given to the exclusive jurisdiction ceded to the United States, the Supreme Court made this comment:  "* * * jurisdiction less than exclusive may be granted the United States.  The jurisdiction over the Yosemite National Park is exclusively in the United States except as reserved to California, e.g., right to tax, by the Act of April 15, 1919.  As there is no reservation of the right to control the sale or use of alcoholic beverages, such regulatory provisions as are found in the act under consideration are unenforceable in the Park."

Worthy of attention is the opinion of the Honorable James Don Keller, District Counsel and County Counsel, dated January 24, 1950. [40/]   There that official discusses at length certain of the implications attendant upon the fact that exclusive jurisdiction over the properties in question resides in the United States.

To proceed further with this analysis would lend nothing to what has been stated.  From the authorities reviewed it is abundantly manifest that the laws of the State of California may in no way regulate the property of the United States or impede the utilization of it for the purpose for which it was acquired. Obviously, therefore, the contention is without merit that the United States may not utilize the water of the Santa Margarita River for the purposes for which it was acquired.  To assert, as has been done, that the United States is subject to the laws of the State of California respecting the use of its property is erroneous.  Moreover, it is contrary to the express provisions of the Constitution and to repeated pronouncements of the highest Court.

40/  Exhibit D of this memorandum.

- 14 -

768

## CHARACTER OF RELIEF SOUGHT BY THE UNITED STATES IN THIS PROCEEDING

To this point in the memorandum the fundamental questions involving Constitutional law have dominated.  Clearly, those all-pervading tenets of the law constitute the most salient aspects of this case.  It is respectfully submitted that they will control the ultimate disposition of it.  Against the background of Constitutional law the innumerable objections raised by movants must be considered.

Those objections are of such character as to require consideration of certain rudimentary factors of pleading.  At the outset it is to be emphasized that under the Rules of Civil Procedure the distinction between law and equity which previously existed has been eliminated. [41/]  Moreover it is provided in those rules that there shall be but one form of action known as a "civil action."  It is likewise provided by those same rules that in pleading the petitioner must state a claim for relief which shall be (1) a short and plain assertion of the grounds upon which the court's jurisdiction depends; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for judgment for the relief to which he deems himself entitled. [42/]

In regard to the sufficiency of the statement of the claim which will entitle the court to take jurisdiction, this pertinent statement has been made: "There is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of the claim." [43/]  Again, this authoritative statement has been made on the subject:  "Our duty * * * is to consider whether in the light most favorable to the plaintiff, with every intendment regarded in his favor, the complaint is sufficient to constitute a valid claim." [44/]  It is likewise a precept adhered to by the courts that:  "Pleadings are to be liberally

---

41/  Rules of Civil Procedure for the District Courts of the United States, Rule 2.

42/  Rules of Civil Procedure for the District Courts of the United States, Rule 8.

43/  Continental Collieries v. Shober, 130 F. 2d 631, 635 (C.A. 3, 1942).

44/  Tahir Erk v. Glenn L. Martin Co., 116 F. 2d 865, 869 (C.A. 4, 1941).

- 15 -

construed." [45/]   This summarization in regard to pleadings under the new rules
is especially pertinent: "A motion to dismiss is limited to the allegations of
the complaint, and, being the equivalent of a demurrer, the court is called
upon to interpret the allegations of such complaint, and to accept all such
allegations as being true, and to determine whether such complaint presents
a cause of action.   In weighing the validity of a motion to dismiss a complaint
for insufficiency the duty of the court is not to test the final merit of the
claim in order to determine which party is to prevail.   But in ruling on the
motion, the court must proceed in the light of the present principles as to
liberal interpretation of pleadings.   On a motion to dismiss the plaintiff is
entitled to the most favorable intendments to be drawn from the facts pleaded.
As it has been expressed, the question presented by a motion to dismiss a
complaint is whether the complaint, construed in the light most favorable to
the plaintiff and with all doubts resolved in favor of its sufficiency, states
a claim upon which relief could be granted.  * * * to warrant dismissal of a
complaint for insufficiency, it should appear that a claim for relief does
not exist, rather than that a claim has been defectively stated." [46/]   Thus
it will be observed that the minutiae of the vast majority of objections raised
by the movants are not only contrary to the present rules of civil procedure,
but are very largely without merit.

Turning now to the question of the sufficiency of the complaint to
state a claim in a proceeding such as this to quiet title, reference will be
made to decisions of both the highest court of the United States and the
highest court of the State of California.   One of the leading authorities on
the subject is an early decision of the Supreme Court of the State of California.
That case is especially in point under the circumstances.   There the petitioner
alleged ownership of certain real properties; that the defendant claimed an
adverse interest; that such claim was without right; and that the defendant

---

45/  Moore's Federal Practice, 2d ed., 12.08, Motion to Dismiss for Failure
     to State Claim, pp. 2244, 2245.

46/  Cyc. Fed. Proc., sec. 1601, p. 267.

770

had no right or title or interest whatever in the property. The prayer was that the defendant be required to set forth the nature of his claim, that it be adjudged to be void and that the defendant be enjoined from asserting it.[47] In declaring the sufficiency of the complaint, the court stated: "* * * the proceeding is for the purpose of stopping the mouth of a person who has asserted or is asserting a claim to the plaintiff's property, whether such claim be founded upon evidence or utterly baseless. It is not aimed at a particular piece of evidence, but at the pretensions of an individual." Continuing, the court stated: "* * * the action may be maintained by the owner of property to determine any adverse claim whatever. For if the defendant by his answer disclaims all interest whatever, judgment may, nevertheless, be entered against him, though in such case it must be without costs. * * *

"The plaintiff, therefore, is not required to set forth the nature of the defendant's claim. * * * The pleading is very simple. And it is well settled that the allegations above mentioned are sufficient."

Again, California's highest court has declared: "An action to quiet title may be maintained by the owner to determine any adverse claim of the defendant, and the plaintiff in such action is not required to set forth the nature of the defendant's claim."[48] In a very recent case California's Supreme Court reiterated the principle in these terms: "One who alleges that he is the owner of certain described real property, that defendants claim an interest therein adversely to him, that such claim is without right, and that the defendants have no estate, title or interest whatever in said premises or any part thereof pleads all that the law requires in an action to quiet title and, in such an action, the complaint need not particularly state the facts in regard to the asserted invalidity nor attack the instrument which is claimed to be a cloud against the title of the plaintiff."[49]

---

47/ Castro v. Barry, 79 Cal. 443, 446, 447, 21 Pac. 946 (1889).

48/ Thompson, et al., v. Moore, et al., 8 Cal. 2d 367, 69 P. 2d 800, 803.

49/ Ephraim v. Metropolitan Trust Co., 28 Cal. 2d 824, 172 P. 2d 501 (1946).

771.

Identically the same principles have been stated by the Supreme Court of the United States.  In regard to the sufficiency of a complaint in a proceeding to quiet title, as here before the Court, the highest Court of the United States has stated:  "An allegation, in ordinary and concise terms, of the ultimate fact that the plaintiff is the owner in fee is sufficient, without setting out matters of evidence, or what have been sometimes called probative facts, which go to establish that ultimate fact; <u>and an allegation that the defendant claims an adverse estate or interest is sufficient, without further defining it, to put him to a disclaimer, or to allegation and proof of the estate or interest which he claims, the nature of which must be known to him, and may not be known to the plaintiff.</u>" [50/]  (Underscoring supplied.)  That often-cited case is authority for the proposition that where, as here, the United States has alleged its fee simple title to the property it is not called upon to deraign its title.  It is likewise authority for the proposition that it need not plead evidentiary factors necessarily involved in defining the character of the adverse claim of the defendant.  Obviously, the defendant is in a better position to know the character of the claim which he has, if any.

It is to be observed that the United States, in the complaint filed in this case, has complied fully with the principles enunciated by the courts in question.  Worthy of note at this point is the fact that the Supreme Court of the State of California has held that the same principles relating to proceedings to quiet title to land as such, will be applied to an action to quiet title to rights to the use of water.  That principle was adhered to in an instance where the right was inchoate. [51/]

By reason of the inquiries of movants concerning the existence of a genuine controversy, it is necessary to consider the authorities relating to the adjudication of rights to the use of water in suits for declaratory judgments.

---

50/  Ely v. New Mexico & Arizona RR. Co., 129 U. S. 291, 293 (1889).

51/  Inyo Consolidated Water Company, appellant, v. Stoddard Jess, et al., respondents, 161 Cal. 516, 521, 119 Pac. 934 (1911).

