(SPACE BELOW FOR FILING STAMP ONLY)

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
604 SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA
FRANKLIN 9-1131



FILED

FEB 8 1952

EDMUND L. SMITH, Clerk

By _____

DEPUTY CLERK

Attorneys for Defendant FALLBROOK PUBLIC
UTILITY DISTRICT

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil No. 1247-SD |
| Plaintiff | OPPOSITION OF FALLBROOK PUBLIC UTILITY DISTRICT TO PLAINTIFF'S MOTION FOR SEPARATE TRIAL AND ANSWERING MEMORANDUM OF POINTS AND AUTHORITIES. |
| Vs. | |
| FALLBROOK PUBLIC UTILITY DISTRICT, a public service corporation of the State of California, et al., | |
| Defendants | |

Comes now Defendant FALLBROOK PUBLIC UTILITY DISTRICT

and for opposition to the motion of Plaintiff for a separate

trial of this Defendant urges the following grounds and files

its answering memorandum of points and authorities as follows:

I.

This is not the type or kind of litigation which lends

itself to or permits of separate trials of the merits of any one

of the individual defendants' claims since they are all inter-

related and inter-dependent.

A. The plaintiff's own acts and statements show that it

intended to obtain a comprehensive adjudication of all of the

water rights and claims of all the defendants on the river, in

a single action.

(1). The complaint is drawn to allege one cause of

-1-

810

51

1   action against all defendants.

2          (a)  It alleges one primary right.  In Paragraph VIII

3   of the complaint, plaintiff alleges:

4        "United States, as against the defendants herein named,

5        asserts that it has a paramount right to 35,000 acre-

6        feet of water annually of the SantaMargarita River."

7          (b)  The complaint alleges one wrong.  In Paragraph

8   IV of the complaint, it alleges:

9        "The encroachments by the defendants threaten the

10        destruction of this basin (on which Plaintiff relies

11        for its water supply) by reason of salt water intrusion

12        from the Pacific Ocean - - - - Not only have the

13        activities of the defendants through their encroachments

14        upstream reduced the quantity available to the United

15        States of America from the mentioned subterranean

16        sources but there has been a like reduction in sub-

17        surface flow of the Santa Margarita River through the

18        encroachments of the defendants"

19   In Paragraph IX of the complaint the allegations of encroachments

20   are repeated:

21        "The defendants by reason of their diversions from the

22        Santa Margarita River upstream from Camp Pendleton have

23        caused the intrusion of salt water from the Pacific

24        Ocean to the irreparable damage of the United States.

25        They have likewise - - - - -proceeded to encroach upon

26        the already insufficient supply of water required for

27        - - - - Camp Pendleton, the United States Naval Hos-

28        pital and the Naval Ammunition Depot."

29          (c)  The prayer asks the court to "forever enjoin

30   these defendants from encroaching or infringing upon or threaten-

31   ing to encroach or infringe upon the rights of the United States

32   of America as hereinabove set forth."

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

811

52

1       Nowhere in the complaint is there any differentiation
2 between the numerous defendants.  They are all lumped in together
3 under the one blanket charge of "encroaching or infringing upon
4 or threatening to encroach or infringe upon the rights of the
5 United States of America". All are jointly accused of causing
6 "irreparable damage to the United States" "by reason of their
7 diversions from the Santa Margarita River upstream from Camp Pendle-
8 ton".  So far as can be ascertained from the complaint, all defen-
9 dants are equally guilty of the wrong of which plaintiff complains,
10 and no defendant is charged with any separate act or wrong.

11       Obviously, when a complaint alleges but one primary
12 right and one wrong, but one cause of action has been stated
13 (Work vs. County National Bank 4 Cal 2nd 532, 540) such a single
14 cause of action is not divisible.

16    (2)  The Plaintiff's successive motions for the addition
17 of new names as parties defendant (now amounting to 3000 or more)
18 and the reasons given by plaintiff in its several motions, show
19 that plaintiff conceives this litigation to be one single cause
20 of action, against all land owners and all water users within the
21 Santa Margarita watershed. Each motion submitted asking this court
22 to order the joinder of additional parties defendant, gave this
23 reason:

24      "This motion is made so that the court may have before
25      it the additional parties defendant in order that the
26      subject matter of this controversy may be adjudicated
27      completely in one action" (Emphasis added)

28    The present motion for separate trials is inconsistent with
29 with the reasons given for all these joinders of additional
30 parties.

31    (3)  Mr. Veeder, the principal attorney for plaintiff in
32 this controversy, in testifying before the subcommittee No. 1 of

-3-

812

53

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

the House Judiciary Committee on June 25, 1951, in response to
the question of Congressman Walter of Pennsylvania, chairman,
said:

 "Mr. Walter:  May I interrupt just at this point?
 With reference to this question of prescriptive rights,
 suppose A and B had a dispute as to whether B. living
 upstream has lost some of his rights to water. How would
 that controversy be determined?

