BETTY MARSHALL GRAYDON
Assistant United States Attorney
1405 Fifth Avenue
San Diego 1, California
   Telephone: F 9-4101

Attorney for Plaintiff



FILED

FEB 15 1952

EDMUND L. SMITH, Clerk
By *Emily V. Vila*
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,
)
          Plaintiff,
)
    v.
)
FALLBROOK PUBLIC UTILITY DISTRICT, a
   public service corporation of the
   State of California;
)
SANTA MARGARITA MUTUAL WATER COMPANY,
   a public service corporation of the
   State of California;
)
ET AL.,
)
          Defendants.
)

Civil No. 1247-SD

RESPONSE OF THE UNITED STATES OF AMERICA TO OPPOSITION OF FALLBROOK PUBLIC UTILITY DISTRICT TO PLAINTIFF'S MOTION FOR SEPARATE TRIAL AND ANSWERING MEMORANDUM OF POINTS AND AUTHORITIES; TO REPLY OF DEFENDANT SANTA MARGARITA MUTUAL WATER COMPANY TO PLAINTIFF'S MOTION FOR SEPARATE TRIAL ON THE MERITS

    There have been filed with this Court by the Fallbrook Public Utility District and the Santa Margarita Mutual Water Company memoranda in opposition to the motions of the UNITED STATES OF AMERICA for separate trials on the merits. For such assistance as it may be to the Court response will be made to those memoranda. There will be reviewed at the outset the present status of the case.

    On May 9, 1951, this Court, after extensive briefs had been filed, denied all motions to dismiss, to strike, and related motions, ordering the defendants to answer within twenty days. Answers were in fact filed.

    On August 15, 1951, pursuant to a stipulation with the United States, the Court entered an order permitting the State of California to intervene. United States v. Fallbrook Public Utility District, et al., 101 F. Supp. 298 (D.C.S.D. Cal. S.D., 1951).

    On October 23, 1951, a stipulation was entered into between the UNITED STATES OF AMERICA and the Vail Estate. That stipulation provided that the rights of the UNITED STATES OF AMERICA and the Vails "are those fixed, determined, and declared in that certain judgment," Exhibit A of the complaint. By that

- 1 -

841

1  stipulation the rights of the two largest claimants to water on the Santa
2  Margarita River were resolved for in that stipulation it was likewise provided:
3  "neither Plaintiff herein /̄United States of America_/ nor said VAILS claim
4  or will claim, in the within action, any rights or duties as against the other,
5  other than or different from, those fixed, determined and declared in said
6  judgment" Exhibit A of the complaint. That stipulation has been filed with this
7  Court.

8      On November 29, 1951, the UNITED STATES OF AMERICA and the STATE OF
9  CALIFORNIA stipulated in regard to the extent and nature of the rights asserted
10 in this proceeding by the United States; the meaning to be attributed to the
11 word "paramount" in the litigation. That stipulation has been filed with this
12 Court.

13     On December 4, 1951, this Court ordered the UNITED STATES OF AMERICA
14 to serve and file replies to the answers of the defendants Fallbrook Public
15 Utility District and the Santa Margarita Mutual Water Company. Compliance with
16 that order by the United States has clearly defined the issues between it and the
17 defendants named in pending motions for trial on the merits.

18     On January 7, 1952, answering /̄25_/ Interrogatories of defendant
19 Fallbrook Public Utility District, the UNITED STATES OF AMERICA delivered to the
20 defendant Fallbrook Public Utility District comprehensive data respecting the
21 nature and extent of the claims asserted in the litigation. Set forth in answer
22 to the all-inclusive interrogatories were voluminous scientific reports and other
23 information declaring in full the basis upon which the claims of the UNITED STATES
24 OF AMERICA are predicated.

25     On January 18, 1952, this Court denied the motions of the UNITED STATES
26 OF AMERICA to try separately certain issues of law. Preceding that ruling this
27 Court made the pertinent inquiry "Is there any reason separate trials could not
28 be had with reference to each of the defendants * * * named in the motion and get
29 the evidence introduced with reference to each defendant and the law argued even
30 if the court should reserve judgment on the facts until trials or judgments are
31 had as to all of the defendants?" [1]

32 _____
[1] Transcript of Proceedings on Motions of Plaintiff to try separately certain issues, December 3, 1951, page 81.

