(SPACE BELOW FOR FILING STAMP ONLY)

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
604 SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA
FRANKLIN 9-1131



MAR 24 1952

Attorneys for......Defendant FALLBROOK PUBLIC
UTILITY DISTRICT

EDMUND L. SMITH, Clerk
By Emily V. Vila
            DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff<br><br>Vs.<br><br>FALLBROOK PUBLIC UTILITY DISTRICT,<br>a public service corporation of<br>the State of California, et al.,<br><br>              Defendants | No. 1247-SD<br><br>AMENDED AND SUPPLEMENTAL<br>INTERROGATORIES PROPOUNDED<br>BY FALLBROOK PUBLIC UTILITY<br>DISTRICT TO BE ANSWERED<br>BY PLAINTIFF. |

      The defendant FALLBROOK PUBLIC UTILITY DISTRICT hereby requests answer under oath in accordance with Rule 33 of Federal Rules of Civil Procedure of the following amendatory and supplemental interrogatories:

      1. In Paragraph I of the Reply of the Plaintiff to the Answer of Defendant FALLBROOK PUBLIC UTILITY DISTRICT it is re-asserted "that the suit was instituted at the request of the Secretary of the Navy" and a copy of a letter purported to have been written by the Secretary of the Navy to the United States Attorney General is attached to said Reply as constituting such request. In said letter the Secretary of the Navy says to the Attorney General: "Upon the receipt of your letter of June 21st, 1950 and the data submitted therewith further consideration was given by the Department to the various problems which have arisen in connection with the proposed construction of a dam on

-1-

909

the Santa Margarita River"; and the Secretary of the Navy concludes said letter by asking the Department of Justice: "to take such action as you may consider appropriate under the circumstances to protect the rights of the United States of America in and to the waters of the Temecula-Santa Margarita River and its tributaries". The Secretary of the Navy in said letter declared, among other things, that in making said request he took into consideration "the views expressed in the letter of the Assistant Attorney General dated June 21st, 1950".

Accordingly, defendant FALLBROOK PUBLIC UTILITY DISTRICT requests a copy of the said letter of the Assistant Attorney General dated June 21st, 1950, referred to in the letter of the Secretary of the Navy which is a part of Plaintiff's said Reply.

2. Supplementing original Interrogatory No. 2:

(a) State the quantity of water used at the establishments listed in Table One (1) for the additional months for which records are available since November 1951.

(b) State how much of the water used as shown in each item of Table One (1) was taken from the Santa Margarita River system i.e. its tributaries and/or basin.

(c) State how much of the water taken from the Santa Margarita River system has annually been used outside the Santa Margarita watershed.

(d) If Plaintiff has any records of uses of Santa Margarita water on the Rancho Santa Margarita prior to its acquisition by Plaintiff, please state the quantities used year by year, the nature of the use and the place of the use.

3. Supplementing original Interrogatory No. 4:

State the annual flow of the Santa Margarita River at any point or points upstream from Plaintiff's property within

-2-

910

the Gorge or Temecula Canyon where established measuring points are or may have been maintained and give the source of the information.

4. Supplementing original Interrogatory No. 5:

(a) State the quantity of surface flow of the Santa Margarita River at its confluence with tide water month by month since November 30th, 1951, so far as any records are available, giving the source of the information.

(b) State whether Plaintiff has knowledge of any estimates having been made of the subsurface flow of the Santa Margarita River on Plaintiff's property and if so, state who made the estimates, the amount of estimated subsurface flow and its rapidity, for each given point or location on the river within Plaintiff's property.

(c) If Plaintiff has any information as to whether the subsurface flow of the Santa Margarita River on Plaintiff's property is to be found at more than one depth or level, give the different depths or levels at which said subsurface flow may be found and the thickness of the water bearing strata in which it is to be found. If said subsurface flow is to be found at any point in an aquifer, state the location and the depth below surface grounds of the aquifer and how far it extends to the Pacific Ocean.

5. Supplementing original Interrogatory No. 6:

(a) Referring to the boundaries outlined on Map Exhibit "E" to the Memorandum filed May 1, 1951, state on what data or on what exploratory work or field investigations, the boundary lines of the one large basin and of the three subbasins was determined and located as delineated on said Map Exhibit "E" and by whom was the determination and location made.

(b) State, according to Plaintiff's best information

-3-

911

and belief, what is the nature or character and porosity of the substance or material which separates the subbasins one from the other and to what extent are they separated by barrier and what is the extent or width of the openings or connections between basins.

