BETTY MARSHALL GRAYDON
Assistant United States Attorney
1405 Fifth Avenue
San Diego 1, California
Telephone: F 9-4101

Attorney for Plaintiff

FILED
APR 17 1952
EDMUND L. SMITH, Clerk
By [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 1247-SD |
| Plaintiff | ) | ANSWERS TO SUPPLEMENTAL INTERROGATORIES |
| Vs. | ) | OF |
| FALLBROOK PUBLIC UTILITY DISTRICT, a public service corporation of the State of California, et al., | ) | DEFENDANT, FALLBROOK PUBLIC UTILITY DISTRICT |
| Defendants | ) | (RULE 33 - F. R. C. P.) |

Comes now WALTER J. TURNBULL, JR., Civilian in Charge, Office of Ground Water Resources, Marine Barracks, Camp Joseph H. Pendleton, Oceanside, California, on behalf of the UNITED STATES OF AMERICA, and responds in conformity with Rule Four - E (4-e) of the Rules of Civil Procedure for the United States District Court for the Southern District of California, to the Supplemental Interrogatories of Defendant, Fallbrook Public Utility District Numbers Two (2) through Twenty-seven (27), inclusive, excepting Number Thirteen (13) thereof, as follows:

2. Supplementing original Interrogatory No. Two (2):

(a) State the quantity of water used at the establishments listed in Table One (1) for the additional months for which records are available since November 1951.

ANSWERING SUPPLEMENTAL INTERROGATORY NO. TWO (2) (a):

That attached is Supplemental Table Number One (1) which is a summary of available records indicating the quantities of water used, month by month subsequent to November, 1951, at each of said military

-1-

996

44

1 establishments which are located upon lands of the UNITED STATES OF AMERICA
2 to-wit: United States Naval Ammunition Depot, Fallbrook, California, United
3 States Naval Hospital, located at Camp Joseph H. Pendleton, and Camp Joseph
4 H. Pendleton all of which are located near Oceanside, California, and
5 situate in the counties of San Diego and Orange, State of California.
6     (b) State how much of the water used as shown in each item of
7 Table One (1) was taken from the Santa Margarita River system i.e. its
8 tributaries and/or basins.
9     ANSWERING SUPPLEMENTAL INTERROGATORY NO. TWO (2) (b):
10     That all of the water used as shown in each item of Table One (1)
11 was taken from the Santa Margarita River system i.e. its tributaries and/or
12 basins.
13     (c) State how much of the water taken from the Santa Margarita
14 River system has annually been used outside the Santa Margarita watershed.
15     ANSWERING SUPPLEMENTAL INTERROGATORY NO. TWO (2) (c):
16     That as stated in the answer to Interrogatory Number Fifteen (15),
17 the only basic records of pumped water are obtained from meters at the
18 individual pumps from which primary source water is commingled in reser-
19 voirs, tanks, and distribution systems as outlined on Maps Numbers Two (2)
20 and Two (a) (2a) which were submitted in answer to Interrogatory Number
21 Eleven (11). As the exact location of the watershed is a mixed question
22 of law and fact, it is not known at this time as to the precise quantities
23 used within and/or without the watershed.
24     (d) If the UNITED STATES OF AMERICA has any records of uses of
25 Santa Margarita water on the Rancho Santa Margarita prior to its acquisition
26 by the UNITED STATES OF AMERICA, please state the quantities used year by year,
27 the nature of the use and the place of the use.
28     ANSWERING SUPPLEMENTAL INTERROGATORY NO. TWO (2) (d):
29     That attached Tables Numbers Fourteen (a) (14a) and Fourteen (b)
30 (14b) define all the available information concerning the water used, the
31 nature of the use, and the place of use on the Rancho Santa Margarita prior
32 to its acquisition by the UNITED STATES OF AMERICA.
33

3. Supplementing original Interrogatory No. 4:

State the annual flow of the Santa Margarita River at any point or points upstream from UNITED STATES OF AMERICA's property within the Gorge or Temecula Canyon where established measuring points are or may have been maintained and give the source of the information.

