1 BETTY MARSHALL GRAYDON
  Assistant United States Attorney
2 325 West "F" Street
  San Diego 1, California
3 Telephone: F 9-4101

4 Attorney for Plaintiff

**FILED**

MAY 28 1952

EDMUND L. SMITH, Clerk

By _____
                    Deputy Clerk

5                    IN THE UNITED STATES DISTRICT COURT

6                IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

7                               SOUTHERN DIVISION

8  UNITED STATES OF AMERICA,            )
9                        Plaintiff,     )
10            v.                         )        Civil No. 1247-SD
11 FALLBROOK PUBLIC UTILITY DISTRICT, a )  MEMORANDUM IN REPLY TO MOTION OF
     public service corporation of the  )  DEFENDANTS COSETTE S. GARNER and
12   State of California;               )  JACK GARNER TO DISMISS AND MAKE
   COSETTE S. GARNER and                )  MORE DEFINITE
13 JACK GARNER; et al.,                 )
14                        Defendants.   )

15

16          This is in reply to the motion of defendants Cosette S. Garner and

17 Jack Garner to dismiss "for failure of the pleadings of the Plaintiff /United

18 States of America_7 to state a claim upon which relief can be granted".  In these

19 unequivocal terms this  Court sustained the complaint:

20          "Now I point to the fact that this complaint could not

21          have been drawn in any other form, and that the complaint

22          was sustained by Judge Weinberger." 1/

23 In sustaining the complaint against similar attacks, Judge Weinberger declared:

24 "It appears that the complaint sets forth that the government is seeking to

25 have its rights declared and the title quieted to those rights, as they relate

26 to the use of water in the Santa Margarita River and its tributaries." 2/

27          Relative to the sufficiency of the complaint, reference is first

28 made to this summarization in regard to pleadings under the new rules: "A

29

30 1/  United States v. Fallbrook Public Utility District, et al., 101 F. Supp. 298,
        301 (1951).

31

32 2/  Reporter's Transcript of Proceedings, May 9, 1951, page 12, lines 13 et seq.

1071

1A-29988-1

1  motion to dismiss is limited to the allegations of the complaint, and, being
2  the equivalent of a demurrer, the court is called upon to interpret the
3  allegations of such complaint, and to accept all such allegations as being true,
4  and to determine whether such complaint presents a cause of action.  In weighing
5  the validity of a motion to dismiss a complaint for insufficiency the duty of
6  the court is not to test the final merit of the claim in order to determine which
7  party is to prevail.  But in ruling on the motion, the court must proceed in the
8  light of the present principles as to liberal interpretation of pleadings.  On a
9  motion to dismiss the plaintiff is entitled to the most favorable intendments to
10  be drawn from the facts pleaded.  As it has been expressed, the question presented
11  by a motion to dismiss a complaint is whether the complaint, construed in the
12  light most favorable to the plaintiff and with all doubts resolved in favor of
13  its sufficiency, states a claim upon which relief could be granted. * * * to
14  warrant dismissal of a complaint for insufficiency, it should appear that a claim
15  for relief does not exist, rather than that a claim has been defectively stated." [3/]
16  Thus it will be observed that the minutiae of the vast majority of objections
17  raised by the movants are not only contrary to the present rules of civil
18  procedure, but are very largely without merit.
19          Turning now to the question of the sufficiency of the complaint to
20  state a claim in a proceeding such as this to quiet title, reference will be
21  made to decisions of both the highest court of the United States and the
22  highest court of the State of California.  One of the leading authorities on
23  the subject is an early decision of the Supreme Court of the State of California.
24  That case is especially in point under the circumstances.  There the petitioner
25  alleged ownership of certain real properties; that the defendant claimed an
26  adverse interest; that such claim was without right; and that the defendant
27  had no right or title or interest whatever in the property.  The prayer was
28  that the defendant be required to set forth the nature of his claim, that it
29  be adjudged to be void and that the defendant be enjoined from asserting it. [4/]
30
31  3/  Cyc. Fed. Proc., sec. 1601, p. 267.
32  4/  Castro v. Barry, 79 Cal. 443, 446, 447, 21 Pac. 946 (1889).

