(SPACE BELOW FOR FILING STAMP ONLY)

LAW OFFICES
W. B. DENNIS
RT. 1. BOX 58
FALLBROOK, CALIFORNIA
PHONE 587

ATTORNEY FOR Defendant Santa
Margarita Mutual Water Company

# FILED

JUN 12 1952

EDMUND L. SMITH, Clerk

By _____
Deputy Clerk

## UNITED STATES DISTRICT COURT
### for the
### SOUTHERN DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

   vs.

FALLBROOK PUBLIC UTILITY DISTRICT,
a public service corporation of
the State of California, et al.,

     Defendants.

No. SD 1247 -Civil

INTERROGATORIES
TO BE ANSWERED
BY PLAINTIFF.

   The defendant Santa Margarita Mutual Water Company, a cor-
poration, hereby requests that plaintiff answer under oath, in ac-
cordance with Rule 33 of the Federal Rules of Civil Procedure, the
following interrogatories:

   1. State the number of acres described in the original
grant named and designated "Rancho San Onofre y Santa Margarita",
made to Andrés and Pio Pico on May 10, 1841 by Governor Juan Bautista
Alvarado, and describe or indicate on the map the location of the
lands which were the subject matter of said grant and described in
said grant.  Said grant describes a portion of the property which
was confirmed to plaintiff's predecessor in interest by a decree of
the District Court on April 24, 1855, and is described in the patent
subsequently issued by the United States to plaintiff's predecessor
in interest on March 28, 1879.

   2. State the number of acres acquired by Andrés and Pio
Pico in 1884 by an assignment executed by the Indians and which pro-

1109

1   perty is generally known and designated as the " Las Flores Property",

2   and indicate on a map the location of the lands acquired by said Picos

3   in 1884 from the Indians and known as the "Indian Lands".

4   3.  State the number of acres owned by plaintiff in the water-

5   shed of Windmill Canyon and designate or indicate the watershed of

6   Windmill Canyon on a map, and

7   (a)   designate or indicate on said map the improvements or instal-

8   lations located in the watershed of said Windmill Canyon;

9   (b)   state the number of acre feet or the quantity of water used

10   monthly and annually in the watershed of said Windmill Canyon for

11   each of the years from 1941 to May 1, 1952, inclusive.

12   4.  State the number of acres owned by plaintiff in the water-

13   shed of Pilgrim Creek, and designate or indicate the watershed of

14   Pilgrim Creek on a map, and

15   (a)   designate or indicate on said map the improvements or instal-

16   lations located in the watershed of said Pilgrim Creek;

17   (b)   state the number of acre feet or the quantity of water used

18   monthly and annually in the watershed of said Pilgrim Creek for each

19   of the years from 1941 to May 1, 1952, inclusive.

20   5.  State the number of acres owned by plaintiff in the water-

21   shed of De Luz Creek, and designate or indicate the watershed of De

22   Luz Creek on a map, and

23   (a)   designate or indicate on said map the improvements or instal-

24   lations located in the watershed of said De Luz Creek;

25   (b)   state the number of acre feet or the quantity of water used

26   monthly and annually in the watershed of said De Luz Creek for each

27   of the years from 1941 to May 1, 1952, inclusive.

28   6.  State the number of acres owned by plaintiff in the water-

29   shed of Fallbrook Creek, and designate or indicate the watershed of

30   Fallbrook Creek on a map, and

31   (a)   designate or indicate on said map the improvements or instal-

32   lations located in the watershed of Fallbrook Creek;

W.B.Dennis

1110

1    (b)   state the number of acre feet or the quantity of water used

2 monthly and annually in the watershed of Fallbrook Creek for each of

3 the years from 1941 to May 1, 1952, inclusive.

4        7.  State the number of acres owned by plaintiff in the water-

5 shed of the San Luis Rey River, and designate or indicate the water-

6 shed of the San Luis Rey River on a map, and

7    (a)   designate or indicate on said map the improvements or instal-

8 lations located in the watershed of said San Luis Rey River;

9    (b)   state the number of acre feet or the quantity of water used

10 monthly and annually in the watershed of said San Luis Rey River for

11 each of the years from 1941 to May 1, 1952, inclusive.

12        8.  State the number of acres owned by plaintiff contiguous to

13 the Pacific Ocean and which slope directly towards the Pacific Ocean

14 rather than towards the Santa Margarita River, and designate the loca-

15 tion of said acreage on a map, which lands were found by the Superior

16 Court of California in and for the County of San Diego, in the case

17 entitled "Rancho Santa Margarita, a corporation, Plaintiff, vs.

