# ORIGINAL

IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

FALLBROOK PUBLIC UTILITY DISTRICT,
  a public service corporation of
  the State of California,
SANTA MARGARITA MUTUAL WATER COMPANY,
  a public service corporation of
  the State of California, et al.,

                Defendants,

STATE OF CALIFORNIA,

                Defendant in
                Intervention.

Civil No. 1247-SD

ORDER ON PRE-TRIAL HEARING

# FILED

AUG 25 1952

EDMUND L. SMITH, Clerk

By _____
      Deputy Clerk

CHIEF JUDGE LEON R. YANKWICH

1236

# S U B J E C T   I N D E X

| | Page |
|---|---|
| Order On Pre-Trial Hearing | |
| Pre-Trial Order | |
| Findings:  Jurisdiction; Existence of Controversy; Request for Action; Separate Trials | 2-3 |
| Agreed Facts | |
|     A.  Description of the Santa Margarita River and Its Drainage Area | 3-5 |
|     B.  Tributaries of the Santa Margarita River | 5-7 |
|     C.  Subterranean Basins Underlying Santa Margarita River | 7-8 |
|     D.  United States Geological Survey Records | 8-9 |
|     E.  Acquisition by the United States of America of Sites for Camp Joseph H. Pendleton, the United States Naval Hospital, and the United States Naval Ammunition Depot – General Statement | 9-14 |
|     F.  Santa Margarita Mutual Water Company | 14-15 |
|     G.  Fallbrook Public Utility District | 15-16 |
|     H.  State of California Stipulation with State of California | 17-18 |
| Contentions of the United States of America | 1-11 |
| Response of the United States of America To Contentions of the Fallbrook Public Utility District, Santa Margarita Mutual Water Company and the State of California | 11 |
| Contentions of Fallbrook Public Utility District | 1-14 |
| Contentions of the Santa Margarita Mutual Water Company | 1-8 |
| Contentions of the State of California | 1-2 |
| Facts Disputed By The United States of America | 1-5 |
| List of Exhibits of The United States of America | 1-5 |
| List of Exhibits of Fallbrook Public Utility District | 1 |
| List of Exhibits of Santa Margarita Mutual Water Company | 1 |
| General Stipulations | 1-2 |
| Definitions | 2-3 |
| Signatures | 3 |

\* \* \* \* \* \* \* \* \* \* \*

1237

1
2
3
4
5
6
7
8              IN THE DISTRICT COURT OF THE UNITED STATES

9             FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10                      SOUTHERN DIVISION

11   UNITED STATES OF AMERICA,            )
                                          )
12                        Plaintiff,      )
                                          )
13             v.                         )          Civil No. 1247-SD
                                          )
14   FALLBROOK PUBLIC UTILITY DISTRICT,   )         ORDER ON PRE-TRIAL HEARING
        a public service corporation of  )
15      the State of California;          )
     SANTA MARGARITA MUTUAL WATER COMPANY,)
16      a public service corporation of  )
        the State of California; et al.; )
17                                        )
                          Defendants,     )
18                                        )
     STATE OF CALIFORNIA,                 )
19                                        )
                          Defendant in    )
20                        Intervention.   )

21

22          Separate trials in the above-entitled action having been ordered March

23   31, 1952 by this Court as between the United States of America and Fallbrook

24   Public Utility District, Defendant; Santa Margarita Mutual Water Company,

25   Defendant and the State of California, Defendant in Intervention, having been

26   made a party to the separate trials on July 11, 1952; a pre-trial conference

27   having been duly held by this Court July 8, 1952 through July 11, 1952, the

28   parties being represented by their respective counsel, who after extended

29   conferences have approved as among themselves in regard to this cause the agreed

30   facts and having severally set out certain contentions of the parties and

31   disputed facts; all as evidenced by the attached document designated "Pre-Trial

32   Order" signed by the respective counsel and which is incorporated herein;

                                                        1238

                              1

1  questions of law for determination in advance of trial having been separately

2  tendered by the respective parties; this Court finds that it has jurisdiction

3  of the proceedings and that there is in existence an actual controversy between

4  the parties.

5      The Court finds that it is for the best interest of the parties hereto

6  and for the public interest that all rights to the use of water in the Santa

7  Margarita River system of all parties to this action be determined as against

8  the others and the filing of cross pleadings is dispensed with as unnecessary

9  and inconvenient.  Provided that the Order setting this cause for separate trials

10  is not affected hereby.

11      The issues in this cause are hereby defined and limited in conformity

12  with the statements contained in the Stipulation between the State of California

13  and the United States of America, dated November 29, 1951, a copy of which is embraced

14  in Paragraph H 1 of the attached Pre-Trial Order.

15      IT IS THEREFORE ORDERED that the attached Pre-Trial Order is adopted

16  by this Court; that the Court reserves the right to amend it by consent of the

17  parties or in the furtherance of justice; that upon trial of this cause no proof

18  shall be required as to matters of fact specifically agreed upon in the Pre-Trial

19  Order.

20      Dated at Los Angeles, California, this ___25th___ day of _August_,

21  19_51_.

22

23

24

25

26

27  _Leon Yankwich_

28  Chief Judge Leon R. Yankwich

29

30

31

32

1239

-2-

2

IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

    v.

FALLBROOK PUBLIC UTILITY DISTRICT,
 a public service corporation of
 the State of California;
SANTA MARGARITA MUTUAL WATER COMPANY,
 a public service corporation of
 the State of California; et al;

     Defendants,

STATE OF CALIFORNIA,

     Defendant in
     Intervention.

Civil No. 1247-SD

PRE-TRIAL ORDER

   A pre-trial conference having been held commencing on July 8, 1952, at
San Diego, California, Honorable Chief Judge Leon R. Yankwich presiding, the
UNITED STATES OF AMERICA, Plaintiff, appearing by its counsel William H. Veeder,
Esquire, Special Assistant to the Attorney General, Department of Justice, and
David W. Agnew, Esquire, Attorney, Department of the Navy; Fallbrook Public
Utility District, Defendant, appearing by its counsel Phil D. Swing, Esquire;
Santa Margarita Mutual Water Company, Defendant, appearing by its counsel
W. B. Dennis, Esquire; the State of California, Defendant in Intervention,
appearing by its counsel Arvin B. Shaw, Jr., Esquire, Assistant Attorney General
of California:

1240

1   THE COURT MAKES THE FOLLOWING ORDER ON PRE-TRIAL:

2   Jurisdiction:

3         This Court has jurisdiction of the above-entitled action by reason of the

4   express declaration by Congress that the United States District Court "* * * shall

5   have original jurisdiction of all civil actions, suits or proceedings commenced

6   by the United States, * * *." 1/

7   Existence of Controversy:

8         This Court finds that an actual controversy exists over the respective

9   claims of rights to the use of water of the Santa Margarita River System among

10   the United States of America, Plaintiff; Fallbrook Public Utility District,

11   Defendant; Santa Margarita Mutual Water Company, Defendant; and the State of

12   California, Defendant in Intervention and other defendants. 2/

13   Request for Action:

14         At the request of the Department of the Navy this action was instituted

15   by the Attorney General of the United States of America. 3/

16   Separate Trials:

17         This Court on March 31, 1952, entered an order *granting separate

18   trials against the named defendants. That order is as follows:

19         "The plaintiff having moved the Court for an order

20         directing a separate trial of the issues herein as to each

21         of the defendants Santa Margarita Mutual Water Company and

22         Fallbrook Public Utility District, and

23         "It appearing that because of the large number of

24         defendants involved in this action it will not be practicable

25         to try the issues as to all of the defendants in one trial, and

26         "It further appearing that each of the defendants above

27         named claims an appropriative right to divert large quantities

28

---

29   1/  28 U.S.C. 1345.

30   2/  Transcript of pre-trial proceedings, pages 38, 78, 81.

31   3/  Plaintiff's Exhibit No. 1 - Letter, dated November 14, 1950, from Dan A.
        Kimball, then Acting Secretary of the Navy, requesting the Attorney General

32   to take action to protect the rights of the United States of America in the
    Santa Margarita River.

  *  This order was entered over the objections of the defendants here involved.

GPO 16-29900-4

1  of water from the watershed of the Santa Margarita River,

2  and that the plaintiff contends that proof of its rights and

3  those of defendants Mary Vail Wilkinson, Mahlon Vail,

4  Edward N. Vail, Margaret Vail Wise and Nita M. Vail, trustees,

5  will show that no water of said river is surplus for appro-

6  priation by defendants Santa Margarita Mutual Water Company

7  and Fallbrook Public Utility District, and

8      "It further appearing that the issues presented with

9  reference to each of the defendants Santa Margarita Mutual

10  Water Company and Fallbrook Public Utility District may be

11  tried in separate trials without prejudice to the rights of

12  such defendants and without prejudice to the rights of any

13  other defendant, and

14      "It further appearing that a separate trial as to each

15  of said last named defendants will facilitate the disposition

16  of the issues as to many of the other defendants, and good

17  cause appearing therefor,

18      "IT IS ORDERED that a separate trial be had as to the

19  issues with reference to the defendant Santa Margarita

20  Mutual Water Company and that a separate trial be had as to

21  the issues with reference to the defendant Fallbrook Public

22  Utility District."

23      On July 11, 1952, the scope of the separate trials was broadened to

24  include the State of California, Defendant in Intervention. [4]/

25                    AGREED FACTS [5]/

26      A.  Description of the Santa Margarita River System and Its Drainage Area

27      1.  The Santa Margarita River is a non-navigable intermittent stream

28  having a drainage area of 740 square miles, 192 square miles of which are situated

29  in San Diego County, California, and 548 square miles in Riverside County,

---

31  [4]/  Transcript of pre-trial proceedings, page 305, lines 4-16.

32  [5]/  Relief map from the office of Major General Oliver P. Smith will be used
        throughout for location and general reference.  This map is entitled "Photo
        Surfaced Terrain Model 16 DP3, U.S. Marine Corps Reservation, Camp Joseph H.
        Pendleton, Oceanside, Calif." and was prepared January 1951 by U.S. Navy Special
        Devices Center, Port Washington, L.I., N. Y.

1  California. [6/]  The Santa Margarita River watershed is semi-arid. [7/]

2      2.  Temecula Creek and Murrieta Creek have their junction at the head

3  of Temecula Gorge and there form the Santa Margarita River. [8/]

4      3.  Rising on the eastern slope of the Coastal Range in San Diego

5  County, near the present site of the Palomar Observatory, Temecula Creek proceeds

6  in a northerly and westerly direction a distance of approximately fourteen miles

7  where it enters the Pauba Grant of the Vail Estate. [9/]  After entering the Pauba

8  Grant it flows northwesterly through a portion of the grant known as Nigger

9  Valley, for a distance of a little more than three miles.  It then enters a

10  narrow canyon on the Pauba Grant known as Nigger Canyon.  In a state of nature

11  Temecula Creek flowed through Nigger Canyon for a distance of approximately two

12  miles.  Situated across the channel of Temecula Creek at the upper end of Nigger

13  Canyon on the Pauba Grant, in the Northwest Quarter of the Northwest Quarter,

14  Section 10, Township 8 South, Range 1 West, is the Vail Dam, creating a reservoir

15  with a capacity of approximately 50,000 acre-feet. [10/]

16      4.  Below the Vail Dam, Temecula Creek traverses Pauba Grant for a

17  distance of approximately eleven miles.

18

---

19  [6/]  Plaintiff's Exhibit No. 2 - Map of the drainage area of the Santa Margarita
River, disclosing the Santa Margarita River, Murrieta Creek, Temecula Creek

20  and other affluents of the stream; the location of the military establishments
involved in the litigation and the location of the Vail properties.  Defendants

21  are not to be bound by any data or information superimposed on the map other
than that information which delineates the watershed; the extent of the Vail

22  holdings and the location of Camp Pendleton, Naval Ammunition Depot and the
United States Naval Hospital and the location of the Santa Margarita River,

23  Temecula River and their tributaries.

24  [7/]  Plaintiff's Exhibit No. 3 - Climatological Data, California Section, U. S.
Department of Commerce, Weather Bureau.

25

26  [8/]  Plaintiff's Exhibit No. 2

27  [9/]  Plaintiff's Exhibit No. 2

28  [10/] Plaintiff's Exhibit No. 2; Plaintiff's Exhibit No. 4 - Application of the Vail
Company to appropriate waters of Temecula Creek, Application No. 11518 and the
permit granted, and Permit No. 7032 granting the application for the construction

29  of the dam for the Vail Reservoir; Plaintiff's Exhibit No. 5 - Capacity and area
curve for Nigger Canyon (Vail) Reservoir; Plaintiff's Exhibit No. 6 - Vail Dam

30  and Reservoir data; elevation, capacity and related information; Plaintiff's
Exhibit No. 7 - Tabulation respecting the acre feet in Vail Lake from December

31  1948 to and including April, 1952.

32

5.  Leaving the Pauba Grant of the Vail Estate, Temecula Creek continues its westerly course across the Little Temecula Grant of the Vail Estate for a distance of approximately one and a half miles.  That stream then enters the Temecula Grant of the Vail Estate, flowing a distance of approximately two miles.[11]

6.  Immediately before leaving the Temecula Grant of the Vail Estate, Temecula Creek has its confluence with Murrieta Creek and below that point is known as the Santa Margarita River.

7.  The Santa Margarita River then enters Temecula Gorge, a narrow canyon through which it flows southerly and westerly for a distance of approximately nine miles.  Though Temecula Creek, prior to its junction with Murrieta Creek, flows alternately as a surface and subsurface stream, the Santa Margarita River throughout Temecula Gorge in the state of nature is a surface stream.[12]

8.  Shortly after leaving Temecula Gorge, the Santa Margarita River enters Camp Joseph H. Pendleton, the Marine Corps Training Base.  It then flows in a generally southwesterly direction through Camp Pendleton--Naval Ammunition Depot--United States Naval Hospital lands for a distance of about twenty-one miles to the Pacific Ocean.  For the full twenty-one miles the course of the river lies entirely within the property of the United States of America.[13] *

9.  The Santa Margarita River within the boundaries of the above-mentioned military establishments is an intermittent stream.

B.  Tributaries of the Santa Margarita River

There are several tributaries of the Santa Margarita River from tidewater to its head waters:

1.  DeLuz Creek, an intermittent stream which rises on the Santa Rosa Grant of the Vail Estate, proceeds in a westerly and southerly direction to its confluence with the Santa Margarita River several miles within the boundary lines of Camp Pendleton.[14]

---

11/  Plaintiff's Exhibit No. 2 - Map of drainage area of Santa Margarita River.

12/  Plaintiff's Exhibit No. 2

13/  Plaintiff's Exhibit No. 2

14/  Plaintiff's Exhibit No. 2

*  Except for such properties and lands as the Atchison, Topeka and Santa Fe Railroad Company may own.

GPO  16—60955-1

2. Fallbrook Creek, an intermittent stream, rises east and south of the Santa Margarita River. Most of its length is within the boundaries of Camp Pendleton and the United States Naval Ammunition Depot and it has its present terminus in Lake O'Neill, an artificial reservoir which lies within the Camp Pendleton area. 15/ In the state of nature, Fallbrook Creek flowed into the Santa Margarita River.

3. Sandia Creek, an intermittent stream which rises on the Santa Rosa Grant of the Vail Estate, proceeds in a southerly direction to its confluence with the Santa Margarita River at a point a short distance above the easterly boundary of Camp Pendleton. 16/

4. Rainbow Creek is an intermittent stream which rises east and south of the main channel of the Santa Margarita River and proceeds in a northerly and westerly direction to its confluence with that river a short distance above Sandia Creek. 17/

5. Murrieta Creek, an intermittent stream, has its source north of the Temecula Grant of the Vail Estate and traverses the lands of that grant before it joins Temecula Creek to form the Santa Margarita River. Junction of the streams takes place at a point about a half mile east of the westerly boundary of Temecula Grant of the Vail Estate and a short distance east of Temecula Gorge. It has several tributaries, most important of which is Cottonwood Creek, an intermittent stream which rises on the Santa Rosa Grant of the Vail Estate. Santa Gertrudis Creek, a tributary of Murrieta Creek, is an intermittent stream rising on the Pauba Grant of the Vail Estate, traversing lands in other ownership before crossing a portion of the Temecula Grant prior to its confluence with Murrieta Creek. Warm Springs Creek, an intermittent stream, rises east of Murrieta Creek and flows into that stream just below the town of Murrieta. 18/

6. Penjango Creek, an intermittent stream, is tributary to Temecula

---

15/  Plaintiff's Exhibit No. 2 - Map of drainage area of Santa Margarita River.

