(SPACE BELOW FOR FILING STAMP ONLY)

**FILED**

OCT 10 1952

EDMUND L. SMITH, Clerk
By _Cassidy F. Vila_
                    **Deputy Clerk**

1
2

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA
FRANKLIN 9-1191

3
4
5   Attorneys for Defendant FALLBROOK PUBLIC UTILITY DISTRICT
6
7
8               IN THE UNITED STATES DISTRICT COURT
9          IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA
10                      SOUTHERN DIVISION

| | |
|---|---|
| 11  UNITED STATES OF AMERICA, ) | No. 1247-SD Civil |
| 12                   Plaintiff, ) | AFFIDAVIT OF PHIL D. SWING |
| 13        vs. ) | IN SUPPORT OF MOTION OF |
|  | FALLBROOK PUBLIC UTILITY |
| 14  FALLBROOK PUBLIC UTILITY DISTRICT, ) | DISTRICT FOR CONTINUANCE |
| 15  a public service corporation of ) | |
|    the State of California, et al., ) | |
| 16                   Defendants ) | |

17  ─────────────────────────────────

18  STATE OF CALIFORNIA )
                           ) ss
19  COUNTY OF SAN DIEGO )

20          PHIL D. SWING, being first duly sworn, deposes and says:

21          That he is a member of the law firm of SWING, SCHARNIKOW

22  & STANIFORTH who are attorneys of record for defendant FALLBROOK

23  PUBLIC UTILITY DISTRICT in the above entitled matter.

24          That on or about the 14th day of April, 1952, the Board

25  of Directors of the FALLBROOK PUBLIC UTILITY DISTRICT authorized

26  affiant to employ the services of a hydraulic engineer to serve

27  as an expert witness for that District in the above entitled

28  action.

29          That affiant made inquiry for the purpose of finding an

30  available hydraulic engineer and found those qualified were few in

31  number and that those most desirable were already engaged and under

32  employment in one or more important matters or protracted litiga-

    tion.

                            -1-
                                              1443

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
604 SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

1   That CHARLES H. LEE appeared to be the most desirable and avail-
2   able hydraulic engineer for the purpose of studying and reporting
3   on the Santa Margarita River.  That he had had a long acquaintance
4   with the water problems of San Diego County dating back to 1916-
5   1917 when he was in the employ of the United States Geological
6   Survey to make a survey and report on the water resources of San
7   Diego County. That he, from time to time has been employed by
8   various agencies to study and report on the water problems of
9   various rivers in San Diego County although never directly on the
10  Santa Margarita River.  Accordingly, on or about the 30th day of
11  April, 1952, affiant employed CHARLES H. LEE, Consulting Engineer,
12  58 Sutter Street, San Francisco,  California, as such expert
13  witness.  That at the time, said CHARLES H. LEE was already under
14  employment in a number of other matters, one of which was before
15  the U. S. District Court at Fresno and he was not immediately
16  available to commence work on the above entitled case and from
17  time to time since, he has been interrupted by his prior committ-
18  ments entered into before being employed by FALLBROOK PUBLIC
19  UTILITY DISTRICT.

20          That since and as often as Plaintiff's attorneys delivered
21  to affiant portions of the exhibits called for in the pretrial
22  order, affiant forwarded the same to said CHARLES H. LEE. Some of
                                         (See list in Pretrial Order)
23  these were received by affiant and forwarded on August 26, 1952./
24  On September 9th, 1952, affiant received and forwarded the follow-
25  ing:

26          1.  Exhibit No. 4 - Amended & Completed Application
27              No. 11518 to appropriate unappropriated Water of
28              Vail Company (photostat)
29          2.  Exhibit No. 9 - Index map showing location of
30              Cross Section.
31          3.  Exhibit No. 10 - Map of the Lower Santa Margarita
32              River Valley, Camp Joseph H. Pendleton.

                          -2-                        1444

4. Exhibit No. 11 - Geologic Section A-A' through the Lower Santa Margarita River Valley, showing unconsolidated deposits and water-level profiles.

5. Exhibit No. 12 - Isopach Map of Alluvial Deposits of a portion of the Santa Margarita River within Camp Pendleton.

6. Exhibit 13 - Bar Graph showing specific yield of materials in wells in Upper, Chappo & Ysidora (sub) basins.

7. Exhibit 21- Controlled Mosaic, Camp Pendleton,Calif.

8. Exhibit 25 - Soil Survey Field Sheets of Camp Joseph H. Pendleton.

9. Exhibit No. 32 - Map of Soil and  Climatic Surveys of the Pauba Ranch.

10. Exhibit _____Land Utilization Map.

11. Exhibit No. 3 Graph showing Volume in thousands of acre feet, Water year 1924 to 1952.

12. Exhibit No._____Explanation of Geologic cross sections

On September 12,1952, affiant received and forwarded the following:

1. Exhibit No. 15 - File of Photostatic copies of letters, Judgment and decree, map etc in "Property to be Acquired for U.S. Naval Ammunition Depot."

