CIVIL NO.
1247-D

In The
DISTRICT COURT OF THE UNITED STATES
IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

FALLBROOK PUBLIC UTILITY DISTRICT, et al.,

Defendants,

PEOPLE OF THE STATE OF CALIFORNIA

Defendant in Intervention.

# FILED

OCT 14 1952

EDMUND L. SMITH, Clerk

By _____
Deputy Clerk

HONORABLE LEON YANKWICH, JUDGE

BRIEF OF THE PEOPLE OF THE STATE OF CALIFORNIA
ON QUESTIONS PROPOUNDED TO THE COURT IN ADVANCE OF TRIAL

EDMUND G. BROWN
Attorney General of the State of California
600 State Building
San Francisco 2, California

ARVIN B. SHAW, JR.,
Assistant Attorney General of the
State of California
835 Rowan Building
Los Angeles 13, California

GEORGE G. GROVER,
Deputy Attorney General of the
State of California
600 State Building
San Francisco 2, California

ADOLPHUS MOSKOVITZ,
Deputy Attorney General of the
State of California,
202 Library and Courts Building
Sacramento 14, California

Attorneys for the People of the
State of California,
Defendant in Intervention.

GAVIN M. CRAIG, Attorney,
Division of Water Resources of the
State of California, 460 Public Works Building,
Sacramento, California

Of Counsel.

1467

## TOPICAL INDEX

|  | Page |
|---|---|
| TABLE OF AUTHORITIES CITED | 1,2 |
| PRELIMINARY STATEMENT | 5 |

**I**

WATER RIGHTS OF RIPARIANS
INTER SE ARE CORRELATIVE ........................ 7

**II**

WATER CAN BE DEMANDED UNDER
A RIPARIAN RIGHT ONLY FOR USE
ON RIPARIAN LAND ........................ 7

**III**

STORAGE OF WATER FOR FUTURE USE
IS NOT A PROPER EXERCISE OF
RIPARIAN RIGHTS ........................ 10

**IV**

MILITARY USE UNDER RIPARIAN RIGHT ........................ 13

**V**

AN APPROPRIATOR CAN TAKE AND USE
ANY WATER BELONGING TO RIPARIANS,
BUT NOT CURRENTLY USED BY THEM ........................ 14

**VI**

A PRESCRIPTIVE RIGHT IS PARAMOUNT
TO A RIPARIAN RIGHT AGAINST WHICH
IT ARISES ........................ 20

**VII**

ONE CANNOT OBTAIN A PRESCRIPTIVE
RIGHT AS AGAINST USERS UPSTREAM FROM
HIM AND CANNOT, SINCE THE EFFECTIVE
DATE OF THE WATER COMMISSION ACT IN
1914, OBTAIN A WATER RIGHT BY USE ALONE ........................ 20

**VIII**

THE RULES OF CALIFORNIA LAW DESCRIBING
AND DELIMITING THE RIPARIAN RIGHT ARE
RULES OF PROPERTY WHICH CONTROL THE
MEASURE OF PLAINTIFF'S RIPARIAN RIGHTS ........................ 26

1468

# TABLE OF AUTHORITIES CITED

| Cases | Page |
|---|---|
| Anaheim Union Water Co. v. Fuller, 150 Cal. 327 | 10 |
| Bathgate v. Irvine, 126 Cal. 135 | 10 |
| Boehmer v. Big Rock Irrigation District, 117 Cal. 19 | 9 |
| Breon v. Robrecht, 118 Cal. 469 | 22 |
| Burr v. Maclay Rancho Water Co., 154 Cal. 428 | 16 |
| California Pastoral and Agricultural Co. v. Madera Canal and Irrigation Co., 167 Cal. 78 | 10 |
| Cave v. Tyler, 133 Cal. 566 | 25 |
| Chauvet v. Hill, 93 Cal. 407 | 10 |
| City of Lodi v. East Bay Municipal Utility District, 7 Cal. 2d 316 | 11 |
| City of San Diego v. Cuyamaca Water Co., 209 Cal. 105 | 20,22 |
| Colorado Power Company v. Pacific Gas & Electric Co., 218 Cal. 559 | 11 |
| Cory v. Smith, 206 Cal. 508 | 24 |
| Crane v. Stevinson, 5 Cal. 2d 387 | 26 |
| Duckworth v. Watsonville Water & Light Co., 150 Cal. 520 | 8,21 |
| Gould v. Eaton, 117 Cal. 539 | 9 |
| Gould v. Stafford, 77 Cal. 66 | 9 |
| Hansen v. McCue, 42 Cal. 303 | 25 |
| Heinlen v. Fresno C. & I. Co., 68 Cal. 35 | 9 |
| Herminghaus v. Southern California Edison Co., 200 Cal. 81 | 11 |
| Holmes v. Nay, 186 Cal. 231 | 9,24 |
| Hudson v. Dailey, 156 Cal. 617 | 24 |
| Lakeside Ditch Co. v. Crane, 80 Cal. 181 | 25 |
| Larson v. Apollonio, 5 Cal. 2d 440 | 23 |
| Lee v. Pacific Gas & Elec. Co., 7 Cal. 2d 114 | 20 |
| Los Angeles & Salt Lake R. Co. v. United States, 140 F. 2d 436 | 5 |
| McKissick Cattle Co. v. Anderson, 62 Cal. App. 558 | 25 |
| Meridian Ltd. v. City & County of San Francisco 13 Cal. 2d 424 | 11,16 |

-1-

1469

| Cases | Page |
|---|---|
| Miller v. Bay Cities Water Co., 157 Cal. 256 | 10 |
| Montecito Valley Water Co. v. Santa Barbara, 151 Cal. 377 | 9,10 |
| Montecito Valley Water Co. v. Santa Barbara, 144 Cal. 578 | 22 |
| Moore v. California-Oregon Power Co., 22 Cal. 2d 725 | 11,12 |
| Mount Shasta Power Corp. v. McArthur, 109 Cal. App. 171 | 9 |
| Pabst v. Finmand, 190 Cal. 124 | 24 |
| Pasadena v. Alhambra, 33 Cal. 2d 908 | 17 |
| Peabody v. City of Vallejo, 2 Cal. 2d 351 | 16 |
| Prather v. Hoberg, 24 Cal. 2d 549 | 9 |
| Pyramid Land and Stock Co. v. Scott, 51 Cal. App. 634 | 25 |
| Rancho Santa Margarita v. Vail, 11 Cal. 2d 501 | 9,11,15 |
| Reading Co. v. U. S., 268 U. S. 186 | 5 |
| Seneca Consolidated Gold Mines v. Great Western Power Co., 209 Cal. 206 | 11 |
| Smith v. Gaylord, 179 Cal. 106 | 23,24 |
| Smith v. Hawkins, 110 Cal. 122 | 20 |
| Tulare Dist. v. Lindsay-Strathmore Dist., 3 Cal. 2d 489 | 16,17 |
| United States v. Burnison, 339 U. S. 87 | 5 |
| United States v. Fox, 94 U. S. 315 | 5 |
| United States v. Nebo Oil Co., 190 F. 2d 1003 | 5 |
| United States v. Williams, 164 F. 2d 989 | 5 |
| Water Co. v. Richardson, 72 Cal. 598 | 22 |
| Werner v. United States, 10 F.R.D. 245 | 5 |
| Williams v. Costa, 52 Cal. App. 396 | 25 |
| Williams v. Sutton, 43 Cal. 65 | 22 |

