ORIGINAL

LAW OFFICES
W. B. DENNIS
RT. 1, BOX 58
FALLBROOK, CALIFORNIA
PHONE 587

ATTORNEY FOR Defendant SANTA

MARGARITA MUTUAL WATER COMPANY

(SPACE BELOW FOR FILING STAMP ONLY)

FILED

OCT 15 1952

EDMUND L. SMITH, Clerk
By _Charles A. Deity_
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

      vs.

FALLBROOK PUBLIC UTILITY DISTRICT,
  a public service corporation of
  the State of California;

SANTA MARGARITA MUTUAL WATER COMPANY,
  a California corporation,

           et al,

              Defendants;

STATE OF CALIFORNIA,

          Defendant in Intervention

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil No. 1247 - SD

DEFENDANT SANTA MARGARITA MUTUAL WATER COMPANY'S

REPLY TO PLAINTIFF'S "BRIEF IN REGARD TO QUESTIONS

PROPOUNDED TO COURT IN ADVANCE OF TRIAL"

COPY RECEIVED

1500

# TOPICAL INDEX

Page

STATEMENT . . . . . . . . . . . . . . . . . . . . . .   2

(A)  THE PLAINTIFF IN THIS ACTION CLAIMS AN
     INTEREST IN THE WATERS OF THE SANTA
     MARGARITA RIVER AS AN APPROPRIATOR, BY
     PRESCRIPTION, AND BY CONTRACT, IN
     ADDITION TO ITS RIPARIAN RIGHTS. . . . . . .   2

(B)  THE SANTA MARGARITA MUTUAL WATER COMPANY
     HAS NOT STIPULATED OR AGREED THAT CAMP
     JOSEPH H. PENDLETON AND THE UNITED STATES
     NAVAL AMMUNITION DEPOT HAVE ANY RIPARIAN
     RIGHTS IN THE SANTA MARGARITA RIVER. . . . . .   3

(C)  THE RIPARIAN RIGHTS IF ANY OF PLAINTIFF
     ARE PRIOR AND PARAMOUNT TO THE APPROPRI-
     ATIVE RIGHTS OF THE SANTA MARGARITA
     MUTUAL WATER COMPANY . . . . . . . . . . . . .   7

WATER RIGHTS OF RIPARIAN OWNERS INTER SE
ARE CORRELATIVE . . . . . . . . . . . . . . . . . . .   10

WATER CAN BE DEMANDED UNDER A RIPARIAN RIGHT
ONLY FOR USE ON RIPARIAN LANDS . . . . . . . . . . .   10

WATER CAN BE DEMANDED UNDER A RIPARIAN RIGHT
ONLY FOR PROPER RIPARIAN USES AND PURPOSES:
(a) STORAGE OF WATER IS NOT A PROPER RIPARIAN USE;
(b) MILITARY USE IS NOT A PROPER RIPARIAN USE . . . . .   15

A PRESCRIPTIVE RIGHT IS PARAMOUNT TO A
RIPARIAN RIGHT AGAINST WHICH IT ARISES . . . . . . . .   21

ONE CANNOT OBTAIN A PRESCRIPTIVE RIGHT AS
AGAINST USERS UPSTREAM FROM HIM . . . . . . . . . . .   21

AN APPROPRIATOR CAN TAKE AND USE ANY WATER
BELONGING TO RIPARIANS BUT NOT CURRENTLY USED
BY THEM . . . . . . . . . . . . . . . . . . . . . . .   22

ONE CANNOT, SINCE THE EFFECTIVE DATE OF THE
WATER COMMISSION ACT IN 1914, OBTAIN A WATER
RIGHT BY USE ALONE . . . . . . . . . . . . . . . .   24

THE CESSION BY THE STATE TO THE UNITED STATES
OF EXCLUSIVE JURISDICTION OVER CAMP PENDLETON
IS IMMATERIAL TO ANY ISSUE IN THE CASE . . . . . . .   25

WHETHER THE POLICE POWER OF THE STATE OF CALIFORNIA
RESPECTING THE MANAGEMENT, CONTROL AND ADMINISTRATION
OF RIGHTS TO THE USE OF WATER, IS OPERATIVE WITHIN
THE BOUNDARIES OF CAMP JOSEPH H. PENDLETON, THE U.S.
NAVAL HOSPITAL AND THE U.S. NAVAL AMMUNITION DEPOT
IN VIEW OF THE FACT THAT EXCLUSIVE JURISDICTION
RESIDES IN THE UNITED STATES OF AMERICA OVER THOSE
MILITARY ESTABLISHMENTS . . . . . . . . . . . . . . .   25

## TOPICAL INDEX - Continued

Page

WHETHER THE RIPARIAN RIGHTS IN THE SANTA
MARGARITA RIVER SYSTEM OF THE UNITED STATES
OF AMERICA, PLAINTIFF, ARE PRIOR AND PARAMOUNT
UNDER THE LAWS OF THE STATE OF CALIFORNIA TO
THE APPROPRIATIVE RIGHTS CLAIMED BY THE DEFENDANT
SANTA MARGARITA MUTUAL WATER COMPANY IN THAT
STREAM IN VIEW OF THE ADMISSION BY THAT COMPANY
THAT THE EARLIEST DATE OF PRIORITY WHICH IT HAS
ASSERTED IS OCTOBER 4, 1946. . . . . . . . . . . . . .   33

QUESTIONS II and III of PLAINTIFF  . . . . . . . . . .   36

THE SANTA MARGARITA MUTUAL WATER COMPANY IS OF
THE OPINION THAT THEIR CLAIMED APPROPRIATIVE
RIGHTS CAN BE EXERCISED WITHOUT ENCROACHING
UPON THE VESTED RIPARIAN RIGHTS OF THE UNITED
STATES . . . . . . . . . . . . . . . . . . . . . . . .   36

THE BURDEN OF PROOF  . . . . . . . . . . . . . . . . .   39

1

2

TABLE OF CASES AND AUTHORITIES CITED

Page

3

Anaheim Union Water Co. v. Fuller, 150 Cal.327 .......... 4, 7,  11

4

Antioch v. Williams Irr.Dist., 188 Cal.451 ..............         32

5

6

Bathgate v. Irvine, 126 Cal.135 ......................... 3, 11, 22

7

Boehmer v. Big Rock Irr. Dist., 117 Cal. 19 .............          4

8

Burr v. Maclay Rancho Water Co., 154 Cal.  ..............23, 24, 36

9

10

Cal.Oregon Power Co. V. Beaver Portland Cement Co.
    295 U.S. 142 79 L.Ed.1356, 162 ........................         29

11

Carlsbad etc. Co. v. San Luis Rey etc. Co.,
    78 C.A.2d, 900 ................................. 10,  19, 34, 35

12

13

Chauvet v. Hill, 93 Cal.410 ............................      11, 14

14

City of Lodi v. East Bay Mun. Utility Dist. 7 Cal.2d,316..18,34, 38

15

City of Pasadena v. City of Alhambra, 33 Cal.2d, 908.....10, 19, 21,
                                                         23, 34, 37

16

17

City of San Bernardino v. City of Riverside,186 Cal.7....         23

18

Collier v. Merced Irr. Dist., 213 Cal.554 ...............         37.

19

Colorado P. Co. v. Pacific Gas & Electric Co. 218 Cal.559         18

20

Crane v. Stevenson, 5 Cal.2d, 387 ......................          25

21

Drake v. Tucker, 43 C.A. 53, 56, 58 ....................          38

22

Duckworth v. Watsonville Water & Light Co. 150 Cal.520...         14

23

Dykzeul v. Mansur, 65 C.A.2d, 503,507 ...................          3

24

25

Ford & Son v. Little Falls Fibre Co. 280 U.S. 369........         17

26

Fryer v. Fryer, 63 C.A.2d, 343, 348 .....................         36

27

Fulton County etc. co. v. Rockwood Mfg. Co.,205 App.
    Div.787 (200 N.Y.Supp.225) ..........................         17

28

29

Gin S. Chow v. City of Santa Barbara, 217 Cal. 673.......     34, 35

30

Gould v. Eaton, 117 Cal. 539 ...........................         12

31

Gould v. Stafford, 91 Cal. 146 .........................         13

32

|  |  | Page |
|---|---|---|
| 1 | Hargrave v. Cook, 108 Cal. 72............................ | 22, 38 |
| 2 | Heilbron v. Fowler Switch Canal Co., 75 Cal.432....... | 12 |
| 3 | Heilbron v. Seventy Six Land & Water Co., 80 Cal.194.. | 12 |
| 4 | Holmes v. Nay, 186 Cal.231 ............................ | 7, 13 |
| 5 | Hudson v. Dailey, 156 Cal. 617 ........................ | 24 |
| 7 | Inyo Cons. Water Co. v. Jess, 161 Cal. 516............ | 9, 27 |
| 8 | Irr. Dist v. Mt.Shasta Co., 202 Cal.56 ............... | 26 |
| 10 | Katz v. Walkinshaw, 141 Cal. 116 ...................... | 23, 24 |
| 11 | Krall v. U.S., 79 Fed. 241 ............................ | 31 |
| 13 | Lindblom v. Round Valley Water Co., 178 Cal. 450 ..... | 15, 17 |
| 14 | Little Falls Fibre Co. v. Ford & Son, 249 N.Y. 495.... | 17 |
| 16 | Martin v. Western States G. & E. Co. 8 C.A.2d, 226.... | 26 |
| 17 | Meridian, Ltd. v. San Francisco, 13 Cal.2d, 424....... | 18, 34 |
| 18 | Merritt v. City of Los Angeles, 162 Cal. 47........... | 8, 27 |
| 19 | Miller & Lux, Inc. v. J. G. James Co., 179 Cal.689.... | 12 |
| 20 | Miller & Lux, v. Enterprise Canal & Land Co., 169 Cal.415 | 22 |
| 21 | Miller & Lux, Inc. v. Light and Power Corp.,120 C.A. 589 | 31 |
| 22 | Moore v.Cal. Oregon Power Co., 22 Cal.2d, 725......... | 16 |
| 24 | Natoma W. & M. Co. v. Hancock, 101 Cal. 42............ | 24 |
| 25 | Natural Soda Products Co. v. City of L.A. 23 Cal.2d,193 | 35 |
| 27 | Orchard v. Cecil F. White Ranches, Inc. 97 C.A.2d, 35.. | 36 |
| 29 | Parker v. Swett, 188 Cal. 474 ......................... | 13, 37 |
| 30 | Pabst v. Finmand, 190 Cal.124 ......................... | 22, 24 |
| 31 | Palmer v. Railroad Commission, 167 Cal. 163 .......... | 30 |
| 32 | Peabody v. City of Vallejo, 2 Cal.2d, 351............. | 17, 19, 23, 34, 35, 37,38 |

|  | Page |
|---|---|
| Peake v. Harris (Cal.App.) 192 Pac. 310 ................ | 22 |
| Perry v. Calkins, 159 Cal. 175 ...................... | 22 |
| Prather v. Hoberg, 24 Cal.2d, 549 ...................... 14, | 37 |
| Rancho Santa Margarita v. Vail, 11 Cal.2d, 501 .......... 4, 7, 10, 18 | |
|  | 23, 34, 35, 37, 38 |
| Rindge v. Crags Land Co., 56 C.A. 247 ................. | 6 |
| San Joaquin, etx. v. Worswick, 187 Cal. 674 ............ | 22 |
| Seneca C.G.M.Co. v. Great Western Power Co., 209 Cal.206 | 17, 18 |
| Silver Creek etc. v. Hayes, 113 Cal. 142 ............... | 4 |
| Southern Cal. I. Co. v. Wilshire, 144 Cal. 68 ......... | 11 |
| Still v. Palouise Irr. & Power Co.  64 Wash. 606........ | 18 |
| Tulare Dist. v. Lindsay-Strathmore Dist. 3 Cal.2d, 489.. 34, 35, 38 | |
| United Paper Board Co. v. Iroquois P. & Paper Co.,226 N.Y. 38 | 17 |
| U.S. v. Central Stockholders Corp., 52 Fed.2d, 322, 1931 | |
|    9th Circuit, p. 329 ......................... | 31 |
| Walker v. Lillingston, 137 Cal. 401 ................... | 22 |
| Watkins L.Co. v. Clements, 98 Tex. 578 ................ | 11 |
| Yocco v. Conroy, 104 Cal. 468 .......................... | 13 |

