1 DAVID W. AGNEW
Special Assistant to the Attorney General
2                          and
RAYMOND deS. SHRYOCK
3 Attorney, Department of the Navy
Room 411-A, Fox Theater Building
4 720 "B" Street, San Diego, California

5 Attorneys for Plaintiff

LOD___

7

DEC 2_ _9_2

8

EDMUND L. S_____ _. Clerk
By_____
9

IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

10 UNITED STATES OF AMERICA,                )
                                           )
11                        Plaintiff,        ) No. 1247-SD
                                           )
12            vs                           ) FINDINGS OF FACT,
                                           ) CONCLUSIONS OF LAW
13 FALLBROOK PUBLIC UTILITY DISTRICT,       ) AND DECREE
   et al.,                                 )
14                                         )
                          Defendants,      )
15                                         )
   THE PEOPLE OF THE STATE OF CALIFORNIA,   )
16                                         )
             Defendants in Intervention.   )
17                                         )
                                           )
18 ───────────────────────────────

19        This Court having jurisdiction over the above

20 proceedings and the parties thereto and the cause having

21 come on to be tried as to the defendant Santa Margarita

22 Mutual Water Company, and the defendant in intervention the

23 State of California, having been argued and submitted and

24 the Court having filed its opinion and its order, both

25 dated December 9, 1952, now makes the following:

26 FINDINGS OF FACT:

27        1.  The Santa Margarita River is a non-navigable

28 intermittent stream having a drainage area of 740 square

29 miles, 192 square miles of which are situated in San Diego

30 County, California, and 548 square miles in Riverside

31 County, California.  The Santa Margarita watershed is

32 semi-arid.

7—1404

U S. GOVERNMENT PRINTING OFFICE

1702

2.   Temecula Creek and Murrieta Creek have their junction at the head of Temecula Gorge and there form the Santa Margarita River.

3.   Rising on the eastern slope of the Coastal Range in San Diego County, near the present site of the Palomar Observatory, Temecula Creek proceeds in a northerly and westerly direction a distance of approximately fourteen miles where it enters the Pauba Grant of the Vail Estate. After entering the Pauba Grant, it flows northwesterly through a portion of the grant known as Nigger Valley, for a distance of a little more than three miles.  It then enters a narrow canyon on the Pauba Grant known as Nigger Canyon.  In a state of nature, Temecula Creek flowed through Nigger Canyon for a distance of approximately two miles.  Situated across the channel of Temecula Creek at the upper end of Nigger Canyon on the Pauba Grant, in the Northwest Quarter of the Northwest Quarter, Section 10, Township 8 South, Range 1 West, is the Vail Dam, creating a reservoir with a capacity of approximately 50,000 acre-feet.

4.   Below the Vail Dam, the Temecula Creek traverses Pauba Grant for a distance of approximately eleven miles.

5.   Leaving the Pauba Grant of the Vail Estate, Temecula Creek continues its westerly course across the Little Temecula Grant of the Vail Estate for a distance of approximately one and a half miles.  That stream then enters the Temecula Grant of the Vail Estate, flowing a distance of approximately two miles.

6.   Immediately before leaving the Temecula Grant of the Vail Estate, Temecula Creek has its confluence

-2-

with Murrieta Creek and below that point is known as the
Santa Margarita River.

7.   The Santa Margarita River then enters Temecula
Gorge, a narrow canyon through which it flows southerly
and westerly for a distance of approximately nine miles.
Though Temecula Creek, prior to its junction with
Murrieta Creek, flows alternately as a surface and sub-
surface stream, the Santa Margarita River throughout
Temecula Gorge in the state of nature is a surface stream.

8.   Shortly after leaving Temecula Gorge, the Santa
Margarita River enters Camp Joseph H. Pendleton, the
Marine Corps Training Base.  It then flows in a generally
southwesterly direction through Camp Pendleton - Naval
Ammunition Depot - United States Naval Hospital lands
for a distance of about twenty-one miles to the Pacific
Ocean.  For the full twenty-one miles the course of the
river lies entirely within the property of the United
States of America.

9.   The Santa Margarita River within the
boundaries of the above-mentioned military establishments
is an intermittent stream.

10.   There are several tributaries of the Santa
Margarita River from tidewater to its head waters.

11.   De Luz Creek, an intermittent stream which
rises on the Santa Rosa Grant of the Vail Estate, proceeds
in a westerly and southerly direction to its confluence
with the Santa Margarita River several miles within the
boundary lines of Camp Pendleton.

