1   EDMUND G. BROWN,
    Attorney General
2   GEORGE G. GROVER,
    Deputy Attorney General
3   600 State Building
    San Francisco 2, California
4   Telephone:  UNderhill 1-8700
    Attorneys for Defendant in Intervention
5   State of California

6   W. B. DENNIS,
    Attorney for Defendant
7   Santa Margarita Mutual Water Company
    Route 1, Box 58, Fallbrook, California
8

9
                IN THE UNITED STATES DISTRICT COURT
10
                   SOUTHERN DISTRICT OF CALIFORNIA
11
                         SOUTHERN DIVISION
12   UNITED STATES OF AMERICA,            )   Civil No. 1247-SD
13                  Plaintiff,            )
                                          )   PROPOSED AMENDMENTS TO
14          v.                            )   FINDINGS OF FACT AND
                                          )   CONCLUSIONS OF LAW.
15   FALLBROOK PUBLIC UTILITY DISTRICT,   )
16   a public service corporation of      )
     the State of California;             )
17   SANTA MARGARITA MUTUAL WATER COMPANY,)
     a public service corporation of      )
18   the State of California; et al.;     )
19                  Defendants,           )
                                          )
20   PEOPLE OF THE STATE OF CALIFORNIA,   )
                                          )
21                  Defendant in          )
                    Intervention.         )
22

23          COME NOW the SANTA MARGARITA MUTUAL WATER COMPANY,

24   defendant, and the PEOPLE OF THE STATE OF CALIFORNIA, defendant

25   in intervention, and offer the following proposed amendments and

26   modifications to the findings of fact and conclusions of law

27   proposed by the plaintiff UNITED STATES OF AMERICA on December 29,

28   1952:

29                                  1

30          Delete lines 19 to 25 inclusive on page 1 and substitute

31   the following:

                                                          1776

LOD 6ED
FEB 10 1953

EDMUND L. SMITH, Clerk
By_____
        Deputy Clerk

1    The court, on motion of plaintiff, having ordered separate

2    trials in the above-entitled action on March 31, 1952, as between

3    the UNITED STATES OF AMERICA, plaintiff, and FALLBROOK PUBLIC

4    UTILITY DISTRICT and SANTA MARGARITA MUTUAL WATER COMPANY,

5    defendants; and the PEOPLE OF THE STATE OF CALIFORNIA, defendant

6    in intervention, having been made a party to said separate

7    trials on July 11, 1952; and the above-entitled action having

8    come on for trial as to the SANTA MARGARITA MUTUAL WATER COMPANY

9    and the FALLBROOK PUBLIC UTILITY DISTRICT, defendants, and the

10   PEOPLE OF THE STATE OF CALIFORNIA, defendant in intervention,

11   on the 29th day of October, 1952, before the Honorable Leon R.

12   Yankwich, Judge Presiding, sitting without a jury; and

13   David W. Agnew, as Special Assistant to the Attorney General

14   of the United States, and Raymond de S. Shryock, as attorney

15   for the United States Navy Department, appearing for plaintiff,

16   and W. B. Dennis, appearing for the defendant SANTA MARGARITA

17   MUTUAL WATER COMPANY, and Edmund G. Brown, Attorney General

18   of California, by George G. Grover, Deputy Attorney General of

19   California, appearing for the State of California, and

20   Phil D. Swing of the firm Swing, Scharnikow and Staniforth

21   appearing for the defendant FALLBROOK PUBLIC UTILITY DISTRICT;

22   and it appearing that the trial of said action against the

23   defendant FALLBROOK PUBLIC UTILITY DISTRICT had been and was

24   enjoined by the United States Court of Appeals for the Ninth

25   Circuit; and the said Honorable Leon R. Yankwich having ordered

26   the trial to be continued as to the FALLBROOK PUBLIC UTILITY

27   DISTRICT and to proceed as to the plaintiff the UNITED STATES

28   OF AMERICA, and the defendant SANTA MARGARITA MUTUAL WATER

29   COMPANY, and the defendant in intervention the PEOPLE OF THE

30   STATE OF CALIFORNIA; and evidence having been introduced, both

31   oral and documentary, and the cause having been argued by

1777

1  counsel and submitted---now therefore the court, being fully

2  advised in the premises and having rendered an opinion and order

3  on December 9, 1952, makes findings of fact as follows:

4                                   2

5       In place of defendant's proposed Finding No. 19, sub-

6  stitute the following:

7       Underlying Camp Joseph H. Pendleton within the Santa

8  Margarita River watershed are three underground basins commonly

9  known as:

10      (a)  Upper or O'Neill Basin,

11      (b)  Middle or Chappo or Home Ranch Basin, and

12      (c)  Lower or Ysidora Basin.

13      The foregoing basins are hereinafter sometimes referred

14  to collectively as the Pendleton Basin.  The three basins com-

15  prising Pendleton Basin are geographically and hydrologically

16  interconnected.  Said basins are accurately shown on defendant's

17  Exhibit A as O'Neill Basin, Ranch Basin, and Ysidora Basin,

18  being outlined in black and colored in green on said exhibit.

