1  EDMUND G. BROWN,
   Attorney General
2  GEORGE G. GROVER,
   Deputy Attorney General
3  600 State Building
   San Francisco 2, California
4  Telephone: UNderhill 1-8700
   Attorneys for Defendant in Intervention
5  State of California

6  W. B. DENNIS,
   Attorney for Defendant
7  Santa Margarita Mutual Water Company
   Route 1, Box 58, Fallbrook, California

8
9           IN THE UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11                 SOUTHERN DIVISION

12  UNITED STATES OF AMERICA,              ) Civil No. 1247-SD
                                           )
13                 Plaintiff,              ) PROPOSED AMENDMENTS
                                           ) TO FINDINGS OF FACT,
14           v.                            ) CONCLUSIONS OF LAW,
                                           ) AND JUDGMENT PROPOSED
15  FALLBROOK PUBLIC UTILITY DISTRICT,     ) BY PLAINTIFF ON
    a public service corporation of        ) FEBRUARY 10, 1953.
16  the State of California;               )
    SANTA MARGARITA MUTUAL WATER COMPANY,  )
17  a public service corporation of        )
    the State of California; et al.;       )
18                                         )
                 Defendants,               )
19                                         )
20  PEOPLE OF THE STATE OF CALIFORNIA,     )
                                           )
21               Defendant in             )
                 Intervention.            )
22

23         COME NOW the SANTA MARGARITA MUTUAL WATER COMPANY,

24  defendant, and the PEOPLE OF THE STATE OF CALIFORNIA, defendant

25  in intervention, and offer the following proposed amendments and

26  modifications to the findings of fact and conclusions of law

27  proposed by the plaintiff UNITED STATES OF AMERICA on February

28  10, 1953:

29                          1

30         It is apparent that plaintiff's proposals of February

31  10, 1953 are not "amendments" in a literal sense but constitute

1    a complete reorganization and rewriting of the proposals or-

2    iginally made by plaintiff.  Confusion would result if we were

3    to attempt to utilize the numbering system first used by

4    plaintiff, and we have therefore adapted the numbering herein

5    to the numbering of plaintiff's most recent proposals.  Our

6    recommendations have been reorganized and rewritten in order

7    to accommodate them to the greatly revised recommendations of

8    plaintiff.

9         To avoid ambiguity, we shall refer to plaintiff's

10   proposals of February 10, 1953 as plaintiff's "2d series".

11                         2.

12        There is one problem of terminology which we believe

13   to be of particular importance.  Plaintiff has defined Camp

14   Pendleton to include the U. S. Naval Ammunition Depot. ( Plain-

15   tiff's proposed Finding 9, 2d series.)  We are willing, of

16   course, to use whatever names plaintiff wishes to give to its

17   installations.  However, we had been under the impression that

18   Camp Pendleton did not include the Naval Ammunition Depot, and

19   our earlier proposals were drawn up on that basis.  Plaintiff

20   also appears occasionally to have used the term Camp Pendleton

21   without intending to include the Naval Ammunition Depot. (For

22   example, in plaintiff's proposed Finding 12, 2d series; and by

23   Mr. Agnew, vol. 6, p. 718, lines 5-6.)  To avoid further mis-

24   understanding, each time the name Camp Pendleton is used

25   herein, we shall endeavor to make clear whether or not the

26   Naval Ammunition Depot is included.

27                         3.

28        The proposals herein are offered in an effort to

29   aid in drafting, consistently with the opinions and orders of

30   the court, the best possible findings, conclusions, and judg-

31   ment.  In obedience to the court's instructions, we have not

1809

1    sought to reargue the case; on the contrary, many of the find-
2    ings and conclusions herein suggested are offered solely to
3    comply with the rulings that have been made. Particularly in
4    view of the fact that the opinion and order of December 9, 1952
5    did not purport to determine every single issue in the case,
6    we have felt it our duty to cooperate with the court and with
7    plaintiff's counsel throughout this stage of the proceedings.
8         In this connection we wish to invite the court's
9    attention to several of the more important issues that remain
10   unsettled:
11        (a) Although the court has ruled that seasonal
12   and cyclic storage are not within the riparian right, it is
13   not clear to what extent plaintiff may make surface storage
14   of water for spreading purposes or to what extent plaintiff
15   may artificially store water underground. Plaintiff's pro-
16   posal of a dam to impound 40,000 to 50,000 acre feet of water
17   (Henderson, vol. 5, p. 531, lines 6-9) suggests the importance
18   of clarifying this issue. The fact that no such dam is yet
19   in existence does not detract from the desirability of determin-
20   ing whether or not water could be collected behind it if it
21   were built as proposed by plaintiff. (Cf. comments of the
22   court, vol. 1, p. 44, line 19 to page 45 line 1.)
23        (b) Although the use of riparian water on non-
24   riparian land was among the issues ordered to be briefed
25   before trial, we are not certain whether or not the court has
26   concluded that plaintiff may use riparian water on non-riparian
27   land in excess of rights acquired by prescription. We believe
28   it should be made clear, under the substituted use theory,
29   whether or not the fact that plaintiff could use approximately
30   69,000 acre feet of water for agricultural purposes on its
31   riparian land entitles it to use that amount for military

-3-

1809

1    purposes on both riparian and non-riparian land.

2           (c) We believe it would be desirable to keep

3    segregated at all times the various parcels owned by plaintiff;

4    the rights of one parcel should not be allowed to become con-

5    fused with those of another unless the court determines they

6    may properly be considered together.

7           (d) A determination whether or not plaintiff

8    may use Pendleton Basin water on other than the land overlying

9    that basin would also be desirable.

10        Although the court has indicated there will be no

11    hearing on the findings, conclusions, and judgment, we are of

12    course ready to submit further written or oral recommendations

13    at the court's request.

14               4

15        The heading on plaintiff's proposals indicates that

16    the case is in the Central Division of the court.  We have

17    been advised by the clerk that, although the place of trial

18    was transferred to Los Angeles, the case is still in the

19    Southern Division.

20               5

21        On page 1 of plaintiff's proposed Findings, 2d series,

22    delete lines 1-6 and substitute therefor the following:

23        The court, on motion of plaintiff, having ordered

24    separate trials in the above-entitled action on March 31, 1952,

25    as between the UNITED STATES OF AMERICA, plaintiff, and

26    FALLBROOK PUBLIC UTILITY DISTRICT and SANTA MARGARITA MUTUAL

27    WATER COMPANY, defendants; and the PEOPLE OF THE STATE OF

28    CALIFORNIA, defendant in intervention, having been made a

29    party to said separate trials on July 11, 1952; and the

30    above-entitled action having come on for trial as to the

31    SANTA MARGARITA MUTUAL WATER COMPANY and the FALLBROOK PUBLIC

1810

1   UTILITY DISTRICT, defendants, and the PEOPLE OF THE STATE OF

2   CALIFORNIA, defendant in intervention, on the 29th day of

3   October, 1952, before the Honorable Leon R. Yankwich, Judge

4   Presiding, sitting without a jury; and David W. Agnew, as

5   Special Assistant to the Attorney General of the United States,

6   and Raymond de S. Shryock, as attorney for the United States

7   Navy Department, appearing for plaintiff, and W. B. Dennis,

8   appearing for the defendant SANTA MARGARITA MUTUAL WATER COMPANY,

9   and Edmund G. Brown, Attorney General of California, by George

10  G. Grover, Deputy Attorney General of California, appearing for

11  the State of California, and Phil D. Swing of the firm Swing,

12  Scharnikow and Staniforth appearing for the defendant FALLBROOK

13  PUBLIC UTILITY DISTRICT; and it appearing that the trial of

14  said action against the defendant FALLBROOK PUBLIC UTILITY

15  DISTRICT had been and was enjoined by the United States Court

16  of Appeals for the Ninth Circuit; and the said Honorable Leon

17  R. Yankwich having ordered the trial to be continued as to the

18  FALLBROOK PUBLIC UTILITY DISTRICT and to proceed as to the

19  plaintiff the UNITED STATES OF AMERICA, and the defendant

20  SANTA MARGARITA MUTUAL WATER COMPANY, and the defendant in

21  intervention the PEOPLE OF THE STATE OF CALIFORNIA; and evidence

22  having been introduced, both oral and documentary, and the

23  cause having been argued by counsel and submitted,

24          NOW THEREFORE the court, being fully advised in

25  the premises and having rendered an opinion and order on

26  December 9, 1952, makes findings of fact and conclusions of

27  law as follows:

28

29

30

31

1811

FINDINGS OF FACT

6

In place of plaintiff's proposed Findings 1 & 2,
2d series, substitute the following:

On January 21, 1942, plaintiff acquired fee title to
9,147.55 acres of land, generally known and referred to as
United States Naval Ammunition Depot, the exterior boundaries
of which are accurately outlined in yellow on plaintiff's Ex-
hibit 43 and which are also accurately outlined on plaintiff's
Exhibit 22.  Said land consists of three parcels which were
patented by the United States of America on different dates.
Parcel 1 contains certain portions of the Rancho Santa
Margarita y Los Flores as described in the patent thereof from
the United States of America to Pio Pico and Andres Pico dated
March 28, 1879, and recorded in Book 7, Page 18 of the patents
records of San Diego County, California.  Parcel 2 is described
as follows:

> Lots 1, 2 and 3 in Section 35, Township 9
> South, Range 4 West, San Bernardino Meridian,
> in the County of San Diego, State of California,
> according to U. S. Government survey approved
> June 11, 1880; also Section 36, Township 9
> South, Range 4 West, San Bernardino Meridian,
> in the County of San Diego, State of California,
> according to U. S. Government Survey thereof
> approved June 11, 1880, EXCEPTING therefrom
> that portion lying northeast and easterly of
> the Southwest and westerly line of the present
> existing California State Highway from Bonsall
> to Fallbrook, as shown on licensed surveyor's
> Map No. 501 filed in the Office of the County
> Recorder of said San Diego County.

