FILED

MAY 3 - 1957

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

_William M. Whelan_
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | NO. 1247-SD-C |
| FALLBROOK PUBLIC UTILITY DISTRICT, et al., | ) | |
| Defendants. | ) | |

MEMORANDUM PURSUANT TO "ORDER
FOR PRETRIAL CONFERENCE"
PARAGRAPHS (1) AND (2),
PAGE 2

2077

SUBJECT INDEX

| | Page |
|---|---|
| Preliminary Statement | 2 |
| Separate Trials Were Ordered By This Honorable Court Against the Santa Margarita Mutual Water Company and the Fallbrook Public Utility District Because of the Nature and Character of the Claims Which They Asserted | 2 |
| Sole Issue Decided By the Court of Appeals Was That Indispensable Parties Were Not Before This Court When it Entered Judgment Against the Santa Margarita Mutual Water Company and the State of California | 6 |
| The Court's Judgment | 6 |

A. "After a review of the record, the outstanding fact is that all of the riparians and appropriators on the watershed are vitally interested in certain of the findings and most of the declarations of the judgment. Since this action includes the entire watershed, it is in the nature of a plenary suit to settle the correlative right of everyone interested in the waters." ..... 8

B. "In remanding, this Court is not attempting to find fact or express any opinion as to fact situation, but rather to indicate that many of the declarations, findings and conclusions are not well founded on the present record, are premature and may tend, if allowed to stand, to be given undue weight in the final judgment, owing to the erroneous influence of factors herein considered." ..... 9

C. i.  Surplus Water. "The adequacy of the findings, conclusions and declarations as to surplus which have just been discussed directly bear upon the rights of the State of California and Santa Margarita. There are pronouncements as to purported rights of the government not riparian in character, which enter into the declaration as to present surplus and also affect these litigants, but, since these are stated as vested property rights acquired by prescription and use, positively affect all the other parties in the main case filed in the name of the United States and all the world."

"The only proper method of adjudicating the rights on a stream, whether riparian or appropriative or mixed, is to have all owners of lands on the watershed and all appropriators who use water from the stream involved in another watershed in court at the same time." ..... 10

2078

GPO 16—60098 4

Subject Index -                                                    Page

      ii.  Surplus Water. - When the United States
           Acquired the Enclave
           "No precise finding as to the amount of water
           used on each /‾riparian or appropriative‾/ tract
           beneficially at that time has been made In this
           proceeding."                                      11

  D.  "* * * This court does not attempt to say whether
       there is a present surplus in the watershed"          12

  E.  "No attempt is made by this Court to determine here
       what rights Santa Margarita might receive under
       a permit with relation to the United States
       and other riparians and other appropriators."         12

  F.  Prescription - Error below was declared to exist by
       the Court of Appeals because in the litigation:
       "* * * where a whole stream system with various
       types of ownership of land and use of water,
       appurtenant and in gross, vested and inchoate,
       overlying, riparian by appropriation and by permit,
       that the court should attempt to adjudicate
       matters which affect the whole collection of
       rights and all the defendants in a proceeding
       which directly involves three litigants only.
       Most prominent in this adjudication is the
       finding and declaration that the government
       has certain water rights by prescription."            13

No Decision in Regard to Prescription:
  "Although the question was argued, this court does not
  presently decide whether a lower owner in california
  can acquire title to water rights by prescription or
  use against upper riparians or appropriators."           14

There Was No Decision on the Merits                           14

"* * * The concept of indispensability goes
  beyond federal jurisdiction and touches the
  very power or the right of the court to make
  an equitable adjudication, where an indis-
  pensable party is not before it."                        15

Having declared in substance that this Honorable
  Court was without jurisdiction to enter a final
  judgment in the separate trial, the Court of
  Appeals is likewise without jurisdiction to pass
  upon the merits of the case                              16

The Principles and Issues Left Open for Decision
  By the Court of Appeals                                  16

The Acceptability of
  (a) Paragraphs of Pretrial Order of
      August 25, 1952, 109 F. Supp. 28, 44, and
  (b) 15 Legal Conclusions set forth in
      108 F. Supp. 72, at 87                               17

2079

GPO 16—29906-4

1  J. LEE RANKIN
   SOLICITOR GENERAL
2     OF THE UNITED STATES
   WASHINGTON 25, D. C.
3
   Attorney for the UNITED STATES OF AMERICA
4

