```
SWING, SCHARNIKOW & STANIFORTH
       ATTORNEYS AT LAW
604 SAN DIEGO TRUST & SAVINGS BUILDING
     SAN DIEGO 1, CALIFORNIA
         BELMONT 9-1131
```

SWING & SWING
Attorneys at Law
313 Central Building
San Bernardino, California

Attorneys for Defendants COSETTE S. GARNER and JACK GARNER



FILED
JUN 5 1957
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA, )
)
                Plaintiff, )
)
-vs- )
)
FALLBROOK PUBLIC UTILITY DISTRICT, )
a public service corporation of )
the State of California, et al., )
)
                Defendants. )

NO. 1247-SD Civil

ANSWER OF COSETTE S. GARNER AND JACK GARNER.

    Comes now the Defendants COSETTE S. GARNER and JACK GARNER and separating themselves from the other defendants, allege, deny and admit as follows:

FIRST DEFENSE

I.

    Answering Paragraph I of the Complaint, these defendants and each of them, denies that any controversy had arisen prior to the commencement of this action or has arisen as between the United States of America and either of these defendants, as alleged in said paragraph; that as to the other defendants, these defendants and each of them allege that they are without knowledge or information sufficient to form a belief as to the truth of the allegation that "an actual controversy has arisen between the United States of America and the defendants named herein" and

COPY RECEIVED         -1-        C831

therefore denysaid allegation. That the only controversy of which these defendants have any knowledge is and was that created by the Plaintiff when it filed its complaint herein claiming against all defendants that it had a paramount right to 35,000 acre-feet of water annually from the Santa Margarita River. Further answering Paragraph I of the complaint, these defendants deny that they or either of them has unlawfully or otherwise interfered with any rights of the United States of America; admit the allegations in said Paragraph I contained except as herein denied.

II.

Answering Paragraph II of the Complaint, these defendants admit that the United States of America acquired the sites mentioned and described in said Paragraph at the times alleged and thereafter developed and installed the military establishments and constructed the facilities therein referred to, in said paragraph, but these defendants are informed and believe, and therefore allege the fact to be that the said military establishments do not occupy all of the 135,000 acres acquired by the United States in the Counties of San Diego and Orange, State of California, nor are all of said 135,000 acres utilized for military purposes but that several thousand acres of land, the exact amount being unknown to these defendants, has been, at all times since said property was acquired by the United States, and now is occupied, used and devoted to commercial farming, said land being rented out in varying sized tracts to various private persons, firms and corporations for that purpose.

III.

These defendants admit that it is true that the State of California has ceded jurisdiction to the United States of America over said land but that such cession was only operative and effective to the extent and for the time that said tract of land

9832

was to be used and actually was used for the purpose of erecting and maintaining forts, magazines, arsenals, dockyards and other needful buildings thereon and was not intended to, and in fact did not, extend to the thousands of acres of land occupied, used and devoted to commercial farming by private persons which these defendants are informed and believe to be the fact ever since the government acquired said land.

IV.

Answering Paragraph IV of the Complaint, these defendants do not have nor do either of them have sufficient knowledge, information or belief to enable them to answer the allegations therein to the effect that salt water intrusion from the Pacific Ocean threatens the destruction of said basin or that two wells have been destroyed by reason of that intrusion and therefore deny said allegations. These defendants admit that the Santa Margarita River traverses a portion of the property of Plaintiff but allege that it is a non-navigable stream. These defendants deny that the Santa Margarita River enters upon the sites of the military establishments mentioned in the complaint but allege that the sites of said military establishments are off of said River and most of them are entirely outside its watershed. Admit that in the dry season of the year the surface stream customarily and ordinarily disappears at a point on the lands of the United States at approximately eight miles from the ocean sinking into the sands and gravel of its bed and channel. That later it reappears as a surface stream two or three miles below, thence flowing as a surface stream but diminishing in volume to its confluence with tidewater. These defendants allege that at various other points and places above Plaintiff's said property the river disappears as a surface stream and sinks into the sands and gravels of one or more of the numerous basins which exist underneath each of the valleys which are found along the said river and along its several tributaries before said

