IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

        v.                                    NO. 1247-SD-C

FALLBROOK PUBLIC UTILITY
    DISTRICT, et al.,

                    Defendants.

# FILED

JUL 8 - 1957

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
              Deputy Clerk

MEMORANDUM

" * * * SUGGESTING METHODS OF TRIAL OF THIS ACTION
BY AREAS, CLASSIFICATIONS, SEGMENTS OR OTHER METHODS
LOOKING TOWARDS AN EXPEDITIOUS TRIAL OF THE ACTION,
AND TAKING INTO ACCOUNT THE PROBLEMS OF THE SMALL
LANDOWNERS RESIDENT IN DIFFERENT AREAS INVOLVED, * * *."

*   *   *   *   *

## SUBJECT INDEX

|  | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| THE OPINION OF THE COURT OF APPEALS DOES NOT PRECLUDE SEPARATE TRIALS | 3 |
| GEOPHYSICAL, GEOLOGICAL, AND HYDROLOGICAL PHENOMENA OF SANTA MARGARITA RIVER WATERSHED PRESENT SOUND BASES FOR TRIAL OF THE CAUSE BY "AREAS * * * SEGMENTS" | 4 |
| a.  General Description of Santa Margarita Watershed | 5 |
| b.  Lower Santa Margarita Area | 6 |
| c.  Temecula Creek Area | 9 |
| d.  Murrieta Creek Area | 11 |
| PAST AND PRESENT PRACTICES OF THE UNITED STATES OF AMERICA SEEKING AMICABLY TO DETERMINE THE EXTENT AND CHARACTER OF THE RIGHTS OF ALL CLAIMANTS IN THE SANTA MARGARITA RIVER WATERSHED AND UPON THAT BASIS TO EFFECT SETTLEMENT BY STIPULATION | 13 |
| WHERE AMICABLE SETTLEMENTS HAVE NOT BEEN REACHED RIGHTS MUST BE PROVED; NOTICE TO PARTIES; THEIR OPPORTUNITY TO BE HEARD | 15 |
| CONCLUSION | 16 |

2241

J. LEE RANKIN
SOLICITOR GENERAL
  OF THE UNITED STATES
WASHINGTON 25, D. C.

Attorney for the UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,      )
                                )
        v.                      )          No. 1247-SD-C
                                )
FALLBROOK PUBLIC UTILITY        )
    DISTRICT, et al.,           )
                                )
                Defendants.     )

MEMORANDUM

"* * * SUGGESTING METHODS OF TRIAL OF THIS ACTION
BY AREAS, CLASSIFICATIONS, SEGMENTS OR OTHER METHODS
LOOKING TOWARDS AN EXPEDITIOUS TRIAL OF THE ACTION,
AND TAKING INTO ACCOUNT THE PROBLEMS OF THE SMALL
LANDOWNERS RESIDENT IN DIFFERENT AREAS INVOLVED, * * *." [1]

PRELIMINARY STATEMENT

These controlling pronouncements of the United States Court of Appeals
for the Ninth Circuit must preface every consideration respecting the subject
case:

"The United States brought an action against some three

thousand (3,000) defendants to quiet title to  water rights

claimed to be appurtenant to lands acquired * * * and used

for various purposes of the army and navy which * * * will

be referred to as 'Pendleton'." [2]

---

[1]  Notice to all Defendants and Court Order re Procedure, dated May 8, 1957,
     Exhibit A of this memorandum.

[2]  People of the State of California v. United States, 235 F.2d 647, 652
     (C.A.9, 1956).

2242

- 1 -

1    "The only proper method of adjudicating the rights

2    on a stream, whether riparian or appropriative or mixed,

3    is to have all owners of lands on the watershed and all

4    appropriators who use water from the stream involved

5    in another watershed in court at the same time." 3/

6    (Emphasis supplied)

