LODGED

FILED

NOV 19 1957

CLERK, U.S. DISTRICT COURT
SOUTHERN, DISTRICT OF CALIFORNIA
By_____ Deputy
Deputy Clerk

IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

        v.

FALLBROOK PUBLIC UTILITY DISTRICT,
    a public service corporation of
    the State of California;
SANTA MARGARITA MUTUAL WATER COMPANY,
    a public service corporation of
    the State of California; et al.;

               Defendants,

STATE OF CALIFORNIA,

               Defendant in
               Intervention.

Civil No. 1247-SD

PROPOSED ORDER ON PRE-TRIAL

Jurisdiction:

    This Court has jurisdiction of the above-entitled action by reason of the express declaration by Congress that the United States District Court "* * * shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, * * *."

Request for Action:

    At the request of the Department of the Navy this action was instituted by the Attorney General of the United States of America.

Existence of Controversy:

    This Court finds that an actual controversy exists among the

2652

- 1 -

1  claimants of rights to the use of water from the Santa Margarita River.

2  <u>California's Request to be a Party:</u>

3      The State of California petitioned to intervene in this cause and

4  the petition was granted.

5

6                                  AGREED FACTS

7

8  A.  Description of the Santa Margarita River System and
        Its Drainage Area

9      1.  The Santa Margarita River $\underline{1/}$ is a non-navigable intermittent

10  stream having a drainage area of 742 square miles, 197 square miles of

11  which are situated in San Diego County, California, and 545 square miles

12  in Riverside County, California.  The Santa Margarita River watershed is

13  semiarid.

14      2.  Temecula Creek and Murrieta Creek have their junction at the

15  head of Temecula Canyon and there form the Santa Margarita River.

16      3.  Rising on the eastern slope of the Coastal Range in San Diego

17  County, near the present site of the Palomar Observatory, Temecula Creek

18  proceeds in a northerly and westerly direction a distance of approximately

19  fourteen miles where it enters the Pauba Grant of the Vail Estate.  After

20  entering the Pauba Grant it flows northwesterly through a portion of the

21  grant known as Nigger Valley, for a distance of a little more than three miles.

22  It then enters a narrow canyon on the Pauba Grant known as Nigger Canyon.

23  In a state of nature Temecula Creek flowed through Nigger Canyon for a

24  distance of approximately two miles.  Situated across the channel of

25  Temecula Creek at the upper end of Nigger Canyon on the Pauba Grant, in

26  the Northwest Quarter of the Northwest Quarter, Section 10, Township 8

27  South, Range 1 West, is the Vail Dam, creating a reservoir with a capacity

28  of approximately 50,000 acre-feet.

29      4.  Below the Vail Dam, Temecula Creek traverses Pauba Grant for a

30  distance of approximately eight miles.

31  _____

32  1/  See map next page, Santa Margarita River Watershed.

2653

GPO 19—60000-1

MAP - SANTA MARGARITA RIVER WATERSHED

25

26        5.   Leaving the Pauba Grant of the Vail Estate, Temecula Creek continues

27   its westerly course across the Little Temecula Grant of the Vail Estate for a dis-

28   tance of approximately one and a half miles.  That stream then enters the Temecula

29   Grant of the Vail Estate, flowing a distance of approximately two miles.

30        6.   Immediately before leaving the Temecula Grant of the Vail Estate,

31   Temecula Creek has its confluence with Murrieta Creek and below that point is

32   known as the Santa Margarita River.

2654



7.  The Santa Margarita River then enters Temecula Canyon and flows through the steep narrow gorge southerly and westerly for a distance of approximately 20 miles.  At that point, the canyon widens into the Santa Margarita Valley through which the stream meanders for a distance of 11 miles to enter the Pacific Ocean.  Though Temecula Creek, prior to its confluence with Murrieta Creek, flows alternately as a surface and subsurface stream, the Santa Margarita River throughout the canyon reach in the state of nature is a perennial surface stream.

