INDEX TO CHANGES MADE IN

UNITED STATES OF AMERICA PROPOSED ORDER ON PRE-TRIAL

TRANSMITTED TO THE COURT ON 18 NOVEMBER 1957

# FILED

## DEC 3 1957

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
Deputy Clerk

Page 5.

    Line 23:  Footnote symbol added.

    Line 28:  "Pechanga" substituted for "Pechango".

    Footnotes:  Footnote 1/ added.

Page 7.

    Lines 5 through 11:  New column "Present River Miles from Ocean" added.

    Line 7:  Added symbol "2/".

    Line 10:  Added symbol "2/", deleted symbol "*".

    Line 14:  Deleted "Joseph E.".

    Line 18:  Inserted "decree on a" following "by a".

    Line 21:  Inserted "decree on a" following "by a".

    Line 22:  Substituted "January 5, 1943" for "December 31, 1942".

    Line 27:  Inserted "decree on a" following "by a".

    Line 32:  Substituted "1,700.0" for "1,574.61".

    Footnotes:  Substituted symbol "2/" for symbol "*".

Page 8.

    Line 12:  Deleted "Joseph E.".

    Line 13:  Deleted "Joseph E.".

    Line 28:  Deleted "Joseph E.".

Page 14.

    Line 10:  Inserted new paragraph beginning "9.  On January 14, 1955,".

2733

1  Pendleton area.  In the state of nature, Fallbrook Creek flowed into the Santa

2  Margarita River.

3       3.  Sandia Creek, an intermittent stream which rises on the Santa Rosa

4  Grant of the Vail Estate, proceeds in a southerly direction to its confluence with

5  the Santa Margarita River at a point a short distance above the easterly boundary

6  of Camp Pendleton, in the Northwest Quarter (NW 1/4), Section 7, Township 9 South,

7  Range 3 West.

8       4.  Rainbow Creek is an intermittent stream which rises east and south of

9  the main channel of the Santa Margarita River and proceeds in a northerly and west-

10  erly direction to its confluence with that river a short distance above Sandia Creek.

11       5.  Murrieta Creek, an intermittent stream, has its source north and west

12  of the Temecula Grant of the Vail Estate and traverses the lands of that grant

13  before it joins Temecula Creek to form the Santa Margarita River.  Junction of the

14  streams takes place at a point about a half mile east of the westerly boundary of

15  Temecula Grant of the Vail Estate and a short distance east of Temecula Canyon.

16  It has several tributaries, Cole Creek, Santa Gertrudis Creek and Warm Springs

17  Creek.  These are all intermittent streams.

18       6.  Coahuila Creek, an intermittent stream, has its origin on the south-

19  west slopes of the San Jacinto Mountains, southeast of Thomas Mountain.  From its

20  source it proceeds south and west for a distance of approximately 13 3/4 miles

21  passing through the Terwilliger Valley to the lower end of the Coahuila Valley.

22  Both Terwilliger and Coahuila Valleys are alluvial filled and serve as substantial

23  underground reservoirs. 1/ After leaving  Coahuila Valley it flows southwest 4 miles

24  to its confluence with Wilson Creek approximately 17 3/4 miles from its point of

25  origin.  Between its headwaters and junction with Wilson Creek it flows for

26  7 1/2 miles across the Coahuila Indian Reservation.  Wilson Creek flows through

27  an alluvial filled basin to its junction with Temecula River in Nigger Valley.

28       7.  Penjango Creek, also known as Pechanga Creek, an intermittent

29  stream, is tributary to Temecula Creek, rising south of that stream and joining

30  it a short distance upstream from the junction of the stream last mentioned with

31  Murrieta Creek.  From its source to confluence Penjango Creek traverses

1/  Note Map, Agreed Facts, page 3.

-5-

1          D.  United States Geological Survey Records

2          The United States Geological Survey has maintained and published

3   records of the following principal gauging stations within the watershed of

4   the Santa Margarita River:

| Stream | Station | Present River Miles from Ocean | Period of Record |
|--------|---------|-------------------------------|------------------|
| Santa Margarita River | Ysidora | 2.42 | Feb 19, 1923 to date |
| Santa Margarita River | Fallbrook | 18.73 | Nov 25, 1924 to date [2/] |
| Temecula Creek | Santa Margarita River near Temecula | 29.9 | Jan 30, 1923 to date |
| Temecula Creek | Nigger Canyon | 41.07 | Jan 30, 1923 to date [2/] |
| Murrieta Creek | Temecula | 30.4 | Oct 1, 1930 to date |

12  In addition measurements have been taken for diversions at O'Neill Ditch

13  and at other places on the Santa Margarita River System.

