# FILED

APR 7 - 1958

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By ................................................
                    DEPUTY CLERK

# LODGED

MAR 24 1958

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ................................................
                    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | NO. 1247-SD-C |
| v. | ) | COMPLAINT |
| FALLBROOK PUBLIC UTILITY DISTRICT, a public service corporation of the State of California; ET AL., | ) | AND |
| | ) | SUPPLEMENTARY AND |
| | ) | AMENDATORY COMPLAINT |
| Defendants. | ) | |

Comes now the UNITED STATES OF AMERICA for the purpose of supple-
menting and amending its complaint in this action filed January 25, 1951,
sets forth paragraphs I through IX of that complaint down to its prayer for
relief, and further alleging, supplements and amends that complaint, all in
accordance with the Federal Rules of Civil Procedure, Rule 15:

COMPLAINT (PARAGRAPHS I THROUGH IX) AS ORIGINALLY FILED

I

This is a civil action brought pursuant to the provisions of 28 U.S.C.
1345, in which the United States of America, an actual controversy having arisen
between the United States of America and the defendants named herein, seeks to
have declared its rights to the use of water in the Santa Margarita River and
its tributaries, a natural stream, hereafter referred to as the Santa Margarita
River, as those rights relate to the defendants named in this complaint; to
have this Court quiet its title to those rights to the use of water in the
Santa Margarita River against the defendants named in this complaint and to
enjoin the unlawful interference by the named defendants with those rights.

- 1 -

2965

## II

Camp Joseph H. Pendleton,[*] located near Oceanside, California, the United States Naval Ammunition Depot, Fallbrook, California, and the United States Naval Hospital, located at Camp Joseph H. Pendleton, situated in the Counties of San Diego and Orange, State of California, are military establishments of the United States of America and vital to the National Defense. Sites for those military installations acquired by the United States of America in the years 1941, 1942 and 1943, are comprised of approximately 135,000 acres of land in the aforesaid Counties of the State of California. In excess of $100,000,000.00 of federal funds have been expended in the development of those military establishments and the construction of the needed facilities to the end that those properties could be utilized for the military purposes for which they were acquired. Fee simple title to the properties in question now resides in the United States of America.

The site for the establishment of Camp Joseph H. Pendleton by the United States of America was selected by reason of the unique combination of the availability of a supply of water from the Santa Margarita River; sufficient land of suitable character to provide housing and training facilities for units of the Armed Forces; a beach on the Pacific Ocean adequate for the training of units of the Armed Forces in amphibious warfare and experimental work with landing craft, landing vehicles, tracked and affiliated equipment and the development thereof, and a climate which made possible year around land and amphibious training.

(a)  It is the function of Camp Joseph H. Pendleton to provide housing and training facilities for units of the Armed Forces, to conduct training of units of the Armed Forces in amphibious warfare and experimental work with landing craft, landing vehicles, tracked and affiliated equipment and the development thereof; to conduct combat training of the various units of the United States Marine Corps, including air-ground support coordination, and use of artillery, tanks and other equipment used in the conduct of modern amphibious and land warfare. In addition to the aforementioned activities, it is the function of Camp Pendleton to provide logistic support for units

---

[*] Now referred to as Camp Pendleton.

2966

1   of the United States Marine Corps together with material maintenance and
2   storage facilities, for supplies and equipment and to house and train
3   replacements for subsequent assignment to various operating units of the
4   United States Marine Corps.

5        (b)  The United States Naval Hospital, with a capacity of
6   approximately 1,550 beds, established at Camp Joseph H. Pendleton,provides
7   medical and hospital services to personnel of the Armed Forces, their de-
8   pendents and other authorized personnel at 83 Naval shore activities
9   located in the Southern California area and provides medical and hospital
10  care to personnel of units of the United States Fleet.

11       (c)  The United States Naval Ammunition Depot, Fallbrook,
12  California, provides facilities for the storage, segregation, reconditioning
13  and issuing of ammunition for operating units of the United States Fleet and
14  the United States Marine Corps and maintains ammunition stocks for shore
15  establishments of the United States Navy located in the Southern California
16  area.  In addition, this Naval Ammunition Depot stores and ships ammunition
17  for use by combat elements of the United States Navy and United States Marine
18  Corps.

19       No other site on the entire West Coast provides those essential
20  factors requisite to properly perform the functions assigned to those
21  military establishments and the absence of any one of the essential factors
22  would render impossible the proper performance of functions of those
23  military establishments.

24                                   III

25       Exclusive jurisdiction now resides in the United States of America
26  over all of the properties constituting the military establishments referred
27  to in the preceding paragraphs, subject to exceptions not here involved, by
28  reason of cessions to it by the State of California.

29                                   IV

30       Source of the all-important supply of water for Camp Joseph H.
31  Pendleton, the Naval Ammunition Depot and the United States Naval Hospital,
32  as indicated, is the Santa Margarita River.  That stream, which is known

                                   - 3 -

                                              2967

1   in its upper reaches as the Temecula, rises in the Coastal Range in the
2   western extremities of Riverside County, State of California, and proceeds
3   in a generally westerly direction where it crosses the boundary of Riverside
4   County and enters San Diego County.  From that point it continues in a
5   generally southwesterly direction across San Diego County, where it empties
6   into the Pacific Ocean.  Highly significant in regard to the claim which
7   the United States of America states against the named defendants is the fact
8   that the Santa Margarita River in its course traverses approximately 21 miles
9   of the site of Camp Joseph H. Pendleton and the Naval Ammunition Depot before
10  it enters the Ocean.  There are no users below Camp Joseph H. Pendleton on
11  that stream for the United States owns the lands the entire distance from
12  the point where the Santa Margarita River enters upon the sites of the
13  military establishments mentioned and the point where that river enters the
14  Pacific Ocean.

15          The Santa Margarita River is an intermittent stream.  It does not
16  flow as a continuous surface stream, but in the dry seasons of the year the
17  surface stream customarily and ordinarily disappears, when not artificially
18  interfered with, at a point on the lands of the United States of America
19  at approximately eight miles from the Ocean, sinking into the sands and
20  gravel of its bed and channel.  Later it reappears as a surface stream two
21  or three miles below, thence flowing as a surface stream but diminishing in
22  volume to its confluence with tidewater.

23          Underlying the river and its tributaries is a vast underground
24  basin.  That basin is comprised of pervious material, sands, gravel, boulders
25  and other fluvial deposits, to the depth of several hundred feet.  The basin
26  as a whole creates a large underground reservoir into which a high proportion
27  of the Santa Margarita River sinks.  In the dry seasons the river entirely
28  disappears into the basin, reappearing on the surface across the artesian
29  area.  This vast subterranean reservoir constitutes one of the principal
30  sources of water for the military purposes declared above.  However, the
31  encroachments by the defendants threaten the destruction of this basin by
32  reason of salt water intrusion from the Pacific Ocean.  Already two wells

- 4 -

2968

GPO 16—80906-1

have been destroyed by reason of that intrusion and the entire basin, as
stated, is threatened.  Not only have the activities of the defendants,
through their encroachments upstream, reduced the quantities available
to the United States of America from the mentioned subterranean sources,
but there has been a like reduction in surface flow of the Santa Margarita
River through the encroachments of the defendants.

V

By an adjudication suit tried over a period of three years and
actually consuming 444 court days, the Rancho Santa Margarita, predecessor
in interest of the United States of America in regard to the properties
here involved, had adjudicated its rights in the Santa Margarita River.
It was found by the trial court that the Rancho Santa Margarita, predecessor
in interest of the United States of America, owned 38,739 acres of land
riparian to the stream in question.  That court likewise found that the
normal flow of the river is insufficient for all of the riparian needs of
Rancho Santa Margarita, predecessor in interest of the United States of
America.  Likewise found was the fact that 12,375 acres of those riparian
lands were capable of and adapted to practical and profitable irrigation.
Equally important is the fact that 30,289 acre-feet of water per annum
from the Santa Margarita River was useful, valuable and necessary.
Premised upon the findings of the trial court and upon the decision of
California's highest court when the matter was on appeal before it, the
parties to that litigation concluded their differences, declared their
rights, and fixed their aliquot shares of all of the waters of the Santa
Margarita River.  Attached hereto is a copy of that stipulated judgment,
marked Exhibit A, and by reference incorporated into this complaint.

VI

As successor in interest of the Rancho Santa Margarita, a party
to the above-mentioned adjudication proceeding and to the stipulated
judgment, the United States of America is entitled to, and claims all
rights, titles, interests, and privileges of said Rancho Santa Margarita.

- 5 -

2969

### VII

Camp Joseph H. Pendleton is the only Marine Corps establishment located on the West Coast of the United States with facilities adequate to receive and train replacements and other military personnel in all phases of amphibious and land warfare for later assignment to combat forces of the United States Marine Corps now engaged in warfare in the Far East.  In order that the warfare may be successfully prosecuted it is essential that there be maintained at all times an adequate supply of water at this great military establishment which is so vital for the National Defense.

Moreover, the United States Naval Hospital above described is presently utilized and will in the future be utilized to care for combat casualties from the Korean conflict.  The United States Naval Ammunition Depot above described is now utilized for the purpose of supplying ammunition to all elements engaged in the Korean conflict.

### VIII

Those rights to the use of water described above have, since the acquisition of the property to which those rights are appurtenant, been applied to a beneficial and consumptive use by the United States of America in the performance of the varied functions of the military establishments more particularly mentioned in Paragraphs II and VII hereof.  All of the water which was accorded to the Rancho Santa Margarita by the stipulated judgment is required to supply the requirements of Camp Pendleton, the United States Naval Hospital and the Naval Ammunition Depot.  To meet the great demands arising from these military installations for military, agricultural and other needs, the United States, as against the defendants herein named, asserts that it has a paramount right to 35,000 acre-feet of water annually from the Santa Margarita River.  That quantity of water must be derived not only from the surface flow which, as indicated, is intermittent, but must likewise be pumped from the great subterranean basin described in some detail in the earlier paragraphs.  For the purpose of this cause the United States of America, adopting the findings of the Supreme Court of the State of

- 6 -

2970

California considers and accordingly claims that the surface stream and
subterranean basin constitute a single source of supply of water.  During
any period when the quantity of water exceeds the military demands
described in this paragraph, it is utilized by the United States of
America for agricultural purposes, as it was historically used by the
Rancho Santa Margarita, predecessor in interest of the United States of
America.  Though the agricultural use of water varies as the demands
for military uses fluctuate, the United States of America, however,
asserts its rights to the full use of water for agricultural purposes
as enjoyed by the above-mentioned Rancho Santa Margarita.

IX

In direct violation of the rights of the United States of
America and in complete disregard of the need of the water in question
for National Defense, the defendants by reason of their diversions from
the Santa Margarita River upstream from Camp Pendleton, have caused the
intrusion of salt water from the Pacific Ocean as described above, to
the irreparable damage of the United States.  They have likewise
repeatedly through overt acts displayed their disregard for the rights
of the United States of America and have declared their adverse claims
in contravention of the rights of the United States of America.  They
have likewise repeatedly asserted that their rights, though acquired
subsequent to and with full knowledge of the rights of the United
States, and its predecessor in interest, and the needs of the United
States for the military purposes mentioned, are paramount to the
rights of the United States of America, and proceeded to encroach upon
and now are encroaching upon and threaten to continue to encroach
upon the already insufficient supply of water required for the Nation's
defense in connection with Camp Pendleton, the United States Naval
Hospital and the Naval Ammunition Depot.

- 7 -

2971

SUPPLEMENT TO COMPLAINT

COUNT NO. I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this supplementary and amendatory complaint and each and every count hereafter set forth as completely as though that complaint were set forth in this paragraph in full, and that complaint remains unchanged except as specifically supplemented and amended by this pleading.

COUNT NO. II

CHANGES IN STATUS SINCE THE INITIATION OF THIS ACTION

Abandonment by Defendant Fallbrook Public Utility District of Its Claims to Rights in the Santa Margarita River Based Upon Application No. 12,178 and Application No. 12,179

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. II of this supplementary and amendatory complaint, together with Count No. I above, as completely as though that complaint and Count No. I were set forth in this Count No. II in full.

II

Answering the complaint in this case of the United States of America on May 27, 1951, the Fallbrook Public Utility District made no reference to and made no claims pursuant to Applications Nos. 12,178 and 12,179 filed with the State of California, Department of Public Works, Division of Water Resources State Engineer, now the California State Water Rights Board.

III

By thus failing to assert in its answer its claimed rights in the Santa Margarita River asserted pursuant to Applications Nos. 12,178 and 12,179 and failing to make reference to those Applications, together with the additional facts subsequently alleged, the Fallbrook Public Utility District has abandoned in this litigation and is precluded from claiming in this

- 8 -

litigation any rights in the Santa Margarita River by reason of those Applications.

### COUNT NO. III

**Attempted Amendments by Fallbrook Public Utility District to Its Abandoned Applications Nos. 12,178 and 12,179 to Appropriate Rights to the Use of Water from Sandia Creek, Rainbow Creek and the Santa Margarita River**

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. III of this supplementary and amendatory complaint, together with Counts Nos. I and II above, as completely as though that complaint and Counts Nos. I and II were set forth in this Count No. III in full.

II

When this action was filed on January 25, 1951, the Fallbrook Public Utility District made no claim to rights to the use of water from the main stream of the Santa Margarita River pursuant to Applications Nos. 12,178 and 12,179 referred to in Count No. II above. Rather, Application No. 12,178 was for 10,000 acre-feet of water annually from Rainbow Creek; Application No. 12,179 was for 10,000 acre-feet of water annually from Sandia Creek. Both Sandia and Rainbow Creeks are minor tributaries of the Santa Margarita River and neither individually nor in the aggregate do those streams have a yield of 10,000 acre-feet of water much less the 20,000 acre-feet of water annually which is set forth in Applications Nos. 12,178 and 12,179.

III

Subsequent to the initiation of this action by the United States of America the Fallbrook Public Utility District filed on July 28, 1952, with the above-mentioned State of California, Department of Public Works, Division of Water Resources, State Engineer, Application No. 12,178 [1]/ which purported to change drastically the alleged project to appropriate 10,000 acre-

---

1/  Designated by State of California as "Amended Application".

- 9 -

2973

1  feet of water annually from Rainbow Creek.  By the purported amendment to
2  Application No. 12,178 Fallbrook Public Utility District seeks to appropriate
3  500 acre-feet of water annually from Rainbow Creek and 9,500 acre-feet
4  annually from the Santa Margarita River.

IV

6  Subsequent to the initiation of this action by the United States of
7  America the Fallbrook Public Utility District filed on July 28, 1952, with
8  the above-mentioned State of California, Department of Public Works, Division
9  of Water Resources, State Engineer, Application No. 12,179 [2/] which purported
10  to change drastically the alleged project to appropriate 10,000 acre-feet of
11  water annually from Sandia Creek.  By the purported amendment to Application
12  No. 12,179 Fallbrook Public Utility District seeks to appropriate 1,500
13  acre-feet of water annually from Sandia Creek and 8,500 acre-feet annually
14  from the Santa Margarita River.

V

16  Since the initiation of this action by the United States of America,
17  by the purported amendments to Applications Nos. 12,178 and 12,179 all as
18  described in this Count in paragraphs numbered III and IV above, the Fallbrook
19  Public Utility District has greatly and drastically increased its demands on
20  the already over-appropriated Santa Margarita River to the irreparable damage
21  of the United States of America by reason of the fact that the reservoir
22  which the Fallbrook Public Utility District purportedly intends to build
23  will impound a greatly increased quantity of water over that which was claimed
24  when this action was instituted.

