J. LEE RANKIN
SOLICITOR GENERAL
OF THE UNITED STATES
Washington 25, D. C.

Attorney for the UNITED STATES OF AMERICA



**FILED**

APR 21 1958

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

FALLBROOK PUBLIC UTILITY DISTRICT,
ET AL.,

        Defendants.

No. 1247-SD-C

NOTICE AND ORDERS

* * * * * * * * *

COMPLAINT

AND

SUPPLEMENTARY AND AMENDATORY COMPLAINT

HONORABLE JAMES M. CARTER,
United States District Judge,
Presiding

HONORABLE JOHN M. CRANSTON
Special Master

8059

SUBJECT INDEX

1  Subject Index                                                                          i.

2  Notice                                                                                 ii-iii

3  Order Setting Date for Trial and Revoking Orders Dated April 18, 1957,
4      and October 28, 1957, that no defaults would be entered pending
       Further Order of the Court                                                         iv-v

5  Order permitting inclusion by reference in the "Complaint and Supple-
6      mentary and Amendatory Complaint" the names of the parties-
       defendant set forth in the Summons issued on April 7, 1958                         vi

7  Order Directing Service of Orders and Related Data                                     vii

8  Order Respecting Cross-Pleadings                                                       viii

9  Order Respecting Responsive Pleadings                                                  ix

10 Complaint and Supplementary and Amendatory Complaint                                   1-40

11 Exhibits -

12     A - Stipulated Judgment                                                            41-53

13     B - Description of lands within Coahuila Indian Reservation                        54

14     C - Description of lands within Pechanga Indian Reservation                        55

15     D - Description of lands within Ramona Indian Reservation                          56

16     E - Description of lands within Cleveland National Forest                          57-59

17         Description of lands within San Bernardino National
18         Forest                                                                         60

19     F - Licensees permitted to use waters on Cleveland
           National Forest                                                                61-63

20
21     G - Description of lands within the public domain
           administered by the Bureau of Land Management                                 64-71

22     H - Licensees who have been permitted to use waters
23         arising upon the public domain                                                 72

   Order of Reference and Appointment of Special Master                                   73-77

24
25 Amendment to "Order of Reference and Appointment of Special
       Master", setting date of first hearing for May 21, 1958                            78

26 Supplemental order respecting binding effect and meaning of
27     stipulation dated November 29, 1951, entered into between
       the United States of America and the State of California                           79-80

28 Order respecting binding effect and meaning of stipulation
       dated November 29, 1951 originally entered between the
29     United States and the State of California                                          81-85

30 Stipulation between the United States and the State of
       California, dated November 29, 1951                                                86-88
31
32

3060

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 1247-SD-C |
| Plaintiff, | |
| v. | NOTICE OF DATE OF TRIAL; OF ORDER APPOINTING SPECIAL MASTER AND OP- |
| FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., | PORTUNITY TO OBJECT TO APPOINTMENT; AND NOTICE OF HEARING BEFORE |
| Defendants. | SPECIAL MASTER |

PLEASE TAKE NOTICE that the above entitled case will come on for trial before this Court in Court Room No. 2, United States District Court, 325 West F Street, San Diego 1, California, on the 16th day of June, 1958, at 10 o'clock in the forenoon of that day, or as soon thereafter as counsel can be heard.  There is attached a copy of the order setting the case for trial on this last mentioned date.

NOTICE IS ALSO HEREBY GIVEN of the Order of February 12, 1958, a copy of which is attached, entered by this Court appointing a Special Master to take evidence in this cause and otherwise to act all in accordance with that order.  Immediately prior to the initiation of the trial on June 16, 1958, the United States of America will bring on for hearing any objections to the appointment of the Special Master and to the powers conferred upon

- ii -

him by the last mentioned order of February 12, 1958.

NOTICE IS ALSO HEREBY GIVEN of the hearing before the Special Master, which will commence on the 21st day of May, 1958, at 10:00 o'clock in the forenoon at the Reche School House, near Live Oak Road, about two and one-half miles east of Fullbrook, California, all in accordance with the order of the Court, a copy of which is attached.

Dated: April 9, 1958.

UNITED STATES OF AMERICA


J. LEE RANKIN
Solicitor General


/s/   WILLIAM H. VEEDER
WILLIAM H. VEEDER
Attorney, Department of Justice


/s/ WILLIAM E. BURBY
WILLIAM E. BURBY
Attorney, Department of Justice

- iii -

3062

F I L E D
APR 9 1958 - 12:05 p.m.
Clerk, U.S.DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By /s/ William W. Luddy
                        Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                )
                                         )    No. 1247-SD-C
                    Plaintiff,           )
                                         )    ORDER SETTING DATE FOR TRIAL AND
         v.                              )    REVOKING ORDERS DATED APRIL 18,
                                         )    1957, and OCTOBER 28, 1957, THAT
FALLBROOK PUBLIC UTILITY DISTRICT,)      )    NO DEFAULTS WOULD BE ENTERED
et al.,                                  )    PENDING FURTHER ORDER OF THE COURT
                                         )
                    Defendants           )

Good cause having been shown,

IT IS HEREBY ORDERED that the trial of this case will commence before this Court, as distinguished from the Special Master, in Court Room No. 2, United States District Court, 325 West "F" Street, San Diego 1, California, on the 16th day of June, 1958, at 10 o'clock in the forenoon of that day, or as soon thereafter as counsel can be heard, subject to being continued from day to day and time to time, no further formal notice of the date of trial other than this order to be given.

This Court having on April 18, 1957, entered an ORDER FOR PRETRIAL CONFERENCE, which provided in part "that the Clerk enter no defaults as to any other parties defendant, until further order of this Court";

IT IS HEREBY ORDERED that that portion of the aforesaid order of April 18, 1957, providing "that the Clerk enter no defaults as to any other parties defendant, until further order of this Court", is hereby revoked.

This Court having on October 28, 1957, entered an ORDER THAT THE CLERK ENTER NO DEFAULTS UNTIL FURTHER ORDER OF THE COURT:

IT IS HEREBY ORDERED that that portion of the order of October 28, 1957, providing that "notwithstanding the joinder of the additional parties and the issuance of a summons directed to them, no default as to any party defendant shall be entered by the Clerk until

3063

further order of the Court" is hereby revoked.

IT IS HEREBY ORDERED that the United States Marshal, his deputies or any other person or persons charged with the responsibility of serving process in this cause shall likewise serve upon all parties, through their respective counsel or otherwise, a copy of this order.

Dated:  April 9, 1958.
      12:05 P. M.


/s/ JAMES M. CARTER
   JAMES M. CARTER
United States District Judge

3064

- 7 -

F I L E D
APR 9 1958
Clerk, U.S.District Court
SOUTHERN DISTRICT OF CALIFORNIA
By /s/ William W. Luddy
                                Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.

FALLBROOK PUBLIC UTILITY DISTRICT,
et al.,

                    Defendants.

No. 1247-SD-C

ORDER PERMITTING INCLUSION BY
REFERENCE IN THE "COMPLAINT AND
SUPPLEMENTARY AND AMENDATORY COM-
PLAINT" THE NAMES OF THE PARTIES-
DEFENDANT SET FORTH IN THE SUMMONS
ISSUED ON APRIL 9, 1958.

          This Court having on April 7, 1958, entered an order permitting

the filing by the United States of America of a COMPLAINT AND SUPPLEMENTARY

AND AMENDATORY COMPLAINT, and having directed the Clerk to issue a summons

on the COMPLAINT AND SUPPLEMENTARY AND AMENDATORY COMPLAINT, and good

cause having been shown:

          IT IS HEREBY ORDERED that the names of the parties-defendant

set forth in the summons issued on this 9th day of April, 1958, in this

cause, in addition to the Fallbrook Public Utility District, may be in-

corporated by reference into the title of this action in the aforesaid

COMPLAINT AND SUPPLEMENTARY AND AMENDATORY COMPLAINT.

          IT IS FURTHER ORDERED that the United States Marshal, his deputies,

or any other person or persons charged with the responsibility of serving

process in this cause, shall likewise serve upon all parties, through their

respective counsel or otherwise, copies of this order.

          Dated:  April 9, 1958.


                              /s/     JAMES M. CARTER
                                      JAMES M. CARTER
                              United States District Judge

1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT

8                    SOUTHERN DISTRICT OF CALIFORNIA

9                         SOUTHERN DIVISION

10   UNITED STATES OF AMERICA,        )
11                    Plaintiff,      )
12             v.                     )        NO. 1247-SD-C
13   FALLBROOK PUBLIC UTILITY DISTRICT )       ORDER DIRECTING
     ET AL.,                          )        SERVICE OF ORDERS
14                                    )        AND RELATED DATA
                     Defendants.      )
15

16            Good cause having been found to exist, based upon comprehensive

17   pre-trial conferences:

18            IT IS HEREBY ORDERED THAT the United States Marshal, his deputies,

19   or any other person or persons charged with the responsibility of serving

20   process in this cause shall likewise serve upon all parties, through their

21   respective counsel or otherwise, copies of the order entered by this Court

22   appointing a Special Master to take evidence in this case, the order

23   construing the stipulation of November 29, 1951, and such other material as

24   this Court may specifically order from time to time.

25            Dated:  March 10, 1958.

26
27
28            /s/____JAMES M. CARTER_____
                      JAMES M. CARTER
29                    United States District Judge
30
31
32

F I L E D
APR 8 1958
Clerk, U.S.District Court
SOUTHERN DISTRICT OF CALIFORNIA
By_____William W. Luddy
                          Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,       )
                         )
          Plaintiff,       )
                         )    No. 1247-SD-C
      v.             )
                         )    ORDER RESPECTING CROSS-PLEADINGS
FALLBROOK PUBLIC UTILITY DISTRICT )
ET AL.,                          )
                         )
          Defendants.       )

By reason of the numerous parties to this cause:

IT IS HEREBY ORDERED that all rights to the use of water in the Santa Margarita River system of all parties to this action shall be determined as against the others and the filing of cross-pleadings is dispensed with as unnecessary and inconvenient.

Dated April 8, 1958.


/s/ JAMES M. CARTER
    JAMES M. CARTER
United States District Judge

— viii —

3067

F I L E D
APR 9 - 1958
Clerk, U.S. District Court
SOUTHERN DISTRICT OF CALIFORNIA
By    William W. Luddy
                          Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                          Plaintiff,

          v.

FALLBROOK PUBLIC UTILITY DISTRICT,
et al,

                          Defendants.

No. 1247-SD-C

ORDER RESPECTING
RESPONSIVE PLEADINGS

On April 7, 1958, this Court entered an order permitting the filing by the United States of America of its Complaint and Supplementary and Amendatory Complaint; that pleading set forth the allegations of the Complaint which was originally filed.  To that original Complaint answers have been filed by numerous parties.

Good cause being shown,

WHEREFORE IT IS HEREBY ORDERED that all pleadings presently on file in response to the original Complaint in this cause are declared to be in answer to the above mentioned pleading filed by the United States of America to the extent that they place in issue the allegations of the original Complaint.

IT IS, HOWEVER, FURTHER ORDERED that to join issue with the Supplementary and Amendatory aspects of the pleading filed April 7, 1958, all parties must make timely filings of pleadings in response to those Supplementary and Amendatory allegations.

Dated:  April 9, 1958.

/s/ JAMES M. CARTER

JAMES M. CARTER
United States District Judge

- ix -

3068

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) No. 1247-SD-C |
| v. | ) COMPLAINT |
| FALLBROOK PUBLIC UTILITY DISTRICT, a public service corporation of the State of California; and all other defendants named in the Summons attached to this Complaint, and whose names are by reference made a part of this "COMPLAINT AND SUPPLEMENTARY AND AMENDATORY COMPLAINT" as though they were set forth fully herein. | ) AND ) ) SUPPLEMENTARY AND ) ) AMENDATORY COMPLAINT ) ) ) ) |
| Defendants. | ) |

Comes now the UNITED STATES OF AMERICA for the purpose of supplementing and amending its complaint in this action filed January 25, 1951, sets forth paragraphs I through IX of that complaint down to its prayer for relief, and further alleging, supplements and amends that complaint, all in accordance with the Federal Rules of Civil Procedure, Rule 15:

COMPLAINT (PARAGRAPHS I THROUGH IX) AS ORIGINALLY FILED

I

This is a civil action brought pursuant to the provisions of 28 U.S.C. 1345, in which the United States of America, an actual controversy having arisen between the United States of America and the defendants named herein, seeks to have declared its rights to the use of water in the Santa Margarita River and its tributaries, a natural stream, hereafter referred to as the Santa Margarita River, as those rights relate to the defendants named in this complaint; to have this Court quiet its title to those rights to the use of water in the Santa Margarita River against the defendants named in this complaint and to enjoin the unlawful interference by the named defendants with those rights.

2969

II

Camp Joseph H. Pendleton, * located near Oceanside, California, the United States Naval Ammunition Depot, Fallbrook, California, and the United States Naval Hospital, located at Camp Joseph H. Pendleton, situated in the Counties of San Diego and Orange, State of California, are military establishments of the United States of America and vital to the National Defense. Sites for those military installations acquired by the United States of America in the years 1941, 1942 and 1943, are comprised of approximately 135,000 acres of land in the aforesaid Counties of the State of California. In excess of $100,000,000.00 of federal funds have been expended in the development of those military establishments and the construction of the needed facilities to the end that those properties could be utilized for the military purposes for which they were acquired. Fee simple title to the properties in question now resides in the United States of America.

The site for the establishment of Camp Joseph H. Pendleton by the United States of America was selected by reason of the unique combination of the availability of a supply of water from the Santa Margarita River; sufficient land of suitable character to provide housing and training facilities for units of the Armed Forces; a beach on the Pacific Ocean adequate for the training of units of the Armed Forces in amphibious warfare and experimental work with landing craft, landing vehicles, tracked and affiliated equipment and the development thereof, and a climate which made possible year around land and amphibious training.

(a)  It is the function of Camp Joseph H. Pendleton to provide housing and training facilities for units of the Armed Forces, to conduct training of units of the Armed Forces in amphibious warfare and experimental work with landing craft, landing vehicles, tracked and affiliated equipment and the development thereof; to conduct combat training of the various units of the United States Marine Corps, including air-ground support coordination, and use of artillery, tanks and other equipment used in the conduct of modern amphibious and land warfare.  In addition to the aforementioned activities, it is the function of Camp Pendleton to provide logistic support for units

---

* Now referred to as Camp Pendleton.

- 2 -

3070

1    of the United States Marine Corps together with material maintenance and
2    storage facilities, for supplies and equipment and to house and train
3    replacements for subsequent assignment to various operating units of the
4    United States Marine Corps.

5        (b)  The United States Naval Hospital, with a capacity of
6    approximately 1,550 beds, established at Camp Joseph H. Pendleton, provides
7    medical and hospital services to personnel of the Armed Forces, their de-
8    pendents and other authorized personnel at 83 Naval shore activities
9    located in the Southern California area and provides medical and hospital
10   care to personnel of units of the United States Fleet.

11       (c)  The United States Naval Ammunition Depot, Fallbrook,
12   California, provides facilities for the storage, segregation, reconditioning
13   and issuing of ammunition for operating units of the United States Fleet and
14   the United States Marine Corps and maintains ammunition stocks for shore
15   establishments of the United States Navy located in the Southern California
16   area.  In addition, this Naval Ammunition Depot stores and ships ammunition
17   for use by combat elements of the United States Navy and United States Marine
18   Corps.

19       No other site on the entire West Coast provides those essential
20   factors requisite to properly perform the functions assigned to those
21   military establishments and the absence of any one of the essential factors
22   would render impossible the proper performance of functions of those
23   military establishments.

24                                III

25       Exclusive jurisdiction now resides in the United States of America
26   over all of the properties constituting the military establishments referred
27   to in the preceding paragraphs, subject to exceptions not here involved, by
28   reason of cessions to it by the State of California.

29                                IV

30       Source of the all-important supply of water for Camp Joseph H.
31   Pendleton, the Naval Ammunition Depot and the United States Naval Hospital,
32   as indicated, is the Santa Margarita River.  That stream, which is known

                                - 3 -

                                                        3071

1    in its upper reaches as the Temecula, rises in the Coastal Range in the

2    western extremities of Riverside County, State of California, and proceeds

3    in a generally westerly direction where it crosses the boundary of Riverside

4    County and enters San Diego County.  From that point it continues in a

5    generally southwesterly direction across San Diego County, where it empties

6    into the Pacific Ocean.  Highly significant in regard to the claim which

7    the United States of America states against the named defendants is the fact

8    that the Santa Margarita River in its course traverses approximately 21 miles

9    of the site of Camp Joseph H. Pendleton and the Naval Ammunition Depot before

10    it enters the Ocean.  There are no users below Camp Joseph H. Pendleton on

11    that stream for the United States owns the lands the entire distance from

12    the point where the Santa Margarita River enters upon the sites of the

13    military establishments mentioned and the point where that river enters the

14    Pacific Ocean.

15         The Santa Margarita River is an intermittent stream.  It does not

16    flow as a continuous surface stream, but in the dry seasons of the year the

17    surface stream customarily and ordinarily disappears, when not artificially

18    interfered with, at a point on the lands of the United States of America

19    at approximately eight miles from the Ocean, sinking into the sands and

20    gravel of its bed and channel.  Later it reappears as a surface stream two

21    or three miles below, thence flowing as a surface stream but diminishing in

22    volume to its confluence with tidewater.

23         Underlying the river and its tributaries is a vast underground

24    basin.  That basin is comprised of pervious material, sands, gravel, boulders

25    and other fluvial deposits, to the depth of several hundred feet.  The basin

26    as a whole creates a large underground reservoir into which a high proportion

27    of the Santa Margarita River sinks.  In the dry seasons the river entirely

28    disappears into the basin, reappearing on the surface across the artesian

29    area.  This vast subterranean reservoir constitutes one of the principal

30    sources of water for the military purposes declared above.  However, the

31    encroachments by the defendants threaten the destruction of this basin by

32    reason of salt water intrusion from the Pacific Ocean.  Already two wells

3072

1    have been destroyed by reason of that intrusion and the entire basin, as

2    stated, is threatened.  Not only have the activities of the defendants,

3    through their encroachments upstream, reduced the quantities available

4    to the United States of America from the mentioned subterranean sources,

5    but there has been a like reduction in surface flow of the Santa Margarita

6    River through the encroachments of the defendants.

7                       V

8         By an adjudication suit tried over a period of three years and

9    actually consuming 444 court days, the Rancho Santa Margarita, predecessor

10    in interest of the United States of America in regard to the properties

11    here involved, had adjudicated its rights in the Santa Margarita River.

12    It was found by the trial court that the Rancho Santa Margarita, predecessor

13    in interest of the United States of America, owned 38,739 acres of land

14    riparian to the stream in question.  That court likewise found that the

15    normal flow of the river is insufficient for all of the riparian needs of

16    Rancho Santa Margarita, predecessor in interest of the United States of

17    America.  Likewise found was the fact that 12,375 acres of those riparian

18    lands were capable of and adapted to practical and profitable irrigation.

19    Equally important is the fact that 30,289 acre-feet of water per annum

20    from the Santa Margarita River was useful, valuable and necessary.

21    Premised upon the findings of the trial court and upon the decision of

22    California's highest court when the matter was on appeal before it, the

23    parties to that litigation concluded their differences, declared their

24    rights, and fixed their aliquot shares of all of the waters of the Santa

25    Margarita River.  Attached hereto is a copy of that stipulated judgment,

26    marked Exhibit A, and by reference incorporated into this complaint.

27                      VI

28         As successor in interest of the Rancho Santa Margarita, a party

29    to the above-mentioned adjudication proceeding and to the stipulated

30    judgment, the United States of America is entitled to, and claims all

31    rights, titles, interests, and privileges of said Rancho Santa Margarita.

32

## VII

1  Camp Joseph H. Pendleton is the only Marine Corps establishment
2  located on the West Coast of the United States with facilities adequate
3  to receive and train replacements and other military personnel in all
4  phases of amphibious and land warfare for later assignment to combat
5  forces of the United States Marine Corps now engaged in warfare in the
6  Far East.  In order that the warfare may be successfully prosecuted it is
7  essential that there be maintained at all times an adequate supply of water
8  at this great military establishment which is so vital for the National
9  Defense.

