1247-SD-C

# FILED

MAY 1 C 1958

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
DEPUTY CLERK

Goodwin J. Knight
Governor



### STATE OF CALIFORNIA
## State Water Rights Board

1401 21ST STREET
P. O. BOX 1895
SACRAMENTO 7, CALIFORNIA

HENRY HOLSINGER, CHAIRMAN
W. P. ROWE, MEMBER
RALPH J. McGILL, MEMBER

L. K. HILL
EXECUTIVE OFFICER

April 11, 1958

Applicants, Protestants,
and Other Interested Parties:

        Enclosed are the following documents adopted
by the State Water Rights Board on April 10, 1958:

1.  Decision No. D 896 rejecting Application
    11578 of Santa Margarita Mutual Water
    Company.

2.  Decision No. D 897 rejecting Application
    12152 of Santa Margarita Mutual Water
    Company, and approving in part Applications
    12178 and 12179 of Fallbrook Public Utility
    District.

3.  Order Rejecting Application 12576 of U. S.
    Navy Department.

*L. K. Hill*
L. K. Hill
Executive Officer

Encs.

3408

STATE OF CALIFORNIA
STATE WATER RIGHTS BOARD

\*\*\*

| In the Matter of Application 11578 | ) | Sources: Temecula Creek |
| by Santa Margarita Mutual Water | ) | Santa Margarita River |
| Company | ) | County:  Riverside |

Decision No. D 89(

Decided:  April 10, 1958

\*\*\*

Appearances at hearing held at San Diego on August 12, 13, and 14, 1957, by Henry Holsinger, Chairman, State Water Rights Board.

### For the Applicant

Santa Margarita Mutual
   Water Company               W. B. Dennis, Attorney

### For the Protestants

Fallbrook Public Utility      Phil D. Swing, Attorney
   District                    Franz R. Sachse, Attorney

Vail Company                   George Stahlman, Attorney

### For Interested Parties

Department of Water Resources, Mark C. Nosler, Attorney
   State of California        Muir Woolley, Attorney

Department of Fish and Game,   Howard Huddle,
   State of California        Fisheries Biologist

G. G. Pepple                 In pro per

3409

## DECISION

### Substance of the Application

Application 11578 was filed on October 4, 1946, by Santa Margarita Mutual Water Company (for convenience herein referred to as "Santa Margarita") for a permit to appropriate unappropriated water in the amount of 5,000 acre-feet per annum by storage from Temecula Creek, to be collected year-round, in Vail Reservoir, and 60 cubic feet per second by direct diversion from Santa Margarita River to be diverted between April 1 and November 30 of each year.

Water is to be collected to storage in the reservoir created by existing Vail Dam of the Vail Company located within the SE¼ of NW¼ of Section 10, T8S, R1W, SBB&M*, said water to be later released from the reservoir and allowed to flow by gravity down the natural channels of Temecula Creek and Santa Margarita River to a point within the NW¼ of NE¼ of Section 24, T8S, R3W, where it will be rediverted, together with the proposed direct diversion of the flow of Santa Margarita River for conveyance by pipeline to the place of use.

The water is to be used for irrigation and for incidental domestic purposes within a gross area of 12,600 acres within the applicant's service area in Townships 8, 9, and 10 South, Ranges 2 and 3 West. Irrigation is contemplated on some 8,000 / acres of orchard during an irrigation season extending from April 1 to December 31.

- - - - - - - - - - -

* All township references herein are to San Bernardino Base and Meridian.

-2-

3410

## Protests

Protests are of record by Fallbrook Public Utility District (for convenience herein referred to as "Fallbrook"), the United States Navy and the Vail Company.

Fallbrook claims a right to the use of water from Santa Margarita River at points downstream from the applicant by virtue of Permit 7033 (Application 11586) and Permit 8511 (Application 11587); that the district has not been able to use the amount of water allowed under Permit 7033, namely, 2.5 cubic feet per second, due to the continued drought over the general area; that with the construction of the storage features required to develop water under Permit 8511 (this permit allows seasonal storage and use of 0,000 acre-feet per annum) and with a return to normal runoff, all of the water allowed under both permits will be put to beneficial use; and that any development under Application 11578 will greatly diminish the quantity of water remaining in Santa Margarita River and will render the supply inadequate to satisfy, in full or substantial part, the district's rights which are required to meet the present and future needs of the lands and inhabitants within its boundaries.

The United States Navy's protest is based upon claim of riparian ownership, and a judgment entered on December 26, 1940, and recorded in San Diego and Riverside counties entitled "Rancho Santa Margarita vs. Vail, et al.", Civil No. 42850, under which the United States Government, as successor in interest of Santa Margarita Ranch, claims 66-2/3 per cent of water of Santa Margarita River. The Navy alleges that approval of the application

3411

will deprive it of water necessary for the maintenance of military installations at Camp Pendleton near Oceanside and the Naval Ammunition Depot near Fallbrook. Under the mentioned judgment, the Navy claims that the two principal parties to the suit and the intervenors were granted control of all rights to the waters of the Santa Margarita River.

The Navy claims that the military activities at Camp Pendleton and the Naval Ammunition Depot are entirely dependent on the water resources contained within the Government reservation boundaries and that there is no water company adjacent to Camp Pendleton capable of supplying sufficient water to meet the whole or any substantial part of its needs, that the water needs for the Naval Ammunition Depot are obtained from the surface flows of the Santa Margarita River and the needs for Camp Pendleton area are obtained from wells dispersed throughout the Santa Margarita River basins; that these basins extend in an interconnected form approximately ten miles upstream from the mouth of the river.

The Navy states that until flash floods in the Santa Margarita basin are controlled and regulated by a water conservation and flood control program, the United States must contest applications proposing the appropriation of the waters of the Santa Margarita River since such appropriations will imperil the mission of Camp Pendleton as a military base resulting in the permanent devaluation of Federal lands either for military or agricultural use.

Vail Company claims that there is no water in the Santa Margarita River stream system subject to appropriation; that the

-4-

3412

Vail Company owns all of the property where the applicant proposes
to divert; that the company does not contemplate making any agree-
ments for use of its lands; that the applicant's proposed diver-
sions will interfere with the operation of Vail Dam and other
irrigation works of the company; that the applicant lacks both
legal and financial ability to execute its proposed plan to make
diversions and to put the water to beneficial use; that the appli-
cant has not prosecuted its application with reasonable diligence;
and that approval of Application 11578 would not best conserve in
the public interest the waters sought to be appropriated but to
the contrary would be against public policy and to the legitimate
interests of all others who have rights on the stream.

Rights claimed by Vail Company are based upon riparian
ownership and appropriative rights, including Permit 7032 (Appli-
cation 11518). As to its past and present uses of water the Vail
Company asserts that for more than 50 years it and its prede-
cessors in interest have diverted in excess of 5,000 acre-feet
annually from the Santa Margarita River stream system for domestic
purposes and the irrigation of 3,000 acres.

### Answers to Protests

In answer to the protest of <u>Fallbrook</u> the applicant
claims that Fallbrook has for some years past been diverting a small
amount of water from Santa Margarita River under agreement
with the Santa Margarita Ranch (now Camp Pendleton). The appli-
cant states that the agreement with the ranch was entered into
subsequent to the effective date of the Water Commission Act
(now the Water Code) but, in spite of the fact that a filing with

3413

the State is a prerequisite of a valid appropriative right,
Fallbrook did not file an application until 1946 when the District
filed its Application 11586" which carries a later priority than
the subject application.

No answer to the protest of the <u>United States Navy</u> is
of record.

In answer to the protest of <u>Vail Company</u> the applicant
alleges that the records of discharge of Santa Margarita River
show there is a great deal of "public water" in the river wasting
into the Pacific Ocean; that the applicant expects to make suit-
able financial arrangements with the Vail Company which will
compensate it for any deprivation caused by its occupancy of Vail
property; that the applicant has the financial ability to consum-
mate the project proposed and will acquire the legal ability to do
so; and that the applicant has prosecuted its application with
diligence.

<u>Hearing</u>

Application 11578 was set for public hearing under the
provisions of the California Administrative Code, Title 23,
Waters, before the State Water Rights Board on Monday, August 12,
1957, in Municipal Court, County Court House, San Diego,
California.  The hearing extended through August 13 and 14, 1957.
Application 11578 was consolidated for hearing with Applications
12152, 12178, 12179, and 12576.  These four latter applications
will be considered in separate decisions and orders.

