```
                                        FILED
1   EDMUND G. BROWN, Attorney General
       of the State of California      MAY 19 1958
2   ADOLPHUS MOSKOVITZ, Deputy Attorney General CLERK, U.S. DISTRICT COURT
    Library and Courts Building        SOUTHERN DISTRICT OF CALIFORNIA
3   Sacramento 14, California          By /s/ William W. Luddy
    Telephone: HIckory 5-4711, Ext. 4574
4
    Attorneys for Defendants in
5   Intervention
```

6
7
8

9             IN THE UNITED STATES DISTRICT COURT

10              SOUTHERN DISTRICT OF CALIFORNIA

11                    SOUTHERN DIVISION

12

| | |
|---|---|
| 13  UNITED STATES OF AMERICA, | No. 1247-SD-C |
| 14           Plaintiff, | OPPOSITION OF STATE OF CALIFORNIA, WITH POINTS AND AUTHORITIES, TO MOTIONS OF THE UNITED STATES (1) FOR RECONSIDERATION OF COURT'S ORDER OF FEBRUARY 11, 1958, INTERPRETING STIPULATION OF NOVEMBER 29, 1951, AND (2) FOR LEAVE TO CALL MESSRS. GOLDBERG AND MOSKOVITZ AS WITNESSES WITH RESPECT THERETO |
| 15      v. | |
| 16  FALLBROOK PUBLIC UTILITY DISTRICT, a public service corporation of the State of California; et al., | |
| 17 | |
| 18           Defendants, | |
| 19  PEOPLE OF THE STATE OF CALIFORNIA, | |
| 20           Defendants in Intervention. | |

                        INTRODUCTION

     The United States has served notice that it intends to
bring on for hearing on May 21, 1958, two related motions respec-
ting this court's order of February 11, 1958, which interpreted
and held binding on the parties thereto the stipulation dated
November 29, 1951, originally entered into between the United
States and the State of California. One of the proposed motions
is for the court to reconsider and reverse the order of February
11, 1958. The other motion is for leave of the court to call B.
Abbott Goldberg, Deputy Attorney General of the State of California,

3489

and Adolphus Moskovitz, Deputy Attorney General of the State of California, as witnesses for the purpose of eliciting their testimony in regard to the proper interpretation of the stipulation of November 29, 1951.

The State of California opposes these two motions on the following principal grounds:

1. No valid justification has been advanced by the United States for reconsidering the order of February 11, 1958. The order was entered pursuant to the United States' own motion and only after the United States had fully exercised its right to brief and argue the matter.

The affidavit of Inez M. Miller, which recounts remarks allegedly made by B. Abbott Goldberg, Deputy Attorney General of the State of California, as to his personal views about the position of the State of California in this lawsuit and his recollections of the conversations leading up to the execution of the stipulation of November 29, 1951, furnishes no support for the motions. Not only is the United States tardy in offering this purported testimonial endorsement of its interpretation of the stipulation, but Mr. Goldberg's personal views and recollections are in any event irrelevant in construing its unambiguous language.

The position of the State has been consistent as to the meaning of the stipulation and no ambiguity is shown from the State's briefs to the Court of Appeals.

The argument of the United States that the court's order has converted the stipulation from a stipulation as to fact into a stipulation as to law, is without merit. As it concerns the measure of the water rights of the United States, the stipulation is an agreement by the United States as to the nature of the claims which it is making in this lawsuit, and is not a stipulation

either as to fact or law.

2. The February 11, 1958, order correctly declares the meaning of the stipulation of November 29, 1951. The United States itself has recognized that the stipulation provides for the determination of the Government's water rights pursuant to California law in the same manner as the rights of any private individual. This is demonstrated by statements to committees of Congress made subsequent to the execution of the stipulation by the highest officials of the United States Department of Justice. These statements control over contrary recollections respecting the negotiations leading up to the execution of the stipulation which persons who were present may have, even if such recollections be deemed relevant evidence.

I

THE ORDER OF FEBRUARY 11, 1958 SHOULD NOT BE RECONSIDERED

The United States on December 27, 1957, itself made the motion for rulings of the court as to the meaning and binding effect of the stipulation of November 29, 1951, which culminated in the order which it now seeks to have reversed. With its motion, it submitted a 12-page memorandum supporting the interpretation for which it contended. When the motion was heard on January 6, 1958, the date noticed by the United States, Mr. Veeder presented oral argument which, with the court's questions, fills some 80 pages of transcript (Tr. Jan. 6, 1958, pp. 537-617). The United States therefore exercised fully its opportunity to present its views on the meaning of the stipulation.

