URBAN K. TARWATER & ROSE C. TARWATER

Defendants in propria persona
Murrieta, California

**FILED**

MAY 26 1958

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By /s/ M. C. Rusby
                    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL NO. 1247 - SD - C |
| Plaintiff, | ANSWER OF DEFENDANTS |
| v. | Urban K. Tarwater |
| FALLBROOK PUBLIC UTILITY DISTRICT, ET AL, | and Rose C. Tarwater |
| Defendants, | |

The defendants Urban K. Tarwater and Rose C. Tarwater each severing from their co-defendants and each for himself or herself alone, in answer to the Complaint and Supplementary and Amendatory Complaint on file herein, admit, deny, and allege:

ANSWER TO COMPLAINT AND SUPPLEMENTARY AND
AMENDATORY COMPLAINT

These answering defendants hereby incorporate by reference all of the allegations contained in the answer to said Complaint and Supplementary and Amendatory Complaint filed in this case by Newton T. Bryant and Willie Mae Bryant (excepting only Paragraphs I and II of the portion thereof entitled "Affirmative Statement of Rights") and make each and all of said allegations a part of this answer the same as if herein set forth at length.

AFFIRMATIVE STATEMENT OF RIGHTS

These defendants own 25 acres of land in Riverside County, California, and within the watershed of the Santa Margarita River, more particularly described in the document attached hereto, marked Exhibit A, which is hereby incorporated by reference as a part of this statement.

We have included herewith four typed pages marked exhibit B, in which we state our claims and reasons therefore, and a last page with acknowledgement before a notary public.

11200

COPY RECEIVED
INDEXED

Rec'd copy 5/27/58  Off of U.S.A. /s/ [illegible]

EXHIBIT A

We own
½ interest in Real Property known as Farm Lots one hundred twenty two, seventy eight, seventy seven, seventy six, eighty five, eighty six, all in the Murrieta portion of the Temecula Rancho together with their water rights as shown by photostatic copies of Original Deeds, of some of them attached here-to-for a more particular description Reference is hereby made to a map on file in Book 8, Page 359 of the Records of San Diego County, except public easements of Record and public utility Rights of Way.

We own
all of Lots nine (9), ten (10) and eleven (11), Block 29 situated and being in the Townsite of Temecula as per Map of the Townsite on file in Book 15, Page 726 of Maps in the Office of the County Recorder of San Diego County. Said real property is in the Temecula Rancho.

We own
The easterly three hundred thirty feet (330) of Lot 9, Block A, the westerly line thereof is parallel with the easterly line thereof all in the Murrieta Eucalyptus Company Tract, as per Map thereof on file in Book 6, Page 73 of Maps in the County Recorders Office of Riverside, all in the Murrieta portion of the Temecula Rancho.

We own
Lot one (1), Block two (2) Doolittle addition, Map 2 M B 14/663, San Diego Records.

We own
Lots one (1), two (2) and three (3) in Block two (2) in the Townsite of Murrieta as shown by Map on file in San Diego County, Book 8, Page 359 of maps thereof.

Also Lots four (4), five (5) and six (6) in Block 5 in the Townsite of Murrieta as shown by Map on file in San Diego County Records, Book 8 of Maps, Page 359.

All the above is in the Murrieta portion of the Temecula Rancho.

We own
one-half interest in Farm Lots (78) seventy eight and (122) one hundred and twenty two in the Murrieta portion of the Temecula Rancho as shown by Map in Book 8, Page 359 thereof.

To all of the above we claim we own all and singular Hereditaments and appurtenances thereto belonging in anywise appertaining, including Water Rights.

11201

## EXHIBIT B

We are furnishing herewith a copy of the original Mexican Upper California Title and subsequent Mexican Upper California legislation up to the time of the Treaty of Guadalupe Hidalgo. Also find a copy of the Protocol of the said Treaty between Mexico and the United States. And also copies of some of the first transfers from the Temecula Land and Water Company to grantees.

The above mentioned copies are for the convenience of the Court.

I have marked in red ink some of the portions of each which I think have a bearing on this case. There are other portions not so marked.

