LAW OFFICES
SACHSE AND PRICE
1092 South Main Street
FALLBROOK, CALIFORNIA
RANDOLPH 8-1154

Attorneys for **Defendants**

(SPACE BELOW FOR FILING STAMP ONLY)

**FILED**

JUN 6 - 1958

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT, ET AL.,

    Defendants.

STATE OF CALIFORNIA,

    Intervening Defendant.

No. 1247-SD-C

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COUNTS II, III, IV, V, VII AND X, PLAINTIFF'S SUPPLEMENTARY AND AMENDATORY COMPLAINT

PROCEEDINGS OF THE STATE WATER RIGHTS BOARD

I

PRELIMINARY STATEMENT

All of the Counts covered by this Motion relate to various aspects of the proceedings by the California State Water Rights Board. Briefly summarized, they are:

COUNT II: A contention that this Defendant abandoned its Applications Nos. 12178 and 12179 to appropriate waters of the Santa Margarita River.

COUNT III: A contention that this defendant "changed drastically" its projects to appropriate water from the Santa Margarita River.

COUNT IV: An alternative contention that this defendant either abandoned its applications as stated in Count II, or that this defendant lost its priority of application by reason of the drastic changes alleged in Count III.

COUNT V: A contention that License No. 4906 (Application

No. 11586) granted this defendant by the State of California to appropriate waters of the Santa Margarita River is void or invalid because prior thereto Fallbrook violated a gratuitous and revocable license granted by Rancho Santa Margarita.

COUNT VII: A contention that this defendant failed to prosecute with due diligence its applications to appropriate water.

COUNT X: A contention that the State Water Rights Board held a Hearing concerning applications 12178 and 12179 of this defendant to appropriate water of the Santa Margarita River over the objection of the United States and in violation of this Court's jurisdiction.

II

FACTS

The essential facts concerning the three applications involved in the Counts to which the Motion is directed are all set forth in the Stipulation on Pre-Trial.

Copies of all documents referred to in the Stipulation are filed with the Clerk.

III

THE ISSUES INVOLVED

Although the Counts differ in various respects, and are subject to various objections, certain objections apply to all of them, and will therefore be discussed first. Subsequently, each Count will be considered separately as to those facts peculiar to it alone.

A. THIS COURT HAS NO JURISDICTION IN THE MATTER.

Surely this Court would not accept an application from anyone, not even the United States, to appropriate unappropriated waters of California. No possible statutory authority or case law confers such a power on a United States Court.

If there are unappropriated waters in the Santa Margarita River, not subject to vested rights, the determination as to who may

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 2 -

3674

capture them and put them to beneficial use will be determined under State law by whatever agency the State has designated to handle such matters. The recent ruling of this Court on the Motion of the United States regarding the Stipulation of November 29, 1951, would appear to have disposed of the question.[1/]

The State of California has created an agency to administer water rights and determine such questions. It has prescribed the rules under which that agency shall operate. The Question has been presented to that agency at a three-day hearing. Evidence has been taken; briefs have been submitted; and the matter decided. Yet Mr. Veeder asks this Court to now substitute itself for the State <u>as to a part of</u> the evidence considered. No conceivable authority exists for such an action.

This Court of course retains complete jurisdiction to determine the extent of the vested rights in the Santa Margarita River. To that extent it has the absolute power to nullify any decision of the State. If this Court determines that <u>all</u> of the run-off of the Santa Margarita River, winter and summer, normal and flood flows, is covered by existing rights, then there are of course no waters to which a State permit could apply. <u>But the question of who shall receive a permit, its terms and conditions and its effective date, are questions for the State alone.</u>

B. <u>THE MATTERS CONTENDED IN THE COUNTS INVOLVED IN THE MOTION ARE MOOT. THE DECISION MAY NOT BE COLLATERALLY ATTACKED.</u>

The Stipulated Facts in this case disclose that a License was granted upon Application No. 11586 <u>on December 31, 1957.</u>[2/] The same Stipulated Facts disclose that a Permit was granted by Decision D 897 of the State Water Rights Board April 10, 1957.[3/]

---

[1/] <u>Order on Stipulation</u>, February 8, 1958.
[2/] Pre-Trial Stipulation, page 14.
[3/] Pre-Trial Stipulation, page 17.

