J. LEE RANKIN,
Solicitor General
Department of Justice
Washington, D. C.

Attorney for the United States
of America

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

FILED
JUN 12 1958
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By
DEPUTY CLERK

UNITED STATES OF AMERICA,
Plaintiff,
v.
FALLBROOK PUBLIC UTILITY DISTRICT, et al.,
Defendants.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

PRELIMINARY STATEMENT

The United States of America respectfully submits:

1. The Fallbrook Public Utility District is powerless to appropriate rights to the use of water for purposes of "irrigation." Its powers are limited to providing municipal and domestic water to its inhabitants.

2. It could not beneficially use for municipal and domestic purposes but a small fraction of the 30,000 acre feet of water which it claims.

3. The Fallbrook Public Utility District does not have the financial capacity to construct the dam or distribution system which it purportedly has planned.

4. It originally complied with the law under which it was incorporated claiming only domestic and municipal rights.

5. It undertook to amend its claims to include rights for

purposes of irrigation after the rights of the United States of America had intervened, thus entitling the United States of America to a priority ahead of the Fallbrook Public Utility District's claims for irrigation purposes.

6. The Fallbrook Public Utility District, also subsequent to the intervening rights of the United States of America, sought greatly to increase its claims by changing from the illusory storage claims on Sandia and Rainbow Creek to a combined 20,000 acre feet claim on the Santa Margarita River immediately above Camp Pendleton. The United States of America is entitled to a priority ahead of the enlargement to the single 20,000 acre feet claim on the main stem of the Santa Margarita River.

7. Judgment that

(a) The Fallbrook Public Utility District's claim for purposes of irrigation are ultra vires; and/or

(b) The United States has priority over all or any part of the Fallbrook Public Utility District's claims would terminate the case insofar as the Fallbrook Public Utility District is concerned to the great benefit of all parties.

NULL AND VOID AND OF NO FORCE AND EFFECT ARE THE ULTRA VIRES ACTS OF THE FALLBROOK PUBLIC UTILITY DISTRICT RESPECTING CLAIMS FOR RIGHTS TO THE USE OF WATER FOR PURPOSES OF IRRIGATION------IT IS A QUASI-MUNICIPAL CORPORATION WITH LIMITED POWERS

Limited powers are invested in the Fallbrook Public Utility District.[1/] Referenced in that regard is made to the first section of the organic law pursuant to which that entity was established, which provides:

"A [Public Utility] district may be incorporated and managed

1/ West's Annotated California Codes, Public Utilities, Section 15701 et seq

in unincorporated territory pursuant to this division and may exercise the powers expressly granted." 2/ (emphasis supplied)

Objective of the California's State legislature in permitting the creation of Public Utility Districts has been stated as follows:

"In enacting the statute here in question, the legislature has made provision whereby the inhabitants of the State living outside the limits of cities and towns may serve their own purposes through the operation of the same kind of utilities, when organized for that purpose." 3/

Turning to those powers which may be exercised by entities of the nature of the Fallbrook Public Utility District, California's highest Court declared:

"They are the acquisition, construction, and use of works for supplying the inhabitants of the district with light, water, power, heat, transportation, telephone service, or other means of communication, * * *" 4/

That excerpt embraced the language of the statute constituting the chief source of authority for Public Utility Districts. 5/ Vastly more important, however, is this salient fact: The quoted excerpt contains the precise language of California's Constitutional provision empowering municipalities to acquire, construct and maintain public utilities to supply these services to their inhabitants:

"light, water, power, heat, transportation, telephone service or other means of communication." 6/

Activities involving the disposition of garbage and refuse are likewise within the powers of the Public Utility Districts. 7/ Moreover, too great importance may not be attributed to this statement by California's Court in discussing the

---

2/ West's Annotated California Codes, Public Utilities, Section 15701.
3/ In re Orosi Public Utility District, 196 Cal.43, 55-56; 23 Pac 1004, 1009 (1925)
4/ Ibid, 196 Cal 43, 56; 235 Pac. 1004,1009.
5/ West's Annotated California Codes, Public Utilities, Section 16461
6/ Constitution of the State of California, Article 11, Section 19.
7/ West's Annotated California Codes, Public Utilities, Section 16461.

powers of Public Utility Districts:

