FILED

JUN 27 1958

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
                    DEPUTY CLERK

1   ERLE STANLEY GARDNER
    Defendant in propria persona
2   Post Office Box 67
    Temecula, California
3

4

5               IN THE UNITED STATES DISTRICT COURT

6                 SOUTHERN DISTRICT OF CALIFORNIA

7                        SOUTHERN DIVISION

8

9   UNITED STATES OF AMERICA, )

10                 Plaintiff, )          CIVIL NO. 1247-SD-C

11          v.                )          ANSWER TO COMPLAINT AND
                              )          SUPPLEMENTARY AND AMENDATORY
12   FALLBROOK PUBLIC UTILITY )          COMPLAINT BY
13   DISTRICT, ET AL.,        )          ERLE STANLEY GARDNER
                              )
14                 Defendants )

15

16       The defendant, ERLE STANLEY GARDNER, severing from his co-

17   defendants and for himself alone, in answer to the Complaint and Supplementary

18   and Amendatory Complaint on file herein, admits, denies and alleges:

19

20              ANSWER TO ORIGINAL COMPLAINT

21                            I.

22

23       This answering defendant has no information or belief sufficient to

24   enable him to answer the allegations of Paragraphs II and VII of the original

25   Complaint and basing his denial upon that ground, denies all allegations in

26   said paragraphs contained.

27

28                            II.

29       Answering the allegations of Paragraph IV, defendant denies that any

30   conduct of this answering defendant threatens the destruction of the basin re-

31   ferred to in said paragraph or damages the plaintiff in any manner.

32

13968

### III.

Answering the allegations of Paragraphs V and VI, denies that the litigation and/or the stipulated judgment referred to in said paragraphs are binding upon or in any manner affect the rights of this answering defendant, and denies that the plaintiff is entitled to any rights, titles, interests, or privileges as against the answering defendant by reason thereof.

### IV.

Answering the allegations of Paragraph VIII, admits that the plaintiff makes the claims and assertions specified in said paragraph; this answering defendant has no information or belief sufficient to enable him to answer the remaining allegations of said paragraph and basing his denial on that ground, denies all of said allegations.

### V.

Answering the allegations of Paragraph IX, denies that any action or conduct of this answering defendant has caused the plaintiff any damage or has contributed to any of the injuries alleged in said paragraph; this answering defendant has no information or belief sufficient to enable him to answer the remaining allegations of said paragraph and basing his denial on that ground, denies all of said allegations.

### ANSWER TO SUPPLEMENT TO COMPLAINT

#### Answer to Counts Nos. I to XIV, Inclusive

### I.

In answer to Counts I to XIV, inclusive, of the Supplement to plaintiff's Complaint, this answering defendant hereby incorporates by reference Paragraphs I to V, inclusive, of the above Answer to plaintiff's original Complaint.

-2-

## II.

This answering defendant admits that the plaintiff makes the contentions set forth in said counts; denies that any actions of this answering defendant have injured plaintiff; and has no information or belief sufficient to enable him to answer any of the remaining allegations in any of said counts contained, and basing his denial on that ground, denies all of said allegations not hereinabove expressly admitted or denied.

### Answer to Counts Nos. XV-XXI, Inclusive

#### I.

This answering defendant hereby incorporates by reference Paragraphs I and II of his Answer to Counts I to XIV, inclusive.

#### II.

This answering defendant denies each and every allegation contained in Paragraphs II and III of Count XXI.

#### III.

The defendant admits that plaintiff owns certain tracts of land comprising the Cleveland and San Bernardino National Forests which are administered by the Bureau of Land Management of the Department of the Interior, which tracts are within the watershed of the Santa Margarita River; admits the allegations with reference to the flow of Temecula Creek and its tributaries; admits that the exhibits mentioned in said Counts are attached to the Complaint; admits that the United States of America makes the contentions set forth in Counts XVIII, XIX, and XX; this answering defendant has no information or belief sufficient to enable him to answer the remaining allegations in said Counts XV to XXI, inclusive, and basing his denial on that ground, denies all of said allegations.

13965

## ANSWER TO AMENDMENT TO COMPLAINT

### Answer to Counts Nos. XXII to XXV, Inclusive

I.

This answering defendant hereby incorporates by reference Paragraphs I, II and III of his Answer to Counts XV to XXI, inclusive.

II.

This answering defendant denies the allegations of Paragraphs I and II of Count XXII.

III.

This answering defendant admits that plaintiff makes the contentions set forth in Paragraph III of Count XXII; denies each and every allegation in said paragraph contained except as hereinabove admitted.

