SOLICITOR GENERAL OF THE
UNITED STATES OF AMERICA
WASHINGTON, D. C.

Attorney for the UNITED STATES OF AMERICA

FILED

JUN 30 1958

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

FALLBROOK PUBLIC UTILITY DISTRICT,
ET AL.,

Defendants.

NO. 1247-SD-C

MEMORANDUM

RESPECTING THE JURISDICTION,
POWER AND RESPONSIBILITY OF THIS HONORABLE
COURT TO RENDER THE FULL AND COMPLETE RELIEF
FOR WHICH THE UNITED STATES OF AMERICA AND
THE PARTIES HAVE PRAYED

1  J. LEE RANKIN
2  SOLICITOR GENERAL of the
   UNITED STATES OF AMERICA
3  WASHINGTON, D. C.

4  Attorney for the UNITED STATES OF AMERICA

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10                      SOUTHERN DIVISION

11

12  UNITED STATES OF AMERICA,

13                  Plaintiff,

14              v.                           NO. 1247-SD-C

15  FALLBROOK PUBLIC UTILITY DISTRICT,
    ET AL.,
16
                  Defendants.
17

18

19

20                      MEMORANDUM

21              RESPECTING THE JURISDICTION,
        POWER AND RESPONSIBILITY OF THIS HONORABLE
22      COURT TO RENDER THE FULL AND COMPLETE RELIEF
        FOR WHICH THE UNITED STATES OF AMERICA AND
23              THE PARTIES HAVE PRAYED

24

25

26

27

28

29

30

31

32

                                                    3968

**SUBJECT INDEX**

Page

Jurisdiction of This Honorable Court to
Decree Full and Complete Relief ........................... 1

I   Question Presented:  Is this Court invested with
power to rule upon the issue raised by the
United States of America that the Utility District
is acting ultra vires when it seeks to appropriate
rights to the use of water for purposes of
irrigation? ............................................... 1

II  Question Presented:  Has this Honorable Court jurisdiction
to decide whether the enlargement of the claims of the
Utility District constitutes a new application for
appropriative rights thus fixing its priority, if any,
as of the date of the enlargement and subsequent to the
claimed priority of the United States of America
under application No. 12,576? ............................. 2

III Questions Presented:  Whether this Honorable Court
has jurisdiction to determine:
(a)  The priority of the United States of America
in connection with rights exercised through the direct
diversion outside of the watershed of the Santa Margarita
River for military purposes; the United States of America
having refrained from making filings in compliance with
State law? ............................................... 2
(b)  Priorities for appropriative rights exercised
by the Rancho Santa Margarita and succeeded to by the
United States of America, some of which were initiated
prior and some subsequent to 1914? ....................... 2
(c)  A priority in connection with application
No. 12,576 filed by the Department of the Navy on
June 30, 1948, prior to the new appropriative claims
asserted by the Utility District in amended applications
Nos. 12,178 and 12,179? .................................. 3
(d)  Conflicting priorities among individual defendants
who have made filings with California and from that
State have received permits to appropriate rights to the
use of water? ............................................ 3

IV  Question Presented:  Has this Honorable Court, its
jurisdiction having attached on January 25, 1951, power
to pass upon the relative priorities of the parties
mentioned above, irrespective of the action of the
State Water Rights Board? ................................ 3

V   Questions Presented:  Whether this Honorable Court has
jurisdiction to determine the respective priorities
of the United States of America and the Utility
District in regard to the mentioned applications?
Has it jurisdiction to declare that the amendment to
application No. 11,587 to include irrigation constituted
a new priority junior to application No. 12,576 filed
by the Department of the Navy? ........................... 4

VI  Questions Presented:  Jurisdiction of the res having been
assumed by this Honorable Court - the res being the rights
to the use of water in the Santa Margarita River - could
either (a) the State Water Rights Board, or the (b) Superior
Court of San Diego County, exercise jurisdiction in
regard to the res? ....................................... 5

3969

| | Page |
|---|---|
| Subject Index (continued) | |
| Source of Jurisdiction | 5 |
| Power to Award Equitable Relief | 7 |
| This Honorable Court is Empowered to Grant Full and Complete Relief in Equity | 7 |
| Power of this Court to Grant Relief for Which the United States of America Prayed | 8 |
| Question Presented: Is this court invested with power to rule upon the issue raised by the United States of America that the Utility District is acting ultra vires when it seeks to appropriate rights to the use of water for purposes of irrigation? | 12 |
| Determination of Priorities Among the Parties is the Very Essence of this Cause - This Court is Invested with Power to Adjudicate the Question | 12 |
| a. Elements of a Valid Appropriation | 12 |
| b. Jurisdiction of this Honorable Court to Decide Upon Fallbrook Public Utility District's Capacity to Appropriate Rights to the Use of Water | 13 |
| For Determination by this Honorable Court: Has the Fallbrook Public Utility District the Power to Assess Lands for Irrigation Purposes - Financial Feasibility a Prime Element in Effectuating an Appropriation | 15 |
| Questions Under Headings II, III, IV and V Relate to the Jurisdiction of this Honorable Court to Determine Priorities | 16 |
| This Honorable Court is Empowered to Decide and Determine the Respective Priorities of the United States of America, Fallbrook Public Utility District, Santa Margarita Mutual Water Company and All Others - Failure to Exercise That Jurisdiction Will Cause Irreparable Injury to the United States of America and All Concerned | 16 |
| Questions Presented: Jurisdiction of the res having been assumed by this Honorable Court - the res being the rights to the use of water in the Santa Margarita River - could either (a) the State Water Rights Board, or the (b) Superior Court of San Diego County, exercise jurisdiction in regard to the res? | 18 |
| Neither California's Water Rights Board nor its courts may interfere with or embarrass this Court's jurisdiction - Efforts to Determine Priorities by them are of no force and effect | 18 |
| CONCLUSION | 25 |

3970

GPO 16—99905-1

### JURISDICTION
### OF THIS HONORABLE COURT
### TO DECREE FULL AND COMPLETE RELIEF

**I**

By a Motion for Summary Judgment against the Fallbrook Public Utility District the United States of America challenges the power of that corporate entity to appropriate rights to the use of water for purposes of irrigation. Absent the claims for that purpose the Utility District would be able to apply water to a beneficial use in a quantity at the very maximum of 2,000 acre-feet a year.  It claims a right to appropriate each year 30,000 acre-feet. Manifestly it could not build the project it purportedly plans if it is limited to 2,000 acre-feet annually.  This Honorable Court raised questions as to whether it had jurisdiction to determine the Utility District's capacity to appropriate rights to the use of water for purposes of irrigation, California's State Water Rights Board having granted to the District permits to appropriate rights for irrigation.

