FILED

1    EDMUND G. BROWN, Attorney General
      of the State of California
2    ADOLPHUS MOSKOVITZ, Deputy Attorney General
    Library and Courts Building
3    Sacramento 14, California
    Telephone:  HIckory 5-4711, Ext. 4574
4
    Attorneys for Defendants in
5    Intervention

JUL 9 - 1958

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
              DEPUTY CLERK

6

7

8          IN THE UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10              SOUTHERN DIVISION

11

12    UNITED STATES OF AMERICA,     )    No. 1247-SD-C

13          Plaintiff,      )

14      v.                  )    MEMORANDUM OF STATE OF
                              CALIFORNIA IN RESPONSE TO
15    FALLBROOK PUBLIC UTILITY DISTRICT, )    "MEMORANDUM RESPECTING THE
    a public service corporation of the )    JURISDICTION, POWER AND
16    State of California; et al.,     )    RESPONSIBILITY OF THIS
                              HONORABLE COURT TO RENDER
17          Defendants,     )    THE FULL AND COMPLETE
                              RELIEF FOR WHICH THE
18    PEOPLE OF THE STATE OF CALIFORNIA, )    UNITED STATES OF AMERICA
                              AND THE PARTIES HAVE
19          Defendants in    )    PRAYED" FILED BY THE
          Intervention.      )    UNITED STATES.
20                           )

21

22                      INTRODUCTION

23          On June 18, 1958, during oral argument on various

24    motions to dismiss, for summary judgment, and for other relief,

25    the United States asked leave to submit a memorandum supporting

26    its argument that, in deciding this case, the Court has jurisdic-

27    tion to determine the respective priorities of various applica-

28    tions to appropriate unappropriated water of the Santa Margarita

29    River which were filed with the State of California by the United

30    States Navy, the Fallbrook Public Utility District and the Santa

31    Margarita Mutual Water Company, and also go behind and review the

COPY REC...

4069

1   action which the California State Water Rights Board has already

2   taken with respect to such applications (Tr. June 18, 1958, pp.

3   1693-1694). Leave was granted the United States to submit a

4   memorandum by June 30, 1958, and the defendants were given a week

5   to respond (Tr. June 18, 1958, pp. 1695-1696).

6        The United States memorandum, received by the State of

7   California on July 2, 1958, takes the following position:

8        1. That the commencement of this action presented to

9   this Court for determination an issue as to the respective time

10   priorities of applications to appropriate filed by the United

11   States Navy, the Fallbrook Public Utility District and the Santa

12   Margarita Mutual Water Company;

13        2. That the California State Water Rights Board was

14   thereby divested of its authority and responsibility under Cali-

15   fornia law to consider and act upon such applications; and

16        3. That, as a consequence, this Court may ignore the

17   action which the Water Rights Board, after holding a hearing, took

18   on those applications and may proceed to determine the issue of

19   time priorities independently of such action.

20        The State of California disagrees with that position.

21        First, the complaint in this action as originally filed

22   in 1951 did not plead any application of the United States to

23   appropriate and did not ask for any judicial declaration of

24   priorities among applicants to appropriate. This was not done

25   until the amendatory and supplementary complaint was filed in

26   April 1958.

27        Second, even if that issue had been presented, it would

28   not have deprived the Water Rights Board of its statutory responsi-

29   bility. The state legislature has delegated to the Board, which

30   is an administrative agency of the state, the quasi-legislative

31   function of determining who shall be permitted to acquire a right

to appropriate unappropriated water from a particular source of
water within the state.  This function is separate from, and in no
way interferes with, the judicial determination by a court of the
vested rights which may exist with respect to that source of water.

Third, until an application to appropriate is favorably
acted upon by the Water Rights Board by the issuance of a permit,
the applicant has no property right or any other right as against
the state.  He has only an inchoate, incipient, conditional right
of procedural priority over later applicants.  Before seeking
judicial relief he must exhaust the available administrative
remedy before the Water Rights Board.

Fourth, even assuming he has sufficient legal status
prior to issuance of a permit to secure a court determination of
conflicting claims between himself and other claimants to the
same water, such determination could not limit the statutory dis-
cretion of the Water Rights Board to grant, condition or deny
permits on the applications pending before it.  Whatever
respective right of priority might be adjudged to the applicant
by a court in an independent action would be subject to the
board's discretion, and it could not ripen into a vested right to
appropriate unless a permit were granted upon it by the board.

Finally, where, as here, the board has already acted
upon the conflicting applications, an independent judicial deter-
mination of time priorities of the applications would be useless
and without effect.  The board's choice of one of the applicants
over the other competing applicants, by granting permits to one
and denying permits to the others, makes the possibly earlier
time priority of the rejected application irrelevant.  Moreover,
the sole judicial remedy available under California law to a
disappointed applicant after the board has acted is a mandate
action as set forth in California Water Code section 1360 and

3

California Code of Civil Procedure section 1094.5.

<u>PRESENT STATUS OF THE PERTINENT</u>
<u>APPLICATIONS TO APPROPRIATE</u>

In the Stipulation on Pre-Trial filed with the Court on May 8, 1958, the United States, the State, the Fallbrook Public Utility District, the Santa Margarita Mutual Water Company, and the Vail Company agreed, among other things, to the following facts concerning applications to appropriate water of the Santa Margarita River filed with the California State Water Rights Board or its statutory predecessor (Stipulation on Pre-Trial, pp. 13-18).

