BENJAMIN WYLIE TARWATER and CLARA IRENE TARWATER
(URBAN K. and ROSE C. TARWATER)

Defendants in propria persona

MURRIETA, CALIFORNIA

**FILED**

SEP 15 1958

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _M L_____
      DEPUTY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA )
                Plaintiff, )
v. )
FALLBROOK PUBLIC UTILITY )
DISTRICT, ET AL, )
                Defendants. )

CIVIL NO. 1247 - SD - C

ANSWER OF DEFENDANTS

BENJAMIN WYLIE TARWATER and

CLARA IRENE TARWATER

(URBAN K. & ROSE C. TARWATER)

The defendants, each severing from their co-defendants and each for himself or herself alone, in answer to the Complaint and Supplementary and Amendatory Complaint on file herein, admit, deny, and allege:

AFFIRMATIVE STATEMENT OF RIGHTS

These defendants own 82½ acres of land in Riverside County, California, and within the watershed of the Santa Margarita River, more particularly described in the document attached hereto, marked Exhibit A, which is hereby incorporated by reference as a part of this statement.

14861

INDEXED

Copy made

# EXHIBIT A

All of the following described land is in the Murrieta portion of the Temecula Rancho.

We own

One-half interest in Real Property known as Farm Lots (one-hundred-twenty-two, seventy-eight,) seventy seven, seventy six, eighty five, eighty six, all in the Murrieta Portion of the Temecula Rancho together with their water rights as shown by photostatic copies of Original Deeds, some of them attached hereto. For a more particular description, reference is hereby made to a map on file in Book 8, Page 359 of the Records of San Diego County, except public easements of Record and Public Utility Rights of Way.

We own

A Beneficiary interest in Trust Deed to 2 25/100 acres described as follows: That portion of Farm Lot 156 lying N.E. of the center line of the County road and Southeast of a line drawn from a point in the center line of Hancock Avenue 638.10' Northwesterly from the intersection of the center line of Hancock and Fig Street thence 47° 33' 30" Westerly 218.21' to the center line of the Murrieta Hot Springs Road, excepting therefrom that portion conveyed to the County for road purposes, also excepting therefrom easement over that portion included in County road, also excepting therefrom any portion included in Hancock road.

14862

EXHIBIT B

We are furnishing herewith a copy of the original Mexican Upper California Title and subsequent Mexican Upper California legislation up to the time of the Treaty of Guadalupe Hidalgo. Also find a copy of the Protocol of the said Treaty between Mexico and the United States. And also copies of some of the first transfers from the Temecula Land and Water Company to grantees.

The above mentioned copies are for the convenience of the Court.

I have marked in red ink some of the portions of each which I think have a bearing on this case. There are other portions not so marked.

The original Upper Mexican California Title referred to above says "He may use his land Freely and Exclusively, appropriating it to such use or cultivation as may suite him.--"

Leonardo Cota, acting as the Second Constitutional Alcalde in adjudicating the First Transfer used the following words -- "conferring upon him irrevocable power and in order that he may not be under the necessity of taking actual possessions, he delivers him an original Title, which he may record whenever he sees fit and therefore no one will molest him or will institute suit against him or otherwise disturb him in the enjoyment and possession of the same--"

The Treaty confirms the Title under American law as it was under Mexican law.

The deed from the Temecula Land and Water Company to the first buyers of their subdivision gave title to the Water rights when they deed the land, and our own deeds carry the proper quit claim clauses to bring the water rights down to us.

These Water Rights were deeded more than seventy years ago and we believe are prior to and take precident over subsequent State law. In other words the Water Rights were our private property as much as the rest of the land, and as such, we believe cannot be taken for public use without paying for them.

In addition to furnishing copies of the Temecula Land and Water Company first transfers I, Urban Tarwater, wish to state that if my memory serves me correctly, I have seen a copy of the Deed which transferred from Temecula Land and Water Company to George and Mary Powers farm Lot 122 in the Murrieta portion of the Temecula Rancho and that also carried a water rights clause.

Such information as we have leads us to believe that we are not subject to the State doctrine of reasonable use, or any other State law that is contrary to the United States treaty with Mexico, called the "Treaty of Guadalupe Hidalgo" or contrary to article 6 of the Constitution or the 14 amendment to the Constitution of the United States. The treaty was made prior to any State law of the State of California. We believe that our land is a portion of the Temecula grant, which we believe is one of the grants referred to in the provisions of said treaty in the following words out of the protocol of the treaty--------

"2d. The American Government, by suppressing the Xth article of the treaty of Guadalupe, did not in any way intend to annul the grants of lands made by Mexico in the cedded territories. These grants, notwithstanding the suppression of the article of the treaty, preserve the legal value which they may possess, and the grantees may cause their legitamate titles to be acknowledged before American tribunals".

14863

EXHIBIT B (cont'd)

"Conformably to the law of the United States, legitimate titles to every description of property, personal and real, existing in the ceded territories, are those which were legitimate titles under the Mexican law in California and New Mexico up to the 13th of May, 1846, and in Texas up to the 2d. of Mar. 1836".

There is no question in our minds about what was intended by Mexico and the United States when they agreed that the values possessed by the grants be preserved and that there would be no change in the status of the title, including the following values or rights--

1. The right to use our land freely and exclusively.
2. The right to appropriate it to such use or cultivation as suits us.
3. The right to have freedom from molestation.
4. The right not to be disturbed in the enjoyment of the same.
5. The right that no one will institute suit against us.

Smith on Elementary Law, page 80, chapter 7, top of page, quote-

"The constitution statutes and ordinances of the several states and their sub-division are inferior in rank to the federal constitution and the valid statutes and treaties of the United States, and no law of a particular state has any force if it is inconsistent with the constitution, valid statutes and treaties of the United States."

