FILED
NOV 10 1958
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By [signature] DEPUTY CLERK

UNITED STATES DISTRICT COURT
IN AND FOR
SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

UNITED STATES OF AMERICA,
Plaintiff,

v.

FALLBROOK PUBLIC UTILITY DISTRICT, et al.,
Defendants

No. 1247-SD-C

SUMMARY OF EVIDENCE FOR October 7, 8, 10 & 14, 1958.

4850

Copy read

Testimony pertaining to a time study of the area as compared to time devoted to the investigation of other comparable areas. (Tr. Vol. 28, pp. 2628 to 2654).

Textbooks: Testimony regarding books and other studies consulted by witness (Tr. Vol. 28, pp. 2654 to 2656).

(1) The terms "clay", "sand", "silt", "gravel", are all related back to a size classification (Tr. Vol. 28, p. 2664)

(2) Specific yield and permeability (Tr. Vol. 28, pp. 2664 to 2665).

(3) Porosity and testimony as to time standards used in arriving at the specific yield factors (Tr. Vol. 28, p. 2665 to 2666).

(4) Asymptotic curve: A curve against which one can plot time against specific yield during a course of specific yield determinations in the laboratory, and after a period of approximately one month the change of specific yield of values along the asymptotic curve will be of such small magnitude that they are within the limits of experimental error (Tr. Vol. 28, p. 2667). A diagram used by witness making explanation (Tr. Vol. 28, pp. 2668 to 2672).

Testimony as to the difference between specific yield of a material and the rate at which water will drain from material (Tr. Vol. 28, p.2672 - 2674).

Testimony as to studies made showing the correlation, if any, between specific yield and the specific capacity of wells in designated area (Tr. Vol. 28, p. 2676 - 2677 - 2679). Further discussion as to the distinction between specific yield and permeability (Tr. Vol. p. 2688 - 2693).

Testimony as to tests used in determining permeability (Tr. Vol. 28, p. 2693 to 2694).

(1) Estimates of the permeability of the materials in the Upper Santa Margarita River watershed (Tr. Vol. 28, p. 2695).

(2) Basis for estimating specific yield (Tr. Vol. 28, pp. 2695 - 2696).

(3) Testimony as to the terms "permeability" and "transmissibility" (Tr. Vol. 28, p. 2697 - 2700).

(4) Wells observed by witness in formation of estimate as to specific yields (Tr. Vol. 28, p. 2701 - 2703).

Testimony pertaining to the movement of ground water from older continental deposits (Exhibit #15) (Tr. Vol. 28, pp. 2704 - 2710).

Statement of issue by Mr. Moskovitz, "Now, it is the position of the State of California that on the information available, that of any geologist or hydrologist or engineer, can look at it. It is not proper to conclude that the large area which is colored (orange) on Exhibit 15 . . . that large area of older continental deposits has under it waters that are part of the stream." (Tr. Vol. 28, p. 2715).

Testimony by witness as to the effect of pumping wells in lowering of water levels in the lower part of the valley "to the point that stream flow of rising water in the Temecula River would be greatly reduced or cease altogether." And basis for conclusion of witness without "knowing a value for permeability." Explanation made by diagram (Tr. Vol. 28, p. 2719 - 2720).

(1) The Wildomar fault (Tr. Vol. 28, p. 2726).

(2) The Pauba well readings (Tr. Vol. 28, p. 2728).

(3) The Studley well (Tr. Vol. 28, p. 2728).

(4) Source of information as to pump tests (Tr. Vol. 29, p. 2752 - 2754).

(5) Water level in the Pauba well as compared to that of other wells drilled in the recent alluvium and reason for this phenomena (Tr. Vol. 28, p. 2755 - 2758).

(6) Nature of deposits in area of Pauba well (Tr. Vol. 28, p. 2758).

(7) Permeability of area as reflected in movement of ground water (Tr. Vol. 28, 2772 - 2779).

Testimony as to the effect of pumping wells from the older continental deposits on the water table in Pauba Valley (Tr. Vol. 29, p. 2783 - 2786).

Wildomar Fault zone: Testimony as to fault zones designated as Wildomar, Willard, and Elsinore; and the location of the Wildomar Fault zone (Tr. Vol. 29, p. 2796 - 2797).

Terwilliger Valley: Testimony as to designation of the same area as Anza Valley (Tr. Vol. 29, p. 2798).

