FRED W. NEW and KATHRYN A. NEW
Defendants in propria persona
562 South Girard St.
Hemet, California

FILED

NOV 19 1958

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,
                Plaintiff,
        v.
FALLBROOK PUBLIC UTILITY
DISTRICT, ET AL,
                Defendants.

CIVIL NO. 1247- SD - C

ANSWER OF DEFENDANTS

FRED W. NEW and
KATHRYN A. NEW

The defendants, FRED W. NEW and KATHRYN A. NEW each severing from their co-defendants and each for himself or herself alone, in answer to the Complaint and Supplementary and Amendatory Complaint on file herein, admit, deny, and allege:

ANSWER TO COMPLAINT AND SUPPLEMENTARY AND
AMENDATORY COMPLAINT

These answering defendants hereby incorporate by reference all of the allegations contained in the answer to said Complaint and Supplementary and Amendatory Complaint filed in this case by Newton T. Bryant and Willie Mae Bryant (excepting only Paragraphs I and II of the portion thereof entitled "Affirmative Statement of Rights") and make each and all of said allegations a part of this answer the same as if herein set forth at length.

AFFIRMATIVE STATEMENT OF RIGHTS

These defendants own 80 acres of land in Riverside County, California, and within the watershed of the Santa Margarita River, more particularly described in the document attached hereto, marked Exhibit A, which is hereby incorporated by reference as a part of this statement.

15218

## AFFIRMATIVE STATEMENTS OF RIGHTS

### I.

These defendants own (80) eighty acres of land in Riverside County, California within the watershed of the Santa Margarita River, more particularly described in the document attached hereto, marked Exhibit A, which is hereby incorporated by reference as a part of this statement.

A. GEOLOGY - Waterbearing characteristics of underground formations.

The lower portion of the ranch consisting of approximately 15 acres is an alluvium formation made up of gravel, sand and silt. It is generally unconsolidated and occurs as a valley fill. The elevation is 2350 to 2400 feet and this recent alluvium, the principle source of ground water in the area is typical of the highland basins.

The balance of the ranch is made up primarily of Igneous Rock, and to a lessor extent Residuum. The Residuum is a residual material resembling sandy clay. It is a product of the decomposition and disintegration of underlying crystalline rock in situ. It is somewhat permeable and waterbearing, and is a locally important source of percolating ground water.

The undifferentiated igneous rock formation is made up of granites, igneous, metamorphic, and cemented sediments which are practically non-waterbearing. This impermeable material allows only limited quantities of water to be obtained from the fractures and joints in the rocks of highly weathered zones. This source supplies some of the wells and springs in this area.

As indicated above, approximately 15 acres of the lower and westerly portion of the property possibly overlies the east boundary of the Tucalota Basin. The basin is bounded on the north and south by igneous rocks, and on the east and west by residual soils formed upon igneous rocks. A prominent northwesterly trending fault crosses the lower end of the basin, which probably acts as an effective water barrier. Basin fill is composed of recent alluvium underlain by igneous basement rock. Wells not on the defendants property are supplied by ground water in the alluvium. The basin is drained by usually dry Tucalota Creek, which is an intermittent stream flowing only after heavy precipitation westerly into Los Alamos Valley. The surface area of the entire basin is only about 260 acres, and could have no appreciable

15219

effect on the stream flow of the Santa Margarita River.

B. WATER FACILITIES

At the present time there is a well approximately 40 feet deep on the property which has been providing a supply of domestic and livestock water for a considerable period of time. Also situated on the land is a developed spring supplying a limited amount of water. The spring of ancient origin as a source of water is indicated by the Indian artifacts in close proximity. The defendants expect to develop water for larger numbers of livestock and all irrigable acres on the property in the future.

C. LAND USE

The land owned by the defendants has for many years been cropped to hay and grain, and grazed by livestock. It is being utilized at the present time for the same purpose. The future development of the property, a plan already in operation, will consist of pasturing cattle on the rangeland, and the development of a commercial dairy, or dry feed lot for beef cattle with a poultry sideline. This will require the development of soil and water conservation practices and the cropping of 40 acres of alfalfa and/or permanent pasture. The defendants tillable soil consists of 33 acres of Class II and III land and 7 acres of Class VI land, all suitable for modern irrigation practices and the production of field crops common to the area. The water requirements (water duty) per acre will average due to the light condition of the soil, of an amount not less than 4 acre feet annually, or a total annual consumption of 160 acre feet for irrigated crops, plus livestock requirements.

D. WATER USES

To carry out the sound farm management practices of the defendants, it is necessary to use water in the following reasonable and beneficial manner:

1. Domestic use (household, family garden and poultry)
2. Commercial livestock use (stock watering--15 to 30 gal. per head-- 200-500 head)
3. Irrigation use (4 Ac. Ft. on 40 Acres, total 160 Ac. Ft. annually)
4. Soil and water conservation use (development of stock ponds, dams, wells, springs and seeps)

15220

II.

A. **WATER RIGHTS**

These answering defendants assert that they have the right to the use of all of the water produced on, extracted from, and beneath the lands owned by these defendants in a reasonable and beneficial manner for domestic, irrigation, livestock and other agricultural purposes as follows:

1. Right of overlying land owner to the use of underground percolating water (local water), or any water that rises or will rise in wells or springs now on the land, or to be developed in the future that can be used in a practical and profitable manner.

2. Riparian rights to the use of water flowing or contained in the known and defined subterranean channel of an unnamed creek, or any creek tributary to Tucalota Creek located on the defendants land.

3. Rights of overlying landowner and riparian rights to the use of water extracted from Tucalota Basin, or any subterranean basin beneath the land, the waters of which do not support or maintain the rivers or tributaries, and are not a part of the common water course or source of said rivers or tributaries as set forth in the complaint.

4. Right to the use of impounded diffused surface water and intercepted or collected ground and spring waters. Defendants also claim right to the use of water collected by the exercise of water reclamation and conservation practices as are now, or may be known, that do not substantially or permanently damage other users; also by soil conserving operations, such as soil erosion control dams of a regulatory nature, diversion ditches, gully plugs forming small reservoirs for fish and wildlife and stock tanks, which result in protection of the land for the general public welfare.

WHEREFORE, these defendants pray that plaintiff take nothing against them by reason of the Complaint and Supplementary and Amendatory Complaint on file herein; that said Complaint be dismissed as against these defendants; that defendants' right to water, as hereinabove set forth, be quieted as against the plaintiff and against all other defendants in this action; and for such other and further relief as the Court may deem proper.

15221

*Fred W. New*

*Kathryn A. New*
Defendants in propria persona

Date Oct. 27, 1958

15222

```
 1  KATHRYN A. NEW          )
                            )        EXHIBIT A
 2  FRED W. NEW             )
 3
 4  Property described in Riverside County as follows:
 5  The South half of the Southeast quarter of Section 6, Township 7 South,
    Range 1 East, San Bernardino Base and Meridian:  Consisting of 80 acres more
 6  or less.
 7  EXCEPTING therefrom that portion described as follows:  Beginning at the
    Southeast corner of Section 6 herein described; thence Northerly, on the
 8  Easterly line of said Section, 60 feet; thence Southwesterly, in a straight
    line, to the Southwest corner of the Southeast quarter of the Southeast
 9  quarter of said Section; thence Easterly, on the Southerly line of said
    Section, 1320 feet, to the point of beginning.
10
11
12
...
32
```

15223