HANS CHRISTENSEN and ZORA CHRISTENSEN
Defendants in propria persona
Rt. 1, Box 68
Romoland, California

# FILED

NOV 19 1958

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By M. O. Kessling
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL NO. 1247- SD - C |
| Plaintiff, | ANSWER OF DEFENDANTS |
| v. | HANS CHRISTENSEN and |
| FALLBROOK PUBLIC UTILITY DISTRICT, ET AL, | ZORA CHRISTENSEN |
| Defendants. | |

The defendants,   HANS CHRISTENSEN and ZORA CHRISTENSEN
each severing from their co-defendants and each for himself or her-
self alone, in answer to the Complaint and Supplementary and Amenda-
tory Complaint on file herein, admit, deny, and allege:

### ANSWER TO COMPLAINT AND SUPPLEMENTARY AND AMENDATORY COMPLAINT

These answering defendants hereby incorporate by reference
all of the allegations contained in the answer to said Complaint and
Supplementary and Amendatory Complaint filed in this case by Newton
T. Bryant and Willie Mae Bryant (excepting only Paragraphs I and II
of the portion thereof entitled "Affirmative Statement of Rights")
and make each and all of said allegations a part of this answer
the same as if herein set forth at length.

### AFFIRMATIVE STATEMENT OF RIGHTS

These defendants own    760   acres of land in  Riverside
County, California, and within the watershed of the Santa Margarita
River, more particularly described in the document attached hereto,
marked Exhibit A, which is hereby incorporated by reference as a
part of this statement.

15211

## AFFIRMATIVE STATEMENTS OF RIGHTS

### I.

These defendants own (760) seven hundred sixty acres of land more or less in Riverside County, California within or bordering on the watershed of the Santa Margarita River, more particularly described in the document attached hereto, marked Exhibit A, which is hereby incorporated by reference as a part of this statement.

### A. GEOLOGY - Waterbearing characteristics of underground formations.

The defendants property lies at an elevation of 1400 to 1500 feet. The north and east side of the SW $\frac{1}{4}$ Sec. 16 and the north side of SE $\frac{1}{4}$ Sec. 17 Township 6 S R 2 W is an impervious igneous formation of Domenigoni granodiorite. One fourth mile S of Southside of SW $\frac{1}{4}$ Sec. 16 is an area of Bedford Canyon formation that has been moderately metamorphosed and intruded by igneous material. South of the Bedford Canyon formation is an intrusive igneous block of the San Marcos Gabbro that is about 1 mile wide and 3 miles long in a semi-circle with about $1\frac{1}{2}$ miles of it touching Scott Road on the Southside of Sec. 18 and West $\frac{1}{2}$ of S side of Sec. 17.

Usually dry Warm Springs Creek, an intermittent stream flowing only after heavy precipitation, bisects Parcel I in a Southwesterly direction for about 3000 feet. The alluvium in trace amounts north of Scott Road deposited in narrow bands along the sides of Warm Springs Creek possibly will act as an individual underground water basin, whose water table elevation will be determined by the elevation where Warm Springs Creek flows over the San Marcos Gabbro, which acts as an effective water barrier, plus the necessary gradient for lateral flow through the alluvium. This independant water basin of limited area could have no appreciable effect on the stream flow of the Santa Margarita River. The wells in this area are recharged by precipitation upon the valley floor and percolation of run-off from the surrounding slopes.

None of the defendants land overlies the domenigoni Basin, which is situated more than a mile North of property listed as Parcel I, and is separated by Domenigoni Granodiorite. Spurs of granodiorite and a low alluvial divide separate Domenigoni Valley from Menifee Valley to the West in which Parcels II and III are located.

15212

1    The largest portions of the defendants land lying within the watershed
2  area is composed of sedimentary rock forming terrace deposits and older alluvium,
3  containing boulders to cobble sized fragments, gravels and sand.  The terraces
4  are generally flat, characterized by reddish-brown soils with older alluvium
5  dissected and rolling.  Wells tapping materials of this type have low yields
6  and are limited generally to domestic and livestock use.

