

FILED
JAN 13 1959
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ Deputy Clerk

STANLEY MOSK, Attorney General
  of the State of California
ADOLPHUS MOSKOVITZ, Deputy Attorney General
Library and Courts Building
Sacramento, California
Telephone: HIckory 5-4711, Ext. 4574

Attorneys for Defendants in Intervention

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

  vs.

FALLBROOK PUBLIC UTILITY DISTRICT,
a public service corporation of the
State of California; et al.,

        Defendants,

PEOPLE OF THE STATE OF CALIFORNIA,

        Defendants in
        Intervention.

No. 1247-SD-C

TENTATIVE VIEWS OF
THE STATE OF CALIFORNIA
RESPECTING FINDINGS
ON GEOLOGY

      This memorandum sets forth the tentative views of the State of California respecting findings on geology on the basis of the evidence in this case as of December 19, 1958. These views are phrased as findings under 15 headings prescribed by the Court, and are submitted in response to the Court's request of December 19, 1958 (RT Dec. 19, 1958, pp. 6965-6979, 7027-7032).

1. Definitions

    The following are general (non-technical) definitions of some basic terms used in the evidence of groundwater geology

1.

5021

in this case:

(a) Permeability:

The capacity of water-bearing material to transmit water, measured by the quantity of water of a given temperature which will pass through a unit cross section of the material in a unit time under a given hydraulic gradient.

(b) Transmissibility:

The rate of flow of water, in gallons per day, through a vertical strip of an aquifer one foot wide having a height equal to the thickness of the aquifer, under a given hydraulic gradient.

(c) Specific Yield:

The ratio of (1) the volume of water a saturated soil will yield by gravity to (2) its own volume.

(d) Specific Capacity of a Well:

The number of gallons per minute of water produced by a pumping well per foot of drawdown.

(e) Groundwater Basin or Storage Unit:

The evidence in this case indicates that there is no single definition of groundwater basin or storage unit. In some instances the boundaries of a basin or a storage unit proposed by a party have been geologic features such as fault lines or contacts between different types of materials; in other instances they have been lines drawn to eliminate regions for which little information is available or which contain less than a specified saturated thickness of water bearing material. Thus, the boundaries have not necessarily been barriers to groundwater movement.

For purposes of this case, the term groundwater basin or storage unit is defined as an area containing

groundwater from which pumping would be apt to have a material effect on stream flow. Where the evidence is inconclusive at this time as to whether pumping from a particular area would or would not be likely to have a material effect on stream flow, that area will not be included within any groundwater basin or storage unit.

2. The major faults

   (a) Their locations

   The major faults and their locations are listed in Table B-2, State Exhibit L, Appendix B, B-40 and are shown on State Exhibit L, Plate 13B.

   (b) Their effects on the movement of groundwater

   The only major fault which, as such, has a significant barrier effect on the movement of groundwater is the Wildomar Fault. It greatly impedes the movement of groundwater from the area northeast of the fault into Murrieta Valley and Wolf Valley, although there is probably slow movement of a small, unknown amount of water through the fault. A small, unknown amount of water is forced to the surface by the fault in a line of springs located along the fault at the northeast edge of Murrieta Valley, and flows into Murrieta Valley. The fault apparently has no appreciable barrier effect on the underground movement of water in Recent alluvium near the junction of Pauba and Wolf Valleys, where such material is continuous across the fault.

   By impeding the underground movement of water horizontally in a southwesterly direction, the Wildomar Fault is a contributing cause of the zones of confined water in Pauba Valley and Santa Gertrudis Valley, as depicted on State Exhibit L, Plates 11B and 16. The

3.

existence of these zones of confined water is evidenced by the fact that deep wells drilled into such zones have artesian flow or water levels higher than the free groundwater table in their vicinity.

Other faults, such as the Willard or Elsinore Fault, have uplifted mountain ranges of basement complex thus preventing underground water movement past them. But in those instances it is the mountain range which is the barrier, rather than the fault itself.

3. <u>The principal kinds of geologic materials in the Santa Margarita watershed of significance to the availability of groundwater</u>

They are as follows:

(a) <u>Recent or younger alluvium</u> is composed of sedimentary materials which in the recent geologic past have been, and which presently are still being, deposited on top of older materials in the valley areas by stream action. It is composed of a complex of clay, silt, sand and gravels of all conceivable combinations and gradations. Strata of the same type of material are not continuous over extensive areas. Instead the more permeable sand and gravel aquifers generally occur in stringers or lenses surrounded by lenses of less permeable deposits. These lenses cannot commonly be correlated between wells even a few hundred feet from each other.

