1  BEST, BEST & KRIEGER
   Box 1028
2  Riverside, California

3  Telephone:  OV 6-1450

4

5  Attorneys for Defendants

6

7

8              IN THE UNITED STATES DISTRICT COURT

9               SOUTHERN DISTRICT OF CALIFORNIA

10                   SOUTHERN DIVISION

11  UNITED STATES OF AMERICA,         )
                                      )
12              Plaintiff,            )      NO. 1247-SD-C
                                      )
13  vs.                               )      RESPONSE TO QUESTIONS
                                      )      CONCERNING PROPOSED
14  FALLBROOK PUBLIC UTILITY DISTRICT, )     FINDINGS ON GEOLOGY
    ET AL,                            )
15                                    )
                                      )
16              Defendants.           )

17  ─────────────────────────────────

18         As counsel for a number of landowners in that part of

19  the Santa Margarita watershed above Temecula Gorge, we are con-

20  cerned with a limitation on the lands included within the final

21  judgment of this Court.  Such a limitation will not only reduce

22  the developable lands which are riparian to the Santa Margarita

23  stream system, and hence afford more water for those who are

24  truly riparian, but it will permit the owners of land within

25  the watershed who are not riparian to be relieved from the expense

26  and uncertainties that will attend all those who remain within

27  the continuing jurisdiction of this Court.  For that reason the

28  geological findings on which we have been asked to comment are of

29  paramount importance to our clients, and we make our proposals with

30  the objective of including within this Court's prospective decree

31  any of those persons whose lands are either riparian to the stream

32  system or whose pumping activities affect the river.

FILED

JAN 26 1959

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
                    DEPUTY CLERK

BEST, BEST & KRIEGER
ATTORNEYS AT LAW
4200 ORANGE STREET
POST OFFICE BOX 1028
RIVERSIDE, CALIFORNIA

                              1.

                                        5059

1. <u>Definitions</u>

(a) <u>Permeability</u>:  The ability of soil to permit the movement of ground water, measured as a rate of flow.  The best way to determine permeability is by pump tests.  However, permeability varies even within the several categories of soil which characterize the watershed.

(b) <u>Transmissibility</u>:  The quantity of water transmitted through a certain deposit in a given period of time, generally measured in gallons per day through the thickness of the aquifer for a width of one foot.

(c) <u>Specific Yield</u>:  The amount of water which will drain by gravity from a given quantity of material, without reference to the length of time required.  This is expressed as the percentage of the water in the material which drains through it.

(d) <u>Specific Gravity</u>:  Gallons per minute per foot of draw down.

(e) <u>Basin or Storage Unit</u>:  A ground water basin or storage unit should be defined as an area of underground storage, the production of water from which has a material effect on the surface flow of the stream.

2. <u>Major Faults</u>

(a)  Murrieta Valley is bounded by two parallel faults. On the southwesterly side runs the Elsinore Fault, and the Northeasterly side of the valley is marked generally by the Wildomar Fault.  These two faults also mark the boundaries of Wolf Valley, and the Wildomar Fault crosses the lower end of Pauba Valley and Pachanga Valley, as shown on Exhibit 15.  There is apparently an extensive fault running east and west through Murrieta Hot Springs and continuing for an unknown distance to the East.  However, there has been no evidence on the effect of this fault, and since it lies

BEST, BEST & KRIEGER
ATTORNEYS AT LAW
4200 ORANGE STREET
POST OFFICE BOX 1028
RIVERSIDE, CALIFORNIA

outside of the Government's Unit 4, and outside or at least at the fringe of the older alluvium, it would not appear to be of major importance in the case.

(b) Effect:  There is no evidence of any water passing through the Elsinore Vault, and indeed all of the water passing into the lower part of the watershed appears to be forced to the surface at Temecula Gorge.  Nor does any appreciable amount of water pass through the Wildomar Fault, although some water passes over it where it is submerged below the surface of the ground. The confidential report on the Pauba Well terms it "an effective barrier" to ground water movement.  (Fallbrook Exhibit AB, page 9)

The Wildomar Fault is responsible for the springs which bring water to the surface along the fault line from Santa Gertrudis Valley to Pauba Valley.  This fault is also largely responsible for the artesian condition in Pauba Valley.  The effectiveness of the fault is demonstrated by the fact that the water table to the east is some 20 feet or more higher generally than the water table on the lower, or southwesterly side of the fault.

3.  Materials in Watershed

The materials in the watershed may be classified generally into younger alluvium, older alluvium, residuum and basement complex.  Each of these general types of soils has different water bearing characteristics.  However, permeability is not uniform even within a single type of material.

4.  Location of Materials

The soils classified above are located on the surface of the ground as shown on the Government's Exhibit 15.

5.  Permeability of Soils

(a)  Basement complex for practical purposes has no permeability.

3.

