(SPACE BELOW FOR FILING STAMP ONLY)

LAW OFFICES
SACHSE AND PRICE
1092 SOUTH MAIN STREET
FALLBROOK, CALIFORNIA
RANDOLPH 8-1154



FILED

JAN 30 1959



CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By /s/ _____
         DEPUTY CLERK

Attorneys for___Defendants___

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>FALLBROOK PUBLIC UTILITY DISTRICT,<br>ET AL.,<br><br>    Defendants. | No. 1247-SD-C<br><br>MEMORANDUM IN SUPPORT<br>OF MOTION OF DEFENDANT<br>FALLBROOK PUBLIC UTILITY<br>DISTRICT TO DISMISS<br>COUNT XXII OF PLAINTIFF'S<br>SUPPLEMENTARY AND<br>AMENDATORY COMPLAINT |

I

AUTHORITY FOR THE MOTION

Federal Rule 41(b) provides in part:

"For failure of the plaintiff to prosecute or to comply with these rules or any order of court, <u>a defendant may move for dismissal of an action or of any claim against him.</u> After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."
(Emphasis added).

II

FACTS

Count XXII sets forth certain claimed appropriative rights of the United States.

This defendant moved to dismiss Count XXII at the outset of the proceedings. The Court denied the Motion, upon the ground that the Count alleged, among other claims, possible appropriative rights acquired by plaintiff's predecessor in interest through

- 1 -

5091

1  non-statutory appropriation prior to the effective date of the
2  Water Commission Act. The Court, however held in its Pre-Trial
3  Opinion that under the law of California "..since 1913 or 1923.."
4  appropriative rights to the use of water can only be acquired by
5  filing applications therefor with the appropriate State agency
6  and proceeding thereafter as required by State law.
7          The evidence presented on the question can be summarized
8  as follows:
9      1. There is no evidence of any formal statutory appropriation
10 by plaintiff or by its predecessor in interest.
11     2. Prior to the acquisition of the Rancho Santa Margarita
12 by plaintiff, the Rancho diverted water from the Santa Margarita
13 River by means of the erection of a sand or earth dam in the river
14 and the diversion of water through a ditch to Lake O'Neill, and
15 thence to the irrigation of crops in the Chappo Flats area.
16     3. These diversions were commenced with the end of high
17 water in the Spring, and were terminated when the first heavy Fall
18 or Winter run-off washed out the dam.
19     4. Since the acquisition of the Rancho by plaintiff in 1942
20 a permanent diversion structure has been constructed in the Santa
21 Margarita River at approximately the same location as that of the
22 earth or sand dams constructed by the Rancho. Water is diverted
23 by means of that structure through approximately the same ditch
24 as used by the Rancho and stored in Lake O'Neill.
25     5. Lake O'Neill is at the same location as it existed under
26 the Rancho and is approximately the same size.
27     6. Diversions by plaintiff since its acquisition of the
28 Rancho in 1942 have been limited to periods of run-off during the
29 winter months. There have been no summer diversions by plaintiff.
30     7. Water stored in Lake O'Neill by plaintiff is not used
31 for irrigation of crops.
32     8. Water stored in Lake O'Neill by plaintiff is used for

LAW OFFICES
SACHSE AND PRICE
1002 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 2 -

recreational purposes; for training a bridge company; for aesthetic purposes and is later released to re-charge the underground basins in the Chappo Flats area.

9. There is no direct evidence as to the quantity of water diverted by the Rancho prior to 1914. The only testimony as to amount is the estimate of Lt. Col. Bowen as to the amount of water required to irrigate certain hypothetical acreages of various crops in the Chappo Flats area.

10. There is no evidence as to the length of time that any diversion by the Rancho continued. In this connection the dates covering which the witnesses Salisbury and Whitman testified are significant:

    a. Salisbury went to the Rancho as a laborer in 1911 <u>and continued until 1914</u>. He then left the Rancho, and later returned in 1918 to continue in the employ of the Rancho until 1942.

    b. Whitman went onto the Rancho in <u>October, 1920</u> as a tenant, and became foreman in July, 1922.

11. There is no evidence of any <u>intent to appropriate water</u> as distinct from a mere use of water upon riparian land for riparian purposes.

12. There is no evidence of any <u>diversion of water outside the watershed prior to 1937</u>, when diversions to Stuart Mesa commenced, and 1938 when diversions to South Mesa commenced.

13. Government Exhibit 138, A, B and C indicate that when the the Navy Department filed its applications with the State of California to appropriate water from the Santa Margarita River they asserted only rights as a riparian and rights under the stipulated judgment in <u>Rancho Santa Margarita vs Vail</u>. There is no showing of any assertion of appropriative rights by the United States.

III

A. <u>The evidence does not show any appropriation.</u>

The only appropriative right that could conceivably exist

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 3 -

5093

in the United States is one acquired by its predecessor, under the so-called "non-statutory" method of appropriation. It should be noted at the outset, that:

> "After the effective date of the Water Commission Act, which was Dec. 19, 1914, it was no longer possible to obtain an appropriative right with respect to watercourses in California otherwise than by following the provisions of the Water Commission Act. That is to say, one could no longer make, from such a source, <u>either a nonstatutory appropriation or an appropriation pursuant to the Civil Code</u> "(Hutchins, <u>The Law of California Water Rights</u> (1956) at page 89. Emphasis added)

<u>Crane vs Stevinson</u> (1936) 5 Cal. (2d) 387, 398; 54 P. (2d)1100

If the Court accepts the statements quoted above as the law to be applied in this case, <u>it is necessarily limited to the testimony of the witness Salisbury, and to his testimony as to the period between October 1911 and December 19, 1914</u>. His testimony concerning this period is very brief, and even a cursory examination of the Transcript will disclose that it does not cover any of the essentials necessary to the accomplishment of a non-statutory appropriation.

