Erle Stanley Gardner
P. O. Box 67
Temecula, California - Telephone: 201

Defendant in propria persona

FILED

MAY 25 1959

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

---------------oOo---------------

UNITED STATES OF AMERICA,  )
          Plaintiff,  )   No. 1247-Civil
vs.  )
FALLBROOK PUBLIC UTILITY  )   BRIEF OF DEFENDANT,
DISTRICT, a public service corpora-  )   ERLE STANLEY GARDNER
tion of the State of California, et al,  )
          Defendants,  )

---------------oOo---------------

      This defendant is the owner of nearly a thousand acres adjoining the Vail Ranch on the south and east. Because this defendant uses his property primarily for purposes other than those of agriculture, the agricultural possibilities of the property insofar as irrigation is concerned are relatively undeveloped.

      This defendant does, however, have an interest in the outcome of this litigation and the ultimate use of his property will be affected to a very great extent by the manner in which the litigation is disposed of.

      Moreoever, the writer of this brief has devoted a large part of his life to improving the administration of justice and is greatly concerned with the impact upon the public of all matters connected with the administration of justice.

      This defendant respectfully calls to the attention of the Court certain

factual matters upon which the position of this defendant is predicated.

Anyone who believes that the filing of this lawsuit, and even prior to the time of actual filing, the knowledge that the lawsuit was going to be filed, has not stimulated a feverish wave of drilling and pumping would be naive indeed.

Some of the defendants who are in a position to do so financially have engaged in a mad scramble for water, hoping to place themselves in a position to demand preferential treatment. Other defendants who were not in such an advantageous financial position, or who perhaps were not prepared to make the best immediate agricultural use of their lands, have not engaged in putting down more wells and pumping more water, but have relied, and are relying, upon this Court to protect their rights upon a fair and equitable basis.

The lands involved in this controversy are situated between two large cities which are constantly expanding: Los Angeles and San Diego. Even now, the first impact of those economic forces which are destined to change the entire use of the property are being felt. Manufacturers are looking for outlying territory wherein to locate plants and establish housing facilities for their workers. The large metropolitan districts, strangled by their own traffic problems, are seeking space. And persons who do not necessarily need to live within the congested areas but can carry on their businesses if they are within one or two hours' drive of the congested districts, are looking for property which combines residential facilities with sufficient elbow room for adequate living.

At the same time, the science of warfare is developing so rapidly that ideas which are on the drawing board today are destined to become obsolete before they can ever be put into actual operation.

Forces are at work today which make it appear that the Government's Base at Camp Pendleton may become untenable within a few years. Where a decade ago it was deemed advisable to have a Marine Base located on tidewater, it is quite possible that even today this may be one of the most disadvantageous locations which could be selected in case there were actual combat. Without discussing the military significance of the move, the fact that the Marines have also established a Base near Twenty-nine Palms is abundant indication of a

trend in military thinking.

If this Court should try to make a final disposition of the issues in this controversy at the present time on the basis of the present use of lands, the Court would be imposing a great injustice, not only on the litigants themselves, but also upon the economic life of the community.

At the present time the property of the Government on the old Santa Margarita Ranch is largely devoted to military purposes, while the riparian lands in the upper end of the valley are primarily agricultural.

The Vails, for instance, have some ninety-six thousand acres which are devoted primarily to the raising of cattle.

It needs only a moment's reflection to realize that ninety-six thousand acres devoted to the raising of cattle, all within a hundred miles of Los Angeles and sixty miles of San Diego, constitute an economic anachronism. While it may well be the present owners are opposed to any use of their property which violates the traditional operation of a cattle ranch, they are powerless to stand in the way of economic forces which are as irresistibly at work as are the tides on the beach at Oceanside.

Property in the State of California and in the various counties is being taxed to the utmost to provide school facilities, police protection and other governmental conveniences for an incoming wave of population that is forcing its way into Southern California.

It is only a question of time until the demands upon the Government itself will be such that the State cannot tolerate an inefficient use of land or permit land that is primarily valuable for small ranches or suburban residences to be utilized for a cattle ranch.

