George Stahlman
Attorney at Law
Rt. 1, Box 235
Fallbrook, California

Phone:   RAndolph 8-2310

Attorney for Defendants, Vail Company

# FILED

MAY 29 1959

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
Deputy Clerk

IN THE UNTED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| FALLBROOK PUBLIC UTILITY DISTRICT ET. AL. | ) |
| Defendants | ) |

No. 1247-SD-C
MEMORANDUM RESPECTING
THE ISSUES IN. RE.
STIPULATED JUDGMENT

ISSUES HAVING BEEN RAISED WHEREBY THE DEFENDANT
VAIL COMPANY SEEKS THE AID OF THIS COURT TO INVOKE
ITS BROAD POWERS OF EQUITY TO THE END THAT SAID
DEFENDANT MAY BE RELIEVED FROM A STIPULATED JUD-
GMENT IN A PROCEEDINGS IN THE SUPERIOR COURT OF
CALIFORNIA IN AND FOR THE COUNTY OF SAN DIEGO TITLED,
RANCHO SANTA MARGARITA - A CORPORATION,  VS.
N.R. VAIL ET. AL. NO. 42850.  THIS MEMORANDUM IS PREPARED
IN CONNECTION THEREWITH.

5257

# PREFACE

The defendants VAIL COMPANY are fully aware of the gross responsibility of invoking the aid of the great powers of equity in seeking to be relieved from the Stipulated Judgment. They also fully appreciate that courts do not set aside judgments readily or without good and sufficient reasons and that the efficient administration of justice requires that there must some time be a termination to legal controversey. However, they feel with equal solemnity that on those rare occasions when the actions of the court or the product of litigation produces inequities, injustices or wrongs, it would be a sad commentary on our system of enlightened jurisprudence if there were not means provided for correcting the mistakes of our courts or their litigants and it is one of the most commendable attributes to our progressive system of American justice that our courts have adopted the high principles of the system of equity by which they can right the wrongs flowing from their judgments and the wrongs of litigants.

# STATEMENT

On August 22, 1924, the Rancho Santa Margarita, a corporation, filed an action in the Superior Court of the State of California in and for the County of San Diego - No. 42850 against N. R. Vail, et. al., as owners of the Vail Properties, their successors in the present action being known as Vail Company. On November 21, 1924, an amended Complaint was filed. This action purported to determine the rights to the use of water between Rancho Santa Margarita and the Vail's quieting title thereto and seeking certain injunctive relief.

Issues were joined in that case by the filing of an answer by the Vail interests and in 1926 before the Honorable L. D. Jennings, said case proceeded to trial and was concluded in the year 1930. Judgment in the said matter was rendered May 5, 1930 and entered on May 10th, 1930.

On June 14th, 1930, defendants gave notice of appeal to the Supreme Court of the State of California and after considering and hearing said matter on appeal, rendered their decision and written opinion on July 12, 1938 (Rancho Santa Margarita vs. Vail, et. al. 96 Cal. 49) on August 15th, 1938, there was filed in the Superior Court of San Diego the remittiture and on said date there was entered their judgment.

5258

The Supreme Court reversed the decision of the Superior Court of San Diego in regard to certain matters and gave instructions to the Superior Court in the following language:

"From what has heretofore been stated in this opinion, it is obvious that a reversal of the judgment is necessary. However, the new trial need not be a protracted one. Appellants have not challenged many of the findings. There is no need for a new trial on these issues. It would appear that on the new trial it would be necessary (1) to ascertain the appellants riparian and irrigable acreage as set forth in the body of this opinion; (2) to ascertain the extent of respondents riparian and irrigable acreage only in so far as it involves the table land discussed in the body of this opinion; and (3) To ascertain whether an injunction should be granted under the rules set forth in the body of this opinion and if so, what its terms should be.

With this direction to the trial court, the judgment appealed from is reversed."
          (96 Cal. 49-90)

The retrial of the case was continued from time to time. However, prior to the last date set for retrial and on December 26, 1940, the stipulated judgment between the parties having been prepared was on this date entered:

Thereafter, on January, 21, 1942, and on December 31, 1942, by two separate conveyances, the plaintiff in the present action acquired the properties of the plaintiff Rancho Santa Margarita and as such became successors in interest to the lands of the Rancho Santa Margarita and to the interest in the stipulated judgment.

Thereafter, and on March 23, 1951, The United States of America successors in interest to the Rancho Santa Margarita initiated a proceeding in the United States District Court being the present Action No. 1247 Civ. titled The United States of America, Plaintiff vs. The Fallbrook Public Utilities District, a public service corporation of the State of California et. al. In said action there were named several hundred defendants including all of the defendants of the Vail Co. and all of the said persons who were parties defendant in the action of the Santa Margarita Ranch Corporation vs. N. R. Vail et al. No 42850, in the Superior Court - San Diego County.

- 3 -

5259

Thereafter and on the 25th day of March, 1958, plaintiff United States of America in Action No. 1427 - SD- SC filed Complaint and supplimentary and ammendatory complaint again naming as defendants all of the owners of Vail Company and all who were defendants in the action of Rancho Santa Margarita vs. N.R. Vail et al which complaint and supplimentary and amendatory complaint included the several hundred defendants named in the original complaint of plaintiffs and adding thereto and including as defendants all of the owners of property within the water shed of the Santa Margarita river.

THE WITHIN TRIAL NOW IN PROGRESS WE BELIEVE TO BE THE PROPER FORUM FOR THE DETERMINATION OF THE QUESTIONS RAISED IN CONNECTION WITH THE STIPULATED JUDGMENT.

I

## EQUITABLE PRINCIPLES INVOLVED

Relief of the matter sought by the issues raised by defendants Vail Co., is a matter of right guided by fixed legal principles within the discretion of the trial court.   Our legal digest systems  and reference works all seem to clearly indicate these principles and authorities therefore:

These principles are clearly stated in American Jurisprudence where we find the following under the subject:

### Discretion and Policy of the Court

"Although under certain circumstances, the granting of relief and equity from a judgment is a matter not of grace but of right, the exercise of such equitable jurisdiction is generally regarded as within the discretion of the court. The discretion here spoken of is an impartial discretion which may not be abused. It is guided and controlled in its exercise by fixed legal principles to be exercised in conformity of the spirit of the LAW, and in a manner to supserve, and not to defeat the ends of substantial justice. Courts of equity do not lightly interfere with judgments at law. To the contrary, they do only with caution and reluctance. To induce a court of equity, to nulify a judgment at law the case must be clear and strong.

In this connection, it has been declared that
relief ought never be granted merely to
gratify a spirit of litigation.

(American Jurisprudence 30A p. 701 Sec. 754).

Upon the subject of the Federal Court granting relief from a
State Court judgement, we find in American Jurisprudence as follows:

"As a general rule, the federal courts have
the power to give relief from a state court
judgment obtained by fraud. In cases where
the requirement for the exercise of their
jurisdiction exists and circumstances for the
exercise of the equity powers are present.
As where the fraud is extrinsic or collaterial
to the issue involved in the State Court action.
Also, the power of a federal court siting in
equity to give relief against an unconsciouable
judgment of a state court because of accident
or mistake or other equitable grounds has
been recognized. Since the Federal Courts
are vested with equity powers, the exercise
of such powers by them is not curtailed
merely by reason of the fact that the object
of which the exercise of such power is to become
operative is a State Court Judgment.

The provisions of the Federal Juditical Code
prohibiting Federal Courts from staying
proceedings in State Courts does not prevent
a federal court from depriving a party by means
of injunction of the benefit of a judgment obtained
in a state court under circumstances which will
make its inforcement contrary to recognized
principles of equity and the standards of good
conscience. Same Paragraph on Page 704

"On the Other hand, the fact that the party
against whom judgment was rendered had a
remedy in a state court has been held not to
preclude equitable relief by a Federal Court.
In any event, it is necessary that the facts
constituting fraud, accident, or mistake should
not have been known in time to be presented or
could not have been presented in the state
court trial.

The power of the Federal Court to give relief
against the judgements of the State Courts does
not embrace the powers of the other side or

- 5 -

5261

modify a state court judgment or the power to
direct the state court to do so, but merely the
power to prevent by decree operative upon
the successful party in the State Court litigation,
the enforcement of the State court judgment.

(American Jurisprudence 30A P 703, Sec. 756).

Unfair - unjust or unconsciable judgment should be set aside. Again
on this subject we find in American Jurisprudence the folliwing under the
subject:

## UNFAIR-UNJUST-OR UNCONSCIONABLE CIRCUMSTANCES

"It has been declared that no rule can be
formulated setting a definite boundary beyond
which a court of equity cannot go as a matter
of power, or will not go as a matter of policy
in preventing the enforcement of an unconscionable
judgment. -

(Laun vs. Kipp 155 Wisconsin 347) -

In Pickford vs. Talbot, 225 US 651, it was declared
that in order to secure equitable relief from a
judgment, there must be something to render it
manifestly unconscionable to enforce the judgment.
As to the power of the federal court to grant
equitable relief from an unconscionable judgment
of a state court, see 756 supra.  Indeed there is
authority for the rule that in proper case a court
of equity may look behind a judgment of law in
order to do justice between the parties - (Laun
vs. Kipp, supra).

