GEORGE STAHLMAN
Route #1, Box 235
Fallbrook, California

Telephone: RAndolph 8-2310

and

EARLE K. STANTON
139 North Broadway
Los Angeles 12, California

Attorneys for defendant
Vail Company

# FILED

AUG 28 1959

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

    vs.

FALLBROOK PUBLIC UTILITY DISTRICT,
et al.,

                Defendants.

No. 1247-SD-C

MEMORANDUM OF POINTS AND AUTHORITIES

IN RE STIPULATED JUDGMENT

- - -

SUBMITTED BY VAIL COMPANY

5351

TOPICAL INDEX

Page

CONTENTIONS OF THE VAIL COMPANY:                          2

I.   The Stipulated Judgment is Defective
     and Invalid Because:                                 2

     A.  It purports to divide all water arbitrarily
         between the two ranches, except for two
         intervenors, and fails to consider other users
         who were not made parties.  This is contrary
         to the present Government contention that
         all interested parties should be before the
         Court.  For the first time, all such parties
         are before the Court

     B.  It erroneously and improperly permits the use
         of riparian waters upon non-riparian lands,
         which is contrary to the pre-trial order of
         August 8, 1958.

     C.  It is predicated upon findings that the Vails
         were entitled to all waters of the Santa
         Gertrudis and Murrietta Rivers, which is
         contrary to the facts as developed.

     D.  It erroneously required the Vails to furnish
         a definite flow of water to Santa Margarita
         without regard to existing conditions.

     E.  It erroneously failed to retain jurisdiction
         for the purpose of making future necessary
         readjustments to meet changed conditions.

     F.  It does not rise to the dignity of a legal
         judgment and amounts to no more than an agree-
         ment of the parties.

-1-

5352

Page

II. The Stipulated Judgment Was the Result
of Mutual Mistake:                                          3

A. As to geologic and hydrographic conditions.

B. As to future development, utilization and
possible irrigation of the lands, and
scientic advances.

C. As to establishment of Camp Pendleton and its
water requirements, entirely different from
Santa Margarita.

D. As to the parties' legal right to divide the
water arbitrarily without regard for other
users.

III. The Stipulated Judgment is Unconscionable
and Inequitable:                                           3

A. It has been found to be ambiguous, impractical,
unfair, confusing in interpretation, and
difficult in operation.

B. The Government's action in seeking unusual
water rights, claiming the benefits of the
judgment but endeavoring to escape its detri-
ments indicates the inequitable nature of the
judgment under present conditions.

C. The great change in conditions, including the
change in the Santa Margarita Ranch from
farming to military use with different and
increased use of water, is grossly unfair to
the Vail Ranch, and was not in contemplation
of the parties when the stipulated judgment
was entered.

D. Under the laws of California the Vail Ranch is
entitled to a larger share of the water than
the United States.

-ii-

E.  The stipulated judgment was entered by the
    parties after long and costly litigation, and
    reversal by the California Supreme Court, as
    an expedient to avoid further litigation,
    after which the Government filed the present
    action, again subjecting the Vails to enormous
    expense in attorney fees, costs, etc., in the
    present litigation already continuing for more
    than 7 years, with no immediate end in sight.

F.  The Government's present contentions as to
    entitlement and the basis therefor are differ-
    ent from the contentions of their predecessors,
    the Santa Margarita Ranch.

G.  The stipulated judgment, under present condi-
    tions, makes the Vails' quantitative entitlement
    dependent upon the alleged rights of the
    Government.

H.  Stream flow measurements being subject to
    errors of large percentage (testimony of
    Hoffman), demonstrates that measurements as
    provided in the stipulated judgment are
    impracticable and do not permit a division
    even under the judgment.

I.  The stipulated judgment departs from the estab-
    lished California law in respect to the
    methods prescribed for apportionment of water.

## POINTS AND AUTHORITIES

### I

THIS COURT IS EMPOWERED TO RELIEVE THE VAIL
COMPANY FROM THE OPERATION OF THE STIPULATED
JUDGMENT.                                                     5

### II

THE FACT THAT THIS WAS A STIPULATED JUDGMENT
DOES NOT PREVENT THE COURT FROM RELIEVING
THE VAIL COMPANY OF ITS PROVISIONS.                          10

### III

THE UNCONSCIONABLE AND INEQUITABLE NATURE
OF THE STIPULATED JUDGMENT IN RESPECT TO
PRESENT CONDITIONS REQUIRES THAT THE VAIL
COMPANY BE RELIEVED FROM ITS PROVISIONS.                     13

### IV

THIS COURT IS EMPOWERED TO RELIEVE THE VAIL
COMPANY FROM THE STIPULATED JUDGMENT BECAUSE
OF THE MUTUAL MISTAKE OF THE PARTIES.                        16

### V

THIS COURT IS EMPOWERED TO RELIEVE THE
VAIL COMPANY FROM THE STIPULATED JUDGMENT
BECAUSE IT FAILED TO COMPLY WITH THE
FINDINGS AND WAS INDEFINITE AND INCOMPLETE.                  21

### VI

THE STIPULATED JUDGMENT ERRONEOUSLY AND
INEQUITABLY FAILED TO RETAIN JURISDICTION
FOR THE PURPOSE OF MAKING NECESSARY
READJUSTMENTS OF WATER RIGHTS TO ACCORD
WITH CHANGED CONDITIONS.                                     23

