GEORGE STAHLMAN
Attorney at Law
Route #1, Box 235
Fallbrook, California

Telephone: RAndolph 8-2310

Attorney for defendant VAIL COMPANY

FILED

OCT 26 1959

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ Deputy

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>             Plaintiff <br> -vs- <br><br> FALLBROOK PUBLIC UTILITY <br> DISTRICT et al. <br>             Defendants | NO: 1247-SD-C <br><br> NOTICE OF MOTION TO ADMIT <br> EVIDENCE OF H. M. HALL |

TO THE UNITED STATES OF AMERICA:

You will please take notice that VAIL COMPANY, defendant, will bring the accompanying motion for the admission of testimony of one H. M. HALL for hearing before this Court in Courtroom No#2, United States District Court, 325 West "F" Street, San Diego 1, California, on the 3rd day of November, 1959 at 10:00 o'clock in the forenoon of that day, or as soon thereafter as counsel can be heard.

DATED this 23 day of October, 1959

GEORGE STAHLMAN
Attorney for Defendant - VAIL COMPANY

ROBERT S. WALWICK
ATTORNEY AT LAW
322 NORTH NEVADA
OCEANSIDE, CALIF.
TELEPHONE
SARATOGA 2-4222

5566

GEORGE STAHLMAN
Attorney at Law
Route #1, Box 235
Fallbrook, California

Telephone: RAndolph 8-2310

Attorney for defendant VAIL COMPANY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) | NO. 1247-SD-C |
|---|---|---|
| Plaintiff | ) | |
| -vs- | ) | MOTION TO ADMIT AND CON- |
|  | ) | SIDER EVIDENCE OF H. M. |
| FALLBROOK PUBLIC UTILITY | ) | HALL |
| DISTRICT, et al. | ) | |
| Defendants | ) | |

Comes now VAIL COMPANY one of the defendants in the above entitled action, acting by and through their attorney, GEORGE STAHLMAN, and respectfully moves this Honorable Court that the sworn testimony of witness H. M. HALL heretofore given in this action, be admitted as evidence in behalf of VAIL COMPANY in the present proceedings.

I

H. M. Hall was duly sworn as a witness and thereafter testified in the United States District Court, Southern District of California, Southern Division, before the Honorable LEON R. YANKWICH, Judge Presiding, in proceedings had in the within action, United States of America, plaintiff -vs- Fallbrook Public Utility District et al, defendants, being action No: 1247-SD-C

II

That the witness H. M. Hall was called on behalf of the plaintiff to the within action, to wit, the United States Government, and therein gave testimony on matters in issue in the within action, including testimony relative to the

ROBERT S. WALWICK
ATTORNEY AT LAW
322 NORTH NEVADA
OCEANSIDE, CALIF.
TELEPHONE
SARATOGA 2-4222

- 1 -

5567

1  irrigable lands of the defendant VAIL COMPANY.

2  III

3  In the present proceedings before the Honorable James M. Carter,
4  there is in issue factual matters to which the witness H. M. Hall has testified
5  in said previous proceedings.

6  IV

7  In the present proceedings the defendant VAIL COMPANY has already
8  in evidence, testimony of the irrigable acreage of the lands of the Vail Company
9  properties, known as the Temecula Ranch, the Little Temecula Ranch and the
10 Pauba Ranch.

11 V

12 The United States of America is objecting to, and denying, the
13 testimony of witnesses of Vail Company who have herein presented evidence
14 as to the quantity of the irrigable lands of the defendant Vail Company.

15 VI

16 The witness H. M. Hall, on October 29th, 1952, and on October 30th,
17 1952, having qualified as an expert witness on behalf of the plaintiff, United
18 States of America, testified, among other things, as to the amount of irrigable
19 lands of the defendant Vail Company, which testimony is reported in the official
20 Court Transcript of the within action, in Volume 1 of the Reporter's Transcript,
21 Page 66 to Volume 2 of the Reporter's Transcript, Page 192. Said testimony
22 given on the dates hereinabove indicated.

23 VII

24 The defendant Vail Company is transmitting, together with this
25 Motion, to the Court and to the United States Government, plaintiff, testimony
26 designated by Pages and Number which defendant Vail Company moves the
27 Court herein to consider in the present proceedings.

28 WHEREFORE, defendant Vail Company prays that this Honorable
29 Court grant the within Motion to consider the testimony of the witness H. M.
30 HALL given heretofore in this action in the present proceedings.

