Erle Stanley Gardner
Post Office Box 67
Temecula, California  - Telephone: 201

Defendant in propria persona

FILED

NOV 30 1959

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

_____oOo_____

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>FALLBROOK PUBLIC UTILITY DISTRICT, a public service corporation of the State of California, et al,<br><br>    Defendants. | No. 1247-Civil<br><br>SUPPLEMENTAL BRIEF OF DEFENDANT, ERLE STANLEY GARDNER, ON THE EFFECT OF THE STIPULATED JUDGMENT. |

_____oOo_____

Yesterday, when this defendant was on the witness stand counsel for the Government cross-examined him concerning the stipulated judgment in the old Santa Margarita water case.

Because the questions asked by Government counsel had apparently been carefully planned in advance and were artfully phrased so as to leave the impression with the Court that this defendant was

1.

5611

gratuitously insinuating himself into a dispute which had nothing to do with his title and which, in short, was none of his business, this defendant desires to set forth his position with reference to the stipulated judgment in the old Santa Margarita-Vail case.

Immediately before the noon recess there was a discussion as to the purpose of the present lawsuit and the type of decree which would be asked for by the various parties.

At that time, this defendant was in the back of the courtroom and not in a position to hear clearly all that was said, but did hear enough to gather the distinct impression that there was no desire on the part of the Government, as far as this action was concerned, to apportion water or even to lay down ground rules as to the amount of inches per acre which would be used to irrigate certain crops; that the primary purpose of this action was to determine the Fallbrook diversion, the status of the Vail Ranch under the stipulated judgment and the amount of riparian acreage upstream from Camp Pendleton.

A succession of birthdays has made this defendant's hearing somewhat defective and it is possible this is not a correct statement of the position taken by Government counsel. This defendant has, however, requested the court reporter to make a transcript of that portion of the proceedings, and if this defendant is in error, he will acknowledge the error in a letter to Court and the various counsel. This defendant feels certain, however, that that was the substance of the position taken by Government counsel.

2.

5612

It may, therefore, not be out of line to inquire what actually <u>is</u> the purpose of this lawsuit.

We think anyone who has followed the proceedings will feel that this purpose has changed from time to time. At one time it would seem that the position of Government counsel was that the Government had a paramount right because of its sovereignty.

This position, thanks to rulings by the Court, now seems to have been abandoned.

What, therefore, does Government counsel actually have in mind? Let us look at the record in accordance with his most recent statement. As this defendant remembers it, there was added to that statement a declaration that in some future action it might be necessary for the Government to sue other parties for an individual apportionment of their rights, which brought forth a comment from the Court that this would probably present the same problem to the Court, only there would be fewer parties.

Suppose at the time of this next lawsuit Government counsel comes to court and states, in effect, "We are <u>now</u> asking that the water be limited. We don't care how the apportionment is made, but we do insist that two-thirds of all the water in the stream flow down through the railroad canyon. The upper riparian users can handle the water any way they see fit, provided they do not, in the aggregate, consume more than one-third of the water in the stream. We are adopting this position because in the Santa Margarita case the Government's prede-

3.

5613

cessor was awarded two-thirds of the water in the stream as against the Vails. In the Fallbrook case, this judgment was adopted by the Court. Inasmuch as <u>all</u> of the upper riparian owners were parties to <u>that</u> suit and inasmuch as the validity of the Vail-Santa Margarita judgment was placed in issue in that suit, all parties are now bound by it."

Does this appear fantastic?

It is no more fantastic than the history of this present litigation. In the first case, an attempt was made to give the Government priority by reason of sovereignty over all of the waters in the watershed; in the present case it would seem that various conflicting statements have been made as to the purpose of the litigation culminating in the statement made in court yesterday.

This defendant feels that, regardless of what may be said at any given time or at any future date, Government counsel may well adopt whatever position seems legally tenable at the time which will give the Government the greatest amount of water. And, in the event any prior declaration is relied upon by way of limitation, the position of the Government will be that its rights cannot be surrendered by counsel but only by specific and formal Government action.

