(SPACE BELOW FOR FILING STAMP ONLY)

LAW OFFICES
SACHSE AND PRICE
1092 South Main Street
FALLBROOK, CALIFORNIA
RANDOLPH 8-1154

# FILED

JAN 13 1960

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By M.Ackerman
DEPUTY CLERK

Attorneys for_____Defendants_____

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | No. 1247-SD-C |
| vs. ) | MEMORANDUM REGARDING JUDGMENT AND STIPULATED JUDGMENT, SANTA |
| FALLBROOK PUBLIC UTILITY DISTRICT, ) et al., ) | MARGARITA vs. VAIL |
| Defendants. ) | |

In response to the questions submitted by the Court December 18, 1959, the following Memorandum is respectfully submitted.  Section headings are in the words of the Court's questions.

I

IS PART OF THE OLD JUDGMENT IN SANTA MARGARITA vs VAIL, WHICH WAS NOT AFFECTED BY THE GRANTING OF THE NEW TRIAL, STILL EFFECTIVE AS TO THE GOVERNMENT, THE SUCCESSOR OF SANTA MARGARITA, AND THE VAIL COMPANY?

A.   The Original Judgment.

This question requires a brief summarization of the Judgment of the trial court.  The Judgment contains eighteen paragraphs, the effect of which can be paraphrased as follows:

Paragraph 1 holds that the plaintiff, defendants and intervenors all have correlative riparian rights in the waters of "...the Temecula-Santa Margarita River and its tributaries..".

Paragraph 2 holds that plaintiff is entitled to take

- 1 -

5719

1  and use upon its lands riparian to "...said Temecula-Santa Margarita
2  River <u>as delineated and defined in the findings herein..."</u>
3  (emphasis added) 75% of the natural flow of the stream system.

4         Paragraphs 3, 4, 5, 7 and 8 hold that defendants are
5  entitled to take and use upon various portions of their holdings
6  named percentages of the natural flow of "..said Temecula-Santa
7  Margarita River <u>as the same is delineated and defined in the</u>
8  <u>findings herein.."</u> (emphasis added).

9         Paragraphs 6 and 12 provide for gaging stations to
10 be used in measuring the stream in carrying out the apportionments
11 of the judgment.

12        Paragraphs 9 and 10 hold that intervenors Playtor and
13 Schless Foundation are each entitled to named quantities from the
14 said stream system.

15        Paragraph 11 provides that Intervenors' allocations
16 shall be deducted from the share of plaintiff.

17        Paragraph 13 provides that certain sub-surface
18 diversions by defendants shall be regarded as diversions from the
19 stream system.

20        Paragraphs 14, 15, 16 and 17 contain various
21 injunctions against defendants' uses.

22        Paragraph 18 awards costs to plaintiff.

23        B.  <u>How Much of the Trial Judgment Was Appealed</u>?

24        The following comments <u>are not</u> based upon a review of
25 the actual file on appeal, but solely upon the reported decision
26 in <u>Rancho Santa Margarita vs. Vail</u> 11 C. (2d) 501; 81 P. (2d) 533,
27 the decision in which states:

28        The appeal was on a Bill of Exceptions.  The questions
29 for review all pertain to the rights of the parties as riparians.
30 Many issues were contested at trial which were abandoned on appeal.
31 The rights of the intervenors were not appealed and were determined
32 by the trial judgment.

LAW OFFICES
BACHSE AND PRICE
1008 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 2 -

1    The appellants urged five main points: (81 P(2d) at
2  p. 545.

3    1.  Error in the determination of their riparian lands,
4  and in the allocation of water on the basis of such erroneous
5  determination.

6    2.  Error in holding certain lands of respondent to be
7  riparian.

8    3.  Error in granting the injunctions.

9    4.  Error in refusing to consider sub-surface flow of
10  the stream system.

11    5.  The method of measurement prescribed by the judgment
12  was erroneous.

