FILED

JAN 15 1960

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

J. LEE RANKIN
Solicitor General
Department of Justice
Washington 25, D. C.

Attorney for the
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

        v.

FALLBROOK PUBLIC UTILITY DISTRICT,
VAIL COMPANY, INC.,
ET AL.,

           Defendants

No. 1247-SD-C

RESPONSE TO QUESTIONS PRESENTED

AND

COMPLIANCE WITH DIRECTIONS OF THIS HONORABLE COURT

ON DECEMBER 18, 1959

5736

1

2  J. LEE RANKIN
   Solicitor General
3  Department of Justice
   Washington 25, D. C.
4
   Attorney for the
5  UNITED STATES OF AMERICA

6

7

8

9          IN THE UNITED STATES DISTRICT COURT

10             SOUTHERN DISTRICT OF CALIFORNIA

11                  SOUTHERN DIVISION

12

13  UNITED STATES OF AMERICA,                )

14              Plaintiff,                    )

15         v.                                 )          No. 1247-SD-C

16  FALLBROOK PUBLIC UTILITY DISTRICT,        )
    VAIL COMPANY, INC.,                       )
17  ET AL.,                                   )

18              Defendants                    )

19

20

21

22

23          RESPONSE TO QUESTIONS PRESENTED

24                       AND

25  COMPLIANCE WITH DIRECTIONS OF THIS HONORABLE COURT

26             ON DECEMBER 18, 1959

27

28

29

30

31

32

                                              5737

GPO 16—69935-4

S U B J E C T   I N D E X

|  | Page |
|---|---|
| Foreword | 1 |
| Question 1:<br>"I would like to have you set your hand at trying to tell me, in simple language, just what this stipulated judgment means. * * * A summarization of it in lay language." | 1 |
| Analysis of Judgment of May 5, 1930, and the Stipulated Judgment of December 26, 1940, Proves the Latter to be Derivative of the Former | 2 |
| Disparity Between Judgment of May 5, 1930, and Stipulated Judgment Stems From Error of Trial Court in Determining Vail Company Riparian Lands, Not From Methods of Allocating Waters Adjudged to the Respective Parties | 3 |
| California's Supreme Court Decision Respecting Riparian Rights Gave Rise to Stipulated Judgment Which as Between Parties Abrogated Limitation Against Use of Water on Non-Riparian Lands | 7 |
|     1. Key Gauging Stations | 7 |
|     2. Apportionment Between Rancho Santa Margarita and Vail Company Under Judgment of May 5, 1930 | 8 |
|     3. Apportionment Between Rancho Santa Margarita and Vail Company Under Stipulated Judgment | 9 |
| Meaning of Stipulated Judgment on Background of Judgment of May 5, 1930; Decision of Supreme Court of California in Rancho Santa Margarita v. Vail | 12 |
|     Character of Action from Which Emanated Stipulated Judgment | 12 |
|     Parties to the Action | 12 |
|     Physical Phenomena Had Great Bearing in Formulation of Judgment of May 5, 1930; Stipulated Judgment | 12 |
|         Santa Margarita River | 12 |
|         Temecula Creek | 12 |
|         Murrieta Creek Has Its Confluence With Above-mentioned Temecula Creek on Vail Property | 13 |
|         Santa Gertrudis Creek is Tributary of Murrieta Creek Entering That Stream Above Latter's Confluence with Temecula Creek | 13 |
|         All Waters From Upper Watershed Reaching Camp Pendleton, Formerly Rancho Santa Margarita, Flow Over or Through Vail Company Property | 13 |

- i -

5739

SUBJECT INDEX (Continued)                                           Page
        (Meaning of Stipulated Judgment, etc. - continued)
        (Physical Phenomena Had Great Bearing, etc. - continued)

        Rainbow Creek, Sandia Creek, DeLuz Creek,
            Fallbrook Creek, All Enter Santa Margarita
            River Far Below Vail Company's Main Holding
            But Vail Company Benefits Immeasurably from
            Them by Stipulated Judgment                              14

        Transcendent Importance of Temecula Alluvial Basin
            Underlying Pauba Grant; Coastal Basin
            Underlying Rancho Santa Margarita                        14

        Stipulated Judgment:
            A.  Eliminated From Judgment of May 5, 1930
                (1)   Allocation of
                            75% for Rancho Santa Margarita
                            25% for Vail Company
                      In Lieu of That Established Basis of
                            66 2/3 % for Rancho Santa Margarita
                            33 1/3 % for Vail Company;
                (ii)  Limitation Respecting the Use of Water Upon
                            Riparian Lands;
            B.  Retained Formula for Allocating Water But Refined It;
            C.  Retained Benefit to Vail Company of Participation
                      in Yield of DeLuz, Sandia, Fallbrook and
                      Rainbow Creeks                                 16

        Formula For Allocation Between the
            Rancho Santa Margarita and Vail
            Company First Established by Judgment
            of May 5, 1930, - Retained in Stipulated
            Judgment; Formula Applied                                17

        Vail Company's Thirty-three and One-third
            Percent (33 1/3%) = "One-half" Rancho's
            Entitlement of Sixty-six and Two-thirds
            Percent (66 2/3%)                                        18

        Adjustments in Allocations                                   20

        Flows Guaranteed at Station No. 3
            by Vail Company Pursuant to
            Stipulated Judgment                                      21

        Rights and Interests of Interveners
            Playtor and Murray Schloss Estate                        23

        (a)  Stipulated Judgment Authorizes the
                 "Intercepting or Impounding or Conserving"
                 of Each "party's share of the Flood Waters
                 of said /—Santa Margarita_/ River and its
                 Tributaries";
        (b)  Ground Water Diversions Charged as Surface
                 Water Diversions
        (c)  Pumping Limitations During Irrigation Season            24

        Stipulated Judgment and Judgment of May 5, 1930, are Not
            Binding on Owners of Rights to the Use of Water Not
            Parties Other Than Successors of Parties to it:
            Interveners Not Bound by Stipulated Judgment             26

        Interveners did not Appeal from Judgment of May 5, 1930 -
            Are Bound By It; Are Not Bound By Stipulated
            Judgment to Which They are Not Parties                   28

5739

- ii -

GPO 16-99605-2

FOREWORD

This Honorable Court presented to and directed response be made by the parties to four prime questions [1] in regard to:

(a) The Stipulated Judgment entered December 26, 1940, by the Superior Court of the State of California in and for the County of San Diego, which concluded the case entitled Rancho Santa Margarita v. Vail Company * * *.

(b) The Judgment of May 5, 1930, from which the Vail Company appealed resulting in the decision of the Supreme Court of California entitled Rancho Santa Margarita v. Vail. [2]

Response will first be made to this one of the four questions:

"I would like to have you set your hand at trying to tell me, in simple language, just what this stipulated judgment means. * * * A summarization of it in lay language."

Greater clarity as to the meaning of the Stipulated Judgment, which has been operative for approximately twenty (20) years, will be gleaned from a review of

(a) Its genesis;

(b) Reason for its form;

(c) Why its pattern for the allocation of rights to the use of water was adopted;

(d) Basis for selection of the key measuring stations referred to in it.

On the background of this fully supported conclusion this review will be undertaken:

Fountainhead of the Stipulated Judgment was the above

---

[1]  Tr. Vol. 101, pages 11437 et seq.

[2]  11 Cal.2d 501; 81 P.2d 533 (1938).

5741

- 1 -

1  mentioned Judgment of May 5, 1930; the decision of

2  California's highest court emanating from its appeal.

3  An analysis of the Judgment of May 5, 1930, and its derivative, the

4  Stipulated Judgment of December 26, 1940, entails comparisons and contrasts

5  between the two documents, in the light of the decision of the Supreme Court

6  of California to which reference has been made.

7  ANALYSIS OF JUDGMENT OF MAY 5, 1930, AND THE
   STIPULATED JUDGMENT OF DECEMBER 26, 1940, PROVES
8  THE LATTER TO BE DERIVATIVE OF THE FORMER

9  Far more than the use of identical terms throughout the two judgments

10  buttresses the opinion that the Stipulated Judgment was drafted, adopted and

11  entered largely upon the framework of the Judgment of May 5, 1930.  Examples

12  nevertheless, of the terms utilized in both documents are completely warranted.

13  For example:

14  (1)  Each, with minor variations, contains identical

15  provisions as to the points of measurements on the Santa

16  Margarita River upon which the allocations provided for in

17  the documents would be effectuated. 3/

18  (2)  Though the percentages of water allocated to the

19  parties differed between the two judgments, and the lands

20  upon which the water could be used likewise differed, all

21  by reason of the decision of California's Court, nevertheless

22  both documents in Section "Second" declare:

23  "The plaintiff /¯Rancho Santa Margarita_7 * * * is

24  entitled to take and use upon * * * its lands lying

25  within the Rancho Santa Margarita y Las Flores, San

26  Diego County, California * * * the water of said

27  Temecula-Santa Margarita river * * * which naturally,

28  when not artificially diverted or abstracted, flows

29  and descends in the channel thereof at that certain

30  joint gauging station hereinafter in this judgment

31  designated as Measuring Station No. Six (6) * * *." 4/

32

---

3/  Judgment May 5, 1930, Section Sixth;   Stipulated Judgment December 26, 1940,
    Section Seventh.
4/  Judgment May 5, 1930, Section Second;   Stipulated Judgment December 26, 1940,
    Section Second.                    - 2 -                    5742

(3)  Each alludes to the Temecula-Santa Margarita river as the stream being apportioned, a term seldom if ever used before or since and adopted at the trial of the case from which arose the Judgment of May 5, 1930.

(4)  Key gauging stations referred to in each are identical. However, because of the greater specificity in the means of allocating rights under the Judgment of May 5, 1930, it alludes to six gauging stations, [5]/ whereas of those six gauging stations the Stipulated Judgment refers only to Stations One (1); Three (3) and Six (6).

(5)  Each document requires in virtually identical terms establishment and maintenance of gauging stations by the parties. [6]/

DISPARITY BETWEEN JUDGMENT OF MAY 5, 1930, AND
STIPULATED JUDGMENT STEMS FROM ERROR OF TRIAL
COURT IN DETERMINING VAIL COMPANY RIPARIAN LANDS,
NOT FROM METHODS OF ALLOCATING WATERS ADJUDGED TO
THE RESPECTIVE PARTIES

Too great stress may not be placed upon the issues presented by the Vail Company on appeal and considered by the appellate court to be relevant. Extended review of the decision in the cause is not required.  Guide to the real issues on the appeal is found in the remand by the Supreme Court of the State of California when it declared:

"* * * the new trial need not be a protracted one. Appellants have not challenged many of the findings. There is no need for a new trial on those issues.  It would appear that on the new trial it will be necessary:

(1)  To ascertain the extent of appellants'
riparian and irrigable acreage as set
forth in the body of this opinion;

(2)  To ascertain the extent of respondent's
riparian and irrigable acreage only in so
far as it involves the table land, discussed
in the body of this opinion; * * *." [7]/

---

[5]/  United States of America Exhibit 144, Judgment of May 5, 1930.
[6]/  Judgment of May 5, 1930, Section Twelfth; Stipulated Judgment, Section Seventh.
[7]/  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533, 565-566 (1938).

