George Stahlman
Rt. 1, Box 235
Fallbrook, California
RAndolph 8-2331
Earle K. Stanton
Attorneys for Vail Co.



F I L E D

JAN 29 1960

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT
et al.,

    Defendants.

No. 1247-SD-C

RESPONSE TO QUESTIONS POSED
BY THE COURT RE STIPULATED
JUDGMENT

QUESTION NO. I.

  IS PART OF THE OLD JUDGMENT IN SANTA MARGARITA v. VAIL, WHICH WAS NOT AFFECTED BY THE GRANTING OF A NEW TRIAL, STILL EFFECTIVE AS AGAINST THE UNITED STATES AND THE VAIL COMPANY, OR DID THE STIPULATED JUDGMENT ENTIRELY SUPERCEDE THE OLD JUDGMENT?

  As heretofore set forth in amended pleadings and memoranda submitted by the Vail Company, it is contended that enforcement of the Stipulated Judgment must be enjoined to the end that a new and complete equitable determination be made as to the water rights of all parties within the area; that by reason of material mistakes of the parties, and the indefinite and unconscionable nature of that judgment, and for other specified reasons, the Stipulated Judgment can be deemed of no force and effect; - a mere stumbling block to the making of an equitable determination under California laws.

  The Vail Company cannot, of course, recede from this position in any respect. It is believed that a judgment, whether

- 1 -

5833

stipulated or entered in the usual manner, purporting to determine riparian water rights, can never be deemed a final adjudication of those rights which by their very nature must change with a change of surrounding conditions. Such a judgment can never be res judicata but must always be subject to review and correction.

No case has been found which deals with a situation at all comparable with that here existing. Any answer to the Court's questions can best be approached by a brief consideration of the Stipulated Judgment entered in the original action between Rancho Santa Margarita and Vail, its effect, and the land and water conditions as they now exist.

The result of such an inquiry seems to indicate that the Stipulated Judgment entirely superceded the original judgment, and that no part of the original judgment remained effective. And, as hereinbefore indicated, that the Stipulated Judgment cannot be permitted to stand, if an equitable determination is to be made.

It is abundantly clear that a stipulated judgment such as we have here is no different from any other judgment, and that the validity and effect of such a judgment is likewise governed by the same rules as apply in other cases.

A judgment entered upon stipulation is none the less a judgment of the court because it was consented to by the parties.

Donovan v. Aetna Indemnity Co., 10 Cal. App. 723.

A consent judgment has substantially the same effect as any other judgment entered in ordinary course.

Harding v. Harding, 198 U.S. 317, 49 L. ed. 1066.

Certainly in the case of an ordinary judgment, no one would maintain that it was intended to leave intact certain portions of some previous judgment unless the later judgment so stated.

Therefore, unless there is some language to be found in the Stipulated Judgment clearly indicating that the parties intended to consider some part of the original judgment as still effective,

- 2 -

5834

the conclusion is inescapable that they did not so intend. This is precisely the situation as it here appears. <u>There is not a word or a phrase in the Stipulated Judgment which indicates that the parties intended or expected to be bound by any judgment other than the one to which they then agreed.</u> This, it seems, is a complete answer to the question propounded by this Court.

An examination of the Stipulated Judgment discloses that it is the same form as would have been the case if the parties had embarked upon and concluded a retrial of the action as directed by the Supreme Court of California. Denominated a "Stipulated Judgment", it proceeds to recite the fact that there had been a previous trial, that findings and judgment had been signed entered, that defendants had appealed from the judgment, and finally that, the Supreme Court of California had "reversed said judgment and directed a new trial upon certain issues designated in the opinion of said court * * * and said plaintiff and defendants having stipulated to the entry of the following judgment, Now, therefore, IT IS ORDERED, ADJUDGED AND DECREED that: ", etc.

From that point on, there is no indication that the parties had any interest other than their natural desire to avoid a retrial. They hoped (mistakenly) that the matter would then be set to rest. One would be required to draw on imagination alone, to conclude that either party intended or believed that any part of the preceding judgment was to remain operative or that their rights and obligations were to be measured by the terms of the previous judgment. Most certainly the Vails who had been successful in the appeal, count not have entertained any such idea. Nor did Santa Margarita.

Had either party intended that any part of the original judgment was to remain alive for any purpose, obviously they would have so stated. That they did not so state seems conclusive evidence that the Stipulated Judgment was expected to supercede the original judgment in total.

