George Stahlman
Rt. 1, Box 235
Fallbrook, California
RAndolph 8-2331
Earle K. Stanton
Attorneys for Vail Co.

FILED
FEB 2 - 1960
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
   Plaintiff,
vs.
FALLBROOK PUBLIC UTILITY DISTRICT, et al.,
   Defendants.

No. 1247-SD-C

SUPPLEMENT TO MEMORANDUM - BY VAIL CO. -
RESPONDING TO QUESTIONS POSED BY THE COURT
RE STIPULATED JUDGMENT AND HERETOFORE FILED
BY VAIL CO. ON JANUARY 29, 1960.

5850

1  With remarkable inconsistency, the United States, at
2  times relying upon the more favorable aspects of the Stipu-
3  lated Judgment, and at other times seeking to couple it with
4  the original judgment, has said that the original judgment
5  was the "Fountainhead of the Stipulated Judgment", and that
6  "the latter was derivative of the former". (Questions Memo,
7  pp. 1, 2.) Then follows an attempt to link up the wording
8  and provisions of the two judgments; the two judgments,
9  counsel affirms, employ "Virtually identical language."

10  This furnishes no inference that the parties intended
11  to leave intact some portion of the original judgment. Quite
12  obviously, the entry of the original judgment, the appeal,
13  the reversal for a new trial on certain issues were the causa-
14  tive factors which led up to the making of the Stipulated Judg-
15  ment. To that extent, and that only, are the terms "fountain-
16  head" and "derivative" applicable. And it is, of course, quite
17  natural that some of the identical or similar language should
18  have found its way into the Stipulated Judgment. Indeed, it
19  would have been difficult to employ any other language.

20  One thing, however, is certain. Notwithstanding all the
21  indefinite and conflicting language which attempted to state
22  in great detail what were the rights of the parties, absolutely
23  nothing is to be found which indicates either expressly or by
24  implication that the parties expected to be governed by any-
25  thing other than the Stipulated Judgment. It was a complete
26  substitution for the original judgment, - not an addenda or
27  supplement thereto.

28  However, as treated elsewhere in this Memorandum, although
29  it seems obvious that the parties intended the Stipulated Judg-
30  ment to settle their water problems, such judgment can never
31  be considered as res judicata in view of the drastically
32  changed conditions which now exist, and in view of its uncon-
scionable and unworkable provisions.

- 1 -

5851

The <u>Los Angeles</u> v. <u>Baldwin</u> decision has been cited by the United States with the apparent idea that it would justify this Court in declaring the Stipulated Judgment res judicata and a complete bar to the contentions of the Vail Company. This is incorrect.

That case and others following it, are authorities in favor of the Vail contentions, not against them. What the Supreme Court in this early Baldwin case decided was that since the factual situation there had <u>not</u> changed since the former judgment was entered, that judgment should stand. <u>But that Court made it quite plain that such bar by a former judgment would only operate "while these conditions continue unchanged"</u>. And in our present case, the evidence clearly shows that land and water conditions have completely changed, so that the Stipulated Judgment and the original judgment are no more applicable.

The doctrine that a judgment determining water rights cannot be deemed res judicata where conditions have changed is by no means peculiar to the early case of <u>Los Angeles</u> v. <u>Baldwin</u>, above cited; the same doctrine is enunciated in the later California decision: <u>Tulare Irrigation Dist</u>. v. <u>Lindsay-Strathmore Irr. Dist</u>., 3 Cal. 2d 489.

Following the Tulare case, is the decision in <u>Temescal Water Co</u>. v. <u>Dept. of Public Works</u>, 44 Cal. 2d 90, 106, where the Supreme Court said: "A judicial determination as to existing appropriative and riparian rights <u>rests upon then present uses which may be quite different at a later time</u>, and a determination as to the future availability of water necessarily can be only an estimate".

It is well recognized that "What is a reasonable amount (of riparian water) varies with the circumstances of each particular case, <u>and also varies from year to year</u>, for the amount which might be reasonable in a season of plenty might be manifestly

- 2 -

5852

1. unreasonable in a season of drought". Pabst v. Finmand,
2. 190 Cal. 124, 129.
3.     And, as mentioned in the Vail Company's previous mem-
4. oranda, a suit in equity such as the present one instituted
5. by the United States is proper procedure for the purpose
6. of dealing with such water rights. Carlsbad v. San Luis Rey,
7. 78 Cal. App. 2d 900, 911.

Throughout the Stipulated Judgment, technical, semi-technical, and equivocal terms are used without being defined and with nothing in the entire instrument to indicate precisely what the parties meant or intended. The fact is, apparently, that both litigants were so very anxious to close the lengthy and expensive litigation that but scant attention was given to terminology. Rather than being a connected and comprehensive determination, it seems merely a collection of isolated and disconnected paragraphs without proper integration.

There are many examples of this important failing. Although the Stipulated Judgment, like the original judgment, employs the term "ground water", it completely neglects to define that term, nor does it indicate what ground water is meant or what limitations are to be placed thereon. Yet this was and is a highly important matter to both parties and to every person in any way interested in the water problems of the valley.

As elsewhere pointed out both by the Vail Company and by other defendants, the Stipulated Judgment entirely neglected to take into serious consideration the use of water by persons other than the two large ranch owners, and the natural effect of such increased use upon the water which would then be available to Vail and Santa Margarita. This was not merely a selfish attitude, entirely out of line with California water laws; it was obviously a shortsighted view which was bound to, and did, act as a boomerang, highly injurious to the very parties who set it in operation.

The matter of ground water storage and use, depletion by pumping, yearly and seasonal variations and changes in conditions, are all matters of supreme importance which were apparently given no consideration. The parties to the Stipulated Judgment seems to have proceeded upon the assumption that there would be no changes, and that conditions would remain static and unchanged forever. All of which indicates how impossible it is to attach any significance to the Stipulated Judgment. 5854

Although the parties appear to have attached extraordinary significance to the flows at Stations 6 and 3, it has been demonstrated by expert evidence that these are inadequate and indefinite measuring sticks. If they ever were adequate criterions which is to be doubted, they certainly are not under presently existing conditions.

Many other matters are not mentioned or taken care of by the provisions of the Stipulated Judgment, such as evaporation, return flow of irrigation water, etc., matters of considerable importance. The reuse of ground water was apparently not contemplated.

Although either party was authorized to erect dams, and certain rights were to be given up in the event that Vail should do so, there is no provision or indication as to what would happen if the other party should build a reservoir between Stations 6 and 3, a situation which would naturally alter the status quo.

But whatever might happen, be it the act of God or man, _Vail was obliged to maintain a three cubic foot per second flow even though it might eventually result in a water bankruptcy._ To attempt to give meaning to such a document as the Stipulated Judgment, or to work equity in connection therewith, seems completely impossible.

Counsel for the United States appear to argue that the Vail Company by reason of its position above the Camp Pendleton area is in complete control of the water system and that this Court should therefore force Vail to supply needed water for Pendleton. The statement, of course, refutes itself. Far from being in control of the situation, the Vail Company is largely at the mercy of the many ranchers above the Vail Ranch, whose large diversions and abstractions have created chaos in the water basin and rendered impossible the operation of the

1 Stipulated Judgment.

2   These changes in conditions, particularly the presently
3 known extension of ground water basins to considerable areas
4 beyond what has been referred to as the younger alluvium and
5 to which the former judgment limited the ground water of the
6 river system, again illustrate the inadequacy and inappli-
7 cability of the judgment provisions.

Respectfully submitted,

*George Stahlman*

*Earle K. Stanton*

Attorneys for Vail Co.