MUSICK, PEELER & GARRETT
ATTORNEYS AT LAW
621 SOUTH HOPE STREET
LOS ANGELES 17, CALIFORNIA
MADISON 9-3322

Attorneys for Defendant,
James Oviatt

FILED

MAR 1 - 1960

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,
vs.
FALLBROOK PUBLIC UTILITY DISTRICT, et al.,
    Defendants.

Civil No. 1247-SD-C

POINTS AND AUTHORITIES OF DEFENDANT, JAMES OVIATT

PRELIMINARY STATEMENT

It is the purpose of this Memorandum to discuss the riparian, prescriptive and appropriative rights of defendant, James Oviatt, as established by the evidence adduced at the trial of the above entitled cause (Transcript, Volumes 104, 105 and 106). It will also discuss the issues of the suit pertinent to such defendant as summarized by the Court (Transcript, 12071, et seq.).

6181

# I

## THE REAL PROPERTY OF DEFENDANT, JAMES OVIATT, IS RIPARIAN IN CHARACTER.

Riparian land is land within the water-shed, and touches the water course.

<u>Anaheim Union Water Company v. Fuller</u>
(1907) 150 C. 327

<u>Rancho Santa Margarita v. Vail</u> (1938) 11 C. (2d) 501

Rancho Ramona and the Oak Grove property of the defendant, James Oviatt, are within the water-shed of Lancaster and Temecula Creeks, respectively, and abut such creeks (Transcript, 11859-61) and are therefore riparian in character.

6182

## II

THE EVIDENCE DISCLOSES NO BASIS FOR ANY DECREE LIMITING THE WATER DIVERSIONS OF THE DEFENDANT, JAMES OVIATT, FROM THE SANTA MARGARITA STREAM SYSTEM.

A. *The evidence has established that the defendant, James Oviatt, is not able to obtain his pro rata share of the water of the Santa Margarita stream system, as a riparian owner.*

The number of acre feet of water required for beneficial purposes on the irrigable portions of the property owned by defendant, James Oviatt, are set forth in the Oviatt Exhibit A (page 55). However, due to the decreased water supply this defendant has been able to irrigate only a small percentage of his riparian lands, and his irrigated acreage has decreased from 145 acres in 1945 to 65 acres in 1959 (Tr. 11797-8). In contrast to this fact, the evidence establishes that the amount of water available to the riparian owners downstream from the property of this defendant has been increased. Thus the Vail Exhibit N shows that the gross irrigable property of the Vail Ranch in acre feet increased from 5452 in 1957, to 9247 in 1958.

-3-

The stringent water problems of defendant, James Oviatt, are also in contrast to the comparatively generous quantities of water available to plaintiff, as set forth in Exhibit AD. Such Exhibits clearly reflect that riparian owners downstream from the property of this defendant are able to obtain a far greater percentage of their proportionate share of the waters of the Santa Margarita stream system than has the defendant, James Oviatt.

> B. <u>The evidence has established that the water diversions of the defendant, James Oviatt, do not have any material effect on the water of the Santa Margarita stream system available to plaintiff and other riparian owners downstream from said defendant.</u>

It is submitted that the evidence in support of the foregoing proposition is conclusive. Plaintiff's own witness, Colonel Allen C. Bowen, testified (Tr. 11664-66) that there is an impervious barrier or dike between Rancho Ramona and the Naval Enclave. This consists of the so-called dam at the head of Nigger Canyon on the Vail property.

As stated by the witness (Tr. 11665-66):

> "A. It consists of a concrete dam tied into the foundation, to bedrock at foundation, and at the abutment. It cuts off any underground flow that might have existed in the past there and limits the flow, since it was constructed to releases by the Vail Company."

-4-

6184

In view of such an impervious barrier or dike between the Naval Enclave and the property of the defendant, James Oviatt, any diversion of water by the latter defendant would not materially affect plaintiff at the Naval Enclave.

Moreover, the witness, Max Bookman, testified (Tr. 11872) that the diversion of waters by the defendant, James Oviatt, have only a minor effect on the availability of water to those downstream from his properties. He further testified that the uses of water upstream by Mr. Oviatt and riparian owners upstream from the Vail reservoir were of minor consequence to the availability of the amount of water that would occur below such point. He testified that by the word "minor" he meant "infinitesimal." (Tr. 11874)

It follows that there can be no basis for a decree of this Court limiting the diversion of water by the defendant, James Oviatt, from the Santa Margarita stream system.

