**FILED**

MAR 1 1960

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____
DEPUTY CLERK

MUSICK, PEELER & GARRETT
ATTORNEYS AT LAW
621 SOUTH HOPE STREET
LOS ANGELES 17, CALIFORNIA
MADISON 9-3322

Attorneys for Defendant,
James Oviatt

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.

FALLBROOK PUBLIC UTILITY

DISTRICT, et al.,

        Defendants.

Civil No. 1247-SD-C

POINTS AND AUTHORITIES
OF DEFENDANT,
JAMES OVIATT

PRELIMINARY STATEMENT

It is the purpose of this Memorandum to discuss
the riparian, prescriptive and appropriative rights of
defendant, James Oviatt, as established by the evidence
adduced at the trial of the above entitled cause (Transcript,
Volumes 104, 105 and 106).  It will also discuss the issues
of the suit pertinent to such defendant as summarized by
the Court (Transcript, 12071, et seq.).

5877

I

THE REAL PROPERTY OF
DEFENDANT, JAMES OVIATT,
IS RIPARIAN IN CHARACTER.


Riparian land is land within the water-shed, and
touches the water course.

Anaheim Union Water Company v. Fuller
(1907) 150 C. 327

Rancho Santa Margarita v. Vail (1938) 11 C.
(2d) 501

Rancho Ramona and the Oak Grove property of the
defendant, James Oviatt, are within the water-shed of Lancaster
and Temecula Creeks, respectively, and abut such creeks (Trans-
cript, 11859-61) and are therefore riparian in character.

## II

THE EVIDENCE DISCLOSES NO BASIS FOR ANY
DECREE LIMITING THE WATER DIVERSIONS OF
THE DEFENDANT, JAMES OVIATT, FROM THE
SANTA MARGARITA STREAM SYSTEM.

A. The evidence has established that the
defendant, James Oviatt, is not able to
obtain his pro rata share of the water
of the Santa Margarita stream system,
as a riparian owner.

The number of acre feet of water required for
beneficial purposes on the irrigable portions of the property
owned by defendant, James Oviatt, are set forth in the Oviatt
Exhibit A (page 55). However, due to the decreased water
supply this defendant has been able to irrigate only a small
percentage of his riparian lands, and his irrigated acreage
has decreased from 145 acres in 1945 to 65 acres in 1959 (Tr.
11797-8). In contrast to this fact, the evidence establishes
that the amount of water available to  the riparian owners
downstream from the property of this defendant has been
increased. Thus the Vail Exhibit N shows that the gross
irrigable property of the Vail Ranch in acre feet increased
from 5452 in 1957, to 9247 in 1958.

1   The stringent water problems of defendant, James
2   Oviatt, are also in contrast to the comparatively generous
3   quantities of water available to plaintiff, as set forth in
4   Exhibit AD.  Such Exhibits clearly reflect that riparian owners
5   downstream from the property of this defendant are able to obtain
6   a far greater percentage of their proportionate share of the
7   waters of the Santa Margarita stream system than has the de-
8   fendant, James Oviatt.

11  B.   The evidence has established that the
12       water diversions of the defendant, James
13       Oviatt, do not have any material effect
14       on the water of the Santa Margarita stream
15       system available to plaintiff and other
16       riparian owners downstream from said
17       defendant.

19       It is submitted that the evidence in support of the
20  foregoing proposition is conclusive.  Plaintiff's own witness,
21  Colonel Allen C. Bowen, testified (Tr. 11664-66) that there is
22  an impervious barrier or dike between Rancho Ramona and the
23  Naval Enclave.  This consists of the so-called dam at the head
24  of Nigger Canyon on the Vail property.
25       As stated by the witness (Tr. 11665-66):
26  "A.  It consists of a concrete dam tied into the
27       foundation, to bedrock at foundation, and
28       at the abutment.  It cuts off any underground
29       flow that might have existed in the past
30       there and limits the flow, since it was con-
31       structed to releases by the Vail Company."

