Attorney for the
UNITED STATES OF AMERICA

No. 1247

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

# FILED

MAR 25 1960

.... CLERK, U.S. DISTRICT COURT.
SOUTHERN DISTRICT OF CALIFORNIA
By ......................

UNITED STATES OF AMERICA,

Plaintiff,

v.

FALLBROOK PUBLIC UTILITY
DISTRICT et al.,

Defendants.

No. 1247-SD-C

PROPOSED FINDINGS OF FACT AND CONCLUSIONS
OF LAW SUPPORTING THE STIPULATED JUDGMENT
DATED DECEMBER 26, 1940, IN THE SUPERIOR
COURT OF THE STATE OF CALIFORNIA, IN AND
FOR THE COUNTY OF SAN DIEGO, CIVIL NO. 42850

18723



VAIL RANCH BOUNDARY

MAP OF PARTS OF THE MURRIETA, TEMECULA, FUCHANGA, AND BACHELOR MOUNTAIN QUADRANGLES, CALIFORNIA

15723A

1
2
3
4
5
6
7             IN THE UNITED STATES DISTRICT COURT

8             SOUTHERN DISTRICT OF CALIFORNIA

9                   SOUTHERN DIVISION

10

11  UNITED STATES OF AMERICA,          )
                                       )
12                   Plaintiff,        )
                                       )
13      v.                             )          No. 1247-SD-C
                                       )
14  FALLBROOK PUBLIC UTILITY           )
    DISTRICT et al.,                   )
15                                     )
                                       )
16                   Defendants.       )

17             PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF
               LAW SUPPORTING THE STIPULATED JUDGMENT DATED
18             DECEMBER 26, 1940, IN THE SUPERIOR COURT OF THE
               STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF
19                   SAN DIEGO, CIVIL NO. 42850

20

21             COMES NOW THE UNITED STATES OF AMERICA, as directed by this

22  Honorable Court, and tenders its proposed Findings of Fact and Con-

23  clusions of Law supporting the Stipulated Judgment, dated December 26,

24  1940, entered by the Superior Court of the State of California, in

25  and for the County of San Diego, Civil No. 42850, hereafter referred

26  to as Stipulated Judgment.

27

28             SUMMARY BY THE UNITED STATES OF AMERICA OF PRO-
               POSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
29                   SUPPORTING STIPULATED JUDGMENT

30                                I

31             Invaluable rights to use water of the Santa Margarita River,

32  as against the defendant Vail Company, are vested in the United States

7—1604

U. S. GOVERNMENT PRINTING OFFICE

15724

by the Stipulated Judgment entered by the Superior Court of San Diego County.

## II

a.  Today, historically and on December 26, 1940, date of the Stipulated Judgment, Vail Company, except on rare occasions, exercises full, complete and entire control of the surface runoff of the Santa Margarita River which is formed upon and enters Temecula Gorge upon Vail Company lands.

b.  Full, complete and entire control of the surface runoff of Temecula Creek, principal tributary of the Santa Margarita River, resides in Vail Company, by reason of Vail Dam and the pumps operated in Pauba Valley by that Company.

c.  Full, complete and entire control of the surface runoff of Murrieta Creek, second principal tributary of the Santa Margarita River, resides in Vail Company throughout the year, except on rare occasions.

## III

Vail Company has repeatedly declared and recognized that it was bound by the Stipulated Judgment; has received great benefits from it by reason of its representations to the United States of America, that it was bound by the Stipulated Judgment.

## IV

Vail Company had the burden of proving grounds for setting aside or restraining the enforcement of the Stipulated Judgment.

Vail Company failed to prove that it cannot fully comply with the Stipulated Judgment, rather the proof is unequivocal that it can comply with the Stipulated Judgment.

Vail Company has failed to prove that it has been injured

15725

1  by the Stipulated Judgment.

2       Vail Company has failed to prove that the Stipulated Judgment

3  is inequitable, unconscienable, invades the rights of defendants not

4  parties to it.  There is no basis for setting aside or restraining

5  the enforcement of the Stipulated Judgment.

6

7                       V

8       The United States of America would sustain irreparable

9  damage if the Stipulated Judgment is set aside, abrogated, modified

10  or its enforcement restrained.

11

12                      VI

13       Jurisdiction resided in the Superior Court in and for the

14  County of San Diego to enter the Stipulated Judgment.

15

16

17                      VII

18       Under California law riparian owners may, against each other,

19  exercise their rights on non-riparian lands as provided by the Stip-

20  ulated Judgment.

