1  STANLEY MOSK, Attorney General
      of the State of California
2  F. G. GIRARD, Deputy Attorney General
   Library and Courts Building
3  HIckory 5-4711, Ext. 5448

4  Attorneys for Defendant
   STATE OF CALIFORNIA




OCT 24 1960

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

   vs.                                    No. 1247-SD-C

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

   Defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND
INTERLOCUTORY DECREE PERTAINING TO
JUDGMENT AND STIPULATED JUDGMENT

   This Court, having duly considered the records, pleadings and evidence in this case, the law applicable thereto and arguments of counsel, does hereby make and enter findings of fact, conclusions of law and interlocutory decree as follows:

FINDINGS OF FACT

I

   That on or about May 5, 1930, the Superior Court of the State of California in and for the County of San Diego entered Findings of Fact, Conclusions of Law and Judgment in Case No. 42850 in the records of said Court which in essence

15701

defined the extent of the surface and ground waters of the Santa Margarita River and its tributaries, determined the extent of the parties' land riparian thereto, apportioned the entire waters of said river and its tributaries to the riparian parties in that action and imposed certain injunctive restrictions.

II

That the parties to the said action were the Rancho Santa Margarita, Vail Company, the executors of the will of Murray Schloss, deceased, and Philip Playtor.

III

That the Rancho Santa Margarita, the executors of the will of Murray Schloss, deceased, and Philip Playtor did not appeal from said judgment; that Vail Company did appeal from certain portions of said judgment which defined the extent of Vail Company land riparian to the Santa Margarita River and its tributaries, which apportioned said waters to said riparian land, and which pertained to injunctive relief; that thereafter on or about July 12, 1938, the California Supreme Court reversed these certain portions of the judgment which pertained to the extent of the riparian land of the Vail Company, which allocated waters to Vail Company, and which imposed certain injunctive restraints; that said Supreme Court of the State of California remanded the case with directions that the new trial be limited solely to those matters specifically disapproved, and affirmed the trial court's judgment as to all other matters; that said decision of the California Supreme Court is recorded in 11 Cal. 2d 501; that thereafter and on or about December 26, 1940, the Superior Court of the State of California in and for the County of San Diego in said case No. 42850 entered a judgment pursuant to the stipulation of the parties; said judgment in essence allocated to the Rancho Santa Margarita two--thirds and Vail Company one-

third of the total waters of the Santa Margarita River and its tributaries.

IV

That the waters subject to the litigation set forth in the above findings are the same waters which are in litigation before this Court; that Vail Company and the executors of the will of Murray Schloss, deceased, are parties in the action before this Court and that the United States of America, a party in this action, is in privy to and the successor of the Rancho Santa Margarita and that Max Henderson, a party in this action, is in privy to and the successor of Philip Playtor.

V

That at the time said stipulated judgment was entered in 1940 the lands which comprised the Rancho Santa Margarita were used primarily as a cattle ranch and for related ranching activities; that since the United States of America acquired said lands in 1941, 1942 and 1943, said lands have been used primarily as a military enclave for defense purposes; that as a result of the change in this land use there has been a substantial change in the type of water use that has been made on said lands in that the use by the United States is substantially equivalent to use made by a municipality as contrasted to the former use of the Rancho Santa Margarita.

VI

That since the entry of the judgment in 1940 the United States of America has greatly increased the pumping of the ground waters within its military enclave, which ground waters are a part of the Santa Margarita River; that as a result thereof almost all of the uses of the said Santa Margarita River and its tributaries by the United States of America has been met by pumping from said ground waters of the River.

3

VII

That said judgment entered in 1940 provided that the allocation to the Rancho Santa Margarita of two-thirds of the entire waters of the Santa Margarita River and its tributaries would be determined by measuring the normal flow at Ysidora Narrows (Station 6), or if that normal flow at said Narrows is less than the normal flow at the Temecula Gorge (Station 3), the normal flow at Temecula Gorge (Station 3) would be used to determine the Rancho Santa Margarita's two-thirds allocation of the waters of said River.

