J. LEE RANKIN,
SOLICITOR GENERAL,
OF THE UNITED STATES,
WASHINGTON 25, D. C.

Attorney for the UNITED STATES OF AMERICA

**FILED**

DEC 6 - 1960

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

FALLBROOK PUBLIC UTILITY DISTRICT
ET AL.,

    Defendants.

No. 1247-SD-C

MEMORANDUM OF AUTHORITIES

ESTABLISHING CONTRACTUAL NATURE OF

STIPULATED JUDGMENT

VAIL COMPANY BOUND BY THAT CONTRACT

SUBJECT INDEX

Page

MEMORANDUM OF AUTHORITIES ESTABLISHING
    CONTRACTUAL NATURE OF STIPULATED JUDGMENT;
    VAIL COMPANY BOUND BY THAT CONTRACT

PRELIMINARY STATEMENT
    RESPECTING VAIL COMPANY'S ATTEMPT TO HAVE VITIATED
    THE STIPULATED JUDGMENT DATED DECEMBER 26, 1940,
    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
    IN AND FOR THE COUNTY OF SAN DIEGO ........................ 1

STIPULATED JUDGMENT IS A CONTRACT--
    NEITHER THE COURT WHICH ENTERED IT;
    NOR AN APPELLATE COURT,
    OR THIS HONORABLE COURT
    UNDER THE PROVED FACTS
    MAY CHANGE THAT CONTRACT .................................. 4

RATIFICATION BY VAIL COMPANY OF ITS CONTRACT
    THE STIPULATED JUDGMENT;
    VAIL COMPANY'S OWN EVIDENCE PROVES CONCLUSIVELY
    RATIFICATION OF STIPULATED JUDGMENT BY THAT COMPANY ....... 7

    (a)  Statutes of California and Decisions
         Preclude Vail Company From Avoiding
         Its Obligation Under Its Contract,
         The Stipulated Judgment ............................. 7

         Contractual Obligation of Vail Company Under
            the Stipulated Judgment, May Not Be Avoided
            Because the United States of America is a
            Bona Fide Purchaser Who Acted and Has Acted
            in Reliance Upon Vail's Contract, The
            Stipulated Judgment .............................. 10

    (b)  Factual Review of Vail Company's
         Ratification of Its Contract, The
         Stipulated Judgment, Is Conclusive and
         Unchallenged - Largely Predicated Upon
         Vail Company's Proof In This Cause ................. 11

    (c)  An Enforceable Contract Between Vail Company and
         the United States of America Arose When the Latter
         at the Request of the Former Withdrew its Protest
         to Vail Company's Application ...................... 17

    (d)  Vail Company Proposed That it Would Drill What is Now
         Known as the "Naval Well" to Meet Its Obligations Under
         Stipulated Judgment; United States of America Undertook
         to Drill Well On Representation Vail Company Would Be
         Bound by Its Contract - The Stipulated Judgment .... 18

    (e)  Vail Company Having Planned Drilling "Naval Well"
         to Fulfill Obligations Under Stipulated Judgment,
         Agreed to be Bound by Stipulated Judgment When United
         States of America Drilled That Well; Vail Company
         "Bought" In On Naval Well; Vail Company Again Ratified
         Stipulated Judgment ............................... 23

GPO 16—29905-3

SUBJECT INDEX - Continued                                    Page

Ratification By Vail Company of Its Contract
    The Stipulated Judgment - Continued

    (f)  Ratification by Vail Company of Stipulated
         Judgment After Full Knowledge of the Geology
         Proved in This Case Concerning Which That
         Company Avers There was a "Mistake";
         Under the Law Vail Company May Not Now
         Rescind the Stipulated Judgment Which is a
         Contract                                              25

CONTRACTUAL NATURE OF STIPULATED JUDGMENT
    CONSTITUTES A WAIVER OF ALL ERRORS
    VAIL COMPANY PRECLUDED FROM ATTACKING
    STIPULATED JUDGMENT                                        33

```
        *   *   *   *   *   *   *   *   *
          *   *   *   *   *   *   *   *
            *   *   *   *   *
              *   *   *
                *
```

6067

J. LEE RANKIN
SOLICITOR GENERAL
   OF THE UNITED STATES
Washington 25, D. C.

Attorney for the UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | NO. 1247-SD-C |
| FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., | ) | |
| Defendants. | ) | |

MEMORANDUM OF AUTHORITIES
ESTABLISHING CONTRACTUAL NATURE OF
STIPULATED JUDGMENT;
VAIL COMPANY BOUND BY THAT CONTRACT

PRELIMINARY STATEMENT
RESPECTING VAIL COMPANY'S ATTEMPT TO HAVE VITIATED
THE STIPULATED JUDGMENT DATED DECEMBER 26, 1940,
IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN DIEGO

Attacked by Vail Company is the Stipulated Judgment entered twenty

(20) years ago. That Stipulated Judgment resolved the respective rights in the

Santa Margarita River between Vail Company and the predecessor in interest of

the United States of America. Salient provisions of that Stipulated Judgment

are these:

(a) As against the Vail Company the United States of America

may use the yield of riparian rights upon non-riparian lands.

(b) As against the Vail Company the United States of America

may impound the yield of riparian rights.

- 1 -

6069

1    Those rights as against the Vail Company are invaluable.

2    Reliant upon that Stipulated Judgment the United States of America

3  has now constructed a vast military installation largely on non-riparian land.

4  Moreover, the United States of America acquired the properties as a bona fide

5  purchaser without knowledge of the alleged grounds of "mistake" upon which the

6  Vail Company relies.

7    This question is squarely presented:

8        Whether this Honorable Court in the light of indisputable

9            facts will strike down the Stipulated  Judgment as

10           prayed by the Vail Company, to the irreparable damage

11           of the United States of America?

12   Exhaustive briefs have been filed and arguments made to this

13  Honorable Court by the United States of America in support of the Stipulated

14  Judgment.  Failure on the part of the Vail Company to prove grounds upon which

15  this Court could invoke its powers in equity to set aside the Stipulated

16  Judgment would seem controlling.  The Vail Company, nevertheless, avers "mistake"

17  in regard to certain geological and hydrological facts warrants vitiation by

18  this Federal Court of a State court's consent judgment entered twenty (20) years

19  ago.  Yet the Vail Company failed to prove that it would not have entered into

20  the Stipulated Judgment had it known the alleged true facts.  It has, moreover,

21  completely failed to prove irreparable damage, thus failing in a vital aspect

22  to sustain its burden of proof.  Those matters have been fully reviewed, thus

23  there will be no further comment in this consideration directed to them.

24   Vital comments by this Honorable Court in regard to the nature of the

25  Stipulated Judgment call for careful review.  Addressing itself to the nature

26  of the Stipulated Judgment, this Honorable Court declared:

27       "THE COURT:  I have suggested that the situation might be

28            different had there been a contract.  I am not

29            passing on that because I don't think there was

30            a contract."  1/

31  _____

32  1/  Tr. Vol. 129, page 14,620, lines 18 et seq.

6069

Later, at the same hearing, this Honorable Court stated:

"I think there was a mistake of fact by all parties in the old judgment.  They all agree that there was a mistake of fact.  They all felt that there were these various small basins.  We are almost unanimously of the opinion now that the basins are many times bigger." [2]

In the accompanying memorandum there is reviewed an unvarying line of authority which declares:

## I

The Stipulated Judgment is a contract between the parties to it, which has received the formal approval of the court entering it.  Its validity, interpretation and scope are governed by the laws of contract;

## II

"Mistake", if there was one, which is denied, is not grounds for setting aside the contract - the Stipulated Judgment - because the rights of a bona fide purchaser under the Stipulated Judgment, the United States of America, have attached; the Vail Company could not conceivably restore the United States of America to "substantially the same position as if the contract had not been made," as the law requires if the Judgment is set aside on the grounds of "mistake";

## III

"Ratification" by the Vail Company of the Stipulated Judgment, assuming there was a mistake, which is denied, binds the Vail Company irrevocably to the Stipulated Judgment; precludes granting to that Company the relief for which it prays;

## IV

Errors of the nature relied upon by the Vail Company were all waived by (a) the contract at its inception; (b) the Vail Company's subsequent course of conduct pursuant to which it repeatedly ratified and reaffirmed the Stipulated Judgment.

