ORIGINAL

GEORGE STAHLMAN and
EARLE K. STANTON
Attorneys at Law
Route 1, Box 235
Fallbrook, California

Telephone: RAndolph 8-2310

Attorneys for Defendant, Vail Company



FILED
JAN 4 1961
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA, )
                   Plaintiff, )
                              )    NO. 1247-SD-C
vs. )
FALLBROOK PUBLIC UTILITY )
DISTRICT, ET AL, )
                 Defendants. )

MEMORANDUM IN REPLY TO
MEMORANDUM OF UNITED STATES RE: CONTRACTURAL
NATURE OF STIPULATED JUDGMENT FILED
DECEMBER 6, 1960

\* \* \* \* \* \* \* \* \* \* \*

6131


Case 3:51-cv-01247-JO-SBC Document 4215 Filed 01/04/61 PageID.15248 Page 2 of 12

SUBJECT INDEX

MEMORANDUM IN REPLY TO MEMORANDUM
OF UNITED STATES RE: CONTRACTURAL NATURE OF
STIPULATED JUDGMENT, FILED
DECEMBER 6, 1960

PAGE

PRELIMINARY STATEMENT                                            1

I

THE STIPULATED JUDGMENT IS NOT A CONTRACT
BUT THE RESULT OF AN AGREEMENT BETWEEN VAIL
COMPANY AND RANCHO SANTA MARGARITA                               2

II

THE GOVERNMENT'S ARGUMENT THAT A CONSENT
JUDGMENT IS TO BE CONSTRUED IN THE SAME MANNER
AS A CONTRACT AVAILS NOTHING HERE SINCE THE IN-
STANT CASE INVOLVED VALIDITY AND NOT CONSTRUC-
TION                                                             3

III

THIS COURT HAS UNDOUBTED AUTHORITY TO SET ASIDE
THE STIPULATED JUDGMENT, WHETHER IT BE DENOMIN-
ATED A CONTRACT, JUDGMENT OR WHAT NOT.                           5

IV

THE RECORD DISCLOSES NO ACT OF VAIL COMPANY
EITHER BY WAY OF LACHES, ESTOPPEL OR OTHERWISE
WHICH WILL PREVENT THE COURT FROM ENJOINING
OPERATION OF THE STIPULATED JUDGMENT                             7

NO LACHES                                                        8

IN CONCLUSION                                                   10

9132

GEORGE STAHLMAN and
EARLE K. STANTON
Attorneys at Law
Route 1, Box 235
Fallbrook, California

Telephone: RAndolph 8-2310

Attorneys for Defendant Vail Company

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA, )
)
        Plaintiff, )
)
vs. ) NO. 1247-SD-C
)
FALLBROOK PUBLIC UTILITY )
DISTRICT, ET AL, )
)
        Defendants. )

MEMORANDUM IN REPLY TO

MEMORANDUM OF UNITED STATES RE:

CONTRACTUAL NATURE OF STIPULATED JUDGMENT

FILED DECEMBER 6, 1960

PRELIMINARY STATEMENT

    The Memorandum filed by the United States seeking to place the Stipulated Judgment in the category of a mere contract entered into between the Vail Company and the Government, is entirely devoid of merit, and represents but one of many attempts to change ground and to deflect this Court's attention from the main issue.

    It is significant to note that in its Complaint and Supplementary and Amendatory Complaints, this point is not raised. The Stipulated Judgment is always referred to as a judgment, not as a mere contract as it is now demoniated by the United States. Moreover, the Government declares that the Stipulated Judgment is "premised upon the findings of the trial court" (Complaint

-1-

6133

and Supplementary, and Amendatory Complaint, page 5, line 21.) Indeed, its briefs, memoranda, and entire trial procedure has been obviously predicated on the proposition that the Stipulated Judgment was a judicial pronouncement upon which the Government rested its claim. In other words, it was a judgment like any other save that it <u>resulted</u> from the parties' desire to end their costly litigation.

