1  J. LEE RANKIN,
   SOLICITOR GENERAL OF THE
2     UNITED STATES OF AMERICA
   Washington 25, D. C.
3
   Attorney for the UNITED STATES OF AMERICA
4

# FILED

JAN 5 1960 1961

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
        v.                         )      NO. 1247-SD-C
                                   )
FALLBROOK PUBLIC UTILITY DISTRICT, )
ET AL.,                            )
                                   )
            Defendants.            )

MEMORANDUM

OF THE

UNITED STATES OF AMERICA

RELATING TO

THE AUTHORITY OF THE CALIFORNIA STATE WATER RIGHTS BOARD
AND
FALLBROOK'S POWERS TO CLAIM INCIPIENT RIGHTS FOR IRRIGATION

6143

# SYNOPSIS

This is an action to quiet title to invaluable rights to the use of water in the Santa Margarita River. It is a general adjudication with all of the import attendant upon those words of art in the field of Western Water Law. Each claimant to rights to the use of water must prove them with specificity. Extent and nature of those claims is a judicial question which can only be resolved by the courts. Before this Honorable Court the rights of every claimant are to be tried one against the other. That is the law whether the claim involved is vested and exercised; incipient and conditional.

There has been an actual invasion of the rights to the use of water of the United States of America in the Santa Margarita River by the Fallbrook Public Utility District; there has been an actual clouding of the title of the United States of America to those rights by the adverse claims of the quasi-municipal corporation last mentioned. Degree of that invasion of the rights of the National Government will be largely measured by whether Fallbrook is only empowered to claim rights for municipal purposes or whether it may also claim rights for purposes of irrigation. Against Fallbrook the United States of America is entitled to a decree quieting its title; to have enjoined the invasion of those rights and the assertions by Fallbrook of adverse claims; to have Fallbrook's claims declared and defined.

Extent, nature, and character of rights to the use of water of all parties, including Fallbrook, must be reflected in the decree ultimately entered. This Court has recognized that it must determine whether there is available in the Santa Margarita River any surplus water over and above vested rights. That is a judicial question which the State Water Rights Board could not finally and judicially determine.

Fallbrook Public Utility District is without authority to acquire rights to the use of water for purposes of irrigation. In declaring and describing Fallbrook's inchoate rights, assuming that they were proved, which is denied, the claims of Fallbrook must necessarily be limited to incipient and inchoate rights for domestic and municipal uses.

Fallbrook has only taken the inceptive steps of securing permits to appropriate storage rights to the use of water for purposes of irrigation. It proceeded before the State Water Rights Board to accomplish that initial act. Any action taken by the State Water Rights Board in issuing to Fallbrook its permits was administrative in character. It being a legislative body, that Board could not exercise judicial powers. Its authority is strictly limited to the acquisition of rights to the use of water. Proceedings before it are totally and fundamentally different from this cause which is a general adjudication, involving the exercise of judicial power. Vested rights of the United States of America were not and could not be before the Board in the proceeding from which emanated Fallbrook's permits.

In this quiet title suit Fallbrook had the burden of proving the nature and extent of its claimed rights. It had the burden of proving a surplus of water available and the extent of the rights to the surplus, if any, it could legally exercise. It failed to sustain that burden. Accordingly, judgment for the United States of America against Fallbrook should be entered. 1/

_____

1/   The matter of Fallbrook's power to appropriate rights to the use of water for irrigation purposes has been fully reviewed in briefs dated June 10, 1958, and June 28, 1958, filed by the United States of America. It is expected that Fallbrook which as yet has made no reply to them, will answer those briefs when it makes response to this consideration.

6144

GPO 16—20009-2

DIFFERENTIATION BETWEEN ACQUISITION AND ADJUDICATION
OF RIGHTS TO THE USE OF WATER

A not infrequent error in the field of Western water rights stems from the confusion between the acquisition of rights to the use of water and the adjudication of those rights. That error must be avoided here if justice is to prevail. Brief reference to the difference between acquiring rights and their adjudication will depict with clarity the type of relief to which the United States of America is entitled against Fallbrook, in the light of the claims that entity asserts.

On the subject under consideration it has been authoritatively declared:

> "The acquiring of water rights for the purpose of
> irrigating land, and the determination by courts of
> what those rights are, after acquirement, are entirely
> different subjects, * * *." [1]/

Repeatedly, as will be discussed, by statute and court decision, California has recognized that basic difference between appropriation and adjudication. Prior to 1872 in California, sole means of acquiring rights was through the diversion and application of water to a beneficial use. California first formalized the procedures for acquiring appropriative rights to the use of water in the year last mentioned. [2]/ Those acts entailed the mere posting of notice to appropriate in a conspicuous place at the intended point of diversion and the recording of that notice within ten days in the office of the county recorder. A valid right to the use of water could, nevertheless, be acquired through the diversion and application of water to a beneficial use without regard to the statutory procedure alluded to above. As California's Highest Court declared in regard to the investiture of appropriative rights:

---

1/  Northside Canal Company v. Twin Falls Canal Co., 12 F.2d 311, 314
    (U.S.D.C.D. Idaho S.D. 1926).

2/  California Civil Code, Secs. 1410 to 1422.

GPO 16-20006-2

- 1 -

6145

1    "One may, by a prior, actual, and completed appropriation

2    and use, without proceeding under the Code, acquire a right

3    to the water beneficially used, which will be superior and

4    paramount to the title of one making a subsequent appropria-

5    tion from the same stream in the manner provided by that

6    statute." [3/]

7    The 1872 law remained in force and effect until at least the year 1914,

8    when the Water Commission Act became operative. [4/]   Further, basic statutory laws

9    establishing the procedure for the acquisition of rights to the use of water

10   have been changed since 1914; are now embraced in laws enacted in 1943. [5/]

11   Objectives and Legal Import of Initial
         Acts Prescribed by the Legislative
12   Body to Appropriate Rights to the Use of
     Water Unchanged Throughout California's
13   History; Are The Same Today:

14   Though the rudimentary procedures for the acquisition of rights to

15   the use of water which appertained from California's earliest history, dating

16   back to the mid-nineteenth century, are seemingly vastly different from the

17   complex methods of today, their objectives have changed none at all.  Each had

18   or have a simple end result - the vesting of title to an interest in realty -

19   a usufructuary right in a stream.

20   Of great import here is the pronouncement by California's Court that

21   the functions, now performed by the State Water Rights Board, were to aid in

22   the acquisition - not adjudication - of rights to the use of water.  In that

23   regard California's Highest Court has stated:

24   "The present law /Water Commission Act_7 was not enacted

25   to abolish the right of appropriation of water.  No attributes

26   are added to constitute the right.  The new legislation is

27   designed merely to regulate and administer this privilege."

28   Therefore the pronouncement of this court on the question of

29   _____

30   3/  Lower Tule River Ditch Co. v. Angiola Water Co., 149 Cal. 496; 86 Pac.
          1081, 1082 (1906).
31   4/  Deering's California Codes, Water, Sec. 1200 et seq.
     5/  West's Annotated California Codes, Water, Section 1200 et seq.
32       Nevada County and Sacramento Canal Co. v. Kidd, 37 Cal. 282, 310, 314;
             Pac.     (1869).
             See West's Annotated California Codes, Water, Secs. 1395 et seq.

6148

priority in the appropriation of waters should and does

shed light upon, if not control, the issue before us." [6]

More recently the California Supreme Court reiterated that the laws respecting

appropriation of unappropriated rights to the use of water are to foster

the enjoyment of that "privilege" in an orderly manner. [7]

"The purpose of the /Water Commission_7 act is

clearly to permit any person or corporation desiring

to make any of the enumerated beneficial uses of waters

of the state, not otherwise utilized, to avail itself

of this right of appropriation.

