LAW OFFICES
SACHSE AND PRICE
1092 SOUTH MAIN STREET
FALLBROOK, CALIFORNIA
RANDOLPH 8-1154

Attorneys for Defendants

(SPACE BELOW FOR FILING STAMP ONLY)
FILED
JAN 10 1961
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] Deputy

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
Plaintiff,
vs
FALLBROOK PUBLIC UTILITY DISTRICT, et al.,
Defendants.

No. 1247-SD-C

REPLY OF FALLBROOK PUBLIC UTILITY DISTRICT TO MEMORANDUM OF UNITED STATES OF AMERICA

APPROPRIATIVE RIGHTS OF FALLBROOK

I

ISSUES INVOLVED

The contentions of the United States are stated by the Court (TR, Vol. 131, page 14856) as follows:

A. That Fallbrook has the burden of showing economic ability to build a dam.

B. That it must show that it has irrigable acreage.

C. That it has the burden to show that there is un-appropriated water to which its permit would apply.

D. That Fallbrook, because of the doctrine of ultra vires, has no authority to do anything but deal in domestic water and not irrigation water.

II

PRE-TRIAL ORDER AND OPINIONS

It is the position of Fallbrook that the three propositions first stated above have already been determined by the Court, and

8197

Copy mailed

that there only remains for briefing the question of ultra vires.

A. Economic feasibility; irrigable acreage; un-appropriated water.

The essentials of the Court's rulings are stated in the PRE-TRIAL ORDER, Section III, "SUMMARIZATION OF CERTAIN OF THE ISSUES WHICH WERE DECIDED IN THE COURT'S OPINION OF AUGUST 8, 1958", as follows:

> "11. This Court does not have jurisdiction to perform the quasi-legislative function of determining which, if any, of the competing applicants...to appropriate un-appropriated water of the Santa Margarita River should receive a permit to do so. This function has been delegated by the California Legislature to the California State Water Rights Board.".
>
> "13. The Board has broad discretion to consider the public interest in granting, denying and conditioning permits. This Court will not rule on this issue.".
>
> "15. Specifically, the Court does not have jurisdiction in this case to review the actions of the State Water Rights Board respecting applications to appropriate water.".

The foregoing Rulings paraphase the more detailed analyses of the problem made by the Court in its two Opinions on Pre-Trial.

These questions were extensively briefed by all parties. The United States in its Memorandum has cited no "controlling authority to the contrary" and we will in this Memorandum only state the principles upon which we rely.

1. The questions of financial feasibility, irrigable acreage and availability of un-appropriated water have been determined

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

0199

by the agency charged with that responsibility by the laws of California.

2. The United States was a party to those proceedings but refused to participate therein.

3. The United States refused to avail itself of the opportunity for judicial review provided by the laws of California.

4. The determination of the State agency is now final and it is not within the jurisdiction of this Court to re-try the matters therein determined.

B. Ultra vires.

On this issue the Court reserved a ruling, both on the merits and as to relevancy. We will first discuss relevancy, and will thereafter discuss the question on the merits.

III

THE ISSUE OF ULTRA VIRES IS NOT RELEVANT

A. The matter has been determined by the State Water Rights Board.

The State Water Rights Board, after hearings, and in accordance with the provisions of California Statutes, has granted to Fallbrook permits to appropriate water for irrigation (and other) purposes. An integral part of its determination was that the public interest required the granting of the permit.

California Constitution, Art. XIV, Section 3

Water Code, Section 1256

This determination is not subject to collateral attack in these proceedings.

PRE-TRIAL ORDER, Section III, paragraph 14

B. The United States has no standing to challenge Fallbrook's act in appropriating water for irrigation purposes.

It is fundamental that one who is neither a taxpayer nor a resident has no authority to challenge by suit the acts of a municipal corporation.

35 Cal. Jur.(2d) Mun. Corporations, Section 554

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

6199

In this connection the case of Orcutt vs. Pasadena Land and Water Company, 152 C. 599; 93 P. 497, is of interest, as it also constitutes one of the basic authorities for the principle that the acts of Fallbrook are entirely within its powers. However the case also specifically holds that the act of a city in acquiring a water system may not be challenged by parties not taxpayers or residents.

> "Collateral inquiry on behalf of persons not taxpayers or residents of the city....into the validity of the purchase cannot be made on that ground, nor on the ground that the bonds are invalid and that consequently the city cannot buy the property. The plaintiffs have no interest in these questions.". (Emphasis added)

IV

ULTRA VIRES: HAS FALLBROOK POWER TO APPROPRIATE WATER FOR IRRIGATION PURPOSES?

