```
STANLEY MOSK, Attorney General
    of the State of California
F. G. GIRARD, Deputy Attorney
    General
Library and Courts Building
Sacramento 14, California
HIckory 5-4711, Ext. 5448

Attorneys for Defendant
State of California
```



**FILED**

JAN 18 1961

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>FALLBROOK PUBLIC UTILITY<br>DISTRICT, et al.,<br><br>　　　　　Defendants. | No. 1247-SD-C<br><br>MEMORANDUM OF THE STATE OF<br>CALIFORNIA REGARDING<br>APPROPRIATIVE RIGHTS OF<br>FALLBROOK PUBLIC UTILITY<br>DISTRICT |

PRELIMINARY STATEMENT

　　　　In our discussion of the issues to which the Court directed that we give our attention, we will devote our arguments primarily to the merits, and will not discuss such defenses which Fallbrook might raise as the standing of the United States to challenge Fallbrook's application, the failure of the United States to raise these issues before the State Water Rights Board, or the fact that the prior Pre-Trial Order had previously ruled on a particular issue. This does not mean that we feel such defenses are not valid for our opinion is that they are; however, we feel that these contentions of the United States can be disposed of by considering their merit, and therefore, it is not necessary to consider other defenses.

- - - -

The issues raised are as follows:

  I. Does Fallbrook have the burden of showing economic ability to build a dam?

  II. Does Fallbrook have to prove that it services sufficient irrigable acreage upon which the waters could be beneficially used?

  III. Does Fallbrook have the burden of showing that there is unappropriated water to satisfy the storage provided in its permit, and further, must this Court find that there is unappropriated water in the stream?

  IV. Does Fallbrook have authority to supply irrigation water?

  Regarding the first three questions presented as outlined above, the United States in its Memorandum sets forth no authorities to support its contentions, and we can only surmise that the reason for this failure of judicial precedent is due to the fact that none exists.

I

DOES FALLBROOK HAVE THE BURDEN OF SHOWING
ECONOMIC ABILITY TO BUILD A DAM?

  In our view this question is completely without the scope of this lawsuit which was brought for the purpose of quieting title to the <u>rights</u> to use the waters of the river.

  Under California law in a proceeding before the State Water Rights Board as to whether a permit shall be issued to appropriate water, there is no statutory requirement that the applicant prove economic ability to finance the particular project by which the water is to be developed. Section 1260 of the Water Code sets forth what the application for the permit shall state. Nothing in this section indicates that the applicant has to show his financial ability. The only section which is

2

even remotely concerned with economic ability is section 1255 of the Water Code which provides that: "The Board shall reject an application when in *its* judgment the proposed appropriation shall not best conserve the public interest." (Emphasis added.)

There can be no question at all that this question of public interest is a legislative function which has been delegated by the Legislature to the State Water Rights Board, and it is by no stretch of the imagination a judicial question (see <u>Tulare County</u> v. <u>State Water Commission</u>, 187 Cal. 533; <u>Mojave River Irrigation District</u> v. <u>Superior Court</u>, 202 Cal. 717; <u>United States of America</u> v. <u>Fallbrook Utility District</u>, 165 F.Supp. 806). The United States is, in fact, asking this Court to adjudicate a pure legislative function.

Further, in considering this question as to economic ability and whether that issue can be raised in this proceeding, it is important to note just exactly what right a permit gives to its holder. Under California law a permit gives a priority right to take and use the water to the extent and for the purpose allowed in the permit <u>and</u> subject to the conditions set forth in the permit (Water Code, section 1381). However, this right is not a finalized right for the use of water, but it is contingent upon the holder of the permit commencing and completing his project within the time allowed (or extended for good cause) by the terms of the permit itself (Water Code, section 1410). If Fallbrook under its permit is unable to finance the construction of its contemplated dam and beneficially use the water which the permit provides, California law specifically dictates that the permit can be revoked and Fallbrook's right to the use of the water as provided in the permit extinguished (see Water Code, section 1410). In short, the economic ability of Fallbrook to build its dam is an implied condition set forth in the permit

3

itself which, if it is not satisfied within the time established by the Water Rights Board, results in the permit right being subject to extinguishment.

