STANLEY MOSK, Attorney General
of the State of California
F. G. GIRARD
Deputy Attorney General
Library and Courts Building
Sacramento 14, California
Telephone: Hickory 5-4711, Ext. 5448

Attorneys for Defendant
State of California

FILED
MAR 8 1961
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By [signature] DEPUTY

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA, Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT, et al., Defendants.

Civil No. 1247-SD-C

MEMORANDUM REGARDING DEFENDANT OVIATT'S CLAIMS

This Memorandum is primarily directed to the issue of the Oviatt claim of prescriptive right as to waters of Temecula and Lancaster Creeks. This Memorandum is filed by the State of California at the request of the Court.

PRELIMINARY STATEMENT

At the onset, in considering the Points and Authorities of defendant James Oviatt, there are several contentions made therein which are directly contrary to a right based on prescription. First, Oviatt contends that he is not able to obtain his pro rata riparian share of the waters of the River. As his use of water is on riparian land, and if he is not able

to obtain his pro rata riparian share, it is difficult to understand how he could claim a prescriptive right which in essence has to be based on a contention that he is using water in excess of that which he would be entitled to as a riparian.

Secondly, Oviatt has stated in his brief that his water diversions do not have a material effect on the downstream riparians. Assuming the correctness of this contention, it would appear certain that he could not by such water diversions obtain a prescriptive right against downstream riparian users for it is fundamental that in order to establish a prescriptive right he must show that his use has been adverse to the downstream users. If there is no material effect, it would seem to be not adverse.

However, aside from these points, we will consider the claims of Oviatt as to a prescriptive right on their merits as established by the evidence in this case.

## I. OVIATT HAS NOT ESTABLISHED A PRESCRIPTIVE RIGHT AS AGAINST ANY DOWNSTREAM USERS.

On page 7 of the Oviatt Brief two (2) cases are cited for the proposition that the use of all or substantially all of the water of a stream by an upper riparian imputes knowledge to lower riparians that such use is prescriptive. However, each of those cases in discussing this point emphasized that in order for such knowledge to be imputed, the downstream riparians' use had to be interrupted or interfered with (Pabst v. Furmand, 190 C.124, 128; Morgan v. Walker, 217 C.607, 615-617). In fact in the Pabst case the Court pointed out that if the downstream riparian was not then using

- - - -

any water the upstream riparian use would not be adverse and a prescriptive right could not be gained (190 C. 130). Moreover, it has been held that a riparian substantially downstream from a diversion on upstream riparian land cannot be charged with notice of such diversion for purposes of imputing knowledge of a prescriptive claim (Heilbron v. Canal Co., 76 C. 11, 16). In short, it is not so much the use of the riparian water by the upstream owner that controls insofar as imputing knowledge to the downstream riparian, but rather whether that use adversely affected the downstream riparian. The adverse affect would of course have to exceed the affect which would be noticeable from a proper riparian use for the essence of a prescriptive right assumes a wrongful use for a five (5) year period. In other words, an upstream riparian could only gain a prescriptive right when he uses more water on his riparian land than his riparian right entitled him to use, and when this use in excess of his riparian right interrupted or interfered with the downstream riparians' actual use of the riparian waters. It is the position of the State of California that the evidence in this case does not establish:

1) that Oviatt's water use exceeded his riparian right

2) that downstream riparians were aware or could have been aware of his present contention that his water use was under a claim of right adverse to their riparian rights.

3) that Oviatt's water use interrupted or interfered with any downstream riparian water use.

In considering this problem it is important to note that the streams involved are not streams which flow entirely

on the surface, but instead, at least during the irrigation season, flow underground for substantial distances. Further most of the downstream, riparian uses of the waters of these streams are not met by surface diversions but instead by ground water extractions.

As to whether Oviatt's use exceeded his riparian rights, suffice it to say that while there is considerable evidence as to his water uses, there is no evidence from which a finding could be made that such water use was in excess of that to which he was (or is) entitled to as a riparian.

As to whether downstream riparians were aware or could have been aware of his present contention that his water use was under a claim of right adverse to their riparian rights, there is absolutely no evidence that would support a finding that such downstream riparians (other than possibly Vail) were actually aware of his diversions. There is no evidence that Oviatt's diversions interrupted or interfered with any riparian uses. There is no evidence that would establish that the surface flow of these Creeks were lessened as a result of Oviatt's use to such an extent that downstream riparians were prevented from diverting their entitlement. There is certainly no evidence that ground water diversions by riparians from these Creeks were affected in the slightest by Oviatt's use. In short, while Oviatt has proved his water use, under the facts of this case it cannot be established that such use by Oviatt had any noticeable effect downstream. About all that can be said of Oviatt's evidence is that it established diversions of most of the surface flow of these Creeks at one isolated point, and that the water diverted was used on riparian land. As it must be conceded that the surface flow at one point on the Creek does not represent the entire flow of that Creek, it cannot be

concluded that these surface diversions were in an amount in excess of Oviatt's proper riparian share. There is no evidence which would establish injury to downstream riparians as a result of Oviatt's uses. In essence, all Oviatt has proved is a riparian right and a proper riparian use.

