EILERS, WEHRLE & ANDERSON
LAWYERS
606 SOUTH HILL STREET
LOS ANGELES 14, CALIFORNIA
MADISON 4-6281
MADISON 6-1241
ATTORNEYS FOR Defendants

FILED
MAR 14 1961
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,
Plaintiff,
-vs-
FALLBROOK PUBLIC UTILITY DISTRICT, KNOW, Garner L. and Flora S. and Walter G., ET AL.,
Defendants.

NO. 1247-SD-C

CLAIM OF GARNER L. KNOX, ET AL. MEMORANDUM TO COURT ON ORDER TO SHOW CAUSE.

TO THE HONORABLE JAMES M. CARTER, JUDGE OF THE UNITED STATES DISTRICT COURT AND TO J. LEE RANKIN, SOLICITOR GENERAL FOR THE UNITED STATES OF AMERICA, PLAINTIFF HEREIN:

The defendants, GARNER L. KNOX, et al., in response to the Order to Show Cause for a hearing on March 14, 1961, respectfully submit this memorandum of their position to assist the Court in the premises.

I

The defendant, GARNER L. KNOX, desires to present evidence in support of the rights established in the answer on behalf of himself and the other defendants appearing with him. Said defendant will ask leave of Court to testify as to matters observed by him in relation to the water rights and use thereof, and will further ask leave of Court to testify as to matters of common history as

6313

to past use and water rights on said premises. Said witness does not claim to be an expert in the matter of engineering. In the event the Court desires further evidence, the defendant will ask leave of Court to retain an engineer and to present expert testimony as needed.

II

PRESENT USES

(a) Domestic use to three houses.

(b) Incidental truck gardening therefor.

(c) Approximately 70 acres of permanent pasture utilized for the grazing of approximately 140 head of cattle the year around.

(d) Approximately 30 acres of winter grain crops which are irrigated.

III

PRESENT WATER FACILITIES

(a) There is a headworks approximately one-half mile upstream and a ditch and pipes running therefrom, which carry water to defendants' lands, among others.

(b) There are two lakes on the premises utilized for the storage of water and storage with a maximum capacity of approximately 10.8 feet.

(c) There is a well equipped with 5 H.P. motor, capable of pumping 1/3 acre foot of water per day.

(d) There is a storage tank approximately 6'x8'x5' utilized for storage of water for domestic use and other incidental uses thereto.

(e) There is a well drilled in 1953 equipped with a 15 H.P. motor and pump and capable of producing approximately 250 gallons per minute.

(f) There is a third well drilled in 1959, approximately one-third mile to the west of the well immediately mentioned hereinabove and capable of producing approximately 90 inches of water in

EILERS, WEHRLE & ANDERSON
LAWYERS



6314

a twenty-four hour period when equipped with a 25 H.P. motor and pump.

(g) There is a system of pipes for distribution of the water either by flood or sprinkler type irrigation for the uses above stated on various portions of the ranch.

IV

## BRIEF HISTORY

A brief history of the water development on the ranch indicates that the headworks for diversion of water upstream from the ranch were built shortly after the turn of the century. There was, at or about that time, a 30-acre peach orchard on the premises. The pipeline is believed to have originally been a corrugated iron line. In the floods of 1923-1924 the peach orchard was washed out as was the line. The replacement of the line was with a steel pipeline and ditches. These have been in use at all times since.

The first well (5 H.P. motor) was originally installed with a windmill and is believed to have been in use since approximately 1924. The lakes are believed to have been in use since approximately 1924. The lakes are believed to have been installed and were in operation at all times since 1920. They are used as a part of the irrigation system. The windmill was used for a reproduction of water for domestic use, for watering of cattle in dry periods, and on some occasions for production of water into the lakes for use in the irrigation system. The installation of the 5 H.P. motor was approximately in 1949.

The second well was built in order to supplement the stream flow which lessened remarkably in the years 1950 and thereafter. The well drilled in 1959 was an effort to maintain the production from the second well which appeared to need substantial repairs.

The drilling of the third well was intended to maintain the

EILERS, WEHRLE & ANDERSON
LAWYERS

production previously reached from the second well and not to increase the production of water on the premises. The production of said second and third wells is now utilized as an equivalent of the production of the second well in the period from 1953 to 1959.

V

REQUEST AND CONTENTIONS

The request and contentions of these defendants are submitted respectfully to the Court with the express acknowledgment that neither the defendants nor counsel have had the benefit of a full and complete engineering study either on the subject property nor on the matter of available water in the area. These defendants contend that the stream flow is composed of two parts, one, the surface flow and the second, a percolating underflow. They further contend that the prior owners and these defendants have utilized this surface flow and underflow for the benefit of the subject property. That the reasonable beneficial use thereof and consistent with prior use of the property is for the following:

(a) The right to divert waters upstream of the property.

(b) The right to store water in the lakes.

(c) Domestic use for three residence units on the property.

(d) Sufficient water for approximately 70 acres of irrigated pasture on a year around basis (approximately 209 acre feet per year).

(e) Sufficient water for the irrigating of 30 acres of winter wheat.

(f) The right to take such reasonable and beneficial use either from the surface flow of the stream, when available,

EILERS, WEHRLE & ANDERSON
LAWYERS

or from the underflow of said stream in times when the surface flow is insufficient.

DATED: March 13, 1961.

Respectfully submitted,

TRENT G. ANDERSON, JR.
Attorney for Defendants

EILERS, WEHRLE & ANDERSON
LAWYERS



6317