```
STANLEY MOSK, Attorney General
   of the State of California
F. G. GIRARD, Deputy Attorney General
Library and Courts Building
Sacramento 14, California
HIckory 5-4711, Ext. 5448

Attorneys for Defendant
State of California
```

Not used

LODGED

APR 6 - 1961

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By_____
                  Deputy Clerk

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.

FALLBROOK PUBLIC UTILITY DISTRICT, et al.,

        Defendants.

Civil No. 1247-SD-C

PROPOSED FINDINGS OF FACT, CONCLUSIONS
OF LAW AND INTERLOCUTORY DECREE
PERTAINING TO 1930 AND 1940 CALIFORNIA
STATE COURT JUDGMENTS

This Court, having duly considered the records, pleadings and evidence in this case, the law applicable thereto, and the arguments of counsel, does hereby make and enter Findings of Fact, Conclusions of Law and Interlocutory Decree as follows:

I

The Santa Margarita River is a coastal stream which drains a watershed in San Diego and Riverside Counties; that said river is supported by numerous tributaries, the major two

15780

being Temecula and Murrieta Creeks; that said Santa Margarita River flows through lands of the United States of America for approximately 21 miles and thereupon enters the Pacific Ocean; that the lands of the United States of America through which said river flows were acquired by it either by condemnation or purchase during the years 1941, 1942 and 1943, and since said dates have been used principally as a military reservation and include Camp Joseph H. Pendleton, a United States Naval Hospital, and a Naval Ammunition Depot; that the military reservation in its entirety has a total area of approximately 135,000 acres of which a considerable portion is without the drainage area of the Santa Margarita River; that the United States of America is the last downstream owner and water user on the Santa Margarita River and all other parties to this proceeding are upstream claimants to the use of said waters.

II

That on or about May 5, 1930, the Superior Court of the State of California in and for the County of San Diego entered findings of fact, conclusions of law and judgment in case No. 42850 in the records of the said Court which in essence defined the extent of the surface and ground waters of said Santa Margarita River and its tributaries, determined the extent of the parties' land riparian thereto, apportioned the entire waters of said river and its tributaries to the riparian parties in that action and imposed certain injunctive restrictions.

III

That the parties to the said action referred to in Finding II hereinabove were the Rancho Santa Margarita, Vail Company, the Executors of the Will of Murray Schloss, deceased, and Philip Playtor.

- - - -

IV

That the Rancho Santa Margarita, the Executors of the Will of Murray Schloss, deceased, and Philip Playtor did not appeal from said judgment referred to hereinabove in Finding II; that Vail Company did appeal from certain portions only of said judgment; that the portions of said judgment from which Vail Company appealed were those that defined the extent of the Vail Company land riparian to the Santa Margarita River and its tributaries, which apportioned said waters to said riparian lands and which pertained to injunctive relief; that thereafter and on or about July 12, 1938, the Supreme Court of the State of California reversed those said portions of the judgment which pertained to the extent of the riparian land of Vail Company which allocated waters to Vail Company and which imposed certain injunctive restraints; that said Supreme Court remanded the case with directions that the new trial be limited to those matters specifically disapproved and affirmed the trial court's judgment as to all other matters; that said decision of the Supreme Court is recorded in 11 Cal.2d 501; that thereafter on or about December 26, 1940, the Superior Court of the State of California in and for the County of San Diego in said case No. 42850 entered a judgment pursuant to the stipulation of the parties; said judgment in essence allocated to the Rancho Santa Margarita two-thirds and Vail Company one-third of the entire waters of the Santa Margarita River and its tributaries, provided for a minimum surface stream flow, and as to the Rancho Santa Margarita provided that said Rancho could use the waters allocated to it both within and without the Santa Margarita River watershed.

V

That the waters subject to the litigation set forth

3

15782

in the above findings are the same waters which are in litigation before this Court; that Vail Company and the Executor of the Will of Murray Schloss, deceased, are parties in the action before this Court, and that the United States of America, a party in this action, is in privy to and the successor of the Rancho Santa Margarita, and that Max Henderson, a party in this action, is in privy to and the successor of Philip Playtor.

VI

It is not true that the 1940 judgment referred to hereinabove is a separate and distinct judicial document isolated from the 1930 findings of fact and judgment referred to hereinabove; it is not true that said 1940 judgment abrogated and made ineffectual the 1930 findings of fact and judgment as affirmed by the California Supreme Court; it is true that the said 1930 findings of fact and judgment as affirmed by the California Supreme Court and the said 1940 judgment must be considered together and are in fact one judicial determination the provisions of each supporting the other, consistent with the other and effectual as one single judicial determination.

