**FILED**

APR 17 1961

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY *M. O. _____*
        Deputy

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|     Plaintiff, | ) |
| vs. | ) No. 1247-SD-C |
| FALLBROOK PUBLIC UTILITY DISTRICT, et al., | ) |
|     Defendants. | ) |

MEMORANDUM OF THE STATE OF CALIFORNIA REGARDING MILITARY USE OF RIPARIAN WATER ON RIPARIAN LAND WITHIN THE WATERSHED.

This brief is concerned with the question as to whether military uses of water essentially municipal in character are (or can be) proper riparian uses. In considering this point we emphasize that our discussion is limited solely to such uses by the United States within the watershed. Obviously any beneficial use of water outside the watershed is not a proper riparian use.

Fallbrook in its brief advances essentially two contentions:

(1) That uses of riparian water for military

6428

*Copy rec'd*

uses essentially municipal in character are absolutely prohibited as a matter of law regardless of reasonableness.

(2) That uses of riparian water for military uses essentially municipal in character if not prohibited as a matter of law are in fact unreasonable.

It is pertinent to point out that this issue is only relevant if there is an apportionment or attempt by the United States to limit an upstream riparian or appropriator. Until this event occurs the United States can use its riparian water as it desires since it is the last user on the river. However, aside from this issue of relevancy it is probably desirable to have this legal question decided now so that all parties can plan accordingly.

If it is within a riparian's right to use riparian water for military purposes essentially municipal in character just so long as such use is reasonable, we have a factual question. What is reasonable will depend on the facts as they may exist when, in the future, the question arises. We accomplish nothing now by discussing this factual question. Thus, the sole question now is whether a reasonable water use for military purposes (of a municipal character) is a proper riparian use. Whether or not the United States' military use is in fact reasonable can only be decided when that issue is squarely presented. In considering this point, it must be remembered that here the United States is a riparian, beneficially using riparian water for its benefit on its riparian land. It is not using water as a city does to supply others, i.e., city inhabitants and property owners. Its use of water is for its own purpose, and it is not in fact using riparian water to provide a public water supply.

It is also important to remember that the mere fact

2

6429

that the water use is for a governmental purpose as distinguished from a private purpose does not prevent such use from being riparian. Certainly no one would contend that a United States Forest Service lookout could not use as a matter of _right_ riparian water for his domestic use, or that the California Department of Agriculture could not use riparian water on its riparian land to irrigate an experimental avocado orchard. The cases cited by Fallbrook: City of San Bernardino v. City of Riverside, 186 Cal. 7; Antioch v. Williams Irrigation Dist., 188 Cal. 451; and City of Lodi v. East Bay Municipal Utility District, 7 Cal. 2d 316, do not hold that riparian water cannot be used for governmental purposes which are also "private" in the sense that the water is used and consumed solely by the sovereign as distinguished from being used and consumed by the public. In the City of San Bernardino case the city was claiming a right to use basin waters to supply its inhabitants. The city argued that _it_ was entitled to exercise _for_ the benefit of the inhabitants _their_ individual overlying rights.

In the Antioch case the city claimed a riparian right because the city boundary extended to areas which abutted the river. The court merely held that a riparian right was founded upon ownership of land which abuts upon the stream and not upon the mere fact that the political boundary of the city extended to areas which abut upon the river. In fact, the court pointed out that the City of Antioch _itself_ owned no land abutting on the San Joaquin River. In the City of Lodi case the city drilled wells on land owned or leased by it and pumped water to its inhabitants. In other words, the water pumped from one single parcel of land was being distributed to the entire city area for use by the city's

3

residents. The case is almost synonymous with the City of Bernardino case where the court properly held that a city could not exercise for the benefit of its inhabitants their individual overlying rights. In fact, it is interesting to note that Lodi made no contention that their use was riparian.

In short, these three cases did not consider nor discuss the question presented in this case, to wit, a sovereign using water on *its* riparian land itself for *its* own purpose which is also governmental.

