LODGED

JUN 19 1961

CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By
DEPUTY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

         Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT, et al.,

         Defendants.

No. 1247-SD-C

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND INTERLOCUTORY JUDGMENT NO. ____ PERTAINING TO MURRIETA-TEMECULA AREA

FINDINGS OF FACT

I

That the Murrieta-Temecula ground water area hereinafter called the "ground water area" is comprised of younger and older alluvium deposits; that the exterior boundaries of said ground water area is graphically set forth in U. S. Exhibit 277 attached hereto and is specifically described in U. S. Exhibit 277A attached hereto both of which exhibits are incorporated herein and made a part of these findings as if set forth in full herein.

        That said ground water area is bordered on the southwest by the mountains of the Santa Rosa Grant which are composed of basement complex; that the alluvial deposits immediately

15957

northeast of the mountains of the Santa Rosa Grant are of considerable depth and one well, the Navy well, which was drilled in 1951 and is located in Projected Section 17 of Township 8 S, Range 2 W, evidenced alluvial deposits at a depth in excess of 2400 feet; that said alluvial deposits overlie basement complex.

That proceeding north and northeast the alluvial deposits show a gradual lessening in depths to basement complex and said alluvial deposits terminate near the northeasterly side of the ground water area at that point where the basement complex becomes apparent.

That the geologic evidence in this case establishes that many years ago the older alluvial deposits were laid down by stream actions at a time when the surface waters ran northerly into the Elsinore area and that at some point in the past said streams changed their course to the present stream condition by accomplishing a break-through of the basement complex at the place now known as Temecula Gorge.

That at all times thereafter the drainage of the watershed above Temecula Gorge and all surface flows have been westerly down the present Santa Margarita River into the Pacific Ocean.

That thereafter the younger alluvial deposits as depicted on U. S. Exhibit 15E were laid down by stream action on top of the older alluvium.

II

That Murrieta Valley stands in a northwesterly and northeasterly direction parallel to and immediately adjacent to the mountains of the Santa Rosa Grant referred to above; that there exists two well-defined fault lines approximately parallel; one immediately to the northeast of the Santa Rosa Mountains which is the Elsinore Fault, and one which runs in the same

2

15958

direction and is generally parallel thereto, but located to the northeast which is generally known as the Wildomar Fault.

That the major portion of the younger alluvium in Murrieta Valley lies between these two faults; that these two faults are depicted on U. S. Exhibit 15.

That the Wildomar Fault which is located on the northeast side of Murrieta Valley consists of or has adjacent to it material which is so lacking in permeability so as to constitute in many places along said fault line a barrier or semi-barrier to the movement of ground waters in a southwesterly direction.

That as a result thereof there are springs of rising waters along or near said fault line which waters flow on the surface or immediately thereunder, over or through said fault and adjacent material and into Murrieta Valley; that the barrier or semi-barrier effect of the Wildomar Fault and the adjacent materials on ground water movement has also resulted in an artesian condition in certain areas immediately northeast of said fault line.

III

That the term "ground water area" as used in these findings has been adopted intentionally to represent the existing factual situation rather than the word "basin" which appears in many recorded decisions which concern ground waters; that generally the term "basin" connotates an alluvial fill containing ground waters which are surrounded by impervious materials and one in which the ground waters stand at or about the same level throughout, and one in which there is a more or less uninterrupted continuity of the ground waters throughout said alluvial fill.

That in the Murrieta-Temecula ground water area

3

while the alluvial deposits are surrounded by impervious materials, the waters within said alluvial deposits in the southeasterly portion of the area are in general moving downward in a southwesterly direction, and the waters in the northwesterly portion of the area are in general moving downward in a southeasterly direction, and as a result thereof, there is no such thing as a consistent or related ground water level throughout said area.

That because of faulting and substantial differences in the permeability of the alluvial deposits and the fact that there are two main bodies of alluvial fill separated by a ground water divide with the result that the ground waters within these two bodies of alluvial fill move in distinct and not identical directions, there is a considerable variance in the physical continuity of the ground waters from that which exists in the ordinary basin.

That the approximate location of said ground water divide as it existed in the autumn of 1959 is shown on U. S. Exhibit 15E.

IV

That the deposits within said ground water area are variable and consist of sedimentary materials composed of sand, gravel, silt, clay and other materials which vary in permeability and are not continuous layers but are lenticular.

That said materials are found from the surface to great depths; proceeding north and northeast across said ground water area these deposits become progressively thinner and feather out as they reach contact with basement complex

-- - -

- - -

- - -

4

and weathered basement complex as depicted on U. S. Exhibit 15E attached hereto and made a part of these findings; that the area within said ground water area consists of older and younger alluvium and the location of each is depicted on said U. S.Exhibit 15L.

