```
 1 | RAMSEY CLARK
   | Assistant Attorney General
 2 | Department of Justice
   | Washington 25, D. C.
 3 |
   | Attorney for the
 4 | United States of America
```

FILED

JUN 30 1961

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By ................... Deputy

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) | No. 1247-SD-C |
|---|---|---|
| Plaintiff, | ) | NOTICE |
| v. | ) | OF HEARING RESPECTING CLAIM OF UNITED STATES OF AMERICA THAT "TITLE RESIDES IN THE UNITED STATES OF AMERICA TO PERFECTED APPROPRIATIVE RIGHTS TO WATERS OF THE SANTA MARGARITA RIVER BASIN FOR USE OUTSIDE THE WATERSHED OF THE SANTA MARGARITA RIVER |
| FALLBROOK PUBLIC UTILITY DISTRICT, et al., | ) | |
| Defendants. | ) | |

PLEASE TAKE NOTICE that the United States of America will bring on for hearing the question of the claim that "Title Resides in the United States of America To Perfected Appropriative Rights To Waters of the Santa Margarita River Basin for Use Outside the Watershed of the Santa Margarita River," all as set forth in the attached Memorandum of Points and Authorities, before this Court in Court Room #2, United States District Court, 325 West F Street, San Diego 1, California, on the 25th day of July, 1961, at 10:00 o'clock in the forenoon of that day, or as soon thereafter as counsel can be heard.

UNITED STATES OF AMERICA

RAMSEY CLARK
Assistant Attorney General

WILLIAM H. VEEDER
Dated: June 30, 1961.     Attorney, Department of Justice

6495

```
1  RAMSEY CLARK
   ASSISTANT ATTORNEY GENERAL
2    OF THE UNITED STATES OF AMERICA
   Washington 25, D. C.
3
   Attorney for the UNITED STATES OF AMERICA
4
```

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | NO. 1247-SD-C |
| FALLBROOK PUBLIC UTILITY DISTRICT, ) ET AL., ) | |
| Defendants. ) | |

MEMORANDUM OF POINTS AND AUTHORITIES

RESPECTING:

TITLE RESIDES IN THE UNITED STATES OF AMERICA

TO PERFECTED APPROPRIATIVE RIGHTS TO WATERS

OF THE SANTA MARGARITA RIVER BASIN FOR USE

OUTSIDE THE WATERSHED OF THE SANTA MARGARITA RIVER

6496

SUBJECT INDEX

| | Page |
|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIES RESPECTING: TITLE RESIDES IN THE UNITED STATES OF AMERICA TO PERFECTED APPROPRIATIVE RIGHTS TO WATERS OF THE SANTA MARGARITA RIVER BASIN FOR USE OUTSIDE THE WATERSHED OF THE SANTA MARGARITA RIVER | |
| SANTA MARGARITA RIVER GROUND-WATER BASIN | 1 |
|     Geographical and Geological Facts | 1 |
|     Geological Features of Santa Margarita River Ground-Water Basin | 2 |
|     Alluvial Fill - Lenticular in Character | 2 |
|     Upper Member of Alluvium and Lower Member of Alluvium in Santa Margarita River Basin | 3 |
|     Percolating Waters In The Santa Margarita River Basin | 3 |
| HISTORICAL USE OF WATERS FROM SANTA MARGARITA RIVER BASIN | 4 |
| TITLE RESIDES IN THE UNITED STATES OF AMERICA TO PERFECTED APPROPRIATIVE RIGHTS TO THE USE OF THE PERCOLATING GROUND WATERS OF THE SANTA MARGARITA RIVER BASIN PRIOR IN TIME TO ANY MAJOR APPROPRIATIVE CLAIMANTS FROM THE SANTA MARGARITA RIVER | 6 |
| CONCLUSION | 13 |

\* \* \* \* \* \* \*
   \* \* \* \* \*
    \* \* \*
     \*

# SANTA MARGARITA RIVER
# GROUND-WATER BASIN

Geographical and Geological Facts:

Title to the Santa Margarita River Ground-Water Basin resides in the United States of America. That invaluable property was acquired by it in the years 1942-1943. Recharge for that Basin comes from the Santa Margarita River which flows across the Basin for approximately ten (10) miles. It is the major source of water supply for Camp Pendleton and the sole source of supply for the United States Naval Hospital. It is the farthest downstream of many basins and ground-water bodies within the watershed of the Santa Margarita River.

