8/8/61

Lodged Aug 8-1961

#42

CLAYSON, STARK, ROTHROCK & MANN
DONALD D. STARK
Security Bank Building
Corona, California
REdwood 7-1910

OWEN W. STRANGE

Attorneys for Defendants
Katharine C. Gibbon and
William W. Cottle

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. FALLBROOK PUBLIC UTILITIES DISTRICT, et al., Defendants. | Civil No. 1247-SD-C<br>PROPOSED FINDINGS* AND CONCLUSIONS RE DEFENDANTS GIBBON AND COTTLE |

FINDINGS OF FACT

I. GENERAL

A. SCOPE AND NATURE OF FINDINGS.

1. Parties and Parcels Primarily Involved. These findings relate primarily to the lands owned by Defendants William W. Cottle and Katharine C. Gibbon, being designated, described** and identified in Exhibits 229 and 230, respectively.

*These findings are annotated to the transcript and exhibits in the record. The proposed form of findings and conclusions themselves may, therefore, be read by deleting all matters typed in red.

**Although the said parcels are described in said exhibits sufficiently for general identification, the correct legal descriptions are as set forth in the answers of said defendants, and as stated in full in Findings No. 6 and 8.

2. Geographic and Hydrologic Area Covered by Findings. The specific area covered by these findings includes portions of Sections 19, 20, 29 and 30, T 8 S, R 1 E, S.B.B. & M. Said area is traversed by Temecula Creek from approximately the middle point in the Southwest quarter of said Section 29, downstream in a Northerly and Westerly direction to the point where said creek crosses the Westerly boundary of the East half of the Southwest quarter of said Section 19. (Exhibit Gibbon-Cottle "A") The diversion works and transmission facilities (Exhibit Gibbon-Cottle "A") and most of the lands (Exhibit Gibbon-Cottle "B") which are the subject of these findings lie Northerly and Easterly of Temecula Creek in said area and Southerly of Highways 71 and 79. Attached hereto as Exhibit "A" to these findings, and by this reference made a part hereof, is a composite map of the area involved, based upon the various exhibits introduced with respect thereto. (Exhibits 29-R, 229, 230, Gibbon-Cottle "A" and "B") Said area is commonly known and referred to as Radec Valley or Radec Basin.

B. GEOLOGY AND HYDROLOGY.

3. Radec Basin. Radec Basin, which underlies the Radec Valley, is a topographic basin (Mann Tr. p. 12422) in the bedrock or basement complex. At the southeastern, or upstream end, and at the northwestern, or downstream end, of the valley, Temecula Creek flows across bedrock outcroppings at or near the surface. (Mann Tr. p. 12422) The topographic basin which underlies the valley is filled primarily with Temecula arkose, a formation consisting largely of sands, some gravels and minor amounts of clay. (Mann Tr. p. 12413) For purposes of simplification, Temecula arkose is included within the generalization of "older alluvium". (Mann Tr. p. 12415) There is

also a shallow strip of recent alluvium following the edge of the steep topography on the southwest side of Radec Basin and lying immediately adjacent to Temecula Creek as it crosses Radec Valley. (Mann Tr. p. 12413) The recent alluvium extends to depths of 40 feet below the surface, whereas the older alluvium is found to be as much as 365 feet in depth. (Mann Tr. p. 12410)

4. Faulting and Its Effects. The Radec topographic basin is subject to a complex of faults, running across the basin with a general northwesterly trend. (Mann Tr. p. 12410) The major fault in this complex is the so-called Aguanga Fault. (Mann Tr. p. 12426) Said faulting has affected both the basement complex and the older alluvium (Mann Tr. p. 12410), and has created barriers of low permeability in the older alluvium. (Mann Tr. p. 12417) There exists virtually no underground flow of water to the Temecula Creek from those portions of the basin lying Northerly and Easterly of said complex of faults. (Mann Tr. p. 12428) The flow of water, if any, from the recent alluvium to the older alluvium northerly and easterly from said faults is at a low and very restricted rate. (Mann Tr. p. 12417)

5. Gibbon and Cottle Wells. There are six wells on the Gibbon lands and two wells on the Cottle lands. The Valley Well, the Corral Well, and the Field Well (See Exhibit "A" hereto) all pump from older alluvium lying northerly and easterly of said fault lines. There is no significant recharge for any of said three wells from Temecula Creek or the recent alluvium through which it flows. (Mann Tr. p. 12421-3)

