# FILED

OCT 23 1961

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY *M.B.T. Lisafamy*

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL NO. 1247-SD-C |
| Plaintiff, | OBJECTIONS OF THE UNITED STATES OF AMERICA TO CALIFORNIA'S PROPOSED FINDINGS OF FACT |
| v. | CONCLUSIONS OF LAW |
| FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., | AND INTERLOCUTORY JUDGMENT NO. 30 RESPECTING |
| Defendants. | MURRIETA-TEMECULA BASIN |

Comes now the United States of America and makes the following

objections to the Findings of Fact, Conclusions of Law and Interlocutory

Judgment No. 30 Pertaining To Murrieta-Temecula Area, dated October 13, 1961,

proposed by the State of California and received by the United States of America

on the 18th day of October, 1961.  Based upon a most careful summary the United

States of America respectfully submits:  California's Proposed Findings, with

rare exceptions, are either diametrically opposed to the evidence in the record

in this case, or cannot be supported by the proof.

Finding No. I:

(a)  This Finding refers to Murrieta-Temecula ground water area.

There is no doubt that the portion of the watershed to which California refers

has all of the features of the San Fernando Basin, Raymond Basin, and those in

Santa Ana River drainage system, all of which have been judicially determined to

be Basins with the attendant legal connotations stemming from that determination.

It should be designated  a Basin.  Reference to it as a ground-water area injects

a term without meaning in the contemplation of the law.

6750

- 1 -

OPG 16—59003-1

1       (b)  On page 2, lines 6 through 9, it is stated that the waters of

2  the Basin "changed their course to the present stream condition by accomplishing

3  a break-through of the basement complex at the place now known as Temecula

4  Gorge * * *." That statement is incorrect.  The theory advanced is that the

5  Santa Margarita River incised the present channel into the Murrieta-Temecula

6  Basin with the resultant present drainage westwardly.

7  <u>Finding No. II</u>:

8       On page 2 it is stated that the younger alluvial deposits were laid

9  down by stream action following the break-through of the surface stream at

10  Temecula Gorge.  Recent alluvial deposits are not only a result of stream

11  action, they are likewise the result of erosion from the surrounding hills,

12  creating in some instances alluvial fans.  Erroneous efforts by California to

13  establish bed and banks of the streams on the basis of contact between older

14  and younger alluvium calls forth that observation.  It is to be noted, moreover,

15  that it is impossible to ascertain the difference between the younger and older

16  alluvium.  That circumstance stems largely from the fact that the younger and

17  older alluvium are derived from the same sources, that is – transported

18  detritus material from the basement complex and the weathered basement complex

19  which surround the Basin.

20  <u>Finding No. III</u>:

21       Numerous grave errors and incorrect statements are contained in

22  this Finding.  It is erroneously stated "that within said valley [Murrieta]

23  there exist two well-defined faults which are approximately parallel."  Evidence

24  will not support that statement.

25       The Wildomar Fault extends northwest to southeast near the center

26  of the Basin in the northwesterly part, and can be discerned in some places

27  by points of rising water and springs.  There is no basis whatever, however,

28  for the statement that "One of said faults is located immediately to the

29  northeast of the mountains of the Santa Rosa Grant which is known as Elsinore

30  Fault; and the other, which runs in the identical direction and is generally

31  parallel thereto, but located to the east, is known as the Wildomar Fault; ***."

32

6751

1          The totally erroneous statement that the Wildomar Fault and the

2    Elsinore Fault parallel each other across Murrieta Valley pervades all of

3    California's proposed Findings.  For example, it is stated without foundation

4    that the "* * * Elsinore Fault does not terminate in Murrieta Valley but extends

5    along the westerly portion of the alluvial deposits in Wolf-Pechanga Valley

6    and into the San Luis Rey watershed; * * *."  Contrary to that statement is

7    the fact that the Elsinore Fault Zone having been inferred for a short distance

8    in the alluvial fill of the Murrieta-Temecula Basin is then inferred to veer

9    south and easterly into the basement complex.

10          Undisputed testimony in the record reveals that it is impossible

11    to determine with any degree of accuracy where the Elsinore Fault Zone is

12    located.

