10-19-61

#10

LODGED
OCT 23 1961
CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By ______ DEPUTY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,
Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT, et al.,
Defendants.

No. 1247-SD-C

PROPOSED FINDINGS REGARDING MILITARY ENCLAVE.

I

That attached hereto and marked Exhibits A through ____ are descriptions of property the apparent ownership of which rests with the United States of America, which property is within the Santa Margarita River watershed; that said property was acquired by the United States either by condemnation or purchase during the years 1941, 1942 and 1943; that the property described in each exhibit referred to herein was acquired separately; that all of said property described in said Exhibits A through ___ was originally in private ownership at the time California became a State of the United States of America, and has at all times thereafter, until acquired by the United States, as found herein, been in private ownership;

16038

that said exhibits are incorporated herein by reference and made a part of these findings as if set forth in full.

II

That the land described in said Exhibits A through __ is used by the United States in the pursuit of a proper federal function, to wit: the defense of this country, and located upon said land are a portion of Camp Joseph H. Pendleton, the U. S. Naval Ammunition Depot and a U. S. Naval Hospital; that it is the function of these military establishments to provide housing and training facilities for units of the Armed Forces and other related activities and services necessary thereto.

III

That pursuant to stipulation, the United States of America has agreed that in this action it claims only such rights to the use of the waters of the Santa Margarita River as it acquired when it condemned or purchased the lands described in Exhibits A through ____ together with such rights which it may have acquired by prescription or use or both since its acquisition of said lands; that the United States of America by said stipulation has expressly stated that its rights are to be determined by California law and that it claims no rights to the use of the waters of the Santa Margarita River by reason of its sovereign status; that at all times herein said stipulation has been in full force and effect.

IV

That the Santa Margarita River enters the lands of the United States in the SW¼ of Section 12, Township 9 South, Range 4 West, and traverses these lands in a general east to west direction for approximately twenty-one (21) miles wherein it terminates as it enters the Pacific Ocean; that there are no other water users or water right claimants or landowners on

said River downstream from said place where said Santa Margarita River enters the lands of the United States of America.

V

That at that point, as found hereinabove in Finding IV, where said Santa Margarita River enters the lands of the United States of America, it is a perennial stream and depending upon precipitation and runoff; it continues as a perennial stream to a point in Section 5, Township 10 South, Range 4 West at which point the surface flow during periods other than periods of precipitation and substantial runoff disappears into the younger alluvial deposits and/or is diverted into Lake O'Neill as described in the Findings attached to Interlocutory Judgment No. 24, which findings and interlocutory judgment are incorporated herein by reference; that downstream from said point during periods other than periods of precipitation, the Santa Margarita River flows on the surface, disappears underground, reappears as surface flow for a short distance and then disappears into the ground as it flows toward the Pacific Ocean.

VI

That commencing at a point just upstream from the confluence of DeLuz Creek with the Santa Margarita River and continuing downstream to the confluence of said River with the Pacific Ocean there are substantial younger alluvial deposits; that said younger alluvial deposits are depicted on U. S. Exhibit 37 which exhibit is herein incorporated by reference; that said younger alluvial deposits were laid down by the Santa Margarita River following that period in time when said River broke through the Temecula Gorge as previously found in findings of fact attached to Interlocutory Judgment No. 30; that these younger alluvial deposits are composed of sedimentary materials and have a relatively high water-bearing

capacity and permeability.

VII

That the younger alluvial deposits as found in Finding VI above rest upon and are confined laterally by deposits of consolidated rocks; that these deposits of consolidated rocks are essentially non-water bearing and are considerably tighter than the younger alluvial deposits; that as a result thereof ground waters which are within the younger alluvial deposits cannot move laterally or vertically but do in fact move through the younger alluvial deposits in the identical direction as the surface flow of Santa Margarita River or rise to the surface and flow as surface flow westerly toward the confluence of that River with the Pacific Ocean.

VIII

That the location of the surface flow of the Santa Margarita River is upon the younger alluvial deposits referred to hereinabove; that the area of surface flow thereon will fluctuate considerably and it is not uncommon for the surface flow to shift its position upon the younger alluvial deposits from year to year or within each year during periods of substantial surface flow.

IX

That as found hereinabove the points where the waters rise to the surface and flow as surface stream over the younger alluvial deposits during periods other than periods of substantial runoff may vary considerably; that said variance in points of surface flow during periods other than periods of precipitation results to a substantial degree from pumping of the waters contained in the younger alluvial deposits by the United States of America.

