# LODGED

*Zzaus Draft*
2/20/62

**FEB 20 1962**

CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
DEPUTY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1247-SD C |
| Plaintiff, | |
| vs. | FINDINGS OF FACT CONCLUSIONS OF LAW AND INTERLOCUTORY JUDGMENT NO. 37 |
| FALLBROOK PUBLIC UTILITY DISTRICT, et al., | |
| Defendants. | NAVAL ENCLAVE |

## FINDINGS OF FACT

1.

**Lands of the United States within the Naval Enclave**                     Veeder #1, 2/8/62

The United States of America is the owner in fee simple of the lands which comprise Camp Pendleton, United States Naval Ammunition Depot and the United States Naval Hospital, all of which are referred to as the Naval Enclave. There follows a brief statement respecting the several tracts which comprise the Naval Enclave.

### United States Ammunition Depot

The United States of America on January 21, 1942, by condemnation acquired in San Diego County, California, fee simple title to the lands now constituting that segment of the Naval Enclave designated the United States Naval Ammunition Depot which totals 9,147.55 acres, more or less, which lands are more

-1-

16319

1  particularly described in the Amended Judgment, recorded
2  November 26, 1944, in Book 1794, page 133, Official Records,
3  San Diego County, California.  The description of the lands set
4  forth in that Amended Judgment is incorporated into these
5  Findings and made a part of them by reference.

6
7  Camp Pendleton Marine Corps
   Training Base

8        The United States of America on December 31, 1942, by
9  condemnation, in San Diego County, acquired fee simple title to
10  the lands now constituting that segment of the Naval Enclave
11  designated Camp Pendleton which totals 123,620 acres, more or
12  less, which lands are more particularly described in Decree in
13  Declaration of Taking, recorded January 9, 1943, in Book 1448,
14  page 192, Official Records, San Diego County, California.  The
15  descriptions of the lands set forth in that Decree are in-
16  corporated into these Findings and made a part of them by
17  reference.

18        The United States of America on December 23, 1943, by
19  condemnation acquired in San Diego County, California, fee simple
20  title to the lands now constituting that segment of the Naval
21  Enclave designated Camp Pendleton which totals 1,676.58 acres,
22  more or less, which lands are more particularly described in
23  Declaration of Taking, recorded on January 11, 1944, in Book
24  1618, page 90, Official Records, San Diego County, California.
25  The descriptions of the lands set forth in that Declaration of
26  Taking are incorporated into these Findings and made part of them
27  by reference.

28        The United States of America on February 8, 1949,
29  acquired in Orange County, California, fee simple title to
30  112.11 acres, which were made a part of Camp Pendleton, which
31  lands are more particularly described in Association Grant Deed,

-2-

16320

1  recorded August 30, 1949, in Book 1895, page 371, Official

2  Records, Orange County, California.  The description of the

3  lands set forth in that Association Grant Deed are incorporated

4  into these Findings and made a part of them by reference.

5       The United States of America by intra-governmental

6  transfer of public domain, in San Diego County, California,

7  added to Camp Pendleton, these lands which are more particularly

8  described as follows:  (1,574.61 acres)

9       Sections 5 to 8, inclusive, Township Nine (9)
        South, Range Four (4) West, and Sections 1,
10      2, 11, 12 and 13, Township Nine (9) South,
        Range Five (5) West, San Diego County, S.B.B.M.
11

12       At all times since the acquisition or transfer of the

13  approximately 136,130.85 acres of land referred to in this

14  Finding, title in fee simple has resided in the United States

15  of America and it has exercised full possession and control of

16  those lands, utilizing them for the purposes for which the Naval

17  Enclave was established, all as more fully set forth in

18  subsequent findings.

19                           2.

20  Certain Lands in Private Ownership          Veeder #1b, 12/8/62,
    at the Time of the Treaty of               slightly modified by
21  Guadalupe Hidalgo                          Girard

22       The lands referred to above constituting the United

23  States Naval Ammunition Depot, Camp Pendleton and the United

24  States Naval Hospital, were acquired from the Rancho Santa

25  Margarita by the United States of America and were in private

26  ownership at the time of the Treaty of Guadalupe Hidalgo and

27  remained in private ownership until acquired by the United States

28  of America as set forth in Finding 1 above.

29                           3.

30  Sovereignty                                            Girard

31       Letters of Acceptance of Sovereignty were forwarded to

-3-

16321

the Governor of the State of California for certain lands within the Naval Enclave as follows:

| Date of Letter | Tract Described in Letter |
| --- | --- |
| January 12, 1943 | Acceptance of the 9,147.55-acre tract acquired January 21, 1942 |
| September 8, 1943 | Acceptance of the 122,202.72-acre tract acquired December 31, 1942 |
| February 18, 1944 | Acceptance of the 1,676.58-acre tract acquired December 23, 1943. |

The record in this case fails to show that Letters of Acceptance were filed with the California Governor covering the 1574.61-acre tract, County of San Diego, withdrawn from the public domain August 8, 1945, nor of the 112.11-acre tract acquired by Deed of Title February 8, 1949.

The United States of America has never filed a plat of the reservation, nor metes and bounds description of the Naval Enclave pursuant to California Statutes of 1897, Chapter 56, page 51, codified into Section 114, Government Code, in effect until repealed September 19, 1947, by the California Statutes of 1947, Chapter 1532, page 3163; nor has the United States of America perfected its application to the California State Lands Commission for consent to acquire the land comprising the Naval Enclave, nor has the said Commission given its consent to such acquisition, pursuant to section 126, California Government Code (California Stats. First Extraordinary Session, 1946, Ch. 154, p. 199).

That the above facts present a substantial question of law as to whether the United States of America has acquired exclusive jurisdiction to the lands comprising the Naval Enclave. That there is presently before the United States Supreme Court the case of Paul v. United States, Case No. 239, October Term, 1961, wherein that Court may well decide on similar facts this

-4-

16322

1  substantial question of law.  Because of this fact, this Court
2  is not at this time entering conclusions of law on this question
3  of exclusive jurisdiction, but jurisdiction is hereby expressly
4  reserved to make such conclusions of law as such facts as found
5  herein warrant at such time as the above-entitled case now
6  before the United States Supreme Court becomes final.  Such
7  jurisdiction may be exercised by this Court upon its own motion,
8  or at the request of the United States of America or any
9  defendant in this case.

10                                4.

11  Description of the Santa Margarita
    River (surface) within the Naval
12  Enclave                                    Veeder #16, 2/8/62

13        The Santa Margarita River enters the Naval Enclave in
14  the Southwest Quarter of the Southwest Quarter (SW$\frac{1}{4}$ SW$\frac{1}{4}$),
15  Section Twelve (12), Township Nine (9) South, Range Four (4)
16  West, S.B.M., cutting the northwest corner of Section Thirteen
17  (13) thence diagonally across Section Fourteen (14), where at
18  the center of that section it becomes the north and western
19  boundary of the United States Naval Ammunition Depot; across
20  Section Fifteen (15), entering and leaving a short distance in
21  the Southeast Quarter of the Southeast Quarter (SE$\frac{1}{4}$ SE$\frac{1}{4}$) of
22  Section Sixteen (16), re-entering Section Fifteen (15), thence
23  traversing the Northwest corner of Section Twenty-two (22), then
24  across Section Twenty-one (21); and across the Northwest corner
25  of Section Twenty-eight (28) from which point it no longer con-
26  stitutes the boundary of the Naval Ammunition Depot.  From the
27  point where the surface channel of the Santa Margarita River
28  leaves the Northwest corner of Section Twenty-eight (28) it
29  proceeds southwesterly across Section Twenty-nine (29).  There
30  are no other water users or water right claimants or land owners,
31  other than the United States of America, on the Santa Margarita

                              -5-

                                        16323

1  River downstream from the place where that river enters the
2  Naval Enclave.

3                                5.

4  Riparian Lands                          Veeder 1d, 2/8/62

5          The boundary of the watershed of the Santa Margarita
6  River within the Naval Enclave is set forth on the map, marked
7  Exhibit A, designated "Physical Features of the Santa Margarita
8  River Watershed," which is attached to these Findings of Fact
9  and made a part of them by reference.  Within the Naval Enclave
10  there are 38,031 acres which are within the watershed and
11  riparian to the Santa Margarita River.

12                                6.

13  National Defense                        Veeder 2b and 2c, 2/8/62

14          The Naval Enclave is vital to the National Defense, and
15  in the development of the Enclave for purposes of National
16  Defense there has been expended by the United States of America
17  approximately $200,000,000.00.

18          Construction of the Naval Enclave was initiated in the
19  year, 1942; and the installations constituting it were completed
20  to substantially their present size by the year, 1944.  They
21  were then, and have been at all times since, used for purposes of
22  National Defense.

23                                7.

24  Location of Buildings
25  and Installations                       Veeder 2c, 2/8/62

26          Sixty per cent (60%) of the buildings and installations
27  within the Naval Enclave at which Santa Margarita River waters
28  are used were planned and constructed outside of the watershed
29  of that stream.

30                   -

31                        -

                              -6-

8.

