# LODGED

MAR 6 - 1962

CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____ DEPUTY

March 6, 1962

(Girard)

1
2
3
4
5
6
7
8

9 UNITED STATES OF AMERICA,

10                    Plaintiff,

11      vs.

12 FALLBROOK PUBLIC UTILITY
   DISTRICT, et al.,
13
                    Defendants.
14

No. 1247-SD-C

FINDINGS OF FACT
CONCLUSIONS OF LAW AND
INTERLOCUTORY JUDGMENT NO. 37

NAVAL ENCLAVE

15

16                    FINDINGS OF FACT

17                         1.

18 Lands of the United States
   Within the Naval Enclave
19

20      The United States of America is the owner in fee simple
21 of the lands which comprise Camp Pendleton, United States Naval
22 Ammunition Depot and the United States Naval Hospital, all of
23 which are referred to as the Naval Enclave.  There follows a
24 brief statement respecting the several tracts which comprise
25 the Naval Enclave.

26 United States Ammunition Depot

27      The United States of America on January 21, 1942,
28 by condemnation, acquired in San Diego County, California, fee
29 simple title to the lands now constituting that segment of the
30 Naval Enclave designated the United States Naval Ammunition
31 Depot which totals 9,147.55 acres, more or less, which lands

1 are more particularly described in the Amended Judgment, re-
2 corded November 26, 1944, in Book 1794, page 133, Official
3 Records, San Diego County, California.  The description of the
4 lands set forth in that Amended Judgment is incorporated into
5 these Findings and made a part of them by reference.

6 <u>Camp Pendleton Marine Corps Training Base</u>

7       The United States of America on December 31, 1942, by
8 condemnation, in San Diego County, acquired fee simple title to
9 the lands now constituting that segment of the Naval Enclave
10 designated Camp Pendleton which totals 123,620 acres, more or
11 less, which lands are more particularly described in Decree of
12 Declaration of Taking, recorded January 9, 1943, in Book 1448,
13 page 192, Official Records, San Diego County, California.  The
14 descriptions of the lands set forth in that Decree are in-
15 corporated into these Findings and made a part of them by
16 reference.

17       The United States of America on December 23, 1943, by
18 condemnation acquired in San Diego County, California, fee simple
19 title to the lands now constituting that segment of the Naval
20 Enclave designated Camp Pendleton which totals 1,676.58 acres,
21 more or less, which lands are more particularly described in
22 Declaration of Taking, recorded January 11, 1944, in Book 1618,
23 page 90, Official Records, San Diego County, California.  The
24 descriptions of the lands set forth in that Declaration of
25 Taking are incorporated into these Findings and made a part of
26 them by reference.

27       The United States of America on February 8, 1949,
28 acquired in Orange County, California, fee simple title to
29 112.11 acres, which were made a part of Camp Pendleton, which
30 lands are more particularly described in Association Grant Deed,
31 recorded August 30, 1949, in Book 1895, page 371, Official

1    Records, Orange County, California.  The description of the

2    lands set forth in that Association Grant Deed are incorporated

3    into these Findings and made a part of them by reference.

4         The United States of America by intra-governmental

5    transfer of public domain, in San Diego County, California,

6    added to Camp Pendleton, these lands which are more particularly

7    described as follows:

8         (Note:  Veeder will submit property description
                  to be incorporated here).
9

10        At all times since the acquisition or transfer of the

11   approximately 136,130.85 acres of land referred to in this

12   Finding, title in fee simple has resided in the United States

13   of America and it has exercised full possession and control of

14   those lands, utilizing them for the purposes for which the Naval

15   Enclave was established, all as more fully set forth in subse-

16   quent findings.

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

Finding 1

2.

Certain Lands in Private Ownership at the
Time of the Treaty of Guadalupe Hidalgo

     The lands referred to above constituting the 9,147.55
and 123,620 acres, were acquired from the Rancho Santa Margarita
by the United States of America and were in private ownership
at the time of the Treaty of Guadalupe Hidalgo and remained
in private ownership until acquired by the United States of
America as set forth in Finding 1 above.

3.

**Exclusive Jurisdiction**

     Letters of Acceptance of Sovereignty were forwarded to the Governor of the State of California for certain lands within the Naval Enclave as follows:

| Date of Letter | Tract Described in Letter |
|---|---|
| January 12, 1943 | Acceptance of the 9,147.55-acre tract acquired January 21, 1942 |
| September 8, 1943 | Acceptance of the 122,202.72-acre tract acquired December 31, 1942 |
| February 18, 1944 | Acceptance of the 1,676.58-acre tract acquired December 23, 1943. |

The record in this case fails to show that Letters of Acceptance were filed with the California Governor covering the 1574.61-acre tract, County of San Diego, withdrawn from the public domain August 8, 1945, nor of the 112.11-acre tract acquired by Deed of Title February 8, 1949.

     The United States of America has never filed a plat of the reservation, nor metes and bounds description of the Naval Enclave pursuant to California Statutes of 1897, Chapter 56, page 51, codified into Section 114, Government Code, in effect until repealed September 19, 1947, by the California Statutes of 1947, Chapter 1532, page 3163; nor has the United States of America perfected its application to the California State Lands Commission for consent to acquire the land comprising the Naval Enclave, nor has the said Commission given its consent to such acquisition, pursuant to section 126, California Government Code (California Stats. First Extraordinary Session, 1946, Ch. 154, p. 199).

     That the above facts present a substantial question of law as to whether the United States of America has acquired exclusive jurisdiction to the lands comprising the Naval Enclave.

16374

1   That there is presently before the United States Supreme Court
2   the case of Paul v. United States, Case No. 239, October Term,
3   1961, wherein that Court may well decide on similar facts this
4   substantial question of law.  Because of this fact, this Court
5   is not at this time entering conclusions of law on this question
6   of exclusive jurisdiction, but jurisdiction is hereby expressly
7   reserved to make such conclusions of law as such facts as found
8   herein warrant at such time as the above-entitled case now be-
9   fore the United States Supreme Court becomes final.  Such juris-
10   diction may be exercised by this Court upon its own motion,
11   or at the request of the United States of America or any
12   defendant in this case.
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31

6

16375

1                                4.

2   <u>Riparian Lands</u>

3           The boundary of the watershed of the Santa Margarita

4   River within the Naval Enclave is set forth on the map, marked

5   Exhibit A, designated "Physical Features of the Santa Margarita

6   River Watershed," which is attached to these Findings of Fact

7   and made a part of them by reference.  Within the Naval En-

8   clave there are 38,694 acres which are within the Santa Mar-

9   garita River watershed.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

5.

## National Defense

The Naval Enclave is vital to the National Defense, and in the development of the Enclave for purposes of National Defense there has been expended by the United States of America approximately $200,000,000.00.

Construction of the Naval Enclave was initiated in the year1942; and the installations constituting it were completed to substantially their present size by the year 1944. They were then, and have been at all times since, used for purposes of National Defense.

16377

1                               6.

2    Location of Buildings and Installations

3           Sixty per cent (60%) of the water use of the Santa

4    Margarita River within the Naval Enclave is used in or at

5    facilities, buildings and installations which were and are

6    planned and constructed and located outside of the watershed

7    of that River.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

9

16378

7.

2 Naval Enclave Uses

3       That it is the basic function of the Naval Enclave to
4 provide housing and training facilities for units of the Armed
5 Forces; to conduct training of units of the Armed Forces in
6 amphibious warfare and experimental work with landing craft,
7 landing vehicles, tracked and affiliated equipment of the
8 various units of the United States Marine Corps, including air-
9 ground support coordination, and use of artillery, tanks and
10 other equipment used in the conduct of modern amphibious and
11 land warfare.  In addition to the aforementioned acitivites, it
12 is the function of Camp Pendleton to provide logistic support
13 for units of the United States Marine Corps together with
14 military maintenance and storage facilities for supplies and
15 equipment and to house and train replacements for subsequent
16 assignment to various operative units of the United States
17 Marine Corps.

18      The United States Naval Hospital, with a capacity of
19 approximately 1550 beds, established within the Naval Enclave,
20 provides medical and hospital services to personnel of the
21 Armed Forces, their dependents and other authorized personnel
22 stationed at approximately eighty-three Naval shore activities
23 located in the Southern California area and provides medical
24 and hospital care to personnel of units of the United States
25 Fleet.

26      The United States Naval Ammunition Depot provides
27 facilities for the storage, segregation, reconditioning and
28 issuing of ammunition for operating units of the United States
29 Fleet and the United States Marine Corps and maintains ammuni-
30 tion stocks for shore establishments of the United States Navy
31 located in the Southern California area.  In addition, the Naval

10

16379

1   Ammunition Depot stores and ships ammunition for use by combat

2   elements of the United States Navy and the United States

3   Marine Corps.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

16380

8.

## Naval Enclave Population, Etc.

That the use of the waters of the Santa Margarita River by the United States of America on its Naval Enclave both within and without the watershed other than for irrigation are uses essentially municipal in character; that said water is used to satisfy the needs of the population of the Naval Enclave, both military and civilian; that said population has averaged approximately 42,000 people per year; that in addition to housing of Naval personnel, said Naval Enclave of the United States of America provides housing facilities for dependents of the Naval personnel, and since 1958 the number of such dependents residing thereon has averaged approximately 5500 individuals annually; that in addition to the dependents of said Naval personnel, limited numbers of civilians, not dependents, are residing on said Naval Enclave; that the projected total population for the fiscal year, 1959, of the Naval Enclave was approximately 61,600 persons. In time of war and full mobilization, the maximum population of the Naval Enclave is projected at 106,000 persons.

12

16381

9.

**Specific Types of Facilities Within the Naval Enclave Which use Waters of the Santa Margarita River**

That in order to provide for the welfare of the persons living on the Naval Enclave as found above in Finding 8, a variety of facilities exists thereon including, but not limited to, the following:

a.   Housing in barracks, single-family and multi-family dwellings.

b.   Messing and restaurant facilities.

c.   Medical and dental facilities.

d.   Recreational facilities including a golf course, swimming pools, lake for boating, gymnasiums, tennis and hand-ball courts, beach facilities, miscellaneous athletic and play= ground facilities, and stables.

e.   Theatres.

f.   Libraries.

g.   Churches.

h.   Clubs and social facilities.

i.   Schools

j.   Garbage and sewage and waste disposal facilities.

k.   Police facilities.

l.   Fire protection facilities.

m.   Transportation facilities.

n.   Railroad, truck and bus terminals.

o.   Retail trading facilities.

p.   Laundries and dry cleaning establishments.

q.   Warehousing and storage facilities for both military and civilian goods.

r.   Clothing and shoe repair facilities.

s.   Garages and vehicle repair facilities.

1    t.  Ordnance and weapons repair facilities.

2    u.  Harbor and boat basin facilities.

3    v.  Aircraft and helicopter landing facilities.

4    w.  Salvage yard facilities.

5    x.  Barber shops and beauty shops.

6    y.  Rock crushing and bulk cement plants.

