LODGED

APR 3 - 1962

CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTE

FILED

APR 6 - 1962

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

ENTERED

APR 6 - 1962

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ Deputy Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1247-SD-C |
| Plaintiff, | |
| vs. | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND INTERLOCUTORY JUDGMENT NO. 37 |
| FALLBROOK PUBLIC UTILITY DISTRICT, et al., | NAVAL ENCLAVE |
| Defendants. | |

FINDINGS OF FACT

1.

Lands of the United States
Within the Naval Enclave

The United States of America is the owner in fee simple of the lands which comprise Camp Pendleton, United States Naval Ammunition Depot and the United States Naval Hospital, all of which are referred to as the Naval Enclave. There follows a brief statement respecting the several tracts which comprise the Naval Enclave.

United States Ammunition Depot

The United States of America on January 21, 1942, by condemnation, acquired in San Diego County, California, fee simple title to the lands now constituting that segment of the

1  Naval Enclave designated the United States Naval Ammunition

2  Depot which totals 9,147.55 acres, more or less, which lands

3  are more particularly described in the Decree on Declaration of

4  Taking recorded January 28, 1942, in Book 1311, page 1, Official

5  Records, San Diego County, California.  The description of the

6  lands set forth in that Decree on Declaration of Taking is in-

7  corporated into these Findings and made a part of them by reference.

8  <u>Camp Pendleton Marine Corps Training Base</u>

9        The United States of America on December 31, 1942, by

10  condemnation, in San Diego County, acquired fee simple title to

11  the lands now constituting that segment of the Naval Enclave

12  designated Camp Pendleton which totals 123,620 acres, more or

13  less, which lands are more particularly described in Decree on

14  Declaration of Taking, recorded January 9, 1943, in Book 1448,

15  page 192, Official Records, San Diego County, California.  The

16  descriptions of the lands set forth in that Decree are incor-

17  porated into these Findings and made a part of them by reference.

18        The United States of America on December 23, 1943, by

19  condemnation acquired in San Diego County, California, fee simple

20  title to the lands now constituting that segment of the Naval

21  Enclave designated Camp Pendleton which totals 1,676.58 acres,

22  more or less, which lands are more particularly described in Decree

23  on Declaration of Taking, recorded January 11, 1944, in

24  Book 1618, page 90, Official Records, San Diego County, California.

25  The descriptions of the lands set forth in that Declaration on

26  Taking are incorporated into these Findings and made a part of

27  them by reference.

28        The United States of America on February 8, 1949,

29  acquired in Orange County, California, fee simple title to

30  112.11 acres, which were made a part of Camp Pendleton, which

31  lands are more particularly described in Association Grant Deed

2088

1 recorded August 30, 1949, in Book 1895, page 371, Official

2 Records, Orange County, California.  The description of the

3 lands set forth in that Association Grant Deed are incorporated

4 into these Findings of Fact and made a part of them by

5 reference.

6          The United States of America on August 8, 1945, by

7 intra-governmental transfer of public domain in San Diego

8 County, California, added to Camp Pendleton approximately

9 1574.61 acres, more or less, which lands are depicted on

10 Exhibit A attached to these Findings of Fact and made a part

11 hereof by reference.

12          At all times since the acquisition or transfer of the

13 approximately 136,130.85 acres of land referred to in this

14 Finding, title in fee simple has resided in the United States

15 of America, and it has exercised full possession and control

16 of those lands, utilizing them for the purposes for which the

17 Naval Enclave was established, all as more fully set forth in

18 subsequent findings.

19                              2.

20 Certain Lands in Private Ownership at the
   Time of the Treaty of Guadalupe Hidalgo
21

22          The lands referred to above constituting the 9,147.55

23 and 123,620 acres, were acquired from the Rancho Santa Margarita

24 by the United States of America and were in private ownership

25 at the time of the Treaty of Guadalupe Hidalgo and remained in

26 private ownership until acquired by the United States of America

27 as set forth in Finding 1 above.

28                              3.

29 Exclusive Jurisdiction

30          Letters of Acceptance of Sovereignty were forwarded to

31 the Governor of the State of California for certain lands

3

1 within the Naval Enclave as follows:

| Date of Letter | Tract Described in Letter |
|---|---|
| January 12, 1943 | Acceptance of the 9,147.55-acre tract acquired January 21, 1942 |
| September 8, 1943 | Acceptance of the 123,620-acre tract acquired December 31, 1942 |
| February 18, 1944 | Acceptance of the 1,676.58-acre tract acquired December 23, 1943. |

8 The record in this case fails to show that Letters of Acceptance
9 were filed with the California Governor covering the 1574.61-
10 acre tract, County of San Diego, withdrawn from the public
11 domain August 8, 1945, nor of the 112.11-acre tract acquired on
12 February 8, 1949.

13      The United States of America has never filed a plat of
14 the reservation, nor metes and bounds description of the Naval
15 Enclave pursuant to California Statutes of 1897, Chapter 56,
16 page 51, codified into Section 114, Government Code, in effect
17 until repealed September 19, 1947, by the California Statutes of
18 1947, Chapter 1532, page 3163; nor has the United States of
19 America made application to the California State Lands Commission
20 for consent to acquire the land comprising the Naval Enclave,
21 nor has the said Commission given its consent to such acquisition,
22 pursuant to section 126, California Government Code (California
23 Stats. First Extraordinary Session, 1946, Ch. 154, p. 199).

24      That the above facts present a substantial question of
25 law as to whether the United States of America has acquired
26 exclusive jurisdiction to the lands comprising the Naval Enclave.
27 That there is presently before the United States Supreme Court
28 the case of Paul v. United States, Case No. 239, October Term,
29 1961, wherein that Court may well decide on similar facts this
30 substantial question of law. Because of this fact, this Court
31 is not at this time entering conclusions of law on this question

4

1 of exclusive jurisdiction, but jurisdiction is hereby expressly

2 reserved to make such conclusions of law as such facts as found

3 herein warrant at such time as the above-entitled case now before

4 the United States Supreme Court becomes final.  Such jurisdic-

5 tion may be exercised by this Court upon its own motion, or at

6 the request of the United States of America or any defendant

7 in this case.

8                                  4.

9 Watershed Boundary

10              The boundary of the watershed of the Santa Margarita

11 River within the Naval Enclave is set forth on the map, marked

12 Exhibit A, designated:  "Physical Map of U. S. Naval Reservation

13 Within Santa Margarita River Watershed" which is attached to

14 these Findings of Fact and made a part of them by reference.

15 Within the Naval Enclave there are approximately 38,694 acres

16 which are within the Santa Margarita River watershed.

17                                  5.

18 National Defense

19              The Naval Enclave is vital to the National Defense,

20 and in the development of the Enclave for purposes of National

21 Defense there has been expended by the United States of America

22 approximately $200,000,000.00.

23              Construction of the Naval Enclave was initiated in

24 the year 1942; and the installations constituting it were com-

25 pleted to substantially their present size by the year 1945.

26 They were then, and have been at all times since, used for

27 purposes of National Defense.

28                                  6.

29 Location of Buildings and Installations.

30              Sixty per cent (60%) of the water use of the Santa

31 Margarita River within the Naval Enclave is used in or at

2091.

1 facilities, buildings and installations which were and are

2 planned and constructed and located outside of the watershed

3 of that River.

4                                          7.

5 Naval Enclave Uses

6           That it is the basic function of the Naval Enclave to

7 provide housing and training facilities for units of the Armed

8 Forces; to conduct training of units of the Armed Forces in

9 amphibious warfare and experimental work with landing craft,

10 landing vehicles, tracked and affiliated equipment of the

11 various units of the United States Marine Corps, including air-

12 ground support coordination, and use of artillery, tanks and

13 other equipment used in the conduct of modern amphibious and

14 land warfare.  In addition to the aforementioned activities,

15 it is the function of Camp Pendleton to provide logistic support

16 for units of the United States Marine Corps together with

17 military maintenance and storage facilities for supplies and

18 equipment and to house and train replacements for subsequent

19 assignment to various operative units of the United States Marine

20 Corps.

21           The United States Naval Hospital, with a capacity of

22 approximately 1550 beds, established within the Naval Enclave,

23 provides medical and hospital services to personnel of the

24 Armed Forces, their dependents and other authorized personnel

25 stationed at approximately eighty-three Naval shore activities

26 located in the Southern California area and provides medical

27 and hospital care to personnel of units of the United States

28 Fleet.

29           The United States Naval Ammunition Depot provides

30 facilities for the storage, segregation, reconditioning and

31 issuing of ammunition for operating units of the United States

6

1 Fleet and the United States Marine Corps and maintains ammuni-
2 tion stocks for shore establishments of the United States Navy
3 located in the Southern California area.  In addition, the Naval
4 Ammunition Depot stores and ships ammunition for use by combat
5 elements of the United States Navy and the United States
6 Marine Corps.

7                              8.

8 Naval Enclave Population, Etc.

9        That the uses of the waters of the Santa Margarita River
10 by the United States of America on its Naval Enclave both
11 within and without the watershed other than for the maintenance
12 of a salt water barrier as set forth in Finding 29, and for irri-
13 gation are uses essentially municipal in character; that said
14 water is used to satisfy the needs of the population of the Naval
15 Enclave, both military and civilian; that said population has
16 averaged approximately 42,000 people per year.  Testimony in
17 behalf of the United States which the Court credits shows that
18 based upon an estimated average water use of 200 gallons a day
19 per person 9,400 acre feet of water would have been required to
20 satisfy the needs of 42,000 persons per year.  That in addition
21 to housing of Naval personnel, said Naval Enclave of the United
22 States of America provides housing facilities for dependents of
23 the Naval personnel, and since 1958 the number of such de-
24 pendents residing thereon has averaged approximately 5500
25 individuals annually; that in addition to the dependents of
26 said Naval personnel, limited numbers of civilians, not de-
27 pendents, are residing on said Naval Enclave.

28        The greatest number of persons requiring water within the
29 Naval Enclave during any past year was in 1944 when on a peak day
30 the military and civilian population on the Naval Enclave was
31 56,000 persons.  Based on the same testimony in behalf of the

                              7

1   United States referred to above of an estimated average water

2   use of 200 gallons a day per person, 12,540 acre feet of water

3   would have been required to satisfy the needs of 56,000 persons

4   for one year.

5           From the records in this case it appears that not more

6   than 3620 acre feet of water was diverted from the Santa Marga-

7   rita River for military and civilian use in the Naval Enclave in

8   1944.  The above apparent discrepancy is explained in part by

9   (1) the fact that 56,000 was a peak figure only, (2) approxi-

10  mately 3,000 acre feet of the water requirements were supplied by

11  water produced in the Naval Enclave outside the Santa Margarita

12  River watershed, and (3) in 1944 the Naval Enclave had not

13  completed its development and only minimal facilities existed.

14          In 1959 the Headquarters Marine Corps planning estimates

15  envisioned a total civilian and military annual population on the

16  Naval Enclave of 61,700 persons.  Based on the estimated average

17  water use of 200 gallons per day per person, 13,800 acre feet of

18  water annually would be required to satisfy the water needs of

19  these 61,700 persons.

20          Based on an estimated average water use of 200 gallons

21  per day per person, there would be required 23,740 acre feet of

22  water annually to satisfy the water needs of the 106,000 persons

23  who would be on the Naval Enclave in the event of war and full

24  mobilization.

25          Based upon the most liberal estimate of the safe annual

26  yield of the waters within the younger alluvial deposits within

27  the Naval Enclave, to-wit:  10,000 acre feet, and the limited water

28  resources in the watershed, and the rights of others thereto, it

29  is apparent that the United States of America must satisfy the

30  increased water requirements resulting from:

31  - - - -

2094

1         (A)  the contemplated increased annual Naval Enclave

2  population to 61,700 persons and

3         (b)  the 106,000 population of the Naval Enclave in the

4  event of full mobilization

5  by use of one or more of the following alternatives:

6         (1)  the construction of a dam to capture flood waters

7  which would otherwise waste to the ocean,

8         (2)  increasing the usable storage capacity of said

9  younger alluvial deposits by a physical barrier to prevent salt

10  water intrusion,

11         (3)  importation of waters,

12         (4)  condemnation or purchase of upstream water rights.

13                              9.

14  Specific Types of Facilities Within the
   Naval Enclave which use Waters of the
15  Santa Margarita River

16         That in order to provide for the welfare of the persons

17  living on the Naval Enclave as found above in Finding 8, a

18  variety of facilities exists thereon including, but not limited

19  to, the following:

20         a.  Housing in barracks, single-family and multi-family

21  dwellings.

22         b.  Messing and restaurant facilities.

23         c.  Medical and dental facilities.

24         d.  Recreational facilities including a golf course,

25  swimming pools, lake for boating, gymnasiums, tennis and hand-

26  ball courts, beach facilities, miscellaneous athletic and play-

27  ground facilities, and stables.

28         e.  Theatres.

29         f.  Libraries.

30         g.  Churches.

31         h.  Clubs and social facilities.

2095

1       i.  Schools

2       j.  Garbage and sewage and waste disposal facilities.

3       k.  Police facilities.

4       l.  Fire protection facilities.

5       m.  Transportation facilities.

6       n.  Railroad, truck and bus terminals.

7       o.  Retail trading facilities.

8       p.  Laundries and dry cleaning establishments.

9       q.  Warehousing and storage facilities for both mili-

10 tary and civilian goods.

11       r.  Clothing and shoe repair facilities.

12       s.  Garage and vehicle repair facilities.

13       t.  Ordnance and weapons repair facilities.

14       u.  Harbor and boat basin facilities.

15       v.  Aircraft and helicopter landing facilities.

16       w.  Salvage yard facilities.

17       x.  Barber shops and beauty shops.

18       y.  Rock crushing and bulk cement plants.

19       z.  Commercial vegetable and flower growing.

20    aa.  Commercial orchards.

