FILED
JUN 13 1962
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By /s/ _____ DEPUTY

RAMSEY CLARK
Assistant Attorney General
Department of Justice
Washington 25, D. C.

Attorney for the UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) | No. 1247-SD-C |
|---|---|---|
| Plaintiff, | ) | MOTION OF THE UNITED STATES FOR A DETERMINATION OF ITS RIGHT TO EXPORT WATER FROM THE SANTA MARGARITA WATERSHED |
| v. | ) | |
| FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., | ) | |
| Defendants. | ) | |

Comes now the United States and respectfully moves the Court to declare and determine that the rights of the United States to use waters of the Santa Margarita River on portions of the Naval Enclave outside that watershed are prior and superior to all appropriative rights initiated subsequent to the time the United States initiated diversions for such use.

Dated this 7th day of June, 1962.

UNITED STATES OF AMERICA

/s/ Ramsey Clark
RAMSEY CLARK,
Assistant Attorney General

/s/ David R. Warner
DAVID R. WARNER,
Attorney, Department of Justice

/s/ William H. Veeder
WILLIAM H. VEEDER,
Attorney, Department of Justice

6823

RAMSEY CLARK
Assistant Attorney General
Department of Justice
Washington 25, D. C.

Attorney for the UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil No. 1247-SD-C |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM IN SUPPORT OF MOTION |
| FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., | ) | |
| Defendants. | ) | |

Continuously since 1942-1943, when it acquired the Rancho Santa Margarita, the United States has exported waters from the Santa Margarita watershed for use on portions of the Naval Enclave outside of that watershed. Between 1942 and 1945, the major installations on this vital $200,000,000 defense facility were constructed. The United States exports 60% of the waters it uses from the Santa Margarita River to those installations outside that watershed.

When the United States manifested an intent to export unappropriated water from the Santa Margarita watershed and proceeded with the exportation, it performed every act necessary to prevent interference with its use of such waters then and thereafter.

Neither the State of California, its corporations or citizens can thereafter under its laws deprive the United States of the rights so secured by filing a paper with the State Water Resources Board, by physical seizure or otherwise.

The Congress of the United States acting under the powers delegated

- 1 -

6824

it by the Constitution authorized the acquisition and operation of the military establishments on the Naval Enclave. Authorized, as essential to the operation of the military facilities, was full use of the property and its attendant rights for the purposes of the Marine Corps. None of its functions was subject to the regulation of the State Government, for the United States was acting with the power delegated it by the Constitution, and "* * * the government of the Union, though limited in its powers, is supreme within its sphere of action." McCulloch v. Maryland, 17 U. S. 315, 405 (1819).   That Marines training at Camp Pendleton in 1943 would have as great a need for water as they would fighting on Tarawa, Iwo Jima, and Okinawa is manifest. That Congress authorized their use of available water both places is equally manifest. At Pendleton the unappropriated water was clearly available to fulfill the needs of the Marine Corps and the Corps was authorized to use it to fulfill those needs. The authority came from the Congress, the exercise from the executive, and now the determination of right must come from the judiciary.

The question is, then, whether the United States in the performance of its authorized functions, including the acquisition and exercise of rights to the use of water where the use of water is essential as it is to operation of the establishments within the Naval Enclave, must comply with the police regulations of a State. This question, in a variety of forms, has been before the Supreme Court many times. The answer today, as it was in 1787, must be in the negative. It has never been more clearly or succinctly stated than in Arizona v. California, 283 U. S. 423, 451-2 (1930):

> The United States may perform its functions without conforming to the police regulations of a State. * * * If Congress has power to authorize the construction of the dam and reservoir, Wilbur [Secretary of the Interior] is under no obligation to submit the plans and specifications to the State Engineer for approval.

See, (Article VI, Clause 2, Constitution of the United States), P.U.C. of Calif. v. United States, 355 U. S. 534 (1958); McCulloch v. Maryland, 17 U. S. 315, 405 (1819); Johnson v. Maryland, 254 U. S. 51, 57 (1920); Federal Power Commission v. Oregon, 349 U. S. 435, 445 (1954); Ivanhoe Irr. Dist. v. McCracken, 357 U. S. 275, 295 (1957); United States v. Rio Grande Irr. Dist.,

174 U.S. 690 (1899); Nevada v. United States, 165 F. Supp. 600 (D. Ct. Nev., 1958); affirmed on other grounds, 279 Fed 2d. 699 (C. A. 9, 1960)

Since the State cannot exercise its police power to control the United States' conduct of its authorized activities, the California statutory procedure regulating the appropriation of rights to the use of water is irrelevant to determination of whether by its diversion and application of water to beneficial use outside the watershed the United States has a valid right to continue such diversions.

The Marines at Pendleton in 1943 were under no greater compulsion to seek permission to divert and use waters on federal property for military purposes from State officials than they were to seek licenses to bear firearms. They were performing federal functions and were not subject to State regulation.

The California Water Rights Board has, and has had, no jurisdiction within the Naval Enclave since the State ceded exclusive jurisdiction to the United States. For this reason, even if the United States filed an application the Board would be without jurisdiction over the territory to which the application pertained and its action a nullity. It was without power to add to or detract from a water right existing upon the Enclave, as it was without power to interfere with, or authorize interference with, water rights of the United States.

The stipulation of November 29, 1951, in which it was stated the United States claims only such rights to the use of water as it acquired when it purchased the Rancho Santa Margarita plus rights gained by prescription or use or both since acquisition and that its rights are to be measured in accordance with the law of the State of California cannot detract from the rights secured as described above. First the stipulation specifically contemplated the establishment of rights by use subsequent to purchase of the ranch. Second it did not and could not subject the exercise of federal functions to state police powers, or divest the United States of real property. To measure by the standards of California law is in no wise to require the filing of papers with the State Water Resources Board. Moreover the laws of California are subject to the Constitution of the United States

6826

and written into them is federal immunity from State interference. "It is of the very essence of supremacy, to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their influence." McCulloch v. Maryland, 17 U. S. 315, 427 (1819).

UNITED STATES OF AMERICA

RAMSEY CLARK,
Assistant Attorney General

DAVID R. WARNER,
Attorney, Department of Justice

Dated: June 8 1962

WILLIAM H. VEEDER,
Attorney, Department of Justice.

- 4 -

6827