RAMSEY CLARK
Assistant Attorney General
U. S. Department of Justice



LODGED
JUL 3 - 1962
CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By William Luce
DEPUTY

1247-SD-C

THE RESOURCES AGENCY OF CALIFORNIA
STATE WATER RIGHTS BOARD
P. O. Box 1592
SACRAMENTO, CALIFORNIA

| | |
|---|---|
| TO: | STATEMENT OF THE UNITED STATES OF AMERICA RESPECTING INTENTION TO CONSTRUCT A DAM WITHIN THE NAVAL ENCLAVE ON THE SANTA MARGARITA RIVER |
| STATE OF CALIFORNIA | |
| STATE WATER RIGHTS BOARD | |

    The United States of America, in the interests of comity between the United States and the State of California and in the furtherance of cooperation between the United States and the State for the fullest development, conservation, and utilization of the water resources of the Santa Margarita River system, shows:

I

    During 1942 and 1943 the United States acquired the Rancho Santa Margarita in San Diego County, California, consisting of approximately 133,000 acres of land, acquired certain other smaller tracts, withdrew some of its public lands, and established on those properties three military installations: Camp Pendleton, United States Naval Ammunition Depot, and United States Naval Hospital, hereinafter referred to as the Naval Enclave.

II

    The Santa Margarita River traverses the Naval Enclave for the last 21 miles of its course to the Pacific Ocean. This river system is the principal source of water supply for the Enclave. For approximately 20 years the United States has pumped waters from the Santa Margarita Coastal Basin, the waters of which are a part of and are recharged by the Santa Margarita River, has made surface impoundments, and has otherwise beneficially used the waters

- 1 -

6835

1  of the stream for military and agricultural purposes.

                            III

3  The rights to the use of water in the Santa Margarita River and its
4  tributaries are the res or subject matter of the case entitled United States
5  of America v. Fallbrook Public Utility District, et al., in the United States
6  District Court for the Southern District of California, Southern Division,
7  No. 1247-SD-C, which case is now being tried.

                            IV

9  The State of California has intervened in that case, is now
10 represented by its Attorney General, the Honorable Stanley Mosk, and is
11 actively participating in the trial.

                            V

13 The record in the pending litigation shows, and all parties agree,
14 that the runoff of the Santa Margarita River is erratic and fluctuates between
15 periods of severe drought and infrequent floods of short duration when the
16 surface waters of the stream far exceed the demands on the stream. In order
17 to conserve flood waters for beneficial use in times of shortage, both the
18 United States and the State of California have made extensive and comprehensive
19 investigations as to the best location of a structure to impound surplus surface
20 water. On the basis of these investigations the United States and the State
21 are agreed that the best location for such a structure, in order to achieve
22 the greatest storage potential from the standpoint of both conservation of
23 water resources and economic feasibility, is within the Naval Enclave shortly
24 below the confluence of DeLuz Creek with the Santa Margarita River.

                            VI

26 The Department of the Navy is going forward with plans pursuant to
27 which Congress will be requested to authorize and provide funds for the
28 construction of a dam at the DeLuz site. The size of the structure for which
29 it will be recommended that funds be appropriated has not been finally
30 determined but studies on which such recommendation will be based are now in
31 progress and a reservoir with a storage capacity of approximately 150,000
32 acre-feet is indicated. However, the size and design of the structure to be

- 2 -

6836

recommended will be such as to provide for maximum flood control and conservation benefits consistent with sound principles of economic feasibility. It is expected that when the dam is constructed, it will be operated to provide water for use by the United States on the Naval Enclave, in addition to the yield of its riparian, overlying and other vested rights as determined in the above-mentioned case of the United States of America v. Fallbrook Public Utility District, et al. The surplus waters stored in the reservoir will be available for use by other water users as may be authorized by the Act of Congress or the Department of the Navy. Further, the reservoir will also reduce demands on upstream sources to satisfy the vested water rights of the United States on the Naval Enclave.

VII

The major litigants in the case of the United States of America v. Fallbrook Public Utility District, et al., referred to above, are presently attempting to arrive at an agreement that will terminate by an effective decree such litigation and will provide a physical solution that will yield the greatest benefit to the watershed and owners of water rights thereon. As a consequence, the construction of a dam by the United States of America at the DeLuz site is of major importance in the accomplishment of such termination, physical solution, and effective decree.

VIII

In the interest of comity and for the benefit of the Board, the United States of America will present to the Board its engineering plans and specifications concerned with the DeLuz Dam and will, if desired by the Board, make available an engineer or other qualified person to explain or amplify such engineering plans and studies.

IT IS RESPECTFULLY RECOMMENDED to the State Water Rights Board, in the exercise of its broad discretionary powers respecting the issuance of permits and licenses that it:

1. Refrain from issuing permits which would conflict with water rights adjudicated in United States of America v. Fallbrook Public Utility District, et al.

- 3 -

6837

2. Defer until January 1, 1964, or until Congress rejects the plans for the DeLuz Dam, whichever occurs first, the issuance of all permits to appropriate waters of the Santa Margarita River Stream System which would affect the availability of water at DeLuz Dam and advise the United States of America of the Board's willingness to defer such action.

3. In the event Congress, prior to January 1, 1964, authorizes construction of the DeLuz Dam and appropriates funds therefor, all applications for permits to appropriate rights to the use of the waters of the Santa Margarita River Stream System now pending or hereafter filed be denied, or if issued, be made subordinate to the use of water at the DeLuz Dam to the extent of the reservoir capacity as it may ultimately be constructed pursuant to such Congressional authorization.

UNITED STATES OF AMERICA

s/ Kenneth E. BeLieu
Secretary of the Navy

s/ Ramsey Clark
Assistant Attorney General

- 4 -

6838

1  In the interests of comity between the United States and the
2  State of California and in the furtherance of cooperation among the United
3  States, the State of California and other owners of rights to use the waters
4  of the Santa Margarita River Stream System for the fullest development,
5  conservation, and utilization of that system, the undersigned join in the
6  foregoing recommendations to the State Water Rights Board.

July 3rd, 1962

        s/  F. G. Girard
            STANLEY MOSK, Attorney General
              of the State of California
            F. G. GIRARD,
              Deputy Attorney General

        s/  George Stahlman
            GEORGE STAHLMAN,
            Attorney for Vail Company

        s/  Franz R. Sachse
            FRANZ R. SACHSE,
            Attorney for Fallbrook Public
              Utility District

6839

GPO 16—29995-1