```
 1  STANLEY MOSK, Attorney General
       of the State of California
 2  F. G. GIRARD, Deputy Attorney General
    Library and Courts Building
 3  Sacramento 14, California
    HIckory 5-4711, Ext. 5448
 4
    Attorneys for Plaintiff
 5
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

LODGED
JAN 11 1963
CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>FALLBROOK PUBLIC UTILITIES<br>DISTRICT, et al.,<br><br>    Defendants. | Civil No. 1247-SD-C<br><br>FINDINGS OF FACT,<br>CONCLUSIONS OF LAW,<br>AND INTERLOCUTORY<br>JUDGMENT NO. 43<br>REGARDING GIBBON<br>AND COTTLE LANDS |

## FINDINGS OF FACT

1. That the lands of defendants Katherine C. Gibbon and William W. Cottle are located in general in southern Riverside County, upstream from Vail Dam; that said lands apparently owned by Katherine C. Gibbon are as follows:

 1. The Southeast 1/4 of the Northwest 1/4 of the of the Southeast 1/4;

 2. The South 1/2 of the Northeast 1/4 of the Northwest 1/4 of the Southeast 1/4;

 3. The East 1/2 of the Southwest 1/4 of the Southeast 1/4;

 4. The Northeast 1/4 of the Southeast 1/4 except that portion lying northeasterly of the center line of the State Highway;

 5. The Southeast 1/4 of the Southeast 1/4, all in Section 19, Township 8 South, Range 1 East, S.B.B.M.;

...

6. That portion of the Northwest 1/4 of the Southwest 1/4 of Section 20, Township 8 South, Range 1 East, S.B.B.M. lying southwesterly of the center line of the State Highway;

7. The Southwest 1/4 of the Southwest 1/4 of Section 20, Township 8 South, Range 1 East, S.B.B.M.;

8. The Northwest 1/4 of the Northwest 1/4; and

9. The Southwest 1/4 of the Northwest 1/4 of Section 29, Township 8 South, Range 1 East, S.B.B.M.;

10. The North 1/2 of the Northeast 1/4; and

11. The Southeast 1/4 of the Northeast 1/4 of Section 30, Township 8 South, Range 1 East, S.B.B.M.

That said lands apparently owned by William W. Cottle are as follows:

All that certain real property situated in the County of Riverside, State of California, and particularly described as follows, to wit:

That portion of the Southwest quarter of the Northeast quarter of Section 19 lying Southerly of the State Highway.

That portion of the Southeast quarter of the Northwest quarter of Section 19 lying Southerly of the State Highway.

That portion of the East half of the Southwest quarter of Section 19 lying Southerly of the State Highway.

The West half of the West half of the Southeast quarter of Section 19.

The North half of the Northeast quarter of the Northwest quarter of the Southeast quarter of Section 19.

16591

1        All in Township 8 South, Range 1 East, San
2     Bernardino Base and Meridian.
3  The lands of Katherine C. Gibbon contain approximately 347.5
4  acres, of which approximately 107.6 are irrigable; the lands
5  of William W. Cottle contain approximately 133.6 acres, of
6  which approximately 62 acres are irrigable.
7        2. That all of said lands abut upon or are traversed
8  by Temecula Creek, a tributary of the Santa Margarita River,
9  and said lands are riparian to Temecula Creek.
10       3. That said lands described above are within the
11 Aguanga Ground Water Area as determined in Findings of Fact,
12 Conclusions of Law, and Interlocutory Judgment No. 40, and
13 this Court herein incorporates by reference those findings of
14 fact set forth in said Interlocutory Judgment No. 40.
15       4. That incorporated herein by reference is United
16 States Exhibit 275, which depicts the areas of younger and
17 older alluvium deposits which comprise said Aguanga Ground
18 Water Area; that all ground waters contained within the younger
19 alluvial deposits on all lands described in Finding 1 above are
20 a part of the flow of Temecula Creek; that all ground waters
21 contained within the older alluvial deposits are not a part
22 of the flow of Temecula Creek, but said ground waters add to,
23 contribute to, and support the Santa Margarita River stream
24 system.
