# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

vs.                                          No. 1247-SD-C

FALLBROOK PUBLIC UTILITY DISTRICT,
et al.,

                    Defendants.

REPORTER'S TRANSCRIPT OF PROCEEDINGS
DISCUSSIONS RE SETTLEMENT

Place:     San Diego, California   (Grand Jury Room)

Date:      Monday, August 12, 1957

Pages:     127 to 152

**FILED**

SEP 2 4 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211   Ext. 370

1         IN THE UNITED STATES DISTRICT COURT

2         SOUTHERN DISTRICT OF CALIFORNIA

3              SOUTHERN DISTRICT

4               - - -

5   UNITED STATES OF AMERICA,     )
6                Plaintiff,  )
7   vs.                  )     No. 1247-SD-C
8   FALLBROOK PUBLIC UTILITY     )
    DISTRICT, et al.,         )
9              Defendants.  )
10   _____)

11               - - -

12         REPORTER'S TRANSCRIPT OF PROCEEDINGS HAD
          IN CONFERENCE OF ATTORNEYS FOR CERTAIN
13        PARTIES, HELD ON AUGUST 12, 1957, AT 9:00
          A.M. IN THE GRAND JURY ROOM OF THE CUSTOMS
14        & COURTHOUSE BUILDING AT 325 WEST "F" STREET
          IN SAN DIEGO, CALIFORNIA.
15

16              - - -

17   APPEARANCES:

18       For Plaintiff:         WILLIAM H. VEEDER, ESQ.,
19                        Special Assistant to the
                          Attorney General,
20                        Department of Justice,
                          Washington, D. C.

21                         and

22                     WILLIAM E. BURBY, ESQ.,
                         Special Assistant to the
23                        Attorney General,
                          Department of Justice,
24                        Washington, D. C.

25

APPEARANCES:   (continued)

    For defendants Vail Company
    and Willow Glen Property
    Owners' Association:                    GEORGE STAHLMAN, ESQ.

    For defendant Fallbrook Public          SWING, SCHARNIKOW &
    Utility District, et al:                STANIFORTH, by
                                            PHIL D. SWING, ESQ.

    For defendants Mr. & Mrs.
    Raymond C. Flor and
    defendants Faulkner:                    BERT BUZZINI, ESQ.

    For defendants Fallbrook                JAMES DON KELLER, ESQ.,
    Union High School District              District Attorney of
    Fallbrook Union Elementary              San Diego County, by
    School District, Vallecito              DONALD L. CLARK, ESQ.,
    School District and De Luz              Deputy District Attorney
    School District:

    For defendant Willow Glen               J. A. KEPPEL, ESQ.,
    Water Users' Association:                (in pro per)

    For defendant State of                  EDMUND G. BROWN, ESQ.,
    California:                             Attorney General, by
                                            ADOLPHUS MOSKOVITZ, ESQ.,
                                            Deputy Attorney General.

SAN DIEGO, CALIFORNIA, MONDAY, AUGUST 12, 1957, 9:10 A.M.

- - -

MR. VEEDER:  Mr. Chairman, I would like to have the record show that we have been advised by you that this meeting is to adjourn at quarter to ten -- that is, in about 32 minutes, to the end that you may proceed with a State hearing of some kind in regard to the application of the Fallbrook Public Utility District for a permit to impound and utilize water.

We believe that that conduct is not in keeping with either the spirit or the intendment of Judge Carter's order of May 8, 1957.  We believe that such conduct has rendered extremely difficult, if not futile, any possibility of proceeding as Judge Carter has requested us to proceed, namely, to seek some form of settlement.  We believe that the proceedings of the State in this matter -- that is, the hearing -- can have no other effect than drastically to upset the status quo, thus to prejudice grievously, we believe, not only the rights of the United States but the rights of all other people, for we think that the order of Judge Carter of May 8, 1957, was adopted by all of us in the spirit in which it was entered.  We believe that for the State, a party to the proceeding, and for the Fallbrook Public Utility District and the others now to take another

1   step to attempt to perfect rights while we are still engaged

2   in proceedings for settlement can only be viewed as rendering

3   as a travesty this hearing over which you are now presiding,

4   Mr. Moskovitz.  We see it as an assemblage of people who are

5   simply sitting here waiting for adjournment to the end that

6   you, the State of California, and Fallbrook Public Utility

7   District may proceed in a manner which we think is very

8   detrimental to the efforts of the United States and others

9   to settle this litigation.

