# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### ~~SOUTHERN~~
### ~~CENTRAL~~ DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,

                Plaintiff,

       vs

FALLBROOK PUBLIC UTILITY DISTRICT,
et al.,

                Defendants.

No. 1247-SD-C

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:   San Diego, California

Date:   January 8, 1958

Pages:   807 to 861

# FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____
           Deputy

JOHN SWADER
OFFICIAL REPORTER
UNITED STATES DISTRICT COURT
325 WEST F STREET
SAN DIEGO 1, CALIFORNIA
BELMONT 4-6211 EXT. 370

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION


HONORABLE JAMES M. CARTER, JUDGE PRESIDING

— — —

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 1247-SD-C |
| FALLBROOK PUBLIC UTILITY DISTRICT, et al., | ) | |
| Defendants. | ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California

January 8, 1958


APPEARANCES:

    For the Plaintiff:          WILLIAM H. VEEDER, Esq.
                                    WILLIAM E. BURBY, Esq.
                                      Special Assistants to the
                                      Attorney-General
                                      Department of Justice
                                      Washington, D. C.

1   APPEARANCES (continued):

2        For U. S. Marine Corps.:        LT. DAVID MILLER

3        For Defendant Vail Company:     GEORGE E. STAHLMAN, Esq.

4        For Defendant Fallbrook         SWING, SCHARNIKOW &
         Public Utility District:        STANIFORTH, by:
5                                        PHIL D. SWING, Esq., and
                                         F. R. SACHSE, Esq.
6

7        For Defendant State of          EDMUND G. BROWN, Esq.
         California:                     Attorney-General, by
8                                        ADOLPHUS MOSKOVITZ, Esq.,
                                         Deputy Attorney-General.

9        For Defendant Santa
         Margarita Mutual Water Co:      W. B. DENNIS, Esq.
10

11       For Defendants Arthur G.
         Reuter, Katherina C. Gibbon,
12       Philo Reuter and Wm. W.         CLAYSON,STARK & ROTHROCK, by
         Cottle:                         GEORGE GROVER, Esq.

13       For Defendants Carl N. Halde   TOM HALDE, Esq. , by
14       and Hester M. Halde:            GEORGE GROVER, Esq.

15

16

17

18

19

20

21

22

23

24

25

809

SAN DIEGO, CALIFORNIA, WEDNESDAY, JANUARY 8, 1958, 10:00 A.M.

(OTHER MATTERS)

THE COURT: First, there are certain corrections that I wanted to make in this excerpt which the Reporter had typed up. Most of them, I'm afraid, are my own mistakes. The printed word is so permanent. When you read what you said informally, you think to yourself, did I say that? It's true.

On page 1 (696) of that excerpt, at line 21, after "It is a common rule that" insert "when," and on line 23 strike out the word "and."

On page 3 (698) at line 4, after the words "it merely added" insert the word "to."

On page 4 (699) at line 17, after the words "means that" insert the word "only."

On page 5 (700) at line 8, the second word should be "public" instead of "eminent."

On page 6 (701) at line 4, I have my phrases all mixed up, but probably there should be a comma after "by the last user." Actually on line 5 "outside the watershed" should be circled and put up after the word "downstream" in line 4 to make it read a little better.

On page 7 (702), at lines 6-8, the sentence "Its rights will be no . . . . land" should be in quotes. I was reading from a statement of Mr. Brownell. And on line 8, after the word "Then" starting with the word "This" down to the word

1    "case" on line 10 should be in quotation marks.

2               On page 8 (703) at line 17, near the end of the line,

3    after the word "but" insert "am."

4               On page 9 (704) at line 15, the fourth word should be

5    "public" instead of "eminent."

6               On page 10 (705) at line 9, the word at the end of

7    the line "Government" should be "Congress," and on line 20 I

8    was going to change the word " country" to " county" but I

9    think "country" probably is it.

10              On page 11 (706) at line 5, strike out the word

11   "merely" and insert the words "also an upstream."

12              There may be others.

13              MR. MOSKOVITZ:  Your Honor, I found one -- I am not

14   sure that I want to change it, but on the very last page (708),

15   on line 6, when I said that sentence I did not have the word

16   "not" there.  I think I said "I'm sure I can do it in ten days."

17              THE COURT:  I had that noted, but I forgot about it.

18   Let's strike the word "not."

19              Anything else?

20              MR. VEEDER:  I'm not quite sure of the character of

21   the action your Honor took yesterday in regard to this, but I

22   would like to have the record show objection to each of your

23   rulings, just for the purpose of the record on appeal when it

24   goes up.

25              THE COURT:  The record may so show.  But you don't

1  have to make that kind of objection in the Federal Court.

2          MR. VEEDER:  I realize that, but I want to have the

3  record show it, your Honor.

4          THE COURT:  You want the record to show you as ob-

5  jecting all the way?

6          MR. VEEDER:  In every way.

7          THE COURT:  What progress have we made on this

8  stipulation?

9          MR. VEEDER:  I have revisions to these, as we were

10  able to make them out on the facts yesterday, and I would like

11  to have the record show that we are handing Counsel the pages.

12          Page 3, 5, 5a and 6 may be substituted (handing to

13  the Clerk).

14          THE COURT:  On 5 was the only substitution, to take

15  out the word "substantial."

16          MR. VEEDER:  Yes, as I recall, your Honor.

17          We made the change on page 3, the one that Mr. Dennis

18  alluded to.

19          On page 6, the Government's suggestion in regard to

20  "other affluents," on lines 4 through 6.

21          THE COURT:  Mr. Sachse, have you had a chance to

22  check the permits and applications, etc.?

23          MR. SACHSE:  Yes, your Honor, I showed them briefly

24  to Mr. Veeder.  He had no time to go over them.  I will take

25  a try, if you want, right now.  I think it can be very readily

812

1  done by interlineation.

2        THE COURT:  I will let you gentlemen work that over

3  later.

4        MR. SACHSE:  All right.  I am sure it can be done by

5  interlineation.

6        THE COURT:  I am not sure but that we ought to have

7  some definition of terms in here.  I read this over in some

8  detail this morning and I think I know what you mean in certain

9  instances.  But you get so close to the case sometimes you

10  think everybody else knows what you know about it.

11        This stipulation has become a part of the record,

12  available to the Court and to the Appellate Court.

13        I notice that throughout the stipulation there is

14  the term "intermittent" and the term "perennial," referring

15  to streams.  There is a reference occasionally to the word

16  "surface" stream and other references to the word "stream."

17  Both terms are used.  There might conceivably be a difference.

18  A stream might be one which flowed both over and under the sur-

19  face.  A surface stream would clearly be what flowed on the sur-

20  face.

21        There is a reference to "state of nature," which, I

22  take it, means to go back to some period of time before man

23  started to "monkey" with the River.  Query: what period of

24  time?  A wet year or a dry year?  I am not so sure about that.

25        Then I am not clear in my mind about the use of the

terms "Camp Pendleton," "Ammunition Depot," and "Naval Hospital."
Are the Naval Hospital and the Ammunition Depot outside the
confines of Camp Pendleton?

MR. VEEDER:   The Hospital is within Camp Pendleton.
The Ammunition Depot is a separate entity.

THE COURT:   Outside of Camp Pendleton?

MR. VEEDER:   It would be within the fence lines, but
it is a separately administered area.

THE COURT:   I find a little confusion about that.
That is largely a matter of dressing some of this up.   I take
it that all three of them are located in the lands condemned
which were part of the Rancho Margarita.   But I find a little
trouble there in the use of the terms.

The map I don't find too satisfactory.   Of course,
I have the colored one before me, and this one in black and
white doesn't show up as well.   But there are references oc-
casionally to the map, and there is nothing on the map that I
can see that indicates some of the things that you talk about.
You may know all about this.   I can't tell from reading it.

On the map, I take it, that some of these shaded
lines -- let's take the confluence of the Temecula with the
Murietta.

MR. SACHSE:   Which one is that?

THE COURT:   It is the one attached to the stipulation
on which we are working.

1    MR. VEEDER:  It is the one attached on November 19.

2    THE COURT:  Let's take the map of the confluence of

3 the Temecula and the Murietta.  I take it that the slant lines,

4 the dark portion across the Temecula River, demonstrates rough-

5 ly this basin that you described, which was described as a

6 T-shaped basin, with one arm going up the Murietta and the other

7 one part way up the Creek to the west which is not named on the

8 map, and the stem going up the Temecula.

