# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

UNITED STATES OF AMERICA,

                Plaintiff,

      vs.                  No. 1247-SD-C

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

                Defendants.

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:      San Diego, California

Date:      **February 11, 1958**

           Pages:  862 - 888, Inclusive

FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By_____ Deputy

JOHN SWADER
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,       )
                                )
                    Plaintiff,  )
                                )
vs.                             )        No. 1247-SD-C
                                )
FALLBROOK PUBLIC UTILITY        )
DISTRICT, et al,                )
                                )
                    Defendants. )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California

February 11, 1958

APPEARANCES:

    For the Plaintiff:        WILLIAM H. VEEDER, Esq.,
                                   WILLIAM E. BURBY, Esq.,
                                   Speical Assistants to the
                                   Attorney-General
                                   Department of Justice
                                   Washington, D. C.

- - -

APPEARANCES: (continued)


| | |
|---|---|
| For U. S. Marine Corps: | LT. DAVID MILLER |
| For Defendant Vail Company: | GEORGE E. STAHLMAN, ESQ. |
| For Defendant Fallbrook Public Utility District: | SWING, SCHARNIKOW & STANIFORTH, by: PHIL D. SWING, Esq., and F. R. SACHSE, Esq. |
| For Defendant State of California: | EDMUND G. BROWN, Esq., Attorney-General, by ADOLPHUS MOSKOVITZ, Esq., Deputy Attorney-General. |
| Proposed Special Master: | JOHN M. CRANSTON, Esq. |

- - -

864

SAN DIEGO, CALIFORNIA, TUESDAY, FEBRUARY 11, 1958, 10:00 A.M.

- - -

3    (Other Matters.)

- - -

5    THE COURT:  Call number 5 on the calendar.

6    THE CLERK:  5 -- No. 1247-SD-C, United States of

7  America vs. Fallbrook etc., et al.

8    Further pre-trial.

9    THE COURT:  We are going to meet informally here in

10  the courtroom -- we have more room here -- the same as if we

11  were in Chambers, without the Reporter for awhile.

12    You wanted a few minutes before we started, did you?

13  I think Mr. Veeder asked for a few minutes.  Apparently, he

14  has already taken advantage of my permission.

15    I have asked Mr. John Cranston to be here.  Mr.

16  Cranston, will you stand up, please.  This is the gentleman

17  we have been discussing as a Master in the case.  I have asked

18  him to be here today.

19    I will be back in a few minutes, as soon as Mr.

20  Veeder is ready.

21    (An informal conference was then had in the court-

22  room.)

- - -

SAN DIEGO, CALIFORNIA, TUESDAY, FEBRUARY 11, 1958, 3:30 P.M.

- - -

THE COURT:  On the record, Mr. Reporter.

We met here this morning and afternoon.  You have the names of the parties present:  Messrs. Moskovitz, Swing, Sachse, Hall, Stahlman, Burby, Veeder amd Cranston.  We have been sitting informally here today.

Mr. Veeder first went over the contents of his proposed Amended and Supplemental Complaint, listing the supplemental matters that he expected to set forth and listing the amendatory aspects of the Complaint and the general description of his proposed prayer for relief.

A discussion occurred as to Mr. Veeder's intention to include in the Complaint and in the prayer for relief allegations in connection with three Indian Reservations within the watershed, land in the public domain and the National Forests.  At that time Mr. Veeder stated that the inclusion of these matters was not for the purpose of augmenting rights to which Camp Pendleton and the various Government projects at the end of the Santa Margarita River might be entitled, but were to be included because of the language of the Ninth Circuit requiring this case to settle all water rights within the watershed.

Now Mr. Veeder, you made a statement in that connection.

866

1      MR. VEEDER:  Yes.

2      THE COURT:  Repeat it, if you will.

3      MR. VEEDER:  Yes.  The claims of the United States

4  of America in regard to the claims of the three Indian

5  Reservations, the National Forests and the lands embraced in

6  the public domain are claims independent of and separate from

7  the claims for the military enclave concerning which the

8  original Complaint was filed.

