ORIGINAL

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### CENTRAL DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,

Plaintiff,

vs.

No. 1247-SD-C

FALLBROOK PUBLIC UTILITY
DISTRICT, et al,

Defendants.

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:                     San Diego, California

Date:                          April 8, 1958

Pages:   983 to 1044

FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____

JOHN SWADER
OFFICIAL REPORTER
UNITED STATES DISTRICT COURT
325 WEST F STREET
SAN DIEGO 1, CALIFORNIA
BELMONT 4-6211 * EXT 370

1

IN THE UNITED STATES DISTRICT COURT

2

SOUTHERN DISTRICT OF CALIFORNIA

3

SOUTHERN DIVISION

4

- - -

5

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

6

- - -

7

UNITED STATES OF AMERICA,          )
                                   )
8
                        Plaintiff, )
                                   )
9
vs.                                )          No. 1247-SD-C
                                   )
10
FALLBROOK PUBLIC UTILITY           )
DISTRICT, et al,                   )
11
                                   )
                        Defendants.)
12 _____)

13

14

REPORTER'S TRANSCRIPT OF PROCEEDINGS

15

San Diego, California

16

April 8, 1958

17

18

APPEARANCES:

19

    For Plaintiff:        WILLIAM H. VEEDER, Esq.,
                           WILLIAM E. BURBY, Esq.,
20
                           Special Assistants to the
                           Attorney-General
21
                           Department of Justice
                           Washington, D. C.
22

- - -

23

24

25

1   APPEARANCES: (continued)

2

3       For U. S. Marine Corps:          COL. A. C. BOWEN
                                         COL. ELLIOT ROBERTSON
4                                        COMDR. DANIEL FLYNN
                                         LT. DAVID MILLER
5                                        LT. ROBERT NAGLE

6       For Defendant Vail Company: GEORGE E. STAHLMAN, Esq.

7       For Defendant Fallbrook
        Public Utility District:         SWING, SCHARNIKOW & STANIFORTH, by
8
                                         F. R. SACHSE, Esq.
9
        For Defendant State of
10      California:                      EDMUND G. BROWN, Esq.,
                                         Attorney-General, by
11                                       ADOLPHUS MOSKOVITZ, Esq.,
                                         Deputy Attorney-General
12
        For Defendants Arthur G.         CLAYSON, STARK & ROTHROCK, by
13      Reuter, Katherina C.             GEORGE GROVER, Esq.
        Gibbon, Philo Reuter and
14      Wm. W. Cottle:

15      For Defendants Carl N. Halde
        and Hester M. Halde:             TOM HALDE , Esq. by
16                                       GEORGE GROVER, Esq.

17      For Defendant Faulkner:          BERT BUZZINI, Esq.

18      SPECIAL MASTER:                  JOHN M. CRANSTON, Esq.

19

20

21

22

23

24

25

1    SAN DIEGO, CALIFORNIA, TUESDAY, APRIL 8, 1958, 9:30 A.M.

2            (Other matters)

3            THE CLERK:  No. 1, 1247-SD-C, United States vs.

4    Fallbrook.

5            MR. VEEDER:  Your Honor, there is a matter that has

6    come to mind that may have far-reaching effect on this liti-

7    gation and might be a factor from the standpoint of time.

8            The Fallbrook Public Utility District is now con-

9    demning lands for purposes of their Lippincott Project -- dam.

10   We believe that that is a drastic change in the status quo and

11   could have a great impact upon this lawsuit if they continue

12   to condemn land.

13           Now we think it appropriate at this time to inquire

14   of Mr. Sachse as to whether it is the intention of the Fall-

15   brook Public Utility District to continue to acquire lands

16   while this case is pending, and we would like an expression

17   from him, if we could.

18           MR. SACHSE:  No objection at all.  I will give you the

19   answer.  We do.  We intend to acquire land, by either purchase

20   or condemnation, as rapidly as we can.  We have already pro-

21   posed the Lippincott Dam site.  The reason, as I have stated

22   before, is simply this: That no Court, with apologies to your

23   Honor, can stop us from building a dam if we so choose on land

24   of our own on a non-navigable stream.  The Court may, by its

25   order, restrict the amount of water that we can confine or

1   where we can obtain the water, but we do not believe that any

2   Federal Court or any Court can prevent us from building a reser-

3   voir in which we can put Colorado River water or whatever sur-

4   plus may be allocated to us in the final outcome of this pro-

5   ceeding, and we do not intend to stop this what we consider to

6   be a necessary public improvement pending the conclusion of this

7   litigation.

8          It is a specific answer.

9          THE COURT:  Are you going to build a dam on the stream

10  of the Santa Margarita?

11         MR. SACHSE:  That is our intention, your Honor.

12         THE COURT:  Are you going down to bedrock?

13         MR. SACHSE:  An earth-fill dam.  I am not engineer

14  enough to try to tell you how they are going to operate.

15         THE COURT:  Then you are going to cut off the water

16  that flows underground?

17         MR. SACHSE:  We concede quite readily that your Honor

18  would have complete authority to issue an order that we would

19  be required to permit the natural flow of the stream to pass

20  through that reservoir.  We recognize that your Honor could

21  issue an order requiring us to maintain gauging stations at

22  both ends, that we should calculate daily the increment to the

23  reservoir and release that.  We are perfectly aware of that

24  fact.  We do not believe that we should be required to stop an

25  improvement of this kind pending litigation which all of us

1   recognize may last for years, when, as we have just seen and as

2   Mr. Veeder's clients are well aware, some amount of water -- I

3   do not know how much, we do not have the figures -- is running

4   into the Pacific today and it has been running into the Pacific

5   for three or four weeks.  I do not know the amount, but it has

6   been.  And we do not believe that your Honor would or could

7   prevent us from that kind of improvement when you have it in

8   your power completely to protect the United States without

9   stopping the improvement.

10          MR. VEEDER:  May I inquire further, then, Mr. Sachse--

11  and this is one of the principal reasons of our concern: Do you

12  propose, in this litigation, to raise the equitable principles

13  of laches and estoppel against the United States if we don't

14  take steps to prevent you from proceeding?

15          MR. SACHSE:  I can't answer the question.  I don't

16  know.  I haven't researched the law enough.  I will tell you

17  this offhand.  I am under the impression that there are a lot

18  of decisions that say that you can never invoke estoppel against

19  the United States.

20          MR. VEEDER:  Oh, but there are.

21          MR. SACHSE:  I don't know, Mr. Veeder.  I'm not going

22  to attempt at this moment to tell you every defense I'm going

23  to raise, I don't know, anymore than you have been able to tell

24  us every conceivable claim that you expect to assert to this

25  water.  I don't know.

4

1    MR. VEEDER:  Well, the reason why the matter becomes

2   important is by reason of -- not the sole reason, but a factor

3   involved is your Honor's interpretation of the stipulation of

4   November 29, 1951, and I don't know how broad the construction

5   may be by your Honor of that stipulation; but conceivably the

6   construction might be that the United States is subject to

7   laches and estoppel, and should that be the case our concern in

8   regard to Fallbrook's activities has increased a thousandfold.

9   There is no water, as far as we are concerned, that is available

10  for appropriation, but that is a matter on the merits.  But

11  certainly in litigation of this character, and particularly in

12  regard to the pleadings which we have now on file, the matter

13  of Fallbrook's changing the status quo   so drastically  may

14  require some drastic action on our part, because if we were to

15  find ourselves confronted with the earth being moved and money

16  being spent and lands being acquired it might well be that then

17  they would say, "Well, you sat by and let us do it."

18       I have the response that I wanted.

19       MR. SACHSE:  I would like to just throw in this addi-

20  tional fact.  I do not think that the land acquisition, of and

21  by itself, affects the United States in any way.  But I have

22  been well aware that you, Mr. Veeder, have the right -- whether

23  his Honor would grant it or not, I don't know -- but you have

24  the right to bring interlocutory proceedings or a restraining

25  order, whatever you want.  That is what we discussed previously

5

989

1    in the pre-trial hearings. I don't think you have any grounds

2    for it today. But I will concede that if we attempted to move

3    dirt, you would have a perfect right to come into this Court

4    and ask the Judge to restrain us or to put restrictions on us.

5    But I would like to cross the bridge when we come to it and

6    when you make such a motion for interlocutory restraint. I

7    don't/any point in arguing about it now.
       see

2    8        MR. VEEDER:  It was not an argument.  I was simply

9    inquiring.

10           MR. SACHSE:  Well, your answer is, if it is not clear,

11   we do intend to continue with the land purchase.

12           THE COURT:  Were there any dates fixed or plans for

13   the construction of the dam?

14           MR. SACHSE:  There can't be, your Honor, until we

15   acquire the land and until we receive the State permits.  We

16   have one permit.  We could construct a dam on the basis of the

17   one permit we have.  It is our intention, and I would like to

18   say now, since this is on the record, that everyone here ap-

19   preciates that I am only the attorney for the District, I am

20   not the Board of Directors.  The decisions are the Board's.

21   So what I state is not to be construed as in any way limiting

22   their ability to make a decision.  They have the right to de-

23   cide to construct a dam on the basis of our 10,000-acre foot

24   permit, if they so want.  It is my impression that they hope

25   to construct a 30,000-acre foot project, and that no work could

1   commence until the State Water Rights Board has acted on the

2   pending application of the Santa Margarita Mutual and Fallbrook

3   for these additional permits.  That matter has been submitted

4   to the State Water Rights Board, it has been fully briefed, and

5   I have no information as to when we might expect a decision.

6   I hope not too long.

7        MR. STAHLMAN:  Your Honor, as a matter of inquiry as

8   to what the status is, it is correct, is it not, Mr. Sachse,

9   that we tried four cases -- parcels for values in Judge Hardin's

10  Court, concluded, I believe, last week, and at that time the

11  continuation of the trial of the other parcels was put over

12  until July 12th?

