# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

### HONORABLE JAMES M. CARTER, JUDGE PRESIDING

— — —

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT,
et al,

Defendants.

No. 1247-SD-C

---

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

**Place:**     San Diego, California

**Date:**      September 23, 1958
               September 26, 1958

**Pages:**  2187 to 2237

# FILED

SEP 2 4 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____
DEPUTY

JOHN SWADER
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,          )
                                   )
                        Plaintiff, )
                                   )
vs.                                )          No. 1247-SD-C
                                   )
FALLBROOK PUBLIC UTILITY           )
DISTRICT, et al,                   )
                                   )
                       Defendants.)

- - -

REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California

Tuesday, September 23, 1958

- - -

APPEARANCES:

      For the Plaintiff:      WILLIAM H. VEEDER, Esq.
                                WILLIAM E. BURBY, Esq.
                                Special Assistants to the
                                Attorney-General
                                Department of Justice
                                Washington, D. C.

APPEARANCES (continued):

| | |
|---|---|
| For U. S. Marine Corps: | COL. ELLIOT ROBERTSON<br>CMDR. DONALD W. REED |
| For defendant Vail<br>Company: | GEORGE E. STAHLMAN, Esq. |
| For defendants Fallbrook<br>PUD, et al: | F. R. SACHSE, Esq. |
| For defendant State of<br>California: | CARL BARONKAY, Esq. |
| For defendant Santa<br>Margarita Mutual Water<br>Company: | W. B. DENNIS, Esq. |
| For defendants Sawday: | LUCE, FORWARD, KUNZEL & SCRIPPS<br>by ROBERT MCGINNIS, Esq. |

SAN DIEGO, CALIFORNIA, TUESDAY, SEPTEMBER 23, 1958, 2:00 P. M.

- - -

THE CLERK:   4 - 1247-SD-C United States vs. Fallbrook Public Utility District, et al.

Further pre-trial.

MR. VEEDER:   Your Honor, I had requested that we undertake to initiate the preparation of a pre-trial order, and we have undertaken, in the time permitted, the preparation of a rough outline of certain of the issues that we think are in the case, and I would like to have you consider it (handing document to the Court).

THE COURT:   It looks like I shouldn't interrupt you; just let you keep on working on this matter.

MR. VEEDER:   It is just a matter of time, your Honor.  We are moving along on it.  Mr. Sachse and the representative for the State of California have joined us now, and I think we will be in position to proceed and get their advice as to what should be included.  But I understood that the two o'clock period would be up and that you wanted to see what we are doing, and this is what it is.

Briefly, I would like to outline what I would recommend, so that everyone can hear.  I think the pre-trial order should contain the Agreed Facts to which we have already stipulated.

THE COURT:   The Agreed Facts already stipulated to

1      can be incorporated by reference.  One line is all you need

2      for that.

3              MR. VEEDER:  If you want it that way, fine.

4              Then the issues decided by your opinion of August 8,

5      1958, we went through yesterday, the questions of law that

6      were discussed yesterday, and such other questions of law as

7      Counsel may submit to us; a list of the exhibits of all the

8      parties, and a list of the witnesses of all the parties.

9              That would be the general course that we would be

10     working on from now on until we have tendered to you a complete-

11     ly formalized document.

12             THE COURT:  All right.

13             MR. VEEDER:  If that is satisfactory, your Honor, we

14     can go ahead.

15             THE COURT:  That sounds all right as to form and

16     content.

17             I have mentioned several times that Counsel should

18     look over these exhibits, and I would like to have some indi-

19     cation as to what exhibits there are going to be objections to

20     and which ones can go in without foundation or with a minimum

21     of argument as to foundation.  That can be put over until you

22     get the rest of this work done, to see how far we can get

23     along on that.

24             MR. VEEDER:  It would be helpful to us, your Honor,

25     if the gentlemen who are examining our exhibits would advise

1   us as to the ones concerning which there will be question, and

2   then we could make our plans accordingly.

3          THE COURT:  That's what each of you should do -- you

4   all know now generally what is going to be offered, and find

5   out which ones there is going to be argument about.

6          MR. SACHSE:  How soon is your set going to be com-

7   pleted, Mr. Veeder?  There are about 25 or 30 folders there

8   with no exhibit in them.

9          MR. VEEDER:  I would like to have you show me which

10  ones there are.

11         MR. SACHSE:  There is a whole bundle of them.

12         MR. DENNIS:  I went through them this morning, Mr.

13  Veeder.  I can give you the ones that aren't there.  Of

14  Exhibits 37 to 75 the only ones present are 41, 42, 48 and 53;

15  and then 28, 29 and 30 are not present.

16         MR. VEEDER:  This is the price we pay for providing

17  exhibits.  Mr. Sachse hasn't provided any, and Mr. Dennis

18  none at all.

19         MR. SACHSE:  You have a full set of every exhibit.

20         THE COURT:  Let's not worry about that.  Where are

21  yours?

22         MR. VEEDER:  There are some at the Camp that are

23  being revised at the present time.  The rest of those pages

24  are there, if they want to examine them.  They haven't really

25  looked at the ones we have.

1          THE COURT:  Well, to do the job they are going to

2   have to have a chance to look at all of them.

3          MR. VEEDER:  That's right.

4          THE COURT:  When are you going to have them down here?

5          MR. VEEDER:  Colonel Bowen is working on them now.  He

6   said that he was going back to finish them up.  So I will try

7   to have everything here by Friday -- every exhibit that we will

8   have.  We have a great number there that we would like to have

9   them examine and advise us whether there is going to be objec-

10  tion to them.

11         MR. SACHSE:  The basic question on that, your Honor

12  -- we broke off yesterday afternoon talking about Bulletin No.

13  57 -- among the exhibits proposed by the United States, for

14  example, is the Bulletin of the Office of the State Engineer

15  of California from 1888.  Now if the State Engineer's Bulletin

16  from 1888 is a document proper foundation for which can be

17  laid and get it into evidence, I don't see why the Bulletin of

18  the successor to the State Engineer for 1957 is not a proper

19  document.

20         MR. VEEDER:  We will withdraw that exhibit.

21         MR. SACHSE:  Similarly, there are a great many

22  exhibits that I think would perhaps be difficult for Mr. Veeder

23  to lay the foundation.  I don't want to quarrel about exhibits

24  that include compilations of data from many sources.  I don't

25  expect them to produce every man who read the stream flow

1  gauges or read the pumps.  But I think the question is basic.

2  If Mr. Veeder feels as strongly as he says he does about

3  foundation on Bulletin No. 57, we will have some pretty strong

4  foundational objections of our own.

5          MR. VEEDER:  Excellent.

6          THE COURT:  Let's not get into that now.  The

7  exhibits are not all here. Mr. Veeder says that he will have

8  his here by Friday.

9          Are yours here, Mr. Sachse?

10          MR. SACHSE:  I submitted to Mr. Veeder all exhibits

11  which are not already in his possession for one reason or

12  another, I believe.  I gave him a list.  I gave him a whole

13  bundle.  However, that is not complete to this extent, that

14  we intend to put in certain very limited graphs and charts,

15  and I did not intend to spell out in detail what they would be

16  until I saw what was going in on their case in chief.

