# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

UNITED STATES OF AMERICA,

                Plaintiff,

    vs.                          No.  1247-SD-C

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

                Defendants.


## REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:     San Diego, California

Date:      Thursday, February 19, 1959

            Pages: 8812A - 8812Q, Inclusive.

FILED

SEP 2 4 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | No.  1247-SD-C. |
| FALLBROOK PUBLIC UTILITY ) DISTRICT, et al., ) | |
| Defendants. ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California
Thursday, February 19, 1959

APPEARANCES:

    For the Plaintiff:    WILLIAM H. VEEDER, ESQ.,
        and
        WILLIAM E. BURBY, ESQ.,
        Special Assistants to the
        Attorney General,
        Department of Justice,
        Washington, D. C.

        LIEUTENANT COMMANDER REDD.

1    APPEARANCES (Continued):

2

3          For Defendant              GEORGE E. STAHLMAN, ESQ.
           Vail Company:
4
           For Defendant              STANLEY MOSK, ESQ.,
5          State of California:       Attorney General, by
                                      ADOLPHUS MOSKOVITZ, ESQ.,
6                                     Deputy Attorney General.

7          For Defendants            FRANZ R. SACHSE, ESQ.
           Fallbrook Public
8          Utility District,
           et al.
9
           For Defendant Murray      WALTER GOULD LINCOLN, ESQ.
10         Schloss Foundation:

11                          ---oOo---

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SAN DIEGO, CALIFORNIA, THURSDAY, FEBRUARY 19, 1959, 2:10 P.M.

- - -

THE COURT:  Let the record show present Mr. Stahlman, Mr. Moskovitz, Mr. Sachse, Mr. Veeder, Mr. Burby, Lieutenant Commander Redd, Mr. Lincoln, Colonel Bowen and Colonel Robertson.

Be seated, gentlemen.

This conference is on the record, being held in chambers, but until further order of the Court the Reporter will not write this up as part of the daily transcript.

George Stahlman came to me with blood in his eye --

What day was it?

MR. STAHLMAN:  I think it was Monday.

THE COURT:  The 9th?

MR. STAHLMAN:  What day were we not in court?

THE COURT:  The 9th was a Monday.  We were not in court.

MR. SACHSE:  Tuesday you were not in.  That was the day of the Master's hearing.

MR. STAHLMAN:  The Reporter has a record of it.

THE COURT:  It was about the 9th or 10th of February. And he suggested it be on the record, so I called the Reporter in.  And he made charges against Mr. Veeder in connection with his dealings with Mr. Hall, a potential witness for the Vail Company.

MR. VEEDER:  I might add, an earlier witness for the

b

1    United States.

2         THE COURT:  All right.  After Mr. Stahlman unloaded

3    himself in this matter, my first reaction was that this

4    involved a couple of lawyers in a case before me and if I

5    could avoid getting into it I wanted to.  So I suggested to

6    Mr. Stahlman that he see Mr. Veeder and talk to him about it

7    and see if they could work out this difference, and maybe it

8    was not as bad as it sounded, etc.

9         I had heard nothing further on it -- except Mr.

10   Stahlman's request in open court for additional time to

11   present the Vail case and Mr. Veeder's acquiescence to the

12   additional time -- until today, when there were telephone

13   calls between Mr. Veeder and Mr. Rankin, and Mr. Stahlman

14   and Mr. Rankin.  And then I conferred informally with Mr.

15   Stahlman and Mr. Veeder.

16        So as I understand it, Mr. Stahlman wants to have the

17   matter fully aired before a court, and Mr. Rankin has

18   instructed Mr. Veeder to have it aired on the record.  Now,

19   the various questions are:  how to do it, when to do it, and

20   whether you should know about this.  This may have some

21   impact on the case that would affect other parties besides

22   those that are involved in this controversy.  So I felt that

23   you all should know about it.

24        My inclination is to do it, as it were, in chambers,

25   with a reporter, not in the sense of making any secret

1  hearing, but in the sense that if we are going to wash

2  some dirty linen let's do it before the Reporter in chambers

3  first, and then there is always time enough when the record

4  can be written up.  Unless somebody requests we do it in

5  the open court-room, when we do it we will probably do it

6  in chambers, call these witnesses, and hear what they have

7  to say.  As to when we would do it, I thought we would

8  continue today and tomorrow with material Mr. Moskovitz is

9  presenting.  I will know tomorrow how much of a calendar I

10  have on the 24th.

