# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

— — —

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT, et al,

Defendants.

No. 1247-SD-C

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:      San Diego, California

Date:       Tuesday, September 22, 1959

Pages:     10,489 to 10,549

FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____
DEPUTY

JOHN SWADER
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211    Ext. 370

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )
                               )
        vs.                    )          No. 1247-SD-C.
                               )
FALLBROOK PUBLIC UTILITY       )
DISTRICT, et al.,              )
                               )
                Defendants.    )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California
Tuesday, September 22, 1959

APPEARANCES:

        For the Plaintiff        WILLIAM H. VEEDER, ESQ.,
                                 WILLIAM E. BURBY, ESQ.,
                                 Special Assistants to the
                                 Attorney General,
                                 Department of Justice,
                                 Washington, D.C.

| | |
|---|---|
| For U. S. Navy | LCDR. DONALD W. REDD. |
| | CHARLES SALTER, ESQ. |
| For Defendant Vail Company | GEORGE E. STAHLMAN, ESQ. |
| For Defendant State of California | STANLEY MOSK, ESQ., Attorney General, by Fred Girard, Esq., Deputy Attorney General. |
| For Defendants Fallbrook Public Utility District, et al., | FRANZ R. SACHSE, ESQ. |
| For Defendants Oviatt, et al. | MESSRS. BEST, BEST & KRIEGER By ARTHUR L. LITTLEWORTH, ESQ. |
| For Defendant Murray Schloss Foundation | WALTER GOULD LINCOLN, ESQ. |
| For Defendant Searle Brothers | EMMETT DAUGHERTY, ESQ. |
| For Defendants Garner | PHIL D. SWING, ESQ. |

10,491

1    San Diego, California, Tuesday, September 22, 1959.   10 A.M.

2

3         THE CLERK:  Number 7 on the calendar, Case No. 1247-SD-D,

4    United States vs. Fallbrook.

5         MR. VEEDER:  May we proceed, your Honor?

6         THE COURT:  Yes.

7    I am going to adjourn this hearing at about noon or

8    shortly thereafter and try to attend the State Bar meeting

9    tonight and tomorrow.

10        I have a little agenda of things I want to talk about

11   this morning.  There is no particular order in them.

12        1.  The form of the interlocutory judgment that has

13   been discussed back and forth.

14        2.  Mr. Swing's matter.  I have listed your matter on

15   this land outside the watershed in some sort of interlocutory

16   judgment that would take care of that.

17        3.  I have listed the McGinnis motion.

18        4.  I want to do something about this Vail irrigated

19   lands, assign some arbitrary parcel numbers to some of those

20   fields rather than these names, so we can make some order out

21   of this matter.

22        5.  I want to talk about a date of continuance.

23        6.  Further Master's hearings.

24        7.  Order of procedure, namely, the thought being that

25   possibly we should dispose of the few issues on the Vail

decree before we go into the large land owners in the Temecula
Valley.

    8.  The Vail decree.  I have noted here:  (a) That
Mr. Stahlman has really no pleadings on file; and (b) Some
attempt to demark some issues.

    9.  An inquiry about the irrigable land and the uses of
the irrigable land in the Vail Estate, which has been a loose
end here for a long time.

    10.  I have been going over these findings, conclusions
and judgment in the prior case between Santa Margarita and
Vail, and I am of the opinion that the intervenors' rights,
since they did not appeal from that judgment, are fixed by
that prior judgment.  Although they are named in the consent
judgment, the consent judgment might give them more rights, but
it can't give them less.  So I want extracted from the prior
case those findings and those conclusions and that portion of
the judgment that concerns these intervenors.

    11.  There are two maps incorporated by reference in the
Vail decree.  One is Exhibit 265, and the other is Exhibit U-4,
a triangulation map.  Mr. Veeder tells me that the triangulation
map is already here in the record.  If it is, I want it
identified as the map that is referred to in the Vail decree.

    That is what I have listed on the agenda.  It looks like
more than enough to takeup the morning.

    Mr. McGinnis apparently has two motions.

1    MR. VEEDER:  In that regard, your Honor, Mr. McGinnis

2    came to me this morning and asked me to ask your Honor to

3    remove those from the calendar and put them over until the

4    next hearing.  He had to be some place today.  As a matter of

5    fact, the matter has been resolved very largely from the

6    standpoint of the one motion.  His motion to have Sawday

7    tried before the Master is something, I think, that would

8    involve a hearing.

9    THE COURT:  Allright, it will be put over to the con-

10   tinued date, whatever that turns out to be, and we will get

11   to that later.

12   The one McGinnis motion is on behalf of Sawday.  On

13   behalf of whom is the other one?

14   MR. VEEDER:  They are both on behalf of Sawday, your

15   Honor.

16   THE COURT:  Two different motions involving Sawday?

17   MR. VEEDER:  That is right.

18   THE COURT:  All right.

19   What progress have you made on the form of this inter-

20   locutory decree?

21   MR. VEEDER:  I don't know that Mr. Swing desires to

22   remain throughout the morning.  He and I have a mutual agree-

23   ment here and, as usual, he and I are proceeding shoulder to

24   shoulder, and I present to your Honor a copy of our mutual

25   stipulation and also the form of interlocutory order and

1     judgment, to which Mr. Swing and I have agreed.

2         Am I right, Mr. Swing?

3         MR. SWING:  Your Honor, they say that it is the last

4     straw that breaks the camel's back.  Subtracting one from

5     6,000 may not produce a very material result, but in an effort

6     to lighten the burden I am taking my client out of the case

7     by waiving a material legal water right which it has.  I want

8     to get out while my generation is still alive and turn this

9     case over to a newer generation to continue it to its ultimate

10     end, wherever that may be.

11         THE COURT:  This is a very valuable right you are waiv-

12     ing, I take it, a right to irrigate some 30 acres of land up

13     on the top of some mountains; is that right?

14         MR. SWING:  Yes, your Honor, it is a precipitous mountain

15     with ravines.  There is water there, of course, when it rains,

16     and it being at a high elevation it rains frequently. But,

17     your Honor, we have reached a mutual-- a disclaimer, I call

18     it, and it is very satisfactory to my client, who wants to

19     get out, and it is satisfactory to me.

20         MR. VEEDER:  Thank you, Mr. Swing.

21         MR. SWING:  I will miss the company present here.

22         THE COURT:  There is no possibility of vagrant percolat-

23     ing waters underneath these precipitous mountains?

24         MR. SWING:  There is not.  I have penetrated it with

25     eyesight.  No one can see what is below, but it is very

1    rocky and pretty solid mountaintop.

2        THE COURT:  All right.  It is entitled "Proposed

3    Interlocutory Judgment."  I suppose that is the way it should

4    be entitled.  It is not an interlocutory judgment as yet, and

5    I take it that it, therefore, should be lodged instead of

6    being filed, and then when it is sent out to all other parties

7    in the action it could become the judgment or a new judgment

8    could be entered.

9        What is your thought on this procedure?

10       MR. VEEDER:  My thought, your Honor, is that certainly

11   it could not be entered now as an order final in character.

12   I do believe that what you say is correct.  It should be

13   lodged, because this is an inter se case.  But as far as I am

14   concerned there is no further participation by the Garners in

15   this litigation.

16       THE COURT:  Then I think it should be lodged and not

17   filed.  It will be signed by the Court and lodged.

18       MR. SWING:  That is a technicality in which your Honor

19   and counsel are more adept than I am.  It is what your Honor

20   proposes to do.  It is not a commitment as of this date, but

21   it is what your Honor proposes to do, and I think there is no

22   reason why your Honor cannot sign it as it is, subject to the

23   objection of any of the parties hereafter before you reach

24   the final decision which you will enter ultimately.

25       MR. VEEDER:  That is my understanding, your Honor.

1    THE COURT:  This is a matter of form, but we ought to
2  have some uniform way of handling it.  It would seem to me
3  that there are two ways to do it.  One is that it is a
4  proposed judgment signed by the Court and lodged.  The Clerk
5  puts a stamp on it.  Later on it is sent out to everybody and
6  if there are no objections it will probably take some further
7  order then-- not only take an order, but it will be filed.

8    MR. VEEDER:  I think that would be a general order in
9  regard to all--

10    THE COURT:  The other way to do it, and what I thought
11  we were going to do, would be to say in the recitals that the
12  matter comes on and this Court proposes to make, as shown here,
13  findings of fact, et cetera.

14    MR. SWING:  That is right.

15    THE COURT:  And then here are the proposed findings,
16  the proposed conclusions of law and the proposed interlocutory
17  judgment, and then subsequently, after there has been an
18  opportunity for objection, there would be a new interlocutory
19  judgment.

20    MR. VEEDER:  Or maybe an order just general in character.
21  Your Honor, that would be applicable to maybe quite a
22  number of these.  I don't think it would be necessary to re-
23  constitute it each time and rewrite a new order each time.

24    THE COURT:  If it is only a statement of what the Court
25  proposes to do, then it could be filed at this time, because

1    obviously the Clerk would make no entry of any judgment.  He

2    would note that a proposed interlocutory judgment had been

3    filed.

