# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

### HONORABLE JAMES M. CARTER, JUDGE PRESIDING

— — —

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT,
et al,

Defendants.

No. 1247-SD-C

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

**Place:**  San Diego, California

**Date:**  Tuesday, February 2, 1960

**Pages:**  11471 to 11496

# FILED

SEP 2 4 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

**J O H N   S W A D E R**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

1    IN THE UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF CALIFORNIA

3    SOUTHERN DIVISION

4    - - -

5    HONORABLE JAMES M. CARTER, JUDGE PRESIDING

6    - - -

7

8    UNITED STATES OF AMERICA,        )
                                      )
9                  Plaintiff,         )
                                      )
10         vs.                        )        No. 1247-SD-C.
                                      )
11   FALLBROOK PUBLIC UTILITY         )
     DISTRICT, ET AL.,                )
12                                    )
                                      )
13                 Defendants.        )

14

15    REPORTER'S TRANSCRIPT OF PROCEEDINGS

16

17    San Diego, California
      Tuesday, February 2, 1960

18

19   APPEARANCES:

20       For the Plaintiff          WILLIAM H. VEEDER, ESQ.,
21                                   WILLIAM E. BURBY, ESQ.,
                                     Special Assistants to the
22                                   Attorney General,
                                     Department of Justice,
23                                   Washington, D. C.

24                                   LCDR. DONALD W. REDD.

25

1    APPEARANCES   (Continued):

2         For Defendant                    STANLEY MOSK, ESQ.,
          State of California              Attorney General,
3                                          By FRED GIRARD, ESQ.,
                                               Deputy Attorney General.
4         For Defendant Vail
          Company                          GEORGE E. STAHLMAN, ESQ.
5                                          EARL K. STANTON, ESQ.

6         For Defendants Gibbon            GEORGE GROVER, ESQ.
          and Cottle

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

11473

1    San Diego, California, Tuesday, February 2, 1960.   10:00 A.M.

2

3         THE CLERK:  Eleven, 1247-SD-C, United States vs.

4    Fallbrook, et al.;

5         MR. VEEDER:  Your Honor, Mr. Sachse called me and asked

6    me to advise your Honor that he, Mr. Sachse, would not be here

7    until 2 o'clock this afternoon.

8         THE COURT:  Mrs. Bates, do you have something to present

9    to the Court?

10        MRS. BATES:  Your Honor, I am not of record as counsel

11   for Schloss as yet.   The motionnfor substitution of attorneys has

12   not yet been served on Mr. Lincoln.  I am not as yet of record

13   in this case, but I expect to be very shortly.

14        THE COURT:  Then you want to be excused?

15        MRS. BATES:  If I may.  I am in trial in Los Angeles, if

16   I may return.

17        THE COURT:  You may.  You are going to file your motion

18   and bring it on for hearing?

19        MRS. BATES:  I will, your Honor.

20        THE COURT:  All right.  Mr. Sachse will be here at 2 o'clock?

21        MR. GIRARD:  That is correct, your Honor.

22        THE COURT:  The first order of business, it seems to me,

23   would be to see who has come into court pursuant to the letters

24   that we sent out, and their matters will be heard today.

25        MR. VEEDER:  I have no notice of anyone, your Honor.

1    THE COURT:  The two people in the rear row, come forward,

2    please.  There are a couple of chairs over here at the corner

3    of the counsel table.

4        What are your names?

5        MR. BORING:  Violet E. Boring and Guy Boring.

6        THE COURT:  Can you locate the parcel here?

7        MR. VEEDER:  I can, your Honor.  I didn't realize those

8    people were here.

9        THE COURT:  Where is your property located generally,

10   Mr. Boring?

11       MR. BORING:  Fallbrook.

12       THE COURT:  And how many acres do you have there?

13       MR. BORING:  I don't have any acreage; just a lot or

14   about three-quarters of an acre.

15       THE COURT:  As stated in that letter, what we propose to

16   do is to enter an interlocutory judgment in this case which

17   would provide that any water you found under that ground

18   belonged to you and you would just be lucky to have it.

19       MR. BORING:  If I find it, it's mine.

20       THE COURT: What you can find there is yours.  And that

21   that water is not part of the stream system, and that when we

22   get the final judgment you will be forever put out of any

23   lawsuit involving the Santa Margarita River.  That's what you

24   want, isn't it?

