# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

### HONORABLE JAMES M. CARTER, JUDGE PRESIDING

— — —

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT,
et al.

Defendants.

No.   1247-SD-C

---

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:        San Diego, California

Date:

Tuesday, April 5, 1960

Pages:  12,955 to 13,093

# FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____  Deputy

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

— — —

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

— — —

UNITED STATES OF AMERICA, )
)
        Plaintiff, )
)
    vs. )       No. 1247-SD-C.
)
FALLBROOK PUBLIC UTILITY )
DISTRICT, et al., )
)
       Defendants. )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California
Tuesday, April 5, 1960

APPEARANCES:

FOR THE PLAINTIFF        WILLIAM H. VEEDER, ESQ.,
Special assistant to the
Attorney General,
Department of Justice,
Washington, D. C.

LCDR. DONALD W. REDD

1    APPEARANCES (Continued)

2         For Defendant Fallbrook                    FRANZ R. SACHSE, ESQ.
          Public Utility District,
3         El Al.

4         For Defendant Vail
          Company                                    GEORGE STAHLMAN, EDQ.
5                                                     EARL K. STANTON, ESQ.

          For Defendant State
6         of California                              STANLEY MOSK, ESQ.,
                                                     Attorney General,
7                                                    By FRED GIRARD, ESQ.,
                                                        Deputy Attorney General
8         For Defendants
          Barnett, et al.,                           MESSRS. BEST, BEST &
9                                                    KRIEGER, By JAMES H.
                                                     KRIEGER, ESQ.
10

11

12

13

14

15

16

17

19

19

20

21

22

23

24

25

# INDEX OF WITNESSES

| For the Defendants: | D | X | RD | RX |
|---|---|---|---|---|
| Thomas V. Cecchettini | 12,966 | | | |
| Louis Wright, Jr. | 12,990 | | | |
| Cecil C. Dutton | 13,009 | | | |
| Irvin Tarwater | 13,015 | | | |
| Mike Mance | 13,023 | | | |
| George C. Contreras | 13,028 | | | |
| Gordon D. Mouse | 13,029 | | | |
| Russell o. Freeman | 13,030 | | | |
| Abraham Margolis | 13,032 | | | |
| Moses E. Perry | 13,034 | | | |
| Karl Rieder | 13,036 | | | |
| Silas M. Hathaway | 13,038 | | | |
| Carlington Cain | 13,039 | | | |
| Fred G. Mays | 13,043 | | | |
| James David Buchanan | 13,044 | | | |
| Cary W. Carr | 13,045 | | | |
| Alfred W. Tordoff | 13,049 | | | |
| Dovie Sykes | 13,050 | | | |
| Howard H. Sykes | 13,054 | | | |
| Charles F. Philo | 13,055 | | | |
| C. W. Fillingame | 13,057 | | | |
| Paul H. Thompson | 13,059 | | | |
| Oscar R. Rail | 13,064 | | | |

12,956-b

1

# INDEX TO WITNESSES (continued)

2

For the Defendants:                          D          X          RD          RX

3      A. C. Bowen                    13,068

4      Oscar R. Rail                  13,079
         (resumed)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

12,956-c

# INDEX TO EXHIBITS

| For the Plaintiff: | For Identification | In Evidence |
|---|---|---|
| 207-D | 12,969 | 12,987 |
| 15-E | 13,001 | |
| 235 | 13,016 | 13,016 |
| 236 | 13,016 | 13,016 |
| 237 | 13,026 | 13,026 |
| 238 | 13,027 | 13,027 |
| 239 | 13,027 | 13,027 |
| 239-A | 13,027 | 13,027 |
| 240 | 13,039 | 13,042 |
| 16-A-162 | 13,042 | 13,042 |
| 16-A-163 | 13,042 | 13,042 |
| 241 | 13,067 | 13,067 |
| 242 | 13,067 | 13,067 |
| 243 | 13,068 | 13,070 |
| 244 | 13,071 | 13,073 |
| 245 | 13,076 | 13,077 |
| 246 | 13,077 | 13,078 |
| 247 | 13,078 | 13,079 |
| 248 | 13,080 | 13,080 |
| 249 | 13,080 | 13,081 |
| 250 | 13,081 | 13,081 |
| 251 | 13,081 | 13,082 |
| 252 | 13,082 | 13,083 |

12,956-d

1            <u>INDEX TO EXHIBITS</u> (continued)

2 <u>For the Plaintiff:</u>      <u>For Identification</u>      <u>In Evidence</u>

3        253              13,086            13,086

4        254              13,086            13,086

5                  * * * * * * *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   <u>San Diego, California, Tuesday, April 5, 1960, 9:30 A.M.</u>

2

3        (Other matters.)

4        THE CLERK:   21-1247-SD-C United States versus Fallbrook.

5   Further court trial.

6        MR. VEEDER:   May we proceed?

7        MR. SACHSE:   Your honor, I have a few transcript correc-

8   tions, if I may.  Some are rather important.  Are you ready to

9   discuss them?

10       THE COURT:   Let's take up the transcript corrections

11   this afternoon.

12       MR. SACHSE:   All right.

13       THE COURT:   I haven't my volume here now anyway.

14       MR. VEEDER:   As your Honor will observe, there are a

15   great many people in from the Murrieta country in response to

16   your Honor's letter asking them to be here on April 5 and 6.

17       THE COURT:   Yes.

18       MR. VEEDER:   It is my recommendation, your Honor, that

19   each owner should be requested to state into the record his

20   presence, and if we could do that now I think it might save

21   some time.  We are handling the matter this way -- and this is

22   with all respect to Mr. Krieger, who would like to go ahead

23   himself -- but there are things that I think I should bring to

24   your Honor's attention.  We have worked out in my office a pro-

25   cedure that I think is coming along satisfactorily, and if these

1 people disagree with me I would like to have them state it to

2 your Honor.

3      What we are doing is identifying thier parcels of land,

4 stating to them the total acreage which we have found, in our

5 view, to be their total acreage, showing them the irrigable

6 acreage, and then the non-irrigable acreage, and where there is

7 disagreement we stipulated in effect with them that Col. Bowen

8 will check out the acreage to see if agreement cannot be reached.

9 I will say that in 99 and 44 one hundredths percent of the cases

10 there is agreement.

11      THE COURT:  Then in addition to that we have the evi-

12 dence on geology of the Murrieta Valley, and as far as these

13 people's properties are concerned where they lie between the

14 two fault lines there is no argument but that there is a basin.

15      MR. VEEDER:  I believe that is correct in every instance,

16 your Honor.  I know of no instance that has come to our atten-

17 tion yet where it can't be said that they are overlying or at

18 least partially overlying the lands of the Murrieta.  When we

19 say "Murrieta Basin" I am alluding to the areas between the

20 Wildamar and the Elsinore Faults.

21      THE COURT:  I think that is the way to proceed.

22      Mr. Krieger; we are sorry, but we have to take care of

23 these people we have asked to come in here.

24      MR. KRIEGER:  I understand, your Honor.

25      THE COURT:  Starting in the back row, the land owners

1    who have come in stand up and give us your names.

2         MR. MANCE:  Mike Mance.

3         THE COURT:  The Clerk will take them down.

4         The next man.

5         MR. MARGOLIS:  Abraham Margolis.

6         THE COURT:  The next one.

7         MR. CAIN:  Carl Cain.

8         MR. PETERS:  A. L. Peters.  I acquired the Leslie pro-

9    perty.

10        MR. RIEDER:  Karl Rieder.

11        MR. CARR:  Cary Carr.

12        THE COURT:  The next one.

13        MR. SYKES:  Howard Sykes.

14        THE COURT:  The next one.

15        MR. PHILO:  Charles Philo.  I am appearing for my mother.

16   She is ill in the hospital.

17        THE COURT:  What is your mother's name?

18        MR. PHILO:  Kate D. Philo.

19        THE COURT:  Next man.

20        MR. FILLINGAME:  C. W. and Elizabeth S. Fillingame.  I

21   own the property that George and Donald E. Russell owned.  I

22   have owned it since the first of the year.

23        THE COURT:  The first of 1960?

24        MR. FILLINGAME:  Yes, your Honor.

25        THE COURT:  What was Russell's first name?

1        THE WITNESS:  George Russell and Audrey Darlene Russell.

2        THE COURT:  Let's take the front row.  Is there anyone

3   here in the front row who are property owners?

4        MR. TARWATER:  Irvin Tarwater.

5        THE COURT:  Do I have a letter from you?

6        MR. TARWATER:  You have a letter from my boy, probably.

7   I have a copy of it.

8        THE COURT:  I have a letter from Lt. Col, D. W. Tarwater

9   that stated that you would appear and represent his interest.

10  Do you own any property yourself?

11       MR. TARWATER:  I have an interest in the property, your

12  Honor.

13       THE COURT:  You have an interest in the property and

14  your son has an interest in it?

15       MR. TARWATER:  With others also.

16       THE COURT:  The next man.

17       MR. PERRY:  Moses E. Perry.

18       MR. DUTTON:  C. C. Dutton.

19       THE COURT:  Next?

20       MR. CECCHETTINI:  Thomas V. Cecchettini.

21       THE COURT:  The lady.

22       MRS. SYKES:  Dovie Sykes.

23       MR. CONTRERAS:  George C. Contreras.

24       MR. WRIGHT:  Louis L. Wright, Jr.

25       MR. FREEMAN:  Russell O. Freeman.

1          MR. HOUSE:  Gordon M House.

2          MR. HATHAWAY:  Silas M. Hathaway.

3          MR. BUCHANAN:  James Buchanan.

4          MR. MAYS:  Fred Mays.

5          MR. TORDOFF:  Alfred W. Tordoff.

6          MR. ELSENPETER:  Clifton Elsenpeter.

7          THE COURT:  Anyone else who has appeared in response

8    to the letter sent out by the Court or who has come in and has

9    property in the Murrieta Valley?

10         MR. THOMPSON:  I have property in the Murrieta Valley,

11   but I was supposed to appear tomorrow.

12         THE COURT:  We will take your case now.  We might get

13   around to you.  What is your name?

14         MR. THOMPSON:  Charles H. Thompson.

15         MR. VEEDER:  For the record, if that is everyone, I would

16   to state for the record that letters have been returned from

17   Margaret Smith Patterson, Alice Peterson, Henry M. Smarildason,

18   Elsie Jean Wallace, Ivan S. Kauffer.  We will check and see if

19   we can find the owners of those.

20         THE COURT:  When you say that letters have been re-

21   turned you mean the mailing that was sent out by the Court has

22   come back undelivered?

23         MR. VEEDER:  That is correct.  We will check further on

24   those, your Honor.

25         THE COURT:  Add to that list one that came back to me

1    addressed to Albert W. Becker and Peggy J. Becker. I will

2    hand it to you Mr. Veeder.

3        MR. VEEDER:   Thank you.

4        We have talked by phone to Irma Malone and Nettie M.

5    Lloyd.  We have outlined to them their interests and they have

6    been excused by you from appearing today.

7        There was a Mr. Mack Stone who was in my office this

8    morning.  We showed him his acreage.  He had ten acres of land,

9    ten of which we found to be irrigable.  He agreed that that was

10   correct and we agreed with him as to what he said about his

11   property.

12       THE COURT:   Can't we take these up where we have some

13   agreements when we have the description and the lot number and

14   all?

15       MR. VEEDER:   But this man said that he had some kind of

16   business where he had people waiting for him.  I told him that

17   as long as there is agreement between him and the United

18   States we would go into the record and say there was such an

19   agreement and that that would take care of his appearance,

20   if that is all right with your Honor.  He was the only one

21   in that status.

22       THE COURT:   But don't you want something more than

23   just his name?  Or is that sufficient?

24       MR. VEEDER:   Yes, because his title and the location

25   of his property, the parcel number appears in the series of

1    exhibits marked 207A et cetera. So there is no question about

2    the evidence being in, your Honor.

3         THE COURT: Are you taking it up now, or are you telling

4    me you are going to take it up later?

5         MR. VEEDER: I am going to take it up later, your Honor.

6    I just wanted the record clear that this man did appear pur-

7    suant toyour Honor's direction.

8         THE COURT: In addition to the letter from Lt. Col.

9    Tarwater, I have a letter from Melvin N and Margaret F. Brown,

10   who say they cannot appear.

11        MR. VEEDER: If you will give me the letter I will con-

12   tact them, your Honor.

13        THE COURT: And one from Ray Bzanson, of Murrieta, ask-

14   ing leave to be excused from appearing and supplying certain

15   information.

16        I will hand you the letters, Mr. Veeder.

17        MR. VEEDER: Thank you, your Honor.

18        Now, I can give you the names of the parties, your Honor,

19   who have discussed their acreages with me. I think that we

20   could have them remain in the courtroom and I would like to have

21   them on the stand and then state whether there is agreement with

22   what we have done. The remaining people could go to my office

23   and Cdr. Redd can help them locate their property and show

24   them the irrigated and irrigable acreage, and that way if it is

25   agreeable with your Honor --

THE COURT:  Ask them to come back in later.

MR. VEEDER:  Yes, your Honor, if that is agreeable.

THE COURT:  While we are at it, let's swear them all as witnesses at one time.

Will all the people who gave us their names stand up, raise their right hands and be sworn as witnesses in the case?

(Whereupon the parties heretofore listed were by the Clerk duly sworn.)

THE COURT:  Do you have their names, Mr. Clerk?

THE CLERK:  Yes, your Honor.

THE COURT:  Will you give us the names of those who have already discussed it with you, so that we can excuse the rest to see Cdr. Redd.

MR. VEEDER:  Thomas V. Cecchettini, Louis L. Wright, Gordon B. Mouse, George Contreas, Russell O. Freeman, Free G. Mays, James D. Buchanan, Abraham Margolis, Cary M. Carr, Moses E. Perry, Mike Mance and Irvin K. Tarwater.  If those people to whom I have just referred would stay in the courtroom we would call them as witnesses and interrogate them.

THE COURT:  Before the remaining people leave, do they know where your office is?

MR. VEEDER:  I believe they do, your Honor -- Room 303.

THE COURT:  It is on this third floor.  As you complete your discussion with Cdr. Redd, come back to the courtroom.

MR. VEEDER:  Would Mr. Cecchettini take the stand.

1      THE COURT:  Do you have an extra copy of your plan we

2  are going to be working from?

3      MR. VEEDER:  Yes, I do, your Honor.  I really don't

4  know how much assistance it will be to your Honor.  The pro-

5  perties are set up, as you will see, by blocks from the

6  Assessor's maps.

7

8                  THOMAS V. CECCHETTINI, JR.

9  one of the defendants, having been first duly sworn, on his

10  oath was examined and testified as follows:

11

12      THE CLERK:  State your name, please.

13      THE WITNESS:  Thomas V. Cecchettini.

14      THE COURT:  Before you proceed, it would seem to me

15  that these following items ought to be covered in the record:

16  First, whether the defendant has an answer on file or not,

17  and whether he is appearing pro per; second, whether you are

18  satisfied with the legal description, irrigable acres, general

19  location, I suppose.  How do you plan to proceed?  Something

20  like that?

21      MR. VEEDER:  In regard to Mr. Cecchettini here, we have

22  already talked with him about it.  We have checked through the

23  irrigated and irrigable acreage.  We have referred to the land

24  description.  He has an answer.  I think there is some slight

25  disagreement in regard to the acreage.  I would like to have

1  state it into the record, and we have agreed that Col. Bowen

2  will check it out further to the end that if there can be

3  complete agreement we will stipultte with him.

4       THE COURT:  Stipulate with him as to what?

5       MR. VEEDER:  I say if there is agreement as to what

6  the irrigable acreage is, and I think we can agree, we would

7  put a stipulation in the record that there is no disagreement.

8  I don't want to ask him to come back.  That is the proposi-

9  tion.  If your Honor has some disagreement as totthat procedure--

10       THE COURT:  Except this.  In this case, unless stipu-

11  lations are made in open court where the persens present can

12  be heard, I don't think a stipulation means very much.

13       MR. VEEDER:  May we proceed with this case?

14       THE COURT:  Proceed.

15       MR. VEEDER:  I think he can outlinee better as we go

16  along.

17       THE COURT:  All right.

18

19                   DIRECT EXAMINATION

20  BY MR. VEEDER:

21       Q Are you the Thomas V. Cecchettini who filed an answer

22  claiming in connection with certain lands in the Murrieta Valley?

23       A  Yes, I am.

24       Q  And would you state into the record the total acre-

25  age that you claim to be your property?

1          A   The total acreage of our particular property is 108,

2    as stipulated of course in the deed of trust or the title.

3          Q At the present time are you farming those lands?

4          A   We are farming approximately 73 acres, which is now

5    under permanent pasture, which of course is being irrigated

6    with overhead sprinklers -- a portable sprinkler system, and

7    we are now in the process of clearing an additional 30 acres

8    of brush land and one piece that is particularly steep but is

9    irrigable, which would give us a total of right around 103

10   acres of land under irrigation.    We also have in addition

11   to that particular piece the properties pbordering on the Vail

12   property line, which appears to be steep and is covered with

13   brush.  However, withoour present irrigation system we would

14   be able to irrigate that also.

15          THE COURT:  Is this additional land that you own?

16          THE WITNESS:  No, sir.  This still comprises the 108

17   acres.  My computation or calculation relative to the entire

18   acreage that is now under irrigation and that we are clearing

19   for future irrigation may be off.  I discussed this also with

20   Mr. Veeder this morning that although we shot a survey our-

21   selves we came up withaa little different acreage than was

22   stipulated in the title to the property.  However, for all

23   practical purposes, the property is designated as 108 acres.

24          MR. VEEDER:  In that regard, your Honor, I think we

25   had better follow this procedure.  We have prepared what we

1   consider to be irrigable and irrigated acreage in this area.

2   We have it in tabular form, showing the parcel numbers which

3   appear in the Exhibit 207B - 2.

4           THE COURT:   What is that?

5           MR. VEEDER:   Your Honor, that is the Assessor's numbers.

6   I will read the whole title so that your Honor will have it

7   and then I will hand it to your Honor.   "Riverside County Sub-

8   divisoon Murrieta Eucalyptus Company Tract Temecula Land Water

9   Company Townsite of Murrieta."   We have designated those lands

10  based upon the map which your Honor has before him.   The

11  particular parcels that are here involved, your Honor, are

12  Parcels 20-14-65 and 20-4-66, which you will find on there.

13          MR. KRIEGER:   Is there any way we could follow that,

14  your Honor?   Is this the only map where we could follow the

15  location of this property, or is there another one we could

16  put on the board?

17          THE COURT:   There is one in evidence.   This is just

18  an extra one.

19          MR. STAHLMAN:   What is the exhibit number of the map?

20          THE CLERK:   207C-2 was the last t207 series.

21          MR. VEEDER:   This is the map.   This is Exhibit No. 207-C-1

22  which your Honor has here.   Would you want that put on the board?

23  I am sure your Honor has a copy of this.   I agree with Mr.

24  Krieger.

25          THE COURT:   I don't have a copy, I don't think, Mr. Veeder.

12969

1    I don't think I got any copies of that 206 and 207 series.

2         Put it on the board.

3         MR. KRIEGER:  May we do that?

4         THE COURT:  Yes.

5         MR. VEEDER:  I would like to have this marked the next

6    number in the 207 series.

7         THE CLERK:  Plaintiff's Exhibit 207-D, your Honor.

8         THE COURT:  Do you have an extra copy of this document

9    you have just marked 207-D?

10        MR. VEEDER:  I am sending for one, your Honor.

11        Now, if you will observe, these are the parcels at the

12   bottom of the page, concerning which we are now inquiring --

13   Parcels 65 and 66.  Those parcels are shown on Plaintiff's

14   Exhibit 207-B-2 at page 24.  Now, on your Plaintiff's Exhibit

15   207-D, which your Honor has now before him and which I have not

16   yet offered, will be found the irrigable, the non-irrigable and

17   the total acreage as determined by Col. Bowen and tabulated in

18   207-D-4, and we will get you a copy.

19        MR. STAHLMAN:  I wonder if you can explain your system

20   so that we can follow it.  You have a lot of exhibits and tab-

21   ulations here.  How do they lace together?

22        MR. VEEDER:  The series which we have for the purpose of

23   cross-referencing and the purpose of determining the ownerships,

24   we have t207-A, which is an alphabetic list of all the defen-

25   dants in the Murrieta Valley whose properties are located in

1    the areas concerning which evidence is going in today.  Exhibit

2    207-C-1 is the tract map of the Murrieta area.  Now, it is

3    important to observe that these lands are not by legal subdivi-

4    sion, so it is extremely difficult unless you do have a key.

5    Now it is possible by referring to the name of the party which

6    appears in 207-A to find the parcel number by simply running

7    down through these names.  From there you can turn to 207-B-2

8    and you will find there the legal description plus the name

9    of the defendant.

10        THE COURT:  You said legal description.  That is the

11   actual legal description?

12        MR. VEEDER:  That is the actual written out legal des-

13   cription, your Honor.

14        Now, your have there a means of locating the property.

15   By turning to 207-D, which is just now marked for Identifica-

16   tion, it is possible to determine the irrigable, the non-

17   irrigable and the total acreage of each tract of land.

18        Is that clear enough?

19        MR. STAHLMAN:  That is the one you presented this morn-

20   ing?

21        MR. VEEDER:  That is right.

22        While Col. Bowen and everybody is here I would like to

23   offer in evidence Plaintiff's Exhibit 207-D.

24        MR. STAHLMAN:  What is that?

25        MR. VEEDER:  That is the tabulation of irrigable and

1    irrigated and total acreages for each parcel of land.

2         Col. Bowen has been sworn.  I would like to hvve him

3    take a look at 207-D and I will ask him if that 207-D marked

4    for Identification was prepared under his direction.

5         COL. BOWEN:  It was.

6         THE COURT:  Mr. Veeder said hach parcel of ground.

7    This is within a certain limited area.  How would you define

8    the area, Colonel?

9         COL. BOWEN:  This tabulation, your Honor, is entitled

10   "Riverside County Subdivisions" and tabulations are by parcel

11   number, acreage within the parcels depicted on Plaintiff's

12   Exhibit 207-C and within the crest of the watershed of the

13   Santa Margarita River which appears at the irregular solid line

14   to the left of 207-C.

