# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

### HONORABLE JAMES M. CARTER, JUDGE PRESIDING

— — —

UNITED STATES OF AMERICA,

Plaintiff,

vs.

No. 1247-SD-C

FALLBROOK PUBLIC UTILITY DISTRICT,
et al,

Defendants.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:    San Diego, California

Date:    Thursday, September 1, 1960

Pages:    14,434 to 14,482

FILED

SEP 2 4 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____
                              Deputy

JOHN SWADER
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 · Ext. 370

1  IN THE UNITED STATES DISTRICT COURT

2  SOUTHERN DISTRICT OF CALIFORNIA

3  SOUTHERN DIVISION

4  - - -

5  HONORABLE JAMES M. CARTER, JUDGE PRESIDING

6  - - -

7  UNITED STATES OF AMERICA,          )
                                      )
8                          Plaintiff, )
                                      )
9  vs.                                )          No. 1247-SD-C
                                      )
10 FALLBROOK PUBLIC UTILITY           )
   DISTRICT, et al,                   )
11                                    )
                         Defendants.  )
12 _____)

13        REPORTER'S TRANSCRIPT OF PROCEEDINGS
                San Diego, California
14            Thursday, September 1,  1960.

15 APPEARANCES:

16     For the Plaintiff:          WILLIAM H. VEEDER, ESQ.
                                   Special Assistant to the
17                                 Attorney General

18                                 LCDR. DONALD W. REDD

19     For the Defendants:

20        Vail Company            GEORGE STAHLMAN, ESQ.
                                  EARL K. STANTON, ESQ.

21
          Fallbrook PUD, et al    FRANZ R. SACHSE, ESQ.
22
          State of California     FRED GIRARD, ESQ.
23                                Deputy Attorney General

24

25

1

# I N D E X

2                                                                    Page

3    ARGUMENTS RE STIPULATED JUDGMENT (continued)

4

5        MR. STAHLMAN (continuing)                        14,436
                                                          **14,451**
6

7        MR. SACHSE                                       14,442

8        MR. GIRARD                                       14,449

9        MR. VEEDER                                       14,457

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

14 436

1    SAN DIEGO, CALIFORNIA, THURSDAY, SEPTEMBER 1, 1960, 10:30 A.M.

2                              - - -

3        (Other matters.)

4                              - - -

5        THE CLERK:   3 - 1247-SD-C UNITED STATES OF AMERICA v.

6    FALLBROOK PUBLIC UTILITY DISTRICT, et al.   Further court trial.

7        THE COURT:  Mr. Stahlman.

8        MR. STAHLMAN:  Your Honor, out of deference to my good

9    friend Mr. Veeder, who informed me that his plane reservation

10   -- of course, we will always accommodate him.

11       THE COURT:  You couldn't get it put over any later than

12   that?

13       MR. VEEDER:  Your Honor, the latest I can possibly get

14   and make the hearing I have set up is to leave here not much

15   after ten after twelve, because my flight leaves at 12:40.

16       MR. STAHLMAN:  Anything I can do to expedite his exodus

17   from California.

18       MR. VEEDER: Your Honor, I want to apologize for it.

19   Truly I set it up on the basis that I thought yesterday was

20   the end of the hearing.

21       THE COURT:  All right.

22       MR. STAHLMAN:  With reference to the transcript which I

23   indicated to your Honor yesterday, I would like to read from

24   Volume 103 page 11,550 wherein Mr. Veeder in his statement to

25   the Court said that "The three second feet that comes down to

2

1  us is not important.  We are living on the water that goes

2  into the basin during the winter period that recharges our

3  basin."

4      Now let us assume for the purpose of argument that the

5  Vail Company had not applied to the Court to be relieved under

6  the stipulated judgment, that your Honor had heard the evidence

7  in this case knowing what the stipulated judgment contains,

8  knowing what it has done, knowing the changes that have occur-

9  red since the stipulated judgment, taking into consideration

10  that all of the evidence indicates that the Court and the

11  parties to the original action gave no consideration whatso-

12  ever to other parties in the river system, I think that your

13  Honor would be obliged, in viewing this situation for the

14  benefit of those who were not parties to it, knowing what

15  effect the stipulated judgment would have upon the other

16  parties to the action and the implications that would

17  necessarily ensue therefrom, even without the necessity of

18  pleading as can be done in equitable proceedings, either on the

19  basis of fraud or mistake, your Honor could abrogate the

20  stipulated judgment.

21      The thing has centered upon the situation because Vail

22  has asked it to be expunged, but I think that in the broad

23  concept of the objective that the Court desires to achieve in

24  the termination of this litigation and the future operation of

25  this river, that the Court would be entitled, as I have

1  stated, without the necessity of pleadings under the broad

2  powers of equity, to set aside the stipulated judgment.

3      Much of Mr. Veeder's reasoning is difficult to follow,

4  because Mr. Veeder seems to be able to and has a faculty and

5  an ability to present a situation on one occasion for the

6  purpose of gaining an advantage and on another occasion he

7  takes the same situation in order to pummel some other litigant

8  in the action.  When he talked about this situation of

9  attempting to override what the Court has already decreed in

10  the pre-trial order, that they were not entitled to water

11  outside the watershed -- and  I am mindful of the fact that

12  being the last party on the stream and a Government enclave

13  when water arrives there they can do with it what they want --

14  his whole argument to the Court was premised upon the con-

15  tention that there was an ownership in this water.

16      There is no ownership in the water.  It is merely a right

17  of use.  So he is attempting now to overcome that order by

18  saying, "Well, we will take the Vail water down and we will

19  put the Vail water outside the watershed."  And just how this

20  is proposed to be do ne I don't know.  But it certainly would

21  again resolve itself into many complications and many

22  uncertainties and would result in the situation of having to

23  resort again back to certain measurements, which I am going to

24  discuss the fallacy of in this stipulated judgment, and then

25  to make a long story short we would project ourselves further

4

1   into a state of confusion and uncertainty.

2         THE COURT:  How much time are you going to want, Mr.

3   Stahlman?  Because I want to hear from Mr. Girard and Mr.

4   Sachse.

5         MR. STAHLMAN:  Your Honor, I am willing to stop at any

6   time.

7         I have here a little illustration I was going to refer to

8   in order to show the great complications that will come into

9   existence if the stipulated judgment is in existence in

10  relation to its effect upon the other parties and the division

11  of waters by reason of the fact that we would have to divide

12  waters within other watersheds in relation to certain proper-

13  ties.

14        This (indicating the illustration) would be Camp Pendleton.

15  The green would be Vail.  This Unit I would be a storage unit,

16  or we may refer to it as the younger alluvium, in the Murrieta

17  Valley.  And Unit No. 4 would be a Storage U nit 4, or we may

18  refer to it as the older alluvium.  And then we have the dotted

19  lines here which are the watershed lines -- the watershed line

20  dividing the Murrieta from the Temecula.  And we have a situa-

21  tion where, under the previous decree, Vail would have the

22  right to put water on any of the riparian lands regardless of

23  the watershed in which it is.  But when we come to the Murrieta

24  we could concede that the reverse of that is true; that Vail

25  would not have the right to take water out of this particular

5

1   watershed and put it into this watershed.   But according to the

2   decree we would have that right.

