# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

—  —  —

### HONORABLE JAMES M. CARTER, JUDGE PRESIDING

—  —  —

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT,
et al,

Defendants.

No. 1247-SD-C

---

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

**Place:**   San Diego, California

**Date:**    Friday, October 28, 1960

**Pages:**   14,588 to 14,684

FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DIVISION
By _____

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211   Ext. 370

14,588

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 1247-SD-C |
| ) | |
| vs. ) | |
| ) | |
| FALLBROOK PUBLIC UTILITY ) | |
| DISTRICT, et al. ) | |
| Defendants. ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS
San Diego, California
Friday, October 28, 1960.

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | WILLIAM H. VEEDER, ESQ., Special Assistant to the Attorney General |
| | LCDR. DONALD W. REDD |
| For the Defendants: | |
| Vail Company | GEORGE STAHLMAN, ESQ. EARL K. STANTON, ESQ. |
| Fallbrook PUD, et al. | FRANZ R. SACHSE., ESQ. |
| State of California | FRED GIRARD, ESQ., Deputy Attorney General |
| Barnett, et al. | BEST, BEST & DRIEGER, by ARTHUR E. LITTLEWORTH, ESQ. |
| Murray Schloss Foundation | WALTER GOULD LINCOLN, ESQ. |

```
 1                        INDEX TO EXHIBITS

 2      Plaintiff's Exhibits                            In Evidence

 3      208-D (Documents added)                            14,590

 4      207-E (Documents added)                            14,590

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

14,590

1    SAN DIEGO, CALIFORNIA, FRIDAY, OCTOBER 28, 1960, 9:00 A.M.

2          THE CLERK:  1247-SD-C United States vs Fallbrook.

3          MR. LINCOLN:  May I address the Court, your Honor.

4          THE COURT:  Yes sir.

5          MR. LINCOLN:  May I at some time during the day at your

6    Honor's convenience have five minutes time to present some

7    thoughts I have in regard to the stipulated judgment?

8          THE COURT:  Yes, I'll be glad to hear you.

9          Proceed, Mr. Veeder.

10         MR. VEEDER:  Your Honor, I have a couple of housekeeping

11   things to do.  We had some more consents on the Upper Murrieta.

12   May I file those and add them to Exhibit 208-D.

13         THE COURT:  They will be added and filed as part of

14   Exhibit 208-D.

15         (The documents above referred to were marked and

16          received as part of plaintiff's Exhibit 208-D.)

17         MR. VEEDER:  I would like to add these to Exhibit 207-E.

18         THE COURT:  They will be added to Exhibit 207-E and

19   received in evidence.

20         (The documents above referred to were marked and

21          received in evidence as part of plaintiff's

22          Exhibit 207-E.)

23         MR. VEEDER:  And we would like to substitute the 265

24   series.

25         Mr. Clerk, check me on this.  It is 265-A through G?

14,591

1     THE COURT:  Was that 207-E or 207-D?

2     MR. VEEDER:  207-E, your Honor.

3     THE COURT:  And the next one is 208-D.

4     MR. VEEDER:  That is correct.

5     THE CLERK:  That is correct.

6     THE COURT:  You may substitute the 265 series.

7     MR. VEEDER:  I observe, your Honor, that there has been

8  a continuance in the Master's Hearings until November 1, 1960

9  at the Reche School.

10     THE COURT:  That was continued from Reche School to

11  this Courtroom.

12     MR. VEEDER:  I wonder if it would be permissible, I

13  would like to ask your Honor to enter an order continuing

14  this indefinitely, because I don't believe there is any need

15  of any further Master's Hearings.

16     THE COURT:  It comes up on the first, doesn't it?

17     MR. VEEDER:  It comes up on the first.  I will not be

18  here.

19     THE COURT:  Mr. Cranston is going to be here some time

20  this morning or early this afternoon and we are going to

21  discuss it.  But that is what I thought he would probably do,

22  put it over to some date in the future.  I don't anticipate

23  that we will have further Master's Hearings.

24     MR. VEEDER:  Thank you, your Honor.

25     MR. SACHSE:  There remains but one little thing that I

1  am sure Mr. Veeder is interested in, and that is that the

2  findings on the Rainbow have not yet been prepared.  I was

3  taking it for granted that that might be November 1st with

4  the present findings.  Of course, I don't know that any of

5  us would be prepared anyway.  So there is no need for any

6  hearing.  I was hoping that those findings would be done one

7  of these days.

8          THE COURT:  Wait until he gets here.  We will talk to

9  him.

10          MR. VEEDER:  Your Honor, in considering the question

11  of the stipulated judgment, the United States of America

12  necessarily takes the position that when Vail Company and

13  the predecessor of the United States, Rancho Santa Margarita,

14  agreed to terminate the cost of the litigation with the

15  stipulated judgment they in effect entered into an all-embrac-

16  ing contract.  That is all it is.  It covered every phase and

17  aspect of the case.  I believe that it is important for your

18  Honor to consider the stipulation as nothing more than a

19  contract.

20          THE COURT:  Did you find any authority for that?  I

21  read your brief and I haven't seen any cases that are on the

22  nose on that point.

23          MR. VEEDER:  It says it is a contract.

24          THE COURT:  Yes.  Most of the cases indicate that a

25  stipulated judgment is like any other judgment that is entered

1   into by stipulation of the parties.

2        MR. VEEDER:  I think that an early brief that I filed

3   with your Honor showed, and I quoted authorities on the pro-

4   position, that it is a contract.  But indeed it is more than

5   a contract.  It is a contract with the blessing of the Court.

6   And I don't believe that therewas anything left undone or

7   anything that remained for consideration other than that

8   document.

9        THE COURT:  It is your point that this stipulated

10  judgment settled all disputes between the Vail Company and

11  Santa Margarita.

12       MR. VEEDER:  That is right.

13       THE COURT:  And that it established their rights to

14  water as contrasted with the corpus of the water?

15       MR. VEEDER:  Yes, that is right.  And it related

16  strictly and solely and entirely to those usufructuary rights,

17  having nothing to do with the corpus of the water.  It could

18  not.

19       THE COURT:  And it finally settled all disputes between

20  Vail and Santa Margarita.

21       MR. VEEDER:  That is our view.  And I believe that is

22  the view that Vail Company has consistently taken.

23       THE COURT:  And that it was done to avoid any costly

24  litigation.

25       MR. VEEDER:  Right.  And I don't believe there was any-

1    thing else, I don't believe there was anything left.

2    THE COURT:   That brings me to a question I want you

3    to discuss sometime along here.  Assuming that that is all

4    true, that this finally settled all rights between Vail and

5    the Santa Margarita, that it was entered into to settle and

6    avoid costly litigation and that it settled the usufructuary

7    rights, the rights to the water as contrasted with the corpus,

8    the water rights on the stream, that brings me to this question.

9    And one other question.  Is it your view that when the stip-

10   ulated judgment was signed that it then was grafted on and

11   became a part of the former judgment, the part that was not

12   appealed?

13   MR. VEEDER:   No. I have said this to your Honor before,

14   and we have cited authorities on the proposition, that the

15   stipulated judgment merged all that went before and concluded

16   every aspect.

17   THE COURT:   When you say, "Merged" you mean that it

18   superceded?

19   MR. VEEDER:   That is right.

20   THE COURT:   Took the place of?

21   MR. VEEDER:   Right.

22   THE COURT:   Wiped out?

23   MR. VEEDER:   Right.  And the Vail Company has filed

24   briefs with you saying precisely that thing.  Mr. Stahlman's

25   brief says that.

1      THE COURT:  Here comes my question.  Assuming that is

2  true, how do you justify the action of the United States in

3  making Vail Company a defendant in this  action and again

4  engaging them in costly litigation that started in 1951 and

5  has continued to the present, asserting as the first complaint

6  did     the paramount right of the Government to all of the

7  water, arguing before me, presenting before me a theory that

8  the Government was entitled to all of this water because of

9  its sovereignty?  How do you square the position you take in

10  this Court today with that position on the part of the

11  Government?

12      MR. VEEDER:  I pleaded, your Honor, in paragraphs 5 and

13  6 of the complaint that we owned rights to the use of water

14  under the stipulated judgment, that the Vail Company were

15  bound by it, and that we were bound by it.  And indeed I want

16  to go one step further.  I personally conferred with Melvin

17  M. Meyers, who were then representing the Vail Company, and

18  on November 23, 1951 I stipulated with them concluding all

19  litigation between us.  And they have recently abrogated

20  that stipulation.  Your Honor asked me how did I do it.

21      THE COURT:  Wait a minute.  That stipulation that you

22  talk about was not a stipulation to conclude all litigation.

23      MR. VEEDER:  With Vails.

24      THE COURT:  Oh no, that stipulation merely said that

25  the -- it was later set aside.

1    MR. VEEDER:  Yes, at the request of the Vail Company.

2  But you asked me how did I justify what I have done, and I

3  simply say, as is so frequently the case, indeed Mr. Girard

4  cites cases very much in point on this proposition, that you

5  have a situation where a judgment is pleaded as regards to

6  two people and it is res adjudicata as to those two people

7  but as to other people you can proceed just exactly as we

8  did.

9    THE COURT:  First, I don't think the stipulation you

10  referred to has the effect that you say it has.  I don't have

11  it before me.

12    MR. VEEDER:  I have it here and I assure your Honor

13  that I drew that stipulation, I drew it with the Vail Company,

14  and we agreed with Bill Clarity, who was then their lawyer,

15  that there would be no litigation between the Vail Company --

16    THE COURT:  Did you say that in the stipulation?  I

17  don't care what you agreed with Bill Clarity.

18    MR. VEEDER:  It is in the stipulation, your Honor.  I

19  thought that I had that here with me.  But the fact remains

20  that we pleaded the stipulation, and we concluded any litigation

21  between the Vail Company and the United States of America.

22    So, when you ask me that question my response to you is

23  that we relied on the stipulated judgment as to the Vail

24  Company.  Everyone comprehended that that was the measure of

25  our rights with the Vail Company, and as against the Vail

1   Company we claim nothing more and nothing less than what was

2   embraced in the stipulated judgment.

3       I have here the stipulation between the Vail Company and

4   Rancho Santa Margarita, and we concluded between the Vail

5   Company and the United States at that time as follows:

6       "Accordingly, it is hereby stipulated and agreed, by

7       and between the United States of America, plaintiff

8       herein, and the Vails, defendant herein, through their

9       respective counsel, as follows:

10      That the rights and duties of plaintiff, United States

11      of America, and Vail, in and to the waters of the

12      Temecula-Santa Margarita river as between plaintiff

13      and said defendant Vails, are those fixed, determined

14      and declared in that certain judgment entered

15      December 27, 1940 in the case of Rancho Santa Margarita,

16      a corporation vs Vail, in the Superior Court; that

17      neither plaintiff herein nor Vail Company claim,

18      or will claim in the within action (this case) any

19      rights or duties as against the other, other than

20      and different from those fixed, determined and

21      declared in said judgment of December 27, 1940."

22      THE COURT:  What was the date of that stipulation?

23      MR. VEEDER:  That stipulation was filed with the Court

24  on October 24, 1951.

25      THE COURT:  What date was it abrogated?

14,598

1      MR. VEEDER:  It was signed on the 23rd of October, 1951,

2  it was filed on the 24th, it was signed by me and by Loren

3  M. Wright, attorney for Melvin & Meyers --

4      THE COURT:  When was it by agreement between Vail and

5  the United States set aside?

6      MR. VEEDER:  I would have to check the date the date

7  on it.  Sometime this Spring, your Honor.

8      MR. STAHLMAN:  No, it was over a year ago.  It was done

9  in the early part of the trial, your Honor, before we knew

10  the geology they put up here.

11      THE COURT:  Was it done before or after the amendatory

12  and supplemental complaint was filed?

13      MR. VEEDER:  No, it was afterward.

14      MR. STAHLMAN:  No, it was right about that time.

15      MR. VEEDER:  Wait a minute.  It was long after 1958.

16  I will get the date for you.

17      MR. STAHLMAN:  It was after we filed the pleadings in

18  which we requested the stipulated judgment be set aside. Then

19  the question of this stipulation came up, a written motion

20  was made and submitted to the Court, and then it was agreed

21  that the stipulation would be abrogated.

22      MR. VEEDER:  But that is the answer to your Honor's

23  question as to what we claim against Vail Company.

24      The assertion of this paramount right, your Honor, the

25  paramount right to which you allude was simply our pleading

14,599

1    as to a superior right, we had so stipulated on that, and

2    the superior right was nothing more nor less than every

3    individual pleads in the State of California.  So there is

4    no basis whatever for the challenge that in some manner in

5    this litigation we departed from the stipulated judgment by

6    naming Vail a defendant.  And we approach it on the basis of

7    the contract, the agreement among the parties to conclude

8    every phase of the old law suit, I think that we are absolutely

9    right in that position, and I believe that your Honor's conduct

10   in regard to that contractual relationship is of utmost

11   importance.

12        MR. STAHLMAN:  Mr. Veeder, may I inform the Court as

13   to something on the timing that I recall.

14        You recall, your Honor, it was after this stipulation

15   was entered into there was filed then an amended and supple-

16   mental complaint by the Government reasserting in the supple-

17   mental and amended complaint --

18        THE COURT:  That is what I am trying to find, whether

19   the stipulation was set aside before or after the Government

20   filed this amendatory and supplemental complaint.

21        MR. VEEDER:  No.

22        MR. SACHSY:  It was set aside afterward.

23        MR. VEEDER:  Long afterward.

24        MR. STAHLMAN:  Not long afterward.

25        MR. VEEDER: It was set aside after George had amended

14,600

1    his answer.

2         MR. STAHLMAN:  We didn't amend the answer.

3         THE COURT:  Then it was filed after you filed the

4    amended complaint.

5         MR. VEEDER:  Yes, long afterward.  I can check it.

6         MR. STAHLMAN:  The amended and supplemental complaint

7    reasserting the stipulated judgment was answered, and in the

8    answer there was the affirmative defense to abrogate the

9    stipulated judgment.  Then we ran into this stipulation that

10   was filed, about which I found out for the first time and

11   made the motion to set aside the stipulation.

12        MR. VEEDER:  What is your Honor looking for now, may

13   I inquire?  Maybe I can help you.

14        THE COURT:  I don't know whether you did it in so many

15   words in your amended and supplemental complaint, but you

16   argued to this Court and contended contrary to all proceedings

17   in Congress that the Government had a  right of sovereignty

18   to this water.

19        MR. VEEDER:  But it has nothing to do with the stipulated

20   judgment.  I can't buy everything that your Honor says.  The

21   point that I make, however, is that as between Vail Company

22   and the United States of America, by the contract, the four

23   corners of which resolved the rights of the parties, we

24   relied upon, and the Vail Company through their counsel,

25   concluded the litigation.

14,601

1          THE COURT:  Now what about this?  I am of the opinion,

2     and I am fairly definite on this, that the stipulated judgment

3     was grafted onto the other judgment that was not appealed,

4     and that the two documents have to be considered together as

5     a whole and that you have to read them together just as the

6     matter happened.  The case went up on appeal.  Certain parts

7     were not appealed from.  Other parts were.  A new trial was

