MR. VEEDER

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

UNITED STATES OF AMERICA,

                Plaintiff,

vs.                               No. 1247-SD-C

FALLBROOK PUBLIC UTILITY DISTRICT,
et al.,

                Defendants.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:      San Diego, California

Date:      **Wednesday, April 26, 1961.**

Pages:     **16,541 to 16,562**

FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIF.
By _____ DEPUTY

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )
                                   )
vs.                                )     No. 1247-SD-C
                                   )
FALLBROOK PUBLIC UTILITY           )
DISTRICT, et al.,                  )
                                   )
                    Defendants.    )
_____

- - -

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California

Wednesday, April 26, 1961

- - -

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | WILLIAM H. VEEDER, ESQ., Special Assistant to the Attorney General |
| | CDR. DONALD W. REDD. |
| For the Defendants: | |
| Vail Company | GEORGE STAHLMAN, ESQ. |
| Fallbrook Public Utility District, et al., | FRANZ R. SACHSE, ESQ. |
| State of California | FRED GIRARD, ESQ. |

P 16

# INDEX

## (No Witnesses)

## INDEX TO EXHIBITS

| For the Plaintiff | Identified | Received |
|---|---|---|
| Additions made to Exhibit 207-D | 16,542 | 16,542 |

P 2

1  SAN DIEGO, CALIFORNIA, Wednesday, April 26, 1961, 9:30 A.M.

2      (Other matters.)

3      THE CLERK:  3-1247-SD-C United States of America vs

4  Fallbrook Public Utility District, et al.

5      MR. VEEDER:  Your Honor, we have some more letters of

6  acceptance that came in.  They are in different areas of the

7  valley.  I would like to have those entered as part of

8  207-E.

9      THE COURT:  They will be made part of Exhibit 207-E.

10                          (The documents above referred to were )
                            (marked as part of Plaintiff's Exhibit)
11                          (207-E and received in evidence.       )

12     MR. VEEDER:  Your Honor, there was received by me a

13  copy of an interlocutory judgment from Mr. Menzies.  If I

14  remember correctly, you said you had written Mr. Menzies a

15  letter in regard to those findings.

16     THE COURT:  I checked, I think it is, Wilson Creek,

17  or Tucalota -- it must be Tucalota.

18     MR. VEEDER:  Yes.

19     THE COURT:  And found that his property was covered in

20  Tucalota, and I had a copy of the proposed Tucalota judgment

21  made by the clerk and mailed it to him and told him that I

22  thought we wouldn't worry about his judgment.  He is all

23  wrong in what he has in there anyhow.  We include this as

24  part of Tucalota, and he was satisfied with that.

25     MR. VEEDER:  All right, I have nothing more to do on it.

P 3

1      That is all.  I wanted to be sure.

2          THE COURT:  No, except Tucalota.

3          MR. VEEDER:  Yes, that will be taken care of.

4          I have talked briefly with Mr. Sachse, Mr. Girard and

5      Mr. Stahlman about the process we have been following in

6      getting together the findings of fact and conclusions of

7      law completed for Wilson Creek, Tucalota Creek and the other

8      areas.  If I may hand this to your Honor, I will show you

9      what we are doing on individual parcels.  I believe there is

10     agreement as to the form that has been used.

11         MR. STAHLMAN:  As I understand, you are not including

12     the Vail properties in the findings on Tucalota.

13         MR. VEEDER:  That is separate and apart.  We traced

14     the course of the stream, and then we have individual

15     findings.

16         MR. STAHLMAN:  However, in order to be consistent, you

17     will have a copy of these?

18         MR. VEEDER:  We will have them for distribution.  We

19     will reproduce these.  It will be tentative until they are

20     proved.  There is no sense in my making up a series of

21     copies and distributing them until we are completed on it.

22         MR. STAHLMAN:  No.  If I could get your general outline

23     of your findings as far as the stream system is concerned.

24         MR. VEEDER:  All right.

25         We have reproduced and distributed to all counsel,

P 4

1   many of whom haven't even been here, the forms that were used

2   on Wilson Creek to show what we are doing.   Tucalota is the

3   same thing.   Diamond and Domenigoni will be the same.   Tule

4   will be the same.   We haven't worked on Tule and the Upper

5   Temecula because we haven't completed all of the investiga-

6   tion yet.

