Case 3:51-cv-01247-JO-SBC   Document 4650   Filed 09/24/63   PageID.57570   Page 1 of 26

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

UNITED STATES OF AMERICA,

                Plaintiff,

vs.                                                                 No. 1247-SD-C

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

                Defendants.

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:      San Diego, California

Date:      Friday, April 28, 1961

          Pages: 16,602 to 16,625

*FILED*

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____
                      DEPUTY

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

P 1

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1247-SD-C |
| ) | |
| FALLBROOK PUBLIC UTILITY ) | |
| DISTRICT, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California

Friday, April 28, 1961

- - -

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | WILLIAM H. VEEDER, ESQ., Special Assistant to the Attorney General |
| | CDR. DONALD W. REDD |
| | RAMSEY CLARK, ESQ., Assistant Attorney General, Department of Justice. |
| For the Defendants: | |
| Vail Company | GEORGE STAHLMAN, ESQ. |
| Fallbrook Public Utility District, et al., | FRANZ R. SACHSE, ESQ. |
| State of California | FRED GIRARD, ESQ. |

P 25

# INDEX

## (No Exhibits)


## INDEX TO WITNESSES

| For Defendant Vail | D | X | RD | RX |
|---|---|---|---|---|
| JAMES VAIL WILKINSON | 16,613 (The Court) | | | |

P 3

<u>SAN DIEGO, CALIFORNIA, Friday, April 28, 1961, 10:30 A.M.</u>

1

2          (Other cases called.)

3          THE CLERK:  Number 2, 1247-SD-C, United States vs.

4   Fallbrook.

5          MR. SACHSE:  Your Honor, I have reported what I am

6   about to state for the record to Mr. Veeder and Colonel

7   Bowen already, but I think it should be made clear in the

8   record.

9          I advised the Court on Tuesday that within 48 hours

10  Fallbrook would cease pumping from the River.  We have not

11  ceased pumping from the River for engineering reasons which

12  I have explained to counsel for the United States and to

13  Colonel Bowen, the problem being that without some rather

14  substantial more works or new pumps we can't run the water

15  1200 feet ahead down, and across the river, and then 500

16  feet ahead up.  So what we are doing is continuing to

17  operate one pump on the River, the Sawday pump, but we are

18  putting into the River Colorado River water in an amount

19  at least equal to that which we are pumping out.

20         We expect the actual siphon which has to be constructed

21  -- siphon and booster pump -- to be done not before a week

22  from Wednesday, but in the interim I will advise the United

23  States that we will see to it that there is no net draft

24  on the River.

25         THE COURT:  Is that satisfactory, Mr. Veeder?

P 4

1    MR. VEEDER:  That is, your Honor, yes sir.

2    THE COURT:  All right.

3    MR. VEEDER:  I would like to report on the conversations

4    which are now in progress with Mr. Sachse, Mr. Girard and

5    Mr. Stahlman.  I think that we are making progress, your

6    Honor, from the standpoint of the kind and type of language

7    that can be adopted as to runoff, as to what the record

8    shows today as to the yield of the Santa Margarita River

9    related to the present and future demands.

10    I have prepared some language, and Mr. Sachse has said

11    that he will not agree to it.  He has stated, however, that

12    on Monday he would call me, and I think by then we will be

13    able to arrive at an agreement as to the kind and type of

14    language which should be used.

15    THE COURT:  I took my hand at drafting something on

16    Sandia, and I have not read it over since my secretary

17    typed it out, but I will hand out copies here to counsel.

18    This would probably go in as XII and move the present XII

19    down.  As you read it, I will read it, and I will tell you

20    what suggestions I would make, because I have merely dictated

21    it, and, as I say, have not even read it.

22    (The documents were handed to counsel.)

23    MR. VEEDER:  Your Honor, at this time I would like to

24    move the admission of Mr. Clark, if I may, if that is

25    satisfactory to you.

P 5

1    THE COURT:  Mr. Clark, I am happy to grant this motion.

2    You have come well recommended, both  by Mr. Veeder and by

3    the fact that I have known you for a long time.  Maybe I

4    should not state this, but I think your father had a lot to

5    do with my sitting where I am today, but I publicly acknowledge

6    that fact.  He was Attorney General when I was United States

7    Attorney and appointed to the Bench.  I am happy to grant

8    you permission to appear in this case.

