# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

— — —

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT,
et al.,

                Defendants.

No. 1247-SD-C

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:      San Diego, California

Date:      Tuesday, June 20, 1961

Pages:    17,277 to 17,304

FILED

SEP 24 19 3

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____

JOHN SWADER
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

VOLUME 154

17,277

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,    )
                             )
                Plaintiff,   )
                             )
vs.                          )     No. 1247-SD-C
                             )
FALLBROOK PUBLIC UTILITY     )
DISTRICT, et al.,            )
                             )
                Defendants.  )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California

Tuesday, June 20, 1961

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | WILLIAM H. VEEDER, ESQ., Special Assistant to the Attorney General. |
| | CDR. DONALD W. REDD. |
| For the Defendants: | |
| Vail Company | GEORGE STAHLMAN, ESQ., |
| State of California | FRED GIRARD, ESQ. |
| Roripaugh, et al. | BEST, BEST & KRIEGER By: JAMES KRIEGER, ESQ. |

17,277-A

t-16

# I N D E X

| Plaintiff's Witness | D | X | R-D | R-C |
|---|---|---|---|---|
| Col. Allen C. Bowen | 17,280 | | | |

# E X H I B I T S

| Plaintiff's Exhibits | Identified | Received |
|---|---|---|
| 207-E (Addition) | | 17,278 |
| 291 - Engineering Report - Occidental College | 17,279 | 17,280 |

17,278

SAN DIEGO, CALIFORNIA, TUESDAY, JUNE 20, 1961, 10:00 A.M.

- - -

(Other cases called.)

THE COURT:  The Fallbrook case, on trial.

MR. VEEDER:  I would like to file some letters we have received from landowners.  These letters were sent out in connection with the Temecula Creek area, and they should be, with your Honor's approval, made a part of Exhibit 207-E.

THE COURT:  They will be made a part of that exhibit.

(The documents referred to were  )
(received in evidence and made a  )
(part of Plaintiff's Exhibit 207-E.)

MR. VEEDER:  I contacted, your Honor, the successors in interest of Occidental College, and prepared for your Honor's signature a letter to Mr. Albert Spiegel.  Your Honor stated you had added a postscript to the letter suggesting that Mr. Spiegel be here available, but I have not been contacted by him.

THE COURT:  In that respect, yesterday I received a call from Franz Sachse's brother-in-law, who is in the real estate business in Fallbrook.  Do you know his name?

MR. STAHLMAN:  Wayman.

THE COURT:  What is it?

MR. STAHLMAN:  Wayman.

THE COURT:  He apparently handled the sale of this ranch to Spiegel and his associate.  Spiegel or his associate, one

t-3

1    of them, had called Wayman and wanted to know about being

2    down here, and what this document was that he had received,

3    and so forth.

4         He wanted to know if there was a survey made by the

5    Water Resources Board, and who handled it, and I said there

6    was, and Wayman said they had seen that before they bought the

7    property.  He wanted to know whether they had to be here.

8         I said they could either be here or not, but I proposed

9    to make some disposition of this matter if they did not come,

10    or if they did not ask for the right to appear at a later

11    date.  I have heard nothing further from them.

12         MR. VEEDER:  Then I would offer in evidence at this time

13    the engineering report, and I would like to call Colonel

14    Bowen to the stand for the purpose of identifying it and

15    making it a part of the record.

16         THE CLERK:  It will be Exhibit 291.

17         THE COURT:  291 identified.

18                              (Thereupon the document referred  )
                              (to was marked Plaintiff's Exhibit)
19                              (291, for identification.         )

20

21                        COLONEL ALLEN C. BOWEN

22    recalled as a witness on behalf of the plaintiff, having been

23    previously duly sworn, testified further as follows:

24

25

t-4

DIRECT EXAMINATION

BY MR. VEEDER:

Q   Colonel Bowen, I hand you the identification here, which has been marked 291, and ask you to state into the record the content of that exhibit.

A   Plaintiff's Exhibit 291, for identification, is a report, an engineering report, on the property formerly owned by Occidental College in the vicinity of Sage, California.

Q   And under whose direction was the engineering report prepared?

A   Under mine.

Q   Is the data contained in it correct to your personal knowledge, Colonel?

A   Yes, sir.

MR. VEEDER:  We offer in evidence the exhibit marked for identification 291.

THE COURT:  291 received in evidence.

(Thereupon the document previously)
(identified as Plaintiff's Exhibit)
(291, for identification, was      )
(received in evidence.             )

THE COURT:  Now, what was this talk about the reservoirs? Is that covered there?

BY MR. VEEDER:

Q   Colonel Bowen, would you state into the record and describe into the record the reservoirs and the means of water

t-5

1   use that are reported in the engineering report?

2       A   Beginning on Page 11, and completed on Page 12 of

3   Plaintiff's Exhibit 291 is a description of the wells and

4   storage reservoirs on this property.

5       The reservoir is described on Page 12 as located about

6   1300 feet south of the residence.  It is formed by earthen

7   dams on Tucalota Creek, with a spillway lined with concrete

8   and masonry.  It has a capacity of approximately ten acre

9   feet.

10       Q   Colonel, for the benefit of Mr. Krieger, would you

11   state into the record the location of that?

12       A   The property?

13   MR. VEEDER:  Yes.

14   MR. KRIEGER:  Show us on here (Indicating blackboard.)

15   MR. VEEDER:  May we move this other blackboard, your

16   Honor?

17   THE COURT:  Yes, you may.

b fls   18

19

20

21

22

23

24

25

P 1

1    MR. VEEDER:  You are now looking at Exhibit 15; is that

2    correct, Colonel Bowen?

