VOLUME NO. 155

MR. VEEDER

# IN THE UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

---

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

---

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT, et al.,

    Defendants.

No. 1247-SD-C

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:    San Diego, California

Date:    Wednesday, June 21, 1961

Pages:    17,314 to 17,325

FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

VOLUME 155                                                              17,314

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,         )
                                  )
              Plaintiff,          )
                                  )
    vs.                           )   No. 1247-SD-C
                                  )
FALLBROOK PUBLIC UTILITY          )
DISTRICT, et al.,                 )
                                  )
              Defendants.         )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California

Wednesday, June 21, 1961

APPEARANCES:

  For the Plaintiff:            WILLIAM H. VEEDER, ESQ.,
                                Special Assistant to the
                                Attorney General

                                CDR. DONALD W. REDD

  For the Defendants:

    Vail Company                GEORGE STAHLMAN, ESQ.

    State of California         FRED GIRARD, ESQ.

MARIE G. ZELLNER, OFFICIAL REPORTER

SAN DIEGO, CALIFORNIA, WEDNESDAY, JUNE 21, 1961, 10:00 A.M.

- - -

(Another case called.)

THE CLERK: Number two, 1247-SD-C, United States vs. Fallbrook.

THE COURT: I will go off the bench and come back in a minute. Who else is showing up here today? Will Mr. Krieger be here?

MR. VEEDER: No one that I know of.

MR. STAHLMAN: Mr. Krieger will not be here.

THE COURT: We are honored by the presence of Mrs. Girard, however.

MR. GIRARD: That is not Mrs. Girard. That is Sandy Wilkinson's sister.

MR. VEEDER: And that explains their being late, however.

THE COURT: And Sandy Wilkinson's sister adds a little color and class to this proceeding.

(A short recess.)

17,316

MR. VEEDER: Are you ready for me to proceed, your Honor?

THE COURT: Yes.

MR. VEEDER: We have run through the reproduced FINDINGS OF FACT, CONCLUSIONS OF LAW AND INTERLOCUTORY JUDGMENT NUMBER _____A, RESPECTING LANDS IN TUCALOTA CREEK SUBWATERSHED, which relate to the non-overlying lands in the Tucalota subwatershed.

If your Honor will turn to the Conclusion of Law No. III on renumbered Page 4, and if you will look at Line 10, we say, "provided that to the extent that surface waters are found on those lands, the owners of those lands have correlative rights in those waters." Mr. Girard and I have agreed that it would be better to have a separate conclusion of law to the effect that this Court retains jurisdiction over the surface waters found on those lands, and just let the matter stand that way.

THE COURT: That would follow your Finding Number V, then, wouldn't it?

MR. VEEDER: That is correct, your Honor.

THE COURT: Yes.

MR. VEEDER: Then we would make a similar revision in Paragraph III of the Interlocutory Judgment on renumbered Page 5. In other words, you would enter, as part of your judgment, that to the extent of the surface waters found on these lands this Court retains jurisdiction. We would consolidate all

t-4

1   references to continuing jurisdiction.

2   THE COURT: All right.

3   MR. VEEDER: And then take that language out of the
4   paragraphs and conclusions of law to which I just referred.

5   THE COURT: Any other suggestions?

6   The only paragraph that bothered me is Number 1 in the
7   judgment, which bears on this same problem. There you say,
8   "The defendants referred to in Finding IV . . ., the apparent
9   owners of the lands described, . . ." it is kind of
10  cumbersome, for one thing. "The defendants referred to in
11  Finding IV, their successors, . . . the apparent owners of
12  the lands described with particularity in c of these
13  findings, their heirs . . ., have no right, title or interest
14  in or to the waters which feed, add to, support or contribute
15  to the waters of Tucalota Creek . . ." If you are going to
16  do this business we are proposing about the surface waters,
17  you are going to have to change that -- have no right, title
18  or interest to the ground waters that feed, add to or support
19  Tucalota Creek.

