# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

---

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

---

UNITED STATES OF AMERICA,

          Plaintiff,

vs.                       No. 1247-SD-C

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

          Defendants.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:    San Diego, California

Date:     Tuesday, June 27, 1961

Pages: 17,372 to 17,386

FILED
SEP 24 1963
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____

JOHN SWADER
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

```
 1                IN THE UNITED STATES DISTRICT COURT
 2                  SOUTHERN DISTRICT OF CALIFORNIA
 3                         SOUTHERN DIVISION
 4                              - - -
 5          HONORABLE JAMES M. CARTER, JUDGE PRESIDING
 6                              - - -
 7   UNITED STATES OF AMERICA,    )
                                  )
 8                    Plaintiff,  )
                                  )
 9        vs.                     )    No. 1247-SD-C
                                  )
10   FALLBROOK PUBLIC UTILITY     )
     DISTRICT, et al.,            )
11                                )
                      Defendants. )
12
13              REPORTER'S TRANSCRIPT OF PROCEEDINGS
14                      San Diego, California
15                     Tuesday, June 27, 1961
16                              - - -
17   APPEARANCES:
18     For the Plaintiff:          WILLIAM H. VEEDER, ESQ.,
                                   Special Assistant to the
19                                 Attorney General
20     For the Defendants:
21       Vail Company              GEORGE STAHLMAN, ESQ.
22       State of California       FRED GIRARD, ESQ.
23
24
25
```

1   SAN DIEGO, CALIFORNIA, TUESDAY, JUNE 27, 1961, 9:30 A.M.

2          - - -

3       THE CLERK:  Number one, 1247-SD-C, United States vs.
4   Fallbrook.
5       THE COURT:  I have had a chance to look over 31-A, and
6   what is the situation with Vail on that?
7       MR. VEEDER:  I talked to Mr. Stahlman about it.  Apparently,
8   there will be no lands in Vail Company properties that would
9   be affected at all by 31-A, so we can ignore the Vail Company
10  lands on the basis of that fact.
11      Therefore, I think 31-A is in form to be approved by
12  your Honor, if you desire to do so.
13      MR. STAHLMAN:  Did your Honor have something in mind in
14  connection with this?
15      MR. VEEDER:  I raised the point.
16      THE COURT:  When he brought it in, he said he had in mind
17  talking to you about Vail lands.
18      Then the Vail lands within Tucalota Creek are basement
19  complex or weathered basement complex; is that the situation?
20      MR. STAHLMAN:  No, your Honor.  Vail lands on Tucalota --
21      MR. VEEDER:  You are looking at 31-A, your Honor.  31-A
22  is non-overlying and non-riparian.
23      THE COURT:  Oh, I see.
24      MR. VEEDER:  So it is no concern of Vail Company.
25      MR. STAHLMAN:  So far as I am concerned, this one is

1  admitted. The one that we are going to discuss this morning
2  we do have some concern about.
3  MR. VEEDER: 31-A is approved.
4  THE COURT: Then 31-A is ready to be signed, with the
5  sole exception that I still think someone ought to take this
6  up with the Title Companies, and sit down with the title
7  officer, and say, "Here is what we have got. Before it is
8  signed, is this going to meet your situation?"
9  MR. STAHLMAN: Your Honor, may I make a suggestion?
10  We have talked to the Title Companies, and I think we are going
11  to have a problem there.
12  I think it would be well worth the Court's time to
13  notify the Title Companies and have them come down here, and
14  get into the record what they have to say. We can outline
15  to them what we are doing, because we go to different
16  officers in the Title Companies, and one has one idea and one
17  another.
18  We went to Riverside in preparation for the drafting of
19  our findings, and they are asking for things that I think are
20  unnecessary and complicating, and, in other words, they want
21  us to do it two or three different ways.
22  I think as to these Title Companies, if they were to be
23  brought in here and would put into the record how we are to
24  handle it, I think it would be well.
25  I don't know what Mr. Veeder thinks about that.

