MR. VEEDER

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

—

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

UNITED STATES OF AMERICA,

               Plaintiff,

       vs.

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

              Defendants.

No. 1247-SD-C

---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:     San Diego, California

Date:     **Wednesday, July 26, 1961**

        Pages:   17,445 to 17,464

# FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

P 1

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,       )
                                )
                  Plaintiff,    )
                                )
        vs.                     )          No. 1247-SD-C
                                )
FALLBROOK PUBLIC UTILITY        )
DISTRICT, et al.,               )
                                )
                  Defendants.   )
_____

REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California

Wednesday, July 26, 1961

- - -

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | WILLIAM H. VEEDER, ESQ. Special Assistant to the Attorney General |
| | CDR. DONALD W. REDD |
| For the Defendants: | |
| Vail Company | GEORGE STAHLMAN, ESQ. |
| State of California | FRED GIRARD, ESQ. |
| Fallbrook Public Utility District, et al., | FRANZ R. SACHSE, ESQ. |

P 2

1   <u>SAN DIEGO, CALIFORNIA, Wednesday, July 26, 1961, 9:30 A.M.</u>

2          (Other matters)

3          THE CLERK:  3-1247-SD-C United States vs. Fallbrook.

4          MR. SACHSE:  Your Honor, Mr. Krieger telephoned me this

5   morning and requested that I state to the Court and to Mr.

6   Veeder that he worked carefully last night and reviewed a great

7   many cases and is now convinced that he was in error in his

8   contention that your Honor could completely and forever res

9   judicata eliminate persons whose actual water use was de minimis.

10  He feels that you could not do so and that it would be wrong

11  to attempt it, and he suggests that we adopt the last suggestion

12  you made, which was that you make a finding in all these upper

13  areas of the watershed that all present uses were de minimis and

14  could be disregarded and add thereto an expression of your

15  belief, as you suggested, that from everything we knew it would

16  always be so but we obviously could not so hold as a matter of

17  law.

18          I think that his statements now, counselor, are pretty

19  much in agreement, and perhaps we could rewrite that language

20  to work out a finding that will apply to all the upper streams.

21          THE COURT:  I didn't have time to read Mr. Girard's pro-

22  posals.  I had this eighty-page brief of the Government in the

23  antitrust case to work on.

24          Who will take the responsibility now of trying to draw

25  some findings?

17,447

P 3

1   MR. GIRARD:  I will, your Honor.

2   THE COURT:  Maybe I had better take a look at what you

3   have so far.  A lot of the material, I suppose, can be used.

4   MR. GIRARD:  A lot of the material can be used.  I would

5   say that a good substantial number came from Mr. Veeder.  I

6   think the additions I have added would probably have to be

7   changed quite a bit because they were based on your original

8   suggestion of getting them out in fact.

9   THE COURT:  I would like to see us make these findings

10  describe how this operates, namely, that these stringers of

11  younger alluvium in these shallow basins up there are pumped

12  down and that when the rains come they are filled up again.

13  MR. GIRARD:  My findings No. 13 and 14, I think, go into

14  the facts some.  I think after talking to Colonel Bowen I would

15  want to modify those a little, because I referred to basement

16  complex lip and there is not such a thing up there -- it is

17  just basement complex.

18  MR. STAHLMAN:  I like Mr. Girard's findings better.  They

19  are simpler and more easily understood.  People are going to

20  want to read these things up there who aren't lawyers.

21  THE COURT:  Let's write them in better English.

22  Do you have any comments Mr. Veeder?

23  MR. VEEDER:  Your Honor, I see no reason for the personal

24  attack from Mr. Stahlman.

25  MR. STAHLMAN:  There is no personal attack.

P 4    1          MR. VEEDER:  I am attempting humor, George.  You can write

2      it any way you want.  I have a whole batch of semicolons that

3      you can use.

4          MR. STAHLMAN:  He criticizes Perry Mason, but at least

5      you can understand what he writes.

B fls.  6

t-1
B

1    THE COURT:  All right.  Then let's go on to something

2    else.  You are all in agreement that I can't do what I would

3    like to do?

4        MR. GIRARD:  I am, unless everybody would stipulate to it.

5        THE COURT:  Now, Mr. Veeder has submitted --

6        MR. GIRARD:  Do you want me to do that, your Honor?

7        THE COURT:  Yes, I want you to start on that.

8        Now, are you down here for a while, Mr. Girard?

9        MR. GIRARD:  I am down here for this week, but as I

10   pointed out, I think the last time, I am going to Donner Lake

11   for next week.

