VOLUME NO.___162___                                    MR. VEEDER

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

— — —

UNITED STATES OF AMERICA,

　　　　　　　　Plaintiff,

vs.                                          No. 1247-SD-C

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

　　　　　　　　Defendants.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:       San Diego, California

Date:        Friday, August 4, 1961

　　　　Pages:    17,507 to 17,530

# FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By_____

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

1         IN THE DISTRICT COURT OF THE UNITED STATES

2             SOUTHERN DISTRICT OF CALIFORNIA

3                   SOUTHERN DIVISION

4                      - - -

5     HONORABLE JAMES M. CARTER, JUDGE PRESIDING

6                      - - -

7   UNITED STATES OF AMERICA,        )
                                     )
8                      Plaintiff,    )
                                     )
9          vs.                       )     No. 1247-SD-C
                                     )
10  FALLBROOK PUBLIC UTILITY         )
    DISTRICT, et al.,                )
11                                   )
                       Defendants.   )
12  _____)

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                San Diego, California

15              Friday, August 4, 1961

16                      - - -

17  APPEARANCES:

18     For the Plaintiff:          WILLIAM H. VEEDER, ESQ.
                                   Special Assistant to
19                                 the Attorney General

20                                 CDR. DONALD W. REDD

21     For the Defendants:

22        Vail Company             GEORGE STAHLMAN, ESQ.

23        Fallbrook Public Utility  FRANZ R. SACHSE, ESQ.
          District, et al.,
24

25

1    SAN DIEGO, CALIFORNIA, Friday, August 4, 1961, 9:30 A.M.

2

3         (Another matter.)

4         THE CLERK:  2-1247-SD-C United States of America vs.

5    Fallbrook.

6         THE COURT:  De Luz sub-watershed 32-A is ready for

7    signature?

8         MR. SACHSE:  No, sir, your Honor.  There is a very serious

9    problem that has come to my attention on De Luz, and the

10   reason perhaps it has not come to my attention earlier is that

11   De Luz, as your Honor knows, is a watershed with which I am

12   thoroughly familiar -- I have about a hundred clients.

13        May I have the Master's findings, so that I can make that

14   explanation to the Court.

15        I observe that IV of these findings, in effect, eliminates

16   from the case as vagrant, local, percolating waters only ten

17   parcels of land, and I was curious and I find that I have

18   seriously misunderstood what Mr. Veeder was doing with this

19   A Series.

20        The physical situation with which I am concerned is one

21   in which the land in question overlies entirely residuum or

22   basement complex and in which the stream or barranca or canyon

23   in question is found to carry water only during and immediately

24   after precipitation and run-off.

25        It had been my understanding and my assumption that your

1    Honor contemplated the entry of a decree quieting title to the

2    ground waters in such case and seeing that they are out of the

3    litigation, for all practical purposes, since the surface

4    run-off, occurring as it did only immediately at the time of

5    rain, was too insignificant or whatever the reason might be

6    to be retained in the litigation.

7        THE COURT:   The thing to which you are objecting would be

8    retaining jurisdiction over the surface waters?

9        MR. SACHSE:   You would retain surface jurisdiction over

10   it, but you would make findings that the possibility of any

11   practical use of the surface waters was nil.   In other words,

12   these people would feel they are eliminated.

