VOLUME NO.: 170           MR. VEEDER

# IN THE UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

#### SOUTHERN DIVISION

---

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

---

UNITED STATES OF AMERICA,

         Plaintiff,

     vs.                  No. 1247-SD-C

FALLBROOK PUBLIC UTILITY DISTRICT, et al.,

         Defendants.

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:    San Diego, California

Date:    September 15, 1961

Pages:    17,893 to 17,908

**FILED**

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ Deputy

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

VOLUME 170                                                          17893

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,            )
                                     )
                Plaintiff,           )
                                     )
        vs.                          )   No. 1247-SD-C
                                     )
FALLBROOK PUBLIC UTILITY             )
DISTRICT, et al.,                    )
                                     )
                Defendants.          )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California

Friday, September 15, 1961

- - -

APPEARANCES:

    For the Plaintiff:    WILLIAM H. VEEDER, ESQ.,
                                    Special Assistant to the
                                    Attorney General

                                    CDR. DONALD W. REDD

    For the Defendants:

        Vail Company:          GEORGE STAHLMAN, ESQ.

        STATE OF CALIFORNIA:   FRED GIRARD, ESQ.

        Fallbrook Public
        Utility District, et al:  FRANZ R. SACHSE, ESQ.

17,894

1  SAN DIEGO, CALIFORNIA, FRIDAY, SEPTEMBER 15, 1961, 10:00 A.M.
2              ---oOo---
3     (Other matters.)
4     THE CLERK: Four, 1247-SD-C, United States vs. Fallbrook.
5     THE COURT: Mr. Veeder, I suppose the Governor and the heads of all the State Departments pulled out the red carpet for you the last couple of days.
8     MR. VEEDER: They did. It was wonderful, your Honor.
9     THE COURT: They found you were a man of importance up there?
11    MR. VEEDER: I found at least they would speak to me, which was very fine.
13    THE COURT: No hereafters? They forgave you for all the bad things you said in the past?
15    MR. VEEDER: I think they did. They understood that when we are batting the ball around we are not too serious about it —
18    THE COURT: I'm glad you had a good trip
19    MR. STAHLMAN: Are you going to have a travelogue on this?
21    MR. VEEDER: I'd be glad to give it.
22    MR. GIRARD: Have you got some films?
23    MR. VEEDER: Only from the record
24         I am writing quite a report on it, your Honor, and I fully intend to go to Burbank, Glendale and Riverside and

17,895

1  give you quite a full rundown on practices and procedures

2  in regard to water law in the State of California.

3     MR. STAHLMAN: Go to Temecula and Bonsall, also.

4     THE COURT: I might say that I did not have a chance to

5  get a full report on this, but last night I found Mr. Veeder

6  deep in the books and I saw on his desk a copy of an opinion

7  by Judge Ault of the Superior Court, a Judge for whom I have

8  a good deal of respect.

9     You have also already been to Carlsbad? Or are you going

10 there?

11    MR. VEEDER: I haven't been there yet, your Honor. But

12 I certainly intend to cover the waterfront  I have been

13 reading the record of what imminent counsel said on some of

14 these things, and I think it is very important to the Marine

15 Corps that this matter be fully cleared up

16    THE COURT: What business do we have this morning?

17    MR. VEEDER: I have a question, your Honor. I started

18 to revise the 34 or 33-A series, that is, the vagrant, local,

19 percolating water situation. Do you have the transcript for

20 the last hearing?

21    THE COURT: Yes.

22    MR. VEEDER: On Page 17,877 your Honor refers to the map

23 which is incorporated by reference into this form of

24 interlocutory judgment.

25    MR. STAHLMAN: On what line?

JOHN SWADER, OFFICIAL REPORTER

MR. VEEDER: From Line 14 on down to the bottom of the page and at the top and on down to Line 6 on 17,878.

I comprehend from your Honor's instruction there, and I have undertaken to write language to the effect that there are depicted on that map parcels of land to which this interlocutory judgment does not relate by reason of the fact that the ground waters are a part of the Santa Margarita River stream system.

Is that what you desire on that? Before I change it I want to be sure.

THE COURT: Did you gentlemen get together as I instructed you to and talk about this? Or have you done nothing about it since you were here?

MR. GIRARD: Your Honor, I talked to Mr. Veeder about it as far as the Code difficulties you mentioned before, and both he and I agreed that it should be done by a separate order.

MR. VEEDER: Yes.

THE COURT: What I had in mind is this. You have set forth a map and on the map you have parcel numbers. There is nothing in these findings that tells about that, and it is actually those portions, those pieces of property which are identified by parcel numbers which are involved in this decree. Isn't that it?

