MR. VEEDER

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

---

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>  vs.<br><br>FALLBROOK PUBLIC UTILITY<br>DISTRICT, et al.,<br><br>              Defendants. | No. 1247-SD-C |

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

**Place:**    San Diego, California

**Date:**    Tuesday, December 5, 1961

**Pages:** 18,499 to 18,516

FILED
SEP 24 1963
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

JOHN SWADER
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

<pre>
1                IN THE UNITED STATES DISTRICT COURT
2                SOUTHERN DISTRICT OF CALIFORNIA
3                        SOUTHERN DIVISION
4                             - - -
5        HONORABLE JAMES M. CARTER, JUDGE PRESIDING
6                             - - -
7   UNITED STATES OF AMERICA,    )
                                 )
8                  Plaintiff,    )
                                 )
9        vs.                     )   No. 1247-SD-C
                                 )
10  FALLBROOK PUBLIC UTILITY     )
    DISTRICT, et al.,            )
11                               )
                   Defendants.   )
12  _____
13              REPORTER'S TRANSCRIPT OF PROCEEDINGS
14                      San Diego, California
15                    Tuesday, December 5, 1961
16  APPEARANCES:
17      For the Plaintiff:        WILLIAM H. VEEDER, ESQ.,
                                  Special Assistant to the
18                                Attorney General
19                                CDR. DONALD W. REDD
20      For the Defendants:
21        Vail Company:           GEORGE STAHLMAN, ESQ.
22        State of California:    FRED GIRARD, ESQ.
23        Fallbrook Public Utility FRANZ R. SACHSE, ESQ.
          District, et al.:
24
25
</pre>

SAN DIEGO, CALIFORNIA, Tuesday, December 5, 1961, 9:30 A.M.

-oOo-

MR. VEEDER: Are you ready for us to proceed, your Honor?

THE COURT: Yes. At ten o'clock I have a jury trial going on, which will probably go today and tomorrow. So I thought I would see where we were and line out what our plans will be for the next few days.

MR. VEEDER: Your Honor, you had directed Colonel Bowen to undertake a study for the purpose of determining whether it was possible to resolve the conflict between the Fallbrook Public Utility District and the United States of America by means of a physical solution, contemplating the construction of a storage reservoir.

Colonel Bowen has undertaken that review and has considered pertinent data in regard to that solution. At this time, however, there is no final determination among the interested agencies of the United States in regard to the possibility of resolving the conflicting issues by a physical solution that you directed Colonel Bowen to undertake.

However, there is an agreement among the agencies that (a) the United States should undertake construction of a dam on the Naval Enclave at the De Luz site designed to conserve and utilize all the water of the Lower Santa Margarita River that reaches the Enclave.

There can be no physical solution involving the proposed

1  dam by Fallbrook Public Utility District at the Fallbrook
2  Lippincott site by reason of the fact that a dam at that point
3  of the size proposed by Fallbrook Public Utility District
4  would not conserve and utilize all the waters that are
5  involved and would render infeasible the construction of a
6  dam at the De Luz site.
7  It was agreed, moreover, that there could be no determina-
8  tion of a firm supply of water for the Fallbrook Public Utility
9  District by reason of the erratic nature of the runoff of
10 the Santa Margarita River.  However, the United States would,
11 of course, make available to qualified users any surplus over
12 and above its needs on an if, as and when basis, and at a
13 price to be determined -- at the existing cost of water at
14 the time that the surplus was available.
15 Now, we simply have outlined to you the present status
16 of the matter, believing that there may be in future some
17 further developments, and if so they will be reported to
18 your Honor.
19 THE COURT:  Has Colonel Bowen made a written report?
20 MR. VEEDER:  He has made what has been designated a
21 "Tentative Report" that was sent to Admiral Powers of the
22 Judge Advocate General's Office.  There has been no official
23 report made and there has been no clearance of any official
24 report by either the Judge Advocate General's Office or by
25 the Headquarters, Marine Corps.

THE COURT: Well, I don't know what all this means, except that there has been some report made and we can't see it yet, and some tentative conclusions have been reached by the Federal Agencies involved.

