# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

### HONORABLE JAMES M. CARTER, JUDGE PRESIDING

— — —

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT,
et al,

Defendants.

No.   1247-SD-C

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:   San Diego, California

Date:    Friday, April 6, 1962

Pages:   19,619 to 19,670

FILED

SEP 2 4 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

JOHN SWADER
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

---

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) No. 1247-SD-C |
| FALLBROOK PUBLIC UTILITY DISTRICT, et al., | ) |
| Defendant. | ) |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California

Friday, April 6, 1962

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | WILLIAM H. VEEDER, ESQ., Special Assistant to the Attorney General |
| | CDR. DONALD W. REDD |
| For the Defendants: | |
| Vail Company: | GEORGE STAHLMAN, ESQ. |
| Fallbrook Public Utility District, et al.: | FRANZ R. SACHSE, ESQ. |

19,620

1    SAN DIEGO, CALIFORNIA, FRIDAY, APRIL 6, 1962, 10:00 A. M.

2                          ---oOo---

3         (Another matter.)

4         THE COURT:  Call the Fallbrook case.

5         THE CLERK:  Three, 1247-SD-C, United States vs.

6    Fallbrook.

7         THE COURT:  Do you have that judgment ready on the

8    Enclave?

9         MR. VEEDER:  It is not assembled yet, your Honor.

10        THE COURT:  It will be this morning?

11        MR. VEEDER:  Yes.

12        THE COURT:  Were we down to Paragraph 62?

13        MR. STAHLMAN:  Paragraph 62, your Honor, on Page 25.

14   In fact, I think we even did 63.

15        MR. SACHSE:  Yes, we were turning to Page 26.

16        MR. STAHLMAN:  I would suggest in 64, Page 26, that

17   delete on Line 5 the words "overlying rights," the second

18   word from the end of the line, and say, "such rights".

19        We also have a blank on Line 4, your Honor, "Interlocu-

20   tory Judgments 30 and blank,"  and the blank there will refer,

21   of course, to whatever number we give the other area.  Do we

22   have a number on that, yet?

23        MR. VEEDER:  Yes.  That has been tentatively assigned.

24   The number that we have been using for Aguanga is 34.

25        MR. STAHLMAN:  You can fill that in, then.

1    THE COURT:  I don't know.  We have 34-A, Temecula

2  Above Vail Dam.

3    MR. VEEDER:  I think that is all right.  I think you

4  are going to have a breakdown on this, because you have your

5  Aguanga Valley and then you have Wilson and Coahuila Above

6  Aguanga.  The reason I said "tentatively" is that I think we

7  ought to talk about the number when we get to the Aguanga

8  area and then go back and put this in.

9    MR. STAHLMAN:  We will fill it in when we discuss that

10  on the next topic.

11    THE COURT:  Let's agree now on 34.

12    MR. VEEDER:  34 is an open number and it is the one

13  that we have been using.

14    MR. STAHLMAN:  Let's agree to it.

15    MR. VEEDER:  I want to make one inquiry, though,

16  George.  "Vail Company lands of the Pauba Rancho within the

17  exterior boundaries of the Murrieta-Temecula groundwater

18  area and the Aguanga groundwater area" -- are you going to

19  combine in some way your overlying rights in the two

20  separate areas?  It makes no difference.

21    MR. STAHLMAN:  If we got the two numbers there we

22  wouldn't have to, would we?

23    MR. VEEDER: Whatever you figure is all right with me.

24  I had thought you would probably come up with a separate

25  area.

1        MR. STAHLMAN:  This covers it all.

2        MR. VEEDER:  It's all right with me.

3        MR. STAHLMAN:  A second one would be a duplication.

4   There is a 34 in there, and here is a 34.

5        MR. VEEDER:  34-A is the basement complex in the

6   Temecula-Coahuila-Wilson Creek area.

7        MR. STAHLMAN:  I think we have treated our basement

8   complex.

9        MR. SACHSE:  What is imperative here is that there be

10  a reference here in this judgment to whatever other judgment

11  is going to spell out the rights in the Aguanga area.

12       MR. VEEDER: That suits me.  I think it is entirely

13  proper and you have done that in regard to your other lands,

14  too, isn't that right?

15       MR. STAHLMAN:  Yes.

16       THE COURT: First, we are not going to incorporate them

17  by reference, I thought we had agreed.

18       MR. STAHLMAN:  Maybe the language in this should be

19  a little different.

20       THE COURT:  These lands of the Pauba Rancho in the

21  groundwater areas have overlying rights; "such rights as are

22  detailed in Interlocutory Judgments 30 and 34," something

23  like that.  Would that do it?

24       MR. STAHLMAN:  Very well.

25       MR. SACHSE:  Except I question the    wisdom of using

1   the word "overlying".  I think Mr. Stahlman's idea is right;

2   if you delete "overlying," so that you have "such rights..."

3   THE COURT:  That is right.

4   MR. SACHSE:  Then we have been clearly tied into it.

5   MR. VEEDER:  You are going to take out "said judgments

6   being made a part hereof"?

7   MR. SACHSE:  Yes.

8   MR. VEEDER:  And you are going to take out "overlying"?

9   MR. SACHSE:  ". . .have such rights to the use of

10  water from said areas as were determined in said judgments."

11  THE COURT:  As were or will be?

12  MR. SACHSE:  Yes.

13  THE COURT:  Have you got a suggested wording?

14  MR. STAHLMAN:  At which place, your Honor?

15  THE COURT:  64.  Why not take the first three lines,

16  "Vail Company lands of the Pauba Rancho within the exterior

17  boundaries of the Murrieta-Temecula groundwater area and the

18  Aguanga groundwater area as shown on U. S. Exhibit 277 . . ."

19  Does that cover both of those groundwater areas?

20  MR. VEEDER:  Yes, it does, your Honor.

21  THE COURT:  ". . .have such rights to the use of

22  water from said areas as were or will be determined in

23  Judgments No. 30 (Murrieta-Temecula Groundwater Area) and

24  34 (Aguanga Groundwater Area)."  Does that do it?

25  MR. STAHLMAN:  Yes, your Honor.

1      MR. SACHSE:   That does it very well, your Honor.

2      MR. STAHLMAN:   The next one is simpler, of course.

3   That is all contained within the Murrieta and Temecula.   Take

4   out the "overlying" on Line 12.

5      THE COURT:   "Vail Company lands of the Little Temecula

6   Rancho within the exterior boundaries of the Murrieta-

7   Temecula groundwater area, as shown on U. S. Exhibit 277 and

8   contained in Interlocutory Judgment No. 30, have such rights

9   to the use of water from said area as are determined in

10   Findings and Interlocutory Judgment No. 30."

11      MR. STAHLMAN:   66 would be the same thing.   At Line

12   18 the word "overlying".

13      MR. SACHSE:   The same changes, "as were determined".

14      THE COURT:   The same in 67.

15      MR. STAHLMAN:   Right.

16      THE COURT:   After "17" put "(Subdivisions 1 to 12,

17   Inclusive)".

18      The same on 68:   ". . .and have such rights to the

19   use of water from said area as were determined in Findings

20   and Interlocutory Judgment No. 30."

21      The same in 69.

22      MR. SACHSE:   69 is in compliance with your previous

23   instructions.   We finally got around to it.

24      THE COURT:   Strike "overlying".

25      MR. SACHSE:   Yes.

1    THE COURT: And "which is made a part hereof".

2    MR. SACHSE: Yes.

3    THE COURT: Do you think it is sufficient to say

4    "Interlocutory Judgment," or "Interlocutory Findings and

5    Judgment"?

6    MR. SACHSE: I think it is sufficient to say

7    "Interlocutory Judgment".

