# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

### HONORABLE JAMES M. CARTER, JUDGE PRESIDING

— — —

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT,
et al,

Defendants.

No.  1247-SD-C

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:    San Diego, California

Date:    Tuesday, May 15, 1962

Pages:  19,671 to 19,701, Inclusive

# FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____ Deputy

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

VOLUME 194                                                          19,671

1                    IN THE UNITED STATES DISTRICT COURT

2                      SOUTHERN DISTRICT OF CALIFORNIA

3                             SOUTHERN DIVISION

4                                   ---

5                 HONORABLE JAMES M. CARTER, JUDGE PRESIDING

6                                   ---

7    UNITED STATES OF AMERICA,              )
                                            )
8                    Plaintiff,             )
                                            )
9            vs.                            )          No. 1247-SD-C
                                            )
10   FALLBROOK PUBLIC UTILITY DISTRICT,     )
     et al.,                                )
11                                          )
                                            )
12                   Defendant.             )
     ───────────────────────────────────────)

13

14                   REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                          San Diego, California

16                         Tuesday, May 15, 1962

17   APPEARANCES:

18     For the Plaintiff:          WILLIAM H. VEEDER, ESQ.,
                                   Special Assistant to the
19                                 Attorney General

20                                 CDR. DONALD W. REDD

21     For the Defendants:

22   Vail Company:                 GEORGE STAHLMAN, ESQ.,

23   Fallbrook Public Utility
     District, et al:              FRANZ R. SACHSE, ESQ.

24

25

SAN DIEGO, CALIFORNIA, TUESDAY, MAY 15, 1962, 10:00 A. M.

---oOo---

(Other matters)

THE CLERK:   Twelve, 1247-SD-C, United States v. Fallbrook.

THE COURT:   What is the order of our procedure this week?  Have you given any thought to that, Mr. Veeder?

MR. VEEDER:   Your Honor, I have given it a great deal of thought.  There has been filed with the Court a "Motion For Consideration As To Form and Content of Final Decree, Including Provision For Physical Solution and Appointment of River Master."

Your Honor has stated informally to Mr. Sachse and Mr. Stahlman of your discussions with Mr. Clark in Washington, and it occurs to me that in the light of the present circumstances of the case there would be real benefit if we were to consider that motion paragraph by paragraph, obtain comments from Mr. Sachse, primarily Mr. Stahlman.   If we are going into the record, I see no reason why we should delay that until Mr. Girard is here.   As I understand, Mr. Sachse has talked to Mr. Girard on the subject and it is agreeable with Mr. Girard, assuming that he will be reserved the right to comment himself on it.

Is that not correct?

MR. SACHSE:   That is not quite correct.   Mr. Girard

19,673

talked to me Saturday, at which time he had not seen this

instrument as yet.  It was there in front of him on his desk,

but he hadn't even opened it.  He stated that quite

obviously there were matters of great concern to California

in it and he would want to take part in any discussion on it.

He didn't object to our taking it up preliminarily in his

absence, but he suggested as an alternative that we have

a Vail judgment which is, for all practical purposes, ready

to sign.  He asked me if I had checked it over.  I said I

had and I found nothing to request to be changed.  And he

asked me to suggest to the Court that we proceed with the

Vail judgment.

        As far as this motion is concerned, I am perfectly

willing to take it up myself.  I have gone over it pretty

carefully and made my comments.  But the most startling

thing that appears to me in connection with it, your Honor,

is that from the letter from Mr. Clark to Mr. Luddy it appears

that this has only been served upon me, Mr. Girard and Mr.

Stahlman.  If there is any person who is critically

concerned in this, it is the groundwater area represented

by Mr. Krieger.  Everything in this motion involves Mr.

Krieger's clients, and he hasn't even seen a copy of it.

I called him and I was unable to get him, so I don't know.

        So I see no harm to be done by our talking this over

and perhaps pointing out some of the most obvious bugs in it,

19,674

but any action on this motion would be completely improper,
in my judgment, without an opportunity for Mr. Krieger to be
heard and Mr. Girard also.

MR. VEEDER:   We are in complete accord with this.
And the question came up as to the breadth of distribution of
the motion.   One of the first questions that came to my mind,
and certainly to Mr. Clark's also, was to whom should this
matter be directed at this point.   I pointed out to him that
it had been our general practice on matters, even though they
are basin wide, more or less to restrict the preliminary
discussion at least to the group that had been here daily;
and certainly after a review by this group and consideration
by it, this matter then would be in a better position for a
general distribution of it to all counsel.