That review will be undertaken to avoid further delay.  On the subject reference
is first made to the fact that an action seeking declaratory relief with respect
to rights to the use of water in the State of California is no innovation.  That
fact has long been recognized for, as stated authoritatively:  "A decree may be
rendered refusing injunction, but declaring a right in plaintiff.  This cannot
be in rem, except by statute, but will be phrased in personam, enjoining
defendant from claiming any right hostile to that declared in plaintiff; in
effect a decree quieting title." 52/   The same authority further states:
"* * * there is a tendency to protect such future use (where no present use is
made, and hence no actual present damage) by a declaratory decree, protecting
the complaining proprietor's right of future use, * * *." 53/   A case on the
subject involved the rights to the use of water of the City of Los Angeles.
There the city, having originally instituted a proceeding injunctive in
character, amended to the end that the relief which it sought was purely
declaratory.  The court entered a decree which, among other things, sustained
the contention of the City of Los Angeles and retained jurisdiction for
purposes of administration.  In sustaining the lower court on that point,
the Supreme Court of the State of California said: "The retention of jurisdiction
to meet future problems is regarded as an appropriate exercise of equitable
jurisdiction in litigation over water rights, particularly when the adjustment
of substantial public interest is involved.  * * * In giving declaratory relief
a court has the powers of a court of equity." 54/

In a leading case involving rights to the use of water of the City of
San Diego, the Supreme Court of the State of California had this to say:
"This * * * is an action purely declaratory in character and is one wherein the
plaintiff has neither pleaded nor attempted to prove any facts which would entitle
it to any further or affirmative relief beyond that of having its prior and

---

52/  Wiel,  Water Rights in the Western  States, 3d ed., vol. 1, sec. 654, p. 728.

53/  Wiel, Water Rights in the Western States, 3d ed., vol. 1, sec. 802.

54/  City of Los Angeles v. City of Glendale, 23 Cal. 2d 68, 142 P. 2d.
     289 (1943).

- 19 -

773

paramount right to the use of the water of the San Diego River established." [55/]
This authoritative statement is particularly of interest from the standpoint
of declaratory judgments: "A declaratory action with respect to water rights
is appropriate for the adjudication of questions respecting the same.  This is
particularly true in the arid sections of the western states where water
applied to land is regarded as realty.  A declaratory action will lie to
determine the rights, title, interests, and legal relations of the parties
in and to water. * * * declaratory action may be resorted to to determine the
riparian rights of parties to waters of a stream or a lake." [56/]

      As to the criterion which governs in considering the sufficiency of a
complaint for declaratory relief, the highest Court of the United States has
made this statement:  "A 'controversy' * * * must be one that is appropriate for
judicial determination. * * * The controversy must be definite and concrete,
touching the legal relations of parties having adverse legal interests. * * *
It must be a real and substantial controversy admitting of specific relief
through a decree of a conclusive character, as distinguished from an opinion
advising what the law would be upon a hypothetical state of facts. * * * Where
there is such a concrete case admitting of an immediate and definitive deter-
mination of the legal rights of the parties in an adversary proceeding upon the
facts alleged, the judicial function may be appropriately exercised although the
adjudication of the rights of the litigants may not require the award of process
or the payment of damages." [57/]

      From the authorities which have been cited it is manifest that the
United States has filed with this Court a complaint entitling it to relief.
Certainly the movants have failed to offer any authorities to sustain their
objections.  In the absence of authorities to the contrary nothing will be
gained by further laboring the proposition.

      Having thus concluded the general aspects of the matter, consideration

---

55/  San Diego v. Cuyamaca Water Co., 209 Cal. 105, 287 Pac. 475,496 (1930).

56/  Anderson, Declaratory Judgments, p. 737, sec. 311.

57/  Aetna Life Ins. Co. v. Haworth, 300 U. S. 227 (1937).

- 20 -

774

will next be directed to the specific points which have been raised.  These
salient factors should, however, be noted prior to that consideration.

    1.  Counsel for the Fallbrook Public Utility District has moved
to strike innumerable provisions of the complaint; he has moved on behalf of
several defendants he represents for a more definite statement and a bill of
particulars.  Nevertheless, the same counsel on behalf of Austin H. Buckley
and others, answers each and every allegation in the complaint.

    2.  Counsel for the Fallbrook Public Utility District moves on the
one hand to strike, as stated, many of the allegations of the complaint;
nevertheless, on the other hand, he asks for a more definite statement in regard
to many of those provisions which he seeks to strike.

    3.  Counsel for the Fallbrook Public Utility District has sought to
raise on motion for a/definite statement, issues which, if proper, could
only be raised on a motion to dismiss.

    There is open to the United States under the circumstances no
alternative but to make a paragraph by paragraph response to the pending motions
to the end that the true purport of this litigation may be revealed.

<u>RESPONSE TO MOTION FOR MORE DEFINITE STATEMENT OR FOR BILL OF PARTICULARS</u>

    Fallbrook Public Utility District;
    Ernest Louis Barbey;
    Essie Beulah Barbey;
    Ruth Wentworth;
    A. F. Borel;
    Felix R. Carnsey;
    H. McC. Hossein;
    M. N. Lloyd and E. M. Lloyd

I.

    Defendants, having first charged that the United States is trying to
create a controversy by commencing this action, request that the United States
make a statement of facts showing that an actual controversy exists. [58/]  In a
manner repetitious the defendants later in the motion request that the United
States declare the acts of encroachment complained of, the times, places, extent,
and character of those acts and by whom committed; and whether or not the
encroachments were by a common design. [59/]

---

[58/]  Motion for more definite statement or for bill of particulars, par. 1, page 2.

[59/]  Motion for more definite statement or for bill of particulars, par. 7 (b).

- 21 -

775

Simply stated, the named defendants are on a "fishing expedition."

A cursory review of the authorities cited above in regard to quiet title suits reveals that where, as here, the plaintiff has charged "that the defendant claims an adverse estate or interest / it / is sufficient, without further defining it, to put him to a disclaimer, or to allegation and proof of the estate or interest which he claims." [60] Manifestly, the movants would have the United States plead evidence - evidence which of necessity is possessed by the defendants and which in the normal course of a trial the defendants are required to produce or have judgment entered against them. Moreover, as the Supreme Court of the United States has declared and as reiterated by the Supreme Court of the State of California, if the defendant has no claim he is then put to a disclaimer. Believing, however, that it would be of some aid to the Court and would facilitate an early trial of the issues, the United States gladly informs the named defendants the basis upon which it demands that they come forward and set up their claims, or that judgment be entered against them.

1. Specifically, the Fallbrook Public Utility District [61] in direct violation of the rights to the use of water of the United States in the Santa Margarita River, has installed in that stream and is now maintaining a pump. With that pump that District is now and has been pumping large quantities of water to which the United States is entitled and to the great damage of the United States. That activity has been carried on irrespective of the rights of the United States and irrespective of the fact that the defendant, Fallbrook Public Utility District, has been served in this case. Respecting the diversion in question the defendant, Fallbrook Public Utility District, asserts rights under permit No. 7033, Department of Public Works, Division of Water Resources, State Engineer, State of California.

2. Specifically, the Fallbrook Public Utility District has filed applications for permits to appropriate water, with the Department of Public Works, Division of Water Resources, State Engineer, State of California.

---

60/  Ely v. New Mexico & Arizona RR. Co., 129 U. S. 291, 293 (1889).

61/  Fallbrook Public Utility District, et al., motion for more definite statement or for bill of particulars, par. 1, page. 2.

- 22 -

Those applications, it is understood, are numbered 12178, for 10,000 acre-feet of water from Rainbow Creek; 12179 for 10,000 acre-feet of water from Sandia Creek; and 11578 for 10,000 acre-feet of water from the Santa Margarita River. They are in addition to the direct flow rights now claimed by the Fallbrook Public Utility District under permit No. 7033. Those claims in themselves are adverse to the claims of the United States against which the United States is entitled to a decree quieting title.

3. Specifically, counsel for the Fallbrook Public Utility District, in a letter dated July 22, 1949, to the Bureau of Yards and Docks, Department of the Navy, Washington, D. C., [62] declared that the United States has no right to store water although that right is specifically provided for in the Stipulated Judgment, Exhibit A of the complaint.

The foregoing assertions are not to be construed as in any way limiting the adverse claims of the named defendants nor to vary in any way the demand contained in the complaint that the defendants set up fully their claims to water from the Santa Margarita River.