 "Mr. Veeder:  You would bring a suit similar to this
 (referring to United States of America vs. Fallbrook
 Public Utility District et al) to get a complete
 determination.  For instance you refer to A and B on
 the stream.  A's claim against B may be for two second-
 feet of water <u>but</u> <u>A's</u> <u>right</u> <u>as</u> <u>against</u> <u>B</u> <u>is</u> <u>correlative</u>
 <u>with</u> <u>everybody</u> <u>elses</u> <u>on</u> <u>the</u> <u>stream</u>, so he would not know what
 the amount of his right would be in the absence of hav-
 ing  C and D, all the way down to X, Y and Z. And that
 is where we are to-day." (Emphasis added)

Mr. Veeder's quoted statement, we believe, is sound and in it he
admits it would be impossible to ascertain, either what Fallbrook's
rights are or what the Government's rights are, considered sep-
arately and alone, or in the absence of taking evidence of all the
other rights on the stream so as to enable the court to ascertain
and determine what are the rights of "everybody else on the stream-
----all the way down to X, Y and Z".


          II.

 But even if it should be held that Rule 42(b) is applicable,
it is clear that a separate trial of Fallbrook's claim would not
be in furtherance of convenience or avoid prejudice and therefore
should be denied.

 A.  The ascertainment and determination of the water rights

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

813

54

of Fallbrook would require the ascertainment and determination of
the rights and present requirements of every other defendant
claiming prior rights on the river.

1.  Assuming for the sake of this argument, that the
rights of Fallbrook are primarily appropriative and therefore in
law subject and second to all riparians and other prior right
owners on the river. Fallbrook's State permits expressly declare
that its applications have been approved "Subject to Vested Rights."
Fallbrook therefore is entitled to take only the surplus or excess
water remaining after the prior right owners had taken their
reasonable requirements for their just equal purposes and uses.
To ascertain what that remainder amounts to, available for Fall-
brook to take, it will be necessary to ascertain the amount of all
prior rights and subtract the sum of these prior rights from the
total water resources of the river.  The result would be the amount
of the remaining or surplus and excess water available to Fall-
brook under its appropriative right.

B.  The procedure followed by Judge Haines in the Tia Juana
River case (Allen vs. California Water and  Telephone Company
29 Cal 2nd 466) is an excellent example of this type of litigation.
There the appropriator, the  California Water and  Telephone Com-
pany filed a Cross-complaint naming as cross-defendants all of the
landowners in Tia Juana Valley, U.S.A.  Many of them, however,
were not served and never were legally before the court, however,
the trial judge considered the requirement of all the land owners
both those who were before the court and those who had not been
served in order to ascertain and determine what he called the
"total draught", or requirements for water, on the underground
basin and then subtracted the sum of these requirements from the
estimated available water supply, in order to arrive at the con-
clusion as to whether or not there remained any excess water which

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO I, CALIFORNIA

1  the appropriator could take.  In the written opinion of this
2  learned judge he said:

3    "It cannot be doubted that the defendant and cross-
4    complainant is entitled to take for export from the
5    surface and underground water of the Tia Juana River
6    Valley only the excess, if any, of such water as shall
7    be found to exist over those required to satisfy the
8    reasonable needs of those having paramount rights there-
9    in under reasonable methods of use." (Clerk's transcript
10   Vol. II p.204).

11 The learned judge then proceeded to say:

12   "It seems to me clear that, in the instant case, the
13   rights of those users of the waters of the Tia Juana
14   River Valley who are not before the Court, are so inter-
15   woven with the rights of the parties who are before the
16   Court that it would be utterly futile to undertake to
17   consider the latter without coincidently considering
18   the former - - - The question whether the rights of
19   such plaintiffs and cross-defendants as are now before
20   the Court will be adversely affected by the defendants'
21   operations, and, if so, to what extent, cannot be
22   determined with accuracy without considering the coin-
23   cident draw-down in the water table of the valley to be
24   anticipated through the exercise of their rights by
25   parties who have not appeared here.  While it is true
26   that the position of each well in some sort presents its
27   own problem; yet, in a larger sense, the problem of
28   establishing the respective rights of users and claimants
29   of the right to use waters of the Tia Juana River and
30   its basin is One problem and incapable of solution
31   otherwise than as a whole." (Emphasis Added)(Clerk's
32   Transcript Vol II p. 206-207).

-6-

815

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

1    The trial court found that the sum of the requirements
2    of the overlying land owners exceeded the net safe yield of the
3    underground basin and therefore enjoined the appropriator because
4    the court found there was no surplus.  In doing this, however, he
5    excluded any consideration of a substantial quantity of water
6    escaping through leaks from the Rodriguez Dam in Mexico, on the
7    ground that the leaks could be repaired or the escaping water re-
8    captured in Mexico and therefore would not be "sufficiently
9    dependable to be considered in computing the net safe yield of
10   the basin and adjudging whether there exists a surplus water
11   supply available for exportation." (Allen v. Calif. Water & Tel.Co.
12   29 C (2) 466,481).