- 2 -

842

1        On January 25, 1952, motions were filed with this Court for a <u>trial</u>
2 <u>on the merits</u> against the Fallbrook Public Utility District and the Santa Margarita
3 Mutual Water Company.
4        Turning now to the pending motions:  There were two principal grounds
5 upon which the United States of America relied in respectfully requesting this
6 Court for a separate trial.  They were
7             /¯1¯/  To avoid prejudice;
8             /¯2¯/  The fact that of the many claimants of
9         rights to the use of water from the Santa Margarita River
10        the Fallbrook Public Utility District and the Santa Margarita
11        Mutual Water Company alone seek to divert large quantities
12        of water from the watershed of that already overappropriated
13        stream.
14 /¯1¯/ To avoid prejudice:
15       "Let us hear the true picture of this Hi Jacking of individual rights
16 /¯in the case of <u>United States</u> v. <u>Fallbrook Public Utility District, et al.</u>¯/." [2]
17 Speaker at the meeting called to hear of the "Hi Jacking" of individual rights
18 by this litigation was Mr. George Yackey, General Manager of the Fallbrook Public
19 Utility District.  Thus that District has waged a campaign calculated to prevent
20 the trial by this Court of the issues as they now stand.  It has waged that
21 campaign with appalling disregard of the truth as evidenced by Exhibit A of the
22 memorandum filed by the United States.  Presently before this Court is a copy
23 of the Hearings before a Special Subcommittee on Irrigation and Reclamation of
24 the Committee on Interior and Insular Affairs of the House of Representatives
25 held on August 13 and 14, 1951, at Fallbrook California.  The charge of "Hi
26 Jacking" of individual rights comports with the statements made at the hearings
27 by representatives of the Fallbrook Public Utility District.  Moreover, that
28 District, in keeping with its campaign, has sponsored legislation now pending
29 in Congress by which it seeks to have accorded to it a preferential right to
30 7,500 acre-feet of water from the Santa Margarita River.  A preferential right
31
32  [2]/  Exhibit A of Memorandum of Points and Authorities filed January 25, 1952,
        with the motions for separate trials.

843

- 3 -

1  which can have no other effect than to prejudice all other rights on the river.
2  An attack in the press has kept pace with the attack of defendant
3  Fallbrook Public Utility District against this litigation. Directly as a
4  result of the activities of the defendant District widespread concern has
5  been expressed by the individual landowners named in this proceeding. The
6  inflammatory campaign conducted by the defendant Fallbrook Public Utility
7  District has caused certain of the landowners to believe that this action could
8  "Hi Jack" them of their rights. Prejudice to the orderly conduct of this
9  proceeding has followed the irresponsible statements and conduct of the
10 representatives of defendant Fallbrook Public Utility District. Prejudice
11 has necessarily been experienced by every claimant to water from the Santa
12 Margarita River through the activities mentioned.
13 Before the Court at present are all of the factors requisite for a
14 prompt and speedy trial of the issues between the United States and the named
15 defendants. Those elements will be reviewed. To avoid further prejudice -
16 to avoid the ever-increasing concern which the defendant Fallbrook Public
17 Utility District's inflammatory attack is causing, this Court is respectfully
18 requested to adopt the only course which will stop the untrue and unwarranted
19 charges which have been spread by representatives of the defendant Fallbrook
20 Public Utility District. That course, it is respectfully submitted, is to
21  Grant the motions now pending for a separate trial
22  against the named defendants. By permitting the United
23  States to adduce the evidence upon which it relies in
24  this litigation is the only means of ending the campaign
25  the defendant Fallbrook Public Utility District has waged
26  against this litigation; and to allay the widespread
27  concern that campaign has caused among the citizens.
28 Quite aside from the unwholesome climate the representatives of
29 the Fallbrook Public Utility District have created are factors, it is
30 respectfully submitted, fully warranting the granting of the motions.
31 Those factors are reviewed in the succeeding paragraphs. In that regard
32 reference is made to:

/ 2 /   The fact that of the many claimants of rights to the use of water from the Santa Margarita River the Fallbrook Public Utility District and the Santa Margarita Mutual Water Company alone seek to divert large quantities of water from the watershed of that already overappropriated stream.

Presently before the Court is the claim of the United States of America. Admitted in the pleadings is the ownership by it of riparian acreage within the watershed; the establishment and maintenance of Camp Joseph H. Pendleton, the United States Naval Hospital, and the United States Naval Ammunition Depot. Presently before this Court is the Vail Estate, claimant to riparian rights exceeded in extent only by the United States. Likewise before the Court is the claim of the Vail Estate to rights to the use of water in connection with Nigger Canyon Reservoir, having a capacity of 50,000 acre-feet. Presently before the Court is the Stipulated Judgment settling the rights of the United States of America and the Vail Estate, the two parties whose claims to water from the stream far exceed all others. Presently before this Court is the Stipulation between the United States of America and the State of California resolving whatever issues there may have been between those two sovereigns.