      6. Supplementing original Interrogatory No. 7:

      (a) State, separately, the ground water storage capacity of each of the three subbasins on Plaintiff's property.

      (b) State whether or not a geo-physical exploration of the underground water basin and subbasins on Plaintiff's property has been made either by the electrical impulse method or otherwise and if so, state by whom the exploration was made and indicate on a map the location of cross-sections actually made, if any were made, the width and boundaries of each of said basins as indicated by said exploration, the depth to bedrock on each of said cross-sections.

      (c) State what method or study was used and what assumptions were made by Plaintiff in determining and estimating "the maximum quantity of water which could be pumped from the basin under ideal conditions", as stated by Plaintiff in its "supplement to Answers" served and filed by it March 13th, 1952, and particularly state what percentage of the aggregate quantity of pervious material found by it to make up each of the three separate subbasins was taken or assumed by it to represent the recoverable water from each of said underground sub-basins.

      (d) State the quantities of water extracted or pumped annually from each separate sub-basin since Plaintiff has owned and occupied the Rancho Santa Margarita.

      (e) In Plaintiff's answer to original Interrogatory No. 7, it is stated "The average annual safe yield of the basin is estimated to be approximately 7,000 acre-feet". State the

-4-

912

assumptions and the bases, methods and calculations by which the said average annual safe yield of the basin on Plaintiff's property was determined and arrived at.

7. Supplementing original Interrogatory No. 3:

Of the total number of acres stated in Plaintiff's answer to this interrogatory to be riparian to the Santa Margarita River and its tributaries, state number of acres which are arable and cultivatable, showing the same on a map and giving their soil classification and the crops to which Plaintiff claims they are best suited. State what plans, if any, Plaintiff has to plant to crops any of said riparian lands and what plans, if any, Plaintiff has to irrigate the same, stating or indicating on a map the portions which Plaintiff so plans and intends to irrigate and indicate the method or means by which Plaintiff proposes to irrigate the same and the estimated quantity of water which will be so required for the irrigation of said lands.

8. Supplementing original Interrogatories Nos. 8, 9 and 10:

(a) Table Five (5) showing draw-down of water at wells when pumped and static water levels when not pumped, reveals no readings or measurements since July 18, 1951. State whether or not any readings or measurements have been made of draw-downs or static water levels in any wells on Plaintiff's property within the Santa Margarita watershed since July 18, 1951 and if so, state such readings and measurements for each and every well and date that such readings and measurements were made.

(b) State whether or not any chemical analysis has been made at any time of water taken from any of the wells on Plaintiff's property within the Santa Margarita River watershed and if so, state who made such analyses, the date the samples

were taken and what the chemical analysis of each sample showed as to mineral content.

   9. Supplementing original Interrogatory No. 13:

   (a) State the separate quantities of water annually taken from the Santa Margarita River system (i.e. tributaries and/or basin) and uses each by Camp Pendleton, United States Naval Hospital and United States Naval Ammunition Depot, respectively, supplying also the amounts of water used during the months for each of said establishments subsequent to November, 1951, if any such records are available.

   (b) State whether the water used in irrigating the 122 acres embraced within the golf course was included among the figures set forth in Sheet 1 of Table Seven (7) under the heading "Military uses of Water" or whether it was included in the figures set out in Sheet 2 of Table Seven (7) under the heading "Agricultural use of Water".

   (c) State the quantity of water used for agriculture purposes subsequent to November 1951, if any such records are available.

   (d) Segregate and state (or estimate) the amount of water taken annually from the Santa Margarita River system since Plaintiff acquired the property in question and used by it outside the Santa Margarita River watershed for agricultural purposes, for Camp Pendleton, for United States Naval Hospital, for golf course and for any other uses or purposes, listing the quantities separately for each use or purpose, if possible.

   10. Supplementing original Interrogatory No. 15:
   Since Plaintiff's answer to this interrogatory states that no meter records are available to determine the quantities of water used on nonriparian lands, please give best estimate of

-6-

914

quantities of Santa Margarita River used annually since Plaintiff acquired Rancho Santa Margarita, on nonriparian lands, or if unable to do that, state total number of acres of nonriparian lands irrigated annually and total number of housing units supplied with water from the Santa Margarita River outside its watershed and number of individuals each year living or stationed outside the watershdd, as its boundaries are delineated in on Map No. Two and No. Two A, which were supplied with Santa Margarita River water.