ANSWERING SUPPLEMENTAL INTERROGATORY NO. THREE (3):

That attached Table Number Fifteen (15) defines the annual flow and indicates the source of the compilation and data of the Santa Margarita River as measured at the Fallbrook Gauging Station and the Temecula Gorge Gauging Station which are located approximately twenty (20) and thirty (30) river miles upstream, respectively, from the confluence of the Santa Margarita River with tidewater.

4. Supplementing original Interrogatory No. 5:

(a) State the quantity of surface flow of the Santa Margarita River at its confluence with tide water month by month since November 30th, 1951, so far as any records are available, giving the source of the information.

ANSWERING SUPPLEMENTAL INTERROGATORY NO. FOUR (4) (a):

That no later data is available than has heretofore been supplied to the Defendant.

(b) State whether UNITED STATES OF AMERICA has knowledge of any estimates having been made of the subsurface flow of the Santa Margarita River on the UNITED STATES OF AMERICA'S property and if so, state who made the estimates, the amount of estimated subsurface flow and its rapidity, for each given point or location on the river within the UNITED STATES OF AMERICA'S property.

ANSWERING SUPPLEMENTAL INTERROGATORY NO. FOUR (4) (b):

That the UNITED STATES OF AMERICA has no information upon which to make reply to Supplemental Interrogatory Number Four (b) (4b).

(c) If the UNITED STATES OF AMERICA has any information as to whether the subsurface flow of the Santa Margarita River on the UNITED STATES OF AMERICA'S property is to be found at more than one (1) depth or level, give the different depths or levels at which said subsurface flow may be found and the thickness of the water bearing strata in which it is to be

-3-

998

46

1  found. If said subsurface flow is to be found at any point in an
2  aquifer, state the location and the depth below surface grounds of the
3  aquifer and how far it extends to the Pacific Ocean.
4      ANSWERING SUPPLEMENTAL INTERROGATORY NO. FOUR (4) (c):
5      That the UNITED STATES OF AMERICA has no information upon which
6  to make reply to Supplemental Interrogatory Number Four (c) (4c).
7      5. Supplementing original Interrogatory No. Six (6):
8      (a) Referring to the boundaries outlined on Map Exhibit "E"
9  to the Memorandum filed May 1, 1951, state on what data or on what explor-
10 atory work or field investigations, the boundary lines of the one (1) large
11 basin and of the three (3) subbasins was determined and located as delineated
12 on said Map Exhibit "E" and by whom was the determination and location made.
13     ANSWERING SUPPLEMENTAL INTERROGATORY NO. FIVE (5) (a):
14     That the boundaries referred to were prepared by one John G. Brooks,
15 Department of Interior, Bureau of Indian Affairs, during March and April 1951.
16 The data used by Mr. Brooks in the preparation of the map came from several
17 sources including (1) personal investigation, (2) United States Geological
18 Survey topographical maps.
19     (b) State, according to the UNITED STATES OF AMERICA'S best infor-
20 mation and belief, what is the nature or character and porosity of the
21 substance or material which separates the subbasins one from the other
22 and to what extent are they separated by barrier and what is the extent or
23 width of the openings or connections between basins.
24     ANSWERING SUPPLEMENTAL INTERROGATORY NO. FIVE (5) (b):
25     That attached Table Number Sixteen (16) and Maps Numbers Seven (a)
26 (7a) and Seven (b) (7b) indicate the nature and/or character and porosity of
27 the substance or material which separates the subbasins, one from the others;
28 and to what extent they are separated by barriers and the extent or width of
29 the openings or connections between basins.
30     6. Supplementing original Interrogatory No. Seven (7):
31     (a) State, separately, the ground water storage capacity of each of
32 the three (3) subbasins on UNITED STATES OF AMERICA'S property.
33

-4-

ANSWERING SUPPLEMENTAL INTERROGATORY NO. SIX (6) (a):

That by virtue of the submission by UNITED STATES OF AMERICA of SUPPLEMENT TO ANSWERS TO INTERROGATORIES OF DEFENDANT FALLBROOK PUBLIC UTILITY DISTRICT, filed March 13, 1952, the ground water storage capacity of the two (2) upstream components (Chappo and O'Neill) was disclosed to Defendant. The storage capacity of the lower component (Ysidora) is estimated to be approximately eight thousand and six hundred (8,600) acre-feet, as indicated by attached Table Number Seventeen (17).