In declaring the sufficiency of the complaint, the court stated: "* * * the proceeding is for the purpose of stopping the mouth of a person who has asserted or is asserting a claim to the plaintiff's property, whether such claim be founded upon evidence or utterly baseless. It is not aimed at a particular piece of evidence, but at the pretensions of an individual." Continuing, the court stated: "* * * the action may be maintained by the owner of property to determine any adverse claim whatever. For if the defendant by his answer disclaims all interest whatever, judgment may, nevertheless, be entered against him, though in such case it must be without costs. * * *

"The plaintiff, therefore, is not required to set forth the nature of the defendant's claim. * * * The pleading is very simple. And it is well settled that the allegations above mentioned are sufficient."

Again, California's highest court has declared: "An action to **quiet** title may be maintained by the owner to determine any adverse claim of the defendant, and the plaintiff in such action is not required to set forth the nature of the defendant's claim." [5]/ In a very recent case California's Supreme Court reiterated the principle in these terms: "One who alleged that he is the owner of certain described real property, that defendants claim an interest therein adversely to him, that such claim is without right, and that the defendants have no estate, title or interest whatever in said premises or any part thereof pleads all that the law requires in an action to quiet title and, in such an action, the complaint need not particularly state the facts in regard to the asserted invalidity nor attack the instrument which is claimed to be a cloud against the title of the plaintiff." [6]/

Identically the same principles have been stated by the Supreme Court of the United States. In regard to the sufficiency of a complaint in a proceeding to quiet title, as here before the Court, the highest Court of the United States has stated: "An allegation, in ordinary and concise terms, of the ultimate fact that the plaintiff is the owner in fee is sufficient, without

---

5/   Thompson, et al., v. Moore, et al., 8 Cal.2d 367, 69 P.2d 800, 803.

6/   Ephraim v. Metropolitan Trust Co., 28 Cal.2d 824, 172 P.2d 501 (1946).

1073

1  setting out matters of evidence, or what have been sometimes called probative

2  facts, which go to establish that ultimate fact; and an allegation that the

3  defendant claims an adverse estate or interest is sufficient, without further

4  defining it, to put him to a disclaimer, or to allegation and proof of the

5  estate or interest which he claims, the nature of which must be known to him,

6  and may not be known to the plaintiff." [7/]  (Underscoring supplied.)  That

7  often-cited case is authority for the proposition that where, as here, the

8  United States has alleged its fee simple title to the property it is not

9  called upon to deraign its title.  It is likewise authority for the proposition

10  that it need not plead evidentiary factors necessarily involved in defining

11  the character of the adverse claim of the defendant.  Obviously, the defendant

12  is in a better position to know the character of the claim which he has, if

13  any.

14       Pertinent in that regard is this statement made by Judge Weinberger:

15  "It appears to the court that defendants are in a position to know whether they

16  claim to be upstream riparian land owners or owners of lands overlying the

17  underground basin described in plaintiff's complaint and, if they do not know,

18  at least they know, or should know, (if they are using the waters of the Santa

19  Margarita River,) on what claim of right they base their use and they can state

20  such claim." [8/]

21       Turning to the memorandum of defendants, this incorrect statement is

22  made: "The complaint fails to state facts sufficient to show that plaintiff

23  has been or is short of sufficient water to meet its reasonable riparian

24  requirements."  In view of the express allegations throughout the complaint,

25  particularly in paragraph IX, it is difficult to perceive how the last quoted

26  statement could be seriously made.  Respecting the wholly inadequate supply

27  of water within the watershed of the Santa Margarita River to meet the riparian

28  demands from that stream, this statement by the Supreme Court of the State of

29  California is highly pertinent:

30

31  7/  Ely v. New Mexico & Arizona RR. Co., 129 U. S. 291, 293 (1889).

32  8/  Reporter's Transcript of Proceedings, May 9, 1951, page 18, lines 13-20.