18 Margaret R. Vail et al., Defendants", to be riparian to the Santa

19 Margarita River, and which finding was reversed by the Supreme Court

20 of the State of California in the case of "Rancho Santa Margarita, a

21 corporation, Plaintiff, vs. Margaret R. Vail et al., Defendants, 11

22 Cal. 2d, 501", and

23    (a)   designate on said map the installations and improvements which

24 have been erected by plaintiff or plaintiff's predecessors in interest

25 on said lands; and

26    (b)   any and all of such acres as are now being or have heretofore

27 been irrigated by plaintiff, its tenants, employees or representatives;

28    (c)   the number of acre feet or quantity of water used per month

29 and per year for the years 1941 to May 1, 1952 inclusive.

30        9.  State precisely where each and every military establish-

31 ment and military installation of the United States is located on the

32 135,000 acres of land alleged to be owned by the United States in its

W.B.Dennis

--3--

1  Complaint, which is located outside the watershed of the Santa Margar-
2  ita River and its tributaries.

3      10.   State the quantity of water used at each of the military
4  establishments or military installations since each was constructed,
5  month by month and year by year, for all establishments and installa-
6  tions located outside the watershed of the Santa Margarita River and
7  its tributaries.

8      11.   State the quantity of water put to beneficial use or
9  used by plaintiff, its tenants, agents or representatives, for irri-
10  gation purposes on any acreage located outside the watershed of the
11  Santa Margarita River and its tributaries (other than on the 1200
12  acres referred to in Paragraph 8 hereof) and designate on a map the
13  location of said lands being so irrigated.

14      12.   State the location of the basin generally known and
15  designated as the Lake O'Neill Basin, and indicate the location of
16  said basin on a map, and state:

17    (a)   The volume of water-bearing material in said basin;

18    (b)   The surface area of said basin;

19    (c)   The available storage capacity of said basin;

20    (d)   The average void or space available for storage of water in
21  said basin in terms of per cent;

22    (e)   The safe yield of said basin;

23    (f)   The amount of water which can economically be recovered from
24  said basin;

25    (g)   The location of all wells and test holes which have been
26  drilled or dug in said basin, and the logs of said wells and test
27  holes;

28    (h)   The type, make and rated capacity of each pump located in
29  each well, and the kind, type and horsepower of each motor or engine
30  installed to operate each pump, and the quantities of water which
31  have been actually produced from each well located in said basin
32  year by year for the years 1930 to May 1, 1952, inclusive;

W.B.Dennis

--4--

1112

1    (i)   The static water level and the draw-down water level for each
2  of the wells located in said basin month by month for years 1940 to
3  May 1, 1952 inclusive.

4        13.  State the location of the basin generally known and
5  designated as the Home Ranch Basin, and indicate the location of said
6  basin on a map, and state:

7    (a)   The volume of water-bearing material in said basin;

8    (b)   The surface area of said basin;

9    (c)   The available storage capacity of said basin;

10   (d)   The average void or space available for storage of water in
11 said basin in terms of per cent;

12   (e)   The safe yield of said basin;

13   (f)   The amount of water which can economically be recovered from
14 said basin;

15   (g)   The location of all wells and test holes which have been
16 drilled or dug in said basin, and the logs of said wells and test
17 holes;

18   (h)   The type, make and rated capacity of each pump located in
19 each well, and the kind, type and horsepower of each motor or engine
20 installed to operate each pump, and the quantities of water which
21 have been actually produced from each well located in said basin year
22 by year for the years 1930 to May 1, 1952, inclusive;

23   (i)   The static water level and the draw-down water level for each
24 of the wells located in said basin, month by month for the years
25 1940 to May 1, 1952 inclusive.

26       14.  State the location of the basin generally known and de-
27 signated as the Ysidora Basin, and indicate the location of said basin
28 on a map, and state:

29   (a)   The volume of water-bearing material in said basin;

30   (b)   The surface area of said basin;

31   (c)   The available storage capacity of said basin;

32   (d)   The average void or space available for storage of water in

W.B.Dennis

--5--

said basin in terms of per cent;

(e)   The safe yield of said basin;

(f)   The amount of water which can economically be recovered from said basin;

(g)   The location of all wells and test holes which have been drilled or dug in said basin, and the logs of said wells and test holes;

(h)   The type, make and rated capacity of each pump located in each well, and the kind, type and horsepower of each motor or engine installed to operate each pump, and the quantities of water which have been actually produced from each well located in said basin year by year for the years 1930 to May 1, 1952, inclusive;

(1)   The static water level and the draw-down water level for each of the wells located in said basin, month by month for the years 1940 to May 1, 1952, inclusive.