16/  Plaintiff's Exhibit No. 2

17/  Plaintiff's Exhibit No. 2

18/  Plaintiff's Exhibit No. 2

1245

1  Creek, rising south of that stream and joining it a short distance upstream from
2  the junction of the stream last mentioned with Murrieta Creek.  From its source
3  to confluence Penjango Creek traverses a portion of the Little Temecula Grant,
4  and then flows across the Temecula Grant of the Vail Estate, the property upon
5  which its junction with Temecula Creek takes place. [19]

6        Other affluents of Temecula Creek are Lancaster Creek and Arroyo Seco,
7  both of which are intermittent in character, flowing only during periods of high
8  precipitation and entering Temecula Creek above Nigger Canyon. [20]

9        C.  Subterranean Basins Underlying Santa Margarita River

10        From its head waters to the Pacific Ocean, the watershed of the Santa
11  Margarita River System is underlaid with numerous subterranean basins.  They differ
12  greatly in size and capacity. [21]

13        Underlying the military establishments in question within the Santa
14  Margarita River watershed are one or more underground basins or segments of basins,
15  commonly known as:

16            1.  Upper or O'Neill Basin or Segment,

17            2.  Chappo or Home Ranch Basin or Segment,

18            3.  Ysidora Basin or Segment.

19        Agreement in regard to the alluvial basins will not preclude defendants

20

21

22  [19]  Plaintiff's Exhibit No. 2 - Map of drainage area of Santa Margarita River.

23  [20]  Plaintiff's Exhibit No. 2

24  [21]  Plaintiff's Exhibit No. 8 - Map disclosing the geology of the Santa Margarita-

25  Temecula River watershed, dated January 1952, Office of Ground Water Resources,

26  Camp Pendleton, California; Plaintiff's Exhibit No. 9 - Profile of the Santa

27  Margarita River, disclosing elevation and location of principal basins beneath

28  Temecula Creek and Santa Margarita River, entitled "Geologic Cross Section A-A'

29  along the Santa Margarita-Temecula River," dated 10 July 1952, Office of Ground

30  Water Resources, Camp Pendleton, California.

31

32

-7-

1246

1   from contending that the named segments or basins are independent basins.  Neither
2   will it preclude the United States from contending that those segments or basins
3   are geologically and hydrologically connected and constitute one basin.
4           The United States does not assert that there are any other basins within
5   the watershed of the Santa Margarita River underlying Camp Joseph H. Pendleton,
6   including the United States Naval Ammunition Depot, than those to which reference
7   has been made.
8           Throughout the ground-water basin or basins within the watershed of the
9   Santa Margarita River underlying Camp Pendleton are numerous wells of varying
10  depths in the alluvium.  The surface and subsurface area and the character and
11  type of the deposits penetrated by the wells, so far as the same are known to the
12  United States of America, have been analyzed. [22/]
13  Defendants reserve the right to question the accuracy of these analyses and
14  present contradictory evidence.  This does not entail a questioning of the
15  identification of the exhibits to which reference is made.
16          D.  United States Geological Survey Records
17          The United States Geological Survey has maintained and published records
18  of the following principal gauging stations within the watershed of the Santa
19  Margarita River;

| Stream | Station | Period of record |
|---|---|---|
| Santa Margarita River | Ysidora | From February 19, 1923, to date |
| Santa Margarita River | Fallbrook | "        November 25, 1924, to date |
| Temecula Creek | Temecula (Railroad) Canyon | "        January 30, 1923, to date |
| Temecula Creek | Nigger Canyon | "        January 30, 1923, to date |
| Murrieta Creek | Temecula | "        October 1, 1930, to date |

[22/]  Plaintiff's Exhibit No. 12 - Isopach map of alluvial deposits of a portion of
       the Santa Margarita River within Camp Joseph H. Pendleton, San Diego County,
California, Office of Ground Water Resources, Camp Pendleton, dated March 20, 1952.
Plaintiff's Exhibit No. 13 - Bar graph disclosing specific yield of materials of
wells within the basin underlying Camp Joseph H. Pendleton by Office of Ground
Water Resources, Camp Pendleton, dated March 1952.

-8-

1    In addition measurements have been taken for diversions at O'Neill Ditch and at

2    other places on the Santa Margarita River system. [23]

3              E.  Acquisition by the United States of America of Sites for
                  Camp Joseph H. Pendleton, the United States Naval Hospital,
4                 and the United States Naval Ammunition Depot - General Statement

5              1.  The United States of America acquired fee simple title to 9,147.55

6    acres (the present United States Naval Ammunition Depot) of land, more or less,

7    in San Diego County, State of California, by a declaration of taking filed

8    January 21, 1942, in the United States District Court for the Southern District

9    of California. [24]    It likewise acquired fee simple title to 123,620 acres of

10   land, more or less, in San Diego County, California, by a declaration of taking

11   filed December 31, 1942, in the United States District Court for the Southern

12   District of California.  Those two tracts of land thus acquired by the United [25]

13   States of America had historically comprised part of the Rancho Santa Margarita.

14   Fee simple title was likewise acquired by the United States of America to

15   1,676.58 acres of land, more or less, in the County of San Diego, State of

16   California, by a declaration of taking filed December 22, 1943, in the United

17   States District Court for the Southern District of California.  By deed dated

18   February 8, 1949, approximately 112.11 acres of land situated in Orange County,

19   California, were conveyed to the United States of America.  In addition to the

20   above parcels of land, approximately 1574.61 acres of the Public Domain Lands

21   situated in San Diego County, California, were transferred to Camp Pendleton by

22   Public Land Order #293, dated August 8, 1945. [26]

---

23

24   [23]  Plaintiff's Exhibit No. 14 - U.S.G.S. records, Water Supply Papers for the
           Santa Margarita River System.
25
26   [24]  Plaintiff's Exhibit No. 15 - Certified copies of certain documents involved
           in the acquisition of the 9,147.55 acres of land more or less comprising the
     United States Naval Ammunition Depot.
27
28   [25]  Plaintiff's Exhibit No. 16 - Certified copies of certain documents involved
           in the acquisition of the 123,620 acres of land more or less comprising
29   Camp Joseph H. Pendleton Marine Corps Training Base and United States Naval
     Hospital.
30   [26]  Plaintiff's Exhibit No. 17 - Certified copies of certain documents involved
           in the acquisition of the 1,676.58 acres of land more or less; 112.11 acres
31   of land and 1574.61 acres of the public domain lands comprising part of Camp
     Joseph H. Pendleton.
32

1248

2. Notices of acceptance by the United States of America of the cession of exclusive jurisdiction over each of the parcels of land referred to above, except the lands in Orange County and the lands described in Public Land Order No. 293, were forwarded to the Honorable Earl Warren, Governor of the State of California. 27/ The legal effect of the notices given by the representative of the United States of America is a question to be resolved by the Court in this proceeding.

3. The approximately 135,000 acres of land are presently utilized for the following purposes; among others:

Camp Joseph H. Pendleton:

It is the function of Camp Joseph H. Pendleton to provide housing and training facilities for units of the Armed Forces, to conduct training of units of the Armed Forces in amphibious warfare and experimental work with landing craft, landing vehicles, tracked and affiliated equipment and the development thereof; to conduct combat training of the various units of the United States Marine Corps, including air-ground support coordination, and use of artillery, tanks and other equipment used in the conduct of modern amphibious and land warfare. In addition to the aforementioned activities, it is the function of Camp Pendleton to provide logistic support for units of the United States Marine Corps together with material maintenance and storage facilities, for supplies and equipment and to house and train replacements for subsequent assignment to various operating units of the United States Marine Corps.

United States Naval Hospital:

The United States Naval Hospital, with a capacity of approximately

27/ Plaintiff's Exhibit No. 18 - Letter of January 12, 1943 from James Forrestal, Acting Secretary of the Navy, to Governor Earl Warren accepting the cession of exclusive jurisdiction over the United States Naval Ammunition Depot; Plaintiff's Exhibit No. 19 - Letter of September 8, 1943 from James Forrestal, Acting Secretary of the Navy, to Governor Earl Warren accepting the cession of exclusive jurisdiction over Camp Joseph H. Pendleton and the United States Naval Hospital; Plaintiff's Exhibit No. 20 - Letter of February 18, 1944 from A. L. Gates, Acting Secretary of the Navy, to Governor Earl Warren accepting the cession of exclusive jurisdiction over 1676.58 acres of land in connection with Camp Joseph H. Pendleton.



GPO 16—99995-4

1   1,550 beds, established at Camp Joseph H. Pendleton, provides medical and hospital

2   services to personnel of the Armed Forces, their dependents and other authorized

3   personnel at 83 Naval shore activities located in the Southern California area and

4   provides medical and hospital care to personnel of units of the United States

5   Fleet.

6   United States Naval Ammunition Depot:

7            The United States Naval Ammunition Depot, Fallbrook, California,

8   provides facilities for the storage, segregation, reconditioning and issuing of

9   ammunition for operating units of the United States Fleet and the United States

10  Marine Corps and maintains ammunition stocks for shore establishments of the

11  United States Navy located in the Southern California area.  In addition, this

12  Naval Ammunition Depot stores and ships ammunition for use by combat elements

13  of the United States Navy and United States Marine Corps.

14           Agreement as to the use of the properties above mentioned neither

15  constitutes an admission respecting the utilization of the entire area for

16  military purposes nor does it constitute an admission respecting the extent or

17  effect of the exclusive jurisdiction of the United States of America over the

18  property in question.

19           4.  The installations referred to in the preceding paragraphs are
                                                              28/
20  disclosed on the accompanying map.

21           5.  The Santa Margarita River in its course traverses virtually the

22  length of Camp Pendleton—Naval Ammunition Depot—United States Naval Hospital

23  lands from east to west for a distance of approximately 21 miles.  There are no

24  users below Camp Pendleton on the Santa Margarita River for the United States of

25  America owns the lands on both banks of that stream from the point where the

26  Santa Margarita River enters upon the military establishments above mentioned to
                                                                          29/
27  the point of confluence of the river with the Pacific Ocean,      except for such

28  properties and lands as the Atchison, Topeka and Santa Fe Railroad Company may own.

29  28/  Plaintiff's Exhibit No. 21 - Uncontrolled Mosaic, Camp Pendleton, Calif.
           Photographed by Patrol Squadron 61, 1951.  Plaintiff's Exhibit No. 22 -
30  Map disclosing location of all structures - United States Navy Hydrographic
     Office, map of Camp Joseph H. Pendleton, 1st Edition, March 1952.

31
32  29/  Plaintiff's Exhibit No. 21 - Uncontrolled Mosaic, Camp Pendleton, Calif.

                                                                      1250

6. A portion of the approximately 135,000 acres of lands owned by the United States of America comprising the military establishments in question is riparian to the Santa Margarita River.[30/]

7. By a stipulated judgment, Exhibit A of the complaint in this case, a defendant in this action, the Vail Estate, and the Rancho Santa Margarita, a corporation, predecessor in interest of the United States of America, concluded protracted litigation between themselves over their respective rights in the Santa Margarita River. By an order of this Court there was filed July 8, 1952 the following stipulation between the United States of America and the Vail Estate:

"Whereas, on December 27, 1940, a judgment was entered in that action entitled Rancho Santa Margarita, a corporation, Plaintiff, v. N. R. Vail, et al., Defendants, in the Superior Court of the State of California in and for the County of San Diego, case No. 42850; and

"Whereas, the United States of America, during the years 1941-1943 acquired all the lands and rights to the use of water in the Temecula-Santa Margarita River which had been owned by the Rancho Santa Margarita, Plaintiff in the action referred to in the preceding paragraph. By that acquisition the United States of America succeeded to all the rights, title, and interest of the Rancho Santa Margarita in the Temecula-Santa Margarita River; and

"Whereas, on January 25, 1951, the United States of America instituted the above-entitled action, incorporating in the complaint filed therein, a copy of said judgment of December 27, 1940, as Exhibit A to its complaint. To the end that a full declaration of Plaintiff's rights in and to the waters of said River as against all other users thereof and

---

30/ Plaintiff's Exhibit No. 23 - Land classification map of the Santa Margarita watershed within Camp Joseph H. Pendleton, Office of Ground Water Resources, Camp Pendleton; Plaintiff's Exhibit No. 24 - Land utilization map of Santa Margarita watershed within Camp Joseph H. Pendleton, Office of Ground Water Resources, Camp Pendleton.

1251



claimants thereto might be obtained in this action, Plaintiff named among many other Defendants, Mary Vail Wilkinson, Mahlon Vail, Edward N. Vail, Margaret Vail Wise, and Nita M. Vail, Trustees herein collectively referred to as the Vails. Notwithstanding the naming of the Vails as parties defendant in the present action the United States of America and the Vails are mutually in agreement that as between themselves the said judgment of December 27, 1940, is and shall continue to be binding upon them and each of them.

"Accordingly, it is hereby stipulated and agreed by and between the United States of America, Plaintiff herein, and the Vails Defendants herein, through their respective counsel, as follows:

"1. That the rights and duties of Plaintiff, United States of America, and the Vails, in and to the waters of the Temecula-Santa Margarita River as between Plaintiff and said Vails, are those fixed, determined, and declared in that certain judgment entered on December 27, 1940, in the case of <u>Rancho Santa Margarita, a corporation, Plaintiff</u>, v. <u>N. R. Vail, et al., Defendants</u>, in the Superior Court of the State of California in and for the County of San Diego, case No. 42850.

"2. That neither Plaintiff herein nor said Vails claim or will claim, in the within action, any rights or duties as against the other, other than or different from, those fixed, determined and declared in said judgment of December 27, 1940.

"3. That no issue is or will be raised in this litigation as to the operations of the parties under said judgment, it being understood that neither party will claim in this litigation that the other has failed in any way to comply with said judgment of December 27, 1940.

"4. The introduction of a properly certified copy of the said judgment of December 27, 1940 in the record in this case

1    will constitute proof of the rights and duties of the respective

2    parties hereto as against each other as specified in said judgment.

3        "Signed this 23rd day of Oct. 1951."

4       By agreeing to the facts set forth in Paragraph 7, the defendants do

5    not admit the admissibility of the judgment or stipulation in this action

6    which has arisen between the United States of America and the defendants named

7    herein, or waive any rights to have said stipulated judgment or stipulation

8    deleted from the records in the proceeding.

9       8.  That the predecessors in interest of the United States in ownership

10    of Camp Pendleton and the Naval Ammunition Depot did not prior to the effective

11    date of the State Water Commission Act of 1913 post, file or record any notices

12    of appropriation of the waters of the Santa Margarita River system.

13       9.  That Plaintiff owns approximately 6,869.6 acres of land which lie

14    within the watershed of DeLuz Creek and is the owner in fee of approximately

15    3,798.9 acres of land lying within the watershed of Fallbrook Creek.

16       10.  The Plaintiff is the owner in fee of approximately 7,258.9 acres

17    of land lying within the watershed of Pilgrim Creek and the owner in fee of

18    approximately 1942.1 acres of land lying within the watershed of Windmill Creek.

19    That said Windmill Creek and said Pilgrim Creek drain into and are part of the

20    watershed of the San Luis Rey River.