2. Exhibit No. 16 - File of Photostatic copies of letters, Judgment etc. on condemnation proceedings, Declaration of Taking etc. (Santa Margarita Ranch as to Parcels A and B only)

3. Exhibit No. 17 - File of Photostatic copies of letters Judgment and Decree on Condemnation proceedings. (Artillery Range)

4. Exhibit No. 34 - Photostatic copies of letter from the Chief of Bureau of Yards & Docks and Permit to use water from Santa Margarita River etc.

-3-

1445

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
651-560 SECOND TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

On September 29th, 1952, affiant received and forwarded the follow-ing:

    1.  Exhibit - Quantities of water from the Santa

          Margarita River historically utilized both within

          and without the watershed by the United States.

    2.  Exhibit - Quantities of water used by the United

          States and its predecessors in interest outside the

          watershed of the Santa Margarita River; the several

          places of use; periods of time used, and purposes

          of use.

    3.  Exhibit - Duty of Water for lands lying outside of

          the watershed of the Santa Margarita River which

          have historically been irrigated from the ground-

          water basin underlying Camp Pendleton; and the

          maximum demand upon the Santa Margarita River which

          the U. S. is asserting in connection with those

          properties.

Affiant knows from conferences in the office of said CHARLES H. LEE in San Francisco and from correspondence and long distance telephone conversations that said LEE has been diligently working on the submitted data at every available opportunity when time permitted him to do so. That attached hereto, marked Exhibit "A" is a letter from said CHARLES H. LEE dated October 2, 1952, explaining why better progress has not been made by him and why, additional time will be required for him to complete his prepar-ation for trial, to-wit: three months.

It will also be necessary for said CHARLES H. LEE, in order to qualify himself to be an expert witness in this case, to make studies, surveys and inspection of the physical conditions existing upon the Rancho Santa Margarita. At the commencement of the pretrial conferences between the attorneys, affiant, Mr. Arvin B. Shaw, Jr. and Mr. William B. Dennis discussed with Mr. Veeder, Attorney for the Government, the procedure to be followed in get-

SWING, SCHARNIKOW & STANFORTH
ATTORNEYS AT LAW
604 SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

1446

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
104 SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

1    ting permission for defendant's experts to view and study the
2    premises of the plaintiff in this suit and that Mr. Veeder advised
3    us to send him a letter making that request.  This I did on Aug-
4    ust 22nd, 1952, a copy of which is attached hereto and marked
5    Exhibit "B". That affiant never received any written reply to that
6    letter and on August 25th, 1952 in open court in Los Angeles, I
7    again called attention to the necessity of defendant's experts
8    being accorded access to the plaintiff's property (Reporter's
9    Transcript of  August 25th, page 30, lines 17 to 26). That affiant
10   and the attorneys for the other two defendants are still waiting
11   for the Government to grant defendants' experts permission to in-
12   spect the premises, without which they cannot safely go to trial.
13           Affiant is informed and believes and therefore alleges
14   the fact to be that on August 28th, 1952, State Engineer A.D.
15   Edmonston and two of his assistants, Max Bookman and Mr. Ellings-
16   worth, together with Gavin Craig, attorney for the State Division
17   of Water Resources and Arvin B. Shaw, Jr. Assistant Attorney
18   General of the State of California, proceeded to Camp Pendleton
19   pursuant to an appointment with General Oliver P. Smith, Command-
20   ing Officer of Camp Pendleton, for the purpose of asking for the
21   exchange of information called for under the stipulation hereto-
22   fore entered into and on file in this case between the State of
23   California and the United States, and for permission to have the
24   State's experts survey and study the physical features of the
25   Santa Margarita River basin on the property belonging to the
26   United States.  During the discussion it developed that the Marines
27   and the U. S. Geological Survey had made very extensive investi-
28   gations and had important data in their possession pertinent to
29   the issues of this case and it was then agreed that the State
30   Engineer should make a written request for such data and infor-
31   mation relating to said physical conditions.  At General Smith's
32   suggestion the representatives of the State retired and with the

-5-

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
604 SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