1470

## CODES                                                              Page

California Water Code, Section 1225                                   25

California Water Code, Sections 1000-4360                             25


## STATUTES

Water Commission Act                                                  25

California Constitution,
  Article XIV, Sec. 3                                                 16

California Statutes 1913, Ch. 586                                     25

## PERIODICALS

Trowbridge:  Prescriptive Water Rights
  in California:  An Addendum,
  39 Calif. L. Rev. 529  (1951)                                      25


Kletzing:  Prescriptive Water Rights
  in California, 39 Calif. L. Rev. 369  (1951)                        25

1471

CIVIL No.
1247-SD

In The
DISTRICT COURT OF THE UNITED STATES
IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                          Plaintiff,

      v.

FALLBROOK PUBLIC UTILITY DISTRICT, et al.,

                       Defendants,

PEOPLE OF THE STATE OF CALIFORNIA,

        Defendant in Intervention.

HONORABLE LEON YANKWICH, JUDGE

BRIEF OF THE PEOPLE OF THE STATE OF CALIFORNIA
ON QUESTIONS PROPOUNDED TO THE COURT IN ADVANCE OF TRIAL

EDMUND G. BROWN,
Attorney General of the State of California,
600 State Building,
San Francisco 2, California.

ARVIN B. SHAW, JR.,
Assistant Attorney General of the
  State of California,
835 Rowan Building,
Los Angeles 13, California.

GEORGE G. GROVER,
Deputy Attorney General of the
  State of California,
600 State Building,
San Francisco 2, California.

ADOLPHUS MOSKOVITZ,
Deputy Attorney General of the
  State of California,
202 Library and Courts Building,
Sacramento 14, California.

      Attorneys for the People of the
      State of California,
      Defendant in Intervention.

GAVIN M. CRAIG,
Attorney, Division of Water Resources
  of the State of California,
460 Public Works Building,
Sacramento, California.

      Of Counsel.

-4-

PRELIMINARY STATEMENT

1
2        The interest of the People of the State of California in
3   this proceeding is primarily to preserve and protect the
4   integrity of State water law.  To this end the State has
5   secured a stipulation with the United States that "the rights
6   of the United States of America to the use of water herein are
7   to be measured in accordance with the laws of the State of
8   California."  This stipulation is merely a recognition of what
9   is well established law -- that when the United States contracts
10  or acquires property within a state, the law of that state
11  controls what rights in the United States arise therefrom (United
12  States v. Burnison, 339 U. S. 87, 90 (1949); Reading Co. v. U. S.,
13  268 U. S. 186, 188 (1925); United States v. Fox, 94 U. S. 315,
14  320 (1876); United States v. Nebo Oil Co., 190 F. 2d 1003, 1010
15  5th Cir. 1951); United States v. Williams, 164 F. 2d 989, 991
16  (5th Cir. 1947); Los Angeles & Salt Lake R. Co. v. United States,
17  140 F. 2d 436, 437 (9th Cir. 1944), cert. denied, 322 U. S. 757
18  (1944); Werner v. United States, 10 F.R.D. 245, 247 (D.C.S.D.
19  Calif. 1950)).

20       The purpose of this brief is to assist the Court in deter-
21  mining the measure of the rights of the United States under State
22  law and we shall discuss those propositions and questions sub-
23  mitted by the parties for briefing which aid in such determination.
24  Whether the defendants have acquired prescriptive rights against
25  the United States by adverse use for the requisite period of time
26  is primarily a question of fact, with which we are not concerned.
27  Hence, we shall not address ourselves to Question number 3 pro-
28  posed by plaintiff.  For the purposes of this pretrial brief, we
29  shall assume that the defendants have not acquired prescriptive
30  rights against the United States and, hence, that the riparian
31  rights of the United States are paramount to the asserted

1473

appropriative rights of the defendants.  Our discussion will, therefore, be limited to defining what the rights of the United States are.  We will, in the main, follow the order in which the various questions submitted by the parties are treated in plaintiff's brief.

Discussion of the detailed facts of the case lies peculiarly within the province of the defendant organizations.  For this reason no reply is made herein to plaintiff's statement of facts (Plaintiff's brief, pp. 1-7).  Plaintiff's discussion concerning the character of riparian rights under the laws of California (Plaintiff's brief, pp. 7-15), is in affirmance of plaintiff's Questions number 1 and 2:

"1.  Whether the riparian rights in the Santa Margarita River system of the United States of America, Plaintiff, are prior and paramount under the laws of the State of California to the appropriative rights claimed by the defendant Santa Margarita Mutual Water Company in that stream in view of the admission by that Company that the earliest date of priority which it is asserting is October 4, 1946.

2.  Whether the riparian rights in the Santa Margarita River system of the United States of America, Plaintiff, are prior and paramount under the laws of the State of California to the appropriative rights claimed by the defendant Fallbrook Public Utility District in that stream in view of the admission by that District that the earliest date of priority which it is asserting is October 11, 1946."

We agree with those principles of State water law set forth by plaintiff, which are based upon the cited provisions of the California Constitution, the California Water Code and decisions of California courts respecting the nature and character of a

-6-

1474

1   riparian right.  We are gratified to discover no controversy

2   between the United States and the People of the State of Cali-

3   fornia that these principles are the law of California, that

4   they are applicable to the decision of the issues that have

5   been propounded to the Court, and that, consequently, the

6   measure of the rights of the United States to the use of water

7   is to be determined in accordance therewith.

I

### WATER RIGHTS OF RIPARIANS INTER SE ARE CORRELATIVE

The first proposition of law affirmed by defendants and submitted by them for discussion in the briefs is:

"1.  Water rights of riparians
inter se are correlative."

As plaintiff apparently admits that its riparian rights in the Santa Margarita River are correlative with the equal rights of all other riparians on the stream (Plaintiff's brief, p. 17, ls. 16-19), we do not feel it is necessary for us to discuss the authorities supporting this basic rule of California water law.