## STATEMENT

The brief filed and served by plaintiff has attached as Appendix C a copy of the "Order on Pretrial Hearing" and "Pretrial Order", and is preceded by several pages of argumented material designated as "Synopsis of Memoranda" and "Preliminary Statement". As many of the statements contained in the "Synopsis of Memoranda" and many references in the brief to Appendix C need clarification, we are taking the liberty of calling the court's attention to certain facts before proceeding to discuss the legal principles that are to be determined and ruled on by the court in advance of trial.

### A.

THE PLAINTIFF IN THIS ACTION CLAIMS AN INTEREST IN THE WATERS OF THE SANTA MARGARITA RIVER AS AN APPROPRIATOR, BY PRESCRIPTION, AND BY CONTRACT, IN ADDITION TO ITS RIPARIAN RIGHTS.

The present action is an action to quiet title.  The court has been requested to determine what rights, if any, the plaintiff and the defendants have in and to the waters of the Santa Margarita River. This necessarily involves an adjudication of all rights claimed by plaintiff whether by prescription, appropriation or contract, and there can be no doubt that the plaintiff is claiming rights in and to the waters of the Santa Margarita River by virtue of:

    (1) Prescription. (See p.V, 1.23, to 1.2 on p.VI of Synopsis of Memoranda")

    (2) Appropriation under the common law. (See p.VI, 1.11-13 of Synopsis of Memoranda; and p.25, 1.8-20, Pretrial Order, Appendix C.

    (3) Appropriation pursuant to applications filed with the Division of Water Resources of the State of California. (See Pretrial Order, Appendix C, p.32, 1.24-26; Exhibit H, p.66.)

W.B.Dennis

-2-

(4) Rights acquired by agreement with the Vail interests and
reduced to a stipulated judgment in the Rancho Santa
Margarita v. Vail litigation. (Pretrial Order Appendix C,
p.29, 1.22-26)

(5) Overlying rights in underground percolating waters. Pre-
trial Order Appendix C, p.25, 1.26-29; p.9, 1.9 to 1.15
on p.10)

(6) Riparian rights in the waters of the Santa Margarita
River. (Pretrial Order Appendix C, p.26, 1.22-24)

It therefore cannot be disputed that plaintiff claims the rights to
the use of the waters of the Santa Margarita River as an appropriator,
and by virtue of prescription, and that said claims are entirely sep-
arate and distinct from its claims as a riparian owner.  It cannot be
disputed that a riparian owner may acquire title by prescription or by
appropriation or by contract to the rights to the use of the water of
the stream in addition to its riparian rights. (see Dykzeul v. Mansur,
65 C.A.2d, 503,507; and Bathgate v. Irvine, 126 Cal. 135, 140. )
However, the elements of proof in proving a claim by prescription are
entirely different from the elements of proof necessary to prove a
claim by appropriation or the evidence that would have to be introduced
to establish riparian rights in the river.

### B.

THE SANTA MARGARITA MUTUAL WATER COMPANY HAS NOT
STIPULATED OR AGREED THAT CAMP JOSEPH H. PENDLETON
AND THE UNITED STATES NAVAL AMMUNITION DEPOT HAVE
ANY RIPARIAN RIGHTS IN THE SANTA MARGARITA RIVER.

The defendant Santa Margarita Mutual Water Company has not
stipulated nor agreed that the plaintiff acquired or has any riparian
rights in the Santa Margarita River or its tributaries.  This defend-
ant did agree that plaintiff has some land which is riparian to the

W.B.Dennis

-3-

1507

river, but that will not relieve the plaintiff from proving (1) the
location of its riparian lands  (2) the amount of acreage which is
riparian to the river and can be economically irrigated  (3) the
quantity of water which can be put to beneficial use on such lands as
have retained their riparian rights.

TO ESTABLISH WHAT LANDS OWNED BY PLAINTIFF OR THE VAILS HAVE
RIPARIAN RIGHTS, PLAINTIFF MUST PROVE BY COMPETENT EVIDENCE:

    (1) That the lands for which the riparian rights are claimed
        abut upon the Santa Margarita River.

    (2) That the lands for which the riparian rights are claimed
        lie within the watershed.

    (3) That the lands for which the riparian rights are claimed
        have remained riparian through their entire chain of
        title.

See Rancho Santa Margarita v. Vail, 11 Cal.2d, 501, where the court
states on page 528:

> "We think that the trial court was in error in hold-
> ing, as to a downstream owner such as respondent, that
> the riparian lands of appellants in the Murrieta drainage
> area were not riparian to the main river.  It is well
> settled that the extent of lands having riparian status
> is determined by 3 criteria:
>     1. The land in question must be contiguous to or abut
> on the stream, except in certain cases not now involved....
>     2. The riparian right extends only to the smallest
> tract held under one title in the chain of title leading
> to the present owner. (Boehmer v. Big Rock Irr. Dist.,
> 117 Cal.19 /48 Pac.908/....
>     3. The land, in order to be riparian, must be within
> the watershed of the stream. (Anaheim Union Water Co. v.
> Fuller, 150 Cal.327 /88 Pac.978, 11 L.R.A.(N.S.) 1062/.)
> (Italics ours.)

See also Silver Creek etc. v. Hayes, 113 Cal. 142

Therefore in this action before plaintiff can establish any
riparian rights or establish that the Vail interests have any riparian
rights in the waters of the Santa Margarita River, it is going to be
necessary for them to prove by competent evidence:

    (1) The acreage owned by plaintiff and the Vails in the water
shed of the Santa Margarita River.

W.B.Dennis                         -4-                 1508

(2) The quantity of water that is being put to and can be put to beneficial use on the government lands and the Vail lands located within the watershed of the river.

(3) That said lands abut on or are traversed by the Santa Margarita River.

(4) That each parcel held and owned by plaintiff or by the Vails has preserved its riparian rights through its entire chain of title.

There is nothing in the Pretrial Order or in the pleadings which will relieve the plaintiff from the burden of going forward and proving each of the above elements necessary to establish its riparian rights in and to the waters of the river.

The subdivision of the Rancho Santa Margarita holdings subsequent to the decision in the Vail case could defeat the riparian claims of the owners of the land. That the property has been subdivided into different parcels subsequent to the decision cannot be denied. Plaintiff has agreed that its holdings consist of five separate parcels of land acquired at different times (Pretrial Order, Appendix C, p.11, par.1), plaintiff having acquired one parcel of land having 9147.55 acres on January 21, 1942, one parcel containing 123,620 acres on December 31, 1942, one parcel having an area of 1676.58 acres on December 22, 1943, one parcel having an area of 112.11 acres on February 28, 1949, and one parcel having an area of 1574.61 acres on August 8, 1945.

It further appears from Plaintiff's Pretrial Exhibit 16 attached to the Pretrial Order, that the parcel containing 123,620 acres had, prior to its acquisition by plaintiff and subsequent to the Vail litigation, been subdivided into two parcels of 71,200 acres and 51,420 acres respectively, which were owned by different parties at the time plaintiff acquired its properties. Consequently, it can not be denied that plaintiff's title to the properties referred to in Plaintiff's Complaint were acquired in 1942, 1943, 1945 and 1949 and

W.B.Dennis

-5-

1 not, as plaintiff states in its brief, in 1942.

2     The defendants admitted that plaintiff acquired fee simple

3 title to the properties referred to in its Complaint (Pretrial Order

4 Appendix C, p.11, par.1) and that a portion of the lands owned by the

5 United States is riparian to the Santa Margarita River (Pretrial Order

6 Appendix C, p.14, par.6).  The defendants did not admit, however, and

7 there is no stipulation or agreement that the plaintiff acquired any

8 riparian rights in 1942 or at any other time.  The defendants did not

9 agree to the extent or location of the riparian acreage owned by the

10 Vails or by the plaintiff in the Pretrial Order.  The Santa Margarita

11 Mutual Water Company, in its Answer, denied that the United States has

12 any riparian rights, and therefore it is encumbent upon the plaintiff

13 in this action to establish the measure and extent of its riparian

14 rights in and to the waters of the Santa Margarita River.  Until is

15 has established in these proceedings the extent of its riparian rights

16 and the extent of the Vail riparian rights, neither the plaintiff nor

17 the Vails have any known extensive riparian rights, and neither the

18 Court nor the plaintiff is justified in assuming that the plaintiff

19 or the Vails own lands which are riparian to the Santa Margarita River,

20 in the absence of legal proof that they have such rights.

21     Counsel for plaintiff has consistently, since the institution

22 of these proceedings, referred to certain physical facts and conditions

23 found by the trial court or referred to by the appellate court in the

24 Vail litigation.  The Santa Margarita Mutual Water Company was not a

25 party to those proceedings, and it would seem appropriate at this time

26 to call counsel's attention to the fact that statements of the trial

27 or appellate court in the Vail litigation relative to physical condi-

28 tions, the extent of the riparian holdings of the parties, the past

29 use of water by the parties, the demands of the Vails and the Rancho

30 Santa Margarita on the river, and the extent of the riparian acreage

31 of the parties in that litigation, are not binding upon this defendant

32 in the present litigation.  See Rindge v. Crags Land Co. 56 C.A.247,254.

W.B.Dennis

1510

Even the watershed of a river varies in respect to the owners
of land.  Land located within the watershed of the main river or one
of its tributaries may or may not legally be considered as being a
portion of the watershed of the river in respect to lands upstream
or lands situated in the watershed of a different tributary. (See
Rancho Santa Margarita v. Vail, 11 Cal.2d, 501;  Anaheim Union Water
Co. v. Fuller, 150 Cal., 327; Holmes v. Nay, 186 Cal., 231).