12.   Fallbrook Creek, an intermittent stream, rises
east and south of the Santa Margarita River.  Most of its
length is within the boundaries of Camp Pendleton and the

-3-

7—1404
U. S. GOVERNMENT PRINTING OFFICE

United States Naval Ammunition Depot and it has its present terminus in Lake O'Neill, an artificial reservoir which lies within the Camp Pendleton area.  In the state of nature, Fallbrook Creek flowed into the Santa Margarita River.

13.  Sandia Creek, an intermittent stream which rises on the Santa Rosa Grant of the Vail Estate, proceeds in a southerly direction to its confluence with the Santa Margarita River at a point a short distance above the easterly boundary of Camp Pendleton.

14.  Rainbow Creek is an intermittent stream which rises east and south of the main channel of the Santa Margarita River and proceeds in a northerly and westerly direction to its confluence with that river a short distance above Sandia Creek.

15.  Murrieta Creek, an intermittent stream, has its source north of the Temecula Grant of the Vail Estate and traverses the lands of that grant before it joins Temecula Creek to form the Santa Margarita River. Junction of the streams takes place at a point about a half mile east of the westerly boundary of Temecula Grant of the Vail Estate and a short distance east of Temecula Gorge. It has several tributaries, most important of which is Cottonwood Creek, an intermittent stream which rises on the Santa Rosa Grant of the Vail Estate.  Santa Gertrudis Creek, a tributary of Murrieta Creek, is an intermittent stream rising on the Pauba Grant of the Vail Estate, traversing lands in other ownership before crossing a portion of the Temecula Grant prior to its confluence with Murrieta Creek.  Warm Springs Creek, an intermittent stream, rises east of Murrieta Creek and flows into that

-4-

stream just below the town of Murrieta.

16.  Penjango Creek, an intermittent stream, is
tributary to Temecula Creek, rising south of that stream
and joining it a short distance upstream from the junction
of the stream last mentioned with Murrieta Creek.  From
its source to confluence Penjango Creek traverses a
portion of the Little Temecula Grant, and then flows
across the Temecula Grant of the Vail Estate, the property
upon which its junction with Temecula Creek takes place.

17.  Other affluents of Temecula Creek are
Lancaster Creek and Arroyo Seco, both of which are
intermittent in character, flowing only during periods
of high precipitation and entering Temecula Creek above
Nigger Canyon.

18.  From its head waters to the Pacific Ocean, the
watershed of the Santa Margarita River System is underlaid
with numerous subterranean basins.  They differ greatly
in size and capacity.

19.  Underlying the military establishments in
question within the Santa Margarita River watershed are
one or more underground basins or segments of basins,
commonly known as:

1.  Upper or O'Neill Basin or Segment;

2.  Chappo or Home Ranch Basin or Segment;

3.  Ysidora Basin or Segment.

20.  Throughout the ground-water basin or basins
within the watershed of the Santa Margarita River
underlying Camp Pendleton are numerous wells of varying
depths in the alluvium.  The surface and sub-surface area
and the character and type of the deposits penetrated by
the wells, so far as the same are known to the United

-5-

States of America, have been analyzed.

21.   The United States Geological Survey has maintained and published records of the following principal gauging stations within the watershed of the Santa Margarita River:

| Stream | Station | Period of record |
|---|---|---|
| Santa Margarita River | Ysidora | From February 19, 1923, to date |
| Santa Margarita River | Fallbrook | "   November 25, 1924, to date |
| Temecula Creek | Temecula (Railroad) Canyon | "   January 30, 1923, to date |
| Temecula Creek | Nigger Canyon | "   January 30, 1923, to date |
| Murrieta Creek | Temecula | "   October 1, 1930, to date |

In addition, measurements have been taken for diversions at O'Neill Ditch and at other places on the Santa Margarita River System.

22.   Below the Vail Dam, Temecula Creek traverses a highly porous area where that stream, except during periods of high run-off, disappears into the Temecula Basin.   In a state of nature, Temecula Creek customarily again becomes a surface stream at a distance of about three miles from the present site of the Vail Dam. Presently, however, due to the control of the stream arising from the mentioned dam and the draft upon Temecula Basin by the Vail Estate, Temecula Creek reappears as a surface stream at a greater distance from the mouth of Nigger Canyon dependent upon the draft and the period elapsing between releases from Vail Reservoir.