19  Said basins are also accurately shown on plaintiff's Exhibit 8.

20                                   3

21      Delete the second sentence of plaintiff's proposed

22  Finding No. 20.

23                                   4

24      In place of plaintiff's proposed Finding No. 21, sub-

25  stitute the following:

26      The United States Geological Survey has maintained gauging

27  stations on the Santa Margarita River System which accurately

28  record the amount of surface and sub-surface flow of the Santa

29  Margarita River and certain of its tributaries; the location,

30  station name, and period for which records have been maintained

31  are as follows:

1778

| STREAM | STATION | PERIOD OF RECORD |
|--------|---------|------------------|
| Santa Margarita River | Ysidora | From February 19, 1923, to date |
| Santa Margarita River | Fallbrook | From November 25, 1924, to date |
| Temecula Creek | Temecula (Railroad) Canyon | From January 30, 1923, to date |
| Temecula Creek | Nigger Canyon | From January 30, 1923, to date |
| Murrieta Creek | Temecula | From October 1, 1930, to date |

In addition, a gauging station has been maintained which accurately records all water diverted from the Santa Margarita River by O'Neill Ditch. The flow of the Santa Margarita River from time to time and at various stations is accurately set forth in plaintiff's Exhibit 14. Defendant's Exhibits Y-7, Y-8, Y-9, Y-10, and Y-11 accurately summarize certain of the information contained in Exhibit 14.

5

In plaintiff's proposed Finding 23, at lines 3 and 4 of page 7, omit the words "and other military establishments."

6

In plaintiff's proposed Finding 24, delete the last three sentences (lines 15 through 23 of page 7).

7

In plaintiff's proposed Finding 25, delete the first sentence.

8

Delete the last three sentences of plaintiff's proposed Finding 28 (lines 27 et seq. of page 8 and lines 1-5 of page 9) and substitute therefor the following:

At that point the river enters the lands overlying the Pendleton Basin. The location of the lands overlying said

1779

-4-

1  Pendleton Basin is correctly shown on defendant's Exhibit A.

2  No part of Pendleton Basin underlies the United States Naval

3  Ammunition Depot.   The materials which comprise Pendleton

4  Basin consist of various types of soils having various shapes

5  and physical characteristics and various degrees of porosity

6  and permeability.   The water does not percolate or move through

7  all of Pendleton Basin at a uniform rate or in a uniform direction.

8  The storage capacity of the soils and structure which con-

9  stitute Pendleton Basin varies from place to place.   The

10  location of all wells from which plaintiff has produced, ex-

11  tracted, or developed water from Pendleton Basin, together with

12  the pipe lines which convey and transport water, is correctly

13  shown on plaintiff's Exhibit 22.

                              9

15       Delete plaintiff's proposed Finding 29.   (Note:   The

16  subject matter of this finding is set forth in paragraph 2

17  above.)

                             10

19       In place of the first sentence of plaintiff's pro-

20  posed Finding 34, substitute the following:

21       Two of the chief riparian owners on the Santa Margarita

22  River System are the Vails and plaintiff.

                             11

24       Add to plaintiff's proposed Finding 34 the following:

25       Neither the Santa Margarita Mutual Water Company nor

26  the People of the State of California were parties to the said

27  stipulated judgment or stipulation; nor are they, nor have they

28  been, in privity with or successors in interest to any of the

29  parties to the said stipulated judgment or stipulation.

                             12

31       In place of plaintiff's proposed Finding 35, sub-

    stitute the following:

         On January 21, 1942, plaintiff acquired fee title to

                                               1780

                              5

1 9,147.55 acres of land, generally known and referred to as

2 United States Naval Ammunition Depot, the exterior boundaries

3 of which are accurately outlined in yellow on plaintiff's Ex-

4 hibit 43 and which are also accurately outlined on plaintiff's

5 Exhibit 22.  Said land consists of three parcels which were

6 patented by the United States of America on different dates.

7 Parcel 1 contains certain portions of the Rancho Santa

8 Margarita y Los Flores as described in the patent thereof from

9 the United States of America to Pio Pico and Andres Pico dated

10 March 28, 1879, and recorded in Book 7, Page 18 of the patents

11 records of San Diego County, California.  Parcel 2 is described

12 as follows:

13         Lots 1, 2 and 3 in Section 35, Township 9
        South, Range 4 West, San Bernardino Meridian,

14         in the County of San Diego, State of California,
        according to U. S. Government survey approved

15         June 11, 1880; also Section 36, Township 9
        South, Range 4 West, San Bernardino Meridian,

16         in the County of San Diego, State of California,
        according to U. S. Government Survey thereof

17         approved June 11, 1880, EXCEPTING therefrom
        that portion lying northeast and easterly of

18         the Southwest and westerly line of the present
        existing California State Highway from Bonsall

19         to Fallbrook, as shown on licensed surveyor's
        Map No. 501 filed in the Office of the County

20         Recorder of said San Diego County.

21     Parcel 3 is described as follows:

22         The Southwest 1/4 of the Northwest 1/4, the
        West 1/2 of the Southeast 1/4, and the West

23         1/2 of Section 1, and Lots 1, 2, 3 and 4 in
        Section 2, Township 10 South, Range 4 West,

24         San Bernardino Meridian, in the County of
        San Diego, State of California, according to

25         U. S. Government Survey approved April 5, 1881.

26     The Santa Margarita River does not traverse any portion

27 of Parcels 2 and 3 nor do said parcels abut thereon.  Said

28 river flows along the northwest boundary of Parcel 1 for a

29 distance of approximately two and one-half miles.  Parcel 1

30 is traversed by Fallbrook Creek, a tributary of the Santa

31 Margarita River.

1781

13

In place of plaintiff's proposed Finding 36, substitute the following:

That on December 31, 1942, plaintiff acquired fee title to 123,620 acres of land, the exterior boundaries of which are correctly outlined in red on plaintiff's Exhibit 43. Said land consists of two parcels. At the time of acquisition one parcel, containing 52,420 acres, was owned by Jerome O. Baumgartner, Eleanor L. Baumgartner, Elizabeth B. Yates, Ira E. Yates, John J. Baumgartner, Margaret D. Kellam and Gareth Kellem, and Doris E. Baumgartner; said parcel lies north and west of the brown line shown on plaintiff's Exhibit 43. At the time of acquisition the other parcel, containing approximately 71,200 acres, was owned by Maude Lee Flood, Mary Emma Stebbins, Theodore E. Stebbins, James Flood and Elizabeth Flood; said parcel lies south and east of the brown line on plaintiff's Exhibit 43. No part of the parcel containing 52,420 acres lies within the watershed of the Santa Margarita River or of any tributary of said river.