Parcel 3 is described as follows:

> The Southwest 1/4 of the Northwest 1/4, the
> West 1/2 of the Southeast 1/4, and the West
> 1/2 of Section 1, and Lots 1, 2, 3 and 4 in
> Section 2, Township 10 South, Range 4 West,
> San Bernardino Meridian, in the County of
> San Diego, State of California, according to
> U. S. Government Survey approved April 5, 1881.

The Santa Margarita River does not traverse any portion

812

1  of Parcels 2 and 3 nor do said parcels abut thereon.   Said

2  river flows along the northwest boundary of Parcel 1 for a

3  distance of approximately two and one-half miles.   Parcel 1

4  is traversed by Fallbrook Creek, a tributary of the Santa

5  Margarita River.

6      (Exhibits 15 & 43; David W. Agnew, vol 6, p. 716,

7  lines 19-21, p. 728, lines 8-12.)

8      (Note: If this substitution is not made, we believe

9  plaintiff's proposed Findings 1 & 2, 2d series, should be

10  reworded to show that the land therein referred to lies both

11  within and without the watershed of the Santa Margarita River.)

12                         7

13      In place of plaintiff's proposed Finding 3, 2d series,

14  substitute the following:

15      That on December 31, 1942, plaintiff acquired fee

16  title to 123,620 (or 122,202.72) acres of land, the exterior

17  boundaries of which are correctly outlined in red on plaintiff's

18  Exhibit 43.   Said land consists of two parcels.   At the time of

19  acquisition one parcel, containing 52,420 acres, was owned by

20  Jerome O. Baumgartner, Eleanor L. Baumgartner, Elizabeth B. Yates,

21  Ira E. Yates, John J. Baumgartner, Margaret D. Kellam and

22  Gareth Kellem, and Doris E. Baumgartner; said parcel lies north

23  and west of the brown line shown on plaintiff's Exhibit 43.   At

24  the time of acquisition the other parcel, containing approxi-

25  mately 71,200 acres, was owned by Maude Lee Flood, Mary Emma

26  Stebbins, Theodore E. Stebbins, James Flood and Elizabeth Flood;

27  said parcel lies south and east of the brown line on plaintiff's

28  Exhibit 43.   No part of the parcel containing 52,420 acres lies

29  within the watershed of the Santa Margarita River or of any

30  tributary of said river.   (Exhibits 16 & 43; David W. Agnew,

31  vol. 6, p. 716, lines 22-24; p. 722, line 23 to 724, line 25.)

1813

1    (Note: If this substitution is not made, we believe

2  plaintiff's proposed Finding 3, 2d series, should be reworded

3  to show that the land therein referred to lies both within and

4  without the watershed of the Santa Margarita River.)

5                                  8

6    In place of plaintiff's proposed Finding 5, 2d series,

7  substitute the following:

8    On December 22, 1943, plaintiff acquired from sundry

9  persons fee title to 1,676.58 acres of land located adjacent

10 to the northeast boundary of the Rancho Santa Margarita y

11 Los Flores.  Said 1,676.58 acres are correctly shown in green

12 on plaintiff's Exhibit 43.  Said property does not abut upon

13 nor is it traversed by the Santa Margarita River.  Said prop-

14 erty lies partly within and partly without the watershed of

15 the Santa Margarita River.  (Exhibits 17 & 43; David W. Agnew,

16 vol. 6, p. 717, lines 3-4.)

17                                 9

18    In place of plaintiff's proposed Finding 6, 2d series,

19 substitute the following:

20    On August 8, 1945, by Public Land Order No. 293, the

21 Secretary of the Interior of the United States of America trans-

22 ferred to the Secretary of the Navy of the United States of

23 America 1,574.61 acres of land adjacent to and northeast of the

24 Rancho Santa Margarita y Los Flores.  Said 1,574.61 acres are

25 correctly shown in orange on plaintiff's Exhibit 43.  No part

26 of said land is traversed by or abuts upon the Santa Margarita

27 River.  Said land is owned by plaintiff. (Exhibits 17 & 43;

28 David W. Agnew, vol. 6, p. 717, lines 4-8.)

29                                10

30    In place of plaintiff's proposed Finding 7, 2d series,

31 substitute the following:

814

On February 8, 1949, plaintiff acquired fee title to approximately 112.11 acres of land situated in Orange County and adjacent to the Rancho Santa Margarita y Los Flores.  Said 112.11 acres are correctly shown in blue on plaintiff's Exhibit 43.  No portion of said lands lies within the watershed of the Santa Margarita River or any tributary thereof.  (Exhibits 17 & 43; David W. Agnew, vol. 6, p. 717, lines 1-2.)

11

To plaintiff's proposed Finding 9, 2d series, add the following:

The exterior boundaries of Camp Joseph H. Pendleton are correctly shown on plaintiff's Exhibit 22 and defendant's Exhibit A.  All portions of Camp Joseph H. Pendleton and of the United States Naval Ammunition Depot which lie within the watershed of the Santa Margarita River are included within those areas of plaintiff's Exhibits 21, 22, 23, and 24 that show the land of plaintiff lying within the watershed of the Santa Margarita River.

12

In plaintiff's proposed Finding 10, 2d series, after the word "reservation" in the first line thereof (being line 24 of page 2), insert the following: including the United States Naval Ammunition Depot.

13

In plaintiff's proposed Finding 10, 2d series, after the first sentence thereof (at line 28 of page 2), insert the following: of which approximately 59 square miles are in the watershed of the Santa Margarita River and approximately 152 are outside said watershed.

14

After plaintiff's proposed Finding 10, 2d series,

2815

add the following Finding 10A:

The watershed of the Santa Margarita River within the exterior boundaries of Camp Joseph H. Pendleton and the United States Naval Ammunition Depot is correctly shown on plaintiff's Exhibits 21, 22, 23, and 24. No other part or parcel of Camp Joseph H. Pendleton or the Naval Ammunition Depot lies within the watershed of the Santa Margarita River. Said acreage owned by plaintiff and lying within the watershed of the Santa Margarita River, as shown on plaintiff's Exhibit 22, has an area of 37, 882.2 acres. Said 37,882.2 acres are riparian to the Santa Margarita River.

15

At the conclusion of plaintiff's proposed Finding 12, 2d series, add the following: The aforementioned housing, training, and storage facilities, as well as the aforementioned activities and functions, are located both within and without the watershed of the Santa Margarita River. (Exhibits A & 22; A. C. Bowen, vol. 7, p. 786, lines 19-22.)

16

Delete plaintiff's proposed Finding 13, 2d series.

17

At the conclusion of plaintiff's proposed Finding 15, 2d series, add the following: The facilities and activities of the Naval Ammunition Depot are located both within and without the watershed of the Santa Margarita River.

18

In place of plaintiff's proposed Finding 16, 2d series, substitute the following:

The United States of America uses such parts of these lands, both within and without the watershed of the Santa Margarita River, as are not immediately required for military

1  activities, for agricultural purposes. (William D. Taylor,

2  vol. 5, p. 605, line 23 to p. 606, line 2.)

3                                19

4       In place of plaintiff's proposed Finding 17, 2d series,

5  substitute the following:

6       Plaintiff now leases or has issued permits for use of

7  approximately 5,500 acres of land for agricultural purposes

8  in Camp Pendleton and has leased as much as 6,000 acres.  Said

9  land lies both within and without the watershed of the Santa

10 Margarita River, and a portion of said land is dry-farmed.  No

11 portion of the lands owned by plaintiff lying within the water-

12 shed of the Santa Margarita River are used for agricultural

13 purposes with the exception of those portions of South Coast

14 Mesa and Stuart Mesa which are under irrigation. (Exhibits 22

15 & A; William D. Taylor, vol. 5, p. 605, line 23 to p. 606,

16 line 25.)  In addition, 15,000 to 20,000 head of sheep and

17 1,000 head of cattle are grazed on Camp Joseph H. Pendleton,

18 both within and without the watershed of the Santa Margarita

19 River, during the wet season of the year; and 1,500 head of

20 sheep and 300 to 400 head of cattle are grazed on Camp Joseph

21 H. Pendleton, both within and without the watershed of the Santa

22 Margarita River, during the dry season.  (William D. Taylor,

23 vol. 5, p. 607, line 22 to p. 608, line 6; p. 609, lines 9-21.)