# F I L E D

MAY 3 - 1957

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____
                  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | NO. 1247 - SD - C |
| FALLBROOK PUBLIC UTILITY DISTRICT, et al., | ) | MEMORANDUM PURSUANT TO "ORDER FOR PRETRIAL CONFERENCE" PARAGRAPHS (1) AND (2), PAGE 2 |
| Defendants. | ) | |

Comes now the United States of America acting by and through

J. Lee Rankin, Solicitor General, David R. Warner, William E. Burby, and

William H. Veeder, Attorneys, Department of Justice, pursuant to the Order for

Pretrial Conference dated April 18, 1957, and tenders this, its memorandum

listing "the principles" which in its opinion were determined by the decision

of the United States Court of Appeals for the Ninth Circuit in the case of State

of California v. United States of America; [1]/ listing the principles and issues left

open for decision by that opinion; and listing the paragraph numbers of the

Pre-trial Order of August 25, 1952, [2]/ and of 15 legal conclusions [3]/ "which can

be accepted * * * as correctly stating the facts and/or principles of law which

can be incorporated in a further pretrial order, * * *."

_____

[1]/   State of California v. United States of America, 235 F.2d 647 (C.A.9, 1956).

[2]/   United States v. Fallbrook Public Utility District, 109 F.Supp. 28 (U.S.D.C. S.D. Cal. S.D. 1952).

[3]/   United States v. Fallbrook Public Utility District, 108 F. Supp. 72 (U.S.D.C. S.D. Cal., S.D. 1952).

2080

PRELIMINARY STATEMENT

Separate Trials Were Ordered By This Honorable Court Against
the Santa Margarita Mutual Water Company and the Fallbrook
Public Utility District Because of the Nature and Character
of the Claims Which They Asserted

"The government * * * desired to try Santa

Margarita /¯Mutual Water Company¯/ because it was

obviously in the weakest position of any prospective

user on the stream." 4/

Obiter dictum though it is, Judge Fee's quoted statement only

discloses the low estate of the claims of the Santa Margarita Mutual Water

Company in the Santa Margarita River.  Judge Philip D. Swing, counsel for

Fallbrook, has attacked the claims of the Santa Margarita Mutual Water Company

by reason of the fact that its exercise of the claims for storage rights

contemplates the use of space in the Vail Reservoir rather than construction

by that Company of its own facilities.

Relative to the claimed rights of the Santa Margarita Mutual Water

Company, Judge Fee made this further statement:

"The trial court found that Santa Margarita had 'not made

any diversion' and the State had issued no permits for

diversion or storage.

In other words, here was a paper application." 5/

(Emphasis supplied)

That Santa Margarita Mutual Water Company has only "paper rights" is further

buttressed by Judge Fee when he declared:

"It will be noted that this Court /¯the United States

Court of Appeals_/ has carefully avoided suggesting that

Santa Margarita has any rights or even inchoate privileges,

either as a matter of fact or law.

---

4/  235 F.2d 647, 654 (C.A.9, 1956).

5/  235 F.2d 647, 653 (C.A.9, 1956).

2081

It may well be that a state administrative board

might never grant a permit." 6/ (Emphasis supplied)

Incipient, indeed, as Judge Swing points out, somewhat incongruous,
the claims of the Santa Margarita Mutual Water Company must be characterized
as being a promoter's vain hope for a "long shot." They exist only in the
minds of those who hope that in some manner momentary substance, however brief,
may be accorded those rights, for with that the value of the dry and barren
lands within its alleged service area would sky-rocket. Judge Fee's caveat
that the Appellat Court "carefully avoided" recognizing the claims of the
Santa Margarita Mutual Water Company as having existence either "as a matter
of fact or law" dispelled any doubt as to the Court's views respecting them.
Warranting reference in that connection is the fact that in the Pre-trial Order
of August 25, 1952 7/ the Water Company in question stipulated in effect that
it had neither diverted water nor had means of diverting it, but rather
predicated its claims upon mere filings with the Division of Water Resources -
filings which have not been acted upon though the first of them is dated
October 4, 1946. Those dormant claims; Santa Margarita Mutual Water Company's
lack of substance; present nevertheless potential threats to the United
States of America. To test those rights independent of other claims
counsel for the National Government petitioned for a separate trial against
the Water Company. It was the separate trial which gave rise to the opinion
of the Court of Appeals to which this memorandum is directed.

Issue must be taken with Judge Fee's obiter dictum branding the
Santa Margarita Mutual Water Company's claims as occupying the "weakest position
of any prospective user on the stream." That issue was not before the Court
of Appeals. Had it been Judge Fee might well have stated the claims in question
were in the "weakest position" next to those of the Fallbrook Public Utility
District. Supporting that conclusion is the following quoted excerpt from an

---

6/  235 F.2d 647, 662 (C.A.9, 1956).