-3-

river enters the property of Plaintiff. Allege that no portion of any of these basins form any part of the basin or basins which underlie Plaintiff's said property nor do any part of these basins underlie any portion of Plaintiff's said property. These defendants deny that they have in anyway encroached upon any rights which Plaijtiff may have or by their alleged encroachment, threaten a destruction of the basin referred to in said Complaint. Deny that the activities of these defendants have in anyway encroached upon or through their alleged encroachments upstream, they have reduced the quantities available to the United States of America from the "subterranean sources" mentioned in said Paragraph or that there has been a reduction in the surface flow of the Santa Margarita River through the alleged encroachment of these defendants. Deny that any acts of either of these defendants, has damaged any rights or property of Plaintiff. Defendants allege that, if it is true that there exists a threat of salt water intrusion into the basin or basins in which Plaintiff's wells are located, or if it is true that two of Plaintiff's wells have been destroyed by reason of that intrusion, such injury, or threatened injury, was not the result of the activities of these defendants or either of them, nor brought about through their alleged encroachment upstream but was in part at least, the result of a severe and protracted drought affecting all of Southern California and affecting not only the wells of Plaintiff but all wells in the Santa Margarita watershed and also wells in evwry other watershed throughout Southern California. Furthermore defendants are informed and believe, and therefore allege the fact to be that Plaintiff's injury, or threatened injury, was brought about principally as the direct result of Plaintiff's misuse of the basin or basins underlying its said property and mismanagement of its said wells and the operation thereof and in the misuse and misapplication of the water produced therefrom and the wrongful,

-4-

9834

excessive and unreasonable diversions and uses and places of use of said water, including the exportation by Plaintiff of large quantities of said water beyond the basin and watershed of said Santa Margarita River from whence said water, or any part thereof, could never return.

As to the allegation that "underlying the river and its tributaries is a vast underground basin" and that "the basin as a whole creates a large underground reservoir into which a high proportion of the Santa Margarita River sinks" and that "this vast subterranean reservoir constitutes one of the principal sources of water for the military purposes declared above", these defendants allege that they and each of them are without knowledge and information sufficient to form a belief as to the truth of said allegations and therefore deny each and every one of said allegations.

V.

Answering Paragraph V of the Complaint, these defendants admit the trial of the suit referred to in said Paragraph being Action No. 42850 in the Superior Court of the State of California in and for the County of San Diego, but allege that the decision of the trial court was reversed by the Supreme Court of the State of California (<u>Rancho Santa Margarita v. Vail</u> 11 C.(2) 501) and thereafter a Stipulation or Agreement was entered into between the Plaintiff in said action and the Defendant Vail interests calling for the entry of the stipulated judgment therein, a copy of which is attached to and made a part of the Plaintiff's Complaint as Exhibit "A". These defendants deny that the parties to said litigation declared their rights or fixed their aliquot shares of all the waters of the Santa Margarita River, premised upon the findings of the trial court or upon the decision of the California Supreme Court when the matter was on appeal before it. These defendants deny that they or their predecessors in interest, were parties to

-5-

9835

said suit or to said Stipulation and deny that any of the rights of these Defendants in the Santa Margarita River were adjudicated in said suit or fixed by said Judgment. These Defendants allege that they are not bound in anyway by said Stipulated Judgment, nor are their rights limited or controlled by it. That these Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in said paragraph and therefore deny each and all the said other allegations.

### VI.

Answering Paragraph VI of the Complaint, these defendants admit that Plaintiff is the successor in interest of the Rancho Santa Margarita but deny that it is entitled to, or can claim, as against these defendants, all rights, titles, interest and privileges purported to have been given to said Rancho Santa Margarita by the said Stipulated Judgment or that Plaintiff is entitled to or can claim, as against these Defendants, any more water than the amount which is or may be reasonably and actually required for riparian uses and purposes on that portion of said Rancho Santa Margarita which is actually riparian to said Santa Margarita River which amount of water is, under present conditions, as these Defendants are informed and believe, and therefore allege the fact to be, not to exceed 2,620 acre-feet per annum.