7    "Since this action includes the entire watershed, it is

8    in the nature of a plenary suit to settle the correlative

9    right of everyone interested in the waters. The standard

10    course in such a proceeding is to enter a decree setting

11    up all the rights as of the same date." 4/

12    "* * * no judgment /shall be entered 7 until the

13    entire suit can be disposed of at the same date." 5/

14        Unequivocally and with emphasis the United States Court of Appeals

15    issued to this Honorable Court, its mandate; adjudged with specificity the

16    pattern which must govern the trial of the case of the United States of

17    America v. Fallbrook Public Utility District, et al.

18        On the background of the procedural precepts thus enunciated by

19    the Court of Appeals the National Government will, as ordered by this

20    Honorable Court "taking into account the problems of the small landowners

21    resident in different areas /of the Santa Margarita River watershed 7

22    involved," 6/   while "looking towards an expeditious trial of the action," 7/

23    outline suggested "methods of trial of this action by /a 7 areas,

24    /b 7 classifications, /c 7 segments /d 7 or other methods."

25    _____

26    3/   People of the State of California v. United States, 235 F.2d 647, 663

27        (C.A.9, 1956).

28    4/   Ibid., 235 F.2d 647, 664 (C.A.9, 1956).

29    5/   Ibid., 235 F.2d 647, 664 (C.A.9, 1956).

30    6/   Notice to All Defendants and Court Order re Procedure, dated May 8, 1957 -
         Exhibit A of this Memorandum - page 3, line 3.

31    7/   Ibid., Exhibit A of this Memorandum, page 3, line 2.

32

- 2 -

2243

GPO 16-32095-1

THE OPINION OF THE COURT OF APPEALS DOES NOT
PRECLUDE SEPARATE TRIALS

"The /¯Federal District ¯7 court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, * * * or of any number of claims * * *," [8/] specially accords to this Honorable Court the power to adjust the manner of trial to the convenience of the parties, particularly those least able to stand excessive costs.  Respecting the rule just quoted this authoritative declaration has been made:  "Obviously Rule 42, relating to separate trials, is largely supplementary or ancillary to and should be read and considered in connection with Rules 13 and 18 to 20, pertaining to counterclaims * * * joinder of claims and parties * * *. * * * it is equally obvious that Rules 20 (b) and 42 confer very broad discretionary powers upon the trial courts in controlling procedure and ordering joint or separate trials.  Whether there shall be a separate trial as to a particular claim * * * rests in the sound discretion of the trial Judge * * *." [9/]  Again it has been stated: "Because of the liberal rules on joinder of actions * * * it is obvious that subdivision (b) of Rule 42, allowing a separate trial or trials of various claims * * * is necessary to prevent embarrassment, delay or expense. * * * The matter rests, of course, in the discretion of the trial judge." [10/]  It has similarly been declared that the authority to grant separate trials "is within the discretion of the court." [11/]

Supporting the tenet of the law that the trial procedure resides with the trial judge -- that the decision to order separate trials resides in the sound discretion of the trial court, this statement has been made: "* * * the ordering of a separate trial and judgment in this case was discretionary with the trial court * * *." [12/]  From a decision involving

---

[8/]  Federal Rules of Civil Procedure, Rule 42 (b).

[9/]  9 Cyc. Fed. Proc., 3d ed., Sec. 31.04, page 164.

[10/]  5 Moore's Federal Practice, 2d ed., Sec. 42.03, page 1211

[11/]  Barron and Holtzoff, Federal Practice and Procedure, vol. 2, Sec. 943, p.666

[12/]  Shippers Pre-cooling Service v. Macks, 181 F.2d 510, 514 (C.A.5, 1950); cert. denied 340 U.S. 816 (1950).

2244

1  a quiet title action of the nature of the case now pending which gave rise

2  to the petition here involved, this statement is taken: "Rule of Civil

3  Procedure 42 (b) expressly empowers the court to order a separate trial, on

4  any issue in the case." [13/]   The Court of Appeals for the Ninth Circuit has

5  upheld the trial court in exercising its discretion under the rule in

6  question. [14/]

7        Absent an abrogation of the general principles announced above

8  by the Court of Appeals, it is abundantly manifest that great flexibility

9  resides with this Court to insure the maximum convenience to all parties to

10  the cause by ordering separate trials.  An analysis of the opinion in question

11  negates any conclusion that this Court is precluded from proceeding to trial

12  upon some basis of "areas, classifications, ⎾or⏌ segments * * *."  That

13  analysis reveals the denial of the power of this Court to enter a final

14  judgment until all rights have come before it for decree.  It does not,

15  however, bar a separation on the basis of areas or parties.  Indeed, dictum

16  that it may be, the Appellate Court declared:  "The government apparently desired