8.  Eleven miles after entering the Temecula Canyon, the Santa Margarita River enters the Marine Corps Base, Camp Pendleton.  It then continues on its southwesterly course through Camp Pendleton, Naval Ammunition Depot, and United States Naval Hospital lands for a distance of approximately 20 miles to the Pacific Ocean.  For the full 20 miles the course of the river lies entirely within the property of the United States of America. *

The Santa Margarita River within the boundaries of the above-mentioned military establishments is at present an intermittent stream.  However, in the state of nature it continued as a perennial surface stream until it debouched from its canyon upon the alluvial plain of the Santa Margarita Valley near the headworks of the O'Neill Ditch after which it became for the remainder of its course an intermittent stream.

B.  Tributaries of the Santa Margarita River

There are several tributaries of the Santa Margarita River from tidewater to its head waters:

1.  DeLuz Creek, an intermittent stream which rises on the Santa Rosa Grant of the Vail Estate, proceeds in a westerly and southerly direction to its confluence with the Santa Margarita River several miles within the boundary lines of Camp Pendleton.

2.  Fallbrook Creek, an intermittent stream, rises east and south of the Santa Margarita River.  Most of its length is within the boundaries of Camp Pendleton and the United States Naval Ammunition Depot and it has its present terminus in Lake O'Neill, an artificial reservoir which lies within the Camp

---

* Except for such properties and lands as the Atchison, Topeka and Santa Fe
  Railroad Company may own.

2655

GPO 16-60699-1

Pendleton area.  In the state of nature, Fallbrook Creek flowed into the Santa Margarita River.

3.  Sandia Creek, an intermittent stream which rises on the Santa Rosa Grant of the Vail Estate, proceeds in a southerly direction to its confluence with the Santa Margarita River at a point a short distance above the easterly boundary of Camp Pendleton, in the Northwest Quarter (NW 1/4), Section 7, Township 9 South, Range 3 West.

4.  Rainbow Creek is an intermittent stream which rises east and south of the main channel of the Santa Margarita River and proceeds in a northerly and westerly direction to its confluence with that river a short distance above Sandia Creek.

5.  Murrieta Creek, an intermittent stream, has its source north and west of the Temecula Grant of the Vail Estate and traverses the lands of that grant before it joins Temecula Creek to form the Santa Margarita River.  Junction of the streams takes place at a point about a half mile east of the westerly boundary of Temecula Grant of the Vail Estate and a short distance east of Temecula Canyon. It has several tributaries, Cole Creek, Santa Gertrudis Creek and Warm Springs Creek.  These are all intermittent streams.

6.  Coahuila Creek, an intermittent stream, has its origin on the southwest slopes of the San Jacinto Mountains, southeast of Thomas Mountain.  From its source it proceeds south and west for a distance of approximately 13 3/4 miles passing through the Terwilliger Valley to the lower end of the Coahuila Valley. Both Terwilliger and Coahuila Valleys are alluvial filled and serve as substantial underground reservoirs.  After leaving Coahuila Valley it flows southwest 4 miles to its confluence with Wilson Creek approximately 17 3/4 miles from its point of origin.  Between its headwaters and junction with Wilson Creek it flows for 7 1/2 miles across the Coahuila Indian Reservation.  Wilson Creek flows through an alluvial filled basin to its junction with Temecula River in Nigger Valley.

7.  Penjango Creek, also known as Pechango Creek, an intermittent stream, is tributary to Temecula Creek, rising south of that stream and joining it a short distance upstream from the junction of the stream last mentioned with Murrieta Creek.   From its source to confluence Penjango Creek traverses

- 5 -

2656

1  a portion of the Little Temecula Grant, and then flows across the Temecula

2  Grant of the Vail Estate, the property upon which its junction with Temecula

3  Creek takes place.

4  Other affluents of Temecula Creek are Lancaster Creek and Arroyo

5  Seco, both of which are intermittent in character, flowing only during periods

6  of high precipitation and entering Temecula Creek above Nigger Canyon.

7  C.  Subterranean Basins Underlying Santa Margarita River

8  From its head waters to the Pacific Ocean, the watershed of the

9  Santa Margarita River System is underlaid with numerous subterranean basins.

10  They differ greatly in size and capacity.

11  Underlying the military establishments in question within the Santa

12  Margarita River watershed are one or more underground basins or segments of

13  basins, commonly known as:

14  1.  Upper or O'Neill Basin or Segment,

15  2.  Chappo or Home Ranch Basin or Segment,

16  3.  Ysidora Basin or Segment.