14          E.  Acquisition by the United States of America of Sites for
                Camp Pendleton, the United States Naval Hospital, and the
15              United States Naval Ammunition Depot-General Statement

16          1.  The United States of America acquired fee simple title to 9,147.55

17  acres (the present United States Naval Ammunition Depot) of land, more or less,

18  in San Diego County, State of California, by a decree on a declaration of taking

19  filed January 21, 1942, in the United States District Court for the Southern

20  District of California. It likewise acquired fee simple title to 123,620 acres

21  of land, more or less, in San Diego County, California, by a decree on a declar-

22  ation of taking filed January 5, 1943, in the United States District Court for

23  the Southern District of California. Those two tracts of land thus acquired by

24  the United States of America had historically comprised part of the Rancho Santa

25  Margarita. Fee simple title was likewise acquired by the United States of

26  America to 1,676.58 acres of land, more or less, in the County of San Diego,

27  State of California, by a decree on a declaration of taking filed Decem-

28  ber 22, 1943, in the United States District Court for the Southern District

29  of California. By deed dated February 8, 1949, approximately 112 11 acres

30  of land situated in Orange County, California, were conveyed to the United

31  States of America. In addition to the above parcels of land, approxi-

32  mately 1,700.00 acres of the Public Domain Lands situated in San Diego

2/ See Surface Water Supply of the United States, Pacific Slope Basins in
   California.

-7-                      December 3, 1957, Revision

1  County, California, were transferred to Camp Pendleton by Public Land Order

2  #293 dated August 8, 1945.

3  　　2.  Notices of acceptance by the United States of America of the

4  cession of exclusive jurisdiction over each of the parcels of land referred to

5  above, except the lands in Orange County and the lands described in Public

6  Land Order No. 293, were forwarded to the Honorable Earl Warren, Governor of

7  the State of California.  The legal effect of the notices given by the

8  representative of the United States of America is a question to be resolved by

9  the Court in this proceeding.

10  　　3.  The approximately 135,000 acres of land are presently utilized

11  for the following purposes; among others:

12  Camp Pendleton:

13  　　It is the function of Camp Pendleton to provide housing and

14  training facilities for units of the Armed Forces, to conduct training of

15  units of the Armed Forces in amphibious warfare and experimental work with

16  landing craft, landing vehicles, tracked and affiliated equipment and the

17  development thereof; to conduct combat training of the various units of the

18  United States Marine Corps, including air-ground support coordination, and

19  use of artillery, tanks and other equipment used in the conduct of modern

20  amphibious and land warfare.  In addition to the aforementioned activities,

21  it is the function of Camp Pendleton to provide logistic support for units

22  of the United States Marine Corps together with material maintenance and

23  storage facilities, for supplies and equipment and to house and train replace-

24  ments for subsequent assignment to various operating units of the United

25  States Marine Corps.

26  United States Naval Hospital:

27  　　The United States Naval Hospital, with a capacity of approximately

28  1,550 beds, established at Camp Pendleton, provides medical and hospital

29  services to personnel of the Armed Forces, their dependents and other

30  authorized personnel at 83 Naval shore activities located in the Southern

31  California area and provides medical and hospital care to personnel of units

32  of the United States Fleet.

-8-

December 3, 1957, Revision

2736

1   of 10,000 acre-feet of water per annum, 1,500 acre-feet from Sandia Creek

2   and 8,500 acre-feet from Santa Margarita River.

3           8.  The legal title to whatever rights Fallbrook Public Utility

4   District may have acquired or may hereafter acquire to the waters of the Santa

5   Margarita River system by virtue of its said applications to and permits from

6   the State of California or otherwise, are vested in the District in trust for

7   the uses and purposes set forth in the Public Utility District Act of the

8   State of California and the beneficiaries of the trust are the landowners and

9   water users in the District.

10          9.  On January 14, 1955, the Fallbrook Public Utility District filed

11  a proceeding in eminent domain in the Superior Court of the State of California

12  in and for the County of San Diego, entitled "Fallbrook Public Utility District

13  vs. Martin et al," being case number 194426 of the files of said Court.  Said

14  action seeks to condemn approximately 1385 acres of land in the watershed of

15  the Santa Margarita River for construction of a dam and reservoir.