COUNT NO. IV

I

27  The United States of America re-alleges and re-avers each and every
28  allegation in the complaint which it filed in this Court on January 25, 1951,
29  and by way of reference makes that complaint a part of this Count No. IV
30  of this supplementary and amendatory complaint, together with Counts Nos. I,
31  II, and III above, as completely as though that complaint and Counts Nos. I, II,
32  and III were set forth in this Count No. IV in full.

---

2/  Designated by State of California as "Amended Application".

- 10 -

2974

## II

The United States of America is informed and believes and upon that information and belief alleges that the Fallbrook Public Utility District has undertaken in connection with the Applications Nos. 12,178 and 12,179, amended as of July 28, 1952, to condemn lands for an alleged dam and reservoir to be situated upstream on the main stem of the Santa Margarita River immediately east of the boundary of Camp Pendleton.

## III

The United States of America is informed and believes and upon that information and belief alleges that the Fallbrook Public Utility District intends to impound in the reservoir referred to in paragraph II immediately above, approximately 32,000 acre-feet [3] of water annually, all as described in its amended Applications Nos. 12,178 and 12,179.

## IV

By the greatly increased claims to rights to the use of water now made by the Fallbrook Public Utility District, all as described in the preceding allegations and averments the Fallbrook Public Utility District has further clouded the title of the United States of America to its invaluable rights to the use of water in the Santa Margarita River and threatens further to invade those rights and cause the United States of America to experience irreparable damage if it should proceed with its alleged present plan to acquire lands and to construct a dam as proposed and to impound the large quantities of water of the Santa Margarita River all as described in this count.

## V

The Fallbrook Public Utility District by the action taken:

(a)  Having failed to assert any claims in this cause under Applications Nos. 12,178 and 12,179, has abandoned those claims;

(b)  Has, if Applications Nos. 12,178 and 12,179 have not been abandoned, and it is asserted that they have been, lost its priority to those claims to a date not earlier than July 28, 1952;

---

[3]  Note:  Aggregate amount of three applications involved is 30,000 acre-feet annually.

- 11 -

2975

1   as the result of which all of the rights to the use of water in the Santa

2   Margarita River claimed by the United States of America in this litigation

3   are prior and paramount to the rights claimed by the Fallbrook Public Utility

4   District pursuant to those Applications Nos. 12,178 and 12,179.

5                              COUNT NO. V

6          Fallbrook Public Utility District Violates Gratuitous
           License; Since the Initiation of this Action has Increased
7          its Diversions of Water from the Santa Margarita River

8                                  I

9          The United States of America re-alleges and re-avers each and every

10  allegation in the complaint which it filed in this Court on January 25, 1951,

11  and by way of reference makes that complaint a part of this Count No. V of

12  this supplementary and amendatory complaint, together with Counts Nos. I, II,

13  III and IV above, as completely as though that complaint and Counts Nos. I, II,

14  III and IV were set forth in this Count No. V in full.

15                                 II

16         Fallbrook Public Utility District claimed no rights to the use of

17  water in the Santa Margarita River at the time the United States of America

18  acquired the Rancho Santa Margarita nor did it claim any rights to the

19  use of water from that stream for many years after that time; rather the

20  Fallbrook Public Utility District was being gratuitously permitted to divert

21  a very small quantity of water pursuant to a revocable license dated the 20th

22  day of July, 1932, with the Rancho Santa Margarita, predecessor in interest

23  of the United States of America.

24                                III

25         Fallbrook Public Utility District was permitted gratuitously by the

26  United States of America to continue to receive a very small quantity of water

27  pursuant to the revocable license referred to in paragraph II immediately

28  above.

29                                 IV

30         It was four (4) years subsequent to the acquisition by the United

31  States of America of the rights which it here seeks to protect that the

32  Fallbrook Public Utility District made any claim to rights in the Santa

                                  - 12 -

GPO 16—69006-1

Margarita River when it filed on October 11, 1946, Application No. 11,586 with the State of California, Department of Public Works, Division of Water Resources, State Engineer, to appropriate two and one-half (2 1/2) cubic feet per second of water from the Santa Margarita River.

V

Violation by the Fallbrook Public Utility District of the gratuitous and revocable license caused the United States of America to revoke that license on July 31, 1948.  Subsequent to the revocation by the United States of America of the gratuitous and revocable license and subsequent to the initiation of this cause, the Fallbrook Public Utility District greatly increased its diversion from the Santa Margarita River at a point immediately upstream from the eastern boundary of Camp Pendleton, diverting waters to which the United States of America is entitled and which it greatly needs and by reason of which the United States of America is experiencing irreparable damage.

VI

Defendant in Intervention California on December 31, 1957, issued to the Fallbrook Public Utility District a purported "License to Appropriate Water" No. 4906, based upon the Application No. 11,586 referred to in this Count No. V, paragraph IV above.

VII

Defendant in Intervention California has undertaken drastically to change the status of the parties in this cause by the issuance of the purported "License to Appropriate Water" No. 4906 to the Fallbrook Public Utility District. By that action California has clouded the title of the invaluable rights to the use of water in the Santa Margarita River of the United States of America to its irreparable damage.

COUNT NO. VI

Amendments by the Defendant Santa Margarita Mutual
Water Company of Its Applications to Appropriate Rights
to the Use of Water from the Santa Margarita River

I

The United States of America re-alleges and re-avers each and every

2977

1   allegation in the complaint which it filed in this Court on January 25, 1951,

2   and by way of reference makes that complaint a part of this Count No. VI of

3   this supplementary and amendatory complaint, together with Counts Nos. I, II,

4   III, IV and V above, as completely as though that complaint and Counts Nos. I,

5   II, III, IV and V were set forth in this Count No. VI in full.

6                                        II

7        Like the Fallbrook Public Utility District the Santa Margarita Mutual

8   Water Company on August 3, 1951, after the initiation of this action, drastically

9   amended its Application No. 11,578 as originally filed on October 4, 1946, and

10  Application No. 12,152 originally filed November 12, 1947, with the State of

11  California, Department of Public Works, Division of Water Resources, State

12  Engineer.

13                                       III

14       The wholly ambiguous and seemingly infeasible amendments to

15  Applications Nos. 11,578 and 12,152 envision a great increase in the burden

16  upon the Santa Margarita River; drastically changing the purported plans set

17  forth in the Applications as originally filed.

18                                        IV

19       By those drastic amendments the Santa Margarita Mutual Water Company

20  has further clouded the title to the invaluable rights to the use of water

21  in the Santa Margarita River of the United States of America and threatens

22  to encroach upon those rights, all to the irreparable damage of the United

23  States of America.

24                                        V

25       In revising the plans of its purported project, all as averred in

26  this Count No. VI, the Santa Margarita Mutual Water Company has lost its

27  original claimed priority.  Each and every claim of the United States of America

28  of rights to the use of water in the Santa Margarita River is prior and paramount

29  to any claimed rights asserted in this action by the Santa Margarita Mutual

30  Water Company.

31

32                                     - 14 -

COUNT NO. VII

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. VII of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, and VI above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, and VI were set forth in this Count No. VII in full.

II

The Fallbrook Public Utility District and the Santa Margarita Mutual Water Company having failed to prosecute with due diligence their applications to appropriate rights to the use of water and permits and the construction of their alleged projects, have lost their claimed rights to the use of water asserted in this cause.

III

The Fallbrook Public Utility District and the Santa Margarita Mutual Water Company have, by reason of their failure to prosecute their applications and permits to appropriate rights to the use of water and the construction of their alleged projects, lost their alleged rights to the use of water in the Santa Margarita River through laches and they are now estopped from claiming those rights in this cause.

COUNT NO. VIII

Threatened Condemnation of Vail Dam and Other Properties
by Defendant Rainbow Municipal Water District

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. VIII of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI and VII above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI and VII were set forth in this Count No. VIII in full.

- 15 -

II

Subsequent to the initiation of this case the defendant Rainbow Municipal Water District, a municipal corporation, filed on May 31, 1956, its complaint in eminent domain in the Superior Court of the State of California in and for the County of Riverside, to acquire by condemnation the Vail Dam and other properties, situated in Nigger Canyon across Temecula Creek.

III

Title to the Vail Dam and other properties referred to in paragraph II of this Count, the United States of America is informed and believes and upon that information and belief alleges, resides in the Vail Company, Inc., successor in interest to the Vail Estate, defendant in this case. By reason of the interest which exists between the United States of America and the defendant Vail Company, Inc., formerly the Vail Estate, in the rights to the use of water in the Santa Margarita River stemming from the Stipulated Judgment, Exhibit A of the complaint filed by the United States of America in this cause, the acquisition of the Vail Dam and other properties by the Rainbow Municipal Water District, all as alleged in this Count, would have a drastic, far-reaching and adverse effect upon the rights and interests of the United States of America, all to its irreparable damage. That irreparable damage stems from the fact that the Rainbow Municipal Water District would change the present points of diversion and places of use now maintained by the Vail Company, Inc., diverting the water from the watershed above Camp Pendleton thus greatly reducing the quantity of water historically flowing down to the United States of America.

IV

The pending proceeding to condemn the Vail Dam and properties by the Rainbow Municipal Water District, all as described in this Count, constitutes a cloud upon the title to the rights to the use of water claimed and exercised in the Santa Margarita River by the United States of America, all to its irreparable damage.

COUNT NO. IX

Threatened Condemnation of Claimed Rights to the Use of Water of the Santa Margarita Mutual Water Company by Rainbow Municipal Water District

I

The United States of America re-alleges and re-avers each and every

- 16 -

2980

allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. IX of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI, VII and VIII above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII and VIII were set forth in this Count No. IX in full.

II

Subsequent to the initiation of this case defendant Rainbow Municipal Water District filed on May 2, 1956, its complaint in eminent domain in the Superior Court of the State of California in and for the County of San Diego, to acquire by condemnation the alleged rights to the use of water claimed by the Santa Margarita Mutual Water Company in the Santa Margarita River, all of which are described by the last-named Company in its answer in this cause.

III

The alleged rights to the use of water in the Santa Margarita River claimed by the Santa Margarita Mutual Water Company as described by that Company are allegedly to be exercised in a large part through the utilization of the Vail Dam and other properties which are the subject matter of the condemnation proceeding instituted by the defendant Rainbow Municipal Water District to acquire the Dam last mentioned, all as more fully described in Count No. VIII which is by reference made a part of this Count No. IX.

IV

The pending proceeding for the condemnation by the Rainbow Municipal Water District of the claimed rights to the use of water of the Santa Margarita Mutual Water Company and the threat to exercise those rights through the use of the Vail Dam and properties constitutes a cloud upon the title of the rights to the use of water claimed and exercised by the United States of America in the Santa Margarita River. That threatened acquisition, moreover, by the Rainbow Municipal Water District of the claimed rights of the Santa Margarita Mutual Water Company would have a drastic and far-reaching adverse effect upon the rights and interests of the United States of America all to its irreparable damage. That irreparable damage stems from the fact that the Rainbow Municipal Water District would change the present points of diversion and places of use

- 17 -

2981

1   now maintained by the Vail Company, Inc., diverting the water from the water-

2   shed above Camp Pendleton thus greatly reducing the quantity of water histori-

3   cally flowing down to the United States of America.

4                              COUNT NO. X

5                    Action by the Defendant in Intervention
                     California Since the Initiation of this Cause

6                                    I

7           The United States of America re-alleges and re-avers each and every

8   allegation in the complaint which it filed in this Court on January 25, 1951, and

9   by way of reference makes that complaint a part of this Count No. X of this sup-

10  plementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V,

11  VI, VII, VIII and IX above, as completely as though that complaint and Counts Nos.

12  I, II,III,IV, V,VI,VII,VIII and IX were set forth in this Count No. X in full.

13                                   II

14          Over the objection of the United States of America, the Defendant in

15  Intervention California on August 12-14, 1957, through its State Water Rights

16  Board, held a hearing for the purpose of determining whether permits should be

17  issued to the Fallbrook Public Utility District pursuant to its amended Applica-

18  tions No. 12,178 and No. 12,179; or to the Santa Margarita Mutual Water Company

19  pursuant to its amended Applications No. 11,578 and No. 12,152.

20                                  III

21          In direct violation of this Court's jurisdiction, the Defendant in

22  Intervention California, after taking testimony relative to the Applications

23  to appropriate rights to the use of water, has taken under submission the

24  question of whether to issue a permit or permits to the defendants named in

25  the immediately preceding paragraph II, Count No. X.

26                                   IV

27          The United States of America is informed and believes and upon

28  that information and belief alleges that the California State Water Rights

29  Board must determine whether there is surplus water in the Santa Margarita

30  River available for appropriation if it grants any permit or permits to the

31  Fallbrook Public Utility District or to the Santa Margarita Mutual Water

32  Company pursuant to the Applications in question.  The determination of that

    question is jurisdictional for absent a finding of surplus no permit could

                                  - 18 -

1  be granted; yet to make a determination of the existence of a surplus places

2  in issue for resolution the extent, character and nature of the rights of

3  the United States of America in the Santa Margarita River and every other

4  claimant to rights in that stream.

5                              V

6       Defendant in Intervention California by the hearing of August 12-14,

7  1957, purporting to pass upon issues many of which are before this Court

8  for resolution, has embarrassed and invaded this Court's jurisdiction.  By

9  that usurpation of this Court's jurisdiction, the Defendant in Intervention

10  California threatens to change the relative status among the several parties

11  to this cause and further to cloud the title of the United States of America

12  in and to its invaluable rights to the use of water in the Santa Margarita

13  River, all to its irreparable damage.

14                    COUNT NO. XI

15                       I

16       The United States of America re-alleges and re-avers each and every

17  allegation in the complaint which it filed in this Court on January 25, 1951,

18  and by way of reference makes that complaint a part of this Count No. XI of

19  this supplementary and amendatory complaint, together with Counts Nos. I, II,

20  III, IV, V, VI, VII, VIII, IX and X above, as completely as though that complaint

21  and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX and X were set forth in

22  this Count No. XI in full.

23                    II

24       Since the initiation of this action further investigation reveals

25  that due to advancements in agricultural practices, together with better

26  methods for land and water uses, the number of acres of lands riparian to

27  the Santa Margarita River susceptible of practicable and profitable irrigation,

28  title to which is in the United States of America, has been increased over and

29  above 12,375 acres of lands of that character referred to in paragraph V of the

30  complaint to approximately 18,650 acres.  A reasonable water duty for those

31  lands is approximately 69,250 acre-feet annually.  These riparian rights of the

32  United States of America entitle it to share correlatively in the available

supply of water with other owners of lands riparian to the Santa Margarita River. The paragraph numbered V in the complaint originally filed is hereby supplemented and amended by changing the allegation respecting 12,375 acres of riparian land susceptible of practical and profitable irrigation to 18,650 acres of riparian land within Camp Pendleton and the United States Naval Ammunition Depot, with a reasonable water duty of approximately 78,330 acre-feet annually.

COUNT NO. XII

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. XII of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X and XI above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X and XI were set forth in this Count No. XII in full.