10  Moreover, the United States Naval Hospital above described is
11  presently utilized and will in the future be utilized to care for combat
12  casualties from the Korean conflict.  The United States Naval Ammunition
13  Depot above described is now utilized for the purpose of supplying ammunition
14  to all elements engaged in the Korean conflict.

## VIII

16  Those rights to the use of water described above have, since the
17  acquisition of the property to which those rights are appurtenant, been
18  applied to a beneficial and consumptive use by the United States of America
19  in the performance of the varied functions of the military establishments
20  more particularly mentioned in Paragraphs II and VII hereof.  All of the
21  water which was accorded to the Rancho Santa Margarita by the stipulated
22  judgment is required to supply the requirements of Camp Pendleton, the United
23  States Naval Hospital and the Naval Ammunition Depot.  To meet the great
24  demands arising from these military installations for military, agricultural
25  and other needs, the United States, as against the defendants herein named,
26  asserts that it has a paramount right to 35,000 acre-feet of water annually
27  from the Santa Margarita River.  That quantity of water must be derived not
28  only from the surface flow which, as indicated, is intermittent, but must
29  likewise be pumped from the great subterranean basin described in some
30  detail in the earlier paragraphs.  For the purpose of this cause the United
31  States of America, adopting the findings of the Supreme Court of the State of

1  California considers and accordingly claims that the surface stream and
2  subterranean basin constitute a single source of supply of water.  During
3  any period when the quantity of water exceeds the military demands
4  described in this paragraph, it is utilized by the United States of
5  America for agricultural purposes, as it was historically used by the
6  Rancho Santa Margarita, predecessor in interest of the United States of
7  America.  Though the agricultural use of water varies as the demands
8  for military uses fluctuate, the United States of America, however,
9  asserts its rights to the full use of water for agricultural purposes
10  as enjoyed by the above-mentioned Rancho Santa Margarita.

IX

12  In direct violation of the rights of the United States of
13  America and in complete disregard of the need of the water in question
14  for National Defense, the defendants by reason of their diversions from
15  the Santa Margarita River upstream from Camp Pendleton, have caused the
16  intrusion of salt water from the Pacific Ocean as described above, to
17  the irreparable damage of the United States.  They have likewise
18  repeatedly through overt acts displayed their disregard for the rights
19  of the United States of America and have declared their adverse claims
20  in contravention of the rights of the United States of America.  They
21  have likewise repeatedly asserted that their rights, though acquired
22  subsequent to and with full knowledge of the rights of the United
23  States, and its predecessor in interest, and the needs of the United
24  States for the military purposes mentioned, are paramount to the
25  rights of the United States of America, and proceeded to encroach upon
26  and now are encroaching upon and threaten to continue to encroach
27  upon the already insufficient supply of water required for the Nation's
28  defense in connection with Camp Pendleton, the United States Naval
29  Hospital and the Naval Ammunition Depot.
30
31

- 7 -

SUPPLEMENT TO COMPLAINT

COUNT NO. I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this supplementary and amendatory complaint and each and every count hereafter set forth as completely as though that complaint were set forth in this paragraph in full, and that complaint remains unchanged except as specifically supplemented and amended by this pleading.

COUNT NO. II

CHANGES IN STATUS SINCE THE INITIATION OF THIS ACTION

Abandonment by Defendant Fallbrook Public Utility District of Its Claims to Rights in the Santa Margarita River Based Upon Application No. 12,178 and Application No. 12,179

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. II of this supplementary and amendatory complaint, together with Count No. I above, as completely as though that complaint and Count No. I were set forth in this Count No. II in full.

II

Answering the complaint in this case of the United States of America on May 27, 1951, the Fallbrook Public Utility District made no reference to and made no claims pursuant to Applications Nos. 12,178 and 12,179 filed with the State of California, Department of Public Works, Division of Water Resources State Engineer, now the California State Water Rights Board.

III

By thus failing to assert in its answer its claimed rights in the Santa Margarita River asserted pursuant to Applications Nos. 12,178 and 12,179 and failing to make reference to those Applications, together with the additional facts subsequently alleged, the Fallbrook Public Utility District has abandoned in this litigation and is precluded from claiming in this

- 8 -

litigation any rights in the Santa Margarita River by reason of those Applications.

### COUNT NO. III

**Attempted Amendments by Fallbrook Public Utility District to Its Abandoned Applications Nos. 12,178 and 12,179 to Appropriate Rights to the Use of Water from Sandia Creek, Rainbow Creek and the Santa Margarita River**

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. III of this supplementary and amendatory complaint, together with Counts Nos. I and II above, as completely as though that complaint and Counts Nos. I and II were set forth in this Count No. III in full.

II

When this action was filed on January 25, 1951, the Fallbrook Public Utility District made no claim to rights to the use of water from the main stream of the Santa Margarita River pursuant to Applications Nos. 12,178 and 12,179 referred to in Count No. II above.  Rather, Application No. 12,178 was for 10,000 acre-feet of water annually from Rainbow Creek; Application No. 12,179 was for 10,000 acre-feet of water annually from Sandia Creek. Both Sandia and Rainbow Creeks are minor tributaries of the Santa Margarita River and neither individually nor in the aggregate do those streams have a yield of 10,000 acre-feet of water much less the 20,000 acre-feet of water annually which is set forth in Applications Nos. 12,178 and 12,179.

III

Subsequent to the initiation of this action by the United States of America the Fallbrook Public Utility District filed on July 28, 1952, with the above-mentioned State of California, Department of Public Works, Division of Water Resources, State Engineer, Application No. 12,178 [1]/ which purported to change drastically the alleged project to appropriate 10,000 acre-

---

1/  Designated by State of California as "Amended Application".

- 9 -

feet of water annually from Rainbow Creek.  By the purported amendment to Application No. 12,178 Fallbrook Public Utility District seeks to appropriate 500 acre-feet of water annually from Rainbow Creek and 9,500 acre-feet annually from the Santa Margarita River.

IV

Subsequent to the initiation of this action by the United States of America the Fallbrook Public Utility District filed on July 28, 1952, with the above-mentioned State of California, Department of Public Works, Division of Water Resources, State Engineer, Application No. 12,179 [2/] which purported to change drastically the alleged project to appropriate 10,000 acre-feet of water annually from Sandia Creek.  By the purported amendment to Application No. 12,179 Fallbrook Public Utility District seeks to appropriate 1,500 acre-feet of water annually from Sandia Creek and 8,500 acre-feet annually from the Santa Margarita River.

V

Since the initiation of this action by the United States of America, by the purported amendments to Applications Nos. 12,178 and 12,179 all as described in this Count in paragraphs numbered III and IV above, the Fallbrook Public Utility District has greatly and drastically increased its demands on the already over-appropriated Santa Margarita River to the irreparable damage of the United States of America by reason of the fact that the reservoir which the Fallbrook Public Utility District purportedly intends to build will impound a greatly increased quantity of water over that which was claimed when this action was instituted.

COUNT NO. IV

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. IV of this supplementary and amendatory complaint, together with Counts Nos. I, II, and III above, as completely as though that complaint and Counts Nos. I, II, and III were set forth in this Count No. IV in full.

2/  Designated by State of California as "Amended Application".

II

The United States of America is informed and believes and upon that information and belief alleges that the Fallbrook Public Utility District has undertaken in connection with the Applications Nos. 12,178 and 12,179, amended as of July 28, 1952, to condemn lands for an alleged dam and reservoir to be situated upstream on the main stem of the Santa Margarita River immediately east of the boundary of Camp Pendleton.

III

The United States of America is informed and believes and upon that information and belief alleges that the Fallbrook Public Utility District intends to impound in the reservoir referred to in paragraph II immediately above, approximately 32,000 acre-feet $\underline{3/}$ of water annually, all as described in its amended Applications Nos. 12,178 and 12,179.

IV

By the greatly increased claims to rights to the use of water now made by the Fallbrook Public Utility District, all as described in the preceding allegations and averments the Fallbrook Public Utility District has further clouded the title of the United States of America to its invaluable rights to the use of water in the Santa Margarita River and threatens further to invade those rights and cause the United States of America to experience irreparable damage if it should proceed with its alleged present plan to acquire lands and to construct a dam as proposed and to impound the large quantities of water of the Santa Margarita River all as described in this count.

V

The Fallbrook Public Utility District by the action taken:

(a) Having failed to assert any claims in this cause under Applications Nos. 12,178 and 12,179, has abandoned those claims;

(b) Has, if Applications Nos. 12,178 and 12,179 have not been abandoned, and it is asserted that they have been, lost its priority to those claims to a date not earlier than July 28, 1952;

---

3/  Note:  Aggregate amount of three applications involved is 30,000 acre-feet annually.

- 11 -

3079

1   as the result of which all of the rights to the use of water in the Santa

2   Margarita River claimed by the United States of America in this litigation

3   are prior and paramount to the rights claimed by the Fallbrook Public Utility

4   District pursuant to those Applications Nos. 12,178 and 12,179.

5                              COUNT NO. V

6          Fallbrook Public Utility District Violates Gratuitous
           License; Since the Initiation of this Action has Increased
7          its Diversions of Water from the Santa Margarita River

8                                   I

9          The United States of America re-alleges and re-avers each and every

10   allegation in the complaint which it filed in this Court on January 25, 1951,

11   and by way of reference makes that complaint a part of this Count No. V of

12   this supplementary and amendatory complaint, together with Counts Nos. I, II,

13   III and IV above, as completely as though that complaint and Counts Nos. I, II,

14   III and IV were set forth in this Count No. V in full.

15                                  II

16          Fallbrook Public Utility District claimed no rights to the use of

17   water in the Santa Margarita River at the time the United States of America

18   acquired the Rancho Santa Margarita nor did it claim any rights to the

19   use of water from that stream for many years after that time; rather the

20   Fallbrook Public Utility District was being gratuitously permitted to divert

21   a very small quantity of water pursuant to a revocable license dated the 20th

22   day of July, 1932, with the Rancho Santa Margarita, predecessor in interest

23   of the United States of America.

24                                  III

25          Fallbrook Public Utility District was permitted gratuitously by the

26   United States of America to continue to receive a very small quantity of water

27   pursuant to the revocable license referred to in paragraph II immediately

28   above.

29                                  IV

30          It was four (4) years subsequent to the acquisition by the United

31   States of America of the rights which it here seeks to protect that the

32   Fallbrook Public Utility District made any claim to rights in the Santa

                              - 12 -                          3080

Margarita River when it filed on October 11, 1946, Application No. 11,586

with the State of California, Department of Public Works, Division of Water

Resources, State Engineer, to appropriate two and one-half (2 1/2) cubic

feet per second of water from the Santa Margarita River.

V

Violation by the Fallbrook Public Utility District of the

gratuitous and revocable license caused the United States of America to revoke

that license on July 31, 1948.  Subsequent to the revocation by the United

States of America of the gratuitous and revocable license and subsequent to

the initiation of this cause, the Fallbrook Public Utility District greatly

increased its diversion from the Santa Margarita River at a point immediately

upstream from the eastern boundary of Camp Pendleton, diverting waters to

which the United States of America is entitled and which it greatly needs and

by reason of which the United States of America is experiencing irreparable

damage.

VI

Defendant in Intervention California on December 31, 1957, issued

to the Fallbrook Public Utility District a purported "License to Appropriate

Water" No. 4906, based upon the Application No. 11,586 referred to in this

Count No. V, paragraph IV above.

VII

Defendant in Intervention California has undertaken drastically to

change the status of the parties in this cause by the issuance of the purported

"License to Appropriate Water" No. 4906 to the Fallbrook Public Utility District.

By that action California has clouded the title of the invaluable rights to

the use of water in the Santa Margarita River of the United States of America

to its irreparable damage.

COUNT NO. VI

Amendments by the Defendant Santa Margarita Mutual
Water Company of Its Applications to Appropriate Rights
to the Use of Water from the Santa Margarita River

I

The United States of America re-alleges and re-avers each and every

- 13 -

3081

1  allegation in the complaint which it filed in this Court on January 25, 1951,

2  and by way of reference makes that complaint a part of this Count No. VI of

3  this supplementary and amendatory complaint, together with Counts Nos. I, II,

4  III, IV and V above, as completely as though that complaint and Counts Nos. I,

5  II, III, IV and V were set forth in this Count No. VI in full.

6  II

7  Like the Fallbrook Public Utility District the Santa Margarita Mutual

8  Water Company on August 3, 1951, after the initiation of this action, drastically

9  amended its Application No. 11,578 as originally filed on October 4, 1946, and

10  Application No. 12,152 originally filed November 12, 1947, with the State of

11  California, Department of Public Works, Division of Water Resources, State

12  Engineer.

13  III

14  The wholly ambiguous and seemingly infeasible amendments to

15  Applications Nos. 11,578 and 12,152 envision a great increase in the burden

16  upon the Santa Margarita River; drastically changing the purported plans set

17  forth in the Applications as originally filed.

18  IV

19  By those drastic amendments the Santa Margarita Mutual Water Company

20  has further clouded the title to the invaluable rights to the use of water

21  in the Santa Margarita River of the United States of America and threatens

22  to encroach upon those rights, all to the irreparable damage of the United

23  States of America.

24  V

25  In revising the plans of its purported project, all as averred in

26  this Count No. VI, the Santa Margarita Mutual Water Company has lost its

27  original claimed priority.  Each and every claim of the United States of America

28  of rights to the use of water in the Santa Margarita River is prior and paramount

29  to any claimed rights asserted in this action by the Santa Margarita Mutual

30  Water Company.

31

32

3082

COUNT NO. VII

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. VII of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, and VI above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, and VI were set forth in this Count No. VII in full.

II

The Fallbrook Public Utility District and the Santa Margarita Mutual Water Company having failed to prosecute with due diligence their applications to appropriate rights to the use of water and permits and the construction of their alleged projects, have lost their claimed rights to the use of water asserted in this cause.

III

The Fallbrook Public Utility District and the Santa Margarita Mutual Water Company have, by reason of their failure to prosecute their applications and permits to appropriate rights to the use of water and the construction of their alleged projects, lost their alleged rights to the use of water in the Santa Margarita River through laches and they are now estopped from claiming those rights in this cause.

COUNT NO. VIII

Threatened Condemnation of Vail Dam and Other Properties
by Defendant Rainbow Municipal Water District

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. VIII of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI and VII above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI and VII were set forth in this Count No. VIII in full.

- 15 -

3083

## II

Subsequent to the initiation of this case the defendant Rainbow Municipal Water District, a municipal corporation, filed on May 31, 1956, its complaint in eminent domain in the Superior Court of the State of California in and for the County of Riverside, to acquire by condemnation the Vail Dam and other properties, situated in Nigger Canyon across Temecula Creek.

## III

Title to the Vail Dam and other properties referred to in paragraph II of this Count, the United States of America is informed and believes and upon that information and belief alleges, resides in the Vail Company, Inc., successor in interest to the Vail Estate, defendant in this case.  By reason of the interest which exists between the United States of America and the defendant Vail Company, Inc., formerly the Vail Estate, in the rights to the use of water in the Santa Margarita River stemming from the Stipulated Judgment, Exhibit A of the complaint filed by the United States of America in this cause, the acquisition of the Vail Dam and other properties by the Rainbow Municipal Water District, all as alleged in this Count, would have a drastic, far-reaching and adverse effect upon the rights and interests of the United States of America, all to its irreparable damage.  That irreparable damage stems from the fact that the Rainbow Municipal Water District would change the present points of diversion and places of use now maintained by the Vail Company, Inc., diverting the water from the watershed above Camp Pendleton thus greatly reducing the quantity of water historically flowing down to the United States of America.

## IV

The pending proceeding to condemn the Vail Dam and properties by the Rainbow Municipal Water District, all as described in this Count, constitutes a cloud upon the title to the rights to the use of water claimed and exercised in the Santa Margarita River by the United States of America, all to its irreparable damage.

## COUNT NO. IX

### Threatened Condemnation of Claimed Rights to the Use of Water of the Santa Margarita Mutual Water Company by Rainbow Municipal Water District

## I

allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. IX of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI, VII and VIII above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII and VIII were set forth in this Count No. IX in full.

II

Subsequent to the initiation of this case defendant Rainbow Municipal Water District filed on May 2, 1956, its complaint in eminent domain in the Superior Court of the State of California in and for the County of San Diego, to acquire by condemnation the alleged rights to the use of water claimed by the Santa Margarita Mutual Water Company in the Santa Margarita River, all of which are described by the last-named Company in its answer in this cause.

III

The alleged rights to the use of water in the Santa Margarita River claimed by the Santa Margarita Mutual Water Company as described by that Company are allegedly to be exercised in a large part through the utilization of the Vail Dam and other properties which are the subject matter of the condemnation proceeding instituted by the defendant Rainbow Municipal Water District to acquire the Dam last mentioned, all as more fully described in Count No. VIII which is by reference made a part of this Count No. IX.

IV

The pending proceeding for the condemnation by the Rainbow Municipal Water District of the claimed rights to the use of water of the Santa Margarita Mutual Water Company and the threat to exercise those rights through the use of the Vail Dam and properties constitutes a cloud upon the title of the rights to the use of water claimed and exercised by the United States of America in the Santa Margarita River. That threatened acquisition, moreover, by the Rainbow Municipal Water District of the claimed rights of the Santa Margarita Mutual Water Company would have a drastic and far-reaching adverse effect upon the rights and interests of the United States of America all to its irreparable damage. That irreparable damage stems from the fact that the Rainbow Municipal Water District would change the present points of diversion and places of use

- 17 -

3085

1   now maintained by the Vail Company, Inc., diverting the water from the water-

2   shed above Camp Pendleton thus greatly reducing the quantity of water histori-

3   cally flowing down to the United States of America.

4                      COUNT NO. X

5            Action by the Defendant in Intervention
            California Since the Initiation of this Cause

6                        I

7       The United States of America re-alleges and re-avers each and every

8   allegation in the complaint which it filed in this Court on January 25, 1951, and

9   by way of reference makes that complaint a part of this Count No. X of this sup-

10   plementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V,

11   VI, VII, VIII and IX above, as completely as though that complaint and Counts Nos.

12   I, II,III,IV, V,VI,VII,VIII and IX were set forth in this Count No. X in full.

13                        II

14       Over the objection of the United States of America, the Defendant in

15   Intervention California on August 12-14, 1957, through its State Water Rights

16   Board, held a hearing for the purpose of determining whether permits should be

17   issued to the Fallbrook Public Utility District pursuant to its amended Applica-

18   tions No. 12,178 and No. 12,179; or to the Santa Margarita Mutual Water Company

19   pursuant to its amended Applications No. 11,578 and No. 12,152.

20                      III

21       In direct violation of this Court's jurisdiction, the Defendant in

22   Intervention California, after taking testimony relative to the Applications

23   to appropriate rights to the use of water, has taken under submission the

24   question of whether to issue a permit or permits to the defendants named in

25   the immediately preceding paragraph II, Count No. X.

26                      IV

27       The United States of America is informed and believes and upon

28   that information and belief alleges that the California State Water Rights

29   Board must determine whether there is surplus water in the Santa Margarita
     River available for appropriation if it grants any permit or permits to the

30   Fallbrook Public Utility District or to the Santa Margarita Mutual Water

31   Company pursuant to the Applications in question.  The determination of that

32   question is jurisdictional for absent a finding of surplus no permit could

1  be granted; yet to make a determination of the existence of a surplus places

2  in issue for resolution the extent, character and nature of the rights of

3  the United States of America in the Santa Margarita River and every other

4  claimant to rights in that stream.