-6-

3414

## The Watershed

Santa Margarita River is formed by the junction of Murrieta Creek and Temecula Creek at the head of a narrow, precipitous, 5-mile canyon (Temecula Canyon) about 2 miles southeast of the Town of Temecula in Riverside County. The river flows in a general southwesterly direction through portions of Riverside and San Diego Counties for a distance of about 30 river miles where it empties into the Pacific Ocean about 4 miles northwest of the City of Oceanside. The drainage area comprises 742 square miles bounded by the watersheds of the San Jacinto River on the north, the San Luis Rey River on the south, and the Colorado River Basin on the east. On the west the watershed adjoins the drainage area of San Mateo, San Onofre, and Las Pulgas Creeks which flow directly to the ocean.

## The Vail Project

### Permit 7032 (Application 11518)

Permit 7032 (SWRB Exh. 2) of Vail Company allows an appropriation of 40,000 acre-feet per annum from Temecula Creek for irrigation and domestic purposes. The water is to be stored at Vail Reservoir (estimated capacity of 41,140 acre-feet), and later applied to beneficial use. The period of collection to storage is from about November 1 of each year to/April 30 of the succeeding year. The place of use is 3,797 acres in Pauba Basin in T8S, R1, 2, and 3W.

3415

## Method of Operation

Under the usual method of operation water is released
through Vail Dam into the channel of Temecula Creek.  A sparling
meter measures the total release at that point (R.T. p. 224).
From Vail Dam the water courses down the natural channel of
Temecula Creek a distance of about 1.5 miles to a point just above
the mouth of Nigger Canyon at the upstream end of Pauba Basin
(R.T. p. 223; also supporting map, Application 11518, SWRB Exh. 2,
and Plate 21 B, SWRB Exh. 6), where it is diverted into a 24-inch
pipeline (R.T. p. 225).  The quantity of flow diverted to the
pipeline is estimated from weir measurements (R.T. p. 224).
Water is conveyed by pipeline as far west as the Temecula Cemetery,
or a straight line distance of about 9 miles from the pipeline
intake (R.T. p. 225).  A branch line also conveys water into the
Pechanga Creek watershed to the southern boundary of Vail Company
lands (R.T. p. 225).  Under this arrangement, or a slight altera-
tion thereof, the entire place of use under Permit 7032 is
physically susceptible of irrigation (supporting map, Permit 7032,
SWRB Exh. 2).  The pipeline supply is supplemented by pumping
from wells at numerous points in Pauba Basin.  The Pauba ground-
water basin is recharged from precipitation and stream flows
originating downstream from Vail Reservoir, as well as releases
from Vail Reservoir (R.T. p. 226).  Ground-water recharge in
Pauba Basin from Vail Reservoir releases occurs (1) by channel
percolation losses in Temecula Creek between Vail Dam and the
pipeline intake, and (2) by recharge from the percolation of
applied irrigation water (R.T. p. 226).

3416

Vail Company's irrigation operations in Pauba Basin are limited by that company's recognition of the 1940 stipulated judgment in Rancho Santa Margarita v. Vail (Superior Court, San Diego County).  The judgment requires, among other things, that a minimum flow of 3 cubic feet per second be maintained by Vail Company at the head of Temecula Canyon from May 1 through October 31 of each year (R.T. p. 244; and see stipulated judgment).  The head of Temecula Canyon is about 9.5 miles downstream from Vail Dam.  Return flow from applied irrigation water in the Pauba Valley is normally sufficient to maintain the required flow (R.T. p. 233).  Ground water from the Pauba Basin rises to the surface near the head of Temecula Canyon and is available to satisfy the requirements of the judgment (R.T. p. 332).  In rare instances the combined surface and ground-water flow at the head of Temecula Canyon is insufficient to maintain the flow of 3 cubic feet per second, in which event water is pumped from the "Navy" well for the purpose of conforming to the requirements of the judgment.  The "Navy" well is located about 8 miles westerly of and downstream from the Vail Dam, and about 1.5 miles upstream from the head of Temecula Canyon (R.T. p. 233; and also Bulletin 57, Vol. II, Appendix F, p. 55, "Navy" well equals Well No. 8S 2W 17M1).

Water Supply and Water Requirements

Witness for Vail Company testified that (R.T. page 200) according to a land classification survey there are 3,500 acres of irrigable land within the place of use under Permit 7032; that

3417

a re-evaluation of the survey would show an increase in this figure; and that under full development 9,500 acre-feet of water will be required annually for the irrigation of these lands.

The United States Geological Survey has maintained a stream-gaging station on Temecula Creek at or near Vail Dam site since 1923, and records of flow are contained in the Water Supply Papers of that agency (SWRB Exh. 7) under the heading "Temecula Creek at Nigger Canyon". * During the period of published record, annual gaged runoff has varied from a maximum of 40,500 acre-feet during water year 1926-27 to a minimum of 1,470 acre-feet during water year 1950-51. Mean and median runoff for the period was 9,380 and 5,310 acre feet per year, respectively.

The long-term annual safe yield of the reservoir is 6,800 acre-feet as estimated by the former State Division of Water Resources (SWRB Exh. 6) and 7,100 acre-feet as estimated by Vail Company (Vail Exh. 2).

It appearing from the evidence that under full development, 9,500 acre-feet of water will be required annually to irrigate lands included within the place of use under Permit 7032 of Vail Company, and it further appearing that Vail Reservoir will provide a safe annual yield of only about 7,000 acre-feet, there will be a deficiency in supply of some 2,500 acre-feet per annum insofar as that source is concerned.

- - - - - - - - - - - -

* Subsequent to 1952, records of this station are published as "Temecula Creek at Vail Dam, near Temecula, California".

3418

Applicant argues (R.T. pp. 23, 24):

"...We are not making any claim as against any water that the Vails can use on the land for which they asked and secured a permit or for purposes that they requested or applied for and for which the permit was granted.  We feel that there are waters that will be stored in the Vail Reservoir that cannot be used on the lands for which the waters were appropriated and cannot be put to the use for the purposes for which the application was made, and the permit granted.

"We feel that it is possible that a large amount of that water as in the past and may in the future be released so that the water can go downstream to meet the terms of the stipulated judgment between the O'Neills which is now the Navy and the Vails and as to those waters we feel that our application would attach..."

The argument has no merit insofar as it relates to unappropriated water at Vail Dam.  It is true that return flows from water stored in Vail Reservoir arriving at the head of Temecula Canyon may be available for the satisfaction of the stipulated judgment.  However, there is no showing that the Vail Company does or intends to release water from Vail Reservoir for the purpose of meeting the requirements of the stipulated judgment without first applying such water to beneficial use in the irrigation of lands within the place of use under Permit 7032.  It follows that there is no water at the Vail Dam which is subject to appropriation by applicant.

Ability of Applicant to Proceed

There is a further compelling reason for denial of the application, including that portion previously described which seeks permission to appropriate 60 cubic feet per second by direct diversion at a point on Vail Company land downstream from the Vail

-11-

Dam.  The testimony strongly indicates that applicant has neither
the ability nor intent to proceed promptly and with due diligence
to appropriate water for beneficial use in the manner proposed in
its application.

The estimated cost of the diversion dam and 16,130 feet
of main conduit is stated in the application to be $300,000.  The
estimated cost of "share in (Vail) Reservoir" is stated to be
$200,000.  Both cost estimates cited are as of 1951.  No evidence
of the total cost of the project was offered.

Concerning the financial ability of the company to
construct its proposed project, Mr. Richard Yarnell, Secretary-
Treasurer and a director of the company, testified (R.T. p. 255)
that the company has 120 or 125 stockholders; that the company has
issued about 1,929 shares of stock; that about 505 of those shares
were issued at a nominal price of $10 in cancellation of indebted-
ness; that (R.T. p. 256) the total cash received by the company
from sale of its stock has amounted to some $14,000; that
(R.T. p. 256) according to his understanding the permit issued by
the Corporation Commission of the State of California limited the
issuance of stock of the company to $24,000 worth or 2,400 shares
at $10 per share; that the shares were held in escrow; that
(R.T. p. 257) the present bank account of the company is $2,240;
that all of the shares that have been issued so far have been paid
for in full; that the shares are not assessable to his knowledge;
that to the best of his knowledge the company has no power to
assess its stockholders; that the company owns no land; that it
owns no pumps, pipes, reservoirs, or tanks; that it owns no water;

3420

that it has served no consumers; that (R.T. p. 258) it has never served water to anyone; and that (R.T. p. 262) no arrangements have been made for financing a project of this type.

Mr. Dennis testified (R.T. p. 188) that the stock is assessable.

Concerning the ability of the company to secure the necessary lands, easements, and rights of way, Mr. Yarnell testified that (R.T. pp. 270-271) the company has never obtained permission from the Vail Company to have access to any waters under the application.