No request was made on behalf of the United States either at the conclusion of the oral argument on January 7, 1958, at the time the court orally announced its ruling on the motion, or during the interval of more than a month which elapsed before

the court signed the order of February 11, 1958, for opportunity to present testimony on the issue. Thus, although it was the motion of the United States itself which occasioned the ruling as to the meaning of the stipulation, the United States at no time during consideration of the motion even suggested that the order should be deferred until testimony respecting the negotiations leading up to the execution of the stipulation could be taken.

The United States apparently relies upon the affidavit of Inez M. Miller to justify the reconsideration of the order of February 11, 1958, at this time. This affidavit quotes statements assertedly made by B. Abbott Goldberg, a Deputy Attorney General of the State of California, which concern Mr. Goldberg's personal opinion as to California's position in this lawsuit, his recollections of the negotiations leading up to execution of the stipulation, and his personal views as to the meaning of various paragraphs of the stipulation.

No explanation has been made by the United States why, if it believes Mr. Goldberg's views and recollections are so significant, it did not offer them when it first asked the court to declare the meaning of the stipulation. There is no assertion in the motions or in the supporting points and authorities that counsel for the Government had no previous knowledge of these views of Mr. Goldberg. If they are really vital to the proper understanding of the stipulation, as the United States apparently believes, it was its responsibility to present them to the court when the motion for rulings respecting the meaning of the stipulation was under consideration.

In any event, the affidavit and the asserted views and recollections of Mr. Goldberg recounted in it are irrelevant. During oral argument on the meaning of the stipulation, Mr.

Veeder assured the court not once but three times, that the stipulation is not ambiguous (Tr. Jan. 6, 1958, pp. 593, 594). In making its ruling the court expressly relied upon these assurances (Tr. Jan.7, 1958, p. 696). There being no ambiguity in the written words, evidence as to the negotiations leading up to the execution of the stipulation is unquestionably inadmissible and irrelevant (17 C.J.S. secs. 321, 322, pp. 749-750).

It is clear that the affidavit containing Mr. Goldberg's alleged statements is being used to introduce an ambiguity that Mr. Veeder agreed does not exist in the language of the stipulation itself. This is the very reverse of the correct rule. The correct rule is that circumstances surrounding the execution of an agreement may be considered when they help to clear up an ambiguity in the agreement. That rule has no application to the situation here, particularly when the United States offers the same alleged recollections of the surrounding circumstances both to prove the existence of an ambiguity and to resolve it.

The United States argues that an ambiguity is also shown by (1) statements in the pre-trial order and in the court's findings of fact at the first trial of this case that water has been used by the United States in the past for military purposes outside the watershed, coupled with (2) a statement in the State's opening brief to the Court of Appeals that the United States had faithfully adhered to the stipulation at the first trial (U.S. Mem. of Points and Authorities, pp. 5-6). The complete statement in the State's brief as to the United States' adherence to the stipulation is as follows:

> "Thereafter, the United States and the State entered into a stipulation which declared, among other things, that the word 'paramount' in the complaint was intended to carry only its recognized meaning in California water law and that no doctrine of sovereign

-5-

3493

water rights was to be advanced. It was also agreed that California law governs the water rights in this suit. (109 Fed. Supp. at 52-53.) Under these circumstances, the State of California feels called upon to advise this Honorable Court that the United States has faithfully adhered to the stipulation. We disagree with the United States as to just what California law provides, but there can be no doubt of the sincerity of the United States in recognizing that the Courts should apply California law to this litigation." (Appellants' Op. Br. in California v. United States, 9th Cir. No. 14049, p. 7.)

The statement was made after a trial in which the United States had based its claim of water rights, and the trial court had based its findings thereon, on riparian and prescriptive rights only. When the United States for the first time in the case thereafter argued in its appellants' brief that it had acquired appropriative rights by virtue of diversion and use of water alone without a State permit to appropriate (U.S. Br. in California v. United States, 9th Cir. No. 14049, pp. 86-88), the State made the following response in its reply brief:

"Finally, and with great reluctance, we question whether this new argument by appellee is consistent with the stipulation between the United States and the State of California. That stipulation provides in part as follows:

'II

'That in this cause, the United States of America claims only such rights to the use of water as it acquired when it purchased the Rancho Santa Margarita, together with any rights to the use of water which it may have gained by prescription or use, or both, since its acquisition of the Rancho Santa Margarita.