The original Upper Mexican California Title referred to above says "He may use his land Freely and Exclusively, appropriating it to such use or cultivation as may suite him.--"

Leonardo Cota, acting as the Second Constitutional Alcalde in adjudicating the First Transfer used the following words -- "conferring upon him irrevocable power and in order that he may not be under the necessity of taking actual possession, he delivers him an original Title, which he may record whenever he sees fit and therefore no one will molest him or will institute suit against him or otherwise disturb him in the enjoyment and possession of the same--"

The Treaty confirms the Title under American law as it was under Mexican law.

The deed from the Temecula Land and Water Company to the first buyers of their subdivision gave title to the Water rights when they deed the land, and our own deeds carry the proper quit claim clauses to bring the water rights down to us.

These Water Rights were deeded more than seventy years ago and we believe are prior to and take precident over subsequent State law. In other words the Water Rights were our private property as much as the rest of the land, and as such, we believe cannot be taken for public use without paying for them.

In addition to furnishing copies of the Temecula Land and Water Company first transfers I, Urban Tarwater, wish to state that if my memory serves me correctly, I have seen a copy of the Deed which transferred from Temecula Land and Water Company to George and Mary Powers the Farm Lot 122 in the Murrieta portion of the Temecula Rancho and that also carried a water rights clause.

Such information as we have leads us to believe that we are not subject to the State doctrine of reasonable use, or any other State law that is contrary to the United States treaty with Mexico, called the "Treaty of Guadalupe Hidalgo" or contrary to article 6 of the Constitution or the 14 amendment to the Constitution of the United States. The treaty was made prior to any State law of the State of California. We believe that our land is a portion of the Temecula grant, which we believe is one of the grants referred to in the provisions of said treaty in the following words out of the protocol of the treaty---------

"2d. The American Government, by suppressing the Xth article of the treaty of Guadalupe, did not in any way intend to annul the grants of lands made by Mexico in the cedded territories. These grants, notwithstanding the suppression of the article of the treaty, preserve the legal value which they may possess, and the grantees may cause their legitamate titles to be acknowledged before American tribunals".

"Conformably to the law of the United States, legitimate titles to every description of property, personal and real, existing in the

11202

EXHIBIT B (cont'd)

ceded territories, are those which were legitimate titles under the Mexican law in California and New Mexico up to the 13th of May, 1846, and in Texas up to the 2d. of Mar. 1836".

There is no question in our minds about what was intended by Mexico and the United States when they agreed that the values possessed by the grants be preserved and that there would be no change in the status of the title, including the following values or rights--

1. The right to use our land freely and exclusively.
2. The right to appropriate it to such use or cultivation as suits us.
3. The right to have freedom from molestation.
4. The right not to be disturbed in the enjoyment of the same.
5. The right that no one will institute suit against us.

Smith on Elementary Law, page 80, chapter 7, top of page, quote-

"The constitution statutes and ordinances of the several states and their sub-division are inferior in rank to the federal constitution and the valid statutes and treaties of the United States, and no law of a particular state has any force if it is inconsistant with the constitution, valid statutes and treaties of the United States."

Again, Smith on Elementary Law, page 8, near middle of page, quote-

"As treaties are thus made a part of the law of the land in the United States the international law to the extent that it is declared within treaties entered into by the United States is incorporated into the municipal law of the United States, and offences by persons against it and the rights of persons arising under international law adjudged in the municipal courts in accordance with the precepts of that law".

See Wilson, pp 12, 13; and Bowman pp 47, 48; American Law and Procedure, vol. 12, page 347, par. 349, quote;

"A state may not interfere with any private right derived expressively or impliedly from the federal constitutions laws or treaties".

The following are quotations from, The Constitution of the United States annotated and revised and authorized by congress, including supreme court decisions up to 1952. On page 703, quote--

"But a state statute enacted subsequently to a Federal Grant cannot be given effect to vest in the state rights which either remained in the United States or passed to its grantee".

On page 416 -- quote --

"It must always be borne in mind that the constitution laws and treaties of the United States are as much a part of the law of every state as its own local laws and constitution".

Page 438--a little over half way down the page--quote--

"It is, of course true that even treaties with foreign nations will be carefully construed so as not to derogate from the authority and jurisdiction of the states of this nation, unless clearly necessary to effectuate the national policy, but state laws must yield when it is inconsistent with or impairs the policy or provisions of, a treaty or of an international aggreemênt. Then, the powers of the state to refuse enforcement of Rights, based on foreign law, which runs counter to public policy of the form XXX must give way before

11203

EXHIBIT B (cont'd)

the superior Federal policy evidenced by a treaty or international compact or agreement."