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

Both the License and the decision are in the files of this case.

The License and the Decision in question have determined all of the issues in each of the cases. The questions of priority; of amendment; of due diligence are all disposed of in the final action of the Water Rights Board. When the issues in controversy have been determined in another proceeding, a Motion for Summary Judgment or to Dismiss is proper, and should be granted.[1]

Having proceeded under State Low to obtain a Permit, the legal and factual issues involved in determining whether one should be granted are disposed of. They are moot. The decision of the State authority involved may be appealed <u>within the framework of and subject to the limitations of State Law, but the decision may not be collaterally attacked.</u>

Public policy requires an end to litigation, and demands a high degree of respect for formal decisions of administrative bodies. The Courts of California have almost uniformly held that attempts to attack decisions of administrative or quasi-judicial bodies collaterally will not be allowed except for lack of jurisdiction.[2]

It is conceded in California law that the proper method of reviewing the decision of the State Water Rights Board is by Writ of Mandate.[3] <u>But even in such review, it is clear that a petitioner has no standing in court unless he has exhausted his administrative remedies.</u> Language in the Temescal Water Co. case cited above, found in 280 P. (2d) at p. 11 is remarkably appropriate to the facts before this Court.

---

[1] (<u>Bonds vs. Sherbourne Mercantile Co.</u> (9th CA 1948), 169 F (2d) 433; certiorari denied 69 S.Ct. 294)

[2] (<u>Noyes vs. Chambers & DeGolyer</u> 202 C.542; <u>Blymer vs. Sutter Butte Canal Co.</u> 217 C. 572; <u>Gillies vs. La Mesa, Lemon Grove & S.V. Irr. Dist.</u> 54 CA (2d) 756;).

[3] (<u>Temescal Water Co. vs. Dept. of Public Works</u>, 1955 44 Cal. (2d) 90; 280 P (2d)1, 11.)

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

"The respondents correctly contend that the petition for mandate does not state a cause of action under that section. Where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the court will ....act (citing cases). <u>The petition for mandate does not allege that the appellants have in any manner participated in the proceeding upon the application, although in their brief they state that they appeared and objected to the issuance of a permit.</u>" (Emphasis added.)

If, in a review of an administrative decision by the proper method of Mandamus, it is imperative that the petitioner allege exhaustion of the administrative remedy, is it not even more obvious that he should do so in a purely collateral attack upon such a decision? The language of the <u>Temescal Case</u> cited and emphasized above exactly applies to the position of the United States: <u>there is no indication that the United States participated in any manner in the proceeding upon the application, although it is alleged that it protested.</u> The United States had available to it the proper administrative remedies, but it affirmatively appears that it declined to avail itself of them.

The material above applies with equal force to all of the Counts concerned. The discussion that follows will consider those aspects peculiar to individual Counts.

IV

COUNTS II, III and IV

These Counts contend in substance that this defendant either abandoned its applications by failure to plead them in its original Answer in these proceedings, or that it lost its priority date by reason of drastic changes in proposed points of diversion.

The law that will govern these contentions is the law of

- 5 -

California.[1]

As to the contention that this Defendant abandoned its applications by failing to plead them in its original Answer, there are several obvious replies:

(1) At the time the answer was filed, this Defendant did not own any water rights under the Applications in question. Its rights were purely inchoate until a permit was issued.[2]

(2) The question of abandonment of an application is one to be presented to and determined by the State Water Rights Board.

(3) The original pleadings in this case have been superseded by Amended pleadings, authorized by order of this Court.

As to the contention that this Defendant lost its priority of application by reason of changes made after the applications were original filed:

(1) An application need not be complete when first filed.[3]

(2) The Water Code expressly provides that the issuance of a permit gives a priority right <u>as of the day of the application.[4] If a Permit is granted at all, it must of necessity bear the priority date of the application, regardless of how often it has been amended</u>.

V

COUNT V

The contention of this Count appears to be that because the predecessor of Plaintiff (Rancho Santa Margarita) granted this Defendant a revocable license to use a certain amount of water from the stream, which license was thereafter allegedly violated by this Defendant, the State lost jurisdiction to hear Defendant's appli-

---

[1] (Order on Stipulation, April 8, 1958.