"It is significant that, when the legislature came to pass the act extending to inhabitants outside of incorporated cities and towns the privileges in regard to acquisition and use of their own public utilities that are granted by the state constitution to municipalities, it should have followed the language of the Constitutional amendment 1911 in the statement of the purposes for which the /Public Utility/ districts may be created"[8/]

Then as if to remove any doubt as to the powers and functions of the Fallbrook Public Utility District the Supreme Court of California interpreting the law pursuant to which that district was organized, declared:

"We are convinced that was its /the State legislatures/ intention to provide for the creation of public corporations of a quasi-muncipal character, with the power to carry on the particular /municipal/ functions committed to them." [9/]

This extremely important statement from thecited decision further points up the grounds for granting the motion of which this memorandum is in support:

"It /the California legislature/ thereby provided for the creation of public agencies or quasi-municipal corporations, the declared purpose of the act being to extend to the inhabitants of such districts, when properly organized, advantages in the use and benefit of certain utilities which they might not be able to obtain in any other way, and which, from common experience we know tend to promote the general welfare of the State."[10/]

Essential to the decision last cited was a comparison between an irrigation district and the quasi-municipal corporation of the character of the Fall-

8/ Ibid, 196 Cal. 43, 56; 235 Pac 1004, 1009-1010,
9/ Ibid, 196 Cal. 43, 56; 235 Pac. 1004, 1009-1010.
10/ Ibid, 193 Cal. 43, 57; 235 Pac. 1004, 1010.

brook Public Utility District. Having reviewed the decisions relating to irrigation districts the Court stated:

"The purposes for which the Orosi [Public Utility] District was formed, the appellant contends, are not municipal * * *. If the authorities cited by him were strictly in point, there would be an end of the controversy; but they are not. They deal with questions arising in connection with districts formed for the purpose of draining, irrigating, reclaiming, or otherwise directly benefiting the lands affected thereby. * * * When related to that class of districts, the cases cited are clearly in point. The improvements contemplated by the acts [improvement district acts], under which they were formed cannot be considered 'municipal purposes.'" (emphasis supplied) 11/

Another case distinguishing between the Utility District and the irrigation district declares:

"The case of Morrison v. Smith Bros., 211 Cal. 36, 44-45 (293 P.53), tracing the history of the development of the type of water district here involved, states that 'from 1911 to date, there has been developed a new type of public corporation, resembling in many respects municipal corporations proper, and radically different in nature from irrigation and reclamation districts. The case of Henshaw v. Foster (176 Cal. 507; 169 P.82) clearly recognized the distinction, holding that such quasi-municipal corporations were municipal corporations within the meaning of article XI, section 19, of the State Constitution . . . In the Orosi case (196 Cal. 43; 235 P.1004) the court again found a distinction between irrigation districts and quasi-municipal corporations. The court there pointed out that the purposes and means of operation are different.'"12/

---

11/ In re Orosi Public Utility District, 1926 Cal. 43, 55-56; 23 Pac 1004, 1009 (1925)

12/ 134 P 2d 249, 250 (1943) Metropolitan Water District of Southern California v. Riverside County.

3812

At this juncture it is essential to make brief reference to the Fallbrook Public Utility District's fatal position. Realizing its limited powers, it sought originally to file only for"municipal and domestic" rights to water. The application 12576 of the United States of America intervened between the original filings on the Santa Margarita River and the time Fallbrook Public Utility District amended its claim pursuant to application 11587 to include irrigation. Further based upon the cited authorities Fallbrook Public Utility District's power to levy are such that it may not assess property as in the case of an irrigation district. Thus its project is infeasible from the standpoint of its capacity to finance an irrigation project.

Counsel for the Fallbrook Public Utility District has stated that there are no improvement districts within its service area. There is not, as a consequence, any possibility of it relying upon an act passed in May of 1951, effective in September of that year, which gave Public Utility Districts the same powers as irrigation districts in regard to improvement districts.[13] That act became law three years subsequent to the filing by the United States of America of its application 12,576. The law permits, under rigid circumstances, the Public Utility Districts to form improvement districts to provide irrigation works for lands within the Districts. It could not, retrospectively, breath life in the Fallbrook Public Utility District's irrigation filings as the Fallbrook Public Utility District has not complied with the act last cited.