IV.

This answering defendant admits that plaintiff makes the contentions set forth in Counts XXII to XXV, inclusive; admits that the application referred to in Paragraph II of Count XXIV was filed and in this connection alleges that said application was rejected and denied by the State Board of Water Rights of the State of California on April 10, 1958; admits that this answering defendant claims the right to the use of water specified in the Affirmative Statement of Rights hereinbelow set forth; denies that any claim of this defendant invades any rights of the United States of America; denies the allegations of Count XXI except as hereinabove expressly admitted.

V.

This answering defendant has no information or belief sufficient to enable him to answer the remaining allegations contained in said counts and basing his denial upon that ground, denies all of the allegations not hereinabove expressly admitted or denied.

13966

AFFIRMATIVE STATEMENT AND GENERAL AFFIRMATIVE

MATTER AND A STATEMENT OF RIGHTS

As affirmative matter relating to each and every part of the pleadings in this action and to the complaint and the supplemental complaint and all of the counts in said complaints and all of the various complaints, amendments and supplementary complaints filed herein, this defendant alleges:

That this defendant is the owner of approximately three thousand acres of real property within the Counties of San Diego and Riverside; that an undetermined amount of acreage is within the watershed in question; that an undetermined amount of land is riparian; that much of this land is, at present, unsuitable for agriculture, is rocky and brush covered, but this land is suitable for homesites and country estates and presents an opportunity for great development along these lines; that some of the land is agricultural; that the defendant is an author and uses his property primarily as a location for his offices, and what may generally be described as "elbow room" and giving himself freedom from interruptions.

That said approximately three thousand acres of real property, more or less, is described in detail in exhibits which are attached hereto and by this reference made a part hereof and which exhibits are numbered A to J, inclusive.

That upon said various properties there are various springs; that the water from these springs is absorbed naturally before it drains into any watershed; that a part of the property has drainage into a stream running in the general direction of Pala; that this stream is intermittent in surface flow, is a mountain stream and goes through country which is, at present, too brushy to admit of ready exploration, but this defendant believes the stream, even in periods during which it is flowing at its maximum, is absorbed before it reaches any watercourse.

That some of this defendant's property borders a stream which flows

13967

only during periods of considerable storm and is referred to locally as

Pechanga Wash; but this defendant is informed and believes, and so alleges,

that there is on and under his property a sub-surface reservoir of water which

may or may not be a part of the general subterranean reservoir referred to in

plaintiff's complaint; that there are now, and for many years last past (more

than ten years), have been certain wells upon the property. These wells are

listed as follows:

1.  A dug well to a depth of about thirty feet, which has produced

water for limited irrigation in times past; that the capacity of this well is

unknown but it is not large.

2.  Another dug well, probably of about the same depth, which fur-

nishes domestic water which is hauled away by one of the persons residing

upon the defendant's property and which this defendant believes has at times

been pumped by a small gasoline pump into a storage tank.  The exact capacity

of this well is unknown.

3.  A very deep well which is cased and which, according to the best

information and belief of the defendant, is more than twenty years old.  In

1947 this well was tested and found to have a static level of forty-eight feet.

At a hundred and forty-five feet the well pumped ninety gallons a minute, and

the pumping level held steady at this figure; that for the past ten years this

defendant has been using this well almost exclusively for the operation of his

business; that his business is carried on in a series of houses or offices and

water is impounded in two twenty-five-thousand-gallon storage tanks; that

water from this well furnishes a domestic supply for the personnel residing on

the defendant's property, furnishes irrigation for a family orchard, various

small trees and bushes, shade trees, bird baths, etc.  That the pumping has

varied in amounts, depending upon the season and the nature of the demands;

also upon the number of people residing on the premises and the number of

13968

1   cabins that are occupied from time to time.  The pumping has, however, never

2   exceeded ninety gallons a minute, which as far as this defendant knows con-

3   stitutes the capacity of the well.

4        4.  There is another cased well about one hundred feet from the well

5   last referred to, put down as an emergency measure by the defendant some

6   ten years ago, and which, according to the best recollection of the defendant,

7   tested at about ten gallons a minute.  This was intended as an emergency

8   stand-by well and has never been used.

9        5.  That on the lands described as Exhibits C, D, and E, there are

10  two wells, both relatively close together.  One is cased and has been pumping

11  with a windmill for more than twenty years, according to the best information

12  of the defendant; that this well is used to water stock and for a small amount of

13  irrigation; that there are indications it will produce more water than that

14  developed at the present time by the windmill, but it is used generally for

15  windmill pumping, although at times it has been pumped by other means when

16  more water was required than was available in windmill pumping.