Question Presented:  Is this Court invested with power to rule upon the issue raised by the United States of America that the Utility District is acting ultra vires when it seeks to appropriate rights to the use of water for purposes of irrigation?

**II**

Challenged by the United States of America in its Motion for Summary Judgment, and similarly raised in its supplementary complaint, is the right of the Fallbrook Public Utility District drastically to revise its applications Nos. 12,178 and 12,179 from illusory claims on Sandia and Rainbow Creeks to a claim on the main stem of the Santa Margarita River immediately above Camp Pendleton for 20,000 acre-feet of water annually.  Exhibit A of this memorandum discloses the location of the alleged claims of the Utility District on Sandia and Rainbow Creeks; the combined yield of which streams would be less than 10,000 acre-feet annually.   Exhibit B of this memorandum shows schematically the combined claims revealed on the Santa Margarita River, where far greater quantities of water would be intercepted than the purported plans on Sandia and Rainbow Creeks.

3971

1    Intervening claims of the United States of America are gravely
2  imperiled by the drastic change thus described. This Honorable Court expressed
3  doubt as to its jurisdiction to pass upon the question presented, indicating
4  that the matter is one for resolution by California's State Water Rights Board;
5  questioning, moreover, this Court's jurisdiction "to go behind" the ruling of
6  the State Water Rights Board.

7    Question Presented:  Has this Honorable Court jurisdiction
8    to decide whether the enlargement of the claims of the Utility
9    District constitutes a new application for appropriative rights
10    thus fixing its priority, if any, as of the date of the
11    enlargement and subsequent to the claimed priority of the
12    United States of America under application No. 12,576?

13                              III

14    Fallbrook Public Utility District, joined in by California, asserts
15  in substance that the determination of priorities is a matter exclusively
16  within the jurisdiction of the California State Water Rights Board.  Logical
17  sequitur of that contention would be the sharp curtailment of the jurisdiction
18  of this Honorable Court to grant full and complete relief in this proceeding.
19  Entailed in that proposition are these inquiries:

20    Questions Presented:  Whether this Honorable Court
21    has jurisdiction to determine:

22    (a)  The priority of the United States of America
23    in connection with rights exercised through the direct
24    diversion outside of the watershed of the Santa Margarita
25    River for military purposes; the United States of America
26    having refrained from making filings in compliance with
27    State law?

28    (b)  Priorities for appropriative rights exercised
29    by the Rancho Santa Margarita and succeeded to by the
30    United States of America, some of which were initiated
31    prior and some subsequent to 1914?

3972

(c)  A priority in connection with application No. 12,576 filed by the Department of the Navy on June 30, 1948, prior to the new appropriative claims asserted by the Utility District in amended applications Nos. 12,178 and 12,179?

(d)  Conflicting priorities among individual defendants who have made filings with California and from that State have received permits to appropriate rights to the use of water?

IV

Appearing specially, the United States of America objected to the State Water Rights Board proceeding on August 12-14, 1957, to hold hearings on applications of the Santa Margarita Mutual Water Company, the Fallbrook Public Utility District, and the United States of America.  Urged at that time was the fact that the question of the priorities was pending before this Honorable Court and that the State would impair and embarrass the jurisdiction of this Honorable Court by acting on those applications.  On April 10, 1958, ignoring the request of the United States of America, the State Water Rights Board:

(a)  Rejected the application of the United States of America;

(b)  Rejected the applications of the Santa Margarita Mutual Water Company, though prior to Fallbrook Public Utility District;

(c)  Granted applications of the Fallbrook Public Utility District though junior in time to the Santa Margarita Mutual Water Company; though the Fallbrook Public Utility District did not and does not have plans for constructing its alleged project.

Question Presented:  Has this Honorable Court, its jurisdiction having attached on January 25, 1951, power to pass upon the relative priorities of the parties mentioned above, irrespective of the action of the State Water Rights Board?

- 3 -

3973

Domestic and municipal rights were all that were originally claimed
by the Fallbrook Public Utility District in its applications filed in October
of 1946.  That is in keeping with its powers as a quasi-municipal corporation;
constitutes substantial evidence supporting the claim of the United States of
America that the Utility District's claimed rights for irrigation are ultra
vires.  By pen, through the act of a party unknown, subsequent to the filing
for the very small claim of 2 1/2 c.f.s. the application No. 11,586 was
changed to include "irrigation".  Its companion application No. 11,587 for
10,000 acre-feet was similarly filed for domestic and municipal purposes and
a permit for that application was granted for municipal and domestic uses;
irrigation was not included.  After that filing, the Department of the Navy
filed application No. 12,576.  Thereafter the Fallbrook Public Utility District
amended its application No. 11,587 to include irrigation.  These are all matters
raised in the motion of the United States of America for summary judgment.

Questions Presented:  Whether this Honorable Court
has jurisdiction to determine the respective priorities
of the United States of America and the Utility District
in regard to the mentioned applications?  Has it
jurisdiction to declare that the amendment to application
No. 11,587 to include irrigation constituted a new
priority junior to application No. 12,576 filed by the
Department of the Navy?

VI

At the precise moment when this case was to proceed to trial
California's State Water Rights Board called up for hearing applications
filed in the years 1947 and 1948.  A decade after those filings, at a time
when the initial steps were being taken to try this cause, California
radically changed the status of it by granting the Utility District's permits;
rejecting those of the United States of America and the Santa Margarita Mutual
Water Company.  The latter filed a petition with the Superior Court of the
State of California for a writ of mandate to review California's act of

- 4 -

1   rejecting the applications of Santa Margarita Mutual Water Company and awarding

2   priorities to the Utility District.

3       A timely motion to remove that case was filed by the United States of

4   America and the question of remand is now before this Honorable Court on its

5   own motion.

6       Questions Presented:  Jurisdiction of the res having

7       been assumed by this Honorable Court - the res being the

8       rights to the use of water in the Santa Margarita River -

9       could either (a) the State Water Rights Board, or the

10      (b) Superior Court of San Diego County, exercise jurisdiction

11      in regard to the res?

12      Fundamental to the ultimate trial of this case are the propositions

13   set forth above.  They and related matters will be reviewed in the paragraphs

14   which succeed.