1.  The Santa Margarita Mutual Water Company filed the following applications:

(a)  Application 11578 on October 4, 1946, and Amended Applications No. 11578 on January 27, 1948, and August 3, 1951;

(b)  Application 12152 on November 12, 1947, and Amended Applications No. 12152 on January 27, 1948, and August 3, 1951.

2.  The Fallbrook Public Utility District filed Applications Nos. 12178 and 12179 on November 28, 1947, and filed Amended Applications Nos. 12178 and 12179 on July 22, 1952.

3.  Application No. 12576 signed by an official for the United States Navy Department was filed on June 30, 1948; Amended Application No. 12576 signed by another official for the United States Navy Department was filed on December 13, 1948; on July 13, 1949, the application was amended as requested by a letter dated July 13, 1949, from the Commanding General, Camp Joseph H. Pendleton, to the statutory

4

predecessor of the State Water Rights Board.

4. On June 4, 1957, the State Water Rights Board issued a notice of pre-hearing conference in the matters of all the applications described in the preceding numbered paragraphs and protests thereto, a copy of which notice was received by the District Public Works Officer, 11th Naval District, San Diego, California. Pursuant to such notice a pre-hearing conference was held on July 9, 1957.

5. On August 7, 1957, the State Water Rights Board issued a notice in the matters of all the applications described in the preceding numbered paragraphs that a hearing would be held on the application and protests thereto on August 12, 1957 in San Diego, California. A copy of that notice was received by the District Public Works Officer, 11th Naval District, San Diego.

6. A hearing was held on August 12-14, 1957, in San Diego, California, by the State Water Rights Board, although the United States made a special appearance objecting that the Board was without jurisdiction to proceed.

7. On April 10, 1958, the State Water Rights Board made and adopted the following decisions and orders:

    (a) Decision No. D 896 concerning Application No. 11578 of the Santa Margarita Mutual Water Company.

    (b) Decision No. D 897 concerning Application No. 12152 of the Santa Margarita Mutual Water Company and Applications Nos. 12178 and 12179 of the Fallbrook Public Utility District.

5

4073

(c)  An order concerning Application No. 12576
of the United States Navy Department.

The Stipulation on Pre-Trial states that a copy of
each of the documents referred to in the numbered paragraphs above
is filed with the Clerk of the Court and is available for examina-
tion.  Examination reveals as follows:

1.  In Decision No. D 896 the State Water Rights
Board denied Application No. 11578 of the Santa Margarita
Mutual Water Company.

2.  In Decision No. D 897 the board denied Applica-
tion No. 12152 of the Santa Margarita Mutual Water Com-
pany, but approved in part Applications Nos. 12178 and
12179 of the Fallbrook Public Utility District and issued
permits to appropriate thereon subject to specified terms
and conditions.

3.  In the order relating to Application No. 12576
of the United States Navy Department, the board rejected
and denied the application on the grounds that no evidence
had been presented by or on behalf of the applicant in
support thereof and no cause had been shown at the hearing
or within five days thereafter for the applicant's
failure to appear and present evidence.

Thus we see that at the present time Application No.
12576 of the United States Navy Department and Applications Nos.
11578 and 12152 of the Santa Margarita Mutual Water Company have
been denied and rejected by the California State Water Rights Board.
Unless the action of the board was outside its jurisdiction or is
properly set aside on direct court review in the manner provided
by California law (topics to be discussed hereafter in this
memorandum), there could be no conflicting claims based on the
rejected applications as against the Fallbrook Public Utility

6

4074

1   District.  Those applications no longer exist.  A determination by

2   this Court in the instant case of their respective time priorities,

3   even if such determination would have been appropriate prior to

4   the Water Rights Board action, would now obviously serve no useful

5   purpose.  For even if the applications which have been denied were

6   adjudged to have had the earliest time priority, their denial

7   terminates their value as the basis of appropriative rights.

8

9           THE STATE WATER RIGHTS BOARD HAD JURISDICTION

10          TO HEAR AND TAKE ACTION ON THE CONFLICTING

11          APPLICATIONS TO APPROPRIATE.

12          The United States argues that the filing of this action

13   deprived the State Water Rights Board of its jurisdiction to con-

14   sider and act upon the applications before it to appropriate water

15   of the Santa Margarita River (U. S. Mem. on Jurisd., pp. 3, 18-26).

16   This argument is based on a misconception of the functions of this

17   Court and of the Water Rights Board.

18          When this lawsuit was filed the United States alleged

19   vested rights to use specified amounts of water of the Santa

20   Margarita River as against the defendants.  There is no dispute

21   that the Court was thereby invested with jurisdiction to deter-

22   mine by judicial decree the issue of the vested rights of the

23   parties, and that no administrative agency can interfere with the

24   exercise of that judicial function.  In recognition of this,

25   permits by the Water Rights Board uniformly provide that they are

26   subject to vested rights (Temescal Water Co. v. Dept. of Public
                                                    106
27   Works (1955), 44 Cal. 2d 90,/280 P. 2d 1, 11).  It is equally

28   undisputable, however, that the Court, restricted as it is to

29   the exercise of judicial power under Article III, section 2, of

30   the United States Constitution, lacks the authority to perform

31   the quasi-legislative function of acting upon applications and

7

1    granting permits to appropriate unappropriated water.  This is

2    the responsibility which the state legislature has delegated to

3    the Water Rights Board.