Again, Smith on Elementary Law, page 8, near middle of page, quote-

"As treaties are thus made a part of the law of the land in the United States the international law to the extent that it is declared within treaties entered into by the United States is incorporated into the municipal law of the United States, and offences by persons against it and the rights of persons arising under international law adjudged in the municipal courts in accordance with the precepts of that law".

See Wilson, pp 12, 13; and Bowman pp 47, 48; American Law and Procedure, vol. 12, page 347, par. 349, quote-

"A state may not interfere with any private right derived expressively or impliedly from the federal constitutions laws or treaties".

The following are quotations from, The Constitution of the United States annotated and revised and authorized by congress, including supreme court decisions up to 1952. On page 703, quote--

"But a state statute enacted subsequently to a Federal Grant cannot be given effect to vest in the state rights which wither remained in the United States or passed to its grantee".

On page 416 -- quote --

"It must always be borne in mind that the constitution, laws and treaties of the United States are as much a part of the law of every state as its own local laws and constitution".

Page 438--a little over half way down the page--quote--

"It is, of course true that even treaties with foreign nations will be carefully construed so as not to derogate from the authority and jurisdiction of the states of this nation, unless clearly necessary to effectuate the national policy, but state laws must yield when it is inconsistent with or impairs the policy or provisions of,

EXHIBIT B (cont'd)

a treaty or of an international agreement. Then, the powers of the state to refuse enforcement of Rights, based on foreign law, which runs counter to public policy of the form XXX must give way before the superior Federal policy evidenced by a treaty or international compact or agreement."

At the bottom of same page--

"No state can rewrite our foreign policy to conform to its own domestic policies; power over external affairs is not shared by the states; it is vested in the National Government exclusively. It need not be exercised so as to conform to state laws or state policies whether they be expressed in Constitutions, statutes or Judicial decrees".---

On page 428, same book, near middle of page--

"The fact is none the less that no treaty of the United States nor any provision thereof has ever been found by the court to be unconstitutional. The most persistently urged proposition in limitation of the treaty making power has been that is must not invade certain reserved powers of the state, in view of the sweeping language of the supremacy clause, it is hardly surprising that this argument has not prevailed. Nevertheless, the court was forced to answer it as recently as 1923.-----------to the objection that the Treaty and implimenting legislation invades the acknowledged police power of the state in the protection of game within its borders, Justice Homes, speaking for the court answered: "Acts of Congress are the supreme laws of the land only when made in pursuance of the constitution while Treaties are said to be so when made under the authority of the United States."

For many years we have used our land and water freely and exclusively, appropriating to such cultivation and use as suited us. We believe that under the provisions of the Title granted by the California Mexican Government, ratified by both the governments of the United States and Mexico, as shown by the Treaty protocol attached hereto, that we are not subject to any other law of the state of California of lessor rank.

Our lands are benefited by streams that flow over, in and thru our lands; many of them are below the surface. We have used these streams for irrigation and cattle purposes on our grant land. Many parts of our land are sub-irrigated, more in wet years than in dry.

A statement of facts relative to water use on our land--

Lot 77, River water sub-irrigates for pasture used for cattle many years.

Lot 76, Water from river sub-irrigates by near surface streams; when the river rises, the water in them also rises. A 450 foot well not used at present.

Lot 85 has small spring used for watering cattle, 10 acres sub-irrigated.

Lot 86--large spring, used in past to irrigate 4 or 5 acres, water cattle for 20 years.

2¼ acress--no development.

We expect to freely use our water rights more extensively in the future as 85% is suitable for irrigation for alfalfa.

EXHIBIT B (cont'd)

As all of our land is in the Santa Marguerita Water shed in the Temecula Grant, we claim all the water rights that we possess by virtue of all matters of Record, including the action of Upper California Mexican Government prior to 1846, and by virtue of the treaty with Mexico called Guadalupe Hidalgo in its disposal of grants of land in the protocol thereof, and by virute of all matters of Record in California since the Treaty.

We have used our land and water freely and exclusively in the past and claim the right to do so in the future.

We rely upon the forgoing and such other evidence as we may hereafter produce.

As we are grantees to a portion of the Temecula Grant, we believe, as stated in the Treaty, that we can cause our legitimate titles to be acknowledged before an American tribunal.

The above statements and references are taken in substance from the filed answer and supplementary answer of Urban K. Tarwater and Rose C. Tarwater who are interested with us in Farm Lots 76, 77, 85 and 86 as stated above and we refer to the documents filed by them as a part of our answer.

WHEREFORE, these defendants pray that plaintiff take nothing against them by reason of the Complaint and Supplementary and Amendatory Complaint on file herein; that said Complaint be dismissed as against these defendants; that defendants' right to water, as hereinabove set forth, be quieted as against the plaintiff and against all other defendants in this action; and for such other and further relief as the Court may deem proper.

/s/ Benjamin Wylie Tarwater

/s/ Elsa L. Tarwater

Defendants in propria persona

Dated: 25 Aug 58  B.W.T.
       25 Aug 58  E.T.

14907

Aug 30 1958
Murrieta Calif

J Lee Rankin;
Solicitor General
Room 332 - 325 W F St
San Diego Calif.

Dear Sir;

On about aug 15-th I mailed you four copies of an answer that I prepared for Benjamin Wylie Tarwater and Clara Irene Tarwater who are stationed in Germany with the air forces. I signed these names by me.

I have just recieved form them (one answer) two copies of that answer signed by them in person. I am enclosing these copies herewith

Yours Respect
Urban K Tarwater