Ground water storage capacity, method of determining (Tr. Vol. 29, p. 2799 to 2803).

(1) Testimony as to the depth of alluvial deposits (Tr. Vol. 29, p. 2802 - 2809).

(2) Testimony as to wells studied in making water level contours (Tr. Vol. 29, p. 2819 - 2820).

(3) Well logs for wells drilled in Terwilliger Valley (Tr. Vol. 29, p. 2820).

(4) Data available for preparation of Exhibit #17 as it indicates ground water contours in the area south of Santa Gertrudis and north of Pauba (Tr. Vol. 29, p. 2823 - 2826).

(5) Testimony as to water level data available regarding Domenigoni Valley (Tr. Vol. 29, p. 2826 - 2831).

Water level contours: Discussion as to areas selected by witness wherein water level contours were prepared (Tr. Vol. 29, p. 2831 - 2838).

Capacity of ground water storage unit: Testimony as to the mathematical computation of multiplying the surface area times the thickness times the specific yield. (Tr. Vol. 29, p. 2839 - 2842).

Testimony as to the phenomenon of rising water (Tr. Vol. 29, p. 2843 - 2846).

(1) Coahuila Valley (Tr. Vol. 29, p. 2845).

(2) Oak Grove Valley (Tr. Vol. 29, p. 2845).

(3) Diamond Valley (Tr. Vol. 29, p. 2845).

(4) Wilson Valley (Tr. Vol. 29, p. 2845).

(5) Vail Dam Area (Tr. Vol. 29, p. 2845).

(6) Pauba Valley (Tr. Vol. 29, p. 2846).

Water measurements in 1957 (Tr. Vol. 29, p. 2849 - 2852).

Pumping from wells as it effects points of rising water (Tr. Vol. 29, p. 2853 - 2855).

Inferred water level contour: Testimony as to the meaning of (Tr. Vol. 29, p. 2863 - 2865).

Exhibit #15: Testimony as to those portions of older continental deposits which are in hydrolic continuity with the stream and meaning of the phrase (Tr. Vol. 29, p. 2867 - 2873).

Explanation of Exhibits #15, #16, and #17

(1) Approved by the U.S. Geological Survey (Tr. Vol. 30, p. 2882).

(2) Symbols indicating locations of wells and the process of selecting wells and the locations of wells selected as a basis for the data used by the witness in his testimony (Tr. Vol. 30, p. 2889).

(3) Questions by Mr. Sachse regarding Exhibit #16C and Exhibit 15 (Tr. Vol. 30, p. 2903 - 2910).

Hydrologic continuity: discussion as to areas considered to be in "hydrolic continuity" with the Santa Margarita River System (Tr. Vol. 30, p.2912 - 2921).

By Mr. Krieger

Testimony as to the number of "active wells" in the Murrieta Basin (Exhibit #17) and the studies that have been made of such wells (Tr. Vol. 30, p. 2921 - 2927).

Testimony as to pumping tests in Murrieta storage unit basin as shown on Exhibit 17 (Tr. Vol. 30, p. 2928 - 2933).

Exhibit #16A, 17 & 18: Testimony as to data used in preparing these exhibits (Tr. Vol. 30, p. 2934 - 2943).

Testimony as to the effect of the pumping of the Pauba well in the Pauba basin on the Studley well (Tr. Vol. 30, p. 2951 - 2953).

Testimony that the rising water in the Pauba Valley has moved downgrade toward the lip of the canyon since 1950 (Tr. Vol. 30, p. 2953 - 2954).

The testimony regarding the effect of the pumping of the Pabua well on wells outside the Pauba Valley (Tr. Vol. 30, p. 2954 - 2971).

Testimony as to whether or not the rate of recharge has an effect upon the drawdown of a well (Tr. Vol. 30, p. 2974 - 2978).

Testimony as to whether or not natural stream run-off is taken into account in determining what the level of the ground water basin is or is going to be (Tr. Vol. 30, p. 2982 - 2987).

A discussion of the question as to whether or not pumping would destroy a basin (Tr. Vol. 30, p. 2989 - 2991).

Testimony as to the availability of data to demonstrate that the rising water has been reduced by pumping (Tr. Vol. 30, p. 2996 - 2998).