7    A formation secondary in amount found on the property is classed as a
8  Residuum, a residual material resembling sandy clay which is a product of the
9  decomposition and disintergration of underlying crystalline rock in situ.  Re-
10  siduum is a minor source of ground water (local water) generally supplying only
11  domestic wells with percolating water.  Outcroppings of Domenigoni Valley Gran-
12  odiorite, ranging in composition from tonalite to granodiorite containing
13  oriented dark inclusions, but usually showing light colored boulders of dis-
14  intergration, and Bedford Canyon Formation containing Slates and Quartzites
15  are noted on the property in limited numbers.  Both of these formations are
16  generally impermeable and non-waterbearing, except along joints and fissures.
17  Where it is fractured and jointed, the formations supply small wells and springs
18  of limited capacity.

19  B.  WATER FACILITIES
20    The defendants land is in an average rainfall zone of 10-12 inches.
21  At the present time, there are 3 windmill wells 20 to 30 feet deep, which have
22  been supplying livestock water for a considerable period of time.  Also situated
23  on the land are 3 developed springs supplying a limited amount of water for
24  sheep and cattle.  The springs of ancient origin as a source of water is indicated
25  by the Indian Artifacts in close proximity.  The defendants expect to develop
26  water for larger number of livestock and all irrigable acres possible in the
27  future.

28    The defendants land is in a borderline area of the watershed, the
29  boundary of which crosses the land for a distance of 6,600 feet.  Two springs
30  situated in the Bedford Canyon slates on Parcel II are within 1200 feet of the
31  boundary, only 20 feet below the crest, and it is not believed that sufficient
32  watershed surface exists in that distance to completely feed the springs and

15213

that they are actually supplied from sources outside the watershed.  The springs are 50 feet higher in elevation than Warm Springs Creek, and do not flow from their source, are not a part of the common water course, or source of tributaries to Warm Springs Creek, and are, therefore, alleged not to be a part of this action.

C.  LAND USE

The land owned by the defendants has for many years, more than 75 years, been cropped to hay and grain, and grazed by livestock (sheep and cattle). It is presently utilized for the production of cereal grain and the pasturing of 200 to 300 head of cattle and/or 1500 to 2000 head of sheep.

Following in tabular form is a listing of parcels, which show a total of 760 acres legally described, either within or on the boundary of the Santa Margarita Watershed with 637 tillable acres farmed to grain. Of the 760 acres described, a total of 691 are in the watershed with 576 tillable acres producing crops. Utilizing only Class II, III and IV land that could be irrigated in a practical and profitable manner, with modern methods, a total of 538 acres is available within the watershed for this purpose.

| | Legally described | In SMWS. | Grain Prod. | In SMWS. | Class VI&VII | In SMWS. | Irrig. Pasture | In SMWS. | Land Class |
|---|---|---|---|---|---|---|---|---|---|
| Par. I | 320 Ac. | (320) | 229 | (229) | 91 | (91) | 201 | (201) | II,III,IV |
| Par. II | 360 Ac. | (335) | 340 | (316) | 20 | (19) | 330 | (306) | II,III,IV |
| Par. III | 80 Ac. | ( 36) | 68 | ( 31) | 12 | ( 5) | 68 | ( 31) | II,III |
| Total Ac. | 760 | (691) | 637 | (576) | 123 | (115) | 599 | (538) | II,III,IV |

Following approved methods and practices, the climate and soils in the area produce field crops such as alfalfa, cereal grains, field corn, beans, milo, sudan grass, permanent pasture and truck crops, such as, potatoes, melons and others abundantly.

In the interests of continuing the development of the property for increased livestock grazing, and to support the drylot fattening of cattle already in operation, it is necessary to develop all irrigable portions of the property to its fullest extent. Devoting the 538 acres to field crops, alfalfa, and/or permanent pasture, the potential irrigation requirements for water would require a reasonable diversion (water duty) of not less than 4 acre feet per acre annually, or a total annual consumption of 2,152 acre feet,

1  plus the need for cattle herds and/or bands of sheep.