(b) <u>Older continental deposits</u>, also referred to in this case as terrace deposits, older alluvium and undifferentiated upper Pleistocene sediments, are also sedimentary materials. Like Recent alluvium, they were deposited by stream action and are made up of lenses or stringers of sand, gravel, boulders, silt and clay which are not

4.

continuous over large areas. But since they were deposited in earlier geologic times than Recent alluvium and thus have been subject to weathering over a longer period of time, they are generally more compacted and cemented and contain a higher percentage of residual clays than Recent alluvium.

(c) <u>Residuum</u> is basement complex (described in No. 3 (e) below) which has been disintegrated or decomposed in place, with little or no lateral movement, through the processes of physical and chemical weathering. The depth to which such weathering has occurred in the Santa Margarita River watershed varies from only a few inches below the surface in many areas to more than 100 feet at points in the Fallbrook area. However, only where the depth exceeds 15 feet is this weathered basement complex referred to as residuum in these findings. Where it is 15 feet deep or less, it is referred to as basement complex.

(d) <u>Tertiary sediments</u> include a number of sedimentary deposits of still older age than older continental deposits and are found principally in the coastal area of the Santa Margarita watershed, where they largely form the sides and bottom of the coastal groundwater basin.

(e) <u>Basement complex</u> is a general term which includes many kinds of hard, consolidated rocks of igneous and metamorphic origin. It is exposed mainly in the mountainous and highland areas in the Santa Margarita watershed, and is the basic material out of which the types of materials described in the preceding paragraphs have been derived.

4. <u>The areas where the five principal types of materials described above are located</u> are shown on State Exhibit L, Plates 13A and 13B (areal geology maps).

(a) Recent or younger alluvium is marked thereon with the

5.

5025

symbol "Qal".

(b) Older continental deposits are marked thereon with the symbols "Qtoa" and "Qps".

(c) Residuum where more than 15 feet in depth is marked thereon with the symbol "Qr".

(d) Tertiary sediments are marked thereon with the symbols "Tmso", "Telj" and "Tmz".

(e) Basement complex includes all the other types of materials appearing thereon, except those marked on Plate 13A as "Qtm" and "Qm". "Qtm" and "Qm" are of no importance and need not be considered in this case because they are of small area and are not sources of water.

5. <u>The permeability of the geologic materials</u> listed in No. 3 above is as follows:

(a) Recent or younger alluvium generally has moderate to high permeability.

(b) Older continental deposits generally have low permeability although they may contain some strata of sand and gravel of moderate permeability.

(c) Residuum generally has a permeability even lower than older continental deposits.

(d) Tertiary sediments are generally of very low permeability.

(e) Basement complex is impermeable and non-water bearing except in joints, fissures and fractures.

6. <u>The characteristics of the geologic materials listed in No. 3, above, in connection with the storing and yielding of groundwater</u> are as follows:

(a) Recent or younger alluvium will generally yield groundwater readily and is readily recharged from precipitation and stream flow. Most of the large producing

6.

5028

wells in the Santa Margarita watershed are located in areas of Recent alluvium. Since Recent alluvium is the most permeable type of material and flanks the important streams in the watershed, wells tapping this source would be most apt to affect the flow of these streams materially.

(b) While large quantities of water are probably stored in the older continental deposits, these deposits generally yield groundwater much less readily than Recent alluvium. A few deep wells drawing their supply from these deposits have good yields. However, because of the generally low permeability of older continental deposits, even when water is extracted from them recharge from precipitation and stream flow is probably slow. There has been relatively little development of groundwater in areas where older continental deposits are exposed on the surface. From the evidence in this case it cannot be concluded now that pumping from older continental deposits either has affected or in the future would affect stream flow materially. On the other hand, it cannot be predicted that heavy pumping would not have a material effect on stream flow. That question is left open for future determination.

(c) Residuum is a minor source of groundwater and yields small quantities very slowly compared to Recent alluvium. In some areas, such as around Fallbrook, the smaller yields of groundwater from residuum constitute a locally important supply. However, the evidence in this case indicates that, because of the very low permeability of residuum, pumping of groundwater from it has an insignificant effect on the flow of the streams in the watershed.

(d) Tertiary sediments are generally non-water bearing. Certain of these sediments contain some connate groundwater

7.

but it is of poor quality and is generally not considered usable.

(e) Basement complex has no capacity to store or yield groundwater, except for very limited amounts in joints, fractures and fissures. Pumping of such limited amounts can have little or no effect on stream flow.