BEST, BEST & KRIEGER
ATTORNEYS AT LAW
4200 ORANGE STREET
POST OFFICE BOX 1028
RIVERSIDE, CALIFORNIA

(b)  Residuum, or older weathered material, has very little permeability.  No evidence has been produced to show that the limited amount of water pumped from any such material has any effect on the runoff of the Santa Margarita River.

(c)  Soil classified as younger alluvium generally has good permeability, and the water therein for the most part contributes to the flow of the river.

(d)  Older alluvium has some permeability, but it varies greatly in different areas.  There is no evidence that water from such soil, except where it is overlaid with younger alluvium, contributes materially to the river.

6.  Storage Capacity of Soils

(a)  There is no storage capacity in the basement complex, except within any crevices or fractures of the rock.

(b)  The storage capacity of the younger alluvium is good, as is evidenced by the proof that all good wells are located in areas overlaid with younger alluvium.

(c)  The older alluvium has good storage capacity in some areas, and in other areas it has not.  In any event the effectiveness of this storage is limited by low permeability, and the difficulty of extracting water when needed (specific capacity). Low permeability likewise retards the rate of recharge of said soils.

(d)  The residuum has very limited storage, but the extraction of such water has no material effect on the runoff at Temecula Gorge.

7.  Basin or Water Storage Unit

(a)  In view of our definition of a basin as an area from which pumping can materially affect the stream, the Murrieta Basin is probably limited by the fault lines, but there may be areas within that area where pumping has no material effect.

BEST, BEST & KRIEGER
ATTORNEYS AT LAW
4200 ORANGE STREET
POST OFFICE BOX 1028
RIVERSIDE, CALIFORNIA

4.

5062

BEST, BEST & KRIEGER
ATTORNEYS AT LAW
4200 ORANGE STREET
POST OFFICE BOX 1028
RIVERSIDE, CALIFORNIA

1    (b)  Ground Water Unit 4 is not a basin, as such,

2  and the Government has not attempted to define it as a basin.

3  The other extent of the Unit was drawn by the Government on the

4  basis of a theoretical average of water bearing characteristics

5  of soil.  The Government testified that within this area

6  "feasible" wells could be produced, although they did not take

7  into account the economics of pumping in determining feasibility.

8  The Government offered no pump tests to show that water has

9  been or can be produced in substantial quantities in the upper

10  part of Unit 4, let alone on an economic basis.  The thickness

11  of the alluvium and the type of soil varies greatly in different

12  parts of Unit 4, and evidence will be produced to show that

13  large parts of this area will not yield water in sufficient

14  quantities to have any material effect on the stream.

15    There has been evidence of some good producing wells

16  within Unit 4, primarily in Santa Gertrudis Valley.  These wells

17  are all located on streambeds overlaid with younger alluvium, and

18  there is no evidence that wells sunk outside the streambed will

19  produce water in either economic quantities or in amounts which

20  materially affect the waters of the Santa Margarita River.  The

21  gauged summer flow of Murrieta Creek has remained constant over

22  the years, and there has been no decrease in the amount of rising

23  water at the fault line.  The water table at the lower end of

24  Santa Gertrudis Valley, and on the other side of the fault line,

25  has not dropped over the years.  Substantial pumping in the future

26  from this area might or might not materially affect the stream

27  flow.  Because of the lack of any present showing of an effect,

28  there should not be a determination that these wells affect the

29  river system.  Until there is evidence to show that such pumping

30  materially affects the runoff, there should not be a determina-

31  tion that ground water pumped from this area is part of the

32  Santa Margarita River.

5.                              5063

8. Usable Storage Capacity of Basins

(a) Storage capacity as such is irrelevant on the present state of the record. Storage in general is significant only insofar as it affects recharge and the amount of water which otherwise might flow into the lower part of the watershed. There is no showing that present or future pumping from storage in a basin affects either the stream flow or rate of recharge from the stream. Until such showing is made, if at all, these ground waters must be treated as percolating.

9. Confined Waters

The only evidence of artesian wells is in connection with Pauba and Santa Gertrudis Valleys. This is caused by the effective barrier of the Wildomar Fault and the confining layers of clay materials. These areas of artesian water indicate that there has been no appreciable reduction in ground water storage. The confining layers, which prevent water from rising, even though under pressure, also limit percolation from surface runoff.

10. Government's Unit No. 4

Certain aspects of this problem have been discussed earlier, but the following may be added:

(a) Obviously there is considerable water within this area. Primarily, it appears to be found against the fault line. However, this is not the same thing as saying that it can be economically pumped from any part of Unit 4, or that such pumping would materially affect the stream.

(b) The rate of movement of underground water in this area is extremely important, and the Government has made no study of this. The Government has introduced only water levels, and average specific yield calculations. Specific yield, however, does not have anything to do with how rapidly water moves through the underground, or whether there is sufficient permeability to

BEST, BEST & KRIEGER
ATTORNEYS AT LAW
1200 ORANGE STREET
POST OFFICE BOX 1028
RIVERSIDE, CALIFORNIA

6.