The essentials of such an appropriation are discussed in detail in Hutchins, <u>op. cit.</u>, pages 86-89. They have been spelled out in many cases and can be summarized as follows:

1. An appropriation was initiated by posting a notice stating an intent to divert a specified amount of water through a ditch heading at that point. The only effect of the notice was to evidence the <u>intent to appropriate</u> and to give an effective date to the appropriation. The mere notice alone was insufficient to complete an appropriation unless subsequent work and use by the appropriator made the intent manifest.

<u>Osgood vs El Dorado etc. Co.</u> (1880) 56 C. 571, 579-581; <u>Weaver vs Eureka Lake Co.</u> (1860) 15 C. 271, 275.

2. The notice of intention need not necessarily be in writing if there was a "..visible act and avowed intent (to appropriate)..." sufficient to eliminate the possibility of later claimants being misled.

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 4 -

5094

<u>Inyo Consol. Water Co. vs Jess</u> (1912)161 C. 516,520; 119 P. 934.

3. The final acquisition of the appropriative right depended upon the actual construction of the conduit and application of the water to beneficial use. We concede that a conduit was constructed by the Rancho and that it did put water to beneficial use. <u>But we insist that there is no evidence that this application of water to beneficial use was under a claimed appropriation. The Rancho being a riparian owner, and the use being entirely upon riparian land, the diversion and conduit were nothing more nor less than a device to put its riparian water to use.</u>

The use of water by a riparian owner upon his riparian lands is presumptively riparian.

<u>Morgan vs. Walker</u> (1933) 217 C. 607, 615; 20 P (2d) 660.

Hutchins, <u>op.cit.</u> at page 252.

Confronted with this presumption, and with no evidence of any intent to appropriate, the Court is compelled to find that the uses by the Rancho prior to 1914 were simply riparian uses.

B. ANY APPROPRIATIVE RIGHT ONCE HELD BY THE RANCHO HAS LONG SINCE BEEN LOST.

Sec. 1240, California Water Code, provides:

"The appropriation must be for some useful or beneficial purpose, and when the appropriator <u>or his successor in interest ceases to use it for such a purpose the right ceases</u>" (Emphasis added).

Sec. 1240, Water Code, provides:

".When the person entitled to the use of water fails to beneficially use all or any part of the water claimed by him, for which a right of use has vested, <u>for the purpose for which it was appropriated or adjudicated</u>, for a period of three years, such unused water reverts to the public and shall be regarded as un-appropriated water". (Emphasis added)

It cannot be denied that the record conclusively establishes that the <u>present</u> use of water by plaintiff through

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RAndolph 8-1154

- 5 -

5085

<pre>
the O'Neill Ditch diversion and Lake O'Neill, is entirely
different than the "appropriation" of the Rancho Santa Margarita.
It is different as to <u>time</u> of appropriation; as to <u>place of use</u>;
and as to <u>purpose of use</u>.
</pre>
An appropriative right is limited as to <u>time</u>. Since the earliest cases in this State, it has been held that appropriations are measured by <u>time of diversion</u> as well as by <u>volume of diversion</u>.

    Smith vs O'Hara 43 C. 371, 376 (1872)
    Santa Paula vs Peralta (1896) 133 C. 38, 44; 45 P. 168
    No. Cal. Power vs Flood 186 C. 301, 306; 199 P. 315

Aside from the authorities cited, pure logic would require the same rule. Consider, for example, the converse of our situation. Assume a valid appropriation of <u>winter flood waters</u>. There is no objection by riparians because they do not use such waters. Would it be contended for one moment that a successor in interest could switch the <u>winter</u> taking to a <u>summer</u> taking? In the case before us, assuming for the sake of argument that the Rancho <u>did</u> acquire an appropriative right to divert summer flows for irrigation, that right has not been exercised by plaintiff for 16 years. Instead, plaintiff has changed the time of diversion, and has applied the water to different uses at different locations. In the language of the <u>Flood Case</u>, supra, "The value of water for irrigation is too great in this state to allow a landowner to gain a right thereto for the entire twenty-four hours of each day by using the same for only a half or any other portion of the time less than the whole.". Substitute the word "year" for the word "day" and the cases are identical.

Finally, it should be noted that statutory forfeitures such as are here discussed are not in any sense dependent upon intent. A forfeiture for non-use under the statute ends the appropriator's right regardless of his desire or intent.

    Lindblom vs Round Valley Water Co. (1918)
    178 C. 450, 455; 173 P. 944

<pre>
LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154
</pre>

- 6 -

509A

East Side Canal vs. U. S. (Ct. Claims 1948)
76 Fed. Supp. 836, 839

IV

CONCLUSION

Defendant respectfully submits:

1. There is no evidence sufficient to find an appropriation by the Rancho Santa Margarita.

2. The presumption that use of water by a riparian upon riparian land is a riparian use effectively establishes that the acts of the Rancho <u>did not</u> constitute an appropriation.

3. Conceding, only for the purpose of argument, that appropriation has been lost and the waters so appropriated have reverted to the public by reason of statutory forfeiture.

Dated: January 29, 1959.   SACHSE and PRICE

by _[signature]_
Attorneys for the Fallbrook Public Utility District

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

5097