In the matter of estate taxes alone, the economic forces are at work, and sooner or later these are factors which must necessarily be taken into consideration.

It seems therefore to this defendant that the only thing this Court can do is to keep continuing jurisdiction of the controversy and by interlocutory decrees made from time to time, based upon reports by fact-finding officials appointed by the Court, render continuing justice. Equitable rules for the division of the water can be established by decree but the Court should retain the right to amend those rules.

5245

3.

It seems to this defendant that this continuing jurisdiction is one of the most important factors in the entire case.

As this defendant understands the law of this case, it has been decided that any judicial partition of water in the watershed is of no value legally unless all of the owners of property within the watershed are parties to the litigation.

The vast extent of the lands involved is such that the expense of getting these necessary parties to submit to the jurisdiction of the Court is prohibitive as far as any private individual is concerned. Only the Government, with its virtually unlimited capital, could have brought about a situation where all of the parties have been brought before the Court. One of the greatest benefits to each of the parties to this controversy -- whether the parties recognize it at this time or not, or are prepared to admit it or not -- is that they have been brought into a Court of Equity and that the Court of Equity has jurisdiction over the entire subject of the controversy.

As far as this defendant is concerned this naturally brings up the status of the judgment heretofore rendered in connection with a stipulation between the Vail Company on the one hand and the predecessors in interest of the plaintiff on the other hand.

As far as this defendant is concerned he would like to know whether, under this stipulated judgment, the Vail interests received more water than they would be entitled to under the decision of a Court of Equity sitting as this Court is sitting and having the comprehensive jurisdiction which this Court has.

If, under the stipulated judgment, the Vails did obtain more water (in other words, if they received preferential treatment, acre for acre) then certainly as far as this defendant is concerned, that stipulated judgment is completely invalid. As this defendant understands the decision which has become the law of this case, there can be no question but what such a judgment is not binding upon this defendant. And if it is not binding upon this defendant, it is not binding upon any of the other defendants in the controversy who might be affected thereby.

This point is, however, of peculiar importance to this defendant because of the manner in which his lands adjoin those of the Vail Ranch and, in fact, in some instances, thrust a finger into the Vail Ranch itself.

5246

1   This defendant at this point in his brief is not trying to analyze the
2   stipulated judgment for the purpose of determining what the stipulated judgment
3   purported to do. This defendant is simply concerning himself with the legal
4   implications of what it could and what it could not do.
5       If the Vail Company received _less_ water under this stipulated judgment
6   than it would be entitled to under the equitable consideration of this Court, it
7   must therefore follow that Camp Pendleton, through its predecessor in interest,
8   received _more_ water than it would otherwise have been entitled to.
9       Here again we have an injustice which has a serious effect upon the
10  rights of this defendant.
11      If the Vails received less water than they would be entitled to under an
12  equitable decision of this Court, if they are to receive less water than their
13  neighbors would be getting under a decision of the Court, then the lands of the
14  Vail Company are depreciated accordingly; and because this defendant has a
15  rather large acreage immediately adjacent to the Vail Ranch, the economic
16  value of his own lands is reduced accordingly, because the value of all lands in
17  the neighborhood will be affected by a general price scale as the lands become
18  subdivided and are given a market value.
19      Only in the event that under the terms of this stipulated judgment the
20  Vails are to receive _exactly_ the same treatment as any other defendant land-
21  owner which has subjected itself to the jurisdiction of the Court, are the rights
22  of this defendant unaffected.
23      If, however, that situation exists and the stipulated judgment does give
24  the Vails _exactly_ the same water they would be entitled to without the stipulated
25  judgment, and Camp Pendleton is given exactly the same water it would be
26  entitled to without the stipulated judgment, then the stipulated judgment is of no
27  value because neither party has gained anything; nor would it lose anything by
28  submitting itself to the jurisdiction of the Court with like and the same force and
29  effect as though that judgment had never been entered.
30      This defendant has read the stipulation and the judgment and has been
31  forced to the conclusion that the judgment is ambiguous in that it is founded upon
32  a stipulation which in the first place is unenforceable, in the second place was

founded upon mistaken findings of fact, and in the third place is contradictory in its terms.