And that relief from a judgment may be decreed
in equity where it is against conscionce to
execute the judgment.   The right to equitable relief
is particularly available where there are
circumstances which have estoped the judgment
creditors from enforcing the judgment or where
there are equitable circumstances arising after
the rendition of the judgment.

- 6 -

Thus, it has been held that a court of equity may exercise its jurisdiction to prevent the judgment creditor from making an inequitable use of the judgment or from restraining the benefits of a judgment contrary to justice and good conscience.  On the other hand, it has been stated as a general rule, that the grounds upon which the interposition of a court of equity may be successfully invoked do not include cases with a sole ground of relief from a judgment is that the former decision was unjust and contrary to equity and good conscience.  That no degree of wrong or injustice in the determination of a case at law will entitle the injured party to relief at equity where there is no special equitable ground for its intervention.  There are instances where the courts have invoked their equity powers to open or modify a consent judgment or decree so as to relieve from hardship for over-reaching.

(139 ALR 429)

"It has been held that the courts large equity powers over its own proceedings would enable trial courts to set aside in proper cases judgments based on stipulations on the ground that they were inprovidently made or ought not in equity or good conscience stand.  Even though the opposite party was not guilty of fraud, collusion or bad faith but considered  that if the power was exercised, such party should be placed in Statue quo in an  analogy to recision cases and that if he had paid money under the stipulation, it was error not to provide for its refund."

(Wells vs. Penfield   70 Minnesota 66)

( American Jurisprudence 30 A  P. 710 Sec. 765)

As to the classes and kinds of judgments for which equity may relieve:

"With certain exceptions, the right to secure equitable relief from judgments extends to all classes of judgments, relief may be granted in proper cases against judgments by default and judgments by confession as well as judgments founded upon awards of arbitrators or upon consent or compromise of the parties, however,

- 7 -

5263

where the nature of the judgment is such that
equitable relief therefrom can not be effective
or where the parties in interest cannot be summoned
before the court of equity, the judgment itself must
be treated as one against which the court of equity
is powerless even though the future use of the
judgment is alleged contrary to equitable
principles.  It has been held that an injunction will
not lie to prevent the carrying out of the judgement
for contempt.''

MISTAKE AS A GROUND FOR RELIEF:

''It is frequently asserted that since mistake is
a general ground for the exercise of equitable
jurisdiction, a court of equity may grant relief
against judgments obtained in courts of law on the
ground of a mistake.   Indeed it has been declared that
a court of equity interposes to relieve against a
judgment where a wrong has been done through
mistake as readily as where there has been fraud.
This rule has been applied where a party was
prevented by mistake from interposing some
matter in support of his cause of action or defense.

(Metcalf vs. Williams 104 U.S. 93 Waldon vs.
Skinner - 101 US 577 - Brown vs. Buena Vista
County 95 US 157 - Kate vs. Norton 94 US 746
- Davis vs. Tileston US 6 How. 144 and many
others * * * *

(American Jurisprudence 30A P. 713 Sec. 769)

Relief because of newly discovered evidence from American

Jurisprudence.

''There are cases in which equitable relief against
a judgment may be obtained on the ground of newly
discovered evidence.  This rule prevails where the
newly discovered evidence is material where it is
such as to make it appear with reasonable certainty
that without its aid an opposite result would have
been reached upon the trial, and where the
unsuccessful party at the trial had no knowledge
of the newly discovered evidence and could not
have discovered it by exercise of reasonable
diligence.

- 8 -

5264

This rule has been held to prevail where the newly discovered evidence was within the reach of the unsuccessful party before the trial and might have been produced thereat.   Especially when there is no suggestion of fraud, accident, mistake or any other circumstance preventing the party from having made the defense at law.

(American Jurisprudence 30A p. 718 Sec. 777)

Equity can correct judgment even though applicant is not free from fault.

The general rule is that a Court of Equity in a proper case will interfere where the irregularities or errors are of such character as to make the judgment ipso fact void, regardless of how the court happened to take its unauthorized action particularly where the proceedings appear  regular on the face of the record.  And extrinsic evidence is required to show therein the validy.  Indeed, there is even authority for the rule that where a judgment is void, equitable relieve therefrom may be obtained although the applicant is not free from fault.  And, although there is a remedy at law by appeal, error or  certirori. These rules have been applied to equitable relief against the inforcement of a judgment rendered in a foreign state.

AMERICAN JURISPRUDENCE 30A  Page 709 Sec. 763

A leading case in which many of the principles of equitable relief of judgments are well reasoned and clearly expressed and from which excerpts are hereafter set forth is:

National Surety Co. vs. State Bank

Reading from Page 599

In the case of Borrow vs. Hunton, 99 US 80 25L. Ed 407 lacked the second element the meritorous defense and the court pointed out in that case the radical and controlling difference and the established line of demarkaction between suits to enjoin the collection of judgments for errors and irregularities in the proceedings on which they are based or for illegality

- 9 -

5265

or incorrectness of the judgment or decisions
themselves and the suit to restrain the enforcement
of judgment for new causes such as frauds,
accident or mistakes that prevented meritorious
defenses.  Which the court which rendered the
judgment were not advised and which they neither
considered nor adjudged.  It declared that suits
of the former class would not, while suits of the
latter class would warrant the issuance of an
injunction to restrain the enforcement of the
judgment.  That the case then before it was in the
absence of the meritorious defense of the former
class and for that reason the complainant was not
entitled to relief, (Page 600), this brief review
of the cases cited for Appeal will surfice to show
that their careful reading will demonstrate that
they contain no decision that the Federal Court
may not lawfully enjoin the enforcement of an
unconcionable judgment or decree of the state court
based upon an unfounded claim which the defendant
was prevented by unavoidable accident from
defeating more than this, the evidence with undisputed
principle which has now become so firmly
established by repeated decisions of the Supreme
Court that it is no longer debateable.

A federal circuit court sitting in equity has
jurisdiction to enjoin the enforcement of an
unconscionable judgment of a state or the national
court for a new cause such as fraud, accident,
or mistake which prevented the judgment defendant
from availing himself of a meritorious defense
that was not fairly presented to the court which
rendered the judgment but it has power to take
such action on account of errors or irregularlity
in the proceedings on which the judgment or the
decree is founded or on account of erroneous or
illegal decisions by the court which rendered the
judgment or decree.   The reason of this rule is
that cases of the former class present new
controversies which have never been raised in other
courts of which the Federal Courts cannot escape
jurisdiction if they arise between citizens of the
different states and it will involve the requisite
amount.

- 1 0 -

5266

While cases of the latter class involving jurisdiction
which does not exist, a jurisdiction of the Federal
Court to review and revive the acts and decisions
of courts of coordinate jurisdiction upon questions
which they have lawfully considered and adjudged.
(Cases cited) * * * * *

The court continuing the arguments of council
for appellee - - that although the circuit court of
the United States may enjoin a judgment, plaintiff
from enforcing an unconscionable judgment of a
national court, it is without power to prevent him
from collecting a like judgment of a state court
because Section 720 of the revised statute
(U.S. Comp. St. 1901 P. 581), prohibits the issuance
of an injunction by a Federal Court to state
proceedings in a state court, and because such an
injunction would inaffect nullify the judgment of the
state court and tend to produce a conflict of
jurisdiction between the state and the federal
court having been carefully considered but it is
not persuasive."

Section 720 (US Comp. St. 1901 p. 581) forbids the
federal court from staying the proceedings of the
state court but it does not grant to litigants of whom
the Federal Court has jurisdiction unlimited license
to use an unconscionable judgment of the State Court
to inflict irremediable injury upon the defendants.

Again on Page 601 - -

It is not the judgment of the State Court against
which these appellants level the injunction they seek.
It is against the plaintiff in the judgment, it is
against the unconscionable use by the plaintiff of
the judgment which he has recovered to perpetrate
an unconscionable wrong, the basis of the suit is
the threatened use of the injunction to extort from
the appellant, money which they ought not to be
required to pay and the Federal Court is vested with
the same power and charged with the same duty to
enjoin the Appellees from purportrating their
extortion by means of an unconscionable judgment
of a state court, that is, to prevent them from the
effecting it by the use of such a judgment of a
national court by means of a fraudulant patent,
mortgage or by use of any instrument or device
against which they have no remedy at law.