CONCLUSION                                                   26

-iv-

5355

## TABLE OF AUTHORITIES CITED

| Case | Page |
|------|------|
| Alhambra Addition Water Co. v. Richardson, 95 Cal. 490 | 11 |
| Allen v. California Water and Telephone Co., 29 Cal. 2d 466 | 23,25 |
| Andres v. Armstrong, 168 A.C.A. 426, 335 P. 2d 1005 | 20 |
| Baucus v. Riveroll, 95 Cal. App. 224 | 12 |
| Belt v. Mehen, 2 Cal. 159 | 17 |
| Benson v. Bunting, 127 Cal. 532 | 19 |
| Beronio v. Ventura County Lumber Co., 129 Cal. 232 | 23 |
| Bradley Co. v. Bradley, 165 Cal. 237 | 17 |
| Broderick v. Cochran, 18 Cal. App. 202 | 18 |
| Burr v. Maclay Rancho Water Co., 154 Cal. 428 | 7 |
| Clemens v. Gregg, 34 Cal. App. 272 | 23 |
| Cowell v. Armstrong, 210 Cal. 218 | 21 |
| Crane v. J. J. Stevinson, Inc., 5 Cal. 2d 387 | 21 |
| Daneri v. Gazzola, 2 Cal. App. 351 | 17 |
| DeLeonis v. Hammel, 1 Cal. App. 390 | 8 |
| Donovan v. Aetna Indemnity Co., 10 Cal. App. 723 | 10 |
| Douglass v. Todd, 96 Cal. 655 | 18 |
| Duerr v. Sloan, 50 Cal. App. 512 | 11 |
| Erskine v. Upham, 56 Cal. App. 2d 235 | 8 |
| Evarts v. Jones, 170 A.C.A. 214 (May, 1959) | 16 |
| Everett v. Cutler Mills, 52 R.I. 330 | 19 |
| Everett v. Everett, 309 S.W. 2d 893 (Tex. Civ. App.) | 13 |
| J. D. Flournoy Co. v. Coffman, 195 Cal. 107 | 12 |
| Follette v. Pacific Light and Power Corp., 189 Cal. 193 | 14 |
| Gould v. Eaton, 117 Cal. 539 | 5 |
| Herman v. Kennard Buick, 93 N.W. 340 (Wis.) | 19 |
| Kaufman v. Shain, 111 Cal. 16 | 18 |

-v-

Kelsey Co. v. Spears, 37 Cal. App. 27 — 19

Laun v. Kipp, 155 Wis. 347 — 9

Lodi v. East Bay Municipal Utility District,
7 Cal. 2d 316 — 26

Los Angeles v. Baldwin, 53 Cal. 469 — 6

Los Angeles v. Glendale, 23 Cal. 2d 68 — 10

Louisville and N.R. Co. v. Bridgeport,
20 Ala. App. 326, 101 So. 807 — 15

Malloy v. Pierson, 37 Cal. App. 486 — 15

McCormick v. Woodman of the World, 57 Cal. App. 568 — 11

Metcalf v. Williams, 104 U.S. 93 — 16

Mitchell v. California-Pacific Title Ins. Co.,
79 Cal. App. 45 — 18

Moffitt v. Jordan, 127 Cal. 628 — 12

Montecito Valley Water Co. v. City of
Santa Barbara, 144 Cal. 578 — 7

Muchenberger v. City of Santa Monica, 206 Cal. 635 — 16

Nelson v. Robinson, 73 Cal. App. 2d 263 — 21

Oakland v. Oakland Waterfront Co., 118 Cal. 160 — 22

Orchard v. Cecil F. White Ranches, Inc.,
97 Cal. App. 2d 35 — 25

Owen v. Herzihoff, 2 Cal. App. 622 — 17

Painter v. J. B. Painter Co., 133 Cal. 129 — 15

Pasadena v. Alhambra, 33 Cal. 2d 908 — 9,24

Patch v. Miller, 125 Cal. 240 — 23

Peabody v. City of Vallejo, 2 Cal. 2d 351 — 24

People v. Bailey, 30 Cal. App. 581 — 23

People's Ditch Co. v. Fresno Canal and
Irrigation Co., 152 Cal. 87 — 18

Peterson v. Holder, 45 Cal. App. 278 — 18

Pickford v. Talbot, 225 U.S. 651 — 15

Pomona Land and Water Co. v. San Antonio
Water Co., 152 Cal. 618 — 7

Prather v. Hoberg, 24 Cal. 2d 549 — 28

Prill v. Illinois State Motor Service,
147 N.E. 2d 681 (Ill.) — 12

-vi-

| | |
|---|---|
| Rancho Santa Margarita v. Vail, 11 Cal. 2d 501 | 7,27 |
| Riverside Rancho Corp. v. Cowan, 88 Cal. App. 2d 197 | 8,14 |
| Roberts v. Roberts, 81 Cal. App. 2d 871 | 15 |
| Roman Catholic Archbishop v. Shipman, 69 Cal. 586 | 15 |
| San Bernardino v. Riverside, 186 Cal. 7 | 25 |
| San Joaquin and Kings River Canal & Irrigation Co. v. Fresno Flume and Irrigation Co., 169 Cal. 174 | 9 |
| Sellar v. Sellar, 158 Cal. App. 2d 286, 322 P. 2d 219 | 19 |
| Smith v. Stanolind Oil and Gas Co., 197 Okla. 499 | 27 |
| Smith v. Wheeler, 107 Cal. App. 2d 451 | 24 |
| Southern Pacific Co. v. Robinson, 132 Cal. 408 | 27 |
| Sparr v. Tennant, 35 Okla. 125 | 16 |
| Staples v. Hawthorne, 208 Cal. 578 | 11 |
| Stites v. McGee, 37 Or. 574 | 20 |
| Sullivan v. Lumsden, 118 Cal. 664 | 17 |
| Thompson v. Maxwell Land Grant and R. Co., 95 U.S. 391, 24 L. Ed. 481 | 7 |
| Times Mirror Co. v. Superior Court, 3 Cal. 2d 309 | 8 |
| Truett v. Onderdonk, 120 Cal. 581 | 11 |
| Tulare Irr. Dist. v. Lindsay-Strathmore Irr. Dist., 3 Cal. 2d 489 | 25 |
| United States v. Swift & Co., 286 U.S. 106, 76 L. Ed. 999 | 10 |
| U.S. Casualty Co. v. Industrial Accident Commission, 122 Cal. App. 2d 427 | 14 |
| Verdugo Canyon Water Co. v. Verdugo, 152 Cal. 655 | 20 |
| Walden v. Skinner, 101 U.S. 577 | 17 |
| Watson v. Dillon, 6 Cal. 2d 33 | 15 |
| Wells v. Penfield, 70 Minn. 66 | 13 |
| Whipple v. Houston County, 105 S.E. 2d 898 (Ga.) | 19 |
| Wiggin v. Muscupiabe Land & Water Co., 113 Cal. 182 | 5 |
| Wisconsin v. Michigan, 295 U.S. 455, 79 L. Ed. 1541 | 20 |
| Wixson v. Devine, 80 Cal. 385 | 22 |
| Wuest v. Wuest, 53 Cal. App. 2d 339 | 8 |