31 DATED this 23 day of October, 1959.

32

*GEORGE STAHLMAN*
Attorney for defendant VAIL COMPANY

5568

ROBERT S. WALWICK
ATTORNEY AT LAW
322 NORTH NEVADA
OCEANSIDE, CALIF.
TELEPHONE
SARATOGA 2-4222

## POINTS AND AUTHORITIES

Sec. 1075 WIGMORE on evidence. Volume 4, Page 108, 1940 Edition.

BRICKEL vs. HULSE - 7 A and E 454, 456

RICHARDS vs. MORGAN - 10 Jur. N.S. 559, 564

CONTINENTAL Mutual Life Insurance Co. vs. HILLMON - 188 U.S. 208

BAGEARD vs. CONSOL T. CO. - 64 N.J.L. 316  45 Atc. 620

BECKER vs. CITY OF PHILADELPHIA - 217 Pa. 344  66A. 564

M'MAHON vs. SPANGLER - 4 Randolph 51 at 56

KEYSER CANNING CO. vs. KLOTS THROWING CO. 98 W. Va. 487. 128 SE 280

31 Corpus Juris Secundum, Section 387

22 Corpus Juris 341, 342

91 Fed. 2d 14

32 Pac. 2d. 408

4 Pac. 2d, 552

MILTON vs. U.S. 71 App. DC. 394  110 Fed 2d. 556 - (1940)

McCORMACK on evidence, Page 503 and Page 513

ROBERT S. WALWICK
ATTORNEY AT LAW
322 NORTH NEVADA
OCEANSIDE, CALIF.
TELEPHONE
SARATOGA 2-4222

5569

GEORGE STAHLMAN
Attorney at Law
Route #1, Box 235
Fallbrook, California

Telephone: RAndolph 8-2310

Attorney for defendant VAIL COMPANY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br>-vs-<br>FALLBROOK PUBLIC UTILITY<br>DISTRICT et al.<br>Defendants | NO: 1247-SD-C<br><br>MEMORANDUM RE: TESTIMONY<br>OF H. M. HALL |

MEMORANDUM RE: TESTIMONY OF H. M. HALL before the Honorable Leon R. Yankwich in the within action on October 29th, 1952 and October 30th, 1952.

The witness, H. M. HALL, called as a witness by the plaintiff (United States of America), being first sworn, was examined and testified as follows:

After having stated his name and residence, thereafter qualified as an expert witness. (Page 66, Volume 1 - line 10 to Page 69 - line 15)

In connection with the issues relative to the irrigable acreage of the properties of the Vail Company, the witness H. M. Hall testified that he has been water engineer for the Vail properties since 1920 continuously so far as they need service. (Volume 1, Page 84, line 24 to Page 85, line 2.)

That the Vail properties are an aggregation of several original land grants, the Pauba, from which the Ranch takes its name, being the largest one, and the Little Temecula being another one. The southern half of the Temecula grant is another one, and the Santa Rosa grant to the west

- Page One -

5570

1  being another. The total acreage of these grants is about 85,000 but it is
2  not all riparian to the Temecula stream. It all lies in the watershed with
3  the exception of the westerly part of the Santa Rosa grant, but all the rest
4  of the grants are within the watershed of the Temecula stream. (Volume 1,
5  Page 85, lines 6 to 20).

6  The witness was shown a map entitled "Map of land classification
7  in the drainage area of the Temecula-Santa Margarita watershed", and stated
8  it was a map prepared either by himself or under his direction in about 1927,
9  and it includes a survey of the complete watershed of the Santa Margarita
10 system. That he divided it into blocks and made a personal survey of the
11 classification of the lands within these blocks. (Volume 1, Page 87, Lines
12 4 to 13).

13 The map was referred to in the proceedings before Judge Yankwich
14 as Exhibit "36". (Volume 1, Page 89, Lines 21 to 22)

15 The nature of the personal investigation of the areas in question
16 was done in connection with a suit in the Superior Court pending at that time,
17 done under my direction, and more than half was done with personal presence
18 in the field at the time the work was done, we required many assistants,
19 surveyors and surveyors for measuring areas and locating ourselves on the
20 map.    We also had soil experts and helpers to do the immense amount
21 of leg work that was necessary. We used our own feet, sometimes horses,
22 sometimes Model T. Fords to cover the area, but we did not definitely
23 investigate every square foot of all the area under consideration. We did
24 make a definite investigation of those parts which we have classified in the
25 watershed and profitably irrigable, but that is by no means the total in the
26 watershed. (Volume 2, Page 100, line 14 to Page 101, line 12).