This defendant would like to repeat that he is interested as a landowner in having the Court keep a continuing jurisdiction of the case and of the parties, to the end that equity may be done under changing conditions and at all times; that this defendant regards the so-called stipulated judgment between Vail and Santa Margarita as an obstacle

4.

5614

which makes any attempt to do equity, as far as the waters in this watershed are concerned, a mockery.

One of the big troubles with the stipulated judgment is that it quite obviously was framed by persons who were weary of litigation, each of whom was desiring to escape the annoyance, expense and delay of further litigation but who were still mutually suspicious. Therefore, whenever the effect of any legal language in the stipulation was questioned, in place of attempting to straighten out the language so that the question could be answered, new language was added which may well have been dictated by whichever counsel raised the question and in language designed to reassure the party represent by such counsel.

Therefore, the stipulation, in effect, provides:-

1. That all of the water in the stream will be divided one-third to Vail, two-thirds to Santa Margarita;

2. The Santa Margarita shall be entitled to twice as much water as the Vails;

3. The Vails shall be entitled to one-half as much water as the Santa Margarita;

4. The Vails shall guarantee that a certain measured flow of water goes down the river at specific measuring points;

5. In the event the flow of water falls below this specified amount apparently the Vails are required to start pumping water from underneath the surface of their land into the

5.

5615

stream so that the stream will come up to this stipulated measurement at the designated point.

Now, let's look at the practical effect of what such a judgment could mean and what will happen, and, perhaps, what it is planned to have happen.

Is it possible that the entire purpose of this litigation, as the purpose _now_ exists in the mind of Government counsel, is to use the present action as a stalking horse by which he can get within killing distance of the various riparian users so that Camp Pendleton can have the judgment made effective and wind up with the absolute right to two-thirds of the water in the stream?

In the opinion of this defendant, the minute this Court gives effect to that stipulated judgment and sanctifies it by incorporating it in the judgment in this case, the effect will be to upset the equitable balance of the entire watershed.

As far as this defendant is concerned, he is entitled to riparian rights on certain land. If the Vail Company is given a full one-third of the water in the stream and if such allotment is _more_ than the Vail riparian rights, this defendant has been damaged.

On the other hand, if the riparian rights of the Vails are curtailed so that _they_ receive less riparian water than they would be entitled to as riparian users, the situation is entirely out of balance because then the successors of the Santa Margarita will be receiving _more_ water than they would ordinarily be entitled to. Moreover, the equitable

6.

5616

distribution of the water is thrown out of balance for the following reasons:

This defendant believes there is less water in the watershed than will accommodate the demands made by various riparian users both now and in the future, particularly when the agricultural and residential lands are more fully developed.

In order to anticipate this shortage, the Vail Company, at considerable expense, has put in a dam which is designed to impound flood waters. Since the dam has been constructed there have never been enough flood waters to fill the dam and, therefore, some of the waters which are in the dam are normal flow waters impounded and so delayed from flowing down the stream.

If the Government should successfully claim a portion of the normal flow waters impounded behind that dam because of its favorable position in the Santa Margarita judgment, the Vails would be forced to rely more and more heavily on the underground water to be pumped through its wells.

If the expanding resources of the upper watershed are developed, it may well be that even with the dam and the underground water supply brought up through wells and pumps, the Vail Company will have less than enough water to irrigate its property. And if that situation continues, it may be that even without using a drop of water for its own use, the Vails will find that they will have to keep pumps running and exhaust the underground reservoir of water in order to send a guaranteed amount of water past the measuring points below the Vail holdings, in accordance with the

7.

5617

stipulated judgment. Once this happens, it needs no hydraulic engineer to point out that the water table will be lowered and that all riparian owners above the point of measurement will be greatly damaged.

In the case of Vail and Santa Margarita we have a peculiar legal situation. Two big landowners, ignoring everyone else on the stream, got together and stipulated a judgment by which the entire waters of the stream were divided. The Santa Margarita got two-thirds; the Vail got one-third.

Two-thirds plus one-third makes three-thirds. Three-thirds represents the whole.