13    C.  The Judgment on Appeal.

14    The entire judgment on appeal is contained in the last
15  two paragraphs of the opinion.

16    "From what has heretofore been stated in this opinion
    it is obvious that a reversal of the judgment is necessary.
17    However, the new trial need not be a protracted one.
    Appellants have not challenged many of the findings.  There
18    is no need for a new trial on those issues.  It would appear
    that on the new trial it will be necessary:  (1) to
19    ascertain the extent of appellant's riparian and irrigable
    acreage as set forth in the body of this opinion; (2) to
20    ascertain the extent of respondent's riparian and irrigable
    acreage only insofar as it involves the table land,
21    discussed in the body of this opinion; and (3) to ascertain
    whether an injunction should be granted under the rules set
22    forth in the body of this opinion, and if so, what its terms
    should be.

23
    With this direction to the trial court the judgment appealed
24    from is reversed.".

25    D.  What is the net effect of the foregoing?

26    It is settled law that a part of a judgment can be
27  appealed from.

28    Rule 1, Rules on Appeal.
    3 Witkin, California Procedure, "Appeal", Sec. 38.
29
    The effect of such a partial appeal is that only those
30  portions of the judgment appealed from are brought up for review,
31  and the remainder of the judgment becomes final.  This is true
32  even if the reversal by the appellate court is in general terms.

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 3 -

5721

1    <u>Whalen vs. Smith</u>  163 C. 360; 125 P. 904
2    <u>Glassco vs. El Sereno C.C.</u> 217 C. 90;
                                    17 P. (2d) 703

3         It is obvious that the rights of intervenors were
4    determined by the judgment of the trial court, but that portion
5    of the judgment is of no effect in view of the conclusions
6    expressed in Section II of this Memorandum; considering the United
7    States and Vail Company, however, it appears that those portions
8    of the trial judgment which allocated the water between Santa
9    Margarita and Vail were clearly reversed on appeal.  The trial
10   judgment is no longer of any effect on that question.  The same
11   is true as to the injunctive provisions of the trial judgment.

12        But nowhere is there the slightest suggestion of an
13   appeal from the trial court's determination of the <u>extent of the</u>
14   <u>stream system</u>.  Vail appealed the <u>percentage of the waters</u>
15   allocated to them.  They made no objection to the trial court's
16   findings as to <u>the whole of which the percentage was a part</u>.  Nor
17   did Santa Margarita make such objection.

18        What was the trial court's determination on this
19   question?  As is pointed out in paragraph A, above, the judgment
20   repeatedly <u>refers to the findings in describing the stream system</u>.
21   The findings are lengthy, but a few brief references will be
22   sufficient:

23        1.  The exact extent of the Temecula River and of
24   Murietta Creek is not specified.  Finding 8 (Vail Exh. AB, p 12,
25   line 21,)  states that the Temecula River continues "approximately
26   20 miles" easterly of the southeasterly boundary of Pauba Grant.
27   Murietta Creek is not described as to headwaters or length.
28   (Vail AB, page 13, line 22, et seq).  The only tributaries
29   specifically named are Santa Gertrudis Creek, which is not defined
30   as to length or headwaters; Penjango (Pechanga) Creek,  not
31   described as to extent or headwaters; Cottonwood Creek, De Luz
32   Creek and Sandia Creek, none of which are clearly de-limited as to

LAW OFFICES
BACHEE AND PRICE
1002 E. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 4 -

5722

1    extent or headwaters.

2         2.  The Findings repeatedly state that the ground water
3    basins of the stream system are strictly limited to the area of
4    younger alluvium, and that the "Mesa Silt" (Comparable to the
5    "Older Alluvium as delineated by witnesses for the United States)
6    ground waters are not connected with the ground waters of the
7    stream system." (See for example, Vail Exhibit AB, page 22, lines
8    19-26; Finding number 23, page 54, line 22 and following).

9         E.  Are those portions of the judgment binding on the
10   United States of America and the Vail Company?

11        Since those portions of the judgment referred to in
12   paragraph D are final, it is the position of the undersigned that
13   the judgment as to extent of the stream system is res judicata as
14   far as the United States and the Vail Company are concerned.  It
15   should, however, be noted at this point that we make this
16   contention only as to the determination of the extent of the
17   stream system.  We do not believe that any quantitative allocation
18   of water to a riparian can ever be res judicata.  This specific
19   point is discussed in the next section of the memorandum.