- 3 -

5743

Commenting on the issues, California's court stated:

"* * * It is appellants' /¯Vail Company¯/ contention that the trial court committed prejudicial error in computing their riparian acreage in this /¯Temecula¯/ grant in two respects:

"1.  In holding that the portion of the Temecula grant owned by them within the Murrieta drainage area was not within the Temecula-Santa Margarita watershed; and

"2.  In its finding as to the number of acres within Temecula grant owned by appellants /¯Vail Company¯/ that are riparian to Murrieta creek." 8/

It is clear from a review of the findings that the trial court held all lands of the Temecula Grant north of the crest line between Murrieta Creek and Temecula-Santa Margarita River to be riparian to Murrieta Creek but not to the main stem. 9/  Specifically reversing the trial court, this statement was made by California's Highest Court:

"it must be held that as to respondent /¯Rancho Santa Margarita¯/ all of appellants' /¯Vail Company¯/ riparian lands in Temecula grant within the Murrieta drainage area are within the watershed of and riparian to the Temecula-Santa Margarita river, and that the trial court's holding to the contrary was erroneous." 10/

Reversible error was thus spelled out by the appellate court as to one phase of the ruling of the trial court.  Similarly and on precisely the same point it ruled error as to the trial court's findings respecting the Pauba Grant. 11/  It stated:

8/  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533, 545-546 (1938).
9/  Vail Company's Ex. A, B, Finding No. 9.
10/  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533, 549 (1938).
11/  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533, 551 (1938).

- 4 -

1       _/1_/  "The Temecula-Santa Margarita river flows across

2       this grant for a distance of about 11 miles.

3       _/2_/  The northern portion of the grant is traversed by

4       Santa Gertrudis creek, a tributary of the Murrieta.

5       _/3_/  The trial court found that the 17,375 acres of

6       this _/Pauba_/ grant south of the crest line and within

7       the drainage area of the main river are riparian to that

8       river _/Temecula-Santa Margarita River_/ [12] and that of

9       these 17,375 riparian acres, 1,740 acres were capable of

10      and adapted to practical and profitable irrigation * * *.

11      _/4_/  The balance of the grant, consisting of 10,287

12      acres is within the drainage area of the Santa Gertrudis creek.

13      _/5_/  As to this area appellants were awarded 100 per cent [13]

14      of the flow of the _/Santa Gertrudis_/ creek, but were denied

15      the use of any water from the main river, on the theory that

16      such area was not riparian to the main river.

17      _/6_/  * * * this was clearly error." [14]

18         Especially relevant here are these reiterations of a most fundamental

19 concept of the law which has great bearing upon the ultimate disposition of

20 the cause now being tried, for as to the diversion of water from the main

21 stem of the Santa Margarita River for use on the Temecula Grant within the

22 sub-watershed of Murrieta Creek, the California Supreme Court declared:

23      "As between riparians each is, of course, limited to a

24      reasonable use.  It might well be, under the facts presented,

25      that the diversion across the crest line would be an

26      unreasonable use, and if so, could be properly enjoined.

27      The trial court did not pass on this issue, nor predicate

28      its judgment thereon.  It rested its judgment upon the

29      holding that that portion of the Temecula grant within the

30      Murrieta watershed was not riparian to the main river.

31

32  [12]  Vail Company's Ex. A, B; Finding No. 9.
     [13]  Vail Company's Ex. A, B; Finding No. 33.
     [14]  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533, 551 (1938).

1  That conclusion was erroneous, and for reasons already

2  pointed out, prejudicial." [15/]

3  Repeating its caveat that the reversal of the court below did not

4  entail a decision as to the right to use main stem water on all of the Pauba

5  Grant, California's highest court declared, as to lands in the sub-watershed

6  of Santa Gertrudis Creek:

7  "We again repeat what was said concerning a similar

8  problem in reference to Temecula grant -- we are here

9  considering only the riparian status of the land involved,

10  and are not considering whether it would be a reasonable

11  beneficial use of the water of the main river to convey

12  the same across the crest line and use it on land riparian

13  to the tributary." [16/]

14  Having summarized its decision respecting errors by the court below

15  as to Vail Company lands [17/] the appellate court stated:

16  "* * * on the retrial, the court should determine not only

17  the irrigable riparian acreage, but also should pass upon the

18  question as to whether, under all the circumstances, the con-

19  veying of the waters of the main river across the crest line

20  for use on Temecula or Pauba grants in Murrieta watershed would

21  constitute a reasonable, beneficial use of such waters."

22  Abundantly manifest is this fact that there was presented on remand

23  this prime question:

24  The extent of Vail Company's riparian and irrigable land

25  susceptible of practical and profitable irrigation.

26  That matter was not retried, but Vail Company was permitted to use the water

27  beneficially on any of its lands as described in the Stipulated Judgment.

28

29  15/  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533, 550 (1938).

30  16/  Ibid., 11 Cal.2d 501; 81 P.2d 533, 551, 552 (1938).

31  17/  Ibid., 11 Cal.2d 501; 81 P.2d 533, 555-556 (1938).

32

- 6 -

5746

The attack by the Vail Company upon that phase of the Judgment of May 5, 1930, relating to the Rancho's "table land" has no relevancy from the standpoint of the question here under review.

Great significance may be ascribed to the fact that the major challenge to the Judgment of May 5, 1930, related to the criterion adopted by the trial court for determining riparian land and not as to the means of apportioning the available water supply; to the percentages of the available water supply and not to the means adopted for arriving at those percentages. Indeed, the Vail Company joined in accepting the means of calculating the respective shares of the available water contained in the Judgment of May 5, 1930, when it co-sponsored the Stipulated Judgment.

CALIFORNIA'S SUPREME COURT DECISION RESPECTING
RIPARIAN RIGHTS GAVE RISE TO STIPULATED JUDGMENT
WHICH AS BETWEEN PARTIES ABROGATED LIMITATION
AGAINST USE OF WATER ON NON-RIPARIAN LANDS

In summarizing the errors of the court below the Supreme Court of California established the guides for correcting the Judgment of May 5, 1930, from which emerged the Stipulated Judgment of December 26, 1940. [18/] Comparisons and contrasts between the two documents aid in reaching the true import of the Stipulated Judgment; responding to the question presented by this Honorable Court.

1.   Key Gauging Stations:

Virtually verbatim language is used in both the Judgment of May 5, 1930, and the Stipulated Judgment in establishing the key points of measurement for purposes of allocation of the yield of the respective rights of the parties:

"whenever the * * * flow * * * measured at Measuring

Station No. Three (3) /⎯Temecula Gorge⎯/ exceeds the

* * * flow at Measuring Station No. Six (6)"  then the

flow at Station No. 3 will control for the purpose of

"apportionments and allotments." [19/]

18/   Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533, 555 (1938).
19/   Judgment of May 5, 1930, Section Sixth; Stipulated Judgment, Section Eighth.

- 7 -

5747

2.  Apportionment Between Rancho Santa Margarita
    and Vail Company Under Judgment of
    May 5, 1930:

    / i /   Rancho Santa Margarita Was Awarded by
               Judgment of May 5, 1930

           "* * * seventy-five one hundredths (75/100ths)

           part of the water of said Temecula-Santa

           Margarita river * * * "

           less

              "the entire flow of Murrieta creek,

              determined at Measuring Station No. Two (2) * * *." [20]

    / ii /   Note in contrast to the Stipulated Judgment, the

           Judgment of May 5, 1930, while awarding 75% of

           the waters of the Temecula-Santa Margarita

           River, less Murrieta Creek, limited the use of

           the water to the "lands lying within the Rancho

           Santa Margarita y Las Flores * * * riparian to

           said Temecula-Santa Margarita river * * *." [21]

    / iii /   Vail Company was awarded under Judgment
               of May 5, 1930, for Use Upon the

        (a)  Riparian lands within the Pauba Grant [22]      12.3 %

            of the waters of the Temecula-Santa

            Margarita River less the entire flow

            of Murrieta Creek;

        (b)  Riparian lands within Little Temecula
                Grant [23]      3.9 %

            of the flow of the Temecula-Santa Margarita

            River less the entire flow of Murrieta Creek;

        (c)  Riparian lands within the Temecula Grant [24]      8.8 %

            of the flow of the Temecula-Santa Margarita

            River less the entire flow of Murrieta Creek.

        Vails thus were awarded the right to divert      25 %

[20] Judgment of May 5, 1930, Section Second.
[21] Judgment of May 5, 1930, Section Second.
[22] Judgment of May 5, 1930, Section Third; Vail's Ex. A, B; Findings 8, 9, 10.
[23] Judgment of May 5, 1930, Section Fourth; Vail's Ex. A, B; Findings 8, 9, 10.
[24] Judgment of May 5, 1930, Section Fifth; Vail's Ex. A, B; Findings 8, 9, 10.

- 8 -

of the yield of the Temecula-Santa Margarita River less the entire flow of Murrieta Creek.

[iv] Vail Company Awards by Judgment of May 5, 1930 Respecting Murrieta and its Tributary Cottonwood Creek

(a) Lands within the Temecula Grant riparian to Murrieta Creek; the entire flow of that creek. 25/

(b) Lands within the Santa Rosa Grant riparian to Murrieta Creek; the entire flow of Cottonwood Creek. 26/

3. Apportionment Between Rancho Santa Margarita and Vail Company under Stipulated Judgment:

A. [i] Rancho Santa Margarita Was Awarded by the Stipulated Judgment

"* * * sixty-six and two-thirds per cent (66 2/3%) of the water of said Temecula-Santa Margarita River and all its tributaries which naturally, when not artificially diverted or abstracted, flows and descends in the channel thereof at that certain joint gaging station hereinafter in this judgment designated as Measuring Station No. Six (6)." 27/

[ii] Reference is here made to the fact, as considered above, that when the flow at Gauging Station No. 3 exceeds that of Gauging Station No. 6

"flow * * * at * * * Gaging Station No. Three (3) shall be considered as the total flow [ upon which apportionments under the Stipulated Judgment shall be predicated ] ." 28/

---

25/  Judgment of May 5, 1930, Section Seventh.
26/  Judgment of May 5, 1930, Section Eighth.
27/  Stipulated Judgment, Section Second.
28/  Stipulated Judgment, Section Eighth.

5749

$\lceil$ iii $\rfloor$  To be noted - as distinguished from the
Judgment of May 5, 1930 - the Rancho Santa
Margarita's award under the Stipulated Judgment
was not limited to riparian lands but could be
utilized upon "the whole or any part of its lands"
lying within the Rancho Santa Margarita.

$\lceil$ iv $\rfloor$  Further to be noted - as distinguished from the
Judgment of May 5, 1930 - the Rancho Santa
Margarita is entitled under the Stipulated
Judgment to participate in the runoff of the
"Temecula-Santa Margarita river and all of its
tributaries." As reviewed above, its right to
participate in the Judgment of May 5, 1930, was
limited to riparian lands and its percentage was
less the "entire flow of Murrieta creek."