The Stipulated Judgment contains fourteen (14) separate sections purporting to describe in detail exactly what each party could and could not do, and how much water was to go to each. Although the provisions thereof seem highly inconsistent, contrary to certain findings, practically unintelligible in places, inequitable and unconscionable, the Stipulated Judgment left no part of the original judgment extant, but was a substitution therefore.

Now, for sake of clarification, consider what might have happened had the parties gone through with a new trial of the issues as directed by the Supreme Court, in place of entering the Stipulated Judgment.

Obviously it cannot be known what evidence would have been introduced upon this new trial or what the result would ultimately have been. Perhaps an entirely different situation might have been developed, in which event the law of the case as applied on appeal would have had no application.

Sichterman v. R.M. Hollingshead Co. 117 Cal. App. 504.

Of course, a judgment rendered by an appellate court with directions as to further proceedings is mandatory, and any act by the lower court contrary to directions contained in the remittitur, would be of no validity.

In re McGuth, 103 Cal. App. 572

And, on a reversal with directions to determine certain issues, the trial court would be bound by such directions and could not try other issues, or make any other dindings.

Kenny v. Kenney, 128 Cal. App. 2d 128,

Carter v. Superior Court, 96 Cal. App. 2d 388.

On a reversal and retrial, the sufficiency of evidence to sustain findings would have to be determined from a consideration of the evidence then introduced.

Cohen v. La Canada Land & Water Co., 151 680.

The point of the matter is that, notwithstanding the action

- 4 -

5836

of the Supreme Court in reversing the previous judgment and ordering a new trial on certain issues, neither party could be sure what the ultimate result might be and both were anxious to avoid the great expense of a new trial. And, although upon a retrial the trial court would necessarily be bound by the Supreme Court pronouncement, the parties by effecting a stipulated judgment were not bound by what had gone before, but could and did give their consent (mistakenly in this case) to a judgment deemed proper. So far as they were concerned the previous judgment was entirely defunct. No other conclusion is at all reasonable.

While it seems indisputable that Santa Margarita and Vail must have intended the Stipulated Judgment to entirely supercede the original judgment, it is likewise evident that their efforts resulted in a hotch-potch monstrosity which settled nothing. The Stipulated Judgment followed neither law nor equity; it totally ignored other water users and proceeded as though the two great ranches actually owned all of the river system, and could divide its waters as they saw fit. It required one of them (Vail) to produce for the use of Santa Margarita a specified amount of water regardless of conditions. It provided, contrary to California water law, that riparian waters might be used upon nonriparian lands. It employed abstruse and conflicting terminology. And it created a totally inequitable and unconscienable situation.

In dealing with the Stipulated Judgment and the many parties who are directly or indirectly affected thereby, a court is obliged to consider the matter as one complete picture rather than viewing it piecemeal. And so viewing it, it is wholly unconscionable and vitally affects every water user in the valley. One cannot, in justice, regard the rights of two large ranches who have divided the river between them, and in the same breath ignore the rights of many similar ranchers; - all must be treated equally and the rights of all must be measured by the same yardstick. This is precisely what was not done, either

in the original or in the Stipulated Judgment.

It will be remembered that in the original action the Vails requested the court to bring in all interested parties to the end that a complete adjudication might be made. This was refused. The water rights of these so-called "small owners" were seemingly considered of no importance. Likewise, the two intervenors, Playtor and Schloss, received but cursory attention and totally inadequate water allocations. If the Stipulated Judgment and original judgments stand, then these parties receive much less than other water users who did not submit their claims in the Santa Margarita-Vail litigation. Obviously, this is anything but equity.

## QUESTION NO. II.

CAN A STATE JUDGMENT EVER BE RES JUDICATA AND FINAL AS INVOLVING WATER RIGHTS?

The answer to this question is, undoubtedly, that such a judgment determining water rights, can never be deemed final. Like a custody or support decree in a divorce case, it is subject to review from time to time in order that the decree may conform to whatever change of conditions have taken place. Perhaps the husband may then be making more or less money than formerly; perhaps one party or the other may have subsequently become a proper or improper person to have custody of a minor child. The matter simply cannot be foreclosed; neither court or parties in the original action can look into the future and determine what conditions may later exist.