## III

**IF THE COURT SHOULD FIND THAT ANY OF THE DIVERSIONS OF WATER BY DEFENDANT, JAMES OVIATT, INVADE ANY RIGHT OF PLAINTIFF, THE COURT MUST ALSO FIND A PRESCRIPTIVE RIGHT IN SAID DEFENDANT TO CONTINUE SUCH DIVERSIONS.**

If the Court should find that any of the diversions of water from the Santa Margarita stream system by the defendant, James Oviatt, upon riparian lands, invade any right of plaintiff, or other downstream riparian owners, it is submitted that the Court must also find a prescriptive right in said defendant to divert all of the water of Lancaster Creek onto Rancho Ramona and all of the water of Temecula Creek onto the Oak Grove property of said defendant.

If the Court should find that any of the diversions of the water of the streams by defendant's predecessors for a period greater than the statutory period were upon non-riparian lands, then a prescriptive right to divert such waters became vested in such parties.

Horst Company v. Tarr Mining Co. (1917)
174 C. 430

Assuming, as we believe to be the case, that the properties of defendant, James Oviatt, are riparian in character, it would appear that the facts of the instant suit bring the diversions of defendant, James Oviatt, and his predecessors

within the principles of those California cases heretofore referred to in the Memorandum heretofore filed with this Court, on behalf of said defendant, which hold that the use of all, or substantially all, of the water of a stream by an upper riparian owner upon riparian lands under circumstances where actual knowledge must be imputed to the lower riparian owners, establish a prescriptive right in the land owner making such diversion.

Pabst v. Finmand (1922) 190 C. 124, 130

Morgan v. Walker (1933) 217 C. 607, 616

In Silva v. Hawn (1909) 10 C.A. 544, 552, the Court said:

"I do not understand that the element of 'acquiescence' is to be shown independently of knowledge, in the common acceptation of that term; i.e., that an affirmative permission or consent be given in addition to knowledge of the hostile claim of right. If the owner has the knowledge which the law requires shall be imputed to him, and takes no steps to prevent the adverse claimant from his continuous enjoyment of the right claimed by him, such owner will be deemed to have acquiesced in such use. This court had occasion in a recent case to consider the point, in which the rule was stated. It was there said: 'No particular act or series of acts is necessary to be done in order that the possession may be notorious, but any visible act which clearly demonstrates an intention to claim ownership and possession will be sufficient to establish claim of adverse possession. Such claim may be

-7-

6187

made out by visible acts, without any assertions by word of mouth. When the use is not secret or clandestine, but open, visible and notorious, the presumption of knowledge follows. The burden is in the first instance upon the plaintiff to prove his title by prescription. After showing the continuous occupancy and use of the water as though he were the owner, for more than five years, he establishes a prima facie case. It then devolves upon the defendant to show that the use was permissive or without the knowledge of the defendant.' (Gurnsey v. Antelope Creek, etc. Co. 6 Cal. App. 387 [92 Pac. 328].)"

The foregoing cases have special applicability to the facts of the instant suit, where diversions of all of the water of Lancaster Creek were made onto Rancho Ramona by the defendant, James Oviatt, and his predecessors, and diversions of all of the water of Temecula Creek were made onto the Oak Grove property of the defendant, James Oviatt, and his predecessors.

Each of the witnesses who are familiar with the irrigation system of Rancho Ramona, which diverted all of the waters of Lancaster Creek onto the Ranch, testified that such irrigation system terminated at the Vail property line.

Each of such witnesses testified that except during flood periods all of the waters of Lancaster Creek were diverted onto Rancho Ramona for the beneficial uses of irrigation. These diversions obviously began prior to 1919 (Tr. 12042) and it is apparent that beginning with the completion of the irrigation system in such year, the diversions were continuous thereafter.

        The open and notorious character of the diversions is emphasized by the protest of a lower riparian owner, Mr. Mahlon Vail (Tr. 12022) in 1945 that Rancho Ramona was taking Vail water.

        It is further emphasized (Tr. 12022) by the fact that evidence concerning the water needs of Rancho Ramona was adduced in the case of Rancho Santa Margarita v. Vail, supra, (1938) 11 C. (2d) 501, 516-517, to which plaintiff's predecessor was a party. In that case the Court found that the normal flow of water of the Temecula-Santa Margarita River was not sufficient to supply all of the riparian needs of all of the riparian lands of either of the parties to the action, and that there was only enough water available for the irrigation of a portion of their riparian lands, and for the uses thereon which were most valuable and profitable.