-4-

5890

1    In view of such an impervious barrier or dike between
2    the Naval Enclave and the property of the defendant, James Oviatt,
3    any diversion of water by the latter defendant would not materially
4    affect plaintiff at the Naval Enclave.
5    Moreover, the witness, Max Bookman, testified (Tr.
6    11872) that the diversion of waters by the defendant, James
7    Oviatt, have only a minor effect on the availability of water
8    to those downstream from his properties.  He further testified
9    that the uses of water upstream by Mr. Oviatt and riparian
10   owners upstream from the Vail reservoir were of minor consequence
11   to the availability of the amount of water that would occur below
12   such point.  He testified that by the word "minor" he meant
13   "infinitesimal."  (Tr. 11874)
14   It follows that there can be no basis for a decree
15   of this Court limiting the diversion of water by the defendant,
16   James Oviatt, from the Santa Margarita stream system.
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32

## III

**IF THE COURT SHOULD FIND THAT ANY OF THE
DIVERSIONS OF WATER BY DEFENDANT, JAMES
OVIATT, INVADE ANY RIGHT OF PLAINTIFF,
THE COURT MUST ALSO FIND A PRESCRIPTIVE
RIGHT IN SAID DEFENDANT TO CONTINUE SUCH
DIVERSIONS.**

If the Court should find that any of the diversions
of water from the Santa Margarita stream system by the defendant,
James Oviatt, upon riparian lands, invade any right of plaintiff,
or other downstream riparian owners, it is submitted that the
Court must also find a prescriptive right in said defendant to
divert all of the water of Lancaster Creek onto Rancho Ramona
and all of the water of Temecula Creek onto the Oak Grove
property of said defendant.

If the Court should find that any of the diversions
of the water of the streams by defendant's predecessors for a
period greater than the statutory period were upon non-riparian
lands, then a prescriptive right to divert such waters became
vested in such parties.


Horst Company v. Tarr Mining Co. (1917)

174 C. 430


Assuming, as we believe to be the case, that the
properties of defendant, James Oviatt, are riparian in character,
it would appear that the facts of the instant suit bring the
diversions of defendant, James Oviatt, and his predecessors

-6-

5882

1   within the principles of those California cases heretofore

2   referred to in the Memorandum heretofore filed with this Court,

3   on behalf of said defendant, which hold that the use of all, or

4   substantially all, of the water of a stream by an upper riparian

5   owner upon riparian lands under circumstances where actual

6   knowledge must be imputed to the lower riparian owners, establish

7   a prescriptive right in the land owner making such diversion.

9           Pabst v. Finmand (1922) 190 C. 124, 130.

11          Morgan v. Walker (1933) 217 C. 607, 616

13          In Silva v. Hawn (1909) 10 C.A. 544, 552, the Court

14   said:

15          "I do not understand that the element of

16   'acquiescence' is to be shown independently of

17   knowledge, in the common acceptation of that term;