21

22                      VIII

23       The United States of America acquired the lands of the Rancho

24  Santa Margarita after entry of the Stipulated Judgment; that Stipulated

25  Judgment is an invaluable property right of which it should not be

26  deprived.

27

28                      IX

29       The Stipulated Judgment does not bind anyone not a party to

30  it; enforcement of that Judgment has not and will not impair the

31  rights of other defendants.

32

15726

X

In the light of the proved facts in this case, the Stipulated Judgment may be administered without difficulty.

XI

A decree sustaining the Stipulated Judgment should be entered.

Respectfully submitted,

UNITED STATES OF AMERICA

Mar. 25, 1960

_____
J. LEE RANKIN,
Solicitor General

Dated:

_____
WILLIAM H. VEEDER
Attorney, Department of Justice

7—1404

1
2
3
4
5
6
7            IN THE UNITED STATES DISTRICT COURT
8             SOUTHERN DISTRICT OF CALIFORNIA
9                SOUTHERN DIVISION
10

11 UNITED STATES OF AMERICA,     )
                           )
12            Plaintiff,     )
                           )
13   v.                 )      No. 1247-SD-C
                           )
14 FALLBROOK PUBLIC UTILITY     )
DISTRICT et al.,          )
15                            )
16           Defendants.    )

17           PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF
18           LAW SUPPORTING THE STIPULATED JUDGMENT DATED
          DECEMBER 26, 1940, IN THE SUPERIOR COURT OF THE
19           STATE OF CALIFORNIA, IN AND FOR THE COUNTY OF
              SAN DIEGO, CIVIL NO. 42850
20

21        (Following a general description of the watershed
       of the Santa Margarita River, including statements
22       as to its semi-arid climate, intermittent character
      of stream flow, geological phenomona, these find-
23       ings are offered)
24

25      VAIL COMPANY COMPLETELY CONTROLS SURFACE FLOW OF
      THE SANTA MARGARITA RIVER, WITH RARE EXCEPTIONS
26
27                      I

28        The attached "Map of Parts of the Murrieta, Temecula,

29 Pechange and Bachelor Mountain, quadrangles, California" correctly

30 depicts and locates the properties of the Vail Company as they relate

31 to the Temecula Creek, Murrieta Creek and the point of their confluence

32 forming the Santa Margarita River.

7—1454

U. S. GOVERNMENT PRINTING OFFICE

15728

II

Temecula Creek is the principal tributary of the Santa Margarita River; Murrieta Creek is the second longest tributary of that stream.

III

Historically, on December 26, 1940, and at the present time, title resided in and now resides in the Vail Company to the lands where Temecula Creek and Murrieta Creek have their confluence, thus forming the Santa Margarita River. That point of confluence is situated within the Northeast Quarter (NE$\frac{1}{4}$) of Section 24, Township 3 South, Range 3 West. For a distance of approximately one-half ($\frac{1}{2}$) mile, the Santa Margarita River flows over the Vail Company lands, enters Temecula Gorge upon the lands of that Company, leaving Vail Company's land below the United States Geological Survey's gauging station near Temecula, California. There the total flow of the Santa Margarita River is measured.

IV

Pauba Valley

a. As shown on the accompanying map, Temecula Creek is an intermittent stream flowing in a westerly direction across Pauba Valley. Title to the lands in Pauba Valley resides in the Vail Company.

b. Ground water in the alluvium of Pauba Valley supports the surface flow of Temecula Creek. Pumping by the Vail Company from the ground water has the effect of diminishing that surface flow. During the irrigation season that pumping dries up Temecula Creek throughout most of its course across Pauba Valley.

c. A large proportion of Vail Company's irrigated land is located in Pauba Valley. Source of the water to irrigate those lands is the surface flow of Temecula Creek, now impounded by Vail Company

15729

behind Vail Dam, and the last mentioned ground water basin.

Wolf Valley

a. As shown on the map, Wolf Valley is traversed by Pechanga Creek, a tributary of Temecula Creek. Also as shown by the accompanying map, a substantial proportion of that Valley is located within the Vail Company's boundary. Title to those lands within that boundary resides in the Vail Company.

b. Vail Company irrigates a very large proportion of the lands thus shown on the map as being located in Wolf Valley.

c. Vail Company exports from Temecula Creek or the alluvium underlying Pauba Valley, all of the waters which it uses to irrigate its lands in Wolf Valley.