VIII

That as a result of the pumping of said ground waters as set forth in finding VI above, the normal flow of the Santa Margarita River, including De Luz Creek and the other tributaries downstream from Temecula Gorge, has not reached the Ysidora Narrows (Station 6) but has instead recharged the ground waters within the military enclave with the result that the normal flow at Ysidora Narrows (Station 6) during the irrigation season has been zero and therefor of no practical use in allocating the waters as provided in the 1940 judgment.

IX

That the normal surface flow of said Santa Margarita River and its tributaries during the irrigation season is of minor importance and significance insofar as recharging of ground waters within the said military enclave and referred to in finding VI above; that said recharge of said ground waters are accomplished almost entirely by waters flowing in and over said lands immediately following periods of moderate or heavy precipitation which occur only rarely during the irrigation season.

- - - -

4

X

That the United States of America has satisfied and can continue to satisfy its reasonable and beneficial water requirements within the Santa Margarita watershed from pumping from ground waters within the watershed and its military enclave as found in finding VI and that said ground waters will be recharged by runoff following precipitation to a degree sufficient to meet said reasonable and beneficial water requirements of the United States of America, without regard to the maintenance during the irrigation season of three second feet surface flow of the Santa Margarita River as provided in the 1940 judgment.

XI

That the use of the ground waters as found in finding VI above, by the United States of America, does not entail any excessive or unreasonable burdens, financial or otherwise, on the part of the United States of America and is in fact the most efficient and economical method whereby the United States of America can satisfy its reasonable and beneficial water requirements.

XII

That since the entry of the judgment in 1940 considerable acreages of land which are riparian to the Santa Margarita River and its tributaries have become productive and waters from said river have been supplied to said lands for reasonable and beneficial purposes; that this increase in riparian acreages of land which have used the waters of said river for reasonable and beneficial purposes have been made by individuals who were not parties to the litigation referred to in findings I, II and III above.

XIII

That the owners of said lands to which water of the

Santa Margarita River and its tributaries is now being applied as set forth in finding XII are parties to this proceeding and asserting riparian rights to the use of the waters of the Santa Margarita River and its tributaries; that none of said owners of said lands or their predecessors were parties to the prior litigation referred to in findings I, II, III above.

### XIV

That since the entry of the 1940 judgment referred to in finding III above, neither the United States of America nor the Vail Company have consistently conformed to its terms as to water allocation, but instead have frequently diverted and used the waters of the Santa Margarita River and its tributaries substantially in excess of the amounts provided in said 1940 judgment.

### XV

That on or about             duly authorized agents of the United States of America requested the permission of the Vail Company to drill an exploration well on Vail Company lands; that the Vail Company agreed thereto and a well was subsequently drilled by the United States of America to a depth of approximately     feet; that in requesting the permission of the Vail Company to enter Vail Company lands and in drilling said well the United States of America did not rely on any provisions of the 1930 or 1940 judgments referred to in findings I and III, above, but acted solely to obtain geologic information for purposes unrelated to said judgments.

### XVI

That by drilling said well referred to in finding XV, above, the United States of America acquired the geologic information it desired to obtain; that the United States of America had knowledge that the Vail Company might use said well

1   after it had been drilled to the depth desired by the United
2   State of America and after the United States of America had
3   obtained the geologic information desired by it; that after
4   said well was drilled to the depth desired and the geologic
5   information obtained by the United States of America, the Vail
6   Company has used said well for irrigation purposes on their
7   lands; that the specific capacity of said well is approximately
8                   and the water therefrom is of a poor
9   quality for irrigation purposes.

                               XVII
11          That on or about              the Vail Company filed
12  an application, No.     with the Department of Public Works,
13  Division of Water Resources, for a permit to appropriate
14  40,000 acre feet of water annually from Temecula Creek to be
15  accumulated by storage between November 1 and April 30; that
16  protests to said application were duly filed by the United States
17  of America, and others; that subsequently the United States of
18  America withdrew its protest; that thereafter hearings on said
19  application were held and evidence in support of and in opposi-
20  tion to said application was received; that despite the with-
21  drawal of its protest, the United States of America appeared at
22  said hearings and presented evidence in opposition to said appli-
23  cation; that thereafter a permit to appropriate said 40,000
24  acre feet of water annually from Temecula Creek by storage to
25  be accumulated between November 1 and April 30, was issued to the
26  Vail Company; that thereafter and within the time provided in
27  said permit, the Vail Company constructed Vail Dam; that on or
28  about               the said Department of Public Works,
29  Division of Water Resources, issued License No.      to the
30  Vail Company for said storage of 40,000 acre feet annually from
31  said Temecula Creek to be accumulated between November 1 and

1 April 30 at Vail Dam.

XVIII

That both the Permit and License referred to in finding XVII, above, specifically provide that the Vail Company rights pursuant thereto are subject to all prior vested rights to the use of said waters of Temecula Creek.