These and related propositions of law are fully reviewed in the paragraphs which succeed.

---

[2]  Tr. Vol. 129, pages 14665, lines 24-25; page 14,666, lines 1-3.

8070

- 3 -

STIPULATED JUDGMENT IS A CONTRACT --
NEITHER THE COURT WHICH ENTERED IT,
NOR AN APPELLATE COURT,
OR THIS HONORABLE COURT
UNDER THE PROVED FACTS
MAY CHANGE THAT CONTRACT

During arguments of the United States of America in support of the Stipulated Judgment, this Honorable Court declared:

"THE COURT:  I have suggested that the situation ⌈in regard to the Stipulated Judgment⌉ might be different had there been a contract.  I am not passing on that because I don't think there was a contract. * * *" [3/]

"I think there was a mistake of fact by all parties in the old judgment.  They all agree that there was a mistake of fact.  They all felt that there were these various small basins.  We are almost unanimously of the opinion now that the basins are many times bigger." [4/]

Reference in regard to those statements is made to the brief of the United States of America, dated September 21, 1959, which is designated "Response To Vail Company Memorandum Attacking Stipulated Judgment" at page 22 where the Stipulated Judgment is termed a contract.  However, in view of the statement in question and the seeming doubt as to the true nature of the Stipulated Judgment, there follows a full and comprehensive review directed principally to the contractual nature of that Judgment.  From that review it is manifest that:

The Stipulated Judgment is a contract binding upon the Vail Company and the United States of America; that the Stipulated Judgment in the light of those circumstances, is not subject to modification, revision or abrogation.

---

3/  Tr. Vol. 129, page 14,620, lines 18-20.

4/  Tr. Vol. 129, page 14665, lines 24-25; page 14,666, lines 1-3.

- 4 -

8071

California's courts have specifically declared that a stipulated judgment is a contract between the parties.  On the subject, this ruling has been made:

> "It has been stated ⌈most recently⌉ that:  The rule is well settled that a consent judgment, being regarded as a contract between the parties, must be construed as any other contract."[5]     (Emphasis supplied)

That statement is a mere reiteration of a rule earlier announced by a California court.[6]  Enunciation of that principle by the California court is a re-affirmance of the principle adhered to throughout the State and Federal courts.

A leading State court case contains this authoritative pronouncement:

> "A judgment by consent or stipulation of the parties is construed as a contract between them embodying the terms of the judgment.  It excuses all prior errors and operates to end all controversy between the parties, within the scope of the judgment."[7]

The decision last cited is the principal case in a most comprehensive annotation respecting the legal effect of a consent judgment.[8]  From that source this excerpt is taken:

> "A judgment by stipulation may be defined as a contract of the parties acknowledged in open court in order to be recorded by a court of competent jurisdiction; it is the result of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy."[9]

---

[5]  Yarus v. Yarus, 178 A C A 191, 198; ___ P.2d ___ (1960.  3 Cal. Rep. 50.

[6]  In Re Ferrigno, 22 CA2d 472, 474; 71 P.2d 329 (1937).

[7]  Washington Asphalt Co. v. Kaiser Co., 51 Wash.2d 89; 316 P.2d 126, 127 (1957); 325 P.2d 725 (1958);  69 A.L.R.2d 752, 759.

[8]  69 A.L.R.2d 759, et seq.

[9]  69 A.L.R.2d, 761, footnote 8.

6072

1    From another comprehensive annotation of numerous cases this

2    statement is taken:

3        "An agreed judgment is regarded as a contract between the

4        parties and it must be construed as any other contract." [10/]

5    From still another fully annotated case this statement is taken:

6        "A consent decree is not, in a strict sense, a judicial

7        sentence.

8            It is in the nature of a solemn contract, and

9            is so binding as to be absolutely conclusive

10           upon the consenting parties, and it can neither

11           be amended nor in any way varied without a like

12           consent, or can it be /¯a¯/ reheard, /¯b¯/ appealed

13           from, or /¯c¯/ reviewed upon writ of error." [11/]

14           (Emphasis supplied)

15   From still another frequently cited case this statement is quoted:

16       "The judgment being by consent, is to be construed as

17       any other contract of the parties." [12/]

18       Federal courts have universally adopted the tenet of the law

19   reaffirmed so frequently by the State courts, including California.  In a

20   principal decision this rule is found:

21       "When there is a consent as to what the decision shall be,

22       the decree is a 'mere agreement of the parties under the

23       sanction of the court, and is to be interpreted as an

24       agreement.'" [13/]

25   Affirming its earlier decision, the Court of Appeals for the Second Circuit

26   states:

27       A consent "decree is an agreement of the parties, and is to

28       be interpreted as an agreement * * *." [14/]

29   ----

10/   2 A.L.R.2d 519, footnote 17; citing Grayson v. Pure Oil Co., 189 Okla. 550;
30        118 P.2d 644 (1941);  Edwards v. Gifford, 137 Tex. 559, 155 S.W.2d 786
          (1941).

31   11/   139 A.L.R. 420, principal case McArthur v. Thompson, 140 Neb. 408;
          299 N.W. 519, 524 (1941).

32   12/   First Nat. Bank v. Mitchell, 191 N.C. 190; 131 S.E. 656, 658 (1926).
     13/   Hodgson v. Vroom, 266 Fed. 267,268 (C.A.2, 1920).
     14/   Wilson v. Haber Bros. 275 Fed. 346, 347 (C.A.2, 1921).

6073

GPO 16-29098-1

Generally the subject has been summarized as follows:

"A judgment by consent is in effect an agreement or contract of the parties * * *." [15]

"A judgment by consent being in the nature of a contract, should be construed as a written contract * * *." [16]

Freeman declares: "A consent judgment is undoubtedly contractual in its nature, and should be construed as though it were a contract." [17]

As a consequence of the unbroken line of authorities, it is free from doubt that the Stipulated Judgment is a <u>contract</u>; must be construed as a contract; has the sanctity of a contract, but "is obviously something more than a contract, being rather the result of a contract and its embodiment in a form which places it and matters covered by it beyond further controversy." [18]

RATIFICATION BY VAIL COMPANY OF ITS CONTRACT
THE STIPULATED JUDGMENT;
VAIL COMPANY'S OWN EVIDENCE PROVES CONCLUSIVELY
RATIFICATION OF STIPULATED JUDGMENT BY THAT
COMPANY

(a) <u>Statutes of California and Decisions
Preclude Vail Company From Avoiding
Its Obligation Under Its Contract,
The Stipulated Judgment:</u>

As the Stipulated Judgment is a contract, it is subject to precisely the same principles as any other contract. On the subject California's courts have spoken in these terms:

"* * * the same rules of interpretation apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing * * *." [19]

Again it has been declared in California:

"The rule is well settled that a consent judgment, being regarded as a contract between the parties must be construed as any other contract * * *." [20]

15/ 30A Am. Jur., Judgments, Sec. 144.
16/ 30A Am. Jur., Judgments, Sec. 149.
17/ 3 Freeman on Judgments, 5th Ed., Section 1350.
18/ 3 Freeman on Judgments, 5th Ed., Section 1350, page 2774.
19/ Bailey v. Superior Ct., 142 C.A.2d 47, 57; 297 P.2d 795 (1956).
20/ In Re Ferrigno, 22 C.A.2d 472, 474; 71 P.2d 329 (1937).