With this in mind, it logically follows that it is now much too late to change judicial horses and to claim that really the Stipulated Judgment is no judgment at all, but a mere contract between the parties. The evidence is certainly quite conclusive that, whether good or bad, the Stipulated Judgment was and is a judgment to be dealt with by this Court in the same manner as any other judgment.

It is equally clear that this judgment, under present conditions is meretricious, unfair and unconscionable, and that it was entered into under material mistakes of both law and fact. Furthermore, there can be no doubt that, so long as the Stipulated Judgment stands, it will be impossible for this or any Court to make an equitable adjudication of water rights.

I

THE STIPULATED JUDGMENT IS NOT A CONTRACT BUT THE RESULT OF AN AGREEMENT BETWEEN VAIL COMPANY AND RANCHO SANTA MARGARITA.

There is, obviously, a vast difference between a document being <u>in itself</u> a contract, and being <u>the result</u> of a contract. Many legal documents, for example, deeds and mortgages, come as the result or culmination of some agreement between the parties;-just as the Stipulated Judgment was the culmination of agreement between the parties litigant who wished to conclude their long litigation. But it was and is a judgment.

"A judgment entered on a stipulation <u>is none the less a judgment.</u> of the court because consented to by the parties".

Donovan v. Aetna Indemnity Co., 10 Cal. App. 723, 733.

From that moment at which the court signed and entered the Stipulated Judgment, it became and was precisely the same as any other judgment; and

-2-

6134

should be implied.

There is nothing startling about this. The fact is that any judgment, whether of stipulated variety or otherwise, is subject to the same general rules of construction.

"The same rules of interpretation apply in ascertaining the meaning of a judgment as in ascertaining the meaning of any other writing." Ex Parte Ambrose, 72 Cal. 398.

Verdier v. Verdier, (1953) 121 Cal. App. 2d 190.

The case of In re Ferrigno, 22 Cal. App. 2d 472, 474, cited by the United States in this connection, specifically affirms that a stipulated judgment such as we have here "is the result of a contract"; the matter has been placed in judgment so that there may be no further controversy. This case directly refutes any idea that it is nothing more than a mere contract.

As said in 30 A American Juris.

" A consent judgment acquires the incidents of and will be given the same force and effect as judgments rendered after litigation."

There can be no doubt that this is the correct rule; if it were otherwise, then there would be no reason for putting the matter in the form of a judgment.

Another case cited by the Government in support of its position, Bailey v. Superior Court, 142 Cal. App. 2d 47, 57, (1956), likewise states that "the same rules of interpretation apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing".

But, as hereinbefore stated, we are not now dealing with matters of construction and interpretation, but with the equitable question whether the Stipulated Judgment in this present case should, because of various mistakes, change in conditions, and unconscionable features, be given any force at all. Such problem is as far as the poles from any matter of mere interpretation.

If the well established principles of equity and the water laws of the State of California are to be given effect, - and this is a point of great public as well as private interest, - then the Stipulated Judgment is simply a legalistic monstrosity obtruding itself in the path of equity and justice. Under the presently changed and ever changing situation, utterly unknown to the parties when

-4-

6135

subject to exactly the same rules and procedure in respect to setting it aside for proper cause, as would obtain in the case of any other judgment.

Had the parties desired to rest their rights upon a mere contract prepared by their respective attorneys, they would not have sought the aid of the Court. But they did not choose to do this. What they wanted and what they got was a judicial judicial adjudication of what they then deemed to be their water rights; in other words, a judgment of a court having jurisdiction of parties and subject matters. That in so doing, they made a sad mess of the situation, and complicated rather than clarified an already difficult matter, or that they floundered in a morass of mistakes of law and fact, does not alter the fact that a judgment was entered which now stands in the way of a proper and equitable determination of water rights affecting a great number of people. To attempt to say that this Court is now powerless to do anything about such a situation borders upon the ridiculous.