"Under the law in force prior to the adoption of

this act (Civil Code, Sections 1410-1422) no permission

was required for the appropriation of waters of the

state. All that was required to create a preferential

right to such water was to actually appropriate it to

some authorized beneficial use, * * *

"The obvious aim of the Water Commission Act /from

which 'stems' the 'authority' of the State Water Rights

Board_7 was not to abolish, but to regulate and

administer, this privilege." [8]

Investiture of Legislative power in the State Water Rights Board which

issued permits to Fallbrook; nature of that power and in regard to that

which it may be exercised becomes extremely pertinent.

Unappropriated Rights to the Use of Water,
   and the Acquisition of Those Rights Comes
   Within the Purview of the Powers of the
   State Water Rights Board - Not the Vested
   and Exercised Rights of the United States of America:

Initial reference at this juncture of the analysis is made to the genesis

of the State Water Rights Board; its objective and the limit of its function

---

[6] Yuba River Power Co. v. Nevada Irrigation District, 207 Cal. 521;
      279 Pac. 128, 130 (1929).
[7] Temescal Water Co. v. Department of Public Works, 44 Cal.2d 90;
      280 P.2d 1 (1955).
[8] Ibid., 44 Cal.2d 90, 96; 280 P.2d 1, 5 (1955).

6147

- 3 -

1  in the acquirement process of rights to the use of water.  It is declared:

2      "Authority for the Division of Water Resources of the

3      Department of Public Works

4         to administer the appropriation and use of

5         unappropriated water, now included in Divisions

6         1 and 2 of the Water Code, stems from the Water

7         Commission Act of 1913. * * *  The main purpose

8         of that legislation was to provide an orderly

9         method for the appropriation of such waters, * * *." [9]

10         (Emphasis supplied)

11  There are thus succinctly declared in unequivocal terms

12         the objectives; the functions

13  of the State Water Rights Board.

14      Meaning of the term "unappropriated water" becomes significant

15  for, as will be observed, the rights of the United States of America which

16  Fallbrook has clouded by its claims are expressly excluded from the jurisdiction

17  of the State Water Rights Board.  "Unappropriated water" is described as follows:

18      "All water flowing in any natural channel, excepting

19      so far as it has been or is being applied to useful and

20      beneficial purposes upon, or in so far as it is or may be

21      reasonably needed for useful and beneficial purposes upon

22      lands riparian thereto, or otherwise appropriated, is

23      hereby declared to be public water of the State and subject

24      to appropriation in accordance with the provisions of this

25      Code." [10]    (Emphasis supplied)

26  In the section following the last cited provision "unappropriated water" is

27  further defined in substance as follows: [11]

28  ————————————

29  [9]  Temescal Water Co. v. Dept. of Public Works, 44 Cal.2d 90, 95; 280 P.2d
       1, 4 (1955).

30  [10]  West's Annotated California Codes, Water, Sec. 1201.

31  [11]  West's Annotated California Codes, Water, Sec. 1202.

32

6148

GPO 16—20095-2

1        / a / All water which has never been appropriated;

2        / b / All water appropriated prior to December 19, 1914, which

3        has not been in process, from the date of the initial act

4        of appropriation, of being put, with due diligence in

5        proportion to the magnitude of the work necessary properly

6        to utilize it for the purpose of the appropriation, or

7        which has not been put, or which has ceased to be put to

8        some useful or beneficial purpose;

9        / c / All water which has ceased to be put to a beneficial use;

10       / d / Water which having been appropriated or used flows back

11       to a stream, lake or other body of water.

12 **Still Limited Solely to the Appropriation**
      **of Unappropriated Rights to the Use of Water -**
13 **Not the Vested and Exercised Rights of the**
      **United States of America - the State Water**
14 **Rights Board is invested with certain discretionary**
      **Powers:**

15

16       Discretion may be exercised by the State Water Rights Board allowing

17 the "appropriation for beneficial purposes of unappropriated water under such

18 terms and conditions as in its judgment will best develop, conserve, and

19 utilize in the public interest the water sought to be appropriated." [12]

20       It is moreover empowered to "reject an application when in its judgment

21 the proposed appropriation would not best conserve the public interest." [13]

22 On the subject it has been stated:

23       "In carrying out its present duty, the department / State

24       Water Rights Board / exercises a broad discretion in

25       determining whether the issuance of a permit will best

26       serve the public interest. Water Code 1253, 1255 * * *." [14]

27 Pertinent, however, is the fact that:

28       "A permit itself confers no appropriative rights but

29 _____

30 [12] West's Annotated California Codes, Water, Sec. 1253, 1960 Cumulative Pocket
     Part.

31 [13] West's Annotated California Codes, Water, Sec. 1255, 1960 Cumulative Pocket
     Part.

32 [14] Temescal Water Co. v. Dept. of Public Works, 44 Cal.2d 90; 280 P.2d 1, 7 (1955)

6149

GPO 16-29995-2

1      fixes the priority of its recipient over subsequent appro-

2      priators, Water Code 1450-1456; it expressly provides that

3      its issuance is subject to vested rights." [15/]

4      Admittedly the permits issued to Fallbrook by the State of California

5 are colloquially referred to as "hunting licenses" pursuant to which an

6 applicant may find some water for which he could acquire some rights for its use.

7 But let this fact be respectfully emphasized:

8      Responsibility of this Honorable Court to quiet the title to

9      rights to the use of the waters of the Santa Margarita River

10     relates to the existing and exercised rights of the United

11     States of America against which Fallbrook asserts adverse

12     (albeit spurious) claims.

13 As will be subsequently emphasized, crux of this litigation does not involve

14 Fallbrook's illusory claims to unappropriated waters, but that entity's

15 threatened invasion of the long vested rights of the United States of America.

16 At No Time Was It Ever Asserted That This
     Honorable Court Could Function in the "Acquirement
17 Process" of Rights to the Use of Water:

18     From the pre-trial opinion pursuant to which the trial of this case

19 has proceeded is this statement taken:

20     "That there might be ostensible similarity between the

21     proceedings in the District Court to determine vested

22     rights and the proceedings before the State Water Rights

23     Board to determine who should be permitted to secure permits

24     to appropriate unappropriated water, does not answer the

25     problem."

26 This Court then concluded:

27     "The two proceedings are essentially different - different

28     types of rights are involved." [16/]

29

30  15/  Temescal Water Co. v. Dept. of Public Works, 44 Cal.2d 90; 280 P.2d 1,
        11 (1955).

31  16/  United States v. Fallbrook Public Utility District, et al., 165 F. Supp.
        806, 857 (U.S.D.C.S.D. Cal. S.D., 1958).

32

6150

It must be emphasized better to clarify the conclusions ultimately expressed

in this consideration:

> With all respect to this Honorable Court, there is no
> resemblance between the judicial functions of this, the
> Highest Trial Court in the Nation, in adjudicating, deter-
> mining, declaring and decreeing rights to the use of water,
> and the performance of the State Water Rights Board in
> aiding the orderly acquisition of rights to the use of water.

Issue must also be respectfully taken with the statement quoted above that

in the acquirement proceedings and in this judicial action:

> "different types of rights are involved." [17]

There are no rights involved in the State administrative proceedings.  In the

exercise of its discretion - as stated above - a "hunting license" is issued

in the form of a "permit".  No rights are awarded; nor could rights be awarded

by this Legislative creature established to assist in the exercise of the

long-standing privilege of acquiring rights to unappropriated water.  As also

reviewed above, "A permit confers no appropriative right * * *." [18]

> There is, of course, complete agreement with the statement that:

> "This Court is utterly without power to 'issue permits' to
> appropriate water * * *." [19]

Indeed it is without authority thus to function.  It could no more issue a

permit in this quiet title suit than it could issue an option to purchase in an

action to quiet the title to forty (40) acres of land.