A. The Power is expressly granted by Statute.

The following provisions of the Public Utility District Act (Public Utilities Code Section 15501, et seq) are applicable;

> Sec. 16461: "A district may acquire, construct, own, operate, control, or use, within or without or partly within and partly without the district, works for supplying its inhabitants with light, water,....." (Emphasis added)

The section does not limit the district to domestic or municipal water, it states the power in the broadest possible terms: "Water".

> Sec. 16409: "For the purpose of obtaining and supplying water for domestic, irrigation, and fire protection purposes, a district may...

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

8200

(cooperate and contract with the United States].". (Emphasis added)

This section was added to the act in 1953. However, that fact is of no materiality, since the Legislature has plenary power to "enlarge" the powers of such districts. See Gen. Engineering Co. vs East Bay MUD, 126 CA 349; 12 P(2d)289

Sec. 16407: "A district has the same power with reference to Improvement Districts as are conferred upon irrigation districts...".

This section was added in 1951. Reference is again made to Gen. Engineering vs East Bay MUD, supra.

Sec. 16880: "A district may contract with any public agency or with any person, firm or corporation for the joint acquisition or construction or use of any water works or other facilities for supplying water to the public utility district or such other public agency...". (Emphasis added).

The foregoing section was in the Act as originally enacted.

The foregoing provisions of the act under which Fallbrook was created and operates are sufficient of themselves to grant the power to appropriate and serve water for irrigation purposes. Although we are aware of no case which expressly discusses the point, Fallbrook Public Utility District vs Martin (1957) 151 CA (2d) 84 311 P.(2d) 151; hearing before Supreme Court denied July 10, 1957, is certainly authority for the proposition that Fallbrook, the identical party involved in these proceedings, has the power to build the identical project involved in these proceedings. The first sentence of the opinion points out that Fallbrook seeks to procure, store and distribute water for "...irrigation and domestic purposes.". The entire case of defen-

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

6209

dants was predicated upon the fact that Fallbrook should not be permitted to condemn lands for the dam and reservoir, for a variety of reasons. The reversal of the trial court's decision was absolute, the appellate court deciding that there was surplus water (151 C.A.(2d) at pp. 89-91 and that the District had established rights in the waters of the Santa Margarita River (151 C.A. (2d) at p. 87 and should be permitted to proceed with the project.

B. <u>The case law uniformly affirms the power of a municipal corporation such as Fallbrook to sell water for irrigation purposes</u>.

The argument of the United States on this question can be summarized as follows:

1. Fallbrook is a quasi-municipal corporation.

2. Its powers are strictly limited by statute.

3. It is not an "irrigation district".

From these premises, the United States concludes that Fallbrook has no power to appropriate water for irrigation purposes. <u>Fallbrook does not dis-agree in the slightest with the premises stated, but it urges that the conclusion is a complete non-sequitur</u>.

1. <u>The Orosi Case</u>.

The case of <u>In re Orosi Public Utility District</u> (1925) 196 C. 43; 235 P. 1004, is cited by the United States as authority for the proposition that Fallbrook's acts are ultra vires.

That action was brought by the District, one of the very first such formed in California, to determine the validity of a bond issue voted by the people of the District to provide funds for a water system. A resident taxpayer challenged the proceedings upon the ground that the act of the legislature establishing such Districts was unconstitutional. The Court discusses this point as follows: (196 C. at p. 50)

"Our first consideration is therefore directed to the nature of the District which may be formed

LAW OFFICES
SACHSE AND PRICE
1002 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

under its provisions. If it be one formed for the primary purpose of assessing upon the lands within its boundaries benefits to be derived by the lands from some public improvement for which purpose the district is created, we must hold with appellant, and declare the act unconstitutional as violating the "due process clause" of the Federal Constitution.". (Emphasis added)

The discussion that follows is devoted to the question of whether Orosi is a public corporation, the property owners and taxpayers of which are subject to general taxation for municipal purposes, or is in substance a special assessment district analagous to irrigation districts. The Court conludes:

"We are convinced that it was the intention to provide for the creation of public corporations of a quasi-municipal character, with the power to carry on the particular functions limited to them.". (196 C. at p. 56)

Accordingly, we agree completely with the United States that the Fallbrook Public Utility District is a quasi-municipal corporation, analagous to a city, and is not an assessment district analagous to an irrigation district. To that obvious premise, however, the United States adds the assumption that such quasi-municipal corporations have no right to serve irrigation water. This assumption is without support by a single California case.