It has been squarely held that the sole method whereby a permit can be extinguished is by the express statutory provisions set forth in the Water Code, and specifically Water Code sections 1410, et seq. In the case of Eaton v. State Water Rights Board, 171 Cal. App.2d 409, the court considered the following factual situation: Eaton filed an application with the State Water Rights Board for a permit to appropriate water from a specified creek. Prior to the filing of this application, the Board had issued permits to two other persons to appropriate water from this creek. These permits had not been exercised. Eaton contended before the State Water Rights Board that these two prior permits were not valid and that because of this fact there was unappropriated water to satisfy his application. The State Water Rights Board denied Eaton's application on the basis that the two prior permits had not been revoked as provided in section 1410, and that those two permits, if exercised, would utilize the entire flow of the creek, and therefore, there was no unappropriated water to satisfy Eaton's application. A writ of mandate was filed by Eaton in the Superior Court of the State of California to review that decision. Eaton contended that the diversions of the water authorized by the two prior permits had not been exercised with due diligence, and that the Board should have invalidated those permits in the proceeding regarding the granting or denial of his application. The question for the court to decide was set forth as follows: "Can the validity of a permit to appropriate unappropriated water be attacked collaterally in a proceeding to determine whether an additional such permit should be issued or should

4

<u>such a permit only be invalidated or revoked directly after hearing in the manner provided by statute?</u>" (Emphasis added.) It was expressly held by the State Water Rights Board, by the California Superior Court, and by the District Court of Appeal in the above cited case that the sole method whereby a permit could be invalidated was by a proceeding to revoke that permit before the State Water Rights Board commenced pursuant to sections 1410 et. seq. of the Water Code. Eaton's petition for hearing by the Supreme Court was denied. Thus, the law in California is clear that a permit can only be attacked in a proceeding before the State Water Rights Board commenced pursuant to section 1410 of the Water Code.

   We submit that there can be little question, in the light of this above cited case, that this Court has no jurisdiction under California law to invalidate Fallbrook's permits on the basis that they lack economic ability to construct the dam. If the United States feels that Fallbrook cannot build the dam and that the permit right should be extinguished, they are privileged to raise that issue before the State Water Rights Board as provided by section 1410 of the Water Code and request the Board to revoke it.

   Furthermore, we are unable to understand how the United States can suffer any prejudice if the economic ability of Fallbrook is such that it cannot build the dam. If Fallbrook in fact is in such a situation where it is economically unfeasible for it to build its dam, the net result will be that the dam will not be built. If the United States is concerned with Fallbrook's contemplated project and if they are correct, they have nothing to worry about for the dam will not be constructed.

- - - - -

## II

## DOES FALLBROOK HAVE TO PROVE THAT IT SERVICES SUFFICIENT IRRIGABLE ACREAGE UPON WHICH THE WATERS COULD BE BENEFICIALLY USED?

If Fallbrook is to be required to introduce evidence concerning its irrigable acreage within the District, it would have to be on the basis that Fallbrook's right to use water under its permits is in some way limited to the water that could be used for irrigation purposes on such land. If in fact, under California law, Fallbrook is permitted to use the water provided in its permits for beneficial purposes other than irrigating land within its district, then how much irrigable acreage within the District would be obviously irrelevant and immaterial for the irrigable acreage would not limit the right to use the water. It must be remembered that this is a quiet title suit concerning rights to the use of water, and not a suit to determine integral management policies of Fallbrook Public Utility District as to water distribution.