Even as to Vail, a prescriptive right has not been established. Again we have no evidence that Vail's water supply to satisfy its riparian uses has been depleted as a result of Oviatt's use. The sole basis for concluding that Vail had knowledge of Oviatt's contention of use of water on riparian land under a claim of right adverse to Vail as a riparian is the discussion between Vail and Oviatt (see Transcript, pp. 12020-12024). This discussion, based on Oviatt's own testimony, falls far short of establishing that Oviatt informed Vail that he was claiming any prescriptive rights. The most that could be said of the evidence on this point is that Vail and Oviatt were friends of long standing; that they visited each other frequently; that they mutually preferred other refreshments to water; and that there were noncommittal discussions, or jibes, about Oviatt's water use, and for that matter, Vail's water use (Transcript, p. 12024). Certainly at no time did Oviatt advise Vail that his water use on riparian land was under a claim of right adverse to Vail as a riparian. Thus, the evidence in this case does not establish conclusively or by a preponderance of the evidence any prescriptive rights owned by Oviatt, but on the contrary clearly shows that Oviatt in the use of water on his riparian land has solely a riparian right. This conclusion is compelled when it is remembered that the establishment of a prescriptive right requires the clearest and most satisfactory proof (Crain v. Hoefling, 56 Cal.App.2d, 396, 402), and that any doubts or ambiquities in the evidence

should be resolved against the prescriptive water right claimant (American Co. v. Bradford, 27 C.360, 367; Strong v. Baldwin, 137 C.432, 438).

II. APPROPRIATIVE RIGHTS

Apparently, and we do not have the actual exhibits for examination, there are two (2) asserted appropriative rights by Oviatt. The first is not a water right but is merely a permit issued by the Forest Service to go across their lands and take water from Rattlesnake Creek. A permissive permit (presumably revocable) to cross federal lands does not convey a water right. Oviatt has not shown either a statutory or non-statutory appropriative right insofar as Rattlesnake Creek is concerned, and therefore, there is no appropriative right. As to the Kohler Canyon appropriation, we would suggest a finding of an appropriative right based on defendant Oviatt's Exhibit "AA".

III. ALTERNATIVE FINDINGS

Oviatt in his brief entitled "Alternative Findings Requested by Defendant James Oviatt" sets forth the suggestion that if the Court does not find a prescriptive right a specified finding in the alternative be entered.

While the State feels that the finding suggested in the alternative might be warranted on the evidence in this case, we do not feel that it would be entirely appropriate in the exact language in which it is drafted. The reason for this is that this finding states that the diversions and extractions of Oviatt do not cause any injury to lower riparian owners. We would certainly agree with this, but we feel that the finding on this point should be that the present diversions and extractions of Oviatt are proper riparian uses at the present time, and that there is no evidence that such uses at the

present time cause any injury to lower riparian owners on the Santa Margarita stream system.

The reason for this suggestion where the alternative finding is qualified by the phrase "at the present time," is that this Court will keep continuing jurisdiction of this matter, and the State does not feel that it would be desirable to use language in the finding which might be construed to limit this Court in the future from re-evaluating riparian, or for that matter other water right uses.

While we certainly do not anticipate that Oviatt's present uses would ever be held to injure any downstream riparian, we are not completely sure of this fact, and therefore, we would suggest the above qualification as to Oviatt's suggested alternative finding.

CONCLUSION

In the light of the above, it is respectfully submitted that the record does not sustain the contention by defendant Oviatt of the prescriptive right but on the contrary clearly establishes a riparian right, and a past and present riparian use. The record also establishes an appropriative right as evidenced by defendant Oviatt's Exhibit "AA".

As to the Alternative Finding suggested by Oviatt, we would merely suggest qualifying language to the effect that his diversions and extractions are proper riparian uses and do not at the present time cause any injury todownstream riparians on the Santa Margarita River.

Dated: March 6, 1961.

Respectfully submitted,

STANLEY MOSK, Attorney General
of the State of California
F. G. GIRARD, Deputy Attorney General

By ______________________
F. G. GIRARD

Attorneys for Defendant
State of California