VII

That at the time said 1930 findings of fact and judgment and said 1940 judgment were entered, the lands which comprised the Rancho Santa Margarita were used primarily as a cattle ranch with related ranching activities; that since the United States of America acquired said lands in 1941, 1942 and 1943 as hereinabove set forth said lands have been used primarily as a military enclave for defense purposes; that as a result of the change of this land use there has been a substantial change in the type of riparian water use that has been made on said lands in that the use by the United States of America is substantially equivalent to the use made by a municipality as

4

15783

contrasted to the former use of the Rancho Santa Margarita.

VIII

That since the entry of the judgment in 1940 the United States of America has greatly increased the pumping of ground waters within its military enclave which ground waters are a part of the Santa Margarita River; that as a result thereof almost all of the uses of the waters of the said Santa Margarita River by the United States of America have been made by pumping from the said ground waters of the said river.

IX

That the said judgment entered in 1940 and referred to hereinabove provided that the allocation to the Rancho Santa Margarita of two-thirds of the entire waters of the Santa Margarita River would be determined by measuring the normal flow at Ysidaro Narrows (Station 6) or if that normal flow at said Narrows was less than the normal flow at Temecula Gorge (Station 3), the normal flow at Temecula Gorge (Station 3) would be used to determine the Rancho's two-thirds allocation of the entire waters of said river.

X

It is true that as a result of the pumping of said ground waters as set forth in finding VIII above the normal flow of the Santa Margarita River downstream from Temecula Gorge has not reached the Ysidaro Narrows but has instead recharged the ground waters within the military enclave with the result that the normal flow at Ysidaro Narrows (Station 6) during the irrigation season has been zero and therefore of no practical use in allocating the waters as provided in the 1940 judgment.

XI

That the normal surface flow of said Santa Margarita River and its tributaries during the irrigation season from

5

15784

approximately March 15 through September 30 is of minor importance and significance insofar as recharging the ground waters within the said military enclave and referred to in Finding VIII above; that said recharge of said ground waters is accomplished almost entirely by waters flowing in and over said lands immediately following periods of moderate or heavy precipitation which occur only rarely during the irrigation season.

XII

That the United States of America has satisfied and can continue to satisfy its reasonable and beneficial water requirements within the Santa Margarita River watershed from pumping from ground waters within its military enclave as found in Finding VIII above; that said ground waters will be recharged by runoff following precipitation to a degree sufficient to meet said reasonable and beneficial water requirements of the United States of America without regard to the maintenance during the irrigation season of three second feet surface flow of the Santa Margarita River as provided in the 1940 judgment.

XIII

That the use of the ground waters by the United States of America as found in Finding VIII above does not entail any excessive nor unreasonable burdens, financial or otherwise, upon the part of the United States of America, and is in fact the most efficient and economical method whereby the United States of America can satisfy its reasonable and beneficial water requirements; it is true that the United States of America, because of the nature of the stream system itself, could not satisfy its proper riparian uses of water from the surface flow of the Santa Margarita River.

- - - - -
- - - - -

XIV

That since the entry of the judgment in 1940 referred to hereinabove, considerable acreages of land which are riparian to the Santa Margarita River and its tributaries have become productive and waters from said river have been supplied to said land for reasonable and beneficial purposes; that said increase in riparian acreages of land which have used the waters of said Santa Margarita River have been made by persons who are not parties to the litigation before the Superior Court of San Diego County as found hereinabove; that said persons are parties to this proceeding and have asserted riparian rights to use the waters of the Santa Margarita River and its tributaries; that said uses of water by said persons on riparian lands who were not parties to the prior litigation in the Superior Court of San Diego County have had a substantial effect on the river including, but not limited to, the lowering of the ground water tables and causing a reverse gradient, temporary in nature, of the ground water movement in one of the principal basins upstream from the lands of the United States, to wit: Murrieta Basin.

XV

It is not true that the uses of water on the riparian land by those persons not parties to the proceedings in the Superior Court of San Diego County as set forth in Finding XIV above have been improper; it is true that said uses are proper riparian uses.

XVI

It is not true that the United States of America and Vail Company have consistently followed the allocation of waters as provided in the 1940 judgment from the years 1940 through 1960; it is true that on occasions both the Vail Company

7

15786

and the United States of America frequently diverted and used the waters of the Santa Margarita River substantially in excess of their respective allocations provided in said 1940 judgment.