Other California cases cited by Fallbrook are Lux v. Haggin, 69 Cal. 255, and Cowell v. Armstrong, 210 Cal. 218. What these cases held was that the use of riparian water to supply water to extraordinary numbers of cattle was not a natural or preferred riparian use. A natural or preferred riparian use generally means that a riparian can use *all* the riparian water, to the detriment of downstream riparians, for his domestic use including water for domestic animals (see 1 Weil, Water Rights, (3d Ed.) 798-807; 51 Cal. Jr. 2d, Waters, Sec. 138, p.600). These two cases held that extraordinary numbers of domestic animals (cattle) would not entitle the riparian to the preferred riparian use. What has been overlooked by Fallbrook is that the watering of extraordinary numbers of cattle still is a riparian use, as for example is irrigation. However, it is not a preferred riparian use. The remaining California case cited by Fallbrook is Prather v. Hoberg, 24 Cal.2d 549. That case did not hold that commercial use of riparian water on riparian land was improper. What the case held was that it was a question of fact as to whether such use was under *all* circumstances a reasonable riparian use. In fact, the case indicated that under some circumstances commercial use (i.e. domestic use by hotels, etc.) might even be a preferred riparian use.

4

      We submit that no California case discussed by Fallbrook considered the factual situation presented in this case. Certainly these cases do not hold that the use of water by the sovereign for its <u>own</u> domestic purposes, as distinguished from the public's domestic purposes is, as a matter of law, an improper riparian use. The case of <u>City of New Whatcomb</u> v. <u>Fairhaven Land Co.</u>, Washington, 64 Pac. 735, cited by Fallbrook, merely held that a city which owned riparian land itself could not on that basis claim a riparian right to supply water to <u>its</u> inhabitants some of whom resided in areas which were not even riparian to the stream. To the same effect is <u>City of Emporia</u> v. <u>Soden</u> (see pp. 13-15 Fallbrook Brief).

      In our view the only case cited by Fallbrook which supports their contention is <u>Salem Flouring Mills Co.</u> v. <u>Lord</u>, Oregon (69 Pac. 1033, 1039). In that 1902 case the State of Oregon used riparian water for <u>irrigation</u>, cooking, laundry, sanitation, etc. required at a state prison and state mental institution which were apparently on riparian land. The Oregon court said this was analogous to cases where: ". . .individuals have claimed the right by reason of their riparian ownership to supply towns and cities with water, or where towns and cities adjacent to some part of a stream have claimed a sufficient quantity to supply the remote parts or portions thereof. . .", and Oregon's use was therefore improper. In our view the analogy drawn by the Oregon court was wrong. The use by Oregon of riparian water on riparian land for <u>its own</u> uses, is not the same as an individual riparian supplying water to a town or city, or a city which is adjacent to a stream supplying water to its inhabitants.

      In the instant case, the United States uses its riparian water for <u>its</u> needs. The cases which hold that riparian

5

6432

water cannot be used as a <u>public</u> water supply are just not applicable.

In California it has long been the law that the doctrine of reasonable and beneficial use is the measure of the propriety of the exercise of the riparian right (<u>Peabody</u> v. <u>City of Vallejo</u>, 2 Cal.2d 351, 366-367). The United States in this case must be treated as any other riparian.

If it is permissible for a large ranch owner to water a commercial herd of cattle from riparian water if under all circumstances it is reasonable, should the Marines' domestic use of riparian water be prohibited if it also is reasonable under the same test?

If at Murrieta Hot Springs commercial resorts can use Santa Margarita River water to satisfy the needs of their guests if such needs are reasonable under all circumstances, should not the domestic needs of the Marines be permitted if they meet the same standard?

If under all circumstances it is reasonable for Vail Company to irrigate large acreages of riparian land for the purpose of selling crops what reason is there to deny the United States the right to use its riparian water for its domestic needs if the amount of water used is reasonable in light of all other water uses on the stream? If the hundreds of ranches on the Santa Margarita River can supply the domestic water requirements of many agricultural workers during the harvesting season with riparian water, why should the United States be prohibited from using riparian water to satisfy the Marines' domestic needs if the amount required meets the tests of reasonableness?