V

That wells which have been dug or drilled in said ground water area are in three categories:

(a)  Wells in younger alluvium only.

(b)  Wells in older alluvium only.

(c)  Wells which were started in younger alluvium but have been drilled through the deposits of younger alluvium and into the older alluvial deposits.

That there is no specific or absolute pattern of water productivity from said wells and there is considerable variance in the water produced in each of said categories of wells and substantial variances of water production within each of said single well categories.

That in all three categories both good producing and poor producing wells have been drilled. That generally in areas where older alluvium is present on the surface, a lesser amount of ground water is found than in those areas which underlie younger alluvium in that generally the younger alluvium consists of more permeable materials than the older alluvium, and in most instances the areas of younger alluvium are in close proximity to a surface stream and have a substantial source of recharge as contrasted to the areas of older alluvium which in the usual case are located at considerable distances from surface stream channels.

- - -
- - -

5

VI

That the areas of younger alluvium within said ground water area are primarily those which underlie Murrieta and Pauba Valleys as depicted on U. S. Exhibits 15E and 15L.

VII

That there is no ground water movement between said areas of younger alluvium in the Murrieta Valley and the areas of younger alluvium in the Pauba Valley in that there is a ground water divide between said Valleys of younger alluvium which effectively prevents waters from Murrieta Valley moving eastward into Pauba Valley and waters from Pauba Valley moving westward into Murrieta Valley.

That the ground waters within the younger alluvium in Pauba Valley move in a general westerly direction until they reach Temecula Gorge; that the ground waters within the younger alluvium in Murrieta Valley move in a generally south-easterly direction until they reach Temecula Gorge; that at or near said Temecula Gorge said ground waters within said areas of younger alluvium of Murrieta and Pauba Valleys rise to the surface and pass over an area of bedrock and comprise the surface flow of the Santa Margarita River.

VIII

That the ground waters within the areas of older alluvium in the ground water body move slowly toward the younger alluvium either within Murrieta or Pauba Valleys; that the ground water divide as found above is not a stationary divide but fluctuates between the areas of younger alluvium depending upon the ground water levels, but generally said divide follows the surface water divide between the Murrieta and Temecula drainage areas.

That all ground waters in older alluvium in said

6

15962

ground water area northwesterly of said ground water divide move toward the younger alluvium in Murrieta Valley; that all ground waters within areas of older alluvium in said ground water area southeasterly of said ground water divide move toward the younger alluvium in Pauba Valley.

That the movement of said ground waters is not a consistent, continuous movement, but is influenced by many factors including, but not limited to, the permeability of the deposits within said areas of older alluvium, by the probability of physical ground water barriers beneath the surface, and by pumping within said area.

Although in some limited areas the movement of ground water can be and has been definitely determined, there is insufficient evidence to show to what extent said movement and rate of flow in the major portion of the older alluvium within said ground water area is affected by such under ground or subterranean conditions.

IX

That those areas of older alluvium as depicted on said U. S. Exhibit 15L are the same areas which were designated by the term "mesa silt" as used and found in the 1930 Findings of Fact, Conclusions of Law and Judgment in the case of Rancho Santa Margarita v. Vail, et al., Case No. 42850, in the records of the Superior Court of the State of California in and for the County of San Diego.

X

That pumping in the areas overlaid with older alluvium within said ground water area can affect to a limited but presently undetermined degree the surface flow of the Santa Margarita River. That pumping from areas overlaid with younger alluvium in Murrieta Valley can and does affect to an undetermined

degree the flow of Murrieta Creek; that pumping from areas overlaid with younger alluvium in Pauba Valley can and does affect to an undetermined degree the flow of Temecula Creek; that Murrieta and Temecula Creeks are the principal tributaries of the Santa Margarita River above Temecula Gorge.

XI

That the ground waters within the areas of younger and older alluvium in said ground water area are percolating waters which add to and support the Santa Margarita River, and constitute a supply of water for said River; that said ground waters are not in a known and defined channel.

XII

That ground water contours in said ground water area show that ground water moves in a general southeast-northwest direction; that said contours show the altitude above sea level of the water levels in wells and are predicated on such well levels as are presently available from which the contours are projected; these contours as of autumn, 1959, are depicted on U.S. Exhibit 15L; and, as shown thereon, are progressively lower as they proceed from the extreme north and easterly boundaries of said ground water area toward Temecula Gorge; that the contours of 1959 show a definite pattern of downward water gradient in a general southwesterly direction.