Located in northern San Diego County, California,[1] it has its eastern extremity approximately eleven (11) miles from the Pacific Ocean. Roughly that easternmost point is at the proposed De Luz Dam site in the Northwest Quarter (NW 1/4) of Section thirty-two (32), Township nine (9) South, Range Four (4) West. It extends westward to a point on the Santa Margarita River referred to as the Ysidora Narrows. Those Narrows are located in the southwestern corner of Section two (2), Township eleven (11) South, Range five (5) West.

There are three areas of the Santa Margarita River Basin known as Upper, or O'Neill Unit; Chappo or Home Ranch Unit; and Ysidora or Lower Unit. Those segments of the Basin are geologically and hydrologically interconnected and interrelated.

Areal extent of the Santa Margarita River Basin, all within Camp Pendleton, is approximately four thousand six hundred (4,600) acres. It varies in widths from a maximum of two and one-half (2 1/2) miles in the Chappo Unit, to its narrowest point of approximately one-quarter (1/4) mile at the above-described Ysidora Narrows. By units the surface areas of the Santa Margarita River Basin are as follows:

|               |   |       |       |
|---------------|---|-------|-------|
| Upper Unit    | - |   860 | acres |
| Chappo Unit   | - | 2,640 | acres |
| Ysidora Unit  | - | 1,080 | acres |
|               |   | 4,580 | acres |

---

[1] See U.S.A.-Pl's Exhibits 38; 38a; 39; 40; Testimony of G. F. Worts, Tr. Vol. 38, pages 3,913 et seq.

Geological Features of
Santa Margarita River
Ground-Water Basin:

The Santa Margarita River Ground-Water Basin is a three dimensional segment of the earth's crust. Where the Santa Margarita River emerges from the canyon area, approximately eleven (11) miles from the Pacific Ocean, it enters upon the alluvial plain to be described. In that area it is underlain with basement complex of which much of the Santa Margarita River watershed is comprised. Proceeding coastwards, the Basin is underlain with the La Jolla formation. That formation, like the basement complex, yields little water. La Jolla formation extends beneath and along the sides of the Basin area from approximately midway down the Upper Basin area throughout the Chappo Basin area, across much of the Ysidora area where San Onofre breccia is encountered. Below Ysidora Narrows the lagoon area is underlain with San Mateo formation. Basement complex and La Jolla formation which underlay and comprise the sides of the Basin are relatively impermeable.

Alluvial Fill -
Lenticular In Character:

Alluvial fill has been deposited in the above-described Basin which was incised by the Santa Margarita River. From the point where that stream debouches from the mouth of the canyon, to the Ysidora Narrows there is a steady increase in the depth of that sedimentary fill. Near De Luz Dam site, at an elevation of one hundred fifty (150) feet above sea level, basement complex is reached at approximately fifty (50) feet below land surface. Proceeding coastwards the depth through the alluvium to bedrock rapidly increases. A mile below the point last mentioned wells have been drilled in the fill to depths varying from one hundred twenty (120) feet to one hundred and forty-two (142) feet. Throughout the deeper areas of the Chappo Unit the alluvium is approximately one hundred ninety-five (195) feet in depth, feathering out to shallow limits as the edge of the Basin is approached. Greatest total depth of approximately three hundred (300) feet is attained at the western extremity of the Basin.

Typical of the California coastal basins, the alluvial fill deposited by the Santa Margarita River is coarse at the point that stream leaves the canyon and enters upon the broad plain described above. As a consequence there are gravel and sand deposits from the surface to bedrock in much of the Upper Unit of the Basin. Nevertheless in that segment of the Basin are found clay lenses interspersed throughout the sand and gravel.

Finer textured sand and clay are found at the surface of the Chappo and Ysidora Units. At relatively shallow depths in the Units last mentioned are found lenses of clay and silty sand. Half way down Chappo Unit at depths of approximately one hundred (100) feet are found cobbles and gravel. Farther down the valley are found areas of clay and clay silt. Layers of clay of considerable thickness are in this reach of the Basin. Likewise there are found in the Lower Ysidora area marine deposits of fossil shells.