## II. RIPARIAN RIGHTS

6. Gibbon Lands--Description and Ownership. The following described real property (herein referred to as the "Gibbon lands") is owned in fee simple by Katharine C. Gibbon:

1. The Southeast 1/4 of the Northwest 1/4 of the Southeast 1/4;

2. The South 1/2 of the Northeast 1/4 of the Northwest 1/4 of the Southeast 1/4;

3. The East 1/2 of the Southwest 1/4 of the Southeast 1/4;

4. The Northeast 1/4 of the Southeast 1/4 except that portion lying northeasterly of the center line of the State Highway;

5. The Southeast 1/4 of the Southeast 1/4, all in Section 19, Township 8 South, Range 1 East, S.B.B.M.;

6. That portion of the Northwest 1/4 of the Southwest 1/4 of Section 20, Township 8 South, Range 1 East, S.B.B.M. lying southwesterly of the center line of the State Highway;

7. The Southwest 1/4 of the Southwest 1/4 of Section 20, Township 8 South, Range 1 East, S.B.B.M.;

8. The Northwest 1/4 of the Northwest 1/4; and

9. The Southwest 1/4 of the Northwest 1/4 of Section 29, Township 8 South, Range 1 East, S.B.B.M.;

10. The North 1/2 of the Northeast 1/4; and

11. The Southeast 1/4 of the Northeast 1/4 of Section 30, Township 8 South, Range 1 East, S.B.B.M.

7. Gibbon Lands--Riparian Character. The Gibbon lands contain 347.5 acres (Exhibit 230, p. 3) All of said land is riparian to Temecula Creek. (Exhibits 29-R, 230, Gibbon-Cottle A, B, and F through I, M and N)

15982

8. Cottle Lands--Description and Ownership. The following described real property (herein referred to as the "Cottle lands") are owned in fee simple by William W. Cottle:

All that certain real property situated in the County of Riverside, State of California, and particularly described as follows, to wit:

That portion of the Southwest quarter of the Northeast quarter of Section 19 lying Southerly of the State Highway.

That portion of the Southeast quarter of the Northwest quarter of Section 19 lying Southerly of the State Highway.

That portion of the East half of the Southwest quarter of Section 19 lying Southerly of the State Highway.

The West half of the West half of the Southeast quarter of Section 19.

The North half of the Northeast quarter of the Northwest quarter of the Southeast quarter of Section 19.

All in Township 8 South, Range 1 East, San Bernardino Base and Meridian.

9. Cottle Lands--Riparian Character. The Cottle lands contain 133.6 acres (Exhibit 229, p. 2), all of which land is riparian to Temecula Creek. (Exhibit 29-R, 229, Gibbon-Cottle A, B, and F through N)

10. Irrigable Acreage. The irrigable acreage within the Gibbon lands is 107.6 acres (Exhibit 230, p. 5), and the irrigable acreage on the Cottle lands is 62 acres. (Exhibit 229, p. 4)

11. Diversion Duty. Of the 107.6 irrigable acres on the Gibbon lands, 5.4 acres bear a reasonable average annual

diversion duty* of 4.2 acre feet per acre, and the remaining 102.2 acres bear a reasonable average annual diversion duty of 4.4 acre feet per acre. (Exhibit 230, p. 5) The average annual diversion duty for the irrigable acreage on the Gibbon land is 472.5 acre feet. Of the 62 irrigable acres on the Cottle lands, 59.1 acres bear a reasonable average annual diversion duty of 4.4 acre feet per acre, and the remaining 2.9 acres bear a reasonable average annual diversion duty of 4.2 acre feet per acre. (Exhibit 229, p. 4) The average annual diversion duty for the irrigable acreage on the Cottle land is 272.25 acre feet.

12. Non-irrigation Riparian Usage. In addition to those riparian lands classified as irrigable acreage, other portions of the Gibbon and Cottle lands are susceptible of supporting reasonable beneficial use of the waters of Temecula Creek for domestic use or other non-irrigation riparian development. (Rowe, Tr. pp. 12395, 12396) No specific evidence was offered and no finding is made as to the quantitative potential of such non-irrigation riparian usage on said Gibbon and Cottle lands.