13          It is also stated in Finding No. III that the Wildomar Fault

14    "extends along the easterly portion of the alluvial deposits in Wolf-Pechanga

15    Valley and terminates approximately one-half (1/2) mile southeast of Temecula

16    Creek."  It is also stated in that Finding, lines 18 through 23, page 3, that

17    the "Wildomar Fault acts as a barrier to the movement of ground waters from

18    Pauba Valley westerly except to the extent that ground waters are contained

19    in younger alluvial deposits which lie above said fault or rise to the surface

20    and move westerly over said fault and downstream as surface waters."  The

21    evidence is contrary to the statement last quoted.  The Fault is far from

22    impervious and water moves through it.

23    <u>Finding No. IV</u>:

24          In this Finding California continues to repeat the fallacy pointed

25    out above respecting the Wildomar and Elsinore Faults.  There it states,

26    "That between said fault lines there are both younger and older alluvial

27    deposits * * *."  As stated above, fault lines are not parallel and the

28    evidence in no way relates them to the younger and older alluvium.

29    <u>Finding No. V</u>:

30          It is stated that the younger alluvial deposits are of a relatively

31    high water-bearing capacity.  As the younger and older alluvium cannot be

32    distinguished the statement is without basis in fact.  All of the alluvial

6752

GPO 16—29985-1

1  deposits at whatever location and depth are lenticular in character, and some

2  of the deeper alluvial deposits are far more permeable than some of the tighter

3  more shallow deposits.

4  Finding No. VII:

5      Repeating the grave error respecting parallel faults, this statement

6  is made in Finding No. VII: "the surface flow of Murrieta Creek is between

7  said faults * * *." That statement is contrary to the undisputed facts in the

8  evidence.

9  Finding No. VIII:

10      It is stated in Finding No. VIII, "That Murrieta Creek does not

11  flow continually on the surface except during periods of considerable

12  precipitation, but on the contrary flows throughout its course as a surface

13  stream, then disappars and flowsunder ground, and then again rises to the

14  surface" and that the surface flow varies from year to year and within each year.

15  The evidence in the record is contrary to the statement. The perennial flow

16  of Murrieta Creek commences at a point just northwest of Vail boundary and flows

17  through a deeply incised channel on its way to join Temecula Creek and there

18  form the Santa Margarita River.

19  Finding No. X:

20      (a)  It is stated, contrary to the laws of nature, that the younger

21  alluvial deposits in Murrieta Valley rest upon and are "enclosed within on

22  each side by older alluvial deposits; * * *." The younger alluvium is not

23  and cannot be enclosed by older alluvium. It is declared, moreover, that the

24  older alluvium "effectively impede ground waters contained in the younger

25  alluvial deposits from moving into the older alluvial deposits, * * *." That

26  is incorrect and contrary to the evidence.

27      (b)  It is also stated that the ground waters in the younger

28  alluvial deposits move in a general southeasterly direction. The evidence

29  indicates there is presently a reverse gradient. Thus the water is flowing

30  against the gradient to recharge the dewatered alluvium.

31      (c)  Throughout Finding No. X there is pursued California's

32  completely unwarranted and totally incorrect effort to segregate the ground

- 4 -

6753

1   waters in the so-called younger alluvium from those in the so-called older

2   alluvium.  That is a physical impossibility; contrary to the record; violating

3   the principles of geology and hydrology fully proved in the record.

4   Finding No. XI:

5        (a)  Contrary to the facts; contrary to reason, it is stated in

6   Finding No. XI that the older alluvial deposits "do in fact form the beds

7   and banks of an underground stream and the ground waters contained in said

8   younger alluvial deposits move in a southeasterly direction within said bed

9   and banks and said older alluvial deposits serve the same purpose as semi-

10   impermeable bed and bank of a surface stream channel."  Violence is done by that

11   proposal to the record.  Based upon the same record California earlier proposed

12   this finding:  "* * * the ground waters within the areas of younger and older

13   alluvium in said ground water area are percolating waters which add to and

14   support the Santa Margarita River, and constitute a supply of water for said

15   River; that said ground waters are not in a known and defined channel."  Thus

16   without basis or logic, predicated upon identically the same evidence, California

17   now proposes a finding diametrically opposed to that originally proposed by

18   California.

19        (b)  it is impossible correctly to declare that the alluvial deposits

20   in the Murrieta-Temecula Basin upon which there is a thin veneer of recently

21   deposited alluvium are comparable to a "semi-impermeable bed and bank of a

22   surface stream channel."