\- - - - - -

X

That the ground waters which are contained in the younger alluvial deposits as found hereinabove have as their principle source the surface flow of the Santa Margarita River and are in fact recharged primarily from said surface flow of said River; that during the times when there is surface flow of the Santa Margarita River throughout its course as it traverses over the younger alluvial deposits, the ground waters therein are in direct physical contact with said surface flow; that during such times as there is no perennial surface flow but only surface flow at those points where the waters rise to the surface, then disappear and rise again, said surface waters are in fact the ground waters which were within the younger alluvial deposits; that as found hereinabove the ground waters move in the identical direction of the surface flow when in fact it does physically flow.

XI

That the deposits of consolidated rock on each side of the younger alluvial deposits and upon which said younger alluvial deposits rest do in fact prevent the ground waters from moving out of the younger alluvial deposits and do in fact act in the same manner as a substantial impermeable bed and bank of a surface stream channel; that the ground waters within the younger alluvial deposits as found herein are in fact in a known and definite channel, to wit, the younger alluvial deposits; do in fact move in the same direction as the surface flow, are in fact in direct contact with the surface flow when it does flow, and do constitute that water which rises to the surface and then disappears during periods other than periods of considerable precipitation, and said ground waters and said surface flow of the Santa Margarita River are in fact one stream hereinafter referred to as the Santa Margarita River.

XII

That it is true that the vertical depth of the younger alluvial deposits have not been determined with absolute exactness throughout its area; that it is true, however, that it is known, definite and certain that said younger alluvial deposits do in fact rest upon said consolidated rock as found hereinabove; that the greatest known depth of said younger alluvial deposits is in the vicinity of wells 11/5 10B1 and 11/5 2N4 as said wells are delineated on U. S. Exhibit 38, incorporated herein by reference; that the estimated various depths of the younger alluvial deposits is set forth on U. S. Exhibit 39 which exhibit is incorporated herein by reference.

XIII

That it is true that all wells which are presently drilled into the younger alluvial deposits, as said deposits are depicted on U. S. Exhibit 37, do not extend into the consolidated rocks which lie beneath the younger alluvial deposits, but that all of such wells are drilled into and their depth is within said younger alluvial deposits, and that all of such wells pump waters of the Santa Margarita River

XIV

That the ground water contours within said younger alluvial deposits are depicted on U. S. Exhibit 45 incorporated herein by reference; that said exhibit shows in essence that the ground water levels within said area ofyounger alluvial deposits do not stand at or about the same levels but do in fact stand at or about 135 feet above mean sea level at the point of confluence of DeLuz Creek with the Santa Margarita River, and thence follow an approximately even downward gradient for the entire length of said younger alluvial deposits to an elevation of approximately five (5) feet above mean sea level at that point

where the Santa Margarita River discharges into the Pacific Ocean.

XV

That the lands described in Exhibits ____and _____ are riparian to the Santa Margarita River, said lands being held under one chain of title a part of which abut upon or are traversed by the Santa Margarita River.

XVI

That since the acquisition by the United States of the lands described in Exhibits A through ___all of the water supply for said military enclave situated within the watershed of the Santa Margarita River has been obtained from the flow of that River; that said uses of water have been for both military and agricultural purposes within the Santa Margarita River watershed; that in addition to the use of the waters of the Santa Margarita River within its watershed the United States of America has exported large quantities of water from said River for both military and agricultural purposes to areas situated outside of the watershed; that commencing with the water year 1944 the United States has annually used waters of the Santa Margarita River for military and agricultural purposes within and without the Santa Margarita River watershed in the following amounts:

| | USE WITHIN WATERSHED | | | USE WITHOUT WATERSHED | | |
|---|---|---|---|---|---|---|
| WATER YEAR | MILITARY | AGRICULTURAL | TOTAL | MILITARY | AGRICULTURAL | TOTAL |
| 1944 | 1840 | 730 | 2570 | 1780 | 1150 | 2930 |
| 1945 | 2040 | 610 | 2650 | 1940 | 950 | 2890 |
| 1946 | 1800 | 920 | 2720 | 1730 | 1440 | 3170 |
| 1947 | 1550 | 840 | 2390 | 1690 | 1310 | 3000 |
| 1948 | 2030 | 1090 | 3120 | 1790 | 1710 | 3500 |
| 1949 | 2150 | 880 | 3020 | 2060 | 1370 | 3430 |
| 1950 | 1880 | 890 | 2770 | 2060 | 1380 | 3440 |
| 1951 | 1830 | 630 | 2460 | 1990 | 990 | 2980 |
| 1952 | 2100 | 560 | 2660 | 2280 | 870 | 3150 |
| 1953 | 2440 | 680 | 3120 | 2660 | 1070 | 3730 |
| 1954 | 2170 | 740 | 2910 | 2030 | 1150 | 3180 |
| 1955 | 2390 | 740 | 3130 | 2340 | 1160 | 3500 |
| 1956 | 2660 | 680 | 3340 | 2410 | 1070 | 3480 |
| 1957 | 2430 | 600 | 3030 | 2470 | 940 | 3410 |
| 1958 | 2460 | 460 | 2920 | 2390 | 730 | 3120 |
| 1959 | 2510 | 670 | 3180 | 2850 | 1060 | 3910 |
| 1960 | 2040 | 430 | 2670 | 2600 | 680 | 3280 |