Naval Enclave Uses                                    Girard #3, 11/16/61

That it is the basic function of the Naval Enclave to provide housing and training facilities for units of the Armed Forces; to conduct training of units of the Armed Forces in amphibious warfare and experimental work with landing craft, landing vehicles, tracked and affiliated equipment of the various units of the United States Marine Corps, including air-ground support coordination, and use of artillery, tanks and other equipment used in the conduct of modern amphibious and land warfare.  In addition to the aforementioned activities, it is the function of Camp Pendleton to provide logistic support for units of the United States Marine Corps together with military maintenance and storage facilities for supplies and equipment and to house and train replacements for subsequent assignment to various operative units of the United States Marine Corps.

The United States Naval Hospital, with a capacity of approximately 1550 beds, established within the Naval Enclave, provides medical and hospital services to personnel of the Armed Forces, their dependents and other authorized personnel stationed at approximately eighty-three Naval shore activities located in the Southern California area and provides medical and hospital care to personnel of units of the United States Fleet.

The United States Naval Ammunition Depot provides facilities for the storage, segregation, reconditioning and issuing of ammunition for operating units of the United States Fleet and the United States Marine Corps and maintains ammunition stocks for shore establishments of the United States Navy located in the Southern California area.  In addition, the Naval

16325

1  Ammunition Depot stores and ships ammunition for use by combat

2  elements of the United States Navy and the United States Marine

3  Corps.

4                                    9.

5  <u>Naval Enclave Population, Etc.</u>                Girard #39, 11/17/61

6          That the use of the waters of the Santa Margarita River

7  by the United States of America on its Naval Enclave both within

8  and without the watershed other than for irrigation are uses

9  essentially municipal in character; that said water is used to

10 satisfy the needs of the population of the military enclave,

11 both military and civilian; that said population has averaged

12 approximately 42,000 people per year; that in addition to hous-

13 ing of Naval personnel, said Naval Enclave of the United States

14 of America provides housing facilities for dependents of the Naval

15 personnel, and since 1958 the number of such dependents residing

16 thereon has averaged approximately 5500 individuals annually;

17 that in addition to the dependents of said Naval personnel,

18 limited numbers of civilians, not dependents, are residing on

19 said Naval Enclave; that the projected total population for the

20 fiscal year, 1959, of the Naval Enclave was approximately 61,600

21 persons.  In time of war and full mobilization, the maximum

22 population of the Naval Enclave is projected at _____ persons.

23                                   10.

24 Specific Types of Facilities within
   the Naval Enclave which use Waters
25 of the Santa Margarita River              Girard #40, 11/17/61

26          That in order to provide for the welfare of the persons

27 living on the Naval Enclave as found above in Finding 9, a

28 variety of facilities exists thereon including, but not limited

29 to, the following:

30          a.  Housing in barracks, single-family and multi-

31 family dwellings.

                                  -8-

b.   Messing and restaurant facilities.

c.   Medical and dental facilities.

d.   Recreational facilities including a golf course, swimming pools, lake for boating, gymnasiums, tennis and hand-ball courts, beach facilities, miscellaneous athletic and play-ground facilities, and stables.

e.   Theatres.

f.   Libraries.

g.   Churches.

h.   Clubs and social facilities.

i.   Schools.

j.   Garbage and sewage and waste disposal facilities.

k.   Police facilities.

l.   Fire protection facilities.

m.   Transportation facilities.

n.   Railroad, truck and bus terminals.

o.   Retail trading facilities.

p.   Laundries and dry cleaning establishments.

q.   Warehousing and storage facilities for both military and civilian goods.

r.   Clothing and shoe repair facilities.

s.   Garages and vehicle repair facilities.

t.   Ordnance and weapons repair facilities.

u.   Harbor and boat basin facilities.

v.   Aircraft and helicopter landing facilities.

w.   Salvage yard facilities.

x.   Barber shops and beauty shops.

y.   Rock crushing and bulk cement plants.

z.   Commercial vegetable and flower growing.

aa.  Commercial orchards.

bb.  Commercial grazing of livestock.

-9-

16327

1             cc.   Greenhouses.

2             dd.   Private gardens.

3             ee.   Public gardens and landscaping.

4             ff.   Commercial vegetable packing.

5             gg.   Newspaper.

6 That all of the foregoing facilities derive their supply of

7 water from the Santa Margarita River; that there is no sub-

8 stantial difference insofar as water demand and uses are con-

9 concerned, between that which has existed and that which presently

10 exists on the Naval Enclave, from that required by a city of

11 comparable size.

12                              11.

13 Future Jurisdiction                     Girard #5, 11/17/61

14         That the United States of America by bringing this

15 action has submitted to the jurisdiction of this Court and to the

16 continuing jurisdiction of this Court in this cause, and all

17 rights claimed to the use of the waters of the Santa Margarita

18 River and its tributaries and all rights claimed to the use of

19 the waters which add to and support the Santa Margarita River and

20 its tributaries by the United States of America and all defendants

21 in this case and by their heirs, successors and assigns shall be

22 and are subject to the continuing jurisdiction of this Court.

23                              12.

24 Stipulation as to California Law         Veeder #6, 2/8/62

25         On November 29, 1951, the United States of America and

26 the State of California entered into a written stipulation in

27 this case which provided as follows:

28         "On the 15th day of August, 1951, the People of the

29 State of California, in accordance with invitation of the United

30 States of America, petitioned this Court to intervene in this

31 litigation.  On that date an Order was allowed and entered by

1  this Court granting the Petition.

2          "For the clarification of the issues in this litigation,

3  and for the benefit of all of the parties to this cause, it is

4  hereby stipulated:

5                          "I

6          "That in Paragraphs VIII and IX of plaintiff's

7  Complaint herein, and in Paragraphs 2 and 3 of the Prayer of this

8  Complaint, the word 'paramount' is used in the same sense in

9  which that word is used in the second paragraph, on page 374 of

10  the opinion of the Supreme Court of California, in the case of

11  Peabody v. Vallejo, 2 Cal.2d 351 (fourth paragraph on page 494,

12  40 Pac.2d 486).

13                          "II

14          "That in this cause, the United States of America

15  claims only such rights to the use of water as it acquired when

16  it purchased the Rancho Santa Margarita, together with any rights

17  to the use of water which it may have gained by prescription or

18  use, or both, since its acquisition of the Rancho Santa

19  Margarita.

20                          "III

21          "That the United States of America claims by reason of

22  its sovereign status no right to the use of a greater quantity of

23  water than is stated in Paragraph II, hereof.

24                          "IV

25          "That the rights of the United States of America to

26  the use of water herein are to be measured in accordance with the

27  laws of the State of California.

28                          "V

29          "That the parties to this Stipulation will request the

30  entry of a Pre-trial Order by this Court defining the issues in

31  this cause, in conformity with the statements contained in this

-11-

16329

1    Stipulation.

2                              "VI

3          "That there will be a full, complete and mutual

4    exchange of data and information as to the subject matter of

5    this cause collected by the respective parties to this

6    Stipulation, including data respecting the issuance of any

7    permits or licenses issued by the State of California in con-

8    nection with the rights to the use of water of the Santa

9    Margarita River.  Such exchange of information by the United

10   States, will be subject to clearance by the Commanding Officer,

11   Camp Joseph H. Pendleton, in respect to military security, as

12   determined by said officer:"

13         "Dated:  November 29, 1951.

14   "ERNEST A. TOLIN,            EDMUND G. BROWN
     United States Attorney       EDMUND G. BROWN, Attorney General
15   BETTY MARSHALL GRAYDON        of the State of California
     Assistant United States
16   Attorney
     WILLIAM H. VEEDER,           ARVIN B. SHAW, JR.
17   Special Assistant to the     ARVIN B. SHAW, JR.
     Attorney General of the      Assistant Attorney General
18   United States
                                   B. ABBOTT GOLDBERG
19   by                            B. ABBOTT GOLDBERG
                                   Deputy Attorney General
20   WILLIAM H. VEEDER
     WILLIAM H. VEEDER            Attorneys for the People of the
21                                 State of California"

22                             13.
                                        Sachse; also Carter
23   Authorization for Stipulation     Conclusion of Law, a and b

24         That counsel for the United States of America in this

25   case was authorized to enter into the Stipulation set forth above

26   in Finding of Fact 12 and his action in so doing was authorized,

27   ratified and approved by the Attorney General of the United States

28   and the Department of Justice.

29                             14.

30   Certain Parties Agree to be Bound
     by the Stipulation                            Sachse
31

                              -12-

                                             16330

1    That on or about _____ said Stipulation
2  referred to above in Finding 12 was joined in and consented to
3  by counsel for defendants, Fallbrook Public Utility District,
4  Vail Company and _____.

5                        15.

6  California Law Binds All Parties
   to this Case                                          Girard
7

8    That all parties to this case have tried this matter
9  before this Court on the theory that the rights to the use of the
10  waters of the Santa Margarita River and its tributaries and the
11  rights to the use of waters which add to and support said River
12  and its tributaries shall be determined by California law as to
13  the plaintiff and all defendants in this cause.  That, therefore,
14  by so proceeding upon this theory before this Court, all parties
15  to this action not parties to the Stipulation referred to in
16  Finding 12 above, and not defendants who expressly joined in and
17  consented to said Stipulation as set forth in Finding 14 above,
18  have implied, by their conduct in this case, assent to the
19  substance of said Stipulation; and their rights and the rights
20  of all parties in this case shall be and are determined by the
21  laws of the State of California.