7    z.  Commercial vegetable and flower growing.

8    aa.  Commerical orchards.

9    bb.  Commerical grazing of livestock.

10   cc.  Greenhouses.

11   dd.  Private gardens.

12   ee.  Public gardens and landscapting.

13   ff.  Commercial vegetable packing.

14   gg.  Newspaper.

15   hh.  Vehicle washing facilities.

16   That all of the foregoing facilities derive their supply of

17   water from the Santa Margarita River; that there is no sub-

18   stantial difference insofar as water demand and uses are con-

19   cerned, between that which has existed and that which presently

20   exists on the Naval Enclave, from that required by a city of

21   comparable size.

22

23

24

25

26

27

28

29

30

31

1                                           10.

2   Area of Use of Santa Margarita River
    Water Within Naval Enclave
3

4            That since the acquisition by the United States of

5   America of the lands comprising the Naval Enclave said United

6   States of America has used water in substantial amounts from

7   the Santa Margarita River.  That said uses of said waters have

8   been for both military and agricultural purposes within the

9   Santa Margarita River watershed; that in addition to the use

10  of the waters of the Santa Margarita River within its water-

11  shed, the United States of America has exported large quanti-

12  ties of water from said River for both military and agricul-

13  tural purposes to areas within the Naval Enclave situated out-

14  side of the watershed; that commencing with the water year 1942

15  the United States of America has annually used waters of the

16  Santa Margarita River for military and agricultural purposes

17  within and without the Santa Margarita River watershed in

18  the Naval Enclave in the following amounts:

19           USE WITHIN WATERSHED                    USE WITHOUT WATERSHED

20                              (In Acre Feet)

| WATER YEAR | MILITARY | AGRICULTURAL | TOTAL | MILITARY | AGRICULTURAL | TOTAL |
|---|---|---|---|---|---|---|
| 1942 | | | | | | |
| 1943 | | | | | | |
| 1944 | 1840 | 730 | 2570 | 1780 | 1150 | 2930 |
| 1945 | 2040 | 610 | 2650 | 1940 | 950 | 2890 |
| 1946 | 1800 | 920 | 2720 | 1730 | 1440 | 3170 |
| 1947 | 1550 | 840 | 2390 | 1690 | 1310 | 3000 |
| 1948 | 2030 | 1090 | 3120 | 1790 | 1710 | 3500 |
| 1949 | 2150 | 880 | 3020 | 2060 | 1370 | 3430 |
| 1950 | 1880 | 890 | 2770 | 2060 | 1380 | 3440 |
| 1951 | 1830 | 630 | 2460 | 1990 | 990 | 2980 |
| 1952 | 2100 | 560 | 2660 | 2280 | 870 | 3150 |
| 1953 | 2440 | 680 | 3120 | 2660 | 1070 | 3730 |
| 1954 | 2170 | 740 | 2910 | 2030 | 1150 | 3180 |
| 1955 | 2390 | 740 | 3130 | 2340 | 1160 | 3500 |
| 1956 | 2660 | 680 | 3340 | 2410 | 1070 | 3480 |
| 1957 | 2430 | 600 | 3030 | 2470 | 940 | 3410 |
| 1958 | 2460 | 460 | 2920 | 2390 | 730 | 3120 |
| 1959 | 2510 | 670 | 3180 | 2850 | 1060 | 3910 |
| 1960 | 2040 | 430 | 2670 | 2600 | 680 | 3280 |

11.

Use of Water Outside Waterhsed by Predecessor
of the United States of America, and Legal
Status of Such Uses by Predecessor and the
United States.

That commencing with the irrigation season of 1937, and continuing thereafter to the acquisition of the Naval Enclave by the United States of America, gradually increasing amounts of the waters of Santa Margarita River were diverted to agricultural uses outside of the watershed by the predecessor in interest of the United States of America. There is no direct evidence as to the amount of such diversions. None of such uses of the waters of the Santa Margarita River outside the watershed as are found to have existed in Finding 10 above or as carried on by the predecessor in interest of the United States of America, have been adverse or hostile to any defendant herein. None of the uses of the waters of the Santa Margarita River outside the watershed of the Santa Margarita River as are found to have existed in Finding 10 above or as carried on by the predecessor in interest of the United States of America, have been made under any appropriative right recognized by the Laws of the State of California. All of the water uses outside the watershed of the Santa Margarita River referred to in this finding and in Finding 10 above have been made and are being made without sanction of any water right recognized or provided by the statutes and laws of the State of California.

12.

Character of Use by the United States of
America of Santa Margarita River Waters
Outside the Watershed and Fact such
Use is not Unlawful

All uses by the United States of America of the waters
of the Santa Margarita River within its watershed have been
and are reasonable and beneficial as to character of use.  All
uses by the United States of America of waters of the Santa
Margarita River outside its watershed have been and are for
beneficial purposes as to character of use, and none of such uses
by the United States of America are improper or unlawful or
have injured any party to this cause for the reason that the
United States of America is the last water user upon the stream,
and thus can use such waters of the Santa Margarita River as
are physically available upon or within its lands as it chooses.
All uses of water by the United States of America outside the
watershed of the Santa Margarita River have been as conservative
and well-managed as the uses of water by the United States of
America within the watershed.

13.

Santa Margarita River Surface Stream
Within the Naval Enclave

   That Santa Margarita River enters the Naval Enclave in
the SE$\frac{1}{4}$ of the SW$\frac{1}{4}$, Section 12, Township 9 South, Range 4 West,
S.B.M. cutting the northwest corner of Section 13/diagonally<sup>thence</sup>
across Section 14 where at the center of that section it becomes
the north and western boundary of the United States Naval Ammuni-
tion Depot.

   Situated in the NW$\frac{1}{4}$ of the SW$\frac{1}{4}$ of Section 14 Township 9
South, Range 4 West, S.B.M. is an infiltration gallery that con-
sists of a pipeline laid normal to the stream bed approximately
on bedrock which discharges into a well from which the waters of
the Santa Margarita River are pumped therefrom and used to supply
the United States Naval Ammunition Depot.

   The River leaves Section 14 and proceeds across Sec-
tion 15, enters and leaves after a short distance in the SE$\frac{1}{4}$
of the SE$\frac{1}{4}$ of Section 16, reenters section 15, thence traverses
the northwest corner of section 22, then proceeds diagonally
across section 21 and across the northwest corner of section 28,
from which point it no longer constitutes the boundary of the
Naval Ammunition Depot.

   From that point where the surface channel of the
Santa Margarita River leaves the northwest corner of section 28
it proceeds southwesterly across section 29.  In the SE$\frac{1}{4}$ of the
SW$\frac{1}{4}$ of section 29, DeLuz Creek has its confluence with the Santa
Margarita River.  From that point the Santa Margarita River has
its course almost due south across section 32 Township 9 South,
Range 4 West, S.B.M.

   Leaving section 32 the surface channel of the Santa
Margarita River proceeds across the northwest corner of

1  Section 5 Township 10 South, Range 4 West, in which is situated
2  on the south bank of the River the headworks of the Lake O'Neil
3  diversion ditch through which water is diverted from the Santa
4  Margarita River into Lake O'Neil an off-channel artificial reser-
5  voir for impoundment and use.  Detailed Findings of Fact, Con-
6  clusions of Law and Interlocutory Judgment No. 24 concerning
7  said Lake O'Neil  have previously been entered in this cause.
8          After emerging in the NW¼ of Section 32, Township 9
9  South, Range 4 West, S.B.M. as found above, the Santa Margarita
10 River enters a broad valley which is underlain with younger
11 alluvial deposits which are more particularly described in
12 Finding 19 hereinafter.
13         That said Santa Margarita River flows throughout the
14 NW¼ of Section 5 Township 10 South, Range 4 West, S.B.M., enters
15 Section 6, Township 10 South, Range 4 West, S.B.M. and proceeds
16 almost due south across that section and into Section 7.
17         That said River proceeds southerly across Section 7,
18 crosses the northwest corner of Section 18, enters Section 13
19 Township 10 South, Range 5 West, S.B.M., proceeds diagonally
20 across that section, enters the northwest corner of Section 24,
21 proceeds southwesterly across Section 23 and almost due south
22 through Sections 26 and 35, Township 10 South, Range 5 West.
23         Said River then proceeds in a southwesterly direction
24 across Sections 2, 11, 10 and 9 all in Township 11 South, Range 5
25 West, S.B.M., proceeds through the Ysidora Narrows into a lagoon
26 area and thence to the Pacific Ocean.
27         The last twenty-one (21) miles of the Santa Margarita
28 River traverse  the Naval Enclave. There are no other water users,
29 water right claimants or landowners other than the United States
30 of America on the Santa Margarita River downstream fromthe point
31 where that River enters the Naval Enclave as found herein.

19

1                              14.

2 <u>Surface Flow of Santa Margarita River</u>

3           That at that point as found hereinabove in Finding 13
4 where said Santa Margarita River enters the lands of the United
5 States of America, and throughout its course to the Pacific
6 Ocean under natural conditions, i.e., in a state of nature,
7 said River flowed on the surface or almost immediately there-
8 under; that the evidence in this case shows that under natural
9 conditions, i.e., in a state of nature, there existed generally
10 either surface streams or pools of water from that point to the
11 Pacific Ocean; that said surface waters were available to and
12 used by cattle; that even in those areas where there was no
13 visible surface flow or pools, the waters of said River were
14 almost at the surface and in many areas the ground was saturated
15 as evidenced by marshes and phreatophytes of a type which would
16 exist only where the waters within the ground were at or near
17 the surface.  That in fact the predecessor in interest of the
18 United States of America found such grasses and other native
19 vegetation to be suitable for stock grazing and most of the area
20 of the flood plain of the Santa Margarita River was by said
21 predecessor used for this purpose.
22
23
24
25
26
27
28
29
30
31

15.

Naval Enclave Condition in a State of
Nature, and Ground Water Levels

A water level within at least five (5) feet of the
surface of the ground is necessary to maintain such native cover
on the area referred to in Finding 14, and such native cover
consumed on the average approximately 1.2 acre feet of water
per acre per year.  With the development of pumping and irriga-
tion within the Naval Enclave and upstream therefrom, the ground
water level, except for the lower portion of the Ysidora Sub-basin
and downstream therefrom, throughout most periods of the year has
declined to a depth greater than five (5) feet below ground sur-
face and the pumping of waters from the younger alluvial deposits
(hereinafter determined to be a part of the Santa Margarita
River) within the Naval Enclave and the use of such waters both
within and without the watershed has substantially contributed
proximately to said decline in said ground water levels.  That
the use of ground waters as presently practiced by the United
States of America within the Naval Enclave is such that it is
impossible to maintain the ground water level at an elevation
sufficient to support native vegetation upstream from the Ysidora
ground water storage unit in that the present uses of said ground
waters by the United States of America within the Naval Enclave
are such that those uses alone would, in most periods, result in
the ground water levels in the Upper and Chappo sub-basins of the
younger alluvial deposits being lower than that required to sup-
port native vegetation.