21    bb.  Commercial grazing of livestock.

22    cc.  Greenhouses.

23    dd.  Private gardens.

24    ee.  Public gardens and landscaping.

25    ff.  Commercial vegetable packing.

26    gg.  Newspaper.

27    hh.  Vehicle washing facilities.

28 That all of the foregoing facilities derive their supply of water

29 from the Santa Margarita River; that there is no substantial dif-

30 ference insofar as water demand and uses are concerned, between

31 that which has existed and that which presently exists on the

2096

1 Naval Enclave, from that required by a city of comparable

2 size.

3                                    10.

4 Area of Use of Santa Margarita River
Water Within Naval Enclave

5

6          That since the acquisition by the United States of

7 America of the lands comprising the Naval Enclave said United

8 States of America has used water in substantial amounts from the

9 Santa Margarita River.  That said uses of said waters have been

10 for both military and agricultural purposes within the Santa

11 Margarita River watershed; that in addition to the use of the

12 waters of the Santa Margarita River within its watershed, the

13 United States of America has exported large quantities of

14 water from said River for both military and agricultural pur-

15 poses to areas within the Naval Enclave situated outside of the

16 watershed; that commencing with the water year 1942 the United

17 States of America has annually used waters of the Santa Marga-

18 rita River for military and agricultural purposes within and

19 without the Santa Margarita River watershed in the Naval Enclave

20 in the following amounts:

21 

| | USE WITHIN WATERSHED | | | USE WITHOUT WATERSHED | | |
|---|---|---|---|---|---|---|
| | (In Acre Feet) | | | | | |
| WATER YEAR | MILITARY | AGRICULTURAL | TOTAL | MILITARY | AGRICULTURAL | TOTAL |
| 1942 | * | 700 | * | * | 1090 | * |
| 1943 | * | 920 | * | * | 1440 | * |
| 1944 | 1840 | 730 | 2570 | 1780 | 1150 | 2930 |
| 1945 | 2040 | 610 | 2650 | 1940 | 950 | 2890 |
| 1946 | 1800 | 920 | 2720 | 1730 | 1440 | 3170 |
| 1947 | 1550 | 840 | 2390 | 1690 | 1310 | 3000 |
| 1948 | 2030 | 1090 | 3120 | 1790 | 1710 | 3500 |
| 1949 | 2150 | 880 | 3020 | 2060 | 1370 | 3430 |
| 1950 | 1880 | 890 | 2770 | 2060 | 1380 | 3440 |
| 1951 | 1830 | 630 | 2460 | 1990 | 990 | 2980 |
| 1952 | 2100 | 560 | 2660 | 2280 | 870 | 3150 |
| 1953 | 2440 | 680 | 3120 | 2660 | 1070 | 3730 |
| 1954 | 2170 | 740 | 2910 | 2030 | 1150 | 3180 |
| 1955 | 2390 | 740 | 3130 | 2340 | 1160 | 3500 |
| 1956 | 2660 | 680 | 3340 | 2410 | 1070 | 3480 |
| 1957 | 2430 | 600 | 3030 | 2470 | 940 | 3410 |
| 1958 | 2460 | 460 | 2920 | 2390 | 730 | 3120 |
| 1959 | 2510 | 670 | 3180 | 2850 | 1060 | 3910 |
| 1960 | 2040 | 430 | 2670 | 2600 | 680 | 3280 |

* No figures available.

2097

1                                        11.

2    Uses of Santa Margarita River by Rancho
     Santa Margarita, and Legal Status of Use of
3    Waters Outside Watershed.

4              Historically and down to the date of acquisition by the

5    United States of America, the Rancho Santa Margarita, predecessor

6    in interest to the United States of America, made riparian uses

7    of the water within the watershed.  Several thousand head of

8    cattle were watered and grazed year after year.  Cultivated crops

9    were irrigated.  The court does not make specific findings herein

10   as to these uses since they neither add to nor detract from the

11   riparian rights possessed and owned by the United States of

12   America.

13             That commencing with the irrigation season  of 1937,

14   and continuing thereafter to the acquisition of the Naval Enclave

15   by the United States of America, gradually increasing amounts of

16   the waters of the Santa Margarita River were diverted to agricul-

17   tural uses outside of the watershed by the predecessor in interest

18   of the United States of America, reaching a maximum of 1090 acre

19   feet in the water year 1941-1942.  None of such uses of the

20   waters of the Santa Margarita River outside the watershed as are

21   found to have existed in Finding 10 above or as carried on by

22   the predecessor in interest of the United States of America, have

23   been adverse or hostile to any defendant herein.  None of the

24   uses of the waters of the Santa Margarita River outside the water-

25   shed of the Santa Margarita River as are found to have existed in

26   Finding 10 above or as carried on by the predecessor in interest of

27   the United States of America, have been made under any appropria-

28   tive right recognized by the Laws of the State of California.

29   All of the water uses outside the watershed of the Santa Margarita

30   River referred to in this finding and in Finding 10 above have

31   been made and are being made without sanction of any water right

                                    12

1 recognized or provided by the statutes and laws of the State of

2 California.

3                                 12.

4 Character of Use by the United States
of Santa Margarita River Waters Outside
5 the Watershed, and Fact such Use is not
Unlawful.
6

7        All uses by the United States of America of the waters

8 of the Santa Margarita River within its watershed have been

9 and are reasonable and beneficial as to character of use.  All

10 uses by the United States of America of waters of the Santa

11 Margarita River outside its watershed have been and are for

12 reasonable and beneficial purposes as to character of use, and

13 none of such uses by the United States of America are improper or

14 unlawful or have injured any party to this cause for the reason

15 that the United States of America is the last water user upon the

16 stream, and thus can use such waters of the Santa Margarita River

17 as are physically available upon or within its lands as it

18 chooses.  All uses of water by the United States of America

19 within and without the Santa Margarita River watershed have

20 been conservative and well-managed.

21                                 13.

22 Santa Margarita River Surface Stream
Within the Naval Enclave
23

24        That Santa Margarita River enters the Naval Enclave in

25 the SE$\frac{1}{4}$ of the SW$\frac{1}{4}$, Section 12, Township 9 South, Range 4 West,

26 S.B.M. cutting the northwest corner of Section 13, thence

27 diagonally across Section 14 where at the center of that section

28 it becomes the north and western boundary of the United States

29 Naval Ammunition Depot.

30        Situated in the NW$\frac{1}{4}$ of the SW$\frac{1}{4}$ of Section 14, Town-

31 ship 9 South, Range 4 West, S.B.M. is an infiltration gallery

                                13

1 that consists of a pipeline laid normal to the stream bed

2 approximately on bedrock which discharges into a well from

3 which the waters of the Santa Margarita River are pumped there-

4 from and used to supply the United States Naval Ammunition Depot.

5          The River leaves section 14 and proceeds across sec-

6 tion 15, enters and leaves after a short distance in the $SE\frac{1}{4}$

7 of the $SE\frac{1}{4}$ of section 16, reenters section 15, thence traverses

8 the northwest corner of section 22, then proceeds diagonally

9 across section 21 and across the northwest corner of section 28,

10 from which point it no longer constitutes the boundary of the

11 Naval Ammunition Depot.

12          From that point where the surface channel of the

13 Santa Margarita River leaves the northwest corner of section 28

14 it proceeds southwesterly across section 29.  In the $SE\frac{1}{4}$ of the

15 $SW\frac{1}{4}$ of section 29, DeLuz Creek has its confluence with the Santa

16 Margarita River. From that point the Santa Margarita River has

17 its course almost due south across section 32, Township 9 South,

18 Range 4 West, S.B.M.

19          Leaving section 32 the surface channel of the Santa

20 Margarita River proceeds across the northwest corner of Section 5,

21 Township 10 South, Range 4 West, in which is situated on the south

22 bank of the River the headworks of the Lake O'Neil diversion

23 ditch through which water is diverted from the Santa Margarita

24 River into Lake O'Neil, an off-channel artificial reservoir for

25 impoundment and use.  Detailed Findings of Fact, Conclusions of

26 Law and Interlocutory Judgment No. 24 concerning said Lake O'Neil

27 have previously been entered in this cause.

28          After emerging in the $NW\frac{1}{4}$ of section 32, Township 9

29 South, Range 4 West, S.B.M. as found above, the Santa Margarita

30 River enters a broad valley which is underlain with younger

31 alluvial deposits which are more particularly described in

                              14

1 Finding 19 hereinafter.

2       That said Santa Margarita River flows throughout the

3 NW$\frac{1}{4}$ of Section 5 Township 10 South, Range 4 West, S.B.M., enters

4 Section 6, Township 10 South, Range 4 West, S.B.M. and proceeds

5 almost due south across that section and into Section 7.

6       That said River proceeds southerly across section 7,

7 crosses the northwest corner of section 18, enters section 13,

8 Township 10 South, Range 5 West, S.B.M., proceeds diagonally

9 across that section, enters the northwest corner of section 24,

10 proceeds southwesterly across section 23 and almost due south

11 through sections 26 and 35, Township 10 South, Range 5 West.

12       Said River then proceeds in a southwesterly direction

13 across sections 2, 11, 10 and 9 all in Township 11 South, Range 5

14 West, S.B.M., proceeds through the Ysidora Narrows into a lagoon

15 area and thence to the Pacific Ocean.

16       The last twenty-one (21) miles of the Santa Margarita

17 River traverse the Naval Enclave.  There are no other water users,

18 water right claimants or landowners other than the United States

19 of America on the Santa Margarita River downstream from the point

20 where that River enters the Naval Enclave as found herein.

21                          14.

22 Surface Flow of Santa Margarita River.

23       That at that point as found hereinabove in Finding 13

24 where said Santa Margarita River enters the lands of the United

25 States of America, and throughout its course to the Pacific

26 Ocean under natural conditions, i.e., in a state of nature,

27 said River flowed on the surface or almost immediately there-

28 under; that the evidence in this case shows that under natural

29 conditions, i.e., in a state of nature, there existed generally

30 either surface streams or pools of water from that point to the

31 Pacific Ocean; that said surface waters were available to and

15

1 used by cattle; that even in those areas where there was no

2 visible surface flow or pools, the waters of said River were

3 almost at the surface and in many areas the ground was saturated

4 as evidenced by marshes and phreatophytes of a type which would

5 exist only where the waters within the ground were at or near

6 the surface.  That in fact, the predecessor in interest of the

7 United States of America found such grasses and other native

8 vegetation to be suitable for stock grazing and most of the area

9 of the flood plain of the Santa Margarita River was by said

10 predecessor used for this purpose.

11                                    15.

12 Naval Enclave Condition in a State
   of Nature, and Ground Water Levels
13

14          A water level within at least five (5) feet of the

15 surface of the ground is necessary to maintain such native cover

16 on the area referred to in Finding 14, and such native cover

17 consumed on the average approximately 1.2 acre feet of water

18 per acre per year.  With the development of pumping and irriga-

19 tion within the Naval Enclave and upstream therefrom, the ground

20 water level, except for the lower portion of the Ysidora Sub-basin

21 and downstream therefrom, throughout most periods of the year has

22 declined to a depth greater than five (5) feet below ground sur-

23 face, and the pumping of waters from the younger alluvial deposits

24 (hereinafter determined to be a part of the Santa Margarita River)

25 within the Naval Enclave and the use of such waters both within and

26 without the said watershed has substantially contributed proxi-

27 mately to said decline in said ground water levels.  That the

28 use of ground waters as presently practiced by the United States

29 of America within the Naval Enclave is such that it is impossible

30 to maintain the ground water level at an elevation sufficient to

31 support native vegetation upstream from the Ysidora ground water

16

2102

1 storage unit in that the present uses of said ground waters by

2 the United States of America within the Naval Enclave are such

3 that those uses alone would, in most periods, result in the

4 ground water levels in the Upper and Chappo Sub-basins of the

5 younger alluvial deposits being lower than that required to

6 support native vegetation.

7                                            16.

8 <u>Surface Flow of Santa Margarita River</u>.

9          That the Santa Margarita River surface flow within the

10 Naval Enclave varies from year to year depending upon precipitation

11 and runoff and diversions within and upstream from the Naval En-

12 clave.

13                                            17.

14 <u>Fluctuations of Surface Flow of</u>
   <u>Santa Margarita River.</u>
15

16          That the location of the surface flow of the Santa Mar-

17 garita River is upon the younger alluvial deposits referred to

18 hereinabove; that the area of surface flow thereon will fluctuate

19 considerably and it is not uncommon for the surface flow to shift

20 its position upon the younger alluvial deposits from year to year

21 or within each year during periods of substantial surface flow.

22                                            18.

23 <u>Principal Causes of Fluctuations</u>
   <u>of Rising Waters.</u>
24

25          That in most years the Santa Margarita River does not

26 flow within the Naval Enclave as a surface stream downstream from

27 a point in section 5, Township 10 South, Range 4 West, S.B.M.

28 except during periods of substantial precipitation and runoff.

29 It may, in certain areas, flow intermittently in its course as

30 a surface stream, then disappear and flow underground, and then

31 again rise to the surface.  That the points where the waters rise

32 to the surface and flow as a surface stream, over the younger

1 alluvial deposits may vary considerably.  That said variance in

2 points of rising surface flow is the result of pumping of the

3 waters contained in the younger alluvial deposits by the United

4 States of America, of pumping and diversions of the waters of the

5 Santa Margarita River and tributaries thereto upstream from

6 the Naval Enclave, and of fluctuations in precipitation and

7 consequent runoff.

8                                    19.

9 Younger Alluvial Deposits which Underlie
  Santa Margarita River on Naval Enclave
10

11          That commencing at a point on the Santa Margarita River

12 just upstream from its confluence with DeLuz Creek and continuing

13 downstream to the confluence of said River with the Pacific Ocean

14 there are substantial younger alluvial deposits; that said

15 younger alluvial deposits are depicted on U. S. Exhibit 37 which

16 exhibit is herein incorporated and made a part of these findings

17 by reference; that said younger alluvial deposits were laid down

18 by the Santa Margarita River and deposition of material eroded

19 from the adjacent hills; that these younger alluvial deposits are

20 composed of sedimentary materials and have a relatively high water-

21 bearing capacity and permeability.