25       5. The evidence in this case shows that the younger
26 alluvial deposits within the lands described in Finding 1 above
27 extend to a depth of approximately 40 feet from land surface
28 and rest upon older alluvial deposits which extend to an esti-
29 mated depth of approximately 365 feet from land surface. At
30 the present time, there are two water producing wells on the
31 property apparently owned by defendant William W. Cottle, and

1 five water producing wells on the property apparently owned
2 by defendant Katherine C. Gibbon. In addition to these wells,
3 there is one other water producing well which is located
4 near or upon the streambed of Temecula Creek, and was drilled
5 upon lands described in Finding 1 above. The defendants
6 William W. Cottle and Katherine C. Gibbon both contend that
7 this well is located upon their specific property separately
8 described in Finding 1. This Court has heard no evidence on
9 the issue as to the ownership of this well and makes no finding
10 or determination on this issue. All of the wells referred to
11 herein are drilled to depths substantially in excess of 40 feet
12 and pump waters contained within the older alluvial deposits.

13        6. That during the trial of this case, defendant
14 Katherine C. Gibbon has constructed a reservoir lined and
15 banked with clay in the easterly portion of the southwest
16 quarter of the southeast quarter of Section 19, Township 8
17 South, Range 1 East, which has a storage capacity of approxi-
18 mately 10 acre feet. It does not appear in this record whether
19 in the operation of this reservoir it will be used for the
20 purpose of obtaining a head for irrigation, or whether it will
21 be used for the purpose of storage of water seasonally. There
22 is no appropriative or prescriptive right to use said reservoir
23 for seasonal storage.

24        7. Except as set forth in Finding 6 above, all uses
25 of the waters of Temecula Creek, or ground waters which add to
26 and contribute to the Santa Margarita River stream system on
27 the lands described above, have been for reasonable and
28 beneficial riparian or overlying purposes.

29        8. Of the 107.6 irrigable acres on the Gibbon land,
30 5.4 acres bear a reasonable average annual diversion duty of
31 4.2 acre feet per acre, and the remaining 102.2 acres bear a

reasonable average annual diversion duty of 4.4 acre feet per acre. The annual average diversion duty for the irrigable acreage on the Gibbon land is 472.5 acre feet. Of the 62 irrigable acres on the Cottle land, 59.1 acres bear a reasonable average annual diversion duty of 4.4 acre feet per acre, and the remaining 2.9 acres bear a reasonable average annual diversion duty of 4.2 acre feet per acre. The average annual diversion duty of the irrigable acreage on the Cottle land is 272.25 acre feet. In addition to the above, use of the waters of Temecula Creek for domestic and other non-irrigation riparian purposes would be a reasonable and beneficial use of water.

That the facts as stated herein in this finding and those concerned with irrigable acreage in Finding 1 are made at this time where the issue of apportionment has not been presented, and this Court has taken no evidence directed to establishing whether any water uses are reasonable or unreasonable as to amount of water used in the light of rights which may exist as to such water, and this issue is left open, is not decided herein, and shall be litigated if and when in the future it becomes necessary to do so. Such facts concerned with irrigable acreage and water duty shall be prima facie evidence as to such factors in subsequent proceedings before this Court in this cause. As used herein, prima facie evidence is that which shall suffice for the proof of a particular fact until contradicted or overcome by other evidence.

9. That upstream from the land described in Finding 1 above and on Temecula Creek in the northeast corner of the southwest quarter of the southwest quarter of Section 29, Township 8 South, Range 1 East, a small weir or diversion structure has been constructed. As a result thereof, water from said Temecula Creek is diverted into an unlined open ditch

-5-

16594

and for short distances a steel pipeline, which ditch and pipeline parallel Temecula Creek unto the lands described in Finding 1 above. That said diverted waters are then applied to said lands for irrigation purposes, either directly or by sprinkler irrigation. That in irrigating said lands, as found herein, there are three storage reservoirs or ponds having a storage capacity of 1.3, 1.6, and 3 acre feet respectively. That in using these three small reservoirs or ponds, there is no seasonal storage, but said reservoirs or ponds have been used and are being used for the purpose of obtaining a head for immediate irrigation.