10          MR. SWING:  Mr. Chairman.

11          MR. MOSKOVITZ:   Mr. Swing.

12          MR. SWING:  I would like to make this statement, in

13   reply to Mr. Veeder's remarks, that the hearing which is set

14   for ten o'clock, in my humble opinion, is in accordance with

15   the spirit of Judge Carter's proceedings and is of assist-

16   ance to the Navy and is of assistance to all parties

17   involved in this suit in ascertaining what are the rights of

18   the various parties herein, and what are the legal rights,

19   and what is the evidence as to the existence of a surplus

20   available from time to time for the State to dispose of

21   under existing State law.

22          Now Mr. Veeder referred to the hearing upon the two

23   applications of Fallbrook.  The hearing is upon the appli-

24   cation of the United States, acting through the Navy, for

25   an appropriation of 165,000 acre feet of water annually to

1   be stored at the De Luz site, and also the application of

2   the Santa Margarita Mutual Water Company.

3           The hearing, I hope, will clarify the situation as

4   to what we call the principal parties in this suit with

5   reference to those who can and ought to work out a physical

6   solution.  It will not bar such a solution.  It will help,

7   in my opinion, such a solution.

8           We have, up to this date, received no offer or

9   suggestion of any kind of physical solution from any of the

10  Government attorneys.  Although they were asked to make such

11  contribution to these conferences, they have failed to do

12  so.

13          I give you two copies -- I have given you too many,

14  because I have to deal one out to some of the others -- I am

15  now in pursuance of the suggestion made by Mr. Veeder and

16  Mr. Moskovitz to Mr. Sachse, who hasn't been able to be

17  here -- of a proposal, so that it will not be said that we

18  have met here sterile without anything in front of us to

19  consider.  We, of course, are virtually adopting the

20  suggestion made by Colonel Robertson at the trial before

21  Judge Yankwich, which is that they wanted to build their own

22  dam of forty to fifty-thousand-acre-foot capacity or what-

23  ever they might determine.

24          MR. MOSKOVITZ:  May I interrupt for a moment, Mr.

25  Swing.

1    Things got off on a tack here that I think is a

2    little out of order.  I did want to give you both an oppor-

3    tunity to --

4         MR. SWING:  I think Mr. Veeder's remarks would be

5    more appropriate at ten o'clock.

6         MR. MOSKOVITZ:  However, it seems to me that, for

7    the purpose of order in the record, at the outset I was

8    about to ask for appearances and the exchange began.  I

9    wonder if we can do that, for the purpose of the record, and

10   then proceed with other business on this matter, which was

11   a continuation of settlement discussions.  Can we begin in

12   the front row with Mr. Veeder and continue down the front

13   row and then back through the other rows?

14        MR. VEEDER:  Mr. William H. Veeder and Mr. William

15   Burby appearing for the United States of America.

16        MR. STAHLMAN:  George Stahlman appearing for Vail

17   Company, and also, in view of the matters before the

18   Committee at this time, I am going to appear on behalf of

19   the Willow Glen Property Owners' Association, a group of

20   small farmers of approximately sixty-some parcels of land on

21   the Santa Margarita River.

22        MR. MOSKOVITZ:  And these are parties to the

23   action?

24        MR. STAHLMAN:  They are all parties to the Federal

25   action that we are sitting on here.

133

1        MR. MOSKOVITZ:  Yes.

2        MR. SWING:  Phil D. Swing, attorney for the Fallbrook

3   Public Utility District and some forty or more individual

4   defendants.