9    I take it also that these slant line areas by Oak

10 Grove and Agana are also rough diagrams over your ground basins.

11    But there are many names mentioned in the stipulation

12 that aren't on this map.

13    MR. VEEDER:  Well, your Honor, you have a choice; if

14 you desire, we can get a larger map.  That is about the only

15 way we could take care of it.  The fact is that we put in our

16 statement of January 6th, as I recall, that we are working on

17 a new map, and there is a base map that the United States was

18 preparing.  It is a map much larger than this.  That may be

19 more satisfactory to you.

20    THE COURT:  It can be worked out later.  We could

21 have a larger map that could have these things to which you

22 refer described on it.  I merely call your attention that as

23 the stipulation now stands some of the things that you talk

24 about and say "see the map" I couldn't find on the map.

25    Now, turning to page 7 of the stipulation, as it now

1    stands -- E-1, there is described a taking of January 21, 1942,

2    of so many acres, and there is described another taking of

3    January 5, 1943, and a further taking on December 22, 1943,

4    and then a deed to 112 acres.  There is nothing that I can tell

5    from the record where this land is, where the first taking was,

6    where the second was.

7         If I understand Fallbrook's position, they are going

8    to claim that this license that they had from Santa Margarita

9    was a personal license, that some taking terminated it, and

10   that their user thereafter was adverse, if I can anticipate

11   what they are talking about.  Therefore, it would be very per-

12   tinent to find out which was the area of first taking,  Did

13   the area of first taking, if they are right -- I am not passing

14   on that -- terminate this license?  Or was it the second

15   taking that did it?  Or was it the combination of the taking?

16   From the record I can't tell.

17        Do you follow me?

18        MR. VEEDER:  Yes, I do, your Honor.  I didn't know

19   that Fallbrook was making that contention, however.

20        THE COURT:  Well, Mr. Sachse has not privately com-

21   municated with me.

22        But is that your theory, Mr. Sachse?

23        MR. SACHSE:  The theory I expressed yesterday was that

24   the United States never gave us a license, and that the license

25   that we received from the O'Neills was a personal license that

816

1  would lapse with the transfer of the property from O'Neill to

2  anyone else.  Whether we are going to assert a claim based on

3  prescriptive right or whether the use is now covered by our

4  2½ second feet diversions under license from the State, I am

5  not prepared to say at this time.  It is the same water, it

6  is the same diversion point, and the license covered only 90

7  gallons a minute -- a very, very small quantity of water.

8      THE COURT:  I may be anticipating, but at any rate

9  I think the stipulation should show somewhere.  Maybe this

10  could be drawn in on the map.  The only material feature would

11  be in what part of the stream the taking occurred.  For instance,

12  if the first taking on January 1, 1942, was downstream --

13      MR. VEEDER:  The whole thing was downstream from

14  Fallbrook's point of diversion.

15      THE COURT:  Yes.

16      MR. SACHSE:  Your Honor, I think we could stipulate

17  right now, in fact I am certain, if it would help Mr. Veeder,

18  that the first taking was the Ammunition Depot.  So the earliest

19  one was a part of the grant, but not where our land (sic) was

20  taken from.  In other words, it would be a combination of the

21  whole transfers.

22      THE COURT:  I don't know where the Ammunition Depot

23  is.  There is nothing on here that shows me where that is.

24      MR. SACHSE:  The point that I am making is that we

25  had a license from the O'Neills, not a license from a piece of

1 land, so until all the O'Neill's land was disposed of that

2 license was not terminated even under my theory. So I would

3 say that the cut-off date on our license would be the last

4 transfer, which would give us the shortest possible prescriptive

5 period.

6 　　　　　THE COURT:  If that is true, then we have nothing to

7 worry about.

8 　　　　　MR. SACHSE:  Except for the Orange County one; that

9 doesn't apply.  I am speaking now of the San Diego County one.

10 The last one mentioned is Orange County.  That is completely

11 outside the watershed and not involved in this case at all.

12 　　　　　MR. DENNIS:  If your Honor please, there are two other

13 reasons why your Honor's suggestion would be a good one that we

14 have a map showing the location of these various tracts.  Under

15 the laws of riparian rights, once a piece is severed it loses

16 its riparian rights, and that the riparian right applies only

17 to the smallest piece that remains in one ownership which con-

18 tinues to be left on the stream.

19 　　　　　Then there is also the other question that Santa

20 Margarita raised at the trial before, and that is that if you

21 have two parcels that are on the stream, both of which are

22 riparian, and you are not using water on one parcel but you

23 have needs on the second parcel for more water than it is en-

24 titled to, then you attach the rights from the first parcel

25 onto the second.  That is a very important problem that is

1   going to have to be discussed and that is going to have to be

2   decided by the Court.

3        So that I think that it would be helpful to the

4   Court if your suggestion could be followed that on the map it

5   would show the location of these various parcels.

6        THE COURT:  It would be a very easy thing to do to

7   refer in the stipulation to a large map and merely point out

8   the rough outlines as set forth in the document itself, if you

9   want to.  But let's have a big map referred to as well as a

10   smaller one to get all of this in.

11        I merely call this to your attention.

12        MR. VEEDER:  May I inquire: would you make the large

13   map a part of the Pre-Trial Order?

14        THE COURT:  Do it by reference.

15        MR. VEEDER:  That is what I mean.  You want that in-

16   corporated by reference?

17        THE COURT:  It's all right.

18        MR. VEEDER:  Yes.

19        THE COURT:  Yes, I merely call it to your attention.

20   I couldn't tell by reading it over where this was.  The only

21   materiality I could think of was the problem as to Mr. Sachse's

22   situation.  But let's pass it.

23        MR. VEEDER:  We are willing to do that, your Honor.

24        I would like to raise an additional point, though,

25   now that the matter of the gratuitous license has come up.  I

1 think it is a very important question of law. Your Honor made

2 reference to prescription, and we of course take the position

3 that Judge Yankwich's ruling, appearing at 108 Fed. Sup., in

4 which he declared that by reason of this gratuitous license

5 there couldn't be any adverse possession run against the United

6 States. In any event, the matter of -- I'll use that word

7 "sovereign" -- license, adverse possession, prescription doesn't

8 run against the United States.

9       In regard to what Mr. Dennis said, that there has

10 been no severance of the character to which he made reference,

11 I will have to keep the record straight. Never at any time

12 did the circumstance prevail that he just described. So if he

13 wants to tender, or if Mr. Sachse wants to tender contentions,

14 fine; but we are not going to have any agreement along that

15 line.

16       MR. SACHSE: There is a contention in the last pre-

17 trial order on prescription. It will be in the new one.

18       THE COURT: Let's interrupt and call this criminal

19 case.

20       (ANOTHER MATTER)

21       THE COURT: Going ahead here on the next page, page 8,

22 I notice a reference to "public land order 293." Well, that

23 stands out by itself. I don't know what it applies to. It may

24 refer to the transfer of the public domain lands. Pardon me,

25 it was identified. I'll take it back. It is identified in

line 2.

1      Now going to page 11, where the Vail stipulation

2  ends, on line 25 it says: "By agreeing to the facts set forth

3  in paragraph 7 (which sets forth the Vail stipulation) the

4  defendants do not admit the admissibility....." I take it

5  that you mean the defendants other than Vail?

6      MR. STAHLMAN:  Here is the position, I think, that

7  we take on that.  The Agreed Statement of Facts -- naturally,

8  there was this judgment entered, an agreement that is not bind-

9  ing on anyone who is not a party to the action.

10     THE COURT:  Well, it is binding on you.

11     MR. STAHLMAN:  Yes, but there were some other de-

12  fendants in that.

13     THE COURT:  Yes, I understand.  But shouldn't it

14  read "other than the defendants Vails who are parties to the

15  stipulation do not admit the admissibility of the judgment"?

16  You certainly admit the admissibility as to you?

17     MR. STAHLMAN:  Yes, certainly.

18     THE COURT:  Do you see my point?

19     MR. STAHLMAN:  Yes.

20     THE COURT:  Mr. Veeder?

21     MR. VEEDER:  Yes.

22     THE COURT:  All right.

23     MR. VEEDER:  May we hold up for a minute until Mr.

24  Stahlman gets a copy of what we are talking about.

25         (A PAUSE)

MR. STAHLMAN:  I have that now.  That covers that.