9      THE COURT:  And do I understand, further, that you

10  expressly state that the purpose of including in the suit the

11  Indian Reservations, the public domain and the National Forests

12  is to secure an adjudication of the rights of the United States

13  to water as it pertains to those particular properties?

14      MR. VEEDER:  That is right.

15      THE COURT:  And is not for the purpose of thereby

16  augmenting the rights which might be claimed by Camp Pendleton

17  or the military establishment at the end of the Santa

18  Margarita.

19      MR. VEEDER:  I think the term your Honor used was

20  "augmenting and bolstering," and I certainly agree.

21      THE COURT:  You agree.

22      MR. VEEDER:  Oh, yes -- in fact, I will stipulate.

23      THE COURT:  Then in view of the Government's

24  position on that, further discussion indicated that the

25  Government might have brought an independent action involving

1    their rights to the Indian lands, the public domain and the

2    National Forests, which could well have been consolidated for

3    trial, or the Government probably might have asserted their

4    rights to water on these lands as being other land owned by

5    them which should be adjudicated, and although no agreement

6    was reached the parties reserved the right to object to the

7    inclusion of these three types of areas.

8              Apparently, unless Counsel are otherwise advised, it

9    looks like there would be no objection to this inclusion.  Is

10   that a fair statement?

11             MR. SACHSE:  That's the size of it.  I have no

12   objection at this moment.  I can't say that I may not think

13   one up.

14             MR. VEEDER:  Are you on the record?

15             MR. SACHSE:  I am on the record for that.  At this

16   moment, I have no objection.

17             THE COURT:  Next, a situation was brought up about

18   an attempted securing of a disclaimer by certain landowners

19   within the watershed, and the question arose as to what was

20   meant by "percolating waters."  Mr. Moskovitz opined that

21   under the law of California "percolating waters" might well

22   mean waters which were part of or at least fed the stream.

23             MR. MOSKOVITZ:  Had some connection with the stream,

24   eithr feeding it or being fed by it.

25             THE COURT:  And it was agreed that Mr. Veeder, in

1   conjunction with Mr. Moskovitz, Mr. Swing, Mr. Sachse, Mr.

2   Stahlman and others, would prepare a definition, so that,  for

3   the purpose of this litigation, we could use the term

4   "percolating waters" as waters which did not bolster or feed

5   or augment the stream.

6           MR. MOSKOVITZ:  Or which are affected by the stream.

7           THE COURT:  And that we therefore could proceed on

8   a definition that we would approve and use the term "percolat-

9   ing waters" as those types of waters as to which the Govern-

10  ment would not seek relief, as to which the Government would

11  let the landowners have full use.  I think that is what we are

12  talking about.

13          MR. VEEDER:  Yes; concerning which there would be no

14  adverse claim.  I think that was it.

15          THE COURT:  So that the windup of the situation was

16  that the Government will be prepared shortly to demark areas

17  of ground in the watershed as to which, in the opinion of the

18  Government, they make no claim to water, because the waters,

19  if any, in this particular ground are "percolating waters,"

20  and we are going to define the term; and that after the

21  Government has demarked these areas hearings be held before

22  the Master so that at least a prima facie case could be made

23  with the facts that are in the Government's possession, and

24  that findings and conclusions be drawn, and that if the

25  findings and conclusions were accepted the Court could then

869

1   make an order approving these findings and conclusions, in

2   which event the parties who owned land in these demarked areas

3   as to which findings were made that there was nothing but

4   percolating waters involved might then disclaim any interest

5   in this lawsuit, with assurance by the Government, based upon

6   these findings and conclusions, that the Government had no

7   objection to their drilling wells to reach this percolating

8   water.

9       MR. VEEDER:  May I add, it is my understanding that

10  there would be a disclaimer of any adverse claims against the

11  United States and a corresponding agreement by the United

12  States that if wells were drilled they would have no objection.

13  Wasn't that about the summary of it?  That was what I had in

14  mind.

15      THE COURT:  Yes, that is it.  I am thinking of the

16  practical end.  If the Government can say something to the

17  effect that this disclaimer is based upon the findings made

18  by the Master and approved by the Court, the Government then

19  takes a position which would make it possible to get these

20  disclaimers which it might not otherwise get.