13       MR. SACHSE:  7th.

14       MR. STAHLMAN:  7th?

15       MR. SACHSE:  7th or 8th.

16       MR. STAHLMAN:  And the reason for putting it over was

17  that the appraiser who is appraising the land values for the

18  defendants in the case had not completed his appraisals, had

19  not even started, because there had previously been in the

20  Superior Court of San Diego County a petition for immediate

21  possession of the two parcels of land that overlie the damsite,

22  and at the time of the continuance, which was opposed by Mr.

23  Sachse, he stated to the Court that they would have to come in

24  before that date and petition for immediate possession, as they

25  wanted to start working on the dam immediately.  That is correct,

1   isn't it, Mr. Sachse?

2   MR. SACHSE:   I gave as a reason for opposing the

3   continuance in the condemnation case the fact that I wanted to

4   get this project on the road.   The Court did then indicate that

5   we have a perfect right, if we so choose, to take immediate

6   possession, and that matter is a matter to be determined by the

7   Board.

8   MR. STAHLMAN:   You indicated, however -- you made the

9   statement that you would have to take immediate possession, you

10  said you would have to file a petition before Judge Turrentine,

11  and you thought he would then determine the matter and immediate

12  possession would be taken.   However, in the meantime you have

13  done considerable execavation work on properties that you have

14  acquired.   Isn't that true?

15  MR. SACHSE:   They have been building roads, Mr.

16  Stahlman.   We have done nothing anywhere near the River bottom.

17  MR. STAHLMAN:   You have taken out trees?

18  MR. SACHSE:   We have taken out trees; that is correct.

19  MR. STAHLMAN: And you have been clearing the land?

20  MR. SACHSE:   We intend to continue.

21  I want no misunderstanding at all.   We are going to

22  push this project, it is my understanding -- again, I don't

23  want any misunderstanding -- we are going to push this project

24  just as fast as we conceivably can, your Honor.   So that there

25  will be no misunderstanding, as fast as the State Water Rights

1  Board and our land acquisitions and our finances will permit

2  we will push this project.  If that is a basis for a request for

3  interlocutory relief by Mr. Veeder, there is no sense in my

4  concealing the facts.  Those are the facts, that is our present

5  intention.

6          MR. VEEDER:  Then one other thing, Mr. Sachse.  Do I

7  understand correctly that you are going to build the dam in

8  contemplation of storing Colorado River water?  Is that right?

9          MR. SACHSE:  We are going to build the dam in con-

10  templation of storing whatever water we get.  If we get enough

11  by State permit, confirmed by order of this Court, of course,

12  we would never spend 5¢ to put Colorado River water in it.  If

13  we get free water, we will never use it.  But if we don't get

14  enough free water, we will buy Colorado River water.

15          MR. VEEDER:  May I inquire, do you have from the

16  Metropolitan Authority a firm contract for water from the

17  Colorado River now?

18          MR. SACHSE:  It seems to me that this is all irrelevant,

19  but there are no secrets.  I will be glad to tell you.  We are

20  a member of the San Diego County Water Authority and we are en-

21  titled to water from that Authority, but we are not entitled

22  to nearly enough water, to make this very simple, to fill the

23  dam.  However, there is other construction to be finished in

24  July of next year, a second aqueduct, which will exactly double

25  the capacity of the present aqueduct.  For a period of at

1   least three years there will be no place to put the water which

2   that aqueduct can carry, because that aqueduct will not be as

3   far south as any existing reservoir.  For a great many years

4   after that, that aqueduct is projected by the engineers to be

5   far more than the needs of all the member agencies.  We anti-

6   cipate that for many years there will be an excess of Colorado

7   River water available.  Whether we buy such water or not is

8   strictly an economic proposition.  If we can get free water,

9   we will not.  If we cannot, we are certainly going to buy from

10  the Metropolitan, in preference to what we are doing today,

11  buying from the City of San Diego at $50 per acre foot surcharge

12  on top of the Metropolitan surcharge.  Last year our purchases

13  amounted to a quarter of a million dollars on the surcharge

14  alone.  If we can have a place to put the water and it is a-

15  vailable at $12 an acre foot, we certainly are not going to pay

16  $62 to the City of San Diego.  It is a simple basic proposition.

17  On the other hand, if it fills up from the rains, we will not

18  spend a nickel.

19          MR. VEEDER:  In other words you don't presently have

20  a firm contract for 30,000-acre feet of water from the Metro-

21  politan?

22          MR. SACHSE:  We have no firm contract from the Metro-

23  politan.  We have only our legal entitlement from the San Diego

24  County Water Authority.

25          MR. VEEDER:  Thank you.

1          THE COURT:  On the calendar yesterday -- we didn't

2    get to it -- was the matter of objections to the appointment of

3    a Master.  It was continued over until today.  Are there any

4    objections?

5          MR. VEEDER:  None have been served on us, your Honor.

6          THE COURT:  All right, the Court will conclude that

7    as to the people who have been served, who, I understand, are

8    the lawyers who have made appearances in this case, no objection

9    has been made.  That is behind us as far as they are concerned.

10         MR. VEEDER:  And that matter was noticed to all of

11   the lawyers who have appeared.

12         THE COURT:  Yes.

13         Now we agreed that we would discuss a few matters,

14   if there were any, that concerned the Master, since he has to

15   be gone in the afternoon.

16         MR. VEEDER:  We have discussed informally with him

17   and it is a matter now of scheduling, as we see it, the hearings,

18   and as I understand your Honor's present orders, it is con-

19   templated that during the week of May 21, 1958, evidence will

20   be introduced before the Special Master.

21         MR. SACHSE:  I haven't heard that date.

22         MR. VEEDER:  The week of May 21st.

23         MR. SACHSE:  The last date I got was April 28th.

24         THE COURT:  Well, the order provided April and I had

25   some discussions with the Master in laying out some tentative

1    schedule as to when that hearing of April 28 would have to be

2    continued to and it looks now as if it would have to be in that

3    week sometime.   That will be the very earliest time that the

4    Master can start.

5             MR. SACHSE:   I haven't any objection.   I just hadn't

6    heard the date yet.

7             THE COURT:   Well, there has been no order made.   But

8    I understand the program is to be --

9             Well, do you have a program outline now as to how

10   you are going to proceed, whom you are going to serve?

11            MR. VEEDER:   Well, we are starting immediately to

12   have service made throughout the De Luz Creek area.   We have

13   our maps of the area that we consider to be part of the water-

14   shed of the De Luz Creek, we have the names of all the parties

15   to be served, and we are going to ask the Marshal to proceed

16   at once to serve that area in contemplation of the hearing to

17   which I just made reference.

18            THE COURT:   All right.   You are going to serve the

19   Amended Complaint and a summons; is that right?

20            MR. VEEDER:   Yes, your Honor.

21            THE COURT:   You are going to serve the order I made

22   appointing the Master?

23            MR. VEEDER:   That is correct, your Honor.

24            May I be excused for just a moment.   I would like to

25   get your letter.

1          THE COURT:  Well, I haven't got that all in my letter.

2  You may get it.  I have it here.

3          (Mr. Veeder temporarily leaves the Court Room and

4  returns.)

5          THE COURT:  I wanted you to draw a document outlining

6  what you are going to do.  Have you done any work on that?

7          MR. VEEDER:  I haven't formalized it yet.  We are

8  going to do that.

9          THE COURT:  All right, you are going to serve the

10  Amended Complaint, the Summons, the Order appointing the Master,

11  the Stipulation of November, 1951, the Order interpretating

12  the Stipulation, and I take it this new Order further inter-

13  pretating the Stipulation --

14          MR. VEEDER:  That is correct, your Honor.

15          THE COURT:  -- which we ought to get taken care of.

16          We discussed also serving a notice of trial before

17  this Court.

18          MR. VEEDER:  That is correct, your Honor.

19          MR. SACHSE:  At the same time that the Amended --

20          THE COURT:  Well, I will think about it.  Of course,

21  these people who don't appear aren't entitled to any notice of

22  trial.  If they appear pro per, I don't know whether the Rules

23  provide that they can be served by mail or not.  There is a

24  loose end there.  In other words, if a person appears by Counsel,

25  he could be served by mail, but whether he can be served by

1   mail if he appears pro per I am not sure.

2        MR. VEEDER:  I think he can, your Honor.  I have never

3   been confronted with the problem before, but I think he can.

4   The fact is, we have in the past pursued that course.  I think

5   it proper.

6        MR. STAHLMAN:  You could in California.

7        MR. CRANSTON:  You can be served by mail in the State

8   Court if you have appeared in pro per.

9        MR. VEEDER:  I have a list, your Honor, of the matters

10   which we had.

11        THE COURT:  Well, let's check this before we pass it.

12   Rule 5b:

13        "Whenever under these rules service is required

14        or permitted to be made upon a party represented by

15        an attorney the service shall be made upon the attorney

16        unless service upon the party himself is ordered by

17        the court.  Service upon the attorney or upon a party

18        shall be made by delivering a copy to him or by mail-

19        ing it to him at his last known address..."