17          For example, I notice that in the runoff figures

18  that the United States has -- there will be another argument

19  -- of course, these are U.S.G.S. figures and they are the same

20  ones that we would use.  But their exhibit stopped with

21  September 1957.  I don't think we should stop with September

22  1957.  I think that we should include last winter's rains.  We

23  will put in an exhibit bringing this thing down to date.

24  Because without exception, from my cursory examination of all

25  the studies of the United States, whether it is stream flow

1   measurements, water well measurements, water consumption, all

2   appear to end with the water year ending September 1957.

3         MR. VEEDER:  I assure you that they will all be

4   brought up to date.  Those are not available in published form

5   yet.  They will be in the record.  They are in the record of

6   the Special Master's hearing.

7         THE COURT:  All right, we will have no problem on

8   that.

9         MR. VEEDER:  No problem.

10        THE COURT:  Has the State of California exhibited all

11   the documents it is going to offer?

12        MR. BARONKAY:  I am not certain that they have.  I

13   feel that a number of them may still be in preparation.  Mr.

14   Moskovitz will be here Friday afternoon and at that time those

15   that are available I am sure he will bring with him and let

16   Counsel know when the remainder will be available.

17        THE COURT:  Do you know what has been exhibited so

18   far?

19        MR. BARONKAY:  I do not, your Honor.

20        MR. SACHSE:  Some have been distributed to Counsel,

21   because I have some that Mr. Moskovitz gave me.  I know that it

22   is not complete.  I have his list here.

23        THE COURT:  What about the Vails?

24        MR. STAHLMAN:  We have a list.  There are not many

25   -- just a few.  They are exhibits that we turned over to the

Government that were introduced at the first trial -- soil

1   studies and certain maps.  They are designated as an exhibit in

2   the first trial.  I understand that they were taken up to

3   Reche School.  But they are in the possession of the Clerk.

4   　　　　THE COURT:  Mr. Clerk, where are they?

5   　　　　THE CLERK:  The exhibits were all turned over to Mr.

6   Cranston's clerk, your Honor.  I imagine they are still up

7   there.

8   　　　　THE COURT:  Find out this afternoon where they are

9   and find out how we can get them down here.  The chances are

10  that Mr. Cranston has them at his office.

11  　　　　MR. STAHLMAN:  We have the numbers of them, and if

12  Mr. Hall will supply them, there is one map which we have to

13  bring up to date -- they will have to do a little work on it,

14  and we will do that as expeditiously as possible.  The condition

15  has changed in the last year.

16  　　　　THE COURT:  Mr. Dennis, what exhibits are you rely-

17  ing on?  And have you exhibited them?

18  　　　　MR. DENNIS:  As I stated yesterday, your Honor, the

19  only exhibits that we intend to introduce are those that we

20  had introduced in the prior trial, and both the State and

21  Fallbrook and the Government have copies of all those exhibits.

22  　　　　However, in going over the exhibits this morning

23  which the Government has proposed to use, I know that some of

24  them start with the year 1950, while the similar exhibits

25  exhibits which we had started maybe 10, 15 or 20 years before.

1    Mr. Veeder has assured me that when those exhibits are intro-

2    duced in their final form they will contain the data which

3    were contained in the exhibits the Government introduced at

4    the former trial.  If they do not, of course, we would want

5    to put those exhibits in evidence.  But again they are exhibits

6    copies of which are in everybody's possession.

7          There are one or two things by reason of which

8    perhaps I should qualify the statement.  As I understand, Mr.

9    Veeder is going to prepare a list of the exhibits which he

10   intends to introduce, which he introduced before the Master;

11   and I assume that those will contain all the exhibits that

12   the United States introduced, and if so there will be no

13   problem there.   However, if all of those exhibits are not

14   introduced, there might be one or two of them not contained in

15   Mr. Veeder's list which we might want to introduce.

16          Primarily, as far as the exhibits are concerned,

17   they are the ones which were introduced at the trial before

18   of this action.

19          I went over the exhibits which Mr. Veeder proposes --

20   and I think he did a good job, and he has had a hard time

21   getting together all of the material.  However, I have not had

22   an opportunity to see whether or not there are any discrepan-

23   cies between the exhibits that he is now introducing and

24   those that he introduced at the last trial, and if there is

25   of course we want an opportunity to introduce the full exhibits.

1          I notice, for instance, on one map the boundaries of

2   the basin within Pendleton apparently are somewhat changed from

3   what they were at the former trial.

4          MR. VEEDER:   I think you are on cross examination

5   now.   The exhibits we are offering you can certainly cross-

6   examine on.

7          MR. DENNIS:   That cross examination might involve

8   the introduction of the former exhibits offered by the Govern-

9   ment.

10          MR. VEEDER:   You can try your lawsuit any way you

11   want.

12          THE COURT:   Mr. McGinnis.

13          MR. MCGINNIS:   Your Honor, we have listed 5 exhibits:

14   one is the deed to the property; the description of the

15   property is in the Answer.   We have listed two geologic maps

16   which the United States has also listed, and we will be refer-

17   ring to portions of those maps.   We have listed two applica-

18   tions to appropriate water, and we have copies of those

19   available.

20          the court;   I suggest, then, that you go back to work

21   on the pre-trial stipulation of facts and issues.   I'll be

22   available if you want to see me, and fix a later date to have

23   you back in here to see what you have accomplished.

24          MR. VEEDER:   What would be your preference in that

25   regard?

1   THE COURT:  Do you want to make it Thursday, or

2   Friday?

3   MR. VEEDER:  I would like it very much, your Honor,

4   if we could have it ten o'clock on Thursday and show you where

5   we are.

6   THE COURT:  All right.

7   MR. VEEDER:  It might be that you'll have to use the

8   black-snake whip.

9   THE COURT:  All right, let's make it 9:30 on

10   Thursday, and then Mr. Sachse could get away to court maybe.

11   MR. VEEDER:  All right.

12   MR. SACHSE:  My pending proceedings will not stop

13   this.  We will proceed anyway.

14   THE COURT:  Let's make it 9:30 Thursday.

15   MR. BARONKAY:  Your Honor, would you be in position

16   at this time to tell whether this will continue over to

17   Friday?

18   THE COURT:  I think so, because after you get this

19   work done I want some time spent on these exhibits and I want

20   to find out just who is going to make objections to what

21   exhibits.  I want some reservations of objections made.

22   MR. BARONKAY:  Fine.  Mr. Moskovitz plans to be here

23   Friday afternoon and I didn't want to tell him otherwise.

24   THE COURT:  We'll spend some time Thursday and

25   Friday on that.  I think you'll have this other job pretty well

1    done.

2          Now there's only one other thing I'd like to take

3    your time on.  Last night after we adjourned there was a little

4    informal discussion here in the well of the court and various

5    people were in and out on it.  But Mr. Grover and Mr. Krieger

6    were raising the question as to whether or not they should

7    attend this hearing or whether they could put their case on at

8    some later hearing, possibly at a more convenient location

9    before the Master or the Court in the Temecula or the Murrieta

10   Valley, and their specific request was whether or not the

11   Government's witnesses or the witnesses for the major parties

12   could be recalled, if necessary, for such cross examination as

13   might be needed at that time.

14          Well, at first thought that disturbed me a little

15   bit.  But after the matter was discussed here and I thought

16   about it, I am not so sure but that that wouldn't work.