11      Maybe you know now.

12      THE CLERK:  I could find out later this afternoon,

13  your Honor.

14      THE COURT:  In any event, I would have Wednesday, the

15  25th, and until noon on the 26th available.  Maybe more.

16  The Government has set a case for two o'clock on Thursday,

17  the 26th, which I told them I would try.  It might result

18  in a plea, or something might happen to it.

19      Now, as to who should be present.  This is to be an

20  open hearing, even though it is held in chambers.  Any

21  attorney in the case can be present, and any attorney,

22  likewise, may absent himself from this proceeding.  I think,

23  of course, Mr. Veeder and Mr. Stahlman should be present, I

24  think Mr. Hall should be present, I think Mr. Henderson

25  should be present.  And how we would secure his presence --

1   MR. VEEDER:  I will call him up.

2   THE COURT:  Ask him to be here?  Any question?

3   MR. VEEDER:  I don't know how he will travel, but I
assume that my client will pay for his trip down here.

4

5   THE COURT:  Do you expect to have Mr. Vail down here?

    MR. STAHLMAN:  Mr. Vail.  Also Colonel Robertson.

6   THE COURT:  You gentlemen think this over.  I asked Mr.

7   Stahlman when we conferred informally, I said, "Let's analyze

8   this thing.  Suppose you prove that Mr. Veeder has done every-

9   thing you charge -- he has subverted a witness, ruined a

10  witness.  Let's go the whole way.  What do you want to do?"

11  MR. VEEDER:  As a matter of fact, you said, "If you
prove me a 'son-of-a-bitch,' what do you get out of it?"

12

13  THE COURT:  I said, "Suppose you prove him a first-class
'son-of-a-bitch,' what do you want to do?  Remove him from

14  the case?  He is not a member of the Bar of this Court."

15  MR. VEEDER:  I would just as soon have that phase dropped.

16  I am a member of the Supreme Court Bar.

17  THE COURT:  All right.  I said, "He is admitted for the

18  purpose of this trial only."

19  Mr. Stahlman said, well, he was not suggesting what the

20  Court should do.  He intimated that there could be a possi-
bility it would have some criminal ramifications.

21

    MR. VEEDER:  Grand Jury.

22  THE COURT:  I don't know what is expected of me.  If you

23  want to explore this matter, I will explore it and let things

24  come along as they will.

25  Secondly, I asked him, "Well, now, is it your contention

e

1  that Mr. Hall has revealed confidential matters?  Is that

2  part of it?"

3     MR. STAHLMAN:  Evidently, from what Mr. Veeder, himself,

4  said, he said they had a lot of things in great confidence.

5     MR. VEEDER:  Nothing to do with the case, George.  It
   was you and your reputation, primarily.

6     MR. STAHLMAN:  Fine. Let's have it out here.

7     THE COURT:  Number two.  I asked Mr. Stahlman if any

8  agreement that Mr. Hall was working on with Mr. Veeder or Mr.

9  Henderson he considered in any manner binding on Vail.  And

10 I don't think he does.  And I pointed out to him that if he

11 was concerned about admissions or statements made during the

12 negotiations between these people looking toward a settlement,

13 under the rules of evidence those statements would not be
   admissible -- any statements made preliminary to settlement.

14    MR. VEEDER:  I have to say this.  There were no negotia-

15 tions of any kind between Mr. Hall and Mr. Henderson.

16    THE COURT:  There is an 18-point document.

17    MR. VEEDER:  Which I have never seen.

18    THE COURT:  Which somebody showed me.  I am telling you

19 merely what I know about it.  We will go into all of it at
   one time.

20
21    You don't have any contention that there is any agreement
   entered into that binds Vail?

22    MR. STAHLMAN:  No.

23    THE COURT:  The major complaint is that a witness of the

24 Vail Company has been subverted -- softened up, made useless

25 to Vail by activities carried on by Mr. Veeder and Mr. Henderson.

1   That is the charge.

2       MR. VEEDER:  Is it the charge of Mr. Henderson, for

3   goodness sake?

4       THE COURT:  That you put Henderson and Hall together.
    You know as much about it or more than I do, Mr. Veeder.

5       MR. VEEDER:  I know the whole story.

6       THE COURT:  I think Counsel should have a right to know

7   generally what we are talking about.

8       MR. VEEDER:  Your Honor, why don't we do this, then?

9   I have had all of this that I want to hear.  And I said to my

10  boss, I said, "If Mr. Stahlman has a complaint, let him formalize

11  it."  You brought up things I didn't know about myself.