4         MR. VEEDER:  I understand.

5         MR. SWING:  Filed but not entered.  It is not a judgment

6    to be entered.  I think there is a technical difference be-

7    tween filing it for safekeeping and entering it as a judgment.

8         MR. VEEDER:  You are not changing your mind, are you,

9    Judge?

10        MR. SWING:  I do not have any intention of changing my

11   mind.  I have had a rather firm conviction about this matter

12   for a long, long period of time.

13        THE COURT:  I have written in front of the word "Findings,"

14   "Proposed Findings of Fact," and have put in the words

15   "Proposed Conclusions of Law," and the word "Proposed" already

16   appears before "Interlocutory Judgment."  I have signed it,

17   and I instruct the Clerk to file it; but since it is only a

18   proposal of what I eventually intend to do, if there are no

19   further objections, the Clerk will be instructed not to make

20   any entry of any judgment but to file the matter in this

21   proceeding.

22        MR. SWING:  Thank you, your Honor.

23        THE COURT:  Mr. Clerk, set up a separate file of them and

24   keep a list of them.

25        MR. VEEDER:  I have here, your Honor, two orders in

1  regard to the taking of water level measurements and in regard

2  to the maintenance of water level records on the Vail property.

3  THE COURT: One thing more I forgot to ask about. The

4  proposed judgment we were just talking about recites, "Based

5  on the evidence." Do we have any evidence in the record at

6  all on this parcel of land?

7  MR. VEEDER: Your Honor, we have in the record evidence

8  as to the location of the watershed line and as to the general

9  location of all properties.

10  THE COURT: Do we have a description in here?

11  MR. VEEDER: We have incorporated by reference Mr.

12  Swing's description in his answer.

13  THE COURT: That may be all right for the purpose of

14  this matter here, but when we finally draw the real inter-

15  locutory judgment I want a description right in it.

16  MR. VEEDER: It will be done.

17  And when we get to talking about Mr. Sachse's situation,

18  I have a proposal how we will handle it.

19  THE COURT: This has another disadvantage. This is sent

20  around for people to look at to see whether they are going to

21  object. So Joe Doakes receives a copy of this proposed inter-

22  locutory judgment and it refers to the land described in Mr.

23  Swing's answer. How can anybody intelligently advise himself

24  as to what the description of the property is?

25  MR. VEEDER: If your Honor desires me to, I will send

along a copy of the description in Mr. Swing's answer.  These descriptions are very extensive.

The descriptions are extensive in regard to Mr. Sachse's property, and we have proposed and I was going to suggest this to your Honor as we go along, that in these interlocutory orders that are prepared that we refer to an exhibit already in the record-- I am speaking of Mr. Sachse's situation now-- and simply incorporate by reference that description for these, I call them, temporary orders.  If your Honor desires, we can of course attach--

THE COURT:  Mechanically, that is going to present a problem, because when you eventually mail them out to everybody in the case you are going to have to tell these people what land is involved in these proposed interlocutory orders and you would have to then have another proposed judgment, I suppose, that said:  With reference to Mr. Swing's judgment, the land described therein is as follows, and describe it. We can let this one go through, but I think any further ones had better have the descriptions attached to them.

MR. VEEDER:  All right, your Honor.

THE COURT:  It seems to me that if I were getting some of these and were being asked whether I am going to object to them or not, the first thing I would want to find out is where the land is located, not to have some reference to an answer or to some exhibit in the case.

MR. VEEDER:   That is correct.

In regard to the method of sending these out, for ex-
ample, on these 41 for Mr. Sachse, I think when they go out
there should be simply sent a copy of the form of order and
say:   This is the kind of order that has been entered, if you
have objection to it, and the description should be set out
there.   But when we are dealing with the individual, I hope
that we can reduce the amount of work by simply saying to the
individual:   This relates to the lands described in your
answer, and if he agrees to it--

THE COURT:   There is another way you can do it, if you
want to save work.   You can have me sign, not a proposed
judgment, but have me sign a cover sheet in front, and say:
Attached hereto is a proposed interlocutory judgment,
proposed findings, and proposed conclusions, and the legal
description.   It would be called then an interlocutory judg-
ment.   It wouldn't be called a proposed interlocutory judgment.
And then instead of signing that, I would sign merely the
approval, indicating that it is my intention to execute this
interlocutory judgment after an opportunity has been had for
people to object.   Then you do your work all at one time and
you mail out copies of that.   When the hearing comes up if
nobody objects, that very document I then sign and execute an
interlocutory judgment.

MR. VEEDER:   I think that is an excellent idea, your

10,501

Honor.

THE COURT:  It seems to me that that is better procedure. If later on you want to back up and take care of Mr. Swing's that way, you can do that.  There will be no difficulty about doing that.

But let's see if we can't reduce the paperwork and not have to do this all over.  If you get a judgment that the people are satisfied with who are consenting, the Court by a separate document attached to that says:  This is the form of interlocutory judgment, findings and conclusions I propose to sign after there has been a hearing, and see if anyone else objects.  When the time comes for that hearing, if there is no objection, I then sign it.  That becomes the judgment, without recopying.  You have copies of it already made.  It doesn't say "Proposed."  It is the interlocutory judgment.

MR. VEEDER:  I am completely amenable to that, your Honor.

THE COURT:  In which event I think the description should be set up and then it will not have to be duplicated.

MR. VEEDER:  I think that is a good idea.

THE COURT:  And then the final judgment you will not have to duplicate, unless of course you draw up one of these fancy book affairs, but the final judgment can merely incorporate by reference the interlocutory judgment heretofore entered.

1      MR. VEEDER:  May I have these two orders extending the--

2      THE COURT:  We haven't finished up with Mr. Sachse yet.

3      MR. VEEDER:  No, I haven't started on that yet.  I

4  thought we would get rid of these matters.

5      THE COURT:  What are these?

6      MR. VEEDER:  These are extensions of the orders permitting

7  the operation on the Vail property of water level recorders

8  and also permitting the United States to make water level

9  measurements pursuant to your orders entered on the 23rd and

10  25th of June.

11      MR. STAHLMAN:  What is the date on which the first order

12  is up?

13      MR. GIRARD:  September 23rd, I believe.

14      THE COURT:  Mr. Swing, come back and see us again.  We

15  are always glad to have you in this court.

16      MR. SWING:  Thank you, your Honor.  I will accept your

17  invitation.

18      MR. VEEDER:  It is either today or tomorrow.

19      MR. STAHLMAN:  I would like to make this comment upon

20  it.  I am just wondering where we have got in so far as these

21  tests that are made at this time.  We have received some charts

22  which, without explanation as to what they contain, do not mean

23  a great deal to us.  I am just wondering whether we shouldn't

24  be informed as to what as been accomplished by the tests and

25  where we are going from here-- what is expected to be accomplished

1    by a further continuation of these tests.

2         MR. VEEDER:  Do you desire a response to that, your

3    Honor?

4         THE COURT:  Briefly.

5         MR. VEEDER:  In regard to the tests, we have maintained

6    throughout this period these four recorders on the Vail

7    property, and we do show from those recorders-- at least in

8    my view now; I haven't talked to Mr. Kunkel about this-- that

9    there is an interrelationship, and that is actually what we

10   are interested in.  I would suggest, though, that we should

11   call a witness on this matter rather than for me to try to

12   explain.

13        MR. STAHLMAN:  That is what I thought.

14        THE COURT:  Is there any harm to anyone from continuing

15   these tests?  It would seem to me that if these tests are

16   going to mean anything they are going to have to cover not

17   only the dry period we have just been through, but the next

18   three months, the fall and probably maybe three months after

19   that, if we are going to find out anything from these tests.

20        MR. STAHLMAN:  We are not raising any violent objection

21   to the continuation of the tests, your Honor, if they are

22   done with a minimum of inconvenience to the Vail property.

23        THE COURT:  Have you had any real inconvenience to date?

24        MR. STAHLMAN:.  No, your Honor.  I think we have had a

25   little waste of time up there on occasion by going up and

1    meeting with Mr. Veeder and some of the high naval--

2          THE COURT:  I have signed the two extensions.

3          MR. STAHLMAN:  Very well.

4          THE COURT:  What is the next thing?

5          MR. VEEDER:  Your Honor, we have discussed this with

6    Mr. Sachse and Mr. Girard.  I am referring now to the proposed

7    interlocutory judgment with Mr. Sachse's clients and the future

8    operation in regard to them.  I have prepared and set forth a

9    suggested type of disclaimer.

10          MR. SACHSE:  Can't we settle the judgment first?  You

11    have just handed his Honor, apparently, the disclaimer.

12          MR. VEEDER:  I have handed him the judgment and the

13    disclaimer, Mr. Sachse.

14          I will bow to Mr. Sachse as usual.  If your Honor wants

15    to consider the interlocutory judgment now, fine.

16          MR. SACHSE:  The judgment as proposed by Mr. Veeder,

17    your Honor, is satisfactory to me.  Your Honor has pointed out,

18    however, a problem in discussing the Swing judgment which also

19    exists here, and I think we ought to get clear on how we will

20    do it.  This judgment also incorporates descriptions by

21    reference to the answers.