25       MR. BORING:  That is right.  I have been getting letters

1    for quite sometime on this, and I would just like to find out

2    what is going on, that's all-- what it's all about.

3         MR. VEEDER:  That's Parcel 29, your Honor.

4         THE COURT:  We have had testimony concerning that area,

5    and the testimony indicates that any water under the ground in

6    that area is what we call vagrant, percolating water not part

7    of the stream system, and therefore the United States has no

8    interest in it, and, correspondingly, you have no interest in

9    the stream.

10        MR. BORING:  I can dig a well there, if I want, for my

11   own use, then.

12        THE COURT:  And you are just lucky if you get water.

13   What you get is your own.

14        With this one exception.  You still have correlative

15   rights with your neighbors.  This is something I can't settle.

16   But if you had a neighbor next door and he had a well and he

17   complained that the amount of water you took out of there ran

18   his well down, you might have to make some arrangements with

19   him.

20        MR. BORING:  That's right.

21        THE COURT:  Are you satisfied with that kind of judgment?

22        MR. BORING:  Yes, your Honor.

23        THE COURT:  Any reason for them to stay?

24        MR. VEEDER:  I see no reason whatever for them to stay, your

25   Honor.

THE COURT:   The Government has already looked your situa-tion over, and at the Government's instance this letter was sent to you.

MR. BORING:   I had one before that took me about four days to read it and then didn't know what I was reading.

THE COURT:   You understand now what this judgment is going to provide?

MR. BORING:   Yes, I do.   I can dig me a well if I want to.

THE COURT:   Do we need any proof about ownership?

MR. VEEDER:   No, your Honor.   The reference to Mr. Boring's property was taken from our records, and those were taken from the County.

THE COURT:   And it shows that he and his wife are the owners of the property?

MR. VEEDER:   That is right, and we have so asked the finding to be made.

THE COURT:   Thank you for coming in.   The only other problem you would have in this case would be that one of these days there is going to be served upon you a big bundle of papers.   It will be a copy of this interlocutory judgment and a copy of a lot of other interlocutory judgments and you as a land owner in this watershed would have a right to complain about these other judgments, if you wanted to.   That's up to you.   But I think this interlocutory judgment we are entering

11477

1   on your property, when it is finally adopted-- and we anticipate

2   it will be in the final judgment-- will get you out of this case.

3       MR. BORING:   I just kept this little piece of land here,

4   you see.   That's all I have.   That's all I wanted to know.

5       THE COURT:   There were two letters received by me which

6   I sent down to your secretary, Mr. Veeder.

7       MR. VEEDER:   Yes, we have those, and we are going to

8   follow through.   I think we will send letters to the present

9   occupants of those properties, your Honor.

10      THE COURT:   Any other appearance by land owners who

11  received letters from the Court whose matters would be heard

12  today?

13      I take it that you are prepared to offer the inter-

14  locutory judgment?

15      MR. VEEDER:   Yes.   We are preparing the affidavit for

16  mailing.   I thought your Honor would want that before we

17  offered it to your Honor for signature-- if that is agreeable

18  to you.

19      THE COURT:   Yes.

20      MR. VEEDER:   I will bring it to your chambers.

21      THE COURT:   Do we have some sort of agenda for this

22  week and next?

23      MR. VEEDER:   I have been wondering whether Mr. Stahlman

24  was going ahead to finish up his case from the evidentiary

25  standpoint.

1    MR. STAHLMAN:   I received a letter with relation to a

2    couple of matters that I assumed were going on, a number of

3    matters that Mr. Sachse indicated he would be ready on, and

4    then Mr. Krieger for next week.

5        The only thing we have remaining, your Honor, is the

6    question that was raised--

7        Incidentally, Mr. Sachse called me and said if we

8    discussed anything pertaining to the stipulated judgment he

9    would appreciate it if I would indicate to the Court that he

10   would like to be here, and that he would be here this after-

11   noon.

12       However, this matter relative to the drilling of the

13   Paube well and that evidence will not take but a very short

14   period of time, and I think that logically is in connection

15   with the claim of the Government of unjust enrichment by

16   having drilled the well, and I think this is really a matter

17   that should trail the matter relative to the stipulated judg-

18   ment.

19       MR. VEEDER:   I didn't hear that.

20       MR. STAHLMAN:   I think that matter relative to the Pauba

21   Well is a matter that can trail the question of the stipulated

22   judgment, the question whether or not by reason of drilling

23   the well there was unjust enrichment, according to the brief

24   that was filed by the Government and its pleadings in connec-

25   tion with it.