15        THE COURT:  These tabulations of irrigable and non-irri-

16   gable acreage and total acreage are accurate, to the best of

17   your information and belief?

18        COL. BOWEN:  Yes, sir.

19        MR. VEEDER:  We offer in evidence Exhibit 207-D, your

20   Honor.

21        MR. KRIEGER:  May I ask a question, your Honor?  I was

22   going to ask Mr. Veeder a minute ago, but I can ask Col. Bowen.

23        What part of the Murrieta watershed or Murrieta Creek

24   does this 207-C purport to depict when related to Roripaugh's

25   Exhibit B?

1    COL. BOWEN:   It depicts that area that is shown within

2  the old Grant Line, Mr. Krieger.

3    MR. KRIEGER:   What section?

4    COL. BOWEN:   The Little Temecula, the Temecula, and

5  if I may refer to 207-C, Rancho La Laguna, plus a portion of

6  the Santa Rosa in the addition of Wildemar, plus a portion of

7  the Sedco tract.   This area has not been surveyed and included

8  within the United States's cadasteral survey.   Hence it is not

9  sectionized.

10    MR. KRIEGER:   Does the Elsinore fault line run through

11 any part of this?

12    COL. BOWEN:   This is in essence the top of the valley.

13 The southerly line on 207-C is largely the Santa Rosa grant

14 line.   You will note that north is to the upper left-hand cor-

15 ner on 207-C.   The town of Temecula is shown on the right,

16 Murrieta in the center, and Wildemar on the left.   It includes

17 basically the Murrieta Valley.

18    MR. VEEDER:   If you can point out the Roripaugh property

19 it might be helpful.   Here is Banana Avenue.

20    COL. BOWEN:   Highway 395 is shown on 207-C from the low-

21 er right continuing passed the town of Temecula and leading in

22 the upper center of 207-C.   Banana Avenue, or Winchester Road

23 as it is now known, is shown as it joins U.S. 395 near Santa

24 Gertrudis Creek, which is also depicted on 207-C.

25    THE COURT:   Counsel, these exhibits have been on file a

1  long time and you have all had a chance to study them.  I think

2  if you are interested in more detail you can do it after court.

3      MR. KRIEGER:  The other day when we were here, our

4  cases pointed out that certain land that lay southwest of the

5  Elsinore fault line were not to be considered part of the

6  stream system.  I am trying to identify whether the Elsinore

7  fault does run into any part of this Exhibit 207-C or if it

8  all to the northeast of that fault line.  But I have no objec-

9  tion to it.  That is all I wated to find out from Col. Bowen.

10  But if it cuts through any of those fault lines in 207-C

11  we ought to have that identified.

12      MR. VEEDER:  We can all stipulate that that is not

13  a geological map.

14      THE COURT:  I don't think you get counsel's point.

15  This interests me.  You say this area has never been laid out

16  in sections and townships?

17      COL. BOWEN:  That is correct.

18      THE COURT:  How are legal descriptions written?

19      COL. BOWEN:  They are written by these block and lot

20  numbers -- metes and bounds.

21      MR. VEEDER:  I will hand you 207-B-2.  There are T Parcels

22  65 and 66.  If you will look on that page Col. Bowen can locate

23  them for you on 207-C.

24      THE COURT:  It starts out "That portion of Block 201

25  Temecula Landwater Company Subdivision.."

1      MR. VEEDER:  He has his finger on it.

2      THE COURT:  So the Temecula Land and Water Company Sub-

3  division is a recorded map in Riverside County?

4      MR. VEEDER:  That is right, your Honor.

5      COL. BOWEN:  Yes, sir.  And the outer perimeters of that

6  area, Temecula Land and Water Company, is shown by this solid

7  line, and this is the Vail Ranch line.

8      THE COURT:  So within the blocks the descriptions are by

9  metes and bounds?

10      COL. BOWEN:  Yes, sir.

11      THE COURT:  Or parts of a block?

12      COL. BOWEN:  Yes, sir.

13      THE COURT:  And these other maps are also of record, such

14  as Pauba Land and Water Company?

15      COL. BOWEN:  Yes, sir.

16      THE COURT:  And Murrieta Eucalyptus Company's tract?

17      COL. BOWEN:  Yes, sir.   Sedco Tract No. 1, Rancho La

18  Laguna, Santa Rosa, and Wildemar.

19      MR. VEEDER:  Let the record show, your Honor, that I am

20  now delivering to you a copy of Exhibit 207-C, which is the

21  map upon the board, and Exhibit 207-D, which will give you the

22  irrigable and total acreages.

23      MR. STAHLMAN:  My question is in relation to Exhibit 207-D,

24  which you filed this morning.

25      Col. Bowen, as an example, using Exhibit 207-D in

comparison with the map Exhibit 207-C, I think page 40 where

it says "San Francisco Savings Union Subdivision Parcel number

how do you locate that on the map?

COL. BOWEN:  You can't locate it on 207-C by this parcel

number that appears in 207-D.

MR. STAHLMAN:  How is it done?

COL. BOWEN:  We go to the alphabetical list, Exhibit 207-

and we find the San Francisco Savings Union Subdivision -- I

refer to Plaintiff's Exhibit 207-B-2, Mr. Stahlman, and on the

last few pages, pages 337 and 338, appear Parcel 20-6-730 and

it describes it as that portion of Lots 1 and 2 of San Francis-

co Savings Union Subdivision et cetera.  Referring to 207-C

we would look for Assessor's Plat No. 20-6, which is included

within the Temecula Land and Water Company, and it says "Lots

1, 2 and 6," which appear on 207-C as the numbers within the

block near the Antelope Road -- 1, 2 and 6.  And similarly for

Parcel No. 731.  That description is shown on page 338 of

Exhibit 207-B-2 that describes other portions of Lots 1, 2 and

6 in Block 20-6 as depicted on 207-C.  Similarly on 338, of

207-B-2 our Parcel No. 732 describes the northeast quarter of

Lot 4 lying within Block 20-6, and Lot 4 is depicted on 207-C.

MR. STAHLMAN:  What are the boundaries of the Temecula

Land and Water Company?

COL. BOWEN:  They are shown on 207-C by the solid black

lines which is comprised, in part, of the Santa Rosa Grant line

1   in part of the Vail Ranch line, and continues on around in an

2   irregular direction to a complete closure.

3       THE COURT:  Get oriented, then, this is the Vail Grant line?

4       COL. BOWEN:  Yes, sir.  The Vail Grant line is a solid

5   line that appears between Pauba Land and Water Company and

6   the Temecula Land and Water Company as shown on 207-C.

7       THE COURT:  And is the solid line here a part of the Santa

8   Rosa Grant line?

9       COL. BOWEN:  Yes, sir.  That is the solid line on the

10  bottom of the map 207-C is the Santa Rosa Grant line in part.

11      MR. VEEDER:  I would like the record to show the appear-

12  ance of Mr. Phil D. Swing.

13      COL. BOWEN:  And this Santa Rosa addition to Wildemar is

14  within the Santa Rosa Grant.

15      THE COURT:  Mr. Krieger raised the point as to whether or

16  not the fault line lay in connection with some of the land in

17  the lower part here.  I have my hand on Exhibit 15-A.  Here is

18  the Grant line, here is this little piece.  In this area here

19  there is a sizable portion of this --

20      MR. VEEDER:  Was your Honor referring to 15 or 15-A at

21  the time?

22      THE COURT:  My copy of 15.  There is a portion of this

23  ground in the lower part of the map just above where you have

24  marked on it "Santa Rosa Grant line," north and east of the

25  Santa Rosa Grant line, which lies south of the southerly fault

1    there.

2         COL. BOWEN:   That is right.

3         THE COURT:   Anyway, you put that fault line on.

4         MR. VEEDER:   We will put it on, your Honor.   We will lo-

5    cate it and put it on.   When I say "We," of course, we will

6    have to get Col. Bowen.   But from our standpoint I think we

7    can, and I think we can move along.

8         MR. KRIEGER:   May I ask one other question, your Honor?

9         In connection with your 207-D that has been offered in

10   evidence, was any regard paid to the Elsinore fault line in

11   making allocations of water to those lots that overlap it?

12        COL. BOWEN:   We don't make any allocation of water, Mr.

13   Krieger.   That was an unfortunate choice of words.

14        THE COURT:   I don't know what you're talking about either.

15        MR. KRIEGER:   The amounts of the irrigated acres, the

16   irrigable acres on a parcel of land that overlies the fault

17   line, is any distinction made in any of your reports, that 207-D,

18   that has to do with the location of the fault line, or is it

19   disregarded in those allocations?

20        THE COURT:   They are not allocations, first of all.   Let's

21   get that out of the record.   And secondly, they are either

22   irrigable or non-irrigable, whether they lie over a fault line

23   or not.

24        MR. KRIEGER:   That's right.

25        MR. VEEDER:   I think he is asking a legal question at

1    this juncture, your Honor.

2         MR. KRIEGER:  I just want to know if the computations

3    have taken into account the location of the fault line.

4         THE COURT:  The computations obviously would not.

5         Is that right?

6         COL. BOWEN:  That is correct, your Honor.

7         THE COURT:  Obviously they would not.  You don't judge

8    irrigable acrea by whether they are over a fault line or not.

9    The only significance of a fault line is that those people who

10   own property southerly of that fault line might have the right

11   to any water that got out of the ground south of the fault.

12        MR. VEEDER:  Your Honor said "might."  You didn't make a

13   ruling; is that right?

14        THE COURT:  I'm inclined to think that they would, if

15   they could find any.

16        MR. VEEDER:  That is right.  This would be extremely im-

17   portant from the standpoint of the rights of these people.

18        MR. KRIEGER:  That is why I'm raising it.  But the Court

19   has already indicated in other situations similar to this that

20   all the lands that lie to the southwest of that Elsinore fault

21   line are outside the suit.  He has done that in connection

22   with the Dave Brown property.

23        MR. VEEDER:  I don't believe he has done that.

24        THE COURT:  Let's not put a line on here, because you are

25   going to put it on later.  But from an inspection of my copy

1   of 15-A the fault line would run about where this ruler is and,

2   accordingly would concern only those people who had property

3   in this bottom tier of lots on this map 207-C, and I suggest

4   that we have it put on as accurately as we can and understand

5   any one property in the series of Lots 195 to 205 and 48 to 58

6   inclusive of the Temecula Land and Water Company --  we may

7   have a problem as to the fault line.

8       Now, on the other side of the map I think any other part

9   it would be out. The fault line runs across here and over

10  here.  I don't think there would be any problem anywhere else.

11      MR. STAHLMAN:  I would like to ask Col. Bowen one ques-

12  tion.

13      Have you checked the accuracy of the Assessor's maps?

14      COL. BOWEN:  Yes, sir.

15      MR. STAHLMAN:  And have you found them to be accurate or

16  not?

17      COL. BOWEN:  Well, they have errors in them, Mr. Stahlman.

18      THE COURT:  For the benefit of any of the land owners

19  here, I will give you some idea of what we are talking about

20  and try to explain it to you in simple language.

21      What is the name of that southerly fault line?

22      MR. KRIEGER:  Elsinore.

23      THE COURT:  And the northerly one is Wildemar?

24      MR. KRIEGER:  Wildemar.

25      THE COURT:  The Court has taken evidence at great length

1    here, and we have many exhibits, showing that on the whole the

2    Murrieta Valley lies over a basin, that there is water under-

3    lying Murrieta Valley, and that that valley lies in part be-

4    tween two fault lines.  The fault lines are where the earth

5    beneath has slipped in one direction or another, creating a

6    phenomenon that has an affect on this basin.

7         There is not much doubt that any of the land in the

8    Murrieta Valley between the two fault lines is part of the

9    basin, and therefore anybody who owns land between those fault

10   lines is what we call an overlying owner.  If you overlie a

11   basin, you're entitled to your correlative share of water from

12   the basin.  But because of that fact you are in this lawsuit

13   as long as it ever lasts, because you are one of the parties

14   who has a right to the water of the stream.

15        However, there is a small section of ground in the lower

16   part of this map that we have been looking at, and it would be

17   described as some ground lying immediately south and southerly

18   of the town of Temecula, where Lot Nos. 195 to 205 and 48 to

19   58 are traversed by the Elsinore fault.  It has been the hold-

20   ing of the Court up to this time that the basin does not ex-

21   tend past the Elsinore fault, and that that part of the ground

22   that was south of the Elsinore fault line is not land overlying

23   a basin.

24        The only significance to you would be this, that if you

25   got a spring or a well up on some of that ground that lies

1  outside the basin, the Court would be prepared to hold that

2  that water was vagrant, local, percolating water, not part of

3  the stream system, and that as to that water you would just be

4  lucky to have it and you would have that water without any

5  dispute, subject to the rights maybe of some neighbor next

6  door.

7      Now Mr. Veeder, is there going to be any objection on the

8  part of the Government to a finding that any of that land that

9  lies south of that Elsinore fault line is outside the basin

10  and that the water is vagrant, local, percolating water?

11      MR. VEEDER:  I would be inclined to view it this way,

12  your Honor, that we will take it parcel by parcel, and the

13  fault varies to some degree in its location.  It is our view

14  that it is not an impermeable barrier and that it may be that

15  the water does move through the fault at certain points.  Now,

16  I wouldn't want to preclude any of these people from their

17  rights in the Santa Margarita River if it would be to their

18  detriment.  So we will on each separate parcel --

19      THE COURT:  What do you mean?  What are you talking about?

20      MR. VEEDER:  Your Honor, the matter is very simple -- and

21  I am pleased that somebody can get some humor out of it.

22      MR. STAHLMAN:  You're trying to sell these Murrieta people

23  a bill of goods right now.

24      MR. VEEDER:  Your Honor, I would like to have that ex-

25  punged.

1        THE COURT:  It may go out of the record.

2        MR. VEEDER:  I am trying to say that there is a parcel

3   of land here that is separated where the Elsinore fault runs

4   right straight through it.  If I recall the record correctly,

5   this parcel up here belongs to Mr. Krieger.

6        MR. KRIEGER:  Parcel 21.

7        MR. VEEDER:  Parcel 21.

8        MR. KRIEGER:  That belongs to D. S. Brown, the one you

9   are talking about.

10       MR. VEEDER:  That is right.

11       THE COURT:  I can't see it.  You have covered it up.

12       MR. KRIEGER:  It's right here, your Honor.

13       MR. VEEDER:  Mr. Krieger represents that client.

14       THE COURT:  I commented as to this map 207-C-1 and up there

15   I don't think there is any problem.  I think your fault lines

16   extend far enough to the south that all of that is in the

17   basin.  I am only talking presently about the series of Lots

18   195 to 205 and 48 to 58.  That is the only area that I looked

19   at.

20       MR. VEEDER:  And you are referring them to 207-C-1.

21       THE COURT:  Yes.

22       MR. VEEDER:  And the lots to which you have made reference,

23   you are stating that you do not believe that water lying

24   southerly and westerly from the Elsinore fault would be part

25   of the Santa Margarita River?

1    THE COURT:  That is right.

2    MR. VEEDER:  I would want to check out each parcel in

3 that regard, your Honor.  I simply feel that some of these

4 people -- I have never tried to paint a different picture than

5 what I believe will actually be demonstrated.  We are going to

6 have to have findings for each separate parcel of land.  In

7 general I agree with what your Honor said, but I don't want

8 the record to show that I have stipulated in that regard.

9    THE COURT:  We can make short work of this as we go along

10 on that series of lots.

11    MR. VEEDER:  I favor that, your Honor.

12    We have a witness on the stand, your HOnor.

13    THE COURT:  Let's go ahead with him.

14    MR. VEEDER:  On the basis of these parcels which appear

15 in Exhibit 207-B-2 as Tract and Parcel Nos. 20-4-65, the evi-

16 dence which we have offered in Exhibit 207-D shows that there

17 is a total in Parcel 65 of 14 acres, 12 acres of which we find

18 are irrigable and two acres of which we find are non-irrigable.

19 Now in regard to Parcel 66 we have a total of 94 acres.  Our

20 evidence in Exhibit 207-D is 79 acres irrigable, 15 acres non-

21 irrigable, and in the aggragate for this witness's property

22 we find that there are 17 non-irrigable acres and a total of

23 91 acres irrigable.  The matter was discussed in my office be-

24 tween this witness and Col. Bowen.  There is not complete agree-

25 ment in regard to the irrigable acreage, and it is my under-

standing that Col. Bowen will visit the property for the

1   purpose of having a complete agreement upon it, if that is

2   possible.

3        THE COURT:  Can this be formalized by some written docu-

4   ment?  The Colonel can submit a letter report, and if the wit-

5   ness is agreeable he can signify his agreement with it.

6        MR. VEEDER:  I would like to have him counter-sign Col.

7   Bowen's letter to that affect.

8        THE COURT:  And if not, he will have a right to come back

9   in and be heard again.

10        MR. VEEDER:  That is our wish, and we certainly want it

11   that way.  I would like to have the witness express himself on

12   it.

13        THE COURT:  You have already testified that you think there

14   is probably as much as a 104 acres out of your 108 acres that

15   is irrigable?

16        THE WITNESS: (Mr. Cecchettini) I would say there is more

17   than 104 acres, your Honor, with the exception of that part

18   of an outcropping on the extreme southwesterly portion of our

19   property which is the extent of the Willard fault line.  We

20   have a shear plane right through our property.  With the

21   exception of the outcropping of rock, possibly with the excep-

22   tion of two to three acres, we could irrigate the entire piece.

23        THE COURT:  Can we leave it then to see if the Colonel

24   and the witness can get together on it?

25        THE WITNESS:  Yes.

12985

1    MR. VEEDER:  Yes.  And that was the arrangement that was

2  made in my office.

3    THE COURT:  Will you point out to me where these two

4  Parcels 65 and 66 are?

5    THE WITNESS:  202 and 201 over here.

6    MR.VEEDER:  Here they are right here, your HOnor -- 201

7  and 202.   There seems to be a stream that runs right through

8  the parcel 201.  Is that correct?

9    THE WITNESS:  Well, it is not a stream.

10    MR.VEEDER:  I mean an arroyo.

11    THE WITNESS:  It is an arroyo.

12    THE COURT:  Do those parcels extend clear down to the

13  Santa Rosa Grant line?

14    MR. VEEDER:  They do, your HOnor.

15    THE WITNESS:  Yes.

16    THE COURT:  We have the loose end of the southerly part of

17  your property that is south of the Elsinore fault line.  Do

18  you think you can get this fault line on this map by 1:30?

19    MR. VEEDER:  It will have to be an approximation, your

20  Honor.  We will undertake it.

21    THE COURT:  An approximation is all we can make.  And I

22  think on our findings we could find, if we made the finding,

23  that it was property south of the fault line, subject to correc-

24  tion on the ground.  This fault line could be ascertained, if

25  necessary, in any dispute, couldn't it?

1    MR. KRIEGER:  Could we ask this witness one question that

2    might help us along this line?   How far from the south boundary

3    of his property does this outcropping that he believes to be

4    the fault exist?

5    THE WITNESS:  Approximately three-quarters of a mile.

6    THE COURT:  That outcropping might or might not be a

7    fault, depending entirely on whether it was in place or had

8    been moved there.

9    THE WITNESS:  It shows a shear plane.  That is what is

10   called when the earth tremors and you get your fault in the

11   first place.

12   THE COURT:  Well, to move along with these things, the

13   Court would tentatively propose to find that the parts of these

14   two parcels lying southerly of the Elsinore fault line involve

15   land in which any water was not part of the stream system,

16   that any water beneath ground south of the Elsinore fault line

17   would be vagrant, local, percolating water and not part of

18   the stream system; that as to the ground northerly and easterly

19   of the fault line this witness is an overlying land owner and

20   has correlative rights with other owners in the basin; and

21   we are making a finding that although we judged our fault line

22   generally by the geology shown on Government's Exhibit 15 and

23   the rough line that will be drawn on Exhibit 207-C-1, in the

24   last analysis, in the event of any dispute, the fault line

25   would be determined actually on the ground.

1   MR. VEEDER:  That is agreeable with us, your Honor.

2   THE COURT:  So that if anybody got a real fancy well and

3   claimed that on the map they were south of the fault line and

4   by an inspection of the ground we could find they were pulling

5   out of the basin, they are just a correlative owner.

6   MR. VEEDER:  That is correct, Your Honor.

7   MR. KRIEGER:  That would come up in a contempt proceeding.

8   THE COURT:  It could be ascertained right from the ground.

9   Is that satisfactory to you, sir?

10   THE WITNESS:  Yes, sir.

11   MR. VEEDER:  Your Honor, would it be necessary for him to

12   remain after lunch?

13   THE COURT:  Well, if he is curious to see where that line

14   might be drawn he can come back or not.  He can be excused as

15   far as I'm concerned.

16   THE WITNESS:  I would like to return just to see the line.

17   MR. VEEDER:  The next one in order will be Mr. Wright,

18   unless you want to hear him now.

19   THE COURT:  Let's hear one more now.

20   MR. VEEDER:  We would like to offer in evidence Exhibit

21   207-D your Honor.

22   THE COURT:  I thought I received it in evidence, but if

23   not Exhibit 207-D, the tabulation, will be received in evidence.

24   (Plaintiff's Exhibit 207-D received in evidence.)

25   MR. VEEDER:  I will call Mr. Wright.

LOUIS WRIGHT, JR.,

one of the defendants herein, having been duly sworn, on his

oath was examined and testified as follows:


THE CLERK:  State your name?

THE WITNESS:  Louis Wright, Jr.

MR. SACHSE:  Mr. Veeder has been reading figures here

which I am sure are correct as to what the Government has found

as to irrigable acreage.  But there isn't any testimony on it.

He has stated what the Government has found.

MR. VEEDER:  Col. Bowen testified on it.

MR. SACHSE:  When?

THE COURT:  I asked him.

MR. SACHSE:  Are we going to do each one this way indi-

vidually?  Or can't we wrap this whole thing up by Col. Bowen's

saying what he found for a lot of people?