3         I am not going to spend too much time on it, because it

4   can resolve itself into many complexities.   But it does

5   basically demonstrate the fact that with the stipulated judg-

6   ment in existence you come into complicatio ns in relation to

7   the division of waters.   With that situation in existence,

8   commencing with where there is to be a division of waters or a

9   regulation of them, you then co me into conflict with the pro-

10   visions of the stipulated judgment in relation to other

11   parties, and then further complicated by the fact that Vail

12   owns other land that was not in the stipulated judgment.

13         I would like to touch on one other point, your Honor.   I

14   could argue for some considerable length of time.   However,

15   there is one other situation in connection with this stipulated

16   judgment that I don't recall having been touched upon, and

17   that is the matter wherein the stipulated judgment states

18   that the division of these waters shall be upon a restored

19   flow basis.   That is the effect of it.

20         Then the next question arises, What is restored flow?   Is

21   it the restored flow of the extractions and diversions on the

22   part of Vail and Camp Pendleton?   Or is it the restored flow

23   of the diversio ns and extractions on the part of the stream

24   system?   Does it include the extractions and diversio ns of

25   everyone else who has a right to the use of water in this

14,441

1    stream system?

2         If that is so, then we are further complicated by the

3    fact that in order to make this stipulated judgment operative,

4    if it remains in effect, there would have to be meters put on

5    every diversion, or measurement device of some kind, and upon

6    every well from which there are extractions.  Because we now

7    know by reason of the evidence that there is in this area

8    water far beyond what was in consideration at the time the

9    stipulated judgment was entered into.  And there are large

10   diversions and large extractio ns.

11        And then that brings us to the next question, as to

12   whether or not, if those diversions are made, Vail Company

13   could possibly exist by reason of the small amount of water

14   that would be available.  Certainly it wouldn't be able to

15   get the one-third.

16        As I say, your Honor, I could expand.  There are many

17   inconsistencies I expected to go into in connection with the

18   stipulated judgment to show the difference in the division in

19   one phase of the judgment as related to another.

20        THE COURT:  You have covered all that in your brief,

21   Mr. Stahlman.

22        MR. STAHLMAN:  Very well.  I will submit that the other

23   atto rneys may argue and I will keep still for awhile.

24        THE COURT:  Who wants to be heard next?

25        MR. SACHSE:  I will be very brief, your Honor.  I want to

7

1   direct my attention particularly to just two aspects of the

2   discussion of Mr. Veeder, Mr. Stahlman, and your Honor's

3   colloquies.

4       First, the question of the effect of the old judgment,

5   that is, the original judgment of the trial court.

6       Second, the question your Honor posed to all Counsel

7   concerning the possibility of treating this stipulated judg-

8   ment as a contract.

9       First on the matter of the old judgment, the trial court

10  judgment, I think it is beyond argument that it is possible to

11  have a judgment in a trial court and to appeal from only a

12  part thereof.  That is beyond argument.  I think it is beyond

13  argument that when that is done those parts of the judgment

14  which were not appealed from become final, if times passes.

15      In this case that is exactly what happened.  The trial court

16  in Santa Margarita v. Vail drew very lengthy findings estab-

17  lishing a stream system, describing the lands, and apportion-

18  ing the waters.  The predecessor of the United States didn't

19  appeal.  Presumably they were satisfied with the findings as

20  to the extent of the stream system.  There weren't any cross-

21  appeals.  There was just one appeal.  Vail appealed on the

22  question of apportionment, on the question of the calcul ation

23  of its riparian acreage, and on certain injunctive proceedings.

24  And that is all that was reversed.

25      Now the parties, to take Mr. Veeder's words, came

together and decided they would settle this thing and get this
tremendous expense off their backs.  They entered into this
document in the light of certain circumstances, there isn't
any question about it, and the circumstance in the light of
which they entered into the document was the circumstance
that they had a final judgment not appealed from as to the
extent of the stream system.

I don't see how the question can be argued.  The same
parties were involved.  They sat around a table and they said,
"Let's compromise this thing.  Let's quit the lawsuit.  Okay.
We have a judgment on the extent of the stream system, we have
a judgment on our lands.  We will accept it.  Now we will write
something that will approtion the waters."  That is the effect
of the two documents -- the judgment and the stipulated
judgment.  That is their legal effect.  And I don't believe
it can be argued that it is not.  So where do we sit?

Now your Honor's observation to Mr. Veeder, I think, was
a hundred per cent correct.  Vail would have a perfect right
to go anywhere outside the stream system as defined in
Santa Margarita v. Vail and take all the water they want
without the slightest objection from the United States.

But your Honor didn't go far enough.  Anybody else could
do it.  Because in California we have, well established by
recent decisions of the supreme court that have been affirmed,
this doctrine of collateral estoppel by judgment when three

1   tests are met -- Mr. Girard discussed this at some length in

2   his brief: when there was the identical issue involved,

3   when there was a final judgment, and where the person against

4   whom the judgment is asserted was a party.  Then a non-party

5   can raise the plea of res adjudicata.  So if Mr. Veeder makes

6   the slightest attempt -- we are trying this case under

7   California law -- to enjoin, let us say, diversions by

8   Murrieta Hot Springs, they come in and say, "Collateral

9   estoppel. Bernard v. Bank of America, your Honor.  You can't

10  hear the case. Mr. Veeder is outside the stream system."

11        THE COURT:  This seems so clear to me.

12        MR. SACHSE:  It seems fundamental.

13        THE COURT:  I want to hear from Mr. Veeder as to how he

14  is going to get around the provisions of this old judgment.

15  What am I going to do with this old judgment?  Because it just

16  seems patent to me that as far as the old judgment that was not

17  appealed from is concerned it establishes the stream system.

18  It established the fact that the older alluvium was not a part

19  of the stream system.  Mr. Stahlman read the finding at

20  length.

21        MR. SACHSE:  I will pass that and go quickly to the other

22  point, because the two tie together, and that is this possi-

23  bility that you can look at this as a contract, let us say.

24        What did these parties do?  They were't fools.  And they

25  had the best water lawyers in  California at that time.  And

1    they had a judge of the Superior Court who signed his name to

2    this piece of paper.  And as I pointed out, they did it in

3    the full knowledge that there was a judgment in existence

4    defining the stream system, and that trial court judgment

5    expressly recites that there are other parties involved.  So

6    obviously the stipulated judgment can't mean what it says

7    literally.  It can't mean that Santa Margarita got two-thirds

8    and Vail one-third literally.  To do that would have been

9    utterly outside the jurisdiction of the court.  It would have

10   been giving away something belonging to people who were not

11   even parties.  So it can't mean that.

12       THE COURT:  You mean it can't mean o ne-third two-thirds

13   of all the water.

14       MR. SACHSE:  It can't do that.  The first principle we all

15   have to use in interpreting any instrument is to try to give it

16   some validity.  Since it would have no validity on that basis,

17   what can it mean?  All it could mean is that it determines

18   their rights inter se.

19       But that isn't all.  It says that they can take water

20   out of the watershed.  It can't mean that as an in rem

21   adjudication of all the waters in the river.  Again, all it

22   can mean is that inter se one will not object if the other

23   takes it outside the watershed -- sort of a covenant not to

24   sue..

25       The stipulated judgment says, "You can build a dam."

11

14,446

1    That is outside the jurisdiction of any Superior Court in this

2    state.   They can't give a man permission to build a dam.