8     ordered on these certain parts, and then the parties stip-

9     ulated and the stipulated judgment was entered into.  I am

10    of the opinion that the stipulated judgment did not supercede

11    entirely the old judgment, but was grafted onto it as it were,

12    and the two together become the judgment in that proceeding.

13    Now that is my view.

14         Now, if that is true, what are you going to do about

15    the fact that that judgment, the portion that was unappealed

16    from, describes the stream system and state that the basins

17    consist only of the younger alluvium in the Murrieta and the

18    Pauba Valleys?

19         MR. VEEDER:  Well, your Honor, on that score, with all

20    respect to your Honor, I disagree of course.

21         THE COURT:  Assume that that is the law.  Where are

22    you now?

23         MR. VEEDER:  Assuming that to be the case, as I under-

24    stand the position as taken by California -- I don't think

25    the Vails have taken the position -- there was a finding to

1    the effect that the ground water in the Pauba valley did not

2    extend out under the older continental alluvium as they do

3    and as we now believe.

4         MR. STAHLMAN:   And the Murrieta.

5         MR. VEEDER:   I will have to dissent in regard to

6    Georges addition in regard to the Murrieta.

7         MR. STAHLMAN:   Read the finding on page 55 at line 20.

8         MR. VEEDER:   May I have an opportunity to argue without

9    heckling from the peanut gallery.

10        THE COURT:   Proceed.

Belt 12   11        MR. VEEDER:   I believe that the finding in any event

12   would only irrelevant as between the Vail Company and the

13   United States of America to begin with.   So if your Honor

14   so holds that it didn't supercede those findings of fact,

15   your Honor then views the situation as between the Vail

16   Company and the United States of America in connection with

17   that finding and no one else.   What is the result of it --

18   assuming that it stands?   The result of that finding is

19   meaningless for this reason.   The subject matter or the  res

20   controlled by the stipulated judgment is the bundle of rights

21   of the two parties, and it was determined that based upon

22   those rights the yield to which Santa Margarita and Vail

23   Company were entitled would be apportioned two-thirds -

24   one-third.

25        In addition - and this is extremely important -- by

     reason of erroneous statements made by California in regard

to the stipulated judgment and its interpretation.  California
has represented to your Honor in briefs and in filings made
by it that the only criteria for the apportionment of water
under the stipulated judgment were the measurements at the
gaging stations Number 3 and Number 6.  However, the control-
ing proviso of the stipulated judgment is paragraph 12, which
declares that Vail Company will always be entitled to use one-
half of the quantity used by the United States.  In other
words, if the United States of America uses 100 acre feet,
Vail Company under the stipulated judgment is entitled to
50.  Now, that is how it works out.  It is erroneous to say,
as California erroneously states, that by reason of the fact
that we are now using the water out of the basin the water
passing the Ysidora Station, which is Number 6, is meaningless.
Well, so it is when there is no water going by it.  But the
criterion for the apportionment is paragraph 12.  So you have
no difficulty from the standpoint of administration.  You
have a criterion which will guide you.  You have a procedure
easily melted into any decree that you would enter.

     But, I refer again to your query: what does it mean
if I find that the ground water body under the stipulated
judgment is different than the ground water body now proved
to be and which your Honor so ably delineated yesterday?
To me it is meaningless.  It has no import at all.  Why?
Because every drop of water, irrespective of its source --

1   ground water, surface, percolating -- used by the Vail Company

2   is part of its one-third.

3       So, we are now confronted with the situation that we

4   have beaten up and down the valley for weeks now and I say to

5   your Honor that even if your Honor proceeds in the manner in

6   which he has stated it makes no difference to the parties.

7       THE COURT:  I have your point so far.  In other words,

8   you say that as between Vail and the United States, assuming

9   they made a mistake on the geology of this basin, assuming

10  the findings would show a very small or a smaller basin,

11  nevertheless since the stipulated judgment proported to divide

12  their rights to the use of the total water from the stream

13  system in the basin it doesn't make any difference where it

14  came from.  The water was in the area that they said was a

15  basin, and it was a basin and the water was divided.

16      MR. VEEDER:  That is correct.

17      THE COURT:  Now we come logically to the next problem.

18  Who were the two interveners in the prior case action?

19      MR. STAHLMAN:  Plator.

20      MR. VEEDER:  The Murray Schloss estate and Dr. Henderson,

21  the successor to it.

22      THE COURT:  Suppose that Henderson comes in and says,

23  "Look, I was a party to this judgment and I didn't appeal from

24  it, and the judgment found that that water up in the yellow

25  and the orange area, the older alluvium, was not a part of

14,605

1   the stream system and I am going to hold you to it.  You are

2   not entitled to that water."  Then what are you going to do

3   about it?

4       MR. VEEDER:  My own view of that is that Dr. Henderson's

5   interest and the Murray Schloss estate's interest are riparian

6   in character and they can participate -- indeed, we are bound

7   to take care of them out of our share under the stipulated

8   judgment.

9       THE COURT:  To the extent provided in the stipulated

10  judgment.

11      MR. VEEDER:  But, from our viewpoint they are riparian

12  rights.

13      THE COURT:  But that is your only obligation, to the

14  extent provided in the stipulated judgment.

15      MR. VEEDER:  No, they didn't sign.

16      THE COURT:  In the original judgment.

17      MR. VEEDER:  They can have their riparian rights and

18  if your Honor wants me to sign a stipulation to that effect

19  now, I will.  I will simply say that the measure of their

20  rights is spelled out to be riparian in character, and we

21  necessarily recognize their rights.

22      THE COURT:  You were only going to recognize their

23  rights by stipulating to set aside the old judgment which

24  bound them to a certain amount.

25      MR. VEEDER:  I don't think so.  We come back again to

14,606

1    errors by California presented to your Honor.   You have this

2    situation where California has filed with you a brief to the

3    effect that as among riparians you can change a decree to

4    meet the circumstances as they presently exist.   I believe

5    that based upon the record -- I believe Colonel Bowen testified

6    in regard to Dr. Henderson's riparian land, and I think he

7    also testified in regard to the Murray Schloss land -- we

8    necessarily recognize their riparian rights and they are

9    entitled to participate in the available supply of water.

10           THE COURT:   Specifically, under the authorities cited

11   by Mr. Girard, since this was an apportionment among riparians,

12   then that adjudication made in the old judgment is subject

13   to change as to these two interveners.   Is that what you are

14   telling me?

15           MR. VEEDER:   I would say that their rights necessarily

16   are subject to change under changed conditions.

17           THE COURT:   Under the authorities cited by the State

18   of California.

19           MR. VEEDER:   In regard to riparians only.

20           But, where California made its grievous mistake and

21   injurious mistake to us surely, the authorities that were

22   cited did not and do not relate to the all important question

23   of the National Government's right to use water outside the

24   watershed as against Vail Company.   They didn't cite you any

25   authorities on it, and the fact remains that our rights and

1  the important right under the stipulated judgment is to use

2  water outside the watershed.

3      Now, **Mr. Girard** made this statement to you, and I must

4  correct it now, he says, "What difference does it make? The

5  water gets down to the United States of America and it can

6  do what it chooses. If it wants to take the water outside

7  the watershed, fine." That is a glib and an easy answer.

8      We claim, though, that under the stipulated judgment

9  we have a usufructuary right, not water. He made that mistake

10  in his finding. We are not talking about water. We are talk-

11  ing about an interest in real property against the Vail

12  Company which permits us to demand that water come down to us.

13  We are not talking about the corpus. True, we can use the

14  water where we choose once it gets to us. The important thing

15  is the interest in real property that we have against the

16  Vail Company's land by reason of the stipulated judgment.

17      THE COURT:  But you couldn't demand this against

18  Roripaugh and the people up in the Santa Gertrudis.

19      MR. VEEDER:  Not at all.  You could not.

20      THE COURT:  Therefore, they could legally insist that

21  you not demand that this water come down.  And your position

22  is that you could therefore demand that no matter how much

23  water they used up there, you could demand that Vail continue

24  to allow water to come down so that you might use it

25  outside the watershed.

1          MR. VEEDER:   As between Vail Company and the United

2    States of America, there is no question about that.

3          Here is another one of these willy-worms that have

4    crawled into this litigation that I am going to eliminate.

5    We have this situation where with a bunch of quick arithmetic

6    Mr. Girard says, "There is only 1800 acre feet involved anyway

7    on that three second feet."  Overlooked again is the fact

8    that the United States of American has an appropriative right

9    as against the Vail Company and as against the world for

10   Lake O'Neill.  Now, the undisputable proof in the record is

11   -- this is extremely important -- that that usefructuary

12   right that we have for Lake O'Neill against the world is a

13   lake water right.  It was a right that was not exercised

14   until the period of high water.  So we are in the position

15   of being able to demand sufficient water for Lake O'Neill

16   each year, after the high water period, to take care of that

17   lake.  And whether it runs to 4000 acre feet a year I don't

18   know, but it will run upward to that.  And the point remains

19   that under the stipulated judgment Vail Company is much better

20   off, in my view, to have the three second feet floor that it

21   has now than to have us demand, and we will certainly demand,

22   that that lake be filled from late water every year.  And

23   when I say, "late" water, I mean --

24          THE COURT:   You mean you will demand that against Vail.

25          MR. VEEDER:   Naturally.  And against the world.

1    THE COURT:  I thought you told me that all your rights

2    as to Vail were settled by this decree.

3    MR. VEEDER:  That is exactly what I said.  They are

4    settled.  But your Honor has told me that he is going to

5    knock it out if he can.

6    THE COURT:  Let us not argue.  Let's get your position.

7    If the stipulated judgment stands and the division of water,

8    the rights to water, between the United States and Vail are

9    as set forth in that stipulated judgment.  Do you intend to

10   contend for this other right against Vail to fill Lake O'Neill?

11   MR. VEEDER:  No, I thought I made it very clear.  I

12   said that every right, every interest, every claim is merged

13   in the stipulated judgment as it stands today.

14   THE COURT:  Then why did you put on proof as part of

15   the Government's case and contend for these rights in Lake

16   O'Neill?  Did you anticipate back in those days that I was

17   going to talk about something besides the stipulated judgment?

18   MR. VEEDER:  I didn't anticipate at all.  I have

19   Roripaugh up here, I have I don't know how many defendants,

20   against whom the stipulated judgment has no bearing, and I

21   certainly had to prove my appropiative right for Lake O'Neill

22   against them.  I had to prove my case against Fallbrook.

23   MR. GIRARD:  While you are there, Mr. Veeder, what good

24   is your appropiative right against Roripaugh, who is riparian

25   on the stream?

14,610

MR. VEEDER:  May I go on with my argument?

THE COURT:  While we are on that I would like to hear your answer.

MR. VEEDER:  It is very obvious that when I check out the gate of the patent, it is entirely possible that our early appropiative right is antecedent to the patent of Roripaugh, and when I check that out that is a complete answer.

MR. GIRARD:  You haven't proved it yet.

MR. VEEDER:  Haven't proved what?  I have told you that I am going to take care of the riparian rights by going to the title companies, and if it appears that the Roripaugh patents are junior in time to our appropriative rights then our claims are ahead of them.

MR. STAHLMAN:  It is Grant land.

MR. SACHSE:  It is a Mexican grant.

MR. VEEDER:  I don't mind the heckling.

THE COURT:  Not heckling.  They are merely suggesting to you that Roripaugh deraigns his title from a Mexican grant.

MR. GIRARD:  Which preceeds any patent.

MR. VEEDER:  Let me go  on and say this.  There are certainly people in the area who have patents that are junior to our appropriative right.  It is unfortunate      -- I'll not say it.  The fact remains that we had to prove our appropriative right, we proved our appropriative right against anyone whose patent is junior to that date -- our appropriative

14,611

1    right is good.

2         THE COURT:  I get your point.

3         Tell me what is wrong with California's theory based

4    on the Bernhart case in 19 California 2nd at 807 (Bernhart

5    vs Bank of America).

6         MR. VEEDER:  Your Honor, I will do what you want me

7    to do.  You told me that I shouldn't argue res adjudicata

8    until the end.  You were quite emphatic about that.  I am

9    not through.

10        THE COURT:  I thought you were  through.

11        MR. VEEDER:  No, not by a long way, your Honor.  I

12   would have much preferred to go the other way, but I will

13   go this way.

14        We have statements by Mr. Stahlman on page 9 of his

15   brief most recently filed and our California gentlemen and

16   his proposed finding Number 17 make a very serious erroneous

17   statement which has great bearing upon this case.

18        MR. GIRARD:  I will stipulate that they do not have a

19   license.

20        MR. STAHLMAN:  We have already talked that over and it

21   can be corrected.

22        MR. GIRARD:  If that is what Mr. Veeder is referring

23   to.

24        THE COURT:  What license?

25        MR. VEEDER:  The mistake to which I am alluding now

14,612

1   and the mistake that was made in Mr. Stahlman's brief at

2   page 9 is that they referred to the fact that the United

3   States of America withdrew its protest to the Vail Company's

4   application for a dam.   Then California states, as does Mr.

5   Stahlman, that thereafter hearings on said application were

6   held and evidence in support of and in opposition to said

7   application was received; that dispite the withdrawal of its

8   protest the United States of America appeared at said hearing

9   and presented evidence in opposition to the application.

10          MR. STAHLMAN:   It is in the evidence in the case.

11          MR. VEEDER:   That is a clearly erroneous statement.

12   It is extremely prejudicial, because I think if your Honor

13   will set aside the stipulated judgment one of the most important

14   factors on appeal will be the fact that upon representations

15   of the Vail Company the United States of America withdrew its

16   protests to the building of Vail Company's dam.   I believe

17   there are cases, indeed I have participated in a case not too

18   long ago where the very question turned on the proposition

19   that the United States of America withdrew a protest to an

20   application, and having done so, having thus changed its

21   position the city of El Paso  could not get out of its contract.

22   It is of extreme importance.

23          THE COURT:   You have lost me.   Do you contend that the

24   United States did not appear at the hearings and did not

25   present evidence in opposition to the application?

1      MR. VEEDER:  It did not.  It did not present evidence

2  in opposition.

3      THE COURT:  Did it voice objection?

4      MR. VEEDER:  It did not.  It joined with the Vail

5  Company in the matter.

6      MR. STAHLMAN:  Look at the AK series of Exhibits and