7       MR. STAHLMAN:   I wonder if this might be a good time to

8   make some determination as to how much more evidence we are

9   going to have.   That should be the end of it, as I see it.

10      MR. VEEDER:   Temecula still has to be done, and that

11  will have to be at the hearing after next week.

12      MR. STAHLMAN:   What was Mr. Krieger coming down on?

13      MR. SACHSE:   Just argument.

B fls.   14

15

16

17

18

19

20

21

22

23

24

25

B-1
t-1

1      THE COURT:  I made some comments several days  ago,

2   and I can't remember them exactly now, but they referred to

3   these findings on streams like Tucalota and Wilson, and were

4   to the effect that there should be added several other

5   paragraphs.  For instance, there should be added a paragraph

6   that no findings herein are made on matters of stock ponds,

7   reservoirs, and so forth, which will be taken care of in

8   separate findings.

9      MR. VEEDER:  That is correct, your Honor.

10      THE COURT:  Do you have reference to those suggestions

11   that I made?

12      MR. VEEDER:  Not in the form that you have them, but

13   before we are through those will all be included, yes, your

14   Honor.  You are continuing jurisdiction in all those matters,

15   and on those we do not even have the conclusions of law, your

16   Honor.

17      THE COURT:  Now, another thought that comes to me is

18   this:  You start down here and you first describe Weber

19   Valley.  You describe it fairly well, and / how it is bounded

     tell

20   on the north, east and west by rock and basement complex.

21   Shouldn't there be a reference in here to one of the maps

22   which shows  the area of the younger alluvium?  In other

23   words, shouldn't we tie our findings in with at least a map

24   so that we have some way to determine some dispute as to

25   whether a certain well is placed in the basement complex and

t-2

1    the younger alluvium at some later time?

2    What I am suggesting is whether it would be desirable

3    to include a reference to, say, Exhibit 15-A, or 15, or

4    whatever the smaller ones might be, the ones that we could

5    use as a reference?

6    MR. VEEDER:  I think, your Honor, this--

7    THE COURT:  That has other disadvantages.  If you are

8    going to do that you then are tying your judgment in to an

9    exhibit, and that exhibit has to be preserved, or if you lose

10   the exhibit you cannot properly interpret your judgment, and

11   the Title Companies would probably have a problem, in that

12   they would have to go back and look at the map.  You could,

13   of course, attach a copy of that exhibit to the judgment

14   itself, the original judgment.

15   MR. VEEDER:  A reproduction of it.

16   THE COURT:  And the original judgment could stay on file

17   in the Clerk's office, and the reproduction be fastened right

18   to it.

19   MR. VEEDER: If it is to be incorporated by reference,

20   I think we would have to do that, your Honor, and I am

21   certainly not opposed to it, but I think what we would have

22   to do would be to make an appendix, and refer in the findings

23   to Appendix A which is United States Plaintiff's Exhibit 15 E.

24   THE COURT:  Just a copy of it.

25   MR. VEEDER:  Which would be incorporated in the findings

t-3

by reference and made a part of it.   That could be done.

THE COURT:   Before we pass on it, what is the view of other counsel on that?   Is that desirable?

MR. SACHSE:   In my draft I had a reference to United States Exhibit _____, with the idea that Mr. Veeder might prefer to prepare one slightly different from 15-A or -E.

MR. STAHLMAN:   I would think, your Honor, in view of our experience with findings in the old Vail case, that if there is to be a reference made to an exhibit, that that not be included in the findings themselves, because sometimes you have great difficulty with that.

THE COURT:   Yes.   The old exhibits themselves, the originals, have a way of getting lost.   I am thinking of the future, and particularly title problems in connection with this.

Mr. Veeder and I, I think, worked out an arrangement with the Title Companies whereby these plat maps -- check me on this if I am right or not --

MR. VEEDER:   That is correct, your Honor.

THE COURT:   -- that the Clerk would prepare certified copies of these plat maps, and they would be delivered to the Title Companies, which they will keep along with their records, so that instead of having to hunt up a plat map, they will have a certified copy right there that they can work from.

t-4

1   MR. VEEDER:  We also have delivered to them the copies

2 of the legal descriptions of each parcel.