9    MR. CLARK:  Thank you very much, your Honor.

10    THE COURT:  My thought on this draft would be to leave

11    XII in.

12    MR. SACHSE:  So I understood.

13    THE COURT:  And stick something like this in, and I

14    would add one change as I read it over in the last paragraph,

15    on the third line between the word "continuing" and

16    "contribution," and possibly put in "material contribution."

17    They are making some small amount of water that would come

18    out of Sandia and join the Santa Margarita, but certainly

19    for the purpose of this finding, which is not an apportion-

20    ment, I think that saying there would be no material

21    contribution would be a correct statement.

22    MR. STAHLMAN:  Your Honor, as a point of information,

23    these sections designated there --

24    THE COURT:  What is that?

25    MR. STAHLMAN:  As a point of information from the

P 6

1   Court on the designation of the sections, which map did

2   your Honor take that from?

3   THE COURT:  I used Exhibit 69, my copy of it, and I

4   take it that is the same as Exhibit 69 in evidence, and I

5   had the section numbers put in.  Now, maybe --

6   MR. WILKINSON:  They don't exist, your Honor.

7   THE COURT:  I see.

8   MR. VEEDER:  That is the Vail Company property.

9   MR. STAHLMAN:  Those above are projected sections,

10  your Honor, and down below I am wondering whether they are

11  correct.  There seems to be some --

12  MR. VEEDER:  I would not worry about those, Mr.

13  Stahlman, because we have the correct descriptions for the

14  full length of the stream in the proposed findings that we

15  are working on at the present time, and they will be checked

16  out.

17  MR. STAHLMAN:  All right.

18  THE COURT:  We could change that as a matter of form

19  and say "projected sections."

20  MR. VEEDER:  We will use that, if want us to.

21  THE COURT:  What is your view as to the general content,

22  regardless of the description?  If you do not want to use

23  "projected sections," you could refer to Exhibit 69, or you

24  could do both.  You could say "projected sections," and

25  Exhibit 69, Government's 69.

P 7

1    MR. STAHLMAN:  As shown on 69.

2    THE COURT:  What do you think of the other?

3    MR. SACHSE:  I am quite well satisfied with XII in,

4    your Honor, and I understand then that the last paragraph

5    of the judgment would also remain.  In other words, we would

6    repeat this same finding that "The exact quantities or

7    proportions of the waters of Sandia Creek to which the

8    parties are now, or may in the future be, entitled is not

9    determined" in this.

10   THE COURT:  All right.

11   Mr. Girard.

12   MR. GIRARD:  I don't have any objection to it, parti-

13   cularly the thing on the first page.  I think it pretty

14   clearly states the facts.  But going down to the last

15   paragraph, the third line from the bottom, where you have

16   "a serious problem of apportionment will be presented," I

17   think you might qualify a little by providing that a serious

18   problem of apportionment may well be presented.  Because

19   it is possible not to have a problem.

20   THE COURT:  Yes, all right.

21   Mr. Veeder.

22   MR. VEEDER:  Your Honor, I have expressed our view

23   previously in regard to the paragraph of the suggested

24   finding No. XII.  I simply think that we have introduced

25   all the evidence that is available, and I have tendered to

P 8

1    Mr. Sachse this language as the first sentence of Finding

2    No. XII:

3         "The records of runoff in the Santa Margarita

4         River watershed, as of the date of entry of this

5         decree, disclosed that there is no repetitious

6         pattern of precipitation and runoff upon which

7         there could be a finding as a firm supply, either

8         from surface or ground water."

9    I think that it is important that the record reflect

10   and that your findings, your Honor, reflect the fact that

11   on Sandia Creek, for example, or on Tucalota Creek and on

12   these other creeks that there is no basis upon which a

13   finding of a firm supply of runoff could be established.

14   I think, moreover, that as we have progressed in this case --

15        THE COURT:  Now wait.  Why do you want that finding?

16        MR. VEEDER:  Because I think this, in view of your

17   Honor's ruling the other day on this injunction, which

18   worried me very much, I believe that we are in a position

19   where the record should reflect the fact that during the

20   summer months, with the exception of the lands of the Vail

21   Company below Vail Dam and right at the north line of the

22   Vail Rancho, that there is no surface runoff, with the

23   possible exception up around Gibbon and Cottle.  And I

24   really believe that we should --

25        THE COURT:  Then, frankly, you want this in as a basis

P 9

1    to be used in some future application for an injunction.