3    THE WITNESS:  Referring to Plaintiff's Exhibit 15, the

4    property described in Plaintiff's Exhibit 291 is situated in

5    the area of younger alluvium and basement complex just below

6    Willow Canyon.  The property comprises about 1544 acres.

7    THE COURT:  The reservoir is so constructed that it lays

8    across the channel of Tucalota Creek and it collects therefore

9    the runoff in winter behind the reservoir?

10    THE WITNESS:  Yes, your Honor.

11    MR. VEEDER:  They claim a storage right in their pleadings,

12    your Honor, in that connection.

13    MR. GIRARD:  Do you have any information as to how long

14    they store, Colonel Bowen?

15    THE WITNESS:  No, I have none.

16    MR. GIRARD:  Do you have any information as to what land

17    is irrigated from that reservoir?

18    THE WITNESS:  No, I have no information of the history of

19    irrigation on that property.

20    THE COURT:  The spillway is all that is paved with concrete

21    and masonry, and lying over the bed of the stream is a dirt

22    dam.  It probably lies in an area of younger alluvium or older

23    alluvium.  The dam doesn't lay on basement complex, does it?

24    THE WITNESS:  No, your Honor; it is on younger alluvium.

25    THE COURT:  The dam does not take all of the water.  It

P 2

1    couldn't prevent the loss downstream.  I am prepared to find

2    that they have no prescriptive right.  And if the dam is used

3    on a seasonal basis, it is not a proper dam.  If it is used

4    to store water for irrigation, it would be proper; but I can't

5    imagine that -- the runoff up there in the dry season, the

6    irrigation season.

7         MR. VEEDER:  That is all the data we have on this, your

8    Honor.  I wanted to get it in because I think it is reflective.

9         THE COURT:  I find that they have no prescriptive right

10   and apparently no State permit for the dam, and let it go at

11   that.

12        THE WITNESS:  The report is based on surveys made in March

13   1960.

14        THE COURT:  Any objection to those proposed findings?

15        MR. VEEDER:  I think that is all the evidence will support,

16   your Honor.

17        THE COURT:  All right.

18        Here is your survey, Mr. Veeder.

19        What is next?

20        MR. VEEDER:  Your Honor, I have delivered to your Honor

21   revised copies of the Sandia findings together with the attach-

22   ments.  I gave to your law clerk the colored copies of Exhibit

23   69, which is incorporated by reference.

24        THE COURT:  Yes.  That is the only attachment that was

25   missing, is it not?

P 3

1    MR. VEEDER:  Yes, your Honor.

2    THE COURT:  Then I take it that the Sandia Creek findings

3    are ready to be signed?

4    MR. GIRARD:  Your Honor, I just got them this morning and

5    I haven't looked at them.  I am sure they will be, but I would

6    like to look at them.

7    MR. STAHLMAN:  Something has to be corrected here, I

8    think.

9    THE COURT:  Where?

10   MR. STAHLMAN:  On Vail Company the attached Exhibit 212-B,

11   which is Exhibit A attached to the findings, the description

12   of the land under Parcel 3 is not the description of the land

13   that Vail Company owns on the Sandia Creek area.  Now we have

14   back in the Exhibit B, which is Vail Company land, the correct

15   description.

16   THE COURT:  First, I don't know what you are talking about.

17   You say Exhibit A.  Page 19 here?

18   MR. STAHLMAN:  If I could show your Honor here on Exhibit

19   A.  This description here, which says "Vail Company, owner."

20   THE COURT:  That is shown at the bottom of page 2.

21   MR. STAHLMAN:  Of Exhibit A.  Then reference is made in

22   the findings to Vail Company land on Exhibit B.  If this were

23   crossed off and the description were in reference to Exhibit

24   69, as shown on Exhibit 69, you would have the description.

25   MR. VEEDER:  Let me review that with Mr. Stahlman at the

P 4

1  recess, your Honor.  He didn't bring this to my attention, and

2  I don't know what it is.

3          MR. STAHLMAN:  I just caught it this morning, Bill.

4          THE COURT:  Isn't there a different category of the land

5  on A and the other lands?

6          MR. VEEDER:  I would have to look, your Honor, to be sure.

7          THE COURT:  Will you check that over?

8          MR. VEEDER:  Yes.

9          MR. STAHLMAN:  I think we merely take the land --

10          MR. VEEDER:  Why don't you and I talk about it at the

11  recess and straighten it out?

12          THE COURT:  Have you had a chance to look at them yet,

13  Mr. Krieger?  You are not concerned --

14          MR. KRIEGER:  I am not concerned with those, your Honor.

15          THE COURT:  Mr. Girard?

16          MR. GIRARD:  I am just glancing at/them and they appear to

17  take care of all the corrections I had noted.

18          THE COURT:  Please look at them.

19          MR. STAHLMAN:  On page 1, the description there, Santa

20  Rosa Grant, line 21, southern boundaries of Santa Rosa Grant

21  near boundary between Townships 3 and 4 West, that is not the

22  description.  There may be a projected section there, but there

23  is no section that hasn't been surveyed.

24          MR. VEEDER:  That was the description that has been on

25  there all the way along.  If that should be "projected," we

P 5

1   write in "projected."

2   MR. STAHLMAN:  We can check those out.

3   MR. GIRARD:  As to Diamond and Domenigoni Valley, I

4   believe I took Mr. Sachse's finding of fact and conclusions

5   of law.  And forwarded counsel a complete set concerning that

6   area.