20  MR. VEEDER: You are right.

21  THE COURT: But have correlative rights to surface
22  waters, if any, upon the ground.

23  MR. VEEDER: Would have correlative rights to any surface
24  water that may be found.

25  THE COURT: On the land.

MR. VEEDER: Yes.

MR. GIRARD: To the extent that surface waters are found, they have correlative rights.

THE COURT: Insert the word "ground" in front of "waters" on Line 4, and at the end of the sentence try this for size: But have correlative rights to surface waters, if any, on their lands.

MR. GIRARD: Yes.

MR. VEEDER: Surface rights.

MR. GIRARD: Correlative rights to surface waters.

MR. VEEDER: Yes.

THE COURT: I think that does it.

MR. VEEDER: I raise the point there, your Honor -- I don't know how important it may be, but some question may come up -- the California law on appropriation is limited, in my view, to waters in well defined channels and not to diffuse surface waters, and I don't know whether they would have riparian rights in diffuse surface waters. I am raising this point. I don't know whether it is academic or not. Somebody might, from an academic standpoint, challenge your Honor on such a ruling.

THE COURT: Then let's change it further and follow the pattern you used as shown as Finding V: The Court retains jurisdiction of the surface waters. Let's see what we can do here. They have no interest in the ground waters,

but the Court retains jursidiction in connection with the determination of correlative rights to surface waters, if any, on their lands.

MR. VEEDER: I think that is better.

MR. GIRARD: How was that?

THE COURT: The last part of I of the judgment would say: But the Court retains jurisdiction -- use that same language that you used -- to determine correlative rights to surface waters, if any, found on their lands.

MR. VEEDER: I think that is better.

THE COURT: Would that do it?

MR. GIRARD: No, I don't think it would, your Honor. If you are talking about percentage of the correlative right, that would do it; but I think that they should be told here whether they have a correlative right or not.

THE COURT: I understood what you were going to do on your Finding V on the surface water, and then in the conclusions of law you are merely going to say that the Court retains jurisdiction, or some similar language, to the extent that surface waters are found on the land so as to determine the correlative rights to the water.

MR. GIRARD: I don't have any great objection there, your Honor.

THE COURT: All I want to do is to make it uniform. What I pointed out to you is that where you have one drawn now, you will first insert "ground waters," and then unless you make some exception, you will insert in one paragraph that they seem to have some rights to surface waters, which is a kind of an illusory thing up in that end of the watershed, and then in Section I of the judgment you will enter a judgment that they have no right to surface water.

Make it uniform. I don't care what language you use.

Do you still want to press your point about well defined channels?

MR. VEEDER: Here is the situation, your Honor: You are going to have in the Tucalota findings -- which cannot be compared to those who have surface rights -- these parcels of land, and there are quite a large number of them to which these findings pertain, that will not be listed because they are not on any well defined channel. They will not be listed

t-8

1  as having riparian rights. That was one reason that I was
2  hoping that you could eliminate any vagaries in here.
3      THE COURT: Then why don't you just use the general
4  language that the Court retains jurisdiction over the surface
5  waters?  Obviously, to a technician this would be very
6  wonderful to work onthis thing. Up in this particular area,
7  the surface rights, which are in basement complex, --
8      MR. VEEDER: Are meaningless.
9      THE COURT: -- don't mean a thing.
10     MR. VEEDER: That is right. I am in full accord with
11 your Honor, and I think your language will cover it. I just
12 wanted you to know --
13     THE COURT: All right. Then you and Mr. Girard will work
14 on that some more?
15     MR. VEEDER: Yes, we will.
16     THE COURT: And report to me later?
17     MR. VEEDER: Yes, we will, your Honor.
18     THE COURT: What other findings are you ready to talk
19 about?
20     MR. GIRARD: I think we will have findings -- I have
21 Diamond and Domenigoni Valleys, and Anza and Coahiula
22 Valleys. The attorneys who represent those interests are not
23 here, however.
24     THE COURT: Mr. Veeder tells me that he has some
25 objections. Will you take those up?

t-9

1     MR. VEEDER: Yes, sir.

2     THE COURT: And see what you can work out?

3     MR. GIRARD: Yes, your Honor.

4     THE COURT: As I understand, he wants stream channels

5 defined; is that right? So will you work on those?