MR. VEEDER: We have discussed that in the office, and I think that I would rather have your Honor point out to the Title Companies than for me to point it out to the Title Companies.

THE COURT: What type of thing do they want?

MR. STAHLMAN: Well, for instance, we have a question of title on the Santa Rosa Ranch. We have had several surveys made there, and they want us to make reference to all of them. I don't think we should. I think they can pass title, and check the records without reference to all the different maps.

As I say, there have been several surveys made there, and I think it could be simplified.

THE COURT: I am more concerned with the people who are affected by a judgment like 31-A, people who are cut loose from the stream system, than I am with those who are a part of the stream system.

As to those who are a part of the stream system, this case is not a quiet title suit to land, or anything of that kind. We describe lands generally within the stream system, and I would not anticipate that the Title Companies would do anything more than to say that the lands were subject to continuing jurisdiction of the Court as to surface and ground water.

As to the people who are cut loose from the stream, conversely the Title Companies could say on the basis of the

decree the Court retains jurisdiction over the surface waters, but that the ground waters are not a part of the stream system, and put it right there in the policy.

Now, I don't see how the Santa Rosa gets into this thing at all. If you are talking about Santa Rosa --

MR. STAHLMAN: The only thing we had in mind, I tried to be very careful in drawing up what I thought was the title status of the Santa Rosa, and there have been some severances and matters of that kind up there.

THE COURT: How many Title Companies are there here in San Diego now, at the present time?

MR. VEEDER: I know of three right off.

MR. STAHLMAN: Four or five, I would think, and the other one would be in Riverside.

THE COURT: Is there only one in Riverside?

MR. STAHLMAN: How many are there in Riverside?

MR. WILKINSON: I would think four or five. Well, two, really.

MR. STAHLMAN: Two. Most of them are tied together with those here.

MR. VEEDER: So if you handle them here, you would pick up most of them at Riverside.

THE COURT: Are most of them here connected with Riverside?

MR. VEEDER: At least the ones with whom we have dealt

t-6

1  are; have offices in Riverside.

2  We are going to meet tomorrow; is that correct, your
3  Honor?

4  THE COURT: We are going to meet each morning and have
5  you report as to what is going on.

6  MR. VEEDER: I thought maybe we could get something
7  firmer in regard to this title matter.

8  THE COURT: Could you take the responsibility today to
9  contact the various Title Companies here in San Diego, and
10 if you want to ask them to send a representative down here,
11 a title officer and not an errand boy, you might do that. Of
12 course, if they saw this one judgment and are content with it,
13 all they would have to do is to write a letter and say, "This
14 meets our purposes."

15 You can't bind them any further than that.

16 MR. VEEDER: We wouldn't want them to object to them.

17 THE COURT: I would want merely a general expression.
18 They are the Supreme Court on titles.

19 MR. VEEDER: That is why I am concerned.

20 MR. STAHLMAN: I think what we have done here is
21 sufficient myself, but in view of our finding it difficult to
22 satisfy the Title Companies in Riverside, and running into
23 what we did up there, I thought maybe it might be well --

24 THE COURT: Why don't you try to get them down here to
25 a conference sometime this afternoon, or late this morning, or

t-7

17,378

some other time.  Maybe you could do it this afternoon, get them down here where all of these documents are available, and meet in the jury room over here, or in the Grand Jury room, and go over it with them, and then have them come into Court the next day or some time during the day.

B fls.

1    MR. VEEDER: May I refer to the fact that you have
2  directed me to do this?
3    THE COURT: Yes, I have directed you to do it.
4    I think that is the way to get at it. They might want,
5  of course, to look at some of the things in their plant, but
6  I don't think it would help us to go up to the plant and look
7  at it.
8    MR. VEEDER: I think your Honor is correct all the way
9  on that. It would do us no good to go there.
10    THE COURT: They can look at what we have.
11    Do that and let me hear from you today at 1:30 and tell
12  me what you have done. If you can set it up for some time
13  this afternoon and get them down here and go over this judg-
14  ment with them and explain what we have, the pattern we have
15  followed and find out what contacts they have had at Riverside,
16  what title companies at Riverside would follow their lead and
17  which would not. You may have to call the Riverside people
18  and get them down. This is important. It is going to save
19  them a lot of time and bother. It is going to save a lot of
20  small property owners endless concern if we can get something
21  where a title company can act on these judgments.
22    MR. VEEDER: That is correct.
23    MR. STAHLMAN: That was my thought on it. Also, I
24  thought the reason that we ought to have something in the
25  record is that if something does occur in the future we have

1    done everything we could.