12       THE COURT:  Then are you coming back?

13       MR. GIRARD:  I will be up there for one week, and then I

14   will come back here.

15       THE COURT:  Then will you be down here for a while?

16       MR. GIRARD:  Yes, your Honor.

17       THE COURT:  Now, Mr. Veeder has submitted some pages on

18   the matters we talked about yesterday on 31-A, on the proposed

19   "A" judgment on Wilson and Coahuilla Creeks.

20       MR. VEEDER:  That is tentative, your Honor.

21       THE COURT:  Yes, tentative, and  as I read the changes,

22   they occur on Page 4 in III   at Line 14, "asserted by reason

23   of the ownership of the lands described . . ."

24       That does it, so far as I am concerned, on III.

25       Do you have any comment on that?  The old language, if you

17,450

t-2

1    don't have it before you, was --

2         MR. VEEDER:  Maybe I can help you some on that, your

3    Honor.

4         THE COURT:  --"in connection with the ground waters which

5    underlie the lands", and I think this is what we mean to say:

6              "The rights of the United States, and all other

7         parties, to the waters, ground and surface of the River,

8         are quieted against these defendants who are listed in

9         this particular judgment as to all adverse claims" -- and

10   then comes the key language --

11        "asserted by reason of the ownership of these lands."

12        I think that does it there.

13        The next change appears in Paragraph I of the judgment,

14   and there has been inserted there, "by reason of their owner-

15   ship of those lands have no right, title and interest in the

16   ground waters which feed," and so forth.  That satisfies me

17   on I.

18        The final paragraph   that is involved is Paragraph II

19   of the judgment, and I still think there we have problems,

20   and the problems arise at Line 26 by the use of the words,

21   "in those ground waters," which I think could come out, and I

22   thought last night when you told me what you were going to do,

23   you were eliminating those words, because we are talking now

24   about the fact that this is the judgment which quiets title

25   of the United States and all other parties having rights in the

t-3

1    surface and ground waters of the River, which shall be

2    forever quieted, and so forth, against the defendants referred

3    to in IV, who assert rights in those ground waters.

4         Are you referring to the ground waters which are a part

5    of the River, or are you referring to the fact that they

6    assert rights in the ground waters that are involved in

7    Finding IV?

8         I think all you have to say is "who assert rights by

9    reason of their ownership of the lands described."

10        MR. GIRARD:  That is right.

11        MR. VEEDER:  I think that is an improvement, your Honor.

12        THE COURT:  So the words "in the ground waters" would go

13   out.

14        Then if we drop down to Line 28, we have "and those

15   defendants who assert rights" and there again we have this

16   problem, "in the ground waters by reason of the ownership

17   of the lands."

18        I think there you are referring to those who assert

19   rights in the ground waters of their lands.  I think that is

20   what you are talking about there.

21        MR. VEEDER:  That is right.

22        THE COURT:  I suggest that we can do it by a little

23   reversal of the sentence, "and those defendants who by reason

24   of their ownership of the lands described in Exhibit C", and

25   then say "assert rights in the ground waters therein."  Isn't

t-4

1    that what you mean?

2        MR. VEEDER:  That is correct, your Honor.

3        THE COURT:  "and those defendants who", then drop down,

4    "by reason of their ownership of the lands described in

5    Exhibit C," and then insert "assert rights . . ."

6        MR. GIRARD:  " -- to the vagrant, local, percolating

7    waters therein," so it is clear.

8        MR. SACHSE:  That would be my personal suggestion, that

9    we use the phrase "vagrant, local, percolating waters" that we

10   have used as words of art in so many previous judgments, so as

11   to know that we are talking about ground waters.

12       THE COURT:  I think Mr. Veeder is agreeable.  Aren't you,

13   Mr. Veeder?

14       MR. VEEDER:  I am very agreeable.

15       THE COURT:  All right.

16       So that it would read: semicolon, "and those defendants

17   who by reason of the ownership of the lands described in

18   Exhibit C assert rights to the vagrant, local, percolating

19   waters therein."

20       MR. VEEDER:  You don't know how I suffer with the word

21   "therein", or "to-wit," or "thereof."

22       THE COURT:  Now, wait.  That insertion may not come in

23   at the right place, "and those defendants, and each of them,

24   and their heirs, successors," and so forth, "and assigns,"--

25   maybe it should come in after "assigns" --  "who by reason of

17,453

t-5

1    their  ownership", and so forth.