13       Now, Mr. Cranston's exact findings in this type of case --

14       MR. STAHLMAN:   Is this on De Luz?

15       MR. SACHSE:   Yes.

16       And there were about four or five pages of these parcels.

17   This is what Mr. Cranston found:

18           "The following parcels of property, the exact

19       legal descriptions of which are set forth in said

20       Exhibit A attached hereto, are traversed by inter-

21       mittent streams which flow only during and immediately

22   after periods of heavy precipitation; during said times

23   there is some water in said streams which forms a part

24       of the Santa Margarita Rivers system; except for said

25       brief periods, no water flows in any of said streams

1    across any of the parcels of property referred to in

2    this Finding V, and except during said periods of

3    heavy precipitation and immediately thereafter said

4    parcels are not riparian to the Santa Margarita River,

5    or any of its tributaries; the waters, if any, under-

6    lying any and all of said parcels are vagrant, perco-

7    lating waters not a part of the surface or sub-surface

8    flow of any stream or creek within the boundaries of

9    the Santa Margarita River watershed; there is no

10    evidence that any specific amount of water could be

11    withdrawn from any of said intermittent streams and

12    put to beneficial use upon any of said parcels of

13    property during said periods of high precipitation

14    and immediately thereafter, and the total amount of

15    water which could be so diverted and used during

16    said periods is negligible; it is unnecessary to

17    make any further findings at this time with reference

18    to the nature and character of any of said parcels,

19    or the water uses and rights thereof."

20    The significance of this comes when you get to the

21    Conclusions of Law and the ultimate judgment, because Mr.

22    Cranston, in connection with this particular finding, concludes:

23    ". . . No adjudication as to water rights and uses

24    of the parcels of property referred to in Findings IV

25    and V above need be made or should be made in this

1    action, and no judgment hereafter rendered in this

2    action shall have any effect upon said parcels of

3    property, and any judgment rendered in this action

4    should expressly clear each of said parcels from any

5    cloud cast upon the title or water rights of such

6    parcel by the filing of this action, and the recording

7    of the lis pendens herein, or the execution of any

8    stipulation."

9        Mr. Veeder had done exactly that in the proposed De Luz

10   findings, except that the ten parcels are those which Mr.

11   Cranston found were not only overlying vagrant, percolating

12   water, but were also not riparian even to any unnamed tributary

13   of De Luz Creek.

14       Now I am embarrassed.  I think I have perhaps misled Mr.

15   Veeder in my approval of 31-A of the A Series as to Sandia

16   and others, and I want to say now that I don't think that

17   necessarily/is going to be necessary that we tear up De Luz
                it

18   and do it all over again.  But I think we should face up right

19   now to this that if we do not quiet these people's titles to

20   the ground waters in the A Judgment, we should have a very

21   clear understanding that when the De Luz Creek judgment proper

22   is entered, where this same thing will apply on Tucalota, on

23   Sandia, on all these others, we should have a very clear

24   understanding how we are going to handle it.  And I want again

25   to say what I started to say.  The property where the ground

1    is unquestionably basement complex or residuum, no alluvium

2    whatsoever, and where the only time the stream flows is during

3    and immediately precipitation, I think those people should have

4    their ground waters quieted and the Court should retain juris-

5    diction over the surface. We know that means nothing. If we

6    have that understanding, I have no objection to the De Luz

7    findings. I thought that is what we were doing.

8       MR. VEEDER: I would like to refer to the June 30th

9    Tucalota 31. We have entered it and I thought we were accom-

10   plishing just about that.

11      THE COURT: 31?

12      MR. VEEDER: Do you have the June 30th, 1961?

13      THE COURT: That is in Tucalota. That is not the last

14   one.

15      MR. VEEDER: No, but I am using it because if you will

16   turn to proposed Finding No. XVII --

17      THE COURT: Wait a minute.

18      MR. VEEDER: Do you have that, Franz?

19      MR. SACHSE: I have it here, yes.

20      MR. VEEDER: XVII and XVIII. We were attempting to do in

21   that what I really thought would get the same result that Mr.

22   Sachse wants. We say there:

23          "All of the ground waters in those areas classified

24          on Exhibit A as being younger alluvium, are part of

25          the waters of the Santa Margarita River stream system. . ."

1      Then in XVIII we say:

2          "Ground waters, if any, found in the lands described

3      in Exhibit B of these Findings of Fact, Conclusions of

4      Law and Interlocutory Judgment, which are classified

5      on Exhibit A as basement complex or weathered basement

6      complex, are vagrant, local, percolating waters, not

7      part of the surface or sub-surface flow or sub-surface

8      basin of the Santa Margarita River and its tributaries."