MR. VEEDER: That is the fact. And it would be a very simple matter to make the revision, if that is precisely what

1  you want done. I have undertaken to use the language along

2  that line. It was not clear.

3  THE COURT: I would just like the judgment to express what

4  this is all about. You state "upon which are located all the

5  lands described and referred to in this Finding." The map

6  shows other lands. That there are designated by parcel

7  numbers, with numbers in circles, the parcels which are

8  affected by these interlocutory findings and this interlocutory

9  judgment.

10  MR. VEEDER: All right.

11  THE COURT: I don't know how the rest of it reads.

12  MR. VEEDER: The rest of it will be very simple, your

13  Honor. Your instructions were not clear on that. There were

14  revisions you wanted. I was not sure whether you wanted me

15  to change that all in regard to the map.

16  THE COURT: There is another thing you need. In other

17  words, in describing these lists, you have attached one of

18  these lists by parcel numbers. Which one is that now?

19  MR. VEEDER: The land description list, the one that is

20  referred to in "c".

21  THE COURT: What do you propose to do? To use the old

22  numbering system and have this order apply to everything?

23  Or were you going to change this from here on out and

24  describe these hieroglyphics?

25  MR. VEEDER: We agreed that we would use a general order

1  that would take care of all down through 34-A and thereafter

2  these suggestions be incorporated.

3  THE COURT: Then I think "c" on Page 3 should go further

4  and say, "are the land descriptions of the properties

5  referred to in these Findings enumerated by parcel numbers

6  or by the parcel numbers that are referred to on the map" --

7  tie them in together. And then probably in here also would

8  be explanations that all of this property is in Eight or Nine

9  Townships South -- you have used only the first designation

10 of Eight or Nine; that the next with the letter before the E

11 refers to Range so-and-so east; that the last number is the

12 parcel number and that the number in between is the section

13 number.

14 MR. VEEDER: I have that language all worked out and I

15 will make the changes, your Honor.

16 THE COURT: What else have you got to work on?

17 MR. VEEDER: We have a tremendous amount to work on, your

18 Honor.

19 THE COURT: Anything here in court?

20 MR. VEEDER: Nothing for us. I have just received a copy

21 of some findings from Mr. Girard I haven't looked at.

22 THE COURT: I haven't looked at them either.

23 MR. GIRARD: Along the line of these findings, maybe I

24 should point out procedurally how I approached this, your

25 Honor.

THE COURT: Is this this ground water area?

MR. GIRARD: This is the ground water area, your Honor. This is Temecula and Murrieta and all the principal streams or tributaries within the ground water area. Yes, this is the Temecula-Murrieta groundwater area.

In essence, the way I treated it was first to take Murrieta, define what Murrieta Creek is, and then just state that attached to these findings is an Exhibit A, incorporated herein, which are descriptions of the smallest tract of land held under one chain of title, part of which abuts upon or is traversed by Murrieta Creek. Then I went through the same procedure with Temecula Creek, Santa Gertrudis Creek, Warm Springs Creek, Cole Canyon, Slaughter House Canyon Creek and Wolf Valley-Pechanga Creek. So it will tie into all these separate exhibits.

Then I made the findings on the areas of older alluvium and the younger alluvium within the groundwater area which are not part of the stream and made a separate finding as to those to the effect that they were attached hereto, marked Exhibit H, incorporated herein by reference, et cetera.

In other words, so for each stream, and for all of the areas which are overlying and which contribute to the Santa Margarita River there is a separate finding with property descriptions and the finding states that those properties have either riparian or overlying rights specifically.

1           Then I approached it in another manner by attaching a
2  separate finding which would lift the factual matters, such
3  as irrigable acreage, et cetera, as to each one of those
4  lands.

5           THE COURT:  You have generally followed the pattern of
6  proceeding in this manner.  The area between the two fault
7  lines in the Murrieta you found to be --

8           MR. GIRARD:  I found the areas between the two fault
9  lines to be part of Murrieta Creek, the groundwaters, and the
10 waters which lie beneath the younger alluvium in Pauba Valley,
11 Santa Gertrudis Creek and all those other creeks to be part
12 of those specific creeks.