MR. VEEDER: Well, I think it can be said that the United States would oppose the construction of a dam at the Fallbrook Lippincott site, believing that the only really efficient way of handling whatever water is available would be a dam at the De Luz site constructed on the Enclave and constructed by the United States.

THE COURT: Well, when you say "oppose," how would you oppose the construction of a dam by Fallbrook?

MR. VEEDER: Well, we think it is not desirable. That is the opposition.

THE COURT: Will you keep us advised of any developments in this matter?

MR. VEEDER: Your Honor, we will, and the matter is now being considered in Washington. But I believe what I have stated is firm in the thinking at this time.

THE COURT: Let me go into a couple of other matters here.

Judgment No. XXX. I received a copy. It says "Lodged." I suppose it is a copy. Do you have the original that has been lodged? There are no exhibits attached to it yet.

MR. GIRARD: No, there is no exhibit. This is proposed

findings. The exhibits will have to be attached to it. There are, as I pointed out in my covering letter of transmittal, a couple of things that haven't been approved in this yet.

I might add that I have a letter from Mr. Krieger, who has some comments and perhaps objections on some of it. He will want to be heard.

THE COURT: Mr. Luddy (the Clerk), that is an old one that has been revised. I am trying to figure out whether I have the original here or a copy.

MR. GIRARD: That was mailed out on November 10th.

THE COURT: I have a copy lodged on the 13th.

MR. GIRARD: I enclosed two copies to the Court.

THE CLERK: I am sure you got a copy, your Honor.

MR. GIRARD: I have another one, if you need another one.

THE COURT: No.

What is the program for getting these exhibits attached?

MR. GIRARD: I would have to ask Commander Redd and Colonel Bowen. I don't know what the program is for the exhibits. That is the Murrieta Findings.

MR. VEEDER: I had assumed that I would confer with Mr. Girard in regard to these attachments, your Honor. There is a vast amount of work to be done in connection with it.

MR. GIRARD: I have no doubt that the property descriptions that have to be attached is a large assignment.

THE COURT: Who has looked over Interlocutory Judgment No. XXX?

MR. SACHSE: I have, your Honor.

THE COURT: Mr. Sachse has. Mr. Girard. Mr. Stahlman?

MR. STAHLMAN: Your Honor, I have just merely glanced at it. I have been in trial for two weeks straight.

MR. GIRARD: As I point out in my accompanying letter, your Honor, there are only two of these findings that have been changed from our last discussions in court. All of the language which the Court ordered to be corrected is taken care of.

Finding No. I, the addition, is how the Court set the boundaries of the ground water area by using the metes and bounds, et cetera.

The other is Finding No. XIX, which concerns the prima facie problem. I think this is the better way to do it, better than the one we have. The definition of what is prima facie evidence is, of course, taken from the Code of Civil Procedure of the State of California.

MR. STAHLMAN: How about that smallest parcel?

MR. GIRARD: That smallest tract is a problem.

MR. VEEDER: I didn't hear that.

MR. GIRARD: There is another problem on the ground water where we may have to change I. I will talk to you about that.

THE COURT: I have read them over and they conform, generally, to what we talked about. Mr. Veeder had reserved the right to discuss further this prima facie matter. I asked him if he didn't think he could go along with this proposal.

Have you had a chance to study it?

MR. VEEDER: I have considered it, your Honor, and I really think the matter of irrigable acreage goes beyond the question of just prima facie finding. However, I have filed general objections, your Honor, which were presented to your Honor, I believe, on the 23rd of October, 1961. Your Honor has considered those at the last hearing.

Now, for the purpose of the record, I would appreciate perhaps some direction from you. Do you desire us to make new and specific objections to these forms -- to these proposed findings?

THE COURT: I don't think you have any obligation to do that. I think the record will show your failure to acquiesce in a lot of these matters. That is all that is needed. The only way you could be hurt by findings would be in those situations where you had consented to or approved a certain finding.

MR. VEEDER: I am hopeful to have these things move along, frankly, and I dislike to delay them by further argumentation when I think you know our position.

THE COURT: There is only one major thing that I think

of about these findings -- I mentioned it last time, and I don't know, maybe it was resolved -- and that is, there are conclusions of law and there are judgments about the riparian rights and the overlying rights. There is no conclusion or finding on any part of the judgment that says that we are going to treat the riparian and the correlative rights as co-equal, that there is correlation between the overlying and the riparian rights.