8    THE COURT: Then let's be consistent all the way

9    through.

10    Paragraph 70.

11    MR. SACHSE: The same as 69.

12    THE COURT: 71. Is that overlying rights?

13    MR. SACHSE: Well, I think you have to take the

14    "overlying" out consistently, apparently.

15    THE COURT: ". . . have rights to the use of water

16    from said area, as was determined in Interlocutory Judgment

17    No. 32". Is that the right Judgment?

18    MR. STAHLMAN: That is correct.

19    MR. SACHSE: I don't know about 72, your Honor. Here

20    we get into this main stem of the Santa Margarita problem

21    again.

22    THE COURT: 32 has not been signed up, has it?

23    MR. VEEDER: They are all here. I asked Mr. Luddy

24    about that. Mr. Luddy, has 32 been signed?

25    MR. SACHSE: There isn't any judgment for 32. 32 is

19,626

DeLuz Creek.  All his Honor did was make an order approving the Masters Findings and Judgment.  His Honor hasn't written one.

32-A is signed.  That is the basement complex.

But the DeLuz Creek judgment itself, the only one is the Masters Findings and Judgment, which cannot be signed, as I understand it, under the Federal Rules until certain notice is given.  There is a mandatory provision on notice.  We have been holding these off for that reason.

MR. STAHLMAN:  We can say "as was or will be determined".

MR. VEEDER:  Are you going to assign an interlocutory number, your Honor, to the Masters Findings and Conclusions?

THE COURT:  We have assigned 32 to DeLuz, to be consistent, because 32 is the local,vagrant, percolating water and that has been signed.  Just say 32 and see what we do later on that.

MR. VEEDER:  All right.

MR. SACHSE:  It was always my understanding, your Honor, that you did not contemplate the drafting of a new judgment on DeLuz.

MR. VEEDER:  All we are doing is assigning a number to it.  If he simply adopts it, we will adopt it as Interlocutory No. 32.

MR. SACHSE:  Okay.

19,627

THE COURT:   If we leave 32 in, then we at least have
to use the number.   We have to have a document, even if it
were only one page --"the Court hereby adopts and approves
the Findings of the Master"   and call that 32.

All right, 72.

MR. SACHSE:   What are we going to do here, George? 72
is Sandia.   Or is it?   Or does this involve some of that main
stem of the river problem here?

MR. STAHLMAN:   No, this does not.   The way it is
written here, it will not, because as written here it is going
to refer to what is found in 29.

MR. SACHSE:   I think it is probably correct the way
it is written.   It is very general.   It simply says they have
rights to the use of water from the areas within their
respective watersheds.   There is no finding as to what that
watershed is, here.

THE COURT:   Now, you have a problem here.   You have
listed only Interlocutory Judgment No. 29, which has been
lodged and which has not been signed yet (Sandia Creek).
29-A is Basement Complex.   That has been signed.   Actually,
doesn't Vail Company have such rights as are found in both
29 and 29-A?

MR. STAHLMAN:   We have that series where Vail land
is affected.   I think 29-A should go in there, too.   Probably
the same thing with 32-A.

19,628

1    MR. WILKINSON:   29 is the area below the Gorge   above

2    the Enclave.

3    MR. STAHLMAN:   That doesn't go in here.

4    MR. SACHSE:   Yes, it does.

5    MR. VEEDER:   39-A is the one we are checking out now,

6    in which your Honor raises the question as to the appropriate-

7    ness of the designation, which was "Below the Gorge and

8    above the confluence of DeLuz Creek".

9    MR. WILKINSON: I think you have your number wrong,

10   Mr. Veeder.   38 is Temecula Creek.

11   THE COURT:  38-A is the one that has been signed;   it

12   is "Temecula Subwatershed Below Vail Dam and Above the

13   Gorge".

14   MR. STAHLMAN:   What I am getting at -- I may be wrong,

15   but I don't quite see it -- the way this is written here it

16   would only refer to the area within the watershed of Sandia

17   Creek.

18   MR. VEEDER:   If you will look on Number One on the

19   agenda, Interlocutory Judgment No. 39-A, Santa Margarita

20   River Watershed Below Temecula Creek and Above DeLuz Creek

21   Confluence.

22   THE COURT:  You are right.

23   MR. VEEDER:   Is that the one you made reference to?

24   MR. WILKINSON:  Yes.

25   THE COURT:  What is 39 going to be?  Is there going

19,629

1    to be any 39?

2        MR. STAHLMAN:  You could cover that by another

3    finding.

4        MR. SACHSE:  Yes, 39 will be the lands right along the

5    River that are not basement complex.

6        MR. VEEDER:  Some of the severed parcels.

7        MR. SACHSE:  Some of the severed parcels and some of

8    the reserve rights, et cetera.

9        MR. STAHLMAN:  39, you say?

10       MR. VEEDER:  39 and 39-A.

11       MR. STAHLMAN:  Where is it?

12       MR. VEEDER:  I don't have it here.

13       MR.SACHSE:  I can show it to you.

14       THE COURT: When did I sign 39?

15       MR. SACHSE:  You have not signed it, your Honor.

16       MR. VEEDER:  You have not signed it.  You raised the

17   point, which was correct, that when we divided up the areas

18   we referred to the confluence of DeLuz Creek and DeLuz Creek

19   has its confluence within the Enclave.

20       MR. STAHLMAN:  Your Honor, on Line 19 of Finding 72,

21   after "Sandia Creek" strike that portion which says "and the

22   main item of the Santa Margarita River," strike out

23   "overlying," and then we will write another finding covering

24   this situation.

25       THE COURT:  All right.  ". . .have rights to the use

of water from the areas within their respective watersheds".

MR. SACHSE:  No, your Honor, you will have to make more changes. Let me read what I think will do it:  Vail Company lands on the Santa Rosa Rancho in the drainage area of Sandia Creek" -- and then strike through the word "River" -- "have " -- and strike the word "overlying" -- "rights to the use of water from said area" instead of "the areas" and strike "within their respective watersheds" and continue "as was determined by Interlocutory Judgment No. 29 and 29-A for Sandia Creek."

MR. STAHLMAN:  Then we will make a note to write another one for the River proper.

MR. SACHSE:  Yes.

THE COURT:  All right.

MR. VEEDER:  What do you mean by "River proper"?

MR. SACHSE:  For Vail lands on your 39-A and 39.

THE COURT:  That is the part that is in doubt.

MR. SACHSE:  That's the part that is in doubt.

THE COURT:  The only Vail lands that come down to the River is undecided.

MR. STAHLMAN:  72 will remain as Mr. Sachse suggested in the change.  We shall hereafter write another finding in the same vein in relation to the Judgments 39 and 39-A.

THE COURT:  Well, it will not be the same vein.

MR. STAHLMAN:  No.

19,631

1     THE COURT:  Because this is the only area you touch

2    the River or claim to touch it that is in dispute.  This is

3    part of that other thing.

4     MR. SACHSE:  I think they can, however, say "have such

5    rights to the use of water as are in those judgments

6    determined".

7     MR. STAHLMAN:  Because we have already said previously

8    in the finding here that your Honor has not made a

9    determination of the riparian status in relation to the Santa

10    Margarita.  So whatever rights are determined in there, they

11    do not include the riparian right of Vail Company on the

12    Santa Margarita.

13     THE COURT:  I don't know whether I follow you.  I am

14    in agreement, of course, with 72 as it now stands.  I am

15    agreed, as we indicated before, that we have to do something

16    else about the Vail lands on the main stem of the River.