It seemed to me that it is of extreme importance that
consideration be given to it by this group, that comment be
made in connection with it to the end that I can contact
Mr. Clark as soon and as rapidly as possible in regard to
areas of agreement and points of disagreement.   This is an
extremely important factor in the litigation.   It is what
has been requested of the Government, namely, to put in
writing what it desired in connection with the decree and to
give thought in regard to a physical solution.   These are
factors that are specified in this motion.

It is, of course, of great importance, it seems to me,

19,675

that though this Court, in my view, could not order construction

of DeLuz Dam -- and I don't believe anybody ever thought it

could -- the question of the operation of DeLuz Dam, with

the recommendation of this Court as to the location of the

dam, how it feels the waters could best be utilized, would be

a factor that Mr. Clark would like to hear about.

For that reason, most of our time has been devoted to

the preparation of this matter and to preparation of an

explanation of it, and I would like, if we could, to start

now and to proceed with consideration of it.paragraph by

paragraph -- read the paragraphs and get the reactions to it.

MR. STAHLMAN:  May I be heard, your Honor?

THE COURT:  Yes.

MR. STAHLMAN:  I received this only yesterday, your

Honor.  My mail had been heretofore sent to my house, where

I get it readily, and I went to the office yesterday and I

found it.  I have not had opportunity to do anything but

give it a cursory examination.  I have some difficulty in

understanding some of the matters which are stated therein,

and also I receive the impression that there was some

considerable departure from the basic outline that Mr. Clark

gave to it when he proposed it here.  So I think it requires

very careful and serious consideration in some respects.

There are some things with which I agree offhand.

However, I think we should dispose of these Vail findings

19,676

that are on the agenda here.   I would like to have that disposed of.

I do think Mr. Girard should be here when we go into this matter.   We are going to have to duplicate it again. And I think inasmuch as Vail Company lies in the Murrieta Basin up there and other people are just as much concerned about this as Vail would be, have just as large a stake, even though they may have smaller property interests, the large segment of them being represented by Mr. Krieger, that he should be notified.   Otherwise, I think if we just jump into this thing now, something that has just been recently presented to us, and stop what we were doing and go into this matter, I think we will be losing time in the long run.

These are very serious matters.   Some of them, I think, are departures from basic California law and would require a great deal of consideration as to whether some of these matters can be done.   I think that being the case, Mr. Girard should be here when we discuss it.

I think we ought to proceed with the Vail findings.   I have looked them over.   There are only a couple of small corrections that I think need be done.   The only other thing that has to be done is to add Exhibit A.   We went over that once before in the early consideration of the findings. Exhibit A is merely a property description of the Temecula township lots owned by Vail, and Exhibit B is the map which

1   we talked about.

2          If we can settle these here today, I think your Honor

3   could sign them.  Mr. Girard has additional copies which he

4   will bring down and we can dispose of the Vail findings.

5          Then I am perfectly willing to go into anything the

6   Court wants to go into.  Although I do think Mr. Girard should

7   be here, and I think other people in the Murrieta Valley should

8   be here.

9          THE COURT:  Mr. Krieger, of course, represents most

10   of these other large owners up there, with the exception of

11   two or three of the big ranches -- Knox, Gibbon and Cottle,

12   and a couple more.  They may not be in the Murrieta area.

13   But Mr. Krieger represents most of these people.  When you

14   tried to reach him, what word did you get?

15          MR. SACHSE:  I placed a call and Mr. Krieger would not

16   be back in the office for a week, your Honor.  Mr. Littleworth

17   would be back Monday.  I put a call to their homes even when

18   I found this instrument, and did not make connection with

19   either of them.  I did not try to call Mr. Littleworth

20   Monday because I knew he didn't have a copy and there was no

21   sense going on with it.  So I did not put the call through

22   again.  But Mr. Krieger's secretary advised me he wouldn't

23   be back for a week.

24          THE COURT:  Would it be hoping too much that you could

25   pry Mr. Littleworth away tomorrow, even if we got a call to

1  him right away?  I think we should try to do it.

2  MR. SACHSE:  I feel as Mr. Stahlman does, your Honor.

3  They are going to have to be here sooner or later.  Maybe we

4  can hammer some of these things out.  But I don't believe

5  that we make speed intelligently by starting a job which we

6  all work on, which everybody is ready to close up, and then

7  stop it and push it into the corner.  This is a new problem

8  and a very complicated one.  It involves, by implication,

9  reversal or modifications at least of some of the previous

10  interlocutories.  It involves very serious questions of

11  California law.  I don't think we are going to help

12  ourselves in our logical accomplishment of this litigation

13  by dropping the Vail judgment, with which we are practically

14  done, and taking on some extremely complicated and

15  controversial propositions.