4. Specifically, in regard to Ernest Louis Barbey and Essie Beulah Barbey: Those named defendants are plaintiffs in the case Ernest Louis Barbey, and Essie Beulah Barbey v. James Oviatt, et al.; Cross-complainants Mary Vail Wilkinson, Mahlon Vail, Edward N. Vail, Margaret Vail Wise, and Nita M. Vail, Trustees, in the Superior Court of the State of California in and for the County of San Diego, No. 154140. Involved in that litigation are rights to the use of water claimed by the parties plaintiff to which reference has been made. If those plaintiffs claim no interest in and to the rights to the use of water in the Santa Margarita River and its tributaries, they could not, of course, be in conflict with the interests of the United States. If, however, they are asserting correlative rights in the stream, they are called upon to come forward and assert their rights in this proceeding or, as the Supreme Court has suggested, enter a disclaimer of any right. The institution of such a suit in itself clouds the title of the United States requiring relief of the character prayed.

---

62/   Exhibit F of this memorandum.

As counsel for these named defendants, it is understood, represents them in the Barbey litigation, it is impossible to view the request for a more definite statement as being other than somewhat anomalous.

5.  Specifically, in regard to Ruth Wentworth, defendant and movant here, the United States alleges that the defendant in question is a party to the proceeding instituted by Ernest Louis Barbey and Essie Beulah Barbey, and it is understood is asserting interests in and to rights to the use of water of the Santa Margarita River and its tributaries.  Worthy of note in regard to this request is the fact that counsel represents Austin H. Buckley, executor of the estate of John Wentworth, deceased.  It will be revealed whether Ruth Wentworth has an interest in the estate of John Wentworth.  Irrespective of that fact, if the aforesaid Ruth Wentworth has no claim or interest in and to the waters in question, it is her responsibility to make a disclaimer.

6.  Specifically, in regard to A. F. Borel, defendant: that defendant has filed an application to appropriate water from the Santa Margarita River and its tributaries, application No. 13577.  Whether that claimant is asserting rights in addition to those referred to, he is called upon to make proof. Moreover, the claim which he has filed is obviously against the interests of the United States.

7.  Specifically, in regard to Felix Carnsey, defendant: that claimant has filed with the Department of Public Works, Division of Water Resources, State Engineer, State of California, filing No. 13505, asserting claims adverse to the interests of the United States and was for that reason named in this suit. If that defendant claims water, he is required, in accordance with the complaint of the United States, to answer and set up fully the claims which he asserts. If he makes no assertion to rights to the use of water, he should enter a disclaimer.

8.  Specifically, H. McC. Hossein, M. N. Lloyd and E. M. Lloyd, defendants, are claimants to rights to the use of water in the Santa Margarita River or its tributaries and as such are asserting correlative rights in and to the use of the waters of the stream in question.  In accordance with the prayer of the complaint those defendants should be required to answer the complaint

- 24 -

and to set up fully the character of their interests.  If they have no interests, disclaimer should accordingly be entered by counsel.

## II.

The defendants in the motion here under consideration make two inquiries: [63/]

(1) Whether the United States claims title and ownership of the rights to the use of water in the Santa Margarita River, the subject matter of this suit. Response to that inquiry is in the affirmative.  Such an inquiry, of course, is unnecessary in view of the express statements throughout the complaint. [64/]

(2) The source of the title claimed by the United States.  This Court will, of course, take judicial notice of its own records which will reveal that the United States did condemn these rights for the military purposes for which they are presently being used.  It is again observed in passing that the United States is not called upon to plead for, as stated by the Supreme Court of the United States:  "An allegation, in ordinary and concise terms, of the ultimate fact that the plaintiff is the owner in fee is sufficient, without setting out matters of evidence, or what have been sometimes called probative facts, which go to establish that ultimate fact; * * *." [65/]

## III.

Defendants request a more definite statement [66/] as to what acts or statutes vest in the United States exclusive jurisdiction over the properties here involved.  Response to that inquiry has already been made in the review of the law in the preceding paragraphs, commencing on page 5 through page 14. Attached to this memorandum and made a part of it are Exhibits A, B, and C, pursuant to which cession of exclusive jurisdiction in compliance with the laws of the State of California was accomplished.

---

63/  Fallbrook Public Utility District, et al., motion for more definite statement or for bill of particulars, par. 2, page 2.

64/  Complaint, paragraphs I, II, VI, and throughout the complaint.

65/  Ely v. New Mexico & Arizona RR. Co., 129 U. S. 291, 293 (1889).

66/  Fallbrook Public Utility District, et al., motion for more definite statement or for bill of particulars, par. 3, page 2.

- 25 -

779

Due to the confused character of the inquiry, full response to the remainder of this paragraph is extremely difficult. The inquiry is made as to whether water rights were acquired by the United States by reason of the cession of jurisdiction. Continuing in the same vein, reference is made to the paramount right to 35,000 acre-feet of water which the United States asserts. Manifestly, a cession of exclusive jurisdiction could not constitute a conveyance. Neither is the paramount right asserted by the United States premised upon that cession of jurisdiction. It is abundantly clear, however, that the fact that exclusive jurisdiction resides in the United States casts the claims and rights of the United States in a different perspective than those of the ordinary water user.

IV.

Inquiry is made by the defendants in regard to the underground basin alluded to in the complaint. [67/] In accord with their request, there is attached to this memorandum, marked Exhibit E, a map of the underground basin to which the United States alludes in its complaint. For purposes of identification three areas have been designated as separate basins. They are interconnected, it will be noted, and physically they are a single basin and one of the principal sources of the supply of water of the United States for the military establishments.

V.

Next, the defendants request that the United States give a more definite statement as to which of the defendants in the present action were parties to the suit upon which the Stipulated Judgment, Exhibit A of the complaint, was predicated. [68/] They likewise request that, if plaintiff concedes that some of the defendants in the present action were not parties or privy in estate to the parties in the former action, it state how such defendants became bound by the Stipulated Judgment. A careful review of the complaint reveals no assertion on the part of the United States that anyone who was not a party to the action upon which the Stipulated Judgment in question was premised

---

67/   Fallbrook Public Utility District, et al., motion for more definite
      statement or for bill of particulars, par. 4, page 3.

68/   Fallbrook Public Utility District, et al., motion for more definite
      statement or for bill of particulars, par. 5, page 3.

- 26 -

is bound by that judgment. Manifestly it would be impossible under the law to bind anyone not a party or a privy to the judgment. If the defendants were not parties to the cause, their recourse is to answer and set up the character of their claims.

VI.

An incongruous situation is created by the defendants in their motions. [69/] It will be observed that in one motion the defendants request that there be stricken from the complaint a large part of the particular paragraph. Nevertheless, in regard to that same allegation which the defendants are desirous of having stricken, they move for a more definite statement in another pleading. An appropriate course would be to demand that defendants elect either to strike or to request a more definite statement. However, in an effort to expedite a trial of the issues, the United States will make response to the inquiries presented.

1. Does the United States claim that the military purposes are riparian or appropriative? [70/] The United States declares that the rights to the use of water were acquired from the Rancho Santa Margarita. Those rights are presently used for military purposes. The measure of the rights are those owned by the Rancho Santa Margarita at the time of the acquisition plus such rights as may have been acquired through use - an element which must remain undetermined until the evidence has been evaluated. Those facts will present the fundamental question of whether the State law under the circumstances will control. Response to that question, it is respectfully submitted, will be in the negative for exclusive jurisdiction of the properties resides in the United States and Congress alone is the law-making body respecting those properties. [71/]

---

69/ Fallbrook Public Utility District, et al., motion for more definite statement or for bill of particulars, par. 6, page 4; Fallbrook Public Utility District, et al., motion to strike, paragraph V.

70/ Fallbrook Public Utility District, et al., motion for more definite statement or for bill of particulars, par. 6 (a), page 4.

71/ Ohio v. Thomas, 173 U. S. 276 (1898).

- 27 -

2.  The second inquiry, [72/] correlative with the first, raises the proposition of whether all the military establishments are upon the 38,739 acres found by the court to be riparian to the Santa Margarita River.  For the reasons expressed above, it is immaterial from the standpoint of the United States whether the water in question is utilized by the United States on riparian or nonriparian land.

3.  The next inquiry presented by the defendants [73/] is whether since the commencement of the military establishments the United States has pumped from its wells and exported water out of the watershed.  It is repeated that the measure of the rights exercised by the United States are those rights acquired from the Rancho Santa Margarita plus such increment of rights as would arise from use through the years.  The uses to which those rights are applied are subject solely to the jurisdiction of the United States and the laws enacted by the Congress.