13   The Supreme Court, however, differed with the trial
14   judge on this point and held that these waters "upon entering the
15   United States are subject to appropriation under the laws of this
16   state just as any waters of this State    (page 482) - - - - -Even
17   though the Mexican increment may be an undependable source of
18   water, this water should not remain unused so long as it is
19   available." (page 488).  The Supreme Court, however, approved the
20   procedure adopted by the trial judge "in treating the basin as a
21   unit, taking into consideration and calculating the requirements
22   of all overlying land owners".

23   The Court said:
24       "But defendant, in its pleadings, and specially in its
25       Cross-complaint, put in issue the right of all over-
26       lying  owners, and it was the theory at the trial,
27       which will be adhered to on appeal, (citing cases)
28       that the total draught on the basin was to be considered,
29       for without such consideration there could be no physical
30       solution or safeguard against salt water intrusion - - - -.
31       For determination of these issues the full overlying need
32       must be taken into consideration"   (p.484)(Emphasis added)

-7-

57

In the pending action the United States is making all land owners and water users in the Santa Margarita River watershed defendants. It seeks, as Mr. Veeder told the House Judiciary Committee, "to get a complete determination". And since, as he told the Committee, "A's rights, as against B, is correlative with everybody else on the stream" no one could know "what the amount of his right would be in the absence of C and D all the way down to X, Y and Z". Evidence would therefore have to be taken as to the water rights of "C and D all the way down to X, Y and Z" in order to know what the amount of the Fallbrook Public Utility District's rights would be.

C. The necessity of taking evidence as to the rights of all of riparian and overlying land owners within the watershed in order to determine the existence of a surplus available to the appropriator, is emphasized in the case of Tulare District v. Lindsay-Strathmore District (3 Cal 2nd 489, 524) where the Court said:

> "Under this new doctrine (set out in the 1928 Amendment
> to the Constitution Article XIV Sec. 3) it is clear
> that when a riparian or overlying owner brings an
> action against an appropriator, it is no longer suf-
> ficient to find that the plaintiffs in such action are
> riparian or overlying owners, and, on the basis of such
> finding, issue the injunction. It is now necessary for
> the trial court to determine whether such owners, con-
> sidering all the needs of those in the particular water
> field, are putting the waters to any reasonable beneficial
> uses, giving consideration to all factors involved, in-
> cluding reasonable methods of use and reasonable methods
> of diversion. From a consideration of such uses, the trial
> court must then determine whether there is a surplus in
> the water field subject to appropriation."

817

58

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

D.   In any water suit seeking a comprehensive adjudi-
cation of the water rights of all claimants on a river, as in
this action, there cannot be separate trials of the rights  or
claims of individual defendants independent of and apart from
the related rights and claims of other defendants  in and to the
same source or supply of water.

Obviously, a separate trial for a defendant, is a
trial of that defendant's claims separate and apart from the
trial of the claims of the other defendants.  Such a separate
trial would have none of the other defendants before the court
and, obviously, would not and could not adjudicate or determine
their rights _in their absence._  The 3,000 other defendants in
this action would no more be bound by a judgment or decree now
entered, for or against Fallbrook Public Utility District, in
the proposed separate trial between it and the United States of
America, than these same 3,000 defendants were or are bound by
the stipulated judgment entered in the case of Rancho Santa Mar-
garita vs. Vail (Exhibit A to Plaintiff's complaint)dividing the
waters of the Santa Margarita River between those two parties.

It is because _that_ judgment was binding _only_ on the
parties _then before the court_ that plaintiff found it necessary
to bring _this_ action.  And it was to avoid multiplicity of suits
that the plaintiff has, successively, moved this court for orders
bringing in additional defendants, so as to get before the court
all claimants to the water from the common source of supply, to-
wit:  the Santa Margarita River.  Now, by the pending motion,
plaintiff's counsel reverses his own theory of this litigation
and asks to try the claim of _one_ defendant _separately_.  As is
said in 3 Kinney on Irrigation and Water Rights, page 2774 §1543:

"But where there are a number of appropriators and
claimants of the water from the same source of supply,
the _rights to the use of the water cannot be adjudicated_

-9-

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

59

"in an action between a single plaintiff as against their rights of a single defendant. A decree attempting to adjudicate and settle the rights as between two appropriators or claimants in an action between themselves only as parties would not bind in any way the other appropriators and users of the water from the same source, and not made parties to action. Then, again, if this was the rule, the litigation and the multiplicity of suits in attempting to settle and determine the rights of all claimants to the waters from the common source of supply would be interminable, and such suits would end just where they began without there having been a final settlement or adjustment of the rights. So, the statutes of the various States provide to the effect that, in the adjudication of the water rights between claimants to the same from a common source of supply, all claimants who are not made parties plaintiff, must be made parties defendant. And the courts are inclined to protect the interests of persons interested and not made parties to the suit; and, when it is discovered during the progress of the case that there are other parties interested in the waters who have valid claims thereto, it is the usual practice for the Court to make an order to make them parties to the action, and they are then served with process and are permitted to come in and defend and set up their rights. And, in this connection, necessary parties to such an action are all those who have an interest in the subject and object of the action, and all persons against whom relief must be obtained to accomplish the object of the suit. So, in all cases where there are several appropriators and