Presently before this Court are the answers to the extensive interrogatories of the Fallbrook Public Utility District. Those interrogatories, answered on January 7, 1952, demanded from the United States technical and comprehensive data to enable the Fallbrook Public Utility District to prepare for trial.

Presently before this Court are the replies to the answers of the Fallbrook Public Utility District and the Santa Margarita Mutual Water Company. Those replies set forth with clarity the principal issues in this litigation - define the true status of these two defendants who assert claims to divert from the stream system quantities of water far exceeding the total yield of the stream.

Presently before this Court are the phenomena concerning which counsel for the Fallbrook Public Utility District states that this Court will take judicial notice:

     "The Court knows [counsel for Fallbrook Public Utility
District advises] that the Temecula Canyon * * * sharply
divides and separates the lower portion commonly called
the Santa Margarita River from the upper portion commonly
called the Temecula River * * *." [3/]

Presently before this Court is the fact that counsel for the Fallbrook Public Utility District has instituted the case of Bartey v. Oviatt involving the upper reaches of the river. Not joined in that litigation are the Fallbrook Public Utility District or other defendants in the lower reaches of the stream. Undoubtedly counsel considers the physical division referred to in this paragraph warranted the institution of that action without joining the defendants here named who assert rights to divert in the lower reaches of the stream.

    Presently before this Court is the fact that the demands of the claimants within the watershed of the Santa Margarita River far exceed the yield of that stream.

    Premised upon those elements consideration will be directed to the principles of law which govern under the circumstances. Consideration will first be given to the authorities cited by the Fallbrook Public Utility District. From those authorities this salient principle is evident:

     Extremely broad discretion resides in the Court as to the
     procedure which it adopts in the trial of cases of the
     character here involved.

    From the case chiefly relied upon by the defendant District these statements are taken:

     "Some of the cross-defendants answered, but others
     did not appear." [4/]

That factor did not deter the court from proceeding with the trial of the case. On the subject it stated:

---

3/ Points and Authorities on Motions for a More Definite Statement, etc. - Fallbrook Public Utility District, page 3.

4/ Allen v. California Water & Tel. Co., 29 Cal.2d 466, 484, 176 Pac.2d 8 (1946).

> "The individual water rights declared by the judgment run only in favor of the plaintiffs and appearing cross-defendants * * *. The overlying owners who were not parties to the action at the time of entry of the judgment are not bound by it, nor does it specifically run in their favor, although it may be inferentially favorable to them in its protection of the supply as a whole. But the priority of their rights is not here litigated.
>
> "* * * But here the salt water intrusion issue was raised, and under the general finding of a net safe yield of the basin of less than the present and prospective need for overlying lands, together with evidence that despite the present water supply there is danger of permanent injury through mineralization and salt water intrusion, plaintiffs and the appearing cross-defendants were entitled to relief which (1) would protect them to the extent of their individually declared rights (Meridian, Ltd. v. San Francisco, supra, 13 Cal.2d 424), and (2) would also protect them, pending a physical solution of the water problem, against any exportation of water which would unduly increase their cost of use or lower the underground water level below the danger point." 5/

In this case, as in the case from which the preceding excerpt is taken, the question of salt intrusion in the basin owned by the United States is a factor of primary concern. As there, the threatened exportation of water by the defendants here named presents a problem of transcendent importance. More important, however, the court there proceeded to render justice even though all of the parties were not before it.

Equally surprising is the fact that the defendant Fallbrook Public Utility District relies upon another recent case decided by California's highest court. That case, like the one just cited, supports the position here taken

---

5/ Allen v. California Water & Tel. Co., 29 Cal.2d 466, 485-486, 176 P.2d 8 (1946).

1  by the United States. From that decision this statement is taken:

2    "The objection is also made that the court erred in
3    allocating water without the joinder of a number of private
4    users who pumped comparatively small amounts."