11. Supplementing original Interrogatory No. 16:

Plaintiff's answer to this Interrogatory refers to Maps Nos. Two and Two A for the information requested. Map Two A shows thereon a Camp Del Mar located outside the Santa Margarita River watershed and Map Two shows that that Camp was and is supplied with water through distribution pipe lines connected with reservoirs which apparently obtain their water from within the Santa Margarita River watershed. State the best estimate of the quantity of Santa Margarita River water annually supplied to Camp Del Mar since it was first established, or if unable to give such estimate, state the number of persons who have lived at Camp Del Mar, each year, since it was established and the number of housing units and buildings thereon which are outside the Santa Margarita River watershed and which are supplied with water obtained from within said watershed.

12. Supplementing original Interrogatory No. 17:

Plaintiff's answer to this interrogatory refers only to Table Ten (10) for the information requested as to the quantity of effluent exported and discharged out of the Santa Margarita River watershed, however, Table Ten (10) wholly fails to show how much effluent from any of the Plaintiff's plants or for how long

a period of time the effluent from any of Plaintiff's sewage plants was exported or discharged out of the Santa Margarita River watershed. Since Plaintiff's Map No. Two shows both Sewage Disposed Plant No. 1 and Sewage Disposed Plant No. 2 located out of the Santa Margarita River watershed and within the watershed of Pilgrim Creek, a tributary of the San Luis Rey River, is it not a fact that all of the sewage effluent discharges shown on Table No. Ten (10) for "Camp Pendleton No. 1" and for "Camp Pendleton No. 2" were in fact discharged outside the Santa Margarita River watershed, to-wit: into said Pilgrim Creek? If that is not the fact, state on what date or dates the discharge of effluent from said Plant No. 1 and Plant No. 2 into said Pilgrim Creek was stopped.

13. Supplementing original Interrogatories No. 18 and No. 19:

(a) Where Santa Margarita River water is, or has been delivered by Plaintiff to its tenants or lessees for irrigation purposes, state for each tenant or lessee the rate or charge made for water so delivered and the total amount in dollars and cents paid Plaintiff by each tenant or lessee each year for said water. If, in any case, the tenant or lessee does not pay or has not paid a separate amount or charge for water as distinguished from the rent paid for the land, then give the total amount, in dollars and cents, paid by each tenant or lessee each year to Plaintiff for occupancy and farming rights.

(b) Attach a copy of a sample lease used by Plaintiff in leasing Rancho Santa Margarita lands to tenants. If the form of lease now in use is different from the form of lease heretofore used, attach a copy of each form or type of lease used by Plaintiff since it acquired Rancho Santa Margarita.

-8-

916

14. Supplementing original Interrogatory No. 7:

In its original answer to this interrogatory Plaintiff said: "All water in the basin above the net safe yield is required to prevent salt intrusion". In its Supplemental Answer to this interrogatory served and filed March 13, 1952, Plaintiff said it was "allowing the volume of water in the lower component part of the basin (Ysidora) to serve as a fresh water barrier to prevent salt water intrusion." State what studies, surveys or investigations have been made and by whom, if any have been made, to determine the best method of preventing salt water intrusion, whether by the fresh water barrier method or otherwise. If any such study, survey or investigation has been made, state what methods were considered and studied, what surveys and investigations were made and what conclusions were reached and what recommendations were made. Attach or make available for inspection by this Defendant any report or reports made or considered in connection with the problem of salt water intrusion.

15. State whether any studies, investigations, compilations or computations have been made of the records of annual rainfall and run-off within the Santa Margarita River watershed from which calculations or estimates have been made of the total annual water resources or water crop of the Santa Margarita River and each or any of its tributaries. If so, state by whom such studies, investigations, compilations or computations were made and state the conclusions or estimates as to what the total annual water resources or water crop of the Santa Margarita River was for each year for which such calculations or estimates have been made; state also that of each of its several tributaries for which any such calculations or estimates have been made.

16. State whether studies, investigations, compilations

or computations have been made to ascertain, determine or estimate the total acreage within the watershed and if so, state by whom made and state what that total acreage is.

17. State whether studies, investigations, compilations or computations have been made to ascertain, determine or estimate the total number of arable acres of land within the Santa Margarita River watershed. If so, state by whom made and state what the number of arable acres is.

18. State whether studies, investigations, compilations or computations have been made to ascertain, determine or estimate the number of individual land holdings within the watershed of the Santa Margarita River and if so, state by whom made and state what that number is. If ownership maps have been made of all or any portions of said watershed, furnish this Defendant with copies of such ownership maps. If no ownership map has been made, state the number of individual holdings of the various individual land owners to be found within the watersheds of each principal tributary or valley.