(b) State whether or not a geo-physical exploration of the underground water basin and subbasins, on UNITED STATES OF AMERICA'S property has been made either by the electrical impulse method or otherwise and if so, state by whom the exploration was made and indicate on a map the location of cross-sections actually made, if any were made, the width and boundaries of each of said basins as indicated by said exploration, the depth to bedrock on each of said cross-sections.

ANSWERING SUPPLEMENTAL INTERROGATORY NO. SIX (6) (b):

That there is attached Map Number Eight (8), figures one (1), two (2) and three (3), which shows cross sections obtained from certain geo-physical explorations conducted on the property of the UNITED STATES OF AMERICA, those being conducted by the electrical impulse or "resistivity method" being so marked. Those not so marked were conducted by the seismic refraction method. Depths to bedrock obtained from the above sources are indicated on said Map Number Eight (8) which also shows width and boundary of each of said component parts of the basin where the tests were conducted.

(c) State what method or study was used and what assumptions were made by UNITED STATES OF AMERICA in determining and estimating "the maximum quantity of water which could be pumped from the basin under ideal conditions", as stated by UNITED STATES OF AMERICA in its "supplement to Answers" served and filed by it March 13th, 1952, and particularly state what percentage of the aggregate quantity of pervious material found by it to make up each of the three (3) separate subbasins was taken or assumed by it to represent the recoverable water from each of said underground sub-basins.

1  ANSWERING SUPPLEMENTAL INTERROGATORY NO. SIX (6) (c):

2  That in making the calculation it was determined that a fresh water
3  barrier had to be maintained at all times. The draft on the basin was at the
4  upper end of it. At no time was the draft to be to such extent as would
5  reduce the fresh water barrier. By that operation the maximum use of the
6  riparian rights residing in the UNITED STATES OF AMERICA could be exercised.
7  In that regard see Maps Numbers Seven (a) (7a) and Seven (b) (7b).

8  (d) State the quantities of water extracted or pumped annually
9  from each separate sub-basin since UNITED STATES OF AMERICA has owned and
10  occupied the Rancho Santa Margarita.

11  ANSWERING SUPPLEMENTAL INTERROGATORY NO. SIX (6) (d):

12  That attached Table Number Eighteen (18) shows, where records are
13  available, the quantities of water extracted or pumped annually from each
14  component part of the single large underground basin underlying the lands
15  comprising the military installations here involved and acquired by the UNITED
16  STATES OF AMERICA and situate in the Santa Margarita River Watershed, subsequent
17  to the acquisition and occupation of said lands by the UNITED STATES OF AMERICA.

18  (e) In the UNITED STATES OF AMERICA'S answer to original Interrog-
19  atory Seven (7), it is stated "The average annual safe yield of the basin is
20  estimated to be approximately seven thousand (7,000) acre-feet". State the
21  assumptions and the bases, methods and calculations by which the said average
22  annual safe yield of the basin on the UNITED STATES OF AMERICA' property
23  was determined and arrived at.

24  ANSWERING SUPPLEMENTAL INTERROGATORY NO. SIX (6) (e):

25  That in estimating the annual safe yield of the basin on the property
26  of UNITED STATES OF AMERICA as submitted in answer to Interrogatory Number
27  Seven (7), the theory was developed that under conditions existing during the
28  period of pumping activities by the UNITED STATES OF AMERICA where an approximate
29  extraction of seven-thousand (7,000) acre-feet per year from the basin resulted
30  in the production of undesirable water, that amount became *per se* the safe
31  annual yield of the basin under those conditions.