"The trial court also found, and this finding is admittedly
supported by the evidence, that the normal flow of the Teme-
cula -Santa Margarita River is not sufficient to supply all the
riparian needs of all of the riparian lands of either respond-
ent or appellants, and that there is only enough water avail-
able for the irrigation of a portion of their riparian lands
and for the uses thereon which are most valuable and profitable.
This was practically stipulated to by the parties, and was one
of the basic facts upon which the action was tried." [9]

Here the United States is successor in interest to the Rancho Santa Margarita,
respondent in the last cited case.  Thus the declaration by the highest court of
California revealing the drastic shortage of water within the watershed of the
Santa Margarita River applies to the United States; the inadequacy of that supply
to meet the riparian demands; and the grave need for apportionment between the
riparian owners of the meager supply which is available.  It is respectfully
submitted that this Court will take judicial notice that in the arid region
involved, the supply of water available falls far short of the riparian demands;
that every claimant to water from the Santa Margarita River is adverse to every
other claimant from that stream.  Under the circumstances this Court is
respectfully requested to deny the motion to dismiss on the grounds in question.

Proceeding directly from the erroneous assertion last discussed to
one even more specious, the defendants refer at some length to the claims of
the United States to water from the Santa Margarita River for military purposes.
Following the review of those claims, this statement is made: "* * * the use of
water is primarily for a military camp or cantonment and therefore is not a
riparian use."  A transition of thought then follows which defies pursuit for it
is then declared: "The use of the waters of a stream to supply the inhabitants
of a municipality with water for domestic purposes is not a riparian right."  No
cases are referred to; no authorities given which in any way relate the reference
to a military use to that of municipal use.  In the absence of some authority

---

[9]   Rancho Santa Margarita v. Vail, 11 Cal.2d 501, 516, 517; 81 P.2d 533 (1938).

in support of the subject, extensive review is not required.  Suffice to state, however, that none of the cases cited remotely resembles the facts alleged in the complaint, and which, for the purpose of this motion, are admitted.  Those allegations in substance are that:

      1.  The United States has been utilizing water for military purposes from the Santa Margarita River since 1941.

      2.  It owns both banks of the Santa Margarita River for a distance of 21 miles.

      3.  It is the last riparian owner; the last user on the river.

When the cases cited are considered in the light of the undisputed facts – facts well pleaded in the complaint – the motion to dismiss can only be deemed frivolous.

It is the position of the United States that:

    "* * * a riparian owner is privileged to make a reasonable use of the waters of the stream for any necessary or proper purpose incident to the land itself, and essential to its enjoyment, which does not materially interfere with the rights of other riparian owners."[10]

Premised upon that fundamental precept of the law relating to riparian rights to the use of water, it is respectfully submitted that the United States is entitled to utilize the water for military purposes.  It is difficult to perceive a more "necessary" or "proper" use of a riparian right.  That doctrine is well stated in these terms by California's highest court: "The riparian owner, by reason of the situation of his land on the stream, has the right to make any use beneficial to himself on the riparian land which his situation enables him to make, except that, if his use involves a consumption of the water, he may not use more than his reasonable share as compared with other riparian owners, * * *."[11]  (Emphasis added.)

---

[10]  56 Am. Jur., Waters, Sec. 341.

[11]  Mentone Irrigation Co. v. Redlands Electric Light and Power Company, et al., 155 Cal. 323, 327, 100 Pac. 1082 (1909); Please refer to: Los Angeles Co. F. C. Dist. v. Abbot, 24 C.A.2d 728, 76 P.2d 188 (1938); Carlsbad Mutual Water Co. (a corporation), appellant v. San Luis Rey Development Co., 78 C.A.2d 900, 178 P.2d 844 (1947).

1076

16—29905-1      GPO D - 678513

1    It is difficult to perceive, in the light of the fundamental law of

2  the State of California respecting riparian rights, that defendants would seriously

3  urge that the United States may not exercise its riparian rights for National

4  Defense - for military purposes.  There is no basis for the contention, there is

5  no authority to support it.  Reliance by the defendants upon the cases in regard

6  to municipal uses evidences the paucity of authority to support their erroneous

7  assertion.

8    In support of the position of the United States that a military use is

9  a proper riparian use, this authoritative statement is quoted: "The common law

10  and the civil law are in this the same.  The civil law is: 'If water passes

11  between estates of different owners, each one of these can use it for the

12  irrigation of his estate or for any other object, but not the whole of it, but

13  only the part which corresponds to him, because both have equal rights, and the

14  one can consequently oppose use of it all by the other, or even a part

15  considerably more than his own.'"  $\underline{12/}$  (Emphasis added.)