15.   State the location of the basin generally known and designated as the Temecula Alluvial Basin, and indicate the location of said basin on a map, and state:

(a)   The volume of water-bearing material in said basin;

(b)   The surface area of said basin;

(c)   The available storage capacity of said basin;

(d)   The average void or space available for storage of water in said basin in terms of per cent;

(e)   The safe yield of said basin;

(f)   The amount of water which can economically be recovered from said basin;

(g)   The location of all wells and test holes which have been drilled or dug in said basin, and the logs of said wells and test holes;

(h)   The type, make and rated capacity of each pump located in each well, and the kind, type and horsepower of each motor or engine installed to operate each pump, and the quantities of water which

W.B.Dennis

--6--

have been actually produced from each well located in said basin year by year for the years 1930 to May 1, 1952, inclusive;

(i)   The static water level and the draw-down water level for each of the wells located in said basin, month by month for the years 1940 to May 1, 1952, inclusive.

16.  State the quantities of water used by the plaintiff, its tenants, agents or representatives, for each year for the years 1941 to May 1, 1952 inclusive.

17.  State the amount of surface flow of the Santa Margarita River at the stations generally known and designated as Gaging Station No. 2, Gaging Station No. 3, Gaging Station No. 4, Gaging Station No.5 and Gaging Station No. 6, and if the sub-surface flow has been measured at any one of said gaging stations, state the quantity of flow at each of said gaging stations for the years 1927 to May 1, 1952 inclusive.

18.  State what amount of the surface flow of the Santa Margarita River has reached its confluence with tidewater, year by year for the years 1922 to May 1, 1952 inclusive.

19.  State the location of each underground basin located on plaintiff's property which supports or is supported by the surface or sub-surface flow, or both, of the Santa Margarita River, other than the Lake O'Neill Basin, the Home Ranch Basin and the Ysadora Basin.

20.  State the location of each underground basin located on the property owned by the defendants generally designated as the Vail Defendants, other than the Temecula Alluvial Basin.

21.  State the location of each underground basin which is supported by or supports the surface or sub-surface flow of the Santa Margarita River located on or underlying property owned by any defendants named in the above entitled action, other than the Vail Defendants, and indicate the locations of each of said basins, if any, upon a map, and state the depth, width and capacity of each of said basins and the materials of which each is composed, and the capacity of each of said basins and the quantity of water which can be obtained or ex-

W.B.Dennis

--7--

1115

1  tracted from each of said basins.

2      22.  State the number of acres of land owned by the defendants

3  which is riparian to the Santa Margarita River, also known as the

4  Temecula-Santa Margarita River, and the number of acres of land owned

5  by the defendants in the above entitled action which is riparian to

6  any tributary of the Temecula-Santa Margarita River, and state the

7  tributary to which said acreage is riparian, and designate on a map

8  the location of said acreage, and state the owner or owners of said

9  acreage.

10      23.  State the amount of acreage owned by plaintiff which

11  overlies:

12    (a)  the Ysidora Basin;

13    (b)  the Home Ranch Basin;

14    (c)  the Lake O'Neill Basin.

15      24.  State the amount of acreage owned by the Vail Defendants

16  which overlies the Temecula Alluvial Basin.

17      25.  State the number of acres which are susceptible of irri-

18  gation or cultivation which overlie:

19    (a)  the Ysidora Basin;

20    (b)  the Home Ranch Basin;

21    (c)  the Lake O'Neill Basin;

22    (d)  the Temecula Alluvial Basin.

23      26.  State the number of wells and test holes located upon

24  the property referred to in Plaintiff's Complaint, and the location

25  of each, the size and depth of each, and the strata of material

26  through which each well and test hole was drilled or dug, and state

27  the type, make, size and rated capacity of each pump installed in each

28  of said wells and the quantities of water which have been produced or

29  extracted from each of said wells, month by month if possible, or at

30  least year by year, for the years 1941 to May 1, 1952 inclusive, other

31  than the wells and test holes located in the Ysidora Basin, the Home

32  Ranch Basin and the Lake O'Neill Basin; and state the static water

W.B.Dennis

--8--

level and draw-down water level for each of said wells or test holes month by month, if possible, and year by year, for the years 1941 to May 1, 1952, inclusive.

27. State the number of reservoirs, artificial lakes or artificial ponds erected or maintained by plaintiff on the property described in its Complaint, and the location, size and capacity of each, and the purpose of or use made of each, and designate the location of said lakes, ponds or reservoirs on a map.

28. State the location of any and all distribution pipe lines, the size of each, and the source of water, and the purpose for which it is used, and the location of any and all water meters maintained by plaintiff or operated by plaintiff or located upon the properties referred to in Plaintiff's Complaint as being owned by plaintiff.