21      F.  Santa Margarita Mutual Water Company

22       1.  The Santa Margarita Mutual Water Company is a mutual water company

23    organized and existing under and pursuant to the laws of the State of California

24    and is currently in good standing. [31/]

25       2.  Application No. 11578[*] to appropriate water was filed October 4,

26    1946, by the Santa Margarita Mutual Water Company with the State of California,

27    Department of Public Works, Division of Water Resources, State Engineer.  The

28    application was for sixty (60) cubic feet of water per second from the Santa

29    Margarita River.

30

31    [31/]  Defendant Santa Margarita Mutual Water Company Exhibit No. _A_ , organiza-

32        tional documents, including State of California certified statement as to
         current standing.

    [*]  The period each year during which the applicant seeks to divert or impound
       the water described is contained in the accompanying application.   1253

1    In addition to the direct flow right above mentioned, the application

2  in question is for a storage right of 5,000 acre-feet of water from Temecula

3  Creek at the approximate site of the Vail Dam and Reservoir. 32/

4    3.  Application No. 12152* to appropriate water was filed November 12,

5  1947, by the Santa Margarita Mutual Water Company with the State of California,

6  Department of Public Works, Division of Water Resources, State Engineer.  The

7  application was for 60,000 acre-feet of water from the Santa Margarita River for

8  storage. 33/

9    G.  Fallbrook Public Utility District

10    1.  The Fallbrook Public Utility District is a public agency of the

11  State of California, organized and existing under and pursuant to the Public

12  Utility District Act of the State of California, and is currently in good

13  standing. 34/

14    2.  Application No. 11586* to appropriate water was filed October 11,

15  1946, by the Fallbrook Public Utility District with the State of California,

16  Department of Public Works, Division of Water Resources, State Engineer.  The

17  application was for 2-1/2 (two and one-half) cubic feet of water per second from

18  the Santa Margarita River. 35/

19    3.  Pursuant to said last-mentioned application, there was issued on

20  February 18, 1948, to the Fallbrook Public Utility District permit No. 7033.  That

21  permit was approved subject to vested rights.  The quantity of water to be

22  diverted pursuant to it was not to exceed 2.5 cubic feet per second from April 1

23  to about November 1st of each year and throughout the remainder of the year as

---

32/  Defendant Santa Margarita Mutual Water Company Exhibit No. __B__, application
     No. 11578 to appropriate water.

33/  Defendant Santa Margarita Mutual Water Company Exhibit No. __C__, application
     No. 12152 to appropriate water.

34/  Defendant Fallbrook Public Utility District Exhibit No. __A__, organizational
     documents, including State of California certified statement as to current
     standing.

35/  Defendant Fallbrook Public Utility District Exhibit No. __B__, application
     No. 11586 to appropriate water.

*    The period each year during which the applicant seeks to divert or impound
     the water described is contained in the accompanying application.

1254

1  required for domestic and municipal uses. $\underline{36/}$

2      4.  Application No. 11587* to appropriate water was filed October 11,

3  1946, by the Fallbrook Public Utility District with the State of California,

4  Department of Public Works, Division of Water Resources, State Engineer.  The

5  application was for 10,000 acre-feet of water for storage from the Santa Margarita

6  River. $\underline{37/}$

7      5.  Pursuant to said last-mentioned application, there was issued on

8  April 23, 1951, to the Fallbrook Public Utility District permit No. 8511.  That

9  permit was approved subject to vested rights.  The quantity of water to be

10 impounded pursuant to it was not to exceed 10,000 acre-feet for storage to be

11 collected from January 1 to December 31 of each year. $\underline{38/}$

12      6.  Application No. 12178* to appropriate water was filed November 28,

13 1947, by the Fallbrook Utility District with the State of California,

14 Department of Public Works, Division of Water Resources, State Engineer.  The

15 application is for storage of 10,000 acre-feet of water per annum, 500 acre feet

16 from Rainbow Creek and 9,500 acre feet from Santa Margarita River.  Said

17 application is now under consideration by the State of California, Department of

18 Public Works, Division of Water Resources, State Engineer, and notice of the

19 application is now being published. $\underline{39/}$

20      7.  Application No. 12179* to appropriate water was filed November 28,

21 1947, by the Fallbrook Public Utility District with the State of California,

22 Department of Public Works, Division of Water Resources, State Engineer.  The

23 application is for storage of 10,000 acre-feet of water per annum, 1,500 acre

24 feet from Sandia Creek and 8,500 acre feet from Santa Margarita River.  Said

25

26 $\underline{36/}$  Defendant Fallbrook Public Utility District Exhibit No.  C  , Permit No.
        7033 signed by Edward Hyatt, State Engineer on February 18, 1948.
27
28 $\underline{37/}$  Defendant Fallbrook Public Utility District Exhibit No.  D  , application
        No. 11587 to appropriate water.

29 $\underline{38/}$  Defendant Fallbrook Public Utility District Exhibit No.  E  , Permit No.
        8511 signed by A. D. Edmonston, State Engineer on April 23, 1951.
30
31 $\underline{39/}$  Defendant Fallbrook Public Utility District Exhibit No.  F  , application
        No. 12178 to appropriate water.

32 *  The period each year during which the applicant seeks to divert or impound
     the water described is contained in the accompanying application.



1255

1   application is now under consideration by the State of California, Department

2   of Public Works, Division of Water Resources, State Engineer, and notice of the

3   application is now being published. [40/]

4       8.  The legal title to whatever rights Fallbrook Public Utility District

5   may have acquired or may hereafter acquire to the waters of the Santa Margarita

6   River system by virtue of its said applications to and permits from the State of

7   California or otherwise, are vested in the District in trust for the uses and

8   purposes set forth in the Public Utility District Act of the State of California

9   and the beneficiaries of the trust are the landowners and water users in the District.

10      H.  State of California

11      1.  The State of California, defendant in intervention, has entered into

12  the following stipulation with the United States of America:

13      "On the 15th day of August, 1951, the People of the State
    of California, in accordance with invitation of the United
14      States of America, petitioned this Court to intervene in this
        litigation.  On that date an Order was allowed and entered by
15      this Court granting the Petition.

16      "For the clarification of the issues in this litigation,
        and for the benefit of all of the parties to this cause, it is
17  hereby stipulated:

18

19                      "I

20      "That in Paragraphs VIII and IX of plaintiff's Complaint
        herein, and in Paragraphs 2 and 3 of the Prayer of said Complaint,
21  the word 'paramount' is used in the same sense in which that word
    is used in the second paragraph, on page 374 of the opinion of
22  the Supreme Court of California in the case of Peabody v. Vallejo,
    2 Cal. 2d 351 (fourth paragraph on page 494, 40 Pac. 2d 486.)
23

24                      "II

25      "That in this cause, the United States of America claims
    only such rights to the use of water as it acquired when it
26  purchased the Rancho Santa Margarita, together with any rights
    to the use of water which it may have gained by prescription or
27  use, or both, since its acquisition of the Rancho Santa Margarita.

28                      "III

29      "That the United States of America claims by reason of its
    sovereign status no right to the use of a greater quantity of

30

31

32  [40/]  Defendant Fallbrook Public Utility District Exhibit No. G, application
    No. 12179 to appropriate water.

                                                                    1256

                            -17-

water than is stated in Paragraph II, hereof.

"IV

"That the rights of the United States of America to the use of water herein are to be measured in accordance with the laws of the State of California.

"V

"That the parties to this Stipulation will request the entry of a Pretrial Order by this Court defining the issues in this cause, in conformity with the statements contained in this Stipulation.

"VI

"That there will be a full, complete and mutual exchange of data and information as to the subject matter of this cause collected by the respective parties to this Stipulation, including data respecting the issuance of any permits or licenses issued by the State of California in connection with the rights to the use of water of the Santa Margarita River.  Such exchange of information by the United States, will be subject to clearance by the Commanding Officer, Camp Joseph H. Pendleton, in respect to military security, as determined by said Officer.

"Dated:  November 29, 1951."

2.  That stipulation has been approved by the Court and ordered filed.

3.  Counsel for the State of California are presently informed that the State of California owns no lands and has no liens on lands within the Santa Margarita River system watershed.  They reserve the right, however, should further investigation disclose any such interest to amend their answer and prove such ownerships.

-18-

1257

CONTENTIONS OF THE UNITED STATES OF AMERICA

1. In addition to the physical features of the Santa Margarita River system contained in the Agreed Facts, the United States contends that:

a. Below the Vail Dam, Temecula Creek traverses a highly porous area where that stream, except during periods of high runoff, disappears into the Temecula Basin. In a state of nature Temecula Creek customarily again becomes a surface stream at a distance of about three miles from the present site of the Vail Dam. Presently, however, due to the control of the stream arising from the mentioned dam and the draft upon Temecula Basin by the Vail Estate, Temecula Creek reappears as a surface stream at a greater distance from the mouth of Nigger Canyon dependent upon the draft and the period elapsing between releases from Vail Reservoir.

b. Within Camp Pendleton the Santa Margarita River does not flow as a continuous surface stream but during the dry season of the year the stream customarily and ordinarily sinks into the highly porous ground water basin underlying Camp Pendleton and the other military establishments. When that basin has been filled, the Santa Margarita River ordinarily comes to the surface some two or three miles from tidewater. In a state of nature it continues then to the Pacific Ocean as a stream of diminishing volume.

c. From its head waters to the Pacific Ocean the Santa Margarita River passes over and through numerous ground water basins. The water in those basins is contained by bedrock or other impervious material. The basins are filled with alluvial deposits of varying degrees of porosity. The basins differ greatly in size and in capacity. The waters of the Santa Margarita River in its course through the valley penetrate and fill the voids of the porous alluvium. When the water of the stream sinks to bedrock or the other impervious material comprising the beds of the basins, in which the detrital material lies, it spreads out laterally filling the basins. When completely charged, the waters of the basins support the surface stream and progress slowly

-1-

1258

1    downstream through the permeable material.

2        Ground water basins of the character described underlie Temecula

3    Creek in portions of Oak Grove Valley; and Lancaster Creek in Lancaster

4    Valley.  Temecula Basin, one of the largest in the entire watershed of

5    the Santa Margarita River, is located on the property of the Vail

6    Estate.  This large T-shaped alluvial deposit area has the stem of the

7    T along the main channel of Temecula Creek for a distance of approxi-

8    mately eight miles, varying in width from two-thirds of a mile to a

9    mile and a half. 1/   That area of the Temecula Basin immediately below

10   the present site of Vail Dam is comprised of coarse, highly porous

11   material and is known as the "out wash."  Into that "out wash" except

12   in periods of extremely heavy precipitation, Temecula Creek sinks.

13   About three miles below the "out wash" the Temecula Basin becomes an

14   artesian area from which Temecula Creek again emerges as a surface

15   stream.

16       The right arm of the T-shaped alluvial basin extends northward

17   underlying Murrieta Creek for a short distance above that stream's

18   confluence with Temecula Creek.  The left arm of the T-shaped Temecula

19   alluvial basin extends southward beneath Penjango Creek. 2/

20       Underlying Murrieta Creek and separated from the Temecula Basin is

21   another large alluvial basin known as the Murrieta Basin.  That is

22   comprised of valley fill similar to that found in the other basins.

23       Due to the existence of granitic rock immediately underlying the

24   stream from approximately the point of confluence of Temecula Creek with

25   Murrieta Creek to the mouth of the Temecula Gorge, the Santa Margarita

26   River in the state of nature is a surface stream.  That granitic underlay

27   _____

28   1/  Plaintiff's Exhibit No. 8 - Map disclosing the geology of the Santa Margarita-
         Temecula River watershed, dated January 1952, Office of Ground Water Resources,
29   Camp Pendleton, California; Plaintiff's Exhibit No. 9 - Profile of the Santa
     Margarita River, disclosing elevation and location of principal basins beneath
30   Temecula Creek and Santa Margarita River, entitled "Geologic Cross Section A-A'
     along the Santa Margarita-Temecula River," dated 10 July 1952, Office of Ground
31   Water Resources, Camp Pendleton, California.

32   2/  Plaintiff's Exhibit No. 8 - Map disclosing the geology of the Santa Margarita-
         Temecula River watershed.

GPO 16-20005-4

1    of the stream continues from the point mentioned across the boundary of

2    Camp Pendleton to a point approximately one and one-half miles below the

3    confluence of DeLuz Creek with the Santa Margarita River.  At that

4    point the stream opens out into a rather broad alluvial flood plain.

5    That alluvial area extends from the point last mentioned to tidewater,

6    constituting a large ground-water basin.  That ground-water basin is

7    comprised of a relatively coarse and loose porous valley fill at the

8    upstream end comparable to the "out wash" area of the Temecula Basin

9    above described.  $\underline{3/}$   Approaching the ocean the character of the alluvium

10   becomes increasingly fine and tight.

11       The alluvial ground-water basin underlying the Santa Margarita

12   River within Camp Pendleton and the other military establishments is

13   geologically and hydrologically interconnected, comprised, however, of

14   three separate segments which lend themselves readily to arbitrary

15   subdivisions.  They are

     1.  Upper or O'Neill Basin Component,
16   2.  Chappo or Home Ranch Basin Component,
     3.  Ysidora Basin Component.
17

18       2.  Exclusive jurisdiction over the approximately 135,000 acres of land

19   constituting Camp Joseph H. Pendleton, United States Naval Hospital and the United

20   States Naval Ammunition Depot resides in the United States of America.  By reason

21   of exclusive jurisdiction, with an exception having no bearing here, the police

22   power of the State of California has no application and is without force and

23   effect in regard to the lands, buildings, or any of the components constituting

24   the installations or the rights to the use of water claimed by the United States

25   of America.

26       3.  Construction of the military installations in question commenced

27   immediately upon the acquisition by the United States of America of the lands

28   to which reference has been made.  Those installations since that date and all

29   _____

30   3/  Plaintiff's Exhibit No. 10 - Map of lower Santa Margarita River Valley, Camp
         Joseph H. Pendleton, California, showing ground-water storage units, general
31   geology, and location of wells and stream-gaging stations, compiled November
     1951 by U.S.G.S.; Plaintiff's Exhibit No. 11 - Geologic Section A-A' through
32   the lower Santa Margarita River Valley, showing unconsolidated deposits and
     water-level profiles, United States Geological Survey.

                                                                    1260

                          -3-                    23                           35

1  of the approximately 135,000 acres of land have been continuously utilized for

2  military purposes.

3      4. A water system was constructed and is now operated to serve the

4  military installations. [4/]

5      5. Water has been delivered through the distribution system to the

6  military installations since the properties were acquired by the United States

7  of America. [5/]   Since that date water has likewise been delivered to

8  agricultural lands when the lands and water were not required for military

9  purposes.

10      6. All of the land and rights to the use of water acquired from the

11  Rancho Santa Margarita and all of the water acquired through prescription or use

12  or both, are primarily for military purposes.  To avoid possible waste of water

13  entails the utilization of it for agricultural purposes when the water is not

14  immediately needed for military purposes.

15      7. Water has been continuously diverted from the Santa Margarita

16  River and from the ground-water basin underlying the military establishments in

17  question by the United States of America for military purposes [6/] and

18  agricultural purposes [7/] since the acquisition of the lands in question.  The

19  surface stream and the ground-water basin underlying those military establishments

20  constitute a single source of supply.

21      8. For both military and agricultural purposes the United States of

22  America has historically utilized its rights to the use of water both within

23  and outside of the watershed of the Santa Margarita River.  Thirty days prior

24  to trial there will be delivered to the defendants named in this separate trial

25  the quantities of water from the Santa Margarita River historically utilized

26

27  4/  Plaintiff's Exhibit No. 22 - Map disclosing location of all structures -
     United States Navy Hydrographic Office, map of Camp Joseph H. Pendleton,
28  1st Edition, March 1952.

29  5/  Plaintiff's Exhibit No. 22 - Map disclosing location of all structures.

30  6/  Plaintiff's Exhibit No. 26 - Tabulation in acre feet of water pumped at
     Camp Pendleton, entitled "Camp Pendleton Total Pumps, Camp Pendleton Records
31  Diversions."