1  collaboration and assistance of Col. Chester A. Allen and Major
2  A.C. Bowen of the Office of Ground Water Resources, prepared a
3  letter addressed to the Commanding officer of Camp Pendleton which
4  was signed by Mr. Edmonston requesting pertinent data and informa-
5  tion as to physical conditions on Rancho Santa Margarita, a copy
6  of which letter is attached hereto and made a part hereof and
7  marked Exhibit "C". Said letter was presented to General Smith
8  and by him forwarded to Washington for the necessary approval of
9  higher officials. The approval was subsequently given for General
10  Smith to deliver the requested data and on September 30th, 1952,
11  General Smith, by letter, notified the State Engineer that his
12  request had been granted and asking that representatives of the
13  State contact headquarters at Camp Pendleton relative to the deli-
14  very of the data and information. A copy of said letter is
15  attached hereto, made a part hereof and marked Exhibit "D".
16     Affiant is informed and believes and therefore alleges
17  the fact to be that in accordance with General Smith's suggestions
18  contained in his said letter, a representative of the State En-
19  gineer's office, to-wit: Max Bookman, went to Camp Pendleton on
20  October 7, 1952 to contact Headquarters (Post Supply Office)
21  relative to the procedure whereby the requested information would
22  be supplied to the State. It was then arranged for the photo-stat-
23  ing of a great deal of data which the Government proposed to fur-
24  nish the State and a date was agreed upon, to wit: October 14,1952
25  for Mr. Max Bookman to return at which time Major Bowen would have
26  sorted out much of the material requested by the State Engineer
27  and have it available for delivery and at that time determine and
28  agree what additional basic data was available at Camp Pendleton
29  pertinent to the water resources of the Santa Margarita River as
30  they exist on the property of the United States Government. That
31  affiant was informed by said Max Bookman that under the tentative
32  agreement there would be "a mass of data" to be delivered to him

-6-

1   by the Government on October 14th and thereafter as the same be-

2   came available and that, in his opinion, it would take a staff of

3   the State Engineer or any other engineer more than three months

4   in which to study, digest and evaluate the said data and informa-

5   tion and to be prepared and qualified to form an opinion thereon.

6   This data is important in determining the extent and capacities

7   of the underground basins on Plaintiff's property and the net safe

8   yield of said basins, the threat of salt water intrusion and the

9   best method or methods of excluding the same, as well as other

10  matters necessary involved in the issues of this case.

11          Affiant is also informed,by the State Engineer, and

12  believes and therefore alleges the fact to be that at the said

13  conference on August 28, 1952, at Camp Pendleton, General Smith

14  in response to the request of the State Engineer for permission

15  to have the State's experts inspect and study the physical factors

16  of the Santa Margarita River watershed on Rancho Santa Margarita

17  replied that, in his opinion, the matter of asking permission to

18  enter upon the military reservation to make studies and surveys

19  should be deferred until the State had studied all the information

20  that was available to it, including that which General Smith was

21  to deliver to the State pursuant to the said request of the State

22  Engineer;  that then the  State would be able to make a more

23  specific request for right of ingress than was then possible and

24  could perhaps shorten time involved and limit the areas and the

25  objects to be studied and investigated. That the said opinion of

26  General Smith was generally concurred with by the State represen-

27  tatives and for that reason the matter of requesting access to the

28  Plaintiff's property for defendants' experts to study the physical

29  terrain was deferred but will now be taken up promptly as soon as

30  the data delivered to the State on October 14th, 1952, has been

31  studied and evaluated.

32          That the stipulation made and entered into between the

-7-

1449

1  United States of America and the State of California, on file
2  herein, and approved by this Court, it was provided in Paragraph
3  VI that:

4    "There will be a full, complete and mutual exchange of
5    data and information as to the subject matter of this cause
6    collected by the respective parties to this stipulation,-
7    - - - - such exchange of information by the United States
8    will be subject to clearance by the Commanding Officer
9    of Camp Joseph H. Pendleton in respect to military
10   security as determined by said officer."
11 Said stipulation further expressly provided that

12   "It was made for the benefit of all the parties to this
13   cause." (Emphasis added).

14 Accordingly the defendant FALLBROOK PUBLIC UTILITY DISTRICT is
15 desirous of and claims the right to avail itself of the information
16 which is to be delivered to the State Engineer of California on
17 October 14th, 1952 and thereafter, pursuant to the exchange of
18 letters between Mr. Edmonston and General Oliver P. Smith and is
19 convinced that it cannot safely go to trial without being granted
20 a reasonable length of time in which to study and evaluate that
21 basic data. That affiant would be unable to effectively cross-
22 examine plaintiff's experts until said basic data has first been
23 studied and evaluated.