II

### WATER CAN BE DEMANDED UNDER A RIPARIAN RIGHT ONLY FOR USE ON RIPARIAN LAND

The second proposition of law affirmed by defendants and submitted by them for discussion in the briefs is:

"2.  Water can be demanded under a
riparian right only for use on
riparian land."

As indicated above, plaintiff recognizes that its riparian rights are correlative with the equal rights of all other riparians. Plaintiff further states that:

"Manifestly, when riparian rights are held

-7-

1          "correlatively with all other riparians there would

2      be no basis for claiming a right to use water on non-

3      riparian land" (Plaintiff's brief, p. 17, ls. 24-27).

4  The effect of the foregoing, together with plaintiff's failure

5  to take issue with defendants' second proposition, is an apparent

6  concession that the United States, as a riparian owner, has no

7  right to use water from the stream upon nonriparian land except

8  such right as it may have acquired "by reason of the stipulated

9  judgment between the United States of America /actually its

10  predecessor, Rancho Santa Margarita7 and the Vail estate"

11  (Plaintiff's brief, p. 17, l. 27, p. 18, l. 6).

12          However, since it has not been denied that the United States,

13  under claim of right, is in fact using or selling to others for

14  use water from the Santa Margarita River upon land which is non-

15  riparian because outside the watershed of the river, we will

16  call attention briefly to the authorities which have established

17  that in California, water may not be used under claim of

18  riparian right on non-riparian land and that land outside the

19  watershed of a stream is not riparian to it even if contiguous

20  with riparian land.

21          In <u>Duckworth</u> v. <u>Watsonville Water and Light Co.</u>, 150 Cal.

22  520, 526, 89 Pac. 338, 341 (1907), the Court said:

23              "Furthermore, his riparian right is limited to his
                riparian land.  It gave no right to use any of the water
24              of the stream for any purpose, upon land not riparian,
                nor upon any riparian land other than his own.  No one can
25              sell or convey to another that which he does not himself
                own.  Grimmer could not, by a transfer of his riparian
26              rights, sell to the plaintiff, as against third persons
                having interests in the water, the right to use the water
27              upon any land, riparian or nonriparian, except his own,
                to which it originally attached."
28

29  The Court went on to say (150 Cal. at 532, 89 Pac. at 343):

30              "But the mere fact that the company is a riparian
              owner on the lake gives it no right whatever to the water
31              of the lake, except for actual beneficial use upon the

-8-

"land to which the riparian rights attach. The evidence does not show that it is using the water on that land at all. It is carrying the water to other lands and places, for use and sale. * * * the right it actually exercises is not a right derived from the fact of its riparian ownership of the greater part of the lake shore and bed."

Holmes v. Nay, 186 Cal. 231, 235, 199 Pac. 325, 327 (1921), contains the following:

"It should be said, however, that the use to which Nay was putting the water, a use not on the 101-acre tract, but on the tract below it, was not a use permitted as an incident of the ownership of the 101-acre tract, and that his right to such use must depend upon whatever rights he may have as the owner of the tract to which the water is conveyed and where it is used."

A riparian owner cannot justify his diversion to nonriparian lands by the plea that he is merely putting to another use water which he is entitled to use on his riparian land (Gould v. Eaton, 117 Cal. 539, 543, 49 Pac. 577, 578 (1897)), or that his riparian land is valueless for agricultural purposes (Montecito Valley Water Co. v. Santa Barbara, 151 Cal. 377, 378, 90 Pac. 935, 936 (1907)).

See, also, Prather v. Hoberg, 24 Cal. 2d 549, 558, 150 P. 2d 405, 410 (1944); Boehmer v. Big Rock Irrigation Dist., 117 Cal. 19, 26, 48 Pac. 908, 910 (1897); Gould v. Stafford, 77 Cal. 66, 68, 18 Pac. 879, 880 (1888); Heinlen v. Fresno C. & I. Co., 68 Cal. 35, 8 Pac. 513 (1885); Mount Shasta Power Corp. v. McArthur, 109 Cal. App. 171, 192, 292 Pac. 549, 557 (1930).

In Rancho Santa Margarita v. Vail, 11 Cal. 2d 501, 528, 81 Pac. 2d 533, 547 (1938), involving plaintiff's predecessor, the Court set forth the three criteria of determining the extent of land having riparian status. The third criterion was stated as follows:

"3. The land, in order to be riparian, must be within the watershed of the stream."

This test of riparian status is well established in California

-9-

decisions.  For example, <u>Chauvet</u> v. <u>Hill</u>, 93 Cal. 407, 410, 28 Pac. 1066, 1067 (1892), contains the blunt declaration that:

> "No one by virtue of riparian ownership can right-fully divert water beyond the watershed of the stream from which he takes it."

And <u>Bathgate</u> v. <u>Irvine</u>, 126 Cal. 135, 143,  58 Pac. 442, 445 (1899), stated:

> "If it ever was a rule anywhere, which we doubt, that the riparian owner, under riparian right alone, could take the water of the riparian stream to any part of his land contiguous to his riparian land, to the extent of taking the water entirely away from the watershed of such stream, provided he there consumed it all, it is a rule inapplicable to our conditions and should not be adopted here."

See also <u>Miller</u> v. <u>Bay Cities Water Co.</u>, 157 Cal. 256, 278, 107 Pac. 115, 124 (1910); <u>Montecito Valley Water Co.</u> v. <u>Santa Barbara</u>, 151 Cal. 377, 378,  90 Pac. 935, 936 (1907); <u>Anaheim Union Water Co.</u> v. <u>Fuller</u>, 150 Cal. 327, 330,  88 Pac. 978, 980 (1907).

It is also settled that an attempt by a riparian proprietor to grant his right to use water to another for use on nonriparian land results in nothing but an estoppel against the grantor in favor of the grantee (<u>California Pastoral and Agricultural Co.</u> v. <u>Madera Canal and Irrigation Co.</u>, 167 Cal. 78, 86,  138 Pac. 718, 721 (1914)).

### III

STORAGE OF WATER FOR FUTURE USE
IS NOT A PROPER EXERCISE OF
RIPARIAN RIGHTS

The next proposition affirmed by defendants and submitted for discussion was stated as follows:

> "3(a).  Storage of water is not a proper riparian use."

This proposition should have been more accurately worded:

> "Storage of water for future use is not a proper exercise of riparian rights."

-10-

1478

Although the courts have upon occasion referred to seasonal storage of water as being an improper riparian use (<u>Colorado Power Company</u> v. <u>Pacific Gas & Electric Co.</u>, 218 Cal. 559, 564, 24 Pac. 2d 495, 497 (1933)), we agree with plaintiff that storage is not a use but is a means to an end, the future use of the water.  However, so far as the issues in this case are concerned, the distinction does not appear to be important.