<u>C.</u>

THE RIPARIAN RIGHTS IF ANY OF PLAINTIFF ARE PRIOR

AND PARAMOUNT TO THE APPROPRIATIVE RIGHTS OF THE

SANTA MARGARITA MUTUAL WATER COMPANY.

Counsel for plaintiff has devoted a large portion of its
brief to establishing certain principles of law which have never been
questioned by counsel for the defendant Santa Margarita Mutual Water
Company, to wit:

(1)  That a riparian right is prior to an appropriative right.

(2)  That a riparian right is a part and parcel of the real
     property to which it is appurtenant.

(3)  That a riparian right is a vested right.

(4)  That neither a riparian right nor any portion of it may
     be taken without compensation.

(5)  That a riparian owner is entitled to a judgment protect-
     ing his present and future rights in and to the waters
     of the river.

See Paragraphs A to S of the Reply of the Defendant Santa
Margarita Mutual Water Company to Plaintiff's Motion For a Separate
Trial on the Merits, heretofore filed and served in these proceedings.

This defendant also admits that a riparian right cannot be
created by use nor lost by disuse, with two exceptions: first, that
the right may be lost by prescription; and second, by dedication to a

W.B.Dennis

-7-

1511

public use or inverse condemnation.

The Santa Margarita Mutual Water Company has not admitted and does not admit that the plaintiff has any riparian rights in and to the waters of the Santa Margarita River, and the extent, the measure and the nature of a riparian right is one of the material issues in this litigation. The defendant Santa Margarita Mutual Water Company also denies that the United States of America has acquired any rights to the use of the waters of the Santa Margarita River by prescription; by appropriation; and denies that the United States of America, as against the defendant Santa Margarita Mutual Water Company, could have acquired any rights in and to the use of the waters of the river by virtue of the stipulated judgment attached to Plaintiff's Complaint as Exhibit A.

It is the position of the Santa Margarita Mutual Water Company that as an appropriator it is entitled to have its rights adjudicated and protected by the court to the same extent that the United States of America is entitled to have its appropriative and prescriptive rights, if any, adjudicated and declared by the court. The fact that the Santa Margarita Mutual Water Company has never diverted any water from the Santa Margarita River does not affect its rights to have its claims adjudicated, even though they may be inchoate, incipient and unexercised. See Merritt v. City of Los Angeles, 162 Cal.47. In that action, the plaintiff sued for the purpose of obtaining adjudication of alleged conflicting claims to the use of water of the Haiwee Creek in Inyo County. The defendant, in its answer, alleged that it was the owner of a first and paramount right to the waters of the creek. The plaintiff's claims were based on notices of appropriation, and Judge Shaw said on page 50:

> "Defendant attempts to support the judgment solely on the
> ground that one who has posted a notice of appropriation
> of water from a running stream, under the provisions of
> the Civil Code, sections 1410 to 1422, has no vested es-
> tate, right or interest in the water, present or future,
> until he has actually diverted and used the water in

W.B.Dennis

-8-

pursuance of his notice, and that in the mean time he has no standing in court to ask for protection of the right to use the water, which he expects to have upon the completion of the work necessary for that purpose, against hostile claims or diversions which may ripen into a prescriptive right by continuous use, and no right to invoke the aid of the courts to determine and adjudge whether or not a hostile diversion is in fact prior or paramount to his own.  In the case entitled <u>Inyo Consolidated Water Co. v. Jess</u>, 161 Cal. 516 /119 Pac.934/, we had occasion to consider this proposition; made there also on behalf of the city of Los Angeles...It was there decided that such a claimant to the use of water has an incomplete, incipient, conditional right in the water, <u>which is a vested interest in the real property</u>, and which may be adjudged to be such in an action to determine conflicting claims under section 738 of the Code of Civil Procedure.  Upon the authority of that decision we hold that the plaintiff showed sufficient interest to entitle him to a judgment of the court protecting that interest against all adverse claims which would be subordinate to plaintiff's right if he should comply with all the requirements of the statute and thereupon take the water and apply it to a useful purpose."
(Italics ours.)

See also <u>Inyo Consolidated Water Co. v. Jess</u>, 161 Cal.516 (119.Pac. 934).

By admitting that the riparian rights, if any, of the plaintiff are prior and paramount to the appropriative rights of the defendant Santa Margarita Mutual Water Company, this defendant does not admit that the plaintiff has acquired any rights by prescription or by appropriation in and to the waters of the Santa Margarita River or that diversion of waters from the watershed of the Santa Margarita River is being made by virtue of its riparian rights, or that the plaintiff has acquired any rights to the use of the waters of the Santa Margarita as against this defendant by virtue of the stipulated judgment in the Vail case.

The above statement having been made in an attempt to clarify statements made by plaintiff in its Synopsis of Memoranda, and the statement which is attached to its brief, we will now proceed to the discussion of the points which the trial court ordered briefed in advance of trial.  We will first dispose of the questions propounded by the defendants, and then take up the questions propounded by the plaintiff.

W.B.Dennis

-9-

1513

## I.

### WATER RIGHTS OF RIPARIAN OWNERS INTER SE
### ARE CORRELATIVE.

Plaintiff apparently concedes that the riparian rights of the United States of America and the riparian rights of private proprietors in the Santa Margarita River are correlative. (Plaintiff's Brief, pp.16 and 17), and it is therefore not necessary to discuss this point at length.  The statements in Plaintiff's Brief on pages 16 and 17 are supported by the authorities cited by plaintiff, and since the decisions in <u>Carlsbad etc. Co. v. San Luis Rey etc. Co.</u> 78 C.A.2d, 900, 911; and <u>City of Pasadena v. City of Alhambra</u>, 33 Cal.2d 908,935, this point is not open to discussion.

## II.

### WATER CAN BE DEMANDED UNDER A RIPARIAN RIGHT
### ONLY FOR USE ON RIPARIAN LANDS.

A riparian right only extends to lands which are riparian to the stream.  To be riparian to the stream, the land/(a) must be located within the watershed of the stream; (b) abut upon the stream; and (c) have remained riparian through its entire chain of title. (<u>Rancho Santa Margarita v. Vail</u>, 11 Cal.2d, 501, 528, heretofore cited on p.4 of this brief.)

There are numerous cases in which the owner of a large parcel of land lying both within and without the watershed, has attempted to(a) divert water from that portion of the  parcel located within the watershed of a stream to that portion of the parcel which lies outside the watershed; or (b) to divert water from a parcel of riparian land to another parcel of land in the same watershed which is not riparian; or (c) to increase or feed his riparian rights on one parcel by virtue of the ownership of another riparian parcel.

W.B.Dennis

-10-

The Supreme Court of California has consistently denied the existence of such rights.  The only way that such rights can be obtained is by prescription or appropriation.

In the leading case of <u>Anaheim Union Water Co. v. Fuller</u>, 150 Cal. 327, the court, on page 330, said:

> "Land which is not within the watershed of the river is not riparian thereto, and it is not entitled, as riparian land, to the use or benefit of the water from the river, although it may be part of an entire tract which does extend to the river. (<u>Chauvet v. Hill</u>, 93 Cal.410, 28 Pac.1066; <u>Bathgate v. Irvine</u>, 126 Cal.135 /77 Am.St.Rep.158, 58 Pac.442/; <u>Southern Cal. I Co. v. Wilshire</u>, 144 Cal.68 /77 Pac. 767/; <u>Watkins L. Co. v. Clements</u>, 98 Tex.578 /107 Am.St.Rep.653, 86 S.W.733/.)"

<u>Bathgate v. Irvine</u>, 126 Cal. 135,  was an action instituted by 275 plaintiffs who were the owners of land riparian to Santiago Creek in Orange County, to quiet their titles to the water of said creek.  It appeared from the decision that they claimed rights in and to the waters of the creek by virtue of their riparian ownership; and by virtue of appropriations acquired through the posting of certain notices.  The defendant owned a large tract of land consisting of one parcel, part of which was located within the watershed of Santiago Creek, and part of it outside the watershed.  The trial court's judgment allowed the defendant to transport water from the creek to his lands outside the watershed for domestic and for live stock purposes, but denied the defendant the right to transport the water for agricultural purposes.  The Supreme Court stated that the trial court erred in allowing the defendant to transport the water from Santiago Creek for use on that portion of the parcel which abutted on the creek but which was located outside the watershed of the creek, and on page 143 stated:

> "We think the rule should be that under the claim alone of riparian right the owner of the land cannot, to the injury of another riparian owner, take the water beyond the natural watershed of the stream for any purpose, and that riparian rights cannot extend beyond the watershed of the stream, and that lands so situated are not to be regarded as riparian.... The contention of defendant, carried to

W.B.Dennis

1515

its logical conclusion, would make all the lands em-
braced in a large tract riparian to any one or more of
the creeks flowing through it, at the pleasure of the
owner, regardless of the lateral extent of the land,
and regardless of the natural barriers which divide the
entire body into distinct and separate drainage systems,
each drawing its natural supply of water from distinct
and separate sources.  Such an interpretation of the law
of riparian rights can find no support from any necessity
existing in this state, and would, if adopted, lead to
grave abuses, and would result in serious injustice to
other riparian owners."

The doctrine that a riparian owner may not transfer water by
virtue of his riparian right to lands outside the watershed was
affirmed in Miller & Lux, Inc., v. J. G. James Co., 179 Cal. 689, the
court saying on page 692:

"It is true that it has been held that the upper riparian
owner cannot sell the water for use upon lands not ri-
parian, for this is not the exercise of a riparian right,
and the purported transfer would not be a transfer of a
riparian right. (Heilbron v. Fowler Switch Canal Co.
75 Cal.432 /7 Am.St.Rep.183, 17 Pac.535/; Heilbron v.
Seventy Six Land & Water Co. 80 Cal.194 /22 Pac.62/.