23.   Within Camp Pendleton the Santa Margarita River does not flow as a continuous surface stream, but, during

7—1404

U. S. GOVERNMENT PRINTING OFFICE

the dry season of the year, the stream customarily and ordinarily sinks into the highly porous ground water basin underlying Camp Pendleton and other military establishments.  When that basin has been filled, the Santa Margarita River ordinarily comes to the surface some two or three miles from tidewater.  In a state of nature it continues then to the Pacific Ocean as a stream of diminishing volume.

24.  From its head waters to the Pacific Ocean, the Santa Margarita River passes over and through numerous ground basins.  The water in those basins is contained by bedrock or other impervious material.  The basins are filled with alluvial deposits of varying degrees of porosity.  The basins differ greatly in size and in capacity.  The waters of the Santa Margarita River, in its course through the valley, penetrate and fill the voids of the porous alluvium.  When the water of the stream sinks to bedrock or the other impervious material comprising the beds of the basins, in which the detrital material lies, it spreads out laterally filling the basins.  When completely charged, the waters of the basins support the surface stream and progress slowly downstream through the permeable material.

25.  Ground water basins of the character described underly Temecula Creek in portions of Oak Grove Valley; and Lancaster Creek in Lancaster Valley.  Temecula Basin, one of the largest in the entire watershed of the Santa Margarita River, is located on the property of the Vail Estate.  This large T-shaped alluvial deposit area has the stem of the T along the main channel of Temecula Creek for a distance of approximately eight miles, varying

-7-

7—1404

U. S. GOVERNMENT PRINTING OFFICE

in width from two-thirds of a mile to a mile and a
half.  That area of the Temecula Basin immediately below
the present site of Vail Dam is comprised of coarse,
highly porous material and is known as the "out wash".
Into that "out wash", except in periods of extremely
heavy precipitation, Temecula Creek sinks.  About three
miles below the "out wash", the Temecula Basin becomes
an artesian area from which Temecula Creek again emerges
as a surface stream.

26.  The right arm of the T-shaped alluvial basin
extends northward underlying Murrieta Creek for a short
distance above that stream's confluence with Temecula
Creek.  The left arm of the T-shaped Temecula alluvial
basin extends southward beneath Penjango Creek.

27.  Underlying Murrieta Creek and separated from the
Temecula Basin is another large alluvial basin known as
the Murrieta Basin.  That is comprised of valley-fill
similar to that found in the other basins.

28.  Due to the existence of granitic rock
immediately underlying the stream from approximately the
point of confluence of Temecula Creek with Murrieta Creek
to the mouth of the Temecula Gorge, the Santa Margarita
River in the state of nature is a surface stream.  That
granitic underlay of the stream continues from the point
mentioned across the boundary of Camp Pendleton to a point
approximately one and one-half miles below the confluence
of DeLuz Creek with the Santa Margarita River.  At that
point the stream opens out into a rather broad alluvial
flood plain.  That alluvial area extends from the point
last mentioned to tidewater, constituting a large ground-
water basin.  That ground-water basin is comprised of

-8-

a relatively coarse and loose porous valley-fill at the
upstream end comparable to the "out wash" area of the
Temecula Basin above described.  Approaching the ocean
the character of the alluvium becomes increasingly fine
and tight.

29.  The alluvial ground-water basin underlying the
Santa Margarita River within Camp Pendleton and the other
military establishments is geologically and hydrologically
interconnected, comprised, however, of three separate
segments which lend themselves readily to arbitrary
subdivisions.  Their designation as three separate
components already appears.

30.  It is the function of Camp Joseph H. Pendleton
to provide housing and training facilities for units of
the Armed Forces, to conduct training of units of the
Armed Forces in amphibious warfare and experimental work
with landing craft, landing vehicles, tracked and
affiliated equipment and the development thereof; to
conduct combat training of the various units of the
United States Marine Corps, including air-ground support
coordination, and use of artillery, tanks and other
equipment used in the conduct of modern amphibious and
land warfare.  In addition to the aforementioned
activities, it is the function of Camp Pendleton to
provide logistic support for units of the United States
Marine Corps together with material maintenance and
storage facilities, for supplies and equipment and to
house and train replacements for subsequent assignment
to various operating units of the United States Marine
Corps.