14

In place of plaintiff's proposed Finding 37, substitute the following:

On December 22, 1943, plaintiff acquired from sundry persons fee title to 1,676.58 acres of land located adjacent to the northeast boundary of the Rancho Santa Margarita y Los Flores. Said 1,676.58 acres are correctly shown in green on plaintiff's Exhibit 43. Said property does not abut upon nor is it traversed by the Santa Margarita River. Said property lies partly within and partly without the watershed of the Santa Margarita River.

On August 8, 1945, by Public Land Order No. 293 the

1782

1  Secretary of the Interior of the United States of America trans-

2  ferred to the Secretary of the Navy of the United States of

3  America 1,574.61 acres of land adjacent to and northeast of the

4  Rancho Santa Margarita y Los Flores.  Said 1,574.61 acres are

5  correctly shown in orange on plaintiff's Exhibit 43.  No part

6  of said land is traversed by or abuts upon the Santa Margarita

7  River.  Said land is owned by plaintiff.

8         On February 8, 1949, plaintiff acquired fee title to

9  approximately 112.11 acres of land situated in Orange County

10  and adjacent to the Rancho Santa Margarita y Los Flores.  Said

11  112.11 acres are correctly shown in blue on plaintiff's Exhibit

12  43.  No portion of said lands lies within the watershed of the

13  Santa Margarita River or any tributary thereof.

14                            15

15         After plaintiff's proposed Finding 37, add Finding 37A

16  as follows:

17         The 123,620 acres of land referred to in Finding 36,

18  and the 1,676.58 acres referred to in Finding 37, and the

19  1,574.61 acres referred to in Finding 37, and the 112.11 acres

20  referred to in Finding 37, totaling 126,983,30 acres , constitute

21  Camp Joseph H. Pendleton.  The exterior boundaries of Camp

22  Joseph H. Pendleton are correctly shown on plaintiff's Exhibit 22

23  and defendant's Exhibit A.  All portions of Camp Joseph H.

24  Pendleton and of the United States Naval Ammunition Depot which

25  lie within the watershed of the Santa Margarita River are in-

26  cluded within those areas of plaintiff's Exhibits 21, 22, 23,

27  and 24 that show the land of plaintiff lying within the watershed

28  of the Santa Margarita River.

29                            16

30         After our proposed Finding 37A, add Finding 37B as

31  follows:

-8-

1783

Exclusive jurisdiction was ceded to the United States of America by the State of California over each of the parcels of land referred to in Finding 35, 36, and 37, except the 112.11 acres located in Orange County and the 1,574.61 acres described in Public Land Order No. 293.

17

In place of plaintiff's proposed Finding 38, substitute the following:

The Santa Margarita River at places traverses, and at other places abuts upon, the parcel of 71,200 acres referred to in Finding 36.  Said river enters said parcel of land near the northeast corner thereof and flows in a southwest direction through said parcel until it meets the boundary of the United States Naval Ammunition Depot, from which point it forms the boundary of said Naval Ammunition Depot and Camp Joseph H. Pendleton for a distance of approximately two and one-half miles. It then reenters said parcel of 71,200 acres and traverses said parcel until it reaches the Pacific Ocean.  From the point at which the Santa Margarita River enters Camp Joseph H. Pendleton to the confluence of said river and De Luz Creek the said Santa Margarita River is primarily a surface stream.

18

In place of the first sentence of plaintiff's proposed Finding 39 (lines 8-12 of page 12), substitute the following:

From the point at which the Santa Margarita River enters Camp Joseph H. Pendleton until it reaches the Pacific Ocean, a distance of approximately twenty-one miles, said river lies entirely within the property of plaintiff.

19

In place of plaintiff's proposed Finding 40, substitute the following:

1784

47193 7-51
BSM SPO

1     The watershed of the Santa Margarita River within the
2 exterior boundaries of Camp Joseph H. Pendleton and the United
3 States Naval Ammunition Depot is correctly shown on plaintiff's
4 Exhibits 21, 22, 23, and 24.  No other part or parcel of Camp
5 Joseph H. Pendleton or the Naval Ammunition Depot lies within
6 the watershed of the Santa Margarita River.  Said acreage owned
7 by plaintiff and lying within the watershed of the Santa
8 Margarita River, as shown on plaintiff's Exhibit 22, has an
9 area of 37,882.2 acres.  Said 37,882.2 acres are riparian to
10 the Santa Margarita River.
11     (Note:  Finding 40 as proposed by plaintiff conflicts
12 with plaintiff's proposed Findings 35, 36, and 37 and also with
13 Findings 35, 36, and 37 as herein proposed.  The statement in
14 Finding 40 as herein proposed that 37,882.2 acres are riparian
15 is offered solely in obedience to the court's order.)
16                         20
17     In place of plaintiff's proposed Finding 41, sub-
18 stitute the following:
19     Of the 37,882.2 acres owned by plaintiff and found to
20 be riparian in Finding 40, 18,648.3 acres can be irrigated
21 profitably according to the standards recognized by the Soil
22 Conservation Service of the United States Department of Agri-
23 culture.
24                         21
25     In place of plaintiff's proposed Finding 42, substitute
26 Findings 42, 42A, 42B, 42C, 42D, 42E, and 42F as follows:
27     42.   The Vail Ranch consists of four grants known as
28 the Temecula, the Little Temecula, the Pauba, and the Santa
29 Rosa Grants, plus a parcel of 460 acres.  Said parcel of 460
30 acres is riparian to Penjango Creek.
31     42A.  The Temecula Grant is accurately outlined in

1785

blue on plaintiff's Exhibit 32.  It contains approximately 10,402 acres.  It is traversed by Murrieta Creek and by Temecula Creek.  A portion of said grant lies within the watershed of Murrieta Creek and a portion lies within the watershed of Temecula Creek.