24 The maximum quantity of water necessary for range cattle is

25 15 gallons per day per head, and for sheep 1.5 gallons per day

26 per head.  (Exhibit X.)  The lands overlying O'Neill or Upper

27 Basin and Ysidora or Lower Basin are not used for grazing pur-

28 poses. (William D. Taylor, vol. 5, p. 607, lines 1-20; p. 610,

29 lines 1-3.)

30                                20

31       In place of plaintiff's proposed Finding 18, 2d series,

1    substitute the following:

2         Part of the acreage of Camp Pendleton, both within

3    and without the watershed of the Santa Margarita River, which

4    is adaptable to cultivation or irrigation, and not immediate-

5    ly required for military use, is not leased or put to agricul-

6    tural use due to insufficiency of water.

7                               21

8         To plaintiff's proposed Finding 20, 2d series, add

9    the following:  Said junction is upstream from plaintiff's

10   property.  (Exhibit 2.)

11                              22

12        In the last sentence of plaintiff's proposed Finding

13   21, 2d series, at line 25 of page 5, change "50,000" to

14   "64,000".  (Exhibit 6.)

15                              23

16        After plaintiff's proposed Finding 26, 2d series,

17   add Finding 26A, as follows:

18        The Santa Margarita River at places traverses, and

19   at other places abuts upon, the parcel of 71,200 acres referred

20   to in Finding 7.  Said river enters said parcel of land near

21   the northeast corner thereof and flows in a southwest direction

22   through said parcel until it meets the boundary of the United

23   States Naval Ammunition Depot, from which point it forms the

24   boundary of said Naval Ammunition Depot and the other lands

25   of Camp Joseph H. Pendleton for a distance of approximately

26   two and one-half miles.  It then reenters said parcel of

27   71,200 acres and traverses said parcel until it reaches the

28   Pacific Ocean.  From the point at which the Santa Margarita

29   River first enters said parcel to the confluence of said

30   river and De Luz Creek the said Santa Margarita River is

31   primarily a surface stream. ( David W. Agnew, vol. 6, p. 717,

1818

line 21 to p. 718, line 16; p. 726, lines 5-21; William R.
Muehlberger, vol. 2, p. 206, line 2 to p. 207, line 17.)

24

In place of plaintiff's proposed Finding 37, 2d
series, substitute the following:

Underlying Camp Joseph H. Pendleton within the Santa
Margarita River watershed are three underground basins common-
ly known as:

(a) Upper or O'Neill Basin,

(b) Middle or Chappo or Home Ranch Basin, and

(c) Lower or Ysidora Basin.

The foregoing basins are hereinafter sometimes refer-
red to collectively as the Pendleton Basin. The three basins
comprising Pendleton Basin are geographically and hydrological-
ly interconnected. Said basins are accurately shown on defend-
ant's Exhibit A as O'Neill Basin, Ranch Basin, and Ysidora
Basin, being outlined in black and colored in green on said
exhibit. Said basins are also accurately shown on plaintiff's
Exhibit 8.

(George F. Worts, Jr., vol. 3, p. 248, line 6 to
p. 249, line 7; p. 250, lines 4-10.)

25

In place of the first sentence of plaintiff's pro-
posed Finding 40, 2d series (lines 20-23 of page 9), substi-
tute the following:

Within Camp Pendleton the Santa Margarita River
does not flow as a continuous surface stream. Commencing
with the first run-off of the wet season (which is usually
preceded by a 5 to 6 month period of no run-off passing over
the alluvial deposits composing the ground water basin under-
lying portions of Camp Pendleton), water from the flow of the

1819

-13-

Santa Margarita River percolates downward to ground water in O'Neill or Upper Basin and in the upper reaches of Chappo or Home Ranch or Middle Basin; but the fine grain portions of the upper member of the alluvium of the lower reaches of Chappo Basin and of all of Ysidora or Lower Basin essentially prevent the waters of the Santa Margarita River from reaching ground water in said lower reaches of Chappo Basin and in all of Ysidora Basin. In the lower reaches of Chappo Basin and in all of Ysidora Basin the shallow surface waters are perched on the clays and are not in contact with the basin waters. (George F. Worts, Jr., vol. 3, p. 270, line 2 to p. 271, line 11.) When Pendleton Basin has been filled, the Santa Margarita River ordinarily comes to the surface some two or three miles from tidewater. In a state of nature it continues then to the Pacific Ocean as a stream of diminishing volume.

26

Delete the last two sentences of plaintiff's proposed Finding 41, 2d series (lines 5-10 of page 10).

(Note: We do not believe said sentences are supported by the record.)

27

Delete the first sentence of plaintiff's proposed Finding 42, 2d series (lines 11-13 of page 10).

28

Delete the last sentence of plaintiff's proposed Finding 44, 2d series (lines 4-7 of page 11).

29

Delete the last three sentences of plaintiff's proposed Finding 45, 2d series, and all of plaintiff's proposed Findings 46, 2d series, and substitute therefor the following:

At that point the river enters the lands overlying

2820

1   the Pendleton Basin.  The location of the lands overlying said

2   Pendleton Basin is correctly shown on defendant's Exhibit A.

3   No part of Pendleton Basin underlies the United States Naval

4   Ammunition Depot.  The materials which comprise Pendleton Basin

5   consist of various types of soils having various shapes and

6   physical characteristics and various degrees of porosity and

7   permeability.  The water does not percolate or move through all

8   of Pendleton Basin at a uniform rate or in a uniform direction.

9   The storage capacity of the soils and structure which constitute

10  Pendleton Basin varies from place to place.  The location of all

11  wells from which plaintiff has produced, extracted, or developed

12  water from Pendleton Basin, together with the pipe lines which

13  convey and transport water, is correctly shown on plaintiff's

14  Exhibit 22.  (Exhibit 11; George F. Worts, Jr., vol. 3, p. 261,

15  lines 11-19; p. 270, line 2 to p. 271, line 25; p. 277, lines

16  9-13; p. 284, line 20 to p. 285, line 4; p. 287, line 15 to

17  p. 288, line 4; p. 291, line 24 to p. 292, line 10; p. 309,

18  lines 3-16.)

19                              30

20          In place of plaintiff's proposed Finding 49, 2d

21  series, substitute the following:

22          The United States Geological Survey has maintained

23  gauging stations on the Santa Margarita River System which ac-

24  curately record the amount of surface and sub-surface flow of

25  the Santa Margarita River and certain of its tributaries; the

26  location, station name, and period for which records have been

27  maintained are as follows:

28

29

30

31

-15-

| STREAM | STATION | PERIOD OF RECORD |
|---|---|---|
| Santa Margarita River | Ysidora | From February 19, 1923, to date |
| Santa Margarita River | Fallbrook | From November 25, 1924, to date |
| Temecula Creek | Temecula (Railroad) Canyon | From January 30, 1923, to date |
| Temecula Creek | Nigger Canyon | From January 30, 1923, to date |
| Murrieta Creek | Temecula | From October 1, 1930, to date |

In addition, a gauging station has been maintained which accurately records all water diverted from the Santa Margarita River by O'Neill Ditch. The flow of the Santa Margarita River from time to time and at various stations is accurately set forth in plaintiff's Exhibit 14. Defendant's Exhibits Y-7, Y-8, Y-9, Y-10, and Y-11 accurately summarize certain of the information contained in Exhibit 14.

31

Delete plaintiff's proposed Finding 50, 2d series.

(Plaintiff's footnote 50 does not appear to support this proposed Finding.)

32

At the conclusion of plantiff's proposed Finding 51, 2d series, add the following: Ysidora Gauging Station is lo-cated at the lower end of Ysidora Basin. (H. M. Hall, vol. 2, p. 138, lines 15-17; exhibits 22 & A.)

33

In place of plaintiff's proposed Finding 52, 2d series, substitute the following:

The Pendleton underground basin lies entirely within the watershed of the Santa Margarita River. No part of the United States Naval Ammunition Depot overlies any part of the

-16-

Pendleton Basin.