7/  United States v. Fallbrook Public Utility District, 109 F. Supp. 28, 44, 51
     (U.S.D.C. S.D. Cal., S.D. 1952).

2082

1   opinion of this Honorable Court:

2           "Fallbrook has used some of the ⎾Santa Margarita River⏋

3           water which it secured under a revocable license of the

4           United States Government for distribution among its

5           patrons * * *.  Its first ⎾application for⏋ appropriation

6           under the law of California is dated October 11, 1946.

7           The first application for appropriation by Santa Margarita

8           was October 4, 1946." ⎯8/

9   Thus any chronicling of the priorities among the "paper claims" now asserted

10  will be in part as follows:

11          Santa Margarita Mutual Water Company    Priority date: October 4, 1946

12          Fallbrook Public Utility District       Priority date: October 10, 1946

13  Prior in time is prior in right - therefore, the claim of the Santa Margarita

14  Mutual Water Company has priority over the claims of the Fallbrook Public

15  Utility District.  Prior albeit as between two claims neither of which may

16  be exercised without direct and immediate conflict with the long established

17  rights of the United States of America.  Unavoidable, as a consequence, is

18  the conclusion that the Santa Margarita Mutual Water Company's claim whatever

19  worth it may have,- a worth which is denied - takes precedence over the claimed

20  rights of the Fallbrook Public Utility District.

21          History supports the conclusion that the claims of the Fallbrook

22  Public Utility District are without merit.  Gratuitous forbearance, in the

23  form of a revocable permit from the predecessor in interest of the United

24  States of America, and then from the latter itself, allowed the Fallbrook

25  Public Utility District to take from the Santa Margarita River an infinitely

26  small quantity of water.  Reference again is made to one of this Court's

27  decisions when it declared: "* * * Fallbrook * * * received ⎾Santa Margarita

28  River⏋ water under a revocable license received on July 20, 1932, from the

29  predecessor in interest of the United States, which was revoked by the

30

31  ─────────────────────────────────────────

32  8/  United States v. Fallbrook Public Utility District, 108 F. Supp. 72, 83
        (U.S.D.C. S.D. Cal. S.D. 1952).

2083

1  United States on July 31, 1948, and pursuant to which Fallbrook was permitted

2  to divert, for domestic use only, ten miners inches of water (1/5 of a

3  cubic foot of water per second of time)." [9/]

4      Reviewed in the opinion last cited are the steps taken by Fallbrook

5  respecting its claims in California's Division of Water Resources. [10/]  With

6  the exception of the small diversions which are in the nature of a continuation

7  of those enjoyed under the revocable permit, Fallbrook's claims correspond

8  with the "paper rights" of the Santa Margarita Mutual Water Company.  Moreover,

9  whatever claims that District may assert under the laws of California are by

10  the State declared to be "SUBJECT TO VESTED RIGHTS."  Within the embrace of

11  that term are, of course, the invaluable rights of the National Government.

12  Respecting the "paper claims" of Fallbrook, the United States of America

13  likewise moved for separate trial.  Honorable Judge Weinberger presiding

14  on the 31st day of March, 1952, entered an order granting the motion for a

15  separate trial, declaring:

16      "It further appearing that the issues presented with

17      reference to each of the defendants Santa Margarita Mutual

18      Water Company and Fallbrook Public Utility District may be

19      tried in separate trials without prejudice to the rights

20      of such defendants and without prejudice to the rights of

21      any other defendant, and

22      "It further appearing that a separate trial as to each

23      of said last named defendants will facilitate the disposition

24      of the issues as to many of the other defendants, and good

25      cause appearing therefor,

26      "IT IS ORDERED that a separate trial be had as to the

27      issues with reference to the defendant Santa Margarita Mutual

28      Water Company and that a separate trial be had as to the

29      issues with reference to the defendant Fallbrook Public

30      Utility District."

31

32

9/  United States v. Fallbrook Public Utility District, 108 F.Supp. 72, 83
    (U.S.D.C. S.D. Cal. S.D. 1952).
10/ United States v. Fallbrook Public Utility District, 108 F. Supp. 72, 76
    (U S.D.C. S.D. Cal. S.D. 1952).