### VII.

Answering Paragraph VII of the Complaint, these Defendants allege that they are without knowledge and information sufficient to form a belief as to the truth of the allegations therein contained and therefore deny each and all of the allegations of said Paragraph.

### VIII.

Answering Paragraph VIII of the Complaint, these Defendants deny that Plaintiff has a paramount right to 35,000 acre-feet of water annually or a paramount right to any quantity of

-6-

9836

water except as hereinafter admitted. Defendants allege that they are without knowledge or information sufficient to form a belief as to the truth of the other allegations contained in said paragraph and therefore deny each and all of the other allegations of said paragraph not herein specifically admitted.

IX.

Answering Paragraph IX of the Complaint, these defendants deny that they have made any diversions from the Santa Margarita River in violation of rights of the United States of America; deny that these Defendants or either of them by reason of their diversions from the Santa Margarita River has caused the intrusion of salt water from the Pacific Ocean, or otherwise caused damage to the United States of America; deny that they or either of them have repeatedly or at all, through overt acts or otherwise, displayed their disregard for the rights of the United States of America or declared claims in contravention of the rights of the United States of America. These Defendants deny that their rights were acquired subsequent to the rights of the United States; deny that these Defendants, or either of them, have asserted that their rights were or are paramount to the rights of the United States except as hereinafter set forth in their Further Second and Separate Defense to which reference is hereby made. Allege that these Defendants are the owners and in possession of all the real property described and set forth in their said Further, Second and Separate Defense to which reference is hereby made and that as said owners, these defendants together with their predecessors have at all times for more than fifty (50) years past, had and do now have the right to beneficially use on their said lands a reasonable portion of the waters found flowing thereon and percolating therein and that said defendants together with their predecessor have, ever since the year 1900 exercised said rights by diverting percolating waters from the underground by means of wells dug therein and surface

flow from creeks by means of pumps for irrigating the crops planted and growing on their said lands and for domestic uses and other beneficial purposes; deny that they or either of them have proceeded to encroach upon, or now are encroaching upon, or threaten to encroach upon, the water supply of Camp Pendleton, the United States Naval Hospital or the Naval Ammunition Depot. Allege that but for Plaintiff's excessive diversions, unreasonable uses and wrongful exportation of water to places outside the basin and watershed of Santa Margarita River, as alleged in Paragraph V hereof, there would be a sufficient supply of water to meet the rightful needs and lawful requirements of Plaintiff.

These defendants and each of them, is without knowledge or information sufficient to form a belief as to the truth of the remaining averments in said Paragraph IX contained and therefore deny both generally and specifically each and all of the said allegations except as herein expressly admitted or expressly denied.

FOR A FURTHER SECOND AND SEPARATE DEFENSE, THESE DEFENDANTS ALLEGE:

I.

These defendants are the owners and in possession of all that certain real property situate in the County of Riverside, State of California, described as follows, to wit:

> West half of Northwest Quarter of Section 25, Township 5 South, Range 2 East, S.B.M, as shown by United States Government Survey, EXCEPTING therefrom that portion of Southwest Quarter of Northwest Quarter of said Section particularly described as follows:
>
> Beginning at the Southwest corner of said Southwest

Quarter of Northwest Quarter; thence North 89° 37' East along the Southerly line of said Northwest Quarter 1321.42 feet to the Southeast corner of said Southwest Quarter of Northwest Quarter; thence North 00°05' East along the Easterly line of said Southwest Quarter of Northwest Quarter, 164.82 feet; thence South 89° 37' West, 1320 feet to a point on the Westerly line of said Northwest Quarter ; thence South 01° 07' West along the Westerly line of said Northwest Quarter, 164.82 feet to the point of beginning.

East half of Northeast Quarter of Section 36, Township 5 South, Range 2 East, S.B.M. as shown by United States Government Survey.

West half of Northeast Quarter and East Half of Northwest Quarter of Section 28, Township 5 South, Range 3 East, S B M as shown by the United States Government Survey.

Section 29, Township 5 South, Range 3 East S B M as shown by United States Government Survey.

East half, East half of West Half and Government Lots 1 to 4, being all of Section 31, Township 5 South, Range 3 East S B M as shown by United States Government Survey.