17  to try Santa Margarita ⎾Mutual Water Company⏌ because it was obviously in

18  the weakest position of any prospective user on the stream.  This was, of

19  course, perfectly proper, and this Court has affirmed the trial judge in

20  the exercise of his discretion." [15/]

21        Accordingly, predicated upon the authorities reviewed above, this

22  Court in its discretion, acting within the purview of the Federal Rules of

23  Civil Procedure, may order separate trials "in furtherance of convenience."

24
25             GEOPHYSICAL, GEOLOGICAL, AND HYDROLOGICAL
                 PHENOMENA OF SANTA MARGARITA RIVER WATERSHED
26            PRESENT SOUND BASES FOR TRIAL OF THE CAUSE
                 BY "AREAS * * * SEGMENTS"

27        An immutable principle in litigation of the character here involved

28  is this:

---

13/  Burkhard v. Burkhard, 175 F.2d 593, 595 (C.A.10, 1948).

14/  Bruckman, et al. v. Hollzer, 152 F.2d 730 (C.A.9, 1946).

15/  People of the State of California v. United States, 235 F.2d 647, 654
    (C.A.9, 1956).

2245

1    Every claimed right is antagonistic to, and in competition

2    with every other claimed right to the meager supply of

3    water of the streams of the character of the Santa Margarita

4    River, where there is such a vast disparity between the

5    demands and the availability of water.

6    As a consequence any segregation of areas for the purpose of trial must

7    contemplate an ultimate adjudication of every right in the stream system as

8    it relates to every other right.   In the terms of the Court of Appeals this

9    cause "is in the nature of a plenary suit to settle the correlative rights of

10   everyone interested in the waters." 16/    Thus the separation may be nothing

11   more than a device for the chronicling of the rights - a comprehensive design

12   for the order of proof of many rights ultimately to be embodied in a single

13   decree specifying their priority or basis of participation in the waters

14   which are available for allocation.

15        With that caveat, which is the crux of the appellate opinion, this

16   consideration will proceed with a recommended basis for **separating** the trial

17   by "areas."

18   a.   General Description of Santa Margarita Watershed:

19        The entire watershed of the Santa Margarita River comprising 740 square

20   miles, located partly in Riverside County and partly in San Diego County, may

21   be divided by distinct physiographic and geologic features into three major

22   subdivisions.   Set forth on the accompanying map of the Santa Margarita

23   River Watershed are those three major subdivisions, which are:

24        1. Lower Santa Margarita Area - 150 square miles

25        2.   Temecula Creek Area - 370 square miles

26        3.   Murrieta Creek Area - 220 square miles

27

28

29   16/  People of the State of California v. United States, 235 F.2d 647, 664

30        (C.A.9, 1956).

31

32

- 5 -

2246

GPO 16-60000-1



b. _Lower Santa Margarita Area:_

The Lower Santa Margarita Area is comprised of the drainage basin lying downstream from that point where the Elsinore Fault zone transects the main



b. <u>Lower Santa Margarita Area</u>:

The Lower Santa Margarita Area is comprised of the drainage basin lying downstream from that point where the Elsinore Fault zone transects the main thread of the stream.  That Fault zone forms a hydraulic barrier which effectively seals off ground water movement, and forces all of the water which descends into the lower Santa Margarita to rise and continue as a surface stream until it

2247

- 6 -



U.S. MARINE CORPS
OFFICE OF GROUND WATER RESOURCES
Camp Pendleton, California
LOWER SANTA MARGARITA
AREA
Scale 1:125,000          24 JUL 1957

1   reaches the Santa Margarita Basin within Camp Pendleton.  The area of this

2   lower Santa Margarita segment is about 150 square miles, of which approximately

3   60 square miles lie within the U. S. Naval Reservation.