17  Agreement in regard to the alluvial basins will not preclude

18  defendants from contending that the named segments or basins are independent

19  basins.  Neither will it preclude the United States from contending that

20  those segments or basins are geologically and hydrologically connected and

21  constitute one basin.

22  The United States does not assert that there are any other basins

23  within the watershed of the Santa Margarita River underlying Camp Pendleton,

24  including the United States Naval Ammunition Depot, than those to which

25  reference has been made.

26  Throughout the ground-water basin or basins within the watershed of

27  the Santa Margarita River underlying Camp Pendleton are numerous wells of

28  varying depths in the alluvium.  The surface and subsurface area and the

29  character and type of the deposits penetrated by the wells, so far as the same

30  are known to the United States of America, have been analyzed.  Defendants

31  reserve the right to question the accuracy of these analyses and present

32  contradictory evidence.

2657

D.  United States Geological Survey Records

The United States Geological Survey has maintained and published records of the following principal gauging stations within the watershed of the Santa Margarita River:

| Stream | Station | Period of Record |
|---|---|---|
| Santa Margarita River | Ysidora | From February 19, 1923, to date |
| Santa Margarita River | Fallbrook | "  November 25, 1924, to date |
| Temecula Creek | Santa Margarita River near Temecula | "  January 30, 1923, to date |
| Temecula Creek | * Nigger Canyon | "  January 30, 1923, to date |
| Murrieta Creek | Temecula | "  October 1, 1930, to date |

In addition measurements have been taken for diversions at O'Neill Ditch and at other places on the Santa Margarita River System.

E.  Acquisition by the United States of America of Sites for Camp Joseph H. Pendleton, the United States Naval Hospital, and the United States Naval Ammunition Depot - General Statement

1.  The United States of America acquired fee simple title to 9,147.55 acres (the present United States Naval Ammunition Depot) of land, more or less, in San Diego County, State of California, by a declaration of taking filed January 21, 1942, in the United States District Court for the Southern District of California.  It likewise acquired fee simple title to 123,620 acres of land, more or less, in San Diego County, California, by a declaration of taking filed December 31, 1942, in the United States District Court for the Southern District of California.  Those two tracts of land thus acquired by the United States of America had historically comprised part of the Rancho Santa Margarita.  Fee simple title was likewise acquired by the United States of America to 1,676.58 acres of land, more or less, in the County of San Diego, State of California, by a declaration of taking filed December 22, 1943, in the United States District Court for the Southern District of California.  By deed dated February 8, 1949, approximately 112.11 acres of land situated in Orange County, California, were conveyed to the United States of America.  In addition to the above parcels of land, approximately 1574.61 acres of the Public Domain Lands situated in San Diego

* See Surface Water Supply of the United States, Pacific Slope Basins in California.

- 7 -

2658

1   County, California, were transferred to Camp Pendleton by Public Land Order

2   #293, dated August 8, 1945.

3       2.   Notices of acceptance by the United States of America of the

4   cession of exclusive jurisdiction over each of the parcels of land referred to

5   above, except the lands in Orange County and the lands described in Public

6   Land Order No. 293, were forwarded to the Honorable Earl Warren, Governor of

7   the State of California.   The legal effect of the notices given by the

8   representative of the United States of America is a question to be resolved by

9   the Court in this proceeding.

10       3.   The approximately 135,000 acres of land are presently utilized

11   for the following purposes, among others:

12   Camp Joseph H. Pendleton:

13       It is the function of Camp Joseph H. Pendleton to provide housing

14   and training facilities for units of the Armed Forces, to conduct training of

15   units of the Armed Forces in amphibious warfare and experimental work with

16   landing craft, landing vehicles, tracked and affiliated equipment and the

17   development thereof; to conduct combat training of the various units of the

18   United States Marine Corps, including air-ground support coordination, and

19   use of artillery, tanks and other equipment used in the conduct of modern

20   amphibious and land warfare.   In addition to the aforementioned activities,

21   it is the function of Camp Pendleton to provide logistic support for units

22   of the United States Marine Corps together with material maintenance and

23   storage facilities, for supplies and equipment and to house and train replacements

24   for subsequent assignment to various operating units of the United States

25   Marine Corps.

26   United States Naval Hospital:

27       The United States Naval Hospital, with a capacity of approximately

28   1,550 beds, established at Camp Joseph H. Pendleton, provides medical and

29   hospital services to personnel of the Armed Forces, their dependants and other

30   authorized personnel at 83 Naval shore activities located in the Southern

31   California area and provides medical and hospital care to personnel of units

32   of the United States Fleet.