16          H.  State of California

17          1.  The State of California, defendant in intervention, has entered

18  into the following stipulation with the United States of America:

19          "On the 15th day of August, 1951, the People of the State
        of California, in accordance with invitation of the United
20      States of America, petitioned this Court to intervene in this
        litigation.  On that date an Order was allowed and entered by
21      this Court granting the Petition.

22          "For the clarification of the issues in this litigation,
        and for the benefit of all parties to this cause, it is
23      hereby stipulated:

24                                  "I

25          "That in Paragraphs VIII and IX of Plaintiff's Complaint
        herein, and in Paragraphs 2 and 3 of the Prayer of said Complaint,
26      the word 'paramount' is used in the same sense in which that word
        is used in the second paragraph, on page 374 of the opinion of
27      the Supreme Court of California in the case of Peabody v. Vallejo,
        2 Cal. 2d 351 (fourth paragraph on page 493  40 Pac. 2nd 486)
28
                                    "II
29
            "That in this cause, the United States of America claims
30      only such rights to the use of water as it acquired when it
        purchased the Rancho Santa Margarita, together with any rights
31      to the use of water which it may have gained by prescription

32

                                -14-

                                            December 3, 1957, Revision
                                                            2737

INDEX TO CHANGES MADE IN THE CONTENTIONS OF THE

UNITED STATES OF AMERICA

WHICH WERE INCLUDED IN PRE-TRIAL ORDER DATED

25 AUGUST 1952

Page 1.

    Lines 14 through 21 (paragraph 1b):  new paragraph 1b substituted.

    Footnotes:  footnote 1 added.

Page 2.

    Line 4 (paragraph 1c):  sentence inserted adding list of basins.

    Line 17 (paragraph 1c):  delete "for a short distance".

    Line 20 (paragraph 1c):  delete "and separated from the Temecula Basin".

    Line 25 (paragraph 1c):  delete "the"; substitute "Canyon" for "Gorge".

    Footnotes:  delete footnotes 1 and 2; add new footnote 1.

Page 3.

    Line 4 (paragraph 1c):  delete "flood".

    Line 19 (paragraph 2):  delete "Joseph H.".

    Line 21 (paragraph 2):  delete "an"; substitute "exceptions" for "exception".

    Footnotes:  delete footnote 3.

Page 4.

    Line 14 (paragraph 6):  seven sentences added.

    Lines 23 through 25 (paragraph 8):  delete sentence beginning "Thirty days prior".

    Footnotes:  delete footnotes 4, 5, 6, and 7.

Page 5.

    Lines 2 through 7 (paragraph 9):  new paragraph 9 substituted.

    Lines 8 through 10 (paragraph 10):  sentence beginning "Long prior to" rewritten.

    Lines 14 through 18 (paragraph 10):  sentence beginning "Thirty days prior" deleted.

    Line 20 (paragraph 10):  delete "of America"; add at end of sentence "itself".

    Line 30 (paragraph 13):  delete "high water table of the".

    Footnotes:  delete footnote 8.

Page 6.

    Lines 2 and 3 (paragraph 13):  delete "That natural subirrigation from".

    Line 21 (paragraph 15):  substitute "it" for "the United States of America".

    Line 22 (paragraph 16):  substitute "approximately 38,000" for "37,944*".

    Line 25 (paragraph 17):  substitute "approximately 38,000" for "37,944".

    Line 26 (paragraph 17):  substitute "approximately 19,000" for "18,701.1*".

    Line 27 (paragraph 17):  substitute "approximately 4,600" for "4,601.9".

    Footnotes:  delete footnotes 9 and 10.

Page 7.

    Line 2 (paragraph 18):  substitute "approximately 69,250" for "69,237.1*".

    Lines 8 through 12 (paragraph 19):  delete sentence beginning "Thirty days prior"; new sentence added to paragraph 19.

    Line 18 (paragraph 20):  delete "Joseph H." .

    Lines 23 through 25 (paragraph 21):  first sentence rewritten.

    Footnotes:  delete footnote 11 and sentence following asterisk.

Page 8.

    Lines 1 through 5 (paragraph 21):  delete sentence beginning "To accomplish the maximum".

    Lines 6 through 11 (paragraph 22):  delete paragraph 22.

    Line 12 (paragraph 23):  renumber paragraph from "23" to "22".

    Lines 12 through 16 (paragraph 23):  sentence rewritten.