II

Since the initiation of this cause there has been a rapid and continuous increase in the quantities of water diverted from the surface and subsurface flow of the Santa Margarita River, greatly reducing the quantities of water flowing to the United States of America in direct violation of its long vested rights to the use of water from that stream. Whereas, when the United States of America acquired the Rancho Santa Margarita, during a substantial period of the year the Santa Margarita River was a perennial surface stream down to the headworks of the O'Neill Ditch, approximately ten (10) river miles below the eastern boundary of Camp Pendleton, the flow has been so greatly reduced by the diversions above, that the stream is dry for many months at a time, virtually throughout its entire length within the military enclave. Immediate effect of the upstream diversions and encroachments upon the rights of the United States of America, all as described, has been to force the United States of America at great costs to install a pipeline and to pump water from the subterranean basin of the Santa Margarita River within Camp Pendleton, several miles upstream to supply the United States Naval Ammunition Depot with the water vital to its continued

- 20 -

existence.  Until the invasion of the rights of the United States of America, as described, the surface and subsurface flows of the Santa Margarita River were sufficient to supply that military establishment by means of a gallery located in the bed of the Santa Margarita River situated near the place of use without the costly installation of the pipeline above mentioned and the immense cost of pumping water the great distance which is now required.

### III

Since the institution of this action the diversions described in paragraph II of this Count have greatly reduced the quantities of water available to recharge and maintain the waters in the subterranean basin which underlies Camp Pendleton, all as described in the complaint filed by the United States of America January 25, 1951.

### IV

The following named parties are diverting water from the Santa Margarita River; are thus invading the rights of the United States of America in that stream to its irreparable damage:

(a)  The Fallbrook Public Utility District has constructed and installed since the initiation of this suit two large pumps located on the south bank of the Santa Margarita River, immediately above the eastern boundary of Camp Pendleton, at a point north one thousand nine hundred twenty (1920) feet and west one thousand five hundred fifty (1550) feet from the center of Section 7, Township 9 South, Range 3 West, S.B.B.& M., being within the Northwest Quarter (NW$\frac{1}{4}$) of the Northwest Quarter (NW$\frac{1}{4}$) of last mentioned Section 7.

(b)  Fallbrook Public Utility District has moreover installed a dam across the Santa Margarita River and impounds waters of that stream to which the United States of America is entitled and which would flow down to it were it not impounded by the Fallbrook Public Utility District as described.

### V

(c)  Charles F. Sawday has located and now maintains across the Santa Margarita River and slightly upstream from the diversion of the Fallbrook Public Utility District, described above, situated on the north bank of the stream in question what is known as the Sawday diversion pump and sump which have been

- 21 -

installed since the initiation of this action.  That pump diverts from the
Santa Margarita River large quantities of water to which the United States of
America is entitled by reason of its rights to the use of water in that stream.

The water thus pumped from the Santa Margarita River by the Sawday
diversion would flow down to the United States of America were it not inter-
cepted by that diversion.  The Sawday diversion as presently operated is
causing the United States of America irreparable damage.

VI

The United States of America is informed and believes and upon that
information and belief alleges:

(a)  That the owner and operator of the Sawday diversion has made no
application to the State of California for a permit to divert water from the
Santa Margarita River; is violating the law of California in making that diver-
sion in addition to causing irreparable damage to the United States of America.

(b)  That the owners and operators of the Sawday diversion pump and sump
are diverting wholly without rights and to the irreparable damage of the United
States of America, are selling large quantities of the water thus pumped from the
Santa Margarita River to other water users who have no rights in that stream.

VII

Frank P. Querry has dug a well into the Temecula alluvial basin at a
point a short distance above the head of Temecula Canyon and is diverting large
quantities of water from that basin.  Immediate result of that pumping by Frank
P. Querry has been to reduce the flow of the Santa Margarita River and to deprive
the United States of America of large quantities of water to which it is entitled
by reason of its rights to the use of water in the Santa Margarita River, all to
its irreparable damage.

VIII

Since the initiation of this action the named defendants alluded to
in this Count have diverted water from the Santa Margarita River and have thus
invaded the rights of the United States of America.  These diversions are not
the only diversions from the Santa Margarita River initiated since the
institution of this action which invade the rights of the United States of
America in that stream.  They are reflective, however, of ever increasing demand

- 22 -

2986

for water from the Santa Margarita River which reduces the water available to
the United States of America to which it is entitled by reason of its rights
in that stream.

IX

The diversions described above and the many other diversions are
now causing and have in the past resulted in irreparable damage to the United
States of America, for which it does not have a plain, speedy, complete and
adequate remedy at law.

COUNT NO. XIII

Greatly Increased Demands Throughout the Santa Margarita
Watershed; Recognition by California of Rights of the
United States of America; Decision by Court of Appeals

I

The United States of America re-alleges and re-avers each and every
allegation in the complaint which it filed in this Court on January 25, 1951,
and by way of reference makes that complaint a part of this Count No. XIII of
this supplementary and amendatory complaint, together with Counts Nos. I, II,
III, IV, V, VI, VII, VIII, IX, X, XI and XII above, as completely as though
that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI
and XII were set forth in this Count No. XIII in full.

II

Throughout the Santa Margarita River valley are large tracts of land
title to which is in the United States of America. Included are several Indian
Reservations; National Forests, and other large areas owned by the United States
and administered by the Bureau of Land Management.

III

Since the initiation of this action there has been, as alleged, an
ever-increasing demand for water of the Santa Margarita River with ever-
increasing competition for the meager supply of water in that stream.

IV

Numerous wells have been dug since the institution of this action
and pumps have been installed which withdraw water from the water-bearing gravel
and alluvium which underlie much of the Santa Margarita River. Surface

- 23 -

2987

diversions of water have also greatly increased since the initiation of this cause.

V

The effect of the ever-increasing demand for water from the Santa Margarita River has been to give rise to adverse claims against all of the rights to the use of water claimed by the United States of America in connection with the lands within the Indian Reservations, the National Forests and the lands administered by the Bureau of Land Management.

VI

California admits that all of the lands owned by the United States of America referred to in this Count are riparian in character and that the United States of America by reason of those riparian lands is entitled to participate correlatively in the available supply of water.  Numerous California decisions were cited in support of its admission.  Though the United States of America does not concede that its rights in regard to the lands in question are limited to those riparian in character, the United States of America nevertheless acknowledges California's admission referred to in this paragraph.

COUNT NO. XIV

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. XIV of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII and XIII above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII and XIII were set forth in this Count No. XIV in full.

II

Since the initiation of this action the Court of Appeals for the Ninth Circuit in the case of California v. United States, 235 F.2d 647, 663 (C.A.9, 1956) declared as follows:

"The only proper method of adjudicating the rights on a
stream, whether riparian or appropriative or mixed, is
to have all owners of lands on the watershed and all

- 24 -

2988

appropriators who use water from the stream involved
in another watershed in court at the same time."

COUNT NO. XV

I

The United States of America re-alleges and re-avers each and every
allegation in the complaint which it filed in this Court on January 25, 1951,
and by way of reference makes that complaint a part of this Count No. XV of
this supplementary and amendatory complaint, together with Counts Nos. I, II,
III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII and XIV above, as completely
as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII,
IX, X, XI, XII, XIII and XIV were set forth in this Count No. XV in full.

II

The United States of America is the holder of the legal title to all
of the lands and rights to the use of water of the Coahuila Indian Reservation,
with the exception, if any, of those lands title to which may have passed into
private ownership.  Attached to this supplementary and amendatory complaint
marked Exhibit "B" and by reference made a part of it is a description of those
lands within that reservation which are within the watershed of the Santa
Margarita River or are traversed by the Santa Margarita River watershed line.
Those lands are traversed by or border and abut upon Coahuila Creek and its
tributaries.

III

Coahuila Creek, an intermittent stream, has its origin on the
southwest slope of San Jacinto Mountains, southeast of Thomas Mountain.  From
its source that stream flows south and west through Terwilliger Valley,
also known as Anza Valley, to the lower end of Coahuila Valley for a distance
of thirteen and three-fourths (13 3/4) miles.  After leaving Coahuila Valley
it flows southwest a distance of four (4) miles to its confluence with Wilson
Creek.  Coahuila Creek in its course flows for seven and one-half (7 1/2) miles
through the Coahuila Indian Reservation.  Much of that course is over and
across water-bearing gravel and alluvial basins situated within the Coahuila
Indian Reservation.  Wilson Creek after its confluence with Coahuila Creek

- 25 -

2989

continues to its junction with Temecula Creek at Nigger Valley.  Temecula

Creek flows north and westerly to the junction with Murrieta Creek where at

the head of Temecula Canyon they form the Santa Margarita River.

IV

Within the Coahuila Indian Reservation there are approximately 17,500

acres of land within the watershed of the Santa Margarita River of which

approximately 16,800 acres are susceptible of practicable and profitable

irrigation.

V

A reasonable diversion duty for the irrigation of those lands is

four and two-tenths (4.2) acre-feet per acre per year.

VI

There were reserved by the United States of America sufficient waters

of Coahuila Creek and its tributaries for the needs of the Coahuila Indian

Reservation, as those needs existed when the reservation was established or

might exist in the future, for irrigation, domestic and other purposes.  That

reservation of rights to the use of water pertains both to the surface and

subsurface flow of Coahuila Creek and its tributaries.

COUNT NO. XVI

I

The United States of America re-alleges and re-avers each and every

allegation in the complaint which it filed in this Court on January 25, 1951,

and by way of reference makes that complaint a part of this Count No. XVI of

this supplementary and amendatory complaint, together with Counts Nos. I, II,

III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV and XV above, as completely

as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX,

X, XI, XII, XIII, XIV and XV were set forth in this Count No. XVI in full.

II

The United States of America is the holder of the legal title to

all of the lands and rights to the use of water of the Pechanga Indian

Reservation, with the exception, if any, of those lands title to which may have

passed into private ownership.  Attached to this supplementary and amendatory

- 26 -

2990

complaint marked Exhibit "C" and by reference made a part of it, is a description of those lands within that Reservation which are within the watershed of the Santa Margarita River or are traversed by the Santa Margarita River watershed line.  Those lands are traversed by or border and abut upon Pechanga Creek, also known as Penjango Creek, an intermittent stream rising on the northerly slopes of Agua Tibia Mountain.  It enters Temecula Creek a short distance upstream from the junction of that creek with Murrieta Creek.

### III

Within the Pechanga Indian Reservation there are approximately 4,000 acres of land within the watershed of the Santa Margarita River of which approximately 2,000 acres are susceptible of practicable and profitable irrigation.

### IV

A reasonable diversion duty for the irrigation of those lands is four and two-tenths (4.2) acre-feet per acre per year.

### V

There were reserved sufficient waters of Pechanga Creek and its tributaries for the needs of the Pechanga Indian Reservation, as those needs existed when the reservation was established or might exist in the future, for irrigation, domestic and other purposes.  That reservation of rights to the use of water pertains both to the surface and subsurface flow of Pechanga Creek and its tributaries.

### COUNT NO. XVII

### I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. XVII of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, and XVI above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV and XVI were set forth in this Count No. XVII in full.

2991

## II

Tributaries of Coahuila Creek rise in the Ramona Indian Reservation and flow generally southward and westward to where they have confluence with Coahuila Creek, described in Count No. XV above.

## III

The United States of America is the holder of the legal title to all of the lands and rights to the use of water of the Ramona Indian Reservation, with the exception, if any, of those lands title to which may have passed into private ownership. Attached to this supplementary and amendatory complaint marked Exhibit "D" and by reference made a part of it, is a description of those lands within that Reservation which are within the watershed of the Santa Margarita River or are traversed by the watershed line of the Santa Margarita River. Those lands are traversed by or border and abut upon the tributaries of Coahuila Creek.

## IV

Within the Ramona Indian Reservation there are approximately 300 acres of land within the watershed of the Santa Margarita River of which approximately 60 acres are susceptible of practicable and profitable irrigation.

## V

A reasonable diversion duty for the irrigation of those lands is four and two-tenths (4.2) acre-feet per acre per year.

## VI

There were reserved sufficient waters from the tributaries of Coahuila Creek for the needs of the Ramona Indian Reservation, as those needs existed when the Reservation was established or might exist in the future, for irrigation, domestic and other purposes. That reservation of rights to the use of water pertains both to the surface and subsurface flow of the tributaries of Coahuila Creek.

## COUNT NO. XVIII

## I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951,

2932

and by way of reference makes that complaint a part of this Count No. XVIII of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI and XVII above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI and XVII were set forth in this Count No. XVIII in full.

## II

The United States of America is the owner of large tracts of land comprising the Cleveland and San Bernardino National Forests which are located within the watershed of the Santa Margarita River. Attached to this supplementary and amendatory complaint marked Exhibit "B" and by reference made a part of it, is a description of those lands within those National Forests which are within the watershed of the Santa Margarita River or are traversed by the watershed line of that River.

## III

Temecula Creek referred to above, and tributaries to that creek, rise on the northeastern slope of Aguanga Mountain in the Cleveland National Forest, now the present site of the Palomar Observatory, and the description of Temecula Creek in the paragraph numbered VI of the original complaint is amended to conform with the description set forth in this sentence. From that source it proceeds in a northerly and westerly direction a distance of approximately sixteen (16) miles where it enters the Pauba Grant of the Vail Estate, now the Vail Company, Inc. After entering that property it flows northwesterly through a portion of the Pauba Grant known as Nigger Valley, for a distance of a little more than three (3) miles where it enters Nigger Canyon. Situated across the channel of Temecula Creek at the upper end of Nigger Canyon on the Pauba Grant, in the Northwest Quarter (NW$\frac{1}{4}$) of the Northwest Quarter (NW$\frac{1}{4}$), Section 10, Township 8 South, Range 1 West, is the Vail Dam, which creates an on-channel reservoir, having a potential storage capacity of 50,000 acre-feet. Below that on-channel reservoir, Temecula Creek traverses the Vail Estate, now the Vail Company, Inc., properties for a distance of approximately eleven and one-half (11 1/2) miles. Immediately before leaving the Vail Estate, now the Vail Company, Inc., properties Temecula Creek has its confluence with Murrieta Creek.

2993

IV

Tributaries of Temecula Creek likewise rise in the San Bernardino National Forest flowing in a generally southward and westward direction from their source where they enter Wilson Creek, above described, which has its confluence with Temecula Creek.

V

Within the boundaries of the Palomar area of the Cleveland National Forest there are approximately 34,000 acres of land within the watershed of the Santa Margarita River which are traversed by or border or abut upon Temecula Creek or its tributaries.  Of that total approximately 2,000 acres are susceptible of practicable and profitable irrigation.

VI

There are likewise 900 acres of land within the Trabuco area of the Cleveland National Forest and within the watershed of the Santa Margarita River, which are traversed by or border upon DeLuz Creek and its tributaries, which are tributary to the Santa Margarita River.  Of that total approximately 600 acres are susceptible of practicable and profitable irrigation.

VII

A reasonable diversion duty for the irrigation of those lands is four and two-tenths (4.2) acre-feet per acre per year.

VIII

Within the San Bernardino National Forest there are approximately 11,400 acres of lands which are within the watershed of the Santa Margarita River and which are traversed, border upon or abut upon the tributaries of Temecula Creek.  Of that total approximately 900 acres are susceptible of practicable and profitable irrigation.

IX

A reasonable diversion duty for the irrigation of those lands is four and two-tenths (4.2) acre-feet per acre per year.

X

When the lands comprising the Cleveland and San Bernardino National Forests were withdrawn there were reserved for those lands rights to the use

- 30 -

2994

GPO 16—69905-4

1  of water for recretaional purposes, fire-fighting purposes, irrigation purposes,

2  domestic purposes and for livestock and all needs requisite to meet the demands

3  for which the lands were withdrawn, but not to exceed the diversion duty for

4  water referred to in paragraphs VII and IX immediately above.