5                                        V

6          Defendant in Intervention California by the hearing of August 12-14,

7  1957, purporting to pass upon issues many of which are before this Court

8  for resolution, has embarrassed and invaded this Court's jurisdiction.  By

9  that usurpation of this Court's jurisdiction, the Defendant in Intervention

10  California threatens to change the relative status among the several parties

11  to this cause and further to cloud the title of the United States of America

12  in and to its invaluable rights to the use of water in the Santa Margarita

13  River, all to its irreparable damage.

14                                 COUNT NO. XI

15                                        I

16          The United States of America re-alleges and re-avers each and every

17  allegation in the complaint which it filed in this Court on January 25, 1951,

18  and by way of reference makes that complaint a part of this Count No. XI of

19  this supplementary and amendatory complaint, together with Counts Nos. I, II,

20  III, IV, V, VI, VII, VIII, IX and X above, as completely as though that complaint

21  and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX and X were set forth in

22  this Count No. XI in full.

23                                       II

24          Since the initiation of this action further investigation reveals

25  that due to advancements in agricultural practices, together with better

26  methods for land and water uses, the number of acres of lands riparian to

27  the Santa Margarita River susceptible of practicable and profitable irrigation,

28  title to which is in the United States of America, has been increased over and

29  above 12,375 acres of lands of that character referred to in paragraph V of the

30  complaint to approximately 18,650 acres.  A reasonable water duty for those

31  lands is approximately 69,250 acre-feet annually.  These riparian rights of the

32  United States of America entitle it to share correlatively in the available

                                     - 19 -                          3087

1     supply of water with other owners of lands riparian to the Santa Margarita River.

2     The paragraph numbered V in the complaint originally filed is hereby supplemented

3     and amended by changing the allegation respecting 12,375 acres of riparian land

4     susceptible of practical and profitable irrigation to 18,650 acres of riparian

5     land within Camp Pendleton and the United States Naval Ammunition Depot, with

6     a reasonable water duty of approximately 78,330 acre-feet annually.

7                 COUNT NO. XII

8                    I

9        The United States of America re-alleges and re-avers each and every

10    allegation in the complaint which it filed in this Court on January 25, 1951,

11    and by way of reference makes that complaint a part of this Count No. XII of

12    this supplementary and amendatory complaint, together with Counts Nos. I, II,

13    III, IV, V, VI, VII, VIII, IX, X and XI above, as completely as though that

14    complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X and XI were

15    set forth in this Count No. XII in full.

16                   II

17        Since the initiation of this cause there has been a rapid and contin-

18    uous increase in the quantities of water diverted from the surface and subsurface

19    flow of the Santa Margarita River, greatly reducing the quantities of water

20    flowing to the United States of America in direct violation of its long vested

21    rights to the use of water from that stream.  Whereas, when the United States of

22    America acquired the Rancho Santa Margarita, during a substantial period of the

23    year the Santa Margarita River was a perennial surface stream down to the head-

24    works of the O'Neill Ditch, approximately ten (10) river miles below the eastern

25    boundary of Camp Pendleton, the flow has been so greatly reduced by the diversions

26    above, that the stream is dry for many months at a time, virtually throughout

27    its entire length within the military enclave.  Immediate effect of the upstream

28    diversions and encroachments upon the rights of the United States of America,

29    all as described, has been to force the United States of America at great costs

30    to install a pipeline and to pump water from the subterranean basin of the Santa

31    Margarita River within Camp Pendleton, several miles upstream to supply the

32    United States Naval Ammunition Depot with the water vital to its continued

1   existence.  Until the invasion of the rights of the United States of America,

2   as described, the surface and subsurface flows of the Santa Margarita River

3   were sufficient to supply that military establishment by means of a gallery

4   located in the bed of the Santa Margarita River situated near the place of use

5   without the costly installation of the pipeline above mentioned and the immense

6   cost of pumping water the great distance which is now required.

7                                    III

8          Since the institution of this action the diversions described in para-

9   graph II of this Count have greatly reduced the quantities of water available to

10  recharge and maintain the waters in the subterranean basin which underlies Camp

11  Pendleton, all as described in the complaint filed by the United States of

12  America January 25, 1951.

13                                    IV

14         The following named parties are diverting water from the Santa

15  Margarita River; are thus invading the rights of the United States of America

16  in that stream to its irreparable damage:

17         (a)  The Fallbrook Public Utility District has constructed and in-

18  stalled since the initiation of this suit two large pumps located on the south

19  bank of the Santa Margarita River, immediately above the eastern boundary of

20  Camp Pendleton, at a point north one thousand nine hundred twenty (1920) feet

21  and west one thousand five hundred fifty (1550) feet from the center of Section

22  Township 9 South, Range 3 West, S.B.B.& M., being within the Northwest Quarter

23  (NW$\frac{1}{4}$) of the Northwest Quarter (NW$\frac{1}{4}$) of last mentioned Section 7.

24         (b)  Fallbrook Public Utility District has moreover installed a dam

25  across the Santa Margarita River and impounds waters of that stream to which

26  the United States of America is entitled and which would flow down to it were

27  it not impounded by the Fallbrook Public Utility District as described.

28                                     V

29         (c)  Charles F. Sawday has located and now maintains across the Santa

30  Margarita River and slightly upstream from the diversion of the Fallbrook Public

31  Utility District, described above, situated on the north bank of the stream in

32  question what is known as the Sawday diversion pump and sump which have been

                                   - 21 -

1   installed since the initiation of this action.  That pump diverts from the

2   Santa Margarita River large quantities of water to which the United States of

3   America is entitled by reason of its rights to the use of water in that stream.

4       The water thus pumped from the Santa Margarita River by the Sawday

5   diversion would flow down to the United States of America were it not inter-

6   cepted by that diversion.  The Sawday diversion as presently operated is

7   causing the United States of America irreparable damage.

8                                     VI

9       The United States of America is informed and believes and upon that

10   information and belief alleges:

11       (a)  That the owner and operator of the Sawday diversion has made no

12   application to the State of California for a permit to divert water from the

13   Santa Margarita River; is violating the law of California in making that diver-

14   sion in addition to causing irreparable damage to the United States of America.

15       (b)  That the owners and operators of the Sawday diversion pump and sump

16   are diverting wholly without rights and to the irreparable damage of the United

17   States of America, are selling large quantities of the water thus pumped from the

18   Santa Margarita River to other water users who have no rights in that stream.

19                                     VII

20       Frank P. Querry has dug a well into the Temecula alluvial basin at a

21   point a short distance above the head of Temecula Canyon and is diverting large

22   quantities of water from that basin.  Immediate result of that pumping by Frank

23   P. Querry has been to reduce the flow of the Santa Margarita River and to deprive

24   the United States of America of large quantities of water to which it is entitled

25   by reason of its rights to the use of water in the Santa Margarita River, all to

26   its irreparable damage.

27                                     VIII

28       Since the initiation of this action the named defendants alluded to

29   in this Count have diverted water from the Santa Margarita River and have thus

30   invaded the rights of the United States of America.  These diversions are not

31   the only diversions from the Santa Margarita River initiated since the

32   institution of this action which invade the rights of the United States of

     America in that stream.  They are reflective, however, of ever increasing demand

                                    - 22 -

for water from the Santa Margarita River which reduces the water available to
the United States of America to which it is entitled by reason of its rights
in that stream.

IX

The diversions described above and the many other diversions are
now causing and have in the past resulted in irreparable damage to the United
States of America, for which it does not have a plain, speedy, complete and
adequate remedy at law.

COUNT NO. XIII

Greatly Increased Demands Throughout the Santa Margarita
Watershed; Recognition by California of Rights of the
United States of America; Decision by Court of Appeals

I

The United States of America re-alleges and re-avers each and every
allegation in the complaint which it filed in this Court on January 25, 1951,
and by way of reference makes that complaint a part of this Count No. XIII of
this supplementary and amendatory complaint, together with Counts Nos. I, II,
III, IV, V, VI, VII, VIII, IX, X, XI and XII above, as completely as though
that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI
and XII were set forth in this Count No. XIII in full.

II

Throughout the Santa Margarita River valley are large tracts of land
title to which is in the United States of America.  Included are several Indian
Reservations; National Forests, and other large areas owned by the United States
and administered by the Bureau of Land Management.

III

Since the initiation of this action there has been, as alleged, an
ever-increasing demand for water of the Santa Margarita River with ever-
increasing competition for the meager supply of water in that stream.

IV

Numerous wells have been dug since the institution of this action
and pumps have been installed which withdraw water from the water-bearing gravel
and alluvium which underlie much of the Santa Margarita River.  Surface

- 23 -

1   diversions of water have also greatly increased since the initiation of this

2   cause.

3                                           V

4        The effect of the ever-increasing demand for water from the Santa

5   Margarita River has been to give rise to adverse claims against all of the

6   rights to the use of water claimed by the United States of America in connec-

7   tion with the lands within the Indian Reservations, the National Forests and

8   the lands administered by the Bureau of Land Management.

9                                          VI

10       California admits that all of the lands owned by the United States

11  of America referred to in this Count are riparian in character and that the

12  United States of America by reason of those riparian lands is entitled to

13  participate correlatively in the available supply of water.  Numerous California

14  decisions were cited in support of its admission.  Though the United States of

15  America does not concede that its rights in regard to the lands in question are

16  limited to those riparian in character, the United States of America nevertheles

17  acknowledges California's admission referred to in this paragraph.

18                              COUNT NO. XIV

19                                           I

20       The United States of America re-alleges and re-avers each and every

21  allegation in the complaint which it filed in this Court on January 25, 1951,

22  and by way of reference makes that complaint a part of this Count No. XIV of

23  this supplementary and amendatory complaint, together with Counts Nos. I, II,

24  III, IV, V, VI, VII, VIII, IX, X, XI, XII and XIII above, as completely as

25  though that complaint and Counts Nos. I, II, III, IV, V, VI, VII VIII, IX,

26  X, XI, XII and XIII were set forth in this Count No. XIV in full.

27                                          II

28       Since the initiation of this action the Court of Appeals for the

29  Ninth Circuit in the case of California v. United States, 235 F.2d 647, 663

30  (C.A.9, 1956) declared as follows:

31          "The only proper method of adjudicating the rights on a

            stream, whether riparian or appropriative or mixed, is

32          to have all owners of lands on the watershed and all

                                  - 24 -

1     appropriators who use water from the stream involved

2     in another watershed in court at the same time."

3                         COUNT NO. XV

4                              I

5          The United States of America re-alleges and re-avers each and every

6     allegation in the complaint which it filed in this Court on January 25, 1951,

7     and by way of reference makes that complaint a part of this Count No. XV of

8     this supplementary and amendatory complaint, together with Counts Nos. I, II,

9     III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII and XIV above, as completely

10    as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII,

11    IX, X, XI, XII, XIII and XIV were set forth in this Count No. XV in full.

12                             II

13         The United States of America is the holder of the legal title to all

14    of the lands and rights to the use of water of the Coahuila Indian Reservation,

15    with the exception, if any, of those lands title to which may have passed into

16    private ownership.  Attached to this supplementary and amendatory complaint

17    marked Exhibit "B" and by reference made a part of it is a description of those

18    lands within that reservation which are within the watershed of the Santa

19    Margarita River or are traversed by the Santa Margarita River watershed line.

20    Those lands are traversed by or border and abut upon Coahuila Creek and its

21    tributaries.

22                            III

23         Coahuila Creek, an intermittent stream, has its origin on the

24    southwest slope of San Jacinto Mountains, southeast of Thomas Mountain.  From

25    its source that stream flows south and west through Terwilliger Valley,

26    also known as Anza Valley, to the lower end of Coahuila Valley for a distance

27    of thirteen and three-fourths (13 3/4) miles.  After leaving Coahuila Valley

28    it flows southwest a distance of four (4) miles to its confluence with Wilson

29    Creek.  Coahuila Creek in its course flows for seven and one-half (7 1/2) miles

30    through the Coahuila Indian Reservation.  Much of that course is over and

31    across water-bearing gravel and alluvial basins situated within the Coahuila

32    Indian Reservation.  Wilson Creek after its confluence with Coahuila Creek

                              - 25 -

1   continues to its junction with Temecula Creek at Nigger Valley.  Temecula

2   Creek flows north and westerly to the junction with Murrieta Creek where at

3   the head of Temecula Canyon they form the Santa Margarita River.

IV

5   Within the Coahuila Indian Reservation there are approximately 17,500

6   acres of land within the watershed of the Santa Margarita River of which

7   approximately 16,800 acres are susceptible of practicable and profitable

8   irrigation.

V

10   A reasonable diversion duty for the irrigation of those lands is

11   four and two-tenths (4.2) acre-feet per acre per year.

VI

13   There were reserved by the United States of America sufficient waters

14   of Coahuila Creek and its tributaries for the needs of the Coahuila Indian

15   Reservation, as those needs existed when the reservation was established or

16   might exist in the future, for irrigation, domestic and other purposes.  That

17   reservation of rights to the use of water pertains both to the surface and

18   subsurface flow of Coahuila Creek and its tributaries.

COUNT NO. XVI

I

21   The United States of America re-alleges and re-avers each and every

22   allegation in the complaint which it filed in this Court on January 25, 1951,

23   and by way of reference makes that complaint a part of this Count No. XVI of

24   this supplementary and amendatory complaint, together with Counts Nos. I, II,

25   III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV and XV above, as completely

26   as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX,

27   X, XI, XII, XIII, XIV and XV were set forth in this Count No. XVI in full.

II

29   The United States of America is the holder of the legal title to

30   all of the lands and rights to the use of water of the Pechanga Indian

31   Reservation, with the exception, if any, of those lands title to which may have

32   passed into private ownership.  Attached to this supplementary and amendatory

- 26 -

complaint marked Exhibit "C" and by reference made a part of it, is a descrip-
tion of those lands within that Reservation which are within the watershed of
the Santa Margarita River or are traversed by the Santa Margarita River
watershed line.  Those lands are traversed by or border and abut upon Pechanga
Creek, also known as Penjango Creek, an intermittent stream rising on the
northerly slopes of Agua Tibia Mountain.  It enters Temecula Creek a short
distance upstream from the junction of that creek with Murrieta Creek.

III

Within the Pechanga Indian Reservation there are approximately
4,000 acres of land within the watershed of the Santa Margarita River of
which approximately 2,000 acres are susceptible of practicable and profitable
irrigation.

IV

A reasonable diversion duty for the irrigation of those lands is
four and two-tenths (4.2) acre-feet per acre per year.

V

There were reserved sufficient waters of Pechanga Creek and its
tributaries for the needs of the Pechanga Indian Reservation, as those needs
existed when the reservation was established or might exist in the future,
for irrigation, domestic and other purposes.  That reservation of rights to
the use of water pertains both to the surface and subsurface flow of Pechanga
Creek and its tributaries.

COUNT NO. XVII

I

The United States of America re-alleges and re-avers each and every
allegation in the complaint which it filed in this Court on January 25, 1951,
and by way of reference makes that complaint a part of this Count No. XVII of
this supplementary and amendatory complaint, together with Counts Nos. I, II,
III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, and XVI above, as
completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII,
VIII, IX, X, XI, XII, XIII, XIV, XV and XVI were set forth in this Count
No. XVII in full.

- 27 -

II

Tributaries of Coahuila Creek rise in the Ramona Indian Reservation and flow generally southward and westward to where they have confluence with Coahuila Creek, described in Count No. XV above.

III

The United States of America is the holder of the legal title to all of the lands and rights to the use of water of the Ramona Indian Reservation, with the exception, if any, of those lands title to which may have passed into private ownership. Attached to this supplementary and amendatory complaint marked Exhibit "D" and by reference made a part of it, is a description of those lands within that Reservation which are within the watershed of the Santa Margarita River or are traversed by the watershed line of the Santa Margarita River. Those lands are traversed by or border and abut upon the tributaries of Coahuila Creek.

IV

Within the Ramona Indian Reservation there are approximately 300 acres of land within the watershed of the Santa Margarita River of which approximately 60 acres are susceptible of practicable and profitable irrigation.

V

A reasonable diversion duty for the irrigation of those lands is four and two-tenths (4.2) acre-feet per acre per year.

VI

There were reserved sufficient waters from the tributaries of Coahuila Creek for the needs of the Ramona Indian Reservation, as those needs existed when the Reservation was established or might exist in the future, for irrigation, domestic and other purposes. That reservation of rights to the use of water pertains both to the surface and subsurface flow of the tributaries of Coahuila Creek.

COUNT NO. XVIII

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951,

- 28 -

3096

1   and by way of reference makes that complaint a part of this Count No. XVIII

2   of this supplementary and amendatory complaint, together with Counts Nos. I,

3   II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI and XVII

4   above, as completely as though that complaint and Counts Nos. I, II, III,

5   IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI and XVII were set

6   forth in this Count No. XVIII in full.

7                                    II

8            The United States of America is the owner of large tracts of land

9   comprising the Cleveland and San Bernardino National Forests which are located

10  within the watershed of the Santa Margarita River.  Attached to this supple-

11  mentary and amendatory complaint marked Exhibit "E" and by reference made a

12  part of it, is a description of those lands within those National Forests

13  which are within the watershed of the Santa Margarita River or are traversed

14  by the watershed line of that River.

15                                   III

16           Temecula Creek referred to above, and tributaries to that creek, rise

17  on the northeastern slope of Aguanga Mountain in the Cleveland National Forest,

18  now the present site of the Palomar Observatory, and the description of Temecula

19  Creek in the paragraph numbered VI of the original complaint is amended to con-

20  form with the description set forth in this sentence.  From that source it pro-

21  ceeds in a northerly and westerly direction a distance of approximately sixteen

22  (16) miles where it enters the Pauba Grant of the Vail Estate, now the Vail

23  Company, Inc.  After entering that property it flows northwesterly through a

24  portion of the Pauba Grant known as Nigger Valley, for a distance of a little

25  more than three (3) miles where it enters Nigger Canyon.  Situated across the

26  channel of Temecula Creek at the upper end of Nigger Canyon on the Pauba Grant,

27  in the Northwest Quarter (NW$\frac{1}{4}$) of the Northwest Quarter (NW$\frac{1}{4}$), Section 10, Town-

28  ship 8 South, Range 1 West, is the Vail Dam, which creates an on-channel reser-

29  voir, having a potential storage capacity of 50,000 acre-feet.  Below that on-

30  channel reservoir, Temecula Creek traverses the Vail Estate, now the Vail Company,

31  Inc., properties for a distance of approximately eleven and one-half (11 1/2)

32  miles.  Immediately before leaving the Vail Estate, now the Vail Company, Inc.,

    properties Temecula Creek has its confluence with Murrieta Creek.

                                    - 29 -

IV

Tributaries of Temecula Creek likewise rise in the San Bernardino National Forest flowing in a generally southward and westward direction from their source where they enter Wilson Creek, above described, which has its confluence with Temecula Creek.

V

Within the boundaries of the Palomar area of the Cleveland National Forest there are approximately 34,000 acres of land within the watershed of the Santa Margarita River which are traversed by or border or abut upon Temecula Creek or its tributaries.  Of that total approximately 2,000 acres are susceptible of practicable and profitable irrigation.

VI

There are likewise 900 acres of land within the Trabuco area of the Cleveland National Forest and within the watershed of the Santa Margarita River, which are traversed by or border upon DeLuz Creek and its tributaries, which are tributary to the Santa Margarita River.  Of that total approximately 600 acres are susceptible of practicable and profitable irrigation.

VII

A reasonable diversion duty for the irrigation of those lands is four and two-tenths (4.2) acre-feet per acre per year.

VIII

Within the San Bernardino National Forest there are approximately 11,400 acres of lands which are within the watershed of the Santa Margarita River and which are traversed, border upon or abut upon the tributaries of Temecula Creek.  Of that total approximately 900 acres are susceptible of practicable and profitable irrigation.

IX

A reasonable diversion duty for the irrigation of those lands is four and two-tenths (4.2) acre-feet per acre per year.

X

When the lands comprising the Cleveland and San Bernardino National Forests were withdrawn there were reserved for those lands rights to the use

- 30 -

1   of water for recreational purposes, fire-fighting purposes, irrigation purposes,
2   domestic purposes and for livestock and all needs requisite to meet the demands
3   for which the lands were withdrawn, but not to exceed the diversion duty for
4   water referred to in paragraphs VII and IX immediately above.