According to the application, the company would rely upon the power of eminent domain to secure the lands required for its use. No estimate of the cost thereof or of the means whereby the purchases would be financed was presented by the company. Counsel stated (R.T. p. 355) that authorities in support of the power of the company to condemn property for its purposes would be submitted in briefs to the Board. Briefs citing these authorities have not been submitted nor have any briefs been filed by applicant company in these proceedings.

It has been held that service of water by a mutual water company to its stockholders is a private use (Pasadena v. Alhambra, 33 Cal.2d 908, citing Stratton v. Railroad Commission, 186 Cal. 119). The evidence (Application 11578) shows that lands covering the proposed diversion site are owned by Vail Company.

There is no evidence concerning plans that have been prepared by the company for prompt and diligent construction of the diversion facilities described in its application and for

-13-

3421

distribution of water throughout its proposed service area. Mr.
Yarnell (R.T. pp. 261, 262) disclaimed knowledge of such matters
and no other witness testified concerning them. No description
of the means that would be employed to distribute water throughout
the service area was presented, either in the application or at
the hearing. The application as first filed included an area of
approximately 3,000 acres which subsequently was included within
Fallbrook District. The lands owned by all but two of the
original incorporators of the company were within this area,
and consequently they "dropped out" (R.T. pp. 254-265). An
amended application filed in 1951 excluded the aforesaid lands
within Fallbrook District and added certain other lands to the
proposed service area of the company. No direct evidence was
produced concerning the desire of any landowner within the amended
service area to take water from the company, the conditions under
which water would be supplied, or that water could be supplied
to potential users at a price they could afford to pay.

Mr. Dennis testified (R.T. p. 184) that all of the
service area of the company and the area described as the place
of use under Application 11578 is located within the boundaries
of Rainbow Municipal Water District excepting the area in
Riverside County; that Rainbow is serving Colorado River water
primarily on a wholesale basis, but also on a retail basis, and
that (R.T. pp. 184 and 190) Bonsall Heights Water District and
Vallecitos, Yucca, Cononita, Morro, and San Luis Rey Heights
Mutual Water Company retail water to consumers within the
boundaries of Rainbow and within the place of use under

-14-

3422

Application 11578.  The map filed in support of Application 11578 (SWRB Exh. 1) indicates that the area referred to in Riverside County comprises about 500 acres.

The relationship between Santa Margarita and Rainbow has not been clarified.  The record shows that certain of the former directors of Santa Margarita are now directors of Rainbow (R.T. pp. 264, 265).  Rainbow has filed an action in the Superior Court of San Diego County to condemn all of the water rights owned by Santa Margarita, including its applications to appropriate water of the Santa Margarita River and all rights that may be acquired thereunder (SWRB Exh. 2).  Rainbow made no appearance in these proceedings before the Board, and no evidence was offered concerning the purpose or intent of Rainbow to consummate an appropriation of water pursuant to any permit that might be issued on the applications of Santa Margarita in the event Rainbow should acquire ownership of said applications or permits.  No showing was made that Santa Margarita has contested or intends to contest the condemnation action.

## Conclusions

The evidence indicates and the Board finds that unappropriated water does not exist in Vail Reservoir (Temecula Creek) and that Santa Margarita Mutual Water Company does not have the ability to proceed promptly and diligently to perfect the appropriations proposed in its Application 11578 (See Section 778 of California Administrative Code, Title 23, Waters).  The plans of the Company for developing a water supply and distribution

-15-

3423

system are highly speculative and uncertain.  In fact, no plans for actual distribution of water have been presented, and there is no reasonable assurance that issuance of permit would be followed by beneficial use of water.  In the judgment of the Board, the appropriation proposed by Santa Margarita would not best conserve the public interest, and therefore, under authority of Water Code Section 1255, its application must be rejected.

### ORDER

Application 11578 for a permit to appropriate unappropriated water having been filed with the former Division of Water Resources, protests having been filed, jurisdiction of the administration of water rights, including the subject application, having been subsequently transferred to the State Water Rights Board, a public hearing having been held by the Board, and said Board now being fully informed in the premises:

IT IS HEREBY ORDERED that said Application 11578 be, and the same is, hereby denied.

Adopted as the decision and order of the State Water Rights Board at a meeting duly called and held at Sacramento, California, on this 10th day of April, 1958.

/s/  Henry Holsinger
_____
Henry Holsinger, Chairman

/s/  Ralph J. McGill
_____
Ralph J. McGill, Member

_____

W. P. Rowe, Member, State Water Rights Board, having voluntarily for good cause disqualified himself in these proceedings, did not participate in the decision.

-16-

3424

STATE OF CALIFORNIA
STATE WATER RIGHTS BOARD

‡‡‡

In the matter of Application 12152 by )
)
Santa Margarita Mutual Water Company )    Source: Santa Margarita
)                  River
and Applications 12178 and 12179 )
)    County: San Diego
by Fallbrook Public Utility District )

---

Decision No. D 897

Decided: April 10, 1958

‡‡‡

Appearances at hearing held at San Diego on August 12, 13, and 14, 1957, by Henry Holsinger, Chairman, State Water Rights Board:

For the Applicants:

Santa Margarita Mutual Water Company      W. B. Dennis, Attorney

Fallbrook Public Utility District         Phil D. Swing, Attorney
                                          Franz R. Sachse, Attorney

For the Protestants:

Santa Margarita Mutual Water Company      W. B. Dennis, Attorney

Fallbrook Public Utility District         Phil D. Swing, Attorney
                                          Franz R. Sachse, Attorney

For Interested Parties:

Department of Water Resources,            Mark Nosler, Attorney
State of California                       Muir Wooley, Attorney

Department of Fish and Game,              Howard Huddle,
State of California                       Fisheries Biologist

G. G. Pepple                              In pro per

3425

# DECISION

## Substance of the Applications

Application 12152, filed on November 12, 1947, by Santa Margarita Mutual Water Company (for convenience herein referred to as "Santa Margarita") is for a permit to appropriate unappropriated water to the extent of 60,000 acre-feet per annum by storage and 60 cubic feet per second by direct diversion from Santa Margarita River year-round. The point of storage and diversion is to be located at the proposed Fallbrook Dam within the NE¼ of NE¼ of Section 12, T9S, R4W, SBB&M[*]. Direct diversion and rediversion of stored waters are to be effected by pumping from Fallbrook Reservoir at a maximum rate of 30,000 gallons per minute. Water is to be used for the irrigation of 8,000 acres of orchard between April 1 and December 31 and for incidental domestic purposes the year-round.

Application 12178, filed on November 28, 1947, by Fallbrook Public Utility District (for convenience herein referred to as "Fallbrook") is for a permit to appropriate unappropriated water between November 1 of each year and June 1 of the following year to the extent of 500 and 9,500 acre-feet per annum respectively from Rainbow Creek and Santa Margarita River. Water is to be diverted to storage in Rainbow Reservoir within the SW¼ of NE¼ of Section 8, T9S, R3W; and in Fallbrook Reservoir within the SE¼ of NE¼ of Section 12, T9S, R4W. Storage releases from Rainbow Reservoir are to be regulated in Fallbrook Reservoir and are to be rediverted, together with

--------------------

[*] All township references herein are to San Bernardino Base and Meridian.

-2-

3426

waters stored in Fallbrook Reservoir at an ultimate maximum rate of 20 cubic feet per second, for the irrigation of 7,200 acres of orchard and general crops between April 1 and November 1 of each year and for domestic and municipal purposes.

Application 12179, filed on November 28, 1947, by Fallbrook is for a permit to appropriate unappropriated water between November 1 of each year and June 1 of the following year to the extent of 1,500 and 8,500 acre-feet per annum, respectively, from Sandia Creek and Santa Margarita River. Water is to be diverted to storage in Sandia Reservoir within the NE¼ of NE¼ of Section 12, T9S, R4W, and in Fallbrook Reservoir. Storage releases from Sandia Reservoir are to be regulated in Fallbrook Reservoir and are to be rediverted, together with waters stored in Fallbrook Reservoir at an ultimate maximum rate of 20 cubic feet per second, for the irrigation of 7,200 acres of orchard and general crops between April 1 and November 1 of each year and for domestic and municipal purposes.

<u>Protests</u>

<u>Application 12152 of Santa Margarita</u>

Protests against Application 12152 are of record by Fallbrook, James O. Turnbull, Betty L. Turnbull, Richard Bray, Cora B. Bray, and Vail Company.