'III

'That the United States of America claims by reason of its sovereign status no right to the use of a greater quantity of water than is stated in Paragraph II, hereof.

'IV

'That the rights of the United States of America to the use of water herein are to be measured in accordance with the laws of the State of California.'

3494

Admittedly the appropriative claims now asserted are sovereign in character, for appellee (p. 87) relies upon 'the cession from the State of California and the powers of the National Government under its Constitution'. The stipulation was designed to exclude just such sovereign claims, and it was in the belief that they had been excluded that the State of California, in the opening brief (p. 7), complimented the United States upon its adherence to the stipulation.

"Moreover, how can it be said that California law is being used as the standard for determining the rights of the United States (stipulation, par. IV) if appropriative claims which are admittedly contrary to the California law of appropriation are recognized? Appellee's position in this respect appears to be that the law of California is that the law of California does not apply to Camp Pendleton. If the parties to the stipulation had agreed that the law of Nebraska should be followed, could it be argued that Nebraska law should not be followed because Nebraska law is not otherwise applicable to Camp Pendleton? We respectfully submit that this interpretation of the stipulation advocated by appellee would render it meaningless. Its whole purpose was to given assurance to the thousands of defendants served that their rights, as well as the rights of the United States, would be measured by established principles of California law. In the intervening years, property owners within the watershed have relied upon those assurances, and thousands of dollars have been spent on this litigation. Even the United States Senate, during the debates on the De Luz Dam Bill, was advised of the State Attorney General's formal declaration to this Court that the stipulation had been followed by the United States. (Cong. Rec., May 27, 1954, p. 6850.) Surely, it is now too late to announce that California law is not the standard for this litigation." (Appellants' Reply Br. pp. 36-37.)

In further support of its motion to reconsider the order of February 11, 1958, the United States for the first time in this litigation suggests that the parties cannot make a binding stipulation that the rights of the United States are to be measured in accordance with the laws of the State of California; the United States argues that the court's order stating this to be the meaning of the stipulation has converted the stipulation from a valid stipulation as to fact into an invalid stipulation as to law (U.S. Mem. of Points and Authorities, pp. 10-13). It should be recalled that no such hazard was even mentioned by the United States when it moved the court

3495

to construe the stipulation and hold it binding on the parties thereto. The argument is made only now that the court has ruled against the United States on the question of interpretation.

On analysis, it is apparent that the stipulation is an agreement neither as to fact or law. Insofar as it concerns the water rights asserted by the United States, i.e., Paragraphs I-IV, it is merely an agreement by the Government defining the claims of property rights which it chooses to make in this lawsuit. We are aware of no rule of law that parties may not agree to that.

II

THE ORDER OF FEBRUARY 11, 1958, CORRECTLY CONSTRUES THE STIPULATION OF NOVEMBER 29, 1951

The United States declares (U.S. Mem. of Points and Authorities, p. 1) that the key paragraph of the stipulation of November 29, 1951, is paragraph IV, which reads:

> "That the rights of the United States of America to the use of water herein are to be measured in accordance with the laws of the State of California."

Then it argues that the statements as to Mr. Goldberg's recollections of the negotiations leading up to the adoption of this paragraph show that the United States never intended to agree to comply with State law except to measure the <u>quantity</u> of water which it is entitled to under its claimed rights (U.S. Mem. of Points and Authorities, pp. 2-3). Particularly the United States vigorously objects that it never agreed it would have to file applications and secure permits from the State in order to acquire valid appropriative rights (U.S. Mem. of Points and Authorities, p. 4).

The State has never contended that the United States

-8-

3496

agreed specifically that it would have to file applications and obtain permits in order to acquire appropriative rights. The State has always recognized that the question whether, under California law, a permit is required for an appropriative right is for the court to decide as a matter of law. The United States has cited authority and made argument that a water user may acquire an appropriative right in California without a permit (e.g., U.S. Memo. Submitted Pursuant to Court's Direction of Oct. 21, 1957, pp. 13, 19-23). The State has cited authority and made argument to the contrary (e.g., State Answering Mem. to U.S. Mem. of Points and Authorities submitted pursuant to the Court's Direction of October 21, 1957, pp. 4-10). The stipulation does not foreclose this issue.

What the State has contended is that, by Paragraph IV of the stipulation, the United States has agreed that California law pertaining to water rights, in all its aspects, is the standard against which the rights asserted by the United States for Camp Pendleton are to be tested. The order of February 11, 1958, states no more. Thus, whatever method and procedure the court determines has been established by California law for the acquisition of appropriative rights, are among the laws of California which are the measure of the United States' rights.