At the bottom of same page--

"No state can rewrite our foreign policy to conform to its own domestic policies; power over external affairs is not shared by the states; it is vested in the National Government exclusively. It need not be exercised so as to conform to state laws or state policies whether they be expressed in Constitutions, statutes or Judicial decrees."---

On page 428, same book, near middle of page--

"The fact is none the less that no treaty of the United States nor any provision thereof has ever been found by the court to be unconstituional. The most persistently urged proposition in limitation of the treaty making power has been that it must not invade certain reserved powers of the state, in view of the sweeping language of the supremacy clause, it is hardly surprising that this argument has not prevailed. Nevertheless, the court was forced to answer it as recently as 1923.----------to the objection that the Treaty and implimenting legislation invades the acknowledged police power of the state in the protection of game within its borders, Justice Holmes, speaking for the court answered: "Acts of Congress are the supreme laws of the land only when made in pursuance of the constitution while Treaties are said to be so when made under the authority of the United States.

For many years we have used our land and water freely and exclusively, appropriating to such cultivation and use as suited us. We believe that under the provisions of the Title granted by the California Mexican Government, ratified by both the governments of the United States and Mexico, as shown by the Treaty protocol attached hereto, that we are not subject to any other law of the state of California of lessor rank.

Our lands are benefited by streams that flow over, in and thru our lands; many of them are below the surface. We have used these streams for irrigation and cattle purposes on our grant land. Many parts of our land are sub-irrigated, more in wet years than in dry.

A statement of facts relative to water use on our land--

On Lott 122, water in sands connected underground with the river have been used many years for watering cattle, some years for fish ponds. Ten acres sub-irrigated pasture.

On Lot 78, Reservoir Pond in Riversands used for fish and cattle, some years for gardening, melons.

Lot 77, River water sub-irrigates for pasture used for cattle many years.

Lot 76, Water from river sub-irrigates by near surface streams; when the river rises, the water in them also rises. A 450 foot well not used at present.

Lot 85 has small spring used for watering cattle, 2 acres sub-irrigated.

Lot 86--large spring, used in past to irrigate 4 or 5 acres, water cattle for 20 years.

A 1/6 acre piece and a ½ acre piece, with a well on each, in Townsite of Murrieta, for domestic purposes.

11204

EXHIBIT B (cont'd,

    10 acres growing eucalyptus trees

    ¼ acre in the Townsite of Temecula--used well.

    Total 251 acres.

    We expect to freely use our water rights more extensively in the future as 85% is suitable for irrigation for alfalfa.

    As all of our land is in the Santa Marguerita Water shed is in the Temecula Grant, we claim all the water rights that we possess by virtue of all matters of Record, including the action of Upper California Mexican Government prior to 1846, and by virtue of the treaty with Mexico called Guadalupe Hidalgo in its disposal of grants of land in the protocol thereof, and by virtue of all matters of Record in California since the Treaty.

    We have used our land and water freely and exclusively in the past and claim the right to do so in the future.

    We rely upon the forgoing and such other evidence as we may hereafter produce.

    As we are grantees to a portion of the Temecula Grant, we believe, as stated in the Treaty, that we can cause our legitimate titles to be acknowledged before an American tribunal.

11205

WHEREFORE, these defendants pray that plaintiff take nothing against them by reason of the Complaint and Supplementary and Amendatory Complaint on file herein; that said Complaint be dismissed as against these defendants; that defendants' right to water, as hereinabove set forth, be quieted as against the plaintiff and against all other defendants in this action; and for such other and further relief as the Court may deem proper.

*Urban K Tarwater*

*Rose C. Tarwater*

Defendants in propria persona

STATE OF CALIFORNIA
COUNTY OF RIVERSIDE

On May 24, 1958, before me, a Notary Public in and for said County and State, personally appeared Urban K. Tarwater and Rose C. Tarwater known to me to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same and the information contained herein is true to the best of their knowledge.

Dated: May 24, 1958

*Aline Drew Smith*
Notary Public
Commission expires May 18, 1962.

11206