[2] Hutchins, California Law of Water Rights, 1956, p. 97; Rank vs. Krug, 1956, 142 Fed. Supp. 1

[3] Water Code, Sec. 1270; Cal. Admin. Code, Tit. 23, Sec. 681, 692.

[4] Water Code Sec. 1455.

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RAndolph 8-1154

- 6 -

8678

cation to appropriate water.

The best answer to the contention is: "So what?". Assuming for the purposes of the Motion that the facts alleged are true, this defendant violated a private uni-lateral contract by taking from the river more water than the license authorized. If this is a fact, it was a private wrong, undoubtedly grounds for revocation of the license (which was in fact revoked), and possibly grounds for an action for damages or an injunction. But it could not possibly deprive the Defendant of the right to apply to the proper State agency to appropriate unappropriated waters.

It should also be pointed out that *if* the alleged violation of the gratuitous license provided grounds for the possible denial of a Permit to the Applicant, the matter should have been presented to the Water Rights Board.

## VI

### COUNT VII

This Count alleges that the defendant failed to exercise due diligence in pressing its applications. Again we must point out that this question was one for the Water Rights Board. However, beyond that fact, the files in this case disclose that amended applications *were* filed and extensions of time granted. This procedure is authorized by California Law.[1]

## VII

### COUNT X

This Count contends that the actions of the State Water Rights Board in holding hearings upon Applications 12178 and 12179 were in violation of this Court's jurisdiction. We have pointed out that this Court has no possible jurisdiction to consider applications to appropriate water. This defendant could not have applied to this Court for a Permit. What jurisdiction, then, was invaded?

---

[1] Admin. Code, Title 23, Sec. 694.

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 7 -

3679

1  The Court on several occasions has stated on the record that a
2  decision of the Water Rights Board would be helpful, in that it
3  would determine at least <u>which</u> applicant would receive a permit,
4  should one be granted.

5       As has been stated before, <u>this Court has complete
6  authority to render any Permit valueless</u>, BUT IT HAS NO RIGHT TO
7  GRANT A PERMIT. By determining the nature and extent of vested
8  rights, by imposing restrictions on appropriators designed to
9  protect the owners of vested rights, it can in effect make a Permit
10 more or less valuable. <u>But it cannot determine which of several
11 applicants shall receive the Permit; it cannot determine whether
12 or not a Permit shall issue; and it cannot change the priority
13 of a Permit once it has been granted by the State.</u>

14      <u>It should also be noted that the applications in question
15 were filed</u> TWO YEARS PRIOR TO THE FILING OF THIS ACTION BY THE
16 UNITED STATES.

17 <center>VIII</center>
18 <center>CONCLUSION</center>

19      It must be apparent to anyone who cares to examine the
20 pleadings of the United States, that in the Counts in question, the
21 United States seeks to have this Court usurp the authority of an
22 administrative agency of the State of California. It would have
23 this Court assume to itself, without a shadow of statutory or case
24 law authority, the power to determine applications to appropriate
25 unappropriated waters within the State of California. The sweeping
26 nature of the claims points out their absurdity. If, because of
27 its ownership of lands riparian to a California stream, the United
28 States can sit back and refuse to participate in applications to
29 appropriate water from that stream, and thereafter either accept
30 or reject the determination of the State authority, depending upon
31 its mood and inclination; and in the event it rejects the determin-
32 ation of the State agency, then throw the entire proceedings into

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RAndolph 8-1154

- 8 -

3660

Federal Court for a trial de novo, we have destroyed our system of State control of intra-state waters. What is worse, we have done so in the absence of the slightest vestige of an alternative system for the appropriation of surplus waters. We have made impossible any project to conserve surplus or wasting waters <u>when the stream from which they are to be appropriated touches Federal Land.</u>

   Respectfully submitted.

Dated: June 4, 1958.

        SWING, SCHARNIKOW & STANIFORTH
        SACHSE and PRICE

        By _____
        Attorneys for Fallbrook Public
        Utility District

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RAndolph 8-1154