"AN ACT OF A MUNICIPALITY IN EXCESS OF ITS POWER IS ALWAYS AVAILABLE AS A DEFENSE TO A MUNICIPALITY."[14]

Few principles of law are more firmly established than that quoted in the preceding quotation. Respecting the powers of a water district the Supreme Court of California has declared:

"Payment of these expenses from the funds of the district is therefore ultra vires as to the district, and an act or contract which the corporation is not legally permitted to

---

13/ West's Annotated California Codes, Public Utilities, Sec. 16407.
14/ 35 Cal. Jur. (2d) 199

3813

perform cannot be ratified or adopted by such corporation, whether the corporation be private or municipal." 15/

Elementary though the quoted precept may appear, it is basic here for it strikes down the Fallbrook Public Utility District's claim for irrigation water by:

1. Precluding it from claiming rights to the use of water for other than those purposes prescribed by the Constitution of California, 16/ and the statutes pursuant to which it functions.
2. Funds could not be raised by it to finance the dam and appurtenant structures.

STATE LAW PROHIBITS THE FALLBROOK PUBLIC UTILITY DISTRICT FROM APPROPRIATING RIGHTS TO THE USE OF WATER FOR PURPOSES OF IRRIGATION

In these specific terms the law of California declares that:

"The application for, or the granting of, a permit to any municipality to appropriate water does not authorize the appropriation of any water for other than municipal purposes." 17

Here there is not involved the question of the Fallbrook Public Utility District temporarily permitting the use of excess appropriations until it requires that excess for municipal purposes. 18/

Reference in that regard is made to the meaning of the terms municipal and domestic uses set forth in the motion of which this memorandum is in support. They are thus defined: California Administrative Code, Title 23, Sub-chapter 2, Article 3, Sec. 664:

"Municipal Use. Municipal use includes all those uses common to the municipal water supply of a city, town, or other similar population group, and use incidental thereto for any beneficial purpose."

California Administrative Code, Title 23, Sub-chapter 2, Article 3, Sec. 661:

---

15/ Biggart v. Lewis, 183 Cal. 660, 671, 192 Pac.437, 441 (1920)
16/ Constitution of California, Article 11, Clause 19.
17/ West's Annotated California Water Code, Section 1461.
18/ West's Annotated California Water Code, Sections 1462-1464.

"Domestic Uses. Domestic uses are those common to homes, resorts, motel, organization camps, camp grounds, etc., including the incidental watering of domestic stock for family sustenance and the irrigation of not to exceed one-half acre in lawn, ornamental shrubbery, gardens and truck at any single establishment. Use of water at a camp ground or resort for human consumption, cooking or sanitary purposes shall be considered a domestic use."

It is obvious from the definitions set forth that limiting the Fallbrook Public Utility District to claims of that nature renders wholly infeasible the construction of a dam with a capacity of thirty-five thousand (35,000) acre feet. That fact stems from the basic proposition that the quantities of water claimed by the Fallbrook Public Utility District far exceed any conceivable claims for municipal and domestic water. It is of course basic that:

"The appropriation must be for some useful or beneficial purpose, and when the appropriator or his successor in interest ceases to use it for such a purpose the right ceases."[19]

It is manifest in this case that the Fallbrook Public Utility District's claims for water are far in excess of any reasonable quantity which could be utilized for municipal or domestic purposes. Reference in that connection is made to the fact that the Fallbrook Public Utility District asserts that its claims are for a population of 10,000 people. That claim, fantastic though it is, may be accepted for the purpose of discussion. Assuming that population used 200 gallons a day--which it does not and would not as a large percentage of the people have their own domestic supply--the rate of water used would be slightly over 6 acre feet a day. At that rate the Utility District would consume approximately 2,000 acre feet a year. The claims which they made are at least fifteen times as great as could be utilized by the District within the scope of its powers.

---

19/ West's Annotated California Water Code, Section 1240.