17       That the second well which is close to it, but this defendant believes it

18  is not cased, was used up to some ten years ago by the occupants of the

19  property who had a chicken ranch on the property; that since the defendant

20  purchased this property this well has been used only as a stand-by and during

21  periods when the other well was inoperative.  The exact capacity of this well

22  is not known.  Defendant believes the well is not cased and he is not aware of

23  the present condition of the well.

24       That defendant has living on his property persons engaged in work of a

25  highly specialized nature, designed to assist the defendant in his particular

26  work; that there are some twenty dwellings, cabins, houses, offices, outhouses,

27  storage rooms, vaults and guest houses upon the property and that the defendant

28  has a payroll of several thousand dollars per month; that the water from the

well which is presently being pumped is used for domestic water, family

orchards, vegetable gardens and flower bushes, ornamental plants, birdbaths,

shade trees and ornamental shrubs; that since purchasing the property

defendant has, for a period of approximately twenty years, let the agricultural

possibilities of the property largely lie dormant in order to give him an area

in which he can work free of interruptions; that it would, however, be unfair

to deprive the defendant's property of potential agricultural possibilities

because the nature of his work, which is of considerable economic value to the

community, has for the past twenty years been non-agricultural to such a

large extent.

That as the use of water increases, the water table tends to lower and

it may be necessary at any time for the defendant to put down additional wells

for the purpose of maintaining the water supply used in his present business;

that in the event the land should be sold, either in whole or in part, water would

be required for domestic uses and an appreciable amount of increased water

would be required to develop the agricultural possibilities of the property.

WHEREFORE, this defendant prays judgment of this Court:

1.   That any and all persons, corporations or associations diverting

water from the watershed in which defendant has his property be restrained

and adjoined from so diverting water from the watershed;

2.   That this Court take into consideration the constant increase of

population in Southern California, the progress of development in the watershed

and bear in mind and recognize by its decision:-

A.   That while at present the main value of the upper lands

in the watershed is agricultural, with high priorities claimed for

level lands capable of gravitational irrigation, the developments

of the next few years will inevitably make homesites more valu-

able than agricultural lands, and hillside properties will be

13970

-8-

developed into estates requiring domestic water;

B.   That any hard and fast allotment or allocation of water at this time would inevitably stifle the desirable development of the lands in the watershed, thereby causing detriment to the owners of such lands as well as to the community;

C.   That to allow water to be apportioned on the basis of agriculture would "freeze" the entire lands in the classification of cattle ranching and crop production, whereas the real and ultimate value of this land, both to its owners, to the State and the United States, lies in the fact that it is an area capable of high-class residential development, within a relatively short distance of one of the largest population centers in the world; that new highways are being built, that improved transportation facilities and increasing car speeds are cutting down relative distances; that any judgment of this Court that would hold this land in perpetual slavery as agricultural land would be inequitable and against the best interests of all the parties, as well as the nation.  That aside from all other factors, the military efficiency of Camp Pendleton is not an isolated island of planning and strategy but depends upon a correlation in a whole scheme of coordinated military efficiency, and that this, in turn, depends upon the continuing economic development of the entire nation of which the lands in this watershed are a substantial part; that to divorce this question of economic development from that of gallons per minute of waterflow would work as great a damage upon the plaintiff and upon Camp Pendleton as upon

13971

the various property owners;

D.   That the watershed is on the verge of great development; that to permit some users to divert water from the watershed and thereafter apply it to highly beneficial uses elsewhere so that the water could not be recovered as the watershed developed, would be a judicial taking of the property within the watershed for the benefit of landholders outside the watershed without the payment of any compensation; that as such water is diverted and put to beneficial use the owners of the land in the watershed have, in effect, been made servient tenements to lands whose only right to waters of the watershed in question are predicated upon exploitation;

E.   That not all of the parties to this litigation are equally affluent; that some have the economic power to seize, exploit and develop, whereas others have to await the development of economic trends in order to develop their lands; that the establishment of some judicial rule which would permit those having the present power to strip their less prosperous neighbors of the real lifeblood of the community simply by seizure would be to give judicial countenance to the oppression of the financially weak by those who were presently more affluent;

F.   That this Court recognize that in any such litigation as this, involving a whole watershed, any attempt to adjudicate the entire water supply in terms of a permanent apportionment of the water would be inequitable because the Court would lack standards by which the future needs of the properties could be adjudicated;

G.   That this defendant be permitted to hold his lands with his actual and potential water rights held intact; that no decision of this Court affecting his water rights freeze his land within an agricultural status;

H.   That this defendant receive such other further and equitable relief as to this Court may seem meet in the premises and that this defendant go hence with his costs of suit.