15   Source of Jurisdiction:

16       In the organic law it is provided that

17       "The judicial Power shall extend to all Cases, in Law

18       and Equity, arising under this Constitution, the Laws

19       of the United States, and Treaties made, or which shall

20       be made, under their Authority; * * * $\lceil$ and $\rceil$ to

21       Controversies to which the United States shall be a

22       Party; * * *." [1]  (Emphasis supplied)

23   Pursuant to that Constitutional proviso the Congress enacted this specific

24   statute:  "Except as otherwise provided by Act of Congress,

25       the district courts shall have original jurisdiction

26       of all civil actions, suits or proceedings commenced

27       by the United States,

28   or by any agency or officer thereof expressly authorized to sue by Act of

29   Congress." [2]  (Emphasis supplied)

30   ──────────────────────────

31   [1]  Constitution of the United States, Article III, Section 2, Clause 1.

32   [2]  28 U. S. C. 1345.

3975

GPO 16-80005-1

This Honorable Court has exercised jurisdiction in this cause since January 25, 1951.  Express recognition of this Court's jurisdiction over this cause is contained in the opinion of the United States Court of Appeals for the Ninth Circuit when it remanded the matter directing that a decree of general adjudication be entered as distinguished from a judgment in a separate trial as was attempted. [3/]

Indeed, the major parties have agreed that

"This Court has jurisdiction of the above-entitled action by reason of the express declaration by Congress that the United States District Court '* * * shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, * * *.'" [4/]

It is likewise agreed among them that

"An actual controversy exists among the claimants of rights to the use of water from the Santa Margarita River." [5/]

Both the United States of America and the Fallbrook Public Utility District have prayed this Honorable Court to adjudicate their respective rights to the use of water in the Santa Margarita River.  California by its intervention and prayer for relief has similarly recognized that jurisdiction resides in this Court.

It is free from doubt, therefore, that there was conferred upon this Court by the Constitution and by Acts of Congress the power to adjudicate and determine interests and rights of the National Government.  In the paragraphs which succeed there will be reviewed the authorities relating to the adjudication of rights to the use of water.

---

3/  California v. United States, 235 F.2d 647 (C.A.9, 1956).

4/  28 U. S. C. 1345, Order on Pre-Trial Stipulation, Page 1, Jurisdiction.

5/  Order on Pre-Trial Stipulation, Page 1.

3976

Power to Award Equitable Relief:

Conferred upon this Honorable Court by the Constitution and the
Congress is jurisdiction in all cases in law "and Equity." [6] As quoted above,
"the district courts shall have original jurisdiction of all civil actions,
suits or proceedings commenced by the United States, * * *." [7] Although the
Federal Rules of Civil Procedure provide that "There shall be one form of action
to be known as 'civil action'" [8] the "inherent distinctions between equitable
and legal rights are not affected." [9] In the light of this Court's equitable
jurisdiction it is important to ascertain in general the breadth of the relief which
may be accorded to the United States of America and the other parties litigant.

This Honorable Court is Empowered to Grant
    Full and Complete Relief in Equity:

Here there is involved a great public interest - invaluable rights
to the use of water are the subject matter of this cause. A great military
establishment is jeopardized by the acts of the Fallbrook Public Utility
District and others. Numerous claimants to rights to the use of water have been
named whose diversity of claims and interests caused this Honorable Court
expressly to order on April 8, 1958:

    "that all rights to the use of water in the Santa Margarita

    River system of all parties to this action shall be

    determined as against the others

and the filing of cross-pleadings is dispensed with as unnecessary and
inconvenient." (Emphasis supplied)

The wisdom which dictated that coalescence of all digressive claims
in the watershed, to the end that in a single cause all conflicts may be
resolved, constitutes the fullest recognition of the ample nature of the
equitable power with which this Honorable Court has been invested. Very properly
it undertook by that order to

    "do complete rather than truncated justice." [10]

_____

6/  Constitution of the United States, Article III, Section 2, Clause 1.
7/  28 U. S. C. 1345.
8/  Federal Rules of Civil Procedure, Rule 2.
9/  54 Am. Jur., United States Courts, Sec. 25.
10/ Porter v. Warner Co., 328 U. S. 395, 398 (1945).

3977

GPO 16-30008-1

Otherwise stated:

"A court of equity ought to do justice completely, and not by halves." [11]

Our Highest Court then declared: "One of the duties of such a court is to prevent a multiplicity of suits, and to this end a court of equity, if obliged to take cognizance of a cause for any purpose, will ordinarily retain it for all purposes, * * *." [12]

Similarly, the Supreme Court has declared that when "the public interest is involved in a proceeding * * * equitable powers assume an even broader and more flexible character than when only a private controversy is at stake * * * Power is thereby resident in the District Court, in exercising this [equitable] jurisdiction, 'to do equity and to mould each decree to the necessities of the particular case.'" [13]

Pomeroy, referring to numerous "examples of the operation of the doctrine that equity, having assumed jurisdiction over some portion or feature of a controversy, may retain jurisdiction to award complete relief, are found in * * * suits to quiet title * * *," [14] succinctly summarized the proposition here presented. As a consequence too great significance may not be ascribed to the statement by the Court of Appeals that this cause was instituted by the United States of America: "to quiet title to water rights." [15]

Power of This Court to Grant Relief For Which
the United States of America Prayed:

At this juncture brief reference is made to the nature of the rights which are here involved. It has been stated that: "This usufructuary right, or 'water-right,' * * * is real property. It is as fundamental under the law of riparian rights as under the law of appropriation." [16] From the same source as the last-quoted statement this precept is taken: "The right to the flow and use

---

11/   Camp v. Boyd, 229 U. S. 530, 551 (1912).

12/   Ibid., 229 U. S. 530, 552 (1912).

13/   Porter v. Warner Co., 328 U. S. 395, 398 (1945).

14/   1 Pomeroy Equity Jurisprudence, Fifth Ed., Section 241, pp. 452-3.

15/   California v. United States, 235 F.2d 647, 652 (C.A.9, 1956).

16/   Wiel, Water Rights in the Western States, 3d ed., vol. 1, sec. 18, pp. 20-21.

3978

of water, being a right in a natural resource, is real estate. * * * The right
to have water flow from a river into a ditch is real property.  A wrongful
diversion of water is an injury to real property.  The right to take water
from a river and conduct it to a tract of land is realty.  * * * An action to
quiet title as for real property is proper.  And an action to settle rights
is one to quiet title to realty."  Moreover, a right to the use of water has
"all the dignity of and is an estate of fee simple, or a freehold."  [17/]  In
effect, therefore, as stated, this is a suit to quiet title to real property.