4           It is firmly established in California law that hearing

5    and determining applications to appropriate water do not con-

6    stitute a judicial function.  That principle was first declared by

7    the Supreme Court of California in 1925, and has been repeated

8    over and over again by that court.  The groundwork was laid in

9    the concurring opinion of Mr. Chief Justice Shaw in Tulare Water

10    Company v. State Water Commission (1921), 187 Cal. 833, 202 Pac.

11    874, which pointed out that the commission, the original statutory

12    predecessor of the Water Rights Board, could not constitutionally

13    exercise judicial powers because section 1 of Article VI of the

14    California Constitution is a limitation upon such exercise.  In

15    Department of Public Works v. Superior Court (1925), 197 Cal.

16    215, 239 Pac. 1076, the Supreme Court held that the superior court

17    was without jurisdiction to entertain a petition for writ of review

18    in the nature of certiorari to review action by the department,

19    acting through the State Engineer, under Section 12 of the Water

20    Commission Act because under section 1 of Article VI of the

21    Constitution the department can have no judicial powers.  This

22    holding has been directly reaffirmed in Mojave River Irr. Dist. v.

23    Superior Court (1927), 202 Cal. 717, 262 Pac. 724; Yuba River

24    Power Co. v. Nevada Irr. Dist. (1929), 207 Cal. 521, 279 Pac. 128;

25    Wood v. Pendola (1934), 1 Cal. 2d 435, 35 P. 2d 526; East Bay

26    M. U. Dist. v. Dept. of P. Wks. (1934), 1 Cal. 2d 476, 35 P. 2d

27    1027; Fleming v. Bennett (1941), 18 Cal. 2d 518, 116 P. 2d 442;

28    Temescal Water Co. v. Dept. of Public Works (1955), 44 Cal. 2d 90,

29    280 P. 2d 1; and Bray v. Superior Court (1928), 92 Cal. App. 428,

30    268 Pac. 374.  It has been applied, by analogy, to other adminis-

31    trative officers and boards having state-wide jurisdiction

8

(Standard Oil Co. v. State Board of Equalization (1936), 6 Cal.
2d 557, 59 P. 2d 119; Drummey v. State Board of Funeral Directors
(1939), 13 Cal. 2d 75, 87 P. 2d 848; Laisne v. California State
Board of Optometry (1942), 19 Cal. 2d 831, 123 P. 2d 457; cf.
Dare v. Board of Medical Examiners (1943), 21 Cal. 2d 790, 136 P. 2d
304).

In the Tulare Water Company case the function of the
State Water Commission in issuing permits to appropriate water was
described as ministerial, in view of then existing legislation.
In the East Bay case, the court considered that the Department of
Public Works, as statutory successor to the Water Commission,
acted in a quasi-legislative capacity. The decision in the more
recent Temescal case took cognizance of the many statutory changes
since the Tulare Water Company decision, and accordingly held
that the Department of Public Works, in acting upon applications
to appropriate water, exercised discretionary powers in a purely
administrative capacity. The court said:

"In carrying out its present duty, the Department
exercises a broad discretion in determining whether the
issuance of a permit will best serve the public interest.
(Wat. Code, Sections 1253, 1255.) That determination
requires an administrative adjudication, which, in any
case in which the issuance of a permit is protested, may
be made only after a hearing" (44 Cal. 2d at 100, 280
P. 2d at 7).

In Department of Public Works v. Superior Court, supra,
it was declared that although the department was required to
weigh facts and arrive at conclusions from those facts in acting
upon applications to appropriate water, its functions were not
judicial, since the conclusions are merely for guidance in the
administration of its duties (197 Cal. at 221, 239 Pac. at 1079).

9

4077

1   To the same effect is Yakus v. United States (1944), 321 U.S. 414,

2   holding that Congress may delegate fact-finding powers to an

3   administrative agency.

4     The foregoing decisions leave no room for argument that

5   the law is, and always has been, that hearing and acting upon

6   applications to appropriate water are not judicial functions and

7   that the state agency acts in a purely legislative and administra-

8   tive capacity when it holds hearings and denies or approves such

9   applications.

10     In exercising its legislative and administrative authority,

11   the Water Rights Board does not and cannot interfere with or invade

12   the jurisdiction of this Court to decree vested rights.  The

13   board's determination as to the existence of unappropriated water

14   is merely an estimate that there is a reasonable expectation of

15   its future availability and not a determination of vested rights

16   (Temescal Water Co. v. Dept. of Public Works (1955), 44 Cal. 2d

17   90, 106, 280 P. 2d 1, 11).  The accuracy of this estimate depends

18   both on the weather and on the nature and extent of the vested

19   rights.  But the danger that the board may incorrectly evaluate

20   these factors does not mean that its evaluation is judicial or

21   that the question should be determined judicially before the board

22   has acted.  As stated in the Temescal case (44 Cal. 2d at 106,

23   280 P. 2d at 11):

24     "...A judicial determination as to existing appropria-

25     tive and riparian rights rests upon then present uses

26     which may be quite different at a later time, and a

27     determination as to the future availability of water

28     necessarily can be only an estimate.  A permit itself

29     confers no appropriative rights but fixes the priority

30     of its recipient over subsequent appropriators (Wat.