Testimony as to whether or not water seeps through the Wildomar fault and the question as to whether or not that fault is a barrier to the movement of ground water (Tr. Vol. 30, p. 2999 - 3000).

Testimony as to whether or not the pumping in the Pauba well would affect a shallow well penetrating only the younger alluvium (Tr. Vol. 30, p. 3000 - 3003).

Testimony as to the effect of pumping in the Pauba well on the Studley Well and the factors to be taken into consideration in determining that issue such as the depth of the Studley Well, the degree of interconnection between the lenticular deposits in the ground water basin (Tr. Vol. 30, p. 3001 - 3003).

Testimony pertaining to the capacity of the Pauba well (Tr. Vol. 30, p. 3005 - 3007).

Plaintiff's Exhibit #16: Testimony as to information that was used in compiling the water level profile and also source of information to use in preparation of plaintiff's Exhibits #15 & #17 as to water contours (Tr. Vol. 30, p. 3010 - 3013).

Direction of water movement: Testimony as to whether or not ground water will move in a direction different from that of surface water and the effect of faults, fractures, and fissures on the movement of ground water (Tr. Vol. 30, p. 3015 - 3016).

Testimony pertaining to the physical condition of the river channel in Oak Grove Valley in an area described as 8S, 1E, Section 18 (apparently an erroneous description) the area after the stream leaves the Vail reservoir and the physical characteristics around the Wildomar fault (Tr. Vol. 30, p. 3022 - 3031).

Studley Well: Testimony respecting the location of this well (Tr. Vol. 31, p. 3045 - 3046).

Water levels: Description of wells referred to and used for purposes of computation in determining water levels and specific yields (Tr. Vol. 32, p. 3046 - 3047).

Exhibit #16A: Discussion of the well of log described as located 8S, 2W, Section 12, H.1 (Tr. Vol. 31, p. 3049 - 3053).

Plaintiff's Exhibit #16A-46: Discussion of well described as located 8S, 2W 11-J5 (Tr. Vol. 31, p. 3053 - 3055).

Discussion of well logs of other described wells (Tr. Vol. 31, p. 3056 - 3063).

Water contour levels: Plaintiff's Exhibit #13, explanation of exhibit and discussion of "hydrolic gradient" (Tr. Vol. 31, p. 3069 ).

Plaintiff's Exhibit #15: Testimony regarding ground water movement (Tr. Vol. 31, p. 3069 - 3075).

Basement complex: Testimony as to the depth of the basement complex and nature of the alluvium in the Pauba Valley.(Tr. Vol. 31, p. 3075 - 3080).

Testimony regarding Murrieta Valley (Tr. Vol. 31, p. 3081 - 3087).

Ground water movement as affected by the Wildomar fault and the Elsinore fault (Tr. Vol. 31, p. 3095 - 3097).

Testimony as to the limits of the investigation made by the witness and the specific objectives of his study being 3 in number to show the source, the occurrence and movement of ground water (Tr. Vol. 31, p. 3100).

Plaintiff's Exhibit #16:

(1) Testimony regarding a spring described as located in the south half of Section 19, Township 8S, Range 1E (Tr. Vol. 31, p. 3101).

Exhibit #17: Testimony regarding a well located in Nigger Valley described as being in Section 24, Township 8S, 1W, indicated on Exhibit #16 as 8/124B1, also reference made to a well as shown on Map 17 designated 8/1-19Q2. Also testimony regarding the Quarry well (Tr. Vol. 31, p. 3102 - 3104).

(1) The approximate position is in the SW¼ of Section 19, 8S, 2W, SW¼ (Tr. Vol. 31, p. 3105).

(2) Location of well designated on maps.

Testimony regarding well located east of the Vail dam indicated on Plaintiff Exhibit #15 as 13-K (K-1, Township 8S, Range 1W) (Tr. Vol. 31, p. 3106 - 3107).

Testimony regarding location of basins and the areas included therein; determination of depth by inspection of well logs and field inspection of the geology and hydrologic conditions (Tr. Vol. 31, pp. 3108 - 3110).

(1) Description of basin No. 5 (Tr. Vol. 31, p. 3108 - 3109).

(2) Testimony regarding basin No. 4 (Tr. Vol. 31, p. 3110).

Testimony regarding the location of the Quarry well (Tr. Vol. 31, p. 3111 - 3112).

Testimony regarding the Pauba well (Tr. Vol. 31, p. 3124).