2     D.  WATER USES

3        To carry out the sound farm management practices of the defendants,

4  it is necessary to use water in the following reasonable and beneficial

5  manner.

6        1.  Domestic use (household, family garden and poultry)

7        2.  Commercial livestock use (stock watering--15 to 30 gal. per
                head) (200-300 cattle on pasture--1,000 feed lot
8                1500-2000 sheep on pasture)

9        3.  Irrigation use (4 Ac. ft. per acre on 538 acres, total 2,152
                ac. ft. annually)
10

11        4.  Soil and water conservation use (development of stock ponds,
                dams, wells, springs & seeps)

12

13                        II.

14     A.  WATER RIGHTS

15        These answering defendants assert that they have the right to the

16  use of all of the water produced on, extracted from, and beneath the lands

17  owned by these defendants in a reasonable beneficial manner for domestic,

18  irrigation, livestock and other agricultural purposes as follows:

19        1.  Right of overlying landowners to the use of underground percolating

20  water (local water), or any water that rises or will rise in wells or springs

21  now on the land, or to be developed in the future that can be used in a

22  practical and profitable manner.

23        2.  Riparian rights to the use of water flowing in or contained in

24  the known and defined subterranean channel of Warm Springs Creek, or any creek

25  tributary to Warm Springs Creek located on or crossing the defendants land.

26        3.  Rights of overlying landowner and riparian rights to the use of

27  water extracted from any independent subterranean basin beneath the defendants

28  land; the waters of which do not support or maintain the rivers or tributaries,

29  and are not a part of the common water course or source of said rivers or

30  tributaries as set forth in the complaint.

31        4.  Right to the use of impounded diffused surface water and

32  intercepted or collected ground and spring waters.  Defendants also claim right

to the use of water collected by the exercise of water reclamation and con-

servation practices as are now, or may be known, that do not substantially or

5215

1  permanently damage other users; also by soil conserving operations, such as

2  soil erosion control dams of a regulatory nature, diversion ditches, gully

3  plugs forming small reservoirs for fish and wildlife and stock tanks, which

4  result in protection of the land for the general public welfare.

5      WHEREFORE, these defendants pray, that plaintiff take nothing against

6  them by reason of the Complaint and Supplementary and Amendatory Complaint

7  on file herein; that said Complaint be dismissed as against these defendants;

8  that defendants right to water, as hereinabove set forth, be quieted as

9  against the plaintiff and against all other defendants in this action; and

10  for such other and further relief as the Court may deem proper.

11

12

13                                    Hans Christensen

14

15                                    Zora Christensen
                                      Defendants in propria persona

16  Date  Nov. 10, 1958

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

15216

HANS CHRISTENSEN )

ZORA CHRISTENSEN )

EXHIBIT A

Property described in Riverside County as follows:

Parcel I.   The Southeast $\frac{1}{4}$ of Section 17, Township 6 South, Range 2 West, San Bernardino Base & Meridian (160 Ac.) and the Southwest $\frac{1}{4}$ of Section 16, Township 6 South, Range 2 West, San Bernardino Base and Meridian (160 Ac.)  320 Acres more or less.

Parcel II.  The North $\frac{1}{2}$ of Section 18, Township 6 South Range 2 West San Bernardino Base & Meridian and the Northwest $\frac{1}{4}$ of the Southwest $\frac{1}{4}$ of Section 18, Township 6 South Range 2 West San Bernardino Base & Meridian consisting of 360 acres more or less.  Excepting therefrom lots 1, 2 and 3 of the Leon Mine.

Parcel III. The East $\frac{1}{2}$ of the Northeast $\frac{1}{4}$ of Section 13, Township 6 South Range 3 West San Bernardino Base and Meridian consisting of 80 acres more or less.

15217