7. Groundwater basins or storage units.

Under the definition of the term groundwater basin or storage unit as set forth in No. 1(e) above, and the findings as to the characteristics of the various types of materials as set forth in No. 6 above, only areas where Recent alluvium exists on the surface are included within groundwater basins. For purposes of these findings the various basins are those delineated on State Exhibit L, Plates 11A and 11B, with the exception that the areal extent of French and Los Alamos Basins should be limited to the areas of Recent alluvium within French and Los Alamos Valleys as depicted on State Exhibit L, Plate 13B. These groundwater basins are the areas of groundwater storage where pumping is apt to have a material effect on stream flow of the Santa Margarita River system.

8. The usable storage capacity of the groundwater basins.

The significance of the groundwater basins referred to in No. 7 above is that they are areas having groundwater storage where, because of the nature of the deposits and their location relative to the streams, pumping is apt to have a material effect on stream flow. Precise figures as to the estimated storage capacities of these basins are not significant, unless a finding is to be made as to the safe annual yield of a particular basin. Hence no finding is herein made as to either the gross or usable

8.

storage capacities of the groundwater basins referred to above.

9. Confined waters.

The zones of confined water in Pauba Valley, Santa Gertrudis Valley and other smaller valleys along the northeast side of Wildomar Fault, as depicted on State Exhibit L, Plates 11B and 16, are zones in the older continental deposits underlying the Recent alluvium where available information from wells indicates that the groundwater is under pressures. These zones probably extend laterally northeast and southwest outside the boundaries of the valleys concerned, but there is no well information from which the extent can be determined. In each of these valleys, the pressure condition is caused by 3 principal factors: (1) the barrier effect of the Wildomar Fault, as stated in No. 2(b) above; (2) a confining bed, composed of interlacing lenses of low permeability in the older continental deposits, which greatly restricts upward movement of water from the materials under these lenses to the Recent alluvium above, where the groundwater is unconfined and not under pressure; and (3) a "forebay" area upstream at higher elevations where downward percolation of water from the surface keeps the aquifers in the zone of confined water full.

If, in these valleys, the zone of confined water were to lose its pressure characteristics by reason of heavy pumping and thus be receptive to recharge from above the confining bed, the confining bed would greatly restrict downward movement of water from the Recent alluvium to the zone of confined water. As a consequence, recharge through the confining bed probably would be slow and the effect on

9.

stream flow from such pumping would be less than it would be in the absence of confinement.

At the present time, recharge to the zones of confined water probably occurs from precipitation and run-off percolating into the ground in upstream areas which constitute the "forebay" for the confined zones.

10. Government Storage Unit No. 4.

Groundwater Storage Unit No. 4, as delineated by the United States on Plaintiff's Exhibit 17, is made up principally of older continental deposits. Under the definition of the term groundwater basin as set forth in No. 1(e) above, and the findings as to the characteristics of the older continental deposits as set forth in No. 6(b), Government Storage Unit No. 4 is not a groundwater basin except as portions of it may be included in the basins referred to in No. 7 above.

The Roripaugh Well.

The Roripaugh well, Well No. 8S/3W-26J1, is located within the areal boundaries of the Santa Gertrudis Basin as delineated on State Exhibit L, Plate 11B, but draws most of its water supply from the zone of confined water in the older continental deposits underlying the Recent alluvium. There is no evidence on the extent to which pumping of this well affects the flow of Santa Gertrudis Creek. Because of the generally low permeability of older continental deposits, recharge to this well from the surface is probably slow. Therefore, it cannot be concluded now that such pumping does, or in the future would, materially affect the amount of stream flow of the Santa Margarita River system.

11. The gradient or slope of basement complex underlying

10.

Storage Unit No. 4.

There is not sufficient evidence to determine the gradient, slope, or configuration of the basement complex under Storage Unit No. 4. On the basis of the findings above, the slope is not important.

(However, in specific answer to the Court's questions (RT Dec. 19, 1958, pp. 6977-6978) the following comments are submitted:

(a) The slope of the basement complex probably is generally from the east to west.

(b) To properly answer this question as to whether seismic surveys would locate basement complex at selected places it would be necessary to consult with a reputable geophysical surveying company. We have not undertaken to do this, inasmuch as we do not believe the results of such an investigation would be particularly meaningful in this case at this time.

(c) We do not know where in Storage Unit No. 4 the depth of older continental deposits to basement complex is 100 feet.