5064

permit economic pumping. Pump tests will be introduced to
show that permeability in much of this area is poor, and that
therefore wells cannot be sunk which are economically productive.

(c)  The Roripaugh well, 26J1, is an excellent pro-
ducing well. There is no evidence, however, that pumping this
well affects stream flow at all. In the absence of proof of a
material effect there should be no adjudication that such water
is part of the river system.

(d)  It is immaterial that the wells within Unit No. 4
may be hydrologically connected. The material issues are:

(1)  Can ground water be pumped in
quantities sufficient to develop the overlying land; and

(2)  if so, does the extraction of such
water materially reduce the stream flow.

These issues must be determined as to each parcel within
the area, and not on a basis of theoretical averages.

11.  Slope of Basement Complex in Unit 4

The basement complex apparently slopes to the west. It is
very near the surface along the northeasterly periphery of Unit 4.
The depth along the fault line is undetermined. However, the
slope of the basement complex is a material factor in only
one respect, namely, a determination of the theoretical storage
capacity of the Unit. As has been noted, storage capacity itself
is not a material factor for the reasons already recited:

(1)  Pumping of stored ground water has not been
demonstrated to have any effect on the flow of the river;

(2)  Even though such pumping were to have an effect,
the ultimate result could not be determined until the rate of
recharge of that basin was also determined.

(3)  Basic yield of a basin is no measure of either the
ability to extract water from that area, let alone the economic

feasibility of such pumping.

(4)  Permeability varies greatly within the types of soils averaged, thus further limiting any finding concerning storage capacity.  Furthermore, even the theoretical tests designed to show storage capacity in Unit No. 4 fail to show what effect, if any, pumping from those stored ground waters have on any individual defendant's lands.

12.  Movement of Water in Unit No. 4

It is conceded that ground water moves downhill. There is no evidence as to the quantity of water moved, nor the speed of its movement in Unit No. 4.  The Government's water level contours are misleading because they are projected on estimates over large areas where no wells exist.  Until the movement of ground water can be more definitely ascertained it is impossible to estimate the effects of pumping the far reaches of Unit No. 4.

13.  Depletion of Basins

(a)  Pauba and Santa Gertrudis Valleys are probably recharged above the area of confinement from precipitation and stream runoff percolating into the ground.  There may be some slight lateral percolation from the older continental deposits on either side of these valleys when pumping occurs.  Otherwise the hydraulic pressure in the confined areas resists percolation from the older deposits in a lateral direction.

(b)  As indicated by the Government's water contours there is little recharge of the Pauba and Santa Gertrudis Valleys from the older alluvium on either side.  The well tests made in the area would indicate that the permeability of these adjoining soils is not good, hence limiting recharge from that source.

(c)  There is no ground water recharge in the Wolf and Murrieta Valleys, but these valleys are recharged by waters passing over the faults.

8.

5066

14.  Salt Water Intrusion in the Ysadora Basin

(Inasmuch as this is outside the area affecting our
clients no comments are made.)

15.  Areas of ground water which are not a part of the
Santa Margarita River System

Insofar as the proof thus far adduced is concerned,
there is no showing that the ground waters in Unit No. 4 (Exhibit
15) contribute materially to the flow of the stream system.
The only water from this area which does enter the stream
system, comes in flood time or consists of that relatively
small quantity of water which seeps through or escapes the
fault into the Murrieta Basin.  There is no showing that this
contribution would be materially reduced even though there were
heavy pumping in Unit No. 4.

Aside from the peculiar characteristics of Unit No. 4,
the only deposits which appear to yield quantities of water which
affect the stream system are found in the younger alluvium,
or in the areas which are overlaid with younger alluvium.  The
only evidence that the older continental deposits yield water
in appreciable quantities is in those instances where the test
wells are located in large beds where the wells are recharged
with stream flow or from saturation from overlying deposits of
younger alluvium.  No wells drilled directly into the older
continental deposits and outside the river beds appear to be
productive, and for this reason the areas marked as "Qoal" on
Exhibit 15 should be dismissed from the suit.

From the foregoing we recommend that all lands be dis-
missed from the action other than those which are riparian to the
Santa Margarita River or its surface stream tributaries, and
ground waters overlying the areas marked as younger alluvium
"Qyal" on Government's Exhibit 15.

9.

1        It is assumed that the Court will retain jurisdiction

2  as to such riparian lands and those lands overlying ground water

3  as above defined, even though there is no showing in this case

4  that a shortage of water in the Santa Margarita stream system

5  now exists.

6      Dated:  January 23, 1959.

7                      Respectfully submitted,

8                      BEST, BEST & KRIEGER

9

10      By

11                  James H. Krieger

12

13                  Arthur L. Littleworth

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

BEST, BEST & KRIEGER
ATTORNEYS AT LAW
4200 ORANGE STREET
POST OFFICE BOX 1028
RIVERSIDE, CALIFORNIA

10.

5068