It is quite apparent that at the time the litigation was originally filed, two great landowners in the watershed felt that the rights of all smaller landowners could be ignored.

That situation has now changed.

At the time the stipulated jugment was entered into, quite apparently the two large landholders, each thinking only of himself, purported to divide the entire water rights along the stream in terms of the joint holdings. The Santa Margarita was to have two-thirds of the water, the Vail Company, one-third.

It is quite apparent to anyone who studies the document that after a first draft had been prepared by one side, attorneys for the other side questioned certain provisions of the document. And rather than change those provisions the questions were answered by adding other provisions. In other words, when the Vail Company asked what a certain provision meant, the attorneys for the Santa Margarita said, in effect, "What difference does it make? You're getting a full one-third of the water in the river. What do you care what happens to the other two-thirds?"

Thereupon, attorneys for the Vail Company undoubtedly said, "Well, if that is the case, are you willing to put a provision in the stipulation that we <u>will</u> receive a full one-third of the waters in the river?"

And the attorneys for the Santa Margarita said, "Certainly. Go ahead and put that provision in the agreement if you want."

So that provision was written into the stipulation.

As a result, the stipulated judgment is hopelessly contradictory as far as outside persons are concerned, and this defendant feels it is probably hopelessly contradictory as far as the parties to the original litigation are concerned. The stipulation provided that certain diversions could be made, that certain flows had to be maintained at certain test points, but then went on to provide specifically that the Vails were unequivocally entitled to one-third of the water in the stream.

1   This stipulation cannot be enforced as against this defendant who was
2 not a party to the original litigation and not a party to the stipulation; at least
3 such would seem to be the meaning of the decision of the Circuit Court which has
4 become the law of this case and which establishes principles which should be
5 good law anywhere.
6   As this defendant understands the situation, the Vail Company is now
7 asking to be treated exactly the same as any other landowner on the river. Hav-
8 ing come into a Court of Equity, it asks to participate in the same equitable dis-
9 tribution of the water that the Court will make to all landowners along the water-
10 shed.
11   The Government, however, plaintiff in this action, apparently feeling
12 that under the stipulated judgment it obtained more rights than it would be
13 entitled to in an equitable distribution of the water by a Court, seeks to retain
14 all of the advantages, whatever they may have been, which were obtained under
15 this stipulated judgment while asking a Court of Equity to divide the remaining
16 waters among the other property owners.
17   This defendant objects to such a course of conduct.
18   In the first place, it is settled that one who comes to a Court of Equity
19 must do equity. Even if the stipulated judgment presents a situation where
20 plaintiff does not have to do equity as far as the Vail Company is concerned,
21 there is certainly no reason why the plaintiff shouldn't have to do equity as far
22 as this defendant is concerned. And this defendant demands that the plaintiff
23 do such equity.
24   Having come to a Court of Equity and invoked the equitable jurisdiction
25 of the Court, if the plaintiff in this action obtained any unconscionable or
26 inequitable advantage as the result of its stipulated judgment, then that advantage
27 necessarily deprives this defendant of certain rights. And this defendant insists
28 that the plaintiff cannot avail itself of equity until it is willing to surrender any
29 inequitable advantage that it may have acquired as far as this defendant is
30 concerned.
31   Eventually the market value of the defendant's property will be generally
32 affected by the market value of the Vail property.

If the stipulated judgment is unenforceable as to all parties to the present controversy who were not parties to the original controversy, then it would put this Court in an impossible situation to try and do equity as among all the various parties by providing that the stipulated judgment was invalid and unenforceable as to other defendants, but at the same time was valid and enforceable as between Camp Pendleton and the Vails.

This defendant has engaged in no scramble for water. He has continued his water use in accordance with the present demands necessitated by the present use of his property. This defendant, however, feels that it would be unjust to freeze his property in a mold by which the use of the property was limited to its present usage.