- 11 -

5267

Again on Page 602

And we leave it with this brief statement of the
reasons which have induced and which amply
sustain the rule of the circuit courts of the
United States have the same jurisdiction and
power to enjoin a judgment, plaintiff from
enforcing an unconscionable judgment of a state
court which has been procured by fraud, accident
or mistake that they have to restrain him from
collecting a like judgment of a federal court.

Again on Page 602 -

There are however, many reasons why this
contention cannot be sustained.  The first and
one that is fatal to the position is:  That it is
an absence of an adequate remedy at law in
the national courts.  And that alone which
conditions, jurisdiction in equity in these courts
and the Appellants have no such remedy.  The
fact that they have a remedy at law in the state
court is not material.  Cases cited * * * *

(Simon vs. Southern Railway Company
236 US Page 115 - readings from P. 126)

authorities would seem to place beyond
question the jurisdiction of the Circuit Court
to take cognizances of the present suit which
is nonetheless an original independant suit
because it relates to judgments obtained in the
court of another jurisdiction.  While it cannot
require the State Court itself to set aside or
vacate the judgments in question, it may as
between the parties before it, if the facts
justify such relief adjudge that Mayer shall not
enjoy the inequitable advantage obtained by
his judgment.  A decree to that effect would
operate directly upon him and would not
controvene that provision of the statute
prohibiting a court of the United States from
granting it a writ of injunction to stay proceedings
in the State Court.

It would simply take from him the benefits of
judgments obtained by fraud.  Whenever a
United States Court could enjoin a plaintiff from
using a judgment absolutely void for want of
service.  The appellant Simon further contends
that Marshall vs. Holmes is not applicable here
because that was a removal case and it is urged

- 12 -

5268

that even if a Federal Court can grant an
injunction in a case removed, it cannot award
the relief in a bill originally brought in the
Federal Court but that is a clear case of
distinction without a difference and was not
the basis of the decision.

ANOTHER CASE IN WHICH THE COURT

CONSIDERED THE QUESTION OF VACATING

JUDGMENT IS:


Wells Fargo and Company vs. Taylor - 254 US
Page 175 -

On Page 185 we find the following language:

"the circuit courts of the United States have the
same jurisdiction and power to enjoin a judgment
plaintiff from enforcing an unconscionable judgment
of a State Court which has been procured by fraud
accident or mistake - that they have to restrain
him from collecting a like judgment of the
Federal Court - that the bill presented a new and
justiciable case which had not been presented - to
nor decided by the State Court and did not fall
under the ban of the Section of the statutes under
consideration. And that in this case, all these
facts condemn: the judgment which it is against
conscience to be allowed to be used to extort
money that is not owing from a defendant,
remediless at law. The complete meritorious
defense to the claim on which this judgment is
based, the fact that the defendant in the judgment
was prevented from availing itself of its defense
to the cause of action by an unavoidable accident
and the absence of any negligence of the defendant
or its agents.

These facts appeal with compelling force to the
conscience of a chancellor. They have been
presented to a court to which theconstitution
and the acts of congress have granted the power
and upon which they have imposed the duty to grant
the relief to which the complainants are equitably
entitled and the decree which dismisses their bill
must be reversed.

(National Surety Co. vs. State Bank 120 Fed. 593).

- 1 3 -

5269

In Lehman vs. Graham

If the Federal Court has jurisdiction of the case, by reason of citizenship, or alienage of the parties, it can grant relief against a judgment of a State Court obtained by fraud (or on other equitable grounds)in any case. in which relief could be granted if the judgment were rendered by a United States Court; and in such a case, a preliminary injunction may be issued against the defendants to prevent the collection of the judgment by executions or otherwise; citing Marshall's vs. Holmes - 141 US 589  - Dutsch vs. Hardskaper 103 US 494 Terry Hout & I.R. Co. vs. Peria & P.V.R. Co.     82 Fed. 943.
Lehman vs. Graham 135 Fed. 39-42.

Fraud not necessary

The court in its large equity powers over its own proceedings had authority even then to set aside the stipulation if it was improvidentally made, or if, in equity or good conscience, it ought not to stand."

Wells vs. Penfield 70 - Minn. 66-70
also see

National Surety Co. vs. State Bank 120 Fed. 593

The judgment, order or decree from the effect of which relief is sought, cannot constitute a bar to an action for equitable relief, since it is solely because of such judgment or order, valid on its face, is collaterially unassailable - that equitable jurisdiction exists and is necessary.

Bacon vs. Bacon 15 C - 477
Campbell  - Kawannenokoa vs. Campbell 152 201C
    The doctrine of res judiciata does not apply in a direct attack on a
    judgment.

- 1 3a-

5270

Caldwell vs. Taylor 218 C 471      88 A L R   1194      Scott vs. Dykes 47C A 2nd 207

A proceeding for equitable relief from a judgment, whether to set it aside or to declare the beneficiary under it a trustee for others, is a direct as distinguished from a collateral attack.

Caldwell vs. Taylor 218 Cal. 471 - Wilson vs. Wilson 55 Cal. 2nd  421

Le Messnagar vs. Vonel 144 C 463

Section 158 - ''There is no provision or principles of law requiring a suit for equitable relief from a judgment to be tried by the court that rendered the judgment 13-

Hurd vs. Touhy 133 C 58      Young vs. Young holding Corp. Ltd. 27 CA (2) 129

Holding the Superior Court of L.A., Co., had jurisdiction to set aside judgment procurred in Kern County involving titles to property situated in Los Angeles - Kern and Orange Counties, and a Federal Court has  jurisdiction to grant such relief from a judgment of a State Court.''  McNeil vs. McNeil 78 Fed. 834 170 F 289

Caldwell vs. Taylor   218 Cal. 471-476)

After giving various examples of fraud, we find in Caldwell vs. Taylor, the following language:

These and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the form and judgment or decree and open the case for a new and fair hearing.

Res-adjudicata not applicable to equitable proceedings setting aside judgments as was said in Caldwell vs. Taylor .

- 1 4 -

5271

"Since the probate of a will is a matter exclusively with the jurisdiction, the probate court equity may not set aside its probate, but it may declare the beneficiary a trustee for those who have been defrauded. (cases cited * * * * * )  And such character of relief is common.  The judgment, order or decree from the effect of relief is sought cannot constitute a bar to equitable relief. A proceedings for equitable relief is not a collateral attack, and since its sole aim and purpose is to avoid the effect of said judgment, the doctrines of res-adjudicata can have no application to such judgment Bacon vs. Bacon 150 Cal. 477; Compelled - Kowanna vs. Campbell 152 Cal. 201 Nat. Surety Co. of N.Y. vs. Sister Barh 120

Fed. 593 - many other cases cited.

(Caldwell vs. Taylor 218 Cal. 471  475)

Equity will grant affirmative relief as required by circumstances from consequences of any "Mistake" of fact which is material element of transaction.  A "Mistake" is some unintentional act or omission or error arising from ignorance, surprise, imposition or misplaced confidence.

(Words and phrases Vol. 27  P. 375)

(Burgess vs. Byrd Tex Civ. App. 69 S. W. 2nd 529-553).

The "mistake" from which equity will relieve may be common to both parties to the contract and consist in either the expression of their agreement or of some matter of inducement thereto or to which it is to be applied.

Words and phrases  - Vol. 27 Page 372

Briggs vs. Watkins   70 S.E. 551 - - 112 VA. 14

<u>Mistake in General</u>

From Words and Phrases     Vol. 27 p. 366

"A state of mind that is not in accord with the facts."

- 1 5 -

5272

I I

## THE STIPULATED JUDGMENT

Paragraph One of the judgment provides that each of the parties have rights in and to the waters of the Temecula-Santa Margarita River and its tributaries and to the use of waters for all beneficial and useful purposes on their respective lands described therein.

SECTION SECOND: - of the judgment adjudges the plaintiff entitled to take and use upon the whole or any part if its lands lying within the Rancho Santa Margarita y Las Flores, 66 2/3 percent of the waters of the Temecula - Santa Margarita river and all its tributaries which naturally, when not artificially diverted or abstracted, flows at measuring Station No. 6. (Note: - - Station No. 6 referred to in said judgment is Ysidora.

SECTION THIRD: - provides defendants may take and use upon the whole or any part of their lands 33 1/3 percent of the waters of the Temecula - Santa Margarita River and all its tributaries which naturally, when not artificially abstracted, flows at measuring Station No. 6.

Thereafter said Section provides the lands upon which the water may be applied and it will be observed that water may be applied to land which is not riparian to the Temecula-Santa Margarita River. Therefore, both plaintiff and defendant under the stipulated judgment may apply waters of the Temecula-Santa Margarita River on land not riparian and outside of the water shed of said river.

SECTION FOUR: - Provides the intervenor Philip Playtor may take and use on lands of said intervenor, one miners inch continuous flow of said river.