5359

## CODE

|  | **Page** |
|---|---|
| Code of Civil Procedure, Section 473 | 18,20 |

## TEXTBOOKS

| | |
|---|---|
| 30 American Jurisprudence, Sec. 756, p. 703 | 14 |
| 30 American Jurisprudence, Sec. 765, p. 710 | 13 |
| 139 American Law Review 429 | 13 |
| 139 American Law Review 443 | 27 |
| California Law Review, 37: 713-18, December 1949, (Pasadena v. Alhambra) | 9 |
| Freeman on Judgments, pp. 510, 511 | 14 |
| Freeman on Judgments, p. 1100 | 12 |
| Hutchins on California Law of Water Rights, p. 355 | 24 |
| Wiel on Water Rights in the Western States, p. 824 | 5 |
| 27 Words and Phrases, p. 366 | 16 |

1    TO THE HONORABLE JAMES M. CARTER, JUDGE PRESIDING:

2

3             <u>CONTENTIONS OF THE VAIL COMPANY</u>

4

5      The following Memorandum of Points and Authorities,

6 enumerating the grounds relied upon by the Vail interests

7 in asking that the Vails be relieved from the provisions of

8 the stipulated judgment entered in the <u>Santa Margarita vs.</u>

9 <u>Vail</u> action, and relied upon by the United States in the

10 present case, is respectfully submitted in response to the

11 request of Judge Carter that such a memorandum be furnished.

12 (Rep. Tr., p. 10,384.)

13      It is the Vails' contention that they should be relieved

14 from provisions of the stipulated judgment for the following

15 reasons:

16    I.    <u>The Stipulated Judgment is Defective</u>

17        <u>and Invalid Because:</u>

18        A.    It purports to divide all water arbitrarily

19            between the two ranches, except for two

20            intervenors, and fails to consider other

21            users who were not made parties.  This is

22            contrary to the present Government contention

23            that all interested parties should be before

24            the Court.  For the first time, all such

25            parties are before the Court.

26        B.    It erroneously and improperly permits the use of

27            riparian waters upon non-riparian lands, which

28            is contrary to the pre-trial order of August

29            8, 1958.

30        C.    It is predicated upon findings that the Vails

31            were entitled to all waters of the Santa

32            Gertrudis and Murrietta Rivers, which is con-

-2-

1   trary to the facts as developed.

2   D.  It erroneously required the Vails to furnish a

3   definite flow of water to Santa Margarita without

4   regard to existing conditions.

5   E.  It erroneously failed to retain jurisdiction for

6   the purpose of making future necessary readjust-

7   ments to meet changed conditions.

8   F.  It does not rise to the dignity of a legal

9   judgment and amounts to no more than an agree-

10   ment of the parties.

11

12   II.  The Stipulated Judgment Was the Result

13   of Mutual Mistake:

14   A.  As to geologic and hydrographic conditions.

15   B.  As to future development, utilization and

16   possible irrigation of the lands, and

17   scientific advances.

18   C.  As to establishment of Camp Pendleton and its

19   water requirements, entirely different from

20   Santa Margarita.

21   D.  As to the parties' legal right to divide the

22   water arbitrarily without regard for other users.

23

24   III.  The Stipulated Judgment is Unconscionable

25   and Inequitable:

26   A.  It has been found to be ambiguous, impractical,

27   unfair, confusing in interpretation, and diffi-

28   cult in operation.

29   B.  The Government's action in seeking unusual water

30   rights, claiming the benefits of the Judgment

31   but endeavoring to escape its detriments

32   indicates the inequitable nature of the

-3-

5361

1          judgment under present conditions.

2    C.  The great change in conditions, including the

3         change in the Santa Margarita Ranch from farming

4         to military use with different and increased use

5         of water, is grossly unfair to the Vail Ranch, and

6         was not in contemplation of the parties when the

7         stipulated judgment was entered.

8    D.  Under the laws of California the Vail Ranch is

9         entitled to a larger share of the water than the

10       United States.

11    E.  The stipulated judgment was entered by the parties

12       after long and costly litigation, and reversal

13       by the California Supreme Court, as an expedient

14       to avoid further litigation, after which the

15       Government filed the present action, again sub-

16       jecting the Vails to enormous expense in attorney

17       fees, costs, etc., in the present litigation

18       already continuing for more than 7 years, with

19       no immediate end in sight.

20    F.  The Government's present contentions as to entitle-

21       ment and the basis therefor are different from the

22       contentions of their predecessors, the Santa

23       Margarita Ranch.

24    G.  The stipulated judgment, under present conditions,

25       makes the Vails' quantitative entitlement dependent

26       upon the alleged rights of the Government.

27    H.  Stream flow measurements being subject to errors

28       of large percentage (testimony of Hoffman),

29       demonstrates that measurements as provided in the

30       stipulated judgment are impracticable and do not

31       permit a division even under the judgment.

32    I.  The stipulated judgment departs from the established

-4-

1   California law in respect to the methods prescribed

2   for apportionment of water.

3

4   POINTS AND AUTHORITIES

5   I

6   THIS COURT IS EMPOWERED TO RELIEVE THE

7   VAIL COMPANY FROM THE OPERATION OF THE

8   STIPULATED JUDGMENT.

9   Where the court found that the defendants' tunnel, as now

10  used, diverts a specified quantity of water from the stream,

11  and will continue to do so "under conditions now existing",

12  upon a showing of the change of condition to an extent author-

13  izing interference of the court, or that the operation and use

14  of the tunnel will justify it, the defendant may apply to the

15  court for a corresponding change in the judgment.

16      Gould v. Eaton, 117 Cal. 539.

17

18      This is because an apportionment decreed in equity is not

19  a severance of rights such as occurs in partition between

20  tenants in common, but is an equitable expedient to enforce,

21  under existing conditions, the unseverable right of each party

22  to a reasonable use of the riparian land.

23      Wiel on Water Rights in the Western States, page 824,

24      citing Wiggin v. Muscupiabe Land & Water Co., 113 Cal. 182.

25  This same writer goes on to say that

26  "The apportionment is decreed in equity to afford equality

27  on the facts existing at the time; on the circumstances

28  then existing.  Where a circumstance is changed so that

29  the decree no longer represents equality and reasonable

30  division, then a readjustment must be had under the new

31  conditions."

32

-5-

1       This text mentions many changing conditions, such as dif-
2  ferent crops requiring different quantities of water, differ-
3  ences in seasons and crops, change in the flow of streams, new
4  parties who were not previously considered,

5       "All these things may produce changes subsequent to an
6       apportioning decree to such an extent that the substantive
7       right of each contestant to the equal, reasonable use of
8       their respective lands is no longer secured by the decree.
9       This equality must depend upon circumstances, and the
10      adjustment must change when they change.  An equalized
11      distribution at one time may become unequal at a later
12      point of time."