27 In the Pauba Ranch which the witness included all of the three grants,
28 Pauba, Little Temecula and Temecula, there were 33,128 acres classified
29 out of the total. Out of this classification there was found to be 3,718 acres of
30 waste, and a net irrigable acreage of 29,400 acres. (Page 105, line 7 to 23).
31 That the 29,400 acres is the net irrigable acreage of the Vail properties,
32 excluding the Santa Rosa grant. That the total acreage within the grant lines of

- Page Two -

the Pauba grant is 27,662; the Temecula grant, 11,186; the Little Temecula grant 1,727; making a total of 40,575. There are certain islands sold out of this property, like the Town of Temecula, which exclude 784 acres, leaving Vail ownership net of 39,791 acres, of which the 29,400 is a part. (Page 105 line 24 to Page 106, line 14).

That the figure of 39,791, for convenience of agricultural work, has added to it 460 acres riparian to the Penjango stream only, which is well irrigated in its full proportion, making a total of 40,251 acres, 39,791 of which lies in continuous grants through which the main stream flows. Investigating the total of 40,251 acres owned by the Vails, 7,123, mostly in blocks 1 and 3, were eliminated as not worthy of investigation. They were high hills, and were just called waste land, leaving a total for the soil survey of 33,128 acres. (Page 106 lines 13 to 24).

That the 33,128 acres was decreased by 3,718 acres of waste, leaving net irrigable lands of 29,410 on the three grants of the Vail company. That this does not include the Santa Rosa grant, which is not riparian to the main stream. (Page 106 - line 25 to Page 107 - line 5).

That during his 45 years as a water engineer, he has had frequent occasion to determine the question of whether lands upon which he was doing work were riparian or not riparian. (Page 107 - Lines 5 to 11).

The concept of riparian lands as a basis for his judgment is that lands must first be within the watershed of the stream considered, and drain into that stream. They must also have access to the stream, and they must be one continuous piece, no part of which has ever been severed from the riparian rights. (Page 107 - Lines 11 to 20).

In recapitulating, the witness stated that in general the total Vail holdings in the area involved in this litigation are contained in four grants, three of which are Temecula, Little Temecula and Pauba, which are riparian to the main stream, and the fourth Santa Rosa is not riparian to the main stream, but is to the Murrieta, and the Sandia and De Luz. (Page 110 - lines 6 to 16).

That the total acreage of the four grants would be 86,591. That this

- Page Three -

5572

is made up of 40,251 acres mentioned above (Temecula, Little Temecula and Pauba). That 46,340 in the Santa Rosa. Of the 46,340 in the Santa Rosa Ranch, 6,904 are not in the watershed, but lie westerly of the watershed. The drainage from them goe into the San Onofre and San Mateo Creeks. In the watershed on the Santa Rosa, there is 39,646 acres, of which 19,581 lies in the Murrieta watershed, 10,270 in the Sandia, and 9,589 in the De Luz. (Page 110 - Line 16 to Page 111 - Line 1).

That the 29,400 net irrigable acres out of the total of some forty-odd thousand acres, applied only to the three grants other than the Santa Rosa. That they referred to lands which are riparian to the main stream. (Page 111 - Lines 2 to 9).

That the "main stream" is meant the Santa Margarita - Temecula river system, but not including a tributary such as Murrieta. Santa Margarita is the Santa Margarita up to the confluence of the Murrieta and Temecula, and the continuation of the main stream is what is known as the "Temecula River". And these three grants are all crossed by the main definite channel of that main stream. (Page 112 - Lines 1 to 10).

That the witness has determined the riparian nature of the 40,000 acres in which the 29,400 acres are computed to lie. It is all riparian because it is a continuous ownership and has never been separated and it is all within the watershed. (Page 112 - Lines 11 to 16).

That there is no question in the witnesses mind, of the riparian character of the 29,400 acres. (Page 112 - Lines 20 to 22).