The minute this Court gives effect in this litigation to the Vail-Santa Margarita stipulated judgment, it puts Government counsel in the position of being able to contend that all of the waters in the stream have been disposed of; that the Government doesn't care what happens to the Vail allotment but that the Government is jealous of protecting its own allotment, and that, therefore, the Court either in this action or in a subsequent action must give effect to the stipulated judgment by providing that two-thirds of the water in the stream must flow past the measuring point mentioned in the judgment. And if there is not enough water in the stream, it is up to the upper riparian owners to put enough water in the stream to see that the stipulated flow <u>does</u> go past this measuring point.

That is potentially the position of the Government at the present time, except that it seems to be directed against the Vails. The more harsh provisions of the stipulated judgment are pushed into the background while the Government talks about the advantages to the Vails of receiving

8.

5618

a full one-third in accordance with the stipulated judgment.

And, of course, at the present time the position of the Government is that the stipulated judgment is, in effect, only for the purpose of disposing of and settling the conflicting rights of the Vails on the one hand and the Government on the other.

If, however, the Court falls in with this line of reasoning and under the stipulation one-third of the water is given to Vails and two-thirds to Santa Margarita, what else is there to dispose of?

Apparently the Government now seems to accede to the contention of the various parties that the stipulated judgment in the Santa Margarita-Vail case is not binding upon such other parties because they were not parties to the original Santa Margarita-Vail action.

But they *are* parties to *this* action.

If, therefore, this Court gives effect to the stipulated judgment in this action or does anything other than throw it out, the Government is going to be in a position to contend that the stipulated judgment *was validated* by this Court in an action in which every upper riparian owner was a party and, therefore, regardless of what distribution may be made as between the Vails and other upper riparian users, the Government is entitled to have the stipulated amount of water pumped into the stream, if necessary, in order to keep up the flow to the stipulated amount at the point of measurement.

There is only one way to do equity and that is to start with a clean slate.

There is only one way to apportion water according to riparian rights and that is under the law.

The minute this Court, or any other Court, gets placed in a position where it tries to administer certain riparian rights under the riparian law of the state, <u>after</u> setting aside any stipulated amount to any user, which amount has been fixed arbitrarily and not in accordance with the principles of law, the Court has upset the natural balance of the watershed so that the Court simply <u>can't</u> do equity as to the waters which remain. And if the waters so set aside amount to three-thirds of the flow in the stream, what is there left to apportion?

Is it for this reason that the Government is <u>now</u> adopting the position that it doesn't want the Court to try to allocate water or even to lay down ground rules for riparian use? Is it the present attempt of the Government to trap this Court into making a general decree designating only the amount of riparian acreage <u>but</u> giving present validity to the Vail-Santa Margarita stipulated judgment so that, at a later date, in another suit, after having lulled the riparian owners into not contesting the validity of the stipulated judgment in this suit, the Government can then seek to enforce its right to the letter under the Vail-Santa Margarita judgment, claiming that, while the original stipulation and judgment may have been invalid as to riparian users who were not parties to the litigation, the judgment in the Fallbrook case where <u>all</u> of the riparian users <u>were</u> before the Court and the validation of the stipulated judgment in that suit makes it binding upon every riparian owner?

10.

5620

Anyone who wants to dismiss such a possibility lightly needs only to look at the history of this litigation.

It would be a travesty on justice if two parties could get together and divide up all the water in the stream and have a judgment entered accordingly. This judgment would, of course, not be binding upon persons who were not made parties to the action. Then, many years later, one of the parties could come in and bring all of the upper riparian owners before the Court and then ask the Court, with every manifestation of innocence and a desire for fair play, to affirm the judgment as between the two parties.

Where does this leave the rest of the riparian owners?

Where indeed!

If, in an action in which all of the parties are before the Court, the Court ratifies the stipulated judgment and that stipulated judgment by its terms purports to dispose of all the water in the stream, a court of equity has created such an inequitable situation that the rights of upper riparian users have been confiscated.

It is the law that a person cannot be bound by a judgment rendered in a case to which he is not a party.

The effect of bringing him in later on as a party and then having the temerity to argue that the judgment, while not binding upon him, is at the same time binding upon his potential property rights is to make a mockery of justice.

Regardless of what the situation may be between the Vail Company

11.