20        The doctrine of res judicata gives conclusive effect
21   to a former judgment in subsequent litigation involving the same
22   controversy, between the same parties or their "...successor in
23   interest by title subsequent to the commencement of the action..".
24   (Calif. C.C.P., Sec. 1908).  This definition clearly fits the
25   United States, which the record shows is the successor in interest
26   of Rancho Santa Margarita since the institution of the action in
27   Rancho Santa Margarita vs. Vail.  Furthermore, by stipulation in
28   these proceedings the United States has acknowledged that it
29   claims only as successor in interest to the Rancho Santa Margarita.

30        To summarize, we believe that the Government and
31   Vail Company are bound by those provisions of the original judgment
32   that hold that ground waters outside the areas of younger alluvium

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 5 -

5723

1    are not a part of the stream system.

2                              II

3    CAN THE JUDGMENT OF A STATE COURT INVOLVING RIPARIAN RIGHTS EVER

4    BE RES JUDICATA?

5              There are a number of decisions in which various

6    aspects of the question have been discussed, although we have found

7    none with a specific answer.

8              Albaugh vs. Mt. Shasta Power Co. 9 C (2d) 751;

9    73 P (2d) 217 involved among other things the question of whether

10   the determination in a preceding trial as to the waters to which

11   plaintiff's lands were riparian was "law of the case".  The

12   Supreme Court specifically held that such a finding was law of the

13   case.

14             The case of Watson vs. Lawson 166 C. 235; 135 P. 961,

15   comes close to answering the Court's question.  In that controversy,

16   a prior decision had determined that plaintiff had no rights in

17   the stream as against certain defendants.  It also determined that

18   the stream flowed through the lands of plaintiff.  In a subsequent

19   action between the same plaintiff and the successors in interest

20   of defendants, the trial court held that plaintiff had no rights

21   in the stream, basing its conclusions upon the prior judgment.  The

22   Supreme Court reversed, stating:

23       "It is clear from the whole record that this judgment was
         not intended as an adjudication that Watson had no rights
24       in the waters of the creek.  The complaint alleged that
         the creek ran across a portion of his land, and this fact
25       was admitted by the answer.  It was therefore an established
         fact upon which no finding was necessary.  His land, being
26       in part at least, riparian to the creek, he was entitled to
         a reasonable use of its waters upon that part thereof,
27       equally with other riparian owners.".

28             The Supreme Court proceeded to enunciate rules for

29   the interpretation of judgments;  and by interpretation avoided

30   the question of res judicata.

31             Parker vs. Swett 188 C. 474; 205 P. 1065, was one

32   of a series of actions involving a partition of riparian lands.

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 6 -

5724

The trial court held that the physical severance resulting from
the partition did not result in loss of riparian rights, and
that the lands involved remained riparian.  Defendant challenged the
finding in a latter case.  The Supreme Court held that the finding
as to riparian status was res judicata.  However, it set aside a
number of findings and modified those parts of the trial court's
judgment limiting the use of stream waters to certain seasons of
the year.  The Court held:

> "We do not think it was within the province of the
> court thus to limit the riparian use of water.  The
> future cannot be foreseen.......Any use made of the
> water on Tract 3, which consumes it and prevents it
> from reaching the 1890 point, should be limited to
> such quantity as may be reasonable and just when
> taken in connection with rights and needs of other
> riparian tracts..."  (Emphasis added)

The language is not as clear cut as one would wish,
but the effect is obvious:  the judgment as to riparian status is
res judicata; however, "..the future cannot be foreseen.." and
any apportionament is subject to future change as circumstances
change.

The broad principle that the riparian right does not
entitle the holder to any specific quantity of water has been
enunciated in so many cases that quotations are un-necessary.  The
leading decisions are :

Prather vs. Hoberg  24 C(2d) 549, 559-560; 150 P (2d) 405.
Seneca Mines vs. Gt. Western Power  209 C.206; 287 P.93
Carlsbad Mut. Water Co. vs. San Luis Rey 78CA (2d) 900,911;
                                          178 P (2d) 844

The Hoberg Case cited above is authority for the
principle that whenever possible, apportionments among riparians
should be on a percentage basis so as to avoid future controversy.
In the Carlsbad Case cited above, the Appellate Court suggested
that the trial court should retain jurisdiction for the same reason.