B.  $\lceil$ i $\rfloor$  Vail Company was Awarded by the
Stipulated Judgment

"* * * thirty-three and one-third per cent
(33 1/3%) of the water of said Temecula-Santa
Margarita River and all its tributaries which
naturally, when not artificially diverted or
abstracted, flows and descends in the channel
thereof at that certain joint gaging station
hereinafter designated Measuring Station No.
Six (6)." [29]

$\lceil$ ii $\rfloor$  Reference is here made to the fact, as considered
above, that when the flow at Gauging Station No. 3
exceeds that of Gauging Station No. 6
"flow * * * at * * * Gaging Station No. Three (3)
shall be considered as the total flow $\lceil$ upon which
apportionments under the Stipulated Judgment shall
be predicated. $\rfloor$" [30]

[29] Stipulated Judgment, Section Third.
[30] Stipulated Judgment, Section Eighth.

- 10 -

5750

[iii] To be noted – as distinguished from the
Judgment of May 5, 1930 – the Vail Company's
award under the Stipulated Judgment was not
limited to riparian lands but could be utilized
upon "the whole or any part of their lands" as
described in the Stipulated Judgment.

[iv] Further to be noted – as distinguished from the
Judgment of May 5, 1930 – Vail Company is entitled
under the Stipulated Judgment to participate in
all of the waters of the Temecula-Santa Margarita
River and its tributaries, upon all of its lands
described in the Stipulated Judgment. Thus the
limitations contained in the Judgment of May 5, 1930,
from which its appeal was taken, have in effect been
eliminated by the Stipulated Judgment.

[v] Warranted here is reference to the rights of the respective
parties under the Stipulated Judgment, to impound their
share of the "flood waters of said river and its tribu-
taries; * * *." [31] Vail Company in that regard has
constructed a dam and reservoir. There has been invoked
by it the proviso of the Stipulated Judgment limiting
the pumpage of "Storage Water." [32]

[vi] Reference is also made to the fact that abstractions of
ground water by the Vail Company "are, and for all
purposes of this judgment shall be * * * considered as
diversions of the waters of said river, and are and shall be
chargeable against the fractional part of the surface flow
of said river * * *." [33]

---

31/  Stipulated Judgment, Section Thirteenth.

32/  Stipulated Judgment, Section Thirteenth.

33/  Stipulated Judgment, Section Tenth;
     Vail Company's Exhibit A, B, Finding of Fact No. 11, page 27.

- 11 -

5751

GPO 16—20096-1

MEANING OF STIPULATED JUDGMENT ON BACKGROUND OF
JUDGMENT OF MAY 5, 1930; DECISION OF SUPREME COURT
OF CALIFORNIA IN RANCHO SANTA MARGARITA v. VAIL 34/

Character of Action From Which Emanated Stipulated Judgment:

"* * * this action" declared California's Supreme Court 35/ "/¯was_/

primarily to secure a declaration of its /¯Rancho Santa Margarita_/ riparian

rights in the waters of the Temecula-Santa Margarita river, and its tributaries,

and for an injunction to prevent /¯Vail Company_/ appellants from using more

than their reasonable share of the waters of the stream."

Parties to the Action:

Principal parties were the Rancho Santa Margarita, predecessor of the

United States of America, and Vail Company, predecessor of Vail Company, Inc.

    (a)  Intervention

        Intervention by landowners in and along Temecula

        Gorge was permitted.  At the time when the trial

        was commenced there were but small quantities of

        water used by them. 36/

    (b)  Motion to Join Additional Parties Denied

        On the date when the trial was to commence, Vail

        Company presented an oral motion to join additional

        parties.  Following arguments and an investigation

        in the field the court denied Vail Company's motion

        to join additional parties. 37/

Physical Phenomena Had Great Bearing In
    Formulation of Judgment of May 5, 1930;
    Stipulated Judgment:

    Santa Margarita River

        This stream is intermittent both as to time and place.

    Temecula Creek

        This is Santa Margarita River's principal tributary

        which has its source about twenty miles southeasterly

---

34/  11 Cal.2d 501; 81 P.2d 533 (1938).
35/  Ibid., 11 Cal.2d 501; 81 P.2d 533, 536 (1938).
36/  Vail Company Ex. A B, Finding of Fact No. 23, page 54.
37/  Vail Company Ex. A B, page 1.

- 12 -

5752

of the southeastern boundary of the Pauba Grant. After
entering the Pauba Grant it flows northwesterly across
Vail Company property to a point where that stream flows
into Temecula Gorge - at or near the Gauging Station
No. Three (3).

## Murrieta Creek Has Its Confluence With Above-mentioned Temecula Creek on Vail Property

Murrieta Creek is the most important tributary of the
Temecula-Santa Margarita River as that term is used in
the Stipulated Judgment to describe the streams the
rights to which are the subject matter of this litigation.
Murrieta Creek joins Temecula Creek in Temecula Grant
approximately one-half (1/2) mile east of the west
boundary of the Grant last mentioned.

## Santa Gertrudis Creek Is Tributary of Murrieta Creek Entering That Stream Above Latter's Confluence With Temecula Creek

Santa Gertrudis Creek flows for several miles across
the Pauba Grant, leaves Vail property, flowing northwesterly
to its junction with Murrieta Creek some distance above
the latter's confluence with the Temecula on Vail Company
properties.

## All Waters From Upper Watershed Reaching Camp Pendleton, Formerly Rancho Santa Margarita, Flow Over or Through Vail Company Property

Vail Company's vast holdings are traversed by the Temecula
Creek and Murrieta Creek at the point immediately above
Temecula Gorge near the head of which is situated the
above-mentioned Gauging Station No. Three (3). As a
consequence, all of the flow of the stream in question
in the upper watershed above Temecula Gorge is controlled
by the Vail Company. Indeed, it was the excessive use of
water by that Company which gave rise to the case of
Rancho Santa Margarita v. Vail.

- 13 -

5753

Rainbow Creek, Sandia Creek, DeLuz Creek,
    Fallbrook Creek, All Enter Santa Margarita
    River Far Below Vail Company's Main Holding
    But Vail Company Benefits Immeasurably From
    Them by Stipulated Judgment

Apportioned to Vail Company by the Stipulated Judgment

is 33 1/3 per cent of the Santa Margarita River and all

of its tributaries measured at Gauging Station No. Six (6)

which is located on the Rancho Santa Margarita near

where the Santa Margarita River enters - when it flows

that far - the Pacific Ocean. Thus Vail Company by

the Stipulated Judgment - indeed by the Judgment of

May 5, 1930, [38/] secured the benefit of the flow of

Rainbow, Sandia, Fallbrook, and DeLuz Creeks though they

have their confluence with the Santa Margarita River far

below any point where Vail Company could divert and use

the yield of them. Manifestly 33 1/3 per cent of the

Santa Margarita River measured at Ysidora vastly increases

the quantity of water that Vail Company may take from the

Murrieta and Temecula Creeks which traverse its lands.

Transcendent Importance of Temecula Alluvial Basin
    Underlying Pauba Grant; Coastal Basin
    Underlying Rancho Santa Margarita:

Underlying the Temecula-Santa Margarita River in its course from

Nigger Canyon to Temecula Gorge across the Vail Company's property is Temecula

Alluvial Basin. Comprehensive findings were entered by the trial court in the

cause from which emanated the Stipulated Judgment. [39/] Prime factors in the

means adopted for allocating the rights between Vail Company and the Rancho

Santa Margarita are these succinct statements of California's highest court:

"The [Temecula Alluvial] basin as a whole, and particularly

the outwash area, creates a large underground basin into

which the water of the river sinks, and in fact, in the

dry season, into which it entirely disappears as a surface

---

38/  Judgment of May 5, 1930, Section Sixth.
39/  Vail Company Ex. A B, Finding of Fact No. 11, page 21 et seq.

- 14 -

5754

stream, reappearing again on the surface across the
artesian area.

"* * * The trial court found that diversions from the
basin * * * had the effect:

/ a / of diminishing the surface flow to the extent
of the pumping, and

/ b / also finding that there is no appreciable
return from appellants' irrigation." [40/] (Emphasis supplied)

In keeping with the rationale expressed above, it is specifically
provided in the Stipulated Judgment:

"* * * any water abstracted or diverted by defendants
from the underground waters of said river (including
underground basins of percolating water within the watershed
of said river and its tributaries) by use of wells or pumps
or other means of diversion, whether now existing or hereafter
established, * * * shall be added to any surface diversions
by the defendants from the waters of said river.  Such
abstractions by the defendants of the underground waters of
the Temecula-Santa Margarita River are, and for all purposes
of this judgment shall be * * * considered as diversions of
the waters of said river, and are and shall be chargeable
against the fractional part of the surface flow of said
stream * * *." [41/]

Similar to the Temecula Alluvial Basin is the Coastal Basin underlying
large areas of the Rancho Santa Margarita.  Intermittent character of the
stream across the alluvial deposits; the need for a groundwater table to
support the surface stream are reviewed in detail by the Supreme Court of
California. [42/]

Recharge for both the great alluvial basins is wholly dependent upon
the surface runoff of the Santa Margarita River.  Destroy or impede the surface

---

40/  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P 2d 533, 539 (1938);
     Vail Company Ex. A B, Finding of Fact No. 11, page 27 et seq.;
     See also Vail Company Ex. A B, Finding of Fact No. 8, pages 10, 15.
41/  Stipulated Judgment, Section Tenth; Vail Co. Ex. A B, Conclusion of Law, p. 75.
42/  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533,  538 (1938

- 15 -

5755

GPO 16-60000-1

1  flow to either basin results, absent proper adjustments, in irreparable damage.

2  Overdraft by the Vail Company of the waters of the Temecula-Santa Margarita River

3  decreased the water reaching the Rancho; precipitated 444 days of trial which [43/]

4  was ultimately terminated by the Stipulated Judgment.

5  Stipulated Judgment:

    A.  <u>Eliminated From Judgment of May 5, 1930</u>

6          (1)  <u>Allocation of</u>

7                <u>75% for Rancho Santa Margarita</u>
              <u>25% for Vail Company</u>

8            <u>In Lieu of That Established Basis of</u>
              <u>66 2/3 % for Rancho Santa Margarita</u>

9                <u>33 1/3 % for Vail Company;</u>
        (ii)  <u>Limitation Respecting Use of Water Upon</u>

10                <u>Riparian Lands;</u>
    B.  <u>Retained Formula for Allocating Water But Refined It;</u>

11      C.  <u>Retained Benefit to Vail Company of Participation</u>
          <u>in Yield of DeLuz, Sandia, Fallbrook and</u>

12            <u>Rainbow Creeks:</u>

13        As reviewed above, the Stipulated Judgment is in many respects a simple

14  re-write of the Judgment of May 5, 1930, from which Vail Company appealed.