The same thing is equally true in reference to a decree attempting to determine water rights. In the instant case the parties had no clairvoyant power to look into the future; - had they been able to envisage the developments in their valley and the different and greatly increased usage of water, it is logical to assume that the Stipulated Judgment either would not have been signed or that it would not have contained the same provisions.

In this connection it is well to remember that no court

- 6 -

passed upon either form or substance of this instrument. The signing of the Stipulated Judgment was a mere perfunctory act of the judge who evidently took the position that if the parties were satisfied, the court should be likewise satisfied. In view of its unconscionable provisions, this should never have been done. It is also well to note that the present action for declaratory relief instituted not by the Vails but by the United States is on the equity side of the court; that for the first time in the history of this litigation, all of the interested parties are before this Court seeking the protection which was denied them in the first action. If their rights are to be adjudicated, then obviously the entire situation so far as the Stipulated Judgment is concerned, becomes impossible. There can be no one-thirds division as therein decreed.

Even a superficial contemplation of the situation here existing, will serve to indicate that if the California law as to riparian rights is to be followed, - and this is the only equitable system, - then it must be applied as to every riparian owner, not to some of them. Otherwise the entire scheme of apportioning water becomes a mere hit-or-miss proposition, and no system at all. The entire law of riparian water rights then becomes a complete nullity.

Land and water conditions do not remain static for twenty years or at all. Therefore, a judgment, whether ordinary or stipulated, can never be deemed to final or res judicata. As conditions change, so must its provisions be changed or abrogated to conform with a presently existing factual situation. We have in this case an outstanding example of that self evident fact.

As was said in <u>Parker v. Swett</u>, 188 Cal. 474, "The future cannot be foreseen". While the Supreme Court there held that certain findings as to riparian status were res judicata, it saw fit to modify parts of the judgment, saying "We do not think it was within the province of the court thus to limit the riparian use of water" to certain seasons. Such use "should be limited to such

- 7 -

5839

quantity as may be reasonable and just <u>when taken in connection with rights and needs of other riparian tracts</u>". This is precisely what was <u>not</u> done either in the original or stipulated judgments.

"A judgment determining that at a given time the parties (claiming merely as riparian owners) are entitled to appropriate waters in certain proportions <u>is not necessarily conclusive in a subsequent action</u>; for the facts upon which rests the determination * * * may be materially different at the second trial * * * the proportions to which they may respectively be entitled may vary from time to time, in accordance with the facts existing at the respective times".

<u>Los Angeles v. Baldwin</u>, 53 Cal. 469, 474.

(Rhodes, J., concurring opinion.)

"The apportionment is decreed in equity to afford equality on the facts existing at the time; on the circumstances then existing. Where a circumstance is changed so that the decree no longer represents equality and reasonable division, then a readjustment must be had under the new conditions."

Wiel, "Water Rights in the Western States, p. 824, citing, <u>Wiggin v. Muscupiabe Land & Water Co.</u>, 113 Cal. 182.

Even though, as in the present case, a decree has been entered by consent, and whether or not a power to modify was reserved therein, a court of equity has the power to modify it "in adaptation to changed conditions * * * by force of principles inherent in the jurisdiction of the chancery". While this was not a water case but a proceeding under anti-trust laws, it seems clear that this is the law as well in a United States Court as in a California tribunal.

<u>United States v. Swift & Co.</u>, 286 U.S. 106, 114, 76 L. ed. 999, 1005.

Inasmuch as a consent judgment is based entirely upon agreement, facts showing the absence of any real consent, such as fraud or mistake, are grounds for vacating it.

- 8 -

5840

Kaw Valley Drainage Dist. v. Union Pac. R. Co.,
163 Fed. 836.

A compromise judgment may be set aside where although a party had agreed to its terms it had not been submitted to him according to a previous arrangement, where he did not understand the scope and effect of the matter.

Kelsey Co. v. Spears, 37 Cal. App. 27.

A consent judgment cannot be vacated in part but must be set aside in toto if circumstances warrant such action.

III Freeman on Judgments, p. 2779.

That the presently existing circumstances do warrant such action has been previously discussed in certain memoranda presented to this Court to which reference is hereby made. The Vail Company, for itself and all other interested parties, urges that no other court of action is open save that of enjoining enforcement of both the original and stipulated judgments entered in the first action.