        The present irrigation system was installed in 1919 (Tr. 12034) and was a further development of an open ditch system existing prior to said date (Tr. 12042).

        The witness, Amos Welch, not only installed the existing system, but also saw the property in 1926, when it was owned by Mr. Hiram Brinkerhoff (Tr. 12045) and observed the diversion of all of the water from Lancaster Creek between 1930 (Tr. 12047) until two or three months after the land was sold to James Oviatt (Tr. 12062-3). He testified that the ranch diverted all of the water of Lancaster Creek, which consisted of 85 to 105 miner's inches (Tr. 12663).

        Similarly, Harold Brinkerhoff testified (Tr. 11702) that all of the water of Lancaster Creek was diverted between 1924 or 1925 and 1931 or 1932, when the ranch was owned by his father, Mr. Hirman Brinkerhoff.

6189

The diversion of all of the waters of Lancaster Creek during the 1930s was also confirmed by the witness, Mr. Dave Welsh, (Tr. 11746, et seq.) and by the witness, Mr. Fred Bass (Tr. 11737).

The witness, Max Bookman, testified that Lancaster Creek had a capacity of 300 miner's inches (Tr. 11850). He also testified that the amount utilized on Rancho Ramona for the beneficial purposes of irrigation (Tr. 11855) was 140 acre feet in 1951, 160 acre feet in 1952, and 165 acre feet in 1953.

The defendant, James Oviatt, testified (Tr. 11987) that in 1944, 87 inches of water was diverted continuously.

The amount of water utilized on the Rancho Ramona property for the beneficial purposes of irrigation is the irrigated acreage multiplied by the irrigation requirements in acre feet (Exhibit A, page 55) multiplied by a ten per cent project loss. Thus in 1947, 205 acres were irrigated (Tr. 11798). In addition, a very substantial volume of water was required for the cattle, hogs, turkeys and horses maintained on the property (Tr. 11981).

The history of the diversion of Temecula Creek upon the Oak Grove property of defendant, James Oviatt, is substantially similar.

The witness, Chalma Bailey, testified (Tr. 11761, et seq.) to the diversion of all of the water of Temecula Creek upon such property, beginning in about 1887, and during all of the time he owned the property, beginning in about 1928. All of the water of the Creek was continuously diverted for the beneficial uses of irrigation. This usage was continued during the ownership by Mr. James Oviatt (Tr. 11966-8).

The foregoing diversions were obviously under circumstances where actual knowledge must be imputed to the lower riparian owners. In the words of the Court in the case of Pabst v. Finmand, supra, (1922) 190 C. 124, 130:

" . . . the circumstances are such, as for instance the use of all of the water of the creek, that such party must be presumed to have known of the adverse claim." (190 C. 130)

As stated by the Court in Silva v. Hawn, supra, (1909) 10 C.A. 544, 552:

"When the use is not secret or clandestine, but open, visible and notorious, the presumption of knowledge follows. The burden is in the first instance upon the plaintiff to prove his title by prescription. After showing the continuous occupancy and use of the water as though he were the owner, for more than five years, he establishes a prima facie case. It then devolves upon the defendant to show that the use was permissive or without the knowledge of the defendant." (10 C. A. 552)

We submit that the record clearly establishes that all of the water of the respective Creeks was diverted to the pertinent properties for beneficial uses, and that such taking was open, notorious and under claim of right. Such usage therefore establishes a prescriptive right in defendant, James Oviatt, to continue the diversion of all of the waters of Lancaster and Temecula Creeks onto Rancho Ramona and the Oak Grove property.

-11-

## IV

THE CHANGING OF THE DIVERSION POINT FROM ONE POSITION ON THE STREAM TO ANOTHER BY THE PREDECESSOR OF DEFENDANT, JAMES OVIATT, DOES NOT DEFEAT THE RIGHTS OF PLAINTIFF.

The witness, Chalma Bailey, testified that he first observed the diversion from Temecula Creek onto the Oak Grove Ranch in 1887, when the Oak Grove Ranch was owned by Michael Levy (Tr. 11759-63).

He also testified (Tr. 11764) that he changed the location of the ditch in 1928 to the Wentworth property (Tr. 11781).

It is apparent that the case is thus within the rule that the point of diversion may be changed by the one having the right to take water, whether the taking is by virtue of riparian ownership appropriation or prescriptive ownership.