18   i.e., that an affirmative permission or consent be

19   given in addition to knowledge of the hostile claim

20   of right.  If the owner has the knowledge which the

21   law requires shall be imputed to him, and takes no

22   steps to prevent the adverse claimant from his contin-

23   uous enjoyment of the right claimed by him, such owner

24   will be deemed to have acquiesced in such use.  This

25   court had occasion in a recent case to consider the

26   point, in which the rule was stated.  It was there

27   said:  'No particular act or series of acts is necessary

28   to be done in order that the possession may be notorious,

29   but any visible act which clearly demonstrates an intention

30   to claim ownership and possession will be sufficient to

31   establish claim of adverse possession.  Such claim may be

1  made out by visible acts, without any assertions by

2  word of mouth.  When the use is not secret or clan-

3  destine, but open, visible and notorious, the pre-

4  sumption of knowledge follows.  The burden is in the

5  first instance upon the plaintiff to prove his title

6  by prescription.  After showing the continuous

7  occupancy and use of the water as though he were the

8  owner, for more than five years, he establishes a

9  prima facie case.  It then devolves upon the defendant

10  to show that the use was permissive or without the

11  knowledge of the defendant.'  (Gurnsey v. Antelope

12  Creek, etc. Co. 6 Cal. App. 387 [92 Pac. 328].)"

13

14       The foregoing cases have special applicability to

15  the facts of the instant suit, where diversions of all of the

16  water of Lancaster Creek were made onto Rancho Ramona by the

17  defendant, James Oviatt, and his predecessors, and diversions

18  of all of the water of Temecula Creek were made onto the Oak

19  Grove property of the defendant, James Oviatt, and his

20  predecessors.

21       Each of the witnesses who are familiar with the

22  irrigation system of Rancho Ramona, which diverted all of the

23  waters of Lancaster Creek onto the Ranch, testified that such

24  irrigation system terminated at the Vail property line.

25       Each of such witnesses testified that except during

26  flood periods all of the waters of Lancaster Creek were diverted

27  onto Rancho Ramona for the beneficial uses of irrigation.  These

28  diversions obviously began prior to 1919 (Tr. 12042) and it is

29  apparent that beginning with the completion of the irrigation

30  system in such year, the diversions were continuous thereafter.

31

32

-8-

5884

1    The open and notorious character of the diversions

2 is emphasized by the protest of a lower riparian owner, Mr.

3 Mahlon Vail (Tr. 12022) in 1945 that Rancho Ramona was taking

4 Vail water.

5    It is further emphasized (Tr. 12022) by the fact that

6 evidence concerning the water needs of Rancho Ramona was adduced

7 in the case of <u>Rancho Santa Margarita v. Vail, supra</u>, (1938)

8 11 C. (2d) 501, 516-517, to which plaintiff's predecessor was

9 a party. In that case the Court found that the normal flow of

10 water of the Temecula-Santa Margarita River was not sufficient

11 to supply all of the riparian needs of all of the riparian

12 lands of either of the parties to the action, and that there

13 was only enough water available for the irrigation of a portion

14 of their riparian lands, and for the uses thereon which were

15 most valuable and profitable.

16    The present irrigation system was installed in 1919

17 (Tr. 12034) and was a further development of an open ditch

18 system existing prior to said date (Tr. 12042).

19    The witness, Amos Welch, not only installed the existing

20 system, but also saw the property in 1926, when it was owned by

21 Mr. Hiram Brinkerhoff (Tr. 12045) and observed the diversion of

22 all of the water from Lancaster Creek between 1930 (Tr. 12047)

23 until two or three months after the land was sold to James

24 Oviatt (Tr. 12062-3).  He testified that the ranch diverted

25 all of the water of Lancaster Creek, which consisted of

26 85 to 105 miner's inches (Tr. 12663).

27    Similarly, Harold Brinkerhoff testified (Tr. 11702)

28 that all of the water of Lancaster Creek was diverted between

29 1924 or 1925 and 1931 or 1932, when the ranch was owned by

30 his father, Mr. Hirman Brinkerhoff.

31

32

1        The diversion of all of the waters of Lancaster

2   Creek during the 1930s was also confirmed by the witness, Mr.

3   Dave Welsh, (Tr. 11746, et seq.)  and by the witness, Mr. Fred

4   Bass (Tr. 11737).

5        The witness, Max Bookman, testified that Lancaster

6   Creek had a capacity of 300 miner's inches (Tr. 11850).  He

7   also testified that the amount utilized on Rancho Ramona for

8   the beneficial purposes of irrigation (Tr. 11855) was 140 acre

9   feet in 1951, 160 acre feet in 1952, and 165 acre feet in 1953.

10        The defendant, James Oviatt, testified (Tr. 11987)

11   that in 1944, 87 inches of water was diverted continuously.