Temecula Valley

a. As shown by the map, Vail Company lands situated in the Temecula Valley are traversed by Murrieta Creek. Title to those lands within that boundary resides in Vail Company with the exception of small ownerships in the Town of Temecula.

b. Only a small proportion of the lands irrigated by the Vail Company are located in Temecula Valley.

c. Insofar as relevant here, Vail Company exports all of the water from Temecula Creek and the ground water underlying Pauba Valley that it uses to irrigate its lands in Temecula Valley. The small acreage irrigated by Vail Company through the purchase of Santa Gertrudis Creek water and that irrigated from the Cantarini pump located in Long Canyon are not pertinent to these findings.

V

Vail Dam, Pumps and Irrigation System

a. Immediately above Pauba Valley in a reach of Temecula Creek, known as Nigger Canyon, Vail Company constructed Vail Dam.

b.  Closure of Vail Dam took place in the year 1948.  Since that date Vail Company has controlled, regulated, impounded and stored all of the waters of Temecula Creek reaching Nigger Canyon.

c.  All of the water released from Vail Dam enters an enclosed pipe line system utilized to distribute and deliver those waters to irrigate the above mentioned lands in Pauba, Wolf and Temecula Valleys.

d.  Vail Company releases some of the waters impounded behind Vail Dam into the pipe line system above mentioned, thence directly into the alluvium underlying Pauba Valley, for the purpose of recharging that source of water supply.

e.  Water is pumped by Vail Company from the alluvium of Pauba Valley directly into its irrigation system.  That water is co-mingled with water released from Vail Dam and is used to irrigate lands in Pauba Valley, Wolf Valley and Temecula Valley, all as described above.

VI

VAIL COMPANY VIRTUALLY COMPLETELY CONTROLS SANTA
MARGARITA RIVER WATER ENTERING TEMECULA GORGE

a.  Complete and entire control of the surface flow of the Santa Margarita River at Temecula Gorge is exercised each year by the Vail Company, except on rare occasions.

Temecula Creek

b.  Vail Company, by means of Vail Dam at Nigger Canyon, controls the year around all of the waters of Temecula Creek flowing into Pauba Valley and the ground water which supports the surface flow of that stream.

c.  Pumping by Vail Company from the ground water in Pauba Valley lends to its even greater control of that stream.

d.  Virtually the entire discharge of Temecula Creek is return flow water resulting from the irrigation by that Company of its lands in Pauba, Wolf and Temecula Valleys.

Murrieta Creek

e. Surface flow of Murrieta Creek commences at the point marked "Rising Water 1959" on the accompanying map where Vail Company's northern boundary crosses Murrieta Valley. That is the historical point of surface flow of Murrieta Creek.

f. There are no surface diversions from Murrieta Creek between the point of rising water and the above mentioned confluence of that stream with Temecula Creek.

g. Virtually the entire course of Murrieta Creek from the above mentioned point of rising water to that stream's confluence with Temecula Creek is upon and across lands to which Vail Company has title, with the exception of small ownerships in the Town of Temecula which are not pertinent to these findings.

h. During the period from April 1st through the month of November of each year, Vail Company controls the entire surface flow of Murrieta Creek. It is only on rare occasions that it does not have complete control of the flow of that stream.


VII

VAIL COMPANY DOES NOT USE AND DOES NOT NOW HAVE
MEANS OF USING MURRIETA CREEK OR PECHANGE CREEK
(WOLF VALLEY) WATERS

a. All of the waters utilized by Vail Company insofar as relevant to these findings is derived from Temecula Creek or the alluvium underlying Pauba Valley.

b. Vail Company neither maintains pumps, motors, distribution systems nor surface means of diverting or utilizing Murrieta Creek or Pechange Creek (Wolf Valley) surface or ground waters.