XIX

That to the extent that any claimed right of the United States of America to use of the waters of Temecula Creek is valid under California law said right was vested prior to the filing of Application No.          by the Vail Company as found in finding XVII, above.

XX

That commencing in 1948 the Vail Company, acting pursuant to License No.          has stored said waters of Temecula Creek at Vail Dam; that since said year of 1948, and principally as a result of the lack of runoff water resulting from natural conditions, the Vail Company has not stored in the reservoir at said Vail Dam during any year 40,000 acre feet of water, but has only been able to store therein approximately 4,000 acre feet on an annual average since 1948.

XXI

That said storage of water at Vail Dam as found in finding XX above, has not adversely affected any right of the United States of America to the use of the waters of Temecula Creek; that the ground water basins within the military enclave and used by the United States of America to satisfy almost all of their reasonable and beneficial water requirements as previously found herein in finding X above, have been recharged periodically since the year 1948 to such an extent that the United States of America has not fully utilized the safe annual

8

yield of said basins; that in fact, as of May 1958, the said ground water basins within said military enclave and referred to in finding X above, were full.

### XXII

That during the period from 1948-1958 amounts of water approximately double the amounts of water stored at Vail Dam during said period have passed the Ysidora Narrows (Station 6) and wasted into the ocean.

### XXIII

That it is not true that the United States of America withdrew its protest as found in finding XVII above upon an assurance that the Vail Company would never seek to modify, change or enjoin the water allocation and provisions of the 1940 judgment referred to in finding III, above; it is not true that the actions of the Vail Company in obtaining a permit and license for the storage of water at Vail Dam and constructing Vail Dam and storing water therein were in conflict with any provision of said 1940 judgment.

### XXIV

That it is not true that the mere withdrawal of the protest by the United States of America as found in finding XVII above, was of any benefit to the Vail Company in the acquisition of the Permit and License referred to in said finding XVII, above.

### XXV

That it is not true that the rights of the United States of America to the use of the waters of the Santa Margarita River and its tributaries have been lessened, endangered or affected by the operation of Vail Dam or by the appropriative right to store water therein as found in finding XVII, above.

### XXVI

That it is true that the storage of water at Vail Dam

9

and subsequent release of said water for irrigation purposes on lands downstream from said Dam has provided a beneficial regulation of the waters of Temecula Creek in that all return flows from said waters after application to said lands have returned to the Santa Margarita River, or a tributary thereto, and become available for reasonable and beneficial use downstream, and that none of said waters have wasted into the ocean.

XXVII

That it is true that the 1930 and 1940 judgments referred to in findings I and III, above, specifically and by necessary implication, define the ground waters of the Santa Margarita River and its tributaries to certain limited areas underlying certain recent alluvium as depicted on Exhibit   ; that based on the evidence introduced in this case by the United States of America, said United States of America is claiming rights to ground waters underlying extensive areas which were found not to be a part of said River in said 1930 and 1940 judgments.

XXVIII

That said judgment entered in 1940 and referred to in finding III above, was based on a mistake of law by all parties and the Court in that it allocated all the waters of said Santa Margarita River and its tributaries to the parties to that action when substantial numbers of persons not parties to said action had at that time and all times thereafter vested rights to the use of the waters of said River and its tributaries; that could not, as a matter of law, be allocated or considered by the 1940 judgment.

XXIX

To the extent that said 1940 judgment attempted to allocate waters of the Santa Margarita River and its tributaries vested in persons not parties to that proceeding it is void;

10

that the provisions of said 1940 judgment which allocated all the waters of said River and its tributaries to the parties of that proceeding were in excess of the jurisdiction of that Court to enter, and void; that said void provisions of said 1940 judgment are inseparably connected with the entire 1940 judgment and cannot be isolated therefrom.