GPO 16—59995-2                    6074

1   California has largely codified the principles which control in this

2   case.  In keeping with that codification of the fundamentals of contract law,

3   California declares that:

4   "A contract which is voidable solely for want of due

5   consent, may be ratified by a subsequent consent." [21/]

6   Moreover, the California Code declares that:

7   "A voluntary acceptance of the benefit of a transaction

8   is equivalent to a consent to all the obligations arising

9   from it, so far as the facts are known, or ought to be

10   known, to the person accepting." [22/]

11   Barrier to the rescission by this Court of Vail Company's contract

12   is spelled out with specificity in that last quoted statutory enactment long

13   part of California's fundamental law.  Pertinent also in the law of California

14   is the provision that

15   "Rescission * * * can be accomplished only by the use,

16   on the part of the party rescinding, of reasonable diligence

17   to comply with the following rules:

18   1.  He must rescind promptly, upon discovering

19   the facts which entitle him to rescind * * *

20   2.  He must restore to the other party everything

21   of value which he has received from him under

22   the contract * * *." [23/]  (Emphasis supplied)

23   Further barrier to the relief which Vail Company seeks in regard to

24   its solemn contract is the legislative declaration that:

25   "Rescission for mistake.  Rescission cannot be adjudged

26   for mere mistake, unless the party against whom it is

27   adjudged can be restored to substantially the same position

28   as if the contract had not been made." [24/]

29   _____

30   [21/]  California's Civil Code, Sec. 1588.  "An apparent consent is not real or free
   when obtained through * * *  5.  Mistake."  Cal. Civil Code, Sec. 1567.

31   [22/]  California's Civil Code, Sec. 1589.

   [23/]  California's Civil Code, Sec. 1691.

32   [24/]  California's Civil Code, Sec. 3407.

GPO 16—20996-2

- 8 -

6075

1    Viewing, as required, the Stipulated Judgment as a contract; applying,

2  as is necessary, the precepts of the law spelled out by California in its

3  statutes, there follows this unavoidable conclusion:

4         Vail Company under California law is barred in the light

5         of the undisputed record from being relieved of its

6         obligations under its contract, the Stipulated Judgment.

7         Manifestly Vail Company has repeatedly ratified the Stipulated

8  Judgment; manifestly Vail Company cannot restore the United States of America

9  to the position it occupied when it acquired the Rancho Santa Margarita and

10 succeeded to the Rancho's rights under that Company's contract with the

11 Vail Company settling the rights of those parties in and to the waters of the

12 Santa Margarita River by the Stipulated Judgment.

13        Great importance must, of course, be ascribed to the facts that:

14        Vail Company relies upon "mistake" as a ground to have this

15        Court rescind the contract - yet ten (10) years ago Vail

16        Company's Pemberton Report, supplied to the United States

17        of America by the Vail Company, set forth in detail the

18        geology and hydrology proved in this cause.  Obviously

19        if there was a mistake, which is denied, Vail Company

20        had full knowledge of it and waited virtually ten (10)

21        years to attack the Stipulated Judgment based on the

22        alleged mistake.

23 It has been authoritatively declared:

24        "It is * * * fundamental that one seeking relief by

25        rescission or reformation shall indicate his election

26        promptly on discovery of the mistake and shall restore

27        the former status." 25/

28 That rule is reiterated in the Restatement of Contracts generally, and

29 specifically in regard to California. 26/   Relief is conditioned upon the

30 _____

31 25/  5 Williston, Rev. Ed. Sec. 1594.

32 26/  Restatement, Sec. 510; Sec. 480.

6079

promptness of the action by the one discovering the alleged mistake.  By no
conceivable stretch of the imagination can it be said that Vail Company acted
promptly - indeed, the converse is a proved fact.  Acceptance for upwards of
twenty (20) years by Vail Company of the benefits of the Stipulated Judgment
constitute ratification of that contract; binds it irrevocably.  Generally it
has been stated, in the light of a decision of the Supreme Court [27]/ that:

> "Acts of a party seeking equitable relief from a judgment
> may amount to such recognition or ratification of the
> judgment as to preclude relief." [28]/

As a California court has stated:

> "Lewis' contention that there are no grounds for a judgment
> against him is not consistent with the adjudication * * *
> He can not, / as Vail Company now attempts / on the one hand,
> accept the benefit of a judgment adjudicating title to him,
> and, on the other, disclaim liability for the purchase price
> of that which he has acquired." [29]/

Warranting reference is the fact that in the case last cited, the California
court applied to a judgment the principles of contract law. [30]/

Contractual Obligation of Vail Company
  Under the Stipulated Judgment, May Not
  Be Avoided Because the United States of
  America is a Bona Fide Purchaser Who Acted
  and Has Acted in Reliance upon Vail's
  Contract, The Stipulated Judgment:

There is no doubt that the United States of America is a bona fide
purchaser of the rights to the use of water embraced in the Stipulated Judgment
without knowledge of the alleged mistake.  Certain, moreover, is the fact
that subsequent to the acquisition of the rights embraced in the Stipulated
Judgment Vail Company repeatedly reaffirmed and ratified its contract.  It did
so, furthermore, after full knowledge of the geology and hydrology concerning
which it now asserts there is a mistake.

[27]/  Sample v. Barnes, 55 U. S. 77 (1852).
[28]/  30A Am. Jur., Judgments, Sec. 820.
[29]/  Braden v. Lewis, 119 C.A.2d 84, 88-89; 259 P.2d 16.
[30]/  California Anno. Civil Code, Sec. 1589.

6077

1    Succinctly Freeman states in these terms the rule which it is

2    respectfully submitted, governs here:

3    "Laches will defeat the application ⎡to set aside a

4    judgment⎤ and relief cannot be granted when it would

5    prejudice the rights of third persons who acted upon the

6    strength of the judgment." 31/

7    A leading case on the subject has declared that ⎡a⎤ laches,

8    ⎡b⎤ intervening rights of third parties preclude a court from granting

9    equitable relief from a consent judgment of the nature requested by Vail

10   Company. 32/    On the subject it has been stated:

11   "* * * liens or property rights acquired intermediate the

12   original judgment and its amendment * * * are not affected

13   by the amendment is the general rule stated and recognized

14   by the cases." 33/

15   Repeatedly it has been ruled that where, as here, there has been an acquisition

16   by a bona fide purchaser of rights predicated upon a judgment the courts

17   refuse to grant equitable relief. 34/

18   Manifestly, in the light of the law reviewed, Vail Company should

19   be prohibited from avoiding its contractual obligations under the Stipulated

20   Judgment.

21   (b)  Factual Review of Vail Company's
           Ratification of Its Contract, The
22         Stipulated Judgment, Is Conclusive and
           Unchallenged - Largely Predicated Upon
23         Vail Company's Proof In This Cause:

24   Seldom will there be found evidence more clearly proving ratification

25   of an existing contract, the Stipulated Judgment, than in this case.  Through

26   a long course of conduct Vail Company ratified, affirmed and re-affirmed its

27   intentions to be bound by the Stipulated Judgment.  This fact has been

28

29   ———————————————————————————————
     31/  3 Freeman on Judgments, 5th Ed., Sec. 1352, page 2779.
30   32/  Indiana, B & W Ry. v. Bird, 116 Ind. 217; 18 N.E. 837 (1886).
     33/  48 A.L.R. 1182
31   34/  30A Am. Jur., Judgments, Sections 819, 760, 764.

32

6079

1   indisputably proved:

2     Representations by Vail Company that it would be bound by

3     the Stipulated Judgment caused the United States of America

4     to withdraw its protest to Vail's application to construct

5     its dam at Nigger Canyon.