II

THE GOVERNMENT'A ARGUMENT THAT A CONSENT JUDGMENT IS TO BE CONSTRUED IN THE SAME MANNER AS A CONTRACT AVAILS NOTHING HERE SINCE THE INSTANT CASE INVOLVED VALIDITY AND NOT CONSTRUCTION.

There is, of course, a vast difference between validity and the construction or interpretation of an instrument. Here the vital question is not what the Stipulated Judgment means, but whether this Court should entirely disregard it. If it is to be disregarded, as we think the record justifies, then it is meaningless and needs no construction. Therefore, the cases which say that a consent judgment should be construed as a contract between the parties would be construed, are inapplicable, and furnish no authority whatsoever for the Government's position.

For example, Yarus v. Yarus, 178 A. C. A. 191, 198, was a divorce case, in no manner comparable to the present litigation. It most vertainly did not say, as the United States seems to imply, that a consent judgment was merely a contract and nothing more, but simply affirmed that so far as constuction was concerned, the general rule of contract construction

-3-

6139

the Stipulated Judgment was entered, it seems clear that such a judgment cannot be permitted to stand.

Finally, the argument that the Stipulated Judgment is nothing more than a personal contract and forever binding, loses all possible effect when it is considered that this line of reasoning would entirely defeat the well established rule enunciated in mnay California cases to the effect that a determination of water rights is always "a fluctuating question", and subject to readjustment by the courts in the light of changing conditions. Temescal Water Co., v. Dept. of Public Works, 44 Cal. 2d 90, 106.

Pabst v. Finmand, 190 Cal. 124, 129

### III

THIS COURT HAS UNDOUBTED AUTHORITY TO SET ASIDE THE STIPULATED JUDGMENT, WHETHER IT BE DENOMINATED A CONTRACT, JUDGMENT OR WHAT NOT.

As hereinbefore pointed out, the Stipulated Judgment was not a mere contract, it was a judgment exactly like any other judgment, subject to the same principles of law and equity. As every lawyer well knows, mere contracts are often set aside on the ground of mistake, etc., so that even if the Government's position were sound, which it is not, this would present no obstacle whatsoever to setting it aside upon any legal or equitable ground.

The rule as to consent judgments is well stated in

139 A. L. R. 436,

"As in the case of judgments generally, a court has power to open, set aside, vacate, amend or modify a consent judgment, upon a showing of mistake, fraud, absence of consent, or similar ground common to any judgment."

One of the Government's citations, 69 A. L. R. 2d 759, is entirely inapplicable, in that the citation related specifically to appellate review of a consent judgment, which of course is not the present case at all. In fact, this annotation specifically excludes "any other procedure brought to have a judgment set aside or vacated." Our present litigation is not appellate in nature but an independent action instituted by the United States to quiet title, to which the Vail Company by proper pleading, has raised the question of validity.

As stated in that note, fortified by a long line of California cases, the matter is always one of discretion for the trial court to determine.

As stated in that note, fortified by a long line of California cases, the matter is always one of discretion for the trial court to determine.

    Rondell v. North S. F. Homestead and R. R. R. Ass'n.,

and continuing on down to such cases as

    Kelsey v. Spears, 37 Cal. App. 27,

    Church v. Chruch, 40 Cal. App. 2d 701

In a very old case, Lewis v. Tobias, 10 Cal. 574, it was said that "The question of ordering papers to be delivered up and cancelled by a Court of chancery is not so much as question of jurisdiction, as of the propriety of its exercise in the given instant" The proposition that this Court sitting in equity is empowered to relieve the Vail Company from the Stipulated Judgment has been previously discussed in some detail in this defendant's Memorandum of Points and Authorities in re: Stipulated Judgment, pages 5 to 16, to which reference is hereby made. There can, of course be no doubt about such power. In fact, the absolute impossibility of making a just and equitable determination of water rights without first moving the stigma of the Stipulated Judgment has been often commented upon during the trial.