Inceptive Act of Filing an Application to
Appropriate Unappropriated Water and the
Issuance of a Permit are Simply Conditions
to Obtaining a Title to Unappropriated
Rights:

> There have been reviewed above the crude procedures for acquiring

rights to the use of water where that title became vested upon the diversion

---

[17]  Ibid., 165 Fed. Supp. 806, 857.

[18]  Temescal Water Co. v. Dept. of Public Works, 44 Cal.2d 90; 280 P.2d 1, 11 (1955).

[19]  United States v. Fallbrook Public Utility District, et al., 165 F. Supp. 806, 857 (U.S.D.C.S.D. Cal. S.D., 1958).

6151

GPO 16—29096-2

1  and application of water to a beneficial use.  Those primitive means have now

2  evolved into a great complex procedure.

3           As emphasized, in administratively determining that

4           "appropriation for beneficial purposes of unappropriated

5           water * * * will best develop, conserve, and utilize in

6           the public interest the water sought to be appropriated" [20]

7  the State Water Rights Board is merely assisting an applicant to exercise

8  the privilege of securing title to unappropriated water.  In ascertaining

9  whether there is unappropriated water, the State Water Rights Board takes

10  into consideration the vagaries of nature recognizing that:

11           "What is unappropriated water is a constantly fluctuating

12           question, depending upon the seasonal flow of the stream,

13           the annual rainfall * * *" and related questions. [21]

14  Within that pattern the limited administrative function must be exercised.

15  Vested rights of the nature of those of the United States of America, clouded

16  by Fallbrook's adverse claims, are neither before the State Water Rights Board

17  for resolution, nor could their extent be adjudged by the Board for to do so

18  would be an invasion of the judicial powers of this Honorable Court which has

19  before it those rights for determination.  Moreover, in its words, "this

20  Court will /¯permits having been issued_7 * * * determine whether there * * *

21  /¯is_7 surplus water, over and above the vested rights on the River, against

22  which the permit might be operative * * *." [22]

23           Meager nature of the responsibilities of the State Water Rights Board,

24  as they relate to this trial, is now properly in focus.  All that the State

25  Water Rights Board is empowered to do is

26           (a)  insure the applicant of his priority date to

27                unappropriated water, if any;

28  _____

29  20/  West's Annotated California Codes, Water, Section 1253.

30  21/  Temescal Water Co. v. Dept. of Public Works, 44 Cal.2d 90;280 P.2d 1,
             9 (1955).

31  22/  United States v. Fallbrook Public Utility District, et al., 165 F. Supp.
             806, 857 (U.S.D.C.S.D. Cal. S.D., 1958).

6152

GPO 16—22905-2

     (b)   determine that the interests of the State will be best

          served by issuing a permit to appropriate unappropriated

          water if indeed there is any;

     (c)   determine that as of the moment there is available for

          appropriation some unappropriated water.

None of the functions performed by the State Water Rights Board involve the investiture of a right; those acts in the words of a case favorably cited by the Supreme Court, are simply conditions which must be met to invest a right in the exercise of the privilege of appropriating rights to the use of water. [23]

### JUDICIAL POWERS MAY NOT BE EXERCISED BY THE STATE WATER RIGHTS BOARD

California's Constitution declares that:

> "The judicial power of the State shall be vested in the Senate, sitting as a court of impeachment, in a Supreme Court, district courts of appeal, superior courts, municipal courts, and justice courts." [24]

That Constitutional proviso has been construed as it relates to the powers of the agency in which the inceptive steps must be taken for the acquirement of rights to the use of water.  Alluding to that clause in regard to an alleged attempt by the Water Commission to exercise judicial power, this authoritative statement has been made:

> "If the Water Commission is acting judicially, it is doing so because
>
> <u>it is determining the rights and titles of individuals to private real property, and in that capacity it would be acting as a court as fully as a court of general jurisdiction would be acting when it adjudicates the title to real property.</u>
>
> * * *

---

23/  California Oregon Power Co. v. Beaver Portland Cement Co., et al., 295 U.S. 142, 162 (1934), citing Howell v. Johnson, 89 Fed. 556, 558(C.C.D.Mont.1898)

24/  Constitution of California, 1879, Article VI, section 1.

6153

"The effect of Section 1, art. 6, aforesaid, is to
vest in the courts therein mentioned the entire judicial
power of the state.  It is not within the power of the
Legislature to vest in any other body any general judicial
power to establish and declare the right and title to
private property.  The Water Commission / now the State
Water Rights Board 7 is not one of the superior courts of
the state and could not be made such court or be given the
powers thereof, * * *.  On the contrary, its jurisdiction
is state-wide.  Consequently it is not a court which comes
within the purview of said Section 1 and it is not within
the power of the Legislature to give that Commission such
judicial power." 25/    (Emphasis supplied)

More recently the Highest Court of California in the Temescal Case
paraphrased the decision last cited in these terms:

"* * * any attempt by the Legislature to invest the
commission with the power to adjudicate rights in the flow
of the stream would be contrary to Section 1 of Article VI
of the / California 7 Constitution and beyond its powers.
'For this reason * * * I am of the opinion that the act
confers no judicial power upon the Water Commission, and,
if it purported to do so and so far as it may purport to do
so, it would be and is without effect.  The consequence is
that any award it assumed to make in the exercise of such
purported judicial power would be absolutely void, * * *." 26/

A frequently cited case involved the review of an order sustaining
a demurrer against a complaint by a holder of an application with the State of
California. 27/    In declaring that the complaint, which alleged the inchoate

---

25/   Tulare Water Co. v. State Water Commission, 187 Cal. 533; 202 Pac. 874,
      878 (1921).
26/   Temescal Water Co. v. Dept. of Public Works, 44 Cal.2d 90; 280 P.2d 1,
      6 (1955).
27/   Yuba River Power Co. v. Nevada Irr. Dist., et al., 207 Cal. 521; 279 Pac.
      128, 130 (1929).

6154

GPO 16-29935-2

1  claims of the applicant and the availability of unappropriated water, should

2  not have been dismissed, California's Highest Court made this important ruling:

3      "Counsel is confusing the power of the division, which

4      of necessity is not judicial, with the rights conferred

5      by the statute, which give rise to judicial questions.

6          "* * * Not only may the question of priority be

7      determined, but upon the issue, if controverted, may also

8      be determined the amount of water subject to appropriation

9      flowing in the stream, as well as the restrictions, if any,

10     which surround its use.  The division of water rights can

11     finally dispose of none of these questions.  Neither can

12     it act judicially upon any of them." [28]  (Emphasis supplied)

13  Correctly this Court has declared:

14     "The California cases are clear that determinations on

15     applications to appropriate unappropriated water do

16     not constitute a judicial function." [29]

17     Determinative of the entire matter is a resolution of those issues

18  which are judicial in character; which must be adjudged by this Honorable

19  Court; which were neither before the State Water Rights Board nor within its

20  province.  Attainment of the areas in which this Honorable Court must exercise

21  its judicial powers and the limited sphere in which the State Water Rights

22  Board functions, will be aided by a review of Fallbrook's adverse claims

23  against the vested and exercised rights of the United States of America.