2. The power of Quasi-Municipal Corporations to serve irrigation water.

The basic constitutional provision is found in Article XI, Sec. 19, California Constitution, and states:

"Any municipal corporation may establish and operate public works for supplying its inhabitants

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

8202

with light, water, power, heat.....". (Emphasis added).

The authorization of the Constitution is to supply water, just as is the authorization in the Public Utility District Act. It is not limited to domestic water, industrial water, water for fire protection or sanitation or water for irrigation.

In addition to the Constitutional authorization just cited, the Statute Law of California clearly grants to municipalities the power to appropriate water for "irrigation" purposes. Public Utilities Code Section 10153 (West Codes) reads as follows:

> "There is granted to every municipal corporation of the State the right to take, in the manner provided by law, any waters belonging to the State, not otherwise disposed of, flowing or existing in any stream or lake intersected, crossed, or tapped by its water works, so far as is necessary to give such municipality and its inhabitants an ample supply of water for all municipal, domestic, irrigation, and manufacturing purposes." (Emphasis added)

This statutory provision was codified in 1951, however, it is an almost verbatim re-production of Statutes 1909, ch 352, page 581, section 1.

The statements contained in the brief of the United States that "..irrigation is not a municipal purpose.." (U.S. brief p. 24, line 11) and "Irrigation is not a municipal use under California Law" (U.S. Brief page 21, line 19) are simply untrue. This is an example of counsel for the United States stating a proposition of law with no greater authority than that of Veeder on Municipal Law.

We have been unable to find a single California case, nor does the United States cite a case, to the effect that irrigation use of water is not a proper municipal use. On the contrary, many cases have approved the service of irrigation water by municipal corporations.

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

a. Perhaps most helpful are the companion cases of City of South Pasadena vs Pasadena Land and Water Co. (1908) 152 C 579, 93 P. 490; and Orcutt vs Pasadena Land and Water Co. (1908) 152C 599, 93 P. 497. Both cases involved attempts to restrain the transfer to the City of Pasadena of the water system of a private corporation which had been serving water to the plaintiffs. In the Orcutt Case the plaintiff had been served water for irrigation purposes by the defendant corporation. The Court held that the City could continue to so serve him and that mandamus to compel service would be proper in the event of refusal. In the South Pasadena Case the Court held that Pasadena could be compelled to continue to serve that city and its inhabitants even though (as in the Orcutt case) such service would be outside the boundaries of the City of Pasadena. Both cases were decided before adoption of the 1911 Constitutional Amendment heretofore cited.

b. City of Los Angeles vs City of Glendale (1943) 3 C. (2d) 68, 142 P. )2d) 289.

This case involved a dispute over the right of the City of Los Angeles to recapture from the San Fernando basin water which had percolated underground after its sale by the City for irrigation use. The Court expressly approved the irrigation use.

c. Wehrle vs Board of Water & Power Commissioners, (1930) 211 C. 70, 293 P. 67.

This case was an attempt to challenge the purchase by the City of Los Angeles of 1300 parcels of land in Inyo County. In the discussion of the facts the Court states that the water was to be imported to Los Angeles for ".... domestic, industrial and other uses by the City and its inhabitants.." 211 C at P. 72. It cited the Pasadena Land and Water cases with approval, stating that there can be no question that the supplying of "water" is a proper municipal function.

d. Metropolitan Water District vs Superior Court (1934)

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

2 Cal (2d) 4, 37 P (2d) 1041.

The case holds the Metropolitan Water District of Southern California to be a quasi-municipal corporation, and cites the Orosi Case in distinguishing such corporations from assessment districts such as irrigation districts. Sec. 10 of the Metropolitan Water District Act authorizes the District to sell water "..for Municipal and domestic uses and purposes.". Irrigation is not specifically named. The Courts in California can and do take judicial notice of matters of common knowledge within the jurisdiction (Witkin, California Evidence Sec. 50, p. 65. (1958). Surely it is common knowledge within Southern California that the Metropolitan Water District serves irrigation water to users throughout the District. In fact that district has established special rates for Agricultural water, as set forth in its Ordinances 5170 and 5645, copies of which are hereunto attached marked exhibits A & B respectively.

e. Fallbrook PUD vs Martin, supra.

This case was discussed in a previous section of this Memorandum. It acknowledges the authority of the identical district herein involved to construct the very project here under discussion. We respectfully submit that the issue is res adjudicata by reason of this decision.

C. The practice of granting to quasi-municipal corporations permits to appropriate water for irrigation purposes has been uniformly followed and never challenged in California.