We submit that under California law, there is no question at all that Fallbrook is not limited to using the water provided for in its permits on irrigated land within its district. In the first place a casual examination of Fallbrook's permits shows that they are granted the right to store certain specified amounts of water for domestic, municipal and irrigation purposes (see permits numbered 8511, 11357 and 11356). These permits do not specify that any particular amount of water must be used solely for irrigation, and under these permits Fallbrook would be privileged to use all the water developed by storage for municipal and domestic use. On the face of the permits themselves it is patently clear that Fallbrook's right to the use of water is not in any way conditioned upon irrigable

6

acreage within the district for those permits expressly authorize that the water can be used for beneficial purposes other than irrigation. It must be remembered that we are considering appropriators, not riparians, and there is no requirement that an appropriator use water on certain lands or for that matter on any lands.

However, let us assume that Fallbrook's domestic uses and the District's irrigation demands do not use all the water provided for in the permits. Does this mean that Fallbrook cannot use as an appropriator the excess water? Or putting this question another way, does the mere fact that Fallbrook cannot use all the water covered by the permits within its District, result in Fallbrook losing its appropriative right to that surplus? The answer to this is no, for Fallbrook would then be privileged ". . . to sell or otherwise dispose of such surplus outside of the district. . ." (Public Utilities Code, section 16473).

Thus we see that under California law Fallbrook's right to use water provided by its permits is in no way limited by the irrigable lands within its district. Consequently it follows that the extent of Fallbrook's irrigable acreage within the district is completely irrelevant as to Fallbrook's <u>water right</u> under its permit. Being completely irrelevant to the water right claimed by Fallbrook, Fallbrook is not required to prove the extent of its irrigable acreage.

It should also be pointed out that the amount of water provided by the permit is subject to reduction if the appropriator does not beneficially use all the water authorized. Under California law, an appropriator who has a permit is still required to get a license. The license is issued after the particular right to water granted by the permit has developed into <u>beneficial</u> use.

1  That is, Fallbrook's license will be issued after it has built
2  its dam, stored the water and applied it to beneficial use.
3  At that time, if it is determined by the State Water Rights
4  Board that Fallbrook is not beneficially using the amount
5  of water provided for in the permit, the State Water Rights
6  Board will then issue a license to Fallbrook which will limit
7  Fallbrook's right to the amount of water beneficially used.
8  Any right to water provided in the permit which is in excess
9  of that beneficially used will then be extinguished.  (Water
10 Code, sections 1627, 1675).  In other words, if Fallbrook can-
11 not beneficially use the water provided for in its permit
12 within the district and does not dispose of the surplus by
13 beneficial uses outside its district, the license will extinguish
14 the right to the surplus not used.
15         We submit in light of the above that Fallbrook's ir-
16 rigable acreage, insofar as its water rights under its permit
17 are concerned, is irrelevant and immaterial, and, of course,
18 no one has a burden to offer such evidence.
19                              III
20         DOES FALLBROOK HAVE THE BURDEN OF SHOWING THAT
21         THERE IS UNAPPROPRIATED WATER TO SATISFY THE
22         STORAGE PROVIDED IN ITS PERMIT, AND FURTHER, MUST
23         THIS COURT FIND THAT THERE IS UNAPPROPRIATED
24         WATER IN THE STREAM?
25         At the onset, we will state unequivocally that the
26 finding of the State Water Rights Board in regard to unappro-
27 priated water is not binding on this Court, and this Court
28 would be privileged, *if* the evidence warranted, to conclude
29 that the prior vested rights to the use of water result in no
30 unappropriated water for Fallbrook's use.  This would not be
31 inconsistent with the permit for the permit itself provides

8

6232

that it is subject to all prior vested rights to water use. However, insofar as this case is concerned, in our opinion the question as to who has the burden to show that there is unappropriated water available is a moot point. The reason for this conclusion is that from the evidence introduced by numerous parties in this case, including the United States, there can be no question but that on certain occasions during certain periods unappropriated water has existed. I believe at the last hearing counsel for the United States conceded that this factual situation has occurred in at least two years since the commencement of this litigation, that is, 1952 and 1958. Therefore, as the record shows, without contradiction, that there has been water subject to appropriation, Fallbrook has satisfied its burden of proving this fact, if in fact it was required to do so.