### XVII

It is true that in 1940 there were a substantial number of persons (numbering several thousand) who were not parties to the litigation in the Superior Court of the County of San Diego who had rights to the use of the waters of the Santa Margarita River; it is true that the 1940 judgment expressly allocated all of the natural flow of the Santa Margarita River to the four parties to the proceeding; it is true that said allocation of all of the natural flow of said river to the four parties as provided in said 1940 judgment is the basic provision therein and cannot be isolated from the remainder of said 1940 judgment.

### XVIII

It is not true that the 1940 judgment was a contract between the United States of America and Vail Company, or was intended to be a contract; it is true that said 1940 judgment was and was intended to be a judicial declaration of the respective rights to the use of the riparian waters of the parties to that litigation.

### XIX

It is not true that said 1940 judgment was a pooling agreement whereby the United States of America and Vail Company agreed to pool their respective riparian rights on the river.

### XX

It is true that Vail Company has filed in this proceeding and served on the United States of America a notice of rescission of contract which by its terms is expressly conditioned as to its application upon a judicial determination that

8

15787

said 1940 judgment was a contract; it is true that if said 1940 judgment were to be treated as a contract, Vail Company has rescinded said contract and was privileged to do so in that the United States of America by its conduct has substantially deprived Vail Company of the benefits specifically and impliedly provided therein, to-wit:

(a) It is true that one of the principal reasons for the Vail Company agreeing to the provisions of the 1940 judgment was to terminate expensive and lengthy litigation; it is true that the United States of America by bringing this action and by naming Vail Company as a party thereto and by forcing Vail Company to defend this action and its water rights on the said river, not only as against other parties but against the United States of America, has forced Vail Company to engage in and defend a lengthy and costly litigation.

(b) It is true that the United States of America has asserted and continues to assert in this proceeding rights to the use of the waters of the Santa Margarita River as against Vail Company substantially outside of the terms of said 1940 judgment including asserted riparian, prescriptive and appropriative rights, and paramount rights based on the sovereignty of the United States of America, which, if found to be valid by this Court, would substantially prevent Vail Company from obtaining the water allocated to it by said 1940 judgment.

(c) It is true that the United States of America has asserted and is continuing to assert riparian rights to ground waters which pursuant to the 1930 findings of fact and judgment of the Superior Court of San Diego County were found not to be a part of the Santa Margarita River.

XXI

It is true that the United States of America has

9

pleaded and is asserting against Vail Company not only the rights provided to the United States of America by said 1940 judgment but also rights to the use of the waters of the Santa Margarita River as a riparian, prescriptor and appropriator, and water rights designated as paramount rights based on sovereignty; it is true that said claimed rights to the use of the waters of the said river are substantially beyond those provided to the Rancho Santa Margarita by the 1940 judgment; it is true that to the extent said claimed rights of the United States of America are found by this Court to be valid, Vail Company's rights to use the water of the Santa Margarita River as provided in the 1940 judgment would be lessened.

XXII

It is true that the 1930 findings of fact and judgment of the Superior Court of San Diego County specifically determined and found that the ground waters underlying ancient mesa silt formations were not part of the Santa Margarita River and that the Rancho Santa Margarita had no rights thereto.

XXIII

It is true that said ancient mesa silt formations are the same formations referred to in this case as older alluvium.

XXIV

It is true that Vail Company owns large acreages of land (at least 35 sections) in the ancient mesa silt formations.

XXV

It is true that the United States of America is asserting in this case as against Vail Company and all other defendants, riparian rights to ground waters underlying ancient mesa silt formations, including those ground waters underlying those said formations on Vail Company lands.

XXVI

It is true that the United States of America has offered into evidence considerable testimony and exhibits directed to establishing that the ground waters underlying said ancient mesa silt formations are part of the Santa Margarita River, and that said waters are considerable in amount.

XXVII

It is true that the United States of America has consistently contended and still contends that it is entitled to riparian rights to ground waters underlying ancient mesa silt formations as well as all rights provided to the Rancho Santa Margarita in the 1940 judgment.

XVIII

It is true that the United States of America contests the Vail Company's exclusive right as against the United States of America to the ground waters underlying the ancient mesa silt formations as provided to the Vail Company by the 1930 findings of fact and judgment.

XXIX

It is true that ground waters underlying ancient mesa silt formations in substantial areas of the Santa Margarita River watershed including those ground waters underlying said formations on the lands of the Vail Company are a part of the Santa Margarita River and that the United States of America as a riparian has a correlative right thereto.