It is the position of the State of California that there is no rule of law (statutory or judicial) which prohibits

as a matter of law the United States from using <u>its</u> riparian water on <u>its</u> riparian land to satisfy the domestic requirement of <u>its</u> military personnel. The simple fact in this case is that the United States is not acting as a municipality. It is not supplying water to the public. Its water use is for its own needs which beyond doubt are beneficial. Merely because its water use <u>resembles</u> a municipal use is not a sufficient reason to conclude that it is improper. To a degree any domestic use of water resembles a municipal use. The same is true of commercial water uses. We respectfully submit that under California law the domestic use of riparian water on riparian land <u>within</u> the watershed, even though such use is essentially municipal in character, is not as a matter of law improper, but in fact may well be a proper riparian use of water if under all circumstances existing on the stream such use is reasonable. We emphasize that the determination of whether such use is reasonable would involve consideration of many factors including, but not limited to, the method of apportionment, the overall uses of riparian water by the United States, the water supply, and the rights of the other water users on the river. This determination as to reasonableness, as pointed out above, can only be made when that issue is squarely presented.

Dated: April 14, 1961.

STANLEY MOSK, Attorney General
of the State of California

F. G. GIRARD
Deputy Attorney General

By /s/ F. G. Girard
F. G. GIRARD

MUSICK, PEELER & GARRETT
ATTORNEYS AT LAW
621 SOUTH HOPE STREET
LOS ANGELES 17, CALIFORNIA
MADISON 9-3322

Attorneys for Defendant,
James Oviatt

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>FALLBROOK PUBLIC UTILITY<br>DISTRICT, et al.,<br><br>　　　　　Defendants. | Civil No. 1247-SD-C<br><br>MEMORANDUM OF DEFENDANT,<br>JAMES OVIATT, CONCERNING<br>DRAFT OF FINDINGS OF FACT,<br>CONCLUSIONS OF LAW AND<br>INTERLOCUTORY JUDGMENT |

The following modifications of the draft of Findings of Fact, Conclusions of Law and Interlocutory Judgment, regarding property of defendant, James Oviatt, are hereby requested:

PARAGRAPH I, FINDINGS OF FACT:

It is suggested that it may be useful to particularize the separate properties of defendant, James Oviatt, referred to in this Paragraph, by adding thereto the following:

G435

"The real property of Defendant, James Oviatt, known as Rancho Ramona, consisting of 1171.63 acres, is described in Defendant, James Oviatt's Exhibit Y-1 in evidence. Adjacent thereto is a forty acre parcel which is described in Exhibit Y-2 of Defendant, James Oviatt. The Oak Grove Ranch of said Defendant is described in Defendant, James Oviatt's Exhibits Y-3, Y-4, Y-5 and Y-6. The property described in Exhibits Y-3 and Y-5 is sometimes referred to as the Bailey Ranch."

PARAGRAPH II, FINDINGS OF FACT:

This Paragraph is pertinent with respect to the riparian rights of defendant, James Oviatt. It is therefore suggested that reference should be made to the pertinent water shed of the tributaries of the Santa Margarita River. Moreover the riparian character of the lands, while a Conclusion of Law, is also an ultimate fact. It is therefore suggested that Paragraph II be redrafted to read as follows:

"That the lands described above in Finding I, within Township 8 S. Range 1 W, Sections 12 and 13 and Township 8 S, Range 1 E, sections 7, 8 and 18 abut upon or are traversed by and are within the water shed of Wilson Creek, and are riparian thereto; that the lands described above in Finding I within Township 9 S, Range 2 E, sections 1, 2, 4, 5, 7, 8, 9, 10, 11, 12, 14, 15, 17, Northeast Quarter of 21, 22 and 23 and Township 9 S, Range 3 E section 6, and Township 8 S, Range 3 E sections 27 and 35, abut upon or are traversed by and are within the water shed of Chihuahua Creek, and are riparian thereto; that the lands described above in

-2-

6436

Finding I within Township 9 S, Range 2 E sections 1, 2, 4, 5, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 21, 22 and 23 and Township 9 S, Range 3 E Northwest Quarter of section 6 abut upon or are traversed by and are within the water shed of Temecula Creek, and are riparian thereto; that the surface flow of Wilson Creek, Chihuahua Creek and Temecula Creek are tributary to the Santa Margarita River."