XIII

That except as found in Finding VII above, ground water levels within said ground water area do not stand at or about the same level; that ground water levels within areas of younger alluvium, older alluvium, and older and younger alluvium may vary considerably; that pumping from one well or from several wells within said ground water area in some instances has been shown to have a noticeable effect on other wells within said

ground water area which are in close proximity to the well or wells pumped; in some instances under conditions apparently similar no noticeable effect has been evidenced in wells in close proximity to the wells being pumped; in some areas of said ground water area there has been evidenced an effect on one well when another well approximately one mile therefrom was pumped; in some areas of said ground water area no effect has been shown in one well when another well approximately 150 feet therefrom was pumped.

XIV

That there is insufficient evidence to enable this court to find the total water supply to, the use within, the export from, or the net draft upon said ground water area or any part thereof, either annually or on the average over a period of years.

XV

That the general source of the ground water within said ground water area is primarily runoff from drainage areas outside of the ground water area, which occur during or immediately after periods of precipitation and to a lesser degree precipitation upon said ground water area; that specifically the source of the ground waters within the younger alluvium which underlie Murrieta Valley and the older alluvium northwesterly of the ground water divide as found in Findings III and VII above is the surface drainage area of Murrieta Creek and tributaries thereto.

That specifically the source of the ground waters within the younger alluvium which underlie Pauba Valley and the older alluvium southeasterly of said ground water divide is the surface drainage area of Temecula Creek and tributaries thereto; that Murrieta and Temecula Creeks and their principal tributaries

9

are described in detail in other findings in this case and such findings are incorporated herein and made a part of this finding.

## XVI

All surface flows of water upon the lands depicted on U. S. Exhibits 15E and 15L are a part of the Santa Margarita River.

## XVII

Except as may be expressly found to the contrary in other findings in this case all uses of surface water, and all uses of ground waters within older or younger alluvium as depicted on U. S. Exhibit 15L are in their character reasonable and beneficial.

At the present status of this case the issue of apportionment has not been presented and this Court has taken no evidence directed to establishing whether such water uses are reasonable or unreasonable as to amount of water used in the light of the rights which may exist as to such water and this issue is left open, is not decided herein, and shall be litigated if and when in the future it becomes necessary to do so.

## XVIII

That all ground waters found within areas of basement complex or weathered basement complex as depicted on U. S. Exhibits 15E and 15L do not add to, support, or contribute to the Santa Margarita River and are local, vagrant, percolating waters and not a part of said River or any tributary thereto.

## XIX

There is attached hereto, marked Exhibit ____, and made a part of these findings by reference the names of the apparent owners, description of their properties, their gross, and present irrigable acreage, the wells which are located upon

10

15966

their properties, and other pertinent information concerning their properties which overlie the areas of younger and older alluvium as depicted on U. S. Exhibit 15L and/or which are riparian to any surface flow of water in said area tributary to the Santa Margarita River.

XX

That with the exception of limited areas of surface streams there is surface water only during periods of precipitation or immediately thereafter, and thus, the right of riparians to use said surface water in said areas on riparian lands is illusory in that there is little if any need for said surface waters during the limited period that it physically exists.

XXI

That outside said ground water area there are areas of younger alluvial deposits other than such deposits in Murrieta and Pauba Valleys which contribute waters to said ground water area; that such alluvial deposits are depicted on U. S. Exhibit 15L and are located in Santa Gertrudes, Warm Springs, Cole Canyon, Slaughterhouse Canyon and Wolf Valley-Pechango Creek; that all said ground waters within the younger alluvial deposits in Santa Gertrudes, Warm Springs, Cole Canyon, and Slaughterhouse Canyon are percolating waters but add to and support Murrieta Creek and the ground waters within the alluvial deposits in Murrieta Valley; that all said ground waters within the younger alluvial deposits in Wolf Valley-Pechango Creek are percolating waters but add to and support Temecula Creek and the ground waters within the alluvial deposits in Pauba Valley.

CONCLUSIONS OF LAW

I

That all ground waters which are located within the areas depicted as being of basement complex or weathered

11

1 basement complex on U. S. Exhibit 15L are not a part of the
2 Santa Margarita River and said ground waters do not add to,
3 contribute to nor support said River or any tributaries thereto.

II

5 That all surface flows of waters on any of the lands
6 depicted on U. S. Exhibit 15L are a part of the Santa Mar-
7 garita River.