Upper Member of Alluvium and
   Lower Member of Alluvium in
   Santa Margarita River Basin:

Alluvial deposits in the Santa Margarita River Basin have been classified as upper member and lower member. They have been thus characterized in that manner because the upper member deposits were finer than the lower. Those factors are of importance from the standpoint of the receptive nature of the deposits to Santa Margarita River water and the movement of that water in the alluvial fill. For example, the interaction between deep and shallow wells in the same general areas is largely controlled by the difference in the permeability and lenticular nature of the two strata of alluvium. In certain areas there is a marked separation between the ground waters in the upper and lower members of alluvium.

Percolating Waters In The
   Santa Margarita River Basin:

Principal source of recharge for the water-bearing strata of the Santa Margarita River Basin, as stated above, is the Santa Margarita River. That stream, except during and immediately following heavy precipitation, is intermittent both as to time and place. Bed of the stream is highly permeable with the result that the water carried in it readily enters the alluvial fill,

6500

spreading out in all directions from the surface stream, recharging the alluvium which is dewatered either through the natural forces of evaporation and evapotranspiration or by the artificial means of pumping. Rate of progression and the course of the waters, once they enter the alluvium, are controlled by a variety of factors. Heterogeneous nature of the deposits is a prime factor in that regard. Speed of ground-water movement and its direction vary with permeability of the clays, sands and gravel which it encounters. For example, those elements enter into the rapidity with which it progresses laterally to recharge areas in Chappo Unit which contains alluvium at relatively great distances from the bed of the stream. Vertical direction of the waters, once they leave the Santa Margarita River and enter the alluvial fill, is likewise involved. Again the characteristics of the deposits through which the waters must proceed govern the rapidity with which recharge will enter the dewatered deeper aquifers. In the lower reaches of the Basin ground-water movement is greatly retarded by the low permeability of very extensive clay deposits which are encountered.

Due to the lenticular nature of the alluvial deposits and general characteristics of the Santa Margarita River Ground-Water Basin it is evident that the large quantities of percolating waters found in it are not in a well defined subterranean channel. Rather they are widely dispersed and suspended in the water-bearing strata that they permeate. That those water-bearing sedimentary deposits are fed by the Santa Margarita River and in turn feed, add to, contribute to and support the flow of that stream is indisputable. Those percolating ground waters are part of the waters of the Santa Margarita River stream system.

### HISTORICAL USE OF WATERS FROM SANTA MARGARITA RIVER BASIN

Waters pumped from the Santa Margarita River Basin were used to irrigate large areas of lands prior to the time that the United States of America acquired the properties in question. An extensive irrigation system constructed by the Rancho Santa Margarita, predecessor of the United States of America, was in full operation during the irrigation season 1939. There

- 4 -

6501

were approximately seventeen hundred (1,700) acres irrigated by means of waters from the Basin. Of that aggregate, twelve hundred (1,200) acres were situated <u>outside</u> of the watershed of the stream in question; approximately six hundred (600) within the watershed. [2/] Since the United States of America acquired the Santa Margarita River Basin it has pumped from it large quantities of water for both military and agricultural uses. Approximately sixty percent (60%) of the waters used by the United States of America from the Santa Margarita River Basin are exported from the watershed of the Santa Margarita River and applied to beneficial uses. For virtually twenty (20) years that has been the practice. [3/] Exact quantities and periods of use of Santa Margarita River Basin water by the United States of America are a matter of record in this case. Those statistics are separated as to quantities of water used within and without the watershed. Those diversions and uses are several years prior in time to any of the substantial claims to appropriative rights to the surface flow of the Santa Margarita River. For example, Vail Company's application to appropriate waters from Temecula Creek at Nigger Canyon is dated August 16, 1946; [4/] whereas Fallbrook's earliest applications are dated October 11, 1946. [5/] Appropriate findings are being formulated reflecting the respective dates, quantities of water utilized and measure of rights which are claimed among the parties. The recited facts suffice for the purpose of bringing into operation here the principles of law which will be reviewed in the paragraphs which succeed.

---

2/ U.S.A.-Pl's Exhibits 76 and 77; Testimony of Henry W. Witman, Tr. Vol. 62, pages 6994 et seq.

3/ U.S.A.-Pl's. Exhibits 150, 150A; 151, 151A.

4/ Vail Company's Exhibit A.

5/ Fallbrook's Exhibits D and E.