III. APPROPRIATIVE RIGHTS

13. Priority of Appropriation. Pursuant to a notice of appropriation duly recorded in San Diego County on February 11, 1885 (Gibbon-Cottle Exhibit "O"), S. V. Tripp, predecessor in interest to defendants Gibbon and Cottle (Exhibits Gibbon-Cottle F through N), appropriated water from Temecula Creek for use on the Gibbon and Cottle lands for

*For qualification of the water duty figures as expressing merely a general watershed average, subject to variation for many factors, see cross-examination of Bowen re Exhibits 229 and 230 at Tr. pp. 12573-12588.

irrigation and domestic purposes. The construction of diversion and transmission facilities for said appropriation was prosecuted with due diligence after said date until their completion in 1897. (Tripp Tr. pp. 13439-40, 13471-74, 13476)

14. Appropriation from Government Lands. Said appropriation from Temecula Creek was made in the Southwest quarter of Section 29 T 8 S, R 1 E on United States government lands, prior to the issuance of any patents for said land. (Tripp Tr. p. 13442)

15. Description of Diversion Works. The diversion works for said appropriation were and are substantially as shown on Exhibit "A" hereto. The major features of said works are further described as follows:

(a) Diversion Dam. The surface waters of Temecula Creek are diverted by means of a small rock and earth dam situate in Section 29, T 8 S, R 1 E as shown on Exhibit "A" hereto. (From Exhibit Gibbon-Cottle "A", Rowe Tr. p. 12288) The structure is approximately 3 feet high and 40 feet in length. (Rowe Tr. p. 12288) The dam is subject to being washed out in major or capital floods but would survive the average flow on Temecula Creek. (Rowe Tr. p. 12289) Two 12 inch pipes are used to divert water into the pipeline and ditch hereafter described. (Rowe Tr. p. 12288) Another 12 inch pipe is used as an overflow, permitting water in excess of the capacity of the diversion pipeline and ditch to flow down Temecula Creek. (Rowe Tr. p. 12289)

(b) Pipeline and Ditch. The waters of Temecula Creek, when diverted through the diversion works above described, are carried along a course as

indicated on Exhibit "A" hereto. (Taken from Exhibit Gibbon-Cottle "A") Approximately the first 550 feet is carried in a 12 inch pipeline. (See crayon markings on Exhibit Gibbon-Cottle "A", Rowe Tr. p. 12386) The remaining portion of the facility is by open ditch extending on a gradual contour for a distance of approximately 1 1/2 miles. (Exhibit Gibbon-Cottle "A")

(c) Regulating Reservoirs. Reservoirs numbered 1 and 2, situate as indicated on Exhibit "A" hereof (Taken from Exhibit Gibbon-Cottle "A") are used in connection with the surface diversion through the above described diversion works, pipeline and ditch solely for purposes of regulation, but not for purposes of seasonal storage. (Gibbon Tr. p. 12513)

16. Quantitative Measure and Continuity of Right. Between 1885 and 1897 gradually increasing quantities of water were diverted through such works as were completed and reasonably and beneficially used on the Gibbon and Cottle lands. (Tripp Tr. p. 13438-56a) At all times after 1897, wher said diversion works were completed, there were reasonably and beneficially irrigated, pursuant to said appropriation, 35.8 acres*, by a diversion of an average of 4.4 acre feet per acre per year. (See Exhibits 229 and 230)

*"Q. [By Mr. Grover] After you completed the Upper Ditch about '97, what did you irrigate from the Upper Ditch?

"A. [By Tripp] All this land where they are irrigating now. Of course, they have some piped up there and a sprinkler system. But I never had that. I just irrigated what was under the Upper Ditch

* * * * * *

"Q. The land between the Upper and the Lower Ditches, is that what you irrigated with the Upper Ditch?

"A. Yes." (Tr. pp. 13475-6)

The irrigated fields between the Upper Ditch and the Lower Ditch and their acreages are as follows:

Said water was diverted at a rate up to the full capacity of said diversion works as the same now exists. *

17. Ownership of Appropriative Right. The said appropriative right is owned in fee simple and in equal shares by defendants Gibbon and Cottle. (Exhibits Gibbon-Cottle F through O; Cottle, Tr. p. 12450)

IV. PRESCRIPTIVE RIGHTS

18. Defendants Gibbon and Cottle have asserted a claim of prescriptive rights, based upon their use of the waters of the Santa Margarita-Temecula Rivers System on the Gibbon and Cottle lands. (See Argument by Grover, Tr. pp. 15,569-15,592; 15,597-15,613; 15,642-15,653.)