23   Finding No. XII:

24        Purportedly this Finding undertakes to describe the flow of

25   Murrieta Creek.  Again in grave error it relates all the waters of Murrieta

26   Creek to the younger alluvium and then proposes that this Court find contrary

27   to the laws of nature that "at all times said ground waters within the younger

28   alluvial deposits in the Murrieta Valley move in the identical direction of

29   Murrieta Creek when in fact it physically flows."  The ground waters which enter

30   the alluvium of the Murrieta-Temecula Basin do not flow along the course of

31   any stream, but rather by reason of gravity they proceed vertically down

32   to the ground water table and become a part of it.  Moreover, completely contrary

- 5 -

6754

1   to the proposed Finding there is a reverse gradient at the present time

2   in the ground waters of Murrieta Creek down to a point just north and west

3   of the Vail Company boundary.

4   Finding No. XIV:

5           There is not a scintilla of proof to support the Finding which

6   declares, "that the evidence in this case would indicate that said younger

7   alluvial deposits extend to a depth of approximately 50 feet from ground surface

8   * * * the deepest areas of younger alluvial deposits in Murrieta Valley are in

9   the most northwesterly portion [presumably in the San Jacinto watershed -

10  see Finding XIII]."

11          Simply stated:  All witnesses agreed that it is impossible to

12  distinguish between recent and older alluvium.  That is not surprising as they

13  all have the same sources - the surrounding hills and mountains.  Assuming -

14  arguendo - that California's Finding is not totally incorrect, which it most

15  assuredly is - consideration of the evidence relating to wells in the Murrieta-

16  Temecula Basin throughout Murrieta Valley reveals that they pierce the older

17  alluvium; are largely perforated in older alluvium, and derive the large

18  quantities of water from the older alluvium.

19  Finding No. XV:

20          A most difficult question, in the light of California's proposal is

21  presented by this Finding: "* * * attached hereto, marked Exhibit A, and

22  incorporated herein, are descriptions of the smallest tract of land held under

23  one chain of title, a part of which abuts upon or is traversed by Murrieta

24  Creek."  That question is:

25          "But where is Murrieta Creek?"

26  Finding No. XI declares that the "older alluvial deposits serve the same

27  purpose as a semi-impermeable bed and bank of a surface stream channel," yet

28  proposed Finding XIV declares that it is impossible to determine which is

29  recent and which is older alluvium.  Manifestly this impasse is the logical

30  sequitur of California's course in this matter.  However, the question remains

31  "Where is Murrieta Creek?" - unless, of course, its well defined channel, its true

32  bed and banks, the course of which is free from doubt, are embraced in a finding

which is most strongly urged by  the United States of America.

8755

Finding No. XVI:

This Finding and those which follow, relating to Temecula Creek, are as completely in error as are California's proposed findings relating to Murrieta Creek. Having declared in Finding No. XVI that Pauba Valley consists principally of younger alluvial deposits, it is declared in Finding No. XVII that "said younger alluvial deposits rest upon and are enclosed (?) within older alluvial deposits." California by that quoted excerpt requests this Court to find a physical impossibility. How could younger alluvium be "enclosed" by older alluvium? A comparison of the gradient of Pauba Valley from where Temecula Creek in a state of nature debouched from Nigger Canyon to where in a state of nature it joined Murrieta Creek and thence entered Temecula Gorge reveals that the stream could not have incised a channel below elevation 957 above sea level. Under those circumstances there is no possible way – and the record rejects the whole concept – in which younger alluvium could be enclosed by older alluvium.

California's dilemma is compounded when consideration is given to this fact: California is asking this Court to find that one type of alluvium encloses another type of alluvium and the two types of alluvium are indistinguishable!

Finding No. XVIII:

Purporting to describe Temecula Creek – it is assumed below Vail Dam – it is referred to as being an intermittent stream recharging "said younger alluvial deposits." Whatever the characteristics of Temecula Creek may have been prior to 1948 are of small consequence now. Conjunctive use by Vail Company of its dam and its pumping of ground water completely and entirely control the runoff of that stream.