XVII

That such uses of the Santa Margarita River outside the River watershed as found in Finding XVI have not been adverse or hostile to any defendant in this cause, nor has such use of said Santa Margarita River outside of said watershed been made under any appropriative right as recognized by the laws of the State of California, but said uses of said Santa Margarita River water outside of said watershed by the United State of America have been and are being made by the United States of America under no water right recognized or provided by the statutes and laws of the State of California.

XVIII

That all uses by the United States of America of the waters of the Santa Margarita River within its watershed and outside its watershed have been reasonable and beneficial as to character of use.

XIX

That during the years 1951 and 1952 there existed a condition of salt water intrusion from the Pacific Ocean into

the lower segments of the younger alluvial deposits as defined hereinabove; that said salt water intrusion did in fact result in the waters of certain wells which were located in said lower area of younger alluvial deposits being temporarily unfit for domestic or agricultural purposes; it is not true that said salt water intrusion was the result of any unlawful or wrongful act by any defendant in this case, but on the contrary such salt water intrusion resulted from the existence of a dry cycle and consequent reduced runoff from the Santa Margarita River during which period the United States of America pumped substantial quantities of the waters of the Santa Margarita River contained in said lower segment of the younger alluvial deposits for use outside of the watershed of that River; that as a result of that reduced runoff and pumping the water table in the lower segment of the younger alluvial deposits dropped to a point below sea level and said salt water intrusion occurred.

XX

That subsequent to 1953 the United States of America reduced its pumping from said lower segment of the younger alluvial deposits and simultaneously commenced a program of ground water recharge of said lower segment of younger alluvial deposits; that said ground water recharge program consisted of spreading effluent over said lands by means of the construction and operation of spreading works in combination with an extensive program of eradication of phreatophytes and other water-consuming native vegetation; that substantial amounts of the sewage effluent used to recharge said area was effluent from waters of the Santa Margarita River which had been diverted outside of its watershed as found hereinabove; as a result of said water conservation policies salt water intrusion into the lower segment of the younger alluvial deposits has ceased and for approximately eight (8) years

there has been no salt water intrusion in said area nor in any other area of the Santa Margarita River; that the United States of America has now commenced limited pumping from said area for agricultural use outside the watershed of the Santa Margarita River.

XXI

That it is not true that any act of the defendants in this case caused or now threatens to cause salt water intrusion of any waters of the Santa Margarita River.

XXII

That there are ________ acres of land capable of practical and profitable irrigation on those lands described in Exhibits A through ____ herein, which lands as hereinabove found are riparian to the Santa Margarita River.

XXIII

That at the present status of this case the possible issue of apportionment has not been presented to the Court and the Court has taken no evidence upon that issue nor upon the issue of whether or not any uses of the waters within the watershed of the Santa Margarita River by the United States of America are reasonable as to amount in the light of the water rights which may exist as to such waters; that this issue of apportionment is expressly left undetermined and shall be litigated in the future if in fact it becomes necessary to do so on the facts as may then appear and pursuant to California law.

XXIV

That all ground waters located within the lands of the United States of America other than waters found within younger alluvial deposits are vagrant, local, percolating waters not a part of the Santa Margarita River or any tributary thereto; that all surface waters which flow on the lands described in

in Exhibits A through ____ herein are a part of the Santa Margarita River or add to and support said River.

XXV

That DeLuz Creek is an intermittent surface stream which has its confluence with the Santa Margarita River at the SW¼ of Section 29, Township 9 South, Range 4 West; immediately upstream from its confluence with the Santa Margarita River, and for a distance of approximately one mile, said surface flow of DeLuz Creek, when in fact it flows on the surface, flows over an area of younger alluvial deposits of considerable depth; that said younger alluvial deposits are depicted on United States Exhibit 37.