22    That notwithstanding said Stipulation set forth in
23  Finding of Fact 12, there is no Federal water law as such and of
24  necessity this Court would be required to determine the rights
25  of all parties to the use of the waters of the Santa Margarita
26  River and its tributaries and to the use of the waters which add
27  to and support said River and its tributaries, pursuant to the
28  applicable laws of the State of California concerned with water
29  rights.

30                        16.

31  Opinion Construing Stipulation                        Girard

                        -13-

                                        16331

1      That heretofore this Court entered an Opinion dated

2 August 8, 1958, reported in United States of America v. Fall-

3 brook Public Utility District, et al., 165 Fed.Supp. 806, which

4 in part concerned the meaning, application and scope of the

5 Stipulation referred to in Finding of Fact 12 hereinabove.

6 That to the extent that said Opinion is not inconsistent with

7 any finding entered herein, said rulings as are set forth

8 in said Opinion are adopted herewith.

9

10                                   17.

11 Surface Flow of

12 Santa Margarita River.              Girard #8, 11/17/61

13      That at that point as found hereinabove in Finding 4

14 where said Santa Margarita River enters the lands of the United

15 States of America, and throughout its course to the Pacific

16 Ocean under natural conditions, i.e., in a state of nature,

17 said River flowed on the surface or almost immediately there-

18 under; that the evidence in this case shows that under natural

19 conditions, i.e., in a state of nature, there existed generally

20 either surface streams or pools of water from that point to the

21 Pacific Ocean; that said surface waters were available to and

22 - - - -

23 - - - -

24 - - - -

25 - - - -

26 - - - -

27 - - - -

28 - - - -

29 - - - -

30 - - - -

31 - - - -

16332

1  used by cattle; that even in those areas where there was no

2  visible surface flow or pools, the waters of said River were

3  almost at the surface and in many areas the ground was saturated

4  as evidenced by marshes and phreatophytes of a type which would

5  exist only where the waters within the ground were at or near

6  the surface.  That in fact the predecessor in interest of the

7  United States of America found such grasses and other native

8  vegetation to be suitable for stock grazing and most of the area

9  of the flood plain of the Santa Margarita River was by said

10  predecessor used for this purpose.

11                              18.

12  Naval Enclave Condition in a State        Sachse #8A, 2/5/62
    of Nature, and Ground Water Levels        modified by Girard

13

14         A water level within at least five (5) feet of the

15  surface of the ground was necessary to maintain such native

16  cover and such native cover consumed on the average approxi-

17  mately 1.2 acre feet of water per acre per year. With the

18  development of pumping and irrigaton within the Naval Enclave

19  and upstream therefrom, the ground water level throughout most

20  periods of the year has declined to a depth greater than five

21  (5) feet below ground surface and the pumping of waters from

22  the younger alluvial deposits (hereinafter determined to be a

23  part of the Santa Margarita River) within the Naval Enclave

24  and the use of such waters both within and without the water-

25  shed has substantially contributed proximately to said decline

26  in said ground water levels.  That the use of ground waters as

27  presently practiced by the United States of America within the

28  Naval Enclave is such that it is impossible to maintain the

29  ground water level at an elevation sufficient to support native

30  vegetation upstream from the Ysidora ground water storage unit

31  in that the present uses of said ground waters by the United

                            -15-

                                          16333

1  States of America within the Naval Enclave are such that those

2  uses alone would, in most periods, result in the ground water

3  levels in the upper and middle areas of the younger alluvial

4  deposits being lower than that required to support native

5  vegetation.

6                                    19.

7  Present Surface Flow of Santa
   Margarita River                    Sachse #9, 2/5/62

8

9          That in the summer of 1961 the Santa Margarita River

10  flowed within the Naval Enclave as a surface stream to a point

11  in the E½ of Section 15, Township 9 South, Range 4 West,  S.B.M.

12  at which point it disappeared into the underground. Downstream

13  from that point the Santa Margarita River only existed as a

14  surface stream on or about said date after periods of precipi-

15  tation and runoff or at such times and locations as surface

16  flows existed by reason of discharge of sewage effluent into the

17  surface bed of the River as is more particularly set forth here-

18  inafter in Finding 24.

19          That the Santa Margarita River under ordinary condi-

20  tions immediately preceding the summer of 1961 has flowed as a

21  perennial stream to a point in Section 5, Township 10 South,

22  Range 4 West, S.B.M. and that said change in the extent of said

23  River as a perennial stream which was evidenced in the summer

24  of 1961 resulted principally from a combination of drought

25  conditions and diversions from the River upstream from the

26  Naval Enclave at a point in _____.

27                                    20.

28  Younger Alluvial Deposits Which Underlie
    Santa Margarita River on Naval Enclave    Girard #10, 11/17/61

29

30          That commencing at a point just upstream from the

31  confluence of DeLuz Creek with the Santa Margarita River and

                                   -16-

                                              16334

1    continuing downstream to the confluence of said River with the

2    Pacific Ocean, there are substantial younger alluvial deposits;

3    that said younger alluvial deposits are depicted on U. S. Ex-

4    hibit 37 which exhibit is herein incorporated and made a part

5    of these findings by reference; that said younger alluvial

6    deposits were laid down by the Santa Margarita River and deposi-

7    tion of material eroded from the  adjacent hills; that these

8    younger alluvial deposits are composed of sedimentary materials

9    and have a relatively high water-bearing capacity and permeabi-

10   lity.

11          That said younger alluvial deposits as evidenced by said

12   U. S. Exhibit 37 are not uniform in area within the Naval En-

13   clave and for the sake of convenience in this case saidyounger

14   alluvial deposits have been referred to as sub-basins or ground

15   water storage units, and specifically in downstream order, the

16   Upper, the Chappo and the Ysidora Sub-Basins or ground water

17   storage units.  That as set forth hereafter saidyounger alluvial

18   deposits are not in fact a basin or sub-basin but are in fact

19   continual younger alluvial deposits, not separated, all of which

20   are a part of the Santa Margarita River and within the beds and

21   banks of an underground stream.

22          In essence, the reason that said younger alluvial

23   deposits have been referred to in this case as the Upper, Chappo

24   and Ysidora Sub-basins or ground water storage units is that the

25   Upper Sub-basin evidences a substantial area of younger alluvial

26   deposits which are inter-connected to the Chappo Sub-basin by

27   a relatively narrow area of younger alluvial deposits in Sec-

28   tion 18, Township 10 South, Range 4 West, S.B.M., and the Chappo

29   Sub-basin is evidenced by a rather extensive area of younger

30   alluvial deposits which are connected to the Ysidora Sub-basin

31   by a relatively narrow area of younger alluvial deposits in

-17-

16335

1  Section 26, Township 10 South, Range 5 West, S.B.M.  As found
2  hereinabove, there is no barrier to ground water movement between
3  said designated sub-basins, and the younger alluvial deposits
4  which comprise these designated sub-basins conform essentially,
5  insofar as ground water movement is concerned, to a surface
6  stream which is wide in one area, narrows in another and then
7  widens again as it proceeds downstream.
8         That from the evidence as introduced in this case,
9  the total ground water storage capacity of the younger alluvial
10 deposits which underlie the Santa Margarita River within the
11 Naval Enclave, and which, as found hereinafter are a part of
12 said River, is 61,600 acre feet of which 24,000 acre feet is
13 useable.  (These last two figures may not be correct and
14 Col. Bowen will have to be consulted here).
15                          21.
16 Geologic Features concerning Younger        Girard #11, 11/17/61
17 Alluvial Deposits which underlie Santa
18 Margarita River within the Naval Enclave.
19        That the younger alluvial deposits as found in
20 Finding 20 above, rest upon and are confined laterally by depo-
21 sits of consolidated rocks; that these deposits of consolidated
22 rocks are essentially non-water bearing and are composed of
23 considerably more compacted materials than the younger alluvial
24 deposits; that as a result thereof, ground waters which are
25 within the younger alluvial deposits do not move laterally or
26 vertically into said consolidated rocks, but do in fact move
27 through the younger alluvial deposits in the identical direction
28 as the surface flow of Santa Margarita River or rise to the
29 surface and flow as surface flow westerly toward the confluence
30 of that River with the Pacific Ocean; that in the most westerly
31 or downstream portion of the younger alluvial deposits and below

-18-

16336

the Ysidora Narrows which is located in Section 10, Township 11
South, Range 5 West, S.B.B.M., there are, within said younger
alluvial deposits, deposits of fossil shells which were laid
down by marine action; that while said fossil shell deposits are
generally less permeable than the younger alluvial deposits they
do not act as a barrier to the movement of ground waters within
the younger alluvial deposits and said ground waters move
through, over and around said fossil shell deposits within said
younger alluvial deposits toward the Pacific Ocean.

                              22.

Fluctuations of Surface Flow
of Santa Margarita River            Girard #12, 11/17/61

        That the location of the surface flow of the Santa
Margarita River is upon the younger alluvial deposits referred
to hereinabove; that the area of surface flow thereon will
fluctuate considerably and it is not uncommon for the surface
flow to shift its position upon the younger alluvial deposits
from year to year or within eachyear during periods of sub-
stantial surface flow.

                              23.

Principal Causes of Fluctuations
of Rising Waters                    Sachse

        That as found hereinabove, the points where the waters
rise to the surface and flow as surface stream over the younger
alluvial deposits may vary considerably; that said variance
in points of rising surface flow is the result of pumping of the
waters contained in the younger alluvial deposits by the United
States of America, of pumping and diversions of the waters of the
Santa Margarita River and tributaries thereto upstream from the
Naval Enclave, and of fluctuations in precipitation and conse-
quent runoff.