1                                  16.

2 **Present Surface Flow of Santa**
  **Margarita River**
3

4          That in the summer of 1961 the Santa Margarita River

5 flowed within the Naval Enclave as a surface stream to a point

6 in the East Half (E½) of Section 15, Township 9 South, Range 4

7 West, S.B.M., at which point it disappeared into the underground.

8 Downstream from that point the Santa Margarita River only existed

9 as a surface stream on or about said date after periods of preci-

10 pitation and runoff or at such times and locations as surface

11 flows existed by reason of discharge of sewage effluent into

12 the surface bed of the River as is more particularly set forth

13 hereinafter in Finding 26.

14         That the Santa Margarita River under ordinary condi-

15 tions immediately preceding the summer of 1961 has flowed as a

16 perennial stream to a point in Section 5, Township 10 South,

17 Range 4 West, S.B.M., and that said change in the extent of said

18 River as a perennial stream which was evidenced in the summer

19 of 1961 resulted principally from a combination of drought

20 conditions and diversions from the River upstream from the

21 Naval Enclave.

22

23

24

25

26

27

28

29

30

31

17.

**Fluctuations of Surface Flow of**
**Santa Margarita River**

That the location of the surface flow of the Santa Margarita River is upon the younger alluvial deposits referred to hereinabove; that the area of surface flow thereon will fluctuate considerably and it is not uncommon for the surface flow to shift its position upon the younger alluvial deposits from year to year or within each year during periods of substantial surface flow.

23

18.

## Principal Causes of Fluctuations of Rising Waters

That except as found in Finding 16 above the Santa Margarita River does not flow within the Naval Enclave as a perennial stream except during periods of substantial precipitation and runoff.  It may, in certain areas, flow intermittently in its course as a surface stream, then disappear and flow underground, and then again rise to the surface. That the points where the waters rise to the surface and flow as a surface stream over the younger alluvial deposits may vary considerably.  That said variance in points of rising surface flow is the result of pumping of the waters contained in the younger alluvial deposits by the United States of America, of pumping and diversions of the waters of the Santa Margarita River and tributaries thereto upstream from the Naval Enclave, and of fluctuations in precipitation and consequent runoff.

16393

19.

**Younger Alluvial Deposits which Underlie**
**Santa Margarita River on Naval Enclave**

That commencing at a point on the Santa Margarita River just upstream from its confluence with DeLuz Creek and continuing downstream to the confluence of said River with the Pacific Ocean, there are substantial younger alluvial deposits; that said younger alluvial deposits are depicted on U. S. Exhibit 37 which exhibit is herein incorporated and made a part of these findings by reference; that said younger alluvial deposits were laid down by the Santa Margarita River and deposition of material material eroded from the adjacent hills; that these younger alluvial deposits are composed of sedimentary materials and have a relatively high water-bearing capacity and permeability.

That said younger alluvial deposits as evidenced by said U. S. Exhibit 37 vary in width within the Naval Enclave, and for the sake of convenience in this case said younger alluvial deposits have been referred to as sub-basins or ground water storage units, and specifically in downstream order, the Upper, the Chappo and the Ysidora Sub-basins or ground water storage units.

In essence, the reason that said younger alluvial deposits have been referred to in this case as the Upper, Chappo and Ysidora Sub-basins or ground water storage units is that the Upper Sub-basin evidences a substantial area of younger alluvial deposits which are inter-connected to the Chappo Sub-basin by a relatively narrow area of younger alluvial deposits in Section 18, Township 10 South, Range 4 West, S.B.M., and the Chappo Sub-basin is evidenced by a rather extensive area of younger alluvial deposits which are connected to the Ysidora Sub-basin by a relatively narrow area of younger alluvial

16394

1  deposits in Section 26, Township 10 South, Range 5 West, S.B.M.
2  As found hereinafter, there is no barrier to ground water move-
3  ment between said designated sub-basins, and the younger alluvial
4  deposits which comprise these designated sub-basins conform
5  essentially, insofar as ground water movement is concerned, to
6  a surface stream which is wide in one area, narrows in another
7  and then widens again as it proceeds downstream.

8          The areal extent of these younger alluvial deposits
9  within the Naval Enclave is approximately 4680 acres. It
10 varies in surface widths from a maximum of two (2) miles in
11 the Chappo Sub-basin to its narrowest point of approximately
12 one-quarter (1/4) mile at the above-described Ysidora Narrows.
13 By units the surface area of the younger alluvial deposits are
14 as follows:

15         Upper                    960 acres
16         Chappo                 2,640 acres
17         Ysidora                1,080 acres
18                                4,680 acres

19         The surface area of these deposits is approximately
20 seven (7) square miles.

21         There is a relative degree of unanimity between the
22 evidence introduced by the United States of America and the State
23 of California representing the nature,characteristics, storage
24 capacity and useable storage capacity of said younger alluvial
25 deposits.  Based upon that evidence it is found as follows:

26         Total storage capacity of the younger alluvial deposits
27 designated herein as the Upper, Chappo and Ysidora Sub-basins
28 is approximately 48,000 acre feet.

29         The useable storage capacity of the younger alluvial
30 deposits in each of the said designated sub-basins is approxi-
31 mately as follows:

16395

| | | |
|---|---|---|
| 1 | Upper | 10,000 acre feet |
| 2 | Chappo | 15,000 acre feet |
| 3 | Ysidora | 1,200 acre feet |
| 4 | | 26,200 acre feet |

5  The useable storage capacity as set forth herein is in addition
6  to that required to maintain a fresh water barrier as set forth
7  in Finding 29 hereinafter.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

16396

20.

Geologic Features Concerning Younger
Alluvial Deposits which Underlie Santa
Margarita River within the Naval Enclave

That the younger alluvial deposits as found in Finding 19 above, rest upon and are confined laterally by basement complex and deposits of consolidated rocks; that these deposits of consolidated rocks and basement complex are essentially non-water bearing and are composed of considerably more compacted materials than the younger alluvial deposits; that as a result thereof, ground waters which are within the younger alluvial deposits do not move laterially or vertically into said consolidated rocks and basement complex but do in fact move through the younger alluvial deposits in the identical direction as the surface flow of Santa Margarita River or rise to the surface and flow as surface flow westerly toward the confluence of that River with the Pacific Ocean; that in the most westerly or downstream portion of the younger alluvial deposits and downstream from and within section 2, Township 11 South, Range 5 West, S.B.M. there are, within said younger alluvial deposits, deposits of fossil shells which were laid down by marine action.

16397

21.

**Interconnection of Ground and Surface Waters
with the Younger Alluvial Deposits which
Underlie Santa Margarita River**

That during such times as there is surface flow through-
out the course of the Santa Margarita River over the younger
alluvial deposits within the Naval Enclave the ground waters
within said younger alluvial deposits are in direct physical
contact with such surface flow.  During such times as there is
no surface flow throughout the course of the River within the
Naval Enclave but only occasional surface waters at points where
ground waters contained within the younger alluvial deposits
have risen to the surface or the points where sewage effluent
has been discharged, such surface flows are nevertheless in
direct physical contact with the ground waters within the younger
alluvial deposits and said ground waters and surface flow move
in identical directions, i.e., westerly toward the Pacific Ocean.

16398

22.

Ground Waters Within Younger Alluvial
Deposits Part of the Santa Margarita River.

      That the deposits of consolidated rocks on each side
of the younger alluvial deposits and upon which said younger
alluvial deposits rest do in fact impede the ground waters from
moving out of the younger alluvial deposits and into the
consolidated rocks and do in fact act in the same manner as a
substantial impermeable bed and bank of a surface stream channel;
that the ground waters within the younger alluvial deposits as
found herein are in fact in a known and definite channel, to wit,
the younger alluvial deposits, do in fact move in the same
direction as the surface flow, are in fact in direct contact
with the surface flow when it does flow, and do constitute that
water which rises to the surface and then disappears during
periods other than periods of considerable precipitation, and
said ground waters and said surface flow of the Santa Margarita
River are in fact one stream herein referred to as the Santa
Margarita River.

30

16399

1                                    23.

2   Facts Concerned with Nature of Younger
    Alluvial Deposits and Reliance on United States
3   of America Evidence for Surface Contact Line

4           That the vertical depth of the younger alluvial deposits

5   are depicted on U. S. Exhibit 39 which exhibit is incorporated

6   herein by reference.

7           That from that point where the Santa Margarita River

8   enters the broad valley underlain with younger alluvial deposits

9   as found in Finding 13 above and to the Pacific Ocean, there is a

10  steady increase in the depth of the younger alluvial deposits.

11  That this fact is shown on U. S. Exhibits 38 and 38B incorporated

12  herein by reference.  That as shown on said exhibits just down-

13  stream from the point of confluence of DeLuz Creek with the Santa

14  Margarita River and at a land surface elevation of approximately

15  one hundred twenty-five feet (125') above sea level basement

16  complex is reached at a depth of approximately one hundred feet

17  (100') below land surface.  Proceeding downstream, the depth

18  through the younger alluvial deposits to bedrock increases.  In

19  portions of the Chappo Sub-basin the younger alluvial deposits ex-

20  tend to a depth of approximately one hundred eighty feet (180')

21  below ground surface.  In certain areas in the Ysidora Sub-basin

22  the younger alluvial deposits may well extend to an estimated

23  depth of approximately three hundred feet (300') below the sur-

24  face of the land.

25          That throughout said younger alluvial deposits those de-

26  posits feather out, i.e., show a gradual lessening in depth to

27  bedrock as they approach the areas of consolidated rock and base-

28  ment complex which are on either side of said younger alluvial

29  deposits.

30          That the younger alluvial deposits are lenticular in nature.

31  While there is not complete uniformity, the younger alluvial de-

    posits generally consist of finer textured sand and clay in the

                                    31

                                                    16400

1    upper deposits of the Chappo and Ysidora Sub-basins and at

2    relatively shallow depths in the Ysidora Sub-basin lenses of

3    clay appear.  That in the upper sub-basin there are substantial

4    deposits of gravel and sand near ground surface.

5            That throughout said younger alluvial deposits and

6    generally in the middle or lower portions there are substantial

7    deposits of cobbles and gravel.

8            Generally speaking, said U. S. Exhibits 38 and 38B

9    evidence differentiation between the deposits in the lower

10   portions of the younger alluvial deposits as contrasted to

11   those near ground surface in that there are more deposits

12   composed of gravel and cobbles and gravel and sand in the

13   lower portions than exist in the upper portions, and there are

14   more deposits of clay, sand and clay and silt near ground

15   surface than exist in the lower or deeper areas.

16           That although the contact line on the surface between

17   the younger alluvial deposits and the deposits of consolidated

18   rock has not been determined with absolute exactness the deter-

19   mination of said contact line was sufficient for the United

20   States of America to prepare maps and exhibits showing said

21   contact line (including U. S. Exhibit 37) and said contact line

22   as established by said maps and exhibits prepared by the United

23   States of America has been accepted by this Court as being the

24   contact line between younger alluvial deposits and deposits of

25   consolidated rock on ground surface.