22          That said younger alluvial deposits as evidenced by

23 said U. S. Exhibit 37 vary in width within the Naval Enclave,

24 and for the sake of convenience in this case said younger

25 alluvial deposits have been referred to as sub-basins or ground

26 water storage units, and specifically in downstream order, the

27 Upper, the Chappo and the Ysidora Sub-basins or ground water

28 storage units.

29          In essence, the reason that said younger alluvial

30 deposits have been referred to in this case  as the Upper, Chappo

31 and Ysidora Sub-basins or ground water storage units is that the

1  Upper Sub-basin evidences a substantial area of younger alluvial

2  deposits which are inter-connected to the Chappo Sub-basin by

3  a relatively narrow area of younger alluvial deposits in

4  Section 18, Township 10 South, Range 4 West, S.B.M., and the

5  Chappo Sub-basin is evidenced by a rather extensive area of

6  younger alluvial deposits which are connected to the Ysidora

7  Sub-basin by a relatively narrow area of younger alluvial

8  deposits in Section 26, Township 10 South, Range 5 West, S.B.M.

9  As found hereinafter, there is no barrier to ground water move-

10  ment between said designated sub-basins, and the younger

11  alluvial deposits which comprise these designated sub-basins

12  conform essentially, insofar as ground water movement is con-

13  cerned, to a surface stream which is wide in one area, narrows

14  in another and then widens again as it proceeds downstream.

15  The areal extent of these younger alluvial deposits

16  within the Naval Enclave is approximately 4680 acres.  It varies

17  in surface widths from a maximum of two (2) miles in the Chappo

18  Sub-basin to its narrowest point of approximately one-quarter (1/4)

19  mile at the above-described Ysidora Narrows.  By units the sur-

20  face area of the younger alluvial deposits are as follows:

21  Upper                    960 acres

22  Chappo                 2,640 acres

23  Ysidora                1,080 acres

24                         4,680 acres

25  The surface area of these deposits is approximately

26  seven (7) square miles.

27  There is a relative degree of unanimity between the

28  evidence introduced by the United States of America and the State

29  of California representing the nature, characteristics, storage

30  capacity and usable storage capacity of said younger alluvial

31  deposits.  Based upon that evidence it is found as follows:

19

1        Total storage capacity of the younger alluvial deposits

2 designated herein as the Upper, Chappo and Ysidora Sub-basins

3 is approximately 48,000 acre feet.

4        The usable storage capacity of the younger alluvial

5 deposits in each of the said designated sub-basins is approxi-

6 mately as follows:

| 7 | Upper | 10,000 acre feet |
|---|---|---|
| 8 | Chappo | 15,000 acre feet |
| 9 | Ysidora | 1,200 acre feet |
| 10 | | 26,200 acre feet |

11 The usable storage capacity as set forth above is available for use

12 without affecting the maintenance of a salt water barrier as set

13 forth in Finding 29 hereinafter.

14               20.

15 Geologic Features Concerning Younger
Alluvial Deposits Which Underlie Santa
16 Margarita River within the Naval Enclave

17        That the younger alluvial deposits as found in Finding 19

18 above, rest upon and are confined laterally by basement complex and

19 deposits of consolidated rocks; that these deposits of consolidated

20 rocks and basement complex are essentially non-water bearing and

21 are composed of considerably more compacted materials than the

22 younger alluvial deposits; that as a result thereof, ground waters

23 which are within the younger alluvial deposits do not move

24 laterally or vertically into said consolidated rocks and basement

25 complex but do in fact move through the younger alluvial deposits

26 in the identical direction as the surface flow of Santa Margarita

27 River or rise to the surface and flow as surface flow westerly

28 toward the confluence of that River with the Pacific Ocean; that

29 in the most westerly or downstream portion of the younger alluvial

30 deposits and downstream from and within section 2, Township 11

31 South, Range 5 West, S.B.M. there are, within said younger alluvial

2106

1 deposits, deposits of fossil shells which were laid down by

2 marine action.

3                                  21.

4 Interconnection of Ground and Surface
  Waters with the Younger Alluvial Deposits
5 Which Underlie Santa Margarita River.

6         That during such times as there is surface flow through-

7 out the course of the Santa Margarita River over the younger

8 alluvial deposits within the Naval Enclave the ground waters

9 within said younger alluvial deposits are in direct physical

10 contact with such surface flow.  During such times as there is

11 no surface flow throughout the course of the River within the

12 Naval Enclave but only occasional surface waters at points where

13 ground waters contained within the younger alluvial deposits

14 have risen to the surface or the points where sewage effluent

15 has been discharged, such surface flows are nevertheless in

16 direct physical contact with the ground waters within the younger

17 alluvial deposits and said ground waters and surface flow move

18 in identical directions, i.e., westerly toward the Pacific Ocean.

19                                  22.

20 Ground Waters Within Younger Alluvial
   Deposits Part of the Santa Margarita River.
21

22         That the deposits of consolidated rocks on each side

23 of the younger alluvial deposits and upon which said younger

24 alluvial deposits rest do in fact impede the ground waters from

25 moving out of the younger alluvial deposits and into the

26 consolidated rocks and do in fact act in the same manner as a

27 substantial impermeable bed and bank of a surface streamchannel;

28 that the ground waters within the younger alluvial deposits as

29 found herein are in fact in a known and definite channel, to wit,

30 the younger alluvial deposits, do in fact move in the same

31 direction as the surface flow, are in fact in direct contact

                                 21

1 with the surface flow when it does flow, and do constitute that

2 water which rises to the surface and then disappears during

3 periods other than periods of considerable precipitation, and

4 said ground waters and said surface flow of the Santa Margarita

5 River are in fact one stream herein referred to as the Santa

6 Margarita River.

7                              23.

8 Facts Concerned with Nature of Younger
  Alluvial Deposits and Reliance on United States
9 of America Evidence for Surface Contact Line

10          That the vertical depth of the younger alluvial deposits

11 are depicted on U. S. Exhibit 39 which exhibit is incorporated

12 herein by reference.

13          That from that point where the Santa Margarita River

14 enters the broad valley underlain with younger alluvial deposits

15 as found in Finding 13 above and to the Pacific Ocean, there is a

16 steady increase in the depth of the younger alluvial deposits.

17 That this fact is shown on U. S. Exhibits 38 and 38B incorporated

18 herein by reference.  That as shown on said exhibits just down-

19 stream from the point of confluence of DeLuz Creek with the Santa

20 Margarita River and at a land surface elevation of approximately

21 one hundred twenty-five feet (125') above sea level basement

22 complex is reached at a depth of approximately one hundred feet

23 (100') below land surface.  Proceeding downstream, the depth

24 through the younger alluvial deposits to bedrock increases.  In

25 portions of the Chappo Sub-basin the younger alluvial deposits

26 extend to a depth of approximately one hundred eighty feet (180')

27 below ground surface.  In certain areas in the Ysidora Sub-basin

28 the younger alluvial deposits may well extend to an estimated

29 depth of approximately two hundred feet (200') below the surface

30 of the land.

31 - - - -

2108

1        That throughout said younger alluvial deposits those
2  deposits feather out, i.e., show a gradual lessening in depth to
3  bedrock as they approach the areas of consolidated rock and
4  basement complex which are on either side of said younger allu-
5  vial deposits.

6        That the  younger alluvial deposits are lenticular
7  in nature.  While there is not complete uniformity, the younger
8  alluvial deposits generally consist of finer textured sand and
9  clay in the upper deposits of the Chappo and Ysidora Sub-basins
10  and at relatively shallow depths in the Ysidora Sub-basin lenses
11  of clay appear.  That in the Upper Sub-basin there are substantial
12  deposits of gravel and sand near ground surface.

13        That throughout said younger alluvial deposits and
14  generally in the middle or lower portions there are substantial
15  deposits of cobbles and gravel.

16        Generally speaking, said U. S. Exhibits 38 and 38B
17  evidence differentiation between the deposits in the lower
18  member of the younger alluvial deposits as contrasted to those
19  in the upper member in that there are more deposits composed of
20  gravel and cobbles and gravel and sand in the lower member than
21  exist in the upper member  and there are more deposits of clay,
22  sand and clay and silt in the upper member than exist in the lower
23  member.

24        That although the contact line on the surface between
25  the younger alluvial deposits and the deposits of consolidated
26  rock has not been determined with absolute exactness the deter-
27  mination of said contact line was sufficient for the United States
28  of America to prepare maps and exhibits showing said contact line
29  (including U. S. Exhibit 37) and said contact line as established
30  by said maps and exhibits prepared by the United States of
31  America has been accepted by this Court as being the contact

1  line between younger alluvial deposits and deposits of con-

2  solidated rock on ground surface.

3                              24.

4  All Naval Enclave Producing Wells
   Pump Waters of the Santa Margarita River

5

6          All presently producing wells which are drilled into

7  the younger alluvial deposits, as said deposits are depicted on

8  U.S. Exhibit 37, do not extend into the consolidated rocks which

9  lie beneath the younger alluvial deposits, but that all of such

10  wells are drilled into and their depth is within said younger

11  alluvial deposits, and that all of such wells pump waters of the

12  Santa Margarita River.

13                             25.

14  Ground Water Contours Within Naval Enclave

15          That ground water contours within the younger alluvial

16  deposits  within the Naval Enclave on or about October, 1957, are

17  depicted on U. S. Exhibit 45 which is incorporated herein by

18  reference.  At the point of confluence of DeLuz Creek with the

19  Santa Margarita River the ground water elevation on the date

20  above-mentioned stood at or  about one hundred thirty-five feet

21  (135') above sea level.  The elevation of the ground water table

22  within said deposits as evidenced by said exhibit conformed

23  generally with ground surface downstream to the Pacific Ocean

24  and followed an approximately even downward gradient for the

25  entire length of said younger alluvial deposits to an elevation

26  of approximately five feet (5') above mean sea level at that

27  point where the Santa Margarita River enters the Ysidora Narrows.

28  - - -

29  - - -

30  - - -

31  - - -

                              24

                          **2110**

26.

1 Sewage Effluent Discharges

2       That in a state of nature the ground waters which are

3 contained within the younger alluvial deposits within the

4 Naval Enclave have as their principal source of recharge the

5 surface waters of the Santa Margarita River and its tributaries,

6 and to a lesser extent precipitation upon said area.  That under

7 present conditions the United States of America has contributed

8 to the recharge of the ground waters within said younger alluvial

9 deposits within the Naval Enclave by a comprehensive program of

10 processing sewage and returning the effluent therefrom to the

11 younger alluvial deposits.  That the waters of the sewage effluent

12 returned had previously been diverted from said Santa Margarita

13 River.  That such return of sewage effluent to the younger allu-

14 vial deposits is made from Plant No. 1 at locations in the $NE\frac{1}{4}$

15 of the $NE\frac{1}{4}$ of Section 8, Township 10 South, Range 4 West, S.B.M.;

16 and in the $SE\frac{1}{4}$ of the $NW\frac{1}{4}$ of Section 8, Township 10 South,

17 Range 4 West, S.B.M.; from Plant No. 8 at a location in the

18 $SW\frac{1}{4}$ of the $SW\frac{1}{4}$ of Section 13, Township 10 South, Range 5 West,

19 S.B.M.; from Plant No. 3 at a location in the $NW\frac{1}{4}$ of the $NE\frac{1}{4}$

20 of Section 26, Township 10 South, Range 5 West, S.B.M.; from

21 Plant No. 2 at a location in the $SE\frac{1}{4}$ of the $NW\frac{1}{4}$ of Section 35,

22 Township 10 South, Range 5 West, S.B.M.; and from Plant No. 13

23 at a location in the $NE\frac{1}{4}$ of the $SW\frac{1}{4}$ of Section 10, Township 11

24 South, Range 5 West, S.B.M.; and has been made in the following

25 amounts from the following plants:

26           - - -

27           - - -

28           - - -

29           - - -

30           - - -

31           - - -

2111

SEWAGE EFFLUENT DISCHARGES (Acre Feet)

| Water Year | Plant No. 1 | Plant No. 2 | Plant No. 3 | Plant No. 8 | Plant No. 13 |
|---|---|---|---|---|---|
| 1944 | | | 228.45 | | |
| 1945 | | | 373.90 | | |
| 1946 | | | 354.64 | | |
| 1947 | | | 345.50 | | |
| 1948 | | | 477.61 | | |
| 1949 | | | 474.66 | | |
| 1950 | | | 470.74 | | |
| 1951 | | | 536.96 | | |
| 1952 | 282.00 | 172.88 | 631.94 | | |
| 1953 | 1171.74 | 866.93 | 681.48 | | |
| 1954 | 1094.02 | 704.93 | 509.14 | 54.65 | 25.02 |
| 1955 | 1054.85 | 732.03 | 586.38 | 153.01 | 181.36 |
| 1956 | 1045.38 | 724.14 | 683.15 | 249.47 | 258.89 |
| 1957 | 843.98 | 788.50 | 588.05 | 243.07 | 225.87 |
| 1958 | 880.05 | 756.09 | 570.59 | 274.67 | 229.08 |
| 1959 | 693.81 | 707.44 | 440.10 | 204.98 | 422.03 |
| 1960 | 728.22 | 677.38 | 390.42 | 252.04 | 513.03 |
| 1961 | 761.55 | 709.68 | 337.85 | 311.74 | 414.76 |

The practices described hereinabove are commendable and by reason thereof the United States of America is making a most efficient use of the natural water supply.

27.