   10. That the diversion of the waters of Temecula Creek, as set forth in Finding 9 above, commenced in 1885, and that at the time of the initial diversion, the point of diversion was located on government lands, which at that time had not been patented. From 1885 until 1955, the water was diverted from the surface flow of Temecula Creek by the use of temporary earthen embankments which were washed away each year that run-off occurred, and then immediately replaced. These earthen embankments were constructed on the sandy alluvium on the bed of Temecula Creek and did not prevent water from passing through said embankment or from flowing through the sandy alluvium upon which they were constructed. During this period, there was both surface flow and rising waters in Temecula Creek immediately downstream from said diversion point. In 1955 and thereafter, the diversion has been accomplished by the construction of a clay embankment extending through the sandy alluvium of Temecula Creek down to bed rock, which clay embankment is covered with rock and which has been sufficient to withstand the winter run-off flows. That as a result of said change in the physical diversion works, there has been a

1 substantial decrease in the amount of water that moves through
2 said diversion works, and since 1955 almost the entire flow of
3 Temecula Creek at said point of diversion is effectively
4 contained.

5    11. That no diversion or use of either surface or
6 ground water by Katherine C. Gibbon or William W. Cottle or
7 their predecessors, prior to 1955, has been open, notorious,
8 adverse, or hostile to any party in this cause, and no pre-
9 scriptive right to the use of surface or ground waters from
10 any diversion or extraction accomplished by Katherine C.
11 Gibbon or William W. Cottle or their predecessors exists.

12    12. The evidence in this case is insufficient to
13 determine the amount of water actually diverted from Temecula
14 Creek by the diversion works at said point of diversion speci-
15 fically described in Finding 9, but the evidence does show that
16 whatever amount of water was diverted was used on lands riparian
17 to Temecula Creek, and that said waters were used for reasonable
18 and beneficial riparian purposes on said lands.

19    13. That on or about February 11, 1885, S. V. Tripp,
20 a predecessor in interest to defendants Katherine C. Gibbon
21 and William W. Cottle of the lands described in Finding 1 above,
22 recorded in San Diego County a statement to the effect that he
23 claimed all the waters which flowed upstream from the diversion
24 point, as set forth hereinabove in Finding 9. Despite said
25 claim, at no time during any period, including the irrigation
26 season, did said diversion works impound the entire flow, nor
27 is it possible from this record for this Court to determine
28 the amount of waters which were diverted through the diversion
29 facilities onto the lands.

30    That said document recorded on February 11, 1885, did
31 not comply with the statutory provisions of section 1415 of the

California Civil Code, concerned with the statutory method for appropriation of water, and there is no evidence in this case that such statutory provisions of said code were complied with.

14. That the actual use of the waters through said diversion works, as herein found above, was identical to a reasonable and beneficial riparian use of said waters on riparian lands, and this Court finds that said use of said waters on said lands was not a use under the appropriation doctrine, but was in fact and has at all times been a proper riparian use.

15. That there are no appropriate rights to the use of surface waters or underground flow of Temecula Creek on the lands described in Finding 1 above or to ground waters contained within the older alluvial deposits within said lands.

## CONCLUSIONS OF LAW

1. That all surface waters which flow over and upon lands described in Finding 1 above are a part of the Santa Margarita River stream system, and the use of said waters is subject to the continuing jurisdiction of this Court.

2. That all ground waters contained within the younger alluvial deposits on the lands described in Finding 1 above are a part of the underground flow of Temecula Creek, and the use of such waters is subject to the continuing jurisdiction of this Court.

3. That all ground waters contained within the older alluvial deposits on the lands described in Finding 1 above are not a part of the underground flow of Temecula Creek, but said ground waters add to, contribute to, and support the Santa Margarita River stream system, and the use of said waters is

1  subject to the continuing jurisdiction of this Court.