5        MR. MOSKOVITZ:  Anyone else here appearing for

6   parties, in the second row?

7        MR. BUZZINI:  Bert Buzzini for Mr. and Mrs. Raymond

8   C. Falkner.

9        MR. CLARK:  Donald L. Clark, Deputy District

10   Attorney of San Diego County, for James Don Keller, District

11   Attorney of San Diego County, for Fallbrook Union High School

12   District, Fallbrook Union Elementary School District,

13   Vallecito School District, and De Luz School District.

14        MR. MOSKOVITZ:  Anyone else here appearing either

15   for someone else or for himself?

16        MR. KEPPEL:  J. A. Keppel, for the Willow Glen

17   Water Users' Association.

18        MR. MOSKOVITZ:  Mr. Stahlman is your attorney?

19        MR. STAHLMAN:  They appear in the record in propria

20   persona.  However, I shall have some things to say in their

21   behalf.

22        MR. MOSKOVITZ:  I see.

23        MR. MOSKOVITZ:  Anyone else in the back row?

24        I am Adolphus Moskovitz, Deputy Attorney-General

25   of the State of California, for Edmund G. Brown, Attorney-

134

1    General of the State of California, for the people of the

2    State; and there are some members of the Department of

3    Water Resources here who have participated in the past in

4    these discussions and will participate again.

5         I might ask you again, for the purpose of the

6    Reporter, when you speak that you identify yourself.

7         Now gentlemen, if you recall, we met back in --

8         MR. VEEDER:  Mr. Chairman, before proceeding further,

9    if Mr. Swing would care to finish his statement, I have to

10   make a response to him, because the record must be extremely

11   clear that I have suggested a physical solution pursuant to

12   the order.  Apparently it was rejected by the State and by

13   Mr. Swing.

14        I observe that there is no representative here

15   today of the Santa Margarita Mutual Water Company.

16        I also want the record to show that I was handed as

17   of the moment a document marked "Proposal for Physical

18   Solution."  I note that I received it at about twenty minutes

19   after nine, the proceedings having started at ten after nine.

20        I want the record to show the very unusual circum-

21   stances under which this phase of the meeting is being

22   conducted.

23        MR. MOSKOVITZ:  Thank you, Mr. Veeder.

24        If you recall, gentlemen, in July the conference

25   for settlement concluded with the understanding that the

1   "principal parties," as we call them, involved in the

2   settlement -- the United States, the Fallbrook Public Utility

3   District and the Santa Margarita Mutual Water Company --

4   would exchange, and also mail to the other persons and

5   parties who participated in that July 15 meeting, proposals

6   as to how much water they felt should be released below the

7   storage reservoir contemplated by the prospective appropria-

8   tors Fallbrook and Santa Margarita, how much should be

9   released down to the United States in order to satisfy what

10   they felt should be the rights of the United States in a

11   settlement.  As I recall, the agreement was that there would

12   be an exchange five days before today's meeting, which would

13   make it the 7th, and I have not received anything myself

14   and I wondered if those who were asked to submit those have

15   done so up to this date.

16        MR. VEEDER:  Let the record show that the United

17   States of America advised Mr. Swing, counsel for the

18   Fallbrook Public Utility District, that the claims of the

19   United States of America for military requirements were

20   22,900 or, in round figures, 23,000 acre feet.  I have

21   received no statement.  Mr. Sing had not prepared one, he

22   advised me at the time.  He said he would forward one to me.

23   I received something this morning, which I have not had an

24   opportunity to read.

25        I received nothing from the Santa Margarita Mutual

136

1    Water Company.

2           And so far as I know, I want the record to show,

3    Mr. Moskovitz, that I think that you were paraphrasing and

4    speaking from memory when you described what we were to do,

5    and I am not at all sure that I agree entirely with your

6    recollection of what was to be done.