THE COURT:  On page 14 lines 15-18, we get into this alleged license.  It seems to me that there the facts ought to be set forth.  We are still on the stipulation, not the contentions.

MR. VEEDER:  I don't follow your Honor on that.

MR. SWING:  Would you repeat that again, your Honor?

THE COURT:  Here you have --

MR. SACHSE:  That is the revised 14, that is the December 3rd revision.

THE COURT:  No, I am looking at the January 6th revision of page 14.  It states "gratuitous and revocable license from the United States of America."  From what you tell me, that isn't true.  The instrument, of course, follows here.  The second sentence modifies the first.  But it seems to me that the date of this document and the facts can be set forth in there, rather than some of these conclusions -- the document identified, or agreed that it may go into evidence.

MR. SACHSE:  Your Honor, perhaps this is a good place to make an observation.  I notice that through a lot of this -- I certainly don't criticize Mr. Veeder; he has taken a tough job here trying to write this up for all of us -- but it does seem to me that there are a lot of contentions stuck in the facts.  For example, just taking this specific language to which you refer on lines 11-18, I don't think that it belongs

1   in an Agreed Statement of Facts.  If we are going to agree that

2   on such-and-such a date Jerome O'Neill executed a license to

3   Fallbrook, that is a fact.  But if we are going to draw these

4   conclusions, that becomes a contention, and I think we could

5   simplify this a lot if we struck it out and let Mr. Veeder write

6   his contentions, but not ask, this defendant at least, to try

7   to change the language or to encumber the facts with what are

8   really his contentions.

9           MR. VEEDER:  I think everyone understands, Mr. Sachse,

10   that these were written up tentatively for your and my dis-

11   cussion, and I will be very pleased to relinquish the under-

12   taking to anybody who wants to undertake to write them up.  In

13   fact, if you would like to do it, I would be glad to turn it

14   over to you.

15           MR. SACHSE:  As I said at the outset, I am certainly

16   not criticizing you.

17           MR. VEEDER:  The point I want to make is that I cer-

18   tainly don't want to put down something that would be disad-

19   vantageous to the Government, aand if we can work out language--

20   I had assumed that you and I would sit down in an office and

21   work it out.

22           MR. SACHSE:  Yes.

23           THE COURT:  It would be an easy matter to do: That

24   on a certain date Santa Margarita Rancho executed a document,

25   etc., either referred to it and that it may be received in

1  evidence or summarize it or include it.

2       MR. VEEDER:  Or set it out in its entirety.

3       THE COURT:  And that thereafter Fallbrook took water

4  under the terms of it, and that on a certain date the United

5  States gave notice that it was terminated --

6       MR. SACHSE:  I am expecting to get together with Mr.

7  Veeder on this very sort of thing.

8       THE COURT:  -- without prejudice to Fallbrook's con-

9  tention that it terminated upon the condemnation proceeding,

10  and then later put in your contentions.

11       14-B, No. 11 -- that is just a matter of what you

12  mean: "The United States of America objects to the issuance of

13  Permits No....." You don't mean that you objected to them when

14  they were issued, and if you mean it in the present sense, ob-

15  jects to the issuance of the permits, they have already been

16  issued. What do you mean? You object to their consideration,

17  or you object to their validity? But you say "objects to the

18  issuance," I merely call it to your attention.

19       MR. VEEDER:  I'm glad you did, your Honor. We view

20  California as part of the case, and I am not just sure how to

21  formulate the issue with California with regard to it. But we

22  will certainly maintain that position.

23       THE COURT:  I merely call your attention to it.

24       On page 16 of the original draft, lines 1-4 up at

25  the top of the page, you talk about the California lands, and

824

1  then say "Investigation of the present status of ownerships is

2  now underway and leave will be asked to file an Amended Com-

3  plaint."  Are you going to amend the Complaint also in respect

4  to what few lands the State of California owns throughout this

5  area?

6      MR. MOSKOVITZ:  Your Honor, it refers to the Amended

7  Answer, I believe.

8      THE COURT:  Pardon me.  I read it too hurriedly. That

9  answers that.

10     On page 5 of the Government's Contentions --

11     MR. MOSKOVITZ:  What date would that be?

12     THE COURT:  December 3rd.  I have mine grouped to-

13  gether down to date.

14     December 3rd, page 5, No. 10 -- it is just a matter

15  of contention -- it starts out "In the year 1883........its pre-

16  decessors had diverted," and then the next sentence says "For

17  a similar period the predecessors' interests of the United

18  States had diverted..."  I take it that the Government means

19  that since the year 1883 and not in the year 1883.

20     MR. VEEDER:  You might say "commencing."

21     THE COURT:  The way it is worded now, it looks like

22  you are talking about just one year.

23     On page 7, December 3rd revision of the Contentions,

24  I have trouble reconciling the contention in 20 and the con-

25  tention in 21 insofar as the Isadora Basin is concerned.  Line

1   18 says "The ground water storage capacity of the three com-

2   ponents are as follows: Isadora Basin 8600 acre feet........"

3   No. 21 says "A barrier is requisite to the Isadora Basin.  Thus

4   the maximum capacity of the ground water basin is 40,000 acre

5   feet."  I can't fit 40,000 into 8 or 48 or -- I don't know.

6           MR. VEEDER:  Well, the claim on the storage capacity

7   of the Basin is 48,100, and the three components are actually

8   one basin, and by reason of the necessity of a fresh water

9   barrier the capacity can only be viewed as 40,000 acre feet.

10  That is all.

11          THE COURT:  In other words, the emphasis is on the

12  word "usuable" on line 27.

13          MR. VEEDER:  That is right.

14          THE COURT:  "Thus the maximum usable capacity is

15  40,000," is that it?

16          MR. VEEDER:  That is right.

17          THE COURT:  All right.

18          Those are the only comments I have.

19          What next?  I take it that you gentlemen are avail-

20  able to continue to do some work on this and see what you can

21  get done.  Can we go on to some other matter?

22          MR. SACHSE:  I am hopeful that as    far as this

23  order is concerned Mr. Veeder and I should be able to agree

24  where we can agree, and where we can't put it that far and

25  possibly then be able to say that final corrections can be

1  made in these various statements that affect Fallbrook.  I can't

2  speak for Mr. Dennis or the State of California as to what their

3  plans are.

4          THE COURT:  Why don't I recess and let you gentlemen

5  do some more work and come back here tomorrow and Friday and

6  I will be available off and on, if needed.  I have another

7  matter that I am going to hear tomorrow.

8          MR. MOSKOVITZ:  Your Honor, I would like to ask this

9  question.  First of all, I don't believe that the State of

10 California now has any objection to the facts which have now

11 been put together.  I think the last one was removed yesterday.

12 However, the State, except originally when we first started

13 working, has not done any revisions or contentions, and at the

14 last hearing Mr. Sachse suggested that it might be better to

15 wait on contentions until after there have been rulings on

16 these issues of law.  I wanted to inquire of your Honor whether

17 you intend to make your rulings on law before this Pre-Trial

18 Order is put together or at the same time, so that we know how

19 to schedule our own work in making contentions.

20         THE COURT:  Well, it seems to me that there has to

21 be a predicate in fact to make a ruling on law, and that the

22 part of the document that concerns the facts to which you agree

23 ought to be stipulated to and the Court would then be in a

24 position to make a ruling on some of these matters.

25         MR. MOSKOVITZ:  In other words, your Honor, the

1   Pre-Trial Order containing the Agreed Statement of Facts would

2   be issued first, and then on the basis of the Facts contained

3   therein your Honor would rule on the legal issues.

4        THE COURT:  Do you have any other suggestion on it?

5   What do you think, Mr. Veeder?

6        MR. VEEDER:  I concur with your Honor.  I don't see

7   how you could possibly rule until there are Agreed Facts, until

8   the Pre-Trial Order is worked out.  I assume that you would

9   set a day.  I didn't know whether you were going to have fur-

10   ther argument or not on any of the points, or whether we would

11   be limited to the points and propositions that have been touched

12   upon now.  It is increasingly clear to me that as Fallbrook's

13   facts become more apparent that your Honor could very well make

14   a single ruling that would lay to rest this contentious situa-

15   tion, and it touches upon the status -- whatever California

16   has here.

17        We feel that the filings of Fallbrook are of such

18   nature that it couldn't possibly have a priority -- that is,

19   for storage -- earlier than the year 1952.  Should that be

20   sustained by your Honor, I don't believe that there would be

21   any reason for Fallbrook litigating any further.