21      There remains, of course, the problem that as to

22  these people who have rights to percolating waters there might

23  have to be a reservation that their rights --

24      You made some suggestion about other people in the

25  area.

MR. VEEDER:  You are talking about surface runoff.

MR. SACHSE:  I was talking also about the question of surface runoff.

THE COURT:  Let's leave surface runoff for a minute.  You are talking about correlative rights of these people within an area.

MR. SACHSE:  If we can assume that any particular block of defendants can disclaim, and the Government can accept their disclaimer -- in other words, that they are only taking percolating waters, then I don't think that they are necessary parties to this case at all, because their rights are simply correlative with those of their neighbors.

MR. VEEDER:  There would be no adjudication of one as against the other.

MR. SACHSE:  It would not be necessary to have an adjudication of one as against the other in that case.

MR. VEEDER:  Isn't that an independent question at this phase of it?

MR. SACHSE:  I think so.  I don't think it belongs here at all.

MR. STAHLMAN:  I don't think so either.

There is one other thing:  when you say "drilling wells," you ought to say "extracting waters."

THE COURT:  Yes, a spring -- a natural source.

MR. MOSKOVITZ:  I hope that we can be free to

1   develop a term other than "percolating waters." When that

2   term is used in cases, it might be confusing, even if you try

3   to give it a special connotation.

4          THE COURT:  We might coin a phrase.

5          MR. MOSKOVITZ:  Yes, we might coin a term.

6          THE COURT:  It might be better to take a word that

7   does not have a technical meaning in the law of water rights.

8          MR. STAHLMAN:  Hasn't it already been used in

9   various cases?  We know what we are talking about.

10          MR. VEEDER:  I think that we can find a definition

11   of "percolating waters" as such which will be acceptable to all

12   of us.  We can say that "percolating waters" in connection

13   with this litigation means thus and so.  It is a word of art

14   in regard to the molecules of water suspended in the soil and

15   not feeding or being connected with any natural stream.

16          THE COURT:  Let's pass it because you are going to

17   work on the definition.

18          MR. VEEDER:  I was wondering whether the Special

19   Master and your Honor shouldn't participate in regard to the

20   selection of that definition, because the lawyers may come up

21   with a definition to which you will not agree.

22          THE COURT:  Somebody is going to have to approve it.

23   We will be glad to participate with you in working that out.

24   The first thing to do is to get a draft and see where we can go

25   from there.

1   There was next raised the question of conservation

2   dams, small reservoirs, flood control, minor basins in these

3   areas that might have been demarked by the Government as being

4   suitable for these disclaimers, and Mr. Veeder contended that

5   such unnatural impediments to the flow of a creek bed have

6   affected the downstream flow of water, and it was, I think,

7   agreed by all here that such soil conservation dams and other

8   impediments were, in substance, reservoirs and that the persons

9   who operated them were thereby appropriating water and not

10  making a riparian use.  I don't think we had any dispute about

11  that.  It might be well to incorporate that into some order

12  later on.

13      MR. VEEDER:  Certainly that would be part of the

14  litigation.  I mean, any disclaimer or any stipulation on our

15  part would not embarrass such a boundary.

16      THE COURT:  In fact, it would make it clear that the

17  Government reserved the right to object to reservoirs or dams

18  impeding the flow of water.

19      The Government was going to prepare and submit these

20  areas.  How soon did you think that could be done?

21      MR. VEEDER:  I will have to talk to the Colonels.  I

22  think it can be done rather rapidly.

23      Am I right?  The Colonel nods his head "Yes."

24      THE COURT:  Next, there was considered the question

25  whether the proposed Amended and Supplemental Complaint ought

to be filed ex parte, with a right to object thereafter, or

1  whether a motion should be made for the purpose of securing

2  permission to file it, and the Court suggested as a solution

3  to that problem the following:

4          That a motion be made for leave to file an Amended

5  and Supplemental Complaint; that the mechanics of this be

6  broken down into three steps:

7          The first step to concern the parties for whom

8  appearances have been made by Counsel; that as to them (1)

9  summons had already been served, so no problem of summons is

10  involved; (2) that the motion for leave to file the Amended

11  and Supplemental Complaint be noticed for a short time after

12  the statutory 10-day period, say 12 to 15 days after the pro-

13  posed Amended and Supplemental Complaint are ready to be

14  lodged, and that the time and place of hearing for leave be

15  fixed in this court for that date; that service be made of the

16  proposed Amended and Supplemental Complaint, and of the notice

17  only on the lawyers who have appeared for parties at that

18  stage of the case.