20        I suppose that covers it.

21        Well, what do you think about the notice of trial?

22        MR. VEEDER:  Well, I think that the thing to do, your

23   Honor, and what we recommended as part of this outline that you

24   have asked us to work on, is that there be a notice of the trial,

25   the date of the trial, served at the same time the Complaint is

1    served -- in other words, this June 21st date -- June 15th date,

2    I guess it is.  In other words, notice the main trial and notice

3    the hearing before the Special Master at the same time.  I

4    think that would be essential, and I think that the problem

5    of service, at least in regard to the De Luz area, would be

6    taken care of with the service that we are contemplating initi-

7    ating now, because we would have that --

8            THE COURT:  Let's pass it along for the time being

9    and see what other things you have in mind.  Now there would be

10   a notice of the Master's hearing.

11           MR. VEEDER:  That is correct, your Honor.

12           THE COURT:  On some date other than the one originally

13   set in the Master's order.

14           MR. CRANSTON:  Then there would have to be an amend-

15   ment to that order to that extent.

16           THE COURT:  You think that it should be amended on

17   that original order, or merely an order now that the hearing

18   set for the 28th be continued to a certain date?

19           MR. CRANSTON:  It can take that form.

20           MR. VEEDER:  Your Honor, we have prepared, in ac-

21   cordance with your direction, a series of orders which I think

22   will embrace all of the matters to which you are referring,

23   with the exception possibly of this serving a notice of the

24   Master's hearing (handing documents to the Court).

25           THE COURT:  Do you have sets of these for other Counsel?

1          MR. VEEDER:  Yes, your Honor. (Distributing documents

2     to Counsel).

3          (A pause)

4          THE COURT:  Do you all have copies of these three

5     proposed orders?

6          MR. SACHSE:  Yes, your Honor.

7          THE COURT:  I understood also that there was going to

8     be served a copy of the pre-trial stipulation of facts that has

9     been worked on by the Counsel here.

10         MR. VEEDER:  Your Honor, in that regard, I checked

11     through the transcript on that when the matter was reviewed on,

12     I think it was, February 12th.  The proposal was made that that

13     be included.  Then Mr. Moskovitz, and I concurred with him,

14     suggested that it be not included.  We would have been very

15     happy to include it, but my thought on the matter is this, that

16     Mr. Sachse and the other Counsel for the other parties, in

17     view of our Supplementary and Amended Complaint, might want to

18     review those facts again.  If not, I would like to see them

19     included.  It would be particularly helpful to us from the

20     standpoint of a prima facie case that I think we are going to

21     have to put in on the De Luz matter, and I would like to know

22     on that if we are to include it.

23         MR. MOSKOVITZ:  Your Honor, it would seem to me that

24     at some time there would have to be an attempt at least to

25     reach agreement on facts relating to these new claims.  There

1  are some facts already in the agreed statement that would cover

2  the area where the new claims of the United States are being

3  made, but I think there are other facts about those claims that

4  an attempt, at least, could be made to agree upon them.

5         THE COURT:  Yes, but --

6         MR. MOSKOVITZ:  I don't think that has to be done at

7  this point.

8         THE COURT:  What is wrong with getting this pre-trial

9  stipulation that you worked on in form to be signed up?  I don't

10 see that this new Complaint alters that at all.  They have in-

11 corporated the old Complaint and they have added new causes.

12 So that your pre-trial stipulation, of course, subject to

13 checking, should cover the first part of the Supplemental Com-

14 plaint.  What is going through my mind is this:  This could be

15 signed up between the major parties here, but doesn't bind

16 anybody else.  We talked about having a prima facie case put

17 on, on these so-called undisputed facts, which is really what

18 they are, in this pre-trial stipulation, and if we get that

19 signed up and have it served -- I'm not set on this; this is

20 my tentative thought -- served along with all these people, to

21 start with this De Luz group, with or without a notice which

22 would tell them that there was proposed to be presented proof

23 of these matters contained in this pre-trial stipulation and

24 if they were dissatisfied with any of these facts to which the

25 major parties agreed now is the time to speak up and bring in

1  their proof, and the chances are there would be no dispute on

2  these facts -- they are largely geographical facts, and some

3  witness could run through them at the hearing and the Master

4  could then say, "All right, has anybody anything else to offer

5  on this?  If they haven't, I am going to find these facts as

6  proved by this witness," and then you tie your Master's pro-

7  ceeding in on these basic facts, along with the defendants

8  here, who have agreed to them.  That was my thinking on it.  It

9  could be done, I suppose, the same way, even if we didn't serve

10  this pre-trial stipulation, but I think this pre-trial stipu-

11  lation, to the extent you have prepared it, ought to be executed,

12  with an understanding that it will probably have to be supple-

13  mented by work on these other causes.

14          MR. MOSKOVITZ:  That seems sensible, your Honor.

15          THE COURT:  What do you think about it, Mr. Sachse?

16          MR. SACHSE:  I have no objection at all, except that

17  I would want to check rather carefully what we said in here,

18  in case anything would interfere with our case in the light of

19  the Amended and Supplemental Complaint.  I don't think it would

20  be a matter of more than an hour or two of work, but I would

21  want to check it.  I don't want to say this minute that I would

22  agree.

23          THE COURT:  I would like it done today or tomorrow.

24          MR. SACHSE:  I think I could do it very quickly, but

25  I would want to be able to sit down and do it.

THE COURT:  Has anyone else any thought on this?

MR. VEEDER:  The thought that I would like to tender, in view of the urgent need to get this matter started from the standpoint of service, is that if there was agreement as to these facts, I think those are matters that could be mailed, don't you, your Honor, and not require us to withhold service awaiting agreement.  The fact is we would like to arrange now to --

THE COURT:  We talked something about that with Mr. Cranston.  Although there will be a notice of this continuance of this Master's hearing, Mr. Cranston could or could not mail out to these people a particular notice where this Master's hearing was going to start and what area was going to be considered.  Now this amendment, of course, is merely a broad over-all starting date.

You contemplated a notice telling them generally what area you are going to hold hearings on, did you not?

MR. CRANSTON:  Yes, that is correct, your Honor.  I think that the pre-trial stipulation, as Mr. Veeder says, could be mailed out at that time.  In other words, that is not in any sense jurisdictional.  Whether or not that would constitute legal service or not is actually immaterial.

THE COURT:  It doesn't make any difference.  I agree with you.  The point is to put people's minds at rest,  and among other things they would be told that there is going to be

19

1  some proof of these facts, and if you have any objections,

2  speak up.  They could read over these geographical facts.  I

3  think that could well go out with the Master's notice by mail.

4          MR. CRANSTON:  Yes.

5          THE COURT:  Is that satisfactory with everybody?

6          MR. VEEDER:  It would fit our plans better than to

7  have them served by the Marshal.

8          MR. CRANSTON:  In that connection, Mr. Veeder, why

9  don't you have your Marshal, when he is making service, try at

10  that time to get the Post Office address of each person?  It

11  might possibly be different from the address where they would

12  be served.  They might have a Post Office box or something like

13  that.

14          MR. VEEDER:  Yes.  I think the Marines have a great

15  deal of material now on that.  However, we are going to meet

16  with the Marshal this week and I will bring that to his attention.

17          MR. SACHSE:  There is a question, your Honor.  I have

18  skimmed through this.  There are a good many pages here dealing

19  with the pending applications before the Water Rights Board,

20  which we know are pending, and I don't know how to find out how

21  fast they are going to be filed.  It is conceivable that that

22  could be tomorrow, or it might not be for six months.  I would

23  certainly expect that if there is such a drastic change as that

24  in our stipulated facts before the trial date, let us say, that

25  we just have to face it and recognize it.  I don't know what we

1    can do about it at this time.  I am just pointing it out to

2    your Honor.

3            For example, the Santa Margarita Mutual might be

4    kicked out of this case entirely.  Fallbrook might or might not

5    get permits instead of applications.  So if we stipulate to a

6    fact, is the status going to be frozen?

7            THE COURT:  Certainly not.  It is a mechanical pro-

8    cedure of how you would show what later additional facts came

9    up.  Of course, an alternative would be to take out of that

10   stipulation matters concerning the permits for the time being

11   and put them in with later material when we get into some

12   discussion on these.

13           MR. SACHSE:  Well, in fairness to all the parties, I

14   think it would be better to leave the material in.  It is strict-

15   ly factual.  Just so there is clear understanding that Fall-

16   brook has no way of knowing how rapidly or how slowly these

17   facts might change, and we would want then immediately to amend

18   or supplement this if there is a permit issued.

19           I think the material is helpful in another way, your

20   Honor.  Some of this may tie in with some of these stipulated

21   facts, assuming that they are finally stipulated to, may tie

22   in to motions for judgment on the pleadings on some of these

23   counts.  So it would be useful, as far as I am concerned, to

24   have it in.

25           THE COURT:  Let's leave it in and we can amend it later

1005

1   or make a supplement to this.

2              Here is another thing that we discussed.  This was

3   not in this letter.  The letter was just some mechanical pro-

4   blem about the Master.  But we discussed also serving these

5   people with an order directing to complain, if they so desire,

6   at some particular time about the appointment of a Master, or

7   hold their peace.  When are we going to do that?

8              MR. VEEDER:  I think that that should go out.

9              THE COURT:  With the summons?

10             MR. VEEDER:  With the summons, yes, your Honor.

11             THE COURT:  No directive has been drafted on that?

12             MR. VEEDER:  No, not yet.

13             THE COURT:  I would suggest, then, that we draft an

14  order on that phase of it, using the same period of time that

15  they have to answer, which is 20 days, that within 20 days if

16  you have any objection to the appointment of a Master, file

17  your objections with the United States District Court.