17          Mr. Krieger called me again this morning and said

18   that they had thought about the matter and considered the

19   possibility of participating throughout this trial.  They were

20   confident that with Fallbrook and the State of California and

21   the Vail Ranch and various other major defendants involved

22   here the probabilities are that any cross examination they

23   could think about would probably be taken care of and that

24   there was only a small likelihood that they would want to call

25   somebody back and have some further cross examination made on

1    the direct record made at this trial.

2            Mr. Veeder or Colonel Bowen was asked last night

3    about how many witnesses the Government might have.  It wasn't

4    a large number.

5            It seems to me that, inconvenient as it may be, we

6    are going to have to try this in segments if a defendant

7    requests it.  We are going to have to take the position, in

8    order to have due process in this proceeding, that at almost

9    any time any defendant, pro per or represented by Counsel, is

10   going to have a right to come into this court and make a

11   showing, raise points that may or may not have been raised

12   before, and have his day in court.

13           Now does anybody have any serious objection to some

14   procedure like that?

15           What I was thinking about, to follow it through, was

16   possibly to prepare some kind of order which would consist

17   largely of a series of recitals followed up by one or two

18   brief orders.  I'm working on a draft here, but I haven't got

19   it finished.  But it would point out that this case is going

20   to have to be segmentized , and that the court is going to

21   have to be taken to the people in many instances, with the

22   large number of pro per defendants.  It is impossible to try

23   it all at one time at one sitting.  And then as a recital point

24   out that the Court proposes, in the portion of the trial

25   starting on October 1, to hear certain of the major defendants

1    and if the Court is advised -- well, I'll just read you a

2    part:

3          That as near as the Court can ascertain, the major

4    parties who are prepared to proceed at that time, on October 1,

5    1958, with the presentation of their case are as follows:

6          (a)   United States of America, plaintiff.   The

7    United States proposes to put on its case in chief as to the

8    entire watershed of the Santa Margarita, describing the

9    holding of rights of the United States, the nature and

10   character of the soil in the watershed, the nature and extent

11   of the stream and its basins, the hydrology of the watershed,

12   the facts concerning rainfall and runoff in the watershed,

13   the facts concerning the claimed rights of the United States

14   -- riparian, appropriative and prescriptive.

15         Some general statement of what these major defendants

16   are going to do.

17         (b)   Fallbrook proposes to present facts concerning

18   the District, its claimed rights -- riparian, appropriative

19   and prescriptive, and other matters pertaining to the issues

20   in this case.

21         Some general statement.   Go down the line as to these

22   major defendants.

23         And then the order part of it would be relatively

24   brief.   Again very rough -- order:

25         That parties not appearing or participating in the

1    segment of the trial set for October 1, 1958, shall have the

2    right of subsequent hearing held either in the courtroom at

3    San Diego or at designated places elsewhere in the watershed

4    to present evidence and argue contentions concerning the

5    property owned by them and their claimed rights -- riparian,

6    prescriptive, appropriative (probably be broader than that),

7    and that the witnesses called and examined by the major parties

8    present at the segment of the trial set for October 1, 1958

9    and thereafter may be subsequently called, upon proper and

10   reasonable notice, for cross examination as to matters pre-

11   sented at the trial on October 1, 1958.

12        And then order that copies of this order be printed

13   verbatim in the Fallbrook Enterprise, Riverside News and

14   Daily Transcript of San Diego.

15        Now I would be interested in your reaction to it.

16   What I'm trying to think about is this.  This case is set for

17   trial on October 1 as to all parties.  Now we know as a

18   practical matter that a lot of these parties aren't going to

19   be here.  A lot of them are relying on the fact that there are

20   going to be Master's hearings in other areas of the district.

21   The Court itself may go out and hold hearings on some of

22   these tributaries.  And it seemed to be only fair to have some

23   kind of notice go out that they don't have to come down and

24   sit around -- they're entitled to be present at all proceedings,

25   but that they may have later on a chance to shoot at some of

2203

1    the things that happen here.

2            What does the panel of experts think of that?  Is it

3    necessary?  If it is necessary, how should it be done?

4            MR. DENNIS:  Your Honor, there was one question

5    brought up yesterday that disturbed me a little, and that is

6    in regard to the Complaints that were served subsequent to the

7    time that the matter was originally set for trial:  Did they

8    contain a notice stating that the matter was set for trial as

9    of October 1?

10            THE COURT:  I asked Commander Redd to check.  But

11   they all should have had a notice of the trial date of

12   October 1 in connection with the later Complaints.  Is that

13   right?

14            COMMANDER REDD:  Yes.

15            

16            

17            

18            

19            

20            

21            

22            

23            

24            

25

1        MR. VEEDER:  I think the question of due process is

2    probably the most important single question, and I believe

3    that your Honor's suggestion would go far to relieve any

4    successful challenge in that regard.  I am in favor of it.

5        MR. SACHSE:  I don't know, your Honor, whether that

6    would be the proper order in which to put this.  I mentioned

7    this to Mr. Veeder yesterday.  True, it's only 39 bodies, but

8    it's 26 parcels of land where we are in accord, and as far as

9    the United States and Fallbrook are concerned we could kick

10   them out of the case.

11       MR. VEEDER:  Let's settle one thing at a time.

12       THE COURT:  What are you talking about now?

13       MR. SACHSE:  In which requests for admissions have

14   been made by the United States that the lands overlie percola-

15   ting waters not a part of the stream; whether in an order such

16   as this, or a separate order, it would be appropriate to state

17   that Defendant John Smith, unless his neighbors complain, is

18   out of the case.

19       THE COURT:  That's a different matter.  It seems to

20   me that we ought to try to do a lot of that at one time.

21   What I would visualize there would be later on gathering

22   together a lot of this matter and then serving a notice by

23   mail on everybody that a hearing was to be held on a certain

24   date.  In other words, this business of notifying these

25   defendants is a problem, and we ought to get as many things

1 together at one time as we could.  And we might couple that

2 with a report of the Master, and bring something on with a

3 notice sent to all the people who have appeared in this action.

4        MR. SACHSE:  There's no pressure on it.  I have

5 advised all individuals that they could stay away until they

6 hear from me.

7        THE COURT:  Any other ideas on something like this?

8        Well, while you're working I'll be working on some-

9 thing and I'll submit it to you and you can look it over and

10 see what we can work out.

11        Thursday morning at nine-thirty.

12        (ADJOURNMENT)

13            - - -

1   SAN DIEGO, CALIFORNIA, THURSDAY, SEPTEMBER 25, 1958, 9:30 A. M.

2                              - - -

3           (APPEARANCES:  Messrs. Veeder, Stahlman, Sachse,

4   Dennis, Robertson and McGinnis.)

5           THE CLERK:  1 - 1247-SD-C United States of America

6   vs. Fallbrook Public Utility District, et al.  Further pre-

7   trial.

8           MR. VEEDER:  Your Honor, we have reworked the

9   issues and here is a copy we have prepared for you.

10          MR. SACHSE:  May I state at the very outset, your

11  Honor, that I gave Mr. Veeder two days ago six issues that I

12  wanted included, and they are not included.  They are very

13  brief.  If your Honor would so desire, I will read what I

14  think they ought to be into the record.  I think they are

15  essential.

16          THE COURT:  What are they?

17          MR. SACHSE:  (1)  Is there a present deficiency of

18  water supply for proper riparian uses within the watershed?

19          (2)  If so, where?

20          (3)  What is or what are the amounts of such

21  deficiencies?