12      THE COURT:  What things?

13      MR. VEEDER:  I didn't know that there was any charge that
    Mr. Henderson had subverted Mr. Hall.  For goodness sake.

14      THE COURT:  You sat here with Mr. Stahlman and me and

15  heard.

16      MR. VEEDER:  I heard you talking.  But when a friend of

17  mine goes up and talks to Mr. Hall --

18      THE COURT:  Do you want to formalize what you are
    complaining about?

19

20      MR. VEEDER:  I wish to hear it.

21      THE COURT:  You are instituting this proceeding.
    Formalize what you are complaining about.

22

23

24

25

1

1          MR. STAHLMAN:  Mr. Hall has been an employee of the

2    Vail Company for 40 years.  He is an important witness of the

3    Vail Company.

4          Mr. Veeder, on the 27th day of last month, called Mr.

5    Hall in Los Angeles -- Mr. Hall still an employee of the Vail

6    Company.

7          MR. VEEDER:  Which he denied.

8          MR. STAHLMAN:  You haven't read his statement.

9          THE COURT:  Please be quiet until Mr. Stahlman has

10   completed, Mr. Veeder.

11         MR.STAHLMAN:  And that Mr. Veeder made an arrangement

12   for a Mr. Henderson, whom I have never met, to call upon Mr.

13   Hall.

14         Now there had been negotiations between the Navy and

15   Mr. Veeder participating in them, Mr. Vail and myself, on

16   numerous occasions; some of them here at San Diego, some at the

17   Vail Ranch, some at my home.

18         Mr. Henderson then called upon Mr. Hall and obtainedd

19   from Mr. Hall an 18-point program in relation to the stipulated

20   judgment, at which time he told Mr. Hall that Major Bowen was

21   not in the case -- he was packed and going to Okinawa.  He also

22   told Mr. Hall that he wanted to engage with him in a business;

23   that Mr. Hall would represent the engineering business in the

24   southern part of the state in California and he would represent

25   them up north.

2

Now Mr. Hall had previously --

On the 27th and the 28th I had lunch with Mr. Veeder.
At neither time did he mention the fact that he was sending
the man Henderson up to our witness Mr. Hall.  Nor did he
even mention anything about the phone call that he had made
to Mr. Hall.

A few days prior to that Mr. Hall came to Mr. Vail and
told him that Mr. Veeder had told Mr. Hall that I was
refusing to discuss the negotiated judgment with Mr. Veeder.
That very day, the 27th, that you sent this man up there, I
asked Mr. Veeder whether or not he told Mr. Hall -- whether
Mr. Veeder had told Mr. Hall that I had refused to discuss
the negotiated settlement with him.

Mr. Veeder says, "Why no.  Certainly not."

I asked Mr. Veeder whether or not he said anything that
could be construed along that line.

He said, "No.  Absolutely not."

I said, "Mr. Veeder, any time you want to negotiate
this judgment, want to have further discussions on it, we
will get together as we have in the past and we will have
further discussions."

Now at the last meeting, at which Mr. Veeder attended,
Colonel Bowen was present, Mr. Vail and myself and Mr. Veeder,
it was left that Mr. Hall and Colonel Bowen would get together
on working out the figures that would go into what was one of

3

1  the proposal that we had regarding the settlement of the

2  stipulation.

3       Now then, when it was left in that way, to find that a

4  Henderson, a man who is not in the case, has gone up with Mr.

5  Hall and got an 18-point program from him with relation to the

6  very vital things we are discussing with relation to the

7  settlement, and that Mr. Veeder, who admitted that he had

8  talked to Mr. Hall before Christmas, before he went back home,

9  and offered Mr. Hall a job with the United States Government

10 with more money than he was getting from the Vail Company,

11 coupled with Mr. Veeder's call, which I understand the men

12 he works with for his clients the Navy -- Colonel Bowen and

13 Colonel Robertson -- knew nothing about, and send this man up

14 to talk to Mr. Hall about this matter, wherein there was a

15 discussion relative to a complete falsehood that Colonel

16 Bowen was being transferred to Okinawa and was already packed,

17 and then to follow up the same kind and character of conver-

18 sations that Mr. Veeder had been having with Mr. Hall

19 relative to a position, I think all of these matters when

20 laid before this Court will without question clearly

21 demonstrate that Mr. Veeder is not a fit person to represent

22 the United States Government.