22          The proposed judgment, on page 4, states:  "The riparian

23    owners and their lands as described in Exhibit A."  Are you

24    going to use the same exhibit on mine?

25          MR. VEEDER:  I thought your exhibit that you had prepared

1    would be simply attached to this interlocutory order.

2         MR. SACHSE:  I see. All right.

3         The only other question I had-- and I do not object in

4    any way to the form of this judgment, but it is a thought

5    that perhaps you or even the Clerk might have an opinion on.

6    I think there is some kind of minute order that ought to be

7    cleaned up in the preamble, because away back on February 11th

8    I made a motion and there is no reference to that.

9         MR. VEEDER:  I want to explain that.  I don't know where

10   that minute order is.  If it is available, you can write it

11   in.  I have no objection to that.

12        MR. SACHSE:  I have no objection to the form of the

13   judgment and it is quite satisfactory.  It is my understanding

14   that Mr. Veeder then will duplicate this and give me copies that

15   I can distribute to my clients.

16        MR. VEEDER:  Yes.

17        MR. SACHSE:  Going a step further with this additional

18   document that he has just handed to you as to what the next

19   step would be after this, which I think would affect some other

20   clients of mine--

21        THE COURT:  Get me out of the dark.  What is this talk

22   about a minute order of February 11th?  Is that when I granted

23   your motion?

24        MR. SACHSE:  Yes, your Honor.  The preamble to this

25   judgment, in other words, has no reference whatever to that

minute order.

THE COURT:  Your motion, however, was made pursuant to Rule 41, wasn't it?

MR. SACHSE:  Yes, your Honor.

MR. VEEDER:  Yes.

THE COURT:  Now we are backing away from that.

MR. SACHSE:  Now we are backing away from that, but I think we ought to somehow or other get rid of the minute order, your Honor.

MR. VEEDER:  Can't you "unminute" the minute order?

THE COURT:  I can, certainly, if you are satisfied.

MR. SACHSE:  When this judgment is approved by your Honor, I will be very happy to have the minute order eliminated.

THE COURT:  Let me read it.

Where does the disclaimer of the United States appear? Is it in the record somewhere?

MR. VEEDER:  It is in there, your Honor.

MR. SACHSE:  The support for that finding in this case is in admissions of the United States in response to my requests for admissions.

THE COURT:  I just wanted to know what your factual basis was for that.  There is an answer to each of your requests for admissions?

MR. SACHSE:  Yes.  Each one of these parties has been covered by a request for admissions, yes.

1    MR. VEEDER:   In which the words "Disclaimers" are used.

2    THE COURT:   If we follow the proposal I made that the

3  document be in the form of an interlocutory judgment and not a

4  proposed judgment, unsigned, and that I sign some other

5  document indicating my intention to approve, then there would

6  have to be changes, such as a change in the language at the

7  end of this judgment where it says, "Opportunity upon due

8  notice to interpose their objections to these findings. . ."

9  will be given.   That would go into the other document and this

10  would then read just like a judgment.   There would have to

11  be changes made on that basis, if that is the way we are going

12  to proceed.

13    MR. VEEDER:   In regard to Mr. Sachse, in regard to these

14  41, though-- well, whatever your Honor desires.

15    MR. SACHSE:   Our original thought, your Honor-- and this

16  suggestion you made in connection with Mr. Swing's is new to

17  me.   I had not considered such a possibility before-- but the

18  original thought was that this judgment would be signed and

19  would have attached to it an Exhibit A setting forth the

20  description of these lands; that then this additional tissue

21  document that Mr. Veeder handed you, I believe, entitled

22  "Disclaimer," would be mailed out together with a copy of this

23  judgment to many other people who, we think, are in the same

24  factual situation, to see if they will agree.   Then ultimately

25  that a copy of this judgment would be mailed out to everybody

1  in the litigation to give them this opportunity to object.

2      THE COURT:  That is all agreed.  The only question now

3  is largely a matter of form.  How is the best way to do this?

4  One method is what we did in Mr. Swing's case-- let's forget

5  the lack of description for a minute-- where the document

6  itself is signed and lodged, and you would probably have to

7  have another judgment drawn eliminating some of the ifs and

8  ands when the thing was finally approved.

9      The other method would be to sign some sort of order

10  lodging the form of the interlocutory judgment, putting the

11  "Lodged" stamp on it, although it was not signed, and then an

12  order of the Court pulling in these other things about this

13  is the judgment I propose to make, everybody will have a

14  chance to be heard, et cetera.

15      It is a matter of form as to how to proceed on this.  We

16  are trying a new procedure here.

17      MR. SACHSE:  From the standpoint of the clients involved,

18  it would be absolutely immaterial to me whether the judgment

19  were lodged, filed, or whatnot.

20      THE COURT:  It seems to me we would save ourselves having

21  to draw two different judgments if we lodged the actual inter-

22  locutory judgment.

23      MR. VEEDER:  The kind and type that you would ultimately

24  enter.

25      THE COURT:  Yes.  In other words, it would be all ready

10,509

for signature, and it would have a "Lodged" stamp on it

showing that it was within the files of the Clerk, although

it was lodged as contrasted with being filed, and then

eventually after hearing it would be signed up.  There would

be an order on them--

        MR. VEEDER:  In which you have approved.

        THE COURT:  Which I have approved and in which I have

indicated what my intention is.

        MR. SACHSE:  That is important, your Honor, because we

have, as your Honor appreciates, to give these people something

more than my statement or Mr. Veeder's statement that the

Court contemplates taking this action.  That is what we want

to give them, so that they are satisfied that they are, for all

practical purposes, out of the case.

        THE COURT:  Also, for ease in handling this matter, there

ought to be a series of these.  It would seem to me that

probably you would start numbering them-- Interlocutory Judg-

ment No. 1, Interlocutory Judgment No. 2 -- and the order would

say that the Court now states that it is satisfied with and

intends to sign the interlocutory judgment number so and so,

copy of which is attached hereto, et cetera.

        MR. VEEDER:  That is correct.

        THE COURT:  And then this language at the end about these

parties all being adverse, an oppounity will be given upon

service of copies of this judgment to all parties upon due

1   notice to be heard, and the Court will then determine

2   whether there is any objection to signing the judgment, and

3   if there are none or if the objections are overruled the

4   Court proposes to sign that judgment.  Then you would be in a

5   situation where in your paperwork you would be mimeographing

6   a thing which would really be your interlocutory judgment.

7       MR. VEEDER:  I truly hadn't thought about that, your

8   Honor.  We have gone a different course.

9       THE COURT:  We don't have to do it today.  We will pass

10  that up, because I have another point or two here.

11      MR. SACHSE:  Mr. Veeder, then I will supply you with

12  these descriptions, as I understand it, and the next time we

13  come back we will try to have this form worked out.

14      THE COURT:  You would have to change page 2, lines 15

15  to 17, in the findings, where you talk about the land as

16  described in the answers.

17      MR. SACHSE:  There is another littleproblem here, your

18  Honor.

19      THE COURT:  While on page 4, at line 2, you say: "are the

20  apparent owners of the lands described in Exhibit A attached

21  hereto."

22      MR. SACHSE:  That points up another little problem, which

23  I have never discussed with Mr. Veeder.  This judgment as to

24  these particular defendants-- there are admissions and documents

25  and pleadings, et cetera, in the files-- in effect, we might

1    say, this is practically a stipulated judgment or a judgment

2    based upon the pleadings, something of that kind.  However,

3    I know Mr. Veeder has in mind that we are going to go beyond

4    this to others in the same watershed and in the same general

5    situation where the pleadings aren't there, but where, for

6    example, there are before your Honor the Master's proposed

7    findings of fact or where there has been evidence taken before

8    the Master.  Is that going further to complicate the form

9    we will have to use in those cases?

10    MR. VEEDER:  Your Honor, may I outline what we have been

11    attempting to do in our office down here now.  We are going

12    through their many answers, some of which make claim to water

13    in the Santa Margarita and say that they abut on the stream.

14    I think those are out of this phase.  But there are a lot of

15    others who say that we claim the right to dig a well, we claim

16    the right to an interest in whatever water is available.  That

17    type of person, I think, could go along on substantially this

18    type of form.  I think we are going to have to, as your Honor

19    has said, vary the form of the judgment to meet the particular

20    situation.

21    THE COURT:  You are going to have these judgments based

22    upon one, two or three different situations.  Either it is

23    going to be answers to requests for admissions, or it is going

24    to be evidence taken in this courtroom where the Court could

25    make a finding that there was no water that was part of the

1   stream, or evidence taken before the Master or disclaimers of

2   one kind or another filed; and it would seem to me that in

3   trying to notify these people you would have to probably take

4   a little more space than this to try to explain to them what

5   the situation was.

6       MR. VEEDER:  This is for the kind and type of situation

7   where a man has claimed some interest, however vaguely, but

8   has not stated that he is using any water from the Santa

9   Margarita River-- there is a substantial number of those--

10  and we could use this form of disclaimer, I had thought, to

11  get over the hump of getting those people out.  And I thought

12  I would request your Honor to approve the form that you are

13  now reading.