1     However, when the case is at issue we will meet it, and

2 the evidence will not take very long on that.

3     THE COURT:  When would you put on that evidence?

4     MR. STAHLMAN:  I think we can put it in next week.

5     THE COURT:  You are not ready today?

6     MR. STAHLMAN:  I am ready to lodge a number of letters

7 in connection with the transactions relative to the drilling

8 of the well.

9     THE COURT:  Are you ready to lodge those today?

10     MR. STAHLMAN:  Yes, I will lodge those today, your Honor.

11     MR. GIRARD:  I had notice of the taking of a deposition

12 in Oregon yesterday, and I called the attorney about it and he

13 said he had planned on going next week.

14     MR. STAHLMAN:  That is correct.  I received a similar

15 letter and talked to him and told him-- this was a letter I

16 received .  Is your Honor familiar with it?

17     THE COURT:  This is O'Malley's deposition?

18     MR. STAHLMAN:  Yes, to be taken in Oregon.  It was to be

19 taken yesterday.  I took the position and told him that I

20 didn't think that was sufficient notice of the taking of the

21 deposition, and if I knew more about what the evidence was maybe

22 we wouldn't desire to be there; but if he was going to take

23 the deposition a day prior to the time we appear in court, and

24 I expected to be here, that I certainly couldn't be in Oregon

25 yesterday.

1      THE COURT:  Did he take the deposition in Oregon yester-

2  day?

3      MR. STAHLMAN:  I don't know.  I asked him some questions

4  in relation to what the testimony would be.  He merely said

5  that this man had some historical knowledge of the diversion

6  up there.  I asked him whether or not the diversion was in

7  relation to the application of water to land which was riparian

8  and which was not.  He said he was not sure of that; he thought

9  it was riparian.  I said that if the diversion was in relation

10  to land which was riparian and he attempted to establish some

11  historial diversion, I wouldn't care to be at the deposition.

12  However, if it was the other way, it may be that we would

13  want to be there.

14      THE COURT:  Did you get notice of the taking of the

15  deposition?

16      MR. VEEDER:  I did, your Honor, and Mr. O'Malley advised

17  my office that the matter would be simply historical diversions

18  and uses, and I was going to ask your Honor to allow us to

19  take a subsequent deposition, depending on what Mr. O'Malley

20  elicited in the deposition.  I have no reason to object.

21  Certainly I am not going up there.

22      THE COURT:  Would this be a proper way to handle it?

23  See what he develops, and then if there is any problem we will

24  set a further deposition and those parties who desire may be

25  represented.

1   MR. VEEDER:  That was my thought, your Honor.

2   MR. STAHLMAN:  I would think so, yes.

3   THE COURT:  All right.

4   MR. STAHLMAN:  For the record, I will say that I told

5   Mr. O'Malley that if his deposition contained information that

6   we felt we had an interest in, I would object to the deposition

7   on the grounds that we had not had sufficient notice or

8   reasonable notice.

9   MR. VEEDER:  Did I understand you to say that Mr.

10  O'Malley said he wouldn't be ready to go on the 9th?

11  MR. STAHLMAN:  No.

12  MR. GIRARD:  He told me he would.

13  MR. VEEDER:  He would be?

14  MR. STAHLMAN:  I never discussed when he would be ready

15  to go.

16  MR. VEEDER:  Your Honor, at the last hearing here you

17  asked me to contact the parties, which I did, and reported to

18  you on those matters.

19  THE COURT:  I don't have your letter here.  What do we

20  have?

21  MR. VEEDER:  The circumstances are these.  Mr. O'Malley

22  advised me that he would be ready to go on the 9th, that he

23  thought he would take most of that week.  My own thought is

24  that perhaps he wouldn't, so I called Mr. Littleworth, and he

25  said that with some proper notice he would be ready to go

1   ahead with his clients the balance of the week of the 9th.

2   MR. STAHLMAN:  This letter I received from Best, Best

3   & Krieger, Mr. Veeder, says , "We will be prepared to proceed

4   on February 16, 1960."

5   MR. VEEDER:  Then later he said--

6   MR. GIRARD:  That week is out, according to the letter

7   your Honor sent us.