MR. VEEDER:  These people are here to testify.

THE COURT:  Col. Bowen has testified that this tabulation

Exhibit 207-D --

MR. SACHSE:  Is that these figures?

MR. VEEDER:  Yes.

THE COURT:  -- is correct in his judgement.

Is that what you testified to?

COL. BOWEN:  Yes, sir.

THE COURT:  And I received it in evidence.  So there is

1  a prima facie showing on the part of the Government as to the

2  irrigable and non-irrigable land on all these parcels.  The

3  only problem we have is whether there is some dispute.  If

4  the owner says, "I'm satisified with those figures," there we

5  go.

6        MR. SACHSE:  I had no idea that these figures that Mr.

7  Veeder was reading tied into an exhibit.

8        MR. VEEDER:  They do tie into Exhibit 207-D.

9        If you gentlemen want to know what I am doing, I have

10  cross-references as to irrigable and non-irrigable acreage.

11        THE COURT:  Mr. Veeder, will you and counsel come back at

12  1:15 and will you please educate Mr. Sachse, Mr. Krieger, Mr.

13  Stahlman, Mr. Girard, Mr. Swing, if necessary, on the exhibits

14  which are now in evidence and have been in evidence for months

15  around here, and how they work?  There is a system here to

16  find each one of these parcels.  We are having more trouble

17  with you than we are with the pro per defendants.

18        MR. VEEDER:  We have no trouble with the defendants, your

19  Honor.

20        MR. STAHLMAN:  You didn't furnish us with copies.

21        THE COURT:  No, I don't think you did.  I didn't get any

22  at that time, I know.

23        MR. GIRARD:  I don't want a copy.

24        THE COURT:  Go ahead with Mr. Wright.

25

1                        DIRECT EXAMINATION

2          THE COURT:  Can you identify it by parcel number somewhere?

3          MR. VEEDER:  I will identify it, your Honor.

4          Q  You are Louis L. Wright, Jr., and your wife is Gloria

5    A. Wright and you filed an answer in this case; is that right?

6          A  That is right.

7          Q  Your property, Mr. Wright, as shown in your answer, is

8    portions of Lot 48 in the Temecula Land and Water Company, and

9    you are claiming a total of 67 acres; is that correct?

10         A  67.03.

11         Q  Referring to Government's Exhibit 207-B-2, it appears

12   that your land is Parcel No. 42, and on our method of calcula-

13   tion, referring now to Exhibit 207-C-1, we locate your property

14   as being Lot 48.

15         A  Yes, the southerly portion of Lot 48.

16         Q  And that is the correct location, is it not?

17         A  That is right.

18         MR. VEEDER:  You have before you Exhibit 207-D, your Honor.

19         THE COURT:  Yes.

20   BY MR. VEEDER:

21         Q  The determination by Col. Bowen in Exhibit 207-D is

22   that there is a total of 67.1 acres, of which 61.7 acres are

23   irrigable and 5.4 acres non-irrigable.  Are you in agreement

24   with that figure, Mr. Wright, or are you in disagreement?

25         A  I am in disagreement.

1    Q  Would you state into the record the acreage which you

2  believe to be the total irrigable acreage?

3    A  I think 67.03 should be the total irrigable acreage.

4  In other words, a hundred percent of the parcel.

5    MR. VEEDER:  Again, your Honor, there is only one thing

6  we can do, and that is to go and check this out, and Col. Bowen

7  will do that and we will follow the same procedure that has

8  been followed in regard to the first witness.

9    THE COURT:  All right.

10    Does his property extend clear down to the Santa Rosa

11  Grant line?

12    THE WITNESS:  I am not familiar with the Santa Rosa Grant

13  line.  You mentioned Lot 48 as being in this fault.  My lot

14  is apparently in this fault.  But where is the fault?  Is part

15  of my lot in that fault, or does it start from the edge of 48?

16    THE COURT:  Do we have the description here?

17    MR. VEEDER:  Yes, we have the legal description, your

18  Honor.

19    THE COURT:  Does he own all of Lot 48?

20    MR. VEEDER:  No.  The property as described in Exhibit 207-

21  B-2, which is the description that we have used in this liti-

22  gation, is "All of Lot 48, Temecula Land and Water Company

23  Subdivision in the County of Riverside, except the northeast

24  40."  That is the description that appears in the record, and

25  that is the description in this litigation, and his property

1       would be at the western end of that Lot 48.  You have referred

2       to it as the southern.  It is the western and southern.

3               THE COURT:  Western, yes.

4               THE WITNESS:  The southerly part of Lot 48.

5               THE COURT:  Were these lots originally about 80 acres

6       each?

7               MR. VEEDER:  They varied in size, your Honor.  We have

8       the same acreage as he has within two-tenth of an acre.

9               THE COURT:  That can be ignored.  We are not concerned

10      about that.

11              Col. Bowen will make further check on this lmatter.

12              The court will make the same finding here as it made be-

13      fore, that any portion of your land lying southerly and westerly

14      of the Elsinore fault line is land which does not overlie a

15      basin, and that any water under that part of the ground would

16      be vagrant, local, percolating water and not part of the stream

17      system; that as to any of the land you own northerly and

18      easterly of the fault line you are an overlying owner and you

19      have correlative rights with other owners.

20              However, you still have the very interesting legal prob-

21      lem that we will have to decide, and that is a man owns land

22      partly over a basin and partly outside the basin is not riparian.

23      Can he use the water outside the basin?

24              MR. STAHLMAN:  Read that last part.

25              (The reporter read the Court's last statement.)

1    MR. KRIEGER:  Could we ask this witness if he has any

2  wells on his property?

3    THE WITNESS:  I do.

4    MR. KRIEGER:  Where are they located?

5    THE WITNESS:  On the northerly edge.

6    THE COURT:  Do you use those wells on the southerly part

7  of your land?

8    THE WITNESS:  Not on the extreme south.  In other words,

9  two-thirds of the length of the property.

10    MR. VEEDER:  Do you want the well numbers, Mr. Krieger?

11    MR. KRIEGER:  Are they shown on one of your other exhibits?

12    MR. VEEDER:  They are in the record, but it will help you

13  for reference, if you want it.  It is 7-3-19 J-1 and 19-J-2.

14  That is what our records show on Mr. Wright's property.

15    Can you locate those on Exhibit 15-A?

16    THE COURT:  Yes, approximately.

17    MR. VEEDER:  That would conclude our phase of this wit-

18  ness, Mr. Wright.

19    And we will check out your acreage, Mr. Wright, because

20  we want to come as close as we can to agreement with you, if

21  that is satisfactory.

22    THE COURT:  Mr. Girard, what is your view on that?

23    MR. VEEDER:  He and I just had a discussion, your Honor.

24    MR. GIRARD:  You mean where a person takes groundwater

25  which is vagrant, local, percolating water out of the basin and

1        puts it on land which is outside the basin?

2            THE COURT:  Puts it on land that lies outside the basin.

3            MR. GIRARD:  I think he is exporting water and is probably

4        not entitled to do it under the law.

5            MR. SACHSE:  If I may offer a word of caution here -- I

6        am directing it perhaps at your Honor -- I think we are using

7        the word "basin," and maybe Mr. Veeder has misled us, a little

8        carelessly here.

9            MR. VEEDER:  Why would I mislead you?

10           MR. SACHSE:  I agree with Mr. Girard's position.  But if

11       we are using "basin" just as a loose term for waters that are

12       part of the stream, if these are riparian waters, then he has

13       a right to use them on any riparian land whether they are under-

14       ground riparian waters or surface.

15           THE COURT:  He is not a riparian owner.

16           MR. SACHSE:  I say, we have been using the word "basin"

17       loosely, your Honor, and I think there is a real distinction.

18       From the standpoint of Murrieta Valley, it is my position on

19       behalf of the clients I represent that it is not a basin in

20       that sense of the word.  I am willing to concede, and I have

21       done it many times with this Court, that the groundwaters are

22       part of the stream system, and if their land overlies the

23       fault in any case I will insist that they have a right to take

24       the water from the north side of the fault and onto the south

25       side of the fault because it is all a single riparian parcel

1    and they are taking riparian water.  If this were a true basin,

2    being adjudicated as a basin, then that would not be true.  We

3    have to watch ourselves very carefully on that.

4         MR. VEEDER:  May I be heard on that before we conclude

5    this?

6         MR. STAHLMAN:  Carlsbad versus San Luis Rey.

7         MR. VEEDER:  I would like to be heard on this, and I would

8    like to have it very clear from the standpoint of the United

9    States of America.  We have repeatedly said that the term

10   "Murrieta Basin," as used in regard to the Murrieta people who

11   are here today, is not a correct designation, in our view.

12   We refer to the areas as shown on Exhibit 15-A in the older

13   alluvium and in the younger alluvium as a continuous groundwater

14   body.  I have been extremely careful when the point came up in

15   regard to taking water from the north side to the south side

16   of the Elsinore fault, becasse I do not want to see these

17   people enjoined from doing so.  I have talked to Mr. Girard

18   about the matter.  He represents the State of California.  He

19   raised the proposition that he was doubtful as to whether they

20   could so export the water.  I am not taking a position at this

21   time, but I do think it is absolutely essential, your Honor,

22   that the characteristics of these faults be understood.  I do

23   not believe, your Honor, that a fault can be treated as an

24   impermeable body which would segregate or separate the waters

25   in this area, and I think we have to consider each individual

1   parcel as we come to it.

2        THE COURT:  We may have been hasty on that.

3        MR. VEEDER:  Did you agree with that, Mr. Sachse?

4        MR. SACHSE:  No, positively not.  If the fault is not

5   impermeable at any point, if this fault extends along here and

6   the water is moving this way and it has to go around this way

7   to get through and around this way to get through, I don't think

8   it makes a bit of difference whether the water goes through on

9   the land owners land or not.  The fault is a barrier or it is

10  not a barrier to this groundwater, and just because this poor

11  gentleman is unfortunate enough to have the waters leak through

12  doesn't mean that he is any different than the man next to him.

13        MR. VEEDER:  It can go through or over.  You don't have

14  a circumstance where you would have a complete severance that

15  has been talked about.  That is what I wanted to bring to your

16  Honor's attention.

17        THE COURT:  Let me ask you, Mr. Wright.  Would you be

18  better content if the Court found that all your land overlaid

19  the basin?

20        THE WITNESS:  I would be better off, wouldn't I?  I would

21  be out of this.

22        THE COURT:  No, you would be in it.

23        MR. VEEDER:  No.

24        THE COURT:  What about you, Mr. Cecchettini?

25        MR. CECCHETTINI:  Would you repeat that?

12997

1    THE COURT:  Would you be better satisfied if the Court

2    in this case found that all your land was overlying as far as

3    the basin is concerned?

4    MR. CECCHETTINI:  Well, on the surface I would be most

5    happy if it was all overlying.  However, if they are going to

6    inseminate this with a general restriction as to the number of

7    acre feet of water we are going to be allowed for a parcel of

8    land, I am not.

9    THE COURT:  You can't do anything about that.  If we ever

10   get to that stage, as to any part of your ground that overlies

11   this basin you are a correlative owner and you have only

12   correlative rights, with everybody else on the stream.  So

13   the situation of the majority of your land is such that there

14   you are.

15   MR. CECCHETTINI:  It's true that you can't move the geo-

16   graphic location.

17   THE COURT:  The problem is where some land lies south of

18   the fault and some north of the fault.  I think I was a little

19   hasty in figuring that that fault line had to be the edge of

20   the basin.  I am not prepared to hold that as far as the Wilde-

21   mar fault line is concerned.

22   MR. VEEDER:  That is right.

23   THE COURT:  I don't know whether there would be a dis-

24   tinction between the two fault lines.

25   MR. VEEDER:  I think it is a matter that will involve

1   offering the findings in regard to each parcel of land and I

2   think we will have to resolve it as we go through.  I think it

3   is extremely important in regard to Mr. Wright and the other

4   people who are here.

5        I have nothing further in regard to Mr. Wright, your

6   Honor.

7   THE COURT:  All right, come back at 1:30.

8        (Noon recess.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

San Diego, California, Tuesday, April 5, 1960, 1:30 P.M.

1

2          (Other matters.)

3          THE CLERK:  21-1247-SD-C United States versus Fallbrook.

4          MR. VEEDER:  May we proceed, your Honor.

5          THE COURT:  Mr. Veeder, where these people tell you that

6     they agree to something, I think it should be made in the form

7     of a letter, and send it to them and have them sign it.  Have

8     something in the record.  Otherwise, all we have is that Mr.

9     Veeder says "I talked to so and so and he is agreeable."  Do

10    you follow me?

11         MR. VEEDER: Yes, your Honor.

12         THE COURT:  Put it in a letter and summarize it.

13         MR. VEEDER:  We will write to those people on that.

14         THE COURT:  I want to back up from what I had to say this

15    morning.  We had a busy calendar here and I was trying to get

16    along on this case.  It might be described as a mettal lapse,

17    being too concerned about the Elsinore fault line.

18         The court has been uniformly holding that where land was

19    located in the basin complex area, where the foundation rock is

20    near the surface, or in the weathered complex where, as shown

21    on our exhibits, there is none of the so-called younger alluvial

22    fill, that water found in those areas was vagrant, local, perco-

23    lating water not part of the stream system, and I intend to be

24    consistent in that in my findings throughout this case.

25         In the case of this Murrieta Basin, upon reflection I am

1  convinced that the southerly end of that basin extends to the

2  toe of the basin complex and therefore would lie on either side

3  of the Elsinore fault line, and the Court would, for the pur-

4  pose of findings, accept the area shown on Government's Exhibit

5  15.  The result of this holding would obviate any of this

6  problem of persons who generated water to the north of the

7  fault line and used it south of the fault line, since if the

8  water was used anywhere in the watershed area on ladd of the

9  owner it would be a proper riparian use.

10       With that statement to you, we will proceed with the next

11  witness.

12       MR. VEEDER:  Thank you, your Honor.

13       Your Honor, we have put on the easel a map which is one

14  brought to date based on the well canvases which you ordered.

15  I thought it might be helpful to your Honor.

16       THE COURT:  Are these the same maps?

17       MR. VEEDER:  Yes, they are.  Do you want a copy of it?

18       THE COURT:  No.

19       MR. VEEDER:  In other words, this would be a substitution

20  for Exhibit 15-A or would be a compliment to it.  This is up

21  to date based upon the data, your Honor.

22       THE COURT:  The same base as Exhibits 15 and 15-A?

23       MR. VEEDER:  It is the same base, but there is a great

24  deal more material on it.  There is opinion evidence reflected

25  on it.

1    I have put it up for the purpose of location only.

2    THE COURT:  Can we mark it for Identification?

3    MR. VEEDER:  Yes, I would like to.

4    THE COURT:  The next number?

5    MR. VEEDER:  May we use the 15 number on it?

6    THE COURT:  All right.

7    THE CLERK:  15-E would be the next number.

8    MR. GIRARD:  Can you get copies to us of that?

9    MR. VEEDER:  Yes.  There are some copies in my office,

10   but we will have others for you later on.

11   THE COURT:  It will be marked Plaintiff's Exhibit 15-E

12   for Identification.

13

14

15

16

17

18

19

20

21

22

23

24

25

1      MR. VEEDER: But I would like to have it shown that by

2  reason of pumping in the Murrieta Valley there are what we

3  believe to be pumping holes that are showing up by reason of

4  the drought and by reason of overdraft.

5      This was prepared originally for rebuttal.  I thought it

6  might be of assistance now.

7      THE COURT:  I think for the benefit of these property

8  owners who are here for the first time we should take about

9  two or three minutes and describe the geology as shown on this

10  Exhibit 15 series.

11      MR. VEEDER:  Do you want me to do that, your Honor?

12      THE COURT:  If you will.  Point out first what the blue

13  means.

14      MR. VEEDER:  The areas shown on plaintiff United States

15  of America's Exhibit 15-E depict the geologic phenomena that

16  exists in what is generally called the Murrieta area.  The

17  area which is in yellow, according to the position of the United

18  States of America, is alluvium, that is, transported rock and

19  gravel and dirt, and that underlying and throughout the entire

20  area which you will observe in this yellow or orange, the

21  position of the United States is that it is a continuous ground

22  water body.  It is our position that anyone pumping water,

23  utilizing water in the Murrieta Valley, whether he is situated

24  near the town of Temecula or Murrieta or further out, north and

25  east of the Wildomar fault, it is our position that he is

13,003

1  tapping exactly the same ground water body as the Vail Company

2  is tapping in the Pauba Valley. We think it is all intercon-

3  nected. We believe you are all using the same source of water

4  and, in effect, one competing with another. That to the extent

5  that there is an overdraft in the area north of Pauba Valley,

6  that there is a drainage in the direction northward and up the

7  Murrieta Valley and that there is a general depletion of water

8  throughout the area. We believe, moreover,-- and I think this

9  is extremely important to people who are using water during this

10  drought period -- that the ground water levels are dropping and

11  that as a result there is, in our view, an overdraft in the

12  Murrieta Valley and surrounding areas.

13      Basically, we view these areas which are in blue as the

14  bowl or the cup in which this alluvium is held. It is of ex-

15  treme depth in the area to which I am now pointing, that is,

16  between the Wildomar fault and the Elsinore fault, the alluvium,

17  the water bearing strata in the Pauba Valley is of extreme

18  depth. The alluvium feathers out as it goes northward until it

19  is very shallow as it approaches the blue area up here, north

20  of the Murrieta Valley.

21      It is our position, moreover, that there is extremely

22  small yield of water, if any, in the basement complex.

23  We are at the present time, and this is the basis of an agree-

24  ment with counsel, entering into agreements for stipulated

25  interlocutory judgments which provide that waters found away

1   from this yellow area are vagrant, local, percolating waters

2   and not part of the water shed of the Santa Margarita and are

3   not interconnected with the Santa Margarita River.

4        However, it is our position that the areas which are in

5   yellow, whether they extend up these various creeks -- Warm

6   Springs Creek and Santa Gertrudis Creek, or up Tucolata Creek --

7   we believe that is part of the Santa Margarita River, and that

8   anyone who is using water pumped from those alluvial areas is

9   actually using waters of the Santa Margarita River.

10       It is our position, moreover, from the standpoint of the

11  United States, that we, the United States and you people who

12  are pumping and utilizing surface and ground water in this

13  area shown on Exhibit 15-E, enjoy the waters correlatively,

14  with the exception of the Vail Company.  We have a stipulated

15  judgment with them.

16       MR. STAHLMAN:  Explaining the map?

17       THE COURT:  That is enough.

18       MR. STAHLMAN:  That's too much.

19       THE COURT:  I didn't really mean for you to tell them

20  what your position is.  But that's entirely all right.  I

21  meant to sort of sumarize what we have on this map.

22       When we heard the evidence on the geology in this valley

23  there was no real discrepance between the evidence from the

24  State of California and from the United States and other

25  defendants as to the main geologic features.  There are dis-

1    crepancies in some places along the fringe, but on the whole I

2    think counsel all agree that there is general uniformity in

3    what we have here.

4        You have basement complex in the Santa Rosa Mountains in

5    the blue.  And you have basement complex up here.  And you have

6    the older weathered basement comples.  Now this became import-

7    ant for the reason that the Court has found in the past, and

8    will in the future find, that anybody who has any water in these

9    areas of basement complex or the older weathered basement has

10   water that is not part of the stream system.  As I put it face-

11   tiously, if you find water there you are just lucky to find it

12   and it belongs to you.

13       The effect of that is this, in this final decree.  If you

14   had a piece of ground up here and you had a little spring of

15   some kind, this decree will sever you forever from any future

16   litigation on this stream, because the Court will find that

17   that water is not part of the stream system.

18       However, in the areas of younger alluvium and in some of

19   the areas of the older alluvium, those people who have property

20   in that area will be either riparian or owners over a basin and

21   their water, the Court is going to find, is part of the stream

22   system and they are forever in this law suit.  In the future

23   there might be some further proceeding to allocate water.

24       These are just the facts of the case.  There is no dispute

25   about it in some areas.  The government drilled the Pauba Well

13,006

1   down here and went down over 2600' and didn't hit bedrock.  So

2   you can see the depth of the basin in that particular area.

3   From this depth the basin extends northeasterly.  The Court has

4   not decided how far.  There is no doubt that the whole Murrieta

5   Valley is part of a basin.  This is conceded.  The Santa Ger-

6   trudis area in here, the government is contending, is a line

7   that would swing up around something like this, and the basin

8   may run up further.  But as far as the Murrieta Valley is con-

9   cerned, people who own ground there lie right over a basin of

10   water and you are a part of a stream system.

11       MR. VEEDER:  At least that is part of the overall large

12   basin.  Isn't that what you mean?

13       THE COURT:  Yes.

14       MR. VEEDER:  It is not a segregated area between faults.

15       THE COURT:  That is right.  The Court has not decided

16   how far north/this other fault line that basin goes, except

17   that it goes some distance above.  We don't know yet what the

18   findings will be on that.

19       When I say that you are in this lawsuit forever, I mean

20   the decree would find that you own land overlying a basin and

21   you have correlative rights with everybody else.  That is the

22   law of California.  No one person can use all the water in dis-

23   regard of the rights of other people who have a right on that

24   stream.

25       If you are fortunate enough, or unfortunate enough, to

1    have land up here where there is practically no water, you are

2    going to be out of the law suit, because any water you get there

3    you are just lucky to find it.

4         So far, I might say, there is no intention presently to

5    make an allocation of water between all of the owners on the

6    stream system.   There may be isolated cases where it may appear

7    from the record that there has been excessive use.   I am not

8    prepared to say that there are not some isolated cases where we

9    might have to put some limitations on the use.   But there are

10   no present plans, as I understand it, to make a general overall

11   allocation of water.

12        Is that right?

13        MR. VEEDER:   I didn't hear that, your Honor.

14        THE COURT:   There is no present plan to request an over-

15   all allocation of water?

16        MR. VEEDER:   That is the general situation, your Honor.

17        THE COURT:   Onr final thing, and that is that this fault

18   line we were talking about this morning -- I don't know whether

19   it shows on here.