3    Again, all it can mean is that the two parties between them-

4    selves agreed that if one wants to build a dam the other is

5    not going to object.   That is all it says.

6        You can go right on down the line and every single clause

7    of the stipulated judgment the same thing will apply.   Even

8    such little matters as the establishment of measuring points.

9    The Court can't say that the flow of that stream is forever

10   and anon going to be determined by those measuring points of the

11   waters to be divided.   That would be ridiculous.   All that the

12   judgment can mean is that Vail and O'Neill agreed that as to

13   their right they would use these measuring points.

14       So where would it leave us?   It would leave us with a

15   private arrangement between the two which possibly one party

16   might attempt to enforce by injunctive proceedings if the

17   other had violated.   But such contract itself has absolutely

18   no mutuality.   It hasn't any.   And this lawsuit proves it.

19       THE COURT:   What do you mean, no mutuality?

20       MR. SACHSE:   The very clause that purports to give Vail

21   rights in the stipulated judgment is utterly and absolutely

22   meaningless, if it is treated as a clause only between the

23   two, for this reason.   As Mr. Stahlman pointed out very

24   quickly -- I am going to elaborate on it -- the United States

25   can physically do anything it wants with that water that comes

**12**

1   to it, and so could Santa Margarita.

2       The United States has the additional factor that it is a

3   Federal enclave today.  But aside from the Federal enclave,

4   Santa Margarita was the last user on the stream.  Its uses,

5   no matter what it did, if it bottled the water up and shipped

6   it to Mexico, Vail or anybody else could not have objected.

7       So to say, "You, Mr. Vail, can have one-third of a cer-

8   tain amount of water and I can take all I get.  You have no

9   right whatsoever to prevent my taking more," and that is the

10  physical fact, that is what this agreement means.  This agree-

11  ment is nothing more than a simple little understanding be-

12  tween the two as to what their respective rights are.  And if

13  it is such a simple understanding, then I say there isn't any

14  problem about setting this aside.

15      I will steal Mr. Stahlman's word.  I'll say "unconscion-

16  able."  It isn't really what I mean.  What I truly mean is

17  that it is not the law, it's unworkable -- it's absolutely

18  impossible to operate under.

19      And I want to say this.  This is how I  view this as an

20  attorney.  I have no direct concern, for my clients I should

21  say, in your Honor's ruling on this stipulated judgment,

22  because I am so convinced that unless you set the whole thing

23  aside, not just the stipulated judgment but the original

24  trial court judgment, that Mr. Veeder cannot get past the

25  first hurdle with an order to show cause before you to

1      restrain anyone's activities anywhere outside the younger

2      alluvium.  Because the day that he does it I assure you, your

3      Honor, one of my clients I will have before you.  "Bernard v.

4      Bank of America," I will say.  "This is res adjudicata under

5      the doctrine of collateral estoppel in California.  Mr. Veeder

6      and the United States have stipulated that our laws will apply.

7      He has nothing to say about this older alluvium."

8           To go a step further, if your Honor today says that that

9      stipulated judgment is in effect, then therefore necessarily

10     the original trial court judgment, I don't know why we are

11     wasting our breath --

12          THE COURT:  I don't either.

13          MR. SACHSE:  -- beating our gums about the older alluvium

14     and the other basement complex, because your Honor can't do

15     anything about it.  If you affirm this thing, you have got a

16     sacred final judgment of a court over which you have no

17     appellate jurisdiction.  You have no reversing authority --

18     you have such a final judgment in front of you.  And I don't

19     understand what the United States thinks it is gaining by

20     trying to uphold this one piece of paper.  It's beyond me.

21          THE COURT:  Mr. Veeder directed his entire attention to

22     the stipulated judgment and division, and has not, in my

23     opinion, given consideration to the old judgment, which

24     apparently remains unappealed from and which fixes the stream

25     system.

1        Mr. Girard.

2        MR. GIRARD:   I think I agree with Mr. Sachse factually,

3   your Honor, although I do not agree with him that this thing

4   can be considered as a covenant not to sue.   I would think if

5   the attorneys had intended that it would have been a simple

6   matter to have said so, that they could have easily provided

7   language in there that says they will not sue or act, etc.

8   The fact that they didn't is pretty indicative, to me at least,

9   that they didn't consider it as being a covenant not to sue.

10       Yesterday your Honor expressed some interest in whether

11  or not this stipulated judgment could be considered to be in

12  the nature of a contract, and I presume that that was based on

13  a feeling that possibly a contract between the parties -- if

14  it is a contract -- would be treated a little bit differently

15  than a formal judgment of a court.

16       Section 577 of the Code of Civil Procedure of California

17  defines a judgment as the final judicial determination.   The

18  case of Schwartz v. California Claim Service (52 C.A. 2d 47)

19  affirms this statutory definition of a judgment, and the

20  District Court of Appeals point out in that case that the

21  judgment is the judicial determination but its origin may be

22  in contract or quasi contract or on a liability imposed by

23  statute.   But the judgment is a judicial act.

24       In the case of Guaranty Corporation v. Board of Super-

25  visors (22 C.A. 2d 686) the Court states -- and I believe this
    is almost a direct quote:

1      "A judgment of a court of competent jurisdiction

2       entered upon stipulation of parties has the same

3       force as if the action had been tried on the merits."

4      So I think under California law a stipulated judgment is

5  not treated any differently than a judgment on the merits

6  insofar as whatever rights, duties, privileged and liabilities

7  inure thereto.

8      I did find one case, which is a United States Supreme

9  Court case, which was concerned with injunctive relief in

10  equity, where the Court specifically considered the question.

11  The case is <u>United States v. Swift & Co</u>. (286 U. S. 106).   The

12  language I am particularly relying on is at page 114.   The

13  opinion was written by Justice Cardozo.  Without going into

14  the facts of the case, just considering the power of the court

15  to set aside or to modify a decree which was entered pursuant

16  to a stipulation of the parties, Justice Cardozo says:

17      "We are not doubtful of the power of a court of

18       equity to modify an injunction in adaptation to

19       changed conditions though it was entered by consent.

20       The power is conceded by the Government, and is

21       challenged by the intervenors only.  We do not go

22       into the question whether the intervention was so

23       limited in scope and purpose as to withdraw this

24       ground of challenge, if otherwise available.  Standing

25       to make the objection may be assumed, and the result

will not be changed.  Power to modify the decree
was reserved by its very terms, and so from the
beginning went hand in hand with its restraints.
If the reservation had been omitted, power there
still would be by force of principles inherent in
the jurisdiction of the chancery.  A continuing
decree of injunction directed to events to come is
subject always to adaptation as event may shape the
need. . . "

The United States Supreme Court does indicate that the
stipulated judgment entered into by the parties is not a
contract, and that the parties cannot by stipulation change
the result, insofar as the court's authority is concerned, if
the case were tried on the merits.

MR. STAHLMAN:  May I cite another case/

THE COURT:  Yes.

MR. STAHLMAN:  Donovan v. Aetna Indemnity Company, 10 C. A.
723, and the language in relation to this matter is found on
page 733.  It is an old case.  I have shepardized it and I
haven't found any change in it.

MR. GIRARD:  I would like to cite to your Honor another
case by the Supreme Court of California. Of course, the stipu-
lated judgment and the judgment itself provide for injunctive
restraints. Vail is prohibited from doing certain things, and
they are required to do certain things, under both documents.