7  you will see a letter in there that was written even after

8  the hearings at which the Navy appeared.

9      MR. VEEDER:  Why am I not permitted to finish my

10  argument?

11      THE COURT:  Just a moment.  I would like to look at

12  the letter.  Do you mind?

13      MR. VEEDER:  Yes.  I want you to.

14      THE COURT:  What is it?

15      MR. VEEDER:  AK-3.

16      MR. STAHLMAN:  AK-3 was withdrawn.  But after that,

17  your Honor, AK-11, you will find, was written after the hear-

18  ings.

19      MR. VEEDER:  Let me see it.

20      MR. STAHLMAN:  AK-11 was written January 6, 1948, in

21  which they are submitting information.

22      THE COURT:  What was the date of the hearing?

23      MR. STAHLMAN:  The date of the hearing was in November

24  sometime, I think.

25      Do you have AK-3 before you, your Honor?

m  58                                                                14,614

1          That is the one that they relied on in their brief.

2          We know they sent in AK-3, yes.  But after that they

3     appeared and testified in a hearing at which both the

4     application of Fallbrook and the application of Vail were

5     being considered by the Water Rights Board, and thereafter

6     they sent a letter even after the hearing and that letter was

7     dated January 6 -- it is AK-11 -- in which they refer to the

8     application Number 11518, which was the Vail application, and

9     it refers to the prior hearing.  It states in this letter,

10    "As was pointed out at the time information was furnished by

11    representatives of the Navy and Camp Pendleton at the hearing

12    in protest of application Number 11586, it was for the purpose

13    ...."  That is the Fallbrook.

14          MR. VEEDER:  That is right.

15          MR. STAHLMAN:  But it then goes ahead and outlines the

16    entire water situation of the Navy as to what they demanded

17    and what they desired.

18          MR. VEEDER:  Do you have AK-3 yet, your Honor?

19          THE COURT:  No, let's see it.

20          MR. STAHLMAN:  Here is AK-3.

21          MR. VEEDER:  I am very anxious that you have AK-3, your

22    Honor.

23          THE COURT:  Is the Clerk here?

24          MR. VEEDER:  You may use mine.

25          MR. STAHLMAN:  Then, your Honor, AK-2 shows that they

14,615

1   were going to appear on both applications, and the final

2   action taken on February 8th when the Water Resources Board

3   notified the Navy that they had considered the protest to the

4   application.

5    THE COURT:  Let me read it.

6    MR. VEEDER:  Do you have AK-3 there?

7    THE COURT:  No.

8    MR. VEEDER:  Here is AK-3 (handing document to the

9   Court), and you will see how they made their mistake.

10    THE COURT:  Well, first AK-3 says the Navy has with-

11   drawn its protest, and the last sentence says that at the

12   hearing the Navy did not recede from its protest in any

13   particular.

14    MR. VEEDER:  If you read the words "Fallbrook Public

15   Utility District" you will get a different slant on it.

16    MR. STAHLMAN:  It applies to both the applications.

17    MR. VEEDER:  We are taking a lot of time.  I will show

18   you how wrong they are in their position.

19    THE COURT:  Do you have the transcript on that?

20    MR. VEEDER:  Yes, I have the transcript.

21    THE COURT:  Is it in evidence?

22    MR. VEEDER:  Yes, it is.  I put it in evidence.  It

23   is Exhibit 161.  On page 2 --

24    THE COURT:  Do you want your document back, Mr. Veeder?

25    MR. VEEDER:  Yes.

 THE COURT:  Before it gets lost, take it back.

14,616

P 1   1
Belt 13

MR. VEEDER:  On page 2 of the transcript of the record of

2   hearing on Vail Company's application, this statement is made

3   by the State of California:  "Also, the Eleventh Naval District's

4   protest against Vail Company's application Number 1158 has been

5   withdrawn.  So far as I know, the only protestants now are the

6   Estate of Murray Schloss and the Fallbrook Public Utility District

7   ..."

8       MR. STAHLMAN:  And yet they went ahead and testified.

9       MR. VEEDER:  Just a minute.  I would like to finish my

10   argument.

11       On pages 133 and 134 of the transcript, referring to Mr.

12   White, who was then representing the Vail Company at the pro-

13   ceeding, he says: "I don't want to suggest to you that you

14   curtail your case in any way, Mr. White.  You have seen the way

15   things developed here today, Mr. White, and you are perfectly

16   free to put on any witness or any testimony that you want to.

17   As the record now stands the protestants against your applica-

18   tion 1158 have boild down to those of the Schloss Estate and

19   the Fallbrook Public Utility District, and you have heard the

20   position of those parties."

21       Now I ask your Honor --

22       THE COURT:  Is that all that there is in that transcript

23   now about any Navy protest?

24       MR. VEEDER:  There is much more, for this reason, your

25   Honor.  You will observe that the Captain of the Navy who

P 2

1  originally protested, then who wrote a letter withdrawing the

2  protest, appeared and attacked the Fallbrook application but was

3  working with enjoined with Vail Company in its application.   I

4  think you should read this transcript.   It is extremely import-

5  ant.   It is part of the record.

6      THE COURT:   Does Fallbrook or California have citations to

7  the record that indicate that the Navy representative continued

8  his protest?

9      MR. VEEDER:   No.

10      MR. GIRARD:   No, I don't.   Maybe Franz has.   I would like

11  to read this through.

12      MR. VEEDER:   I am anxious to have you read it through.

13      Let me refer to AK3 again, which has been relied upon.   You

14  will observe that paragraph 2 relates to the Vail Company and the

15  statement there is that the protest was withdrawn, and this is

16  the memorandum dated December 24, 1940 signed by Gordon Zander,

17  principal hydraulic engineer before whom the hearing was held.

18  Then the final paragraph of AK3:   "The Fallbrook Public Utility

19  District is particularly anxious for early action on application

20  11586 for 2½ cubic feet per second direct diversion from the

21  Santa Margarita River.   At the hearings the Navy did not recede

22  from its protest to the Fallbrook Public Utility District,"   I

23  interpolate.

24      MR. STAHLMAN:   It doesn't say that.

25      MR. VEEDER:   I said I interpolated it.

P 3

1    "but the transcript will be in by the first of the year

2 and it is believed that the record will then be adequate to

3 permit this office to make a decision."

4    Now we have one of the most crucial questions directly

5 involved here, and that is the fact that the United States of

6 America changed its position on the representation of the Vail

7 Company that it would be bound by the stipulated judgment.  Your

8 Honor has stated, and it has concerned me greatly, "What differ-

9 ence does it make?" you say, "I have the jurisdiction to con-

10 trol the Vail Company dam."  I respectfully submit, your Honor,

11 that that is not the question.  The question is a right in real

12 property residing in the United States of America.

13    THE COURT:  I still don't see your point.  How are you

14 hurt?  This dam will be subject entirely to this Court's control.

15 How are you hurt?

16    MR. VEEDER:  By the fact that we have an established right

17 to take water outside the watershed is how we would be hurt, and

18 we would not have that right if you abrogate the stipulated

19 judgment.  That is the crux of this lawsuit.

20    THE COURT:  What has that got to do about building the dam?

21 The point you are urging now is that in some way Vail Company

22 is estopped to raise any of these questions because they have

23 build a dam, and you say that by withdrawing your protest you

24 let them build a dam.

25    MR. VEEDER:  Yes.

P 4

1        THE COURT:  Since any water back of that dam is subject to

2  the control of this Court, how are you hurt in any way?

3        MR. VEEDER:  We go back to the genesis of the stipulated

4  judgment.  It is being attacked as an unquestionable, I think

5  George has now used the word, monstrosity.  Assuming that that

6  was true -- and I deny it -- we have a situation where, reliant

7  upon Vail Company's assertion that it would be bound by the

8  stipulated judgment we did drastically change our position and

9  withdraw our protest in a tribunal in the State of California

10  hearing Vail's claim for an appropriative right.  You say, how

11  are we hurt?  Well, how are we hurt?  We have a legal right that

12  would be destroyed if your Honor abrogates the stipulated judg-

13  ment, and I am sure that, based upon some of the comments your

14  Honor has made, and I think correctly, that a riparian cannot

15  use the water outside the watershed as against another riparian

16  absent agreement.  That is how we are hurt.  So we have the fact

17  that this contractural arrangement between Vail Company has been

18  thrice blessed by Vail Company, and each time the United States

19  has relied upon it and Vail Company has relied upon it, and I

20  submit that for your Honor now to undertake to rewrite a contract

21  I would say you are powerless to do it, with all respect to your

22  Honor.  I think that you have no right thus to act in regard to

23  a vested right in real property.

24        (Other matters.)

25        THE CLERK:  1-1247-SD-C United States versus Fallbrook.

P 5

1    MR. VEEDER:   Now again we turn to the findings that have

2    been proposed by California for the purpose not of arguing the

3    findings but as background to queries that have been made and

4    statements included in Mr. Stahlman's brief.  It is evident

5    from reading California's proposed findings, particularly in

6    the light of California's Exhibit AX, that they have misconceived

7    the true objective and purpose of the stipulated judgment and

8    how it has operated in the past and how it is now being operated.

9    You will recall that California introduced in evidence this

10   exhibit showing the effect of measurements at Ysidora and at

11   the Number 3 gauging station at Temecula Gorge.  This effort

12   to state that the stipulated judgment cannot be operative, that

13   it is not subject to enforcement is typical of their efforts to

14   somehow blur the true effect of the apportionment between the

15   parties.  Your Honor has stated that the United States of America

16   and Vail Company could have contracted this way.  You have stated

17   that it is entirely proper for such a contract.

18       THE COURT:  I have suggested that the situation might be

19   different had there been a contract.  I am not passing on that

20   because I don't think there was a contract.  But go ahead.

21       MR. VEEDER:  In any event, it has become extremely important

22   to meet California's attack and the Vail Company's attack upon

23   the stipulated judgment on the grounds that it can't operate.

24   I see no reason whatever, in the light of the express language

25   of Section 12, to which I refer, namely, any time that we use

P 6

1 a hundred acre feet California can use fifty.  So I think that

2 it is essential that we consider the charges that there has been

3 an effort between the United States and Vail Company to apportion

4 all of the water without regard to the rights of other parties.

5     Now there was not, and there could not have been, such an

6 effect.  The stipulated judgment clearly relates only to the

7 rights of the Rancho Santa Margarita and Vail, and it is sound

8 law that if there was an over-reaching your Honor would be

9 required, under the precedence, to declare that only the bundle

10 of rights of the two parties could be adjudicated either by

11 the trial on the merits in 1930 or by the stipulated judgment

12 in 1940.  We cannot possibly accept the interpretation that

13 has been placed upon this judgment by California's AX.  It

14 shows all of the water, the entire flow, and we say this, that

15 your Honor in this case is called upon to view entirely separ-

16 ately and distinctly the rights of the Tule Land and Water

17 Company, the Roripaughs, all the other parties, and we think

18 it can be done, and we think that the criterion is available

19 to you to do precisely that.  First, to declare that the stip-

20 ulated judgment could only relate to the yield, the entitlement

21 of the two parties.  Then you don't have the problem presented

22 by California.  You don't have the problem at all.  You can say,

23 in so far as the entitlements of these two parties are concerned,

24 Vail Company can use one-half of the quanity that the United

25 States is using.

P. 7

1    I have listened attentatively because I have been required
2    to meet an outright challenge that this stipulated judgment
3    could not be operative.   I deny that it is a hard bargain.   I
4    outlined to your Honor that the stipulated judgment gives Vail
5    Company the benefit of De Luz Creek, of Sandia Creek, Rainbow
6    Creek, by the full and complete apportionment between the parties
7    that was undertaken.   So our view is that there is not a scint-
8    illa of evidence in the record that this was an over-reaching
9    arrangement where Rancho Santa Margarita in some way -- and this
10   is incredible -- over ran the Vail Company.   We deny that.

11   But more than that, we say even if it was a hard bargain
12   it is not for your Honor to set aside absent proof that in some
13   manner they were hurt.   And if there is anything that came out
14   of Mr. Wilkinson's testimony it is that he has subjected more
15   land, he has used more water by three times the water that was
16   used when we first bought the property.   I say we may be wrong
17   letting them do it, but they certainly haven't at this point
18   shown any irreparable damage.   Nor have they shown that this
19   can't be correctly administered.   And that was their burden of
20   proof, too, and they have fallen down there.

21   And there is no doubt about the correctness of the inter-
22   pretation that I tendered to your Honor.   The interpretation
23   was given to us in an official letter from the Vail Company
24   saying just what I have said, that they would always have the
25   right to use one-half of the quantity of water that the United

P 8

1    States now uses.

2         I would also like to allude to the fact that in this Exhibit

3    161, which Mr. Girard has, the question was presented by the

4    State of California to the then representative of the Vail

5    Estate in regard to exhibits.  The representative of the Vail

6    Company Estate, to prove the rights of Vail Company, put in

7    evidence in this hearing right here, the transcript of which

8    Mr. Sachse and Mr. Girard are viewing, they put the stipulated

9    judgment in evidence and gave their interpretation there as to

10   its validity and their claims under it, and they proved their

11   rights before the State of California for the Vail Company dam

12   -- at least part of their rights -- by offering in evidence the

13   stipulated judgment.

14        THE COURT:  That wouldn't be any proof of their right to

15   appropriate water.  The only ground on which the Water Board

16   could/granted a permit to build Vail Dam was that there was
            have

17   available water for appropriation which would be flood water.

18        MR. GIRARD:  May I read the paragraph where that was done.

19        THE COURT:  If you have it right there.

20        MR. GIRARD:  I have it right before me.

21        MR. VEEDER:  All right.

22        MR. GIRARD:

23            "MR. LINDLEY:  Before I do that, this discussion

24        about the Santa Margarita-Vail trial some years ago and the

25        judgment, I have here a certified copy of the final

P 9

1    judgment in that after the appeal which was a stipulated

2    judgment.  I will be glad to file this for whatever it

3    is worth; I think it will be helpful,and the Vail people

4    probably know this better than I do, but as I read the

5    situation, some parts of the original judgment entered

6    by the Superior Court were not appealed from, and some

7    parts are still in effect,and if the Department would

8    like it I will have a copy of that made and send it to

9    the Department, and they will have the whole thing."

10   That is found at page 115.

11       THE COURT:  What is the exhibit number you are reading

12   from?

13       MR. GIRARD:  Exhibit 161.

14       MR. VEEDER:  I don't mind the harassment I get all the

15   time.

16       THE COURT:  This is not harassment.  I interjected a

17   question about the matter.  It happened that counsel had the

18   transcript open right at the place where the stipulated judgment

19   came in.  Do you want me to know the facts, or do you want

20   to just talk about it?

21       MR. VEEDER:  No, I am very anxious to have the facts.

22       THE COURT:  Go ahead with your argument.  Don't worry about