3   THE COURT:  Yes.  Certified copies?

4   MR. VEEDER:  Yes, that is correct.

5   THE COURT:  You have had them certified by the Clerk?

6   MR. VEEDER:  Yes.

7   THE COURT:  And there is a certified copy of the exhibit

8 on file, and then the Title Companies in their plat will have

9 really all they need.  They have the plat map, which actually

10 came out of the Title Companies, I suppose, to start with,

11 didn't it?

12   MR. VEEDER:  That is correct.  That is what it amounted

13 to.

14   THE COURT:  And then they will have the legals, and

15 they will have the judgments, which would mean they would

16 not have to search around for exhibits.  When we get around

17 to some of these judgments where we refer to a map, I think

18 it would be well to have a copy of that map as a part of the

19 judgment, and if it is a part of the judgment, it has to be

20 certified, and made a part of that judgment as an addendum

21 to it, so that they have the map right there on the matter.

22   MR. VEEDER:  I would have to ask somebody who knows

23 more about it than I do about reproducing these for

24 attachment and incorporation, but while this is fresh in our

25 minds, if you are going to refer to any of these parcels

B-2

t-5

through which Coahuila Creek is flowing, I think you would have to have a map reproduced, and whether you would want to put the yellow on it, or have some kind of crosshatching, or something, to show the younger alluvium rather than the colors, I don't know.

MR. SACHSE:  As a suggestion it seems to me that the only thing you are concerned with in the judgment itself is the areas in which you are going to hold ground waters to be a part of the stream.  You are not concerned with the younger alluvium, and just so long as you do hold it to be a part of the stream, you can probably just do it without colors, and just crosshatch everything that is held to be a part of the stream.

THE COURT:  Of course, as a matter of fact, all of these maps, even if uncolored, have the symbols on them, so that the coloring has been only a visual aid to us.  Of course, all of them are marked with the symbols, QTAL, or whatever it is, and "BW" and "BC", in parenthesis "basement complex weathered," and all the maps that I have seen, except the geological sections, have those symbols on them.

I would assume that a Title Company could read the symbols, or we could color the one that we attached to our judgment.

MR. VEEDER:  The one that would be permanent here?

THE COURT:  Well, ours that we have here/colored, most
                                           are

16,550

t-6

1    of them, but I mean the one that we attach to the judgment.

2         MR. SACHSE:  I don't think the color is a problem.  I

3    think there are only two colors involved.  You only have the

4    white and the shaded.  Those are the only ones you really

5    need.

6         THE COURT:  I am not talking about taking the original

7    exhibit, which is 15, but I am talking about a copy of it,

8    or 15-A, or whatever it might be.

9         MR. VEEDER:  I would have to have somebody who knows

10   more about reproduction than I do tell me how we can do it,

11   because you have to fold it so that it fits.  I would assume

12   you would have to.

13        MR. GIRARD:  Can't you reduce that 15-E to about a

14   15-inch square map, Colonel Bowen?

15        COLONEL BOWEN:  Yes.

16        MR. VEEDER:  My only concern, if you pulled it down too

17   much, is whether you would be able to do what your Honor

18   desires, namely, to look to that exhibit for the purpose of

19   ascertaining whether the particular well was where it was

20   located, as it related to the geology of the area.

21        THE COURT:  I don't think it is too much of a problem.

22   Instead of cutting it down in size, it would seem to me you

23   could take a firm piece of paper, or a cardboard, so far as

24   that is concerned, and fasten your map in at the top, and

25   then fold it so that it was in there.

16,551

t-7

1      Now, we have only got about two or three of these where

2  it is important; only two or three.

3      MR. GIRARD:  It could certainly be the same size, even

4  if you pulled it down, as the maps in Bulletin 57, and you

5  can read those fairly adequately.

6      MR. VEEDER:  Let us do some work on that.  We will

7  incorporate them by reference, and I will get some instructions

8  as to the best way of making them a part of it.

9      THE COURT:  Let's go a step further on that.  It may be

10  that a small reproduction would do just as well, because

11  suppose you had this problem:  Suppose a person drilled a

12  well up there, and from the map it looks like he is drilling

13  in younger alluvium, but actually on the ground he has

14  drilled in basement complex.

C fls

Take C

P 6

1   Now I don't think there would be any dispute but that in

2   case of dispute you would probably go to the ground to see

3   what the story was.