2    MR. VEEDER:  I want it in, your Honor, for this reason,

3    that the day may come when we will have to ask for regulation,

4    and I don't want to go through the process of saying, "Well,

5    there is a small reservoir up here, there are small uses up

6    here," but which, in actuality, have no relationship at all

7    to the problem of the Marine Corps on a short year like this.

8    I think it is essential that we show the fact that during

9    the summer months there is no water in the Santa Margarita

10   River or its tributaries, except for the reaches to which I

11   just made reference.

12   MR. GIRARD:  Did you intend to leave in the words

13   "ground water" there, or are we only talking about surface

14   water?

15   MR. VEEDER:  I would take "ground water" out.

16   THE COURT:  Let me see what you have.

17   MR. GIRARD:  You are talking about the first paragraph.

18   MR. VEEDER:  I am talking about Paragraph XII.  I will

19   not make any further allusion to the second paragraph until

20   after I have heard from Mr. Sachse.

21   THE COURT:  What you have submitted goes in, in addition

22   to --

23   MR. VEEDER:  I would put that in, in lieu of the first

24   sentence.

25   THE COURT:  The first sentence of what -- XII?

P 10

1    MR. STAHLMAN:  Do you have a copy?

2    (Mr. Veeder hands copies to counsel.)

3    MR. VEEDER:  My own feeling is that we would be better

4    off without XII as written, your Honor.  I realize that that

5    is not in accordance with your views.

6    THE COURT:  Then specifically you want to eliminate

7    XII and put in the material you have shown me; is that it?

8    MR. VEEDER:  I would eliminate the first sentence of

9    XII and put in the material in the first sentence I have

10   set up and then follow up generally with the material you

11   have tendered here, because I think it is more reflective

12   of the facts that exist.  I worked with Colonel Bowen on

13   this, I worked with our experts on it, and I have tendered

14   to Mr. Sachse some thoughts.  I am hoping that by Monday

15   we will have something that is more in agreement.

16   MR. SACHSE:  We are only talking about the first five

17   lines of this, I think.  Is that correct?

18   MR. VEEDER:  That is correct.  I realize that you

19   objected to the second part, but I think what I have said

20   in the first sentence is correct and is reflective of what

21   the record contains today.

22   MR. SACHSE:  I would have no objection to the inclusion,

23   and I think probably it could best go in before yours as the

24   very first paragraph of yours, the first five lines of Mr.

                                                        and
25   Veeder's, with a couple of minor corrections,/I will read

P 11  1    it, if I may:

2         "The records of runoff in the Santa Margarita

3        River watershed, . . "

4    THE COURT:  Let me stop you.  Why do you say "Santa

5    Margarita"?  Why wouldn't it just be Sandia?

6    MR. SACHSE:  We have no records on Sandia, your Honor.

7    MR. VEEDER:  I would just as soon have you put Sandia

8    in there, for this purpose.

9    MR. SACHSE:  Then it is silly.  We haven't any record

10    of runoff for Sandia.

11    THE COURT:  All right.

12    MR. SACHSE:  "The records of runoff in the Santa

13    Margarita River watershed, as of the date of entry of this

14    decree, disclose that there is no repetitious pattern of

15    precipitation and runoff upon which there could be a finding

16    as to a firm supply from surface water."  I would take out

17    "either" and "or ground water."

18    MR. VEEDER:  I am willing to take out "ground water"

19    for the purpose of this discussion.

20    MR. SACHSE:  All right.

21    MR. STAHLMAN:  With that out, I have no objection.

22    THE COURT:  Then you would use that material, and then

23    you would use the material that I submitted.

24    MR. SACHSE:  It continues with yours, your Honor, and

25    then leave XII in.

P 12

1      THE COURT:  And then leave XII in.  I think we should
2  leave XII in, Mr. Veeder.  We are not making any apportionment
3  here.