7   THE COURT:  What did you do with them?

8   MR. GIRARD:  I sent them to you, the Clerk and counsel.

9   THE COURT:  When?

10   MR. GIRARD:  Last week.

11   MR. STAHLMAN:  I have them.

12   MR. GIRARD:  Returning your copies of the maps, et cetera,

13   that you gave me.  They were attached to the ones I sent

14   regarding Murrieta.

15   THE COURT:  Did you send mine separately from the Clerk's?

16   MR. GIRARD:  I sent the Clerk's only with an accompanying

17   letter.  I can read you the letter.

18   THE COURT:  I didn't see them.

19   Mr. Clerk, as soon as we adjourn you may go down.

20   To go back to the first page, this statement "The Creek

21   has its head waters in the Santa Rosa Grant approximately five

22   miles north of the southern boundary of the Santa Rosa Grant

23   and near the boundary line between Townships 3 and 4 West,"

24   the boundary line is the boundary line of the watershed, I

25   take it, from looking at the map.  I think it is near the

1      boundary line of the watershed -- at least up at the top on

2      the map.

3          MR. STAHLMAN:  That is not a township, however.  Between

4      Range 4 and Range 3 is what it is.

5          THE COURT:  Well, you gentlemen talk it over.

6          MR. STAHLMAN:  Ranges 3 and 4, as shown on this map, is

7      what he is referring to, not the Township.

8          THE COURT:  What happened to the findings on the ground

9      water unit?

10         MR. GIRARD:  I sent down a complete draft of Murrieta-

11     Temecula ground water area, also of the Anza and Coahuila, and

12     also one on Diamond and Domenigoni Valley.  Mr. Luddy says he

13     thinks they are down there now.  They got here today or yester-

14     day.  Counsel, I think, all received them.

15         MR. VEEDER:  May Colonel Bowen be excused, your Honor.

16         THE COURT:  Yes, you may step down, Colonel Bowen.

17     We can find them and look them over.

18     Have you looked at the proposed findings that Mr. Veeder

19     prepared for the Tucalota Creek watershed, basement complex

20     area?

21         MR. GIRARD:  I have looked at them, yes, your Honor.  I

22     might state I am generally in accord with them, but I think we

23     are going to have to change the language a little bit to make

24     sure these people are not quieting title to every right  they

25     may have on surface flows even though they are not on the stream.

p. 7

17 288

1    THE COURT:  Have you got the revised set?

2    MR. GIRARD:  I presume I have the latest set.  Mr. Veeder

3  gave it to me.

4    MR. VEEDER:  You have the latest.

5    MR. KRIEGER:  I just received my copy this morning.  I

6  would like to look at them.

7    THE COURT:  Well, he submitted a set to me.  I made some

8  suggestions.  He incorporated the suggestions.  Hence, yesterday,

9  I guess, he got the revised set and it was too late to hand them

10  out.

11    What language are you looking at?  Or would you rather

12  look at them at your leisure and talk about them later this

13  morning?

14    MR. GIRARD:  I think we can do that.  I am sure I agree

15  with what Mr. Veeder is trying to do, and I don't think he

16  basically disagrees with me.

17    THE COURT:  We tried to quiet title in cases of people in

18  ground water that is vagrant, local and percolating against

19  all people claiming water in the stream system.  We tried to

20  quiet title to all persons interested in the stream system as

21  to that water against these owners.  We tried to make it clear

22  that we were not adjudging their rights between themselves.

23    MR. KRIEGER:  And what of their rights in the surface flow?

24    MR. VEEDER:  These are lands, as nearly as I can determine

25  from the record in the case, which have no surface stream

P 8

1  connection with Tucalota Creek.  In other words, we find from

2  the U.S.G.S. maps and the other data from Colonel Bowen's

3  office that there are no well defined channels on these lands.

4  It would be surface water, it would be sheet water, if any,

5  on those lands.  I think the simple way of doing it is what

6  we have proposed, namely, if they do not abut lands, if they

7  do not traverse, if they do not overly any of the waters of

8  Tucalota Creek and Santa Margarita River, then I think they

9  can go out, they can be adjudged as having no claim.

10      THE COURT:  If there is no well defined channel in the

11  stream, there is not much they could do about rain water that

12  came down.  Although it would be a simple matter to insert a

13  line that surface water is part of the stream system.  Is it

14  part of the stream system if there is no well defined channel?

15      MR. VEEDER:  I have been of the opinion that if there is

16  no well defined channel the waters are not open to appropriation.

17  But if a man can control them on his land, for example, by

18  contour plowing, he is entitled to do that.  I don't know how

19  California feels about that, but I think that is the law.

20      THE COURT:  How can you say there is no well defined

21  channel?  Take the mesa up near the divide on Pendleton, that

22  flat land that slopes down.  I am talking about the North Mesa.

23  But in most of these places there is at least a ditch or a

24  gully that leads the rain water off into some bigger ditch or

25  gully and eventually into some stream.

P 9

1      MR. VEEDER:  Any tract of land that I have found that

2  was on the U.S.G.S. maps and on Colonel Bowen's map, that is,

3  206-C, the map delineating the exterior boundaries of these

4  parcels, if there was no stream as shown on those maps we went

5  on the basis that there was no well defined channel on the

6  property.  I would feel more secure perhaps if we did say if

7  there are any surface waters on these lands --

8      THE COURT:  Who would complain if we said the surface

9  waters were part of the stream system?