6     MR. VEEDER: I will have findings on Tucalota Creek

7 concluded by noon.

8     THE COURT: Then go ahead with the other part.

9     MR. VEEDER: Yes.

10     THE COURT: Did you see Mr. Girard's suggestions on

11 Findings XXXIII and XXXIV?

12     MR. VEEDER: Yes, I did, and I am ready to discuss them.

13     THE COURT: Do they look all right to you?

14     MR. VEEDER: No, I am opposed to some of it.

15     THE COURT: They looked all right to me.

16     MR. VEEDER: Your Honor, they are repetitious, to begin

17 with.

18     THE COURT: I am not going to spend a lot of time

19 worrying about repetition.

20     MR. VEEDER: I would like to do just as good a mechanical

21 job on them as we can.

22     THE COURT: Take them up and see if you can straighten

23 out your differences.

24     Did you work out with Mr. Stahlman any solution on the

25 Sandia Creek findings?

Case 3:51-cv-01247-JO-SBC   Document 4658   Filed 09/24/63   PageID.38296   Page 11 of 13

17,323

t-10

MR. VEEDER: Your Honor, the Ground Water Resources are checking out the kind of descriptions we will use.

MR. STAHLMAN: Are they going to bring that in this morning?

MR. VEEDER: I don't know whether they will bring it in this morning or not. Bowen will be in here today.

THE COURT: At least, I want to call your attention to the fact that on the copy that I have on Page 2, Line 22, there is the word "Bel," and I assume it means "below," but it ran off the page. That is Page 2, Line 22, "Santa Margarita River watershed Bel".

MR. VEEDER: It is on the main copy. It may be that on the carbon you have, it is not on it, but it is on the others.

THE COURT: It would not be a capital "B", anyway. "Bel", it probably means "below."

MR. VEEDER: It means "below", and it is on the --

THE COURT: It is on the original?

MR. VEEDER: Yes, sir.

THE COURT: Will you and Mr. Stahlman work on that?

When will Ground Water Resources report on these descriptions?

MR. VEEDER: I have asked them to do it, and they are going to be in today.

THE COURT: All right. Then you will continue to work further, and do you want to show up here at 2:00 o'clock and

Case 3:51-cv-01247-JO-SBC   Document 4658   Filed 09/24/63   PageID.38297   Page 12 of 13

17,324

t-11

1 take up what you have done, or do you want to show up
2 tomorrow morning?
3     MR. VEEDER: I am available. It does not make any
4 difference.
5     THE COURT: Then, tomorrow morning at 9:30.
6     MR. VEEDER: Are we excused, your Honor?
7     THE COURT: Yes.
8     (Thereupon, at 10:13 o'clock a.m., Wednesday, June 21, )
   (1961, an adjournment was taken until Thursday, June 22,)
9  (1961, at 9:30 a.m.                                      )

- - -

17,325

t-12

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

UNITED STATES OF AMERICA,         )
                                  )
                Plaintiff,        )
                                  )
      vs.                         )   No. 1247-SD-C
                                  )
FALLBROOK PUBLIC UTILITY DISTRICT,)
et al.,                           )
                                  )
                Defendants        )

## CERTIFICATE OF REPORTER

We, the undersigned, do hereby certify that we are, and on the date herein involved, to wit: June 21, 1961, were duly qualified, appointed and acting official reporters of said Court;

That as such official reporters we did correctly report in shorthand the proceedings had upon the trial of the above entitled case; and that we did thereafter cause our said shorthand notes to be transcribed, and the within and foregoing 11 pages of typewritten matter constitute a full, true and correct transcript of our said notes.

WITNESS our hand at San Diego, California, this 21st day of June, 1961.

*John Swader*

*Marie B. Zellner*

MARIE G. ZELLNER, OFFICIAL REPORTER