2    THE COURT: We have discussed it before -- Mr. Veeder
3    remembers this. What we had planned to do would be to take
4    a copy of these judgments and have them certified by the
5    Clerk that they were true copies of the judgments and deliver
6    them to these title companies and also probably whatever
7    certified copies of exhibits they want, so that later on when
8    the Clerk of this Court loses these exhibits that we have
9    here the title company will at least have had the certified
10   copies of such records as would be material. So it may be
11   that they may want the certified copies of other exhibits.
12   But certainly they should have certified copies of these
13   judgments with the attachments.

14   MR. VEEDER: We will go ahead that way, your Honor.

15   THE COURT: What about 31?

16   MR. GIRARD: We have some comments on it, your Honor,
17   but I think Mr. Veeder will agree we thought we could probably
18   iron out most of them, if not all of them, this morning. We
19   were just given it this morning. On the whole, I don't have
20   too many objections to it.

21   THE COURT: Do you have other matters to work on?

22   MR. VEEDER: We are writing conclusions of law, yes,
23   your Honor.

24   MR. GIRARD: I would like to ask your Honor, I don't
25   know what your schedule is, but I have to be in Sacramento

P 3

1   Thursday and Friday, and I can be here next week or the

2   following week. But I am going to have to be excused on

3   Thursday and Friday, if there is no objection. I understand

4   Mr. Veeder is not going to be here next week.

5   Is that right?

6   MR. VEEDER: That's right. Things will roll along any-

7   how. They are going as fast as we can go.

8   THE COURT: Will they roll along when you leave?

9   MR. VEEDER: Yes, they will.

10  COLONEL BOWEN: Your Honor, we don't just wait until Mr.

11  Veeder is here. We are always rolling.

12  THE COURT: Colonel Bowen, that gives me some assurance.

13  MR. STAHLMAN: I think we have made some agreements here

14  this morning that will cover quite a bit of ground, your

15  Honor.

16  MR. VEEDER: It will keep going.

17  MR. STAHLMAN: I might indicate that we have the rough

18  draft completed on the Vail findings, with the exception of

19  the irrigable acreage, and I discussed it with Mr. Veeder

20  this morning and we feel that with one day's time, with Mr.

21  Wilkinson and Colonel Bowen, we can have that entire matter

22  agreed upon and then that finding can be written and concluded.

23  I am ready to hand them out, if you want them at this time.

24  THE COURT: No, I would rather wait until you get them

25  all ironed out. This is something you can be working on next

P 4

1    week when Mr. Veeder is gone.

2    MR. VEEDER: May I take those two copies of 31-A that you

3    have there, your Honor, and use them for explanatory purposes?

4    THE COURT: Yes.

5    Here are some consents from the Southern Pacific Land

6    Company which later on you can file.

7    MR. VEEDER: Thank you.

8    MR. STAHLMAN: I would like to call your Honor's atten-

9    tion to a mechanical feature here, for what it is worth, and

10   that is the type of process which is being used in drawing up

11   these findings. I understand your Honor is signing some of

12   the findings with this process. There are a number of types

13   of duplicating machines which will not duplicate this parti-

14   cular document. The ink or something on it -- they just come

15   out completely blank on certain machines. That may be a

16   factor. At least, in the final draft I think we ought to

17   have some other process that will duplicate on all duplicating

18   machines.