2         It is a mechanical problem, and I think you can work it

3    out.

4         MR. GIRARD:  We will work it out in the recess, your

5    Honor.

6         THE COURT:  All right.  Just get it so that we can know

7    what ground waters we are talking about.

8         Then will you let me see a draft of it, and we can see

9    if we can't get these pages run?

10        MR. VEEDER:  Yes, your Honor.

11        Now, I would like to have your direction with regard to

12   31-A.  May we withdraw that and substitute pages so that we

13   will not have to rewrite it?

14        THE COURT:  Have we sent out any copies of that to anyone

15   yet, except to counsel?

16        MR. VEEDER:  Just to counsel here, your Honor.

17        MR. GIRARD:  That is the one that has been signed?

18        MR. VEEDER:  Yes, that is correct.

19        MR. GIRARD:  I suggest that it be modified along this

20   line.

21        THE COURT:  If there is no objection --

22        THE CLERK:  Except I do not have it in my possession,

23   your Honor.  This was entered and sent to Los Angeles for

24   microfilming.

25        THE COURT:  The Clerk states that it was entered and sent

t-6

1   up to Los Angeles for microfilming.  All we would have to do

2   would be to take a copy of it and insert the pages, and call

3   it Amended Judgment 31-A.

4       MR. VEEDER:  Would we have to call it Amended?

5       THE COURT:  We would have to because this one has been

6   entered already.

7       MR. VEEDER: All right.

8       MR. STAHLMAN:  Couldn't it be expunged?

9       MR. VEEDER:  It would seem to me that you could enter

10  such an order, your Honor.

11      THE COURT:  What do you say, Mr. Clerk?  You are the

12  technician on judgments here.

13      MR. STAHLMAN:  I would think to expunge this one.

14      THE CLERK:  I think it would work all right if you

15  expunged the one that is in if I have an order to that effect.

16  Would this new one be 31-B?

17      THE COURT:  No, if it would be expunged --

18      THE CLERK:  Just use the same number, Number 31-A?

19      THE COURT:  Yes.

20      MR. VEEDER:  I would prefer that, because 31-A is going

21  to be the key throughout the case, and I think it would be

22  preferable to do it that way.

23      THE COURT:  Then what we would do would be to take a copy

24  and sign a new judgment?

25      THE CLERK:  That is correct.

17,455

THE COURT:   You have copies of the certain pages?

MR. VEEDER:   Yes.   What we would do is recast everything there and have it rerun.

THE COURT:   By recasted, you mean to recast it as to those pages?

C fls

17,456

Take C

P 5

1    MR. VEEDER:  We will rerun it, yes.

2    THE COURT:  But have you run copies of it?

3    MR. VEEDER:  Yes, we have.

4    THE COURT:  And you have copies available?

5    MR. VEEDER:  That is right.

6    THE COURT:  We can use them.  You don't have to have

7    original typing.  You can use the copy sheets.

8    MR. VEEDER:  If the pages work out.  I am not sure.  I

9    will have to talk to Mrs. Tooker.

10   THE COURT:  It is obvious from these, I think, that the

11   pages will work out.  Let's see.  I have the Judgment right

12   here.

13   MR. VEEDER:  It is strictly mechanical.  We can take

14   care of it.

15   THE CLERK:  Your Honor, I might be able to call Los

16   Angeles and have the originals sent out and substitute the first

17   page.

18   THE COURT:  You prepared a separate page for 31-A?

19   MR. VEEDER:  No, your Honor, these were simply tentative

20   pages that I ran off for your convenience.

21   THE COURT:  And they fit in with what you have on Wilson

22   and Coahuilla?

23   MR. VEEDER:  That is right.

24   THE COURT:  The Clerk will find out how far that has gone

25   up there.  Maybe he can get that off.

P 6

1    THE CLERK:  May I be excused right now, your Honor.  I

2  will put in a long distance call.

3    THE COURT:  Yes.

4  What other matters do you want to discuss, gentlemen?

5    MR. VEEDER:  Mr. Stark is on vacation.

6    THE COURT:  You couldn't reach him?

7    MR. VEEDER:  Well, I didn't go beyond that, your Honor.

8  I didn't follow up where he is.  But certainly he is not in

9  Corona.

10    THE COURT:  You are going to work today, then, on this

11  matter which I have assigned to Mr. Girard -- given him

12  responsibility for?

13    MR. GIRARD:  Yes.

14    MR. STAHLMAN:  I wonder if we might have the time set on

15  this brief that Mr. Veeder is going to prepare in connection

16  with his claim of an appropriative right.