9      I think the conclusion of law which would flow from that

10     finding would say that in regard to those percolating waters,

11     if any, title is quieted.  I don't see any great cause for

12     alarm.

13     THE COURT:  Where did you run similar language into 32-A

14     here, this De Luz?

15         MR. VEEDER:  No, your Honor, I am not reading from De Luz.

16         THE COURT:  Mr. Sachse started out criticizing your 32-A

17     on De Luz Creek.

18         MR. VEEDER:  That is right.

19         THE COURT:  And points up the general problem.  You reply

20     by referring to certain proposed language in Tucalota.

21         MR. VEEDER:  No. 31, as I said.

22         THE COURT:  Was that ever carried out into --

23         MR. VEEDER:  It wouldn't be in the non-overlying decree

24     at all.  It would be in the one relating to riparian rights,

25     which would be the 31 Series, not the 31-A.

MR. SACHSE:  I think Mr. Veeder is right.  If this is
what we are going to do,  But this is why I am interested,
that I want these findings, this A Series -- maybe your Honor
doesn't have the copy I am reading from.

THE COURT:  I have it.

MR. SACHSE:  All I am trying to do is to be quite sure
I know how we are proceeding.  Perhaps because I was not here
for two months I misunderstood.

MR. VEEDER:  That is right.  I was going to say if I had
joined you in Dusseldorf we would have got along better.

MR. SACHSE:  I thought the A Series was going to be the
series throughout the people with the vagrant ground waters in
all cases.

THE COURT:  Let me understand what Mr. Veeder is doing.
Because he has only put ten parcels in the De Luz proposed
32-A, these ten parcels with vagrant, local, percolating waters
are lands which do not have any stream running across.

MR. VEEDER:  That is right.

THE COURT:  And then you would propose to take the
property that was basement complex that has a stream or a
tributary running across it and throw it into 32.

MR. VEEDER:  Yes, sir, and apply these findings which
I just read to those riparian lands.

MR. SACHSE:  That is okay with me, if that is what we are
going to do.  But as I say, I want to get this very clear,

1    because I have had a misunderstanding.   I had assumed that the

2    A Series of judgments was the judgments which were quieting

3    title to the vagrant, local, percolating waters.

4         THE COURT:   I did, too.

5         MR. SACHSE:   Now we will have a judgment quieting title

6    to vagrant, local waters not only in A but also in 32 proper.

7         MR. VEEDER:   That is right.

8         MR. SACHSE:   Okay.

9         MR. VEEDER:   Because you have a situation where some of

10   your land may overlie some alluvium, but the balance does not.

11        MR. SACHSE:   With that qualification, Mr. Veeder, I have

12   no objection to this thing going through the way it is.

13        MR. VEEDER:   That is a relief.

14        MR. SACHSE:   But I am concerned that we don't forget --

15        MR. VEEDER:   How could we forget, with this language,

16   Franz?

17        THE COURT:   I did.

18        MR. SACHSE:   I misunderstood.

19        THE COURT:   We have a more serious problem to talk about

20   for a minute.   Did the Master make any findings on Sandia?

21        MR. VEEDER:   No.

22        THE COURT:   He did on De Luz.

23        MR. VEEDER:   He did.

24        THE COURT:   Those findings have been lodged.   They haven't

25   been filed.   As I understand the procedure, they have been

1   lodged because the Rules require that after they are filed

2   notice must be given and a hearing had on it.  Now Mr. Veeder

3   mentioned this, in part, to me one day.  It is true that the

4   evidence of geology that we have in the case and the land

5   ownership and descriptions, et cetera, covers all of De Luz,

6   and there is probably enough evidence without relying on the

7   Master's findings to find matters concerning the basement

8   complex.  But the question is, what do you propose to do?