13          THE COURT:  And then the other area of older alluvium
14 in between?

15          MR. GIRARD:  And the other areas of older alluvium in
16 between adds to and contributes to the Santa Margarita River
17 but is not in a known and defined channel, but the ownerships
18 of land above that are described in a separate exhibit and
19 have correlative overlying rights to the use of groundwaters
20 in that area.  There is some younger alluvium on the Murrieta
21 side, on one side of the fault, which is not between the
22 fault lines.  So it would be that little bit of younger
23 alluvium and all the rest of the older alluvium which is not
24 in a previously found specific creek have overlying rights.
25 There is a specific conclusion of law that the groundwaters

1  will be subject to the continuing jurisdiction of this Court,
2  et cetera.
3      THE COURT: Have you done this on your own or in
4  consultation with Mr. Stahlman and Mr. Veeder?
5      MR. GIRARD: I did this entirely on my own last week,
6  your Honor. I have discussed it with Mr. Sachse and Mr.
7  Stahlman this morning. I gave Mr. Veeder a copy of it this
8  morning. I don't think he has read it and we haven't discussed
9  it.
10     THE COURT: All right. What date shall we fix for
11 further hearing? Monday or Tuesday next?
12     MR. SACHSE: As soon as would fit your Honor's
13 convenience, I would prefer.
14     MR. STAHLMAN: The Bar Convention is the following week.
15     THE COURT: Suppose I continue this to Tuesday morning
16 the 19th and ask you gentlemen to proceed with some of these
17 matters.
18     MR. SACHSE: I would like to say, from a hasty reading
19 of this -- I can't refer for the moment to the exact
20 language -- I think the setup that Mr. Girard has outlined
21 here is simply excellent. I think from the standpoint of a
22 person who would read this finding and want to know what his
23 rights were and most readily be able to ascertain them, this
24 breakdown system he has, I think, is very good.
25     THE COURT: I will try to read it before Tuesday.

MR. STAHLMAN: I think it is very good, too, your Honor.

MR. GIRARD: I might add about four conclusions of law that are not on this, which I will have on Tuesday. I ran out of time in Sacramento last night because I had to catch a plane. I will bring those in.

THE COURT: All right.

MR. STAHLMAN: I think they are excellent also, in the first place because they are similar to the method that I used on the Vail findings. Also, because of the fact that we now come around to the conclusion I have always contended for; it is an actual situation that exists upon the stream.

MR. VEEDER: I am glad that George is happy.

THE COURT: Any comments before you read them?

MR. VEEDER: I reserve comment, your Honor. It will be extensive -- my comment.

MR. STAHLMAN: How about the Sacramento trip? Did anything come out of that that we should know about?

MR. VEEDER: It is going to be in a brief, George.

MR. GIRARD: Mr. Veeder, I presume when we come back on Tuesday as far as your are concerned we will direct our attention to these findings or to your brief?

MR. VEEDER: We will direct our attention to these findings, if that is all right, your Honor.

THE COURT: When will your brief be ready?

MR. VEEDER: Just as rapidly as I can get it ready, your

1  Honor.

2  THE COURT: That is very informative. What date?

3  MR. VEEDER: I will try to get it in by a week from
4  today.

5  MR. GIRARD: Because to a certain extent these findings
6  are conditioned on that issue which Mr. Veeder has raised.

7  MR. VEEDER: Based on the comments that have been made
8  in regard to the time that these cities diverted water for
9  the first time -- for example, they said that all of Lodi's
10 appropriative rights arose after 1914. That is simply not
11 the case. That is an error.

12 MR. GIRARD: Arose prior to 1914?

13 MR. VEEDER: Arose prior to 1914.

14 MR. GIRARD: I didn't say that. I said the case would
15 indicate that they arose at least prior to 1918.

16 MR. VEEDER: That is not the case.

17 THE COURT: When did they arise?

18 MR. VEEDER: The history of the Lodi rights, as nearly
19 as the City Manager and the Mayor gave me -- and I am sending
20 someone up there to check this out, so that you will have
21 precise information on it -- the town was incorporated, as
22 I remember, in 1908. In 1910 it bought one well. At that
23 time there were 600 people being served by the City of Lodi.
24 Thereafter, they drilled six wells prior to the litigation,
25 all after 1914.

1   THE COURT: All except the first well?

2   MR. VEEDER: All except the first well.

3   THE COURT: On the same land?

4   MR. VEEDER: Well, in the same general area. And they
5   went ahead with their development and it is now a sizeable
6   city.

7   THE COURT: The week of the 25th is the State Bar week.
8   If you don't file your brief until Friday the 18th, then,
9   of course, having gotten it on Friday, they will not be able
10  to discuss it until they have studied it. Then the following
11  week, the week of the 25th, is the State Bar week. And then
12  I expect to take a vacation for two or three weeks. So the
13  only time we could have some discussion on it would be the
14  week of the 25th.

15  MR. SACHSE: That is the Bar week. It doesn't matter to
16  me.

17  THE COURT: Are you going to be gone all that week, Mr.
18  Stahlman?

19  MR. STAHLMAN: I have made arrangements with some other
20  lawyers. We are going to be up there Tuesday and stay until
21  Friday.