MR. GIRARD: That is correct; there is none. In my opinion, it follows as a matter of law. I have no objection.

THE COURT: If all of counsel agree that it follows as a matter of law, then I will quit talking about it. You all agreed, as I recall, heretofore that when you said that certain land had riparian rights that told the whole story; you didn't have to talk about whether rights ran upstream or downstream or what the relationship was, because it is a matter of California Water Law. That part, I understand, you all agreed on.

MR. VEEDER: I think that is correct; that we have viewed the matter of riparian carries with it legal connotations.

I have repeatedly said, your Honor, I am not quite sure what is meant by the term "co-equal" when you refer to overlying and riparian rights.

THE COURT: I have just raised the point. We haven't

said what the relationship is between them. We can't spend a lot of time on it this morning. I wish you would list that as one matter to talk about. Either get some agreement in here that you are all talking about the same thing, or we will put a conclusion in Judgment No. XXX.

MR. SACHSE: In Mr. Krieger's letter, your Honor, that is a point that he makes.

THE COURT: What letter is this?

MR. SACHSE: He wrote a letter to me and to Mr. Girard.

MR. VEEDER: Did he send us copies?

MR. SACHSE: As far as it shows, it shows only a copy to me and to Mr. Girard, Mr. Veeder.

And he does make the point that he feels that we should spell out that all rights within the ground water area, overlying and riparian, are correlative.

THE COURT: Will you gentlemen put that on a list to talk about and see if you can come up with something that satisfies you and me.

Let's pass Judgment No. XXX, then, with the understanding that you will explore what progress is being made on the exhibits; explore this overlying and riparian situation; and Mr. Veeder will have another look at this prima facie matter and see if we can't get through talking about Judgment No. XXX.

Now, on the Findings that I have pertaining to Joseph

1  Pendleton Naval Hospital Ammunition Depot, the date at the
2  top is 11-17-61. They were lodged on November 21. This was
3  a draft by Mr. Girard.

4  MR. GIRARD: That is correct, your Honor. There are,
5  incidentally, some corrections that Mr. Sachse has already
6  called my attention to which will have to be done.

7  THE COURT: Let's give this a number.

8  MR. GIRARD: I gave it No. XXXIV.

9  THE COURT: All right. I didn't see it.
10  Do you have the original of that, Mr. Clerk?

11  THE CLERK: Yes, I do, your Honor.

12  MR. STAHLMAN: There is already a number XXXIV.

13  THE COURT: No, XXXIV is the Military Enclave.

14  MR. WILKINSON: What is Temecula Creek above Vail Dam,
15  then? Vail Dam is No. XXXV.

16  MR. GIRARD: What is Temecula above Vail Dam? Is there
17  a finding for that?

18  MR. STAHLMAN: Reading the transcript, there seems to
19  be some conflict on it.

20  MR. VEEDER: I have those in my office, Mr. Stahlman.

21  MR. GIRARD: We will straighten it out.

22  MR. VEEDER: If you will come down there, I will give
23  it to you.

24  THE COURT: For the time being, No. XXXIV is the
25  Military Enclave.

1        Mr. Sachse, your proposals relate to No. XXXIV also?

2        MR. SACHSE:  Yes, sir.

3        THE COURT:  Let's put these numbers up where we can see them, instead of burying them at the bottom.

5        What is the status on No. XXXIV?

6        MR. GIRARD:  That has been lodged.  I don't think No. XXXIV is in the final stage that Murrieta-Temecula is.  As I pointed out, there are some corrections that Mr. Sachse has called my attention to.  Maybe somebody else has some suggestions.  He has some suggestions.  I think this would have to be redrafted or changed after we argue it out in court here.

13       THE COURT:  Are you gentlemen going to do some work on this, this week?

15       MR. GIRARD:  As far as I am concerned, I have looked at Mr. Sachse's objections and corrections.  I have no objection to them.