17     MR. SACHSE:  I think if you would read 73 with the

18    main stem in mind instead of Murrieta Creek -- I think if we

19    handled it that way we could just substitute "main stem" for

20    Murrieta Creek.

21     THE COURT:  Yes -- which is a new judgment.

22     MR. SACHSE:  Yes, which is a judgment to be written.

23     (Discussion off the record as counsel and Court

24    gather around the map exhibits.)

25     MR. SACHSE:  To be sure I understand this, let's look

19,632

1    at the exhibit you have attached to 39-A.  As I understand

2    it, there is going to be a separate one for Sandia Creek.

3    But everything within this drainage area, except Sandia, will

4    be covered by 39-A, which is the basement complex, and then

5    39, which will follow up the stream, including these little

6    Vail things you were talking about.

7         MR. VEEDER: TThat is right.

8         MR. SACHSE:  They are going to be covered in 39.

9         MR. VEEDER:  Yes.

10        THE COURT:  Okay.  That is how it ought to be.

11        MR. VEEDER:  But you are going to have a situation

12   down here because you have your Sandia situation up Sandia

13   Creek with your severances.

14        THE COURT:  Now, wait a minute.  I follow you so far.

15   We are going to take care of the basement complex in the

16   Sandia.  How are we going to take care of the basement complex

17   in this area?

18        MR. SACHSE:  39-A.  That was one of the points your

19   Honor made, that 39-A didn't index any Vail land.  There will

20   have to be a reference in 39-A to Vail land.

21        MR. VEEDER:  It was originally deleted on the basis

22   of this discussion.

23        MR. SACHSE:  Yes.

24        MR. STAHLMAN:  Do it that way, and then with your

25   other findings which we have made that this riparian status

19,633

1        of this land is undetermined.

2            MR. SACHSE:   Do we expect to survey?  We are not going

3        to do it at all for this corner?

4            MR. VEEDER:  The Court said he was going to find there

5        was no evidence to make the determination now.

6            MR. SACHSE:   So you will do that in 39, also?

7            THE COURT:   I have serious doubts whether the thing

8        would be worth a survey.  It might be for one building site

9        or something.  But you have a rocky gorge down below there.

10       You can't use flood waters.  At very best, you could get a

11       building site somewhere on a bluff out there and get some

12       domestic water out there.  That alone might be enough to

13       justify a survey.  But as far as any extensive irrigation is

14       concerned, the water is not going to be there.

15           MR. STAHLMAN:   There is no question about that.  But

16       I feel if there is the possibility of a right which may be

17       of some value in the future, we should preserve it for the

18       future.

19           THE COURT:   You can leave it open.  If you had one

20       building site and had enough water for it -- it is a

21       beautiful area -- you might get someone to give you enough

22       for that one building site that it might justify it.

23           MR. WILKINSON:   This area is the area bordering the

24       Murray Schloss estate that Mr. Lincoln handled and there are

25       some pretty locations in that area that the State will

1    probably end up holding.

2         MR. SACHSE:  On this, again, Bill -- because I

3    presume one of us, when we go home after today's session, is

4    going to start working on 39, and I am, of course, critically

5    concerned with 39, so I want to be sure I understand the

6    matter correctly -- we are going as far as this bend in the

7    River is concerned in Judgment No. 39.  As far as this

8    particular bend is concerned, we are making a finding that

9    leaves the door open to either its being riparian or not

10   being riparian.

11        THE COURT:  Yes.

12        MR. WILKINSON:  Let me ask one question.  Is 39

13   going to cover Sandia as well as the drainage of the main

14   stem?  Or is there going to be a separate Sandia and a

15   separate main stem?

16        MR. SACHSE:  Yes.

17        MR. STAHLMAN:  It is already in here.

18        MR. SACHSE:  The only reason for this map was to

19   avoid Ace's having to make another map.  So we are not

20   including any of the Sandia lands in the appendix to this

21   judgment.

22        MR. STAHLMAN:  Of course, I have covered that

23   question.  I don't know how well.

24        THE COURT:  This 39 will be the main stem of the

25   Santa Margarita from the Gorge to where?

1     MR. SACHSE:  To the Naval Reservation.

2     MR. VEEDER:  You have some additional problems on that.

3   You see, you have some lands (Indicating the map exhibit).

4     MR. SACHSE:  Everything in the Naval Reservation in

5   Sandia.

6     THE COURT:  Right to the Naval Enclave.  It will take

7   us down to the Naval Enclave.

8     COLONEL BOWEN:  There are some lands, though, your

9   Honor, that are still left out.

10     MR. SACHSE: These lands right here you are talking

11   about.

12     COLONEL BOWEN:  DeLuz Creek, here, there is a small

13   area where water falls outside the reservation and it

14   traverses these washes and ultimately joins the Santa

15   Margarita River within the Naval Enclave.

16     THE COURT:  Some of that is basement complex, isn't

17   it?

18     COLONEL BOWEN:  Yes, sir.

19     MR. SACHSE:  I think it could all be done in this

20   judgment.

21     Didn't you include this in this judgment now?

22     MR. VEEDER:  In Sandia?

23     MR. SACHSE:  No, not Sandia.

24     THE COURT:  39-A.

25     MR. VEEDER:  I would like to have those checked out

1      and they may be included in 39 and 39-A.

2          MR. SACHSE:   I want to be sure we get all this

3      included.

4          MR. VEEDER:   That is correct, and I don't know how

5      you can be absolutely sure until you run those parcels out.

6          MR. SACHSE:   What I had been planning on doing was

7      asking Commander Redd to get me a clean copy of this map and

8      in the next month of our absence try to determine everything

9      that has to go into 39 that isn't in   39-A or should not go

10     in 39-A.

11         MR. VEEDER:   I think we can parallel these judgments

12     and I think that is what we should do.   So let's leave it

13     that way and it will be done.   We will give you the proper

14     designation at the time, your Honor, if we have to change

15     the name.

16         MR. SACHSE:   We may change the name.

17         THE COURT:   You have another possibility.   You may

18     find that this 39-Series has always been riparian land and

19     you may find you have another little area down here and you

20     may want to make a 39-B and take care of this basement

21     complex.

22         MR. SACHSE:   But as far as 39 proper is concerned,

23     Bill, I am satisfied it is going to end right here at the

24     boundary, because this stuff is all basement complex up

25     here.

THE COURT:  This ought to really go into 39-A.

MR. SACHSE:  That is where it is now.

THE COURT:  And your 39 ought to stop right at the Naval Enclave.

MR. VEEDER:  Let's leave it that way.

THE COURT:  We are getting down to the end of this.

MR. STAHLMAN:  74.

THE COURT:  So the way this turns out now, you don't have to have a new paragraph in this set of findings.

MR. STAHLMAN:  Yes, we will.

THE COURT:  No, because having taken the main stem of the Santa Margarita out of this set, it will go into 39.

MR. SACHSE:  Yes, there will be only a reference to here.

THE COURT:  Left open.

MR. SACHSE:  There will be a reference to it that will read like 73 reads.  It will say, "Vail Company lands on the Santa Rosa Rancho within the drainage area of the main stem of the Santa Margarita River have rights to the use of water from said area as was determined in Interlocutory Judgment No. 39," a paragraph reading just like that.

MR. VEEDER:  One thing I am hopeful is that the reporter got it.

MR. STAHLMAN:  73 we will have to correct like we did 71.

19,638

1        I want to make a comment on 74, if we are ready to go

2   to that.  That is a sort of catchall on the lands of the Vail

3   Company that have the type of lands in the A-Series, and I

4   think at Line 30 where we say, "Interlocutory Judgment" we

5   will have say "Judgment" and list all the Judgments that do

6   have.