16  I would like to get rid of a couple of the simple ones

17  first, if we could.

18  THE COURT:  Why don't we work on Vail today?  Get a

19  call in right away to Mr. Littleworth.  We know Mr. Girard

20  will be here tomorrow morning.  It would seem to me that would

21  be the logical way to proceed.

22  MR. VEEDER:  May I put that call in now?  Or do you

23  want me to wait until noon?  If we wait until noon, I wouldn't

24  catch him.

25  THE COURT:  Let's put it in now.  We will let the Clerk

put the call in for him on my phone.

MR. SACHSE:  Has he got a copy?

THE COURT:  We will get him on the phone.  That is the main thing.

See if you can get Mr. Littleworth at Riverside, Mr. Clerk.  I will probably talk to him if you get him on the phone.  Put the call in.

Do we have any other judgments besides Vail that are also ready to work on?

MR. VEEDER:  Not now, your Honor.

MR. SACHSE:  I lodged the amendment to the Murrieta, at your Honor's direction.  I don't even have my own copy of it here.  That referred to the number of acre feet of water.

THE COURT:  Is it agreeable to start tomorrow morning, Mr. Veeder?  Many of the points that have been raised here, of course, would be gone into in more detail.  We would have Mr. Girard here, and hope to have Mr. Littleworth here.

MR. VEEDER:  Respecting the motion, your Honor?

THE COURT:  Yes.

MR. VEEDER:  Of course, your Honor.

The only reason I brought it up was this.  The Secretary of the Navy, of course, is going to be out here next week, and I thought probably there is nothing more important than this motion that has been filed here.  Whether the Secretary is going to talk about it or not, I don't

19,680

1   know.   But I would assume, having talked to Mr. Sachse and

2   Mr. Stahlman briefly, that they would probably have

3   observations in regard to the matter.   Developments are such

4   in this area that the sooner we get at this motion, the

5   better.

6           THE COURT:   We will start first thing tomorrow

7   morning.

8           MR. VEEDER:   Do you want to take up this proposal by

9   Mr. Sachse for the amendment to Interlocutory Judgment No. 30?

10   I do have a comment to make on it.

11          THE COURT:   I do, too, and I don't have it in front of

12   me.   If we take that up, I have to get it.

13          MR. SACHSE:   I don't even have my copy.   I didn't

14   bring my file.

15          MR. STAHLMAN: On the Vail judgment, I think it is in

16   satisfactory condition, your Honor.   Mr. Girard came down and

17   spent three days with us and worked on these, and I think we

18   have them up in as good shape as I know how.

19          There are a couple of corrections that I think are

20   obvious.   On Page 11, the paragraph that starts on Line 21,

21   I think there should be a word inserted so that it would

22   read:   "After entering the lands of the Vail Company, Temecula

23   Creek flows into the reservoir area behind Vail Dam, Wilson

24   Creek and Arroyo Seco Creek."   I think after "Creek", the word

25   "also" should be put in, so that it would read ". . .also flows

19,681

1    into said reservoir area. . ." It is a small thing, but I

2    don't think it makes proper sense to leave that word out.

3              THE COURT:  I see no objection to inserting that.

4              MR. STAHLMAN:  Then on Page 16 there is a word missing.

5    Starting on Line 2, it reads, "At the present time and

6    heretofore surface waters have existed in small pools in the

7    most western portion of Tucalota Valley on Vail Company as

8    hereinabove described."

9              I think the word "lands" should be in there to give

10   it the proper sense.

11             THE COURT:  After the word "Company".

12             MR. STAHLMAN:  Yes, your Honor.

13             THE COURT:  Insert "lands".

14             MR. STAHLMAN:  Outside of that, they appear to be

15   all right to me and in conformity with what we had previously

16   gone through step by step.

17             THE COURT:  Mr. Sachse, did you find any corrections?

18             MR. SACHSE:  I have no corrections, except to call

19   attention to certain blanks, which are quite obvious.  We

20   all concede them and they are going to have to be filled in

21   mainly with exhibit numbers.

22             MR. STAHLMAN:  I think we can have those exhibit

23   numbers filled in by tomorrow.  Some of them are judgments

24   that have not been signed yet, I think.

25             MR. SACHSE:  There are a lot of them.  For instance,

1    which maps are we going to rely upon to delineate?

2         MR. VEEDER:  Where are you, Mr. Sachse?

3         MR. SACHSE:  I am looking at Page 22 now at the very

4    next to the last line.  There is a blank -- Exhibits blank.