## VII.

Alluding again to paragraph IV of the complaint, [74/] the defendants inquire if the United States, by reason of the acquisition of the rights to the use of water here involved for military purposes, has a superior and paramount right to the riparian and overlying land owners upstream from the Rancho Santa Margarita, so that the United States could enjoin such riparian and overlying land owners from diverting and using the water upon said lands.  That inquiry, of course, relates solely to a question of law and being hypothetical in nature is wholly improper under the circumstances.  However, assuming that the defendants named are able to prove riparian rights, it is sufficient to state that the United States fully recognizes those riparian rights.  It is, of course, necessary for those owners, in accordance with the request in the complaint, to answer and come forward and fully prove their interests.  Worthy of note

---

72/  Fallbrook Public Utility District, et al., motion for more definite statement or for bill of particulars, par. 6 (b), page 4.

73/  Fallbrook Public Utility District, et al., motion for more definite statement or for bill of particulars, par. 6 (c), page 5.

74/  Fallbrook Public Utility District, et al., motion for more definite statement or for bill of particulars, par. 7 (a), page 5.

782

is the fact that diverters of the character of Fallbrook Public Utility District are appropriators and come within a separate and distinct category from those alluded to in the paragraph in question.

### VIII.

In a manner repetitious the defendants request that the United States be directed to state the basis upon which it claims the quantity of water alluded to in the complaint. [75/]   To reiterate, the United States asserts the rights to the use of water to which it succeeded from the Rancho Santa Margarita plus whatever rights may have accrued by reason of use.  Response, therefore, is not required to the variety of questions presented by defendants as to the character and manner in which rights to the use of water may be acquired and held.  Moreover, in the words of the Supreme Court of the United States previously quoted, the assertion of ownership is sufficient without setting out probative facts respecting title which are evidentiary in character. [76/]

### IX.

In view of the reply appearing in the paragraphs immediately preceding, no useful purpose would be served by responding to the next inquiry of the defendants. [77/]

### X.

Creating the same anomalous situation to which reference has previously been made, the defendants request a more definite statement [78/] in regard to matters which they seek to strike from the complaint.  Again, in the interest of an expeditious trial of this matter, the defendants will not be called upon to elect as to the relief which they seek to obtain.  Rather, the United States responds that it has utilized water beneficially and consumptively for military purposes through the years pleaded in the complaint.  Of course,

---

75/   Fallbrook Public Utility District, et al., motion for more definite statement or for bill of particulars, par. 8 (a), (b), (c), (d), (e) and (f), pages 6 and 7.

76/   Ely v. New Mexico and Arizona RR. Co., 129 U. S. 291 (1889).

77/   Fallbrook Public Utility District, et al., motion for more definite statement or for bill of particulars, par. 9, page 7.

78/   Fallbrook Public Utility District, et al., motion for more definite statement or for bill of particulars, par. 10, page 7.

- 29 -

the United States is claiming the maximum needs for an emergency, and will adduce evidence in that regard.  The military demands must be calculated on that basis.  Again, however, it is a matter of proof concerning which in the course of the trial the United States will produce full and complete evidence.

### XI.

Alluding to the claim of the United States to a specified quantity of water from the Santa Margarita River, the defendants refer to the uses to which the water is applied when not needed for military demands. [79/]  Inquiry is then made as to what is meant by "other needs" as used by the United States in the complaint.  Simply stated, that reference is to domestic uses.

Again, the United States, in regard to the remainder of the question, is not called upon to explain the uses to which the water is applied when the military establishments are not making full demand.  It is reiterated that the primary and principal demand is military and that all other uses are subordinate to that demand.  In a time of crisis the full quantities claimed and which will be proved by the United States are what the Department of the Navy and the Marine Corps believe to be their needs to protect the Nation.

### XII.

Another anomaly is presented where the defendants request first that a particular clause of the complaint be stricken and then ask for a more definite statement in regard to it.  Irrespective of that fact, the United States responds to the inquiry presented. [80/]  That sentence from the complaint is as follows: "For the purposes of this cause the United States of America, adopting the findings of the Supreme Court of the State of California, considers and accordingly claims that the surface stream and subterranean basin constitutes a single source of supply of water."  Stripping the sentence quoted from its context, defendants, for dilatory reasons, make much of it.  Manifestly, that

---

79/   Fallbrook Public Utility District, et al., motion for more definite
      statement or for bill of particulars, par. 11, page 8.

80/   Fallbrook Public Utility District, et al., motion for more definite
      statement or for bill of particulars, par. 12 (a), (b) and (c), pages
      8 and 9.

allegation applied only to the context and efforts in some manner to pervert its meaning add nothing to the position of defendants.

In response to (a) of the paragraph in question, the United States denies that the declaration by the Supreme Court that there were less than 38,739 acres of riparian land is adopted by the United States. To the contrary, it will be noted that the United States asserts that 38,739 acres of land are riparian as found by the trial court. [81] Worthy of note in that regard is the fact that counsel for the Fallbrook Public Utility District alludes to the 38,739 acres of land as being riparian. [82]

Inquiry is next made as to whether the United States adopts the finding of the Supreme Court to the effect that no riparian user is entitled to the full flow of the stream. While that can scarcely be termed a finding of fact, rather it is a conclusion of law, the United States is not claiming all of the water in the Santa Margarita River.

Inquiry is then made as to whether the United States adopts the finding of the Supreme Court of California to the effect that there exists more than one underground basin. That statement is undoubtedly correct, but as previously pointed out, the large underground basin upon which the United States relies, and as depicted in Exhibit E of this memorandum, is actually a single large basin comprised of three portions. Nevertheless, as emphasized, those three areas are directly connected with each other and in fact constitute one large underground source for military uses. In regard to the Tomecula basin and the other underground basins, the United States has not in any way pleaded.

In responding to the motion for a more definite statement, the United States has made available to the defendants information far above and beyond that which the law requires. Nevertheless, to avoid the possibility of delay emanating from a refusal to provide that data, the United States has acceded to the unreasonable requests of movants. Now it is necessary to turn briefly to the authorities cited by the defendants.

---

[81] Complaint, paragraph V.

[82] See Exhibit F attached to this memorandum.

1.  It is asserted that the United States has created an actual controversy by instituting the action.  The absurdity of that contention is manifest from a consideration of the facts set forth in response to paragraph 1 of the motion for a more definite statement.

2.  In the second paragraph of the authorities cited by defendants it is alleged that they are uncertain as to the meaning of "a paramount right." By way of evidencing their inability to understand, reference is made by them to a recent Supreme Court decision involving the off-shore oil properties.[83] Quoting from that case, the defendants point out that the terms "paramount right" and "full dominion" had been utilized by the Supreme Court of the United States.  Defendants then declare that they are entitled to a more definite statement as to whether the United States by its claim of "paramount rights" intends to claim "full dominion" over the waters of the Santa Margarita River. In passing it is observed that defendants will have the customary difficulty which is encountered when one undertakes to mix oil and water.

At the outset reference will be made to the derivation of the word "paramount" as used in this litigation.  From a highly important decision of the Supreme Court of the State of California this excerpt is taken: "The preferential and paramount rights of the riparian owner, the owner of an underground and percolating water right, and the prior appropriator are entitled to the protection of the courts at law or in equity.[84]   Again, the Supreme Court of the State of California, in regard to the rights to the use of water of the City of San Diego, commented:  "This * * * is an action purely declaratory in character and is one wherein the plaintiff has neither pleaded nor attempted to prove any facts which would entitle it to any further or affirmative relief beyond that of having its prior and paramount rights to the use of water * * * established."[85]   It will be observed that the term "paramount rights" has been used generally by the Supreme Court of the State of California in describing the

---

83/  United States v. California, 332 U. S. 19 (1947).

84/  Peabody v. Vallejo, 2 Cal. 2d 351, 40 P. 2d 486, 494 (1935).

85/  San Diego v. Cuyamaca Water Company, 209 Cal. 105, 287 Pac. 475 (1930).

- 32 -

rights of a riparian user. It has likewise been used in connection with pueblo rights. In utilizing the term in this proceeding the United States seeks to attribute to it no other meaning than that which has frequently been used by the Supreme Court of the State of California. To that statement, however, it is essential to add the fact that the United States holds the rights to the use of water in question as a sovereign having exclusive jurisdiction over its properties. Thus, to the term "paramount" as used there must be attributed the additional connotation of a sovereign acting in the capacity in which the United States is acting in maintaining the military establishments in question for the defense of the Nation.