-10-

819

60

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

1  "claimants of the waters from the same stream or other

2  source of natural water supply, or who take water from

3  the same ditch, canal, or reservoir, <u>in order to</u>

4  <u>permanently adjudicate the rights to all the water,</u>

5  <u>all parties having a valid claim thereto must be made</u>

6  <u>parties to the action.</u>  The same <u>rule is applied where</u>

7  <u>the water is claimed by riparian owners by virtue of</u>

8  <u>their riparian rights.</u>  In either case the <u>respective</u>

9  <u>parties having proven their rights, the Court must then</u>

10  <u>make specific findings as to the amount of water to</u>

11  <u>which each party is entitled, and upon which the decree</u>

12  <u>must be based.</u>" (Emphasis added)

13

14                      III.

15        The nature of this action requires that the evidence

16  of the rights of one defendant be considered and weighed in con-

17  nection with the evidence of the rights of the other defendants.

18        A.  Notwithstanding the fact that none of the defendants

19  have thus far filed any cross-complaints against their codefen-

20  dants, it appears that the court has the power, under the facts

21  of this case, to make an adjudication of the rights of the defen-

22  dants <u>inter se</u> in which event they would become adverse parties to

23  each other and evidence as to the rights of one would become

24  relevant and material to the rights of the others.

25        1.  In the recent water case of the City of Pasadena

26  vs. City of Alhambra, 33 Cal 2nd 908, 919, the Supreme Court of

27  California said:

28        "Appellant claims that the trial court improperly

29        enlarged the scope of the proceedings.  In response

30        to a request of the referee for instructions, the court,

31        after a hearing, ruled that the issues should 'embrace

32        an adjudication of rights of the defendants <u>inter se</u>

-11-

820

61

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

" 'and the rights of each and every party as against

each and every other party'.  Although the answers of

the respective defendants did not present claims

against the other defendants and were not served on

them, the action was tried on the theory that these

matters were at issue, and the ensuing judgment limit-

ing the amount of water that each could pump was also

based on this theory.  The trial court has authority,

under section 24, (of the Water Commission Act) to

include, in the matters which are to be submitted to the

referee and determined by the judgment, any issues

necessary to a proper determination of the controversy.

(See Fleming v. Bennett, 18 Cal 2nd 518, 523)  It was

within the discretion of the trial court to determine

whether it was necessary to adjudicate *inter se* the

amount of water to which each party was entitled, and

the record indicates that it would have been imprac-

ticable to decide the matter solely between the plain-

tiff and each defendant."


2.  In Strong v. Shatto 201 Cal 555, 557-558, the Cali-

fornia Supreme Court said:

"This action, in its original inception, was an action

to quiet title and it retained this character through-

out notwithstanding its amplification both as to parties

and as to the relief sought through the filing and ser-

vice of the substituted plaintiff's supplemental complaint.

This being so, these appellants upon their introduction

into this action, became actors therein and were called

upon to set forth their own respective rights with

reference not only to the lot owned by each in said

tract but with reference to the lots, ownerships, and

-12-

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO I, CALIFORNIA

"interest generally in said tract, not only as against
the plaintiff but also as against each and all of their
co-defendants in said action.  This is true not only
because of the nature of the action but doubly so be-
cause of the amplitude of the averments of the supple-
mental complaint as to the source and limitations upon
the titles of each and all of said defendants in rela-
tion to their own particular property and the properties
of each of the parties to said action, but also because
of the fact that a declaratory judgment was sought by
said substituted plaintiff defining the rights and in-
terests of each and all of the parties to said action
in and to the properties within the area of the entire
tract.  The trial court was thus invested with power to
render whatever judgment, binding upon all of said
defendants who had been duly served, defining and deter-
mining their and each of their respective rights and
interests in said tract as was fairly within the issues
tendered by said supplemental complaint."


    3.  In 19 Amer.Jur.284, it is declared:
"   Equity and rights existing between co-defendants
should always be determined by the decree where such
matters are contained in the pleadings and are of such
nature that if left undetermined, they would leave
roots of future controversy; and of course, any adjust-
ment of rights as between the co-defendants that is
necessary in order to enable the court to give plain-
tiff relief to which he is entitled is not only proper
but necessary.  No formal issue or adversary pleading
as between the co-defendants are essential.  But relief
will not be granted as between co-defendants where their

-13-

822

> "respective claims are not fairly brought under
> judicial cognizance.  The pleadings and proof must
> show their adversary interest and the bill must
> contemplate the adjustment of their rights."

We think that enough has been set forth herein to show that Fallbrook Public Utility District's rights are interdependent on the rights of every other prior right owner on the river and that its rights cannot be ascertained without first ascertaining what their rights are.

B.   It has been suggested by some that under the Reform Federal Rules of Practice this court has the power to make a complete adjudication of this controversy so far as to finally settle not only the question of rights as between the plaintiff on one side and defendants on the other, but also as between the several defendants.  Rule 55(c) of the Federal Rules provides as follows:

> "Except as to a party against whom a judgment is
> entered by default, every final judgment shall grant
> the relief to which the party in whose favor it is
> rendered is entitled, even if the party has not demanded
> such relief in its pleadings."