5  The court dismissed that objection with this statement:

6    "The line must be drawn somewhere in order to bring the
7    proceeding within practical bounds, and it would have been
8    impossible to reach a solution of the problems involved
9    and to render a valid judgment if jurisdiction to make an
10   allocation depended upon the joinder of every person having
11   some actual or potential right to the water in the basin and
12   its sources of supply. The persons not made parties are, of
13   course, not bound by the judgment, nor are they injured by
14   the injunction." 6/

15    By reason of this Court's requests for replies to defendants' answers;
16 the comprehensive answers to interrogatories presented by the Fallbrook Public
17 Utility District in contemplation of a trial on the merits; by reason of the
18 numerous admissions by the representatives of the Fallbrook Public Utility
19 District, it is respectfully submitted that the Court has before it all of the
20 factors required to proceed to trial. For, as stated by counsel for the Fallbrook
21 Public Utility District:

22    "* * * by confining themselves to 10 percent they /The
23    United States of America_7 could have got a practical
24    adjudication of everything that they ever could enforce." 7/

25 Counsel for Fallbrook Public Utility District then named the parties he would have
26 before the Court:

27    They are /1_7 the Vails, /2_7 the United States,
28    /3_7 Fallbrook and one or two others.

---

6/  City of Pasadena v. City of Alhambra, 33 Cal.2d 908, 919, 920, 207 P.2d 17 (1949).

7/  Hearings of Special Subcommittee on Irrigation and Reclamation of the Committee on Interior and Insular Affairs of the House of Representatives held on August 13 and 14, 1951, page 55.

- 8 -

848

The precise parties named by the counsel for the Fallbrook Public Utility District are now before the Court. Thus his conditions have been met. Counsel now states the United States has named parties in excess of those he would have selected. That is true. They are small users. They are for the most part claimants to varying quantities of water premised on riparian rights. They exercise rights on a correlative basis with the United States. There is no reason to believe that by agreements and stipulations the vast majority of those rights exercised entirely within the watershed will not be amicably settled. Steps toward accomplishing that end are now well advanced. By permitting the United States to settle amicably those rights, time and costs will be saved to the small users. Respecting the defendants named in the pending motions, a wholly different situation exists. They, as distinguished from the small users, would divert large quantities of water from the watershed. The United States denies there is water available for exportations of that character. By allowing the United States to prove its rights and the rights of the Vail Estate, and by taking the evidence respecting the claims of the defendants, it will be possible, without costs to the small users, to determine the principal issues respecting the available supply of water. When that element has been resolved, whatever controversy may remain can be determined at a minimum of inconvenience and cost to all other claimants. It is re-emphasized -- the Supreme Court of the State of California, as revealed by the cases cited by defendant Fallbrook, proceeded to trial without requiring all of the small users before it.

  Counsel for the Fallbrook District now requests this Court to adjudicate the case inter se. He does so although he has previously taken a strong stand about filing cross-complaints. His action now is solely for delay. It is respectfully submitted that the defendant Fallbrook should not now be permitted to benefit by the action which was taken in the hope that through political pressure this case would not be tried. Rather, the issues should be tried as they presently are framed by the complaint, answers and replies.

  At this point consideration will be given to the numerous cases cited by the defendant Santa Margarita Mutual Water Company.

From the cases cited by defendant Santa Margarita Mutual Water Company these conclusions necessarily follow: (1) The cases either support the position taken by the United States that diversions out of the watershed should not be permitted where, as here, the supply is declared to be wholly insufficient to meet the demands of riparian owners within the watershed, or (2) they are irrelevant to the proposition. In the succeeding paragraphs each of the authorities cited will be reviewed. The comments will appear in the order in which the citations are set forth in the defendant's memorandum.

Reply of Defendant Santa Margarita Mutual Water Company to Plaintiff's Motion for Separate Trial on the Merits, Paragraph A, page 4:

The comment made by defendant relates solely to riparian claimants. The authorities cited evidence that fact. From the first authority this statement is taken: "At the outset it should be mentioned that on this appeal the questions presented for review all pertain to the rights of the parties as riparians." It is likewise stated that: "If one riparian has no present need for water the others may use it all." Rancho Santa Margarita v. Vail, 11 Cal. 2d. 501, 508, 555 (1938). Similarly, from the other authority relied upon: "Proper overlying use, however, is paramount, and the right of an appropriator, being limited to the amount of the surplus, must yield to that of the overlying owner in the event of a shortage, City of Pasadena v. City of Alhambra, 33 Cal.2d. 908, 926, (1949).

Paragraph B, page 5:

It is asserted that a riparian owner does not own the water in the stream but rather a usufructuary right, the right being to a reasonable use and "If one riparian owner has no present need for water, the other may use it all." There is agreement with that principle. However, the reference in question relates to other riparians. Manifestly, it does not relate to the appropriator who would seek to divert from the watershed which yields a quantity of water far insufficient to meet the needs of riparian claimants. Rancho Santa Margarita v. Vail, 11 Cal.2d. 501.