18. State whether or not studies, surveys or investigations have been made to ascertain or determine the soil classifications of the lands within the Santa Margarita River watershed and if so state by whom made and state the various classifications and the number of acres in each class and the location of said various classifications of land within said watershed. If any such classifications has been made, indicate upon a map of the watershed the location of the various soil classifications, in colors so as to indicate the different classifications of soil and their approximate location and extent. If possible, superimpose the soil classification on an ownership map so as to

indicate the various classifications of soil owned by each individual land owner.

20. State whether or not studies, surveys or investigations have been made to ascertain or determine the number of acres within the Santa Margarita River watershed planted to orchards, vineyards and other crops, and if so, by whom made and state the various types and kinds of orchards, vineyards or other crops planted or growing upon the lands within the Santa Margarita River watershed and the acreage planted to each type. If possible indicate upon a map the location of the various orchards, vineyards and other crops using colors to indicate the various types or kinds of agricultural products grown or growing within the Santa Margarita River watershed. If possible superimpose the results of any crop survey upon a map showing the individual land holdings so that it will be apparent what crops are growing and have been grown upon the land of each land owner.

21. State whether or not studies, surveys or investigations have been made to ascertain, determine or estimate the number of wells or other diversion works within the watershed and if so, by whom made and state the number, location and capacity of each well or diversion works. Indicate upon a map the location of the various wells and diversion works within the Santa Margarita River watershed using an ownership map, if possible, for the location of said wells and diversion works so as to show the location of said wells with reference to the individual holdings.

22. State whether or not studies, surveys or investigations have been made to ascertain, determine or estimate the number of irrigation or distribution systems within the Santa

-11-

919

Margarita River watershed and if so, by whom made and state the number of acres each of said irrigation or distribution systems supply with Santa Margarita River water, including both public and private systems. Indicate upon a map the approximate location of the various distribution systems using an ownership map, if possible, so that the systems will be located with reference to the individual land holdings.

23. State whether or not any study, survey or investigation has been made to ascertain, determine or estimate the historic use of the Santa Margarita River water on the lands within the watershed or any of them, and if so, state by whom made and state the quantities of water so used year by year, as so estimated, in the aggregate above Plaintiff's property and for individual land owners so far as the same may have been ascertained determined or estimated.

24. If Plaintiff has made, or has caused to be made, engineering reports of any individual land owners' holdings within the watershed showing lands individually owned, soil classifications of the same, the geology thereof, the water resources appurtenant thereto, the crops growing or theretofore grown thereon, the suitability of the soil for other crops, the existing diversions and distribution or irrigation systems, the present reasonable requirements of said land and its owners and the estimated future reasonable requirements of said lands and owners, state by whom made and furnish this Defendant with copies of such engineering reports for each and every land owner or parcel of land for which such reports have been made.

25. State whether or not aerial photographs of the lands within the Santa Margarita River watershed or portions

thereof have been made showing any or all of the facts, data or information called for in the preceding question. If so, state by whom made and the date and place the photograph was taken, and furnish this Defendant with copies thereof so far as the same may be available.

26. State whether or not a comprehensive Santa Margarita River watershed map has been made showing thereon the entire drainage area of that river and its several tributaries and if so, state by whom it was made and on what data or information it was based and furnish this defendant with a copy thereof.

27. If any of the information called for in the foregoing interrogatories is contained in reports or compilations or memoranda too extensive to be copied into the answers, it is requested that such reports, compilations and memoranda be exhibited to this defendant for its inspection and making copies thereof.

The foregoing interrogatories are propounded to elicit facts, information and data in the possession of Plaintiff, its officers, agents and employees, needed to enable this Defendant to prepare for trial and to secure facts, information and evidence which will be needed by this Defendant at the trial. Justice requires that said interrogatories be fully and fairly answered by Plaintiff, its officers, agents and employees to the extent that such facts, information and evidence may be within the knowledge of plaintiff or any of its officers, agents or employees.

Dated March 22, 1952.

SWING, SCHARNIKOW & STANIFORTH
BY /s/ Phil D. Swing
Attorneys for Defendant
FALLBROOK PUBLIC UTILITY DISTRICT

RECEIVED copy of within Amended Supplemental Interrogatories this 24th day of March, 1952.
Betty Marshall Graydon
By B. Ogg
Attorneys for Plaintiff

-13-

921