32  7. Supplementing original Interrogatory No. Three (3):

33  Of the total number of acres stated in the UNITED STATES OF AMERICA'S

-6-

1001

44

1  answer to this interrogatory to be riparian to the Santa Margarita River
2  and its tributaries, state number of acres which are arable and cultivatable
3  showing the same on a map and giving their soil classification and the crops
4  to which the UNITED STATES OF AMERICA claims they are best suited. State
5  what plans, if any, the UNITED STATES OF AMERICA has to plant to crops any
6  of said riparian lands and what plans, if any, UNITED STATES OF AMERICA has
7  to irrigate the same, stating or indicating on a map the portions which the
8  UNITED STATES OF AMERICA so plans and intends to irrigate and indicate the
9  method or means by which the UNITED STATES OF AMERICA proposes to irrigate
10 the same and the estimated quantity of water which will be so required for
11 the irrigation of said lands.
12         ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER SEVEN (7):
13         That attached Table Number Nineteen (19) defines and evinces the
14 soil classifications of the lands of the UNITED STATES OF AMERICA which
15 are riparian to the Santa Margarita River. It is estimated that approximately
16 eighteen thousand (18,000) acres of land are arable and cultivatable. The
17 UNITED STATES OF AMERICA has no map giving soil classification and crops to
18 which the UNITED STATES OF AMERICA claims the lands are best suited. The
19 UNITED STATES OF AMERICA has purchased the property, is utilizing the water,
20 and has exclusive jurisdiction over the lands and water for military purposes.
21 As stated in the affidavit of General Anderson now filed with this Court,
22 military uses predominate and there are no plans for agricultural uses.
23 The lands are used for agricultural purposes on strictly a temporary basis to
24 avoid wasting water.
25         8. Supplementing original Interrogatories Nos. Eight (8), Nine (9)
26 and Ten (10):
27         (a)  Table Five (5) showing draw-down of water at wells when
28 pumped and static water levels when not pumped, reveals no readings or measure-
29 ments since July 18, 1951. State whether or not any readings or measurements
30 have been made of draw-downs or static water levels in any wells on the
31 UNITED STATES OF AMERICA'S property within the Santa Margarita watershed
32 since July 18, 1951 and if so, state such readings and measurements for each
33 and every well and date that such readings and measurements were made.

-7-

1002

5 0

1   ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER EIGHT (8) (a):
2       That the requested data is not available.
3       (b) State whether or not any chemical analysis has been made at
4   any time of water taken from any of the wells on the UNITED STATES OF AMERICA'S
5   property within the Santa Margarita River watershed and if so, state who
6   made such analyses, the date the samples were taken and what the chemical
7   analysis of each sample showed as to mineral content.
8   ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER EIGHT (8) (b):
9       That attached Table Number Twenty (20) and Twenty One (21) define
10  and evince the chemical analyses made of the water taken from certain wells
11  on the property of the UNITED STATES OF AMERICA within the Santa Margarita
12  River watershed.
13      9. Supplementing original Interrogatory No. Thirteen (13):
14      (a) State the separate quantities of water annually taken from
15  the Santa Margarita River system (i.e. tributaries and/or basin) and uses
16  each by Camp Pendleton, United States Naval Hospital and United States Naval
17  Ammunition Depot, respectively, supplying also the amounts of water used dur-
18  ing the months for each of said establishments subsequent to November, 1951,
19  if any such records are available.
20  ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER NINE (9) (a):
21      That the data has already been submitted to Defendant by answer to
22  Interrogatory Number Two (2) and Table Number One (1) attached thereto and the
23  Supplemental Answer to Supplemental Interrogatory Number Two (2) and its attached
24  Supplemental Table Number One (1).
25      (b) State whether the water used in irrigating the one hundred and
26  twenty-two (122) acres embraced within the golf course was included among the
27  figures set forth in Sheet One (1) of Table Seven (7) under the heading
28  "Military uses of Water" or whether it was included in the figures set out
29  in Sheet Two (2) of Table Seven (7) under the heading "Agricultural use of
30  Water".
31  ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER NINE (9) (b):
32      The subject matter embraced in this inquiry was included among the
33  computations set forth on Sheet One (1) of Table Number Seven (7) under the

1 caption of "Military Uses of Water".

2 (c) State the quantity of water used for agriculture purposes
3 subsequent to November 1951, if any such records are available.