16    Only by a trial of the facts is it possible to resolve the question of

17  whether the United States is making a reasonable use of its share of the water

18  as its rights relate to all other riparians on the stream.  $\underline{13/}$  For the reasons

19  expressed, this Court is respectfully requested to deny the motion of defendants

20  to dismiss.

21    In that part of the memorandum of defendants designated No. II this

22  statement is made: "There are no allegations of fact in the complaint to show

23  that any diversions which may have been made upstream by any of the defendants

24  herein were in excess of their legal riparian rights."  The defendants thus

25  request this Court by that statement to conclude that defendants have riparian

26  rights - in view of claims such as that of the Fallbrook Public Utility District

27  of appropriative rights to export huge quantities of the meager supply of water

28  from the Santa Margarita River, there is no basis for concluding that only

29  riparian claims are asserted in the stream in question.  In actions such as this

30

_____

31  12/  Wiel, Water Rights in the Western States, 3d ed., vol. 1, Sec. 750, page 819.

32  13/  Wiel, Water Rights in the Western States, 3d ed., vol. 1, Sec. 743, page 804.

1077

1  to quiet title, "The plaintiff * * * is not required to set forth the nature of

2  the defendant's claim." [14]

3     For the reasons expressed, this Court is respectfully requested to deny

4  the motion on the grounds asserted in part II of defendants' memorandum.

5     Finally, in the part of the memorandum designated No. III regarding

6  defendants' motion to dismiss, it is asserted there is no showing that they "were

7  parties to the action which resulted in the Stipulated Judgment," Exhibit A of

8  the complaint.  If that assertion is correct, the appropriate course is to answer,

9  not move to dismiss.  Of interest, of course, to the United States is (1) whether

10  the defendants or their predecessors in interest are bound by the Stipulated

11  Judgment; (2) whether defendants are claiming or utilizing water which is in

12  the stream by reason of the Stipulated Judgment.  That latter factor is important

13  for if it were not for the riparian rights of the United States upon which the

14  Stipulated Judgment is predicated, the Vail Estate, due to its large riparian

15  acreage and claims for storage, would dry up the stream for many months of

16  the year.

17     The request is again respectfully made that the motion to dismiss be

18  denied and that defendants be required to answer.

19        RESPONSE TO MOTION FOR MORE DEFINITE STATEMENT

20     "If a pleading to which a responsive pleading is permitted is so vague

21  or ambiguous that a party cannot reasonably be required to frame a responsive

22  pleading, he may move for a more definite statement before interposing his

23  responsive pleading." [15]   To date innumerable answers squarely raising the

24  issues in the case have been filed by other defendants.  Those defendants did

25  not find the complaint so vague or ambiguous that they could not reasonably

26  frame an answer.  Of interest is this fact: Counsel for defendant Tommy Rawson

27  has answered for many defendants.  Over a year ago he answered for one

28

29  14/  Castro v. Barry, 79 Cal. 443, 447, 21 Pac. 946 (1889).

30  15/  F. R. C. P., Rule 12 (e).  Of passing interest is the statement by the
       counsel for the three movants presently before the Court that this rule
31  "should be constituted liberally".  (Part III of their memorandums.)

32

16—20995-1            GPO O · 878013

1  of his clients and yet filed motions for more definite statement for other

2  defendants. [16]

3          Simply stated, the motions for more definite statement are dilatory

4  in nature.  As no assertion is made that the complaint is "vague or ambiguous";

5  as numerous answers have been filed; as this Court has repeatedly denied similar

6  motions, this Court is respectfully requested to deny the motion for a more

7  definite statement and require the defendants to answer.

8

9

10

11  _____

WILLIAM H. VEEDER,

12  Special Assistant to the Attorney General

13

14

15  _____

BETTY MARSHALL GRAYDON,

16  Dated: May 28, 1952          Assistant United States Attorney

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31  _____

32  [16]  Please refer to Reporter's Transcript of Proceedings, May 9, 1951, pages 35-36,
        page 43.

16—20905-1                         GPO O · 918913