29. State the quantities of water being used for each of the following purposes, to-wit:

  (a)   domestic;

  (b)   agricultural;

  (c)   for the watering of livestock;

  (d)   for military purposes;

  (e)   for other purposes;

month by month if possible, and if not, year by year, for the years 1941 to May 1, 1952, inclusive.

30. State the specific acts of encroachments, the times, places, extent and character of said acts, and by which defendants committed, and whether or not said defendants acted severally or jointly or by common design to encroach upon the rights of the United States, as alleged in its complaint.

31. State and describe precisely what lands were acquired by the plaintiff in the year 1941 and in the year 1942 and in the year 1943, and show the location of each of said acquisitions on a map, and designate on said map the location of the Temecula-Santa Margarita River.

W.B.Dennis

--9--

32.  State the time and to whom various strips of land through the Santa Margarita Ranch were conveyed in fee to parties other than plaintiff or its predecessors in interest, from time to time, and locate said strips of land so conveyed to third parties, on a map, and state when said properties were reconveyed by the grantees named in said deeds, or their successors in interest, to the plaintiff or its predecessors in interest.

33.  State the number of acres owned by the Vail Defendants which is riparian to the Temecula-Santa Margarita River, exclusive of such acres as may be riparian to Sandia Creek and to De Luz Creek, and state the number of acres whth are susceptible of irrigation.

34.  State the average summer flow of:

(a)  Murrieta Creek;

(b)  Temecula Creek;

(c)  Temecula-Santa Margarita River

at Gaging Station No. 3 and at Gaging Station No. 6 for the years 1941 to May 1, 1952, inclusive.

35.  State the seasonal run-off for the Temecula-Santa Margarita River at Gaging Stations Nos. 3, 4, 5 and 6 for the years 1941 to May 1, 1952, inclusive.

36.  State the storm run-off for the Temecula-Santa Margarita River at Gaging Stations Nos. 3, 4, 5 and 6 for the years 1941 to May 1, 1952, inclusive.

37.  State the annual replenishment to each of the following basins, to-wit:  Lake O'Neill Basin, Home Ranch Basin, Ysidora Basin, for the years 1941 to May 1, 1952, inclusive.

38.  State the number of acres in the watershed of the Temecula-Santa Margarita River and state the number of acres in the water shed of said Temecula-Santa Margarita River that are not riparian to said Temecula-Santa Margarita River or any tributaries thereof, and designate the location of said acreage on a map.

39.  State the number of acres located within the watershed

W.B.Dennis

--10--

1118

of the Temecula-Santa Margarita River which is not riparian to said
river and from which the extraction or production of water will not
directly affect the surface or sub-surface flow of said Temecula-
Santa Margarita River or any underground basin supported by the sur-
face or sub-surface flow of said Temecula-Santa Margarita River, and
designate the location of said lands upon a map.

40.  State whether or not the plaintiff claims any right,
title, interest or demand in or to the waters stored by the Vail De-
fendants in the Nigger Canyon (Pauba) Reservoir, pursuant to the
permit issued by the State of California by reason of the stipulated
judgment attached to Plaintiff's Complaint as Exhibit A, or otherwise,
and if plaintiff makes any claims in and to said waters, state in
detail the nature of their said claim.

Dated: June 11, 1952.

W. B. Dennis, Attorney for the
Defendant Santa Margarita Mutual
Water Company, a corporation.

W.B.Dennis

--11--

STATE OF CALIFORNIA )
                    )ss.
COUNTY OF SAN DIEGO )

DON MARTINSON, being first duly sworn, deposes and says:
That affiant is a citizen of the United States and a resident of the
County of San Diego; that affiant is over the age of eighteen years
and is not a party to the within and above-entitled action; that
affiant's business address is: P. O. Box 698, Fallbrook, California;
that on the 11th day of June, 1952, affiant served the within
"Interrogatories to be answered by Plaintiff" on the plaintiff in
said action, by placing a true copy thereof in an envelope addressed
to the attorney of record for said plaintiff at the office address of
said attorney, as follows: "Mrs. Betty Marshall Graydon, Assistant
United States Attorney, 325 West F Street, Room 221, San Diego, Calif."
and by then sealing said envelope and depositing the same, with
postage thereon fully prepaid, in the United States Post Office at
Fallbrook, California, where is located the office of the attorney
for the defendant by and for whom said service was made.

That there is delivery service by United States mail at the
place so addressed, or there is a regular communication by mail be-
tween the place of mailing and the place so addressed.

*Don Martinson*

Subscribed and sworn to before me
this 11th day of June, 1952.
*Dorothy C. Cactrey*
Notary Public in and for the
  County of San Diego,
  State of California

1120