32  7/  Plaintiff's Exhibit No. 27 - Tabulation in acre feet of water pumped from
     Ysidora area for agricultural purposes, entitled "Ysidora Mesa Pumps, Camp
Pendleton Records Diversions."

-4-

1261

1  both within and without the watershed.

2  9. Based on the troop load which will be attained by the end of Fiscal

3  Year 1954, the annual demand for water from the Santa Margarita River for use by

4  the United States of America at Camp Pendleton and the other military establishments

5  will increase to approximately 23,000 acre-feet. Full mobilization of the Nation

6  for war would increase the demand to the full extent of the relief prayed in the

7  complaint in this case, 35,000 acre feet of water annually.

8  10. Long prior to the acquisition by the United States in the year 1884,

9  its predecessors in interest had diverted for agricultural purposes and had im-

10  pounded large quantities of water from the Santa Margarita River in Lake O'Neill. 8/

11  For a similar period the predecessors in interest of the United States had diverted

12  from the surface flow or pumped from the underground basin underlying the river,

13  large quantities of water of the Santa Margarita River out of the watershed of

14  that stream for agricultural uses. Thirty days prior to trial, the Plaintiff will

15  furnish Defendants a statement of the quantities of water used by the United States

16  and its predecessors in interest outside the watershed of the Santa Margarita River;

17  the several places of use; periods of time used and purposes of use, so far as that

18  information is available. Moreover, the supply available from the Santa Margarita

19  River system has been historically insufficient to meet the demands of the

20  predecessors in interest of the United States of America and of the United States.

21  11. Historically the waters from the Santa Margarita River were diverted

22  from the stream by the predecessors in interest of the United States of America

23  and utilized upon the riparian lands for agricultural purposes. Large quantities

24  of the water were likewise pumped from the ground-water basin underlying those

25  riparian lands and were likewise used for agricultural purposes.

26  12. Large quantities of both the surface stream of the Santa Margarita

27  River and of the ground-water basin underlying that stream were historically

28  used by the predecessors in interest of the United States of America for stock

29  watering and domestic purposes.

30  13. The high water table of the ground-water basin above described

31  subirrigated the entire surface area of the basin, greatly enhancing the

32

---

8/  Plaintiff's Exhibit No. 29 - Tabulation Lake O'Neill Reservoir storage records.
   Plaintiff's Exhibit No. 30 - Area and capacity curve of Lake O'Neill, Camp
Joseph H. Pendleton, Public Works Office, P W drawing #1167CP.      1262

1  production of natural forage, thus increasing the carrying capacity for livestock

2  of the lands with the attendant increment in the value of the lands.  That

3  natural subirrigation from the ground-water basin above described since the

4  acquisition of the lands in question by the United States of America has

5  continued to subirrigate the natural forage, providing feed for livestock and

6  maintaining a coverage of the surface area necessary for the present military

7  use.

8       14.  Though the Santa Margarita River is an intermittent stream, it has

9  historically for brief periods raised to higher levels within the natural high

10  water channel of the stream, overflowing lands which during the long dry periods

11  receive only subirrigation from the ground-water basin underlying the area.

12  That overflow watered, enriched, and fertilized the lands resulting in increased

13  productivity of the land and enhancement of its value.

14       15.  The United States of America as owner of the lands is invested

15  with title to rights to the use of water in the Santa Margarita River for the

16  subirrigation and the overflow above mentioned in addition to the other rights

17  to the use of water above described and subsequently to be described.  Obstruction

18  or diversion of the natural flow of the Santa Margarita River upstream from

19  properties owned by the United States of America constitutes an invasion of

20  any and all of the rights of the United States of America to the use of water to

21  the irreparable damage of the United States of America.

22       16.  There are 37,944[*] acres of land riparian to the Santa Margarita

23  River within the boundaries of Camp Joseph H. Pendleton, the United States

24  Naval Ammunition Depot and the United States Naval Hospital.[9/]

25       17.  Of those 37,944 acres of land riparian to the Santa Margarita

26  River 18,701.1[*] acres are irrigable and are susceptible of practicable and

27  profitable irrigation,[10/] of which 4,601.9 irrigable acres are within the United

28  States Naval Ammunition Depot.

---

29  9/   Plaintiff's Exhibit No. 24 - Land Utilization map of Santa Margarita water-
30      shed within Camp Joseph H. Pendleton, Office of Ground Water Resources, Camp
    Pendleton.

31  10/  Plaintiff's Exhibit No. 23 - Land classification map of the Santa Margarita
    watershed within Camp Joseph H. Pendleton, Office of Ground Water Resources,
32  Camp Pendleton; Plaintiff's Exhibit No. 24 - Land Utilization map of Santa
    Margarita watershed; Plaintiff's Exhibit No. 25 - Soil survey field sheets, soil
    survey legend, of Camp Joseph H. Pendleton, dated June 1952.

*   This figure is subject to slight modification dependent upon the ultimate
    determination of the crest of the watershed in certain disputed areas.

18.  The irrigation requirements for practicable and profitable irrigation for those lands is 69,237.1* acre feet a year. [11]

19.  In addition to the riparian and irrigable lands within the watershed as above described, there are lands lying outside of the watershed which have historically been irrigated from the ground-water basin underlying the military establishments in question.  Those lands are situated within the area known as the Stuart Mesa, lying north of the Santa Margarita River, and South Coast Mesa, lying south of the stream.  Thirty days prior to trial there will be delivered to the defendants the exact acreage as determined by the United States lying outside of the watershed in regard to the land in question; the duty of water and the maximum demand upon the Santa Margarita River which the United States is asserting in connection with those properties.

20.  The principal source of water from the Santa Margarita River for use on the lands now comprising the military establishments in question is the ground-water basin which has been described.  Future demands will be principally met by pumping from the basin.  The ground-water storage capacity of the three components of the subterranean basin underlying the Santa Margarita River within Camp Joseph H. Pendleton, the United States Naval Hospital and the United States Naval Ammunition Depot are as follows:

| | | |
|---|---|---|
| Upper Basin (O'Neill) Component | 12,500 acre feet | |
| Chappo Basin (Home Ranch) Component | 27,000 " " | |
| Ysidora Basin Component | 8,600 " " | |
| | 48,100 acre feet | |

21.  To provide a fresh water barrier for the prevention of salt water intrusion, which has presently destroyed two wells, it is requisite that there be maintained a fresh water barrier in the Ysidora Basin Component. Thus the maximum usable capacity of the ground-water basin is 40,000 acre feet.

---

[11]  Plaintiff's Exhibit No. 23 — Land classification map of the Santa Margarita watershed within Camp Joseph H. Pendleton, Office of Ground Water Resources, Camp Pendleton; Plaintiff's Exhibit No. 24 — Land Utilization map of Santa Margarita watershed within Camp Joseph H. Pendleton, Office of Ground Water Resources, Camp Pendleton; Plaintiff's Exhibit No. 25 — Soil survey field sheets, soil survey legend, of Camp Joseph H. Pendleton, dated June 1952.

*  This figure is subject to slight modification dependent upon the ultimate determination of the crest of the watershed in certain disputed areas.

GPO  16—60606-2

1  To accomplish the maximum utilization of the storage capacity of the ground-

2  water basin and the rights to the use of water, the United States will pump

3  largely from the Upper and Chappo Basins-Components, thus permitting the

4  water in the Ysidora Basin-Component to remain at a level which will effectively

5  prevent the intrusion of salt water into the basin.

6       22.  In a state of nature, the process of recharging the under-ground

7  basin resulted in Santa Margarita River water occasionally reaching tidewater.

8  Plans now being effected, however, in regard to the pumping from the ground-water

9  basin underlying Camp Pendleton and the other military establishments, together

10  with the regulation of surface stream flow, will eliminate or greatly reduce

11  the amount of Santa Margarita River water from reaching tidewater.

12       23.  It is estimated, premised upon the available data respecting the

13  annual runoff of the Santa Margarita River system and upon known demands for

14  water from that stream system within its watershed, that the maximum quantity

15  of water which would be available to Camp Pendleton and the other military

16  establishments is 12,500 acre feet per annum.[12/]  Only by adherence to the

17  strictest conservation practices and the use and re-use of water will it be

18  possible to meet the demands for water of Camp Pendleton and the other military

19  establishments.

20       24.  The Vail Estate has title to 29,000 acres of riparian land

21  which is susceptible of practicable and profitable irrigation from the Santa

22  Margarita River* and its tributaries.  Of that acreage, due to the insufficient

23  supply of water in the river and its tributaries, the Vail Estate presently

24  irrigates only 4,200 acres of land.  The annual water duty for those lands is

25  presently three acre feet per acre.  The other riparian lands susceptible of

26  irrigation, if the water was available for them, would likewise utilize three

27  acre feet per acre per year.[13/]

28

---

29  12/  Plaintiff's Exhibit No. 14 - U.S.G.S. records, Water Supply Papers for the
     Santa Margarita River System.

30

31  13/  Plaintiff's Exhibit No. 31 - Map of Pauba Ranch and vicinity, Riverside
     County, California; Plaintiff's Exhibit No. 32 - Map of soil and climatic
surveys of the Pauba Ranch, Riverside County, California; Plaintiff's Exhibit

32  No. 33 - Tabulation and analysis in re crop adaptation of parts of Pauba,
Temecula, Little Temecula and Santa Rosa Ranchos.  (* Temecula Creek)

1265

25. The Vail Estate is presently expanding its operation upon its riparian land and has adopted a program better to use the available supply of water through the construction of small impounding reservoirs and water spreading devices.

26. The Vail Estate, in addition to its riparian rights in the stream in question which are above described, is the owner of an appropriative right to impound in Nigger Canyon Reservoir and utilize for purposes of irrigation 50,000 acre feet of water. All of the water yielded by the riparian rights and the appropriative rights of the Vail Estate are beneficially applied to practicable and profitable irrigation of crops commonly grown in the area in which the property is located.

27. Pursuant to the Stipulated Judgment, Exhibit A of the Complaint in this case, the Vail Estate during the irrigation season of each year is required to maintain a constant flow of water of not less than three cubic feet per second at the Temecula gauging station at the head of Temecula Gorge. That water is delivered to the United States of America in accordance with the provisions of the Stipulated Judgment and is not open to appropriation under the laws of the State of California. Moreover, that three second feet of water which would not be in the stream were it not for the Stipulated Judgment is not available for use and diversion by the defendants, Fallbrook Public Utility District and Santa Margarita Mutual Water Company, or the State of California.

28. All of the water to which the United States is entitled by reason of the rights to the use of water under the Stipulated Judgment and as against the defendants in this litigation may be used outside of the watershed of the Santa Margarita River or may be impounded in the discretion of the United States by reason of the express provisions of the Stipulated Judgment.

29. The United States of America declares that Permit No. 7033 and Permit No. 8511, issued by the Department of Public Works, Division of Water Resources, State Engineer, State of California, to the Fallbrook Public Utility District are null and void and of no force and effect. It likewise denies that the Fallbrook Public Utility District acquired any rights in and to the use of water of the Santa Margarita River by any of its filings of applications

-9-

1266

1 with the Division of Water Resources.

2      30. The United States of America likewise denies that the Santa

3 Margarita Mutual Water Company has any rights to the use of water in the Santa

4 MargaritaRiver by reason of the applications which it filed with the Department

5 of Public Works, Division of Water Resources, State Engineer, State of California.

6      31. The United States of America asserts that within the watershed of

7 the Santa Margarita River system there are 35,000 acres of land above Nigger

8 Canyon and 19,000 acres of land within the watershed of Murrieta Creek and 6,000

9 acres of land between Camp Pendleton and the head of Temecula Gorge susceptible

10 of irrigation and entitled to water from the Santa Margarita River and that those

11 rights, together with the rights of the Vail Estate and the United States, far

12 exceed the quantitiesof water available in the Santa Margarita River.  The

13 United Statesof America likewise denies that there is any water available for

14 appropriation or exportation from the watershed of the Santa Margarita River.

15      32. The defendant Fallbrook Public Utility District in direct

16 violation of the rights to the use of water of the United States in the Santa

17 Margarita River has illegally andin violation of the rights of the United States

18 installed in the channel of that stream a dam and pump and with intake structures

19 is impounding and diverting water to which the United States is legally entitled.

20      33. The validity of Permit No. 8511, in addition to the other reasons

21 expressed above, is denied by reason of the fact that it was issued with full

22 knowledge of the pendency of the action subsequent to the date that this cause

23 was instituted.

24      34. Similarly no rights could be invested in the Fallbrook Public

25 Utility District or the Santa Margarita Mutual Water Company by reason of action

26 taken by the State in regard to pending applications.

27      35. The water diverted from the watershed at the present time for

28 military uses is largely re-diverted to the watershed in the form of sewage

29 effluent which is returned to the basin for recharging the basin and for reuse.

30      36. The Fallbrook Public Utility District could not initiate rights to

31 the use of water in the Santa Margarita River when it made its filings with the

32 State of California by reason of the fact that it was at the time receiving water

1267

1  in small quantities from that river pursuant to a revocable license from the

2  United States of America. [14]/

3   37.  All of the acts of the Fallbrook Public Utility District and of

4  the Santa Margarita Mutual Water Company complained of in this litigation by

5  the United States were taken with full knowledge of the dependency of the United

6  States of America upon the Santa Margarita River as a source of supply for the

7  military establishments in question.

8   38.  The diversions of the Fallbrook Public Utility District are the

9  direct and immediate cause of salt water intrusion, described in the Complaint,

10  which has resulted in the contamination by salt water of two of the wells

11  maintained on Camp Joseph H. Pendleton.

12   39.  Due to the diversions of the Fallbrook Public Utility District,

13  none of the waters of the Santa Margarita River are now reaching Camp Joseph H.

14  Pendleton or the United States Naval Ammunition Depot.  By reason of that

15  diversion, the United States Naval Ammunition Depot is without a supply of water

16  causing the United States to suffer irreparable damage and it will continue

17  suffering irreparable damage as long as the Fallbrook Public Utility District

18  continues to maintain its dam across the Santa Margarita River and continues

19  to pump water from that stream.

20

21   RESPONSE OF THE UNITED STATES OF AMERICA TO CONTENTIONS OF THE
    FALLBROOK PUBLIC UTILITY DISTRICT, SANTA MARGARITA MUTUAL WATER COMPANY

22   AND THE STATE OF CALIFORNIA

23   1.  The United States of America denies the contentions of the Fallbrook

24  Public Utility District, the Santa Margarita Mutual Water Company and the State of

25  California pointing to the fact that the contentions in question are largely

26  conclusions of law to be determined by this Court.

27   2.  The United States of America objects and renews its objection

28  previously made to the amendment by the State of California, Defendant in

29  Intervention, to its answer.

30

31  [14]/  Plaintiff's Exhibit No. 34 - Certified copy of Revocable License and Permit
       to use water from the Santa Margarita River from Rancho Santa Margarita

32  to the Fallbrook Public Utility District; Letter of May 24, 1948 revoking it.



1268

GPO  16—69058-4

CONTENTIONS OF FALLBROOK PUBLIC UTILITY DISTRICT

1. Fallbrook Public Utility District denies that plaintiff is making, or that it has made since the acquisition of Rancho Santa Margarita, any riparian uses, or in the future will make any riparian uses of the waters of the Santa Margarita River for the reason that this defendant contends that the military uses to which plaintiff has put and is putting such waters are not riparian uses; and that the water heretofore and now being applied by plaintiff to irrigation and agricultural purposes has not been and is not now being used on lands located within the Santa Margarita watershed.

2. Fallbrook Public Utility District denies that Plaintiff, or its predecessor in interest, acquired or could have acquired, as against this defendant, by use,* or that plaintiff now owns the right to demand that water of the Santa Margarita River be allowed to pass this defendant's diversion point to enable plaintiff to use said water

    (a) on lands outside the Santa Margarita River watershed;

    (b) for supplying plaintiff's military requirements, including the sanitary, culinary and drinking requirements of its armed forces, and the civilian personnel employed in connection therewith, stationed from time to time at Camp Joseph H. Pendleton, the Naval Ammunition Depot and the United States Naval Hospital;

    (c) for storage for future use.