24   That affiant has thoroughly studied the case of defen-
25 dant FALLBROOK PUBLIC UTILITY DISTRICT in this action and has
26 reached the firm conclusion that FALLBROOK PUBLIC UTILITY DISTRICT
27 has a good defense to said action if said defendant can be
28 accorded a full and fair opportunity to prepare and present the
29 same, which in affiant's opinion will require approximately three
30 (3) months from the date said last mentioned data is delivered

31
32        -8-

SWING, SCHARNIKOW & STANFORTH
ATTORNEYS AT LAW
604 SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

1  to the State Engineer, by the officers at Camp Pendleton.

2  DATED: October 9, 1952.

3

4

5

6

7  Subscribed and sworn to before me

8  this  9th day of October, 1952.

9

10

11  Notary Public in and for said
   County and State.

12

SWING, SCHARNIKOW & STANIFORTH
ATTORNEYS AT LAW
604 SAN DIEGO TRUST & SAVINGS BUILDING
SAN DIEGO 1, CALIFORNIA

-9-

1451

EXHIBIT "A"

CHARLES H. LEE
M.AM.Soc. C.E.
Consulting Engineer
58 Sutter Street
San Francisco 4

October 2, 1952

Mr. Phil D. Swing
604 San Diego Trust and Savings Bldg.
San Diego 1, California

Re:  U. S. vs. Fallbrook Public Utility District

Dear Mr. Swing:

Complying with your request I submit the following statement re-
garding my professional engagements in effect at the time of my
employment, April 30, 1952, by F.P.U.D. on the above case, and
which have made it impossible for me to devote myself to the case.

1.  Westwood Homes Inc., of San Francisco, California.
    Continuing engagement since April 1950 on engineering
    work requiring several days per month.

2.  Plaintiffs in case of Rank vs. Krug in U. S. District
    Court, So. Dist. of California, No. Division, Case
    No. 685 - ND.  Engagement commenced July 27, 1951 and
    since January 1952 was practically continuous in and
    out of court until August 21, 1952, and has subsequent-
    ly required 2 days' time per week and will continue
    thus until the end of the case sometime in December
    1952.  It was not originally contemplated that his
    case would last beyond July 1952, but my own testimony
    alone extended over 10 court weeks in direct and 11
    weeks in cross examination.

3.  Board of State Harbor Commissioners, Port of San
    Francisco.  Continuing engagement since December 13,
    1951, requiring several days per month.

4.  Golden Gate Bridge Authority.  Continuing emergency
    engagement since January 24, 1952, on engineering work
    requiring at least one day per week.

5.  Skidmore, Owings and Merrill, architects.  Continuing
    emergency engagement since April 1, 1952 on engineering
    work involving military installations requiring several
    days per month.

6.  City of San Francisco.  Continuing engagement since
    April 1, 1952 on engineering work involving several
    days per month.

At the present time I am greatly delayed in my preparation of
exhibits and in making studies upon which to base technical
testimony in the case by lack of permission to go upon the Rancho
Santa Margarita for survey and inspection of physical conditions.
I also have not had opportunity to inspect original and exact
scale copies of maps and other U. S. exhibits, including a top-
ographic model.

1452

1

Mr. Phil D. Swing                                    October 2, 1952

2  I have today reviewed the situation with respect to said prepara-
   tion and find that I will need at least three months from date to
3  complete it.

4                                        Sincerely yours,

5                                           /s/  Charles H. Lee

6                                        Charles H. Lee

7  CHL:hg

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

EXHIBIT "B"

SWING, SCHARNIKOW & STANIFORTH
Attorneys at Law
604 San Diego Trust and Savings Building
San Diego 1, California

August 22, 1952

Mr. William H. Veeder
Special Assistant to the Attorney General
Federal Building
San Diego, California

In Re:   United States of America vs. Fallbrook
Public Utility District.

My dear Mr. Veeder:

Mr. Charles H. Lee
58 Sutter Street
San Francisco, California

has been employed by the Fallbrook Public Utility District as one
of its experts in the above entitled action and the defendant
Fallbrook Public Utility District is anxious for you to have your
client furnish Mr. Leo with an adequate pass so that he may visit,
inspect and study the terrain, geology and hydrology and other
physical features of the Rancho Santa Margarita which, in his
opinion, are pertinent to forming an opinion regarding the merits
of the several issues and contentions involved in the above en-
titled action, and to qualify him to testify as an expert witness
on behalf of defendant Fallbrook Public Utility District in the
trial now set to begin October 21st.

The date of the trial makes it of utmost importance that
Mr. Lee be accorded the privilege of visitation at as early a
date as possible.