It is established beyond dispute that in California the storage of water for future use, whether cyclic or seasonal, is not a proper exercise of a riparian right, but instead constitutes an appropriation of water (<u>Moore</u> v. <u>California-Oregon Power Co.</u>, 22 Cal. 2d 725, 731, 140 Pac. 2d 798, 802 (1943); <u>City of Lodi</u> v. <u>East Bay Municipal Utility District</u>, 7 Cal. 2d 316, 335, 60 Pac. 2d 439, 447 (1936); <u>Colorado Power Company</u> v. <u>Pacific Gas and Electric Co.</u>, 218 Cal. 559, 564, 24 Pac. 2d 495, 497 (1933); <u>Seneca Consolidated Gold Mines</u> v. <u>Great Western Power Co.</u>, 209 Cal. 206, 216, 287 Pac. 93, 97 (1930); <u>Herminghaus</u> v. <u>Southern California Edison Co.</u>, 200 Cal. 81, 110, 252 Pac. 607, 619 (1927)), which "may be exercised only pursuant to an appropriation lawfully made" (<u>Meridian Ltd.</u> v. <u>City and County of San Francisco</u>, 13 Cal. 2d 424, 450, 90 Pac. 2d 537, 549 (1939)).

Plaintiff, however, asserts the right to "regulate the riparian water and thus insure recharging of the basin underlying Camp Pendleton" (Plaintiff's brief, p. 21, ls. 25-28).  If by "regulation" it means seasonal storage of water, such "regulation" is clearly unauthorized in the exercise of a riparian right, and plaintiff has cited no authority which supports its contention. The only authority mentioned by plaintiff in connection with this argument is a passage in <u>Rancho Santa Margarita</u> v. <u>Vail</u>, 11 Cal. 2d 501, 559, 81 Pac. 2d 533, 563 (1938), concerning possible storage

-11-

1479

of water (Plaintiff's brief, p. 21, ls. 12-15). But the Court
was careful to say that: "These suggestions /concerning possible
storage of water7 are made simply to point out that from the
findings and evidence it would appear that there is a strong
possibility of working out some physical solution, at reasonable
cost, that may be of some benefit to both parties" (11 Cal. 2d
at 560, 81 Pac. 2d at 563).

Temporary impounding of water to provide a head for generation
of power is of course not at all analogous to seasonal storage.
Even such storage was held to be not a proper exercise of the
riparian right where it seriously interfered with the regimen of
the stream flow (Moore v. California-Oregon Power Co., 22 Cal. 2d
725, 734, 140 Pac. 2d 798, 803 (1943)).

Plaintiff's brief indicates that it will rely upon the
stipulated judgment between the Rancho Santa Margarita and the
Vail Estate as giving it the right to store water of the Santa
Margarita River for its future use (Plaintiff's brief, p. 21, ls.
9-19) and the right to use water on nonriparian land (Plaintiff's
brief, p. 18, ls. 1-6). The stipulated judgment is outside the
scope of the questions to be briefed by the parties. Therefore,
we submit that, subject to any future ruling the court may make
as to whether the stipulated judgment binds anyone but parties to
it and their privies, the court may now properly declare that the
United States, under its riparian right, may not demand that the
waters of the Santa Margarita River be allowed to descend to
plaintiff's lands without interference there to be stored or to
be used upon nonriparian land.

-12-

## IV

### MILITARY USE UNDER
### RIPARIAN RIGHT

Defendants have next presented for discussion the proposition that:

> "3(b).  Military use is not a proper riparian use."

Since the key to any description of rights of riparian use is reasonableness, the question arises whether the present military uses are reasonable and, therefore, within the riparian right.  Obviously, the stationing of a few soldiers as sentries on the Rancho Santa Margarita, and their being supplied with water from the stream for domestic purposes, would not raise any serious question of reasonableness.  On the other hand, when the United States brings on the Ranch many thousands, (50,000 or more) of men, and further sets up housing developments for the families of officers and non-commissioned personnel, and for civilian employees, the resulting effect is that of an urbanized municipal water service.  Urban service of this extended character, which under our law has always been carried on under appropriations, not under riparian claims, is so exaggerated, that the question whether it can be deemed reasonable must be given serious consideration.

This subject is discussed  with authorities in the brief of Fallbrook Public Utility District presented concurrently herewith, to which reference is hereby made.

It is to be remembered that the Government is not in any sense helpless to maintain Camp Pendleton, since it has entire freedom to buy water or to condemn water rights with which to support the Camp.

-13-

1481

V

### AN APPROPRIATOR CAN TAKE AND USE ANY WATER BELONGING TO RIPARIANS, BUT NOT CURRENTLY USED BY THEM.

Of vital importance to this case is the following principle of law advanced by defendants and proposed by them for discussion:

"6.  An appropriator can take and use any water belonging to riparians, but not currently used by them."

Plaintiff has made no direct attack upon this proposition. But its statement that "use has no bearing upon the ownership" of the riparian rights of the United States (Plaintiff's brief, p. 25, ls. 14-15), emphasizes one of the fundamental misconceptions upon which the theory of the United States as to the measure of its riparian rights is based.  We believe that counsel for the United States have misinterpreted certain undisputed legal principles of California water law upon which they rely with the result that their conclusion as to the measure of the rights which the United States acquired from the Rancho is wholly erroneous. Here and elsewhere in their brief counsel have failed to recognize the distinctions which decisions of California courts (hereinafter discussed) have established between (1) the right of an owner of riparian or overlying lands to make present reasonable and bene- ficial use of water upon the riparian or overlying lands, and (2) his prospective right to make such use in the future.  It is only the prospective right which is not measured by past and present use, but may be exercised at any time and is superior to rights secured by appropriation, except to the extent the latter have ripened into prescription.  The present right, as the term itself implies, is measured by present beneficial use of water upon riparian or overlying lands for proper riparian or overlying purposes.

We agree with plaintiff that the total riparian right of the

-14-

1432

United States, in both its present and prospective aspects, is entitled to protection from infringement by others.  To the extent an actual or threatened use of water by one junior in right deprives the United States, as a riparian, of water which it presently is using for reasonable beneficial purposes upon riparian land, the wrongful use should be enjoined.  But it is not necessary, in order to protect the prospective right of the United States to make reasonable beneficial use of water upon riparian land in the future, to withhold the water not presently so used from reasonable, beneficial use by defendants until such time as the United States is prepared to use it upon its riparian land for riparian purposes.  A mere declaration of the nature and scope of this right and a restraint upon assertion of an adverse right is all that is required.  Therefore, use by defendants of such water will not invade the riparian right of the United States and is not wrongful.