Counsel for plaintiff has on numerous occasions stated that
the plaintiff can divert those waters which it has the right to use on
its riparian lands, but for which it has no present use, to its non-
riparian lands.  This argument is not new and it has been rejected by
the Supreme Court of California.  In Gould v. Eaton, 117 Cal. 539,
the court, on page 541, stated:

"The present appeal is by the defendants from that por-
tion of the judgment which enjoins them from diverting
to lands not riparian to the creek any of the waters
naturally flowing in its channel,..."

and on page 542 the court disposed of appellant's contentions, stating:

"The rights of the riparian owner are limited to the
ordinary and reasonable use of the water which flows
in the stream, and do not include a proprietorship in
the corpus of the water. His right to the water is
limited to its use for such as are termed ordinary
purposes - ad lavandum et ad potandum - or such other
uses as are connected with the land bordering on the
stream.  It is not necessary here to determine the ex-
tent to which such uses may be carried, or the purposes
to which the water may be applied.  They do not in any
case include the right as against an inferior proprietor
to divert the water to nonriparian lands.... The Superior
proprietor cannot, however, divert to nonriparian lands

W.B.Dennis

-12-

the water which he would have a right to use for ripar-
ian purposes, but which he does not in fact use.  His
riparian right is appurtenant to the land bordering on
the stream, and does not give him the right to divert
the water to lands which are not riparian to the stream,
and, as he cannot exercise his right himself, he cannot
as against an inferior proprietor confer it upon another.
As against himself or his grantee he may contract for the
diversion of the water to nonriparian lands. (<u>Gould v.
Stafford</u>, 91 Cal. 146; <u>Yocco V. Conroy</u>, 104 Cal. 468);
but the rights of the inferior proprietor will not be
affected by such contract.  If he does not in fact use
any of the water himself, the inferior proprietor has a
right to the flow of the entire stream."

We have heretofore called the court's attention to the fact
that the plaintiff's rights were acquired on five different occasions
(p.5, lines 13-24) and consequently there are five parcels of land
involved in this litigation.  There is no question but that a riparian
owner who owns two tracts of land cannot feed or supplement his re-
quirements on one tract by virtue of the rights which he has in the
waters of the stream by virtue of the ownership of the other tract.
See <u>Holmes v. Nay</u>, 186 Cal.231, wherein the court, in disposing of
this contention, on page 235 made the following ruling:

"Such rights, of course, include the right to a reasonable
use of the water of the stream on any portion of the tract
which is riparian to it, but not elsewhere, for stock,
domestic and irrigation purposes.  It should be said,
however, that the use to which Nay was putting the water,
a use not on the 101-acre tract, but on the tract below
it, was not a use permitted as an incident of the owner-
ship of the 101-acre tract, and that his right to such
use must depend upon whatever rights he may have as the
owner of the tract to which the water is conveyed and
where it is used."

Again, in <u>Parker v. Swett</u>, 188 Cal. 474, the court on page 485 said:

"It is also clear that what she is endeavoring to do by
the diversion of the water flowing on tract 3 is to
collect the same for use on some other tract.  The briefs
show that she does this for use on her own tract 1, and
this is not disputed.  This she has no right to do as
against the rights of the plaintiff....Swett could not
use her riparian rights on tract 3 to feed or increase
her rights on tract 1, or to collect it on tract 3 for
the purpose of using it all on tract 1, without allowing
to the plaintiff, for use on his land, his rightful share
of the waters so collected."

It necessarily follows that one riparian owner cannot transfer his
rights in and to the beneficial use of water for which he has no

W.B.Dennis

-13-

present use, to another riparian owner, to the detriment of other
riparian owners or to appropriators who are not party to the agreement.
Such was the holding in Duckworth v. Watsonville Water & Light Co.,
150 Cal. 520, wherein the court disposed of this question on page 526,
saying:

> "Furthermore, his riparian right is limited to his ripar-
> ian land.  It gave no right to use any of the water of
> the stream for any purpose upon land not riparian, nor
> upon any riparian land other than his own.  No one can
> sell or convey to another that which he does not himself
> own.  Grimmer could not by a transfer of his riparian
> rights sell to the plaintiff, as against third persons
> having interests in the water, a right to use the water
> upon any land, riparian or non-riparian,  except his own,
> to which it originally attached...."

and on page 532:

> "But the mere fact that the company is a riparian owner
> on the lake gives it no right whatever to the water of
> the lake, except for actual beneficial use upon the land
> to which the riparian rights attach.  The evidence does
> not show that it is using the water on that land at all.
> It is carrying the water to other lands and places for
> use and sale."

See also Prather v. Hoberg, 24 Cal.2d, 549, 557:

> "In other words, until the court had determined what part
> of defendant's land is riparian to the water supply, no
> proper basis was established for determing either the
> portion of the water to which defendant is entitled, the
> land upon which the water may be rightfully used or the
> damage if any caused by the defendant's wrongful use...
> Just what those acts were is uncertain.  If they consisted
> in taking the water diverted at the tunnel out of the
> watershed and using it upon the non-riparian portions of
> parcel 2 located in a different watershed, actionable
> damage would result.  If, however, they included the use
> by defendant of the diverted water upon portions of
> parcel 2 which are riparian, then the remedy as to ripar-
> ian use is not in damages for apportionment."

and Chauvet v. Hill, 93 Cal.407, wherein the court on page 410 stated:

> "No one by virtue of riparian ownership can rightfully
> divert water beyond the watershed of the stream from
> which he takes it."

The foregoing authorities conclusively establish that the
riparian owner has no right by virtue of his riparian rights to divert
water from the stream (a) for use on lands outside the watershed, (b)
for use on parcels within the watershed which are nonriparian, and

W.B.Dennis

1518

(c) that the plaintiff cannot supplement his right to the use of water on one riparian parcel by virtue of riparian rights which he may have in another riparian parcel.  An exhaustive search has revealed no cases which indicate that a riparian owner has the right to divert waters from the watershed to lands lying outside the watershed, by virtue of his ownership of lands which are riparian to the river. Plaintiff has failed to cite any authorities which would support such a contention.

III.

WATER CAN BE DEMANDED UNDER A RIPARIAN RIGHT ONLY
FOR PROPER RIPARIAN USES AND PURPOSES:  (a) STORAGE
OF WATER IS NOT A PROPER RIPARIAN USE;  (b) MILITARY
USE IS NOT A PROPER RIPARIAN USE.

(a) STORAGE OF WATER IS NOT A PROPER RIPARIAN USE.

On page 21 of Plaintiff's Brief, counsel makes the statement that "The storage of water is not a use."  With this statement, we wholeheartedly agree.  In Lindblom v. Round Valley Water Co., 178 Cal. 450, Judge Sloss stated on page 456:

> "The matter here in dispute is not the ownership of any particular quantity now impounded, but the right to dam and control the water as it runs into and through Round Valley.  Storage of water in a reservoir is not in itself a beneficial use.  It is a mere means to the end of applying the water to such use. (Kinney On Irrigation, 2d Ed. p. 1480).  The defendant's prescriptive rights do not extend to the impounding of the water for the mere purpose of holding it in storage."

Lindblom v. Round Valley Water Co. has not been overruled and is still the law of the State of California.

If the storage of water is not a use, it certainly cannot be a beneficial use or a reasonable use, and the mere fact that water is stored would indicate that it could not be a present use.

A riparian owner does not own the waters of a stream, he has only the right to make use of such waters of a stream as he can put to

W.B.Dennis

-15-

1519

a present, reasonable, beneficial use on his riparian lands.  In
California, storage of water not being a use, it necessarily follows
that a riparian owner has no right to store the waters of a stream
for cyclic or seasonal storage.  The California courts have on occa-
sion unequivocally held that the storage of water for future use,
whether cyclic or seasonal, constitutes an appropriation of water and
is not a proper exercise of a riparian right.

See Moore v. Cal. Oregon Power Co., 22 Cal.2d, 725 (140 Pac.
2d, 798) wherein the court stated on page 731:

> "Seasonal storage of water for power purposes is not a
> proper riparian use but constitutes an appropriation."

It is not surprising that the courts have held that the
seasonal or cyclic storage of water is not an exercise of a riparian
right and that a riparian owner by virtue of his riparian rights has
no right to store water for seasonal or cyclic storage, as riparian
rights are founded upon certain natural advantages which the land has
by reason of its location on the stream.  Water cannot be stored with-
out the erection of artificial obstructions in the bed of the stream,
and to California law, a riparian owner only has the right to have the
stream flow past his property as it was wont to flow in a state of
nature.  See the article on Waters in 25 Cal.Juris., on page 1062,
paragraphs 59-61 wherein the author states:

> "BASIS OF RIGHT. -- It has been said that the right of
> a riparian owner to the use of water bordering upon
> his land comes from the situation of the land with re-
> spect to the water, and the presumption that it was
> acquired with the view to the use and enjoyment of the
> natural advantages and benefits resulting therefrom.
> Other reasons given for the extence of riparian rights
> include the fact that to riparian owners belong the
> beds of non-navigable streams, and the doctrine that
> water should flow as it was wont to flow, or, in the
> words of the maxim, aqua currit, et debet currere ut
> currere solebat ex jure naturae."

In accordance with the above statement that a riparian owner,
as against an appropriator or another riparian owner, has no rights to
the waters of a stream except as they were wont to flow in a state of

W.B.Dennis

-16-

1520

1  nature, the court said, in Lindblom v. Round Valley Water Co., 178
2  Cal.450, on page 457:

> "This does not mean that the plaintiff may claim any
> benefit from the maintaining by the defendant of its
> dam and reservoir. He is not in a position to demand
> that the defendant shall, by its artificial works,
> furnish a constant flow of water in North Canyon
> throughout the year. His only rights are those which
> he would have had under the natural conditions existing
> before the dam was erected, subject to the deduction of
> so much of the water as defendant has continuously applied
> to a beneficial use. In other words, he cannot require
> the defendant to discharge any water into the stream
> during those months in which there would be no flow if
> no dam had ever been built. He may merely insist that,
> during the months of natural flow, the defendant shall
> permit the escape into the canyon of the surplus of the
> natural flow over and above what is required to enable
> the defendant to meet its reasonable needs, measured
> by its maximum requirements during the five years
> preceding the commencement of the action."

13  It is interesting to note that this case was decided prior to the
14  adoption of Sec. 3 of Article XIV of the California Constitution and
15  its subsequent interpretation in Peabody v. City of Vallejo, 2 Cal.2d,
16  351, and subsequent decisions.

17        Plaintiff has failed to call the Court's attention to any
18  California authorities, or for that matter, any authorities that will
19  permit a riparian owner, by virtue of his riparian rights alone, to
20  store water for seasonal or cyclic storage. Counsel for plaintiff
21  does refer to Seneca C.G.M.Co. v. Gt. Western Power Co., 209 Cal.,206,
22  wherein the court, on page 215, stated:

> "The question in another form is: May a riparian owner,
> when the stream carries more water than is necessary
> for the propulsion of his mill or power plant, store
> such surplus water until he shall be able to use it in
> a contemplated dry season to follow?"

27  and in answering that question, the court said on page 217:

> "Nor has he a right to create a reservoir, and detain
> and store the water therein for future use in a dry
> season. This doctrine has been reaffirmed in New York
> in several recent cases. (See Fulton County etc. Co.
> v. Rockwood Mfg. Co.,205 App.Div.787 /200 N.Y.Supp.225/
> United Paper Board Co. v. Iroquois P. & Paper Co.,
> 226 N.Y.38 /123 N.E.200/, Little Falls Fibre Co. v.
> Ford & Son., Inc., 249 N.Y. 495 /164 N.E. 558/ Henry
> Ford & Son v. Little Falls Fibre Co.,280 U.S. 369

W.B.Dennis

-17-

/74 L.Ed.140 (Adv.pt.), 50 Sup.Ct.Rep.140/, decided
Jan.6,1930, which is indirectly in point.)