31.  The United States Naval Hospital, with a

-9-

capacity of approximately 1550 beds, established at
Camp Joseph H. Pendleton, provides medical and hospital
services to personnel of the Armed Forces, their
dependents and other authorized personnel at 83 Naval
shore activities located in the Southern California
area and provides medical and hospital care to personnel
of units of the United States Fleet.

32.   The United States Naval Ammunition Depot,
Fallbrook, California, provides facilities for the
storage, segregation, reconditioning and issuing of
ammunition for operating units of the United States Fleet
and the United States Marine Corps and maintains
ammunition stocks for shore establishments of the United
States Navy located in the Southern California area.
In addition, this Naval Ammunition Depot stores and ships
ammunition for use by combat elements of the United States
Navy and the United States Marine Corps.

33.   The Santa Margarita River, in its course,
traverses virtually the length of Camp Pendleton - Naval
Ammunition Depot - United States Naval Hospital lands
from east to west for a distance of approximately 21 miles.
There are no users below Camp Pendleton on the Santa
Margarita River for the United States of America owns
the lands on both banks of that stream from the point
where the Santa Margarita River enters upon the military
establishments just mentioned to the point of confluence
of the river with the Pacific Ocean, except for the
easement for right of way which the Atchison, Topeka and
Santa Fe Railroad owns.

34.   The two chief riparian owners on the Santa
Margarita River are the Vails and the Government.  As

-10-

between them, the measure of their rights is the
stipulated judgment dated December 27, 1940, attached
to the complaint filed in this cause and marked Exhibit
"A", as agreed to by stipulation entered into in this case
between the Vails and the Government on July 8, 1952.

35.   The acquisition of the lands in question
by the United States of America was through two
condemnation proceedings.  The first acquisition in
point of time was a tract of land consisting of 9147.55
acres.  The decree on the declaration of taking was
entered in the Southern Division of this Court on
January 21, 1942.  This land is the place upon which the
Ammunition Depot is located.

36.   The next acquisition was 122,202.72 acres.
The decree in that case was dated December 31, 1942.

37.   A small parcel of 1676.58 acres was acquired
in another proceeding by a decree dated December 23, 1943.
Another parcel of 1574.61 acres, which was in the public
domain, was transferred to the Navy on August 8, 1945.
A small parcel consisting of 112.11 acres located in
Orange County was acquired by deed dated February 8, 1949.

Exclusive jurisdiction was ceded to the United
States of America by the State of California over each
of the parcels of land referred to above, except the
lands in Orange County, and the lands described in Public
Land Order No. 293.

38.   The Santa Margarita River flows through the
large parcel.  The river enters the area at the
northeasterly corner of Camp Pendleton, and from there it
meets the boundary of the Naval Ammunition Depot to the
south and forms the boundary of the Naval Ammunition

-11-

property and Camp Pendleton property and continues to
flow in a southwesterly direction along the boundary of
the Naval Ammunition Depot into Camp Pendleton and from
there on through the Camp into the Pacific Ocean.  From
the point at which it leaves the boundary of the Naval
Ammunition Depot, the lands embrace the river on each
bank until it reaches the ocean.

39.  The stipulated judgment states, as does the
pre-trial order, and it is therefore specifically found,
that for the full twenty-one miles the course of the
river lies entirely within the property of the United
States of America.  This land is subject to an easement
to a 100-foot right of way granted by the Government's
predecessor to the Santa Fe Railroad which does not
affect the riparian rights of the Government.

40.  Of this acreage owned by plaintiff, some
37,882.2 acres lie in the watershed of the Santa Margarita
River and are riparian to the river, i.e., they are
contiguous to the stream and have not been separated
by separation of interest or change of ownership of lands
lying between or upstream from the thread of the stream.

41.  Of the Government's riparian acreage in the
watershed, 18,648.5 acres can be irrigated profitably
according to the standards recognized by the Soil
Conservation Service of the United States Department of
Agriculture.

42.  The riparian acreage of the Vails is 40,575,
of which 29,410 acres can be profitably irrigated.  These
lands are within the watershed of the stream and drain
into it.  They have access to the stream and constitute
one continuous piece, no part of which has ever been

-12-

1713

severed from its riparian rights.

43. At the present time, the Vails have only 4500 acres under irrigation, but their engineers are working on plans for the development of the irrigation system.

44. On the basis of an irrigable acreage of 29,410, the duty of water of the Vail lands would be 79,514 acre-feet which could be profitably applied to the irrigable land on the Vail property if that much water were available.