42B.  The Little Temecula Creek is accurately outlined in green on plaintiff's Exhibit 32.  It contains approximately 1,727 acres.  It is traversed by Penjango Creek and by Temecula Creek.  A portion of said grant lies within the watershed of Penjango Creek and a portion lies within the watershed of Temecula Creek.

42C.  The Pauba Grant is accurately outlined in red on plaintiff's Exhibit 32.  It contains approximately 27,662 acres.  It is traversed by Temecula Creek.  A portion of said grant lies within the watershed of Murrieta Creek and a portion lies within the watershed of Temecula Creek.

42D.  The Santa Rosa Grant is accurately outlined in red on plaintiff's Exhibit 32.  It contains approximately 46,340 acres.  It is traversed by Sandia Creek and De Luz Creek. Of said grant, 39,646 acres lie within the watershed of the Santa Margarita River.  Of said 39,646 acres, 19,581 acres lie within the watershed of Murrieta Creek, and 10,270 acres lie within the watershed of Sandia Creek, and 9,589 acres lie within the watershed of De Luz Creek.

42E.  The Temecula Grant, the Little Temecula Grant, the Pauba Grant, and the parcel of 460 acres referred to in Finding 42 contain a total 40,251 acres, of which 29,410 acres can be profitably irrigated.

42F.  The riparian acreage of the Vails is 40,575, of which 29,410 acres can be profitably irrigated.  These lands are within the watershed of the stream and drain into it.  They

1786

1   have access to the stream and constitute one continuous piece,

2   no part of which has ever been severed from its riparian rights.

3       (Note:  We believe that Finding 42E as herein proposed

4   is more nearly supported by evidence than Finding 42F as herein

5   proposed; we have nevertheless included 42F in obedience to

6   paragraph 3 of the order of December 9, 1952.)

        22

7       In place of plaintiff's proposed Finding 43, substitute

8   the following:

9       At the present time the Vails have only 4500 acres

10  under irrigation.  The irrigation of said 4500 acres consumes

11  all the water which is available to the Vails under the stipu-

12  lated judgment which is attached to plaintiff's complaint as

13  Exhibit A thereof.

14          23

15      To plaintiff's proposed Finding 50, add the following:

16      The aforementioned direct diversions at the Naval

17  Ammunition Depot are completely and correctly shown in sheet

18  3 of defendant's Exhibit D.

19          24

20      Delete plaintiff's proposed Finding 57.

21      (Note:  If plaintiff's proposed Finding 57 is to be

22  retained, the parties who signed the stipulation should be

23  shown.)

24          25

25      Delete the second sentence of plaintiff's proposed

26  Finding 59.

27      (Note:  We have experienced some uncertainty in

28  interpreting the opinion of the court of December 9, 1952, in

29  that it is therein stated that any diversion by the Santa

30  Margarita Mutual Water Company would cause damage to plaintiff,

31  and at the same time it is said that an appropriator may

                                      787

1  temporarily divert pending full riparian development.  Since

2  the opinion indicates that 11,000 acre feet are presently needed

3  by plaintiff and that the safe water supply is approximately

4  12,500 acre feet, there would seem to be--even on the theory

5  of the court--a temporary surplus of 1,500 acre feet.  Moreover,

6  we are not certain of the meaning of the word "surplus" as

7  used in the opinion.  It would be helpful to suggest whether

8  surplus over riparian right is meant, or surplus over riparian

9  need, or surplus over riparian use, or some other surplus.)

10                          26

11          In place of plaintiff's proposed Finding 60, sub-

12  stitute the following:

13          On October 4, 1946, the defendant Santa Margarita

14  Mutual Water Company filed an application with the State of

15  California, Department of Public Works, Division of Water

16  Resources, State Engineer, which application was given No. 11578.

17  In said application applicant proposed to divert, and requested

18  permission to divert, 60 cubic feet of water per second from

19  the Santa Margarita River at a point downstream from the

20  Railroad Canyon Gauging Station and upstream from the Fallbrook

21  Gauging Station.  In addition applicant proposed to store,

22  and requested permission to store, 5,000 acre feet of water

23  annually, to be diverted from Temecula Creek at the approximate

24  site of the Vail Dam and Reservoir, which is upstream from the

25  confluence of Murrieta Creek and Temecula Creek.  Said appli-

26  cation was for seasonal and cyclic storage.  Said application

27  is still active and in good standing.

28                          27

29          In place of plaintiff's proposed Finding 61, sub-

30  stitute the following:

31          On November 12, 1947, the defendant Santa Margarita

                                            1788

1    State of California under and pursuant to the applications re-

2    ferred to in Finding 60 and 61.