### 34

In place of the last two sentences of plaintiff's proposed Finding 54, 2d series (lines 17-20 of page 13), substitute the following:

Plaintiff has experienced salt water intrusion in wells located in the lower reaches of Ysidora or Lower Basin (that is, in the area near the Pacific Ocean). The sole cause of said salt water intrusion has been the pumping and removing of water from said basin by plaintiff. (George F. Worts, Jr., vol. 3, p. 257, line 21 to p. 258, line 7; p. 258, line 20 to p. 259, line 4; p. 309, line 17 to p. 310, line 1.)

### 35

Delete the last two sentences of plaintiff's proposed Finding 55, 2d series (lines 2-5 of page 14).

(Note: These sentences do not appear to be supported by the testimony cited by plaintiff and in fact seem to be in conflict with Mr. Worts' testimony in vol. 3, p. 270, line 2 to p. 271, line 13.)

### 36

In place of plaintiff's proposed Finding 56, 2d series, substitute the following:

The entire run-off of the De Luz Creek watershed and the Fallbrook Creek watershed empties into the Santa Margarita River downstream from the point where the Santa Margarita River enters plaintiff's property.

(Note: The evidence cited by plaintiff does not appear to support the finding plaintiff has proposed.)

### 37

At the conclusion of plaintiff's proposed Finding 58, 2d series, add the following: The said 135,000 acres includes

1823

1    lands owned by plaintiff that are not part of the original

2    Rancho Santa Margarita y Los Flores.

3                                    38

4            After plaintiff's proposed Finding 58, 2d series,

5    add Finding 58A, as follows:

6            No water is taken by plaintiff from the stream

7    itself (except for a small amount diverted directly at the

8    Naval Ammunition Depot).  Except for said small amount so di-

9    verted, all water taken by plaintiff is from underground pump-

10   ing through various wells located in the area.  The aforemen-

11   tioned direct diversions at the Naval Ammunition Depot are com-

12   pletely and correctly shown on sheet 3 of defendant's Exhibit D.

13                                   39

14           In the first sentence of plaintiff's proposed Finding

15   59, 2d series, at line 27 (28?) of page 14, change the words

16   "at the O'Neill or upper segment" to "over the O'Neill or upper

17   segment".

18                                   40

19           At the conclusion of plaintiff's proposed Finding

20   59, 2d series, add the following:  Lake O'Neill is filled or

21   refilled by diversions from the Santa Margarita River, by im-

22   pounding the surface flow of Fallbrook Creek, and by the return

23   of sewage effluent.  (Exhibits 22 & A; A. C. Bowen, vol. 4,

24   p. 399, line 20 to p. 400, line 5.)

25                                   41

26           At the conclusion of plaintiff's proposed Finding

27   60, 2d series, add the following:

28

29

30

31

                                   -18-

The O'Neill Gauging Station records of the measured diversions of water from the Santa Margarita River into O'Neill Ditch, as shown on plaintiff's Exhibits 14 and 44, do not record and do not purport to record the amount of water diverted into Lake O'Neill. (Joseph R. McNearny, vol. 5, p. 619, line 25 to p. 620, line 14.)

42

In the last line of plaintiff's proposed Finding 62 (line 21 of page 15), 269 should be 259. (Exhibit 41.)

43

In the first sentence of plaintiff's proposed Finding 64, 2d series (at lines 4-5 of page 16), change "from the underground basin underlying Camp Pendleton" to "from Ysidora Basin." (Henry W. Witman, vol. 5, p. 580, line 22 to p. 581, line 4.)

44

Delete the last sentence of plaintiff's proposed Finding 64, 2d series (lines 6-7 of page 16).

(Note: This sentence does not appear to be supported by the testimony cited by plaintiff.)

45

At the end of the first sentence of plaintiff's proposed Finding 65, 2d series (at line 11 of page 16), insert the words: and has been used both within and without the watershed of the Santa Margarita River.

46

In place of plaintiff's proposed Finding 66, 2d series, substitute the following:

In addition to the water distributed for agricultural (irrigation) purposes on Stuart and South Coast Mesas

-19-

1825

1    inside and outside the watershed of the Santa Margarita River,
2    water has been delivered inside and outside of said watershed
3    for military, recreational, and domestic use through the water
4    distribution system which is shown on plaintiff's Exhibit 22.
5    The supply of water for said water distribution system comes
6    from wells located in the Pendleton Basin and serves installa-
7    tions located in Areas 11, 12, 13, 14, 15, 16, and 17 and Camp
8    Del Mar.  Said numbered areas and Camp Del Mar are correctly
9    shown on plaintiff's Exhibit 22.  No records have been kept
10   as to the amount of water used within, as opposed to the amount
11   used without, the watershed of the Santa Margarita River.
12   (Exhibits 22, B, C, & D; A. C. Bowen, vol. 4, p. 388, lines
13   20-22; p. 451, line 22 to p. 452, line 9.)

14                             47

15           In place of the first two lines of plaintiff's pro-
16   posed Finding 67, 2d series (lines 21-22 of page 16), substitute
17   the following:

18           The estimated use of water by Camp Pendleton from the
19   Santa Margarita River watershed for military, recreational,
20   domestic, and agricultural uses, for the years 1943 to 1951,
21   including the amount estimated to have been consumed by the
22   natural forage overlying Pendleton Basin (estimated at the rate
23   of one acre foot of water so consumed per acre of overlying land
24   per year) is as follows:

25           (Exhibit 40; A. C. Bowen, vol. 4, p. 383, lines 18-23;
26   p. 388, lines 7-23.)

27                             48

28           After plaintiff's proposed Finding 67, 2d series,
29   add Finding 67A, as follows:

30           Plaintiff's average annual need for water for its
31   military establishments as set forth in Finding 67 includes an

1826

1   estimated annual need of approximately 4500 acre feet of water
2   for the natural forage overgrowing the Pendleton Basin, computed
3   at the rate of one acre foot of water for each acre of the sur-
4   face of said basin.

49

6   In plaintiff's proposed Finding 69, 2d series, change
7   200 gallons to 150 gallons. (Court's opinion of December 9,1952,
8   p. 24.)

50

10   In place of plaintiff's proposed Finding 70, 2d series,
11   substitute the following:
12   On October 30, 1952, the number of persons stationed,
13   billeted, and housed at Camp Pendleton, both within and without
14   the watershed of the Santa Margarita River, was 49,123. This
15   figure includes 486 persons stationed at the United States Naval
16   Ammunition Depot. (Eliott B. Robertson, vol. 6, p. 677, line 16
17   to p. 678, line 4.)

51

19   In place of plaintiff's proposed Finding 71, 2d series,
20   substitute the following:
21   The planned peacetime population of Camp Pendleton,
22   including the Naval Ammunition Depot and including areas both
23   within and without the watershed of the Santa Margarita River,
24   is 105,000, based on planning for the fiscal year 1954. The
25   water supply of said 105,000 persons will be produced from wells
26   located both within and without the watershed of the Santa
27   Margarita River. The average annual demand for water from
28   both within and without the watershed of the Santa Margarita
29   River for military purposes at Camp Pendleton, including the
30   Naval Ammunition Depot, is approximately 20,500 acre feet.
31   (Exhibit 22; A. C. Bowen, vol. 7, p. 787, line 13 to p. 792,

827

line 5; p. 795, lines 20-24; p. 830, line 20 to p. 831, line 7;
court's opinion of December 9, 1952, p. 21.)

52

To plaintiff's proposed Finding 72, 2d series, add
the following:

The Santa Margarita River during its entire course
within Camp Pendleton, including the Naval Ammunition Depot,
has well-defined channels and banks; said river has only once
left its banks and overflowed adjacent territory.

53

In place of plaintiff's proposed Finding 73, 2d series,
substitute Findings 73, 73A, 73B, 73C, 73D, 73E, 73F, 73G, and
73H, as follows:

73. Plaintiff and the Vail Estate are two of the
chief riparian owners on the Santa Margarita River System.

73A. The Vail Ranch consists of four grants known as
the Temecula, the Little Temecula, the Pauba, and the Santa
Rosa Grants, plus a parcel of 460 acres.  Said parcel of 460
acres is riparian to Penjango Creek.

73B. The Temecula Grant is accurately outlined in blue
on plaintiff's Exhibit 32.  It contains approximately 10,402
acres.  It is traversed by Murrieta Creek and by Temecula Creek.
A portion of said grant lies within the watershed of Murrieta
Creek and a portion lies within the watershed of Temecula Creek.

73C. The Little Temecula Grant is accurately outlined
in green on plaintiff's Exhibit 32.  It contains approximately
1,727 acres.  It is traversed by Penjango Creek and by Temecula
Creek.  A portion of said grant lies within the watershed of
Temecula Creek.

73D. The Pauba Grant is accurately outlined in red on
plaintiff's Exhibit 32.  It contains approximately 27,662 acres.

1828

It is traversed by Temecula Creek.  A portion of said grant lies
within the watershed of Murrieta Creek and a portion lies within
the watershed of Temecula Creek.