2084

1         In the light of the preceding recitation this observation is

2    respectfully made:

3         Neither the Mutual Water Company nor the Utility District

4         claimed any rights to the use of water from the Santa

5         Margarita River during the long history preceding the

6         acquisition of Camp Pendleton in 1942-1943 by the United

7         States of America.  At the termination of World War II

8         they each tried to initiate rights.  Neither has historically

9         had rights in the stream; nor have they relied upon it,

10        with the exception that Fallbrook has in recent years

11        diverted a small quantity of water.  This case has interfered

12        with their plans to obtain invaluable rights in the Santa

13        Margarita River - rights which we think belong to all of the

14        people of this Nation.

15        In the paragraphs which succeed there will be set forth the response

16   of the United States of America to the inquiries presented in the order to

17   which this memorandum pertains.

18        SOLE ISSUE DECIDED BY THE COURT OF APPEALS WAS
          THAT INDISPENSABLE PARTIES WERE NOT BEFORE THIS
19        COURT WHEN IT ENTERED JUDGMENT AGAINST THE SANTA
          MARGARITA MUTUAL WATER COMPANY AND THE STATE OF
20        CALIFORNIA

21        The Court's Judgment

22        Honorable Leon R. Yankwich, Chief Judge presiding, entered

23   judgment against the Santa Margarita Mutual Water Company and the State of

24   California.  That judgment was reflective of the fact that the Mutual

25   Water Company was a corporation without substance; a claimant to the

26   invaluable rights to the use of the waters of the Santa Margarita River

27   without means of utilizing those waters; without a reasonable expectancy that

28   the inchoate claims which were asserted would ever ripen into rights.

29   Judge Yankwich moreover in his judgment correctly reflects the position of

30   California in the cause by this statement:

31

32

- 6 -

GPO 16—69995-4

"4.  The State of California has properly intervened

in this proceeding.

It does not, however, seek to have adjudicated

here any substantive rights." [11]  (Emphasis supplied)

The Fallbrook Public Utility District avoided an adjudication of

its alleged claims when, at the time of trial, it unsuccessfully petitioned

the Court of Appeals to restrain this Honorable Court from proceeding to hear

and determine the issues properly before it. [12]  Had it not adopted that course

its rights, so similar to those of Santa Margarita Mutual Water Company, would

have likewise been adjudicated in the separate trial.

It appears, therefore, that:

This Honorable Court entered a judgment against a paper

corporation with paper rights.  Similarly it entered a

judgment against the State of California within the

limited scope for which it intervened.

Thus it is respectfully submitted, the judgment which was entered was eminently

correct.  Moreover, this Honorable Court, as the Court of Appeals recognized,

"distinctly states this is not a final judgment as to Santa Margarita * * *." [13]

Otherwise stated, it was always contemplated that the rights of all parties

would be adjudicated in the light of the separate determination in connection

with the unique claims of both the Santa Margarita Mutual Water Company and

the Fallbrook Public Utility District.  Quite aside, however, from the original

plan, it is evident that the Court of Appeals now requires "all owners of land

on the watershed and all appropriators who use water from the stream involved

in another watershed in court at the same time." [14]  (Emphasis supplied)

In substance the Appellate Court declared that the judgment of this

Honorable Court should be reversed because there were indispensable parties not

before the court at the time the judgment in question was entered.

[11]/  United States v. Fallbrook Public Utility District, 110 F. Supp. 767, 784
        (U.S.D.C. S.D. Cal., S.D. 1953).
[12]/  Fallbrook Public Utility District v. United States District Court, et al.,
        202 F.2d 942 (C.A.9, 1953).
[13]/  235 F.2d 647, 658 (C.A.9, 1956).
[14]/  235 F.2d 647, 663 (C.A.9, 1956).

2086

A.   "After a review of the record, the outstanding fact
is that all of the riparians and appropriators
on the watershed are vitally interested in certain
of the findings and most of the declarations of the
judgment.  Since this action includes the entire
watershed, it is in the nature of a plenary suit
to settle the correlative right of everyone
interested in the waters."  15/

There is no disagreement with the pronouncement quoted above that all

parties claiming rights in the Santa Margarita River watershed must be joined

in the proceedings.  This Honorable Court recognized that fact throughout all

of its decisions. 16/  Agreement by the United States of America with the quoted

proposition is indeed recognized by the Court of Appeals when it points out:

"The attorneys for the government had brought all the parties into court * * *." 17/

Variance between the views of this Honorable Court and those of the Court of

Appeals exists only in regard to the method.  This Court believing that the

Santa Margarita Mutual Water Company had no claimed rights which at the time

of the entry of judgment could be exercised without invading those of the

United States of America, declared that proposition in express terms.  Respecting

that decision of this Court the Court of Appeals made this ruling:

"It is here directly decided that entry of a partial

judgment in declaratory form containing

an absolute pronouncement that neither

Santa Margarita nor the State of California

had any rights against the agents of the

government in the flow in this watershed

was premature." 18/  (Emphasis supplied)

Cognizant that it was "perfectly proper" 19/  for the United States of America

separately to proceed against the Santa Margarita Mutual Water Company,

---

15/   235 F.2d 647, 664 (C.A.9, 1956).