Northwest Quarter of Section 32, Township 5 South, Range 3 East, S B M, as shown by United States Government Survey.

Section 33, Township 5 South, Range 3 East, S B M as shown by United States Government Survey.vey.
-9-

Government Lots 1 and 2 and South half of Northeast Quarter of Section 1, Township 6 South, Range 2 East, S B M as shown by United States Government Survey.

Southwest Quarter of Southwest Quarter of Section 3, Township 6 South, Range 3 East, S B M as shown by United States Government Survey.

Southeast Quarter of Southeast Quarter, West half of Southeast Quarter and Southeast Quarter of Southwest Quarter of Section 4, Township 6 South, Range 3 East, S B M as shown by United States Government Survey;

Government Lots 1 and 2 and East Half of Northwest Quarter of Section 6, Township 6 South, Range 3 East, S B M as shown by United States Government Survey.

South half, Northwest Quarter and South half of Northeast Quarter of Section 10, Township 6 South, Range 3 East S B M as shown by United States Government Survey.

West half of Southwest Quarter of Section 11, Township 6 South, Range 3 East S B M as shown by United States Government Survey.

West half of West half of Section 14, Township 6 South. Range 3 East, S B M as shown by United States Government Survey.

East half of Northeast Quarter and Northwest Quarter of Northeast Quarter of Section 15, Township 6 South, Range 3 East, S B M as shown by United States Government Survey.

West half, North Half of Southeast Quarter and Southwest Quarter of Northeast Quarter of Section 15, Township 6 South, Range 3 East, S B M as shown by United States Government Survey.

9840

East Half of Southeast Quarter of Section 16, Township 6 South, Range 3 East, S B M, as shown by United States Government Survey.

Northwest Quarter, West-half of Northeast Quarter, North Half of Southwest Quarter and North half of Southeast Quarter of Section 23. Township 6 South, Range 3 East, S B M as shown by United States Government Survey.

Southeast Quarter of Northeast Quarter, Southeast Quarter of Southwest Quarter and Southwest Quarter of Southeast Quarter of Section 23, Township 6 South Range 3 East S B M as shown by United States Government Survey.

Northeast Quarter of Northeast Quarter and Southeast Quarter of Southeast Quarter of Section 23, Township 6 South, Range 3 East, S B M as shown by United States Government Survey.

Northwest Quarter of Northwest Quarter of Section 24, Township 6 South, Range 3 East, S B M as shown by United States Government Survey.

Southwest Quarter of Northwest Quarter of Section 24, Township 6 South, Range 3 East, S B M as shown by United States Government Survey.

Southwest Quarter of Northwest Quarter, West Half of Southwest Quarter and Southeast Quarter of Southwest Quarter of Section 25, Township 6 South, Range 3 East, S B M as shown by United States Government Survey;

North half of Northeast Quarter, Southeast Quarter of Northeast Quarter and Northeast Quarter of Northwest Quarter of Section 26, Township 6 South, Range 3 East

S.B.M. as shown by United States Government Survey.

Northwest Quarter of Northwest Quarter, South Half of Northwest Quarter and South half of Section 36, Township 6 South, Range 3 East, S B M as shown by United States Government Survey;

Northeast Quarter and Northeast Quarter of Northwest Quarter of Section 36, Township 6 South, Range 3 East, S B M as shown by United States Government Survey; EXCEPTING therefrom the North Half of Northeast Quarter of Northeast Quarter of Said Section.

Government Lots 1,2,3 and 4 in Section 5, Township 7 South, Range 4 East, S B M as shown by United States Government Survey.

Government Lots 1, 2,3, and 4 and East Half of Southeast Quarter of Section 6, Township 7 South, Range 4 East, S B M as shown by United States Government Survey;

Government Lots 1 and 2 and East half of Northeast Quarter of Section 7, Towmship 7 South, Range 4 East, S B M as shown by United States Government Survey.

North Half and East Half of Southeast Quarter of Section 1, Township 7 South, Range 3 East, S B M as shown by United States Government Survey.

Section 31, Township 6 South, Range 4 East, S B M as shown by United States Government Survey

II.