4          Showing graphically the Lower Santa Margarita Area is the

5   accompanying map:

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30

31          By far the largest claimed right in this area is that of the United

32   States of America.  The magnitude of it stands out clearly when consideration

2248

- 7 -

is directed to the fact that the last approximately twenty-two miles
of the Santa Margarita River lie wholly within the enclave comprised of Camp
Pendleton and the Naval Ammunition Depot.  There are within this area numerous
other claims in private ownership, some exercised, some inchoate.  They are not
limited to the main stem of the river in question.  Rather many of them are
upon Rainbow, Sandia and Deluz Creeks, tributaries to the main stem.  Large in
number and varying in size, there is no set formula as to the means best suited
to prove the claims in question.  Generally, however the United States of
America believes:

   a.  Respecting riparian uses and many long-time
  non-riparian uses within the watershed that it is possible
  through amicable stipulations fixing the extent, and the
  character of the rights, to avoid the necessity of proof;

   b.  Respecting unexercised riparian claims and inchoate
  appropriative claims within the watershed, the conclusion
  is the same as that set forth in paragraph (a) above.

   c.  Claimed appropriative rights for use outside
  of the watershed, such as those of the Fallbrook Public
  Utility District, which prior to 1948 did not divert
  water under an assertion of right, must be contested.
  Similarly, diversions such as that by the Sawdays, with
  no apparent authority from the State of California, must
  be contested.

In Summary:

  The Lower Santa Margarita Area presents the greatest number of parties
and the most controversial issues at present.  It is believed nevertheless that
amicable settlements are possible in the vast majority of instances.  Contested
claims should, it is believed, be limited to appropriative claims and with those
claimants who are diverting water without any color of right or title.

  Riparian uses and long-time non-riparian uses should present little
or no difficulty.  Potential riparian claims are more difficult but readily
lend themselves to settlement based upon accurate soil surveys.

- 8 -

2249

GPO 16—80000-5

c.  Temecula Creek Area:

The second major area of the watershed is drained by Temecula Creek, which joins with Murrieta Creek at the Elsinore Fault zone.  From that point the stream is called the Santa Margarita River.  Temecula Creek watershed is comprised of about 370 square miles, draining the rough mountainous land lying northerly and easterly of the Palomar horst.  This area is characterized by small alluvial filled valleys which dot the course of Temecula Creek and its tributaries.  Those valleys are the only dependable source of ground water, and represent the bulk of the irrigable land within the Temecula Creek watershed.  The major valleys are Coahuilla Valley, Terwilliger Valley, Lancaster Valley, Wilson Valley, Lewis Valley, Nigger Valley, Redec Valley, Aguanga Valley, Oak Grove Valley, Dodge Valley and Chihuahua Valley.

A significant physical feature within the Temecula Creek watershed, of artificial origin, is the Vail Dam at the head of Nigger Canyon, which effectively forms a hydraulic barrier above which drains 320 square miles. Though this vast structure has a planned capacity of 50,000 acre-feet, it impounds at the time of the preparation of this memorandum approximately 600 acre-feet.  It may be readily perceived from that fact why contests for the precious but extremely limited supply of water within the stream system of the Santa Margarita River create sharp and bitter disputes. A controversy of that character is Barbey v. Oviatt, [17/]  in which was joined the Vail Estate.  That action involving claimed rights above Nigger Canyon Dam was a potent factor in causing the initiation of this case.

This map locates the boundaries of the Temecula Creek Area emphasizing the dominance of the Vail Dam, its influence on the area thus recommended for segregation for the purposes of trial.

---

[17/]  In the Superior Court of the State of California, in and for the County of San Diego, No. 154140.

- 9 -

2250

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27    To be observed are these salient facts:
28         Vail Dam constructed subsequent to 1946 is but the
29    largest single; most dramatic of the increased burdens
30    upon the stream above the National Enclave.  A steadily
31    expanding economy in the area in question creates a
32    pressing need to have defined, declared and decreed

2251

1    the rights of the claimants there asserted as they relate

2    to others downstream whose very existence turns upon the

3    delivery of water from the upper reaches of this semiarid

4    region.

5         In the Temecula Creek Area the largest single claim is that of the

6    Vail Estate.  Large in comparison to the supply, however, are those rights

7    claimed in connection with the Barbey and Oviatt properties.  In addition to

8    those last named defendants there are in the Temecula Creek Area, as in the

9    Lower Santa Margarita Area, numerous small claims.  Similarly those claims

10   in the main are subject to ready resolution by stipulation both as to character

11   and extent.  Every effort is now, and for years past has been directed to that

12   end, not only in the area here being considered but throughout the watershed.