2659

United States Naval Ammunition Depot:

The United States Naval Ammunition Depot, Fallbrook, California, provides facilities for the storage, segregation, reconditioning and issuing of ammunition for operating units of the United States Fleet and the United States Marine Corps and maintains ammunition stocks for shore establishments of the United States Navy located in the Southern California area.  In addition, this Naval Ammunition Depot stores and ships ammunition for use by combat elements of the United States Navy and United States Marine Corps.

Agreement as to the use of the properties above mentioned neither constitutes an admission respecting the utilization of the entire area for military purposes nor does it constitute an admission respecting the extent or effect of the exclusive jurisdiction of the United States of America over the property in question.

4.  The installations referred to in the preceding paragraphs are disclosed on the accompanying map.

5.  The Santa Margarita River in its course traverses virtually the length of Camp Pendleton--Naval Ammunition Depot--United States Naval Hospital lands from east to west for a distance of approximately 20 miles.  There are no users below Camp Pendleton on the Santa Margarita River for the United States of America owns the lands on both banks of that stream from the point where the Santa Margarita River enters upon the military establishments above mentioned to the point of confluence of the river with the Pacific Ocean, except for such properties and lands as the Atchison, Topeka and Santa Fe Railroad Company may own.

6.  A portion of the approximately 135,000 acres of lands owned by the United States of America comprising the military establishments in question is riparian to the Santa Margarita River.

7.  By a stipulated judgment, Exhibit A of the complaint in this case, a defendant in this action, the Vail Estate, and the Rancho Santa Margarita, a corporation, predecessor in interest of the United States of America, concluded protracted litigation between themselves over their respective rights in the Santa Margarita River.  By an order of this Court there was filed July 8, 1952

2660

- 9 -

the following stipulation between the United States of America and the

Vail Estate:

"Whereas, on December 27, 1940, a judgment was entered in that action entitled Rancho Santa Margarita, a corporation, Plaintiff, v. N. R. Vail, et al., Defendants, in the Superior Court of the State of California in and for the County of San Diego, case No. 42850; and

"Whereas, the United States of America, during the years 1941-1943 acquired all the lands and rights to the use of water in the Temecula-Santa Margarita River which had been owned by the Rancho Santa Margarita, Plaintiff in the action referred to in the preceding paragraph.  By that acquisition the United States of America succeeded to all the rights, title, and interest of the Rancho Santa Margarita in the Temecula-Santa Margarita River; and

"Whereas, on January 25, 1951, the United States of America instituted the above-entitled action, incorporating in the complaint filed therein, a copy of said judgment of December 27, 1940, as Exhibit A to its complaint.  To the end that a full declaration of Plaintiff's rights in and to the waters of said River as against all other users thereof and claimants thereto might be obtained in this action, Plaintiff named among many other Defendants, Mary Vail Wilkinson, Mahlon Vail, Edward N. Vail, Margaret Vail Wise, and Nita M. Vail, Trustees herein collectively referred to as the Vails. Notwithstanding the naming of the Vails as parties defendant in the present action the United States of America and the Vails are mutually in agreement that as between themselves the said judgment of December 27, 1940, is and shall continue to be binding upon them and each of them.

"Accordingly, it is hereby stipulated and agreed by and between the United States of America, Plaintiff herein, and

- 10 -

2661

the Vails Defendants herein, through their respective counsel,
as follows:

"1.  That the rights and duties of Plaintiff, United
States of America, and the Vails, in and to the waters of the
Temecula-Santa Margarita River as between Plaintiff and said
Vails, are those fixed, determined, and declared in that
certain judgment entered on December 27, 1940, in the case of
Rancho Santa Margarita, a corporation, Plaintiff, v. N. R.
Vail, et al., Defendants, in the Superior Court of the State
of California in and for the County of San Diego, case No. 42850.