    Line 17 (paragraph 23):  delete "and the use and re-use of water will it be" and substitute therefor "is it".

    Line 18 (paragraph 23):  insert "minimum" after "possible to meet the".

    Lines 20 through 27 (paragraph 24):  delete paragraph 24.

    Footnotes:  delete footnotes 12 and 13.

Page 9.

    Lines 1 through 11 (paragraphs 25 and 26):  delete paragraphs 25 and 26.

    Line 12 (paragraph 27):  renumber paragraph from "27" to "23".

    Lines 20 and 21 (paragraph 27):  delete "Fallbrook Public Utility District and Santa Margarita Mutual Water Company, or the State of California" and substitute therefor "except as provided in that Stipulated Judgment".

    Line 22 (paragraph 28):  renumber paragraph "28" to "24".

    Line 27 (paragraph 29):  renumber paragraph "29" to "25".

2739

Page 10.

    Line 2 (paragraph 30):  renumber paragraph "30" to "26".

    Line 6 (paragraph 31):  paragraph 31 rewritten and renumbered 27.

    Line 14 (between paragraphs 31 and 32):  new paragraph numbered 28 added.

    Line 15 (paragraph 32):  renumber paragraph "32" to "29".

    Line 19 (between paragraphs 32 and 33):  new paragraph numbered 30 added.

    Line 20 (paragraph 33):  renumber paragraph "33" to "31".

    Line 24 (paragraph 34):  renumber paragraph "34" to "32".

    Line 27 (paragraph 35):  renumber paragraph "35" to "33".

    Line 29 (paragraph 35):  one sentence added.

    Line 30 (paragraph 36):  renumber paragraph "36" to "34".

Page 11.

    Line 3 (paragraph 37):  paragraph 37 rewritten and renumbered 35.

    Line 8 (paragraph 38):  paragraph 38 rewritten and renumbered 36.

    Line 12 (paragraph 39):  paragraph 39 rewritten and renumbered 37.

Additional paragraphs numbered 38 and 39 follow the original paragraph 39.

2740

PROPOSED AND TENTATIVE CONTENTIONS OF THE UNITED STATES OF AMERICA

1.  In addition to the physical features of the Santa Margarita River system contained in the Agreed Facts, the United States contends that:

a.  Below the Vail Dam, Temecula Creek traverses a highly porous area where that stream, except during periods of high runoff, disappears into the Temecula Basin.  In a state of nature Temecula Creek customarily again becomes a surface stream at a distance of about three miles from the present site of the Vail Dam.  Presently, however, due to the control of the stream arising from the mentioned dam and the draft upon Temecula Basin by the Vail Estate, Temecula Creek reappears as a surface stream at a greater distance from the mouth of Nigger Canyon dependent upon the draft and the period elapsing between releases from Vail Reservoir.

b.  Since 1943 the increased diversions by water users from the Santa Margarita River and its tributaries have so reduced the quantities of water reaching Camp Pendleton and the other military establishments that the Santa Margarita River within the Naval Reservation is no longer a perennial surface stream, but is now an intermittent stream with no measurable flow during most of the year.

c.  From its head waters to the Pacific Ocean the Santa Margarita River passes over and through numerous ground water basins. [1]/  The water in those basins is contained by bedrock or other impervious material. The basins are filled with alluvial deposits of varying degrees of porosity.  The basins differ greatly in size and in capacity.  The waters of the Santa Margarita River in its course through the valley penetrate and fill the voids of the porous alluvium.  When the water of the stream sinks to bedrock or the other impervious material comprising the beds of the basins, in which the detrital material lies, it spreads out laterally filling the basins.  When completely charged, the waters of the basins support the surface stream and progress slowly

_____

1/  Note map, Agreed Facts, page 3.

-1-

1    downstream through the permeable material.