XI

6      Attached to this supplementary and amendatory complaint is a list of

7  the licensees who have been permitted to use waters arising upon the Cleveland

8  National Forest and the San Bernardino National Forest. That list marked

9  Exhibit "F" is by reference made a part of this supplementary and amendatory

10  complaint.  Title to those rights to the use of water being thus permissively

11  used resides in the United States of America and it seeks to have its title

12  to those rights quieted in this cause.

COUNT NO. XIX

I

15      The United States of America re-alleges and re-avers each and every

16  allegation in the complaint which it filed in this Court on January 25, 1951,

17  and by way of reference makes that complaint a part of this Count No. XIX of

18  this supplementary and amendatory complaint, together with Counts Nos. I, II,

19  III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII and XVIII

20  above, as completely as though that complaint and Counts Nos. I, II, III, IV,

21  V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII and XVIII were set

22  forth in this Count No. XIX in full.

II

24      The United States of America is the owner of large tracts of land

25  within the watershed of the Santa Margarita River or which are traversed by

26  the watershed line of that River, and those lands are administered by the

27  Bureau of Land Management of the Department of the Interior.  They are

28  described in Exhibit "G" which is attached to this supplementary and amendatory

29  complaint and made a part of it by reference.  There are approximately 40,700

30  acres of those lands of which approximately 12,400 acres are susceptible of

31  practicable and profitable irrigation.

- 31 -

2995

III

The lands referred to in paragraph No. II immediately above are traversed by, border, or abut upon Temecula Creek, its tributaries and other tributaries of the Santa Margarita River.

IV

A reasonable diversion duty for the irrigation of those lands is four and two-tenths (4.2) acre-feet per acre per year.

V

The United States of America in connection with the lands referred to in this Count reserved rights to the use of water for stockwatering purposes, purposes of irrigation, and other purposes to meet the needs of those lands, but not to exceed the diversion duty alluded to in paragraph IV immediately above.  Attached, marked Exhibit "H", is a list of the licensees who have been permitted to use water arising upon lands referred to in this Count.  This list does not purport to be all of the claimants to rights to the use of water on the lands in question.  Any of those rights to the use of water upon lands withdrawn from entry and initiated subsequent to that withdrawal, are being permissively used and title to those rights resides in the United States of America and it seeks to have its title to those rights quieted in this cause.

COUNT NO. XX

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. XX of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII  XIII, XIV, XV, XVI, XVII, XVIII and XIX above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII and XIX were set forth in this Count No. XX in full.

II

The United States of America claims in this litigation in connection

- 32 -

2996

GPO 16—80808-4

1  with all of those lands susceptible of practicable and profitable irrigation
2  which have been described and referred to in this supplementary and amendatory
3  complaint which are situated within the above-named Indian Reservations,
4  National Forests and lands administered by the Bureau of Land Management,
5  Department of the Interior, four and two-tenths (4.2) acre-feet per acre
6  annually.  Though those are the maximum rights claimed, the United States of
7  America asserts in this litigation the right to utilize those rights to the
8  use of water for whatever purposes the lands in question were withdrawn.

COUNT NO. XXI

I

11  The United States of America re-alleges and re-avers each and every
12  allegation in the complaint which it filed in this Court on January 25, 1951,
13  and by way of reference makes that complaint a part of this Count No. XXI of
14  this supplementary and amendatory complaint, together with Counts Nos. I, II,
15  III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII,
16  XIX and XX above, as completely as though that complaint and Counts Nos. I,
17  II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII,
18  XVIII, XIX and XX were set forth in this Count No. XXI in full.

II

20  In regard to the rights to the use of water claimed by the United
21  States of America for Camp Pendleton, the Naval Ammunition Depot and the United
22  States Naval Hospital, the United States of America alleges that it and its
23  predecessors in interest have exercised those rights far in excess of the
24  prescriptive period and that the use and diversion of those waters by the
25  United States of America has been open, notorious, adverse, exclusive, and
26  under a claim of right against each and every defendant in this litigation.

III

28  The United States of America further alleges in connection with the
29  diversion and use of water on the Indian Reservations, National Forests, and
30  the lands administered by the Bureau of Land Management that the exercise of
31  those rights has been far in excess of the prescriptive period and that the use
32  and diversion of those waters by the United States of America has been open,

- 33 -

2997

GPO 16—92288-1

notorious, adverse, exclusive, and under a claim of right against each and
every defendant in this litigation.

## AMENDMENT TO COMPLAINT

### COUNT NO. XXII

The United States of America re-alleges and re-avers each and every
allegation in the complaint which it filed in this Court on January 25, 1951,
and each and every allegation contained in Counts No. I through No. XXI of
this supplement and amendment to that complaint and by way of reference
makes that complaint and Counts No. I through No. XXI of this supplement
and amendment to that complaint a part of this supplementary and amendatory
complaint as completely as though they were set forth in this paragraph in
full, and further alleges that:

### I

The United States of America since the year 1942 has, for beneficial
purposes in connection with the military establishments here involved, all
of which are fully described in the complaint, diverted, appropriated and
used under a claim of right the waters from the Santa Margarita River both
from its surface and subsurface flow, which are described in the following
paragraphs of these supplements and amendments to its complaint. That the
quantities of water diverted, appropriated and used, which are being presently
diverted, appropriated and used are in addition to those quantities of water
beneficially used by the United States of America in the exercise of its
riparian rights in the Santa Margarita River.

### II

There have been, for beneficial purposes, annually diverted,
appropriated and used by the United States of America approximately 12,300
acre-feet of water from both the surface and subsurface flow of the Santa
Margarita River by the United States of America by reason of its
riparian rights. That quantity of water is utilized for both military and
agricultural purposes both within and outside of the watershed of the Santa
Margarita River, dependent upon demands.

- 34 -

2998

### III

The United States of America alleges respecting the rights to the use of water presently exercised by it and for which it makes claim in this litigation, in addition to the riparian rights to the use of water described above:

(a) A storage right to the use of 4,300 acre-feet of water annually for Lake O'Neill, an off-channel reservoir situated in Sections 5 and 8, Township 10 South, Range 4 West. Continuously since 1883 and at the present, surface flow of the Santa Margarita River has been and is diverted to fill and re-fill that lake for a total annually of 4,300 acre-feet. Waters have been and are diverted to Lake O'Neill by the O'Neill Ditch.

(b) A right to divert directly from the surface or subsurface flow of the Santa Margarita River 4,800 acre-feet annually for use both within and outside of the watershed of the Santa Margarita River, with a priority of January 1, 1937. Presently those waters are being diverted by means of pumps from the subterranean basin underlying Camp Pendleton. Diversion and use of those waters outside of the watershed was commenced by the predecessor in interest of the United States of America and the United States of America has at all times exercised those rights since the date of their acquisition.

(c) A right to divert directly from the surface or subsurface flow of the Santa Margarita River 3,200 acre-feet of water. Since 1942 those waters have been diverted outside of the watershed. The United States of America is informed and believes and upon that information and belief alleges that its predecessors in interest diverted and used within the watershed of the Santa Margarita River large quantities of water in excess of their riparian entitle-ment, diverting that water from the Santa Margarita River by means of pumps. The United States of America is further informed and believes and upon that information and belief alleges that from the year 1910 the predecessors in interest of the United States of America diverted and used annually the 3,200 acre-feet described in this paragraph, if not more than that quantity, and the United States of America claims a right to that quantity of water with a priority date of January 1, 1910.

2999

COUNT NO. XXIII

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. XXIII of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI and XXII above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI and XXII were set forth in this Count No. XXIII in full.

II

In connection with its lands riparian to the Santa Margarita River, within Camp Pendleton and the United States Naval Ammunition Depot, which total 38,739 acres, the United States claims a right correlatively to share in the waters of the Santa Margarita River with all other owners of lands riparian to that stream. Approximately 4,600 acres of that riparian land overlie the subterranean basin within Camp Pendleton from which a large proportion of the waters from the Santa Margarita River used by the military establishments for both riparian and non-riparian uses is pumped by the United States of America. The natural coverage of those approximately 4,600 acres is dependent upon the subterranean basin as a source of supply of water and a lowering of the water table in the basin would destroy that coverage.

III

The United States of America claims that a military use is a proper riparian use and the United States of America is dependent upon its riparian rights to yield sufficient water to provide the difference between the quantity of water its non-riparian rights will yield and its maximum military demand, which is approximately 23,000 acre-feet of water annually.

COUNT NO. XXIV

I

The United States of America re-alleges and re-avers each and every

- 36 -

3000

allegation in the complaint which it filed in this Court on January 25,1951, and by way of reference makes that complaint a part of this Count No. XXIV of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII and XXIII above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII and XXIII were set forth in this Count No. XXIV in full.

II

On the 30th day of June 1948, Application No. 12,576 was filed with the State of California, Department of Public Works, Division of Water Resources, State Engineer by Jack E. Cochrane, United States Navy Department, describing a project for the storage annually of 165,000 acre-feet of water from the Santa Margarita River.  Based upon the recommendations of the Defendant in Intervention State of California, that application was amended by M. H. Aubey, United States Navy Department, on December 13, 1948, describing a project contemplating an annual use of 12,540 acre-feet of water from the Santa Margarita River; that application being further amended by G. B. Erskine, Major General, USMC, in a letter dated 13 July 1949, amending paragraph 2 (b) of Application No. 12,576 to read: "For diversion to be stored temporarily and later applied to beneficial use, 165,000 (one hundred sixty-five thousand) acre-feet per annum, to be collected between 1 October and 30 April of each season."  The United States of America claims a priority of June 30, 1948, for the storage right of 165,000 acre-feet of water per annum from the Santa Margarita River, that right to be exercised to the extent of its demands, not met by the other rights claimed by it in the Santa Margarita River, all as described herein.

COUNT NO. XXV

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. XXV of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX,

- 37 -

XX, XXI, XXII, XXIII and XXIV above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII and XXIV were set forth in this Count No. XXV in full.

## II

The United States of America alleges that its claims set forth in this litigation and those of the defendants far exceed the available supply of water in the Santa Margarita River; that the defendants named in this action assert adverse claims to the rights to the use of water of the United States of America and by reason of these adverse claims have clouded the title to the rights to the use of water of the United States of America in the Santa Margarita River; and those defendants have exercised and are presently exercising rights to the use of water in a manner that invades or threatens to invade the rights to the use of water of the United States of America; Defendant in Intervention, the State of California, has asserted claims adverse to the United States of America and through repeated overt acts has threatened further to invade those rights of the United States of America, all as alleged above; that the Defendant in Intervention, the State of California, has through its acts drastically changed its status and the status of the parties since the initiation of this action, thus invading the rights to the use of water herein described and threatens to continue thus to invade and threaten to invade the rights to the use of water of the United States of America.

WHEREFORE, the United States of America prays:

1. That all of the defendants named in this action be required to answer the original complaint and this supplementary and amendatory complaint and set up fully their claims to rights to the use of water from the Santa Margarita River;

2. That this Honorable Court determine, declare and adjudge that all of the rights to the use of water in the Santa Margarita River claimed by the United States of America in this action are prior and paramount to

- 38 -

3002

1   all of the rights to the use of water claimed by the Fallbrook Public Utility

2   District, the Santa Margarita Mutual Water Company and all other defendants

3   named in this cause claiming appropriative or prescriptive rights;

4        3.  That this Honorable Court determine, declare and adjudge that

5   insofar as the riparian rights to the use of water claimed by the United States

6   of America are concerned that the United States of America's share is correla-

7   tive in the available supply of water in the Santa Margarita River with all

8   other owners of riparian rights to the use of water in that stream;

9        4.  That this Honorable Court determine, declare and adjudge that

10   the Defendant in Intervention, the State of California, is without power to

11   invade the jurisdiction of this Court by the hearing of August 12-14, 1957, or

12   in any other way, and that any act or acts which Defendant in Intervention,

13   State of California, has taken since the initiation of this cause in connection

14   with any rights to the use of water in the Santa Margarita River watershed are

15   null and void and of no force and effect insofar as the rights to the use of

16   water of the United States of America are concerned;

17        5.  That this Honorable Court determine and decree the respective

18   rights of all parties to the litigation as they relate one to another;

19        6.  That this Honorable Court quiet the title of the United States

20   of America in and to its rights to the use of water in the Santa Margarita

21   River as against the adverse claims of defendants;

22        7.  That this Honorable Court determine, declare and adjudge that

23   all of the rights to the use of water asserted by the defendants in this

24   cause in the Santa Margarita River are subject and subordinate to the rights

25   of the United States of America to the continued and undiminished flow of

26   the Santa Margarita River over, above, and through the lands, title to which

27   is in the United States of America, including the rights of the United States

28   of America in the subterranean basin or basins which underlie the military

29   enclave above described and all other lands, title to which is in the

30   United States of America and to which reference has been made;

31        8.  That this Honorable Court determine, declare and adjudge that

32   the United States of America, as successor in interest to the rights of the

- 39 -

3003

1  Rancho Santa Margarita in the Santa Margarita River, is entitled to exercise

2  and enjoy each and every right, privilege, and interest of said Rancho Santa

3  Margarita, together with such rights to the use of water which the United States

4  of America may have gained or acquired in the stream in question through pre-

5  scription, or use, or both, since the acquisition of the Rancho Santa Margarita;

6        9.  That this Honorable Court enjoin all of the defendants in this

7  action from invading or threatening to invade the rights to the use of water

8  title to which is in the United States of America; that it enjoin all parties

9  from asserting adverse claims to the rights to the use of water against the

10  rights of the United States of America; that it enjoin all parties, including

11  the Defendant in Intervention, the State of California, from changing their

12  status in this litigation or the status of any of the parties; that it enjoin

13  the Defendant in Intervention, the State of California, from invading or

14  embarrassing the jurisdiction of this Honorable Court;

15        10.  That this Honorable Court establish by appropriate order or

16  orders, a course of conduct for the taking of evidence and the trial of this

17  case which will result in minimum costs to the small water users in the Santa

18  Margarita River watershed who have been named defendants in this proceeding

19  in accordance with the decision of the United States Court of Appeals for the

20  Ninth Circuit (235 F.2d 647 (C.A.9, 1956));

21        11.  That this Honorable Court grant to the United States of

22  America such further and additional relief as may be proper.

23                              UNITED STATES OF AMERICA

24

25

26        J. LEE RANKIN,
          Solicitor General

27

28

29        WILLIAM H. VEEDER,
          Attorney, Department of Justice

30

31  DATED: *March 19 1958*

32        WILLIAM E. BURBY,
          Attorney, Department of Justice

- 40 -

3004

Exhibit "A"

Cosgrove & O'Neil,
1031 Rowan Bldg.,
458 So. Spring St.,
Los Angeles, Calif.
    Trinity 6656
Attorneys for Plaintiff

O'Melveny & Myers,
900 Title Insurance
433 So. Spring St.,
Los Angeles, Calif.
    Michigan 2611
Attorneys for Defendants.

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

In and For the County of San Diego

RANCHO SANTA MARGARITA
    a corporation

        Plaintiff

    vs.