5                                    XI

6          Attached to this supplementary and amendatory complaint is a list of
7   the licensees who have been permitted to use waters arising upon the Cleveland
8   National Forest and the San Bernardino National Forest. That list marked
9   Exhibit "F" is by reference made a part of this supplementary and amendatory
10  complaint.  Title to those rights to the use of water being thus permissively
11  used resides in the United States of America and it seeks to have its title
12  to those rights quieted in this cause.

13                             COUNT NO. XIX

14                                    I

15         The United States of America re-alleges and re-avers each and every
16  allegation in the complaint which it filed in this Court on January 25, 1951,
17  and by way of reference makes that complaint a part of this Count No. XIX of
18  this supplementary and amendatory complaint, together with Counts Nos. I, II,
19  III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII and XVIII
20  above, as completely as though that complaint and Counts Nos. I, II, III, IV,
21  V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII and XVIII were set
22  forth in this Count No. XIX in full.

23                                    II

24         The United States of America is the owner of large tracts of land
25  within the watershed of the Santa Margarita River or which are traversed by
26  the watershed line of that River, and those lands are administered by the
27  Bureau of Land Management of the Department of the Interior.  They are
28  described in Exhibit "G" which is attached to this supplementary and amendatory
29  complaint and made a part of it by reference.  There are approximately 40,700
30  acres of those lands of which approximately 12,400 acres are susceptible of
31  practicable and profitable irrigation.

32

                                  - 31 -

                                                                3099

### III

The lands referred to in paragraph No. II immediately above are traversed by, border, or abut upon Temecula Creek, its tributaries and other tributaries of the Santa Margarita River.

### IV

A reasonable diversion duty for the irrigation of those lands is four and two-tenths (4.2) acre-feet per acre per year.

### V

The United States of America in connection with the lands referred to in this Count reserved rights to the use of water for stockwatering purposes, purposes of irrigation, and other purposes to meet the needs of those lands, but not to exceed the diversion duty alluded to in paragraph IV immediately above. Attached, marked Exhibit "H", is a list of the licensees who have been permitted to use water arising upon lands referred to in this Count. This list does not purport to be all of the claimants to rights to the use of water on the lands in question. Any of those rights to the use of water upon lands withdrawn from entry and initiated subsequent to that withdrawal, are being permissively used and title to those rights resides in the United States of America and it seeks to have its title to those rights quieted in this cause.

### COUNT NO. XX

### I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. XX of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII and XIX above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII and XIX were set forth in this Count No. XX in full.

### II

The United States of America claims in this litigation in connection

1   with all of those lands susceptible of practicable and profitable irrigation

2   which have been described and referred to in this supplementary and amendatory

3   complaint which are situated within the above-named Indian Reservations,

4   National Forests and lands administered by the Bureau of Land Management,

5   Department of the Interior, four and two-tenths (4.2) acre-feet per acre

6   annually.  Though those are the maximum rights claimed, the United States of

7   America asserts in this litigation the right to utilize those rights to the

8   use of water for whatever purposes the lands in question were withdrawn.

9   COUNT NO. XXI

10   I

11   The United States of America re-alleges and re-avers each and every

12   allegation in the complaint which it filed in this Court on January 25, 1951,

13   and by way of reference makes that complaint a part of this Count No. XXI of

14   this supplementary and amendatory complaint, together with Counts Nos. I, II,

15   III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII,

16   XIX and XX above, as completely as though that complaint and Counts Nos. I,

17   II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII,

18   XVIII, XIX and XX were set forth in this Count No. XXI in full.

19   II

20   In regard to the rights to the use of water claimed by the United

21   States of America for Camp Pendleton, the Naval Ammunition Depot and the United

22   States Naval Hospital, the United States of America alleges that it and its

23   predecessors in interest have exercised those rights far in excess of the

24   prescriptive period and that the use and diversion of those waters by the

25   United States of America has been open, notorious, adverse, exclusive, and

26   under a claim of right against each and every defendant in this litigation.

27   III

28   The United States of America further alleges in connection with the

29   diversion and use of water on the Indian Reservations, National Forests, and

30   the lands administered by the Bureau of Land Management that the exercise of

31   those rights has been far in excess of the prescriptive period and that the use

32   and diversion of those waters by the United States of America has been open,

- 33 -

1   notorious, adverse, exclusive, and under a claim of right against each and

2   every defendant in this litigation.

3                         AMENDMENT TO COMPLAINT

4                            COUNT NO. XXII

5          The United States of America re-alleges and re-avers each and every

6   allegation in the complaint which it filed in this Court on January 25, 1951,

7   and each and every allegation contained in Counts No. I through No. XXI of

8   this supplement and amendment to that complaint and by way of reference

9   makes that complaint and Counts No. I through No. XXI of this supplement

10  and amendment to that complaint a part of this supplementary and amendatory

11  complaint as completely as though they were set forth in this paragraph in

12  full, and further alleges that:

13                                   I

14         The United States of America since the year 1942 has, for beneficial

15  purposes in connection with the military establishments here involved, all

16  of which are fully described in the complaint, diverted, appropriated and

17  used under a claim of right the waters from the Santa Margarita River both

18  from its surface and subsurface flow, which are described in the following

19  paragraphs of these supplements and amendments to its complaint.  That the

20  quantities of water diverted, appropriated and used, which are being presently

21  diverted, appropriated and used are in addition to those quantities of water

22  beneficially used by the United States of America in the exercise of its

23  riparian rights in the Santa Margarita River.

24                                  II

25         There have been, for beneficial purposes, annually diverted,

26  appropriated and used by the United States of America approximately 12,300

27  acre-feet of water from both the surface and subsurface flow of the Santa

28  Margarita River by the United States of America by reason of its

29  riparian rights.  That quantity of water is utilized for both military and

30  agricultural purposes both within and outside of the watershed of the Santa

31  Margarita River, dependent upon demands.

32

                                  - 34 -

III

The United States of America alleges respecting the rights to the use of water presently exercised by it and for which it makes claim in this litigation, in addition to the riparian rights to the use of water described above:

(a) A storage right to the use of 4,300 acre-feet of water annually for Lake O'Neill, an off-channel reservoir situated in Sections 5 and 8, Township 10 South, Range 4 West. Continuously since 1883 and at the present, surface flow of the Santa Margarita River has been and is diverted to fill and re-fill that lake for a total annually of 4,300 acre-feet. Waters have been and are diverted to Lake O'Neill by the O'Neill Ditch.

(b) A right to divert directly from the surface or subsurface flow of the Santa Margarita River 4,800 acre-feet annually for use both within and outside of the watershed of the Santa Margarita River, with a priority of January 1, 1937. Presently those waters are being diverted by means of pumps from the subterranean basin underlying Camp Pendleton. Diversion and use of those waters outside of the watershed was commenced by the predecessor in interest of the United States of America and the United States of America has at all times exercised those rights since the date of their acquisition.

(c) A right to divert directly from the surface or subsurface flow of the Santa Margarita River 3,200 acre-feet of water. Since 1942 those waters have been diverted outside of the watershed. The United States of America is informed and believes and upon that information and belief alleges that its predecessors in interest diverted and used within the watershed of the Santa Margarita River large quantities of water in excess of their riparian entitle- ment, diverting that water from the Santa Margarita River by means of pumps. The United States of America is further informed and believes and upon that information and belief alleges that from the year 1910 the predecessors in interest of the United States of America diverted and used annually the 3,200 acre-feet described in this paragraph, if not more than that quantity, and the United States of America claims a right to that quantity of water with a priority date of January 1, 1910.

COUNT NO. XXIII

I

The United States of America re-alleges and re-avers each and every allegation in the complaint which it filed in this Court on January 25, 1951, and by way of reference makes that complaint a part of this Count No. XXIII of this supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI and XXII above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI and XXII were set forth in this Count No. XXIII in full.

II

In connection with its lands riparian to the Santa Margarita River, within Camp Pendleton and the United States Naval Ammunition Depot, which total 38,739 acres, the United States claims a right correlatively to share in the waters of the Santa Margarita River with all other owners of lands riparian to that stream. Approximately 4,600 acres of that riparian land overlie the subterranean basin within Camp Pendleton from which a large proportion of the waters from the Santa Margarita River used by the military establishments for both riparian and non-riparian uses is pumped by the United States of America. The natural coverage of those approximately 4,600 acres is dependent upon the subterranean basin as a source of supply of water and a lowering of the water table in the basin would destroy that coverage.

III

The United States of America claims that a military use is a proper riparian use and the United States of America is dependent upon its riparian rights to yield sufficient water to provide the difference between the quantity of water its non-riparian rights will yield and its maximum military demand, which is approximately 23,000 acre-feet of water annually.

COUNT NO. XXIV

I

The United States of America re-alleges and re-avers each and every

- 36 -

1    allegation in the complaint which it filed in this Court on January 25,1951, and

2    by way of reference makes that complaint a part of this Count No. XXIV of this

3    supplementary and amendatory complaint, together with Counts Nos. I, II, III, IV,

4    V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI,

5    XXII and XXIII above, as completely as though that complaint and Counts Nos. I,

6    II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII,

7    XIX, XX, XXI, XXII and XXIII were set forth in this Count No. XXIV in full.

8                                    II

9         On the 30th day of June 1948, Application No. 12,576 was filed with the

10   State of California, Department of Public Works, Division of Water Resources,

11   State Engineer by Jack E. Cochrane, United States Navy Department, describing a

12   project for the storage annually of 165,000 acre-feet of water from the Santa

13   Margarita River.  Based upon the recommendations of the Defendant in Intervention

14   State of California, that application was amended by M. H. Aubey, United States

15   Navy Department, on December 13, 1948, describing a project contemplating an

16   annual use of 12,540 acre-feet of water from the Santa Margarita River; that

17   application being further amended by G. B. Erskine, Major General, USMC, in a

18   letter dated 13 July 1949, amending paragraph 2 (b) of Application No. 12,576

19   to read: "For diversion to be stored temporarily and later applied to beneficial

20   use, 165,000 (one hundred sixty-five thousand) acre-feet per annum, to be

21   collected between 1 October and 30 April of each season."  The United States

22   of America claims a priority of June 30, 1948, for the storage right of

23   165,000 acre-feet of water per annum from the Santa Margarita River, that

24   right to be exercised to the extent of its demands, not met by the other rights

25   claimed by it in the Santa Margarita River, all as described herein.

26                              COUNT NO. XXV

27                                    I

28         The United States of America re-alleges and re-avers each and every

29   allegation in the complaint which it filed in this Court on January 25, 1951,

30   and by way of reference makes that complaint a part of this Count No. XXV of

31   this supplementary and amendatory complaint, together with Counts Nos. I, II,

32   III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX,

                                   - 37 -

XX, XXI, XXII, XXIII and XXIV above, as completely as though that complaint and Counts Nos. I, II, III, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII and XXIV were set forth in this Count No. XXV in full.

II

The United States of America alleges that its claims set forth in this litigation and those of the defendants far exceed the available supply of water in the Santa Margarita River; that the defendants named in this action assert adverse claims to the rights to the use of water of the United States of America and by reason of these adverse claims have clouded the title to the rights to the use of water of the United States of America in the Santa Margarita River; and those defendants have exercised and are presently exercising rights to the use of water in a manner that invades or threatens to invade the rights to the use of water of the United States of America; Defendant in Intervention, the State of California, has asserted claims adverse to the United States of America and through repeated overt acts has threatened further to invade those rights of the United States of America, all as alleged above; that the Defendant in Intervention, the State of California, has through its acts drastically changed its status and the status of the parties since the initiation of this action, thus invading the rights to the use of water herein described and threatens to continue thus to invade and threaten to invade the rights to the use of water of the United States of America.

WHEREFORE, the United States of America prays:

1.  That all of the defendants named in this action be required to answer the original complaint and this supplementary and amendatory complaint and set up fully their claims to rights to the use of water from the Santa Margarita River;

2.  That this Honorable Court determine, declare and adjudge that all of the rights to the use of water in the Santa Margarita River claimed by the United States of America in this action are prior and paramount to

- 38 -

1    all of the rights to the use of water claimed by the Fallbrook Public Utility

2    District, the Santa Margarita Mutual Water Company and all other defendants

3    named in this cause claiming appropriative or prescriptive rights;

4          3.  That this Honorable Court determine, declare and adjudge that

5    insofar as the riparian rights to the use of water claimed by the United States

6    of America are concerned that the United States of America's share is correla-

7    tive in the available supply of water in the Santa Margarita River with all

8    other owners of riparian rights to the use of water in that stream;

9          4.  That this Honorable Court determine, declare and adjudge that

10   the Defendant in Intervention, the State of California, is without power to

11   invade the jurisdiction of this Court by the hearing of August 12-14, 1957, or

12   in any other way, and that any act or acts which Defendant in Intervention,

13   State of California, has taken since the initiation of this cause in connection

14   with any rights to the use of water in the Santa Margarita River watershed are

15   null and void and of no force and effect insofar as the rights to the use of

16   water of the United States of America are concerned;

17         5.  That this Honorable Court determine and decree the respective

18   rights of all parties to the litigation as they relate one to another;

19         6.  That this Honorable Court quiet the title of the United States

20   of America in and to its rights to the use of water in the Santa Margarita

21   River as against the adverse claims of defendants;

22         7.  That this Honorable Court determine, declare and adjudge that

23   all of the rights to the use of water asserted by the defendants in this

24   cause in the Santa Margarita River are subject and subordinate to the rights

25   of the United States of America to the continued and undiminished flow of

26   the Santa Margarita River over, above, and through the lands, title to which

27   is in the United States of America, including the rights of the United States

28   of America in the subterranean basin or basins which underlie the military

29   enclave above described and all other lands, title to which is in the

30   United States of America and to which reference has been made;

31         8.  That this Honorable Court determine, declare and adjudge that

32   the United States of America, as successor in interest to the rights of the

1   Rancho Santa Margarita in the Santa Margarita River, is entitled to exercise

2   and enjoy each and every right, privilege, and interest of said Rancho Santa

3   Margarita, together with such rights to the use of water which the United States

4   of America may have gained or acquired in the stream in question through pre-

5   scription, or use, or both, since the acquisition of the Rancho Santa Margarita;

6         9.   That this Honorable Court enjoin all of the defendants in this

7   action from invading or threatening to invade the rights to the use of water

8   title to which is in the United States of America; that it enjoin all parties

9   from asserting adverse claims to the rights to the use of water against the

10   rights of the United States of America; that it enjoin all parties, including

11   the Defendant in Intervention, the State of California, from changing their

12   status in this litigation or the status of any of the parties; that it enjoin

13   the Defendant in Intervention, the State of California, from invading or

14   embarrassing the jurisdiction of this Honorable Court;

15         10.   That this Honorable Court establish by appropriate order or

16   orders, a course of conduct for the taking of evidence and the trial of this

17   case which will result in minimum costs to the small water users in the Santa

18   Margarita River watershed who have been named defendants in this proceeding

19   in accordance with the decision of the United States Court of Appeals for the

20   Ninth Circuit (235 F.2d 647 (C.A.9, 1956));

21         11.   That this Honorable Court grant to the United States of

22   America such further and additional relief as may be proper.

23                                        UNITED STATES OF AMERICA

24

25                              s/  J. Lee Rankin
                                _____
26                              J. LEE RANKIN,
                                Solicitor General

27

28                              s/  William H. Veeder
                                _____
29                              WILLIAM H. VEEDER,
                                Attorney, Department of Justice

30

31   DATED:   March 19, 1958         s/  William E. Burby
                                _____
32                              WILLIAM E. BURBY,
                                Attorney, Department of Justice

Exhibit "A"

1   Cosgrove & O'Neil,                    O'Melveny & Myers,
    1031 Rowan Bldg.,                     900 Title Insurance
2   458 So. Spring St.,                   433 So. Spring St.,
    Los Angeles, Calif.                   Los Angeles, Calif.
3        Trinity 6656                         Michigan 2611
    Attorneys for Plaintiff               Attorneys for Defendants.
4

5              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

6                   In and For the County of San Diego

7   RANCHO SANTA MARGARITA          )          No. 42850
       a corporation                )
8                                   )
                 Plaintiff          )
9                                   )
            vs.                     )
10                                  )
    N. R. Vail, Mary Vail Wilkinson,)
11  Mahlon Vail, Edward N. Vail,    )
    Margaret Vail Bell, The Vail    )
12  Company, an association of persons)
    transacting business under that )
13  common name, N R. Vail, Mary Vail)
    Wilkinson, Mahlon Vail, Edward N.)
14  Vail and Margaret Vail Bell, as )      STIPULATED JUDGMENT
    Trustees of said Vail Company,  )
15  Mahlon Vail, Executor of the Estate)
    of Margaret R. Vail, deceased, and)
16  Laura Perry Vail, Executrix of the)
    Estate of William Banning Vail, )
17  Deceased.                       )
                                    )
18               Defendants.        )
                                    )
19  Guy Bogart, Lucy Parkman Bogart )
    and Fred Reinhold, Executors of )
20  the will of Murray Schloss, de- )
    ceased, and Philip Playtor,     )
21                                  )
                 Interveners.       )
22
    _____)

23          This cause came on regularly for trial in the above entitled court

24  and department thereof on Monday, October 18, 1926, at the hour of 10:00 o'clock

25  A.M., before the court, Honorable L. D. Jennings, Judge, presiding; Messrs.

26  Hunsaker, Britt and Cosgrove appearing as attorneys for the plaintiff, Messrs. Haas

27  & Dunnigan, Messrs. Ward, Ward & Ward, Messrs. Stephens & Stephens, and Messrs.

28  O'Melveny, Milliken & Tuller, appearing as attorneys for defendants, and Walter

29  Gould Lincoln, Esq., appearing as attorney for intervenors.  The introduction

30  of evidence, oral and documentary, being completed, arguments, oral and in

31  writing, having been submitted, and court having considered the same and being

32  fully advised in the premises, findings of fact and conclusions of law having

                    -41 -                    Exhibit "A"
                                             page 1

1   been signed by the court and filed with the clerk thereof, and judgment on

2   said findings and conclusions having been signed and entered; defendants and

3   each of them thereon appealed from said judgment and from each part thereof,

4   but said interveners did not appeal from said judgment; the Supreme Court of

5   said State of California upon said appeal having reversed said judgment and

6   directed a new trial upon certain issues designated in the opinion of said

7   court reported Rancho Santa Margarita, a corporation, vs. Margaret R. Vail,

8   et al., L. A. No. 15076, 11 Cal. (2nd) 501, and said plaintiff and defendants

9   having stipulated to the entry of the following judgment,

10       Now, therefore, IT IS ORDERED, ADJUDGED AND DECREED that:

11

12       Section First:  The plaintiff, Rancho Santa Margarita, a corporation,

13   and defendants, N. R. Vail, Mary Vail Wilkinson, Mahlon Vail, Edward N. Vail,

14   Margaret Vail Bell, the Vail Company, an association of persons transacting

15   business under that common name, N. R. Vail, Mary Vail Wilkinson, Mahlon Vail,

16   Edward N. Vail and Margaret Vail Bell, as Trustees of said Vail Company, Mahlon

17   Vail, Executor of the estate of Margaret R. Vail, Deceased, and Laura Perry Vail,

18   Executrix of the Estate of William Banning Vail, Deceased, and interveners, Guy

19   Bogart, Lucy Parkman Bogart and Fred Reinhold, Executors of the Will of Murray

20   Schloss, Deceased, and Philip Playtor, have and each has rights in and to the

21   waters of the Temecula-Santa Margarita River and its tributaries, and in and to

22   the use of said waters for all beneficial and useful purposes on their respective

23   lands herein more specifically described.

24       Section Second:  The plaintiff is entitled to take and use upon the

25   whole or any part of its lands lying within the Rancho Santa Margarita y Las

26   Flores, San Diego County, California, sixty-six and two-thirds per cent (66 2/3%)

27   of the water of said Temecula-Santa Margarita River and all its tributaries which

28   naturally, when not artificially diverted or abstracted, flows and descends in

29   the channel thereof at that certain joint gaging station hereinafter in this

30   judgment designated as Measuring Station No. Six (6).