<u>Fallbrook</u> claims a right to the use of water from Santa Margarita River by virtue of Permit 7033 (Application 11586) and Permit 8511 (Application 11587). The existing point of diversion under Permit 7033 is located within one mile upstream from the proposed storage dam referred to in Application 12152 and would be inundated by the reservoir created thereby. The proposed point of

3427

diversion under Permit 8511 is located about one-half mile downstream
from the proposed storage dam.  The protest indicates that Fallbrook
has not been able to use the amount of water allowed under Permit
7033 (2.5 cubic feet per second) due to the continued drought over
the general area; that with the construction of the storage features
required to develop water under Permit 8511 (this permit allows
storage of 10,000 acre-feet per annum) and with a return to normal
runoff, all of the water allowed under both permits will be put to
beneficial use; that any development under Application 12152 will
greatly diminish the quantity of water remaining in Santa Margarita
River and will render the supply inadequate to satisfy, in full or
substantial part, the protestant's rights which are required in full
to meet the present and future requirements of the lands and inhabit-
ants within its boundaries.

James O. Turnbull, et al., protest  Application 12152 of
Santa Margarita and assert that approval thereof will deprive the
protestants of water to which they are entitled under rights based
upon riparian ownership.  They allege that water was first applied
to beneficial use in 1926 and that their present farming practices
require approximately 9 acre-feet annually.

Vail Company claims that there is no water in the Santa
Margarita River stream system subject to appropriation inasmuch as
there is insufficient water in the stream to meet the needs and
rights of riparian lands and parties having legitimate rights in the
stream; that applicant has no legal means of access to the stream at
the proposed point of diversion; that the applicant lacks the finan-
cial ability to execute its proposed plan to make diversions and to
put the water to beneficial use; that the applicant has not prosecuted

3428

its application with reasonable diligence; and that approval of
Application 12152 would not best conserve in the public interest the
waters sought to be appropriated.  Rights claimed by Vail Company are
based upon riparian ownership, appropriative rights and rights pur-
suant to Permit 7032 (Application 11518).  All points of diversion
under rights claimed by Vail Company are located upstream from the
Fallbrook Dam proposed under Application 12152 and would not be
physically interfered with by the proposed reservoir.  As to its past
and present uses of water, the Vail Company asserts that for more
than 50 years it and its predecessors in interest have diverted in
excess of 5,000 acre-feet of water per annum from the Santa Margarita
River stream system for use on more than 3,000 acres of land and for
domestic purposes.

## Applications 12178 and 12179 of Fallbrook

Protests against Applications 12178 and 12179 are of record
by the United States Navy Department and Santa Margarita.

United States Navy Department alleges that the appropria-
tions proposed under Applications 12178 and 12179 will result in a
diminution of the water available in the Santa Margarita River which
constitutes the source of water supply for Camp Pendleton and U. S.
Naval Hospital near Oceanside and the U. S. Naval Ammunition Depot at
Fallbrook; and that its protests are premised on the fact that the
subject applications are involved in the proceeding now pending in
the District Court of the United States for the Southern District of
California, Southern Division, entitled "United States of America,
Plaintiff, vs. Fallbrook Public Utility District, public service
corporation of the State of California, et al., Defendants," Civil
No. 1247-SD.  By the filing of its protests against the subject

3429

applications of Fallbrook, the Navy states that it seeks only to
bring to the attention of the State and Fallbrook the rights claimed
by the United States in the Santa Margarita River and its intention
to resist any encroachment upon those rights.  The Navy further states
that it does not by its protest submit its aforementioned rights to
the jurisdiction of the State of California, its courts or any of its
administrative agencies.

   Santa Margarita in its protests to Applications 12178 and
12179 of Fallbrook claims that uncer prior Applications 11578 and
12152, Santa Margarita proposes to develop a water supply in addition
to the supply presently available by making direct diversions within
Section 24, T8S, R3W, from the Santa Margarita River of all available
water and by a reservoir some 60,000 acre-feet in capacity which would
be of sufficient capacity to almost control the available discharge
of the river through an ordinary quarter-century cycle.  In view of
the foregoing, Santa Margarita claims that there are no flood waters
available for Fallbrook under Fallbrook's applications.

Answers to Protests

### Application 12152 of Santa Margarita

   Santa Margarita in its answer to the protest of Fallbrook
against Application 12152 alleges that Fallbrook's prior Application
11587 (now Permit 7034) was for a permit to appropriate 10,000 acre-
feet per annum in a reservoir of a capacity of 10,000 acre-feet and
that Application 11587 indicated that a reservoir of greater capacity
is not justified; whereas the safe annual yield of such a reservoir
would be only a small fraction of its capacity; that a large reser-
voir with capacity in excess of 50,000 acre-feet is necessary to

-6-

3430

develop the water supply of the river at the proposed dam site; that the cost of foundation and spillway for a reservoir of 10,000 acre-feet capacity would be about the same as for a larger dam; that a 10,000 acre-foot reservoir would not be financially justified; that the proposal of Fallbrook will not develop the water supply at the proposed site; that Fallbrook can join with Santa Margarita in building a reservoir which will fully develop the water supply; and that Fallbrook does not have the power to obstruct a joint development at the site. Santa Margarita further states that it does not propose to interfere with any direct diversion made by Fallbrook under prior right.

In answer to the protest of James O. Turnbull, et al., Santa Margarita alleges that the protestants' lands are a short distance downstream from the dam which it proposes to build to form Fallbrook Reservoir; that "Applicant has no desire to deprive Protestants of the use of a right to water...superior to that of Applicant's"; and that it will make adequate releases from the reservoir to satisfy superior rights of downstream users.

In answer to the protest of Vail Company against Application 12152, it is alleged that the protest has no validity whatever inasmuch as Application 12152 proposes diversion from the Santa Margarita River several miles downstream from the Vail Ranch.

Applications 12178 and 12179 of Fallbrook

Fallbrook answers the protest of the United States Navy Department against its Applications 12178 and 12179 by stating that its proposed appropriations will result in a diminution of the water available in the Santa Margarita River below its proposed points of

3431

diversion to the extent water will be diverted under its application
but denies that any such reduction will cause any damage to the
existing rights of the United States or decrease the amount of water
which the United States may be legally entitled to divert.  Fallbrook
admits that the relative rights of the various claimants in and to
the waters of the Santa Margarita River are involved in an action now
pending entitled "United States of America vs. Fallbrook Public
Utility District, et al., Civil No. 1247-SD", but denies that the
pendency of that action in anywise interferes or affects the present
proceedings pending before the State Water Rights Board which were
initiated long before the commencement of said court action.
Fallbrook alleges that said action does not seek to, nor does it en-
join or suspend the functions, rights, and duties of the Board or
relieve it (Fallbrook) from the duty and obligation of prosecuting
its pending applications to completion with due diligence; and that
action by the State Water Rights Board upon its applications will in
no way interfere with the proceedings of said court action.  Fallbrook
further admits that the United States is a riparian owner as successor
in interest to the Rancho Santa Margarita but denies that any riparian
claim of the United States can be or will be affected by the approval
of its pending applications since all permits are issued subject to
vested rights.

     Fallbrook denies that the stipulation entered into between
the owners of Rancho Santa Margarita and the Vail interests or the
stipulated judgment entered into pursuant to the action entitled
"Rancho Santa Margarita vs. Vail, et al., Civil No. 42850" in any way
enlarged the rights of the United States as successors in interest to
the Rancho Santa Margarita as against Fallbrook or against any other

-8-

3432

person or corporation; alleges that Fallbrook was not a party to said action and is not a privy to any person or corporation who or which was a party to said action; and asserts that any other right the United States may claim is too vague, indefinite and uncertain to enable Fallbrook to know what other rights the United States does or may claim.

Fallbrook answers the protest of Santa Margarita by denying that the Company has any water rights in the Santa Margarita River or, if the Company has any, such rights are not prior to those of the District. The District alleges that even if it should be determined that the Company has rights in the Santa Margarita River prior to those of the District, approval of Applications 12178 and 12179 could not injure or damage the said rights because under the laws of the State of California any permit issued pursuant to an application is expressly issued subject to vested rights.

### Hearing

Applications 12152 of Santa Margarita, 12178 and 12179 of Fallbrook, were set for public hearing under the provisions of the California Administrative Code, Title 23, Waters, before the State Water Rights Board on Monday, August 12, 1957, in the County Court House, San Diego, California. Applicants and protestants were duly notified of the hearing. The hearing extended through August 13 and 14, 1957. Applications 12152, 12178, and 12179 were consolidated for hearing with Application 11578 of Santa Margarita and Application 12576 of the United States Navy Department. These two latter applications are considered in separate decisions and orders.

There follows a summary and discussion of evidence received at the hearing, insofar as such evidence relates to Applications 12152, 12178 and 12179.

-9-

3433

## The Watershed

Santa Margarita River is formed by the junction of Murrieta and Temecula Creeks at the head of a narrow, precipitous, 5-mile canyon about 2 miles southeast of the Town of Temecula in Riverside County. The river flows in a general southwesterly direction through portions of Riverside and San Diego Counties for a distance of about 30 river miles where it empties into the Pacific Ocean about 4 miles northwest of the City of Oceanside. The drainage area comprises 742 square miles bounded by the watersheds of the San Jacinto River on the north, the San Luis Rey River on the south, and the Colorado River Basin on the east. On the northwest the watershed adjoins the drainage area of San Onofre, and Las Pulgas Creeks which flow directly to the ocean.