Even if the statements attributed to Mr. Goldberg as to his recollections of the negotiations leading up to the execution of the stipulation were considered as relevant evidence, this would not alter the correctness of the court's interpretation of Paragraph IV of the stipulation. The intent which those recollections attribute to the parties is contradicted both by the plain language of Paragraph IV and by statements as to its meaning made by the highest officials of the United States Department of Justice.

Paragraph IV provides that "<u>the rights</u>" of the United States shall be measured in accordance with the laws of the State of California. This is far different from saying that only <u>the quantity</u> of water which the United States may take under its claimed rights shall be measured in accordance with the laws of the State of California. That the parties to the stipulation knew how to refer to quantity when they wanted to, is shown by Paragraph III which states:

> "That the United States of America claims by reason of its sovereign status no right to the use of a greater <u>quantity</u> of water than is stated in Paragraph II, hereof."

The United States' own memorandum of points and authorities in support of these motions recognizes that Paragraph IV is not limited to quantity. The memorandum states:

> "Readily it agrees and has always agreed that the yield of riparian rights may not be diverted from the watershed; may not be cyclically impounded. Each example relates to the 'measure' of the right." (U.S. Mem. of Points and Authorities, p. 7).

We agree with the United States that these examples relate to the "measure" of the right. But they certainly do not relate to the <u>quantity</u> of water which may be taken. They concern other types of restrictions on riparian rights which are inherent in California riparian law. If they relate to the "measure" of the riparian right under Paragraph IV of the stipulation, as the United States acknowledges, how can it be said that the restrictions on the acquisition of appropriative rights inherent in California appropriative law do not relate to the "measure" of such rights on the ground that they concern matters other than quantity.

The notion that the stipulation made California law the measure only of the quantity of water which the United States is claiming in this action cannot be reconciled with statements

-10-

about the meaning of the stipulation made by the Solicitor General and the Attorney General of the United States to committees of Congress after the stipulation was executed. On July 1, 1952, Philip B. Perlman, Solicitor General of the United States, stated to a subcommittee of the Senate Committee on Interior and Insular Affairs:

> "I was saying that there is no basis for the allegation that has been freely made that the Government through this suit is attempting to assert sovereign rights to the waters of the Santa Margarita River; whether they are riparian rights or whether they are rights of what are known as, I think, appropriative rights to floodwaters, differing from riparian waters.
>
> "The United States appears in the suit on the same basis as any other property owner. It appears as any private owner would. It is attempting to have its rights adjudicated as a property owner merely.
>
> "The United States is asking the court to adjudicate its rights under the laws of the State of California. And it expects and is asking no different treatment in fact or in law, so far as the adjudication of its rights is concerned than any other private property owner could ask." (Hearings before a Subcommittee of the Senate Committee on Interior and Insular Affairs, 82nd Cong., 2d Sess. on H.R. 5368 and S. 2809 (Santa Margarita River Project, Calif.), p. 33.)

After the Eisenhower administration took office, the new Attorney General on May 15, 1953, appeared before a subcommittee of the Senate Committee on Appropriations to ask that the Department of Justice be freed from restrictions on making expenditures for the prosecution of this action. The following colloquy occurred:

> "Attorney General Brownell.
>
> * * * * *
>
> "Now, as to the specific case, the trial is set for July 7. If the Federal Government does not have a good case, the court will say so. If it has a good case, they will say so. We are not asking this committee to pass on the merits of this litigation.
>
> "It is true that the United States is technically the plaintiff, but this is the only way under the California law, for the water rights of the Federal

Government to be adjudicated.

"I would like to point out to the committee also that the United States has entered into a stipulation with the other parties here that its rights will be no greater than the rights of a private individual if they held this same land.

"Senator Knowland. Mr. Attorney General, if I could interrupt you at that point, there is another remedy on the situation.

"APPEAL TO STATE WATER RESOURCES BOARD

"If your last statement is correct and if the Government were a private landowner, your remedy would be to go to the State of California Division of Water Resources for a determination of an equitable distribution of the waters of the river.

"Attorney General Brownell. They are a party to this suit, so that it will all be adjudicated in one case.

"Senator Knowland. Not in conformity with the State water code and the State constitution.

"Attorney General Brownell. That is the point I was going to finish up with.