A COURSE OF CONDUCT PROVES THE FALLBROOK PUBLIC UTILITY DISTRICT REALIZED IT WAS WITHOUT POWER TO APPROPRIATE RIGHTS TO THE USE OF WATER FOR PURPOSES OF IRRIGATION

Averments in the motion of which this memorandum is in support disclose, beyond question, by a course of conduct, that the Fallbrook Public Utility District may only assert claims for rights to the use of water for municipal and domestic uses. To be observed:

1. The Fallbrook Public Utility District was organized in 1922.

2. Existing at the same moment was the Fallbrook Irrigation District.

   a. The Irrigation District in the year 1924 undertook toappropriate rights in the Santa Margarita River for irrigation purposes.

   b. The Irrigation District obtained a permit to appropriate storage rights for 35,000 acre feet of water. The proposed dam was at the present Fallbrook-Lippincott site where the Fallbrook Public Utility District purports to desire to build a dam.

3. The Fallbrook Irrigation District and the Fallbrook Public Utility District continued from 1922 through 1934 to exist side by side. On the date last mentioned the Fallbrook Irrigation District formally abandoned its permit to construct.

4. On July 20, 1932, the Fallbrook Public Utility District was granted a gratuitous and revokable license by the Rancho Santa Margarita, predecessor in interest of the United States of America, to take a very small quantity of water. Too great stress may not be placed upon the purposes for which the Fallbrook Public Utility District was permitted to take that small quantity of water. That limitation is as follows:

"Rancho Santa Margarita grants to Fallbrook Public Utility District a revocable license or permit to

divert and take from the Santa Margarita River ten miner's inches of water continuous flow <u>for</u> - <u>the</u> - <u>sole</u> - <u>and</u> - <u>exclusive</u> - <u>purpose</u> - <u>of</u> - <u>supplying</u> - <u>the</u> - <u>inhabitants</u> - of - said - Fallbrook - Public - Utility District - <u>with</u> - <u>water</u> - <u>for</u> - <u>domestic</u> - <u>uses</u>." (emphasis supplied)

5. The limitation spelled out in the gratuitous license is simply further evidence that the Fallbrook Public Utility District was performing functions compatible with the laws under which it was incorporated and acting within the spirit of the Constitution of California permitting municipal corporations to "establish and operate public works for supplying its inhabitants with light, water, power, heat * * *." [20] Emphasized in that connection is the fact the act under which the Fallbrook Public Utility District was incorporated spells out the identical powers quoted from the Constitution.[21]

Though the claims of the Fallbrook Public Utility District should fail because they are ultra vires, there are other reasons to be reviewed which will have the same result.

ENLARGED CLAIMS OF THE PUBLIC UTILITY DISTRICT EITHER AS TO (A) THE PURPOSE OF THE USE, OR (B) THE PLACE OF USE, CONSTITUTE NEW APPROPRIATIONS AND MAY NOT BE RELATED BACK TO THE ORIGINAL DATE OF FILING

Early in California history this basic tenet of the law was established:

" * * * when the rights of the subsequent appropriators once attach, the prior appropriator cannot encroach upon them by extending his rights beyond the first appropriation." [22]

It is the law today both by Court Decision and by code section. In that

20/ Constitution of the State of California, Article 11, Sec 19.
21/ West's Annotated California Code, Public Utilities, Sec. 16461.
22/ The Nevada Water Company v. Henry Parnell, 34 Cal.109, 118 (1867)

regard reference is made to the fact that " * * * an applicant * * * may change the point of diversion, place of use or purpose of use * * *."23/ Changes will be permitted by California only where there is a showing "that the change will not operate to the injury of any legal user of the water involved." 24/ Manifestly when the Fallbrook Public Utility District was claiming water within the scope of its authority for a maximum of 2,000 acre feet of water for municipal and domestic purposes, the impact upon the United States of America would be very much less than when it amended its application number 11,587 to include "irrigation" purposes. A small community's claim for municipal and domestic water is meager. Amend that meager claim to include irrigation and the right if exercised will have attendant upon it irreparable damage to the United States of America. The law will not countenance action of that nature. On the subject this general statement has been made:

> "The appropriator cannot, however, make a change of use an excuse for enlarging his appropriation to the injury of other, * * *. Thus, a prior appropriator of water for mill purposes only * * * cannot, as against appropriators below the mill, have a right to use water for irrigation purposes." 25/

Basic reason for the rule is that it guarantees rights which attached prior to the attempted enlargement. Relative to the matter this tenet of the law has been established:

> "The prior appropriator is limited to the quantity appropriated by him at the time of the subsequent appropriation, and cannot thereafter take an increased quantity * * *."26/

Similarly it has been said that:

> "A subsequent appropriator has a vested right against his senior to insist upon the continuance of the conditions that existed at the time he made his appropriation." 27/

---

23/ West's Annotated California Codes, Water Code, Sec. 1701.
24/ Ibid, Sec. 1702.
25/ 56 American Jurisprudence, Waters, Sec 308.
26/ 1 Weil, Water Rights in the Western States, 3rd Edition, page 318.
27/ Ibid, page 314.