ERLE STANLEY GARDNER in propria persona

Dated: June 23, 1958.

13973

EXHIBIT A

ERLE STANLEY GARDNER

All that Real Property situate in the County of Riverside, State of California, described as follows:

The North half of the North half of Section 33, Township 8 South, Range 2 West, San Bernardino Base and Meridian.

13974

EXHIBIT B

ERLE STANLEY GARDNER

All that Real Property situate in the County of Riverside, State of California, described as follows:

Northwest quarter of the Southwest quarter of Section 33, Township 8 South, Range 2 West, S. B. B. & M.

13975

EXHIBIT C

ERLE STANLEY GARDNER

All that Real Property situate in the County of Riverside, State of California, described as follows:

South half of Southwest Quarter of Section 22, Township 8 South, Range 2 West, San Bernardino Base and Meridian.



EXHIBIT D

ERLE STANLEY GARDNER

All that Real Property situate in the County of Riverside, State of California, described as follows:

    Government Lot 4 and Northeast Quarter of Southwest Quarter of Section 22, Township 8 South, Range 2 West, San Bernardino Base & Meridian, also known as Tract "D" upon the Partition Map in Action No. 3239 of Court of San Diego County, of lands of Machado Brothers and Wolf on file in the office of the County Clerk of San Diego County.

13977

EXHIBIT E

ERLE STANLEY GARDNER

All that Real Property situate in the County of Riverside, State of California, described as follows:

Government Lots 1 and 2, the West half of Southeast Quarter and Southeast Quarter of Southeast Quarter of Fractional Section 22, Township 8 South, Range 2 West, San Bernardino Base & Meridian, as shown by United States Government Survey; Excepting therefrom an easement over any portion thereof included in public roads.



EXHIBIT F

ERLE STANLEY GARDNER

All that Real Property situate in the County of Riverside, State of California, described as follows:

Lot three of Section twenty-nine and the west half of the north-east quarter of Section thirty-two in Township eight south of Range two west of the San Bernardino Meridian, California, containing one hundred twenty acres and fifty-eight hundredths of an acre, according to the Official Plat of the Survey of the said Land, returned to the GENERAL LAND OFFICE by the Surveyor-General.

13979

EXHIBIT G

ERLE STANLEY GARDNER

All that Real Property situate in the County of Riverside, State of California, described as follows:

Parcel 1:  The Southwest quarter of the Southwest quarter of Fractional Section 28, Township 8 South, Range 2 West, SAN BERNARDINO BASE AND MERIDIAN, excepting therefrom that portion lying within Tracts "A" and "B", as shown upon the Judicial Map of Survey of lands of Machado Brothers and Wolf, on file in the office of the County Clerk of San Diego County, State of California.

Parcel 2:  The Southeast quarter of the Southeast quarter and Government Lot 4 of Section 29, Township 8 South, Range 2 West, San Bernardino Base and Meridian; excepting therefrom those portions thereof lying within Tract "B", as shown upon the Judicial Map of Survey of lands of Machado Brothers and Wolf, on file in the office of the County Clerk of San Diego County, State of California.

        The East half of the Northeast quarter of Section 32, Township 8 South, Range 2 West, San Bernardino Base and Meridian, and the Southwest quarter of the Northwest quarter of Section 33, Township 8 South, Range 2 West, San Bernardino Base and Meridian.

13980

EXHIBIT H

ERLE STANLEY GARDNER

All that Real Property situated in the County of San Diego, State of California, bounded and described as follows:

The Southeast Quarter of the Northeast Quarter and the East Half of the Southeast Quarter of Section 10, the Northwest Quarter, the West Half of the Southeast Quarter, the Northeast Quarter of the Southwest Quarter and the Northwest Quarter of the Northeast Quarter of Section 11, and the Southeast Quarter of the Northwest Quarter, the Southwest Quarter of the Northeast Quarter and the East Half of the Southwest Quarter of Section 14, Township 9 South, Range 2 West, S. B. M., according to the Official Plat thereon on file in the General Land Office.   EXCEPTING all coal and other minerals in said lands.