Pertinent in regard to the adjudication of those interests in real
property is a careful analysis of the relationship of one right to another
contained in an exhaustive review on the subject.  [18/]  In the cited case the
plaintiff had brought the action "to obtain an adjudication of the rights of
itself and the defendants to the use of the waters of Prickly Pear creek * * *."
Approximately ninety defendants were named some of whom were residents of the
State of Montana while many others were residents of other States.

It was pointed out that the "cause of action" in the proceedings was
the claimed right of the plaintiffs in Prickly Pear creek and the duty of the
defendants not to interfere with such right through the improper diversion of
water.  The court then declared "These elements constitute the cause of action,
and from them the [ plaintiff ] Ames Realty Company's right of action has
arisen.  Speaking exactly, the subject-matter involved is the right to use the
physical thing - the flowing water - susceptible of use for wetting the lands
belonging to the Ames Realty Company and other owners."  [19/]  The court continued
then to state that "There is, of course, no exclusive ownership of the water
itself.  A right to use for beneficial purposes is the right involved.
Nevertheless, the right of use of the physical thing becomes, in these water
right cases, so identified with the water, that in ascertaining by strict
analysis what is the subject-matter of the action, we find that the water itself
is that in relation to which complainant prosecutes its suit; and so the

---

17/  Wiel, Water Rights in the Western States, 3d ed., vol. 1, sec. 283,
      pp. 298-300; sec. 285, p. 301.
18/  Ames Realty Co. v. Big Indian Mining Co. et al., 146 Fed. 166 (C.C.D. Mont.
      1906).
19/  Ibid., 146 Fed. 166, 170 (C.C.D. Mont. 1906).

3979

water really becomes the subject of the action, in so far as there is a thing physical or real involved in the suit."  Warranting special reference is the court's declaration that the "priority of appropriation is what the law jealously protects; it is of a species of property which has become immensely valuable as the western country has developed in its agricultural resources." [20]
Cognizant, moreover, of the great difficulties attendant upon an adjudication of the nature of the cause before it the court nevertheless declared: "the protection that is afforded should be as appropriate as the demand calls for, consonant always with those fundamental truths, which, under systems of administering justice, are recognized as the foundation of equitable jurisdiction."

As in the subject case, the court recognized that "The quantity of water which a single one of these defendants may be diverting from Prickly Pear creek or its tributaries might not interfere at all with the Ames Company's use. But the result of the several diversions alleged against defendants might be shown to deprive complainant wholly of the enjoyment of any use.  All users are therefore properly brought in to defend."  Further, declared the court: "where it is practically impossible to make a just decree between complainant and one defendant without ascertaining rights of defendants as against one another, the court will permit cross-complaints to stand, to the end that a multiplicity of suits may be avoided, so that tedious, expensive and unnecessary litigation may be saved." [21]  This Court, as reviewed above, declared that all claims are against each other, but very properly dispensed with the necessity of cross-pleadings.

Simply stated, the decision reviewed above emphasized the great need to adjudicate in a single action all of the rights involved if complete relief is to be effected.

Another case reviewing the question of jurisdiction of the United States District Court to entertain a general adjudication proceeding of the nature and character here involved, like the decision last cited, considers

---

20/  Ames Realty Co. v. Big Indian Mining Co. et al., 146 Fed. 166, 171 (C.C.D. Mont. 1906).

21/  Ibid., 146 Fed. 166, 172 (C.C.D. Mont. 1906).

3980

at length the kind and type of relief which may be afforded.[22/]   Where the
action was instituted by the owner of quartz mills against approximately
125 defendants comprising farmers claiming rights to the use of water from the
Carson River for the purpose of irrigating their lands and for other purposes.
In great detail the court reviewed the kind and type of pleadings which were
filed; the relief which could be granted; the parties to the cause; and the
relief available to the various claimants to rights to the use of water in the
Carson River.  Emphasis there, as in the case previously cited, was upon the
interrelated nature of the rights and the complex character of the decree in
equity which must be entered if the requisite relief was to be afforded the
parties litigant.

Complete relief among the parties to the cause has been the
criterion which has governed both the Supreme Court of the United States[23/]
and the United States District Courts in actions of the nature here involved.[24/]
In innumerable cases the Federal courts have entertained actions similar
in character to this cause and have accorded complete relief to the parties.[25/]

---

22/   Union Mill and Mining Company v. Dangberg, 81 Fed. 75 (C.C.D. Nevada, 1897).

23/   Wyoming v. Colorado, 259 U. S. 419 (1916);
      Rickey Land & Cattle Company v. Miller and Lux, 218 U. S. 258 (1910).

24/   United States v. Ahtanum Irrigation District, 236 F.2d 321 (C.A.9, 1956);
      Cert. denied 352 U. S. 988 (1957).

25/   Winters v. United States, 207 U. S. 564 (1908), affirming 143 Fed. 740;
      148 Fed. 684
      United States v. Powers, 305 U. S. 527 (1939), affirming 94 F.2d 783.
      United States v. Walker River Irrigation District, et al., 104 F.2d 334
      (C.A.9, 1939).
      Conrad Investment Co. v. United States, 161 Fed. 829 (C.A.9, 1908).
      United States v. McIntire, 101 F.2d 650 (C.A.9, 1939).
      Skeem v. United States, 273 Fed. 93 (C.A. 9, 1921).
      United States v. Humboldt Lovelock Irr. Light & Power Co., 97 F.2d 38
      (C.A. 9, 1938), Cert. denied 305 U. S. 630
      Ramshorn Ditch Co. v. United States, 269 Fed. 80 (C.A.8, 1920).
      Brooks v. United States, 119 F.2d 636 (C.A.9, 1941), Cert denied 313 U.S. 594.
      Ide v. United States, 263 U. S. 497 (1923).
      Holbrook Irr. Dist. v. Arkansas Valley Sugar Beet & Irr. Land Co.,
      42 F.2d 541 (D.C.D.C. 1929); 54 F.2d 840 (C.A.10, 1931).
      Vineyard Land & Stock Co. v. Twin Falls Salmon River Land & Water Co.,
      245 Fed. 9 (C.A. 9, 1917); 245 Fed 30 (C.A.9, 1917).
      Sain v. Montana Power Co., 84 F.2d 126 (C.A.9, 1936).