31     Code, §§ 1450-1456); it expressly provides that its

4078

1    issuance is subject to vested rights.  If the department
2    erroneously concludes that unappropriated water is avail-
3    able to supply an applicant when there is no reasonable
4    expectation of such a supply, the error may be corrected
5    upon a review of the determination.  But a holding that
6    such a danger is so imminent as to justify an independent
7    judicial proceeding to determine the availability of un-
8    appropriated water before the department considers an
9    application, would deprive the administrative proceeding
10   of all of its proper functions in the issuance of a permit.
11   No such danger will be presumed."

12       But, the United States argues, the relative priorities
13   among the applicants is solely a judicial question which was pre-
14   sented to this Court when this action was filed and hence, the
15   argument concludes, when the Water Rights Board considered priori-
16   ties in approving some of the applications and denying others it
17   acted in a judicial capacity in violation of the Court's exclusive
18   jurisdiction (U. S. Mem. on Jurisd., pp. 18-20).

19       We have already pointed out that the question of rela-
20   tive priorities of applications was not in the complaint when the
21   suit was initiated and that the United States did not plead a
22   claim based on the priority of the Navy's application to appro-
23   priate until April 1958, when the amendatory and supplementary
24   complaint was filed.  But even if this were not so, the considera-
25   tion by the board of the time priorities of the applications before
26   it, in the course of approving or rejecting them, is no more a
27   binding judicial determination of priorities than the considera-
28   tion of vested rights in finding whether unappropriated water
29   exists is a binding judicial determination of vested rights.

30       Time priorities of the applications is one of the
31   factors which the Water Rights Board considers in deciding among

4079

1   competing applicants, but it is not the only, or even the most
2   important, factor in such a decision.  The board has broad discre-
3   tion to allow the appropriation of unappropriated water "under
4   such terms and conditions as in its judgment will best develop,
5   conserve, and utilize in the public interest the water sought to
6   be appropriated" (Calif. Water Code sec. 1253) and also "to reject
7   an application when in its judgment the proposed appropriation
8   would not best conserve the public interest" (Calif. Water Code
9   sec. 1255; see also Temescal Water Co. v. Dept. of Public Works,
10  (1955), 44 Cal. 2d 90, 99-100, 280 P. 2d 1, 7; East Bay M. U.
11  Dist. v. Dept. of P. Wks. (1934), 1 Cal. 2d 476, 480-481, 35 P. 2d
12  1027, 1029).  Further, "Upon failure of any party in interest to
13  appear at a hearing or show good cause within five days thereafter
14  for his failure, final action may be taken without further
15  hearing" (Calif. Water Code sec. 1352).
16          Examination of the decisions and order of the Water
17  Rights Board concerning the competing applications to appropriate
18  Santa Margarita River water, on file with the Clerk of the Court,
19  reveals that the relative time priority of the applications was
20  not the controlling factor.  In the approval of the Fallbrook
21  Public Utility District applications and the denial of the earlier
22  Santa Margarita Mutual Water Company applications, the board relied
23  upon the public interest as developed from the evidence introduced
24  at the hearing.  The rejection of the application of the United
25  States Navy was based on the failure of the Navy to appear and
26  present evidence in support of its application.
27
28
29
30
31

4080

EXHAUSTION OF THE ADMINISTRATIVE REMEDY BEFORE
THE WATER RIGHTS BOARD IS A JURISDICTIONAL PRE-
REQUISITE TO COURT ACTION ON APPLICATIONS TO
APPROPRIATE.

The United States has cited, and quoted excerpts from,
an opinion of United States District Judge Peirson M. Hall of this
District (Fresno v. Edmonston (U.S.D.C., S.D. Cal., N.D., 1955),
131 F. Supp. 421) as authority that the consideration of time
priorities of applications to appropriate is exclusively the func-
tion of the Court and is outside the jurisdiction of the Cali-
fornia Water Rights Board as long as the court action is pending
(U. S. Mem. on Jurisd. pp. 21, 24).  In a later opinion, however,
Judge Hall reversed these views (Rank v. (Krug) United States
(U.S.D.C., S.D. Cal. N.D., 1956), 142 F. Supp. 1).  He concluded
that, under the present California law on appropriation of water,
an applicant to appropriate cannot secure an independent judicial
determination of priorities prior to the ruling by the State
Engineer in granting or denying permits, and that the administra-
tive remedy must be exhausted before judicial review of the deci-
sion may be had (142 F. Supp. at 179-181).