(d) There is no objection to estimating storage capacity in Storage Unit No. 4 on the basis of a thickness of 100 feet of water bearing material. However, the State believes that such an estimate would really be a guess because of lack of sufficient well logs in the area. The State agrees that total storage capacity in Storage Unit No. 4 is very large, probably much larger than the 280,000 acre feet estimated by the United States as being in the uppermost 100 foot water zone. But the storage capacity is of no particular significance as the issues have developed in this case.)

11.

5031

12. <u>The movement of groundwater in Storage Unit No. 4.</u>

    (a) <u>Direction.</u> Groundwater in Storage Unit No. 4 generally moves in a northeasterly to a southwesterly direction.

    (b) <u>Amount.</u> There is no evidence as to the amount of movement.

    (c) <u>Speed of movement.</u> There is no evidence as to the speed of the movement.

    (d) <u>Water level contours.</u> There are insufficient data to draw meaningful groundwater contours.

    (e) <u>Hydrologic connections of wells.</u> Groundwater in Storage Unit No. 4 is hydraulically inter-connected, but because of the generally low permeability of the older continental deposits the hydraulic continuity in Storage Unit No. 4 is probably much poorer than in Recent alluvium.

13. <u>Depletion of basins in areas of confined water.</u>

    (a & b) <u>Pauba and Santa Gertrudis Valleys.</u> As set forth in No. 9 above, the recharge to the zones of confined water under Pauba and Santa Gertrudis Valleys probably occurs from precipitation and run-off percolating into the ground in upstream areas which constitute the "forebay" for the confined zones. When pumping occurs from the confined zones in Pauba or Santa Gertrudis Valley, there is also probably some lateral movement of groundwater from the older continental deposits north and south of these valleys toward the pumped well.

    (c) <u>Murrieta and Wolf Valleys.</u> The evidence in this case does not indicate that there are zones of confined water in Murrieta Valley or Wolf Valley. Recharge of the groundwater pumped in these valleys comes principally from precipitation and stream run-off in them. Because of

the barrier effect of the Wildomar Fault, only a very small amount of recharge could be expected to come from the older continental deposits on the northeast side of the fault. Some of this small amount probably comes through the fault, and some comes from the line of springs along the fault on the northeast side of Murrieta Valley. To the extent that there is storage capacity in the ground at a given time and the flow of the springs is not consumed by phreatophytes, the flow from the springs at that time percolates into the Recent alluvium in Murrieta Valley.

14. <u>Salt water intrusion in the lower basin.</u>

(a) The evidence shows that salt water intrusion from the ocean into Ysidora sub-basin of the Santa Margarita Coastal Basin has occurred in the past and that a condition of salt water contamination still exists in some of the wells in that sub-basin. The cause of this intrusion was heavy pumping by the United States from wells in that sub-basin. This pulled the groundwater levels below sea level and created a reverse hydraulic gradient from the ocean to the downstream portion of the sub-basin.

(b & c) The intrusion can best be combatted by discontinuing pumping in the lower portion of the Ysidora sub-basin and moving the pumping to sub-basins further upstream. The United States is apparently doing this. The solution of the problem of salt-water intrusion and contamination is the responsibility of the United States alone. Since it was not caused by any other party to this case, it is not properly the subject of judicial relief.

13.

15. <u>Areas in which the State of California believes there is no material amount of groundwater feeding the streams or being fed by the streams in the Santa Margarita watershed.</u>

The State believes that all areas of basement complex, tertiary deposits and residuum, as found in No. 4 above, should be dismissed from this case insofar as groundwater is concerned, on the basis of a finding that extraction of groundwater in those areas does not and could not materially affect stream flow in the Santa Margarita River system.

On the other end of the scale, the State believes that the areas of Recent alluvium, as found in No. 4 above, should remain in the case, on the basis of a finding that extraction of groundwater in those areas is apt to affect stream flow materially.

With respect to the areas of older continental deposits, the evidence is inconclusive as to whether pumping of groundwater therefrom will or will not affect stream flow materially. There is no evidence that such pumping has thus far had such an effect. However, it is recognized that experience in the future might show that it does. Therefore, the State believes that the areas of older continental deposits, as found in No. 4 above, should be excluded from the case insofar as groundwater is concerned, on the basis that the evidence now before the Court is insufficient to support a finding that a material effect on stream flow will result from pumping in those areas. This would leave the way open to bring these areas in at a later date if future experience shows that the effect of pumping is material.

14.

5034

Dated: January 9, 1959.

        STANLEY MOSK, Attorney General
          of the State of California
        ADOLPHUS MOSKOVITZ
          Deputy Attorney General

By *Adolphus Moskovitz*
    ADOLPHUS MOSKOVITZ

Attorneys for Defendants in Intervention.

15.