This defendant is a writer. His lands are used primarily to give him seclusion against intrusion. The use of water on the property, the manner in which the property has been developed over the past twenty years, have been centered all upon promoting the defendant's comfort and convenience as a writer of fiction.

Would it therefore be equity for this Court to say in effect, "Here are some three thousand acres, more or less (this defendant has no accurate knowledge of how many of his holdings are within the watershed in question) which, having been used for the past twenty years by a writer of fiction, must in the future be used by a writer of fiction or some person who is primarily interested in obtaining seclusion rather than in utilizing the land to its full agricultural possibilities"?

Is it equity that when it becomes apparent litigation is to be filed in connection with water rights, that the person having the financial ability to engage in a scramble for water must necessarily be given preferential treatment?

This defendant is only too willing to recognize the fact that initiative should be rewarded and that where water has been put to a useful purpose the Court should take that fact into consideration. Conditions change, however, and in the future it is quite possible that some use for residential purposes will be of vastly more economic value to the community than a use for agricultural purposes.

And if a Court is to do equity, the Court should, in the opinion of this defendant, preserve jurisdiction so that it <u>can</u> do equity.

All that we know for certain at the present time is that there are economic forces at work which will of necessity change the complexion of the country. We can't tell how soon those economic forces will break through the agricultural barriers as to the lands presently involved. We can't tell whether the devastation incident to war may result in a depopulation of the Pacific Coast, or whether the continuing influx of citizens will result in a congestion so great that eventually Los Angeles and San Diego will expand into one great city. All we know for certain is that forces are at work, that changes will be made, and that it is not within the ability of any human being to look into the future. No court has a crystal ball, no judge is a prophet.

Moreover, the Government itself does not function in an economic vacuum. The Government is supported by the taxpayers. The Government is supposed to serve the taxpayers. Any activity on the part of the Government which brakes the wheels of economic development is as disadvantageous to the Government as it is to the owners of the lands which might reasonably expect to participate in that development. Therefore it is to the interests of the plaintiff in this action to see that the water is so apportioned and the jurisdiction of this Court so continued that the ultimate economic good which will result from such action will redound to the benefit of the defendant taxpayers.

It takes water to support Camp Pendleton. It also takes taxpayers' money.

If the price of military security is such that the country must be made bankrupt in order to obtain that security, we have arrived at a period of reductio ad absurdum as far as our so-called defense is concerned.

These are all factors which it would seem must be taken into consideration by the Court and which should be taken into consideration by the plaintiff.

This defendant unfortunately has not been in a postion to devote the time required to follow the course of the litigation. He is familiar with the facts only in a general way and frankly has not made any exhaustive research of the law.

1   In short, it is the position of this defendant that it is the duty of this
2   Court to protect the interests of the defendant and all of the defendants, as
3   well as the interest of the plaintiff, in this litigation.  This defendant feels
4   that this Court is so well-qualified to perform that task that he has no desire
5   to try to intimate to this Court how that task should be performed.  He has
6   only submitted these matters in this brief so that the position of this defendant
7   can be set forth as a matter of record.

8   This defendant believes that it would be a legal mockery to require that
9   this Court must have jurisdiction of all of the water users unless it has at the
10  same time been given jurisdiction of all of the water.

11  If a part of the water in the river is removed from the jurisdiction of
12  the Court in the present case because of a judgment returned in a former case,
13  and to which this defendant was not a party, then it is a legal mockery to bring
14  the defendant into Court at this late date to determine how the remaining water
15  should be distributed.

16  If a judgment rendered against a defendant in a case where he is not
17  a party is invalid as to that party, if the rights of the party require that all of
18  the owners in a watershed participate in an equitable distribution of the water,
19  if the Court must have jurisdiction of all of the parties to do equity, then the
20  Court must have jurisdiction of all of the water.

21  This defendant asks that this Court do equity as to his water rights,
22  that the Court force the plaintiff to do equity, that the Court maintain jurisdic-
23  tion of all of the parties to the controversy and all of the water in the watershed.

Respectfully submitted,

ERLE STANLEY GARDNER
Defendant in propria persona

P. O. Box 67
Temecula, California