SECTION FIVE: - Provides that intervenor "The Murray Schloss Estate" has the right and use of five miners inches continuous flow from a tributary known as Stone Creek from the first day of May each year until the 31st day of October of the first calendar year and that said waters would be only applied to twenty acres found to be riparian.

SECTION SIX: - Provides that the waters apportioned to the intervenors shall be deducated from the waters allocated to the Plaintiff.

- 1 6 -

5273

**SECTION SEVEN: - Provides the establishment of three measuring stations.**

| | |
|---|---|
| | at the upper end of |
| Station One (1) | Nigger canyon |
| Station Three (3) | the upper end of Temecular gorge |
| | downstream from Murrieta Creek. |
| Station Six (6) | At Ysidora |

Said Section 7 further provides the joint cost of the operation of the station to be borne by the plaintiff and defendant.

**SECTION EIGHT :** - provides whenever the total normal flow of the Temecula Santa Margarita River (when not artificially diverted or abstracted) at gaging Station Three (3), exceeds the flow at gaging Station 6, the measurement at Station 3 shall be considered as the total flow of said stream, and the apportionment and allotment of water at such time will be predicated on the flow at Station 3.

**SECTION NINE: -** Provides that for apportioning the defendants 33 1/3 percent of the waters of said stream shall be considered as one-half of the surface flow at Station 6 or Station 3 whichever flow is the greatest. And therein provides that if defendants are extracting or have extracted and diverted waters in excess of the amount to which they are entitled, defendants upon being informed of such fact shall reduce their diversions below the amount to which they are entitled and continue such reduced diversions for the same period of time and amount equivalent to the amount of water which defendants had diverted in excess of entitlement.

**SECTION TEN: -** Makes provision for the defendant to make use of more than 33 1/3 percent of the waters up to the amount of 1500 acres feet depending upon the water level at the windmill well and a table of the amounts in relation to the water level in excess of the 33 1/3 percent which defendants would be permitted to divert and use.

**NOTE:** It will be observed that this right of the defendants to take water in excess of their 33 1/3 percent - shall cease and terminate upon the construction of a dam or resevoir. Defendants having constructed a dam and resevoir since the entry of the stipulated judgment, it would appear they are no longer permitted to extract from the basin or divert from the stream waters in excess of 33 1/3 percent. (Later in this memorandum, we will comment upon the affect of this provision in relation to the construction of the dam.)

- 17 -

5274

Section Ten in detail outlines and limits the amount of abstraction and diversion of the defendants and designates the area and amounts under varying conditions, the manner in which the abstraction of the defendants allocated water from the Temecular basin may be made, and further provides, when and how waters abstracted by the defendants shall be considered a portion of their 33 1/3 percent.

There are then designated three characters of abstractions and diversions which the defendants can make not subject to the Provisions of the section.

1.          Windmill wells for the purpose of supplying water for cattle.

2.          Domestic use for defendants and their tenants.

3.          Surface flow of the stream pursuant to Section 11

SECTION ELEVEN: - provides the irrigation season from May 1 to October 31 during which time defendants shall maintain at gaging Station No. 3 - a constant flow and not less than three cubic second feet (one cubic second feet equallying fifty miners inches.) that said surface flow may be permitted to fall below three second cubic feet under certain conditions and further limits the time and provides condition by which any period in which the flow when less than three second feet shall be made up.

Said section further provides - - - conditions under which excessive diversions by the defendants may be made and limiting the time thereof and the manner in which said excessive diversion shall be made up.

SECTION TWELVE: - provides defendant shall be entitled to divert and apply to beneficial use, an amount of water equal to one-half of the amount of which the plaintiff is entitled to divert from said river and its tributaries. Requires the computation for determining the amount of water which defendants are entitled to divert to be made monthly. This being based on joint measurements and further provides that when such measurements indicate defendant has used less than one-half the amount, they shall be privileged to increase diversions and specifies the times and conditions under which said increase may be made and the location in the Temecula basin from which these extractions may be made.

5275

- 1 8 -

1   **SECTION THIRTEEN** - contains a provision heretofore referred

2   to giving right to parties to construct dams or resevoirs and directing that

3   under these conditions, defendants right to extract and divert storage waters

4   from pursuant to Section 10 shall cease and terminate.

5        Section 13 further eliminates pumping from certain wells during

6   irrigation season.

7

8

9

10                                I   I   I

11

12            MATTERS OF RECORD IN THE WITHIN ACTION WHICH

13

14            AFFECT THE ISSUES RELATING TO RELIEF

15

16                  FROM  PLAINTIFF ENFORCING THE

17

18                     STIPULATED JUDGMENT

19

20        United States of America on January 25th, 1951, filed an action in the

21   United States District Court in and for the Southern District of California,

22   Southern Division No. 1247 seeking therein to have declared its rights to the

23   use of water in the Santa Margarita River and its tributaries and to have

24   this court to quiet its title to those rights to the use of water against the

25   defendants named therein.   Naming the Vail Company as one of the defendants

26   in that action, alleging in Paragraph V - Page 5 of their complaint referring

27   to the former litigation between Rancho Santa Margarita vs. Vail Company.

28        ''the parties to that litigation concluded their differences

29        declared their rights and fixed their aliquot shares of all

30        the waters of the Santa Margarita River''.

31

32                             - 19 -

33

And attached to said complaint as Exhibit "A" the purported stipulated judgment.

It will be noticed in this declaration by the United States in their complaint that "said stipulated judgment was premised upon the findings of the trial court and upon the decision of California's highest court when the matter was on appeal before it" Paragraph 5 - Page 6 "Plaintiff's Complaint "(underscoring ours.)

In Paragraph VI of said complaint, Page 6, The United States alleges "As successors in interest of the Rancho Santa Margarita, a party to the above-mentioned adjudicated proceedings and to the stipulated judgment, the United States of America is entitled to, and claims all rights, titles, interests and privileges of said Santa Margarita."

Plaintiff in all their allegations and claims in said complaint makes all allegations and claims as against VAIL COMPANY to the same extent as said claims and allegations are made against all other defendants.  Furthermore, in said complaint and supplemental and amendatory complaint filed in this action on March 25, 1958, wherein additional defendants were named the

- 20 -

5277

allegations except as herein above referred to on Pages five and 6 of Plaintiff's original complaint were alleged against VAIL COMPANY to the same extent as they were alleged against all other defendants.

On August 25th, 1952, in the within action a pre-trial order was made by the Honorable Leon R. Yankwich and filed in the records of this action which has continued throughout all proceedings and is still in effect as follows:

> "The Court finds that it is for the best interest of the parties hereto and for the public interest that all rights to the use of water in the Santa Margarita River system of all parties to this action be determined as against the others and the filing of cross pleadings is dispensed with as unnecessary and inconvenient."

The same pre-trial order further provides that the issues in this cause are defined and limited in conformity with the stipulation between the State of California and the United States, dated November 29, 1951.

In Count XXI of Plaintiff's Supplimentary Complaint, plaintiff claims perscriptive rights over and above their riparian rights to the use of waters for Camp Pendleton, Naval Hospital, Naval Ammunition Depot, Indian Reservations, National Forests and lands administered by the Bureau of Land Management (Par. II and III. p. - 33 - and claim said rights "against each and every defendant in this litigation".

In Count XXII, Paragraph III p. 35 of said supplementary complaint, plaintiff claims approprative rights to waters within and without the water-shed of the Santa Margarita river and a right to divert and store in Lake O'Neil 4,300 acre feet of water annually.

In Count XXIII - Par. III p. 36 - Plaintiff alleges:

> "The United States of America claims that a military use is a proper riparian use and the United States of America is dependant upon its riparian rights to yield sufficient water to provide the difference between the quantity of water - its non-riparian rights will yield and its maximum military demand which is approximately 23,000 acre feet of water annually."

This Court in pre-trial rulings on motions made and filed in this cause August 8th, 1958, page 23, Paragraph VII-B under the title:

- 21 -

5278

THE EXTENT OF THE RIGHTS OF THE UNITED STATES OF
AMERICA AS A RIPARIAN OWNER TO USE WATER OUTSIDE
THE WATER SHED

Stated L 30      "A claim to use riparian water upon non-riparian
                land would be contrary to the law respecting rights
                of that nature."

P 24  L. 15     "Diversion of water to, and use on, non-riparian
                land constitutes an appropriation of water and is not
                within the riparian right."

The Court having fully covered in its pre-trial ruling of August 8, 1958,
a number of legal principles which have bearing on this memorandum, we
will hereafter in argument make reference thereto and adopt such rulings
as have a bearing on these issues.

There are other legal questions posed in the courts' said pre-trial order
which as the court has indicated would be left open until the time of trial. Some of
these questions we believe will have a bearing on the issues pertaining to
the Stipulated Judgment.   Consequently, we feel that for the court to rule
upon the question of vacating the stipulated judgment, all questions of law
raised on pre-trial should be decided and evidence of all defendants whose
rights are to be determined to be part of the stream system should be first heard
by the Court.