13

14  The concurring opinion of Rhodes, J., in
15      Los Angeles v. Baldwin, 53 Cal. 469, 474,
16  is directly applicable to the present situation:

17      "In ordinary controversies between the parties claiming
18      only as riparian proprietors on the same stream of water,
19      a judgment determining that at a given time the parties
20      are entitled to appropriate the waters in certain pro-
21      portions is not necessarily conclusive in a subsequent
22      action; for the facts upon which rests the determination
23      as to the proportion of the waters to which the parties
24      are entitled may be materially different at the second
25      trial.*** In other words, where the parties claim merely
26      as riparian proprietors, the proportions to which they may
27      respectively be entitled may vary from time to time, in
28      accordance with the facts existing at the respective
29      times."

30

31      There appears to be no possible doubt whatsoever, that
32  this Court has the authority to disregard the terms of the

-6-

5364

1   stipulated judgment and to relieve the Vails from its require-
2   ments; and thereafter to make whatever equitable distribution
3   of water may seem proper as between the parties under the
4   present conditions.

5        "Sometimes, from the neglect of parties or some other
6        cause, it becomes impossible to carry a decree into
7        execution without the further decree of the court. This
8        happens, generally, in cases where the parties having
9        neglected to proceed upon the decree, their rights under it
10       became so embarrassed by a variety of subsequent events
11       that it is necessary to have the decree of the court to
12       settle and ascertain them."  (Emphasis supplied.)
13            Thompson v. Maxwell Land Grant and R. Co.,
14                95 U.S. 391, 24 L.Ed. 481, at p. 484.

15

16       The adjustment of water rights is a particular subject of
17   equity jurisdiction, and a judgment in respect thereto may be
18   modified in accordance with the rules of water rights.
19            Burr v. Maclay Rancho Water Co., 154 Cal. 428.

20

21       Not only does a court of equity have broad powers in respect
22   to water rights, but it is the duty of the court to decide the
23   issues regardless of the difficulties which may be met, and
24   the matter must be determined with such exactness as may be
25   possible.
26            Pomona Land and Water Co. v. San Antonio Water Co.,
27                152 Cal. 618;
28            Montecito Valley Water Co. v. City of Santa Barbara,
29                144 Cal. 578.

30

31       When the original judgment in Rancho Santa Margarita v.
32   Vail, 11 Cal. 2d 501, was before the Supreme Court of California,

5365

1     that court correctly stated that in a suit to have water rights

2     declared and for an injunction, the trial court sits as a court

3     of equity, and as such, possesses broad powers to see that

4     justice is done in the case.

5         The broad and flexible powers of a court of equity may be

6     invoked to deal with novel situations arising from the increas-

7     ing complexities of changing times.

8          Wuest v. Wuest, 53 Cal. App. 2d 339.

9

10        A court's equitable powers will expand to cope with

11     unusual situations, and such court is empowered to do exact

12     justice between the parties and to enter a judgment that would

13     fairly meet the situation.

14          Riverside Rancho Corp. v. Cowan, 88 Cal. App. 2d 197.

15

16        In an equitable action, the court, in making final disposi-

17     tion of the case, is governed by the circumstances as they

18     exist at the time of the decree.

19          Erskine v. Upham, 56 Cal. App. 2d 235.

20

21        It has been said that appropriate remedies, such as

22     determining the priorities of opposing equities, may be had

23     between proper parties, under our system, whenever they are

24     required upon equitable circumstances and are justified by the

25     pleadings and proof.

26          DeLeonis v. Hammel, 1 Cal. App. 390.

27

28        Equity does not wait upon precedent which exactly squares

29     with the facts in controversy, but will assert itself in those

30     situations where right and justice would be defeated but for

31     its intervention.

32          Times Mirror Co. v. Superior Court, 3 Cal. 2d 309.

5386

1    "No rule can be formulated setting a definite

2    boundary beyond which a court of equity cannot go

3    as a matter of power, or will not go as a matter

4    of policy in preventing the enforcement of an

5    unconscionable judgment."

6    Laun vs. Kipp, 155 Wis. 347.

7    In the above case it was said that a court of equity may

8    look behind a judgment of law in order to do justice between

9    the parties.

10

11    The right of a defendant, determined by a prior judgment,

12    which was limited to flood waters of a creek, was held not a

13    bar to a cause of action subsequently arising from another taking

14    of water, which diminished the natural flow of the waters of

15    the creek.

16    San Joaquin and Kings River Canal & Irr. Co.

17    v. Fresno Flume and Irr. Co., 169 Cal. 174.

18

19    In an action involving conflicting rights in ground

20    waters, a provision in a judgment imposing a five-year limita-

21    tion upon the power to review the determination of safe yield

22    for either or both units of the basin area, tended to defeat

23    the purpose of the rule giving the trial court continual

24    supervisory powers in water rights cases.  The judgment was

25    therefore modified on appeal by striking such provision

26    there from.

27    Pasadena v. Alhambra, 33 Cal. 2d 908,

28    discussed in California Law Review, 37: 713-18, December, 1949.

29

30    In an action by one city to quiet title to water rights

31    as against other cities, a judgment in a prior action reaffirm-

32    ing pueblo rights to water in connection with one defendant's

-9-

1    right to pump water, was held not res judicata against this

2    defendant as to events occurring since the judgment relied upon.

3          Los Angeles v. Glendale, 23 Cal. 2d 68.

4

5                  II

6        THE FACT THAT THIS WAS A STIPULATED JUDGMENT

7        DOES NOT PREVENT THE COURT FROM RELIEVING

8        THE VAIL COMPANY OF ITS PROVISIONS.

9      It has been held in a proceeding under the anti-trust

10   laws, that a court of equity could modify in adaptation to

11   changed conditions, a decree of injunction directed to events

12   to come, even though it was entered by consent, and whether

13   or not the power to modify was reserved by its terms.  The

14   Supreme Court there said:

15       "We are not doubtful of the power of a court of equity

16       to modify an injunction in adaptation to changed conditions

17       though it was entered by consent.  *** If the reservation

18       (of power to modify) had been omitted, power there still

19       would be by force of principles inherent in the

20       jurisdiction of the chancery."

21       United States v. Swift & Co., 286 U.S. 106, 114;

22          76 L.Ed. 999, 1005.

23

24      A judgment entered on a stipulation is none the less a

25   judgment of the court because consented to by the parties.