That out of the total of 29,400 acres the Vail interests actually put to irrigation at the present time (time of witnesses appearance upon the stand), is about 4,500 acres. That he has computed a water duty of the lands which have been ascertained as being irrigable, and has classified that 29,410 acres into four groups which are more definitely set out in Exhibit "33", and to the class "A" lands of Exhibit "33" he applied a general average over-all duty of 2.35 acre-feet per acre or acre-feet, which makes a need for class "A" lands of 25,830. acre-feet per annum. Class "B" land has the same duty and requires 16,944 acre-feet, if they could get it. Class "C" land he applied a duty of 2.5 so it requires 13,484 acre-feet with the same proviso

- Page Four -

5573

and Class "D" land has a higher duty because it is adapted to row crops and alfalfa in the river bottom, an average duty of four acre-feet per acre requiring 23,000 plus acre-feet, or a total of 79,514 acre-feet which could be profitably applied to the irrigable land on the ranch if that much water were available. (Page 114 - Lines 5 to 22).

DATED this 23rd day of October, 1959.

*George Stahlman*
GEORGE STAHLMAN -
Attorney for VAIL COMPANY defendants

- Page Five -

5574

GEORGE STAHLMAN
Attorney at Law
Route #1, Box 235
Fallbrook, California

Telephone: RAndolph 8-2310

Attorney for defendant VAIL COMPANY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff <br> -vs- <br> FALLBROOK PUBLIC UTILITY DISTRICT, et al. <br> Defendants | NO: 1247-SD-C <br><br> MEMORANDUM OF POINTS AND AUTHORITIES: <br><br> RE: H. M. Hall Testimony |

Memorandum of Points and Authorities Re: Offering into evidence the testimony of one H. M. HALL, the Government's witness in the case of United States vs. Fallbrook et al., which was given in 1952 before the Honorable Judge Yankwich, and now to be offered by the defendants as part of their case in the continuation of the same trial now being heard before the Honorable Judge Carter.

Wigmore on evidence approaches the problem from the standpoint of admissions. In Section 1057 found in 4 Wigmore on evidence. Page 108 1940 edition, states as follows:" If a party expressly states that a certain piece of testimony given by another person is correct, there can be no question that it becomes his statement by adoption, and is receivable as his admission. But does he by implication approve and adopt as his all, the depositions, testimonies and affidavits that are offered on his behalf in a litigation, so that in a subsequent litigation these may be used against him as his admissions?" (Underscoring, ours).

- Page One -

5575

"It is true that the rule against impeaching ones own witness was once explained on the theory that a party guarantees the credibility of his witness, and (by reference), the correctness of the witnesses statements, but that impossible theory has long been exploded and cannot serve here. The question is purely one of implication from the facts. In the endeavor to define an implication, distinction was at one time advanced that the use of an Affidavit implied an admission of the correctness of its specific contents, while the use of a witnesses deposition or oral testimony did not. Brickel vs. Hulse. 7 A and E 454, 456."

"But this view was in England afterwards repudiated for the more accurate view that some depositions or testimonies may be so used as to become admissions, while some affidavits may not; the result depending upon whether in the case in hand the particular statement was offered knowingly for a specific purpose." (Underscoring, ours.)

Wigmore cites the case of Richard vs. Morgan, 10 Jur. N.S. 559, 564 In principal, there can be no difference whether the assertion or admission be made by the party sought to be affected against himself, or by some one employed, directed or invited by him to make the particular statement on his behalf. In like manner, a man who brings forward another, for the purpose of asserting or proving some fact on his behalf, whether in a court of justice or otherwise, must be taken himself to assert the fact which he thus seeks to establish ..............

Where a witness is called for the purpose of proving a particular fact, this amounts to an assertion of that fact by the party who so uses his testimony. (Underscoring, ours). And in this respect I must observe, that I can see no difference between written and oral testimony. For while I concur in the position, that the evidence of a witness, called on a trial, is not necessarily nor, to the full extent to which it may go, admissible against the party calling him in a future proceeding, yet if it can be shown that the witness was called to prove a specific fact, it appears to me that this would be admissible as an assertion of such fact by the party calling the witness ............ On the other hand, as I have already said, I entirely concur in the position, that it is