5621

and the Government, there is only one way in which this Court can clear away the underbrush of legal confusion and place itself in a position to do justice among the parties, and that is by starting with a clean slate so that all of the waters in the river are subject to division under the only equitable way we know, which is under the water law.

To try to state that the subject matter contained in the stipulated judgment is binding upon the Court, and then try to do equity as to the remaining parties, is to trap the Court into an impossible situation as far as equity is concerned.

It is all right at the present time to state that this judgment is binding only upon the Vails on the one hand and the Government on the other. The minute the Court listens to that line of reasoning and incorporates it in a judgment, the stipulated judgment becomes binding upon the Court. The minute it becomes binding upon the Court, the Court's hands are tied. The minute the Court's hands are tied, it can't do even-handed justice as among the parties.

To use a legal juggling act of this sort in order to make a judgment which has never been binding upon the other parties or binding upon their property rights is a travesty on justice.

This Court can't determine the rights of this defendant or the rights of any other defendant under the rules of equity as long as it starts out with the premise that any given amount of riparian water is not subject to equitable riparian division.

The stipulated judgment in the Vail-Santa Margarita case is a

12.

5622

tumor in the present situation, the importance of which is being minimized as much as possible at the present time but which can grow into a malignancy which will destroy the equitable division of all riparian waters.

If that stipulation is in any way made binding upon this defendant or any other defendant, it has the effect of nullifying the legal safeguards by which a man's property cannot be taken without due process of law. This defendant was not brought into the Vail-Santa Margarita controversy; therefore, the judgment in that case is not binding upon him. To go through the legal legerdemain of bringing him into a suit simply to determine the amount of riparian land he may have, and then at the same time, in connection with that suit where this defendant is a party, to establish the validity of the stipulated judgment, is to do by indirection what the law says cannot be done, and to entrap this Court in a legal entanglement from which there is no escape and where it is impossible to find any legal precedent which can protect the remaining rights, if any, of the riparian users who were not parties to that judgment.

And this defendant respectfully submits that it is not beyond the bounds of possibility that this is, or has become, the primary objective of this litigation.

To hold out to this Court the contention that there is an easy way of disposing of this litigation, that the Court at the present time doesn't need to determine any conflicting riparian rights, that all the Court needs to do is to validate the stipulated judgment in the Vail-Santa Margarita case, and adjudicate the amount of riparian acreage, is a tempting bait

13.                                     5623

by which the Court can avoid many embarrassing legal problems; offers an easy way out, and can lull the litigants into a sense of false security so that the extent of the legal trap into which both the Court and the parties concerned have been lured, does not become apparent until counsel chooses to close the jaws of that trap in another action in which he seeks to enjoin all of the upper riparian users in the aggregate from using more than one-third of the water in the stream; and asks that the Vail Company be ordered to turn loose enough of the impounded waters in the dam and to pump enough water from its subterranean reservoir to keep the flow of the stream at the stipulated amounts at the stipulated points.

If in the future one of my successors in interest tries to make otherwise proper use of riparian waters and is faced with an application for an injunction by the successors in interest of Camp Pendleton (who by that time may well be some big subdivision company) and who claim that regardless of how my riparian use might be interpreted under the law, the fact that it interferes with the designated stream flow past the point designated in the stipulated judgment is sufficient to require an injunction, what is a Court going to do?

It needs only the contemplation of that situation to realize the extent to which this defendant and every other upper riparian defendant is concerned with what this Court does in connection with the stipulated judgment.

Regardless of how much legal sugar coating may be put upon the pill at the present time by astute counsel, the fact remains that this is a

potential malignancy which, unless surgically removed, is going to make a mockery of the equities, distort the values, tie the hands of the Court, and, in effect, confiscate the vested rights of upper riparian users by forcing them to conform to a judgment which was rendered in a case to which they were not a party.

This defendant and every other defendant is vitally affected by the inequities and injustice of the stipulated judgment, the inequities being not only the fantastically impossible terms of the stipulated judgment itself, but by forcing upper riparian users to evaluate their rights, if any, in accordance with a stipulation which by its terms purports to dispose of <u>all</u> of the waters in the stream.