Even were there no case law on the subject, common
logic and the provisions of Art. XIV, Section 3 of the California
Constitution compel the conclusion that no allocation of water

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

5725

among riparians can ever be res judicata.    To hold otherwise
would amount to a ruling that a past judicial decision could
nullify the future application of a Constitutional provision.

Stated simply, our conclusion as to the Court's
second question is:  prior judgments involving riparian rights
are res judicata to the extent that they involve a determination
of the existence of the right and the existence and extent of the
stream and of riparian lands, in other words what we might call
the "in rem" provisions of the judgment.  However, such judgments
can never be res judicata if they purport to make any final
apportionment of the water.  To quote Parker vs Swett, supra,
"The future cannot be foreseen."

                          III
           WHAT DOES THE STIPULATED JUDGMENT MEAN?

Aside from the obvious fact that the Stipulated
Judgment was an effort by the parties to terminate litigation that
threatened them both with bankruptcy, one other basic fact must
not be over-looked:  the Stipulated Judgment was intended only
to determine the rights of Rancho Santa Margarita and Vail as to
each other.  This statement does not appear anywhere in the
Stipulated Judgment, but the preamble clearly states that it was
entered into in the light of the Findings and Judgment of the
Trial court and the reversal on appeal.  The Findings repeatedly
refer to parties "not parties to this action" who also have rights
in the stream.  (See for example, Vail Exhibit AB, page 12,
lines 31-32; page 13, lines 5-15, lines 28-29; page 14, lines 1-4).

The trial court's judgment gave Santa Margarita
75% of the water and Vail 25%.  It did so in the full realization
that there were other riparians with rights in the stream.  The
Stipulated Judgment gave Santa Margarita 66 2/3% and Vail 33 1/3%
also in the full realization that others had rights.  The
apportionment therefore was never intended to represent an absolute

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 8 -                    5726

division of the water, but simply as a statement of their rights inter se.

The Stipulated Judgment naturally divides itself into four parts: A. The rights of the parties;  B. The measurement and apportionment of the waters; C.  The Vail "guarantee" of a minimum flow at the Narrows; and D. Miscellaneous provisions.  In the discussion below, the foregoing sub-heads are used; the paragraph numbers are the same as are used in the Stipulated Judgment.

A.  The Rights of the Parties.

1.  The parties and Intervenors have rights in the stream.

2.  Santa Margarita "is entitled" to take an amount of water equal to 2/3 of the natural surface flow measured at Ysidora for use anywhere on its lands.

3.  Vail "is entitled" to take an amount of water equal to 1/3 of the natural surface flow measured at Ysidora for use anywhere on its lands.

4.  Intervenor Playtor "is entitled" to one miner's inch.

5.  Intervenor Schloss Foundation "is entitled" to the entire flow of Stone Creek in the summer and to 5 miner's inches from the same stream in the winter.

6.  The share of the Intervenors shall be deducted from the entitlement of Santa Margarita.

COMMENT:  These paragraphs are concerned only with rights.  They do not attempt to apportion any water except to the Intervenors and there they simply repeat an already final judgment of the trial court.

B.  The Measurement and Apportionment of the Waters.

7.  Certain gaging stations are to be maintained by Santa Margarita and Vail "For the purpose of dividing among, and

LAW OFFICES
BACHBE AND PRICE
1003 B. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 9 -

5727

1 allocating to, the parties of this action" (emphasis added) the
2 waters the rights to which are set forth in the preceding
3 paragraphs.
4      8.  When the natural surface flow at the Narrows
5 exceeds the natural surface flow at Ysidora, the former shall be
6 the basis of the apportionments.
7      9.  Vail can satisfy its entitlement by taking an
8 amount of water equal to 1/2 the flow at the Narrows or 1/2 the
9 flow at Ysidora, whichever is greater.  It can take this water
10 from the surface or from the sub-surface flow of the river.
11 Periodic brief over-drafts by Vail shall be made up by subsequent
12 reductions in diversions.
13      10.  In addition to its entitlement of river water,
14 Vail is allowed certain extractions from the underground, referred
15 to as "Storage Water".  These extractions can only be applied on
16 specified areas of the Vail lands.  NOTE:  This paragraph is no
17 longer applicable in view of paragraph 13.
18      COMMENT:  Again we see that the Stipulated Judgment
19 only purports to apportion water among the parties to the action,
20 (Paragraph 7).  Since the total apportioned equals 100%, we must
21 assume, if we are to give Paragraph 7 any effect, that the
22 Stipulated Judgment recognized the rights of others in the stream,
23 and only sets up a mechanics for dividing the shares of Santa
24 Margarita and of Vail between themselves.
25      C.  The Vail "Guarantee" of a Minimum Flow at the
26 Narrows.
27      11.  This entire "guarantee" is contained in one
28 lengthy paragraph, broken into two parts:
29      I.  Vail shall maintain at the Narrows a
30 constant flow of 3 cfs from May 1 to Oct. 31, annually,  However,
31 the surface flow may drop below 3 cfs for periods of not more than
32 10 days, with at least 10  days elapsing between such periods.