15  Enforced by it are the general provisions of the trial court's judgment.  Changes

16  in the Judgment of May 5, 1930, by the Stipulated Judgment are easily discerned;

17  reflect no basic differences as to the means of allocating the water, the rights

18  to which were finally adjudged by the entry of the latter.  They are:

19         1.  <u>Reduced</u> Rancho Santa Margarita's share of the available

20             supply of water

21                  from three-quarters (3/4) or 75% of the natural

22                      flow of the Santa Margarita River - less

23                      Murrieta Creek

24                  to two-thirds (2/3) or 66 2/3% of the <u>entire</u>

25                      flow of the Santa Margarita River and all

26                      of its tributaries without the reduction of

27                      Murrieta Creek flow.

28         2.  <u>Increased</u> Vail Company's share of the available supply

29             of the water

30                  from one-fourth (1/4) or 25% plus the entire flow

31                      of Murrieta Creek for use upon the Temecula

32                      Grant and the entire flow of Cottonwood Creek

---

43/   Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533, 536, 538 (1938).

GPO 16—80066-1

upon the Santa Rosa Grant,

to one-third (1/3) or 33 1/3% of all of the

water of all of the Santa Margarita River

and its tributaries.

3.  Eliminated restrictions contained in the Judgment of May 5,

1930, which permitted the use of the water only upon the

riparian lands; allowed both the Rancho Santa Margarita

and Vail Company to use water upon all of the lands

described in the Stipulated Judgment irrespective of

whether or not they are riparian in character.

4.  Retained the method for allocating to each of the

parties the 66 2/3 % and 33 1/3 % to which the

Rancho Santa Margarita and Vail Company are entitled.

Formula For Allocation Between the
Rancho Santa Margarita and Vail
Company First Established by Judgment
of May 5, 1930, - Retained In Stipulated
Judgment; Formula Applied:

As reviewed in the opening paragraphs of this consideration, the

points of measurement for effectuating the allocation between the Rancho and

Vail Company are identical in both the Judgment of May 5, 1930, and the

Stipulated Judgment.[44/]   All allocations are keyed to Stations No. 3 and No. 6,

the first of which, as in the Judgment of May 5, 1930, and the Stipulated

Judgment, is located at the head of Temecula Gorge; the latter as defined by

both judgments, at Ysidora.   Both Section Second relating to Rancho Santa

Margarita and Section Third relating to Vail Company prescribe their respective

entitlements are to be measured "at * * * Station No. Six (6)", provision is

nevertheless made that when the flow at "Station No. Three (3)** is the greater "

that flow will be the criterion for allocation.[45/]

---

44/   Supra, page 7, 1.  Key Gauging Stations;
      Judgment May 5, 1930, Section Sixth;
      Stipulated Judgment, Section Eighth.

45/   Judgment May 5, 1930, Section Sixth;
      Stipulated Judgment, Section Eighth.

5757

GPO 16-20095-1

Vail Company's Thirty-three and One-third
    Percent (33 1/3%) = "one-half" Rancho's
    Entitlement of Sixty-six and Two-thirds
    Percent (66 2/3%):

    Vail Company under the Stipulated Judgment is entitled to "one-half"
the two-third entitlement of the Rancho. [46]/

    Thus if on any given day fifteen (15) c.f.s. are passing Gauging
Station No. 3, it being below any point where Vail Company can divert or
apply that water, the Rancho's entitlement is 15 c.f.s.;

    that 15 c.f.s. thus constitutes two-thirds of the stream;

    as a consequence Vail Company is entitled on that day to

        take and divert from the surface or ground water 7 1/2 c.f.s.

    Total burden on the stream by these two water users is 22 1/2 c.f.s.

    Rancho receives two-thirds (2/3) - 66 2/3 % or        15    c.f.s.

    Vail Company one-half of 66 2/3 % or 33 1/3 %

        which when converted into discharge totals        7 1/2 c.f.s.

    Analysis of other provisions bear out the correctness of the con-
clusions which immediately precede. Rephrasing probative parts of key paragraph
Section Ninth of the Stipulated Judgment, keeping foremost;

        (a)  the physical features of the Santa Margarita River

             watershed;

        (b)  the vagaries of runoff in the valley;

        (c)  the pattern of ownership of Vail Company at

             the head of Temecula Gorge; [47]/

doubtless will be an aid to clarity.

---

[46]/  Stipulated Judgment, Section Twelfth.

[47]/  Stipulated Judgment, Section Ninth:
    "Section Ninth: For the purpose of apportioning to defendants thirty-
    three and one-third per cent (33-1/3%) of the waters of said stream as in
    Section Third provided, it shall be deemed that an amount of water equal
    to one-half (1/2) the surface flow at Station No. Six (6) or Station No.
    Three (3), wherever the flow is the greater (as provided in Section Eighth),
    pumped and/or diverted from the subsurface and/or surface waters of said
    river at points upstream from said Station No. Three (3), shall constitute
    thirty-three and one-third per cent (33-1/3%) of the waters of said stream.
    "* * *."

- 18 -

5758

Section Ninth:

    (a) "For the purpose of apportioning to defendants

        thirty-three and one-third per cent (33 1/3%)

        of the waters of said stream * * *

    (b) "it shall be deemed that an amount of water"

    (c) "/ pumped and/or diverted from the subsurface and/or

        surface waters of said river at points upstream

        from said Station No. Three (3)," i. e. Vail

        Company lands /

    (d) "equal to one-half (1/2) the surface flow at

        Station No. Six (6) or Station No. Three (3)

        wherever the flow is the greater"

    (e) "shall constitute thirty-three and one-third per

        cent (33 1/3%) of the waters of said stream."

Stressed again is the fact that at Station No. 3 the water in the
Santa Margarita River has passed the point of control or application by the
Vail Company of the water to a beneficial use. As a consequence the flow at
Station No. 3 or No. 6 whichever is the greater, constitutes 66 2/3% of the
flow of which Vail Company may enjoy one-half.

Thus Vail Company is entitled to invoke the provisions of Section
Ninth above quoted:

    When the contributions from Rainbow, Sandia, Fallbrook and

    DeLuz Creeks cause the flow at Ysidora Station No. 6 to

    exceed the flow at Temecula Gauging Station No. 3, and

    accords Vail Company the right to divert and/or pump the waters

    of the Santa Margarita River above Gauging Station No. 3 at

    the rate of one-half (1/2) of the total flow at Ysidora, that

    entitlement constitutes 33 1/3% or half of the 66 2/3%

    awarded to the Rancho.

Vail Company thus enjoys under the Stipulated Judgment the right to
participate in the total discharge of the Santa Margarita River, including the
affluent streams of that river which enter miles below the Company's properties.

- 19 -

5759

For example:

    If the flow at Station No. 3 is           15  c.f.s.

    whereas the flow at Station No. 6 is      25  c.f.s.

    Vail Company's entitlement under its

       33 1/3% allocation is          12.5 c.f.s.

    as distintuished from             7.5 c.f.s.

    if the Ysidora discharge was less than

    that at Temecula Gorge.

<u>Adjustments in Allocations:</u>

    There was called forth in the drafting of the Stipulated Judgment by reason of the physical situation of Vail Company, the vagaries in the stream flow of the Santa Margarita River, its erratic nature, its intermittent character both as to time and place, a need to make adjustments both as to

    (a)  Vail Company's excess diversions above 33 1/3% [48]

        requiring reductions equivalent to overdrafts;

    (b)  Vail Company's failure to receive its full entitle-

        ment and the means of rectification of that

        failure. [49]

The cited provisions are purely administrative in character; are complementary to all provisions respecting allocations and the means of determining those allocations, as reviewed above.

    Cognizant of the variant flows of the Santa Margarita River; the need to adjust for the variants, the Judgment of May 5, 1930, and its derivative the Stipulated Judgment, set forth comprehensive requirements as to measurements and means of reporting discharge together with water diversions. [50]  Pursuant to those provisions the reporting of stream flow and water diversions has been and now is conducted jointly by the successors in interest of those who co-sponsored the Stipulated Judgment.  Statistical data thus utilized provide the means for daily regulation, pave the way for longer term adjustment between those governed by the Judgment.  Both the adjustment features and the

---

[48]  Stipulated Judgment, Section Ninth.
[49]  Stipulated Judgment, Sections Ninth and Twelfth.
[50]  Judgment of May 5, 1930, Section Twelfth; Stipulated Judgment, Section Seventh.

5760

1   requirements relative to measurements are clear, dispensing with any need for

2   more detailed review.

3           As will be subsequently reviewed, the Stipulated Judgment relates

4   only to the successors in interest of the Rancho Santa Margarita and Vail

5   Company. As a consequence the provision in Sections Second and Third "when

6   not artificially diverted or abstracted" relates only to the mentioned

7   parties. That proviso is, of course, an imperative one by reason of the

8   physical conditions which exist. At the time that it was formulated, as now,

9   the Vail Company diverted and abstracted its water during the irrigation

10  season above Gauging Stations No. 3 and No. 6 and above the Rancho Santa

11  Margarita. Moreover, interveners diverted above the Rancho Santa Margarita

12  and Gauging Station No. 6, whereas Rancho Santa Margarita diverted above

13  Gauging Station No. 6. As a consequence the rights were exercised by the

14  parties prior to measurement of the waters when the flow at Gauging Station

15  No. 6 exceeded that of Gauging Station No. 3 and Vail Company abstracted and

16  diverted its waters at all times prior to measurement at either of the key

17  gauging stations. Thus the need for the terminology in question and the

18  very comprehensive means of making adjustments subsequent to the use of

19  water by the Vail Company and also by the Rancho Santa Margarita.

20  Flows Guaranteed at Station No. 3
      by Vail Company Pursuant to
21    Stipulated Judgment:

22          Account is taken in the Stipulated Judgment, as it was in the

23  Judgment of May 5, 1930, that the yield of the Santa Margarita River is

24  gravely short of the demands upon it, particularly during the irrigation

25  season.[51]   In the latter Judgment Vail Company was enjoined:

26          "* * * from diverting or abstracting, from either or

27          both the surface flow of the Temecula-Santa Margarita

28          River (the Murrieta creek flow excepted) and the under-

29          ground waters * * * during the dry or irrigation season

30          of the year, to-wit, from the first day of May until the

31  _____

32  [51]  Stipulated Judgment, Section Eleventh;
        Judgment of May 5, 1930, Section Seventeenth.

                              - 21 -

                                                          5761

OPO 16—30002-1

31st day of October * * * in excess of twenty-five (25)
per cent of the total flow of said Temecula-Santa
Margarita river measured at Temecula Gorge, Gauging
Station No. Three (3)." [52]

Important in that regard is the finding of the trial court that: "The normal
and usual surface flow of said stream [Temecula Creek], when not artificially
diverted, amounts, during the dry or irrigating season of every year, to
approximately five hundred (500) inches of water at the head of said Temecula
canyon and above the confluence of Murrieta creek." [53] Converted into cubic
feet per second, the flow alluded to in the finding from which the last quoted
excerpt is taken, totals 10 c.f.s. - which would accord to Vail Company
2 1/2 c.f.s. at the rate of 25% of the flow measured at Temecula Gorge.