There is inherent power to modify or vacate a permanent preventative injunction on a showing that there has been a change in the controlling facts on which the injunction rested, or that the law has been changed, modified or extended, or where the ends of justice would be served, and this regardless of whether it is termed a preliminary or a permanent injunction.

Union Interchange Inc. v Savage, 52 A. C. 619.

See, also, 139 A. L. R. p. 443.

It is well established in California and elsewhere that the law of riparian rights does not contemplate that the riparian owner shall be entitled to any specific quantity, and that what is a reasonable amount of water which such a riparian owner may use varies not only with the circumstances of each case, but also varies from year to year and season to season. Among other cases so holding is

Prather v. Hoberg, 24 Cal. 2d 549.

QUESTION NO. III.

- 9 -

5841

### WHAT DOES THE STIPULATED JUDGMENT MEAN?

That is, perhaps is, the most difficult to answer of all the questions posed by this Court. Difficult, because of the various inconsistencies contained within the four corners of the instrument - a matter previously commented upon. The more one reads this Stipulated Judgment, the more impossible it seems. Actually, the only thing which is clear is that Santa Margarita and Vail, wearied and impoverished by the long litigation between them, desired to quickly settle the matter and have it over. It is now apparent that their efforts were shortsighted, that they were completely mistaken as to existing facts and as to their legal rights and duties, and that the results of their negotiations became a focal point for trouble and further dissention. This is not merely the Vail Company's contention; it is an established fact.

The Stipulated Judgment does not coincide with findings previously made and referred to in that judgment; it does not recognize either law or fact; it does not consider the rights of other water users and it fails to recognize that a change in land and water conditions would necessitate a change in its provisions. How can a stipulated judgment with these failings and many others, mean anything at all?

The situation presented here is not fundamentally different from that which led the California Supreme Court to say in

Beronio v. Ventura County Lumber Co., 129 Cal. 232,

that if upon the face of a record, anything is left to conjecture as to what was necessarily involved or considered, there is no estoppel when it is pleaded, and nothing conclusive in it when offered in evidence.

In the place of using the same or synonymous terms in different parts of the Stipulated Judgment, other and entirely different phraseology is loosely employed so that in the end the reader is left in considerable doubt as to exactly what was intended. As

- 10 -

5842

previously pointed out in the Vail Company's Outline of Proof, (Page 23, et seq.) under the Stipulated Judgment, the rights of the respective parties cannot be adequately determined.

Examples of this inadequacy are many. Vail is given 1/3d of the total stream flow "when not artificially diverted or abstracted" (Sec. 3), but there is absolutely nothing in the judgment which indicates who, what or when, in reference to such diversions and abstractions. Does it refer to abstractions Vail only or to abstractions and diversions of other persons above the Vail Ranch, of which there are many, as has been developed in the evidence of the present action.

Sec. 8 of the Stipulated Judgment refers to "total normal flow", although later on in such section the term "total flow" of the stream is used. And in Sec. 9, Vail is given one-half the "surface flow" at Station 6 or 3, whichever is greater, although the total normal flow at Station 6 is always greater than at Station 3.

Again, Sections 2 and 3 provide that the parties "take and use" their respective shares, but in Section 9, The Vails' one-third is deemed to be "one-half the surface flow" at Stations 6 or 3, whichever is greater, "pumped and/or diverted" from subsurface and/or surface waters" at points upstream". The terms "take and use" are certainly not synonymous with "pumped and/or diverted". If the parties meant "net use", then return flow of irrigation waters which can be as great as 40% must be considered, but the Stipulated Judgment does not clarify these matters.

Nor is this all by any means. Section 11 requires that the Vails maintain a 3 sec. ft. flow at Station 3 regardless of conditions. As previously pointed out in the Outline of Proof, this highly inequitable requirement means that Vail in dry periods may have to pump or divert for this purpose waters to which it is equitably not entitled, and which will deprive other water users of their just

- 11 -

5843

portions. This situation, which again ignores all users save Santa Margarita and Vail, and requires Vail to do the impossible, cannot be overlooked in making a survey of the unconscionable situation created by this Stipulated Judgment, - ambiguous in terms and highly inequitable in operation.

The 3 cubic second flow poses two serious matters either one of which should in and of itself require the abrogation of the Stipulated Judgment.

1. Could not the Vail Company under the stipulated judgment, if they wish pump from out of the Murrieta basin 3 cubic second feet? Surely if this were done every water user in the Murrieta Valley would be affected.