San Luis Water Co. v. Estrada (1897) 117 C. 168
Perry v. Calkins (1911) 159 C. 175
Southside Improvement Company v. Burson (1905) 147 C. 401
Cheda v. Southern Pacific Company (1913) 22 C. A. 373
Barton v. Riverside Water Company (1909) 155 C. 509
California Water Code, Section 1706

-12-

6192

V

### DEFENDANT, JAMES OVIATT, HAS THE RIGHT TO DIVERT THE WATERS OF TEMECULA CREEK FROM DIVERSION POINTS OFF HIS PROPERTY

The Temecula Wentworth diversion and the Oviatt Commings diversion appear to be governed by well settled principles of California water law.

If the diversion is in accordance with the agreement between the defendant, James Oviatt, and/or his predecessor and the adjoining land owner, such diversions are within the principle that where adjoining land owners enter into an agreement pursuant to which a diversion is made on the land of one party for the benefit of both ranch owners, and the parties operate under this agreement for a period of time in excess of the statutory period, and under a claim of right, and in the manner and for the purposes for which it was installed, a prescriptive right is established to the diversion facilities in the adjoining owner.

Honsberger v. Durfee (1942) 55 C.A. (2d) 68

If such diversions were not in accordance with an agreement between such parties, they are within the principle that if the party making the diversion shows continuous occupancy of a diversion facility as though he were the owner, for more than the statutory period of five years, he establishes a prima facie case of a prescriptive right.

Silva v. Hawn, supra (1909) 10 C.A. 544, 552

-13-

6193

## VI

### APPROPRIATIVE RIGHTS VESTED IN THE PREDECESSORS OF DEFENDANT, JAMES OVIATT, AS OF THE DATE OF THE FILING OF NOTICE.

The right in the Kohler Canyon diversion vested in the predecessor of defendant, James Oviatt, in 1913.

The witness, Chalma Bailey, testified (Tr. 11769) with respect to the filing on the Kohler Canyon diversion on April 8, 1913 (Defendant's Exhibit AA). He testified that the water was then piped two miles onto his property, which is the Oak Grove property of defendant, James Oviatt.

It follows that under California law the rights of defendant's predecessor vested as of the time of the filing of the instrument which is defendant's Exhibit AA.

<u>Inyo Consolidated Water Co. v. Jess</u>
(1911) 161 C. 516, 519;
<u>Merritt v. City of Los Angeles</u> (1912)
162 C. 47, 50-51
<u>Yuba River Power Co. v. Nevada Irrigation</u>
<u>District</u> (1929) 207 C. 521, 527

Respectfully submitted,

MUSICK, PEELER & GARRETT

By ___JESSE R. O'MALLEY___
Attorneys for Defendant,
James Oviatt

-14-

6194

STATE OF CALIFORNIA    )
                       ) ss
COUNTY OF LOS ANGELES  )

      I, the undersigned, say: I am and was at all times herein mentioned a citizen of the United States and employed in the County of Los Angeles, over the age of eighteen years, and not a party to the within action or proceeding; that my business address is 621 South Hope Street, Los Angeles 17, California; that on February 29, 1960, I served the within Points and Authorities of Defendant, James Oviatt, on the following named persons, by placing a true copy thereof in an enveloped, addressed to each as follows:

    STANLEY MOSK, ATTORNEY GENERAL and
    FRED GIRRARD, DEPUTY ATTORNEY GENERAL,
    Sacramento, California;

    SACHSE AND PRICE,
    1092 South Main Street,
    Fallbrook, California;

    BEST, BEST & KRIEGER and
    JAMES H. KRIEGER,
    4200 Orange Street
    P. O. Box 1028
    Riverside, California;

    WILLIAM H. VEEDER, Special Assistant to the Attorney General,
    Counsel for Plaintiff, United States of America,
    U. S. Customs and Court House
    San Diego 1, California;

```
        GEORGE STAHLMAN
        Counsel for Defendant,
        Vail Company, Inc.

        Route 1, Box 235

        Fallbrook, California


        GEORGE G. GROVER
        CLAYSON, STARK & ROTHROCK

        Security Bank Building

        Corona, California
```

and by then sealing said envelopes and depositing the same with postage thereon fully prepaid, in a mail-box regularly maintained by the Government of the United States in Los Angeles, California, where is located the offices of the attorneys for the persons by and for whom said service was made.

That there is delivery service by United States mail at the places so addressed, and there is a regular communication by mail between the place of mailing and the places so addressed.

DOROTHY WALKER<br>
Dorothy Walker

Subscribed and sworn to before me this 29th day of February, 1960.

LEONE M. RIEGEL
Leone M. Riegel

Notary Public in and for said County and State

My commission expires July 12, 1960