12        The amount of water utilized on the Rancho Ramona

13   property for the beneficial purposes of irrigation is the

14   irrigated acreage multiplied by the irrigation requirements

15   in acre feet (Exhibit A, page 55) multiplied by a ten per cent

16   project loss.  Thus in 1947, 205 acres were irrigated (Tr.

17   11798).  In addition, a very substantial volume of water was

18   required for the cattle, hogs, turkeys and horses maintained

19   on the property (Tr. 11981).

20        The history of the diversion of Temecula Creek upon

21   the Oak Grove property of defendant, James Oviatt, is substan-

22   tially similar.

23        The witness, Chalma Bailey, testified (Tr. 11761, et

24   seq.) to the diversion of all of the water of Temecula Creek

25   upon such property, beginning in about 1887, and during all of

26   the time he owned the property, beginning in about 1928.  All

27   of the water of the Creek was continuously diverted for the

28   beneficial uses of irrigation.  This usage was continued during

29   the ownership by Mr. James Oviatt (Tr. 11966-8).

30

31

32

-10-

5386

The foregoing diversions were obviously under circumstances where actual knowledge must be imputed to the lower riparian owners.  In the words of the Court in the case of Pabst v. Finmand, supra, (1922) 190 C. 124, 130:

" . . . the circumstances are such, as for instance the use of all of the water of the creek, that such party must be presumed to have known of the adverse claim."  (190 C. 130)

As stated by the Court in Silva v. Hawn, supra, (1909) 10 C.A. 544, 552:

"When the use is not secret or clandestine, but open, visible and notorious, the presumption of knowledge follows.  The burden is in the first instance upon the plaintiff to prove his title by prescription.  After showing the continuous occupancy and use of the water as though he were the owner, for more than five years, he establishes a prima facie case.  It then devolves upon the defendant to show that the use was permissive or without the knowledge of the defendant."  (10 C. A. 552)

We submit that the record clearly establishes that all of the water of the respective Creeks was diverted to the pertinent properties for beneficial uses, and that such taking was open, notorious and under claim of right.  Such usage therefore establishes a prescriptive right in defendant, James Oviatt, to continue the diversion of all of the waters of Lancaster and Temecula Creeks onto Rancho Ramona and the Oak Grove property.

## IV

THE CHANGING OF THE DIVERSION POINT

FROM ONE POSITION ON THE STREAM TO

ANOTHER BY THE PREDECESSOR OF DEFENDANT,

JAMES OVIATT, DOES NOT DEFEAT THE RIGHTS

OF PLAINTIFF.

The witness, Chalma Bailey, testified that he first observed the diversion from Temecula Creek onto the Oak Grove Ranch in 1887, when the Oak Grove Ranch was owned by Michael Levy (Tr. 11759-63).

He also testified (Tr. 11764) that he changed the location of the ditch in 1928 to the Wentworth property (Tr. 11781).

It is apparent that the case is thus within the rule that the point of diversion may be changed by the one having the right to take water, whether the taking is by virtue of riparian ownership appropriation or prescriptive ownership.

San Luis Water Co. v. Estrada (1897) 117 C. 168

Perry v. Calkins (1911) 159 C. 175

Southside Improvement Company v. Burson (1905) 147 C. 401

Cheda v. Southern Pacific Company (1913) 22 C. A. 373

Barton v. Riverside Water Company (1909) 155 C. 509

California Water Code, Section 1706

-12-

5888

V

**DEFENDANT, JAMES OVIATT, HAS THE
RIGHT TO DIVERT THE WATERS OF
TEMECULA CREEK FROM DIVERSION
POINTS OFF HIS PROPERTY**

The Temecula Wentworth diversion and the Oviatt
Commings diversion appear to be governed by well settled
principles of California water law.