-5-

15732

## VIII

**IN THE YEAR 1923 VAIL COMPANY PRECIPITATED THE CASE OF RANCHO SANTA MARGARITA V. VAIL THROUGH INVASION OF RANCHO'S RIGHTS IN SANTA MARGARITA RIVER--THE MILLION DOLLAR LAW SUIT; COURT FOUND SPECIALLY THAT AN EFFECTIVE DECREE COULD BE ENTERED BETWEEN RANCHO SANTA MARGARITA AND VAIL COMPANY ABSENT OTHER KNOWN CLAIMANTS TO RIGHTS IN THE SANTA MARGARITA RIVER**

a.   Commencing on or about the irrigation season of 1922, Vail Company greatly increased the diversion, pumping and use of Temecula Creek water.  That increase of water substantially reduced the quantities of water entering Temecula Gorge, all as described above.

b.   Reduction of the flow in the Santa Margarita River as described above, invaded the rights of the Rancho Santa Margarita which was the then owner of a large tract of land situated downstream on the Santa Margarita River and westward from Temecula Gorge, a distance of approximately ten miles.  After entering the Rancho Santa Margarita the stream has its course for a distance of approximately twenty miles, terminating at the Pacific Ocean.

c.   The diversions by Vail Company resulted in the institution of the cause entitled Rancho Santa Margarita v. Vail, in the Superior Court of the State of California, in and for the County of San Diego, No. 42850, known as the Million Dollar Law Suit.

d.   An issue having been raised, the State Court found that an effective judgment could be entered between the Rancho Santa Margarita and Vail Company without joinder of other parties.

e.   Trial of the case was instituted on October 18, 1926. Judgment in favor of the Rancho Santa Margarita and against the Vail Company was entered May 5, 1930.

f.   From that judgment the Vail Company appealed.  However, that appeal was limited largely to the question of the means of adjudging its riparian land as set forth in the Findings of Fact, Conclusions of Law and Judgment of May 5, 1930.

7—1404

15733

## IX

JUDGMENT FOR RANCHO SANTA MARGARITA--AWARD OF 75%
OF FLOW OF SANTA MARGARITA RIVER LESS FLOW OF
MURRIETA CREEK;
25% OF FLOW AWARDED VAIL COMPANY PLUS FLOW OF
MURRIETA CREEK--USE OF AWARDS LIMITED TO RIPARIAN
LANDS

a.  Predicated upon a record stemming from four hundred and
forty-four days, California's State Court awarded to Rancho Santa
Margarita--75% of the stream flow of the Santa Margarita River, less
Murrieta Creek; Vail Company--25% of the stream flow of the Santa Mar-
garita River, plus the flow of Murrieta Creek.

b.  Abstractions from the ground waters of the alluvium
underlying Pauba Valley was declared by the Court to be a diversion
from the Santa Margarita River and chargeable against the award to
Vail Company.

c.  Comprehensive regulatory provisions were entered in the
judgment as to place of use, measurements, recorders and related
factors all pertaining to the control and enjoyment by the Rancho
Santa Margarita and Vail Company and their successors, of their re-
spective shares of the Santa Margarita River.

d.  Exercise of all rights to the use of water allotted to
the Rancho Santa Margarita and Vail Company was limited to riparian
lands.

## X

STIPULATED JUDGMENT OF DECEMBER 26, 1940 AWARDED
TO RANCHO SANTA MARGARITA  - - - - - - - - - -66 2/3%
OF THE FLOW OF THE SANTA MARGARITA RIVER;
TO VAIL COMPANY  - - - - - - - - - - - - - - -33 1/3%
USE NOT LIMITED TO RIPARIAN LAND--AFTER REMAND
BY CALIFORNIA'S SUPREME COURT

a.  Vail Company appealed the judgment of May 5, 1930, entered
by the Superior Court of San Diego County.

b.  A limited remand by California's Supreme Court directed

-7-

15734

1   a readjudication of certain issues related primarily to the extent

2   of Vail Company's riparian land.

3       c.  To a large degree, adopting the provisions of the State

4   Court's Judgment entered May 5, 1930, the Vail Company and Rancho Santa

5   Margarita concluded their controversy over their respective rights

6   in the Santa Margarita River by the above mentioned Stipulated Judg-

7   ment dated December 26, 1940, in the Superior Court of the State of

8   California, in and for the County of San Diego.

9       d.  Vail Company through its officers, and those officers

10  individually, approved the Stipulated Judgment which they co-sponsored,

11  declaring it to be:

12         " . . . for the best interest of Vail Company . . .and"
13         that " . . . the terms of the proposed compromise and
            settlement as evidenced by the said 'Stipulated Judg-
14         ment' are fair and reasonable as to the Vail Company,
            its beneficiaries and trustees."