### XXX

That the apportionment of the waters of the Santa Margarita River, and its tributaries, as provided in said 1940 Judgment does not represent a fair and reasonable division of said waters in the light of the present water uses of said River and the knowledge of said River gained since 1940, to wit:

    A. That said judgment gave no consideration to the uses of said waters by others who have substantial rights thereto;

    B. That in determining the natural flow of said River said judgment attempts to compensate for ground water uses by measuring said uses on a daily basis as if they were surface water diversions with the result that the equalizing and regulating effects of ground water storage are ignored and given no consideration;

    C. That the substantial changes in land and water use since 1940, and previously found herein, have resulted in nullifying for all practical purposes those provisions of the 1940 judgment providing for the determination of the parties' percentage allocation by the natural flow at Ysidora Narrows (Station 6);

    D. That as a result of the facts as found in paragraph B the natural flow at Temecula Gorge (Station 3)

11

     will be used almost entirely to determine the parties' percentage allocation under said judgment with the result that the contributions to the Santa Margarita River by DeLuz and other creeks between Temecula Gorge and Ysidora Narrows will be completely ignored;

E. That when the natural flow at Temecula Gorge (Station 3) is used to determine the parties' allocation all of the artificial diversions and abstractions of the Vail Company and other upstream users will be considered, but no consideration will be given to artificial diversions and abstractions of the United States of America and other downstream users.

F. For the facts as previously found herein.

### CONCLUSIONS OF LAW

#### I

That the 1940 Judgment apportioned and allocated all the waters of the Santa Margarita River and its tributaries (excepting a minor apportionment and allocation to the two intervenors) to two riparian and overlying owners, to wit: The Rancho Santa Margarita, the predecessor of the United States of America, and the Vail Company.

#### II

That since the entry of the 1940 Judgment there has been a substantial change in the conditions as to the reasonable and beneficial use of the waters of said Santa Margarita River and its tributaries on lands riparian to and overlying said river and a substantial change in the type of irrigation, the amount of riparian and overlying land irrigated, and crops grown thereon.

- - - - - - -

12

...

III

That substantial numbers of defendants in the instant case who are asserting a right to the reasonable and beneficial use of the waters of said Santa Margarita River and its tributaries on lands overlying and riparian thereto were not parties to the 1940 judgment and cannot be bound or adversely affected by any of its terms or provisions.

IV

That the parties to said 1940 judgment have not complied with its terms and conditions which pertain to the apportionment and allocation of the waters of said Santa Margarita River and its tributaries.

V

That as a result of the extensive use of ground water basins by the United States of America since 1940 certain provisions of the 1940 judgment which pertain to the apportionment and allocation of the waters of the Santa Margarita River and its tributaries are of no practical use or effect and have, in fact, been abrogated.

VI

That as a result of the change in conditions since its entry in 1940, the apportionment and allocation of the waters of the Santa Margarita River and its tributaries by the 1940 judgment is not, as of this date, an equitable apportionment of said waters.

VII

That the allocation and apportionment of the waters of the Santa Margarita River and its tributaries by the 1940 judgment cannot be used in this case in allocating and apportioning said waters in that substantial numbers of defendants in this case cannot be bound or affected by its provisions, and in that

13

1  the present and existing uses of the waters of said river have
2  changed extensively and considerably from the uses and conditions
3  which existed at the time that the Stipulated Judgment was
4  entered.

### VIII

That the 1940 Judgment is void.

### IX

That the Vail Company is not estopped to contend that the 1940 Judgment should be modified, changed, or set aside, nor has the Vail Company engaged in acts which would make available a defense of laches or a similar defense.

### INTERLOCUTORY DECREE

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the United States of America, Vail Company, the executors of the will of Murray Schloss, deceased, and Max Henderson, be and hereby are enjoined from asserting or attempting to assert any of the terms or provisions of the Judgments entered by the Superior Court of the State of California in and for the County of San Diego in case number 42850 in the records of said court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Interlocutory Decree is preliminary only, is not final, and is subject to alteration, change or modification pending the entry of judgment at the termination of this case.

Dated:_____, 1960.

_____
Judge