6   Brief summary of uncontested facts respecting the withdrawal by the United

7   States of America of its protest above mentioned, proves ratification by Vail

8   Company:

9     (a) In the years 1942-1943 title to the Rancho Santa

10     Margarita was acquired by the United States of America; [35]

11    (b) United States of America succeeded to rights to the use

12     of water in the Santa Margarita River owned by the

13     Rancho Santa Margarita, including the rights as set forth in

14     the Stipulated Judgment dated December 26, 1940; [36]

15    (c) August 16, 1946, Vail Company filed application No. 11518

16     with the State Engineer of the State of California for

17     the purpose of obtaining authorization for the construc-

18     tion in Nigger Canyon on Temecula Creek, of a dam with

19     a storage capacity of 41,140 acre-feet; [37]

20    (d) By its letter of August 14, 1947, the United States of

21     America forwarded to the State Engineer its protest "to

22     [Vail Company's] application No. 11518." [38]

23    (e) Spelled out in the protest mentioned in (d) above were

24     the claims of the United States of America under the

25     Stipulated Judgment;

26    (f) By the following letter [39] Vail Company reaffirmed the

27     binding effect upon that Company of the Stipulated Judgment:

28  _____

29  35/   U.S.A.-Plaintiff's Exhibit 2 A 3.

  36/   U.S.A.-Plaintiff's Exhibit 14.

30  37/   Vail Company's Exhibit A.

  38/   Vail Company's Exhibit A K 7.

31  39/   U.S.A.-Plaintiff's Exhibit 162.

32

6079

U.S.A.-PLAINTIFF'S EXHIBIT 162

V A I L   C O M P A N Y
5658 Wilshire Boulevard
Los Angeles 36, California
Wyoming 2114

October 6, 1947

Commanding General
Marine Barracks
Camp Pendleton
Oceanside, California

Dear Sir:

Following a conference in the office of
Public Works Officer, 11th Naval District, we wish
to state that in the Superior Court Judgment now in
effect, apportioning the waters of the Santa Margarita
River between us, it is our understanding and belief
that the 1/3 and 2/3 division is of the total water
crop of the stream system, including flood water.
Any diversions that we may make by means of Vail Dam
and reservoir will not mature into an appropriative
right as against you, over and above or superseding the
proportion of water alloted to us by the Judgment.

It is our understanding that this state-
ment will enable you to withdraw your Protest of
August 14, to our Application No. 11518.  This will
enable us to proceed more promptly with the dam
construction, and the earlier impounding and bene-
ficial use of flood waters.

It is understood that a detailed method
of operation of Vail Dam and other measurements
necessary to the division of the stream in accordance
with Judgment will be the subject of a later agreement
between us.

Yours very truly,
VAIL COMPANY
By /s/ Mahlon Vail
Managing Trustee

Mahlon Vail
MM
(Emphasis supplied)                          ENCLOSURE (A)

- 13 -

8080

Note from the quoted exhibit the unequivocal statement

by Vail Company that it would be bound by the Stipulated

Judgment:

"* * * we wish to state that in the Superior

Court Judgment now in effect, apportioning the

waters of the Santa Margarita River between us,

it is our understanding and belief that the 1/3

and 2/3 division is of the total water crop of

the stream system, including flood water. * * *

"It is our understanding that this statement

will enable you to withdraw your Protest of

August 14, to our Application No. 11518. * * *"

(g)  Reliant upon Mahlon Vail's statement on behalf of the

Vail Company in his letter of October 6, 1947, [40] set

out in full, the United States of America withdrew its

protest filed August 14, 1947, all as reviewed above.

Its letter withdrawing its protest is set forth in full:

U.S.A.-PLAINTIFF'S EXHIBIT 162

COMMANDANT'S OFFICE
ELEVENTH NAVAL DISTRICT
San Diego 30, California

KF157/226
ND11-AKF/Ba
Serial 28775/44

Oct 29 1947

My dear Mr. Hyatt:

Under date of August 14, 1947, I forwarded you a protest

on Application No. 11518 from the Vail Company for the con-

struction of a dam on Temecula Creek tributary to the Santa

Margarita River.  Receipt was acknowledged by your letter

of August 25, 1947.

This protest was filed for the reason that the U. S.

Government has very substantial interests in the water rights

---

[40]  U.S.A.-Plaintiff's Exhibit 162.

- 14 -

6081

1  of the Santa Margarita River as successor in ownership to the

2  Santa Margarita Ranch and as covered by recorded Superior

3  Court Judgement, San Diego and Riverside Counties (Decem-

4  ber 26, 1940), in the case of Vail Company vs. Santa Margarita

5  Ranch.  While this Judgement gives the Vail Company the right

6  to build and operate such a dam, it does so under certain

7  conditions.  The Government was not, at that time, informed

8  as to whether or not the Vail Company intended to abide by

9  these conditions.

10     This office has had several subsequent meetings with

11  representatives of the Vail Company and is now satisfied

12  that that Company intends to meet these conditions fully.

13  The protest is accordingly hereby withdrawn.

14     It is probable that both the Vail Company and the U. S.

15  Government will desire later to work out an agreement covering

16  points requiring clarification, but this should not affect

17  the construction of the dam.

18
                                Very truly yours,
19  CC:                         O. C. BADGER,
    Budocks                     Rear Admiral, U. S. Navy,
20  CG,MT&RC, SD Area           Commandant, Eleeventh Naval
    CG, Camp Pendleton              District
21  PWO, Camp Pendleton

22                              A. K. FOGG
    Edward Hyatt, State Engineer,   By Direction.
23     Division of Water Resources,
         Department of Public Works,
24          State of California,
              Sacramento, California
25
    Copy to:
26     Vail Company

27     (h)  At the hearing on Vail Company's Application 11518

28       the hearing officer of the State of California announced:

29          "* * * the 11th Naval District's protest against

30          the Vail Company application No. 11518 has been
                              41/
31          withdrawn."   ‾‾‾     (Emphasis supplied)

32
    ──────────────────────
    41/  U.S.A.-Plaintiff's Exhibit 161, Reporter's Transcript of Hearing -
         Division of Water Resources Dec. 16, 1947, page 2, lines 7-8.

- 15 -

6082

GPO 16—29998-1

1        "As the record now stands the protestants against

2    your /¯Vail Company's ¯7 application 11518 have boiled

3    down to those of the Schloss Estate and the Fallbrook

4    Public Utility District * * *." [42/]

5       (i)  California confirmed the withdrawal of the protest by

6    the United States of America against Vail Company's

7    Application No. 11518; confirmed that the United States

8    of America had not withdrawn its protest against Fallbrook's

9    Application No. 11586 by this official pronouncement: [43/]

10                   STATE OF CALIFORNIA     Vail Company's Exhibit AK3
               DEPARTMENT OF PUBLIC WORKS

11                DIVISION OF WATER RESOURCES
                  MEMORANDUM

12       Mr. Hyatt                  Date   December 24, 1947
  To  Mr. Stoddard            Subject  Applications 11518 - 11586

13   From Gordon Zander

14

15       Note attached resolution of San Diego County Water Authority

16   requesting Division to delay action on all pending applications on Santa

17   Margarita River.

18       Van Etten reports that the Army Engineers hope to have a report on

19   the river about May 1, 1948. He further reports that the Bureau has done

20   very little on their Santa Margarita investigation and that they could give

21   him no estimate as to when they might render a report.

22       Both the Vail Company and the Fallbrook Public Utility District are

23   pressing for permits on their respective applications. The Navy has withdrawn

24   its protest against the Vail application and at the hearing in Los Angeles on

25   December 16 both the Fallbrook Public Utility District and the Murray Schloss

26   Estate took the position that they did not want to stand in the way of the

27   immediate construction of a reservoir by the Vail Company at Nigger Canyon.

28       The Fallbrook Public Utility District is particularly anxious for

29   _____

30   42/  U.S.A.-Plaintiff's Exhibit 161, page 134.

31   43/  Vail Company's Exhibit AK-3.

32

8083

1  early action on its Application 11586 for 2½ cubic feet per second direct

2  diversion from the Santa Margarita River.  At the hearing the Navy did not

3  recede from its protest /against the Fallbrook Public Utility District

4  Application 7 in any particular but the transcript will be in by the

5  first of the year and it is believed that the record will then be adequate to

6  permit this office to make a decision.

                                          s/    Gordon Zander
7
                                          Principal Hydraulic Engineer.