In this connection it must be pointed out that the adjustment of water rights "is a particular subject of equity jurisdiction and subject to be modified as conditions may require.

    Burr v. Maclay Rancho Water Co., 154 Cal. 428

And a court in an equitable action <u>is governed by the circumstances as they exist at the time of the decree.</u>

    Erskine v. Upham, 56 Cal. App. 2d 235

It has been correctly brought out during the trial that if this Court should enjoin the enforcement of the Stipulated Judgment this would not mean that the Vail Company would be given carte blanche to control and use the waters of the Santa Margarita River either as to surface or underground flow, as it might see fit. All that it would or could mean is that this Court could then proceed to make whatever equitable apportionment of water might seemed just and proper considering the rights of all users and presently existing conditions.

Certainly the record clearly indicates several grounds for vacating

the Stipulated Judgment; mistake of the parties both as to law and fact, and in respect to land and water conditions, basins, etc.; unconscionable terms of the Stipulated Judgment; and the great and unusual Change in Conditions since the time of the Stipulated Judgment. Thus, not one but several grounds exist for ignoring the Stipulated Judgment in the making of a just and equitable decree.

## IV

### THE RECORD DISCLOSES NO ACT OF VAIL COMPANY EITHER BY WAY OF LACHES, ESTOPPEL OR OTHERWISE, WHICH WILL PREVENT THE COURT FROM ENJOINING OPERATION OF THE STIPULATED JUDGMENT.

This section of the Government's Memorandum is no more than a re-hash of its many previous assertions that the Vail Company has by its acts reaffirmed and/or ratified the so-called "contract", that is, the Stipulated Judgment, and therefore is not in a position to seek its vacation. (U.S. Memorandum, p 7 et seq.)

It seems quite unnecessary to burden this Court with further discussion of these contentions for the reason that the entire matter has been thoroughly canvassed so many times in writing and in oral argument. Every phase of the subject has been exhaustively covered, particularly in Vail's special briefs, entitled "Memorandum re: Pauba Well" and "Memorandum re: Vail Dam". Neither the record in this case nor the law, support the contentions of the United States.

So far as the drilling of the Pauba Well is concerned, it is quite clear that this was a government project to which the Vail Company merely gave its consent; that it was exploratory in purpose, and that it has of little or no value to the Vail Company. It was, quite evidently, a preliminary step taken by the Government as a part of its preparation for the instant litigation.

It is likewise futile to claim that the building of the Vail Dam and the alleged withdrawal of objections by the Government, should in some mysterious manner, estop Vail from its present claims. Neither the Pauba Well incident, nor the Vail Dam project, induced the United States to change its position, nor is there the slightest evidence that either matter adversely affected any rights of the Government. As a matter of fact, both the Pauba Well and the Vail Dam were and are beneficial to the United States;-- the first by furnishing valuable

geologic data; the second by conserving flood waters which would otherwise be wasted.

These facts being true, it logically follows that any claim by the United States that the Vail Company is obliged to "restore the former status" of the Government, whatever that may mean, is entirely untenable. The Government has at all times received every thing to which it is entitled, and more; and its position and situation as to water rights have been imporved, not worsened by the alleged acts of Vail Company. And, as the lower riparian owner, the United States has practically unlimited use of all available water whether within or without the watershed. There is noting to restore. Even with this untold advantage on its part, the Government, in effect, is demanding that all upper water users subordinate their rights to those of the United States.

NO LACHES.

This claim, likewise, has been fully discussed before. The fact, so often reiterated by the Government, that many years have elapsed since the Stipulated Judgment was entered, is, under the circumstances of this case, of no significance whatsoever, during this period the great changes in surrounding circumstances, often commented upon, have been under way. It is a meritorious fact, - not one for censure as the Government seems to infer, that the parties did make an effort to go along with and comply with the terms of the Stipulated Judgment. Only as the years went by with their changing conditions, did it become apparent that this judgment was an impossible, inequitable, meaningless monstrosity. Actually, much of the present knowledge was not available until trial of this case.