24      ADVERSE CLAIMS OF FALLBROOK CLOUD THE TITLE OF THE VESTED
        AND EXERCISED RIGHTS TO THE USE OF WATER ACQUIRED BY THE
25      UNITED STATES OF AMERICA FROM THE RANCHO SANTA MARGARITA;
        (a)  THOSE ADVERSE CLAIMS PRESENT JUDICIAL QUESTIONS;
26      (b)  THERE RESIDES WITH THIS COURT THE POWER, AUTHORITY
             AND RESPONSIBILITY TO QUIET THE TITLE OF THE UNITED
27           STATES OF AMERICA TO THE VESTED AND EXERCISED RIGHTS
             TO THE USE OF WATER IN THE SANTA MARGARITA RIVER
28           AGAINST FALLBROOK'S ADVERSE CLAIMS

29      It is abundantly clear from that which precedes that the California

30  Legislature neither purported to nor intended to invest judicial powers in the

31  ─────────────
    28/  Ibid., 207 Cal. 521; 279 Pac. 128, 131 (1929).
32  29/  United States v. Fallbrook Public Utility District, et al., 165 F. Supp.
             806, 854 (U.S.D.C.S.D. Cal. S.D., 1958).

6155

- 11 -

1   State Water Rights Board.  Rather the cited authorities specifically hold

2   that the action of the Board last mentioned is non-judicial; is administrative

3   in nature.

4        These excerpts from Fallbrook's answer, declarations by Fallbrook

5   clouding the title of the United States of America, cast in its true

6   perspective the nature of the matters to be adjudged by this Court in regard

7   to the conflicting claims of the Utility District and the United States of

8   America.  Fallbrook avers that:

9        "* * * the uses to which the United States is presently

10       putting its water on the military reservations are not

11       proper riparian uses, but are in fact municipal uses. * * *." [30]

12   Further attacking the vested rights of the United States of America, Fallbrook

13       "denies that the United States has any storage right to

14       the waters of the Santa Margarita River. * * *." [31]

15   Attacking the rights of the United States of America, Fallbrook further

16       "denies that plaintiff /_United States of America_7 is

17       entitled to or can claim as against this defendant any

18       rights, title, interests or privileges purported to have

19       been given it by the stipulated judgment referred to in said

20       paragraph; or that plaintiff is entitled to or can claim as

21       against this defendant any amount of water greater than

22       the amount which may be reasonably required for riparian

23       purposes on that portion of plaintiff's /_United States

24       of America's_7 lands which are riparian to the Santa

25       Margarita River." [32]

26       Those concise pleadings of Fallbrook which cloud the title of

27   the United States of America are variously re-stated in the "Pretrial Order

28   on Issues and Exhibits."

29

30   [30]/  Answering Count XXIII of Plaintiff's Supplement to Complaint, Paragraph III,
             page 15.

31   [31]/  Answering Count XXIV of Plaintiff's Supplement to Complaint, Paragraph II,
             page 15.

32   [32]/  Answer of Fallbrook Public Utility District, First Defense, Paragraph VI,
             page 3.

8159

GPO 16—29008-1

In this quiet title suit there is proof that:

(1) Fallbrook has directly attacked the storage right of the United States of America in Lake O'Neill;

(2) Fallbrook asserts a military use is not a proper riparian use;

(3) Fallbrook denies the rights of the United States of America to divert and apply to a beneficial use upon non-riparian lands, as against the Vail Company, the yield of riparian rights, all as provided in the Stipulated Judgment of December 26, 1940;

(4) Fallbrook denies the right of the United States of America to impound the yield of riparian rights as against the Vail Company.

Moreover, Fallbrook has actually and physically invaded the rights to the use of water, title to which is in the United States of America, by diverting water to which the United States of America is legally entitled.

These acts and claims of Fallbrook must be assessed in their true light. By reason of the permits issued to Fallbrook, it is now asserting and has asserted, the adverse claims to which reference has been made. It is acting and has continued to act upon the basis of claims asserted in its pleadings.

It is no response to the United States to advise it that Fallbrook's rights are limited to the scope of its permits. Actuality proves the error of that proposition. In replying to that erroneous concept, let this fact be emphasized:

In its quiet title suit the United States of America is confronted not with the illusory claims by Fallbrook to unappropriated waters; rather it is confronted with the basic and fundamental and adverse claims of Fallbrook asserted against vested rights - with Fallbrook's actual invasion of vested rights.

6157

Throughout the pre-trial opinion [33/] this Honorable Court has proceeded upon the basis that:

    (a)  The issues to be resolved in this case are similar to those in the administrative proceedings before the State Water Rights Board;

    (b)  The issuance of a permit would in some manner resolve the issues presented here for determination.

For example, it is declared in the opinion last cited that:

    "* * * the question of whether Fallbrook P. U. D. has the power and capacity to appropriate water and build the proposed dam is presently a problem for state agencies." [34/]

Express disagreement with that conclusion is here stated by the United States of America. That question was not before the administrative board; it could not be presented to the board. It involved a judicial question which this Court alone may adjudge and determine.

Seemingly this case has proceeded on the basis that the issue to be determined in regard to Fallbrook was whether it had taken the inceptive steps to acquire a right to the use of water. That is not the issue. Rather, the issue is whether Fallbrook is

    (a)  Invading rights to the use of water invested in the United States of America;

    (b)  Asserting incipient claims which cloud the title of the United States of America.

Affirmative response to both (a) and (b) above must necessarily ensue based upon the undisputed record in this action. In regard to Fallbrook's claims let this observation be emphasized:

---

33/  United States v. Fallbrook Public Utility District, et al., 165 F. Supp. 806 (U.S.D.C.S.D. Cal. S.D., 1958).

34/  Ibid., 165 F. Supp. 806, 858.

6158

GPO 16—22008-2

1    The nature, extent and character of Fallbrook's rights
2    turn squarely upon its corporate power to divert and
3    deliver water for purposes of irrigation as distinguished
4    from a limited power to divert and deliver domestic and
5    municipal water.

6  Attendant upon that proposition is this undeniable conclusion:

7    The measure of Fallbrook's claims is that entity's
8    corporate power to divert and apply water for purposes
9    of irrigation.

10  In view of the very limited scope of the proceedings before the State Water
11  Rights Board it is obvious that the Board had neither the power nor the
12  intention to determine the issues mentioned in the paragraphs which immediately
13  precede.

14  Nature, Extent and Character of Fallbrook's
      Rights Strictly Judicial Questions for
15    This Honorable Court to Resolve:

16    Introduction to this phase of the consideration is contained in this
17  authoritative statement:

18    "If the Water Commission /‾now the State Water Rights Board‾/
19    is acting judicially, it is doing so because it is determining
20    the rights and titles of individuals to private real property,
21    and in that capacity it would be acting as a court as fully
22    as a court of general jurisdiction would be acting when it
23    adjudicates the title to real property." 35/

24  Having precisely stated the question here to be determined, the California
25  Court concluded:

26    "* * * it is not within the power of the Legislature
27    to give that Commission such judicial power." (Emphasis supplied)

28  Manifestly the administrative board does not have the authority to determine
29  Fallbrook's "power and capacity to appropriate water /‾for the purpose of

30
31  ────────────────
32  35/  Tulare Water Comm. v. State Water Comm., 187 Cal. 533, 202 Pac. 874,
         878 (1921).

irrigation ⌐ "⌐ ; it is not and could not be "a problem for" the State Water
Rights Board.
36/

(i)   Nature, Extent and Character of Fallbrook's
      Incipient, Incomplete Claims are Matters
      For Resolution by This Court:

It is not even doubtful that the question of the extent, nature and
character of Fallbrook's incipient and incomplete claims to appropriate rights
to the use of water is a judicial one to be adjudged by this Honorable Court.
Reference in that connection is made to a leading case in California on the
proposition. 37/   There a plaintiff claimed an inchoate right to the use of
water predicated upon compliance with the California law.  A demurrer was
sustained on the grounds that the claimant had no interest to be adjudicated.
Rejecting the trial court's concept, the Supreme Court of California declared:

"Upon the performance of these conditions ⌐ to effectuate

a valid appropriation ⌐, his title to such use would become

complete and perfect.  In the meantime, however, he ⌐ the

appropriative claimant ⌐ had an existing conditional right * * *.