It is recognized that custom and practice do not of themselves stamp with legality an act that is clearly ultra vires. But it is interesting to observe that in all the history of water litigation in California, and throughout the many hearings before the Water Rights Board and its predecessors, it has never been suggested that a quasi-municipal corporation might be lacking in power to appropriate water for irrigation purposes. Cited below

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

are sample references to various appropriations for municipal purposes, all of which were made by quasi-municipal corporations. It is emphasized that this list is not complete, and is intended only as a sampling of many more similar appropriations.

City of Carlsbad, Applic. No. 10081, 12/9/40. 150 acre feet per annum from Calavera Creek for irrigation and domestic use. Now Licensed.

City of San Jose, Applic. No. 5156, 8/14/26. 500 acre feet per annum from Penitencia Creek for irrigation and domestic use. Now Licensed.

City of Los Angeles, Applic. 570 1/19/17. 597 acre feet per annum from Walker Lake for agricultural purposes. Now Licensed.

Georgetown Divide Public Utility District. Applic. No. 12421, 3/19/48. 50 cfs and 20,000 acre feet per annum from Pilot Creek for irrigation, domestic and stock water use. Now under Permit.

Georgetown Divide Public Utility District. Applic. No. 16688, 10/24/55 for 30 cfs and 4000 acre feet per annum from Onion Creek for irrigation, domestic and stock water use. Now under permit.

Ventura River Municipal Water District. Applic. No. 15999, 8/16/54 for 120 cfs and 250,000 acre feet per annum from Coyote Creek and Ventura River for irrigation and domestic use. Now under permit.

V.

THE BRIEF OF THE UNITED STATES

A. Ultra Vires

It is difficult to reply to the contentions made in the United States' brief on the subject of ultra vires, because the discussion therein completely avoids the question stated by the Court: Does Fallbrook have power to deal in water for irrigation purposes?

As has been previously pointed out, we freely concede many of the points contained in the United States' brief. We agree

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

6207

that Fallbrook is a quasi-municipal corporation. We agree that as such it is a creature of statute. We agree that acts of the Water Rights Board could not in any way increase its powers. We agree that it is not an improvement district, as is discussed in the Orosi Case.

But it is difficult to understand the failure of the United States, in a 32 page analysis which is presumably intended to assist the Court, to even mention the express statutory authorization contained in California Law since 1909, now found in Public Utilities Code Section 10153. The practical effect of the United States' brief is to set up a series of straw men, and then demolish them one-by-one, all the while completely avoiding the fundamental question.

On page 29 of its brief, the United States suggests that in defining the extent of Fallbrook's appropriative rights they be limited to "municipal and domestic uses". Under the authority of the Statute and Case law heretofore cited, such limitation would be meaningless, since irrigation use is a proper municipal use. But more important, such limitation would be improper, since it is the conceded purpose of the Court in this proceeding to catalogue rights as they exist. Fallbrook's right exists because of the permits issued by the State of California, and in describing Fallbrook's appropriative rights the Court should limit itself to the language of the permits. Such description of course in no way restricts the future authority of the Court to modify the terms and conditions of Fallbrook's use upon proper showing.

B. Other matters.

As for the arguments presented by the United States on issues other than that of ultra vires, our discussion will be very brief. It must be pointed out that on the first page of the United States' brief, Synopsis, line 14, is an absolutely erroneous statement: "This Court has recognized that it must determine whether

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

6208

there is available in the Santa Margarita River any surplus water over and above vested rights."

The above statement is exactly 180 degrees removed from the pronouncement of the Court, made at the last hearing on this cause. Vol. 131 of the Transcript, page 14,845, lines 9-16, contain the following language:

> "THE COURT: Unless you are going to say something different than you said, I don't think they have the burden of proving anything except that they got the permit, and this court then must say that this was done by a State agency and it has such validity as the law provides and gives them a right to proceed under the permit subject at all times to this court's determination as to whether the water on which they would operate is actually surplus water".

This matter has been re-hashed so often that it is difficult to believe that any genuine mis-understanding can exist. However, in one last attempt to make clear the position of Fallbrook to Mr. Veeder, we will again state:

1. Fallbrook is the owner of certain permits.

2. These permits give it the right to construct a dam and impound water behind it.

3. This Court and the State Water Rights Board will have continuing jurisdiction to review any impoundment or use of water by Fallbrook.

4. If, at a future date, Fallbrook's impoundments or uses can be demonstrated to have injured vested rights, then this Court or the State Water Rights Board can act to restrict impoundments or uses in whatever degree may be necessary to protect vested rights.

As the United States has often pointed out, this proceeding will ultimately catalogue all rights in the river.

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

6299

That cataloguing will list Fallbrook's appropriative rights, and the Court will retain jurisdiction to limit them in the future upon proper showing.