As to whether this Court must find that there is unappropriated water in the stream system, it would be our suggestion that the finding on this point would be that on certain occasions in the past unappropriated water has existed and that such water was subject to appropriation under State law. The Court should then make a finding that to the extent that similar conditions occur in the future valid appropriators under California law may capture and store such water and subsequently use it beneficially. Of course, the priority as between appropriators will be governed by State law. It would be impossible for this Court to say that there will or will not be unappropriated water in the future, or to attempt to define or estimate future amounts of such unappropriated water. This would, in fact, require a crystal ball. This Court should, of course, reserve jurisdiction over Fallbrook to assure that its future use of such unappropriated water does not impair prior vested rights, and this Court should provide that Fallbrook, as an appropriator, is subject

1 to the jurisdiction of the State Water Rights Board and to all
2 applicable provisions of California law.

                                IV

## DOES FALLBROOK HAVE AUTHORITY TO SUPPLY IRRIGATION WATER?

In our view, Fallbrook in its Reply Brief commencing at page 3 has covered this as adequately as it could be covered, and we think that the Points and Authorities cited by Fallbrook in support of its contention are excellent and compel the single conclusion that Fallbrook can deal in irrigation water. The State concurs with the Reply Brief of Fallbrook, and because of this fact we will not reiterate at length what is contained in that brief. As to the United States' Memorandum, we point out that much of the material in the United States' Brief has really nothing to do with the crucial issue as to whether Fallbrook can supply irrigation water. The United States' background material regarding the history and the administrative function of the State Water Rights Board is interesting, but in essence adds nothing to the question presented, and we therefore feel that no discussion of that portion of their brief is necessary.

The United States places their entire argument on the case of <u>Orosi Public Utilities District</u> v. <u>McCuag</u>, 196 Cal. 43. Insofar as pertinent to the question presented here, the <u>Orosi</u> case held that a public utility district, such as Fallbrook, was for certain purposes a municipal corporation. Conceding that Fallbrook is a municipal corporation, the question then presented is whether a municipal corporation, such as Fallbrook, can service irrigation demands. The <u>Orosi</u> case did not touch on this question despite the United States constant attempt to so indicate. The only thing that the <u>Orosi</u> case said insofar as irrigation is concerned was that irrigation districts are not

municipal corporations (page 52). This, of course, is an obvious fact. That case does not hold, state, or even discuss or indicate that a municipal corporation cannot supply irrigation water. As to whether municipal corporations can deal in irrigation water, the Legislature, since at least 1909, has specifically stated that they can. <u>Public Utilities Code, section 10153, provides specifically that municipal corporations can obtain unappropriated waters so far as is necessary to assure an ample supply of water for irrigation (and other) purposes</u>. This statute was formerly enacted as emphasized in 1909 (see Ch. 352, p. 581, sec. 1 of 1909 Stats). The language in the 1909 statute is verbatim to the present language in Public Utilities Code, section 10153. We submit that nothing could be clearer than that under California law a municipal corporation can supply irrigation water. This statutory section was, of course, emphasized in the Fallbrook brief along with other authorities and in our view completely answers the contention of the United States. To our knowledge in all the lengthy history of water litigation in California, no one has ever raised the contention that a municipal corporation cannot supply irrigation water. Fallbrook has set forth cases wherein the courts of California have stated that a municipal corporation supplies irrigation water and pointed out that neither the parties nor the courts questioned such use. Undoubtedly the reason that this use was not questioned is that the above cited statute is clear that such use is proper. In addition to this, the State Water Rights Board and its predecessor have continually granted permits and licenses to municipal corporations for the use of water for irrigation purposes. Many of these municipal corporations which have received permits or licenses for irrigation water have spent substantial sums of money and developed projects to