- - - -
- - - -
- - - -
- - - -
- - - -

15790

### XXX

That on or about September 30, 1950, duly authorized agents of the United States of America requested the permission of the Vail Company to drill an exploration well on Vail Company lands; that the Vail Company agreed thereto and a well was subsequently drilled by the United States of America to a depth of approximately 2469 feet; that in requesting the permission of the Vail Company to enter Vail Company lands and in drilling said well the United States of America did not rely on any provisions of the 1930 or 1940 judgments referred to in Findings II and IV above, but acted solely to obtain geologic information for purposes unrelated to said judgments.

### XXXI

That by drilling said well referred to in FindingXXX above, the United States of America acquired the geologic information it desired to obtain; that the United States of America had knowledge that the Vail Company might use said well after it had been drilled to the depth desired by the United States of America and after the United States of America had obtained the geologic information desired by it; that after said well was drilled to the depth desired and the geologic information obtained by the United States of America, the Vail Company has used said well for irrigation purposes on their lands; that the specific capacity of said well is approximately 18.5 gallons per minute per foot of drawdown and the water therefrom is of a poor quality for irrigation purposes.

### XXXII

It is true that at the time the United States of America was negotiating with Vail Company to acquire the Vail Company's consent to drill said Navy well, the United States of America had filed its lawsuit naming Vail Company

as a defendant but had not served Vail Company with a copy of summons and complaint; it is true that at said time Vail Company gave its consent to the drilling of the Navy well by the United States of America, Vail Company was not aware of the fact that the United States of America had filed this lawsuit naming Vail Company as a defendant; it is true that much of the geologic information obtained by the drilling of the Navy well has been used by the United States of America to support its claims that the ground waters underlying mesa silt formations are a part of the Santa Margarita River.

### XXXIII

That on or about August 16, 1946, the Vail Company filed an application, No. 11518 with the Department of Public Works, Division of Water Resources, for a permit to appropriate 40,000 acre feet of water annually from Temecula Creek to be accumulated by storage between November 1and April 30; that protests to said application were duly filed by the United States of America, and others; that subsequently the United States of America advised that its protest was being withdrawn; that thereafter hearings on said application were held and evidence in support of and in opposition to said application was received; that despite the attempted withdrawal of its protest, the United States of America appeared at said hearings and presented evidence in opposition to said application; that thereafter a permit (No. 7032) to appropriate 40,000 acre feet of water annually from Temecula Creek by storage to be accumulated between November 1 and April 30, was issued to the Vail Company; that thereafter and within the time provided in said permit, the Vail Company constructed Vail Dam.

### XXXIV

That the Permit referred to in Finding XXXIII above,

specifically provides that the Vail Company rights pursuant thereto are subject to all prior vested rights to the use of said waters of Temecula Creek.

XXXV

That to the extent that any claimed right of the United States of America to use of the waters of Temecula Creek is valid under California law said right was vested prior to the filing of Application No. 11518 by the Vail Company as found in Finding XXXIII above.

XXXVI

That commencing in 1948 the Vail Company, acting pursuant to Permit No. 7032, has stored said waters of Temecula Creek at Vail Dam; that since said year of 1948, and principally as a result of the lack of runoff water resulting from natural conditions, the Vail Company has not stored in the reservoir at said Vail Dam during any year 40,000 acre feet of water, but has only been able to store therein approximately 4,000 acre feet on an annual average since 1948.

XXXVII

That said storage of water at Vail Dam as found above has not adversely affected any right of the United States of America to the use of the waters of Temecula Creek; that the ground water basins within the military enclave and used by the United States of America to satisfy almost all of their reasonable and beneficial water requirements as previously found herein have been recharged periodically since the year 1948 to such an extent that the United States of America has not fully itilized the safe annual yield of said basins; that in fact, as of May 1958, the said ground water basins witin said military enclave and referred to in Finding above were substantially full.

XXXVIII

That during the period from 1948-1958 amounts of water approximately double the amounts of water stored at Vail Dam during said period have passed the Ysidora Narrows (Station 6) and wasted into the ocean.

XXXIX

That it is not true that the United States of America withdrew its protest as found in finding XXXIII above upon an assurance that the Vail Company would never seek to modify, change or enjoin the water allocation and provisions of the 1940 judgment referred to in finding IV above; it is not true that the actions of the Vail Company in obtaining a permit for the storage of water at Vail Dam and constructing Vail Dam and constructing Vail Dam and storing water therein were in conflict with any provision of said 1940 judgment.