PARAGRAPH IV, FINDINGS OF FACT:

It is suggested that the following language be added to Paragraph IV:

"The amount of water reasonably required to irrigate said irrigable acreage is as reflected in Defendant, James Oviatt's Exhibit A."

PARAGRAPH VI, FINDINGS OF FACT:

This Paragraph is in proper form if the Court rules adversely to the claim of a prescriptive right by this defendant. However it is the contention of defendant that, based upon the Memoranda heretofore submitted to the Court, a prescriptive right has been established in defendant, James Oviatt, and there should be substituted for the present Paragraph VI, the following language:

-3-

6437

"Since a date prior to the year 1920, Defendant, James Oviatt, and his predecessors in interest, have continuously diverted all of the waters of Lancaster Creek for beneficial domestic uses and for irrigation of 200 acres of crops and pasture on the real property of defendant, James Oviatt, known as Rancho Ramona, in water diversions which were open, visible, notorious and under claim of right. The quantity of water so diverted equalled 130 miner's inches.

"Since the year 1887, Defendant, James Oviatt, and his predecessors in interest, have continuously diverted all of the waters of Temecula Creek for beneficial domestic uses and for irrigation of 80 acres of crops and pasture on the real property of defendant, James Oviatt, known as the Bailey Ranch, in water diversions which were open, visible, notorious and under claim of right. The quantity of water so diverted equalled 30 miner's inches."

If this change is made, Paragraph VII should be preceded by the following language:

"Except as set forth in Paragraph VI hereof."

-4-

6438

If this change is made, Paragraph VI of the Conclusions of Law should be stricken, and there should be added to the language of the Judgment the following:

"IT IS FURTHER ORDERED, that there is a prescriptive right in defendant, James Oviatt, to divert 130 miner's inches of the waters of Lancaster Creek for beneficial domestic uses and irrigation upon the real property of said defendant, described in Exhibit Y-1, and there is a prescriptive right in said defendant to divert 30 miner's inches of the waters of Temecula Creek, for beneficial domestic uses and irrigation upon the real property of said defendant, described in Exhibits Y-3 and Y-5."

PARAGRAPH IX, FINDINGS OF FACT:

The number of operating wells, as established by the evidence, is four, rather than three, and therefore the word "four" should be substituted for the word "three", at page 3, line 15.

Dated: April 13, 1961.

Respectfully submitted,

MUSICK, PEELER & GARRETT

By _____
Jesse R. O'Malley
Attorneys for Defendant,
James Oviatt

-5-

6439

```
STATE OF CALIFORNIA   )
                      ) ss
COUNTY OF LOS ANGELES )
```

I, the undersigned, say: I am and was at all times herein mentioned a citizen of the United States and employed in the County of Los Angeles, over the age of eighteen years, and not a party to the within action or proceeding; that my business address is 621 South Hope Street, Los Angeles 17, California; that on April 13, 1961, I served the within Memorandum of Defendant, James Oviatt, on the following named persons, by placing a true copy thereof in an envelope, addressed to each, as follows:

STANLEY MOSK, ATTORNEY GENERAL
and F. G. GIRARD, DEPUTY ATTORNEY GENERAL
Sacramento, California

SACHSE AND PRICE
1092 South Main Street
Fallbrook, California;

WILLIAM H. VEEDER, Special Assistant
to the Attorney General
Counsel for Plaintiff, United States of America
U. S. Customs and Court House
San Diego 1, California

GEORGE STAHLMAN

Counsel for Defendant, Vail Company, Inc.

Route 1, Box 235

Fallbrook, California

and by then sealing said envelopes and depositing the same with postage thereon fully prepaid, in a mail box regularly maintained by the Government of the United States in Los Angeles, California, where is located the offices of the attorneys for the persons by and for whom said service was made.

That there is delivery service by United States mail at the places so addressed, and there is a regular communication by mail between the place of mailing and the places so addressed.

Frances Irving

Subscribed and sworn to before me this 13th day of April, 1961.

Leone Marie Riegel

Notary Public in and for said
    County and State
Residing in Los Angeles County

My commission expires July 12, 1964

-7-

6441