III

9 That the owners of lands within the ground water area
10 shown on U. S. Exhibit 277 and described in U. S. Exhibit 277A
11 and as further listed and described individually on Exhibit____
12 have riparian or overlying rights, or both, in the common
13 supply of the Murrieta-Temecula ground water area and of the
14 Santa Margarita River stream system to divert, extract or
15 produce water therefrom for reasonable and beneficial uses on
16 their respective overlying or riparian lands.
17 That to the extent that any of said lands are riparian
18 to any stream tributary to the Santa Margarita River such land
19 is specifically described in Exhibit _____.

IV

21 That to the extent that any land which does not overlie
22 the said ground water area but has an overlying right to the use
23 of waters therein pursuant to Conclusion of Law V, said lands
24 are described in Exhibit _____.

V

26 The owners of lands which overlie the ground water area
27 as set forth in Conclusion of Law IV above have an overlying
28 right to use said ground waters on any of their lands which are
29 within the Santa Margarita River watershed and which are in-
30 cluded within the smallest tract of land held under one chain
31 of title a part of which overlies said ground water area.

12

## VI

That the ground waters within the ground water area as shown on U. S. Exhibit 277 and as described in U. S. Exhibit 277A are percolating waters not in a known and defined channel but said waters add and contribute to the Santa Margarita River.

## VII

The rights of all owners of overlying lands depicted and described in U. S. Exhibits 277 and 277A and the rights of all owners of riparian land as set forth and described in Exhibit _____ are correlative to each other and correlative to the rights of owners of all riparian and overlying lands upstream as the waters upon or within the same are found to contribute to or add to the ground waters of the Murrieta-Temecula ground water area or to the surface waters of Murrieta or Temecula Creeks or tributaries thereto, as the same may be found by this Court in other Findings of Fact affecting such upstream area.

That the rights of such overlying or riparian owners are correlative to all other downstream overlying rights to ground waters which add to or contribute to the Santa Margarita River and to riparian rights to the Santa Margarita River below the confluence of Murrieta and Temecula Creeks at Temecula Gorge as the same may be found in other findings in this case.

## VIII

Such overlying and riparian rights are abstractly correlative. The owner of a correlative right shares equitably with other correlative owners in the common supply of water available for use. As used herein "correlative" means mutually related rights and duties pertaining to the land involved and to either the common supply of the Santa Margarita River or that segment of the River system, or ground waters which add to or

13

support the River system, as to which the overlying or riparian, or both overlying add riparian, rights or duties attach.

The proper exercise of such rights will not necessarily involve the same quantity of water, character of its use, method of diversion or extraction, or availability of supply.

This Court, if called upon later to decide upon the proper exercise of such right, will consider all factual matters pertaining thereto, including, but not limited to the quantity of water, type of use, method of diversion or extraction, availability of supply, source of supply, any term or condition of use peculiar to the individual parcel of land under consideration, the location of the parcels involved as to lying over the ground water area, or being upstream, downstream or gradient.

In the exercise of its continuing jurisdiction this Court will judge and pass upon the lawful exercise of such rights based on the facts as they may then appear and pursuant to California law.

IX

At the present status of this case, the issue of apportionment, or the quantity or proportion of water to which any of the lands depicted on U. S. Exhibit 277 or described in U. S. Exhibit 277A and Exhibit _____ may be entitled, has not been presented and this Court has taken no evidence directed to establishing whether any water uses are reasonable or unreasonable as to amount of water used in the light of rights which may exist as to such waters, and this issue is left open, is not decided herein, and shall be litigated by this Court if and when in the future it becomes necessary to do so.

INTERLOCUTORY JUDGMENT

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that all ground waters which are located within the areas of basement

14

complex or weathered basement complex as depicted on U. S. Exhibit 15L are not a part of the Santa Margarita River or any tributaries thereto, and that said waters do not add to nor contribute to said river or any of its tributaries.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all surface flows of water on any of the lands depicted on U. S. Exhibit 15L are a part of the Santa Margarita River.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the owners of the land specifically described in Exhibit _____ attached hereto and therein found to be riparian to a surface stream have riparian rights thereto.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the owners of land which overlies the ground water area as found herein have overlying rights to the use of such water on said overlying land or on land which is not overlying said ground water area but which is within the Santa Margarita River watershed and which is included in the smallest tract of land held under one chain of title a part of which overlies said ground water area.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the issue of apportionment has not been presented and that this Court has taken no evidence directed to establishing whether such water uses are reasonable or unreasonable as to amount of water used in the light of the rights which may exist as to such waters, and this issue is left open, is not decided herein, and shall be litigated by this Court if and when in the future it becomes necessary to do so.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Judgment is interlocutory, is not final and is subject

- - -

- - -

15

15971

to modification or change either with or without notice by this Court at any time until entry of final decree in this case.

Dated:_____, 1961

_____
                              JUDGE