- 5 -

6502

TITLE RESIDES IN THE UNITED STATES OF AMERICA
TO PERFECTED APPROPRIATIVE RIGHTS TO THE USE
OF THE PERCOLATING GROUND WATERS OF THE
SANTA MARGARITA RIVER BASIN
PRIOR IN TIME TO ANY MAJOR APPROPRIATIVE CLAIMANTS
FROM THE SANTA MARGARITA RIVER

Sharp differentiation exists in the California law between the appropriation and adjudication of rights to the use of waters which are in well defined channels, either surface or subterranean, and percolating waters of the nature found in the Santa Margarita River Basin. Reference in that regard is first made to the provisions for statutory adjudications in the State in question.[6] There it is provided that:

> "Stream system defined. As used in this chapter, 'stream system' includes stream, lake, or other body of water, and tributaries and contributory sources, but does not include an underground water supply other than a subterranean stream flowing through known and definite channels."[7]

That phase of California's Water Code declares with specificity that it doesn't embrace the rights to the use of Santa Margarita River Basin waters.

There is reflected in the provisions of the Code in this jurisdiction respecting the appropriation of rights to the use of water the same theory as is stated in the above quoted proviso respecting statutory adjudications. It is provided:

> "Terms referring to surface water and subterranean streams. Whenever the term stream, lake, or other body of water, or water occurs in relation to applications to appropriate water or permits or licenses issued pursuant to such applications, such term refers only to surface water, and to subterranean streams flowing through known and definite channels."[8]

(Emphasis supplied)

---

[6] Not to be confused with the general powers in equity of a court to adjudicate rights inter sese.

[7] West's Annotated California Code, Water, Sec. 2500.

[8] Ibid., Sec. 1200.

6503

This is a correct and authoritative statement on the subject:

"Appropriation is not limited to the taking of water from surface streams on public land for nonriparian purposes. Water may be appropriated for other than riparian and overlying uses, and the taking may be of underground water in the amount reasonably needed for beneficial purposes. * * *

"As between appropriators of underground waters, the one first in time is first in right * * * . The situation of appropriators of water from underground sources is substantially the same as appropriators from surface streams * * *.

"There is no statutory procedure for the appropriation of percolating water. The Water Code expressly limits the procedure therein set forth to surface water and subterranean streams flowing through known and definite channels." [9]

Restatement of the precept enunciated in the preceding quotation is contained in these words:

"<u>Method of appropriation</u>. There never has been any statutory procedure in California for the appropriation of percolating water. * * *

"The only way in which percolating water can be appropriated in California is by taking the water and applying it to beneficial use." [10]

Further support of a general nature of the last cited authorities will be found in other references. [11]

Absence of a statutory procedure in California for the appropriation of rights to the use of water from percolating ground waters was noted in the year 1903 in a leading case on the subject. [12]  Respecting that state of

---

[9]  51 Cal. Jur.2d, Waters, Sec. 401, pages 870-871.

[10] The California Law of Water Rights, Hutchins, P. 456 et seq.

[11] 45 C. L. R. 688, 693 (1957);
     1 Stan. L. R., 1, 6, 18 (1948).

[12] Katz v. Walkinshaw, 141 Cal. 116; 74 Pac. 766 (1903).

6504

the law this comment was made:

> "There is no statute on this subject, as there now is concerning appropriations of surface streams, but the case is not without precedent." [13]

It then declared that law governing appropriations before the Water Code respecting "visible streams will, in general, be found applicable to such appropriations of percolating waters, either for public or private use, on distant lands, and will suffice for their protection as against other appropriators."

Repeatedly that doctrine has been reiterated by the California courts. Leading case applying the tenet of the law enunciated in the decision of Katz v. Walkinshaw contains a lucid and full review of the principles which govern in California on the subject. [14] There it is declared:

> "As between appropriators [of percolating ground waters] * * * the one first in time is the first in right, and a prior appropriator is entitled to all the water he needs, up to the amount that he has taken in the past, before a subsequent appropriator may take any." [15]

Turning then to the question of the lack of statutory procedure for the acquisition of appropriative rights to the use of percolating ground waters, the Highest Court of California considered a proposition placing the matter squarely at issue. That issue arose by the assertion of the applicability of the three (3) year forfeiture statute relating to surface waters subject to the statutory procedure for appropriating rights to the use of water. It ruled as follows:

> "This section [statutory forfeiture], however, is not applicable here. The primary purpose of the [Water Commission] act was to create a system for issuing licenses and permits for appropriation of surplus [surface] water * * *. Water in an underground basin is not embraced by the licensing system,

---

[13] Katz v. Walkinshaw, 141 Cal. 116, 135; 74 Pac. 766 (1903).
[14] Pasadena v. Alhambra, 33 C.2d 908, 926; 207 P.2d 17 (1949).
[15] Ibid., 33 C.2d 908, 926; 207 P.2d 17 (1949).