19. There is no practical method by which the thousands of small defendants in this action can actually and effectively be made aware of the implications of the claim of Defendants Gibbon and Cottle to prior and paramount prescriptive rights, of the nature argued for by counsel for said defendants. (Court Tr. pp. 15,592; 15,595)

20. There is insufficient evidence in the record from which the court can determine as of this time the available

| Field Designation per Exhibit Gibbon-Cottle "A" | Estimated Acreage By Rowe, Tr. pp. 12362-3 |
|---|---|
| B | 8.4 |
| F | 3.7 |
| 2 | 8.0 |
| 3-4 | 15.7 |

*Although the quantity of an appropriative right cannot be measured in terms of the capacity of the appropriator's ditch (Tulare Irr. Dist. v. Lindsay Strathmore Irr. Dist., 3 Cal. 2d 489, 547), the capacity of the ditch may be stated as the limitation on the rate of flow by which the quantity of the right is to be taken. (Riverside Water Co. v. Sargent, 112 Cal. 230) The right of the appropriator "is limited to the amount he actually uses for a beneficial purpose, not exceeding the carrying capacity of his ditch or canal." (California Pastoral & Agricultural Co. v. Madera Canal & Irr. Co., 167 Cal. 78, 83.)

water in the Santa Margarita-Temecula River System, although it is apparent that there is not enough water to meet the reasonable average annual requirements of all of the irrigable acreage which is riparian to said river system. (Court Tr. p. 12579)

21. It is not necessary to the full disposition of this case, as the record now stands, to determine said claim of prescriptive right, since no effective relief could presently be predicated thereon and the extent and character of such right will change with each year of water use on said river system until such time as affirmative relief based on such claim is granted or denied.

22. Accordingly, the court makes no finding as to the existence, nature, or extent of the claimed prescriptive rights of defendants Gibbon and Cottle.

CONCLUSIONS OF LAW

I. GEOGRAPHY, GEOLOGY AND HYDROLOGY

1. All of the lands overlying the Radec topographic basin and lying southerly and westerly of the Aguanga Fault are and constitute a part of the stream system of the Santa Margarita-Temecula Rivers. Said portion of the Radec Basin is supported by and in turn supports the flow of Temecula Creek.

2. Those portions of the older alluvium lying northerly and easterly of said Aguanga Fault constitute pockets of vagrant, percolating water, are not a part of said stream system, are not supported by nor do they support the flow of Temecula Creek.

3. The Field Well, the Valley Well, and the Corral Well on the Gibbon lands, as defined in the findings and shown on Exhibit "A" thereto, do not draw water from the Santa

Margarita-Temecula River System.

II. RIPARIAN RIGHTS

4. All of the lands of Defendants Cottle and Gibbon described in the findings herein are riparian to the Santa Margarita-Temecula River System.

5. Said lands, by reason of their riparian character, are entitled to a correlative share of the water available to all riparian owners on said Santa Margarita-Temecula River System based upon an average annual diversion duty of 472.5 acre feet on the lands of Defendant Gibbon and 272.25 acre feet on the lands of Defendant Cottle, plus the amount of any reasonable non-irrigation riparian usage of water on the lands of said defendants.

III. APPROPRIATIVE RIGHTS

6. Defendants Gibbon and Cottle jointly own in fee simple an appropriative right, with a priority of February 11, 1885, to divert and use for irrigation and domestic purposes on the Gibbon and Cottle lands, 157.5 acre feet per year of the waters of Temecula Creek, at a rate not to exceed the capacity of their diversion works, pipeline and ditch now existing.

7. The said appropriative right of Defendants Gibbon and Cottle is prior and paramount to

(a) All water rights based upon:

(1) appropriations of subsequent date to February 11, 1885, from the Santa Margarita-Temecula River System; and

(2) riparian rights on any lands which have formerly been lands of the United States and which were patented by the United States after February 11, 1885; and

  (b) All rights of the United States with respect to

(1) the unreserved public lands of the United States; and

(2) reservation made after February 11, 1885.

IV. PRESCRIPTIVE RIGHTS

8. No allocation or apportionment to riparian owners of the waters of the Santa Margarita-Temecula Stream System can be made on the basis of the record in this case.

9. No purpose therefore would be served by declaring in this action the existence or non-existence of the claimed prescriptive rights of Defendants Gibbon and Cottle, as against such riparian owners.

10. The claimed prescriptive rights of Defendants Gibbon and Cottle are, therefore, not decided, but arguments and claims as to their existence and nature are reserved, without prejudice.



EXHIBIT "A"

(to Gibbon - Cottle Findings)