As a consequence the purported description of Temecula Creek by California is wholly academic, a proposition which is presented in Finding No. XIX where this understatement is made: "* * * Vail Dam * * * does in fact affect the surface flow of Temecula Creek * * *."

Attempted separation of older and younger alluvium in Pauba Valley would be clearly erroneous in the light of the evidence. Alluvium in the Basin

6756

GPO 16—69996-2

1  is continuous and the source of recharge is the same for all depths.

2        California has proved this fact:

3        Pumping from the ground waters beneath a large area of

4        Pauba Valley has reduced the ground-water table far below

5        any speculative guess which has been made in regard to

6        the depth of the so-called younger alluvium.  It is

7        illogical now to contend that the ground waters in the

8        two types of deposits are separable when they constitute

9        a single source of supply of water and have the same source

10        of recharge.

11  Finding No. XIX:

12        This relates to findings from another source;  they have not been

13  correlated with these findings so no comment is possible.

14  Finding No. XX:

15        Declaring that which is impossible, this Finding states: "* * * the

16  older alluvial deposits which surround the younger alluvial deposits * * *

17  said older alluvial deposits are in hydrologic contact with the ground waters

18  contained in the younger alluvial deposits * * *", adding this also equally

19  impossible physical phenomenon, "said older alluvial deposits * * * effectively

20  impede the ground waters contained in the younger alluvial deposits from moving into

21  the older alluvial deposits * * *." Proceeding on the basis that California's

22  proposed findings are seriously intended, comment will be made with reference

23  to the quoted excerpts.

24        An analysis of the wells which pump in Pauba Valley discloses they

25  deeply penetrate into the alluvium far below the surface.  Water is pumped

26  from depth.  The waters of Temecula Creek impounded in Vail Dam recharge the

27  dewatered alluvium.  Waters pass with much freedom to those depths without

28  regard to the alleged younger and older alluvial contact — a contact let it

29  be emphasized, the location of which is not known and has never been

30  established — may not be susceptible of being established for the obvious

31  reason that the older and younger alluvial deposits differ only in regard to

32  the date of their deposition.  That the alluvium which has been in place the

6757

GPO 16-99093-2

1  longest may be generally somewhat tighter – less permeable – does not warrant

2  California's proposals which must be rejected as being contrary to the record

3  – indeed, are contra to the laws of nature particularly the law of gravity.

4       Repeating the error made by California in regard to Murrieta Creek,

5  it is stated that the water "within said areas of younger alluvial deposits

6  * * * are in a known and definite channel * * *." That is incorrect. The waters

7  in the alluvial fill having been released from Vail Dam or entering the soil

8  in irrigation, proceed vertically downward to join the ground waters which in

9  certain areas have now been depleted to great depth.

10  Finding No. XXIII:

11       California continuing, contrary to the record, proposes, among

12  other things, that the evidence "would indicate that the younger alluvial

13  deposits extend to a depth of approximately one hundred thirty (130) feet

14  from ground surface; that generally the deepest areas of younger alluvial

15  deposits in Pauba Valley are in the most southwesterly portion * * * its

16  shallowest area * * * in the most northwesterly portion of Pauba Valley * * *."

17  Violence to the laws of nature is again attempted by California. It is

18  impossible for the deepest alluvial deposits to be virtually at the Basin's

19  outlet which has an elevation of 957 feet above sea level in contrast to the

20  1300 foot elevation where Temecula Creek in a state of nature left Nigger

21  Canyon.

22       In total contradiction of much that has gone before, California

23  in proposed findings makes this declaration:

24       "* * * it is impossible to enter a finding determining

25       the depth of the younger alluvial deposits within the

26       [Pauba] Valley with exactness * * *."

27  In contemplation of that quoted excerpt it will be remembered that California

28  has requested this Court in Finding No. XX to declare that the older alluvium

29  which [impossibly] surrounds the younger alluvium does "in fact form the bed

30  and banks of an underground stream [Temecula Creek]" and that those waters are

31  contained in the older alluvium which "serve as a semi-impermeable bed and bank

32  of a surface stream channel."