XXVI

That said younger alluvial deposits referred to in Finding XXV above rest upon and are confined laterally by deposits of consolidated rock; that there are ground waters within said younger alluvial deposits; that the source and recharge of said ground waters is primarily the surface flow of DeLuz Creek; that the said younger alluvial deposits are composed of sedimentary materials of a relatively high water-bearing capacity and permeability; that said deposits of consolidated rock are essentially non-water bearing and of extremely tight material; that as a result thereof the waters within said younger alluvial deposits cannot move laterally or vertically into the deposits of consolidated rock but do in fact move through the younger alluvial deposits in the identical direction of the surface flow of DeLuz Creek when in fact it exists; that during such times that DeLuz Creek flows as a surface stream, that is, during periods of precipitation, the ground waters contained in said younger alluvial deposits are in direct contact with said surface flow; that during all other times DeLuz Creek does not flow as a perennial surface stream but rises to the surface, disappears and rises again, and during such

periods the ground waters within the younger alluvial deposits do in fact constitute the waters which rise and disappear as aforesaid.

XXVII

That the ground waters within said younger alluvial deposits are in fact in a known and definite channel to wit, the younger alluvial deposits; that said ground waters do in fact flow in the same direction as the surface flow of DeLuz Creek when in fact it physically flows, are in direct contact with said surface flow, do constitute the surface flow which rises to the surface and then disappears during periods other than periods of precipitation, and said ground waters and said surface flow constitute one creek hereinafter referred to as DeLuz Creek.

XXVIII

That the lands described in Exhibits ___ and ___ are riparian to DeLuz Creek, said lands being the smallest tract of land held under one chain of title a part of which abuts upon or is traversed by DeLuz Creek.

XXIX

That there are _______ acres of land capable of practical and profitable irrigation which are located upon the lands described in Exhibits ___ and ____, said lands being riparin to DeLuz Creek.

XXX

That while it is known, definite and certain that the younger alluvial deposits as found in Finding XXVI above rest upon deposits of consolidated rock, it is not known with certainty the exact depth of said younger alluvial deposits to their contact with said consolidated rock throughout said area; that as this Court will keep continuing jurisdiction of this cause, jurisdiction is reserved to determine such a fact if it becomes

necessary to do so in any particular factual situation which might arise in the future.

XXXI

That Fallbrook Creek is a stream of an intermittent character which is fully described elsewhere in other findings in this cause which findings are incorporated herein by reference; that said creek flows into Lake O'Neill, an artificial off channel storage reservoir situated in Sections 5 and 8, Township 10 South, Range 4 West; that said Lake O'Neill is more fully described in interlocutory judgment no. 24; that said creek contributes no surface flow to the Santa Margarita River except during periods of substantial precipitation and runoff.

XXXII

That in addition to the Santa Margarita River, DeLuz Creek and Fallbrook Creek, there are numerous small creeks, gullies or water courses, tributaries to the Santa Margarita River, named and unnamed, which have their confluence with the Santa Margarita River upon the lands of the United States of America as described in Exhibits A through ____; that all of said streams are intermittent and flow only during and after periods of precipitation and runoff and are all located entirely within the military enclave of the United States of America within the watershed of the Santa Margarita River; that while in themain said creeks, gullies or water courses flow primarily over areas of consolidated rock, there are limited areas where shallow younger alluvial deposits underlie the surface stream channel; that in all such instances said shallow younger alluvial deposits rest upon and are laterally contained by deposits of consolidated rock; that ground waters contained in said shallow younger alluvial deposits are in direct physical and hydrologic contact with surface flow of the respective creek, gully or water course when

in fact it does flow, and that the ground waters contained in said shallow younger alluvial deposits are in a known and definite channel, to wit, the shallow younger alluvial deposits, and such ground waters and such surface flow as may exist do in fact constitute a single creek, gully or water course.

XXXIII

That said small creeks, gullies or water courses have not been considered in detail herein nor has any party to this cause requested detailed findings thereto; that as this judgment is interlocutory, should the United States of America or any party to this cause desire such detailed findings as to such small creeks, gullies or water courses, this Court will do so prior to the entry of final order and decree upon such a request; that if no such request is made, the location of such creeks, gullies or water courses are depicted on U. S. Exhibit _____ and this Court can in the future refer to said exhibit to determine any controversy which may arise as to such waters.