                              -19-

                                        16337

24.

**Sewage Effluent Discharges**          Sachse #14, 2/5/62, Bowen
                                        supplied amounts, etc.

That in a state of nature the ground waters which are
contained within the younger alluvial deposits which underlie
the surface flow of Santa Margarita River on the Naval Enclave
have as their principal source of recharge the surface waters
of the Santa Margarita River and its tributaries, and to a
lesser extent precipitation upon said area.  That under
present conditions the United States of America has contributed
to the recharge of the ground waters within said younger
alluvial deposits on the Naval Enclave by a comprehensive program
of processing sewage and returning the effluent therefrom to
the younger alluvial deposits. That the sewage effluent returned
had previously been diverted from said Santa Margarita River.
That such return of sewage effluent to the younger alluvial
deposits is made from Plant No. 1 at locations in the NE$\frac{1}{4}$ of
the NE$\frac{1}{4}$ of Section 8, Township 10 South, Range 4 West, S.B.M.;
and in the SE$\frac{1}{4}$ of the NW$\frac{1}{4}$ of Section 8, Township 10 South,
Range 4 West, S.B.M.; from Plant No. 8 at a location in the
SW$\frac{1}{4}$ of the SW$\frac{1}{4}$ of Section 13, Township 10 South, Range 5 West,
S.B.M.; from Plant No. 3 at a location in the NW$\frac{1}{4}$ of the NE$\frac{1}{4}$
of Section 26, Township 10 South, Range 5 West, S.B.M.; from
Plant No. 2 at a location in the SE$\frac{1}{4}$ of the NW$\frac{1}{4}$ of Section
35, Township 10 South, Range 5 West, S.B.M.; and from
Plant No. 13 at a location in the NE$\frac{1}{4}$ of the SW$\frac{1}{4}$ of Section 10,
Township 11 South, Range 5 West, S.B.M.; and has been made in
the following amounts from the following plants:

- - -

- - -

- - -

-20-

16338

SEWAGE EFFLUENT DISCHARGES

Acre Feet

| Water Year | Plant No. 1 | Plant No. 2 | Plant No. 3 | Plant No. 8 | Plant No. 13 |
|---|---|---|---|---|---|
| 1944 | | | 228.45 | | |
| 1945 | | | 373.90 | | |
| 1946 | | | 354.64 | | |
| 1947 | | | 345.50 | | |
| 1948 | | | 477.61 | | |
| 1949 | | | 474.66 | | |
| 1950 | | | 470.74 | | |
| 1951 | | | 536.96 | | |
| 1952 | 282.00 | 172.88 | 631.94 | | |
| 1953 | 1171.74 | 866.93 | 681.48 | | |
| 1954 | 1094.02 | 704.93 | 509.14 | 54.65 | 25.02 |
| 1955 | 1054.85 | 732.03 | 586.38 | 153.01 | 181.36 |
| 1956 | 1045.38 | 724.14 | 683.15 | 249.47 | 258.89 |
| 1957 | 843.98 | 788.50 | 588.05 | 243.07 | 225.87 |
| 1958 | 880.05 | 756.09 | 570.59 | 274.67 | 229.08 |
| 1959 | 693.81 | 707.44 | 440.10 | 204.98 | 422.03 |
| 1960 | 728.22 | 677.38 | 390.42 | 252.04 | 513.03 |
| 1961 | 761.55 | 709.68 | 337.85 | 311.74 | 414.76 |

The practices described hereinabove are commendable and by reason thereof the Naval Enclave is making the most efficient use of the natural water supply.

25.

Water Conservation Practices within the Naval Enclave

Sachse, #14A, 2/5/62

That the United States of America has diligently attempted to make the maximum and most efficient use of the waters available within the Naval Enclave, and in connection

-21-

16339

1   therewith has constructed spreading works to increase the

2   natural percolation of surface waters into the underground allu-

3   vium and has entered into a comprehensive control of phreato-

4   phytes and other water-loving vegetation, and the said conserva-

5   tion practices have in fact resulted in the conservation of

6   waters in a substantial but undetermined amount.

7                               26.

8   Inter-connection of Ground and Surface Waters

9   with the Younger Alluvial Deposits which

10  Underlie Santa Margarita River          Sachse, #15, 2/5/62

11          That during such times as there is surface flow through-

12  out the course of the Santa Margarita River over the younger

13  alluvial deposits within the Naval Enclave the ground waters

14  within said younger alluvial deposits are in direct physical

15  contact with such surface flows.  During such times as there is

16  no surface flow throughout the course of the River within the

17  Naval Enclave but only occasional surface waters at points where

18  ground waters contained within the younger alluvial deposits

19  have risen to the surface or the points where sewage effluent

20  has been discharged, such surface flows are nevertheless in

21  direct physical contact with the ground waters within the

22  younger alluvial deposits and said ground waters and surface

23  flow move in identical directions, i.e., westerly toward the

24  Pacific Ocean.

25                              27.

26  Ground Waters Within Younger Alluvial      Girard #16, 11/17/62

27  Deposits part of the Santa Margarita River.

28          That the deposits of consolidated rocks on each side

29  of the younger alluvial deposits and upon which said younger

30  alluvial deposits rest do in fact impede the ground waters from

31  moving out of the younger alluvial deposits and into the

                               -22-

                                             16340

1   consolidated rocks and do in fact act in the same manner as a

2   substantial impermeable bed and bank of a surface stream chan-

3   nel; that the ground waters within the younger alluvial deposits

4   as found herein are in fact in a known and definite channel, to

5   wit, the younger alluvial deposits, do in fact move in the same

6   direction as the surface flow, are in fact in direct contact

7   with the surface flow when it does flow, and do constitute

8   that water which rises to the surface and then disappears during

9   periods other than periods of considerable precipitation, and

10  said ground waters and said surface flow of the Santa Margarita

11  River are in fact one stream herein referred to as the Santa

12  Margarita River.

13                              28.

14  Vertical Depth of Younger Alluvial Deposits
    and Reliance on United States Evidence for
15  Contact Line                                    Girard #17,11/17/62

16          That the vertical depth of the younger alluvial deposits

17  are depicted on U. S. Exhibit 39 which exhibit is incorporated

18  herein by reference; that thegreatest known depth of said

19  younger alluvial deposits is in the vicinity of wells 11/5 10B1

20  and 11/5 2N4 as said wells are delineated on U. S. Exhibit 38

21  incorporated herein by reference; that although the contact line

22  on the surface between the younger alluvial deposits and the

23  deposits of consolidated rock has not been determined with

24  absolute exactness, the determination of said contact line was

25  sufficient for the United States of America to prepare maps and

26  exhibits showing said contact line (including U. S. Exhibit 37)

27  and said contact line as established by said maps and exhibits

28  prepared by the United States of America has been accepted by

29  this Court as being the contact line between younger alluvial

30  deposits and deposits of consolidated rock on ground surface.

31  - - - -

                              -23-

                                            16341

29.

All Naval Enclave Producing Wells
Pump Waters of the Santa Margarita
River                                    Girard #18, 11/17/61

That it is true that all presently producing wells
which are drilled into the younger alluvial deposits, as said
deposits are depicted on U. S. Exhibit 37, do not extend into
the consolidated rocks which lie beneath the younger alluvial
deposits, but that all of such wells are drilled into and
their depth is within said younger alluvial deposits, and that
all of such wells pump waters of the Santa Margarita River.

30.

Ground Water Contours Within
Naval Enclave.                           Girard #19, 11/17/61

That the ground water contours within said younger
alluvial deposits are depicted  on U. S. Exhibit 45 incorporated
herein by reference.  That said exhibit shows in essence that
the ground water levels within said area of younger alluvial
deposits do not stand at or about the same levels, but in
October, 1957, in fact, stood at or about one hundred thirty-
five feet (135') about mean sea level at the point of confluence
of DeLuz Creek with the Santa Margarita River and thence
followed an approximately even downward gradient for the entire
length of said younger alluvial deposits to an elevation of
approximately five (5) feet above mean sea level at that point
where the Santa Margarita River discharges into the Pacific Ocean.

31.

Naval Enclave Lands Riparian to
Santa Margarita River.                   Girard

That the following lands referred to in Finding 1
hereinabove are riparian to the Santa Margarita River, said
lands being held under one chain of title a part of which abuts

-24-

16342

upon or is traversed by the Santa Margarita River.

A.   That part of the 9,147.55 acres, more or less, which are within the watershed of the Santa Margarita River which lands are included within the particular description in the Amended Judgment recorded November 26, 1944, in Book 1794, page 133 Official Records, San Diego County, California.

B.   That part of the 123,620 acres, more or less, which are within the watershed of the Santa Margarita River which lands are included within the particular description in the Decree of Declaration of Taking recorded January 9, 1943, in Book 1448, page 192, Official Records, San Diego County, California.

(I don't know whether any other lands of the United States are riparian to the Santa Margarita River or not. If they are, I am sure Col. Bowen will supply this information and I will, of course, incorporate by additions any other lands which Col. Bowen advises are riparian to the River).

32.