26

27

28

29

30

31

16401

24.

All Naval Enclave Producing Wells
Pump Waters of the Santa Margarita River

That it is true that all presently producing wells which are drilled into the younger alluvial deposits, as said deposits are depicted on U. S. Exhibit 37, do not extend into the consolidated rocks which lie beneath the younger alluvial deposits, but that all of such wells are drilled into and their depth is within said younger alluvial deposits, and that all of such wells pump waters of the Santa Margarita River.

16402

1                              25.

2   <u>Ground Water Contours Within Naval Enclave</u>

3              That ground water contours within the younger alluvial

4   deposits which underlay the surface flow of the Santa Margarita

5   River within the Naval Enclave on or about October, 1957, are

6   depicted on U. S. Exhibit 45 which is incorporated herein by

7   reference.  At the point of confluence of DeLuz Creek with

8   the Santa Margarita River the ground water elevation on the

9   date above-mentioned stood at or about one hundred thirty-five

10  feet (135') above sea level.  The elevation of the ground water

11  table within said deposits as evidenced by said exhibit con-

12  formed generally with ground surface and follow an approxi-

13  mately even downward gradient for the entire length of said

14  younger alluvial deposits to an elevation of approximately

15  five feet (5') above mean sea level at that point where the

16  Santa Margarita River enters the Ysidora Narrows.

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

34

16403

1                                    26
2   <u>Sewage Effluent Discharges</u>
3            That in a state of nature the ground waters which are
4   contained within the younger alluvial deposits which underlie
5   the surface flow of Santa Margarita River on the Naval Enclave
6   have as their principal source of recharge the surface waters
7   of the Santa Margarita River and its tributaries, and to a
8   lesser extent precipitation upon said area. That under present
9   conditions the United States of America has contributed to the
10  recharge of the ground waters within said younger alluvial
11  deposits on the Naval Enclave by a comprehensive program of
12  processing sewage and returning the effluent therefrom to the
13  younger alluvial deposits.  That the sewage effluent returned
14  had previously been diverted from said Santa Margarita River.
15  That such return of sewage effluent to the younger alluvial
16  deposits is made from Plant No. 1 at locations in the NE$\frac{1}{4}$ of
17  the NE$\frac{1}{4}$ of Section 8, Township 10 South, Range 4 West, S.B.M.;
18  and in the SE$\frac{1}{4}$ of the NW$\frac{1}{4}$ of Section 8, Township 10 South,
19  Range 4 West, S.B.M.; from Plant No. 8 at a location in the
20  SW$\frac{1}{4}$ of the SW$\frac{1}{4}$ of Section 13, Township 10 South, Range 5 West,
21  S.B.M.; from Plant No. 3 at a location in the NW$\frac{1}{4}$ of the NE$\frac{1}{4}$
22  of Section 26, Township 10 South, Range 5 West, S.B.M.; from
23  Plant No. 2 at a location in the SE$\frac{1}{4}$ of the NW$\frac{1}{4}$ of Section 35,
24  Township 10 South, Range 5 West, S.B.M.; and from Plant No. 13
25  at a location in the NE$\frac{1}{4}$ of the SW$\frac{1}{4}$ of Section 10, Township 11
26  South, Range 5 West, S.B.M.; and has been made in the following
27  amounts from the following plants:
28      - - -
29      - - -
30      - - -
31      - - -

16404

SEWAGE EFFLUENT DISCHARGES

Acre Feet

| Water Year | Plant No. 1 | Plant No. 2 | Plant No. 3 | Plant No. 8 | Plant No. 13 |
|---|---|---|---|---|---|
| 1944 | | | 228.45 | | |
| 1945 | | | 373.90 | | |
| 1946 | | | 354.64 | | |
| 1947 | | | 345.50 | | |
| 1948 | | | 477.61 | | |
| 1949 | | | 474.66 | | |
| 1950 | | | 470.74 | | |
| 1951 | | | 536.96 | | |
| 1952 | 282.00 | 172.88 | 631.94 | | |
| 1953 | 1171.74 | 866.93 | 681.48 | | |
| 1954 | 1094.02 | 704.93 | 509.14 | 54.65 | 25.02 |
| 1955 | 1054.85 | 732.03 | 586.38 | 153.01 | 181.36 |
| 1956 | 1045.38 | 724.14 | 683.15 | 249.47 | 258.89 |
| 1957 | 843.98 | 788.50 | 588.05 | 243.07 | 225.87 |
| 1958 | 880.05 | 756.09 | 570.59 | 274.67 | 229.08 |
| 1959 | 693.81 | 707.44 | 440.10 | 204.98 | 422.03 |
| 1960 | 728.22 | 677.38 | 390.42 | 252.04 | 513.03 |
| 1961 | 761.55 | 709.68 | 337.85 | 311.74 | 414.76 |

The practices described hereinabove are commendable and by reason thereof the Naval Enclave is making the most efficient use of the natural water supply.

16405

27.

Water Conservation Practices Within
the Naval Enclave

That the United States of America has diligently
attempted to make the maximum and most efficient use of the
waters available within the Naval Enclave, and in connection
therewith has constructed spreading works to increase the
natural percolation of surface waters into the underground
alluvium and has entered into a comprehensive control of
phreatophytes and other water-loving vegetation, and the
said conservation practies have in fact resulted in the
conservation of waters in a substantial but undetermined
amount.

16406

1                                28.

2   Salt Water Intrusion Downstream
    From Ysidora Narrows
3

4           That the ground waters contained in the younger

5   alluvial deposits downstream from the Ysidora Narrows are

6   presently and have for many years been, as a result of salt

7   water intrusion, brackish and unfit for agricultural or

8   domestic use; that none of said waters have been used in

9   recent times; that said salt water intrusion below said

10  Ysidora Narrows has not been caused by any act of any de-

11  fendant in this cause and there is no practical method

12  whereby said salt water intrusion in said area downstream

13  from Ysidora Narrows can be corrected so as to permit the

14  beneficial use of the waters contained in said younger allu-

15  vial deposits downstream from said Ysidora Narrows for

16  agricultural or domestic use.

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

16407

29.

Maintenance of Fresh Water Barrier and
Salt Water Intrusion Upstream
from Ysidora Narrows

Approximately two-thirds (2/3) of the younger allu-
vial deposits which underlie the Santa Margarita River within
the Naval Enclave are below sea level.  As a consequence to
prevent salt water intrusion, the United States of America
has found it necessary to maintain the water levels in the
Ysidora segment of those deposits at a minimum elevation of
five (5) feet above sea level in order to prevent the waters
of the Pacific Ocean from entering into the deposits.  Main-
tenance of that fresh water barrier against salt water intrusion
constitutes a reasonable and beneficial use of water by the
United States of America.

That during certain years prior to 1956 there
existed a condition of salt water intrusion from the Pacific
Ocean into the lower segments of the younger alluvial deposits
above the Ysidora Narrows; that said salt water intrusion did
in fact result in the waters of certain wells which were located
in said younger alluvial deposits being temporarily unfit for
domestic or agricultural purposes; it is not true that said
salt water intrusion was the result of any unlawful or wrong-
ful act by any defendant in this case, but on the contrary
such salt water intrusion resulted from the existence of a dry
cycle and consequent reduced runoff from the Santa Margarita
River during which period the United States of America pumped
substantial quantities of the waters of said River contained
in said lower segment of the younger alluvial deposits above the
Ysidora Narrows for use outside of the watershed of that River;
that as a result of that reduced runoff and pumping, the water
table in said lower segment of the younger alluvial deposits dropped
to a point below sea level and said salt water intrusion occurred.

39

16408

1                                           30.

2  No Salt Water Intrusion at the
   Present Time Above Ysidora Narrows
3

4           That subsequent to 1956 the United States of America

5  reduced its pumping from said lower segment of the younger allu-

6  vial deposits above the Ysidora Narrows and simultaneously com-

7  menced a program of ground water recharge of said deposits; that

8  said ground water recharge program consisted of spreading sewage

9  effluent over said deposits and by the construction and operation

10 of spreading works in combination with an extensive program of

11 eradication of phreatophytes and other water-consuming vegeta-

12 tion.  That substantial amounts of the sewage effluent used to

13 recharge said area was effleunt from waters of the Santa Mar-

14 garita River which had been diverted outside of its watershed as

15 found hereinabove; as a result of said water conservation

16 policies salt water intrusion into the lower segment of the

17 younger alluvial deposits above Ysidora Narrows has ceased and

18 for approximately five (5) years there has been no further salt

19 water intrusion above said Ysidora Narrows.  That these practices

20 are commendable and have contributed to the most efficient use

21 of the waters of the Santa Margarita River and its tributaries.

22 That the United States of America has now resumed limited

23 pumping from said younger alluvial deposits above said Ysidora

24 Narrows.

25

26

27

28

29

30

31

                                    40

1                                            31.

2      Defendants Did Not Wrongfully
       Cause Salt Water Intrusion
3

4                    That no past or present wrongful act of any defendant

5      in this case caused or now threatens to cause salt water

6      intrusion into any waters of the Santa Margarita River upstream

7      from Ysidora Narrows.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

16410

1                                    32.

2    Amount of Ground Water Movement through
     Ysidora Narrows.
3

4              That in a state of nature, approximately 100 acre

5    feet of ground water per year passed through the younger

6    alluvial deposits within the Ysidora Narrows and out of the Ysi-

7    dora Sub-basin.  As found hereinabove subsequent to the year

8    1956 when salt water intrusion was abated, the quantity of

9    water passing from the Ysidora Sub-basin has been restored

10   substantially to what it was in the state of nature.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

                                    42

16411

33.

## Lands Riparian to Santa Margarita River

That the following described lands are that portion of the 123,620 acres, more or less, referred to in Finding 1 above, which are within the watershed of the Santa Margarita River:

> (Col. Bowen will provide the descriptions to be incorporated here).

The lands specifically described in this Finding, immediately above, are riparian to the Santa Margarita River said lands being held under one chain of title a part of which abut upon or are traversed by the Santa Margarita River.

That the following described lands are that portion of the 9,147.55 acres, more or less, referred to in Finding 1 above, which are within the watershed of the Santa Margarita River, all waters which flow thereon being tributary to the Santa Margarita River at or above the NW$\frac{1}{4}$ of Section 28, Township 9 South, Range 4 West, S.B.M.:

> (Col. Bowen will provide the descriptions to be incorporated here).

The lands specifically described in this Finding, immediately above, are riparian to the Santa Margarita River being held under one chain of title a part of which abuts upon or is traversed by Santa Margarita River.

That all of the 9,147.55 acres, more or less, referred to hereinabove are within the watershed of the Santa Margarita River and are held under one chain of title but no portion of such lands not specifically described in this finding physically abuts upon the Santa Margarita River downstream from the NW$\frac{1}{4}$ of Section 28, Township 9 South, Range 4 West, S.B.M., and all waters which flow thereon are tributary to the Santa Margarita River downstream from the NW$\frac{1}{4}$ of Section 28, Township 9 South, Range 4 West, S.B.M.