Water Conservation Practices   Within
the Naval Enclave

That the United States of America has diligently attempted to make the maximum and most efficient use of the waters available within the Naval Enclave, and in connection

26

2112

1 therewith has constructed spreading works to increase the natural

2 percolation of surface waters into the younger alluvial deposits

3 and has entered into a comprehensive control of phreatophytes

4 and other water-loving vegetation, and the said conservation

5 practices have in fact resulted in the conservation of waters in

6 a substantial but undetermined amount.

7                              28.

8 Salt Water Intrusion Downstream
  From Ysidora Narrows
9

10          That the ground waters contained in the younger

11 alluvial deposits downstream from the Ysidora Narrows are

12 presently and have for many years been, as a result of salt water

13 intrusion, brackish and unfit for agricultural or domestic use;

14 that none of said waters have been used in recent times; that

15 said salt water intrusion below said Ysidora Narrows has not been

16 caused by any wrongful act of any defendant in this cause and there

17 is no known practical method whereby said salt water intrusion

18 in said area downstream from Ysidora Narrows can be corrected

19 so as to permit the beneficial use of the waters contained in

20 said younger alluvial deposits downstream from said Ysidora Nar-

21 rows for agricultural or domestic use.

22                              29.

23 Maintenance of Fresh Water Barrier and
   Salt Water Intrusion Upstream from
24 From Ysidora Narrows

25          Approximately two-thirds (2/3) of the younger alluvial

26 deposits which underlie the Santa Margarita River within the

27 Naval Enclave are below sea level. As a consequence, to prevent

28 salt water intrusion, the United States of America has found it

29 necessary to maintain the water levels in the Ysidora segment of

30 of those deposits at a minimum elevation of five (5) feet above

31 sea level in order to prevent the waters of the Pacific Ocean

                              27

1  from entering into the deposits.  Maintenance of that fresh water

2  barrier against salt water intrusion constitutes a reasonable and

3  beneficial riparian use of water by the United States of America.

4          That during certain years prior to 1956 there existed

5  a condition of salt water intrusion from the Pacific Ocean into

6  the lower member of the younger alluvial deposits above the

7  Ysidora Narrows; that said salt water was first noticed in 1948,

8  but there is no evidence as to when it commenced; that said salt

9  water intrusion did in fact result in the waters of certain wells

10 which were located in said younger alluvial deposits being

11 temporarily unfit for domestic or agricultural purposes; it is

12 not true that said salt water intrusion was the result of any

13 unlawful or wrongful act by any defendant in this case, but on

14 the contrary such salt water intrusion resulted from increased

15 pumping upstream, several years of relatively reduced rainfall

16 and consequent reduced runoff from the Santa Margarita River,

17 during which period the United States of America pumped sub-

18 stantial quantities of the waters of said River contained in

19 said lower member of the younger alluvial deposits above the

20 Ysidora Narrows for use outside of the watershed of that River;

21 that as a result of that reduced runoff and pumping, the eleva-

22 tion of the water table in said younger alluvial deposits lowered

23 to a level which permitted salt water intrusion.

24                              30.

25 No Further Salt Water Intrusion at the
   Present Time Above Ysidora Narrows
26

27          That subsequent to 1956 the United States of America

28 reduced its pumping from the younger alluvial deposits within the

29 Ysidora Sub-basin.  Simultaneously, the United States of America

30 commenced a program of ground water recharge of the younger allu-

31 vial deposits within the Naval Enclave; that said ground water

                              28

1 recharge program consisted of spreading sewage effluent over said
2 deposits and of constructing and operating spreading works in
3 combination with an extensive program of eradicating phreatophytes
4 and other water-consuming vegetation.  That substantial amounts
5 of the sewage effluent used to recharge the younger alluvial de-
6 posits was effluent from waters of the Santa Margarita River which
7 had been diverted outside of its watershed as found hereinabove;
8 as a result of said water conservation policies salt water intru-
9 sion into the younger alluvial deposits above Ysidora Narrows
10 has ceased and for approximately five (5) years there has been
11 no further salt water intrusion above said Ysidora Narrows.
12 That these practices are commendable and have contributed to the
13 efficient use of the waters of the Santa Margarita River and its
14 tributaries.  That the United States of America has now resumed
15 limited pumping from said younger alluvial deposits above said
16 Ysidora Narrows.

17                              31.

18 Defendants Did Not Wrongfully
   Cause Salt Water Intrusion
19

20        That no past or present wrongful act of any defendant in
21 this case caused or now threatens to cause salt water intrusion
22 into any waters of the Santa Margarita River upstream from
23 Ysidora Narrows.

24                              32.

25 Amount of Ground Water Movement through
   Ysidora Narrows.
26

27        That in a state of nature, approximately 100 acre feet of
28 ground water per year passed through the younger alluvial deposits
29 within the Ysidora Narrows and out of the Ysidora Sub-basin.  Sub-
30 sequent to the year 1956 when salt water intrusion was abated,
31 the quantity of ground water passing  from the Ysidora Sub-basin
32 has been restored substantially to what it was in the state of nature.

2115

1     <u>Lands Riparian to Santa Margarita River</u>.

2          That the following referred to lands are riparian

3 to the Santa Margarita River, said lands being held under

4 one chain of title a part of which abuts upon or is traversed

5 by the Santa Margarita River:

6         A.  That portion of the 123,620 acres, more or

7         less, acquired by the United States of America on

8         December 31, 1942, by condemnation, in San Diego

9         County which are within the Santa Margaria River

10         watershed.

11         B.  Approximately 1,705.3 acres which are a

12         portion of the 9,147.55 acres, more or less, which

13         were acquired by the United States of America on

14         January 21, 1942, by condemnation, in San Diego County;

15         said 1,705.3 acres being within the watershed of

16         the Santa Margarita River and from which the waters

17         thereon, in a state of nature, drain into the Santa

18         Margarita River within the limits of the Naval Ammuni-

19         tion Depot.

20          That the lands referred to hereinabove are depicted

21 on Exhibit A attached hereto.

22          That in addition to the lands specifically referred to

23 above, all of that part of the 9,147.55 acres, more or less,

24 within the Santa Margarita River watershed which comprise the

25 Naval Ammunition Depot were at the time of their transfer to

26 the United States of America on January 21, 1942, riparian

27 to the Santa Margarita River being held under one chain of

28 title which included lands traversed by the Santa Margarita

29 River throughout its course to the Pacific Ocean.

30 - - - -

31 - - - -

2116

1          That at the time of the transfer of said 9,147.55 acres
2   more or less to the United States of America it was fully con-
3   templated by the United States of America and the Rancho Santa
4   Margarita that water would be diverted from the Santa Margarita
5   River to certain areas within the sub-watershed of Fallbrook
6   Creek for the purpose of use by the United States Ammunition
7   Depot.

8          This Court finds that there was an implied transfer
9   and conveyance to the United States of America of the riparian
10  right of the Rancho Santa Margarita  to use the waters of
11  the Santa Margarita River for the limited purpose of use in
12  connection with the physical facilities of the United States
13  Naval Ammunition Depot which are located upon lands within
14  the Southeast Quarter (SE$\frac{1}{4}$) of Section 22, South Half (S$\frac{1}{2}$) of
15  Section 23, those portions of Sections 24 and 25 westerly of
16  the Naval Ammunition Depot boundary, all of Section 26, the
17  East Half (E$\frac{1}{2}$) of Section 27, North Half (N$\frac{1}{2}$) of the North-
18  east Quarter (NE$\frac{1}{4}$) of Section 34, the North Half (N$\frac{1}{2}$) of the
19  Northwest Quarter (NW$\frac{1}{4}$) of Section 35, all in Township 9
20  South, Range 4 West, S.B.M., and for fire protection purposes
21  elsewhere within the limits of the Naval Ammunition Depot.
22  - - - -
23  - - - -
24  - - - -
25  - - - -
26  - - - -
27  - - - -
28  - - - -
29  - - - -
30  - - - -
31  - - - -

2117

34.

**DeLuz Creek Surface Stream and Younger
Alluvial Deposits Thereunder**

That DeLuz Creek is an intermittent surface stream which
has its confluence with the Santa Margarita River in the South-
east Quarter (SE$\frac{1}{4}$) of the Southwest Quarter (SW$\frac{1}{4}$) of Section 29,
Township 9 South, Range 4 West, S.B.M.; that immediately upstream
from its confluence with the Santa Margarita River, and for a
distance of approximately four (4) miles, said surface flow of
DeLuz Creek, when in fact it flows on the surface, flows over
an area of younger alluvial deposits of considerable depth; that
said younger alluvial deposits are depicted on United States Ex-
hibits 67 and 68 incorporated herein by reference.

That DeLuz Creek enters the Naval Enclave at the North
boundary of the Northwest Quarter (NW$\frac{1}{4}$) of the Northeast Quarter
(NE$\frac{1}{4}$) of Section 8, Township 9 South, Range 4 West, S.B.M., and
proceeds in a southerly direction over sections 17, 20 and 29 to
its point of confluence with the Santa Margarita River as found
hereinabove.

35.

**Geologic Factors Concerning Younger
  Alluvial Deposits which Underlie
  Surface Stream of DeLuz Creek Within
  Naval Enclave.**

That said younger alluvial deposits referred to in
Finding 34 above rest upon and are confined laterally by deposits
of basement complex.  There are ground waters within said younger
alluvial deposits, the source and recharge of which are primarily
the surface flow of DeLuz Creek.  The said younger alluvial de-
posits are composed of sedimentary materials of a relatively
high water-bearing capacity and permeability, and the deposits of
basement complex are essentially non-water bearing and relatively

32

2118

1 impervious.  As a result, the waters within said younger alluvial

2 deposits do not move laterally or vertically into the deposits

3 of basement complex, but do in fact move through the younger

4 alluvial deposits in the identical direction of the surface flow

5 of DeLuz Creek when in fact it exists.  During such times when

6 DeLuz Creek flows as a surface stream, that is, during and after

7 periods of precipitation, the ground waters contained in said

8 younger alluvial deposits are in direct contact with said surface

9 flow.  During all other times DeLuz Creek does not flow as a sur-

10 face stream within the Naval Enclave, but disappears underground

11 and during such periods the ground waters within the younger

12 alluvial deposits do in fact constitute the waters of DeLuz Creek.

13                                36.

14 Ground Waters Within Younger Alluvial
   Deposits are a part of DeLuz Creek
15

16        That the ground waters within the said younger alluvial

17 deposits are in fact in a known and definite channel, to wit,

18 the basement complex containing the younger alluvial deposits;

19 that said ground waters do in fact flow in the same direction

20 as the surface flow of DeLuz Creek when in fact it physically

21 flows, are in direct contact with said surface flow, and said

22 groundwaters and said surface flow constitute one creek herein

23 referred to as DeLuz Creek.

24                                37.

25 Lands Riparian to DeLuz Creek

26        That the following referred to lands are riparian to

27 DeLuz Creek, said lands being held under one chain of title a

28 part of which abuts upon or is traversed by DeLuz Creek:

29        A.  Southeast Quarter of the Southwest Quarter; Southwest

30 Quarter of the Southwest Quarter; West Half of the Northeast Quarter;

31 Northeast Quarter of the Southeast Quarter; Southwest Quarter of

                                33

                                                    2119

1 the Southeast Quarter; and, Northwest Quarter of the Southeast

2 Quarter of Section 8, Township 9 South, Range 4 West, San Ber-

3 nardino Base and Meridian.  267.74 acres, more or less.

4 Fractional North Half of Northwest Quarter of Section 17, Town-

5 ship 9 South, Range 4 West, San Bernardino Base and Meridian.

6 40.81 acres, more or less.

7        B.  That portion of the 123,620 acres, more or less,

8 acquired by the United States of America on December 31, 1942,

9 by condemnation in San Diego County which are within the sub-

10 watershed of DeLuz Creek; said lands referred to in this sub-

11 paragraph B. being depicted on Exhibit A attached hereto.

12                            38.

13 Continuing Jurisdiction to Determine Extent
   of Younger Alluvial Deposits and Reliance
14 on U. S. Exhibits

15        While it is known, definite and certain that the younger

16 alluvial deposits as found in Finding 34 above, rest upon de-

17 posits of basement complex, it is not known with certainty the

18 exact depth of said younger alluvial deposits to their contact

19 with said basement complex throughout said area.  As this Court

20 will keep continuing jurisdiction of this cause, jurisdiction is

21 reserved to determine such a fact if it becomes necessary to do

22 so in any particular factual situation which might arise in the

23 future.  The contact line on the surface between said younger

24 alluvial deposits and said basement complex has not been deter-

25 mined with absolute exactness, but has been determined to a suffi-

26 cient degree for the United States of America to prepare maps and

27 exhibits delineating said contact line (including U. S. Exhibit 67)

28 and said contact line as established by said maps and exhibits pre-

29 pared by the United States of America has been accepted by this

30 court as being the contact line between the younger alluvial

31 deposits and the basement complex deposits on ground surface.

                              34

39.

1 <u>Fallbrook Creek</u>.

2           Fallbrook Creek is a stream of an intermittent character

3 which flows over and upon deposits of essentially consolidated

4 rocks and basement complex; that its headwaters are in Sections 35

5 and 26, Township 9 South, Range 4 West, S.B.M., and in a state of

6 nature it flows through Sections 34, 27, 33, 32, Township 9 South,

7 Range 4 West, S.B.M., and Section 5, Township 10 South, Range 4

8 West, S.B.M., to its point of confluence with the Santa Margarita

9 River in the Southwest Quarter of Section 5, Township 10 South,

10 Range 4 West, S.B.M.; that under present conditions the flow of

11 Fallbrook Creek enters Lake O'Neil, an artificial storage reser-

12 voir situated in Sections 5 and 8, Township 10 South, Range 4

13 West, S.B.M.; that said Lake O'Neil is more fully described in

14 Interlocutory Judgment No. 24.

15                              40.

16 <u>Lands Riparian to Fallbrook Creek</u>.