2       4.  That all lands described in Finding 1 above are
3  riparian to Temecula Creek, a tributary of the Santa Margarita
4  River.

5       5.  The owners of the lands described in Finding 1
6  above have a correlative riparian right to the use of the
7  waters of Temecula Creek on said lands.

8       6.  The owners of the lands described in Finding 1
9  above have a correlative overlying right to the use of the
10 ground waters contained within the older alluvial deposits on
11 said lands.

12      7.  That no prescriptive right to the use of the
13 surface or underground flow of Temecula Creek or its tribu-
14 taries on the lands described in Finding 1 exists; that no
15 prescriptive right to the use of ground waters contained within
16 the older alluvial deposits on said lands exists.

17      8.  There are no appropriative rights to use on the
18 lands described in Finding 1 above the surface waters which
19 flow over and upon any of those lands or the ground waters
20 contained within the younger or older alluvial deposits on
21 said lands.

22      9.  All uses past and present (except as to the
23 reservoir described in Finding 6 above) of the waters of
24 Temecula Creek and its tributaries, or the waters contained
25 within the older alluvial deposits on the lands described in
26 Finding 1 above have been reasonable and proper riparian or
27 overlying uses.

28      10.  There is no appropriative or prescriptive right
29 to use the waters of Temecula Creek or its tributaries by
30 storage in the reservoir described in Finding 6 above.

31 ----------

16598

INTERLOCUTORY JUDGMENT

1. IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that all interlocutory judgment provisions set forth in Interlocutory Judgment No. 40 are incorporated into this Interlocutory Judgment by reference.

2. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the owners of the lands described in Finding 1 above have a correlative riparian right to the use of the surface and underground flow of Temecula Creek.

3. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the owners of the lands described in Finding 1 above have a correlative overlying right to the use of ground waters contained within the older alluvial deposits, which underlie said lands; it is further ordered, adjudged, and decreed that said ground waters contained within said older alluvial deposits add to, contribute to, and support the Santa Margarita River stream system, but that said waters are percolating waters and not in a known and definite channel.

4. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the use of the waters of Temecula Creek and the ground waters contained within the older alluvial deposits which underlie the lands described in Finding 1 above are subject to the continuing jurisdiction of this Court.

5. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the issue of apportionment has not been presented, and this Court has taken no evidence directed to establishing whether the use of any waters on the lands described in Finding 1 are reasonable or unreasonable as to the amount of water used in the light of correlative rights which may exist as to such waters, and this issue is left open, is not decided herein, and shall be litigated by this Court if and when in the future

it becomes necessary to do so.

6. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there is no prescriptive right to use the surface or underground flow of Temecula Creek or its tributaries on any lands described in Finding 1 above, nor is there any prescriptive right to use ground waters contained within the older alluvial deposits on any of said lands.

7. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there are no appropriative rights to use the ground waters contained within the older alluvial deposits or the surface or underground flow of Temecula Creek or its tributaries upon any lands described in Finding 1 above.

8. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that based upon the decision of the United States Court of Appeals for the Ninth Circuit, <u>California</u> v. <u>United States</u>, 235 F.2d 647, this is not a final decree, but is interlocutory in character and by reason of the Order of this Court that all parties are adverse one to the other, thus dispensing with cross pleadings, all parties to this proceeding may object to these Findings of Fact, Conclusions of Law, and Interlocutory Judgment, and will be given full opportunity upon due notice to interpose their objections to these Findings of Fact, Conclusions of Law, and Interlocutory Judgment prior to the entry of final judgment in this cause.

9. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Interlocutory Judgment is not appealable, is not final, and shall not be operative until made a part of the final judgment, and this Court expressly reserves jurisdiction to modify or vacate it either upon its own motion or upon motion

16600

1  of any party to this proceeding until such time as final
2  judgment in this cause is entered.
3          DATED:  January _____, 1963.

                                          _____
                                                              JUDGE

16601