7           MR. SWING:  Mr. Chairman, these copies of these

8    proposals that have just been distributed were ready on

9    Thursday night and could have been mailed by me to Mr. Veeder

10   at Yakima, but it was my opinion that he would get the pro-

11   posal earlier by handing it to him this morning than he would

12   if I mailed it to him at his official address at Yakima or

13   Washington, D. C.  The same with Mr. Moskovitz in Sacramento.

14   I figured it would expedite matters to hand them out here,

15   which I have done.

16          MR. MOSKOVITZ:  Mr. Swing, have you received any-

17   thing in writing from Santa Margarita Mutual Water Company?

18   Mr. Veeder mentioned something that he --

19          MR. SWING:  I received nothing from anybody except

20   the oral statement which Mr. Veeder has repeated here orally

21   as he gave it to me orally.

22          MR. VEEDER:  And which you recorded, Mr. Swing.

23          MR. MOSKOVITZ:  Mr. Veeder is correct that what I

24   stated is my recollection of what was to be done by the

25   parties.  That was my recollection.  It can be verified by

137

1        looking at the transcript, but I don't think we should take

2        the time at this point.

3              Now when we adjourned in July the understanding

4        was that we would meet at nine o'clock and exchange whatever

5        information there was at that time, with the understanding

6        then that there would be a hearing at ten o'clock of the

7        State Water Rights Board, and that we would resume again

8        after that hearing in the afternoon if there was anything

9        that could be discussed fruitfully thereafter.

10             MR. STAHLMAN:  Mr. Chairman, I do not feel that Mr.

11       Veeder's remarks are out of order in relation to this meet-

12       ing.  I am speaking now on behalf of the Willow Glen Property

13       Owners' Association.  The issues in relation to the filing

14       for these permits on both the Fallbrook and the Santa

15       Margarita Mutual Water Company and the protests that have

16       been filed in relation thereto have been a matter of record

17       for many years, and it creates in my mind a wonderment as

18       to why at this particular time, when the matters of settle-

19       ment are to be discussed as the Court indicated and prepara-

20       tions are being made for the trial of this case to determine

21       the issues relative to the water rights, that they should

22       at this particular time proceed to hold this meeting,

23       particularly in view of the fact that the Ninth Circuit

24       Court decision stated that the means by which the waters of

25       the River are to be extracted or diverted and the place for

1   the location of that diversion are matters to be determined

2   by the Federal Court; and in view of the fact that the State

3   Bulletin No. 57 also, in its concluding paragraphs, contained

4   a provision that no dam should be constructed or any work on

5   a dam should be constructed -- words to that effect, I am not

6   quoting it verbatim -- until the rights of the parties are

7   determined, so this hearing at this particular time, insofar

8   as the rights of those small farmers on the River are con-

9   cerned, to hold a meeting of this kind at this time, to

10   which they are not a party, and yet to determine whether or not

11   they are surplus when there have been no water use studies

12   of their part provided -- they have a word in this thing --

13   merely an application for the appropriation and the protest

14   thereto -- it would seem to me that Mr. Veeder's remarks

15   are proper, so as to alert Judge Carter as to what is going

16   on in relation to other parties who are parties to this

17   litigation.

18        MR. SWING:  Mr. Chairman, I must add an addendum to

19   what Mr. Stahlman has just said.  He not only hasn't quoted

20   the Ninth Circuit Court decision literally; he hasn't quoted

21   it even in substance.  There is no place in that opinion

22   where it says that the water rights or the place where

23   water is to be determined is to be determined by Federal

24   laws.  At all times it is that the waters outside the enclave

25   are to be determined by the state laws.

Now with reference to this -- well, the rest of it can go over to ten o'clock.

MR. STAHLMAN:  The decision goes further than that, Mr. Swing.  I think it says that they may decide that the dam should be placed at the De Luz or the Lippincott or some other place.

MR. SWING:  Well, that is your --

MR. MOSKOVITZ:  I think this is a little beside the point of today's meeting.

MR. BURBY:  Mr. Chairman, a point of information.  Might I ask who fixed the time and place for this Water Board meeting?  Is that information available?

MR. MOSKOVITZ:  The California Water Rights Board itself.