22        Now, the reason why I make that, I'll point out that

23   when this case was started Fallbrook had two filings for storage,

24   one on Rainbow and one on Sandia.  After the case was started,

25   July of 1952, it amended its filings and created a wholly new

1 project.  We believe that that matter would have no other re-

2 sult than to make Fallbrook's earliest priority 1952.  I'm

3 still speaking of storage.

4       The problem with which we are confronted is that

5 California is now sitting, I suppose in Justice or whatever it

6 is sitting on or in, on this Application 12178 and 12179, again

7 the question of the invasion of this Court's jurisdiction be-

8 comes extremely important.  Now if we could have a ruling of

9 law --

10       First, I think that Mr. Sachse would agree on what

11 I have said -- in other words, that there has been a complete

12 amendment, a complete change.

13       MR. SACHSE:  I will agree that there has been a

14 change.  I will delete the word  "complete."

15       MR. VEEDER:  He will admit that there is a change.

16       Now if we can get, I think, this afternoon agreement

17 as to actually what transpired, I think we can submit it to

18 your Honor and then have the matter argued as to whether you

19 could accord them an earlier priority.

20       As I say, I am not sure of the impact of your Honor's

21 ruling yesterday, but certainly the filing of the United States

22 of America is antecedent to that amendment.  So that even if

23 the worst could be inferred from what I am not too sure about,

24 the result would be that under any concept we would have a

25 priority ahead of Fallbrook.

1          I think it would be in keeping with Justice to have

2     a ruling on that.

3          THE COURT:  You would want to brief it and argue it,

4     I suppose.

5          MR. VEEDER:  Yes.

6          MR. SACHSE:  Your Honor please, if he is going to

7     brief and argue it, so will we, of course.  But I would like

8     to point this out.  It has never been my assumption, and I have

9     made it as clear here as I know how, that your Honor has the

10    slightest power or authority to give Fallbrook any permit, to

11    give Fallbrook any license, or give the United States any

12    license.  We spelled it out in words of one syllable.  Your

13    Honor asked me at the last hearing what the effect would be of

14    the action of the State Water Rights Board.  You don't grant

15    Fallbrook a permit.  You don't grant the United States a permit.

16    The administration of the waters, if there are any surplus

17    waters in the stream, is under the State of California.  If

18    Fallbrook has made a blunder in its handling of its applications

19    before the State of California Water Rights Board, that isn't

20    in this Court.  You are not the man who will say, "This is a

21    valid permit.  You get water under it.  Give them a license."

22    You don't have that authority, and I am sure that your Honor is

23    not going to exercise it.

24          I don't know what kind of motion Mr. Veeder is talk-

25    ing about making, but if he makes it I will be very happy to

1    attempt to answer it.

2            MR. VEEDER:  I will explain as simply as I can what

3    I am talking about, Mr. Sachse.  His Honor certainly is not

4    going to issue a permit, but I will guarantee that he is going

5    to determine our priority date -- there is no question about

6    that, and the point that I am raising is, assuming that your

7    filings were properly made and assuming that they are before

8    the Court -- and certainly they are; they are included here as

9    one of the exhibits and they are part of the Pre-Trial Order --

10   he is going to determine this:  Fallbrook has a priority date

11   as of such and such a date.  He is not going to issue a permit,

12   no.  He is going to quiet the title of the National Government,

13   however, and also determine what your rights are, and in so

14   doing the Court determines what the priority is, and I believe

15   that under California law -- which I find myself quoting quite

16   frequently now -- under California law the priority is 1952,

17   subsequent to the filing of the National Government.

18           Now I couldn't imagine anything that would put Fall-

19   brook out of business any faster than to have our position sus-

20   tained, and I think it would be highly proper to have that one

21   of the questions of law argued in advance.

22           MR. SACHSE:  May I answer this very briefly, because

23   there is a fundamental misconcept here.  We might ask Mr. Mosko-

24   vitz about it.

25           I don't think that your Honor is going to find the

66

priority date of permit. And let's get down to absolute brass

tacks. What happens with one of these pieces of paper? Some-

body files an application. When they file it, it gets a date--

the date on which it is filed. Then subsequent to that, if the

Water Rights Board so finds, a permit is issued. It doesn't

have to be the first application that gets the permit. We have

made that very clear. The Water Rights Board has complete

jurisdiction, under California law, for reasons of public wel-

fare, to disregard an earlier filing and give a permit to a

later. They have complete authority. But when the permit is

issued, the permit then dates back to the date of the filing.

Then a license is issued, ultimately, to go on a step beyond

this document that he is talking about, and when the license

is issued the license expressly states to what date the priority

dates back.

Now that is an administrative action of the State of

California, and your Honor will have presented to you, if we

can't stipulate to it -- I assure you that it is going to be

presented in the form of certified copies -- you are going to

get a piece of paper issued by the State of California which

says that application 12178 was filed November 28, 1947, amend-

ed July 28, 1952, was argued before the Water Rights Board and

is now pending; that is what you are going to get, and it is

going to be nothing more nor less than a statement of the State

administrative tribunal of what I call the state of the pleadings

1    before it.   There is an application and an amendment.

2            THE COURT:   It is obvious that you men  aren't in

3    agreement in all respects as to this problem, and it does con-

4    cern the Court only in the sense of what kind of decree I would

5    enter.   If I enter a decree that there is no water available

6    for appropriation other than for the use of a riparian owner,

7    that ends it right there.

8            MR. SACHSE:   That is that.

9            THE COURT:   You agree, don't you, Mr. Veeder?

10           MR. VEEDER:   Your Honor, I say, in all sincerity,

11   that I have never heard of such decree.   I don't believe that

12   your Honor will say in the decree, and certainly I have never

13   seen a decree so drafted, your Honor will not speculate whether

14   it is going to rain in a given year, but I think that your

15   Honor can say that these are the priorities -- we talk about

16   chronicling and cataloging; that is all it will be -- and I

17   think that where Mr. Sachse is having some difficulty in think-

18   ing is that we expect your Honor to enter a decree which will

19   say that so-and-so has a priority date of such-and-such date

20   to X-quantity of water, second feet or acre feet.

21           THE COURT:   Suppose there is no decision -- let's

22   just take a case -- suppose the Water Board hasn't ruled.   You

23   are a claimed appropriator, the United States is a claimed

24   appropriator, the Fallbrook Public Utility District is a claimed

25   appropriator.   How can I say how many feet?

1          MR. VEEDER:  The point of it is that your Honor will

2    simply reflect the difference.  Now you raised a point there.

3    There will be two kinds of rights that will necessarily be de-

4    creed.  I am speaking of appropriative now.  You will have your

5    inchoate right, which is all that Fallbrook has now from the

6    standpoint of storage.  When I say "inchoate" I mean unexercised

7    right.  You haven't stored any water.  That will have a priority

8    date of what we say is 1952 for an inchoate right, an unexercised

9    right, an uncompleted right to such-and-such quantity of water.

10   I think they are claiming 30,000.  But I can't envision a state-

11   ment in the decree that would say, "There is no surplus water."--

12   I simply can't envision it, because I don't believe that any

13   Court -- and that is why when I see this crystal ball being

14   handled by the State Water Board I am always amused.  They say,

15   there is or is not a surplus.  That is a manifest impossibility.

16   Nobody knows whether there is a surplus at a given moment or

17   not.  So it is just the order in which these priorities will

18   be found.  Your Honor will make a finding, I assume, that Fall-

19   brook made a filing on X date and then there will be a decree

20   of priority to that date.  But I daresay that your Honor will

21   not undertake to say that Fallbrook, in the year 1975, will

22   impound 13,000 acre feet of water.  You will say that they have

23   the priority as of that date and if that water is available

24   they have a right to take it, and I think that is all the decree

25   will do.

So the concept of this litigation -- I think it is
essential, I think this is a very important part of the Pre-
Trial Order, the pre-trial understanding -- that what we are
seeking here is simply a declaration of the respective rights
of the party and let Mother Nature take care of whether there
is any water to fill out the rights.  It is obvious that this
stream is manifestly many times over-appropriated, but never-
theless, irrespective of that over-appropriation, there will
be chronicled the priorities to the end that if there should
be a momentary surplus above and beyond everybody else's rights,
Fallbrook might be able to take.

THE COURT:  It is obvious that you are far enough
apart that the matter would have to be briefed and heard.