19          Incidentally, I think it could well be proper to

20  lodge this Amended and Supplemental Complaint, in addition to

21  serving it with your notice.  The Court has a procedure for

22  lodging it.

23          MR. VEEDER:  It is with the Clerk.

24          THE COURT:  It is with the Clerk.  It is not filed

25  until permission is granted.

1          The second step would be to fix another date for

2    hearing at a time in the future sufficient to permit service

3    on the next group of people, and this next group of people

4    would be those people who have previously been served with

5    summons, including those who had appeared in pro per.  Again,

6    no problem of summons would be involved since they had already

7    been served with summons, although the Court had made an order

8    that no defaults be taken.  There would be served on them a

9    notice of motion for leave to file and a copy of the proposed

10   Amended and Supplemental Complaint, and it was the anticipa-

11   tion of the Court that there would probably be little, if any,

12   objection, and, unless good cause were shown, at that second

13   hearing the Court's rulings would be the same as at the first

14   hearing.

15          Then there was left as the third step the new

16   defendants upon whom --

17          MR. STAHLMAN:  Those who had been served and had

18   not answered.

19          THE COURT:  I included that -- all those who had

20   been served.

21          MR. STAHLMAN:  You said who had appeared in pro per.

22          THE COURT:  Including those who had appeared in

23   pro per.

24          The third step would include those who had not yet

25   been served with summons or Complaint, and as to them the

notice that would go out would not be a notice of motion for
leave to amend.  The Court would make an order permitting the
Amended and Supplemental Complaint to be filed, bringing in
such new parties as might be involved, but a notice would go
out fixing a time and place at which any motions or objections
to the Complaint under the Rules, on any of the grounds set
forth in the Rules, were to be made, the notice to indicate a
time and place in this Court when any such motion could be
heard, and that those people then be served with that notice
and with summons on the Amended and Supplemental Complaint
and with a copy of the Amended and Supplemental Complaint.

It was also suggested that that order permitting the
Amended and Supplemental Complaint to be filed then might be
made shortly.  The only question there would be whether or not
the issuance of summons on that would "gum up" the first two
steps.  I doubt that it would.  You can always get an alias
summons.  If summons were issued naming everybody, with that
third step, and later if any problem came up -- I don't see
how it could come up.  You have already summons served in the
first two steps.  So that order probably could be made and
service as to those people could go on as you could make it.

Now in addition to serving these three groups of
people with the documents already enumerated, there was the
further proposal that the following documents be served at
the same time, if possible:

1    (1)   The ruling binding certain parties to a stipu-

2    lation and the interpretation of the stipulation, which would

3    include also a copy of the stipulation which was a part of the

4    order.

5    Let me interject there.   What would be the attitude

6    of the Government if other people wanted to join in the

7    stipulation and be bound by the ruling?   I am thinking of the

8    parties who changed attorneys or who have no attorney presently

9    -- the major defendants, if they would be satisfied with it

10   or wanted to join in it.

11   MR. VEEDER:   We are in the unique position, in that

12   regard, of having them desirous of being parties to the

13   stipulation but not the interpretation that your Honor placed

14   on it.   Let's face it.   That is our view.   When I signed the

15   stipulation, it was across the board and it referred to every-

16   one.   But I am sure that your Honor --

17   THE COURT:   Well, eventually we are going to try to

18   accomplish the same thing by bringing it on for hearing and

19   giving everybody else a chance to shoot at it, and make the

20   same rulings, unless the Court is otherwise advised.   So I

21   don't see how you are hurt.

22   MR. VEEDER:   Well, except as I have said before, the

23   point I make is that certainly when we signed the stipulation

24   our intention was to have it bind the United States and

25   California, and I truly didn't expect to have it construed as

1    it was.   There were no restrictions on it when I signed it.