18             MR. VEEDER:  That will be included, your Honor.  We

19  will have an order for you to sign on that.

20             THE COURT:  Have we got everything that you are going

21  to serve: the Amended Complaint, the Summons, the Order appoint-

22  ing the Master, the Order to make their objections within 20

23  days, the original Stipulation of 1951, the first order inter-

24  preting it and the new order I am going to draw, the Notice of

25  Trial and the Notice of the amendment of the Order concerning

1    the Master's hearings; does that include everything that every-

2    body talked about?

3        MR. CRANSTON:   Then there would be in addition, I

4    believe, this order permitting the inclusion by reference in

5    the Complaint and Supplement.

6        THE COURT:  Oh, yes.

7        MR. BUZZINI:  If the Court please, I would like to

8    voice some concern, if I may, to the requirement of answer on

9    the part of so many of these people who are not technically

10   trained in this field, and I would think that their reaction

11   to a notice of the time and place of appearance would be one

12   which they would respond to personally rather than to make an

13   answer.  We should have an answer on file, if we are to pro-

14   ceed with findings of fact.  I am afraid I don't have any sug-

15   gestion.  I just merely want to voice concern with it.

16       THE COURT:  You mean that this is just too complicated

17   for the layman to understand?

18       MR. BUZZINI:  That is right, your Honor.

19       THE COURT:  Well, that is true.  Of course, one reason

20   we have a Master here is that when he holds these hearings in

21   these areas these people can come in, and whether publicly

22   stated or not he is working out some kind of form of general

23   denial and a place to set forth the description of their pro-

24   perty, what they claim generally -- get some kind of appearance

25   on file for them, with their address.

1        What is the filing fee, Mr. Clerk?

2        THE CLERK:  For filing an answer?  No fee for filing

3    an answer.

4        THE COURT:  That is very good.  That answers our

5    question, Mr. Cranston.

6        MR. CRANSTON:  Yes.

7        THE COURT:  And these could then be from time to time

8    filed with the Clerk.  In other words, we are trying to make it

9    easy for these people who can't get lawyers and can't afford to

10   come into this case and scrap it through to make a showing of

11   what they have, get themselves on record and let their rights

12   be considered.

13       MR. BUZZINI:  I think the point is well taken, your

14   Honor.  I wonder if there could be some language in the notice

15   which would indicate that they could expect that help from the

16   Master when they appear.

17       THE COURT:  Well, the more of these people who do

18   appear by Counsel, the better off we are, even though Counsel

19   then has to make some arrangements as to what hearings he is

20   going to attend or what he is going to engage in.   If we tell

21   them that, however, none of them will appear,  I would happy

22   to have your suggestions.  We are all fumbling in this matter

23   to work out some kind of procedure where we can get service on

24   these people, where we can afford them due process, where we can

25   hear what they have, where we can eventually take into account

1   their claims along with the claims of the major parties.

2          What do you think?  Would it be unwise to advise them

3   in the Master's notice that he would assist them in getting an

4   appearance on file?

5          MR. CRANSTON:  Your Honor, I think it would be unwise

6   to advise them to that effect.  At the same time, if these

7   documents are actually served upon them, I think in the notice

8   which is sent out later with reference to the hearings that

9   there might be an indication to that effect, that if they have

10  not previously filed an answer and appeared that some assistence

11  might be given them.  But I would hesitate to put that in-

12  timation in the documents that are served upon them, because it

13  might possibly even be used as a basis for a claim there that

14  a default  could not be taken against them even though they did

15  not appear and didn't request anything, because it might be

16  said to nullify the actual effect of the service of summons.

17         THE COURT:  I think you are right on that.

18         MR. SACHSE:  Your Honor, I have a thought in that

19  connection.  I am not representing the Master or even Mr. Veeder,

20  but I know those hills and some of those people pretty well, and

21  I think this is basically a practical problem and not a legal

22  one, and I have had in mind for some time that it would be help-

23  ful to the whole community and I am sure to Mr. Cranston if, in

24  advance of this hearing, a statement could be widely publicized,

25  his statement, on how he intends to conduct the hearings --

1   newspaper publicity and things of that kind. I think that what

2   will practically happen in this case, looking to the individuals--

3   I have expressed myself to Mr. Veeder on that -- is that a

4   very large number of the people on De Luz Creek, for example,

5   will be entirely satisfied with the analyses of their holdings

6   and their rights that has been prepared by Col. Bowen. I think

7   that a very large percentage of them will. But I think they

8   are going to have to be told by someone how those rights can

9   be proved, and I think a most practical way of doing it would

10  be if they could be made to understand that the analysis which

11  has already been made by the Marines of their specific holdings

12  will be offered in evidence and that if they have no disagree-

13  ment with it --

14              THE COURT:  That they can inspect it before hand.

15              MR. SACHSE:  All of them have copies, don't they?

16  Everyone has a copy. They know what it is. I am speaking of

17  the ones on which he has gone along with the owners' consent,

18  drawn an analysis and given it to the owner. I think that

19  90% of those owners will consent, and if they clearly under-

20  stand that the case of the Government will be the basis of his

21  findings on their land and that if they don't show up it will

22  be the only evidence and that the Master's findings will be

23  based on it, I think it will reduce Mr. Cranston's work tre-

24  mendously, and above all it will reduce the number of curiosity

25  seekers. The biggest problem that Mr. Cranston is going to

1   have for the first few weeks is going to be just the physical

2   parties -- the place will bulge.

3          THE COURT:  We have talked about that.  We may have

4   to adjourn this hearing from that schoolhouse to some other

5   place.

6          MR. SACHSE:  I believe that it should not be a legal

7   order of any kind, but that Mr. Cranston simply as a matter of

8   public information might be well advised to try to simply lay

9   out how he intends to conduct this hearing.

10         THE COURT:  If I understand Mr. Veeder's intention,

11  Mr. Veeder proposes to put on before the Master some sort of

12  case as it concerns at least that part of the watershed.

13         MR. VEEDER:  That is correct, your Honor, and that is

14  why these agreed facts are important to us.  This pre-trial

15  feature of the agreed facts will be made part of the record in

16  the case and in my view would be made part of the facts of the

17  case so that the findings upon those agreed facts could be made

18  by the Special Master and approved by your Honor.  Then I think

19  we will go ahead to whatever point we think necessary to prove

20  up our case, certainly as it relates to the Ammunition Depot and

21  Camp Pendleton and the Naval Hospital.

22         THE COURT:  Tell us just what you mean by that in a

23  little more detail, so we will know what you are going to do.

24         MR. VEEDER:  From the standpoint of title, we will of

25  course put in our documents of title, we will put in evidence

1    of water use, we will put in evidence of as to the demands for

2    water, and we will put in an outline of the facts relating to

3    the Santa Margarita River within the confines of the enclave,

4    I am speaking strictly of the De Luz Creek situation, because

5    I do not believe that we have to go above our eastern boundary

6    in connection with the proof on the De Luz Creek because I think

7    that creek rises on the Vail property and flows down through

8    some private ownership and then enters the enclave below Fall-

9    brook and any of the other parties.  Now it may be that we

10   would have to put in a little more than that if Fallbrook in-

11   dicates that it is going to litigate this matter in an adverse

12   and contested manner.  I don't know anybody else upstream that

13   would be inclined to do that.  But if that is the case, I think

14   we should have a pre-trial conference in which Mr. Sachse would

15   express himself on that.

16          MR. SACHSE:  I am not speaking now for Fallbrook at

17   all, Mr. Veeder.  This is just my thought about De Luz Creek.

18   I have only one client on that, so I will not cause any trouble.

19   But if we are litigating all the rights in this watershed, am

20   I to understand that you are going to stop on one of the streams

21   in the watershed and not litigate any rights above the Naval

22   Reservation boundary?

23          MR. VEEDER:  Mr. Sachse, this is exploratory from my

24   standpoint.  I am extremely anxious to have the Master's views

25   on it and your Honor's views on it.  At least I look at the

6

litigation in this way, that when we start to introduce evidence

we have to prove our title and we have to prove our water use

as against people on De Luz Creek, but I see no reason for intro-

ducing evidence in regard to any areas --

THE COURT:  Your talking now about the Master's hear-

ing?

MR. VEEDER:  Yes, your Honor.

THE COURT:  Not about the trial here?

MR. VEEDER:  No.  We will put in a prima facie case

from the standpoint of, as I say, our title and our water use,

and I see no reason for having a full scale --

MR. SACHSE:  Oh, no.  No, I misunderstood you.  No,

I don't see any reason for any of the upstream.  But to be

specific, would you intend -- let us say the Felix Garnsey

ranch; that is not my client, but it is the biggest holding

and the highest developed on De Luz Creek -- would it be your

intention as part of your case in chief to give the Master the

proof of your conclusions of what Garnsey's rights are?

MR. VEEDER:  No, that would not be part of our case

in chief at all.  I don't believe it would be proper for us to

try to prove Garnsey's rights.

MR. SACHSE:  That was the practical suggestion that

I was trying to make a moment ago.  If there is not some way

that that can be handled -- these are not my clients; I am just

trying to help the Court honestly -- if some way cannot be

1   devised to present to the Court or to the Master these findings

2   that your staff have made as to the extent of these water rights,

3   everyone of these people is going to be in here as a private

4   individual banging and screaming and howling and it is going to

5   be a hopeless dogfight, because they are going to want adjudi-

6   cation.