22          (4)  What are the causes or contributing causes of

23  such deficiencies?  For example, (a) exports by riparians to

24  non-riparian lands.  If so, the amount.  (b)  Unreasonable or

25  otherwise improper uses by riparians.  And if so, the amount.

1    (c) Illegal diversions by non-riparians.  If so, the amount.

2    (d)  Diversions by appropriators under color of right but to

3    the deteriment of prior vested rights.  And if so, the amount.

4    And (e) any other causes.  And if so, the amount.

5         I believe it is the entire heart and soul of the

6    controversy in this case, and I believe that all five issues

7    should be included.

8         THE COURT:  Without regarding the form they are in

9    or any matter of that sort, what is wrong with those as issues

10   of fact, Mr. Veeder?

11        MR. VEEDER:  As far as I'm concerned, as I told Mr.

12   Sachse, it is perfectly all right with me.  I call your attention

13   to the fact that the State of California has set up exactly

14   the same statements that Mr. Sachse has gone into.

15        THE COURT:  Where?

16        MR. VEEDER:  In the proposals submitted to you by

17   Mr. Moskovitz in his letter of the 17th.

18        THE COURT:  Are they in this draft yet?

19        MR. VEEDER:  They are not in this draft yet.  But

20   there is no reason why they shouldn't be.  I don't believe

21   that they are pertinent, but if he desires them they certainly

22   can be included.  There is no objective on my part in not

23   including them.

24        THE COURT:  All right.  But I'm just interested in

25   why you think they're not pertinent.

1    MR. VEEDER:  I don't believe that your Honor can make

2    at the moment a determination as would be required by what

3    Mr. Sachse has tendered.  I believe that when your Honor enters

4    a decree showing the irrigated and irrigable acreage of all

5    kinds and types of claimed rights to the use of water that

6    necessarily there will be included all elements that relate to

7    the availability of water and whether or not there is a present

8    deficiency.

9         They can be included.

10        THE COURT:  We don't know what is going to develop.

11   In other words, his first question is, Is there a deficiency?

12   And then the second one follows along -- if there was.  Of

13   course, if there was no deficiency, the latter part would be

14   out.  The second part of his suggestions are in the alterna-

15   tive.

16        Now if there is a deficiency, though, the matters to

17   which he refers in the proposed issues would have to be deter-

18   mined as a factual basis for a decree.  Suppose that the

19   Court is going to restrain somebody with a vested right who is

20   using more than his correlative share.  Now how specific we

21   get in these findings as to causes and amounts of deficiencies

22   is another thing.  We will cross those bridges when we get to

23   them.

24        But generally the issues that he proposes seem to me

25   to be issues that would, in one aspect of the case, if the

1  facts fall that way, generally have to be determined.

2          Do you agree?

3          MR. VEEDER:  Your Honor, I am certainly not taking

4  issue with your Honor on that.  For example, if a present

5  deficiency is found to exist, what does Mr. Sachse mean by

6  "a present deficiency"?  Does he mean that if it happens to be

7  raining hard on Christmas day and no one needs any water there

8  is no deficiency?

9          I dare say that there will be a deficiency every

10  year, and there always has been every year, from the beginning

11  of the irrigation season to the end of it.  Of course, I have

12  taken a different view than has been expressed in regard to

13  declaration of surpluses.  I don't believe that that can be

14  done.  I believe that when your Honor determines the present

15  and potential rights he automatically determines what the

16  maximum demand upon the stream is going to be.  The moment

17  day to day determination as to whether there is or is not a

18  deficiency, in my view, would be a complete nullity.  I don't

19  believe it means anything.

20          However, I certainly desire to have it in there, if

21  your Honor desires it, and we certainly had no purpose in

22  ruling out anything that Mr. Sachse had tendered.  We do see

23  it here.  It has been written up, it is before your Honor,

24  and it will be included.

25          THE COURT:  All right, fine.

1          Let me look this over.

2          (A pause.)

3          MR. VEEDER:  I see that I gave your Honor a copy of

4   these.  I will give you the original, here, if I may exchange

5   with your Honor.

6          THE COURT:  As to ground water basins (3), what is

7   the meaning of the word "areal"?

8          MR. VEEDER:  It means the surface extent, your Honor.

9          THE COURT:  The what?

10          MR. VEEDER:  The surface area.

11          THE COURT:  In other words, the basin is underneath

12   the ground, but you try to demark on the top of the ground

13   where the basin is.

14          MR. VEEDER:  That's right.  There will be contact

15   shown between the alluvial deposits and the surrounding strata.

16          THE COURT:  What is the significance of 5:  Specific

17   yield of the uppermost water-bearing zone?

18          MR. VEEDER:  In the ground water studies and calcula-

19   tions it is essential that there be a delineation of the areas

20   concerning which the calculations are made.  There is a point

21   beyond which it is rather impossible, actually, to de-water

22   a particular strata of water-bearing deposits.  We have calcu-

23   lated the first hundred feet in most of them.  In other words,

24   the water that is in the first hundred feet will be calculated

25   from the standpoint of availability.  And that is what it means.

1    There is a point beyond which you cannot ecoomically pump the

2    water and de-water those water-bearing stratas.  So that is

3    why we took that part of the subterranean reservoir.

4        I think there will be an issue on that, as to whether that

5    is the appropriate course to pursue.

6        THE COURT:  This last one on the corporate facts and so

7    forth, No. 5, the willingness of the land owners within the

8    service areas of the above-named corporate entities to assume

9    the obligations and so forth.  I don't know how I could answer

10   that.

11       It makes me think of the famous old story about the owner

12   of the apartment house in New York.  The Communists, of course,

13   giving everybody lots of trouble.  They had been demanding

14   this and demanding that and organizing here and there.  So

15   during the depression this apartment house owner had let a lot

16   of them in, felt kind of sorry for them, and this apartment

17   house had fairly cheap rents.  And after they got in they

18   organized and they appointed a committee and they sent around

19   their demands.  The first one was, "We demand that the carpets

20   on the stairways be taken down.  They are loose, dangerous,"

21   et cetera.  And they had various other demands.  So the land-

22   lord met with this committee and started taking up these

23   demands:  "(1)  You say, 'We demand that the carpets be taken

24   down.'  I think we can take care of that all right.

25       "(2)  You say, 'We demand that there be maid service once

a week in each of these apartments.'  I can go along with that.

"(3)  You say, 'We demand that the garbage cans be cleaned out once a week.'"

There was a series of demands.

Finally, he came to the last demand and he said, "But I don't know how I can grant this last one."  He said, "This one, I think, is impossible:  'We demand that the Scottsborough Boys be released.'"

This business of asking the Court the willingness of the landowners to finance a project, I take it that those matters would be matters that would be put to a vote of the district.

MR. VEEDER:  That is right, your Honor.

THE COURT:  And how anybody, the judge included, could prognosticate what an electorate was going to do at any particular time, I don't know.  So many other factors would hinge on it.  You could hold the election on one day and you would get one result, and you could hold the election a month or so later and you would get another result.

MR. VEEDER:  That is right.

THE COURT:  You can put it in there, but unlike the landlord, I don't know how I can satisfy that demand.

MR. VEEDER:  Your Honor, we just dipped into the ink with which California has been writing so fluently.  One of the statements, as I remember, in their opinion, was that Mr. Yackey testified that pretty soon they are going to get 3,000

1   more acres of land into the Fallbrook Public Utility District--

2   I think it is maybe five-- and that the majority of those

3   people wanted to be in the district.  Now if Mr. Yackey can

4   reach into the ozone and come down and make it a finding for

5   the State of California, I think your Honor is far more

6   capable.  And I understand that Mr. Yackey is a phrenologist.