23      I think that he has, by reason of his conduct in this

24 case, brought disgrace upon the Navy undeservedly.

25      MR. VEEDER:  Undeservedly for the Navy, or for me?

1      MR. STAHLMAN:  Undeservedly for the Navy.  I think you

2   put the men you are working with in a very bad light in this

3   case, or attempted to.  You discredit your own men and sent a

4   man up there.

5      I think it is unbecoming an officer of the Court.  I

6   don't think any Bar Association, hearing all this evidence,

7   would say that Mr. Veeder is a proper or competent person to

8   practise law in any court of this country.

9      He has made some veiled threats about Mr. Hall telling

10  him something about my character.

11     Blow it out.  You're not scaring me, Mr. Veeder.

12     MR. VEEDER:  There are no threats, George.

13     MR. STAHLMAN:  My character will stand for itself.  My

14  past record will stand for itself.  There has never been a

15  scratch against it in 35 years.  So don't try to defend

16  yourself by accusing me.  The greatest defense for a man with

17  the adroitness and the slipperiness you have is to try to

18  accuse the man wo brings the charges.  Here they are.

19     THE COURT:  All right, we have it laid on the table as

20  to what this is about.

21     It reminds me of another question I asked Mr. Stahlman

22  and Mr. Veeder when I conferred informally, and that is in

23  addition to this problem and the solution of it, if any,

24  was the other problem of getting on with the case and not

25  having this result in any kind of mistrial or miscarriage.

1     I wanted to be sure that Vail Company have as much time as

2     they need to present their case. And I also raised the question

3     as to whether or not Mr. Stahlman was going to insist that

4     some other lawyer carry on the Government's part of the liti-

5     gation -- if, as and when.

6          MR. STAHLMAN:  It is not for me to say, your Honor.  I

7     just said and I told Mr. Rankin in my conversation with him

8     that I will continue to negotiate with the Navy, the people we

9     have dealt with, who have never dishonored themselvess in any

10    way.  I will continue to negotiate with any honorable repre-

11    sentative the Department of Justice sends out here.  But I

12    will not negotiate with Mr. Veeder.

13         THE COURT:  All right.  I propose to go into this

14    matter on the 24th or the 25th.  I will let you know tomorrow.

15         Anybody want to say anything further at this time?

16         Mr. Lincoln?

17         MR. LINCOLN:  May I suggest, your Honor, that the

18    matter not be heard on the 27th?  That would be a personal

19    courtesy to me only for the reason that I must be in Los

20    Angeles on the 27th on another matter.

21         THE COURT:  Do you feel that the matter concerns your

22    client enough that you want to be present?

23         MR. LINCOLN:  I would like very much to be present for

24    this reason.  I have known Mr. Hall for, oh, I should say ten

25    or fifteen years.  I have had much experience with him.  I

6

1   have been in two, if I may use the term, dogfights with him in

2   two different lawsuits, and there is much which might be said

3   by myself in regard to that which might be of some interest to

4   either one party or the other.

5        MR. STAHLMAN:  I will merely add, I am very sorry, we

6   had no occasion at any time until this broke out to have any

7   question regarding Mr. Hall.

8        MR. VEEDER:  Your Honor, I haven't joined issue on what

9   George has said, because (1) from the outset I have felt that

10  it was a tempest in a teapot and that I thought it would blow

11  itself out.  It has not.  My failure to respond to the charges

12  that he sets out in this report doesn't mean that I will not

13  deny it, and I deny it line for line and word for word and

14  thought for thought and innuendo for innuendo.

15       The thing that does concern me greatly is that the time

16  of these gentlemen is being taken on this matter.

17       I have said I would be glad to go into this in open

18  court before the press and let the thing go.  If somebody wants

19  to attack my integrity that's all right.  I know what is true

20  and what is right.  I know what I did.  But if you prefer to

21  have it in chambers, it is all right with me.  My boss told me

22  to have it on the record.

23       THE COURT:  It will be on the record, and if you want

24  it in open court we will have it right in the courtroom.  That

25  is what I said at the start.  It depends on what you want.  You

1 and Mr. Stahlman and Mr. Hall are the persons most closely

2 affected by it. Mr. Hall is not a member of the Bar. You are

3 a member of the Bar for the purpose of this trial, and Mr.

4 Stahlman is a member of the Bar. So it is up to the two of

5 you where it is held.