14      THE COURT:  I don't feel like approving it in the form

15  it is in now, without some further discussion and study.  I

16  would like to pass this up.

17      MR. VEEDER:  All right, your Honor.  It is just a thought

18  in regard to it.

19      THE COURT:  It might be all right going to a lawyer, but

20  to other pro per defendants I don't think it adequately tells

21  the story.

22      MR. SACHSE:  You are now referring to the disclaimer,

23  your Honor?

24      THE COURT:  Yes.

25      Before we pass this Sachse judgment, there is one other

1  thing that comes to my mind from reading this judgment, and

2  that is that it seems to me that there should be a clause in

3  this judgment that as between various defendants who have

4  indicated to them the rights to vagrant, percolating waters

5  that their rights may or may not be correlative, depending upon

6  their location, and the Court makes no adjudication as to their

7  rights in that respect.

8       Because as this judgment reads, if this went through

9  and were approved, X, who had a piece of ground here with

10 wells all around it, would have a decree against everybody else

11 around him that he had that percolating water and nobody else

12 could do anything about it.  Do you follow me on this?  Look at

13 your language here:  "The rights of the United States and all

14 other parties to this action having a right in and to the waters

15 of the river as they hereafter are adjudged. . ."

16      MR. VEEDER:  Where is your Honor reading?

17      THE COURT:  I don't know whether this is the paragraph

18 or not.

19      MR. GIRARD:  Paragraph 5, your Honor, the next paragraph.

20      THE COURT:  "5.  The rights of the above named defendants

21 and each of them to the use of the vagrant, percolating waters

22 underlying defendants' above described lands, waters not being

23 a part of the stream . . are forever quieted against any and

24 all adverse claims of the United States and all other parties

25 to this action"-- of course, it says "having rights to the use

1  of the waters of the river and its tributaries"-- "and they

2  and their successors are forever restrained from asserting

3  claims in the local, vagrant, percolating waters underlying

4  defendants' above described lands."

5      Now that would mean that these people that you represent

6  would get a decree, if there is no objection to it, so that

7  thereafter there would be no right for anyone nearby to claim

8  as to the vagrant, percolating waters that one fellow was

9  taking it all and should share with his immediate neighbors.

10      MR. SACHSE:  That has never been the intention.

11      THE COURT:  I know it hasn't.

12      MR. SACHSE:  The emphasis in this paragraph, your Honor,

13  is that the rights of the United States of America and all

14  other parties who have rights to the waters of the river are

15  quieted.

16      MR. VEEDER:  That is right.

17      MR. SACHSE:  Now, if this party that you describe would

18  not have rights to the waters of the river he would be another

19  owner of the vagrant, percolating waters.

20      THE COURT:  And it says "they and their successors in

21  interest."  That means all the parties to this action.

22      MR. SACHSE:  No, the intention is that the title of this

23  defendant in this judgment, to whom this judgment applies, to

24  the vagrant, local waters be quieted as against the claims of

25  any person who has rights in the river.

10,515

1      MR. VEEDER:  I thought that is expressed.

2      THE COURT:  I have no objection to the phraseology, but

3 it seems to me it would simplify it a lot if it would state

4 that as to the correlative rights of various defendants to the

5 vagrant, local percolating waters underlying their ground,

6 which correlative rights may or may not exist between defendants

7 because one fellow may be fifteen miles from another, but the

8 Court makes no finding in that respect, and this judgment

9 shall not be conclusive in problems of that sort.

10      I think it is a very minor matter, but I think you ought

11 to give it some thought.

12      What do you think, Mr. Girard?

13      MR. GIRARD:  I think you could easily cover that by just

14 saying in another paragraph or in a paragraph No. 6 to the

15 effect that this judgment does not in any way determine, fix

16 or litigate the rights to any other than the stream system

17 or to correlating rights of ground water uses, or something

18 along that line.  I think you could reserve it in either

19 paragraph very easily, to make it clear that it applies only

20 to the quiet title as between vagrant, percolating claims and

21 stream claims.

22      MR. VEEDER:  Which waters are not part of the Santa

23 Margarita River or its tributaries.

24      MR. GIRARD:  Perhaps this is throwing a little damp water

25 on this, but my fundamental objection is not shared in either

1    by Mr. Sachse or by Mr. Veeder.  That is in paragraph 5 of the

2    judgment on page 4.  I have always been under the impression

3    that it is not the findings of fact and the conclusions of law

4    which determine basically the rights of anyone, it is the

5    judgment, and the judgment merely states that the rights of

6    the defendants and each of them to the use of vagrant, local,

7    percolating waters underlying their properties are quieted in

8    their favor.  But the judgment does not specifically say that

9    their rights to waters underlying their lands are quieted,

10   only that the vagrant, local, percolating waters are quieted

11   in their favor.  Now, it is true that there is a finding of

12   fact, Finding No. 4, which states that all waters underlying

13   their lands are vagrant, local, percolating.  But it is my

14   understanding of the law that if the judgment is not as in-

15   clusive as the finding of fact, that part of the finding of

16   fact which is more liberal or more extended than the actual

17   judgment is immaterial.

18        THE COURT:  I agree with you.

19        MR. GIRARD:  In other words, I think, frankly, that your

20   judgment should say, "All waters under their lands" and not

21   limit it to a specific definition.

22        Nobody else apparently shares that apprehension.

23        THE COURT:  I agree with you.

24        MR. LITTLEWORTH:  I share that apprehension, your Honor.

25   I think that this comes from the problem of changing the use

10,517

1   of the term "ground water."  Originally we had defined "Ground

2   Water" to be allof the local and vagrant percolating waters

3   under the land, and then use that term throughout.  When we go

4   back to taking out that definition and using simply the term

5   "the local vagrant percolating waters," we are saying something

6   which is true by definition--

7   THE COURT:  I agree with you.  The findings on page 2

8   say "All waters underlying the lands of the defendant are

9   vagrant, local, percolating and not part of the stream."  Now

10  I think the judgment should be coextensive with the findings.

11  MR. GIRARD:  The judgment should quiet title in the

12  owners to the water-- all water.

13  THE COURT:  Saving only the question of his correlative

14  rights to his immediate neighbors.

15  MR. GIRARD:  That is correct.

16  THE COURT:  I think that ought to be done.  The title

17  companies are going to pass title on this, and if there has

18  been inquiry made and these people have no land that overlies

19  a basin or any underground stream, once and for all they ought

20  to go out with a decree that any water that they can find on

21  their land is theirs and they are lucky to have it.

22  MR. VEEDER:  Your Honor, what is the kind of language

23  you would like?

24  THE COURT:  Let's not take up time to work it out.  We

25  have the principle in mind here.

1      MR. SACHSE:   Line 22 on page 4.

2      MR. VEEDER:   That the rights of the above-named defendants

3  and each of them--

4      MR. SACHSE:   To the use of the ground water or the water.

5      MR. GIRARD:   To the use of all water.

6      THE COURT:   All water underlying defendants' lands.

7      MR. VEEDER:   Vagrant, local, percolating water.

8      No.   Then you always have the problem again someday of

9  deciding what water is vagrant and what water is part of the

10 stream.

11     THE COURT:   If we take this as it is now written, a

12 question could come up where a title company would say, "Well,

13 now, the Court quieted your title to percolating waters, but

14 if there was water under your land that is part of the stream

15 then you are still subject to litigation in this action."

16 And our purpose with these people is to get them out of this

17 lawsuit once and for all and not leave a door open later on

18 for further litigation.   And I think I am in agreement with

19 Mr. Littleworth and Mr. Girard that our judgment should be

20 coextensive with our findings:   We find that this is percolating

21 water.   That's the end of it.   Obviously, you are not going

22 to sign a judgment with anybody who lies over a basin or is

23 any part of a stream.   The Government is not hurt on this thing.

24     MR. VEEDER:   Your Honor, so help me, I am most amenable.

25     THE COURT:   Well, I don't think it is in shape to be

1   filed.  Let's pass it up and do some further work on it.

2          We will take a short recess.

3          I will ask the Clerk to pull out that map of the Vail

4   irrigable land prepared by the Government, which demarks the

5   various areas of irrigated land in the Pauba Valley.

6          MR. STAHLMAN:  You are talking about the one prepared

7   by the Vail Company?

8          THE COURT:  Maybe it is the Vail Company.

9          MR. VEEDER:  It is Vail's Exhibit J, I believe.

10          (Recess.)

11          THE COURT:  Without spending a lot of time on this,

12   the problem has been, as we know, that these fields that were

13   used it was almost impossible to make any sense out of, where

14   one field stopped and another began, and on that map there are

15   demarked areas that are fully enclosed.  Can each one of them

16   be given a parcel number and can you key the work you are

17   doing to parcel numbers on that map Exhibit J?

18          MR. STAHLMAN:  I think so, your Honor, yes. We will do

19   that.

20          THE COURT:  You can assign arbitrary parcel numbers, and

21   then this work that you and the Government are doing as to

22   area of irrigated lands, you will refer to them as parcel

23   numbers on Exhibit J.