8   THE COURT:  Yes.

9   MR. VEEDER:  But he advised us that with some proper

10  notice he would be ready to go the balance of the week of the

11  9th.

12  So I think there is only one thing we can do in that

13  regard; find out how fast Mr. O'Malley is moving on the 9th.

14  In regard to the balance of this week--

15  MR. GIRARD:  Was Mr. Sachse planning to go ahead with

16  that part?

17  MR. VEEDER:  No, I am quite sure, from his letter, that

18  he indicates that March 1st is when he intends to go forward.

19  MR. STAHLMAN:  I didn't get that out of it.  Here is a

20  copy of his letter.

21  MR. VEEDER:  I didn't bring a copy of his letter to the

22  courtroom, but my understanding was that he wouldn't be ready

23  to go on any of that until March 1st.

24  THE COURT:  We have practically completed the Vail

25  evidence, except this matter on the Paube Well.  Why can't that

1   be put on?

2       MR. VEEDER:   I desire to have Mr. Vail here as a witness

3   in the case.

4       THE COURT: Is he available?

5       MR. STAHLMAN:  He will be the first of next week.

6       THE COURT:  He is not available this week?

7       MR. STAHLMAN:  No, your Honor.

8       THE COURT:  Is he still ill?

9       MR. STAHLMAN:  Well, he is up and around, but it is

10  necessary for him to go back and look at some of the records

11  in O'Melveny & Myers' office.  This happened sometime ago

12  and there was considerable correspondence in connection with

13  it, and there were other discussions.

14      THE COURT:   I break my neck here to give you a week when

15  we can do some work on this matter, and then get down on

16  Tuesday morning and all you are prepared to do is to lodge

17  some exhibits.

18      MR. STAHLMAN:  Your Honor, I indicated the last time that

19  we were in court-- it is clearly in the record-- that that was

20  the Vail evidence, with the exception of that well matter,

21  relative to the determination of the acreage, which is an

22  incidental matter, and the reservoir area of the dam.  I

23  thoroughly expected on receiving these letters that all these

24  other cases were ready and will go on this week.  The Vail

25  testimony will not take over half an hour.

1          THE COURT:  We can do it out of order.

2          Are you prepared, Mr. Veeder, to put on any evidence in

3     connection with this Vail showing?

4          MR. VEEDER:  No, your Honor.

5          THE COURT:  No evidence other than what is in the record?

6          MR. VEEDER:  Well, we are going to have rebuttal.  Your

7     Honor directed us to have it when this matter is concluded, as

8     I understand it.  If I remember your direction, the idea would

9     be that we would put in some more evidence in regard to the

10    geology and material like that.  But certainly until I hear

11    more on this Vail matter, I don't think it is proper for us

12    to go ahead.

13         MR. STAHLMAN:  You have put on no evidence in relation

14    to this particular question we have here, the question that

15    the Government raised relative to unjust enrichment.  You did

16    lodge a copy of a letter, and also the revocable permit for

17    drilling.

18         And then your Honor will recall the last time we were

19    here I had difficulty getting hold of the correspondence.

20    Since that time I went to Camp Pendleton and got copies.  They

21    were not copies from which I could make copies; they were

22    already copies.  I had to have the copies remade and have the

23    copies prepared, which I have here this morning.  I propose

24    to lodge them this morning and then follow them up by testimony.

25         But I would think they would have to put on testimony

1  in relation to this claim of unjust enrichment.  That is the

2  only way the Pauba well got into this case, by the claim made

3  in the brief by the Government.

4       THE COURT:  There is in the record the fact that there

5  is the Pauba Well.

6       MR. VEEDER:  Yes.

7       THE COURT:  There is in the record how deep it is.  There

8  is in the record that it was paid for by the United States.

9       MR. VEEDER:  Yes.

10       THE COURT:  I don't know whether the record shows what

11  it cost the United States.  But there is a record on the Pauba

12  Well.

13       MR. STAHLMAN:  Yes.

14       THE COURT:  Counsel can put on his case when he sees fit.

15       MR. STAHLMAN:  We propose to show that the Pauba Well was

16  drilled at the request of the Navy for purposes within their

17  own desires; that they spent the money with the object in mind

18  of getting information that they have supplied here in court;

19  that it was at their suggestion, and that they were to stand

20  the expense of it.

21       THE COURT: Just a moment.

22       (The court takes up another criminal matter.)