20        MR. SACHSE:   Here, your Honor.

21        THE COURT:   This morning I indicated that that was the

22   edge of the basin.   I came back this afternoon and indicated

23   that the basin was at the toe of the basement complex.

24        Call your next witness, Mr. Veeder.

25        MR. VEEDER:   I will call Mr. Elsenpeter.   Is he here?

1    THE COURT:  Mr. Elsenpeter.

2    MR. VEEDER:  I want the record to show that he stated

3 that he had to get away, and I think -- well, I will not say it.

4 He didn't appear, though, and that concerns me in regard to his

5 record.

6    Now, he has stated, however, that the 9.7 acres total and

7 the 9.7 irrigable acres, as shown in the record, Exhibit 207-B

8 and Exhibit 207-D, are acceptable to him, and on the basis of

9 the fact that he has left, I think, if it is agreeable to your

10 Honor, we will go on that basis.

11    THE COURT:  Col. Bowen has found that all of his acres

12 are irrigable?

13    MR. VEEDER:  That is right, your Honor.

14    THE COURT:  And he has 9.7 acres?

15    MR. VEEDER: Yes.

16    THE COURT:  Whether he agrees or not that is the most

17 favorable finding for him, and the Court so finds.

18    MR. VEEDER:  I'm happy to hear it.

19    THE COURT:  He lies in the Murrieta Valley?

20    MR. VEEDER: Yes.

21    THE COURT:  And he is an overlying owner?

22    MR. VEEDER: Yes.

23    THE COURT: And not riparian to the stream?

24    MR. VEEDER:  If your Honor wants to check it, 207-2-4-17.

25 It will appear in Exhibit 207-B-2.

1    THE COURT:  I have no way of checking.  You have my map.

2    Is it riparian to the stream?

3    MR. VEEDER:  It is overlying.

4    THE COURT: He has a correlative right with all other

5    riparian owners in that area.

6    MR. VEEDER:  Next isCecil C. Dutton.

7                    CECIL C. DUTTON,

8    one of the defendants herein, having been duly sworn, on his

9    oath was examined and testified as follows:

10   THE COURT:  Have you been sworn?

11   THE WITNESS:  Yes.

12   THE CLERK: State your name please.

13   THE WITNESS:  Cecil C. Dutton.

14

                    DIRECT EXAMINATION
15

16   MR. VEEDER: Referring to Exhibit 207-B-2, which is a

     tabulation of land descriptions, Mr. Dutton has Parcel Number 1,
17

     and then he has some additional parcels that lie in parts of
18

     the area that were not included as of today, your Honor.
19

20   THE COURT:  Let's take up 1 and then go to the others.

21   MR. VEEDER:  On Parcel 1 we have a showing of 24.5 acres

     total, and of that 20.8 acres are irrigable and 3.7 are non-
22

     irrigable.
23

24   Q  Do you agree with that, Mr. Dutton?

25   A  I have used a part of that, probable another 2 acres

1  of that, in the past, and I talked to the Colnel and he thought

2  I ought to put that in the record.  And it is now a sand covered

3  wash, but it has been used in the past.  We had a flood a

4  couple of years ago that covered it up with sand.  I admit that

5  it very apparently looks like non-usable land, but it has been

6  used in the past.  That is the simple thing I wanted to get in

7  the record.

8       Q  Do you agree or disagree with these figures that Col.

9  Bowen has?

10      A  I disagree with them.

11      MR. VEEDER:  We will check that out.

12      THE COURT:  What did you grow on the sand that washed

13  down there?

14      THE WITNESS:  We grew grass.  The sand has washed over

15  the dirt, you see.

16      The parcel we are more concerned with is the 5 acre

17  parcel.  They have only alloted 1 acre as irrigable land, and

18  there are three other acres or a total of four that have been

19  used in the past.

20      MR. VEEDER:  You want an investigation of those parcels;

21  is that right?

22      THE WITNESS:  Yes.  That is the only other evidence I

23  have.

24      MR. VEEDER:  That is the extent of your holdings; is that

25  right?

1    THE WITNESS:  Yes.

2        THE COURT:  Let me say this.  That this question of how

3  many acres you have that are irrigable or non-irrigable --

4  well, I won't say it.

5        I'll say this, that Col. Bowen has made a study of a lot

6  of big acreages in this area, and almost uniformly the land-

7  owners have found that he has been very fair in his apportion-

8  ment of the irrigable land.  He is human and he can make mis-

9  takes, but I think I am not over-complementing him when I say

10  it has gotten to the stage almost where if Col. Bowen says this

11  or that about some matter concerning irrigable acres we are all

12  in accord with accepting his opinion.

13        THE WITNESS:  He was the gentleman who suggested that I

14  put this into the record.

15        THE COURT:  Then out of this 24.5 acres, how many do you

16  say you can irrigate?

17        THE WITNESS:  Probably two extra from what I was given.

18        THE COURT:  22.8?

19        THE WITNESS:  Something like that, yes.

20        That isn't so important to me as the five.  I thought

21  there was more in that; that I can irrigate a strong four acres

22  out of the five.

23        THE COURT:  Out of your total of 24.5 acres, how many

24  acres do you say are irrigable?  22.8?

25        THE WITNESS:  Yes.

1    THE COURT:  Anything else from this witness?

2        MR. VEEDER:  We have nothing else, your Honor.

3        THE WITNESS:  What I came on here primarily was to

4    straighten up the thing on another piece of ground involving

5    five acres in Lot 3 of Temecula Land and Water.

6        THE COURT:  As to Parcel 1 this man is overlying on the

7    basin?

8        THE WITNESS:  Yes.

9        MR. VEEDER:  That is right, he is, your Honor.

10       Your Parcel 3?

11       THE WITNESS:  That is five acres, Lot 3 of Temecula Land

12   and Water.  I have a five acre piece in there, and they gave me

13   credit there for only one acre of the irrigable land in that,

14   and that is the one I took up with the Colnel.

15       MR. VEEDER:  We talked about this before right now.  It

16   is the same parcel of land.

17       THE WITNESS:  It is not the same parcel.  Altogether in

18   this there are 29.something.

19       MR. VEEDER:  That is correct; it is 29.5.

20       Q  We have 29.5 acres in your entire parcel.

21       A  That is right.

22       Q  We have it broken down as follows: 20.8 irrigable, 3.7

23   non-irrigable, for your larger tract.

24       A  Yes.

25       Q  We have your other tract of land which we have marked

1    as Parcel 229.

2         A   That is the one.

3         Q   Showing a total of five acres.

4         A   That is right.

5         MR. VEEDER:   Our total shows four acres non-irrigable and

6    one acre irrigable.   On that I think there is only one thing

7    we can do, and that is to have Col. Bowen come to your land and

8    check it out.

9         THE WITNESS:   Yes.

10        THE COURT:   Where is this located?   Is this overlying land

11   too.

12        MR. VEEDER:   Yes, it is.   It was not originally intended

13   to be included here today, but we will do it because he is

14   here.

15        THE COURT:   All right.

16        MR. VEEDER:   It will appear on government's exhibit 207-

17   C-1, and it can be checked out in Exhibit 207-B-2. The parcel

18   number is 20-12-229, so that the matter is identified.

19        THE COURT:   And it overlies the basin of the Murrieta?

20        MR. VEEDER:   It appears to do that, your Honor, but all

21   we can do is check it out.

22        THE COURT:   Col. Bowen, it overlies the basin?   You have

23   been sworn.

24        COL. BOWEN:   Yes sir.

25        THE COURT:   Will find that the defendant is an overlying

1   owner and has correlative rights.

2       We have a loose end to be picked up between you and the

3   Colnel as to what irrigable acres he has.

4       Is that all the land you have?

5       THE WITNESS:  I have two other pieces, but they are not

6   to be heard today.

7       THE COURT:  Where are they located?

8       THE WITNESS:  Within about half a mile.  I can give you

9   the legal.  It is in Lots 83 and 84, Temecula Land and Water

10  Company.

11  BY MR. VEEDER:

12      Q  Do you own those lands or did you sell those lands?

13      A  I own them.

14      Q  I see your interest was a T.D. beneficiary.

15      A  I sold five acres.  There was at one time 21.something

16  acres, and I sold off five, and there is 16.something that I

17  still own.

18      Q  You have 16.3, which we have here.

19      A  That is right.

20      Q  And of that we show 16.3.irrigable.

21      A  Yes.

22      Q  Are you in agreement with that?

23      A  Yes.

24      THE COURT:  Is this other land overlying Murrieta basin,

25  Col. Bowen?  Can you tell from the map?

1      MR. VEEDER:  Yes, it up in this area here, your Honor, and

2   I will identify the property.

3      COL. BOWEN:  Parcel 238, your Honor.

4      MR. VEEDER:  Parcels 238 and 239-20-7.

5      Yes sir, they overly the basin.

6      THE COURT:  Finds that the defendant is an overlying owner.

7   And he is satisfied with the irrigable acres shown.

8      That disposes of you, Mr. Dutton.

9      MR. VEEDER:  Thank you, Mr. Dutton.

10      Mr. Tarwater.

11                     IRVIN TARWATER,

12   a defendant herein, having been duly sworn, on his oath was

13   examined and testified as follows:

14      THE COURT:  You have been sworn, Mr. Tarwater.

15      THE WITNESS:  I don't think so.

16      THE COURT:  Were you here this morning when we swore

17   everybody?

18      THE WITNESS:  Oh yes, I was.

19                     DIRECT EXAMINATION

20   BY MR. VEEDER:

21      Q  Mr. Tarwater, do I understand that you have some

22   exhibits of your own that you desire to have entered?

23      A  I just have something that I thought ought to supple-

24   ment my original answer to the suit.  I have a couple of docu-

25   ments from the Archives in Washington, one showing the ratifica-

1    tion  of the Treaty of Guadalupe Hidalgo,  and one showing the

2    same thing by the Mexican government, with the signatures of

3    the Presidents of both.

4        Q  would you be willing to put these into the record and

5    leave them in there?

6        A  I would.

7        MR. VEEDER:  They are certified by the proper officials

8    of the United States, so I think they are evidentiary in

9    character.

10       THE COURT:  What number series did you want to give them?

11       MR. VEEDER:  Would the plaintiff United States exhibit

12   number be satisfactory to you?

13       THE WITNESS:  Yes sir.

14       THE COURT:  Make a note yourself.  The numbers will be

15   235 and 236.

16       MR. VEEDER.  We offer these, and we will have them marked

17   when the Clerk gets in here, if that is satisfactory.

18       THE COURT:  All right.

19       (Plaintiff's exhibits 235 and 236 received in evidence)

20       MR. VEEDER:  They are in evidence, Mr. Tarwater.

21       Now, Mr. Tarwater, we observe that you have several parcels

22   of land, but the principal parcel of property which is involved

23   is shown in Exhibit 207-B-2, Parcel 20-4-60.

24       THE COURT:  What parcel number is that in your list

25   207-D?

1        MR. VEEDER:  It is Parcel 20-4-60, and it appears in

2   sixty in your 207-D.

3        THE COURT:  Page 60?

4        COL. BOWEN:  Page 5.

5        MR. VEEDER:  Just follow these on down.

6        THE COURT:  I still can't understand what these parcel

7   numbers are.

8        MR. VEEDER:  It is just plain sixty for Mr. Tarwater,

9   your Honor.

10        THE COURT:  Is this his property or his son's property?

11        THE WITNESS:  It is both my son's and mine and our wives'.

12        THE COURT:  Is that what the answer shows, Mr. Veeder?

13        MR. VEEDER: Yes, that is correct.

14        Q  Now, our records show and it discloses in 207-D that

15   there is a total in this one parcel of 80 acres, that 75.1

16   acres are irrigable and that 4.9 acres are non-irrigable.  Are

17   you in agreement with that, Mr. Tarwater?

18        A  Well, I distinctly would like to say that I don't want

19   to enter into any stipulation or agreement with anybody for

20   the benefit of land off the  grant, Temecula Rancho, and that

21   as to the facts in the case I might agree; but not as to the

22   stipulation or agreement with anyone outside the grant.

23        THE COURT:  We are not asking you to make any agreements

24   with anybody.  We have proof in the record that you have an 80

25   acre parcel there.  Is that your testimony?

1      THE WITNESS:  Yes, subject to the highway and the right

2   of way of the drainage ditch.

3      THE COURT:  We have proof in the record that 75.1 acres

4   of that is irrigable.  Do you want to offer any proof to the

5   contrary?

6      THE WITNESS:  No.  That is all right.

7      THE COURT:  This land is overlaying the Murrieta basin?

8      MR. VEEDER:  Yes, your Honor.

9      THE COURT:  The Colnel says yes.

10     Anything further?

11     MR. VEEDER:  It is true that Mr. Tarwater has several

12   other smaller parcels which are not involved in the tract and

13   are not shown on these exhibits, I mean not before your Honor

14   today.  We are going to contact him again in regard to that.

15   That is all we can do

16     THE COURT:  You are not ready.

17     MR. VEEDER:  That is correct.

18     MR. KRIEGER:  He ownes a piece jointly with John Wilks.

19     THE WITNESS:  That is right.

20     MR. KRIEGER:  You are not taking testimony on that?

21     MR. VEEDER:  No.

22     THE COURT:  The Court would tentatively find that you are

23   an overlying owner and that you have correlative rights in the

24   basin.

25     I don't know whether I will make any findings on your

claim on the

1    claim on the Treaty of Guadalupe Hidalgo or not.  So far I

2    haven't thought there was anything material about them.  But I

3    am happy to have those documents brought in here.

4            MR. VEEDER:  That is a question of law, your Honor.

5            THE WITNESS:  Your Honor, when the question of law comes

6    up can I put in my say-so?

7            THE COURT:  You can tell me briefly what your point is

8    now.

9            THE WITNESS:  Well, I'm not a lawyer or anything like that.

10   But in looking over the law that I have, I found -- I haven't

11   it here, but I will quote from memory more-or-less the meaning --

12   that any person who is a citizen of the United States has a

13   legal right to quote the law to any officer of the United

14   States.

15           THE COURT:  I will not go that far.  But I will give you

16   a chance to state your position.

17           THE WITNESS:  I can bring the law to sustain my position.

18           THE COURT:  What I am interested in particularly, Mr.

19   Tarwater, is what rights do you claim the Treaty of Guadalupe

20   Hidalgo gives you?

21           THE WITNESS:  The Treaty of Guadalupe Hidalgo, in refer-

22   ence to these grants, says substantially this, from memory:

23   That these grants preserve the legal values they may possess,

24   that is, the legal values are a unit to the grant itself, and

25   they are not concerned with the faults or basins or anything of

1   any other nature.   They may be correlated to other grants or

2   other property, under the Mexican law.   And the Treaty also

3   says that legitimate titles to these grants are those that --

4   it says "conformably with United States law," which means, I

5   think, fit into United States law -- legitimate titles which

6   were legitimate titles under Mexican law, and it says that the

7   granteesmay cause their legitimate titles to be acknowledged

8   before the courts.   And everything that I have read in regard

9   to it, it means that is the supreme law of the land, anything

10   in the Constitution or the laws of the state notwithstanding.

11   And  it is upon that upon which I base my rights to the water.

12   Because the original Mexican title, not changed by the patent

13   which was issued by the federal government in this respect,

14   gives distinctly this land to the first owner under Mexican

15   law the right to irrigate and the right to use the water,

16   claim to the use of the water.

17        THE COURT:   This land you have is in an area of one of

18   these old grants?

19        THE WITNESS:   That is right.

20        THE COURT:   All your neighbors' land is in the same grant?

21        THE WITNESS:   That is perfectly okay.

22        THE COURT:   So that you conceed, as far as your neighbors

23   are concerned within areas of that land, your rights are only

24   correlative?

25        THE WITNESS:   I haven't any disagreement with that.   The

1    thing I didn't want to do would be to agree to stipulate or

2    make a horsetrade, we will say, with anybody that they can use

3    the water right on land not within the grant.  In other words,

4    these grants all own their own water right, as I believe.

5        THE COURT:  What about two different grants?

6        THE WITNESS:  That is right; the grants might be correla-

7    tive under United States law, but not under state law.

8        THE COURT:  Weren't the two grants correlative under

9    Mexican law?

10       THE WITNESS:  Conformably to United States law, they are

11   changed somewhat by the patent.  The patent grants, which is

12   quite a few of the original titles, contains stipulations which

13   give the new owner different rights, privileges and immunities,

14   which no state can interfer with, distinctly in the patent.

15       THE COURT:  Are you willing to have this legal question

16   argued at some other time?

17       THE WITNESS:  No, I think it is very pertinent that it is

18   argued at the present time.

19       THE COURT:  Do you want to keep all your neighbors

20   waiting while we argue this out?

21       THE WITNESS:  I think that it is so important that it

22   should be finished at the present time.  I think it is the

23   fundamental issue in the whole case.  In fact, I have a letter

24   from the office of the Secretary of State in which they say

25   that -- in which he says -- that is, I believe I still have

13,022

1    the letter at home -- in which he says there is no record of

2    the Treaty of Guadalupe Hidalgo in the office of the Secretary

3    of State.

4         THE COURT:  What Secretary of State?

5         THE WITNESS:  State of California.

6         THE COURT:  I disagree with you that these things should

7    be argued this afternoon.

8         THE WITNESS:  That's all right.

9         THE COURT:  If you desire, you will be given opportunity

10   at some other time.  But I would rather take these other people

11   and hear this later on.

12        THE WITNESS:  All right.

13        MR. VEEDER:  Thank you Mr. Tarwater.

14        THE COURT:  I think you and Erle Stanley Gardner are the

15   only two who have raised any question about this Treaty of

16   Guadalupe Hidalgo.

17        MR. VEEDER:  There are quite a few in the answers, your

18   Honor.

19        THE COURT:  All right.  I noticed a few of them at the

20   time that they came in.

21        MR. VEEDER:  I will call Mr. Mance as our next witness.

22                   MIKE MANCE,

23   one of the defendants herein, having been duly sworn, on his

24   oath was examined and testified as follows:

25        THE COURT:  You have been sworn.

13,023

1        THE WITNESS: Yes

2        THE CLERK:  State your name please.

3        THE WITNESS:  Mike Mance.

                        DIRECT EXAMINATION

5   BY MR. VEEDER:

6        Q  I would like to inquire, Mr. Mance, are you presently

7   the owner of these lands for which you have filed an answer?

8        A  Well, no, I sold that property about a year ago.

9        Q  Is the party who bought the land from you here, Mr.

10  Mance?

11       A  No.  I didn't get the question.

12       Q  Is the party to whom you sold this land presently in

13  the courtroom?

14       A  No.

15       THE COURT:  To whom did you sell it?

16       THE WITNESS:  To Dr. Charles W. Turner, from Orange --

17  from Santa Ana.

18       THE COURT:  Does he have other lands that he has not sold?

19       MR. VEEDER:  That was the next question, your Honor.

20       Q  Do you have any other lands?

21       A  Yes, I have, right in the town of Murrieta.

22       MR. VEEDER:  That is not before your Honor this afternoon.

23  That is the proposition.

24       Mr. Mance has, he tells me, some exhibits that relate to

25  235 and 236, offered by Mr. Tarwater, and he also takes the

1   position that they are successors under the Treaty of Guadalupe

2   Hidalgo, as I understand:

3       THE WITNESS:  That is correct.

4       MR. VEEDER:  And that on behalf of whatever interest you

5   have in these properties you are asserting that claim.

6       THE WITNESS:  That is right.

7       MR. VEEDER:  This creates a problem for us from the

8   standpoint as to whether evidence as to irrigated and irrigable

9   acreage would be significant from Mr. Mance, and I would like

10  to have a ruling from your Honor.

11      THE COURT:  I want to find out what irrigated and irrig-

12  able acres he has.  What does the record show?

13      MR. VEEDER:  The record we have shows --

14      THE COURT:  Are you talking about the land that he still

15  owns?

16      MR. VEEDER:  This is the land he sold.  The record shows

17  344.4 acres of irrigable land.

18      THE COURT:  What parcel is it?

19      MR. VEEDER:  You will find the parcel number in the

20  Exhibit 207-B-2 to be Parcel 20-4-32, 20-4-33, 20-4-36, 20-4-63,

21  20-4-64.

22      And then, as I understand it, this last parcel which is

23  20-2-709, you own a house?

24      THE WITNESS:  Yes, a house and maybe about a half an acre

25  of land.

1    MR. VEEDER:  And that is in Murrieta?

2    THE WITNESS:  That is correct.

3    THE COURT:  That is not in the compilation?

4    THE WITNESS:  No.

5    MR. VEEDER:  That is right.

6    THE COURT:  Of that 344 acres, how much is shown to be

7    irrigable by your evidence, Mr. Veeder?

8    MR. VEEDER:  The 344 acres is the irrigable acreage, and

9    we show that 49 acres is not irrigable, and I will give you the

10   total.

11   The total is 393 acres.  Is that about right, Mr. Mance?

12   THE WITNESS:  Yes, that is about right.

13   MR. VEEDER:  The aggregate of all the acreage in all

14   these parcels is 393, with 344.4 acres irrigable.

15   THE COURT:  All I think you can do on that is to write a

16   letter to Mr. Turner and tell him that these are the facts,

17   unless he wants to come in and present some evidence.

18   MR. VEEDER:  You direct me to write him that letter?

19   THE COURT:  Yes.

20   MR. VEEDER:  Mr. Mance has some exhibits here.

21   You might show that to his Honor.

22   THE WITNESS:  That was patented in 1916.  That is a

23   photostatic copy.  And this is printed in so that it is under-

24   standable better.  It is the same thing as the other.

25   MR. VEEDER:  May I interrupt and ask Mr. Tarwater a

1   question?

2        When we start marking these, I find that you have three

3   documents.  Will you state into the record what those are, Mr.

4   Tarwater?

5        MR. TARWATER:  One is the ratification of the Treaty of

6   Guadalupe Hidalgo by the Senate of the United States, signed

7   by the President.  The other is the ratification of the Treaty

8   of Guadalupe Hidalgo signed by the President of Mexico.