17

1    In a very recent case by the Supreme Court of California,

2    Union Interchange, Inc. v. Savage, which is reported in

3    52 Advance California at page 15 -- your Honor, I don't have

4    the citation for 52 Cal. 2d, but it will be in there -- the

5    court squarely holds that the court has "inherent power to

6    modify or vacate .. . . upon which the injunction rested, or

7    where the law has been changed, modified or extended, or where

8    the ends of justice would be served by modification."

9    I think our basic contention on the stipulated judgment

10   is primarily that it is an allocation of water that can be

11   changed upon a showing of changed conditions.  I don't think

12   under the above authorities it makes any difference whether the

13   judgment was the result of a trial on the merits or whether it

14   was entered by consent.  Whether the origin of the judgment was

15   in contract or anything else, still it does not destroy the

16   inherent power of the court to modify in the interests of

17   justice.

18   Whether or not in this case the facts would indicate a

19   change in conditions, I think, is for your Honor to decide.  I

20   think from the United States' own evidence it is pretty

21   apparent that there have been substantial changes since the

22   time that the judgment and the stipulated judgment were entered.

23   The change in use by the United States has been a drastic one

24   since that time.  The former users were agricultural users.

25   Now we have, in effect, a municipality.  This case involves

1   nine thousand some-odd defendants which are before the Court.

2   Mr. Kunkel's own testimony indicated, I believe, that the pump-

3   ing on the Murrieta had changed the groundwater movement

4   sufficiently to result in its going the other way, whereas at

5   the time of the stipulated judgment it went down into the

6   Temecula.  Many acres which are now irrigated were not irrigated

7   then.  Fallbrook undoubtedly contemplates building a dam.   The

8   United States has changed its uses from primarily cattle

9   operation to extensive pumping which has resulted in the surface

10  water not reaching Station #6 as it would if the extensive

11  pumping had not occurred.  Undoubtedly there are numerous

12  changed which I think, if Mr. Weil's statement which is cited

13  in my brief is accurate, would support the Court in setting

14  aside the stipulated judgment.

15      Mr. Veeder expressed a great deal of concern about the

16  fact that if the stipulated judgment is set aside they will

17  have to stop using water outside the watershed.  I don't think

18  anyone contends that at all.  They can use the water outside

19  the watershed as long as it gets to them.  The only thing they

20  cannot require is that water get to them to the detriment of

21  the other vested rights to use water outside the watershed.

22      The stipulated judgment has a practical point to which I

23  think the United States should give some consideration.  I think

24  setting it aside is beneficial to them.  As I remember the

25  stipulated judgment, it requires three second feet to go down

1   past Vail and a duty is placed on Vail to see that three

2   second feet go down the river.  Three second feet on a day-to-

3   day basis is 2190 acre feet per year, which Vail is under a

4   duty, under the stipulated judgment, to provide to go into the

5   stream.  If the stipulated judgment is set aside, that of

6   course does not mean that Vail has a right immediately to dry

7   up any surface flows.  Your Honor would have to determine, if

8   and when any downstream people felt they were being harmed,

9   the extent of the releases that might have to be made by Vail.

10   What is the United States getting in return for that if

11   this whole thing is abrogated?  If we can believe Mr. Kunkel,

12   they are getting rights to groundwater in Area 4 which make

13   2190 acre feet look infinitesimal.  They are getting ground

14   water rights to a ground water basin as part of the stream

15   which would give them a right in the source of water and the

16   supply which makes the trivial surface flow with which they

17   are concerned under the stipulated judgment rather nominal.

18   As a practical matter, I don't see why they would object

19   to setting it aside, because as you have pointed out and as

20   Mr. Sachse has emphasized, if they are going to keep the

21   stipulated judgment and its benefits they cannot abrogate the

22   judgment and its detriments.  There are some cases, which I

23   don't have today but which I did cite, which indicate that if

24   the Court modifies a judgment that is entered into by stipu-

25   lation it should set aside the entire thing, not just a part.

1    I think the stipulated judgment incorporated and was

2    intended to incoporate and was based greatly upon the judg-

                                                    stipulated

3    ment itself.  That fact is recited in the/judgment.  If this

4    Court should decide that the stipulated judgment should be

5    set aside, I would say there would be no reason at all for

6    not setting aside the whole thing.

7        THE COURT:  If one goes out, both go out.

8        MR. GIRARD:  Right.

9        THE COURT:  But I have a more difficult problem with the

10   old judgment.

11       MR. GIRARD:  You have a more difficult problem with the

12   old judgment, and I think you could approach it on the basis

13   that both judgments were entered in the same Superior Court

14   proceeding, one following another, after reversal, and that in

15   the interests of substantial justice if the Court were to

16   modify one it should modify the other.  And I don't think any

17   defendant here would object to it -- if you were to set aside

18   the stipulated judgment that you should not also set aside the

19   judgment.  Certainly the United States couldn't object,

20   because, as I say, that would give them rights in the ground

21   water basin, which is, according to their own testimony,

22   greatly in excess of anything they get under the stipulated

23   judgment.

24       The other comments that I had were primarily directed to

25   factual statements which were made, and I don't think I will

1   emphasize those.  I think your Honor is as familiar with those

2   as I am.  But if there are any questions at all, I'll be glad

3   to answer them.

4                         (next page)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

14,457

THE COURT:  Mr. Veeder.

MR. VEEDER:  Your Honor, in regard to the statement which was quoted to you by Mr. Stahlman from page 11,550 lines 9 to 12, I want to state that as read it is taken out of context. What I was saying there, your Honor, is not that the three second feet is unimportant to the United States.  What I am saying is that we do not divert that surface flow on a day-to-day basis, but rather we pump from the basins and the basins are largely recharged by winter flow.  If there was a mis-interpretation, if there was a misstatement on my part, I want it corrected and say that the three second feet are extremely important to us.

THE COURT:  Let's spend your time on something that is more germane to this inquiry.  We have some nice legal problems. Now I want your position on them.

1.  If the stipulated judgment is treated as being an apportionment of water and therefore is set aside or is no longer effective because a new apportionment has to be made, what is your position as to the old judgment?

MR. VEEDER:  The position of the United States in this matter, your Honor -- and I briefed the question of the effect of the stipulated judgment -- is this:  that there has been a complete and an entire merger of the old judgment into the stipulated judgment, and to the extent that there is any variance between the two then the stipulated judgment is

14,458

2

1    entirely controlling.

2        THE COURT:  Are you answering my question now?

3        MR. VEEDER:  I am coming to the point.

4        I want it understood that we say that everything is

5    merged in the stipulated judgment.

6        Now the proposition that I advanced to your Honor is that

7    no one has connected up the geology as found in Vail Company's

8    AB, which are the findings of fact and conclusions of law,

9    with the stipulated judgment, or that the geology as found was

10   the primary reason for entering into the stipulated judgment,

11   or that if the difference in the geology had been known they

12   would not have entered into the stipulated judgment.

13       THE COURT:  Have you forgotten my question?

14       MR. VEEDER:  Would you rephrase it then?

15       THE COURT:  I will rephrase it.

16       If the Court decides that the stipulated judgment is to be

17   no longer effective, viewed as an apportionment of water--I

18   don't care whether you say it is set aside or it is out of

19   date now because a new apportionment has to be made; now it is

20   ineffective -- what is your position as to the old judgment

21   and the findings therein as to the extent of the stream system

22   in the basins?  Do you want it to stand?  Or do you want it to

23   go, too?