23   it.  I'm running the trial.

24       MR. VEEDER:  Where we have read an excerpt to your Honor,

25   had he gone on and read the rest of it you would see what the

P 10 1   representative of the Vail Company said to the State of California.

2   He said, "So far as we are concerned, it was my opinion that

3   there was nothing other than the stipulated judgment in regard

4   to our rights."  He denied the very proposition that there was

5   some vestige overhanging.

6       THE COURT:  Mr. Veeder, this point is just as simple as

7   mud.  The only power the State Water Rights Board had to permit

8   the impoundment of water was of unappropriated water, and this

9   would be flood water.  It doesn't hinge upon any stipulated

10   judgment.  It doesn't concern the division by the parties of

11   their riparian rights.  The dam could have only been build upon

12   a finding that there were unappropriated flood waters.  That is

13   what it was built for and used for.  Let's not muddy this up

14   anymore than necessary.

15       MR. VEEDER:  I am not muddying it up.  I am giving your

16   Honor some history and background in regard to an interpretation

17   the Vail Company had adopted at that time in regard to the matter.

18   That is extremely important here, and I sincerely hope that the

19   course of conduct between the parties will be viewed by your

20   Honor and correct findings made as distinguished from the pro-

21   posed findings of Mr. Girard in this matter, because the history

22   of the relationship between Vail Company and the United States

23   is an all-encompassing, and all important element here, because

24   of the attack that has been directed against the stipulated

25   judgment.  And I can't leave these things unchallenged here.

P. 11

1    The basic and fundamental import of the stipulated judgment

2    is that there was an attempt to apportion all of the water.  But

3    if there was an attempt, it was abortive -- it could not have

4    come about.  The cases are clear on that, that if a judgment

5    goes beyond the res or subject matter which was before the

6    Court, then that phase of the judgment is inoperative and it is

7    binding on no one and it could affect no one.

8        So we come to the question of Bernhard vs. Bank of America,

9    and the question presented in that case demonstrates the mis-

10   conceptions that have been advanced to you in regard to res

11   adjudicata.  The only conceivable way that this matter could be

12   operative would be judgment by estoppel, and there might be an

13   estoppel if the facts warranted it.  But there is not.

14       The Bernhard case was very simple.  It was extremely simple.

15   There was an elderly lady who had about $4000.  She gave the

16   power of attorney to a man named Cook, as I remember.  Cook

17   withdrew the money from the bank and put it into his own name.

18   The matter/up before the Probate Court and the $4000.00 was
                 came

19   not reported by Cook to the Probate Court.  The question came

20   up in the probate proceeding, what about the $4000?  The Probate

21   Court said that that was a gift and so ruled.  One of the heirs

22   of this old lady, an administrator with the will annexed, brought

23   a suit against the Bank of America charging that the predecessor

24   in interest of the Bank of America had improperly Cook to with-

25   draw the money and not to account to the estate for the money.

P 12

1   The matter came on for trial and I believe it was on demurrer

2   the trial court ruled that the question could not be again tried

3   by reason of the fact that a court having jurisdiction had de-

4   clared that Cook was entitled to the $4000.

5       One of the elements that was raised in that trial was the

6   matter of mutuality.  In other words, one of the arguments by

7   the administratrix was that it would be impossible for the Bank

8   of America to invoke res adjudicata because res adjudicata was

9   not subject to being invoked against them.  The court came down

10  with the conclusion that in regard to this particular res or

11  subject matter mutuality was not important and that res adjudi-

12  cata could be invoked.  Why?  Because of the identical res,

13  the identical issue having been previously adjudicated.

14      THE COURT:  Let's see how this comes up.  The contention

15  will arise by somebody who has a big well -- Roripaugh might

16  be a good example over in the Santa Gertrudis, and his position

17  will be that Santa Margarita and the Vail Company were parties

18  to a judgment which said that that area where his well is, is

19  not part of the stream system.

20      MR. VEEDER:  Whose well?

21      THE COURT:  Roripaugh's.

22      MR. VEEDER:  Oh no.

23      MR. SACHSE:  Yes.

24      MR. VEEDER:  Go ahead.

25      THE COURT:  That is what he is going to say.  That the

P-13

findings and the judgment of 1930 defined the basin as the
Murrieta younger alluvium and not the older alluvium, where
the Roripaugh well is.  That is what he will contend.  And he
will say that the United States is in privity with Santa
Margarita; that you are the successor of Santa Margarita.  And
he will say the United States and Vail Company, therefore, were
parties, the United States by privity, were parties to an
adjudication which says that that land where that well is, is
not part of the stream system.  And then they will cite the
Bernhard case.  And the Bernahrd case says this at page 813
(19 California 2nd 807):

     "In determining the validity of a plea of res adjudicata,
three questions are pertinent:

Judge Trainor of the Supreme Court of California calls this
"res adjudicata."  It looks to me as if the terminology "estoppel
by judgment" would have been better.

     MR. SACHSE:  Yes.

     THE COURT:  But that is only a name.  Both principles, and
we are not concerned with what name you call it, if the thing
is operative.

     "(1)  Was the issue decided in the prior litigation identi-
cal to the one presented in the action in question?

     "(2)  Was there a final judgment on the merits?

     "(3)  Was the party against whom the plea is asserted a
party, or in privity with a party to the prior ajudication?"

P 14  1   The party against whom the plea is asserted is the United States.

Belt 14  2       And so you go down and answer the first one.  The issue

3   in the prior adjudication was the 1930 judgment, which is final--

4   was the extent of the stream system and the basins, and the

5   issue in this case which the Government of the United States

6   has raised is the issue of the stream system and basins.

7      (2)  Was there a final judgment on the merits between

8   Santa Margarita and Vail?  Yes; that part was not appealed from.

9      (3)  Was the party against whom the plea is asserted a

10   party or in privity with a party to the prior adjudication?

11   The answer is yes, you are the successor in interest to Santa

12   Margarita.

13      MR. VEEDER:  May I respond, your Honor?

14      THE COURT:  I want you to respond.

15      MR. VEEDER:  The important factor and the distinguishing

16   element, and the reason why I started with the argument yester-

17   day afternoon where I am today, is this.  If your Honor will

18   view Plaintiff's Exhibit 15 he will observe that the properties

19   of the Vail Company are delineated and defined by the exterior

20   boundaries of the grant.

21      MR. STAHLMAN:  As long as we are on this, would your Honor

22   mind if I read you the finding we are concerned with here?

23      MR. VEEDER:  I think you have read it.

24      THE COURT:  Let him proceed.

25      MR. VEEDER:  In any event, the important thing is that the

P 15

1   res or the subject matter of the case in Rancho Santa Margarita

2   vs. Vail, the issue, if you want to call it that, was, and could

3   only be, the rights of the two parties. Nothing more. The Vail

4   Company introduced in evidence proof that at the time of the

5   trial that Vail Company endeavored to bring into the case numerous

6   parties in the Murrieta, and all over the objection of --

7        THE COURT: You concede that the issue was the rights of

8   Santa Margarita and Vail to the waters of the Santa Margarita

9   stream system. That is the issue that was litigated. That is

10  what you conceded a few minutes ago when I asked you what your

11  view was on this judgment. That it was a binding adjudication

12  as between the United States and Santa Margarita by Vail and

13  Santa Margarita not as to water but as to the rights to water

14  in the stream system of the Santa Margarita.

15       MR. VEEDER: Well now, the point being is that all that

16  was involved and all that could be adjudicated were the respect-

17  ive rights of the parties.

18       MR. GIRARD: Do you look at them in a vacuum, Mr. Veeder?

19  Rights to what is what the judgment there pointed out.

20       MR. VEEDER: I don't mind this harassment. It's childish.

21       THE COURT: What are these rights?

22       MR. VEEDER: The rights are within the confines of the

23  Vail Company's lands and the --

24       THE COURT: Oh Mr. Veeder.

25       Let's take a recess.

P 16

1    (Recess)

2    MR. VEEDER:  The last statement that I made to your Honor

3  was that all that was or could have been involved were the rights

4  to the use of water of these two parties; that under no circum-

5  stances would it be possible to say that the rights of anyone

6  else could have been adjudicated.

7    THE COURT:  Where was the water to come from to which they

8  had rights?

9    MR. VEEDER:  I think it was the yield of the stream.

10    THE COURT:  Right, and the basins.

11    MR. VEEDER:  Yes.

12    THE COURT:  Then what is this statement you made, and have

13  made in the past, that only the Vail land was under consideration

14  and only the Vail land in Pauba Valley and not any land in the

15  Murrieta Valley?

16    MR. VEEDER:  I didn't say that, your Honor.  I said this.

17  I said follow the boundary of Vail Company land where it cuts

18  across Murrieta, from there northward, it couldn't conceivably

19  have adjudicated any of it.  The res or subject matter of the

20  case, therefore, is entirely distinct, separate and apart.

21    THE COURT:  This is where I just can't follow you.  You

22  concede that the thing being litigated was the water rights of

23  these two litigants.

24    MR. VEEDER:  That is right.

25    THE COURT:  And these water rights have to pertain to

P 17

1  something -- a lake, a basin, a stream.  So it was the water

2  rights they had on the Santa Margarita.  The Rancho Santa

3  Margarita was the last owner downstream.  The Vail Company was

4  upstream from the Pauba Valley and on the Murrieta Valley.  So

5  therefore the res that was being decided was not the corpus of

6  the water, not how much water was in this watershed, but it was

7  the water rights on the stream.

8      MR. VEEDER:  But it was not the stream system that was

9  adjudicated, and that is the point that I make.  The subject

10  matter, your Honor --

11      THE COURT:  How can you adjudicate water rights without

12  finding out what the stream system is or what the source of the

13  water is?

14      MR. VEEDER:  Your Honor, the complete to your Honor is

15  this, that all that was adjudicated in the litigation were the

16  rights that were part and parcel of the Vail Company's lands --

17  I am restricting myself to Vail Company, not the Rancho now --

18  and there was an adjudication that they had riparian rights in

19  the Santa Margarita River.  But there was not, and there could

20  not be, an adjudication as against the Wilkes up here.

21      THE COURT:  Now wait.  Don't confuse me any more than you

22  have already.  Let's stick to one thing.  The thing that was

23  being adjudicated were water rights between Vail and Santa

24  Margarita.

25      MR. VEEDER:  Right.

P 18

1    THE COURT:  These don't exist in a vacuum.  Vail Company

2  doesn't say, "I own 90,000 acres," and Santa Margarita doesn't

3  say, "I have 120,000 acres," and the Court then doesn't say,

4  "All right, we give each of you some right to water."  You have

5  got to find out where the water comes from, you have to find

6  the source of the water.  And so in the adjudication, although

7  only Vail and Santa Margarita were parties -- leave out the

8  intervenors for the time being -- before the Court could divide

9  the water rights it had to say, "Where does this water come

10  from?" and it had to find that there was a river called Santa

11  Margarita; that the Temecula was a branch of it and the Vail

12  Company owned land riparian to Temecula; that the Santa Margarita

13  owned land that was riparian further down on the Santa Margarita

14  River; and they had to consider, therefore, what basins there

15  were, and you can't divorce the Murrieta, which comes down and

16  flows across part of the Vail Company's land near the junction.

17  So the Court had to have before it, regardless of other parties,

18  what was the stream system, what were the basins that fed this

19  stream, or it couldn't have made any legal adjudication of water

20  rights.

21    Is that correct or not?

22    MR. VEEDER:  Only partially, your Honor.

23    THE COURT:  Where am I wrong?

24    MR. VEEDER:  For this reason.  The only adjudication, and

25  the only determination that could have been made, in regard to

P 120

1   ground water, would be the ground water within the Pauba grant.

2        MR. STAHLMAN:  Your Honor, I have been busting britches

3   here to read the very finding.

4        THE COURT:  Let's hear the finding you are talking about.

5        MR. STAHLMAN:  On page 55, line 20 of the findings as filed,

6   when the Court is defining the underground basins of Pauba --

7   first I'll read that in order to get the continuity:

8        "That the only underground plane lying beneath any portion

9   of the lands of the defendants, which underground water plane

10   is in contact with, or which is part of, or which contributes

11   to or supports, or to which there are contributions from the

12   surface flow of the said Temecula alluvial basin as herein found

13   and described .."

14   The Court had previously described the Temecula basin.

15        "...that in addition thereto and wholly separate and apart

16   therefrom, and in no manner communicating therewith, is another

17   and very much smaller water plane lying beneath the portions of

18   the lands of the defendants..."

19   And here is the important thing.

20        "... and parcels of land belonging to other persons not

21   parties of record herein, which lands are within and constitute

22   the fill of the eroded valley of the Murrieta Creek."

23        So the Court then made its findings on this stream system

24   by taking in the entire Murrieta Creek here, the younger alluvial

25   fill.

1        THE COURT:  Are you finished?

2        MR. STAHLMAN:  Yes, your Honor.

3        THE COURT:  All right, Mr. Veeder.

4        MR. VEEDER:  And George has again done me a favor.  He

5    has pointed out that the Rancho Santa Margarita vs Vail was

6    limited to the claims of the two parties.  Then he went ahead

7    and read that the finding went the full length of the valley.
                        that
8    Assuming that/is correct, the point that I made earlier and

9    the point that I made yesterday afternoon is that is if Mr.

10   Stahlman is correct in his statements it could not concievably

11   be res adjudicada or estoppel by judgment in regard  to rights

12   and interests and basins which were not the subject matter of

13   the case.  And there is the distinguishing element in the

14   Bernhart case.

15       THE COURT:  Now, Mr. Veeder, it is true that -- let's

16   take Roripaugh who was not a party to this suit --  that the

17   Government could not assert an estoppel against him because

18   he was not a party and there would be no common reason of

19   fairness, and law is based on fairness, to say, "Mr. Roripaugh,

20   you can't be heard to give us evidence of what you think the

21   basin is."  But as the Supreme Court pointed out, mutuality

22   was tossed out by the California Supreme Court's decision.

23   Roripaugh says to the Government, "You may not now claim a

24   different basin than you       claimed and was adjudicated

25   in the suit that was tried."  So it is true that your state-

1     ment, as often you make them, is partially correct.  **There**

2     is not estoppel against Roripaugh or any other person **whos**

3     was not a party to that suit.

4          The question is, can the Government blow hot and **cold**

5     -- the Government as a successor to Santa Margarita?  **Can**

6     Santa Margarita come in and secure a judgment that there **is**

7     a certain kind of basin that supports these water rights,

8     and then can the United States, its successor, come in **and**

9     say, "We are now taking a different position "?  They **had**

10    their day in Court.  You are considered to be in  privity.