4        MR. VEEDER:  That is right.  I think you would have to.

5   It would be a hearing on an order to show cause.

6        MR. SACHSE:  I think so.

7        MR. GIRARD:  For example, let's take Murrieta.  I don't

8   agree in that situation.  In Murrieta you are going to

9   define the thing specifically, aren't you, Colonel Bowen?

10       MR. SACHSE:  Yes, on Murrieta Basin you have boundary

11   lines.  But you don't need a map for that.

12       THE COURT:  That is a matter of legal description.

13       MR. SACHSE:  That is a matter of metes and bounds.

14       THE COURT:  There have been several other suggestions,

15   in addition to the stock ponds.  I think the other one was

16   that no adjudication be made herein on prescriptive and

17   appropriative rights, but that that be taken care of by

18   particular judgments as to where they existed.

19       MR. VEEDER:  That is correct.

20       THE COURT:  Well, work along on that and see what you

21   can do.

22       MR. STAHLMAN:  I wonder also, in connection with that,

23   your Honor, if we might have some discussion or consideration

24   at this time as to what the future program will be, if any.

25   In other words, as this area develops it may be desirable

P 7

1    to have information as to what is going on in the matter of

2    well measurements, etc., to keep some track of this thing

3    so that in the future if we get into matters of apportionment

4    etc., that we have some running information as to what the

5    condition is from time to time.  I wonder if we should have

6    something along that line.  I would like to hear somebody

7    else's view.

8        MR. VEEDER:  We are going to ask that your Honor order

9    the continuation of taking pumping measurements to the end

10   that we will have a continuous gathering of data under your

11   Honor's jurisdiction, if your Honor will so order it.  I

12   think it is essential.

13       THE COURT:  That is something for further discussion

14   to be listed on an agenda some day and we will talk about

15   it.  We are not ready to talk about it now.

16       MR. VEEDER:  Are you through with that for the moment?

17       THE COURT:  Yes.

18       MR. VEEDER:  I called Mr. Krieger last evening and I

19   suggested that if he could come in this week to present his

20   views to your Honor and into the record it would save time

21   next week.  He told me that he would call me tomorrow morn-

22   ing at 8:30 and would advise whether he would be down for

23   the hearing, and that was the most precise he could be.

24   That is Mr. Krieger's situation.

25       MR. STAHLMAN:  What is he going to touch upon?  Do you

P 8

1    know?

2         THE COURT:  Well, tell Mr. Krieger that we are meeting

3    here this week and certainly part of next week, and we will

4    try to accomodate his convenience.  But unless I have some

5    definite statement as to when he is going to be here I am

6    just going to send him notice to be here at a certain time

7    and forget about it.  He has been excused from lots of

8    attendance and he came in when he felt like it.  I tried to

9    accomodate him as to hours of day and night.  But we are in

10   a position here where either I want him down here or I will

11   assume that he is not coming.  If he wants to fix a date as

12   to when he is coming, all right.  If not, I will fix a date.

13   I will send him a wire that he is supposed to be here on a

14   certain date.

15        MR. VEEDER:  I will call him this morning, your Honor.

16        MR. STAHLMAN:  We have this matter on the agenda here

17   in relation to considering the Murrieta Valley as storage

18   units, etc.  Probably I am not making it very clear.  But

19   the matter with relation to how it will be treated as over-

20   lying or riparian.  And if he is going to talk on that maybe

21   he should be here on that situation.  I have some views that

22   I would like to express to you in connection with it.

23        MR. VEEDER:  I insist that the writing of findings

24   with Mr. Krieger broke down because we couldn't agree on

25   terminology and we need your Honor's direction.  I truly

P 9

1    couldn't understand what he was saying. And I think we

2    should go on the record on it.  It is something different

3    than I thought Murrieta Basin was going to be.  I am not

4    critical of Mr. Krieger.  But to me it is one of the most

5    crucial elements in the lawsuit, and when we tender findings

6    to you there should be as much agreement as possible.

7    THE COURT:  You get in touch with him sometime this

8    morning and keep after him until you get him.

9    MR. VEEDER:  All right.

10    THE COURT:  Pin him down to some time.

11    MR. VEEDER:  I am extremely anxious to get him here so

12    that we can have an opportunity to formulate these matters

13    before May 2nd.

14    MR. GIRARD:  I would appreciate it if he could be here

15    this week instead of next week.