4      MR. VEEDER:  I realize that we are not making any
5  apportionment on this, your Honor.  But I feel this way,
6  that there is proof in the record as far as we can go.  When
7  you say that the evidence is insufficient, it sounds like
8  there might be additional or other evidence.  There is not.
9  We know that.

10      MR. SACHSE:  There is other evidence, Mr. Veeder, that
11  is not in and is not available today, but might well be
12  available tomorrow, namely, stream runoff records on Sandia
13  Creek, and any attempt on apportionment of the surface
14  waters between riparians without that is silly.  And we have
15  no such evidence today.

16      MR. VEEDER:  I am simply saying that it would be
17  impossible to have apportionment today.  I agree on Sandia.
18  There is no question of it.

19      MR. SACHSE:  Are we in agreement that XII stays in on
20  Sandia?  That is the question his Honor asked.

21      MR. VEEDER:  I think XII is repetitious the way it is
22  set up, if we are going to use the first sentence that I
23  suggested.

24      MR. SACHSE:  It is only repetitious.  It doesn't bother
25  me much.

P 13

1    THE COURT:  It doesn't bother me.

2    MR. VEEDER:  Let's consolidate what we have done, then,

3    your Honor.

4    THE COURT:  All right.

5    MR. VEEDER:  And I will be prepared on Tuesday to go

6    into it further.

7    THE COURT:  Let me ask one question.

8    Mr. Wilkinson, you have been sworn.  I don't know

9    whether we do have evidence in the record that the younger

10   alluvium in Sandia Creek or that water in the area of Sandia

11   Creek is being used for stock watering purposes.  I will

12   ask you now, is Vail watering stock up at Sandia?

13   MR. JAMES VAIL WILKINSON:  It is being used for the

14   purpose of watering stock, and that is about the only use,

15   your Honor.

16   THE COURT:  How long has it been used for the purpose

17   of watering stock?

18   MR. WILKINSON:  We water stock there in normal ranch

19   operations every year.

20   THE COURT:  And you have been doing this for years?

21   MR. WILKINSON:  For years, your Honor.

22   THE COURT:  A year-around proposition?

23   MR. WILKINSON:  Not necessarily.  It depends on what

24   type of feed we have in there.  Some years it will run the

25   year around.  Generally not.

P 14

1    THE COURT:  And this water is in pools in the stream, is it?

2    

3    MR. WILKINSON:  That is right.

4    THE COURT:  No diversions for this purpose?

5    MR. WILKINSON:  No diversions at all.

6    THE COURT:  Just watering stock where water appears in

7    the bottom?

8    MR. WILKINSON:  That is right.  Away upstream there is

9    a windmill or two.

10   THE COURT:  Any questions of Mr. Wilkinson?

11   MR. SACHSE:  Not from me, your Honor.

12   Do you want me to put this together, or do you want

13   to, Mr. Veeder, this question of typing.

14   MR. VEEDER:  You are not going to be down, you told me,

15   to see me on Monday?

16   MR. SACHSE:  I am not sure.  I don't know.

17   MR. VEEDER:  Then let's work independently, because

18   I think we have to get this in.

19   MR. SACHSE:  Do you want me to do the typing, or do

20   you want to do it.

21   MR. VEEDER:  Why don't we both do the typing and put

22   it together when I see you?

23   THE COURT:  No, let's do this.  Are there any other

24   matters in the Sandia Creek findings that have to be changed,

25   other than this one we are talking about?

P 15

1    MR. SACHSE:  We have to hold it.  To refresh your

2    recollection, your Honor, Mr. McGinnis is going to present

3    some prescriptive evidence.  I don't think your Honor is

4    going to find any prescriptive right, but he has a right to

5    present it.

6        THE COURT:  He is to be heard.  Why don't the two of

7    you meet before lunch here and agree upon this language?

8        MR. SACHSE:  And just hold it until after Mr. McGinnis

9    makes his presentation and then type it up.

10       THE COURT:  Let Mr. Sachse do the typing.  You have

11   plenty to do, Mr. Veeder.