10      MR. GIRARD:  I think you should say it.

11      MR. KRIEGER:  I think so, too.

C fls.  12

t-6
c

1    THE COURT:  And not be too technical about well defined

2    channels in this area.

3    MR. VEEDER: That would suit me, your Honor.  There is one

4    thing I would like.  I would like to have a means of handling

5    these people by writing them a letter, and I have given

6    counsel copies of the suggested letter.

7    THE COURT:  All right.  Then I suggest that we look over

8    this material that was sent down.  I have just gotten copies

9    of it, and then I suggest that we come in before noon and

10   talk a little further about it.

11   MR. KRIEGER:  Can we talk about the Murrieta-Temecula

12   findings, too, sometime this morning, your Honor?

13   THE COURT:  Yes, particularly while you are here.  Did

14   they come down?

15   MR. KRIEGER:  Yes.

16   MR. GIRARD:  They were sent down.  I don't know whether

17   they reached here.

18   THE COURT:  Have you seen them?

19   MR. KRIEGER:  Yes, I have, and I have some suggestions on

20   them.  I have gone over them with Mr. Girard.  I think they are

21   acceptable to him, and I would like to go over them with Mr.

22   Veeder and Mr. Stahlman.  I can review those right now, if you

23   like.

24   THE COURT:  You have sent me back Hamilton's A?

25   MR. GIRARD:  Yes, your Honor.

t-7

1    THE COURT:  This is not mine.

2    MR. GIRARD:  Maybe it is a part of the record.

3    THE COURT:  No, it is not the exhibit.  Did I let you

4 have mine?

5    MR. VEEDER:  As I recall, you did, your Honor.

6    MR. GIRARD:  Maybe it is mine.  It is not my writing.

7    THE COURT:  I have mine here, so whose it is, I don't

8 know.

9    (The document referred to was handed to Mr. Girard.)

10    THE COURT:  What suggestions do you have on this basin,

11 Mr. Krieger?  What is your problem?

12    MR. KRIEGER:  First, my first comment on the proposed

13 findings is on Page 10, Paragraph XVIII, where there is an

14 effort to describe the lands outside the ground water area,

15 and we have omitted from that the other types of soil.  We

16 have basement complex or weathered basement complex, and we

17 should also cover the  older alluvium to the extent that it

18 is outside the boundaries of the ground water area.

19    I think that could best be accomplished by saying:

20    "That all ground waters found within areas other

21    than those shown as younger alluvium as depicted on

22    U. S. Exhibits 15E and 15L do not add to," and so forth.

23    In other words, the definition is not quite broad

24 enough, and I also think that it ought to be tied in directly--

25 that that finding should be tied in directly with Exhibit 277.

t-8

THE COURT:   277 is what?

MR. GIRARD:   That is the Bowen line exhibit.   I think Mr. Krieger is correct.

THE COURT:   Then we will pass it now, because I want to read it over, and then we can talk more about it.

Now, what is your next point?

MR. KRIEGER:   The next point is as to the next finding. I was curious if we were actually going to prepare an exhibit of the riparian land.   I didn't think that we were.   I thought we were preparing an exhibit stating both the overlying and riparian lands.

MR. VEEDER:   I think in that regard I can also talk for Mr. Stahlman on the point, that I think we should trace the several streams and refer to the lands that abut upon and are traversed by them, and are riparian to Santa Gertrudis, Murrieta, Warm Springs Creek, and Temecula Creek, so that you would have a description of your riparian land, and a description of your overlying land.

MR. GIRARD:   And they are not going to be the same.

MR. VEEDER:   No.

MR. KRIEGER:   That is going to be quite an assignment, to describe the riparian lands, is it not?

MR. VEEDER:   It is an assignment, but we are undertaking it.   I don't believe that you can do otherwise.

MR. STAHLMAN:   It would have to be done.

MR. VEEDER:  Then you trace on Murrieta Creek from the top of the watershed on down, and I am sure that the Vail Company is going to want to have a description, or I would assume they would want it --

MR. STAHLMAN:  I have already written it.

MR. VEEDER:  -- as to Temecula Creek, Santa Gertrudis, and Warm Springs.  I would think that you would.

Go ahead.

MR. KRIEGER:  Is that within the area or outside of it?

MR. STAHLMAN:  Within the area.

MR. VEEDER:  It is within the area.

MR. KRIEGER:  Of course, there is no objection if you want to do it.  And, of course, we would want to see it, and I think we would have to review it pretty carefully.

MR. VEEDER:  Yes.

MR. STAHLMAN:  You are part in and part out.

MR. KRIEGER:  Yes.

THE COURT:  What other points do you have?

MR. KRIEGER:  The other points are somewhat along the same lines.  I think there is a finding on the right of certain of those lands that describe the ground water area line to use it on the other side of the line, but there is no finding of fact for that conclusion of law, and I have drafted one here which I think may do:

"All lands listed and described"in an exhibit which

1    I think we can prepare,

2         "overlie in part the ground water area, are in one

3         ownership, are within the smallest tract of land located

4         therein, and are entitled to use water from the ground

5         water area."

6         That is the problem that I have brought up here from time

7    to time, thinking mostly at the moment of Murrieta Hot

8    Springs.

9         THE COURT:   I thought we had this in here.

10        MR. KRIEGER:   We do not have it in as a finding of fact.

11   We have it as a conclusion of law, and I think it is important,

12   and Mr. Girard suggested that we put it in in the form of an

13   exhibit, and that we define the lands that are so situated.