19   MR. VEEDER: That is something we will take care of.

20   THE COURT: I don't think that is too important. If

21   somebody wanted a certified copy they could at least get

22   photographs. If necessary, they could be typed.

23   MR. VEEDER: It is/a matter of facility that we are doing

24   this, your Honor.

25   MR. STAHLMAN: I am not objecting to it at all.

1   MR. VEEDER: This is John Swader's machine.

2   MR. STAHLMAN: I tried to duplicate on my machine some

3   portions of John's transcript and it won't do.

4   THE COURT: You might explore it, if there is some

5   process available. This is small potatoes in this case. If

6   the Government had to get a machine to do this job properly,

7   they could.

8   MR. VEEDER: We will see that it is taken care of.

9   THE COURT: The Marine Corps, I understand, has lots of

10  money. Don't they, Colonel Bowen?

11  COLONEL BOWEN: We have a machine, your Honor. Mr.

12  Stahlman just bought a cheap variety of that/that doesn't repro-

13  duce these. But we can reproduce them.

14  MR. STAHLMAN: No, most law offices have the machine I

15  have. It is a fast duplicator.

16  THE COURT: In other words, the problem is that you

17  haven't got the right machine. Is that it?

18  MR. VEEDER: Vail Company is so hard up.

19  MR. STAHLMAN: Vail Company has both types. But when

20  you want to do a large document and make copies of it, this

21  other machine takes a long time to do it. Colonel Bowen knows

22  this.

23  THE COURT: Well, can you work it out without bothering

24  me with this problem? Once I sign the judgments, I am going

25  to assume that somehow it can be duplicated, if necessary.

P 6    1        MR. VEEDER: I think we can work it out.

       2        THE COURT: Report back at 1:30 on what progress you

       3   have made.

       4        Anything else, Colonel Bowen? You look like you wanted

       5   to say something.

       6        COLONEL BOWEN: No, sir. I was just waiting to be

       7   dismissed.

       8        MR. VEEDER: I thought we were dismissed.

       9        (Adjournment until 1:30 p.m. of the same date.)

      10                            - - -

17,385

t-8

SAN DIEGO, CALIFORNIA, TUESDAY, JUNE 27, 1961, 1:30 P. M.

- - -

THE COURT: Do I have anything to do on this now?

MR. GIRARD: We have reached some agreement on the Tucalota findings, and before we ran them off in final form we did make some corrections, and have some suggestions. That is the main one, No. 30, not 31-A.

THE COURT: That is just the same as it was except for the addition of some of those extra paragraphs; is that it?

MR. GIRARD: We changed slightly the language on water duty. There were some minor corrections.

MR. VEEDER: I have put those on your desk, your Honor.

MR. GIRARD: Before we ran them off, we wondered if you have any suggestions?

MR. VEEDER: You have them on your desk now, your Honor. I put them on your desk.

MR. GIRARD: And before we ran them off we wondered if you had any changes that you wanted to suggest on them?

THE COURT: No. Then this is all I have to do now?

MR. GIRARD: Yes.

THE COURT: Then I will come in when you are ready with the Title Company people.

(Recess.)

P 7

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

UNITED STATES OF AMERICA,            )
                                     )
              Plaintiff,             )
                                     )
    vs.                              )   No. 1247-SD-C
                                     )
FALLBROOK PUBLIC UTILITY DISTRICT,   )
et al.,                              )
                                     )
              Defendants.            )

CERTIFICATE OF REPORTER

We, the undersigned, do hereby certify that we are, and on the date herein involved, to wit: June 27, 1961 were duly qualified, appointed and acting official reporters of said Court;

That as such official reporters we did correctly report in shorthand the proceedings had upon the trial of the above-entitled case; and that we did thereafter cause our said shorthand notes to be transcribed, and that the within and foregoing fifteen (15) pages of typewritten matter constitute a full, true and correct transcript of our said notes.

Dated at San Diego, California, this 27th day of June, 1961.

_Marie B. Zellner_
Official Reporter

_John Swader_
Official Reporter

JOHN SWADER, OFFICIAL REPORTER