17    THE COURT:  Yes, how much time do you want?  Did you con-

18  fer about the number of points you want to brief?

19    MR. GIRARD:  No one else has advised me of any more.

20    MR. VEEDER:  There are some additional points.

21    MR. STAHLMAN:  I would like to talk to Mr. Girard prior

22  to the preparation.  I think that probably is all I have to

23  suggest.

24    MR. SACHSE:  The only additional request I would make --

25  and I think it is implicit, but just to make it clear, Mr.

P 7

1   Veeder -- I think the formal details of your claimed appropria-

2   tion should be set forth at the very outset -- the source, the

3   date, the amount.

4       THE COURT:  I indicated that yesterday.

5       You heard Mr. Sachse's statement -- what you claim, how

6   much, all the details of this claim, so that we may consider

7   the claim as we read the brief.  Do you understand, Mr. Veeder?

8       MR. VEEDER:  Very well.  Very well.

9       MR. STAHLMAN:  I think one thing that we probably should

10  know at the earliest possible moment and that is whether these

11  waters from which he expects to obtain the right to appropriate

12  are percolating ground waters.

13      MR. VEEDER:  I think that is a matter for your Honor to

14  determine.

15      MR. STAHLMAN:  We may want to put in some evidence.  That

16  is the reason I want to know it.

17      MR. VEEDER:  There is no question on the proposition that

18  the waters that are in the material underlying Camp Pendleton

19  are percolating waters.

20      MR. STAHLMAN:  Are they part of the stream system?

21      MR. GIRARD:  That is one of the questions, anyway, Bill.

22      MR. VEEDER:  Sure.  I was hopeful we would be able to

23  tender some findings in this matter and that your Honor would

24  rule on it.  But I will write the whole thing up for you.

25      THE COURT:  Rule on it?  Without argument?  Without hearing

P 8

1  the other side?

2      MR. VEEDER:  No.  The only point I want to be sure of is

3  that the recommendation of the State of California, assuming

4  these are percolating waters, that an appropriation can be

5  made in the manner I stated in my brief.

6      I will do exactly what your Honor directs.  I will follow

7  Mr. Girard's letter.

8      THE COURT:  This pointing out the problem isn't quite as

9  simple as you make it in your brief.  How much time do you want

10  to file your brief?

11      MR. VEEDER:  I would say ten days, your Honor.  I will be

12  here the rest of the time.

13      THE COURT:  Do you have some other judgments that are

14  coming through the mill?

15      MR. VEEDER:  Yes, they are on the way, your Honor.  We

16  have to stop and back up a little on this Tucalota matter.

17      THE COURT:  What has happened to the judgment on the

18  Temecula-Murrieta Basin?  What has happened to Domenigoni Valley?

19  What has happened to Anza Valley?

20      MR. GIRARD:  I think most of those are my responsibility,

21  your Honor.

22      MR. VEEDER:  Thank you, Mr. Girard.

23      MR. GIRARD:  Anza Valley has been, I think, approved and

24  it is in the United States' hands.  But as I understand it, Mr.

25  Veeder -- and I am agreeable with this -- we are going to

P 9

1   incorporate the finding on Anza Valley in the over-all finding

2   on Wilson Creek.

3       MR. VEEDER:  That is right.

4       MR. GIRARD:  But Anza Valley and Coahuilla Valley are

5   prepared.  Although Mr. Veeder, I think, is still going to

6   argue on some of the conclusions I reached.

7       MR. VEEDER:  Definitely.

8       THE COURT:  We are not ready on that, then.

9       MR. GIRARD:  My language is final.

10      Now Murrieta and Temecula is completed except for judgment.

11  The findings and conclusions I will do this week.

12      THE COURT:  Where are you in Domenigoni Valley?

13      MR. GIRARD:  That I don't think is my responsibility.

14      MR. VEEDER:  In regard to Domenigoni Valley, now that we

15  have agreed on Tucalota Creek I think much of the Tucalota

16  findings and conclusions of law would take care of Diamond and

17  Domenigoni Valley, with the exception of the water that passes

18  out into the Menifee Valley.

19      MR. GIRARD:  That is true.  The same on Wilson Creek.  The

20  findings we draw on Tucalota will pertain to Wilson Creek, too.

21      MR. VEEDER:  That is correct.  Once there is agreement on

22  Tucalota Creek, I think the periphery streams can be taken care

23  of.