9   You are not going to abort the Master's findings entirely in

10   De Luz, are you?

11       MR. VEEDER:  I think that is as good a word as I can think

12   of.  I believe you have all the evidence that you require to

13   make proper findings.

14       THE COURT:  I don't have any evidence on irrigable acreage

15   in De Luz, have I?

16       MR. VEEDER:  I would want to check it.  I think there is

17   everything in there.  I would want to check that, your Honor.

18       MR. SACHSE:  On the notice provisions, Mr. Veeder, does

19   the notice have to be sent to the individual or to counsel,

20   on Master's hearings?

21       MR. VEEDER:  I think notice to counsel would be enough.

22       MR. SACHSE:  If it can go to counsel, De Luz isn't too

23   serious.  The total number of defendants who have been repre-

24   sented by counsel was large.  The number of pro pers was small.

25   I agree with Mr. Veeder that this would be rough when we start

1    on Rainbow and some of those.  We have a real problem.

2    THE COURT:  The Master doesn't have any findings on

3    Temecula?

4    MR. SACHSE:  No.

5    MR. VEEDER:  No.  We had a hearing.  Two people showed

6    up.  The rest of them didn't show up.  We put in the evidence

7    we had.  The full evidence is before your Honor and I submit

8    that we have relatively complete findings.  I don't agree with

9    all that was done by the Master on De Luz.  Then we have these

10   fragmentary situations as we have at Rainbow.  I truly believe

11   that the word "abort" is a good one in regard to what we should

12   do with those findings, because we are going to be piecemealing

13   -- we are going to use some.  I think your Honor will have to

14   make some findings in regard to those areas in addition to or

15   alternative with what Mr. Cranston has done.

16   MR. SACHSE:  I wouldn't see anything wrong, frankly, with

17   his Honor aborting Rainbow and perhaps Pechanga, which the

18   Master hasn't lodged yet, because there truly the evidence he

19   heard was so slight and the people who appeared were so minor.

20   THE COURT:  You said Rainbow.

21   MR. SACHSE:  The Rainbow Creek sub-watershed.  The

22   defendants who showed up didn't amount to a dozen out of a

23   great many, and everything is before you.

24   But De Luz is a little different.  That was tried hard

25   by myself, by Mr. Dennis and by Mr. Veeder.  There were

1    extensive exhibits, et cetera.  I don't think we ought to just

2    throw them out, Mr. Veeder.  I think it is too dangerous.  I

3    don't think the notice requirement would be too burdensome on

4    De Luz Creek.

5        THE COURT:  What other area did he make findings on?

6        MR. SACHSE:  He made a full set on Fallbrook Creek, which,

7    to the best of my knowledge, apparently the United States has

8    no disagreement.  But there they were almost all pro per.

9        MR. VEEDER:  Yes.

10       MR. SACHSE:  Most of those have, however, been covered

11   by judgments of your Honor, I think.  Can't we say all of them,

12   Bill?

13       MR. VEEDER:  I haven't made a parcel by parcel check, but

14   we have done our very best down to the riparian lands and I

15   want to add the riparian lands of Fallbrook.

16       THE COURT:  What evidence do I have in the record of this

17   type of land in Fallbrook?

18       MR. SACHSE:  You have the maps and the testimony.

19       MR. VEEDER:  And the titles.

20       MR. SACHSE:  And the titles.  This is another case where

21   there is no water in the creek except when it rains.  So you

22   will retain continuing jurisdiction of whatever ground waters

23   I have.  These judgments are entered.  You have done it already

24   on Fallbrook.  You have retained continuing jurisdiction over

25   the surface waters and thrown out the vagrant, local,

1    percolating waters.

2        Then there are a couple of them he has entered.  Has he

3    entered one of the area north of Fallbrook Creek drainage and

4    south of Santa Margarita River?

5        MR. VEEDER:  That is right.

6        MR. SACHSE:  I think that is also pretty well covered by

7    you.