22  THE COURT: Is there any way you could get this in to us
23  the middle of the week beginning the 18th?

24  MR. VEEDER: I will try very hard. I will spend the week
25  on it. I will try very hard. It is a matter of getting it

1 reproduced as much as anything.

2 THE COURT: That is next week.

3 MR. VEEDER: That is right. I will try as hard as I can
4 to get it in as soon as I can. I am as anxious as anybody
5 to get this disposed of.

6 THE COURT: Will you do this also? Since you are going
7 to rely upon that memorandum by Judge Ault, give me a copy
8 of it and give counsel a copy.

9 MR. VEEDER: They are being made at this moment, your
10 Honor.

11 MR. GIRARD: To expedite things, if Mr. Veeder can give
12 me the application numbers with which he is concerned in the
13 State Water Rights Board and the background of the cases he
14 intends to rely on, I would be willing to argue it the same
15 day I get the brief. I don't need two weeks preparation, if
16 he will just give us the authorities.

17 THE COURT: If you will give them the material so that
18 they can make their checks.

19 MR. STAHLMAN: In connection with the Lodi case, will you
20 get the factual background as to where these wells were
21 drilled?

22 MR. VEEDER: Yes, I went down and saw the wells.

23 MR. STAHLMAN: I know you saw every well in the Santa
24 Margarita. Have you got the background as was testified to
25 in the case?

1    MR. VEEDER: You mean did I read the entire record?

2    THE COURT: Mr. Veeder, you understand Mr. Girard's
3    request. The request is that if you are going to talk about
4    certain appropriative rights that you give Mr. Girard, Mr.
5    Stahlman and Mr. Sachse the number of the State Water Rights
6    Board Proceeding, the data, so that they could check out
7    facts that they want to check beforehand.

8    MR. VEEDER: Yes.

9    THE COURT: This will expedite it.

10   MR. GIRARD: Then we will be ready to argue the day we
11   receive the brief.

12   THE COURT: Also the particular cases you are relying
13   on in relation to the nature of the appropriative right.

14   MR. VEEDER: Yes. Are you going to be here this
15   afternoon?

16   MR. SACHSE: Yes.

17   THE COURT: I will continue the matter to Tuesday morning,
18   September 19th, at 10:00 o'clock.

19   MR. STAHLMAN: I think at that time I will also have
20   the Vail findings, your Honor. They are completed. It is
21   a matter of having them typed up.

22   THE COURT: All right.

23   MR. VEEDER: May I anticipate a little bit now. The
24   week starting the 25th is the State Bar Association week,
25   isn't that right?

1       THE COURT: That is right.

2       MR. VEEDER: And you don't intend to have hearings at that
3  time?

4       THE COURT: I don't know what we will do. Mr. Stahlman
5  wants to be away. There are certain matters we might do,
6  if we have Mr. Girard here. Mr. Sachse is not going. They
7  can be working on this matter. We will see when we get there.
8  I don't want Mr. Stahlman to cancel his important engagements
9  that he made.

10      MR. STAHLMAN: If it is important, I will cancel it. The
11  State Bar has got along some years without me -- not so well.

12      MR. SACHSE: We might, Bill, have some of these things
13  with which you are not directly concerned -- I don't know
14  how far you are along on them -- that we can work on during
15  the Bar week, such as the areas we talked about between the
16  Narrows and Sandia Creek.

17      THE COURT: I want to keep you working.

18      MR. SACHSE: I am very much in favor of it.

19      THE COURT: Tuesday morning at 9:30 on September 19th.

20      MR. GIRARD: Your Honor, you said 9:30 and 10:00 o'clock
21  on Tuesday. Which do you want?

22      THE COURT: Mr. Stahlman wants 10:00. We will have it at
23  10:00.

24      MR. STAHLMAN: Fine.

25      (Adjournment until Tuesday, September 19th, 1961, at    )
        (                                                       )
        (10:00 o'clock a.m.                                     )

JOHN SWADER, OFFICIAL REPORTER

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,        )
                                 )
                    Plaintiff,   )
                                 )
  vs.                            )   No. 1247-SD-C
                                 )
FALLBROOK PUBLIC UTILITY DISTRICT,)
et al.,                          )
                                 )
                    Defendants.  )
_____)

## CERTIFICATE OF REPORTER

I, the undersigned, do hereby certify that I am, and on the date herein involved, to wit: September 15, 1961, was duly qualified, appointed and acting official reporter of said Court.

That as such official reporter I did correctly report in shorthand the proceedings had upon the trial of the above entitled case; and that I did thereafter cause my said shorthand notes to be transcribed, and the within and foregoing 16 pages of typewritten matter constitute a full, true and correct transcript of my said notes.

WITNESS my hand at San Diego, California, this 15th day of September, 1961.