18       I was served yesterday by Mr. Veeder with a copy of some findings of fact and conclusions of law.

20       THE COURT:  Yes, I have those.

21       MR. GIRARD:  I presume that Mr. Veeder will want to talk about it, or at least object to or discuss these.

23       THE COURT:  Mr. Veeder, do you want these lodged?

24       MR. VEEDER:  Yes, I wanted those lodged, your Honor.

25       THE COURT:  All right.  And these concern XXXIV also?

MR. VEEDER: They are the Enclave. They are our proposals.

MR. GIRARD: They do go further than the Enclave, though, don't they?

MR. VEEDER: Everything below the Gorge on down.

MR. GIRARD: I was just glancing casually at them on the plane. There is some discussion about Vail Company, Pauba Valley, et cetera, isn't there?

MR. VEEDER: Yes, they are on the Enclave.

THE COURT: They concern XXXIV, in major part.

MR. GIRARD: All right. These are, then, directed, Mr. Veeder, to Finding XXXIV?

MR. VEEDER: Yes, they are.

THE COURT: This is called Part 2. Did you have a Part 1?

MR. VEEDER: Yes, your Honor, I lodged those with the Court, I think, in October, in which we proposed findings in regard to the area below Vail Dam and above Temecula, which would be Murrieta-Temecula Basin and everything above that.

MR. STAHLMAN: We discussed those findings.

MR. VEEDER: Those have been considered by your Honor. I proposed at that time to make proposed findings in three parts.

THE COURT: In three parts?

1   MR. VEEDER: That is right.

2   THE COURT: What are the three parts?

3   MR. VEEDER: The third part of the proposed findings
4   would be above Vail Dam.

5   MR. GIRARD: Are we going to have your suggested or
6   proposed findings for Camp Pendleton, Mr. Veeder, which
7   follow the suggested language and take into account the
8   Court's rulings? As I read these findings here, they are
9   all connected to findings where you conclude that the stream
10  is just the area of the surface flow. Are we going to have
11  a finding which encompasses the Court's rulings?

12  MR. VEEDER: I am making the proposal as I would like
13  to see the findings adopted.

14  MR. GIRARD: All right, I have no objection.

15  THE COURT: Let's talk a minute about No. XXXV, I think
16  was the number assigned to Vail.

17  MR. STAHLMAN: Yes, your Honor.

18  THE COURT: What has been done further on that?

19  MR. STAHLMAN: I think that the Murrieta Findings should
20  be completely concluded. Your Honor will recall that we went
21  through the Vail Findings, I think, completely. There were
22  suggested changes. We have met and made those changes. We
23  have been somewhat handicapped.

24  THE COURT: But nothing has been lodged so far.

25  MR. STAHLMAN: No, your Honor.

1  THE COURT: You have just a work draft and so there is
2  nothing important about lodging any of these drafts.
3  MR. STAHLMAN: No.
4  MR. GIRARD: That draft that Vail has submitted I am
5  sure will have to be changed to correspond.
6  MR. STAHLMAN: The changes proposed in court and made
7  in court we have endeavored to make on our master copy, so
8  we can make copies of it. We should have it probably by the
9  end of the week or next week.
10  MR. VEEDER: May I present an inquiry now, your Honor.
11  Is it your Honor's direction that the United States proceed
12  with the preparation of the attachments and exhibits which
13  are to be made part of Interlocutory Judgment No. XXX per-
14  taining to the Murrieta-Temecula area?
15  THE COURT: Very definitely.
16  MR. VEEDER: That is your order?
17  THE COURT: Yes.
18  MR. GIRARD: The only other one we have, I think, that
19  is completely ready is the Diamond-Domenigoni Valley one,
20  which I submitted quite a while ago. I think they are
21  waiting for the exhibits on that. I am not sure.
22  MR. VEEDER: I would appreciate it if Mr. Sachse and
23  Mr. Girard could come to my office and go over the Diamond-
24  Domenigoni Valley Findings and Conclusions. I have been
25  working on them. I have worked on them two days now, and I

1  think there are things that we ought to review in connection

2  with them. They are on my desk now, if you have a few

3  minutes after court.