7        THE COURT: What are you covering in 74?  This is land

8   outside the groundwater area?

9        MR. STAHLMAN:  Yes.  There are lands at various places

10  throughout.

11       THE COURT:  Aren't they going to be included in the

12  judgments on those streams?

13       MR. STAHLMAN:  If we get them all.

14       THE COURT:  Have they been done so far?

15       MR. STAHLMAN:  Not all of them.

16       MR. WILKINSON:  The way it reads doesn't sound too

17  unsatisfactory.  It covers the two groundwater areas that

18  have been found to exist.  These are the areas without these

19  groundwater areas.

20       MR. STAHLMAN:  For instance, up in the Pauba we cut

21  off a part up there in the corner that is out.  But it is

22  all basement complex.  There is some of that weathered up

23  there that is outside the groundwater area.

24       MR. SACHSE:  If it is weathered or basement complex,

25  I think you might need this; if there are any corners -- are

there, Ace -- of older alluvium on the Vail lands that are outside this groundwater area?

COLONEL BOWEN:  Yes.

MR. SACHSE:  That is where you would need this -- for older alluvium, not for weathered basement complex or a basement complex.

MR. STAHLMAN:  They don't amount to anything.

THE COURT:  Bill, where is our map of areas that have been covered by various judgments?  Did we give it a number?

MR. STAHLMAN:  I think if you read the balance of this on Page 28 it will clear itself up.

MR. SACHSE:  Right here, for instance, whose is this?

MR. VEEDER:  This isn't the groundwater area.  This is the Aguanga groundwater area here.

MR. SACHSE:  Where is the Temecula groundwater area? Aren't there little shreds of older alluvium within the Pauba Ranch and outside the groundwater area?

MR. WILKINSON:  I believe not.  I believe this area here is the only area that is not in the groundwater area.

MR. STAHLMAN:  This map will show you the situation here.  Here is one of them.

COLONEL BOWEN:  As shown on 15-E and 277, the break line extends from that point of the Pauba Ranch grant line to the southeast quarter of Section 13 Township 7 South Range 1 West.  So there is an area of older alluvium as shown

1   on 15-E which is outside the corner that I was alluding to,

2   which is the corner of P7 on the Pauba survey.

3        MR. SACHSE:  I think Mr. Stahlman is going to have to

4   have a catchall.

5        MR. STAHLMAN:  If you read the entire finding, I think

6   it will show at least what we are driving at.

7        THE COURT:  Let's read the finding.

8        You list a whole series of maps.

9        MR. STAHLMAN:  Colonel Bowen says 277 would show this

10   situation.

11        THE COURT:  Let me take a minute or two on this with

12   Commander Redd.

13        COMMANDER REDD:  Yes, sir.

14        THE COURT: This is our groundwater area here.

15        COMMANDER REDD:  This is the boundary, your Honor.

16        THE COURT:  And that is the one we have signed up,

17   isn't it?

18        MR. VEEDER:  Which one is that?

19        THE COURT:  Murrieta.

20        COMMANDER REDD:  This has been signed now, I guess --

21   Murrieta-Temecula groundwater area, and this is Aguanga

22   groundwater area.  This divides the Murrieta-Temecula and

23   Aguanga groundwater areas.

24        THE COURT:  And then this is your other groundwater

25   area?

1    COMMANDER REDD:  Yes.

2    MR. VEEDER:  The Aguanga groundwater area does have

3    some of them entered -- Oviatt's and Knox.

4    MR. STAHLMAN:  I think we should have had all of that

5    in one, to start with.

6    THE COURT:  I notice here you have colored on this,

7    Commander Redd.

8    COMMANDER REDD:  That is the nonriparian and nonover-

9    lying.

10   MR. SACHSE:  Already signed, isn't it?

11   MR. VEEDER:  That's right.

12   THE COURT:  Then we have another judgment coming up

13   that is going to take care of the riparian.

14   COMMANDER REDD:  That is the Tucalota Creek Judgment,

15   which has never been signed.

16   THE COURT:  And then Domenigoni Valley.

17   MR. VEEDER:  That has not been offered yet.

18   THE COURT:  Will that go clear over in here?

19   MR. SACHSE:  Yes, we are going to do it for the

20   whole Warm Springs Creek drainage.

21   MR. VEEDER:  The problem we are talking about now is

22   that you are overlapping here on Warm Springs Creek and

23   Diamond Valley.

24   THE COURT:  I don't know whether I understand.

25   Domenigoni Valley drains into Warm Springs Creek.

19,642

MR. VEEDER:  That is right, and Warm Springs crosses the line into Murrieta-Temecula groundwater area prior to its confluence with Santa Gertrudis.

THE COURT: However, we are going to have not only Diamond and Domenigoni Valley, but another covering French Valley here.

MR. VEEDER:  That is all going to be in A-Series.

MR. SACHSE:  There is no draft of Diamond and Domenigoni for this little bit up here.

MR. VEEDER:  It will be brought in under the A-Series for this area here.

MR. SACHSE:  Okay.

THE COURT:  How are we going to cover this stuff up in here?

MR. VEEDER:  We will have an A-Series on that outside the groundwater area.  We have Rainbow yet, we have this small area here, which is a small amount, we have this area up here that I was talking about in the Murrieta.  Those are going to be done in 39 and 39-A.

MR. SACHSE:  May I inquire, Bill.  The only problem in my mind is, do we have a determination from  your Honor, or instruction, that when we find these small areas of older alluvium, such as here in this extreme upper Murrieta outside the groundwater area, and such as here that Colonel Bowen just showed us, and possibly here there may be some --

19,643

1        MR. VEEDER:  Those will be included in the A-Series.

2        MR. SACHSE: Those will be included in the A-Series as

3   vagrant local water.

4        MR. VEEDER:  That is right.

5        MR. SACHSE:  That makes it simple.

6        MR. VEEDER:  Because if you read your Murrieta-Temecula

7   designation of areas, it necessarily follows that that would

8   be treated as not part of the groundwater area.

9        MR. SACHSE: That's swell.  That will make it simple.

10       MR. VEEDER:  I think we are going to have to have some

11  special language.

12       Have we finished the Vail findings yet?

13       MR. STAHLMAN:  We have this last paragraph we are

14  talking about now.  It ties into this situation.  I think

15  the finding should be made maybe with a designation when these

16  areas are determined.

17       MR. VEEDER:  Why don't you just make a catchall of it

18  to the effect that any interlocutory judgments involving

19  Vail properties, involving Vail's vagrant, local, percolating

20  waters, are referred to herein?

21       MR. STAHLMAN:  Yes.

22       MR. VEEDER:  If you do that, then we will have the

23  flexibility we are going to have to have for language.

24       THE COURT:  That is what, in a way, he has tried to

25  do.

19,644

MR. STAHLMAN:  That is what I am reaching for.

MR. VEEDER:  While we have this laid out there is a problem I would like to talk about.

MR. STAHLMAN:  Let's settle this finding first.

MR. VEEDER:  This is part of the same finding I am talking about.  So let's go on with it.

COMMANDER REDD:  In that A-Series we have not included the land grant portions of the Vail Ranch in those descriptions.

MR. STAHLMAN:  Then I think my finding will cover it.

COMMANDER REDD:  Yes.

MR. STAHLMAN:  That is why I had it there.  So I think that finding, whether that particular language or not, but I think what I am reaching for there is quite well expressed.

THE COURT:  What were you going to say, Mr. Veeder?

MR. VEEDER:  Until George gets his language ready once --

Are you going to write it up for us to see?