5    This refers to the small younger alluvial deposits.  We have

6    to decide, and I guess Colonel Bowen is the man to tell us,

7    which is the more appropriate exhibit to rely upon in

8    delineating those areas of younger alluvium.

9         MR. STAHLMAN:  I was going to suggest that maybe Mr.

10   Wilkinson and Colonel Bowen can get together today and decide

11   which of those exhibits to use, and we can insert those and

12   have them.  If that is agreeable to Mr. Wilkinson and

13   Colonel Bowen to get together on which maps to use as

14   exhibits.

15        THE CLERK:  Your Honor, Mr. Littleworth is attending

16   a meeting in San Bernardino.  I left word with his secretary

17   to get in touch with him and have him call you back.

18        THE COURT:  All right.

19        MR. SACHSE:  I am satisfied with the Vail judgment,

20   your Honor.

21        MR. STAHLMAN:  We will have the exhibits attached to

22   it tomorrow.

23        THE COURT:  On page 37 is another blank on exhibits.

24   And there is a blank for a judgment number there in line 8.

25        MR. SACHSE:  That is Judgment No. 30.

1          MR. STAHLMAN:  Yes.

2          MR. SACHSE:  No, that is going to be another A-series

3    judgment.

4          MR. STAHLMAN:  On Page 41, also.

5          THE COURT:  What is that judgment in Section 78 of the

6    findings?

7          MR. SACHSE:  That is lands within the Santa Rosa

8    Rancho, within the drainage area of Murrieta Creek and not

9    within the Murrieta-Temecula groundwater area.  My

10   recollection is they are all consolidated rock, aren't they,

11   according to the geologic maps, and it will probably be

12   another A-series.  But what the number would be, I don't know.

13         Is that right?

14         MR. WILKINSON:  The same thing applies to that area

15   between the Gorge.

16         MR. SACHSE:  That is 39.

17         MR. VEEDER:  That is 39 and 39-A.  That is something

18   you and I talked about, Mr. Sachse, because it is apparent

19   now that 29 and 29-A, which is Sandia Creek, we have in some

20   way to weld those judgments together or we are going to have

21   conflict in description.

22         MR. STAHLMAN:  This Paragraph 78 on Page 37, that

23   judgment would be then 39-A.

24         MR. SACHSE:  No, that will be another one.

25         MR. VEEDER:  I think you will have to have a separate

1       one on that, Mr. Stahlman, because I believe the description

2       says "land" and the way matters are laid out now it would be

3       better to handle the matter by a separate A-series.

4               MR. STAHLMAN:  Shall we give it a number now?

5               MR. SACHSE:  Let's get the map so we know what we are

6       talking about.

7               THE COURT:  First, we have no number on this one,

8       have we?  There was a number assigned.  There is no number on

9       the front of this.

10              MR. SACHSE:  On which?

11              THE COURT:  Vail.  It is 35, is it not?

12              MR. STAHLMAN:  Yes, 35 is right.

13              THE COURT:  Put it on, Mr. Clerk.

14              The last number we assigned for judgments, according

15      to my notes, were 39 and 39-A.

16              THE CLERK:  Mr. Veeder said 39-A was completely

17      withdrawn.

18              Isn't that correct?

19              MR. VEEDER:  Yes.  What I pointed out this morning is

20      it is obvious now there was Sandia Creek, which is 29-A, as

21      I remember, and the area between the Gorge and Sandia Creek

22      or DeLuz Creek.  We have to go back and work up each parcel

23      of land where they joined.  There is no alternative.  I

24      have gone over this with the Office of Groundwater Resources,

25      my own office has done the work on it, and we come up with the

19,685

same problem.   39-A was assigned to three other areas below
the Gorge and above the confluence with DeLuz Creek.

MR. SACHSE:  What is wrong with calling this 35-A?

MR. VEEDER:  There is no A-series on 35.

MR. SACHSE:  It is all Vail land and all basement
complex.  It might be a good number for it.

MR. STAHLMAN:  Yes.

MR. VEEDER:  What would be wrong with simply saying
any land to which the Vail Company interlocutory judgment
applies which have been found by this Court to be basement
complex or weathered basement complex cannot retain any
groundwaters which are a part of the stream system of the
Santa Margarita River, but rather those waters are vagrant,
local, percolating?

MR. SACHSE:  You have all you want in the judgment
provisions which you have desired in all of the A-series,
Mr. Veeder, and they aren't in this one.

THE COURT:  Now wait a minute.  One thing at a time.
Let's finish up this 39.  My notes of April 6 show that
Mr. Sachse had some responsibility in connection with
Judgment No. 39.  But what area that is I didn't make a note
of.