3. The movants cite authorities in connection with exclusive jurisdiction.[86/] Clearly, the United States has exclusive jurisdiction over the properties and the authorities cited by the defendants are without meaning under the circumstances.

4. Defendants allude again to the question of underlying basins.[87/] It is respectfully submitted that the matter is answered in full by the previous statements contained in this memorandum and by the exhibit disclosing the basin underlying Camp Pendleton.

5. The authorities cited by the defendants in connection with the Stipulated Judgment have no bearing on the proposition.[88/] Clearly, the United States is not asserting that anyone not a party to the proceedings upon which the Stipulated Judgment is premised, or in privity with those parties, could be bound by it. Further comment is unnecessary.

---

86/ Fallbrook Public Utility District, et al., points and authorities on motions for a more definite statement and to strike out portions of complaint, par. 3, page 2.

87/ Fallbrook Public Utility District, et al., points and authorities on motions for a more definite statement and to strike out portions of complaint, par. 4, page 3.

88/ Fallbrook Public Utility District, et al., points and authorities on motions for a more definite statement and to strike out portions of complaint, par. 5, page 4.

- 33 -

787

6. Defendants continue to allude to the question of whether the military uses are riparian uses. [89] Clearly, the matter has been answered by the comments set forth above.

7. Again the defendants raise the question of the rights of the United States to proceed against them, requesting that defendants each be advised as to the acts of which they are being charged with doing. [90] In the preceding paragraphs the charges against the defendants have been specified and the Court is respectfully requested to require that the defendants answer and set up such rights as they have.

8. Repeating, the defendants demand the basis upon which the United States is claiming its rights to the use of water. [91] As previously stated, the United States has based its claim upon the rights to which it succeeded from the Rancho Santa Margarita and by reason of its use on the river. It is difficult to perceive why counsel for the defendants could answer in regard to one defendant and is unable to answer in regard to others.

9. Inquiry is made as to whether the United States claims its rights on more than one basis. [92] It is respectfully submitted that the United States has repeated throughout that it succeeded to the rights of the Rancho Santa Margarita and that it has been applying the rights to a beneficial use over a long period of years. That suffices and there is no question but that the defendants should be able to answer.

10. Defendants request a statement of fact as to the quantities of water which have been applied to a beneficial use. [93] The United States has stated when acquiring water for military uses it must look to the time of

---

[89] Fallbrook Public Utility District, et al., points and authorities on motions for a more definite statement &c., par. 6(a), (b) and (c), pp. 4, 5.

[90] Fallbrook Public Utility District, et al., points and authorities on motions for a more definite statement &c., par. 7 (a) and (b), pp. 5, 6.

[91] Fallbrook Public Utility District, et al., points and authorities on motions for a more definite statement &c., par. 8, page 6.

[92] Fallbrook Public Utility District, et al., points and authorities on motions for a more definite statement &c., par. 9, page 6.

[93] Fallbrook Public Utility District, et al., points and authorities on motions for a more definite statement &c., par. 10, page 6.

- 34 -

maxim demand during an emergency.  That is the purpose for which those rights were acquired.  If defendants wish to contest the rights of the United States to hold these waters for military purposes, they should proceed in the normal manner of raising it in their answer and having the dispute settled before the Court rather than by means of numerous questions of the character here presented.

11.  No response is required to defendants' paragraph numbered 11.

12.  The defendants allude to the question of riparian acreages.[94] Attached to this memorandum is a map disclosing the watershed of the Santa Margarita River as it relates to the military establishments in question.[95] The defendants have likewise made inquiry as to what lands are riparian. Attached to this memorandum is a map utilized in the suit upon which the Stipulated Judgment is predicated.  That map reveals the location of riparian acreages.[96]  Very clearly, those acreages together with a description of the lands accompanying the statements involving exclusive jurisdiction should suffice to give/the defendants all of the data, and more, to which they are entitled. Inquiry is likewise made by the defendants as to what the United States is bound in regard to the findings with respect to the rights of a riparian user. As stated, that is a conclusion of law rather than a finding of fact. Nevertheless, the United States admits the existence of the precept to which the defendants refer.  The United States declares that there is one basin underlying Camp Joseph H. Pendleton.[97]

### RESPONSE TO MOTION TO STRIKE

Fallbrook Public Utility District;
Ernest Louis Barbey;
Essie Beulah  Barbey;
Ruth Wentworth;
A. F. Borel;
Felix R. Carnsey;
H. McC. Hossein;
M. M. Lloyd and E. M. Lloyd

---

94/  Fallbrook Public Utility District, et al., points and authorities on motions for a more definite statement &c., par.12 (a), (b), (c), page 7.

95/  See Exhibit G attached to this memorandum.

96/  See Exhibit H attached to this memorandum.

97/  See Exhibit E attached to this memorandum.

789

In considering the motion for a more definite statement reference was made to the fact that movants have requested to strike in many instances the same data concerning which the plaintiff is called upon to make a more definite statement.  Under those circumstances it is respectfully submitted that each and every paragraph of the motion to strike should be denied. Manifestly, the points which are requested to be stricken are those dealing directly with the fundamental proposition that the rights in question were purchased and used by the United States for military purposes, are presently used in connection with the Korean crisis, and that the facilities are of extreme importance in connection with the world situation as it exists today. With that background, each of the following items of the motion to strike will be separately considered.

### I.

Defendants would have stricken that portion of the complaint relating to the unique characteristics giving rise to the establishment of Camp Joseph H. Pendleton. [98/]  It is respectfully submitted that the very fact that the physical elements comprising the camp make it such a desirable location for training men to defend our Nation that the allegation is essential to give this Court a true perspective of the eminently important elements of the trial.

### II.

The defendants likewise would have stricken the additional allegation that there is no other site on the West Coast as suitable as Camp Pendleton for training purposes. [99/]  For the reasons expressed above, that proviso in the complaint should not be deleted.

### III.

In describing the Santa Margarita River as a source of supply of water for Camp Pendleton the statement is made that the river traverses some 21 miles of the camp. [100/]  Defendants would strike that provision.  It is to

---

98/  Fallbrook Public Utility District, et al., motion to strike, paragraph I.

99/  Fallbrook Public Utility District, et al., motion to strike, par. II.

100/  Fallbrook Public Utility District, et al., motion to strike, par. III.

- 36 -

be observed, however, that as the last user on the stream the United States
will be in a position to impound and therefore more effectively utilize the
rights to the use of water which it has acquired.  Thus, it is highly significant
and the Court is respectfully requested to deny that phase of the motion.

IV.

Movants would have stricken from the complaint the assertion that the
trial upon which the Stipulated Judgment was predicated involved 444 court
days. 101/   As the trial in this case progresses the importance of the earlier
trial upon which the Stipulated Judgment is predicated will become increasingly
important.  Thus the fact that the issues were thoroughly tried is a matter
which the record should disclose.

V.

Similarly the defendants would have stricken the reference that the
matter of the trial of the rights to the use of water in the Santa Margarita
River had been on appeal before the Supreme Court of the State of California. 102/
There again the reference simply gives additional background to salient
allegations upon which the United States will rely in the trial of the facts.
How defendants could be injured by it is difficult to perceive.  Clearly, the
trial court and the Supreme Court had an opportunity to review and closely
consider all of the elements which went into the Stipulated Judgment which
is Exhibit A to the complaint.  As stated, that allegation, which is not
controverted, lends credence to the assertion by the United States that the
rights at one time were thoroughly adjudicated, a factor which no doubt will
bear weight with this Court in giving consideration to the issues here.

VI.

To strike from the complaint, as defendants request, the allegation
that the Marines who are trained at Camp Pendleton are assigned to combat in
the Far East in order that the warfare may be successfully prosecuted would be

---

101/  Fallbrook Public Utility District, et al., motion to strike, par. IV.

102/  Fallbrook Public Utility District, et al., motion to strike, par. V.

-  37  -

to strip from the complaint an extremely important factor.[103] Water is essential for the maintenance of the camp. The defendants have encroached upon those rights and are presently exercising rights which are in contravention to the interests of the United States. The urgency of the situation, the critical situation, is emphasized by the allegation that the United States is in conflict in the Far East and that the destruction of Camp Joseph H. Pendleton for want of water would constitute a National catastrophe. Again the Court is respectfully requested to deny the motion to strike that essential allegation to which reference has been made.