The probability that this court will be called upon, in line with the foregoing authorities and in order to make a complete adjudication, to determine and declare the rights of the parties not only as between the plaintiff and the defendants but also between the several defendants inter se, offers another strong reason why this court should not now embark on a separate trial of the merits of the controversy between the plaintiff and one defendant only, when the court may later be required to cover the same ground and hear practically the same evidence in determining the rights of that defendant in relation to the rights of his co-defendants.

-14-

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO I, CALIFORNIA

823

64

## IV.

Mr. Veeder apparently assumes that the mere existence of Rule 42(b) is all the authority or justification needed to warrant the Court granting his motion, since after quoting the rule he devotes the remainder of his argument to what appears to us irrelevant, immaterial matter unrelated to the highly important issues involved. He ignores the fact that notwithstanding the existence of the rule, many judges have denied many motions for separate trials for various and sufficient reasons. Some of the reasons given by the judges for denying these motions are applicable to the situation existing in the present case and are persuasive of the ruling which we think should be made, to-wit: denying the motion.

A.  Piecemeal litigation is not favored.

Catlin v. U.S. 324 US 229,234.

Arrow Petroleum Co. v. Johnson 162 Fed(2d) 269,274

Air King Products Co v Hazeltine 10F.R.D.381,383

In Kelley Island Line & Transportation Co. v. City of Cleveland, 47 F Supp 533,538, the court said:

"The law seeks to avoid multiplicity of suits and unnecessary duplication of litigation. It is a principle founded on clear thinking that where possible causes of action are not to be divided and courts are not to be compelled to t ry the same issues several times."

In Hirshhorn v. Mine Safety Appliance Co. 8 F.R.D. 11, 23, the court said:

"In the litigation at bar, the question first exists as to whether one or all defendants have breached a duty owed to the plaintiff in the management of their corporate affairs. If this question is answered in the affirmative, consideration must be given to the amount of money judgment, if any, to which the plaintiff is entitled."

-15-

824

65

"Regardless of what conclusion the court might reach
as to the question of liability, this would not be a
final decision.  A final decision generally is one which
ends the litigation on the merits and leaves nothing
for the Court to do but execute the judgment. Appellate
review may be had only upon an order or judgment dispos-
ing of the whole case, and adjudicating all rights,
including both liability and compensation.  The foun-
dation of this policy is not merely technical concep-
tions of 'finality'.  It is one against piecemeal
litigation.- - - - -  I am confronted with the rule
that issues should not be tried piecemeal unless neces-
sary to prevent undue delay or to promote justice."

B.  If both convenience and economy of time will be
furthered by a single trial of all issues, which we claim is true
in this case, separate trials thereof should not be granted, nor
should separate trials be ordered if there would be no danger of
prejudice from one inclusive trial and separate trials would
foster delay.  (35 CJS Federal Courts §136, p.1139)

A motion for a separate trial was denied in Fleischmann
vs. Harwood 10 Fed. Rules Dec. 139, 141 where it appeared that
substantialy the same evidence heard on the separate trial would
also have to be heard in the second trial on the main controversy.

A motion for a separate trial was denied in McCain vs.
Socony Vacuum Oil Co. 10 FRD 261, 262 because the judge considered
it would result in repetitious hearing of much of the same tes-
timony necessary to be heard on the main controversy.

C.  Where the issues are common to several defendants,
severance of the trial of the issues of one defendant under Rule
42(b) will not be granted since both convenience and economy

-16-

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO I, CALIFORNIA

would be furthered by a single trial. (Commercial Banking Corporation v. Indemnity Insurance Company 1 F.R.D. 380,381.

D.  When there is no apparent danger of prejudice resulting from a single trial delay should not be fostered by permitting separate trials. (7 Cyc. of Fed.  Procedure §3279, page 445.)

In Chappell &  Co. et al v. Santangelo, 30 Fed. Supp. 599 the court denied the motion for separate trials saying:

"To be sure, under Rule 20(b) Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, separate trials may be ordered 'to prevent delay or prejudice', but I see no danger of 'prejudice' from one inclusive trial.  And delays would be fostered, rather than prevented, by separate trials.  Indeed a multiplicity of separate trials would frustrate the liberal provisions of Rule 20 (a) as to permissive joinders.  The rule recognizes the economy of a procedure where under several demands arising from the same occurrence may be tried together, thus avoiding the reiteration of the evidence relating to facts common to the several demands."

E.  The reason for trying some issues of law or fact in advance of the trial of the remaining issues is where, by so doing, the determination of that one issue may completely dispose of the case and end the entire litigation thus obviating the necessity for trying the other issues.

Seaboard Terminals Corp. v. Standard Oil Co. 30 F Supp.671

Conmar Products Corp. V Lamar Slide Fastener Corp.

50 F.  Supp. 1019, 1921

3 Moore's Federal Practice under the New Federal Rules

Sec. 42.04 p. 3051.