The second authority cited, like the others, sustains the proposition

1 that the United States should now litigate against claimants who would encroach
2 upon its rights and to quiet its title against those adverse claimants. In the
3 cited authority the Supreme Court of California held that a riparian owner was
4 guilty of laches if he permitted the construction of extensive improvements
5 at great cost, having full knowledge of the claim of the appropriator. The
6 United States here seeks to avoid by this litigation a claim of right of the
7 character successfully asserted by the irrigation district against a riparian
8 owner by reason of his failure to make timely objection to an appropriation.
9 Collier v. Merced Irrigation District, 213 Cal. 554 (1931).

10      Respecting the third authority, it is submitted that it has no
11 pertinence to the matter now before the Court. There a riparian claimant brought
12 an action to quiet title to his rights. The court pointed out that the rights
13 of the riparian proprietors on the same stream are mutual and reciprocal, each
14 being entitled to a reasonable share of the available supply. It in no way
15 pertains to the claim of a defendant who would divert water out of the watershed
16 of a stream which has a historical supply far short of the riparian claims.
17 Parker v. Swett, 188 Cal. 474 (1922).

18 Paragraph C, page 5:

19      The authority cited has no bearing in the present cause. The court's
20 own terms evidence the inapplicability of the cited authority: "In a case such
21 as this, where the parties litigant own all of the land bordering on the
22 stream, * * *." Manifestly, the defendant here is not a riparian on the stream.
23 Prather v. Hoberg, 24 Cal. 2d. 549, 557. (1944).

24 Paragraph D, page 5:

25      It is reiterated that the cited authority has no bearing on the
26 proposition before the Court. It is admitted by all that the rights of a riparian
27 are correlative with all others on the stream. That situation manifestly cannot
28 prevail in regard to an appropriator who asserts a right to divert the entire
29 stream from the watershed. Prather v. Hoberg, 24 Cal.2d 549 (1944).

30 Paragraphs E and F, page 5:

31      The defendant has again cited a case involving claims by riparians.
32 It in no way relates to an appropriator of the character of the defendant.

1  Admittedly, a riparian proprietor's title to the water as such begins only when
2  it reaches his land. However, his right to the use of the water, the right to
3  insist that the water reach his land is the subject matter of this litigation,
4  and defendant would encroach upon that right to the use of the water, or the
5  usufructuary right in the Santa Margarita River which the United States purchased
6  and for which it paid millions of dollars. Drake v. Tucker, 43 Cal. App. 53 (1919).
7         The Court's attention is respectfully called to the other case cited
8  in the paragraphs in question. That case enunciated with clarity the rights of
9  the riparian owner and the paramount character of those rights over an
10 appropriator. Hargrave v. Cook, 108 Cal. 72, 76 (1895).
11 Paragraph G, page 5:
12         Consistently the defendant cites cases involving claims between
13 riparians. Particular reference is made to the first case cited by the defendant
14 in this paragraph. He omitted from his statement a very important term, "riparian
15 owners." What the court in that case actually stated was this: "Water may never
16 be thus gathered in a reservoir for future use when it may best suit the con-
17 venience and use of one riparian owner, and thus deprive other riparian owners
18 of their use and service of the stream in its natural condition, unless such
19 right is exercised by a valid prior appropriation." In the present litigation
20 the United States is asserting that the rights which it purchased and paid for
21 may not be encroached upon by the defendant through the construction of a dam
22 or diversion works having as their object the diversion of water out of the
23 watershed. Moore v. California Oregon Power Company, 22 Cal.2d. 725, 734 (1943).
24         For reasons difficult to perceive, defendant cites a case involving
25 a claim against an appropriator who sought to maintain a dam above the lands of a
26 riparian. The United States has instituted this suit for the specific purpose
27 of defeating the claimed right of the defendant to construct such a dam and to
28 divert huge quantities of water from the watershed. The case, therefore, supports
29 the position of the United States in the matter. Grigsby v. Davey, 207 Cal. 181,
30 183 (1929).
31         Again the defendant has cited a case involving the construction of a dam
32 by an upstream claimant and the encroachment upon a downstream riparian right.