4 ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER NINE (9) (c):

5 That attached Supplemental Table Number Seven (7) sets forth, where
6 records are available, the quantity of water used for agricultural purposes
7 on lands of the UNITED STATES OF AMERICA, subsequent to November 1951.

8 (d) Segregate and state (or estimate) the amount of water taken
9 annually from the Santa Margarita River system since the UNITED STATES OF
10 AMERICA acquired the property in question and used by it outside the Santa
11 Margarita River watershed for agricultural purposes, for Camp Pendleton, for
12 United States Naval Hospital, for golf course and for any other uses or
13 purposes, listing the quantities separately for each use or purpose, if
14 possible.

15 ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER (9) (d):

16 That attached Table Number Twenty-two (22) indicates, where records
17 are available, the water consumed on the area which is the subject matter of
18 Supplemental Interrogatory Number Nine (b) (9b). That the exact location of
19 the watershed is a mixed question of law and fact calling for a conclusion
20 which must be determined by the Court. For that reason it is impossible to
21 respond to this Supplemental Interrogatory.

22 10. Supplementing original Interrogatory No. 15:

23 Since the UNITED STATES OF AMERICA'S answer to this interrogatory
24 states that no meter records are available to determine the quantities of
25 water used on nonriparian lands, please give best estimate of quantities of
26 Santa Margarita River used annually since the UNITED STATES OF AMERICA
27 acquired Rancho Santa Margarita, on nonriparian lands, or if unable to do that,
28 state total number of acres of nonriparian lands irrigated annually and total
29 number of housing units supplied with water from the Santa Margarita River
30 outside its watershed and number of individuals each year living or stationed
31 outside the watershed, as its boundaries are delineated on Map No. Two (2)
32 and No. Two (a) (2a), which were supplied with Santa Margarita River water.
33

-9-

ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER TEN (10):

That for the reason expressed in the answer to Supplemental Interrogatory Number Nine (d) (9d), the matter cannot be fully determined in the absence of a ruling by the Court on a mixed question of law and fact.

11. Supplementing original Interrogatory No. Sixteen (16):

The UNITED STATES OF AMERICA'S answer to this Interrogatory refers to Maps Nos. Two (2) and Two (a) (2a) for the information requested. Map Two (a) (2a) shows thereon a Camp Del Mar located outside the Santa Margarita River watershed and Map Two (2) shows that that Camp was and is supplied with water through distribution pipe lines connected with reservoirs which apparently obtain their water from within the Santa Margarita River watershed. State the best estimate of the quantity of Santa Margarita River water annually supplied to Camp Del Mar since it was first established, or if unable to give such estimate, state the number of persons who have lived at Camp Del Mar, each year, since it was established and the number of housing units and buildings thereon which are outside the Santa Margarita River watershed and which are supplied with water obtained from within said watershed.

ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER ELEVEN (11):

That attached Table Number Twenty-three (23) is the best information available according to the best information and belief of the UNITED STATES OF AMERICA, concerning the personnel quartered and billeted at Camp Del Mar each year since the UNITED STATES OF AMERICA acquired the said property. No records are available which would define the quantities of water consumed by the said personnel quartered and billeted within and without the watershed because of the metering system indicated in the Answer to Interrogatory Number Fifteen (15). The precise location of the Santa Margarita Watershed crest which would delineate the number of housing units and buildings located at Camp Del Mar physically located outside the Santa Margarita Watershed and which are supplied with water obtained within the said watershed, is a mixed question of law and fact, to be passed upon and adjudged by the Court in the instant suit.

12. Supplementing original Interrogatory No. Seventeen (17):

The UNITED STATES OF AMERICA'S answer to this interrogatory refers

-10-

1005

53

only to Table Ten (10) for the information requested as to the quantity of effluent exported and discharged out of the Santa Margarita River watershed, however, Table Ten (10) wholly fails to show how much effluent from any of the UNITED STATES OF AMERICA'S plants or for how long a period of time the effluent from any of the UNITED STATES OF AMERICA'S sewage plants was exported or discharged out of the Santa Margarita River watershed. Since the UNITED STATES OF AMERICA'S Map No. Two (2) shows both Sewage Disposed Plant No. One (1) and Sewage Disposed Plant No. Two (2) located out of the Santa Margarita River watershed and within the watershed of Pilgrim Creek, a tributary of the San Luis Rey River, is it not a fact that all of the sewage effluent discharges shown on Table No. Ten (10) for "Camp Pendleton No. One (1) and for Camp Pendleton No. Two (2)" were in fact discharged outside the Santa Margarita River watershed, to-wit: into said Pilgrim Creek? If that is not the fact, state on what date or dates the discharge of effluent from said Plant No. One (1) and Plant No. Two (2) into said Pilgrim Creek was stopped.

ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER TWELVE (12):

That the sewage effluent from Plant No. One (1) and Plant No. Two (2) as shown on Table Number Ten (10) submitted in ANSWER TO INTERROGATORY NUMBER SEVENTEEN (17) was discharged temporarily into Pilgrim Creek from December 1943 to August 1950 and from December 1943 to November 1951, respectively. That since said later date the effluent from said Plant No. One (1) has been returned to the watershed of the Santa Margarita River and the system necessary to effect a like disposition of the effluent from said Plant No. Two (2) is substantially complete.

14. Supplementing original Interrogatory No. Seven (7):

In its original answer to this interrogatory, the UNITED STATES OF AMERICA said: "All water in the basin above the net safe yield is required to prevent salt intrusion". In its Supplemental Answer to this interrogatory served and filed March 13, 1952, the UNITED STATES OF AMERICA said it was "allowing the volume of water in the lower component part of the basin (Ysidora) to serve as a fresh water barrier to prevent salt water intrusion." State what studies, surveys or investigations have been made and by whom, if

-11-

1  any have been made, to determine the best method of preventing salt water
2  intrusion, whether by the fresh water barrier method or otherwise. If any
3  such study, survey or investigation has been made, state what methods were
4  considered and studied, what surveys and investigations were made and what
5  conclusions were reached and what recommendations were made. Attach or
6  make available for inspection by this Defendant any report or reports
7  made or considered in connection with the problem of salt water intrusion.
8          ANSWERING SUPPLEMENTAL INTERROGATORY NO. FOURTEEN (14):
9          That there has been no study made of which the UNITED STATES OF
10 AMERICA has knowledge in this litigation in regard to the subject matter of
11 the interrogatory.
12         15. State whether any studies, investigations, compilations
13 or computations have been made of the records of annual rainfall and run-
14 off within the Santa Margarita River watershed from which calculations or
15 estimates have been made of the total annual water resources or water crop
16 of the Santa Margarita River and each or any of its tributaries. If so,
17 state by whom such studies, investigations, compilations or computations
18 were made and state the conclusions or estimates as to what the total
19 annual water resources or water crop of the Santa Margarita River was for
20 each year for which such calculations or estimates have been made; state
21 also that of each of its several tributaries for which any such calculations
22 or estimates have been made.
23         ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER FIFTEEN (15):
24         That the UNITED STATES OF AMERICA has not conducted any studies or
25 investigations or promulgated any compilations or computations concerning
26 the records of annual rainfall and run-off within the Santa Margarita River
27 watershed from which calculations or estimates can be made of the total annual
28 water resources or water crop of the Santa Margarita River and each or any of
29 its tributaries. However, there will be made available to the Defendant,
30 in keeping with the provisions of SUPPLEMENTAL INTERROGATORY NUMBER TWENTY
31 SEVEN (27), certain references which have been considered, a listing of which
32 is attached hereto as Table Number Twenty-Four (24).
33         16. State whether studies, investigations, compilations or