It is the contention of this defendant that neither plaintiff nor its predecessors in interest ever made any appropriation of the water of the Santa Margarita River, under or pursuant to the laws of the State of California (other than the application No. 12576 made by the Navy Department June 30, 1948, to which reference is hereinafter made) and that Plaintiff and its predecessors in interest did not and could not have acquired, as against this defendant any prescriptive rights for the reason that all of Plaintiff's diversions and those of its predecessors in interest were and are down stream from the diversions of this defendant and the lands on which this defendant puts the waters of the Santa Margarita River to use.

3. Fallbrook Public Utility District has made the following applications

---

\* or prescription

-1-



1269

to the State of California to appropriate water of the Santa Margarita River and
the Sandia and Rainbow Creeks, tributaries of Santa Margarita River, and pursuant
to the water laws of the State of California:

    (1)  Application No. 11586, filed October 11, 1946, to appropriate $2\frac{1}{2}$
          cubic feet per second from the Santa Margarita River, which
          application was approved and permit issued on February 18, 1948,
          to appropriate and divert from said river for beneficial use not
          exceeding 2.5 cu. ft. per second, "from about April 1 to November
          1 of each year and through the remainder of the year as required
          for domestic and municipal uses.  In case of rotation the equivalent
          of such continuous allowance for any thirty day period may be
          diverted in a shorter time if there is no interference with other
          vested rights."

Thereafter this defendant has exercised its rights under said permit
and has now diverted and put to beneficial use the full amount granted
under said permit and has acquired the right to continue to so use said
full amount.

    (2)  Application No. 11587 filed October 11, 1946, to appropriate
          10,000 acre-feet per annum from the Santa Margarita River, which
          application was approved and permit issued on April 23rd, 1951, to
          store for beneficial use within the Fallbrook Public Utility
          District not to exceed "10,000 acre-feet per annum to be collected
          between January 1st and December 31st of each year."

Thereafter this defendant has been and now is actively engaged in the
acquisition of lands for the dam and reservoir in which to store said
water and in the preparation of plans and specifications for the
building of said dam.

    (3)  Application No. 12178 filed November 28, 1947 to appropriate
          10,000 acre-feet per annum for storage and beneficial use within
          the Fallbrook Public Utility District, 500 acre-feet per annum
          from Rainbow Creek and 9,500 acre-feet from the Santa Margarita
          River.

1270

1      That said application is in due form and order, in full force and effect

2    and now pending before and under consideration by the State Engineer

3    and Division of Water Resources, Department of Public Works, State of

4    California and notice of said application is now being published as

5    required by law, and the District is entitled to the issuance of a

6    permit thereon.

7    (4)  Application No. 12179, filed November 28, 1947, to appropriate

8         10,000 acre-feet of water per annum for storage and beneficial use

9         within the Fallbrook Public Utility District, 1500 acre-feet per

10         annum from Sandia Creek, 8,500 acre-feet per annum from Santa

11         Margarita River.

12    That said application is in due form and order, in full force and effect

13    and now pending before and under consideration by the State Engineer and

14    Division of Water Resources, Department of Public Works, State of

15    California and notice of said application is now being published as

16    required by law, and the District is entitled to the issuance of a

17    permit thereon.

18    4.  The United States of America, acting by and through the United States

19  Navy Department also filed an application with the State of California on June

20  30, 1948, being

21    Application No. 12576 to appropriate 165,000 acre-feet of water

22    per annum from the Temecula Creek-Santa Margarita River for

23    storage at a dam to be built on Camp Pendleton for municipal or

24    military, irrigation and domestic uses

25  but that said application was filed subsequent to all of the applications of this

26  defendant and is junior in right to the applications and rights of this defendant.

27  A copy of said application is attached hereto and made a part hereof.  1/

28    5.  There exists in said Santa Margarita River excess and surplus waters

29  over and above the actual reasonable requirements of the riparian land owners and

30  those having rights prior to those of this defendant, which excess and surplus

31

32  1/  Defendant Fallbrook Public Utility District Exhibit No. __H__, Application No.
      12576 of United States of America to appropriate water.

1   waters are subject to appropriation, diversion and use by this defendant.

2       6. While Fallbrook Public Utility District is primarily an appropriator

3   of water, distributing same to land owners and water users within the boundaries

4   of the District, it is also the owner in fee simple, or is in the process of

5   acquiring title in fee simple, to the hereinafter described tracts of land which

6   are situated within the watershed of the Santa Margarita River and said District

7   claims water rights therefor, in the several amounts hereinafter set out, either

8   as being riparian to the Santa Margarita River and its tributaries, or, as being

9   rights to the underground water percolating beneath said tracts of land.

10       The District is the owner in fee of the following tracts of land situated

11   in the County of San Diego, State of California, and more particularly described

12   as follows:

13   PARCEL 1.   The South 248.09 feet of that portion of the North 480 feet of the

14       Northwest Quarter of the Northeast Quarter of Section 25, Township 9

15       South, Range 4 West, San Bernardino Meridian, lying and being West of

16       the center line of the County Highway as described in Decree of Con-

17       demnation in Superior Court of San Diego County, Case No. 17550, a

18       certified copy of which was recorded May 20, 1912, in Book 500, page 89

19       of Deeds, containing 4 acres, more or less, with a right to water for

20       use thereon up to 12 acre-feet per annum.

21   PARCEL 2.   The East One Hundred Thirty (130) feet of the West Eleven Hundred

22       Fifty-two (1152) feet of the Northwest Quarter of the Northwest

23       Quarter of Section 7, Township Nine South, Range 3 West, San

24       Bernardino Meridian, containing 3.94 acres more or less, with a right

25       to water for use thereon up to 12 acre-feet per annum.

26   PARCEL 3.   The North one-half of Block "S" of Bartlett's Addition to West Fallbrook

27       No. 1, according to Map thereof No. 470, filed in the office of the

28       Recorder of said San Diego County, January 4th, 1888, containing .38

29       acres more or less, with a right to water for use thereon up to one

30       acre-foot per annum.

31   PARCEL 4.   All that portion of Lot 2, being the Northwest Quarter of the Southwest

32       Quarter of Section 18, Township 9 South, Range 3 West, S.B.M. described

1272

1   as follows:  Commencing at a point on the West line of said Section 18

2   distant thereon 215 feet Northerly from the Southwest corner of said Lot

3   2, thence at right angles Easterly, 185 feet to the true point of begin-

4   ning, thence at right angles Northerly, being along a line parallel with

5   said West line of said Section, 200 feet, thence at right angles Easterly,

6   217.8 feet, thence at right angles Southerly, being along a line parallel

7   with said West line of said Section, 200 feet, thence at right angles

8   Westerly, 217.8 feet to the true point of beginning.  ALSO an easement

9   and right of way, 16 feet wide, connecting the South line of the above

10  described property with the South line of said Lot 2, the West line of

11  said 16 foot strip being the Southerly prolongation of the West line of

12  the above described property, containing one acre more or less, with a

13  right to water for use thereon up to 3 acre-feet per annum.

14  PARCEL 5.  All that portion Section 17, Township 9 South, Range 3 West, S.B.M.

15  described as follows:  Commencing at a point in the South line of said

16  Section 17, distant N 89° 56' 30" E. 159.84 feet from the SW corner of

17  the SE$\frac{1}{4}$ of said Section 17; Thence at right angles to said South line of

18  said Section 17, N. 0° 03' 30" West 873.15 feet to a point; Thence N.

19  89° 56' 30" E 210 feet to a point; Thence S. 0° 03' 30" E. 210 feet to a

20  point; Thence S 89° 56' 30" W 194 feet to a point; Thence S 0° 03' 30"

21  E 663.15 feet to a point in the South Line of said Section 17; Thence S

22  89° 56' 30" W 16 feet along the South line of said Section 17 to the

23  point of beginning, containing 1.25 acres more or less, with a right to

24  water for use thereon up to 4 acre feet per annum.

25  PARCEL 6.  All that portion of the SW$\frac{1}{4}$ of the SE$\frac{1}{4}$ of Section 24, Township 9 South,

26  Range 4 West, S.B.M. described as follows:  Commencing at a point which

27  is South 88° 56' East 670 feet and North 0° 31' East 344.60 feet from

28  the South Quarter corner of Section 24, Twp. 9 South, Range 4 West;

29  Thence North 0° 31' East 75 feet; Thence South 89° 15' East 275 feet;

30  Thence South 0° 31' West 74.84 feet; Thence North 89° 17' West 275 feet

31  to point of commencement, containing .47 acres more or less, with a

32  right to water for use thereon up to 1.5 acre-feet per annum.

1273

1    Fallbrook Public Utility District has heretofore commenced an action in
2  the Superior Court of the State of California in and for the County of San Diego,
3  to condemn sixty-five (65) parcels of land for dam and reservoir sites for storing
4  waters of the Santa Margarita River, which said action is now pending and in which
5  action this defendant has taken possession of three of said tracts, hereinafter
6  described, under an order of court after depositing with the Clerk of said court
7  the amounts of money specified in said order as adequate to secure to the owner of
8  each of said tracts payment of just compensation for such taking and any damages
9  incident thereto.  The tracts of land for which compensation has been paid into
10 court and possession thereof taken by this defendant are all located in San Diego
11 County, State of California, and are more particularly described as follows:

12 PARCEL 1.  The Northeast Quarter of the Northeast Quarter of Section 12, in Town-
13            ship 9 South, Range 4 West, San Bernardino Meridian, according to
14            United States Government Survey approved January 15, 1892, containing
15            40 acres more orless with a water right to water foruse thereon up to
16            120 acre-feet per annum.

17 PARCEL 2.  Portions of the Northwest Quarter of the Northeast Quarter of Section
18            12, and the Southeast Quarter of the Northeast Quarter of Section 12,
19            in Township 9 South, Range 4 West, San Bernardino Meridian, according
20            to United States Government Survey approved January 15, 1892, containing
21            77 acres more or less with a water right to water for use thereon up
22            to 230 acre-feet per annum.

23 PARCEL 3.  The West 1022 feet of Lot 1, (Northwest Quarter of the Northwest Quarter)
24            Section 7, and the Southwest Quarter of the Northwest Quarter, Section
25            7, Township 9 South, Range 3 West, San Bernardino Meridian, according
26            to United States Government Survey thereof, containing 77 acres more or
27            less with a water right to water for use thereon up to 230 acre-feet per
28            annum.

29    This defendant intends to prosecute said action in condemnation to final
30 judgment and acquire title in fee simple to all of said 65 tracts of land, together
31 with the water rights belonging thereto.

32    7.  Fallbrook Public Utility District was not, nor was any of its

1274

1  predecessors in interest, a party to the action entitled: Rancho Santa Margarita

2  vs Vail No. 42850 in the Superior Court of the State of California in and for

3  the County of San Diego, and Fallbrook Public Utility District is not bound by

4  nor are any of its rights or interests restricted, limited or affected by the

5  Stipulated Judgment entered in said action, copy of which is attached to and made

6  a part of Plaintiff's complaint as Exhibit "A". That as against Fallbrook Public

7  Utility District said Stipulated Judgment and the stipulation between plaintiff

8  and the Vail interests signed October 23rd, 1951 and filed on October 24th, 1951,

9  are inadmissable as evidence.

10      8. Fallbrook Public Utility District, pursuant to the Court's direction,

11  proferred for inclusion in the "Agreed Facts" a statement and tabulation of the

12  District's records of diversions made by it from the Santa Margarita River, but

13  Plaintiff declined to allow them to be included herein under the heading of

14  "Agreed Facts" although plaintiff made no objection to the accuracy of the figures.

15  Therefore in order to comply with the Court's direction, said data is inserted

16  at this point under this defendant's contentions and said statement attached

17  as an exhibit of defendant Fallbrook Public Utility District. 2/

18      9. Fallbrook Public Utility District has distributed the water diverted

19  by it from the Santa Margarita River primarily for use on lands situated within

20  that portion of the District which lies within the Santa Margarita River watershed.

21  The area of the Fallbrook Public Utility District which lies within the Santa

22  Margarita River watershed consists of approximately 1800 acres. The quantities

23  of water so diverted from the Santa Margarita River were found to be inadequate

24  to meet the requirements of the lands and water users within said area and

25  Fallbrook Public Utility District has continuously imported large quantities of

26  "foreign water" for distribution and use in said area. Since 1938 the District

27  has diverted from the San Luis Rey River for use within the District, the

28  quantities set out in Defendant's Exhibit No. _J_ , attached hereto and made a

29  part hereof. 3/ Since 1947 this defendant has purchased Colorado River water for

30

31  2/  Defendant Fallbrook Public Utility District Exhibit No. _I_ , Statement of
       Records of Diversions of Water from Santa Margarita River.

32  3_/ Defendant Fallbrook Public Utility District Exhibit No. _J_ , Statement of
       Records of Diversions of Water from the San Luis Rey River.



1   use within the District in the quantities set out in Defendant's Exhibit No. K

2   attached hereto and made a part hereof. 4/   The said "foreign waters" imported

3   into and distributed by the District for use upon lands within the Santa Margarita

4   watershed were in such quantities that the return flow therefrom, together with

5   the return flow from the Santa Margarita River water likewise distributed by

6   the District for use upon land within said watershed were at least equal to the

7   amounts diverted by this defendant from the Santa Margarita River so that its

8   flow on and under the plaintiff's property was not and are not diminished by

9   this defendant's diversions from the Santa Margarita River.

10      10.  The Fallbrook Public Utility District began its diversions of

11   water from the Santa Margarita River with the full knowledge of plaintiff's

12   predecessor in interest. At all times since the diversion of said water by this

13   Defendant commenced, the same has been used by said District not only for

14   domestic purposes and uses but also for the irrigation of lands within the District.

15   That the water requirements of the district have steadily increased with the growth

16   and development of the Fallbrook and surrounding area and its diversions from the

17   Santa Margarita River have increased proportionately. That said increase in

18   water requirements represents both the growth of the orchards from young plantings

19   to maturity and other plantings of new orchards on lands not previously planted

20   as well as the increase in population of the community. The said District has

21   expended large sums of money in purchasing a site on the Santa Margarita River

22   for construction and installation of its pumping plant, for the purchase and

23   installation of said pumping plant, for expansions and additions to said pumping

24   plant in order to increase its capacity, for the purchase of a reservoir site

25   and for the construction of said reservoir, for the construction and installation

26   of a pipe line connecting said pumping plant and said reservoir, and for the

27   construction and installation of a distribution system from said reservoir to the

28   several land owners and water users within the district located within the Santa

29   Margarita River watershed. That all of the lands within the Fallbrook Public

30   Utility District and particularly the 1800 acres thereof within the Santa

31

32   4/  Defendant Fallbrook Public Utility District Exhibit No. K , Copies of
     records of San Diego County Water Authority of Colorado River Water sold
to Fallbrook Public Utility District.

-8-

1276

1  Margarita watershed (except the small portion thereof occupied by the town of

2  Fallbrook) are planted to permanent orchards of citrus, avocados and other

3  varieties of fruit trees which require regular and continuous irrigation for the

4  reason that all of the Fallbrook Public Utility District lies within a semi-arid

5  region where the rainfall alone is insufficient to produce crops. Plaintiff, and

6  its predecessor in interest, at all times had knowledge of the diversions made by

7  the District from the Santa Margarita River and that the water so diverted was

8  at all times being used extensively for irrigation as well as for domestic purposes.

9  The areas reserved by the Fallbrook Public Utility District is approximately 8,000

10  acres. The population of the District dependent wholly or in large part upon the

11  water distributed by the District is approximately 5,000. The aggregate assessed

12  valuation (primarily small farms and homes) is $4,396,690.00.