Sincerely,

PHIL D. SWING

PDS:mwa

1454

EXHIBIT "C"                          August 28, 1952

Commanding General
Marine Barracks
Camp Pendleton, California

Dear Sir:

In the budget act of 1952 the legislature of California made the
following appropriation "For surveys and investigations of the
water resources of the Santa Margarita Watershed, including but
not limited to hydrography, hydroeconomics, the use and distribu-
tion of water for agricultural and other beneficial purposes, in-
cluding consideration of both surface and underground water con-
ditions, and the availability of natural situations for reservoirs
or reservoir systems for gathering and distributing flood or other
waters, Division of Water Resources, Department of Public Works",
$150,000. The undersigned State Engineer is Chief of the Division
of Water Resources and interprets this appropriation language as
charging him with a duty to make the investigations mentioned for
broad public purposes and for end-result of developing information
which may be useful with respect to possibly more complete utiliza-
tion in the future of the water resources of the Santa Margarita
Watershed.

It is understood that very considerable accumulations of basic
data have been made by the Marine Corps and the United States
Geological Survey, which would be helpful in connection with the
above-mentioned investigation. It is not the desire of the state
to waste public money on the unnecessary duplication of work which
has been adequately done.

For the purpose of the above-mentioned investigation, it is re-
quested that you authorize the furnishing to the Division of Water
Resources of the following:

1. Two sets of contact prints of air pictures of Santa
Margarita Watershed and the index mosaic if available on scale
1:28, 500, being flight 1, flight 2 and flight 3, designated as
V17EV-40, dated 6 August 1951, Pendleton Watershed area, Rest.

2. Basic data (excluding findings and conclusions) gathered
and hereafter to be gathered by United States Geological Survey
in investigation of the watershed of the Santa Margarita River.

3. Current and future basic data on well readings and well
logs of the Santa Margarita Watershed as gathered by the United
States Marine Corps and United States Geological Survey.

4. Current and future basic data relating to land classifica-
tion, periodic water productions well by well, diversions of water
on Santa Margarita Watershed and use thereof on Rancho Santa
Margarita, areal geological mapping, quality of water analysis,
specific yield determination at wells, transmissibility and perm-
eability, crop surveys, climatological data, surface water stream
gagings, percolation measurements, elevations of wells, determina-
tions of irrigable land areas, records from automatic well re-
corders and any other hydrological and geological data available,
all relating except as above indicated to the Santa Margarita
Watershed.

1455

Commanding General                                    Page 2

In the event that any of the information above mentioned is of a restricted or confidential character, it is requested that such character be indicated as to the specific information and the Division of Water Resources will undertake to observe faithfully any such restrictions.

The State of California will pay for reproduction of any of the above data as you may require, or if more convenient will have the data copied or reproduced.  Payment will be made on invoice in triplicate submitted to Division of Water Resources, Sacramento, California, and addressed to the State of California.

All or any studies, conclusions or reports on the Santa Margarita River Watershed which may be prepared by the Division of Water Resources will be made available to the United States Marine Corps.

This request is made as a matter of reasonable inter-governmental cooperation for public purposes.

Time is of the essence in that it is highly desirable to get the studies of the Division of Water Resources activated as soon as possible and your earliest attention will, therefore, be greatly appreciated.

                                    Very truly yours,


                                    A. D. EDMONSTON
                                    State Engineer
                                    Division of Water Resources

1456

EXHIBIT "D"

UNITED STATES MARINE CORPS
HEADQUARTERS, MARINE BARRACKS
CAMP PENDLETON, CALIFORNIA

In replying
Please refer to No.
6/1/403-imd
Ser 41330


Sep 30, 1952


Mr. A. D. Edmonston
State Engineer
Division of Water Resources
Public Works Building
P. O. Box 1079
Sacramento 5, California

Dear Mr. Edmonston:

Your request dated 28 August 1952 for certain hydrographic and
corollary data on the Santa Margarita watershed was referred to
the Commandant of the Marine Corps for final decision.

The Commandant of the Marine Corps authorized us by return letter
to furnish the data enumerated in your letter.

It was stipulated, however, that no information of this type
pertaining to any other watershed is to be supplied.  It was
further stipulated that no part of the United States Geological
Survey Report pertaining to concessions and recommended actions
may be supplied.  However, basic factual data gathered by the
United States Geological Survey may be furnished you.

It is recommended that representatives of your office contact
this Headquarters (Post Supply Officer) relative to the pro-
cedure whereby the requested information may be supplied to you.

                              Very truly yours,

                              /s/  Oliver P. Smith

                              OLIVER P. SMITH
                              Major General, USMC
                              Commanding

1457