Plaintiff refers to the principle of law asserted by the defendants that: "An appropriator can take and use any water belonging to riparians, but not currently used by them," and professes agreement therewith (Plaintiff's brief, p. 25, ls. 22-25).  Its only comment is (1) that the California Supreme Court has recognized that the yield of the Santa Margarita River is not sufficient to supply all the <u>riparian</u> needs of all the <u>riparian</u> lands of either the Rancho or the Vail estate (Plaintiff's brief, p. 25, 1. 26), and (2) that defendants have the burden of proving that a surplus exists (Plaintiff's brief, pp. 26-27).  Plaintiff is wrong on both points.  First the California Supreme Court recognized merely that "the <u>normal</u> flow of the Temecula-Santa Margarita River is not sufficient to supply all the riparian needs" of the two litigants.  (Emphasis supplied.)  (<u>Rancho Santa Margarita</u> v. <u>Vail</u>, 11 Cal. 2d 501, 516, 81 Pac.

1483

1  2d 533, 541 (1938)).  The Court made express reference to

2  "winter waters that now go to waste" (11 Cal. 2d at 560, 81 Pac.

3  2d at 563).  Second, the initial burden is on the riparian owner

4  to prove the quantity of water he is presently in a position to

5  use reasonably and beneficially on riparian land (Tulare Dist.

6  v. Lindsay-Strathmore Dist., 3 Cal. 2d 489, 535, 45 Pac. 2d 972,

7  991 (1935)).

8      The United States apparently is claiming that because its

9  predecessor at one time needed and used all of the water then

10  available to it for agricultural purposes, the United States,

11  as present owner of the land, has a right to secure an injunc-

12  tion restraining an appropriation of water by another without

13  regard to whether the water is needed and is presently used by

14  the United States upon riparian land for riparian purposes.

15      Reference to certain settled principles of California law,

16  which we have previously stated and will now support by authority

17  demonstrates the fallacy of the foregoing claim.  The doctrine

18  announced in Burr v. Maclay Rancho Water Co., 154 Cal. 428, 436,

19  98 Pac. 260, 264 (1908), that if the overlying owner does not

20  use the water, the appropriator may take all of the regular

21  supply to distant land until such landowner is prepared to use

22  it and begins to do so, has been held to be in harmony with the

23  present state policy declared in the California Constitution,

24  Article XIV, Section 3, which has extended that doctrine as

25  between riparian owners and appropriators (Peabody v. City of

26  Vallejo, 2 Cal. 2d 351, 371, 40 Pac. 2d 486, 493 (1935)).

27      The facts in Meridian Ltd. v. City and County of San

28  Francisco, 13 Cal. 2d 424, 90 Pac. 2d 537 (1939), are analogous

29  to the facts asserted by plaintiff in the instant case in that

30  the action was brought by a lower riparian owner against an

31  upstream appropriator to quiet the title of plaintiff and to

-16-

1484

1  enjoin the defendant from transporting any water of the Tuolumne

2  River away from its watershed.  The measure of the riparian

3  right of plaintiff and his right to the relief sought were

4  declared in accordance with the following principle:

5      "* * * when the law has guaranteed to the
   riparian owner the use of the waters of the stream
6  to the full extent to which he may put the same
   for all present and prospective useful and bene-
7  ficial purposes, and has made available to him the
   means of protecting the rights so guaranteed, he
8  has received the full measure of benefit and pro-
   tection to which he is entitled, and can claim no
9  more.

10     "* * * that is, the riparian is entitled to
   all of the water of the stream, both in the quantity
11 and quality of its natural state, which he is able
   to put to a reasonable beneficial use, and to be
12 protected in that right by the injunctive process
   of the court.  But the riparian owner is not en-
13 titled to an injunction to control the use of water
   by an appropriator in the exercise of a right
14 admittedly subordinate, but in no way injurious
   to the riparian right. * * * The right to an
15 injunction to control the waters of the stream in
   excess of the plaintiff's needs is not shown, and
16 the judgment herein is erroneous to that extent."
   (13 Cal. 2d at 445, 447, 90 Pac. 2d at 547, 548.)

17

18     Upon the basis of these principles of law, the Court con-

19 cluded as follows:

20     "That the plaintiff as a riparian owner has
   the right, subject to the city's prescriptive right,
21 to all the water of the Tuolumne River which it can
   use on its riparian lands for useful and beneficial
22 purposes as contemplated by the constitutional
   amendment of 1928; that the plaintiff's rights as
23 such riparian and also as an appropriator are fully
   recognized and protected by the judgment of the
24 trial court; that when the plaintiff's rights as a
   lower riparian owner and appropriator are thus
25 protected, the plaintiff may not lawfully complain
   of, and has no right to prevent or control, the
26 storage of waters in the upper reaches of the stream
   for flood control, stabilization and equalization of
27 the flow and other beneficial uses; that the plaintiff
   has not been damaged by the operation of the city's
28 storage facilities and in fact may be greatly bene-
   fited thereby" (Emphasis supplied.)  (13 Cal. 2d, at
29 458, 90 Pac. 2d, at 554).

30     See also Pasadena v. Alhambra, 33 Cal. 2d 908, 925, 207 Pac.

31 2d 17, 28 (1949); Tulare Dist. v. Lindsay-Strathmore Dist.,

-17-

1485

1    3 Cal. 2d 489, 524; 45 Pac. 2d 972, 1014 (1935).

2         In all of the California cases which have declared the

3    foregoing rule, including those cited above, the court was

4    considering and discussing the present use by a riparian

5    proprietor or overlying landowner of water _upon riparian or_

6    _overlying land_.  Under the law as declared in these cases,

7    when the riparian has been made secure in his present beneficial

8    and reasonable use of water upon his riparian land and has

9    obtained a declaration of his right to future prospective like

10   use of water, he has received all that he is entitled to and

11   can claim no more.

12        It is submitted that this court should:

13        (1)  determine the quantity of water which is presently

14   used and reasonably needed for beneficial riparian purposes

15   under reasonable methods of use and diversion upon all lands

16   riparian to the Santa Margarita River belonging to the parties

17   to this action;

18        (2)  determine the riparian rights to future use of water

19   upon riparian lands;

20        (3)  declare the riparian rights, both present and pros-

21   pective, to be prior to all other rights, except so far as they

22   may have been lost or impaired by prescription;

23        (4)  enjoin any diversion by defendants which would impair

24   valid and existing riparian uses upon riparian land and the

25   assertion of any claims hostile or adverse to the riparian rights

26   to future use of water;

27        (5)  determine whether there is water surplus to the present

28   reasonable and beneficial use by riparians upon riparian land

29   and declare such water subject to appropriation pursuant to

30   state law;

31        (6)  determine the existence, scope and priority of rights

-18-

1486

gained by appropriation or prescription in accordance with the

law of California and enjoin any unlawful use which would impair

those rights.