See, also, as directly in point, Still v. Palouse
Irr. & Power Co., 64 Wash.606 /117 Pac.466,467/, which
concerns a stream in Washington much like in its habits
the stream under consideration here. Defendants were
enjoined by a lower riparian proprietor from storing
the water of the natural flow for future use, and the
court there said:

'Water may not thus be gathered into reservoirs for
future use, when it may best suit the convenience and
use of one riparian owner, and thus deprive other ripar-
ian owners of their use and service of the stream in its
natural condition, unless such right is exercised under
a valid prior appropriation.'

It is plain, therefore, that the use of the stream
by defendant was adverse and not in the exercise merely
of a riparian right. The use was as much adverse and
could have been as readily enjoined as if the diversion
had been to another watershed for use on nonriparian lands."

In discussing the same point, in City of Lodi v. East Bay
Mun. Utility Dist., 7 Cal.2d, 316, the court stated on page 335:

"Although this defendant is a large riparian owner on
the stream, its proposed method of use does not constitute
a proper riparian use but constitutes an appropriation.
Seasonal storage of water for power purposes is not a
proper riparian use, but constitutes an appropriation.
(Colorado P. Co. v. Pacific Gas & Electric Co. 218 Cal.
559 /24 Pac.(2d) 495/, involving some of the storage
projects involved in the present case; Seneca C.G.M.Co.
v. Great Western Power Co., 209 Cal.206 /287 Pac.93,
70 A.L.R.210/.)

See also Meridian v. San Francisco, 13 Cal.2, 424, wherein
the court stated on page 450:

"....the right of storage may be exercised only pursuant
to appropriations lawfully made."

Counsel for plaintiff apparently attempts to avoid the effect
of the express dictates of the California courts by referring to cer-
tain language appearing on pages 559 and 560 in the case of Rancho
Santa Margarita v. Vail, 11 Cal.2d, 501, and by referring to Sec. 13
of the stipulated judgment attached to Plaintiff's Complaint as Ex-
hibit A. We fail to find anything in either reference which can give
plaintiff much comfort. The Supreme Court simply stated that the Vail
interests had filed applications to appropriate waters in the years
1919 and 1925 and that both applications had been protested by

W. B. Dennis

-18-

plaintiff's predecessor in interest, and then stated that the appro-

priation of water for the purpose of storing it in dams constructed

on the properties of plaintiff or the properties of the defendant,

furnished the germ for a practical physical solution of the water

problems created by the Santa Margarita River; and the provisions of

the stipulated judgment, in our estimation, simply amount to an agree-

ment that neither party would protest any applications made to the

State of California to appropriate waters for storage purposes in

the Santa Margarita River.

### (b) MILITARY USE IS NOT A PROPER RIPARIAN USE.

We have no quarrel with plaintiff's statement that a riparian

owner in the State of California has the right to use so much of the

natural stream flow as he can presently put to a reasonable beneficial

use on lands riparian to the stream.  This right is recognized in the

latest expressions of the Supreme Court of California.  See City of

Pasadena v. City of Alhambra, 33 Cal.2d, 908, 925 et seq.; Peabody v.

City of Vallejo, 2 Cal.2d, 351; Carlsbad etc. Co. v. San Luis Rey etc.

Co. 78 Cal.App.2d 900, 911.

To entitle the plaintiff to an injunction, it is therefore

necessary that plaintiff prove (1) that he has a present use for the

water; (2) that the use is reasonable; (3) that the use is a benefi-

cial use; and (4) that the water is being used on riparian lands.

We do not question that a military use is a beneficial use, and we

admit that the plaintiff is at the present time making some use of the

waters of the Santa Margarita River.  The present problem before the

court is whether or not a military use comparable to that which has

been created by the plaintiff on the Santa Margarita River, is a

reasonable use.  Plaintiff in its Brief does not cite a single author-

ity which would sustain its contention that a military use comparable

to the use created by the United States on the Santa Margarita River

is a reasonable use.  If the court should decide that it is not a

W.B.Dennis

-19-

reasonable use, it does not necessarily mean that the United States has bought a parcel of arid land, as stated by plaintiff. The United States still will retain its riparian rights, if any, and the United States or its successor in interest will have the right to divert waters from the Santa Margarita River for agricultural and domestic uses on such lands as are riparian. No right will be taken away from the United States if the court should rule that a military use is not a riparian use. We do not believe that this precise question has been before the courts of the State of California, but on occasion they have been called upon the determine whether or not a use of water by a municipality owning riparian lands, for domestic and municipal purposes, was a riparian use. There can be no question but what the use of the water by the municipality was a beneficial use. The courts held, however, that it was not a riparian use, and that it could not be a reasonable use. If the courts had announced a contrary rule, a municipality containing a limited number of acres, by high and intensive development, would be able to utilize practically all the waters of a stream, to the detriment of all other riparian owners. We believe that we have an analagous situation in the present action. The United States can purchase a small parcel of acreage riparian to a stream or river, and by intensively developing that acreage, develop a use which would, for all practical purposes, destroy the riparian rights of all other riparian owners, and destroy all appropriative rights which may have been obtained and perfected by various quasi-municipal and municipal corporations, leaving the inhabitants in the service area of the appropriators without water. Any such result would seriously affect the economy of Southern California, and we believe that the court should give serious consideration to this problem and the disastrous effects which a ruling in favor of plaintiff would have upon the economy of this state.

The rights of municipalities to the use of water on a stream

1 are referred to in the article on Waters in 25 Cal.Juris., p. 1093,

2 Sec. 102, the author saying:

> "MUNICIPALITIES.- The fact that a city is situated on
> a natural watercourse does not give it any right in
> its public capacity to use the water. A city as such,
> aside from its private ownership of riparian lands, has
> no rights in a stream arising out of its position there-
> on, for the reason that riparian rights are private,
> rather than public, in nature. Such rights are con-
> fined exclusively to owners of abutting lands, hence
> any water rights in a city as such must exist by virtue
> of the doctrine of appropriation."

### IV.

A PRESCRIPTIVE RIGHT IS PARAMOUNT TO A RIPARIAN

RIGHT AGAINST WHICH IT ARISES.

As the defendant Santa Margarita Mutual Water Company is not claiming any rights by prescription prior to the riparian rights of the United States of America, this question is academic so far as this defendant is concerned, and it will not be discussed in this Brief.

### V.

ONE CANNOT OBTAIN A PRESCRIPTIVE RIGHT AS AGAINST

USERS UPSTREAM FROM HIM.

Plaintiff apparently fails to recognize the distinction between a right acquired by appropriation and a right acquired by prescription in the State of California. In City of Pasadena v. City of Alhambra, 33 Cal.2d, 908, the court, in discussing claims by prescription, said on page 926:

> "Prescriptive rights are not acquired by the taking of
> surplus or excess water, since no injunction may issue
> against the taking and the appropriator may take the
> surplus without giving compensation;..."

and on page 927:

> "To perfect a claim based upon prescription, there must

of course be conduct which constitutes an actual in-vasion of the former owner's rights, so as to entitle him to bring an action."

The plaintiff has correctly asserted in its Brief that there are no owners or users of water below the properties of plaintiff and that all diversions and threatened diversions of water on the Santa Margarita River are upstream from and above the plaintiff's properties. It necessarily follows that any waters which in the past have reached plaintiff's properties were waters which were not required by the de-fendants, and under the California decisions are surplus or excess waters, and that the plaintiff could acquire no rights to the use of such waters as against the defendants by prescription. In _Pabst v. Finmand_, 190 Cal. 124, the court clearly stated that in California, a lower riparian owner can acquire no rights by prescription as against an upper riparian owner; and the court, in so ruling, made the follow-ing statements on page 128:

"A right can be gained by prescription only by acts which operate as an invasion of the rights of the person against whom the right is sought and which afford a ground of action by such party against such claimant, and it is a rule of law so well settled by decisions in this and other states as to scarcely need any citation to support it, _that a lower use, since it interferes in no way with the flow above, constitutes no invasion of the upper riparian owner's right, and cannot, therefore, afford any basis for a prescriptive right_. Hargrave v. Cook, 108 Cal.72, 41 Pac. 18, 30 L.R.A. 390; Bathgate v. Irvine, 126 Cal.135, 58 Pac. 442, 77 Am.St.Rep. 158; Walker v. Lillingston, 137 Cal.401, 70 Pac.282; Perry v. Calkins, 159 Cal.175, 113 Pac.136; Miller & Lux v. Enterprise Canal & Land Co., 169 Cal.415, 147 Pac. 567; San Joaquin, etc. v. Worswick, 187 Cal.674, 203 Pac.999; Peake v. Harris (Cal.App.) 192 Pac.310." (Italics ours.)

See also _Waters_, 25 Cal.Juris., 1183, Sec. 199.

## VI.

AN APPROPRIATOR CAN TAKE AND USE ANY WATER BELONGING TO RIPARIANS BUT NOT CURRENTLY USED BY THEM.

Although the law at one time was otherwise, it is now es-tablished beyond question in California that a riparian owner, an

W.B.Dennis

1526

overlying owner and an appropriator or a prescriptor, or any other
person having a legal right to the use of surface, ground or under-
ground waters, may take and divert only such waters as he can put to
a present, reasonable, beneficial use, and that any waters not needed
for a present, reasonable, beneficial use of those having prior rights
are excess or surplus waters.  Judge Gibson, in <u>City of Pasadena v.</u>
<u>City of Alhambra</u>, 33 Cal.2d, 908, in reviewing the laws regarding
water rights in California, made the following statement on page 925:

> "Although the law at one time was otherwise, it is now
> clear that an overlying owner or any other person having
> a legal right to surface or ground water may take only
> such amount as he reasonably needs for beneficial pur-
> poses. (<u>Katz v. Walkinshaw</u>, 141 Cal.116 /70 P.663, 74 P.
> 766, 99 Am.St.Rep.35, 64 L.R.A.236/; <u>Peabody v. City of</u>
> <u>Vallejo</u>, 2 Cal.2d 351 /40 P.2d 486/; Cal.Const. art XIV,
> Sec.3.) Public interest requires that there be the great-
> est number of beneficial uses which the supply can yield,
> and water may be appropriated for beneficial uses subject
> to the rights of those who have a lawful priority.
> (<u>Peabody v. City of Vallejo</u>, 2 Cal.2d, 351, 368. /40 P.2d
> 486/.) Any water not needed for the reasonable benefi-
> cial uses of those having prior rights is excess or sur-
> plus water.  In California surplus water may rightfully
> be appropriated on privately owned land for nonoverlying
> uses, such as devotion to a public use or exportation
> beyond the basin or watershed. (<u>Peabody v. City of Vallejo</u>
> 2 Cal.2d,351, 368-369 /40 P.2d 486/ <u>City of San Bernardino</u>
> <u>v. City of Riverside</u>, 186 Cal.7, 29, 30 /198 P.784/; <u>Burr</u>
> <u>v. Maclay Rancho Water Co.</u>, 154 Cal.428,436 /98 P.260/<u>Katz</u>
> <u>v. Walkinshaw</u>, 141 Cal.116,135 /70 P.663,74 P.766, 99 Am.
> St.Rep.35, 64 L.R.A. 236/; see 26 Cal.Jur.32 et seq.,
> 273-274.)
>   It is the policy of the state to foster the beneficial
> use of water and discourage waste, and when there is a
> surplus, whether of surface or ground water, the holder
> of prior rights may not enjoin its appropriation.
> (<u>Peabody v. City of Vallejo</u>, 2 Cal.2d 351, 368-369, 372
> /40 P.2d 486/  see 26 Cal.Jr.277.)