45. The 18,648.3 acres of irrigable land of the Government in the watershed have a duty of water of 69,237 acre-feet of water per year.

46. The actual use of water by the Government's establishment from the year 1943 to date within and without the watershed, including use of irrigation and military purposes, is shown in the following table:

QUANTITIES OF WATER FROM
THE SANTA MARGARITA RIVER HISTORICALLY
UTILIZED BOTH WITHIN AND WITHOUT
THE WATERSHED BY THE UNITED
STATES OF AMERICA

| Year | Within Ac. Ft. | Without Ac. Ft. | Total Ac. Ft. |
|------|------|------|------|
| 1943 | 5389 | 1591 | 6,980 |
| 1944 | 5298 | 1785 | 7,083 |
| 1945 | 6396 | 4332 | 10,728 |
| 1946 | 6160 | 3729 | 9,889 |
| 1947 | 6374 | 4350 | 10,724 |
| 1948 | 6894 | 4417 | 11,311 |
| 1949 | 6637 | 5008 | 11,645 |
| 1950 | 6407 | 4402 | 10,809 |
| 1951 | 6275 | 3983 | 10,258 |

an average per year of 9,934 acre-feet.

-13-

1714

47. The needed average, on a present-day basis of the military establishments is 11,000 acre-feet per year.

48. The average use of military personnel in an establishment of the character of Camp Pendleton should be at least 150 gallons per person per day.

49. The military authorities at Camp Pendleton have husbanded the water resources well. They have limited strictly the use of water on their agricultural land. They have treated sewage and the effluent from the sewage treatments has been discharged into a lake where, after its being temporarily used for recreational purposes, it is released into the river basin in order to recharge it and thus increase the underground supply.

50. No water is taken by the Government from the stream itself (except for a small amount diverted directly at the Naval Ammunition Depot). All the water, except as noted, is from underground pumping through various wells located in the area.

51. Of the water used by the Government, some has historically been used on irrigated lands lying outside the watershed. The use of water outside the watershed began in 1938 by the Government's predecessor in interest, and has been continuous until the present time. The maximum demand upon the Santa Margarita River by the Government for such use is shown by the following table:

| Location | Areas (Acres) | Water Duty (Ac. Ft./Yr.) |
|---|---|---|
| Stuart Mesa | 964.0 | 3770.0 |
| South Coast Mesa | 259.0 | 1036.0 |
| Total | 1223.0 | 4806.0 |

-14-

U. S. GOVERNMENT PRINTING OFFICE

1715

52. In referring to quantities of water available, the measure used is acre-feet. An acre foot of water is defined by water and soil experts as that amount of water which would cover one acre one foot deep. The amount is 43,560 cubic feet, or 326,000 gallons. A cubic foot per second is a cubic foot each second. That amounts to a flow of two acre-feet in a twenty-four hour period. The acre-foot is volume, and the second foot is rate.

53. From a study of the recorded diversions for a period of twenty-eight years, it is found that the safe annual water supply at Camp Pendleton from the Santa Margarita River, with full usage of the subterranean basin, is 12,500 acre-feet annually, assuming the construction of a small equalizing reservoir at the DeLuz dam site.

54. There is no such reservoir at the present time.

55. In order to prevent damage to the underground basin through intrusion of sea water, it is necessary to maintain a fresh-water barrier at the lower end of the underground basin.

56. In the Santa Margarita River watershed at high flood time, large quantities of water run off in a very short period of time.

57. By a stipulated judgment, Exhibit "A" of the complaint in this case, a defendant in this action, the Vail Estate, and the Rancho Santa Margarita, a corporation, predecessor in interest of the United States of America, concluded protracted litigation between themselves over their respective rights in the Santa Margarita River. By an order of this Court there was filed July 8, 1952 the following stipulation between the United States of America

1716

and the Vail Estate:

"Whereas, on December 27, 1940, a judgment was entered in that action entitled Rancho Santa Margarita, a corporation, Plaintiff, v. N. R. Vail, et al., Defendants, in the Superior Court of the State of California in and for the County of San Diego, case No. 42850; and

"Whereas, the United States of America, during the years 1941-1943 acquired all the lands and rights to the use of water in the Temecula-Santa Margarita River which had been owned by the Rancho Santa Margarita, Plaintiff in the action referred to in the preceding paragraph. By that acquisition the United States of America succeeded to all the rights, title, and interest of the Rancho Santa Margarita in the Temecula-Santa Margarita River; and