3                  31

4      Add Finding 65, as follows:

5      The normal annual flow of the Santa Margarita River

6    at Ysidora Gauging Station is 28,900 acre feet.  The normal

7    flow of the Santa Margarita River at Ysidora Gauging Station

8    by months is as follows (in acre feet):

9                January     3440

10              February    9530

11              March       10430

12              April       2860

13              May         603

14              June        190

15              July         22

16              August      11

17              September   11

18              October     104

19              November    321

20              December    1450

21                  32

22      Add Finding 66, as follows:

23      Any and all water which passes and is recorded by the

24    Ysidora Gauging Station flows into the Pacific Ocean and is lost

25    and wasted and serves no beneficial purpose.

26                  33

27      Add Finding 67, as follows:

28      The full natural flow of the Santa Margarita River by

29    months for the water years 1924-25 to 1951-52 inclusive is

30    accurately shown by the unlabeled black line immediately above

31    the line labeled "Ysidora Mesa" on the various sheets of

1789

1   Mutual Water Company filed an application with the State of

2   California, Department of Public Works, Division of Water

3   Resources, State Engineer, which application was given No. 12152.

4   In said application applicant proposed to store, and requested

5   permission to store, 60,000 acre feet of water annually, to be

6   diverted from the Santa Margarita River at the approximate

7   location of the Fallbrook Gauging Station.   Said application

8   was for cyclic and seasonal storage and is still active and

9   in good standing.

10                                    28

11          Add Finding 62, as follows:

12          On June 30, 1948, the United States Navy Department

13   filed an application with the State of California, Department

14   of Public Works, Division of Water Resources, State Engineer,

15   which application was given No. 12576.   In said application

16   applicant proposed and requested permission to store temporarily

17   165,000 acre feet of water per annum, at approximately the

18   junction of De Luz Creek and the Santa Margarita River.   Said

19   application is still pending and in good standing.

20                                    29

21          Add Finding 63, as follows:

22          Defendant Santa Margarita Mutual Water Company is

23   a corporation duly organized and existing under and pursuant

24   to the laws of the State of California.

25                                    30

26          Add Finding 64, as follows:

27          Any and all rights which plaintiff may acquire to

28   divert, use, or store waters of the Santa Margarita River under

29   and pursuant to the application referred to in Finding 62 are

30   junior to any rights which defendant Santa Margarita Mutual

31   Water Company may acquire or which may be granted to it by the

1   plaintiff's Exhibit 42.

2              34

3     Add Finding 68, as follows:

4     The total amounts of water diverted by plaintiff from

5   the Pendleton Basin and the Santa Margarita River and used by

6   plaintiff for military, agricultural, recreational, and domestic

7   purposes within the confines of Camp Joseph H. Pendleton, by

8   months, for the water years 1942-43 to 1951-52 inclusive are

9   correctly set forth in plaintiff's Exhibits 26 and 27.   All

10  water obtained by plaintiff from the Santa Margarita watershed

11  and used for agricultural purposes has been obtained from

12  Ysidora Basin.

13              35

14     Add Finding 69, as follows:

15     The total use of water on the Vail Ranch by months for

16  the water years 1922-23 to 1951-52 inclusive is correctly set

17  forth in plaintiff's Exhibit 28.

18              36

19     Add Finding 70, as follows:

20     The total annual diversions from the Santa Margarita

21  River made by the Fallbrook Public Utility District for the

22  years 1925 to 1951 inclusive, and the total monthly diversions

23  from said river by said district for the months January 1948

24  to June 1952 inclusive are accurately shown on defendant's

25  Exhibit O.

26              37

27     Add Finding 71, as follows:

28     There have been no diversions of water from the Santa

29  Margarita River below the Fallbrook Gauging Station other than

30  by plaintiff and its predecessors in interest.

31

1791

38

    Add Finding 72, as follows:

    On August 16, 1946, the Vail Company filed an application with the State of California, Department of Public Works, Division of Water Resources, State Engineer, which application was given No. 11518.  In said application applicant proposed and requested permission to store temporarily 40,000 acre feet of water per annum to be collected between November 1 and April 30 of each season, said water to be used on 3,797 acres of the Pauba Ranch as shown on the maps introduced into evidence as defendant's Exhibit F (in two parts).  A permit for such storage was granted by the State of California, being Permit No. 7032.

39

    Add Finding 73, as follows:

    The Vail Company, prior to the institution of this action, erected, approximately at the location of the Nigger Canyon Gauging Station, Vail Dam (sometimes variously called Nigger Canyon Dam or Pauba Dam), which dam is capable of impounding 64,000 acre feet of water.  The gates on said dam were closed in November of 1948, and since that time said dam has impounded the entire surface and subsurface flow of the river at that point.  The amount of water impounded by said dam is correctly shown in plaintiff's Exhibit 7.

40

    Add Finding 74, as follows:

    Plaintiff's Exhibit 22 correctly portrays all water distribution lines, irrigation lines, and wells used to extract from the Santa Margarita watershed and transport water for domestic, military, recreational, and agricultural use within Camp Joseph H. Pendleton.  Plaintiff's Exhibit 22 also correctly

1792

shows the location of all sewage lines and all sewage effluent discharges for the years 1944 to 1952 inclusive.  All sewage effluent discharges from Plants No. 1,/2, and No. 3 are discharged into the Pendleton Basin.

41

Add Finding 75, as follows:

Stuart Mesa and South Coast Mesa are accurately outlined in green on the Oceanside Sheet of plaintiff's Exhibit 22.