73E. The Santa Rosa Grant is accurately outlined in
red on plaintiff's Exhibit 32.  It contains approximately
46,340 acres.  It is traversed by Sandia Creek and De Luz Creek.
Of said grant, 39,646 acres lie within the watershed of the
Santa Margarita River.  Of said 39,646 acres, 19,581 acres lie
within the watershed of Murrieta Creek, and 10,270 acres lie
within the watershed of Sandia Creek, and 9,589 acres lie within
the watershed of De Luz Creek.

73F. The Temecula Grant, the Little Temecula Grant,
the Pauba Grant, and the parcel of 460 acres referred to in
Finding 73A contain a total of 40,251 acres, of which 29,410
acres can be profitably irrigated.

73G. The riparian acreage of the Vails is 40,575, of
which 29,410 acres can be profitably irrigated.  These lands
are within the watershed of the Santa Margarita River and drain
into it.  They have access to the stream and constitute one
continuous piece, no part of which has ever been severed from
its riparian rights.

(Note: We believe that Finding 73F as herein proposed
is more nearly supported by evidence than Finding 73G as herein
proposed; we have nevertheless included 73G in obedience to
paragraph 3 of the order of December 9, 1952.)

73H. On the basis of an irrigable acreage of 29,410
acres, the duty of water of the Vail lands would be 79,514 acre
feet which could be profitably applied to the irrigable land
on the Vail property if that much water were available.  At
the present time the Vails have only 4500 acres under irrigation.
The irrigation of said 4500 acres consumes all the water which

1829

is available to the Vails under the stipulated judgment which
is attached to plaintiff's complaint as Exhibit A thereof.

54

In place of plaintiff's proposed Finding 74, 2d series,
substitute Findings 74 and 74A, as follows:

74. On August 16, 1946, the Vail Company filed an ap-
plication with the State of California, Department of Public
Works, Division of Water Resources, State Engineer, which ap-
plication was given No. 11518.  In said application applicant
proposed and requested permission to store temporarily 40,000
acre feet of water per annum to be collected between November 1
and April 30 of each season, said water to be used on 3,797
acres of the Pauba Ranch as shown on the maps introduced into
evidence as defendant's Exhibit F (in two parts).  A permit
for such storage was granted by the State of California, being
Permit No. 7032.  (Exhibit 4.)

74A. The Vail Company, prior to the institution of this
action, erected, approximately at the location of the Nigger
Canyon Gauging Station, Vail Dam (sometimes variously called
Nigger Canyon Dam or Pauba Dam), which dam is capable of im-
pounding 64,000 acre feet of water.  The gates on said dam
were closed in November of 1948, and since that time said dam
has impounded the entire surface and subsurface flow of the
river at that point.  The amount of water impounded by said dam
is correctly shown in plaintiff's Exhibit 7.  (Exhibits 6 & 7;
H. M. Hall, vol. 2, p. 120, lines 15-24.)

55

To plaintiff's proposed Finding 76, 2d series, add
the following:

Neither the Santa Margarita Mutual Water Company nor
the People of the State of California were parties to the

1830

1 aforementioned trial, appeal, stipulated judgment, or stipula-

2 tion, nor are they, nor have they been, successors in interest

3 of, or in privity with, any of the parties thereto.

4 56

5 To plaintiff's proposed Finding 77, 2d series, add

6 the following:

7 The said 18,648.3 acres include land in all parcels

8 owned by plaintiff within the watershed of the Santa Margarita

9 River at Camp Pendleton (as Camp Pendleton is defined in

10 Finding 9 herein), including lands in the United States Naval

11 Ammunition Depot.

12 57

13 At the end of plaintiff's proposed Finding 79, 2d

14 series, change 19,861.3 to 19,871.3.

15 (Note: Based on the sum of 18,648.3 and 1,223.)

16 58

17 In plaintiff's proposed Finding 80, 2d series, change

18 74,042.5 to 74,043.1.

19 (Note: Based on the sum of 69,237.1 and 4,806.)

20 59

21 In plaintiff's proposed Finding 83, 2d series, change

22 "described" to "referred to".

23 60

24 In plaintiff's proposed Finding 85, 2d series,

25 change "described" to "referred to".

26 61

27 In plaintiff's proposed Finding 87, 2d series, change

28 "described" to "referred to".

29 62

30 In plaintiff's proposed Finding 89, 2d series, change

31 "described" to "referred to".

63

In plaintiff's proposed Finding 91, 2d series, change

-25-

1831

1    "described" to "referred to".

2                               64

3         In plaintiff's proposed Finding 93, 2d series, change

4    "described" to "referred to".

5                               65

6         At the conclusion of the first sentence of plaintiff's

7    proposed Finding 95, 2d series (line 19 of page 22), insert

8    the following: including the United States Naval Ammunition

9    Depot.

10                              66

11        At the conclusion of the first sentence of plaintiff's

12   proposed Finding 97, 2d series (line 3 of page 23), insert the

13   following: including the United States Naval Ammunition Depot.

14                              67

15        After plaintiff's proposed Finding 97, 2d series,

16   add Finding 97A, as follows:

17        The location of the acreage classified above as

18   Classes I to VIII, inclusive, is correctly shown on plaintiff's

19   Exhibit 23.

20                              68

21        At the conclusion of plaintiff's proposed Finding 99,

22   2d series, add the following:

23        Said 29,410 acres constitute portions of the Pauba,

24   Little Temecula, and Temecula Grants and the Vails' government

25   lands. (Exhibits 32 & 36; H. M. Hall, vol. 2, p. 105, line 24

26   to p. 107, line 5.)

27                              69

28        In plaintiff's proposed Finding 115, 2d series, it

29   would be desirable to add that there has been no surplus at

30   any time since 1942 (or 1946), provided that is the court's view.

31        Also, we have experienced some uncertainty in

                              -26-

                                                        1832

1  interpreting the opinion of the court of December 9, 1952, in
2  that it is therein stated that any diversion by the Santa
3  Margarita Mutual Water Company would cause damage to plaintiff,
4  and at the same time it is said that an appropriator may tempor-
5  arily divert pending full riparian development.  Since the
6  opinion indicates that 11,000 acre feet are presently needed by
7  plaintiff and that the safe water supply is approximately
8  12,500 acre feet, there would seem to be--even on the theory
9  of the court--a temporary surplus of 1,500 acre feet.  Moreover,
10  we are not certain of the meaning of the word "surplus" as used
11  in the opinion.  It would be helpful to suggest whether surplus
12  over riparian right is meant, or surplus over riparian need, or
13  surplus over riparian use, or some other surplus.

70

15  In plaintiff's proposed Finding 117, 2d series, after
16  the word "viewed," insert the words "a portion of".

71

18  In place of plaintiff's proposed Finding 120, 2d series,
19  substitute the following:
20  On October 4, 1946, the defendant Santa Margarita
21  Mutual Water Company filed an application with the State of
22  California, Department of Public Works, Division of Water
23  Resources, State Engineer, which application was given No.
24  11578.  In said application applicant proposed to divert, and
25  requested permission to divert, 60 cubic feet of water per
26  second from the Santa Margarita River at a point downstream
27  from the Railroad Canyon Gauging Station and upstream from the
28  Fallbrook Gauging Station.  In addition applicant proposed to
29  store, and requested permission to store, 5,000 acre feet of
30  water annually, to be diverted from Temecula Creek at the approx-
31  imate site of the Vail Dam and Reservoir, which is upstream

-27-

1    from the confluence of Murrieta Creek and Temecula Creek. Said
2    application was for seasonal and cyclic storage. Said applica-
3    tion is still active and in good standing. (Exhibits V & W.)

4                                   72

5         In place of plaintiff's proposed Finding 121, 2d series,
6    substitute the following:

7         On November 12, 1947, the defendant Santa Margarita
8    Mutual Water Company filed an application with the State of
9    California, Department of Public Works, Division of Water
10   Resources, State Engineer, which application was given No. 12152.
11   In said application applicant proposed to store, and requested
12   permission to store, 60,000 acre feet of water annually, to be
13   diverted from the Santa Margarita River at the approximate lo-
14   cation of the Fallbrook Gauging Station. Said application was
15   for cyclic and seasonal storage and is still active and in good
16   standing. (Exhibits U & W.)

17                                  73

18        Add Finding 123, as follows:

19        Defendant Santa Margarita Mutual Water Company is a
20   corporation duly organized and existing under and pursuant to
21   the laws of the State of California. (Exhibits G, H, & I.)