16/   United States v. Fallbrook Public Utility District, et al., 101 F. Supp. 298
         (D.C.S.D. 1951);
      United States v. Fallbrook Public Utility District, et al., 108 F. Supp. 72
         (D.C.S.D. Cal., S.D. 1952);
      United States v. Fallbrook Public Utility District, et al., 109 F. Supp. 28
         (D.C.S.D. Cal., S.D. 1952);
      United States v. Fallbrook Public Utility District, et al., 110 F. Supp. 767
         (D.C.S.D. Cal., S.D. 1953).
17/   235 F.2d 647, 662 (C.A.9, 1956).
18/   235 F.2d 647, 662 (C.A.9, 1956).
19/   235 F.2d 647, 654 (C.A.9, 1956).

2087

- 8 -

1    the Court of Appeals nevertheless directs that before entry of judgment

2    "everyone interested in the waters" [20] of the Santa Margarita River must

3    have had determined their respective rights, adding in effect that it is

4    essential to have entered "a decree setting up all the rights as of the same

5    date." [21]

6          There is, of course, agreement with those pronouncements.  They are

7    not viewed, however, as in any way limiting this Honorable Court where the

8    circumstances warrant it, to proceed with separate trials.  To the contrary,

9    the Court of Appeals, respecting this Court's adoption of the separate trial

10   procedure, declared: "this Court has affirmed the trial judge in the exercise

11   of his discretion" [22] respecting it.

12         On the background just reviewed there follows a resume of the

13   limitations imposed by the Court of Appeals upon the scope of its mandate.

14   B.   "In remanding, this Court is not attempting to
          find fact or express any opinion as to fact
15        situation, but rather to indicate that many
          of the declarations, findings and conclusions
16        are not well founded on the present record,
          are premature and may tend, if allowed to stand,
17        to be given undue weight in the final judgment,
          owing to the erroneous influence of factors
18        herein considered." [23]

19         In keeping with the tenor adhered to throughout its opinion, the

20   Court of Appeals refrained from passing upon the merits of this case, all as

21   evidenced by the last quoted excerpt from its opinion.  No other course would

22   be proper as revealed by authorities subsequently to be reviewed.  Comporting

23   fully with that conclusion is this express  limitation as to the effect of its

24   mandate: "No attempt is made by this Court to determine here what rights

25   Santa Margarita might receive under a permit with relation to the United States

26   and other riparians and other appropriators." [24]  Thus the Appellate Court

27   reiterates that it would refrain from any final ruling upon any questions

---

[20]/  235 F.2d 647, 664 (C.A.9, 1956).

[21]/  235 F.2d 647, 664 (C.A.9, 1956).

[22]/  235 F.2d. 647, 654 (C.A.9, 1956).

[23]/  235 F.2d 647, 656 (C.A.9, 1956).

[24]/  235 F.2d 647, 659 (C.A.9, 1956).

2088

1  of fact or law until all of the elements essential to a final determination

2  were before it.  It was but another way of emphasizing the principle

3  enunciated throughout that the "partial judgment [of this Honorable Court]

4  * * * was premature." 25/   That expression conforms fully with the earlier

5  quoted statement from the opinion:

6      "that this Court [the Court of Appeals] has carefully

7      avoided suggesting that Santa Margarita has any rights

8      or even inchoate privileges, either as a matter of fact

9      or law." 26/

10      Having thus circumscribed the general aspects of its decision,

11  the Court of Appeals proceeded to limit the specific aspects of it.  In each

12  of those specific aspects it did so by reason of the fact that parties

13  it considered indispensable to a final judgment were not before this Honorable

14  Court.

15  C.  i.  Surplus Water.  "The adequacy of the findings,
         conclusions and declarations as to surplus
16       which have just been discussed directly bear
         upon the rights of the State of California and
17       Santa Margarita.  There are pronouncements as
         to purported rights of the government not riparian
18       in character, which enter into the declaration as
         to present surplus and also affect these litigants,
19       but, since these are stated as vested property
         rights acquired by prescription and use, positively
20       affect all the other parties in the main case
         filed in the name of the United States and all
21       the world." 27/
             "The only proper method of adjudicating
22       the rights on a stream, whether riparian or
         appropriative or mixed, is to have all owners
23       of lands on the watershed and all appropriators
         who use water from the stream involved in another
24       watershed in court at the same time." 28/

25      Genesis of the excerpts quoted in the present phase of this

26  memorandum is this statement by the Appellate Court:

27      "The conclusion [that "there is no surplus water
         at the present time"] involves many facets of
28       conflict." 29/

29

_____

30  25/  235 F.2d 647, 662 (C.A.9, 1956).