The foregoing properties constitute what is generally known as the Garner Ranch which has been operated together with

9842

other intervening lands leased from the United States and other persons from the beginning of the century as a cattle ranch. The Ranch takes its name from its founder, R.F. Garner, pioneer cattle man and wholesale meat dealer of San Bernardino and Riverside Counties. He started putting the said properties together when he first purchased the Thomas Ranch which had been operated as a cattle ranch by the family of that name for a great many years prior to 1900. To the Thomas Ranch, Mr. Garner subsequently added the balance of the holdings which make up the present Ranch, as time opportunity permitted their acquisition. On his death the Ranch was inherited by his son Robert F. Garner who, on his return from military service as a United States Army Officer in the First World War, continued to operate the properties as a cattle ranch. On his death the property was inherited by his widow Cosette S. Garner and his son Jack, who are the present owners and operators of said Ranch.

From the very beginning and for more than 75 years, as a natural and necessary part of the operations of the cattle ranch, both the Thomas's and their successors, the Garner's', have put to beneficial use on the said lands the waters found flowing thereon and percolating therein, diverting from the creeks by means of ditches and pumping from the underground by means of wells the water needed and necessary to irrigate the natural meadows located on said ranch and other lands planted to alfalfa and other grains and grasses to supply stock water for the cattle and domestic water for the owners and their employees living thereon.

III.

That said lands are located in a semi-arid region of the State and would be of little use or value without an adequate supply of water and the right to use the same upon said land.

IV.

That on each and every parcel of defendants' said lands there exists and can be found waters flowing thereon and/or percolating therein to all of which, as against Plaintiff, these defendants have the right to put to beneficial use on their said lands on which said waters are found and produced.

V.

That of the waters which fall upon defendants' said lands or flows over, in, through or under the same, or which are found thereon or therein, none would ever reach the lands of Plaintiff. That Plaintiff has no right, title, estate or interest in or to any of said waters.

WHEREFORE these defendants pray:

1. That Plaintiff take nothing by its action.

2. That Defendants, as against Plaintiff, be decreed to be the owners of a paramount right to beneficially use upon their said lands any and all of the waters found flowing thereon or percolating therein.

3. That Defendants have judgment for their costs incurred herein and for such other and further relief as may to the court seem meet and proper.

DATED: June 5, 1957.

SWING AND SWING
SWING, SCHARNIKOW & STANIFORTH
BY _____
Attorneys for Defendants COSETTE S. GARNER and JACK GARNER

-14-

9844

**AFFIDAVIT OF SERVICE BY MAIL (C. C. P. 1013a)**
(Must be attached to original or a true copy of paper served)

COUNTY OF SAN DIEGO  } ss.
STATE OF CALIFORNIA }

......MARIAN W. ALLEN.................being duly sworn, says, that affiant is a citizen of the United States, over 18 years of age, a resident of, or employed in, San Diego County and not a party to the within action

That affiant's business address is......604 San Diego Trust & Savings Bldg., San Diego, California

That affiant served the attached...ANSWER OF COSETTE S. GARNER and JACK GARNER

by placing a true copy thereof in an envelope addressed to......J. LEE RANKIN, Solicitor-General, WILLIAM H. VEEDER, Attorney, Dept. of Justice; WILLIAM E. BURBY, Attorney Dept of Justice, Attorneys for Plaintiff

at their office address, which is......c/o Professor WILLIAM E. BURBY
Attorney at Law
12120 Travis Street
Los Angeles 49, California

which envelope was then sealed and postage fully prepaid thereon, and thereafter was on..............

..........June 5.............., 195.7..., deposited in the United States Mail   at................

..........San Diego, California..........That there is delivery service by the United States mail at the place so addressed, or regular communication by United States mail between the place of mailing and the place so addressed.

Subscribed and sworn to before me

June 5, 1957 , 195......

*Marian W. Allen*

*Elsie M. Bradford*
Notary Public in and for the County of San Diego, State of California
(SEAL)

**AFFIDAVIT OF SERVICE BY MAIL**    Form 9A Co. Clk. 10-56 20M PP

9845