13   Important in that regard is the fact that the rights of the United States of

14   America and the Vail Estate are largely covered by the Stipulated Judgment

15   entered December 26, 1940, in the Superior Court of the State of California,

16   in and for the County of San Diego, California, which concluded litigation

17   between that Estate and a predecessor in interest of the United States of

18   America.  Consequently in this area, and the other areas described in this

19   memorandum, there is a broad base upon which to proceed toward amicable

20   resolution regarding the vast majority of claims by reason of the settlement

21   already existing between the United States of America and the Vail Estate.

22   In Summary:

23        The same procedure and general principles reviewed in connection

24   with the Lower Santa Margarita Area are applicable to this area.

25   d.  Murrieta Creek Area:

26        Third of the major divisions of the Santa Margarita River watershed

27   as proposed in this memorandum has been designated the Murrieta Creek Area.

28   It is well defined by the accompanying map:

29

30

31

32

- 11 -

2252



U.S. MARINE CORPS
OFFICE OF GROUND WATER RESOURCES
Camp Pendleton, California

MURRIETA CREEK AREA

23 JUN. 1957

Scale 1:125,000



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27          This area drained by Murrieta Creek, comprises about 220 square miles.
28   Much of this third segment is composed of gently sloping valley lands.  Part of
29   it is composed of the rolling surface of the Pauba formation.  Only in the
30   northeasterly portion of this area does the physiography approach the roughness
31   and steepness characteristic of the Temecula watershed.
32          Vail Estate lands constitute the largest single ownership, a factor

2253

1  of importance here for the rights to the use of the waters of Murrieta Creek

2  are not a part of the Stipulated Judgment alluded to in the paragraphs which

3  precede.  That element should not, however, vary the overall plan of

4  procedure envisioning the settlement by stipulation of all but those rights

5  entailing controversial issues of fact or law, or both, in need of juridical

6  determination.

7          Though differing in geophysical and geological aspects, there

8  is a similarity between this area and the other two already reviewed.

9  As is true throughout the Santa Margarita River watershed there is an

10  increased demand for water in the Murrieta Valley best evidenced by wells

11  tapping the Murrieta Basin which underlies a portion of the stream.  Population

12  pressures are here as elsewhere in the Santa Margarita River watershed,

13  placing ever increasing demands upon the already overburdened meager supply.

14  In Summary:

15          The same procedure recommended in regard to the Lower Santa Margarita

16  Area and the Temecula Creek Area should be followed in regard to the Murrieta

17  Creek Area.

18          Presented, however, is the problem of the methods and means of

19  effectuating the proposal for a broad program of amicable settlement.  That is

20  the next element to be considered.

21              PAST AND PRESENT PRACTICES OF THE UNITED STATES
              OF AMERICA SEEKING AMICABLY TO DETERMINE THE
22              EXTENT AND CHARACTER OF THE RIGHTS OF ALL
              CLAIMANTS IN THE SANTA MARGARITA RIVER WATERSHED
23              AND UPON THAT BASIS TO EFFECT SETTLEMENT BY
              STIPULATION
24

25          Reference is made in the Order dated May 8, 1957, to the office
                                                            18/
26  maintained by the United States Marine Corps at Rainbow, California.

27  At that office, or its previous location, for several years past the defendants

28  have had access to engineering advice and data pertaining to their claimed

29  rights to the use of water in the Santa Margarita River watershed.  Those

30  services are now and will remain available to the defendants.  This

31  memorandum prepared by the Officer in Charge of the Office of Ground Water

32  Resources sets forth in detail the services available to the defendants:

---

18/  Exhibit A of this Memorandum, page 2, paragraph 2.

2254

- 13 -

OFFICE OF GROUND WATER RESOURCES
MARINE CORPS BASE
CAMP PENDLETON, CALIFORNIA

24 June 1957

Subj: Professional services afforded by the Office of Ground
Water Resources, Marine Corps Base, Camp Pendleton

1.  Subject services have been available to private land-
owners within the Santa Margarita River watershed since 1951.
These services are still available on an "as requested"
basis.