"2.  That neither Plaintiff herein nor said Vails claim
or will claim, in the within action, any rights or duties as
against the other, other than or different from, those fixed,
determined and declared in said judgment of December 27, 1940.

"3.  That no issue is or will be raised in this litiga-
tion as to the operations of the parties under said judgment,
it being understood that neither party will claim in this
litigation that the other has failed in any way to comply with
said judgment of December 27, 1940.

"4.  The introduction of a properly certified copy of the
said judgment of December 27, 1940 in the record in this case
will constitute proof of the rights and duties of the respective
parties hereto as against each other as specified in said judgment.

"Signed this 23rd day of Oct. 1951."

By agreeing to the facts set forth in Paragraph 7, the defendants do
not admit the admissibility of the judgment or stipulation in this action
which has arisen between the United States of America and the defendants named
herein or waive any rights to have said stipulated judgment or stipulation
deleted from the records in the proceeding.

8.  That the predecessors in interest of the United States in
ownership of Camp Pendleton and the Naval Ammunition Depot did not prior
to the effective date of the State Water Commission Act of 1913 post, file

2662

1   or record any notices of appropriation of the waters of the Santa Margarita

2   River system.

3       9.  That Plaintiff owns approximately 6,869.6 acres of land which

4   lie within the watershed of DeLuz Creek and is the owner in fee of

5   approximately 3,798.9 acres of land lying within the watershed of Fallbrook

6   Creek.

7       10.  The Plaintiff is the owner in fee of approximately 7,258.9

8   acres of land lying within the watershed of Pilgrim Creek and the owner in

9   fee of approximately 1942.1 acres of land lying within the watershed of

10  Windmill Creek.  That said Windmill Creek and said Pilgrim Creek drain into

11  and are part of the watershed of the San Luis Rey River.

12      F.  Santa Margarita Mutual Water Company

13      1.  The Santa Margarita Mutual Water Company is a mutual water

14  company organized and existing under and pursuant to the laws of the State

15  of California and is currently in good standing.

16      2.  Application No. 11578 to appropriate water was filed October 4,

17  1946, by the Santa Margarita Mutual Water Company with the State of California,

18  Department of Public Works, Division of Water Resources, State Engineer,

19  now the California State Water Rights Board.  The application was for

20  sixty (60) cubic feet of water per second from the Santa Margarita River.

21      In addition to the direct flow right above mentioned, the

22  application in question is for a storage right of 5,000 acre-feet of water

23  from Temecula Creek at the approximate site of the Vail Dam and Reservoir.

24      3.  Application No. 12152 to appropriate water was filed November 12,

25  1947, by the Santa Margarita Mutual Water Company with the State of California,

26  Department of Public Works, Division of Water Resources, State Engineer,

27  now the California State Water Rights Board.   The application was for

28  60,000 acre-feet of water from the Santa Margarita River for storage.

29      G.  Fallbrook Public Utility District

30      1.  The Fallbrook Public Utility District is a public agency of the

31  State of California, organized and existing under and pursuant to the Public

32  Utility District Act of the State of California, and is currently in good

standing.

2663

2. Application No. 11586 to appropriate water was filed October 11, 1946, by the Fallbrook Public Utility District with the State of California, Department of Public Works, Division of Water Resources, State Engineer, now the California State Water Rights Board. The application was for 2 1/2 (two and one-half) cubic feet of water per second from the Santa Margarita River.

3. Pursuant to said last-mentioned application, there was issued on February 18, 1948, to the Fallbrook Public Utility District permit No. 7033. That permit was approved subject to vested rights. The quantity of water to be diverted pursuant to it was not to exceed 2.5 cubic feet per second from April 1 to about November 1st of each year and throughout the remainder of the year as required for domestic and municipal uses.

4. Application No. 11587 to appropriate water was filed October 11, 1946, by the Fallbrook Public Utility District with the State of California, Department of Public Works, Division of Water Resources, State Engineer, now the California State Water Rights Board. The application was for 10,000 acre-feet of water for storage from the Santa Margarita River.