2        Ground water basins of the character described underlie Temecula

3    Creek in portions of Oak Grove Valley; and Lancaster Creek in Lancaster

4    Valley.  Other basins are Arroyo Seco, Wilson Valley, Lewis Valley,

5    Sage Valley, Glenoak Valley, De Luz Valley, Reed Valley, Burnt Valley,

6    Chihuahua Valley, Devil's Hole, Dameron Valley, Culp Valley, Diamond,

7    Domenigoni, French, Los Alamos, Santa Gertrudis, Tucalota, Wildomar,

8    Terwilliger, Coahuila, Lancaster, Aguanga, Dodge, Nigger, Oakgrove,

9    Radec, Pechanga and Rainbow.[1]  Temecula Basin, one of the largest in

10   the entire watershed of the Santa Margarita River, is located on the

11   property of the Vail Estate.  This large T-shaped alluvial deposit

12   area has the stem of the T along the main channel of Temecula Creek

13   for a distance of approximately eight miles, varying in width from

14   two-thirds of a mile to a mile and a half.  That area of the Temecula

15   Basin immediately below the present site of Vail Dam is comprised of

16   coarse, highly porous material and is known as the "out wash".  Into

17   that "out wash" except in periods of extremely heavy precipitation,

18   Temecula Creek sinks.  About three miles below the "out wash" the

19   Temecula Basin becomes an artesian area from which Temecula Creek again

20   emerges as a surface stream.

21       The right arm of the T-shaped alluvial basin extends northward

22   underlying Murrieta Creek above that stream's confluence with Temecula

23   Creek.  The left arm of the T-shaped Temecula alluvial basin extends

24   southward beneath Penjango Creek.

25       Underlying Murrieta Creek is another large alluvial basin known as the

26   Murrieta Basin.  That is comprised of valley fill similar to that found in

27   the other basins.

28       Due to the existence of granitic rock immediately underlying the

29   stream from approximately the point of confluence of Temecula Creek with

30   Murrieta Creek to the mouth of Temecula Canyon, the Santa Margarita River

31   in the state of nature is a surface stream.  That granitic underlay of

32   the stream continues from the point mentioned across the boundary of

[1]/ Note map, Agreed Facts, page 3.

-2-

2742

1   Camp Pendleton to a point approximately one and one-half miles be-

2   low the confluence of De Luz Creek with the Santa Margarita River.

3   At that point the stream opens out into a rather broad alluvial plain.

4   That alluvial area extends from the point last mentioned to tidewater,

5   constituting a large ground-water basin.  That ground-water basin is

6   comprised of a relatively coarse and loose porous valley fill at the

7   upstream and comparable to the "out wash" area of the Temecula Basin

8   above described.  Approaching the ocean the character of the alluvium

9   becomes increasingly fine and tight.

10   The alluvial ground-water basin underlying the Santa Margarita

11   River within Camp Pendleton and the other military establishments

12   is geologically and hydrologically interconnected, comprised, however,

13   of three separate segments which lend themselves readily to arbitrary

14   subdivisions.  They are:

15   1.  Upper or O'Neill Basin Component,
16   2.  Chappo or Home Ranch Basin Component,
      3.  Ysidora Basin Component.

17   2.  Exclusive jurisdiction over the approximately 135,000 acres of

18   land constituting Camp Pendleton, United States Naval Hospital and the United

19   States Naval Ammunition Depot resides in the United States of America.  By

20   reason of exclusive jurisdiction, with exceptions having no bearing here, the

21   police power of the State of California has no application and is without force

22   and effect in regard to the lands, buildings, or any of the components con-

23   stituting the installations or the rights to the use of water claimed by the

24   United States of America.

25   3.  Construction of the military installations in question commenced

26   immediately upon the acquisition by the United States of America of the lands

27   to which reference has been made.  Those installations since that date and all

28                                   -3-

29                              December 3, 1957, Revision

30

31

32

27443

1  of the approximately 135,000 acres of land have been continuously utilized for
2  military purposes.

3      4. A water system was constructed and is now operated to serve the
4  military installations.

5      5. Water has been delivered through the distribution system to the
6  military installation since the properties were acquired by the United States
7  of America. Since that date water has likewise been delivered to agricultural
8  lands when the lands and water were not required for military purposes.

9      6. All of the land and rights to the use of water acquired from the
10  Rancho Santa Margarita and all of the water acquired through prescription or use
11  or both, are primarily for military purposes. To avoid possible waste of water
12  entails the utilization of it for agricultural purposes when the water is not
13  immediately needed for military purposes. When the United States of America
14  acquired by condemnation the properties comprising the Rancho Santa Margarita
15  fee simple title passed to it of all of the rights to the use of water of the
16  Rancho Santa Margarita of any kind and character for use both within and outside
17  of the watershed. The United States of America further contends that to the ex-
18  tent that its needs either within or outside of the watershed exceed the rights
19  which it acquired from the Rancho, it has acquired those additional rights by in-
20  verse condemnation, if those rights were not already vested in it. The military
21  use for which the rights are being exercised is a proper riparian use and its
22  excercise of those rights is reasonable. Should it be found that the use is not
23  reasonable, then to that extent it has by inverse condemnation acquired these
24  additional rights. Congress has either expressly or impliedly authorized the ac-
25  quisition of all of the rights to the use of water to which the United States of
26  America is here making claim. To the extent that the United States of America
27  is utilizing non-riparian rights in excess of those which it acquired by condemnation
28
29
30
31
32

-4-

December 3, 1957, Revision

2744

1   from the Rancho Santa Margarita, it is exercising rights already vested in it by

2   reason of its original ownership of all public lands at the time of the

3   Treaty of Guadalupe Hidalgo.  The United States of America does not contend that

4   it may invade any vested rights.