N. R. Vail, Mary Vail Wilkinson,
Mahlon Vail, Edward N. Vail,
Margaret Vail Bell, The Vail
Company, an association of persons
transacting business under that
common name, N  R. Vail, Mary Vail
Wilkinson, Mahlon Vail, Edward N.
Vail and Margaret Vail Bell, as
Trustees of said Vail Company,
Mahlon Vail, Executor of the Estate
of Margaret R. Vail, deceased, and
Laura Perry Vail, Executrix of the
Estate of William Banning Vail,
Deceased.

        Defendants.

Guy Bogart, Lucy Parkman Bogart
and Fred Reinhold, Executors of
the will of Murray Schloss, de-
ceased, and Philip Playtor,

        Interveners.

No. 42850

STIPULATED JUDGMENT

This cause came on regularly for trial in the above entitled court

and department thereof on Monday, October 18, 1926, at the hour of 10:00 o'clock

A.M., before the court, Honorable L. D. Jennings, Judge, presiding; Messrs.

Hunsaker, Britt and Cosgrove appearing as attorneys for the plaintiff, Messrs. Haas

& Dunnigan, Messrs. Ward, Ward & Ward, Messrs. Stephens & Stephens, and Messrs.

O'Melveny, Milliken & Tuller, appearing as attorneys for defendants, and Walter

Gould Lincoln, Esq., appearing as attorney for intervenors.  The introduction

of evidence, oral and documentary, being completed, arguments, oral and in

writing, having been submitted, and court having considered the same and being

fully advised in the premises, findings of fact and conclusions of law having

-41 -

Exhibit "A"
page 1

3005

1   been signed by the court and filed with the clerk thereof, and judgment on

2   said findings and conclusions having been signed and entered; defendants and

3   each of them thereon appealed from said judgment and from each part thereof,

4   but said interveners did not appeal from said judgment; the Supreme Court of

5   said State of California upon said appeal having reversed said judgment and

6   directed a new trial upon certain issues designated in the opinion of said

7   court reported Rancho Santa Margarita, a corporation, vs. Margaret R. Vail,

8   et al., L. A. No. 15076, 11 Cal. (2nd) 501, and said plaintiff and defendants

9   having stipulated to the entry of the following judgment,

10          Now, therefore, IT IS ORDERED, ADJUDGED AND DECREED that:

11

12          Section First:  The plaintiff, Rancho Santa Margarita, a corporation,

13   and defendants, N. R. Vail, Mary Vail Wilkinson, Mahlon Vail, Edward N. Vail,

14   Margaret Vail Bell, the Vail Company, an association of persons transacting

15   business under that common name, N. R. Vail, Mary Vail Wilkinson, Mahlon Vail,

16   Edward N. Vail and Margaret Vail Bell, as Trustees of said Vail Company, Mahlon

17   Vail, Executor of the estate of Margaret R. Vail, Deceased, and Laura Perry Vail,

18   Executrix of the Estate of William Banning Vail, Deceased, and interveners, Guy

19   Bogart, Lucy Parkman Bogart and Fred Reinhold, Executors of the Will of Murray

20   Schloss, Deceased, and Philip Playtor, have and each has rights in and to the

21   waters of the Temecula-Santa Margarita River and its tributaries, and in and to

22   the use of said waters for all beneficial and useful purposes on their respective

23   lands herein more specifically described.

24          Section Second:  The plaintiff is entitled to take and use upon the

25   whole or any part of its lands lying within the Rancho Santa Margarita y Las

26   Flores, San Diego County, California, sixty-six and two-thirds per cent (66 2/3%)

27   of the water of said Temecula-Santa Margarita River and all its tributaries which

28   naturally, when not artificially diverted or abstracted, flows and descends in

29   the channel thereof at that certain joint gaging station hereinafter in this

30   judgment designated as Measuring Station No. Six (6).

31          Section Third:  Defendants are entitled to take and use upon the whole

32   or any part of their lands hereinafter mentioned, thirty-three and one-third per

- 42 -

cent (33 1/3%) of the water of said Temecula-Santa Margarita River and all its
tributaries which naturally, when not artificially diverted or abstracted, flows
and descends in the channel thereof at that certain joint gaging station herein-
after designated Measuring Station No. Six (6).

The lands of the defendants herein referred to consist of those certain
lands in Riverside County, California, known as Pauba Grant, Lots A, B, C, and D
of Little Temecula Grant, or Rancho as shown on the Wolf partition map of Little
Temecula Grant as described in the final decree of partition in the case of
William Wold vs. Ramona Wolf, being Case No. 5756 of the Superior Court of San
Diego County, State of California, said final decree of partition being recorded
in Book 199 of Deeds, page 464, et seq., records of San Diego County, California,
the southeasterly approximately one-half of Temecula Grant, excluding therefrom
the town site of the unincorporated city or town of Temecula and the various
parcels of land owned by persons other than the defendants herein, as shown by map
entitled "Triangulation Map of Pauba Ranch and Vicinity, Riverside County" received
in evidence in this case and marked "Plaintiff's Exhibit No. U-4", which exhibit
has been incorporated into and constitutes a part of the Transcript on Appeal in
this action  (reference is hereby made to said Transcript and to said Exhibit
No. U-4 and by such reference said exhibit is incorporated into and constitutes
a part of this judgment), Santa Rosa Grant, and Vail government  lands, which said
Vail government lands, approximately four hundred sixty (460) acres in area, are
more particularly described as: Those certain lands lying within sections
twenty-one (21), twenty-seven (27), twenty-eight (28) and twenty-nine (29) of
Township Eight (8) South, Range Two (2) West, S. B. B. M., Riverside County,
California, and being more particularly identified as Lots Nineteen (19), Twenty
(20), Twenty-one (21), Twenty-six (26), Twenty-seven (27), Thirty (30) and
Thirty-one (31) of Block Fifteen (15), and those portions of Lots Seventeen (17)
and Eighteen (18) of said Block Fifteen (15) lying without but contiguous to the
southeasterly boundary of Lot D of said Little Temecula Grant.

Section Fourth:  The intervener Philip Playtor is entitled to take and
use upon the whole or any part of his lands riparian to said Temecula-Santa
Margarita River, as hereinafter delineated and defined, one (1) miner's inch
continuous flow of the waters of said Temecula-Santa Margarita River.  The lands

1   of said Philip Playtor riparian to said river are described as follows:  The

2   northwest one-quarter (NW¼) of the southeast one-quarter (SE¼) and the south

3   one-half (S½) of the south one-half (S½) of section thirty-three (33) and the

4   southwest one-quarter (SW¼) of the southwest one-quarter (SW¼) of section

5   thirty-four (34), Township Eight (8) South, Range Three (3) West, S. B. M.,

6   Riverside County, California.

7   　　　　Section Fifth:  The interveners Guy Bogart, Lucy Parkman Bogart and Fred

8   Reinhold, as executors under the will of Murray Schloss, deceased, own certain

9   real property in San Diego County, California, of which approximately twenty (20)

10  acres are riparian to a certain tributary of said Temecula-Santa Margarita River

11  by the name of Stone Creek and are susceptible of practical and profitable irri-

12  gation with the water of said creek, said approximately twenty (20) acres being

13  described as follows:  The south one-half (S½) of the northeast one-quarter (NE¼)

14  of the northeast one-quarter (NE¼) of section four (4) Township Nine (9) South,

15  Range Three (3) West, S. B. M., San Diego County, in said state.  Said inter-

16  veners are entitled to take from the surface and subsurface waters of said Stone

17  Creek and use the same on said twenty (20) acres riparian to said Stone Creek,

18  throughout said dry or irrigation season of each calendar year and from the 1st

19  day of May of each year until the 31st day of October of the same calendar year,

20  the entire flow of the waters of said Stone Creek and all its tributaries which

21  naturally, when not artifically diverted or abstracted, flows or descends in the

22  channel thereof to and upon said twenty (20) acres parcel; and are entitled to take

23  from said Stone Creek, during the rainy or winter season of each year, for use

24  upon said twenty (20) acres of riparian land for all beneficial purposes, five (5)

25  miner's inches continuous flow.

26  　　　　Section Sixth:  The waters of said stream and its tributaries herein

27  apportioned to the interveners shall be deducted from the fractional part of the

28  waters of said stream herein allotted to plaintiff.

29  　　　　Section Seventh:  For the purpose of dividing among, and allocating to,

30  the parties of this action, the waters of the Temecula-Santa Margarita River and

31  its tributaries, at the places and in the amounts specified in this judgment, the

32  plaintiff and the defendants immediately shall establish, and thereafter

- 44 -

GPO 16—69906-1

1   maintain jointly (unless established and/or maintained by U. S. Geological

2   Survey, Division of Water Resources State Department of Public Works, or other

3   public body), stream-flow (automatically registering) gaging stations at the

4   following three locations on the Temecula-Santa Margarita River:

5         Station No. One (1):  The upper end of Nigger Canyon at or near the

6   present location of the Nigger Canyon gaging station;

7         Station No. Three (3):  The upper end of Temecula Gorge, immediately

8   downstream from the confluence of Murrieta Creek, at or near the present location

9   of the Temecula Gorge gaging station;

10         Station No. Six (6):  The Narrows, at or near the present location of

11   the Ysidora gaging station.

12         And plaintiff and defendants shall establish and maintain jointly

13   (unless established and/or maintained by U. S. Geological Survey, Division of

14   Water Resources State Department of Public Works, or other public body), gaging

15   stations for measuring (and automatically registering) the surface flow of said

16   stream, or any of its tributaries, at any point thereon where the plaintiff, the

17   defendants, or the interveners, or any of them, hereafter may construct or main-

18   tain appliances for the diversions of the surface flow of said stream, or any of

19   its tributaries.  (The cost of establishing and maintaining joint gaging stations

20   as are required hereunder, including the taking of measurements and observations

21   thereof, shall be borne equally by the plaintiff and the defendants.)

22         Each party shall establish and maintain meters to determine and auto-

23   matically register the amount of the underground waters abstracted or diverted

24   by such party from the underground waters of Temecula-Santa Margarita River and/or

25   its tributaries by means of wells, either artesian or pumped (except windmill

26   wells and/or domestic use wells of the parties and/or their tenants); such meters

27   shall be of a type which will meet the approval of both plaintiff and defendants

28   or the approval of either party and the engineer in charge of the Los Angeles

29   office of the U. S. Geological Survey, and shall be installed and maintained in

30   such manner and place as to be available for inspection by either plaintiff or

31   defendants at all times.

32         Section Eighth:  Whenever the total normal flow of said Temecula-Santa

- 45 -

Exhibit "A"
page 5

3009

Margarita River (when not artificially diverted or abstracted) measured at gaging station No. Three (3) exceeds the total normal flow measured at Gaging Station No. Six (6), then and in that instance the flow of said stream at said Gaging Station No. Three (3) shall be considered as the total flow of said stream, and at such time the apportionments and allotments herein provided for shall be predicated upon the flow of said stream at said Gaging Station No. Three (3).

Section Ninth:  For the purpose of apportioning to defendants thirty-three and one-third per cent (33-1/3%) of the waters of said stream as in Section Third provided, it shall be deemed that an amount of water equal to one-half (1/2) the surface flow at Station No. Six (6) or Station No. Three (3), wherever the flow is the greater (as provided in Section Eighth), pumped and/or diverted from the subsurface and/or surface waters of said river at points upstream from said Station No. Three (3), shall constitute thirty-three and one-third per cent (33-1/3%) of the waters of said stream.

It is recognized that the practical operation of the various pumping plants upon the defendants' lands for irrigation makes it difficult, if not impossible, for defendants to abstract and divert each day an amount of water the exact equivalent of the proportion of the stream flow measured at Station No. Six (6), or Station No. Three (3) to which defendants are entitled under this decree.  Accordingly, whenever it is observed that defendants are abstracting and diverting, or have abstracted and diverted surface and/or underground waters in amounts in excess of that to which they are entitled hereunder, defendants, upon learning or being informed of such fact, thereupon shall reduce their diversions below the amount to which they are entitled under this decree, and shall continue such reduced diversions for the same period of time as near as is practicable and in an amount equivalent to the amount of water which defendants had diverted in excess of that to which they were entitled under this decree.

Section Tenth:  In addition to the thirty-three and one-third per cent (33-1/3%) of the waters of said stream herein in Section Third allotted to defendants, they may also divert or abstract from the underground waters of said Temecula-Santa Margarita River, but not from the surface waters of said stream, at the places, during the times and upon the conditions hereinafter in this

- 46 -

1  Section specifically set forth, but not otherwise, a specified amount of subsurface

2  water herein in this judgment referred to as "Storage Water".  The amount of

3  Storage Water which the defendants may divert or abstract during any irrigation

4  season shall be determined by the elevation of water (when not artificially

5  disturbed) on May 1st of each year in a certain well located on defendants' land

6  known as Windmill Well, in accordance with the following table:

| Depth of water below ground surface as shown in casing of Windmill Well on May 1st | Amount of Storage Water defendants may divert and apply to beneficial use during irrigation season |
|---|---|
| 20 feet or less | 1,500 acre feet |
| 30 feet | 1,125 acre feet |
| 40 feet | 750 acre feet |
| 50 feet | 375 acre feet |
| 60 feet or more | No acre feet |

15  At depths to water intermediate to those above stated proportionate quantities

16  of water may be taken.

17  The spreading of flood water which does not involve surface impoundment

18  (either temporary or otherwise) but which may raise the level of water in the

19  underground basin in which said Windmill Well is drilled and upon which said well

20  is located, shall not be considered as an artificial disturbance of the elevation

21  of water in said Windmill Well.  Storage water may be directed and used only upon

22  said lands of defendants hereinbefore described and not elsewhere.

23  For the purpose of indicating the places at which said Storage Water

24  may be pumped, reference is hereby made to "Plaintiff's Exhibit No. 265".  Said

25  Exhibit by reference has been incorporated into and constitutes a part of the

26  Transcript on Appeal in this action.  Reference is hereby made to said Transcript

27  and to said Exhibit No. 265 and by such reference said Exhibit is incorporated

28  into and constitutes a part of this judgment.

29  Shown upon said Exhibit No. 265, and extending in a generally northerly

30  and southerly direction, is a certain line of wells (hereafter referred to as the

31  E line of wells) designated on said Exhibit as E-3, E-2 North, E-1 North, E-1

32  South and E-2 South.

3011

- 47 -

Exhibit "A"
page 7

1   Easterly thereof, shown upon said Exhibit, and extending in a generally

2   northwesterly and southeasterly direction, is a certain line of wells (hereafter

3   referred to as the P.V. line of wells) designated on said Exhibit as P.V.9,

4   P.V.6, and P.V.6X.  Immediately adjacent to said P.V. line of wells and parallel

5   thereto, is a certain highway commonly known as Old Warners Ranch Road (now not

6   in common use).

7   (a)  Not more than Thirty per cent (30%) of said Storage Water which

8   defendants are entitled to pump during any irrigation season may be pumped from

9   that portion of defendants' lands lying between a line drawn through said E line

10   of wells and extended across said underground basin, and a line drawn through said

11   P.V. line of wells and extended across said basin.

12   (b)  At least seventy per cent (70%)of said Storage Water which defendants

13   are entitled to pump during any irrigation season shall be pumped from that portion

14   of defendants' lands lying easterly of a line drawn through said P.V. line of

15   wells and extended across said underground basin.