31       Section Third:  Defendants are entitled to take and use upon the whole

32   or any part of their lands hereinafter mentioned, thirty-three and one-third per

- 42 -

Exhibit "A"<br>page 2

3110

1    cent (33 1/3%) of the water of said Temecula-Santa Margarita River and all its

2    tributaries which naturally, when not artificially diverted or abstracted, flows

3    and descends in the channel thereof at that certain joint gaging station herein-

4    after designated Measuring Station No. Six (6).

5            The lands of the defendants herein referred to consist of those certain

6    lands in Riverside County, California, known as Pauba Grant, Lots A, B, C, and D

7    of Little Temecula Grant, or Rancho as shown on the Wolf partition map of Little

8    Temecula Grant as described in the final decree of parition in the case of

9    William Wold vs. Ramona Wolf, being Case No. 5756 of the Superior Court of San

10   Diego County, State of California, said final decree of partition being recorded

11   in Book 199 of Deeds, page 464, et seq., records of San Diego County, California,

12   the southeasterly approximately one-half of Temecula Grant, excluding therefrom

13   the town site of the unincorporated city or town of Temecula and the various

14   parcels of land owned by persons other than the defendants herein, as shown by map

15   entitled "Triangulation Map of Pauba Ranch and Vicinity, Riverside County" received

16   in evidence in this case and marked "Plaintiff's Exhibit No. U-4", which exhibit

17   has been incorporated into and constitutes a part of the Transcript on Appeal in

18   this action  (reference is hereby made to said Transcript and to said Exhibit

19   No. U-4 and by such reference said exhibit is incorporated into and constitutes

20   a part of this judgment), Santa Rosa Grant, and Vail government lands, which said

21   Vail government lands, approximately four hundred sixty (460) acres in area, are

22   more particularly described as: Those certain lands lying within sections

23   twenty-one (21), twenty-seven (27), twenty-eight (28) and twenty-nine (29) of

24   Township Eight (8) South, Range Two (2) West, S. B. B. M., Riverside County,

25   California, and being more particularly identified as Lots Nineteen (19), Twenty

26   (20), Twenty-one (21), Twenty-six (26), Twenty-seven (27), Thirty (30) and

27   Thirty-one (31) of Block Fifteen (15), and those portions of Lots Seventeen (17)

28   and Eighteen (18) of said Block Fifteen (15) lying without but contiguous to the

29   southeasterly boundary of Lot D of said Little Temecula Grant.

30           Section Fourth:  The intervener Philip Playtor is entitled to take and

31   use upon the whole or any part of his lands riparian to said Temecula-Santa

32   Margarita River, as hereinafter delineated and defined, one (1) miner's inch

     continuous flow of the waters of said Temecula-Santa Margarita River.  The lands

- 43 -

3111

1  of said Philip Playtor riparian to said river are described as follows:  The

2  northwest one-quarter (NW$\frac{1}{4}$) of the southeast one-quarter (SE$\frac{1}{4}$) and the south

3  one-half (S$\frac{1}{2}$) of the south one-half (S$\frac{1}{2}$) of section thirty-three (33) and the

4  southwest one-quarter (SW$\frac{1}{4}$) of the southwest one-quarter (SW$\frac{1}{4}$) of section

5  thirty-four (34), Township Eight (8) South, Range Three (3) West, S. B. M.,

6  Riverside County, California.

7      Section Fifth:  The interveners Guy Bogart, Lucy Parkman Bogart and Fred

8  Reinhold, as executors under the will of Murray Schloss, deceased, own certain

9  real property in San Diego County, California, of which approximately twenty (20)

10  acres are riparian to a certain tributary of said Temecula-Santa Margarita River

11  by the name of Stone Creek and are susceptible of practical and profitable irri-

12  gation with the water of said creek, said approximately twenty (20) acres being

13  described as follows:  The south one-half (S$\frac{1}{2}$) of the northeast one-quarter (NE$\frac{1}{4}$)

14  of the northeast one-quarter (NE$\frac{1}{4}$) of section four (4) Township Nine (9) South,

15  Range Three (3) west, S. B. M., San Diego County, in said state.  Said inter-

16  veners are entitled to take from the surface and subsurface waters of said Stone

17  Creek and use the same on said twenty (20) acres riparian to said Stone Creek,

18  throughout said dry or irrigation season of each calendar year and from the 1st

19  day of May of each year until the 31st day of October of the same calendar year,

20  the entire flow of the waters of said Stone Creek and all its tributaries which

21  naturally, when not artifically diverted or abstracted, flows or descends in the

22  channel thereof to and upon said twenty (20) acres parcel; and are entitled to take

23  from said Stone Creek, during the rainy or winter season of each year, for use

24  upon said twenty (20) acres of riparian land for all beneficial purposes, five (5)

25  miner's inches continuous flow.

26      Section Sixth:  The waters of said stream and its tributaries herein

27  apportioned to the interveners shall be deducted from the fractional part of the

28  waters of said stream herein allotted to plaintiff.

29      Section Seventh:  For the purpose of dividing among, and allocating to,

30  the parties of this action, the waters of the Temecula-Santa Margarita River and

31  its tributaries, at the places and in the amounts specified in this judgment, the

32  plaintiff and the defendants immediately shall establish, and thereafter

- 44 -

Exhibit "A"
page 4

3112

1    maintain jointly (unless established and/or maintained by U. S. Geological

2    Survey, Division of Water Resources State Department of Public Works, or other

3    public body), stream-flow (automatically registering) gaging stations at the

4    following three locations on the Temecula-Santa Margarita River:

5           Station No. One (1):  The upper end of Nigger Canyon at or near the

6    present location of the Nigger Canyon gaging station;

7           Station No. Three (3): The upper end of Temecula Gorge, immediately

8    downstream from the confluence of Murrieta Creek, at or near the present location

9    of the Temecula Gorge gaging station;

10           Station No. Six (6):  The Narrows, at or near the present location of

11    the Ysidora gaging station.

12           And plaintiff and defendants shall establish and maintain jointly

13    (unless established and/or maintained by U. S. Geological Survey, Division of

14    Water Resources State Department of Public Works, or other public body), gaging

15    stations for measuring (and automatically registering) the surface flow of said

16    stream, or any of its tributaries, at any point thereon where the plaintiff, the

17    defendants, or the interveners, or any of them, hereafter may construct or main-

18    tain appliances for the diversions of the surface flow of said stream, or any of

19    its tributaries.  (The cost of establishing and maintaining joint gaging stations

20    as are required hereunder, including the taking of measurements and observations

21    thereof, shall be borne equally by the plaintiff and the defendants.)

22           Each party shall establish and maintain meters to determine and auto-

23    matically register the amount of the underground waters abstracted or diverted

24    by such party from the underground waters of Temecula-Santa Margarita River and/or

25    its tributaries by means of wells, either artesian or pumped (except windmill

26    wells and/or domestic use wells of the parties and/or their tenants); such meters

27    shall be of a type which will meet the approval of both plaintiff and defendants

28    or the approval of either party and the engineer in charge of the Los Angeles

29    office of the U. S. Geological Survey, and shall be installed and maintained in

30    such manner and place as to be available for inspection by either plaintiff or

31    defendants at all times.

32           Section Eighth:  Whenever the total normal flow of said Temecula-Santa

Exhibit "A"
page 5

3113

1   Margarita River (when not artificially diverted or abstracted) measured at

2   gaging station No. Three (3) exceeds the total normal flow measured at Gaging

3   Station No. Six (6), then and in that instance the flow of said stream at said

4   Gaging Station No. Three (3) shall be considered as the total flow of said stream,

5   and at such time the apportionments and allotments herein provided for shall be

6   predicated upon the flow of said stream at said Gaging Station No. Three (3).

7       Section Ninth:  For the purpose of apportioning to defendants thirty-thr

8   and one-third per cent (33-1/3%) of the waters of said stream as in Section Third

9   provided, it shall be deemed that an amount of water equal to one-half (1/2) the

10   surface flow at Station No. Six (6) or Station No. Three (3), wherever the flow

11   is the greater (as provided in Section Eighth), pumped and/or diverted from the

12   subsurface and/or surface waters of said river at points upstream from said

13   Station No. Three (3), shall constitute thirty-three and one-third per cent

14   (33-1/3%) of the waters of said stream.

15       It is recognized that the practical operation of the various pumping

16   plants upon the defendants' lands for irrigation makes it difficult, if not

17   impossible, for defendants to abstract and divert each day an amount of water

18   the exact equivalent of the proportion of the stream flow measured at Station

19   No. Six (6), or Station No. Three (3) to which defendants are entitled under

20   this decree.  Accordingly, whenever it is observed that defendants are abstracting

21   and diverting, or have abstracted and diverted surface and/or underground waters

22   in amounts in excess of that to which they are entitled hereunder, defendants,

23   upon learning or being informed of such fact, thereupon shall reduce their

24   diversions below the amount to which they are entitled under this decree, and

25   shall continue such reduced diversions for the same period of time as near as

26   is practicable and in an amount equivalent to the amount of water which defendants

27   had diverted in excess of that to which they were entitled under this decree.

28       Section Tenth:  In addition to the thirty-three and one-third per cent

29   (33-1/3%) of the waters of said stream herein in Section Third allotted to

30   defendants, they may also divert or abstract from the underground waters of said

31   Temecula-Santa Margarita River, but not from the surface waters of said stream,

32   at the places, during the times and upon the conditions hereinafter in this

-46 -

Exhibit "A"
page 6

3114

1    Section specifically set forth, but not otherwise, a specified amount of subsurface

2    water herein in this judgment referred to as "Storage Water". The amount of

3    Storage Water which the defendants may divert or abstract during any irrigation

4    season shall be determined by the elevation of water (when not artificially

5    disturbed) on May 1st of each year in a certain well located on defendants' land

6    known as Windmill Well, in accordance with the following table:

| Depth of water below ground surface as shown in casing of Windmill Well on May 1st | Amount of Storage Water defendants may divert and apply to beneficial use during irrigation season |
|---|---|
| 20 feet or less | 1,500 acre feet |
| 30 feet | 1,125 acre feet |
| 40 feet | 750 acre feet |
| 50 feet | 375 acre feet |
| 60 feet or more | No acre feet |

15 At depths to water intermediate to those above stated proportionate quantities

16 of water may be taken.

17       The spreading of flood water which does not involve surface impoundment

18 (either temporary or otherwise) but which may raise the level of water in the

19 underground basin in which said Windmill Well is drilled and upon which said well

20 is located, shall not be considered as an artificial disturbance of the elevation

21 of water in said Windmill Well. Storage water may be directed and used only upon

22 said lands of defendants hereinbefore described and not elsewhere.

23       For the purpose of indicating the places at which said Storage Water

24 may be pumped, reference is hereby made to "Plaintiff's Exhibit No. 265". Said

25 Exhibit by reference has been incorporated into and constitutes a part of the

26 Transcript on Appeal in this action. Reference is hereby made to said Transcript

27 and to said Exhibit No. 265 and by such reference said Exhibit is incorporated

28 into and constitutes a part of this judgment.

29       Shown upon said Exhibit No. 265, and extending in a generally northerly

30 and southerly direction, is a certain line of wells (hereafter referred to as the

31 E line of wells) designated on said Exhibit as E-3, E-2 North, E-1 North, E-1

32 South and E-2 South.

- 47 -

Exhibit "A"
page 7

3115

1  Easterly thereof, shown upon said Exhibit, and extending in a generally
2  northwesterly and southeasterly direction, is a certain line of wells (hereafter
3  referred to as the P.V. line of wells) designated on said Exhibit as P.V.9,
4  P.V.6, and P.V.6X.  Immediately adjacent to said P.V. line of wells and parallel
5  thereto, is a certain highway commonly known as Old Warners Ranch Road (now not
6  in common use).

7  (a)  Not more than Thirty per cent (30%) of said Storage Water which
8  defendants are entitled to pump during any irrigation season may be pumped from
9  that portion of defendants' lands lying between a line drawn through said E line
10  of wells and extended across said underground basin, and a line drawn through said
11  P.V. line of wells and extended across said basin.

12  (b)  At least seventy per cent (70%)of said Storage Water which defendants
13  are entitled to pump during any irrigation season shall be pumped from that portion
14  of defendants' lands lying easterly of a line drawn through said P.V. line of
15  wells and extended across said underground basin.

16  The well hereinbefore described as Windmill Well is situated on Pauba
17  Grant South sixty-seven degrees fifteen minutes (S 67 deg. 15 min) East of B. M. 11
18  a distance of approximately eleven hundred (1100) feet, and South fifty-seven
19  degrees twenty minutes (S 57 deg. 20 min), West of B. M. 12 a distance of approxi-
20  mately fifteen hundred eighty (1580) feet said bench marks being designated as
21  Nos. 11 and 12 on said Exhibit No. 265.

22  Should said Windmill Well collapse or otherwise cease to be available
23  or useful for the purpose of determining ground water elevations in the vicinity
24  thereof, then another well shall be drilled by the defendants in the same
25  general location at approximately the same ground surface elevation above sea
26  level, but not to exceed a distance of one hundred (100) feet from the location
27  of said Windmill Well.  Such new well shall be approximately the same depth and
28  diameter of casing as said Windmill Well.  In event the parties hereto are unable
29  to agree upon location, depth and diameter of casing of such well, these matters,
30  upon petition of the parties hereto or either of them, shall be determined by
31  order of this court.
32

- 48 -

Exhibit "A"
page 8

3116

For the purpose of determining defendants' total diversions of the waters of the Temecula-Santa Margarita River and its tributaries (meaning thereby to include both the allotment of thirty-three and one third per cent (33 1/3%) of the waters of the river as defined in Section Third, and the additional Storage Water as defined in this Section Tenth hereof), any water abstracted or diverted by defendants from the underground waters of said river (including underground basins of percolating water within the watershed of said river and its tributaries) by use of wells or pumps or other means of diversion, whether now existing or hereafter established, except as hereinafter in this section provided, shall be added to any surface diversions by the defendants from the waters of said river.  Such abstractions by the defendants of the underground waters of the Temecula-Santa Margarita River are, and for all purposes of this judgment shall be (except as hereinafter provided) considered as diversions of the waters of said river, and are and shall be chargeable against the fractional part of the surface flow of said stream and the additional amount of Storage Waters herein allotted to defendants.

Water abstracted or diverted from said underground water of said river which shall not be subject to the provisions of this section are as follows:

1.  Windmill wells maintained by defendants for the purpose of supplying water for cattle;

2.  Water used by defendants or their tenants for domestic use exclusively (but not including any irrigation use);

3.  Waters which defendants may pump directly into the surface flow of said stream pursuant to the requirements of Section Eleventh hereof.

Section Eleventh:

Part I.  During the irrigation season of each year, to wit, May 1 to October 31, inclusive, excepting as otherwise in Part I of this Section permitted, defendants shall cause to be maintained at Gaging Station No. Three (3) a constant flow of water of not less than three (3) cubic feet per second (one (1) cubic foot per second being the equivalent of fifty (50) miner's inches).

The surface flow at said Station No. Three (3) may be permitted to

- 49 -

fall below three (3) cubic feet per second during said irrigation season upon the following conditions and not otherwise:

1. Said surface flow shall not be permitted to fall below three (3) cubic feet per second for any continuous period of more than ten (10) days;

2. An interval of at least ten (10) days shall elapse between periods during which said surface flow falls below three (3) cubic feet per second;

3. Defendants shall contribute to the surface flow at Station No. Three (3), by means of pumping from Temecula Alluvial Basin, or otherwise, an amount of water equal to the amount that the actual flow during said period was less than the required flow of three (3) second feet;

4. Such contributions shall be made at the same rate and over the same period (as near as practicable) as the rate at which said surface flow was less than Three (3) second feet;

5. Such contributions shall be made immediately following the period in which said required flow of three (3) second feet was not maintained;

6. Defendants by means of pumping underground waters directly into the surface flow of the stream or otherwise during any period in which said required flow of three (3) second feet was not maintained, shall always maintain a constant surface flow at Station No. Three (3) of not less than two (2) second feet.

Part II. In the event that, during the irrigation season of any year, to wit, May 1 to October 31, inclusive, the irrigation of crops on said lands of defendants reasonably requires more water than they otherwise are entitled to take under this decree, defendants may abstract and divert underground waters only, in amounts in excess of that to which they are otherwise entitled hereunder Such excessive diversions may be made upon the following conditions and not otherwise:

1. Excessive diversions shall not continue for a period to exceed eight (8) days consecutively;

2. Following any period of excessive diversion, an interval shall elapse before any further period of excessive diversion, which interval shall not be less than the number of days during the period of excessive diversions immediately preceding;

- 50 -

1       3.  Defendants shall reduce their diversions below the amount to which

2     they are otherwise entitled under this decree, such reductions to be in an amount

3     not less than the amount of water which defendants have diverted in excess of

4     that to which they are otherwise entitled under this decree;

5        4.  Such reductions of their diversions shall be made by defendants

6     immediately following the period during which such excessive diversions were

7     made and shall be completed within ten (10) days thereafter;

8        5.  Defendants, at least one (1) day in advance of the commencement

9     of such diversions, shall advise plaintiff in writing of their requirements and

10    of their intention to avail themselves of the privilege of excessive diversions

11    afforded under part II of this section.

12        Parts I and II of this Section Eleventh are complementary one of the

13    other and not inconsistent one with the other and hereafter shall be so construed.

14    The purpose of Part I is to require defendants to maintain a constant flow at

15    Station No. three (3) of not less than three (3) cubic feet per second excepting

16    under the conditions stated when the flow may be permitted to fall below three

17    (3) cubic feet per second but not below two (2) cubic feet per second, and when

18    such diminution of the stream flow occurs the amount of such diminution shall

19    be contributed by the defendants by pumping directly into the surface flow of

20    the stream from the Temecula Alluvial Basin or otherwise.  Part II permits

21    defendants under the conditions stated to use for short periods amounts of

22    water in excess of their allotment but requires them to contribute shortly

23    thereafter the amount of such excessive diversions by reducing (in an amount

24    not less than the amount of such excessive diversions) the amount of the diver-

25    sions to which they are otherwise entitled.  No part of such excessive diversions

26    is required to be contributed by defendants through direct pumping from the

27    subsurface waters of the Temecula Alluvial Basin into the surface flow of the

28    stream if, during the period of such excessive diversions, the constant stream

29    flow at Station No. Three (3) equals or exceeds three (3) second feet.

30        Section Twelfth:  Defendants at all times shall be entitled to divert

31    from the Temecula-Santa Margarita River and its tributaries, and to apply to

32    beneficial use upon their said lands, an amount of water equal to one-half of

Exhibit "A"
page 11

3119

1    the amount which the plaintiff is entitled to divert from said river and its

2    tributaries and apply to beneficial use upon its lands.

3            For the purpose of determining the amount of water which defendants

4    are entitled to divert and apply to such beneficial use, computations of the

5    amount of water diverted and applied to beneficial use by each of the parties

6    hereto shall be made monthly, based on joint measurements maintained as herein

7    required.  In event said measurements disclose that the amount of water whi..

8    defendants are entitled to divert and apply to beneficial use pursuant to the

9    provisions of this judgment is less than one-half the amount being applied to

10    beneficial use by plaintiff, thereupon defendants shall be entitled to increase

11    their diversions and applications to beneficial use to an amount sufficient to

12    make defendants' diversions and applications to beneficial use equal to one-half

13    the amount diverted and applied by plaintiff; provided, however, that such

14    additional diversions and applications, if and when made, shall be in addition

15    to diversions made under Sections Third and Tenth hereof, and shall be made by

16    defendants during the irrigation season in which such right accrues, or in the

17    first subsequent season, or part in the same season and the remainder in the

18    first subsequent season, and such diversion, if any, shall be made by pumping

19    from the underground basin at points easterly from said P. V. line of wells.

20            Section Thirteenth:  Each of the parties hereto shall have the right

21    to construct dams or reservoirs on its or their respective lands or elsewhere,

22    for the purpose of intercepting or impounding or conserving such party's share

23    of the flood waters of said river and its tributaries; provided, however, in

24    the event any such dam or reservoir is hereafter constructed by defendants for

25    such purpose, the rights of defendants to abstract and divert Storage Water

26    pursuant to Section Tenth hereof shall cease and terminate.