The area upstream from the junction of Murrieta and Temecula Creeks lies east of the coastal divide and comprises about four-fifths of the drainage area of the Santa Margarita River system. Temecula Creek, the principal branch, rises within the northern part of T10S, R2E, in San Diego County, flows northwesterly for about 10 miles and thence westerly for about 40 miles to the head of Santa Margarita River. Murrieta Creek and its several tributaries drain the northwesterly portion of the area inland from the coastal divide.

Principal tributaries of the Santa Margarita below its origin in downstream order are Rainbow Creek from the east and Sandia and De Luz Creeks from the west.

## Disposition of Application 12152 of Santa Margarita

As previously discussed, Application 12152 of Santa Margarita seeks year-around appropriations of 60 cubic feet per second

3434

by direct diversion and 60,000 acre-feet per annum by storage from
Santa Margarita River with diversion in both instances to be effected
at the proposed Fallbrook Dam.  The estimated cost of the dam and
main conduit to the boundary of the proposed service area is stated
in the application to be $6,500,000 (as of 1951).  No evidence of the
total cost of the project was offered.

    Concerning the financial ability of Santa Margarita to con-
struct its proposed project, Mr. Richard Yarnell, Secretary-Treasurer
and a Director of the Company, testified (R.T. p. 255) that the
Company has 120 or 125 stockholders; that the Company has issued about
1,929 shares of stock; that about 505 of those shares were issued at
a nominal price of $10 in cancellation of indebtedness; that (R.T.
p. 256) the total cash received by the Company from sale of its stock
has amounted to some $14,000; that (R.T. p. 256) according to his
understanding the permit issued by the Corporation Commission of the
State of California limits the issuance of stock of the Company to
2,400 shares at $10 per share; that the shares were held in escrow;
that (R.T. p. 257) the present bank account of the Company is $2,240;
that all of the shares that have been issued so far have been paid for
in full; that to his knowledge the shares are not assessable; that
the Company has no power to assess its stockholders; that the Company
owns no land; that it owns no pumps, pipes, reservoirs or tanks; that
it owns no water; that it has served no consumers; that (R.T. p. 258)
it has never served water; and that (R.T. p. 262) no arrangements
have been made for financing a project of the type proposed.

    Mr. Dennis testified (R.T. p. 188) that the stock is
assessable.

3435

Concerning the ability of Santa Margarita to secure the necessary lands, easements, and rights of way, Mr. Yarnell testified that (R.T. pp. 258-259) the Company owns no land at the point of diversion at Fallbrook Dam site as described in Application 12152; that the Company has no rights of way, access agreements giving it right to enter upon the property at the Fallbrook Dam site; and that no request has been made of Fallbrook for consent to enter upon the property owned by the District in the vicinity of the dam site.

According to the application and to a statement of counsel for Santa Margarita at the hearing (R.T. p. 187) the Company will rely upon the power of eminent domain to secure the lands required for its use. No estimate of the cost thereof or of the means whereby the purchases would be financed was presented by the Company. Counsel stated (R.T. p. 355) that authorities in support of the power of a mutual water company to condemn property for its purposes would be submitted in briefs to the Board. Briefs citing these authorities have not been submitted nor have any briefs been filed by Santa Margarita in these proceedings.

The Supreme Court of California has held that service of water by a mutual water company to its stockholders is a private use (Pasadena v. Alhambra, 33 Cal. 2d. 908, citing Stratton v. Railroad Commission, 186 Cal. 119). The evidence shows (Fallbrook Exh. 5) that lands covering the Fallbrook Dam site have been or are in the process of being acquired by Fallbrook either by purchase or by condemnation for use by that District in construction of a storage dam and reservoir.

There is no evidence concerning plans that have been prepared by Santa Margarita for prompt and diligent construction of the

-12-

3436

storage and diversion facilities described in its application and
for distribution of water throughout its proposed service area.
Mr. Yarnell (R.T. pp. 261, 262) disclaimed knowledge of such matters
and no other witness testified concerning them.  No description of
the means that would be employed to distribute water throughout the
service area was presented, either in the application or at the
hearing.  Application 12152 as first filed included an area of
approximately 3,000 acres which subsequently were included within
Fallbrook.  The lands owned by all but two of the original incorpo-
rators of Santa Margarita were within this area, and consequently
they "dropped out" (R.T. pp. 254-265).  An amended application filed
in 1951 excluded the aforesaid lands within Fallbrook and added
certain other lands to the proposed service area of Santa Margarita.
No direct evidence was produced concerning the desire of any landowner
within the amended service area to take water from Santa Margarita,
the conditions under which water would be supplied, or that water
could be supplied to potential users at a price they could afford to
pay.

Mr. Dennis testified (R.T. p. 184) that all of the service
area of Santa Margarita and the area described as the place of use
under Application 12152 is located within the boundaries of Rainbow
Municipal Water District excepting the area in Riverside County;
that Rainbow is serving Colorado River water primarily on a wholesale
basis, but also on a retail basis, and that (R.T. pp. 184 and 190)
Bonsall Heights Water District and Vallecitos, Yucca, Cononita, Morro
and San Luis Rey Heights Mutual Water Company retail water to con-
sumers within the boundaries of Rainbow and within the place of use
under Application 12152.  The map filed in support of Application

-13-

12152 (SWRB Exh. 1) indicates that the area referred to in Riverside County comprises about 500 acres.

The relationship between Santa Margarita and Rainbow has not been clarified.  The record shows that certain of the former directors of Santa Margarita are now directors of Rainbow (R.T. pp. 264, 265).  Rainbow has filed an action in the Superior Court of San Diego County to condemn all of the water rights owned by Santa Margarita, including its applications to appropriate water of the Santa Margarita River and all rights that may be acquired thereunder (SWRB Exh. 2).  Rainbow made no appearance in these proceedings before the Board, and no evidence was offered concerning the purpose or intent of Rainbow to consummate an appropriation of water pursuant to any permit that might be issued on the applications of Santa Margarita in the event Rainbow should acquire ownership of said applications or permits.  No showing was made that Santa Margarita has contested or intends to contest the condemnation action.

In view of each of the foregoing matters, it is plain that the intent and ability of Santa Margarita to proceed promptly and diligently to appropriate water, should it receive a permit from this Board, have not been established (See 23 Cal. Adm. Code, Sec. 778). The plans of the Company for developing a water supply and distribution system are highly speculative and uncertain.  In fact, no plans for actual distribution of water have been presented, and there is no reasonable assurance that issuance of permit would be followed by beneficial use of water.  In the judgment of the Board, the appropriation proposed by Santa Margarita would not best conserve the public interest, and therefore, under authority of Water Code Section 1255, Application 12152 must be rejected.

-14-

3438

## Water Supply

The United States Geological Survey (USGS) has maintained a stream gaging station on the Santa Margarita River since November, 1924, in the immediate vicinity of the proposed Fallbrook Dam. Flows passing that station are recorded in the water supply papers of that agency (SWRB Exh. 7) under the station name "Santa Margarita River near Fallbrook". The USGS has also maintained a gaging station "Santa Margarita at Ysidora" since 1923 at a point approximately 2.6 miles upstream from the ocean. Table I, entitled "Gaged Runoff - Santa Margarita River" sets forth the annual runoff in acre-feet at these two stations for the period of available record as contained in the water supply papers. Also set forth in Table I are the estimated median, mean, maximum and minimum annual amounts of runoff over the period of available record. According to Max Bookman, District Engineer, Department of Water Resources, and witness for the Department (R.T. p. 53) the flow passing the "near Ysidora" gage represents the flow of Santa Margarita River that wastes to the ocean.

The construction of Vail Dam and Reservoir on Temecula Creek some 20 miles upstream from the "near Fallbrook" gage will almost completely regulate runoff arriving at Vail Dam and will alter the regimen of historical runoff at the Fallbrook Dam site. Under Permit 7032 (SWRB Exh. 1) Vail Company is allowed to appropriate from Temecula Creek between about November 1 of each year and about April 30 of the succeeding year 40,000 acre-feet by storage in Vail Reservoir. Stream flow regulation at Vail Reservoir commenced on November 13, 1948, when the outlet gates were first closed (R.T. p. 202).