"The stipulation between the parties also provides that the laws of the State of California shall govern in this case. So without repeating myself too much, I want to emphasize what seems to me to be a very undesirable precedent of taking away jurisdiction from the Federal courts in a controversy of this kind." (Hearings before a Subcommittee of the Senate Committee on Appropriations, 83rd Cong., 1st Sess. on H.R. 4974 (Supp. Approp. for Depts. of State, Justice and Commerce), p. 16.)

A further colloquy took place:

"Attorney General Brownell.

\* \* \* \* \*

"Let me read two sentences which state our position. This is the stipulation, into which all the parties have entered, including the Attorney General and the State of California:

"That in this cause the United States of America claims only such rights to the use of water as it acquired when it purchased the ranch, together with any rights to the use of water which it may have gained by prescription or use by both since its acquisition.

"(3) That the United States of America claims, by reason of its sovereign status, no rights to the use of

a greater quantity of water than is stated in paragraph 2.

That is binding on the United States and we claim no other or further rights.

"The stipulation goes on to say:

"That the rights of the United States to the use of water herein are to be measured in accordance with the laws of the State of California.

"This is the only way by which we can settle the rights of the United States to water, under the laws of California. And 'paramount rights' as used in real estate law in the State of California, is a term of art. It is a kind of water right that you have there, and the only way you can establish it under the laws of California is to use that language.

"Senator Knowland. Is this the first and only stipulation and was not there some other document subsequently filed by the Federal Government, in which they go back to this doctrine that they would not place themselves under the laws of the State of California?

"Attorney General Brownell. This is the existing stipulation in the case.

"Senator Knowland. There seems to be some substantial dispute on that point, I might say, among the people out there.

"Attorney General Brownell. Let me say it this way, Senator, in order to clear up any doubt in your mind: It is the theory under which the present Department of Justice will operate in the case."

If the stipulation were ambiguous, these statements, made after the stipulation was executed and relying upon the language actually used, are obviously a more authoritative source of assistance to the court than any present recollections concerning the negotiations nearly seven years ago leading up to the execution of the stipulation.

Dated: May 16, 1958.

    EDMUND G. BROWN, Attorney General
     of the State of California
    ADOLPHUS MOSKOVITZ, Deputy Attorney
     General

    By _Adolphus Moskovitz_
     Adolphus Moskovitz
     Attorneys for Defendants
     in Intervention

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF CALIFORNIA ) ss.
COUNTY OF SACRAMENTO )

CHARLOTTE L. MORGAN, being duly sworn, deposes and says: That affiant is a citizen of the United States, over the age of 18 years, and not a party to the within action; that affiant's place of employment and business address is Library and Courts Building, Sacramento 14, California; that on the 16th day of May, 1958, affiant enclosed a true copy of the within

> OPPOSITION OF STATE OF CALIFORNIA, WITH POINTS AND AUTHORITIES, TO MOTIONS OF THE UNITED STATES (1) FOR RECONSIDERATION OF COURT'S ORDER OF FEBRUARY 11, 1958, INTERPRETING STIPULATION OF NOVEMBER 29, 1951, AND (2) FOR LEAVE TO CALL MESSRS. GOLDBERG AND MOSKOVITZ AS WITNESSES WITH RESPECT THERETO

in an envelope for each of the persons named below, addressed to each of them at the address set out immediately below each respective name, sealed said envelope, and deposited the same in the United States Mail at the City of Sacramento, County of Sacramento, State of California, with postage thereon fully prepaid; that there is delivery service by United States Mail at each of the places so addressed, or there is regular communication by mail between the said place of mailing and each of the places so addressed:

Mr. William H. Veeder
Special Assistant to the
  Attorney General
Department of Justice
Washington, D. C.

Mr. William H. Veeder
Special Assistant to the
  Attorney General
c/o United States Attorney
Federal Courthouse
San Diego, California

Mr. John M. Cranston
Special Master
1410 Bank of America Bldg.
San Diego, California

Mr. Phil D. Swing
Swing, Scharnikow & Staniforth
Attorneys at Law
530 Broadway, Suite 604
San Diego 1, California

Mr. William H. Burby
Attorney at Law
12120 Travis Street
Los Angeles 49, California

Lt. David W. Miller, USN
Office of Ground Water
  Resources
Marine Corps Base
Camp Pendleton, California

Mr. Franz Sachse
Sachse and Price
Attorneys at Law
217 North Main Street
Fallbrook, California

Mr. W. R. Dennis
Attorney at Law
Route 1, Box 58
Fallbrook, California

*Charlotte L. Morgan*

Subscribed and sworn to before me
this 16th day of May, 1958.

*Laura M. Middleton*
Notary Public in and for the County
of Sacramento, State of California.

3502