These precepts of the law are, of course, recognized by the Federal as well as the State Courts.[28] In summary the California law on the subject may be stated as follows:

> "As against subsequent parties, the right of a prior appropriator is fixed by the extent of his actual or constructive uses at the time subsequent rights accrue. When the rights of subsequent appropriators once attach, a prior appropriator may not encroach upon them by extending his use beyond the first appropriation. He is no more justified, by extending his own claim or by changing the means of appropriation, in interfering with the full enjoyment of the right vested in the subsequent appropriators, than they would be in encroaching upon his rights. Each appropriator is, in respect of the particular thing appropriated by him, prior in time and exclusive in his right." [29]

Applied to the facts here, it is apparent that:

1. The Fallbrook Public Utility District originally filed for municipal and domestic purposes; it claimed 10,000 acre feet for those uses. It could not possibly use that quantity of water for those purposes.

2. There intervened a claim of the United States of America for 165,000 acre feet.

3. The Fallbrook Public Utility District then changed its claim to 10,000 acre feet of water to include irrigation water. In this semi-arid region water for irrigation is in short supply. An exercise of the water for irrigation purposes would invade intervening rights of the United States of America.

---

28/ Hewitt v. Story, 64 Fed. 510, 515 (9 CA 9, 1894)
29/ 26 California Jurisprudence, Waters, Sec. 312

In addition to the Fallbrook Public Utility District's attempted change of its claims under application No. 11587 from municipal and domestic uses to include irrigation uses, after the intervening application No. 12,576, that District attempted an even more drastic change. It sought to change its purely illusory claims, applications 12,178 and 12,179, of 10,000 acre feet each on Sandia and Rainbow Creek to the main stem of the Santa Margarita River. The greatly increased demand upon the Santa Margarita River with the attendant irreparable damage ensuing to the United States of America by the change is conclusively proved by the statement of the Fallbrook Public Utility District's counsel, quoted in the Motion to which this memorandum is in support. From page 11 of the Motion this statement by counsel is taken:

"During my tenure as president of the Fallbrook Public Utility District we filed application 12179 with your division in which we applied for storage of 1,500 acre feet per annum from Sandia Creek. However, that figure was a pure shotgum guess * * *."

That shotgun guess was a change from an original claim on Sandia Creek of 10,000 acre feet. Obviously, that dry and intermittent creek did not and has never yielded that quantity of water. To change the claim to the Santa Margarita River greatly increases the burden on that stream. As the claim of the United States of America intervened between the original filing by Fallbrook Public Utility District and the change from Sandia Creek to the Santa Margarita River, the change must be viewed as a new application to appropriate and may not interfere or encroach upon the earlier filing of the United States of America application No. 12576.

Moreover, the record in this case reveals that the combined yield of Sandia and Rainbow Creeks do not total 10,000 acre feet. Thus, the combined claims of 20,000 acre feet upon the Santa Margarita River which Fallbrook Public Utility District now makes, can have no other effect than to cause irreparable damage to the United States of America.

This Honorable Court, it is respectfully submitted, should grant the United States of America rights prior to the new applications now asserted by the Fallbrook Public Utility District. Adoption of that course would bar the Fallbrook Public Utility District from its illegal and ultra vires attempts to invade and encroach upon the rights of the United States of America.

CONCLUSION

A favorable holding by this Honorable Court upon any of the points asserted in the Motion and in this Memorandum, would forever bar the Fallbrook Public Utility District's illusory claims and greatly shorten the trial with the attendant benefit to all concerned.

UNITED STATES OF AMERICA

J. LEE RANKIN, Solicitor General

WILLIAM H. VEEDER,
Attorney, Department of Justice

WILLIAM E. BURBY,
Attorney, Department of Justice

Dated: June 10, 1958