ALSO a thirty foot roadway as now constructed and used by Arlie J. Millard, known to all concerned as Old Mitchell Road, for purpose of ingressing and egressing to Millard's Ranch, which adjoins Zumwalt's Ranch:  Beginning on Southerly boundary line of Southwest Quarter of Southeast Quarter of Section 2, about 470 feet East of the Southwest Corner of the Southwest Quarter of the Southeast Quarter of Section 2, running Northerly about 560 feet South of the Northeast corner of the Southwest Quarter of the Southeast Quarter of Section 2, about 530 feet East of the Northwest corner of the Southeast Quarter of the Southeast Quarter of Section 2; thence running 75 feet into the Northeast Quarter of the Southeast Quarter of Section 2, connecting with road now in general use running in a Northeasterly by Southwest direction through Zumwalt's Ranch.

This road is five-tenths of a mile long from point of entering the Southwest corner of the Southwest Quarter of the Southeast Quarter, to and of road in Northeast Quarter of the Southeast Quarter of Section 2.

13991

EXHIBIT I

ERLE STANLEY GARDNER

All that Real Property situated in the County of San Diego, State of California, bounded and described as follows:

Lots 3 and 4 and the Southwest Quarter of the Northwest Quarter, and the South Half of the Northeast Quarter, and the South Half of Section 2;

Lot 1 and the South Half of the Northeast Quarter of Section 3;

The East Half of the Northeast Quarter and the East Half of the Southeast Quarter of Section 11;

The Southwest Quarter and the Southwest Quarter of the Northwest Quarter of Section 12;

The Northwest Quarter of the Northwest Quarter of Section 13; and

The West Half of the Southeast Quarter and the Northeast Quarter of the Southeast Quarter and the East Half of the Northeast Quarter of Section 14, all in Township 9 South, Range 2 West, S. B. M., according to the United States Government Survey approved September 21, 1875.

13982

EXHIBIT J

ERLE STANLEY GARDNER

All that Real Property situate in the County of Riverside, State of California, described as follows:

All those portions of the East half (E 1/2) of the East half (E 1/2) of Section Twenty-nine (29) and the West half (W 1/2) of the Southwest quarter (SW 1/4) and of the Southwest quarter (SW 1/4) of the Northwest quarter (NW 1/4) of Section Twenty-eight (28) in Township Eight (8) South, Range Two (2) West, San Bernardino Base and Meridian, included in Tract "B" as shown upon the Judicial Map of Survey of Lands of Machado Brothers and Wolf, on file in the office of the County Clerk of San Diego County, State of California; excepting from said Tract "B" that portion thereof lying Northeasterly of the Southwesterly line of the Pala Road; said property being more particularly described by metes and bounds, as commencing at the Southwest corner of said Section Twenty-eight (28); thence North 89° 47' East, Thirteen Hundred Twenty-nine and two tenths (1329.2) feet to the 1/8th Section corner; thence North 0° 06 1/2' West, Thirteen Hundred Twenty-one and seven tenths (1321.7) feet to a 4" x 4" redwood post; thence South 64° West, Three Hundred Fifty-six and four tenths (356.4) feet to the true point of beginning of the property intended to be described; thence following the boundary line of said Tract "B", South 64° West, Nine Hundred Twenty and four hundredths (920.04) feet; thence North 74° 30' West, Three Hundred Sixty-eight and Twenty-eight hundredths (368.28) feet; thence North 19° 30' West, Seven Hundred Twenty-six (726) feet; thence North 71° West, Seven Hundred Eighty-four and four hundredths (784.04) feet; thence North 18° 30' West, Two Hundred Thirty-seven and Sixty-six hundredths (237.66) feet; more or less, to a point on the Southeasterly line of the Little Temecula Rancho; thence North 52° 45' East on the said Southeasterly line of the Little Temecula Rancho to the Southwesterly line of the Pala Road; thence South 50° 34 1/2' East on the Southwesterly line of Pala Road; Seven Hundred Sixteen and eight tenths (716.8) feet; thence leaving the Southwesterly line of Pala Road, South 11° 45' East, Fourteen Hundred Eighty-six and five tenths (1486.5) feet, to the point of beginning

EXCEPTING therefrom the Northwesterly part thereof particularly described as follows:

Beginning at that point described as the intersection of the Southeasterly line of the Little Temecula Rancho, and the Southwesterly line of the Pala Road; thence South 50° 34 1/2' East on the Southwesterly line of Pala Road, Six hundred and sixty (660) feet; thence leaving the Southwesterly line of Pala Road, South 52° 45' West, Fourteen hundred fifty-two (1452) feet; thence North 37° 15' West, Six hundred forty-two (642) feet, more or less, to a point on the Southeasterly line of the Little Temecula

EXHIBIT J (Continued)

ERLE STANLEY GARDNER

Rancho, thence North 52° 45' East along the said Rancho line
Thirteen Hundred (1300) feet, more or less, to the point of
beginning.