3981

Question Presented:  Is this Court invested with
power to rule upon the issue raised by the United States
of America that the Utility District is acting ultra vires
when it seeks to appropriate rights to the use of water
for purposes of irrigation?

Determination of Priorities Among the Parties is
the Very Essence of This Cause - This Court Is
Invested with Power to Adjudicate the Question:

Free from doubt is this fundamental fact:

This Honorable Court has the full power and
authority to adjudicate rights to the use of water -
including the priorities among the several parties.
Failure to adjudge and decree the respective rights
to the use of water, including priorities, will be
contrary to the unbroken line of authorities reviewed
above.

Consideration will be directed to the factors which are entailed in
determining priorities.

a.  Elements of a Valid Appropriation:

It has been declared under the law of California that:

"To constitute a valid appropriation of water,
under the original method, three elements must always
exist: (1) an intent to apply it to some existing or
contemplated beneficial use; (2) an actual diversion
from the natural channel by some mode sufficient for
the purpose; and (3) an application of the water within
a reasonable time to some beneficial use.  Intention to
appropriate can be measured only by all the circumstances
in the case." [26]/

Basically, as determined by two very recent decisions of our Highest Court,

_____

[26]/   26 Cal. Jur., Waters, Sec. 253; See also 56 Am. Jur., Waters, Sec. 296.

- 12 -

3982

1   State police regulations [27]/ constitute no barrier to the acts of the United

2   States of America or those persons authorized by it to represent it. [28]/

3        In making its determination this Honorable Court, it is respectfully

4   submitted, must consider the basic elements and determine whether in each

5   case those factors are bound to prevail.  If they do not exist a claimed priority

6   must fail.  It is, of course, a question of fact to be resolved, based upon

7   the evidence adduced at the trial.

8        b.   Jurisdiction of This Honorable Court to
             Decide Upon Fallbrook Public Utility District's
9            Capacity to Appropriate Rights to the Use of Water:

10       When the United States of America moved for a summary judgment,

11   challenging, among other things, the power of the Fallbrook Public Utility

12   District to appropriate rights to the use of water for purposes of irrigation,

13   a question was raised as to the jurisdiction of this Honorable Court to determine

14   the matter.  Basis for denying this Court's jurisdiction to pass upon the

15   charge that the Utility District was acting ultra vires is not clear.  Most

16   recently in the Tacoma Decision the Supreme Court considered the "legal capacity

17   of the City to act under the license" from the Federal Power Commission.  (Emphasis [29]/

18   supplied)  That the Supreme Court; that the Court of Appeals had the power

19   to review the matter is not even doubtful.  Similarly, here one of the most

20   basic issues relates to the Utility District's power to (a) levy taxes to

21   build a project for purposes of irrigation; (b) appropriate rights to the use

22   of water and distribute water for purposes of irrigation; (c) operate and

23   maintain the system required for the distribution of irrigation water.

24       In the Orosi Case [30]/ heavily relied upon by the United States of

25   America, the limited powers and functions of the Fallbrook Public Utility

26   District were reviewed in detail.  Reference in that regard was made to the

27   fact that the Utility District is without power to levy the kind and type of

28

29   27/  Please refer to the brief of the United States of America dated August 18,
          1957, citing authority that the State could not change the basic propositions
30        respecting the powers of the National Government and its courts or its
          agencies to perform their functions.

31   28/  Ivanhoe v. McCracken, et al., 26 Law Week 4453 (June 23, 1958);
          City of Tacoma v. * * * State of Washington, 26 Law Week 4441 (June 23, 1958).

32   29/  City of Tacoma v. *** State of Washington, 26 Law Week, 4441,4447 (June 23,
          1958).

     30/  In re Bonds of Orosi Public Utility District, 196 Cal. 43, 55-56;
          235 Pac. 1004, 1009 (1925).

3983

assessments requisite to construct, operate and maintain an irrigation system
with the attendant benefits for which assessments may be levied.  Please refer
in that regard to the memorandum filed June 10, 1958, by the United States of
America in support of its motion for summary judgment.

Further in regard to the capacity of the Utility District to finance
a project for irrigation the California court declared:

"The improvements contemplated by the acts /irrigation
district acts_/ under which they were formed cannot be
considered 'municipal purposes.' * * *" [31]/

Moreover, continued the court:

"* * * the exactions which such districts /irrigation
districts_/ may enforce in order to carry out their
purposes are in the nature of assessments or taxes for
local benefits, to be spread on the property in the
districts in proportion to the peculiar advantage accruing
to each parcel from the improvement." [32]/ (Emphasis supplied)

Obviously the Fallbrook Public Utility District is without power or authority
to levy assessments of that nature, its authority under the circumstances being
limited to levying

"a general tax * * * for the same purpose that
any general municipal tax is imposed for carrying on the
governmental functions and utilitarian objects of duly
incorporated cities or towns." [33]/

There is thus struck down the power of the Fallbrook Public Utility
District to effectuate an appropriation of rights to the use of water for
purposes of irrigation.  Reasons for that conclusion are contained in the
authorities next to be reviewed.

---

[31]/   In re Bonds of Orosi Public Utility District, 196 Cal. 43; 235 Pac. 1004,
         1008 (1925).

[32]/   Ibid, 196 Cal. 43; 235 Pac. 1004, 1008 (1925).

[33]/   Ibid., 196 Cal. 43; 235 Pac. 1004, 1010 (1925).

- 14 -

3984

For Determination By This Honorable Court:
Has the Fallbrook Public Utility District the Power
to Assess Lands For Irrigation Purposes - Financial
Feasibility a Prime Element in Effectuating an
Appropriation:

Few principles of California law respecting rights to the use of water
were determined earlier or more firmly than this precept:

"the _[California_] Court held that a want of pecuniary
means requisite to complete the work in a reasonable time,
such pecuniary inability being known to the parties at
the time of making the claim, would not excuse a lack of
diligence in prosecuting and completing the work in a
reasonable time.  In Weaver v. Eureka Lake Water Company
it was also held that a claim for more speculative purposes
by parties having no expectation themselves of actually
constructing works and applying the waters to some useful
purpose, would give them no rights against subsequent appro-
priations made in good faith.

"The principles established in the cases cited are
founded in reason.  The doctrine is that no man shall act
upon the principle of the dog in the manger, by claiming
water by certain preliminary acts, and from that moment
prevent others from enjoying that which he is himself unable
or unwilling to enjoy, and thereby prevent the development
of the resources of the country by others." 34/

Similarly it has been declared:

"'The parties prosecuting the work must have the
ability to complete the work in a reasonable time, and
pecuniary inability to complete the work in a reasonable
time cannot be urged as an excuse for not prosecuting
the work.'" 35/

---

34/ Nevada County and Sacramento Canal Co. v. Kidd, 12 Cal. 282, 314; __ Pac. __
   (1869).