In reaching this conclusion, Judge Hall took into account
the broad discretion of the State Engineer to deny or condition
permits (142 F. Supp. at 181), as explained in the Temescal case
(44 Cal. 2d at 99-100, 280 Pac. at 7).  That broad discretion had
not been considered in Yuba River Power Co. v. Nevada Irr. Dist.
(1929), 207 Cal. 521, 279 Pac. 128, the earlier California case
which permitted an applicant to litigate his priority prior to the
issuance of a  permit. As Judge Hall pointed out (142 F. Supp. at
181):

"...The reason for the rule in the Yuba River case, and
similar cases, that priority among applicants to appropriate

13

4081

water could be litigated even before the issuance of a
permit was that the granting of a permit by the State
Engineer was a ministerial act not subject to judicial
review, and the only way applicants could have their
rights and priorities adjudicated was by an independent
suit between them, either before or after the granting
of a permit.  The reason for the rule has ceased to exist
by the holding in the Temescal case that the action of
the State Engineer is not purely ministerial, but is
the action of a State-wide agency involving a measure
of discretion, which may culminate in an order which is
subject to judicial review de-novo under the provisions
of Section 1094.5 of the California Code of Civil Pro-
cedure, and the further holding that the procedure set
up in the Water Code for hearing applications, must be
exhausted before that judicial review will lie."

The requirement that the administrative remedy must be
exhausted before a judicial action may be brought is firmly estab-
lished both in federal and state decisions.  In the Temescal case
(44 Cal. 2d at 106, 280 P. 2d at 11) the court quoted from the
leading California case on the subject, Abelleira v. District Court
of Appeal (1941), 17 Cal. 2d 280, 292, 109 P. 2d 942, 949, which
in turn cited nearly a page of illustrative authorities in accord
from federal courts and the courts of other states.  The court in
the Abelleira case described the rule as follows (17 Cal. 2d at
293, 109 P. 2d at 949-950):

"The rule itself is settled with scarcely any conflict.
It is not a matter of judicial discretion, but is a
fundamental rule of procedure laid down by courts of
last resort, followed under the doctrine of stare
decisis and binding upon all courts....Bearing in mind

14

4082

1   the analysis of jurisdiction which has heretofore been

2   made, and examining the authorities dealing with the

3   rule, we are necessarily led to the conclusion that

4   exhaustion of the administrative remedy is a jurisdic-

5   tional prerequisite to resort to the courts."

6   Here, of course, the United States has deliberately

7   refused to avail itself of the administrative remedy.  It wishes

8   to preserve the possibility of securing an appropriative right

9   under the Navy's application to appropriate, but has allowed the

10  application to be rejected and denied by default.  By so acting it

11  has clearly forfeited its right to any judicial relief.

12

13  <u>EVEN IF AN INDEPENDENT JUDICIAL DETERMINATION OF</u>

14  <u>PRIORITY OF APPLICATIONS TO APPROPRIATE MAY BE HAD</u>

15  <u>BEFORE THE ADMINISTRATIVE REMEDY IS EXHAUSTED, THE</u>

16  <u>JURISDICTION AND DISCRETION OF THE WATER RIGHTS</u>

17  <u>BOARD ARE UNAFFECTED.</u>

18  For purposes of argument let us assume, however, that

19  the rule of the <u>Yuba River Power</u> case is still good law.  Thus,

20  we will assume that, as an applicant to appropriate, the United

21  States had the right, prior to action by the Water Rights Board,

22  to secure a judicial determination of the relative priority of its

23  applications as against the competing applications of Fallbrook

24  and Santa Margarita, and that it requested such relief in its

25  original complaint in this case.  This would not have disabled the

26  Water Rights Board from proceeding as it did to hear and rule on

27  the applications, even though among the factors to be considered

28  was the time priorities of the applications.  In a directly

29  analogous case the United States Supreme Court refused to enjoin

30  the administrative proceeding before a state agency.  That case

31  is <u>Pacific Livestock Co. v. Lewis</u> (1916), 241 U.S. 440, where two

15

1    actions involving water rights had been filed in a federal district
2    court. The same rights among others were also involved in a pro-
3    ceeding subsequently initiated before the State Water Board of
4    Oregon for the ascertainment and adjudication of relative rights
5    of the various claimants to the waters of the Silvies River. The
6    plaintiff in the pending court actions sought to enjoin the admini-
7    strative proceeding, complaining that it invaded the previously
8    acquired jurisdiction of the federal district court. But on appeal
9    the United States Supreme Court affirmed the dismissal of the
10   injunction suit on the ground that, even though there were simi-
11   larities between the court actions and the water board proceeding
12   in that they both concerned vested water rights, in objective and
13   in basic character they were different.

14          A judicial ruling on priorities would not settle the
15   dispute among the applicants as to who should receive permits.
16   As stated in East Bay M. U. Dist. v. Dept. of P. Wks. (1934),
17   1 Cal. 2d 476, 480-481, 35 P. 2d 1027, 1029:

18          "Under the statute before us, unless and until the
19          statutory requirements and conditions are met, the appli-
20          cant obtains no property right or any other right against
21          the state. If the statutory prerequisites are not present,
22          the application may be rejected in its entirety or, as here
23          done, a permit may be issued with qualifications as to use
24          of the water, and under neither hypothesis would it be the
25          exercise of judicial authority. Of course, it must always
26          be kept in mind that the state authority cannot arbitrarily,
27          and upon caprice only, reject an application. Clearly, the
28          manner in which the unappropriated waters of the streams of
29          the state shall be distributed among the applicants therefor
30          involves questions of policy, and the legislature, in the
31          interest of the public welfare, may prescribe reasonable

16

4084

1   conditions and priorities in such distribution.  This is

2   true even though the filing of an application would, under

3   certain conditions, be a sufficient foundation for a justi-

4   ciable issue as against some other claimant.  Where the

5   facts justify the action, the water authority should be

6   allowed to impose, in the public interest, the restrictions

7   and conditions provided for in the act.