I V

I

MATTERS PERTAINING TO RANCHO SANTA MARGARITA
VS. VAIL COMPANY - No. 42850 WHICH AFFECT
THE ISSUES RELATING TO RELIEF FROM
THE STIPULATED JUDGMENT


Prior to the trial of the action, Santa Margarita vs. Vail and on June 17,
1926. the Vail defendants filed an answer to the amendments to the amended
complaint declaring that many other owners of property located in the Murrieta
Valley and properties lying east of the eastern boundary of the Vail properties
were necessary parties to that action.

- 2 2 -

5279

At the commencement of the former trial, a motion was made by defendants Vail to have such other persons made parties to those proceedings, this motion was resisted by Plaintiff Rancho Santa Margarita and was denied by the trial court. The result of the proceedings on this matter are reflected in the courts findings as follows:

Findings of Fact in re:

Rancho Santa Margarita vs. Vail - Page (1) Lines 10 - 23.

"Thereupon, the defendants presented an oral motion for a continuance of the trial of the action and an abatement thereof, until such time as certain persons not parties of record to the action, but mentioned in the defendants' answer to the amendments to the amended complaint herein, were brought in and made parties to said action by appropriate pleadings of the plaintiff, and until said parties were given an opportunity to assert in said action - such rights, if any, as each might have.

That said motion was opposed by the plaintiff.

That, following argument thereon, and a consideration thereof, by the Court and an examination in the field by said Court of properties involved in said action and the properties of certain of said persons mentioned in said pleadings of the defendants, said motion was denied.

Thereupon, and on to - wit, Wednesday, the third day of November, 1926, the introduction of evidence, oral and documentary, was begun and continued thereafter from day to day with various interruptions and continuances, until Thursday, the 28th day of February, 1929. "

Finding No. 27 P. 60   L 1-19

"The right to the use of the waters of said Temecula - Santa Margarita River, said Murrieta creek and the tributaries of each, is not confined to the parties to this action, but many other persons, many of whom are named in defendants' answer to amendments to the amended complaint, have or claim to have, and are either exercising or claim the right to exercise, riparian rights in the waters of said streams or their tributaries; but all of said parties are not, and no one of said parties is, necessary to the proper adjudication of the rights of the parties of record herein, and the proper adjudication of the rights of the parties to this action does not require that all or any of such other riparian owners should be brough in and required to set up their several cimas in and to the waters of said streams, or

- 23 -

5280

either or any thereof, and as against the defendants and
intervenors herein, it is not impossible to fix the proportion
of the waters of said Santa Margarita river to which the
plaintiff is entitled without bringing in other riparian owners
on said stream.''

The United States plaintiff in the within action, action having
alleged in their complaint (Par. V p. 6.) that the stipulated judgment was
''premised upon the findings of the trial court and upon the decision of
California's highest court'' and the said plaintiff having made declarations
in the record of the present action verbally and in writing and having
produced evidence and exhibits so completely contrary to the findings
which could support a judgment in the previous action, we herein quote
some of the findings of the former trial which clearly demonstrate the
wrongs - the errors - the inequities and mistakes which plaintiff contends
support the stipulated judgment.

Finding 11 P. 22 L 17026

''TEMECULA BASIN''

* * * ''Said basin or valley was eroded by stream action out
of or into a very much larger area and into an ancient plain
composed of a closely compacted, indurated, unassorted and
impervious formation of silts, sand, clays and disintegrated
and decomposed rocks of the basement complex, which ancient
formation is hereafter in these findings designated and termed
''Mesa Silt''.

Intersperced throughout said Mesa Silt formation, remote
one from another and entirely disconnected, of varying
but comparitively small volume, of varying but lesser density
than the general Mesa Silt formation, and located at various
depths below the surface of sad Mesa Silt, are lozenges or
lenses of less compacted, indurated and impervious materials,
in which small amounts of the water so collecting may be
withdrawn, naturally and artificaly, by erosions or wells
cut or driven into said lenses or lozenges.  That the waters
contained in said lenses and lozenges do not constitute an
underground water plane, and in these findings are not embraced
in the term ''underground water plane'' but in these findings such
waters contained in such lenses or lozenges are designated as
''Suspended water planes''.

- 2 4 -

5281

Finding 11 P. 24 - L. 13 - 18

&ast; &ast; &ast; and thus saturate the strata of such Outwash Area of said Temecula Alluvial basin to ancient, impervious material below, and to the confining mesas of ancient impervious material on either side thereof, but not beyond nor into such confining measas;

Finding 11 P. 26 - L 20 - 24

Artesian Area where the deterital deposit above said indurated and impervious ancient Mesa Silt formation is shallower, and where the eroded channel is below the surface and artesian water planes in the adjacent area of the porous fill of sad modern valley, and thence continuing to said Temecula canyon.

Finding 15  P. 35  - L 22 - 31

That the defendants and their predecessors in interest, now and for many years last past, in addition to said surface diversions and pumping plants, have maintained four (4) artesian wells, commonly known and herein referred to as the China Garden, the Dairy, the Main Camp and the Studley artesian wells, and by means thereof, have, during many months of each year but not during the entire year, with drawn waters from the Temecula Alluvial basin in varying amounts,but ordinarily and customarily a total flow of approximately one (1) second foot from said four (4) wells.

Finding 20 P. 48 - L 26  P. 49  L. 27

It is not true that at any time all of the waters flowing into the Pacific Ocean along the channel of said Santa Margarita river is wasted and no devoted to any useful purpose; such waters as now flow and have heretofore flowed into the Pacific Ocean are largely, but not entirely, capable of being impounded on the lands of the plaintiffs and stored for distribution for useful and beneficial purposes on said lands.

That when not artificially interfered with by the defendants, the water flowing in the surface stream of said Santa Marguarita river into, upon and over the lands of the plaintiff will, during the dryer irrigating season of each year, as well as other times, flow by gravity into said Lake O'Neil reservoir, that by the expenditure of reasonable sums of money, the artificial dam at said Lake O'Neil resevoir may be increased in height and the point of diversion of the ditch leading onto said reservoir may be moved upstream and the capacity of said reservoir increased, and the amount of water capable of being stored therein for the beneficial uses on said ranch also increased.

- 2 5 -

5282

It is not a fact that by the expenditure of reasonable sums of
money, or the construction of modern appliances, or the application
of modern methods for the capture, extraction, diversion, storage,
distribution, and use of the waters of said stream which come to
said lands naturally, the plaintiff will have, at all times, or at
any time, quantities of water in excess of the needs of plaintiff
for use on those portions of its riparian lands entitled to take
the said waters and use the same for beneficial and profitable uses
and purposes thereon; neither is it a fact that by the expenditure of
reasonable sums of money by the plaintiff in perfection of a
diversion, storage and distributing system, much less water could
be used to a much greater advantage upon its lands, or the same
rendered immensely increased in value by reason thereof, or that
the lands of the plaintiff would be immensely or largely increased
in value thereby.

Finding 23 P. 54 L 15 - 21

It is not true that said stream, throughout said stretch between
the westerly line of said Temecula grant and the easterly line
of said Santa Margarita ranch, continues to maintain either a
surface or a subsurface flow by reason of any contributions
from surface tributaries or from adjacent sloopes during said
summer or irrigation season, excepting in the instance of
exceptional summer rain storms as herein found.

Finding 23 P. 54 L 23-32   P. 55 L 1-32  P. 56 L 1-13

It is not true that there is a common underground water plane
underlying the whole, or any portion, of said ancient Mesa Silt
formation; but it is true that in lozenges or lenses within said
ancient Mesa Silt formation occur suspended water planes as
herein found; but there is no common water plane substantially
or at all continuous throughout said Mesa Silt formation.

The only underground water planes existing in said area
occupied by said ancient Mesa Silt formation lie within the
porous modern fills constituting the alluvial basins of the
Temecula creek or river and the Murrieta creek or river, and
are bounded by and are co-terminous with the fills of said
modern valleys which have been cut into said ancient formation
of said Mesa Silt.   The limits of these two underground water
planes are co-terminous with the edges or confines of
said eroded valleys of the Temecula and Murrieta creeks, and
in no instance extend into the ancient Mesa Silt formation
beyond or on either side thereof, and the limits of said under-
ground water planes found within said valleys are co-extensive
and in conformity with the boundaries of the eroded modern
valleys, and are confined, as herein found, to the Temecula
Alluvial basin and the Murrieta eroded valley.

- 2 6 -

5283

There is no underground water plane underlying the Temecula creek the Murrieta Creek, the Santa Gertrudis Creek, and the intervening areas between, and there is no underground water plane underlying the lands, or any of the lands, or the streams or any of the streams upon the lands, of the defendants other than the underground water plane of the Temecula Alluvial basin and the underground water plane of the Murrieta eroded valley, as herein elsewhere as more specifically determined and defined.