26       Donovan v. Aetna Indemnity Co., 10 Cal. App. 723.

27

28      The California Code does not provide for a motion to stay

29   the entry of a judgment valid on its face and based upon

30   consent of the parties, or to set aside such a judgment, where

31   the motion is based upon extraneous facts, which, if true,

32   would make the entry and enforcement of such judgment inequit-

5368

1  able, since in such case <u>the parties must resort to an</u>

2  <u>independent suit in equity</u>.

3       <u>Duerr v. Sloan</u>, 50 Cal. App. 512.

4

5       In this connection it has been said that courts will not

6  permit the course of justice upon trials before them to be

7  stipulated and controlled in such a manner as to defeat the

8  ends to be subserved by such trials.

9       <u>McCormick vs. Woodmen of the World</u>, 57 Cal. App. 568.

10

11       The present case is also suggested by the statement that a

12  stipulation of two defendants that judgment might be entered

13  in the action does not in any way affect the right of plaintiff

14  as to the remaining defendants in the case.

15       <u>Staples v. Hawthorne</u>, 208 Cal. 578.

16

17       If by the terms of a stipulation, entered into after the

18  commencement of a former action, the defendants acquired any

19  rights in water flowing through their lands in pipes of the

20  plaintiff, other or different from those specified in the

21  judgment, they are entitled to be protected therein in a

22  subsequent action involving water rights.

23       <u>Alhambra Addition Water Co. v. Richardson</u>, 95 Cal. 490.

24

25       The California courts have said that it is always competent

26  for a court to control stipulations in the interest of justice

27  where for any reason they have been improvidently entered into.

28       <u>Truett v. Onderdonk</u>, 120 Cal. 581.

29

30       Where a stipulation has been entered into through inadvert-

31  ence, excusable neglect, and mistake of facts, a motion to be

32  relieved therefrom is addressed to the sound discretion of the

-11-

5369

1   court; and an appellate court will not interfere with the exer-

2   cise of that discretion in doubtful cases unless it is apparent

3   that the court has abused its discretion.

4         Moffitt v. Jordan, 127 Cal. 628;

5         Baucus v. Riveroll, 95 Cal. App. 224.

6

7     In a water case where it appeared that a plaintiff had

8   acquired his interest from one of the defendants and that in

9   a previous suit between the defendants to which the plaintiff

10   was not a party, a judgment had been rendered by consent deter-

11   mining the respective interest of the parties, the court held

12   that it was proper to later enter a decree to the effect that

13   the plaintiff's interest should be taken from his grantor's

14   share of the water.

15         J. D. Flournoy Co. v. Coffman, 195 Cal. 107.

16

17     The proposition that consent judgments are as conclusive

18   on collateral attack as judgments rendered after a trial, has

19   not been strictly applied in cases involving public interest.

20   Hence if a decree shows that it was the result of a compromise

21   by which the merits were not considered, it is not conclusive

22   upon the public or persons represented.

23         Freeman on Judgments, page 1100.

24

25     Since the California courts have held that the use of

26   water is a matter of public interest, the above quotation from

27   Freeman seems appropriate.

28

29     It has been held in various cases that consent judgments

30   are not strictly judicial determinations, but merely record a

31   settlement or agreement between the parties.

32         Prill v. Illinois State Motor Service, 147 N.E. 2d 681
            (Ill.)

-12-

1    Consent judgments are construed as contracts and the

2    rules relating to contracts apply.

3        *Everett v. Everett*, 309 S.W. 2d 893 (Tex. Civ. App.)

4

5

6                              III

7        THE UNCONSCIONABLE AND INEQUITABLE NATURE

8        OF THE STIPULATED JUDGMENT IN RESPECT TO

9        PRESENT CONDITIONS REQUIRES THAT THE VAIL

10       COMPANY BE RELIEVED FROM ITS PROVISIONS.

11       The right to equitable relief when it is against conscience

12   to execute a judgment is particularly available where there

13   are equitable circumstances arising after the rendition of

14   the judgment, and there are instances where the courts have

15   invoked their equity powers to open or modify a consent judg-

16   ment or decree so as to relieve from hardship or overreaching.

17       139 A. L. R. 429.

18

19       In a proper case a judgment based upon a stipulation may

20   be set aside on the ground that it was improvidently made or

21   ought not in equity or good conscience to stand, and this may

22   be done even although the opposite party was not guilty of

23   fraud, collusion or bad faith.

24       *Wells v. Penfield*, 70 Minn. 66;

25       *30 American Jurisprudence*, p. 710, Sec. 765.

26

27       Where a judgment is of a declaratory nature, determining

28   future rights of the parties upon the basis of a status or

29   relation which subsequent events may modify before the declared

30   rights mature, such a judgment may be vacated or modified.

31   This power also exists where the further enforcement of a

32   final decree of perpetual injunction has, by reason of subse-

                              -13-

1   quent events, become inequitable.

2          Freeman on Judgments, pages 510, 511.

3

4      A litigant is engaging in a direct and not a collateral

5   attack upon a judgment where he seeks escape therefrom in a

6   mode approved by law.

7          Follette v. Pacific Light and Power Corp.,

8              189 Cal. 193.

9

10     The equitable powers of a court will expand to cope with

11  unusual situations and to enter a judgment which will fairly

12  meet the situation.  Equity will assert itself in those situa-

13  ations in which right and justice would be defeated but for

14  intervention.

15         Riverside Rancho Corp. v. Cowan, 88 Cal. App. 2d 197;

16         U. S. Casualty Co. v. Industrial Accident Commission,

17             122 Cal. App. 2d 427.

18

19     The power of a federal court sitting in equity, to give

20  relief against an unconscionable judgment of a state court

21  because of accident or mistake or other equitable grounds,

22  has been recognized.  To this end, a federal court, by injunc-

23  tion, may deprive a party of the benefit of a judgment obtained

24  in a state court under circumstances which will make. its

25  enforcement contrary to recognized principles of equity and

26  the standards of good conscience.

27         30 American Jurisprudence, p. 703, Sec. 756.

28

29     The common law power inherent in courts of general juris-

30  diction to set aside a judgment when satisfied that injustice

31  has been done or that it has been inadvertently or improvi-

32  dently rendered, or that it was procured by fraud or collusion,

-14-

5272

1　extends to judgments by consent.  Such a judgment may be set

2　aside where the record, if not showing positive overreaching,

3　at least indicates improvidence and undue haste, and where

4　the court found that the facts show that at least the spirit

5　of the law was not observed, if not violated.

6　　　　Louisville and N.R. Co. v. Bridgeport,

7　　　　　20 Ala. App. 326, 101 So. 807.