- Page Two -

5576

32

not because a witness is called for the purpose of proving a particular fact or facts, that all that he may say becomes admissible in any future proceeding against the party calling him. And here, again, I see no valid distinction between 'viva voce' and written testimony. It has, indeed, been said that a party, calling a witness to be examined in court, may, in many instances be ignorant how far the witness may make statements unfavorable to the party calling him, while a party using a written deposition does so with a full knowledge of what it contains, and after full opportunity of balancing the advantages and disadvantages of using it. But it must be borne in mind that the party in the one case calling the witness, in the other using the deposition, may do so, not only without the intention of abiding by all the witness may say, but with the deliberate intention of calling on the Court or jury to disbelieve so much of the evidence as makes against him. Just as at Nisi Prius, a party is sometimes under the necessity of calling a doubtful or even hostile witness, in order to prove some part of his case which cannot otherwise be made out; and, in the event of adverse statements being made by the witness, seeks to induce the jury to reject them, as unworthy of belief, or as contradicted by the rest of the evidence, so, in the case of written evidence, a deposition or affidavit may, under similar circumstances be used with a view to the adoption of a part and the rejection of the rest. It would be in the highest degree unreasonable to suffer the party using the evidence to be affected by that portion which he may have repudiated or disregarded, on the ground that the statements of the witness may be taken to be his. Bearing in mind that th-e true ground on which such evidence is admissible is, that a party seeking to establish a fact by evidence in a court of justice, must be taken (in that litigation) to assert the fact he so seeks to prove, it seems to me to follow, on the one hand, that oral evidence so far as it shall appear to have been used to establish a specific fact, will (in subsequent litigation), be evidence against the party using it, as an assertion of that fact; (underscoring, ours) and on the other, that written evidence will be admissible against the party using it, in a subsequent proceeding with a different party not for the purpose of proving all the statements it may

- Page Three -

5577

contain, but only so far as it shall appear to have been used to establish a
given fact or facts. It is not because a witness may have been called, or a
deposition may have been used, that all the statements made are to be con-
sidered as having been adopted by the party using the evidence. In order to
render this species of evidence admissible, as the assertion of a particular
fact by the party using it, it must appear, either from the evidence itself, or
from the extrinsic circumstances, that it was used for the purpose of proving
such fact...............

I am not insensible to the inconvenience that may result from the admission of evidence of this sort. The evidence may have utterly failed in its effect in the original suit; the fact which was sought to be established may have been disproved by other evidence; the decision of the Court or jury may have been adverse; the party may long since have abandoned the ground which he formerly took; the production of such evidence in a subsequent suit may lead to collatoral issues in the shape of inquiry into all the circumstances and bearings of the first. Counsel, too, may possibly be embarrassed in the conduct of a case, as regards the production of evidence, by having to consider what may be its effects on the interests of their client beyond the present proceeding. But many of these difficulties would obviously apply in the case of statements made by the party irrespective of legal proceedings, which, if relevant to the matter in dispute no one can deny to be admissible against him. All these difficulties exist equally in the case of affidavits and depositions in bankruptcy both of which have been held to be admissible. <u>The difficulty in which it is suggested that counsel would be placed in the conduct of a cause becomes reduced to a matter of small importance, when the admissibility of the deposition is limited by the qualification to which, in my view, it should be subject, namely, that it can only be used against the party to the extent of the purpose for which it was used by him in the former suit.</u> " (Underscoring, ours).

The following are the cases in the United States that favor the use of such evidence, or evidence that answers the same requirements as to relevancy, materiality and competency, where the subject matter and parties are the same or substantially the same.

- Page Four -

5578

U. S., a Federal Case.  Continental Mutual Life Insurance Company vs. Hillmon, 188 U. S. 208.

THE FACTS: Error is charged in the refusal to instruct the jury that "the statement signed and sworn to by one John H. Brown on the 4th day of September, 1875, having been introduced in evidence by the plaintiff, may be considered in connection with the deposition of the said John H. Brown as evidence of the facts stated under oath, against the plaintiff, with like effect as the deposition of John H. Brown, and may also be considered as affecting the credibility of said Brown as a witness."

Held: For whatever purpose it was introduced, and in view of the fact that it was offered generally, and without limitation as to its purpose, it became a piece of plaintiff's evidence to be weighed and considered like any other testimony in the case. We do not undertake to say that the plaintiff was1 absolutely bound by it, and is estopped to deny its truth in view of Brown's deposition to the contrary, but we think it was giving it too little effect to charge the jury that it could only be considered as impeaching the credibility of Brown, and we do not think the defendant was asking too much in instruction number 44, that it might be considered in connection with the deposition of Brown as evidence of the facts stated under oath, against the plaintiff, with like effect as the deposition.  Court cites one Greenleaf evidence Section 442.