All of the parties are now in a court of equity. The plaintiff in a court of equity is required to come into court with clean hands and to be willing to do equity. Having asked for equity, he is deemed to have subordinated his legal rights to the broad provisions of equity.

A person who has signed a mortgage note which is outlawed is in a position to enjoy <u>legal</u> immunity, but let him come into a court of equity in a quiet-title action and he has to pay off the note regardless of his <u>legal</u> rights. Having sought the aid of equity, he is forced to do equity.

The successor in interest of the Santa Margarita has now come to a court of equity. To let it rely upon a fantastic judgment which, by its very terms tries to dispose of <u>all</u> the water in the stream, and then ask for an equitable adjudication of the acreage of riparian lands, makes a mockery of justice.

15.

5625

When a plaintiff comes into court claiming that, under a stipulated judgment to which the upper riparian users were not a party, all of the water in the stream has been disposed of and the plaintiff is entitled arbitrarily to a fixed amount of water flowing past a certain point, even if the subterranean reservoir has to be exhausted in order to bring this about, how can such a plaintiff ask a Court for any equitable relief as to the remaining riparian owners, who by the very terms of the stipulation have been deprived of all their water?

The legal absurdity of his position would be readily apparent if it hadn't been for the skillful way in which the issue has been detoured, the legal sugar coating which has been placed upon the pill, and the fact that apparently many of the defendants have been lulled into a false sense of security by statements made both in and out of court that the stipulated judgment is only the yardstick by which the present rights of the Vail Company with reference to the rights of the plaintiff are to be measured.

That stipulated judgment is presently invalid as to this defendant. The plaintiff hopes by this action to make it valid. There can be no equitable division of water unless it is an <u>equitable</u> division of <u>all</u> the water. The minute any designated amount of water is withdrawn from the amount to be equitably divided the resulting division becomes inequitable.

Regardless of whether any judgment purports to allocate water, the fact remains that under the riparian laws there are rules of division applicable to the use of water and these rules represent, in effect, a yardstick of equitable allocation.

16.

5626

To cut off a part of that yardstick and seek to measure the rights of litigants with such an amputated measure is destined to result in an inequitable measurement.

In this case the plaintiff asks the Court to give effect to a judgment dividing **all** of the water between two of the parties and then to make all equitable adjudication of the "remaining" water rights of the remaining parties.

The plaintiff does this in the name of equity and then seeks to still the protests of this defendant by showing that neither party has **as yet** tried to stop his use of the water and that, therefore, the stipulated judgment is no part of his "chain of title."

The fact that this Alice-in-Wonderland situation can be made to seem other than fantastically ludicrous is a tribute to the high forensic skill which has hidden the true facts under a curtain of legal legerdemain.

Respectfully submitted,

_____
Defendant in propria persona

17.

5627

## CERTIFICATE

I, the undersigned, hereby declare under penalty of perjury that I mailed a true and correct copy of the above and foregoing "SUPPLEMENTAL BRIEF OF DEFENDANT, ERLE STANLEY GARDNER, ON THE EFFECT OF THE STIPULATED JUDGMENT" to Hon. James M. Carter, District Judge, U. S. District Court, San Diego 1, California; William H. Veeder, Esq., Spec. Asst. to Attorney General, Room 221 U. S. Customs and Court House, San Diego 1, California; Sackse and Price, Attorneys at Law, 1052 S. Main Street, Fallbrook, California; Hon. Fred Girard, Deputy Attorney General, Library and Courts Building, Sacramento 14, California; Best, Best & Krieger, Attorneys at Law, 4200 Orange Street, Riverside, California; Clayson, Stark & Rothrock, Attorneys at Law, Security Bank Building, Corona, California, Attention: George C. Grover; George Stahlman, Esq., Rt. 1, Box 235, Fallbrook, California; J. Lee Rankin, Solicitor General, Room 332, 325 W. F. St., San Diego, California; John M. Cranston, Special Master, 1410 Bank of America Bldg., San Diego 1, California, on the 25th day of November, 1959, with first-class postage fully prepaid.

_____
ERLE STANLEY GARDNER

Four extra copies mailed to the Clerk of the U. S. District Court

5628