LAW OFFICES
SACHSE AND PRICE
1002 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1184

- 10 -

5729

1   When this occurs, Vail shall contribute to the surface flow an
2   amount to make up the deficiency, at as nearly the same rate as
3   is practicable.  Such contribution shall be made immediately after
4   the deficiency occurs.  In any event, surface flow at the Narrows
5   shall never drop below 2 cfs.

6                   II.  If necessary, Vail shall be allowed
7   excessive diversions for periods of not to exceed 8 days, with
8   intervals between such periods of at least equal length.  Such
9   diversions may only be made from "underground waters".  After a
10  period of excess diversions, Vail shall reduce its diversions in
11  an amount equal to the excess taken.  Vail shall advise Santa
12  Margarita in advance of such excess diversions.  Parts I and II
13  are to be read together.

14          COMMENT:  This guarantee is not a "Third Party Bene-
15  ficiary Contract" which can be enforced by anyone other than Santa
16  Margarita or its successors in interest.  But, if the Stipulated
17  Judgment is valid, it gives the United States as successor to
18  Santa Margarita the right to demand that Vail maintain the flows
19  provided for, even if doing so results in expense and loss to Vail.

20          D.  Miscellaneous Provisions:

21          12.  Vail shall always have the right to take and use
22  an amount of water equal to one-half that taken by Santa Margarita .
23  Both parties shall measure and meter their diversions, both surface
24  and sub-surface.

25          13.  Both parties have the right to construct dams.
26  However, if Vail does so, it loses its rights to extract ground
27  water granted by paragraph 10.

28          14.  Costs to Rancho Santa Margarita.

29          COMMENT:  Here again rights are determined inter se.
30  Neither party can grant the other the right to build a dam.  The
31  significance of paragraph 13 is that both parties agree not to
32  object if the other seeks to do so.  But if Vail does so, then

LAW OFFICES
BACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

                                    - 11 -

1  Santa Margarita reserves to itself the right to object to ground
2  water extractions, which right was otherwise waived by paragraph
3  12.

4        Conclusion:  The Stipulated Judgment makes sense only if
5  it is regarded as a "Covenant Not to Sue".  By signing it, the two
6  largest landowners and water users on the stream would avoid
7  future litigation.  Each agreed to certain rights in the other,
8  and each waived certain rights.  They agreed that as between
9  themselves they would tolerate acts otherwise actionable.  For
10 example:

11        1.  They agreed not to object to use of water on non-
12 riparian lands.  Any use by Vail of river water on non-riparian
13 lands was clearly actionable by Santa Margarita, but it agreed not
14 to sue if Vail made such use.  Both knew full well that other
15 water users could object, but as between themselves, they
16 covenanted not to sue.

17        2.  They agreed that Vail could have 1/2 the water used
18 by Santa Margarita, and Santa Margarita twice the water used by
19 Vail.  They knew others were involved, but as between themselves
20 they agreed to a ratio of Santa Margarita 2 to Vail 1.  So long as
21 the ratio was observed, neither would sue the other.

22        3.  The only other litigants were owners of lands
23 below Vail.  If they did not receive enough water, their complaint
24 would be directed against the upstream user, Vail.  But Santa
25 Margarita agreed to assume the burden of their use, to the extent
26 that the judgment of the trial court fixed their rights.

27        4.  As the last user on the stream, Santa Margarita
28 could do as it wished with the water coming to it.  Yet it agreed
29 to meter and measure its water and report to Vail to assure Vail
30 of receiving 1/2 of that amount.