Supplanting the last mentioned clause of the Judgment of May 5, 1930,
is this excerpt from the Stipulated Judgment:

"Section Eleventh:

"Part I.  During the irrigation season of each year,
to wit, May 1 to October 31, inclusive, * * * defendants
[Vail Company] shall cause to be maintained at Gaging
Station No. Three (3) a constant flow of water of not less
than three (3) cubic feet per second (one (1) cubic foot
per second being the equivalent of fifty (50) miner's inches)."

Means of maintaining that guaranteed flow are spelled out with specificity in
the Stipulated Judgment.  Similarly there are stated with clarity the means
pursuant to which Vail Company may protect its crops when a greater quantity
of water for a brief time is required.  A concomitant proviso for repayment
of excess use by the Vail Company is contained in that clause of the Stipulated
Judgment.  As these provisions are in no sense equivocal, their citation is
all that is warranted.

As would be expected, the period of guaranteed flows during the
irrigation season at Temecula Gorge - the period when Vail Company because

---

[52] Judgment of May 5, 1930, Section Seventeenth.
[53] Vail Company Ex. A B, Finding 18;  See also Rancho Santa Margarita v. Vail,
11 Cal.2d 501; 81 P.2d 533, 538 (1938).

- 22 -

5762

1  of its geographical, geological and hydrological situation in regard to Camp

2  Pendleton has complete control of the flow at Temecula Gorge - is identical

3  in the Judgment of May 5, 1930, and the Stipulated Judgment to which con-

4  sideration is primarily directed.

5  Rights and Interests of Interveners
      Playtor and Murray Schloss Estate:

6

7          "After entering Temecula gorge the river flows westerly for about

8  10 miles through this [ Temecula ] canyon and on to the lands of respondent.

9  Within this 10 mile stretch are a number of small users of water, a few of

10 whom appeared in this action as intervenors, and whose rights were fixed by the

11 judgment.  Neither [ Vail Company ] appellants nor [ Rancho Santa Margarita ]

12 respondent question the propriety of the judgment insofar as it relates to

13 intervenors", is the manner in which California's Supreme Court analyzed the

14 status of third parties permitted to intervene. [54]   Reference is similarly made

15 to them in the findings. [55]   Of interest on a broader scope is the finding that:

16 "* * * waters were being abstracted at rare intervals, and never to exceed

17 five (5) miner's inches' continuous flow, from said Santa Margarita river in

18 that part of its course herein designated as the Temecula canyon, by owners

19 of lands lying within said canyon riparian thereto (there are no others

20 entitled to take water therefrom) by means of pumps or other devices * * *." [56]

21          Both the Judgment of May 5, 1930, the findings of fact and conclusions

22 of law recognize rights in interveners. [57]   That circumstance is reflected in

23 the Stipulated Judgment in these terms:

24          "The intervener Philip Playtor [ predecessor of defendant

25          Max Henderson above mentioned ] is entitled to take and use upon

26          the whole or any part of his lands riparian to said Temecula-

27          Santa Margarita river, * * * one (1) miner's inch continuous

28          flow of the waters of said Temecula-Santa Margarita River." [58]

29

30  [54]  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533, 538 (1938).
     [55]  Vail Company Ex. A B, Finding of Fact No. 1, page 3.
31  [56]  Vail Company Ex. A B, Finding No. 22, page 54.
     [57]  Vail Company Ex. A B, Finding No. 34, page 69 et seq.
32  [58]  Stipulated Judgment, Section Fourth.

                                    - 23 -

                                                            5763

GPO 10-82000-8

1       "The interveners Guy Bogart, /̄et al.7̄ * * * as executors

2      under the will of Murray Schloss, deceased, /̄defendants here 7̄

3      own certain real property * * * approximately twenty (20) acres

4      are riparian to a certain tributary of said Temecula-Santa

5      Margarita River by the name of Stone Creek * * * /̄Interveners

6      Schloss Estate_7 are entitled to take * * * throughout said dry

7      or irrigation season of each calendar year and from the 1st

8      day of May of each year until the 31st day of October * * *

9      the entire flow * * * of said Stone Creek * * * /̄for use upon 7̄

10     said twenty (20) acres parcel"; during the wet season Schloss

11     Estate is awarded "five (5) miner's inches continuous flow." [59]/

12     Virtually identical language in the Judgment of May 5, 1930, and the

13 Stipulated Judgment provides that:

14      "The waters of said stream herein apportioned to the

15     intervenors shall be deducted from the fractional part of

16     the waters of said stream herein allotted to the plaintiff

17     /̄Rancho Santa Margarita 7̄ ." [60]/

18 (a) Stipulated Judgment Authorizes the
19      "Intercepting or Impounding or Conserving"
     of Each "Party's Share of the Flood Waters
20     of Said /̄ Santa Margarita_7 River and Its
    Tributaries";
21 (b) Ground Water Diversions Charged as Surface
    Water Diversions:
22 (c) Pumping Limitations During Irrigation Season:

23     Vail Company and the Rancho were accorded the right to construct

24 storage facilities

25      "for the purpose of intercepting or impounding or

26     conserving such party's share of the flood waters of

27     said river and its tributaries * * *." [61]/

28 Vail Company further stipulated, however, that:

29      "the rights of defendants /̄Vail Company7̄ to abstract and

30     divert Storage Water pursuant to Section Tenth hereof shall

    cease and terminate" when surface storage capacity was created. [62]/

31 [59]/  Stipulated Judgment, Section Fifth.
[60]/  Judgment of May 5, 1930, Sec. Eleventh; See Stipulated Judgment, Sec. Sixth.
32 [61]/  Stipulated Judgment, Section Thirteenth.
[62]/  Stipulated Judgment, Section Thirteenth.

- 24 -

Since the entry of the Stipulated Judgment the Vail Company has constructed Vail Dam and Reservoir which has a maximum capacity of approximately 50,000 acre-feet.  As a consequence Vail Company may no longer exercise those privileges contained in Section Tenth which awarded it

a right,

additional to its aliquot share of 33 1/3 % of the yield of the Santa Margarita River, to pump ground water in quantities graduated on the basis of the static level of water in the Windmill Well described in the last cited Section of the Stipulated Judgment - fuller the Temecula Alluvial Basin, the greater the right to abstract water, up to 1,500 acre-feet annually.

Closure of Vail Dam in 1948 made inapplicable some of the provisions of Section Tenth.  That Section is of great importance, however, because of this provision adopted from the Findings of Fact and Conclusions of Law upon which was predicated the Judgment of May 5, 1930:

"For the purpose of determining defendants' /¯Vail Company_7 total diversions of the waters of the Temecula-Santa Margarita River and its tributaries * * * any water abstracted or diverted by defendants from the underground waters of said river (including underground basins of percolating water within the watershed of said river and its tributaries) by use of wells or pumps or other means of diversion, whether now existing or hereafter established, except as hereinafter in this section provided, shall be added to any surface diversions by the defendants from the waters of said river.  Such abstractions by the defendants of the underground waters of the Temecula-Santa Margarita River are, and for all purposes of this judgment shall be * * * considered as diversions of the waters of said river,

- 25 -

5765

1  and are and shall be chargeable against the fractional

2  part of the surface flow of said stream * * *." [63]

3      To insure the Rancho, and of course its successor in interest the United

4  States of America, against a repetition of the invasion by the Vail Company

5  of the former's rights which gave rise to the "Million Dollar Law Suit" [64] this

6  provision is set forth in the clause permitting the storage of flood waters:

7      "Defendants [Vail Company] shall not make, during

8      any irrigation season, any surface diversions [65] of the

9      waters of said river at the Bridge Pumping Plant, the

10      Cantarini Pumping Plant or the Tule Pumping Plant referred

11      to in the findings herein, or at any other point on said

12      Temecula-Santa Margarita River below the point of Rising

13      Water as shown on said Exhibit No. 265." [66]

14      There is thus spelled out in detail the respective shares of the

15  parties to the Stipulated Judgment; the means of determining those shares;

16  the regulations which effectuate the apportionments.  Next to be considered

17  is the effect, if any, of the Stipulated Judgment upon the rights of other

18  water users in the Santa Margarita River watershed including but not limited

19  to the interveners.

20  Stipulated Judgment and Judgment of May 5, 1930,
      Are Not Binding On Owners of Rights to the
21      Use of Water Not Parties Other Than Successors
      of Parties To It;  Interveners Not Bound
22      by Stipulated Judgment:

23      In its discretion the Superior Court of the State of California In

24  and For the County of San Diego in Rancho Santa Margarita v. Vail denied Vail

25  Company's motion to join other water users on the stream.  Noted in that

26  regard is this salient fact:

27      Vail Company did not, on appeal, press its motion

28      to join additional parties.

29  _____

30  [63]  Stipulated Judgment, Section Tenth.

31  [64]  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533, 536 (1938).

     [65]  See definition of diversions above, footnote 63.

32  [66]  Stipulated Judgment, Section Thirteenth; Vail Company Ex. A B, Findings
           of Fact numbered 12-17 and related findings; Conclusion of Law No. 5,
           pp. 75 et seq.

- 26 -

Of paramount importance in regard to the State court's refusal to join additional parties is the immensity of Vail Company's holdings; its complete control of the Santa Margarita River - a control enhanced by the Vail Dam and Reservoir.  Vail Company's status on the river 35 years ago undoubtedly had great bearing upon the trial court in the exercise of its discretion in denying Vail Company's motion to join additional parties. Cognizant of the claims of other owners of rights to the use of water, the State court declared:

"The right to the use of the waters of said Temecula-Santa Margarita river, said Murrieta creek * * * is not confined to the parties to this action, but many other persons * * * have or claim  to have, and are either exercising or claim the right to exercise, riparian rights in the waters of said streams or their tributaries; but

[a] all of said parties are not, and no one of said parties is, necessary to the proper adjudication of the rights of the parties of record herein * * *

[b] * * * as against the defendants and intervenors herein, it is not impossible to fix the proportion of the waters of said Santa Margarita river to which the plaintiff [Rancho Santa Margarita, predecessor of United States of America] is entitled without bringing in other riparian owners on said stream." [67]

Proceeding upon that basis the Judgment of May 5, 1930, the Findings of Fact and Conclusions of Law from which Vail Company in part appealed, were entered. On that background moreover, Vail Company co-sponsored with the Rancho, the Stipulated Judgment.

---

[67]  Vail Company Ex. A B, Finding of Fact No. 27.

5767

1    Abundantly manifest is this conclusion from the recited facts:

2        The Judgment of May 5, 1930, from which Vail Company

3        appealed; its derivative, the Stipulated Judgment co-sponsored

4        by the Vail Company - neither purported to bind nor attempted

5        to bind, - indeed, could not bind - the riparian owners

6        alluded to by the trial court in the cited Finding of Fact

7        from which the above quoted excerpt on the subject was taken.