2. Is the extraction of water as required under the stipulated judgment to comply with the three cubic secondfeet provision <u>a reasonable and beneficial use of riparian waters?</u> We think not, this water is contributed by all of the parties whom have rights in common to the use of water upstream from gaging station No. 3. Further in view of the government's own evidence and the rulings which the Court made upon pre-trial of this case it is obvious that the extraction of the 3 cubic second feet is not a proper riparian use.

The Stipulated Judgment does not even attempt to solve the problem of how Vail is to obtain its one-third portion of the entire stream when much of this istaken by ranchers above the Vail property. Nor does it ever consider that important changes may take place which will upset any then existing balance. The record is replete with evidence that devastating changes <u>have</u> taken place during the years since the Stipulated Judgment was entered. Although Vail must guarantee a 3 sec. ft. flow of water, Fallbrook's pumping plant takes up to 4 sec. ft. of water. This is but one of many unequivocal indications that the Stipulated Judgment cannot stand.

In an equitable action, the final determination is and must be governed by the circumstances as they then exist.

- 12 -

5844

<u>Erskine v. Upham</u>, 56 Cal. App. 2d 235.

And the matter of water rights in California is a proper subject of equity jurisdiction in respect to which a court is possessed of broad powers.

<u>Burr v. Maclay Rancho Water Co.</u>, 154 Cal. 428

IV.

DRAFT A DECREE AFFECTING THE VALLEY, ASSUMING THAT THE JUDGMENT AND THE STIPULATED JUDGMENT REMAIN.

This again seems a manifest impossibility since it is the profound belief and the adament position of the Vail Company that the Stipulated Judgment must not be enforced. Otherwise, it will be absolutely impossible for this Court to make any equitable disposition of the available water.

The situation as to all water users in the valley, and what will happen if this Court accepts the Stipulated Judgment, is aptly stated in the Supplemental Brief of Defendant Erle Stanley Gardner (page 10) when he says:

"The minute this Court, or any other Court, gets placed in a position where it tries to administer certain riparian rights under the riparian law of this state, after setting aside any stipulated amount to any user, which amount has been fixed arbitrarily and not in accordance with the principles of law, the Court has upset the natural balance of the watershed so that the Court simply can't do equity as to the waters which remain. <u>And if the waters so set aside amount to three-thirds of the flow in the stream, what is there left to apportion?</u>" (Emphasis added.)

Since all of the parties are now before this Court, this is the time to accord them that equitable treatment to which they are entitled under the California law as to riparian acreage, and this simply cannot be done without abrogating the previous judgments.

Once more quoting from the Erle Stanley Gardner Memorandum, "This Court can't determine the rights of this defendant or any other

- 13 -

5845

defendant under the rules of equity so long as it starts out with the premise that any given amount of riparian water is not subject to equitable riparian division". (Page 12).

"The Stipulated Judgment in the Vail-Santa Margarita case is a tumor in the present situation, the importance of which is being minimized as much as possible at the present time but which can grow into a malignancy which will destroy the equitable division of all riparian water".

For the reasons heretofore given, this Court's decree will necessarily cover the following points:

1. A determination that this Court has full and complete jurisdiction to deal with the entire water situation in the Temecula-Santa Margarita water basin.

2. A determination of the riparian acreage of each and every defendant together with computation of their irrigable acreage, and of their water rights according to the laws of California, applying the same yardstick to each and every defendant without regard to the provisions of either the original judgment in the Santa Margarita v. Vail action, or the Stipulated Judgment later entered therein.

3. A clear and concise determination of all water rights in language which will admit of no misunderstanding, and which will once and for all adjudicate the correlative water rights of all parties without discrimination.

4. An order restraining and enjoining the enforcement of any of the provisions contained in either the original judgment of the Stipulated Judgment entered in the Santa Margarita v. Vail action.

5. A determination of all ground water rights as well as those pertaining to surface waters within the watershed.

6. A determination of all appropriative, prescriptive or other water rights, if any, and the effective dates thereof.

7. A determination that the United States of America stands in no different or better position than any other riparian owner.

8. A statement that this Court retains continuing jurisdiction of this cause for the purpose of making whatever later modifications in the decree may be required by reason of changing conditions.

Respectfully submitted,

*George Stahlman*
George Stahlman

*Earle K. Stanton*
Earle K. Stanton

Attorneys for Vail Company