If the diversion is in accordance with the
agreement between the defendant, James Oviatt, and/or his
predecessor and the adjoining land owner, such diversions
are within the principle that where adjoining land owners
enter into an agreement pursuant to which a diversion is
made on the land of one party for the benefit of both ranch
owners, and the parties operate under this agreement for a
period of time in excess of the statutory period, and under
a claim of right, and in the manner and for the purposes for
which it was installed, a prescriptive right is established
to the diversion facilities in the adjoining owner.

Honsberger v. Durfee (1942) 55 C.A. (2d) 68

If such diversions were not in accordance with an
agreement between such parties, they are within the principle
that if the party making the diversion shows continuous occu-
pancy of a diversion facility as though he were the owner, for
more than the statutory period of five years, he establishes
a prima facie case of a prescriptive right.

Silva v. Hawn, supra (1909) 10 C.A. 544, 552

-13-

5380

## VI

**APPROPRIATIVE RIGHTS VESTED**

**IN THE PREDECESSORS OF DEFENDANT,**

**JAMES OVIATT, AS OF THE DATE OF**

**THE FILING OF NOTICE.**

The right in the Kohler Canyon diversion vested in the predecessor of defendant, James Oviatt, in 1913.

The witness, Chalma Bailey, testified (Tr. 11769) with respect to the filing on the Kohler Canyon diversion on April 8, 1913 (Defendant's Exhibit AA). He testified that the water was then piped two miles onto his property, which is the Oak Grove property of defendant, James Oviatt.

It follows that under California law the rights of defendant's predecessor vested as of the time of the filing of the instrument which is defendant's Exhibit AA.

Inyo Consolidated Water Co. v. Jess
(1911) 161 C. 516, 519;
Merritt v. City of Los Angeles (1912)
162 C. 47, 50-51
Yuba River Power Co. v. Nevada Irrigation
District (1929) 207 C. 521, 527

Respectfully submitted,

MUSICK, PEELER & GARRETT

By _____
Attorneys for Defendant,
James Oviatt

-14-

5890

STATE OF CALIFORNIA }
                     } ss
COUNTY OF LOS ANGELES }

I, the undersigned, say:  I am and was at all times herein mentioned a citizen of the United States and employed in the County of Los Angeles, over the age of eighteen years, and not a party to the within action or proceeding; that my business address is 621 South Hope Street, Los Angeles 17, California; that on February 29, 1960, I served the within Points and Authorities of Defendant, James Oviatt, on the following named persons, by placing a true copy thereof in an enveloped, addressed to each as follows:

STANLEY MOSK, ATTORNEY GENERAL and

FRED GIRRARD, DEPUTY ATTORNEY GENERAL,

Sacramento, California;


SACHSE AND PRICE,

1092 South Main Street,

Fallbrook, California;


BEST, BEST & KRIEGER and

JAMES H. KRIEGER,

4200 Orange Street

P. O. Box 1028

Riverside, California;


WILLIAM H. VEEDER, Special Assistant to
the Attorney General,
Counsel for Plaintiff, United States of America,

U. S. Customs and Court House

San Diego 1, California;

-15-

5861

GEORGE STAHLMAN
Counsel for Defendant,
Vail Company, Inc.

Route 1, Box 235

Fallbrook, California


GEORGE G. GROVER
CLAYSON, STARK & ROTHROCK


Security Bank Building

Corona, California


and by then sealing said envelopes and depositing the same with

postage thereon fully prepaid, in a mail-box regularly maintained

by the Government of the United States in Los Angeles, California,

where is located the offices of the attorneys for the persons by

and for whom said service was made.

    That there is delivery service by United States mail at

the places so addressed, and there is a regular communication by

mail between the place of mailing and the places so addressed.


                          _____
                             Dorothy Walker


Subscribed and sworn to before me

this 29th day of February, 1960.


_____
    Leone M. Riegel

Notary Public in and for said
    County and State

My commission expires July 12, 1960

5892