15       e.  By that Stipulated Judgment the respective parties were

16  awarded these rights to the use of water in the Santa Margarita River:

17       1.  To Rancho Santa Margarita the right:

18         " . . . to take and use upon the whole

19         or any part of its lands . . . sixty-six

20         and two-thirds per cent (66 2/3%)" of the

21         waters of the Santa Margarita River; rights

22         of interveners are included in that award;

23       2.  The Vail Company is entitled to take and use

24         upon the whole or any part of its "lands

25         . . . thirty-three and one-third per cent

26         (33 1/3%) of the water of the " Santa Mar-

27         garita River;

28

29       3.  The Rancho Santa Margarita and The Vail Company

30         could thus take and divert as betwwen them-

31         selves their correlative shares of the yield

32         of their riparian rights in the Santa Margarita

7—1404

U. S. GOVERNMENT PRINTING OFFICE

15735

River upon their respective lands either –

within – or outside of the watershed of that

river;

4.  As recited in the Stipulated Judgment, both

the Rancho Santa Margarita and the Vail Company

as between themselves had "the right to con-

struct dams or reservoirs on . . . their re-

spective lands for the purpose of intercepting

or impounding or conserving . . . " their re-

spective shares "of the flood waters of said

river and its tributaries;"

5.  Provisions for measuring and allocating water

pursuant to the Stipulated Judgment were con-

tained in it.


## XI

Moreover, the Stipulated Judgment provided that:

"During the irrigation season of each year

. . . May 1 to October 31, inclusive, "The Vail

Company "shall cause to be maintained at Gaging

Station No. Three (3) a constant flow of water of

not less than three (3) cubic feet per second . . . "

Gauging Station No. 3 is the above mentioned station located in Temecula

Gorge.


## XII

### UNITED STATES OF AMERICA SUCCESSOR IN INTEREST TO RIGHTS OF RANCHO SANTA MARGARITA UNDER STIPULATED JUDGMENT

The United States of America in the years 1942 and 1943

succeeded to the title to all of the lands and rights to the use of

water of the Rancho Santa Margarita, including the Stipulated Judgment.

7—1404

U. S. GOVERNMENT PRINTING OFFICE

-9-

15736

### XIII

In the year 1943 exclusive jurisdiction over the lands thus acquired was ceded to the United States of America by the State of California.

### XIV

NATIONAL DEFENSE ESTABLISHMENT CREATED

Immediately upon acquisition of the lands and rights to the use of water of the Rancho Santa Margarita, the United States of America undertook and completed three great military establishments:

    a.  Camp Pendleton, United States Marine Corps Training Base;

    b.  United States Naval Ammunition Depot;

    c.  United States Naval Hospital.

### XV

In excess of $100,000,000.00 have been expended by the United States of America in construction of those military establishments, a large proportion of which are located outside of the watershed of the Santa Margarita River.

### XVI

Relying upon and pursuant to the Stipulated Judgment, the United States of America for approximately twenty (20) years has been and is now diverting and utilizing for beneficial purposes, outside of the watershed large quantities of the waters of the Santa Margarita River.

### XVII

VAIL COMPANY REPEATEDLY REPRESENT TO THE UNITED
STATES OF AMERICA THAT IT WAS AND WOULD BE BOUND
BY STIPULATED JUDGMENT: PROFITED GREATLY BY REASON
OF ITS REPRESENTATIONS

In the year 1947, the Vail Company, representing to be bound

7—1404

U. S. GOVERNMENT PRINTING OFFICE

15737

1   by the Stipulated Judgment, requested the United States of America

2   to withdraw its protest, filed with the State of California, to con -

3   struction by The Vail Company of a dam on Temecula Creek.  Relying

4   upon that representation the United States of America withdrew its

5   protest.

6

7                              XVIII

8          At the hearing of December 16, 1947, respecting the Vail

9   Company's application for a permit to build the dam last mentioned,

10  that Company's representative:

11          Emphasized the importance of the Stipulated Judgment in

12               connection with the application;

13          Detailed in its presentation in support of the applica-

14               tion the method of operation between the United

15               States of America and the Vail Company under the

16               Stipulated Judgment.

17

18

19                              XIX

20         The Vail Company application was granted; the dam was con-

21  structed of such dimensions as to create a reservoir of 50,000 acre-

22  feet; closed in 1948, it impounds a large percentage of the meager

23  runoff of the Santa Margarita River.

24

25                               XX

26         a.  Cooperating under the Stipulated Judgment, the United

27  States of America and the Vail Company conducted conversations during

28  the summer months of 1950, if not before, relative to the quantities

29  of water respectively available to them.