8

9        There is thus positive proof of Vail Company's ratification of the

10  Stipulated Judgment.  A ratification, let it be emphasized, which took place

11  seven (7) years after the entry of the Stipulated Judgment; six (6) full years

12  after the United States of America succeeded to the rights under the

13  Stipulated Judgment.  Basic contract law reviewed above precludes Vail

14  Company, thirteen (13) years subsequent to the ratification, to reject the

15  Stipulated Judgment.

16  (c)  <u>An Enforceable Contract Between Vail
        Company and the United States of America</u>
17          <u>Arose When the Latter at the Request of the
        Former Withdrew its Protest to Vail Company's</u>
18          <u>Application:</u>

19        Let this fact be respectfully emphasized:

20      (1)  Vail Company requested the United States of America

21           to withdraw a protest filed by the United States of

22           America in opposition to Vail Company's Application

23           with California to build a dam;

24      (a)  The United States of America, acting upon the

25           explicit statement by Vail Company that it would be

26           bound by the Stipulated Judgment, withdrew the protest;

27      (3)  There arose a valid and enforceable contract between

28           the United States of America and Vail Company pursuant

29           to that course of conduct.

30      As stated by the Court of Appeals for the Fifth Circuit in a

31  case precisely in point:

32

                                                           6084

1       "It is too well settled to require much citation of

2       authority that a bona fide contest furnishes adequate

3       consideration for a contract of settlement." [44]/

4       The contractual relationship between Vail Company and the United

5 States of America stemming from the latter's withdrawal of the protest cures

6 any defects which could exist in the Stipulated Judgment; gives rise to a basic

7 claim in the United States of America which, of course, it now seeks to enforce

8 and will continue to seek to have enforced.

9 (d)   Vail Company Proposed That it Would Drill
     What Is Now Known as the "Naval Well" to

10      Meet Its Obligations Under Stipulated
     Judgment; United States of America Undertook

11      to Drill Well On Representation Vail Company
     Would Be Bound By Its Contract - The

12      Stipulated Judgment:

13       Demand by the United States of America for compliance by Vail Company

14 with the Stipulated Judgment on July 26, 1951, was set forth in these terse terms:

15               MARINE BARRACKS
           CAMP JOSEPH H. PENDLETON

16              OCEANSIDE, CALIFORNIA

17                          29054

18                          26 July 1951

19 O'Melveny & Myers
   433 South Spring Street

20 Los Angeles, California

21 Attention: Mr. Lauren M. Wright

22 Dear Sir:

23 It has come to the attention of this command, as the result

24 of the analyses of the stream flow readings collected by Mr.

25 F. E. Green, which we understand are made available to your

26 client, the Vail Company, as in Section Seventh provided in the

27 Stipulated Judgment entitled, "Rancho Santa Margarita, a corpor-

28 ation, versus N. R. Vail, et al," in the Superior Court of the

29 State of California in and for the County of San Diego, recorded

30 on 26 December 1940, that, contrary to certain stipulations in

31 —————————————————
44/ El Paso County Water Improvement Dist. No. 1 v. City of El Paso,

32     243 F.2d 927, 933 (C.A.5, 1956); Cert. denied 355 U. S. 820 (1957).

6085

1   Section Eleventh provided in the aforementioned Stipulated

2   Judgment, the surface flow at Gaging Station Number Three (3)

3   located at the upper end of Temecula Gorge, immediately down-

4   stream from the confluence of Murrieta Creek, has been per-

5   mitted to fall below three (3) cubic feet per second for a

6   continuous period in excess of ten (10) days, to wit:  from 3

7   July 1951 through 22 July 1951, inclusive.

8   Please treat this communication, therefore, as our formal demand

9   upon your client, the Vail Company, to take necessary, immediate

10  action to contribute the deficiencies occasioned by the de-

11  creased surface flow, as it has deviated from the provisions

12  of the Stipulated Judgment, supra.

13                              Very truly yours,

14                              OLIVER P. SMITH
                                Major General, USMC
15      Copy to:                    Commanding
        BUDOCKS
16      QMG, MC
        11th NAVDIST
17      Mr. Wm. H. Veeder,
            Dept of Justice

18

19      Unequivocal language of demand quoted above emphasizes the reliance

20  upon; the importance of the Stipulated Judgment to the United States of America.

21  Recognition of Vail Company's responsibilities under the Stipulated Judgment;

22  an expression of its intention to drill a well to meet demands of the

23  Stipulated Judgment, are contained in its reply dated August 2, 1951 $\underline{45/}$ to the

24  letter of July 26, 1951, which is set forth above.

25                  U.S.A.-PLAINTIFF'S EXHIBIT 159

26                      O'MELVENY & MYERS
                        433 South Spring Street
27                          Los Angeles
                               13
28                            August
                               2nd                    7430-a
29  Oliver P. Smith              1 9 5 1
    Major General, USMC
30  Commanding
    Marine Barracks
31  Camp Joseph H. Pendleton
    Oceanside, California              Re Your No. 29054

32  Dear Sir:
            We are in receipt of your letter of July 26, 1951, relative

45/ U.S.A.-Plaintiff's Exhibit 159.

GPO 16—29906-2                          - 19 -                    8086

to the surface flow at Gaging Station Number Three (3), located at
the upper end of Temecula Gorge.  Our client, the Vail Company had
anticipated the possibility of a low surface flow due to the unprece-
dented drouth conditions and as was disclosed in negotiations with you
some time ago, planned the drilling of a deep well in the lower end of
Pauba Valley and using it to pump water into the stream, if necessary,
to maintain the minimum flow at Temecula Gorge.

       The program of drilling and developing this well was taken
over by you and through unforseen circumstances its completion has
been delayed long beyond the anticipated date.  If this delay had not
occurred, the well would have been in production prior to the period
mentioned in your letter and the deficiencies occasioned by the de-
creased surface flow would not have occured.

       We understand that a test pump has been installed in the well
and the well is in the process of being tested.  As you know, until
the draw-down curve of the well has been established it is difficult
to obtain the proper pumping equipment.  The Vail Company made advance
preparation with the power company and with the pump company so that
there will be no delay in installing the new equipment as soon as the
driller's test is finished.  There is no other readily available well
from which water can be obtained to increase the stream flow at the
Gorge.  The artesian flow from the well that is now going into the
stream has raised the flow at the Gorge above the minimum requirement.
We understand that the water produced during the testing of the well
will more than make up the deficiency occasioned by the decreased sur-
face flow within a matter of a day or two.  We understand that the de-
ficiency is approximately 33 acre feet.

C087

#2 - Oliver P. Smith
   Major General, USMC - 8-2-51

   We hope that the above information is sufficient to satisfy
your formal demand.  If anything further is required, the Vail Company
stands ready to do everything humanly possible to comply with the pro-
visions of the stipulated judgment.

                              Yours very truly

                              O'MELVENY & MYERS


                              By /s/ LAUREN M. WRIGHT

LMW mcp

cc:  Mr. Mahlon Vail
     Vail Company
     5658 Wilshire Blvd.
     Los Angeles 36, Calif.

cc:  Mr. H. M. Hall
     411 So. Wall Street
     Los Anveles 13, Calif.

                              B/T Log: 63461
                                Rcvd. 8/9/51
cc: FHC                       · Rtd. Aug 13 1951

(Emphasis supplied)

   Analysis of Vail Company's letter of August 2, 1951 [46/] set forth above,
reveals the compelling reasons for binding Vail Company to the Stipulated
Judgment.  Pertinent in particular is this sentence:

   "Our client, the Vail Company

      [a] had anticipated the possibility of a low surface flow

         due to the unprecedented drouth conditions and

      [b] as was disclosed in negotiations with you some time ago,

      [c] planned the drilling of a deep well in the lower end of

         Pauba Valley and

      [d] using it to pump water into the stream, if necessary,

      [e] to maintain the minimum flow [required by the Stipulated

         Judgment] at Temecula Gorge."

─────────────────────
46/  U.S.A.-Plaintiff's Exhibit 159.