It is well established that "mere lapse of time unaccompanied by circumstances from which the defendant or some other person may be prejudiced, or lapse of time not such that prejudice may reasonably be supposed to occur if the remedy is allowed, does not constitute laches."

McGibbon v. Schmide, 172 Cal. 70,

To like effect: Akley v. Bassett, 189 Cal. 625,

McMahon v. Grimes, 206 Cal. 526.

Laches, being equitable defense, does not exist unless there has been

-8-

6140

prejudice to the opposing party. This, in fact is the very essence of laches, and unless accompanied by circumstances showing such prejudice, there is no merit in the defense. This is a matter to be determined upon the peculiar facts of each case.

    Beverage v. Canton Placer Min. Co., 43 Cal. 2d 769.

There must always be something more than mere lapse of time; it must also appear that this equitable defense is available as applied to the facts of the case.

    Borden v. Boyvin, 55 Cal. App. 2d 432.

Indeed, there is no specific period of delay which will constitute laches.

    Esau v. Briggs, 89 Cal. App. 2d 427.

Moreover, any plea of laches must fail where no damages resulting therefrom are proved to have been suffered by the pleader.

    Los Angeles B. & V. Products, Co., v. Los Angeles, 60 Cal. App. 2d 478.

    Harootenian Estate, 38 Cal. 2d 242.

The doctrine will only be effective where allowance of the claim in question would work an unwarranted injustice.

    Long v. Long, 76 Cal. App. 2d 716

Many other cases to the same effect could be cited.

In the instant case, there is not even a scintilla of evidence to the effect that any damage or even disadvantage to the United States has occurred. And since this element of the defense is entirely lacking, the lapse of time is of no consequence whatsoever.

The existence of laches is a matter left largely to the discretion of the trial court and its determination will not be disturbed unless there has been a manifest abuse of discretion.

    Brown v. State Personnel Board, 43 Cal. App. 2d 70.

GOVERNMENT NOT A BONA FIDE PURCHASER

The Government's argument that the United States is a "bona fide purchaser" without knowledge of the facts, borders upon the ridiculous. If there was any person having full and complete knowledge of all the facts concerning the

-9-

Stipulated Judgment and all that accompanied it, it was the United States of America. It is by no means in the position of an innocent, intervening party. On the contrary, its status is that of one who succeeded to the rights of Rancho Santa Margarita, and who now seeks to avail itself of all the favorable aspects of the Stipulated Judgment, and in addition thereto, any and all other possible rights, superior, paramount, or whatever, which can be concocted by the fertile imagination of its attorneys. A glance at the complaint to quiet title in this case demonstrates that this is the case.

And when it naively asks this Court to sustain the Stipulated Judgment as to Vail, and at the same time make an equitable determination of the rights of all other water users without regard to such judgment, it is simply asking the impossible. Obviously, it is not seeking a fair and equitable determination as to all parties, but a most favorable adjudication as to its own rights, and a less advantageous allocation as to all others. Again, its pleadings and memoranda make this clear. Such a situation is neither law nor equity.

IN CONCLUSION, it is respectfully submitted that there is not one iota of merit in any of the contentions of the United States. The Stipulated Judgment cannot be considered res judicata; nor is there any matter of waiver, estoppel, affirmance or ratification on the part of the Vail Company, which should prevent it from asking this Court to enjoin the enforcement of the Stipulated Judgment. Under California Water Law, and under equitable principles generally the Court's function is to consider the correlative rights of all water users under the presently changed conditions, and to render its decision accordingly. Perhaps the best answer to the Government's various contentions is that such a decree simply cannot be entered so long as the Stipulated Judgment is permitted to stand.

Respectfully Submitted,

GEORGE STAHLMAN and
EARLE K. STANTON
  Attorneys for Defendant Vail Company

BY _____
        GEORGE STAHLMAN