* * * this incomplete right, although not as yet a

title, is an interest in the realty.  Under * * * ⌐ California

law ⌐ the person who has an interest in real property may

maintain an action to determine the validity of a conflicting

claim which is adverse to his won claim.  It follows that

the first count states a cause of action and that the general

demurrer thereto should have been overruled."

Let the last sentence from the quoted excerpt be reiterated:

"the first count states a cause of action";

presents a justiciable issue to be resolved not by an administrative agency
but by a court of equity.

In a more recent decision the California court reaffirmed the case
last cited in these terms:

---

36/   United States v. Fallbrook Public Utility District, et al., 165 F. Supp.
      806, 858 (U.S.D.C.S.D. Cal. S.D., 1958).
37/   Inyo Consolidated Water Co. v. Jess, 161 Cal. 516; 119 Pac. 934, 936 (1911).

6160

1  "Upon the authority of that decision /¯Inyo case_7,

2  we hold that the plaintiff showed sufficient interest

3  /¯in claimed inchoate rights_7 to entitle him to a

4  judgment of the court protecting that interest against

5  all adverse claims which would be subordinate to plaintiff's

6  right if he should comply with all the requirements of the

7  statute and thereupon take the water and apply it to a

8  useful purpose." [38/]

9  These unequivocal terms must be considered controlling on the

10  question of the judicial nature of the issues respecting the extent of

11  Fallbrook's incipient claims:

12  "* * * a court of equity may entertain an action to

13  quiet title to water not immediately available and

14  may grant appropriate relief. * * * In the case of Inyo

15  * * * it is declared that one may protect his 'incipient

16  right' to water against hostile invasions and claims of

17  others." [39/]

18  Again California's Supreme Court removes any basis for the contention

19  that Fallbrook, having received its "hunting licenses" i.e. its permits, from

20  the State need not prove in this Court the nature and extent of its purported

21  incipient claims. [40/]   Seemingly to refute Fallbrook's erroneous contention

22  that it need not prove its incipient rights, the Court states:

23  "The first legal question, then, is what is the nature

24  of the /¯incipient_7 rights which the original locators

25  had acquired * * *."

26  Answering that query, the Court declared:

27

28  38/  Merritt v. City of Los Angeles, 162 Cal. 47; 120 Pac. 1064, 1066 (1912).

29  39/  Byington v. Sacramento Valley West Side Canal Co., 170 Ca. 132;
          148 Pac. 791, 794 (1915).

30
31  40/  Silver Lake Power and Irrigation Co. v. City of Los Angeles, 176 Cal. 96;
          167 Pac. 697, 699 (1917).

32

6161

GPO 16—22005-2

"It would be clearly a property right, and it being incidental and appurtenant to land, it was real property."

This statement is reflective of the legal status of an incipient claim filed with the State Water Rights Board:

"* * * the application /¯to appropriate filed with the State Water Rights Board_7 consists of a conditional right of priority to the future use of water, which may be defeated by a number of future events. It is nevertheless a valuable property right so long as maintained according to legal requirements. Note will be taken that such right is brought into being by a publicly announced intent. This was said by the court of the posting and recording of a notice of appropriation of water in effect long prior to the present system of state supervision, but is equally true of the application to appropriate water under existing law." [41]   (Emphasis supplied)

The extent, nature and character of the "valuable property right" invested by the filing of the application is not and cannot be adjudged by the administrative agency of the State. Legal nature of the permit has thus been stated: "(1) It expresses the consent of the state to the future acquisition of a right by appropriation, limited by the terms of the permits. (2) It sets forth the prescribed criteria pursuant to which the future use is required to conform." [42]

That permit which emanates from the State, as reviewed above,

(a)  relates solely to unappropriated water (if any);

(b)  is subject to all existing rights.

As observed above, however, Fallbrook has asserted claims; committed acts which invade and cloud the title of the United States of America in vested and exercised rights. These are judicial matters to be determined in this cause.

---

41/  45 Cal. Law Review 679.

42/  45 Cal. Law Review 680.

6162

1  (ii)  Adjudication of Fallbrook's Incipient Rights
          Was Not Attempted, Could Not Have Been
2          Accomplished by State Water Rights Board:

3         California's permits to Fallbrook established a priority date;

4  administratively declared that at some time under some circumstances Santa

5  Margarita River water flows into the Pacific Ocean.  Ergo, says the Board,

6  there is unappropriated water and as against the parties contesting for that

7  unappropriated water Fallbrook is awarded the "hunting license".[43/]   If it

8  finds any unappropriated water it may have a priority to use that water.

9         Fallbrook's status differs not at all from one who, under the

10  1872 California law, filed a notice of an intention to appropriate rights to

11  the use of water.  Its legal rights to unappropriated water attached as of

12  that date.  Nature, extent, and exercise of those rights are legal questions

13  concerning which the legislative apparatus relating to priorities of use of

14  unappropriated water is impotent to resolve.

15  (iii)  Correctly This Court Has Declared:
          "When permits issue this court will then
16          determine whether there was surplus water,
          over and above the vested rights on the River,[44/]
17          against which the permit might be operative ***":

18         Recognizing that the ultimate determination of the extent and nature

19  of the rights of the parties resides with this Honorable Court, it ruled as

20  set forth in the quoted statement contained in the subheading above.  That

21  ruling is fully sustained by the decisions of the Supreme Court of the State

22  of California.  It has declared:

23         "If it be conceded that all the division of water

24         rights may do is of a ministerial and not of a judicial

25         character, it does not follow that justiciable questions

26         may not arise from the action or inaction of that body

27         as well as from the rights conferred by the statute

28         itself.  We have already seen * * *

29

30  43/  44 Cal.2d 90; 280 P.2d 1, 11.

31  44/  United States v. Fallbrook Public Utility District, et al., 165 F. Supp.
32         806, 857 (U.S.D.C.S.D. Cal. S.D., 1958).

6163

1          /a_7  that the existence of water subject to

2                appropriation under a permit is a judicial question.

3          /b_7  Priority among permittees is also a judicial

4                question, whatever the stage of operations

5                thereunder."

6    Reiterating the principle that the matter of whether there is a surplus of

7    water available for appropriation is a legal question to be adjudged by the

8    court, it stated:

9          "Not only may the question of priority be determined,

10         but upon the issue, if controverted, may also be deter-

11         mined the amount of water subject to appropriation flowing

12         in the stream, as well as the restrictions, if any, which

13         surround its use."   (Emphasis supplied)

14   To remove all doubt as to the correctness of this Honorable Court's pre-trial

15   ruling that it would determine the availability of the unappropriated waters,

16   if any, for appropriation, the Supreme Court of California added:

17         "The division of water rights can finally dispose of

18         none of these questions.  Neither can it act judicially

19         upon any of them." 45/

20   Two factors are evident:

21   (a)  This Court has ruled in the light of the California law

22         that it would determine the surplus water, if any,

23         available for appropriation;

24   (b)  This case has been tried upon the basis of that

25         declaration.