There remains one further proposition advanced in the United States' brief which should be briefly commented upon. At page 11 and following is a discussion of Fallbrook's "adverse claims" which "cloud the title" of the United States. Concededly Fallbrook makes such adverse claims. Concededly they should be determined in these proceedings. <u>But they have nothing to do with Fallbrook's rights</u>.

As a part of the cataloguing process this Court will determine whether the United States has storage rights and whether or not its rights under the Stipulated Judgment affect Fallbrook, just as it will determine the validity of the claimed prescriptive and appropriative rights of the United States. To whatever extent the Court finds that such rights were "vested" prior to the Fallbrook permits, they will take precedence over any appropriative rights of Fallbrook.

VI

<u>CONCLUSION</u>

It is respectfully submitted that the Court should rule:

1. The issue of Fallbrook's economic ability to construct a dam is immaterial to these proceedings.

2. The issue of Fallbrook's irrigable acreage is immaterial to these proceedings.

3. The issue of whether or not unappropriated water exists in the Santa Margarita River has been determined by the State Water Rights Board. That determination is not final or absolute. It is subject to review as the supply of water available fluctuates, and as water uses and needs of holders of downstream vested rights may change.

4. It is entirely within the powers of Fallbrook

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

to appropriate water for irrigation use within the boundaries of the District, subject to the continuing jurisdiction of this Court and the State Water Rights Board.

Dated: January 9, 1961

Respectfully submitted

SACHSE & PRICE

by [signature]

Attorneys for defendant
Fallbrook Public Utility District

LAW OFFICES
SACHSE AND PRICE
1092 S. MAIN STREET
FALLBROOK, CALIF.
RANDOLPH 8-1154

COPY

RESOLUTION 5170

A RESOLUTION ESTABLISHING RATES

FOR WATER SOLD AND DELIVERED BY

THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA

EFFECTIVE JULY 1, 1958

BE IT RESOLVED, by the Board of Directors of The Metropolitan Water District of Southern California, as follows:

Section 1. The following terms, as used herein, shall have the following meanings:

(a) "District" shall mean The Metropolitan Water District of Southern California.

(b) "Treated water" shall mean water that is softened and filtered at the F. E. Weymouth Softening and Filtration Plant.

(c) "Untreated water" shall mean water that is not softened and filtered at the F. E. Weymouth Softening and Filtration Plant.

(d) "Agricultural purposes" shall mean the growing or raising for the purposes of commerce, trade, or industry, of agricultural products, in conformity with the recognized practices of husbandry, and produced (1) for human consumption or for the market, or (2) for the feeding of fowl or livestock produced for human consumption or for the market, or (3) for the feeding of fowl or livestock for the purpose of obtaining their products for human consumption or for the market, such agricultural products to be grown or raised on a parcel of land having an area of not less than one acre utilized exclusively therefor.

(e) "Groundwater replenishment" shall mean the act of spreading or injecting, or causing to be spread or injected, water for the purpose of replenishing natural groundwater basins.

(f) "Unit municipality" shall mean any city, municipal water district, or county water authority, the corporate area of which, in whole or in part is included in the District as a separate unit.

Section 2. Except as provided in Section 3 or in Section 6 hereof, the rates for water sold and delivered by the District on order of any unit municipality for use therein, shall be $25.00 per acre-foot for treated water and $15.00 per acre-foot for untreated water.

Section 3. Except as provided in Section 6 hereof, the rates for water sold and delivered by the District on order of any unit municipality for use therein for the following purposes, shall be:

(a)  For water so sold and delivered by the District on order of any unit municipality for use therein solely for agricultural purposes, $22.00 per acre-foot for treated water and $12.00 per acre-foot for untreated water; provided, that:

(1)  In the event such water is commingled with water from any source other than the District's system, and the combined waters are used solely for agricultural purposes, or both for agricultural purposes and for other purposes, it shall be conclusively presumed that none of the water included in such commingled supply on June 30, 1958, is water from the District's system, and that the water first used for agricultural purposes is water from a source other than the District's system, to the full extent that such other water is included in such commingled supply or portion thereof so used for agricultural purposes, and the quantity of water to which the agricultural rates established by this subsection (a) respectively apply shall be determined accordingly; and

(2)  The rates provided in this subsection (a) also shall apply to water sold and delivered by the District to any unit municipality in substitution for, and to the extent that the quantity of such water so sold and delivered each month is offset by, an equivalent quantity of water which was not obtained from the District's system but which was imported by such unit municipality during the same month from a source outside the drainage area of coastal Southern California and used solely for agricultural purposes within such municipality, and in the event such imported water is commingled, prior to such use thereof, with other water which was not obtained from the District's system, it shall be conclusively presumed that the water first used for agricultural purposes is such other water, to the full extent that such other water is included in such commingled supply.