service such a water need. We attach herewith a form from the State Water Rights Board which is an appendix to these points and authorities which shows numerous municipal corporations' appropriations for irrigation use. Admittedly, this is not a complete list of municipal corporations' permits and licenses for irrigation use and was obtained only from a cursory check of the records of the State Water Rights Board. Certainly if all of these and many other appropriations for water by municipalities for irrigation use are to be held invalid, the United States is under a duty to present some case or statute which is in point to support its contentions. Certainly the United States is at least under the duty to discuss Public Utilities Code section 10153. It is, of course, interesting to note that they do not bother to cite this code section in their Memorandum.

    In our view Fallbrook's Reply Brief is unanswerable, and we respectfully submit that a municipal corporation is privileged to provide water for irrigation use.

Dated: January 17, 1961.

Respectfully submitted,

STANLEY MOSK, Attorney General
   of the State of California

F. G. GIRARD, Deputy Attorney
   General

By  */s/ F. G. Girard*
   F. G. GIRARD
   Deputy Attorney General

STATE OF CALIFORNIA—STATE WATER RIGHTS BOARD

MEMORANDUM CONCERNING APPLICATIONS TO APPROPRIATE

held by municipalities, Public Utility Districts, Municipal Water Districts which include irrigation (from cursory check)

PREPARED BY: ___  DATE: 1-3-60

| APPLIC. NO. | DATE FILED | NAME OF APPLICANT | SOURCE | LOCATION OF POINT OF DIVERSION ¼ | ¼ | SEC. | TWP. | RANGE | MDB | AMOUNT SEC. FT. | AC. FT. | PURPOSE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 102 | 8/9/15 | Dept. of Water & Power of City of Los Angeles | unnamed spring | | | | | | | .25 | | Agricultural domestic |
| 270 | 3/9/16 | City of Los Angeles, Department of Recreation and Parks | unnamed springs | | | | | | | .01 | | Agricultural domestic |
| 271 | 3/29/16 | " | Seeley Creek | | | | | | | .04 | 597 | Agricultural domestic |
| 570 | 1/19/17 | City of Los Angeles Dept of Water and Power | Walker Lake | | | | | | | | | Agricultural domestic |
| 1136 | 12/5/18 | " | unnamed spring | | | | | | | 0.10 | | Irrigation domestic |
| 1137 | 12/7/18 | " | " | | | | | | | 0.05 | | Agricultural domestic |
| 1324 | 6/19/19 | " | Malone Spring | | | | | | | 0.32 | | Irrigation domestic |
| 1754 | 1/8/20 | " | Sardine Lake | | | | | | | | 382.83 | Agricultural domestic |
| 2476 | 1/22/21 | " | unnamed spring | | | | | | | .04 | | Irrigation domestic |
| 5156 | 8/14/26 | City of San Jose | North Fork of Penitencia Creek | | | | | | | | 500 | Irrigation domestic Recreation |
| 5644-A | 7/30/27 | Georgetown Divide Public Utility District | Pilot Creek | | | | | | | 100 | 20,000 | Irrigation domestic |
| 8156 | 11/16/34 | Fallbrook Public Utility Dist. | San Luis Rey River | | | | | | | 10 | 2,500 | Stockwater Irr. & dom. |
| 8205 | 1/3/35 | City of Carlsbad | San Luis Rey River | | | | | | | .5 | 1022 | Irrigation domestic |

*D INDICATES DOMESTIC USE; I INDICATES IRRIGATION USE; MU INDICATES MUNICIPAL USE; MN INDICATES MINING USE; P INDICATES POWER USE
**INCL INDICATES APPLICATION NOT YET COMPLETE; PENDING INDICATES APPLICATION COMPLETE BUT NOT YET APPROVED; PERMIT INDICATES APPLICATION APPROVED; LICENSE INDICATES ——