XL

That it is not true that the mere withdrawal of the protest by the United States of America as found in finding above, was of any benefit to the Vail Company in the acquisition of the permit referred to in said finding XXXIII above.

XLI

That it is not true that the rights of the United States of America to the use of the waters of the Santa Margarita River and its tributaries have been lessened, endangered or affected by the operation of Vail Dam or by the appropriative right to store water therein as found above.

XLII

That it is true that the storage of water at Vail Dam and subsequent release of said water for irrigation purposes on lands downstream from said Dam has provided a beneficial regulation of waters of Temecula Creek in that all return flows from

15

from said waters after application to said lands have returned to the Santa Margarita River, or a tributary thereto, and become available for reasonable and beneficial use downstream, and that none of said waters have wasted into the ocean.

XLIII

It is not true that the enjoining of the 1930 and 1940 judgments of the Superior Court of San Diego County in any way impairs the present uses of the waters by the United States of America on their lands either within or without the watershed of the Santa Margarita River.

Dated:_____, 1961.

                                      _____
                                      JUDGE, U. S. DISTRICT COURT
                                      SOUTHERN DISTRICT, CALIFORNIA
                                      SOUTHERN DIVISION

CONCLUSIONS OF LAW

I

That the 1930 findings of fact and judgment and the 1940 judgment must be considered as one judgment.

II

That as a result in the change of conditions as to the water use of the waters of the Santa Margarita River since 1940, the 1940 judgment does not represent an equitable riparian allocation of waters as to the United States of America and Vail Company.

III

That the substantial number of defendants in the instant case who are asserting riparian rights to the reasonable and beneficial uses of waters of said Santa Margarita River have rights thereto which cannot be affected by the 1940 judgment and

16

15795

which if recognized, as they must be, results in the 1940 judgment being inequitable and not a fair riparian apportionment between Vail Company and the United States of America.

### IV

That to the extent the 1940 judgment attempted to allocate all of the waters of the Santa Margarita River to the parties thereto it is void in that other persons not parties to that action had substantial rights thereto.

### V

That the 1940 judgment was not a contract nor was it a pooling agreement.

### VI

That if said 1940 judgment be construed as a contract, Vail Company was privileged to rescind, as it has done.

### VII

That the instant case is a quiet title action, and that in equity the United States of America cannot claim the benefits of the provisions of the 1940 judgment and at the same time ignore the detriments as provided by the 1930 findings of fact and judgment.

### VIII

That it would be inequitable as to Vail Company to enforce against it the provisions of the 1940 judgment and at the same time allow the United States of Amerca to not be bound by the provisions of the 1930 findings of fact and judgment.

### IX

That the Vail Company is not estopped to contend that the 1940 judgment should be modified, changed or set aside nor has the Vail Company engaged in acts which would make available a defense of laches or similar defense.

- - -

17

15786

X

That in equity the enjoining of the provisions of the 1930 findings of fact and judgment and the 1940 judgment will accomplish substantial fairness and justice to both the United States of America and Vail Company.

Dated:_____, 1961.

_____
JUDGE, U. S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>    vs.<br><br>FALLBROOK PUBLIC UTILITY<br>DISTRICT, et al.,<br><br>           Defendants. | Civil No. 1247-SD-C<br><br>INTERLOCUTORY DECREE |

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the United States of America, The Vail Company, Philip Playtor, and the Executors of the Will of Murray Schloss, deceased, and each of them, their agents, employees, representatives, tenants, lessees or any person, firm or corporation claiming through or under them, and all other parties and successors to parties in this litigation are forever enjoined from enforcing or attempting to enforce in any manner whatsoever in this Court or any Court or administrative body or board of the State of California any judgment, provision or term, finding of fact or conclusion of law set forth in the case of <u>Rancho Santa Margarita</u> v. <u>Vail</u>, Case Number LA 15078, in the Records of the Supreme

1  Court of the State of California, and Case Number 42850 in the
2  Records of the Superior Court of the State of California in and
3  for the County of San Diego.
4      IT IS FURTHER ORDERED, ADJUDGED AND DECREED that
5  this Interlocutory Decree is not appealable, is not final, and
6  this Court expressly reserves jurisdiction to modify or vacate
7  it either on its own motion or upon motion of any party to this
8  proceeding until such time as the final judgment in this case
9  is entered.
10 Dated:_____, 1961

                            _____
                                      JUDGE