- 8 -

6505

because section * * *[1200 of the Water Code] provides that the term 'water', as used in sections of the act relating to permits or licenses, 'shall be interpreted to refer only to surface water, and to subterranean streams flowing through known and definite channels.'"

Continuing, the Court stated:

"There is no claim that any of the [appropriative] rights to water involved in the present case were obtained under such a permit or license, and the ground water in the Raymond Basin Area does not flow in known and definite channels within the meaning of section * * * [1200 of the Water Code]" [16/]

Other leading cases involving perfected appropriative rights to the use of ground waters proceeded upon the same basic precepts of the law recognized in the Pasadena v. Alhambra case. [17/] In the decision last cited the City of Lodi had perfected appropriative rights in a ground-water basin the source of recharge of which was the Mokelumne River. Those appropriations were prior by many years to defendant's applications to appropriate the surface water in the stream. Plaintiff in that case, City of Lodi, directly parallels the status, here, of the United States of America. In this case the claimed appropriative rights to export ground waters from the Santa Margarita River Basin are threatened by claims to appropriate surface waters of the Santa Margarita River by the Fallbrook Public Utility District, Vail Company and other junior appropriators situated upstream from the ground-water basin. Significantly the Supreme Court of California states:

---

16/  Pasadena v. Alhambra, 33 Cal.2d 908, 933-934; 207 P.2d 17 (1949).

Section 1200 of the Water Code: "Terms referring to surface water and subterranean streams. Whenever the terms stream, lake or other body of water, or water occurs in relation to applications to appropriate water or permits or licenses issued pursuant to such applications, such term refers only to surface water, and to subterranean streams flowing through known and definite channels."

17/  City of Lodi v. East Bay Mun. Utility District, 7 Cal.2d 316; 60 P.2d 439 (1936).

- 9 -

6506

"The City of Lodi is an appropriator for municipal purposes from the underground waters supplied by the Mokelumne River, <u>prior in time and right to any claim of the District.</u> * * * The District is a subsequent appropriator upstream from Lodi."[18]/

Albeit far upstream above the ground-water basin.   (Emphasis supplied) It was on that background that the City of Lodi's appropriative rights to the ground waters were declared prior and paramount to those of the defendant, junior applicant to appropriate; that decision being predicated wholly upon the protection of vested rights perfected <u>solely by the pumping and beneficial use of water from the percolating ground waters recharged by a surface stream</u>.

In these terms the principles respecting appropriative rights to percolating ground waters acquired only through the pumping and use of those waters has been stated:

"* * * their right to take water from the basin for public use is substantially the same as that of several appropriators from a surface stream * * * the respective priorities of each water right should be adjudged, so that if in the future the supply falls below the quantity necessary for all, he who has the prior right may have his preferred right protected." [19]/

Specifically the Court ruled:

"<u>With respect to the waters taken from the artesian basin for public use, each party stands in the character of an appropriator, and its rights therein are to be determined by the law relating to appropriators</u> * * *." [20]/

(Emphasis supplied)

Substance of that last quoted and emphasized authoritative excerpt is that the law of California recognizes a perfected appropriation becomes vested upon the diversion and application of ground water to a non-overlying use. Equally clear from that authoritative statement is the principle that in

---

18/  City of Lodi v. East Bay Mun. Utility District, 7 Cal.2d 316, 335; 60 P.2d 439 (1936).
19/  San Bernardino v. Riverside, 186 Cal.7, 20; 198 Pac. 784 (1921).
20/  Ibid., 186 Cal. 7, 30-31; 198 Pac. 784 (1921).

6507

determining priorities there is applicable the fundamental principle that "First in time is first in right."

Citing the decision last referred to, the Supreme Court in the year 1949 declared:

> "As between appropriators, however, the one first in time is the first in right, and a prior appropriator is entitled to all the water he needs, up to the amount that he has taken in the past, before a subsequent appropriator may take any."