6758

GPO 10-69998-1

1      Straining credulity even more, California has asked for Finding

2    No. XXII which in part declares that the "ground waters within said areas of

3    younger alluvial deposits * * * are in a known and definite channel * * *" —

4    albeit the known and definite channel cannot be determined and is not known —

5    as evinced by California's Proposed Finding No. XXIII.

6    <u>Finding No. XXIV:</u>

7      This Finding declares that Exhibit B describes "the smallest tract

8    of land held in one chain of title, a part of which abuts upon or is traversed

9    by Temecula Creek." As the bed and banks of Temecula Creek cannot be defined

10    "with exactness" then what is the meaning of this proposal?

11    Finding No. XXV:

12      Again California requests this Court to find the physically impossible.

13    It proposes that "some waters of Temecula Creek are in fact <u>trapped beneath</u>

14    certain impervious lenticular bodies of older alluvial deposits; that waters

15    which are trapped and confined beneath said lenticular bodies move downstream

16    toward the semi-barrier of Wildomar Fault; [creating an artesian area] * * *;

17    said artesian waters are a part of the Santa Margarita River stream system

18    but do not directly support the flow of said River except to the extent that

19    said waters actually flow from the surface as a result of the artesian

20    pressure; * * *." Meaning of the proposal is veiled in doubt. Humorous

21    treatment of it could easily ensue. Threat of hydraulic explosion of many

22    megaton force would seem imminent if the tendered finding were seriously taken

23    particularly in the light of the proposals made in regard to the well defined

24    but undetermined beds and banks of  Temecula Creek with its "semi-impermeable"

25    channel.

26      There can be, however, no facetious disposition of the proposal.

27    It is contrary to evidence introduced in great detail. Let this fact be further

28    emphasized: The proposal is not and cannot be attributed to expert testimony

29    introduced by California or by any other witnesses. There has never been

30    offered a scintilla of evidence that water has been or could be "trapped." The

31    variance in chemical content between waters found at different levels occurs

32    by reason of the deposits which are encountered by them and the period entailed

6759

in the process of the waters percolating down to the point where they are forced
to the surface and proceed down Temecula Gorge.  Contradiction of the proposal
made by California in Finding No. XXV is contained in its proposed Finding
No. XLII which declares that "* * * all ground waters within the older alluvial
deposits * * * do add to and support the Santa Margarita River or a tributary
thereto * * *."

Findings Nos. XXVI through XXXV:

        The above mentioned findings relate to Santa Gertrudis Creek,
Warm Springs Creek, Cole Canyon Creek, and Slaughter House Creek.  They repeat
the physically impossible proposals California has made respecting Murrieta
Creek and Temecula Creek; they reiterate the wholly unacceptable and mistaken
conceptions expressed by California in regard to percolating ground waters
in their course, when not interrupted by the activities of man, towards the
outlet of Murrieta-Temecula Basin located at Temecula Gorge.  For example, in
Finding No. XXVIII it is stated that the ground waters in the younger alluvium,
the contact of which with older alluvium cannot be defined, is in each instance
"in the identical direction of the surface flow * * *."  That quoted excerpt
contradicts immutable physical laws.  Rather than proceeding "in the identical
direction" with the surface flow, the course taken by the ground waters is
governed by (a) gravity which results in that water proceeding vertically
downward to the water table, then moving generally toward the outlet of the
Basin; (b) the course of the ground waters described in (a) is varied only by
the interstices which it encounters on its vertical course to the water table,
which in the present overdrawn status of the Basin, is in certain areas at
great depth.

Findings Nos. XXIX and XXX:

        In Findings Nos. XXIX and XXX it is erroneously declared that the
older alluvium does in "fact form the beds and banks of an underground stream"
in connection with Santa Gertrudis Creek, Warm Springs Creek and the other
mentioned minor tributaries.  Pointing up California's error as to "beds and
banks" is the State's Finding No. XXX which declares that the contact between
the younger and older alluvium cannot be determined with "exactness" - or if

- 11 -

6760

1   the truth is to prevail, there can be no determination of that contact either

2   in wells or on the surface, as recognized by all experts.