XXXIV

That the use of the waters of the Santa Margarita River by the United States of America on its military enclave both within and without the watershed other than for irrigation are uses essentially municipal in character; that said water is used to satisfy the needs of the population of the military enclave, both military and civilian; that saidpopulation has averaged approximately 42,000 people per year; that in addition to housing of military personnel said military enclave of the United States of America provides housing facilities for dependents of the military personnel and since 1958 the number of such dependents residing on the military enclave has averaged approximately 5500 individuals annually; that in addition to

the dependents of said military personnel limited numbers of civilians, not dependents, are residing on said military enclave; that for the fiscal year of 1959 the projected total population of the military enclave was approximately 61,600 persons.

XXXV

That in order to provide for the welfare of the persons living on the military enclave as found above in Finding XXXIV a variety of facilities exist thereon including, but not limited to the following:

a. Housing in barracks, single-family and multi-family dwellings.

b. Messing and restaurant facilities.

c. Medical and dental facilities

d. Recreational facilities including a golf course, swimming pools, lake for boating, gymnasiums, tennis and hand-ball courts, beach facilities and miscellaneous athletic and playground facilities.

e. Theatres.

f. Libraries.

g. Churches,

h. Clubs and social facilities.

i. Schools.

j. Garbage and sewage and waste disposal facilities.

k. Police facilities.

l. Fire protection facilities.

m. Transportation facilities.

n. Railroad, truck and bus terminals.

o. Retail trading facilities.

p. Laundries and dry cleaning establishments.

q. Warehousing and storage facilities for both military and civilian good.

r. Clothing and shoe repair facilities.

s. Garages and vehicle repair facilities.

t. Ordnance and weapons repair facilities.

u. Harbor and boat basin facilities.

v. Aircraft and helicopter landing facilities.

w. Salvage yard facilities.

x. Barber shops and beauty parlors.

y. Rock crushing and bulk cement plants.

z. Commercial vegetable and flower growing.

aa. Commercial orchards.

bb. Commercial grazing of livestock.

cc. Greenhouses.

dd. Private gardens.

ee. Public gardens and landscaping.

ff. Commercial vegetable packing.

gg. Newspaper.

That all of the foregoing facilities derive their supply of water from the Santa Margarita River; that there is no substantial difference insofar as water demand and uses are concerned, between that which has existed and that which presently exists on the military enclave, from that required by a city of comparable size.

XXXVI

That in addition to Lake O'Neill, which is the subject of Interlocutory Judgment #24, which is incorporated herein by reference, there are within the military enclave of Camp Pendleton and within the watershed of the Santa Margarita River, many structures used for the impoundment of surface runoff for the purpose of providing stock water, or to encourage ground water recharge, or for purposes of soil conservation, recreation or other beneficial purposes. There is no evidence that any of

such structures or impoundments presently constitute an unreasonable, wasteful or non-beneficial use of water. None of such structures or impoundments have been constructed or are maintained under the authority of any Permit or License of the State of California, and none of such structures or impoundments have been maintained adversely to any party to this cause.

XXXVII

That all such structures and impoundments as are described in Finding XXXVI above intercept surface runoff of waters of the Santa Margarita River System, which runoff would in a state of nature contribute to the Santa Margarita River; that while the impact of any such individual impoundment on the available water supply of the Santa Margarita River is at present de minimis, the cumulative effect of such structures and impoundments may at a future date become substantial and require regulation or control.

XXXVIII

That the United States of America at all times since acquiring said lands has had the right of possession and control of said lands described in Exhibits _____ and ______, with absolute right to use the waters which reach said lands without objection from any defendant in this case; that by bringing this action the United States of America has submitted to the jurisdiction of this Court and to the continuing jurisdiction of this Court in this cause, and all uses of the waters of the Santa Margarita River and its tributaries and all uses of waters which add to and support said Santa Margarita River and its tributaries by the United States of America, and all defendants in this case, and by their successors, shall be and are subject to the jurisdiction of this Court.

- - - - -

XXXIX

That this Court has previously entered Findings of Fact, Conclusions of Law and Interlocutory Decree No. 25 pertaining to a State court judgment in the case of Rancho Santa Margarita v. Vail, et al., Case No. 42850 in the records of the Superior Court of the State of California, in and for the County of San Diego; that said Findings of Fact, Conclusions of Law and Interlocutory Decree No. 25 are incorporated into these findings by reference as if set forth in full herein.

XL

That attached hereto marked Exhibit ____ and incorporated herein is a description of lands riparian to DeLuz Creek which have been withdrawn by the United States of America for a national forest; that the withdrawal of said lands for use as a national forest was made on ________________ and that the United States of America intended to reserve, and did reserve, the right to use that amount of water which is available on said lands under natural conditions for uses consistent with the operation of a national forest.