Area of Use of Santa Margarita River

Water Within Naval Enclave          Girard #21, 11/17/61

That since the acquisition by the United States of America of the lands comprising the Naval Enclave said United States of America has used water in substantial amounts from the Santa Margarita River. That said uses of said waters have been for both military and agricultural purposes within the Santa Margarita River watershed; that in addition to the use of the waters of the Santa Margarita River within its watershed, the United States of America has exported large quantities of water from said River for both military and agricultural pur- poses to areas within the Naval Enclave situated outside of the watershed; that commencing with the water year 1944 the United

-25-

States of America has annually used waters of the Santa Margarita
River for military purposes within and without the Santa Mar-
garita River watershed in the Naval Enclave in the following
amounts:

| | USE WITHIN WATERSHED | | | USE WITHOUT WATERSHED | | |
|---|---|---|---|---|---|---|
| | | (In acre feet) | | | | |
| WATER YEAR | MILITARY | AGRICULTURAL | TOTAL | MILITARY | AGRICULTURAL | TOTAL |
| 1944 | 1840 | 730 | 2570 | 1780 | 1150 | 2930 |
| 1945 | 2040 | 610 | 2650 | 1940 | 950 | 2890 |
| 1946 | 1800 | 920 | 2720 | 1730 | 1440 | 3170 |
| 1947 | 1550 | 840 | 2390 | 1690 | 1310 | 3000 |
| 1948 | 2030 | 1090 | 3120 | 1790 | 1710 | 3500 |
| 1949 | 2150 | 880 | 3020 | 2060 | 1370 | 3430 |
| 1950 | 1880 | 890 | 2770 | 2060 | 1380 | 3440 |
| 1951 | 1830 | 630 | 2460 | 1990 | 990 | 2980 |
| 1952 | 2100 | 560 | 2660 | 2280 | 870 | 3150 |
| 1953 | 2440 | 680 | 3120 | 2660 | 1070 | 3730 |
| 1954 | 2170 | 740 | 2910 | 2030 | 1150 | 3180 |
| 1955 | 2390 | 740 | 3130 | 2340 | 1160 | 3500 |
| 1956 | 2660 | 680 | 3340 | 2410 | 1070 | 3480 |
| 1957 | 2430 | 600 | 3030 | 2470 | 940 | 3410 |
| 1958 | 2460 | 460 | 2920 | 2390 | 730 | 3120 |
| 1959 | 2510 | 670 | 3180 | 2850 | 1060 | 3910 |
| 1960 | 2040 | 430 | 2670 | 2600 | 680 | 3280 |

33.

Use of Water Outside Watershed by Predecessor
of the United States of America, and Legal
Status of Such Uses by Predecessor and the
United States.                                   Sachse #22,2/5/62

That commencing with the irrigation season of 1937, and
continuing thereafter to the acquisition of the Naval Enclave by
the United States of America, gradually increasing amounts of
the waters of Santa Margarita River were diverted to agricultural
uses outside of the watershed by the predecessor in interest of
the United States of America.   There is no direct evidence as
to the amount of such diversions.   None of such uses of the waters
of the Santa Margarita River outside the watershed as are found
to have existed in Finding 32 above or as carried on by the
predecessor in interest of the United States of America, have
been adverse or hostile to any defendant herein.   None of the

-26-

16344

1   uses of the waters of the Santa Margarita River outside the

2   watershed of the Santa Margarita River as are found to have

3   existed in Finding 32 above or as carried on by the predecessor

4   in interest of the United States of America, have been made

5   under any appropriative right recognized by the Laws of the

6   State of California.  All of the water uses outside the water-

7   shed of the Santa Margarita River referred to in this finding

8   and in Finding 32 above have been made and are being made

9   without sanction of any water right recognized or provided by

10  the statutues and laws of the State of California.

11                              34.

12  Character of Use by the United States        Sachse #23 2/5/62
    of America of Santa Margarita River          modified slightly by
13  Waters Outside the Watershed and Fact         Girard.
    Such Use is not Unlawful
14

15          All uses by the United States of America of the waters

16  of the Santa Margarita River within its watershed have been

17  and are reasonable and beneficial as to character of use.  All

18  uses by the United States of America of waters of the Santa

19  Margarita River outside its watershed have been and are for

20  beneficial purposes as to character of use, and none of such uses

21  by the United States of America are improper or unlawful or

22  have injured any party to this cause for the reason that the

23  United States of America is the last water user upon the stream,

24  and thus can use such waters of the Santa Margarita River as

25  are physically available upon or within its lands as it chooses.

26  All uses of water by the United States of America outside the

27  watershed of the Santa Margarita River have been as conserva-

28  tive and well-managed as the uses of water by the United States

29  of America within the watershed.

30  - - - -

31  - - - -

                            -27-

                                            16345

35.

Salt Water Intrusion Downstream
from Ysidora Narrows                    Girard #24, 11/17/61

That the ground waters contained in the younger allu-
vial deposits downstream from the Ysidora Narrows are presently
and have for many years been, as a result of salt water in-
trusion, brackish and unfit for agricultural or domestic use;
that none of said waters have been used in recent times; that
said salt water intrusion has not been caused by any act of
any defendant in this cause and there is no practical method
whereby said salt water intrusion in said area can be corrected
so as to permit the beneficial use of the waters contained in
said younger alluvial deposits downstream from said Ysidora
Narrows for agricultural or domestic use.

36.

Salt Water Intrusion Upstream
from Ysidora Narrows                    Girard #25, 11/17/61

That during certain years prior to 1956 there existed
a condition of salt water intrusion from the Pacific Ocean into
the lower segments of the younger alluvial deposits above the
Ysidora Narrows; that said salt water intrusion did in fact
result in the waters of certain wells which were located in
said younger alluvial deposits being temporarily unfit for
domestic or agricultural purposes; it is not true that said
salt water intrusion was the result of any unlawful or wrong-
ful act by any defendant in this case, but on the contrary such
salt water intrusion resulted from the existence of a dry cycle
and consequent reduced runoff from the Santa Margarita River
during which period the United States of America pumped sub-
stantial quantities of the waters of said River contained
in said lower segment of the younger alluvial deposits above the

-28-

16346

1  Ysidora Narrows for use outside of the watershed of that River;

2  that as a result of that reduced runoff and pumping, the water

3  table in said lower segment of the younger alluvial deposits

4  dropped to a point below sea level and said salt water intrusion

5  occurred.

6                        37.

7  No Salt Water Intrusion at the
    Present Time above Ysidora Narrows     Girard #26, 11/17/61

8

9        That subsequent to 1956 the United States of America

10  reduced its pumping from said lower segment of the younger allu-

11  vial deposits above the Ysidora Narrows and simultaneously com-

12  menced a program of ground water recharge of said deposits; that

13  said ground water recharge program consisted of spreading sewage

14  effluent over said deposits and by the construction and operation

15  of spreading works in combination with an extensive program of

16  eradication of phreatophytes and other water-consuming vegeta-

17  tion.  That substantial amounts of the sewage effluent used to

18  recharge said area was effluent from waters of the Santa Mar-

19  garita River which had been diverted outside of its watershed as

20  found hereinabove; as a result of said water conservation

21  policies salt water intrusion into the lower segment of the

22  younger alluvial deposits above Ysidora Narrows has ceased and

23  for approximately five (5) years there has been no further salt

24  water intrusion above said Ysidora Narrows.  That these practices

25  are commendable and have contributed to the most efficient use

26  of the waters of the Santa Margarita River and its tributaries.

27  That the United States of America has now resumed limited

28  pumping from said younger alluvial deposits above said

29  Ysidora Narrows.

30  - - - -

31  - - - -

-29-

16347

38.

Defendants Did Not Wrongfully
Cause Salt Water Intrusion                    Sachse, slightly modified
                                                  by Girard

          That no past or present wrongful act of any defendant
in this case caused or now threatens to cause salt water
intrusion into any waters of the Santa Margarita River upstream
from Ysidora Narrows.

39.

Prima Facie Evidence                    Girard #28, 11/17/61

          That on Exhibit___attached to and made a part of these
findings there appear certain factual statements concerning lands
of the United States of America within the Naval Enclave which
concern such matters as wells, surface diversions, gross acreages,
irrigated acreages, irrigable acreages and water duty.  Said
factual statements which pertain to wells and surface diversions
are as of the date of this Interlocutory Judgment true.  The
factual statements contained in said Exhibit __ which pertain
to gross acreages, irrigated acreages, irrigable acreages and
water duty are based on evidence introduced in this case by
the United States of America with an express assurance by its
counsel that apportionment was not being sought at this  stage
of the litigation.  Because of this fact and the fact that this
Court is not at this time making any Order apportioning or
regulating the use of the waters involved herein, said facts
pertaining to gross acreages, irrigated acreages, irrigable
acreages and water duty are not material to any issue decided
by Interlocutory Judgment No. 37 entered herewith.  That in
the exercise of this Court's continuing jurisdiction in this
cause said facts may well be material to an issue presented to
this Court in the future; therefore, this Court finds that
such factual statements which are contained in said Exhibit___

1   which pertain to gross acreages, irrigated acreages, irrigable

2   acreages and water duty are supported by the evidence in this

3   case and such factual statements shall be _prima facie_ evidence

4   as to gross acreages, irrigated acreages, irrigable acreages

5   and water duty in any subsequent proceedings before this Court

6   in this cause; as used herein _prima facie_ evidence is that

7   which suffices for the proof of the particular fact until con-

8   tradicted or overcome by other evidence.

9                                    40.