43

16412

34.

DeLuz Creek Surface Stream and Younger
Alluvial Deposits Thereunder

That DeLuz Creek is an intermittent surface stream
which has its confluence with the Santa Margarita River at the
Southeast Quarter (SE¼) of the Southwest Quarter (SW¼) of
Section 29, Township 9 South, Range 4 West, S.B.M.; that imme-
diately upstream from its confluence with the Santa Margarita
River, and for a distance of approximately four (4) miles,
said surface flow of DeLuz Creek, when in fact it flows on
the surface, flows over an area of younger alluvial deposits
of considerable depth; that said younger alluvial deposits
are depicted on United States Exhibits 67 and 68 incorporated
herein by reference.

That DeLuz Creek enters the Naval Enclave in Sec-
tion 8, Township 9 South, Range 4 West, S.B.M. and proceeds in
a southerly direction over sections 17, 20 and 29 to its point
of confluence with the Santa Margarita River as found herein-
above

35.

Geologic Factors Concerning Younger
Alluvial Deposits which underlie
Surface Stream of DeLuz Creek

That said younger alluvial deposits referred to in
Finding 34 above rest upon and are confined laterally by deposits
of basement complex; that there are ground waters within said
younger alluvial deposits; that the source and recharge of said
ground waters is primarily the surface flow of DeLuz Creek;
that the said younger alluvial deposits are composed of sedi-
mentary materials of a relatively high water-bearing capacity
and permeability; that said deposits of basement complex are
essentially non-water bearing and relatively impervious; that
as a result thereof the waters within said younger alluvial
deposits do not move laterally or vertically into the deposits
of basement complex but do in fact move through the younger
alluvial deposits in the identical direction of the surface
flow of DeLuz Creek when in fact it exists; that during such
times when DeLuz Creek flows as a surface stream, that is,
during periods of precipitation, the ground waters contained
in said younger alluvial deposits are in direct contact with
said surface flow; that during all other times DeLuz Creek
does not flow as a perennial surface stream but rises to the
surface, disappears and rises again, and during such periods
the ground waters within the younger alluvial deposits do in
fact constitute the waters which rise and disappear as afore-
said.

45

1                              36.

2   Ground Waters Within Younger Alluvial
    Deposits are a part of DeLuz Creek
3

4          That the ground waters within the said younger alluvial

5   deposits are in fact in a known and definite channel, to wit,

6   the basement complex containing the younger alluvial deposits;

7   that said ground waters do in fact flow in the same direction

8   as the surface flow of DeLuz Creek when in fact it physically

9   flows, are in direct contact with said surface flow, do

10  constitute the waters which rise to the surface and then dis-

11  appear during periods other than periods of precipitation, and

12  said ground waters and said surface flow constitute one creek

13  herein referred to as DeLuz Creek.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

37.

Lands Riparian to DeLuz Creek

That the following described lands are within the
DeLuz Creek watershed and are held under one chain of title a
part of which abuts upon or is traversed by DeLuz Creek:

(Col. Bowen will provide description which will

be incorporated here).

1                                    38.

2    Continuing Jurisdiction to Determine Extent
     of Younger Alluvial Deposits and Reliance
3    on U. S. Exhibits

4             That while it is known, definite and certain that the

5    younger alluvial deposits as found in Finding 34 above, rest

6    upon deposits of basement complex, it is not known with

7    certainty the exact depth of said younger alluvial deposits

8    to their contact with said basement complex throughout said

9    area; that as this Court will keep continuing jurisdiction of

10   this cause, jurisdiction is reserved to determine such a fact

11   if it becomes necessary to do so in any particular factual

12   situation which might arise in the future; that the contact line

13   on the surface between said younger alluvial deposits and

14   said basement complex has not been determined with absolute

15   exactness but has been determined to a sufficient degree for

16   the United States of America to prepare maps and exhibits de-

17   lineating said contact line (including U. S. Exhibit 67) and

18   said contact line as established by said maps and exhibits pre-

19   pared by the United States of America has been accepted by this

20   Court as being the contact line between theyounger alluvial

21   deposits and the basement complex deposits on ground surface.

22

23

24

25

26

27

28

29

30

31

48

39.

## Fallbrook Creek

That Fallbrook Creek is a stream of an intermittent character which flows over and upon deposits of essentially consolidated rocks and basement complex; that its headwaters are in Sections 35 and 26, Township 9 South, Range 4 West, S.B.M., and in a state of nature it flows through Sections 34, 27, 33, 32, Township 9 South, Range 4 West, S.B.M., and Section 5, Township 10 South, Range 4 West, S.B.M., to its point of confluence with the Santa Margarita River in the SW$\frac{1}{4}$ of Section 5, Township 10 South, Rnage 4 West, S.B.M.; that under present conditions the flow of said Fallbrook Creek is diverted into Lake O'Neil, an artificial storage reservoir situated in Sections 5 and 8, Township 10 South, Range 4 West, S.B.M.; that said Lake O'Neil is more fully described in Interlocutory Judgment No. 24; that except during periods of substantial precipiation and runoff Fallbrook Creek contributes no water to the Santa Margarita River.

40.

Lands Riparian to Fallbrook Creek

That the following described lands are within the watershed of Fallbrook Creek, are held under one chain of title and that a portion of said lands abut upon or are traversed by Fallbrook Creek.

(Note:  Colonel Bowen will provide the descriptions).

50

16419

1                              41.

2 <u>Unnamed Creeks, Gullies, etc</u>.

3            That in addition to the Santa Margarita River,

4 DeLuz Creek and Fallbrook Creek, there are numerous small creeks,

5 gullies and watercourses both named and unnamed tributary to

6 the Santa Margarita River within the Naval Enclave.  Excepting

7 for those streams which are supplied with sewage effluent

8 all such streams are intermittent and flow only during and

9 after precipitation and runoff.  While in the main such creeks,

10 gullies and watercourses flow primarily over consolidated rocks

11 and basement complex, there are limited areas in which shallow

12 alluvial deposits underlie the stream channel.  In all such

13 cases such shallow alluvial deposits rest upon and are laterally

14 contained by deposits of consolidated rock or basement complex

15 and the ground waters contained in such alluvial deposits are

16 in direct physical and hydrologic contact with the surface flows,

17 at such times as there are surface flows, in all of said creeks,

18 gullies or watercourses.  The ground waters contained in such

19 shallow alluvial deposits, if any, are in a known and definite

20 channel, to wit, the younger alluvial deposits, and such ground

21 waters and surface flows as may exist do in fact constitute a

22 single creek, gully or watercourse.

23
24
25
26
27
28
29
30
31

1                                    42.

2 Jurisdiction Reserved as to Said
Creeks, Gullies, etc.

3

4          That said small creeks, gullies or watercourses have not

5  been considered in detail herein, nor has any party to this

6  cause requested detailed findings thereto; that as this judgment

7  is interlocutory, should the United States of America or any

8  party to this cause desire such detailed findings as to such

9  small creeks, gullies or watercourses, this Court will do so

10 prior to the entry of final order and decree upon such a

11 request; that if no such request is made, the location of such

12 creeks, gullies or watercourses are depicted on U. S. Exhibits 29A,

13 29B, 29C, 29F, 29G and 29H incorporated herein by reference, and

14 this Court can in the future refer to said exhibits to determine

15 any controversy which may arise as to such waters.

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

16421

1                                        43.

2  Minor Surface Impoundments

3           That in addition to Lake O'Neil, which is the subject

4  of Interlocutory Judgment No. 24, there are within the Naval

5  Enclave and within the watershed of the Santa Margarita River,

6  many structures used for the impoundment of surface runoff for

7  the purpose of providing stock water, or to encourage ground

8  water recharge, or for purposes of soil conservation, recreation

9  or other beneficial purposes.  There is no evidence that any of

10  such structures or impoundments presently constitute an un-

11  reasonable, wasteful or non-beneficial use of water.  None of

12  such structures or impoundments have been constructed or are

13  maintained under the authority of any Permit or License of

14  the State of California, and none of such structures or im-

15  poundments have been maintained adversely to any party to this

16  cause.

17           That these minor surface impoundments as described in

18  this Finding are identical to those considered in Findings of

19  Fact, Conclusions of Law and Interlocutory Judgment No. 28.

20

21

22

23

24

25

26

27

28

29

30

31

                                        53

                                              16422

1    44.

2  Effect of Such Minor Surface Impoundments

3          That all such structures and impoundments as are

4  described in Finding 43 above intercept surface runoff of waters

5  of the Santa Margarita River System, which runoff would in a

6  state of nature contribute to the Santa Margarita River; that

7  while the impact of any such individual impoundment on the

8  available water supply of the Santa Margarita River is at

9  present de minimis, the cumulative effect of such structures

10  and impoundments may at a future date become substantial and

11  require regulation or control.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

45.

Vagrant, Local, Percolating Waters and
Surface Waters other than those herein
Found to be a Part of a Specific River
or Creek
_____

That all ground waters within the Santa Margarita River

watershed and contained within deposits of consolidated rocks,

weathered basement complex or basement complex, as depicted on

U. S. Exhibits 37, 67 and 70, and within the Naval Enclave, are

vagrant, local, percolating waters not a part of the Santa Mar-

garita River or any tributary thereto; that all surface waters

which flow upon the deposits of consolidated rock, weathered

basement complex or basement complex  on the lands comprising

the Naval Enclave within the Santa Margarita River watershed are

a part of the Santa Margarita River or a tributary thereto.

16424

1                          46.

2  Future Jurisdiction

3              That the United States of America by bringing this

4  action has submitted to the jurisdiction of this Court and to the

5  continuing jurisdiction of this Court in this cause, and all

6  rights claimed to the use of the waters of the Santa Margarita

7  River and its tributaries and all rights claimed to the use of

8  the waters which add to and support the Santa Margarita River

9  and its tributaries by the United States of America and all

10  defendants in this case and by their heirs, successors and assigns

11  shall be and are subject to the continuing jurisdiction of this

12  Court.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

16425

47.

2 **Stipulation as to California Law**

3       On November 29, 1951, the United States of America
4 and the State of California entered into a written stipulation
5 in this case which provided as follows:

6       "On the 15th day of August, 1951, the People of
7       the State of California, in accordance with invitation
8       of the United States of America, petitioned this Court
9       to intervene in this litigation.  On that date an
10      Order was allowed and entered by this Court granting
11      the Petition.

12      "For the clarification of the issues in this
13      litigation and for the benefit of all of the parties to
14      this cause, it is hereby stipulated:

15                      "I

16      "That in Paragraphs VIII and IX of plaintiff's
17      Complaint herein, and in Paragraphs 2 and 3 of the Prayer
18      of this Complaint, the word 'paramount' is used in the
19      same sense in which that word is used in the second para-
20      graph, on page 374 of the opinion of the Supreme Court
21      of California, in the case of Peabody v. Vallejo, 2 Cal.2d
22      351 (fourth paragraph on page 494, 40 Pac.2d 486).