17           That the following referred to lands are riparian to

18 Fallbrook Creek, said lands being held under one chain of title

19 a part of which abuts upon or is traversed by Fallbrook Creek:

20           A.   All lands within the Naval Enclave and within the

21 sub-watershed of Fallbrook Creek, said lands being depicted on

22 Exhibit A attached hereto.

23                              41.

24 <u>Unnamed Creeks, Gullies, Etc</u>.

25           In addition to the Santa Margarita River, DeLuz Creek

26 and Fallbrook Creek, there are numerous small creeks, gullies

27 and watercourses both named and unnamed tributary to the Santa

28 Margarita River within the Naval Enclave.  Excepting for those

29 streams which are supplied with sewage effluent all such streams

30 are intermittent and flow only during and after precipitation

31 and runoff.  While in the main such creeks, gullies and watercourses

1 flow primarily over consolidated rocks and basement complex,

2 there are limited areas in which shallow alluvial deposits underlie

3 the stream channel. In all such cases such shallow alluvial de-

4 posits rest upon and are laterally contained by deposits of con-

5 solidated rock or basement complex and the ground waters contained

6 in such alluvial deposits are in direct physical and hydrologic

7 contact with the surface flows, at such times as there are surface

8 flows, in all of said creeks, gullies or watercourses.  The ground

9 waters contained in such shallow alluvial deposits, if any, are in

10 a known and definite channel, to wit, the younger alluvial deposits,

11 and such ground waters and surface flows as may exist do in fact

12 constitute a single creek, gully or watercourse.

13                                42.

14 Jurisdiction Reserved as to Said
   Creeks, Gullies, etc.
15 _____

16         That said small creeks, gullies or watercourses have not

17 been considered in detail herein, nor has any party to this cause

18 requested detailed findings thereto; that as this judgment is

19 interlocutory, should the United States of America or any party

20 to this cause desire such detailed findings as to such small

21 creeks, gullies or watercourses, this court will do so prior to

22 the entry of final order and decree upon such a request; that if no

23 such request is made, the location of such creeks, gullies or

24 watercourses are depicted on U. S. Exhibits 29A, 29B, 29C, 29F,

25 29G and 29H incorporated herein by reference, and this court can

26 in the future refer to said exhibits to determine any controversy

27 which may arise as to such waters.

28 - - - -

29 - - - -

30 - - - -

31 - - - -

2122

1                              43.

2  Minor Surface Impoundments

3        That in addition to Lake O'Neil, which is the subject

4  of Interlocutory Judgment No. 24, there are within the Naval

5  Enclave and within the watershed of the Santa Margarita River,

6  many structures used for the impoundment of surface runoff for

7  the purpose of providing stock water, or to encourage ground

8  water recharge, or for purposes of soil conservation, recreation

9  or other beneficial purposes.  There is no evidence that any of

10 such structures or impoundments presently constitute an un-

11 reasonable, wasteful or non-beneficial use of water.  None of

12 such structures or impoundments have been constructed or are

13 maintained under the authority of any Permit or License of the

14 State of California, and none of such structures or impoundments

15 have been maintained adversely to any party to this cause.

16       That these minor surface impoundments as described in this

17 Finding are of the same type as those considered in Findings of

18 Fact, Conclusions of Law and Interlocutory Judgment No. 28.

19 (Miscellaneous Surface Impoundments).

20                              44.

21 Effect of Such Minor Surface Impoundments.

22       That all such structures and impoundments as are

23 described in Finding 43 above intercept surface runoff of waters

24 of the Santa Margarita River System, which runoff would in a

25 state of nature contribute to the Santa Margarita River; that

26 while the impact of any such individual impoundment on the availa-

27 ble water supply of the Santa Margarita River is at present

28 de minimis, the cumulative effect of such structures and impound-

29 ments may at a future date become substantial and require regula-

30 tion or control.

31 - - - -

45.

Vagrant, Local, Percolating Waters and
Surface Waters Other Than Those Herein
Found to be a Part of a Specific River
or Creek

That all ground waters within the Santa Margarita River watershed and contained within deposits of consolidated rocks, weathered basement complex or basement complex, as depicted on U. S. Exhibits 37, 67 and 70, and within the Naval Enclave, are vagrant, local, percolating waters not a part of the Santa Margarita River or any tributary thereto; that all surface waters which flow upon the deposits of consolidated rock, weathered basement complex or basement complex on the lands comprising the Naval Enclave within the Santa Margarita River watershed are a part of theSanta Margarita River or a tributary thereto.

46.

Future Jurisdiction

That the United States of America by bringing this action has submitted to the jurisdiction of this Court and to the continuing jurisdiction of this Court in this cause, and all rights claimed to the use of the waters of the Santa Margarita River and its tributaries and all rights claimed to the use of the waters which add to and support the Santa Margarita River and its tributaries by the United States of America and all defendants in this case and by their heirs, successors and assigns shall be and are subject to the continuing jurisdiction of this Court.

47.

Stipulation as to California Law

On November 29, 1951, the United States of America and the State of California entered into a written stipulation

38

1  in this case which provided as follows:

2       "On the 15th day of August, 1951, the People of

3   the State of California, in accordance with invitation

4   of the United States of America, petitioned this Court

5   to intervene in this litigation.  On that date an

6   Order was allowed and entered by this Court granting

7   the Petition.

8       "For the clarification of the issues in this

9   litigation and for the benefit of all of the parties to

10   this cause, it is hereby stipulated:

11                          "I

12       "That in Paragraphs VIII and IX of plaintiff's

13   Complaint herein, and in Paragraph 2 and 3 of the Prayer

14   of this Complaint, the word 'paramount' is used in the

15   same sense in which that word is used in the second para-

16   graph, on page 374 of the opinion of the Supreme Court

17   of California, in the case of Peabody v. Vallejo, 2 Cal.2d

18   351 (fourth paragraph on page 494, 40 Pac.2d 486).

19                          "II

20       "That in this cause, the United States of America

21   claims only such rights to the use of water as it acquired

22   when it purchased the Rancho Santa Margarita, together

23   with any rights to the use of water which it may have

24   gained by prescription or use, or both, since its acquisi-

25   tion of the Rancho Santa Margarita.

26                          "III

27       "That the United States of America claims by reason

28   of its sovereign status no right to the use of a greater

29   quantity of water than is stated in Paragraph II, hereof.

30       - - - --

31       - - - -

39

1                              "IV

2        "That the rights of the United States of America to

3    the use of the water herein are to be measured in accordance

4    with the laws of the State of California.

5                              "V

6        "That the parties to this Stipulation will request

7    the entry of a Pre-trial Order by this Court defining

8    the issues in this cause, in conformity with the state-

9    ments contained in this Stipulation.

10                             "VI

11       "That there will be a full, complete and mutual

12   exchange of data and information as to the subject matter

13   of this cause collected by the respective parties to this

14   Stipulation, including data respecting the issuance of any

15   permits or licenses issued by the State of California in

16   connection with the rights to the use of water of the

17   Santa Margarita River.  Such exchange of information by

18   the United States will be subject to clearance by the

19   Commanding Officer, Camp Joseph H. Pendleton, in respect

20   to military security, as determined by said officer:

21       "Dated:  November 29, 1951.

22   "ERNEST A. TOLIN,               EDMUND G. BROWN
     United States Attorney          EDMUND G. BROWN, Attorney General
23   BETTY MARSHALL GRAYDON          of the State of California
     Assistant United States
24   Attorney                        ARVIN B. SHAW, JR.
     WILLIAM H. VEEDER,              ARVIN B. SHAW, JR.
25   Special Assistant to the        Assistant Attorney General
     Attorney General of the
26   United States                   B. ABBOTT GOLDBERG
     by                              B. ABBOTT GOLDBERG
27   WILLIAM H. VEEDER               Deputy Attorney General
     WILLIAM H. VEEDER
28                                   Attorneys for the People of the
                                     State of California"

29       That on April 7, 1958,  this Court entered its Order

30   permitting the United States of America to file a Complaint and

31   Supplementary and Amendatory Complaint.  That in said Supplementary

                                   40

                                                        2126

1 and Amendatory Complaint the United States of America realleged

2 and reaverred each and every allegation in the original Complaint

3 including paragraphs 8 and 9 of said original Complaint.

4                         48.

5 <u>Authorization for Stipulation</u>

6       That counsel for the United States of America in this

7 case had authorization to enter into the Stipulation set forth

8 above in Finding 47 and his action in so doing was authorized,

9 ratified and approved by the Attorney General of the United

10 States and the Department of Justice.

11                        49.

12 Certain Parties Agree to be Bound
   <u>by the Stipulation</u>
13

14       That during the trial of this cause said Stipulation

15 referred to above in Finding 47 was joined in and consented to

16 by counsel for defendants, Fallbrook Public Utility District

17 and Vail Company.

18                        50.

19 California Law Binds All Parties
   <u>to this Case</u>
20

21       That this case has been tried before this Court on

22 the theory that the rights to the use of the waters of Santa Mar-

23 garita River and its tributaries and the rights to the use of

24 waters which add to and support said River and its tributaries

25 shall be determined by California law as to the plaintiff and all

26 defendants in this cause.  That, therefore, by so proceeding upon

27 this theory before this Court, all parties to this action not

28 parties to the Stipulation referred to in Finding 47 above,

29 and not defendants who expressly joined in and consented to said

30 Stipulation as set forth in Finding 49 above, have impliedly, by

31 their conduct in this case, assented to the substance of said

                    41

1 Stipulation; and their rights and the rights of all parties in
2 this case shall be and are determined by the laws of the State
3 of California.

4            That notwithstanding said Stipulation set forth in
5 Finding of Fact 47 above, there is no Federal water law as such
6 and of necessity this Court would be required to determine the
7 rights of all parties to the use of the waters of the Santa
8 Margarita River and its tributaries and to the use of the waters
9 which add to and support said River and its tributaries, pursuant
10 to the applicable laws of the State of California.

11                         51.

12 Opinion Construing Stipulation

13            That heretofore this Court entered an Opinion dated
14 August 8, 1958, reported in United States of America v. Fall-
15 brook Public Utility District, et al., 165 Fed.Supp. 806, which
16 concerned the meaning, application and scope of the Stipulation
17 referred to in Finding of Fact 47 hereinabove, and also certain
18 pre-trial rulings.  That to the extent that said Opinion is
19 not inconsistent with any finding entered herein, all rulings
20 as are set forth in said Opinion are adopted herewith.

21                         52.

22 Prima Facie Evidence

23            That on Exhibit B attached to and made a part of
24 these findings there appear certain factual statements con-
25 cerning lands of the United States of America within the Naval
26 Enclave which concern such matters as wells, surface diver-
27 sions, gross acreages, irrigated acreages, irrigable acreages
28 and water duty.  Said factual statements which pertain to
29 wells and surface diversions are as of the date of this Inter-
30 locutory Judgment true.  The factual statements contained in
31 said Exhibit  B which pertain to gross acreages, irrigated

                         42

1 ~~acreages~~, irrigable acreages and water duty are based on evi-

2 dence introduced in this case by the United States of America

3 with an express assurance by its counsel that apportionment

4 was not being sought at this stage of the litigation.  Because

5 of this fact and the fact that this Court is not at this time

6 making any Order apportioning or regulating the use of the

7 waters involved herein, said facts pertaining to gross acreages,

8 ~~irrigated acreages~~, irrigable acreages and water duty are not

9 material to any issue decided by Interlocutory Judgment No. 37

10 entered herewith.  That in the exercise of this Court's

11 continuing jurisdiction in this cause said facts may well

12 be material to an issue presented to this Court in the future;

13 therefore, this Court finds that such factual statements which

14 are contained in said Exhibit  B  which pertain to gross acreages,

15 ~~irrigated acreages~~, irrigable acreages and water duty are sup-

16 ported by the evidence in this case and such factual statements

17 shall be prima facie evidence as to gross acreages, ~~irrigated~~

18 ~~acreages~~, irrigable acreages and water duty in any subsequent

19 proceedings before this Court in this cause; as used herein prima

20 facie evidence is that which suffices for the proof of the parti-

21 cular fact until contradicted or overcome by other evidence.

22                                    53.

23 Reference to Interlocutory Decree No. 25

24          That this Court has previously entered Findings of Fact,

25 Conclusions of Law and Interlocutory Decree No. 25 pertaining

26 to a State court judgment in the case of Rancho Santa Margarita

27 v. Vail, et al., Case No. 42850 in the records of the Superior

28 Court of the State of California, in and for the County of

29 San Diego.

30 ------

31 ------

2129

1                        54.

2 Revocable Permit to Fallbrook Public Utility District

3               When the United States of America acquired the Rancho

4 Santa Margarita there was in force and effect a revocable

5 license executed in 1932 by the Rancho Santa Margarita and

6 approved by the Vail Company, allowing the Fallbrook Public

7 Utility District to pump from the Santa Margarita River at

8 a point immediately upstream from the Rancho's eastern boundary

9 a maximum of ten (10) miner's inches of water for domestic pur-

10 poses.  When the United States of America acquired the Rancho

11 Santa Margarita, Fallbrook Public Utility District neither owned

12 nor claimed any rights to the use of waters of the Santa Margarita

13 River.  In 1946 and 1947, the Fallbrook Public Utility District

14 filed with the State of California applications to appropriate

15 rights in the stream, as more particularly described in Inter-

16 locutory Judgment No. 23.  In 1948, the United States of

17 America cancelled Fallbrook's revocable license.

18                    CONCLUSIONS OF LAW

19                         1.

20               The United States of America is the owner of the

21 lands described in Finding of Fact No. 1 herein.

22                         2.

23               Based on the facts as set forth in Finding of Fact

24 No. 3, jurisdiction is reserved by this Court to enter further

25 Conclusions of Law either on its own motion or upon the motion

26 of the United States of America or any defendant in this cause

27 on the issue of whether the United States of America has exclusive

28 jurisdiction over the lands or any portion thereof comprising

29 the Naval Enclave.