MR. BURBY:  Was there any motion made?  And if so, whose motion?

MR. MOSKOVITZ:  I have no information as to that.

MR. BURBY:  Do you know, Mr. Chairman, whether the Board knew of the date of this meeting at the time they fixed that?

MR. MOSKOVITZ:  I do not know whether they did or not.

MR. VEEDER:  Let the record show that, contrary to Mr. Swing's statement, the United States had nothing whatever to do with the State Board hearing, did not desire any

1    action in regard to the application to which Mr. Swing made

2    reference; that we believe it is entirely improper for the

3    State to consider any pending applications at this time.

4            MR. MOSKOVITZ:  Well, gentlemen and Mr. Veeder and --

5            MR. VEEDER:  You could even include me as a

6    gentleman.

7            MR. MOSKOVITZ:  Yes, I am speaking to all.  The

8    question whether the hearing of the Water Rights Board is

9    appropriate or not I don't think is pertinent here, and if

10   that issue ever arises before the Court, I, as the attorney

11   for the State of California, will have something to say on

12   that -- if it ever becomes an issue of importance.  But I do

13   think we have other things we should consider before we have

14   an agreement that we will adjourn or recess.

15           MR. BURBY:  The coincidence of this thing strikes

16   me -- I, of course, had no information as to the time of

17   that meeting, and the fact that it is to be held today, at a

18   time fixed by Judge Carter for this meeting, is a strange

19   coincidence, and I was wondering if you could explain that

20   perhaps.

21           MR. VEEDER:  We hasten to add that we didn't know

22   anything about that this meeting would be reconvened for the

23   sake of the hearing of the State Board.  That is entirely

24   new to me.  Did anyone know about that?

25           MR. MOSKOVITZ:  Mr. Veeder, at the last meeting

1   for discussion of settlement there was a discussion of the

2   conflict of dates toward the end --

3           MR. VEEDER:  I didn't know there was anything said

4   about that we would reconvene after the hearing which I under-

5   stand everyone is to rush to at quarter to ten.

6           MR. MOSKOVITZ:  I think the understanding was that

7   we would meet at nine -- that was the reason we set it for

8   nine o'clock -- and see where we were and see if there was

9   any further need for discussion.  Certainly there is no

10  definite commitment to come together, if the parties feel

11  there is no further need.

12          MR. VEEDER:  Then it is your proposal now that

13  nothing was agreed to before?

14          MR. MOSKOVITZ:  It is not my proposal.  It is my

15  suggestion that if the parties feel they want to discuss it

16  further they can bet together later.

17          MR. BURBY: Mr. Chairman, just one question:  Do you

18  know whether Judge Carter knows of the meeting of the Water

19  Rights Board or not?

20          MR. MOSKOVITZ:  I don't know whether he knows or not.

21          MR. BURBY:  Do you think it would be advisable, for

22  instance, for us to have you, perhaps, as a representative,

23  inform Judge Carter?

24          MR. MOSKOVITZ:  Just a moment.  I think he does know.

25          MR. VEEDER:  As Chairman, I think you should.

1      MR. MOSKOVITZ:   I spoke to Judge Carter this morning,

2  and I believe that was mentioned.

3      MR. BURBY:   I think we should know the views of

4  others who are present here, and also if this is a real

5  intent to get together on a physical solution when Mr. Swing

6  submits to us a copy of a physical solution within a half-

7  hour before we are due to be at some other place.  It would

8  seem to me that is making a mockery out of this solution.  If

9  he is sincere about it, we should have time to digest it and

10  understand it and discuss it.  Here we are in an important

11  meeting -- at least Judge Carter attached great importance to

12  it -- sitting down and trying to get together on this, and

13  then lunging to another State meeting that is being sponsored

14  by interested parties in the Federal case.

15      MR. VEEDER:   Isn't it unusual that you didn't note

16  that you had told Judge Carter about this when you convened

17  the meeting?