MR. VEEDER:  Yes.

THE COURT:  All you can do now is to get a factual
basis worked out, if you can.  There shouldn't be any dispute
about your factual basis.

MR. VEEDER:  I don't think there can be any dispute.

THE COURT:  And then later on fix some date to hear
this matter.  Meanwhile, you can list it in your contentions.
It may be that you will have to list all your contentions and
let me rule on the things as I can rule on them.  I don't know
that we can do this the other way around.

MR. VEEDER:  Mr. Moskovitz had raised a point that
seemed important to me, as to when this ruling would be made

67

1   and on what points.  Now you have asked me in regard to some

2   other matters, and it would occur to me that if there is going

3   to be a ruling on those points that this one I just made re-

4   ference to should be among them, and that a date be set to

5   hear all these arguments.

6           THE COURT:  I am just saying that it seems to me

7   that you are going to have to set forth all your contentions

8   and let me rule on those things that I can rule on, and if there

9   are certain matters I want to hear you further on I will tell

10  you.  The only one I can think of now is this series that con-

11  cerned military use, charging the lower basin, a few things

12  like that -- there were some of them grouped together in there.

13          MR. SACHSE:  One more thought on this getting to-

14  gether on the facts with Mr. Veeder.  I have brought, as I told

15  your Honor and Mr. Veeder that I would, the photostat and I will

16  file it.  To me they are facts which can't be contradicted.  As

17  I say, if they don't go into the Agreed Facts, they will have to

18  go in, in the form of certified copies.  There should be no

19  disagreement.  But I feel that it is equally true that there

20  should be no disagreement about some other certified copies I

21  have here -- here they are; I have certified copies this time,

22  not just photostats -- and that is the United States' filings.

23  But I can't get Mr. Veeder to recite the facts of Application

24  12576, although I hold right in my hand a certified copy.

25          MR. VEEDER:  I told him repeatedly that I will meet

1  with him this afternoon and we will write it down.

2  THE COURT:  The simplest way to avoid argument is

3  merely to attach the exhibits as Pre-Trial Exhibits 1,2,3,4

4  and let the Court draw its conclusions.  Later on state what

5  your contentions are.  If you are in dispute about what a docu-

6  ment means, attach the document.  You can waive foundation.

7  You know whether or not these things exist.  If they exist,

8  make them exhibits to the record.

9  MR. VEEDER:  On this point we have here you couldn't

10  imagine a better situation for a motion for summary judgment.

11  THE COURT:  You work on that this afternoon, and if

12  you have any trouble with the documents put them on.  As a

13  matter of fact, I am inclined to think that I would rather see

14  the documents than to hear your summarization of what they are.

15  MR. VEEDER:  I think it would be more accurate.

16  THE COURT:  Let's take a recess.

17  Are we through with this matter now, that you are

18  going to work on the facts on this filing matter and get some-

19  thing in the pre-trial stipulation that would be the basis for

20  a ruling, later on argue and brief it?

21  MR. VEEDER:  Yes.  Are we going to have the Courtroom

22  to work in this afternoon?

23  THE COURT:  If we are not in session here, you may

24  use it.

25  MR. VEEDER:  Thank you.

1       MR. MOSKOVITZ:   To make sure that I understand it,

2   and perhaps for the benefit of the other Counsel, the procedure

3   from here on, on this Pre-Trial Order, there will be an attempt

4   to agree upon further facts that seem relevant.   Then the parties

5   will review what contentions they have made and make any changes

6   that they want to make and those will be included together

7   with the Agreed Facts, those will be put together and pre-

8   sumably adopted by your Honor.   Subsequently, after perhaps

9   more briefing and argument on other legal issues, you will give

10  an opinion or rulings on law based on the brief facts, the con-

11  tentions and arguments and briefs that have been submitted.

12      THE COURT:   Tentatively, I think that is the way it

13  will have to be done.   I would prefer, however, that instead of

14  setting forth these long lists of your contentions that you

15  would be competent enough lawyers that you could say, "The

16  issues to be decided are," and agree upon what the issue is.

17  I don't know why that can't be done.   This business of having

18  one side state its contentions and then the other side state

19  its is entirely foreign to what a Pre-Trial Order should con-

20  tain.

21      MR. MOSKOVITZ:   I agree with you, your Honor.   It

22  seems to me that contentions, for the purpose of your rulings

23  on the legal issues, are not necessary in the light of the fact

24  that heretofore you have set forth in an order at least what

25  some of the issues are and asked us to brief them and argue

1    them, which we have done.  All that has transpired today is

2    the inclusion of an additional issue, perhaps.

3            THE COURT:  I don't think I am the greatest lawyer in

4    the world, but with this group of contentions that the Govern-

5    ment has I think I could sit down and list a series of issues,

6    and I think that I could eventually get agreement from you

7    gentlemen that these were the issues.  As a matter of fact, if

8    one side says that a matter is at issue and the other man says

9    that it is not, it is probably an issue.  But the point is, why

10   have this bulky statement of contentions when you are shooting

11   at the same thing?

12           MR. MOSKOVITZ:  If you recall the order you issued

13   last May, it did list issues, and those issues were agreed to

14   by the parties as being truly issues.

15           THE COURT:  Those aren't all the issues.

16           MR. MOSKOVITZ:  There are some additional legal issues.

17   They should be presented by the parties who believe that they

18   exist.

19           THE COURT:  If you will go through the Government's

20   contentions, I noticed this morning maybe fifteen or twenty

21   other issues that we haven't even talked about lurking in the

22   Government's contentions.  They are not spelled out in great

23   detail, but they are in there.

24           MR. MOSKOVITZ:  Would it be appropriate, your Honor,

25   to have a ruling on the issues which have been agreed to and

1    which have been argued and briefed first, instead of waiting

2    for everything all together?   Would that be some way of reducing

3    the areas?

4              THE COURT:   If you can get your factual basis to-

5    gether -- as a matter of fact, there is no reason why this can't

6    be in two parts: (1) a stipulation of facts, and (2) a stipu-

7    lation as to issues later on.   Once I have the factual basis,

8    I will rule on some of these matters.   I don't see that it is

9    so important whether it is done one way or the other.   We are

10   not going to trial until we get some of these things settled

11   anyhow.

12             You know what form of order I mean about setting forth

13   issues.   Do you follow me?

14             MR. VEEDER:   Yes, I know, your Honor.

15             THE COURT:   Isn't it possible to do it that way?

16             MR. VEEDER:   Yes, I think the thing to do, though --

17             THE COURT:   Then you get a number of them and get

18   them down in concrete fashion.

19             MR. VEEDER:   All that we will do, I assume, when we

20   get through with the Agreed Facts, Counsel will work out with

21   us the issues.   It suits me very well.

22             THE COURT:   In other words, this contention matter

23   is, again, a preliminary matter from which you will eventually

24   sift out the issues.

25             MR. VEEDER:   That is right.

1      THE COURT:   Then I would think that we should make
2  this in two parts: (1) the facts, and (2) the issues (a second
3  document), and that we try to complete the fact end of it and
4  then make your contentions, each of you -- throw in together
5  and see what list of issues you can come up with.

6      MR. VEEDER:   I had always thought that there would
7  ultimately be made part of this Pre-Trial Order the issues of
8  law as agreed to among the parties.

9      THE COURT:   That is what I hope.   I misunderstood,
10  because I thought you were talking about using this long list
11  of contentions and everybody putting their contentions in, and
12  that wouldn't particularly help the Court.

13      MR. VEEDER:   I don't know how to formulate/otherwise.       it

14      THE COURT:   I think you are right in proceeding that
15  way.   Each person put in their contentions, then sift them
16  down and see what your legal issues are.   I suggest now, in
17  view of these statements, that that be a separate document from
18  the stipulation itself.   Or it can be part of the pre-trial
19  proceeding.

20      MR. MOSKOVITZ:   Just a question for clarification,
21  your Honor.   In stating the issues, do you mean stating both
22  factual and legal issues, or just legal issues?

23      THE COURT:   Well, in a simple case it is sometimes
24  possible to segregate them.   How much that can be done here I
25  don't know.

1          MR. VEEDER:  I think we can try, but as to questions

2   of fact I think it would be easier to sit down and write them

3   out where there are going to be disputes.  There may be some

4   things where there is a dispute of fact.  But I imagine that

5   each tract of land will have a disputed factual question.  So

6   I don't think that we could possibly write into a Pre-Trial

7   Order the question of all the matters concerning which there

8   will be issues respecting facts.  I would think that it would

9   be better to list the issues of law alone for the purpose of

10  pre-trial, and the factual issues will be developed as the

11  trial develops.