2    That's for sure.

3              THE COURT:   Suppose that the Oviatts wanted to come

4    in and say, "We agree to be bound by the stipulation and the

5    Court's interpretation thereof," will the Government approve

6    such --

7              MR. VEEDER:   Well, I will make a record that while I

8    have no objection to being a party to the stipulation, --

9              THE COURT:   You reserve all your objections.

10             MR. VEEDER:   I reserve every objection to every

11   interpretation.

12             THE COURT:   Reserving all your objections, can we

13   work out a procedure whereby other people can come in and

14   join?

15             MR. VEEDER:   The way I looked at that stipulation

16   that I signed, your Honor, was that it was signed with

17   California in the position of parens patriae.   I don't know of

18   any better term.   But I don't want to have anyone think that

19   we are accepting the interpretation, that's all.

20             THE COURT:   If somebody wants to join in it, under-

21   standing that you reserve all the objections that you have

22   heretofore made, and to be bound by the record on it.

23             MR. VEEDER:   It certainly isn't applicable to the

24   other land, that's all.

25             THE COURT:   Well, it is not applicable to the --

878

MR. VEEDER:   -- Forest lands, Indian lands, public lands.

THE COURT:   I'm glad that you mentioned that, because we want to make a record on that, too.

Let's go ahead with these other documents.

(2) To be also served, if we could get it out during the time that you are working on your Amended Complaint and if we get this pre-trial stipulation of facts approved as a predicate for it, would be rulings of the Court on some of these issues, when tentative rulings have been made on them.

(3)  The order appointing a Master.

(4)  Notice to all parties to object, if they had any objection, to the appointment of a Master, at a time fixed in this courtroom.

(5)  The time and place of some of these Master's hearings -- supplemental order.

(6)  The stipulation as to agreed facts that certain parties entered into, again with permission on the part of any person to join that stipulation if they wanted to -- just file a document that 'We join in the stipulation.'

MR. MOSKOVITZ:  Excuse me, your Honor.  Did we understand that we were going to try to put out this Agreed Facts at this time?  I thought that the decision was that that was in the nature of a pre-trial order which would have to be put out later.

1           THE COURT:  Well, it has to be put out later for

2    everybody to shoot at, but somebody suggested that it might

3    well go out as information --

4           MR. MOSKOVITZ:  As far as we have gone.

5           THE COURT:  Yes, and let them join in it if they want

6    to.

7           MR. MOSKOVITZ:  I have no objection at all.

8           MR. VEEDER:  What would you think of our doing this

9    -- because we are going to be working on this tomorrow -- of

10   having a notice accompany this service that agreed facts have

11   been prepared and that some questions of law have been prepared

12   and that they were lodged with the Court.  The data that would

13   be served is getting pretty voluminous.

14          MR. MOSKOVITZ:  I really don't see that anything

15   very much is gained by serving, at this stage of the proceed-

16   ings, the agreed facts.

17          MR. VEEDER:  I don't either.

18          MR. MOSKOVITZ:  I have no objection, but I don't

19   see that anything is accomplished by it.

20          THE COURT:  Somebody suggested that these people

21   might want to know what is going on.  It is going to have to be

22   done again.

23          MR. MOSKOVITZ:  Yes.

24          THE COURT:  It is going to have to be done as we

25   have already outlined.

Let's leave it out, then.

MR. SACHSE:   On this matter of the notice of motion for leave to amend, may I request, as to the notice of Mr. Veeder, at least 20 days instead of 10.  Or was it suggested 15 days?

THE COURT:   I said 12 to 15 days.

MR. SACHSE:   That would be all right.   I thought 10 days might be short, but 15 would be all right.

MR. VEEDER:   Mr. Swing at one time asked for more than that.

MR. SACHSE:   I think 15 would be enough.

MR. CRANSTON:   Getting back to this question of these notices, as I understood these three steps, this particular notice that you are talking about, the 15-day notice, was a notice to Counsel to appear to object to the motion for leave to file the Complaint.  Assuming that, after hearing any objections, the Court should order it to be filed and notice to be served on the defendants who haven't appeared or who have appeared in pro per, and the Complaint were filed, would not this notice be to appear to request it to be stricken from the file?  It would have to be a compound notice if it were going out before it had been filed.  That is a technical matter.