7          MR. VEEDER:  I am glad you brought that up, and we

8   would be perfectly willing, if agreeable to the Court, to put

9   in our information on that.  But I was asked what kind of case

10  we would put in, and I never dreamed that I would ever put in

11  a defendant's case.

12         THE COURT:  Well, let's not be technical.  Can't you

13  do this: You put in what you consider to be the Government's

14  case, and then can't you say, "Now we have available surveys

15  that we have made, information, etc., upon which we are content

16  to rest.  If anybody wants to use this material, it is here

17  available."

18         MR. VEEDER:  That is right, your Honor.

19         THE COURT:  If a man has a lawyer and wants to use it,

20  he may.  If he doesn't have a lawyer, the Master is in a position

21  to lend a hand.  He can say to this party, "Well, now, you have

22  seen this material.  Do you want to rely upon this?  Are you

23  satisfied?"  If so, it is then available and can be put in, not

24  necessarily by the Government but made available by the Govern-

25  ment and the Master puts it into the record.

1      MR. CRANSTON:  That would be true, also, assuming that
2  the particular Jones doesn't even show up.  He is served, he
3  completely ignores the hearings.  Then it seems to me that the
4  Government would have to put in what evidence they have as to
5  Jones, because otherwise you would have a hiatus in the record.
6      MR. VEEDER:  You would have what would be tantamount
7  to a default against Jones.
8      MR. CRANSTON:  You would have a default against him,
9  but you would have to put your evidence in as to what his rights
10  are.
11      MR. VEEDER:  We would be glad to do it.
12      THE COURT:  I think that should be done.
13      MR. VEEDER:  We would be glad to do it.  But normally
14  in a quiet title suit we put in our case and they put in theirs.
15      THE COURT:  I think Mr. Veeder's point is this.  He
16  is hesitant to put himself in a position of making it look like
17  he is proving some of the defendants' claims.  I think he is
18  willing that any of this material be used.
19      MR. VEEDER:  It will be available.
20      THE COURT:  In defaults he will supply it, and in
21  cases where a man is without an attorney the Master will take
22  the responsibility of finding out whether he is satisfied with
23  these surveys.
24      You are content to rely on all that you have?
25      MR. VEEDER:  Yes, your Honor.

1      MR. SACHSE:  I think that somewhere in this order

2  that these so-called little people are going to pick up and

3  read it should say that if you don't appear, evidence of the

4  extent of your water rights will be presented by the United

5  States.

6      MR. VEEDER:  No, Mr. Sachse, I would be opposed to

7  that.

8      MR. SACHSE:  It doesn't mean a thing to me.  I offer

9  this only as a suggestion.

10     MR. VEEDER:  I will not argue the point.  We will

11 make available to the Master our scientific data.  I don't want

12 to offer it myself, you see, but I think that it would be

13 available to you.  I think that Col. Bowen would be available

14 and could be interrogated and the evidence go into the record

15 that way.

16     MR. MOSKOVITZ:  Your Honor, this brings up a  point

17 that disturbed me or at least raised questions in my mind as to

18 the proposed order that the ban on defaults is now being lifted.

19 I wonder, what does that really mean?  That means that there

20 may be defaults entered?  Or does it mean that as to people who

21 fail to appear in any way, their rights will be adjudicated in

22 accordance with whatever facts the Government has, and the

23 Government will have facts which the Master can use in adjudi-

24 cating their rights?

25     THE COURT:  Yes, we have to set aside this order on

1   this default, because people who realize they have a complaint

2   we have to pay some attention to.  That doesn't mean that we

3   are going to default people wholesale.  We are going to try to

4   do the best we can, if these people don't show up.

5          MR. SACHSE:  What I am asking is, will you default

6   even retail?

7          THE COURT:  What?

8          MR. SACHSE:  You say you will not default wholesale.

9   Will you default anyone, or will there be some evidence that

10  the Master will have that he can put into the record on every

11  person who may not appear so that they will not lose their

12  rights by virtue of failing, through ignorance or fear, to

13  come in?

14         MR. VEEDER:  We would look at it this way.  I have no

15  desire for defaults, but I think we should have an order per-

16  haps, if your Honor would enter it, to the effect that no de-

17  faults would be taken unless there has been 30 days' notice to

18  all parties.  That would be acceptable to us.

19         THE COURT:  What good does that do?  They are getting

20  a notice now to appear within 20 days.  To give them another

21  notice means another service.  I think that is a mistake.

22         MR. VEEDER:  All right.  Mr. Moskovitz raised a point,

23  and we don't want defaults.

24         MR. CRANSTON:  Of course, you have this situation, it

25  seems to me.  You enter the default.  You still can't enter

1  judgment against the person who has defaulted until the con-

2  clusion of the entire case.  You get back to the same situation.

3  So that even though somebody's default has been entered, I

4  presume that if six months later they come in and say at that

5  time, "I didn't realize my rights.  I now want to be heard,"

6  the Court would probably set aside the default and allow them

7  to introduce additional evidence, and the final judgment would

8  be the same as if the default had never been entered.  I don't

9  think there is any great problem about entering a default.  It

10  is not a case of a money judgment where you enter judgment and

11  the Clerk goes ahead and signs the judgment.  It is simply in-

12  dicating that the Court now has power as against them to enter

13  whatever judgment it is going to enter after all of these

14  hearings have been concluded.

15       MR. MOSKOVITZ:  What I am suggesting and hoping would

16  be acceptable, at least, is that as to those people who fail to

17  appear at any time throughout the proceedings that the final

18  judgment will take into account their rights in accordance with

19  the information which has been developed and which the Master

20  can use in his findings.

21       THE COURT:  Is that agreeable, Mr. Veeder?

22       MR. VEEDER:  Fine.  Yes.

23       THE COURT:  I think there is no dispute on that.

24       MR. SACHSE:  That is not quite enough, I don't think.

25  Let's just look at the physical situation that will happen when

1   this whole thing is over.  There will be cases where not one

2   single word has been said, maybe somebody who owns 500 acres

3   that is riparian on De Luz Creek, where nobody has shown up

4   here.  Now is the United States going to bring in evidence that

5   John Smith owns 500 acres of riparian to De Luz or Fern Creek?

6   I am speaking of everything in the watershed.  Otherwise, you

7   are going to have a final judgment which will ignore the physi-

8   cal situation on the map and your judgment will not mean any-

9   thing, or else it will foreclose the poor fellow.

10        MR. CRANSTON:  As I understand it, Mr. Veeder will have

11  at least some evidence as to every tract of land.  Although he

12  may not technically want to introduce it, he has indicated that

13  he would make that evidence available to me, and then I could

14  see that this was introduced and would be considered.  But he is

15  interested in the technicality that he is not presenting the

16  defendant's case.

17        THE COURT:  That is all he is concerned with.  The

18  Government, as I understand it, stands ready to make available

19  to the Master/to this Court the physical facts they have from
                or

20  their investigation on every parcel that is involved.  Mr.

21  Veeder just doesn't want to put himself in the position that he

22  was representing the defendant.  But that will be made available

23  and we will just have to watch the area as we go along.  If the

24  Master is conducting and there is no appearance in a certain

25  area, he will have to call upon the Government and ask the

1   Government to produce what information they have on these other

2   tracts and put it into the record.  He will just have to watch.

3        Does that do it, Mr. Sachse?

4        MR. SACHSE:  I don't know any better way to do it.

5   And again I want to repeat, this is not for Fallbrook; this is

6   just amicus curiae, if I may call it that.

7        MR. VEEDER:  We have a map already prepared setting

8   out the tracts, setting out the names.  That will be available

9   to the Master, so that there will be no question about every

10   parcel of land being subject to having cognizance of it taken

11   by the Master.  We are certainly going all the way on that as

12   far as we can.

13        THE COURT:  Let me ask Col. Bowen.  Where you have

14   gone onto land and made these surveys, in each instance have

15   you given the landowner a copy of that material?

16        COL. BOWEN:  Yes, sir.

17        THE COURT:  Suppose he didn't reside on the land but

18   lived somewhere else, but he told you to go on and you went on

19   and made the surveys.  Did you mail it to him?

20        COL. BOWEN:  In practically every instance it was

21   handed either to him or to his attorney.  As these people who

22   are absentee landlords come down on occasion, we have gone out

23   on weekends to give them a copy of their report.

24        THE COURT:  What is the nature of these reports?

25   What does it show?

1    COL. BOWEN:  They comprised a soil survey which shows

2  the classification of the land, its adaptability for crops, and

3  a geological survey to indicate the location of water on the

4  premises, and then a narrative report which sums up the findings,

5  maybe the areas adapted to irrigated agriculture, the types of

6  crops that could be grown on it, the amount of water which those

7  crops could use in a year's time.

8    THE COURT:  Is this the type of material -- let me

9  inquire -- which heretofore, when the Court made some order that

10  it would be available for inspection at your office at Rainbow,

11  is this the kind of material you had?

12    COL. BOWEN:  No, we have this material in detail on

13  a portion of the properties within the watershed, but it is only

14  on those properties where we have been granted permission to

15  enter and make a survey.  We have more general types of surveys

16  for the entire watershed which we call a reconnaissance type of

17  survey.

18    MR. STAHLMAN:  I was going to say, I have had a great

19  deal to do with these surveys in connection with a large number

20  of both riparians and non-riparians.  They are quite complete.