7   He might rub their skulls out there and come up with a finding

8   that they are willing to dummy up with some money to pay Mr.

9   Sachse and also to buy some land.

10          THE COURT:  We will cross that bridge when we get to it.

11          MR. VEEDER:  Anyhow, we thought it would be a little dab

12   and--

13          THE COURT:  Now what is your program?  You still have some

14   other findings to work on?

15          MR. SACHSE:  May I get straight on this, your Honor.  I

16   gave Mr. Veeder a copy of these and I understood him to say to

17   you that these were made up and included.

18          MR. VEEDER:  I didn't say that.

19          THE COURT:  He said they were going to be included.  This

20   is just a draft to work on.  They will be inserted in here

21   somewhere.

22          What is your program?

23          MR. VEEDER:  We are still having at it, your Honor.  I

24   have been working on trying to figure out some of these things

25   that Mr. Moskovitz has dictated down there.  We are moving on

1   it.  We are trying to get these questions of law pulled to-

2   gether.  However, the reason we were anxious to have this

3   conference this morning is that if we could proceed on the

4   basis that these would be the basic facts that could be in-

5   corporated in a pretrial order, we could begin putting it into

6   the final.  It is quite a mechanical undertaking.

7        THE COURT:  Well, let's not start to finalize it, because

8   I don't think you can start to do that until we get Mr.

9   Moskovitz to sit down here with us and see if there is any

10   dispute.

11        I take it that so far what you have submitted, with the

12   exception of the points Mr. Sachse has raised, no one has any

13   real contest on the matter.  Do you have some additional

14   factual matters that still have to be worked in besides Mr.

15   Sachse's?  Or have you got most of them?

16        MR. VEEDER:  I would like to go ahead with these facts,

17   because once we go on beyond what we have here I think we are

18   going to have difficulty.

19        MR. LITTLEWORTH:  I would like to raise one point of

20   inquiry, your Honor.  As we discussed over the phone, our office

21   is representing a fair number of the upstream people.  Prac-

22   tically all of our people, with one or two exceptions, are

23   pumpers, and we are concerned, of course, with the area of

24   water which is percolating ground water which is not part of the

25   stream, because we think that a large number of our people can

1  eventually be left out of this suit.

2       In the draft of the issues, which I understood was pre-

3  pared by the Court, it is quite clear that one of the major

4  issues is to determine what underground water is to be considered

5  as part of the stream system and what is to be considered out-

6  side the case.  I don't find that philosophy carried over into

7  this statement of issues here.  What I want to be clear on

8  is when we are talking about overlying rights and so forth,

9  we are discussing only those underground basins which are first

10  determined to be part of the stream system.

11       THE COURT:  I think you have a point.

12       I think, Mr. Veeder, you had better go over some of the

13  general suggestions I had, even if some of them are repetitious.

14       MR. VEEDER:  Yes, your Honor.

15       THE COURT:  Because one issue in this case very defin-

16  itely is, what land is there where the water is not connected

17  with the stream?  But you will be working further this morning

18  and you will be talking about it.

19       Do you have any further suggestions?

20       MR. LITTLEWORTH:  No, your Honor, that is the only one

21  I see immediately.

22       MR. VEEDER:  I think we intend to have that.  If your

23  Honor will look at E-9, exercise of overlying rights-- that

24  is on page 6.

25       I feel this way on what your Honor said.  We have pleaded,

1  and we desire relief in regard to the Santa Margarita River

2  and its tributaries, and anything that does not come within

3  that category is necessarily excluded.

4  THE COURT: It doesn't do any harm to spell it out.

5  MR. VEEDER:  Yes, your Honor, we will spell it out.

6  THE COURT:  It may be in E-9 indirectly, but let's spell

7  it out.

8  MR. VEEDER:  I will.

9  THE COURT:  I don't have any objection to this particular-

10 ization, because it does keep our eye on the ball as to what

11 we are going to have to decide on some of these factual matters.

12 But I think there is no harm in having some general statement

13 on some of these major issues that have to be decided.

14 MR. VEEDER:  Yes, your Honor.

15 THE COURT:  Mr. Stahlman.

16 MR. STAHLMAN:  Your Honor, I am due over in the Superior

17 Court at 10 o'clock and I would like to get out of here, if I

18 can.  I am running back and forth between these two cases.

19 We are just finishing up over there, so that we will be ready

20 for this case.

21 I would like to direct your Honor's attention to one

22 thing.  I had the opportunity to look over the copy of your

23 Honor's proposed procedure in the trial.

24 MR. VEEDER:  That is, the Fallbrook proposed order.

25 MR. STAHLMAN:  The Fallbrook proposed order, yes.  And I

2217

1    would like to make this comment.  Although Vail Company has

2    been designated as a major defendant in this case, I think it

3    is major only in so far as it may have a little more land than

4    some of these other people.  But it is not major in so far as

5    it may affect the outcome of this case.  For instance, there

6    are water users who have recently developed considerable water

7    on the Murrieta basin and Murrieta Creek which affect the

8    town of Temecula.  That is the largest community outside of

9    Pendleton that exists in this watershed.

10           THE COURT:  And you are, of course, not concerned with that

11   at all.

12           MR. STAHLMAN:  Very much concerned.

13           THE COURT:  You are not concerned with the Murrieta basin,

14   are you?

15           MR. STAHLMAN:  Oh, yes, your Honor.

16           THE COURT:  Oh, you have land there, too?

17           MR. STAHLMAN:  Yes.

18           THE COURT:  I thought your land was all in the Temecula

19   area.

20           MR. STAHLMAN:  No.

21           THE COURT:  I stand corrected.

22           MR. STAHLMAN:  And also, along the boundaries of the

23   Vails, there are people who are extracting water, we believe,

24   illegally and without right, and we think those people are

25   important because they deplete the stream.  Also, north of the

1    Vail Ranch, that is, upstream, there are quite large develop-

2    ments in recent years that have had a material effect upon the

3    stream, some of which extractions and diversions of some of

4    that water, we believe, are without right.

5        We think those people are just as major as we are.   So

6    when it comes to the trial of these cases, I don't feel that

7    we ought to get to the point where Vail would have to be running

8    up and fighting all these individual cases.   I believe that

9    those people that we know to have large acreages and to be

10   making substantial diversions should be major defendants as

11   well, or at least be tried along with the rest of us, because

12   I feel there are some of those who are more important in so

13   far as the effect they may have upon the Santa Margarita stream

14   system than the Vail Company.   Because I believe that the

15   evidence in this case is going to show that the Vail Company,

16   whatever use it is making, it is making by reason of its legal

17   and proper rights, and some of these others are not.   There-

18   fore, that would have a greater effect upon the effect of the

19   use as it might affect persons who have prior and more sub-

20   stantial rights .

21       THE COURT:  Of course, there is no hard and fast rule

22   that we can lay down as to who is a major party and who is not.

23   You can't take an entire area.   You can have a small holding

24   where a man was making diversions out of the watershed which

25   would have more of an impact on the case than a man with

1    30,000 acres where 29,000 of it was percolating water if it

2    was not part of the stream .  So it's a difficult thing to do.