6         MR. STAHLMAN:  It is immaterial to me. I felt as an

7 officer of the Court I am obligated to call these matters to

8 the attention of the Court because they vitally affect the

9 interests of my client. We have felt that at this state of the

10 proceeding to engage other expert witnesses, and it has been a

11 matter of great inconvenience to the client and expense to them,

12 with all they have already gone through in this case, and I feel

13 obligated to make these matters known to you. You can take

14 whatever action you want. If Mr. Veeder wants it in open court

15 he can have it in open court. I am not saying where it should

16 be. I merely called it to your Honor's attention to take such

17 action as you think is warranted by the charges which I have

18 made. I am ready to go back into court and try the case or

19 take any other action that is wanted.

20         MR. VEEDER:  There is one thing I want to say, because

21 I don't know what is going to happen from this moment forward.

22 I want it very clear that any discussions I had with Mr. Hall

23 had nothing to do with the claim of the Vail Company.

24         I had talked with Mr. Henderson, who is a friend of

25 mine and has worked with me a good many years. I told him there

8812N

1 was a need for an overall study of hydrology.

2          I received a letter from Mr. Hall saying that he was

3 through with the Vail Company, that he was free to talk with

4 anyone, that he hadn't talked with anyone, that he had talked

5 with the State, and his interest in regard to the River was very

6 broad.

7          I said, "Paul Henderson is sitting in the office with

8 me. Could you tell Paul those things you have just told me on

9 the telephone about the overall study" -- about the overall

10 study, about the plans that he had worked on in connection with

11 the overall matter, the study that he knew had to be done.

12          I had told him, when he came to me and told me that he

13 could no longer work with George Stahlman, that he was quitting,

14 that if and when he was free from the Vail Company I thought it

15 would be a good idea for him to be employed by the United

16 States.

17          Now that is my story. I think it is unfortunate. I

18 make no apology. I am not ashamed of it.

19          MR. STAHLMAN: Did you tell Mr. Hall that Mr. Rankin

20 told you to throw the book at Vails?

21          MR. VEEDER:  Throw the book at Vails?

22          MR. STAHLMAN: Yes. Nothing of that kind whatsoever.

23          MR. VEEDER:  George, I will tell you what I will do. I

24 will do exactly what I said. I will go on the record on this

25 whole deal and show how absolutely absurd you are.

9

1          THE COURT:  All right, we will go ahead with the trial.

2          Anybody else anything to say now before we proceed to

3   hear some of Mr. Moskovitz' choice evidence and precise

4   exhibits?  Anybody anything else?

5          MR. SACHSE:  My only observation is I hope nothing

6   develops here that would cause any extensive delay.

7          THE COURT:  That was my first reaction.

8          MR. SACHSE:  That is my concern.

9          THE COURT:  I thought possibly Mr. Stahlman and Mr.

10  Veeder could solve this themselves.  And I made a record of what

11  Mr. Stahlman had to say.  But I sent him to see Mr. Veeder.  I

12  thought maybe this was a quarrel that they could sit down

13  together and iron out.  Apparently the thing has been festering

14  and it has gone up to the Solicitor, and each of them today

15  talked to the Solicitor.

16         The only alternative I would have would be to say I

17  am not interested in this, and I don't know that I can say

18  that, in view of the type of charges that Mr. Stahlman makes.

19         MR. STAHLMAN:  I will not expect your Honor to answer

20  it.  But the question is, if you found yourself in the position

21  I did, representing a client --

22         MR. VEEDER:  I am asking your Honor not to respond to

23  that.

24         MR. STAHLMAN:  -- what would you do?

25         MR. VEEDER:  Wait until the evidence is in.

1          MR. STAHLMAN:  I am not asking him to respond either.

2  But I am talking about whether I should lie down and put my

3  tail between my legs and run after a thing like that.  What

4  would an honorable lawyer do?

5          THE COURT:  All right, adjourn to the courtroom.

6          This will not be written up at this time, Mr. Reporter.

7          (All parties present adjourned to the courtroom where

8  the trial proceeded.)

9                              - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I hereby certify that I am a duly appointed, qualified and acting official court reporter of the United States District Court for the Southern District of California.

I further certify that the foregoing is a true and correct transcript of the proceedings had in the above-entitled cause on the date specified herein, and that my said transcript is a true and correct transcription of my stenographic notes.

Dated this *10th* day of _____*May*_____, A.D., 1963.

_____*John Swader*_____
Official Reporter