24          MR. VEEDER:  May I be sure that I didn't fall off the

25   sled back there.  We have the "Mesquite Field" written down

10,520

1   there.  As I understand it, there will be an arbitrary assign-

2   ment of Parcel No. 1 and in that Parcel No. 1 there will be

3   27 acres of irrigated land.  Is that the idea?

4           THE COURT:  That is right.  I think it will work a lot

5   better.

6           MR. STAHLMAN:  I think we have made some progress on

7   this thing, except that I heard an expression from one of the

8   parties involved that if the lawyers would leave them alone

9   Sandy and Col. Bowen would probably come up with what the

10  actual situation is.

11          MR. VEEDER:  Well, why don't you leave them alone?

12          MR. STAHLMAN:  You are the one who keeps running up

13  there and wanting to get in on this testing of wells.

14          THE COURT:  Will you do that?

15          MR. STAHLMAN:  That's right.

16          THE COURT:  That doesn't have to be done in court.  You

17  can later on read into the record what parcel numbers were

18  assigned on the map, or the map will show it.

19          MR. VEEDER:  We can have a tabulation.

20          THE COURT:  Yes.  In some instances you will have two

21  or three fields in the one parcel.  I think it will work better

22  all the way around.

23          Let's talk about this date of continuance.  Here is my

24  situation.  Either because of increased smuggling of marijuana

25  at the border for some reason or other, or because of summer

1   traffic which has led to a lot more cases, we have narcotic

2   cases set clear through the end of October-- the week of

3   October 20th.  Many of them are jail cases that have to be

4   tried.  The judges apparently are talking about assigning

5   Judge Kunzel to Los Angeles.  And Judge Weinberger has been

6   doing more than half-time work, which he agreed to do as a

7   retired judge.  It is not fair to Judge Weinberger to suggest

8   that he retire and then give him a full calendar.  To a man

9   of 77, it just isn't fair.  I have written to the new Chief

10  Judge that I am not going to be a cry baby about my calendar

11  piling up.  I am only concerned with three things.  I want to

12  see Judge Weinberger treated fairly; I want to conclude this

13  Fallbrook case, and I want to try the jail cases on narcotics.

14  I am going to do the best I can.  But as a result I am going

15  to have to put this case over, and what happens thereafter is

16  largely in the lap of the Court up here.

17      MR. VEEDER:  What do you mean, your Honor, by what

18  happens thereafter?

19      THE COURT:  Well, suppose I give you a date, for example,

20  of the 3rd of November.

21      MR. VEEDER:  That would be fine with me.

22      THE COURT:  Then suppose that meanwhile we have these

23  jail cases on narcotics that take precedence on the calendar

24  and they have to be tried, and they don't send any other judge

25  down here to try them.  I will still be trying narcotic cases.

1        Of course, the lawyers can write the Chief Judge and the

2    Administrative Office of the courts and the Senator, and do

3    anything you want to do.  But I have got to try the jail

4    cases in preference to any civil action.  A man has to be

5    tried within a reasonable time after he goes to jail.  If he

6    is on bond, you can continue his case

7        Now that is my problem.  I am going to try to see if

8    I can't work this out to be able to spend an appreciable

9    amount of time on this case and get through with it.  But I

10   have serious problems.

11       What do you say, November 3rd?

12       MR. VEEDER:  We have a date with the Master, but that is

13   something I would like to talk with your Honor about further.

14       MR. SACHSE:  I would like to also ask whether you

15   contemplate operating this the way you did before on the four-

16   day week, or three days a week, or something like that, because

17   of this jail problem?

18       THE COURT:  I don't know.  We will do the best we can.

19   I would prefer to try it four days a week, with Mondays off

20   for sentences and arraignments.

21       MR. SACHSE:  Frankly, the hope that has always been in

22   my mind-- we are getting close in with the orders we are working

23   on now, Master's findings have been filed on two of the stream-

24   sheds, and I think a couple of little ones are ready-- would be

25   that we really are at a stage where quite possibly if you were

1  working three days a week the other two could be pretty well

2  worked out and get rid of a lot more of little ownerships

3  scattered up and down the watershed.

4      THE COURT:  Well, three days a week doesn't do anything

5  for my calendar, because a narcotics case takes two or three

6  days on the average.  If I try the Fallbrook case two days a

7  week, I could try one narcotic case a week and try the Fallbrook

8  case for two days.  But three days doesn't help me a bit.

9      MR. SACHSE:  I have one other question before I care to

10  express an opinion on when we ought to adjourn to.  The last

11  word in the last day's transcript was that Mr. Veeder was

12  going to try to advise us, based on what he found out during

13  the summer's examination of the well records, et cetera, as

14  to when or if he had an idea as to when the resting time of

15  the United States might come.  Once that happens, I am not

16  going to be able to say that I will step in here and start

17  proving somebody else's case.  Your Honor has made an order

18  that a number of individuals be tried before you.  I might well

19  have to come to you and say I have to have a week's continuance.

20      THE COURT:  You won't have any problem on that.

21      MR. SACHSE:  If Mr. Veeder could tell us when he thinks

22  he is going to rest, it might solve some of this question of

23  the continuance date.

24      THE COURT:  How much longer do you think you will be on

25  your case, Mr. Veeder?

1    MR. VEEDER:  I have a very great problem.  George is

2    attacking the stipulated judgment, and when I learned about

3    what is going to be done--

4        THE COURT:  All right, aside from the issues on the

5    Vail judgment, how much longer will you be?

6        MR. VEEDER:  I don't believe that there will be a half a

7    day.

8        THE COURT:  What about all this new testing you have

9    been doing?

10       MR. VEEDER:  That is rebuttal, your Honor.

11       MR. LITTLEWORTH:  May I ask, then, how we are coming

12   along on the soil surveys, because I think we need to have

13   those in advance of being asked to go to trial.

14       MR. VEEDER:  You have the soil surveys.

15       MR. LITTLEWORTH:  I have only one, and Commander Redd

16   tells me that you have seven more that are ready today.  Will

17   they be ready by November 3rd?

18       MR. VEEDER:  Your Honor, we gave Mr. Littleworth the

19   soil surveys, we gave him the field maps, we showed him how

20   to use them, we gave him complete instructions.  It might have

21   been a help-yourself deal to a certain degree, but he has had

22   the whole summer long all the data that we have.

23       MR. LITTLEWORTH:  That may be true, but that isn't all

24   the data on our clients.  We have one completed soil survey,

25   and that is on Mr. Quarry.  You gave us maps on the Oviatt case,

and that was all.  You gave us as much as you had done.  Now
you are authorized to make some thirty or forty more surveys
for us, and we don't have them.

MR. VEEDER:  You have, according to Col. Bowen, a
complete soil survey report.  As he told you, have your
engineer look at them.  I don't suppose you have even gone
through them or you wouldn't have said what you did.

We have given him the soil surveys, with the symbols,
with the land classifications on them.  It would be the
simplest thing in the world for him to go ahead and finish
this up.  The only thing in the world we do is put the data,
with some refinement, into a blue book.  Now I submit, your
Honor, that with the burden that we have in this preparation
that Mr. Littleworth could have had an engineer at least look
at those.

THE COURT:  Did you look at the material he gave you?

MR. LITTLEWORTH:  Yes, your Honor.

I am letting Mr. Veeder run on here.  I will quote Col.
Bowen, and if I am in error I would like to have him say so.
He told us, when we closed at the end of the summer, that he
had one survey ready for us then.  That was the Quarry survey.
We have that.  He told us he would have the rest of them ready
for us in the fall.  Meanwhile, he said that here were the
maps on the Oviatt property.  This was not complete, but here
were the aerial maps.  We have all of those.  We have kept

1  them.   This was all we were told and all we have had.   Now

2  we have fot forty or fifty parcels.   I understood that we have been

3  given authority on, I believe, all of them, and I understood

4  that the surveys on all of them were to be ready this fall.

5      MR. VEEDER:   I would like to have Col. Bowen respond to

6  that, because I have been operating on the basis that he had

7  the material.

8      THE COURT:   Well, you gentlemen know a lot more about

9  this than I do.   Tell me in language that I can understand

10  just what has been given to Mr. Littleworth, Col. Bowen.

11      COL. BOWEN:   Mr. Littleworth received photographic

12  copies of the field survey sheets.

13      THE COURT:   For all of his clients?

14      COL. BOWEN:   For all except seven of his clients, smaller

15  clients, plus the Domenigonis.   That includes Roripaugh, Cass,

16  Nicholas, Ceas.

17      THE COURT:   He received the field surveys?

18      MR. LITTLEWORTH:   Aerial photographs.   Is that what you

19  call a soil survey?   That's all we have got.

20      COL. BOWEN:   With soil survey symbols and delineations

21  on them.

22      MR. LITTLEWORTH:   I understood that this was as much

23  work as you had progressed to at that point and that these

24  would be completed during the summer and we would have them in

25  the fall.