23       THE COURT:  After we finish with Mr. Hogan in this other

24  criminal matter, you may lodge these letters, get them marked

25  by the Clerk, the Government can look them over, and I propose

1    to spend this time some way.  I am going to hear argument some-

2    day on some of your contentions.  Maybe 2 o'clock this after-

3    noon when Mr. Sachse is here I will let you start to argue

4    some of this matter.

5            MR. STAHLMAN:  Very well.

6            THE COURT:  Does the State of California propose to

7    offer any evidence on this Vail judgment problem?

8            MR. GIRARD:  I haven't finally made up my mind, your

9    Honor.  If we do, the only evidence we would introduce would

10   be a brief chart or tabulation showing that the water pumped

11   by Navy and Vail has not corresponded to the measured alloca-

12   tion at gaging stations 6 and 3.  Some of that was referred to

13   in our brief.  But I rather doubt that we will prepare such an

14   exhibit, and if we do it would take not over five minutes, I

15   don't think, to go into it.  It would be taken entirely from

16   the records of the Navy.

17           THE COURT:  Mr. Veeder, do you propose to put on any other

18   proof?

19           MR. VEEDER:  In regard to the use of water?

20           THE COURT:  On this Vail judgment problem, other than

21   what you have in the record.

22           MR. VEEDER:  I have lodged with the Court the report in

23   regard to expenditures of money.  They show $50,000-plus.

24   There has been no objection to it by Mr. Stahlman, and I

25   assume by now he is not going to make any objection.  So that

11487

1   is the evidence.

2        THE COURT:   That would be the evidence?

3        MR. VEEDER:   That is right.

4        THE COURT:   Anyone else desire to put on any evidence in

5   connection with the problem of the Vail stipulated judgment?

6        MR. STAHLMAN:   As I have indicated the last session, this

7   is the evidence that we would put on; that we would, however,

8   rely upon other evidence in relation to usage upstream.   Your

9   Honor is familiar with that.   It will be developed later on.

10  I think, however, there is sufficient structure affecting the

11  judgment for your Honor to give consideration to it at this

12  time.

13       (Another criminal matter.)

14       THE COURT:   I see another lady in the courtroom.   Have

15  you come in in response to the letter sent out by the Court?

16       MRS. STREETER:   No, I didn't receive any letter.   I am

17  just interested in the case.

18       THE COURT:   In the Fallbrook case?

19       MRS. STREETER:   That is right.

20       THE COURT:   Do you have property in the area?

21       MRS. STREETER:   In the Riverside County up on the northern

22  part of it.   I understood that possibly that part of the

23  territory might be eventually just thrown out of the case.

24  I don't know whether that is just rumors or not.

25       MR. VEEDER:   If we are going to take a recess, she can

1   come into the office and we can locate your property, your

2   Honor.

3         THE COURT:   Yes.

4         You may talk to Mr. Veeder here and locate your property.

5         MRS. STREETER:   Yes, I would love that.

6         THE COURT:   Take a short recess.

7         Meanwhile, Mr. Stahlman, get those letters lodged, and

8   be back here at about 11 o'clock and see what we can do.

9   We may start to hear some argument on some of these matters.

10        MR. VEEDER:   Fine.

11        (Recess.)

12        (Another criminal matter.)

13        MR. VEEDER:   Your Honor, I talked to Mrs. Streeter.   We

14   located her property.   She advises that she wants a soil

15   survey, and I informed her that when that was accomplished

16   she would be notified. She is situated in an area where she

17   has a stream running across her land, or an intermittent stream,

18   joining Warm Springs Creek.   She doesn't want to relinquish

19   any rights or interest, and we will follow through ourselves

20   in regard to her interest.

21        MR. STAHLMAN:   Your Honor, this is the second time this

22   thing has happened where I am singled out and have been asked,

23   are you ready to proceed with evidence?   Mr. Veeder indicated

24   to your Honor, as stated this morning, why isn't Mr. Vail here?

25   I thought he was going ahead.   When you read the record as to

1   what we did when we were in court the last time, Mr. Vail was

2   not to come in until after the 16th of February.  Furthermore,

3   as to what we were to do here today was discussed at that time,

4   and it was not anything pertaining to the Vail testimony.  So

5   I think to put the onus on me that I should be the one who is

6   ready, let's go to the record and see what happened.

7        THE COURT:  I didn't understand that you were all through

8   except for proof on the Pauba Well.