9        MR. VEEDER:  And the third one?

10       MR. TARWATER:  I'm trying to find it.

11       MR. VEEDER:  Just take a look at those.

12       Mr. Mance advised me that he would like to have those

13  marked as exhibits that your Honor has, and the next number

14  would be 237.

15       THE COURT:  237 will be the third one of Mr. Tarwater.

16       MR. VEEDER:  May we reserve 237 for the third document?

17       THE COURT:  Mark the third one 237 right now, received in

18  evidence, and later on figure which is which.  The Clerk can

19  give them a number.  We can find out later on what they are.

20       MR. VEEDER:  I hadn't previously seen them, your Honor.

21       THE COURT:  Exhibits 235, 236 and 237.

22       MR. VEEDER:  They are offered in evidence.

23       THE COURT:  They are received in evidence.

24       Mr. Mance has handed in a copy of patents certified by

25  the County recorder of San Diego County.  And that will be

1  marked 238 and received in evidence.

2      MR. VEEDER:  This relates to the same proposition of law

3  that was raised by Mr. Tarwater.

4      THE COURT:  And also a photostatic copy of a document,

5  together with a translation of it.  The photostatic document

6  will be Exhibit 239, and the translation will be 239-A, all

7  received in evidence.

8      (Plaintiff's Exhibits 235, 236, 237, 238, 239 and 239-A

9  received in evidence.)

10      MR. VEEDER:  Mr. Mance, we will write to your grantee and

11  tell him of this evidence.

12      THE WITNESS:  He has other property in Murrieta.

13      MR. VEEDER:  I have to check that out.  I don't have a

14  record of it.

15      THE WITNESS:  It is right there between Murrieta, east of

16  Wildomar.

17      MR. VEEDER:  We have to take them in the order they appear

18  along that map.

19      THE WITNESS:  I don't know whether he can come or not.

20  He got a broken leg.  He was in an accident last week.

21      MR. VEEDER:  We will be in touch with him and I will tell

22  him what you said, and thank you very kindly.

23      THE WITNESS:  All right.

24      MR. VEEDER:  I will call George C. Contreras.

25                      GEORGE C. CONTRERAS,

1   one of the defendants herein, having been duly sworn, on his

2   oath was examined and testified as follows:

3           THE COURT:  Have you been sworn?

4           THE WITNESS:  Yes.

5           THE COURT:  State your name please.

6           THE WITNESS:  George C. Contreras.

7                       DIRECT EXAMINATION

8   BY MR. VEEDER:

9           Q  Mr. Contreras, did you sign and file an answer as

10  George C. Contreras and Avena M. Contreras?

11          A  Yes, that is correct.

12          MR. VEEDER:  The record appears in Exhibit 207-B-2 that

13  Mr. Contreras is the owner of Parcels 20-4-29 and 20-4-37.

14          Q  Our records show, Mr. Contreras, that you have an

15  aggregate of 86.5 acres, and that of that we find that you have

16  78.2 acres which are irrigable.  Do you agree with that?

17          A  That is correct.

18          MR. VEEDER:  Col. Bowen, it is correct that these lands

19  overlie the Murrieta Valley?  Is that correct?

20          COL. BOWEN::  That is correct.

21          MR. VEEDER:  That was short and sweet, Mr. Contreras.  I

22  have nothing else unless you have something to say.

23          THE COURT:  The Court would find that you are an overlying

24  owner, with correlative rights.

25          MR. VEEDER:  Gordon D. Mouse.

1     MR. STAHLMAN:  I don't wish to belabor this, but they have

2  everything here but the Treaty.  The Treaty is not here.

3     THE COURT:  We will take that up later.

4     MR. VEEDER:  I think your Honor can take judicial notice

5  of it, I hope.

6               GORDON D. MOUSE,

7  being one of the defendants herein, having been duly sworn, on

8  his oath was examined and testified as follows:

9     THE COURT:  Were you sworn this morning?

10     THE WITNESS:  Yes, I was sworn this morning.

11             DIRECT EXAMINATION

12  BY MR. VEEDER:

13     Q  Mr. Mouse, are you the Gordon Mouse and Virginia D.

14  Mouse who filed  in this litigation an answer claiming 46.32

15  acres in Riverside County?

16     A  I am.

17     MR. VEEDER:  Our records show that these lands, your

18  Honor, appear in Exhibit 207-B-2 as Parcel 20-4-25.  We find

19  that he has a total of 46.3 acres, and that of that 46.3 acres

20  46.3 acres are irrigable.

21     THE COURT:  This land, Col. Bowen, overlies the basin of

22  the Murrieta?

23     COL. BOWEN:  Yes.

24     MR. VEEDER:  We have nothing more in this regard.

25     THE COURT:  Anything further?

1      THE WITNESS:  Nothing.

2      MR. VEEDER:  Thank you.

3      THE COURT:  I find that you are an overlying owner and that

4 all your land is irrigable.

5      (Recess)

6      MR. VEEDER:  I will call Mr. Russell O. Freeman.

7                  RUSSELL O. FREEMAN,

8 one of the defendants herein, having been duly sworn, on his

9 oath was examined and testified as follows:

10      THE CLERK:  State your name please.

11      THE WITNESS:  Russell O. Freeman.

12      MR. VEEDER:  He has been sworn.

13      You were here, were you not, Mr. Freeman?

14      THE WITNESS:  Yes.

15                  DIRECT EXAMINATION

16 BY MR. VEEDER:

17      Q  I have this question to ask you.  Are you the Russell

18 O. Freeman who, with Gladys E. Freeman filed an answer in this

19 proceeding?

20      A  Yes I am.

21      MR. VEEDER:  Referring to Exhibit 207-B-2, for the record,

22 Mr. Freeman's lands which are here involved are 20-4-50.  The

23 record shows, on the basis of our investigation, that there is

24 a total of 75.5 acres, of which 73.3 acres are irrigable and

25 2.2 acres are non-irrigable.

13,031

Q   Do you agree with that, Mr. Freeman?

A   That is about right, sir.

MR. VEEDER:   Col. Bowen, are these lands overlying?

COL. BOWEN:   Yes sir.

THE COURT:   The Court will find that you are an overlying owner and have correlative rights.

MR. VEEDER:   There are two other parcels we can clear up now perhaps.

THE COURT:   All right.

MR. VEEDER:   19-42 and 19-42-61 and 65.

Q   You do have two pieces of property in the Town of Murrieta, do you not?

A   Yes.

Q   For which you make only a domestic claim?

THE WITNESS:   The parcels you mentioned are in the Wildomar area.

MR. VEEDER:   Beg your pardon.

THE COURT:   What are the parcel numbers in 207-D?

MR. VEEDER:   You mean the two?   No, they are not in 207-D. These are domestic properties at Wildomar and he is making no claim for water other than domestic.   They will be separately handled. But I thought while he is here we could take care of these two.

THE COURT:   All right.

What are they, town lots?

P 7

1        THE WITNESS:  Yes.

2        THE COURT:  The court will find that you are an overlying

3    owner in Wildomar.

4        MR. VEEDER:  That is all your Honor.

5        Mr. Margolis.

6                    ABRAHAM MARGOLIS,

7    one of the defendants herein, having been duly sworn, on his

8    oath was examined and testified as follows:

9        THE CLERK:  State your name please.

10        THE WITNESS:  Abraham Margolis.

11                    DIRECT EXAMINATION

12    BY MR. VEEDER:

13        Q  Are you the Abraham Margolis who, with Pauline Margolis,

14    filed an answer in this proceeding?

15        A  I did.

16        MR. VEEDER:  The records show from Exhibit 207-B that

17    Mr. Margolis is the owner of property Parcels No. 47 and 49;

18    that in the Parcel No. 47 there is a total of 52.7 acres, 50.5

19    acres of which are irrigable and 2.2 acres of which are non-

20    irrigable, and the property numbered 49, our records show --

21    and that would be in 207-B--a total of 32.7 acres, of which

22    23.3 acres are irrigable and 9.3 acres are non-irrigable.

23        Do you agree with that, Mr. Margolis?

24        A  Right.

25        MR. VEEDER:  Col. Bowen, are those lands overlying, on

13,053

P  8

1    the basis of your investigation?

2         COL. BOWEN:  Mostly overlying.  Part of it, however, is

3    on basement complex.

4         THE COURT:  A portion of it runs into the basement complex?

5    complex?

6         COL. BOWEN:  Yes, sir.  The Santa Rosa escarpment.

7         Is this an exhibit, Mr. Veeder?

8         MR. VEEDER:  Yes, you may refer to 15-E, if that is

9    agreeable with your Honor.

10        THE COURT:  Yes.

11        COL. BOWEN:  As shown on 15-E, in the center of Section

12   19, Township 7 south range 3 west the portion of the basement

13   complex that juts northeasterly of the Santa Rosa grant line

14   is within Mr. Margolis' property.

15        THE COURT:  The court finds that any water you will find

16   in the basement complex is vagrant, local, percolating water

17   and not part of the stream system.  The balance of your land is

18   overlying and you have correlative rights.

19        I would suggest the findings with reference to the 15

20   Series, but the final determination will be made upon the land

21   itself in case of dispute as to the location of the line between

22   the alluvium and the basement complex.  Is that agreeable?

23        MR. VEEDER:  That is agreeable.  Does your Honor order

24   that we check that out from the standpoint of acreage?

25        THE COURT:  I don't think that is necessary.  If you want

1    to, you may, but it doesn't make any difference.  You probably

2    couldn't get a well up there anyhow.  And if you did, that

3    well wouldn't be part of the stream system.

4         MR. VEEDER:  All right your Honor.  We have nothing more.

5         THE COURT:  Thank you.

6         MR. VEEDER:  Thank you Mr. Margolis.

7         Mr. Perry.  Let the record show that there has been no

8    answer filed by Mr. Perry.

9                        MOSES E. PERRY,

10   one of the defendants herein, having been duly sworn, on his

11   oath was examined and testified as follows;

12        THE CLERK:  State your name please.

13        THE WITNESS:  Moses E. Perry.  I was sworn here this

14   morning.

15                      DIRECT EXAMINATION

16   BY MR. VEEDER:

17        Q  You own lands in the Murrieta Valley; is that correct?

18        A  A small tract; yes, sir.

19

20

21

22

23

24

25

P 1

1    Q  But you did not answer in this case?

2    A  No sir.

3    MR. VEEDER:  Your Honor, the reference will be in

4    Exhibit 207B-2, Parcel 21.

5    THE COURT:  When you say Parcel 21, you refer to Exhibit

     207D?

6

7    MR. VEEDER:  That is correct, Your Honor, and you can

     find it there.  Our records show that Mr. Perry has a tract

8    of land size 2.8 acres and 2.8 acres are all irrigable.

9    Q  Is that correct?

10   A  That is correct.

11   MR. VEEDER:  Have you anything more to say?

12   THE COURT:  Is this land overlying the Murrieta Basin?

     THE WITNESS:  In Murrieta proper, Your Honor.

13

     There is only one statement I have to make.  I have

14   know all my life, according to State and National laws and

15   all, that the owner of the land, unless it had otherwise been

16   deeded away, was entitled to everything above and everything

17   below.  All I ask is my rights on the tract of land that I

18   now own or possess, whether it might be in another location

19   or there.  But at the present time it is located in this basin.

20   THE COURT:  Of course, that is not the law of water rights.

21   For instance, suppose you put down a well and you pump 300

22   inches of water out of your little piece of ground, and you

     have some neighbors who were also on the stream system.  They

23   would have the right to complain if you took more than your

24   share of the water.  So the law as you stated is a layman's

25   view of the law, but it is not the water law of California.

P 2

1    THE WITNESS:  I meant in making that statement that I
2  am entitled, as I understand it, according to the laws of our
3  land, to the water that I might need for domestic or for
4  irrigation, but not to take it out and sell it or just will-
5  fully pump it away and waste it.

6    THE COURT:  You are entitled to reasonable use.  Probably
   you will have no problem with your 2.8 acres.

7    MR. VEEDER: I will call Mr. Rieder.

8    The previous piece of property, Col. Bowen, was overlying,
9  was it not?

10                      KARL RIEDER,
11  one of the defendants herein, having been duly sworn, on his
12  oath, was examined and testified as follows:

13    THE COURT:  You've been sworn?

14    THE WITNESS:  Yes sir.

15    THE CLERK:  State your name please.

16    THE WITNESS:  Karl Rieder.

17                DIRECT EXAMINATION BY MR. VEEDER
   BY MR. VEEDER:

18    Q  Are you the Karl Rieder who, with Ida G. Rieder, filed
19  an answer in this proceeding?

20    A  Yes.

21    MR. VEEDER:  I am now referring to Parcel 20-4-1, your
   Honor, and the number is 73.

22    THE COURT:  The parcel is 73 in Exhibit 207D?

23    MR. VEEDER:  That is right.

24    THE COURT:  If you would correctly state these matters
25  in the record you might save us a lot of time later on trying

1  to find some of these.   Parcel 73 in Exhibit 207D.

2  BY MR. VEEDER:

3      Q   The records show, Mr. Rieder, 4.5 acres is your total

4  tract for that one parcel, and we have it 4.5 acres irrigable.

5  You have another parcel of land which is not included in the

   notices of today, however.

6      A   No, I have only one.   That other one I sold a year

7  ago.   It has a house and lot.   Is that the one you mean?   I

8  sold that over a year ago.

9      THE COURT:   To whom did you sell that?

10     THE WITNESS:   Marvin Curran.

11 BY MR. VEEDER:

12     Q   And that is in what town?

       A   Right in Murrieta.

13     Q   It's in the town of Murrieta?

14     A   Yes.

15     THE COURT:   Does it have a number?

16     THE WITNESS:   It is on A and Clay street corner.

17 BY MR. VEEDER:

18     Q   The number we have is 710.   The land, our records show,

19 is .2 of an acre and there is .2 of an acre irrigable.

20     A   I have only the one parcel there.

       MR. VEEDER:   On page 37 of Exhibit 207D, your Honor.

21     Q   Have you observed, is it deeper to water now than it

22 was when you drilled your well, Mr. Rieder?

23     A   Yes.   Here is the log.   When I drilled the well there

24 was 29 feet through the ground.   I got a 1-horsepower motor.

25 That's all I have.   And now the gentleman here, he tested it

P 4

1    about two months ago and it was down to 82 feet.  So that is

2    53 feet below.

3          THE COURT:  This 4½ acre piece is all irrigable, the

4    government's testimony shows ?

5          MR. VEEDER:  That is correct.

     THE WITNESS:  Yes.

6          THE COURT:  This is overlying land over the basin?

7          COLONEL BOWEN:  Yes your Honor.

8          THE COURT:  And Curran's lot in the town of Murrieta?

9          COLONEL BOWEN: Yes, sir.

10         THE COURT:  The court finds that they are both overlying

11   owners.

12         Thank you, Mr. Rieder.

13         MR. VEEDER:  Next is Silas M. Hathaway.

14                       SILAS M. HATHAWAY,

15   one of the defendants herein, having been duly sworn, on his

16   oath was examined testified as follows:

17         THE CLERK:  State your name please.

18         THE WITNESS:  Silas M. Hathaway.

19                    DIRECT EXAMINATION

20   BY MR. VEEDER:

21         Q  Are you the Silas M. Hathaway, who with Shirley J.

22   Hathaway, filed an answer in this proceeding?

23         A  I am.

24         MR. VEEDER:  The record in this instance shows, in

25   Exhibit 207B2, your Honor, the number is 20-4-38, and you will

     find the 38 in Exhibit 207D.

           Q  Our records show, Mr. Hathaway, that you have a total

P 5

1  of 40 acres, 37.1 acres of which are irrigable and 2.9 acres

2  of which are non-irrigable.  Do you agree with that calculation?

3      A  Yes I do.

4      MR. VEEDER:  Col. Bowen, is that land overlying?

5      COL. BOWEN:  Yes, sir.

6      MR. VEEDER:  We have nothing further on this, your Honor.

7      THE COURT:  You have correlative rights with the other
people on the stream system.

8      Call the next witness.

9      MR. VEEDER:  Mr. Cain.

10     I would liked to have marked for identification the

11  engineering report for the property of Carlington Cain, and

12  the number will be 240.

13     (The document above referred to was was marked for ident-

    ification as Plaintiff's Exhibit 240.)

14                    CARLINGTON CAIN,

15  one of the defendants herein, having been duly sworn, on his

16  oath was examined and testified as follows:

17     THE CLERK:  State your name please.

18     THE WITNESS:  Carlington Cain.

19                    DIRECT EXAMINATION

20  BY MR. VEEDER:

21     Q  Mr. Cain, I hand you the exhibit marked 240, which is

22  the engineering report prepared by Col. Bowen, and I ask you

23  to state whether that engineering report is satisfactory to

    you?  Have you examined it, first?

24     A  I glanced at it briefly this morning and in general

25  it is okay.  There is one or two little discrepancies that I

1  have discovered as to the size of the casement of the well etc.,

2  but otherwise it's okay.

3      Q  Would you state into the record where those differences

4  are, and then we can, if they are material to you, check them

5  out.

6      A  I don't want to take the time of the court.  I just

7  happened to get hold of the logs on both the wells on my

8  property, and on the bigger well the casing is marked a 12 inch

9  casing and on the smaller well it is marked a 16 inch casing.

10     Q  Could you submit those logs to us?  We would return

11 them to you.

12     A  Yes I can.

13     Q  Do you have them with you?

14     A  Yes.  I will give them to you.

15     MR. VEEDER:  We might as well have them reproduced, if

16 that is agreeable, and substitute copies and return these to

17 the witness.

18     THE COURT:  What is that exhibit number on the well logs?

19     THE WITNESS:  Is this presentable in court?  This is a

20 copy I made of the smaller well.  It was drilled by Walt Gordon

21 in October 1928, and the well casing is marked 16 inches.

22     MR. VEEDER:  We are trying to get as many as these well

23 logs into the record as we can.

24     Q  Do you have another well log besides this?

25     A  No.  I know where I can get it.

       Q  Can I ask you to mail it to my office?

       THE COURT:  If you will mail it in the government will

make a copy and we will turn back the original and use the copy.

1    THE WITNESS:  All right.

2    MR. VEEDER:  What number is that, Mr. Clerk?

3    THE CLERK:  16-A-162, your Honor.

4    (The document above referred to was marked for identifi-

5    cation as Plaintiff's Exhibit 16A-162.)

6    THE WITNESS:  This is the other log, if you wish that.

7    MR. VEEDER:  You found the other one, then?

8    THE WITNESS:  Yes, both of them.  This is marked a 12
inch.

9    MR. VEEDER:  And that will be 16A-163 then?

10    THE CLERK:  Yes.

11    (The document above referred to was marked for identifi-

12    cation as Plaintiff's Exhibit 16A-163.)

13    MR. VEEDER:  We will reproduce those and mail them back
to you.

14    Q  Were those flowing wells when you drilled them, do you

15    know?

16    A  How do you mean?

17    Q  Were they artesian?  Were they pressure wells?

18    A  Not since I have owned the property, no.

19    Q  Do you know any of the history of them that showed

20    them to be artesian?

21    A  I have been told that the larger well at one time did
flow part of time.

22    MR. VEEDER:  Your Honor, subject to the variance between

23    the casing measurements that we have  in Exhibit 240 and the

24    Exhibits 16A-162 and 163, we offer Exhibit 240.

25    THE COURT:  Col. Bowen, is that correct, with the

13,042

P 11

1  modifications indicated?

2      COL. BOWEN:  Yes, sir.

3      THE COURT:  Plaintiff's Exhibit 240 received in evidence.

4      (Plaintiff's Exhibit No. 240 was received in evidence.)

5      MR. VEEDER:  Are these lands overlying?

      COL. BOWEN:  Yes, sir.

6      THE COURT:  And also Exhibits 16A-162 and 16A-163 are

7  received in evidence as part of the well log files.

8      (Plaintiff's Exhibits 16A-162 and 16A-163 were received

9  in evidence.)

10      THE COURT:  How many acres do you have there?

11      THE WITNESS:  I have a hundred acres, sir.

12      THE COURT:  The court finds that you are an overlying

13  owner and have correlative rights with the other people in-

14  terested in the stream system.

      I think that is all we need.

15      THE WITNESS:  Thank you.

16      MR. VEEDER:  The court says that he can run these copies

17  right now, if you are going to be here a little while, and we

18  give them to you right now.

19      THE COURT:  Call the next witness.

20      MR. VEEDER:  Fred G. Mays.

21                    FRED G. MAYS,

  one of the defendants herein, having been duly sworn, on his

22  oath was examined and testified as follows;

23      THE COURT:  Did you inquire of Mr. Cain whether he had

24  filed an answer in this case?

25      MR. VEEDER:  Yes; he had filed an answer.

13,043

1    THE COURT:  You have been sworn, haven't you?

2    THE WITNESS:  Yes.

                    DIRECT EXAMINATION

BY MR. VEEDER:

    Q   Are you the Fred G. Mays who, with Carrie C. Mays,

filed an answer in this proceedings?

    A   That is right.

    MR. VEEDER:  For your reference, your Honor, I always

refer first to Exhibit 207-B2, which is the description of the

lands, and in Exhibit 207-D the reference will be to 4 on the

first parcel.

    Q   On our investigation it appears that in that Parcel 4

there is a total of 20 acres, 19.3 acres of which are irrigable

and .7 acres of which are non-irrigable.  Are you in agreement

on that, Mr. Mays?

    A   That would be on Lot 5, would it?

    Q   That would be on the north half of Block 5, yes, that

is correct.

    A   That is right.

    THE COURT:  This land is overlying the Murrieta Basin,

Col. Bowen?

    COL. BOWEN:  Yes, sir.

    THE COURT:  What is the other parcel number?

    MR. VEEDER:  Parcel 12 in Exhibit 207-D, your Honor.

There is a total of 37.5 acres in that Parcel 12.  We find

that 37.5 acres of that are irrigable.

    The next parcel is Parcel 34 in Exhibit 207-D.

    THE COURT:  Twenty acres irrigable.

P 13

1    MR. VEEDER:  Twenty acres, and it is all irrigable.

2    We show a total of 77.5 acres, 76.8 acres of which are

3    irrigable.