24       MR. VEEDER:  I have researched that, your Honor, and I

25   don't believe that there is anything in existence other than

3

14,459

1   the stipulated judgment.  I believe if you set aside the

2   stipulated judgment everything goes.  But I don't believe that

3   the findings as they exist today are --

4        THE COURT:  I disagree with you on that completely.

5        MR. VEEDER:  All right.

6        THE COURT:  So I will tell you right now, my ruling on

7   that is that the parts of the old judgment that were not

8   appealed are effective as a judgment, unless something

9   happens, and that the stipulated judgment only took care of

10  the parts of the case where the reversal occurred.  If the

11  stipulated judgment is to be no longer effective, viewed either

12  as having been now set aside or as being overruled by a new

13  apportionment, what do you want to do with the old judgment

14  which was not appealed from?

15       MR. VEEDER:  As I said before, your Honor, and apparently

16  I am not making myself clear, I think the old judgment was

17  entirely merged into the new judgment, and I don't believe

18  those findings are probative at all under the circumstances

19  that exist.  But I would assume that if your Honor set aside

20  the stipulated judgment, he would undertake to set aside

21  everything.

22       I don't believe, though, that the geology as found is

23  important in this case at all, because there is no showing,

24  there has been no proof yet that the change in the geology as

25  between the findings and as we show it on Exhibit 15E was an

1   important factor in regard to this matter.

2        May I ask a favor of your Honor in this regard, though?

3   I have briefed it originally.  I thought I covered it when I

4   said "merged."  I would like once more to brief it and to

5   undertake and file a brief with your Honor and serve it on

6   Counsel, for the purpose of reviewing the question of the

7   effect of the stipulated judgment upon the findings as they are

8   presented today.

9        THE COURT:  I will give you that opportunity.

10       But now let's pursue this inquiry.  You say the stipulated

11   judgment and the old judgment are merged.  Well, this is a

12   matter of semantics.  If you mean by "merged" that the old

13   findings that were not appealed from and the parts of the

14   judgment that were not appealed from are still effective and

15   that the stipulated judgment then fit in and took up the slack

16   in the parts where the reversal occurred, if they are therefore

17   to be considered as one document, if you want to look at it

18   that way I might go along with you.  If you mean by "merged"

19   that the stipulated judgment superceded the old judgment and

20   that the old judgment thereafter had no life whatsoever, then

21   I disagree with you.

22       MR. VEEDER:  That is my view, frankly.

23       THE COURT:  Is that what you mean by "merged"?

24       MR. VEEDER:  That is right.

25       THE COURT:  You don't mean 'superceded"?

5

1     MR. VEEDER:  No. I think the term that is used is "merged."

2     THE COURT:  But that the old judgment that was not appealed

3     from has no life at all in it.

4     MR. VEEDER:  For this reason --

5     THE COURT:  Well, then, the stipulated judgment contains

6     no finding as to the extent of the stream system.

7     MR. SACHSE:  What is the res that is divided then?

8     THE COURT:  What is divided?

9     MR. VEEDER:  The res in the stipulated judgment is the

10    respective rights as between two parties, Vail Company and

11    Rancho Santa Margarita.  Franz said it very well.  He said

12    the stipulated judgment is a judgment inter sese, between two

13    people and two people alone, and that is all it could be.

14    MR. SACHSE:  Rights to what?

15    MR. VEEDER:  The rights as between those two parties

16    claiming the usufructory interest in the Santa Margarita

17    River.

18    MR. SACHSE:  What is the Santa Margarita River?

19    THE COURT:  What is the Santa Margarita River?  The

20    stipulated judgment, looked at from its four corners, has no

21    description of the River, no description of the stream system.

22    MR. VEEDER:  Yes.

23    THE COURT:  Where?  It's just not in there.

24    MR. GIRARD:  Where?

25    MR. SACHSE:  Where?

1      MR. GIRARD:   It refers to the Temecula-Santa Margarita

2  River.

3      MR. VEEDER:   That is right.

4      MR. GIRARD:   But it doesn't define it.

5      MR. VEEDER:   I see what you are talking about now, your

6  Honor.   There is law on the proposition that you refer to a

7  river, you refer to a stream and you refer to all its

8  tributaries and all the yield of the stream to the extent

9  that these parties have their interests.   I will get the brief

10  on that.

11      THE COURT:   But what can we do with ground water basins

12  that are part of the stream system?  Do we assume that they

13  are part of the system or not part of the system?

14      MR. VEEDER:   I think one necessarily will say it is the

15  surface runoff that is coming down to us from the Vail Company.

16  That's the big deal.

17      THE COURT:   I don't follow you.  You mean the Santa

18  Margarita concerns only the surface runoff?

19      MR. VEEDER:   The only thing that was apportioned between

20  the two parties was the yield of the Santa Margarita River

21  flowing through the gorge, and that was the only thing that was

22  dealt with.  That is one reason why I have had a great deal of

23  difficulty in following the argument in regard to this geology.

24      THE COURT:   You are having difficulty, and so am I.

25      Let me ask you another question.  If I rule that the parts

14,463

1   of the old judgment that were not appealed from are still

2   effective -- and I don't see any escape from that -- namely,

3   that the older alluvium is not part of the stream system,

4   what are you going to do then?  How are we going to get out of

5   this dilemma?  We have spent the major part of this case in

6   attempting to prove the groundwater basin.  Now we are about

7   ready to find that there is a basin.  What am I going to do

8   with the old judgment?

9        MR. VEEDER:  I don't see the dilemma at all.

10        THE COURT:  I do.

11        Assume for argument that I am going to rule that the parts

12   of the old judgment that were not appealed from are final.

13   How do we get rid of this with reference to its findings on

14   the groundwater basin?

15        MR. VEEDER:  If you say that, your Honor, as I view the

16   matter -- and that is one reason why I asked the opportunity

17   to brief this matter -- as I view it, there would be a binding

18   finding between Vail Company and the United States.  But it would

19   not be binding on anyone else who was not a party to it.  Mr.

20   Sachse has cited this <u>Bank of America</u> case, I believe, which

21   says it would be res adjudicata against the world.  I disagree

22   with that.

23        MR. SACHSE:  Not in your favor; only as against you, Mr.

24   Veeder.

25        THE COURT:  Is that case cited in your brief?

3

14,464

1    MR. SACHSE:  It is cited in Mr. Girard's brief, your

2  Honor.

3    MR. GIRARD:  There is also an article on it in the

4  Stanford Law Review.

5    THE COURT:  Where does that take us?  Assuming then that

6  the old judgment is inter se between Vail and the United

7  States, and I hold that there is no groundwater basin in the

8  older alluvium, then as between you and Vail you could not

9  restrain Vail from pumping all the water they wanted to out of

10  that older alluvium since it is not part of the stream system.

11  Somebody else might kick about it, but the Government couldn't.

12    MR. VEEDER:  I can't accept that.

13    THE COURT:  It comes down to this.  You can't have your

14  cake and eat it, too.  I have heard this evidence and I am

15  about prepared to hold that there is this groundwater basin.