11    The word "Privity" means that you are in the same boat as

12    Santa Margarita.

13         MR. VEEDER:  Right.

14         THE COURT:  Santa Margarita had their day in Court and

15    adjudication was made.  How are you entitled to come into

16    another Court now and, if somebody objects, say "We want

17    another day in the Court.  We want to prove there is a

18    different basin."?

19         MR. VEEDER:  Because of the very simple fact that the

20    subject matter in this case is different than the subject

21    matter in the case against Roripaugh.

22         THE COURT:  That goes to point 1 in the Bernhart case.

23    The first point was, was the issue decided?

24         MR. VEEDER:  I think it is Number 2 in the Bernhart

25    case.

THE COURT:  No, Number 2, is, was the judgment final?

The first point was, was the issue decided in the prior litigation identical to the one presented in the action in question?

MR. VEEDER:  And manifestly it is not identical.

THE COURT:  What is the issue?

MR. VEEDER:  The issue in the Rancho Santa Margarita case was the rights to the use of water of Vail Company.

THE COURT:  Of Vail Company?

Read the answer, Mr. Reporter.  See if it makes sense to him.  It doesn't to me.

(Whereupon, the Reporter read Mr. Veeder's last
statement.)

MR. VEEDER:  And Rancho Santa Margarita, and that is all.

THE COURT:  You say "Of" or "By"?  What do you mean? You mean rights to the use of water by Vail Company?  You said "Of Vail Company".

MR. VEEDER:  All right, title to which resided in Vail Company, then, if that is better.  But the fact remains that there could not have been adjudicated the rights of any other party.

I think the error that is involved here is that I think your Honor is viewing this matter as an adjudication of rights throughout the whole stream system.  It couldn't be.  It

1    couldn't concievably be.

2         THE COURT:  Insofar as the United States rights are

3    concerned I am viewing it that way, because the United States

4    claims certain water rights and it gets them from Santa

5    Margarita.

6         MR. VEEDER:  That is right.

7         THE COURT:  Santa Margarita's water rights were rights

8    that were based upon the entire stream system -- had to be.

9         MR. VEEDER:  Your Honor, the point that I make is that

10   here is the Rancho Santa Margarita.  It claims rights in the

11   stream system.  Against whom did it claim the right?  It

12   claimed the rights against the Vail Company, and the findings

13   are strictly related to these rights in the Santa Margarita

14   as they relate to Vail Company's rights and no one elses.

15        THE COURT:  But as part of establishing it's rights

16   against the Vail Company the Santa Margarita offered in

17   evidence and the Court accepted it and the judgment became

18   final that these rights existed because there was a stream

19   system and a basin, a very small basin, in the Pauba and the

20   Murrieta.  This is what led to the rights that were adjudicated.

21        Now, can the United States come in later and say, "We

22   claim rights now against other people, but we can't claim them

23   on the same basis.  We had, it is true, a three year trial

24   here in the Superior Court and the Court said we had rights

25   and they told us what the stream system was.  Now we claim

1    rights against other people, but we are basing them on a

2    different ground"?

3         MR. VEEDER:  And that is precisely the situation.  We

4    had an adjudication in regard to what?  In regard to the rights

5    of two parties.  And those rights of two parties related to

6    what?  To a stream system.  But certainly the claim of Rancho

7    Santa Margarita as adjudicated against the Vail Company did

8    not, and could not, affect the res or subject matter of a law

9    suit against the Wilks.  Now that is the difference.

10        THE COURT:  Mr. Veeder, the theory of this rule is this.

11   Suppose that at the time the Santa Margarita case was tried

12   you had also had as a defendant Mr. Roripaugh, whom you have

13   been using as an example.  The law assumes that you would have

14   asserted, as to your rights against Roripaugh and Vail, the

15   same stream system against Roripaugh that you asserted against

16   Vail.

17        MR. VEEDER:  I don't assert a stream system in this

18   law suit at all, your Honor.

19        THE COURT:  You have to.

20        MR. VEEDER:  No.

21        MR. STAHLMAN:  What is the geological evidence for?

22        MR. VEEDER:  The thing that is adjudicated, your Honor --

23   and that is why I started off in this conversation about the

24   misconception of the State of California's talk about water --

25   it is not waters that are involved here.  It is rights to water.

1   And surely it is an entirely different law suit that the

2   United States of America brings against the Wilks, brings

3   against people in Domenigoni Valley.  It is a different law

4   suit, your Honor.  And here is the difference in the Bernhart

5   case.  The issues have to be identical to invoke that rule,

6   and the issues are clearly not identical here.  The claim of

7   the United States against Vail Company in this litigation is

8   what?  It is the stipulated judgment.  Now you don't litigate

9   a stream system.  You litigate rights to the use of water.

10      THE COURT:  On what?

11      MR. STAHLMAN:  What water?

12      THE COURT:  On the stream system.

13      MR. VEEDER:  On the stream system.  But you can't get

14   an adjudication -- and here I see where the difficulty is

15   stemming from -- you can't say that a finding could be

16   operative against these people up here, who were not parties.

17      THE COURT:  Nobody claims that it would be operative

18   against them.  The point is that they claim that you can't take

19   inconsistent positions.

20      MR. VEEDER:  Well, I certainly can where the subject

21   matter is different.  I certainly can.

22      And here is the point -- and I will conclude my argument

23   because the time is getting short -- here is the point that I

24   would like to tender to your Honor.  The issues are not

25   identical.  They couldn't be.  Therefore, Bernhart is not

1  applicable.  If there was an attempt to adjudicate rights which

2  were beyond the scope of that proceeding, the decree, while

3  binding as to Vail Company, is a nullity as to others.

4  But I petition your Honor to hear this.  If he sets

5  aside the stipulated judgment, do it under Rule 54(b) to the

6  end that we may appeal this matter.  It is essential that that

7  be done in the name of justice, your Honor, and in the name

8  of saving of time.  We will prosecute the appeal against your

9  ruling on the stipulated judgment while the balance of the

10  case is going forward, and then if your Honor is reversed or

11  sustained we will of course be bound to buy it.

12  But the point that I make is that we certainly cannot

13  recede from our position here.  I disagree completely with

14  the attempts to apply the Bernhart theory to this case,

15  because the subject matter and the race are not identical.  I

16  have reviewed this law.  I have checked it through thoroughly.

17  The closest case that I have found, your Honor, is a relatively

18  recent one, and I have just picked up my notes on it.  It is

19  154 California Appeals 2nd 487 (316 Pacific 2nd 713).

20  THE COURT:  What is the name of it?

21  MR. VEEDER:  I will have to get that name for you , your

22  Honor.  I just ran on to it.  It is a case that I think your

23  Honor will be interested in, because it comes the closest to

24  any I have found.  I am briefing this matter and I will submit

25  some authorities on it, if you desire me to do so.

1   There they had a question strikingly similar to this.

2 I think it was the Monolith Cement Company that undertook to

3 adjudicate the rights that were involved, and the question

4 arose there as to the extent of the basin.  And the Court

5 said that the findings of fact, conclusions of law and judg-

6 ment should not be considered res adjudicada in another action

7 or actions involving other wells in the Cash Creek or Monroe

8 Meadows area, particularly where other defenses are available

9 to the district.  In other words, the Court applied the rule

10 there that I think must apply here, that whatever the findings

11 may have been between the parties, Vail Company and the Rancho,

12 they could not be binding on other people.

13   THE COURT:  Mr. Veeder, nobody is contending that they

14 are binding on other people.

15   MR. VEEDER:  I understand.

16   THE COURT:  The question is, are they binding on the

17 United States if the other people claim the benefit of that

18 prior judgment?

19   MR. VEEDER:  And I have explained to your Honor that

20 they could not be, because the res and the subject matter are

21 different.

22   I will conclude on that, your Honor.

23   THE COURT:  One question.  You have not discussed, and

24 I merely ask you, do you agree with the law cited by the

25 State of California that if a judgment apportions water between

1    riparians that that judgment is later subject to change by

2    changed conditions?

3        MR. VEEDER:  I thought I had touched on that, but I

4    will touch on it again.

5        As regards to riparians, a decree can be modified if

6    there is a change of conditions.   Indeed, that is not infrequent.

7    Why California's cases are not applicable here, those auth-

8    orities do not apply to the appropriative rights of the United

9    States, and surely those authorities could not, and do not,

10   apply to the right of the United States to use the water out-

11   side the watershed pursuant to the stipulated judgment.   So

12   in regard to riparian rights the question is academic here.

13   It has no application to us because our rights are greatly

14   different against the Vail Company under the stipulated

15   judgment, but are not riparian rights as such.   They are

16   controlled by this contractual arrangement.

17       I have nothing more, your Honor.

18       THE COURT:  Mr. Lincoln, you wanted five minutes.

19       MR. LINCOLN:  Yes, your Honor.

20       Our contention is, first, that this stipulated judgment

21   cannot be set aside by any Court for any reason whatsoever,

22   insofar as I have discovered as I have read the authorities,

23   unless possibly they can show fraud in the original manipulation

24   of that stipulated judgment.   You will find a good many

25   authorities set out in my brief on that same subject, and they

1   all rely upon the Constitution of the United States, which

2   grants full faith and credit to every judgment of every Court.

3        Your Honor has suggested perhaps that in the stipulated

4   judgment or the one before it Judge Jennings and Judge Johnson

5   did consider all the waters in the Temecula, the Little

6   Temecula, the Pauba and the Murrieta and every other piece of

7   property which the Vail Company owned at the headwaters of the

8   streams.  You will find, however, that in the transcript on

9   appeal (Volume I) Judge Jennings goes very carefully into a

10  discussion and a description of those different ranches and

11  the quantities of water which apparently flowed from those

12  ranches.  He also says, very carefully too, that he does not

13  at this time consider and thinks it is not necessary for him

14  to consider whatever riparian rights any other parties may

15  have, except those which are directly on the stream between

16  Gaging Station Number 3 and the ocean.

17       "The rights to the use of water of said Temecula-Santa

18  Margarita River and Murrieta Creek and the tributaries of each

19  is not confined to the parties of this action, but many other

20  persons, many of whom are named as defendants answered to

21  amendments to the amended complaint, have, or claimed to have

22  and are either exercising or claiming the right to exercise

23  riparian rights in the waters of said streams or their trib-

24  utaries.  But all of said parties are not and no one of said

25  parties is necessary to the proper adjudication of the rights

1    of the parties of record herein, and as against the interveners

2    and the defendants it is not impossible to fix the proportions

3    of water of the Santa Margarita to which the plaintiff is

4    entitled without bringing in other riparian owners."

5        It seems to me that that settled that particular question.

6        We are not concerned, as I view it, with any waters

7    whatsoever or any riparian rights whatsoever on the headwaters

8    of the streams excepting the quantity of water which passes

9    Gaging Station Number 3.  Whatever riparian owners there may

10   be on the Temecula River or the Murrieta River or upon some

11   of their tributaries, those, as I view it, will eventually

12   all drain through the Temecula-Santa Margarita chasm or canyon,

13   and they must all pass at first through the Gaging Station,

14   and that is all that the stipulated judgment expected or planned

15   for or decided.  And all these other matters, it seems to me,

16   are extremely extraneous and have no bearing on that particular

17   situation at all.

18       I respectfully submit that the stipulated judgment is

19   an honorable judgment which has been in existence for some-

20   thing over 18 years before any question was raised against it,

21   and I can't see for the life of me any reason why it should

22   be set aside and I see many reasons, as I have shown in my

23   brief, why it should remain in full force and effect.

24       THE COURT:  Thank you, Mr. Lincoln.

25       Who wants to be heard next?

1    MR. GIRARD:   I will make a brief comment, your Honor.

2        I think, as pointed out yesterday, that the question of

3    res adjudicada does not arise until your Honor decides whether

4    or not the judgments are going to be enjoined.

5        I think the basic question which has to be considered,

6    and which was not touched on too much in any of the arguments,

7    is whether there is evidence in the record to support the

8    findings of fact set forth in the judgment I submitted at the

9    Court's direction.   I do not contend that there may not be

10   conflicting evidence, but I think there is evidence for each

11   one of the findings.

12       The only finding that Mr. Veeder had occasion to

13   question specifically as to evidence was Finding Number 17,

14   which concerned the problem of the Vail Dam, and he concerned

15   himself with that part which stated that the United States

16   withdrew its protest but still submitted evidence in regard

17   to the Vail application.

18       At the onset I don't think that is a particularly

19   crucial thing one way or the other.   The construction of Vail

20   Dam, as I see it, cannot have anything to do with setting

21   aside the stipulated judgment for the simple reason that

22   assuming, as Mr. Veeder says, without any evidence of that,

23   but assuming as Mr. Veeder says, that the United States

24   withdrew its protest upon assurances by Vail that they would

25   rely upon the stipulated judgment -- assume that.   Regardless

1    whether that is true or not, how has the United States been

2    hurt by the construction of Vail Dam?  Any right that the

3    United States has to the use of water is still just as perfectly

4    valid.   They have their riparian rights, their prescriptive

5    rights that they claim, and any right that they have certainly

6    has vested long before Vail's application finally was granted.

7         Your Honor asked Mr. Veeder whether or not he would

8    consider this as a contract, and Mr. Veeder indicated that

9    he would.   I believe at the last hearing we cited the

10   California cases and a Federal case, a decision by Justice

11   Frankfurter, I believe it was, who had stated that a stipulated

12   judgment is of the same force and effect as a regular judgment

13   entered pursuant to the merits.   I haven't seen any authorities

14   to the contrary.

15        MR. VEEDER:  There is no disagreement on this.

16        MR. GIRARD:  Let us assume that it is a contract.  What

17   is Mr. Veeder's remedy if Vail breaches it?  Suppose Vail just

18   says, "I am going to ignore the stipulated judgment completely,"

19   and just abolishs it.  I think the only remedy they would have,

20   if they had that, would be an action in damages.  They certainly

21   couldn't get an injunction, because they would have to show

22   that they had been harmed.  I think they would have an awful

23   hard time on that judgment convincing any Judge that they

24   should get an injunction.  I think they would be limited pretty

25   much to damages, and then they would have to show that they had

1   been affected adversely.  I don't think they can show it.

2   They are using water now to satisfy their needs.

3       Mr. Veeder also stated that this stipulation which was