16    MR. VEEDER:  I will call him up this morning.

17    THE COURT:  What about this Sandia Creek matter?  Can

18    we do anything on that this morning?

19    MR. SACHSE:  I suggested to Mr. Veeder, since we are

20    all aware -- Mr. McGinnis was very frank as to what he

21    desires to present to the Court, which is a contention that

22    there is a prescriptive right, which I will resist, in fact

23    my findings find no prescriptive rights specifically, which

24    I believe Mr. Veeder is also going to resist -- that we

25    might perhaps decide whether the rest of the findings are

16,536

P 10

1  adequate.  Mr. McGinnis said he had no objection to any other

2  finding.  He simply wanted to present a contention of

3  prescriptive right.  If your Honor should agree with him we

4  can put in one more paragraph.  These are only a draft.  These

5  wouldn't be ready for signature anyhow.  We could save a

6  little typing time.

7        MR. VEEDER:  We want to add the individual parcels.

8        MR. SACHSE:  They are in this one.  But it is done by

9  exhibit rather than the way you did it.

10        MR. VEEDER:  I would like to go through and do what we

11  have done on Tucalota and Wilson.  It will not take long.

12  We will then make the offer to your Honor.  We will try to

13  get that done by tomorrow and have it presented.  We can

14  put on the additional paragraph as to prescription if Mr.

15  McGinnis is successful.  I think the thing to do is to run

16  those today.

17        MR. SACHSE:  That's all right.

18        Your Honor, something that we could knock/this morning,
                                              out

19  it seems to me, is this question of what you want to do

20  about these injunctive findings.  I don't know whether I

21  am overlooking something here, but as far as I am concerned

22  I see no need for them.  I feel that a minute order is

23  adequate, in the present state of the record.  We have

24  discontinued our diversions and so any appeal now would be

25  moot, as I understand it.  I see no reason for findings on

P 11

1    it.  But I may be wrong.

2        MR. VEEDER:  That is correct.  As I see it, if Fallbrook

3    has ceased to pump and will continue to refrain from pumping,

4    and Mr. Sachse has agreed into the record to that effect,

5    certainly there is no basis for any review of the matter

6    because the matter is moot.  He is doing what we asked him

7    to do.  As far as I am concerned, it could stand that way,

8    if that is agreeable with Mr. Sachse.

9        MR. SACHSE:  It is agreeable to me.  It could stand

10   on a minute order that the motion for injunction was denied.

11   If I start doing something wrong again and break my commitment

12   to the Court, Mr. Veeder can bring me in on another order.

13       MR. VEEDER:  I would just as soon have this commitment

14   itself in the record, if that is the case and your Honor so

15   declares it.

16       THE COURT:  Then we will instruct the Clerk to enter

17   a minute order that Mr. Sachse, representing the Fallbrook

18   Public Utility District, has asserted to the Court that --

19   effective when?

20       MR. SACHSE:  I said within 48 hours, your Honor.  That

21   would be, let us say, tomorrow night.  Give me 72 to make

22   sure.

23       THE COURT:  Fallbrook will cease pumping.

24       MR. SACHSE:  I think the Clerk should have the exact

25   transcript; pages 16,429 to 16,430 is the statement.

12

1    THE COURT:  We will just refer to the pages in the
2    transcript where Mr. Sachse made his statement, and based
3    upon that statement and the assurance contained in the
4    statements by counsel for Fallbrook and the United States
5    that they do not desire findings of fact or conclusions
6    of law or judgment entered, they are content with merely a
7    minute order that was heretofore made denying the injunction,
8    and a minute order made now dispensing with findings based
9    upon the assurances made by Fallbrook.

10    MR. VEEDER:  And that until further notice there will
11    be no pumping by Fallbrook.

12    MR. SACHSE:  No; dry season, I said -- the rest of
13    this dry season.

14    MR. VEEDER:  That is what I mean -- for the rest of
15    this season.  But I think your minute order should include
16    that, if I may suggest it.

17    MR. SACHSE:  That is all right.  No objection.

18    THE COURT:  For the rest of the dry season there will
19    be no pumping by Fallbrook from the Santa Margarita.

20    What do I order?

21    MR. VEEDER:  I think you recited that there will be no
22    more pumping.

23    THE COURT:  All I order is that I will not prepare
24    findings, conclusions or judgment, and I approve the offer
25    made by Fallbrook and the acceptance made by the United States.