12       MR. VEEDER:  All right.

13       THE COURT:  Anything else we can do this morning?

14       MR. VEEDER:  I would like to report this, without being

15   critical of Mr. Krieger.  I have waited now all day yesterday

16   and the day before in the hope of getting something done on

17   the Murrieta Basin.  If he is going to be in on Tuesday --

18       THE COURT:  Mr. Krieger called me on the phone yester-

19   day and said he would be here on Tuesday.  He said that he

20   had had rather a stern word from me.  And I said, "Mr. Veeder

21   was following my directions to request you to fix a time

22   when you would be in here to discuss these matters, and that

23   if you didn't fix a time I was going to fix a time and you

24   were to be here."

25       MR. VEEDER:  I paraphrased to him what your Honor told

P 16

1   me.

2        THE COURT:  He was confirming it.  He said, "Well, I

3   have been busy."  I said, "I know you have been busy.  But

4   you are coming in on Tuesday, so no harm will be done."  He

5   said, "I will be there Tuesday."

6        MR. VEEDER:  I just wanted to report what had occurred.

7        MR. GIRARD:  Have you heard anything further from Mr.

8   Stark?

9        MR. VEEDER:  Not a word.

10       MR. GIRARD:  Are you going to put that on the agenda

11  for next week at any time?

12       MR. VEEDER:  I am going to put that on the agenda for

13  next week, and I am going to call him today, because this is

14  something that could be wound up.

15       MR. GIRARD:  Yes.

16       THE COURT:  Are you going to have any other judgments

17  for me to sign here shortly?

18       MR. GIRARD:  I will have Anza Valley and the Coahuila

19  Valley when I come down on Tuesday to submit to counsel.  It

20  will not be ready to sign until they have had a chance to

21  look at it.

22       MR. STAHLMAN: What do you think about this Vail matter?

23  It will take some time.  We have already formulated a sort

24  of index of what we think it should contain.

25       MR. GIRARD:  I have started to draft the findings on

P 17

1    the United States, but I have found that before I can even

2    get anywhere I have to come down and discuss a lot of it with

3    Mr. Veeder and Colonel Bowen.  I plan on coming down the

4    week after next and working on those here in the court, if

5    the Court doesn't object.

6          THE COURT:  If you will do that, I will appreciate it.

7          MR. VEEDER:  We have nothing further, your Honor.

8          MR. SACHSE:  I will have the redraft of the miscellaneous

9    impoundments.  It is in my secretary's hands now.

10         THE COURT:  How are you coming on Domenigoni Valley?

11   That is just a mechanical job, isn't it?

12         MR. VEEDER:  It is just a mechanical job, your Honor,

13   and it is in the process of being done.

14         MR. SACHSE:  I sympathize with Mr. Veeder.  It is a

15   very long job.  There are a lot of land owners.

16         THE COURT:  Will it be ready next week?

17         MR. VEEDER:  We will have it ready in a week or two.

18         THE COURT:  And Wilson Creek?

19         MR. VEEDER:  Wilson Creek is coming along.  And so is

20   Tucalota Creek, your Honor.  But I assure your Honor that

21   we are driving with the throttle wide open.

22         THE COURT:  I know it is a mechanical problem.  As to

23   some of these matters we have decided things that have to

24   go into them.  But it is a mechanical problem.

25         MR. VEEDER:  Is there going to be a session while Mr.

P 18   1        Sachse is in Europe?

2               MR. SACHSE:  I would have no objection, your Honor, in

3        the present state of the record, if counsel and the Court

4        can get together to do any of these things, because I am

5        aware of pressing time considerations and because, in any

6        event, these judgments are interlocutory.  I am going to

7        make arrangements with Mr. Girard to have sent to me the

8        preliminaries on the United States.  My only request would

9        be that your Honor would not set the final, and I am sure

10       you will not be that far along, before mid-July.

11              THE COURT:  You will be back in mid-July?

12              MR. SACHSE:  Yes, your Honor.  But I have no objection,

13       no matter how many sessions, to working on it.  But the

14       final approval I would request be held after mid-July.

15              On that same point, your Honor, I would suggest that

16       we might well save considerable time if we could lump to-

17       gether this question of the interlocutory on the United

18       States and the Master's findings on, say, De Luz Creek,

19       because they tie pretty closely together.  De Luz Creek is

20       the only stream in this watershed that affects only the

21       United States and the land owners on it.

22              THE COURT:  Do you approve putting De Luz in?

23              MR. SACHSE:  I mean the hearing on     De Luz and the

24       findings about the same time.