14        MR. VEEDER:   I am very much in favor of it, because I

15   think we have the situation on both sides of the ground water

16   area.

17        MR. KRIEGER:   I think we do, yes.  I said I would pre-

18   pare it, but I think you ought to prepare it, with your vast

19   resources of information here, Mr. Veeder, and with Colonel

20   Bowen here.

21        MR. VEEDER:   All right.  I would rather do it, frankly,

22   than review someone else's work.

23        THE COURT:   What other suggestions do you have?

24        MR. KRIEGER:   Then in the conclusions of law the same

25   points that we have just been making now are the ones that

1   would have to be adjusted, that is, taking into account the

2   other types of soils outside the area, for one thing, and,

3   apparently, if we have two sets of exhibits, we will have one

4   of the overlying landowners, Mr. Veeder, and one of the

5   riparian owners within the area; is that right?

6         MR. VEEDER:  And then there will be the combination.

7         MR. KRIEGER:  And then there will be a combination of

8   the two?

9         MR. VEEDER:  Your client, for example, Lincoln up there,

10   if he is still your client and if he still owns land up

11   there, if I recall correctly, and certainly Roripaugh, are

12   riparian to Murrieta Creek and also overlie the basin, so I

13   think you have three categories there.

14         THE COURT:  Wouldn't that be merely a duplication, and

15   that there would be no harm in putting it under the riparian

16   category and also in the overlying category?

17         MR. VEEDER:  I think your Honor is right.  I think that

18   would be simpler.

19         THE COURT:  Any other suggestions on this?

20         MR. KRIEGER:  On Conclusion No. VII I have a suggestion.

21         MR. VEEDER:  Just a moment.  May I ask one question?

22   What do you consider to be the California rule of law in

23   regard to the exportation of water from an overlying tract of

24   land to an adjacent parcel of land, assuming that it is in the

25   same chain of title?

t-12

1    MR. KRIEGER:  Within the watershed?

2    MR. VEEDER:  Oh, yes, within the watershed.  I have been

3  looking at that law, and spent several days reviewing it, and

4  I don't find that it has ever been ruled upon.

5    MR. KRIEGER:  You mean whether it is an appropriation or

6  not?

7    MR. STAHLMAN:  No, not an appropriation.

8    MR. GIRARD:  Whether it is a proper overlying use?

9    MR. VEEDER: Whether it is an overlying use or whether it

10  is an appropriation.

11    MR. KRIEGER:  That is your question.

12    MR. VEEDER:  Certainly, in Pasadena vs. Alhambra, the

13  principles there would apply here, as I see it.

14    MR. KRIEGER:  I think you are right, that it has not been

15  ruled upon, and I also think it is not a problem of the State

16  Water Rights Board.  It is simply a problem to be covered by

17  judicial decision, and I would suppose offhand you would have

18  a difficult time in stopping anybody from taking it from one

19  parcel over to another parcel of land if it were over the same

20  ground water basin, although I will have to agree with you,

21  Bill, it has not been ruled upon.

22    MR. STAHLMAN:  Also, you have lakes in a similar

23  situation, that is, you have riparian rights in lakes, and I

24  think you would have the same problem, although there are some

25  cases on that.

17,298

t-13

1   MR. VEEDER: Some of them come close. I think the

2   Riverside case does.

3   THE COURT: Now, what was your suggestion on VII?

4   MR. KRIEGER: On No. VII I was going to suggest that when

5   we take the rights of some of these upstream users, if we

6   speak of the rights correlative with upstream users, we define

7   who those upstream users are, and perhaps not in as broad

8   language as this language which is my language "contribute or

9   add to the ground waters," but, rather, define those as

10   depicted on 15L and 15E as younger alluvium lands upstream

11   from the ground water area, so that we will know exactly what

12   we are talking about rather than to leave it open as to those

13   which add or contribute to.

14   Then in Paragraph VIII I am a little worried about the

15   word "abstractly". I think that is a word that ought to

16   come out, because I think this speaks for itself.

17   THE COURT: You did not favor us with your presence when

18   we struggled over this, and you have given us some suggestions,

19   but we were pretty well content with this. We started out

20   with the abstract term of "correlative", and then tried to

21   say what we meant by "correlative."

22   You think the word "abstractly" should come out?

23   MR. KRIEGER: It just struck me very hard when I looked

24   at it, because it seems to me it is somewhat an admission of

25   failure in saying what you mean.

t-14

THE COURT:  We will look at it again.  Now, what is another suggestion?

MR. KRIEGER:  Then on the next page under Finding No. VIII --

MR. VEEDER:  On Page 14?

MR. KRIEGER:  Yes.  In the second full paragraph I think we ought to add at least two more specifics to that general phraseology, the need for water and the acreage.

I think those two things ought to be added to the list of things which define the correlative right.  Those are two important factors.

Then I had one more.  At the end of that very same paragraph I didn't quite understand what the word "gradient" means at the end of that paragraph.

THE COURT:  What was meant was -- and we may not have done it right, and maybe it was mixed up in the copy -- upstream or downstream, or upgradient or downgradient.  That is what we were talking about --

MR. KRIEGER:  Oh, I see.

THE COURT:  -- because of the fact that the evidence shows that within this ground water area there is a water gradient, and some people are down gradient and some are up gradient from the water.

MR. KRIEGER:  I think those terms that you used would be more expressive.

17,300

t-15

1    THE COURT:   I think that is what we intended to say.   It

2   may be a matter of wording.