24      THE COURT:  What is being done on the second ground water

25  body -- Aguanga?

P 10

1      MR. VEEDER:  It will go ahead exactly the same way, and

2  the work is being done now.

3      MR. GIRARD:  I do have the judgment on this.  This is the

4  revised Murrieta-Temecula findings of fact and conclusions of

5  law as suggested, with corrections after the last argument.  I

6  believe Mr. Sachse has some problems.  He would like to ask

7  that this be not signed until --

8      MR. SACHSE:  Which one is this?

9      MR. GIRARD:  This is the Murrieta-Temecula.

10     THE COURT:  Let's date this thing in the corner so that

11 we can identify it from other drafts that come in.  I will

12 date it the 27th.

13     Have you had a chance to look this over yet?

14     MR. GIRARD:  I don't think anyone has even seen it, your

15 Honor.  With the exception of Mr. Sachse's, the changes are the

16 ones that were ordered in the specific findings when we con-

17 sidered them in Court a month ago.  They are not major changes.

18     THE COURT:  You can do this outside the presence of the

19 Court and we can talk about it later.

20     MR. SACHSE:  May I go back for a minute, your Honor.  I

21 am not sure that I understood Mr. Veeder on Diamond and

22 Domenigoni.  I don't know who wrote these, but I have a set of

23 findings in Fallbrook and they look all right to me.  Why not

24 get them done?

25     MR. GIRARD:  I wrote these on one of the assignments, your

P 11

1  Honor.  I am not sure whether Mr. Veeder had any objection to

2  these.  These may be one of the ones with which he agreed.  I

3  think that is ready to go.

4      MR. SACHSE:  As far as I am concerned, it is -- it is

5  correct.  And I don't think it is appropriate simply to use

6  the formula that we just discussed this morning for Tucalota

7  Creek, for Diamond and Domenigoni Valley.  There are too many

8  other factors involved.

9      THE COURT:  After we adjourn, confer with Mr. Veeder.

10  You are responsible on this point.  Find out where we stand on

11  Domenigoni Valley.

12      MR. SACHSE:  I will, your Honor.

13      THE COURT:  I am anxious to put my signature on some of

14  these.

15      What do you want to do?  Come in tomorrow morning?

16      MR. VEEDER:  It is entirely agreeable to me, your Honor.

17  I am going to be here.

18      MR. SACHSE:  I have nothing that will interfere.  I can

19  give all the time that Mr. Veeder and Mr. Girard want.

20      THE COURT:  Nine-thirty tomorrow morning.

21      THE CLERK:  Your Honor, in this morning's mail I received

22  the original of 31-A.  It just came back.

23      THE COURT:  Well, it has been entered and microfilmed and

24  all that.  I suppose it would be very confusing if you just

25  inserted a couple of pages.

P 12

1       THE CLERK:  It probably would.

2       THE COURT:  Or if we corrected it by interlineation it

3  would have to be done all over again.

4       THE CLERK:  Yes, your Honor.

5       THE COURT:  The easiest thing, in your opinion, would be

6  to get one of these copies and strike out and have a new 31-A.

7       THE CLERK:  That is correct.

8       THE COURT:  Mr. Veeder, will you follow up on that?

9  MR. VEEDER:  We will do that, your Honor.

10  Nine-thirty in the morning?

11       THE COURT:  Nine-thirty tomorrow morning.

12  (Whereupon an adjournment was taken until Thursday,)
    (                                                   )
13  (July 27, 1961, at 9:30 o'clock a.m.               )

                        - - -

14

15

16

17

18

19

20

21

22

23

24

25

17,464

IN THE DISTRICT COURT OF THE UNITED STATES

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

UNITED STATES OF AMERICA, )
                Plaintiff, )
       vs. )      No. 1247-SD-C
FALLBROOK PUBLIC UTILITY )
DISTRICT, et al., )
          Defendants. )

## CERTIFICATE OF REPORTER

We, the undersigned, do hereby certify that we are, and on the date herein involved, to wit: July 26, 1961, were duly qualified, appointed and acting official reporters of said Court;

That as such official reporters we did correctly report in shorthand the proceedings had upon the trial of the above entitled case; and that we did thereafter cause our said shorthand notes to be transcribed, and the within and foregoing  20 pages of typewritten matter constitute a full, true and correct transcript of our said notes.

Dated at San Diego, California, this 26th day of July, 1961.

*Marie B. Zellner*
Official Reporter

*John Swader*
Official Reporter

MARIE G. ZELLNER. OFFICIAL REPORTER