8        MR. VEEDER:  Your Honor has the series which we have

9    numbered II throught XXVIII, which takes care of that area of

10   residuum, the best we can do it.

11       MR. SACHSE:  I think Mr. Veeder is right.  I think you

12   could throw out, disregard, revoke the Master's authorization,

13   whatever the mechanics are, on most of those, because your

14   Honor has already found them.

15       MR. VEEDER:  They are helpful.  What Mr. Cranston did we

16   are using as a guide on those tributaries.  But I think we

17   are giving rise to a legal problem that we should avoid, if

18   we went along this way.  I think your Honor being fully advised

19   of the type of finding that Mr. Cranston made, the parcels

20   which are involved --

21       MR. SACHSE:  Your idea is that we would never act on the

22   Master's findings at all?

23       MR. VEEDER:  They have never been filed and their status

24   having been lodged, I don't know what that means, but I do

25   know unless somebody objects, and I don't see how they could --

1  if you make findings of fact in a general area I don't see how

2  there could be any objection.  I don't agree with some of his

3  conclusions.

4      MR. SACHSE:  I want to do it the easy way.  I would like

5  to do it the way Mr. Veeder says.  There will certainly be no

6  objection on your Fallbrook Creek findings.

7      THE COURT:  Let's pass that up for a moment.

8      Are we through with 32-A, then?

9      MR. VEEDER:  De Luz Creek?

10     THE COURT:  Yes.

11     MR. SACHSE:  Yes, your Honor, I have no objection to your

12  signing it now, with the understanding that we go on as we do

13  with 32.  I might point out the same problem exists, I think,

14  in perhaps one or two small parcels which have come up on the

15  Sandia judgment itself.

16     MR. VEEDER:  On this point that Mr. Sachse is discussing,

17  it might be that your caption on De Luz Creek would be more

18  informative if you put under the very bottom -- I will read

19  the whole thing and show you what you might add:  "FINDINGS

20  OF FACT, CONCLUSIONS OF LAW AND INTERLOCUTORY JUDGMENT NO.

21  32-A; RESPECTING LANDS IN DE LUZ CREEK SUB-WATERSHED WHICH DO

22  NOT OVERLIE ANY GROUND WATERS WHICH FEED OR CONTRIBUTE TO THAT

23  STREAM OR ITS TRIBUTARIES OR ARE RIPARIAN TO THAT STREAM OR

24  ITS TRIBUTARIES."  That might be more reflective, if you want

25  to add that on there in the light of what Mr. Sachse has just

1          THE COURT:  I don't think that makes any difference.

2          MR. VEEDER:  While you are considering those, I would

3    like, if I could, to substitute, for the purposes of consoli-

4    dating, two exhibits on De Luz Creek.  On the titles as

5    originally offered we had Exhibits 216-B-1 and 216-B-2.  One

6    described the land, one made reference to the ownership.

7    Colonel Bowen's office has consolidated that data, making it

8    more easy to handle.  It is identical with those two exhibits.

9    With lee from your Honor, I would substitute 216-B-1 and 216-B-2

10   and consolidate them into Exhibit 216-B.

11         MR. STAHLMAN:  Do you have an extra copy?

12         MR. VEEDER:  Yes, we will have copies for everyone, if

13   that is agreeable.  It is just a matter of convenience.

14         THE COURT:  As they formerly went in, they went in as

15   216-B-1 and 216-B-2?

16         MR. VEEDER:  Yes.

17         THE COURT:  Now they are consolidated into Exhibit 216-B?

18         MR. VEEDER:  Yes.

19         THE COURT:  Any objection?

20         MR. STAHLMAN:  How have you treated Vail in this?

21         MR. VEEDER:  There are some, George, (handing document

22   to Mr. Stahlman).  It is the same.  There is no difference,

23   except that it eliminated one exhibit on the 32-A Series.  We

24   consolidated the whole thing.