4      MR. SACHSE: Any time you want.

5      MR. GIRARD: The others, of course, are the Anza and

6  Coahuilla Valley, which I have submitted. And we are waiting

7  for Mr. Veeder on the rest of Wilson Creek. And I think the

8  only other drafting job I have left assigned to me is the

9  Gibbon and Cottle problem, where you were going to direct me

10 how you were going to rule.

11     THE COURT: I have trouble identifying these copies, and

12 if you would put your name and a date up in the corner, and

13 if we could use a number, so that I can keep some of my files

14 together.

15     I have in front of me this document.

16     MR. GIRARD: That is Mr. Veeder's.

17     THE COURT: Murrieta Above The Gorge And Below The Dam.

18     MR. VEEDER: That is right. That was lodged on the 23rd.

19 You have already considered that.

20     THE COURT: What does this pertain to? It pertains, in

21 part, to Vail Dam?

22     MR. VEEDER: No, it is below the dam, your Honor, and

23 above Temecula Gorge. It related to what you have designated

24 the Murrieta --

25     THE COURT: Ground water area.

1  MR. VEEDER: That is correct.

2  MR. GIRARD: What is that one dated, Bill?

3  THE COURT: It was lodged on October 23rd.

4  MR. STAHLMAN: Is it contemplated that there will be
5  a separate finding on that Aguanga area above the Dam?

6  MR. VEEDER: My proposal is to take in the whole area,
7  which would include the Aguanga area.

8  THE COURT: We have already worked on a program to have
9  Judgment No. XXX be the Temecual-Murrieta ground water area.

10  MR. VEEDER: Yes.

11  THE COURT: Why change horses in the middle of the stream?
12  Why not get another one to take care of the Aguanga area?

13  MR. VEEDER: All right. I will do what you want.

14  THE COURT: Anyhow, this is identified as being your
15  suggestions as to No. XXX.

16  MR. VEEDER: That is right.

17  MR. GIRARD: You want our names on the drafts from now
18  on?

19  THE COURT: Yes, if you could. There is nothing on this,
20  no number or anything.

21  MR. GIRARD: I am shocked that your Honor can't dis-
22  tinguish mine from Mr. Veeder's.

23  THE COURT: Will you spend some time today and be back
24  here tomorrow morning?

25  MR. STAHLMAN: I can't be back here tomorrow morning on

1    account of this trial.

2    THE COURT: Well, we could get along probably without
3    you for a while.

4    MR. SACHSE: We don't need Mr. Stahlman. I think we
5    can agree we will start to work on XXXIV. I think No. XXXIV
6    is due for the type of line by line correction that we did
7    on Murrieta prior to this last draft.

8    It so happens that I have just four corrections. They
9    are not included in a memorandum I sent you, because they
10   are just purely factual corrections that I know will be
11   approved. I know there are similar errors where mistakes
12   have been made, and it is time that we start that job on that
13   one.

14   THE COURT: Can you do some work between yourselves?
15   Some of these matters you will agree upon and save my time
16   on it.

17   MR. SACHSE: Yes.

18   THE COURT: My time is more no valuable than yours, but
19   I have this jury trial I have to wind up.

20   MR. SACHSE: I am available. I plan to be here.

21   THE COURT: All right. Then let's meet tomorrow morning
22   at 9:30.

23       (Thereupon an adjournment was taken until Wednesday,)
24       (                                                    )
         (December 6, 1961 at 9:30 o'clock a.m.                )
25
                              - - -

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

UNITED STATES OF AMERICA,  )
                           )
            Plaintiff,     )
                           )
      vs.                  )   No. 1247-SD-C
                           )
FALLBROOK PUBLIC UTILITY   )
DISTRICT, et al.,          )
                           )
            Defendants.    )

CERTIFICATE OF REPORTER

I, the undersigned, do hereby certify that I am, and on the date herein involved, to wit: December 5, 1961, was a duly qualified, appointed and acting official reporter of said Court.

That as such official reporter I did correctly report in shorthand the proceedings had upon the trial of the above entitled case; and that I did thereafter cause my said shorthand notes to be transcribed, and the within and foregoing eighteen (18) pages of typewritten matter constitute a full, true and correct transcript of my said notes.

WITNESS my hand at San Diego, California this 6th day of December, 1961.

_____
Official Reporter

JOHN SWADER, OFFICIAL REPORTER