THE COURT:  He has it written.

MR. STAHLMAN:  I have it written.

MR. VEEDER:  You have it the way you want it?

MR. SACHSE:  It is good the way it is, with some deletions.

MR. STAHLMAN:  That may be.

MR. SACHSE:  But take a look at 74.

1    MR. VEEDER:  Read it.

2    MR. SACHSE:  It starts out this way:

3        "Waters underlying Vail Company lands, not

4    within the Murrieta-Temecula groundwater area

5    (Interlocutory Judgment No. 30) and not within the

6    Aguanga groundwater area (Interlocutory Judgment

7    No. 34), and not contained within the younger alluvial

8    material within the beds and banks of the creeks which

9    traverse Vail Company lands are local, vagrant,

10   percolating waters not part of the stream system."

11   I don't think then you have to go into all these

12   exhibits.  Doesn't that do the job, Sandy?

13   MR. WILKINSON:  It does it, but only if you are able

14   to look at the exhibits to be able to tie down where these

15   areas are.

16   MR. SACHSE:  All you have to do is look at Exhibit

17   277, which shows the two groundwater areas, or Exhibit 15,

18   which shows the younger alluvium.  Because all we are

19   referring to now is Murrieta-Temecula groundwater area and

20   Aguanga groundwater area and the younger alluvium.

21   MR. WILKINSON: But there are stringers of younger

22   alluvium in Santa Rosa that are Tucalota Creek drainage.

23   There are various drainage areas that are not going to be

24   shown on 277.  And the basic map 15 is so small you can't

25   find them.

19,646

1    MR. STAHLMAN:   I think the way it is written it will

2    cover the situation.  All we are talking about are these

3    surface runoffs.

4    MR. SACHSE:   I don't have any objection to inserting

5    one of these exhibits, if they are right.

6    MR. STAHLMAN:   If we can put a well down there and get

7    any water we are lucky, like you told all these other people.

8    MR. SACHSE:   I think it is pretty good the way it is.

9    THE COURT: These exhibits you have used, is this one

10   Exhibit U?

11   MR. STAHLMAN:   Exhibit U is this one here, your Honor.

12   That describes the lands and boundaries, et cetera.   Of

13   course, that paragraph ends at Line 6.  There should be

14   another paragraph.

15   THE COURT: You would have to put in also, in addition

16   to saying not within the groundwater areas and not containing

17   younger alluvial material --

18   MR. STAHLMAN:   We have that in.

19   THE COURT:   And not expressly covered by other

20   Interlocutory Judgments.  Because, for instance, take those

21   little lots down near the Gorge.

22   MR. SACHSE:   I see what you are getting at, your

23   Honor.

24   THE COURT: This is so broad.  You are going to have

25   those little lots in the Gorge in 39.  So you will have to

1    say  "not covered in other Interlocutory Judgments".

2         MR. SACHSE:  That is right.

3         THE COURT: All right.

4         MR. WILKINSON:  That would go in on Line 2 after

5    "lands".

6         MR. STAHLMAN:  Yes.

7         THE COURT:  What did we do in some of this A-Series

8    where Vail land was involved?  Was Vail land involved in

9    any of this A-Series so far?

10        MR. STAHLMAN:  Yes; Sandia, DeLuz, any of those.

11        MR. VEEDER:  And Tucalota, too.

12        MR. STAHLMAN:  Yes; Tucalota, Sandia, all those.

13        THE COURT:  Vail is listed in them?

14        MR. STAHLMAN:  Yes, and we have covered it in our

15   findings.

16        THE COURT:  So where Vail lands popped up in your

17   Interlocutory Judgments you have taken care of it?

18        MR. STAHLMAN:  Yes.

19        THE COURT:  So then it seems to me you would say

20   "All Vail lands not in either groundwater area, not in

21   stringers of younger alluvium (which you have) and not in

22   other  specified Interlocutory Judgments" -- a catchall.

23        MR. STAHLMAN:  And not in Interlocutory Judgments as

24   specified herein.  We have specified DeLuz, Sandia and

25   Tucalota.

1          MR. VEEDER:  Isn't this going to be a matter which may

2   be worked out before you get to this in final form?

3          MR. STAHLMAN:  It could be.

4          MR. VEEDER: That is what I am thinking about.

5          THE COURT:  I think he has to have the catchall, and

6   the only thing is it has to be --

7          MR. SACHSE:  I think, George, you are in error.  There

8   are two places where you are not covered by any existing

9   interlocutory.  In DeLuz Creek you were expressly excluded

10  from the Masters Findings.  So this whole chunk hasn't any

11  finding of any kind covering this vagrant local percolating

12  water.  Likewise, this chunk hasn't any finding of any kind

13  covering the vagrant local percolating water.  So the easy

14  way to handle those would be right here in your own judgment.

15         MR. STAHLMAN:  I think so.  I think this will do it.

16         THE COURT:  Doesn't that do it?

17         MR. VEEDER:  Yes, I think it is covered.

18         THE COURT:  What about this next paragraph?

19         MR. VEEDER:  You are going to renumber that, aren't

20  you?

21         MR. STAHLMAN:  Yes.  At  Line 6 that should be

22  numbered.

23         MR. SACHSE:  75.  The next one is 76.

24         MR. STAHLMAN:  Yes.

25         THE COURT:  Actually, if you want to go back, you have

1      a new one that you are putting in.

2            MR. SACHSE: Yes.

3            THE COURT:  Right after 72, that becomes 73, 73 becomes

4      74, 74 becomes 75, and then this new one becomes 76, and then

5      77.

6            Before we pass 75, are you going to leave those

7      exhibits in there?

8            MR. STAHLMAN:  I think they are all of them proper.

9      Whether we need them all is a question.

10           MR. VEEDER:  Why do you need 210-C?  That would be a

11     title list, I am sure.  I don't care.

12           MR. STAHLMAN:  Let's get it out.

13           THE COURT:  Actually, if we are satisfied that this

14     catchall catches all of these things and doesn't get Vail

15     Company's vagrant local percolating waters somewhere down

16     in the alluvium, you are better off without the exhibits.

17           MR. SACHSE:  I think you are.

18           THE COURT:  You would say everything else  bingo.

19           MR. VEEDER:  When you start talking about 206-C and

20     210-C, I begin to worry.

21           MR. STAHLMAN:  Do you see any reason it couldn't be

22     eliminated?  It says "all Vail lands".

23           MR. SACHSE:  I think his Honor is right.

24           MR. STAHLMAN:  In other words, after "stream" period.

25     Let it go out.

19,650

1    MR. VEEDER:  I am going to object to 76.

2    MR. STAHLMAN:  It's your testimony.

3    MR. VEEDER:  I will show you why.  Historically, as

4    originally set up -- I don't know what the variance is on

5    the basis of 277 and 278 -- they were never correlated.  So

6    I think when you start talking about 418,000 acre feet of

7    water available --

8    MR. STAHLMAN:  That is what Mr. Kunkel testified to.

9    THE COURT:  First of all, as a matter of logic, this

10   doesn't say this is on Vail land or anything else.  This is

11   in the Vail findings, and if this sort of thing is needed

12   it belongs in the Murrieta groundwater judgment.  What is

13   your purpose for putting that in there?

14   MR. STAHLMAN:  Well, we have testimony on it.

15   Shouldn't it be found in some finding some place?  That's the

16   point.  There was a lot of time spent on that, there was a

17   map drawn to show it, Mr. Kunkel testified, and the method

18   and the fact that it was in the first hundred feet.  I think

19   it could have implications in relation to future problems.