MR. SACHSE:  That is the area between the Gorge and
the Naval Reservation boundary on the main stream proper as
distinct from the uplands or basement complex.

THE COURT:   Is that No. 39 still going to stick?

MR. VEEDER:   Yes, I think it should, your Honor.   I think we might as well reserve 39 and 39-A for that area in question.   We do have to work out these descriptions for the reason I have explained, and that has not been done.

THE COURT:   Let's pass that up.   We will leave 39 and 39-A as assigned.   I find my notes on it:   39, main stream Santa Margarita the Gorge to the Enclave, leaving open the question whether Santa Rosa is riparian to the main stream.

MR. SACHSE:   That is right.

THE COURT:   39-A:   Basement complex below the Gorge and above the Enclave.   Right?

MR. SACHSE:   That is right.

MR. VEEDER:   That was the way it was left, that's for sure.

THE COURT:   On Page 22, which is the first judgment that we come to --

MR. STAHLMAN:   That is an exhibit.   The first one would be, I think, Page 37, Line 8.

THE COURT:   Let's assign the No. 35-A, being another Vail judgment.

MR. STAHLMAN:   That would be a short one.   We could do that -- make it 35-A and   include all of those.

MR. VEEDER:   Would that be in both the Murrieta groundwater area and Santa Rosa?

1  MR. STAHLMAN:  Yes.

2  MR. VEEDER:  Throughout the whole area?

3  MR. STAHLMAN:  Follows somewhat this idea you have

4  just mentioned, only putting it in a separate judgment.

5  MR. VEEDER:  Do  you have the descriptions of that

6  property?

7  MR. STAHLMAN:  We have the descriptions.  We can

8  refer to the exhibits.

9  MR. VEEDER:  That is what you will have to do then.

10  MR. STAHLMAN:  That is what I think.

11  THE COURT:  35-A then would be Vail land vagrant waters,

12  right?

13  MR. VEEDER:  Irrespective of where it is located.

14  MR. STAHLMAN:  Right.  In other words, we will make

15  the judgment so that it will include all of the areas -- it

16  may have to be in several paragraphs, but it will include

17  all areas that are not included in some other judgment.

18  THE COURT:  All right, then, on Page 37, Line 8, we

19  would insert "Judgment No. 35-A."  And it says, "as was

20  determined".  How long is it going to take 35-A to be drawn

21  up?

22  MR. STAHLMAN:  It will not take long, your Honor.

23  I think also on Line 8 just leave out the word "was"

24  and it would read "said area as determined in Interlocutory".

25  THE COURT:  Yes.

19,688

1          Where is your next judgment that we don't have a

2    number for?

3          MR. STAHLMAN:   It is on Page 41, which would be the

4    same thing then.

5          THE COURT:   It would be the same number, would it,

6    35-A?

7          MR. STAHLMAN:   Same number, yes.

8          The next one is on page 49 at the very bottom of the

9    page.   That is the same thing again.

10          THE COURT:   35-A.

11          MR. STAHLMAN:   I think that is all the judgments.

12    The rest are exhibits.

13          THE COURT:   Mr. Veeder, have you had a chance to look

14    over the Vail judgments?

15          MR. VEEDER:   Yes, I have, your Honor.   I haven't made

16    a thorough analysis of it.   However, when I say "thorough

17    analysis" I mean relating it back against the several other

18    judgments that have been entered, because it is just too

19    voluminous.   I, of course, disagree with much that is in it,

20    but I believe it is reflective of the rulings your Honor has

21    made.

22          THE COURT:   Did you find any errors?

23          MR. VEEDER:   I find no typographical errors, or anything

24    like that, that should be brought to your Honor's attention.

25          I, of course, as I said before, feel that the rights

19,689

1  of the National Government will be controlled by the

2  stipulated judgment, and that has been denied, and I think

3  what has been done here is reflective of what your Honor has

4  determined up to this point.

5      THE COURT:  Colonel Bowen, do a little work between now

6  and the time that I get through with my sentences, which will

7  be about 2:20 or 2:30, on these exhibits.  And, meanwhile,

8  I think I would like to read this over and I will try to read

9  it over.  We will take an adjournment then until, say, until

10  2:30.

11      Before you leave, I found my copy of Mr. Sachse's

12  amendment to Interlocutory Judgment No. 30.  I think rather

13  than take up time on it, I can show you what my suggestion

14  was and then we can talk about it.  I will just hand it to

15  you.  The way you had it worded didn't do what I wanted it to

16  do.