## VII.

Similarly, defendants would have stricken the allegations that the rights to the use of water involved in this litigation are utilized for the United States Naval Hospital and for the United States Naval Ammunition Depot.[104] As both of those military installations are vital in the Nation's defense and in the present conflict, it is strange indeed that it would be urged that those allegations should be deleted. Clearly, they are essential in view of the fact that the United States is claiming and asserting its rights for military purposes. Accordingly, that phase of the motion should be denied.

## VIII.

Though the defendants have repeatedly requested a more definite statement in regard to the provision that the United States has adopted the findings of the Supreme Court of the State of California in regard to the basin underlying Camp Joseph H. Pendleton, the defendants nevertheless move to strike.[105] As stated, the allegation is important as again it gives this Court background in regard to the earlier trial of the issues. For that reason that phase of the motion should be denied.

---

103/ Fallbrook Public Utility District, et al., motion to strike, par. VI.

104/ Fallbrook Public Utility District, et al., motion to strike, par. VII.

105/ Fallbrook Public Utility District, et al., motion to strike, par. VIII.

- 38 -

IX.

Defendants likewise move to have that phase of the complaint stricken [106] relating to the threatened destruction of the military installations. It is respectfully submitted that under the circumstances, the issues being what they are, it would be error to strike from the complaint that all-important factor. To be noted, in addition, the defendants are unable to cite any authorities in support of their motion to strike. Accordingly, the entire motion should be denied.

## MOTION FOR A MORE DEFINITE STATEMENT

### James Oviatt

In responding to the several paragraphs in the motion for a more definite statement by James Oviatt the Court is respectfully requested to consider the principles of law previously alluded to, particularly in regard to the factors involved in suits to quiet title and for declaratory judgments. In making this response, moreover, the United States will cross-reference its replies with similar points previously raised.

I.

It is urged by defendant James Oviatt [107] that he is unable to ascertain if the alleged controversy existed between the United States and the defendants prior to the filing of the complaint. Manifestly, the only interest which James Oviatt has in the pleadings relates solely to his status in the matter. That the United States has alleged a claim for relief to quiet its title against his adverse claims is manifest from the citation of authorities above. [108] As likewise pointed out above, the same principle of law adheres in the State of California. [109] Irrespective of the fact, however, that the United States need not allege the character of the adverse claim of James Oviatt, reference is made to litigation presently pending to which James Oviatt is a party. [110]

---

106/ Fallbrook Public Utility District, et al., motion to strike, par. IX.
107/ James Oviatt, motion for a more definite statement, par. 1 (a).
108/ Ely v. New Mexico & Arizona RR. Co., 129 U. S. 291, 293 (1889).
109/ Castro v. Barry, 79 Cal. 443, 21 Pac. 946 (1889).
110/ Ernest Louis Barbey, and Essie Beulah Barbey v. James Oviatt, et al.; Mary Vail Wilkinson, et al., cross-complainants, No. 154140.

- 39 -

In that litigation defendant James Oviatt is claiming rights to the use of water within the watershed of the Santa Margarita River which of necessity are adverse to those of the United States. Moreover, the pendency of the State court litigation to which Oviatt is a party is in itself sufficient cause to proceed against him.[111]   If, of course, James Oviatt asserts no rights, it is appropriate that he should file a disclaimer in accordance with the established principles of law which have been reviewed above.

## II.

It is asserted by defendant James Oviatt that he cannot ascertain whether it is claimed by the United States that the Stipulated Judgment, Exhibit A of the complaint, is binding upon any parties to the action who were not parties to the judgment or successors in interest to parties subject to that judgment.[112]   For reasons expressed above, if defendant James Oviatt is in no way a party or privy to that Stipulated Judgment he is, of course, not subject to it. In view of the response made in the sentences immediately preceding, the remainder of the paragraph of the motion in question does not require response.

## III.

It is next alleged by defendant James Oviatt[113] that he cannot ascertain whether the United States claims any rights in and to the waters of the Santa Margarita River and its tributaries other than the rights allegedly vested in it as successor in interest to the properties acquired from the Rancho Santa Margarita. Responding to that question, the United States refers to earlier comments in regard to its rights. The measure of the rights asserted in this case by the United States are the rights to which it succeeded from the Rancho Santa Margarita plus whatever other rights might accrue to it by reason of user. The exact extent of the rights is, of course, a matter of proof

---

111/ Colquitt v. Roxanna Pet. Corp., et al., 49 F. 2d 1025 (C.A. 5, 1925); cert. denied 284 U.S. 669 (1926).

112/ James Oviatt, motion for a more definite statement, par. 2 (a).

113/ James Oviatt, motion for a more definite statement, par. 3 (a).

- 40 -

concerning which evidence must be adduced.

Respecting the inquiry relative to a paramount right to 35,000 acre-feet, [114/] it is asserted by the United States that it succeeded to 38,739 acres of riparian land. It is likewise asserted that that acreage is entitled to a reasonable share of the waters of the Santa Margarita River. Again, the term "paramount" is alluded to. As pointed out previously, [115/] the term "paramount" is frequently used by the Supreme Court of the State of California in defining riparian rights and likewise in defining pueblo rights. The term "paramount" here carries with it no connotation other than that attributed to it by the Supreme Court of the State of California. It must, of course, be borne in mind that the United States occupies the position of a sovereign having exclusive jurisdiction over the properties. The connotation of that fact is far-reaching and it is believed will be controlling in this proceeding.

Finally, in the paragraph in question, inquiry is made as to whether it is the claim of the United States that the waters of the Santa Margarita River, title to which is not vested in the plaintiff as successor in interest of the Rancho Santa Margarita, can be taken by the United States from other water users except through condemnation proceedings. [116/] Reply to that inquiry is in the negative. It is the position of the United States in this proceeding that there is no claim to rights to the use of water above and beyond those mentioned. It is not here seeking to deprive any water user of vested rights to the use of water. Rather, it is seeking to have those rights adjudicated and defined. It is essential to have claimants to rights to the use of water assert their rights in this proceeding to the end that the United States may know with a certitude the extent of the rights which it may exercise on the Santa Margarita River in connection with the military purposes so essential to our Nation's defense.

IV.

To a very large extent repetitious of preceding paragraphs in his

---

114/   James Oviatt, motion for a more definite statement, par. 3 (c).

115/   See page 32 supra.

116/   James Oviatt, motion for a more definite statement, par. 3 (d)

- 41 -

motion, defendant James Oviatt asserts that he cannot ascertain whether the alleged diversions by the defendants from the Santa Margarita River upstream from Camp Pendleton were made by all of the defendants or only by a part of them. [117/] Manifestly, defendant James Oviatt's concern is solely that of his own diversions. It has been alleged that he has diverted water to which the United States is entitled. Defendant Oviatt is claiming adversely to other users on the stream. Presumably his claim is adverse to that of the United States. He is, therefore, called upon to answer and set up his claim, or if he does not wish to assert a claim, to make a disclaimer.

Continuing the repetition, defendant Oviatt declares that he cannot ascertain when and where the diversions attributed to him took place. Manifestly, he is the one best acquainted with his activities in regard to the waters of the Santa Margarita River and he should, therefore, either disclaim or answer and set up the rights which he asserts.

Departing entirely from the subject matter of the paragraph in question, in the final subparagraph [118/] defendant Oviatt says it cannot be ascertained if the needs of the United States for military purposes vest any rights in the plaintiff in and to the waters not vested in the plaintiff as successor in interest of the Rancho Santa Margarita. That inquiry is not only foreign to the subject matter of the paragraph but is highly repetitious. As alleged above, the United States is asserting only rights to which it succeeded from the Rancho Santa Margarita and to such other rights as may have accrued by reason of the use of the waters over the many years since the date of acquisition.

V.

Finally, it is alleged [119/] that defendant Oviatt cannot ascertain how his rights became subject and subordinate to the rights of the United States. That, of course, is evidentiary in character and it is rather elementary until the evidence is adduced, that fact cannot be made a matter of judgment.

---

117/  James Oviatt, motion for a more definite statement, par. 4(a),(b),(c),(d).
118/  James Oviatt, motion for a more definite statement, par. 4 (e).
119/  James Oviatt, motion for a more definite statement, par. 5 (a).

- 42 -

Nevertheless, the United States has made the assertion that such is the fact and it is the responsibility of defendant James Oviatt to come forward and prove the character of his rights.