-17-

In 5 Moore's Federal Practice (2nd Ed),Sec.42.03,p.1211, it is said:

> "Nevertheless a single trial generally tends to lessen the delay, expense and inconvenience to all concerned and the courts have emphasized that separate trials should not be ordered unless such a disposition is clearly necessary."

F.   In Woburn Degreasing Co. v. Spencer Kellogg & Son 37 Fed Supp. 311,312, the court said:

> "The old practice should not be changed here except upon the clearest showing that the trial of the issue of validity will not involve the trial of the merits of the other issues or indeed, a substantial duplication of proof if the other issues have to be tried.  The convenience of the parties would not be served if separation were permitted under such circumstances. Plaintiff claims here that the trial of the issues of validity separately will require proof of the prior art.  If this is so, to any considerable degree, the motion should be denied."

In Caine vs. Blumberg et al 51 Fed. Sup. 234 the defendant filed a plea to the jurisdiction of the court based on the failure of the complaint to disclose a claim for damages for personal injury in the minimum amount necessary to give the court jurisdiction.  The defendant then asked that the issue of jurisdiction be tried in advance and separately.  It developed that "in a trial on the merits the extent of the injury will be the principal issue of fact.  It would appear therefor that as much time would be required to try those facts on the motion as would be necessary to try the case on its merits".  For the reasons assigned, the motion was denied.

-18-

827

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

In  Henry vs. Goliger et al 94 Fed Sup. 385, 386, a motion by two out of fourteen defendants for separate trials was denied.  The action was based on the claim that the fourteen defendants had received preferential payments within the four month period prior to filing a petition for bankruptcy.  The judge said:

> "I am of the opinion, considering the matter of the
> facts surrounding the causes of action, together with
> their chronological proximity, in certain instances
> chronological identity it must be concluded that the
> claims arose out of the same series of transactions.
> Further, there is a common question namely whether
> the bankrupt was insolvent at the time of the alleged
> preferences - - - Obviously, delay will be avoided
> and the conveniences of all will be served by trying
> the claims in one trial."

Applying the foregoing decisions to the pending litigation it appears to us that an account of the very interrelated nature of all water rights arising out of a common source or supply and on account of the avowed determination of plaintiff to have a comprehensive adjudication of all of these rights, it must follow that a separate trial to determine the rights of Fallbrook Public Utility District can only necessitate an inquiry in to the rights of all other defendants claiming rights prior to Fallbrook. Since Fallbrook under an appropriative right can only take the surplus remaining after the riparians and other prior right owners have had their reasonable requirements satisfied, the testimony relating to these prior rights in the river must be heard and the amount of their rights ascertained and determined before the court can say whether there is a surplus remaining over and if so, how much available to the appropriator.

-19-

69

V.

Answering Plaintiff's Memorandum of Points and Authorities:

Although the greater part of Plaintiff's memorandum of points and authorities filed by plaintiff's counsel appear to us to be irrelevent and immaterial, we will answer the same to avoid the inference that we agree with the contentions.

A.  Defendant Fallbrook Public Utility District has not nor has its counsel ever suggested or agreed to a separate trial of District's claims.

1.  Counsel for plaintiff claim that the testimony of Phil D. Swing before the Congressional  Committee at Fallbrook August 13th and 14th, 1951, justifies this court in granting its motion, ending three pages of this contention with the assertion:

"Manifest from the preceding statements by counsel for the Fallbrook Public Utility District is this fact: The motions for a separate trial are in conformity with his own recommendations to a Committee of Congress."

Nothing could be further from the truth.  Mr. Engle, the chairman of the subcommittee made it clear in his opening remarks that his committee was not trying this case or hearing the evidence as to how it should be tried. (Hearings pages 2,3 and 4).

In my testimony I attempted to discuss the public policy involved  and the adequacy or inadequacy of existing laws in connection with initiating suits of this type.  I disclaimed any intention of discussing the trial of this case. (Hearings, page 47 and 64).

However, Chairman Engle propounded a question to me which called forth the reply on which Mr. Veeder greatly relies.  The Chairman's question was:

"I am concerned about the fact that this litigation involves 14,000 defendants and I would like to ask you - - - whether or not you think the condition of our

-20-

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

water laws is in such shape that it would be necessary

for a fellow out here owning ten acres of land - -

to institute a suit of that magnitude to determine what

his right is?  Is it necessary to go through all this

business of suing 14,000 people?"

To which I replied:

"If there is anything to be gained by a technical adju-

dication of everyone's rights, probably the only way than

an encyclopedic definition of water rights on the Santa

Margarita could be made would be by doing that, but

for all practical purposes it is absolutely unnecessary.

As I said to Mr. Veeder in the last conference I had

with him 0 and I did not hear him dissent from it -

90 per cent of these defendants use less than 10 per

cent of the water of the Santa Margarita. Ten percent

is the estimated loss, anyway, in transportation in

ordinary water activities, and 10 percent are users of

90 percent of the water; the Vails, the Rancho Santa

Margarita, or the Government, and probably Fallbrook

and one or two others, and that by confining themselves

to 10 percent they could have got a practical adjud-

ication."