1  That right was exercised for the prescriptive period. The court declared:
2  "The defendant thus possessing prescriptive rights in the stream, they are
3  conclusively presumed to be injurious to the riparian right of plaintiff."
4  Manifestly, therefore, the construction, as defendant proposes, of a dam above
5  the lands of the United States which would have the capacity to take far in
6  excess of all of the water that the watershed will yield, must conclusively be
7  presumed to be injurious to the United States - a claim against which the
8  United States is properly proceeding in this action. Seneca Consolidated Gold
9  Mines Co. v. Great Western Power Company, 209 Cal. 206, 219 (1930).
10      The next case cited is authority for the proposition that a riparian
11 owner may likewise appropriate water. No one can deny that principle, but its
12 applicability here is difficult to perceive. Worthy of note is this statement
13 from the case: "An appropriator can gain nothing as against riparian rights which
14 have attached, and, once such rights have become affixed, they continue and are
15 not lost, regardless of whether the water has been put to any beneficial use
16 upon the land; the right is one continually and perpetually appurtenant."
17 Rindge v. Crags Land Company, 56 Cal. App. 247, 252, 205 Pac. 36 (1922).
18 Paragraph H, page 5:
19      It is next asserted that the use of waters of a stream by a riparian
20 owner upon non-riparian land is a non-riparian use. It is likewise declared that
21 the principle applies to non-riparian lands in the same watershed. The cases
22 cited have been previously referred to in paragraph G above. It is respectfully
23 submitted that the pertinency of the assertion is difficult to perceive. It is
24 reiterated - all that the United States here seeks to do is to prevent the
25 establishment of rights by an appropriator who would divert water from the
26 watershed of a stream whose meager supply does not suffice to meet the claims
27 of riparian users.
28 Paragraph I, page 6:
29      Next the defendant raises the question of what constitutes a surplus in
30 a stream. In the light of the known shortage of water in Southern California
31 it is extremely difficult to perceive how it can be asserted that a surplus
32 exists. It is respectfully submitted, however, that a factor of great importance

is settled by the case which defendant cites. That pertains to the burden of proof under the circumstances. On the subject California's highest court declared: "* * * when one enters a field of water supply and seeks by appropriation /⎺as does the defendant here_/ to take water from such supply on the claim that there is more than sufficient for all reasonable beneficial uses by those who have the prior and preferential right, it would seem to comport with the principles of fairness and justice that the appropriator, in whatever way the issue may arise, should have the burden of proving that such excess exists." (Underscoring supplied.) Peabody v. Vallejo, 2 Cal.2d. 351, 381 (1935). By that decision the court reaffirmed an earlier decision in which it was declared: "If the accustomed flow is more than necessary to supply the underground stratum, the burden of proof is upon the appropriator seeking to appropriate the surplus to show that there is a surplus."

Paragraph J (1) and (2), page 6:

It is surprising that consideration is given by defendant to the cases cited in this paragraph. In the case initially cited the court reviews at length the effect of permits issued pursuant to the Water Commission Act upon the rights of riparians. It states: "* * * we must give effect to our own decisions pronouncing that a mere appropriator, until he obtains title by prescription, is, as against the right of a riparian owner, a trespasser." Irrigation District v. Mt. Shasta Power Corporation, 202 Cal. 56, 70 (1927). Obviously, therefore, the construction of a dam and diversion works as proposed by the defendant would constitute a trespass upon the riparian rights of the United States.

In the case next cited the plaintiff sought to quiet title to rights to the use of water and for injunctive relief. The court stated, however, "The plaintiff waived his right to restrain the diversion and appropriation * * * by failing to object thereto for a period of over four years after he had knowledge of their expenditure of several millions of dollars in the construction of a dam * * *." The United States seeks to avoid the effect of the cited principle and to prevent the construction of a dam to divert water from the system, already acutely short of water. Martin v. Western States G. & E. Co., 8 Cal. App.2d. 226, 229 (1935).

1      In the final case cited by defendant is found a most comprehensive
2 review of the right of the riparian owner. Manifestly the case is squarely in
3 point against the position which the defendant has taken. Herminghaus v.
4 Southern California Edison, 200 Cal. 81. As this Court undoubtedly recognizes,
5 it was that decision which gave rise to the adoption of the Constitutional
6 Amendment by the State of California respecting reasonable use of water by
7 riparians, Article XIV, Section 3.
8      Of great import in the trial of this case are the principles of the
9 Herminghaus decision and the effect of the Constitutional Amendment to which
10 reference has been made.
11 Paragraph K, page 6:
12      Next it is stated that the riparian right is correlative, entitling the
13 owner to a pro rata share of the entire river based upon the ratio which his
14 irrigable riparian lands bears to all other irrigable riparian lands. It is
15 stated that other factors may enter into the decision but that irrigable acreage
16 is the main factor. Certainly there is no conflict with that proposition as long
17 as it is recognized (1) that the correlative right does not extend to an
18 appropriator, particularly one which would divert water from the watershed in
19 excess of the yield of the stream, and (2) that irrigation is in no sense the
20 sole use to which riparian water may be applied, another factor of great import
21 in this litigation. Harris v. Harrison (incorrectly cited in defendant's brief)
22 93 Cal. 676 (1892). Wiggins v. Muscupiabe L. & W. Co., 113 Cal. 182 (1896).
23 So. Cal. Investment Co. v. Wilshire (incorrectly cited) 114 Cal. 168.   Half Moon
24 Bay Co. v. Cowell, 173 Cal. 543 (1916).
25 Paragraph L, page 6:
26      It is asserted that an appropriation confers title immediately to the
27 appropriator against the National and State Governments. That is admittedly true.
28 Equally true is that an appropriation must of necessity be subject to all
29 existing riparian rights and from the cases cited by defendant it is manifest that
30 an appropriator may not encroach upon the rights of riparians.
31      Important is this statement from the case principally relied upon by
32 defendant in this paragraph: "When a stream runs over porous material saturated