-12-

1007

1  computations have been made to ascertain, determine or estimate the total
2  acreage within the watershed and if so, state by whom made and state what
3  that total acreage is.
4      ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER SIXTEEN (16):
5      That in accordance with the report prepared by the State of Calif-
6  ornia, Division of Water Resources November 1, 1948, there are seven hundred
7  and forty three (743) square miles in the watershed of the Santa Margarita
8  River above Ysidora Gauging Station.
9      17. State whether studies, investigations, compilations or
10 computations have been made to ascertain, determine or estimate the total
11 number of arable acres of land within the Santa Margarita River watershed.
12 If so, state by whom made and state what the number of arable acres is.
13     ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER SEVENTEEN (17):
14     That there has been no study made to determine the total number of
15 arable acres of land within the Santa Margarita River watershed.
16     18. State whether studies, investigations, compilations or
17 computations have been made to ascertain, determine or estimate the number
18 of individual land holdings within the watershed of the Santa Margarita River
19 and if so, state by whom made and state what that number is. If ownership
20 maps have been made of all or any portions of said watershed, furnish this
21 Defendant with copies of such ownership maps. If no ownership map has been
22 made, state the number of individual holdings of the various individual
23 land owners to be found within the watersheds of each principal tributary
24 or valley.
25     ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER EIGHTEEN (18):
26     That there has been no study or computation to determine the number
27 of individual land holdings within the watershed of the Santa Margarita River.
28     19. State whether or not studies, surveys or investigations have
29 been made to ascertain or determine the soil classifications of the land with-
30 in the Santa Margarita River watershed and if so state by whom made and state
31 the various classifications and the number of acres in each class and the
32 location of said various classifications of land within said watershed. If
33 any such classifications have been made, indicate upon a map of the watershed

-13-

1008

54

1  the location of the various soil classifications, in colors so as to indicate
2  the different classifications of soil and their approximate location and ex-
3  tent. If possible, superimpose the soil classification on an ownership map
4  so as to indicate the various classifications of soil owned by each individual
5  land owner.
6        ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER NINETEEN (19):
7        That there has been no soil classification of the watershed of the
8  Santa Margarita River.
9        20. State whether or not studies, surveys, or investigations
10 have been made to ascertain or determine the number of acres within the
11 Santa Margarita River watershed planted to orchards, vineyards and other crops,
12 and if so, by whom made and state the various types and kinds of orchards,
13 vineyards or other crops planted or growing upon the lands within the Santa
14 Margarita River watershed and the acreage planted to each type. If possible
15 indicate upon a map the location of the various orchards, vineyards and other
16 crops using colors to indicate the various types or kinds of agricultural
17 products grown or growing within the Santa Margarita River watershed. If
18 possible superimpose the results of any crop survey upon a map showing the
19 individual land holdings so that it will be apparent what crops are growing
20 and have been grown upon the land of each land owner.
21       ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER TWENTY (20):
22       That there has been no such investigation made of the watershed of
23 the Santa Margarita River.
24       21. State whether or not studies, surveys or investigations have
25 been made to ascertain, determine or estimate the number of wells or other
26 diversion works within the watershed and if so, by whom made and state the
27 number, location and capacity of each well or diversion works. Indicate upon
28 a map the location of the various wells and diversion works within the Santa
29 Margarita River watershed using an ownership map, if possible, for the
30 location of said wells and diversion works so as to show the location of
31 said wells with reference to individual holdings.
32       ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER TWENTY-ONE (21):
33       That there has been no investigation to ascertain the number of

1 wells or diversion works within the watershed of the Santa Margarita River.

2    22. State whether or not studies, surveys or investigations have
3 been made to ascertain, determine or estimate the number of irrigation or
4 distribution systems within the Santa Margarita River watershed and if so,
5 by whom made and state the number of acres each of said irrigation or
6 distribution systems supply with Santa Margarita River water, including both
7 public and private systems. Indicate upon a map the approximate location of
8 the various distribution systems using an ownership map, if possible, so that
9 the systems will be located with reference to the individual land holdings.

10    ANSWERING SUPPLEMENTAL INTERROGATORY NO. TWENTY-TWO (22):
11    That there has been no study made to determine the number of
12 distribution systems within the Santa Margarita River watershed.

13    23. State whether or not any study, survey or investigation has
14 been made to ascertain, determine or estimate the historic use of the Santa
15 Margarita River water on the lands within the watershed or any of them, and if
16 so, state by whom made and state the quantities of water so used year by year,
17 as so estimated, in the aggregate above the UNITED STATES OF AMERICA'S
18 property and for individual land owners so far as the same may have been
19 ascertained determined or estimated.