13          That the Fallbrook community, together with orchards and crops growing

14  upon the lands within the Fallbrook Public Utility District are dependent upon

15  the Santa Margarita River as one of their primary sources of supply of water and

16  would suffer great and irreparable damage, injury and loss if that supply were

17  cut off. All of the foregoing facts and matters are and have been common knowledge

18  and public records and at all times known to the plaintiff and its predecessor

19  in interest and plaintiff is now estopped and barred from objecting to the con-

20  tinued diversion and use of said water for said public purposes, or from com-

21  plaining that such diversions and uses are, or have been, without right or from

22  asking that said diversions be now enjoined.

23          11.  Fallbrook Public Utility District contends that plaintiff's

24  predecessor in interest conveyed in fee simple to and that the Atchison Topeka

25  & Santa Fe Railway Company now owns title in fee simple to a strip of land running

26  northerly and southerly through and across the Rancho Santa Margarita, underlying

27  and occupied by the main line of said Company running from Los Angeles to San

28  Diego and also said plaintiff's predecessor in interest conveyed in fee simple

29  to and the Atchison Topeka and Santa Fe Railway Company now owns title in fee

30  simple to a strip of land beginning at a point on said main line commonly known

31  as Fallbrook Junction running thence easterly and northeasterly through and

32  across said Rancho Santa Margarita to Fallbrook, California and underlying and

-9-

1277

1    occupied by said Fallbrook branch line.  That said transfer and conveyance by

2    plaintiff's predecessor in interest to said Atchison, Topeka & Santa Fe Railway

3    Company of said strips of land constituted a severance of a large portion of said

4    Rancho Santa Margarita from the Santa Margarita River so that the portion thereof

5    lying southerly and easterly of said Fallbrook branch line was and is no longer

6    in contact with the Santa Margarita River and does not have riparian rights in

7    and to the waters of said river and the portion westerly of said main line was

8    and is no longer in contact with that portion easterly thereof and is not entitled

9    to water produced on said easterly portion.

10       12.  Fallbrook Public Utility District contends that any shortage of

11   water which may have been experienced or suffered by plaintiff in the supply to

12   which it may have been entitled from the Santa Margarita River was not caused by

13   diversions made by this defendant but was the result of plaintiff's own excessive

14   and unreasonable use of the waters of the said river and its mismanagement and

15   misuse of its wells and the underground basins in which the same are located.

16       13.  This defendant contends that its rights to the waters of the Santa

17   Margarita River under its applications to, and permits from, the State of

18   California are prior to plaintiff's rights

19       (a)  to use any of said waters outside the watershed of the Santa

20            Margarita River

21       (b)  to store any of said water for future use

22       (c)  to use any of said waters for military purposes, to-wit:

23            to supply the domestic, municipal and quasi-municipal requirements

24            of its armed forces, and the civilian personnel performing duties

25            in connection with said armed forces, and for supplying water for

26            radiators of automobiles, tanks and other self-propelled machines

27            requiring water for their mechanical operation or maintenance.

28       14.  Fallbrook Public Utility District contends that the lands of

29   plaintiff lying within the watershed of DeLuz Creek and Fallbrook Creek respectively,

30   cannot be taken into consideration in determining the amounts of water of the main

31   stream of the Santa Margarita River to which plaintiff may be entitled to have

32   pass the diversion points of this defendant in order to meet plaintiff's riparian

1278

-10-

1  requirements.

2      15.  Fallbrook Public Utility District contends that the State of

3  California has not ceded exclusive jurisdiction over the entire Rancho Santa

4  Margarita to the United States but only to that portion thereof actually occupied

5  and used for military establishments and contends that plaintiff does not have

6  exclusive jurisdiction over several thousand acres which have been continuously

7  leased out by plaintiff to farmers for growing commercial agricultural crops

8  thereon.

9      16.  This defendant contends that plaintiff's rights, as owner of Rancho

10  Santa Margarita, are no greater than those which a private owner of the same

11  property would have and that plaintiff's right to the use of the waters of the

12  Santa Margarita River system are not increased by virtue of plaintiff's sovereignty,

13  military necessity, or by reason of cession of jurisdiction by the State of

14  California over all or any part of said Rancho Santa Margarita.

15      17.  This defendant contends that plaintiff's rights, as owner of riparian

16  lands, are correlative with the rights of all other riparian land owners on the

17  Santa Margarita River system and are limited and restricted to an equitable share

18  only of the flow of the river which may actually be available from day to day,

19  week to week and month to month.

20      18.  This defendant contends that where several parcels of land have

21  been acquired separately and at different times as was the case when plaintiff

22  purchased the Rancho Santa Margarita, each parcel of land must be considered as a

23  separate unit in determining its water rights and that water produced on one parcel

24  of land cannot be transferred or used on another parcel of land to the injury of

25  the rights of third persons, nor can water be demanded for such use and purpose.

26      19.  This defendant contends that the Stipulated Judgment did not give

27  plaintiff's predecessor in interest, nor does it give plaintiff, as against this

28  defendant, any right, title or interest in or to the waters stored and impounded

29  or which may be stored or impounded in the Vail reservoir constructed by the Vail

30  interests in Nigger Canyon and plaintiff does not now own any right, title or

31  interest in or to waters stored or to be stored in said reservoir or in or to

32  waters released therefrom, other than such rights as plaintiff may have as the

1279

-11-

1   owner of riparian lands; that said Stipulated Judgment did not and does not, as

2   against this defendant, increase in any way plaintiff's rights in and to the

3   waters of the Santa Margarita River system or its control over the same beyond

4   and above what plaintiff would have if said Stipulated Judgment had never been

5   made and entered.

6           20.  This defendant desires to supplement and add to its Number 10

7   contention hereinbefore set forth and state these additional facts:  During the

8   year 1941 the United States Navy Department with full knowledge of the fact that

9   Fallbrook Public Utility District was diverting water from the Santa Margarita

10  River as set out in said Contention No. 10, negotiated and executed a Contract

11  with the Fallbrook Public Utility District (San Diego Contract N244s-39380)

12  requiring this district to furnish water service to the Naval Ammunition Depot

13  located on the Rancho Santa Margarita, and pursuant to said Contract, the District

14  at its own expense, installed, constructed and maintained the necessary water

15  facilities for performing said contract, including the necessary diversion works

16  in the Santa Margarita River, pumps, pipelines, service connection line and

17  meter to enable the District to supply the additional quantities of water which

18  it had obligated itself to furnish.  Said contract remained in full force and

19  effect until by letter of February 26, 1947 its cancellation was requested

20  effective February 21st, 1947.  Also with full knowledge of Fallbrook Public

21  Utility District's diversion from the Santa Margarita River, plaintiff requested

22  deliveries of such water, accepted said deliveries and paid for the water

23  furnished to the Federal Housing Unit at Fallbrook, California.*  That plaintiff

24  is now estopped and barred from objecting to the diversions by this defendant

25  from the Santa Margarita River or from complaining thereof or for asking that

26  said diversions be now enjoined.

27          21.  Fallbrook Public Utility District contends that plaintiff is not

28  entitled to raise, as it has attempted to do, the question of the validity of the

29  District's application to appropriate water from the Santa Margarita River or of

30  the permits issued by the State of California therefor since all such permits are
    and because of Plaintiff's stipulation that the rights of the United States are to be
    measured in accordance with the laws of the State of California.

31  issued subject to vested rights.  If it should be held that plaintiff is entitled

32  to attack the validity of District's applications and permits and to raise the

    * That as late as April and May, 1952, Plaintiff requested deliveries from Fallbrook
    Public Utility District and received from it substantial quantities of water for
    use at the U. S. Naval Ammunition Depot which it knew or could have known as being
    diverted from the Santa Margarita River by the District under claim of right.

1  question of due diligence, and if it should be held for any reason that said

2  applications and permits are not valid, then this defendant contends that

3  plaintiff's Application No. 12576, filed June 30th, 1948 is not valid and that

4  plaintiff has failed to exercise due diligence in the prosecution of its said

5  application for 165,000 acre-feet of water per annum from the Santa Margarita

6  River.

7          22.  This defendant has not yet been accorded the privilege or

8  opportunity of having its experts examine, investigate and study the physical

9  and geological formation of the basins or basin underlying that portion of the

10 Rancho Santa Margarita lying within the watershed of the Santa Margarita River.

11 Accordingly, until Fallbrook Public Utility District is otherwise advised by

12 its experts, contends that there exists three separate basins within the Santa

13 Margarita watershed on plaintiff's property.  That said basins have other

14 separate sources of water replenishment other and independent of the main stream

15 of the Santa Margarita River which passes this defendant's points of diversion.

16          23.  Fallbrook Public Utility District contends that the principal use

17 by plaintiff of Santa Margarita River water from the time plaintiff first acquired

18 the Rancho Santa Margarita has been for supplying the domestic, sanitary, culinary

19 and drinking requirements of the armed forces and civilian personnel used in

20 connection therewith stationed from time to time at Camp Joseph H. Pendleton,

21 Naval Ammunition Depot and the United States Naval Hospital.  The numbers of said

22 armed forces and civilian personnel vary from time to time substantially in the

23 manner set out in Defendant's Exhibit No. L , supplied to it by plaintiff and

24 attached hereto and made a part hereof.
           5/

25          24.  Fallbrook Public Utility District disputes the contentions of the

26 United States of America hereinbefore set forth except so far as the same are

27 expressly admitted in the Statement of "Agreed Facts" contained in this order.

28          25.  By consenting to the inclusion of references to plaintiff's exhibits

29 in the Statement of "Agreed Facts" Fallbrook Public Utility District does not

30 agree to the truth, accuracy or correctness of any of the figures, statements or

31

32 5/  Defendant Fallbrook Public Utility District Exhibit No. L - Population
         tabulation.
   * non-riparian uses and purposes, to-wit:

                                                                    1281

representations therein contained or set out, for the reason that this defendant has not been accorded the privilege of seeing, examining or studying the same and accordingly reserves the right to criticize and refute the truth, accuracy and correctness of any of the figures, statements or representations contained in plaintiff's said exhibits.

26. Fallbrook Public Utility District has heretofore objected to the trial of its issues in this action and the determinations of its rights separate from and independent of the trial and determination of the rights of the other defendants in and to the waters of the Santa Margarita River and does not waive its rights to reassert that objection at all proper times and places by participating in this pre-trial conference and in the separate trial under this order.

27. This defendant contends that no further proceedings should be had or taken in this action during the current fiscal year as to do so is and will be in violation of the intentions of Congress and the express prohibition contained in Public Law 495 Chapter 651, 82nd Congress, 2nd Session, Section 208(d) of H.R. 7289 approved by the President of the United States July 10, 1952.

28. This defendant may have other contentions and reserves the right to present additional contentions later and as the trial progresses and the occasion arises justifying the same or shows the necessity therefor.

29. Fallbrook Public Utility District contends that it has acquired a prescriptive right to divert from the Santa Margarita River the quantities of water which it has heretofore diverted from said river in the amounts shown on its Exhibit No. I, being a copy of its record of diversions commencing in 1925. 6/

---

6/ Defendant Fallbrook Public Utility District Exhibit No. I, Statement of Records of Diversions of Water from Santa Margarita River.

1282

-14-

CONTENTIONS OF THE SANTA MARGARITA MUTUAL WATER COMPANY

1. That Plaintiff and its predecessors in interest have not and could not acquire any rights to the use of water of the Santa Margarita River System by prescription or adverse possession as against any defendant or defendants in the above entitled action. That all water which has been extracted or diverted from the Santa Margarita River System by Plaintiff has been diverted, extracted and used downstream from the lands and the point of extraction and diversion of water by all defendants.

2. That the Plaintiff and its predecessors in interest could not acquire any rights to the use of water or to the waters of the Santa Margarita River System by appropriation without complying with the local rules, regulations, customs and the laws of the State of California relative to and governing the appropriation of water then in effect at the time said appropriation was made and perfected.

3. That this action is an action by the Plaintiff to quiet its title to the use of water or waters of the Santa Margarita River System and to have its rights declared and adjudicated by the court and that the Plaintiff must recover upon the strength of its own title and cannot recover on the weakness or weaknesses of the Defendant's title.

4. That the plaintiff has not and could not acquire any greater right to the use of water than that possessed by a private proprietor under the laws of the State of California and that the Plaintiff does not have any rights by virtue of sovereignty, exclusive jurisdiction, or by reason of the cession of jurisdiction by the State of California to use waters of the Santa Margarita River System for non-riparian purposes or on non-riparian lands and that Plaintiff is limited to the place of use of said waters and the quantities of said waters to the same extent as a private land owner.

5. In an action to quiet title to the waters on a non-navigable stream the question of exclusive jurisdiction or sovereignty can neither enlarge or curtail the rights of the United States and that any and all statements contained in the Complaint relative to exclusive jurisdiction should be stricken and should not be considered by the court.

1283

-1-

6. That the safe yield of the basin or basins lying within the watershed of the Santa Margarita River and within the boundaries of Camp Joseph H. Pendleton, the U. S. Naval Ammunition Depot, and of the U. S. Naval Hospital has always exceeded the quantities of water put to beneficial use by the Plaintiff and its predecessors in interest on the lands overlying said basins and on the lands lying within the watershed of the Santa Margarita River.

7. That the Plaintiff has no right as against a riparian owner or a prior appropriator to extract water from the basin or basins referred to as the Upper or O'Neill Basin, the Chappo or Home Ranch Basin, or Ysidora Basin for beneficial use on lands which do not overlie said basins.

8. That the underground basin or basins located within the watershed of the Santa Margarita River and within the boundaries of Camp Joseph H. Pendleton, the U. S. Naval Ammunition Depot and the U. S. Naval Hospital are not supported by the surface or sub-surface flow of the Santa Margarita River.

9. That the lands lying within the watershed of DeLuz Creek and Fallbrook Creek do not constitute and are not a portion or part of the watershed of the Santa Margarita River in considering the riparian requirements of Camp Joseph H. Pendleton, the U. S. Naval Ammunition Depot and the U. S. Naval Hospital, and the correlative rights and the needs of upstream owners and appropriators diverting upstream from the junction of said tributaries of the Santa Margarita River.

10. That at all times the flow of the Santa Margarita River in the state of nature is and has been sufficient to supply all waters required by the Plaintiff for beneficial use on its riparian lands.

11. That the Plaintiff and its predecessors in interest have not acquired by prescription or appropriation the right to divert from the Santa Margarita River waters for storage either underground or surface, and has not acquired the right to store waters in Lake O'Neill, an artificial reservoir.

12. That the Plaintiff is not entitled to any greater quantity of water by virtue of ownership of land which it has dedicated to and is using exclusively for Military purposes than it can put to beneficial use of those lands for Military purposes and the fact that because lands might be used for agricultural purposes cannot increase or decrease the quantity of water to which Plaintiff is

1284

1  entitled by reason of the ownership of said lands so long as those lands are

2  used exclusively for Military purposes.

3      13.  Quantities of water to which Plaintiff is entitled by virtue of

4  its riparian ownership on any parcel of land for which it has no present

5  beneficial use on said parcel cannot be used to supplement the needs of Plaintiff

6  on any other parcel of land which it may own.

7      14.  Plaintiff as a riparian owner only has a correlative right to the

8  use of waters of the Santa Margarita River System and the quantity of waters

9  which Plaintiff is entitled to use varies from day to day, from week to week,

10  from month to month, and from year to year.