1487

## VI

### A PRESCRIPTIVE RIGHT IS PARAMOUNT TO A RIPARIAN RIGHT AGAINST WHICH IT ARISES

Another proposition of law which defendants have asserted and have proposed for discussion is:

"4. A prescriptive right is paramount to a riparian right against which it arises."

That this statement accurately reflects the established rule in California is clear from the cases (Lee v. Pacific Gas & Elec. Co., 7 Cal. 2d 114, 120,  59 Pac. 2d 1005, 1008 (1936); City of San Diego v. Cuyamaca Water Co., 209 Cal. 105, 132, 287 Pac. 475, 488 (1930);  Smith v. Hawkins, 110 Cal. 122, 126, 42 Pac. 453, 454 (1895)), and is obviously recognized by plaintiff (Plaintiff's brief, p. 31, 1. 3).

## VII

### ONE CANNOT OBTAIN A PRESCRIPTIVE RIGHT AS AGAINST USERS UPSTREAM FROM HIM AND CANNOT, SINCE THE EFFECTIVE DATE OF THE WATER COMMISSION ACT IN 1914, OBTAIN A WATER RIGHT BY USE ALONE

Defendants have advanced two additional propositions of law concerning the acquisition of water rights by prescription and by use:

"5. One cannot obtain a prescriptive right as against users upstream from him.

"7. One cannot, since the effective date of the Water Commission Act in 1914, obtain a water right by use alone."

In seeking to refute the claim of defendant Fallbrook Public Utility District to prescriptive rights, the brief of the United States relies upon the settled law of California that in order to acquire a prescriptive right to the use of water the claimant's use must have been adverse and "an actual invasion of

the former owner's rights so as to entitle him to bring an action" (Plaintiff's brief, p. 27, l. 28, to p. 28, l. 20). However, on the following page of the brief it is argued that this rule does not apply to the United States because the rights of the defendants are largely unexercised (Plaintiff's brief, p. 29, ls. 8-12).

No further argument is directed to this distinction and no authority is cited in support thereof. Instead, plaintiff's position seems to be that because the land of the United States is downstream from all other lands and consequently use thereon could not be adverse to any rightful user of water, the United States has gained a prescriptive right without regard to whether its use was adverse and invaded the rights of others. In other words, plaintiff contends that where an element is essential to a right and that element is necessarily lacking, the right can be secured without the element!

Probably the basic fallacy in plaintiff's reasoning is the misuse of terms. In reality plaintiff claims to have acquired a right by diversion of water to beneficial use for a period of years. But diversion of water to beneficial use, without the additional element of adverse use, is nothing more than an appropriation of water in its traditional sense. The distinction between a right gained by appropriation and a prescriptive right, as declared by early California authorities, is that by diverting water and beneficially using it an appropriation was accomplished which secured a right good against everyone who could not show a better right. By use under circumstances and for a period of time sufficient to bar the remedy of those with superior rights, a right, denominated a prescriptive right, was secured (See Duckworth v. Watsonville Land and Water Co., 150 Cal. 520, 527, 89 Pac. 338, 341 (1907)).

21

1489

1　　　　A prescriptive title is founded upon disseizin (<u>Williams</u> v.

2　<u>Sutton</u>, 43 Cal. 65, 73 (1872); <u>Water Co.</u> v. <u>Richardson</u>, 72 Cal.

3　598, 608, 14 Pac. 379, 384 (1887)).  Its basis upon adverse

4　possession or use is described in <u>City of San Diego</u> v. <u>Cuyamaca</u>

5　<u>Water Co.</u>, 209 Cal. 105, 132, 287 Pac. 475, 488 (1930), as follows:

> 6　　"The nature of the right claimed to have been acquired
> 　　in the waters of a flowing stream by prescription rests
> 7　　<u>as a prime essential upon an adverse use thereof</u> by the
> 　　claimant which has, to the extent thereof and for the
> 8　　required term of years, been acquiesced in by the person
> 　　or persons otherwise entitled to the ownership and enjoy-
> 9　　ment of the waters thus adversely abstracted from such
> 　　stream and to enforce those rights by appropriate action."
> 10　　(Emphasis supplied.)

11　　　　In the absence of adverse use, the right, if any, gained by

12　use would be merely an appropriative one, no matter for how long

13　the use continued.  As stated in <u>Montecito Valley Water Co.</u> v.

14　<u>Santa Barbara</u>, 144 Cal. 578, 593,  77 Pac. 1113, 1118 (1904),

15　quoting from <u>Breon</u> v. <u>Robrecht</u>, 118 Cal. 469, 473, 50 Pac. 689,

16　690 (1897):

> 17　　"Title by possession good against all the world save
> 　　the true owner, defendant already had.  <u>He has only</u>
> 18　　<u>the same title after the statute has run</u>, but the
> 　　true owner has then lost his right of action."
> 19　　(Emphasis supplied.)

20　　　　Further confirming the identity of a prescriptive title

21　and a right gained by adverse use is the following statement

22　from <u>Water Co.</u> v. <u>Richardson</u>, 72 Cal. 598, 600, 14 Pac. 379,

23　381 (1887):

> 24　　"..... a right to property founded upon the statute
> 　　of limitations is a prescriptive right. . . . so far
> 25　　as the title to real property is concerned, prescription
> 　　and limitation are convertible terms; and a plea of the
> 26　　proper statute of limitations is a good plea of a
> 　　prescriptive right."
> 27

28　　　　The cases cited by plaintiff (Plaintiff's brief, pp. 30,

29　31) do not support its contention that prescriptive rights can

30　be acquired against upstream owners, against whom a use can

31　never be adverse.  For in all of these cases, the use held to

22

1490

1 create a prescriptive right was adverse to other users or

2 riparians.

3     Larsen v. Apollonio, 5 Cal. 2d 440, 55 Pac. 2d 196 (1936),

4 is an apparent exception because, although the opinion recites

5 that plaintiffs' point of diversion of water to nonriparian land

6 was downstream from defendant's riparian land (5 Cal. 2d at 442,

7 55 Pac. 2d at 196), the Court states that plaintiffs had acquired

8 "not only a right to maintain their ditch but also to the waters

9 flowing therein," citing Smith v. Gaylord, 179 Cal. 106, 175 Pac.

10 449 (1918)( 5 Cal. 2d at 443, 55 Pac. 2d at 197).  In Smith v.

11 Gaylord it was held that plaintiffs had acquired a prescriptive

12 right as against defendants because their point of diversion was

13 not below the lands of defendants but was upon those lands,

14 "at a point which would constitute an interference with their

15 riparian rights therein" (179 Cal. at 108, 175 Pac. at 450).