  See <u>Rancho Santa Margarita v. Vail</u>, 11 Cal.2d, 508, 555.

  Although the rule was otherwise prior to the adoption of
Sec. 3 of Article XIV of the California Constitution, the court in
<u>Peabody v. City of Vallejo</u>, 2 Cal.2d, 351, decided that the rule of
reasonableness had been extended between appropriators and riparian
owners and appropriators and overlying owners, and that the rule of
reasonableness which theretofore had applied between riparian owners
now applied between all classes of water users in this state of Cali-

fornia; and on page 367 adopted the rule between appropriators and
riparian owners, saying:

"The rule of reasonableness of use as a measure of the
water right has been applied by this court as between
riparian owners (Pabst v. Finmand, 190 Cal.124 /211 Pac.
11/); as between owners overlying an underground water
supply (Katz v. Walkinshaw, 141 Cal.116 /70 Pac.663, 74
Pac.766, 99 Am.St.Rep.35, 64 L.R.A.236/); as between
appropriators (Natoma W. & M. Co. v. Hancock, 101 Cal.42
/31 Pac.112, 35 Pac.334/); as between overlying owners
and exporters from an underground basin to nonoverlying
lands (Burr v. Maclay Rancho Water Co., 154 Cal.428
/98 Pac.260/); and as between riparian owners and over-
lying owners under the doctrine of common source of
supply (Hudson v. Dailey, 156 Cal.617 /105 Pac. 748/);
but the court has denied its application as between a
riparian owner and an appropriator. The constitutional
amendment, from its effective date, and as interpreted
in the Gin Chow case, has enjoined the doctrine of reason-
able use as between the riparian owner and an appropria-
tor. The limitations and prohibitions of the constitu-
tional amendment now apply to every water right and
every method of diversion. Epitomized, the amendment
declares:
1. The right to the use of water is limited to such
water as shall be reasonably required for the beneficial
use to be served.
2. Such right does not extend to the waste of water.
3. Such right does not extend to unreasonable use or
unreasonable method of use or unreasonable method of
diversion of water.
4. Riparian rights attach to, but to no more than so
much of the flow as may be required or used consistently
with this section of the Constitution.
The foregoing mandates are plain, they are positive,
and admit of no exception. They apply to the use of all
water, under whatever right the use may be enjoyed."

No cases to the contrary were cited by plaintiff in its
Brief, and we assume that they concede this point.


VII.

ONE CANNOT, SINCE THE EFFECTIVE DATE OF THE WATER

COMMISSION ACT IN 1914, OBTAIN A WATER RIGHT BY

USE ALONE.


The plaintiff in this case has stipulated that the plaintiff's
rights are to be adjudicated in accordance with the laws of the State
of California. The Congress of the United States had formerly made

W.B.Dennis

-24-

such a declaration.  Sec. 1225 of the Water Code of the State of
California, enacted in 1943, reads as follows:

>   <u>Compliance with provisions of division</u>:  No right
>   to appropriate or use water subject to appropriation
>   shall be initiated or acquired except upon compliance
>   with the provisions of this division.

This section was a portion of the codification of the Water Commission
Act.

In <u>Crane V. Stevenson</u>, 5 Cal.2d, 387, it was held that in
order to sustain a claim based upon use alone, a riparian owner who
had not filed an appropriation with the Water Commission must show
that the appropriation was complete prior to the enactment of the
Water Commission Act requiring the filing of an application to appro-
priate water, and that beneficial use of water was maintained for the
period of time prescribed by statute, or required under decisions
prior to the enactment thereof.  In view of the stipulation and the
declaration of Congress, there can be no question but that the United
States could not acquire any right by appropriation without having
complied with Sec. 1225 of the Water Code.


VIII.

THE CESSION BY THE STATE TO THE UNITED STATES
OF EXCLUSIVE JURISDICTION OVER CAMP PENDLETON IS
IMMATERIAL TO ANY ISSUE IN THE CASE.


WHETHER THE POLICE POWER OF THE STATE OF
CALIFORNIA RESPECTING THE MANAGEMENT, CONTROL AND
ADMINISTRATION OF RIGHTS TO THE USE OF WATER, IS
OPERATIVE WITHIN THE BOUNDARIES OF CAMP JOSEPH H.
PENDLETON, THE U. S. NAVAL HOSPITAL AND THE U. S.
NAVAL AMMUNITION DEPOT IN VIEW OF THE FACT THAT
EXCLUSIVE JURISDICTION RESIDES IN THE UNITED STATES
OF AMERICA OVER THOSE MILITARY ESTABLISHMENTS.

W. B. Dennis

1529

The first sentence sets forth Question No. IX propounded by
the defendant, and the second sentence, Question No. IV propounded by
the plaintiff, and as they are interrelated, we will discuss them
under one heading.

Actually, we are at a loss to understand why plaintiff has
placed the element of cession of jurisdiction or exclusive jurisdic-
tion in issue in these proceedings, in view of the following state-
ment on page 6 of the Synopsis of Memoranda:

> "The political power of the State of California does
> not control the administration of rights to the use
> of water within Camp Pendleton and the other military
> establishments in view of the cession by the State of
> California to the United States of America of exclusive
> jurisdiction.  That legal tenet <u>does not increase the
> rights of the United States in the Santa Margarita</u>
> River nor permit the invasion of rights of other ripar-
> ian owners who hold their rights correlatively with
> those of the United States of America."

and similar declarations made by counsel for plaintiff from time to
time during the pendency of these proceedings.  However, out of abun-
dance of precaution, and fearful that we do not clearly understand
plaintiff's position, we wish to make the following observations.

This action is a quiet title action, an action in which the
plaintiff has asked this court to determine what property rights the
plaintiff and the defendants have in and to the waters of the Santa
Margarita River, and the relative priorities of the rights of the
parties in and to the waters of that river.  The rights which are be-
ing adjudicated are property rights, and plaintiff has stipulated, and
Congress has declared, that the rights in and to the waters of the
river shall be adjudicated and determined in accordance with the laws
of the State of California.

The riparian rights of the plaintiff and the defendants in
and to the waters of the Santa Margarita River are vested property
rights (see Plaintiff's Brief, pp. 7-15; <u>Irr.Dist. v. Mt.Shasta Co.</u>
202 Cal. 56, 65; <u>Martin V. Western States G. & E. Co.</u> 8 C.A.2d, 226,
230.)

W.B.Dennis

1530

The appropriative rights of every appropriator, plaintiff and defendant on the Santa Margarita River, even though they may be "inchoate, incipient and unexercised", are vested property rights entitled to the protection of the courts. (Merritt v. City of Los Angeles, 162 Cal. 47; Inyo Cons. Water Co. v. Jess, 161 Cal. 516.)

The prescriptive rights of every party in the present action to the use of water in the Santa Margarita River, are vested property rights.  (See article on Water, 25 Cal. Juris. p. 1150, Sec. 165; Plaintiff's Brief, p. 27 et seq.)

No question of police power of the State of California is involved.  So far as we know, no defendant in this action is claiming the right to go in upon any portion of the property acquired by the plaintiff from the Rancho Santa Margarita, its predecessor in interest. No defendant is questioning the right of plaintiff to erect a dam or dams on the Santa Margarita River on property owned and controlled by plaintiff, without first securing the necessary permits and licenses from the State of California.  No defendant is questioning the right of the United States to use any water which may flow over the properties of plaintiff for riparian purposes, or the right to use any surplus or excess waters which have not been acquired by prior appropriations upstream, for such purposes as plaintiff sees fit.  The defendants, however, do contend that the right of the United States to compel riparian owners and prior appropriations who are diverting waters upstream from plaintiff's property, to release said water for use at Camp Pendleton, can neither be diminished or expanded by reason of the fact that the State of California purportedly ceded exclusive jurisdiction over the military reservations in question to the plaintiff.

Plaintiff does not assert, and it could not assert, that the State of California has ceded jurisdiction to the United States of America over the properties owned by the defendants or over the properties wherein the appropriators are making their diversions, or that

W.B.Dennis

-27-

1531

the State of California ceded exclusive jurisdiction over the waters
of the Santa Margarita River to the United States of America.  Any
attempt to transfer the control of the surplus waters of the Santa
Margarita River to the United States of America would do violence to
Sec. 1, Article XIV of the California Constitution; and any attempt
on the part of the legislature and the governor which would have the
effect of transferring control of the surplus and excess waters of
the river to the United States of America would be void and of no
effect. Any attempt on the part of the governor to cede exclusive
jurisdiction over the waters of the Santa Margarita would also violate
the terms and provisions of the Water Code of the State of California.

The Santa Margarita Mutual Water Company, prior to the in-
stitution of these proceedings, filed applications to appropriate
water from the Santa Margarita River, with the Division of Water Re-
sources, pursuant to the terms and provisions of the California Water
Code.  The points of diversion are located upstream from plaintiff's
properties. (See Appendix C of Plaintiff's Brief).  No right is sought
to appropriate any water on the properties referred to in Plaintiff's
Complaint and over which exclusive jurisdiction was ceded to the
United States.

As we have heretofore stated, this action involves the in-
terpretation of the property rights of the United States and the
various defendants, and plaintiff has stipulated that the property
rights which it has in and to the waters of the Santa Margarita River
shall be interpreted in accordance with the laws of the State of Cali-
fornia.  (See Plaintiff's Brief, Appendix C, 1.24 on p.19 to 1.5 on
p.20):

II.
In this cause the United States of America claims only
such rights to the use of water as it acquired when it
purchased the Rancho Santa Margarita, together with any
rights to the use of water which it may have gained by
prescription or use or both since its acquisition of the
Rancho Santa Margarita.

W.B.Dennis

-28-

1532

### III.

That the United States of America claims by reason of its sovereign status no right to the use of a greater quantity of water than is stated in Paragraph II. (Italics ours)

### IV.

That the rights of the United States of America to the use of water herein are to be measured in accordance with the laws of the State of California.