"Whereas, on January 25, 1951, the United States of America instituted the above-entitled action, incorporating in the complaint filed therein, a copy of said judgment of December 27, 1940, as Exhibit "A" to its complaint. To the end that a full declaration of Plaintiff's rights in and to the waters of said River as against all other users thereof and claimants thereto might be obtained in this action, Plaintiff named among many other Defendants, Mary Vail Wilkinson, Mahlon Vail, Edward N. Vail, Margaret Vail Wise, and

-16-

1717

Nita M. Vail, Trustees herein collectively referred to as the Vails.  Notwithstanding the naming of the Vails as parties defendant in the present action the United States of America and the Vails are mutually in agreement that as between themselves the said judgment of December 27, 1940, is and shall continue to be binding upon them and each of them.

"Accordingly, it is hereby stipulated and agreed by and between the United States of America, Plaintiff herein, and the Vails Defendants herein, through their respective counsel, as follows:

"1.  That the rights and duties of Plaintiff, United States of America, and the Vails, in and to the waters of the Temecula-Santa Margarita River as between Plaintiff and said Vails, are those fixed, determined, and declared in that certain judgment entered on December 27, 1940, in the case of Rancho Santa Margarita, a corporation, Plaintiff, v. N. R. Vail, et al., Defendants, in the Superior Court of the State of California in and for the County of San Diego, case No. 42850.

"2.  That neither Plaintiff herein nor said Vails claim or will claim, in the within action, any rights or duties as against the other, other than or different from, those fixed, determined and declared in said judgment of December 27, 1940.

-17-

1719

"3.  That no issue is or will be raised
in this litigation as to the operations of
the parties under said judgment, it being
understood that neither party will claim in
this litigation that the other has failed
in any way to comply with said judgment of
December 27, 1940.

"4.  The introduction of a properly
certified copy of the said judgment of
December 27, 1940 in the record in this case
will constitute proof of the rights and duties
of the respective parties hereto as against
each other as specified in said judgment.

"Signed this 23rd day of Oct. 1951."

58.  The State of California, defendant in
intervention, has entered into the following stipulation
with the United States of America which has been approved
by this Court and filed in this case:

"On the 15th day of August, 1951, the
People of the State of California, in accord-
ance with invitation of the United States of
America, petitioned this Court to intervene
in this litigation.  On that date an Order
was allowed and entered by this Court granting
the Petition.

"For the clarification of the issues
in this litigation, and for the benefit of
all of the parties to this cause, it is
hereby stipulated:

"I

"That in Paragraphs VIII and IX of

-18-

1719

plaintiff's Complaint herein, and in
Paragraphs 2 and 3 of the Prayer of said
Complaint, the word 'paramount' is used in
the same sense in which that word is used
in the second paragraph, on page 374 of the
opinion of the Supreme Court of California
in the case of Peabody v. Vallejo, 2 Cal.
2d 351 (fourth paragraph on page 494,
40 Pac. 2d 486.)

"II

"That in this cause, the United States
of America claims only such rights to the
use of water as it acquired when it purchased
the Rancho Santa Margarita, together with
any rights to the use of water which it may
have gained by prescription or use, or both,
since its acquisition of the Rancho Santa
Margarita.

"III

"That the United States of America claims
by reason of its sovereign status no right
to the use of a greater quantity of water
than is stated in Paragraph II, hereof.

"IV

"That the rights of the United States of
America to the use of water herein are to
be measured in accordance with the laws of
the State of California.

"V

"That the parties to this Stipulation
will request the entry of a Pretrial Order

-19-

by this Court defining the issues in this
cause, in conformity with the statements
contained in this Stipulation.

"VI

"That there will be a full, complete
and mutual exchange of data and information
as to the subject matter of this cause
collected by the respective parties to this
Stipulation, including data respecting the
issuance of any permits or licenses issued
by the State of California in connection
with the rights to the use of water of the
Santa Margarita River.  Such exchange of
information by the United States, will be
subject to clearance by the Commanding Officer,
Camp Joseph H. Pendleton, in respect to
military security, as determined by said
Officer.

" Dated:  November 29, 1951."

59.  There is no surplus water supply at the
present time subject to appropriation from the Santa
Margarita River.  Any diversion of water from said
river by the Santa Margarita Mutual Water Company
would cause damage to the United States of America.
To date, the Santa Margarita Mutual Water Company has not
made diversions from the Santa Margarita River.