42

Add Finding 76, as follows:

Plaintiff now has under construction and proposes to construct in 1953 barracks capable of quartering 17,000 men in Las Pulgas Canyon, San Mateo Canyon, and San Onofre Canyon. All of said barracks are located outside the watershed of the Santa Margarita River and will be supplied with water developed from wells located outside the watershed of the Santa Margarita River.  Plaintiff contemplates the construction in 1953 of a trailer area for the use of civilians and the families of military personnel, which area will be supplied with water from the Santa Margarita River or Pendleton Basin; said trailer area lies partly within and partly without the watershed of the Santa Margarita River, the location of said area being correctly shown on the Oceanside Sheet of plaintiff's Exhibit 22, being labeled "Tent Area" on said sheet.

43

Add Finding 77, as follows:

The needed average of 11,000 acre feet per year referred to in Finding 47 includes all the military needs of plaintiff at Camp Joseph H. Pendleton and the Naval Ammunition Depot, both within and without the watershed of the Santa Margarita River.

1793

44

Add Finding 78, as follows:

Plaintiff's use of water within the watershed of the Santa Margarita River, as set forth in Finding 46, includes an estimated annual use of approximately 4500 acre feet of water by the natural forage overgrowing the Pendleton Basin, computed at the rate of one acre foot of water so used for each acre of the surface of said basin.

45

Add Finding 79, as follows:

Plaintiff's average annual need for water for its military establishments as set forth in Finding 47 includes an estimated annual need of approximately 4500 acre feet of water for the natural forage overgrowing the Pendleton Basin, computed at the rate of one acre foot of water for each acre of the surface of said basin.

46

Add Finding 80, as follows:

The area of the land overlying Pendleton Basin is 4,570 acres, consisting of 770 acres overlying O'Neill or Upper Basin, 2,800 acres overlying Chappo or Home Ranch or Middle Basin, and 1,000 acres overlying Ysidora or Lower Basin.

47

Add Finding 81, as follows:

The safe annual yield of Pendleton Basin is 4,060 acre feet.  Of this amount, 1,080 acre feet is the safe annual yield of O'Neill or Upper Basin, and 2,980 acre feet is the safe annual yield of Chappo or Home Ranch or Middle Basin. Ysidora or Lower Basin has no safe yield.

48

Add Finding 82, as follows:

1794

1    Substantially all of Ysidora or Lower Basin and
2    approximately half of Chappo or Home Ranch or Middle Basin
3    are covered with a clay cap or blanket which impairs the
4    vertical flow of water from the surface into Ysidora Basin and
5    into the downstream half of Chappo Basin.

49

7    Add Finding 83, as follows:
8    Without seasonal and cyclic storage, the high floods
9    that occur from time to time on the Santa Margarita River and
10   its tributaries and the large quantities of water that escape
11   to the Pacific Ocean in a very short period of time and which
12   constitute extraordinary run-off cannot be put to beneficial
13   use.

14                    50

15   Add Finding 84, as follows:
16   The extraordinary run-offs referred to in Finding 83
17   constitute (or do not constitute) part of the normal flow of
18   the Santa Margarita River System.

19   (Note:  We understand the opinion of December 9, 1952,
20   to hold that extraordinary run-off is not part of the normal
21   flow.  Whether or not we are mistaken in this, we feel the court
22   should make a finding one way or the other on this issue.  We
23   have therefore submitted the above finding in the alternative.)

24                    51

25   Add Finding 85, as follows:
26   The maximum and minimum water levels of the Pendleton
27   Basin are accurately shown by the water level profile lines
28   on plaintiff's Exhibit 11, which lines are labeled "Water-level
29   profile Mar. 1932" and "Water-level profile Oct. 1951".

30                    52

31   Add Finding 86, as follows:

1795

The Santa Margarita Mutual Water Company has never diverted
or extracted any water from the Santa Margarita River or its
tributaries, or from the watershed of the Santa Margarita River
System.

53

Add Finding 87, as follows:

Plaintiff has experienced salt water intrusion in wells
located in the lower reaches of Ysidora or Lower Basin (that
is, in the area near the Pacific Ocean).  The sole cause of
said salt water intrusion has been the pumping and removing
of water from said basin by plaintiff.

54

Add Finding 88, as follows:

The State of California is the owner of various parcels
of real property within the watershed of the Santa Margarita
River.  The exact nature and extent of such ownership, and the
riparian rights to the waters of the Santa Margarita River and
its tributaries which appertain to such ownership, are the
subject of current investigation and negotiation among the
parties to this action.  It is in the interests of justice that
such investigation and negotiation continue.  The court makes
no finding regarding the nature or extent of such ownership or
riparian rights.

55

Add Finding 89, as follows:

The State of California is the absolute owner of all the
water of the Santa Margarita River and its tributaries upstream
from the points where said river and its tributaries enter
Camp Joseph H. Pendleton and the United States Naval Ammunition
Depot; provided that said ownership is subject to such rights
of diversion or use of said water as are provided for by

1786

1   California law.  Said ownership is unaffected by the cession
2   of exclusive jurisdiction to plaintiff referred to in Finding
3   37B.
4        (Note:  In plaintiff's proposals, the reference to
5   the cession of exclusive jurisdiction is in Finding 37.)

                                56

7        Add Finding 90, as follows:
8        The State of California is the absolute owner of
9   the reversion in all rights to the use of the water of the
10  Santa Margarita River and its tributaries which are or have
11  been or may be forfeited or otherwise terminated for non-use
12  or otherwise.