22                                  74

23        Add Finding 124, as follows:

24        On June 30, 1948, the United States Navy Department
25   filed an application with the State of California, Department
26   of Public Works, Division of Water Resources, State Engineer,
27   which application was given No. 12576. In said application
28   applicant proposed and requested permission to store temporarily
29   165,000 acre feet of water per annum, at approximately the
30   junction of De Luz Creek and the Santa Margarita River. Said
31   application is still pending and in good standing. (Exhibits

1834

1  K & W.)

2                        75

3      Add Finding 125, as follows:

4          The normal annual flow of the Santa Margarita River at

5  Ysidora Gauging Station is 28,900 acre feet. The normal flow of

6  the Santa Margarita River at Ysidora Gauging Station by months

7  is as follows (in acre feet):

8                    January      3440

9                    February     9530

10                   March        10430

11                   April        2860

12                   May          603

13                   June         190

14                   July         22

15                   August       11

16                   September    11

17                   October      104

18                   November     321

19                   December     1450

20       (Exhibits 14, Y-9, & Y-11.)

21                       76

22       Add Finding 126, as follows:

23          Any and all water which passes and is recorded by the

24  Ysidora Gauging Station flows into the Pacific Ocean and is lost

25  and wasted and serves no beneficial purpose. (Paul F. Henderson,

26  vol. 5, p. 548, lines 5-20.)

27                       77

28       Add Finding 127, as follows:

29          The full natural flow of the Santa Margarita River by

30  months for the water years 1924-25 to 1951-52 inclusive is

31  accurately shown by the unlabeled black line immediately above

1835

1　the line labeled "Ysidora Mesa" on the various sheets of

2　plaintiff's Exhibit 42．This line does not take into consider-

3　ation any waters available for use or stored in the Pendleton

4　Basin or the Temecula Basin.  (Paul F. Henderson, vol. 5, p.535,

5　line 11 to p. 536, line 3; p. 546, line 21 to p. 547, line 1.)

78

7　　　Add Finding 128, as follows:

8　　　　The total amounts of water diverted by plaintiff from

9　the Pendleton Basin and the Santa Margarita River and used by

10　plaintiff for military, agricultural, recreational, and domestic

11　purposes within the confines of Camp Joseph H. Pendleton, by

12　months, for the water years 1942-43 to 1951-52 inclusive are

13　correctly set forth in plaintiff's Exhibits 26 and 27.

14　(A. C. Bowen, vol. 4, p. 427, lines 17-22; p. 428, lines 15-20.)

79

16　　　Add Finding 129, as follows:

17　　　　The total use of water on the Vail Ranch by months

18　for the water years 1922-23 to 1951-52 inclusive is correctly

19　set forth in plaintiff's Exhibit 28.

80

21　　　Add Finding 130, as follows:

22　　　　The total annual diversions from the Santa Margarita

23　River made by the Fallbrook Public Utility District for the

24　years 1925 to 1951 inclusive, and the total monthly diversions

25　from said river by said district for the months January 1948

26　to June 1952 inclusive are accurately shown on defendant's

27　Exhibit O.

81

29　　　Add Finding 131, as follows:

30　　　　There have been no diversions of water from the Santa

31　Margarita River below the Fallbrook Gauging Station other than

836

1   by plaintiff and its predecessors in interest.

2                                    82

3            Add Finding 132, as follows:

4            Plaintiff's Exhibit 22 correctly portrays all water

5   distribution lines, irrigation lines, and wells used to

6   extract water both from within and from without the watershed

7   of the Santa Margarita River and to transport said water for

8   domestic, military, recreational, and agricultural use within

9   Camp Joseph H. Pendleton, including the Naval Ammunition Depot.

10  Plaintiff's Exhibit 22 also correctly shows the location of all

11  sewage lines and all sewage effluent discharges for the years

12  1944 to 1952 inclusive.  All sewage effluent discharges from

13  Plants No. 1, No. 2, and No. 3 are discharged into the Pendleton

14  Basin.  (Exhibit 22; Eliott B. Robertson, vol. 6, p. 671, line

15  22 to p. 673, line 6; A. C. Bowen, vol. 7, p. 786, line 23 to

16  p. 787, line 12.)

17                                   83

18           Add Finding 133, as follows:

19           Stuart Mesa and South Coast Mesa are accurately out-

20  lined in green on the Oceanside Sheet of plaintiff's Exhibit 22.

21                                   84

22           Add Finding 134, as follows:

23           Plaintiff now has under construction and proposes to

24  construct in 1953 barracks capable of quartering 17,000 men

25  in Las Pulgas Canyon, San Mateo Canyon, and San Onofre Canyon.

26  All of said barracks are located outside the watershed of the

27  Santa Margarita River and will be supplied with water developed

28  from wells located outside the watershed of the Santa Margarita

29  River.  Plaintiff contemplates the construction in 1953 of a

30  trailer area for the use of civilians and the families of

31  military personnel, which area will be supplied with water from

1837

the Santa Margarita River or Pendleton Basin; said trailer area
lies partly within and partly without the watershed of the
Santa Margarita River, the location of said area being correctly
shown on the Oceanside Sheet of plaintiff's Exhibit 22, being
labeled "Tent Area" on said sheet.  (A. C. Bowen, vol. 7. p.787,
line 13 to p. 790, line 23.)

85

Add Finding 135, as follows:

The needed average of 11,000 acre feet per year referred
to in Finding 67 includes all the military needs of plaintiff
at Camp Joseph H. Pendleton and the Naval Ammunition Depot, both
within and without the watershed of the Santa Margarita River.

86

Add Finding 136, as follows:

The area of the land overlying Pendleton Basin is
4,570 acres, consisting of 770 acres overlying O'Neill or
Upper Basin, 2,800 acres overlying Chappo or Home  Ranch or
Middle Basin, and 1,000 acres overlying Ysidora or Lower Basin.
(George F. Worts, Jr., vol. 3, p. 279, line 15 to p. 280,
line 12.)

87

Add Finding 137, as follows:

The safe annual yield of Pendleton Basin is 4,060 acre
feet.  Of this amount, 1,080 acre feet is the safe annual
yield of O'Neill or Upper Basin, and 2,980 acre feet is the
safe annual yield of Chappo or Home Ranch or Middle Basin.
Ysidora or Lower Basin has no safe yield.  (Exhibit Z.)

88

Add Finding 138, as follows:

Without seasonal and cyclic storage, the high floods
that occur from time to time on the Santa Margarita River and

-32-

1838

its tributaries and the large quantities of water that escape
to the Pacific Ocean in a very short period of time and which
constitute extraordinary run-off cannot be put to beneficial
use.

89

Add Finding 139, as follows:

The extraordinary run-offs referred to in Finding
138 constitute (or do not constitute) part of the normal flow of
the Santa Margarita River System.

(Note: We understand the opinion of December 9, 1952,
to hold that extraordinary run-off is not part of the normal
flow. Whether or not we are mistaken in this, we feel the court
should make a finding one way or the other on this issue. We
have therefore submitted the above finding in the alternative.)

90

Add Finding 140, as follows:

The maximum and minimum water levels of the Pendleton
Basin are accurately shown by the water level profile lines
on plaintiff's Exhibit 11, which lines are labeled "water-level
profile Mar. 1932" and "water-level profile Oct. 1951". (George
F. Worts, Jr., vol. 3, p. 301, line 19 to p. 302, line 3.)

91

Add Finding 141, as follows:

The Santa Margarita Mutual Water Company has never
diverted or extracted any water from the Santa Margarita River
or its tributaries, or from the watershed of the Santa Margarita
River System.

92

Add Finding 142, as follows:

The State of California is the owner of various parcels
of real property within the watershed of the Santa Margarita
River. The exact nature and extent of such ownership, and the

-33-

1839

riparian rights to the waters of the Santa Margarita River and its tributaries which appertain to such ownership, are the subject of current investigation and negotiation among the parties to this action. It is in the interests of justice that such investigation and negotiation continue. The court makes no finding regarding the nature or extent of such ownership or riparian rights. (Vol. 9, p. 1014, lines 9-12.)

93

Add Finding 143, as follows:

The State of California is the absolute owner of all the water of the Santa Margarita River and its tributaries upstream from the points where said river and its tributaries enter Camp Joseph H. Pendleton; provided that said ownership is subject to such rights of diversion or use of said water as are provided for by California law. Said ownership is unaffected by the cession of exclusive jurisdiction to plaintiff referred to in Finding 11. (Calif. Water Code secs. 101, 102, 103, 104, & 105.)

94

Add Finding 144, as follows:

The State of California is the absolute owner of the reversion in all rights to the use of the water of the Santa Margarita River and its tributaries which are or have been or may be forfeited or otherwise terminated for non-use or otherwise. (Calif. Water Code sec. 1241.)