31  26/  235 F.2d 647, 662 (C.A.9, 1956).

32  27/  235 F.2d 647, 659 (C.A.9, 1956).
    28/  235 F.2d 647, 663 (C.A.9, 1956).
    29/  235 F.2d 647, 658 (C.A.9, 1956).

2089

GPO 16—69066-1

1  Among those inquiries declared that Court are: "First, do the sovereign rights

2  of the United States within the enclave change its relative position in respect

3  to other private riparian owners and appropriators?" 30/

4      Response to that question, proceeding arguendo, is patent.  Clearly

5  if the judgment of this Court embraced the aspects referred to in the last

6  quotation there were indispensable parties not before the court.

7      "Second" question regarding surplus waters stated the Appellate Court

8  "are the correlative rights of the two chief appropriators (sic), the Vail

9  Estate and the United States of America, which have been settled by agreement

10  between them and which depend upon the final adjudication binding upon

11  intervening riparians and appropriators to claimed surplus water?" 31/

12      Again, assuming the question valid in the circumstances, there can be

13  little doubt that the Vail interests were not before the Court for adjudication

14  at the time the judgment was entered.

15      Rationale of the opinion of the Appellate Court in its disposition

16  of the judgment in the subject case is exemplified by those quoted questions.

17  Assuming the validity of the questions, their response is easily anticipated

18  and that anticipation was fulfilled by the course adopted in the opinion here

19  being reviewed.  Manifestly if the questions were pertinent to the ultimate

20  disposition of the issues there before it, the Appellate Court had no

21  alternative but to remand the case to be tried with all the parties before

22  the court conditioning the entry of a judgment upon all rights having first

23  been adjudged.

24      ii.  <u>Surplus Water -  When the United States
    <br>          Acquired the Enclave.</u>

25        "No precise finding as to the amount of water
    <br>      used on each /riparian or appropriative / tract

26        beneficially at that time has been made in this
    <br>      proceeding." 32/

27

28      Thus as it did in regard to the findings of this Honorable Court

29  that there were no surplus waters at the present time, the Appellate Court

30  30/  235 F.2d 647, 658 (C.A.9, 1956).

31  31/  235 F.2d 647, 658 (C.A.9, 1956).

32  32/  235 F.2d 647, 658 (C.A.9, 1956).

2090

1   objected to the finding that "there was no surplus water at the time the
2   United States acquired the lands." 33/  Only when all of the correlative claims
3   of riparians and those rights of the appropriators had been adjudicated,
4   declared the Appellate Court, would it be possible to resolve the question of
5   whether there was or was not a surplus in the river.  Unavoidable, assuming
6   the correctness of the predicate, was the remand to this Court for a plenary
7   trial of all rights antecedent to judgment.

8   D.   "* * * THIS COURT DOES NOT ATTEMPT TO SAY WHETHER
        THERE IS A PRESENT SURPLUS IN THE WATERSHED." 34/
9

10          In those express and quoted terms the Court of Appeals declared
11   with specificity that:

12              It did not and does not determine on the status of
13          the record before it whether there is or is not a present
14          surplus.

15   No amount of argument can change that basic - it is respectfully submitted,
16   controlling - mandate from the Court of Appeals.

17   E.   "No attempt is made by this Court to determine here
        what rights Santa Margarita might receive under
18      a permit with relation to the United States
        and other riparians and other appropriators." 35/
19

20          In complete accordance with its basic concept that there were
21   indispensable parties not before this Honorable Court when the judgment in
22   question was entered, the Court of Appeals made the ruling quoted above.  That
23   enunciation of doctrine reflects the singular fact of the decision:- It made
24   no determination on the merits respecting the parties before it.  Any doubt
25   respecting that conclusion is removed when consideration is directed to this
26   statement by the Court:

27              "It will be noted that this Court has carefully
28          avoided suggesting that Santa Margarita has any rights
29          or even inchoate privileges, either as a matter of fact
30          or law." 36/

31   _____

32   33/  235 F.2d 647, 658 (C.A.9, 1956).
     34/  235 F.2d 647, 662 (C.A.9, 1956).
     35/  235 F.2d 647, 659 (C.A.9, 1956).
     36/  235 F.2d 647, 662 (C.A.9, 1956).