2.  Subject services include

a.  In the field of civil engineering:  hydraulics,
hydrology, irrigation and drainage.

b.  In the field of edephology:  determinations of per-
meability, texture, depth, moisture capacity, and plant
nutrient level of the soil; in addition, the slope of the land,
the climate, extent and effect of erosion, salinity or alka-
linity, wetness and susceptibility to overflow.

c.  In the field of agronomy:  adaptability of crop plants,
determination of their consumptive use, and estimation of
annual duty of water for crops.

d.  In the field of geology:  nature and character of
geological formations, and an interpretation of the water-
bearing capacity of these formations based on available
stratigraphy.

3.  Findings of those physical factors, based upon field
investigation, are compiled in a written report, a copy of
which is submitted to the landowner and another copy to counsel,
if any, for study and consideration.  If further interpreta-
tions of the findings are desired following the landowner's
study, conferences are arranged, generally on the property
being considered, between professional representatives of
Ground Water Resources and the landowner or his representative.

ALLEN C. BOWEN
Major, USMCR
Officer in Charge

Success of this long-standing program turns on two basic elements,

which to a very large measure, are beyond the control of the United States of

America:

1.  The willingness of the defendants to make use of

the services provided by the Office of Ground Water Resources;

2.  Defendants' willingness to permit access to their properties

for the purpose of soil and other scientists to prepare the

requisite soil and land classification surveys.

2255

1        Otherwise stated, reasonable cooperation among the parties respecting

2    the use of the facilities afforded by the Office of Ground Water Resources

3    necessarily underlies the ultimate success of the proposal advanced here for

4    the trial and disposition of this cause insofar as it relates to the small

5    users.

6                WHERE AMICABLE SETTLEMENTS HAVE NOT BEEN REACHED
                          RIGHTS MUST BE PROVED;
7              NOTICE TO PARTIES; THEIR OPPORTUNITY TO BE HEARD

8        Practical and physical considerations are always present in any

9    proceeding involving multiple claims.  That is particularly true in regard to

10   actions such as this, characterized by the Court of Appeals as a

11          "plenary suit to settle the correlative right of everyone

12          interested in the waters.  The standard course in such a

13          proceeding is to enter a decree setting up all the rights

14          as of the same date." 19/

15   The "setting up" of the rights, of course, includes those upon which agreements

16   have been reached among the parties.  All persons desirous of appearing at the

17   trial of this "plenary suit" in person or by counsel are, of course, free to

18   do so.  They must be notified of the date when the United States of America will

19   offer in evidence its case in chief.  All major litigants have retained

20   counsel who will undoubtedly cross-examine Government witnesses and otherwise

21   represent their clients.  That the probing of the claims of the United States of

22   America and the evidence adduced in support of them will be comprehensive and

23   exhaustive is free from doubt.  Consequently, it would seem that the small

24   users unless desirous of being present throughout the hearing, need only be

25   in court to prove their individual rights.

26       In its case in chief the United States of America will undertake

27   proof of the lands for which it believes present and potential claims are

28   asserted in the Santa Margarita River.  However, each claimant must be

29   specifically notified and given an opportunity to appear and to prove his

30   rights if an amicable settlement has not been reached.  An orderly procedure

31   _____

32   19/  People of the State of California v. United States, 235 F.2d 647, 664
             (C.A.9, 1956).

GPO 16—69008-5

1    for notice and time when his appearance is required should be ordered and

2    that notice served by registered mail.

3            At the conclusion of the evidence in regard to each of the three

4    areas delineated above the parties would present proposed findings of

5    fact, conclusions of law and proposed decrees, to be served upon all

6    parties whether or not represented by counsel.  Objections to those proposals

7    should be invited and objections should be heard.  Where well taken the

8    proposed findings of fact would be modified to meet the objections thus made.

9    When all of the evidence respecting all of the lands and rights to the use

10   of water has been adduced and objections having been heard, then a composite

11   of the proposed findings of fact, conclusions of law and proposed decrees

12   should again be circulated affording a final opportunity to present objections.

13   After a hearing, adjustments being made where necessary, in the proposed

14   findings of fact, conclusions of law and judgment, they should be finally

15   entered by the Court.  Adoption of this course would protect the rights of

16   all concerned and would facilitate the disposition of this cause.