5. Pursuant to said last-mentioned application, there was issued on April 23, 1951, to the Fallbrook Public Utility District permit No. 8511. That permit was approved subject to vested rights. The quantity of water to be impounded pursuant to it was not to exceed 10,000 acre-feet for storage to be collected from January 1 to December 31 of each year, for irrigation, domestic and municipal uses.

6. Application No. 12178 to appropriate water was filed November 28, 1947, by the Fallbrook Public Utility District with the State of California, Department of Public Works, Division of Water Resources, State Engineer, now the California State Water Rights Board. The application is for storage of 10,000 acre-feet of water per annum, 500 acre-feet from Rainbow Creek and 9,500 acre-feet from Santa Margarita River.

7. Application No. 12179 to appropriate water was filed November 28, 1947, by the Fallbrook Public Utility District with the State of California, Department of Public Works, Division of Water Resources, State Engineer, now the California State Water Rights Board. The application is for storage

2684

1  of 10,000 acre-feet of water per annum, 1,500 acre-feet from Sandia Creek

2  and 8,500 acre-feet from Santa Margarita River.

3      8.  The legal title to whatever rights Fallbrook Public Utility

4  District may have acquired or may hereafter acquire to the waters of the Santa

5  Margarita River system by virtue of its said applications to and permits from

6  the State of California or otherwise, are vested in the District in trust for

7  the uses and purposes set forth in the Public Utility District Act of the

8  State of California and the beneficiaries of the trust are the landowners and

9  water users in the District.

10     H.  State of California

11     1.  The State of California, defendant in intervention, has entered into

12  the following stipulation with the United States of America:

13      "On the 15th day of August, 1951, the People of the State

14      of California, in accordance with invitation of the United

15      States of America, petitioned this Court to intervene in this

16      litigation.  On that date an Order was allowed and entered by

17      this Court granting the Petition.

18      "For the clarification of the issues in this litigation,

19      and for the benefit of all of the parties to this cause, it is

20      hereby stipulated:

21              "I

22      "That in Paragraphs VIII and IX of plaintiff's Complaint

23      herein, and in Paragraphs 2 and 3 of the Prayer of said Complaint,

24      the word 'paramount' is used in the same sense in which that word

25      is used in the second paragraph, on page 374 of the opinion of

26      the Supreme Court of California in the case of Peabody v. Vallejo,

27      2 Cal. 2d 351 (fourth paragraph on page 494, 40 Pac. 2d 486.)

28              "II

29      "That in this cause, the United States of America claims

30      only such rights to the use of water as it acquired when it

31      purchased the Rancho Santa Margarita, together with any rights

32      to the use of water which it may have gained by prescription

2665

or use, or both, since its acquisition of the Rancho Santa
Margarita.

"III

"That the United States of America claims by reason of its
sovereign status no right to the use of a greater quantity of
water than is stated in Paragraph II, hereof.

"IV

"That the rights of the United States of America to the use
of water herein are to be measured in accordance with the laws
of the State of California.

"V

"That the parties to this Stipulation will request the
entry of a Pretrial Order by this Court defining the issues
in this cause, in conformity with the statements contained
in this Stipulation.

"VI

"That there will be a full, complete and mutual exchange
of data and information as to the subject matter of this cause
collected by the respective parties to this Stipulation,
including data respecting the issuance of any permits or
licenses issued by the State of California in connection
with the rights to the use of water of the Santa Margarita
River. Such exchange of information by the United States,
will be subject to clearance by the Commanding Officer, Camp
Joseph H. Pendleton, in respect to military security, as
determined by said Officer.

"Dated: November 29, 1951."

2. That stipulation has been approved by the Court and ordered
filed.

3. Counsel for the State of California are presently informed that
the State of California has some land ownership and has some liens on lands
within the Santa Margarita system watershed. These land ownerships change

- 15 -

1   from time to time as most of them concern tax deeded lands and lands which
2   have escheated to the State.  An investigation of the present status of such
3   ownerships is now under way and leave will be asked to file an amended answer
4   within a reasonable time before trial to allege such ownerships.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

2667