5

6          7.  Water has been continuously diverted from the Santa Margarita River

7   and from the ground-water basin underlying the military establishments in question

8   by the United States of America for military purposes and agricultural purposes

9   since the acquisition of the lands in question.  The surface stream and the ground-

10  water basin underlying those military establishments constitute a single source of

11  supply.

12         8.  For both military and agricultural purposes the United States of

13  America has historically utilized its rights to the use of water both within and

14  outside of the watershed of the Santa Margarita River.

15         9.  Approximately 23,000 acre-feet of water annually from the Santa

16  Margarita River is required to meet the demands of the military establishments here

17  involved in the event of full mobilization for war.

18         10.  In the year 1883, long prior to the acquisition by the United States

19  of the lands comprising Camp Pendleton and the other military establishments, its

20  predecessors in interest had diverted for agricultural purposes and had impounded

21  large quantities of water from the Santa Margarita River in Lake O'Neill.  For a

22  similar period the predecessors in interest of the United States had diverted from

23  the surface flow or pumped from the underground basin underlying the river, large

24  quantities of water of the Santa Margarita River out of the watershed of that stream

25  for agricultural uses.  Moreover, the supply available from the Santa Margarita River

26  system has been historically insufficient to meet the demands of the predecessors in

27  interest of the United States and of the United States itself.

28

29                              -5-

30                              December 3, 1957, Revision

31

32

2745

1    11. Historically the waters from the Santa Margarita River were diverted

2 from the stream by the predecessors in interest of the United States of America

3 and utilized upon the riparian lands for agricultural purposes.  Large quantities

4 of the water were likewise pumped from the ground-water basin underlying those

5 riparian lands and were likewise used for agricultural purposes.

6    12. Large quantities of both the surface stream of the Santa Margarita

7 River and of the ground-water basin underlying that stream were historically

8 used by the predecessors in interest of the United States of America for stock

9 watering and domestic purposes.

10    13. The ground-water basin above described subirrigated the entire sur-

11 face area of the basin, greatly enhancing the production of natural forage, thus

12 increasing the carrying capacity for livestock of the lands with the attendant in-

13 crement in the value of the lands.  The ground-water basin above described since

14 the acquisition of the lands in question by the United States of America has con-

15 tinued to subirrigate the natural forage, providing feed for livestock and main-

16 taining a coverage of the surface area necessary for the present military use.

17    14. Though the Santa Margarita River is an intermittent stream, it has

18 historically for brief periods raised to higher levels within the natural high

19 water channel of the stream, overflowing lands which during the long dry periods

20 receive only subirrigation from the ground-water basin underlying the area.

21 That overflow watered, enriched, and fertilized the lands resulting in increased

22 productivity of the land and enhancement of its value.

23    15. The United States of America as owner of the lands is invested

24 with title to rights to the use of water in the Santa Margarita River for the

25 subirrigation and the overflow above mentioned in addition to the other rights

26 to the use of water above described and subsequently to be described.  Obstruction

27 or diversion of the natural flow of the Santa Margarita River upstream from

28 properties owned by the United States of America constitutes an invasion of

29 any and all of the rights of the United States of America to the use of water to

30 the irreparable damage of it.

31    16. There are approximately 38,000 acres of land riparian to the Santa

32 Margarita River within the boundaries of Camp Pendleton, the United States Naval

-6-

1    Ammunition Depot and the United States Naval Hospital.

2        17.  Of those approximately 38,000 acres of land riparian to the Santa

3    Margarita River approximately 19,000 acres are irrigable and are susceptible of

4    practicable and profitable irrigation, of which approximately 4,600 irrigable

5    acres are within the United States Naval Ammunition Depot.

6        18.  The irrigation requirements for practicable and profitable irri-

7    gation for those lands is approximately 69,250 acre feet a year.