16   The well hereinbefore described as Windmill Well is situated on Pauba

17   Grant South sixty-seven degrees fifteen minutes (S 67 deg. 15 min) East of B. M. 11

18   a distance of approximately eleven hundred (1100) feet, and South fifty-seven

19   degrees twenty minutes (S 57 deg. 20 min), West of B. M. 12 a distance of approxi-

20   mately fifteen hundred eighty (1580) feet said bench marks being designated as

21   Nos. 11 and 12 on said Exhibit No. 265.

22   Should said Windmill Well collapse or otherwise cease to be available

23   or useful for the purpose of determining ground water elevations in the vicinity

24   thereof, then another well shall be drilled by the defendants in the same

25   general location at approximately the same ground surface elevation above sea

26   level, but not to exceed a distance of one hundred (100) feet from the location

27   of said Windmill Well.  Such new well shall be approximately the same depth and

28   diameter of casing as said Windmill Well.  In event the parties hereto are unable

29   to agree upon location, depth and diameter of casing of such well, these matters,

30   upon petition of the parties hereto or either of them, shall be determined by

31   order of this court.

32

3012

- 48 -

Exhibit "A"
page 8

1    For the purpose of determining defendants' total diversions of the
2  waters of the Temecula-Santa Margarita River and its tributaries (meaning
3  thereby to include both the allotment of thirty-three and one third per cent
4  (33 1/3%) of the waters of the river as defined in Section Third, and the
5  additional Storage Water as defined in this Section Tenth hereof), any water
6  abstracted or diverted by defendants from the underground waters of said
7  river (including underground basins of percolating water within the watershed
8  of said river and its tributaries) by use of wells or pumps or other means of
9  diversion, whether now existing or hereafter established, except as herein-
10  after in this section provided, shall be added to any surface diversions by the
11  defendants from the waters of said river.  Such abstractions by the defendants
12  of the underground waters of the Temecula-Santa Margarita River are, and for
13  all purposes of this judgment shall be (except as hereinafter provided) con-
14  sidered as diversions of the waters of said river, and are and shall be
15  chargeable against the fractional part of the surface flow of said stream and
16  the additional amount of Storage Waters herein allotted to defendants.

17    Water abstracted or diverted from said underground water of said
18  river which shall not be subject to the provisions of this section are as
19  follows:

20    1.  Windmill wells maintained by defendants for the purpose of
21  supplying water for cattle;

22    2.  Water used by defendants or their tenants for domestic use
23  exclusively (but not including any irrigation use);

24    3.  Waters which defendants may pump directly into the surface flow
25  of said stream pursuant to the requirements of Section Eleventh hereof.

26    Section Eleventh:

27    Part I.  During the irrigation season of each year, to wit, May 1 to
28  October 31, inclusive, excepting as otherwise in Part I of this Section permitted,
29  defendants shall cause to be maintained at Gaging Station No. Three (3) a
30  constant flow of water of not less than three (3) cubic feet per second (one
31  (1) cubic foot per second being the equivalent of fifty (50) miner's inches).

32    The surface flow at said Station No. Three (3) may be permitted to

3013 Exhibit "A"
page 9

fall below three (3) cubic feet per second during said irrigation season upon the following conditions and not otherwise:

1. Said surface flow shall not be permitted to fall below three (3) cubic feet per second for any continuous period of more than ten (10) days;

2. An interval of at least ten (10) days shall elapse between periods during which said surface flow falls below three (3) cubic feet per second;

3. Defendants shall contribute to the surface flow at Station No. Three (3), by means of pumping from Temecula Alluvial Basin, or otherwise, an amount of water equal to the amount that the actual flow during said period was less than the required flow of three (3) second feet;

4. Such contributions shall be made at the same rate and over the same period (as near as practicable) as the rate at which said surface flow was less than Three (3) second feet;

5. Such contributions shall be made immediately following the period in which said required flow of three (3) second feet was not maintained;

6. Defendants by means of pumping underground waters directly into the surface flow of the stream or otherwise during any period in which said required flow of three (3) second feet was not maintained, shall always maintain a constant surface flow at Station No. Three (3) of not less than two (2) second feet.

Part II. In the event that, during the irrigation season of any year, to wit, May 1 to October 31, inclusive, the irrigation of crops on said lands of defendants reasonably requires more water than they otherwise are entitled to take under this decree, defendants may abstract and divert underground waters only, in amounts in excess of that to which they are otherwise entitled hereunder. Such excessive diversions may be made upon the following conditions and not otherwise:

1. Excessive diversions shall not continue for a period to exceed eight (8) days consecutively;

2. Following any period of excessive diversion, an interval shall elapse before any further period of excessive diversion, which interval shall not be less than the number of days during the period of excessive diversions immediately preceding;

3014

- 50 -

3.  Defendants shall reduce their diversions below the amount to which they are otherwise entitled under this decree, such reductions to be in an amount not less than the amount of water which defendants have diverted in excess of that to which they are otherwise entitled under this decree;

4.  Such reductions of their diversions shall be made by defendants immediately following the period during which such excessive diversions were made and shall be completed within ten (10) days thereafter;

5.  Defendants, at least one (1) day in advance of the commencement of such diversions, shall advise plaintiff in writing of their requirements and of their intention to avail themselves of the privilege of excessive diversions afforded under part II of this section.

Parts I and II of this Section Eleventh are complementary one of the other and not inconsistent one with the other and hereafter shall be so construed. The purpose of Part I is to require defendants to maintain a constant flow at Station No. three (3) of not less than three (3) cubic feet per second excepting under the conditions stated when the flow may be permitted to fall below three (3) cubic feet per second but not below two (2) cubic feet per second, and when such diminution of the stream flow occurs the amount of such diminution shall be contributed by the defendants by pumping directly into the surface flow of the stream from the Temecula Alluvial Basin or otherwise.  Part II permits defendants under the conditions stated to use for short periods amounts of water in excess of their allotment but requires them to contribute shortly thereafter the amount of such excessive diversions by reducing (in an amount not less than the amount of such excessive diversions) the amount of the diversions to which they are otherwise entitled.  No part of such excessive diversions is required to be contributed by defendants through direct pumping from the subsurface waters of the Temecula Alluvial Basin into the surface flow of the stream if, during the period of such excessive diversions, the constant stream flow at Station No. Three (3) equals or exceeds three (3) second feet.

Section Twelfth:  Defendants at all times shall be entitled to divert from the Temecula-Santa Margarita River and its tributaries, and to apply to beneficial use upon their said lands, an amount of water equal to one-half of

- 51 -

1   the amount which the plaintiff is entitled to divert from said river and its

2   tributaries and apply to beneficial use upon its lands.

3          For the purpose of determining the amount of water which defendants

4   are entitled to divert and apply to such beneficial use, computations of the

5   amount of water diverted and applied to beneficial use by each of the parties

6   hereto shall be made monthly, based on joint measurements maintained as herein

7   required.  In event said measurements disclose that the amount of water which

8   defendants are entitled to divert and apply to beneficial use pursuant to the

9   provisions of this judgment is less than one-half the amount being applied to

10  beneficial use by plaintiff, thereupon defendants shall be entitled to increase

11  their diversions and applications to beneficial use to an amount sufficient to

12  make defendants' diversions and applications to beneficial use equal to one-half

13  the amount diverted and applied by plaintiff; provided, however, that such

14  additional diversions and applications, if and when made, shall be in addition

15  to diversions made under Sections Third and Tenth hereof, and shall be made by

16  defendants during the irrigation season in which such right accrues, or in the

17  first subsequent season, or part in the same season and the remainder in the

18  first subsequent season, and such diversion, if any, shall be made by pumping

19  from the underground basin at points easterly from said P. V. line of wells.

20         Section Thirteenth:  Each of the parties hereto shall have the right

21  to construct dams or reservoirs on its or their respective lands or elsewhere,

22  for the purpose of intercepting or impounding or conserving such party's share

23  of the flood waters of said river and its tributaries; provided, however, in

24  the event any such dam or reservoir is hereafter constructed by defendants for

25  such purpose, the rights of defendants to abstract and divert Storage Water

26  pursuant to Section Tenth hereof shall cease and terminate.

27         Defendants shall not make, during any irrigation season, any surface

28  diversions of the waters of said river at the Bridge Pumping Plant, the Cantarini

29  Pumping Plant or the Tule Pumping Plant referred to in the findings herein, or

30  at any other point on said Temecula-Santa Margarita River below the point of

31  Rising Water as shown on said Exhibit No. 265.

32         Section Fourteenth:  The plaintiff, Rancho Santa Margarita, a corporation,

shall have and recover of and from the defendants, its costs and disbursements

- 52 -

3016   Exhibit "A"
       page 12

herein taxed at Six Thousand Thirty-Six and 62/100 Dollars ($6,036.62).

Dated at San Diego, California, this 26th day of December, 1940.


GORDON THOMPSON<br>
Judge

Records indicate that this judgment was recorded in San Diego and Riverside Counties on 26 December 1940.

- 53 -

Exhibit "B"

DESCRIPTION OF LANDS WITHIN THE COAHUILA INDIAN RESERVATION

WHICH ARE EITHER WITHIN THE SANTA MARGARITA RIVER WATERSHED OR ARE

TRAVERSED BY THE SANTA MARGARITA RIVER WATERSHED LINE


South half of Section 14, Section 23, and Sections 25, 26, 27, 28, 33,

34, 35 and 36, all in Township 7 South, Range 2 East, SBBM.

Sections 26, 27, 28, 29, 30, 31, 32, 33, 34 and 35, all in Township 7

South, Range 3 East, SBBM.

Sections 1, 2, 3 and 4, all in Township 8 South, Range 2 East.  SBBM.

Sections 2, 3, 4, 5, 6 and the North half of Lot 3 in Section 8, all in

Township 8 South, Range 3 East, SBBM.

Exhibit "B"

3018

Exhibit "C"

DESCRIPTION OF LANDS WITHIN THE PECHANGA INDIAN RESERVATION

WHICH ARE EITHER WITHIN THE SANTA MARGARITA RIVER WATERSHED OR ARE

TRAVERSED BY THE SANTA MARGARITA RIVER WATERSHED LINE

Section 25, Section 26, Section 27, except for the Northwest quarter of

the Northwest quarter, Section 34, except for Lot 16, Section 35, Section

36, except for the Southwest quarter of the Northwest quarter.  The follow-

ing described property in Section 28:

        Northeast quarter of Southeast quarter;

        South half of Southeast quarter, except for Lot 7;

        and Southeast quarter of Southwest quarter.

All of the above described property is in Township 8 South, Range 2 West,

SBBM.

Lot E of the Little Temecula Rancho.

- 55 -

Exhibit "C"

3019

Exhibit "D"

DESCRIPTION OF LANDS WITHIN THE RAMONA INDIAN RESERVATION

WHICH ARE EITHER WITHIN THE SANTA MARGARITA RIVER WATERSHED OR ARE

TRAVERSED BY THE SANTA MARGARITA RIVER WATERSHED LINE

The North half of the Southwest quarter; Southeast quarter of the South-

west quarter, and the South half of the Southeast quarter of Section 32,

and the Southwest quarter of the Southwest quarter of Section 33, all in

Township 6 South, Range 3 East, SBBM.  Northwest quarter of the Northwest

quarter of Section 4, and the Northeast quarter of the Northeast quarter of

Section 5, all in Township 7 South, Range 3 East, SBBM.

Exhibit "D"

3020

Exhibit "E"

DESCRIPTION OF LANDS WITHIN THE CLEVELAND NATIONAL FOREST

WHICH ARE EITHER WITHIN THE SANTA MARGARITA RIVER WATERSHED

OR ARE TRAVERSED BY THE SANTA MARGARITA RIVER WATERSHED LINE

$W\frac{1}{2}$, and $SE\frac{1}{4}$ of Section 30.

All of Section 31 except the following:

$E\frac{1}{2}$ of $SE\frac{1}{4}$ of $NW\frac{1}{4}$; and $SW\frac{1}{4}$ of $NE\frac{1}{4}$ and $N\frac{1}{2}$ of $NW\frac{1}{4}$

of $SE\frac{1}{4}$; and Lots 3, 6 and 7; $SW\frac{1}{4}$ of $SE\frac{1}{4}$ of $NW\frac{1}{4}$;

and $NE\frac{1}{4}$ of $SW\frac{1}{4}$; and $N\frac{1}{2}$ of $SE\frac{1}{4}$ of $SW\frac{1}{4}$.

Section 32.

$SW\frac{1}{4}$ of Section 33.                    **All in Township 8 South, Range 1 East**

$S\frac{1}{2}$; $NW\frac{1}{4}$; $E\frac{1}{2}$ of $NW\frac{1}{4}$ of $NE\frac{1}{4}$; $NE\frac{1}{4}$ of $NE\frac{1}{4}$;

$N\frac{1}{2}$ of $SE\frac{1}{4}$ of $NE\frac{1}{4}$; and $SE\frac{1}{4}$ of $SE\frac{1}{4}$ of

$NE\frac{1}{4}$ of Section 3.

Sections 4, 5, 6, 7, 8, 9 and 10.

$W\frac{1}{2}$ and $SE\frac{1}{4}$ of Section 11.

$SW\frac{1}{4}$ of Section 12.

Sections 13, 14, 15, 16 and 17.

All of Section 18, except the $SW\frac{1}{4}$ of $SE\frac{1}{4}$.

$W\frac{1}{2}$ and $E\frac{1}{2}$ of $SE\frac{1}{4}$ of Section 19.

$SW\frac{1}{4}$ of $NW\frac{1}{4}$; $W\frac{1}{2}$ of $SW\frac{1}{4}$; $NE\frac{1}{4}$ of $NW\frac{1}{4}$; $N\frac{1}{2}$ of

$NE\frac{1}{4}$ and $SE\frac{1}{4}$ of $NE\frac{1}{4}$ of Section 20.

Sections 21, 22, 23, 24 and 25.

Lot 1 ($NW\frac{1}{4}$ of $NE\frac{1}{4}$), and $NW\frac{1}{4}$ of $NW\frac{1}{4}$ of Section 30.

**All in Township 9 South, Range 1 East**

Lots 15 and 16 ($S\frac{1}{2}$ of $SE\frac{1}{4}$) of Section 17.

Lots, 3, 4, 5, 6, 9, 10, 11, 12, 13, 14, 15

and 16 ($W\frac{1}{2}$ and $SE\frac{1}{4}$) of Section 18.

Section 19.

3021

Exhibit "E"

Lots 3 and 4 (N½ of NW¼); Lot 5 (SW¼ of NW¼); Lots 12

and 13 (W½ of SW¼); Lot 14 (SE¼ of SW¼); and Lot

15 (SW¼ of SE¼) of Section 20.

Lots 3, 4, 5, 6, 11, 12, 13 and 14 (W½) and Lots 9,

10, 15 and 16 (SE¼) of Section 28.

Sections 29, 30, 31, 32 and 33.

Lot 4 and 5 (W½ of NW¼); W½ of Lots 3 and 6 (W½ of E½ of NW¼);

and Lots 9, 10, 11, 12, 13, 14, 15 and 16 (S½)

of Section 34.                              All in Township 9 South, Range 2 East

Sections 2, 3, 4 and 5.                     All in Township 10 South, Range 2 East

E½ of Fractional Section 22.

Fractional Section 23.

N½, N½ of SW¼, and E½ of SE¼ of Section 25.

Section 26 and 27.

W½ of SW¼, W½ of E½ of SW¼, and E½ of SE¼ of

Section 28.

S½, NW¼, and S½ of NE¼ of Section 29.

Sections 30, 31, 32, 33, 34 and 35.