27            Defendants shall not make, during any irrigation season, any surface

28    diversions of the waters of said river at the Bridge Pumping Plant, the Cantarini

29    Pumping Plant or the Tule Pumping Plant referred to in the findings herein, or

30    at any other point on said Temecula-Santa Margarita River below the point of

31    Rising Water as shown on said Exhibit No. 265.

32            Section Fourteenth:  The plaintiff, Rancho Santa Margarita, a corporatio

    shall have and recover of and from the defendants, its costs and disbursements

Exhibit "A"
page 12

3120

1    herein taxed at Six Thousand Thirty-Six and 62/100 Dollars ($6,036.62).

2          Dated at San Diego, California, this 26th day of December, 1940.

3

4

5                              GORDON THOMPSON
                                      Judge

6

7          Records indicate that this judgment was recorded in San Diego and

8    Riverside Counties on 26 December 1940.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32                         - 53 -                    Exhibit "A"
                                              Page 13

Exhibit "B"

DESCRIPTION OF LANDS WITHIN THE COAHUILA  INDIAN RESERVATION

WHICH ARE EITHER WITHIN THE SANTA MARGARITA RIVER WATERSHED OR ARE

TRAVERSED BY THE SANTA MARGARITA RIVER WATERSHED LINE

South half of Section 14, Section 23, and Sections 25, 26, 27, 28, 33,

34, 35 and 36, all in Township 7 South, Range 2 East, SBBM.

Sections 26, 27, 28, 29, 30, 31, 32, 33, 34 and 35, all in Township 7

South, Range 3 East, SBBM.

Sections 1, 2, 3 and 4, all in Township 8 South, Range 2 East.  SBBM.

Sections 2, 3, 4, 5, 6 and the North half of Lot 3 in Section 8, all in

Township 8 South, Range 3 East, SBBM.

Exhibit "B"

3122

Exhibit "C"

DESCRIPTION OF LANDS WITHIN THE PECHANGA INDIAN RESERVATION

WHICH ARE EITHER WITHIN THE SANTA MARGARITA RIVER WATERSHED OR ARE

TRAVERSED BY THE SANTA MARGARITA RIVER WATERSHED LINE

Section 25, Section 26, Section 27, except for the Northwest quarter of

the Northwest quarter, Section 34, except for Lot 16, Section 35, Section

36, except for the Southwest quarter of the Northwest quarter. The follow-

ing described property in Section 28:

> Northeast quarter of Southeast quarter;
>
> South half of Southeast quarter, except for Lot 7;
>
> and Southeast quarter of Southwest quarter.

All of the above described property is in Township 8 South, Range 2 West,

SBBM.

Lot E of the Little Temecula Rancho.

Exhibit "C"

1

2

3

4

5

6

7    DESCRIPTION OF LANDS WITHIN THE RAMONA INDIAN RESERVATION

8    WHICH ARE EITHER WITHIN THE SANTA MARGARITA RIVER WATERSHED OR ARE

9    TRAVERSED BY THE SANTA MARGARITA RIVER WATERSHED LINE

10

11    The North half of the Southwest quarter; Southeast quarter of the South-

12    west quarter, and the South half of the Southeast quarter of Section 32,

13    and the Southwest quarter of the Southeast quarter of Section 33, all in

14    Township 6 South, Range 3 East, SBBM.   Northwest quarter of the Northwest

15    quarter of Section 4, and the Northeast quarter of the Northeast quarter of

16    Section 5, all in Township 7 South, Range 3 East, SBBM.

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

Exhibit "D"

3124

Exhibit "E"

DESCRIPTION OF LANDS WITHIN THE CLEVELAND NATIONAL FOREST

WHICH ARE EITHER WITHIN THE SANTA MARGARITA RIVER WATERSHED

OR ARE TRAVERSED BY THE SANTA MARGARITA RIVER WATERSHED LINE

W$\frac{1}{2}$, and SE$\frac{1}{4}$ of Section 30.

All of Section 31 except the following:

E$\frac{1}{2}$ of SE$\frac{1}{4}$ of NW$\frac{1}{4}$; and SW$\frac{1}{4}$ of NE$\frac{1}{4}$ and N$\frac{1}{2}$ of NW$\frac{1}{4}$

of SE$\frac{1}{4}$; and Lots 3, 6 and 7; SW$\frac{1}{4}$ of SE$\frac{1}{4}$ of NW$\frac{1}{4}$;

and NE$\frac{1}{4}$ of SW$\frac{1}{4}$; and N$\frac{1}{2}$ of SE$\frac{1}{4}$ of SW$\frac{1}{4}$.

Section 32.

SW$\frac{1}{4}$ of Section 33.                          All in Township 8 South, Range 1 East

S$\frac{1}{2}$; NW$\frac{1}{4}$; E$\frac{1}{2}$ of NW$\frac{1}{4}$ of NE$\frac{1}{4}$; NE$\frac{1}{4}$ of NE$\frac{1}{4}$;

N$\frac{1}{2}$ of SE$\frac{1}{4}$ of NE$\frac{1}{4}$; and SE$\frac{1}{4}$ of SE$\frac{1}{4}$ of

NE$\frac{1}{4}$ of Section 3.

Sections 4, 5, 6, 7, 8, 9 and 10.

W$\frac{1}{2}$ and SE$\frac{1}{4}$ of Section 11.

SW$\frac{1}{4}$ of Section 12.

Sections 13, 14, 15, 16 and 17.

All of Section 18, except the SW$\frac{1}{4}$ of SE$\frac{1}{4}$.

W$\frac{1}{2}$ amd E$\frac{1}{2}$ of SE$\frac{1}{4}$ of Section 19.

SW$\frac{1}{4}$ of NW$\frac{1}{4}$; W$\frac{1}{2}$ of SW$\frac{1}{4}$; NE$\frac{1}{4}$ of NW$\frac{1}{4}$; N$\frac{1}{2}$ of

NE$\frac{1}{4}$ and SE$\frac{1}{4}$ of NE$\frac{1}{4}$ of Section 20.

Sections 21, 22, 23, 24 and 25.

Lot 1 (NW$\frac{1}{4}$ of NE$\frac{1}{4}$), and NW$\frac{1}{4}$ of NW$\frac{1}{4}$ of Section 30.

All in Township 9 South, Range 1 East

Lots 15 and 16 (S$\frac{1}{2}$ of SE$\frac{1}{4}$)of Section 17.

Lots, 3, 4, 5, 6, 9, 10, 11, 12, 13, 14, 15

and 16 (W$\frac{1}{2}$ and SE$\frac{1}{4}$) of Section 18.

Section 19.

3125

1   Lots 3 and 4 (N$\frac{1}{2}$ of NW$\frac{1}{4}$); Lot 5 (SW$\frac{1}{4}$ of NW$\frac{1}{4}$); Lots 12

2   and 13 (W$\frac{1}{2}$ of SW$\frac{1}{4}$); Lot 14 (SE$\frac{1}{4}$ of SW$\frac{1}{4}$); and Lot

3   15 (SW$\frac{1}{4}$ of SE$\frac{1}{4}$) of Section 20.

4   Lots 3, 4, 5, 6, 11, 12, 13 and 14 (W$\frac{1}{2}$) and Lots 9,

5   10, 15 and 16 (SE$\frac{1}{4}$) of Section 28.

6   Sections 29, 30, 31, 32 and 33.

7   Lot 4 and 5 (W$\frac{1}{2}$ of NW$\frac{1}{4}$); W$\frac{1}{2}$ of Lots 3 and 6 (W$\frac{1}{2}$ of E$\frac{1}{2}$ of NW$\frac{1}{4}$);

8   and Lots 9, 10, 11, 12, 13, 14, 15 and 16 (S$\frac{1}{2}$)

9   of Section 34.                    All in Township 9 South, Range 2 East

10

11  Sections 2, 3, 4 and 5.           All in Township 10 South, Range 2 East

12  E$\frac{1}{2}$ of Fractional Section 22.

13  Fractional Section 23.

14  N$\frac{1}{2}$, N$\frac{1}{2}$ of SW$\frac{1}{4}$, and E$\frac{1}{2}$ of SE$\frac{1}{4}$ of Section 25.

15  Section 26 and 27.

16  W$\frac{1}{2}$ of SW$\frac{1}{4}$, W$\frac{1}{2}$ of E$\frac{1}{2}$ of SW$\frac{1}{4}$, and E$\frac{1}{2}$ of SE$\frac{1}{4}$ of

17  Section 28.

18  S$\frac{1}{2}$, NW$\frac{1}{4}$, and S$\frac{1}{2}$ of NE$\frac{1}{4}$ of Section 29.

19  Sections 30, 31, 32, 33, 34 and 35.

20  W$\frac{1}{2}$ of W$\frac{1}{2}$; SE$\frac{1}{4}$ of NW$\frac{1}{4}$; SE$\frac{1}{4}$ of SW$\frac{1}{4}$; NE$\frac{1}{4}$ of NE$\frac{1}{4}$, and

21  S$\frac{1}{2}$ of SE$\frac{1}{4}$ of SE$\frac{1}{4}$ of Section 36.   All in Township 8 South, Range 1 West

22

23  E$\frac{1}{2}$ of E$\frac{1}{2}$; SW$\frac{1}{4}$ of SE$\frac{1}{4}$; E$\frac{1}{2}$ of NE$\frac{1}{4}$ of SW$\frac{1}{4}$; S$\frac{1}{2}$ of SW$\frac{1}{4}$; NW$\frac{1}{4}$ of NW$\frac{1}{4}$; and

24  NW$\frac{1}{4}$ of SW$\frac{1}{4}$ of NW$\frac{1}{4}$ of Section 1.

25  All of Section 2 except:  SE$\frac{1}{4}$ of NE$\frac{1}{4}$ of NW$\frac{1}{4}$; NE$\frac{1}{4}$ of

26  SE$\frac{1}{4}$ of NW$\frac{1}{4}$; N$\frac{1}{2}$ of SW$\frac{1}{4}$ of NE$\frac{1}{4}$; S$\frac{1}{2}$ of SW$\frac{1}{4}$ of NW$\frac{1}{4}$ of

27  NE$\frac{1}{4}$; SE$\frac{1}{4}$ of SE$\frac{1}{4}$ of NE$\frac{1}{4}$; and E$\frac{1}{2}$ of NE$\frac{1}{4}$ of SE$\frac{1}{4}$.

28  Sections 3, 4, 5, 6, 9, 10, 11, 12, 13, 14 and 15.

29                                    All in Township 9 South, Range 1 West

30

31  Section 1.                        All in Township 9 South, Range 2 West

32

33

                              - 58 -                    Exhibit "E"

<u>TRABUCO AREA</u>

Sections 14,23, 26 and 27 EXCLUDING

portions within Homestead Entry Surveys

No. 48, 49 and 54.                    All in Township 8 South, Range 5 West, SBBM.

3127

Exhibit "E"

DESCRIPTION OF LANDS WITHIN THE SAN BERNARDINO NATIONAL FOREST
WHICH ARE EITHER WITHIN THE SANTA MARGARITA RIVER WATERSHED OR ARE
TRAVERSED BY THE SANTA MARGARITA RIVER WATERSHED LINE

Sections 14, 23 and 24.

North half of Sections 25 and 26.                All in T6S,R1E

Sections 30, 31, 32 and 33.                      All in T6S,R2E

Sections 28, 29, 32, 33 and 34.
EXCEPT from Section 32 the South half of the
Southeast quarter, the East half of the South-
west quarter, and the Northwest quarter of the
Southwest quarter.  AND EXCEPT the Southwest
quarter of Southwest quarter in Section 33.      All in T6S,R3E

Sections 4, 6, 8, 10, 16, 18 and 19.
North half, and North half of Southeast quarter,
and Southwest quarter of Section 20.             All in T7S,R2E

Southwest quarter of Section 1
Sections 2, 3 and 12                             All in T7S,R3E

South half of fractional Section 7,
Southwest quarter of Section 8
Section 16
South half, and South half of North half of
Section 17.
Fractional Section 18.                           All in T7S,R4E

- 60 -                              Exhibit "E"

3128

Exhibit "F"

## LICENSEES PERMITTED TO USE WATERS ARISING

### UPON THE CLEVELAND NATIONAL FOREST

Lloyd, Milton M. and Evelyn M.

Location of diversion within the Cleveland National Forest:

Northeast quarter of the Northwest quarter

of Section 20, Township 9 South, Range 2 East, SBBM.

Application to appropriate water No. 6893 filed with the State of California.

Permit No. 3719 issued by the State of California.

License No. 2843 issued by the State of California.

U. S. Forest Service special use permit issued.

Location of diversion within the Cleveland National Forest:

Southwest quarter of the Northwest quarter,

Section 20, Township 9 South, Range 2 East, SBBM.

Application to appropriate water No. 7731 filed with the State of California.

Permit 4259 issued by the State of California.

License No. 2844 issued by the State of California.

U.S. Forest Service special use permit issued.

Jurkovich, B. M.

Location of diversion within the Cleveland National Forest:

Northwest quarter of the Northeast quarter of

Section 25, Township 8 South, Range 1 West, SBBM.

Application to appropriate water No. 8484 filed with the State of California.

Permit No. 4698 issued by the State of California.

License No. 2400 issued by the State of California.

U.S. Forest Service special use permit issued.

Williamson, Leonard L. and Sarah.

Location of diversion within the Cleveland National Forest:

Northeast quarter of the Southwest quarter,

in Section 12, Township 9 South, Range 1 East, SBBM.

Application to appropriate water No. 9137 filed with the State of California.

Exhibit "F"

3129

1  Permit No. 5090 issued by the State of California.

2  License No. 3268 issued by the State of California.

3  U.S. Forest Service special use permit issued.

4

5  Ewing, Cyril M.

6  Location of diversion within the Cleveland National Forest:

7          Southwest quarter of the Southeast quarter,

8          Section 23, Township 8 South, Range 5 West, SBBM.

9  Application to appropriate water No. 9242 filed with the State of California.

10  Permit 5206 issued by the State of California.

11  License No. 2596 issued by the State of California.

12  U.S. Forest Service special use permit issued.

13

14  Cook, Emery A.

15  Location of diversion within the Cleveland National Forest:

16          East half of Section 23, Township 8 South,

17          Range 5 West, SBBM.

18  Application to appropriate water No. 9291 filed with the State of California.

19  Permit No. 5201 issued by the State of California.

20  U.S. Forest Service special use permit issued.

21

22  Lohman, Edgar S.

23  Location of diversion within the Cleveland National Forest:

24          Southeast quarter of the Southeast quarter,

25          Section 29, Township 8 South, Range 1 West, SBBM.

26  Application to appropriate water No. 10269 filed with the State of California.

27  Permit No. 5926 issued by the State of California.

28  License No. 2741 issued by the State of California.

29  U.S. Forest Service special use permit issued.

30

31  Grammer, Martin

32  Location of diversion within the Cleveland National Forest:

33          Northeast quarter of the Southwest quarter,

-62 -

Exhibit "5"

3130

Section 34, Township 9 South, Range 2 East, SBBM.

Application to appropriate water No. 10806 filed with the State of California.

Permit No. 6279 issued by the State of California.

License No. 4356 issued by the State of California.

U.S. Forest Service special use permit issued.


Fursche, Roy C. and Carl P.

Location of diversion within the Cleveland National Forest:

Northeast quarter of the Northwest quarter,

Section 28, Township 9 South, Range 2 East, SBBM.

Application to appropriate water No. 11161 filed with the State of California.

U.S. Forest Service permit issued.


Oviatt, James

Location of diversions within the Cleveland National Forest:

Section 33, Township 9 South, Range 2 East, SBBM.

Section 17, Township 9 South, Range 2 East, SBBM.

U. S. Forest Service Special use permits issued.

-63 -                    Exhibit "F"


3131

Exhibit "G"

DESCRIPTION OF LANDS WITHIN THE PUBLIC DOMAIN

WHICH ARE EITHER WITHIN THE SANTA MARGARITA RIVER WATERSHED

OR ARE TRAVERSED BY THE SANTA MARGARITA RIVER WATERSHED LINE

AND ADMINISTERED BY THE BUREAU OF LAND MANAGEMENT, DEPARTMENT OF THE INTERIOR

The following lands in Township 6 South, Range 1 East; SBBM:

Lots 1, 2, 3 and 4 in Section 22.

$NE_4^1$ of the $NE_4^1$ of the $SE_4^1$ and the $W_2^1$ of the $W_2^1$ of the $SE_4^1$ of the $SE_4^1$, all in Section 26.

$E_2^1$ of the $E_2^1$ of the $NE_4^1$ of the $SW_4^1$, and the $SW_4^1$ of the $NW_4^1$ of the $SW_4^1$, and the $W_2^1$ of the $SE_4^1$ of the $NW_4^1$ of the $SW_4^1$, all in Section 28.

$S_2^1$ of the $NW_4^1$, and $SW_4^1$ of the $NE_4^1$, and $NW_4^1$ of the $SW_4^1$, all in Section 32.

$SE_4^1$ of the $SW_4^1$, $E_2^1$ of the $E_2^1$ of the $SE_4^1$, and $E_2^1$ of the $SE_4^1$ of the $NE_4^1$, all in Section 36.

The following lands in Township 7 South, Range 1 East; SBBM:

Lot 3, and $SE_4^1$ of the $SE_4^1$, all in Section 4.

$N_2^1$ of the $N_2^1$, and $SE_4^1$ of the $NE_4^1$ and $SE_4^1$, all in Section 10.

$W_2^1$ of Section 12.

$NW_4^1$ of the $NW_4^1$ in Section 14.

$NE_4^1$ of the $SE_4^1$ in Section 24.

Lots 3 and 4 and $E_2^1$ of the $SW_4^1$ in Section 30.

The following lands in Township 7 South, Range 2 East; SBBM:

Fractional Section 12.

$NE_4^1$ of the $SW_4^1$ in Section 13.

The following lands in Township 7 South, Range 3 East; SBBM:

Lots 5,6,7,8 and fractional $NE_4^1$ of the $NW_4^1$ ($NW_4^1$, EXCEPT for the $NW_4^1$ of the $NW_4^1$); and Lot 4 ($NW_4^1$ of the $NE_4^1$), and $SW_4^1$ of the $SE_4^1$, all in Section 4.

Lots 5,6,7 and 8 ($NE_4^1$) in Section 6.

Lot 1 in Section 8.

- 64 -

Exhibit "G"

8132

$N\frac{1}{2}$ of $NE\frac{1}{4}$ of $SE\frac{1}{4}$ and $S\frac{1}{2}$ of $SW\frac{1}{4}$ of $SE\frac{1}{4}$ and $S\frac{1}{2}$ of $SW\frac{1}{4}$ and $S\frac{1}{2}$ of $NE\frac{1}{4}$ of $SW\frac{1}{4}$,

all in Section 13.

$S\frac{1}{2}$ of $SE\frac{1}{4}$, in Section 18.

$SE\frac{1}{4}$ of Section 19.

$N\frac{1}{2}$ of $NE\frac{1}{4}$ of Section 36.

The following lands in Township 7 South, Range 4 East; SBBM:

$SW\frac{1}{4}$ of $SW\frac{1}{4}$ of Section 20.

Entire Section 28.

Lot 1 and $NE\frac{1}{4}$ of $NE\frac{1}{4}$ of fractional Section 30.

The following lands in Township 8 South, Range 1 East; SBBM:

Lots 1, 2, 3 and 4; & $S\frac{1}{2}$ of $NE\frac{1}{4}$; & the $SW\frac{1}{4}$ of Section 4.

Lots 3 and 4 of Section 5.

$NE\frac{1}{4}$ of the $SW\frac{1}{4}$, Section 7.

Lots 3 and 4 of Section 10.

$SW\frac{1}{4}$ of $SE\frac{1}{4}$, $S\frac{1}{2}$ of the $SW\frac{1}{4}$ & the $NW\frac{1}{4}$ of the $SW\frac{1}{4}$, Section 13.

Lots 1,2,3,4,5,7,8 and 12 of Section 15.

$E\frac{1}{2}$, Section 16.

$SE\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 17.

$E\frac{1}{2}$ of the $NW\frac{1}{4}$, $NE\frac{1}{4}$, & the $NW\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 20.