3439

## TABLE I

### Gaged Runoff – Santa Margarita River
### in Acre-feet

| Water Year | Near Fallbrook | At Ysidora | Water Year | Near Fallbrook | At Ysidora |
|---|---|---|---|---|---|
| 1923-24 | - | 2,360 | 1938-39 | 18,850 | 22,900 |
| -25 | 3,660* | 790 | -40 | 16,720 | 22,320 |
| -26 | 12,500 | 15,700 | -41 | 83,100 | 117,600 |
| -27 | 85,100 | 91,200 | -42 | 15,760 | 16,930 |
| -28 | 5,480 | 4,000 | -43 | 57,890 | 74,270 |
| -29 | 4,830 | 1,360 | -44 | 21,850 | 27,800 |
| -30 | 8,680 | No record | -45 | 15,560 | 20,270 |
| -31 | 4,920 | 3,660 | -46 | 11,150 | 11,680 |
| -32 | 36,900 | 40,600 | -47 | 8,700 | 6,930 |
| -33 | 6,940 | 6,520 | -48 | 6,640 | 562 |
| -34 | 4,870 | 5,010 | -49 | 5,880 | 479 |
| -35 | 7,780 | 12,990 | -50 | 3,910 | 0 |
| -36 | 7,070 | 11,060 | -51 | 2,750 | 0 |
| -37 | 78,310 | 117,200 | -52 | 47,010 | 47,040 |
| -38 | 91,090 | 122,000 | -53 | 3,970 | 1,040 |
|  |  |  | -54 | 7,540 | 7,740 |

|  | "Near Fallbrook" | "At Ysidora" |
|---|---|---|
| Median: | 8,690 | 11,370 |
| Mean: | 22,847 | 27,087 |
| Maximum: | 91,090 | 122,000 |
| Minimum: | 2,750 | 0 |

* Covers period Nov. 25, 1924, to Sept. 30, 1925

-16-

3440

The former State Division of Water Resources recently made an investigation of Santa Margarita River watershed and the results of the investigation are published in Bulletin No. 57, Division of Water Resources, "Santa Margarita River Investigation", dated June, 1956 (SWRB Exh. 6). Page I-9, Volume 2 of Bulletin No. 57 contains a table entitled "Semiseasonal Inflow to Reservoir Under Present Conditions", which includes the estimated flow which would have reached the Fallbrook Dam site during the period covered by water years 1894-95 through 1952-53 had the level of water use and development existing in 1953 in the basin prevailed for the entire period. These estimates were based upon certain assumptions set forth on pages I-11 to I-16 of Volume 2 of Bulletin No. 57. Said assumptions are considered by this Board as reasonable.

Table II of this decision sets forth the annual flows in acre-feet into Fallbrook Reservoir for the period covering the water years 1895-96 through 1942-43 as estimated in Bulletin No. 57. Also set forth in Table II are the estimated median, mean, maximum and minimum annual amounts of runoff over the aforementioned period. The period covered in Table II is the mean period used in Bulletin No. 57 studies and according to that bulletin is representative of conditions of water supply and climate over a long period of years.

Mr. Bookman testified at considerable length as to the investigation and findings set forth in Bulletin No. 57. He stated that (R.T. pp. 55-56) under the 1953 level of water development and land use within the Santa Margarita watershed the long-term average annual runoff past the stream gaging station "Santa Margarita River at Ysidora" would be 25,200 acre-feet; that (R.T. pp. 58 and 132) under identical conditions the long-time average annual runoff "near Fallbrook" would be 20,400 acre-feet; that, in effect, the difference in runoff between the 25,200 and 20,400 acre-feet would represent a

-17-

3441

TABLE II

### Estimated Runoff of Santa Margarita River Into Fallbrook Reservoir Under Present Conditions

| Water Year | Runoff in Acre-feet | Water Year | Runoff in Acre-feet |
|---|---|---|---|
| 1895-96 | 6,200 | 1919-20 | 11,500 |
| -97 | 10,700 | -21 | 5,800 |
| -98 | 5,500 | -22 | 62,900 |
| -99 | 5,200 | -23 | 10,200 |
| 1899-1900 | 5,200 | -24 | 6,000 |
| -01 | 8,900 | 1924-25 | 4,300 |
| -02 | 6,900 | -26 | 11,500 |
| -03 | 8,600 | -27 | 71,500 |
| -04 | 5,800 | -28 | 5,500 |
| 1904-05 | 12,800 | -29 | 4,800 |
| -06 | 29,700 | 1929-30 | 7,900 |
| -07 | 21,400 | -31 | 4,700 |
| -08 | 10,300 | -32 | 27,800 |
| -09 | 14,100 | -33 | 6,600 |
| 1909-10 | 13,600 | -34 | 4,900 |
| -11 | 11,500 | 1934-35 | 7,600 |
| -12 | 9,300 | -36 | 6,600 |
| -13 | 6,500 | -37 | 50,200 |
| -14 | 11,300 | -38 | 84,800 |
| 1914-15 | 47,000 | -39 | 16,300 |
| -16 | 191,400 | 1939-40 | 15,700 |
| -17 | 16,100 | -41 | 73,300 |
| -18 | 11,300 | -42 | 15,300 |
| -19 | 7,900 | -43 | 53,200 |

|  |  |
|---|---|
| Median: | 10,500 |
| Mean: | 21,800* |
| Maximum: | 191,400 |
| Minimum: | 4,300 |

\* This flow includes an estimated depletion of 1,200 acre-feet per annum by Fallbrook Public Utility District and 200 acre-feet per annum by miscellaneous diversions above the dam site (See Paragraph 7, page I-13 of Volume 2 and Plate 23 of Volume I, Bulletin No. 57).

net incremental gain in annual runoff between the two gaging stations;
that (R.T. p. 114) further conservation of any appreciable extent of
the waters that now waste to the Pacific Ocean will require large
cyclic storage; and that (R.T. p. 69) further surface storage repre-
sents the most feasible means of conserving more of the waste to the
ocean because of the large storage required to carry over long
drought periods.

### Fallbrook Project

The proposed place of use under Applications 12178 and
12179 consists of a gross area of 8,192 acres located within T9 and
10S, R3 and 4W (SWRB Exh. 1).  A small portion of the area is within
the Santa Margarita River watershed but the greater portion is
drained by the San Luis Rey River.  The District is bounded on the
east and south by the Rainbow Municipal Water District, on the west
by United States Camp Pendleton Naval Reservation, and is located a
median distance of about 15 miles northeast of the point of debouch-
ment of the Santa Margarita River into the Pacific Ocean.

Mr. George Yackey, General Manager and Chief Engineer of
the District, testified (R.T. p. 296) that the general agricultural
development in recent years within the area has tended towards the
production of avocados and lemons but that (R.T. p. 297) the area has
become more and more urban, that the business community of the town
of Fallbrook is growing remarkably, that (R.T. p. 299 and Fallbrook
Exh. 4) during the period 1946 to date water use within the District
has increased from about 1,600 to about 8,500 acre-feet per year;
that the number of total meters served has increased from 478 to
1,625; that the peak monthly demand has increased during that period

3443

from 313 acre-feet to 1,361 acre-feet; that (R.T. p. 299) in 1946
peak demands were supplied with 2.5 cfs; that the peak demands in the
District now require in excess of 35 cubic feet per second; that in
1970 the water use will increase to 13,800 acre-feet per annum
(Fallbrook Exh. 4); that (R.T. p. 295) the majority of people situ-
ated in a 3,000-acre area north of the District desire annexation
thereto; that this 3,000-acre area is well suited to avocados or
lemons but that the area will probably be broken into small residen-
tial holdings; that (R.T. p. 298) water use in 1956 and 1957 has de-
creased due to a shortage of water; that (R.T. p. 300) the present
entitlement of the District's preferential right to Colorado River
water is about 85 acre-feet per month; that (R.T. pp. 300 and 301)
the most the District can obtain from the Santa Margarita River under
its Permit 7033 allowing year-round diversion of 2.5 cfs and the
Colorado River entitlement is 3,000 acre-feet; that (R.T. p. 301) as
a member of the San Diego County Water Authority the District can
participate in the use of about 200 acre-feet of storage in
San Vicente Reservoir (a terminal reservoir of the San Diego aqueduct);
that (R.T. p. 302) the District itself has no seasonal or cyclic
storage; that (R.T. p. 297) the underground water source is dwindling;
and that (R.T. p. 290) the natural underground supply available to the
District is insignificant.