35/ Mitchell v. Canal Company, 75 Cal. 464; 17 Pac. 246.

GPO 16-80090-1

3985

1   These precepts of the law are summarized in these terms:

2   "Financial disability is not, * * * an excuse for failing

3   to exercise diligence." 36/

4       In the light of those long-established principles of the law

5   this Honorable Court is respectfully requested specifically to declare its

6   jurisdiction to consider the financial capacity of the Fallbrook Public Utility

7   District to construct a project having as its objective the impoundment and

8   delivery of water for purposes of irrigation.  A consideration of that

9   proposition will, it is believed, result in a denial of Fallbrook's claims

10  for that purpose.

## Questions Under Headings II, III, IV and V
## Relate to the Jurisdiction of this Honorable
## Court to Determine Priorities

This Honorable Court is Empowered to Decide
and Determine the Respective Priorities of the
United States of America, Fallbrook Public
Utility District, Santa Margarita Mutual Water
Company and all Others -
Failure to Exercise That Jurisdiction Will Cause
Irreparable Injury to the United States of America
and All Concerned:

19      This highest of trial courts has its origin in the historical

20  demand that the National Government have its own forum.  A result was the

21  Constitutional provision quoted above. 37/    Failure in this case to resolve

22  every issue will constitute, it is respectfully submitted, a sharp departure

23  from the unvarying precedents reviewed in the earlier phases of this considera-

24  tion. 38/    The inchoate rights claimed by the parties are property interests

25  of great value.  As has been stated:

26      "this Court has repeatedly held that priorities of right

27      to the use of water are property rights. * * * Property

28      rights in water consist not alone in the amount of the

36/  26 Cal. Jur., Water, Sec. 275.

37/  Please refer to page 7, footnote 6.

38/  Please refer to page 10 et seq., footnote 20 et seq.

- 16 -

3986

1   appropriation, but also in the priority of the appropriation.

2   It often happens that the chief value of an appropriation

3   consists in its priority over other appropriations from the

4   same natural stream.  Hence, to deprive a person of his

5   priority is to deprive him of a most valuable property right * * *. [39/]

6   It is the law in California; the law throughout the West, that the holder of an

7   inchoate right to the use of water has an interest in real property which the

8   courts will protect. [40/]

9   Recently the Supreme Court of the State of Utah made this authoritative

10  statement on the subject:

11      "Respondent argues very strenuously that this is

12  not a proper case for a declaratory judgment as no rights

13  can be finally determined because plaintiff's right is

14  contingent upon his fulfilling the requirements of our

15  irrigation act, constructing works and putting the water

16  to a beneficial use.  We can find no merit to this contention.

17  In this case the plaintiff will be put to considerable

18  expense in perfecting his works so as to be able to put

19  the water to a beneficial use.  It is very important to

20  him to obtain a determination as to the priority of his

21  right when it is perfected in relation to defendant's

22  rights which apparently conflict, before he makes these

23  expenditures. * * *

24      "If the court determines the plaintiff's right after

25  it is perfected is prior to defendant's right, that adjudication

26  binds the parties to the action." [41/]

27      This Honorable Court is respectfully petitioned in the exercise of its

28  broad powers in equity to adjudicate completely and entirely each and every

29  issue before it, including the priorities of all parties.

30  _____

31  [39/]  Nichols v. McIntosh, 19 Colo. 22, 26, 27; 34 Pac. 278 (1893).

32  [40/]  Inyo Consol. Water Co. v. Jess, et al., 161 Cal. 516, 119 Pac. 934 (1911);
        Merritt v. City of Los Angeles, 162 Cal. 47; 120 Pac. 1064 (1912);
        Yuba River Power Co. v. Nevada Irr. Dist., 207 Cal. 521, 279 Pac. 128 (1929);
        Lambrix v. Fraser, 31 Ida. 382, 171 Pac. 1134).

    [41/]  Whitmore v. Murray City, 107 Utah 445; 154 P.2d 748, 751 (1944).

GPO 16-80000-1                                   - 17 -                          3987

Questions Presented:  Jurisdiction of the res having

been assumed by this Honorable Court - the res being the

rights to the use of water in the Santa Margarita River -

could either (a) the State Water Rights Board, or the

(b) Superior Court of San Diego County, exercise jurisdiction

in regard to the res?

**Neither California's Water Rights Board Nor
Its Courts May Interfere With or Embarrass
This Court's Jurisdiction - Efforts to Determine
Priorities by Them are of No Force and Effect:**

Both the Supreme Court of the United States of America [42/] and the

United States Court of Appeals for the Ninth Circuit [43/] have specifically

declared that the court first having jurisdiction may, indeed seems obligated,

to the exclusion of all other courts, to proceed to a final adjudication.  In

the cases last cited one of the parties, after the initiation of an action

in the United States District Court for Nevada to adjudicate rights to the

use of water, initiated in a State court of California an action involving the

same rights.  On the subject the Court of Appeals for the Ninth Circuit declared:

"The Nevada Court, therefore, having first acquired

jurisdiction, may maintain and exercise it to the end, to the

exclusion of the state court in Mono County." [44/]

Affirming that decision, the Highest Court declared:

"Full justice cannot be done and anomalous results avoided

unless all the rights of the parties before the court in

virtue of the jurisdiction previously acquired are taken

in hand.  To adjust the rights of the parties within the

State requires the adjustment of the rights of the others

outside of it.  Of course, the court sitting in Nevada

would not attempt to apply the law of Nevada, so far as

---

42/   Rickey Land & Cattle Co. v. Miller and Lux, 218 U. S. 258, 262 (1910).

43/   Rickey Land & Cattle Co. v. Miller and Lux, 152 Fed. 11, 20-21 (C.A.9, 1907).

44/   Ibid., 152 Fed. 11, 21 (C.A.9, 1907).

3988

1  that may be different from the law of California to
2  burden land or water beyond the state line, but the
3  necessity of considering the law of California is no
4  insuperable difficulty in dealing with the case.  Foreign
5  law often has to be ascertained and acted upon, and one
6  court ought to deal with the whole matter.