8                               * * *

9       "The case of Yuba River etc. Co. v. Nevada Irr. Dist.,

10  supra, holds no more than this:  That an applicant who has

11  complied with the statute has sufficient legal status,

12  although no permit may have yet issued, to authorize him

13  to institute a court action to determine conflicting claims

14  between himself and other claimants to the water subject

15  to appropriation.  But this holding is far from being an

16  adjudication of the question before us.  As already noted,

17  when an applicant files his application and all the pre-

18  requisite facts set forth in the statute are present, the

19  state agency may not arbitrarily refuse the granting of

20  the permit but may be compelled by mandamus to issue it;

21  but unless all the conditions are present, the water

22  authority may grant a qualified permit consonant with

23  such conditions, or may, if justified, reject the appli-

24  cation altogether" (Emphasis added).

25

26      AN INDEPENDENT JUDICIAL DETERMINATION OF PRIORITIES

27      WOULD BE USELESS SINCE THE WATER RIGHTS BOARD HAS ACTED.

28      The Water Rights Board has already made its decisions on

29  these competing applications.  It has exercised its discretion

30  under the law and has rejected all but Fallbrook's applications.

31  Any ruling by this Court on relative time priorities of the

17

4085

1  applications would now be useless and without effect.  Rejected

2  applications, no matter how early their time priority, can be no

3  basis for an appropriative right (Calif. Water Code sec. 1450).

4  No case has been cited by the United States, and we know of none,

5  which has held proper an independent judicial determination of

6  time priorities of competing applications to appropriate after

7  the administrative agency has acted and denied a permit to all

8  but one of the applicants.

9          If the board has decided erroneously or without substan-

10  tial evidence in approving Fallbrook's applications and denying

11  others, judicial review is available to interested persons who

12  have exhausted their administrative remedy and file a timely

13  petition for writ of mandate under California Water Code section

14  1360 and California Code of Civil Procedure section 1094.5

15  (Temescal Water Co. v. Dept. of Public Works (1955), 44 Cal. 2d

16  90, 279 P. 2d 963).  But, as long as the board has acted within

17  its jurisdiction, as we contend, its decisions are not subject to

18  collateral attack as attempted here by the United States (Stockton

19  v. Department of Employment (1944), 25 Cal. 2d 264, 267-268, 153

20  P. 2d 741, 743).

21

22                         CONCLUSION

23          In urging the Court to ignore the action of the State

24  Water Rights Board and to rule independently on the relative time

25  priorities of applications to appropriate on which the board has

26  already acted, the United States once again demonstrates the legal

27  schizophrenia which has plagued it throughout this case.  It wants

28  to benefit from the advantages afforded by state water law, but it

29  is unwilling to recognize the procedure and functions of the Water

30  Rights Board which make those advantages available.  Sooner or

31  later the United States must make its choice.  Either the state

1   system is inapplicable to the United States, in which event the
2   Navy's application is a nullity and its priority is immaterial.
3   Or the state system is applicable to the United States, in which
4   event the United States must follow it consistently like any
5   other applicant.

6          Dated:   July 8, 1958.

7

8                              EDMUND G. BROWN, Attorney General
                                  of the State of California
9                              ADOLPHUS MOSKOVITZ,
                                  Deputy Attorney General
10

11                        By  *Adolphus Moskovitz*
12                              Adolphus Moskovitz

13                             Attorneys for Defendants
14                             in Intervention

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

19

4087

1  EDMUND G. BROWN, Attorney General
      of the State of California
2  ADOLPHUS MOSKOVITZ, Deputy Attorney General
   Library and Courts Building
3  Sacramento 14, California
   Telephone:  HIckory 5-4711, Ext. 4574
4
   Attorneys for Defendants in
5  Intervention

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10                   SOUTHERN DIVISION

11
   UNITED STATES OF AMERICA,              )  No. 1247-SD-C
12                                         )
                   Plaintiff,              )
13                                         )  MEMORANDUM OF STATE OF
            v.                             )  CALIFORNIA URGING REMAND
14                                         )  OF MANDATE ACTION REMOVED
   FALLBROOK PUBLIC UTILITY DISTRICT,      )  BY THE UNITED STATES FROM
15  a public service corporation of the    )  THE SUPERIOR COURT OF THE
   State of California; et al.,            )  STATE OF CALIFORNIA IN
16                                         )  SAN DIEGO COUNTY
                   Defendants,             )
17                                         )
   PEOPLE OF THE STATE OF CALIFORNIA,      )
18                                         )
                   Defendants in           )
19                 Intervention.           )

20

21                      INTRODUCTION

22       On May 9, 1958, the Santa Margarita Mutual Water Company,

23  the Rainbow Municipal Water District, and two individuals filed

24  in the Superior Court of the State of California in and for the

25  County of San Diego a petition for alternative writ of mandate

26  against the State Water Rights Board of the State of California.

27  No other respondents or defendants were named.  An order granting

28  an alternative writ and directing issuance thereof was signed by

29  a judge of that court, but to this date no service of the petition

30  or of the alternative writ has been made upon the Water Rights

31  Board.

                              1

On May 29, 1958, the United States filed a petition for removal of the above-described mandate case to the United States District Court for the Southern District of California, Southern Division, and on May 31, 1958, filed a verification thereof by William H. Veeder.