That the only underground water plane lying beneath any portion of the lands of the defendants, which underground water plane is in contact with, or which is a part of, or which contributes to or supports, or to which there are contributions from the surface flow of said Temecula river or creek, is the underground water plane of the Temecula Alluvial basin, as herein found and described.

* * * That in addition thereto, and wholly separate and apart therefrom, and in no manner communicating therewith, is another and very much smaller water plane, lying beneath portions of the lands of the defendants and parcels of land belonging to other persons not parties of record herein, which lands are within and constitute the fill of the eroded valley of the Murrieta Creek.

Finding 23   P. 56

It is not true that the waters coming into the area of said ancient Mesa Silt formation, or particularly through Nigger Canyon are spread out or absorbed by the soils and saturate a wide mass of subteranian material.

* * * * To bedrock below, of an unknown extent, or to any great extent, or of any greater extent than the eroded channels and the modern filles of the valleys of the Temecula, the Murrieta, the Penjango, the Santa Gertrudis, and other lesser streams occupying valleys eroded by water-action into said ancient Mesa Silt formation, as herein found.

Finding 33  P. 67   L 6   P 32   P. 68   Li. 28

* * * * The defendants own and reasonably claim the right and are entitled to take and use on their lands riparian to said stream in said Vail ranch, one hundred (100) per cent of the water of said Murrieta river or creek, and all its tributaries, which naturally, when not artificially diverted or abstracted, flows and descents in the channel thereof to the mouth of said Murrieta river or creek and to the present location of said Murrieta creek gauging station herein referred to as Measuring Station No. Two. (2).

- 2 7 -

5284

**Finding 33 Page 67**

"The irrigation of the lands of the defendants lying within the watershed of said Murrieta creek and riparian thereto, susceptible of practical and profitable irrigation therefrom, will require, during the summer or irrigating season, but not during the winter or rainy season of the year, the entire surface and subsurface flow of said Mrrieta creek and all its tributaries. The surface and subsurface flow of said Murrieta creek and its tributaries, during the summer or irrigation season, but not during the winter or rainy season of the year, is insufficient in volume, if attempted to be allocated among the parties hereto, other than in its entirety to the defendants, to be susceptible of practical apportionment or division.

For irrigation and domestic uses, the watering of livestock, and other useful and beneficial purposes on the lands of the defendants lying within the watershed of said Santa Gertrudis creek and being riparian thereto, the defendants own and reasonably claim the right, and are entitled to take and use on said lands riparian to Santa Gertrudis creek for said purposes the entire surface and subsurface flow of said creek flowing over or across the whole or any portion of said riparian lands of the defendants herein found to be owned by them at this time.

For irrigation and domestic uses, the watering of livestock, and other useful and beneficial purposes on the lands of the defendants lying within the watershed of said Cottonwood creek and being riparian thereto, the defendants own and reasonably claim the right, and are entitled to take and use on said lands riparian to Cottonwood creek for said purposes the entire surface and subsurface flow of said creek flowing over or across the whole of any portion of said riparian lands of the defendants herein found to be owned by them at this time.

For irrigation and domestic uses, the watering of livestock, and other useful and beneficial purposes on the lands of the defendants lying within the watershed of other tributaries of said Murrieta river or creek and being riparian thereto, the defendants own and reasonably claim the right, and are entitled to take and use on said lands riparian to said tributaries for said purposes the entire surface and subsurface flow of said tributaries flowing over or across the whole or any portion of said riparian lands of the defendants herein found to be owned by them at this time.

- 2 8 -

5285

"Said surface and subsurface flow of said creeks on lands
of the defendants, when and as the same flow during the summer
or irrigation season, but not during the winter or rainy season
of the year, is insufficient in volume, if attempted to be
allocated among the parties hereto, other than in its entirety to
the defendants, to be susceptible of practical apportionment or
division."

There are many other findings of the Court in the Rancho Santa

Margarita vs. Vail suit which are contrary to the present declarations

of the Government and contrary to much of the evidence in the record of

the present case, some of such evidence is undisputed and demonstrates

the erronious concept of the State Court and the litigants therein of the

basic facts upon which the stipulated judgment was based.

It is obvious in the present state of the record that all of the factual

inconsistencies between the conclusions of the trial court in the state

case and those conclusions which of necessity will be reached in the

within action cannot at this time be determined and in all probability

cannot be found until all evidence has been concluded.  We will therefore

of necessity desire to amplify and expand this memorandum to harmonize

facts which may hereafter be established.

One of the vital factors which undoubtedly affected agreement of

the parties to the Stipulated Judgment was their erronious concept

regarding the number of irrigable riparian acres of their respective properties

and the proper allotment of water duty thereto.

Since but part of this evidence is in the record at this time, it will

be necessary that be introduced before its relevency and importance as

it affects the Stipulated Judgment may be property determined.

- 29 -

V

## AFFECT OF PRETRIAL RULINGS AND RULINGS ON MOTIONS OF AUGUST 8, 1958, ON EQUITIES OF THIS STIPULATED JUDGMENT

THE STIPULATED JUDGMENT having provided in second section thereof that "the plaintiff is entitled to take and use upon the whole or any part of its lands within the Rancho Santa Margarita y Los Flores 66-2/3% of the water of said Temecula-Santa Margarita River and all its tributaries".

Before the entry of the Stipulated Judgment, since its existence, and particularly since the United States succeeded thereto, in ever increasing amounts, there have been applied large quantities of water outside of the watershed of the Santa Margarita River. The claim of the right to the use of water in areas such as Stewart Mesa and South Mesa outside of the watershed and the use of water to supply the vast areas constructed by the government for military purposes without the watershed clearly indicate the erroneous concept held by the parties to the stipulated judgment regarding their quantative rights to the use of water of the Santa Margarita River.

The Court in its pre-trial rulings of August 8, 1958, having ruled that there is no right to use riparian water outside of the watershed and in vast areas where large quantities had theretofore been used, most materially affected the quantitive right to the use of water by the Vail Company.

Surely these matters were not contemplated by the parties when considering the terms of the stipulated judgment and clearly demonstrate the gross misconception and mistaken opinions of the facts upon which the stipulated judgment was premised.

The Government, successors in interest to one of the parties to the Stipulated Judgment, having approved and adopted the misconceived belief in the rights of their predecessors and having amplified and expanded the mistaken concept of these rights, should not in equity and good conscience be permitted to jeopardize

- 30 -

5287

the rights of other parties to the stipulated judgment when the division
of waters of the river to them are not apportioned according to the
evidence in this case nor to the well adopted standards of the laws of
the State of California.


V I


RANCHO SANTA MARGARITA VS. VAIL COMPANY


BY


SUPREME COURT OF CALIFORNIA


The trial Court in the Rancho Santa Margarita suit applied a theory
for the determination of riparian acreage of the Vail lands which was
condemned by the Supreme Court in their opinion and was the principal
basis for the reversal of that case.

The trial Court determined that none of the land north and west of
the crest line which divides the Murrieta basin from this Paula basin
was riparian to the Temecula Santa Margarita River.

The Judgment of the Trial Court - Page 6 - Paragraph 15 reads as
follows:

FIFTEENTH: - "The defendants are not entitled to divert
and may not divert, any portion of the waters of Temecula
Creek and convey the same across the Temecula-Murrieta
crest line or watershed divide, as deliniated and defined in
the findings herein, and onto lands in the Murrieta Creek
watershed, excepting on to two parcels of one hundred six
(106) acres and eighty seven (87) acres respectively, located
at the confluence of the Murrieta river or creek and the

- 3 1 -

5288

Temecula-Santa Margarita river, the location of said
lands being deliniated and defined in the findings herein."

After careful analysis of the legal principles affecting this question

and citing authorities therefore, the Supreme Court concluded (Rancho

Santa Margarita vs. Vail 96-49  at 69)

"From what has been said, it must be held that, as to
respondents, all of appellants riparian lands in Temecula
Grant within the Murrieta drainage area are within the
water shed of and riparian to Temecula Santa Margarita
river and that the trial courts holding to the contrary was
erronious."

and on Page 72, when considering the same situation in reference to the

Pauba grant the Supreme Court said:

"We again repeat what was said when considering a similar
problem in reference to the Temecula Grant."

This error of the trial court eliminated in excess of seventeen

thousand acres of the Vail properties from consideration for irrigable

acreage and water duty thereto.


V   I   I


INTERVENORS AS PARTIES TO THE STIPULATED

JUDGMENT


To demonstrate further the falacies errors and mistakes of the

Parties to the Stipulated Judgment and the inequities which time has

proven to exist, let's analyse its effect on the intervenor Playtor.