8

9　　　In order to secure equitable relief from a judgment, there

10　must be something to render it manifestly unconscionable to

11　enforce the judgment.

12　　　　Pickford v. Talbot, 225 U.S. 651.

13

14　　　Equity will not overturn a judgment valid on its face,

15　unless it is against conscience, and it appears that a like

16　judgment would not follow in the same action or upon the same

17　cause of action.

18　　　　Malloy v. Pierson, 37 Cal. App. 486;

19　　　　Painter v. J. B. Painter Co., 133 Cal. 129.

20

21　　　It has likewise been held that before a judgment can be

22　enjoined, there must be some special circumstances which come

23　under some recognized head of equity jurisdiction.

24　　　　Roman Catholic Archbishop v. Shipman, 69 Cal. 586.

25

26　　　Obviously, the grounds upon which a judgment legally

27　entered may be set aside, must be of a very substantial char-

28　acter.

29　　　　Watson v. Dillon, 6 Cal. 2d 33;

30　　　　　distinguished in

31　　　　Roberts v. Roberts, 81 Cal. App. 2d 871.

32

1       A court sitting in equity, and having taken jurisdiction,

2   has broad powers and it may grant relief as varied and diver-

3   sified as the means employed to produce the grievance complain-

4   ed of, and it is not bound to respect the strict legal rights

5   of the parties.

6       Muchenberger v. City of Santa Monica, 206 Cal. 635.

7

8       Where a judgment was entered upon stipulation in a case

9   where jurisdiction was present, such judgment will not be set

10  aside without a showing of some injustice to the party against

11  whom it was rendered.

12      Sparr v. Tennant, 35 Okla. 125.

13

14  Unjust enrichment may justify a vacation of a judgment.

15      Evarts v. Jones, 170 A.C.A. 214 (May, 1959).

16

17

18                    IV

19      THIS COURT IS EMPOWERED TO RELIEVE THE

20      VAIL COMPANY FROM THE STIPULATED JUDGMENT

21      BECAUSE OF THE MUTUAL MISTAKE OF THE PARTIES.

22      A mistake has been defined as "a state of mind that is

23  not in accord with the facts."

24      27 Words and Phrases, p. 366.

25

26      Since mistake is a general ground for the exercise of

27  equitable jurisdiction, a court of equity may grant relief

28  against judgments obtained in a court of law, on the ground

29  of mistake; it will interpose to relieve against a judgment

30  where a wrong has been done through mistake as readily as

31  where there has been fraud.

32      Metcalf v. Williams, 104 U.S. 93;

                  -16-

1      <u>Walden v. Skinner</u>, 101 U.S. 577.

2

3      In a clear case of mistake, or for any other good cause,

4 the court may allow a party to recede from his stipulation.

5      <u>Daneri v. Gazzola</u>, 2 Cal. App. 351.

6

7      A stipulation in the record that a "lease had expired

8 by its terms," if based upon an erroneous interpretation of

9 the legal effect of the contract, may be disregarded.

10     <u>Owen v. Herzihoff</u>, 2 Cal. App. 622.

11

12     A mistake which led the court to do what it evidently

13 never intended to do, will justify equitable relief.

14     <u>Sullivan v. Lumsden</u>, 118 Cal. 664.

15

16     In an early California case it was held that mistake or

17 ignorance of fact is a proper subject for relief when the

18 fact "constitutes a material ingredient in the contract of the

19 parties, and disappoints their intention by mutual error,

20 or when it is inconsistent with good faith."

21     <u>Belt v. Mehen</u>, 2 Cal. 159.

22

23     Where through a mutual mistake of both parties to a trust

24 as to the legal effect of the proceedings, a judgment had been

25 permitted in favor of the trustee, the legal effect of which

26 if strictly enforced, would be to defeat the trust and work a

27 fraud on the beneficiary, the fraudulent use of the decree

28 may be prevented.

29     <u>Bradley Co. v. Bradley</u>, 165 Cal. 237.

30

31     Where a person is ignorant or mistaken with respect to his

32 own antecedent and private legal rights, interests, estate,

-17-

1    duties, liabilities, or other relations, either of property or

2    of contract or personal status, and enters into some transac-

3    tion which he otherwise would not have entered into, equity

4    will grant relief, defensive or affirmative, treating the

5    mistake as analogous, if not identical, with a mistake of fact.

6         Mitchell v. California-Pacific Title Ins. Co.,

7            79 Cal. App. 45.

8

9    Whether the mistake of the parties in this case is deemed

10   a mistake of fact or of law is immaterial, since in California

11   it has been held that a mistake of law as well as a mistake of

12   fact may justify relief in respect to a judgment.

13        Douglass v. Todd, 96 Cal. 655;

14        Peterson v. Holder, 45 Cal. App. 278;

15        Broderick v. Cochran, 18 Cal. App. 202.

16

17   A plaintiff who has caused or consented to an order or

18   judgment of dismissal under a mistake or other circumstances

19   justifying relief under C.C.P. Section 473, may have it set

20   aside.

21        Kaufman v. Shain, 111 Cal. 16.

22

23   Any failure of a stipulation for a judgment to fully

24   express the intentions of the parties must be corrected by

25   appropriate action.

26        People's Ditch Co. v. Fresno Canal and Irrigation Co.,

27            152 Cal. 87.

28

29   It is not an abuse of discretion to open a judgment

30   pursuant to a compromise agreement where it appears that one

31   of the parties was laboring under a mistake as to the effect

32   which the judgment would have, and his attorney after preparing

-18-

537f

1    the judgment, failed to submit it to him for examination before
2    it was entered.
3        Kelsey Co. v. Spears, 37 Cal. App. 27.
4
5        A plain and acknowledged mistake of law is not beyond the
6    reach of equity; and where all parties understood the law alike,
7    all making the same mistake, and where the mistake operates
8    to deprive one of them of a valuable right, and to give to the
9    other party a material advantage not contemplated by either,
10   a court of equity will adjust their rights as though the law
11   relating thereto was in fact as the parties supposed it to be,
12   if necessary to do justice between them.
13       Benson v. Bunting, 127 Cal. 532.
14
15       There are many cases in other jurisdictions where the
16   courts have announced and followed the principle that a court
17   of equity is empowered to relieve a party from the effects of
18   a judgment entered into by mistake.  A few of these may be
19   here noted.
20       Herman v. Kennard Buick, 93 N.W. 340 (Wis.);
21       Whipple v. Houston County, 105 S.E. 2d 898 (Ga.).
22
23       Public policy that underlies the principle of res judicata
24   must be considered together with the policy that a party shall
25   not be deprived of a fair adversary trial in which to fully
26   present his case, and equitable relief may be granted in cases
27   of fraud or mistake.
28       Sellar v. Sellar, 158 Cal. App. 2d 286; 322 P. 2d 219.
29
30       In the case of
31       Everett v. Cutler Mills, 52 R.I. 330,
32   the reviewing court said, "This judgment was entered by mistake.