The general rule undoubtedly is that, when a party offers a witness, he thereby generally represents him as worthy of belief, and while under the particular circumstances of the case this rule would not apply any more to the affidavit than to the deposition, the plaintiff by putting both in evidence, without restriction as to the purpose of so doing, places them on the same level, and cannot be heard to say that the affidavit may not be considered as testimony of the facts therein so sworn to as well as the deposition.

New Jersey 1900 - Bageard vs. Consol T. Co. 64 N. J. L. 316.  45 Atl. 620.

Facts: Personal Injury action.  At former trial, plaintiff testified to an entirely different condition of affairs from that developed at the trial now under review.  Defendant was permitted to prove what plaintiff said at the prior

trial, but trial court refused to let the defendant offer evidence that at the former trial plaintiff produced a witness to corroborate his story. The evidence was not allowed by the trial court on the basis of it being hearsay.

HELD: 1) The trial Court's ruling was erroneous. The evidence was competent on a challenge of the bona fides of the plaintiff's claim ........ where the point sought to be established is that the plaintiff had previously put forth a different claim, it is permissible to prove not only that he himself asserted it in testimony, but also that he procured others to support him.

2) <u>Affidavits or statements of third persons used by a party are evidence against him in a subsequent controversy. They stand on the ground of admissions.</u> (Underscoring, ours.)

Pennsylvania Case 1907. Citation : Becker vs. City of Philadelphia 217 Pa. 344. 66A. 564.

Facts: Action by woman and her husband against the City of Philadelphia for personal injury caused by fall. Plaintiff claims she was suffering from a particular physical condition, and defendant claimed that about ten years prior thereto plaintiff had recovered against a Borough for personal injury, claiming the same physical condition. Plaintiff denied the prior claim and defendant offered in evidence the record of the prior suit as to the testimony of a Doctor who testified for the plaintiff that she was suffering from the same condition.

Held: 1) The purpose of the offer was to discredit her as a witness and to impute to her want of good faith as plaintiff in the present action. It was pertenant to the issue.

2) <u>Plaintiff was present at the time the witness testified ........ she relied upon his testimony with regard to the nature and extent of her injury as furnishing a basis upon which she asked the jury to reckon her compensation. She thus adopted and used the declarations and admissions of the witness as her own, and it was the same as though she herself had asserted the facts which they tended to prove. Such is the rule.</u> (Underscoring, ours).

3) A record may also be submitted in evidence in favor of a stranger against one of the parties, as containing a solemn admission or judicial declaration by such party in regard to a certain fact. But, in that

- Page Six -

5520

case, it is admitted not as a judgment conclusively establishing the fact, but as the deliberate declarate or admission of the party that the fact was so. It is therefore to be treated according to the principals governing admissions to which the class of evidence it properly belongs.

Virginia. 1826. - M'Mahon vs. Spangler. 4 Randolph 51 at 56.

Facts: Plaintiff offered affidavit into the evidence at a trial in the lower Court which was objected to its use in the Higher Court when offered by the defendant.

Held: A party cannot suppress evidence which he has had taken because he finds that it makes against him. After the witness, his evidence is in the hands of the Commissioner of Justice, it belongs to the cause, and ought not to be withheld.

West Virginia - 1925. Keyser Canning Company vs. Klots Throwing Co. 98 W. Va. 487. 128 SE 280.

Facts. The defendant in the former trial of a case involving a fire, put a witness on the stand to prove a material fact in issue. The material fact being as to where the fire started and being testified to by an expert. In the second trial the plaintiff offered the testimony given by this expert. The question to be determined is whether or not the plaintiff could offer the evidence as admissions of the defendant.

Held: The defendant is bound on a subsequent trial of the same case by the answer of the witnesses, and such admissions may be introduced in evidence by the plaintiff on a subsequent trial as proof of the fact so admitted.

2) NOTE: <u>A party is not bound by everything a witness may say on the stand, as an admission on his part particularly where he does not know beforehand what the witness is going to say, but if he puts a witness on the stand to prove a particular fact in issue, he is bound thereby as an admission on a subsequent trial.</u> (Underscoring, ours.)