31        5.  They agreed not to object should either seek to
32 construct a dam.  The laws governing appropriation of water were

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 12 -

5730

1  well established, but Santa Margarita waived whatever rights it
2  might have had to object to an appropriation by Vail.
3          6.  They agreed to a minimum flow at the Narrows.
4  Conceivably, riparian uses below the Narrows could dry the stream
5  in the future.  But if that should occur, Santa Margarita agreed
6  not to sue Vail so long as a 3 cfs flow was maintained at the
7  Narrows.  It of course reserved its  legal remedies against users
8  below Vail, but Vail was obligated to deliver three second feet
9  and no more.  (Paragraph 11).

10                          IV
11  A FORM OF DECREE, INCORPORATING THE JUDGMENT AND THE STIPULATED
12  JUDGMENT.
13          In drafting this outline for a decree, the
14  following assumptions have been made as to Findings of Fact and
15  Conclusions of Law:
16          1.  Those portions of the original Judgment in
17  Santa Margarita vs. Vail which determined the extent of the stream
18  system and the basins which were a part of the stream, remain in
19  effect and are binding upon the United States, Vail and the
20  Intervenors.
21          2.  The purported allocation of waters to the
22  Intervenors is of no effect for the reasons discussed in  Section
23  11 of this Memorandum.
24          3.  The Stipulated Judgment remains in effect,
25  and is binding on the United States and Vail, for the limited
26  purpose of determining their rights inter se.
27          4.  In this proceeding the extent of the stream
28  system will be found to be all areas of younger alluvium
29  delineated on United States Exhibit 15.
30          5.  In this proceeding the Court will make no
31  quantitative allocation of waters to any riparian, but will determine
32                          - 12 -

LAW OFFICES
BACHSE AND PRICE
1002 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

1   the extent of riparian lands and will decree that all riparian

2   landowners are entitled to share correlatively in the waters of

3   the stream system.

4         6.  The Court will retain continuing jurisdiction of

5   this cause.

6         What follows hereafter is an <u>outline</u> of a decree.

7   No attempt at formal language has been made.

8         <u>A.  The Extent of the Stream System.</u>

9         This portion of the Decree must specify those areas

10   in which ground waters <u>are not</u> a part of the stream.  It is

11   assumed that United States Exhibit 15 will be the basis for this

12   portion of the Decree.  Streams which the Court finds flow "only

13   during and immediately after periods of heavy precipitation and

14   run off", and which streams <u>do not</u> overlie substantial deposits

15   of alluvium, should be separately covered.

16         <u>B.  The Riparian Lands.</u>

17         The Decree must state those lands which are riparian

18   to any stream within the river system, and must specify the streams

19   to which they are riparian.

20         The owners of riparian lands have the right to

21   share correlatively in the waters of the streams to which such

22   lands are riparian, for all reasonable and beneficial purposes.

23   The question of actual quantitative allocations of water among

24   riparians should be left open for future determination.  Such a

25   retention of jurisdiction would automatically take care of lands

26   which are riparian to streams which flow only during and after

27   heavy run-off and thus make no present use of their riparian right.

28         <u>C.  Appropriators.</u>

29         The Decree must state all appropriations, whether

30   the same represent fully vested rights or merely inchoate rights.