8    In the present phases of the trial of United States v. Fallbrook Public

9  Utility District, et al., evidence is being adduced proving additional rights to

10  the use of water in the Santa Margarita River watershed.  While the interests of

11  the United States of America and Vail Company, Inc. must be resolved as they

12  relate to the other defendants, it is apparent that as between themselves their

13  aliquot shares have been resolved, and will constitute one phase of the judgment

14  to be entered in the last-cited general adjudication.  That general adjudication

15  is, of course, to be distinguished from the declaratory judgment sought by the

16  Rancho Santa Margarita against the Vail Company only in the fact that, as directed

17  by the Court of Appeals for the Ninth Circuit, all landowners were joined in the

18  action.  Need for that basin-wide adjudication stemmed from the greatly increased

19  water use by defendants in addition to the Vails.

20  Interveners Did Not Appeal From Judgment of May 5, 1930 -
        Are Bound By It; Are Not Bound By Stipulated
21        Judgment to Which They are Not Parties:

22    California's Supreme Court recognized that interveners in the case of
        68/
23  Rancho Santa Margarita v. Vail did not appeal from the Judgment of May 5, 1930.

24  It is specifically recognized in these terms in the Stipulated Judgment:

25        "defendants /_Vail Company_7 and each of them * * * appealed

26        from said judgment * * * but said interveners did not appeal
                         69/
27        from said judgment * * *."

28  The Stipulated Judgment does, however, purport to summarize the rights of the inter-
                                        70/
29  veners as declared and determined by the Judgment of May 5, 1930.  As the inter-

30  veners did not appeal from the Judgment of May 5, 1930, they are bound by it.

31    In the light of the preceding analysis response will be made to the other

32  questions presented by this Honorable Court.

68/  11 Cal.2d 501; 81 P.2d 533, 538 (1938).
69/  Stipulated Judgment, Recital prior to Section First.
70/  Stipulated Judgment, Sections Fourth and Fifth.

5768

As above stated, the United States of America has rearranged the questions as presented, having as its objective better to chronicle the principles which it believes are involved. Accordingly the following question is the one next to be considered:

> "Is part of the old judgment in Santa Margarita v. Vail, which was not affected by the granting of the new trial, still effective as to the Government, the successor of Santa Margarita, and the Vail Company?" [71/]

It is essential to emphasize that the response of the United States of America which precedes, respecting the meaning of the Stipulated Judgment, is made part of this answer and is the background for it.

To the question set forth above a negative response is made. Clearly those who formulated the Stipulated Judgment:

    (a) Adopted, even to terminology, the general pattern of the Judgment of May 5, 1930;

    (b) Adhered strictly to the means of allocating the respective rights to the use of water between the parties litigant as contained in the Judgment last mentioned;

    (c) Adopted virtually verbatim the language of the Judgment of May 5, 1930, as to the key gauging stations at which points the waters are divided;

    (d) Compromised the 75% - 25% allocation of the yield of the Santa Margarita River on the basis of the opinion of the Supreme Court of California [72/]

        by

        (i) Apportioning all of the waters of the Santa Margarita River to which they were entitled as distinguished from

---

71/  Tr. Vol. 101, page 11436, line 19; See also page 11468, line 19.
72/  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533 (1938).

the award in the Judgment of May 5, 1930,

to Vail Company of all of the waters of

Murrieta Creek;

(ii) Removing the limitation imposed by the

Judgment of May 5, 1930, prohibiting the

use of water upon non-riparian land;

(iii) Reducing the percentage apportionment

awarded by the Judgment of May 5, 1930,

to the Rancho Santa Margarita to 66 2/3 %

increasing the Vail Company award to 33 1/3 %.

Moreover, from the clause-by-clause comparison and contrast between
the Judgment of May 5, 1930, and the Stipulated Judgment, this conclusion is
unavoidable:

Competent counsel for both the Vail Company and the Rancho

Santa Margarita drafted the Stipulated Judgment in con-

templation of resolving for all time, by a comprehensive

and all-embracing decree, a complete settlement of their

protracted litigation.

Fully buttressing the conclusion that the parties by their acts
intended to resolve all issues by the Stipulated Judgment are applicable
tenets of the law. Warranted here is a reference to the proposition advanced
throughout by the National Government, namely:

The Stipulated Judgment is res judicata as between it

and the Vail Company, they being successors in interest

to the identical rights litigated 444 days in the Superior

Court of the State of California in and for the County

of San Diego.

Reference to the remand to the Superior Court of the State of California in and
for the County of San Diego is similarly warranted.

"Appellants /Vail Company, Inc., predecessor in interest_7

have not challenged many of the findings. There is no

need for a new trial on those issues. It would appear

- 30 -

5770

that on the new trial it will be necessary: (1) to
ascertain the extent of appellants' riparian and irrigable
acreage as set forth in the body of this opinion; (2) to
ascertain the extent of respondent's [predecessor of the
United States of America] riparian and irrigable acreage only
in so far as it involves the table land, discussed in the body
of this opinion; and (3) ascertain whether an injunction
should be granted under the rules set forth in the body of
this opinion, and if so, what its terms should be." [73/]

There has been reviewed above the unavoidable fact that rather than
retry the issues, the parties by compromise resolved the limited issues
presented by the remand.

Conclusiveness of the principle thus advanced is this frequently
cited decision of our Highest Court from which is taken this excerpt:

"The general principle, applied in numerous
decisions of this court, and definitely accepted in
Southern Pacific R. R. Co. v. United States, 168 U. S. 1,
48-49, is, that a question of fact or of law distinctly
put in issue and directly determined by a court of
competent jurisdiction as a ground of recovery or defense
in a suit or action between parties sui juris is con-
clusively settled by the final judgment or decree therein
so that it cannot be further litigated in a subsequent
suit between the same parties or their privies, whether
the second suit be for the same or a different cause
of action." [74/]

It is free from doubt, based on the facts and enunciated tenets of
the law that:

The Judgment of May 5, 1930 as between the United States
of America and Vail Company, Inc. - not the interveners -
was superseded by the Stipulated Judgment - was merged into it.

---

73/  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533, 565-6 (1938).
74/  Oklahoma v. Texas, 256 U. S. 70, 85 (1920).

- 31 -

5771

Generally, it has been stated: "The entry of a judgment or decree establishes in the most conclusive manner and reduces to the most authentic form that which had hitherto been unsettled * * *. The cause of action thus established and permanently attested is said to merge into the judgment establishing it upon the same principle that a simple contract merges into a specialty. * * * The cause of action * * * can never again become the basis of a suit between the same parties. * * * It is 'drowned in the judgment' * * *." [75/]   From the same authoritative source this statement is taken:  "The same general rules which govern judgments generally apply to a judgment by consent or upon stipulation. It is an estoppel, merger or bar under the same circumstances and to the same extent as any other judgment * * *." [76/] (Emphasis supplied)

This equally correct statement is taken from another authority: "A consent decree is as much a final decree and as conclusive upon the parties as is a decree which has been rendered after a hearing on the merits." [77/]

Law in California on the subject of merger comports with the general principle enunciated. On the subject this statement has been made: "Consent to a judgment is a waiver of any errors in it ⌐subject to exception not existing here⌐. * * * a judgment on stipulation or by consent is conclusive of everything adjudicated by it and may not be collaterally attacked by a party even on the ground that it does not conform to the stipulation." [78/] Similarly it has been declared that "* * * a final judgment on the merits merges the claim or cause of action on which it is based." [79/]

As a consequence it is manifest that

By mutual agreement between the Rancho Santa

Margarita and Vail Company;

Based upon sound principles of law;

the Stipulated Judgment concluded all of the issues in the case between those parties; it superseded the Judgment of May 5, 1930, issue by issue, all as reviewed in Answer No. 1.

[75/] 2 Freeman on Judgments, Fifth Edition, Sec. 546, pages 1165-1166.
[76/] Ibid., Sec. 663, pages 1395-1396.
[77/] 19 Am. Jur., Equity, Sec. 407, page 280.
[78/] 28 Cal. Jur. 2d, Judgments, Sec. 16, pages 634-635.
[79/] 29 Cal. Jur. 2d, Judgments, Sec. 255, page 219.

- 32 -

5772

GPO 19-88888-1

LOGICAL SEQUITUR OF THE TWO PRECEDING QUESTIONS
PRESENTED BY THIS HONORABLE COURT IS THE QUESTION
RELATING TO WHETHER THE STIPULATED JUDGMENT AND                80/
JUDGMENTS ADJUDICATING RIPARIAN RIGHTS ARE RES JUDICATA.
ANTECEDENT TO SETTING FORTH THAT QUESTION IT IS
ESSENTIAL TO CONSIDER THE:
<u>INAPPLICABILITY TO THE STIPULATED JUDGMENT OF</u>
<u>PRINCIPLES RELATING TO DECREES ADJUDICATING</u>
<u>RIPARIAN RIGHTS</u>, BECAUSE:

A.   THE STIPULATION DIFFERS VASTLY AND IN
      MATERIAL RESPECTS FROM THE ORDINARY
      DECREE APPORTIONING RIPARIAN RIGHTS
      TO THE USE OF WATER IN A STREAM;
B.   THE STIPULATED JUDGMENT AUTHORIZES THE
      USE OF WATER UPON NON-RIPARIAN LAND
      AND UPON RIPARIAN LAND;
C.   THE STIPULATED JUDGMENT AUTHORIZES AND
      THERE IS NOW EXERCISED THE RIGHT AS
      BETWEEN THE PARTIES TO THE CYCLICAL
      STORAGE OF THE WATERS OF THE SANTA
      MARGARITA RIVER, WHICH IS CLEARLY
      VIOLATIVE OF THE PRINCIPLES OF THE
      LAW GOVERNING RIPARIAN RIGHTS;
D.   THE STIPULATED JUDGMENT PROVIDES A
      GUARANTEED FLOW DELIVERED BY VAIL
      COMPANY AT TEMECULA GORGE;
E.   THE STIPULATED JUDGMENT PROVIDES FOR
      AN ALLOCATION BETWEEN THE VAIL COMPANY
      AND THE UNITED STATES OF AMERICA NOT
      IN THE CONTEMPLATION OF THE EXERCISE
      OF RIPARIAN RIGHTS

Each of the aspects, A through E above, of the Stipulated Judgment is

foreign to and at variance with a decree adjudicating riparian rights.  Rather

it bespeaks of a decree tailored to effectuate the mutual interests of those

who sponsored its entry.  However, if the Stipulated Judgment could be modified

under the circumstances, which is denied, that must be in favor of the United

States of America because of the present exercise, since the entry of the

Stipulated Judgment, by numerous riparian owners of rights to the use of water

between the Temecula Gorge and the eastern boundary of the enclave.  Thus the

modification, if permitted, would place a greater burden, particularly during

the irrigation season, upon Vail Company, Inc., than presently exists.

Seemingly overlooked by Vail Company, Inc., in its efforts to have

modified or declared null and void the Stipulated Judgment, are these salient

facts:

(a)  The Stipulated Judgment was entered not by this Honorable

      Court but by a State court of California;

80/   Tr. Vol. 101, page 11438, lines 8 through 18.