30         b.  In keeping with that objective, the Vail Company obtained

31  a comprehensive ground-water study dated October 23, 1950.

32

7—1404

U. S. GOVERNMENT PRINTING OFFICE

15738

c.  On the 8th day of March, 1951, The Vail Company and the United States of America entered into a Revocable Permit Agreement, pursuant to which the United States of America would undertake the drilling of an exploratory well, hereafter referred to as the Navy Well.  Contained in that Revocable Permit Agreement is this covenant between the United States of America and The Vail Company:

"It is understood and agreed that the exploratory water well, . . .  shall be considered a 'water well' under that certain Stipulated Judgment in an adjudication suit entitled 'Rancho Santa Margarita, a Corporation, versus N. R. Vail, et al.,' No. 42850 in the Superior Court of the State of California in and for the County of San Diego, California, dated December 26, 1940.

It is also understood and agreed that the right of access to Permitter's /Vail Company_7 land to make continuing tests to obtain water data, provided for under the said Stipulated Judgment, shall apply to the said exploratory water well."

d.  $51,610 were expended by the United States of America in drilling the Navy Well.

e.  The Vail Company uses the Navy Well as one of its principal sources of water for the vast acreage which it irrigates.

XXI

VIRTUALLY TWENTY (20) YEARS OF COMPLIANCE WITH
STIPULATED JUDGMENT BY UNITED STATES OF AMERICA
AND VAIL COMPANY

Continuously for approximately twenty (20) years, pursuant to the Stipulated Judgment, the United States of America and The Vail Company have expended thousands of dollars in maintaining stations

to measure the waters of the Santa Margarita River and the diversions
both surface and ground water; maintaining records of that runoff
and those diversions.

### XXII

On January 25, 1951, by reason of invasions and threatened
invasions of its rights to the use of water in the Santa Margarita
River, this action in the nature of a proceeding to quiet title to
those rights, was initiated.  The Vail Company was named a defendant
as were all other claimants to rights to the use of water in the
stream.

### XXIII

In July of 1951 when the flow at Gaging Station 3 fell below
the three (3) c.f.s. referred to in paragraph IX above, a demand was
made by the United States of America that The Vail Company comply with
the Stipulated Judgment to which counsel then representing the Vail
Company responded, having explained the brief non-compliance:

> "If anything further is required, the Vail Company
> stands ready to do everything humanly possible to
> comply with the provisions of the stipulated judgment."

### XXIV

On October 23, 1951, in complete harmony one with the other,
in keeping with the long period of mutual reliance on the binding ef-
fect of the Stipulated Judgment, the Vail Company and the United States
of America, respecting this litigation, agreed as to the continued
binding effect of that judgment in these terms:

> " . . . the United States of America and the Vails
> are mutually in agreement that as between themselves

the Judgment of December 27, 1940, is and shall

continue to be binding upon them and each of

them."

" . . . the rights and duties of Plaintiff, United

States of America and the Vail, in and to the waters

of the Temecula-Santa Margarita River as between

Plaintiff and said Vails are those fixed, deter-

mined, and declared in that certain " Stipulated

Judgment.

XXV

On November 29, 1951, following its agreement with Vail Com-

pany, the United States of America stipulated with Intervener Cali-

fornia as follows:

"II

" . . . the United States of America claims only

such rights to the use of water as it acquired when

it purchased the Rancho Santa Margarita, together

with any rights to the use of water which it may

have gained by prescription or use, or both, since"

the acquisition.

"III

" . . . The United States of America claims by

reason of its sovereign status no right to the use

of a greater quantity of water than is stated in

Paragraph II, hereof. . . .."

"IV

" . . . the rights of the United States of America

to the use of water herein are to be measured in ac-

cordance with the laws of the State of California."

-14-

15741

## XXVI

### VAIL COMPANY SEEKS TO HAVE STIPULATED
### JUDGMENT DECLARED NULL AND VOID

Between the year 1942 when the United States of America acquired Rancho Santa Margarita, and May 1, 1958, the Vail Company and the United States of America exercised their respective rights to the use of water pursuant to the Stipulated Judgment; recognized its validity.  On the date last mentioned the Vail Company filed an amended answer seeking to have this Honorable Court "declare null and void, and of no force and effect, the Stipulated Judgment" alluded to above.

## XXVII

Having changed counsel, Vail Company requested to be and was relieved of the agreement of settlement dated October 23, 1951, with the United States of America.