6088

This Honorable Court is thus presented with an unprecedented affirmance by Vail Company of its obligation

    (a)  to abide by the Stipulated Judgment;

    (b)  to abide by the proviso of the Stipulated Judgment requiring the maintenance of a minimum flow of three (3) c.f.s. at Temecula Gorge;

    (c)  to abide by the Stipulated Judgment through drilling a well at its own expense to provide a means of meeting the minimum flow at Temecula Gorge as prescribed by the Stipulated Judgment.

Specific performance of the contract - the Stipulated Judgment - is also evinced by Vail Company's letter of August 2nd, 1951, which has been quoted in full. Having recognized its obligation to maintain a minimum flow of three (3) c.f.s. at Temecula Gorge; having reviewed its intention to drill a well to provide that minimum flow, Vail Company admitted a brief failure on its part to fulfill its contract respecting the three (3) c.f.s. and explained:

"There is no other readily available well $\underline{\big/}$ on Vail Ranch $\underline{\big/}$ from which water can be obtained to increase the stream flow at the Gorge." [47]

Vail Company recognizing, nevertheless, its obligation under the Stipulated Judgment to make up deficits due to its failure to maintain the flow at the Gorge states:

"The artesian flow from the $\underline{\big/}$ Naval $\underline{\big/}$ well that is now going into the stream has raised the flow at the Gorge above the minimum requirement $\underline{\big/}$ of three (3) c.f.s. $\underline{\big/}$."

It adds: "We understand that the water produced during the testing of the well will more than make up the deficiency occasioned by the decreased surface flow within a matter of a day or two."

Admitting past and present obligations under its contract spelled out in the Stipulated Judgment is but a part of Vail Company's ratification of

---

[47]  U.S.A. pPlaintiff's Exhibit 159.

6089

GPO 16—29995-2

1   that covenant.  It projected into the future its responsibilities in these

2   terms:  "We hope that the above information is sufficient to satisfy your

3   formal demand /⎯by the United States of America that Vail Company comply with

4   its obligations under the Stipulated Judgment_7.

5           If anything further is required, the Vail Company stands

6           ready to do everything humanly possible to comply with

7           the provisions of the stipulated judgment." [48]/

8           Ratification, reaffirmance, reiteration of a solemn obligation under

9   the Stipulated Judgment is thus voiced by Vail Company to the United States of

10   America; thus declared virtually ten (10) years subsequent to the acquisition

11   by the United States of America of the rights embraced in that contract;

12   subsequent to the expenditure by the United States of America, reliant upon

13   the Stipulated Judgment guaranteeing a gravely needed supply of water, of

14   in excess of $100,000,000.00.

15           Attempted avoidance now - ten (10) years later - by Vail Company

16   of its contractual obligations under the Stipulated Judgment shocks the

17   conscience.

18   (e)  Vail Company Having Planned Drilling
19        "Naval Well" to Fulfill Obligations Under
          Stipulated Judgment, Agreed to be Bound by
20        Stipulated Judgment When United States of
          America Drilled That Well;
21        Vail Company "Bought" In On Naval Well;
          Vail Company Again Ratified Stipulated Judgment:

22           Proof that Vail Company planned to drill the "Naval Well" to provide

23   water to meet its obligations under the Stipulated Judgment is an established fact

24   reviewed above.  Vail Company's Exhibit A S proved, moreover, that after the

25   United States of America undertook to drill the well, "Mr. Vail worked through

26   the Public Works Officer /⎯of the United States of America_7 with the technical

27   OK from Mr. Worts

28           for buying in on the /⎯Naval Well_7 to get complete

29           perforation of the casing the entire depth." [49]/

30

31   [48]/  U.S.A.-Plaintiff's Exhibit 159.

32   [49]/  Vail Company's Exhibit A S.

6090

GPO 16-29006-1

1    Vail Company's Exhibit A R moreover proves

2    (a)  the "Additional labor and material" required for

3         Vail Company to buy into the "Naval Well";

4    (b)  Total additional cost for Vail Company to buy into

5         "Naval Well" $16,936.35.  [50]/

6    Full ratification of the Stipulated Judgment is contained in the

7    "Revocable Permit Agreement Between Vail Company and the United States of

8    America" pursuant to which the "Naval Well" was drilled.  [51]/

9         "4.  It is understood and agreed that the exploratory

10        water well / Naval Well 7, when completed, shall belong to and

11   MV   be wholly under the control of the Permitter, and shall be

12        considered a 'water well' under that certain Stipulated

13        Judgment in an adjudication suit entitled 'Rancho Santa

14        Margarita, a Corporation, versus N. R. Vail, et al.,'

15        No. 42850 in the Superior Court of the State of California

16        in and for the County of San Diego, California, dated

17        December 26, 1940."  [52]/   (Emphasis supplied)

18   That agreement was signed by the Vail Company on the 8th day of March 1951.  Again

19   Vail Company made a complete reaffirmation and ratification of its obligations

20   under its contract, the Stipulated Judgment.

21        Let it again be respectfully emphasized that the "Naval Well" was,

22   in the words of the Vail Company "planned * * * to pump water into the stream,

23   if necessary, to maintain the minimum flow at Temecula Gorge / under the

24   Stipulated Judgment 7."  [53]/

25        Cost of the "Naval Well," into which Vail Company bought; in regard to

26   which it ratified the binding effect of the Stipulated Judgment, to the United

27   States of America was $51,610.55, all as disclosed below:

28   _____

29   50/  Vail Company's Exhibit A R - 9 and 10.

30   51/  U.S.A.-Plaintiff's Exhibit 159.

31   52/  U.S.A.-Plaintiff's Exhibit 159.

32   53/  U.S.A.-Plaintiff's Exhibit 159.

- 24 -

6091

C-250.01/ej
NOy-27008

3 Mar 1952

From:    Chief, Bureau of Yards and Docks
To:      Quartermaster General of the Marine Corps

Subj:    Completion of project, Camp Pendleton, Oceanside, California

1.  The following is a report on a completed project which was
financed from appropriation 1711106.11, MCT&F, 1951, and on which
the work was accomplished by Contract NOy-27088.  The unexpended
balance is returned hereby to the Marine Corps for credit to the
appropriation:

Project:  Survey of water resources on Vail Property (Pauba test well).

| | |
|---|---|
| Allocation to BUDOCKS under QM Authority No. 6386 | $51,718.00 |
| Expenditure as shown by voucher | 51,610.55 |
| Unexpended balance | $   107.45 |

Copy to:
OICC, 11ND

George W. Higgs, Jr.
By direction of Chief of Bureau

Each year, Vail Company has proved in this cause, the "Naval Well"
is used as an integral part of its irrigation system to its great benefit and
profit.

Obviously the whole course of conduct of Vail Company has been one
of ratification of its contract spelled out in the Stipulated Judgment; [54/]
ratification, let it be emphasized, after full knowledge of the alleged
"mistake."

(f)  Ratification by Vail Company of Stipulated
     Judgment After Full Knowledge of the Geology
     Proved in This Case Concerning Which That
     Company Avers There Was a "Mistake";
     Under the Law Vail Company May Not Now
     Rescind the Stipulated Judgment Which is a
     Contract:

Ratification of the Stipulated Judgment ten (10) years ago by
Vail Company came about

54/  California Civil Code, Secs. 1588, 1589.

- 25 -

6092

1    after full, complete, precise and accurate knowledge

2    had been obtained by that Company respecting the geology

3    and hydrology concerning which it now claims a "mistake."

4  That ratification, let it be emphasized, stems to a large degree from the evidence

5  which Vail Company introduced in this cause.

6        Vail Company's Exhibit A R - 13 is especially relevant for it is a

7  letter dated November 9, 1950, transmitting Vail Company's Pemberton Report. [55/]

8  That Vail Company's Pemberton Report, let it be further respectfully emphasized,

9  was procured by Vail Company at the time it "planned the drilling of a deep well

10  in the lower end of Pauba Valley and using it to pump water into the stream,

11  if necessary, to maintain the minimum flow at Temecula Gorge [ as required by

12  the Stipulated Judgment ]." [56/]

13        Antecedent to an analysis of the Pemberton Report, exploding the myth

14  of a "mistake" upon which Vail Company relies, is consideration of the letter

15  to the United States of America transmitting the Report in question.