26   (iv)  Extent and Nature of Fallbrook's Powers to
27         Appropriate Rights to the Use of Water for
           Purposes of Irrigation a Judicial Question
28         For Resolution by This Court:

29         Issue has already been taken with the statement in the pre-trial

30   rulings that Fallbrook's "power and capacity to appropriate water" is a matter

31   ───────────────

32   45/  Yuba River Power Co. v. Nevada Irrigation District, 207 Cal. 521; 279 Pac.
          128, 131 (1929).

                                                              618

1   for state agencies to decide. [46/]   Issue is thus taken upon two fundamental

2   precepts of the law.

3       /1_7 Corporate capacity is a judicial question over which

4           power could not be delegated to the State Water Rights

5           Board in view of the numerous decisions, particularly

6           the Tulare and Temescal Cases reviewed above.

7       /2_7 The State Water Rights Board did not consider or purport

8           to pass upon Fallbrook's capacity to appropriate rights

9           to the use of water for purposes of irrigation.

10          It is, of course, undeniable that the matter of corporate capacity,

11  either public or private, is a judicial question. [47/]   Pertinent in that regard

12  is the fact that Fallbrook's lack of power to appropriate rights to the use of

13  water for purposes of irrigation has a far-reaching effect upon the extent of

14  the damage experienced by the United States of America due to Fallbrook's

15  adverse claims against vested rights of the United States of America.

16          From the case last cited and the authorities reviewed in that

17  decision it is free from doubt that the powers of the Fallbrook Public Utility

18  District are subject to review by this Court.

19  (v)  "Irrigation" is Not a Municipal Use
20          Under California Law:

21          In a leading case in California it was contended that:

22          "The purposes of the law under which the Fallbrook Public

23          Utility District was created "are not municipal."

24          Support for that conclusion were cases involving the

25          districts created for purposes of irrigation and

26          reclamation.

27  Specifically in regard to whether irrigation and reclamation are municipal

28  purposes, California's Highest Court declared:

29  ─────────────────────────────────────────

30  46/  United States v. Fallbrook Public Utility District, et al., 165 F. Supp.
          806, 858 (U.S.D.C.S.D. Cal. S.D., 1958).

31
32  47/  See In Re Bonds of Orosi Public Utility District, 196 Cal. 43;
          235 Pac. 1004 (1925).

6185

1       "The improvements /_irrigation and reclamation_7

2       contemplated by the acts /_irrigation and reclamation

3       district acts_7 under which they were formed cannot be

4       considered 'municipal purposes'." [48/]

5       There is thus a specific and clear pronouncement by California's

6 Supreme Court that irrigation is not a "municipal purpose." Basis for that

7 conclusion requires reference to certain principles limiting the Fallbrook

8 Public Utility District to the performance of municipal activities which would

9 preclude the appropriation and diversion of water for purposes of irrigation.

10       Only limited powers are invested in the Fallbrook Public Utility

11 District. [49/]   Reference in that regard is made to the first section of the

12 organic law pursuant to which that entity was established, which provides:

13       "A /_Public Utility_7 district may be incorporated and managed

14       in unincorporated territory pursuant to this division and

15       may exercise the powers expressly granted." [50/]

16 Objective of the California State Legislature in permitting the creation of

17 Public Utility Districts has been stated as follows:

18       "In enacting the statute here in question, the legislature has

19       made provision whereby the inhabitants of the State living out-

20       side the limits of cities and towns may serve their own purposes

21       through the operation of the same kind of utilities, when

22       organized for that purpose." [51/]

23       Turning to those powers which may be exercised by entities of the

24 nature of the Fallbrook Public Utility District, California's Highest Court

25 declared:

26       "They are the acquisition, construction, and use of works for

27       supplying the inhabitants of the district with light, water, power,

28 —————————————————————

29 48/  In Re Bonds of Orosi Public Utility District, 196 Cal. 43; 235 Pac. 1004,
       1008 (1925).

30 49/  West's Annotated California Codes, Public Utilities, Section 15701 et seq.
   50/  West's Annotated California Codes, Public Utilities, Section 15701.

31 51/  In Re Bonds of Orosi Public Utility District, 196 Cal. 43; 55-56;
       235 Pac. 1004, 1009 (1925).

32

6196

OPO 16—20905-2

1  heat, transportation, telephone service, or other means of

2  communication, * * *." [52/]

3  That excerpt embraced the language of the statute constituting the chief

4  source of authority for Public Utility Districts. [53/]   Vastly more important,

5  however, is this salient fact:  The quoted excerpt contains the precise lan-

6  guage of California's Constitutional provision empowering municipalities to

7  acquire, construct and maintain public utilities to supply these services

8  to their inhabitants:

9  "light, water, power, heat, transportation, telephone service

10  or other means of communication." [54/]

11  Activities involving the disposition of garbage and refuse are likewise within

12  the powers of the Public Utility Districts. [55/]   Moreover, too great importance

13  may not be attributed to this statement by California's Court in discussing the

14  powers of Public Utility Districts:

15  "It is significant that, when the legislature came to pass the

16  act extending to inhabitants outside of incorporated cities and

17  towns the privileges in regard to acquisition and use of their

18  own public utilities that are granted by the state constitution

19  to municipalities, it should have followed the language of the

20  Constitutional amendment 1911 in the statement of the purposes

21  for which the /¯Public Utility_7 districts may be created." [56/]

22  Then as if to remove any doubt as to the powers and functions of the Fallbrook

23  Public Utility District the Supreme Court of California interpreting the law

24  pursuant to which that district was organized, declared:

25  "We are convinced that was its /¯the State legislature's_7 in-

26  tention to provide for the creation of public corporations of

27  a quasi-municipal character, with the power to carry on the par-

28  ticular /¯municipal_7 functions committed to them." [57/]

29
30  [52/]  Ibid., 196 Cal. 43, 56; 235 Pac. 1004, 1009 (1925).
    [53/]  West's Annotated California Codes, Public Utilities, Section 16461.
    [54/]  Constitution of the State of California, Article 11, Section 19.
31  [55/]  West's Annotated California Codes, Public Utilities, Section 16461.
    [56/]  In Re Bonds of Orosi Public Utility Dist., 196 Cal. 43; 235 Pac. 1004, 1009-1010
32  [57/]  Ibid., 196 Cal. 43; 235 Pac. 1004, 1009-1010.

6167

1  This extremely important statement is also quoted:

2  "It [ the California Legislature ] thereby provided for the

3  creation of public agencies or quasi-municipal corporations, the

4  declared purpose of the act being to extend to the inhabitants of

5  such districts, when properly organized, advantages in the use and

6  benefit of certain utilities which they might not be able to

7  obtain in any other way, and which, from common experience we

8  know tend to promote the general welfare of the State." [58]

9       It was on that background that California's Supreme Court declared

10 that

11       irrigation is not a "municipal" purpose. [59]

12 Fallbrook, is, as a consequence, powerless to claim rights for that purpose.

13 (vi)  California Law Limits Fallbrook to
            The Appropriation of Rights for
14         Municipal Purposes:

15       This limitation upon the Fallbrook Public Utility District's claim

16 for rights to the use of water for purposes of irrigation is destructive of

17 that claim:

18       "Limited Use.   The application for, or the granting of a

19       permit to any municipality to appropriate water does

20       not authorize the appropriation of any water for other

21       than municipal purposes." [60]

22       In the Orosi Bond Case [61]   California's Court closely examined the

23 laws alluded to above.  It distinguished between the power to provide water for

24 purposes of irrigation and municipal purposes.  It specifically applied the

25 rationale of the Constitutional amendments empowering municipal corporations

26 to supply utility services to their inhabitants. [62]   It then declared that which

27 is fatal to Fallbrook:

28 ──────────────────────────

29 [58]  In Re Bonds of Orosi Public Utility Dist., 196 Cal.43; 235 Pac. 1004, 1010.
       [59]  Ibid., 196 Cal. 43; 235 Pac. 1004, 1008 (1925).
30 [60]  West's Annotated California Codes, Section 1461.
       [61]  In Re Bonds of Orosi Public Utility Dist., 196 Cal. 43; 235 Pac. 1004 (1925).
31 [62]  Constitution of the State of California, Article 11, Sec. 19.