(b)  For water so sold and delivered by the District on order of any unit municipality for use therein solely for groundwater replenishment, $22.00 per acre-foot for treated water and $12.00 per acre-foot for untreated water.

(c)  For any water sold and delivered at the rates and for the purposes provided in subsections (a) and (b) hereof, which is diverted for purposes other than those described and provided for in said subsections, $25.00 per acre-foot for treated water and $15.00 per acre-foot for untreated water.

Section 4.  As the basis for charging and billing for all water sold and delivered by the District, all facts relating to the amounts of such water sold and delivered for the foregoing several purposes shall be certified to the District in writing by a responsible officer of the unit municipality purchasing such water.  The General Manager and Chief Engineer of the District, in his discretion, may make or cause to be made such other investigations as to the use of such water as he may require, and shall determine all facts involved in fixing the quantities of water to which the rates herein fixed shall apply, and his determination shall be final and conclusive.

Section 5. In the event the respective quantities of water sold and delivered in any month on order of any unit municipality for use therein for agricultural purposes or groundwater replenishment are not determinable to the satisfaction of the General Manager and Chief Engineer of the District in time for preparing the regular monthly bills therefor, billing and payment for all water sold and delivered in such month to such unit municipality shall be made at the rate of $25.00 per acre-foot for treated water and $15.00 per acre-foot for untreated water, and upon the determination by the General Manager and Chief Engineer, of the correct quantities so sold and delivered and used for such agricultural purposes or groundwater replenishment, any adjustment which is necessary to give effect to the reduced rates herein fixed, shall be made by application of credits on subsequent purchases of water from the District by such unit municipality.

Section 6. The rates established by Sections 2 and 3 hereof shall not apply to water sold and delivered by the District to any purchaser other than a unit municipality; and said rates shall not apply to water sold and delivered by the District for any use outside the District, or to water sold and delivered by the District for any use within the District in substitution for water used outside the District, regardless of whether or not such water be purchased by, or delivered pursuant to the order of, any unit municipality; but such water shall be sold and delivered pursuant to such contract and upon such terms and conditions as the Board of Directors shall authorize and determine for each such transaction.

Section 7. All sales and deliveries of water at the rates established by Sections 2 and 3 hereof shall be subject to the ability of the District to sell and deliver such water under operating conditions determined by the General Manager and Chief Engineer of the District, and, to the extent not inconsistent herewith, shall be subject to the provisions of Resolution 3896, as amended by Resolution 3925, heretofore adopted by this Board of Directors.

Section 8. This Resolution, and the rates established by Sections 2 and 3 hereof, shall be effective from and after July 1, 1958.

I HEREBY CERTIFY, that the foregoing is a full, true, and correct copy of a resolution adopted by the Board of Directors of The Metropolitan Water District of Southern California, at its meeting held April 8, 1958.

/s/ A. L. Gram
Executive Secretary
The Metropolitan Water District
of Southern California

(SEAL)

~~PROPOSED~~

RESOLUTION 5645 (adopted 3/8/60)

A RESOLUTION AMENDING RESOLUTION 5170
(As heretofore amended by Resolution 5356)

ESTABLISHING RATES
FOR WATER SOLD AND DELIVERED BY
THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA

A. WHEREAS, Resolution 5170 was adopted on April 8, 1958, establishing rates for water sold and delivered by The Metropolitan Water District of Southern California; and

WHEREAS, said resolution was amended by Resolution 5356 adopted by such Board of Directors at its meeting held August 26, 1958; and

WHEREAS, it has been concluded by the Board of Directors that said Resolution 5170, as amended by Resolution 5356, should be amended in the manner hereinafter more specifically set forth:

B. NOW, THEREFORE, BE IT RESOLVED, by the Board of Directors of The Metropolitan Water District of Southern California, that Sections 2, 3 and 5 of Resolution 5170, as amended by Resolution 5356, referred to in the recitals hereof, shall be, and they hereby are, amended as follows:

Section 1. Effective July 1, 1960, Sections 2, 3 and 5 of Resolution 5170 shall be, and they hereby are, amended to read:

"Section 2. Except as provided in Section 3 or in Section 6 hereof, the rates for water sold and delivered by the District on order of any unit municipality for use therein, shall be $23.00 per acre foot for treated water and $15.00 per acre foot for untreated water."