6237

STATE OF CALIFORNIA—STATE WATER RIGHTS BOARD

MEMORANDUM CONCERNING APPLICATIONS TO APPROPRIATE

held by municipalities, Public Utility
Districts, Municipal Water Districts which include irrigation

PREPARED BY: JTA
DATE: 1-3-60
(from cursory check)

| APPLIC. NO. | DATE FILED | NAME OF APPLICANT | SOURCE | LOCATION OF POINT OF DIVERSION 1/4 1/4 SEC. TWP. RANGE BDM. | AMOUNT SEC. FT. AC. FT. | PURPOSE |
|---|---|---|---|---|---|---|
| 10081 | 12/9/40 | City of Carlsbad | Calavera Creek | | | Irrigation 150 domestic |
| 11310 | 3/11/46 | Ventura River Municipal Water District | Coyote Creek | | | Irrigation 6,000 domestic |
| 11490 | 7/31/46 | City of Los Angeles | el al 2 unnamed streams | | .093 | Irrigation domestic Stockwatering |
| 12178 | 11/28/47 | Fallbrook Public Utility District | Santa Margarita River | | | Irrigation 10,000 Municipal domestic |
| 12179 | 11/28/47 | " | " | | | same as above |
| 12421 | 3/19/48 | Georgetown Divide Public Utility District | Pilot Creek | | 50 20,000 | Irrigation domestic Stockwater |
| 13107 | 5/20/49 | City of Stockton | Littlejohns Creek | | 3 | Irrigation |
| 15767 | 3/8/54 | Ventura River Municipal Water District | Matilija Creek | | 35 | Irrigation domestic |
| 15999 | 8/16/54 | " | Coyote Creek and Ventura River | | 120 250,000 | Irrigation domestic |
| 16212 | 4/7/55 | Georgetown Divide Public Utility District | Pilot Creek | | 75 | Irrigation, domestic, stockwatering |
| 16688 | 10/24/55 | " | Onion Creek | | 30 4000 | Irrigation domestic Stockwatering |

6237

STATE OF CALIFORNIA ) ss.
COUNTY OF SACRAMENTO )

**AFFIDAVIT OF SERVICE BY MAIL**

IRENE D. MELLIN, being duly sworn, deposes and says:

That affiant is a citizen of the United States, over the age of 18 years, and not a party to the within action; that affiant's place of employment and business address is Library and Courts Building, Sacramento 14, California;

That on the 17th day of JANUARY, 1961, affiant enclosed a true copy of the within

MEMORANDUM OF THE STATE OF CALIFORNIA REGARDING APPROPRIATIVE RIGHTS OF FALLBROOK PUBLIC UTILITY DISTRICT

in an envelope for each of the persons named below, addressed to each of them at the address set out immediately below each respective name, sealed said envelope, and deposited the same in the United States Mail at the City of Sacramento, County of Sacramento, State of California, with postage thereon fully prepaid; that there is delivery service by United States Mail at each of the places so addressed, or there is regular communication by mail between the said place of mailing and each of the places so addressed:

Mr. George Stahlman
Attorney at Law
Route 1 Box 235
Fallbrook, California

Mr. Franz R. Sachse
Attorney at Law
1092 S. Main Street
Fallbrook, California

Mr. James H. Krieger
Attorney at Law
4200 Orange Street
Riverside, California

Mr. William H. Veeder
Room 303
U. S. Custon & Court House
San Diego 1, California

Mr. William H. Veeder
Special Assistant to the
  Attorney General
Department of Justice
Washington, D. C.

_____
IRENE D. MELLIN

Subscribed and sworn to before me,
this 17th day of January, 1961.

_____
LAURA M. MIDDLETON
NOTARY PUBLIC, in and for the County
of Sacramento, State of California.

6238

CL-1