Continuing, California's Highest Court further declared:

> "The principal takers of water * * * have either exported water or have used it within the Western Unit for municipal purposes or for sale to the public, and <u>their taking, when commenced, was entirely appropriative</u> * * *.
>
> "* * * the rights of the appropriators would depend on priority of acquisition under the rule that the first appropriator in time is the first in right. The latest in time of the appropriations would then be the first to be curtailed * * *." [21]/ (Emphasis supplied)

Two things are manifest from the opinion last cited:

(a) It reaffirms the principles of the case of <u>San Bernardino</u> v. <u>Riverside</u>, respecting the acquisition of appropriative rights for non-overlying uses, declaring that as among them the first in time is the first in right;

(b) It applies the principle that the pumping and application of the ground water without more - without filing of applications to appropriate with the State - initiates and perfects the appropriation.

---

[21]/ Pasadena v. Alhambra, 33 Cal.2d 908, 926, 927-928; 207 P.2d 17 (1949).

- 11 -

6508

Simply stated, California's water law for the acquisition of ground waters of the character found in the Santa Margarita River Basin underlying Camp Pendleton is in exactly the same status as rights to surface flow acquired prior to the enactment of the laws governing the appropriation of surface water flowing in well defined channels. Pertinent, as a consequence, is a brief review of the basic tenets which prevailed antecedent to the enactments governing statutory appropriations.

Important is the fact that this Court has held that prior to 1914 the diversion, storage and application of water to a beneficial use invested the Rancho Santa Margarita with an appropriative right for Lake O'Neill with a priority of 1883. That right has been succeeded to by the United States of America. Basis for that ruling was that prior to the Water Commission Act, which became effective in 1914, a valid non-statutory appropriation could be acquired by the actual diversion, storage, and application of water to a beneficial use. [22] California's law respecting the acquisition of appropriative rights prior to the procedure established by the Code is succinctly stated in these terms:

> "* * * in order to make a valid appropriation before the adoption of the code, no notice of the claim was required to be posted or recorded. It was sufficient that the water was actually appropriated and used for the intended purpose before any one else intervened and claimed a right to it." [23]

Valid appropriations of percolating ground waters pursuant to State law are now acquired as surface rights were originally acquired. Otherwise stated, a valid right in the Santa Margarita River Basin was acquired by the United States of America, and by its predecessor in interest, through the act of pumping that water from the Basin and applying it to a beneficial use. California's Highest

---

[22] Kelly v. Natoma Water Co., 6 Cal. 105, 108 (1856);
Lower Tule River Ditch Co. v. Angiola Water Co., 149 Cal. 496; 86 Pac. 1081 (1906);
Nevada County and Sacramento Canal Co. v. Kidd, 37 Cal. 282, 310, 314 (1869).

[23] De Necochea v. Curtis, 80 Cal. 397, 405-406; 20 Pac. 563; 22 Pac. 198 (1898).

Court has cogently stated the reason why it adopted the rule reviewed above and protected appropriations of percolating water from Basins of the nature of the Santa Margarita River Basin underlying Camp Pendleton:

> "Public interest requires that there be the greatest number of beneficial uses which the supply can yield, and water may be appropriated for beneficial uses subject to the rights of those who have a lawful priority. * * * Any water not needed for the reasonable beneficial uses of those having prior rights is excess or surplus water. In California surplus water may rightfully be appropriated [as has been done by the United States of America and its predecessor] on privately owned land for nonoverlying uses, such as devotion to a public use or exportation beyond the basin or watershed." [24]

As a consequence it is manifest that there resides in the United States of America vested and perfected appropriative rights to the use of the waters of the Santa Margarita River Basin which are entitled to the fullest protection under the laws of the State of California. Those appropriative rights are prior in time and right to all subsequent applications to appropriate rights to the use of surface waters of the Santa Margarita River.

## CONCLUSION

The United States of America is entitled to have this Court adjudge, declare and determine that its appropriative rights to the use of the waters of the Santa Margarita River Basin are prior and paramount to any of the applications and permits of the Fallbrook Public Utility District and Vail Company. That conclusion would, of course, ensue on all other appropriations based upon applications filed after the date when water was

---

[24] Pasadena v. Alhambra, 33 Cal.2d 908, 925-926; 207 Pac.2d 17 (1949).

first diverted. Those dates and the measure of the appropriative rights of the United States of America in the Santa Margarita River Basin will be fixed, it is respectfully submitted, based upon the record and the Findings emanating from it.

UNITED STATES OF AMERICA

RAMSEY CLARK,
Assistant Attorney General

WILLIAM H. VEEDER,
Attorney, Department of Justice

Dated: June 30, 1961