3          Under no circumstances should the course of the streams be so

4   vaguely defined; so erroneously presented.  Abundant proof - uncontroverted

5   proof - locates with precision the bed and banks of every stream of consequence

6   in the Santa Margarita River watershed and this Court is respectfully petitioned

7   to find the channels of the streams where the maps disclose them to be and

8   where Colonel Bowen testified to them with great clarity.

9   <u>Findings Nos. XXXI through XXXV</u>:

10          These California findings incorporate by reference descriptions of

11   the "smallest tract of land held under one chain of title, a part of which

12   abuts upon or is traversed by" Santa Gertrudis Creek, Warm Springs Creek and

13   the other minor affluents.  As the beds and banks of the streams proposed by

14   California are undetermined, the problem presented needs no further comments

15   than those previously made respecting  comparable findings for Murrieta and

16   Temecula Creeks.

17   <u>Findings Nos. XXXVI through XXXIX</u>:

18          These findings proposed by California are general in nature in

19   regard to the Murrieta-Temecula Basin.  Objection is made to them as they

20   reflect the total error made in the earlier findings in which California proposes

21   the beds and banks of the streams are the unknown and undefined contacts between

22   the younger and older alluvium.  Should the findings be adopted by this Court

23   the United States of America reserves the right to attack them with greater

24   specificity.

25   <u>Finding XL</u>:

26          It is erroneously declared in this finding, "That pumping of the

27   ground waters in the older alluvial deposits * * * does affect to a limited

28   but presently undetermined degree the flow of Murrieta Creek or  Temecula Creek

29   * * *."  As to Temecula Creek, Vail Company's pumping has dried up that stream

30   throughout virtually the entire year down to a point - not in the stream channel -

31   in the Southeast Quarter (SE 1/4) of Section eighteen (18) Township eight (8)

32   South, Range two (2) West, S.B.M.  As to Murrieta Creek the pumping in its

6761

GPO 16—22095-1

vicinity has so depleted the ground waters that there exist pumping holes of
great magnitude resulting in a reverse gradient of the ground waters northwest
of the ground-water divide.  As a consequence it is completely in error and
totally misrepresentative of the facts to state that pumping from the
Murrieta-Temecula Basin has not adversely affected the flow of the stream.
Indeed, and let this fact be underscored, Vail Company pumped virtually the
entire summer of 1961 to provide 3 c.f.s. in Temecula Gorge which evidences
the perilous condition which exists as to the ground-water levels in the
Murrieta-Temecula Basin.

Finding No. XLVII:

        This Finding declares in substance that all water uses in Murrieta-
Temecula Basin are reasonable and no evidence was taken directed to establishing
whether such water uses are reasonable or unreasonable as to amount.  In view
of Vail Company's use of far more than the total yield of Temecula Creek in the
last several years, there is no basis for the totally erroneous statement.

        Further, in error it is declared that there is insufficient evidence
to enable this Court to make general or specific findings about the Basins
or any of the streams in regard to yield.  Contrary to that statement is the
evidence which has been received respecting Temecula Creek, its runoff, Vail
Company's excessive use and excessive use throughout the Basin.

Finding No. XLIX:

        It is declared that Exhibit J as set forth contains "informative
matters" relative to ownership, irrigable and irrigated acreage, wells and
related data.  Erroneously the finding continues that the "said factual matters
are not to be res judicata or prima facie evidence in any future proceeding
in this cause, but are set forth for informative purposes only and were not
received in evidence in this trial for title, apportionment, or injunctive
restraint purposes."  Though in the form of a conclusion of law, the finding
is nevertheless totally in error.

                        CONCLUSION

        In the light of the objections made to the findings, no useful
purpose will be served in making objections respecting the conclusions of law

1  or judgment California has proposed.  They are pervaded by the same errors

2  found throughout the findings.

3          The United States of America respectfully requests this Court to

4  reject California's wholly erroneous findings and to accept those tendered

5  by the United States of America in connection with the Murrieta-Temecula Basin.

6          Should this Court adopt California's findings, the United States

7  of America reserves the right to make any further objections to them as the

8  circumstances warrant.

9                          Respectfully submitted,

10                          UNITED STATES OF AMERICA

11

12

13                          RAMSEY CLARK,
                            Assistant Attorney General

14

15

16  Dated: Oct-23,1961        WILLIAM H. VEEDER,
                            Attorney, Department of Justice

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

32

6783