10  Vagrant, Local, Percolating Waters and
    Surface Waters Other Than Those Herein          Girard #30, 11/17/61
11  Found to be a Part of a Specific River
    or Creek.
12

13          That all ground waters within the Santa Margarita River

14  watershed and contained within deposits of consolidated rocks,

15  weathered basement complex or basement complex, as depicted on

16  U. S.Exhibit 37, and within the Naval Enclave, are vagrant,

17  local, percolating waters not a part of the Santa Margarita

18  River or any tributary thereto; that all surface waters which

19  flow on the lands comprising the Naval Enclave within the

20  Santa Margarita River watershed are a part of the Santa Margarita

21  River or a tributary thereto.

22                                   41.

23  DeLuz Creek Surface Stream and Younger
    Alluvial Deposits Thereunder                    Girard #31, 11/17/61
24

25          That DeLuz Creek is an intermittent surface stream

26  which has its confluence with the Santa Margarita River at the

27  Southwest Quarter (SW¼) of Section 29, Township 9 South,

28  Range 4 West, S.B.BM.; that immediately upstream from its con-

29  fluence with the Santa Margarita River, and for a distance of

30  approximately one mile, said surface flow of DeLuz Creek, when

31  in fact it flows on the surface, flows over an area of younger

                                   -31-

1   alluvial deposits of considerable depth; that said younger

2   alluvial deposits are depicted on United States Exhibit 37.

3                                    42.

4   Geologic Factors Concerning Younger
    Alluvial Deposits Which Underlie
5   Surface Stream of DeLuz Creek        Girard #32, 11/17/61

6           That said younger alluvial deposits referred to in

7   Finding 41 above rest upon and are confined laterally by deposits

8   of basement complex; that there are ground waters within said

9   younger alluvial deposits; that the source and recharge of said

10  ground waters is primarily the surface flow of DeLuz Creek;

11  that the said younger alluvial deposits are composed of sedi-

12  mentary materials of a relatively high water-bearing capacity

13  and permeability; that said deposits of basement complex are

14  essentially non-water bearing and relatively impervious; that

15  as a result thereof the waters within said younger alluvial de-

16  posits do not move laterally or vertically into the deposits

17  of basement complex but do in fact move through the younger

18  alluvial deposits in the identical direction of the surface

19  flow of DeLuz Creek when in fact it exists; that during such

20  times when DeLuz Creek flows as a surface stream, that is,

21  during periods of precipitation, the ground waters contained

22  in said younger alluvial deposits are in direct contact with

23  said surface flow; that during all other times DeLuz Creek

24  does not flow as a perennial surface stream but rises to the

25  surface, disappears and rises again, and during such periods

26  the ground waters within the younger alluvial deposits do in

27  fact constitute the waters which rise and disappear as aforesaid.

28  - - -

29  - - - -

30  - - - -

31  - - - -

                                  -32-

43.

**Ground Waters Within Younger Alluvial
Deposits are a part of DeLuz Creek**          Girard #33, 11/17/61

That the ground waters within said younger alluvial
deposits are in fact in a known and definite channel, to wit,
the younger alluvial deposits; that said ground waters do in
fact flow in the same direction as the surface flow of DeLuz
Creek when in fact it physically flows, are in direct contact
with said surface flow, do constitute the surface flow which
rises to the surface and then disappears during periods other
than periods of precipitation, and said ground waters and said
surface flow constitute one creek herein referred to as DeLuz
Creek.

44.

(As soon as Col. Bowen advises as to which lands of
the Naval Enclave are riparian to DeLuz Creek, a finding will
be drafted to specifically so provide.

45.

**Continuing Jurisdiction to Determine
Extent of Younger Alluvial Deposits
and Reliance on U. S. Exhibits**          Girard #35, 11/17/61

That while it is known, definite and certain that the
younger alluvial deposits as found in Findings 41 through 43
above, rest upon deposits of basement complex, it is not known
with certainty the exact depth of said younger alluvial deposits
to their contact with said basement complex throughout said
area; that as this Court will keep continuing jurisdiction of this
cause, jurisdiction is reserved to determine such a fact if it
becomes necessary to do so in any particular factual situation
which might arise in the future; that the contact line on the
surface between said younger alluvial deposits and said base-
ment complex has not been determined with absolute exactness

-33-

1   but has been determined to a sufficient degree for the United
2   States of America to prepare maps and exhibits delineating said
3   contact line (including U.S. Exhibit 37) and said contact line
4   as established by said maps and exhibits prepared by the
5   United States of America has been accepted by this Court as
6   being the contact line between the younger alluvial deposits
7   and the basement complex deposits on ground surface.
8                              46.
9   Fallbrook Creek
10          That Fallbrook Creek is a stream of an intermittent
11  character which flows over and upon deposits of essentially
12  consolidated rocks and basement complex; that its headwaters
13  are in Sections 35 and 26, Township 9 South, Range 4 West,
14  S.B.B.M. and in a state of nature it flows through Sections 34,
15  7, 33, 32, Township 9 South, Range 4 West, S.B.B.M. and
16  Section 5, Township 10 South, Range 4 West, S.B.B.M. to its
17  point of confluence with the Santa Margarita River in the SW$\frac{1}{4}$
18  of Section 5, Township 10 South, Range 4 West, S.B.B.M.;
19  that under present conditions the flow of said Fallbrook Creek
20  is diverted into Lake O'Neil, an artificial storage reservoir
21  situated in Sections 5 and 8, Township 10 South, Range 4 West,
22  S.B.B.M.; that said Lake O'Neil is more fully described in
23  Interlocutory Judgment No. 24; that except during periods of
24  substantial precipitation and runoff Fallbrook Creek contributes
25  no water to the Santa Margarita River; that Fallbrook Creek
26  flows throughout its course on lands within the Santa Margarita
27  River watershed.
28                              47.
29          (As soon as Col. Bowen advises as to which lands of the
30  United States of America are riparian to Fallbrook Creek, I will
31  prepare a finding so providing).

                              -34-

48.

Unnamed creeks, gullies etc.          Sachse #37, 2/5/62

That in addition to the Santa Margarita River, DeLuz
Creek and Fallbrook Creek, there are numerous small creeks,
gullies and watercourses both named and unnamed tributary to
the Santa Margarita River within the Naval Enclave.  Excepting
for those streams which are supplied with sewage effluent
all such streams are intermittent and flow only during and
after precipitation and runoff.  While in the main such creeks,
gullies and watercourses flow primarily over consolidated rocks
and basement complex, there are limited areas in which shallow
alluvial deposits underlie the stream channel.  In all such
cases such shallow alluvial deposits are laterally contained by
deposits of consolidated rock or basement complex and the
ground waters contained in such alluvial deposits are in direct
physical and hydrologic contact with the surface flows, at such
times as there are surface flows, in all of said creeks, gullies
or watercourses.  The ground waters contained in such shallow
alluvial deposits, if any, are in a known and definite channel,
to wit; the younger alluvial deposits, and such ground waters
and surface flows as may exist do in fact constitute a single
creek, gully or watercourse.

49.

Jurisdiction Reserved as to Said Creeks,
Gullies, etc.                          Girard #38, 11/17/61

That said small creeks, gullies or watercourses have not
been considered in detail herein, nor has any party to this
cause requested detailed findings thereto; that as this judgment
is interlocutory, should the United States of America or any
party to this cause desire such detailed findings as to such
small creeks, gullies or watercourses, this Court will do so

-35-

16353

1   prior to the entry of final order and decree upon such a
2   request; that if no such request is made, the location of such
3   creeks, gullies or watercourses are depicted on U. S. Exhibits
4   29A, 29B, 29C, 29F, 29G and 29H incorporated herein by reference;
5   and this Court can in the future refer to said exhibits to
6   determine any controversy which may arise as to such waters.

                              50.

8   Minor Surface Impoundments          Girard #41, 11/17/61

9         That in addition to Lake O'Neil, which is the subject
10  of Interlocutory Judgment No. 24, there are within the Naval
11  Enclave and within the watershed of the Santa Margarita River,
12  many structures used for the impoundment of surface runoff for
13  the purpose of providing stock water, or to encourage ground
14  water recharge, or for purposes of soil conservation, recreation
15  or other beneficial purposes.  There is no evidence that any of
16  such structures or impoundments presently constitute an un-
17  reasonable wasteful or non-beneficial use of water.  None of
18  such structures or impoundments have been constructed or are
19  maintained under the authority of any Permit or License of
20  the State of California, and none of such structures or
21  impoundments have been maintained adversely to any party to
22  this cause.

                              51.

24  Effect of Such Minor Surface
    Impoundments                        Girard #42, 11/17/61
25

26        That all such structures and impoundments as are
27  described in Finding 50 above intercept surface runoff of waters
28  of the Santa Margarita River System, which runoff would in a
29  state of nature contribute to the Santa Margarita River; that
30  while the impact of any such individual impoundment on the
31  available water supply of the Santa Margarita River is at present

                              -36-

                                        16354

1  de minimis, the cumulative effect of such structures and

2  impoundments may at a future date become substantial and require

3  regulation or control.

4                                    52.

5  Reference to Interlocutory Decree No.25      Girard #43, 11/17/61

6         That this Court has previously entered Findings of

7  Fact, Conclusions of Law and Interlocutory Decree No. 25

8  pertaining to a State court judgment in the case of Rancho

9  Santa Margarita v. Vail, et al., Case No. 42850 in the records

10  of the Superior Court of the State of California, in and for

11  the County of San Diego.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

-37-

CONCLUSIONS OF LAW

1.