23                      "II

24      "That in this cause, the United States of America
25      claims only such rights to the use of water as it acquired
26      when it purchased the Rancho Santa Margarita, together
27      with any rights to the use of water which it may have
28      gained by prescription or use, or both, since its acquisi-
29      tion of the Rancho Santa Margarita.

30      - - -

31      - - -

47.(P.2)

1          "III

2          "That the United States of America claims by reason

3     of its sovereign status no right to the use of a greater

4     quantity of water than is stated in Paragraph II, hereof.

5          "IV

6          "That the rights of the United States of America

7     to the use of water herein are to be measured in accordance

8     with the laws of the State of California.

9          "V

10         "That the parties to this Stipulation will request

11    the entry of a Pre-trial Order by this Court defining the

12    issues in this cause, in conformity with the statements

13    contained in this Stipulation.

14         "VI

15         "That there will be a full, complete and mutaul

16    exchange of data and information as to the subject matter

17    of this cause collected by the respective parties to this

18    Stipulation, including data respecting the issuance of any

19    permits or licenses issued by the State of California in

20    connection with the rights to the use of water of the

21    Santa Margarita River.  Such exchange of information by

22    the United States will be subject to clearance by the

23    Commanding Officer, Camp Joseph H. Pendleton, in respect

24    to military security, as determined by said officer:

25         "Dated:  November 29, 1951.

26   "ERNEST A. TOLIN,                EDMUND G. BROWN
     United States Attorney           EDMUND G. BROWN, Attorney General
27   BETTY MARSHALL GRAYDON           of the State of California
     Assistant United States
28   Attorney                         ARVIN B. SHAW, JR.
     WILLIAM H. VEEDER,               ARVIN B. SHAW, JR.
29   Special Assistant to the         Assistant Attorney General
     Attorney General of the
30   United States                    B. ABBOTT GOLDBERG
     by                               B. ABBOTT GOLDBERG
31   WILLIAM H. VEEDER                Deputy Attorney General
     WILLIAM H. VEEDER
                                      Attorneys for the People of the
                                      State of California"

47.(P.3)

1           That on or about_____this Court entered its

2   Order permitting the United States of America to file a Complaint

3   and Supplementary and Amendatory Complaint.  That in said

4   Supplementary and Amendatory Complaint the United States of

5   America realleged and reaverred each and every allegation in

6   the original Complaint including paragraphs 8 and 9 of said

7   original Complaint.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

16428

48.

2   Authorization for Stipulation

3          That counsel for the United States of America in

4   this case was authorization to enter into the Stipulation set

5   forth above in Finding of Fact 47 and his action in so doing

6   was authorized, ratified and approved by the Attorney General

7   of the United States and the Department of Justice.

16429

49.

Certain Parties Agree to be Bound
by the Stipulation

That on or about _____ said Stipulation

referred to above in Finding 47 was joined in and consented

to by counsel for defendants, Fallbrook Public Utility District,

Vail Company and_____.

16430

1                              50.

2    **California Law Binds All Parties**
     **to this Case**
3

4              That this case has been tried before this Court on
                         of the waters of Santa Margarita River and its tributaries
5    the theory that the rights to the use of waters which add to and

6    support said River and its tributaries shall be determined by

7    California law as to the plaintiff and all defendants in this

8    cause.  That, therefore, by so proceeding upon this theory

9    before this Court, all parties to this action not parties to the

10   Stipulation referred to in Finding 47 above, and not defendants

11   who expressly joined in and consented to said Stipulation as

12   set forth in Finding 49 above, have impliedly, by their conduct

13   in this case, assented to the substance of said Stipulation; and

14   their rights and the rights of all parties in this case shall be

15   and are determined by the laws of the State of California.

16             That notwithstanding said Stipulation set forth in
                                                    water
17   Finding of Fact 47 above, there is no Federal/law as such and

18   of necessity this Court would be required to determine the rights

19   of all parties to the use of the waters of the Santa Margarita

20   River and its tributaries and to the use of the waters which

21   add to and support said River and its tributaries, pursuant to

22   the applicable laws of the State of California concerned with

23   water rights.

24

25

26

27

28

29

30

31

                             62

51.

Opinion Construing Stipulation

That heretofore this Court entered an Opinion dated August 8, 1958, reported in <u>United States of America</u> v. <u>Fallbrook Public Utility District, et al</u>., 165 Fed.Supp.806, which concerned the meaning, application and scope of the Stipulation referred to in Finding of Fact 47 hereinabove, and also certain pre-trial rulings.  That to the extent that said Opinion is not inconsistent with any finding entered herein, all rulings as are set forth in said Opinion are adopted herewith.

16432

52.

2 <u>Prima Facie Evidence</u>

3

4        That on Exhibit ___ attached to and made a part of

5 these findings there appear certain factual statements con-

6 cerning lands of the United States of America within the Naval

7 Enclave which concern such matters as wells, surface diver-

8 sions, gross acreages, irrigated acreages, irrigable acreages

9 and water duty.  Said factual statements which pertain to

10 wells and surface diversions are as of the date of this Inter-

11 locutory Judgment true.  The factual statements contained in

12 said Exhibit ___ which pertain to gross acreages, irrigated

13 acreages, irrigable acreages and water duty are based on evi-

14 dence introduced in this case by the United States of America

15 with an express assurance by its counsel that apportionment

16 was not being sought at this stage of the litigation.  Because

17 of this fact and the fact that this Court is not at this time

18 making any Order apportioning or regulating the use of the

19 waters involved herein, said facts pertaining to gross acreages,

20 irrigated acreages, irrigable acreages and water duty are not

21 material to any issue decided by Interlocutory Judgment No. 37

22 entered herewith.  That in the exercise of this Court's

23 continuing jurisdiction in this cause said facts may well

24 be material to an issue presented to this Court in the future;

25 therefore, this Court finds that such factual statements which

26 are contained in said Exhibit ___ which pertain to gross acreages,

27 irrigated acreages, irrigable acreages and water duty are sup-

28 ported by the evidence in this case and such factual statements

29 shall be <u>prima facie</u> evidence as to gross acreages, irrigated

30 acreages, irrigable acreages and water duty in any subsequent

31 proceedings before this Court in this cause; as used herein <u>prima</u>

<u>facie</u> evidence is that which suffices for the proof of the parti-

cular fact until contradicted or overcome by other evidence.

16433

1                              53.

2   <u>Reference to Interlocutory Decree No. 25</u>

3           That this Court has previously entered Findings of Fact,

4   Conclusions of Law and Interlocutory Decree No. 25 pertaining

5   to a State court judgment in the case of <u>Rancho Santa Margarita</u>

6   v. <u>Vail, et al</u>., Case No. 42850 in the records of the Superior

7   Court of the State of California, in and for the County of

8   San Diego.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

## CONCLUSIONS OF LAW

### 1.

The United States of America is the apparent owner of the lands described in Finding of Fact No. 1 herein.

### 2.

Based on the facts as set forth in Finding of Fact No. 3, jurisdiction is reserved by this Court to enter further Conclusions of Law either on its own motion or upon the motion of the United States of America or any defendant in this cause on the issue of whether the United States of America has exclusive jurisdiction over the lands or any portion thereof comprising the Naval Enclave.

### 3.

All uses of the waters of the Santa Margarita River by the United States of America within the Naval Enclave and both within and without the watershed of the Santa Margarita River, other than uses for stock watering, irrigation and sub-irrigation, and the maintenance of a fresh water barrier to prevent salt water intrusion are municipal uses.

### 4.

That except as provided in Interlocutory Judgment No. 24 (Lake O'Neil), the United States of America has not established nor obtained nor does it own or possess any appropriative rights to use the waters of the Santa Margarita River or its tributaries on any lands of the Naval Enclave.

### 5.

That the United States of America has not established nor does it own or possess any prescriptive right to the use of the waters of the Santa Margarita River or any tributaries thereto.

### 6.

That the acts of the predecessor in interest of the United States of America in exporting waters from the Santa

66

16435

1 Margarita River without the watershed were not adverse or hostile

2 to any upstream landowner or water user or water-right claimant

3 and said acts did not result in said predecessor obtaining a

4 prescriptive right to the use of any water of the Santa Margarita

5 River, or its tributaries.

6        That such waters exported outside the watershed of the

7 Santa Margarita River by the predecessor in interest of the

8 United States of America were either surface waters or waters

9 within a known and definite channel and part of the underground

10 flow of the Santa Margarita River, and as all such exportations of

11 such waters occurred subsequent to the year 1937, such exporta-

12 tions were not made under any appropriative right recognized by

13 the laws of the State of California.

14                                7.

15        That the continued use by the United States of America

16 of the waters of the Santa Margarita River, as the same have been

17 defined in the Findings herein, within the boundaries of the

18 Naval Enclave, but outside the watershed of the Santa Margarita

19 River, will not in the future give rise to any right to the use

20 of water enforceable against any upstream appropriators,

21 prescriptor, riparian or overlying owner.

22                                8.

23        That except as to uses of the waters of the Santa Mar-

24 garita River to maintain native vegetation and grasses, all uses

25 of the waters of the Santa Margarita River by the United States

26 of America within the Naval Enclave and within the watershed of

27 the Santa Margarita River, are reasonable and beneficial ripa-

28 rian uses.  That all uses of the waters of the Santa Margarita

29 River by the United States of America within the Naval Enclave

30 but outside the watershed of the Santa Margarita River are bene-

31 ficial uses, and are proper uses in that the United States of

67

16436

1  America is the last water user on the stream, and for that

2  reason the use of waters outside the watershed does not injure

3  any other party to this cause.

4                              9.

5      No determination is made herein as to the reasonable-

6  ness of the amounts of waters of the Santa Margarita River

7  used by the United States of America within the Naval Enclave

8  in that this issue can only be determined at such time as this

9  Court may be concerned with apportionment proceedings.

10                             10.

11      This Court does not pass upon the question of whether

12  the maintaining of natural grasses and vegetation cover on the

13  lands of the Naval Enclave within the Santa Margarita River

14  watershed is, or will be in the future, a reasonable use of

15  water in view of the other purposes for which water has been and

16  will be used.  This question is a question which may well be

17  relevant in any apportionment proceedings.  Jurisdiction is

18  herein reserved to determine at such future time as an apportion-

19  ment proceeding or regulation proceeding is presented the issue

20  as to whether the maintaining of natural grasses and vegetation

21  cover is a reasonable use of water and such issue will be

22  determined at that time based upon the facts as may then appear

23  and pursuant to the laws of the State of California.

24                             11.

25      The use of the waters of the Santa Margarita River

26  by the United State of America to maintain a fresh water barrier

27  against salt water intrusion as set forth in Finding 29 consti-

28  tutes a reasonable and beneficial use of the waters of said River.

29  - - -

30  - - -

31  - - -

16437

12.