30 -----

31 -----

                        44

                                        2130

1                              3.

2              All uses of the waters of the Santa Margarita River by

3 the United States of America within the Naval Enclave and both

4 within and without the watershed of the Santa Margarita River,

5 other than uses for stock watering, irrigation and sub-irrigation,

6 and the maintenance of a fresh water barrier to prevent salt water

7 intrusion are as to their characteristics municipal uses.

8                              4.

9              That except as provided in Interlocutory Judgment No.24

10 (Lake O'Neil), the United States of America has not established

11 nor obtained nor does it own or possess any appropriative rights

12 to use the waters of the Santa Margarita River or its tributaries

13 on any lands of the Naval Enclave.

14                              5.

15              That the United States of America has not established

16 nor does it own or possess any prescriptive right to the use of

17 the waters of the Santa Margarita River or any tributaries thereto,

18 on any lands of the Naval Enclave.

19                              6.

20              That the acts of the predecessor in interest of the

21 United States of America in exporting waters from the Santa

22 Margarita River without the watershed were not adverse or hostile

23 as to any upstream landowner or water user or water-right claimant

24 and said acts did not result in said predecessor obtaining a

25 prescriptive right to the use of any water of the Santa Margarita

26 River, or its tributaries.

27              That such waters exported outside the watershed of the

28 Santa Margarita River by the predecessor in interest of the

29 United States of America were either surface waters or waters

30 within a known and definite channel and part of the underground

31 flow of the Santa Margarita River, and as all such exportations of

45

2131

1 such waters occurred subsequent to the year 1937, such exporta-
2 tions were not made under any appropriative right recognized by
3 the laws of the State of California.

4                                    7.

5            That the continued use by the United States of America
6 of the waters of the Santa Margarita River, as the same have been
7 defined in the Findings herein, within the boundaries of the
8 Naval Enclave, but  outside the watershed of the Santa Margarita
9 River, will not in the future give rise to any right to the use
10 of water enforceable against any upstream appropriator
11 prescriptor, riparian or overlying owner.

12                                   8.

13           That except as to uses of the waters of the Santa
14 Margarita River to maintain native vegetation and grasses and
15 as provided in Interlocutory Judgment 24 (Lake O'Neil) all uses
16 of the waters of the Santa Margarita River by the United States
17 of America within the Naval Enclave and within the watershed of
18 the Santa Margarita River, are reasonable and beneficial ripa-
19 rian uses.  That all uses of the waters of the Santa Margarita
20 River by the United States of America within the Naval Enclave,
21 but outside the watershed of the Santa Margarita River, are
22 beneficial uses, and are proper uses in that the United States of
23 America is the last water user on the stream, and for that
24 reason the use of waters outside the watershed does not injure
25 any other party to this cause.

26                                   9.

27           That  at the present status of this case, the issue of
28 apportionment or the quantity or proportion of waters to which
29 any lands are entitled has not been presented; and this Court
30 has taken no evidence directed to establishing whether any water
31 uses pursuant to correlative riparian rights are reasonable or

2132

1 unreasonable as to amount of water used in the light of other

2 rights which may exist as to such waters and this issue is left

3 open, is not decided herein, and shall be litigated in this

4 Court if and when it becomes necessary to do so.

5          In the exercise of this continuing jurisdiction, this

6 Court will pass upon the exercise of such correlative rights

7 based on the facts as may then appear and pursuant to California

8 law.

9                              10.

10          This Court does not pass upon the question of whether

11 the maintaining of natural grasses and vegetation cover on the lands

12 of the Naval Enclave within the Santa Margarita River watershed is,

13 or will be in the future, a reasonable use of water in view of the

14 other purposes for which water has been and will be used.  This

15 question is a question which may well be relevant in any apportion-

16 ment proceedings.  Jurisdiction is herein reserved to determine

17 at such future time as an apportionment proceeding or regulation

18 proceeding is presented the issue as to whether the maintaining

19 of natural grasses and vegetation cover is a reasonable use of

20 water and such issue will be determined at that time based upon

21 the facts as may then appear and pursuant to the laws of the

22 State of California.

23                              11.

24          The use of the waters of the Santa Margarita River

25 by the United States of America to maintain a fresh water barrier

26 against salt water intrusion as set forth in Finding 29 consti-

27 tutes a reasonable and beneficial riparian use of the waters of

28 said River.

29                              12.

30          The water conservation program of the United States

31 of America within the Naval Enclave and particularly the

47

1 construction of spreading works, the control of phreatophytes

2 and the reclamation of sewage have been, and are commendable

3 practices and have resulted in the conservation of the water re-

4 sources of the Santa Margarita River on the Naval Enclave.

5           The single fact that water has been conserved by

6 the United States of America by these conservation programs will

7 not in any subsequent apportionment proceedings increase the

8 share to which the Naval Enclave may be entitled, nor will that

9 single fact reduce such future allocation as may be made to the

10 Naval Enclave.  In any future apportionment proceeding, the Court

11 at that time may take such conservation practices into account in

12 determining whether any use on the Naval Enclave is a reasonable

13 riparian use insofar as it concerns amounts of water consumptively

14 required to satisfy a beneficial riparian use.

15                         13.

16           That by reason of the Stipulation of November 29, 1951,

17 set forth in Finding 47 herein, the United States of America can

18 assert no rights to the use of the waters of the Santa Margarita

19 River within the Naval Enclave based upon its sovereignty, but on

20 the contrary, is limited to such rights as it may have acquired

21 from its predecessor in interest, or which it may have gained since

22 its acquisition of the Naval Enclave by prescription or use or

23 both as provided by California law.

24                         14.

25           That counsel for the United States of America had

26 authority to execute said Stipulation set forth in Finding 47

27 and the Attorney General of the United States of America and the

28 Department of Justice of the United States of America ratified said

29 act of said counsel.

30 -- - -

31 - - - -

15.

That the Stipulation as set forth in Finding 47 has at all times since November 29, 1951, been in full force and effect and the provisions thereof binding on the United States of America and the State of California.

16.

That heretofore this Court entered an opinion dated August 8, 1958, reported in United States of America vs. Fallbrook Public Utility District, et al., 165 F.Supp. 806, which concerned the meaning, application and scope of the Stipulation set forth in Finding 47, and certain pre-trial rulings. That to the extent said Opinion is not inconsistent with any Finding of Fact or Conclusion of Law entered herein, said rulings of law pertaining to said Stipulation as are set forth in said Opinion are adopted herewith into these Conclusions of Law as if set forth in full herein.

17.

That the Fallbrook Public Utility District and the Vail Company in open court in this cause expressly joined in and consented to said Stipulation and are therefore bound by its terms and provisions.

18.

This case has been tried on the theory that the applicable California law would determine the rights to the use of the waters of Santa Margarita River and its tributaries and the rights to the use of the waters which add to and support said River and its tributaries and, therefore, all parties not parties to the Stipulation set forth in Finding 47 by pursuing this theory of the case have implied by such conduct assent to the application of California law in this cause.

- - - -

49

2135

1                                    19.

2            That notwithstanding said Stipulation and notwith-

3   standing the fact that this case was tried on the theory that

4   California law would determine such rights, the laws of the State

5   of California would apply in that there is no Federal law as

6   to water rights as such, and this Court would of necessity

7   be required to apply the applicable California law.

8                                    20.

9            That the United States of America has no rights to

10  the use of the waters of the Santa Margarita River or its tribu-

11  taries upon lands within the Naval Enclave, based upon its

12  ownership of Indian Reservation Lands, National Forest Lands,

13  Public Domain Lands, or other Federally-owned lands located

14  elsewhere within the watershed upstream from the Naval Enclave.

15                                   21.

16           That the designation of the Naval Enclave, and/or

17  various portions thereof, as a military reservation did not by

18  such designation confer upon the United States of America any

19  rights to the use of the waters of the Santa Margarita River

20  or its tributaries.

21                                   22.

22           That the United States of America has acquired no

23  rights to the use of the waters of the Santa Margarita River or

24  its tributaries within the Naval Enclave by inverse condemna-

25  tion.

26                                   23.

27           That the United States of America has acquired no

28  rights, appropriative or otherwise, to the use of the waters of

29  the Santa Margarita River and its tributaries within the Naval

30  Enclave by reason of its conservation practices, including, but

31  not limited to the reclaiming of sewage, the control of

                                     50

2136

1 phreatophytes or the construction of spreading works.

2                              24

3          That no Act of the Congress of the United States of

4 America including the Acts of 1866 (14 U.S.Stats.253) and 1870

5 (16 U.S. Stats. 218) and the Desert Land Act of 1877 was intended

6 to or does provide or could constitutionally provide that the

7 United States of America can acquire or take vested rights to

8 the use of water for its uses within the Naval Enclave without

9 payment of compensation.

10                             25.

11          That said Acts specifically referred to in Conclusion

12 of Law 24 pertain to lands which were a part of the Public Domain

13 and have no application to those lands within the Naval Enclave

14 which are referred to in Finding of Fact 2 which lands were in

15 private ownership at the time of the Treaty of Guadalupe Hidalgo,

16 and remained in private ownership at all times thereafter until

17 acquired by the United States of America as set forth in Finding

18 of Fact 1 above.

19                             26.

20          That except as to such rights, if any, which may be

21 permitted under the appropriative right considered in Interlocu-

22 tory Judgment No. 24 (Lake O'Neil), the United States of America

23 has no right to compel any Santa Margarita River water user up-

24 stream from the Naval Enclave to release water or curtail up-

25 stream water use so as to allow such water to reach the Naval

26 Enclave for the purpose of exportation without the Santa Mar-

27 garita River watershed.

28                             27.

29          That except as to reasonable and proper riparian uses

30 on lands within the Naval Enclave upstream from the point of

31 confluence of the Santa Margarita River with DeLuz Creek in

2137

1 Section 29, Township 9 South, Range 4 West, S.B.M. and the rights

2 as provided in Interlocutory Judgment No. 24 (Lake O'Neil), no

3 upstream riparian, overlying owner, prescriptor or appropriator

4 shall be required to release water or curtail reasonable and bene-

5 ficial water uses so as to allow water to reach the Naval Enclave

6 for any purpose, unless and until water exportation from ▬▬▬▬

7 the Santa Margarita River watershed by the United States of America

8 is abandoned, and the ground water levels within the younger allu-

9 vial deposits which underlie the Santa Margarita River downstream

10 from said point of confluence of said DeLuz Creek with the Santa

11 Margarita River have been restored to that level at which they would

12 have been if such exportation had not taken place.

13                              28.

14          That all surface waters which flow upon lands of the

15 Naval Enclave within the watershed of the Santa Margarita River

16 are a part of the Santa Margarita River and subject to the

17 continuing jurisdiction of this Court.

18                              29.

19          All waters contained within the younger alluvial deposits

20 within the Santa Margarita River watershed and within the Naval

21 Enclave are in known and definite channels, are not percolating

22 waters, but are in fact a part of the underground flow of the

23 stream system.

24                              30.

25          That all lands specifically referred to in sub-paragraphs

26 A and B of Finding 33 herein have a correlative riparian right to

27 the use of the waters of the Santa Margarita River.

28          That all lands within the Naval Ammunition Depot boundary

29 and within the Santa Margarita River watershed have a limited ripa-

30 rian right to use the waters of the Santa Margarita River for fire

31 protection purposes.

32          That the following described lands which are within the

2133

1 boundary of the United States Naval Ammunition Depot have a

2 riparian right to use the waters of the Santa Margarita River

3 for the limited purpose of use in connection with the physical

4 facilities of the Naval Ammunition Depot which are located thereon:

5          Southeast Quarter (SE$\frac{1}{4}$) of Section 22, South Half (S$\frac{1}{2}$)

6 of Section 23, those portions of Sections 24 and 25 westerly of

7 the Naval Ammunition Depot boundary, all of Section 26, the

8 East Half (E$\frac{1}{2}$) of Section 27, North Half (N$\frac{1}{2}$) of the Northeast

9 Quarter (NE$\frac{1}{4}$) of Section 34, the North Half (N$\frac{1}{2}$) of the North-

10 west Quarter (NW$\frac{1}{4}$) of Section 35, all in Township 9 South,

11 Range 4 West, S.B.M.

12                          31.

13          That those lands specifically described or referred

14 to in sub-paragraphs A and B in Finding 37 herein have a correla-

15 tive riparian right to the use of the waters of DeLuz Creek.

16                          32.

17          That those lands specifically referred to in sub-

18 paragraph A of Finding 40 herein have a correlative riparian

19 right to the use of the waters of Fallbrook Creek.

20                          33.

21          That the smallest tract of land held under one chain

22 of title and within the Santa Margarita River watershed, a part

23 of which abuts upon or is traversed by any area containing younger

24 alluvial deposits as depicted on U. S. Exhibits 37, 67, and 70,

25 within the Naval Enclave, and not heretofore found to be riparian

26 to a specific river or creek, has a correlative riparian right

27 to the use of the ground waters within said younger alluvial de-

28 posits, and such surface flow as may exist over and upon said

29 deposits, and the use of such waters shall be and is subject to

30 the continuing jurisdiction of this Court.  That except as to the

31 - - - -

53

2139

1   Santa Margarita River, DeLuz Creek and Fallbrook Creek, such

2   lands have not been specifically considered in these findings,

3   but they can be readily ascertained in the future should it be

4   necessary to do so by reference to the areas of younger alluvial

5   deposits as depicted on said U. S. Exhibits 37, 69 and 70,

6   and the watershed line as depicted on Exhibit A attached hereto.

7                                   34.

8           That the exercise of the correlative riparian rights

9   as provided in Conclusions of Law 30, 31, 32 and 33 to the use

10  of such specified waters is subject to the continuing juris-

11  diction of this Court.  That all uses of the waters of the

12  Santa Margarita River, DeLuz Creek, Fallbrook Creek and their

13  tributaries are subject to the continuing jurisdiction of this

14  Court.

15                                  35.