18      MR. MOSKOVITZ:   Well, Mr. Veeder, I had hardly any

19  chance to say anything before you opened your mouth and began

20  talking, before anyone even had a chance to introduce himself.

21  This thing has gone off rather uncontrolled.  I wish we

22  could stick to the issues, please, and not discuss the hearing

23  of the Water Rights Board at the present time, if you will.

24      MR. BURBY:   As a matter of fact, I think this meeting

25  of the Water Rights Board comes as close to being contempt of

1   court --

2        MR. MOSKOVITZ:  I think the Court can decide that.

3        MR. BURBY:  -- as you could get, if the Court knew

4   about this.

5        MR. MOSKOVITZ:  I suggest if you think this is contempt

6   of court, you inform the Court afterward.  And at this time,

7   please, in order for us to accomplish what we were ordered

8   to do by the Court, I would ask the parties if they would

9   please direct their discussions as to whether there is any-

10  thing further to say about a physical solution, irrespective

11  of what the State Water Rights Board may be doing.

12       MR. BURBY:  Shouldn't we have an opportunity to

13  understand this suggestion, at the last moment, by the  Fall-

14  brook Public Utility District?

15       MR. MOSKOVITZ:  Perhaps so.

16       MR. BURBY:  Maybe we can do it at this time.

17       MR. SWING:  I will make this suggestion.  We are not

18  going to do it at this time.  There would not be any physical

19  solution proposed or agreed to by anybody without study.

20  There will be a final hearing of this before the Court

21  himself, and at that time, unless we can, between now and

22  September 4th, come up with something, the Court will probably

23  discuss the matter himself.  So what I am suggesting here,

24  taking up partly our Chairman's suggestion, is that we meet

25  again after the hearing.  The hearing will probably take

144

three days.  But I suggest that we take the intervening time

to  agree upon a date when we can meet again, and that Mr.

Veeder bring us something besides an outworn Utt Bill, which

he has never done anything to help bring into existence,

that he bring in some proposal and we all bring in some

proposal of a physical solution and make a common endeavor

of this instead of just an ex parte attempt to pick out one

party's proposal and then pick it to pieces to the best of

the ability of the attorney.

MR. VEEDER:  Do I understand now that you are

rejecting the Utt Bill and the proposal contained in it?

MR. SWING:  As I read your remarks in reply to my

question, you agreed that the Utt Bill could not be put into

effect as it is.  It would have to be modified in some

particular.

MR. VEEDER:  No, I don't believe it is totally

unworkable as it exists.  I don't believe I said that, Mr.

Swing.  I said that the Congress has spoken, the physical

solution is contained in the Utt Act, and if you are rejecting

it I would like the record to show it.

MR. MOSKOVITZ:  Well, gentlemen, this is a conference

of the parties, and it is the parties' majority wish which

controls its course.  Now do the parties feel -- the United

States, the Fallbrook Public Utility District and any of the

other parties who have anything to say; they have not spoken

1   yet and they are free to do so -- do you feel there is any

2   need for coming together again, in accordance with the

3   Court's order?

4        MR. BURBY:  Mr. Chairman, it seems quite obvious

5   that the meeting of this Water Board, disrupting the con-

6   ferences that Judge Carter ordered, is making a complete

7   farce of any possible talks respecting the settlement of this

8   case.

9        MR. MOSKOVITZ:  Are you speaking now for the United

10  States?

11       MR. VEEDER:  Who else?  Certainly he is speaking for

12  the United States.

13       MR. MOSKOVITZ:  I remember that you made the remark

14  once that Mr. Burby was not speaking for the United States.

15  I wanted to be sure whether what he said now is the attitude

16  of the United States.  Is that correct?

17       MR. BURBY:  Well, I have been appointed to represent

18  the United States, if that is the information you want.

19       MR. MOSKOVITZ:  Well, Mr. Veeder sometimes speaks,

20  sometimes you do.  I want to make sure.

21       MR. BURBY:  We are both supposed to represent the

22  interest of the United States, I think.