12          THE COURT:  All right, take a short recess.

13          (RECESS)

14          THE COURT:  You keep inquiring about procedure.  I

15  have just outlined what I think might be a workable procedure.

16  We have to innovate, but we have to keep in mind our principle

17  of due process that concerns a lot of other defendants besides

18  those people here.  You people present can bind yourselves to

19  a stipulation.  No one else is bound by that at this stage of

20  the proceeding.

21          So if you follow me, roughly here is what I would

22  visualize that this procedure would be, and I have called it

23  Stage I, Stage II, Stage III and Stage IV, with subdivisions

24  thereunder.

25          Stage I is what we are presently working on.  The

1  parties present are to agree upon facts which are not in dis-

2  pute.  If somebody has a point that they will later want to

3  make, the other side should agree to get those facts into this

4  stipulation, so that at some time the legal point that will

5  arise from those facts can be raised.

6      No. (2).  There are some other major parties that

7  could well join in this stipulation, even though they haven't

8  been here.  It may be that upon looking it over they will join.

9  I have in mind the Oviatta, who have some substantial pro-

10 perties and interests.  I don't know why their attorneys haven't

11 been present.  At least, an attempt should be made to submit

12 this stipulation to some of the major parties and see if they

13 will agree to it.

14     MR. VEEDER:  We undertook to have the Oviatts here

15 today for this 6th, 7th and 8th hearing.

16     THE COURT:  Who represents them?

17     MR. VEEDER:  The attorney who originally represented

18 them isn't representing them anymore, and as far as I know

19 Oviatt doesn't have Counsel at the present time.

20     THE COURT:  No. (3).  Having completed your stipu-

21 lation of facts, you will proceed to work upon contentions.

22 You are going to present to each other long lists of your

23 various contentions.

24     And No. (4), these will be shaken down into a list of

25 the legal issues in the case in the form of questions or

1    statements that are suitable. But an attempt will be made to

2    get the legal issues framed so that you hit head on, and in

3    doing that if somebody says that there is a legal issue on a

4    certain matter and the other side says that that is no issues,

5    it probably ends up as an issue. The Court will probably have

6    to decide. If Mr. Veeder says that the question of the earliest

7    appropriative date of Fallbrook is an issue, and Mr. Sachse says

8    it is not an issue, it probably is an issue. How it will be

9    resolved is another thing. So you should have no problem get-

10   ting a list of issues, and by numbers that we can refer to.

11          No. 5 might be this matter of agreement on exhibits,

12   which could be another trailer to your proceedings, another

13   document where you list a series of exhibits, and you waive

14   whatever objections that you can waive and you reserve the

15   particular objection that you want to reserve, whether it is

16   a foundational objection that you want to reserve or one going

17   to the merits. But except for objections that you reserve,

18   everything is waived as to the list of exhibits.

19          Then we come to Stage II. Having got the stipulation

20   as to facts and the stipulation as to issues and the stipu-

21   lation as to exhibits --

22          Query: whether that is essential. It might be help-

23   ful because there might be certain of those exhibits about which

24   there was no reservation of objection. The Court could clearly

25   consider them, if necessary. I am not talking now about exhibits

1    that you may want particularly to identify a statement of facts.
2    I am talking more about the general list of exhibits.

3           So those things having been done, here is a step on
4    Stage III.  The Court proposes (1) immediately to rule on some
5    of these matters.  My mind is made up on prescription.  I have
6    read the three cases upon which the Government relies.  They
7    are all distinguishable and to me that isn't a problem.  I am
8    prepared to rule on that and stand on the ruling.

9           No. (2), the Court will sign this order of the Court's
10   ruling on the stipulation of facts that I made yesterday.  That
11   order will be going through the mill and I will be in position
12   to sign it.

13          (3).  The Court may want some more argument on some
14   issues, such as military use, whether it is beneficial or pro-
15   per riparian use.  I think I indicated that it certainly is
16   beneficial, but whether it is a proper riparian use.

17          (4).  There may be new problems raised which you will
18   want to brief and argue, such as (a) the date of Fallbrook's
19   earliest appropriative date, or (b) the effect of the United
20   States' filing for a permit, and others -- I'm not trying to tell
21   you what they will be.

22          (5).  Eventually the Court will rule on all of these
23   problems, or most of them.  It may be that the Court may reserve
24   ruling on some of these problems until trial.  For instance,
25   going back to military use again, I am not so sure but

1  that the question of military use I would rather rule on after

2  I hear all the evidence in the case.   That is my present think-

3  ing about it.   I don't know.

4         (6).   (Still on Stage II).   The Court will formulate

5  some order crystallizing these various rulings based upon the

6  facts, the issues and such exhibits as are stipulated to, and

7  formulate an order or an opinion.

8         Then we come to Stage III.   So far we have been deal-

9  ing with just the immediate family that have been working on

10  this problem.   (1).   The Government will prepare its motion

11  to file an Amended Complaint, and (2) there will have to be,

12  I take it, an Amended Summons, and (3) there will have to be

13  served the Amended Complaint and the Amended Summons upon all

14  the parties in this case.

15         MR. VEEDER:   I didn't hear what your Honor said after

16  "amendment."   Did you say "right to be served"?

17         THE COURT:   The Government will prepare a notice of

18  motion that it seeks leave to file this Amended Complaint and

19  will lodge the Amended Complaint.

20         Let me interject.   I take it that if you lodge the

21  Amended Complaint and gave notice of motion that you intended

22  to file it and that was served on everybody, if at the date of

23  the hearing the Court ordered the Amended Complaint filed it

24  would not need to be served again.

25         MR. VEEDER:   That is why I interrupted, your Honor,

1  because I think we have to serve it on everyone.

2      THE COURT:  Let's go back again.  If you serve your

3  notice of motion to file an Amended Complaint, which you have

4  lodged, and you serve that proposed Amended Complaint on every-

5  body, and at the date of hearing the Court orders that you file

6  the Amended Complaint, that it be filed, and I do not think

7  that you have to re-serve it.

8      MR. VEEDER:  That is right.

9      THE COURT:  That is common practice.

10      MR. VEEDER:  That is right.

11      THE COURT:  The Court merely makes an order then as

12  to how long people have to answer, etc.  At any rate, those

13  things would be served -- the notice to amend the Complaint,

14  the proposed Amended Complaint.

15      At the same time, (3) -- still on Stage III, the

16  Government would serve on everybody a copy of this Pre-Trial

17  Order on the Stipulation and a copy of the Pre-Trial Stipulation

18  of Facts that we have arrived at, and a copy of the Pre-Trial

19  Stipulation on Issues, and a copy of the Pre-Trial Stipulation

20  on Exhibits.

21      And (4) -- still on Stage III, you would serve a

22  notice reading something like this -- it would have to be in

23  two parts: (a) There would be a hearing on the motion to amend

24  the Complaint so that it could be heard, and (b) there would be

25  notice at the trial

1  date, which we would expect by that time would be set, that

2  there would be presented a prima facie case on these stipulated

3  facts and that anybody present could present evidence to contra-

4  vert those facts.

5      By "prima facie case" I mean that some expert would

6  be put on the stand, who knows most of this, and let him either

7  read it off or use some other shorthand method to start holding

8  a hearing on these stipulated facts.  Anybody who objects could

9  offer evidence, but if no evidence was offered or if the Court

10  was not convinced by the evidence offered, the Court would pro-

11  pose to find the facts to which you gentlemen had stipulated as

12  the facts binding on all defendants in the case.

13      (c). That the Court had heretofore made rulings on

14  these stipulated facts which bound only the parties to the

15  stipulation, and that anybody present could come in and be

16  heard on those rulings.  But if the Court was not convinced by

17  the showing made, the Court would propose to rule as it had

18  ruled as to the parties to the stipulation that these would be

19  the principles of law that would govern the trial of the case.

20  In other words, that the Court would take these rulings as made,

21  as between you people, and say, 'Now I propose tentatively to

22  apply these to everybody.  If some of you don't agree, here is

23  the time to be heard.'  I think you follow me there.

24      (d).  Finally, a part of the notice would say that

25  after this is done these rulings made will control throughout

1    the trial, unless varied or changed because of some controlling

2    precedent that might arise or is discovered, etc.