THE COURT:   That's right.   That step maybe should be to move to strike rather than to object.

881

MR. VEEDER:  That would be a lot simpler.

MR. CRANSTON:  Yes.  Presumably it is going to be filed.

THE COURT:  Once it is filed, it is filed.

MR. MOSKOVITZ:  You have the same problem with your third step, too.  If you want to get started on service of the Complaint, ordinarily you file it first and then serve it.

THE COURT:  We will have to hold up the third step until the Court rules on this motion.

MR. VEEDER:  That brings us to your Local Rule 4 (d) about the form of the amended pleading.

THE COURT:  What particular part of it?

MR. VEEDER:  It says:  "Unless otherwise permitted by the court, every pleading to which an amendment is permitted as a matter of right or has been allowed by the order of the court, must be retyped or reprinted and filed so that it will be complete in itself, including exhibits, without reference to the superceded pleading. . . "

There is a mechanical task that I was talking to our military friends about.  It is a big job.

THE COURT:  Of course, we can waive local rules.  But that doesn't solve your problem as to these new defendants.  We could waive the local rules.

What exhibits did you have attached to the first Complaint?

MR. VEEDER: Well, there was the Vail stipulated judgment. That was the primary one.

THE COURT: You would be a lot safer to use one form for service and not have a certain type of document, waiving the local rule, served on these lawyers and then have another type of document served on the new defendants. Some process server might get them mixed up.

MR. VEEDER: What I was going to suggest, if your Honor would permit, would be to take the original Complaint as prepared, incorporate into it in our process of preparation the supplementary and amendatory features of it, coupled with the new prayer, so that you would have a single document for service. What brought it to mind was your statement that it would be a motion to strike. Therefore, if they were successful in moving to strike, as surplusage or something else, it could be dropped out of the Complaint -- stricken out, literally drawn through, rather than having to come up with a brand-new set of pleadings to comply with the ruling.

THE COURT: If I grant any motion to strike, we will have the striking from the Complaint; we will not have the filing of a new one.

MR. VEEDER: That was our concern.

THE COURT: Will you attach to your Amended and Supplemental Complaint the exhibits that you had attached to the first Complaint?

883

1          MR. VEEDER:  Yes, we will.  It will be a considerable

2    document in itself -- the original Complaint, the original

3    exhibits, the several new exhibits that we are going to file --

4    in other words, there is a lengthy land description that we

5    are incorporating into it by reference.  For that reason, it

6    would be most helpful to us -- I have no objection to the

7    local rule -- I simply say that we could make it into a single

8    Complaint and have the amendatory and supplemental features

9    embraced in the same document and caption it so that it will

10   be known as that.

11         THE COURT:  That is satisfactory.

12         MR. VEEDER:  Is that all right?

13         THE COURT:  That is satisfactory.

14         Then this single document, with the exhibits, will

15   be the document that you serve on these three groups.

16         MR. VEEDER:  On all parties.

17         THE COURT:  On all parties.  All right.

18         Now another matter which was discussed was the

19   effect of the stipulation that has been entered into as now

20   affected by the inclusion in the Government's proposed

21   Amended and Supplemental Complaint of the Indian Lands, the

22   Forest Lands and the public domain; and you are going to

23   prepare a proposed stipulation, Mr. Veeder, for the Court's

24   approval, making clear that the stipulation that was entered

25   into heretofore, which the Court has interpreted, applies only

1   to the Government's claim at Camp Pendleton and shall not

2   limit the Government's right to assert water rights pertaining

3   to the three categories of land which you will have in the

4   Amended Complaint.  But again the inclusion of that land shall

5   not augment or bolster the rights downstream.

6           MR. VEEDER:  I don't see how they could.

7           THE COURT:  Well, you argued for a day before me that

8   they did.

9           MR. VEEDER:  No, your Honor, the thing that hurts me

10  the most deeply about that is that you wound up calling it a

11  "metaphysical" idea, when to me it was an incorporeal heredita-

12  ment  up and down.  But that is beside the situation.