21  They give the landowner a view as to what the Government's

22  opinion is relative to his land, the character and type of

23  soil, etc., and there have been only very few instances that I

24  know of, some 50 cases, I think, where there has been any dis-

25  satisfaction or difference of opinion as to what they were.

1   So I think those people who have given their permission -- in

2   fact, all those people who came to me I encouraged to permit

3   the Government to go on their land and make the surveys.   I

4   think they are going to be very helpful.

5          THE COURT:  Let's go back to Mr. Sachse's suggestion.

6   He has made a practical suggestion that there be some information

7   given to these people, as I understand it, (1) that in those

8   instances where the Government has been on the land and made a

9   survey, the Government intends to present and rely upon that

10  survey, of which they have a copy.

11         MR. SACHSE:  That was my suggestion.

12         MR. VEEDER:  To rely upon and have available.

13         THE COURT:  To rely upon.

14         MR. VEEDER:  Yes, but you said "present."

15         THE COURT:  Well, the Government intends to rely

16  upon, but that the Government doesn't propose to put it in as

17  part of their case; but if the landowner wants to rely upon it,

18  the Government is content to produce it and let the landowner

19  rely upon it -- something like that.

20         MR. SACHSE:  I agree with Mr. Stahlman that they are

21  excellent surveys and in 99 cases out of 100 they will be ac-

22  cepted.  But there is a tremendous acreage -- in fact, I don't

23  know what the percentage is.

24         Colonel, what is it?

25         The acreage must be enormous where there are only

1  reconnaissance surveys, and that is where the problem is going

2  to be, this imaginery 500 acre tract that sets up on Fern Creek

3  as to which the only information the United States has at this

4  moment is a reconnaissance survey.  What happens to the owner

5  in that parcel if he just fails to show up through carelessness,

6  inadvertence, or whatnot?  That is the question that hundreds

7  of people are going to be asking themselves.

8          THE COURT:  We will cross that when we get to it.

9          Don't you think, Mr. Cranston, that in your notice

10 that you are going to send by mail, together with a copy of

11 the pre-trial stipulation, as part of the notice you could

12 spell out probably how these hearings are going to be conducted

13 and make reference to these surveys that the Government has

14 made?

15         MR. CRANSTON:  I think that should be done, and I

16 think also, as Mr. Sachse said, that it might be advisable for

17 me to be at the schoolhouse -- I suppose that would be as good

18 a place as any -- on certain specified days prior to the time

19 the hearings commence.  At that time I would have available

20 copies of this proposed answer, if they wanted actually to get

21 it on file, to discuss the matter with them and discuss per-

22 sonally as to my procedure to be followed.  I think that would

23 tend to make the first days of the hearing much easier.

24         THE COURT:  This is your responsibility, Mr. Cranston.

25 You have plenty of power.  Any kind of order you want to publish

1    notices, to do anything you want to do, you bring it in.  So

2    you go ahead on that basis.

3            MR. CRANSTON:  I will.  I think under the orders and

4    the discussion which was had, I guess it was in February, as

5    you say, I have the power to publish any notices I would want

6    of such hearings, and I think Mr. Sachse's suggestion was ex-

7    cellent and will relieve the congestion at the time of the first

8    hearing very materially.  If any of the other Counsel have any

9    further suggestions, I would certainly be very glad to hear them,

10   so as to bear those in mind in connection with the actual plan-

11   ning of the hearings.

12           THE COURT:  Well, we are making some progress.

13           MR. MOSKOVITZ:  Your Honor, I have a question about

14   the State's Answer.  We have not up to now asserted claims for

15   proprietary rights in the State. We propose to do that, and

16   the question I have is whether it will be necessary to make a

17   motion for leave to file an Amended Answer or whether in re-

                    to the
18   sponding/Amendatory and Supplementary Complaint of the United

19   States we can include this material without further motion or

20   leave of the Court.

21           THE COURT:  The Amended Complaint that has been filed

22   supercedes the old Complaint, supercedes the old Answers, and

23   you therefore answer the Amended and Supplemental Complaint and

24   you may set it up.  Now you raised almost a similar thing yes-

25   terday.  Set forth in your Answer what you have, and if you

1  later on want to amend your Answer in more detail you have per-

2  mission now to do it.

3          We have an order now setting aside this business about

4  defaults. It might be well, Mr. Cranston, to experiment with

5  a paragraph or two about this default situation -- I don't know --

6  I mean in this notice you send out: If a party does not appear

7  and has not defaulted, there will be available, of course, only

8  such information as the Government could be called upon to pro-

9  duce. I will let you word it. I will not talk anymore about

10  it.

11          MR. CRANSTON: I think something can be worked out

12  on that.

13          THE COURT: Now, Mr. Dennis sometime ago was directed

14  to submit an order setting aside an order that Judge Yankwich

15  made severing this trial as to Santa Margarita. Mr. Dennis

16  isn't here and hasn't been here. That has never been submitted.

17  I just have a note here. Do you know what I am talking about?

18          MR. VEEDER: The order for separate trials?

19          THE COURT: Yes.

20          MR. VEEDER: I think, your Honor, that certainly that

21  order should be superceded, and we will undertake to draft it,

22  if you want us to.

23          The point I have had in mind, though, is that, in

24  effect, the hearings before the Special Master are separate

25  trials. Isn't that correct?

41

THE COURT:  They are not trials; they are hearings.

MR. VEEDER:  I mean separate hearings.  Well, they are, are they not, separate trials in some respects?  They are the taking of the facts.

THE COURT:  Let us not get mixed up in that.  Take a simple case.  I am trying an accounting case and I order a reference to a Master.  He holds a hearing; he doesn't hold a trial.  He makes findings and reports to me, and if I approve the findings and conclusions then they become part of the trial and eventually become part of the judgment.

MR. VEEDER:  All right, that is fine.  We will draw the order revoking separate trials.

THE COURT:  Just set that order aside by date, whatever it is.

MR. VEEDER:  Yes.  I wanted to be sure about the approach, though, that we are taking on that, because we are not viewing these as separate trials at all, these are simply findings of fact, and that will be the extent of it, because I think under the Rule, unless there is objection made to the Master's findings, I think they are final.

MR. CRANSTON:  Yes, but it is certainly not a separate trial, because any party can appear, whether it is on that watershed or anyplace else, as I take it; any party has a right to be present at all stages and to offer their evidence which is pertinent or relevant, and to cross-examine.  If they were

1  separate trials, that would not be true.

2        MR. VEEDER:   That is fine.  I just wanted to be sure

3  there was no question on what we are doing.

4        THE COURT:   All right.

5        What about this June 16th trial date?

6        MR. VEEDER:   In connection with what your Honor has

7  asked me to prepare, we have a summarization of the factors to

8  be embraced in this over-all outline for procedure.

9        THE COURT:   Well, I expected that you would have

10 something to submit, and you told me that you would.  We could

11 have saved a lot of time if we had some document that you could

12 submit.

13        MR. VEEDER:   Your Honor, I would be very pleased to

14 go ahead with the summarization which we have right now and

15 outline to you the report of our discussions and the outline

16 as I understand it.  I have it right here.  I didn't understand

17 that you wanted me to hand to you --

18        THE COURT:   I wanted you to have prepared, and I

19 thought you understood me, something that could be delivered

20 to all the Counsel here, which outlined the way you are going

21 to handle this matter, much as we have been doing it in the

22 record -- things you are going to do with your service of sum-

23 mons, and what the Master is going to include, that everybody

24 could look at.  I will be glad to have you read what you have

25 down there.

;1

1          MR. VEEDER:  Here is the summarization, as we have

2     it.

3              There will be a new summons, which will list all the

4     parties.  That will be served with the supplementary and

5     amendatory complaint.

6              The documents that will be served will include a

7     subject index, then there will be the order setting the date

8     of trial, to which your Honor just made reference, and it will

9     set forth the date June 15.

10          THE COURT:  16th.

11          MR. VEEDER:  Is it the 16th?

12          THE COURT:  The 16th is a Monday.  The 15th is a

13    Sunday.

14          MR. VEEDER:  We don't want it on a Sunday.  So we

15    will put in June 16th, and then provide that the matter will

16    be continued from day to day or from time to time.  That is

17    what I understand your Honor desires.

18          THE COURT:  Yes.

19          MR. VEEDER:  Then there will be an order ratifying

20    the inclusion in the Complaint of all the parties named in

21    the summons.  Now I discussed that with your Honor, and as I

22    understand it we will be permitted to include by reference in

23    the caption the names of all the parties who are named on the

24    Complaint -- in other words, incorporate by reference into the

25    caption.

1028

@2

1      THE COURT:  You are going to re-do the caption now
2  on this first page.
3      MR. VEEDER:  Yes, the first page will be rewritten,
4  with the objective of doing exactly that.
5      THE COURT:  Well, you had better move up from line 7
6  to the top of the page to give you room in the caption to
7  incorporate by reference the names of the defendants.  Is that
8  what you have in mind?
9      MR. VEEDER:  That is right, your Honor.
10     THE COURT:  We have some rule about starting on line
11  7 or 8.  Forget about that.  Move the caption up to the top
12  of the page and give yourself room to make that reference.
13     MR. VEEDER:  You have a copy of that, I believe,
14  your Honor?
15     THE COURT:  No.
16     MR. VEEDER:  Here is a copy of the first page as
17  proposed (handing document to the Court), and I would like
18  to read it into the record.
19     It will have the caption:  United States of America,
20  Plaintiff, vs. Fallbrook Public Utility District, a Public
21  Service Corporation of the State of California; and all other
22  defendants named in the summons attached to this Complaint,
23  and those names are by reference made a part of this Complaint
24  and Supplementary and Amendatory Complaint as though they were
25  set forth fully herein.