3        I suggest that you do the same thing that I asked Col.

4    Bowen to do.  Give me a list of these people, the acreages

5    and what they are doing.  Informally we may make some little

6    inquiry and find out who their attorneys are.  There is no

7    other way to approach it right now.  Of course, you will have

8    your day in court sometime with these people.  Your thought is

9    that you would like to get them into this part of the trial.

10       MR. STAHLMAN:  My thought is that, as this outline here

11   would indicate, those people could sit and not have to be

12   present, and then they could call our witnesses back at any

13   time, et cetera.

14       THE COURT:  I don't know whether you were present when

15   we informally discussed this.

16       MR. STAHLMAN:  No.

17       THE COURT:  Mr. Veeder is going to undertake to redraft

18   my tentative suggestions and put a little more teeth in them

19   than I have.  In other words, the effect of this trial that

20   is starting on October 1st or as soon thereafter as we can get

21   started is a part of the trial of this action.  Everybody who

22   has been served in this case is bound by what goes on.  If

23   they want to absent themselves, they are doing it at their

24   peril, because we are not going to tell them when they must

25   be present and when not, except that they may ask a later

1  hearing if they choose, put their proof on as to their holdings

2  and their claims before the Court or the Master at some other

3  hearing.  They are going to certainly have to ask permission

4  if they want to recross-examine any of the witnesses that were

5  called here.  We are making a broader rule as to the pro per

6  defendants who haven't attorneys.

7      Mr. Veeder proposed to do some work on that, and he

8  hasn't done it yet.  This is not an order yet to be signed.

9      MR. STAHLMAN:  I understand that.  I just wanted to get

10  my views before it is formulated.

11      THE COURT:  While you are on your feet, I don't find any

12  issues here involving the Vail problems.  Have you got to that

13  yet?

14      MR. STAHLMAN:  These are general issues.  They affect

15  the Vails.

16      THE COURT:  Well, you have a fact issue, so I understand,

17  concerning a contention on your part to be relieved from this

18  decree.

19      MR. STAHLMAN:  That is in there.

20      MR. VEEDER:  That is a question of law.

21      MR. STAHLMAN:  That is in the legal issues.

22      THE COURT:  There is no factual basis at all?  If there is

23  any fact basis in that matter-- I don't know what the story is.

24      MR. STAHLMAN:  I could spell them out in general terms,

25  yes.  It has been spelled out in the Answer.

THE COURT:  Is there any factual basis for this contention?

MR. STAHLMAN:  Yes, your Honor, I think there are going to be many facts in this case.

THE COURT:  Then you should have in here at least one sentence-- the factual basis of this matter:  Also, I suggest at least a general statement of the facts showing the actual operation of the decree.  I have that listed.  In other words, the Court is going to have to know how this decree has been working-- the fact basis for your contention for modification or termination or whatever it is, of this decree, et cetera.

Mr. Veeder will work on that while you are gone.

MR. VEEDER:  Yes, I will undertake that.

Your Honor, there is one problem we have encountered repeatedly as we went along, and Mr. Dennis is actually the only one who has been working with us on this and we talked about it yesterday, in regard to the offer of evidence in this case, particularly respecting the applications which have been filed.

Now I realize that we can't, and we do not ask your Honor to anticipate a ruling on these matters, but it would make a difference as to the form of the issues of fact if we knew whether Fallbrook was going to offer all of its applications-- that is, applications 12178 and 12179, the applications upon which Permit 8511 was issued.

1          THE COURT:  They will be required, and I now so direct,

2      to state what they are going to offer.

3          MR. SACHSE:  We have listed them, Mr. Veeder, in our list

4      of exhibits as intending to offer every document pertaining to

5      any of our exhibits which you now have.  They are listed in the

6      list you now have.  That is, if it has gone to license, they

7      will nevertheless be introduced.  The application that preceded,

8      the permit that preceded and the license that wound it up,

9      the whole thing will be in.

10         MR. DENNIS:  Will that include the original applications,

11     the amended applications?

12         MR. SACHSE:  It will include the file as I have it.  If

13     there are letters or correspondence or something that somebody

14     wants, they will have to ask for it.

15         MR. DENNIS:  I think that was the question, the Court

16     will recall, that the Government introduced at the hearing

17     before the Master, certain files that showed original applica-

18     tions and amended applications and certain documents and files

19     of the State Water Rights Board as one of the Government's

20     exhibits, both with respect to Fallbrook's applications and

21     with respect to Santa Margarita's applications.  Now yesterday

22     Mr. Veeder stated that it was his intention-- I believe that

23     I am quoting him correctly, and if I am not I wish he would

24     correct me-- that he intended to introduce all of the exhibits

25     which were introduced before the Master by the United States

2223

of America, with the possible exception of those exhibits which covered these applications by Fallbrook and by Santa Margarita.   I think that is what we are talking about now, isn't it?

MR. VEEDER:   That would depend upon whether Fallbrook or Santa Margarita are going to offer that themselves.   Now, as long as they are going to offer it--

MR. SACHSE:   What do you suggest?   If you think it is part of your case in chief--

MR. VEEDER:   It would make a difference to the issues. As long as Mr. Sachse said that he is going to put them in, fine.

THE COURT:   In other words, Mr. Sachse is going to put them in, so you are not.

MR. SACHSE:   I am going to put in what I put in.   If Mr. Veeder wants something else, I don't know what he is talking about.   I gave him a list of exhibits and I have even given him copies.   That is what I am going to put in.

THE COURT:   I am not going to be concerned particularly in the trial of this matter with who offers the exhibit.   So let's not jockey for position.   It makes no difference to me where the exhibit comes in.   If it is properly in evidence, I can consider it.   So let's not worry too much about that.   If you are concerned about that, let's forget about it.

MR. DENNIS:   I think we are not entirely in agreement.

1  Mr. Sachse says that that application and that permit and

2  particular file of the State Water Rights Board which Mr.

3  Veeder put in before the Master contains more documents than

4  those that I assume Mr. Sachse proposes to offer.

5      THE COURT:  Are you talking about some letters now?

6      MR. DENNIS:  No, your Honor.  For instance, take the Santa

7  Margarita case.  We would file an application and then we

8  would file an amendment to that application and then we would

9  file maybe an amendment to that application, and in the

10  Fallbrook case maybe they have done the same thing on each one

11  of their applications and then there would be a permit issued

12  to Fallbrook and one issued to Santa Margarita .  As I under-

13  stand Mr. Sachse, what he is proposing to introduce is the

14  last amended application in that matter, which would have the

15  permit endorsed on the back of it.  What Mr. Veeder would

16  introduce would be the original application, the first amend-

17  ment, the second amendment, the third amendment and the permit.

18      THE COURT:  Why doesn't Fallbrook put in all the applica-

19  tions leading up to the permit and have it in some logical

20  order?

21      MR. SACHSE:  I don't think there is any necessity for

22  them, your Honor.

23      THE COURT:  I want them in.  I want this record to be

24  complete.

25      MR. SACHSE:  I understand your Honor to say that for

1    pretrial purposes the Court was not going behind the determin-

2    ation of the Water Rights Board.

3         THE COURT:  I am going to make a record in this case.

4         MR. SACHSE:  I will do whatever your Honor wishes.  I

5    assumed that you wanted the documents on which the permit

6    was issued, the last amended application.  Similar to a com-

7    plaint in this court.  There might be sixteen amended com-

8    plaints, but the complaint on which judgment and findings

9    are based are the last amended complaint.  That is exactly

10   the same situation.