COL. BOWEN:   What we do with those soil survey sheets is to measure the areas in each class of land and prepare a tabulation and give our opinion as to what those lands could be used for and the duty of water for those lands.   Those tabulations have not been supplied.

THE COURT:   Nor have you supplied a description of what the lands could be used for?

COL. BOWEN:   No, sir.   None of that descriptive material has been supplied, your Honor.   Simply the copies of the field sheets.

MR. VEEDER:   Which is the soil survey and the land classification; is that right?

THE COURT:   On these aerial maps that have been given him, are the areas of his clients' property marked off, so that he can see where his property is, or does he have to have an engineer study the matter to find out where the property is on this map?

COL. BOWEN:   I believe in most instances, your Honor, that the boundaries of the clients' property were delineated on those maps, but they were not identified as to the particular defendant.

THE COURT:   And were symbols placed on various areas showing the type of soil, et cetera?

COL. BOWEN:   Yes, sir, the symbols showing the type of soil and the symbols showing the classes of soil all appear on

those sheets.

THE COURT:   Were areas marked off so that where a symbol appears you could see what area was covered by this symbol?

COL. BOWEN:   Yes, your Honor.

THE COURT:   But no calculation as to perimeter?

MR. LITTLEWORTH:   We have no doubt as to how much acreage is involved in any of these particular areas or what it is for or anything else.

THE COURT:   No planimetering has been done on these areas?

COL. BOWEN:   It has been done, your Honor, but at that time--

THE COURT:   It was not done at that time?

COL. BOWEN:   It was not done at that time.

THE COURT:   It has been done since?

COL. BOWEN:   On most of them, yes, your Honor.

THE COURT:   For him to have used what you gave him he would have to have had somebody make an estimate of the acreage in those areas?

COL. BOWEN:   Yes, your Honor, he would have to have someone measure those areas.

MR. LITTLEWORTH:   Your Honor, the one that was completed is in a blue folder.   It has the number of acres which are owned, the description of the property--

THE COURT:   I know what they look like.

MR. LITTLEWORTH:  This is what I understood was to be done on all of the properties.  We have been waiting for those. This is the first time we have ever been told that this would not be ready for us this fall.

THE COURT:  How much work is there to complete this?

COL. BOWEN:  I don't believe Mr. Littleworth was told that it will not be ready for him this fall.

THE COURT:  How much work remains to be done to complete these parcels of owners that he represents?

COL. BOWEN:  We have field work on seven of them to do, which Plan to get done next week, your Honor.  We have seven completed reports here ready to deliver to Mr. Littleworth, and the remainder are all in the process of being typed up in my office at the moment.

THE COURT:  And should be ready by November 3rd, then, all of them?

COL. BOWEN:  Yes, sir.  I believe they should be ready by November 3rd.

MR. LITTLEWORTH:  That was my question.

THE COURT:  What is the problem on the Master?

MR. VEEDER:  I think we have a November 2nd date with him, but I would like to have that suspended for a couple of months, and I will ask him today if he will be agreeable to it.  Because I do think that this matter of Mr. Krieger and Mr. Littleworth's clients should be taken care of here, and

1   Col. Bowen is just very hard-pressed to keep ahead of the

2   Master and the Court both.

3        THE COURT:  The case will be continued at the conclusion

4   of this morning's hearing to November 3rd at 10 o'clock,

5   without further notice to any of the parties to the action.

6        MR. VEEDER:  It is agreeable if I call Mr. Cranston,

7   your Honor, and ask him for a continuance?

8        THE COURT:  Yes, you may talk to the Master about that.

9   He can work that out.  It doesn't have to be done in court.

10       Where are you on this problem of the Vail irrigable

11   lands?  Make it short.  Have you come to any agreement?  Can

12   you come to an agreement?

13       MR. STAHLMAN:  I want it to be clear here in the record

14   that we will request a soil survey of the Vail Ranch.  They

15   have permission to go on the ranch to make a survey.

16       As to what has happened up to the present time, we had a

17   discussion as the Vail Ranch in connection with this.  Mr.

18   Veeder said he wouldn't agree to it.  We didn't get very far

19   with it.  He had his men up there making well tests and they

20   went out and tested wells.

21       THE COURT:  You haven't arrived at any agreement?

22       MR. STAHLMAN:  We have not.

23       Your Honor, I would like to state this to the Court,

24   that this witness who is in Okinawa, I have gone through his

25   testimony-- it was quite extensive-- in connection with the

10,531

1    first trial of this case.  I think the testimony in that case

2    completely obviates these--

3        THE COURT:  That hasn't been offered yet?

4        MR. STAHLMAN:  That hasn't been offered yet, no, your

5    Honor.

6        However, I have also made research in connection with

7    the brief that your Honor prepared and found that to be

8    completely correct.

9        THE COURT:  You mean that part of the brief I wrote for

10   you on the law?

11       MR. STAHLMAN:  That is right, and I went a little

12   further and I found cases which supported your Honor's con-

13   tention.

14       THE COURT:  Well, now, we are going to settle this in

15   short order, and you will have to cut out your dove and quail

16   hunting until you get this done.  It comes down to this.  You

17   have made a showing already in the record of certain maps and

18   you have this other testimony which you say you will offer.

19   If you have made a skin case and if the exhibits I have let

20   in are properly admissible-- if I have a record that I can

21   stand on, then of course it becomes a simple problem.  I merely

22   say to the Government that Vail has made a prima facie case.

23   If you are not satisfied, the Government must go forward.  That

24   puts them in the position of deciding whether they are going

25   to stand on the record you have made or whether they are going

1  to make a soil survey and put on other proof.

2      I am not going to say whether I am satisfied with the

3  record that has been made to date or not.  I can remember when

4  we had this witness here and either Mr. Veeder would dig a hole

5  for him, and then I would try to pull him out of it and Mr.

6  Sachse dug a bigger one and he walked right into it, and then

7  I questioned him some more.  I want you to go through the

8  record and make me a summary of what you have in the way of

9  exhibits and testimony to support a showing of the amount

10  of irrigable land and the uses and the water duties for the

11  irrigated land.

12      MR. STAHLMAN:  Younot only stopped my quail hunting.

13  You stop my duck hunting too.

14      THE COURT:  And to make your conclusion as a lawyer,

15  based on that, or that and this other testimony which I haven't

16  seen and which I would like to see-- I would like to read it

17  in conjunction with what is already in the record-- and make a

18  decision whether you have a prima facie case without error or

19  whether any of these exhibits should be stricken, whether

20  proper foundations were laid, and make this determination.

21  If I decide that you have made, then you can relax and the

22  Government has the responsibility of either taking the chance

23  of a finding based on the record as made or go ahead with

24  their own proof on the amount of irrigable land and the uses

25  and water duties.

1          Isn't it about that simple, Mr. Veeder?

2          MR. VEEDER:  No, your Honor, in my view.

3          THE COURT:  What is wrong with the logic of that

4     position?

5          MR. VEEDER: To begin with, I would think that as to this

6     evidence to which Mr. Stahlman has made reference, this

7     character who is in Okinawa, would have to be first delineated

8     and marked and a motion made to offer it.  I think that is

9     procedure.

10         THE COURT:  I think so.

11         MR. STAHLMAN:  I think that is a good idea, for this

12    reason.  I think this man testified at great detail in

13    connection with other matters.  They do, however, show his

14    experience and background and qualifications.

15         THE COURT:  Can you make a motion and mark out by pages

16    and lines the part of the testimony you are going to rely on?

17         MR. STAHLMAN:  I can.

18         MR. VEEDER:  And tender the exhibits to which they related

19         THE COURT:  Yes.  Can you do that?

20         MR. STAHLMAN:  Surely.

21         THE COURT:  How long do you want to do that? Can you

22    get that done by the 3rd of November?

23         MR. STAHLMAN:  Yes, your Honor.

24         MR. VEEDER:  Will that be served on me?

25         THE COURT:  The motion will be served on Mr. Veeder and

1    other counsel.

2        MR. VEEDER:  Together with the designation of the areas

3    of the transcript.

4        MR. STAHLMAN:  Yes.

5        MR. VEEDER:  In other words, I will wait breathlessly

6    until I get that.

7        THE COURT:  Meanwhile, you had better work on this other

8    thing.  In other words, what have you got in the written

9    record here, aside from this new testimony, which would support

10   the finding by the Court as to the amount of your irrigable

11   acreage, the character of the ground, and the water duty to

12   be applied to it?

13       MR. STAHLMAN:  Here is another situation affecting that

14   same point, your Honor.  You appreciate that this witness

15   who talked about digging holes is a man who is up in years.

16   We have a younger man who worked on this matter also, who is

17   available for testimony.  We may desire to put him on the

18   stand to show what was done.

19       I think we have demonstrated to this Court what the

20   acreage situation is in regard to that which is irrigable and

21   that which is susceptible to profitable irrigation, and also

22   what the water duty is.  I think it is in the record.

23       However, I will extend myself to clarify it.

24       MR. VEEDER:  Isn't this entirely and completely related

25   to the question of the disposition to be made of the matter of

10.5

1  the validity of the stipulated judgment and the enforcibility

2  of it?  In other words, the question of law, as I see it, is

3  whether this stipulated judgment is binding.  If it is binding,

4  then the question of the soil survey is purely academic.