9        MR. STAHLMAN:  It is right in here, your Honor.  Mr.

10  Veeder then said, "How about Mr. Vail?" We have passed the

11  2nd and we are up to the 16th.  And then your Honor said, that

12  at that time I think Mr. Vail should be ready, and that is in

13  the record here.  That was the indication as to the time when

14  Mr. Vail would be heard, after the 16th.  The rest of the

15  period of time your Honor indicated additional other matters

16  would be heard.  It is here in the record as to what would be

17  heard on the 2nd.  There is nothing in connection with Vail.

18  It is in connection with the matters upstream, some of Mr.

19  Sachse's clients-- the Stardust ranch and the situation there,

20  and nothing on Vail.  And I indicated the last time we were

21  here that that was all except the testimony of Mr. Vail.  Then

22  it clearly indicates that Mr. Vail was anticipated to come on

23  after the 16th of February.

24       THE COURT: Well, let's not cry about spilt milk.

25       I take it-- this is an assumption, but I take it that

1    when we take further proof we are going to find there are wells

2    upstream of the Vail Rancho?

3         MR. VEEDER: That is correct.

4         THE COURT:  Do you have any calculated estimate what

5    those wells are presently?  Is there any proof in the record?

6         MR. VEEDER:  Yes, your Honor, there is a great deal of

7    evidence that went into the record in regard to the overall

8    geology.

9         THE COURT:  Yes, but I am talking about the specific

10   wells and whether or not they were developed after the

11   stipulated judgment.

12        MR. VEEDER:  In regard to the dates of those wells, your

13   Honor, I think that the well logs will show in regard to a

14   great many of them as to when they were dug or drilled.

15        THE COURT:  What I am going to suggest is this, that we

16   start in at 2 o'clock and have some argument on the legal

17   problems involved.  We are going to have to argue this out.

18   And I take it, having written some briefs, you are all prepared

19   to talk about it. And it will be argued on a very broad

20   assumption that it is not decided until we get the further

21   proof, but that there are wells upstream of Vail and that

22   probably some of these wells upstream of Vail have been de-

23   veloped since the date of the stipulated judgment.

24        MR. VEEDER:  I don't know the exact dates, your Honor.

25        THE COURT:  I would imagine there would be some wells

1    there.

2          MR. VEEDER:   I would assume so.

3          MR. STAHLMAN:   The last time we were in court they said

4    they were going up to measure these wells.

5          MR. VEEDER:   Yes.

6          THE COURT:   Are any of those measurements available?

7          MR. VEEDER:  Those measurements are not available at this

8    time, your Honor.

9          THE COURT:   When could they be available?

10         MR. GIRARD:    There might be a possibility that Mr.

11   Sachse could go on with some evidence later on this week.

12         THE COURT:   I take it that the Government doesn't propose

13   to offer any particular evidence in rebuttal here; that they

14   are going to rely upon the other evidence in the record.

15         MR. VEEDER:  That is correct.

16         THE COURT:   No particular evidence in rebuttal.

17         MR. VEEDER:   That is correct.

18         THE COURT:   Then I will excuse you until 2 o'clock, and

19   be back here and we will hear some argument on the Vail judg-

20   ment.

21         MR. GROVER:   Mr. Sachse wrote me after your last hearing

22   and stated you wanted to know today when we would be prepared

23   to go on and how long it would take.

24         THE COURT:   Whom do you represent?

25         MR. GROVER:   Gibbon and Cottle, upstream from the Vails.

1    I can talk to you about that this afternoon or now, whichever

2    you prefer.

3         THE COURT:  When can you go forward?

4         MR. GROVER:  I would like to go forward the latter part

5    of March, your Honor.

6         MR. VEEDER:  He is getting married, your Honor.

7         THE COURT:  You want to have your honeymoon first?

8         MR. GROVER:  I would like to have it somewhere near the

9    wedding, and that is the 23rd of February.

10        THE COURT:  In that connection, Judge Chambers has taken

11   quite an interest in our problem at San Diego and he is send-

12   ing a visiting judge for the next two weeks, and he also asked

13   me if I could use a visiting judge in March, and I told him

14   that I did anticipate that probably this Fallbrook matter

15   would be adjourned again into March, and that might be a good

16   time to get a visiting judge in here to relieve me of these

17   other duties.  So I think probably we can give you some date.

18        How long will you be gone after February 23rd?

19        MR. GROVER:  A couple weeks, and then I would like to

20   have a little time after I get back to catch up.