4    Q  Do you agree with that, Mr. Mays?

5    A  That is about right, yes.

     MR. VEEDER:  Col. Bowen are those lands overlying?

6    COL. BOWEN:  Yes, sir.

7    MR. VEEDER:  Nothing more your Honor

8    THE COURT:  You have correlative rights with the other

9    people interested in the stream system.

10   MR. VEEDER:  James David Buchanan.

11                    JAMES DAVID BUCHANAN,

12   one of the defendants herein, having been duly sworn, on his

     oath was examined and testified as follows:

13   THE CLERK:  State your name please.

14   THE WITNESS:  James David Buchanan.

15                    DIRECT EXAMINATION

16   BY MR. VEEDER:

17   Q  Are you the James David Buchanan, who with Maude M.

18   Buchanan, filed an answer in this proceeding?

19   A  I am.

     THE COURT: ·You were sworn, too?

20   THE WITNESS:  Yes.

21   MR. VEEDER:  The records show, your Honor, that this is

22   Parcel 26 in 207-D.

23   THE COURT:  The government's report shows that you have

24   26 acres and it is all irrigable, is that agreeable?

25   THE WITNESS:  Yes.

P  14

1    MR. VEEDER:  Are you in agreement on that?

2    THE WITNESS:  Yes.

3    MR. VEEDER:  Col. Bowen, are these lands overlying?

4    COL. BOWEN:  Yes, sir.

5    MR. VEEDER:  That is all we have for you, Mr. Buchanan.
Cary W. Carr.

6                        CARY W. CARR,

7    one of the defendants herein, having been duly sworn, on his

8    oath was examined and testified as follows:

9    THE COURT:  Have you been sworn?

10   THE WITNESS:  Yes, sir.

11                   DIRECT EXAMINATION

12   MR. VEEDER:  That will be Parcel No. 46 on your Honor's
record.

13   Q  Are you the Cary W. Carr who, with Alice Carr, filed

14   an answer in this proceeding?

15   A  Yes.

16   Q  Our records show that your parcel is Parcel 46.  There

17   are 47.5 acres total, of which 42.1 acres are irrigable.  Do

18   you agree with that?

19   A  I do.

20   MRS. CARR:  Your Honor please, that is Parcel 49.  That
is an error there.

21   THE WITNESS:  It is Lot 49.

22   THE COURT:  We are using a different numbering system.

23   These are parcels in an exhibit that we have here.

24   THE WITNESS:  I am sorry.  I thought it was the legal

25   description.  Thank you.

MR. VEEDER:  It will show up in Exhibit 207-B2.

THE COURT:  That is, on the map it is 49, but in our exhibit here it is 46.

MR. VEEDER:  We have nothing more your Honor.

THE COURT:  You are an overlying owner with correlative rights.

THE WITNESS:  Are we overlying, sir?  I understood we were not in the overlying district.

THE COURT:  Colonel Bowen?

COL. BOWEN:  Your Honor, it overlies in part, and part of it is in basement, as shown on Plaintiff's Exhibit 15-E for identification, in Section 19 Township 7 south range 3 west.  The portion of the basement complex that extends north-easterly of the Santa Rosa grant line in the center of that section.

THE COURT:  Do you know where that basement complex of the mountains comes down on your property?

THE WITNESS:  Yes, I believe I do, your Honor.

THE COURT:  How much of your acreage is southerly of that line?

THE WITNESS:  We have just 47.9 acres in that Lot 49, and we are at the extreme westerly end of it, and we have been told that our water is percolating and that we are south and west of the fault.

THE COURT:  Do you have a spring or well of any kind?

THE WITNESS:  We have two wells and we did have a spring that broke out about a year ago and ran for several months. It is dried up now.

1    THE COURT:  What kind of wells do you have?

2    THE WITNESS:  Our wells are 95 feet deep, 10 inch casing.

3    THE COURT:  What do you use them for?  Domestic or

4    irrigation?

5    THE WITNESS:  Well, we have 225 trees out and 100 apple

     trees as an experiment, and then we intend to put more out if

6    they prove successful.

7    THE COURT:  How much water do you get out of these wells?

8    THE WITNESS:  I am sorry, I don't know sir, we just

9    irrigate them when we feel it is necessary to irrigate them.

10   THE COURT:  I would be willing to wager that your wells

11   are into the basin.

12   MR. GIRARD:  They are in the younger alluvium on this

     exhibit--K1 and J5.

13

14   MR. VEEDER:  Referring to Exhibit 15-E.

15   THE COURT:  The court will find that as to that portion

16   of ground that overlies the basement complex, as shown by the

     15 series, any water that is found would be vagrant, local, la-

17   percolating water and not part of the stream system; and that

18   the parts of your land that overlie the younger and older

19   alluvium, and the map indicates that your wells are in the

20   younger or older alluvium, are overlying lands and that you

21   have correlative rights with your neighbors.  If any issue

22   ever arose as to the exact line between the alluvium and the

     basement complex, it could be ascertained on the ground.

23   Is this spring in the hilly part of it?

24   THE WITNESS:  It is on the top of one of the hills, yes,

25   one of the higher points.

13,648

1    THE COURT:  The chances are that that is in the area we
2  speak of as basement complex.

3    THE WITNESS:  Then we are not wholly within--

4    THE COURT:  The map shows that these wells have been
5  listed as being within the basin, and the fact that the wells
   are deep and that you can pump water out of them would indicate
6  that they are not in the basement complex.  That is an unfor-
7  tunate thing about this basement complex.  You don't get that
8  kind of water if it is solid rock.

9    MRS. CARR:  We went through solid rock.  Where we live
10  there are all hills up where we are.  We join the Va  ranch.

11    MR. VEEDER:  We ought to have the lady sworn.

12    MR. GIRARD:  This is the one that will raise that problem
   of exportation in the whole Murrieta.  It was the only one that
13  goes into the basement complex.

14    THE COURT:  Have you had a survey of this, Col. Bowen?

15    COL. BOWEN:  We have not made a detailed survey on this
16  property, your Honor.

17    THE COURT:  I would suggest that you put it on the list
18  to make one.

19    COL. BOWEN:  Yes, sir.

20    THE COURT:  Submit it to the owners and see what we can
   come up with as far as the toe line of the basement complex and
21  the location of the spring and the wells are concerned.  Is
22  that agreeable?

23    MR. VEEDER:  Fine, your Honor.

24    THE WITNESS:  Thank you.

25    THE COURT:  If you receive a report and find that it is

P  18

1    satisfactory and sign it and send it back, you will not have

2    to come back.  If you want to come back, we will be glad to

3    hear you.

4         MR. VEEDER:  Alfred W. Tordoff.

5                        ALFRED W. TORDOFF,

6    one of the defendants herein, having been duly sworn, on his

     oath was examined and testified as follows:

7

8                        DIRECT EXAMINATION

9    BY MR. VEEDER:

10        Q  Are you the Alfred W. Tordoff who, with Mary E. Tordoff,

     answered in this proceeding?

11        A  Yes.

12        THE COURT:  Have you been sworn?

13        THE WITNESS:  Yes, sir.

14        MR. VEEDER:  In Exhibit 207-B2 we find that his land is

15   Parcel 20-4-11.  Of that land there is a total of 20 acres,

16   15.2 acres of which, our records show, are irrigable, and 4.8

17   acres of which, our records show, are non-irrigable.

18        THE WITNESS:  That is the Temecula wash.  The Santa

     Margarita wash goes through that place.

19        MR. VEEDER:  And you would agree that 4.8 acres are non-

20   irrigable?

21        THE WITNESS:  Well, I would say they were now, yes.

22        THE COURT:  It is the wash area?

23        THE WITNESS:  The dikes were pushed up from the ground

24   level.

25        THE COURT:  This is the wash that carries water in the

     winter?

1    THE WITNESS:  Yes.

2    THE COURT:  Runs through the middle of your property?

3    THE WITNESS:  Practically, yes sir, corner to corner.

4    It lays within the Spanish land grant.

5    THE COURT:  Overlying the basin, Col. Bowen?

6    COL. BOWEN:  Yes, sir.

7    THE COURT:  The court will find that the land is both
riparian and overlying and that its rights are correlative

8    with the rights of other owners in the system.

9    MR. VEEDER:  We have nothing more your Honor.

10   THE COURT:  Thank you Mr. Tordoff.

Belt 7  11   MR. VEEDER:  I will call Mrs. Dovie Sykes.

12                    DOVIE SYKES,

13   one of the defendants herein, having been duly sworn, on her

      oath was examined and testified as follows:

14   THE COURT:  Have you been sworn, Mrs. Sykes?

15   THE WITNESS:  Yes, sir.

16                DIRECT EXAMINATION

17   BY MR. VEEDER:

18   Q   Are you the Dovie Myrtle Sykes who answered in this

19   proceeding?

20   A   Yes, sir.

21   Q   You have several parcels of land, is that not right,
      Mrs. Sykes?

22   A   Yes, sir.

23   MR. VEEDER:  We will run these through for the record,

24   your Honor,  I think the principal piece of property would be

25   found in your 207-D as 52.  To assist in locating the property,

1   207-B2 shows 20-4-52, 20-12-232, 20-7-233, 20-7-235, 20-7-237

2   and 20-7-300.  There are quite a number of parcels and we are

3   trying to handle this all at once.

4       Q  Now, our figures show that there are approximately

5   288 acres that you own; is that correct?

6       A  Yes, that is about right.

7       Q  And of that total we showed 276.16 acres irrigable; is

    that about correct?

8       A  Yes, that is near what I figured, without the surface

9   of the creeks.

10      Q  And we show that 11.62 acres are non-irrigable.

11      A  I am satisfied with that.

12      MR. VEEDER:  And Col. Bowen, are these lands of Mrs. Sykes'

    found by you to be overlying lands?

13      COL. BOWEN:  I am checking that out.

14      THE COURT:  On Parcel 300, appearing on page 16 of your

15  Exhibit 207-D, you have an error in that you have irrigable

16  acres 12.4, a total acreage of 5.5.  So something is wrong

17  there.

18      MR. VEEDER:  I will have to check that myself.

19      The figure that we used on that is 12.4 total and 12.4

20  irrigable.

    THE COURT:  You have 5.5 here.

21      MR. VEEDER:  I will check that out, your Honor.  But

22  the totals that I gave Mrs. Sykes are these ones.

23      THE WITNESS:  It is near that.  I hadn't quite got the

24  amount.

25      MR. VEEDER:  I want to be sure we are right on it.

P 21

1    THE WITNESS:  How many different in the total?

2    MR. VEEDER:  The total that I have here is 287.78 acres,

3    which I used as 288.

4    THE COURT:  Total acres?

     MR. VEEDER:  Total acres.

5    THE WITNESS:  I had around 271, I thought, and about 266

6    irrigable, wasn't it?  Or was it 271?

7    MR. HOWARD SYKES:  There was 12 acres that Mr. Veeder

8    didn't have on his record that was picked up later someplace.

9    MR. VEEDER:  We did, and we have added that.

10   MR. HOWARD SYKES:  That 308 or 108--which was it?

11   THE COURT:  300 probably, 12.4.

12   THE WITNESS:  It was the last one on that list we made up

     in that room.

13   MR. VEEDER:  Yes.

14   THE WITNESS:  I went by taking the assessment papers.

15   MR. VEEDER:  State your name please sir.

16   MR. SYKES:  Howard Sykes.

17   MR. VEEDER:  These figures are as close as we can get.

18   THE COURT:  Yes, for all practical purposes.

19   THE WITNESS:  It is not exact.

20   THE COURT:  We are waiting to see what the Colonel's

21   opinion is as to whether they are overlying lands, I take it.

22   COL. BOWEN:  It is my opinion that they are all overlying,

     your Honor.

23   THE COURT:  The court finds that your rights are correl-

24   ative with those of other owners on  the stream system.

25   MR. VEEDER:  That is all Mrs. Sykes.  Thank you very much.

13,053

THE CLERK:  Your Honor, I returned the originals of those two well logs to Mr. Veeder and have marked the copies.

THE COURT:  The record will show that we have substituted copies for the two well logs 16A-162 and 163.

MR. VEEDER:  Your Honor, answers have been filed by Charles E. Leslie and Faye R. Leslie, husband and wife.  My records now show that the new owner is Arthur Peters.

Is Mr. Peters or Mr. Leslie in the courtroom?

I know that he was in a hurry to leave, your Honor, and I haven't seen him since lunch.  But I can put into the record what there was agreement on on this record and write him a letter and quote the transcript to him, if you want me to do that.  I would like to finish this.  I am sorry he left, but I didn't know he was going.  I will do whatever your Honor wants me to do.

THE COURT:  I am just thinking of how to make a record on this.  You can write him a summary of it and ask him to approve and sign it and file it, or you can state it into the record and send him a copy of that part of the transcript and ask him to approve it.  Read it in while you are here and send him the letter and get him to confirm it.

MR. VEEDER:  The record shows that his property would appear in Exhibit 207-B2 as Parcel 20-4-44.  It would be in your Honor's Exhibit 207-d as 44.  The record shows 18.3 acres total and 18.3 irrigable acres.

THE COURT:  Whom do you have now as the present owner?

MR. VEEDER:  The present owner appears to be Arthur Peters, but the man who owned it at the time of the filing of the

P 23

1    Answer,          was Charles E. Leslie.

2         THE COURT:  Peters was the man who came in to see you;

3    isn't that right?

4         MR. VEEDER:  That is right your Honor.

5         THE COURT:  Write him a letter and have him confirm it.

6         MR. VEEDER:  Yes.

     Mr. Howard Sykes, please.

7                     HOWARD H. SYKES,

8    one of the defendants herein, having duly been sworn, on his

9    oath was examined and testified as follows:

10        THE CLERK:  State your name please.

11        THE WITNESS:  Howard H. Sykes.

12                     DIRECT EXAMINATION

13   BY MR. VEEDER:

14        Q  Are you the Howard Henry Sykes who, with Nina Grace

15   Sykes, filed an answer in this proceeding?

16        A  Yes.

17        THE COURT:  You were sworn?

     THE WITNESS:  Yes.

18   BY MR. VEEDER:

19        Q  Our records show that that parcel would be in your

20   Exhibit 207-D, your Honor, as 197.  There are 20 acres of land

21   total.  And we find 20 acres irrigable.

22        Is that correct?

23        A  Yes.

24        Q  Did you say that was acceptable to you, Mr. Sykes?

     A  That is right.

25        MR. VEEDER:  Col. Bowen are those lands overlying?

P 24

1   COL. BOWEN:  Yes, sir.

2   MR. VEEDER:  We have nothing further on that, your Honor.

3   THE COURT:  The court would find that you are an over-

4 lying owner and that you have correlative rights with other

5 people on the stream system.

6   THE WITNESS:  Thank you.

   THE COURT:  Thank you for coming in.

7   MR. VEEDER:  Kate D. Philo.

8   MR. CHARLES PHILO:  Your Honor, my mother is in the hospi-

9 tal.  I have a power of attorney to act for her.

10   THE COURT:  Do you know something about this?

11   MR. PHILO:  Yes.

12   THE COURT:  Come forward.

13   Have you been sworn?

14   MR. PHILO:  Yes, sir.

15             CHARLES F. PHILO,

 having been  duly sworn, on his oath was examined and testified

16 as follows:

17   THE CLERK:  State your name please.

18   THE WITNESS:  Charles F. Philo.

19   MR. VEEDER:  Did you say Charles?

20   THE WITNESS:  Charles F. Philo.

21   MR. VEEDER:  Our records show Chester F.

22   MR. PHILO:  That is an error sir.

23            DIRECT EXAMINATION

24   MR. VEEDER:  Your Honor, the reference would be to Exhibit

 207-D.

25   THE COURT:  He is appearing on behalf of his mother?

P 25

1    MR. VEEDER:   That is correct.

2    THE COURT:   Who filed the answer here?

3    MR. VEEDER:   It is answered by Kate D. Philo.

4    THE WITNESS:   My mother.   I have a power of attorney here
5    to act for her, sir.

6    THE COURT:   All right.

7    MR. VEEDER:   Do you have a copy of that that we could
     put in the record?

8    THE WITNESS:   That is the only copy.

9    THE COURT:   There is no problem.   You know the facts,
10   you know this ground, do you?

11   MR. VEEDER:   I'll just take a look at.

12   Q   You are acquainted with these properties that are
13   described in the answer, are you?

14   A   Yes, sir; we have had the property for over 20 years.

15   Q   Do you live on the property yourself?

     A   Yes, sir.

16   Q   Are records show that there is a total of 39.7 acres,
17   of which 30.4 acres are irrigable and 9.3 acres of which are
18   non-irrigable.

19   A   That is approximately correct, sir.

20   THE COURT:   What is the parcel number in 207-D?

     MR. VEEDER:   58 your Honor.

21   Q   Have you observed springs along that property, Mr.
22   Philo?

23   A   No, sir.   The Wildomar fault goes through it, but there
24   are no springs on this property.

25   Q   Has there ever been springs there that you saw?

P 26

1     A  Yes, when we first moved back out there in 1946 there

2 was a spring on the side of the hill.  That dried up in the dry

3 years.

4     Q  Do you recall when it dried up?

5     A  Well, it just ran in winter and it dried up, I should judge, about 1949.

6     MR. VEEDER:  Col. Bowen, are these lands overlying?

7     COL. BOWEN:  Yes, sir.

8     MR. VEEDER:  I have no further questions, your Honor.

9     THE COURT:  The court finds that the lands are overlying

10 the basin and that you would have correlative rights with other

11 people interested in the stream system.

12     MR. VEEDER:  George D. Russell.  The new owner is Fillingame.

13     Is he here?

14     Parcel 179 in Exhibit 207-D, your Honor.

15               C. W. FILLINGAME,

16 one of the defendants herein, having been duly sworn, on his

17 oath was examined and testified as follows:

18     THE CLERK:  State your name please.

19     THE WITNESS:  C. W. Fillingame.

20     THE CLERK:  You were sworn this morning?

    THE WITNESS:  Yes.

21               DIRECT EXAMINATION

22 BY MR. VEEDER:

23     Q  Mr. Fillingame, are you the successor in interest to

24 George D. Russell and Audrey Darlene Russell?

25     A  Yes, we took that over.  We have been there since the

P 27

1  first of the year.

2      Q  Are you the present owners of that property?

3      A  Yes, me and my wife.

4      Q  The records show, Mr. Fillingame, that your properties would appear in Exhibit 207-B2 as 20-4-179, and that there is

5  a total of 3.3 acres.

6      THE COURT:  20-3-179?

7      MR. VEEDER:  20-4-179, appearing on page 6.

8      THE COURT:  All right.

9      MR. VEEDER:  The total acreage is 3.3.

10     THE COURT:  If you have 79, it is just 3.  179 is the one

11  that has 3.3.

12     MR. VEEDER:  Just a moment your Honor.  The total acreage is 3, and the irrigable acreage is 3.

13     Q  Is that agreeable with you, Mr. Fillingame?

14     A  It is supposed to be around 3 acres.  I don't know

15  exactly.  I haven't got any deed.

16     Q  And you agree that it is all irrigable.

17     A  Yes.

18     THE COURT:  Overlying the basin, Colonel?

19     COL. BOWEN:  Yes, sir.

20     THE COURT:  The court finds that you are an overlying

21  owner and have correlative rights with other people on the

   stream system.

22     That is all we need.  You may be excused.

23     MR. VEEDER:  Thank you very much Mr. Fillingame.

24     Paul H. Thompson.

25

P 28

1      PAUL H. THOMPSON,

2  one of the defendants herein, having been duly sworn, on his

3  oath was examined and testified as follows:

4      THE CLERK:  State your name please.

       THE WITNESS:  Paul H. Thompson.

5      THE CLERK:  Were you sworn this morning.

6      THE WITNESS:  Yes, sir.

7                  DIRECT EXAMINATION

8  BY MR. VEEDER:

9      Q  Are you the Paul H. Thompson who, with Mary M. Thompson,

10 filed an answer in this proceeding?

11     A  I am.

12     MR. VEEDER:  Your Honor, in regard to this answer, we

   find that there is a disagreement as to acreage.

13     THE COURT:  What is the parcel number?

14     MR. VEEDER:  611.

15     THE WITNESS:  Pardon me, Mr. Veeder.  May I make a state-

16 ment?

17     MR. VEEDER:  Yes.

18     THE WITNESS:  There are several pieces involved in which

19 we are in agreement.

20     MR. VEEDER:  That is right.

       THE WITNESS:  That is right.

21     MR. VEEDER:  But I wanted to bring out that there is

22 disagreement in regard to Parcel 611.  Is that correct, Colonel?

23     COL. BOWEN:  Yes, sir.

24     MR. VEEDER:  And further we will check out that parcel

25 from the standpoint of acreage.

P 29

1    THE WITNESS:  Might I state on the acreage--there may

2  be a difference--there has been a recent survey of the pasture

3  in that piece of land, along with some others, and there is

4  now a correct acreage available in the Recorders Office.  It

   varies from the Assessors Map.  There was more acreage found

5  in that tract.

6    MR. VEEDER:  We will follow it through and check that out.

7    THE COURT:  611 indicates a total acreage of 546.9 acres.

8  Is that right?

9    MR. VEEDER:  That is what we show, 546.9.  But Mr.

10 Thompson says there is a disagreement on that.

11   THE WITNESS:  That is close, within 5 or ten acres.  There

   was a survey made and they took some off of one piece and put

12 it on another, and I don't know which piece.

13   THE COURT:  Is there disagreement about how many of those

14 acres are irrigable?

15   THE WITNESS:  Yes.

16   THE COURT:  How many do you contend are irrigable?

17   THE WITNESS:  I have had a Soil Conservation map prepared.

18 I do not have it with me.  It is my recollection that there is

19 between two and three hundred acres given, and their report

20 says 43 acres.  There must be an error made somewhere along

   the line.

21   THE COURT:  This will have to be checked out.

22   Where does this land lie?  Is it overlying?

23   MR. VEEDER:  Colonel, would you state as to the location

24 of this Parcel 611? Is that in the basement complex or is that

25 overlying land?

P 30

1   COL. BOWEN:  In regard to Parcel 611, found on Assessors

2   page        , it is overlying.