16  I don't think there is really much dispute.  There is dispute

17  as to how permeable and all that.  But there is no dispute

18  that there is water there and that this is a part of the stream

19  system.  And I don't think California or Fallbrook are going

20  seriously to contest it.  But you can't have your cake and eat

21  it, too. U You can't get that kind of finding if I am stuck by

22  an old judgment and finding that was not appealed from.

23    MR. VEEDER:  I don't believe you are stuck by it, your

24  Honor.  You have brought up this proposition -- and it is

25  extremely important -- you said, what was the res that was

1   apportioned between Vail Company and Santa Margarita?

2       THE COURT:  They brought it up.  I didn't.

3       MR. VEEDER:  It is inescapably related to the proposition

4   that you are now raising.  In other words, was the res the

5   runoff of this stream?  I say it was.  And I say that from the

6   standpoint of the record and from the standpoint of the old

7   findings it makes not one bit of difference in regard to the

8   relationship between Vail Company and the United States that

9   there was a disagreement in regard to the geology.  That is the

10  big point that I make.

11      I haven't been able to find, in my reasoning and my think-

12  ing, the problem that you have presented here in regard to this

13  particular finding.  What difference does it make, your Honor?

14      THE COURT:  It makes this difference.  If this old judg-

15  ment between you and the United States says that the older

16  alluvium is not part of the stream system, you have wasted a

17  lot of my time here, because you are asking me now to find that

18  it is part of the stream system, and you have brought Vail in

19  and you have tried the case and you have never yet said you

20  don't want that finding against Vail.  This is what you want

21  as to everybody.  You have never even said, "No, as to Vail we

22  are going to ask you to stick by the old finding.  But as to

23  everybody else we want a new basin carved out."

24      MR. VEEDER:  Your Honor, I have not done that for this

25  very simple reason.  My own view is that the geology that we

1   have introduced in regard to the area as a whole has not one

2   thing to do with the apportionment between Vail Company and

3   the United States.  They apportioned the surface runoff in the

4   stipulated judgment, and that is what they apportioned.

5        MR. SACHSE:  May I ask a question?  This fascinates me.

6   If they apportioned the surface runoff in the stipulated

7   judgment, whereas the trial court apportioned all of the

8   waters of the stream system and did describe basins, then,

9   your Honor, I think you are going to be in this position where

10   maybe you can't set aside the original trial court judgment.

11   You just set aside the stipulated judgment that deals with the

12   surface runoff because the stipulated judgment had nothing to

13   do with the finding.

14        THE COURT:  Mr. Veeder, you're a pretty good lawyer, and

15   you've got an important client and you owe that client a

16   sincere duty.

17        MR. VEEDER:  Believe me I understand that.

18        THE COURT:  But you've got yourself finally into a

19   position where, it seems to me, you have to analyze this thing

20   and take a lawyer-like position on it.  You can't just sit here

21   and put barbs into the toro -- be a matador.  You have to look

22   at some of these legal propositions.

23        It looks to me to be just this simple.  You can't have

24   your cake and eat it, too.  You can't say, "We want to keep

25   the old judgment and still get away from the findings on this

1   basin."

2       As a practical matter, Mr. Girard -- I had never thought

3   about it -- pointed out how little the three second feet

4   amounts to over the period of a year. And yet here is this

5   tremendous basin of water which would now be found to be a

6   part of the stream system. I don't see how you can have both.

7       MR. VEEDER:  I think your Honor knows I have been apply-

8   ing myself to this proposition.

9       THE COURT:  I don't think you have analyzed it. I think

10  you have made up your mind that you are going to take a

11  position and you will not look or listen to the implications.

12      MR. VEEDER:  The point that I make to your Honor, from

13  the standpoint of the United States and the Vail Company, what

14  was apportioned between the two was the co mbined rights of

15  Rancho Santa Margarita and Vail in the surface runoff of the

16  stream.

17      THE COURT:  Is that all?

18      MR. VEEDER:  Yes.

19      MR. SACHSE:  Then we have a final judgment on the stream

20  system.'

21      THE COURT:  What is your point on that, Mr. Sachse?  If

22  that is all that was done by the stipulated judgment --

23      MR. SACHSE:  Then, your Honor, there is a final judgment

24  on the extent of the stream system, which any party, under

25  Bernard v. Bank of America, can raise as being res adjudicata.

1   Any person can raise it, even a non-party to the original

2   litigation, if three tests are met:   (1) there was a final

3   judgment in the original litigation -- that is true, (2) the

4   person against whom it is raised was a party or successor in

5   interest to a party -- Mr. Vail, very specifically, and (3)

6   the issue is identical and the party against whom the plea is

7   asserted was a party or privy with the party of the prior

8   adjudication.

9       I will make it very simple.   This is my client -- let's

10  get down to brass tacks -- I represent Searl Brothers.   The

11  issue between Searl Brothers and the United States of America

12  is, what are the waters of the stream system?   I will state

13  (1) there was a final judgment in Rancho Santa Margarita v.

14  Vail, which, by no stretch of the imagination, can you reach

15  up to Domenigoni Valley, (2) the United States of America is

16  privy to a party to that final judgment, and that issue, what

17  were the waters of the Santa Margarita River system? was

18  decided.   I assert the doctrine of collateral estoppel and

19  say your Honor has no jurisdiction.

20      THE COURT:   Not only Searl Brothers, but this would

21  affect --

22      MR. SACHSE:   Everybody.

23      THE COURT:   The immense amount of pumping that has been

24  going on in the area of the older alluvium that we have shown

25  on Exhibit 15 E.   To follow through on this argument, if that

1    is true -- and I am inclined to agree with Mr. Sachse that

2    this would be the situation -- then no one has any restraint on

3    any of those persons pumping in that older alluvium.  They can

4    pump the Murrieta dry.  Nobody can do anything about it

5    because they are, in substance, vagrant, percolating waters.

6        MR. VEEDER:  Let me point out this factor, and I think it

7    will distinguish the proposition advanced by Mr. Sachse and

8    Mr. Girard in regard to res adjudicata.  The subject-matter or

9    the res of this litigation was the rights between Vail and

10   Rancho Santa Margarita.  The question came up -- if you look

11   at Finding 27 you will find there is no question about it --

12   the Vail Company tried to join a great number of defendants

13   in the valley, and the Court went out and investigated the

14   matter and said I know there are other rights, and uses the

15   term specifically in Finding 27.

16       MR. STAHLMAN:  On the stream system such as he had in his

17   mind and as he put in the findings of fact.

18       MR. VEEDER:  The question was presented specifically, and

19   names are listed.  Vail Company has filed a list of those

20   names.  The subject-matter and the res before the Superior

21   Court of the State of California was not all of the rights in

22   the watershed; it was specifically found to be that case.

23   The only thing before the Court concerning which the proposi-

24   tion of res asjudicata could be applicable would be the rights

25   of those two parties and nothing more.

1        THE COURT:  The United States and Vail are the only two

2    we are talking about who would now be precluded from complain-

3    ing about any of the persons pumping in this area which is not

4    part of the stream system under the old judgment.

5        MR. VEEDER:  No, for this very reason.  These parties in

6    here, and they were specifically referred to -- I am pointing

7    now to the Murrieta.

8        MR. SACHSE:  They are in your case even under the old

9    judgment.

10        THE COURT:  You are talking about the younger alluvium.

11    That is referred to in the old judgment.  I am talking about

12    the older alluvium.