4   entered into on October 24, 1951, which was later set aside

5   pursuant to the stipulation -- I believe it was a stipulation

6   that Mr. Vail and Mr. Veeder entered into, or Mr. Stahlman

7   and Mr. Veeder.  That was entered on October 24, 1951.  The

8   amended complaint was filed after that stipulation, and in

9   the amended complaint the United States pleaded riparian,

10  prescriptive and appropriative rights, and even paramount

11  rights as against all defendants, including Vail.  They did

12  not exclude Vail from those allegations.  They specifically

13  said "All defendants."  Now, if they are going to plead their

14  amended complaint, which was filed subsequent to the stip-

15  ulation, rights against Vail which are beyond the stipulated

16  judgment, I think Vail can treat it, even if it is a contract,

17  as being abrogated by the action of the United States.

18      THE COURT:  Do you have a reference?  I was trying to

19  find the amended complaint.

20      MR. GIRARD: Mr. Sachse has it here.  I don't know

21  whether he can give you the paragraphs right off or not.  If

22  he can, I would like to have him interrupt me and read them.

23      MR. SACHSE:  Count 22, your Honor, of the amendment to

24  the complaint, paragraph 3, found on page 35, specifically

25  pleads actual, fixed acre foot amounts, prescriptive,

1    appropriative and other rights, against Vail.

2        Count 23 pleads in specific acreages as against all the

3    defendants.

4        And paragraph 2 of the prayer of the complaint asserts

5    the prior and paramount claim.

6        I think those are the three that are pertinent.

7        MR. VEEDER:  Also point out that there are 2 paragraphs,

8    paragraphs 5 and 6, that plead specifically the Vail Company's

9    stipulated judgment with the United States.

10       MR. GIRARD:  Mr. Veeder is correct.  The amended

11   complaint does plead rights under the stipulated judgment.

12   But nowhere in the complaint could you infer -- in fact, you

13   would have to infer the opposite, that they also plead other

14   rights against Vail which are not set forth in the stipulated

15   judgment.  Certainly a prayer for an appropriative right in

16   specific acre feet would be beyond the scope of the stipulated

17   judgment, because the stipulated judgment would be based on

18   the flow of the stream, which wouldn't be determined.

19       Just to clarify the record as to this paragraph 17

20   that Mr. Veeder quoted from Exhibit 161, which is the trans-

21   cript of the hearing, I just leafed through it and what

22   actually happened is this.  United States along with Fallbrook,

23   in considering Fallbrook's application, introduced testimony

24   through, I believe it was, a Commander Fogg -- I am not sure

25   of his rank -- I believe a Commander Fogg and another Marine

1   Colonel, who testified in regard to Fallbrook's application.

2   And then when it came up for Vail's application they just

3   incorporated and said they would consider all the testimony

4   which was offered in the Fallbrook application in the Vail

5   application as well, and they included both the testimony

6   produced by the United States and the testimony produced by

7   Mr. Yackey for Fallbrook.   Thereafter, after the hearing date,

8   the United States on January 6, 1948 sent a letter to the

9   State Water Rights Board's predecessor, which is AK-11, which

10  referred to both applications, not only Fallbrook's application

11  but also Vail's application by number, and set forth certain

12  factual information for consideration by the Board.   Thereafter,

13  on January 14th, the State Water Rights Board's predecessor,

14  in Exhibit AK-14, acknowledged the United States' letter of

15  January 6, 1948 and said it would consider the matters stated

16  in there in regard to both applications.

17      So I think there is enough evidence in this record to

18  support the finding  that evidence was considered by the

19  State Water Rights Board in regard to Vail's application which

20  was submitted by the United States subsequent to the withdrawal

21  of their protest.

22      Unless the Court has specific questions, I am willing

23  to sit down.   I think our points and authorities have been

24  clear.

25      THE COURT:  You don't say one way or the other, but I

Belt 16

1    take it that you are of much the same view that I am, that

2    the stipulated judgment was grafted onto the old judgment and

3    that they became an integral part one of the other.

4        MR. GIRARD:  I don't see how you can consider them

5    differently.  If you don't graft on the provisions of the

6    judgment in the stipulated judgment, you have a document

7    which says the United States and Vail are entitled to the

8    right to the use of water which isn't defined.

9        THE COURT:  So that if you want any findings as to the

10   basin or stream system or where  this water comes from, you

11   have to go back.

12       MR. GIRARD:  You have to.  Under California law, if you

13   have rights to ground water it has to be in a known and

14   defined channel, and the presumption that it is not, and I

15   think if you are going to allocate any ground water or grant

16   any right to ground water you would have to specify the ground

17   water you are talking about.

18       THE COURT:  Now you proposed a finding that the old

19   judgment was void.

20       MR. GIRARD:  This is, incidently, a point that I just

21   thought up as I was working on this in my office.  But if you

22   will go through the old judgment, particularly paragraphs 3,

23   4, 5, 7 -- I don't recite them all, but just reading, for

24   example, from paragraph 3, they say that Vail Company is

25   entitled to the entire flow of Murrieta Creek and its

tributaries, etc.  Well, that is what the judgment says. Now

Mr. Veeder has countered that by saying, "Well, the Court

couldn't have said that."  He says, "All the Court had the

jurisdiction to consider was the rights of the parties for

them."  And I would agree that that is all they had jurisdiction

to do, to consider the rights of the parties who appeared

before them.  But you have to look at what the Court did, not

what they had jurisdiction to do, and you will specifically

see that in the judgment and in the stipulated judgment, read-

ing those documents as they read, they say that one party has

rights to all of one stream.  In the stipulated judgment

Vail has rights to one-third of all the waters of the Santa

Margarita, and the United States has a right to two-thirds of

all the waters of the Santa Margarita.  In the judgment they

say that Vail is entitled to all of the waters of Murrieta

Creek.

Now that is what they say, and reading that literally

-- and there is no other way to read it -- it is obviously

beyond the jurisdiction of the Court to enter.  Neither Vail

nor the United States could acquire rights to the entire flow

of that water.  There were substantial numbers of people who

were notdefendants in that action, thousands of them, who have

vested rights to that water, and when these Courts enter

judgments saying that two parties had rights to all of that

water, to the extent that other parties had rights to that

1    same water that judgment is void.

2         Then you have to look under California law -- I didn't

3    cite any cases, but I don't think there is any question on it

4    -- you have to look as to whether or not those void parts of

5    the judgment, those parts of the judgment which are beyond

6    the jurisdiction of the Court to enter, can be severed from

7    the remaining judgment and give meaningful life to the remain-

8    ing document, and that is a question of fact and not so much

9    a question of law.

10        It is just whether your Honor, looking at these documents,

11   striking out those specific words in the judgment which were

12   beyond the jurisdiction of the Court to make because they are

13   void, looking at that, in the absence of that language, can

14   the breath of life be breathed into the remaining document?

15   And in my view -- your Honor may disagree with me -- but I

16   think it is purely a question of fact on that issue which your

17   Honor will have to decide.

18        It is a question of law as to whether or not those

19   provisions in the judgment which specifically state that either

20   Vail or the United States are entitled to more than they

21   legally can get are void.  I think they are.

22        THE COURT:  Void as to third parties?

23        MR. GIRARD:  Yes, your Honor.  Well, they are beyond

24   the jurisdiction of the Court to make.  I think they are void

25   as to Vail and the United States as well.

1   THE COURT:   You said in one of your earlier briefs that

2   in certain circumstances a California judgment which is res

3   adjudicata can be set aside entirely.  Do you believe there

4   is sound legal basis for doing so here?  The Court would

5   request that you submit a memorandum on this point.  You haven't

6   backed this up with any authorities.

7       MR. GIRARD:  I haven't been requested to, your Honor.

8       THE COURT:  You are submitting some finding here.  Will

9   you undertake that?

10      MR. GIRARD:  I will do that, yes.

11      The United States is basically concerned with the

12  stipulated judgment.  That is where their big problem is --

13  their right to use water outside the watershed.  I don't think

14  it is affected one way or the other.  They have a right to

15  use the water outside the watershed when it gets to them.

16      But I would assume that if your Honor were going to rule

17  that the provisions of the stipulated judgment should be

18  enjoined, the United States would also stipulate that the

19  provisions of the judgment be enjoined.  I can't conceive why

20  they wouldn't.  It would be entirely to their advantage.

21      THE COURT:  I would think so, too.  But Mr. Veeder has

22  indicated that he doesn't consider that at all.  In other

23  words, if we look at the stipulated judgment as being subject

24  to being enjoined or modified because of changed conditions,

25  then that leaves us with a final judgment.

1    MR. GIRARD:  And a different problem.

2    THE COURT:  I would think the United States would then

3    say, "If you are going to not give effect to the stipulated

4    part of the judgment, by all means relieve us of the rest of

5    it."

6    MR. GIRARD:  I can't conceive why they wouldn't.  The

7    only thing they have under that old judgment are detriments.

8    MR. VEEDER:  I am thinking of appeal.

9    THE COURT:  You still have your contention that I was

10   in error on the stipulated part of it.  But it would seem to

11   me that if I do something with the stipulated judgment, you

12   ought to, in the interest of the United States, try to get

13   rid of your old judgment.

14   MR. VEEDER:  There is only one commitment I make, and

15   only one prayer I now tender: use Rule 54(b) if you rule

16   against us.

17   THE COURT:  You haven't specifically answered Mr.

18   Girard's and my question.

19   MR. VEEDER:  What is that, your Honor?

20   THE COURT:  If I decide that either the stipulated

21   judgment has to be modified or its operation enjoined, are

22   you willing then to go along, reserving whatever rights you

23   have on appeal as to my ruling on the stipulated judgment,

24   are you willing to go along and agree that the balance of that

25   judgment go out the window?

1  MR. VEEDER:  I am not.  I have never responded  to that

2  point, and I am going to have to say sufficient to the day is

3  the evil thereof.  I am not sure what the impact would be of

4  your knocking out the stipulated judgment and then saying

5  that the old judgment would be in force and effect.  I don't

6  know what that would mean.  Nor have I talked to Mr. Rankin

7  about it, because it has not jelled, your Honor.

8  I have two pages of objections to Mr. Girard's findings

9  -- I didn't go into all of them, but I will file those

10 objections specifically because they are gravely in error.

11 THE COURT:  Will you please file them and let me have a

12 copy.

13 MR. VEEDER:  Yes.  What I will do is make a complete

14 memorandum on it.

15 MR. GIRARD:  I might point out that these tendered

16 findings of fact are going to have to be revised slightly, and

17 I will do that.  I referred there to a license that Vail Dam

18 was granted by the State Board, whereas actually there was

19 just an extension for the license.  They haven't got a license

20 yet.

21 THE COURT:  Mr. Sachse.

22 MR. SACHSE:  I will be extremely brief, your Honor.

23 I concur with Mr. Girard.  I believe that the stipulated

24 judgment and judgment should be set aside.  I believe they

25 should be set aside, principally and fundamentally, for changed

A 21

1    conditions.

2        I am not going to add anything more to that beyond say-

3    ing this to your Honor, that since I am the man who opened

4    Pandora's Box on this question of estoppel by judgment, I will

5    say now, too, that I think it should and will come up, and I

6    hope that we can close our eyes to it at this stage of the

7    game.  If your Honor leaves the old judgment in effect, I will

8    make a speaking motion to your Honor, set it for a date and

9    submit a memorandum so that Mr. Veeder can rebut  them, asking
                                                        of
10   leave to file an amendment to the answer/Searl Brothers up

11   in Diamond Valley and Domenigoni Valley raising the issue of

12   estoppel by judgment.  At that time if your Honor leaves the

13   old judgment in effect, then Mr. Veeder and I can argue the

14   effect of the Bernhart case.  I think it is cluttering up the

15   facts at this time.  And if there is no old judgment remaining

16   in effect, obviously I will not do it.

17       MR. VEEDER:  May I inquire on that.  You have referred

18   only to the survival of the old judgment.  Are you saying that

19   if the stipulated judgment is sustained you will take the same

20   course?  I didn't follow what you said.

21       MR. SACHSE:  I think it is impossible to set aside or

22   to retain the stipulated judgment without the old one.  I

23   think the two are an integral document.

24       MR. VEEDER:  I was asking for guidance on it.  You say

25   if the stipulated judgment is sustained you will amend; is that

1  right?

2      MR. SACHSE:  Yes, because I assume that the upsetting of

3  the stipulated judgment leaves the old judgment in effect.

4      MR. VEEDER:  I just wanted to be sure.

5      MR. STAHLMAN:  Your Honor, I don't want to be repetitious.

6  We have argued this matter on previous occasions.  We have

7  submitted briefs.  I have heard Mr. Veeder's arguments that

8  he made this morning and, for the most part, made to the Court

9  here on previous occasions, and I would like to be subject to

10  the same directions as to what your Honor wants to hear about

11  and I'll be glad to talk upon the subject. I think we have

12  gone into this matter.

13      One thing I didn't go into fully on the last occasion

14  when we terminated -- it was late when we were arguing the

15  question -- was the great conflict that would occur by reason

16  of the difference of the storage units as contended by the

17  Government in this trial and those on the old case as they

18  would conflict with the interests of Vail and other people in

19  the Valley.  I think you would have a multiplicity of actions

20  here in relation to the future operation of Vail Company and

21  other persons in that Valley if you had the stipulated judgment

22  in effect, and how it could operate with the Court having

23  defined one stream system under which the stipulated judgment

24  was born and then come in here and expect the same child to

25  be reborn from a different mother -- I don't see how it can

1  possibly operate and work.

2  I will go to the question your Honor raised in regard

3  to the original judgment.  I believe there is in the file here

4  on the part of Dr. Henderson an affirmative defense in which

5  he requested that the old judgment, the original judgment,

6  be set aside also.  I think that the situation in relation to

7  the changed conditions is just as effective as to the old

8  judgment as it is as to the new judgment.

9  Mr. Girard argued the old judgment as giving Vail the

10  entire Murrieta stream system or the waters therefrom, and I

11  think, as he says, that that is a factual question, and it has

12  its importance in releation to considering what was the intent

13  of the parties in entering into the stipulated judgment.

14  Certainly the things that had gone one before and the relation-

15  ships and those matters that were contained in the old judgment

16  not appealed from would be matters which the parties had in

17  mind at that time, and certainly it would be logical to conclude

18  or the inference be drawn from those circumstances that Vail