P 13

1      MR. VEEDER: In regard to the pumping for the rest of

2 the season.

3      THE COURT: For the rest of the dry season. That is all

4 I can do. Dispense with findings and approve the agreement

5 you have made.

6      MR. VEEDER: Thank you, your Honor.

7      THE COURT: That is the gist of it.

8      MR. SACHSE: That is the fastest getting rid of an

9 item on the agenda we have had in a long time.

10      THE COURT: What are you going to do about the State

11 of California putting fish in the Fallbrook Stream?

12      MR. SACHSE: I have been hearing about this. I want

13 to see this clipping.

14      MR. VEEDER: I think it is going to be extremely

15 interesting to see the fish pack in and pack out of the

16 valley.

17      MR. SACHSE: They tell me there is a photograph in the

18 paper showing them planting trout in the Santa Margarita.

19      MR. GIRARD: I think, on behalf of Fish and Game, Vail

20 ought to start putting that ladder in.

21      THE COURT: This struck me as being very funny. I saw

22 a picture of this supposed stretch of water up there. Where

23 is this supposed to be?

24      MR. VEEDER: I want somebody to identify that for me,

25 and what year it was. It must have been in 1916.

P 14

1   MR. STAHLMAN:  I think the great generosity on the

2   part of Fallbrook was probably prompted by the fact that

3   they are ready to get a loan from the Government to build

4   their dam.

5   MR. VEEDER:  May this be off the record your Honor.

6   THE COURT:  Off the record.

7   (Further discussion about the news item in regard to

8   the planting of fish in the Santa Margarita.)

9   THE COURT:  I have a matter at 1:30 or 2:00 involving

10  a witness in contempt before the Grand Jury.  Do you want

11  to come back in later this afternoon, or you want to come

12  back in tomorrow morning and see what work you can do?

13  MR. VEEDER:  I would just as soon follow up my conver-

14  sation with Mr. Krieger, because I am extremely interested

15  in that.  But I can do that in chambers.

16  MR. SACHSE:  Let's stick around.

17  MR. VEEDER:  I will call Mr. Krieger now.

18  THE COURT:  Shall we adjourn until three or adjourn

19  until tomorrow morning?

20  MR. VEEDER:  It is up to your Honor.  I am going to

21  be here.

22  MR. STAHLMAN:  We can adjourn until tomorrow morning.

23  We can work here today, however.

24  THE COURT:  I expect you to stay around here and work.

25  MR. VEEDER:  There is one thing, your Honor.  I would

P 15

1   like to have an order permitting me to withdraw Hamilton's

2   B for the purpose of reproduction.

3       THE COURT:  It may be withdrawn for the purpose of

4   reproduction.

5       We will continue the matter until tomorrow morning.

6   Stay around and see what you can get done.  Some of these

7   things are just a matter of a little work and typing.  In

8   fact, I will lend you my secretary.

9       MR. VEEDER:  If Mr. Sachse is going to be here some

10   time this afternoon, we will try to get these Sandia things

11   done.

12       MR. SACHSE:  I will stay around as long as you want

13   today.

14       (Recess)

15                   - - -

16

17

18

19

20

21

22

23

24

25

P 5

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

UNITED STATES OF AMERICA,          )
                                   )
                    Plaintiff,     )
                                   )
vs.                                )          No. 1247-SD-C
                                   )
FALLBROOK PUBLIC UTILITY DISTRICT,)
et al,                             )
                                   )
                    Defendants.    )
_____

- - -

## CERTIFICATE OF REPORTER

We, the undersigned, do hereby certify that we are,
and on the date herein involved, to wit: April 26, 1961,
were duly qualified, appointed and acting official reporters
of said Court;

That as such official reporters we did correctly
report in shorthand the proceedings had upon the trial of
the above entitled case; and that we did thereafter cause
our said shorthand notes to be transcribed, and the within
and foregoing 23 pages of typewritten matter constitute a
full, true and correct transcript of our said notes.

WITNESS our hand at San Diego, California this 26th
day of April, 1961.

_John Swader_
Official Reporter

_Marie B. Zellner_
Official Reporter

JOHN SWADER, OFFICIAL REPORTER