25              MR. VEEDER:  I was not following what he was saying

P 19

1   until now.

2       MR. SACHSE:  The hearing on De Luz Creek findings and

3   any hearing that may have to be had on the final approval

4   of the United States' findings I think might well be held

5   together.

6       MR. VEEDER:  I will have to make an analysis of it with

7   Colonel Bowen.  I hadn't thought of that before, your Honor.

8       THE COURT:  Tell me -- I haven't checked -- these

9   Master's findings on the areas downstream from the gorge,

10  did the Master make findings on some of these diversions

11  that we talked about the other day?

12      MR. VEEDER:  Yes, he did, your Honor.

13      MR. SACHSE:  De Luz Creek, I would say -- and I think

14  Colonel Bowen will agree -- I think De Luz Creek is as good

15  as set, regardless whether we like them or not.  But the

16  work and the coverage on the watershed is nearly perfect.

17      Rainbow Creek may be only sixty per cent perfect.

18      Fallbrook Creek, I guess, is pretty close to perfect.

19      By and large, I think he has covered them below the

20  gorge.

21      THE COURT:  He has found the facts on the diversions,

22  but he has made no conclusions about them; is that it?

23      MR. SACHSE:  In some cases he has, your Honor.  For

24  instance, one client of mine has a prescriptive right to

25  divert for storage in an adjoining watershed, and he has

20

1   found a couple of others that have no formal right but he

2   has found what they are doing.  He has not drawn the con-

3   clusion that it is illegal.  He has found that there is no

4   right and tells what they do.

5       MR. VEEDER:  Are you speaking of Garnsey?

6       MR. SACHSE:  I am speaking now particularly of Atherton-

7   Butler.  As to Garnsey he found the permits that exist.  As

8   to Butler he finds that they take water out of one watershed

9   into another and store it in the lake for irrigation purposes,

10  and draws no conclusion from it.

11      MR. VEEDER:  The request, as I understand it, is that

12  we consider De Luz Creek along with suggested findings for

13  Camp Pendleton on the same hearing.  I think it is purely

14  a mechanical matter and it is all right with me.

15      THE COURT:  All right.  What I think about now, on

16  these Master's findings, in view of what occurred at the

17  time you requested an injunction, when I denied it and you

18  almost had that heart attack, Mr. Veeder --

19      MR. VEEDER:  I have a very strong heart, your Honor.

20  My boss is in the courtroom now.

21      THE COURT:  I indicated that I thought your request

22  was premature.  But if there are illegal uses in these areas,

23  this is not apportionment.  This is a matter of cataloguing

24  the rights that exist or do not exist.  I think we should

25  so find and serve these people with a copy of the findings

P 21

1   and interlocutory judgment, let them know what we are doing,

2   and give them a chance to be heard.

3        MR. VEEDER:  There has been distribution of Mr. Cranston's

4   findings.

5        MR. SACHSE:  Yes.

6        MR. VEEDER:  So they have that notice.

7        MR. SACHSE:  They have it.

8        THE COURT:  There will have to be notice of the date

9   of this hearing when we are going to consider these findings.

10   And don't forget that under the procedure that we have

11   followed the Master's findings so far have only been lodged.

12        MR. VEEDER:  That is correct.

13        THE COURT:  Because the Rules/provide once they are filed,

14   within so many days certain steps have to be taken.  So let's

15   get this organized.

16        MR. VEEDER:  I have been talking to Mr. Luddy about

17   procedure, and I think we are going to have to work out a

18   correlation between our office and the Clerk's Office so

19   that the material will be brought together in a manner so

20   that proper notices can be sent out.

21        Isn't that correct, Mr. Luddy?  You have a situation

22   where you have to send out notices when these findings are

23   filed; isn't that right?  What is your rule on that?

24        THE CLERK:  After they have been entered.

25        MR. VEEDER:  Yes.

P 22

1    THE CLERK:  Of course, the time of appeals starts to
2  run.

3    THE COURT:  You have ten days.

4    THE CLERK:  No.

5    THE COURT:  What is the rule on the Master's findings
6  after they are filed?

7    MR. GIRARD:  They are mailed out and served within ten
8  days.

9    MR. VEEDER:  You have ten days for objection, as I
10  remember.

11    MR. SACHSE:  Once they are filed, as I understand, the
12  Clerk has a duty of mailing notice within ten days that they
13  are here and set a time for hearing and objections thereto.
14  The Rules then state that unless contrary to the evidence
15  or objections are heard the Court shall approve the findings
16  of fact.  Conclusions of law are still wide open.