3    Go ahead.   What else?

4    MR. KRIEGER:   Then going to the interlocutory judgment,

5   the same things follow all the way through that I mentioned

6   earlier.   They can be readily inserted if we agree in principle

7   that they should be included.

8    THE COURT:   Then look over the materials that have been

9   handed you, and I would suggest that you give attention first

10   to Mr. Krieger's suggestions, because I have got the Grocers

11   case coming back in this afternoon; and while you gentlemen

12   can continue to work here, I would like to have you work on

13   this, and I can take some time out, if necessary, to talk to

14   you about it.

15    MR. KRIEGER:   And you want us to be back here?

16    THE COURT:   I have a notion just to continue this case

17   from day to day, and put you in a room here and put you to

18   work.   We don't get anything done here unless we have Mr.

19   Veeder here, and have Mr. Girard here, and many things can

20   happen.

21    MR. VEEDER:   I am here, and my office is available.   I

22   was hopeful we could go in there and continue to work for,

23   certainly, the balance of the week.

24    THE COURT: All right.   Get started, gentlemen, and I

25   will be in my chambers.

     (Whereupon, at 11:00 o'clock a.m., a recess was taken.)

MARIE G. ZELLNER, OFFICIAL REPORTER

P 10

<u>SAN DIEGO, CALIFORNIA, Tuesday, June 20, 1961, 2:00 P. M.</u>

THE CLERK:  6-1247-SD-C United States vs. Fallbrook.

MR. VEEDER:  Do you want to read, Fred, what you have worked out on this page 4?

MR. GIRARD:  Yes, I thought I would start on the record right now with the first change, which is on page 4.

THE COURT:  We are talking about the Murrieta-Temecula?

MR. GIRARD:  Murrieta-Temecula only, Judge Carter.  And this has to do with the objections that Mr. Veeder had raised concerning the language commencing at line 9 on page 4.  This is agreeable to me and I believe to Mr. Krieger also.  It is suggested that you would strike out lines 10, 11 and 12 down to the word "that" and then commence at "the ground waters," and I will read it as we have changed it:  "The ground waters within said area move in distinct and not identical directions," and add here "so that a ground water divide results and there is a considerable variance of the physical continuity of ground waters than that which exist in the ordinary basin."  Mr. Kunkel tells me that that is essentially correct so far as the ground water divide is concerned.

MR. VEEDER:  Why do we have that "exist in the ordinary basin"?

MR. GIRARD:  That is to distinguish a ground water area from a ground water basin.

MR. VEEDER:  I would interpose an objection to any

P 11   1   statement that this varies from a ground water basin.

2   THE COURT:  I have overruled that before, and I will

3   overrule it again.  So that takes care of that.

4   Are the rest of you satisfied with the amendment?

5   MR. KRIEGER:  This is fine.

6   THE COURT:  What is the next one?

7   MR. GIRARD:  The next change is the one you raised on

8   page 5, line 22.  Strike the word "which" at the end of the

9   line, substitute the word "of," and then strike out the word

10   "underlie" on line 23.

11   THE COURT:  Unless I hear some objection, you are all in

12   agreement.

13   What is the next one?

14   MR. GIRARD:  Next is on Finding XII, on page 8, commencing

15   on line 13.  It reads "that ground water contours extend in a

16   general southeast-northwest direction".  Strike out --

17   THE COURT:  The word "moves".

18   MR. GIRARD:  You can strike a little bit more -- oh, I

19   see, yes, that's right -- "the ground water contours," so that

20   it would read "the ground water contours in said ground water

21   area "--

22   THE COURT:  Wait a minute.

23   MR. GIRARD:  I think you are wrong, Judge.  I think it

24   should read "ground water contours of said ground water area

25   extend in a general northeast-southwest direction".

P 12

1    THE COURT:  Yes, strike out "show that water moves".

2    MR. GIRARD:  Yes.

3    On the same page, at line 25, substitute 12 for 7.

4    THE COURT:  Yes.

5    MR. GIRARD:  Over on page 10, Finding XVIII, the finding

6  would read as follows:  "that all ground waters found within

7  areas of older alluvium," add "of older alluvium or of basement

8  complex --

9    THE COURT:  "and of." All right.

10    MR. GIRARD:  Older alluvium.

11    THE COURT:  "or" is all right.

12    MR. GIRARD:  ". . or of basement complex or weathered

13  basement complex as depicted on U. S. Exhibits 15-E and 15-L,"

14  and then insert "and outside the ground water area as shown on

15  Exhibit 277 --

16    THE COURT:  Yes.

17    MR. GIRARD:  --"do not add to, support", et cetera.

18    MR. VEEDER:  I want to interpose an objection to the use

19  of the words -- I'll start again.  On Finding XVII, page 10,

20  it is stated that except as may be expressly found to the

21  contrary in other findings in this case , all uses of surface

22  water and all uses of ground waters within      older and

23  younger alluvium as depicted on U.S. Exhibit 15L/ are, in their

24  character, reasonable." I would like to see "in their character

25  reasonable" taken out.  I don't believe it lends anything.  I

P 13

1    think when we say their uses are beneficial it embraces the

2    whole thing.

3        THE COURT:  We were using it to distinguish between

4    "reasonable" and "amount."  Therefore, say "reasonable in

5    character".

E fls.

5-18
E

1          MR. GIRARD:  The next paragraph makes no question at all

2     that the amount is not --

3          THE COURT:  Your objection is overruled.  Now, what is the

4     next one?

5          MR. GIRARD:  The next one would go to the conclusions of

6     law.