25         THE COURT:  I don't want to open this whole thing up for

1    discussion again, but I didn't realize, any more than Mr.

2    Sachse did, that you were taking basement complex ground and

3    because a water course ran over it keeping it out of the A

4    Series and putting it into the number series.

5         MR. VEEDER:  Your Honor will remember that on Exhibit

6    206-C on Tucalota Creek, which we reviewed at great length,

7    we consolidated the map showing the exterior boundaries of

8    the individual parcels with the geology.  We went into great

9    detail on that, the objective being the result which is being

10   attained in our proposed Findings XVII and XVIII, namely, that

11   it appeared easier and more sensible to include in the 31

12   Series as distinguished from 31-A the lands which are riparian

13   and to eliminate in the 31 Series the basement complex and

14   residuum.

15        THE COURT:  Didn't you use the same map, though?

16        MR. VEEDER:  No, we took a map and consolidated it.

17        THE COURT:  I mean for both series you used the same map,

18   didn't you?

19        MR. VEEDER:  Yes, the same map will be used.  But the

20   whole objective there was to be able to demonstrate on a

21   single exhibit attached to both 31-A and to 31, the point that

22   we are discussing.  So I sure, in my own view -- I am surprised

23   that there would be any question about it, frankly, because

24   we did go into it for two or three days here.

25        THE COURT:  I see no problem except the point of trying

1    to assist people in finding where they are on these judgments,

2    and of course, we know what the Rule is.  If you have basement

3    complex land and there is a stream runs across it, you will be

4    in the numbered judgment.  If you have basement complex land

5    and there is no stream across it, you will be in the A Series.

6    I suppose there is no use to worry about that.

7        MR. VEEDER:  That is exactly what we have done on Wilson

8    and Coahuilla Creek.

9        MR. SACHSE:  There is one problem by reason of it.  I

10   know there is no conscious effort on the part of the United

11   States to make any mistakes.  I placed on your Honor's desk

12   this morning a letter from Mr. Krieger dealing with another

13   judgment, but the last paragraph is pertinent to this discussion.

14   He says, "Another thing that we must do before these findings

15   on Tucalota are completed is carefully to review all of the

16   parcels, descriptions," et cetera.  I will do it for mine, and

17   I know Mr. Krieger will do it for his.  As you can see, when

18   they are divided up this way it means that the exhibits become

19   of critical importance and any attorney who represents a client

20   in the case had better be sure if he isn't in one he is in the

21   other.

22       THE COURT:  To which set of findings has Mr. Krieger

23   addressed himself?

24       MR. SACHSE:  He has been addressing himself to the set

25   prepared by Mr. Girard and myself which your Honor directed we

1   date at the top 7-31-61, and I have given a copy of his

2   suggestions to Mr. Veeder and Mr. Stahlman only this morning.

3   I know that they haven't had an opportunity to review them.

4   I have only glanced at them hastily myself.  I can say that

5   almost without exception they are good; but they are not of

6   substance -- they are of form.  I would strongly suggest that

7   we don't fool around with that today at all.  Mr. Girard

8   hasn't even seen them and I think he should have a look at

9   them.  I know Mr. Veeder hasn't analyzed them yet.

10      THE COURT:  You say I had told you we would come back

11   again on Tuesday?

12      MR. VEEDER:  The 8th.

13      THE COURT:  The 8th.  All right, then, let's not do

14   anything further on them here in court.

15      What about this Wilson and Coahuilla Creek sub-watershed?

16      MR. SACHSE:  With the same understanding we had on De

17   Luz, this is fine.

18      MR. VEEDER:  They are prepared.  The exhibits are attached.

19   I didn't assign a number to it.  I think 33 would be appropri-

20   ate.  This would be 33-A.

21      THE COURT:  Wilson and Coahuilla Creek -- does this take

22   it clear up to the top of the watershed?