20   I think we have the evidence here now.  It should be in some

21   finding some place.

22   MR. VEEDER:  I will point out to you, George --

23   MR. STAHLMAN:  What was the purpose of putting the

24   evidence in?

25   MR. VEEDER:  There was a time in my life when I

19,651

1    thought we would be able to write some findings with which

2    I would have agreement.  I am not in agreement with the

3    findings that are presently entered in the Murrieta-Temecula

4    groundwater area.

5        MR. STAHLMAN:  How does that eliminate the necessity

6    of making a finding on your evidence?

7        MR. VEEDER:  Just let me finish.  You will find that

8    the exterior boundary on 277 is not the same as either

9    ground water storage Units 1, 2, 3 or 4.  For example now,

10   you will find that this outer extremity is different from --

11       MR. STAHLMAN:  Here is the reason I think there is a

12   necessity for a finding.  We have tried this case and this

13   thing may become a factor in some matter later on and here

14   we have this valuable evidence in here, or important

15   evidence, at least, and somebody will pick up all of these

16   findings and there will not be mention made of it -- ten

17   or twenty years from now.  I probably will not be here.

18       THE COURT:  Let me ask, the groundwater area we

19   depicted in the Murrieta is far bigger than the groundwater

20   area shown on Exhibit 17.

21       MR. STAHLMAN:  There may be more.

22       MR. SACHSE:  All this material in here is left out.

23       COLONEL BOWEN: Yes, your Honor.

24       THE COURT:  Let's settle one thing at a time.  So

25   that for the groundwater areas  1, 2, 3, 4 and 5 there was

19,652

1    418,000 acre feet.

2         MR. SACHSE:  You haven't even included Area 5 in the

3    418,000.

4         THE COURT:  If there were 418,000 in here -- I am not

5    concerned about that.  I think this evidence will justify

6    the finding.  But the question is, does it belong in the Vail

7    findings?  It is not Vail land entirely.

8         MR. STAHLMAN:  I would like to say this, then:

9    Within the Murrieta overlying partially or overlain by Vail

10   Company lands.  Tie it down to an exhibit.

11        THE COURT:  If we are going to put it in, why don't

12   we put it in 30?

13        MR. SACHE:  Your Honor, if you are going to put it in,

14   my suggestion is it ought to go into all three judgments:

15   An amendment to 30 in the Vail, and in 34 that is to be done

16   in the future, the same finding because you are lumping all

17   that.

18        THE COURT:  No, you figure 418,000 wouldn't take in

19   Aguanga.

20        MR. SACHSE: I think it ought to take it in.

21        THE COURT: Lay your cards on the table.  Why do you

22   want the finding?

23        MR. STAHLMAN:  Like I tell you, we know about this

24   thing, somebody is going to pick this up at some later date,

25   there has been established this large volume of water in that

1   area.   There is no place in the findings where there is even

2   reference made to this exhibit, there was several days spent

3   going over this testimony about this matter, then there was

4   also a relationship with the State's testimony in connection

5   with it; but just taking the Government's testimony and

6   giving it its full effect, here is what it says.   Should we

7   just pass it up and not have it in the findings some place?

8            MR. VEEDER:   Here is my view about it.   If you want to

9   put it in the Murrieta groundwater area, I would like to see

10   the form that it goes in.   I can't see why we would put it

11   in here in this separate finding.

12            MR. STAHLMAN:   All right, I would put it in here

13   because -- and this was added, believe me, just recently --

14   when I went over the Murrieta findings I found out it was not

15   there.   I thought it would be there and it was not there.

16   So I thought that this should go in here.   I am perfectly

17   willing to believe that maybe this finding should be re-

18   written to say the Vail lands overlying a portion of that

19   area in so-and-so.   I think there should be a finding, your

20   Honor.

21            MR. VEEDER:   Bear in mind you are coming up to an

22   objection from   me on the basis that the findings as written

23   would necessarily be at variance with the testimony and

24   evidence that the United States introduced.

25            THE COURT:   In what respect?

19,654

MR. VEEDER:   In regard to the beds and banks of the stream, the impervious character of the older alluvium.

MR. SACHSE:   That doesn't enter into the amount of water that is there, Bill.

MR. VEEDER:   Yes, it does, because when you talk about it being impervious, as you have talked about it, you have rejected this whole theory that was put in here.

MR. STAHLMAN:   So what?   This has nothing to do with your theory?

MR. VEEDER:   It has something to do with your theory as to the impervious character of the older alluvium that constitutes the beds and banks.

MR. STAHLMAN:   Here is testimony that you spent days putting in and ten or fifteen years from now somebody will go down and pick this up.   What are you going to do about it? You have findings that are completely silent on an important point.

MR. VEEDER:   I am going to say it was rejected, if anybody asks me, because when you say the older alluvium is the beds and banks you reject this whole concept.

MR. STAHLMAN:   That is the most fallacious --

MR. SACHSE:   No one ever said it is impervious.

MR. VEEDER:   That is what the record said.

MR. SACHSE:   No.   To be the bed and banks of any stream it doesn't have to be a concrete pipe.

1    MR. VEEDER:  If you want to put it in 30, let's get

2    some language and put it in.  If it is going to be any place,

3    it should be in 30.

4        THE COURT:  What is your thought?  Why should it be in

5    all of them?

6        MR. SACHSE:  Because I am afraid of Mr. Veeder on

7    appeal, to be very frank, I am afraid of Mr. Veeder and his

8    appeal and surplus waters and all sorts of things and I want

9    the finding the United States of America itself put in..

10        MR. STAHLMAN:  Say "Vail Company lands overlie a

11    portion . . . ."

12        THE COURT:  Let's settle 76.   "Vail Company lands

13    overlie" -- strike out "the boundaries of " -- "a portion of

14    the Murrieta groundwater area described in Interlocutory

15    Judgment No. 30.

16        MR. STAHLMAN:  You could go on with the rest of it:

17    "The boundaries of the Murrieta-Temecula . . . are groundwater

18    storage units . . ."

19        THE COURT:  Why don't we say that Vail Company lands

20    overlie a portion of the Murrieta-Temecula groundwater

21    area described in Interlocutory Judgment No. 30; that

22    Government's Exhibits 17 and 18 have a lesser area than the

23    Murrieta groundwater area demonstrated or shown -- have a

24    lesser area but one included within the Murrieta-Temecula

25    groundwater area which showed more than 18 feet of water

19,656

available for use, something like that?

MR. SACHSE:  That will do it.

MR. STAHLMAN:  That's okay.

THE COURT:  I think, however, Mr. Sachse, that you ought to draft an amendment to 30, the same thing.

MR. SACHSE:  Okay.

MR. STAHLMAN:  There is nothing to that last finding except a reference to that map we want to put on here.  That will be an aid.  We have shown your Honor that small map.

MR. VEEDER:  May I see that now?

MR. STAHLMAN:  It has to be attached to the finding.

MR. SACHSE:  I think it would be a help.  Let's see it.

MR. STAHLMAN:  He didn't bring it.  It is lodged.

THE COURT:  Is it in evidence?

MR. STAHLMAN:  Yes.

THE COURT:  You have cut it down in size?

MR. SACHSE:  Yes.

THE COURT:  You say "titled 'Lands of Vail Company in Riverside County', . . ."  Actually, those lands are in both San Diego and Riverside Counties.

MR. STAHLMAN:  No, Vail's are all in Riverside County.  After it goes north and east a ways, it goes back into San Diego.

MR. WILKINSON:  It is a shrunken reproduction of

19,657

1    a series of USGS quads.

2         THE COURT:  Maybe I have a copy.  Have you offered it

3    in evidence?