17      MR. SACHSE:  Let me read this into the record, if I

18  may.

19      THE COURT:  Yes.

20      MR. SACHSE:  This being the Court's amendment to my

21  suggested modification of Finding No. 49 of Interlocutory

22  Judgment No. 30:

23          "However, evidence offered by the United States

24      of America and contained in United States Exhibits

25      17 and 18 in this proceeding show, and the Court

finds, that the land area shown on Exhibits 17 and 18 which lies wholly within the Murrieta-Temecula groundwater area and comprises only a portion thereof, are groundwater storage units containing 418,000 acre feet of water available for use."

THE COURT:   In other words, the purpose of the amendment was that I want to find; I didn't want to recite, as you had it worded, that Exhibits 17 and 18 state that within this area.

MR. SACHSE:   You want to show that the Court finds.

THE COURT:   And the Court finds within that area. Adjourn until 2:30.

(Whereupon, an adjournment was taken until 2:30   )
(                                                                                )
(o'clock p.m. of this same date.                               )

---o0o---

19,691

SAN DIEGO, CALIFORNIA, TUESDAY, MAY 15, 1962, 2:00 P. M.

---o0o---

(Other matters)

THE COURT:   I think it is a great commentary and compliment to a man who has participated in litigation and in substance has made his mark on this physical area in which we live that there would be a creek named after him.   And Mr. Veeder smiles.   But seriously I don't think there is one of us here who would not be the first to say that you are a dedicated man -- you have diligently represented the Government.   We haven't always agreed with you.   We think we know your background well enough to know that we are not dealing with an individual who has been trying personal injury cases and settling half of them.   You have had to fight Judges and fight an array of counsel.   And I see now that Mr. Girard in drafting Judgment No. 35 has put your name on a creek in the Temecula Valley.   Have you noticed this?

MR. VEEDER:   I ran onto it, your Honor, and I thought somebody was being very humorous about it, and I strongly recommend it be taken out.

THE COURT:   I think it should be left in.   How many years of your life have you given to this case?   And what have you got out of it -- except the mediocre pay the Government has given you?   If you are personally affronted

19,692

1   in any way about this matter, I might take it out.  But I

2   think it would be fitting that a creek, which nobody has got

3   around to naming and will someday be named, be called

4   Veeder Creek.

5        MR. STAHLMAN:  If he wants it out, we can change it;

6   there are several others -- there is Bowen Creek, Red Creek,

7   Sandy Creek.

8        THE COURT:  Sandy Creek, yes.

9        MR. VEEDER:  I was very much amused because I was sure

10  it would be taken out, because I thought somebody was just

11  being funny.  And I think it is funny, particularly on the

12  Vail property.

13       MR. STAHLMAN:  I might say I have not had the nerve

14  to tell Mr. Vail that a creek on his property has been so

15  named.

16       THE COURT:  Oh, you haven't?

17       MR. VEEDER:  I think where it says "Veeder Dry Gulch,"

18  I think that is quite --

19       THE COURT:  Well, I think we could take out Veeder

20  Dry Gulch, because that goes a little far.  But I don't

21  mind leaving in here the fact that we have called this un-

22  named creek Veeder Creek running across Vail property.  It

23  may be relatively unimportant as creeks go, but how many

24  people have a creek named after them in this country?

25       MR. STAHLMAN:  Nigger Canyon.

1       MR. VEEDER:  Just let George stay with it.

2       MR. STAHLMAN:  I strongly recommend that someday when

3   Mr. Veeder brings his grandchildren out he can walk by with

4   pride and point to it.

5       THE COURT:  Here is Veeder Creek.  In fact, this is

6   one way you can become immortal.  The only way you can become

7   immortal is to participate in a case and have your name

8   shown as counsel in the case and the case gets into the law

9   books or a Judge writes a decision and it gets printed and

10  encumbers lawyers' libraries.  This is one way to secure

11  immortality.  You project your personality beyond your

12  lifetime.

13      MR. SACHSE:  Of course, Mr. Veeder has seated behind

14  him a representative of the agency that ultimately makes

15  this official -- the United States Geologics Survey.  All

16  they have to do is to put it on the maps and it becomes a

17  matter for posterity.

18      THE COURT:  No doubt the next map would have it on.

19      So I would strike out "Veeder Dry Gulch" and leave

20  the rest in.

21      MR. VEEDER:  Your Honor, I truthfully don't know what

22  etiquette dictates when you find yourself lending your name

23  to a dry gulch.  But I saw it and I thought it was very

24  humorous.