RESPONSE TO AUTHORITIES

Consideration has been given to the authorities cited by defendant James Oviatt. In view of the fact that the United States has supplied the information desired by the defendant irrespective of the fact that it is believed he is not entitled to it, there is no basis for considering the cited authorities, nor would a consideration of those authorities be of any assistance to this Court.

RESPONSE TO MOTION TO DISMISS, MOTION TO STRIKE, AND FOR AN
ORDER DIRECTING PLAINTIFF TO FILE A MORE DEFINITE STATEMENT

Santa Margarita Mutual Water Company

Consideration will first be given to the motion of defendant that the action should be dismissed because it fails to state a claim against the Santa Margarita Mutual Water Company. The authorities which precede, the manifest contentious situation now existing on the Santa Margarita River, all of which is alleged in the complaint of the United States, constitute a complete response to the motion in question. Abundantly manifest from them is the fact that the United States does state a claim against the defendant and accordingly the motion should be denied. However, for such aid as it may be to the Court, in addition to the authorities cited previously, there will be brief consideration of the elements presented by defendant's motion.

The first of those principles relates to the criterion which guides the courts in considering motions to dismiss. On the subject it has been authoritatively stated: "A motion to dismiss is limited to the allegations of the complaint, and, being the equivalent of a demurrer, the court is called upon to interpret the allegations of such complaint, and to accept all such allegations as being true, and to determine whether such complaint presents a cause of action. In weighing the validity of a motion to dismiss a complaint for insufficiency the duty of the court is not to test the final merit of the claim in order to determine which party is to prevail. But in ruling on the

- 43 -

motion, the court must proceed in the light of the present principles as to liberal interpretation of pleadings.  On a motion to dismiss the plaintiff is entitled to the most favorable intendments to be drawn from the facts pleaded. As it has been expressed, the question presented by a motion to dismiss a complaint is whether the complaint, construed in the light most favorable to the plaintiff and with all doubts resolved in favor of its sufficiency, states a claim upon which relief could be granted." [120]

Movant neither cites authority to the contrary nor alludes to elements in the complaint which it considers to be insufficient.  To the contrary, the authorities which are cited reveal that pleadings, the gravamen of which is considered to be far less serious, have been sustained.  More particularly, movant cites the decision of the Supreme Court of the State of California involving the rights to the use of water here involved, and to which the United States succeeded. [121]  It will be observed that California's highest court described that litigation as an action "to secure a declaration of its riparian rights in the waters of the Temecula-Santa Margarita River and its tributaries, and for an injunction * * *." [122]  Here the United States seeks relief of the same character, with the additional factors which attach to a proceeding by a sovereign vested with exclusive jurisdiction of rights concerning which the relief is sought.  Under the circumstances it is, therefore, difficult to perceive the basis upon which the motion to dismiss is premised.  In that regard reference is made to the requirements of the Federal Rules of Civil Procedure which specify, among other things, that applications for orders of the nature here involved must "state with particularity the grounds therefor." [123] By reason of the nature of the motion and the absence of authorities to

---

[120] Cyc. Fed. Proc. 2d ed., vol. 5, sec. 1601, pp. 266-267; Please consider also the numerous decisions Cyc. Fed. Proc., 2d ed., 1950 cumulative supplement at the same reference.

[121] Rancho Santa Margarita v. Vail, et al., 11 Cal. 2d 501; 81 P. 2d 533 (1938).

[122] 11 Cal. 2d 501, 500.

[123] Rule 7 (b) (1) Federal Rules of Civil Procedure.

- 44 -

support it, it appears that there has not been compliance by the movant with the rule last cited.

Extended comment is not necessary on the subject. Relief of the character for which the United States petitions this Court has been granted in numerous instances both by the courts of the State of California [124] and in the Federal courts. [125] For the reasons stated above, this Court is respectfully requested to deny the motion of defendant Santa Margarita Mutual Water Company to dismiss this cause for failure to state a claim.

<u>Response to Motion to Strike and for an Order to File a</u>

<u>More Definite Statement</u>

In that phase of this consideration relative to the motion of Santa Margarita Mutual Water Company to dismiss it was emphasized that movant's authorities did not support the motion. To the contrary, those authorities revealed that California's highest court has entertained many cases similar in character to this case. Reexamination of those authorities reveals that they either tend to support the position of the United States or are entirely inapplicable to the situation presented.

Here the United States is seeking to have quieted its title against adverse claimants and to enjoin encroachment upon its rights to the use of water from the Santa Margarita River. Those rights, as averred in the complaint, were acquired by the United States from the Rancho Santa Margarita. Those rights are required for purposes of National defense. They were acquired for that purpose. They are now exercised for that purpose. They are now defended for that purpose.

As emphasized throughout, exclusive jurisdiction over Camp Pendleton, the United States Naval Hospital and the United States Naval Ammunition Depot has

---

[124] San Diego v. Cuyamaca Water Co., 209 Cal. 105, 287 Pac. 475, 496 (1930); City of Los Angeles v. City of Glendale, 23 Cal. 2d 68, 142 P. 2d 289 (1943); Anaheim Union Water Co. v. Fuller, 150 Cal. 327, 88 Pac. 978 (1907).

[125] United States v. Humboldt Lovelock Irr. Light & Power Co., 97 F. 2d 38 (C.A. 9, 1938), cert. denied 305 U. S. 630; Ramshorn Ditch Co. v. United States, 269 Fed. 80 (C.A. 8, 1920); Brooks v. United States, 119 F. 2d 636 (C.A. 9, 1941), cert. denied 313 U. S. 594; Ide v. United States, 263 U. S. 497 (1923).

- 45 -

been ceded by the State of California to the United States. This Court may
well attribute to that fact far-reaching legal effect. Certainly it is a matter
of primary concern to the United States for, as revealed above, that cession
establishes the relationship which here exists between the Nation and the State.
Nevertheless the movant Santa Margarita Mutual Water Company requests that
clause be stricken from the complaint. [126]

    Described in detail in the complaint are the rights to the use of
water acquired by the United States from the Rancho Santa Margarita. [127]
Asserted by the United States is a claim that it succeeded to the rights, title
and interest of the Rancho Santa Margarita. [128] Defendant, however, seeks an
order requiring the United States to describe with greater particularity
the lands, riparian acreage and quantities of water. [129] Yet in its motion
accompanying the application for the order in question the defendant asks this
Court to strike from the complaint the description of the land, the riparian
acreage and the quantities of water set forth in those paragraphs as being
redundant, immaterial, and impertinent. [130] Similarly this Court is requested
to strike the aggregate quantity of water, the uses to which the water is
applied, and practices of the United States to avoid waste during periods
when not confronted with maximum demands for military purposes. [131] Defendant's
motion to strike would leave intact a sentence which refers to paragraphs
which movant earlier requested to be stricken. [132] Disregarding the motion to
strike, the movant requests a more definite statement of the factors which
this Court is petitioned to eliminate. [133]

---

[126] Santa Margarita Mutual Water Company, motion to dismiss &c, par. D, page 2.
[127] Complaint, paragraph V.
[128] Complaint, paragraph VI.
[129] Santa Margarita Mutual Water Company, motion to dismiss &c, par. A,B,C, p. 3.
[130] Santa Margarita Mutual Water Company, motion to dismiss &c, page 2.
[131] Complaint, paragraphs VII and VIII.
[132] Santa Margarita Mutual Water Company, motion to dismiss &c, page 2, referring to par. VIII of complaint, which has reference to par. II and VII.
[133] Santa Margarita Mutual Water Company, motion to dismiss &c. par. E,F,G,H, page 4.

800

These conclusions, it is respectfully submitted, seem necessarily to follow - defendant by its motions would confuse rather than clarify, would delay rather than expedite, professes difficulty to comprehend where none should exist.  Here the United States acquired vast areas of land for military purposes.  Reasons for the selection of the sites are declared with much detail in the complaint.  Averred, among other things, are the unique qualities for military purposes of which that area is possessed.  Among the primary reasons, from the military standpoint, was the availability of water from the Santa Margarita River.  Rights to the use of water from that stream were appurtenant to that land.  Those rights had been settled after long and contentious litigation between two principal claimants who owned by far the greatest share of riparian lands.  The Supreme Court of California reviewed the findings and pronounced in its decision a basis of settlement.  Those rights were defined as being riparian in character and acreages and quantities were meticulously defined.  By a Stipulated Judgment, premised on the trial court's findings and the law as pronounced by California's highest court, the rights were settled.  To approximately two-thirds of those rights the United States succeeded.  Those rights were purchased for military purposes.  They are now and in the future will be used for those purposes.  To strike from the complaint references to those rights and the other salient factors attacked by movant would be a denial of the right of the United States to be heard in this case.  A succinct and authoritative statement is particularly applicable under the circumstances: "A motion to strike immaterial matter should be denied where granting such motion would strike out allegations without which the complaint would be meaningless.  And, certainly, matter which under a proper theory has a legitimate place in the pleading should not be stricken." [134]   This suit is to protect those military rights.  It is not contended that anyone not a party to or a successor in interest to the rights determined by the above-mentioned litigation could be bound by the judgment, Exhibit A of the complaint.  The need for this suit stems primarily from the fact that the claimant here named is not bound by that judgment.