From the foregoing it is apparent that I was discus-

sing Mr. Veeder's course of conduct in the past not what he should

do in the future.  I certainly did not recommend separate trials

in the pending action for any defendant.  The subject of separate

trials was not before the committee and as far as I recall

"separate trials" was not even mentioned.   I said that if in the

beginning Mr. Veeder had confined himself to making defendants,

only the 10 percent who were actually using 90 percent of the

water, he could have accomplished a "practical adjudication".  The

records show that already plaintiff has made approximately 3,000

-21-

1  parties  defendants and 10% of that number as suggested to me to
2  the Congressional Committee would be around 300.' That is a far
3  different thing from the present proposal to hold separate trials
4  for two out 3000.

6      B.  Counsel for the plaintiff next advances a contention
7  beginning at the bottom of Page 3 which appears to be that since
8  the diversions of both Fallbrook and the Government are located at
9  a point on the river below the mouth of the gorge or Temecula
10  Canyon which divides the river physically into two reaches or
11  sections, the upper or Temecula Creek and the lower, the  Santa
12  Margarita River - and most of the thousands of defendants are sit-
13  uated in the upper reaches and only Fallbrook, the Government and
14  a few small users in the lower reaches, the legal evidence in-
15  volved in the trial of the respective rights of these few water
16  users in the lower reaches, could be segregated and separated from
17  the evidence material to the rights of the many thousands of land
18  owners in the upper reaches as easily as the gorge separates their
19  land holdings, geographically and physically.  That, however, as
20  we have already pointed out, is not the law.  All rights and claims
21  to a common source or supply of water are interrelated and inter-
22  connected.

24      C.  As a corrolary to this part of Mr.  Veeder's argu-
25  ment, he asked the court to assume, as a proven or admitted fact,
26  that there is no surplus water in the river which Fallbrook Public
27  Utility District would be entitled to appropriate and divert.
28  The proof he offers is a quotation from the testimony of Phil D.
29  Swing at the same hearings before the  House subcommittee to the
30  effect that "the Santa Margarita is very much over-appropriated."
31  In plaintiff's reply to the answer of Fallbrook Public Utility
32  District there is listed the Fallbrook Public Utility District's

-22-

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO I, CALIFORNIA

831

72

1   appropriations, to-wit:  Permit No. 7033 for approximately 1800
2   acre-feet per annum; No. 8511 for 10,000 acre-feet per annum and
3   Application No. 11589 for 10,000 acre-feet per annum; likewise
4   Application No. 12179 for 10,000 acre-feet per annum.  Also Plain-
5   tiff's counsel has taken notice of the application of Santa Mar-
6   garita Mutual Water  Company No. 11579 for 5000 acre-feet and
7   Application No. 12152 for 60,000 acre-feet per annum.  Also
8   plaintiff's counsel is cognizant of the Navy's own application
9   No. 12576 to appropriate 165,000 acre-feet per annum.  These
10  appropriations are referred to in the hearings of the House Com-
11  mittee which met at Fallbrook, at page 30 of said hearings.

12      From the foregoing considering pending applications
13  it is, of course, true that the river is "over-appropriated" but
14  Fallbrook Public Utility District has at least two applications
15  (the two that have ripened into  permits for 11800 acre-feet per
16  annum) which are prior in time and superior in right only to the
17  Government's application for 165,000 acre-feet, but also Santa
18  Margarita Mutual Water  Company's application for 60,000 acre-
19  feet.  While it is admittedly true that there are times in extreme
20  periods of drought when there is little or no surplus in the river
21  available for appropriation, it is equally true that in most years
22  there does exist surplus waters which are available for appropri-
23  ation.  Only last month this river was a raging  torrent threat-
24  ening lives and property and wasting great volumes of water into
25  the ocean, all of which flood water was, and is. subject to ap-
26  propriation by the party having a prior application therefor.  We
27  claim that Fallbrook Public Utility District os such a party.
28  This question of "surplus" or "no surplus" cannot be assumed or
29  taken for granted. Its existence is strongly asserted in Fallbrook's
30  answer.  It is one of the principal issues in the case on which
31  much evidence will have to be taken.  Fallbrook is confident that
32  when all the evidence is in, a surplus will have been proven and
    Fallbrook's. legal rights thereto will be recognized.

-23-                                                832

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

D.  Mr. Veeder apparently further assumes that the question of whether there is any surplus water in the river for Fallbrook Public Utility District to appropriate has been determined by the State Supreme  Court in the case of Rancho Santa Margarita v. Vail 11 Cal 2nd 501,546. Everyone knows that no parties in the present proceeding except plaintiff and the Vails are or could be affected by that action  to which they were not parties.  It is also to be noted that the language quoted by Mr. Veeder emphasizes that it is the <u>normal flow</u> of the river which is not sufficient to supply all the ruparian needs.  The appropriative rights of Fallbrook would attach to the flood and storm waters which are in excess of the so-called normal flow of the river.  Also it is to be noted that on the page cited by Mr. Veeder, the  State Supreme Court says that the trial court found that of the 38,739 acres of land of the  Rancho riparian to the Temecula-Santa Margarita River, 12,375 acres are capable of and adapted to practical and profitable irtigation.  The Supreme Court decision then adds:

> "Appellants challenge these findings only in so far as
> they include certain table lands - - - - This table
> land was found to be riparian and arable.  It is
> appellants' contention that this area, which they
> contend includes about 1200 acres - - - is not within
> the watershed of the Temecula-Santa Margarita River."