1  with water, and the underground waters support the stream, either by upward
2  or lateral pressure, or feed it directly, persons having rights in the stream
3  will be protected against a depletion thereof by adverse diversions of such
4  underground waters, if they are injured thereby."  San Bernardino v. Riverside,
5  186 Cal. 7, 14 (1921).
6  Paragraph M, page 6:
7         Again the pertinency of defendant's statements is questioned. It is
8  urged that prior to the sale or disposition of lands bordering on non-navigable
9  stream the title resided in the United States, not in its respective governmental
10 capacity as sovereign but as a riparian owner, as a landed proprietor.  "These
11 rights were and still are strictly proprietary and in their nature private."
12 There are two complete responses to this statement.
13        1.  The United States of America being a sovereign of delegated powers,
14 can function only in a governmental capacity. It may not function, and is not
15 empowered to function, in a proprietary capacity.
16        2.  The rights to the use of water which are here asserted are rights
17 to the use of water which the United States purchased and for which it made
18 payment and the comments in connection with the public lands of the United States
19 to which the Desert Land Act and related acts had application, are in no sense
20 pertinent here.  Federal Land Bank v. Bismarck Co., 314 U. S. 95; Winters v.
21 United States, 207 U. S. 564.
22 Paragraph N, page 7:
23        Again it is asserted, and the relevancy of it is denied in this case,
24 that the United States with respect to the lands which it owns is a proprietor
25 having no greater and no less rights than any other riparian proprietor.  That
26 matter, it is respectfully submitted, has been completely resolved by the
27 stipulation between the United States of America and the State of California,
28 which is presently before the Court.  In the document in question the statement is
29 made - as against the defendant the United States asserts no greater rights than
30 those which it purchased from the Rancho Santa Margarita.  Palmer v. Railroad
31 Commission, 167 Cal. 163 (1914). Miller & Lux, Inc. v. Light & Power Corp. 120
32 Cal. App. 589 (1932).  Lux v. Haggin 69 Cal. 255 (1886).  Antioch v. Williams
   Irrigation Co., 188 Cal. 451.

856

Paragraph O, page 7:

Due to an apparent misconception of defendant in regard to the nature of the rights which the United States is here exercising, the full comment which is made by defendant in this paragraph will be set forth: "In the case of the United States, it has, as a riparian owner consenting to the taking of water by appropriators and conveyed upon the various states in which the streams are located, the power and authority to declare and decree the method in which said appropriation shall be made." California Oregon Power Co. v. Beaver Portland Cement Co., 295 U. S. 142 (1935). Antioch v. Williams Irrigation Co., 188 Cal. 451. Apparently the defendant is referring to the Acts of Congress of 1866 (43 U.S.C. 661), of 1870 (43 U.S.C. 661), and of 1877 (43 U.S.C. 321). Those Acts relate solely to lands comprising the public domain. They do not and could not relate to lands of the character here involved, which have been acquired and over which the United States holds exclusive jurisdiction for military purposes. Winters v. United States, 143 Fed. 740, affirmed 207 U.S. 564 (1908).

Paragraph P, page 7:

Next it is asserted that the fact that the lands are used for a military reservation does not confer upon the United States greater rights. It is likewise asserted that the United States has no greater right by reason of its sovereignty or cession of jurisdiction. That is agreed and the matter is fully covered by the stipulation between the United States of America and the State of California, which is presently before the Court. It is repeated: The United States does not claim in this case any greater rights by reason of its sovereignty or by reason of exclusive jurisdiction over the property. Krall v. United States, 79 Fed. 241 (C.A. 9, 1897).

Paragraph Q, page 7:

Next it is alleged that under the laws of the State of California, no riparian rights attach to the various lands until they are patented by the United States. McKinley Bros. v. McCauley, 215 Cal. 229 (1932). Rindge v. Crags Land Co., 56 Cal. App. 247 (1922). Canal & Irr. Co. v. Worswick, 187 Cal. 674 (1922). Again the relevancy is questioned as there is no controversy over the proposition.

Paragraph R, page 7:

Defendant asserts that the Vail judgment cannot affect the rights of persons not parties to the action, or confer additional rights on parties to the action as against landowners who are not parties to it. Rindge v. Crags Land Co., 56 Cal. 247 (1922). It is not asserted that anyone not a party, or his privy, could be bound by the judgment in question. This fact is stated and emphasized, however: Under the Stipulated Judgment the Vail Estate has guaranteed to deliver to the United States a specified quantity of water. That water would not be in the stream were it not for the Stipulated Judgment. That water is not available for appropriation under State law by reason of its nature, it being delivered to the United States pursuant to what has been termed a contract. Though the Stipulated Judgment binds no one not a party to it, it is the position of the United States that water which would not be in the stream other than by reason of the Stipulated Judgment may not be taken by anyone but the United States.

Paragraph S, page 8:

It is next asserted that before the United States can invoke the power of a court of equity to restrain the diversion of water from its lands, it is necessary to prove certain elements. Carlsbad Etc. Co. v. San Luis Rey Etc. Co., 78 Cal. App.2d. 900 (1947). As the United States is not seeking to have an injunction issue at this time and certainly not against this defendant who presently has no facilities to accomplish the diversion, the relevancy of the proposition, like others presented, is extremely doubtful. Moreover, the defendant erroneously states that in the trial of an action involving the rights of a riparian owner or an appropriator from a stream certain specified elements must be proved. From the cited cases it is evident that the authorities relied upon relate solely to riparian owners and not to appropriators. Rancho Santa Margarita v. Vail, 11 Cal.2d, 501 (1938). Prather v. Hoberg, 24 Cal.2d 549 (1944).

There is no question that the court must ascertain whether there is a surplus over and above the needs of the riparian owners. As emphasized by an authority relied upon by defendant, there resides with the "new appropriator the burden of proving the existence of a surplus from which it can extract the quantity it desires from either the surface or subterranean flow without injury to the

uses and requirements of those who have prior rights." When the United States has adduced its evidence in chief the burden then shifts to the Santa Margarita Mutual Water Company and to the Fallbrook Public Utility District to prove that the large quantities of water which they seek to divert from the watershed will not encroach upon the vested riparian rights of the United States and other claimants whose rights are prior and paramount to those of the defendants. Tulare District v. Lindsay-Strathmore District, 3 Cal.2d. 489, 535 (1935).

Continuing to refer to the rights of riparians, the defendant cites a case which holds in effect in regard to riparian owners: "Each owner has the right to use the whole or any part of the water on his own riparian land at any time when such use does not interfere with the actual use by the other owners of their due shares. If any such owner is not using the water himself, he has no right to object to the use of it by another riparian owner on riparian land." Half Moon Bay Land Co. v. Cowell, 173 Cal. 543, 549 (1916).

It is respectfully submitted that the statement made and the authorities cited have no bearing upon this litigation where the United States seeks to have its title quieted against appropriators who would divert from the watershed huge quantities of water from a stream which cannot yield sufficient quantities to satisfy the claims of the riparian owners. Prather v. Hoberg, 24 Cal.2d. 549 (1944). Seneca Consolidated Gold Mines Co. v. Great Western Power Company, 209 Cal. 206 (1930).

From the authorities cited by the United States it is evident that there is invested in this Court broad discretion under Rule 42 (b) of the Federal Rules of Civil Procedure. In its original memorandum the United States emphasized the discretionary aspect. Neither of the defendants who replied to that memorandum has advanced any authorities refuting the principle that it is a matter discretionary with the Court, premised upon the facts presented with each case. To the contrary, the cases which they have cited evidence that a court may act to the ends that justice will be attained. The principal cases cited by the Fallbrook Public Utility District and from which extensive quotations have been taken emphasize with great clarity that broad discretion in the courts.

1  Accordingly, the UNITED STATES OF AMERICA respectfully prays this
2  Court to grant its pending motions and to permit an early trial of the issues
3  between the UNITED STATES OF AMERICA and the defendants Fallbrook Public Utility
4  District and Santa Margarita Mutual Water Company.

*William H. Veeder*
WILLIAM H. VEEDER
Special Assistant to the
Attorney General

Dated: Feb. 15-1952

*Betty Marshall Graydon*
BETTY MARSHALL GRAYDON
Assistant United States Attorney

RECEIVED copy of within
Response this
15 day of Feb., 1952
*Phil D. Swing*
Attorneys for Deft.