20    ANSWERING SUPPLEMENTAL INTERROGATORY NO. TWENTY-THREE (23):
21    That there has been no studies or determinations made of the
22 historic use of Santa Margarita River water in the watershed.

23    24. If the UNITED STATES OF AMERICA has made, or has caused to be
24 made, engineering reports of any individual land owners' holdings within the
25 watershed showing lands individually owned, soil classifications of the same,
26 the geology thereof, the water resources appurtenant thereto, the crops grow-
27 ing or theretofore grown thereon, the suitability of the soil for other crops,
28 the existing diversions and distribution or irrigation systems, the present
29 reasonable requirements of said land and its owners and the estimated future
30 reasonable requirements of said land and owners, state by whom made and furnish
31 this Defendant with copies of such engineering reports for each and every
32 land owner or parcel of land for which such reports have been made.
33

-15-

1010

58

ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER TWENTY-FOUR (24):

That investigations have been made in connection with certain users and reports prepared disclosing much of the data to which Defendant refers. That data will be made available provided that Defendant has secured written acquiescence from those landowners or their attorneys, which, of course, is requisite in view of the adverse character of each claim within the watershed as against all other claimants, particularly those contemplating exportation of the water from the watershed.

25. State whether or not aerial photographs of the lands within the Santa Margarita River watershed or portions therefor have been made showing any or all of the facts, data or information called for in the preceding question. If so, state by whom made and the date and place the photograph was taken, and furnish this Defendant with copies thereof so far as the same may be available.

ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER TWENTY-FIVE (25):

That the UNITED STATES OF AMERICA has photographed from the air lands within the Santa Margarita River Watershed and prints of such photographs, pursuant to the provisions of SUPPLEMENTAL INTERROGATORY NUMBER TWENTY-SEVEN (27) will be made available and exhibited to the Defendant for its inspection and making copies thereof.

26. State whether or not a comprehensive Santa Margarita River watershed map has been made showing thereon the entire drainage area of that river and its several tributaries and if so, state by whom it was made and on what data or information it was based and furnish this Defendant with a copy thereof.

ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER TWENTY-SIX (26):

That attached Map Number Nine (9) is a comprehensive map of the Santa Margarita River watershed which represents the entire drainage area of the said river, its several principal tributaries, and upon which is shown by whom the map was made and the data or information upon which it was based.

27. If any of the information called for in the foregoing interrogatories is contained in reports or compilations or memoranda too extensive to be copied into the answers, it is requested that such reports,

1  compilations and memoranda be exhibited to this   endent for its inspection
2  and making copies thereof.
3           ANSWERING SUPPLEMENTAL INTERROGATORY NUMBER TWENTY-SEVEN (27):
4      That this is not an interrogatory.

            *Walter J. Turnbull, Jr.*

10  Presented by:

12  *Betty Marshall Graydon*
    BETTY MARSHALL GRAYDON
13  Assistant United States Attorney

-17-

1012

```
1  UNITED STATES OF AMERICA      )
                                 )
2  SOUTHERN DISTRICT OF CALIFORNIA )  ss.
                                 )
3  SOUTHERN DIVISION             )
```

WALTER J. TURNBULL, JR., being by me first duly sworn, deposes and says:

That he is the Civilian in Charge of the Office of Ground Water Resources, the United States Marine Corps, at Camp Joseph H. Pendleton Oceanside, California;

That he has read the foregoing ANSWERS TO SUPPLEMENTAL INTERROGATORIES of Defendant Fallbrook Public Utility District and knows the contents thereof and that the same is true of his own knowledge, except as to the matters which are stated therein upon his information or belief and as to those matters that he believes it to be true.

WALTER J. TURNBULL, JR.

Subscribed and sworn to before me this 17th day of April, 1952.

Edmund L. Smith, Clerk U. S. District Court,
Southern District of California
By _____ Deputy
    J. B. Horn

Received copy of the within ANSWER TO SUPPLEMENTAL INTERROGATORIES this 17th day of April, 1952.

SWING, SCHARNIKOW & STANIFORTH

By Phil D. Swing

-18-

1010

61