11      15.  That Plaintiff does not have by virtue of its riparian ownership

12  of lands which are riparian to the Santa Margarita River System the right to

13  divert, impound, and store, the surface flow or the subsurface flow of the Santa

14  Margarita River and that it has not acquired any rights by prescription, adverse

15  possession, or appropriation to divert, store, or impound the waters of the Santa

16  Margarita River System.

17      16.  That the court in this proceeding cannot determine or adjudicate

18  the legality or sufficiency of any application filed with the State of California,

19  Department of Public Works, Division of Water Resources, State Engineer, to

20  appropriate water of the Santa Margarita River System or determine the sufficiency

21  or regularity of any proceedings pursuant thereto, but that this court is limited

22  to determining whether there are waters of the Santa Margarita River System subject

23  to and which could be used under and pursuant to any permit or license which might

24  be issued or granted by the State of California and the priority of any and all

25  permits and licenses which have been or might be issued by the State of California

26  pursuant to existing applications to appropriate waters of the Santa Margarita

27  River System.

28      17.  That the stipulated judgment entered into by the Plaintiff's

29  Predecessor in Interest and the Vail Interests which is attached to Plaintiff's

30  Complaint as Exhibit A and the stipulation heretofore, by order of the Court

31  filed on July 8, 1952 and which is set forth in the agreed statement of facts is

32  incompetent, irrelevant, and immaterial and cannot tend to prove or disprove any

1285

-3-

1    of the issues between the Plaintiff and the Defendant, Santa Margarita Mutual

2    Water Company and that the controversy between the Defendant, Santa Margarita

3    Mutual Water Company, and the Plaintiff must be determined and adjudicated as

4    though said stipulated judgment and said stipulation had never been executed.

5    18.   That Plaintiff cannot acquire any right, title or interest, claim,

6    lien, or demand in or to any of the waters in the Santa Margarita River which

7    may be stored, impounded, or collected in the Nigger Canyon Reservoir by the

8    Vail Defendants as against the Defendant Santa Margarita Mutual Water Company.

9    19.   That Plaintiff has no right by virtue of the terms of the

10   stipulated judgment attached to Plaintiff's Complaint as Exhibit A or by reason

11   of the stipulation entered into by the Defendant Vails and the Plaintiff and

12   approved by an order of this court of July 8, 1952 to use water of the Santa

13   Margarita River System outside the watershed of the Santa Margarita River.

14   20.   That the acreage which can be irrigated by the Vails, Defendants,

15   is not limited by the amount of water available to said Defendants but is limited

16   and controlled by the terms of an agreement entered into between the Plaintiff's

17   predecessors in interest and said Vail Defendants and which is attached to

18   Plaintiff's Complaint as Exhibit A.

19   21.   That any and all rights which the Vail Defendants may have to

20   impound, divert, and store water of the Santa Margarita River System and their

21   rights to use said water and the lands upon which said water may be used are

22   controlled by the terms of the permit issued by the State of California, Department

23   of Public Works, Division of Water Resources, State Engineer.  And that neither

24   said Vail Defendants or the Plaintiff in this action has acquired any rights to

25   store, divert, or impound any waters of the Santa Margarita River System at the

26   Nigger Canyon Reservoir site for use or to use any of the water so stored or

27   impounded on or for the benefit of Camp Joseph H. Pendleton, U. S. Naval

28   Ammunition Depot, or the U. S. Naval Hospital.

29   22.   From time immemorial large quantities of the surface and subsurface

30   flow of the Santa Margarita River have been discharged into the Pacific Ocean and

31   thereby lost resulting in an economic loss of water of the Santa Margarita River.

32   23.   That the principal sources of water of the Santa Margarita River

1286

1 System available to the Plaintiff during the dry season of the year is obtained
2 from the underground water basins herein referred to as the Upper or O'Neill
3 Basin, the Chappo or Home Ranch Basin and the Ysidora Basin.  That no waters
4 are available or can be diverted during the dry seasons from either the surface
5 or subsurface flow of the Santa Margarita River other than those flood waters of
6 the Santa Margarita River which Plaintiff has diverted and stored in Lake O'Neill,
7 an artificial reservoir.

8     24.  The Plaintiff cannot and has not put to beneficial use more than
9 1200 acre feet per year on lands lying within the watershed of the Santa Margarita
10 River.

11     25.  That in the controversy between the United States of America and
12 the Defendant Santa Margarita Mutual Water Company, the Fallbrook Public Utility
13 District, and the State of California in determining whether there is a surplus
14 available for appropriation that the acreage of riparian land owned by the Vail
15 Defendants and the quantity of water which can be put to beneficial use on said
16 land is immaterial, incompetent, and irrelevant because the quantities of water
17 available to said Vail Defendants and which can be put to use by them is limited
18 by the terms of the stipulated judgment attached to Plaintiff's Complaint as
19 Exhibit A.

20     26.  That the flood waters of the Santa Margarita River which cannot
21 be put to beneficial use by the riparian owners without cyclic storage are available
22 for appropriation under the laws of the State of California.

23     27.  That a military use is not a riparian use and that waters used for
24 military purposes on Camp Joseph H. Pendleton and U. S. Naval Ammunition Depot
25 are not used by virtue of the riparian ownership of the lands owned by Plaintiff
26 and that if the court should decide that a military use is a riparian use then a
27 use for military purposes is junior and subsequent to the use of water of said
28 river for agricultural, domestic, and livestock purposes.

29     28.  That no portion of the lands being occupied by the U. S. Naval
30 Ammunition Depot are used for agricultural purposes.

31     29.  That no portion of the lands located within the watershed of the
32 Santa Margarita River and within the boundaries of Camp Joseph H. Pendleton are

1287

1   used or devoted to agricultural purposes.

2   　　　30. That the lands located within the area of Camp Joseph H. Pendleton

3   and within the watershed of the Santa Margarita River do not derive any substantial

4   benefit from sub-irrigation or from being overflowed by flood waters during

5   periods of high precipitation.

6   　　　31. That there are less than 12,000 acres of land lying within the

7   watershed of the Santa Margarita River and within the boundaries of Camp Joseph

8   H. Pendleton, the U. S. Naval Ammunition Depot and the U. S. Naval Hospital

9   which are susceptible of practical and profitable irrigation.

10   　　　32. That the lands within the watershed of Windmill Creek and Palm

11   Canyon are within the watershed of the San Luis Rey River and not within the

12   watershed of the Santa Margarita River.

13   　　　33. That the reasonable requirements per man per day for personnel

14   within Camp Joseph H. Pendleton, the U. S. Naval Ammunition Depot is 75 gallons

15   of water per day.

16   　　　34. Insofar as any contentions of the United States of America conflict

17   with the terms of the Stipulation entered into between the State of California

18   and the United States of America, the United States is precluded from introducing

19   any evidence or raising any legal contentions that would be at variance with that

20   Stipulation.

21   　　　35. Santa Margarita Mutual Water Company adopts by reference Contentions

22   No. 1 to 8, inclusive, of the State of California and the following Contentions

23   of the Fallbrook Public Utility District:  Nos. 1, 2, 4, 5, 7, 8, 11, 12, 13, 14,

24   15, 16, 17, 18, 19, 21, 22, 24, 25 and 26.

25   　　　36. The United States of America filed a protest to the applications

26   to appropriate water filed by the Santa Margarita Mutual Water Company, a

27   corporation, with the State of California, Department of Public Works, Division

28   of Water Resources, State Engineer, which protest has never been withdrawn or

29   dismissed and is still pending.

30   　　　37. On October 4, 1946, the defendant Santa Margarita Mutual Water

31   Company, a corporation, filed a bona fide application with the Division of Water

32   Resources, Department of Public Works of the State of California, being

1288

1   Application No. 11578, and that said company was not and has never been notified

2   by the Division of Water Resources of any defect in said application and that said

3   company within the time as extended by the Division of Water Resources completed

4   said application.  That said application is now pending before the Division of

5   Water Resources of the State of California, is in good standing and has never

6   been withdrawn, revoked or dismissed.

7       38.  On November 12, 1947, the defendant Santa Margarita Mutual Water

8   Company, a corporation, filed a bona fide application with the Division of Water

9   Resources, Department of Public Works of the State of California, being

10   Application No. 12152, and that said company was not and has never been notified

11   by the Division of Water Resources of any defect in said application and that said

12   company within the time as extended by the Division of Water Resources completed

13   said application and that notice of said application was duly and regularly

14   published pursuant to the rules and regulations of the Division of Water Resources

15   of the State of California. 1/       That said application is now pending before the

16   Division of Water Resources of the State of California, is in good standing and

17   has never been withdrawn, revoked or dismissed.

18       39.  That a notice to appropriate water filed with the State of

19   California, Department of Public Works, Division of Water Resources, State

20   Engineer, creates a property right under the laws of the State of California and

21   under the laws of the United States of America sufficient to justify the

22   applicant to institute and maintain a quiet title suit to the waters of a river

23   against a riparian owner and appropriator or a person who has gained the right

24   to use the waters of a stream by virtue of prescription or adverse possession.

25       40.  That an appropriator or a riparian owner or a user who has

26   acquired rights by adverse possession or prescription is not in a position and

27   cannot attack the validity of an application filed with the Division of Water

28   Resources of the State of California prior to the issuance of a permit and then

29   only if they have filed a protest to the granting of said application within the

30

31   1/  Defendant Santa Margarita Mutual Water Company Exhibit No. D, Affidavit of
32       publication of notice of application by the Fallbrook Enterprise; Defendant
     Santa Margarita Mutual Water Company Exhibit No. E, Notice of application and
     affidavit of publication in the Elsinore Valley Sun.

1289

1  period of time designated by the Division of Water Resources and that prior to the

2  issuance of said permit, no attack can be made on the feasibility of the project,

3  the economic soundness of the project or the place of use of the water or the

4  quantity of water which can be put to beneficial use.

5      41.  The Congress of the United States of America has expressly

6  subjected itself in respect to the use of waters on property belonging to the

7  United States of America to the local rules, regulations and laws of the State of

8  California.

9      42.  That the protests filed with the Division of Water Resources by

10 the United States of America protesting granting of a permit or permits to the

11 Santa Margarita Mutual Water Company were not filed within the time specified

12 by the Division of Water Resources of the State of California.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

-8-

1290

CONTENTIONS OF THE STATE OF CALIFORNIA

1. The United States has only such a limited jurisdiction over the military reservations in controversy as has been ceded to the United States under the laws of the State of California.

2. The fact that the United States has been ceded certain limited jurisdiction over the military reservations in controversy does not entitle the United States to use the water of the Santa Margarita River system which it has the right to use, in any other manner, on any other place, or for any other purpose than that to which a private individual or corporation would be entitled, if it owned the same land and water rights as the United States does own, or than the United States would have had in the absence of such cession.

3. Specifically, the fact of such cession of a limited jurisdiction does not entitle the United States to use water, which it is entitled to use as a riparian, upon non-riparian lands.

4. The fact of such cession of limited jurisdiction is immaterial to any issue in the cause.

5. As provided in Section 102 of the Water Code of California, intervenor State of California is the absolute owner of all water within the State, provided that the right to use water may be acquired in any manner recognized by the law of California. Intervenor is also the owner of the right of use of all water within the State to which other rights of use do not exist. Intervenor is also owner of the right of reversion of any rights of use of such water which may be forfeited or otherwise terminated for non-use or otherwise.

6. The public interests and welfare require that in the decree herein the Court define and declare each and every water right involved herein as against each and every other water right herein involved.

7. Under the law of California, among other things;

    (a) Water rights of riparians inter se are correlative.

    (b) Water can be demanded under a riparian right only for use on riparian land.

    (c) Water can be demanded under a riparian right only for proper riparian uses and purposes.

1291

-1-



    (1) Storage of water is not a proper riparian use.

    (2) Military use is not a proper riparian use.

  (d) One cannot obtain a prescriptive right as against users upstream from him.

  (e) An appropriator can take and use any water belonging to riparians, but not currently used by them.

  (f) One cannot, since the effective date of the Water Commission Act in 1914, obtain a water right by use alone.

  (g) The stipulated judgment between Rancho Santa Margarita, Inc. and the Vails has no force or effect except as between the parties to that case and those in privity with them, and consequently is not admissible in evidence as against the present defendants.

  8. The issues in this case are defined and limited in conformity with the statements contained in the stipulation made between the State of California and the United States of America, dated November 29, 1951.

  9. If it develops from the evidence that a "physical solution" which will reasonably and fairly protect the water supply to which plaintiff is entitled as a riparian, or otherwise in priority to defendants, can be found and practicably effected at the expense of defendant appropriators, then plaintiff is not entitled to an injunction against such defendant appropriators restraining them from using, to the extent of their lawful appropriative rights, waters surplus to plaintiff's riparian or other prior rights.  The term "physical solution", as used in this paragraph has the meaning in which it is used in the decisions in water cases of the Supreme Court of California since the year 1928.

1292

FACTS DISPUTED BY THE UNITED STATES OF AMERICA

The United States of America denies:

1. That there is water in the Santa Margarita River available for appropriation or exportation from the watershed of the Santa Margarita River system by the defendants Santa Margarita Mutual Water Company or the Fallbrook Public Utility District.

2. That the Santa Margarita River is or ever has been one of the principal sources of supply of water for the lands within the Fallbrook Public Utility District and for the people residing within that district.

3. That the Fallbrook Public Utility District has since the year 1922 supplied irrigation and domestic water from the Santa Margarita River or from any other source to the lands located within its boundaries and to the people living therein but rather that it was not until the year 1943 that the Fallbrook Public Utility District delivered any water from the Santa Margarita River and that water was diverted pursuant to a gratuitous and revocable license for 10 miner's inches solely for domestic purposes from the United States of America.

4. That the Fallbrook Public Utility District can exercise any of its alleged rights in the Santa Margarita River without encroaching upon the vested rights to the use of water of the United States in that stream.

5. That the Fallbrook Public Utility District can divert during the irrigation season from the normal flow of the Santa Margarita River without encroaching upon the vested rights to the use of water of the United States of America including but not limited to the three cubic feet per second of water that the Vail Estate is obligated to deliver

-1-

(Continued)   THE UNITED STATES DENIES:

1.     to the United States pursuant to and by reason of the

2.     Stipulated Judgment, Exhibit A of the complaint.

6.     That the Fallbrook Public Utility District has diverted
       1,800 acre feet of water per annum from the Santa Margarita
       River and asserts that such quantities of water as were
       diverted by that district were those which would have
       descended to the United States were it not for the
       diversion of it by the Fallbrook Public Utility District.

7.     That the Fallbrook Public Utility District has exercised
       due diligence in the prosecution of its alleged claim of
       right to impound 10,000 acre feet of the Santa Margarita
       River pursuant to Permit No. 8511, the validity of which
       is denied by the United States.

8.     That the Fallbrook Public Utility District has exercised
       due diligence in the prosecution of its alleged claim of
       right to impound 10,000 acre feet of the Santa Margarita
       River and Rainbow Creek pursuant to Application No. 12178,
       the validity of which is denied by the United States.

9.     That the Fallbrook Public Utility District has exercised
       due diligence in the prosecution of its alleged claim of
       right to impound 10,000 acre feet of the Santa Margarita
       River and Sandia Creek pursuant to Application No. 12179,
       the validity of which is denied by the United States.

10.    That the Fallbrook Public Utility District could exercise
       the alleged right to divert from the Santa Margarita River
       2-1/2 second feet of water or could construct the dam which
       it allegedly proposes to construct to impound 10,000 acre
       feet of water or exercise the alleged rights described in
       its Applications No. 12178 and No. 12179 without:

       a.  Encroaching upon the riparian rights of the United
           States, including the rights historically enjoyed
           by the United States and its predecessors in interest

1294

-2-

(Continued)   THE UNITED STATES DENIES:

of having the surface area of the basin under-
lying Camp Pendleton and the other military
establishments naturally irrigated by overflow
from the Santa Margarita River and subirrigated
by the high water table of the basin last
mentioned;

b. Encroaching upon the right of the United States
to have recharged the basin underlying the
military establishments in question;

c. Encroaching upon the right to the use of water
provided for in the Stipulated Judgment, in-
cluding but not limited to the three second
feet which the Vail Estate delivers pursuant
to that document; and

d. Encroaching upon the rights to divert water from
the watershed of the Santa Margarita River which
have been historically exercised by the United
States of America and its predecessors in
interest.

11. That the Santa Margarita Mutual Water Company could divert
water in accordance with its alleged plans without
encroaching upon the vested rights to the use of water
of the United States mentioned above in connection with
the encroachments and threatened encroachments by the
Fallbrook Public Utility District.

12. That the Santa Margarita Mutual Water Company could
practically or economically carry out what counsel for the
Fallbrook Public Utility District has referred to as the
Mutual Company's "cuckoo bird theory" of seeking to
appropriate water out of the Vail Reservoir and the
allegedly proposed dam of the Fallbrook Public Utility
District.

1295

-3-

150

(continued)   THE UNITED STATES DENIES:

13. That the Santa Margarita Mutual Water Company is any more than a paper corporation claiming paper rights to the use of water, devoid of any structures or physical assets essential to effectuate the alleged plans.

14. That the defendants have facilities with which to divert from the Santa Margarita River or apply to a beneficial use the water for which they are claiming rights.

15. That either the Santa Margarita Mutual Water Company or the Fallbrook Public Utility District have or are able to raise the funds requisite to construct the facilities which would be required to impound, divert, distribute or utilize the quantities of water for which they are asserting rights in the Santa Margarita River.

16. That the lands within the alleged service areas of the Santa Margarita Mutual Water Company or the Fallbrook Public Utility District are susceptible of practicable or profitable irrigation.

17. That either the Santa Margarita Mutual Water Company or the Fallbrook Public Utility District have plans for the impounding, diversion, distribution or utilization of water from the Santa Margarita River which are physically or economically feasible.

18. That either the Santa Margarita Mutual Water Company or the Fallbrook Public Utility District can impound, divert, distribute or utilize water from the Santa Margarita River without encroaching upon or impairing the rights to the use of water owned by the United States of America and the subject matter of this litigation.

19. That the Fallbrook Public Utility District or the Santa Margarita Mutual Water Company could construct or operate a system for impounding, diverting or distributing the water for which they are claiming rights from the Santa

(Continued)   THE UNITED STATES DENIES:

Margarita River without financing from the Federal Government and asserts that no such funds are available.

20. That either the Santa Margarita Mutual Water Company or Fallbrook Public Utility District have in connection with any claims for which they are asserting rights to the use of water prosecuted the construction of their alleged projects with due diligence.

21. That there are 1,800 acres of land or any other acreage within the boundaries of the Fallbrook Public Utility District which are within the watershed of the Santa Margarita River or that any of the waters used by that District enter the watershed of the Santa Margarita River.

22. That the State of California has a property interest of any kind or character in the Santa Margarita River which is subject to determination or adjudication in this proceeding.

23. That the Santa Margarita Mutual Water Company has an established service area and the United States of America alleges that the service area which it claims conflicts with the service area of another corporation which claims the authority to serve the same area or a part of the same area claimed by the defendant in question and further alleges that the defendant in question has yet to determine the area which it proposes to serve or the source of water upon which it will rely.

1297

132

E X H I B I T S

U.S.A. - Plaintiff's Exhibit No. 1

       Letter, dated November 14, 1950, from Dan A.
       Kimball, then Acting Secretary of the Navy,
       requesting the Attorney General to take action
       to protect the rights of the United States of
       America in the Santa Margarita River.

U.S.A. - Plaintiff's Exhibit No. 2

       Map of the drainage area of the Santa Margarita
       River, disclosing the Santa Margarita River,
       Murrieta Creek, Temecula Creek and other
       affluents of the stream; the location of the
       military establishments involved in the litigation
       and the location of the Vail properties.

U.S.A. - Plaintiff's Exhibit No. 3

       Climatological Data, California Section, U. S.
       Department of Commerce, Weather Bureau.

U.S.A. - Plaintiff's Exhibit No. 4

       Application of the Vail Company to appropriate
       waters of Temecula Creek, Application No. 11518
       and the permit granted, and Permit No. 7032
       granting the application for the construction
       of the dam for the Vail Reservoir.

U.S.A. - Plaintiff's Exhibit No. 5

       Capacity and area curve for Nigger Canyon (Vail)
       Reservoir.

U.S.A. - Plaintiff's Exhibit No. 6

       Vail Dam and Reservoir data; elevation, capacity
       and related information.

U.S.A. - Plaintiff's Exhibit No. 7

       Tabulation respecting the acre feet in Vail Lake
       from December 1948 to and including April, 1952.

1298

1553

U.S.A. – Plaintiff's Exhibit No. 8

        Map disclosing the geology of the Santa Margarita-Temecula River watershed, dated January 1952, Office of Ground Water Resources, Camp Pendleton, California.

U.S.A. – Plaintiff's Exhibit No. 9

        **Profile of the Santa Margarita River, disclosing elevation and location of principal basins beneath Temecula Creek and Santa Margarita River, entitled "Geologic Cross Section A-A' along the Santa Margarita-Temecula River," dated 10 July 1952, Office of Ground Water Resources, Camp Pendleton, California.**

U.S.A. – Plaintiff's Exhibit No. 10

        Map of lower Santa Margarita River Valley, Camp Joseph H. Pendleton, California, showing ground-water storage units, general geology, and location of wells and stream-gaging stations, compiled November 1951 by U.S.G.S.

U.S.A. – Plaintiff's Exhibit No. 11

        Geologic Section A-A' through the lower Santa Margarita River Valley, showing unconsolidated deposits and water-level profiles, United States Geologic Survey.

U.S.A. – Plaintiff's Exhibit No. 12

        Isopach map of alluvial deposits of a portion of the Santa Margarita River within Camp Joseph H. Pendleton, San Diego County, California, Office of Ground Water Resources, Camp Pendleton, dated March 20, 1952.

U.S.A. – Plaintiff's Exhibit No. 13

        Bar graph disclosing specific yield of materials of wells within the basin underlying Camp Joseph H. Pendleton by Office of Ground Water Resources, Camp Pendleton, dated March 1952.

U.S.A. – Plaintiff's Exhibit No. 14

        U.S.G.S. records, Water Supply Papers for the Santa Margarita River System.

-2-

1299

U.S.A. – Plaintiff's Exhibit No. 15

Certified copies of certain documents involved in
the acquisition of the 9,147.55 acres of land more
or less comprising the United States Naval Ammunition
Depot.

U.S.A. – Plaintiff's Exhibit No. 16

Certified copies of certain documents involved in
the acquisition of the 123,620 acres of land more
or less comprising Camp Joseph H. Pendleton Marine
Corps Training Base and United States Naval Hospital.

U.S.A. – Plaintiff's Exhibit No. 17

Certified copies of certain documents involved in the
acquisition of the 1,676.58 acres of land more or less;
112.11 acres of land and 1574.61 acres of the public
domain lands comprising part of Camp Joseph H. Pendleton.

U.S.A. – Plaintiff's Exhibit No. 18

Letter of January 12, 1943 from James Forrestal,
Acting Secretary of the Navy, to Governor Earl Warren
accepting the cession of exclusive jurisdiction over
the United States Naval Ammunition Depot.

U.S.A. – Plaintiff's Exhibit No. 19

Letter of September 8, 1943 from James Forrestal,
Acting Secretary of the Navy, to Governor Earl Warren
accepting the cession of exclusive jurisdiction over
Camp Joseph H. Pendleton and the United States Naval
Hospital.

U.S.A. – Plaintiff's Exhibit No. 20

Letter of February 18, 1944 from A. L. Gates, Acting
Secretary of the Navy, to Governor Earl Warren
accepting the cession of exclusive jurisdiction
over 1676.58 acres of land in connection with Camp
Joseph H. Pendleton.

U.S.A. – Plaintiff's Exhibit No. 21

Uncontrolled Mosaic, Camp Pendleton, Calif.  Photo-
graphed by Patrol Squadron 61 – 1951.

U.S.A. – Plaintiff's Exhibit No. 22

Map disclosing location of all structures – United
States Navy Hydrographic Office, map of Camp Joseph
H. Pendleton, 1st Edition, March 1952.

1300

1495

U.S.A. - Plaintiff's Exhibit No. 23

    Land classification map of the Santa Margarita
watershed within Camp Joseph H. Pendleton, Office
of Ground Water Resources, Camp Pendleton.

U.S.A. - Plaintiff's Exhibit No. 24

    Land utilization map of Santa Margarita watershed
within Camp Joseph H. Pendleton, Office of Ground
Water Resources, Camp Pendleton.

U.S.A. - Plaintiff's Exhibit No. 25

    Soil survey field sheets, soil survey legend, of
Camp Joseph H. Pendleton, dated June 1952.

U.S.A. - Plaintiff's Exhibit No. 26

    Tabulation in acre feet of water pumped at Camp
Pendleton, entitled "Camp Pendleton Total Pumps,
Camp Pendleton Records Diversions."

U.S.A. - Plaintiff's Exhibit No. 27

    Tabulation in acre feet of water pumped from
Ysidora area for agricultural purposes, entitled
"Ysidora Mesa Pumps, Camp Pendleton Records
Diversions."

U.S.A. - Plaintiff's Exhibit No. 28

    Tabulation of monthly acre feet use of water for
irrigation - Vail Ranch, entitled "Use of water for
irrigation - Vail Ranch - from ranch records by
H. M. Hall."

U.S.A. - Plaintiff's Exhibit No. 29

    Tabulation Lake O'Neill Reservoir storage records.

U.S.A. - Plaintiff's Exhibit No. 30

    Area and capacity curve of Lake O'Neill, Camp Joseph
H. Pendleton, Public Works Office, P W drawing # 1167CP.

U.S.A. - Plaintiff's Exhibit No. 31

    Map of Pauba Ranch and vicinity, Riverside County,
California.

U.S.A. -Plaintiff's Exhibit No. 32

       Map of soil and climatic surveys of the Pauba Ranch,
       Riverside County, California.


U.S.A. -Plaintiff's Exhibit No. 33

       Tabulation and analysis in re crop adaptation of parts
       of Pauba, Temecula, Little Temecula and Santa Rosa
       Ranchos.


U.S.A. -Plaintiff's Exhibit No. 34

       Certified copy of Revocable License and Permit to use
       water from the Santa Margarita River from Rancho
       Santa Margarita to the Fallbrook Public Utility
       District; Letter of May 24, 1948 revoking it.


U.S.A. -Plaintiff's Exhibit No. 35

       Relief map from the office of Major General Oliver P.
       Smith will be used throughout for location and general
       reference.  This map is entitled "Photo Surfaced Terrain
       Model 16 DP3, U.S. Marine Corps Reservation, Camp Joseph H.
       Pendleton, Oceanside, Calif." and was prepared January 1951
       by U.S. Navy Special Devices Center, Port Washington, L.I.,
       N. Y.

1302

# E X H I B I T S

## FALLBROOK PUBLIC UTILITY DISTRICT

Exhibit No. A — Organizational documents, including State of California certified statement as to current standing.

Exhibit No. B — Application No. 11586 to appropriate water.

Exhibit No. C — Permit No. 7033 signed by Edward Hyatt, State Engineer on February 18, 1948.

Exhibit No. D — Application No. 11587 to appropriate water.

Exhibit No. E — Permit No. 8511 signed by A. D. Edmonston, State Engineer on April 23, 1951.

Exhibit No. F — Application No. 12178 to appropriate water.

Exhibit No. G — Application No. 12179 to appropriate water.

Exhibit No. H — Application No. 12576 of United States of America to appropriate water.

Exhibit No. I — Statement of Records of Diversions of Water from Santa Margarita River.

Exhibit No. J — Statement of Records of Diversions of Water from the San Luis Rey River.

Exhibit No. K — Copies of records of San Diego County Water Authority of Colorado River Water sold to Fallbrook Public Utility District.

Exhibit No. L — Population tabulation.

E X H I B I T S

SANTA MARGARITA MUTUAL WATER COMPANY

Exhibit No. A – Organizational documents, including State
of California certified statement as to
current standing.

Exhibit No. B – Application No. 11570 to appropriate water.

Exhibit No. C – Application No. 12152 to appropriate water.

Exhibit No. D – Affidavit of publication of notice of
application by the Fallbrook Enterprise.

Exhibit No. E – Notice of application and affidavit of
publication in the Elsinore Valley Sun.

-1-

1304

## GENERAL STIPULATIONS

1.  It is understood and agreed that the defendants or any of them,
shall have the right to present other contentions in addition to those contained
in this Order and to present responses to the contentions of the other party,
if such be deemed desirable by that party.  The same privilege will be accorded
the United States.

2.  It is understood and agreed between counsel for the Fallbrook Public
Utility District, the Santa Margarita Mutual Water Company, the State of California
and the United States of America that the United States of America has fee simple
title to the lands comprising the military establishments (Camp Pendleton, United
States Naval Ammunition Depot, United States Naval Hospital) and that a portion
of the land are riparian in character but counsel for the defendants and the
defendant in intervention do not agree in regard to the total or location of the
riparian acreage claimed by the United States.  It is likewise understood and
agreed between counsel for the Fallbrook Public Utility District, the Santa
Margarita Mutual Water Company, the State of California and the United States of
America that the Vail Estate is the owner in fee simple title of lands located
in the watershed of the Santa Margarita River some of which is riparian to that
river but counsel for the defendants and the defendant in intervention do not
agree in regard to the total or location of that riparian acreage.

3.  Thirty days prior to trial, the Plaintiff will furnish the Defendants
with a statement of the quantities of water which have been used by the United
States of America and its predecessors in interest outside the watershed of the
Santa Margarita River; the several places of use; the periods of time during which

1305

1  said water was so used and the purposes for which said water was used.

2  4.  It is understood and agreed by and between the parties hereto that

3  since all the exhibits have not yet been delivered to the respective parties,

4  that as to each exhibit delivered, and to be delivered hereunder, when delivered,

5  the party receiving it reserves the right to object to the admissibility of the

6  exhibit.  Each of the parties shall have the right to dispute or question the

7  truth, accuracy or correctness of any of the exhibits of another party or any of

8  the figures, statements or representations therein contained and shall have the

9  right to present evidence and exhibits to prove facts to the contrary to those

10  contained in said exhibits or in addition thereto.  Any party hereto shall have the

11  right to demand the production in court of the person or persons who prepared any

12  exhibits for cross-examination by giving the opposite party written notice within

13  thirty days after receiving the exhibit.

14  5.  The defendants by agreeing that the Court has jurisdiction of the

15  above entitled action by reason of the express declaration of Congress do not

16  concede that this Court has jurisdiction to pass on or adjudicate the legality

17  or validity of any permit or license which may be issued by the Division of

18  Water Resources of the State of California pursuant to the applications filed

19  with said Division by the defendants either prior to or subsequent to the

20  issuance of such permits or licenses.  The United States asserts that this

21  Court has jurisdiction to adjudicate the questions referred to in the preceding

22  sentence.

- - - - - - - -

24  DEFINITIONS

- - - - - - - - -

26  1.  The phrase "intermittent stream" as used herein is defined to mean

27  a stream, the flow of which in the state of nature is interrupted either from

28  time to time during the year or at various places along its course, or both.

29  2.  The phrase "in the state of nature" as used herein with respect to

30  natural streams or basins is defined to refer to a period of time before such

31  streams or basins were affected by the activities of man.

32  3.  The term "historically", as used herein, is defined to mean "at

1306

-2-

GPO  16-80985-1

1  some time or times in the past."

2

3  DATED this ___25___ day of August, 1952

4

5

6                              UNITED STATES OF AMERICA

7

8                              William H. Veeder
9                              Special Assistant to the Attorney General

10

11                             David H. Agnew
12                             Attorney, Department of the Navy

13

14                             FALLBROOK PUBLIC UTILITY DISTRICT

15

16                             Phil D. Swing, Attorney for Fallbrook
17                                Public Utility District

18                             SANTA MARGARITA MUTUAL WATER COMPANY

19

20                             W. B. Dennis, Attorney for Santa
21                                Margarita Mutual Water Company

22                             STATE OF CALIFORNIA

23

24                             Arvin B. Shaw, Jr., Assistant Attorney
25                                General, for the State of California,
                                  Defendant in Intervention

26

27

28

29

30

31

32

                                    -3-

                                                    1307