16 Thus, there is an apparent disparity between the holding in the

17 Larsen case on the one hand and the Gaylord case and the general

18 rule that a prescriptive right cannot be acquired by a downstream

19 use of water on the other hand.  It is necessary to refer to the

20 record in the Larsen case (Supreme Court Records, Vol. 6541) in

21 order to reconcile the decision with the settled law of California.

22 Fortunately such a reference readily discloses that there is no

23 actual discrepancy.  Respondents' (plaintiffs') brief recites the

24 evidence that at the time their diversion of water was made and

25 for more than five years thereafter both the land upon which the

26 point of diversion was situated and the land later purchased by

27 defendant were part of a single parcel which was owned by a third

28 party (Resp. Brief, pp. 8-10).  The trial court found these facts

29 to be true and that

30     "the rights of plaintiffs and their predecessors by
    adverse use and by prescription in and to said ditch
31     and in and to the right to divert and take the water

23

1491

1         of said tributary, had accrued and become vested
2         long before defendant entered the possession of,
        or acquired any right in or to the said premises
3         owned now by him, and that defendant's rights and
        ownership are subject to the rights of plaintiffs
4         in and to said ditch and water right so herein
        described" (Rep. Tr. Vol. B, P. 35, line 13;
5         p. 36, line 4).

6 Therefore the diversion by plaintiffs' predecessor was a trespass

7 upon the land of defendant's predecessor and was adverse to the

8 latter within the rule declared in Smith v. Gaylord.  When

9 defendant purchased the upper portion of the tract he took

10 subject to the prescriptive right which had been previously

11 acquired by plaintiffs' predecessor against the former owner of

12 the whole tract.

13     Pabst v. Finmand, 190 Cal. 124, 128, 211 Pac. 11, 12 (1922)

14 declares the correct rule in unmistakable clarity:

15       "A right can be gained by prescription only by
        acts which operate as an invasion of the rights of
16         the person against whom the right is sought and
        which afford a ground of action by such party against
17         such claimant, and it is a rule of law so well settled
        by decisions in this and other states as to scarcely need
18         any citation to support it that a lower use, since it
        interferes in no way with the flow above, constitutes no
19         invasion of the upper riparian owner's right, and cannot,
        therefore, afford any basis for a prescriptive right.
20         Hargrave v. Cook, 108 Cal. 72, 41 Pac. 18, 30 L.R.A.
        390; Bathgate v. Irvine, 126 Cal. 135, 58 Pac. 442,
21         77 Am. St. Rep. 158; Walker v. Lillingston, 137 Cal.
        401, 70 Pac. 282; Perry v. Calkins, 159 Cal. 175,
22         113 Pac. 136; Miller & Lux v. Enterprise Canal &
        Land Co., 169 Cal. 415, 147 Pac. 567; San Joaquin,
23         etc., v. Worswick, 187 Cal. 674, 203 Pac. 999;
        Peake v. Harris (Cal. App.) 192 Pac. 310." (Emphasis
24         supplied.)

25     In addition to the cases cited in the Pabst case, the fol-

26 lowing decisions affirm the principle that no prescriptive right

27 can be acquired against an upstream proprietor by a downstream

28 use of water:

29     Cory v. Smith, 206 Cal. 508, 511, 274 Pac. 969, 971 (1928);

30     Holmes v. Nay, 186 Cal. 231, 234, 199 Pac. 325, 327 (1921);

31     Hudson v. Dailey, 156 Cal. 617, 627, 105 Pac. 748, 753 (1909);

1492

1    <u>Cave</u> v. <u>Tyler</u>, 133 Cal. 566, 567, 65 Pac. 1089, 1090 (1901);

2    <u>Lakeside Ditch Co</u>. v. <u>Crane</u>, 80 Cal. 181, 183, 22 Pac.

3        76, 77 (1889);

4    <u>Hansen</u> v. <u>McCue</u>, 42 Cal. 303, 310 (1871);

5    <u>McKissick Cattle Co</u>. v. <u>Anderson</u>, 62 Cal. App. 558,

6        567, 217 Pac. 779, 783 (1923);

7    <u>Williams</u> v. <u>Costa</u>, 52 Cal. App. 396, 403, 198 Pac.

8        1017, 1019 (1921);

9    <u>Pyramid Land and Stock Co</u>. v. <u>Scott</u>, 51 Cal. App.

10       634, 637, 197 Pac. 398, 399 (1921).

11       Since plaintiff's diversions outside its riparian right

12   clearly could not be adverse to anyone, because of its position

13   as the last user on the river, it is unnecessary for the purpose

14   of this case to consider whether since December 19, 1914, the

15   effective date of the Water Commission Act (Cal. Stats. 1913,

16   Ch. 586, Cal. Water Code secs. 1000-4360), prescriptive rights

17   may be acquired by adverse use alone without complying with the

18   procedures for appropriating water set forth in that act (see

19   Kletzing:  Prescriptive Water Rights in California, 39 Calif.

20   L. Rev. 369 (1951); Trowbridge:  Prescriptive Water Rights in

21   California:  An Addendum, 39 Calif. L. Rev. 529 (1951)).

22       Plaintiff's claim to a right to use water based upon actual

23   nonriparian use since its acquisition of the Rancho Santa

24   Margarita could only be supported as an appropriative right.

25   The United States could not acquire a prescriptive right as that

26   term is defined in the California decisions.  Therefore, its

27   claim of right based upon use must be considered and determined

28   in the light of State law concerning the acquisition of appro-

29   priative rights to the use of water.  In this connection,

30   California Water Code Section 1225 provides:

31       "No right to appropriate <u>or use</u> water subject

1483

to appropriation shall be initiated or acquired except upon compliance with the provisions of this division." (Emphasis supplied.)

It was held in Crane v. Stevinson, 5 Cal. 2d 387, 398, 54 Pac. 2d 1100, 1106 (1936), that in order to sustain a claim based upon use alone, a riparian owner who had not filed application with the Water Commission (now the Department of Public Works, acting through the State Engineer) must show that the appropriation was complete prior to the enactment of the Water Commission Act, which requires the filing of an application to appropriate water, and that beneficial use of water was maintained for the period of time prescribed by statute or required under decisions prior to the enactment thereof.

We submit that under the admitted facts of this case the United States cannot have acquired a prescriptive right or any right by use or appropriation since its acquisition of the Rancho, in accordance with the laws of the State of California, and that it would be proper and appropriate for the Court to so declare at this time.

VIII

THE RULES OF CALIFORNIA LAW DESCRIBING
AND DELIMITING THE RIPARIAN RIGHT ARE
RULES OF PROPERTY WHICH CONTROL THE
MEASURE OF PLAINTIFF'S RIPARIAN RIGHTS.

The United States asserts that although it claims no greater rights than those to which it succeeded from the Rancho Santa Margarita plus such other rights as may have accrued by use or prescription, in the administration of those rights the California State Engineer does not have jurisdiction within the boundaries of the military establishments in question (Plaintiff's brief, p. 34, ls. 19-27). In support of this proposition, plaintiff cites a number of decisions by federal and state courts to the effect that regulations imposed by the states upon the

26

1494

1   use of property and the conduct of business transactions are

2   not operative within the confines of federal lands over which

3   exclusive jurisdiction has been ceded to the United States

4   (Plaintiff's brief, pp. 34-40). This portion of plaintiff's

5   brief is apparently included for the purpose of answering the

6   fourth question submitted by plaintiff:

> "4. Whether the police power of the State of
> California respecting the management, control and
> administration of rights to the use of water is oper-
> ative within the boundaries of Camp Joseph H. Pendleton,
> United States Naval Hospital and the United States
> Naval Ammunition Depot in view of the fact that ex-
> clusive jurisdiction resides in the United State of
> America over those military establishments."

12   In view of the fact that the State Engineer has not sought

13   to exercise any jurisdiction "within the boundaries of the

14   military establishments in question", we are at a loss to under-

15   stand plaintiff's reason for raising the issue. As plaintiff

16   has made no attempt in its brief to apply the rule concerning the

17   inapplicability of state police regulations in federal enclaves

18   to any of the issues in this case, we hesitate to assume the

19   task of divining plaintiff's purpose in developing this argument.

20   We are of course cognizant of the fact that counsel for

21   the United States have previously contended, in substance, that

22   by reason of cession of exclusive jurisdiction, state laws regard-

23   ing the place or kind of use of water made under riparian claim

24   are not binding upon the United States in this case. Perhaps

25   plaintiff's counsel intend to argue, in the event that its police

26   power question were answered in the negative, that the laws of

27   California which measure the riparian right by reasonable bene-

28   ficial use, present or future, upon riparian land are inoperative

29   as to use of water by the United States upon the military reser-

30   vations involved herein. The State of California will strenuously

31   oppose any such contention in the event it is asserted at the

1495

trial of this action and respectfully requests the Court, if the
question is to be determined at this time, to negative any inter-
ference that the United States may, under claim of riparian right
as successor to the Rancho Santa Margarita, now or in the future
demand that sufficient water be allowed to flow uninterrupted
downstream to its lands to supply uses upon nonriparian lands
outside the watershed of the Santa Margarita River.

A contention of the character above noted would be directly
contrary to both the letter and spirit of the stipulation between
the United States and the State of California.  The pretrial
order herein provides that "the issues in this cause are hereby
defined and limited in conformity with the statements contained"
in said stipulation.  Paragraph IV of the stipulation states that
the rights of the United States to the use of water "are to be
measured in accordance with the laws of the State of California."
The authorities cited in this brief establish that the measure
of the riparian right under California law is reasonable bene-
ficial use of water upon riparian land, for riparian purposes,
correlated with an equal right of all others who own land
riparian to the stream.

In light of the law and the stipulation, the issue of the
cession of exclusive jurisdiction and the scope of operation of
the State's police power, which plaintiff has attempted to
inject herein, is wholly irrelevant.  If all rights of the
United States are to be measured in accordance with State law,
it is immaterial to what extent the State has lost jurisdiction
over the place of use.  In fact, the question whether the State
laws which measure the riparian right are an exercise of the police
power is itself immaterial, since the United States has bound it-
self to claim no other measure, without regard to the nature of
the power by which that measure was established.

Totally apart from the stipulation, it is clear that the question of police power and the effect of cession of exclusive jurisdiction is a false issue in regard to the measure of the riparian right of the United States. The question to be determined is not what the United States may do with what it owns, but rather, <u>what does it own?</u> The answer is supplied by state <u>property</u> law as set forth by the authorities previously cited in this brief. The laws of California which describe and delimit the riparian right are laws of property, not police laws.

It may be conceded that restrictions upon the use of property in private ownership, imposed by State law in order to protect the public health, safety or morals or to further the public welfare, if regulatory in nature, are a true exercise of the police power of the State. Counsel for the United States cite authority that where a state has ceded to the United States exclusive jurisdiction over land owned by the government, state criminal laws and state laws regulating commercial transactions have no application to crimes committed and transactions conducted upon the federal land. This principle may be carried one step further, as counsel have done, by declaring that the State may in no way regulate property of the United States, but in so doing the issue presented for decision is not met. Regulation of property of the United States is not involved in this case. It is the definition by State law of property rights acquired by the United States that must be determined by the Court.

Under the authorities cited by the United States it might be granted that the federal government is

1497

free to do what it wills with such water as is upon its
property once that water has been reduced to its physical
possession.  But that is not the right that is demanded.
The United States is asserting the right not merely to
use water in its possession upon its property in any
manner it sees fit, unhindered by state regulations,
but to _insist_ that in the future water in the stream
above its land be permitted to flow down and enter upon
land merely because the United States asserts exclusive
jurisdiction over such land.  No authority for such right
has been cited and we know of none.  Whether it can en-
force such flow of water depends upon whether it has
acquired the property right to do so under State law.
The United States must rely and has relied upon State
law, as it construes it, for establishment of its prop-
erty rights to the use of water.  It cannot claim the
benefits of such laws and at the same time disavow the
limitations upon its property rights which are inherent
in those laws.

Another approach to the problem is equally decisive.
So far as its riparian rights are concerned the United
States has stipulated (Paragraph II of Stipulation
between the State of California and United States)
that it claims only such rights to the use of water
as it acquired when it purchased the Rancho Santa
Margarita.  There is no possible basis for any
further claim.  It has been shown that under
California law the Rancho owned, not the corpus
of the water, but the right to use a portion of
the water for reasonable beneficial use upon its
riparian land.  It did not own the right to use the

30

1  water except for proper riparian purposes upon riparian

2  land and could convey no higher title.

3      Dated:  Los Angeles, California.

4         October 13, 1952.

5

6             Respectfully submitted,

7             EDMUND G. BROWN
           Attorney General of the
8             State of California

9             ARVIN B. SHAW, JR.
           Assistant Attorney General
10             of the State of California

11             GEORGE G. GROVER
           Deputy Attorney General
12             of the State of California

13             ADOLPHUS MOSKOVITZ
           Deputy Attorney General
14             of the State of California

15             Attorneys for the
           People of the State of California,
16             Defendant in Intervention

17

18             GAVIN M. CRAIG
           Attorney, Division of Water Resources
           Of Counsel
19

20          By _Arvin B. Shaw jr_
21             ARVIN B. SHAW, JR.

22

23

24

25

26

27

28

29

30

31

1499