Long prior to the institution of this action and the execution of said stipulation, the Congress of the United States, by appropriate legislation, had decreed that the water rights of the United States should be interpreted in accordance with local laws, rules, customs and decisions. See Cal. Oregon Power Co. v. Beaver Portland Cement Co., 295 U.S. 142 79 L.Ed. 1356, wherein the court states on page 162:

> "If it be conceded that in the absence of federal legislation the state would be powerless to affect the riparian rights of the United States or its grantees, still, the authority of Congress to vest such power in the state, and that it has done so by the legislation to which we have referred, cannot be doubted....What we hold is that following the act of 1877, if not before, all non-navigable waters then a part of the public domain became publici juris, subject to the plenary control of the designated states including those since created out of the territories named, with the right in each to determine for itself to what extent the rule of appropriation or the common law rule in respect to riparian rights should obtain....It simply recognizes and gives sanction, in so far as the United States and its future grantees are concerned, to the state and local doctrine of appropriation, and seeks to remove what otherwise might be an impediment to its full and successful operation....The fair construction of the provision now under review is that Congress intended to establish the rule that for the future the land should be patented separately; and that all non-navigable waters thereon should be reserved for the use of the public under the laws of the states and territories named.  The words that the water of all sources of water supply upon the public lands and not navigable, "shall remain and be held free for the appropriation and use of the public", are not susceptible of any other construction."

Consequently, it would seem that Congress has consented to the rights of the United States in and to the waters of a river to be defined and limited by the laws of the state in which the river is located.

W.B.Dennis

-29-

1533

1  The federal courts have held that the property rights of the United
2  States in property located in the state are to be defined and limited
3  in accordance with the laws of the state in which the property is lo-
4  cated; and the plaintiff in this action, by stipulation, approved by
5  the court, has stated that the laws of California govern the property
6  rights of the United States in and to the waters of the Santa Margarita
7  River.

8      The California courts have on numerous occasions had the
9  opportunity to state that the United States has no ownership or in-
10 terest in the waters of the non-navigable streams in California EXCEPT by
11 virtue of the fact that it owns lands abutting upon or traversed by
12 said streams.  In <u>Palmer v. Railroad Commission</u>, 167 Cal.163, often
13 referred to by counsel for plaintiff, Judge Shaw states on page 168:

14     "The United States, with respect to the lands which it
15     owns in this state is a riparian proprietor as to the
       streams running through such lands.  It is only by vir-
16     tue of that fact that it has any right or power of dis-
       position over the waters thereof, and its right and power
17     in that respect is no greater and no less than that of
       any other riparian proprietor.  By the act of July 26,
18     1866 (14 U.S.Stats.251) the United States consented that
       private persons might acquire rights to waters flowing
19     in the streams through its lands by taking possession
       thereof, that is by diverting the same in such manner as
20     should be provided by the laws of the particular state....
       The provisions of the Civil Code above mentioned have the
21     effect of a declaration by the state that any person who
       may divert water from a stream pursuant to those provisions,
22     will thereby obtain a right in the stream paramount to
       the riparian rights which the state may have therein by
23     virtue of the fact that the stream may run over lands
       then belonging to the state.  To that extent it operates
24     as a grant from the state, but this is only because the
       state had the riparian right and not because the water
25     was in any sense public water devoted to public use."

26 and on page 173:

27     "Hence the right to the water of flowing streams in this
       state prior to any sale or disposition of lands by the
28     state or the United States was vested in the State or
       in the United States, not in their respective govern-
29     mental capacities as sovereign and for the common use
       of the people, but as riparian owners in their respective
30     capacities as landed proprietors.  These rights were and
       still are strictly proprietary and in their nature private.
31     When land is disposed of by either, the riparian water
       right pertaining thereto passes to the purchaser as a
32     part of the realty."

W.B.Dennis                          -30-

                                              1534

The California court of appeals, in Miller & Lux, Inc. v. Light and Power Corp., 120 C.A. 589, on page 612 made the following ruling:

"The United States with respect to the lands which it owns in this state, is a riparian proprietor as to the streams running through such lands. It is only by virtue of that fact that it has any right or power of disposition over the waters thereof, and its right and power in that respect is no greater and no less than that of any other riparian proprietor."

It is therefore evident that the plaintiff's rights are no greater and no less than those of any private proprietor. This is not the first time that the United States has claimed to have some rights in and to the waters of a stream by virtue of the fact that the stream flowed through a military reservation and was the sole source of supply for the camp maintained on the reservation. The Ninth Circuit Court of Appeals was called to pass on this question in the case of Krall v. U.S., 79 Fed. 241. The United States constructed a military reservation on lands which were traversed by Cottonwood Creek. Water from the creek was used for military uses, in housing quarters for the officers, men and their families, and a portion of the land was leased for agricultural purposes. Subsequent to the establishment of the reservation, a notice of appropriation was filed upstream from the camp, and subsequently the waters of the stream were diverted by the appropriator, to the extent that the camp did not have sufficient water for its maintenance. The United States filed a suit in which it claimed by virtue of exclusive jurisdiction and sovereignty its rights were greater than those of the appropriator. This position was denied by the Ninth Circuit Court of Appeals. Judge Wilbur also had an opportunity to make some observations in respect to claims of the United States to the waters in the streams located in California by virtue of sovereignty, in U.S. v. Central Stockholders Corp., 52 Fed.2d, 322, 1931, 9th Circuit: (p. 329)

W.B.Dennis

-31-

1535

> "As we have said, the claims of the government based on its sovereign power may be dismissed from consideration for the reason that such rights are not subject to equitable cognisance but that a decision thereon would be in the nature of a declaratory judgment.... It is not the function of a court of equity to declare what the sovereign rights of the government may be and fix the demands thereof for the future.  Those rights can only be determined when they affect the rights of the parties in an actual situation growing out of existing conditions, so that so far as this action may be regarded as one to quiet the title of the government to its sovereign rights, it cannot be maintained."

Holding that a municipality has no rights in and to the waters of a stream in California by virtue of the fact that it is a political or public body, Judge Shaw, in <u>Antioch v. Williams Irr. Dist.</u>, 188 Cal. 451, said on page 456:

> "The fact that the City of Antioch is situated upon the San Joaquin River is wholly immaterial in the consideration of its rights in this case.  The rights in a stream or body of water which attach to land because it abuts thereon are not of a political nature but are private rights.  They are vested exclusively and only in the owner of the abutting land and they extend only to the use of the water upon the abutting land and none other. The litigation which has arisen in this state from the doctrine of riparian rights,  has been of great volume and it is sufficient to warn us that we should not extend the doctrine so as to make it political and confer it upon cities abutting upon a stream but owning no land abutting thereon.  Such cases are contrary to the common law doctrine as settled in this state whereby such rights are confined exclusively to the owner of abutting land and are wholly of a private nature.  The status of the City of Antioch in this action therefore, and its rights in the San Joaquin River, are those of a divertor and user of the water therefrom for beneficial purposes and nothing more."

We are sure that the plaintiff would not make any claims which would increase the size or the burden of an easement which it had over private property, or any claims which would increase an undivided interest which it might have in any property, or claim additional acreage to that purchased by them, by virtue of the fact that the State of California had ceded exclusive jurisdiction to Plaintiff over the property by it, to the Plaintiff.  To make such a claim would be no more unreasonable than the claims of the United States in this action that the plaintiff's riparian rights had been enlarged, and that it

1  can acquire property rights by appropriation or prescription without
2  complying with the laws of the State of California merely because the
3  governor of this state ceded to plaintiff jurisdiction over the real
4  properties comprising the military reservations.

5        We respectfully submit that the question of cession of jur-
6  isdiction is not properly an issue in the present action and that any
7  and all allegations relative to the cession of jurisdiction by the
8  State of California, and any and all allegations relative to sovereign-
9  ty or sovereign rights, should be stricken from the Complaint.

11                              IX.

12        WHETHER THE RIPARIAN RIGHTS IN THE SANTA MARGARITA
13        RIVER SYSTEM OF THE UNITED STATES OF AMERICA,
14        PLAINTIFF, ARE PRIOR AND PARAMOUNT UNDER THE LAWS
15        OF THE STATE OF CALIFORNIA TO THE APPROPRIATIVE
16        RIGHTS CLAIMED BY THE DEFENDANT SANTA MARGARITA
17        MUTUAL WATER COMPANY IN THAT STREAM IN VIEW OF THE
18        ADMISSION BY THAT COMPANY THAT THE EARLIEST DATE
19        OF PRIORITY WHICH IT HAS ASSERTED IS OCTOBER 4, 1946.

21        The defendant Santa Margarita Mutual Water Company has
22  heretofore in its Statement admitted that any riparian rights that the
23  plaintiff has in the Santa Margarita River are prior and paramount to
24  the appropriative rights claimed by the Santa Margarita Mutual Water
25  Company (1.10, p.7 et seq. supra).
26        It is the position of this defendant that the appropriative
27  rights of the Santa Margarita Mutual Water Company are prior and
28  paramount to any and all rights which the United States has or may
29  claim to have in the waters of the Santa Margarita River, except its
30  riparian rights.  This defendant also claims that the plaintiff does
31  not clearly understand the extent, the nature and the measure of its
32  riparian rights in and to the waters of the Santa Margarita River.

W.B.Dennis                       -33-

It is the position of this defendant that:

(a) Mere technical interference with a riparian or overlying right will not justify the issuance of an injunction.

Peabody v. City of Vallejo, 2 Cal.2d, 351, 376;
Tulare Dist. v. Lindsay-Strathmore Dist.,3 Cal.2,489,524;
Gin S. Chow v. City of Santa Barbara, 217 Cal. 673,694;
Meridian, Ltd. v. San Francisco, 13 Cal.2d, 424, 446

(b) No injunction can issue against the taking of surplus or excess waters.

City of Pasadena v. City of Alhambra, 33 Cal.2d, 908,926.

(c) The California courts have uniformly held that they will NOT compel large quantities of water to go to waste in order to make insubstantial contributions to underground BASINS.

Peabody v. City of Vallejo, 2 Cal.2d, 351, 376;
City of Lodi v. East Bay Mun.Ut.Dist. 7 Cal.2d, 316, 339;
Gin S.Chow v. City of Santa Barbara, 217 Cal. 673
Tulare Dist.v. Lindsay-Strathmore Dist.,3 Cal.2d, 489
Rancho Santa Margarita v. Vail, 11 Cal.2d, 501, 559.

(d) The mere inconvenience, or even the matter of extra expense within limits which are reasonable, to which a prior user or riparian user or overlying owner may be subjected, will not prevent a subsequent appropriator from utilizing his right to appropriate water.

Peabody v. City of Vallejo, 2 Cal.2d, 351, 376;
Rancho Santa Margarita v. Vail, 11 Cal.2d, 501, 561;
City of Lodi v. East Bay Mun.Ut.Dist., 7 Cal.2d, 316,341;

(e) It is not the policy of the law of California as it exists today to allow any of the valuable waters of this state to go to waste or remain unused or allow one having a natural or legal advantage or right, to water, to prevent another from using it while he himself does not or cannot use it.

City of Pasadena v. City of Alhambra, 33 Cal.2d, 908,926;
Meridian, Ltd. v.San Francisco, 13 Cal.2d, 424, 447
Carlsbad etc. Co. v. San Luis Rey etc. Co.,78 C.A.2d,900,914;
Rancho Santa Margarita v. Vail, 11 Cal.2d, 501, 560;
Gin S. Chow v. City of Santa Barbara, 217 Cal. 673, 697
Peabody v. City of Vallejo, 2 Cal.2d, 351, 370.

W.B.Dennis

-34-

1538

(f)   The doctrine that a riparian owner has the right to have
all waters flow or percolate as the same are wont to flow
or percolate in a state of nature, as against an appropria-
tor, regardless of waste or surplus that results as a re-
sult of the exercise of such rights, has been repudiated
by the courts and the legislature and the people of the
State of California.

Peabody v. City of Vallejo, 2 Cal.2d, 351, 363;
Sec. 3, Article XIV of California Constitution.

(g)   The rule of reasonableness of use as a measure of the water
right now applies between riparian owners, overlying owners,
appropriators, prescriptors, and all other persons having a
right in and to the waters of the State of California.

Peabody v. City of Vallejo, 2 Cal.2d, 351, 367, 372, 383;
Tulare Dist. v. Lindsay-Strathmore Dist.,3 Cal.2d,389,524;
Gin S. Chow v. City of Santa Barbara, 217 Cal. 673, 699;
Rancho Santa Margarita v. Vail, 11 Cal.2d, 501, 558;
Carlsbad etc. Co. v. San Luis Rey etc. Co. 78 Cal.2d,900,904;
Natural Soda Products Co. v.City of L.A. 23 Cal.2d,193,199.

(h)   The right to have one's lands overflowed by flood or freshet
waters for the purpose of having silt deposited thereon, is
no longer a reasonable use and will not support an injunc-
tion; (Peabody v. City of Vallejo, 2 Cal.2d, 351, 369) and
the right of an overlying land owner to have the full flow
of a stream to support the basin when the contribution of
the stream is not substantial, has been held not to be a
beneficial use; (Gin S. Chow v. City of Santa Barbara, 217,
673,694;
Peabody v. City of Vallejo, 2 Cal.2d,351,372,375); and the
right to the full flow of a stream for subirrigation can no
longer be justified; (Tulare Dist. v. Lindsay-Strathmore
Dist. 3 Cal.2d, 489,526); and the riparian owner has no
right to demand that his livestock be watered from surface
flow; (Rancho Santa Margarita v. Vail, 11 Cal.2, 501,561);
and the fact that the overlying owner may be required to

W.B.Dennis

-35-

1539

deepen or increase the number of his wells does not mean
that his riparian rights or overlying rights have been
infringed upon; (San Bernardino v. Riverside, 186 Cal.7,17)

(1)  The owner of overlying lands has no right to export water
to non-overlying lands even though said lands may be located
within the watershed.

Orchard v. Cecil F. White Ranches,Inc. 97 C.A.2d, 35;
Burr v. Maclay Rancho Water Co., 160 Cal.268,281;
Fryer v. Fryer, 63 C.A.2d, 343, 348.

We believe that the above correctly sets forth some of the
limitations upon a riparian owner's rights since the adoption of
Sec. 3 of Article XIV of the California Constitution.  It is apparent
that plaintiff does not agree with the position of the defendant in
respect to the measure of its riparian rights.

                                    X.

Questions II and III propounded by the plaintiff apply only
to the defendant Fallbrook Public Utility District, and consequently
will not be discussed or briefed by the Santa Margarita Mutual Water
Company.  Question IV propounded by the plaintiff was discussed under
the same heading as Question IX propounded by the defendant, in
Paragraph VIII hereof.

                                    XI.

THE SANTA MARGARITA MUTUAL WATER COMPANY IS OF THE
OPINION THAT THEIR CLAIMED APPROPRIATIVE RIGHTS CAN
BE EXERCISED WITHOUT ENCROACHING UPON THE VESTED
RIPARIAN RIGHTS OF THE UNITED STATES.

On p.15 of Plaintiff's Brief, lines 1-8, the plaintiff has
asked this defendant to answer a question propounded, and which was
not within the scope of the legal principles ordered briefed prior to
trial.  However, we have no hesitancy in answering plaintiff's ques-
tion.  To answer said question it is necessary to state certain well-
recognized legal principles relative to the laws of water:

W.B.Dennis

1540

(1) It is now clear that one having a legal right to stream surface or ground waters may take only such amount as he reasonably needs for beneficial purposes on his riparian or overlying land. (Rancho Santa Margarita v. Vail, 11 Cal.2d, 501,550,555; City of Pasadena v. City of Alhambra, 33 Cal.2d, 908, 925, 927.)

(2) The riparian owner does not own the waters of a stream; he owns a usufructary right, the right to take such waters from the river as he can put to a present, reasonable, beneficial use on his riparian lands.  If one riparian owner has no present use for the water, that portion of the water which cannot be put to beneficial use at any particular time is surplus water subject to appropriation. (Peabody v. City of Vallejo, 2 Cal.2d, 351; City of Pasadena v. City of Alhambra, 33 Cal.2d, 908; Rancho Santa Margarita v. Vail, 11 Cal. 2d, 501, 555; Collier v. Merced Irr. Dist., 213 Cal.554, 566; Parker v. Swett, 188 Cal.474,479.)

(3) A riparian owner has no right to any definite quantity of water.  He has only a right in common with other riparian owners to take a proportionate share from the stream, a correlative right which he shares with other riparian owners;and at such times as he cannot put the water to beneficial use on his riparian lands, a surplus exists subject to appropriation, and consequently the quantity of water to which the riparian owner is entitled varies not only with the circumstances of each case but also varies from year to year and from season to season and from month to month. (Prather v. Hoberg, 24 Cal.2d, 549, 560;  City of Pasadena v. City of Alhambra, 33 Cal.2d, 908.)

W.B.Dennis

-37-

1541

(4) There is no absolute ownership in running waters.

(<u>Drake v. Tucker</u>, 43 C.A. 53, 56.)

(5) A riparian's owner's title to water begins only when it reaches his land. (<u>Hargrave v. Cook</u>, 108 Cal.72; <u>Drake v. Tucker</u>, 43 C.A. 53, 58.)

(6) If water is wasted or not used or not put to a beneficial use, then a surplus exists available for appropriation.

(<u>Peabody v. Vallejo</u>. 2 Cal.2d, 350, 368)

The Pretrial exhibits, and in particular Plaintiff's Pretrial Exhibit No. 14, establish without question that great quantities of water flow into the Pacific Ocean, and this fact was recognized in <u>Rancho Santa Margarita v. Vail</u>, 11 Cal. 2d, 501, wherein on page 559 the court made the following observations:

> "Under this section (Sec.4, Article XIV of the Constitution of the State of California) it has been held that it is not only within the power, but it is the duty of the trial court, to work out, if possible, a physical solution, and if none is suggested by the parties to work out one independently of the parties. In this connection, if the trial court needs or desires expert assistance or evidence on this or any other phase of the case, it possesses the statutory power either to refer the matter to the division of water rights, or to appoint it as an expert. (<u>Peabody v. City of Vallejo</u>, supra, p.374; <u>Tulare Irr. Dist. v. Lindsay-Strathmore Dist.</u>, supra, p.575; <u>City of Lodi v. East Bay Mun.Utility Dist.</u>, supra, p. 341.) The instant case presents an excellent illustration of the benefits to be secured from the exercise of this power. The evidence in this case discloses that the water commission is already aware of some of the problems of these litigants. As early as 1919 appellants (Vails) filed applications with the commission for permission to build a dam and diversion works on its properties to conserve some of the winter run off. Respondent protested the application. In 1925 (Vails) appellants filed another such application. The appointment of the commission as a referee or expert, under such circumstances, might well facilitate the work of the trial court.
>
> These prior applications may contain the germ of a physical solution of the problem here presented. It may be that there are storage and reservoir sites so located on appellants' ranch that by the diversion and storage of winter waters that now go to waste, supplemented perhaps by a small portion of the summer flow, appellants can secure all the water they reasonably need. Perhaps by regulating the releases from such reservoirs in the summer months surface flow can be made available to respondent. On the other hand, there may also be reservoir and storage sites on respondent's property whereby, by the expenditure of reasonable sums of money, winter water can be conserved and re-

W.B.Dennis

leased in the summer months.  In fact in finding 20 the
trial court, after finding that respondent is making a
reasonably scientific use of the available water, found
that during periods of heavy rainfall large amounts of
water flow into the sea and that 'such waters as now flow
and have heretofore flowed into the Pacific Ocean are
largely, but not entirely, capable of being impounded on
the lands of the plaintiff and stored for distribution
for useful and beneficial purposes on said lands'.  In
the same finding, after referring to Lake O'Neill reservoir
the court found 'that by the expenditure of reasonable
sums of money the artificial dam at said Lake O'Neill
reservoir may be increased in height and the point of
diversion of the ditch leading into said reservoir may
be moved upstream and the capacity of said reservoir
increased, and the amount of water capable of being
stored therein for beneficial uses on said ranch also
increased.'  It may also be possible to install pumping
plants upstream from the reservoir so as to provide
drinking places for respondent's cattle.
These suggestions are made simply to point out that
from the findings and evidence it would appear that
there is a strong possibility of working out some physi-
cal solution, at reasonable cost, that may be of benefit
to both parties.  With the small quantity of water
available in this stream in the summer months, the
trial court should thoroughly investigate the possibili-
ty of some such physical solution, before granting an
injunction that may be ruinous to either or both parties."

The Santa Margarita Mutual Water Company also believes that
the evidence in this case, when introduced, will establish that there
is sufficient water open and subject to appropriation to meet the
needs of defendants and plaintiff, and that water may be appropriated
without in any way encroaching upon the vested riparian rights of
the United States of America.

XII.

THE BURDEN OF PROOF.

Although the question was not ordered briefed by the court,
the plaintiff, on page 25 of its Brief, discusses the burden of going
forward with the evidence to prove there is a surplus of water in the
Santa Margarita River available for appropriation.  There being no
question but that the United States claims rights in and to the
waters of the Santa Margarita River by appropriation, and claims that
said rights are prior and paramount to the rights of riparian land

W.B.Dennis

-39-

1543

owners in this action, there can be no question but that the burden
of going forward and showing that there are surplus waters available
for appropriation, is on the plaintiff, pursuant to the authorities
cited by counsel for plaintiff on pages 25 and 26 of its brief.

We have not attempted to exhaust the authorities in this
Brief, but have only called to the court's attention the leading
authorities on the subjects ordered briefed by the court in advance
of trial.

Respectfully submitted:

W. B. Dennis, Attorney for the
Defendant Santa Margarita Mutual
Water Company.

W.B.Dennis

-40-

1544