60.  Application No. 11578 to appropriate water from
the Santa Margarita River was filed October 4, 1946, by
the Santa Margarita Mutual Water Company with the State of
California, Department of Public Works, Division of Water
Resources, State Engineer.  The application was for sixty
(60) cubic feet of water per second from the Santa Margarita

-20-

River.

In addition to the direct flow right above mentioned, the application in question is for a storage right of 5,000 acre-feet of water from Temecula Creek at the approximate site of the Vail Dam and Reservoir.

61.  Application No. 12152 to appropriate water from the Santa Margarita River was filed November 12, 1947, by the Santa Margarita Mutual Water Company with the State of California, Department of Public Works, Division of Water Resources, State Engineer.  The application was for 60,000 acre-feet of water from the Santa Margarita River for storage.

## DECISION

In compliance with Rule 7 of the rules of this Court, the decision of the Court as set forth in its opinion and order, each dated December 9, 1952, is embodied by attachment hereto of copies of said opinion and order.  Also embodied herein by reference are the opinions of this Court dated August 15, 1951 (101 F. Supp. 298), and October 22, 1952.

## CONCLUSIONS OF LAW

From the foregoing findings, in addition to and in confirmation of the legal conclusions set forth in said opinions of August 15, 1951 and October 22, 1952, the Court concludes as a matter of law:

1.  The opinions rendered by this Court on August 15, 1951 (101 F. Supp. 298), and October 22, 1952, and the legal conclusions set forth therein, are hereby adopted and by reference made a part of these conclusions of law.

2.  The rights of the United States of America to the use of water from the Santa Margarita River to the extent necessary for the irrigation of the irrigable lands owned by the United States in the watershed of said river are paramount to the rights claimed by the Santa Margarita Mutual Water Company under its applications dated October 4, 1946 and November 12, 1947 to appropriate water from said river.

3.  As between the Government and the Vails, their

correlative rights are to be determined according to the stipulated judgment entered in the case entitled Rancho Santa Margarita v. Vail, et al., No. 43850, Superior Court, San Diego County, on December 27, 1940, as agreed to by stipulation entered between the Government and the Vails on July 8, 1952.

4. The military use of water is a riparian use and the United States of America's paramount rights extend to the full measure of the capable riparian agricultural use to which its riparian lands can be put. The United States of America has put to reasonable and beneficial use water to the extent of on an average of 9,934 acre feet per year, and the present needed average is 11,000 acre feet per year. The United States of America has acquired by prescription the right to use water in the amount of 4,806 acre feet per annum on lands outside the watershed of the Santa Margarita River unaffected by any administrative action by the Department of Water Resources of the State of California.

5. There is available from the Santa Margarita River as a water supply for Camp Pendleton, the Naval Ammunition Depot and the U. S. Naval Hospital not more than 12,500 acre feet of water annually.

6. There was not at the time of the filing of the applications to appropriate water from the Santa Margarita River by the Santa Margarita Mutual Water Company on October 4, 1946 and November 12, 1947, any surplus water available for appropriation.

7. There is no surplus water supply at the present time subject to appropriation from the Santa Margarita River.

8. The Santa Margarita Mutual Water Company has not made any diversion of water from the Santa Margarita River and no permits for diversion of water from said river, or

1   for construction of a dam on said river, have been issued

2   by the State of California.

3      9.   The holding of the Supreme Court of the State of

4   California in the case of <u>Rancho Santa Margarita</u> v. <u>Vail</u>,

5   81 P. 2d 533,555; 11 Cal. 2d 501 (1938), to the effect that

6   "there is not sufficient water in the main river for the

7   reasonable beneficial uses of either of the parties" is

8   controlling in the decision of this Court.

9      10.   The United States of America is entitled to a

10   DECREE in this action adjudging and declaring that it is

11   the owner and entitled to use the rights set forth in the

12   Findings of Fact.

13   <u>DECREE</u>

14      NOW, THEREFORE, in accordance with the Findings of

15   Fact and Conclusions of Law hereinabove set forth, it is

16   hereby ORDERED, ADJUDGED AND DECREED as follows:

17      That the United States of America is as against the

18   Santa Margarita Mutual Water Company and the State of Cali-

19   fornia hereby adjudged to be the owner of the water rights

20   specified and set forth in the above Findings of Fact and

21   title thereto and therein is forever quieted as against the

22   Santa Margarita Mutual Water Company and the State of Cali-

23   fornia in accordance with the Findings, Conclusions and

24   Decree.

25

26      Dated this _____ day of _____, 195__

27

28

29                            Chief U. S. District Judge

30

31

32

7—1404

U. S. GOVERNMENT PRINTING OFFICE

1725

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,           )
             Plaintiff,           )
                         )
                         )
           vs                )  No. 1247- SD
                         )
FALLBROOK PUBLIC UTILITY DISTRICT,  )  O R D E R
et al.,                             )
             Defendants,           )
THE PEOPLE OF THE STATE OF CALIFORNIA,)
          Defendants in Intervention )

     The above-entitled cause, heretofore tried, argued
and submitted, is now decided as follows:

     Upon the grounds stated in the Opinion filed here-
with, Judgment and Declaration quieting Title of the
Government will be entered.  Such Judgment and Declaration
to contain the following specific Findings.

     1.  Of the Government's acreage involved in this
litigation, 37,882.2 acres lie in the water shed of the
Santa Margarita River and are riparian to it.

     2.  Of this acreage in the watershed, 18,648.3
acres can be irrigated profitably according to the standards
recognized by the Soil Conservation Service of the Department
of Agriculture.

     3.  The riparian acreage of the Vails is 40,575
acres, of which 29,410 acres can be profitably irrigated.

1726

These lands are within the watershed of the stream and drain into it. They have access to the stream and constitute one continuous piece, no part of which has ever been severed from its riparian rights.

4. The Vails have, at the present time, 4500 acres under irrigation.

5. On the basis of an irrigable acreage of 29,410 acres, 79,514 acre-feet of water could be applied profitably to the irrigable Vail lands.

6. The 18,648.3 acres of irrigable land of the Government in the watershed would call for a duty of water of 69,237 acre-feet of water per year.

7. As to such prospective use, the Government is entitled to a declaration that its right to such water is paramount to those claimed by Santa Margarita under its applications dated October 4, 1946 and November 12, 1947.

8. As between the Government and the Vails, their correlative rights are to be determined according to the stipulated judgment entered in the case entitled Rancho Santa Margarita v. Vail, et al, No. 43850, Superior Court, San Diego County, on December 27, 1940, as agreed to by stipulation entered between the Government and the Vails on July 8, 1952.

9. The military use is a riparian use and the Government's paramount rights extend to the full measure of the capable riparian agricultural use to which the lands can be put. The Government has put to beneficial use water to the extent of on an average of 9934 acre-feet per year. The present needed average is 11,000 acre-feet per year. This use is reasonable and beneficial. Included in this amount is 4806 acre-feet used on irrigated lands outside the watershed which the Government has acquired the right

7—1404

U. S. GOVERNMENT PRINTING OFFICE

1    to use by prescription, unaffected by any administrative

2    action by the Department of Water Resources of the State of

3    California.

4        10.  A study of the water supply leads to the con-

5    clusion that not more than 12,500 acre-feet annually, under

6    the most favorable circumstances, are available as a water

7    supply at Camp Pendleton.

8        11.  If the correlative rights of the two chief

9    riparian owners are considered, there was not at the time

10    of the filing of the appropriation notices by Santa Marga-

11    rita in 1946 and in 1947, any surplus water supply to

12    appropriate.

13        12.  There is no surplus water supply at the present

14    time subject to appropriation.

15        13.  As Santa Margarita has not made any diversion

16    and no permits for diversion or for construction of a dam

17    have been issued by the State of California, injunction

18    against further prosecution of the applications is not

19    necessary.  A declaration of right will suffice.  The

20    Court is certain that, in acting on any application, the

21    State authorities will take into consideration the terms

22    of this decision.

23        14.  Findings and Judgments to be prepared by

24    counsel for the Government declaring the rights and

25    quieting title.

26        15.  The adjudication here made and the Findings and

27    Judgment whall be considered a partial adjudication of the

28    claim herein under Rule 54 (b) of Federal Rules of Civil

29    Procedure, be subject to provision, and not become final

30    until the claims of Santa Margarita and Fallbrook are finally

31    determined. (See, Reeves v. Beardall, 1942, 316 U.S. 283.)

32        DATED:   December 9, 1952.

                                    LEON R. YANKWICH

                                    Chief U. S. District Judge