                                57

14       Add Finding 91, as follows:
15       Any and all water stored or impounded by the Vails
16  pursuant to Application No. 11518 and Permit No. 7032, hereto-
17  fore mentioned in these Findings, must be put to reasonable
18  beneficial use on the lands described in said application and
19  outlined in defendant's Exhibit F (in two parts).  Plaintiff
20  does not have any right, title, or interest in or to any of
21  the waters stored or to be stored pursuant to the terms of said
22  application and permit or in or to the use thereof.  Any and
23  all waters so stored or to be stored which cannot be put to
24  reasonable beneficial use by the Vails are surplus waters
25  subject to appropriation under and pursuant to the laws of the
26  State of California.

                         CONCLUSIONS OF LAW

                                58

29       Delete plaintiff's proposed Conclusion 1.
30       (Note:  We are of the view that adoption by reference
31  of the earlier opinions of the court will lead to uncertainty

                              -22-                    1797

and will rob the proceedings of that precision and detail which it is the function of the Findings and Conclusions to provide.)

59

Delete plaintiff's proposed Conclusion 3.

60

In the second line of the first sentence of plaintiff's proposed Conclusion 4 (being line 8 of page 23), after the word "rights," add the words:  "to use Santa Margarita River water on its riparian lands."

61

To plaintiff's proposed Conclusion 6, add the following: There has been no such surplus at any subsequent time.

(Note:  The statement that there is no surplus is made in compliance with the court's decision.  This amendment is designed merely to make more definite the period of time intended to be covered by that decision.)

62

Delete plaintiff's proposed Conclusion 9.

63

Add Conclusion 11, as follows:

Plaintiff's rights to the use of Santa Margarita River water are limited to the use of water required for reasonable beneficial use on plaintiff's lands which are in the watershed of said river and which are riparian to said river, and such rights do not extend to the waste of water or to the unreasonable use or unreasonable method of use or unreasonable methods of diversion of water.

64

Add Conclusion 12, as follows:

The riparian rights of plaintiff attach to no more than that portion of the flow of the Santa Margarita River

1798

1   as may from time to time be required for reasonable beneficial
2   use on that portion of plaintiff's lands that are riparian
3   to the Santa Margarita River.

65

5   Add Conclusion 13, as follows:

6   Water which is not required for reasonable beneficial
7   use by those having lawful paramount claims shall be regarded
8   as surplus water and is subject to appropriation under the
9   laws of the State of California by those who can put it to
10  reasonable beneficial use.

66

12  Add Conclusion 14, as follows:

13  The rights of plaintiff as a riparian owner or
14  as an appropriator, as well as plaintiff's prescriptive rights,
15  are to be determined by and are limited by the laws of the
16  State of California.

67

18  Add Conclusion 15, as follows:

19  Plaintiff by reason of its sovereign status has
20  no right to the use of a greater quantity of water than it
21  acquired when it purchased the Rancho Santa Margarita, to-
22  gether with any rights to the use of water which it may have
23  gained by prescription since its acquisition of Rancho Santa
24  Margarita in 1942.

68

26  Add Conclusion 16, as follows:

27  Plaintiff's right as a riparian owner to use the
28  waters of the Santa Margarita River varies from season to
29  season and from year to year, and plaintiff does not have the
30  right to any mathematical or specific amount of the flow
31  of said river.

1799

69

Add Conclusion 17, as follows:

Plaintiff is entitled to a judgment protecting its right to the future and prospective use of the water of the Santa Margarita River on its riparian land, but until such time as plaintiff can put such water to reasonable beneficial use on its riparian lands, such water may be used by upstream appropriators.

70

Add Conclusion 18, as follows:

Plaintiff by virtue of its riparian rights does not have the right of seasonal or cyclic storage of the waters of the Santa Margarita River.  The surface or subsurface storage of water in one month for use in another month is seasonal storage.

71

Add Conclusion 19, as follows:

Only those lands are riparian to the Santa Margarita River which are contiguous to or abut upon said river and which lie within the watershed of said river, and the riparian right extends only to the smallest tract of such land held under one title in the chain of title leading to the present owner.

72

Add Conclusion 20, as follows:

Plaintiff has acquired no rights to the waters of the Santa Margarita River System by appropriation other than such appropriative rights as it may have by virtue of its application for appropriation filed with the State of California on June 30, 1948.

73

Add Conclusion 21, as follows:

800

1   Any rights granted by the State of California to the
2   Santa Margarita Mutual Water Company to impound or store the
3   waters of the Santa Margarita River under and pursuant to the
4   applications of said Company referred to in the foregoing
5   Findings of Fact are paramount to any right of plaintiff to have
6   any portion of the flow of the Santa Margarita River reach its
7   properties for the purpose of impounding or storing said flow
8   seasonally or cyclicly.

9                          74
10   Add Conclusion 22, as follows:
11   Plaintiff's riparian rights in and to the waters of
12   the Santa Margarita River System do not include the right to
13   require that water be released to plaintiff for use on lands
14   of plaintiff that are not riparian to the Santa Margarita
15   River System; provided however, that if upstream owners, users,
16   and diverters of the waters of the Santa Margarita River System
17   do release to plaintiff any water of said river systems, then
18   plaintiff may use such released water as and where it sees fit.

19                          75
20   Add Conclusion 23, as follows:
21   The rights of plaintiff to the use of the water of
22   the Santa Margarita River on those portions of Camp Joseph
23   H. Pendleton located within the watershed of said river may not
24   be enlarged or supplemented by reason of its ownership of the
25   land constituting the United States Naval Ammunition Depot.

26                          76
27   Add Conclusion 24, as follows:
28   Plaintiff's riparian rights acquired through the
29   purchase of the Rancho Santa Margarita are correlative with
30   the riparian rights of other riparian owners, and are to be
31   measured according to the law of the State of California.

1801

77

Add Conclusion 25, as follows:

The riparian rights of plaintiff are paramount to those of appropriators such as the Santa Margarita Mutual Water Company, in the sense in which the word "paramount" is used in the water law of the State of California.

78

Add Conclusion 26, as follows:

The extent of plaintiff's rights is to be determined on the basis of the reasonable beneficial use to which the water in the Santa Margarita River has been put by plaintiff or its predecessors on its riparian lands, or may in the future be put by plaintiff on its riparian lands.

79

Add Conclusion 27, as follows:

The Division of Water Resources of the State of California has no jurisdiction over the enclave of the United States of America at Camp Joseph H. Pendleton and the United States Naval Ammunition Depot.

80

Add Conclusion 28, as follows:

Plaintiff is required to respect the rights of other riparian owners or appropriators of the waters of the Santa Margarita River and its tributaries who, according to the law of California, may have acquired rights, permanent or temporary, to any water in the Santa Margarita River.

DECISION

We recommend that plaintiff's proposed "DECISION" be deleted.  (See page 22 of plaintiff's proposals.)  The physical joining of the opinion and order of December 9, 1952, to the court's findings and conclusions would have the effect of

802

1  unnecessarily lengthening the official record of the case.   The
2  incorporation by reference of the various opinions that have
3  been rendered would create difficulty in ascertaining the exact
4  findings and conclusions of the court.  We firmly believe the
5  findings and conclusions should be able to stand by themselves
6  as the complete embodiment of the court's decision.

7                          PROPOSAL

8          The defendant Santa Margarita Mutual Water Company
9  once more desires to call to the attention of the court that
10 there is a practical physical solution of the problems which
11 exist on the Santa Margarita River, and that the erection of
12 a dam by the Santa Margarita Mutual Water Company for the
13 purpose of impounding the waters of said river which the
14 defendant proposes to impound under its existing applications
15 will not interfere with plaintiff's riparian or prescriptive
16 rights.

17         The erection of such a dam could take place under
18 and pursuant to a judgment of this court containing adequate
19 provision compelling defendant Santa Margarita Mutual Water
20 Company to release sufficient waters to recharge Pendleton
21 Basin and from time to time to release that portion of the
22 natural flow which plaintiff can put to current reasonable
23 beneficial use on its riparian lands or to which plaintiff
24 is entitled by prescription.  This offer naturally assumes
25 that plaintiff will not extract or divert water from the
26 Pendleton Basin for use on lands outside the watershed to a
27 greater extent than it has acquired the right to do so by
28 prescription.

29         The Santa Margarita Mutual Water Company also
30 respectfully calls the court's attention to the fact that
31 it has never been the position of this defendant that the

                                              1803

1   court has jurisdiction to order or that it should order any
2   party to this action to build or construct a dam or dams on the
3   river or that the construction of a dam or dams on the river
4   would increase the full natural flow of the river.  It has been
5   and is the contention of this defendant that the **erection** of a
6   dam by this defendant on the river immediately upstream from the
7   Fallbrook Gauging Station would impound **those** waters of the
8   stream which flow into the Pacific Ocean and are lost and wasted,
9   and that said waters will continue to flow into the ocean unless
10  a dam is erected on the river capable of providing seasonal
11  and cyclic storage.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31

1804

## FORM OF JUDGMENT

Until the court has passed upon the findings and conclusions of law, it is impossible to recommend or suggest the form of judgment that should be entered in this action. It is our opinion that the judgment should precisely set forth and declare in detail the riparian rights of plaintiff, the prescriptive rights of plaintiff, the appropriative rights of plaintiff, the rights of the defendant and the defendant in intervention, and the relative priorities of the rights of the various parties. In addition, the judgment should quiet the title of the various parties in and to the detailed rights as thus determined, and it should contain the usual provision relative to the reservation of the jurisdiction of the court in accordance with the laws of the State of California.

Respectfully submitted,

W. B. DENNIS
Attorney for the
Santa Margarita Mutual Water Company


EDMUND G. BROWN, Attorney General
GEORGE G. GROVER,
Deputy Attorney General

Attorneys for the
People of the State of California

By _George G. Grover_

1805

(SPACE BELOW FOR FILING STAMP ONLY)

1
2
3
4
5
6

DEVOR & DORFMAN
LAW OFFICES
GEORGE I. DEVOR
924 VAN NUYS BUILDING
LOS ANGELES 14, CALIFORNIA
VANDIKE 1411

ATTORNEY FOR

FILED

FEB 16 1953

EDMUND L. SMITH, Clerk
By *Charles A. Luty*
Deputy Clerk

7

8               UNITED STATES DISTRICT COURT

9                        for the

10        SOUTHERN DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

11

12   UNITED STATES OF AMERICA,           No. 1247-Civ.

13                Plaintiff,

14          vs.                          SUBSTITUTION OF ATTORNEYS

15   FALLBROOK PUBLIC UTILITY DISTRICT,
     a public service corporation of
16   the State of California, et al.,

17                Defendants.

18

19          I hereby substitute DEVOR & DORFMAN in the place and

20   stead of Kenneth K. Wright as my attorneys in the above captioned

21   matter.

22          DATED: February 19, 1953.

23                                       *Dolores Costello Vruwink*
                                         Dolores Costello Vruwink
24

25          We hereby accept the foregoing substitution.

26          DATED: January 20th, 1953.

27                                       DEVOR & DORFMAN
28                                       By *Stuart D. Killman*

29          I hereby consent to the foregoing substitution.

30          DATED: January 21, 1953.

31                                       *Kenneth K. Wright*
                                         Kenneth K. Wright
32

                                                          1806