95

Add Finding 145, as follows:

Any and all water stored or impounded by the Vails pursuant to Application No. 11518 and Permit No. 7032, heretofore mentioned in these Findings, must be put to reasonable beneficial use on the lands described in said application and

-34-

1   outlined in defendant's Exhibit F (in two parts).  Plaintiff
2   does not have any right, title, or interest in or to any of
3   the waters stored or to be stored pursuant to the terms of said
4   application and permit or in or to the use thereof.  Any and
5   all waters so stored or to be stored which cannot be put to
6   reasonable beneficial use by the Vails are surplus waters
7   subject to appropriation under and pursuant to the laws of the
8   State of California.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31

1841

CONCLUSIONS OF LAW

96

Following plaintiff's proposed Conclusion 2, 2d series,
add Conclusion 2A, as follows:

The defendant Santa Margarita Mutual Water Company,
as a claimant to the use of water of the Santa Margarita
River under applications No. 11578 and No. 12152 filed with
the State of California, Department of Public Works, Division
of Water Resources, State Engineer, has a vested interest in
the waters of the Santa Margarita River.  Said interest may be
adjudged to be such in an action to determine conflicting claims
to the water of said river.  Said defendant is entitled to a
judgment of this court protecting its interest against all ad-
verse claims which would be subordinate to said defendant's
right if said defendant should comply with all requirements
of the State of California and secure a permit and license
and take water and apply it to a useful purpose pursuant to
such permit or license.  (Merritt v. City of Los Angeles, 162 Cal.
47, 50-51.)

97

Delete the second sentence of plaintiff's proposed
Conclusion 4, 2d series.

98

In the second sentence of plaintiff's proposed Con-
clusion 10, 2d series, at lines 18-19 of page 31, delete the
following:  and those waters have been diverted and applied to
a beneficial use.

99

In the third sentence of plaintiff's proposed
Conclusion 10, 2d series, at line 21 of page 31, change
50,000 to 64,000.  (Exhibit 6.)

842

100

After plaintiff's proposed Conclusion 10, 2d series, add the following:

Plaintiff has no right, title, interest, estate, claim, lien, or demand in or to any waters stored by the Vail Estate pursuant to Application No. 11518 or Permit No. 7032 or any licenses which may be issued thereunder.

101

After the first sentence of plaintiff's proposed Conclusion 12, 2d series, at line 10 of page 32, insert the following:  to the extent that they can put said waters to a present reasonable beneficial use within the watershed of the Santa Margarita River on lands which are riparian thereto. Such riparian right does not entitle plaintiff or the Vail Estate to engage in seasonal or cyclic impounding or storing of the waters of said river.

102

In place of plaintiff's proposed Conclusion 13, 2d series, substitute the following (inserted words are indicated by underlining):

The flow of the Santa Margarita River is not sufficient to supply all of the prospective riparian needs of the riparian lands of the United States of America without seasonal or cyclic storage.  Similarly, the flow of the Santa Margarita River is insufficient to supply all of the prospective riparian needs of all of the riparian lands of the Vail Estate without seasonal or cyclic storage.  Thus the average annual yield of the Santa Margarita River in a state of nature is insufficient to meet all of the prospective riparian demands of either the United States of America or the Vail Estate without seasonal or cyclic storage.  By a stipulated judgment, Exhibit A

1843

1   of the Complaint, the respective rights of the United States

2   of America and the Vail Estate, insofar as this litigation is

3   concerned, have been established.

103

4   At the beginning of plaintiff's proposed Conclusion

5   15, 2d series, at line 7 of page 33, change "Riparian rights,"

6   to "Riparian rights and appropriative rights,".

7

104

8   In the first sentence of plaintiff's proposed

9   Conclusion 16, 2d series, at line 12 of page 33, change

10  "any beneficial purpose" to "any reasonable beneficial purpose".

11

105

12  In the last sentence of plaintiff's proposed

13  Conclusion 16, 2d series, at lines 13-14 of page 33, change

14  "actual beneficial uses" to "actual reasonable beneficial uses".

15

106

16  In the first sentence of plaintiff's proposed

17  Conclusion 17, 2d series, at line 16 of page 33, change

18  "actual beneficial uses" to "actual reasonable beneficial uses".

19

107

20  In the first sentence of plaintiff's proposed

21  Conclusion 17, 2d series, at line 17 of page 33, change

22  "prospective beneficial uses" to "prospective reasonable

23  beneficial uses".

24

108

25  In the second sentence of plaintiff's proposed

26  Conclusion 19, 2d series, at line 28 of page 33, after the

27  words "for military use," insert the words "on its riparian

28  lands".

29

109

30  Delete the last sentence of plaintiff's proposed

1844

285

1   Conclusion 19, 2d series (lines 6-10 of page 34).

2                               110

3          In connection with plaintiff's proposed Conclusion

4   21, 2d series, it will be recalled that we have heretofore

5   indicated our belief that the storage of water in Lake O'Neill

6   is not a use and that said storage has given rise to no pre-

7   scriptive rights.

8                               111

9          After plaintiff's proposed Conclusion 23, 2d series,

10  add the following:

11         Plaintiff has acquired no rights to the waters of the

12  Santa Margarita River System by appropriation other than such

13  appropriative rights as it may have by virtue of its application

14  for appropriation filed with the State of California on June 30,

15  1948, which application is junior in right to the applications

16  of the Santa Margarita Mutual Water Company of October 4, 1946

17  and November 12, 1947.

18                              112

19         Add Conclusion 25, as follows:

20         Plaintiff's rights to the use of Santa Margarita

21  River water are limited to the use of water required for

22  reasonable beneficial use on plaintiff's lands which are in the

23  watershed of said river and which are riparian to said river,

24  and such rights do not extend to the waste of water or to the

25  unreasonable use or unreasonable method of use or unreasonable

26  methods of diversion of water.

27                              113

28         Add Conclusion 26, as follows:

29         The riparian rights of plaintiff attach to no more

30  than that portion of the flow of the Santa Margarita River as

31  may from time to time be required for reasonable beneficial use

1845

on that portion of plaintiff's lands that are riparian to the
Santa Margarita River.

### 114

Add Conclusion 27, as follows:

Water which is not required for reasonable beneficial
use by those having lawful paramount claims shall be regarded
as surplus water and is subject to appropriation under the
laws of the State of California by those who can put it to
reasonable beneficial use.

### 115

Add Conclusion 28, as follows:

The rights of plaintiff as a riparian owner or
as an appropriator, as well as plaintiff's prescriptive rights,
are to be determined by and are limited by the laws of the
State of California.

### 116

Add Conclusion 29, as follows:

Plaintiff by reason of its sovereign status has
no right to the use of a greater quantity of water than it
acquired when it purchased the Rancho Santa Margarita, together
with any rights to the use of water which it may have gained by
prescription since its acquisition of Rancho Santa Margarita in
1942.

### 117

Add Conclusion 30, as follows:

Plaintiff's right as a riparian owner to use the
waters of the Santa Margarita River varies from season to
season and from year to year, and plaintiff does not have the
right to any mathematical or specific amount of the flow
of said river.

### 118

Add Conclusion 31, as follows:

1846

1   Plaintiff is entitled to a judgment protecting its
2   right to the future and prospective use of the water of the
3   Santa Margarita River on its riparian land, but until such time
4   as plaintiff can put such water to reasonable beneficial use
5   on its riparian lands, such water may be used by upstream
6   appropriators.

7                                    119
8   Add Conclusion 32, as follows:
9           Plaintiff by virtue of its riparian rights does not
10  have the right of seasonal or cyclic storage of the waters
11  of the Santa Margarita River.  The surface or subsurface storage
12  of water in one month for use in another month is seasonal
13  storage.

14                                   120
15  Add Conclusion 33, as follows:
16          Only those lands are riparian to the Santa Margarita
17  River which are contiguous to or abut upon said river and
18  which lie within the watershed of said river, and the riparian
19  right extends only to the smallest tract of such land held under
20  one title in the chain of title leading to the present owner.

21                                   121
22  Add Conclusion 34, as follows:
23          Any rights granted by the State of California to the
24  Santa Margarita Mutual Water Company to impound or store the
25  waters of the Santa Margarita River under and pursuant to the
26  applications of said Company referred to in the foregoing
27  Findings of Fact are paramount to any right of plaintiff to have
28  any portion of the flow of the Santa Margarita River reach its
29  properties for the purpose of impounding or storing said flow
30  seasonally or cyclicly.

31

2847

122.

Add Conclusion 35, as follows:

Plaintiff's riparian rights in and to the waters of the Santa Margarita River System do not include the right to require that water be released to plaintiff for use on lands of plaintiff that are not riparian to the Santa Margarita River System; provided however, that if upstream owners, users, and diverters of the waters of the Santa Margarita River System do release to plaintiff any water of said river systems, then plaintiff may use such released water as and where it sees fit.

123

Add Conclusion 36, as follows:

The rights of plaintiff to the use of the water of the Santa Margarita River on those portions of Camp Joseph H. Pendleton located within the watershed of said river may not be enlarged or supplemented by reason of its ownership of the land constituting the United States Naval Ammunition Depot.

124

Add Conclusion 37, as follows:

The riparian rights of plaintiff are paramount to those of appropriators such as the Santa Margarita Mutual Water Company, in the sense in which the word "paramount" is used in the water law of the State of California.

125

Add Conclusion 38, as follows:

The Division of Water Resources of the State of California has no jurisdiction over the enclave of the United States of America at Camp Joseph H. Pendleton and the United States Naval Ammunition Depot.

126

Add Conclusion 39, as follows:

-42-

1848

1    Plaintiff is required to respect the rights of other
2  riparian owners or appropriators of the waters of the Santa
3  Margarita River and its tributaries who, according to the law
4  of California, may have acquired rights, permanent or temporary,
5  to any water in the Santa Margarita River.

1849

JUDGMENT

127

In place of the first paragraph of plaintiff's proposed judgment, 2d series (lines 19-30 of page 1), substitute the following:

The court, on motion of plaintiff, having ordered separate trials in the above-entitled action on March 31, 1952, as between the UNITED STATES OF AMERICA, plaintiff, and FALLBROOK PUBLIC UTILITY DISTRICT and SANTA MARGARITA MUTUAL WATER COMPANY, defendants; and the PEOPLE OF THE STATE OF CALIFORNIA, defendant in intervention, having been made a party to said separate trials on July 11, 1952; and the above-entitled action having come on for trial as to the SANTA MARGARITA MUTUAL WATER COMPANY and the FALLBROOK PUBLIC UTILITY DISTRICT, defendants, and the PEOPLE OF THE STATE OF CALIFORNIA, defendant in intervention, on the 29th day of October, 1952, before the Honorable Leon R. Yankwich, Judge Presiding, sitting without a jury; and David W. Agnew, as Special Assistant to the Attorney General of the United States, and Raymond de S. Shryock, as attorney for the United States Navy Department, appearing for plaintiff, and W. B. Dennis, appearing for the defendant SANTA MARGARITA MUTUAL WATER COMPANY, and Edmund G. Brown, Attorney General of California, by George G. Grover, Deputy Attorney General of California, appearing for the State of California, and Phil D. Swing of the firm Swing, Scharnikow and Staniforth appearing for the defendant FALLBROOK PUBLIC UTILITY DISTRICT; and it appearing that the trial of said action against the defendant FALLBROOK PUBLIC UTILITY DISTRICT had been and was enjoined by the United States Court of Appeals for the Ninth Circuit; and the said Honorable Leon R. Yankwich having ordered the trial to be continued as to the FALLBROOK PUBLIC UTILITY

1850

DISTRICT and to proceed as to the plaintiff the UNITED STATES
OF AMERICA, and the defendant SANTA MARGARITA MUTUAL WATER
COMPANY, and the defendant in intervention the PEOPLE OF THE
STATE OF CALIFORNIA; and evidence having been introduced, both
oral and documentary, and the cause having been argued by
counsel and submitted; the court being fully advised in the
premises and having rendered an opinion and order on December
9, 1952; and the court having made findings of fact and con-
clusions of law--

### 128

In paragraph 8 of plaintiff's proposed judgment,
2d series, at line 24 of page 2, in place of the words "to such
water" substitute the words "to use such water on its riparian
land without seasonal or cyclic storage".

### 129

In the first line of paragraph 10 of plaintiff's
proposed judgment, 2d series, after the word "paramount" insert
the word "riparian".

### 130

In the fourth sentence of paragraph 10 of plaintiff's
proposed judgment, 2d series, at line 7 of page 3, in place
of 23,500 substitute 20,500.

### 131

In the first line of paragraph 14 of plaintiff's
proposed judgment, 2d series (being the last line of page 3),
after the word "every" insert the words "riparian and prescrip-
tive".

### 132

After paragraph 15 of plaintiff's proposed judgment,
2d series, add paragraphs 15A and 15B, as follows:

15A.  The nature and extent of the ownership by the

851

1   People of the State of California of lands within the water-

2   shed of the Santa Margarita River and the riparian rights

3   appertaining to said ownership are the subject of current

4   investigation and negotiation by the parties and are not

5   hereby adjudicated or declared.  The court hereby reserves

6   jurisdiction to adjudicate said ownership and riparian rights.

7          15B.  The defendant in intervention, the People of

8   the State of California, is the absolute owner of all the

9   water of the Santa Margarita River and its tributaries upstream

10   from the points where said river and its tributaries enter

11   Camp Joseph H. Pendleton; provided that said ownership is

12   subject to such rights of diversion or use of said water as are

13   provided for by California law.  The defendant in intervention,

14   the People of the State of California, is the absolute owner

15   of the reversion in all rights to the use of the water of

16   the Santa Margarita River and its tributaries which are or

17   have been or may be forfeited or otherwise terminated for

18   non-use or otherwise.

19                          133

20          At the end of paragraph 17 of plaintiff's proposed

21   judgment, 2d series, add the following:

22          The decree in this case, from the nature thereof,

23   is of necessity a continuing one.  The court hereby reserves

24   jurisdiction in this action over the parties and the subject

25   matter, so that from time to time, as conditions may require,

26   on the application of any party hereto or the successor in

27   interest of any party, the court may take new evidence, may

28   make modified or additional findings of fact and conclusions

29   of law, and may modify, enlarge, or abrogate any feature of

30   this decree accordingly.

31

                                                     1852

                                                     274

### PROPOSAL

The defendant Santa Margarita Mutual Water Company once more desires to call to the attention of the court that there is a practical physical solution of the water problems which exist on the Santa Margarita River, and that the erection of a dam by the Santa Margarita Mutual Water Company for the purpose of impounding the waters of said river which the defendant proposes to impound under its existing applications will not interfere with plaintiff's riparian or prescriptive rights.

If the erection of such a dam might interfere with plaintiff's riparian or prescriptive rights, then said rights of plaintiff could adequately be protected by a provision inserted in the judgment of this court requiring the Santa Margarita Mutual Water Company to release that portion of the current flow of the river that plaintiff can put to a present reasonable beneficial use on its riparian lands, sufficient waters to maintain the safe yield of the Pendleton Basin, and sufficient waters to satisfy plaintiff's prescriptive rights. This offer naturally assumes that plaintiff will not extract or divert water from the Pendleton Basin for use on lands outside the watershed to a greater extent than it has acquired the right to do so by prescription.

The Santa Margarita Mutual Water Company also respectfully calls the court's attention to the fact that it has never been the position of this defendant that the court has jurisdiction to order or that it should order any party to this action to build or construct a dam or dams on the river or that the construction of a dam or dams on the river would increase the full natural flow of the river. It has been and is the contention of this defendant that the

-47-

1853

1    erection of a dam by this defendant on the river immediately

2    upstream from the Fallbrook Gauging Station would impound those

3    waters of the stream which flow into the Pacific Ocean and

4    are lost and wasted, and that said waters will continue to

5    flow into the ocean unless a dam is erected on the river

6    capable of providing seasonal and cyclic storage.  Plaintiff

7    would not be damaged by the erection and maintenance of such

8    a structure.

9                        Respectfully submitted,

10

11

        W. B. DENNIS
12      Attorney for the
        Santa Margarita Mutual Water Company
13

14      EDMUND G. BROWN
        Attorney General
15      GEORGE G. GROVER
        Deputy Attorney General
16      Attorneys for the
        People of the State of California
17

18      By

19

20

21

22

23

24

25

26

27

28

29

30

31

1854

1   STATE OF CALIFORNIA,   }
                                       SS.
2   COUNTY OF LOS ANGELES. }

3                  WINIFRED A. HUNTER            , being first duly

4   sworn, deposes and says:

5                  That She is a citizen of the United States, resi-

6   dent of Los Angeles County, over eighteen years of age, not a

7   party to the within cause, and employed as a clerk in the Los

8   Angeles office of the Attorney General of the State of Cali-
                                       The People of the State of
9   fornia, who is one of the attorneys for California

10  in the above entitled matter; that Raymond de S. Shryock

11  appears in said cause for the plaintiff

12  and has an office at Eleventh Naval Dist., San Diego            ,

13  California; that in each of said places there is delivery serv-

14  ice by United States mail, and between said two places there

15  is regular communication by mail; that affiant enclosed a

16  copy of the proposed amendments to the findings etc proposed by
    plaintiff Feb. 10, 1953
17  in an envelope addressed to said Raymond de S. Shryock,
    Room 247 Dist. Legal office,
18  11th Naval Dist. Hq., San Diego 30            , California; that

19  affiant sealed said envelope and deposited the same in the United

20  States Post Office at Los Angeles, California, on the 20th day

21  of February         , 1953, with postage thereon fully prepaid.

22                                      _Winifred A. Hunter_

23  Subscribed and sworn to before me

24  this 20th day of February   1953

25  EDMUND G. BROWN, Attorney General
    of the State of California,

26  By _George F. Grover_
       Deputy Attorney General.

1855