                                                          2091

                              - 12 -

GPO 16—90996-d

1  Disposed of by that statement, it is respectfully submitted, is any basis

2  for contending that the merits of the case were in any manner resolved by

3  the decision of Judge Fee.

4  F.   Prescription - Error below was declared to exist by
            the Court of Appeals because in the litigation:

5  "* * * where a whole stream system with various
       types of ownership of land and use of water,

6  appurtenant and in gross, vested and inchoate,
       overlying, riparian by appropriation and by permit,

7  that the court should attempt to adjudicate
       matters which affect the whole collection of

8  rights and all the defendants in a proceeding
       which directly involves three litigants only.

9  Most prominent in this adjudication is the
       finding and declaration that the government

10 has certain water rights by prescription."  37/

11      "A right by prescription" the Court of Appeals ruled "is binding

12 upon all the world, not only upon the water district, but upon all owners and

13 possessors of rights on the stream system." 38/   Emphasizing its opinion as

14 to the indispensability of having all claimants to water before this Court

15 before judgment could be entered, the Court of Appeals made this additional

16 pronouncement on the subject: "But these parties /¯those claimants not before

17 the Court_7, * * * cannot appeal from this decision.  It may be said that this

18 finding or declaration /¯regarding prescription_7 is not binding upon them.

19 If allowed to stand, however, the determination will have effect upon the

20 other defendants because it is a finding of a right against all the world

21 in a suit in which they are parties." 39/

22      It was then that the Court of Appeals concluded that:

23      "* * * all of the riparians and appropriators on

24      the watershed are vitally interested in certain of the

25      findings and most of the declarations of the judgment.

26      * * *  the rights of the others intersted in the flow

27      of the stream were prejudged before they had been tried,

28      by sweeping declarations of the judgment * * *."  40/

---

37/  235 F.2d 647, 663 (C.A.9, 1956).

38/  235 F.2d 647, 663 (C.A.9, 1956).

39/  235 F.2d 647, 663, 664 (C.A.9, 1956).

40/  235 F.2d 647, 664 (C.A.9, 1956).

2092

NO DECISION IN REGARD TO PRESCRIPTION:
"ALTHOUGH THE QUESTION WAS ARGUED, THIS COURT DOES NOT
PRESENTLY DECIDE WHETHER A LOWER OWNER IN CALIFORNIA
CAN ACQUIRE TITLE TO WATER RIGHTS BY PRESCRIPTION OR
USE AGAINST UPPER RIPARIANS OR APPROPRIATORS." 41/

Nothing need be added to this declaration by the Court of Appeals
that it did not pass upon the question of whether the United States of America
had or had not acquired rights to the use of water by prescription.

THERE WAS NO DECISION ON THE MERITS

In keeping with the rationale expressed throughout its opinion, the
Court of Appeals ruled that:

> "/1_7 Declarations, /2_7 findings and
>
> /3_7 conclusions, hereinafter criticized, eventually
>
> may be found in substance to be well founded upon the
>
> entry of final judgment in the action." 42/

That conclusion was wholly consistent with this statement which preceded the
extensive review of specific phases of the findings, conclusions of law, and
judgment:

> "In remanding, this Court is not attempting to find fact
>
> or express any opinion as to fact situation, but rather
>
> to indicate that many of the declarations, findings and
>
> conclusions are not well founded on the present record,
>
> are premature and may tend, if allowed to stand, to be
>
> given undue weight in the final judgment, owing to the
>
> erroneous influence of factors herein considered." 43/

Accordingly, it is respectfully submitted that the only aspect of the decision
controlling upon this Honorable Court is that it

> "* * * enter no judgment until the entire suit can be
>
> disposed of * * *." 44/

---

41/ 235 F.2d 647, 660 (C.A.9, 1956).

42/ 235 F.2d 647, 656 (C.A.9, 1956).

43/ 235 F.2d 647, 656 (C.A.9, 1956).

44/ 235 F.2d 647, 664 (C.A.9, 1956).

2093

> " * * * THE CONCEPT OF INDISPENSABILITY GOES
> BEYOND FEDERAL JURISDICTION AND TOUCHES THE
> VERY POWER OR THE RIGHT OF THE COURT TO MAKE
> AN EQUITABLE ADJUDICATION, WHERE AN INDIS-
> PENSABLE PARTY IS NOT BEFORE IT."  45/

Undoubtedly the precept of the law embraced in the last quotation resulted in the mandate to this Honorable Court that it refrain from entering any judgment until a final disposition may be made of "the entire suit."

Reference to the connotation to be ascribed to the term "indispensable party" is warranted.  This authoritative definition is particularly applicable here:

> "'Persons who not only have an interest in the controversy,
> but an interest of such a nature that a final decree cannot
> be made without either affecting that interest, or leaving
> the controversy in such a condition that its final
> termination may be wholly inconsistent with equity and in
> good conscience' are indispensable parties."  46/

When that definition is applied to the opinion in question, it is respectfully submitted, the parties whom Judge Fee says must be joined prior to final judgment come squarely within it.  As a consequence they "are so essential to the merits of the question, and may be so much affected by the decree, that the court cannot proceed to a final decision of the cause till they are parties." 47/ Though couched in different terms, it is manifest that Judge Fee's opinion adopted the principle enunciated by our Highest Court and applied it to the separate trial from which emanated the judgment of this Honorable Court.  In substance and effect the Court of Appeals has repeatedly and with extensive comment underscored its views that a final judgment could not be entered absent the other claimants to rights to the use of water from the Santa Margarita River.

---

45/  3 Moore's Federal Practice, Sec. 19.05, page 2146.

46/  3 Moore's Federal Practice, Sec. 19.07, page 2150.

47/  Shields et al. v. Barrow, 58 U. S. 129, 139 (1854).

- 15 -

2094

GPO 16—80006-6

HAVING DECLARED IN SUBSTANCE THAT THIS HONORABLE
COURT WAS WITHOUT JURISDICTION TO ENTER A FINAL
JUDGMENT IN THE SEPARATE TRIAL, THE COURT OF
APPEALS IS LIKEWISE WITHOUT JURISDICTION TO PASS
UPON THE MERITS OF THE CASE

As reviewed above, a court may not proceed to judgment in the absence of indispensable parties. "* * * the matter is so vital that an appellate court, sua sponte if necessary, may consider it although the point was not raised in the trial court." [48/]   As stated above, the Court of Appeals having declared in substance that this Honorable Court was without jurisdiction to enter the judgment by reason of its lack of jurisdiction, it would be equally powerless to pass on the merits of the separate trial. [49/]

THE PRINCIPLES AND ISSUES LEFT OPEN FOR DECISION
BY THE COURT OF APPEALS

Responding to this proposition, reference is made to the fact that assuming the correctness of the opinion, there was not and could not be a determination by the Court of Appeals of any of the issues or principles in the case. Indeed the Court of Appeals with great care pointed out that it was making no decision on the matters presented to it other than that this Honorable Court could "enter no judgment until the entire suit can be disposed of * * *." Accordingly, in the opinion of the United States of America there remain for resolution and adjudication all of the issues originally presented when the cause was initiated. Otherwise stated, the United States of America will seek to have its rights to the use of water in the Santa Margarita River quieted in regard to all adverse claims and such other relief as may be appropriate.

---

48/   3 Moore's Federal Practice, Sec. 19.05, page 2147.

49/   2 Am. Jur., Appeal and Error, Sec. 11, page 851.

2095

- 16 -

THE ACCEPTABILITY OF
    (a) PARAGRAPHS OF PRETRIAL ORDER OF
        AUGUST 25, 1952, 109 F. SUPP. 28, 44, AND
    (b) 15 LEGAL CONCLUSIONS SET FORTH IN
        108 F. SUPP. 72, at 87

    (a)  Respecting the Pretrial Order of August 25, 1952, reference is made to the fact that it was prepared for the separate trial.  Though much of the general data originally agreed to may still be acceptable, it is nevertheless respectfully recommended that a new order be adopted.  That will entail a complete review of all issues in the light of the general trial which it is believed will necessitate extensive revisions in the order as presently drafted.

    (b)  Respecting the 15 legal conclusions alluded to above, it is believed that for the general trial they will be acceptable to the United States of America.  However, additional questions of law must be resolved including the rights to the use of water acquired by the United States of America and its predecessor in interest through the diversion and application of Santa Margarita River water to beneficial uses.

UNITED STATES OF AMERICA

J. LEE RANKIN,
Solicitor General

DAVID R. WARNER,
Attorney, Department of Justice

WILLIAM E. BURBY,
Attorney, Department of Justice

May 2, 1957

WILLIAM H. VEEDER,
Attorney, Department of Justice

2096

- 17 -