17                              CONCLUSION

18           There is a pressing need to have resolved the question of the

19   respective rights to the use of water claimed in the Santa Margarita River by

20   numerous persons.  An orderly procedure has been outlined in the paragraphs

21   which precede.  If adopted in substance the rights of all would be protected

22   and the entry of a decree greatly facilitated.

                              Respectfully submitted
                              for the UNITED STATES OF AMERICA


                              J. Lee Rankin
                              J. LEE RANKIN,
                              Solicitor General



                              WILLIAM E. BURBY,
                              Attorney, Department of Justice

                              William H. Veeder
                              WILLIAM H. VEEDER,
                              Attorney, Department of Justice

Dated: July 5, 1957

                                                        2257

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                  Plaintiff,

       v.

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

                 Defendants.

No. 1247-SD-C

NOTICE TO ALL DEFENDANTS
AND COURT ORDER RE PRO-
CEDURE.

You are advised that on April 18, 1957, the court made its order calling a conference of all attorneys who had appeared in the matter, for May 6, 1957, at 10:00 A.M. in court-room No. 2, Federal Building, San Diego, California. The purpose of the conference was to generally consider matters which would lead to pretrial hearings and to work out procedures for proceeding with the eventual trial of the case.

On April 18, 1957, the court made an order that the clerk enter no defaults as to parties defendant until further order of this court. In order to protect the rights of small landowners whose holdings do not justify the employment of counsel to parti-cipate throughout the entire trial, procedures are being worked out to provide for methods of trial to accommodate pro per defendants and for defaults only upon further written notice to defendants who have been served and have not answered.

You are further notified that at the conference on May 6, 1957, the attorneys for the major defendants were present, and in addition many other attorneys. There was a full discussion of issues, problems and procedures. Following the hearing the court made further orders as to procedure.

2258

1    No decisions were made on any matter of substance or

2  on any of the contentions of the parties.

3    The above matters having been discussed at the hearing

4  on May 6, 1957, and good cause appearing,

5    IT IS ORDERED:

6    1.  That the plaintiff, the United States of America,

7  mimeograph and mail to all defendants who have appeared by counsel

8  or in pro per a copy of this notice and order;

9    2.  The United States will make available to the landowners

10  or their authorized representatives such of its engineering data

11  and facilities as are available and which relate to defendants'

12  properties.  Those data when available will be at its office in

13  Rainbow, located at the San Diego and Riverside County line adja-

14  cent to the old Highway 395, approximately one city block from the

15  new Highway 395, next to Hampton's Store.  The telephone number is

16  RAndolph 8-1943.  The office hours will be from 12 o'clock noon

17  to 4:00 P.M. Monday through Friday, and special appointments may

18  be made by telephoning the office.  Nothing contained herein shall

19  indicate that the defendants shall accept or be content with the

20  engineering and factual material available at the government office.

21  It is the purpose of this order to advise defendants that the

22  United States has made such an offer of cooperation to the extent

23  that the data are available;

24    3.  That counsel for the government prepare, serve upon

25  all counsel of record, and file with the clerk by May 22, 1957, a

26  chronological list of rulings heretofore made by the trial judges

27  of this case;

28    4.  That counsel for the major parties, the United States

29  of America, Fallbrook Public Utility District, Santa Margarita

30  Mutual Water Company, State of California, the Vail Company, shall serve and

31  file by July 8, 1957, and all other counsel appearing in the case and

32  defendants appearing pro per may serve and file by July 8, 1957, a memorandum sug-

2259

GPO 16—62088-1    - 2 -

1   gesting methods of trial of this action by areas, classifications,

2   segments or other methods looking towards an expeditious trial of

3   the action, and taking into account the problems of the small

4   landowners resident in different areas involved;

5       5. That the following procedure shall govern on the service

6   of memoranda and briefs;

7       (a) Each issue shall be covered in separate briefs and they

8   shall be served upon all counsel appearing in the case;

9       (b) Extra copies in the amount of 25 shall be deposited

10   with the clerk of the court and may be obtained by the parties to

11   the cause by applying to the clerk of this court;

12       (c) The clerk is directed to mimeograph and mail to

13   all counsel of record a list of all counsel who have appeared in

14   this case to date. From time to time the clerk shall prepare and

15   mail to all counsel of record supplemental lists of counsel

16   appearing.

17       6. On July 15, 1957, at 10:00 A.M. in the court room

18   No. 2 Federal Building, 325 West F Street, San Deigo, California,

19   without the presence of the court, a meeting will be held by all

20   counsel who have appeared in the case, and all other interested

21   parties defendant who care to appear, to discuss the possibilities

22   of a physical solution or settlement of the case. Counsel for all

23   major parties are expected to be present and the court suggests

24   that counsel for the State of California act as Chairman of the

25   meeting. Counsel for the State of California is designated for

26   the reason that the State of California has only minor land inter-

27   ests consisting of tax deeded land, etc., in the area and is in a

28   more neutral position than any other counsel in the case. The

29   meeting shall be continued from day to day or time to time, until

30   in the opinion of the majority of counsel appearing for the major

31   defendants of the case, no further progress can be made.

32       It is suggested that at the conclusion of the first

2260

- 3 -

1     meeting, it be adjourned by the parties and counsel for further

2     study and consideration of the objects for which it was called,

3     and that a further meeting be held without the presence of the

4     court on the 12th day of August, 1957, in the Grand Jury Room,

5     Federal Building, San Diego, California, for further discussion of

6     the problem.

7         7.  That further pretrial hearing be held in the action

8     on the 4th day of September, 1957, at 10:00 A.M., court room No. 2.

9     Counsel for all major parties are requested to be present, and

10    all other interested parties defendant may appear.

11        8.  That at the further pretrial hearing heretofore set

12    there will be discussed the following issues:

13         (a)  The effect of the Circuit Court decision reported

14    in 235 F.2d 647, and specifically whether or not the various

15    pronouncements of the Circuit or any of them are the law of the

16    case and binding on a subsequent trial, or whether the effect of

17    the Circuit Court decision is to be limited to its holding that

18    there was error in conducting a separate trial and entering a

19    separate judgment involving some and not all of the parties in the

20    action;

21         (b)  The extent of the rights of the United States of

22    America as a riparian owner to use water outside the watershed;

23         (c)  The extent of the rights of the United States as

24    a riparian owner to use water within the watershed;

25         (d)  Whether the use by the United States of water for

26    military purposes is a beneficial use;

27         (e)  Whether the use by the United States of water for

28    military purposes on its riparian land is a proper riparian use;

29         (f)  The right of the United States to temporarily

30    impound, regulate and spread its riparian water for the purpose of

31    irrigating the vegetative cover and enriching the soil of the

32

2261

1    alluvial basin situated within Camp Pendleton and thereby, in

2    the process of irrigating the vegetative cover, recharge the

3    alluvial basin.

4          (g)  The extent of prescriptive rights claimed by the

5    United States:

6                (1)  As successor to the Rancho Santa Margarita;

7                (2)  Resulting from its uses after 1942;

8                (3)  Resulting from a combination of uses by its

9    predecessor before 1942 and the United States thereafter;

10              (4)  Prescriptive rights claimed by the United

11    States outside of the Santa Margarita River watershed;

12              (5)  Prescriptive rights to the use of water

13    claimed by the United States in connection with Lake O'Neill.

14          (h)  The extent of the appropriative rights claimed

15    by the United States in connection with Lake O'Neill, Stuart Mesa,

16    South Coast Mesa, and all other uses for which appropriative

17    claims are asserted by it; must the United States comply with

18    State procedures for the acquisition of appropriative rights?

19          (i)  The law of percolating waters, that is waters

20    which are not part of the Santa Margarita River or its tributaries

21    or underground basins which are a part of said stream.

22        9.  Counsel for all major defendants shall file and serve

23    memoranda on the above issues by August 15, 1957, and counsel for

24    all other defendants and defendants appearing pro per may serve and file

25    memoranda by such date.

26        10.  Local Rule No. 9 does not have application to the

27    pretrial conferences in this case insofar as this order is con-

28    cerned.

29

30

31    May 8, 1957
                       JAMES M. CARTER
                    United States District Judge

32

2262