8        19.  In addition to the riparian and irrigable lands within the water-

9    shed as above described, there are lands lying outside of the watershed which

10   have historically been irrigated from the ground-water basin underlying the

11   military establishments in question.  Those lands are situated within the area

12   known as the Stuart Mesa, lying north of the Santa Margarita River, and South

13   Coast Mesa, lying south of the stream.  The maximum area historically irrigated

14   on South Coast Mesa is 600 acres and on Stuart Mesa is 1,200 acres.

15       20.  The principal source of water from the Santa Margarita River for

16   use on the lands now comprising the military establishments in question is the

17   ground-water basin which has been described.  Future demands will be principally

18   met by pumping from the basin.  The ground-water storage capacity of the three

19   components of the subterranean basin underlying the Santa Margarita River within

20   Camp Pendleton, the United States Naval Hospital and the United States Naval

21   Ammunition Depot are as follows:

22       Upper Basin (O'Neill) Component          12,500 acre feet
         Chappo Basin (Home Ranch) Component       27,000  "    "
23       Ysidora Basin Component                    8,600  "    "

24                                                 48,100 acre feet

25       21.  A fresh water barrier for the prevention of intrusion of sea water,

26   which has destroyed wells in Camp Pendleton, is requisite in the Ysidora Basin Com-

27   ponent.  Thus the maximum usable capacity of the ground-water basin is 40,000

28   acre feet.

29       22.  The maximum quantity of water which is available to Camp Pendleton

30   and the other military establishments is insufficient to meet their annual minimum

31   demands.  Only by adherence to the strictest conservation practices is it possible

32   to meet the minimum demands for water of Camp Pendleton and the other military

     establishments.

                                        -7-

                                        December 3, 1957, Revision

1      23.  Pursuant to the Stipulated Judgment, Exhibit A of the Complaint

2  in this case, the Vail Estate during the irrigation season of each year is re-

3  quired to maintain a constant flow of water of not less than three cubic feet

4  per second at the Temecula gauging station at the head of Temecula Gorge.  That

5  water is delivered to the United States of America in accordance with the provisions

6  of the Stipulated Judgment and is  not open to appropriation under the laws of  the

7  State of California.  Moreover, that three second feet of water which would not be

8  in the stream were it not for the Stipulated Judgment is not available for use and

9  diversion by the defendants, except as provided in that Stipulated Judgment.

10      24.  All of the water to which the United States is entitled by reason

11  of the rights to the use of water under the Stipulated Judgment and as against the

12  defendants in this litigation may be used outside of the watershed of the Santa

13  Margarita River or may be impounded in the discretion of the United States by rea-

14  son of the express provisions of the Stipulated Judgment.

15      25.  The United States of America declares that Permit No. 7033 and Per-

16  mit No. 8511, issued by the Department of Public Works, Division of Water Resources,

17  State Engineer, State of California, to the Fallbrook Public Utility District are

18  null and void and of no force and effect.  It likewise denies that the Fallbrook

19  Public Utility District acquired any rights in and to the use of water of the

20  Santa Margarita River by any of its filings of applications with the Division of

21  Water Resources.

22      26.  The United States of America likewise denies that the Santa Mar-

23  garita Mutual Water Company has any rights to the use of water in the Santa Mar-

24  garita River by reason of the applications which it filed with the Department of

25  Public Works, Division of Water Resources, State Engineer, State of California.

26      27.  The United States of America contends that within the watershed of

27  the Santa Margarita River, excluding the Naval Reservation, there are approximately

28  223,500 acres of land susceptible of practicable and profitable irrigation.  The

29  following tabulation discloses generally where those acres are distributed through-

30  out that watershed:

31

32

-8-

IRRIGABLE ACRES OF SUB-WATERSHEDS WITHIN THE SANTA MARGARITA WATERSHED
EXCLUDING THE NAVAL RESERVATION

Temecula Area                                              107,700

    Temecula Creek                        23,200
    Pechanga Creek                         4,400
    Arroyo Seco                            2,000
    Long Canyon                            1,500
    Coahuila Creek                        41,700
    Chihuahua Creek                       12,900
    Wilson Creek                           8,000
    Lewis Valley                           3,500
    Tule Creek                            10,500
                                         107,700

Murrieta Area                                              91,800

    Murrieta Creek                        40,200
    Santa Gertrudis-Tucalota              29,600
    Warm Springs Creek                    22,000
                                          91,800

Lower Santa Margarita Area                                 24,000

    Santa Margarita River                  4,400
    De Luz Creek                          10,700
    Sandia Creek                           5,200
    Rainbow Creek                          3,700
                                          24,000

Total                                                     223,500

The demands for water to irrigate those lands tabulated above far exceed the yield of the stream. The United States of America denies that there is any water available in the Santa Margarita River for appropriation.

28. Since the acquisition by the United States of America of the Rancho Santa Margarita there has been a continuous and now accelerating demand for water from the already drastically short supply in the Santa Margarita River. It is probable that both surface diversions and ground water extractions from that stream in the immediate future will further reduce the quantities of water reaching Camp Pendleton and the other military establishments.

29. The defendant Fallbrook Public Utility District in direct violation of the rights to the use of water of the United States in the Santa Margarita River

-9-

2749

December 3, 1957, Revision

1   has illegally and in violation of the rights of the United States installed in

2   the channel of that stream a dam and pumps and with intake structures is impound-

3   ing and diverting water to which the United States is legally entitled.

4        30. Each and every defendant named in this cause is now asserting ad-

5   verse claims to the rights to the use of water owned and exercised by the

6   United States of America thus clouding its title to those rights.

7        31. The validity of Permit No. 8511, in addition to the other reasons

8   expressed above, is denied by reason of the fact that it was issued with full

9   knowledge of the pendency of the action subsequent to the date that this

10   cause was instituted.

11        32. Similarly no rights could be granted to the Fallbrook Public

12   Utility District or the Santa Margarita Mutual Water Company by reason of action

13   taken by the State in regard to pending application.

14        33. The water diverted from the watershed at the present time for mili-

15   tary uses is largely re-diverted to the watershed in the form of sewage effluent

16   which is returned to the basin for recharging the basin and for reuse.  That

17   expedience necessitated by the water shortage is resulting in irreparable damage

18   to the ground water basin from which the United States of America pumps and con-

19   tinued use of sewage effluent will progressively increase that irreparable

20   damage.

21        34. The Fallbrook Public Utility District could not initiate rights to

22   the use of water in the Santa Margarita River when it made its filings with the

23   State of California by reason of the fact that it was at the time receiving

24   water in small quantities from that river pursuant to a revocable license from

25   the United States of America.

26        35. Both the Fallbrook Public Utility District and the Santa Margarita

27   Mutual Water Company and other claimants to rights to the use of water who

28   initiated their claims subsequent to the acquisition by the United States of

29   America of the Rancho Santa Margarita, assert their claimed rights with full

30   knowledge of the needs, demands, and dependence of the United States of Amer-

31   ica for water from the Santa Margarita River, and have full knowledge that

32   those rights are all prior in time to the claims of the parties mentioned with

-10-

2750

1   the result that those parties are estopped from successfully asserting their claims.

2   Similarly the State of California is estopped from purporting to grant, or to claim

3   the power to grant, rights to the use of water to the mentioned claimants and to

4   thus imperil the military establishments in question and to jeopardize the invaluable

5   rights to the use of water of the United States of America in the Santa Margarita

6   River.

7       36.   Illegal diversions and extractions above Camp Pendleton are the direct

8   and immediate cause of salt water intrusion, described in the Complaint, which has

9   resulted in the contamination by sea water of wells maintained on Camp Pendleton.

10       37.   Due to illegal diversions and extractions above Camp Pendleton, none

11   of the waters of the Santa Margarita River during the irrigation season reach Camp

12   Pendleton or the United States Naval Ammunition Depot.  By reason of those illegal

13   diversions and extractions the United States Naval Ammunition Depot is without a

14   supply of water causing the United States to suffer irreparable damage and it will

15   continue suffering irreparable damage as long as the illegal diversions and extraction

16   above Camp Pendleton are permitted to continue.

17       38.   There are no State regulations respecting the appropriation and use of

18   ground water declared by this Court not to be part of the Santa Margarita River.

19       39.   This Court has exclusive jurisdiction to determine all issues of law

20   and fact involved in this cause.  Intervening-defendant, the State of California,

21   may not interfere with, or in any way impair, that jurisdiction by the presently

22   pending proceedings before the California State Water Rights Board involving appli-

23   cations by the Fallbrook Public Utility District and the Santa Margarita Mutual

24   Water Company to appropriate rights in the Santa Margarita River.

25

26

27

28

29

30

31

32

-11-

2751
December 3, 1957, Revision