W½ of W½; SE¼ of NW¼; SE¼ of SW¼; NE¼ of NE¼, and

S½ of SE¼ of SE¼ of Section 36.            All in Township 8 South, Range 1 West

E½ of E½; SW¼ of SE¼; E½ of NE¼ of SW¼; S½ of SW¼; NW¼ of NW¼; and

NW¼ of SW¼ of NW¼ of Section 1.

All of Section 2 except:   SE¼ of NE¼ of NW¼; NE¼ of

SE¼ of NW¼; N½ of SW¼ of NE¼; S½ of SW¼ of NW¼ of

NE¼; SE¼ of SE¼ of NE¼; and E½ of NE¼ of SE¼.

Sections 3, 4, 5, 6, 9, 10, 11, 12, 13, 14 and 15.

                                           All in Township 9 South, Range 1 West

Section 1.                                 All in Township 9 South, Range 2 West

3022

- 58 -                              Exhibit "E"

1

**TRABUCO AREA**

2

Sections 14,23, 26 and 27 EXCLUDING

3

portions within Homestead Entry Surveys

4

No. 48, 49 and 54.                    All in Township 8 South,Range 5 West,SBBM.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

3023

Exhibit "E"

Exhibit "E"

DESCRIPTION OF LANDS WITHIN THE SAN BERNARDINO NATIONAL FOREST
WHICH ARE EITHER WITHIN THE SANTA MARGARITA RIVER WATERSHED OR ARE
TRAVERSED BY THE SANTA MARGARITA RIVER WATERSHED LINE

Sections 14, 23 and 24.

North half of Sections 25 and 26.                    All in T6S,R1E

Sections 30, 31, 32 and 33.                          All in T6S,R2E

Sections 28, 29, 32, 33 and 34.
EXCEPT from Section 32 the South half of the
Southeast quarter, the East half of the South-
west quarter, and the Northwest quarter of the
Southwest quarter.  AND EXCEPT the Southwest
quarter of Southwest quarter in Section 33.          All in T6S,R3E

Sections 4, 6, 8, 10, 16, 18 and 19.
North half, and North half of Southeast quarter,
and Southwest quarter of Section 20.                 All in T7S,R2E

Southwest quarter of Section 1
Sections 2, 3 and 12                                 All in T7S,R3E

South half of fractional Section 7,
Southwest quarter of Section 8
Section 16
South half, and South half of North half of
Section 17.
Fractional Section 18.                               All in T7S,R4E

Exhibit "E"

3024

Exhibit "F"

<u>LICENSEES PERMITTED TO USE WATERS ARISING</u>

<u>UPON THE CLEVELAND NATIONAL FOREST</u>


<u>Lloyd, Milton M. and Evelyn M.</u>

Location of diversion within the Cleveland National Forest:

               Northeast quarter of the Northwest quarter

               of Section 20, Township 9 South, Range 2 East, SBBM.

Application to appropriate water No. 6893 filed with the State of California.

Permit No. 3719 issued by the State of California.

License No. 2843 issued by the State of California.

U. S. Forest Service special use permit issued.

Location of diversion within the Cleveland National Forest:

               Southwest quarter of the Northwest quarter,

               Section 20, Township 9 South, Range 2 East, SBBM.

Application to appropriate water No. 7731 filed with the State of California.

Permit 4259 issued by the State of California.

License No. 2844 issued by the State of California.

U.S. Forest Service special use permit issued.


<u>Jurkovich, B. M.</u>

Location of diversion within the Cleveland National Forest:

               Northwest quarter of the Northeast quarter of

               Section 25, Township 8 South, Range 1 West, SBBM.

Application to appropriate water No. 8484 filed with the State of California.

Permit No. 4698 issued by the State of California.

License No. 2400 issued by the State of California.

U.S. Forest Service special use permit issued.


<u>Williamson, Leonard L. and Sarah.</u>

Location of diversion within the Cleveland National Forest:

               Northeast quarter of the Southwest quarter,

               in Section 12, Township 9 South, Range 1 East, SBBM.

Application to appropriate water No. 9137 filed with the State of California.

1    Permit No. 5090 issued by the State of California.

2    License No. 3268 issued by the State of California.

3    U.S. Forest Service special use permit issued.

4

5    Ewing, Cyril M.

6    Location of diversion within the Cleveland National Forest:

7                Southwest quarter of the Southeast quarter,

8                Section 23, Township 8 South, Range 5 West, SBBM.

9    Application to appropriate water No. 9242 filed with the State of California.

10   Permit 5206 issued by the State of California.

11   License No. 2596 issued by the State of California.

12   U.S. Forest Service special use permit issued.

13

14   Cook, Emery A.

15   Location of diversion within the Cleveland National Forest:

16                East half of Section 23, Township 8 South,

17                Range 5 West, SBBM.

18   Application to appropriate water No. 9291 filed with the State of California.

19   Permit No. 5201 issued by the State of California.

20   U.S. Forest Service special use permit issued.

21

22   Lohman, Edgar S.

23   Location of diversion within the Cleveland National Forest:

24                Southeast quarter of the Southeast quarter,

25                Section 29, Township 8 South, Range 1 West, SBBM.

26   Application to appropriate water No. 10269 filed with the State of California.

27   Permit No. 5926 issued by the State of California.

28   License No. 2741 issued by the State of California.

29   U.S. Forest Service special use permit issued.

30

31   Grammer, Martin

32   Location of diversion within the Cleveland National Forest:

                 Northeast quarter of the Southwest quarter,

-62 -                    3026 Exhibit "F"

Section 34, Township 9 South, Range 2 East, SBBM.

Application to appropriate water No. 10806 filed with the State of California.

Permit No. 6279 issued by the State of California.

License No. 4356 issued by the State of California.

U.S. Forest Service special use permit issued.

Pursche, Roy C. and Carl P.

Location of diversion within the Cleveland National Forest:

Northeast quarter of the Northwest quarter,

Section 28, Township 9 South, Range 2 East, SBBM.

Application to appropriate water No. 11161 filed with the State of California.

U.S. Forest Service permit issued.

Oviatt, James

Location of diversions within the Cleveland National Forest:

Section 33, Township 9 South, Range 2 East, SBBM.

Section 17, Township 9 South, Range 2 East, SBBM.

U. S. Forest Service Special use permits issued.

-63 -

Exhibit "F"

3027

Exhibit "G"

DESCRIPTION OF LANDS WITHIN THE PUBLIC DOMAIN

WHICH ARE EITHER WITHIN THE SANTA MARGARITA RIVER WATERSHED

OR ARE TRAVERSED BY THE SANTA  MARGARITA RIVER WATERSHED LINE

AND ADMINISTERED BY THE BUREAU OF LAND MANAGEMENT, DEPARTMENT OF THE INTERIOR

The following lands in Township 6 South, Range 1 East; SBBM:

Lots 1, 2, 3 and 4 in Section 22.

$NE\frac{1}{4}$ of the $NE\frac{1}{4}$ of the $SE\frac{1}{4}$ and the $W\frac{1}{2}$ of the $W\frac{1}{2}$ of the $SE\frac{1}{4}$ of the $SE\frac{1}{4}$,

all in Section 26.

$E\frac{1}{2}$ of the $E\frac{1}{2}$ of the $NE\frac{1}{4}$ of the $SW\frac{1}{4}$, and the $SW\frac{1}{4}$ of the $NW\frac{1}{4}$ of the $SW\frac{1}{4}$,

and the $W\frac{1}{2}$ of the $SE\frac{1}{4}$ of the $NW\frac{1}{4}$ of the $SW\frac{1}{4}$, all in Section 28.

$S\frac{1}{2}$ of the $NW\frac{1}{4}$, and $SW\frac{1}{4}$ of the $NE\frac{1}{4}$, and $NW\frac{1}{4}$ of the $SW\frac{1}{4}$, all in Section 32.

$SE\frac{1}{4}$ of the $SW\frac{1}{4}$, $E\frac{1}{2}$ of the $E\frac{1}{2}$ of the $SE\frac{1}{4}$, and $E\frac{1}{2}$ of the $SE\frac{1}{4}$ of the $NE\frac{1}{4}$,

all in Section 36.

The following lands in Township 7 South, Range 1 East; SBBM:

Lot 3, and $SE\frac{1}{4}$ of the $SE\frac{1}{4}$, all in Section 4.

$N\frac{1}{2}$ of the $N\frac{1}{2}$, and $SE\frac{1}{4}$ of the $NE\frac{1}{4}$ and $SE\frac{1}{4}$, all in Section 10.

$W\frac{1}{2}$ of Section 12.

$NW\frac{1}{4}$ of the $NW\frac{1}{4}$ in Section 14.

$NE\frac{1}{4}$ of the $SE\frac{1}{4}$ in Section 24.

Lots 3 and 4 and $E\frac{1}{2}$ of the $SW\frac{1}{4}$ in Section 30.

The following lands in Township 7 South, Range 2 East; SBBM:

Fractional Section 12.

$NE\frac{1}{4}$ of the $SW\frac{1}{4}$ in Section 13.

The following lands in Township 7 South, Range 3 East; SBBM:

Lots 5,6,7,8 and fractional $NE\frac{1}{4}$ of the $NW\frac{1}{4}$ ($NW\frac{1}{4}$, EXCEPT for the $NW\frac{1}{4}$ of the

$NW\frac{1}{4}$); and Lot 4 ($NW\frac{1}{4}$ of the $NE\frac{1}{4}$), and $SW\frac{1}{4}$ of the $SE\frac{1}{4}$, all in Section 4.

Lots 5,6,7 and 8 ($NE\frac{1}{4}$) in Section 6.

Lot 1 in Section 8.

- 64 -

Exhibit "G"

3028

$N\frac{1}{2}$ of $NE\frac{1}{4}$ of $SE\frac{1}{4}$ and $S\frac{1}{2}$ of $SW\frac{1}{4}$ of $SE\frac{1}{4}$ and $S\frac{1}{2}$ of $SW\frac{1}{4}$ and $S\frac{1}{2}$ of $NE\frac{1}{4}$ of $SW\frac{1}{4}$, all in Section 13.

$S\frac{1}{2}$ of $SE\frac{1}{4}$, in Section 18.

$SE\frac{1}{4}$ of Section 19.

$N\frac{1}{2}$ of $NE\frac{1}{4}$ of Section 36.

The following lands in Township 7 South, Range 4 East; SBBM:

$SW\frac{1}{4}$ of $SW\frac{1}{4}$ of Section 20.

Entire Section 28.

Lot 1 and $NE\frac{1}{4}$ of $NE\frac{1}{4}$ of fractional Section 30.

The following lands in Township 8 South, Range 1 East; SBBM:

Lots 1, 2, 3 and 4; & $S\frac{1}{2}$ of $NE\frac{1}{4}$; & the $SW\frac{1}{4}$ of Section 4.

Lots 3 and 4 of Section 5.

$NE\frac{1}{4}$ of the $SW\frac{1}{4}$, Section 7.

Lots 3 and 4 of Section 10.

$SW\frac{1}{4}$ of $SE\frac{1}{4}$, $S\frac{1}{2}$ of the $SW\frac{1}{4}$ & the $NW\frac{1}{4}$ of the $SW\frac{1}{4}$, Section 13.

Lots 1,2,3,4,5,7,8 and 12 of Section 15.

$E\frac{1}{2}$, Section 16.

$SE\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 17.

$E\frac{1}{2}$ of the $NW\frac{1}{4}$, $NE\frac{1}{4}$, & the $NW\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 20.

$N\frac{1}{2}$, $N\frac{1}{2}$ of the $S\frac{1}{2}$, & the $S\frac{1}{2}$ of the $SE\frac{1}{4}$, Section 21.

Lots 10,11,12,13,14 and 15 and $W\frac{1}{2}$ of Lots 9 and 16 of Section 22.

$SE\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 23.

Lots 5,6,7 and 8; & $SE\frac{1}{4}$ of the $NE\frac{1}{4}$, SEction 24.

$N\frac{1}{2}$ & $N\frac{1}{2}$ of $S\frac{1}{2}$, Section 25.

Lots 1,2,4 and 5 of Section 26.

$N\frac{1}{2}$ of the $NW\frac{1}{4}$, $NW\frac{1}{4}$ of the $NE\frac{1}{4}$, $NE\frac{1}{4}$ of the $SW\frac{1}{4}$, & the $NW\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 27.

$SW\frac{1}{4}$ of the $NE\frac{1}{4}$, Section 30.

$SW\frac{1}{4}$ of the $NW\frac{1}{4}$ & the $SW\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 33.

Exhibit "G"

3029

GPO 16—60308-1

Lot 12 of Section 35.

The following lands in Township 8 South, Range 2 East; SBBM:

SE$\frac{1}{4}$ of the NE$\frac{1}{4}$, Section 7.

NE$\frac{1}{4}$ of the SW$\frac{1}{4}$ & the SW$\frac{1}{4}$ of the SE$\frac{1}{4}$, Section 8.

Lots 5,6,7,8, 11 and 12 of Section 11.

The following lands in  Township 8 South, Range 2 East; SBBM:

Lots 17, 18 and 19 of Section 12.

NW$\frac{1}{4}$ of the NW$\frac{1}{4}$, Section 14.

W$\frac{1}{2}$, Section 16.

S$\frac{1}{2}$, Section 17.

Lots 2 and 4; SE$\frac{1}{4}$ of the NW$\frac{1}{4}$; E$\frac{1}{2}$ of the NE$\frac{1}{4}$; and SW$\frac{1}{4}$ of the NE$\frac{1}{4}$, Section 18.

Lots 1, 2 and 4; SE$\frac{1}{4}$ of SW$\frac{1}{4}$, NE$\frac{1}{4}$ of the SE$\frac{1}{4}$, & the S$\frac{1}{2}$ of the SE$\frac{1}{4}$, Section 19.

NW$\frac{1}{4}$ of the SW$\frac{1}{4}$ & the S$\frac{1}{2}$ of the S$\frac{1}{2}$, Section 20.

S$\frac{1}{2}$ of the SW$\frac{1}{4}$ & the SW$\frac{1}{4}$ of the SE$\frac{1}{4}$, Section 21.

SE$\frac{1}{4}$ of the SE$\frac{1}{4}$, Section 22.

S$\frac{1}{2}$ of the S$\frac{1}{2}$, Section 23.

NE$\frac{1}{4}$ of the SE$\frac{1}{4}$ & the S$\frac{1}{2}$ of the S$\frac{1}{2}$, Section 24.

Section 25.

E$\frac{1}{2}$ of the NE$\frac{1}{4}$ & the S$\frac{1}{2}$ of the SW$\frac{1}{4}$, Section 26.

N$\frac{1}{2}$ & the SW$\frac{1}{4}$, Section 27.

N$\frac{1}{2}$ of the NW$\frac{1}{4}$ & the S$\frac{1}{2}$, Section 28.

N$\frac{1}{2}$ & the S$\frac{1}{2}$ of the SW$\frac{1}{4}$ & the SW$\frac{1}{4}$ of the SE$\frac{1}{4}$, Section 29.

Lots 1, 2 and 3; NE$\frac{1}{4}$; E$\frac{1}{2}$ of NW$\frac{1}{4}$; NE$\frac{1}{4}$ of SW$\frac{1}{4}$; & the SE$\frac{1}{4}$ of the SE$\frac{1}{4}$, Section 30.

NE$\frac{1}{4}$ of the NE$\frac{1}{4}$, Section 31.

N$\frac{1}{2}$ of the N$\frac{1}{2}$; SE$\frac{1}{4}$ of the NW$\frac{1}{4}$; S$\frac{1}{2}$ of the NE$\frac{1}{4}$, N$\frac{1}{2}$ of the S$\frac{1}{2}$ & the S$\frac{1}{2}$ of the SE$\frac{1}{4}$, Section 32.

NW$\frac{1}{4}$ & the S$\frac{1}{2}$, Section 33.

NE$\frac{1}{4}$ of the NE$\frac{1}{4}$ & the S$\frac{1}{2}$, Section 34.

NW$\frac{1}{4}$ & the W$\frac{1}{2}$ of the NE$\frac{1}{4}$; & the S$\frac{1}{2}$, Section 35.

NW$\frac{1}{4}$ of the NW$\frac{1}{4}$, E$\frac{1}{2}$ of the NW$\frac{1}{4}$, NE$\frac{1}{4}$; & the S$\frac{1}{2}$, Section 36.

Exhibit "G"

3030

The following lands in Township 8 South, Range 3 East; SBBM:

Lots 8, 9, 10, 11, 12, 13, 14 and 15 of Section 7.

Lots 7, 8 and 12 of Section 8.

Lots 14 of Section 9.

$E\frac{1}{2}$ of the $NW\frac{1}{4}$ & the $S\frac{1}{2}$, Section 16.

$NE\frac{1}{4}$; $E\frac{1}{2}$ of the $SE\frac{1}{4}$; & Lot 4, Section 18.

Lots 3 and 4 and $E\frac{1}{2}$ of $SW\frac{1}{4}$, Section 19.

$NW\frac{1}{4}$, $W\frac{1}{2}$ of the $SW\frac{1}{4}$, $SE\frac{1}{4}$ of the $SW\frac{1}{4}$; $S\frac{1}{2}$ of the $SE\frac{1}{4}$; $NE\frac{1}{4}$ of the $SE\frac{1}{4}$; & the $E\frac{1}{2}$ of the $NE\frac{1}{4}$, Section 20.

Section 22, 26, 28, 29, and 30 (All entire).

$NE\frac{1}{4}$; $E\frac{1}{2}$ of $W\frac{1}{2}$; Lots 1 to 4; & the $E\frac{1}{2}$ of the $SE\frac{1}{4}$, Section 31.

Sections 32, 33, 34 and 36 (All entire).

The following lands in Township $8\frac{1}{2}$ South, Range 3 East; SBBM:

Sections 31, 32, 33, 34, 35 and 36 (All entire).


The following lands in Township 9 South, Range 1 East; SBBM:

$W\frac{1}{2}$ of $NW\frac{1}{4}$, and $NW\frac{1}{4}$ of $SW\frac{1}{4}$ and $E\frac{1}{2}$ of $SW\frac{1}{4}$ and $SE\frac{1}{4}$, all in Section 2.

$NE\frac{1}{4}$ in Section 11.

$W\frac{1}{2}$ of $NW\frac{1}{4}$, Section 12.


The following lands in Township 9 South, Range 2 East; SBBM:

Lots 1 through 12 in Section 1.

Lots 1 through 14 in Section 2.

Section 3.

Lots 1,2,3,4,8,9,15 and 16 in Section 4.

Lots 1,2,7,8 and 9 in Section 5.

Lots 2,3,4,6,7,9,10 and 11 in Section 8.

Lots 8 and 12 in Section 9.

Lots 1,2,3,4 & 5 and $E\frac{1}{2}$ of Lot 16 in Section 10.

Lots 1,4,7,8,12,13 and 14 in Section 11.

Lot 1 and Lots 3 through 16 in Section 12.

- 67 -

1    Section 13.

2    Section 14, EXCEPT for Lot 13.

3    Lot 8 in Section 15.

4    Lot 15 in Section 16.

5    Lot 6, $S\frac{1}{2}$ of Lot 7, Lots 9, 10 and 13 in Section 21.

6    Lot 12 and $N\frac{1}{2}$ of Lot 14, and the $SE\frac{1}{4}$ of Lot 14, and $S\frac{1}{2}$ of Lot 10, and Lot

7    15, all in Section 22.

8    Lots 1, 2, 3, 6, 7 and 8 in Section 23.

9    Lots 1,2,4,6,7 and 8 in Section 24.

10    $N\frac{1}{2}$, and $N\frac{1}{2}$ of $SW\frac{1}{4}$, and $NW\frac{1}{4}$ of $SE\frac{1}{4}$ in Section 25.

11    Lots 9, 15 and 16 in Section 26.

12    Lot 17 ($N\frac{1}{2}$ of $SE\frac{1}{4}$ of $NE\frac{1}{4}$) and $E\frac{1}{2}$ of Lot 2 in Section 27.

13    Lot 4 ($NW\frac{1}{4}$ of $NE\frac{1}{4}$) in Section 28.

14

15    <u>The following lands in Township 9 South, Range 3 East; SBBM:</u>

16    $S\frac{1}{2}$ of $NW\frac{1}{4}$, and $SW\frac{1}{4}$ in Section 3.

17    $S\frac{1}{2}$ and $S\frac{1}{2}$ of $NE\frac{1}{4}$ in Section 4.

18    Section 5.

19    Lots 8 and 9 ($N\frac{1}{2}$ of $NW\frac{1}{4}$), Lot 10 (Fractional $SE\frac{1}{4}$ of $NW\frac{1}{4}$), Lots 11, 12 and 13

20    (being fractional $NE\frac{1}{4}$ of $SW\frac{1}{4}$, $SW\frac{1}{4}$ of $SW\frac{1}{4}$, and $SE\frac{1}{4}$ of $SW\frac{1}{4}$, respectively),

21    $SE\frac{1}{4}$, and $SW\frac{1}{4}$ of $NE\frac{1}{4}$, all in Section 6.

22    $N\frac{1}{2}$ of $NE\frac{1}{4}$, and $SW\frac{1}{4}$ of $NE\frac{1}{4}$, and $S\frac{1}{2}$ of $NW\frac{1}{4}$, and $W\frac{1}{2}$ of $SE\frac{1}{4}$, and $SW\frac{1}{4}$, in

23    Section 7.

24    $SE\frac{1}{4}$ of $NW\frac{1}{4}$, in Section 8.

25    $N\frac{1}{2}$ of $NW\frac{1}{4}$ in Section 9.

26    $N\frac{1}{2}$ of $N\frac{1}{2}$, and $SW\frac{1}{4}$ of $NE\frac{1}{4}$, and $NW\frac{1}{4}$ of $SE\frac{1}{4}$, in Section 10.

27    $S\frac{1}{2}$ in Section 11.

28    $N\frac{1}{2}$ of $N\frac{1}{2}$, and $SE\frac{1}{4}$ of $NE\frac{1}{4}$, in Section 12.

29    Lots 1, 2 & 3, and $NE\frac{1}{4}$ of $NW\frac{1}{4}$, and $NW\frac{1}{4}$ of $NE\frac{1}{4}$, in Section 18.

30    $NW\frac{1}{4}$, and $E\frac{1}{2}$ of $SW\frac{1}{4}$, and $SE\frac{1}{4}$, in Section 19.

31    $SW\frac{1}{4}$ of $SW\frac{1}{4}$, and $E\frac{1}{2}$ of $W\frac{1}{2}$, and $E\frac{1}{2}$ in Section 20.

32

Exhibit "G"

3032

OPO 16—23968-1

The following lands in Township 6 South, Range 1 West; SBBM:

Lot 7 and $SE\frac{1}{4}$ of $SW\frac{1}{4}$, and $SW\frac{1}{4}$ of $SE\frac{1}{4}$, all in Section 6.

$SW\frac{1}{4}$ of $NE\frac{1}{4}$, $W\frac{1}{2}$ of $SE\frac{1}{4}$, and $SE\frac{1}{4}$ of $SE\frac{1}{4}$, all in Section 10.

$SW\frac{1}{4}$ of $SW\frac{1}{4}$, in Section 26.


The following lands in Township 6 South, Range 2 West; SBBM:

Lot 4, $S\frac{1}{2}$ of $NW\frac{1}{4}$, and $SW\frac{1}{4}$ of $NE\frac{1}{4}$, all in Section 4.

Section 14.

$NE\frac{1}{4}$ of $SW\frac{1}{4}$, and $NW\frac{1}{4}$ of $SE\frac{1}{4}$, all in Section 20.

$NW\frac{1}{4}$ of $NW\frac{1}{4}$, $SW\frac{1}{4}$ of $SW\frac{1}{4}$, and $NW\frac{1}{4}$ of $SE\frac{1}{4}$, all in Section 24.


The following lands in Township 6 South, Range 3 West; SBBM:

Lots 1 and 2, and $S\frac{1}{2}$ of $SE\frac{1}{4}$, all in Section 30.

$N\frac{1}{2}$ of $NW\frac{1}{4}$, $N\frac{1}{2}$ of $NE\frac{1}{4}$, and $SE\frac{1}{4}$ of $NE\frac{1}{4}$, all in Section 32.


The following lands in Township 6 South, Range 4 West; SBBM:

$NW\frac{1}{4}$ of $NW\frac{1}{4}$, in Section 24.


The following lands in Township 7 South, Range 1 West; SBBM:

Lot 4 in Section 2.

Lot 7 in Section 6.

$E\frac{1}{2}$ of $NE\frac{1}{4}$, $NW\frac{1}{4}$ of $NE\frac{1}{4}$, $SW\frac{1}{4}$ of $NW\frac{1}{4}$, and $W\frac{1}{2}$ of $SW\frac{1}{4}$, in Section 8.

Lots 4,5 and 6 in Section 12.

Fractional Section 32.

$W\frac{1}{2}$ and $SE\frac{1}{4}$, in Section 34.


The following lands in Township 7 South, Range 2 West; SBBM:

$N\frac{1}{2}$ of $NW\frac{1}{4}$, $NE\frac{1}{4}$ of $NE\frac{1}{4}$, in Section 2.


The following lands in Township 8 South, Range 1 West; SBBM:

Fractional Section 4.

Lots 2 and 3 in Section 12.

-69-

Lots 4,5 6 and 7 in Section 13.

$SE\frac{1}{4}$, $SE\frac{1}{4}$ of $NW\frac{1}{4}$, and $E\frac{1}{2}$ of $SW\frac{1}{4}$, all in Section 19.

$W\frac{1}{2}$ of $SW\frac{1}{4}$, in Section 20.

$SE\frac{1}{4}$ of $SE\frac{1}{4}$, in Section 24.


The following lands in Township 8 South, Range 2 West; SBBM:

Lots 4 and 5, $S\frac{1}{2}$ of $SW\frac{1}{4}$, and $SE\frac{1}{4}$ of fractional Section 23.

$S\frac{1}{2}$ of $S\frac{1}{2}$, and $NE\frac{1}{4}$ of $SE\frac{1}{4}$, in Section 24.

$SW\frac{1}{4}$ of $SW\frac{1}{4}$, and Lot 2 in Section 29.

Lot 5, in Section 30.

$E\frac{1}{2}$, $SE\frac{1}{4}$ of $NW\frac{1}{4}$, $E\frac{1}{2}$ of $SW\frac{1}{4}$, and Lot 4 in Section 31.

$NW\frac{1}{4}$, $NE\frac{1}{4}$ of $SW\frac{1}{4}$, and $N\frac{1}{2}$ of $SE\frac{1}{4}$, in Section 32.


The following lands in Township 8 South, Range 3 West; SBBM:

$SE\frac{1}{4}$ of $SE\frac{1}{4}$, in Section 23.

Lots 1, 2 and 3, and $S\frac{1}{2}$ of $SW\frac{1}{4}$, in Section 24.

$W\frac{1}{2}$, $W\frac{1}{2}$ of $NE\frac{1}{4}$, and $SE\frac{1}{4}$, in Section 25.

$E\frac{1}{2}$ of $NE\frac{1}{4}$, and $NE\frac{1}{4}$ of $SE\frac{1}{4}$, in Section 26.

Lots 1 and 2 in Section 31.

$S\frac{1}{2}$ of $NW\frac{1}{4}$, $W\frac{1}{2}$ of $NE\frac{1}{4}$, $SE\frac{1}{4}$ of $NE\frac{1}{4}$, $NE\frac{1}{4}$ of $SE\frac{1}{4}$, and $N\frac{1}{2}$ of $SW\frac{1}{4}$, in Section 33.


The following lands in Township 8 South, Range 4 West, SBBM:

$S\frac{1}{2}$ of $S\frac{1}{2}$, in Section 26.

$SE\frac{1}{4}$, $S\frac{1}{2}$ of $NE\frac{1}{4}$, $S\frac{1}{2}$ of $NW\frac{1}{4}$, and $N\frac{1}{2}$ of $SW\frac{1}{4}$, in Section 27.

$S\frac{1}{2}$ of $SW\frac{1}{4}$, and $SW\frac{1}{4}$ of $SE\frac{1}{4}$, in Section 31.

$W\frac{1}{2}$ of $SE\frac{1}{4}$, in Section 32.

$SW\frac{1}{4}$ of $NE\frac{1}{4}$, and $N\frac{1}{2}$ of $SE\frac{1}{4}$ of $NE\frac{1}{4}$, in Section 33.

$NE\frac{1}{4}$ of $NE\frac{1}{4}$, in Section 34.

$N\frac{1}{2}$, $N\frac{1}{2}$ of $SW\frac{1}{4}$, $N\frac{1}{2}$ of $SE\frac{1}{4}$, and $SE\frac{1}{4}$ of $SE\frac{1}{4}$, in Section 35.


The following lands in Township 8 South, Range 5 West; SBBM:

Section 36.

$E\frac{1}{2}$ of $NW\frac{1}{4}$, Section 25.

3034

- 70-

Exhibit "G"

The following lands in Township 9 South, Range 2 West; SBBM:

SE$\frac{1}{4}$ of NW$\frac{1}{4}$, and N$\frac{1}{2}$ of SW$\frac{1}{4}$, in Section 4.

Lots 2,3,5 and 6 in Section 6.

The following lands in Township 9 South, Range 3 West; SBBM:

NW$\frac{1}{4}$ of NW$\frac{1}{4}$, in Section 1.

Lot 4 in Section 3.

SW$\frac{1}{4}$ of SE$\frac{1}{4}$, and SW$\frac{1}{4}$ of NE$\frac{1}{4}$, in Section 10.

NW$\frac{1}{4}$ of NW$\frac{1}{4}$, and NW$\frac{1}{4}$ of NE$\frac{1}{4}$, in Section 15.

The following lands in Township 9 South, Range 4 West; SBBM:

Lot 1, in Section 9.

The following lands in Township 9 South, Range 5 West; SBBM:

Fractional Section 3.

3035

-71-

Exhibit "G"

Exhibit "H"

## LICENSEES WHO HAVE BEEN PERMITTED TO USE WATERS
## ARISING UPON THE PUBLIC DOMAIN

Verdi Development Company

Location of diversion on the Public Domain:

   Southeast quarter of the Southeast quarter,

   Section 31, Township 8½ South, Range 3 East, SBBM.

Application to appropriate water No. 9259 filed with the State of California.

Permit No. 5179 issued by the State of California.

Worcester, Doris I.

Location of diversion on the Public Domain:

   Southwest quarter of the Southwest quarter,

   Section 12, Township 7 South, Range 2 East, SBBM.

Application to appropriate water No. 14707 filed with the State of California.

Permit No. 9038 issued by the State of California.

Exhibit "H"

3036