$N\frac{1}{2}$, $N\frac{1}{2}$ of the $S\frac{1}{2}$, & the $S\frac{1}{2}$ of the $SE\frac{1}{4}$, Section 21.

Lots 10,11,12,13,14 and 15 and $W\frac{1}{2}$ of Lots 9 and 16 of Section 22.

$SE\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 23.

Lots 5,6,7 and 8; & $SE\frac{1}{4}$ of the $NE\frac{1}{4}$, SEction 24.

$N\frac{1}{2}$ & $N\frac{1}{2}$ of $S\frac{1}{2}$, Section 25.

Lots 1,2,4 and 5 of Section 26.

$N\frac{1}{2}$ of the $NW\frac{1}{4}$, $NW\frac{1}{4}$ of the $NE\frac{1}{4}$, $NE\frac{1}{4}$ of the $SW\frac{1}{4}$, & the $NW\frac{1}{4}$ of the $SE\frac{1}{4}$,

Section 27.

$SW\frac{1}{4}$ of the $NE\frac{1}{4}$, Section 30.

$SW\frac{1}{4}$ of the $NW\frac{1}{4}$ & the $SW\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 33.

Exhibit "G"

3133

Lot 12 of Section 35.

The following lands in Township 8 South, Range 2 East; SBBM:

$SE\frac{1}{4}$ of the $NE\frac{1}{4}$, Section 7.

$NE\frac{1}{4}$ of the $SW\frac{1}{4}$ & the $SW\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 8.

Lots 5,6,7,8, 11 and 12 of Section 11.


The following lands in  Township 8 South, Range 2 East; SBBM:

Lots 17, 18 and 19 of Section 12.

$NW\frac{1}{4}$ of the $NW\frac{1}{4}$, Section 14.

$W\frac{1}{2}$, Section 16.

$S\frac{1}{2}$, Section 17.

Lots 2 and 4; $SE\frac{1}{4}$ of the $NW\frac{1}{4}$; $E\frac{1}{2}$ of the $NE\frac{1}{4}$; and $SW\frac{1}{4}$ of the $NE\frac{1}{4}$, Section 18.

Lots 1, 2 and 4; $SE\frac{1}{4}$ of $SW\frac{1}{4}$, $NE\frac{1}{4}$ of the $SE\frac{1}{4}$, & the $S\frac{1}{2}$ of the $SE\frac{1}{4}$, Section 19.

$NW\frac{1}{4}$ of the $SW\frac{1}{4}$ & the $S\frac{1}{2}$ of the $S\frac{1}{2}$, Section 20.

$S\frac{1}{2}$ of the $SW\frac{1}{4}$ & the $SW\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 21.

$SE\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 22.

$S\frac{1}{2}$ of the $S\frac{1}{2}$, Section 23.

$NE\frac{1}{4}$ of the $SE\frac{1}{4}$ & the $S\frac{1}{2}$ of the $S\frac{1}{2}$, Section 24.

Section 25.

$E\frac{1}{2}$ of the $NE\frac{1}{4}$ & the $S\frac{1}{2}$ of the $SW\frac{1}{4}$, Section 26.

$N\frac{1}{2}$ & the $SW\frac{1}{4}$, Section 27.

$N\frac{1}{2}$ of the $NW\frac{1}{4}$ & the $S\frac{1}{2}$, Section 28.

$N\frac{1}{2}$ & the $S\frac{1}{2}$ of the $SW\frac{1}{4}$ & the $SW\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 29.

Lots 1, 2 and 3; $NE\frac{1}{4}$; $E\frac{1}{2}$ of $NW\frac{1}{4}$; $NE\frac{1}{4}$ of $SW\frac{1}{4}$; & the $SE\frac{1}{4}$ of the $SE\frac{1}{4}$, Section 30.

$NE\frac{1}{4}$ of the $NE\frac{1}{4}$, Section 31.

$N\frac{1}{2}$ of the $N\frac{1}{2}$; $SE\frac{1}{4}$ of the $NW\frac{1}{4}$; $S\frac{1}{2}$ of the $NE\frac{1}{4}$, $N\frac{1}{2}$ of the $S\frac{1}{2}$ & the $S\frac{1}{2}$ of the $SE\frac{1}{4}$, Section 32.

$NW\frac{1}{4}$ & the $S\frac{1}{2}$, Section 33.

$NE\frac{1}{4}$ of the $NE\frac{1}{4}$ & the $S\frac{1}{2}$, Section 34.

$NW\frac{1}{4}$ & the $W\frac{1}{2}$ of the $NE\frac{1}{4}$; & the $S\frac{1}{2}$, Section 35.

$NW\frac{1}{4}$ of the $NW\frac{1}{4}$, $E\frac{1}{2}$ of the $NW\frac{1}{4}$, $NE\frac{1}{4}$; & the $S\frac{1}{2}$, Section 36.

Exhibit "G"


3134

The following lands in Township 8 South, Range 3 East; SBBM:

Lots 8, 9, 10, 11, 12, 13, 14 and 15 of Section 7.

Lots 7, 8 and 12 of Section 8.

Lots 14 of Section 9.

$E\frac{1}{2}$ of the $NW\frac{1}{4}$ & the $S\frac{1}{2}$, Section 16.

$NE\frac{1}{4}$; $E\frac{1}{2}$ of the $SE\frac{1}{4}$; & Lot 4, Section 18.

Lots 3 and 4 and $E\frac{1}{2}$ of $SW\frac{1}{4}$, Section 19.

$NW\frac{1}{4}$, $W\frac{1}{2}$ of the $SW\frac{1}{4}$, $SE\frac{1}{4}$ of the $SW\frac{1}{4}$; $S\frac{1}{2}$ of the $SE\frac{1}{4}$; $NE\frac{1}{4}$ of the $SE\frac{1}{4}$; & the $E\frac{1}{2}$ of the $NE\frac{1}{4}$, Section 20.

Section 22, 26, 28, 29, and 30 (All entire).

$NE\frac{1}{4}$; $E\frac{1}{2}$ of $W\frac{1}{2}$; Lots 1 to 4; & the $E\frac{1}{2}$ of the $SE\frac{1}{4}$, Section 31.

Sections 32,33,34 and 36 (All entire).

The following lands in Township 8½ South, Range 3 East; SBBM:

Sections 31, 32, 33, 34, 35 and 36 (All entire).

The following lands in Township 9 South, Range 1 East; SBBM:

$W\frac{1}{2}$ of $NW\frac{1}{4}$, and $NW\frac{1}{4}$ of $SW\frac{1}{4}$ and $E\frac{1}{2}$ of $SW\frac{1}{4}$ and $SE\frac{1}{4}$, all in Section 2.

$NE\frac{1}{4}$ in Section 11.

$W\frac{1}{2}$ of $NW\frac{1}{4}$, Section 12.

The following lands in Township 9 South, Range 2 East; SBBM:

Lots 1 through 12 in Section 1.

Lots 1 through 14 in Section 2.

Section 3.

Lots 1,2,3,4,8,9,15 and 16 in Section 4.

Lots 1,2,7,8 and 9 in Section 5.

Lots 2,3,4,6,7,9,10 and 11 in Section 8.

Lots 8 and 12 in Section 9.

Lots 1,2,3,4 & 5 and $E\frac{1}{2}$ of Lot 16 in Section 10.

Lots 1,4,7,8,12,13 and 14 in Section 11.

Lot 1 and Lots 3 through 16 in Section 12.

- 67 -

Exhibit "G"

3135

Section 13.

Section 14, EXCEPT for Lot 13.

Lot 8 in Section 15.

Lot 15 in Section 16.

Lot 6, $S\frac{1}{2}$ of Lot 7, Lots 9, 10 and 13 in Section 21.

Lot 12 and $N\frac{1}{2}$ of Lot 14, and the $SE\frac{1}{4}$ of Lot 14, and $S\frac{1}{2}$ of Lot 10, and Lot

15, all in Section 22.

Lots 1, 2, 3, 6, 7 and 8 in Section 23.

Lots 1,2,4,6,7 and 8 in Section 24.

$N\frac{1}{2}$, and $N\frac{1}{2}$ of $SW\frac{1}{4}$, and $NW\frac{1}{4}$ of $SE\frac{1}{4}$ in Section 25.

Lots 9, 15 and 16 in Section 26.

Lot 17 ($N\frac{1}{2}$ of $SE\frac{1}{4}$ of $NE\frac{1}{4}$) and $E\frac{1}{2}$ of Lot 2 in Section 27.

Lot 4 ($NW\frac{1}{4}$ of $NE\frac{1}{4}$) in Section 28.

The following lands in Township 9 South, Range 3 East; SBBM:

$S\frac{1}{2}$ of $NW\frac{1}{4}$, and $SW\frac{1}{4}$ in Section 3.

$S\frac{1}{2}$ and $S\frac{1}{2}$ of $NE\frac{1}{4}$ in Section 4.

Section 5.

Lots 8 and 9 ($N\frac{1}{2}$ of $NW\frac{1}{4}$), Lot 10 (Fractional $SE\frac{1}{4}$ of $NW\frac{1}{4}$), Lots 11, 12 and 13

(being fractional $NE\frac{1}{4}$ of $SW\frac{1}{4}$, $SW\frac{1}{4}$ of $SW\frac{1}{4}$, and $SE\frac{1}{4}$ of $SW\frac{1}{4}$, respectively),

$SE\frac{1}{4}$, and $SW\frac{1}{4}$ of $NE\frac{1}{4}$, all in Section 6.

$N\frac{1}{2}$ of $NE\frac{1}{4}$, and $SW\frac{1}{4}$ of $NE\frac{1}{4}$, and $S\frac{1}{2}$ of $NW\frac{1}{4}$, and $W\frac{1}{2}$ of $SE\frac{1}{4}$, and $SW\frac{1}{4}$, in

Section 7.

$SE\frac{1}{4}$ of $NW\frac{1}{4}$, in Section 8.

$N\frac{1}{2}$ of $NW\frac{1}{4}$ in Section 9.

$N\frac{1}{2}$ of $N\frac{1}{2}$, and $SW\frac{1}{4}$ of $NE\frac{1}{4}$, and $NW\frac{1}{4}$ of $SE\frac{1}{4}$, in Section 10.

$S\frac{1}{2}$ in Section 11.

$N\frac{1}{2}$ of $N\frac{1}{2}$, and $SE\frac{1}{4}$ of $NE\frac{1}{4}$, in Section 12.

Lots 1, 2 & 3, and $NE\frac{1}{4}$ of $NW\frac{1}{4}$, and $NW\frac{1}{4}$ of $NE\frac{1}{4}$, in Section 18.

$NW\frac{1}{4}$, and $E\frac{1}{2}$ of $SW\frac{1}{4}$, and $SE\frac{1}{4}$, in Section 19.

$SW\frac{1}{4}$ of $SW\frac{1}{4}$, and $E\frac{1}{2}$ of $W\frac{1}{2}$, and $E\frac{1}{2}$ in Section 20.

Exhibit "G"

3136

The following lands in Township 6 South, Range 1 West; SBDM:

Lot 7 and $SE\frac{1}{4}$ of $SW\frac{1}{4}$, and $SW\frac{1}{4}$ of $SE\frac{1}{4}$, all in Section 6.

$SW\frac{1}{4}$ of $NE\frac{1}{4}$, $W\frac{1}{2}$ of $SE\frac{1}{4}$, and $SE\frac{1}{4}$ of $SE\frac{1}{4}$, all in Section 10.

$SW\frac{1}{4}$ of $SW\frac{1}{4}$, in Section 26.

The following lands in Township 6 South, Range 2 West; SBBM:

Lot 4, $S\frac{1}{2}$ of $NW\frac{1}{4}$, and $SW\frac{1}{4}$ of $NE\frac{1}{4}$, all in Section 4.

Section 14.

$NE\frac{1}{4}$ of $SW\frac{1}{4}$, and $NW\frac{1}{4}$ of $SE\frac{1}{4}$, all in Section 20.

$NW\frac{1}{4}$ of $NW\frac{1}{4}$, $SW\frac{1}{4}$ of $SW\frac{1}{4}$, and $NW\frac{1}{4}$ of $SE\frac{1}{4}$, all in Section 24.

The following lands in Township 6 South, Range 3 West; SBBM:

Lots 1 and 2, and $S\frac{1}{2}$ of $SE\frac{1}{4}$, all in Section 30.

$N\frac{1}{2}$ of $NW\frac{1}{4}$, $N\frac{1}{2}$ of $NE\frac{1}{4}$, and $SE\frac{1}{4}$ of $NE\frac{1}{4}$, all in Section 32.

The following lands in Township 6 South, Range 4 West; SBBM:

$NW\frac{1}{4}$ of $NW\frac{1}{4}$, in Section 24.

The following lands in Township 7 South, Range 1 West; SBBM:

Lot 4 in Section 2.

Lot 7 in Section 6.

$E\frac{1}{2}$ of $NE\frac{1}{4}$, $NW\frac{1}{4}$ of $NE\frac{1}{4}$, $SW\frac{1}{4}$ of $NW\frac{1}{4}$, and $W\frac{1}{2}$ of $SW\frac{1}{4}$, in Section 8.

Lots 4, 5 and 6 in Section 12.

Fractional Section 32.

$W\frac{1}{2}$ and $SE\frac{1}{4}$, in Section 34.

The following lands in Township 7 South, Range 2 West; SBBM:

$N\frac{1}{2}$ of $NW\frac{1}{4}$, $NE\frac{1}{4}$ of $NE\frac{1}{4}$, in Section 2.

The following lands in Township 8 South, Range 1 West; SBBM:

Fractional Section 4.

Lots 2 and 3 in Section 12.

-69-

Exhibit "G"

3137

Lots 4,5 6 and 7 in Section 13.

$SE_4^1$, $SE_4^1$ of $NW_4^1$, and $E_2^1$ of $SW_4^1$, all in Section 19.

$W_2^1$ of $SW_4^1$, in Section 20.

$SE_4^1$ of $SE_4^1$, in Section 24.


The following lands in Township 8 South, Range 2 West; SBBM:

Lots 4 and 5, $S_2^1$ of $SW_4^1$, and $SE_4^1$ of fractional Section 23.

$S_2^1$ of $S_2^1$, and $NE_4^1$ of $SE_4^1$, in Section 24.

$SW_4^1$ of $SW_4^1$, and Lot 2 in Section 29.

Lot 5, in Section 30.

$E_2^1$, $SE_4^1$ of $NW_4^1$, $E_2^1$ of $SW_4^1$, and Lot 4 in Section 31.

$NW_4^1$, $NE_4^1$ of $SW_4^1$, and $N_2^1$ of $SE_4^1$, in Section 32.


The following lands in Township 8 South, Range 3 West; SBBM:

$SE_4^1$ of $SE_4^1$, in Section 23.

Lots 1, 2 and 3, and $S_2^1$ of $SW_4^1$, in Section 24.

$W_2^1$, $W_2^1$ of $NE_4^1$, and $SE_4^1$, in Section 25.

$E_2^1$ of $NE_4^1$, and $NE_4^1$ of $SE_4^1$, in Section 26.

Lots 1 and 2 in Section 31.

$S_2^1$ of $NW_4^1$, $W_2^1$ of $NE_4^1$, $SE_4^1$ of $NE_4^1$, $NE_4^1$ of $SE_4^1$, and $N_2^1$ of $SW_4^1$, in Section 33.


The following lands in Township 8 South, Range 4 West, SBBM:

$S_2^1$ of $S_2^1$, in Section 26.

$SE_4^1$, $S_2^1$ of $NE_4^1$, $S_2^1$ of $NW_4^1$, and $N_2^1$ of $SW_4^1$, in Section 27.

$S_2^1$ of $SW_4^1$, and $SW_4^1$ of $SE_4^1$, in Section 31.

$W_2^1$ of $SE_4^1$, in Section 32.

$SW_4^1$ of $NE_4^1$, and $N_2^1$ of $SE_4^1$ of $NE_4^1$, in Section 33.

$NE_4^1$ of $NE_4^1$, in Section 34.

$N_2^1$, $N_2^1$ of $SW_4^1$, $N_2^1$ of $SE_4^1$, and $SE_4^1$ of $SE_4^1$, in Section 35.


The following lands in Township 8 South, Range 5 West; SBBM:

Section 36.

$E_2^1$ of $NW_4^1$, Section 25.

- 70-

Exhibit "G"

3138

The following lands in Township 9 South, Range 2 West; SBBM:

SE$\frac{1}{4}$ of NW$\frac{1}{4}$, and N$\frac{1}{2}$ of SW$\frac{1}{4}$, in Section 4.

Lots 2,3,5 and 6 in Section 6.

The following lands in Township 9 South, Range 3 West; SBBM:

NW$\frac{1}{4}$ of NW$\frac{1}{4}$, in Section 1.

Lot 4 in Section 3.

SW$\frac{1}{4}$ of SE$\frac{1}{4}$, and SW$\frac{1}{4}$ of NE$\frac{1}{4}$, in Section 10.

NW$\frac{1}{4}$ of NW$\frac{1}{4}$, and NW$\frac{1}{4}$ of NE$\frac{1}{4}$, in Section 15.

The following lands in Township 9 South, Range 4 West; SBBM:

Lot 1, in Section 9.

The following lands in Township 9 South, Range 5 West; SBBM:

Fractional Section 3.

-71-

Exhibit "G"

3139

LICENSEES WHO HAVE BEEN PERMITTED TO USE WATERS

ARISING UPON THE PUBLIC DOMAIN


Verdi Development Company

Location of diversion on the Public Domain:

> Southeast quarter of the Southeast quarter,

> Section 31, Township 8½ South, Range 3 East, SBBM.

Application to appropriate water No. 9259 filed with the State of California.

Permit No. 5179 issued by the State of California.


Worcester, Doris I.

Location of diversion on the Public Domain:

> Southwest quarter of the Southwest quarter,

> Section 12, Township 7 South, Range 2 East, SBBM.

Application to appropriate water No. 14707 filed with the State of California.

Permit No. 9038 issued by the State of California.

Exhibit "H"

- 72 -

3140

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                     SOUTHERN DISTRICT OF CALIFORNIA
10                          SOUTHERN DIVISION
11
12   UNITED STATES OF AMERICA,            )
13                    Plaintiff,          )
14            v.                          )        ORDER OF REFERENCE AND
15   FALLBROOK PUBLIC UTILITY             )     APPOINTMENT OF SPECIAL MASTER
        DISTRICT, et al.,                 )
16                    Defendants.         )
17
18           This cause having come on for pretrial hearings commencing the
19   8th day of May, 1957, counsel for the United States of America, plaintiff,
20   and for the following named principal defendants,
21           The Fallbrook Public Utility District;
             The State of California;
22           The Vail Company, Inc.;
             The Santa Margarita Mutual Water Company
23
24   having filed comprehensive memoranda formulating the issues in the case as
25   asserted by them; oral arguments having been heard; the complex issues of both
26   fact and law having been reviewed; recognition being accorded to the fact that
27   involved in this action are the claimed rights in the Santa Margarita River
28   of many water users whose claims and interests this Court and all parties
29   concerned are desirous of protecting at minimum cost and inconvenience;
30   the principal parties having agreed to the reference of the issue involving
31   proof of the claims of certain users;
32           THIS COURT finds, based upon the information before it, that good
     cause exists and expeditious disposition of this case demands the appointment

                                       - 73 -

1    of a Special Master to take evidence relating to the claims of the certain

2    users, NOW, THEREFORE,

3        IT IS HEREBY ORDERED that the Honorable John M. Cranston of San

4    Diego, State of California, having expressed a willingness to accept an

5    appointment as Special Master, and this Court having full faith and con-

6    fidence in his ability, integrity and qualifications, be and he is hereby

7    appointed Special Master in this cause with authority to summon witnesses,

8    issue subpoenas and to take evidence, all as provided under the Federal

9    Rules of Civil Procedure, Rule 53 (a) to (e) inclusive, in regard to the

10   following matters:

11       There shall be taken by the Special Master evidence

12       offered in proof of the claims to rights to the use of water

13       of the Santa Margarita River and its tributaries, of the

14       numerous claimants referred to above including but in no

15       way limited to the title of the lands or interests in

16       lands claimed by them; their claimed irrigated and irrigable

17       acreage; the kind, extent, type and character of their

18       claimed rights to the use of water.

19       The conduct of the hearings by the Special Master shall be in

20   accordance with and pursuant to orders of this Court made from time to time.

21   Hearings shall commence on April 28, 1958, at 10:00 A. M., at the Reche

22   School house, near Live Oak Park, on Live Oak Road, about two and one-half

23   miles east of Fallbrook, San Diego County, California, and thereafter con-

24   tinued from day to day, and from time to time and at such places of hearing

25   as shall, from time to time, be ordered by the Special Master.

26       At the hearing, oral and documentary evidence offered by the parties

27   shall be received or rejected in accordance with the established rules of

28   evidence, practice and procedure.

29       All hearings will be reported and a copy of the transcript of the

30   proceedings will be filed with the initial report of the Special Master re-

31   lating to such hearing provided for by this order.

32

- 74 -

3142

1    All parties desiring to present evidence to the Special Master

2 are directed to appear at the time and place set forth above.  Hearings

3 shall be conducted as far as practicable on an area basis, and informal

4 notice of the areas to be considered on specific dates, and the places of

5 hearings, if other than the Reche School, will be published at the direction

6 of the Special Master from time to time for the convenience of parties, and

7 for information purposes only, in the Fallbrook Enterprise, The Elsinore Sun,

8 The Riverside Daily Enterprise and such other newspapers as may be ordered

9 by the Court, and will be posted from time to time at the Reche School house

10 and at the post offices at Fallbrook, Elsinore, Hemet, Murrieta, Temecula,

11 Anza and Aguanga, California.

12    Information will also be available for the convenience of parties

13 at the Ground Water Resources Office of the United States, located at Rainbow,

14 San Diego County, California, telephone RAndolph 8-1943, 12:00 noon to

15 4:00 P.M., Monday through Friday, as to dates and places of continued hear-

16 ings and general areas proposed to be considered at such hearings.

17    The publication or non-publication and the posting or non-posting

18 of the notices above referred to shall not, however, constitute a limitation

19 upon the powers of the Special Master to hear and consider all evidence

20 presented to him.

21    The Special Master is directed in compliance with the Federal Rules

22 of Civil Procedure, Rule 53 (e), to find specially all relevant facts and

23 state separately his conclusions of law based upon the hearings for which

24 provision is made in this order and submit a report including them to this

25 Court with all convenient speed promptly after the termination of the hear-

26 ing, or at such other and earlier times as this Court may order.

27    Following the conclusion of each hearing before the Special Master,

28 copies of his proposed findings of fact and conclusions of law will be caused

29 by him to be mailed or delivered to the parties or their attorneys participat-

30 ing in such hearing.  Said parties shall have 15 days after mailing or de-

31 livery within which to file with the Special Master, any objections which

32

3143

1  they may have to said proposed findings and conclusions; all said objections
2  shall be heard and determined by the Special Master.  After the findings of
3  fact and the conclusions of law have been signed by the Special Master, they
4  together with his initial report, shall be filed with the clerk and copies
5  thereof be mailed to the participating parties or their attorneys.

6       Thereafter, a notice as directed by the Court shall be mailed
7  to all parties, fixing a date in Court room No. 2, United States District
8  Court, 325 West F Street, San Diego 1, or such other place as the Court may
9  fix in the notice, for hearing on such particular findings of fact and con-
10 clusions of law of the Special Master, as are referred to in such notice.
11 Within 15 days after said notice of said hearing has been mailed, any party
12 may file written objections to said findings of fact and conclusions of law
13 with the clerk of this Court.  At the time and place specified in said
14 notice, the Court will consider all such written objections to such findings
15 of fact and conclusions of law of the Special Master so referred to in the
16 notice, together with any evidence offered in support of such objections and
17 any non cumulative evidence relating to the matters previously heard by
18 the Special Master and relating to the findings and conclusions referred to
19 in the notice.  The Court will then approve, modify or reject said findings
20 of fact and conclusions of law of the Special Master or will make such other
21 findings of fact and conclusions of law, or other orders as the Court shall
22 deem appropriate.

23      Subsequently, the Special Master shall make his final report and
24 file the same with the clerk.  The Court will thereafter set a time and
25 place for a final hearing on the Special Master's final report, and notice
26 of the time and place thereof shall be served by the clerk by mail upon all
27 parties.  At the time and place of the hearing the Court will consider among
28 other things, the integration of all the findings of fact and conclusions of
29 law of the Special Master which have been approved by the Court, and will
30 determine the correlative rights of all the parties to this action, and will
31 then make its findings of fact and conclusions of law and decree finally
32

1.  determining the rights of all parties to this action.

2.        IT IS FURTHER ORDERED that the compensation of the Special Master

3.  shall be One Hundred Fifty Dollars ($150) a day plus reasonably necessary

4.  expenses incurred by him for each and every day of trial or hearing, and

5.  that he shall be compensated Twenty-five Dollars ($25) per hour for each

6.  and every hour spent on the case other than the days of hearing or trial,

7.  payment to be made pursuant to and in accordance with such additional orders

8.  as may be necessary or advisable.

9.        IT IS FURTHER ORDERED that the plaintiff, United States of America,

10.  shall, pending the entry of final judgment in this case, pay the compensation

11.  of the Special Master and the necessary expenses of hearing rooms, transpor-

12.  tation, court reporter, clerical help and all expenses in connection with

13.  proceedings conducted by the Special Master, on the basis of bills submitted

14.  periodically to the Department of Justice.

15.        The Court reserves until the conclusion of the trial of this action

16.  and the entry of final judgment herein, the apportionment of the above expen-

17.  ditures among the plaintiff and the various major defendants in the action,

18.  said apportionment if made, to be based upon the findings of fact, conclusions

19.  of law and final decree to be entered herein.

20.        IT IS FURTHER ORDERED, that nothing in this order or any further

21.  reference to the Special Master, shall preclude or prevent any party from

22.  participating in any hearing before the Special Master or the Court.

23.        DATED this   12th   day of _____February_____, 19 58 .

24.

25.  Approved as to form and the
     above order consented to:          s/   James M. Carter

26.                            JAMES M. CARTER
                            United States District Judge

27.  s/   William H. Veeder
     United States of America

28.  s/   Adolphus Moskovitz
     State of California

29.

30.  s/   Franz R. Sachse
     Fallbrook Public Utility District

31.  s/   George Stahlman
     Vail Company, Inc.

32.

3145

F I L E D
APR 9 1958
Clerk, U.S.District Court
SOUTHERN DISTRICT OF CALIFORNIA
By /s/ William W. Luddy
                    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES OF AMERICA, )
)
                Plaintiff, )      No. 1247-SD-C
)
        v.                     )   AMENDMENT to "ORDER OF REFERENCE
)                             AND APPOINTMENT OF SPECIAL MASTER",
FALLBROOK PUBLIC UTILITY DISTRICT, )   SETTING DATE OF FIRST HEARING FOR
et al.,                        )   MAY 21, 1958
)
                Defendants. )

        On February 12, 1958, this Court entered an ORDER OF REFERENCE

AND APPOINTMENT OF SPECIAL MASTER, which contains in part the provision

that "Hearings shall commence on April 28, 1958, at 10:00 A.M., at the

Reche School House, near Live Oak Park, on Live Oak Road, about two and

one-half miles east of Fallbrook, San Diego County, California, and

thereafter continued from day to day, and from time to time and at such

places of hearing as shall, from time to time, be ordered by the Special

Master."

        IT IS HEREBY ORDERED that the aforesaid sentence be amended

to show the date May 21, 1958, in lieu of April 28, 1958.

        Dated:  April 9, 1958.

                                /s/   JAMES M. CARTER
                                      JAMES M. CARTER
                                United States District Judge

3146

- 78 -

F I L E D
Apr 8-1958
Clerk, U.S.District Court
Southern District of California
By    William W. Luddy
                        Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 1247-SD-C |
| Plaintiff, | ) | |
| v. | ) | SUPPLEMENTAL ORDER RESPECTING BINDING EFFECT AND MEANING OF STIPULATION DATED NOVEMBER 29, 1951, ENTERED INTO BETWEEN THE UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA |
| FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., | ) | |
| Defendants, | ) | |
| PEOPLE OF THE STATE OF CALIFORNIA, | ) | |
| Defendants in Intervention. | ) | |

There was entered by this Court on the 11th day of February, 1958, an order respecting the effect and meaning of the stipulation of November 29, 1951, between the United States of America and the State of California.

Objections to that order and the interpretation of the stipulation contained in it were made and reserved by the United States of America. Moreover, a question having been raised as to the scope of the order referred to above, it is desirable to limit and define its application.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

(a)  The stipulation of November 29, 1951, referred to in this order and the order of February 11, 1958, is strictly limited to the approximately 133,000 acres of land in San Diego County, California, acquired by the United States of America from the Rancho Santa Margarita and which now constitute the sites for Camp Pendleton, the United States Naval Ammunition Depot and the United States Naval Hospital, and to the rights to the use of water acquired by the United States of America from the Rancho Santa

1   Margarita, together with any rights to the use of water it may have gained

2   by prescription or use or both since its acquisition of the Rancho Santa

3   Margarita.

4       (b)   No other lands or rights to the use of water claimed by

5   the United States of America in this litigation will be subject to or

6   bound by the stipulation of November 29, 1951, and insofar as lands other

7   than those referred to in paragraph (a) above are concerned, this cause

8   will be tried as though neither the stipulation of November 29, 1951, had

9   been entered into nor the order of February 11, 1958, entered by this Court.

10       (c)   The United States of America disclaims any right to augment

11   its rights to the use of water claimed by it in connection with Camp

12   Pendleton, the United States Naval Ammunition Depot and the United States

13   Naval Hospital by reason of its rights to the use of water, claimed in

14   connection with its other land in the watershed of the Santa Margarita

15   River.

16       (d)   Prescriptive rights to the use of water claimed by the

17   United States of America will be based upon and be determined pursuant to

18   the laws of the State of California.   The term "prescriptive rights" as

19   used in this paragraph relates to the acquisition of rights by adverse

20   possession as distinguished from any other means of acquiring rights

21   such as by inverse condemnation.

22       Dated:   April 8, 1958

23

24                       s/   James M. Carter

25                         JAMES M. CARTER

26                United States District Judge

27

28

29

30

31

32

3148

Filed February 11, 1958
Clerk, U.S. District Court
Southern District of California
/s/ William W. Luddy
        Deputy Clerk

1  EDMUND G. BROWN, Attorney
      of the State of California
2  ADOLPHUS MOSKOVITZ, Deputy Attorney General
   Library and Courts Building
3  Sacramento, California
   Telephone:  HIckory 5-4711, Ext. 4574
4
   Attorneys for Defendants in Intervention
5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10                        SOUTHERN DIVISION

11

12  UNITED STATES OF AMERICA,           )
                                        )
13            Plaintiff,                )    No. 1247 - SD-C
                                        )
14      v.                              )    ORDER RESPECTING BIND-
                                        )    ING EFFECT AND MEANING
15  FALLBROOK PUBLIC UTILITY DISTRICT,  )    OF STIPULATION DATED NO-
    a public service corporation of the )    VEMBER 29, 1951, ORIGI-
16                                       )    NALLY ENTERED BETWEEN
    State of California; et al.,         )    THE UNITED STATES AND
17                                       )    THE STATE OF CALIFORNIA
              Defendants,                )
18                                       )
    PEOPLE OF THE STATE OF CALIFORNIA,   )
19                                       )
              Defendants in              )
20            Intervention.              )
                                        )
21  ─────────────────────────────────────

22        The United States having made a motion on January 6,

23  1958, for an order of this Court declaring (1) that the stipu-

24  lation dated November 29, 1951, originally entered between the

25  United States and the State of California, a copy of which is

26  attached and by reference made a part of this order, is binding

27  upon the parties thereto, and (2) that the stipulation should

28  have ascribed to it the usual meaning of the terms set forth

29  in it; and

30        The Fallbrook Public Utility District and the Santa Mar-

31  garita Mutual Water Company having on January 6, 1958, declared

- 81 -

3149

1   in open court their desire to be parties to the stipulation, and

2   the United States and the State of California having on January

3   6, 1958, declared in open court their agreement to the Fallbrook

4   Public Utility District and the Santa Margarita Mutual Water

5   Company becoming parties thereto; and

6        The State of California, the Fallbrook Public Utility

7   District and the Santa Margarita Mutual Water Company having on

8   January 6, 1958, expressed in open court their support of the

9   motion of the United States, but having disagreed with the

10  United States as to what meaning should be ascribed to the

11  stipulation; and

12       This Court (1) having considered written points and

13  authorities and oral argument by the parties to the stipulation

14  regarding the meaning thereof; (2) having taken judicial notice

15  of the furor concerning the nature of the claims of the United

16  States in this action which existed when this action was origin-

17  ally filed; and (3) having considered testimony by the Attorney

18  General of the United States to Congressional committees after

19  the stipulation was entered into, stating his interpretation

20  thereof;

21       NOW, THEREFORE, IT IS RULED AND ORDERED AS FOLLOWS:

22                              I

23       The stipulation dated November 29, 1951, is binding

24  upon the parties thereto, which are the United States, the State

25  of California, the Fallbrook Public Utility District and the

26  Santa Margarita Mutual Water Company.

27                             II

28       The stipulation is unambiguous.

29                            III

30       Paragraph I of the stipulation, the meaning of which

31  is not in dispute among the parties, defines the word "paramount",

1   as used in the complaint in this action, as being used in the

2   same sense as in the opinion in the case of Peabody v. Vallejo,

3   2 Cal. 2d 351, 40 P. 2d 486, and therefore as having no reference

4   to the sovereign character of the United States.

5                                IV

6          Paragraphs II, III and IV of the stipulation must be

7   read together and when so read have the following meaning:

8          A.  Paragraph II of the stipulation lists and re-

9      stricts the rights claimed in this action by the United

10     States to be as follows:

11          1.  The rights to the use of water which the

12         United States acquired when it purchased the Rancho

13         Santa Margarita.  Such rights are the same rights,

14         no more and no less, than the Rancho had, and hence

15         the United States acquired the same rights as any

16         private party who might have purchased the Rancho.

17          2.  Any rights which the United States may

18         have gained since its acquisition of the Rancho

19         Santa Margarita by prescription or use or both.

20          a.  This excludes any claims to rights

21             which the United States may believe it already

22             owned prior to its acquisition of the Rancho,

23             such as rights which the United States has

24             asserted arise from its ownership of the public

25             domain.  Paragraphs III and IV of the stipulation

26             reinforce the conclusion that claims of rights

27             asserted to arise from the ownership of the

28             public domain are excluded, since such claims

29             would be based on the sovereign character of the

30             United States and the laws of the United States

31             rather than the laws of the State of California.

3151

1       b.  The rights gained by "prescription"

2    which the United States may claim under this

3    Paragraph II, are only such rights as might

4    have been acquired by acts adverse to rights

5    belonging to others.

6       c.  Because the word "use" is a very broad

7    term, the rights gained by "use", which the

8    United States may claim under this Paragraph II,

9    include rights by "appropriation" as well as

10   other kinds of rights that may arise by use,

11   limited, however, because of Paragraph IV of

12   the stipulation, to such rights by use as may

13   be acquired under the laws of the State of Cali-

14   fornia.  Excluded, therefore, are claims by the

15   United States of rights acquired by inverse con-

16   demnation, since the law by which such rights

17   would be measured is federal law as set forth in

18   decisions of federal courts involving inverse

19   condemnation by the United States and not Cali-

20   fornia law.

21   B.  Paragraph III of the stipulation is a disclaimer

22  by the United States that by reason of its sovereign status

23  it has rights to a greater quantity of water than a person

24  not a sovereign would have, standing in the position of the

25  United States.

26   C.  Paragraph IV of the stipulation means that the

27  measure of the rights claimed by the United States in this

28  action is all the laws of the State of California pertaining

29  to water rights.  Among them are the laws relating to

30  riparian rights, to prescriptive rights, and to appropria-

31  tive rights, including the method and procedure established

/s/JMC

- 84 -

1    by California law for the acquisition of appropriative

2    rights.

3        Dated:    February 11th 1958

4

5

6

7                      /s/   James M. Carter
                            James M. Carter

8                            United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

1  BETTY MARSHALL GRAYDON
   Assistant United States Attorney
2  1405 Fifth Avenue
   San Diego, 1, California
3  Telephone: F 9-4101
   EDMUND G. BROWN, Attorney General of the State of California
4  B. ABBOTT GOLDBERG, Deputy Attorney General
   600 State Building
5  San Francisco 2, California
   Telephone: UN 1-8700
6  ARVIN B. SHAW, JR., Assistant Attorney General
   855 Rowan Building
7  Los Angeles, California
   Telephone: MAdison 6-0161

8

9              IN THE UNITED STATES DISTRICT COURT

10          IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11                    SOUTHERN DIVISION

12

13 UNITED STATES OF AMERICA,            )

14          Plaintiff,                   )      Civil No. 1247

15      v.                              )      STIPULATION

16 FALLBROOK PUBLIC UTILITY DISTRICT, a )
   public service corporation of the   )
17 State of California, et al.,         )

18          Defendants,                 )

19 PEOPLE OF THE STATE OF CALIFORNIA,   )

20          Defendants in Intervention. )

21          On the 15th day of August, 1951, the People of the

22 State of California, in accordance with invitation of the

23 United States of America, petitioned this Court to intervene

24 in this litigation.  On that date an Order was allowed and

25 entered by this Court granting the Petition.

26          For the clarification of the issues in this

27 litigation, and for the benefit of all of the parties to this

28 cause, it is hereby stipulated:

29                    I

30          That in Paragraphs VIII and IX of plaintiff's

31 Complaint herein, and in Paragraphs 2 and 3 of the Prayer of

                                              3154

                        - 86 -

1    said Complaint, the word "paramount" is used in the same

2    sense in which that word is used in the second paragraph,

3    on page 374 of the opinion of the Supreme Court of California

4    in the case of Peabody v. Vallejo, 2 Cal. 2d 351 (fourth

5    paragraph on page 494, 40 Pac. 2d 486).

6                             II

7         That in this cause, the United States of America

8    claims only such rights to the use of water as it acquired

9    when it purchased the Rancho Santa Margarita, together with

10   any rights to the use of water which it may have gained by

11   prescription or use, or both, since its acquisition of the

12   Rancho Santa Margarita.

13                            III

14        That the United States of America claims by reason

15   of its sovereign status no right to the use of a greater

16   quantity of water than is stated in Paragraph II, hereof.

17                            IV

18        That the rights of the United States of America to

19   the use of water herein are to be measured in accordance with

20   the laws of the State of California.

21                             V

22        That the parties to this Stipulation will request

23   the entry of a Pretrial Order by this Court defining the issues

24   in this cause, in conformity with the statements contained

25   in this Stipulation.

26                            VI

27        That there will be a full, complete and mutual

28   exchange of data and information as to the subject matter of

29   this cause collected by the respective parties to this

30   Stipulation, including data respecting the issuance of any

31   permits or licenses issued by the State of California in

                                                    3155

1  connection with the rights to the use of water of the

2  Santa Margarita River.  Such exchange of information by the

3  United States, will be subject to clearance by the Commanding

4  Officer, Camp Joseph H. Pendleton, in respect to military

5  security, as determined by said Officer.

6       Dated:  November 29, 1951.

7

8

  ERNEST A. TOLIN,                     EDMUND G. BROWN
9    United States Attorney        EDMUND G. BROWN, Attorney General
  BETTY MARSHALL GRAYDON,     of the State of California
10   Assistant United
  States Attorney
11   WILLIAM H. VEEDER,          ARVIN B. SHAW, JR.
  Special Assistant to        ARVIN B. SHAW, JR.
12   the Attorney General       Assistant Attorney General
  of the United States
13

  By                           B. ABBOTT GOLDBERG
14                           B. ABBOTT GOLDBERG
  WILLIAM H. VEEDER          Deputy Attorney General
15   WILLIAM H. VEEDER

16                          Attorneys for the People of the
                          State of California

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31