    As to development and construction plans, Mr. Yackey
testified (R.T. p. 306) that the District is considering a 35,000
acre-foot storage reservoir at the Fallbrook Dam site; that a firm
annual yield of 5,100 acre-feet of water is a conservative estimate
of the reservoir's probable production; that (R.T. p. 307) Santa
Margarita River water will provide a high quality, low salt content,

3444

supply for lemon and avocado production; that (R.T. p. 309) the
District will suffer irreparable damage if stored Santa Margarita
River water cannot be obtained; that (R.T. p. 302) the District has a
condemnation suit filed to acquire the Fallbrook Dam and Reservoir
site property and that 66 per cent of the property (as shown on
Fallbrook Exh. 5) has been acquired; that (R.T. p. 302) test borings
have been made at the dam site; that the District is negotiating for
equipment needed in dam construction; that (R.T. p. 303) the District
is within a matter of days of starting on the actual construction
operations; that (R.T. p. 304) upon securing the property at the dam
site, the District is desirous of commencing stripping operations of
phreatophytes; that (R.T. p. 305) as soon as the District obtains
possession of the dam site property, the borrow pits will be stripped
and exposed to prove up borrow pit material on which only preliminary
data presently exists; that (R.T. p. 306) it is hoped that the
District can complete construction of the dam in two winters and one
summer.

As to financial status of the District, Mr. Yackey testified
(R.T. p. 297) that the present assessed value of the real and personal
property in the District is $7,100,000; that (R.T. p. 297) the present
gross population of the District is roughly 9,000; that (R.T. p. 297)
the District has no restriction on revenue bonds; that the District
has a general obligation bonding capacity of $1,200,000; that (R.T.
p. 316) the $1,200,000 is over and above the present bonded indebted-
ness of the District; that (R.T. p. 316) the District has an out-
standing bonded indebtedness slightly in excess of $300,000; that
(R.T. p. 317) the $1,200,000 in general obligation bonds have not been
voted; that (R.T. p. 318) the $1,200,000 in bonds will have to be

3445

voted by a two-thirds vote of the people; that (R.T. p. 317) the investment company, Stone and Youngberg, would recommend buying the bonds and approving the bonds for purchase.

The record is conclusive that there is an urgent need for additional water in the Fallbrook area and that the proposed use of water would be beneficial. There is ample evidence to sustain a conclusion that the applicant is in a favorable position to pursue the project with due diligence.

### The California Water Plan

Pursuant to legislative authorization (Stats. 1947, Ch. 1541) the State Department of Water Resources and its predecessors have prepared a general and coordinated plan, entitled "The California Water Plan", for the development, utilization and conservation of the water resources of the State. The report presenting this plan has been published as Bulletin No. 3 of the State Department of Water Resources, May, 1957 (SWRB Exh. 5).

At page 89 of that bulletin is a statement indicating that conservation of waters of the Santa Margarita River to the maximum practical extent could be accomplished by construction of a 143,000 acre reservoir at a so-called "De Luz site" downstream below the junction of Santa Margarita River and De Luz Creek, and a 65,000 acre-foot reservoir at the Fallbrook site. It is further indicated at page 92 of that bulletin that although the aforementioned reservoirs represent future development possibilities they are not project proposals.

At the hearing Mr. Bookman testified relative to various sizes of potential reservoirs at the Fallbrook and De Luz sites and

3446

the costs and amounts of water developable thereby, as reported in
Bulletin No. 57.

Mr. Bookman quoted from Bulletin No. 57 as follows:
(R.T. p. 76)  "Selection of a plan of local water resources develop-
ment is a matter for local decision, and will depend on, among other
factors, the financial capacity of the construction agency, the amount
of water required at the time construction is contemplated, and the
availability of a firm supply of imported water at that time."  The
Board concurs with this statement and concludes that the project pro-
posed by Fallbrook is not in conflict with The California Water Plan
and that it is in the public interest.

### Proposals of the State Department of Fish and Game

The Department of Fish a nd Game presented brief testimony
at the hearing relative to the present extent of fish life in the
Santa Margarita River system and proposed certain conditions for
inclusion in permits that may be issued by the Board (R.T. pp. 275
through 279).

The Department of Fish and Game concedes (R.T. p. 275) that
existing fish culture is of minor importance in the stream system and
infers that such fish culture as does exist would not be adversely
affected by the construction of any of the projects proposed in the
applications.  Rather it appears (R.T. p. 277) that construction of
Fallbrook Dam and Reservoir will promote fish culture either naturally
or by design.  The conditions proposed seek to protect and promote
this expected future development of fish culture.

Inasmuch as the proposed storage project will not adversely
affect existing fish life but will instead act toward the enhancement

3447

thereof, it does not appear that a financial liability should be imposed on District by requiring it to maintain a minimum storage pool as the Department of Fish and Game suggests in two of its proposed conditions. It is further noted that although under optimum operating conditions the reservoir may at times be emptied, the District will be equally desirous of maintaining a maximum pool level in its reservoir, and that any decrease in the storage pool would only act to decrease the amount of water available for distribution to beneficial use.

Another suggested condition proposes that except in the event of emergency or other reasonable need any increase or decrease in rates of water discharged to the stream bed be at a gradual rate. Although such a proposal undoubtedly has merit and probably would result in no financial loss or undue inconvenience to the District the proposal is believed too general to incorporate as a specific permit term.

Other suggested conditions are not discussed for the reason that they relate to matters outside the jurisdiction of the Board to consider and enforce.

3448

## Protection of Vested Rights

Inasmuch as water users diverting water upstream from the proposed Fallbrook Dam site under riparian or prior appropriative rights have the first physical opportunity to take the water, no special consideration is required insofar as they are concerned.

Lands to which prior rights may attach along the Santa Margarita River between the Fallbrook Dam site and Camp Pendleton have either requested annexation to the District or will receive a supply of water from the District sufficient to satisfy any outstanding rights that may exist (R.T. p. 292).

There remains the question of what effect the District's proposed appropriations will have upon surface diversions and ground water extractions by the Navy downstream from the Fallbrook site.

The United States, through the United States Navy Department, filed protests to the applications of Fallbrook and Santa Margarita and also filed its own Application 12576, which was set for hearing together with the applications of Fallbrook and Santa Margarita. However, the United States did not offer any evidence in support of its protests or application. Instead, counsel for the United States appeared at the hearing for the limited purpose of registering an objection to the Board proceeding with the hearing on the ground that to do so would "embarrass" the United States District Court for the Southern District of California in trial of the action pending before it entitled "U. S. v. Fallbrook Public Utility District, et al.," in which rights of the applicants

3449

and others to the use of water of the Santa Margarita River are in issue. The chairman of the Board, who conducted the hearing on behalf of the Board, overruled the objection.

The ruling by the chairman was proper and is approved and ratified by the Board. There is a vast difference between the jurisdiction of the Board in considering and acting upon applications to appropriate unappropriated water of the State of California and the jurisdiction of a court in determining conflicting claims to established rights to the use of water. The Board exercises purely administrative powers and duties; it has no judicial authority. Unlike a court, the Board does not purport to determine the validity, nature or extent of vested rights. Its function is to determine whether proposed appropriations are in the public interest and whether applications should be approved and permits issued. It alone can make this determination in the first instance, subject to judicial review in the manner provided by law. While it is true that as a prerequisite to issuance of permit, there must be unappropriated water available to supply the applicant . (Water Code Sec. 1375), the Board's determination "as to the availability of unappropriated water concludes no right to a permit to appropriate water but merely decides a fact upon which the Board bases the exercise of its discretion" (Temescal Water Co. v. Department of Public Works, 44 Cal. 2d. 90, 103). Issuance of permit merely signifies the consent of the State to an appropriation by the applicant. "It confers no appropriative right but fixes the priority of its recipient over subsequent appropriators" (Temescal Water Co. v. Department of Public Works, supra,

3450

at page 106).  It has no effect on vested rights; permits are issued expressly subject to vested rights.

In contrast to the foregoing, a court exercising judicial power acts upon and adjudicates existing rights.  Clarification by the Board of the present inchoate rights of applicants based upon their applications, far from interfering with or "embarrassing" the court, will aid the court in determining and declaring the relative rights and priorities of the parties before the court.

In approving the applications of Fallbrook, the Board determines no more than that, in its judgment, the proposed appropriations are in the public interest and that, from the record before it, substantial quantities of water at times flow unused into the ocean which water appears to be presently unappropriated and available to supply the applicant subject to the prior rights of the United States and others, as may be determined by the court, to make beneficial use of such water in the future.

In addition to the general condition in all permits that they are "subject to vested rights", it is the practice of the Board in issuing permits for major projects to require the release of water downstream from permittee's point of diversion sufficient to supply downstream diversions of the surface flow under vested prior rights to the extent water would have been available for such diversions from flow unregulated by permittee's works, and sufficient to maintain percolation of water from the stream channel as such percolation would occur from flow unregulated by permittee's works, in order that operation of the project will not reduce natural recharge of ground waters from the source from which

-27-

3451

the appropriation is to be made.  Such a condition is appropriate
in this instance for the further protection of vested rights down-
stream from the Fallbrook Dam site.

### Rainbow Creek and Sandia Creek Features

In their present form and as previously described, Appli-
cations 12178 and 12179 seek, among other things, permits to appro-
priate 500 acre-feet and 1,500 acre-feet per annum from Rainbow
Creek and Sandia Creek, respectively, by on-stream storage.  A
letter from Fallbrook transmitting the applications stated, in
substance, that storage of water in small reservoirs on Rainbow
and Sandia Creeks was proposed in the event a temporary supply
might be desired before the major project on the Santa Margarita
River could be constructed.  However, the present plan of Fallbrook
is to abandon its proposed storage on these tributaries and store
all of the water sought under the applications in a single reservoir
on the Santa Margarita River (R.T. p. 325).

Notices of Applications 12178 and 12179 issued by the
predecessors of this Board on July 30, 1952, were to the effect
that the applicant contemplated diversions from each of the three
named streams with a point of diversion on each.  Protests were
received upon that basis.  Section 738 of the California Adminis-
trative Code, Title 23, Waters, provides that after notice of an
application to appropriate has been given, changes in point of
diversion, place of use or character of use as stated in the appli-
cation may be allowed only upon petition, accompanied by the
statutory fee, and provided that the petitioner establish that the

-28-

3452

allowance of the proposed change will neither in effect constitute the initiation of a new right, nor operate to the injury of any appropriator or lawful user of water.

Although counsel for Fallbrook has requested that the applications be approved in their present form (R.T. p. 328), it is clear from the record that the applicant does not now propose to construct the project as described therein and accordingly to approve those features of the applications relating to Rainbow Creek and Sandia Creek would be meaningless. On the other hand, Fallbrook has adequately demonstrated the feasibility of the proposed change in the project as well as a definite need for the entire quantity of water sought. Accordingly Fallbrook should be given a reasonable opportunity to file the necessary petitions under the aforementioned Section 738 of the Administrative Code and that action on those portions of Applications 12178 and 12179 be deferred until the necessary petitions are properly before the Board.

## Conclusions

The evidence indicates and the Board finds that for the reasons set forth in the earlier portions of this decision approval of Application 12152 of Santa Margarita is not in the public interest and for that reason the application should be denied.

The Board further finds that there is unappropriated water existing at times in substantial quantities in the Santa Margarita River which water may be taken and used to a substantial extent in the manner proposed in Applications 12178 and 12179 of

-29-

3453

Fallbrook, that the intended uses are beneficial and that said applications may be approved insofar as they relate to diversion of water from Santa Margarita River and permits issued to the applicant, if appropriately conditioned, without injury to any lawful user of water.

In view of the expressed intent of Fallbrook to confine its storage of water to the Fallbrook Dam site on Santa Margarita River rather than also at the Rainbow Creek and Sandia Creek sites, action on those portions of Applications 12178 and 12179 relating to Rainbow Creek and Sandia Creek will be withheld and Fallbrook will be given a period of 60 days from the date of this decision, or such additional time as may be allowed for good cause shown, to file petitions for changes in points of diversion, supported by the necessary maps, to accurately show the project as now contemplated. In the event said petitions are not filed within the prescribed time, those portions of Applications 12178 and 12179 relating to Rainbow Creek and Sandia Creek will be denied.

<u>ORDER</u>

Applications 12152, 12178 and 12179 for permits to appropriate unappropriated water having been filed with the former Division of Water Resources, protests having been filed, jurisdiction of the administration of water rights including the subject applications, having been subsequently transferred to the State Water Rights Board, and a public hearing having been held by the Board and said Board now being fully informed in the premises:

3454

IT IS HEREBY ORDERED that Application 12152 of Santa Margarita Mutual Water Company be and the same is hereby denied.

IT IS FURTHER ORDERED that Applications 12178 and 12179 of Fallbrook Public Utility District be, and the same are hereby approved in part, and it is ordered that permits be issued to the applicant subject to vested rights and to the following terms and conditions, to wit:

1. The amount of water to be appropriated shall be limited to the amount which can be beneficially used.

2. The amount of water to be appropriated under the permit issued pursuant to Application 12178 shall not exceed 9,500 acre-feet per annum from Santa Margarita River by storage to be collected from about November 1 of each year to about June 1 of the succeeding year.

3. The amount of water to be appropriated under the permit issued pursuant to Application 12179 shall not exceed 8,500 acre-feet per annum from Santa Margarita River by storage to be collected from about November 1 of each year to about June 1 of the succeeding year.

4. The maximum amounts herein stated may be reduced in the license if investigation so warrants.

5. Actual construction work shall begin on or before July 1, 1959, and shall thereafter be prosecuted with reasonable diligence, and if not so commenced and prosecuted, these permits may be revoked.

6. Said construction work shall be completed on or before December 1, 1961.

-31-

3455

7. Complete application of water to the proposed uses shall be made on or before December 1, 1966.

8. All rights and privileges under these permits, including method of diversion, method of use, and quantity of water diverted are subject to the continuing authority of the State Water Rights Board in accordance with law and in the interests of the public welfare to prevent waste, unreasonable use, unreasonable method of use or unreasonable method of diversion of said water, and to prevent unreasonable interference with vested rights.

9. Permittee shall release water into the Santa Margarita River downstream from the point of diversion in such amounts & d at such rates as will be sufficient, together with inflow from downstream tributary sources, to supply downstream diversions o° the surface flow under vested prior rights to the extent water would have been available for such diversions from flow unregulated by permittee's works, and sufficient to maintain percolation of water from the stream channel as such percolation would occur from flow unregulated by permittee's works, in order that operation of the project shall not reduce natural recharge of ground waters from Santa Margarita River.

IT IS FURTHER ORDERED that action be withheld on that portion of Application 12178 seeking an appropriation of 500 acre-feet per annum from Rainbow Creek and that portion of Application 12179 seeking an appropriation of 1,500 acre-feet per annum from Sandia Creek and that Fallbrook Public Utility District be allowed a period of 60 days from the date of this decision, or such additional time as may be allowed for good cause shown, to file

-32-

3456

petitions to change points of diversion, supported by the necessary maps, to accurately show the project as contemplated. In the event said petitions are not filed within the prescribed time, further order will be entered denying those portions of Applications 12178 and 12179 relating to Rainbow Creek and Sandia Creek.

Adopted as the decision and order of the State Water Rights Board at a meeting duly called and held at Sacramento, California, on this 10th day of April, 1958.

/s/ Henry Holsinger
Henry Holsinger, Chairman

/s/ Ralph J. McGill
Ralph J. McGill, Member

W. P. Rowe, Member, State Water Rights Board having voluntarily disqualified himself in these proceedings did not participate in this decision.

3457

STATE OF CALIFORNIA
STATE WATER RIGHTS BOARD

In the matter of Application 12576, )
                                    )   Source:  Santa Margarita
U. S. NAVY DEPARTMENT,              )            River
                                    )
                        Applicant   )   County:  San Diego
                                    )
_____)

### Order Rejecting Application

Application 12576 by the United States Navy Department
to appropriate unappropriated water of the Santa Margarita River
having come on regularly for hearing before the State Water Rights
Board on August 12, 1957, at 10 o'clock a.m., in the County
Courthouse, San Diego, California, together with Applications
11578 and 12152 of Santa Margarita Mutual Water Co. and Appli-
cations 12178 and 12179 of Fallbrook Public Utility District to
appropriate unappropriated water of said Santa Margarita River;
due notice of the time and place of said hearing having been
given to applicant and protestants; William Veeder, Special
Assistant Attorney General of the United States of America, having
appeared at said hearing on behalf of the United States for the
special purpose of requesting that further action on all of the
aforesaid applications be withheld until after final disposition
of an action in the United States District Court, Southern
District of California, in which the rights of the United States
and others to the use of water of the Santa Margarita River are
involved (U. S. v. Fallbrook Public Utility District, et al.);
counsel for the United States having specifically stated at said
time and place that the United States was not appearing in regard

3458

to any issue presented to this Board, either as an applicant or as a protestant in these proceedings; no good cause having been shown for withholding action and the request therefor having been denied; no evidence having been presented by or on behalf of applicant in support of Application 12576, and no cause having been shown at said hearing or within five days thereafter for failure of applicant to appear and present evidence;

Now, therefore, it is ordered that Application 12576 be, and the same is, hereby rejected and denied.

Adopted as the order of the State Water Rights Board at a meeting duly called and held at Sacramento, California, on the 10th day of April, 1958.

/s/ Henry Holsinger
———————————————
Henry Holsinger, Chairman


/s/ Ralph J. McGill
———————————————
Ralph J. McGill, Member


W. P. Rowe, Member, State Water Rights Board, having voluntarily for good cause disqualified himself in these proceedings, did not participate in this order.

3459