7  "We are of opinion, therefore, that there was
8  concurrent jurisdiction in the two courts, and that the
9  substantive issues in the Nevada and California suits
10  were so far the same that the court first seized should
11  proceed to the determination without interference, on
12  the principles now well settled as between the courts of
13  the United States and of the States." 45/

14  In this case the California State Water Rights Board, by its
15  decision of April 10, 1958, undertook to pass upon the question of the
16  priorities of the United States of America, Fallbrook Public Utility District,
17  and Santa Margarita Mutual Water Company.  It decided in favor of the
18  Fallbrook Public Utility District - deciding perhaps the most vital question
19  in this proceeding.  As reviewed, priorities to rights to the use of water,
20  albeit inchoate in character, are invaluable properties.

21  An examination of the decisions will disclose that in making the
22  determination respecting the priorities, that State agency undertook to review
23  and pass upon precisely the same issues as are before this Court; considered
24  evidence identical in nature which has been and will be introduced in this
25  cause.  That act constitutes a clear and direct invasion of this Court's
26  jurisdiction and authority.  Observed in that regard:

27  California's present representative in this cause has
28  declared in effect that the sole and only question
29  decided by the State Water Rights Board is the matter

31  45/  Rickey Land & Cattle Co., v. Miller and Lux, 218 U. S. 258, 262 (1910).

- 19 -

3989

of the existence of a surplus supply of water available
for appropriation. The action of the Board is directly to
the contrary. That Board decides upon priorities - the
law so provides; the decisions of April 10, 1958, bear
out that proposition.

Any doubt of the invasion of this Honorable Court's jurisdiction is
removed by the petition for writ of mandate filed by the Santa Margarita Mutual
Water Company in the Superior Court of the State of California in and for
San Diego County. 46/ Object of that petition is to review the action of the
State Water Rights Board. Again there will be passed upon the question of
priorities - an issue before this Court since January 25, 1951, long prior to
any action by either the State Board or the Superior Court of San Diego County.
Avoidance of the principle enunciated by the Court of Appeals for the Ninth
Circuit and the Supreme Court may not come about by the assertion that the acts
involved are those of an administrative agency for it has been authoritatively
declared:

"The party who first brings a controversy into a court
of competent jurisdiction for adjudication should, so far
as our dual system permits, be free from the vexation of
subsequent litigation over the same subject matter. The
economic waste involved in duplicating litigation is obvious.
Equally important is its adverse effect upon the prompt and
efficient administration of justice. * * *

Clearly it is just as harassing and vexatious, and
there is just as much waste and duplication of effort
involved in twice trying the same issue between the same
parties whether the second trial is before an administrative
tribunal or before a court. * * *." 47/

---

46/   This case was removed by the United States of America to this Honorable
Court.

47/   Dwinell-Wright Co. v. National Fruit Product Co., 129 F.2d 848, 853
(C.A.1, 1942).

3990

of particular interest here is a case in this Court in which
California was enjoined from proceeding with hearings respecting priorities
during the pendency of an action involving rights to the use of water in the
San Joaquin River. [48/]    On the subject the Court declared in regard to the
hearings respecting priorities:

> "Inasmuch as this Court has jurisdiction in the
> main action, it has jurisdiction to issue an injunction
> in an ancillary proceeding to restrain interference with
> its jurisdiction, and to preserve the res of the action." [49/]

Continuing, the Court declared:

> "* * * the Court first seized with jurisdiction should
> proceed to determination of the questions without
> interference." [50/]

From a frequently cited authority this excerpt is taken setting forth
the underlying reason that neither California's State Water Rights Board nor its
Superior Court in San Diego County were empowered to invade this Court's jurisdic-
tion in regard to the res in this case, namely the rights to the use of water in
the Santa Margarita River:

> "the bill * * * had been filed in the Circuit Court of the
> United States, and the jurisdiction of that court had thus
> attached before the commencement of the suit in the state
> court, it follows upon principle and authority that it was
> not competent for the State court to interfere by injunction
> or otherwise with the proceedings in the Federal court.
>
> "The possession of the res vests the court which
> has first acquired jurisdiction with the power to hear and deter-
> mine all controversies relating thereto, and for the time
> being disables other courts of coordinate jurisdiction from

---

48/  Fresno v. Edmonston, 131 F. Supp. 421 (U.S.D.C.S.D. Cal. N.D. 1955).

49/  Ibid., 131 F. Supp. 421, 424-425.

50/  Ibid., 131 F. Supp. 421, 425.

- 21 -

3991

GPO 16-80866-1

exercising a like power.  This rule is essential to the
orderly administration of justice, and to prevent unseemly
conflicts between courts whose jurisdiction embraces the
same subjects and persons.

"Nor is this rule restricted in its application to
cases where property has been actually seized under
judicial process before a second suit is instituted in
another court, but it often applies as well where suits
are brought to enforce liens against specific property,
to marshal assets, administer trusts or liquidate insolvent
estates, and in suits of a similar nature where, in the
progress of the litigation, the court may be compelled to
assume the possession and control of the property to be
affected.  The rule has been declared to be of especial
importance in its application to Federal and state courts." [51]

California's impropriety in proceeding in this matter is tersely
stated in these terms:

"The forbearance which courts of co-ordinate jurisdic-
tion, administered under a single system, exercise towards
each other, whereby conflicts are avoided, by avoiding
interference with the process of each other, is a principle
of comity, with perhaps no higher sanction than the utility
which comes from concord; but between State courts and those
of the United States, it is something more.  It is a
principle of right and of law, and therefore, of necessity.
It leaves nothing to discretion or mere convenience.  These
courts do not belong to the same system, so far as their
jurisdiction is concurrent; and although they co-exist in
the same space, they are independent, and have no common

---

[51] Farmers' Loan and Trust Co. v. Lake St. Ele. Railroad Co., 177 U. S. 51,
61 (1899).

3932

- 22 -

GPO 16-60896-1

superior.  They exercise jurisdiction, it is true, within

the same territory, but not in the same plane; and when

one takes into its jurisdiction a specific thing, that res

is as much withdrawn from the judicial power of the other,

as if it had been carried physically into a different

territorial sovereignty.  To attempt to seize it by a

foreign process is futile and void." [52]

Accordingly, it is respectfully submitted:

California's efforts to usurp this Court's jurisdiction

respecting the priorities in question are void.

Courtesy and the law should have governed California

when the United States of America appeared specially

petitioning that the State Water Rights Board cease further

action on August 12-14, 1957, in regard to the subject

matter - the res over which this Court had assumed

jurisdiction.

It is emphasized:

At the time California's Water Board initiated hearings

on the applications for priorities there was in effect an

order of this Court "that all rights to the use of water

in the Santa Margarita River system of all parties to this

action be determined as against the others * * *." [53]

When the California quasi-judicial board undertook to determine the

priorities among the parties, as was attempted in its decision of April 10, 1958,

it acted in regard to the subject matter of this case - the res - the rights

to the use of water in the Santa Margarita River.  California should not be

permitted to scurry behind the well-worn assertion that all it purported to do

was to decide that there was a momentary surplus of water available for

[52] Covell v. Heyman, 111 U S. 176, 182 (1883).

[53] United States v. Fallbrook Public Utility District, 109 F. Supp. 28, 43
(U.S.D.C.S.D. Cal. S.D. 1952).

- 23 -

3993

1  appropriation. It went far beyond that; it rejected a claimed priority of the
2  United States of America, and accorded to the Fallbrook Public Utility District
3  priorities for the enlarged claims under applications Nos. 12,178 and 12,179.
4  Those enlarged claims are manifestly junior to the claims of the United States
5  of America. They entail questions before this Court for decision. They are not
6  and could not be before any other tribunal because this Honorable Court's
7  jurisdiction was first invoked. It is respectfully reiterated that this is not
8  a cause which may be tried piecemeal - in part in this Court; in part before the
9  State Water Rights Board; in part in the San Diego Superior Court. All parties
10  and all rights are declared, and correctly, one against the other by the order
11  of this Honorable Court. The subject matter - the res - in this case - all rights
12  to the use of water, are here for adjudication and they are not severable if
13  justice is to be done.

14          Precisely in point is this statement recently made by this Court
15  in regard to California's undertaking to do in connection with the San Joaquin
16  River litigation that which it seeks to do in this case:

17              "In any event, it is the State of California, which
18          is a party to the main case * * * which is bringing on the
19          proceedings and conducting them / before the State Water
20          Rights Board /, and under the cases hereinbefore cited,
21          this Court has power to restrain a party to a suit in aid
22          of its jurisdiction and to protect from interference the res." 54/
23  California's courts have adhered to the basic precept of the law
24  that:

25              "When a state court and a court of the United States
26          may each take jurisdiction of an action, the tribunal where
27          jurisdiction first attaches holds it to the exclusion of
28          the other until its duty is fully performed and the juris-
29          diction involved is exhausted." 55/

30  _____

31  54/ Fresno v. Edmonston, 131 F. Supp. 421, 427 (U.S.D.C.S.D. Cal. N.D. 1955).

32  55/ Conrad v. West, 98 C.A.2d 116, 118; 219 P.2d 477 (1950).

3994

GPO 16—60006-1

1    Numerous decisions cited in support of the quoted excerpt disclose the broad

2    and general acceptance of that tenet of the law by California's courts.  Repeatedly

3    those courts have applied the doctrine that "the court first acquiring jurisdiction

4    of the subject matter * * * may retain it for the purpose of deciding every

5    question in the cause." 56/

6         In brief summary:  This Honorable Court may not be thwarted in rendering

7    full and complete relief in this case through the actions of the State of California.

8    Neither should the United States of America or the other parties be forced into

9    the State tribunals and courts when this Court has jurisdiction of the whole

10   subject matter.  In the words of the Court of Appeals for the Ninth Circuit:

11        "/ The Federal Court 7 * * * therefore having first acquired

12        jurisdiction, may maintain and exercise it to the end, to the

13        exclusion of the state court in Mono county." 57/

14   Affirming that conclusion, the Supreme Court declared:

15        "Full justice cannot be done and anomalous results avoided

16        unless all the rights of the parties before the Court in virtue

17        of the jurisdiction previously acquired are taken in hand." 58/

18   This Honorable Court's jurisdiction should not be embarrassed, its jurisdiction

19   should not be impaired by the agencies and courts of the State of California.

20                              CONCLUSION

21        / a 7  This Court has full and complete jurisdiction

22               to render full and complete relief.

23   ─────────────────────────────────

24   56/  13 Cal. Jur., Courts, Sec. 97, p. 614.  Of interest in this connection is
         this principle recently stated in an exhaustive review of Federal-State
25       court relations;
              "In all the cases in which a stay of a state court action until deter-
26       mination of an action in a federal court sitting in the same state has been
         granted, it appears that a decision in the federal action would be
27       determinative of all or some of the issues in the state court action.
              "A stay will not be granted where the adjudication in the federal
28       court cannot affect the rights of the parties to the state court action.
         However, where there is a genuine dispute as to whether a determination
29       of the pending federal action will affect the outcome of the state
         action, the state court may refuse to decide such issue and nevertheless
30       grant a stay of the proceedings."  56 A.L.R. 2d 343.

31   57/  Rickey Land & Cattle Co. v. Miller and Lux, 152 Fed. 11, 21 (C.A.9, 1907);
         See supra.

32   58/  Rickey Land & Cattle Co. v. Miller and Lux, 218 U.S. 258, 262 (1910). See
         supra.

3995

1    [o]   Neither California nor its tribunals or agencies

2          could or should interfere with or impair this

3          Honorable Court's jurisdiction as they have

4          attempted.

5                                    UNITED STATES OF AMERICA

6

7                                    3/ J. Lee Rankin

8                                    J. LEE RANKIN,
                                     Solicitor General

9

10                                   3/ William H Veeder
                                     WILLIAM H. VEEDER,

11                                   Attorney, Department of Justice

12

13                                   William E. Burby
                                     WILLIAM E. BURBY,

14   June 28, 1958                   Attorney, Department of Justice

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

3996



EXHIBIT A

RAINBOW and SANDIA RESERVOIRS UNDER APPLICATION NOS. 12178 & 12179 OF 28 NOV. 1947

SANDIA RESERVOIR
APP. NO. 12179
10,000 acre feet CAPACITY

RAINBOW RESERVOIR
APP. NO. 12178
10,000 acre feet CAPACITY

RIVERSIDE COUNTY
SAN DIEGO COUNTY

EXHIBIT A

3997



EXHIBIT B

FALLBROOK RESERVOIR UNDER AMENDED APPLICATIONS NO. 12178 & 12179 of 28 JULY 1952

FALLBROOK    RESERVOIR
amended app. no. 12178 & 12179
30,000 (?) acre feet CAPACITY

RIVERSIDE COUNTY
SAN DIEGO COUNTY

EXHIBIT   B

3998