At the hearing on various motions in the instant case on June 16, 1958, the Court of its own motion raised the question of the jurisdiction of the court to receive the removed case (Tr. June 16, 1958, pp. 1505-1510), and on June 18, 1958, agreed to consider memoranda by the parties on the question (Tr. June 18, 1958, pp. 1693-1696). In accordance with the schedule prescribed by the Court at that time, this memorandum is in response to the memorandum of the United States entitled "Memorandum in Support of Petition to Remove Case Initiated by Santa Margarita Mutual Water Company in Superior Court of San Diego County, California," received by the State on July 2, 1958.

The State of California takes the position that the mandate proceeding "was removed improvidently and without juris-diction" and therefore that the Court should remand the case (28 U.S.C. sec. 1447 (1952)). Despite the statement to the contrary by the United States (U. S. Mem. on Removal, p. 1, lines 6-7), the State has never agreed that the mandate proceeding should be retained by this Court, and in fact has expressed the intention of making a formal motion to remand upon being served with process should the matter still be in the federal court at that time (Tr. June 16, 1958, pp. 1503-1504).

<u>THE UNITED STATES IS NOT A PARTY TO</u>
<u>THE MANDATE ACTION AND THEREFORE HAD</u>
<u>NO AUTHORITY TO REMOVE IT</u>

28 U.S.C., section 1441, is the basic provision of federal law governing removal of state court actions to the federal

2

district courts.  It provides in pertinent part:

"(a)  Except as otherwise expressly provided
by Act of Congress, any civil action brought in a
State court of which the district courts of the
United States have original jurisdiction, may be
removed by the defendant or defendants, to the
district court of the United States for the
district and division embracing the place where
such action is pending."

As is immediately apparent, removal must be effected
by "the defendant or defendants," a restriction which is strictly
construed by the courts (Shamrock Oil Corp. v. Sheets (1941),
313 U.S. 100, 104, 108-109).  The State, of course, agrees that
the designation of parties by state law as being plaintiffs or
defendants is not controlling in applying the removal statutes.
The realistic position of the parties as determined by the federal
courts is the proper test.  But here, we do not even reach the
question whether the United States is a plaintiff or defendant.
Remand is required simply because the United States is not a
party at all.

In the petition for writ of mandate the State Water
Rights Board is the only party named as a defendant or respondent
by the petitioners.  The United States is not named as a party,
and for good reason.  Perusal of the petition shows that the
petitioners' only complaint is that the Water Rights Board
approved applications to appropriate of the Fallbrook Public
Utility District and denied similar applications of the Santa
Margarita Mutual Water Company.  No rights are alleged either
for or against the United States and no relief is requested
either for or against the United States.  The petition prays:

3

4060

1      "(1)  That a writ of mandate in the alternate form

2           be issued out of and under the seal of this

3           Court, directed to respondent, State Water

4           Rights Board, commanding the Board to rescind,

5           vacate and set aside decision No. 896 and No.

6           897 of said Board, purportedly issued on April

7           10, 1958, approving the Applications of Fallbrook

8           Public Utility District No. 12178 and No. 12179

9           in part and rejecting Applications No. 11578

10          and No. 12152 of the Santa Margarita Mutual

11          Water Company.

12     "(2)  That if respondent, State Water Rights Board,

13          fails to obey such commands, that such Board

14          be compelled by order of this Court to file

15          herein by the return of said writ all of the

16          records and exhibits of the proceedings before

17          said Board on Applications No. 11578, No. 12152,

18          No. 12178 and No. 12179, and that upon the return

19          of said writ, and after hearing thereon, a

20          pre-emptory writ of mandate be issued commanding

21          said Board to do the things herein prayed for;

22          and

23     "(3)  That your petitioners have and recover from the

24          respondents, State Water Rights Board, the costs

25          incurred herein and for such other relief as the

26          Court may deem meet and equitable."

27       The order granting the alternative writ states that:

28        "It is hereby ordered that an alternative writ

29  of mandate issue out of and under the seal of this

30  Court directed to the State Water Rights Board of

31  California to rescind, vacate and set aside its

4

1 decisions #D896 and D897 issued on April 10, 1958

2 in the matter of Application 11578 and Application

3 12152 by the Santa Margarita Mutual Water Company

4 to appropriate waters from Temecula Creek and the

5 Santa Margarita River and in the matter of Application

6 #12178 and Application 12179 by the Fallbrook Public

7 Utility District to appropriate waters from the Santa

8 Margarita River and further command said Board forth-

9 with to make its order approving applications 12152

10 and 11578 by the Santa Margarita Mutual Water Company

11 and to issue permits as applied for by said applicant

12 and deny applications 12178 and 12179 by the Fallbrook

13 Public Utility District or that said State Water Rights

14 Board of California show cause before this Court, in

15 the court room of Department 2 why it has not done so

16 on the 22nd day of May 1958 at 9:30 o'clock A. M. of

17 said day, and that said Board file herein all of the

18 records and exhibits of the proceedings before it on

19 said applications #11578 and 12152, 12178 and 12179 and

20 that a copy of the alternative writ of mandate be filed

21 on respondent in not less than ~~twenty (20)~~ five (5) days before

22 the return thereof."

23  In the face of this record, the United States' assertions

24 that it is "in truth and fact a defendant in the proceedings"

25 (Pet. for Removal, p. 2, line 26) and that it "must defend its

26 rights in that proceeding or stand to lose them to its irreparable

27 damage" (Id. p. 2, lines 28-29) are incomprehensible.  Accepting

28 the proposition advanced by the Government itself, that, "The

29 question whether the United States is a party to a controversy is

30 not determined by the merely nominal party on the record, but by

31 the question of the effect of the judgment or decree which can be

5

1   rendered" (U. S. Mem. on Removal, p. 2, lines 21-24), it is clear

2   that the United States is not a party.  For whether the relief

3   requested by the petitioners is granted or denied, the present

4   status of the United States and its claimed priority, under the

5   rejected application of the Navy, over the other competing

6   applicants to store water, would be unchanged.

7          There is also the mystery as to how the United States

8   could become a defendant without having consented to be sued,

9   even if it had been named and served.  It may well be that a

10  relevant statute waiving sovereign immunity to this kind of suit

11  does exist, but the United States has failed to call the attention

12  of the Court or counsel to it.  The United States has cited

13  Minnesota v. Hitchcock (1902), 185 U.S. 373, for the proposition

14  that the United States may be a party although not named (U. S.

15  Mem. on Removal, p. 2, line 30).  But in that case the named

16  parties were federal officials sued in their official capacities

17  in holding and conveying real property, the legal title to which

18  was in the Government, and a specific statute authorized suits

19  against those officials in order to test the authority of the

20  United States to dispose of such real property (185 U.S. at 386-388).

21  Those factors make that case wholly inapplicable as a precedent

22  here.

23

24                          CONCLUSION

25          Many other interesting questions of law as to the right

26  to remove would no doubt be raised if the United States were a

27  party to the mandate proceeding.  However, in the current posture

28  of the proceeding, we do not believe it would be helpful to

29  speculate on them.  At the present time the proceeding should be

30

31


                                6

remanded on the simple ground that one not a party has purported
to remove it.

DATED:   July 8, 1958


EDMUND G. BROWN, Attorney General
of the State of California
ADOLPHUS MOSKOVITZ, Deputy Attorney
General

By _Adolphus Moskovitz_

Attorneys for Defendants in
Intervention

7

4094

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF CALIFORNIA )
                       ) ss.
COUNTY OF SACRAMENTO )

      ZELLA MACK, being duly sworn, deposes and says:
That affiant is a citizen of the United States, over the age of
18 years, and not a party to the within action; that affiant's place
of employment and business address is Library and Courts Building,
Sacramento 14, California; that on the 8th day of July, 1958,
affiant enclosed a true copy of the within

MEMORANDUM OF STATE OF CALIFORNIA IN RESPONSE TO THE "MEMORANDUM
RESPECTING THE JURISDICTION, POWER AND RESPONSIBILITY OF THIS
HONORABLE COURT TO RENDER THE FULL AND COMPLETE RELIEF FOR WHICH
THE UNITED STATES OF AMERICA AND THE PARTIES HAVE PRAYED" FILED
BY THE UNITED STATES, and
MEMORANDUM OF STATE OF CALIFORNIA URGING REMAND OF MANDATE ACTION
REMOVED BY THE UNITED STATES FROM THE SUPERIOR COURT OF THE STATE
OF CALIFORNIA IN SAN DIEGO COUNTY

in an envelope for each of the persons named below, addressed to
each of them at the address set out immediately below each respec-
tive name, sealed said envelope, and deposited the same in the
United States Mail at the City of Sacramento, County of Sacramento,
State of California, with postage thereon fully prepaid; that
there is delivery service by United States Mail at each of the
places so addressed, or there is regular communication by mail
between the said place of mailing and each of the places so
addressed:

                    Mr. William H. Veeder
                    Special Assistant to the
                      Attorney General
                    Department of Justice
                    Washington, D.C.

                    Mr. William H. Veeder
                    Special Assistant to the
                      Attorney General
                    c/o United States Attorney
                    Federal Courthouse
                    San Diego, California

                    Mr. John M. Cranston
                    Special Master
                    1410 Bank of America Building
                    San Diego, California

                    Mr. Phil D. Swing
                    Swing, Scharnikow & Staniforth
                    Attorneys at Law
                    530 Broadway, Suite 604
                    San Diego 1, California

                    Mr. William H. Burby
                    Attorney at Law
                    535 S. Curson Avenue
                    Apt. 9-D
                    Los Angeles 36, California

-1-

4095

Mr. Franz Sachse
Sachse and Price
Attorneys at Law
217 North Main Street
Fallbrook, California

Mr. W. R. Dennis
Attorney at Law
Route 1, Box 58
Fallbrook, California

Mr. George Stahlman
Attorney at Law
Route 1, Box 235
Fallbrook, California

Mr. George G. Grover
Clayson, Stark & Rothrock
Attorneys at Law
Security Bank Building
Corona, California

*Zella Mack*

Subscribed and sworn to
before me this 8th day of
July, 1958.

*Laura M. Middleton*
Notary Public in and for the County
of Sacramento, State of California

-2-

4096