- 3 2 -

5289

The lands of the intervenor Philip Playtor which are contained in the Stipulated Judgment are involved as are Vail's in the within action. The present owners who are defendants in the present action are Max M. Henderson and Aurelie S. Henderson, husband and wife. These defendants have filed an Amendment to their answer praying that the court in this action relieve them of the unfair limitation placed upon them by the Stipulated Judgment.

The Stipulated Judgment provides in Section Fourth, Page 3 thereof:

" That the intervenor Philip Playtor is entitled to take and use upon the whole or any part of his lands riparian to said Temecula - Santa Margarita River, as hereafter deliniated and defined, one (1) miners inch continuous flow of the waters of said Temecula - Santa Margarita River. * * * * "

The water duty to this property as limited and defined by the Stipulated Judgment would permit the use of less than fourteen and one half (14 1/2) acre feet per annum and when limited to irrigation in the critical months of the dry season would permit the use only of a negligable amount of land.

These defendants (Henderson) at present and for several years past, have under productive cultivation crops and orchards lands which require a water duty in excess of three miners inches continuous flow.

A survey of the properties of the defendants Henderson made by the Department of Ground Water Resources at Camp Pendleton in the present case shows this property to have 22.5 acres of irrigable land with an annual water duty of 52.9 acre feet.

- 3 3 -

5290

# ARGUMENT

## GOVERNMENTS ACTION AFFECTS THE JUDGMENT

By reason of the filing of a Complaint on August 22, 1924, the Defendant Vail's had forced upon them the necessity of long and expensive litigation which they were compelled to endure until December 26, 1940.   For more than sixteen years, these Defendants were plagued with the nuisance, annoyance and expense of costly and oppresive litigation for having committed no greater wrong than owning land and endeavoring to make it yield the products of agriculture.   Considering that these many years of litigation included the great depression of 1929 and the economic hardships of the years that followed, it is a matter of wonderment that they were able to  struggle and survive.

The Plaintiff victors in less than two years after the conclusion of this protracted litigation to wit; January 21st, 1942, made their first conveyance of properties involved in this suit to the present owners and a second conveyance on December 31, 1942, concluded the transfer of properties to their successors and thereby the Government succeeded to their interest in the Stipulated Judgment.

Less than Ten Years after succeeding to the interest in the Stipulated Judgment to wit:

On March 23, 1951 and only ten years and three months after the entry of the stipulated judgment, the successors of interest thereof again involved the parties to the Stipulated Judgment in litigation causing the same parties on the same subject matter to again defend themselves in another protracted and expensive law suit.

- 3 4 -

5291

The present action filed on March 23, 1951, has been in continuous litigation for more than eight years with no end in sight.   For more than twenty four years, the Vail's have been harrassed and burdened with the expense of costly litigation not of their own choosing.

## HE WHO SEEKS EQUITY MUST DO EQUITY

This basic and fundamental axiom of equity as old as the causes which gave rise to the necessity for courts of equity should permeate all equitable proceedings.  And when the Government of the United States, in which we take zealous pride in its fairness in dealing with its citizens, becomes a partisan in a legal contest, we should not expect to find it resisting the application of the principles of  equity but rather insisting that they should be applied.

This unrealistic Stipulated Judgment or as it was referred to in the Ninth Circuit Decision of this case (235 Fed. 2nd 647)  ''a spurious merger of the rights of Vail and the United States''.  (underscoring ours) only emerged after an exhaustive legal struggle and was an expediant by which further combat which spelled destruction was avoided.  It was not predicated upon an agreement by which the application of the well recognized water laws of the State of California were applied but rather upon mistake, errors and  a misconception of the rights of the parties time has dearly demonstrated to be true.

The United States, as successors in interest to one of the parties to the Stipulated Judgment,  who initiated the present action,  is in the absured position of claiming that all owners of property within the water shed of the Santa Margarita River, or at least all persons who own property  which is a part of the stream system are necessary parties to this action, when in the prior action, the Defendants Vail demanded that other users of water on the stream system be made parties to the action and the predecessors of the present plaintiff wrongfully objected thereto and were wrongfully sustained by the trial court.

- 3 5 -

(A copy of the names of the persons whom the Vail's requested be made party to the former action, taken from their answer to the amendment to the complaint, are appended hereafter as "Exhibit A")

## SOME CHANGES TIME HAS BROUGHT

Whether or not the owners of the Rancho Santa Margarita when the Stipulated Judgment was being considered knew that their property was soon to become a great military base, we do not know. But surely the Vail's did not. Of necessity entirely different factors would enter into an agreement purporting to settle the rights of a military installation than would be considered in that of two neighboring farms. The irrigable acreages would be different, the riparian right would be different and the water duty would be different, how the se differences ultimately affect the Government's water rights must await the conclusion of the evidence in this case and some of the rulings which the court has stated in pre trial orders are to be made hereafter.

In considering the factors upon which the Stipulated Judgment was predicated, it is obvious that the parties thereto had a completely mistaken and erronious belief of factual matters as time has proved. They were ignorant of what a few years development of water by other users would have on their judgment. They as well as the court, as witnessed by his findings of facts were in complete ignorance of the geological and hydrological conditions of Santa Gertrudis and Murrieta creeks and basins.

Infact, not until in recent years did the productivity of these areas become known. A unique situation has arisen where the productive capacity of wells in the Murrieta, Santa Gertrudis Basins is greater than that of the Vail Company who have far greater riparian land as well as irrigable acres than the owners in the Murrieta, Santa Gertrudis Basins. One owner alone has almost half the pumping capacity of The Vail Company.

The Vail Company due to the Stipulated Judgment has been forced to curtail development of its irrigable land. Meanwhile, owners adjoining Vail Company (some with no riparian status) have put their lands under irrigation, in some instances practically their entire ownership. Inconsistencies such as this are evident throughout the watershed.

- 3 6 -

5293

# SUPERIOR COURT IN RANCHO SANTA MARGARITA

## VS. VAIL SHOULD HAVE RETAINED CONTINUING

### JURISDICTION

Our Courts through the passage of time like other social and civic institutions gain knowledge and wisdom.

At the present time it is almost universal practice for our courts to retain continuing jurisdiction in cases of this nature.

In the case of Lodi vs. East Bay Public Utility District, the Supreme Court of the State of California as to the major defendant was reversed for this sole reason. The interesting summation and directive to the lower was in the following language.

> This defendant also objects to the decree in that the trial court retained jurisdiction solely to enforce the decree. We think the trial court should retain jurisdiction over the decree not only to enforce it, but to permit changes therein as experience under the decree may show to be necessary. If conditions as they develop indicate that the proposed schedule of operations of this defendant are too restrictive or are unfair and without real benefit to the plaintiff, the court should retain jurisdiction to modify its decree as occasion may require. In view of the reversal as to the other defendant, the decree as to this defendant will be reversed for the sole purpose of permitting the decree thus to be modified.
>
> The judgment is reversed and the cause remanded for the purpose of permitting the trial court to proceed in accordance with the views herein expressed, and as herein limited. All parties to bear their own costs on this appeal.''

(City of Lodi vs. East Bay Public Utility District   7 Cal. 2nd 316 - 346)

In the vast majority of legal actions and proceedings, as for example money judgments, the very nature of the litigation dictates that with the entry of the satisfaction of judgment finality occurs. However, there are some few but extremely important kinds of legal actions among which are actions litigating the rights in stream systems, particularly where underground waters are involved, in which it would appear unwise, unjust and wrongful to freeze the rights of litigants.

5294

- 3 7 -

The evidence in the present case has in the main been supplied by witnesses highly trained and skilled in specialized branches of technical science, and it is obvious that their theories and opinions change rapidly with experience and the passage of time. Indeed we have found divergence of opinion upon matters of vital concern in this case by experts in the same field.

Changes and uncertainties affect the rights and fortunes of those who depend upon water to benefit and enrich their lands, and this is especially true in this area of uncertain and non-dependable rainfall.

Time, development, change, experience, progress, knowledge, acts of God and the elements of nature affect that which is just and equitable in cases of this character.

To require the parties to the stipulated judgment to be bound thereto by the Plaintiff re-litigating the self same matter with new and different contentions and vastly changed understanding of facts and circumstances would be wrongful and unconscionable.

Time has shown the courts that water litigation is a continually changing situation and the error of the State Court's lack of continued juris- diction is well evidenced by the litigation now at hand.

The facts and theories which were the basis for the findings have now been shown in many instances to be wrong. This having been done by the government puts it in a rather unique position, that of trying to enforce a judgment made by their predecessors in interest which they themselves have shown to be wrong by evidence introduced in this trial. The government's actions in the present trial are in direct conflict with the terms of the judgment.

By bringing into the case those who were not admitted by their predecessors, the Government has repudiated the judgment, in that it is endeavoring to establish rights for others that were the Vail's by stipulation.

SHOULD THE PARTIES TO THE STIPULATED JUDGMENT FARE BETTER OR WORSE THAN OTHER DEFENDANTS FOR HAVING PREVIOUSLY SUBMITTED THEIR CAUSE TO A COURT OF JUSTICE?

Equity presupposes equality. To hold that the parties to the stipulated judgment should have their rights herein equated by different standards than their

- 3 8 -

neighbors and other defendants simply because they have previously been subjected to a court of justice just doesn't make sense, on the contrary would condemn and discredit our system for the administration of justice.

How ridiculous, how unconscionable, how wrong and unjust as in the case of Playtor for having subjected the determination of his property rights in the use of water to an American Court of law to find that in a few ensuing years the quantum of water allocated to his property would be 75% less than his neighbors. The same applies to Defendants Vail.  Vail's are not asking for greater or different or special determination of their rights but simply that they be adjudged according to the same standards that apply to any other party to this litigation.  No more or less.

We have the peculiar situation of a litigant coming to court, asking that a judgment of a state court be enforced and at the same time insisting by its own witnesses that the evidence and the very facts upon which the state court rendered its judgment are fallacious.

If this court is going to _enforce_ the judgment which was made as the result of this stipulation, which in turn was made because of the findings of fact which have now been shown to be untrue, the court must determine, first, whether it can give to the Vail's the things that were awarded to them under the terms of that Stipulation and Judgment.  If the court can't do this, if it _can't_ give the Vail's the benefit of the stipulation, _why_ should the court hold them to the _burden_ of the stipulation.

Or, looking at it the other way around, if the United States Government, as the successor in interest of Santa Margarita is coming to court and demanding all the benefits of the Stipulated Judgment, shouldn't it be required, first, to guarantee to the Vail's all of the benefits which they were to receive under the Judgment?

It has been charged that the Vail's are seeking to set aside a judgment when the true situation is that the plaintiff in this action has been trying to rely upon the provisions of a Stipulated Judgment which are in its favor and at the same time to escape all liability on the provisions of that judgment which are against it.

- 3 9 -

F296

The Stipulated Judgment in its allocation and apportionment of waters of the Temecula-Santa Margarita River is grossly unequitable to all parties concerned. The Vail Company is geared to the governments usage which does not conform to any pattern of consistency other than that of national defense. The court has already disallowed the use of water outside the watershed (Stewart Mesa etc.) which, according to the judgment, was permissable. This, in itself, reduces the amount of water Vail's are allowed on the 1/3 - 2/3 basis. By the location of the guaging stations, the water used by owners, other than Vail Company above the confluence of the Temecula, Murrieta Creeks, comes from what the State Court found to be Vail Company's share. The use of water, not considered by the State Court, below Temecula gorge (Fallbrook) reduces flows to the Ysidora guaging station reducing amounts available to both Camp Pendleton and Vail Company.

The maintenance of a summer flow of three second feet is inequitable in that it never reaches Camp Pendleton (as it is pumped by other before it reaches the camp or is lost by evaporation and transpiration in the stream bed) but still must come from the Pauba Basin.

The clause of the judgment regarding storage water in the amount of 1500 acre feet allowed to be pumped from the upper Pauba basin, providing no reservoir is built, is unequitable in that Vail Dam is a benefit to both parties as well as others on the Temecula-Santa Margarita River.

Another gross inequity is evidenced in the Murrieta-Santa Gertrudis basin. Owners in this basin, if the judgment were enforced, would be deprived of their rights as the State Court found that the entire surface and subsurface flow of both streams was allocable to Vail Company.

Changes brought about by new techniques in well drilling and irrigation again bring up the inequities of the judgment. Lands in the Murrieta-Santa Gertrudis basin whose owners were not made parties in the early trial by action of the court are now profitably irrigating with numerous wells in operation.

To treat all defendants on an equal basis, the court must consider them alike upon the basis of riparian land and irrigable acres by which apportionment can be made, not on the State Court's findings which did not give consideration of irrigable acres.

The existing facts make it impossible for the court to enforce the Stipulated Judgment. If the court can't give the Vail Company its 1/3 share of the water, which it was absolutely awarded by the judgment, why should the Vail Company be required to adhere to other terms of the Stipulated

1    The Judgment has already been set aside by the court when the non-riparian

2    land (Stewart Mesa) was deleted from Pendleton's irrigable acreage.  Certainly

3    the court can't enforce the judgment in the case of the owners in the

4    Murrieta-Santa Gertrudis basin whose entire flow was allocated to Vail Co.

5        Errors in the findings are numerous.  Vast areas previously

6    considered as land not suitable for irrigation, are now known to be susceptible

7    to profitable irrigation and, in fact, many are now in use.

8        Althought it is the contention of the Government that the Stipulated

9    Judgment is based on fact, they themselves have disproved many of the facts

10   upon which it was predicated.   Contentions as to geology, hydrology and

11   those of other defendants, as to their lands, show the errors as well as lack

12   of facts upon which the Stipulated Judgment is predicated.  Their's

13   is the position of restricting Vail Company  by the terms of the judgment

14   advantageous to them and at the same time, seeking to avoid any of the

15   burdens through the action of this court.

16       The Vail Company feels in fairness to itself as well as to others,

17   defendants must be relieved of the unjust restrictions of the judgment.  Equity

18   based on all the available facts must be the basis for decision and that cannot

19   be achieved if the Stipulated Judgment is enforced.

20

21

22                            Respectfully submitted,

23

24

25                            GEORGE STAHLMAN

26

27

28

29

30

31

32                              - 41 -

33

5298

EXHIBIT   "A"

Defendants alleges that they are informed and believe, and therefore state, the following persons, firms and corporations owning or claiming to own lands within the water shed of said Santa Margarita River, among others, claim the right or have the right, or are exercising the right to take waters, surface and subterranean, from said Santa Margarita River, and its tributaries, all as hereinabove set forth, and who are necessary parties to a full, equitable and final and complete apportionment of the waters of said river and its tributaries, to-wit:

IN MURRIETTA VALLEY:

W. C. Anderson, W. H. Anderson, William Anderson, G. W. Ball, A. B. Barnett
M. E. Barnett, R. J. Brown, William Brown, M. E. Brown, N. N. Bormose,
F. G. Barnhard, G. E. Buchanan, David E. Buchanan, Grace Beaver,
A. S. Burnham, T. Britzel, Viola Catt, E. J. Collier, Frank Collier,
William Collier, R. D. Crawford, Charles H. Clogaton, John Clugham,
August Cantarini,  J. E. Davis,  Annie L. Davis,  Carolin Ebert,
Arthur Ferrell,   Warren W. Fisher,  Mary Flynn,   Clara B. Garrison,
H. S. Garrison,  E. P. Gripper,  J. C. Glenn, A. Gonzales, Hugo Guenther,
Mary Hillman, I. M. Hall,  A. H. Htchison (& BROWN), Grant Howard,
Jacob Lambert, George B. Lambert, Elizabeth Loyd. A. C. Long, H. C. Loyd,
Lena Matz, Andrew Matz, Alexander B. Mattison, Mary McDougal,
Martha Morhr, George Melton, John McCovy, Mary L. Nance, Jos. Necolas,
Emma Ogden,  P. B. Plumb,   Lucy Palmer, Pacific Clay Products Co.,
O. R. Bail, Charles Bail.  J. R. Roripaugh, Roy Roripaugh, Fred Reichard
Amos J. Sykes, C. R. Swanguen, Security Trust & Savings Bank.  H.B. Small
W. J. Southard, A. J. Sykes, Arthur Seville, Roy C. Thomas, Urban Tarwater,
B. W. Tarwater, Shepard J. Thompson, N. B. Thompson, C. J. Thompson,
M. W. Thompson,  H. G. Torbett, CHARLOTT Tarwater,  Roy T. Wickard
Homer Wickerd, Thomas H. Wilkes, Alfred L. Toodill.

- 1 -

5299

1

## ON TEMECULA CREEK - ABOVE TEMECULA CANYON

2

3

4   Henry H. Bergman, Jacobest Bergman Est., Otmar Bauer, George W. Bailey,

5   Mary A. Bailey, Harry E. Causey, William Chapman, O. C. Crawford,

6   F. S. DeCoursey, Mrs. H. B. Dubbner  H. Escalier, Roy Fernald

7   T. G. Harriman, Lucius B. Heard, Alwil Hacklamler, H. P. Jones, James LaRue

8   J. G. Lybarger,  A. L. Maddox,  J. J. G. Miller,  Lulu McCarrell, John G. Pfau,

9   M. M. Robertson, Margaret C. Seclay, Charles A. Stotts, Harriett J. Simmons,

10  Daniel J. Tripp, Clinton G. Tripp, Caroline Tripp, Paul Thompson,

John Wentworth.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  Exhibit "A"

28

29

30          - 2 -

31

32

33

5300