-19-

5377

1    It would not have been entered if the defendant or the court

2    would have been informed of the facts.  It was the duty of the

3    Superior Court to vacate the judgment upon proof of mistake."

4

5        Where a dispute arose as to the amount of flowing water

6    to which each party was entitled, and a stipulation was entered

7    into which was made the basis for a consent decree, it was held

8    that "the only way it can be attacked or impeached after the

9    expiration of the term, whatever the rule may be during the

10   term, is by an original bill, on the ground of fraud or

11   mutual mistake."

12        Stites v. McGee, 37 Or. 574.

13

14    It has been held that the Supreme Court of the United

15   States had jurisdiction in an original suit by one state against

16   another for determination of common boundaries, notwithstanding

17   a decree entered by consent, establishing a boundary line,

18   where the location of a particular portion was not in issue

19   in the former suit,  and the former decree was based upon

20   mutual mistake.

21        Wisconsin v. Michigan, 295 U.S. 455, 79 L. Ed. 1541.

22

23        The California Code of Civil Procedure, Section 473,

24   providing that a trial court may relieve a party from a judgment

25   taken through his mistake, inadvertence, surprise or excusable

26   neglect, is to be liberally construed.  The policy of the law

27   is to have every litigated cause tried on its merits, and the

28   law looks with disfavor on a party who, regardless of the

29   merits of his cause, attempts to take advantage of the mistake,

30   surprise, inadvertence or neglect of his adversary.

31        Andres v. Armstrong, 168 A.C.A. 426, 335 P. 2d 1005.

32        Verdugo Canyon Water Co. v. Verdugo, 152 Cal. 655.

5378

## V

THIS COURT IS EMPOWERED TO RELIEVE THE
VAIL COMPANY FROM THE STIPULATED JUDGMENT
BECAUSE IT FAILED TO COMPLY WITH THE FINDINGS
AND WAS INDEFINITE AND INCOMPLETE.

The provisions of a decree, affirming the right of one
defendant to have abandoned water flow down the channel of a
stream to its riparian land and to make reasonable use thereof,
were limited to the findings made, and were to be interpreted in
accordance therewith.

Crane v. J. J. Stevinson, Inc., 5 Cal. 2d 387.

Where the trial court found that defendants had acquired
a prescriptive right to permit water to seep and percolate on
the land from their irrigation canal from adjoining lands, the
judgment is insufficient which does not conform to such find-
ings, but merely decrees that plaintiff take nothing and that
defendants recover their costs.

Nelson v. Robinson, 73 Cal. App. 2d 263.

It has been held that a decree in respect to water rights,
not containing any adjudication of the amount of water to which
the upper and lower riparian owners were entitled, would be
unenforcible for uncertainty.

Cowell v. Armstrong, 210 Cal. 218.

As heretofore mentioned, the stipulated judgment in the
instant case was more than uncertain since it made no determin-
ation of the rights of other water users, and in addition
required the Vails to furnish a particular amount of water to
Santa Margarita.  This constitutes both uncertainty and
inequity.

-21-

1   A former adjudication in favor of plaintiff, restraining

2   the defendants from interfering with plaintiff's dam, etc.,

3   does not preclude proof of a prior appropriation in a subse-

4   quent action, nor estop the defendant from proving that such

5   prior appropriation had not in fact been adjudicated in the

6   former action.

7       Wixson v. Devine, 80 Cal. 385.

8

9   It has been held that a stipulated or consent judgment

10  is not conclusive as against a city or other political sub-

11  division insofar as the stipulated judgment would alienate

12  public property held in trust, the city being without power to

13  dispose of such property.

14      Oakland v. Oakland Waterfront Co., 118 Cal. 160.

15

16  The above case is analagous to the present situation in

17  that the parties to our stipulated judgment attempted to deter-

18  mine all water rights as between themselves without regard to

19  other interested parties; in other words, they attempted to

20  alienate rights over which they had no control.

21

22  It has been held that repugnance between the provisions

23  of a foreclosure decree based upon a stipulation, would justify

24  a court in considering the stipulation to determine whether

25  its provisions did not constitute redundancy, the result of

26  inadvertence, and whether they should be disregarded.  The

27  court said:

28      "Otherwise, in consequence of conflicting provisions,

29      a decree might be unintelligible and unenforceable and

30      the court powerless to correct the manifest infirmity.

31      We do not see why the case should not be regarded as

32      similar to the instances of doubt, obscurity, and

-22-

5380

1    ambiguity referred to in other authorities."

2    (Citing cases.)

3       Clemens v. Gregg, 34 Cal. App. 272.

4

5      If upon the face of a record, anything is left to conjec-

6   ture as to what was necessarily involved or decided, there is

7   no estoppel when it is pleaded, and nothing conclusive in it

8   when offered in evidence.

9       Beronio v. Ventura County Lumber Co., 129 Cal. 232;

10      People v. Bailey, 30 Cal. App. 581.

11

12     That a judgment is not in accordance with findings of fact

13  is sufficient to authorize the vacation of such judgment.

14       Patch v. Miller, 125 Cal. 240.

15

16

17                VI

18    THE STIPULATED JUDGMENT ERRONEOUSLY AND

19    INEQUITABLY FAILED TO RETAIN JURISDICTION

20    FOR THE PURPOSE OF MAKING NECESSARY

21    READJUSTMENTS OF WATER RIGHTS TO ACCORD

22    WITH CHANGED CONDITIONS.

23     In an action to enjoin a water company from pumping and

24  transporting water from a river basin, the judgment should have

25  been limited to the conditions shown to exist at the time of

26  the trial, and the decree should have incorporated a provision

27  for continuing jurisdiction to permit the taking of further

28  evidence, where a leakage of water from an upstream dam in

29  Mexico was of too-recent origin to be considered as a depend-

30  able source in computing the net safe yield of the basin.

31       Allen v. California Water and Tel. Co., 29 Cal. 2d 466.

32

5381

1      In a suit to determine water rights the court should make

2  reasonable regulations for the use of waters by the parties,

3  and should reserve power in itself to modify its orders.

4       Peabody v. City of Vallejo, 2 Cal. 2d 351.

5

6      Where a judgment enjoins a non-riparian owner from pumping

7  water from a stream during certain months, and where, in the

8  future, changes in aridity may occur and a water surplus

9  develop not devoted to a beneficial use, so that different

10  time limitations on pumping might become more reasonable, the

11  court will reserve continuing jurisdiction to change and modify

12  its findings, orders and judgments, as the occasion may require.

13       Smith v. Wheeler, 107 Cal. App. 2d 451.

14

15      In a water case, the court has the power and duty

16  "to reserve unto itself the right to change and modify its

17  orders and decree as the occasion may demand, either on its

18  own motion or on the motion of any party."

19       Hutchins on California Law of Water Rights, p. 355,

20          citing Pasadena v. Alhambra, 33 Cal. 2d 908.

21

22      In the Pasadena v. Alhambra case, a decree provided for a

23  review of the determination of safe yield of the ground water

24  basin not more frequently than at five-year intervals.  The

25  Supreme Court, however, believed that the five-year limitation

26  tended to defeat the purpose of the rule giving a trial court

27  continual supervisory powers in water rights cases.  It was

28  held, therefore, that the judgment should be modified to

29  preserve a broad retention of jurisdiction in the trial court

30  to change its decrees and orders, after notice and hearing,

31  as occasion might require.

32

1    The retention of jurisdiction to meet future problems is

2 regarded as an appropriate exercise of equitable jurisdiction

3 in litigation over water rights, particularly where the adjust-

4 ment of substantial interests are involved.

5     Orchard v. Cecil F. White Ranches, Inc.,

6       97 Cal. App. 2d 35.

7   In this connection also see

8     Tulare Irr. Dist. v. Lindsay-Strathmore Irr. Dist.,

9       3 Cal. 2d 489.

10

11   In the case of

12   Allen v. California Water and Tel. Co., 29 Cal. 2d 466,

13 previously cited here, it was held that if there was a possible

14 added source of water in a controversy over a limited supply,

15 the court would be carrying out its equitable policy by

16 retaining jurisdiction for the purpose of considering the

17 effect of such added source of water and its dependability for

18 the purpose of working out a solution.  In order to provide for

19 the full utilization of the water, the trial court has the

20 power to consider such a source as long as it is available.

21 The policy inherent in the water law of California is to utilize

22 all water available.

23

24   A court should not and cannot well undertake to provide

25 for a future apportionment of waters in an arterial basin but

26 should confine itself to the adjudication of existing rights

27 and priorities of the parties of the waters involved.

28    San Bernardino v. Riverside, 186 Cal. 7, 20.

29

30   The Supreme Court has said that a trial court is under a

31 duty of admitting evidence relating to possible physical

32 solutions, to suggest a solution on its own motion, and to

5383

1    enforce it regardless of whether the parties agree.

2         Lodi v. East Bay Municipal Utility District,

3              7 Cal. 2d 316, 339.

4

5         In reference to the particular facts of the Lodi case,

6    the reviewing court said, at p. 347:

7         "If conditions as they develop indicate that the

8         proposed schedule of operations of this defendant are

9         too restrictive or are unfair and without real benefit

10        to the plaintiff, the court should retain jurisdiction

11        to modify its decree as occasion may require."

12

13        As hereinbefore indicated, conditions in the instant case

14   have so developed as to indicate that the provisions of the

15   stipulated judgment are manifestly unfair.

16

17                        CONCLUSION

18        It seems obvious that the problem here presented cannot

19   be equitably solved without a full reappraisement of the

20   rights of all water users, giving adequate consideration to

21   presently existing conditions, and without regard to a

22   stipulated judgment entered into between the two large ranches,

23   which did not adequately consider or dispose of the entire

24   water problem.  This is but equity and common sense.

25        The desirability of finding proper physical solutions to

26   water problems such as here exist, the absolute duty of the

27   trial court under its broad equitable powers to dispose of

28   the entire problem, and the need of invoking such powers in

29   the public interest, were matters stressed in the former

30   litigation between Santa Margarita and Vail.  Such consider-

31   ations are of equal or even greater importance in the present

32   litigation instituted by the Government.

5384

1   <u>Rancho Santa Margarita v. Vail</u>, 11 Cal. 2d 501, 560.

2

3   This necessity of making a full reappraisement of water

4   rights is all the more evident when it is considered that

5   the doctrine of riparian rights is not one of fixed rights;

6   therefore a judgment affecting those rights is usually regarded

7   as res judicata "only so long as conditions on which it was

8   rendered remain the same."

9   <u>Smith v. Stanolind Oil and Gas Co.</u>, 197 Okla.499.

10

11   Where a stipulated judgment is to be set aside for cause,

12   it must be set aside in its entirety.  In view of this princi-

13   ple, a party cannot attack the provisions of a consent decree

14   unfavorable to him and successfully contend that those in his

15   favor should be allowed to stand.

16   See <u>139 A. L. R., p. 443</u>.

17

18   There are no fixed rules limiting the powers of equity

19   in dealing with subject matters coming generally within its

20   jurisdiction; and equity has power to deal with novel

21   situations.

22   <u>Southern Pacific Co. v. Robinson</u>, 132 Cal. 408.

23

24   Where litigants own all land bordering on a stream, the

25   court may not apportion the water and award damages for

26   diversion without considering all the land and determining

27   the riparian or non-riparian character of each parcel.  The

28   present beneficial uses of the water, giving consideration to

29   preferential uses, determines the apportionment.  <u>The real</u>

30   <u>question is whether under all the circumstances the use of</u>

31   <u>water by one party is reasonable and consistent with the</u>

32   <u>corresponding enjoyment by the other parties.</u>

-27-

5385

1    What is a reasonable amount of water which a riparian

2   owner is entitled to use varies not only with the circumstances

3   of each case, but also varies from year to year and season

4   to season.

5        Prather v. Hoberg, 24 Cal. 2d 549.

6

7    Research has disclosed no case which is factually similar

8   to the situation here presented, but the principles herein-

9   before indicated, make clear what should be done in the

10   instant case.  As heretofore indicated, the situation as it

11   presently exists, demands a complete readjudication of all

12   water rights.

13

14    All of which is respectfully submitted.

15

16

17

18                          _George Stahlman_

19                           George Stahlman

20

21

22                          Earle K. Stanton

23                       Attorneys for the Vail Company

24

25

26

27

28

29

30

31

32

-28-

5386