22 Corpus Juris. 341, 342: Statements made by party in his deposition in the cause may contain relevant judicial admissions which are competent against him, even though they are not based on his personal knowledge. <u>A deposition taken in one action may also be received in another action, in which</u>

- Page Seven -

5561

the deponent is properly joined as a party. Neither does the fact that the deponent is present and able to testify, or has testified, preclude the introduction of his deposition as an admission. (Underscoring, ours)

31 Corpus Juris Secundum 1 1193, Section 387. "In order to warrant the reception of evidence given at a former trial, it must appear that the parties to the latter trial are either actually or constructively the same, even though the subject matter of the action is the same, as otherwise the party against whom the evidence is offered could not have had the opportunity of cross-examination of the witness.

91 Fed. 2d. 14.    32 Pac. 2d. 408:    4 Pac. 2d 552.

The following discussion is submitted for consideration by the Court as to the treatment of admissions of a party opponent.

Wigmore in 4 Wigmore evidence: Page 2 to 5 and approved in the case of Milton vs. U.S. 71 App. DC 394. 110 Fed. 2d 556 (1940).

Wigmore points out that the parties declaration has generally probative value of any other persons assertion, says that it has in addition a special value when offered against him, in that he is discredited (like a witness impeached by contradictory statements), by his statements inconsistent with his present claim asserted in his pleadings and in the testimony on which he relies. And it passes the gauntlet of the hearsay rule, which requires that extra judicial assertions be excluded if there was no opportunity for the opponent to cross-examine, because it is the opponents own declaration and "he does not need to cross examine himself." Wigmore on evidence says that the hearsay rule is satisfied since the party now as opponent has the full opportunity to put himself on the stand and explain his former assertion. (Underscore, ours).

According to McCormack on evidence at Page 503, states that it seems to be clear today that admissions of a party come in as subsistive evidence of the facts admitted, and that no foundation or predicate by examining the party himself such as may be required for impeaching evidence, is pre-requisite for proof of admissions.

It should be pointed out that reference is being made to what is commonly called "evidencial admissions", that is words, oral or written

- Page Eight -

5562

or conduct of a party or his representative, offered in evidence against him. As compared to judicial admissions that are not evidence but are usually formal admissions in pleadings or stipulations written or oral by party or his counsel etc..........

McCormack on evidence, Section 243 at Page 513 deals with the testimony by the party against himself. Here McCormack points out that it happens quite often that a party while testifying on the stand or on pre-trial examination, may admit some fact which if true is fatal or at least adverse to his cause of action or defense. If at the end of the trial the parties admission stands uncontradicted, then, like uncontradicted testimony generally, it is conclusive against him. Frequently, this situation is what the Courts are referring to when they say that a party is "bound" by his own testimony. But the controversial question is whether he is bound in the sense that he will not be allowed to contradict his own statement by other testimony, or if contradictory testimony has been received, the Judge and Jury are required to disregard it, and to accept as true the party's self-disserving testimony, as a judicial admission. The main approaches are reflected in the decisions.

1) <u>The view that a party's testimony in this respect is like the testimony of any other witness called by the party, that is, the party is free (as far as any rule of law is concerned) to elicit contradictory testimony from the witness himself, or to call other witnesses to contradict him.</u> (Undersooring ours.) Obviously, however, the problem of persuasion may be a difficult one when the party seeks to explain or contradict his own words, and equally obviously the trial judge would often be empowered to say, on motion for a direct verdict, that reasonable minds in the particular state of the proof could only believe that the party's testimony against his interest was true.

2) The view that the party's testimony is not conclusive against contradiction except when he testifies unequivocally to matters in his particular knowledge, either subsistive facts such as his own motivation, and what he himself knew or felt, or objective facts of observation where he could not have been mistaken.

3) The doctorine widely espoused in the recent decisions, that a

- Page Nine -

party's testimony adverse to himself is in general to be treated as a judicial admission, conclusive against him, so that he may not bring other witnesses to contradict it, and if he or his adversary does elicit such conflicting testimony it will be disregarded. Obviously, this general rule demands many qualifications and exceptions. Among these are the following:

(a) The party is free to contradict, and thus correct, his own testimony; only when his only testimony taken as a whole unequivocally affirms the statement does the rule of conclusiveness apply. The rule is inapplicable, moreover, when the party's testimony may be attributed to inadvertence or to a foreigners mistake as to meaning, or, is merely negative in effect, or is avowedly uncertain or is an estimate or opinion rather than assertion of concrete fact, or relates to a matter as to which the party could easily have been mistaken, such as the swiftly moving events preceding a collision in which the party was injured.

Dated this 23rd day of October, 1959.

*George Stahlman*
GEORGE STAHLMAN
Attorney for Vail Company defendants.