31   It must state the location of the appropriation; its purpose; its

32   quantity; the lands upon which the water is to be used; and its

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

- 13 -

5732

1  priority date.  Any special conditions such as limitations on
2  time of use must be stated.  Finally the Court must hold that all
3  appropriations are subject to all prior vested rights, and retain
4  jurisdiction to adjudicate any controversies relating thereto.
5       In the case of incomplete appropriations, the Decree
6  will recognize the right of the appropriator to proceed as
7  provided by State Law to complete the appropriation, subject always
8  however to the continuing jurisdiction of this Court in the event
9  of controversy with other parties to this cause.
10      <u>D.  Prescriptive Rights.</u>
11      The Decree must determine all prescriptive rights
12  within the watershed.  In so doing, the effective date is of
13  extreme importance, since the United States will take subject to
14  prescriptive rights acquired against its predecessor, but will not
15  be subject to prescriptive rights which had not fully vested prior
16  to the transfer of the Rancho to the United States.
17      <u>E.  The Effect of the Stipulated Judgment.</u>
18      This portion of the Decree will resemble a judgment in
19  Declaratory Relief.  It should state:
20      1.  The Stipulated Judgment is effective as to the
21  rights of the United States (as successor in interest to Rancho
22  Santa Margarita) and the Vail Company (as successor in interests
23  to the Vail defendants), <u>only as to their rights inter se.</u>
24      2.  The United States, Vail Company and the
25  Intervenors are bound by the doctrine of "collateral estoppel" to
26  the judgment of the Trial Court as to the extent of the stream
27  system.  For example, assuming that in this proceeding the stream
28  system is found to be more extensive than was the case in <u>Santa</u>
29  <u>Margarita vs. Vail</u>, these results would follow:
30      I.  The United States, Vail and the
31  Intervenors <u>could not complain of extractions or diversions outside</u>
32  <u>the stream system as found in the first case.</u>

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

5733

II.  Any other party to this cause could
complain of extractions or diversions anywhere within the stream
system as found by this Court.

3.  Since there will be no quantitative alloca-
tion of water in this proceeding, the provisions of the Stipulated
Judgment regarding the respective entitlements of the Santa
Margarita Rancho and Vail have no present effect.  However, in
the event of future apportionments of water,neither the United
States nor Vail can complain as long as their respective alloca-
tions are in the ratio of United States 2 to Vail 1.

4.  Neither the United States nor Vail can
complain of use by the other on non-riparian lands.  Other parties
to this cause could complain of such uses.

5.  The provisions of paragraph 10 of the
Stipulated Judgment concerning "Storage Water" extractions by
Vail are no longer in effect because of the construction of the
Vail Dam.  Insofar as that Dam is concerned, Vail is in the
position of any other appropriator:  its appropriation is valid
and it can take and use water within the terms of its permit, sub-
ject to vested rights and to the continuing jurisdiction of this
Court.

6.  The provisions of the Stipulated Judgment
as to gaging stations and stream measurements remain in effect
as to Vail and the United States.  If, in the exercise of its
continuing jurisdiction, the Court determines that gages shall
be established or measurements taken, these provisions of the
Stipulated Judgment can be incorporated into the new order of
this Court.

7.  The "Guaranteed Minimum Flow" provisions
are binding as between the United States and Vail, but no other
person can enforce them.  Enforcement is complicated by the fact
that there are riparian diverters and an appropriator between the

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

5734

1  point of delivery by Vail and the point of receipt by the United

2  States. While the United States would not be entitled to <u>receive</u>

3  a full 3 cfs, it would probably be entitled to receive the water

4  <u>added</u> to the stream by Vail, less natural losses.

5        8.  The provisions of the Stipulated Judgment

6  relating to metering and measuring of water by Vail and the United

7  States would continue in effect.  At such time as the Court

8  required additional measurements or meterings to assist in

9  determining other rights, it would make appropriate orders.

10       <u>F.  The Court Retains Continuing Jurisdiction.</u>

11          This provision is essential whether or not the

12  Stipulated Judgment is held to be enforceable.

13       <u>G.  Some Practical Considerations.</u>

14          While the Court did not include in its request to

15  counsel any discussion of practical aspects of the Decree, such a

16  consideration is of course implicit.  If the ultimate Decree

17  can't be understood and applied without constant new legal

18  proceedings, it is of very little use.  The most serious question

19  for the future would appear to be the possible effect of a

20  partition of the Vail Ranch, particularly on the "Guaranteed

21  Minimum Flow" provisions.  How, practically, could the burden of

22  that responsibility be equitably apportioned if the Pauba Ranch

23  should be cut up into a dozen separate ownerships?

24          Similarly, how could the 2 to 1 ratio be calculated

25  in the event of partition, followed perhaps by intensive development

26  of a part of the partitioned area?

27          The foregoing are only two of the complex problems

28  that will unquestionably arise in the future, if the Stipulated

29  Judgment is held binding.  There is no question in the mind of the

30  undersigned that the River could be more easily, efficiently and

31  beneficially administered, at less expense, if the Stipulated

32  Judgment were not in existence.  Respectfully submitted,

Dated:  January 6, 1959.          SACHSE and PRICE

                                  by _____

5735

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154