- 33 -

5773

GPO 16—89099-1

1       (b)  Vail Company, Inc., through inducements and representa-

2            tions that the Stipulated Judgment would be honored,

3            has caused the National Government to change its

4            position to its irreparable damage if the Stipulated

5            Judgment is now modified or abrogated.

6       On that background the United States of America will consider the

7 question and the various phases of it which were presented by this Honorable

8 Court:

9           / 1 7 "* * * Is a judgment such as the stipulated

10                judgment res adjudicata?" [81/]

11       Answer to the question last quoted is in the affirmative wholly

12 aside from the equitable principles precluding the Vail Company, Inc., at

13 this time from avoiding its responsibilities under the Stipulated Judgment.

14 That conclusion follows a _fortiori_ when consideration is given to the facts

15 that

16       (a)  $51,000 were expended by the National Government for

17            drilling the Naval Well on Vail Company, Inc's property

18            and from which the Vail Company, Inc., receives

19            immeasurable benefits, all by reason of the representa-

20            tion of the Company that it would be bound by the

21            Stipulated Judgment;

22       (b)  Based on the representation by the Vail Company, Inc.,

23            that it would be bound by the Stipulated Judgment,

24            the United States of America withdrew its protests to

25            the application of the Company for a permit to

26            appropriate upwards to 50,000 acre-feet of water

27            annually by means of the Vail Dam;

28       (c)  The United States of America expended upwards to $50,000,

29            and continues to expend large sums of money, pursuant to

30            the provisions of the Stipulated Judgment requiring the

31            measuring and reporting of stream flows and diversions. [82/]

32

81/  Tr. Vol. 101, page 11438, lines 12-13.
82/  Please refer to the brief of the United States of America dated September 21,
    1959, "Response to Vail Company Memorandum Attacking Stipulated Judgment."

5774

Stipulated Judgment is Res Judicata:

    Our Highest Court has declared that a judgment of the nature here involved is <u>res judicata</u> to the same extent as a judgment or a decree entered by the court after a trial on the merits. [83] That principle has universal acceptance both in the State and Federal courts. [84]

    A recent analysis of the precise principles which, it is respectfully submitted, govern in this cause, involved an effort to avoid the effect of a compromise settlement. In summarily dismissing the effort to set aside the compromise, the Court of Appeals for the Second Circuit stated: "It would be unfair for it, after retaining these benefits, to attempt to repudiate such part of the settlement as <u>fifteen years</u> later it discovers was less favorable to it than was warranted by the facts and law." [85]

    California's Supreme Court has declared that absent fraud or collusion, a decree entered by consent may not be set aside. [86] California's law on the subject has been correctly summarized in these terms:

        "A stipulated or consent judgment is as conclusive
        of the matters in issue and determined by it as a judgment
        rendered after trial." [87]

To be observed in that connection are these unassailable facts:

        (a)  Competent counsel represented the Vail Company
                when it co-sponsored the Stipulated Judgment
                that it now seeks to avoid;

        (b)  There is not a scintilla of evidence that there
                was fraud or collusion, and the Vail Company
                does not now assert that there was - indeed,
                the whole background of the Stipulated Judgment
                reveals a mutual desire of all concerned, after
                a full and complete review of all of the facts,
                to resolve their respective rights.

        (c)  The Stipulated Judgment may not be collaterally
                attacked by Vail Company, Inc.

[83] Burgess v. Seligman, 107 U S. 20 (1883).
[84] Moore v. Schneider, 196 Cal. 380; 238 Pac. 81 (1925).
[85] Juilliard & Co. v. Johnson, 259 F.2d 837, 843 (C.A.2, 1958).
[86] Newport v. Hatton, 195 Cal. 132; 231 Pac. 987.
[87] 29 Cal. Jur. 2d, Judgments, Sec. 236, page 196.

5775

- 35 -

1    Response to phases No. 2 and No. 3 has been combined.

2         /2 7 "Can any judgment of a state court involving
                                                        88/
3              riparian rights ever be res adjudicata?"

4         /3 7 "Can you have such a thing as a final judgment
                                                        89/
5              apportioning riparian rights?"

6    Again the answer to those questions is in the affirmative.  In an

7 action involving an attempted review of an adjudication of riparian rights

8 California's highest court declared:

9         "The conditions do not appear to be different now from

10         what they then were.  The diversion by the defendants is

11         the same now as then, and while these conditions continue

12         unchanged the judgment rendered in the former action
                                                        90/
13         operates as a bar between the parties here."
                                                             91/
14 That principle is reiterated and restated by many authorities.

15    Governing tenet is this:

16         If conditions have not changed as between riparians

17         warranting a modification of a decree, the principles

18         of res judicata prohibit a modification of it.

19

20    To this fourth and last phase of the inquiry:

21         /4 7 "Isn't any judgment involving riparian

22              rights subject to modification, depending

23              upon the uses, the amount of irrigable

24              land being irrigated, the use or non-use

25              of water by persons entitled thereto,

26              the increased use at one time or another,
                                                    92/
27              et cetera?"

28 the response is negative, if it is directed to the Stipulated Judgment here

29 under consideration.  For reasons expressed above the Vail Company, Inc., is

30 estopped and barred from having the Stipulated Judgment changed or abrogated.

31
32
88/  Tr. Vol. 101, page 11438, lines 8-9.
89/  Tr. Vol. 101, page 11438, lines 17-18.
90/  Los Angeles v. Baldwin, 53 Cal. 469, 470 (1879).
91/  26 Cal. Jur. Sec. 812;
     1 Wiel, Water Rights in the Western States, 3d ed.; page 825; 6 C.L.R. 266.
92/  Tr. Vol. 101, page 11438, lines 13-17.

                                                        5776
                              - 36 -

1    Simply stated, the Stipulated Judgment is removed from the appli-

2    cation of the principles which generally adhere, by reason of the conduct

3    of Vail Company, Inc., all as reviewed before this Honorable Court.  It is,

4    of course, recognized that where a court has continuing jurisdiction, it

5    can make changes to meet changed conditions.  That tenet of the law is

6    applicable among riparians whose rights have been adjudicated. [93/]  However,

7    as set forth in the heading to this phase of the consideration, the Stipulated

8    Judgment is not of the same nature as decrees apportioning rights among

9    riparian owners.  It is rather, as emphasized in the heading, an arrangement

10   mutually agreed to between two landowners on the Santa Margarita River.

11   Though the Stipulated Judgment is derivative of the Judgment of

12   May 5, 1930, it differs from that Judgment, as repeated throughout, in this

13   very material respect:

14   It permits the parties to it and their successors the

15   right to use the water on non-riparian land; to impound

16   water.

17   As a consequence, the Stipulated Judgment partakes more of a decree respecting

18   appropriative rights than one relating to riparian rights.  Pertinent in

19   regard to the very important matter is this Court's observation when

20   formulating the question here being considered: "Now you can fix a prescriptive

21   right, you can fix an appropriative right."  With that conclusion the United

22   States of America is in full agreement.

23   Interveners, however, in the case of Rancho Santa Margarita v. Vail,

24   present facts which may warrant an increase in the quantities of water to

25   which they are entitled.  Engineering reports prepared by the United States

26   of America indicate more lands susceptible of practicable and profitable

27   irrigation than the trial court found in the case last cited.  It is under-

28   stood that appropriate issues will be joined in the subject case respecting

29   this matter.

30

31   _____

32   93/3 Kinney on Irrigation and Water Rights, 2d ed., Sec. 1564 et seq.

5777

"I WANT YOU TO TRY YOUR HAND AT A SIMPLE DRAFT
OF A DECREE THAT WOULD AFFECT THIS VALLEY,
ASSUMING THAT THE STIPULATED JUDGMENT STANDS    94/
AND/OR THAT PART OF THE OLD JUDGMENT STANDS **"

Comment respecting the preceding request by this Honorable Court is
essential:

1.  It is the conclusion of the United States of America, as
    stated above, that the Judgment of May 5, 1930, was
    merged into the Stipulated Judgment of December 26, 1940;

2.  There is not a vestige left of the original Judgment
    of May 5, 1930, as between the United States of America
    and the Vail Company, Inc., successors in interest
    of the parties who originally co-sponsored it and
    secured its entry for their mutual benefit;

3.  As the Stipulated Judgment is a derivative - indeed
    is in many respects identical with the Judgment
    of May 5, 1930, differing primarily in regard to
    the amounts of water apportioned and the acreage
    of lands upon which the water may be used - any
    remaining vestige of the earlier decree would be
    unimportant in formulating a decree in the case of
    United States of America v. Fallbrook Public Utility
    District in so far as the United States of America
    and Vail Company, Inc., are concerned.

    In tendering a tentative decree of the nature requested, the
United States of America proceeds on the basis that there will be full and
comprehensive findings entered by this Honorable Court respecting the
geography, geology, hydrology and the climatological aspects of the Santa
Margarita River watershed.  Each of those physical phenomena will be moreover,
it is assumed:

_____

94/   Tr. Vol. 101, page 11437, lines 23-25; page 11438, lines 1-8.

5778

GPO 16-69999-1

1        / a_7  Related to the Santa Margarita River and its

2            tributaries in their course across, over, under and

3            through the vast holdings of the Vail Company, Inc.;

4        / b_7  Related to the Vail Dam, and Reservoir;

5        / c_7  Related to the complete control of the Vail Company,

6            Inc. over the discharge of the Santa Margarita River

7            and its tributaries above Temecula Gorge where those

8            holdings are astride the Santa Margarita River and

9            all of its major tributaries of the upper valley;

10       / d_7  Related to the immense surface storage capacity of

11           Vail Reservoir;

12       / e_7  Related to the immense ground water basin which

13           has been described by the Vail Company's geologist

14           as follows:

15         "The /Vail Company's_7 Pauba Ranch * * * is

16       well blessed with an abundance of water... * *.*

17       "/ 1_7  The vast expanse of continental or fresh

18           water sediments which occupy the area below 1500

19           feet elevation in the Pauba Ranch area and which

20           extend from Aguanga far up the Temecula River

21           Valley to Corona along the great Elsinore Rift

22           comprise the main sedimentary series and at the

23           same time form a reservoir for a great volume

24           of water."

25       "/ 2_7  With the possible exception of outlying wells

26           around the perimeter of the area covered by

27           these strata, no well has been drilled for water

28           to the bottom of this series, but in so far as

29           drilling has progressed the proportion of gravel

30           and coarse sand increased with depth."

31       "/ 3_7  Within the /Vail Company's_7 Pauba Ranch

32           these sediments cover more than 35 square miles

- 39 -

5779

1    and doubtless the volume of gravels suitable

2    for carrying water would exceed half a billion

3    cubic yards."

4    "/4_7 It is in these gravels that the ground water

5    resources of the /Vail Company's_7 Pauba Ranch

6    exist." 95/

7    /f_7 Related to the fact that Vail Company, Inc., as stated,

8    astride the Santa Margarita River above Temecula Gorge;

9    overlying the ground water table which supports the

10   surface stream; sole operator of Vail Dam, built on

11   representations to the United States of America that

12   the Stipulated Judgment would be honored by the Vail

13   Company, Inc., does by its storage, pumping and

14   diversions, exercise the power of life and death over

15   all the water users below Temecula Gorge.

16   On the background of Findings of Fact of the nature which would be

17   reflective of the indisputable facts, with the Conclusions of Law which would

18   be attendant upon them, the United States of America tentatively proposes the

19   type of Findings of Fact, Conclusions of Law and Decree which would accomplish

20   the ends of justice:

FINDINGS OF FACT

I

21   The Superior Court of the State of California In and For the County

22   of San Diego had jurisdiction over the parties and their respective rights to

23   the use of water in the case entitled Rancho Santa Margarita v. Vail, et al.,

24   No. 42,850, the trial of which was commenced on October 18, 1926.

II

25   Rancho Santa Margarita, plaintiff in the above-entitled cause,

26   brought that action "primarily to secure a declaration of its riparian rights

27   in the waters of the Temecula-Santa Margarita river, and its tributaries * * *." 96/

---

95/  Please see Response to Vail Company's Memorandum Attacking Stipulated
     Judgment, Exhibit C.
96/  11 Cal.2d 501; 81 P.2d 533, 536 (1938).

- 40 -

5780

GPO 16-80000-1

### III

Prior to the trial of that case there was raised the issue of the necessity for the joinder of numerous additional parties known by the Superior Court of the State of California In and For the County of San Diego and by the parties to be landowners exercising and claiming the right to exercise rights to the use of water in the Santa Margarita River.

### IV

In the exercise of its proper jurisdiction, having considered all of the facts, the Superior Court of the State of California In and For the County of San Diego denied the motion for joining additional parties.

### V

On May 5, 1930, having heard the case for 444 days of trial, the Superior Court of the State of California In and For the County of San Diego in the exercise of its proper jurisdiction entered a decree adjudicating the rights of the Rancho Santa Margarita, the Vail Company, and certain interveners in and to the use of the waters of the Santa Margarita River.

### VI

Specifically and separately and after the protracted trial the Superior Court of the State of California In and For the County of San Diego found:

"27. The right to the use of the waters of said Temecula-Santa Margarita river, said Murrieta creek, and the tributaries of each, is not confined to the parties to this action, but many other persons, many of whom are named in defendants' answer to amendments to the amended complaint, have or claim to have, and are either exercising or claim the right to exercise, riparian rights in the waters of said streams or their tributaries; but all of said parties are not, and no one of said parties is, necessary to the proper adjudication of the rights of the parties of record herein, and the proper adjudication of the rights of the parties to this action does not require that all or any of such other riparian owners should

- 41 -

5781

be brought in and required to set up their several claims in and
to the waters of said streams, or either or any thereof; and as
against the defendants and intervenors herein, it is not
impossible to fix the proportion of the waters of said Santa
Margarita river to which the plaintiff is entitled without
bringing in other riparian owners on said stream." [97/]

### VII

By the Judgment of May 5, 1930, there was apportioned to the Rancho
Santa Margarita 75% of the flow of the Santa Margarita River for use upon the
lands of the Rancho riparian to the stream; the Rancho was denied the right to
the use of any of the waters of Murrieta Creek; to the Vail Company, 25% of
the flow of the Santa Margarita River, plus the flow of Murrieta Creek, for
use upon the riparian lands of that Company.

### VIII

The apportionment of rights in the Santa Margarita River adjudged
by the Superior Court of the State of California In and For the County of
San Diego was within its jurisdiction.

### IX

Appeal by the Vail Company from the Judgment of May 5, 1930, was
principally directed to the method utilized by the trial court in determining
riparian acreage; it was that phase of the decree which was principally considered
by the Supreme Court of the State of California. [98/]

### X

In its decision based upon Vail Company's appeal, the Supreme Court
of the State of California remanded the case for the primary purpose of
determining the respective riparian acreage of the parties in the light of the
doctrine enunciated by it in that decision.

### XI

Though the issues to be retried upon the remand by the Supreme Court
of the State of California, as by that Court declared, were very limited and

97/  Vail Company Ex. A B, Finding No. 27, page 60.

98/  Rancho Santa Margarita v. Vail, 11 Cal.2d 501; 81 P.2d 533 (1938).

- 42 -

5782

an extensive trial was not required to fulfill the remand, the Vail Company
and the Rancho Santa Margarita jointly sponsored a stipulated judgment.

### XII

That Stipulated Judgment co-sponsored as described, was entered by
the Superior Court of the State of California In and For the County of San Diego
on December 26, 1940. A copy of that Stipulated Judgment is attached to this
decree and is made a part of it by reference the same as if it were set forth
in full in this paragraph.

### XIII

There was adopted in the Stipulated Judgment of December 26, 1940,
the method of apportionment contained in the Judgment of May 5, 1930; keying,
as was done in the Judgment of May 5, 1930, that apportionment to Gauging
Station No. 3 at the head of Temecula Gorge when the flow there was greater
than at Gauging Station No. 6; whereas, when the flow at the latter Station
exceeded that of the former, it would govern for the purpose of apportioning

66 2/3 % of the total flow of the Santa Margarita River
and all its tributaries to the Rancho Santa Margarita;

33 1/3 % of the total flow of the Santa Margarita River
and all its tributaries to the Vail Company,

Guaranteed, nevertheless, by the Vail Company from May 1 of each irrigation
season to October 31, inclusive, is "a constant flow of water of not less than
three (3) cubic feet per second" at "Gaging Station Number Three (3)."

### XIV

The Vail Company and the Rancho Santa Margarita in co-sponsoring
the Stipulated Judgment, were fully aware of and compromised their respective
rights in contemplation of the rights of numerous other landowners in the
watershed of the Santa Margarita River who were then exercising or claimed
they were entitled to exercise rights to the use of water in that stream.

### XV

Vail Company, Inc.'s land is so situated that all of the waters of
the Santa Margarita River and its tributaries in the upper watershed, after
the water users upstream from its lands have diverted their share of the

- 43 -

5783

1   waters as determined by this decree, flow across, through or under its land

2   prior to entering Temecula Gorge where that stream leaves the Vail Company,

3   Inc., properties and flows down to the lands of the United States of America

4   which constitute the Naval Enclave.

XVI

6       Due to the geographical location and the physical control of the

7   Vail Company, Inc., over all of the waters entering Temecula Gorge, it is

8   possible effectively to administer as between the United States of America

9   and Vail Company, Inc., the provisions of the Stipulated Judgment from the

10   standpoint of the apportionment of the quantities of water each is entitled

11   to under that document.

XVII

13       Apportionment under the Stipulated Judgment in accordance with its

14   provisions can be accomplished without invasion of or interference with the

15   rights of others who are legally entitled to their share of the water in the

16   Santa Margarita River.

CONCLUSIONS OF LAW

I

19       The Stipulated Judgment entered December 26, 1940, is valid,

20   enforceable and is now in full force and effect between the United States of

21   America, successor of Rancho Santa Margarita, and Vail Company, Inc.,

22   successor of the Vail Company.

II

24       The Stipulated Judgment constitutes an adjudication of the respective

25   rights to the use of water as between the United States of America and Vail

26   Company, Inc. Their rights to the use of water in the Santa Margarita River

27   and its tributaries will, as between those two water users, be exercised,

28   enjoyed and the quantities of water received by each will be measured by and

29   allotted to them in complete conformity with the Stipulated Judgment, which has

30   been incorporated into these Findings of Fact, Conclusions of Law and Decree

31   and is a part of them.

III

    Determination of the quantities of water to be allotted to the

- 44 -

United States of America and Vail Company, Inc., pursuant to the Stipulated Judgment will be the aggregate quantities of water to which the United States of America and Vail Company, Inc., are entitled based upon their legal rights to the use of water as those legal rights relate to the rights of all other water users in and to the waters of the Santa Margarita River and its tributaries.

IV

The Stipulated Judgment is not binding upon any parties in this case other than the United States of America and Vail Company, Inc.  As a consequence the aggregate quantities of water to which reference is made in the preceding sentence will be arrived at by adding together the quantities of water the United States of America and Vail Company, Inc., are entitled to, based upon their legal rights in the light of all the rights of all water users on the Santa Margarita River and its tributaries.

FINAL JUDGMENT AND DECREE

It is, therefore, by reason of the Findings of Fact and Conclusions of Law hereinabove set forth, Adjudged and Decreed by this Court as follows:

I

The United States of America and the Vail Company, Inc., and each of them, but no other parties to this litigation, are and they are hereby bound by the provisions of that certain Stipulated Judgment entered December 26, 1940, in the Superior Court of the State of California In and For the County of San Diego, and that they and each of them will enjoy and exercise their rights to the use of water in the Santa Margarita River and its tributaries in complete conformity with and subject to the provisions of that Stipulated Judgment which is incorporated into this decree and made a part of it as if that Stipulated Judgment were set forth in full in this decree.

II

The rights to the use of the waters of the Santa Margarita River and all of its tributaries owned by the United States of America and the Vail Company, Inc., and all other defendants, be and the same are hereafter adjudged, declared and

- 45 -

5785

determined as they relate one to the other.  The aggregate quantities of
water to which the United States of America and the Vail Company, Inc., are
entitled based upon their respective rights to the use of water as adjudged,
declared and determined in this decree will be the quantity of water apportioned
between them pursuant to the provisions of the Stipulated Judgment.

III

It is Further Adjudged and Decreed That:

1.  The United States of America is the owner of and is entitled to
the following rights to the use of water in the Santa Margarita River and its
tributaries:

(A complete chronicling of all of the rights to the use of
water appropriative, prescriptive, riparian, and which
otherwise were owned or acquired)

2.  Vail Company, Inc., is the owner of and is entitled to the
following rights to the use of water in the Santa Margarita River and its
tributaries:

(A complete chronicling of all of the rights to the use of
water appropriative, prescriptive, riparian, and which
otherwise were owned or acquired)

3.  Defendant Murray Schloss Estate is the owner of and is entitled
to the following rights to the use of water in the Santa Margarita River and its
tributaries:

(A complete chronicling of all of the rights to the use of
water appropriative, prescriptive, riparian, and which
otherwise were owned or acquired)

The balance of the landowners in the watershed of the Santa Margarita
River will be set forth with a description of their rights to the use of water,
their riparian lands which are subject to practical and profitable irrigation;
prescriptive; appropriative rights.

*   *   *   *   *   *   *   *   *

The preceding proposal of tentative Findings of Fact, Conclusions of
Law, and Decree, it is believed, will adequately protect the rights of all

- 46 -

5786

1  concerned; will constitute a complete general adjudication of all rights to
2  the use of water in the Santa Margarita River watershed; embrace the limited
3  declaration of the respective rights of the United States of America and
4  Vail Company, Inc., contained in the Stipulated Judgment by making it a part
5  of and blending it into the general decree of adjudication ultimately to be
6  entered by this Honorable Court.

7                                    UNITED STATES OF AMERICA

8
9                                    J. Lee Rankin
10                                   ─────────────────────────
                                     J. LEE RANKIN,
11                                   Solicitor General

12                                   William H. Veeder
13 Dated: January 14, 1960           WILLIAM H. VEEDER,
                                     Attorney, Department of Justice
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

                              - 47 -                    5787