## XXVIII

### CALIFORNIA CHANGES POSITION--NOW ATTACKS
### STIPULATED JUDGMENT

a.  California, since its intervention in this cause, has recognized that the Stipulated Judgment was binding upon the United States of America and Vail Company.

b.  The State of California now vigorously attacks the Stipulated Judgment; has filed briefs in opposition to it; has undertaken at this Court's direction, to prepare proposed Findings of Fact and Conclusions of Law in opposition to it.

c.  The United States of America when it entered into the Stipulation of November 29, 1951, with the State of California  was acting in reliance upon and in contemplation of the Stipulated Judgment, particularly those features permitting, as against the Vail

-15-

Company, the diversion and use of water outside the watershed of the
Santa Margarita River.

### XXIX

**EVIDENCE THAT THE STIPULATED JUDGMENT HAS BEEN
COMPLIED WITH THROUGHOUT VIRTUALLY TWENTY (20)
YEARS**

a.   The undisputed evidence reveals that for virtually twenty
(20) years the Vail Company, the United States of America and their
predecessors in interest, have recognized the validity of the Stipulated
Judgment and acted in reliance upon it.

b.   The United States of America will sustain irreparable
damage if the Stipulated Judgment is abrogated, violated, modified,
set aside or its enforcement restrained.

### XXX

**THIRD PARTY RIGHTS NOT EFFECTED BY THE STIPULATED
JUDGMENT; THE TERMS OF THE STIPULATED JUDGMENT MAY
BE ENFORCED AGAINST THE PARTIES TO IT**

a.   The evidence proves that the enforcement of the Stipulated
Judgment between the Vail Company and the United States of America will
not injure, invade or impair the rights of other defendants in this cause.

b.   The yield of the Santa Margarita River to which the in-
tervenors are entitled can be deducted from the award contained in the
Stipulated Judgment to the United States of America without injury to
them.

c.   As Vail Company controls the surface runoff of Temecula
Creek and Murrieta Creek during the period of from April first through
November of each year, the provision requiring it to deliver the minimum
flow of three (3) cubic feet of water a second into Temecula Gorge, all
as provided by the Stipulated Judgment, may be enforced without difficulty.

-16-

15743

d.  Further, by reason of Vail Company's geographical location, the provisions for apportioning to the United States of America and Vail Company their respective shares of the stream flow may be accomplished as provided in that Judgment.

e.  The waters pumped by the United States of America outside of the watershed of the Santa Margarita River pursuant to the terms of the Stipulated Judgment do not impair, invade, nor threaten to impair or invade rights of any parties in this cause.

f.  The alluvial basins from which the United States of America pumps its water are recharged from the Santa Margarita River. Principal source of the water for recharging that basin in the water flowing through Temecula Gorge, all as described above.

## XXXI

### VAIL COMPANY DID NOT OBJECT TO USE BY THE UNITED STATES OF AMERICA OF WATER OUTSIDE WATERSHED

a.  Vail Company did not object to the use by the United States of America and had, moreover, full knowledge that the United States of America was spending millions of dollars in the construction of a large proportion of the military establishment outside of the watershed.

b.  Vail Company at all times in this cause knew that the United States was using water outside of the watershed in reliance upon the Stipulated Judgment.

-17-

CONCLUSIONS OF LAW

I

CALIFORNIA'S COURT HAD JURISDICTION TO TRY AND
TO ADJUDGE THE RIGHTS OF THE PARTIES IN RANCHO
SANTA MARGARITA v. VAIL—TO ENTER THE STIPULATED
JUDGMENT

Jurisdiction resided in the Superior Court of the State of
California, in and for the County of San Diego, to entertain the
cause, to determine the issues and to adjudge the rights of the parties
all as presented in the case of Rancho Santa Margarita v. Vail Company
et al., No. 42850.

a.   The State Court in its discretion could limit the scope
of the proceedings as it did, to the claims of Vail Company and Rancho
Santa Margarita and those who intervened.

b.   The State Court had jurisdiction to enter the Judgment
of May 5, 1930, and was empowered to exercise its discretion as to
the kind and type of relief which it afforded the parties.

c.   The State Court had jurisdiction to enter the Stipulated
Judgment, which largely was reflective of the Judgment of May 5, 1930,
and which was agreed to by Vail Company and the Rancho Santa Margarita.

II

UNITED STATES OF AMERICA SUCCEEDED TO RIGHTS UNDER
STIPULATED JUDGMENT, INCLUDING RIGHT TO USE WATER
OUTSIDE WATERSHED OF SANTA MARGARITA RIVER—CALI-
FORNIA LAW RECOGNIZES RIGHT OF RIPARIANS TO AGREE
TO USE OF WATER OUTSIDE WATERSHED

a.   The United States of America succeeded to all of the
right, title, interest and privileges of the Rancho Santa Margarita
in and to waters of the Santa Margarita River.

b.   The Stipulated Judgment is valid and enforceable between
the United States of America and the Vail Company.

c.   The provisions of the Stipulated Judgment permitting

7—1454

U. S. GOVERNMENT PRINTING OFFICE

15745

use of water outside of the watershed as between the United States of America and Vail Company is valid and enforceable under California law. There is no evidence that other riparians would be injured by the exercise of that right.

d.  The rights of the United States of America against the Vail Company under the Stipulated Judgment, particularly but not limited to the right to utilize the waters of the Santa Margarita River outside the watershed of that stream, are rights in real property of which the United States of America may not be deprived.

III

VAIL COMPANY IS ESTOPPED FROM DENYING VALIDITY
OF STIPULATED JUDGMENT

a.  Vail Company cooperating with the United States of America had full knowledge that the United States of America was spending many millions of dollars in the construction of Camp Pendleton outside of the watershed; had full knowledge that in reliance upon the Stipulated Judgment the United States of America was diverting and utilizing water outside of the watershed of the Santa Margarita River, but has not made objection to this date regarding that use.

b.  Vail Company representing that it was bound by the Stipulated Judgment agreed to the drilling of the Navy Well upon its lands and now uses that well as a principal source of water to irrigate its lands.

c.  Vail Company through representations that it was and would be bound by the Stipulated Judgment secured agreement by the United States of America to withdraw the latter's protest to the application to the State of California for a permit to construct Vail Dam.  Relying upon that representation the United States of America withdrew its objection.

1    d. Vail Company, based upon the undisputed facts in this

2 cause, is estopped to deny the validity of the Stipulated Judgment.

3

4           IV

5    VAIL COMPANY FAILED TO SUSTAIN ITS BURDEN OF
     PROOF IN ITS EFFORT TO SET ASIDE OR RESTRAIN
6    THE ENFORCEMENT OF THE STIPULATED JUDGMENT

7    Vail Company had the burden of proving grounds upon which

8 to have abrogated, vitiated, modified or set aside, or to have re-

9 strained the enforcement of the Stipulated Judgment.

10

11           V

12    Vail Company failed to prove any grounds which would warrant

13 this Court in taking action to grant Vail Company the relief which

14 it prays in regard to the Stipulated Judgment.

15

16           VI

17    ADMINISTRATION OF RIGHTS UNDER STIPULATED
18        JUDGMENT

19    Because Vail Company has complete control of runoff entering

20 Temecula Gorge from approximately the first of April through the month

21 of November of each year, there are no administrative difficulties

22 in arriving at the apportionment to which the United States of America

23 and Vail Company are entitled under the Stipulated Judgment.

24

25           VII

26    Due to Vail Company's complete control during the irrigation

27 season of all surface runoff of the Santa Margarita River into Temecula

28 Gorge, the delivery of a minimum of three (3) cubic feet of water

29 a second does not give rise to administrative difficulties.

30

31

32

7—1404

U. S. GOVERNMENT PRINTING OFFICE

15747

VIII

Due to the gauging stations established and maintained under the Stipulated Judgment, there are no difficulties in arriving at a determination of the quantities of water to be measured at either Gauging Station No. 3 or No. 6, as provided by the Stipulated Judgment.

IX

a.   The Stipulated Judgment is not binding upon any parties in this case other than the United States of America and Vail Company.

b.   Determination of the quantities of water to be allotted to the United States of America and Vail Company, pursuant to the Stipulated Judgment will be the aggregate quantities of water to which the United States of America and Vail Company are entitled based upon their legal rights to the use of water as those legal rights relate to the rights of all other water users in and to the waters of the Santa Margarita River and its tributaries.

FINAL JUDGMENT AND DECREE

It is adjudged and decreed that the Stipulated Judgment is now in full force and effect between the United States of America and Vail Company.

Respectfully submitted,

UNITED STATES OF AMERICA

J. LEE RANKIN
Solicitor General

WILLIAM H. VEEDER
Attorney, Department of Justice

Dated: Mar. 25, 1960

-21-

15748