16                    VAIL COMPANY'S EXHIBIT  A K 13

17                    H. M.  H A L L
18                    Consulting Engineer
                      411  South Wall Street
19                    Los Angeles 13

20                                      November 9, 1950

21  Colonel A. H. Dubber
    Headquarters, U. S. Marine Corps
22  Office of Quartermaster General
    Washington 25, D. C.

23  Dear Col. Dubber:

24      Enclosed herewith is the report from J. R. Pemberton,

25  geologist, as to the probability of the existence of a large

26  supply of water that can be pumped from the Pauba Valley on

27  the Vail Ranch.

28      [ a ]  The terms of the stipulated judgment of the California

29  Courts, under which the camp is now sharing the waters of the

30  Santa Margarita River with the Vail Ranch, hold that all water

31  _____
    55/  U.S.A.-Plaintiff's Exhibit 205.
32  56/  U.S.A.-Plaintiff's Exhibit 159.

                              - 26 -                        6093

GPO 16—29095-1

pumped from this basin shall be considered as part of the stream flow, which is divided between the two properties, giving the Camp two thirds of the total crop available for such use.  [ b ]  Therefore water pumped under the Pemberton Plan will increase this total water crop and in reality is to the advantage of Camp Pendleton.  [ c ]  However, under the terms of the judgment, we are entitled to use an amount of water equal to half of the total use of the Camp, plus all the flood water we have captured at Vail Dam.

At present we have no pipe line from the dam to our distributing system so plan on turning it loose at the dam and recapturing it below, as stated in our original application.  [ d ]  Since in pumping from the underground there is no way of differentiating between shallow sources and the deep artesian waters, the total pumping from the valley will of necessity all be in one classification.  [ e ]  This pumped water can be used by us during periods when it seems wise to hold our stored flood water, or during an exceptionally dry season when, by the terms of the judgment, we are obliged to maintain a minimum stream flow at the Temecula Canyon Measuring Station.

We therefore feel that we should consider this deep stored water as "money in the savings bank" and that it should be held principally for the above mentioned uses.

That there is a large available supply in the deeper gravels can not be doubted.  There are four wells in the main Pauba Valley drilled nearly 50 years ago to a depth of just over 500 feet, all showing artesian pressures and having a free flow over the casing top of some 600 gallons per minute when last measured.  These wells as far as we know have never been pumped, and we doubt the wisdom of pumping them now as the casing is light and badly corroded, but a

8094

new and deeper well by all known indications, should yield
a large supply of water.

As a yardstick for the likely production of wells drilled
in the known artesian belt at a depth of 500 ft. we think it
is safe to use two wells that are located just off the ranch
property, which are both producing in excess of 100 miner's
inches at low lifts.  One of them just recently tested is
producing 115 miner's inches with only a 6 ft. drawdown.  We
believe that a number of wells properly spaced just above
the fault on the ranch should be equally productive even though
not drilled to the deepest gravels referred to in Mr. Pember-
ton's report.

We of course realize how important it is for the Camp
Pendleton to be able to meet any immediate demand for water.
In case the situation should become critical in the near
future, we feel sure that a plan can be worked out that will
assure a supply adequate to meet any emergency.

                              Sincerely yours,

HMH:em                        /s/  H. M. Hall
Encl.


Admissions that Vail Company was and is bound by the Stipulated
Judgment; how Vail Company interpreted its responsibilities under the Stipulated
Judgment, are found throughout the letter just quoted transmitting its
Pemberton Report.  To be noted for example:

"The terms of the stipulated judgment of the California
Courts, under which the camp is now sharing the waters of the
Santa Margarita River with the Vail Ranch, hold that all water
pumped from this basin shall be considered as part of the
stream flow, which is divided between the two properties, giv-
ing the Camp two thirds of the total crop available for such
use. * * *    under the terms of the judgment, we are entitled
to use an amount of water equal to half of the total use of the
Camp, * * *."

- 28 -

6095

GPO 16—20008-2

1    Especially pertinent is Vail Company's observation based upon its

2    Pemberton Report, that in the ground-water basin, proved in this case,

3         "That there is a large available supply in the deeper

4         gravels can not be doubted."

5    Source of that large supply of water is well defined and clearly identified

6    in Vail Company's Pemberton Report.  At this juncture this Honorable Court

7    is respectfully requested to view the basin area which it has designated on

8    United States of America-Plaintiff's Exhibit 15 E.  Observed in that regard

9    will be this indisputable fact -- Vail Company's Pemberton Report of

10   October 21, 1950, defines precisely the same basin area as is depicted on the

11   above mentioned 15 E as being the ground-water basin encompassed by the older

12   and younger alluvium.   Full analysis of Vail Company's Pemberton Report of

13   October 1950 by this Honorable Court is petitioned in the light of the full

14   record in this cause.  Yet these few quoted excerpts from the Pemberton Report

15   are warranted for they bely and refute Vail Company's contention that it has

16   been laboring under a "mistake" as to the dimensions of the ground-water basin;

17   that it did not have knowledge until this trial of the magnitude of the water

18   resources available to it:

19           Excerpts From Letter Transmitting To Vail Company

20              The Pemberton Report   57/

21                 J. R. PEMBERTON

22            Petroleum Geologist and Engineer

23               714 West Olympic Boulevard

                 Los Angeles 15, California

24                            October 21, 1950

25   Mr. Mahlon Vail,
     Vail Company,

26   5658 Wilshire Blvd.,
     Los Angeles, Calif.

27   Dear Sir:-

28      Herewith please find my report covering the essential

29      details of the factors bearing on the probable location

30      and depth of heretofore undeveloped artesian water resources

31   _____

32   57/  U.S.A.-Plaintiff's Exhibit 205.

                         - 29 -

1  of the Pauba Ranch at Temecula, California.  This in response

2  to your request that I give you my opinion covering the above

3  subject.

4      My opinion is that there is a very large supply of deep

5  artesian water in the lower Temecula Valley which is as yet

6  unexploited.

7                    * * *

8                              Very truly yours,

9                              /s/  J. R. Pemberton

10

11  Excerpts From Vail Company's Pemberton Report On Geology

12              J.  R.  P E M B E R T O N
                Petroleum Geologist and Engineer
13                714 West Olympic Boulevard
                  Los Angeles 15, California
14
                  ARTESIAN WATER RESOURCES
15
                          Of the
16
                        PAUBA RANCH
17
   INTRODUCTION
18
        The Pauba Ranch, situated in the extreme southwestern corner
19
   of Riverside County, California, and surrounding the small town
20
   of Temecula, is well blessed with an abundance of water.
21
                    * * *
22
   GEOLOGY OF THE AREA
23
                    * * *
24
        The vast expanse of continental or fresh water sediments
25
   which occupy the area below 1500 feet elevation in the Pauba
26
   Ranch area and which extend from Aguanga far up the Temecula
27
   River Valley to Corona along the great Elsinore Rift comprise
28
   the main sedimentary series and at the same time form a
29
   reservoir for a great volume of water.  Exposed sections of
30
   the uppermost part of this series, which is of later Pliocene
31
   age or inpart earliest Pleistocene, indicate a high percent-
32
   age of sands and sandy shales with a minimum of shale.  The

6097

1     logs of drilled wells in every part of the expanse of these

2     strata show alternating sands, gravels, sandy shales and a

3     minor amount of clay and clay shale.  With the possible excep-

4     tion of outlying wells around the perimeter of the area covered

5     by these strata, no well has been drilled for water to the

6     bottom of this series, but in so far as drilling has progressed

7     the proportion of gravel and coarse sand increased with depth.

8     Within the Pauba Ranch these sediments cover more than 35 square

9     miles and doubtless the volume of gravels suitable for carrying

10     water would exceed half a billion cubic yards.  It is in these

11     gravels that the ground water resources of the Pauba Ranch exist.

12     (Emphasis supplied)

13         With precision, over ten (10) years ago, there was destroyed by the

14 Vail Company's Pemberton Report, any basis for now claiming a hitherto unknown

15 "mistake" in geology and hydrology.  Vail Company points to the geology as

16 found in the case of RanchoSanta Margarita v. Vail to support the claimed

17 "mistake".  Yet its own Pemberton Report on geology leaves unchallenged an

18 indisputable fact:

19     Vail Company ratified and affirmed the Stipulated Judgment

20     ten (10) years ago with full knowledge of the geology now

21     proved by the United States of America.

22 Equity, it is respectfully submitted, could never be invoked under the

23 circumstances, to set aside that contract; that Stipulated Judgment so

24 long in force; so long relied upon by both parties.  Reference is again made

25 to this statement from Vail Company's Pemberton Report:

26     "The vast expanse of continental or fresh water

27     sediments which occupy the area below 1500 feet elevation

28     in the Pauba Ranch area and which extend from Aguanga far

29     up the Temecula River Valley to Corona along the great

30     Elsinore Rift comprise the main sedimentary series and at

31     the same time form a reservoir for a great volume of water.

32

6099

1    * * * Within the Pauba Ranch these sediments cover more

2    than 35 square miles and doubtless the volume of gravels

3    suitable for carrying water would exceed half a billion

4    cubic yards.  It is in these gravels that the ground water

5    resources of the Pauba Ranch exist."

6          Error plain, serious, reversible, and clear beyond question would

7    pervade any findings by this Honorable Court which do not specifically declare

8    that Vail Company more than ten (10) years ago had full, complete and exact

9    knowledge of the geology and hydrology as proved in the record of this case.

10   Error plain, serious, reversible and clear would pervade any findings which

11   did not declare that subsequent to obtaining of the full, complete and exact

12   knowledge of the geology as proved in this case, Vail Company, during the ten

13   (10) years after the Pemberton Report, repeatedly ratified and reaffirmed its

14   contract - the Stipulated Judgment - with the United States of America.

15          Violence would be done to the truth; to equity and good conscience,

16   if Vail Company should be permitted, on the basis of an alleged "mistake" in

17   geology, to avoid its contract embodied in the Stipulated Judgment.   Simply

18   expressed:

19          Vail Company "ratified" the Stipulated Judgment;[58]

20          There has been for a period of twenty (20) years "a

21               voluntary acceptance of the benefits" of the

22               Stipulated Judgment by Vail Company;[59]

23          By waiting virtually ten (10) years subsequent to its

24               Pemberton Report, Vail Company violates the re-

25               quirement that it "must rescind promptly, upon

26               discovering the facts /‾allegedly‾7 which * * *

27               entitle * * * /‾it‾7 to rescind."[60]

28

29   58/  California's Civil Code, Section 1588.

30   59/  California's Civil Code, Section 1589.

31   60/  California's Civil Code, Section 1691.

32

6099

GPO 16—99006-2

Clearly precluding rescission under the circumstances is the provision of California law that

"Rescission cannot be adjudged for mere mistake, unless the party against whom it is adjudged can be restored to substantially the same position as if the contract had not been made." [61/]   (Emphasis supplied)

Moreover, restoration as required by the law could not possibly be made to the United States of America which has expended far in excess of $100,000,000.00 in reliance upon its contract with Vail Company. [62/]

Under the circumstances this Honorable Court is respectfully petitioned to deny Vail Company's request that the Stipulated Judgment be abrogated.

### CONTRACTUAL NATURE OF STIPULATED JUDGMENT CONSTITUTES A WAIVER OF ALL ERRORS
### VAIL COMPANY PRECLUDED FROM ATTACKING STIPULATED JUDGMENT

Vail Company's contract with the Rancho Santa Margarita, embodied in the Stipulated Judgment may not, under the circumstances, be vitiated. If there was a "mistake", which is denied, Vail Company by its long course of conduct ratified and affirmed that contract; may not now avoid responsibilities under it.

Full import of the contractual nature of the Stipulated Judgment is demonstrated by the principles governing appeal and review.  California's Highest Court has declared:

"A consent to a judgment is a waiver of error by a party consenting thereto and on appeal from such a judgment it must be affirmed." [63/]

Again, it has been stated:

"It is well settled that judgments and orders by consent will not be reviewed." [64/]

---

61/  California's Civil Code, Section 3407.

62/  California's Civil Code, Section 1691 - [2].

63/  Jackson v. Brown, 82 Cal. 275, 278; 23 Pac. 142 (1889).

64/  Erlanger v. So. Pac. R. Co., 109 Cal. 395; 42 Pac. 31.

8100

Repeating that proposition, California's Court has declared:

> "It is the universal rule that a judgment or order
> will not be disturbed on an appeal prosecuted by a
> party who expressly consented to the making thereof.
> This doctrine is established in this state by a long
> line of decisions." [65]

Import of the consent judgment, the contract, the Stipulated Judgment, has been summarized in these words by the Highest Court:

> "* * * we ⌈ the Supreme Court ⌉ have decided that when
> a decree was rendered by consent, no errors would be
> considered here on appeal which were in law waived by
> such consent. * * * The consent to the judgment below
> was in law a waiver of the error now complained of." [66]

Relying on that precept, it was more recently stated:

> "All errors going to the merits and remedial on appeal
> are waived by consent to the decree." [67]

In a comprehensive comment - recognizing that a stipulated judgment is a contract - this principle, fully documented, is stated:

> "* * * ordinarily a consent judgment is not subject to
> appellate review." [68]

Being a contract between the parties "A judgment by consent is an exception to the rule that a court may modify its judgment during the term. * * * it ⌈ the Stipulated Judgment ⌉ cannot be changed or altered or set aside without the consent of the parties * * *"; [69]    absent, of course, fraud or mistake which are not proved here.

A careful analysis of a consent judgment resulted in these rulings by the Supreme Court:

> "* * * the insurmountable difficulty is, that the former decree

[65]  Hibernia Savings and Loan Society v. Waymire, 152 Cal. 286, 287; 92 Pac.645 (1907).
[66]  United States v. Babbitt, 104 U.S. 767, 768 (1881).
[67]  Walling v. Miller, 138 F.2d 629, 631; Cert. Den. 321 U.S. 784 (1943).
[68]  69 A.L.R.2d 767 and cases; 2 A.L.R.2d 514 et seq.
[69]  3 Freeman on Judgments, 5th Ed., Sec. 1350, p. 2779.

6101

appears upon its face to have been rendered by consent of
the parties, and could not therefore be reversed, even on
appeal.* * * Courts of chancery generally hold that from a
decree by consent no appeal lies. * * * Although that rule has
not prevailed in this court under the terms of the acts of
Congress regulating its appellate jurisdiction,

> yet a decree, which appears by the record to have
> been rendered by consent, is always affirmed, without
> considering the merits of the cause.  A fortiori,
> neither party can deny its effect as a bar of a sub-
> sequent suit on any claim included in the decree." 70/

It is a "general rule, that a decree made by consent of counsel, without fraud
or collusion, cannot be set aside by rehearing, appeal or review." 71/

Thus the results of Vail Company's contract, the Stipulated Judgment,
which it has so frequently ratified; under which it is now functioning, are not
subject to review on appeal; should not in equity be rescinded or set aside.

UNITED STATES OF AMERICA

J. Lee Rankin

J. LEE RANKIN,
Solicitor General

December 5, 1960

William H. Veeder

WILLIAM H. VEEDER,
Attorney, Department of Justice

---

70/   Nashville, Chattanooga & St. Louis Ry. Co. v. United States, 113 U.S. 261,
266 (1884).

71/   Thompson v. Maxwell Land Grant Co., 168 U.S. 451, 463 (1897).

6102