32

6169

GPO 10—20905-1

1   "From our conclusion that the act, under which the

2   respondent district was created, provides for the formation of a

3   public or quasi municipal corporation, the inhabitants and

4   property owners of which are subject to tax by the district

5   for municipal purposes only * * *." [63/]   (Emphasis supplied)

6   It is manifest that the Fallbrook Public Utility District is powerless to levy

7   assessments to construct a dam and system for the purposes of irrigation.

8   As a consequence, in this quiet title suit the United States of America is

9   entitled to have a decree declaring its rights and quieting its title against

10  Fallbrook's adverse claims for water to be utilized for purposes of irrigation.

11  (vii)   Fallbrook Irrigation District
            created For Purpose of Appropriating
12          Water For Irrigation;
            Defendant Fallbrook Public Utility District
13          Created to Provide "Municipal" Water and Other
            Services; Graphically Demonstrates Latter's
14          Want of Power to Provide Water For Purposes
            of Irrigation:

15

16          There cannot be ignored these proved facts [64/]  which remove any

17  doubt that the inhabitants of Fallbrook proceeded in conformity with the

18  California law

19          /a_7  to establish the Fallbrook Irrigation District

20              to provide water for purposes of irrigation;

21          /b_7  to create the Fallbrook Public Utility District

22              to provide water for municipal needs.

23      1.  The Fallbrook Public Utility District was organized in 1922.

24      2.  Existing at the same moment was the Fallbrook Irrigation District.

25          (a)  The Irrigation District in the year 1924 undertook

26              to appropriate rights in the Santa Margarita River

27              for irrigation purposes.

28          (b)  The Irrigation District obtained in the year 1934

29              a permit to appropriate storage rights for 35,000

30  _____

31  63/  In Re Bonds of Orosi Public Utility Dist., 196 Cal. 43; 235 Pac. 1004, 1011.
    64/  United States of America-Plaintiff's Exhibit 131; Ex. 132.

32

6169

- 25 -

acre-feet of water.  The proposed dam was at
the present Fallbrook-Lippincott site where the
Fallbrook Public Utility District purports to
desire to build a dam.[65/]

3.  On July 20, 1932, the Fallbrook Public Utility District
was granted a gratuitous and revocable license by the
Rancho Santa Margarita, predecessor in interest of the
United States of America, to take a very small quantity
of water.  Too great stress may not be placed upon the
purposes for which the Fallbrook Public Utility District
was permitted to take that small quantity of water.
That limitation is as follows:

"Rancho Santa Margarita grants to Fallbrook Public
Utility District a revocable license or permit to
divert and take from the Santa Margarita River ten
miner's inches of water continuous flow 'for - the -
sole - and - exclusive - purpose - of - supplying -
the - inhabitants - of - said - Fallbrook - Public -
Utility District - with - water - for - domestic -
uses." (Emphasis supplied)

4.  The Fallbrook Irrigation District and the Fallbrook Public
Utility District continued from 1922 through 1934 to exist
side by side.  On the date last mentioned the Fallbrook
Irrigation District formally abandoned its permit to construct.

5.  The limitation spelled out in the gratuitous license is simply
further evidence that the Fallbrook Public Utility District was
performing functions compatible with the laws under which it
was incorporated and acting within the spirit of the
Constitution of California permitting municipal corporations
to "establish and operate public works for supplying its

---

65/  See United States of America-Plaintiff's Exhibit 1.

6170

- 26 -

GPO 16—22905-1

1        inhabitants with light, water, power, heat * * *." [66]

2        Emphasized in that connection is the fact the act

3        under which the Fallbrook Public Utility District was

4        incorporated spells out the identical powers quoted

5        from the Constitution. [67]

6  (viii)  "Domestic and Municipal"
           Uses Claimed Originally by
7          Fallbrook:

8        Warranting note is the fact that the applications by the Fallbrook

9  Public Utility District as originally filed limited those applications to

10  "domestic and municipal use." [68]  Thus the course of conduct of the officials

11  further evinces their correct understanding of the limited powers of the

12  Utility District.  Later filings were made for purposes of irrigation.  That

13  subsequently the Utility District claimed water for purposes of irrigation

14  merely demonstrates an effort to pervert the objects for which it was created

15  and may function.

16  (ix)  Amendment to Public Utility District Law After
          Initiation of This Suit Provides for Estab-
17         lishment of Improvement District Within Public
          Utility District Which Might Provide Water For
18         Irrigation;  Fallbrook Has Not Complied With
          Law;  May Not Provide Water For Purposes of
19         Irrigation:

20        In 1951 and 1953, subsequent to the initiation of this cause,

21  California amended its laws conferring upon Public Utility Districts

22        "the same powers with reference to improvement districts

23        as are conferred upon irrigation districts * * *." [69]  (Emphasis supplied)

24  Fallbrook has not complied with this law.  Noted here is this fact:

25        "The formation of an improvement district /⎯in a Public

26        Utility District_7 may be proposed and the petition

27        therefor shall be signed by two-thirds or more in number

28        of the holders of title to the lands in the proposed

29        improvement district." [70]

30

31  [66]  Constitution of the State of California, Article 11, Sec. 19.
    [67]  West's Annotated California Code, Public Utilities, Sec. 16461.
32  [68]  United States of America-Plaintiff's Exhibit 135, Exhibit 136.
    [69]  West's Annotated California Codes, Sections 16401, 16407 et seq.
    [70]  West's Annotated California Codes, Section 23602.

6171

GPO 16—20908-2

1   Need for that procedure is the fact that the landowners in the improvement

2   districts who would receive water for purposes of irrigation would have levied

3   against their lands the special benefit assessments which would be used to

4   pay the costs of irrigation water.  There is thus demonstrated the fundamental

5   reason why Fallbrook may not appropriate rights to the use of water for

6   purposes of irrigation without conformance to the last cited laws.  It is

7   empowered to levy taxes for the general welfare.  Improvement districts to

8   provide irrigation water levy a special assessment based upon special benefits

9   to the lands which are irrigated.  Thus Fallbrook is impotent to finance an

10  irrigation project based upon its sole power to levy general taxes for

11  municipal purposes.  The absence of power in Fallbrook to finance an irrigation

12  project is next to be considered.

13  (x)  Lack of Power of Fallbrook
        To Levy Assessments For Purposes
14      of Irrigation:

15          Genesis of Fallbrook's lack of power to appropriate rights to the

16  use of water for purposes of irrigation is well stated in the Orosi Bond Case

17  referred to above.

18          "The other distinguishing feature /¯between an irrigation

19          district and Fallbrook_7 is that the exactions which such

20          /¯irrigation_7 districts may enforce in order to carry out

21          their purposes are in the nature of assessments or taxes

22          for local benefits, to be spread on the property in the

23          districts in proportion to the peculiar advantage accruing

24          to each parcel from the improvement."  71/

25  Continuing, the Court demonstrated the basic reason why Fallbrook may not

26  build irrigation works:

27          "Such an exaction /¯for purposes of irrigation_7 is

28          generally in the form of a special assessment, but,

29          even if it is in the form of a tax, it is nevertheless

30          an assessment for local benefits."

31  _____

32  71/  In Re Bonds of Orosi Public Utility Dist., 196 Cal. 43; 235 Pac. 1004,
         1008 (1925).

                                                                6172

GPO 16—20998-2

1    In keeping with the lack of power of the Fallbrook Public Utility

2  District to finance an irrigation project is the limitation on its bonding

3  capacity, stated to be $1,200,000.00. The power thus to bond itself -

4  infinitely small in the light of the costs of an irrigation system including

5  a dam - would, of course, be limited to municipal purposes. Irrigation is not

6  one of those purposes.

7           FALLBROOK HAS PLACED ITS CLAIMED INCHOATE RIGHTS IN ISSUE;
                THEY ARE LIMITED TO MUNICIPAL AND DOMESTIC USES
8                     AND SHOULD BE SO ADJUDGED

9    This quiet title suit has as its objective the determination of

10  the nature and extent of the rights of all parties. Fallbrook, it is

11  respectfully submitted, may not have adjudicated to it rights to the use of

12  water for purposes of irrigation. Moreover, the decree must define the extent

13  and nature of Fallbrook's inchoate rights. In declaring the content of a

14  decree for incipient rights the California Supreme Court stated:

15       "Such judgment /‾for incipient or inchoate rights_7 , of

16       course should not declare the plaintiff absolutely entitled

17       to the water * * *. It should only declare and describe

18       the plaintiff's contingent right to use the water and enjoin

19       adverse claims or uses injurious thereto * * *. If the

20       defendant's right is paramount, but does not include all

21       the waters of the stream, the judgment may so declare and

22       fix the plaintiff's contingent right in the surplus at

23       such time as there is an excess over defendant's use. 72/

24  That principle of law is, of course, reflected in the InyoCase reviewed above

25  and others which have been discussed.

26    It follows, as a consequence of the law of California, that the

27  decree, in the words of California's Court, should:

28       "declare and describe * * * /‾Fallbrook's _7 contingent right"

29  which necessarily entails a determination that Fallbrook's incipient right

30  is limited to "municipal and domestic uses."

31  ────────────────

32  72/  Merritt v. Los Angeles, 162 Cal. 47; 120 Pac. 1064, 1066 (1912).

6173

1               At this juncture let this fact be respectfully emphasized:

2                   In this quiet title suit the measure and extent of

3                   all rights vested and incipient, must be defined and

4                   declared or the decree which is entered will be abortive.

5  Intent To Appropriate; Power Beneficially
6      to Apply Water For Purposes of Irrigation
        Are Essential to Any Right - Fallbrook
7      Cannot Formulate That Intent or Apply Water
        Beneficially for Purposes of Irrigation:

8            From earliest California history the intent to appropriate rights

9  which would yield a specified quantity of water is a basic element.[73/]   Absent

10  that intent there could be no investiture of a right.[74/]   Want of that

11  basic ingredient must cause Fallbrook's inchoate claim to be adjudged invalid

12  insofar as it relates to purposes of irrigation.

13            Beneficial use is the basis, the measure, and limit of any right

14  incipient or vested.  That proposition is elemental in Western Water Law.

15  Moreover, an inchoate right of the nature claimed by Fallbrook is valid only

16  if exercised with reasonable diligence.[75/]   In view of Fallbrook's total and

17  complete inability to appropriate water for purposes of irrigation, it is

18  manifest that it cannot formulate the requisite intent beneficially to apply

19  the water at some future date.  Long ago in California it was recognized that

20  without special legislation a municipality was powerless to divert and deliver

21  water for purposes of irrigation.[76/]

22            "* * * THIS COURT WILL * * * DETERMINE WHETHER
23            THERE WAS SURPLUS WATER, OVER AND ABOVE THE
             VESTED RIGHTS ON THE RIVER * * *" -
24             FAILURE OF FALLBROOK TO PROVE SURPLUS

25            This Court in conformity with the California law has recognized that

26  whether there is a surplus of water over and above vested rights is a judicial

27  question.  That determination could not, of course, be made until the vested

28  rights were proved.

---

29

30  73/  Thompson v. Lee, 8 Cal. 275, 280 (1857).
     74/  Weaver v. Eureka Lake Co., 15 Cal. 271, 275 (1860).
31  75/  Senior v. Anderson, 115 Cal. 496; 47 Pac. 454 (1896).
     76/  Vernon Irr. Co. v. Los Angeles, 106 Cal. 655; 39 Pac. 762, 766.
32         (This case, frequently cited, was reversed in part upon another
          ground.)

6174

GPO 16—29906-3

A correlative proposition to that stated in the immediately preceding paragraph is that Fallbrook has the burden of proving the existence of a surplus of unappropriated water available for appropriation. [77/] Failure by Fallbrook to sustain its burden is complete.  It neither proved the past, present or future needs for municipal purposes.  It did not prove its needs past, present or future for purposes of irrigation.

On the precise subject here for consideration reference is made to this summation:  "The decree and judgment of the Court must be rendered in an action to adjudicate water rights, and must be based upon the findings of fact and conclusions of law found by the Court." [78/] As if directed to the matter now being considered, the last cited authority emphasized that: "As the main purpose of such an action to quiet title is to determine the respective rights of the parties to the use of the water, * * * the decree should definitely award the respective rights to the parties to the action." Numerous decisions are cited by that authority in support of the conclusion thus expressed.  From the same source this excerpt is taken:

> "where /‾findings are_7 not supported by the evidence
> the findings and the judgment based thereon will be
> set aside and reversed * * *." [79/]

Simply stated, the law in suits of this nature is identical with the general proposition that, "It is well established that findings of fact must conform to and be supported by the evidence, and that a judgment resting upon a finding not so supported may be set aside upon motion for new trial, or appeal." [80/] On repeated occasions the courts have declared: "Findings must be based upon facts." [81/] Again it has been stated that "* * * findings of fact must be based upon evidence, and must not be mixed with findings of law." [82/]

---

[77/] Peabody v. Vallejo, 2 Cal.2d 351; 381; 40 P.2d 486, 498 (1935).
[78/] 3 Kinney on Irrigation and Water Rights, 2d ed., Sec. 1557, pages 2810-11.
[79/] 3 Kinney on Irrigation and Water Rights, 2d ed., Sec. 1556, page 2810.
[80/] 53 Am. Jur., Trial, Sec. 1144, page 798.
[81/] Glick v. United States, 93 F.2d 953, 958 (C.A.7, 1937).
[82/] Stuyvesant Ins. Co. v. Sussex Fire Ins. Co., 90 F.2d 281, 283
      (C.A.3, 1937); Cert. denied 302 U.S. 742 (1937).

6175

GPO 16-29006-2

1    This is beyond doubt the law:  "Findings not supported by any

2 competent evidence * * * cannot be sustained, and a judgment based thereon

3 will be reversed." [83/]

4    On the basis of the present record Fallbrook has completely failed

5 to prove its claims.  Judgment should accordingly be entered for the United

6 States of America.

7                              UNITED STATES OF AMERICA

8

9

10                              J. LEE RANKIN,
                                Solicitor General

11

12

13 Dated: January 4, 1961       WILLIAM H. VEEDER
                                Attorney, Department of Justice

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30  [83/]  3 Am. Jur., Appeal and Error, Sec. 899, p. 464;
31          5 Moore's Fed. Prac. Sec. 52.03.

32

                                                    6178