"Section 3. Except as provided in Section 6 hereof, the rates for water sold and delivered by the District on order of any unit municipality for use therein for the following purposes, shall be:

(a) For water so sold and delivered by the District on order of any unit municipality for use therein for agricultural purposes, $20.00 per acre foot for treated water and $12.00 per acre foot for untreated water.

(b) For water so sold and delivered by the District on order of any unit municipality for use therein for groundwater replenishment, $20.00 per acre foot for treated water and $12.00 per acre foot for untreated water.

(c) For any water sold and delivered at the rates and for the purposes provided in subsections (a) and (b) hereof, which is diverted for purposes other than those described and provided for in said subsections, $23.00 per acre foot for treated water and $15.00 per acre foot for untreated water."

"Section 5. In the event the respective quantities of water sold and delivered in any month on order of any unit municipality for use therein for agricultural purposes or groundwater replenishment are not determinable to the satisfaction of the General Manager and Chief Engineer of the District in time for preparing the regular monthly bills therefor, billing and payment for all water sold and delivered in such month to such unit municipality shall be made at the rate of $23.00 per acre foot for treated water and $15.00 per acre foot for untreated water, and upon the determination by the General Manager and Chief Engineer of the correct quantities so sold and delivered and used for such agricultural purposes or groundwater replenishment, any adjustment which is necessary to give effect to the reduced rates herein fixed, shall be made by application of credits on subsequent purchases of water from the District by such unit municipality."

Section 2. Effective January 1, 1961, Sections 2, 3 and 5 of Resolution 5170 shall be, and they hereby are, amended to read:

"Section 2. Except as provided in Section 3 or in Section 6 hereof, the rates for water sold and delivered by the District on order of any unit municipality for use therein, shall be $25.00 per acre foot for treated water and $17.00 per acre foot for untreated water."

25.00
17.00

"Section 3. Except as provided in Section 6 hereof, the rates for water sold and delivered by the District on order of any unit municipality for use therein for the following purposes, shall be:

(a) For water so sold and delivered by the District on order of any unit municipality for use therein for agricultural purposes, $20.75 per acre foot for treated water and $12.75 per acre foot for untreated water.

20.75
12.75

(b) For water so sold and delivered by the District on order of any unit municipality for use therein for groundwater replenishment, $20.75 per acre foot for treated water and $12.75 per acre foot for untreated water.

20.75
12.75

(c) For any water sold and delivered at the rates and for the purposes provided in subsections (a) and (b) hereof, which is diverted for purposes other than those described and provided for in said subsections, $25.00 per acre foot for

25.00

17.00 treated water and $17.00 per acre foot for untreated water."

"Section 5. In the event the respective quantities of water sold and delivered in any month on order of any unit municipality for use therein for agricultural purposes or ground water replenishment are not determinable to the satisfaction of the General Manager and Chief Engineer of the District in time for preparing the regular monthly bills therefor, billing and payment for all water sold and delivered in such month to 25.00 such unit municipality shall be made at the rate of $25.00 per 17.00 acre foot for treated water and $17.00 per acre foot for untreated water, and upon the determination by the General Manager and Chief Engineer, of the correct quantities so sold and delivered and used for such agricultural purposes or groundwater replenishment, any adjustment which is necessary to give effect to the reduced rates herein fixed, shall be made by application of credits on subsequent purchases of water from the District by such unit municipality."

Section 3. Effective January 1, 1962, Sections 2, 3 and 5 of Resolution 5170 shall be, and they hereby are, amended to read:

"Section 2. Except as provided in Section 3 or in Section 6 hereof, the rates for water sold and delivered by the District on order of any unit municipality for use therein, shall 27.00 be $27.00 per acre foot for treated water and $19.00 per acre foot 19.00 for untreated water."

"Section 3. Except as provided in Section 6 hereof, the rates for water sold and delivered by the District on order of any unit municipality for use therein for the following purposes, shall be:

(a) For water so sold and delivered by the District on order of any unit municipality for use therein for agricultural 21.50 purposes, $21.50 per acre foot for treated water and $13.50 per 13.50 acre foot for untreated water.

(b) For water so sold and delivered by the District on order of any unit municipality for use therein for ground- 21.50 water replenishment, $21.50 per acre foot for treated water 13.50 and $13.50 per acre foot for untreated water.

(c) For any water sold and delivered at the rates and for the purposes provided in subsections (a) and (b) hereof, which is diverted for purposes other than those described and 27.00 provided for in said subsections, $27.00 per acre foot for 19.00 treated water and $19.00 per acre foot for untreated water."

"Section 5. In the event the respective quantities of water sold and delivered in any month on order of any unit municipality for use therein for agricultural purposes or groundwater replenishment are not determinable to the satisfaction of the General Manager and Chief Engineer of the District in time for preparing the regular monthly bills therefor, billing and payment for all water sold and delivered in such month to such municipality shall be made at the rate of $27.00 per acre foot for treated water and $19.00 per acre foot for untreated water, and upon the determination by the General Manager and Chief Engineer, of the correct quantities so sold and delivered and used for such agricultural purposes or groundwater replenishment, any adjustment which is necessary to give effect to the reduced rates herein fixed, shall be made by application of credits on subsequent purchases of water from the District by such unit municipality."

Section 4. Effective January 1, 1963, Sections 2, 3 and 5 of Resolution 5170 shall be, and they hereby are, amended to read:

"Section 2. Except as provided in Section 3 or in Section 6 hereof, the rates for water sold and delivered by the District on order of any unit municipality for use therein, shall be ~~$30.50~~ 29.00 per acre foot for treated water and $21.00 per acre foot for untreated water."

"Section 3. Except as provided in Section 6 hereof, the rates for water sold and delivered by the District on order of any unit municipality for use therein for the following purposes, shall be:

(a) For water so sold and delivered by the District on order of any unit municipality for use therein for agricultural purposes, $22.25 per acre foot for treated water and ~~$12.00~~ 14.25 per acre foot for untreated water.

(b) For water so sold and delivered by the District on order of any unit municipality for use therein for groundwater replenishment, $22.25 per acre foot for treated water and ~~$12.00~~ 14.25 per acre foot for untreated water.

(c) For any water sold and delivered at the rates and for the purposes provided in subsections (a) and (b) hereof, which is diverted for purposes other than those described and provided for in said subsections, ~~$30.50~~ 29.00 per acre foot for treated water and ~~$22.50~~ 21.00 per acre foot untreated water."

"Section 5. In the event the respective quantities of water sold and delivered in any month on order of any unit

6218

municipality for use therein for agricultural purposes or groundwater replenishment are not determinable to the satisfaction of the General Manager and Chief Engineer of the District in time for preparing the regular monthly bills therefor, billing and payment for all water sold and delivered in such month to such unit municipality shall be made at the rate of $20.50 [handwritten: 29.00] per acre foot for treated water and ~~$22.50~~ [handwritten: 21.00] per acre foot for untreated water, and upon the determination by the General Manager and Chief Engineer, of the correct quantities so sold and delivered and used for such agricultural purposes or groundwater replenishment, any adjustment which is necessary to give effect to the reduced rates herein fixed, shall be made by application of credits on subsequent purchases of water from the District by such unit municipality."

C. BE IT FURTHER RESOLVED, that, except as amended by this resolution, all terms and provisions contained and set forth in said Resolution 5170, as amended by Resolution 5356, shall be and remain in full force and effect.

I HEREBY CERTIFY, that the foregoing is a full, true, and correct copy of a resolution adopted by the Board of Directors of The Metropolitan Water District of Southern California, at its meeting held 3/8/60.

/s/ A. L. GRAM
Executive Secretary
The Metropolitan Water District of Southern California

(PROOF OF SERVICE BY MAIL — 1013a, 2015.5 C. C. P.)

STATE OF CALIFORNIA }
COUNTY OF San Diego } ss. 1247-SD-C

*I am a citizen of the United States and a resident of the county aforesaid; I am over the age of eighteen years and not a party to the within entitled action; my* ~~business~~ *residence address is:*

1092 South Main Street, Fallbrook, California

*On the* January 9, 1961 *19*___, *I served the within* Reply of Fallbrook Public Utility District to Memorandum of United States of America - Appropriative Rights of Fallbrook

*on the* plaintiff *in said action, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States post office mail box at* Fallbrook, California *addressed as follows:*

1. Mr. William H. Veeder, Deputy Attorney General, 325 W F St., San Diego, Calif.
2. Mr. Fred Girard, Library & Courts Building, Sacramento, California
3. Mr. Geo. Stahlman, 322 Nevada, Oceanside, California
4. Mr. James H. Krieger, P.O. Box 1028, Riverside, California

*I certify (or declare), under penalty of perjury,* that the foregoing is true and correct.*

*Executed on* January 9, 1961 *(date)* *at* Fallbrook, *(place)*, *California*

Doris G. Bergstrom
*(Signature)*

**The proof of service by mail form, being signed under penalty of perjury, does not require notarization.*

*Received copy of the within*_______________ *this*_____ *day of*_______________ *19*____

_______________________________

*Attorney* ___ *for*_______________

*Stuart* Form 23-P

6220