That all ground waters found within areas of deposits
of consolidated rock, basement complex or weathered basement
complex as said deposits are depicted on U. S. Exhibit 37, and
within the Santa Margarita River watershed and the Naval Enclave,
do not add to, support nor contribute to the Santa Margarita
River or any tributary thereto, and are local, vagrant
percolating waters, not a part of said River or any tributary
thereto.

2.

That all surface waters which flow upon lands of the
Naval Enclave within the watershed of the Santa Margarita River
are a part of the Santa Margarita River and subject to the
continuing jurisdiction of this Court.

3.

That all lands referred to in Finding of Fact 31 have
a correlative riparian right to the use of the waters of the
Santa Margarita River.

4.

That all lands referred to in Finding of Fact 44 have
a correlative riparian right to the use of the waters of DeLuz
Creek.

5.

That all lands referred to in Finding of Fact 47 have
a correlative riparian right to the use of the waters of Fallbrook
Creek.

6.

That the smallest tract of land held under one chain
of title and within the Santa Margarita River watershed, a part
of which abuts upon or is traversed by any area containing

-1-

16356

1  younger alluvial deposits as depicted on U. S. Exhibit 37 within

2  the Naval Enclave and not heretofore found to be riparian to a

3  specific river or creek, has a correlative riparian right to the

4  use of the ground waters within said younger alluvial deposits,

5  and such surface flow as may exist over and upon said deposits,

6  and the use of such waters shall be and is subject to the

7  continuing jurisdiction of this Court.  That except as to the

8  Santa Margarita River, DeLuz Creek and Fallbrook Creek such lands

9  have not been specifically considered in these findings, but

10  they can be readily ascertained in the future should it be

11  necessary to do so by reference to the areas of younger

12  alluvial deposits as depicted on said U. S. Exhibit 37, and the

13  watershed line as depicted on Exhibit A, attached hereto.

14                         7.

15          That the exercise of the correlative riparian rights

16  as provided in Conclusions of Law 3, 4, 5 and 6 to the use of

17  such specified waters is subject to the continuing jurisdiction

18  of this Court.  That all uses of the waters of the Santa

19  Margarita River, DeLuz Creek, Fallbrook Creek and their tribu-

20  taries and said waters which are contained within or flow upon

21  the younger alluvial deposits as provided in Finding of Fact 48

22  are subject to the continuing jurisdiction of this Court.

23                         8.

24          That the United States of America has not established

25  nor does it own or possess any prescriptive right to the use of

26  the waters of the Santa Margarita River or any tributaries

27  thereto.

28                         9.

29          That the United States of America has no rights to the

30  use of the waters of the Santa Margarita River or its tributaries

31  upon lands within the Naval Enclave, based upon its ownership of

                          -2-

1  Indian Reservation Lands, National Forest Lands, Public Domain
2  Lands, or other Federally-owned lands located elsewhere within
3  the watershed upstream from the Naval Enclave.

4                              10.

5       That by reason of the Stipulation of November 29, 1951,
6  set forth in paragraph 18 of the Findings of Fact herein, the
7  United States of America can assert no rights to the use of the
8  waters of the Santa Margarita River within the Naval Enclave
9  based upon its sovereignty, but on the contrary is limited to
10 such rights as it may have acquired from its predecessor in
11 interest, or which it may have gained since its acquisition of
12 the Naval Enclave by prescription or use or both as provided by
13 California law.

14                              11.

15      That notwithstanding the said Stipulation of November
16 29, 1951, there is no Federal water law as such and, if in fact
17 such stipulation had not been entered into, this Court would be
18 required to determine the rights to the use of the waters of the
19 Santa Margarita River and its tributaries and those waters which
20 add to and support said River and its tributaries pursuant to the
21 applicable laws of the State of California.

22                              12.

23      That the designation of the Naval Enclave, and/or
24 various portions thereof as a military reservation did not confer
25 upon the United States of America any rights to the use of the
26 waters of the Santa Margarita River or its tributaries.

27                              13.

28      That the United States of America has acquired no rights
29 to the use of the waters of the Santa Margarita River or its
30 tributaries within the Naval Enclave by inverse condemnation.

31          -

                            -3-

                                          16358

14.

That the United States of America has acquired no
rights, appropriative or otherwise, to the use of the waters of
the Santa Margarita River and its tributaries within the Naval
Enclave by reason of its conservation practices, including but
not limited to the reclaiming of sewage, the control of
phreatophytes or the construction of spreading works.

15.

That no act of the Congress of the United States in-
cluding the Acts of 1866 (14 U.S.Stats.253) and 1870 (16 U.S.
Stats. 218) and the Desert Land Act of 1877 was intended to or
does provide or could constitutionally provide that the United
States of America can acquire or take vested rights to the use
of water for its uses within the Naval Enclave without payment
of compensation.

16.

That said Acts specifically referred to in Conclusion
of Law 15 pertain to lands which were a part of the public
domain and have no application to those lands within the Naval
Enclave which are referred to in Finding of Fact 2.

17.

That the United States of America has no right to
compel any Santa Margarita River water user upstream from the
Naval Enclave to release water or curtail upstream water use so
as to allow such water to reach the Naval Enclave for the
purpose of exportation without the Santa Margarita River water-
shed.

That no upstream riparian, overlying owner, prescriptor
or appropriator shall be required to release water or curtail
reasonable and beneficial water uses so as to allow water to
reach the Naval Enclave for any purpose unless and until water

-4-

1  exportation from without the Santa Margarita River watershed by
2  the United States of America is abandoned.

3                                  18.

4          That except as provided in Interlocutory Judgment No.
5  24, the United States of America has not established nor obtained
6  nor does it own or possess any appropriative rights to use the
7  waters of the Santa Margarita River or its tributaries on any
8  lands of the Naval Enclave.

9                                  19.

10         The water conservation program of the United States of
11 America within the Naval Enclave and particularly the construc-
12 tion of spreading works, the control of phreatophytes, and the
13 reclamation of sewage have been commendable practices and have
14 resulted in the maximum use of the water resources of the Santa
15 Margarita River on the Naval Enclave.

16         The single fact that water has been conserved by the
17 United States of America by these conservation programs will not
18 in any subsequent apportionment proceedings increase the share
19 to which the Naval Enclave may be entitled, nor will that single
20 fact reduce such future allocation as may be made to the Naval
21 Enclave.  In any future apportionment proceeding the Court at
22 that time may take such conservation practices into account in
23 determining whether any use on the Naval Enclave is a reasonable
24 riparian use insofar as it concerns amounts of water consumptively
25 required to satisfy a beneficial riparian use.

26                                 20.

27         This court does not pass upon the question of whether
28 the maintaining of natural grass and vegetation cover on the
29 lands of the Naval Enclave within the Santa Margarita River
30 watershed are or will be in the future a reasonable and beneficial
31 use of water in view of the other purposes for which water has

                                  -5-

                                                    16360

1    been and will be used.  This question is a question which may

2    well be relevant in an apportionment proceeding.  Pursuant to

3    the reservation of jurisdiction in this Court, this question is

4    reserved for determination at such future time as an apportion-

5    ment proceeding or regulation proceeding is presented.

6                             21.

7         That the stipulation as set forth in Finding of Fact

8    12 has at all times since November 29, 1951, been in full force

9    and effect and the provisions thereof binding on the United

10    States of America and the State of California.

11                            22.

12         That counsel for the United States of America had

13    authority to execute said stipulation set forth in Finding of

14    Fact 12 and the Attorney General of the United States of America

15    and the Department of Justice of the United States of America

16    ratified said act of said counsel.

17                            23.

18         That heretofore this Court entered an opinion dated

19    August 8, 1958, reported in <u>United States of America</u> vs.

20    <u>Fallbrook Public Utility District, et al</u>., 165 F.Supp. 806, which

21    in part concerned the meaning, application and scope of the

22    stipulation referred to in Finding of Fact 12, hereinabove.  That

23    to the extent said Opinion is not inconsistent with any Finding of

24    Fact or Conclusion of Law entered herein, said rulings of law

25    pertaining to said stipulation as are set forth in said Opinion

26    are adopted herewith into these Conclusions of Law as if set

27    forth in full herein.

28                            24.

29         That the Fallbrook Public Utility District, the Vail

30    Company, and the _____ in open court in this cause

31    expressly joined in and consented to said stipulation and are

-6-

therefore bound by its terms and provisions.

25.

All parties to this case have tried this case on the theory that the applicable California law would determine the rights to the use of the waters of Santa Margarita River and its tributaries and the rights to the use of the waters which add to and support said river and its tributaries and, therefore, all parties by pursuing this theory of the case have implied by such conduct assent to the application of California law in this cause.

26.

That notwithstanding said stipulation and notwithstanding the fact that all parties have tried this case on the theory that California law would determine their rights, the laws of the State of California, which determine the rights to the use of the waters of the Santa Margarita River and its tributaries and the rights to the use of the waters which add to and support said River and its tributaries would apply in that there is no Federal law as to water rights as such, and this Court would of necessity be required to apply the applicable California law.

27.

That, at the present status of this case, the issue of apportionment or the quantity or proportion of waters to which any lands are entitled has not been presented; and this court has taken no evidence directed to establishing whether any water uses pursuant to correlative riparian rights are reasonable or unreasonable as to amount of water used in the light of other rights which may exist as to such waters and this issue is left open, is not decided herein, and shall be litigated by this Court if and when it becomes necessary to do so.

In the exercise of this continuing jurisdiction, this

-7-

1 Court will pass upon the exercise of such correlative rights

2 based on the facts as may then appear and pursuant to California

3 law.

4                                28.

5        That all uses of the waters of the Santa Margarita

6 River by the United States of America within the Naval Enclave

7 and within the watershed of the Santa Margarita River, except

8 as to those uses considered in Conclusion of Law 20, above, are

9 reasonable and beneficial riparian uses.  That all uses of the

10 waters of the Santa Margarita River by the United States of

11 America within the Naval Enclave but outside the watershed of

12 the Santa Margarita River are beneficial uses, and are proper

13 uses in that the United States of America is the last water user

14 on the stream and for that reason the use of waters outside the

15 watershed does not injure any other party to this cause.  No

16 determination is made herein as to the reasonableness of the

17 amounts of waters of the Santa Margarita River used by the United

18 States of America within the Naval Enclave in that this issue can

19 only be determined at such time as this Court may be concerned

20 with apportionment proceedings.

21                                29.

22        All waters contained within the younger alluvial de-

23 posits within the Santa Margarita watershed and within the Naval

24 Enclave are in a known and definite channel, are not percolating

25 waters, but are in fact a part of a particular stream.

26                                30.

27        That this Interlocutory Judgment No. 37 is not intended

28 to nor does it apply to any lands of the United States other than

29 those lands within the Naval Enclave as said lands are described

30 in Finding of Fact 1; that other lands owned or supervised by the

31 United States of America, such as Forest Service lands and Indian

                               -8-

                                              16363

1   Reservation lands, will be covered in other Findings of Fact,
2   Conclusions of Law, and Interlocutory Judgments in this cause.
3                              31.
4          That the continued use by the United States of America
5   of the waters of the Santa Margarita River, as the same have
6   been defined in the Findings herein, within the boundaries of
7   Camp Joseph H. Pendleton but outside the watershed of the Santa
8   Margarita River, will not in the future give rise to any right
9   to the use of water enforceable against any upstream appropriator,
10  prescriptor, riparian or overlying owner.
11                             32.
12         That the acts of the predecessor in interest of the
13  United States of America in exporting waters from the Santa
14  Margarita River without the watershed were not adverse or hostile
15  to any upstream landowner or water user or water-right claimant,
16  and said acts did not result in said predecessor obtaining a
17  prescriptive right to the use of any water of the Santa Margarita
18  River, or its tributaries.
19         That such waters exported outside the watershed of the
20  Santa Margarita River by the predecessor in interest of the
21  United States of America were either surface waters or waters
22  within a known and definite channel, and as all such exportations
23  of such waters occurred subsequent to the year, 1937, such
24  exportations were not made under any appropriative right
25  recognized by the laws of the State of California.
26
27                     INTERLOCUTORY JUDGMENT
28                              1.
29          IT IS ORDERED, ADJUDGED AND DECREED that all ground
30  waters within the Santa Margarita River watershed found within
31  deposits of consolidated rock, basement complex or weathered
    basement complex as said deposits are depicted on U. S. Exhibit
    37 incorporated into this Judgment by reference, and within the

                              -9-
                                            16364

1  Naval Enclave are vagrant, local, percolating waters which do

2  not add to, support, nor contribute to the Santa Margarita River

3  or its tributaries; it is further ordered, adjudged and decreed

4  that the rights of the United States of America to the use of

5  said ground waters are forever quieted against the claims of all

6  defendants in this case and their heirs, successors and assigns.

7                              2.

8          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all

9  surface waters which flow over and upon the lands comprising the

10  Naval Enclave and within the Santa Margarita River watershed are

11  a part of the Santa Margarita River or a tributary thereto and

12  subject to the continuing jurisdiction of this Court.

13                              3.

14          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all

15  lands referred to in Finding of Fact 31 have correlative riparian

16  rights to the use of the waters of the Santa Margarita River.

17                              4.

18          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all

19  lands referred to in Finding of Fact 44 have a correlative

20  riparian right to the use of the waters of DeLuz Creek.

21                              5.

22          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all

23  lands referred to in Finding of Fact 47 have a correlative

24  riparian right to the use of the waters of Fallbrook Creek.

25                              6.

26          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

27  smallest tract of land held under one chain of title within the

28  Naval Enclave and the Santa Margarita River watershed, a part of

29  which abuts upon or is traversed by younger alluvial deposits as

30  said deposits are depicted on U. S. Exhibit 37 not heretofore

31  specifically determined to be riparian to the Santa Margarita

                              -10-

                                        16365

1  River, DeLuz Creek, or Fallbrook Creek, have correlative
2  riparian rights to the use of the waters contained in said
3  deposits and such surface waters as may flow over and upon said
4  deposits, and that said waters are subject to the continuing
5  jurisdiction of this Court; it is further ordered, adjudged and
6  decreed that this Court shall have jurisdiction to make such
7  findings in the future as may be necessary to settle any dispute
8  concerning the propriety of the use of said waters, and that
9  this Court shall in the future refer to Exhibit A, attached
10  hereto, and to U. S. Exhibit 37 to determine the location of
11  said younger alluvial deposits.

12  7.

13  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
14  correlative riparian rights to the use of the waters as provided
15  in Paragraphs 3, 4, 5, and 6 of this Interlocutory Judgment and
16  all other uses of said waters shall be and are subject to the
17  continuing jurisdiction of this Court.

18  8.

19  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
20  United States of America has not established nor obtained, nor
21  does it own or possess, a prescriptive right to the use of
22  waters of the Santa Margarita River or its tributaries.

23  9.

24  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that except
25  as provided in Interlocutory Judgment No. 24 the United States of
26  America has not established nor obtained, nor does it own or
27  possess, an appropriative right to the use of the waters of the
28  Santa Margarita River or its tributaries.

29  10.

30  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
31  issue of apportionment has not been presented at this stage of

-11-

1  the proceeding, and this Court has taken no evidence directed
2  to establishing whether the use of any waters herein adjudged to
3  be subject to the continuing jurisdiction of this Court are
4  reasonable or unreasonable as to amount of water used in the
5  light of rights which may exist as to such waters; and this
6  issue is left open, is not decided herein and shall be litigated
7  by this Court if and when in the future it becomes necessary to
8  do so, and pursuant to California law.

9                            11.

10     IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all
11  uses of the waters of the Santa Margarita River and its tribu-
12  taries within the Naval Enclave by the United States of America
13  other than those uses considered in Conclusion of Law 18 are as
14  to their character reasonable and beneficial riparian uses.

15                            12.

16     IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all
17  uses of the waters of the Santa Margarita River by the United
18  States of America within the Naval Enclave but outside the
19  watershed of the Santa Margarita River are beneficial uses, but
20  that such uses are not being made, nor have they been made
21  pursuant to any water right recognized or provided by the laws
22  of the State of California; that notwithstanding the fact that
23  said uses without the watershed are without right, they are not
24  unlawful or wrongful in that the United States of America, as the
25  last water user on the stream, may use the waters which are
26  physically available on or within its lands at such location as
27  it elects.

28                            13.

29     IT IS FURTHER ORDERED, ADJUDGED AND DECREED that such
30  uses of the waters of the Santa Margarita River by the United
31  States of America within the Naval Enclave and outside the Santa

1  Margarita River watershed have not and will not in the future
2  give rise to any right to the use of waters enforceable against
3  any upstream appropriator, prescriptor, riparian or overlying owner.
4                              14.
5         IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in any
6  future apportionment proceeding the issue as to whether those
7  uses of the waters of said river within the Naval Enclave and
8  within the Santa Margarita River watershed by the United States
9  of America are reasonable as to amounts of water used in the
10 light of the rights which may exist as to such waters shall be
11 decided on the facts as may then appear and pursuant to
12 California law.
13                             15.
14        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that juris-
15 diction is reserved to determine the question as to whether the
16 maintaining of natural grass and vegetation cover on the lands
17 of the Naval Enclave within the Santa Margarita River watershed
18 are a reasonable and beneficial use of water.
19                             16.
20        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
21 stipulation as set forth in Finding of Fact 12 has at all times
22 since November 29, 1951, been  in full force and effect and the
23 provisions thereof were and are binding on the United States of
24 America and the State of California.
25                             17.
26        IT IS FURTHER ORDERED, ADJUDGED AND DECREED, based upon
27 the decision of the United States Court of Appeals for the Ninth
28 Circuit in the case of California vs. United States, 235 F.2d
29 645, that this is not a final decree, but is interlocutory in
30 character and by reason of the order by this Court that all
31 parties are adverse, one to the other, thus dispensing with

                             -13-

1  cross pleadings, all parties to these proceedings may object to

2  these Findings of Fact, Conclusions of Law, and Interlocutory

3  Judgment, and will be given full opportunity upon due notice to

4  interpose their objections prior to entry of final judgment in

5  this case.

18.

7  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this

8  Interlocutory Judgment is not appealable, is not final, and

9  shall not be operative until made a part of the final judgment;

10 and this Court expressly reserves jurisdiction to modify or

11 vacate it either upon its own motion or upon motion of any party

12 to this proceeding until such time as the final judgment in this

13 cause is entered.

14 DATED: _____

16 _____

JUDGE

-14-

16369