That water conservation program of the United States of America within the Naval Enclave and particularly the construction of spreading works, the control of phreatophytes, and the reclamation of sewage have been commendable practices and have resulted in the maximum use of the water resources of the Santa Margarita River on the Naval Enclave.

The single fact that water has been conserved by the United States of America by these conservation programs will not in any subsequent apportionment proceedings increase the share to which the Naval Enclave may be entitled, nor will that single fact reduce such future allocation as may be made to the Naval Enclave. In any future apportionment proceeding the Court at that time may take such conservation practices into account in determining whether any use on the Naval Enclave is a reasonable riparian use insofar as it concerns amounts of water consumptively required to satisfy a beneficial riparian use.

13.

That by reason of the Stipulation of November 29, 1951, set forth in Finding 47 herein, the United States of America can assert no rights to the use of the waters of the Santa Margarita River within the Naval Enclave based upon its sovereignty, but on the contrary is limited to such rights as it may have acquired from its predecessor in interest, or which it may have gained since its acquisition of the Naval Enclave by prescription or use or both as provided by California law.

14.

That counsel for the United States of America had authority to execute said Stipulation set forth in Finding of Fact 47, and the Attorney General of the United States of America and the Department of Justice of the United States of America ratified said act of said counsel.

69

16438

1                          15.

2          That the Stipulation as set forth in Finding of Fact 47

3   has at all times since November 29, 1951, been in full force

4   and effect and theprovisions thereof binding on the United States

5   of America and the State of California.

6                          16.

7          That heretofore this Court entered an opinion dated

8   August 8, 1958, reported in <u>United States of America</u> vs. <u>Fall-</u>

9   <u>brook Public Utility District, et al</u>., 165 F.Supp. 806, which

10  concerned the meaning, application and scope of the Stipulation

11  referred to in Finding of Fact 47 and certain pre-trial rulings.

12  That to the extent said Opinion is not inconsistent with any

13  Finding of Fact or Conclusion of Law entered herein, said

14  rulings of law pertaining to said stipulation as are set forth

15  in said Opinion are adopted herewith into these Conclusions of

16  Law as if set forth in full herein.

17                         17.

18         That the Fallbrook Public Utility  District, the Vail

19  Company, and the_____in open court in this cause

20  expressly joined in and consented to said Stipulation and are

21  therefore bound by its terms and provisions.

22                         18.

23         This case has been tried on the theory that the appli-

24  cable California law would determine the rights to the use of

25  the waters of Santa Margarita River and its tributaries and the

26  rights to the use of the waters which add to and support said

27  River and its tributaries and, therefore, all parties not parties

28  to the Stipulation set forth in Finding 47 by pursuing this theory

29  of the case have implied by such conduct assent to the application

30  of California law in this cause.

31  - - - -

16439

19.

That notwithstanding said Stipulation and notwithstanding the fact that this case was tried on the theory that California law would determine such rights, the laws of the State of California, which determine the rights to the use of the waters of the Santa Margarita River and its tributaries and the rights to the use of the waters which add to and support said River and its tributaries would apply in that there is no Federal law as to water rights as such, and this Court would of necessity be required to apply the applicable California law.

20.

That the United States of America has no rights to the use of the waters of the Santa Margarita River or its tributaries upon lands within the Naval Enclave, based upon its ownership of Indian Reservation Lands, National Forest Lands, Public Domain Lands, or other Federally-owned lands located elsewhere within the watershed upstream from the Naval Enclave.

21.

That the designation of the Naval Enclave, and/or various portions thereof, as a military reservation did not by such designation confer upon the United States of America any rights to the use of the waters of the Santa Margarita River or its tributaries.

22.

That the United States of America has acquired no rights to the use of the waters of the Santa Margarita River or its tributaries within the Naval Enclave by inverse condemnation.

23.

That the United States of America has acquired no rights, appropriative or otherwise, to the use of the waters of the Santa Margarita River and its tributaries within the Naval Enclave by reason of its conservation practices, including but not

72

16440

1  limited to the reclaiming of sewage, the control of phreatophytes
2  or the construction of spreading works.

3                              24.

4        That no act of the Congress of the United States in-
5  cluding the Acts of 1866 (14 U.S.Stats. 253) and 1870 (16 U.S.
6  Stats. 218) and the Desert Land Act of 1877 was intended to or
7  does provide or could constitutionally provide that the United
8  States of America can acquire or take vested rights to the use
9  of water for its uses within the Naval Enclave without payment
10  of compensation.

11                             25.

12        That said Acts specifically referred to in Conclusion
13  of Law 24 pertain to lands which were a part of the public
14  domain and have no application to those lands within the Naval
15  Enclave which are referred to in Finding of Fact No. 2 which
16  lands were in private ownership at the time of the Treaty of
17  Guadalupe Hidalgo and remained in private ownership at all times
18  thereafter until acquired by the United States of America as
19  set forth in Finding of Fact No. 1 above.

20                             26.

21        That except as to such rights, if any, which may be
22  permitted under the appropriative right considered in Interlocu-
23  tory Judgment No. 24 (Lake O'Neil), the United States of America
24  has no right to compel any Santa Margarita River water user upstream
25  from the Naval Enclave to release water or curtail upstream water
26  use so as to allow such water to reach the Naval Enclave for the
27  purpose of exportation without the Santa Margarita River water-
28  shed.

29                             27.

30        That except as to reasonable and proper riparian uses
31  on lands within the Naval Enclave upstream from the point of

                              73

                                            16441

1   confluence of the Santa Margarita River with DeLuz Creek

2   in Section 29, Township 9 South, Range 4 West, S.B.M., no

3   upstream riparian overlying owner, prescriptor or  appropriator

4   shall be required to release water or curtail reasonable and

5   beneficial water uses so as to allow water to reach the Naval

6   Enclave for any purpose unless and until water exportation

7   from without the Santa Margarita River watershed by the United

8   States of America is abandoned, and the ground water levels

9   within the younger alluvial deposits which underlie the Santa

10  Margarita River downstream from said point of confluence of

11  said DeLuz Creek with the Santa Margarita River have been

12  restored to that level at which they would have been if such

13  exportation had not taken place.

14                          28.

15          That all surface waters which flow upon lands of the

16  Naval Enclave within the watershed of the Santa Margarita River

17  are a part of the Santa Margarita River and subject to the

18  continuing jurisdiction of this Court.

19                          29.

20          All waters contained within the younger alluvial

21  deposits within the Santa Margarita watershed and within the

22  Naval Enclave are in a known and definite channel, are not

23  percolating waters, but are in fact a part of the underground

24  flow of a particular stream.

25                          30.

26          That all lands specifically described in Finding of

27  Fact 33 have a correlative riparian right to the use of the

28  waters of Santa Margarita  River.

29                          31.

30          That all lands specifically described in Finding of

31  Fact 37 have a correlative riparian right to the use of the

    waters of DeLuz Creek.

                          74

                                    16442

32.

That all lands specifically described in Finding of
Fact No. 40 have a correlative riparian right to the use of
the waters of Fallbrook Creek.

33.

That the smallest tract of land held under one chain
of title and within the Santa Margarita River watershed,
a part of which abuts upon or is traversed by any area con-
taining younger alluvial deposits as depicted on U. S. Exhibits
37, 67 and 70, within the Naval Enclave, and not heretofore
found to be riparian to a specific river or creek, has a
correlative riparian right to the use of the ground waters
within said younger alluvial deposits, and such surface flow
as may exist over and upon said deposits, and the use of such
waters shall be and is subject to the continuing jurisdiction
of this Court.  That except as to the Santa Margarita River,
DeLuz Creek and Fallbrook Creek, such lands have not been
specifically considered in these findings, but they can be
readily ascertained in the future should it be necessary to do
so by reference to the areas of younger alluvial deposits as
depicted on said U. S. Exhibits 37, 69 and 70, and the watershed
line as depicted on Exhibit A attached hereto.

34.

That the exercise of the correlative riparian rights
as provided in Conclusions of Law 30, 31, 32 and 33 to the use of
such specified waters is subject to the continuing jurisdiction
of this Court.  That all uses of the waters of the Santa
Margarita River, DeLuz Creek, Fallbrook Creek and their tribu-
taries are subject to the continuing jurisdiction of this Court.

- - -

- - -

75

35.

That all ground waters found within areas of deposits
of consolidated rocks, basement complex or weathered basement
complex as said deposits are depicted on U. S. Exhibits 37, 67
and 70 and within the Santa Margarita River watershed and the
Naval Enclave do not add to, support nor contribute to the
Santa Margarita River or any tributary thereto, and are local,
vagrant, percolating waters not a part of said River or any
tributary thereto.

36.

That, at the present status of this case, the issue of
apportionment or the quantity or proportion of waters to which
any lands are entitled has not been presented; and this court
has taken no evidence directed to establishing whether any water
uses pursuant to correlative riparian rights are reasonable or
unreasonable as to amount of water used in the light of other
rights which may exist as to such waters and this issue is left
open, is not decided herein, and shall be litigated by this
Court if and when it becomes necessary to do so.

In the exercise of this continuing jurisdiction, this
Court will pass upon the exercise of such correlative rights
based on the facts as may then appear and pursuant to California
law.

37.

Such facts as are set forth on Exhibit H attached
hereto which pertain to gross acreages, irrigated acreages,
irrigable acreages and water duty shall be _prima facie_ evidence
as to such matters in any subsequent proceeding before this
Court in this cause. As used herein, _prima facie_ evidence is
that which suffices for the proof of the particular fact until
contradicted or overcome by other evidence.

76

16444

38.

2        That the United States of America by bringing this

action has submitted to the jurisdiction of this Court and to

the continuing jurisdiction of this Court in this cause, and

all rights claimed to the use of the waters of the Santa Mar-

garita River and its tributaries and all rights claimed to

the use of the waters which add to and support the Santa Mar-

garita River and its tributaries by the United States of

America and all defendants in this case and by their heirs,

successors and assigns shall be and are subject to the continuing

jurisdiction of this Court.

39.

Conclusions of Law 1, 2, 3 and 4, as set forth in the

Conclusions of Law attached to Interlocutory Judgment No. 28

(Miscellaneous Surface Impoundments) are incorporated herein

and made a part hereof as if set forth in full.

40.

That this Interlocutory Judgment No. 30 is not intended

to nor does it apply to any lands of the United States of

America other than those lands within the Naval Enclave as said

lands are described in Finding of Fact 1; that other lands

owned or supervised by the United States of America, such as

Forest Service lands and Indian Reservation lands, will be

covered in other Findings of Fact, Conclusions of Law and Inter-

locutory Judgments in this cause.

16445

1 <u>INTERLOCUTORY JUDGMENT</u>

2                                   1.

3        IT IS ORDERED, ADJUDGED AND DECREED that the United

4 States of America has not established nor obtained, nor does

5 it own or possess a prescriptive right to the use of the waters

6 of the Santa Margarita River or its tributaries.

7                                   2.

8        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that except

9 as provided in Interlocutory Judgment No. 24 (Lake O'Neil), the

10 United States of America has not established nor obtained, nor

11 does it own or possess, an appropriative right to the use of the

12 waters of the Santa Margarita River or its tributaries.

13                                  3.

14       IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

15 following described lands have a correlative riparian right to the

16 use of the waters of the Santa Margarita River:

17            (This corresponds with Finding of Fact 33 and in the

18             body of this Judgment provision, I will set forth

19             the specific descriptions of property).

20                                  4.

21       IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

22 following described lands have a correlative riparian right to the

23 use of the waters of DeLuz Creek:

24                                  5.

25       IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

26 following described lands have a correlative riparian right to the

27 use of the waters of Fallbrook Creek:

28                                  6.

29       IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

30 smallest tract of land  held under one chain of title within the

31 Naval Enclave and the Santa Margarita River watershed, a part of

78

16446

1 which abuts upon or is traversed by younger alluvial deposits

2 as said deposits are depicted on U. S. Exhibits 37, 67 and 70,

3 not heretofore specifically determined to be riparian to the

4 Santa Margarita River, DeLuz Creek, or Fallbrook Creek, have

5 correlative riparian rights to the use of the waters contained

6 in said deposits and such surface waters as may flow over and

7 upon said deposits; it is further ordered, adjudged and decreed

8 that this Court shall have jurisdiction to make such findings

9 in the future as may be necessary to settle any dispute con-

10 cerning the propriety of the use of the said waters, and that

11 this Court shall in the future refer to Exhibit A, attached

12 hereto, and to U. S. Exhibits 37, 67 and 70 to determine the

13 location of said younger alluvial deposits.

14                               7.

15        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

16 correlative riparian rights to the use of the waters as provided

17 in paragraphs 3, 4, 5 and 6 of this Interlocutory Judgment and all

18 other uses of said waters shall be and are subject to the continuing

19 jurisdiction of this Court.

20                               8.

21        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all

22 ground waters found within areas of younger alluvial deposits within

23 the Naval Enclave and within the Santa Margarita River watershed

24 as said deposits have been described in the Findings of Fact and

25 Conclusions of Law herein and as such younger alluvial deposits

26 are delineated upon U. S. Exhibits 37, 67 and 70 incorporated

27 into this Interlocutory Judgment by reference constitute the sub-

28 surface flow of the Santa Margarita River or a tributary thereto,

29 and that the bed and banks of such sub-surface flow of the Santa

30 Margarita River, or a tributary thereto, are the deposits of con-

31 solidated rock, basement complex or weathered basement complex

1 that contain said younger alluvial deposits.

2                              9.

3        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all
4 surface waters which flow over and upon any of the lands within
5 the Naval Enclave and within the Santa Margarita River watershed
6 are a **part** of the Santa Margarita River or a tributary thereto
7 and subject to the continuing jurisdiction of this Court.

8                              10.

9        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all
10 ground waters found within areas of deposits of consolidated
11 rock, basement complex or weathered basement complex as said
12 deposits are depicted on U. S. Exhibits 37, 67 and 70 and within
13 the Santa Margarita River watershed and the Naval Enclave do not
14 add to, support nor contribute to the Santa Margarita River or
15 any tributary thereto and are local, vagrant, percolating waters
16 not a part of said River or any tributary thereto.

17                             11.

18        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
19 rights of the owners of said lands referred to in Paragraph 10
20 of this Interlocutory Judgment and their heirs, successors and
21 assigns to the use of said ground waters are forever quieted
22  in them and against all other parties having rights to the
23 use of the waters of Santa Margarita River or its tributaries,
24 their heirs, successors and assigns.

25                             12.

26        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that
27 except as to the use of waters as considered in Interlocutory
28 Judgment No. 24 (Lake O'Neil) and the use of the waters to
29 maintain native grasses and vegetation cover and the uses of
30 water in minor surface impoundments which may not be proper
31 riparian uses, all uses of the waters of the Santa Margarita

                              80

16448

1 River and its tributaries within the Naval Enclave and within the Santa
2 Margarita River watershed by the United States of America are, as to
3 their character reasonable and beneficial riparian uses.

4                              13.

5          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all uses
6 of the waters of the Santa Margarita River by the United States of
7 America within the Naval Enclave but outside the watershed of the
8 Santa Margarita River are beneficial uses, but that such uses are not
9 being made, nor have they been made pursuant to any water right
10 recognized or provided by the laws of the State of California; that
11 notwithstanding the fact that said uses without the watershed are
12 without right, they are not unlawful or wrongful in that the United
13 States of America, as the last water user on the stream, may use
14 the waters  which are physically available on or within its lands
15 at such location as it elects.

16                              14.

17          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this
18 Court does not at this time pass upon the question of whether the
19 maintaining of natural grasses and vegetation cover on the lands of
20 the Naval Enclave within the Santa Margarita River watershed is or
21 will be in the future a reasonable use of water in view of the other
22 purposes for which water has been and will be used.  Jurisdiction is
23 herein reserved to determine at such future time as an apportionment
24 proceeding or regulation proceeding is presented the issue as to
25 whether the maintaining of natural grasses and vegetation cover is
26 a reasonable use of water and such issue will be determined at that
27 time based upon the facts as may then appear and pursuant to the
28 laws of the State of California.

29                              15.

30          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all uses
31 of the waters of the Santa Margarita River by the United States of
32 America within the Naval Enclave and both within

                              81

1 and without the watershed of the Santa Margarita River other than
2 those uses for stock watering, irrigation and sub-irrigation and
3 the maintenance of a fresh water barrier to prevent salt water
4 intrusions are as to their characteristics municipal uses.

5                              16.

6          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that
7 no determination is to be made at this time in this Interlocutory
8 Judgment as to the reasonableness of the amounts of waters of
9 the Santa Margarita River used by the United States of America
10 within the Naval Enclave in that this issue can only be deter-
11 mined at such time as the Court may be concerned with an apportion-
12 ment or regulation proceeding.  Jurisdiction is expressly reserved
13 to decide this issue in the future should the need occur and such
14 issue will be determined by the facts as they appear and pursuant
15 to the laws of the State of California.

16                              17.

17          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
18 United States of America has no rights to the use of the waters
19 of the Santa Margarita River on the lands which comprise the
20 Naval Enclave except as such rights have been specifically set
21 forth in Interlocutory Judgment No. 24 (Lake O'Neil) or in this
22 Interlocutory Judgment.

23                              18.

24          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that except
25 as to reasonable and proper riparian uses on lands within the
26 Naval Enclave upstream from the point of confluence of the Santa
27 Margarita River with DeLuz Creek in Section 29, Township 9 South
28 Range 4 West, S.B.M. no upstream riparian overlying owner, prescrip-
29 tor or appropriator shall be required to release water or curtail
30 reasonable and beneficial water uses so as to allow water to reach
31 the Naval Enclave for any purpose unless and until water exportation

                              82

1 by the United States of America from without the Santa Margarita

2 River watershed is abandoned and the ground water levels within the

3 younger alluvial deposits downstream from said point of confluence

4 of said DeLuz Creek with the Santa Margarita River have been re-

5 stored to that level at which they would have been if such exporta-

6 tion had not taken place.

7                              19.

8          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that except

9 as to such rights, if any, which may be permitted or authorized

10 pursuant to the laws of the State of California under the appro-

11 priative rights considered in Interlocutory Judgment No. 24 (Lake

12 O'Neil) the United States of America has no right to compel any

13 Santa Margarita River water user upstream from the Naval Enclave

14 to release water or curtail upstream water use so as to allow

15 such water to reach the Naval Enclave for the purpose of exporta-

16 tion without the Santa Margarita River watershed.

17                              20.

18          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the issue

19 of apportionment has not been presented at this stage of the

20 proceeding, and this Court has taken no evidence directed to

21 establishing whether the use of any waters herein adjudged to be

22 subject to the continuing jurisdiction of this Court are reasonable

23 or unreasonable as to amount of water used in the light of rights

24 which may exist as to such waters; and this issue is left open,

25 is not decided herein and shall be litigated by this Court if and

26 when in the future it becomes necessary to do so and pursuant to

27 California law.

28                              21.

29          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that uses of

30 the waters of the Santa Margarita  River by the United States of

31 America within the Naval Enclave and outside the Santa Margarita

                             83

1 River watershed have not and will not in the future give rise

2 to any right to the use of waters enforceable against any up-

3 stream appropriator, prescriptor, riparian or overlying owner.

4                                22.

5          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

6 Stipulation as set forth in Finding of Fact 47 has at all times

7 since November 29, 1951, been in full force and effect and the

8 provisions thereof were and are binding on the United States of

9 America and the State of California.

10                                23.

11          IT IS FURTHER ORDERED, ADJUDGED AND DECREED based upon

12 the decision of the United States Court of Appeals for the Ninth

13 Circuit in the case of California vs. United States, 235 F.2d

14 645, that this is not a final decree, but is interlocutory in

15 character and by reason of the order by this Court that all

16 parties are adverse, one to the other, thus dispensing with

17 cross pleadings, all parties to these proceedings may object to

18 these Findings of Fact, Conclusions of Law and Interlocutory

19 Judgment, and will be given full opportunity upon due notice to

20 interpose their objections prior to entry of final judgment in

21 this case.

22                                24.

23          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this

24 Interlocutory Judgment is not intended to nor does it apply to any

25 lands of the United States of America other than those lands

26 within the Naval Enclave as said lands are described in Finding of

27 Fact 1 herein; that other lands owned or supervised by the United

28 States of America such as Forest Service lands and Indian Reserva-

29 tion lands will be covered in other Findings of Fact, Conclusions

30 of Law and Interlocutory Judgment in this cause.

31 - - -

                               84

                                            16452

1                            25.

2              IT IS FURTHER ORDERED, ADJUDGED AND DECREED that

3    no unlawful or wrongful act of any defendant in this cause

4     has resulted in salt water intrusion into the waters contained

5    within the younger alluvial deposits heretofore adjudged to be a

6    part of the underground flow of the Santa Margarita River.

7                            26.

8              IT IS FURTHER ORDERED, ADJUDGED AND DECREED that

9    except as is provided in Interlocutory Judgment No. 24 (Lake

10   O'Neil) the construction or maintenance of any structure for

11   the impoundment of surface runoff of the waters of the Santa

12   Margarita River and/or its tributaries within the Naval Enclave

13   has not resulted in the acquisition by the United States of

14   America of any appropriative or prescriptive right against any

15   party to this cause and the continued maintenance of such structures

16    or the impoundment of waters therein shall not in the future

17   give rise to any appropriative or prescriptive right to the use

18   of such waters against any party in this cause, his heirs, suc-

19   cessors or assigns.

20                           27.

21             IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this

22   Interlocutory Judgment is not appealable, is not final, and shall

23   not be operative until made a part of the final judgment; and

24   this Court expressly reserves jurisdiction to modify or vacate it

25   either upon its own motion or upon motion of any party to this

26   proceeding until such time as the final judgment in this cause is

27   entered.

28             DATED:_____

29

30                              _____
                                         JUDGE

31

                            85