16          That all ground waters found within areas of deposits

17  of consolidated rocks, basement complex or weathered basement

18  complex as said deposits are depicted on U. S. Exhibits 37,

19  67 and 70 and within the Santa Margarita River watershed and the

20  Naval Enclave do not add to, support nor contribute to the Santa

21  Margarita River or any tributary thereto, and are local, vagrant,

22  percolating waters not a part of said River or any tributary

23  thereto.

24                                  36.

25          Such facts as are set forth on Exhibit B attached hereto

26  which pertain to gross acreages, irrigated acreages, irrigable

27  acreages and water duty shall be _prima facie_ evidence as to such

28  matters in any subsequent proceeding before this Court in this

29  cause.  As used herein, _prima facie_ evidence is that which suf-

30  fices for the proof of the particular fact until contradicted

31  or overcome by other evidence.

2140

1                              37.

2              That the United States of America by bringing this

3  action has submitted to the jurisdiction of this Court and to

4  the continuing jurisdiction of this Court in this cause, and

5  all rights claimed to the use of the waters of the Santa Mar-

6  garita River and its tributaries and all rights claimed to

7  the use of the waters which add to and support the Santa Mar-

8  garita River and its tributaries by the United States of America

9  and all defendants in this case and by their heirs, successors

10 and assigns shall be and are subject to the continuing juris-

11 diction of this Court.

12                             38.

13             Conclusions of Law 1, 2, 3, and 4, as set forth in the

14 Conclusions of Law attached to Interlocutory Judgment No. 28

15 (Miscellaneous Surface Impoundments) are incorporated herein

16 and made a part hereof as if set forth in full.

17                             39.

18             That this Interlocutory Judgment No. 37 is not in-

19 tended to nor does it apply to any lands of the United States of

20 America other than those lands within the Naval Enclave as said

21 lands are described in Finding of Fact 1; that other lands owned

22 or supervised by the United States of America, such as Forest

23 Service lands and Indian Reservation lands, will be covered in

24 other Findings of Fact, Conclusions of Law and Interlocutory

25 Judgments in this cause.

26                    INTERLOCUTORY JUDGMENT

27                              1.

28             IT IS ORDERED, ADJUDGED AND DECREED that the United

29 States of America has not established nor obtained, nor does it

30 own or possess a prescriptive right to the use of the waters

31 of the Santa Margarita River or its tributaries.

2141

2.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that except as provided in Interlocutory Judgment No. 24 (Lake O'Neil), the United States of America has not established nor obtained, nor does it own or possess, an appropriative right to the use of the waters of the Santa Margarita River or its tributaries.

3.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the following described or referred to lands have a correlative riparian right to the use of the waters of Santa Margarita River:

A.   That portion of the 123,620 acres, more or less, acquired by the United States of America on December 31, 1942, by condemnation in San Diego County, which is located within the Santa Margarita River watershed.

B.   Approximately 1705.3 acres, more or less, which is that portion of the 9,147.55 acres, more or less, acquired by the United States of America on January 21, 1942, by condemnation in San Diego County, which is within the Santa Margarita River water-shed, and from which the waters thereon, in a state of nature, drain into the Santa Margarita River within the limits of the Naval Ammunition Depot.

That said lands referred to in sub-paragraphs A and B above are depicted on Exhibit A attached hereto.

It is further ordered, adjudged and decreed that all lands within the Naval Ammunition Depot boundary and within the Santa Margarita River watershed as depicted on Exhibit A attached hereto have a limited riparian right to use the waters of the Santa Margarita Rive for fire protection purposes.

It is further ordered, adjudged and decreed that the following described lands which are within the boundary of the Naval Ammunition Depot have a limited riparian right to use the

56

1 waters of the Santa Margarita River for the single purpose of
2 use in connection with the physical facilities of the Naval
3 Ammunition Depot which are located thereon:

4        Southeast Quarter (SE$\frac{1}{4}$) of Section 22, South Half (S$\frac{1}{2}$)
5 of Section 23, those portions of Sections 24 and 25 westerly of
6 the Naval Ammunition Depot boundary, all of Section 26, the
7 East Half (E$\frac{1}{2}$) of Section 27, North Half (N$\frac{1}{2}$) of the Northeast
8 Quarter (NE$\frac{1}{4}$) of Section 34, the North Half (N$\frac{1}{2}$) of the North-
9 west Quarter (NW$\frac{1}{4}$) of Section 35, all in Township 9 South, Range
10 4 West, S.B.M.

11                    4.

12        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
13 following described or referred to lands have a correlative
14 riparian right to the use of the waters of DeLuz Creek:

15        A.   That portion of the 123,620 acres, more or less,
16 acquired by the United States of America on December 31, 1942,
17 by condemnation in San Diego County which is within the sub-
18 watershed of DeLuz Creek.  That said lands are depicted on
19 Exhibit A attached hereto.

20        B.   Southeast Quarter of the Southwest Quarter;
21 Southwest Quarter of the Southwest Quarter; West Half of the
22 Northeast Quarter; Northeast Quarter of the Southeast Quarter,
23 Southwest Quarter of the Southeast Quarter, and, Northwest
24 Quarter of the Southeast Quarter of Section 8, Township 9 South,
25 Range 4 West, S.B.M., 267.74 acres, more or less.  Fractional
26 North Half of Northwest Quarter of Section 17, Township 9 South,
27 Range 4 West, S.B.M., 40.81 acres, more or less.

28                    5.

29        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that those
30 lands within the sub-watershed of Fallbrook Creek as depicted on
31 Exhibit A attached hereto have a correlative riparian right to

1  the use of the waters of Fallbrook Creek.

2                         6.

3         IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

4  smallest tract of land held under one chain of title within the

5  Naval Enclave and the Santa Margarita River watershed, a part of

6  which abuts upon or is traversed by younger alluvial deposits,

7  as said deposits are depicted on U. S. Exhibits 37, 67 and 70,

8  not heretofore specifically determined to be riparian to the

9  Santa Margarita River, DeLuz Creek, or Fallbrook Creek, have

10  correlative riparian rights to the use of the waters contained

11  in said deposits and such surface waters as may flow over and

12  upon said deposits; it is further ordered, adjudged that this

13  Court shall have jurisdiction to make such findings in the future

14  as may be necessary to settle any dispute concerning the pro-

15  priety of the use of the said waters, and that this Court shall in

16  the future refer to Exhibit A, attached hereto, and to U. S. Ex-

17  hibits 37, 67 and 70 to determine the location of said younger

18  alluvial deposits.

19                         7.

20         IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

21  correlative riparian rights to the use of the waters as provided

22  in paragraphs 3, 4, 5 and 6 of this Interlocutory Judgment and all

23  other uses of said waters shall be and are subject to the

24  continuing jurisdiction of this Court.

25                         8.

26         IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all

27  ground waters found within areas of younger alluvial deposits within

28  the Naval Enclave and within the Santa Margarita River watershed

29  as said deposits have been described in the Findings of Fact and

30  Conclusions of Law herein and as such younger alluvial deposits

31  are delineated upon U. S. Exhibits 37, 67 and 70 incorporated

1 into this Interlocutory Judgment by reference constitute the sub-
2 surface flow of the Santa Margarita River or a tributary thereto,
3 and that the bed and banks of such sub-surface flow of the Santa
4 Margarita River, or a tributary thereto, are the deposits of con-
5 solidated rock, basement complex or weathered basement complex
6 that contain said younger alluvial deposits.

7                                 9.

8          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all
9 surface waters which flow over and upon any of the lands within
10 the Naval Enclave and within the Santa Margarita River watershed
11 are a part of the Santa Margarita River or a tributary thereto
12 and subject to the continuing jurisdiction of this Court.

13                                 10.

14          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all
15 ground waters found within areas of deposits of consolidated
16 rock, basement complex or weathered basement complex as said
17 deposits are depicted on U. S. Exhibits 37, 67 and 70 and within
18 the Santa Margarita River watershed and the Naval Enclave do not
19 add to, support nor contribute to the Santa Margarita River or
20 any tributary thereto and are local, vagrant, percolating waters
21 not a part of said River or any tributary thereto.

22                                 11.

23          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
24 rights of the United States of America as the owner of the lands
25 referred to in Paragraph 10 of this Interlocutory Judgment and
26 its successors and assigns to the use of said ground waters are
27 forever quieted in the United States of America and its successors
28 and assigns, and against all other parties having rights to the
29 use of the waters of Santa Margarita River or its tributaries, or
30 waters which add to and support said River or its tributaries,
31 their heirs, successors and assigns.

2145

1                              12.

2              IT IS FURTHER ORDERED, ADJUDGED AND DECREED that

3    except as to the use of waters as considered in Interlocutory

4    Judgment No. 24 (Lake O'Neil) and the use of the waters to

5    maintain native grasses and vegetation cover and the uses of

6    water in minor surface impoundments which may not be proper

7    riparian uses, all uses of the waters of the Santa Margarita

8    River and its tributaries within the Naval Enclave and within

9    the Santa Margarita River watershed by the United States of

10   America are, as to their character, reasonable and beneficial

11   riparian uses.

12                             13.

13             IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all

14   uses of the waters of the Santa Margarita River by the United

15   States of America within the Naval Enclave but outside the water-

16   shed of the Santa Margarita River are beneficial uses, but that

17   such uses are not being made, nor have they been made pursuant to

18   any water right recognized or provided by the laws of the State

19   of California; that notwithstanding the fact that said uses without

20   the watershed are without right, they are not unlawful or wrongful

21   in that the United States of America, as the last water user on the

22   stream, may use the waters which are physically available on or

23   within its lands at such location as it elects.

24                             14.

25             IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this

26   Court does not at this time pass upon the question of whether the

27   maintaining of natural grasses and vegetation cover on the lands of

28   the Naval Enclave within the Santa Margarita River watershed is or

29   will be in the future a reasonable use of water in view of the other

30   purposes for which water has been and will be used.  Jurisdiction is

31   herein reserved to determine at such future time as an apportionment

1  proceeding or regulation proceeding is presented the issue as to
2  whether the maintaining of natural grasses and vegetation cover is
3  a reasonable use of water and such issue will be determined at that
4  time based upon the facts as may then appear and pursuant to the
5  laws of the State of California.

6                                    15.

7              IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all uses
8  of the waters of the Santa Margarita River by the United States of
9  America within the Naval Enclave and both within and without the
10 watershed of the Santa Margarita River other than those uses for
11 stock watering, irrigation and sub-irrigation and the maintenance
12 of a fresh water barrier to prevent salt water intrusion are as to
13 their characteristics municipal uses.

14                                   16.

15             IT IS FURTHER ORDERED, ADJUDGED AND DECREED that no
16 determination is to be made at this time in this Interlocutory
17 Judgment as to the reasonableness of the amounts of water of
18 the Santa Margarita River used by the United States of America
19 within the Naval Enclave in that this issue can only be deter-
20 mined at such time as the Court may be concerned with an apportion-
21 ment or regulation proceeding.  Jurisdiction is expressly reserved
22 to decide this issue in the future should the need occur and such
23 issue will be determined by the facts as they then appear and
24 pursuant to the laws of the State of California.

25                                   17.

26             IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
27 United States of America has no rights to the use of the waters
28 of the Santa Margarita River on the lands which comprise the
29 Naval Enclave except as such rights have been specifically set
30 forth in Interlocutory Judgment No. 24 (Lake O'Neil) or in this
31 Interlocutory Judgment.

                                   61

                                                    2147

1                                    18.

2            . IT IS FURTHER ORDERED, ADJUDGED AND DECREED that except

3    as to reasonable and proper riparian uses on lands within the

4    Naval Enclave upstream from the  point of confluence of the Santa

5    Margarita River with DeLuz Creek in Section 29, Township 9 South,

6    Range 4West, S.B.M., and such rights to the use of water as provided

7    in Interlocutory Judgment No. 24 (Lake O'Neil), no upstream

8    riparian, overlying owner, prescriptor or appropriator shall be

9    required to release water or curtail reasonable and beneficial water

10   uses so as to allow water to reach the Naval Enclave for any pur-

11   pose unless and until water exportation by the United States of

12   America from ~~within~~ the Santa Margarita River watershed is

13   abandoned and the ground water levels within the younger alluvial

14   deposits downstream from said point of confluence of said DeLuz

15   Creek with the Santa Margarita River have been restored to that level

16   at which they would have been if such exportation had not taken

17   place.

18                                   19.

19           IT IS FURTHER ORDERED, ADJUDGED AND DECREED that except

20   as to such rights, if any, which may be permitted or authorized

21   pursuant to the laws of the State of California under the appro-

22   priative rights considered in Interlocutory Judgment No. 24

23   (Lake O'Neil), the United States of America has no right to compel

24   any Santa Margarita River water user upstream from the Naval En-

25   clave to release water or curtail upstream water use so as to

26   allow such water to reach the Naval Enclave for the purpose of

27   exportation without the Santa Margarita River watershed.

28                                   20.

29           IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

30   issue of apportionment has not been presented at this stage of

31   the proceeding, and this Court has taken no evidence directed to

2148

1 establishing whether the use of any waters herein adjudged to be

2 subject to the continuing jurisdiction of this Court are

3 reasonable or unreasonable as to amount of water used in the light

4 of rights which may exist as to such waters; and this issue is

5 left open, is not decided herein and shall belitigated by this

6 Court if and when in the future it becomes necessary to do so

7 and pursuant to California law.

8                                     21.

9          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that uses of

10 the waters of the Santa Margarita River by the United States of

11 America within the Naval Enclave and outside the Santa Margarita

12 River watershed have not and will not in the future give rise to

13 any right to the use of waters enforceable against any upstream

14 appropriator, prescriptor, riparian or overlying owner.

15                                     22.

16          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

17 Stipulation as set forth in Finding of Fact 47 has at all times

18 since November 29, 1951, been in full force and effect and the

19 provisions thereof were and are binding on the United States of

20 America and the State of California.

21                                     23.

22          IT IS FURTHER ORDERED, ADJUDGED AND DECREED based upon

23 the decision of the United States Court of Appeals for the Ninth

24 Circuit in the case of California vs. United States, 235 F.2d 645,

25 that this is not a final decree, but is interlocutory in character

26 and by reason of the Order by this Court that all parties are

27 adverse, one to the other, thus dispensing with cross pleadings,

28 all parties to these proceedings may object to these Findings of

29 Fact, Conclusions of Law and Interlocutory Judgment, and will be

30 given full opportunity upon due notice to interpose their ob-

31 jections prior to entry of final judgment in this case.

2149

1                            24.

2            IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this

3 Interlocutory Judgment is not intended to nor does it apply to any

4 lands of the United States of America other than those lands

5 within the Naval Enclave as said lands are described in Finding of

6 Fact 1 herein; that other lands owned or supervised by the United

7 States of  America such as Forest Service lands and Indian Reser-

8 vation lands will be covered in other Findings of Fact, Conclusions

9 of Law and Interlocutory Judgments in this Cause.

10                           25.

11           IT IS FURTHER ORDERED, ADJUDGED AND DECREED that no

12 unlawful or wrongful act of any defendant in this cause has

13 resulted in salt water intrusion into the waters contained within

14 the younger alluvial deposits  heretofore adjudged to be a part of

15 the underground flow of the Santa Margarita River.

16                           26.

17           IT IS FURTHER ORDERED, ADJUDGED AND DECREED that except

18 as is provided in Interlocutory Judgment No. 24 (Lake O'Neil), the

19 construction or maintenance of any structure for the impoundment

20 of surface runoff of the waters of the Santa Margarita River and/or

21 its tributaries within the Naval Enclave has not resulted in the

22 acquisition by the United States of America of any appropriative or

23 prescriptive right against any party to this cause and the continued

24 maintenance of such structures or the impoundment of waters therein

25 shall not in the future give rise to any appropriative or prescrip-

26 tive right to the use of such waters against any party in this cause,

27 his heirs, successors or assigns.

28                           27.

29           IT IS FURTHER ORDERED, ADJUDGED AND DECREED that juris-

30 diction is reserved to enter Findings of Fact, Conclusions of Law

31 and Judgment as to the issue of exclusive jurisdiction at such time

                            64

1 as the case of Paul v. United States, Case No. 239, October Term,
2 1961, is final.

3                              28.

4          IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this
5 Interlocutory Judgment is not appealable, is not final, and shall
6 not be operative until made a part of the final judgment; and
7 this Court expressly reserves jurisdiction to modify or vacate it
8 either upon its own motion or upon motion of any party to this
9 proceeding until such time as the final judgment in this cause is
10 entered.

11          Dated:  4 - 6 - 62

12

13                            _____
                                        JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

30

31

2151

# TABULATION OF GROSS AND IRRIGABLE LANDS
## AND
## WATER POINTS WITHIN THE
## SANTA MARGARITA RIVER WATERSHED
## OF THE
## NAVAL ENCLAVE

2152

*Exhibit B*

TABULATION OF GROSS AND IRRIGABLE LANDS

AND

WATER POINTS WITHIN THE

SANTA MARGARITA RIVER WATERSHED

OF THE

NAVAL ENCLAVE

By Office of Ground Water Resources

2153

## INDEX

Page

1      Table I      - Gross and Irrigable Acreage

2      Table II     - Wells

3      Table III    - Water Duty

4      Description of Naval Ammunition Depot Diversion

5-6    Description of Lake O'Neill Diversion

7      Table IV     - Applied Duty of Water

2154

TABLE I
GROSS AND IRRIGABLE ACREAGE

|  | Irrigable | Non-Irrigable | Total |
|---|---|---|---|
| Naval Ammunition Depot Acquired by Decree Filed 21 January 1942 | 4,858 | 2,080 | 6,938 |
| Fallbrook Creek Watershed | 2,952 | 856 | 3,808 |
| Riparian to Santa Margarita River | 624 | 1,081 | 1,705 |
| Remainder | 1,282 | 143 | 1,425 |
| Camp Pendleton Acquired by Decree Filed 5 January 1943 | 13,974 | 14,575 | 28,549 |
| Acquired by Decree Filed 22 December 1943 | 115 | 1,583 | 1,698 |
| Riparian to Roblar Creek | 33 | | |
| Riparian to De Luz Creek | 39 | | |
| Acquired by Public Land Order No. 293 Dated 8 August 1945 | 0 | 1,509 | 1,509 |
| Totals | 18,947 | 19,747 | 38,694 |

## TABLE II
### WELLS WITHIN THE UNITED STATES NAVAL ENCLAVE
### AND WITHIN THE SANTA MARGARITA RIVER WATERSHED

| Well Number | Use |
|---|---|
| 9/4  14N1 | Camp Supply |
| 9/4  26M1 | Camp Supply |
| 9/4  29L1 | Camp Supply |
| 10/4  5D1 | Camp Supply |
| 10/4  7A2 | Camp Supply |
| 10/4  7H2 | Camp Supply |
| 10/4  7R2 | Camp Supply |
| 10/4  18E1 | Camp Supply |
| 10/4  18M4 | Camp Supply |
| 10/5  13R2 | Camp Supply |
| 10/5  23J1 | Camp Supply |
| 10/5  23K1 | Camp Supply |
| 10/5  26C1 | Irrigation |
| 10/5  26F1 | Irrigation |
| 10/5  35K1 | Irrigation |
| 11/5  2A1 | Camp Supply |
| 11/5  2D3 | Irrigation |
| 11/5  2E1 | Irrigation |
| 11/5  2F1 | Irrigation |

2

2156

## TABLE III

### WATER DUTY FOR AGRICULTURAL CROPS
Grown in the Santa Margarita Watershed

| CROP | YEARLY WATER DUTY Ac-Ft/Acre |
|---|---|
| Truck Gardening | 1.67 |
| Avocados | 2.35 |
| Citrus | 1.86 |
| Alfalfa | 3.00 |
| Deciduous | 1.07 |
| Mixed, Citrus Deciduous Avocados | 2.35 |
| Pasture | 3.83 |
| Row Crops (Commercial) | 4.00 |
| Small Grains (Oat, Wheat, Barley, etc.) | 1.75 |

3

2157

## NAVAL AMMUNITION DEPOT DIVERSION
## ON SANTA MARGARITA RIVER

The Naval Ammunition Depot water supply system consists of a
diversion located on the Santa Margarita River in T9S, R4W, 14N. This
diversion consists of an infiltration gallery laid beneath the river
bed. The gallery extends approximately 164 feet from the west bank
to the east bank of the river. It is composed of a horizontal con-
crete pipe entrenched normal to the river bed and averaging 15 to 19
feet in depth. This pipe is an 18 inch reinforced concrete pipe
with 4 inch openings on the top half, spaced 90 degrees apart, and
at two feet intervals. Around the pipe is a rock filled envelope
consisting of 1 cubic feet or larger rocks. The water is discharged
from the gallery through the pipe to a collecting well on the east
bank of the stream.

The collecting well is 60 inches in diameter, 40 feet deep, and
has a 60 inch precast concrete casing on the portion of the well
above bedrock.

The water is pumped from the collecting well to a steel desand-
ing tank which discharges into a 20 foot diameter wooden surge tank.
From here it is pumped through an 8 inch cement lined, cement covered
pipe, approximately 3,000 feet in length, into a 1,000,000 gallon
concrete reservoir. From the reservoir the water passes through a
chlorinator and into a 10 inch pipeline to the water distribution
system. Tied to this water system is an emergency 100,000 gallon
capacity elevated tank situated at T9S, R4W, 23J.

4

## LAKE O'NEILL DIVERSION DITCH

The Lake O'Neill Diversion Ditch, henceforth called O'Neill Ditch rises in the Southwest Quarter of the Northwest Quarter of Section 5, Township 10 South, Range 4 West, San Bernardino Base and Meridian, where water is diverted from the Santa Margarita River by means of a weir dam.  This dam is a barrier of quarried rock normal to the stream and embedded in the river bed for approximately sixteen feet.  The weir dam will divert a maximum of 100 c.f.s. into O'Neill Ditch.  From its point of beginning the ditch runs Southerly through the said Southwest Quarter of the Northwest Quarter of Section 5, said Township and Range for a distance of approximately 300 feet where it passes through a control structure composed of two 36 inch culverts with control gates on them.  These gates can vary the flow from zero to 100 c.f.s.  The ditch continues in a Southerly direction for a distance of about 400 feet where it passes through a modified five foot Parshall flume whose theoretical capacity is 100 c.f.s.  The head on the flume is recorded continuously by a Stevens Water Level Recorder installed at the flume. The ditch then continues in its Southerly direction for a distance of about 600 feet into the Northwest Quarter of the Southwest Quarter of said Section 5 where it passes through a division box which allows water to be diverted into the off-channel spreading basins, continue down the ditch, or both.  Then the ditch runs Southeasterly for a distance of about 350 feet where it passes through a three foot Parshall Flume with an approximate capacity of 75 c.f.s. and the water level is recorded by a Stevens Water Level Recorder installed at the flume.  The ditch continues Southeasterly for a distance of approximately 825 feet; thence Southerly for a distance of approximately 1600 feet through the Southwest Quarter of the Southwest Quarter of said Section 5, said Township and Range and into the Northwest Quarter of the Northwest Quarter of Section 8, said Township and Range into a division box where water may be diverted through a culvert into Lake O'Neill, allowed to pass on into the Lake O'Neill spillway ditch, or both.  At the end of the culvert where it empties into the lake there is a gate that will control the flow into the lake as desired.

Lake O'Neill lies within Sections 5 and 8, Township 10 South, Range 4 West, San Bernardino Base and Meridian, the bounds of which at maximum capacity are as follows:  Beginning in the South line of the Northeast Quarter of the Northwest Quarter of Section 8, said Township and Range; thence Northeasterly through said Northeast Quarter of the Northwest Quarter and the Northwest Quarter of the Northeast Quarter of said Section 8 and into the Southwest Quarter of the Southeast Quarter of Section 5, said Township and Range; thence continuing North and Easterly touching the Southeast Quarter of the Southeast Quarter of said Section 5 and thence Northwesterly through the said Southwest Quarter of the Southeast Quarter and the Northwest Quarter of the Southeast Quarter, the Southeast

5

2159

Corner of the Southeast Quarter of the Northwest Quarter; thence South
through said Southeast Quarter of the Northwest Quarter, Northeast
Quarter of the Southwest Quarter and the Southeast Quarter of the Southwest
Quarter of said Section 5, said Township and Range and into the Northwest
Corner of the Northeast Quarter of the Northwest Quarter of Section 8,
said Township and Range; thence Southwesterly into the Northeast Corner
of the Northwest Quarter of the Northwest Quarter; thence Southeasterly
through said Northwest Quarter of the Northwest Quarter and the Northeast
Quarter of the Northwest Quarter to the point of beginning.

2160

Table IV
Applied Duty of Water

Santa Margarita Watershed within Camp Pendleton, California

Irrigation Requirements Acre Feet

| | Acres | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Total | Total Requirement Ac Ft/Yr |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cross (2 crops) | 6,502 | 0.25 / 1,625.5 | 0.25 / 1,625.5 | 0.25 / 1,625.5 | 0.25 / 1,625.5 | 0.50 / 3,251 | 0.50 / 3,251 | 0.50 / 3,251 | 0.50 / 3,251 | 0.25 / 1,625.5 | 0.25 / 1,625.5 | 0.25 / 1,625.5 | 0.25 / 1,625.5 | 4.00 | 26,008.0 |
| Crops | | | | | | | | | | | | | | | |
| Avacados | 2,140 | 0.00 / - | 0.00 / - | 0.00 / - | 0.12 / 256.8 | 0.26 / 556.4 | 0.26 / 556.4 | 0.28 / 599.2 | 0.28 / 599.2 | 0.28 / 599.2 | 0.26 / 556.4 | 0.12 / 256.8 | 0.00 / - | 1.86 | 3,980.4 |
| Avacados | 7,246 | 0.00 / - | 0.00 / - | 0.00 / - | 0.17 / 1,231.8 | 0.33 / 2,391.2 | 0.33 / 2,391.2 | 0.34 / 2,463.6 | 0.34 / 2,463.6 | 0.34 / 2,463.6 | 0.33 / 2,391.2 | 0.17 / 1,231.8 | - | 2.35 | 17,028.0 |
| Irrigated Pastures | 3,059 | 0.00 / - | 0.00 / - | 0.20 / 611.8 | 0.40 / 1,223.6 | 0.40 / 1,223.6 | 0.43 / 1,315.4 | 0.60 / 1,835.4 | 0.60 / 1,835.4 | 0.60 / 1,835.4 | 0.40 / 1,223.6 | 0.20 / 611.8 | 0.00 / - | 3.83 | 11,716.0 |
| Total Irrigable | 18,947 | 1,625.5 | 1,625.5 | 2,237.3 | 4,337.7 | 7,422.2 | 7,514 | 8,149.2 | 8,149.2 | 6,523.7 | 5,796.7 | 3,725.9 | 1,625.5 | 58,732.4 | |
| Percent of Water Used | | 2.8 | 2.8 | 3.8 | 7.4 | 12.5 | 12.8 | 13.9 | 13.9 | 11.1 | 9.9 | 6.3 | 2.8 | 100% | |
| Grazing | 19,605 | | | | | | | | | | | | | | |
| Fish Water Surfaces | 142 | | | | | | | | | | | | | | |
| Total Area | 38,694 | | | | | | | | | | | | | | |

OFFICE OF GROUND WATER RESOURCES
November 1958

*Add 10% for Project Duty to take care of losses from point of diversion to the field.

7

2161