23       MR. MOSKOVITZ:  All right.

24       Well, if the parties wish, they can meet each day,

25  or today at least, subsequent to the hearing of that Board,

1   which I would assume would be about four o'clock.  I think

2   that is the usual time that the Water Rights Board concludes.

3            MR. BURBY:  Is it customary for the Water Rights

4   Board to hold meetings in San Diego?

5            MR. MOSKOVITZ:  I can't say.

6            MR. VEEDER:  Suppose the majority wanted to continue

7   this meeting rather than adjourn it and proceed to the Water

8   Rights Board.  I thought, Mr. Chairman, it would be a matter

9   at least of voice in this matter by the majority of the

10  attorneys here whether this meeting should be adjourned for

11  however long you propose, Mr. Moskovitz.  We came quite a

12  long way to talk this thing over.

13           MR. MOSKOVITZ:  Well, of course, it is up to the

14  parties what they want to do.

15           MR. VEEDER:  You have a conflict yourself.  Are you

16  due at the State Board?

17           MR. MOSKOVITZ:  No, I have no conflict.  I am not

18  due there.

19           MR. SWING:  Those who want to stay here have a right

20  to stay here.

21           MR. MOSKOVITZ:  Yes.

22           MR. SWING:  I am excusing myself.

23           MR. STAHLMAN:  That is certainly making this meeting

24  ridiculous.

25           MR. VEEDER:  Should we adjourn now?

1   MR. SWING:  Should we adjourn to another date?  That

2   is what I think is pertinent.

3   MR. MOSKOVITZ:  Do you feel it would be of some

4   value to take some time to study what Mr. Swing has passed

5   out, today?  And I would hope, also, to have other written

6   memoranda from other parties exchanged.

7   MR. BURBY:  We might ask Mr. Swing whether or not

8   this memorandum he has submitted, which we have not had an

9   opportunity to read, conforms with his opinion as to what the

10  Water Rights Board is going to decide.

11  MR. SWING:  You can make the most incompetent,

12  irrelevant and immaterial remarks.  I think you are exerting

13  yourself, you and Mr. Veeder, to the extreme.  I compliment

14  you on your ability to inject incompetent, irrelevant and

15  immaterial discussion.  I think you are stalling.

16  MR. MOSKOVITZ:  Gentlemen, I am sure we all would

17  have many things to say about many aspects of the case other

18  than the one before us.  But I would like to limit it, if I

19  may, in order to meet the desires of the Court.  Do the

20  parties want to get together further to discuss settlement?

21  I would like to have an expression on that issue -- a short

22  one, please.

23  MR. VEEDER:  Mr. Moskovitz.

24  MR. MOSKOVITZ:  Mr. Veeder.

25  MR. VEEDER:  We will say this:  that how could we

1   possibly, under any circumstances, discuss settlement when the

2   action, whatever it may be, by the State Board will drastically

3   and irrevocably change the status quo?  How could we possibly

4   have a discussion of settlement?  We do not know the facts

5   which prevail, or which will prevail, or the action which is

6   going to be taken by the State Board.  You, I assume, as

7   lawyers, know that whatever action is taken by the State

8   Board changes, for all time, the situation.  So absent

9   knowledge as to what the State Board is going to do, how can

10  we discuss settlement?

11          MR. MOSKOVITZ:  I take it the position of the United

12  States is that settlement talks should not be continued now.

13          MR. VEEDER:  You don't need to say anything for the

14  United States, Mr. Moskovitz.  Please don't summarize.  All I

15  am saying to you, Mr. Moskovitz, is this:  the situation has

16  been created where the facts are not known.  The Court

17  ordered these discussions, not I, Mr. Moskovitz.

18          MR. MOSKOVITZ:  The Court said they would be con-

19  tinued at the option of the parties.  I want to find out if

20  the parties want to continue these discussions after today.

21  I want to know if I understand your position, Mr. Veeder.

22  Your position is "No" or "Yes"?

23          MR. VEEDER:  My position is that there is another

24  hearing set for September 4th.

25          MR. MOSKOVITZ:  And between now and then you don't

1    feel there is any further need for settlement discussions?

2    MR. VEEDER:  I think I have an opportunity to read

3    the outcome of the State's action, yes.  But it is incon-

4    ceivable to me that I would be asked whether I am going to

5    agree or disagree to further conversations, when I haven't

6    the slightest concept of what the status of the claims of

7    the various parties are going to be after you and the State

8    get through.

9    MR. MOSKOVITZ:  So at this point you don't feel

10   that any further discussions should be scheduled.

11   MR. BURBY:  Mr. Chairman, is there any point in

12   suggesting that perhaps the attorneys who met, including Mr.

13   Swing, make a motion to this Water Rights Board that the

14   Water Rights Board hearing be continued until such time as

15   the hearings ordered by Judge Carter have concluded?

16   MR. SWING:  Mr. Chairman, let me say this, in the

17   brief time that is left.  Judge Carter brought this question

18   up in the hearing over which he presided, at which he asked

19   what was the power of the Court with reference to an

20   administrative decision by the Water Rights Board.  The

21   hearing before the Water Rights Board is merely an admini-

22   strative hearing to probably make an administrative

23   decision.  The Court still has the full legal power that he

24   has always had and which he will exercise to determine the

25   facts as to all the issues involved in this lawsuit.

1        MR. BURBY:  Are you willing to make a motion before

2  the Board that it be continued until we conclude our dis-

3  cussions?

4        MR. SWING:  That question shows your ignorance of

5  the State law which governs --

6        MR. BURBY:  Mr. Swing --

7        MR. SWING:  Just let me finish.  You asked something.

8  The law of the State requires that these applications be

9  prosecuted with due diligence, and I am assuming that the

10  State Water Rights Board is trying to carry out the law which

11  requires them to hold these hearings and take some action

12  upon them with reasonable diligence.  When they have completed

13  acting, it is still only an administrative decision, which

14  then is subject to the Court's jurisdiction of course.

15        MR. STAHLMAN:  Did you ever hear of them acting

16  independently, not by appointment of the Court?  By

17  "independently" I am speaking in connection with matters

18  that are at issue in a lawsuit in a proper court.

19        MR. MOSKOVITZ:  Gentlemen, I think this discussion

20  is not getting us to the conclusion of this meeting, which I

21  had hoped we would get to.  I take it now, and I would like

22  to have the parties express themselves if they desire, that

23  there is no desire for meeting on any specified date to

24  discuss settlement further; that this may come from a further

25  exchange of information or conversation, but at this time

1          there is no further desire.

2                    MR. BURBY:  I think it is completely out of line

3          for us to make such an assumption.  I think these meetings

4          should be continued.  But I think some proceeding should be

5          instituted to postpone the hearing of the Water Rights Board.

6          Especially, we should have the cooperation of the attorneys

7          participating in this meeting in connection with an attempt

8          to secure such a continuance.

9                    MR. MOSKOVITZ:  Well, absent that, of which we cannot

10         be certain without the Water Rights Board itself acting, do

11         you have any suggestion for a further date for this discussion,

12         Mr. Burby?

13                   MR. VEEDER:  Why not go ahead now?

14                   MR. MOSKOVITZ:  Do you desire to go ahead now, Mr.

15         Burby?

16                   MR. BURBY:  I would certainly think now would be the

17         best time.  We should have an opportunity to read over Mr.

18         Swing's proposal and see what it is and then continue.

19                   MR. STAHLMAN:  I am not two people.  I have to be

20         in front of the Water Rights Board.

21                   MR. MOSKOVITZ:  And Mr. Swing, I see, is leaving at

22         this point.

23                   MR. VEEDER:  The United States has to get over there

24         and made a statement to that Board.  Bill, you may stay here,

25         if you want to.

1    MR. MOSKOVITZ: I assume the meeting is closed and

2 there is no schedule for any future meeting.

3    (Laughter.)

4           - - -

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25