3            Then Stage IV would be the beginning of the trial,

4    and the first procedure on that trial would be to take up and

5    do the things which we said we were going to do in Stage III,

6    No. (4).

7            Now, the only other comment that I have to make on

8    this procedure is that this Master proceeding meanwhile, I

9    think, would be started, and if we get the Master appointed it

10   may well be that in Stage III, where we are having a lot of

11   these notices, we can serve notice of the appointment of the

12   Master. If anybody wants to object, they can come in and ob-

13   ject. Or it may be that we will proceed with the Master on a

14   different basis; merely appoint him and put him to work and if

15   somebody wants to object, let them make their own objection.

16           What do you think of that as just a general outline

17   of procedure, having in mind due process to 3000 defendants

18   who are not here in the Courtroom?

19           MR. VEEDER: I think it is a good idea. I think it

20   would be due process, myself, and I think it is the only way

21   that it can be handled, frankly.

22           THE COURT: I scribbled this out in three minutes,

23   although I did some thinking about it, and I don't anticipate

24   that it is perfect but it will at least give you some pattern

25   to work on and give a little thought to.

1        Mr. Swing?

2        MR. SWING:   I do not know under which particular one

3  of the Rules of the Notice of Motion you file an Amended or

4  Supplemental Complaint.  Probably ten days is the usual time.

5  But in view of the fact that it is going to have to be served

6  upon, say, 3000 defendants, and the fact that the gun is in your

7  hand and you are the one who will fix the time when you send it

8  out, I think that I would like to ask Mr. Veeder to notice it

9  at least three weeks ahead.  I might be caught on the way to

10  Sacramento or some place and lose an opportunity to look up a

11  couple of cases that I might want to look up.

12        Would that be within your view of what is a reasonable

13  request, Mr. Veeder?

14        THE COURT:  Mr. Swing, I think you have another pro-

15  blem there.  This being a quiet title suit, offhand I suppose

16  that the Government may publish against those defendants whom

17  they cannot serve.

18        MR. VEEDER:  That is right.

19        THE COURT:  And for publication you have to make some

20  showing that you tried to serve them.  I'm thinking out loud.

21  You can publish a summons.  Can you publish a Notice of Motion

22  to file an Amended Complaint?  Let's give that a little thought.

23  We may have to go at this on a different basis.  We may have to

24  proceed as we talked about and then publish as to defendants

25  whom you are unable to serve.

1    MR. SWING:  Well, the summons would come after your

2    Honor had made the order that the Amended or Supplemental Com-

3    plaint, whatever it is going to be, was filed.  Up to that

4    time it is just a proposition, and what I am trying to get Mr.

5    Veeder to do is that when he shoots at the target, the calendar,

6    that he shoot twenty-one days ahead.

7        MR. VEEDER:  I'll do that at least.

8        MR. SACHSE:  The same thing that Mr. Swing has just

9    said was in my mind, and I think that this is a hole in your

10   proposed suggestion.  I like everything about it, but I am

11   curious if this will work.

12       'As I understood it, you said to have Mr. Veeder lodge

13   the Amended Complaint and serve notice of motion.  I don't think

14   that that is going to take care of service of summons.  You

15   cannot issue a summons on a lodged Complaint.  The Complaint

16   has got to be filed.  So Mr. Veeder surely could serve the

17   proposed Amended Complaint with his notice of motion.  But then

18   your Honor grants permission to file and you still haven't a

19   summons issued on this Amended Complaint and he is going to

20   have to serve all over again.  Or am I in error?  I am no ex-

21   pert on Federal Procedure, but I think there is a hole in there.

22       THE COURT:  If it has to be considered, I think the

23   difference is this:  If a summons has been issued already on

24   the original Complaint and served on certain parties, then I

25   don't think they are entitled to any --

MR. SACHSE:  There is no trouble with them.  But these new 3000 parties will be served twice, under this procedure.

THE COURT:  Yes.  Well, I gave you something to start with.  You work from there and try to work out these bugs out of it.

MR. VEEDER:  The summons to the Complaint and the Amended Complaint both go out at once.

THE COURT:  Of course, you could do it this way.  The Court could make an order, and could probably serve the Counsel who have appeared, and if the Court let the Amended Complaint to be filed, make its order which would bind only those parties, and then serve it -- while you are doing it, serve it on everybody with a notice that they might move to attack it thereafter.

MR. VEEDER:  I think that is about the only way it can be done, your Honor.

THE COURT:  I am merely trying to give you something to shoot at, here, and see what you can work out.  It will have to be given some attention.

MR. DENNIS:  There is one practical problem that bothers me, and that is that with the number of defendants that they have in this action and the varying places of their residence they are certainly not going to be able to serve even 60 or 70% of them in thirty days.  It would be impossible to do it.

1          The other thing is this.  While I am not sure whether

2  it follows in Federal Court the same as in the State Court, but

3  the defendants would not answer an Amended Complaint which was

4  filed prior to the time of answer without giving notice to

5  anybody.  But as to those who answered, they would have to have

6  notice.

7          THE COURT:  I think that is the same.  It will take

8  a little work on this.

9          Now I am not convinced that my so-called Four Stage

10  procedure is the way to do this.  If somebody has a better idea,

11  I will be glad to have your suggestions.  But we are going to

12  have to formalize some program and then try to stick to it.

13          Are you coming back this afternoon again?

14          MR. VEEDER:  Yes.

15          MR. SACHSE:  Mr. Veeder and I are planning to work

16  together.

17          MR. VEEDER:  It occurs to me that if Mr. Dennis, Mr.

18  Moskovitz and Mr. Stahlman could work along with us, then we

19  wouldn't be going over this again and again.

20          THE COURT:  All right.  If you get into a big dis-

21  pute, just call me and I will come in and settle it in short

22  order.

23          Now what about a trial date?  Can we fix a target

24  date in this matter?

25          MR. SWING:  I am hoping that your Honor will have the

1  assistance that has been discussed of a Master to chop some of

2  the small kindling for you.  I anticipate that he may not be

3  able to work every day.  I have heard of Masters who had to take

4  a day off occasionally for personal matters.  I figure three

5  months with a Master before he both hears and digests and writes

6  out something to submit to your Honor.  So I think the trial

7  date is not in the near future, as far as your Honor being call-

8  ed into action of hearing evidence is concerned.

9      THE COURT:  Well, we probably should have a continued

10  date at which some of these other points that you want to brief

11  can be brought up.  Assume that we had a continued date of about

12  thirty days from now.  I haven't any time open earlier than the

13  28th of January, and that will probably be too soon.  Say the

14  first week or so in February.  Assuming that you wanted ninety

15  days to make these services and all that sort of thing, it

16  would be March, April, May.  Do you think we can fix a trial

17  date in June or July?

18      MR. VEEDER:  I think/would be --
                        that

19      How about you, Mr. Sachse?  Are you still going to

20  Europe?

21      MR. SACHSE:  No, I have cancelled all my vacations

22  plans.

23      MR. VEEDER:  Your Honor mentioned something about a

24  date thirty days from now.  I think that the Government would

25  be in a position then to state with a degree of certainty as to

1    a good trial date.  I think June 15th would be something to

2    shoot at now, though.

3            MR. SACHSE:  I made myself a vow when I started this

4    case that I was never going to object to any suggestion and ask

5    for a day's delay, but instead of thirty days could we make it

6    no earlier than the 10th of February?  I have one thing that

7    might interfere in the first week of February.  That starts the

8    second week of February.

9            MR. VEEDER:  Let's put it down for the 17th of Febru-

10   ary.  That is a Monday.

11           MR. MOSKOVITZ:  Fine.

12           THE COURT:  I have a trial set for the 18th of Febru-

13   ary.  I would say the week of Monday the 10th or Tuesday the

14   11th would be the time to do it.

15           MR. SACHSE:  All right.

16           THE COURT:  Let's make it the 10th.

17           MR. VEEDER:  All right.  Would we need any more than

18   one day?

19           MR. SACHSE:  As I understand it, the one thing we are

20   confident that we will be able to do on the 10th is that we

21   will be able to tell his Honor that these are the facts to which

22   we have agreed, and these are the facts as to which we have dis-

23   agreed.

24           MR. VEEDER:  That these are the ones that have been

25   served on everybody.

1      MR. SACHSE:  That is right.  We will have that done.

2  If that is all, we will not need more than one day.

3      THE COURT:  Let me put it this way.  I would expect

4  that you are going to get together on a statement of facts which

5  I can sign long before the 10th and approve.

6      MR. SACHSE:  So do I.

7      THE COURT:  And a statement of the issues that I can

8  approve before the 10th, and probably there will be some ex-

9  hibits, even if you have to take some of them out and hold them

10  for a later consideration.  So therefore on the 10th you could

11  bring on for argument the matters that you raise as to Fall-

12  brook's starting date, the matters that they raise about the

13  United States' application for a permit.  We could put on the

14  matter of military use again, if I decide I want to.

15      MR. SACHSE:  I have a feeling that we may be a little

16  early on the thing.  It is up to Mr. Veeder.  I don't know how

17  much time he can spend here.  I can give all the time that is

18  necessary.

19      THE COURT:  He has assured me that this case has first

20  precedent; that he can be here at any time we need him.

21      Isn't that what you said?

22      MR. VEEDER:  I didn't think I had gone overboard,

23  your Honor.  But sufficient to the day is the evil thereof.

24  I'll be here.

25      THE COURT:  Is this too early for that?

72

1    MR. VEEDER:  Your Honor is raising the question about

2  military use being a riparian use or vice versa.  I don't suffer

3  from shock very often, but if there is any doubt on that issue

4  I submit to your Honor that we would like to get that settled

5  pronto, and I think that February 10th is not too early, be-

6  cause if there is any doubt in your Honor's mind on that point

7  I think that we must look at it.  I think that we must realize

8  that at stake is the whole Camp out there and I couldn't imagine

9  a more vital issue to this part of California than that question.

10 So I certainly would like to have it down for argument as soon

11 as we can, and February 10th is fine with us.

12    THE COURT:  All right.

13    What about these other problems, Mr. Veeder, that

14 you raised as to Fallbrook's starting date?  Can you get a

15 brief in and get a reply from Fallbrook on that before the 10th?

16    MR. SACHSE:  Might I leave it this way, your Honor.

17 If we don't get together, if we can't work this thing out on

18 the facts, which I am afraid that we can't --

19    MR. VEEDER: Now I don't know why you are saying that,

20 because I have agreed that we will append to the Agreed Facts

21 the very documents that are involved.  So I don't see why we

22 can't get together.

23    THE COURT:  Well, you can get together on the facts

24 now.

25    MR. SACHSE:  Then my suggestion was going to be that

1  if Mr. Veeder wants to bring up a legal question on the priority

2  dates, instead of making it a formal notice of motion if he

3  would simply let us know some time in advance of the 10th that

4  he plans to do so, give us time to prepare ourselves for it,

5  that would be sufficient.  I wouldn't ask him that he formally

6  notice it for hearing on the 10th.

7           MR. VEEDER:  Let's set it down that way.

8           THE COURT:  Let's put it down now for the 10th, un-

9  less somebody later finds that it is impossible to take care of

10  it, and let's require the Government to --

11           Can you get a brief in by sometime the week of the

12  20th, two weeks from now, say by Friday the 24th of January?

13           MR. VEEDER:  You mean we would argue it then?

14           THE COURT:  No, can you get a brief in by that day?

15           MR. VEEDER:  I will try.  The 24th, that is --

16           THE COURT:  A little over two weeks.

17           MR. SACHSE:  This is on the priority question?

18           MR. VEEDER:  Yes.

19           We can do that.

20           THE COURT:  As a matter of fact, the other side can

21  be working on the law before they get your brief.  I would

22  think that you could have more time than that.  I would give

23  you until about, say, the 28th of January.

24           MR. VEEDER:  All right, that is fine, thank you.

25           MR. SACHSE:  On the military use, your Honor, I think

1    it is briefed.

2            THE COURT:  I'm not talking about military use.  It

3    has been briefed.

4            January 28th for the Government's brief, and Fall-

5    brook and the State of California and anybody else who wants to

6    be heard, by Friday, February 7th.

7            MR. SWING:  Mr. Veeder, do I understand that you are

8    going to brief the military use as a riparian use?

9            THE COURT:  He has briefed it already.

10           MR. VEEDER:  We have briefed it, but I assume that

11   you wouldn't object if we filed some more on it.

12           MR. SWING:  Your Honor please, I have the very faint-

13   est recollection of the impression of Mr. Veeder's brief on

14   the point.  I thought he touched over it rather lightly, not

15   in his usual style.

16           Maybe you have written all you have to say on it.

17           MR. VEEDER:  No, but if you think we went over it

18   lightly on August 18, 1957, we will do a re-do upon it.  I'm

19   hurt, because this is probably the most important question that

20   your Honor has touched on, when all is said and done.  If there

21   is no objection to an additional --

22           THE COURT:  There is no objection to   additional

23   authorities being filed.

24           MR. MOSKOVITZ:  Your Honor, I think that it would be

25   helpful, if it were possible, now or later this date, to frame

1  this second issue as to priority of applications.

2          MR. VEEDER:  I think this afternoon we can have that

3  done.

4          THE COURT:  You can work on it this afternoon, and I

5  will be available if you have a problem.

6          It seems to me also that we ought to have on the

7  calendar for February 10th the formulation of this procedure

8  and figuring out exactly how we are going about all this matter.

9          MR. MOSKOVITZ:  In other words, using what you have

10  just given us as a rough outline, as a basis.

11          THE COURT:  As a springboard, to be prepared to have

12  your suggestions made, and I think that the Government should

13  take the responsibility of the crystallizing a plan of action--

14  it doesn't have to be my plan, but starting from here crystallize

15  a plan of action to submit on the 10th.

16          MR. VEEDER:  We will do that, your Honor.

17          THE COURT:  Anything else?

18          If we get that far along on the 10th, we might shoot

19  at a trial date around the middle of June.

20          I think that Mr. Swing is correct that the Master is

21  going to need some time to familiarize himself with this case,

22  with the rulings the Court has made already, with the physical

23  problem that he will have as to where he is going to work.  But

24  I wouldn't see any objection to the Master starting hearings

25  prior to the trial date, would you?  I don't know that the

1   Master has to do his work after the trial starts.

2            , Mr. Veeder, did you have any word on this Master

3   situation?

4            MR. VEEDER:  Yes, I talked to Washington this morning

5   on it -- the wires didn't go down, and I said that we would

6   talk further about it on the 15th of January when I returned.

7   But I think that there is some -- I don't want to be held to

8   this -- I think that something can probably be worked out.

9            THE COURT:  When will you advise me?

10           MR. VEEDER:  I will advise you, I hope, about the

11  afternoon of the 15th of January.

12           THE COURT:  Have other Counsel seen copies of this

13  proposed order on the Master?

14           MR. VEEDER:  No.

15           THE COURT:  Do you have an extra copy?

16           MR. VEEDER:  I will have those made up and distribute

17  them, if you want me to.

18           THE COURT:  I would like to have them see it.  My

19  impression, in reading it over, was that probably the order was

20  a little narrow.  I realize that an order of that sort can't

21  be too broad, but on the other hand I felt -- and I can't tell

22  you right now in what respects -- but I felt, if I had any

23  criticism of it, that the order was a little narrow.

24           MR. VEEDER:  I have an extra copy, and then I will

25  have some more reproduced.

1  THE COURT:   We can tend to that later.

2  MR. VEEDER:   Did you get a copy, Mr. Sachse?

3  MR. SACHSE:   Yes, I have a copy.

4  THE COURT:   The matter is continued until February

5  10th, with the understanding that Counsel are still going to

6  work on this today and maybe tomorrow, and if I can be of any

7  help, call on me.

8  MR. MOSKOVITZ:   Should we set aside on the calendar

9  more than that one day, February 10th, in your opinion?

10  THE COURT:   I am going to set aside a couple of days

11  anyhow.   On Monday we may have some interruptions, but I will

12  not have the criminal calendar.   I would say two days anyhow.

13  As I understand, you are going to have your proposed

14  Amended Complaint available for at least cursory or informal

15  examination by Counsel within a short time, aren't you?

16  MR. VEEDER:   Yes, that is correct.

17  THE COURT:   We can talk about that on the 10th, too.

18  Thank you very much.

19  MR. SWING:   On the 10th is that at 10:00 o'clock,

20  your Honor?

21  THE COURT:   10:00 o'clock.

22  MR. SWING:   Thank you, your Honor.

23  (ADJOURNMENT)

24

25