13          THE COURT:  You are giving up on that point now,

14  are you?

15          MR. VEEDER:  No, we will argue that in the Ninth

16  Circuit.

17          THE COURT:  If you want to reserve that point, you

18  can enter into your stipulation reserving your contentions that

19  you have made on that historic date when I called it

20  "metaphysical" instead of an 'incorporeal hereditament.'

21          MR. VEEDER:  I have no objection.  What we will do

22  is to prepare that as a supplemental order to your order

23  interpreting the stipulation.  Is that all right?

24          THE COURT:  That is all right.

25          As I understand it, we are all in agreement on that.

1   It is a matter of drafting the language of it.  But we are all

2   agreed that when that stipulation was entered into and the

3   Government was demarking its rights, it was talking about its

4   rights at Camp Pendleton; it was not talking about its rights

5   in the Indian Reservations, etc.  So we will not have too much

6   trouble.

7       I think that is about a summary of where we are,

8   except our work on this order appointing a Master.   Have I

9   omitted any material matters?

10      MR. VEEDER:  Your Honor, Mr. Stahlman brought to my

11  attention that in your summarization you did not mention our

12  supplementary and amendatory complaint had additional factors,

13  particularly in regard to Fallbrook and the Santa Margarita

14  filings.

15      THE COURT:  I did not summarize any of the contents

16  of those.   He outlined his amendatory features, his supple-

17  mental features, and his prayer.  Do you want it summarized?

18      MR. VEEDER:  No, I don't think it is essential.  But

19  he brought up the point that the record might sound restrictive.

20      MR. STAHLMAN:  Somebody reading the record might

21  think that the request for the amendment was only for the

22  three types of land.

23      THE COURT:  All right.

24      (Further informal conference.)

25                          - - -

886

THE COURT:  I am trying to think of a method whereby we could let the parties who participated at the hearing object to the proposed findings of the Master and let him work that out and finally sign a set of findings as to one parcel, or he may combine two or three, and thereafter as he signs these he files them with the Clerk, and then from time to time we may decide to group some of these and bring them on for hearing and have them served and have everybody present so far you still don't have anything but particular findings as to a particular parcel, and I would visualize that that would be done in segments, maybe a tributary of a stream or some particular area geographically suited, or a finding on this land we are going to mark out; and then finally, of course, there has got to be some tying together of all this business, there has got to be some determination of correlative rights, and again the Master may participate in that -- I may want to have him work on what the correlative rights are in a certain tributary, and you are going to have to have a final hearing where you get the Master's final report, bundle up all these documents, whatever we may have him do.

That is what I am thinking of.  Are you thinking differently?

MR. VEEDER:  That is right.  That was my thought, along that same line.  You would have reference here to two separate notices, would you not?  You would have the participating

1  parties noticed at the time these partial findings of fact were

2  submitted.   Then I think finally you would have to have an

3  overall hearing in regard to all interested parties based upon

4  the final findings of fact.

5        THE COURT:   The only place I part company with you is

6  this:   because everybody is correlatively interested in every-

7  body else's water rights, when we hear these groups of findings

8  I would have everybody served.

9        MR. VEEDER:   You mean the whole family?

10       THE COURT:   Yes, and I think they can be served by

11  mail.   The Rules say that the Clerk shall notify by mail all

12  parties, and ten days after the service of notice of the

13  filing any party may serve written objections on the other

14  party.   If we varied it and provided by notice that this was

15  the time to make their objections, it seems to me that we could

16  serve that by mail.   It may contemplate people who appeared by

17  counsel.

18       MR. SWING:   May I be excused, your Honor.   I have an

19  appointment.

20       THE COURT:   You may, sir.    Thank you very much for

21  your help.

22       MR. SWING:   Thank you.

23       MR. MOSKOVITZ:   I think we are overloading the

24  record.   The Reporter is still taking all of this.

25       THE COURT:   I told him to take it again.   He can stop

now.   He can stop now.   We are just discussing it.

1          I think we are going to have to work this over

2    tonight and come back tomorrow morning.

3          (ADJOURNMENT TO WEDNESDAY, FEBRUARY 12, 1958, at

4    9:30 A.M.)

5                              - - -