3

1    MR. SACHSE:  A new summons.

2    MR. VEEDER:  Yes, we have a new summons, and that

3  will be attached to the Complaint, and by reference those

4  names will be made part of the caption.

5    THE COURT:  All right, we will get that taken care

6  of.

7    MR. CRANSTON:  In line 10 shouldn't the word "those"

8  be "whose" -- "whose names are by reference made a part of

9  this Complaint"?

10    MR. VEEDER:  If you prefer "whose" to "those," we

11  will change it.

12    MR. CRANSTON:  It strikes me that it is a little bit

13  better.

14    MR. VEEDER:  All right, it will be changed/

15    THE COURT:  The order to read "their" names or

16  "whose" names.

17    MR. VEEDER:  All right, we will change that.

18    THE COURT:  One or the other.

19    MR. CRANSTON:  Yes.

20    THE COURT:  Have you run these off yet, or is this

21  a trial copy?

22    MR. VEEDER:  These are trial copies that we are

23  trying to decide.

24    THE COURT:  All right, go ahead.

25    MR. VEEDER:  The next item is your Honor's order

4

1030

1   directing service of orders and related data.

2           We have expressed concern as to the power of the

3   United States Marshal -- indeed, the officials in the

4   Department of Justice in Washington raised the point.

5           THE COURT:  That is the order I made where he might

6   serve other things, too.

7           MR. VEEDER:  That is right.  That is also going to

8   be part of the document that will be served.

9           Then of course there will be the Complaint and

10  Supplementary and Amendatory Complaint.  That will be the next

11  item in the order.

12          Then item 6, the order of reference and appointment

13  of the Special Master.  There will have to be also an amend-

14  ment to the order of appointment to revoke the first day of

15  the hearing, which, as I now comprehend, will be May 21st.

16          THE COURT:  You have that proposed here.

17          MR. VEEDER:  That is right.  But your Honor had

18  asked us to outline to you now how we propose to do it, and

19  that is what I am now doing.

20          THE COURT:  What is next?

21          MR. VEEDER:  The next would be the supplemental

22  order regarding the interpretation.

23          THE COURT:  No, next would be the order to complain

24  within 20 days about the appointment of this Master or here-

25  after hold your peace.

5

1   MR. VEEDER:  All right, we will put that in right

2   there, then.

3           Your Honor, I don't presume to argue about it, but

4   wouldn't that be part of the notice rather than a separate

5   order?

6           THE COURT:  I said an order, but it probably would

7   be a notice.

8           MR. VEEDER:  That is what I thought, and the notice

9   would accompany this over-all document along with the

10  summons.  That was my thought.

11          THE COURT:  I think probably it should be a notice

12  rather than an order.

13          MR. VEEDER:  That is how we were going to take care

14  of that.

15          THE COURT:  I didn't notice that you had it listed.

16          Go ahead.

17          MR. VEEDER:  The supplemental order in regard to

18  the Court's interpretation of the stipulation, and then right

19  along with that will be your order of February 11th con-

20  struing the stipulation, and attached to that order will be

21  a copy of the stipulation of November 29, 1951.

22          THE COURT:  All right.

23          MR. VEEDER:  That would be the document, or packet,

24  or whatever you desire to call it.  That would be served by

25  the United States Marshal.

6

1        THE COURT:  I thought you had the notice of trial.

2        MR. VEEDER:  Of course, there will be the notice of

trial, there will be the notice in regard to the Special

Master, there will be -- well, there will be the notice of

the hearing on May 21st.  But I didn't include in my state-

ment the reference to the notice, because I thought we would

just naturally have it.  We will have those three items con-

tained in the notice which will accompany this document.

9        I want to be sure that we are right on that, now.

There will be the notice (1) of the June date of trial, (2)

the notice of the hearing on May 21st before the Special

Master, and (3) the notice of the objection to his appoint-

ment; and of course that notice will be served.

14        THE COURT:  These are matters of form.  You say a

notice of trial.  There has to be an order.

16        MR. VEEDER:  We have already listed that, your Honor.

17        THE COURT:  An order setting the trial date.

18        MR. VEEDER:  That is right.  That was item number 2.

19        THE COURT:  All right.

20        MR. VEEDER:  Each of those matters that will be

coming up will, of course, be noticed, and we will use the

standard notice, and we will incorporate those factors into

it.

24        THE COURT:  That concludes your summarization?

25        MR. VEEDER:  Yes, your Honor.  That was the outline

7

1  I intended to tender to your Honor.  I didn't know that you

2  expected to have it --

3          THE COURT:  Well, we kicked it around in the record

4  lots of times.  I wanted to get some outline to Counsel of what

5  this procedure was.

6          MR. VEEDER:  I have outlined what we propose to do.

7          THE COURT:  All right.

8          MR. VEEDER:  And we will get this formalized.

9          MR. CRANSTON:  Could those documents be available,

10 say, by Thursday for Counsel to look over?

11         MR. VEEDER:  Which documents?

12         MR. CRANSTON:  All the documents you have mentioned.

13         THE COURT:  This assembly.

14         MR. CRANSTON:  In other words, give each Counsel a

15 complete set of the documents that you intend to serve.

16         MR. VEEDER: What we propose to do this afternoon is

17 to mock up a complete document for service.  That would be made

18 available to everyone to view, including, of course, your Honor

19 and Mr. Cranston.

20         MR. CRANSTON:  Before you start service?

21         MR. VEEDER:  Before we do anything further, we will

22 mock up one complete set, including everything that will be

23 served, so that there will be no doubt about that.

24         THE COURT:  I think that is the first thing you ought

25 to do, because you have to get this service started on this

1    De Luz area if we are going to keep our schedule.

2         MR. VEEDER:  That is right.  We are going to put all

3    these things into one folder.

4         Will you be available this afternoon, Mr. Cranston?

5         MR. CRANSTON:  Not this afternoon.  I will be all

6    day tomorrow and Thursday and Friday.

7         THE COURT:  We will let you go ahead this afternoon

8    and not hold any hearing and get that done and be ready to re-

9    port tomorrow morning on it.

10        MR. VEEDER:  That is already here now and we will

11   simply put it together.

12        THE COURT:  To go back to this June 16th date, is

13   there any objection to that as a target trial date for this

14   action, with the understanding that we will not probably at that

15   time be able to try some of these new and fancy issues that

16   are involved in some of the additional counts?

17        MR. SACHSE:  There's no objection, but this is per-

18   haps a good time to ask a question -- that was the very last

19   thing we talked about yesterday, and that is this matter of

20   discovery or perhaps I should say disclosure.  Is it to be

21   understood -- and I am addressing this to Mr. Veeder as much as

22   to your Honor -- that if we desire certain factual data, we

23   can informally, by letter of course but without the formal

24   mechanics of interrogatories, request it, with a copy to your

25   Honor so that you know what is being asked for in case it is

1   something improper, in which case, I presume, Counsel would re-

2   fuse to give it to us; or is it intended that we express these

3   requests for information in the manner of formal interrogatories?

4        THE COURT:   Attorneys do it every day informally.

5   There is no requirement that you have to come through the Court.

6   It is only when some lawyer won't give you what you want that

7   you have to really make a motion.

8        How about it, Mr. Veeder?

9        MR. VEEDER:   Yes.   I would just like to have it -- I

10   don't care how it is stylized, Mr. Sachse, but we want to know

11   precisely what you want.

12        THE COURT:   In writing.

13        MR. SACHSE:   Specifically what I want?

14        MR. VEEDER:   Yes.

15        MR. SACHSE:   Then I will start immediately, because

16   I assume it will be a convenience to Mr. Veeder and his staff

17   to get some of these requests early.   But I would want him to

18   understand that the first or second or third request doesn't

19   necessarily close up the job.   I will start getting them to him

20   fast.

21        THE COURT:   How long do you anticipate we would spend

22   if we commenced on June 16th in this matter?

23        MR. VEEDER:   Somebody back of me said one year.

24        THE COURT:   We know we are not going to try the whole

25   case, but how far are we going to get if we start on June 16th?



MR. VEEDER:  The Government's case in chief is quite a comprehensive undertaking, your Honor, and I am reluctant to limit my time.  But I think that certainly the case in chief, if past experience means anything, will run not under 30 trial days.

THE COURT:  The reason I asked is that we have this kind of problem.  Judge Turrentine, who is a pretty good friend of mine, said, "Now, I understand that you want to start that Fallbrook case in the middle of June.  This condemnation matter has been put over by Judge Hardin until July 7th or 8th (whatever the date was) and we would like to have that go on again at that time and we hope we can work something out with you."

MR. STAHLMAN:  We have indicated to the Court over there, I think Mr. Sachse and myself as well, that the trial of this case would in no way interfere with the trial of that case. That will be taken care of.

THE COURT:  At the same time?

MR. SACHSE:  We have two sets of Counsel.

MR. STAHLMAN:  This case will receive first attention. The other case will not interfere.

THE COURT:  There will be no request for continuance of the trial over there?

MR. SACHSE:  There will be no request for continuance in either Court because of the pendency of the matter in the other Court.

1        THE COURT: That solves my problem. I want to be

2  courteous to Judge Turrentine and yet I didn't want to commit

3  myself until I knew what you gentlemen had in mind.

4        MR. CRANSTON: I understood also that the trial of

5  this case beginning on June 16th would not mean that the hear-

6  ings before the Master would stop. Is that correct?

7        MR. SACHSE: Within limits, yes, but there we might

8  run into a situation and I simply can't anticipate where we

9  might want a continuance. For example, when the Master moves

10  up the main stem, I mean below Fallbrook, the Fallbrook Public

11  Utility District is the owner of a lot of real estate and we

12  would run into a conflict where I would want to be in two places

13  at once.

14        THE COURT: As a matter of fact, I will probably try

15  the main stem here and use the Master on these tributaries. I

16  don't know where we will put him, but he is agreeable to work

17  wherever we decide to put him. But generally speaking, with

18  the exception of some specific matter, the hearings before the

19  Master can go ahead while the trial is going on.

20        MR. SACHSE: We can so arrange it.

21        THE COURT: Anybody with any difficulty on that?

22        MR. CRANSTON: What about Mr. Veeder? If he is pre-

23  senting a case before you, he couldn't be presenting the Govern-

24  ment's case before me at the same time.

25        THE COURT: Well, he has some young lawyers who are

1   pretty good boys.

2            MR. VEEDER:  We will take care of it.

3            MR. STAHLMAN:  I can say that when we get up on the

4   properties north of the Vail Dam that we will probably have some

5   difficulties there.  On the other hand, there may be matters

6   before this Court in which Vail won't be interested.

7            THE COURT:  Also, I am not going to object to adjourn-

8   ing this trial for a week or ten days occasionally.  I'm not

9   going to be happy to spend all my time hearing about this.  There

10  will probably be other things I have to take care of.  I will

11  be glad to get rid of you, if we have emergencies where you have

12  to appear before the Master.  Mr. Cranston and I don't want

13  you fellows competing as to whom you appear before.

14           MR. SACHSE:  There is one other question as to this

15  trial date.  You have before you, by stipulation, at least one

16  set of motions.  Mr. Moskovitz tells me that there are going to

17  be more.  I think we ought to get the date, because I definitely

18  am of the opinion that some of those ought to be argued before

19  the case goes to trial.

20           MR. VEEDER:  May I inquire along that line, Mr. Sachse.

21  You have filed with the Court and you have served on us a motion

22  to dismiss, to strike, and for a more definite statement.  Now

23  you are also, in the vernacular, putting the arm on us for a

24  lot of information in addition.  Now I have no objection to

25  arguing any of these matters, but from the standpoint of

1    making a more definite statement and at the same time asking

2    for interrogatories it doesn't make much sense to me to be taking

3    time for such a thing as that.

4        MR. SACHSE:  I can put you at ease on the latter.  I

5    will assure you that I will make no attempt to press any motion

6    to make more definite and certain if I can get the information

7    the easy way.  But I do have motions that I think, in all good

8    conscience, are sound, both to dismiss and to strike, and which

9    would, if successful, eliminate by the matter of a few hours'

10   legal argument many, many days of evidence, and I intend to use

11   the authority of the Rules of Court to present them before we

12   go to trial on them.  Some of those I want to argue.

13       MR. VEEDER:  I am simply stating to you that in re-

14   gard to much of the material concerning which you did make

15   reference in your motion to make more definite and certain I

16   say to you the document would have been that thick if we had

17   attempted to include it.  We have the data, and I see no reason

18   for arguing those.

19       MR. SACHSE:  I just told you I'm not going to argue

20   those.

21       THE COURT:  Why don't we fix June 16th -- I don't know

22   how I could possibly fix it any earlier -- as the date for

23   hearing these motions and hear some of them right at the start

24   of this trial?

25       MR. SACHSE:  Fine.

1        THE COURT:  I will dispose of what I can.  Those that
2  I can't, I will take under submission and as the trial proceeds
3  I will dispose of them.

4        MR. SACHSE:  That will be very satisfactory, your
5  Honor.

6        THE COURT:  June 16th?

7        MR. SACHSE:  That will give us time if additional
8  motions are filed on additional counts or paragraphs to notice
9  them all for the 16th of June.

10        THE COURT:  That is right.  If you are going to raise
11  some questions of law on some of these causes, I want some briefs
12  on them.

13        MR. VEEDER:  Is Mr. Sachse going to file a brief in
14  support of his motion?

15        MR. SACHSE:  I will file a brief in support of the
16  motion you now have.  I did that in a rush, you appreciate.  As
17  to any additional ones, I will file a brief with the motion.

18        MR. VEEDER:  I'm old-fashioned.  I would just like to
19  know.

20        THE COURT:  All right.  Can we adjourn this until
21  tomorrow morning?

22        MR. SACHSE:  One more question, and that is I'm not
23  quite clear on some of the existing orders.  What about Answers?
24  How many copies?  Your Honor made an order on briefs and things
25  of that kind to file 50 with the Clerk.  Without the order I

1  would be inclined simply to serve my Answer on the Government

2  and to have copies available myself for anyone who wants them.

3  But I'm still worried about this theory that everybody is

4  adverse to everybody else that is being discussed here.  Am I

5  going to have to hire a printer for this Answer?

6           MR. VEEDER:  I thought that was one order that was

7  going to stand, that everybody was adverse to everyone else.

8           MR. SACHSE:  The question I am asking you now is,

9  am I required, in your view, to prepare 7000 Answers?

10          MR. VEEDER:  No, I think the matter has been taken

11 care of.

12          THE COURT:  Well, what about co-Counsel?  Do you want

13 copies of his Answer here?

14          MR. SACHSE:  I will attempt to limit them -- I have

15 done so, so far -- I will try to get copies to co-Counsel.  I

16 will, of course, serve the United States, and of course keep

17 the State of California advised, and if anybody else here wants

                                                     it
18 one I will give it to them.  I would like/to be straight that I

19 am not going to hire any offset printing company to make copies.

20 And I will, of course, give a copy to the Master.

21          THE COURT:  I don't think any problem will arise there,

22 unless somebody makes a point that they want a copy of an

23 Answer and they haven't got it.  Does anybody see any problem

24 on this?

25          MR. VEEDER:  I thought the matter was taken care of,

   frankly.

1          MR. SACHSE:  I don't want to make trouble, but we

2    have an order that says as to briefs I have to file 50 copies

3    or something like that with the Court.

4          MR. VEEDER:  You are talking about something else.

5          MR. SACHSE:  I want to be sure that that rule doesn't

6    apply in the case of an Answer, and it is my understanding that

7    it does not.

8          THE COURT:  What did it say, Mr. Clerk?

9          (Conferring with the Clerk)

10         Twenty-five copies, and not 50?

11         THE CLERK:  I believe it was 25 copies, your Honor.

12         THE COURT:  What did that apply to, briefs or motions?

13         THE CLERK:  I understood it was all documents, at

14   that time.  Very few of those copies have ever been picked up.

15   The only ones that have been picked up have been this proposed

16   Amendatory Complaint -- we have had more calls on those.

17         MR. MOSKOVITZ:  I don't recall particularly to what

18   documents it applied, but I know that it applied to briefs, and

19   it was to be served on all Counsel who appeared, plus 25 extra

20   copies to the Clerk.

21         THE COURT:  Well, I suppose you have to do that.

22         MR. SACHSE:  I want to remind you again, your Honor,

23   that if that order applies to Fallbrook that order applies to

24   every single individual in this case and you are making each

25   one of them go to a printer.  I think we had better set that

1   order aside.  It is just hopeless to ask those people, who are

2   going to pick up a document that Mr. Cranston gives them, to

3   serve every Counsel of record.  They don't know who they are.

4   They would have to come down here to find out.

5          THE COURT:  I don't know whether I want to set it

6   aside or not.  There is always a presumption that orders

7   have been complied with, and we could overlook a lot of this

8   and still have the order stand.  Let's think about that until

9   tomorrow.

10         MR. STAHLMAN:  Like Mr. Dennis' order.

11         MR. MOSKOVITZ:  Your Honor, do you have any idea how

12  long we will be going tomorrow?  I have some other things that

13  I want to schedule.

14         THE COURT:  If they get this mock-up they are talking

15  about and you get this pre-trial stipulation checked over and

16  get it signed up and get the things done,  I think tomorrow

17  we can just button it up in the morning.

18         MR. MOSKOVITZ:  Your Honor, do you want to talk about

19  the order interpreting the stipulation?

20         THE COURT:  I want to see a draft of it.

21         MR. VEEDER:  We will have a draft, your Honor.

22         MR. MOSKOVITZ:  Are we going to meet some more and

23  try to agree?

24         MR. VEEDER:  Yes.

25         MR. MOSKOVITZ:  And that will be tomorrow morning also.

1      THE COURT:  Yes. Get me a copy of the draft before

2  then.  I would like to look it over.

3      MR. VEEDER:  We will, your Honor.

4      Would your Honor be available at any time this after-

5  noon?

6      THE COURT:  I will be here all afternoon.

7      MR. VEEDER:  I want to bring that mock-up in to you

8  as soon as I can, because I am concerned about time and money.

9      THE COURT:  Anything further now?

10     What time do you want to meet tomorrow?  Better say

11  9:30?

12     MR. VEEDER:  9:30.

13     THE COURT:  We have a jury trial to start tomorrow.

14     9:30 tomorrow.

15     (ADJOURNMENT UNTIL WEDNESDAY, APRIL 9, 1958, 9:30 A.M.)

16

17

18

19

20

21

22

23

24

25