11        THE COURT:  I think in so far as admissions against

12   interest and things of that sort are concerned, you are

13   probably right.  But I am going to make a complete record here

14   while I am at it.

15        MR. SACHSE:  There is no problem.  We can get them very

16   easily.

17        THE COURT:  It is just a matter of mechanics.  It seems

18   to me that they would look more logically in place if you

19   had your exhibit numbers running along leading up to your

20   permits, rather than to have you put in something and the

21   Government put in some others.  But I don't care.  You gentle-

22   men do it either way you want.  But let's have it understood

23   how it is going to be done.

24        MR. DENNIS:  There is one other question that came up

25   during the course of discussions on these issues.  At certain

1    times when certain issues were raised the remark was made that

2    that was an issue of law and not an issue of fact, and there-

3    fore it was not one of the duties that had been delegated to

4    Mr. Veeder but was still one of those duties which had been

5    retained by Mr. Moskovitz.  I think we should have some ex-

6    pression as to whether or not in working over these issues of

7    fact--

8        THE COURT:  There is no hard and fast line there  If

9    there is any doubt about it, you take an extra line and run

10   it uder a fact issue.  You are talking about a question whether

11   it is a law or a fact issue or one of mixed law and fact?

12       MR. DENNIS:  In view of certain issues of act, it became

13   apparent that certain issues of law were being raised which

14   perhaps hadn't been clearly covered in the issues of law which

15   have already been drafted and agreed to between the parties.

16       THE COURT:  I would suggest that you make a draft of this

17   new issue of law and try to work it into the material that has

18   already been prepared.  There is no hard and fast line about

19   who has duties here.  Mr. Moskovitz was selected because he

20   had less of a burden than the rest of you and I thought that

21   he was going to be available here to help.  But he was not.

22   I told Mr. Veeder to sort of take the lead and proceed.  That

23   doesn't mean anything.  I could have said Mr. Dennis or Mr.

24   Sachse.  But I want you to be working on this-- somebody sort

25   of preside.

1    MR. VEEDER:  We are moving along on it, your Honor, and

2    we have submitted to Mr. Moskovitz a copy of these issues, so

3    he should have them this morning.  They went out last night

4    air mail.  We are trying to keep him advised.

5    THE COURT:  Have you done anything yet on your  suggestions

6    on this proposed order?

7    MR. VEEDER:  I have just talked about them and we will

8    go ahead on them today.  I didn't have an opportunity to talk

9    to Mr. Stahlman until this morning.  We are going to get to-

10   gether at noon, as I understand, and after he is out of court.

11   MR. STAHLMAN:  Yes.

12   MR. VEEDER:  I would like to talk to the other gentlemen

13   about it before they leave the building, because we can be

14   formulating something this morning.

15   THE COURT:  I want Mr. Littleworth to do some work with

16   you here.

17   What is your situation on exhibits?  How are you coming

18   along on that, Mr. Littleworth?

19   MR. LITTLEWORTH:  We are away behind because we origin-

20   ally had thought that the entire Murrieta-Temecula area, both

21   large and small defendants, was to be tried at a later time

22   under the Master.  So we are far behind everyone else in this

23   trial, in that respect.  We don't even have substitutions of

24   attorneys filed as to some of our defendants yet.  I am not

25   yet sure how much of our case is to be tried before your Honor

1   and how much is going to be a master's case.   That is some-

2   thing which I think we are concerned with in this matter that

3   Mr. Stahlman and Mr. Veeder have been talking about.   We

4   don't know how many of these people that Mr. Stahlman mentioned

5   may be our clients that he wants in here now.

6       MR. SACHSE:   I have the same problem, your Honor.   I don't

7   think there is anybody offhand that presents a serious problem,

8   but I do have two or three fairly good-sized individual

9   clients on the canyon above Vail.   My thinking has been that

10  I was not going to concern myself with them,   I tendered no

11  list of exhibits for them in this proceeding.   I had assumed

12  that that would be done before the Master.   Maybe Mr. Stahlman

13  and I can work it out privately.   But if any of them are to be

14  included, I haven't given five minutes thought to exhibits for

15  these people.

16      MR. STAHLMAN:   I would suggest that when I get an

17  opportunity to talk to Col. Bowen and Mr. Sachse we can

18  probably figure out which ones those are.   I don't know of

19  any of yours.

20      MR. SACHSE:   I don't think there are any.

21      THE COURT:   Well, we will have to feel our way along in

22  this Master thing.   It may well be that we will limit the

23  Master to some of the smaller tributaries where the impact

24  on the case is not so major.   Maybe the Court will hold

25  sessions on some of these bigger basins in the valley.   The

2229

1   De Luz area, which we picked out, was one which, as I under-

2   stand it, consisted largely of a number of small people, and

3   there weren't the problems there that there are around the

4   Vail Dam, there weren't the problems that there will probably

5   be up in the Murrieta.

6        MR. STAHLMAN:  I don't think that Vail has any problems

7   on that particular tributary such as we are going to have up

8   at Murrieta.

9        THE COURT:  There are other small creeks on which work

10  has to be done.  There is Sandia, I suppose, and there is

11  Rainbow and a number of small pieces.  Also up in the Murrieta

12  and Temecula Valleys there must be areas where some work has

13  to be done, but where we know pretty well what the outcome is

14  going to be, whether it can be done by agreement or not.

15  Maybe we will have to use the Master.  In a lot of that arid

16  area the chances are that it is percolating water if there is

17  any water.  Much of that could be well handled by the Master,

18  particularly where there was really no dispute.

19        Mr. Stahlman, you had better get on your way.

20        MR. STAHLMAN:  I am very much concerned because I have

21  some witnesses and the argument.

22        THE COURT:  Nothing will happen in your absence.

23        MR. SACHSE:  I am in the same position.  May I also be

24  excused, your Honor?

25        THE COURT:  Yes.

1  MR. SACHSE:  I will be back and will be available any

2 minute.

3  THE COURT:  All right.  Be thinking about this situation

4 of these people.

5  May I mark this up, Mr. Veeder?

6  MR. VEEDER:  Yes, your Honor, you may retain that

7 original and mark it up.

8  THE COURT:  All right.

9  You will be available tomorrow morning at what time--

10 10 o'clock?

11  MR. VEEDER:  Yes, we would like that.

12  THE COURT:  10 o'clock tomorrow morning.

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>SAN DIEGO, CALIFORNIA, FRIDAY, SEPTEMBER 26, 1958. 10 A.M.</u>

APPEARANCES:

| | |
|---|---|
| For the Plaintiff | WILLIAM H. VEEDER, ESQ., Special Assistant to the Attorney-General, Department of Justice, Sashington, D.C. |
| For U.S. Marine Corps | COL. ELLIOT ROBERTSON LCDR DONALD W. REDD. |
| For Defendants Fallbrook Public Utility District, et al. | FRANZ R. SACHSE, ESQ. |
| For the Defendant State of California | EDMUND G. GROWN, ESQ., Attorney-General, by Adolphus Moskovitz, Esq., Deputy Attorney General. |
| For Defendant Santa Margarita Mutual Water Company | W. B. DENNIS, ESQ. |
| For Defendants Hartman, Lewis, Wilks and Bayle, and Oviatt | BEST, BEST & KRIEGER, by ARTHUR L. LITTLEWORTH, ESQ. |

2232

THE CLERK:  Number one on the calendar, 1247-SD-C,
United States vs. Fallbrook, etc., et al.; further pre-trial.

MR. VEEDER:  You suggested at the closing moments yester-
day that we delineate the water the rights to which are to be
adjudicated in this proceeding, and we tender to you now a
copy of our thinking on that, your Honor.

THE COURT:  You are certainly sparing with Government
paper and typewriter ink.

MR. VEEDER:  Well, your Honor, we are facing a period
of economy.  No, we worked over this very carefully, your
Honor.

THE COURT:  I want a statement in here, in case some
pro.per up there or some lawyer representing a small defendant
reads it, to the effect that as to those waters that are not
part of the Santa Margarita water system something indicating
that there would be a decree that so far as this case is
concerned they have no interest in the system, and that such
rights as they have are correlative with those of their
neighbors, which we don't propose to adjudicate.  I don't know
how it belongs in here, but I think if a layman would read
this and not know what it was all about.

MR. VEEDER:  Your Honor, we went over the very point to
which you made reference and we talked on the geological map
and we reviewed the circumstances as they exist, and we believe
that when we spell this out those waters which are part of the

1   Santa Margarita River and its tributaries, being that which

2   is being adjudicated, we defined and limited--

3      THE COURT:  Oh, it is scientifically correct, Mr. Veeder.

4   I couldn't say that it isn't.  Let me look at it.

5      MR. VEEDER:  All right, sir.

6      That is the extent of the changes that we had.  We had

7   Mr. Sachse's offering.

8      THE COURT:  Yes, I have that.

9      MR. VEEDER:  You have those.  And aside from that, there

10   have been no other revisions.  We have waited breathlessly

11   for Mr. Moskovitz so that we could go ahead with the rest of

12   the legal questions, which we will put in final and have

13   available for you this afternoon.

14      THE COURT: Mr. Moskovitz, of course, will want to look

15   over this factual work you have done.

16      MR. VEEDER:  I have sent him a copy.  I don't know whether

17   he looked it over or not.

18      MR. MOSKOVITZ:  I looked over what Mr. Veeder sent me.

19   He sent me the draft, apparently, before Mr. Sachse's.

20      MR. VEEDER:  You have Mr. Sachse's?

21      MR. MOSKOVITZ:  No.

22      THE COURT:  I am going to send you back to work and not

23   spend any more time here, unless you have a particular problem.

24      Now I am working on a redraft of this proposed order.  I

25   am taking another try at it.  It won't be shorter-- it may be

1 longer.   It is more a matter of being able to put out some

2 information in the district as to what is going to happen, lay

3 out some ground rules for the trial of this action.   I think

4 maybe this next draft may be a little more acceptable to you

5 than the last one.   I will try to have it for you as soon

6 as the girl gets it done.   I will come down and talk to you

7 about it.

8 　　　　MR. VEEDER:   Very well, sir.

9 　　　　THE COURT:   Anything else we can take care of here now?

10 　　　　MR. VEEDER:   I have nothing of my own to talk about.   We

11 are simply trying to get things all pulled together so that we

12 can go ahead.   If there are to be any revisions in the listing

13 of the exhibits and additional exhibits, we would like to have

14 them, because I am going to try over the weekend to get those

15 put together.

16 　　　　THE COURT:   I am also thinking about the paragraph on

17 exhibits in this draft and I have in mind-- in fact, I have a

18 rough draft being typed up to this effect:   That any party who

19 is appearing by attorney will lodge with the Clerk and have

20 numbered for identification any exhibit that he is going to

21 offer at least ten days before he offers it, and some method

22 of getting notice in the courtroom that the thing has been

23 lodged, and also requiring that counsel at their own time

24 inspect these exhibits beforehand.   That will take care of the

25 exhibits that come along later.   The provision will not apply

1  ordinarily to that list of exhibits that you are working on,

2  which have been exhibited or will be exhibited between the

3  major parties.  It will also be made applicable to additional

4  exhibits that the major parties may decide are necessary, and

5  we will have a regular procedure that the exhibit be lodged

6  with the Clerk, give it a number for identification, at least

7  ten days before it is offered so that people will have a chance

8  to look it over.

9       And I suggest that we give consideration to this matter

10  of copies of these exhibits.  I think some of the counsel have

11  not copies.  How many of these exhibits have been made in

12  duplicate so that there are copies available for other counsel?

13       MR. VEEDER:  Your Honor, all of our maps are being run.

14  I have forgotten exactly how many copies we have, but we have

15  copies for all major parties, and of some of the exhibits we

16  have 25 additional copies.  But we can have as many copies

17  available for the parties as are required.

18       THE COURT: All parties also should have some additional

19  copies of the exhibits, unless there is some kind of exhibit

20  that it is difficult or impossible to duplicate.

21       MR. VEEDER:  We have a real problem in that regard, your

22  Honor.  We have an order from your Honor to the County of San

23  Diego to produce negatives of 1929 flights of northern San

24  Diego County.  They have objected on the grounds of privilege

25  in that regard.  We do have prints of those, but we don't have

2236

1    negatives, and it is almost impossible to reproduce them.   I

2    think we will try to talk to the County Attorney himself and

3    see if we can get them.   It is impossible for me to believe that

4    1929 negatives are still important to anybody.

5         THE COURT:   What would be privileged about them?   They

6    are something that anybody could see from the air by hiring

7    an airplane.   What is confidential about it?

8         MR. VEEDER:   Your Honor, there is a statute, as I under-

9    stand it, passed some years ago, to relieve the County of San

10   Diego of the obligation of showing all of this material.   I

11   think that it might have been relevant twenty years ago, but

12   not thirty years ago.

13        THE COURT:   I can imagine areas down here around the

14   harbor where it would be a security problem.   But is there a

15   security problem up in the northern end of the county?

16        MR. VEEDER:   This was strictly a taxing matter and there

17   is a specific statute referring to privilege.

18        THE COURT:   It doesn't impress me.   See what you can do

19   about it.

20        Mr. Moskovitz dropped in my office on the way in here

21   and said that the State of California still had not completed

22   some of its exhibits, and of course the State of California

23   will not put on its case for some time.   I suggest that when

24   you go over these lists of exhibits you indicate some suitable

25   note as to those which are not yet ready which apparently have

1  been listed by some of these defendants who come on a little

2  later:  Mr. Littleworth, representing --

3      MR. LITTLEWORTH:  Santa Margarita Water Rights Associa-

4  tion.

5      THE COURT:  And others.  They will get these in and

6  submit them as soon as they can.  But of course it is not as

7  important as the Government's, the Government going on first,

8  that you get your exhibits all lined up before you start --

9  all that you know you are going to use.

10     MR. VEEDER:  Well, I can give you an example of what

11 transpired last night.  I found on that geological map you were

12 looking at that our man had taken some very excellent colored

13 photographs.  Now I have those, and I want the people to see

14 them.  But occasionally those things occur, your Honor.

15     THE COURT:  I know.

16     MR. VEEDER:  I think it would be helpful, your Honor, to

17 have them before him as this man testifies.

18     That is an example of something that we couldn't antici-

19 pate and didn't think about.

20     THE COURT:  All right, you may go back to work.

21     MR. VEEDER:  Yes, your Honor.

22     (Recess.)

23

24

25