5       MR. STAHLMAN:  I don't know.  I think there may be other

6  people interested in it, too.

7       MR. VEEDER:  It is academic as far as I am concerned.

8       THE COURT:  I don't know that the stipulated judgment

9  specifies where this ground is that is entitled to the water.

10      MR. VEEDER:  No.

11      THE COURT:  Then as between you and Vail, of course,

12  if the stipulated judgment is good, there is no problem.  But

13  as to Vail and everybody else in the watershed, there is a

14  problem.

15      MR. STAHLMAN:  That is it.  They have projected us into

16  a lawsuit with other people, and there are going to be other

17  matters here that we are going to be concerned with before the

18  case is over.  When you get to taking testimony up on Temecula

19  Creek, there are bound to be.  People are not going to stand

20  still for some of the things in that stipulated judgment.

21      MR. VEEDER:  That is the point I am making.

22      THE COURT:  I get your point.  If the stipulated judgment

23  is good as between the Government and Vail, I don't think

24  either one of you can complain about where the water is used.

25  The stipulated judgment is so broad that you can use it even

1   outside the watershed.  But as between everybody else in this

2   district, they are concerned with where you use the water.

3          MR. STAHLMAN:  Yes, they are.

4          THE COURT:  And therefore the burden is on Vail even if

5   the stipulated judgment is good.

6          MR. VEEDER:  That's right.

7          THE COURT:  To make a showing of its irrigable land

8   and the water duty.

9          MR. VEEDER:  That's right.

10         THE COURT:  All right, we understand each other.

11         Now, on this Vail decree-- that is what we just started

12   to talk about-- I think it is incumbent upon Vail, if they

13   are going to press any contentions in connection with setting

14   aside the Vail decree, to file some kind of pleading, get

15   down to some particular contention that they make.  So far,

16   all I have read is broad, general statements about the power

17   of equity.

18         MR. STAHLMAN:  I agree with your Honor that probably

19   further pleadings should be filed in the case to clarify the

20   position.

21         THE COURT:  Did you see the Government's brief?

22         MR. STAHLMAN:  I got it last evening, your Honor.  I

23   have made merely a cursory examination of the brief, and I

24   don't want to comment on it now.  That leads us into a lot

25   of other things.

1     I would at this time request that we have--

2     THE COURT: Don't reply to it until you get some plead-

3 ings on file and show us what you are going to contend.

4     MR. STAHLMAN: Very well.

5     THE COURT: I take it that you can't charge fraud.

6     MR. STAHLMAN: No.

7     THE COURT: Are you going to contend that there is mis-

8 take?

9     MR. STAHLMAN: Mistake, yes.

10     THE COURT: What is the mistake?

11     MR. STAHLMAN: Many mistakes.

12     THE COURT: All right, you are going to rely on mistake,

13 then?

14     MR. STAHLMAN: Yes, your Honor.

15     THE COURT: What else are you going to rely upon?

16     MR. STAHLMAN: And that it resulted in an unconscionable

17 judgment, and I think we can clearly show that. There is a

18 lot of evidence that has to come into this case yet.

19     However, as far as the pleading is concerned, I think

20 your Honor is right. It should be clarified.

21     THE COURT: You are given permission now to file

22 supplemental pleading with your answer, in which you set forth

23 in lawyerlike style the grounds upon which you are going to

24 contend that the Vail judgment should be set aside.

25     MR. STAHLMAN: That will be difficult for me to do. I

1  will have to hire a lawyer to do it. But we will have it here

2  before the Court.

3  THE COURT: You have other problems. I have been

4  thinking about this. What are you going to do about the

5  benefits conferred upon you by the Paube well?

6  MR. STAHLMAN: Your Honor, that raises something that

7  I think your Honor is going to have testimony in relation to.

8  If you are going to accept the explanation and the gyrations

9  that have been gone into in Mr. Veeder's brief about the Pauba

10  well, it is an entire misconception. You are going to have to

11  know why the well was drilled when it was drilled. And in so

12  far as the well being drilled is concerned--

13  THE COURT: I am not accepting his statements. But in

14  any pleading where you seek the relief of equity you have to

15  offer to do equity.

16  MR. STAHLMAN: That's right.

17  THE COURT: You may say,"We contend that we don't owe the

18  Government a dime for the Pauba well." But to have a proper

19  pleading you will have to say that if it is found that a bene-

20  fit has been conferred upon us, then we offer to do equity

21  and we tender the value of the money spent for that well.

22  MR. STAHLMAN: Right. However, I don't want your Honor

23  to jump to any conclusions as to the circumstances under which

24  the Pauba well was drilled. There is a long story to it.

25  MR. VEEDER: That is a matter of evidence, isn't it?

MR. STAHLMAN:  That is a matter of evidence.  But you have evidence in your brief.  I attempted to avoid that.  You have argument, you have evidence.  You criticized Mr. Gardiner's brief.  But my goodness--

MR. VEEDER:  I didn't criticize Mr. Gardiner's brief.

THE COURT:  Now, another thing you have to give some consideration to.  You gentlemen can discuss this out of court when I get through here.  You have another problem here, and that is that under the stipulated judgment it is provided that either one of you can build a reservoir.  Is that right?

MR. STAHLMAN:  That's right.

THE COURT:  So you build a reservoir.  I am not so sure if this stipulated judgment is set aside, that you don't have to open the gates of Vail Dam.

MR. STAHLMAN:  I think to some extent we do.

THE COURT:  I don't say to some extent.  I am not sure but that you have to open the gates of Vail Dam and let the water run down the canyon.

MR. STAHLMAN:  You mean into the ocean?

THE COURT:  Run down the canyon.

What have you done with Vail Dam?  You have exercised the right to appropriate surplus waters, waters which would otherwise run down the stream and water which would in part be used to charge the basins below.  Some of it might flow to the sea.  But you built the dam.  Now unless, of course, there is some

1   contra showing made to what Mr. Veeder has presented, the

2   Government withdrew protests against your dam and let you build

3   a dam in reliance on the stipulated judgment.  If the stipulated

4   judgment is set aside, what are we going to do?  Let you keep

5   Vail Dam and impound waters on the stream?

6       MR. STAHLMAN:  I don't think we are going to decide that

7   question in the little repartee between your Honor and myself.

8   I appreciate your question.

9       THE COURT:  I am not deciding it.  I merely am trying

10  to direct your attention to a major problem.

11      MR. STAHLMAN:  I am mindful of those matters, your Honor,

12  and I am mindful of the fact that there is evidence in connec-

13  tion with those matters that will have to come before this

14  Court.

15      THE COURT:  I am not prejudging it, George.  I am only

16  pointing out that this is not a simple problem.

17      MR. STAHLMAN:  I know it isn't, your Honor.

18      THE COURT:  You have all kind of problems in connection

19  with this attack that you are going to make on this Vail

20  judgment.

21      MR. STAHLMAN:  I will say, your Honor, if the stipulated

22  judgment is not set aside, it is going to be a complication

23  to this case from here on out.

24      THE COURT:  If that is all I had to decide, I could

25  decide that very shortly.  I would agree with you that the

1   stipulated judgment is going to be a complicated proposition.

2   But that isn't all I have got to decide.  It would be a lot

3   easier to handle this matter by setting aside the stipulated

4   judgment.  I could set it aside very shortly.  But that is not

5   all I have to decide.

6     MR. STAHLMAN:  I don't want your Honor to jell too much

7   in relation to these matters you just spoke to me about as to

8   what we will have to do with the Vail Dam.  I realize there

9   are certain sacrifices--

10    THE COURT:  What I am trying to do with you is to put a

11  needle in you hard enough that you will get to work and give

12  this some study and figure out where you are going to be.  I

13  am not prejuding it.  I will say frankly that if I can find

14  some good legal ground to set aside the stipulated judgment,

15  I would be inclined to set it aside.  It is going to cause

16  nothing but complications.

17    If I find good legal ground, Mr. Veeder.

18    MR. VEEDER:  I just wanted to be sure.  There is also

19  this factor of equity.  I wanted that added, too.

20    MR. STAHLMAN: Equity is a part of the law.

21    THE COURT:  I am trying to needle you, George, into

22  realizing what problems you have.

23    MR. STAHLMAN:  I am needled, your Honor.  I am fully

24  conscious of that judgment and I realize its seriousness and

25  I realize the responsibility that goes with requesting the

1    Court to set aside that judgment.

2          MR. VEEDER:  May I inquire as to the time that George is

3    to plead, your Honor.  That is important to us.  If it is in

4    the form of a counter-claim, to designate it as such.

5          THE COURT:  I think you can get your pleadings on file

6    before November 3rd.

7          MR. STAHLMAN:  I think I can, your Honor.  I have this

8    situation.  I am not the biggest or the best lawyer in the

9    world, nor do I have all the help, and I have had to hire

10   lawyers, and I think I have hired a competent man in some

11   of these matters on which I am not the best in the world.

12         THE COURT:  Well, don't be so modest.  What is your point?

13         MR. STAHLMAN:  When it comes to research and pleadings,

14   I have always had people do that for me, and I am in that

15   habit and it is rather irksome to do it myself, and I don't

16   think I can do it as well as some other people.  I have had a

17   man who worked in the preparation of this last memorandum

18   we sent to your Honor, which I hope your Honor has a better

19   feeling toward than you did toward the one I personally

20   prepared all by my little lonesome.  I think it is a better

21   job and a more lawyerlike job.  He is in Europe now and will

22   not be back until the middle of next month.  As soon as he

23   gets back I will get together with him and try to get this

24   done.

25         THE COURT:  You have some work cut out for you.

1          MR.STAHLMAN:  Yes, I have.

2          THE COURT:  You are going to make a summary of what you

3    have.

4          MR. STAHLMAN:  That is right.  I can do that myself.

5          THE COURT:  You are going to delineate the testimony of

6    this other witness that is in Okinawa and make a motion to

7    use that.

8          You are going to draw some pleadings as to what you are

9    going to stand on in this case.

10         MR. STAHLMAN:  That is right.

11         MR. VEEDER:  Your Honor, I raise this point.  I was

12   hopeful we would try this Vail matter first.

13         MR. STAHLMAN:  I don't see how we can try the Vail

14   matter first regarding the stipulated judgment when there is

15   other evidence in this case affecting other people that has

16   a bearing on the stipulated judgment.

17         However, the pleadings will be in by the 3rd.  Can't we

18   go on from there, Mr. Veeder?

19         THE COURT:  If you are talking about X up the stream,

20   George, who was not a party to the Vail judgment and says he

21   doesn't like it, he has no concern-- he is not bound by it.

22         MR. STAHLMAN:  No, that is not it.  I think there will

23   be some evidence as to what has occurred in development upstream

24   that will show the mistaken conception the Court had in the

25   first instance when they entered the stipulated judgment, and

1    those parties who were party to it.

2         MR. VEEDER:  If this is going to be in the form of a

3    counter-claim and designated as such, I will have to file a

4    reply.  That is one reason why I am interested in the kind and

5    type of pleading that is going to be filed.

6         THE COURT:  You work out the pleadings between yourselves.

7         MR. STAHLMAN:  I might say to your Honor that I have

8    recognized for sometime that there should be something more

9    specific in the pleadings.  But I have been listening to all

10   the evidence, and there is a good bit of it in this case already,

11   that affects matters in relation to the stipulated judgment.

12   There is also that order that has been entered in Judge

13   Yankwich's court that caused pleadings to be dispensed with.

14   However, I do feel that the Court is entitled to have it

15   spelled out as to the position we maintain and the principles

16   on which we feel the stipulated judgment should be set aside.

17        MR. SACHSE:  May we ask, Mr. Stahlman, that we get a

18   copy of those pleadings, too?

19        MR. STAHLMAN:  Yes, surely.

20        MR. SACHSE:  I think everyone has a copy of the brief

21   I put in.

22        MR. GIRARD:  I have, yes.

23        THE COURT:  What else can we do this morning?

24        MR. VEEDER:  Your Honor, I am concerned about the status

25   of the Sachse interlocutory judgment and what you want us to

10,545

1    do in regard to it.  I know your Honor is in a hurry to leave,

2    but I wanted some direction as to what you want from us in

3    this matter.

4         THE COURT:  I think this point that Mr. Girard and I

5    were talking about will have to be considered.

6         MR. VEEDER:  We have taken care of that.

7         THE COURT:  The form in which we are going to do this.

8    We don't have to have a court hearing to sign one of these

9    things up.  We are only talking now about the matter of form.

10        MR. SACHSE:  We can work it out as a matter of form and

11   send it down.

12        MR. GIRARD:  I would like to see itbefore it is signed,

13   your Honor.

14        MR. VEEDER:  Of course.

15        THE COURT:  It will be served on everybody.

16        MR. STAHLMAN:  Mr. Veeder handed me this morning a

17   suggested pretrial order, and I understand that he submitted

18   a copy of it to your Honor.  I think that should go over.

19        MR. VEEDER:  I thought it might be a guide is all.

20        THE COURT:  It is a starter.  The Clerk will file it here.

21   I will look over some of that material.  If we get issues

22   joined on this problem, I will want you to agree on what of

23   this documentary evidence is admissible and can come in without

24   objection and save as much time as we can on it.

25        I will hand you back these.

1      MR. VEEDER:  Thank you, your Honor.

2      I am substituting the copy that I gave Mr. Stahlman on

3   this suggested pretrial order.  Page 2 has been changed to

4   correct the names of the Wilkinson family.  That is the only

5   change.

6      MR. STAHLMAN:  The time is open in which to reply to your

7   brief.

8      MR. VEEDER:  Yes.

9      THE COURT:  Yes, let's not worry about further replies.

10  After we get further along and get some pleadings and demark

11  some issues, then I may ask you to brief particular things.

12      MR. STAHLMAN:  Very well.

13      MR. VEEDER:  How broad a distribution of the brief that

14  we prepared in reply to Mr. Stahlman's should there be?

15  Should that be to everyone?

16      MR. SACHSE:  To the major parties, please.

17      THE COURT:  To the major parties, and deposit some with the

18  Clerk, and I will direct now that any party interested can

19  pick up a copy from the Clerk.

20      MR. STAHLMAN:  I might indicate that I have left a number

21  of copies of our brief, your Honor.

22      THE COURT:  Gentlemen, I am going to try to do my best

23  to get some time set aside beginning November 3rd, and the mere

24  fact that I told you about some of my problems doesn't mean

25  that I am not conscious of the fact that we have to get on

1   with this case.  In fact, I may be wanting your help to com-

2   municate with some of the proper parties in this matter.  I

3   will talk to you about that later.

4        MR. VEEDER:  You want nothing more from us at the

5   moment, however?

6        THE COURT:  No.

7        Mr. Lincoln.

8        MR. LINCOLN:  I received an order from your Honor

9   requiring me, with about sixty other parties, to be present in

10  court this morning for trial, and I am wondering, since we

11  are in continuance until November, wouldn't it save your

12  Honor a great deal of time and trouble if some of those at

13  least were transferred to the Referee for hearing?

14       THE COURT:  You are referring now to this ex parte

15  order that certain cases would be heard before the Court

16  rather than before the Master?

17       MR. LINCOLN:  Yes, your Honor.

18       THECOURT:  As I understood, all of those are upstream

19  of the Narrows, with the exception of one?

20       MR. VEEDER:  I think there is just one that is part to

21  the stipulated judgment.

22       MR. STAHLMAN:  Two.  The Henderson case and the Murray

23  Schloss Estate.

24       THE COURT:  You represent whom?

25       MR. LINCOLN:  The Murray Schloss Estate.

1    THE COURT: The reason you are included, although you

2  are below the Narrows-- all the rest of these people are above

3  the Narrows-- the reason you are included is that you are

4  tied in with this problem of the stipulated judgment-- rather,

5  not so much the stipulated judgment.  As I view it now, you

6  did not appeal from the previous judgment.

7    MR. LINCOLN:  That is right.

8    THE COURT:  And your rights apparently are fixed under

9  the earlier judgment.

10    MR. LINCOLN:  That is as I understand it.

11    THE COURT:  However, that is tied in with the stipulated

12  judgment, because the stipulated judgment refers to your rights

13  and between the parties makes certain concessions.  Now, if

14  they have given you more than you got out of the judgment,

15  you are entitled to more from their contract between themselves.

16  But you can't get less, as I see it.  In other words, assuming

17  that you had X rights under the judgment that you did not appeal

18  from, and assuming that the stipulated judgment gives you X

19  plus 1 rights, I think you are entitled to X plus 1, if that

20  exists.  But if the stipulated judgment purports to give you

21  less than the other judgment gave you, then it doesn't affect

22  you, because you were not a party to it.

23    MR. STAHLMAN:  I might say, your Honor, in that connection,

24  that it is the same as the original judgment, and it is a

25  mighty small amount of water.

10,549

1    MR. VEEDER:  Are you through, Mr. Lincoln?

2    MR. LINCOLN:  Yes.  I am listening.

3    THE COURT:  Mr. Lincoln, the order set it for trial,

4  but under the arrangements we have had where parties at their

5  peril come or do not come and make inquiries as to what is

6  going on, it will be sometime before we get to your particular

7  issues, and we will have to decide on the 3rd of November where

8  we are going from there.

9    What did you want to say, Mr. Veeder?

10    MR. VEEDER:  I was going to refer to the arrangements

11  with Mr. Stahlman in connection with getting these --

12    MR. STAHLMAN:  I think if Col. Bowen and Mr. Wilkinson

13  can get together they can work that out, and let them choose

14  their time, if that is agreeable with you.

15    MR. VEEDER:  That is all right with me.

16    THE COURT:  Make a record later on of what you have done

17  with Exhibit J.

18    Court will be in recess.

19    (Adjournment until Tuesday, November 3, 1959, at 10 A.M.)

20

21

22

23

24

25