21        THE COURT:  I would think, tentatively, that I would

22   shoot for a continuance of this case until about March 15th

23   and maybe put some other matters in that first week and let

24   you start the week of the--

25        MR. GROVER:  21st.

1     THE COURT:  Well, whatever it is.

2     MR. GROVER:  Yes, the 21st is Monday.  Tuesday would be

3  the 22nd.

4     THE COURT:  Something like that.

5     MR. GROVER:  That would be fine.

6     THE COURT:  We will talk about it.  That is just

7  tentative.

8     MR. GROVER:  All right.

9     THE COURT:  And it will still be tentative until I hear--

10  well, I would have to go ahead and set it, and then hope I

11  will get a chance to go ahead.

12     MR. GROVER:  Was it your idea that we talk about it this

13  afternoon?

14     THE COURT:  Yes.

15     MR. GROVER:  All right, I will be back then this after-

16  noon.

17     THE CLERK:  Your Honor, Vail's Exhibits AR-1 through

18  AR-10 have been marked for identification.

19     MR. VEEDER:  May I have copies?

20     MR. STAHLMAN:  They were taken out of your files.  I

21  got them from you.

22     MR. VEEDER:  I don't know which ones you took out.

23     MR. STAHLMAN:  You people took them out and sent them to

24  me.  I will see that you get a copy.

25     THE COURT:  Make him a copy.

1      You have a machine downstairs.  Put Mr. Stahlman to work

2  and have some copies made.

3      MR. VEEDER:  If your Honor can't, how can I?  But that's

4  all right.

5      MR. STAHLMAN:  I will give him back the copies he gave

6  me, if he wants to use those.

7      THE COURT:  Get some copies made for counsel and for

8  the Court.

9      We had a judge's meeting yesterday.  I didn't get my

10  sentence calendar taken care of.  We have a sentence calendar

11  at 2 o'clock.  It will take me until about 3:30.

12      How many are there, Mr. Clerk?

13      THE CLERK:  Fifteen, your Honor, and a further court

14  trial in the Claybourne case.

15      THE COURT:  Would you rather come tomorrow morning?

16      MR. GIRARD:  Myself, no, your Honor.  I would rather

17  wind it up, being as I flew down last night.

18      THE COURT:  Well, stay here.  You can go down to Tijuana

19  or over to Coronado.

20      MR. GIRARD:  It's too wet to play golf.

21      THE COURT:  I think I will put it over until tomorrow

22  morning.  By the time I get through with this calendar, you

23  would barely get started this afternoon, and I am not going to

24  run all night on this.

25      MR. STAHLMAN:  Certainly wouldn't be anything to look

1  forward to, to hear us after you spend all that time on the

2  calendar.

3      THE COURT:  Mr. Grover, would you like to have some

4  tentative date set, so that you can be excused?

5      MR. GROVER:  Yes, and then if you would like to change

6  it I can be in touch with you and the attorneys.

7      THE COURT:  What do you gentlemen think about the last

8  two weeks in March?

9      MR. GROVER: Actually, we don't anticipate it will take

10  us a great deal of time.  I would say maybe a couple of days.

11  It depends on the way the cross-examination goes more than

12  anything.

13      MR. VEEDER:  May I inquire, Mr. Grover, you are aware

14  of the Oviatt trial next week?

15      MR. GROVER:  I heard about it this morning.

16      THE COURT:  You might get in touch with Mr. O'Malley

17  and let us be sure he is ready to go next week.

18      MR. VEEDER:  I will call him.

19      I thought you would probably want to be here.

20      MR. GROVER:  I would like to be here, yes.

21      MR. VEEDER:  I will call Mr. O'Malley this afternoon,

22  your Honor.

23      THE COURT:  Let us tentatively say the weeks of March

24  15th and March 22nd and see what work we develop and we may

25  eliminate the 15th if we don't have anything left on the part

21496

1  of Mr. Grover.  But I will set them aside and see what we de-

2  velop.

3      MR. GROVER:  I will be ready on the 22nd, your Honor.

4      THE COURT: All right, 10 o'clock tomorrow morning.

5      MR. VEEDER:  May I withdraw the exhibits for reproduc-

6  tion?

7      THE COURT:  You may.

8      (Adjournment until Wednesday, February 3, 1960, at 10

9  o'clock A.M.)