3   THE COURT:  It is all overlying land, Col. Bowen?

4   COL. BOWEN:  Yes, sir.

5   THE WITNESS:  According to that map I was looking at at

6   the recess, part of it is the blue area.  I can point it out

    to the Colonel.

7   THE COURT:  The witness claims that part of his land is

8   in the blue area.  Can this be checked out later?

9   COL. BOWEN:  Yes, sir.

10   He is apparently correct.  By reference to 15-E, there

11   is some of it that is over basement complex.

12   THE COURT:  Can this be checked out further then?

    COL. BOWEN:  Yes, sir.

13   THE COURT:  Are there some other parcels on which there

14   is no disagreement?

15   MR. VEEDER:  I will put those in right now, your Honor.

16   I want to be sure that this acreage is correct.

17   To the end that the record will be straight in connection

18   with this Parcel 611, we have 20-1, the number 630.

19   THE COURT:  What are you giving me?

20   MR. VEEDER:  I have to identify the record in each instance

21   from the standpoint of the land description, and whenever I give

    that to you it is from 207-B2.

22   The parcel number is 630.  There are 2.2 acres total, and

23   .2 of an acre irrigable.

24   The next parcel is 2-5 and the parcel number you would be

25   interested in, in this 207-D , is 5.3 acres, and 5.3 acres is

P 31

irrigable.

Are you following this, Mr. Thompson?

THE WITNESS:  Yes.

THE COURT:  What parcel?

MR. VEEDER:  101.

The next parcel is 20-5 and the number is 122; 10.2 acres total, 10.2 acres irrigable.

THE WITNESS:  That is correct.

MR. VEEDER:  The next parcel which I have would be 216 to your Honor.  I have a total of 9.1 acres, 7.5 acres of which is irrigable and 2.6 acres of which is non-irrigable.

Are you in accord with that?

THE WITNESS:  That is correct.

MR. VEEDER:  The next parcel is 20-6, and then the number for your Honor is 217, and 34.3 acres total and  34.3 acres irrigable.

THE WITNESS:  That is correct.

MR. VEEDER:  The final parcel of land, with the exception of Parcel 611, is 20-6, and the one of interest to your Honor is 731.  I have 242.3 acres which are irrigable, and 22.6 acres which are non-irrigable and the aggregate in that Parcel 731 is 264.9 acres.

THE WITNESS:  That is correct.

Could we refer back to the first one?  You have one there 2.2, do you not?

MR. VEEDER:  Actually, it is .2.

THE WITNESS:  .2, that is correct.

MR. VEEDER:  Would you total those up, Colonel?

13,068

299.8 acres of irrigable land, 325 acres in the aggregate.
Is that what you have, Mr. Thompson?

THE WITNESS:  I didn't total it, but that is very closely correct.

MR. VEEDER:  That is our figures, your Honor.

THE COURT:  Is it all overlying?

MR. VEEDER:  Colonel Bowen is this overlying land?

THE COURT:  Talking about the parcels with the exception of 611.

MR. VEEDER:  That is correct, your Honor.

COL. BOWEN:  Yes, sir.

THE COURT:  Are you satisfied with that finding?

THE WITNESS:  Yes, sir.

THE COURT:  All right, you have correlative rights with other people in the watershed.

MR. VEEDER:  That's brings to the end of the ones for which we have records of answers or some return that would indicate that people were interested in these lands.  If there is anyone here, however, who has appeared I think it would be wise for them to state.

THE COURT:  Anyoneelse here who has appeared who has an interest in these lands in the Santa Margarita water system?

Do you have another group coming in tomorrow?

MR. VEEDER:  Yes, your Honor.

THE COURT:  How many?

MR. VEEDER:  I couldn't even speculate your Honor.

THE COURT:  Mr. Krieger, how much could you get done?

MR. KRIEGER:  I can get a great deal done, your Honor.

P. 32

P 33

1   I have no witnesses, but I am simply going to stipulate certain

2   parcels with the engineering reports.

3                    OSCAR R. RAIL,

4   one of the defendants herein, being first duly sworn, on his

5   oath was examined and testified as follows:

6       THE CLERK:  State your name please.

7       THE WITNESS:  O. R. Rail.

8       THE COURT:  Where does your land lay?

        THE WITNESS:  My land lays in Murrieta, your Honor.

9       THE COURT:  How long have you owned this property?

10      THE WITNESS:  Since 1913.

11      THE COURT:  How many acres do you have?

12      THE WITNESS:  Well, all together I have about 65 acres now.

13      THE COURT:  All in one piece?

14      THE WITNESS:  No.

15      MR. VEEDER:  The record doesn't show that Mr. Rail has

16  ever answered in this proceeding your Honor.

17      THE COURT:  Did you ever file an answer in this case?

        THE WITNESS:  Yes, sir.  At least, I mailed it in.

18      MR. STAHLMAN:  They have a record here, your Honor.

19      THE COURT:  They have a record of it now.  Don't be alarmed.

20      MR. VEEDER:  The record shows, your Honor, that Parcel 207

21  in Exhibit 207-D is 20 acres total and a total of 20 irrigable

22  acres.  That is one parcel.

23      We have another parcel, which would be your 219.  It is

    34.2 acres and 34.2 acres irrigable.

24      The next number would be 616.  They are 5 acres and 5 acres

25  irrigable.

1    So that we show Mr. Rail's property 59.2 acres total and

2  59.2 irrigable.

3    Is that satisfactory sir?  It is all irrigable.

4    THE WITNESS:  Yes, I believe it could be.

5    THE COURT:  They add this up to be about 59.something, a

6  little less that 60 acres.

7    MR. VEEDER:  59.2, your Honor.

8    THE COURT:  Three different parcels.

9    THE WITNESS:  Well, I have five acres in another place

10  that evidently isn't down.

11    MR. VEEDER:  Where would that be located, sir?

12    THE WITNESS:  It is located in Murrieta Eucalyptus Tract.

13    THE COURT:  They have listed for us one parcel of 20

14  acres, one parcel of 34.2 acres, and one of 5 acres.  Do you

15  have four parcels instead of three?

16    THE WITNESS:  Yes.  There is Lot 92, which is 20 acres;

17  Lot 100, which was originally 40 acres, and the highway took

18  out a fraction over 5 acres for that; and in that Lot 91, I

19  believe, I have 10 acres; and then there is 5 acres in the

20  Eucalyptus Tract.

21    MR. VEEDER:  Your Honor, I don't have that parcel; I'm

22  sorry about that.  It is in a part of the land we hadn't put

23  down for hearing.

24    THE COURT:  Does the answer describe four parcels.

25    MR. VEEDER:  I have sent for the answer now, your Honor,

1    and I will check it out.  I'm sorry about the delay, but I

2    didn't want him to make another trip to town.

3            THE COURT:  Step down and wait awhile.

4            We will see what Mr. Krieger can do.

5            MR. KRIEGER:  You Honor, we have presented all of the

6    witnesses we have asked to be produced here by Mr. Veeder, and

7    all of those cases have gone on.  We only have certain clients

8    for whom engineering reports have been made, certain clients

9    for whom they have not been made, and I think we probable can

10   dispose of those in this way.

11           First of all, on Roripaugh's Exhibit B, taking the balance

12   of this schedule, on the lower left hand corner of Roripaugh's

13   Exhibit B, it includes certain people as to whom we will

14   stipulate that the engineering report is correct as to the

15   total acreage and irrigable acreage.

16           MR. VEEDER:  In that connection, if you would call those

17   off, I have the soil reports here.

18           MR. KRIEGER:  Put them right in as we go along.

19           Parcel 14 is D. E. Cantirini.

20           MR. VEEDER:  May I tender you a thought, Mr. Krieger?

21           MR. KRIEGER:  Yes.

22           MR. VEEDER:  We have them in this order:  Bertram O.

23   Williams -- Is that one of these you are referring to?

24           MR. KRIEGER:  If you want to follow yours, that's all

25   right.  Anything to accomodate you.

1    MR. VEEDER:  It would be much simpler to take them out of

2  our files.

3    MR. KRIEGER:  All right, let's go your way then.

4    Let's take Parcel 34, Bertram O. Williams.

5    THE CLERK:  Exhibit 241, engineering report, your Honor.

6    (Plaintiff's Exhibit 241 for identification was marked)

7    MR. KRIEGER:  Here it is on the map, Roripaugh's Exhibit

8  B.  It is clearly over the stream system.  It is clearly in

9  the Murrieta Basin.

10    MR. VEEDER:  We offer in evidence plaintiff's Exhibit 241.

11    THE COURT:  Plaintiff's Exhibit 241 received in evidence.

12    You are satisfied with the report, Mr. Krieger?

13    MR. KRIEGER:  We are, your Honor.

14    MR. VEEDER:  The next report that we have is for Michael

15  J. Oakley, marked for identification 242.

16    (The document above referred to was marked plaintiff's

17  Exhibit 242 for identification.)

18    MR. KRIEGER:  That is Parcel 44 on Roripaugh's B.  It is

19  right in the Middle of the Murrieta basin.  Here it is, inside

20  both fault lines.

21    MR. VEEDER:  We offer in evidence Exhibit 242.

22    THE COURT: Plaintiff's 242 received in evidence as to both

23  of the Williams and the Oakley properties.

24    (Plaintiff's Exhibits 241 and 242 received in evidence.)

25    THE COURT:  The Court will find that it is overlying the

1  basin and that it has correlative rights.

2  MR. VEEDER:  The next is Albert J. Wutzke.  May I have

3  the engineering report marked for identification.

4  (The document above referred to was marked for identifica-

5  tion as plaintiff's Exhibit 243.)

6  MR. KRIEGER:  Parcel 38 shown on the tabulation on Rori-

7  paugh's B, but the property appears on Roripaugh's C away up

8  here in the basement complex, and it would appear to me that

9  this is outside the stream system as it appears on this map.

10 Maybe we ought to call Col. Bowen to ask him about that.

11 THE COURT:  What does the report show?

12 MR. VEEDER:  The report shows that is is riparian, I be-

13 lieve.  Here is a copy.

14 THE COURT:  It would appear that a lot of this lies over

15 younger alluvium.

16 MR. VEEDER:  I would like to call Col. Bowen in in that

17 connection, your Honor.

18 I don't know whose witness you are, Colonel.

19                    A.C. BOWEN,

20 having been previously duly sworn, on his oath was examined and

21 testified further as follows:

22 MR. VEEDER:  May I interrogate the witness, your Honor?

23 THE COURT:  Yes.

24                 DIRECT EXAMINATION

25 BY MR. VEEDER:

1    Q   Col. Bowen, I hand you United States plaintiff's

2    Exhibit 243 and ask you to state, based upon your investigation,

3    the lands appear to be traversed by, or abut upon,  the Santa

4    Margarita River or a tributary to that stream?

5        A   There are locally some thin alluvial deposits in this

6    property.  Referring to the statement on geology beginning on

7    page 1 and continuing to the top of page 2 in plaintiff's

8    Exhibit 243, it is indicated that the property is largely under-

9    lain by basement complex.

10       MR. KRIEGER:  Would you read the top paragraph on page 2

11   of your report, Col. Bowen?

12       THE WITNESS:  Yes sir, if you would like, Mr. Krieger.

13       Referring to the top paragraph on page 2 of plaintiff's

14   Exhibit 243, it reads as follows:  "Ground water storage on the

15   property is limited.  The alluvium deposited along the valley

16   floor is thin and restricted.  The crystaline nature of the

17   basement complex precludes storage, although locally water may

18   be encountered coursing along joints or fractures.  Storage

19   within the residual mantle is considered negligible owing to its

20   variable composition and thickness, local area of occurance and

21   relatively elevated position topographically."

22       THE COURT:  What section is this land in?

23       MR. KRIEGER:  Right here, your Honor.

24       THE WITNESS:  It is the East half of the southeast

25   quarter of section 8, 7 south, 1 east; and all of section 9, 7

1    south, 1 east, except a portion 933 and one-third feet square

2    in the northwest corner of section 9 and all of section 17 in

3    Township 7 south, Range 1 east.

4         MR. VEEDER:   I offer in evidence plaintiff's Exhibit 243,

5    your Honor.

6         THE COURT:   Plaintiff's Exhibit 243 received in evidence.

7         (Plaintiff's Exhibit 243 received in evidence.)

8         THE COURT:   What is the government's position on this?

9         There is thin bit of alluvium where you could store a

10   negligible amount of water in it, but it is not talking about.

11        MR. VEEDER:   It may be to the owner.

12        THE COURT:   Clear up at the top end of the water way

13   that runs through Lewis Valley.   It runs through the basement

14   complex.

15        MR. VEEDER:   I think the government's position is stated

16   in the report, your Honor.

17        THE COURT:   The Court would find, according to the report,

18   that the amount of storage in the alluvium is negligible.

19        MR. VEEDER:   It is riparian, though.

20        THE COURT:   But that the land is riparian, which again is

21   an illusory right.   The only water that will ever run up there

22   is during a storm. So the land is riparian.   But the Court

23   would find, in accordance with the report, that any water would

24   be local water and not part of the stream system.   Give the

25   fellow the benefit of the doubt on the little bit of alluvium

1    he has.  He hasn't got any water in it anyhow.

2         Any objection to that?

3         MR. VEEDER:  No, your Honor.  I did the work for you.

4         THE COURT:  I can never tell by the expression on your

5    face.

6         MR. VEEDER:  You are not supposed to, your Honor.

7         THE COURT:  Whether you are entirely satisfied.

8         MR. VEEDER:  If I were to let you know what is in my mind

9    would be dangerous.

10        THE COURT:  It might be.

11        What is the next one?

12        MR. KRIEGER:  Number 1 on Roripaugh's B.

13        MR. VEEDER:  That will be plaintiff's Exhibit 244.

14        THE COURT:  Plaintiff's 244 for identification, the soil

15    report.

16        (Plaintiff's Exhibit 244 marked for identification.)

17        THE COURT:  What is the name of the party?

18        MR. KRIEGER:  Sperou, and it is shown as parcel 1 on

19    Roripaugh's C.  It consists of two parcels, one which adjoins

20    the Oviatt Ranch to the south, and the other here again is way

21    up just to the west of the parcels we were just talking about--

22    Wutzke.  I don't think we have a survey report.

23        MR. VEEDER:  Do you accept the report, sir?

24        THE COURT:  Are you satisfied with report Exhibit 244?

25        MR. KRIEGER:  I am satisfied with the report on acreage.

1  I assume the Court will make the same finding on the northern

2  parcel.   I wonder if we could mark these for convenience?

3  Could 1-A be the northerly parcel on Roripaugh's C?

4       THE COURT:   Yes.   And the southerly portion on Roripaugh's

5  C will be 1-B.

6       In what section is that northerly parcel?

7       MR. VEEDER:   Could you give us the location, Col. Bowen?

8       MR. KRIEGER:   Section 12 and 13, 7 South, 1 West, is 1-A;

9  and 1-B is Section 18, 8 South, 1 East.

10      MR. VEEDER:   Do you accept the report, sir?

11      THE COURT:   Are you satisfied with the report?

12      MR. KRIEGER:   Yes, your Honor.

13      THE COURT:   What does the report show?

14      MR. KRIEGER:   May I read a quick report on it?   I am

15  reading from the bottom of page 1:   "This property is comprised

16  of two parcels, which are geologically quite different.   The

17  parcel Sage is underlain primarilly by gray metamorphic.   These

18  metamorphics comprise a series of quartz-biotite schists,

19  gneisses, and interbedded quartzite members along with occassional

20  granodiorite dikes.   Residual mantel deposits (soil) are

21  present but thin."

22      THE COURT:   Col. Bowen, as to the northern portion which

23  we marked 1-A on Roripaugh's C, any water that is there is

24  vagrant, local percolating water?

25      COL. BOWEN:   There is a little bit of alluvium in the

1  extreme northern portion of that Parcel 1-A, this alluvial

2  valley that is in the vicinity of the town of Sage.  However,

3  it only amounts to a very minor area, your Honor.  With that

4  exception the rest of that property overlies basement complex.

5       MR. VEEDER:  Does it appear to abut upon, or to be traversed

6  by, a tributary?

7       COL. BOWEN:  It abuts upon Tucalota Creek.  The northwest

8  corner appears to be very close to the thread of the stream,

9  and it is in that northwest corner that the small body of

10 alluvium within the parcel is contained.

11      THE COURT:  Is this a thin layer of alluvium?

12      THE WITNESS:  Right on the margin of the alluvium, your

13 Honor, and undoubtedly it would be very thin there.

14      MR. VEEDER:  We offer in evidence plaintiff's 244.

15      THE COURT:  Plaintiff's Exhibit 244 received in evidence.

16      (Plaintiff's 244 received.)

17      MR. VEEDER:  Do you accept the report, Mr. Krieger?

18      MR. KRIEGER:  It has been accepted already.

19      MR. VEEDER:  Tha man says he has accepted the report.

20      THE COURT:  The Court finds, in accordance with the report,

21 that any water found in the ground there is vagrant, percolating

22 water and not part of the stream system.

23      There are no producing wells of any kind in that alluvium

24 shown up there, are there?

25      MR. VEEDER:  Not to my knowledge, your Honor.

1      Is there, Colonel?

2      COL. BOWEN:  Not to my knowledge.  Let me refresh my

3   memory from the report.

4      THE COURT:  As to Parcel 1-B in Section 18, 8 South, 1

5   East, according to the 15 series, that is all an area of older

6   or younger alluvium and lies in there between Lancaster and

7   Radec Valleys.

8      MR. VEEDER:  That is in a storage unit, too.

9      THE COURT:  The Court would be inclined to think that that

10  is a part of a storage basin.  I don't know what the report

11  shows.

12     COL. BOWEN:  Page 4 of the report shows that there are

13  three wells in the northwest corner of the northerly property,

14  only one of which was producing at the time the investigation

15  was made.

16     THE COURT:  Talking about the northerly piece now, 1-A?

17     THE WITNESS:  Yes sir.

18     The ground water in the southerly piece, your Honor, that

19  overlies older alluvium and there is one well in that property,

20  about 165' deep with an 8" casing.  At the time of the investi-

21  gation that well was not in use.

22     MR. VEEDER:  However, that is in Storage Unit 5.

23     THE COURT:  That is what you contend for.  I am inclined

24  to think that as to that Storage Unit I will leave the matter

25  open, if you want to argue it.

13, 075

1     MR. SACHSE:  Your Honor, this isn't my client, but he

2 used to be and I know these lands well.  This is in the extreme

3 badlands that we drove through, which are severely erroded and

4 cut away.  I don't know whether your Honor wants to be conclu-

5 sive that this is in the basin or not.

6     THE COURT:  It is not so much what is above ground.  It

7 is what might be below it.  I will leave it open for argument.

8     One of the interesting phenomena was that we ran onto this

9 artesian well which lies just out of Section 18 over there in

10 Section 8, a flowing well.  What ranch was that?

11     MR. VEEDER:  Stardust.

12     THE COURT:  That was in Section 8 that he had that artesian

13 well.  According to my map it appears to be in the younger

14 alluvium, but the younger alluvium couldn't have been very deep

15 in that area.

16     MR. SACHSE:  Your Honor, remembers, however, that the

17 fault down Lancaster Valley ran the length of the valley, which

18 would separate this parcel from the artesian well.  This parcel

19 would be on one side of it, and the artesian well on the other.

20     THE COURT:  But the 15-A series that the government offered

21 shows a series of water levels in the area between those two

22 faults, the water levels descending from 2300 to 22, 21, 20, 19,

23 18, 17, 16, which would indicate a water basin between those

24 badlands.  I will leave it open on 1-B and argue it later.

25     MR. VEEDER:  Richard Wilks is next, Mr. Krieger.

MR. KRIEGER:  Wilks appears as Parcel 5 on Roripaugh's B.

THE COURT:  The engineering report is marked plaintiff's 245.

(Plaintiff's Exhibit 245 marked for identification)

MR. VEEDER:  While we have a moment, your Honor, I want to thank the people who came from Murrieta, and let it appear in the record that the United States appreciates their help in this matter.

THE COURT:  That is a very courteous thing for you to say, and there is no need for George Stahlman getting excited about it.

We appreciate your coming in to help us, and Mr. Veeder has expressed the thanks of the Court and counsel.  It is a troublesome case.  There are a lot of people involved and a lot of property.  We had to cut some corners in trying to work this out.

Did you find it?

MR. KRIEGER:  Yes, your Honor.  Parcel 51 is shown right here.  Also it appears to be across the Wildomar fault line. It was originally marked Parcel 16.  It is Parcel 51 now, and as to it we will accept the engineering report.

THE COURT:  Is the report correct, Col. Bowen, to the best of your information and belief?

COL. BOWEN:  Yes sir.

MR. VEEDER:  Could we identify this on 15-E?

THE COURT:  Plaintiff's Exhibit 245 received in evidence.

13,077

1          (Plaintiff's Exhibit 245 received.)

2          MR. KRIEGER:  We are working from this map, Mr. Veeder.

3          MR. VEEDER:  We will offer plaintiff's 245 in evidence.

4          THE COURT:  It has been received.

5          The Court would find that the land overlies a basin.  I

6     don't think there is much argument about that.

7          MR. VEEDER:  I had some concern about exactly where the

8     Wildomar fault would be in relation to that property is all.

9          THE COURT:  Roripaugh's B shows it cutting off the north-

10    east third of it.

11         MR. VEEDER:  We will bring that point out when we offer

12    plaintiff's 15-E.

13         MR. KRIEGER:  If Mr. Veeder wants to limit it, that is

14    splendid.

15         MR. VEEDER:  I hope the good citizens of Murrieta see the

16    static that goes on day in and day out.

17         MR. KRIEGER:  They have had quite a bit of it today, Bill,

18    haven't they?

19         THE COURT:  What is the next one?

20         MR. VEEDER:  The next one that I have is marked for

21    identification 246, Howard L. Wilks.  Is that correct, Mr.

22    Krieger?

23         MR. KRIEGER:  That appears as parcel 50 on Roripaugh's B

24    and lies, again, right athwart the fault line.

25         MR. VEEDER:  We offer in evidence plaintiff's 246.

1          THE COURT:  Is the plaintiff's 246 correct, Col. Bowen?

2          COL. BOWEN:  Yes sir.

3          THE COURT:  It is received in evidence.

4          (Plaintiff's Exhibit 246 received in evidence.)

5          MR. KRIEGER:  We concur in those findings, your Honor.

6          MR. VEEDER:  Are you happy with it, Mr. Krieger?

7          THE COURT:  He says, "We concur in it."  They are happy

8  with it.

9          MR. VEEDER:  The next is George T. Hall.

10         MR. KRIEGER:  You didn't make temporary findings, your

11  Honor.

12         THE COURT:  I would find that it is overlying land.

13         MR. KRIEGER:  George T. Hall appears as Parcel 23 on

14  Exhibit Roripaugh B.

15         MR. VEEDER:  Have you located it, counsel?

16         MR. KRIEGER:  No, I'm trying to.

17         THE COURT:  In Section 27 there.

18         MR. KRIEGER:  Yes, there it is.  It is number 23.  It

19  adjoins some of Roripaugh's lands immediately to the south of

20  the highway.

21         THE COURT:  Do you have an engineering report?

22         MR. KRIEGER:  Yes, there is an engineering report which

23  has been identified.

24         MR. VEEDER:  We offer in evidence plaintiff's 247.

25         THE COURT:  Is it correct, Col. Bowen?

COL. BOWEN:  Yes sir.

THE COURT:  Are you happy with it, Mr. Krieger?

MR. KRIEGER:  We concur in that, yes.

THE COURT:  Plaintiff's 247 received in evidence.

(Plaintiff's Exhibit 247 received in evidence.)

MR. VEEDER:  We can call Mr. Rail now, if that would be agreeable to your Honor, and then he would be through.

THE COURT: All right, Mr. Rail, come back.

O. R. RAIL,

having been duly sworn, on his oath was examined and testified further as follows;

DIRECT EXAMINATION   (RESUMED)

BY MR. VEEDER:

Q  We find that Parcel 205 originally appeared in your father's name, but that is actually your property?

A  Yes sir.

MR. VEEDER:  Your Honor, Parcel 25 is 10 acres total and 10 irrigable acres;  Parcel 209 is 20 total acreage and 20 irrigable acreage; Parcel 219 is 334.2 acres total and 34.2 acres irrigable; and Parcel 616 is 5 acres total and 5 acres irrigable;  for a total of 69.2 acres irrigable and total acreage.

Q  Is that agreeable, Mr. Rail?

A  Yes sir.

MR. VEEDER:  Thank you very much.

1      THE COURT:  And it is all overlying?

2      COL. BOWEN:  Yes sir.

3      THE COURT:  All right, that takes care of you, Mr. Rail.

4      MR. VEEDER:  Thank you, Mr. Rail.

5      I have Robert P. Jones.

6      MR. KRIEGER:  That appears as Parcel 5 on Roripaugh's B.

7      THE COURT:  Do you have an engineering report?

8      MR. VEEDER:  The engineering report has been marked 248,

9      your Honor.

10     MR. KRIEGER:  Here it is in Section 17 between the two

11     fault lines, right in the middle of the Murrieta area.

12     THE COURT:  Is the report correct, Col. Bowen?

13     COL. BOWEN:  Yes sir.

14     THE COURT:  Are you satisfied with it, Mr. Krieger.

15     MR. KRIEGER:  We concur.

16     MR. VEEDER:  We offer in evidence plaintiff's 248.

17     THE COURT:  Plaintiff's Exhibit 248 received in evidence.

18     The Court finds that the land is overlying the Murrieta

19     basin and the rights are correlative with those of other persons

20     interested in the stream system.

21     MR. VEEDER:  The next one I have is Marry F. Kerdraon.

22     THE COURT:  The engineering report will be marked for

23     identification 249.

24     Where is it, Mr. Krieger?

25     MR. KRIEGER:  Right here.  It lies right across the

P 1

1    Elsinore fault as shown on Exhibit B.   It is a long, narrow

2    strip of land.

3        MR. VEEDER:  Are you happy with the engineering report,

4    Mr. Krieger?

5        MR. KRIEGER:  Yes.

6        MR. VEEDER:  We offer in evidence the engineering report,

     your Honor.

7        THE COURT:  Is it correct, Col. Bowen?

8        COL. BOWEN:  Yes, sir.

9        THE COURT:  Plaintiff's Exhibit 249 received in evidence.

10   The court finds that the land overlies the basin.

11       MR. VEEDER:  Anna M. Shaw.

12       MR. KRIEGER:  Shaw is Parcel 37 on Roripaugh's B.

     THE COURT:  Mark the report 250.

13       MR. GIRARD:  It is in the middle between the fault lines.

14       MR. KRIEGER:  Here it is up here.  It is in Section 1

15   right between the two fault lines.

16       We concur in the result of the report.

17       MR. VEEDER:  Is the report correct, Col. Bowen?

18       COL. BOWEN:  Yes, sir.

19       MR. VEEDER:  We offer in evidence Plaintiff's 250.

20       THE COURT:  Plaintiff's 250 received in evidence.

21   The court finds that it is overlying land over the Murietta.

     MR. VEEDER:  Danny Cantrini.

22       MR. KRIEGER:  Cantrini is Parcel 14 on Roripaugh's B

23   and appears right here south of the highway.

24       THE CLERK:  The report has been marked 251, your Honor.

25       MR. KRIEGER:  We are satisfied with the conclusions of

13,682

P 2

1    that report, your Honor.

2        MR. VEEDER:  Is the report correct, Col. Bowen?

3        COL. BOWEN:  Yes, sir.

4        MR. VEEDER:  We offer in evidence Plaintiff's 251.

     THE COURT:  Plaintiff's Exhibit 251 received in evidence.

5    There is not much doubt about both 23 and 14 being in the

6    basin.  Are you going to contest that, that close to the fault

7    line?

8        MR. KRIEGER:  That even comes within the webb line, so

9    we concede it is in the Santa Gertrudis creek area.

10       THE COURT:  Plaintiff's 251 received in evidence.

11       MR. VEEDER:  Robert M. Irwin.

     THE COURT:  The report is marked 252.

12       MR. KRIEGER:  That is Parcel 13 on Roripaugh's B and

13   appears on Roripaugh's C and consists of two parcels of land

14   very close to the Sperou property that we spoke of earlier.

15       THE COURT:  In what section is it?

16       MR. KRIEGER:  I will have to get the report on that.

17       MR. SACHSE:  South side of the Lancaster Valley.

18       MR. KRIEGER:  Each half of the southwest quarter of the

19   southwest quarter of Section 17 8 South 1 East.

20       THE COURT:  I would be inclined to find that it is over

21   a basin, but I will leave it open for argument, along with

     that other piece in Section 18.

22       MR. VEEDER:  Very well.

23       THE COURT:  What does the report say about it?  Does

24   Col. Bowen feel it is in the basin?

25       MR. KRIEGER:  It says that both parcels are underlain

P 3

1   by older alluvium with thin younger alluvial deposits present

2   in the stream washes.

3       THE COURT:  Is the report correct, according to your

4   information and belief, Col. Bowen?

5       COL. BOWEN:  Yes, sir.

6       MR. VEEDER:  Is Plaintiff's Exhibit 252 received in

    evidence?

7       THE COURT:  Plaintiff's 252 received in evidence.

8       I will leave open the question whether it overlies a

9   basin.  I think it does.

10      MR. KRIEGER:  That is open to argument.

11      THE COURT:  Have you got some well measurements up in

12  that area, too?

13      MR. VEEDER:  We are making a canvass up there, your Honor.

14      That is all the soil reports I have.

15      MR. KRIEGER:  You have one for Domenigoni, do you not?

16      MR. VEEDER:  You told me on the telephone that you were

    not going to call Mr. Domenigoni.

17      MR. KRIEGER:  I would like to do this with Domenigoni.

18      MR. VEEDER:  Let me get them out of the office then.

19      MR. KRIEGER:  Let me say what we want to do with them,

20  first, and maybe you will want to get them or not.

21      It seems that if this land of Domenigoni's should, by any

22  chance, be included, we would be willing to go along with the

23  engineering report of the government.  On the other hand, we

24  would certainly hold with the position the Searl brothers have

    established through Franz Sachse.  I have read most of that

25  testimony, but not all of it, and we would stand on the position,

13,084

P 4

1    and do, that the Domenigoni valley is no part of the stream

2    system.

3        THE COURT:  Of course, that statement is too broad.

4    Survey-wise it is part of the stream system without argument.

5        MR. KRIEGER:  Yes, I should say as to ground water.

6        MR. VEEDER:  You accept that?

7        MR. KRIEGER:  The surface water we know, I think, by the

8    witnesses on both sides, come into this watershed.  But I

9    think the key question involves the pumping of the underground

10   water, and we would go along with Searl brothers case, and in

11   fact, may have some testimony of our own to present, if the

     occasion ever offers itself.

12       MR. VEEDER:  We are checking the matter ourselves at the

13   present time, your Honor.  I think there are elements of

14   rebuttal that are going to be involved.  I would like to offer

15   the Domenigoni reports now if you are not going to be here

     later on.

16       MR. KRIEGER:  I intend to be here, Mr. Veeder, at any

17   time this question is argued, just as in the case of the

18   arguments on the other parcels we left open, and if these are

19   put in the same category it would be perfectly satisfactory

20   with me to have the engineering report offered, subject of

21   course to a determination whether it is at all material later

22   on.

     THE COURT:  Will you be here tomorrow?

23       MR. KRIEGER:  I hadn't intended to be, your Honor.  I

24   can be.

25       THE COURT:  Do you have anything else you are ready to

P 5

1    present?

2        MR. KRIEGER:  We are practically all through here right

3    now, your Honor.

4        MR. VEEDER:  He and I have some problems in regard to

5    some of his lands that appear not to be overlying, concerning

     which, I believe, there can be stipulations, although I am

6    not sure at this juncture.

7        MR. KRIEGER:  We have covered a number of them, and the

8    Domenigoni properties are included too, but we have covered

9    most of them today.  There a few other parcels that are right

10   down in the stream bed, as to which there have been no engineer-

11   ing reports.

12       MR. VEEDER:  Small ones.

13       MR. KRIEGER:  Yes.  But which we are willing to submit.

     And I will give you their names to indicate that we have no

14   objection to their going in with the other overlying users.

15       THE COURT:  Can the Domenigoni soil report go into evi-

16   dence subject to your right to argue the legal propositions and

17   the record?

18       MR. KRIEGER:  Yes, your Honor.

19       THE COURT:  You had a copy of the transcript.  You were

20   here the day the evidence came in.

21       MR. KRIEGER:  No, and I only got the evidence yesterday

     and it is a long transcript.

22       THE COURT:  How many reports are there?

23       MR. KRIEGER:  Two reports, your Honor.

24       MR. VEEDER:  There two reports, and we will have them

25   marked if we may.

P   6   1     THE COURT:  Plaintiff's 253 and 254.

2     What is the difference?

3     MR. VEEDER:  I was going to read the title blocks.

4     THE COURT:  All right.

5     MR. VEEDER:  The first one for which we have reference
here is Margarita and Domenica Domenigoni are Plaintiff's
6     Exhibit 253, and Margarita Domenigoni alone is 254.

7     THE COURT:  Parcels marked on Roripaugh's C?

8     MR. KRIEGER:  Yes, sir.  Right here.

9     THE COURT:  What is the number?

10     MR. KRIEGER:  Parcel 3.

11     THE COURT:  The two of them grouped together?

12     MR. KRIEGER:  No; Parcel 3 is the number.

13     THE COURT:  Parcel 3 includes both parcels about which
the two soil reports were made, I take it?

14     MR. KRIEGER:  Yes.

15     THE COURT:  Are these reports correct, Col. Bowen,
16     according to your best information and belief?

17     COL. BOWEN:  Yes, sir.

18     MR. VEEDER:  We offer in evidence Plaintiff's 253 and 254.

19     MR. KRIEGER:  Of course, we object to them, except--

20     THE COURT:  Do you object to them, or don't you merely
reserve the right?

21     MR. KRIEGER:  We reserve the right to argue their mater-
22     iality, your Honor.

23     THE COURT:  Plaintiff's 253 and 254 received in evidence.

24     MR. KRIEGER:  May I cover one or two other points while
25     we stand here?

P 7

1    The other day your Honor permitted the Hilliard property

2    to be brought in--at least I thought it was to be drawn on

3    this map.

4        MR. WEBB:  Are you familiar with that?

5        I guess we haven't marked the C.S. Hilliard property on
Exhibit B after all.  I thought we had.

6        But we have a consent for the government now to go on

7    and make a report.  I have it here and will hand it to Cdr.

8    Redd.

9        THE COURT:  That will leave that parcel open.

10       MR. KRIEGER:  I am pointing to it here.  I think it is

11   in Section 18.

12       Is that right:

13       MR. WEBB:  I thought I had it on this map.

14       MR. KRIEGER:  It is a parcel that clearly overlies

15   Tucalota creek.  The creek runs right through it.  We should

16   have an engineering report on it and when it comes in we can

     probably stipulate to it without having Judge Hilliard here.

17       MR. VEEDER:  As I understand it, Judge Hilliard is now

18   willing to have us go on his land for the purpose of a survey?

19       MR. KRIEGER:  I said I have a consent signed by him and

20   his wife both.

21       Coming to other key parcels, Parcel 22 in Section 20

     6 south 2 west, is owned by Carl Frick.  It appears to me that

22   we have no soil or engineering report on that and I think may-

23   be we could ask Col. Bowen on all of these parcels that are

24   clearly up here whether, in his opinion, they are within the

25   stream system, and if they are not we will not have reports

P 8  1    made on them.

2         THE COURT:  It depends on where it is in Section 20.

3    Part of Section 20 is near the large body of younger alluvium.

4         MR. KRIEGER: Can we ask Col. Bowen the question we have

5    so often asked him, whether this, in his opinion, is vagrant

6    water.

7         MR. VEEDER:  Surface water is involved.  The Frick pro-

8    perty is traversed by part of the stream system.  If he wants

     to claim ground water it is up to him.

9         THE COURT:  What part of Section 20 is taken in there,

10   can you tell?

11        MR. KRIEGER:  It is just the northernmost part of Section

12   20.  I beg your pardon.  It is Section 28 6 south 2 west, your

13   Honor.

          THE COURT:  In what other sections is it?  Is it all in

14   Section 28?

15        MR. KRIEGER:  Can you tell, Mr. Webb?

16        MR. WEBB:  It runs over into the next section.

17        MR. VEEDER:  You can find that on Plaintiff's Exhibit 15-E.

18        MR. KRIEGER:  Apparently a small part is in the southerly

19   part of Section 21.

20        THE COURT:  According to the 15 series it is older base-

     ment complex or basement complex in Sections 21 and 28.

21        MR. KRIEGER:  That being so, I am wondering whether we

22   should have an engineering report made on it.

23        MR. VEEDER:  I have been up on the property and I think

24   it is probably in such a location and of such character at

25   least from the surface runoff that there is a question as to

P 9

1   its riparian character.  It is on residuum.

2        (The court in counsel gather around the map and a dis-

3   cussion is had off the record.)

4        THE COURT:  There is no question about the surface water.

5   But we are talking about the underground water.

6        Col. Bowen, do you have any opinion as to any water found

7   under those sections,  Sections 21 and 28 in 6 south 2 west,

    what character the water would be?

8        COL. BOWEN:  Yes sir, I do.

9        THE COURT:  What would it be?

10        COL. BOWEN:  In my opinion, it is local, vagrant, perco-

11   lating water and not part of the stream system, your Honor.

12        THE COURT:  Unless somebody objects, I would propose to

13   find, in accordance with Col. Bowen's testimony, that the sur-

14   face runoff is part of the stream system and undoubtedly there

15   are minor tributaries through that property.  It has to run

     into our watershed.

16        MR. VEEDER:  I am thinking about Mr. Frick myself, your

17   Honor, I am not worried about the government in this instance.

18   I have seen the property.  It is Mr. Krieger's client, not

19   mine.

20        THE COURT:  Are you satisfied with that finding?

21        MR. KRIEGER:  Yes, indeed, I am satisfied with it, your

     Honor.

22        I would like to have you make the same finding as to

23   Parcel 9, which is C.R. Lowe, who appears in Section 32.

24        THE COURT:  We just disposed of Parcel 21 on Roripaugh's

25   B.

P  10

1   MR. KRIEGER:  That is correct.  I have several of these.

2   THE COURT:  Now you are talking about what?

3   MR. KRIEGER:  We are talking about Parcel 9 and Parcel

4   52, which are both in Section 32 6 south 3 west.

5   MR. VEEDER:  I would like to be able to follow through

6   on these things.  I am perfectly willing to stipulate where

7   there is no possibility of a conflict of interest on these

8   between the United States.  If Mr. Krieger wants to make a

9   statement on these I'll be quiet and let him go ahead and

10  finish them up and then I will check them up and report to

11  your Honor from our standpoint.

12  MR. KRIEGER:  I don't want to make a statement on them

13  other than to get a ruling on them while Col. Bowen is here.

14  THE COURT:  There shouldn't be any question about Section

15  32 6 south 2 west.  According to the 5 series it shows it to

16  be entirely an area of the weathered complex, traversed however

17  by some minor tributary of Spring creek.

18  The court would be inclined to find that the surface

19  waters, as in all of this watershed, are part of the stream

20  system; that the underground water is local, vagrant, perco-

21  lating water.

22  MR. VEEDER:  There is a 5 H.P. pump up there, your Honor.

23  I don't know.  I simply don't want to go by too rapidly.

24  THE COURT:  Col. Bowen, do you have an opinion as to the

25  character of the water underneath Section 32?

COL. BOWEN:  Yes sir, I do.

THE COURT:  What is it?

COL. BOWEN:  It is my opinion that the ground water, if

13,691

P 11

1   any, is local, vagrant, percolating water and not part of the

2   stream system.

3       THE COURT:   I would be inclined to so find, leaving the

4   door open to you, Mr. Veeder, to check further into it.

5       MR. VEEDER:   I want the record to show that we are moving

6   extremely rapidly and that I want to take care of these people.

7       THE COURT:   If I don't hear anything, from you, that will

    be the end of that.

8       MR. KRIEGER:   That is as to both Parcels 9 and 52?

9       THE COURT:   Yes, that is right.

10      MR. KRIEGER:   Then if I may just in one sentence lump all

11  these that appear on Roripaugh's B but which we concede are

12  within the stream system.

    We will go the other way for a minute now, Mr. Veeder.

13      These are Parcel 18-E Malnar, Alfred Sotello Parcel 24,

14  Jessie Sotello Parcel 32, C. R. Swanguen Parcel 10, and D. W.

15  Williams Parcel 47.  All those appear to be small parcels of

16  land clearly within the stream system and we can see them so

17  to be, to receive the same correlative rights, if the court

18  so holds, as the others who are in that area.

19      THE COURT:   Unless somebody has some different ideas,

20  that is what I am going to find as to those parcels.  I don't

    know whether we need any further proof.

21      MR. VEEDER:   I just talked to Mr. Krieger on the phone

22  yesterday about these parcels, your Honor.  I will check them

23  out and unless you hear to the contrary there will be no

24  objection.  But I would like to keep my foot in the door in

25  regard to some of these things, because we are moving extremely

P  12   1    rapidly.

2         THE COURT:  You may.

3         Mr. Krieger concedes that they are overlying, that they

4    are over the basin.  They look that way to me.

5         MR. VEEDER:  I think that is correct, your Honor--

6         THE COURT:  What about Parcel 41, the big one there?

7         MR. KRIEGER:  Parcel 41 is Thompson.  That is the case

as to which we filed a substitution of attorneys.  That is

8    one of the two--Cain and Thompson.

9         THE COURT:  Somebodyelse is appearing now for him?

10         MR. KRIEGER:  No, I don't believe so, your Honor.  He is

11    appearing pro per.

12         And I believe, Mr. Veeder, there is an engineering report

13    on him, isn't there?

14         MR. VEEDER:  I will have to check on it.

15         MR. KRIEGER:  That is W. A. Thompson.

16         MR. VEEDER:  I will put that Thompson in then.

17         MR. KRIEGER:  You can put it in your group.

18         MR. VEEDER:  We will have tomorrow on this Thompson and

    we will put it in tomorrow.

19         THE COURT:  Thompson then has to come in?

20         MR. VEEDER:  I will have to check, your Honor.  I have

21    no way of knowing standing here.

22         THE COURT:  Well, let's quit for tonight.

23         MR. VEEDER:  I think we have cut a pretty big piece of

    country today, your Honor.

24         MR. KRIEGER:  If we can just make this comment about

25    Parcel 41, your Honor, as long as you asked about it.  It

P  13

1  appears to be right in the middle of the stream bed.  It lies

2  between both faults.  He has two parcels, a large one and a

3  small one.  So I imagine this case would be submitted like

4  the others, being clearly within the watershed.

5      MR. VEEDER:  I would have to check.

6      THE COURT:  Do one of two things; get him in here or

7  write him a letter and tell him the court proposes to find

8  that he overlies the basin and that his land is overlying.

9      MR. VEEDER:  Originally you represented him, did you not?

10     MR. KRIEGER:  Yes.

11     MR. VEEDER:  And then you withdrew your representation.

12     MR. KRIEGER:  You have a copy of it.

13     MR. VEEDER:  Yes.  And we have sent him notice.  He was

14  one of the four parties we noticed.

15     MR. KRIEGER:  Let it be said for the record that if there

16  is any question that his rights might not be protected, we will

17  be glad to come and speak for him.

18     MR. VEEDER:  He has been notified.

19     MR. KRIEGER:  May we put on Roripaugh's C the parcels

20  of property that do not appear there now but as to whom we

21  are now appearing as counsel?  We will hear testimony later

22  on.  We would like to put them on Exhibit C.

23     THE COURT:  It's all right with me.  Put them on.

24     I think you should be prepared to argue--whether we get

25  done with it or not, at least we can get started on the pro-

posed judgement between Vail and the United States.

     Ten o'clock tomorrow morning.