13        MR. VEEDER:  I am talking about the whole subject-matter

14    before this Court.  The only thing that was before the Superior

15    Court of the State of California in Rancho Santa Margartia v.

16    Vail was the combined usufructory rights of Vail and Rancho

17    Santa Margarita, and it could not be res adjudicata in regard

18    to the usufructory rights of other parties.

19        MR. GIRARD:  Right.

20        THE COURT:  You see, he just avoids the question by a

21    clever statement of law with which nobody disagrees.

22        The point they are trying to make, and try to think about

23    it a minute, that if this judgment stands -- you certainly are

24    the successor of the Santa Margarita, and when I say "you" I

25    mean the Government -- then as to Vail and the United States

1    there was a finding that the older alluvium was not part of

2    the stream system as between those two.  Now you are bound by

3    that. It is not part of the stream system.

4        MR. VEEDER:  Not bound as to any third party.

5        THE COURT:  Let's leave out any third party.  So neither

6    you nor Vail could complain about any of the persons who pump

7    in the older alluvium, because in your suit it was found that

8    the older alluvium was not part of the stream system.

9        MR. VEEDER:  Your Honor, the point I am trying to make to

10   your Honor is that those people were not before the Superior

11   Court, and a finding --

12       THE COURT:  Yes, they are not bound by the judgment.  But

13   you are bound by it.

14       MR. VEEDER:  No, we are not.

15       MR. GIRARD:  Let's take a simple example, Mr. Veeder.

16   Suppose you and Commander Redd are fighting about who owns

17   Lot X in Temecula, and the Court says Commander Redd owns it

18   and you don't, and then somebody else comes in and says he

19   owns it.  Can you claim that you own it?

20       MR. VEEDER:  There is no question in my mind that it can

21   be done.

22       MR. GIRARD:  Read the cases.

23       THE COURT:  Oh, Mr. Veeder.

24       MR. GIRARD:  Read the law.

25       MR. VEEDER:  I asked the privilege as I started in --

1  THE COURT:  I have already told you that you could file

2  this brief.  But let's direct it to these things we have talked

3  about.

4  MR. VEEDER:  I will.  And just to be sure that there be no

5  question, as I understand it, the proposition that you desire

6  me to brief is this.

7  THE COURT:  Not one of them.  There are several of them.

8  MR. VEEDER:  But I want to get this straight.  That if the

9  stipulated judgment is sustained, the finding entered by the

10  Superior Court in regard to the geology --

11  MR. STAHLMAN:  Why don't you read the transcript and see

12  what the Court asked you?

13  THE COURT:  Go ahead and finish.

14  MR. VEEDER:  -- is binding upon the United States of

15  America and upon the Vail Company.

16  MR. SACHSE:  Not geology; stream system.

17  MR. VEEDER:  All right, I will add to it.

18  THE COURT:  Specifically, the finding that the older

19  alluvium is not part of the stream system is binding upon the

20  United States and Vail Company.

21  MR. VEEDER:  Then there is also the separate proposition

22  that is involved, that the third parties in this litigation,

23  all the other named defendants, can raise that finding against

24  the United States be free to pump water from beneath their

25  grounds, although your Honor would find in fact that the

1   waters under their lands are part of the Santa Margarita

2   stream system.  Is that correct?

3        MR. SACHSE:  That is my proposition.

4        THE COURT:  Yes.

5        MR. SACHSE:  And I would suggest, Mr. Veeder, remember you

6   have a stipulation about California law.  And start with a

7   recent case, <u>Bernard v. Bank of America</u> (19 Cal. 2d) and

8   shepardize it.

9        MR. VEEDER:  Now your Honor raised an additional point to

10  me yesterday.  Your Honor asked me, further, whether in my

11  view the stipulated judgment partook of a contractual obliga-

12  tion.

13       THE COURT:  Yes.

14       MR. VEEDER:  I had briefed it at page 22 of my brief filed

15  with your Honor on September 21, 1959.  I reviewed the prin-

16  ciples that were involved in that, and if you desire me --

17       THE COURT:  I re-read it yesterday.  I didn't get much

18  out of it, I'm sorry to say.

19       MR. VEEDER:  I will proceed on that, if you want more on

20  the question of the contractual nature of it.  I say it is of

21  a contractual nature, but it is more.  It has the dignity of a

22  judgment and is enforcible as such.  And certainly the

23  contractual responsibility of the Vail Company, in our view,

24  as I said before, has been ratified many times.  The obligations

25  under it have been ratified from the inception of this lawsuit

1    by the Vail Company and at this point they can't avoid it.

2        THE COURT:  Since you are going to write a brief, let me

3    ask some other questions of other counsel.  Is that agreeable?

4        MR. VEEDER:  Yes.

5        THE COURT:  What view do you have on this claim of the

6    Government of estoppel in connection with the Pauba well?  The

7    dam doesn't concern me.

8        Try this for size.  It must be assumed, I suppose, that

9    the Government has competent legal advisers, and their com-

10   petent legal advisers should have told the officials of the

11   United States that this stipulated judgment, in the sense that

12   it apportioned water, was subject to change upon changed con-

13   ditions, and you therefore could argue that any reliance by

14   the United States in spending the fifty thousand dollars to

15   drill the Pauba well is a reliance upon a judgment which could

16   be changed at any time.  That might be one answer.

17       Secondly, why was the well drilled?  That is a mixed up

18   factual situation.  I am not sure that the record shows

19   definitely when the Vail Company first learned about the suit.

20   But if the permit was granted at a time when the Vail Company

21   didn't even know it had been sued, it might have a very signi-

22   ficant bearing on the matter.  Why was the well dug?  I asked

23   Mr. Veeder what the Government was to get from the digging of

24   the well.  The evidence shows there was litigation on the

25   extent of this basin.  There was talk by Mr. Hall about they

were interested in an emergency supply of water.

1    In the last analysis, I suppose, if the Court wanted to

2  go that far -- Vail has offered to do equity -- the Court could

3  say, "Well, if it is any problem at all, Vail pay the Govern-

4  ment fifty thousand dollars."

5    What is your view on this Pauba well?

6    MR. SACHSE:  As far as the Pauba well is concerned, I think

7  it has no practical significance, because I am convinced that

8  if your Honor determines to set aside or, shall I say, refuse

9  to enforce the judgment and the stipulated judgment, the only

10  practical and logical and proper way of doing so is the one

11  proposed by Mr. Girard, that both these documents, the origin-

12  al judgment and the stipulated judgment, are an allocation of

13  waters of the stream, and the circumstances have changed so

14  drastically -- I'll repeat it, because he rattled through it

15  very fast -- I think you in your own equity jurisdiction sui

16  spondi without any action from Vail at all could have determin-

17  ed to do that before this case were over.  I think you could

18  have done so.

19    The Naval well as such would only operate as an estoppel

20  at the most against Vail, and the interests of other people in

21  the court in having the judgment set aside are not estopped by

22  whatever Vail may have done.

23    THE COURT:  Are you in accord, Mr. Girard?

24    MR. GIRARD:  Yes, I am in accord.  I don't want to get

25  into the merits on who is right and who is wrong on this

1   drilling of the Pauba well.  Basically, I don't think it is

2   material at all on whether or not the Court should set aside

3   the stipulated judgment. 'I agree that if you felt it was in-

4   equitable as to Vail you could certainly put a condition on it

5   as to Vail.  Whether it is or is not inequitable, and whether

6   the United States acted at their own risk in going on someone

7   else's land and drilling a well is, I think, for you to deter-

8   mine.

9       THE COURT:  Mr. Girard, in your comments -- which, of

10  course, were limited because of time -- you talked about

11  changed conditions of the basins in getting rid of this decree.

12  What about mistakes of fact?  Do you have any view as to

13  whether mistakes of fact are involved?  The obvious mistake of

14  fact that everybody made is with reference to the area of the

15  basin.

16      MR. GIRARD:  There is no question there was a mistake of

17  fact as to that.  I think your Honor may have alluded to a

18  mistake of fact on Vail's part as to what they were getting

19  under this judgment and stipulated judgment.  Now this judgment

20  gives Vail all of the rights to Murrieta.  The plaintiff in

21  that action, the United States' predecessor, did not appeal

22  that particular aspect of the original judgment.  Then they

23  entered into the stipulated judgment, which does not refer to

24  the Murrieta as such, and I think it could be reasonably

25  construed that, taking these two documents together and trying

to give meaning to each part, that the parties intended, at the time they entered into the stipulated judgment, to allocate the waters but that Vail would still get what they got under the judgment which was not appealed from, namely, all of the Murrieta. But there is no question that is wrong. They are not getting all of the Murrieta. There are many other people using it. That is a mistake. Now whether or not that would be enough of a mistake of fact in itself to warrant this Court in setting aside the stipulated judgment I haven't looked up the cases. It would be primarily a mistake of law as to both parties.

THE COURT: No account was taken of ground water basins at all in the matter. That smacks of mistake.

MR. GIRARD: And what account was taken of ground water basins now appears to have been clearly erroneous.

THE COURT: There is the reference, of course, to Vail pumping out of the Pauba, which is recognizing a basin. But no account was taken of the basins in calculating any division of the water.

MR. GIRARD: That is correct.

THE COURT: No consideration of return flow. Mr. Stahlman mentioned no measurement of the water used outside the water-shed.

MR. GIRARD: I think it may be approached on the basis of mistake. Or if it is practical perhaps we should go into what

1   powers of recission of an executory contract for mistake could

2   be had.  In other words, what do you need to rescind an exe-

3   cuted contract for mistake.

4   THE COURT:  Would it be your view that the order knocking

5   out the judgment or stipulated judgment be based entirely on

6   changed conditions and upon the law that an apportionment of

7   water may always be changed without encumbering it with other

8   findings with reference to mistakes, geology, etc?

9   MR. GIRARD:  No.  I would think if your Honor were going

10  to set it aside, if I were in your Honor's position, any

11  reasonable basis that you could find should have a finding.

12  THE COURT:  How much time do you want for your brief, Mr.

13  Veeder?

14  MR. VEEDER:  I would like to have, if I could, until the

15  10th of October.

16  THE COURT:  When are we coming back?

17  MR. VEEDER:  The 27th.

18  THE COURT:  That doesn't give much time for anybody else

19  to reply, if they want to.

20  MR. VEEDER:  Then the 1st of October, if I may, your

21  Honor.

22  THE COURT:  All right, the 1st of October.  And give the

23  defendants to the 17th of October to make such reply as they

24  see fit.  And I would like particularly to ask Mr. Girard to

25  make a reply.

1     And I also would like to assign to Mr. Girard, who of

2 course works for the State of California and has a lot of time

3 available, to start to work on a set of findings.  You sub-

4 mitted me something to start with, but more extensive findings

5 covering mistakes as to geology, etc. in connection with this

6 judgment and the stipulated judgment.  A complete set of

7 findings, setting forth your position.

8     MR. GIRARD:  When do you want that in, your Honor?

9     THE COURT:  I appreciate the fact that it is going to take

10 some time.  Can you have that in by the 17th of October, too?

11     MR. GIRARD:  I hope so.  I will try.

12     THE COURT:  I am not asking you to submit one, Mr. Veeder,

13 because I do not seem to be in accord with you in your thinking

14 about this problem.

15     MR. VEEDER:  I will write you the brief, your Honor.

16     THE COURT:  I am not talking about the brief.  This could

17 be in the nature of an interlocutory judgment.

18     MR. GIRARD:  Non-appealable?

19     THE COURT:  It would be an analysis of the old judgment,

20 the effect of the stipulated judgment.  It should point up the

21 dilemma Mr. Veeder finds himself in where he can't have his

22 cake and eat it, too.  He can't ask to set aside the stipulated

23 judgment without being confronted by this finding as to the

24 basin.  After the amount of time that Mr. Veeder has put in

25 here trying to convince me of the extent of this basin, the

1  finding that Mr. Veeder has never yet to this date said that he
2  had excepted the Vail Company from this proposed finding.  He
3  didn't today except them from this proposed finding on the new
4  basin.  I would like the thing carried right on down, and we will
5  look at the briefs and if I decide this matter we will start
6  working over these proposed findings.

7      I think you are in the very simple position of having to
8  make your choice.  You are going to stand on one foot or the
9  other.  I don't think you can ride the rail on this.

10     MR. GIRARD:  I hate to throw ointment upon a back that
11 has been heavily burdened today, but are we going to consider
12 whether it will be appealable today or later?

13     MR. VEEDER:  I would petition your Honor that whatever is
14 done be done under Rule 54 (b) if you decide, if you would,
15 your Honor please, that it is an issue that can be separated
16 and segregated and could be subject to appeal.

17     THE COURT:  I think that Counsel probably want to discuss
18 that, and since you have to go we can't spend any more time on
19 it.

20     MR. VEEDER:  I appreciate your Honor's attitude very much.
21 I find myself in a bind timewise, and thank you very much,
22 your Honor.  May I be excused?

23     THE COURT:  Yes.

24     MR. GIRARD:  On the 27th, Bill, are you going to have
25 some more testimony like we had the first day, from Colonel

14,481

1   Bowen?

2      MR. VEEDER:  We are going to cover the properties of over

3   one hundred defendants and there will be evidence of the

4   character that Colonel Bowen has given in the past in regard to

5   people who have not shown up and who have shown no interest.

6      THE COURT:  Tell me by letter what you propose to do and

7   we will see.  I want to get this issue out of the way if we

8   have to postpone some of that business.

9      MR. VEEDER:  I will present it clearly to your Honor by

10   letter.

11      MR. GIRARD:  Would it be helpful to your Honor to indicate

12   whether these lands are in basement complex or weathered base-

13   ment complex?

14      MR. VEEDER:  In that regard I am preparing a letter of

15   transmittal for your Honor to each of the parties, and no

16   reference will be made to ground water, only to irrigable

17   acreage.

18      THE COURT:  Parties where, what area?

19      MR. VEEDER:  In the Upper Murrieta and Warms Spring

20   Creek, which is set for October 27th.

21      THE COURT:  I will have to look at the letter.

22      MR. VEEDER:  The letter is in the process of being

23   drafted.  Your Honor will have the opportunity to read it.

24      THE COURT:  All right, I'll look it over.

25      MR. VEEDER:  May I be excused, your Honor?

1      THE COURT:  You may.

2      (ADJOURNMENT TO OCTOBER 27, 1960, AT 10:00 A.M.)

3                           - - -

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25