19  Company in entering into this stipulated judgment did believe

20  that those provisions of the old judgment that were not con-

21  troverted by the stipulated judgment would be in effect.

22  Now, unless there is some particular situation that

23  your Honor feels that you need argument on, I am not going to

24  belabor the Court here.  I'm kind of full of the subject and

25  I could spend as much time as the good old Bible preacher in

1   Georgia on this question if I got started on it.  I know your

2   Honor has heard the arguments before.  It would be merely an

3   embellishment and an extension of the principals we have already

4   discussed.  If there is some particular thing I'll be happy to

5   respond, if your Honor has questions on it.

6       I have read this morning what I think was clearly  an

7   indication of the fact that the Court, when making the findings

8   in the first case, was quite conscious of what he was doing in

9   relation to the determination of what the stream system was

10  at that time; that it was a determination not only of what the

11  waters were, the rights to water on the Vail land and Camp

12  Pendleton or the predecessors in interest, but where did those

13  waters come from?

14      As I have said repeatedly, after Mr. Veeder argued here

15  when he was talking about the difference between usufructuary

16  rights and the right of the owners of the water itself, what

17  is the right to water -- this fluid substance thatruns down-

18  hill and spreads out?  The ownership of the water is not the

19  thing that is in question here.  The first paragraph of the

20  stipulated judgment, speaking of what they were dividing,

21  referring now to page 2 when they named all the parties and

22  they stated what they were going to divide between them, "Have

23  and each has rights in and to the waters of the Temecula-Santa

24  Margarita River and its tributaries, and in and to the use of

25  said waters for all beneficial and useful purposes on their

respective lands herein more specifically described."  In

other words, it gave them the right to exercise dominion and

control over those waters.

THE COURT:  All right.

MR. SACHSE:  I overlooked one thing, your Honor.

THE COURT:  Are you through Mr. Stahlman?

MR. STAHLMAN:  Yes, unless your Honor has some inquiry.

MR. SACHSE:  I want to make it very clear that I will

vigorously object, in behalf of Fallbrook and every client I

represent, and I request your Honor the privilege of being

heard before a decision is made on the question of appeal under

Rule 54 by Mr. Veeder of this issue.  I think it would be a

gross injustice to all the other defendants involved when we

are as close as we are to shutting the door in this litigation

to let them go off on a tangent on this one issue without any

conceivable benefit to the United States.  It is not essential

to a decision of this case.  I think we should finish this

case now and if he wants to appeal that issue he can appeal

that issue along with the other.

MR. GIRARD:  I want to concur in that.

THE COURT:  Mr. Swing, the Court is pleased to see you

here today.  Do you have something to add on this problem?

MR. SWING:  Not without conferring with my associate,

your Honor.  I think enough has been said to confuse the mind

of the Court sufficiently without my trying to stir up more

1    dust.

2        THE COURT:  Now, do I understand, Mr. Veeder, that you

3    are willing to submit for decision this issue of the Vail

4    judgment, the old judgment, etc.?

5        MR. VEEDER:  Yes, your Honor, I am.  If your Honor

6    decides before I get my memorandum in, it is all right with me.

7    I didn't receive until I got to San Diego these briefs, nor

8    did I receive the findings of fact and conclusions of law; so

9    I haven't had time to write a complete response to them.  How-

10   ever, I certainly don't want you to delay.

11       THE COURT:  Does California submit?

12       MR. GIRARD:  Yes.

13       THE COURT:  Does Fallbrook submit?

14       MR. SACHSE:  Yes.

15       THE COURT:  Vail Company?

16       MR. GIRARD:  I presume you still want that brief, in

17   submitting it?

18       THE COURT:  Yes, I still want the brief.

19       The matter will be submitted subject to receipt of Mr.

20   Girard's brief.

21       How much time do you want on it?  A week?  Two weeks?

22   Three weeks?

23       MR. VEEDER:  As I said, I don't want you to delay in

24   making a ruling on it.  I am going to be tied up in other

25   litigation for a long while.

1        THE COURT:  Let me submit it now.  The briefs can come

2   in.

3        MR. VEEDER:  Yes.

4        THE COURT:  Because I have practically made up my mind

5   on this thing.  It is largely a matter of whether I can put

6   this down in black and white either in an opinion or in find-

7   ings of fact in such a way that I am satisfied I am right

8   about it.

9        MR. VEEDER:  I would like to tender to you some additional

10  facts and authorities, but I certainly don't want you to

11  delay.

12       THE COURT:  This issue will be submitted, but the briefs

13  can come in and I will be glad to look at them -- in fact, I

14  want them.  Is that satisfactory?

15       MR. VEEDER:  Yes.

16       THE COURT:  I think the answer is this, tentatively --

17  and again it is subject to how the thing will write -- I

18  think that when there was an appeal from parts of the judgment

19  of 1930 the balance of that judgment remained in effect, and

20  when the parties came in with a stipulated judgment to the

21  Court to obviate the necessity of a retrial that that stip-

22  ulated judgment must be considered as being grafted onto the

23  other proceedings and that the old judgment that remained

24  unappealed from and the stipulated judgment must be considered

25  together; that the stipulated judgment in no sense can super-

1   cede and wipe out entirely the remaining part of the old

2   judgment.

3   I think, secondly, that the stipulated judgment, in

4   the sense that it attempted to apportion riparian water, is

5   subject to change and modification at any time on changed

6   conditions, and there is ample reason to modify the judgment

7   or to restrain its present operation.

8   If you say you are going to restrain the operation of

9   the judgment, which would mean the stipulated judgment grafted

10   onto the remaining part of the old judgment, you may restrain

11   its operation but you leave in effect certain parts of that

12   old judgment to haunt us on the question of these basins.  On

13   the other hand, if you don't restrain the operation of the

14   judgment but modify the judgment you provide for a different

15   riparian use of water, you still have the problem of the old

16   parts of the judgment still remaining in  fact  haunting us

17   and plaguing us as to their findings on the extent of the

18   basins and the stream system.  Therefore, if there is some

19   way to say that the old judgment is void and that any attempted

20   stipulated judgment be grafted onto to it, therefore it was

21   not grafted onto anything of validity, that it becomes almost

22   a nullity if the older part of the judgment unappealed from

23   is void, that might solve our dilemma.

24   Another way to solve the dilemma, of course, is if the

25   Court finds that the stipulated judgment, viewed as part of the

1    whole, has to be restrained in its operation or has to be
2    modified, then the Government might be content to agree that
3    the finding of the old judgment on the basin be set aside.
4         Unless we do something like this, this old judgment
5    unappealed from will haunt us all through these proceedings.
6         And there are situations where it may well be that Mr.
7    Sachse, Mr. Girard are right.  That although this old judgment
8    would not bind Roripaugh and the other people in the Domenigoni
9    Valley, the question is, can they come in and insist that the
10   United States is bound by it?  And if Mr. Girard and Mr. Sachse
11   are right in their views on that point, then you would have a
12   situation where, we will say, Roripaugh and the other people
13   in the Domenigoni Valley could say that as far as the United
14   States is concerned there are two little basins, one in the
15   Pauba and one in the Murrieta, and therefore as far as the
16   United States is concerned any obligation we have to let water
17   go downstream, particularly Roripaugh, who is pumping out of
18   a portion of the ground which is found not to be a basin, not
19   to be a part of the stream system, then you have a situation
20   where, as far as the United States is concerned, nothing can
21   be done.  Now, of course, other owners would have rights
22   against Roripaugh who wouldn't have to be affected by this
23   judgment.  So you have that situation.
24        I think there was a mistake of fact by all parties in
25   the old judgment.  They all agree that there was a mistake of

1  fact.  They all felt that there were these various small

2  basins.  We are almost unanimously of the opinion now that

3  the basins are many times bigger.

4       MR. VEEDER:  Vail Company always thought that.  I beg

5  your pardon for interrupting.  But that was the situation.

6  Vail Company tried the case in the proceedings, as nearly as

7  I can tell, on strictly the same basis.  Originally we tried

8  this case on Vail Company's Pemberton Report.

9       THE COURT:  The Pemberton Report was not available

10 in 1930.

11      MR. VEEDER:  Let me say -- I'm always worried about

12 these things -- the case was tried on the basis of the large

13 basin.

14      MR. STAHLMAN:  No, it was not.

15      MR. VEEDER:  Vail Company tried it on that basis.  Rancho

16 Santa Margarita took a different view.  Vail Company's position

17 in the 1930 trial was exactly the same as our position here.

18      MR. STAHLMAN:  That is not correct.

19      THE COURT:  The Pemberton Report --

20      MR. VEEDER:  It has nothing to do with it.

21      THE COURT:  It was non-existent.

22      MR. VEEDER:  It came 20 years later.  It just verified

23 what they originally said at this trial.

24      MR. STAHLMAN:  Insofar as I have been able to go into

25 the record, there was a dispute in geology, as there is in all

1    these cases, as to what is the extent of the stream **system.**

2    But never did I ever see any contention that there was this

3    large basin.  Do you think for one instant, to show **the**

4    fallacy of it, that if Vail was of the opinion and had know-

5    ledge that there was 280,000 acre feet of water in storage **up**

6    here, not part of the stream system, that they would **whack**

7    that up with Camp Pendleton and give them two-thirds **of it?**

8    It would be absolutely ridiculous.  That shows you the **fallacy**

9    of that situation.

10        THE COURT:  This is not the final decision by **any means,**

11   but this is what I expect to work on and work something out

12   on.  I will be glad to receive the suggested amendment **that**

13   Mr. Girard has on those proposed findings, and of **course,**

14   there would be an opportunity for further work on the **findings**

15   after I formulate some decision on this interlocutory **matter.**

16        Now, when do you want to meet again.

17        MR. SACHSE:  Mr. Girard has said that he has one **matter**

18   of evidence he wanted to present, your Honor.

19        MR. GIRARD:  Your Honor, I have two certificates, **one**

20   under Rule 44 b, I think it is, one of the County **Clerk in**

21   San Diego and one of the State Lands Commission, to **the effect**

22   that the United States has not filed metes and bounds **des-**

23   criptions on Camp Pendleton.  I don't know what I'm **going to**

24   do with them yet.  I'll just file them now.

25        THE COURT:  You mean lodge them?

1    MR. GIRARD:  Yes, just lodge them now.

2    THE COURT:  What are the numbers, Mr. Clerk?

3    MR. GIRARD:  I am going to submit a brief on them, I

4 think, your Honor.

5    THE CLERK:  The next California Exhibit will be AZ.

6    THE COURT:  Let's make them both the same Exhibit.

7    MR. VEEDER:  Their just being lodged.

8    THE COURT:  They are being lodged.

9    MR. VEEDER:  In other words, you don't want an objection.

10    THE COURT:  No.

11    California's Exhibit AZ-1 is the certificate of the

12 County Recorder of San Diego County and AZ-2 is a certificate

13 of the State Lands Commission, to the effect that no metes and

14 bounds description was filed.

15    MR. GIRARD:  I think the one from the County is that

16 no metes and bounds description on property that was acquired

17 by Camp Pendleton has ever been filed in San Diego County.

18    THE COURT:  Is there such a requirement?

19    MR. GIRARD:  Yes, in my humble view.  I think the United

20 States will disagree with it.

21    THE COURT:  The procedure for acquisition of property

22 by the United States is for the Governor of the State to be

23 notified.

24    MR. GIRARD:  That is commonly thought to be true, I

25 believe, but I don't think it is correct, your Honor.

1    THE COURT:  There is a Supreme Court case on it which

2    involved jurisdiction over a base.  This procedure was followed

3    all of the time I was a United States Attorney.  Letters from

4    the Governor accepting jurisdiction, or ceding jurisdiction --

5    I am hazy about it works, but there is a Supreme Court criminal

6    case involving that procedure.

7    MR. VEEDER:  Are you directing your attention to title

8    or to exclusive jurisdiction?

9    MR. GIRARD:  Exclusive jurisdiction, Bill.  I am not

10   an expert on this, actually.  Another person is pushing it

11   in the office.  But as I understand it, the statute in

12   California required, in addition to the Governor sending his

13   letter, that the United States had to accept after they rec-

14   eived the letter by filing a metes and bounds description with

15   the County Clerk in the area where the County is located.

16   THE COURT:  What effect would this have?

17   MR. GIRARD:  I think there are two cases that say that

18   they do not acquire exclusive jurisdiction unless they do that.

19   THE COURT:  How does exclusive jurisdiction enter into

20   this?

21   MR. GIRARD:  I'll be perfectly frank with you, your Honor.

22   In this case, it doesn't.  But we are faced in some milk control

23   cases with the language of the Circuit Court which says that

24   the United States has exclusive jurisdiction on Camp Pendleton.

25   I couldn't care less about milk control, but I have had pressure

on me to try to get something in here to at least cut down

that Circuit Court decision.

MR. STAHLMAN:  This reminds me of the three goats.

THE COURT:  Yes, you are as bad as Mr. Veeder.

MR. GIRARD:  That is right.  I am not going to argue

that this has any real concern in this case, because I don't

think it has.

THE COURT:  When do you want to come back again?

MR. SACHSE:  Before your Honor would pass that, I would

think we might very well say, before we set the date, what we

are going to do when we come back.  I think this has been one

of the most productive two days we have ever had and we have

taken a very long step toward ultimately winding up this case.

There are a great many things that have not been done that

your Honor has directed -- in some cases specifically directed,

in other cases suggested -- and the thing that is in my mind

basically is this.  To the best of my knowledge, every

defendant who is represented by counsel has put on his case.

Every defendant has rested.  Now the United States has not

rested.  I am not very much interested in sitting here while

Mr. Veeder brings in rafts and rafts of people from Anza and

Terwilliger and other places.  I think it is an injustice to

my clients to ask us to do so.  I think your Honor should

tell Mr. Veeder to start to fish or cut bait.  And as far as

Searl Brothers, for example, are concerned, I would like to

1   give them a date and say, "Put your rebuttal evidence on."

2   And as far as his contentions as to the water rights of the

3   United States of America, he has plenty of unquestionably

4   substantial rebuttal, and some of it isn't even perhaps

5   rebuttal -- it is just evidence which has accumulated in the

6   last two and a half years at Camp Pendleton -- water well

7   measurements, etc.  Those things are pertinent to every single

8   litigant here, and those things should be done without waiting

9   around for the State of California's Fire Station up at Anza

10  and a few things like that.

11       I will request your Honor to set for us some trial dates

12  now instead of hot air dates where these people come in from

13  the upper watershed.

14       THE COURT:  I am in agreement.  This matter of winding

15  up these smaller people is an incidental matter.  It is

16  largely clerical.  It can go on from time to time.  But we do

17  have important matters that should be closed up.  If the

18  Government has rebuttal it should be put on.  We ought to

19  hear the Government's views on the alleged underflow in the

20  Domenigoni Valley where the proof so far shows the water flows

21  out of the watershed.  We should set for hearing and argument

22  the proposed findings of fact on each of these ranchos --

23  the Stardust.

24       MR. SACHSE:  On Stardust the set of findings have been

25  submitted to Mr. Veeder and there are prospects that we will

1  be able to get together on a set of findings.

2       THE COURT:  There are the ones represented by Mr. Grover.

3       MR. VEEDER:  There are Mr. O'Malley's, and we are work-

4  ing on those.

5       THE COURT:  Unless you get together on something, you

6  will have to come in here and have a hearing and find out

7  what findings we are going to make and what conclusions we

8  are going to draw and get those set up in an interlocutory

9  order.  That should be done.  The routine of bringing in

10  people to clean up odds and ends is something that could go

11  on indefinitely.  I am not too concerned about that.  But

12  these other matters should be done.

13       Wouldn't you be prepared to start rebuttal at our next

14  hearing?

15       MR. VEEDER:  It would depend on when our next hearing

16  would be, your Honor.  I have agreed that we should press

17  along as fast as we can.  Do i comprehend your Honor to say

18  that you are not interested at this time in going ahead with

19  these small claimants?

20       THE COURT:  I am willing to go ahead with them, but

21  that doesn't advance this case.  That is a clerical thing.

22  You/have your secretary working on that as the Soil Conservation

23  gets further areas developed.  That is entirely apart from

24  hearing the evidence on these ranchos above Vail Dam, hearing

25  your rebuttal on Domenigoni Valley, hearing your water measure-

1 ments that you have taken, any other rebuttal.

2      MR. VEEDER:  I am anxious to go ahead as fast as I can,

3 but I am not going to tell you that I can do something that

4 is impossible, when Colonel Bowen is handling this work in

5 regard to these small users -- it is full time.

6      THE COURT:  Colonel Bowen, I want priority on the basin

7 you have worked on and on the tests on Tuculota over a bunch

8 of small users.

9      COLONEL BOWEN:  We will treat it that way, your Honor.

10      MR. VEEDER:  And it is a real problem from my standpoint

11 of the number of personnel that we have.  I am just as anxious

12 as anyone, your Honor.

13      THE COURT:  Specifically, what have you done as to

14 rebuttal on the Domenigoni Valley?

15      MR. VEEDER:  We have made an investigation.

16      THE COURT:  Who made it?

17      MR. VEEDER:  Mr. Kunkel.

18      THE COURT:  Mr. Kunkel, then, is not tied up as Colonel

19 Bowen is.

20      MR. VEEDER:  No.

21      THE COURT:  When will he be ready to testify?

22      MR. VEEDER:  I have not talked to him about the dates.

23 I will write you a letter on it and be specific.

24      THE COURT:  He is sitting right behind you.

25      MR. VEEDER:  I haven't talked to him.

14,674

THE COURT:  Find out.  How can I fix a date --

MR. VEEDER:  If you want to set down a date -- I want
to be sure I comprehend what is going on -- we are going to
go into rebuttal inregard to one area, is that right?

THE COURT:  Any rebuttal.  I am suggesting Domenigoni
Valley.  We know you have talked about rebuttal there.  I
don't know what other rebuttal you have.

MR. VEEDER:  I have never tried a case where we have
undertaken rebuttal until the end of the case.  But if you
want me to undertake it, I will.

MR. SACHSE:  I would like to see him rest.

THE COURT:  You don't mean that you want to wait until
I clean up all the little pieces of ground in the basement
complex before you start rebuttal?  I don't intend to do that.
If you think you are going to hold up rebuttal until I have
signed interlocutory judgments on all these people in the
basement complex and on this stream system, then you are
wrong.

MR. VEEDER:  Let me do that, your Honor.

I would just like to organize my thinking and write you
a memo and a letter saying    when I'll be ready to go into
that.  I am not prepared right now.  I am not dragging my
feet.  I don't want to be castigated again for the moment.
I am trying to get these things organized properly and do
them properly.  I will undertake to tell you as specifically

1   as I can when we will be ready to proceed with rebuttal.  We

2   have questions of rebuttal that are going to be important in

3   regard to the Lancaster area, the Domenigoni Valley.  We have

4   all these various other aspects.  I would be very wrong to

5   say I will be ready to go on Thanksgiving Day because I can't

6   tell you that.  I will undertake it, I will write you a

7   letter, I'll tell you.  Is it your thought that we set it

8   down in December?

9        THE COURT:  It is not expected that you will put on

10  your rebuttal all in one day.  Your Domenigoni Valley might

11  take a day or two in itself.  I just want somethingrolling to

12  keep working on this matter.

13       MR. VEEDER:  Right.

14       THE COURT:  And you might as well start programming

15  some rebuttal, if you have it.

16       MR. VEEDER:  I will.

17       THE COURT:  Can you have it in December or late November?

18       MR. VEEDER:  December is better for me, your Honor.

19  Set down a December date, your Honor.

20       MR. STAHLMAN:  I have a trial starting December 5th

21  that is supposed to last two weeks -- a condemnation proceed-

22  ing.

23       THE COURT:  That will last two weeks?

24       MR. STAHLMAN:  It is scheduled to last two weeks, your

25  Honor.

1   MR. VEEDER:   You didn't say "The last two weeks"?

2   MR. STAHLMAN:   No, it will last two weeks.   The Langdon

3   trial is estimated as two weeks.   It is an involved condemnation

4   matter.   November is all right, though.

5   THE COURT:   That takes the week of the 5th and the 12th.

6   MR. SACHSE:   How about November 28th up to the 5th?

7   MR. STAHLMAN:   That is satisfactory.

8   MR. SACHSE:   That is a full week and it is after

9   Thanksgiving.   I know there are a number of things we can

10   do.   I am going to suggest another one at the moment, if it

11   meets with your Honor's approval, that I am going to have

12   ready for you at the next hearing.

13   MR. VEEDER:   I think there are a great many things.   I

14   would like to have your Honor hear us in regard to our

15   contention that Fallbrook can't appropriate rights to the

16   use of water for the purpose of irrigation.

17   MR. SACHSE:   I will argue that anytime he wants to.

18   MR. VEEDER:   I think it is important.

19   MR. SACHSE:   The specific thought I had in mind -- I

20   have had something that I wanted to do for a long time, but

21   I can't because the United States hasn't rested -- I represent

22   six people that have a very simple problem insofar as the

23   facts are concerned.   That is the six landowners whom I

24   represent, who sold their property that abutted on the stream

25   to Fallbrook, but purported to reserve the riparian rights

A 41                                                                14,677

1    thereto.  The evidence is before the Court.  Nobody can argue

2    what the form of the reservation was.  It is in the deed.  It

3    is a legal question that Mr. Veeder and I are going to have to

4    argue and get your Honor to rule on.  My contention of the

5    orderly and neat way to present this to your Honor is that

6    as soon as he rests I am going to make a motion for some

7    rejudgment with memorandum attached and let's get rid of it.

8    It is either a valid reservation or it is not a valid reserva-

9    tion.  It doesn't concern anybody else.  It is simply a legal

10   argument.  I can get Mr. Veeder copies of it in ample time.

11   There are a lot of things of this kind that we could do.

12        THE COURT:  You could hear that before the Government

13   rested.

14        MR. SACHSE:  I can't until he says that he has rested.

15   I don't know what kind of goofy evidence he is going to have

16   on this main stream.

17        THE COURT:  If he agreed that the motion might be heard

18   and that he has no evidence that will affect the factual

19   question.

20        MR. VEEDER:  I will agree to that at the moment.

21        MR. SACHSE:  I will put that on then.

22        But I think we ought to schedule some factual evidence

23   to be taken.

24        THE COURT:  What ranches have we got?  We have the

25   Stardust.

1    MR. STAHLMAN:  Oviate, Gibbon and Cottle, Searl Brothers.

2    MR. SASCHSE:  Specific owners as to whom you may want

3    rebuttal.

4    MR. VEEDER:  Certainly in the area of Oviate, Gibbon

5    and Cottle, I think the Stardust, Fronds.  I don't believe

6    you can separate these things.

7    MR. STAHLMAN:  I think you ought to have Sunnybrook in

8    there, too.

9    THE COURT:  Can you put your rebuttal on as to these

10   ranches upstream of Vail Dam, then, at the next hearing?

11   MR. VEEDER:  I will undertake to do that.

12   THE COURT:  How about December 1 and 2?

13   MR. VEEDER:  I am thinking of Mr. Grover and Mr.

14   O'Malley, in talking about rebuttal.  It may be if we can get

15   together on our findings there would not have to be rebuttal.

16   Set it down for rebuttal at that time.

17   THE COURT:  The first and second all right?

18   MR. VEEDER:  Suits me.

19   MR. SACHSE:  All right with me.

20   THE COURT:  In view of Mr. Stahlman's commitment, we

21   either have to have that then or the 22nd and 23rd of December,

22   which is not a good time.  I am trying a Wherry Housing Case

23   beginning next Tuesday that is going to take two weeks.

24   MR. SACHSE:  Let's go.  If we can have as good luck on

25   the first and second as we had today.

14,679

1    THE COURT:  Then we will put down these ranches upstream

2  of the Vail Dam.

3    MR. SACHSE:  I will prepare my motions and submit briefs

4  on the other.

5    THE COURT:  Rebuttal by the Government and consideration

6  of findings of fact.  How many sets of proposed findings?

7  None has been served upon me.

8    MR. SACHSE:  No, your Honor.  The Stardust finding I

9  gave only to Mr. Veeder.

10    Now on these other findings of fact, however, that we

11  worked on yesterday, if we can submit them to your Honor with-

12  out the Exhibits attached, I don't think there would be any

13  problem.  We could probably have those ready.  We don't have

14  to have the actual Exhibits ready.

15    THE COURT:  We don't do any good if you haven't got the

16  Exhibits to put in.

17    MR. SACHSE:  What he does is going to be in.

18    THE COURT:  Do you want me to sign the judgment, then

19  before the Exhibits?

20    MR. SACHSE:  I was getting at the final approval as to

21  form, the final judgment itself.

22    MR. VEEDER:  May I inquire as to what your Honor con-

23  templates in regard to procedure?  Do you contemplate having

24  a series of separate findings on each of the individual

25  tributaries and then you sign those?  Or do you intend an

14,680

1    over-all review of the stream system covering the whole matter?

2         THE COURT:   I contemplated on a number of these streams

3    findings such as Mr. Sachse had drawn on Tuculota.  On the

4    stream above Vail Dam we were further complicated by these

5    ranches where we have heard these cases which we are going to

6    have to decide and work either into the findings on that

7    stream or separately with cross-references to them.

8         MR. VEEDER:   That is the primary difficulty we have,

9    frankly.  I have been trying to work up something for Mr.

10   Grover.  He has asked me to work on findings for him.  And

11   I have been working on things for Mr. O'Malley.  I have talked

12   to him about those.  It is extremely difficult to try to

13   separate findings for each of these individual ranches, but

14   I think it can be done.

15        THE COURT:   Do you want to bring on your motion concern-

16   ing this riparian question?

17        MR. SACHSE:   If it will meet with Mr. Veeder's and your

18   approval, instead of actually noticing it for a date, I will

19   prepare it, send the briefs to Mr. Veeder and let's let this

20   be a spare job which we can fit in if we run out of gas.

21        MR. VEEDER:   We will never run out of gas.

22        MR. SACHSE:   Sometimes we have on days when people did

23   not show up.  I will have it ready to go at any time.

24        THE COURT:   What about starting your rebuttal?  I have

25   mentioned these ranchos.  What would come next.  Domenigoni

A-45                                                                    14,681

1    Valley?

2         MR. VEEDER:  I would assume the Domenigoni Valley would

3    be next.

4         MR. SACHSE:  What about the basic evidence -- you may

5    not even call it rebuttal -- the basic bringing up-to-date

6    of the status of the stream system in the Military Reservation

7    itself?

8         MR. VEEDER:  Frankly, I think we have been filing the

9    data as it becomes current.  I am sure we have added to some

10   of the original findings.

11        MR. SACHSE:  I don't see any Exhibits.

Belt 18  12       MR. VEEDER:  I will check that out.  We do have data

13   on run-off and things like that.  Is that what you mean?

14   Stream flow measurements?

15        MR. GIRARD:  Whatever you are planning to put in.

16        MR. SACHSE:  Let's be very specific.  There is now

17   before the Court a set of figures of the United States --

18   I don't know the exact dates -- which showed a salt water

19   encroachment having continued for a considerable number of

20   years at the mouth of the river, and the United States

21   figures showed that that had stopped at the moment for a year

22   or two at least and there seemed to be now a gradient going

23   back the other way.  The Court, I assume, is very much interested

24   -- the allegation of the complaint say that the diversions of

25   people upstream are causing salt water encroachment, and the

1   Court is very much interested as to whether those are true.

2   We want to know whether the gradient is now safely seaward

3   or is it going back the other way.

4      MR. VEEDER:  We will bring those all down to date, if

5   you consider that rebuttal.  I didn't consider that rebuttal.

6      THE COURT:  We will call it rebuttal or supplemental,

7   it doesn't make any difference.

8      MR. VEEDER:  We will have it.  What I will do is go

9   through all the Exhibits which could be brought down currently

10   and I will bring them down currently.

11      THE COURT:  Then we have this Schloss matter which we

12   will have to continue over to the next hearing on December 1.

13   Mrs. Bates is not here.  Is she back from her trip yet?  What

14   has happened to your appeal?

15      MR. LINCOLN:  The first brief is in, your Honor, and

16   Mrs. Bates has not yet had time to answer it.  That is as

17   far as we have gone on that.

18      THE COURT:  Mr. Veeder, you can determine what other

19   matters you can bring on, so we will have a couple days work

20   on the first and second of December.

21      MR. VEEDER:  All right, I will notify your Honor.

22      Do I understand now that you set it down formally for

23   rebuttal on Domenigoni on the first and second?

24      THE COURT:  Domenigoni Valley.  Rebuttal on the Ranchos

25   Stardust and Gibbon and Cottle, all those ranches above Vail

1  Dam; a consideration of findings and conclusions -- what are

2  we going to do with them?  I will expect counsel for these

3  owners to pull together the facts that have been proved and

4  we will have some argument on just exactly what the findings

5  ought to be.  I expect the Government to be prepared to tell

6  me what I should find or not find as to those ranches.

7      MR. VEEDER:  All right.  I am going to take this as a

8  direction from you to contact Mr. O'Malley and Mr. Grover.

9      THE COURT:  Yes.

10     I think Mr. Cranston hasn't come.  He may come this

11 afternoon.  I think I will just tell him that we have put the

12 Referee's Hearing that comes up on November 1st over for

13 another three or four months.

14     MR. VEEDER:  I think that is very good.

15     MR. SACHSE:  I think it would be helpful if he could

16 get his findings finished on Rainbow Creek.  He told me

17 informally more than a month ago that they were ready and he

18 wanted to wait to see how you were going to handle this

19 question of delineation of lines outside of which water ceased

20 to be a part of the stream system.  That is one of the things

21 he waiting on -- the theory of how you were going to do it.

22 Now we have decided by lines on a map, and I think that is

23 about all he wanted to know.

24     THE COURT:  Here is a letter that you may give your

25 secretary, Mr. Veeder, that came in this morning.

1    MR. VEEDER:  Thank you.

2    THE COURT:  We will stand at recess.

3    (Adjournment until December 1st, 1960 at 10:00 A.M.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25