17    THE COURT:  Let's get that worked out and not miss the
18  boat on that.  So far all these have been lodged and not
19  filed.  Is that correct?

20    THE CLERK:  That is correct.

21    MR. SACHSE:  We had to un-file the De Luz, I think.

22    THE COURT:  How many sets do we have?

23    MR. SACHSE:  We have De Luz, Rainbow, Fallbrook.  We
24  have what the Master described --

25    MR. VEEDER:  Below the gorge.

P 23

1        MR. SACHSE:  -- as north of Fallbrook, south of the

2   River and west of Rainbow Creek.

3        THE COURT:  That is a separate one?

4        MR. SACHSE:  That is a separate one.  I don't think he

5   ever finished finding on Pechanga, did he?

6        MR. VEEDER:  No, he never did.  And on Temecula Creek

7   he made some very tentative findings and admitted there was

8   evidence enough in regard to the ownership for him to go on.

9        THE COURT:  You have four sets then?

10       MR. VEEDER:  That is right.

11       THE COURT:  Rainbow, De Luz, Fallbrook, and this

12  combination north of Fallbrook, south of the River and west

13  of Rainbow.

14       MR. VEEDER:  That is correct.

15       THE COURT:  Four sets.

16       MR. SACHSE:  That is right.

17       MR. VEEDER:  I would want to check it.

18       MR. SACHSE:  The only place south of the gorge where

19  the Master hasn't done his job is, as I understand it now,

20  this in here (indicating), isn't it, Bill?

21       MR. VEEDER:  That is correct.

22       MR. SACHSE:  There is not very much there, and I think

23  it should be a non-controversial hearing and could be

24  disposed of readily.

25       THE COURT:  We could send notices out and do it ourselves,

P 24

1    couldn't we?

2         MR. SACHSE:  Yes.

3         MR. VEEDER:  I would prefer to do it that way.  I see

4    no further reason for setting a hearing before the Master,

5    with all respect to him.

6         MR. SACHSE:  I agree.

7         THE COURT:  How big a job is it?  Are there 15 or 20

8    people in there?

9         MR. VEEDER:  I think that is correct, but I would have

10   to check it.

11        THE COURT:  Send out letters.

12        MR. VEEDER:  We will send notices.

13        THE CLERK:  The Master has a hearing set for June 5th.

14        THE COURT:  Well, we kept a continuing date.

15        THE CLERK:  Yes.

16        THE COURT:  Are we through this morning then?

17        MR. SACHSE:  I am, your Honor.

18        THE COURT:  This is off the record.

19        (Discussion off the record in regard to arrangements

20   for lunch with Mr. Ramsey Clark, the Assistant Attorney

21   General.)

22        THE COURT:  The case is continued until Tuesday morning

23   at ten o'clock.

24        (Adjournment until Tuesday, May 2nd, 1961 at 10:00 A.M.)

25                      -  -  -

P 2

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

UNITED STATES OF AMERICA,                )
                                         )
                          Plaintiff,     )
                                         )
vs.                                      )      No. 1247-SD-C
                                         )
FALLBROOK PUBLIC UTILITY DISTRICT,)
et al.,                                  )
                                         )
                          Defendants.    )
_____

## CERTIFICATE OF REPORTER

We, the undersigned, do hereby certify that we are,
and on the date herein involved, to wit:  April 28, 1961,
were duly qualified, appointed and acting official reporters
of said Court;

That as such official reporters we did correctly
report in shorthand the proceedings had upon the trial of
the above entitled case; and that we did thereafter cause
our said shorthand notes to be transcribed, and the within
and foregoing 25 pages of typewritten matter constitute a
full, true and correct transcript of our said notes.

WITNESS our hand at San Diego, California this 28th
day of April, 1961.

_John Swader_
Official Reporter

_Marie P. Zellner_
Official Reporter

JOHN SWADER, OFFICIAL REPORTER