7          MR. KRIEGER:  No.

8          MR. GIRARD:  Oh, no, there would be one added, and I am

9     not sure exactly where you would insert it.

10          MR. KRIEGER:  Why not at the end of the findings?  It

11     goes there as well as any place, I think.

12          MR. GIRARD:  All right.  This covers the problem of

13     where land is overlying that portion of the ground water area

14     and the smaller part is in one chain of title.  It would

15     read:

16          "All lands listed and described on Exhibit _____"

17     -- and there is going to be an exhibit prepared by Colonel

18     Bowen's staff --

19          "overlie a part of the ground water area, are in

20          one ownership, are within the smallest tract of land

21          held within a chain of title, are within the Santa

22          Margarita River watershed, and are entitled to use

23          water from the ground water area."

24          THE COURT:  Is this my copy?

25          MR. GIRARD:  I added one phrase there myself.

t-19

1      THE COURT:  All right.

2      MR. GIRARD:  And that is "are within the Santa Margarita

3   River watershed".

4      THE COURT:  Any objection to that?

5      MR. VEEDER:  We reserve the right, of course, to

6   determine what is riparian, and, as I understand it, we have

7   that right at any time down to the final decree.

8      MR. GIRARD:  In other words, if I understand you, it is

9   whether or not some land actually meets the test of being

10   riparian or --

11      MR. VEEDER:  Or overlying.

12      MR. GIRARD:  Or overlying.  What do we mean by

13   "overlying"? Just physically overlying, or has been severed?

14      MR. VEEDER:  For example, up there at Murrieta Hot

15   Springs, the property up there, if we find there has been

16   a severance of those lands, so that they are not deranged

17   from the same patents, then it would not be applicable.

18      MR. GIRARD:  But you did not mean to change the land

19   status?

20      MR. VEEDER:  We will want to interpose objections, so

21   that will be saved.

22      MR. KRIEGER:  If they do not come within, we will be

23   prepared to argue that, too.  We will prepare a list of all of

24   the properties, and we will attempt to agree upon them, and

25   then make it final.

t-20

THE COURT:  But this is the understanding we have had all along as to riparian land and as to the overlying land, and if someone has been put in the position where he has two pieces and the chain of title so shows it, that property should not be listed in that exhibit.

MR. KRIEGER:  That is right, and if it is not listed, I will at that time have to come in and make the argument that that line be changed to include Murrieta Hot Springs, because I would not want that to be severed.

MR. VEEDER:  And let's add the words "All parcels of land," and so on.

THE COURT: All right.

MR. GIRARD:  The next one would be Conclusion of Law I. That would conform to the change made in Finding X, I believe, -- no, Finding XVIII.

THE COURT:  Finding XVIII, yes.

MR. GIRARD:  So it would read:

"That all ground waters which are located within the areas depicted as being of older alluvium or of basement complex" and so forth, and after the words "Exhibit 15L" on Line 1 of Page 12 insert "and outside the ground water area as shown on Exhibit 277."

THE COURT:  All right.  What is the next one?

MR. GIRARD:  The next one is on Page 13, Conclusion VII. This will read now as follows:

17,308

t-21

1      "The rights of all owners of overlying lands

2   depicted on U. S. Exhibit 277, within the boundaries

3   as described in Exhibit 277-A . . ."

4   Will that do it, Colonel Bowen?  Do you recall that?

5   THE COURT:  That will do it.

6   MR. GIRARD:  (Continuing):

7      "and the rights of all owners of riparian land as

8   set forth and described in Exhibit _____ are

9   correlative to each other and correlative to the

10   rights of owners of all riparian and lands" --

11   insert "lands" after the word "and" --  "overlying" -- cross

12   out the word "lands" and substitute the word "alluvium up-

13   stream" and then cross out Lines 13, 14, 15, 16 through the

14   word "thereto," so that it would read, "as the same may be

15   found by this Court in other findings of fact affecting

16   such upstream area to be a part of or contribute to the

17   Santa Margarita River stream system."

18   THE COURT: All right.

19   MR. GIRARD:  Then on Page 13, Conclusion of Law VIII.

20   THE COURT:  Now, you are going to correct that second

21   paragraph, aren't you?

22   MR. GIRARD:  Oh, yes, that is right.  It would read:

23      "That the rights of such overlying or riparian

24   owners within said ground water area are correlative to"

25   and so forth.

17,309

t-22

1    THE COURT:  All right.

2    MR. GIRARD:   In Conclusion of Law VIII strike out the

3  word "abstractly."

4    THE COURT:  All right.
     MR. GIRARD:
5    Then going over to Page 14 delete lines 6 through 13.

6    On the judgment part, the first paragraph:

7        "IT IS HEREBY ORDERED, ADJUDGED AND DECREED that all

8    ground waters which are located within the areas of

9    older alluvium" and then make exactly the same change

10  as was made in Finding X, and so forth.

11    THE COURT:  Yes.

12    MR. GIRARD:  Then on Line 10 on Page 15 cross out the

13  word "a", the next to the last word in the line, and substitute

14  "the", so that it will read, "and therein found to be

15  riparian to the surface stream", and insert the word

16  "described," so that it is clear that the riparian right is

17  as to the stream described in the exhibit.

18    Then, as I understand it, that will say that these lands

19  are riparian to Tucalota Creek, or a specific creek.

20    MR. VEEDER:  That is correct.

21    MR. GIRARD:  The only other change will be that I will

22  have to draft up a judgment provision specifically

23  incorporating the language similar to the conclusions of law

24  in regard to the correlative rights, and, also, --

25    THE COURT:  By that you mean the judgment that the

t-23

1     riparian and overlying rights are correlative?

2        MR. GIRARD:  Are correlative, and also prepare a

3     provision quieting title of downstream people as to the

4     percolating waters, and vice versa.

5        THE COURT:  I think you can use the paragraph in the

6     judgment that Mr. Veeder worked on.  Have you looked that

7     over?

8        MR. GIRARD:  I have looked at that, yes.  So far as

9     the quiet title provision is concerned, I do not have so much

10     objection, but I do have some comments.  Not so much

11     objection as to form.

12        THE COURT: Now, who will revise this?  Will you do that?

13        MR. GIRARD:  I will do that.

14        THE COURT:  Are there any other comments on this judgment?

15        MR. KRIEGER:  I would like to make just one comment, if

16     I could, and that is as to whether we ought to have a finding

17     and conclusion of law that would address itself to

18     supplemental waters that may come into this area.

19        THE COURT:  Let's cross that bridge when we come to it.

20        MR. KRIEGER:  I am just thinking, your Honor, there

21     might be some inference that we are reaching at those waters,

22     when they are not being covered by this litigation.  I am

23     thinking of a saving clause.

24        THE COURT:  We have had no proof on it.  It would be a

25     changed condition.

t-24

1    MR. KRIEGER:  It would be a changed condition.

2    THE COURT:  And, therefore, it is subject to reconsidera-

3    tion.

4    MR. KRIEGER:  I am particularly concerned in regard to

5    the Tucalota findings, where we are quit claiming rights back

6    and forth from one class of owner to another.

7    MR. VEEDER:  Are you planning on importing water into

8    that area?

9    MR. KRIEGER:  There are various moves under progress

10   right now, and I think George Stahlman can reaffirm it.  There

11   is going to be a movement over there when they get into deep

12   water into that area.  It is all over the papers.

13   THE COURT:  It is not there yet.  Does anyone see any

14   necessity for that outside of Mr. Krieger?

15   MR. VEEDER:  I would like to avoid it, because I think

16   it will complicate the whole idea of eliminating a lot of

17   people that we have no right to have, either.

18   MR. GIRARD:  Just so it is clear that it is imported

19   water, and not belonging to the people on the stream.

20   MR. KRIEGER:  That is my own thought on it.

21   MR. STAHLMAN:  I think that is basic law.

22   MR. KRIEGER:  That is right.

23   THE COURT:  The door is open to cover that question

24   later.

25   MR. GIRARD:  On Tucalota I think we can get together

17,312

t-25

1    some more and we can possibly get at the language.

2         THE COURT:  Then let's assign a number to this, if this

3    is going to be drafted in final form, that is, the Murrieta -

4    Temecula area.  What is the number, Mr. Clerk?

5         THE CLERK:  30 will be the number

6         THE COURT:  Judgment 30.  Now, if you want to proceed

7    to work on some of the other ones, I will see you at 9:30

8    tomorrow morning.

9         MR. VEEDER:  I would like to cover Tucalota Creek before

10   Mr. Krieger leaves, your Honor, because if we can go ahead

11   on it --

12        MR. KRIEGER:  Let's go to work on it.

13        THE COURT:  Yes, and then you can interrupt me later

14   this afternoon, if you need to.

15        What about Sandia Creek?  Did you iron out those

16   difficulties?

17        MR. GIRARD:  I haven't examined it closely.  I just

18   looked at it, and it didn't appear to have any difficulties

19   but I would like to look it over tonight, if I may.

20        THE COURT:  Let me just call attention to the description

21   of the  Vail parcel.  That can't be accurate because it shows

22   it lying only in --

23        MR. STAHLMAN:  First, there is a mistake made in the

24   description.  They talk about Township and they mean Range.

25        MR. VEEDER:  The thing to do is to check it out.

17,313

t-26

THE COURT:  You work it over, but I am bothered about this, that at the beginning of Exhibit A, where you show Parcel 35, you have Township 8-4 west, 9-3 and 9-4 west, and you don't have any section numbers in there at all.  Maybe they all lie within that general area.  Check that over and advise me about it.

You can make yourselves comfortable around here some place, in the petit jury room, or the grand jury room, or wherever you want to work.

MR. GIRARD:  That was 9:30, Judge, in the morning?

THE COURT:  9:30.

(Whereupon, at 2:05 o'clock p.m., Tuesday, June 20,)
(1961, an adjournment was taken until 9:30 a.m.,    )
(Wednesday, June 21, 1961.                          )

— — —

17,314

t-17

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

UNITED STATES OF AMERICA,           )
                                    )
                Plaintiff,          )
                                    )
vs.                                 )        No. 1247-SD-C
                                    )
FALLBROOK PUBLIC UTILITY DISTRICT,  )
et al.,                             )
                                    )
                Defendants.         )
_____)

## CERTIFICATE OF REPORTER

We, the undersigned, do hereby certify that we are,

and on the date herein involved, to wit:  June 20, 1961, were

duly qualified, appointed and acting official reporters of

said Court;

That as such official reporters we did correctly report

in shorthand the proceedings had upon the trial of the above

entitled case; and that we did thereafter cause our said

shorthand notes to be transcribed, and the within and foregoing

39    pages of typewritten matter constitute a full, true

and correct transcript of our said notes.

WITNESS our hand at San Diego, California, this 20th day

of June, 1961.

_John Swarden_

_Marie G. Zellner_

MARIE G. ZELLNER, OFFICIAL REPORTER