23      MR. VEEDER:  Yes, it does, your Honor.

24      THE COURT:  Above Anza?

25      MR. VEEDER:  It takes in the whole area -- Anza, Coahilla,

1 everything.

2  MR. SACHSE:  That gives me a question, Bill.  As I

3 recollect, a part of the Wilson watershed, Lancaster Valley,

4 is in the Aguanga water area.

5  MR. VEEDER:  It is.

6  MR. SACHSE:  Will there be, then, necessarily three

7 Wilson judgments:  One covering the ground water area, one

8 covering those parts of the creek that are --

9  MR. VEEDER:  Exactly like Tucalota, Franz.

10  THE COURT:  There will three?

11  MR. VEEDER:  Yes.

12  MR. SACHSE:  There will be the ground water, the part of

13 Wilson that is in the ground water area would be 32, and then

14 32-A and 32-B maybe.

15  MR. VEEDER:  We will have a separate number.

16  THE COURT:  The two big ground water areas will have

17 separate numbers.

18  MR. VEEDER:  But you will have identically the same

19 situation, one at Warm Springs and one at Temecula above Vail

20 Dam.

21  THE COURT:  Then the next number series unassigned would

22 be 33 and 33-A.  This would be 33-A, Wilson-Coahuilla vagrant

23 waters.

24  MR. STAHLMAN:  Is that the one of 7-24-61, Bill?

25  MR. VEEDER:  I would have to look.

1    THE COURT:   Then I might as well find these judgments.

2    MR. VEEDER:   Do you want me to write it on the exhibits,

3    33-A, before you sign it?   Those were left open, too.

4    THE COURT:   I will put it in here.

5    What is the date?

6    THE CLERK:   The 4th, your Honor.

7    THE COURT:   Here is De Luz 32-A, and Wilson-Coahuilla 33-A.

8    MR. VEEDER:   Has your Honor ruled on my request to con-

9    solidate Exhibits 216-B-1 and 216-B-2?

10   THE COURT:   Yes, I directed that it be done.

11   I hand you this one, Mr. Clerk.   I want to hold this one

12   for a minute.

13   This is off the record.

14   (Discussion off the record regarding the Master's

15   findings.)

16   MR. STAHLMAN:   We are coming back on Tuesday.   I wonder

17   if anyone had a thought here that we might conclude in this

18   matter, because I have a rather extensive trial set in the

19   Superior Court here which will require issuing a lot of

20   subpoenas duces tecum, and I want to give the Court fair

21   notice that we are still on this trial here.   That case is

22   set for the 5th of September.

23   THE COURT:   How long will it take?

24   MR. STAHLMAN:   About a month to try it.   And then we have

25   the Bar Association convention that I anticipate going to,

1  unless your Honor is in trial here, the latter part of
2  September.  That is three days.  I want to give timely notice
3  and not come into the Superior Court at the last minute,
4  because this is a rather involved trial and is already assigned
5  to a judge.

6      THE COURT:  Your guess is as good as mine.  We are waiting
7  for the Vail findings.  We are waiting for Domenigoni.  There
8  is a lot of work to put these together.

9      MR. STAHLMAN:  It is my observation only that I don't
10  think we will be finished by then.

11      THE COURT:  We fixed a date to hear the Government's new
12  matter down in lower basins.

13      MR. STAHLMAN:  That presents a matter, too; there be
14  additional testimony.

15      MR. SACHSE:  Mr. Veeder's brief will be due on Monday.
16      MR. VEEDER:  I am going to file it this afternoon.
17      THE COURT:  Have we set a date for hearing?
18      MR. VEEDER:  No, you haven't, your Honor.  As I understand,
19  they are going to respond to it.
20      THE COURT:  What are your plans now?  You told me you
21  would be here from the 8th to the 11th.
22      MR. VEEDER:  I would like to get out of here the evening
23  of the 9th, if I could.  But I will --
24      THE COURT:  How long before you will be back?
25      MR. VEEDER:  I will be back as soon as I can, and I will

1   notify your Honor.  It will be less than thirty days.  But I

2   simply have other matters I have to take care of.  It will not

3   stop the work a bit.  It is rolling now.

4        MR. STAHLMAN:  Knowing your situation, do you think this

5   will be concluded by the 5th of September?

6        MR. VEEDER:  I don't believe we can get the thing done

7   mechanically by the 5th of September.

8        MR. STAHLMAN:  I don't think so either.

9        THE COURT:  More than that, if Mr. Veeder files his brief

10  and you gentlemen reply, if he doesn't expect to be back here

11  from the 9th of August until after the beginning of September,

12  we would have to hear those arguments in the second week of

13  September.

14       MR. VEEDER:  If you want to set it down specially, I

15  would make an effort to get back.  I want to keep this going.

16       MR. SACHSE:  It is conceivable to me that I might ask

17  an opportunity to present some evidence.  I don't know what

18  he is going to say in his brief.

19       THE COURT:  I would think that starting this 30-day trial

20  in September would be a bad deal.

21       MR. STAHLMAN:  Yes, your Honor.

22       THE COURT:  Although it would be difficult to say that

23  you would actually be in trial.

24       MR. STAHLMAN:  I know.  But if I have to appear here on

25  any days at all, and I am sure I will..

17,329

1     THE COURT:   Is this case on the master calendar?

2     MR. STAHLMAN:   No, your Honor; it is assigned out -- it

3  is in Judge Ault's court.   It is a series of cases of which

4  this is one.

5     I would think the best thing to do, so that there will not

6  be any conflict, is to inform him and report back to your

7  Honor on Tuesday and tell him, and he will probably put it

8  over to October.   We should be finished by then.

9     THE COURT:   I will be around this morning.   Are you going

10  to discuss these findings of the Master and check the order

11  of reference, et cetera?

12     MR. VEEDER:   I will do that.

13     THE COURT:   Are you going to do any further work on

14  Tucalota, or what work do you have?

15     MR. SACHSE:   I would suggest that we would be wasting

16  our time if we tried to work on Tucalota before we hear from

17  Mr. Girard.   I want to talk to Mr. Krieger about it.

18     THE COURT:   Ten o'clock Tuesday morning, August 8th.

19     MR. VEEDER:   Did your Honor get a copy of my letter to

20  Mr. Stark?   Anyway he is notified.

21     THE COURT:   I don't know whether I did or not.   I didn't

22  see it.

23     (Whereupon, an adjournment was taken on Friday, August)

24     (                                                        )

       (4, 1961, until Tuesday, August 8, 1961 at 10:00 A.M. )

25

- - -

17,550

1 IN THE DISTRICT COURT OF THE UNITED STATES

2 SOUTHERN DISTRICT OF CALIFORNIA

3 SOUTHERN DIVISION

4 - - -

5 UNITED STATES OF AMERICA,           )
                                     )
6                   Plaintiff,       )
                                     )
7         vs.                        )       No. 1247-SD-C
                                     )
8 FALLBROOK PUBLIC UTILITY           )
  DISTRICT, et al.,                  )
9                                    )
                                     )
10                  Defendants.      )

11 CERTIFICATE OF REPORTER

12      I, John Swader, the undersigned, do hereby certify that

13 I am, and on the date here involved, to-wit:  August 4, 1961,

14 was a duly qualified, appointed and acting official reporter

15 of said Court;

16      That as such official reporter I did correctly report

17 in shorthand the proceedings had upon the trial of the above

18 entitled case; and that I did thereafter cause my said

19 shorthand notes to be transcribed, and the within and fore-

20 going twenty-four (24) pages of typewritten matter constitute

21 a full, true and correct transcript of my said notes.

22      WITNESS my hand at San Diego, California, this 7th day

23 of August 1961.

24
                                    _John Swader_
25                                  Official Reporter

JOHN SWADER, OFFICIAL REPORTER