4         MR. WILKINSON:  I believe it is offered and received

5    in evidence, your Honor.

6         MR. STAHLMAN:  I thought so.  We had it down here and

7    displayed it.

8         MR. WILKINSON:  It was offered on 10-26-61 and

9    received on 10-26-61.

10        MR. STAHLMAN:  What is the number?

11        MR. WILKINSON:  BF.

12        MR. STAHLMAN:  Our idea in connection with that was

13   that if somebody picked up these findings they would say,

14   "Where is Vail Dam?  Where is Fallbrook?  Temecula?  Santa

15   Rosa?"  It shows them.  We will bring down another copy.

16        MR. SACHSE:  We needn't worry ourselves about it now.

17        I would like to take a minute or two, if you are

18   through with Vail and decide where we are going from here.

19        MR. VEEDER:  George, what about your conclusions of

20   law?

21        MR. STAHLMAN:  The conclusions of law and judgment

22   we only have in very rough form.  The reason they were not

23   smoothed out and completed is that we didn't know about the

24   Murrieta findings.  Now that we have the Murrieta through,

25   Fred Girard is coming down and meet with me and we are going

19,658

to draw them up in relation to these now approved findings.

MR. VEEDER:  Okay.

MR. STAHLMAN:  And I will get you a copy of them.

THE COURT:  You will send copies to us?

MR. STAHLMAN:  Yes, we will get them out before we get back here.

THE COURT:  Findings and conclusions.

MR. STAHLMAN:  Yes.

MR. SACHSE:  That will be our first order of business, I presume, when we come back, to finish Vail.

MR. STAHLMAN:  I will get these to your people before you get back.

MR. SACHSE:  To lay out some of the rest of this,  I will see that the current latest draft of the Warm Springs Creek is in Mr. Girard's hands.

Bill, you and I between us will try to have that ready.

MR. VEEDER:  Yes.

MR. SACHSE:  I will ask you if you would be so kind as to do the reproduction.

MR. VEEDER:  All right.

MR. SACHSE:  I don't have the facilities to do more than six copies.

MR. VEEDER:  Would you mail one here and one to Washington?

1       MR. SACHSE:   Yes.

2       Then on this one that you lodged the other day, you

3  are doing 39-A?

4       MR. VEEDER:   Yes, that has to be redone entirely.

5       MR. SACHSE:   And I would like to work independently

6  but check with Ace.

7       MR. VEEDER:   You parallel with us.

8       MR. SACHSE:   Okay, on 39 proper.

9       And that is about all I plan on doing, unless you have

10  some special job.

11       THE COURT:   Mr. Sachse is going to do 39.

12       MR. VEEDER:   Paralleling with us.

13       MR. SACHSE:   Yes, we will both work on it.

14       THE COURT:   The Government is going to do 39-A.

15       Mr. Sachse is going to do also an amendment to 30.

16       MR. SACHSE:   And the Government is going to reproduce

17  Warm Springs Creek?

18       MR. VEEDER:   That is right.   First, he is going to

19  refer it to me.   He and I went over this this morning and

20  there are variances that have to be taken care of.

21       THE COURT:   Mr. Stahlman is going to do his

22  conclusions and judgment.

23       MR. STAHLMAN:   Yes.

24       THE COURT:   What is your number?

25       MR. SACHSE:   No. 35.

1        MR. STAHLMAN:   35.

2        MR. SACHSE:   That lease a big hole for the Aguanga.

3   We have your drafts?

4        MR. VEEDER:   Yes, lodged on January 5th, dated

5   December 29th, on the Aguanga groundwater area.

6        MR. SACHSE:   We can't use those because they don't

7   conform as to form.   We have to redraft them.

8        MR. VEEDER:   I am not worried about the form.   The

9   thing I wanted to ask about, how are you going to designate

10  your beds and banks, to begin with, and also how are we going

11  to correlate the other findings?     For example, Oviatt has

12  been entered, Knox has been entered, Gibbon and Cottle have

13  been lodged but not entered.   Directions on those things

14  would be most helpful to us at this time.

15       THE COURT:   Knox has been signed?

16       MR. VEEDER: That is right.   And Oviatt has been

17  signed -- in fact, they have been entered.   I have mailed

18  copies of the revised findings to interested counsel. I

19  have advised them when they contacted me in regard to it that

20  certainly nothing would be done inconsistent with the

21  entered findings and conclusions of law.   However, I think

22  your Honor might want to take a look at them from the

23  standpoint of how you desire to have designated the beds and

24  banks of the stream and how you desire to have these

25  correlated one with the other, if you desire that.

1     MR. SACHSE:  I will offer my suggestion.  Bed and

2  banks, I think, takes care of itself.  I think you ought to

3  be consistent all the way through.

4     MR. VEEDER:  Use the bed and banks comparative with

5  Murrieta?

6     MR. SACHSE:  Exactly.  We will designate the bed and

7  banks as the contact point of the younger alluvium, except

8  there is a good deal of older alluvium in the Aguanga, so we

9  will use the boundary line I would presume.

10     MR. VEEDER:  We have made an arbitrary designation as

11  we did in regard to Murrieta-Temecula on Aguanga.  There are

12  areas within the Aguanga designation which encompass sizeable

13  tracts of basement complex.

14     MR. SACHSE:  We would delete all that.  We did that

15  in the other.

16     MR. VEEDER:  But you do have a problem of bed and

17  banks when you have that situation.

18     MR. SACHSE:  I see what you mean.

19     MR. VEEDER:  Here's your map.  This isn't the geology.

20  I think geology is 275.  You can see  what had to be done.

21  Lands that run from the surface crest this way and throughout,

22  by reason of the nature of the area, I have described it and

23  I have described it in my findings the contacts between the

24  older alluvium and the basement complex.  You see, here you

25  have your older alluvium, basement complex, basement complex

19,662

even up in your Stardust area.  Mr. Sachse, you will find in

Section 9 you have a large tract of basement complex.  You

have basement complex in two or three places.  Now, what would

be your bed and banks where it is obvious that Wilson Creek

actually flows on rock?

MR. SACHSE:  Let me offer this.  I am thinking aloud.

MR. VEEDER:  You are going to have to use different

language.

MR. SACHSE:  Yes, let me think aloud for a minute.

In Temecula and Murrieta we found, in substance, that the bed

and banks were the contacts.

THE COURT:  We were talking in Murrieta-Temecula about

the Pauba Valley.  We didn't have any bed and banks in the

older alluvium.

MR. SACHSE:  I am just thinking out loud as to what the

real situation is.  The determination that this is the

groundwater area does not mean it is a single stream as we

did in the Murrieta.  The beds and banks of the Temecula Creek

could be the contact of the younger alluvium with the material

on either side.  And the same for Wilson.  And we could still

at the same time find that all the waters within this boundary

contributed to and supported each of those streams and were

to be treated as a part of the river.

MR. VEEDER:  Have you read my findings on this?

MR. SACHSE:  Not today, to my recollection.

MR. VEEDER:   You are presented immediately with a real problem, with your Stardust client here.  Why don't you recommend the kind of language we want?

MR. STAHLMAN:  You could go along this line --

THE COURT:  We took the bed and banks of the stream as the contacts between the older and the younger alluvium. Why can't that be done here in the same way?

MR. STAHLMAN:  It would be the same where there is younger alluvium, wouldn't it?

THE COURT:  Where is your geology?

MR. VEEDER:  I think it is 275.  We have a specially colored geology map.

Here is the Gibbon and Cottle property.  On the basis of the evidence, they have wells in the older alluvium.  The question of compartmentation --

MR. STAHLMAN:  So does Stardust.

MR. VEEDER:  You have some real problems.  Here is the area I am talking about now.  Your stream comes along here. These wells are removed from the stream a considerable distance.  The geologist Mann said it was part of the ground-water area.  I am relating it as I recall it.  He said, however, there had been faulting in there -- there was compartmentation.  He didn't know whether you would say there was a direct correlation between the stream.

So whether you would say, your Honor, that this area

1    in here is part of Wilson Creek and Temecula Creek -- how you

2    would say it is the problem I wanted to have determined here.

3          MR. SACHSE:  I don't think it is too tough a problem,

4    Bill.  If we adopt the same basic rule of younger alluvium

5    as being the stream and then go on just as we did in Murrieta

6    that the groundwaters within the older alluvium do add to and

7    support et cetera, I think that would do it.

8          MR. VEEDER:  If you want to use it, that suits me.

9          MR. STAHLMAN:  That is very shallow up in here, too.

10         MR. WILKINSON:  Not necessarily.

11         MR. VEEDER:  You have some wells at depths to 300 feet,

12   Mr. Sachse, clear up here.

13         MR. SACHSE:  We stipulated we would treat this as

14   extracting stream water.  That is by stipulation.

15         MR. VEEDER:  The point I am trying to make is that I

16   think the Court should have this before him.

17         MR. SACHSE:  I think that is what you are going to have

18   to do, your Honor.   Say Wilson Creek, for instance, except

19   where it flows on the surface (basement complex), the beds

20   and banks are the younger alluvium.

21         THE COURT:  This is easy enough.  When you get down

22   into Lancaster Valley, then you have these stringers of

23   younger alluvium coming down and actually the beds and banks

24   are canyons rather than Wilson Creek.  I don't know how you

25   are going to do it.  I don't have any problem about the major

1    portion of Lancaster Valley there, but these stringers --

2         MR. VEEDER:  We call those simply "redistributed

3    older continental alluvium".  And that is what you did,

4    actually, in regard to your Murrieta areas.  You had the same

5    problem.  We took care of that by simply saying that that

6    was "redistributed older continental alluvium".

7         THE COURT:  We are going to have to take out this

8    basement complex.

9         MR. SACHSE:  Yes.

10        THE COURT:  And I would think probably you may have to

11   superimpose boundary lines on a geology map.

12        MR. VEEDER:  I think that is right.  You see, as a

13   matter of fact, your geology is on here.   We can fix it up

14   for you.

15        THE COURT:  For instance, in the corner, we just take

16   this whole section plus this little bit here, and up in 36.

17        (At this point the Court steps into Chambers        )
         (                                                    )
18       (momentarily and then returns and the proceedings   )
         (                                                    )
19       (continue.                                           )

20        THE COURT:  Obviously, these stringers of alluvium up

21   here are washouts from higher ground and we just have to do

22   something to exclude these.

23        MR. SACHSE:  The only significance is in relation to a

24   riparian right.  If we are going to make another finding that

25   any extraction anywhere except from basement complex is a

19,666

stream extraction, then it makes a difference.

THE COURT:  It doesn't make any difference.

MR. SACHSE:  I am sure when you get back in here it gets very thin.

COLONEL BOWEN:  It is very thin.

MR. SACHSE:  But there is still a problem with the bed and banks.

MR. VEEDER:  Here is where Gibbon and Cottle's findings become extremely important.

MR. STAHLMAN:  The matter takes care of itself in a practical way.  If somebody puts a well down in this shallow alluvium, this water is not available to him.

MR. SACHSE:  It is still part of the stream.

MR. STAHLMAN:  Yes, it is part of the stream.  You have to be consistent in your description of the stream.

MR. VEEDER:  I think you have ultimately the same situation as in Murrieta-Temecula.

MR. SACHSE:  All right, let's do it the same way we did then.

COLONEL BOWEN:  For practical purposes there would be no storage at all in the younger alluvium in the small stringers.  If there is any water, it would be in the older alluvium alone.

MR. SACHE:  Which we will find to be part of the stream system.  So bed and banks doesn't mean anything.

19,667

THE COURT:   Don't you think we ought to have a line put on this?

COLONEL BOWEN:   We made a line map, which Mr. Veeder probably has on his wall upstairs, that has the geology and the limits of both the Aguanga and the Murrieta-Temecula groundwater basins on it.   It is the same scale as 275.

MR. VEEDER:   I know I used this map here for the exterior boundaries.   If that is what you want, we can revise it.

MR. SACHSE:   I think somebody is going to have to draft it and see what it looks like.

MR. STAHLMAN:   That's what I think.

MR. VEEDER:   As long as you see the problem, as long as we have the directions.

MR. SACHSE:   Will you undertake to redraft it in generally the Murrieta-Temecula form?

MR. VEEDER:   I'll go ahead -- this will be very rough -- I'll get it to you because you are interested with your client in it.

As I understand, your Honor said it makes no difference to you that we have already got in existence Knox findings, conclusions and judgment, and Oviatt.

THE COURT:   I would go ahead and draw it and then we will see later how we fit them in.

MR. SACHSE:   Just refer to them, Bill.

19,668

MR. VEEDER:  All right.

Those people will probably not be here when we have this.  Do you want them notified?

MR. SACHSE:  Mr. Stark periodically calls me -- I don't know wy -- and asks me what is going on.  I think if this is going to come up we had better tell Mr. Stark.  He would probably want to be here because his are the only findings that have not yet been acted upon that are involved in this.

MR. STAHLMAN:  What are we going to do about some of these diversions up there -- the fact that Gibbon and Cottle is storing water in that new reservoir and all that?

MR. SACHSE:  We surely aren't going to do anything until we finish the judgment.

MR. VEEDER:  It seems to me that when you only get a thousand acre feet at the Vail Lake --

MR. WILKINSON:  I know they are storing when they couldn't use it, that's all.

MR. VEEDER:  Is Oviatt farming up there, has he been pumping?

MR. WILKINSON:  I doubt it.  I haven't seen it.

MR. VEEDER:  Knox has been diverting, but it comes back into the creek?

MR. WILKINSON:  The same situation applies to Gibbon and Cottle.

1    MR. VEEDER:  I thought they were impounding water.

2    MR. WILKINSON:  They impound it to the extent they

3 can fill it and they are probably still impounding it and it

4 is full.

5    THE COURT:  How big is it?

6    MR. WILKINSON:  I don't know, your Honor, but I could

7 find out.

8    MR. STAHLMAN:  Our next date is what?

9    MR. SACHSE: The 15th of May.

10   THE COURT:  Continued to Tuesday, May 15th, 1962, at

11 10:00 a.m.

12       (Adjournment until Tuesday, May 15th, 1962 at   )
         (                                                )
13       (10:00 o'clock a.m.                              )

14

15                    ---o0o---

16

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>Plaintiff, )<br>  )<br>  v. )<br>  )<br>FALLBROOK PUBLIC UTILITY )<br>District, et al., )<br>  )<br>Defendants. )<br> | No. 1247-SD-C |

CERTIFICATE OF REPORTER

I    I, the undersigned, do hereby certify that I am, and on the dates herein involved, to wit:  April 6, 1962, was a duly qualified, appointed and acting official reporter of said Court:

That as such official reporter I did correctly report in shorthand the proceedings had upon the trial of the above entitled case; and that I did thereafter cause my said shorthand notes to be transcribed, and the within and the foregoing 52 pages of typewritten matter constitute a full, true and correct transcript of my said notes.

WITNESS MY HAND, at San Diego, California, this 6th day of April, 1962.

_____
Official Reporter