25      THE COURT:  In this part of the country most of our

19,694

big streams are dry gulches, except when the winter rains come.

Well, gentlemen, did you agree on any exhibits?

MR. WILKINSON: Yes, your Honor.

MR. VEEDER: Could I have the page on that?

MR. WILKINSON: Page 22, Line 30, as to geology it would be necessary to incorporate the following exhibits -- all United States exhibits -- 15, 67, 69, 70, 15-L, 275, and also Exhibit A of Interlocutory Judgment No. 31-A; and for location it would be necessary to utilize the Government 29-Series Exhibits, being E, F, J, K, N, O, Q and R.

THE COURT: Do we have to list all those exhibits in here?

MR. VEEDER: There has been an agreement on our part, your Honor, that Colonel Bowen prepare a composite of the exhibits and maps rather than have all those attached to the Interlocutory Judgment.

Isn't that correct, Colonel?

COLONEL BOWEN: Yes, sir.

MR. STAHLMAN: But the thought was, put them in here and then in the final judgment probably make reference to that.

MR. VEEDER: Why couldn't you have this reflect on the map, that this map is a composite of these exhibits and refer to the composite here as an exhibit to your Interlocutory

1   Judgment?

2       MR. STAHLMAN:  You mean give the map that is going to

3   be prepared an exhibit number at this time?

4       MR. VEEDER:  An exhibit to the Interlocutory Judgment.

5       MR. STAHLMAN:  That would be Interlocutory --

6       MR. WILKINSON:  Exhibit C.

7       MR. VEEDER:  Exhibit C of your Interlocutory, and

8   then you wouldn't have to itemize all the references to

9   which Mr. Wilkinson referred.

10      MR. STAHLMAN:  We will have to add a paragraph.  Put

11  right in here  "Exhibit C attached hereto."

12      MR. VEEDER:  And made a part of it.

13      MR. STAHLMAN:  That is satisfactory.

14      THE COURT:  As I understand the suggestion of Mr.

15  Veeder, on Lines 29, 30 and 31, it would read as follows:

16      "That said areas are not defined herein but are

17      depicted in general on Exhibit C attached hereto".

18      MR. STAHLMAN:  Very well.

19      MR. VEEDER:  And Exhibit C would be a composite of

20  the map references that have been made.

21      THE COURT:  Is this going to be a big job?

22      COLONEL BOWEN:  It would be a drafting job, your Honor.

23  We don't need to do any field work.  We have it all here

24  on these various exhibits that were listed.

25      MR. STAHLMAN:  When do you think it might be finished?

19,696

1    COLONEL BOWEN:  I will get right to work on it.  I

2  have a man I can put to work on it, your Honor.

3    THE COURT:  All right, then, let's agree it will be

4  on Exhibit C.  Strike out "incorporated" and say "attached

5  hereto".

6    MR. WILKINSON:  On Page 37, your Honor, Line 14, the

7  same language would apply.

8    MR. STAHLMAN:  In other words, Exhibit C.

9    MR. WILKINSON:  Right.

10    THE COURT:  In other words, this would again be

11  Exhibit C; is that right?

12    MR. WILKINSON:  Right.

13    THE COURT:  Exhibit C attached hereto.

14    MR. WILKINSON:  Page 38, Line 16, the same thing.

15    THE COURT:  Exhibit C attached hereto.

16    MR. WILKINSON:  Page 41, Line 17, the same thing.

17    THE COURT:  Exhibit C attached hereto.

18    MR. WILKINSON:  Page 46, Line 3, Exhibit C attached

19  hereto.

20    Page 50, again repeating, Exhibit C attached hereto.

21    Page 52, Lines 11 and 19, Exhibit C attached hereto.

22    That takes care of the question of geology, your

23  Honor.

24    THE COURT:  Where do you have reference in here to

25  Exhibits A and B?

1      MR. STAHLMAN:  They are in there.

2      THE COURT:  What do they concern?

3      MR. STAHLMAN:  Exhibit A, your Honor, is merely a

4  list of the town lots in the townsite of Temecula.  In other

5  words, there is quite a large number of them, and they are

6  all listed.  We will have that here in the morning.

7      And Exhibit B is this map to which we make reference.

8      THE COURT:  I find Exhibit A on Page 10, Line 3.

9      MR. WILKINSON:  Page 37, your Honor, Finding 81, Line

10  28.

11      THE COURT:  That is called BM.

12      MR. WILKINSON:  It is called Vail Company Exhibit BM.

13      THE COURT:  So we have Exhibits A, BM and C.

14      MR. STAHLMAN:  We ought to say "attached to these

15  findings marked Exhibit B is a copy of Vail Company's

16  Exhibit BM."  Wouldn't that be correct?

17      THE COURT:  I suppose it would make more sense to

18  people trying to find where B was.

19      MR. STAHLMAN:  Attached to these findings marked

20  Exhibit B.

21      THE COURT:  Yes, insert "is a copy of Vail Company's

22  BM."

23      Did anybody have any other suggestions about the

24  judgments?

25      We wouldn't sign the judgment until we have this

1    exhibit ready, I take it.

2         MR. STAHLMAN:  Yes.

3         THE COURT:  And it is ready to go as soon as you have

4    the three exhibits.  Two of them you will have ready

5    tomorrow.

6         MR. STAHLMAN:  Two we will have tomorrow, yes.

7         THE COURT:  Gentlemen, do you have any work you can

8    work on this afternoon without me?

9         MR. STAHLMAN:  We certainly can spend some time going

10   over this motion that is going to come up.

11        THE COURT:  I don't want you to get into any rows.

12   If you start to get into a row, suspend it.

13        MR. SACHSE:  I would just as soon work alone on it.

14        MR. STAHLMAN:  I would, too.

15        MR. SACHSE:  I don't think there would be any help

16   in a group on the motion.

17        MR. STAHLMAN:  Has your Honor heard from Mr.

18   Littleworth?

19        THE COURT:  He called and said he is in trial and

20   would call me this afternoon again.  My law clerk got the

21   message.

22        MR. VEEDER:  We certainly have things to do, your

23   Honor.

24        THE COURT:  I certainly have a desk I haven't even

25   dug into.

19,699

1   MR. SACHSE:  Mr. Veeder kindly offered, at my request,

2   since I don't have a secretary and will not get back in time

3   to get one, to let me use Mrs.Tooker to redraft that amend-

4   ment to No. 30.

5   MR. VEEDER:  I thought in the morning we could talk

6   a little bit about the language that is used.

7   MR. SACHSE:  That is all right with me.

8   MR. VEEDER:  We will have it done.  But I would like

9   to find out some of the implications of it.

10  THE COURT:  Did you have a chance to look over this

11  amendment to No. 30 that Mr. Sachse proposed?

12  MR. SACHSE:  That is what we were just discussing.

13  MR. VEEDER:  That is what I was speaking about, your

14  Honor.

15  THE COURT:  Look that over, and talk about it in the

16  morning.

17  MR. VEEDER:  Yes.

18  THE COURT:  All right, then let's suspend, and I will

19  try to see what we can do about Mr. Littleworth.  I take it

20  there would be no use to try to get any of these other

21  attorneys in at this time.  He is the main one.

22  MR. SACHSE:  I think he is the main one, and your

23  Honor, I personally would not feel we should defer

24  consideration of it until he can be here, because I think

25  there are a lot of things we could probably hammer out

19,700

1   ourselves.   I think he ought to be advised and I think he

2   ought to get a copy and be able ultimately to pick up.

3       THE COURT:   The main thing is that he ought to be told

4   we are going to be talking about it, and if he can possibly

5   get here, get here.

6       MR. VEEDER:   I will put a copy in the mail to him

7   right now.

8       THE COURT:   All right.

9       Do you want to start at 9:30?   Is that too early?

10      MR. SACHSE:   It is all right with me.

11      MR. STAHLMAN:   10:00 is all right.

12      MR. SACHSE:   You haven't heard anything from Mr.

13  Girard?

14      THE COURT:   Not a thing.

15      10:00 o'clock tomorrow morning.

16      (Adjournment until Wednesday, May 16, 1962 at      )
17      (                                                   )
        (10:00 o'clock A.M.                                 )

18

19                 ---o0o---

20

21

22

23

24

25

19,701

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )
                               )
        vs.                    )      No. 1247-SD-C
                               )
FALLBROOK PUBLIC UTILITY       )
DISTRICT, et al.,              )
                               )
                Defendants.    )
_____)

## CERTIFICATE OF REPORTER

I, the undersigned, do hereby certify that I am, and on the date herein involved, to-wit: May 15, 1962, was a duly qualified, appointed and acting official reporter of said Court:

That as such official reporter I did correctly report in shorthand the proceedings had upon the trial of the above entitled case; and that I did thereafter cause my said shorthand notes to be transcribed, and the within and the foregoing 31 pages of typewritten matter constitute a full, true and correct transcript of my said notes.

WITNESS MY HAND, at San Diego, California, this 15th day of May, 1962.

_John Swader_____
Official Reporter

JOHN SWADER, OFFICIAL REPORTER