---

[134]  Cyc. Fed. Proc., Vol. 5, sec. 1776, p. 429.

8C1

To avoid possible contentions by the defendant that additional information is required, reference is made to the following exhibits which are a part of this memorandum:

Reply to defendant's request for a more definite description of the land:  See Exhibits A, B, C, in which are described the lands over which exclusive jurisdiction is held by the United States and to which are appurtenant the rights to the use of water here involved.  See also Exhibit G, a map of the area which defines the limits of the drainage area of the Santa Margarita River and its tributaries.

Reply to defendant's request for a definite description of the riparian land and the acreages:  Having moved to strike that portion of the complaint defining the acreages, the propriety of this request is at least suspect.  Nevertheless the requested information is set forth in paragraph V of the complaint. Though the United States is not called upon to provide an exact description of the 38,739 acres of land, reference is nevertheless made to Exhibit H, which is a map classifying lands riparian to the Santa Margarita River.

Reply to the inquiry whether the United States is claiming rights as a riparian owner:  As repeated throughout, the United States succeeded to the rights of the Rancho Santa Margarita. Those rights are riparian.  In addition the United States is entitled to such other rights to the use of water as may have accrued to it by user.

Response to Supplemental Points and Authorities of Defendant
Santa Margarita Mutual Water Company in Support of
its Motions to Dismiss, to Strike and to
Make More Certain

I.

It is asserted by the defendant that the United States does not allege the basis upon which it is claiming its rights, whether they are riparian, appropriative, or premised upon prescription.  As stated and reiterated above, the United States is claiming its rights premised upon those which it acquired

- 48 -

as successor in interest to the Rancho Santa Margarita together with such other rights as may accrue to it by reason of user.[135/]   The assumption of defendant that the United States is basing its right solely upon the artificial needs created by the military establishments referred to in the complaint is, therefore, in error.

## II.

It is alleged by the defendant that the United States has not described the properties involved.[136/]   That question was asked in the earlier filings by this defendant and response has been made to it.

## III.

It is next alleged by the defendant that there is no allegation that the water which the United States is using for military purposes is being used on lands riparian to the Santa Margarita River or that it is a riparian use.[137/]   As stated throughout this memorandum, the United States acquired these rights to the use of water for military purposes.  For a long period of years those rights have been exercised for those purposes.  Moreover, the United States holds exclusive jurisdiction over the properties and Congress, and Congress alone, is the body which can enact laws in regard to the use of those rights.  Thus, it becomes a question of law to be decided by this Court as to whether the United States must use these rights upon riparian lands.

## IV.

Next it is asserted that there is no allegation that the United States has filed any notice of appropriation or received any permit from the Division of Water Resources of the State of California as required by the Water Code of the State of California.[138/]   The United States acquired the rights in question by purchase.  Manifestly, it is not required to initiate an appropriation with the State of California.  Moreover, the United States is not subject to the

---

135/   Santa Margarita Mutual Water Company, supplemental points &c, unnumbered paragraph, page 1.

136/   Santa Margarita Mutual Water Company, supplemental points &c, par. A, page 2.

137/   Santa Margarita Mutual Water Company, supplemental points &c, par. C, page 2.

138/   Santa Margarita Mutual Water Company, supplemental points &c, par. D, page 2.

- 49 -

police regulations of the State of California and for that reason it is not obliged to comply with those regulations enacted by the State of California in connection with the administration of rights to the use of water. [139/]

## V.

It is next alleged that the United States has not asserted title by prescription or otherwise to the use of the waters of the Santa Margarita River. For reasons inexplicable, it is stated that a more careful inspection of the allegations of plaintiff's complaint discloses the reason for the lack of such an allegation. [140/]  In view of the fact that the United States is asserting its rights as successor in interest of the Rancho Santa Margarita and by reason of its use of the water down through the many years since title vested in it, there certainly is no reason for making further allegations.  Moreover, as pointed out, it is not essential in a suit to quiet title that the United States set out the evidence of its title but rather it is sufficient to allege, as the United States has alleged, that fee simple title to the properties involved resides in it. [141/]

## VI.

It is next alleged that the United States acquired the property at different times and consequently in different parcels.  That fact is admitted. [142/]

## VII.

The defendant next reviews in some detail certain paragraphs of the complaint but makes no comment regarding them. [143/]  Admittedly, those allegations are contained in the complaint, but the significance of the assertion by the defendant is not understood.  Accordingly, no response can be made to it.

---

139/  See comments in regard to the immunity of the United States from control by the States through the exercise of the State's police power, pages 1 et seq.

140/  Santa Margarita Mutual Water Company, supplemental points &c, par. E, page 3.

141/  See discussion above in regard to the sufficiency of complaints in suits to quiet title, pages 17 et seq.

142/  Santa Margarita Mutual Water Company, supplemental points &c, par. F, page 3.

143/  Santa Margarita Mutual Water Company, supplemental points &c, par. G, page 4.

- 50 -

## VIII.

It is next alleged that the United States does not claim a military use is a riparian use.[144/]   That is admitted.  As previously emphasized, the problem is one of law for this Court to decide as to whether, having purchased and used those rights for military purposes, the United States may be deprived of them.

## IX.

Finally, it is stated that there is no allegation by the United States describing or defining its rights.[145/]   That, of course, is incorrect.  In that regard see paragraphs V and VI in particular of the complaint filed by the United States.  It is also asserted in this paragraph that there is no allegation of a controversy existing between the United States and the defendant.  That is again an error.  In that regard, reference is made to paragraph I and to paragraph IX of the complaint now before the Court.

### ARGUMENT

Santa Margarita Mutual Water Company

### I.

The first assertion under the heading of "Argument" relates to the character of the description of the property involved in a proceeding to quiet title.  In view of the full description which has been supplied to defendant in the attached exhibits to which reference has been previously made, there is no need for further comment.

### II.

It is next alleged that the owner of lands which are riparian to the river does not have the right to use the water upon non-riparian land.  Irrespective of what the rule may be in regard to a private individual, here the United States acquired a vast tract of riparian land for military purposes.  Appurtenant to that land are highly valuable rights to the use of water from the Santa Margarita River essential to the maintenance of the military establishments in question.  As repeatedly stated, however, the matter is a question of law to be decided by the Court.

---

144/  Santa Margarita Mutual Water Company, supplemental points &c, par. H, page 4.
145/  Santa Margarita Mutual Water Company, supplemental points &c, unnumbered paragraph, page 5.

III.

Defendant next sets forth the elements constituting riparian lands. There is no question as to defendant's correctness in the matter.  The pertinency of the propositions under the circumstances, however, is questioned.

IV.

It is next asserted that a pleading must allege the nature of the water right and the amount of water which the party may put to a beneficial use. It is respectfully submitted that the United States has made those allegations. Worthy of note, however, is that the defendant has moved to strike the allegations which he says are essential in a complaint.  Defendant next alludes to certain principles in regard to res adjudicata.  Again the United States raises no objection in regard to those principles, although it is respectfully submitted they have no application here.  Defendant then alleges that a riparian owner has no right to any mathematical or specific amount of water in a stream.  Again with that proposition the United States has no dispute.  The significance of it here, however, is a question of law which must be determined by this Court.

V.

Finally, at considerable length the defendant sets forth the pertinent statutes of the State of California in regard to the appropriation and administration of rights to the use of water.  For reasons expressed above, it is respectfully submitted that those laws have no application to the United States.

Under the heading "Synopsis of Memorandum" is a resume of this memorandum.

A. DEVITT VANECH,
Assistant Attorney General

ERNEST A. TOLIN,
United States Attorney

BETTY MARSHALL GRAYDON,
Assistant United States Attorney

WILLIAM H. VEEDER,
Special Assistant to the Attorney General

- 52 -