The Supreme Court held that this table land was not riparian and sent the case back for the trial court to determine the exact acreage which was to be excluded.  Mr. Veeder is without any basis for his assertion "Thus there is annually available less than one foot per acre" referring to the amount of water the Government had a right to use on its riparian land.

E.  Under this heading Mr. Veeder further assumes and asks the court to assume, contrary to fact, that Fallbrook Public

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
146 DEL DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

-24-

833

74

Utility District is exporting Santa Margarita River water out of the watershed for use on lands out of the watershed stating "as revealed by its answer, it alone is diverting water from the watershed of the Santa Margarita River".  Our reading of the answer fails to reveal any place where there is any such admission or statement:

At Paragraph II of the Second Defense, the District alleges that its lands are situated within a semi-arid region and that crops would not grow and only a few people could live there without the importation of the greater part of water "from outside sources".  Paragraph III alleges that the lands and people within the District "are dependent upon said District to import practically the entire supply of water from outside sources". "That the Santa Margarita River is one of the principal sources of supply of water for lands within the Fallbrook Public Utility District."  Paragraph IV alleges that the District is the owner of a right to appropriate and take from the Santa Margarita River for use within the District of 11,800 acre-feet of water. In Paragraph II of its Third Defense, the District alleges that it has and does import large quantities of water from the Colorado River, the San Luis Rey River and the Santa Margarita River for sale and distribution on more than 8000 acres of land within the District, of which acreage approximately 1500 acres "lie within the Santa Margarita River watershed".  In Paragraph III the defendant alleges that it returns back to the Santa Margarita River "a much greater amount of water than it has taken out or does take out of the Santa Margarita River."

It would appear from the foregoing in the absence of some evidence to the contrary that the defendant District was using Santa Margarita River water on lands within the Santa Margarita River watershed, and in addition importing large quantities of water from the Colorado River to supplement the local supply.

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
San Diego Trust & Savings Building
SAN DIEGO 1, CALIFORNIA

834

75

There is no evidence or pleading before the court or which it can take judicial notice, that the Fallbrook Public Utility District is pumping water out of the Santa Margarita River watershed or using it on lands outside of the watershed.  On the hearings before the House Committee, to which Mr. Veeder has called the court's attention, Phil D. Swing, attorney for the Fallbrook Public Utility District, at page 29, made the following statement:

"The statement has been bandied about that Fallbrook has no rights in the Santa Margarita River and that it is trying to take water out of the watershed.  We are at this minute conducting the hearing within the Santa Margarita watershed, and one of its principal tributaries runs just beyond the schoolgrounds, between here and the Santa Fe Depot.  It runs through the town of Fallbrook and on down and finally reaches the Santa Margarita.  We have assumed that being in the watershed, under generally recognized laws and equity, that we had a right to a reasonable share of the waters of the watershed for beneficial use upon the lands within the watershed."

Plaintiffs own complaint in Paragraph IV admits that the river usually has a surface stream flowing into the ocean at "its confluence with tide water."

F.   Answering plaintiff's last point, to-wit: Claim of prejudice to plaintiff caused by out of court mis-statements made by third parties:

(1)  Rule 42(b) justifying separate trials "to avoid prejudice" relates to prejudice resulting to a party in court by having several issues or causes of action tried in one trial.  The rule does not relate to prejudice to a party happening out of court.

-26-

835

74

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

1        (2)  We are certain that this Court will not be

2  prejudiced against either plaintiff or defendant by hearsay

3  irrelevent and immaterial statements made out of court by third

4  parties.

5        (3)   What plaintiff really is asking for, is an

6  early trial rather than a  separate trial.  But over a year's

7  delay is directly attributable to plaintiff's dragging out the

8  making and serving of numerous new parties defendant (now 3000)

9  this last additional list being filed January 14, 1952 with

10  summons still being served.  Plaintiff will not be permitted to

11  complaint of delays which plaintiff itself has caused.  This part

12  of plaintiff's argument is entirely out of order, the statements

13  unsubstantiated, irrelevent and immaterial.

14       For all of the foregoing reasons plaintiff's motion

15  should be denied.

16

17                  Respectfully Submitted.

18

19             SWING, SCHARNIKOW & STANIFORTH

20             BY _____

21               Attorneys for Fallbrook Public
                   Utility District.

22  *RECEIVED copy of within*

23

24  ____ day of _____, 195_

25

26  Attorneys for _____

27

28             -27-

29

30

31

32

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA