# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

Defendants.

No. 1247-SD-C

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:     San Diego, California

Date:      Monday, July 2, 1962

Pages:  20,080 - 20,114

# FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By_____ Deputy

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

VOLUME 199

20,080

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | No, 1247-SD-C |
| FALLBROOK PUBLIC UTILITY DISTRICT, ) | |
| et al., ) | |
| Defendants. ) | |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California

Friday, July 2, 1962

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | WILLIAM H. VEEDER, ESQ., Special Assistant to the Attorney General, |
| | CDR. DONALD W. REDD |
| For the Defendants: | |
| Vail Company: | GEORGE STAHLMAN, ESQ., |
| Fallbrook Public Utility District, et al: | FRANZ R. SACHSE, ESQ. |
| State of California: | FRED GIRARD, ESQ. |

1    SAN DIEGO, CALIFORNIA, MONDAY, JULY 2, 1962, 10:00 A. M.

2                         ---oOo---

3         THE COURT:  Call the Fallbrook case.

4         THE CLERK:  Two, 1247-SD-C, United States vs.

5    Fallbrook.

6         THE COURT:  Can you gentlemen adjourn to some quiet

7    place and do some of the work?

8         MR. GIRARD:  Yes, your Honor.

9         MR. VEEDER:  They can come up to my office.

10        THE COURT:  I notice in the Fallbrook Enterprise that

11   the DeLuz District has called for a vote in September.

12        MR. SACHSE:  Yes, they re-boundaried it, and it has

13   been approved by the County Board of Supervisors to try to

14   eliminate, as I understand it, all people who were potential

15   no-votes.

16        THE COURT:  That is the way the article reads.  Have

17   you seen it?

18        MR. VEEDER:  No.

19        THE COURT:  Also I see a picture in the Fallbrook

20   Enterprise of the dam on Rainbow Creek.

21        MR. SACHSE:  That is an old Enterprise.

22        THE COURT:  This says "built last year".  This is in

23   the issue of June 28th on the election, and the dam is in

24   the issue of March 29th.  It says it was built within the

25   last year.

20,082

1     Come back at about 11:00 a.m.

2     MR. VEEDER:  Thank you, your Honor.

3     (Another matter)

4     THE COURT:  The Fallbrook case.

5     MR. VEEDER: Are you ready to proceed, your Honor?

6     THE COURT:  Yes, sir.

7     MR. VEEDER:  We have discussed, your Honor, the form

8     which has been designated "Statement Of The United States of

9     America Respecting Intention To Construct A Dam Within The

10    Naval Enclave On The Santa Margarita River".

11    Your Honor has been given Draft No. 3, dated June

12    14, 1962, of that statement.  This morning I handed to you

13    a copy of the form as signed by Assistant Secretary Belieu

14    and Mr. Ramsey Clark, the Assistant Attorney General of the

15    United States.  We have gone through the form as signed,

16    compared it back against the Draft No. 3 of June 14, 1962 .

17    Does your Honor have the draft there?

18    THE COURT:  I have the final draft handed me this

19    morning.  Tell me by subject matter what, if anything, is

20    deleted.  It seems much the same.

21    MR. VEEDER:  The primary elements which have been

22    changed in the form of June 14th was the elimination of

23    Paragraph IX on Page 3 and Paragraph X on Page 4.

24    THE COURT:  To what did they refer, briefly?

25

20,083

1  MR. VEEDER:  They referred to what Mr. Sachse has

2 referred to as his caveat to the ~~fact~~ effect that in the event that

3 a physical solution is not accomplished the Fallbrook Public

4 Utility District will assert its rights to store water as

5 declared in this litigation.

6  Paragraph No. X, the statement to the effect that the

7 signatory parties join in the instrument for the purpose of

8 settling this litigation and the agreement is not to

9 constitute a precedent in other matters.

10  Now, there have been changes in the form of what I

11 will call the ~~prayer or the~~ recommendation.  In my view, there

12 has been no substantive change in the ~~prayer~~ recommendation at all.  It is

13 certainly intended to be reflective of the concepts which were

14 originally agreed upon among the parties.  Mr. Sachse and Mr.

15 Girard are not in agreement with me on that proposition.

16  However, Mr. Sachse and Mr. Girard have both raised

17 points in regard to the elimination of the paragraphs to

18 which I referred, and I would greatly appreciate it if they

19 would comment into the record on the subject or both

20 subjects.

21  I would also like to have your Honor direct that a

22 copy of the form as now tendered to you and to the parties

23 be made a part of the record in this case.

24  THE COURT:  Hand the reporter a copy and he will make

25 the draft -- we will call it, of July 2nd, 1962 -- a part of

1    the record.

2        MR. STAHLMAN:  Before that occurs, I am wondering

3    if it wouldn't be well, so that your Honor would be informed

4    as to what has occurred since we were here in court, for the

5    record also to show what has been done in the meantime.  In

6    other words, I understand there was a meeting in Sacramento

7    and certain things were done there, and I think in order to

8    discuss the attitude in relation to the elimination of

9    language, that that intervening part should be in the record.

10       MR. VEEDER:  All right.  I will briefly refer to that.

11       In accordance with our agreement, I met with Mr.

12   Girard in Sacramento on June 18, 1962, and we conferred with

13   Mr. Gavin Craig, who is attorney for the California State

14   Water Rights Board.

15       At that time it was recommended by Mr. Gavin that

16   this statement be captioned " Protest," that there be

17   reference made specifically to the DeLuz filings which were

18   recently made, the largest of which is for 12,000 acre feet

19   on DeLuz Creek.

20       Those matters were written out by Mr. Girard and me.

21   They were included in what we designated as Draft No. 4.

22   Those revisions made by Mr. Girard and Mr. Craig, and which

23   I attended, were eliminated in Washington for reasons which

24   I expressed to Mr. Girard, namely, that it was felt that this

25   was a filing made by the United States expressing the

1    intention to build DeLuz Dam and the thought that those

2    particular phases were not requisite in connection with the

3    Statement of the State Water Rights Board.

4          MR. GIRARD:  Do you have objection, Mr. Veeder, to

5    putting into the record the original Draft No. 4, which

6    encompassed the suggestions of Mr. Craig?

7          MR. VEEDER:  No, I have none.

8          THE COURT:  Give the reporter a copy to put in.

9          MR. VEEDER:  That is a summation of the situation,

10   your Honor.

11            (The documents directed by the Court to be          )
              (                                                    )
12            (incorporated into the transcript are hereinafter    )
              (                                                    )
13            (set forth as follows:                               )

14

15            "RAMSEY CLARK
              Assistant Attorney General
16            U. S. Department of Justice

17            STANLEY MOSK, Attorney General
                of the State of California
18            F. G. GIRARD
              Deputy Attorney General

19

20                  THE RESOURCES AGENCY OF CALIFORNIA
                        STATE WATER RIGHTS BOARD
21                          P. O. Box 1592
                          Sacramento, California

22
              TO:                    ) STATEMENT OF THE UNITED
23                                    ) STATES OF AMERICA RESPECTING
              STATE OF CALIFORNIA     ) INTENTION TO CONSTRUCT A DAM
24                                    ) WITHIN THE NAVAL ENCLAVE ON
              STATE WATER RIGHTS BOARD) THE SANTA MARGARITA RIVER

25

"The United States of America, in the interests of comity between the United States and the State of California and in the furtherance of cooperation between the United States and the Sate for the fullest development, conservation, and utilization of the water resources of the Santa Margarita River system, shows:

I

During 1942 and 1943 the United States acquired the Rancho Santa Margarita in San Diego County, California, consisting of approximately 133,000 acres of land, acquired certain other smaller tracts, withdrew some of its public lands, and established on those properties three military installations:  Camp Pendleton, United States Naval Ammunition Depot, and United States Naval Hospital, hereinafter referred to as the Naval Enclave.

II

The Santa Margarita River traverses the Naval Enclave for the last 21 miles of its course to the Pacific Ocean. This river system is the principal source of water supply for the Enclave.  For approximately 20 years the United States has pumped waters from the Santa Margarita Coastal Basin, the waters of which are a part of and are recharged by the Santa Margarita River, has made surface impoundments, and has otherwise beneficially used the waters of the stream for military and agricultural purposes.

III

The rights to the use of water in the Santa Margarita River and its tributaries are the _res_ or subject matter of the case entitled <u>United States of America</u> v. <u>Fallbrook Public Utility District</u>, et al., in the United States District Court for the Southern District of California, Southern Division, No. 1247-SD-C, which case is now being tried.

IV

The State of California has intervened in that case, is now represented by its Attorney General, the Honorable Stanley Mosk, and is actively participating in the trial.

V

The reord in the pending litigation shows, and all parties agree, that the runoff of the Santa Margarita River is erratic and fluctuates between periods of severe drought and infrequent floods of short duration when the surface waters of the stream far exceed the demands on the stream. In order to conserve flood waters for beneficial use in times of shortage, both the United States and the State of California have made extensive and comprehensive investigations as to the best location of a structure to impound surplus surface water.  On the basis of these investigations the United States and the State are agreed that the best location for such a structure, in order to achieve the greatest

1   storage potential from the standpoint of both conservation

2   of water resources and economic feasibility, is within the

3   Naval Enclave shortly below the confluence of DeLuz Creek

4   with the Santa Margarita River.

VI

6   The Department of the Navy is going forward

7   with plans pursuant to which Congress will be requested to

8   authorize and provide funds for the construction of a dam

9   at the DeLuz site.  The size of the structure for which it

10  will be recommended that the funds be appropriated has not

11  been finally determined but studies on which such recommenda-

12  tion will be based are now in progress and a reservoir with

13  a storage capacity of approximately 150,000 acre-feet is

14  indicated.  However, the size and design of the structure to

15  be recommended will be such as to provide for maximum flood

16  control and conservation benefits consistent with sound

17  principles of economic feasibility.  It is expected that when

18  the dam is constructed, it will be operated to provide water

19  for use by the United States on the Naval Enclave, in

20  addition to the yield of its riparian, overlying and other

21  vested rights as determined in the above-mentioned case of

22  the United States of America v. Fallbrook Public Utility

23  District, et al. The surplus waters stored in the reservoir

24  will be available for use by other water users as may be

25  authorized by the Act of Congress or the Department of the

Navy.   Further, the reservoir will also reduce demands on upstream sources to satisfy the vested water rights of the United States on the Naval Enclave.

### VII

The major litigants in the case of the United States of America v. Fallbrook Public Utility District, et al., referred to above, are presently attempting to arrive at an agreement that will terminate by an effective decree such litigation and will provide a physical solution that will yield the greatest benefit to the watershed and owners of water rights thereon.   As a consequence, the construction of a dam by the United States of America at the DeLuz site is of major importance in the accomplishment of such termination, physical solution, and effective decree.

### VIII

In the interest of comity and for the benefit of the Board, the United States of America will present to the Board its engineering plans and specifications concerned with the DeLuz Dam and will, if desired by the Board, make available an engineer or other qualified person to explain or amplify such engineering plans and studies.

IT IS RESPECTFULLY RECOMMENDED to the State Water Rights Board, in the exercise of its broad discretionary powers respecting the issuance of permits and licenses that it:

1.   Refrain from issuing permits which would conflict with water rights adjudicated in <u>United States of America</u> v. <u>Fallbrook Public Utility District, et al</u>.

2.   Defer until January 1, 1964, or until Congress rejects the plans for the DeLuz Dam, whichever occurs first, the issuance of all permits to appropriate waters of the Santa Margarita River Stream System which would affect the availability of water at DeLuz Dam and advise the United States of America of the Board's willingness to defer such action.

3.   In the event Congress, prior to January 1, 1964, authorizes construction of the DeLuz Dam and appropriates funds therefor, all applications for permits to appropriate rights to the use of the waters of the Santa Margarita River Stream System now pending or hereafter filed be denied, or if issued, be made subordinate to the use of water at the DeLuz Dam to the extent of the reservoir capacity as it may ultimately be constructed pursuant to such Congressional authorization.

UNITED STATES OF AMERICA

s/ Kenneth E. Belieu
Secretary of the Navy

s/ Ramsey Clark
Assistant Attorney General

In the interests of comity between the United States
and the State of California and in the furtherance of
cooperation among the United States, the State of
California and other owners of rights to use the waters
of the Santa  Margarita River Stream System for the fullest
development, conservation, and utilization of that system,
the undersigned join in the foregoing recommendations to
the State Water Rights Board.

STANLEY MOSK, Attorney General
of the State of California
F. G. GIRARD,
Deputy Attorney General

GEORGE STAHLMAN,
Attorney for Vail Company

FRANZ R. SACHSE,
Attorney for Fallbrook Public
Utility District

\*          \*               \*               \*

RAMSEY CLARK
Assistant Attorney General
U. S. Department of Justice

Draft No. 4
June 18, 1962

STANLEY MOSK, Attorney General
   of the State of California
F. G. GIRARD
   Deputy Attorney General

THE RESOURCES AGENCY OF CALIFORNIA
STATE WATER RIGHTS BOARD
P. O. BOX 1592
Sacramento, California

IN THE MATTER OF ALL          )  PROTEST OF THE UNITED
APPLICATIONS ON THE SANTA     )  STATES OF AMERICA TO ALL
MARGARITA RIVER STREAM SYSTEM )  PENDING APPLICATIONS ON
INCLUDING, BUT NOT LIMITED TO,)  SANTA MARGARITA RIVER
APPLICATION NOS. 20,621, 20,608) STREAM SYSTEM  INCLUDING,
20,620                        )  BUT NOT LIMITED TO,
                                 APPLICATION NOS. 20,621,
                                 20,608, 20,620; AND THE
                                 STATEMENT OF THE UNITED
                                 STATES OF AMERICA
                                 RESPECTING INTENTION TO
                                 CONSTRUCT A DAM WITHIN THE
                                 NAVAL ENCLAVE ON THE SANTA
                                 MARGARITA RIVER

The United States of America, in the interests of

comity between the United States and the State of California

and in the furtherance of cooperation between the United

States and the State for the fullest development,

conservation, and utilization of the water resources of

the Santa Margarita River system, shows:

I

That the DeLuz Valley Mutual Water Company has filed

an application, No. 20,621, to appropriate by storage for

subsequent use 12,000 acre feet of water annually from

DeLuz Creek, a tributary of the Santa Margarita River; that

two other applications, Nos. 20,608 and 20,621, concern

applications to appropriate water from DeLuz Creek or a

tributary thereto; that in light of the facts as stated

hereinafter said applications referred to herein do not

1   best conserve the public interest nor would the granting

2   of said applications best develop, conserve and utilize in

3   the public interest the waters sought to be appropriated;

4   it is therefore submitted that this Board, in the exercise

5   of its broad discretionary powers as provided in Sections

6   1255, 1256 and 1257 of the California Water Code should

7   consider said applications in the light of the facts set

8   forth in this statement and, proceeding in accordance there-

9   with deny said applications.

II

11   During 1942 and 1943 the United States acquired the

12   Rancho Santa Margarita in San Diego County, California, con-

13   sisting of approximately 133,000 acres of land, acquired

14   certain other smaller tracts, withdrew some of its public

15   lands, and established on those properties three military

16   installations:  Camp Pendleton, United States Naval

17   Ammunition Depot, and United States Naval Hospital, hereinafter

18   referred to as the Naval Enclave.

III

20   The Santa  Margarita River traverses the Naval Encalve

21   for the last 21 miles of its course to the Pacific Ocean.

22   This river system is the principal source of water supply

23   for the Enclave.  For approximately 20 years the

24   United States has pumpted waters  from the Santa Margarita

25   Coastal Basin, the waters of which are a part of and are

recharged by the Santa Margarita River, has made surface

impoundments, and has otherwise beneficially used the

waters of the stream for military and agricultural purposes,

and claims the right to continue to do so.

### IV

The rights to the use of water in the Santa

Margarita River and its tributaries are the res or subject

matter of the case entitled United States of America v.

Fallbrook Public Utility District, et al., in the United

States District Court for the Southern District of

California, Southern Division, No. 1247-SD-C, which case is now bei

being tried.

### V

The State of California has intervened in that case,

is now represented by its Attorney General, the Honorable

Stanley Mosk, and is actively participating in the trial.

### VI

The record in the pending litigation shows, and all

parties agree, that the runoff of the Santa Margarita River

is erratic and fluctuates between periods of severe drought

and infrequent flood waters for beneficial use in times of

shortage, both the United States and the State of California

have made extensive and comprehensive investigations as to

the best location of a structure to impound surplus surface

water.  On the basis of these investigations the United

States and the State are agreed that the best location for

such a structure in order to achieve the greatest storage

potential from the standpoint of both conservation of water

resources  and economic feasilbility, is within the Naval

Enclave shortly below the confluence of DeLuz with the

Santa Margarita River.

### VII

The Department of the Navy is going forward with

plans pursuant to which Congress will be requested to

authorize and provide funds for the construction of a dam

at the DeLuz site.  The size of the structure for which it

will be recommended that funds be appropriated has not been

finally determined, but studies on which such recommendations

will be based are now in progress and a reservoir with a

storage capacity of approximately 150,000 acre-feet is

indicated.  However, the size and design of the structure

to be recommended will be such as to provide for maximum

flood control and conservation benefits consistent

with sound principles of economic feasibility.  It is

expected that when the dam is constructed, it will be

operated to provide water for use by the United States on the

Naval Enclave, in addition to the yield of its riparian,

overlying and other vested rights as determined in the above-

mentioneddcase of the <u>United States of America</u> v. <u>Fallbrook</u>

<u>Public Utility District, et al</u>.  The surplus waters stored

in the reservoir will be available for use by other water users as may be authorized by the Act of Congress or the Department of the Navy.  Further, the reservoir will also reduce demands on upstream sources to satisfy the vested water rights of the United States on the Naval Enclave.

VIII

the major litigants in the case of the <u>United States of America</u> v. <u>Fallbrook Public Utility District, et al</u>., referred to above, are presently attempting to  arrive at an agreement that will terminate by an effective decree such litigation and will provide a physical solution that will yield the greatest benefit to the watershed and owners of water rights thereon.  As a consequence, the construction of a dam by the United States of America at the DeLuz site is of major importance in the accomplishment of such termination, physical solution and effective decree.

IX

In the interest of comity and for the benefit of the Board, the United States of America will, as soon as possible, submit to the Board its engineering plans and specifications concerned with the DeLuz Dam and will, if desired by the Board, make available an engineer or other qualified person to explain or amplify such engineering plans and studies.

X

It is agreed that in the event    a physical solution

cannot be accomplished, nothing herein shall be construed to limit in any manner whatsoever the Fallbrook Public Utility District from exercising its rights to store water as adjudicated in the United States of America v. Fallbrook Public Utility District, et al. case.

XI

This statement is signed by the United States of America and approved by the signatory parties for the purpose of amicably settling the above mentioned case and does not constitute a precedent in regard to any other matters.

IT IS RESPECTFULLY RECOMMENDED ,to the State Water Rights Board, that excepting for such appropriative water rights in or to the waters of the Santa Margarita River System as are adjudicated in United States of America v. Fallbrook Public Utility District, et al., the Board take the following action:

1.   Refrain from issuing permits which would conflict with water rights adjudicated in United States of America v. Fallbrook Public Utility District, et al.

2.   Defer until January 1, 1964, or until Congress evidences intention to reject the plans for the DeLuz Dam, whichever occurs first, the issuance of all permits to appropriate waters of the Santa Margarita River Stream System, including but not limited to the above set forth

applications would affect the availability of water at DeLuz

and advise the United States of America of this Board's

willingness to defer for such time as stated herein actions

on said applications referred to in the preceding sentence.

3.   In the event Congress, prior to January 1, 1964,

authorizes construction of the DeLuz Dam and appropriates

funds therefor, all applications for permits now pending

or hereafter filed be denied, or if issued, be made

subordinate to the use of water at the DeLuz Dam to the

extent of the reservoir capacity as it may ultimately be

constructed pursuant to such Congressional authorization.

UNITED STATES OF AMERICA

_____

*          *          *          *          *

MR. VEEDER:  I do believe that Mr. Sachse has thoughts

that he wants to express, ~~Mr. Girard and I, as well as~~

~~Mr. Stahlman~~.

THE COURT:  All right, Mr. Sachse.

MR. SACHSE:  I would like to go through briefly

the objections that I have to the draft as presented.

THE COURT:  In a way, it is a sort of silly

proposition.

MR. SACHSE:  It is.

THE COURT:  Because I am not deciding this matter.  I

1   can't tell the Attorney General or the Secretary of the

2   Navy what to sign.  We have had long hearings and we have

3   pointed out matters that we considered of great importance

4   to the Government, and the Government, acting through the

5   Secretary of the Navy and the Attorney General, I take it,

6   can do as they please.  I don't know that there is anything

7   that I can do about it.

8        MR. SACHSE:  No, but I think Mr. Veeder wants this

9   in the record for assistance in Washington.

10        THE COURT:  I have suggested that there be an

11   application to appropriate water of the Santa Margarita

12   River subordinate to Fallbrook's permits.  Nothing is said

13   about that.

14        I have suggested that there be an application to

15   appropriate water of the Santa Margarita River subordinate

16   to Fallbrook's permit.  Nothing is said about that.

17        I have suggested that there be an application to

18   appropriate the waters of DeLuz.  Well, this statement is,

19   I suppose, the answer to that, the statement of the

20   Government's intention.  Still nothing is said about any

21   rights to take water of the Santa Margarita, surplus water,

22   until such time as Fallbrook would have a dam built.

23        Both these things seemed important to me.

24        So, we will go ahead and make the record on it.  But

25   I can't decide this.  I have no power to tell the Attorney

1    General what to do.   I could urge and suggest.

2         MR. VEEDER:   Your Honor, I take the view, in that

3    connection, that initially the matter of physical solution

4    arose some months back.   That was a part of the record.   I

5    think this is a logical sequitur of that original thoughts.

6         THE COURT:   Let's go ahead, Mr. Sachse.   What are

7    your views on this?   This is one way of passing on to the

8    Attorney General and the Navy exactly the views of the

9    litigants in this case on these matters.

10        MR. SACHSE:   First, your Honor, the new draft deletes

11   entirely Paragraph IX.   Paragraph IX was inserted at my

12   request.   It is very brief.   It reads as follows:

13             "It is agreed that in the event a physical

14        solution cannot be accomplished, nothing herein shall

15        be construed to limit in any manner whatsoever the

16        Fallbrook Public Utility District from exercising

17        its rights to store water as adjudicated in the

18        United States of America v. Fallbrook Public Utility

19        District, et al. case."

20        That is deleted.   I can't buy it.

2 fls

20,101

Belt 2

p-10

Paragraph 2.
Paragraph X is deleted.

Paragraph X reads:

"This statement is signed by the United States of America and approved by the signatory parties for the purpose of amicably settling the above-mentioned case and does not constitute a precedent in regard to any other matters."

I can't sign it without that exception. I am a California water lawyer and one of the things I have been urging since this case started was the duty of the United States to make filings, and I will not sign a document that says they don't have to and that it could be used in the future as a precedent in other cases.

Paragraph 3. in Paragraph X, "This statement is signed for the purpose of amicably settling the case.." I want some sort of recital in here that if we are conceding, we are getting a quid pro quo, and there is no reference whatsoever that this has anything to do with a settlement.

Paragraph 4. The recommendation section, as originally drafted, reads:

"It is respectfully recommended to the State Water Rights Board that, excepting for such appropriate water rights in or to the waters of the Santa Margarita River system as are adjudicated in United States of America versus Fallbrook, the Board takes the following action:

p-11

1          "Delete the exception in the present draft.."

2     Then when you read the recommendations, it is perfectly

3     possible to construe it as meaning that should the DeLuz Dam

4     be built, the Fallbrook and the Vail permits be made junior

5     to it.  That is out.

6          THE COURT:  When you say you can't buy it and that is

7     out --

8          MR. SACHSE:  I mean, I could not sign.

9          THE COURT:  You could not join as representing your

10    client, the Fallbrook Public Utility District?

11         MR. SACHSE:  Correct.

12         THE COURT:  To urge them to join in this statement?

13         MR.SACHSE:  No, sir, I could not.

14         I want to make it very clear.  The United States can

15    file it -- and they may not want my opinion as to whether

16    it is any good or what good it will do them with the Water

17    Rights Board -- I don't think it will do them much good

18    as a pure statement.  But I can't recommend to my client that

19    we join in the execution of this as was previously supposed.

20         THE COURT:  Mr. Stahlman.

21         MR. STAHLMAN:  Of course, I have some problems.  They

22    are not similar to Mr. Sachse's problems.  My main concern

23    at this time is, first, that the paragraph in relation to

24    the settlement of the case has got to show in some way, either

25    by stipulation or in the document itself, before I would

p-12

1   suggest my clients sign it.

2   Secondly, I do think there is an ambiguity in the

3   recommendation as to what the Water Rights Board should do,

4   by reason of, as Mr. Sachse pointed out, the deletion of that

5   portion of it that would permit the construction of it that

6   Vail and Fallbrook would subordinate their rights to those

7   of the Navy.  I might further say that I can't understand

8   why, as we discussed this matter upstairs, Mr. Veeder simply

9   can't cure some of these things by stipulation.  The method

10  or means by which it is done, I am not going to offer any

11  criticism to, except to say that I think it is a little

12  ludicrous to concoct three or four documents of stipulations

13  and then attach them to the application or statement stating

14  that the Government will file.  We all know what the object

15  was that we were attempting to accomplish in this.  There

16  was complete understanding, I think, after these long

17  discussions we had.  We went paragraph by paragraph in

18  connection with these first three documents which were drawn

19  up.  So we have in mind what it is.

20  It seems to me a little bit ridiculous to be talking

21  about the means and methods to accomplish that when we had

22  clearly in our minds what we all expected would come out of

23  this.

24  THE COURT:  Mr. Girard.

25  MR. GIRARD:  Your Honor, I feel somewhat as Mr. Sachse

p-13

1   does as to paragraph X, which stated in the document itself

2   that it would not be construed as a precedent.  I think this

3   is more important to me and to the State than it is to

4   Mr. Sachse.  I would have to insist that that be in the

5   statement before we would sign it, or at least attached to

6   it.

7       But I think the main thing that I would like to emphasize

8   is that the State Water Rights Board is a creature of statute

9   and they have to follow statutory procedures.  In the meeting

10  with Mr. Craig, the results of which are reflected in

11  Draft No. 4, he set it up in such manner procedurally that

12  the relief that the United States wanted, to-wit, the denial

13  of these filings on DeLuz, could be accomplished within

14  their statutory scheme.  For some reason or other, this

15  procedural vehicle suggested by Mr. Craig is now abandoned

16  and we are faced with just a plain statement which, in my

17  view, under California law, cannot procedurally accomplish

18  the desire that the United States wants to accomplish by

19  this procedure.

20      When Mr. Veeder and I discussed this with Mr. Craig, I

21  think his reasons were pretty persuasive, and we both went

22  back and dictated up Draft No. 4, which, incidentally,

23  Mr. Veeder made pretty clear had to be approved by his

24  superiors before it was any indication that that would be

25  filed by the United States.

But we are faced, in a draft of this particular document, somewhat with a kind of shadow boxing situation. The people that we have to convince as to how it is done are not here to present their arguments or to listen to ours. I am wondering if we can possibly meet with Mr. Clark and Admiral Powers, who apparently will have to make the final decision as to the draft, and just sit down and find out what they can and cannot do in entering into the stipulation or statement to the State Water Rights Board. If some of our suggestions are not valid, we could be apprised of their reasons for its. It is rather difficult for me to approve of something when we point out that the California law requires this procedural vehicle and there is really, I don't think any substantive objection to complying with it, and it is deleted. I would like to arrange a meeting, either here or in Washington, with Mr. Clark and Admiral Powers to see if we could draft something that would accomplish both our purposes

3 fls

Take #3
P-1

The main purpose of the United States is to stop these DeLuz filings and to build their dam.  If that is their purpose, I think we can do it through the State Water Rights Board.  But there is going to have to be some recognition by the United States that the State Water Rights Board is a creature of statute and limited by statutory procedures, and they are going to have to at least present the State Water Rights Board with the procedural vehicle that they can accomplish their desired goals. I don't think this statement does it.

In other words, you file a statement in here, as it is drafted, "Statement of the United States Intention to Construct a Dam."  The DeLuz people have filings up there. They ask the State Water Rights Board just to deny the dam on the basis of the statement.  In order for the State Water Rights Board, under California water law, to deny that DeLuz Dam application, there would have to be a finding made that the dam of the Navy was more in the public interest than theirs, and the DeLuz people would have to have a right to present evidence, under due process, et cetera, to contest this.  As it stands now, this is just filed in all proceedings.  There is no assurance and no statement in here that the United States is protesting that specific application. The Water Rights Board is acting, in a sense, to tell the DeLuz people that your request for a permit to use water is

p-2

1   denied because the United States has filed a document which

2   indicates that they may use the water.  I don't think that

3   is fair to the DeLuz people.  I think the United States should

4   file it as a protest specifically in that case and give them

5   an opportunity to oppose it and give the Water Rights Board

6   some basis within their statutory framework to grant the

7   request that the United States seeks.

8        MR. VEEDER: In regard to what Mr. Sachse called his

9   "caveat," which is set forth in Paragraph IX of the Draft No.

10  3 of June 14, 1962, Mr. Clark has written me to advise

11  Mr. Sachse that we are perfectly willing to agree that the

12  execution of this instrument shall not constitute an

13  admission or have any adverse effect on the party's position

14  in the litigation.  Mr. Clark points out that he doesn't feel,

15  however, that such statement is requisite in this form.

16       THE COURT:  Do you have a memorandum from him there?

17       MR. VEEDER:  He says, "We are willing to state this

18  in the record by stipulation or otherwise in the litigation."

19  I am reading now.  I have told Mr. Sachse I would agree with

20  him in regard to this Paragraph IX.

21       MR. STAHLMAN:  Would you make a copy of that document

22  and put it in the record?

23       MR. VEEDER:  I will read the paragraph in.

24       THE COURT:  Are there other matters in the memorandum

25  that we don't want?

p-3

1    MR. VEEDER:  Yes, there are several other matters.

2    MR. STAHLMAN:  Does it pertain to this situation?

3    MR. VEEDER:  No, not this situation.  They are directions

4    to me, Mr. Stahlman.  I don't think they are proper in the

5    record at this time.  I will read it, though:

6        "Assure Mr. Sachse that we are perfectly willing

7        to agree that the execution of this instrument shall not

8        constitute an admission or have any other adverse effect

9        on a party's position in the litigation, but that we

10       do not feel this provision can appropriately be put in

11       a statement to be presented in Sacramento.  We are

12       willing to state this in the record by stipulation or

13       otherwise in the litigation."

14   MR. SACHSE:  That, of course, isn't what my caveat was.

15   I am not worried about my position in this litigation.  I

16   think I have won my case as we stand now, unless his Honor

17   reverses himself.

18       What I am worried about in this caveat IX is that some-

19   thing in this be construed as compelling us to go to

20   DeLuz for our water, and I want a caveat which says, in

21   substance, if we cannot get together with the United States,

22   the United States recognizes that we can go ahead alone.

23   MR. VEEDER:  Mr. Sachse, the United States recognizes

24   nothing.

25       THE COURT:  Mr. Veeder, just a minute.  Mr. Clark's

p-4

1  memorandum is directed to the litigation, and Mr. Sachse

2  is dead right in his position.  The thing Mr. Sachse is

3  concerned about is this:  The suggestion has been made that

4  Fallbrook join in this statement to be filed with the

5  State Water Rights Board.  If you ask Fallbrook, whom this

6  Court has held to have an appropriative right, to join in

7  this matter, I think they are entitled to have a caveat in

8  there that if they join in this document that you are filing,

9  it is without prejudice to their position as to their

10  appropriative right.  That is all they are asking.  It has

11  nothing to do with the litigation.  They are talking about

12  being asked to sign this document.  I think that should be

13  pointed out to Mr. Clark.

14     MR. VEEDER:  It would seem to me that what has been

15  stated here is perfectly proper.  I have told Mr. Sachse

16  that I would join in a stipulation to that effect.  I don't

17  see why it would have to be included in this document at

18  all.  What difference does it make if we agree?

19     THE COURT:  Taking Mr. Clark's memorandum to you at

20  face value, it does not answer his problem.  Maybe his

21  intentions are to go further and answer the problem.  But

22  it does not cover the suggestion Mr. Sachse made.

23     MR. VEEDER:  We would be willing to have the record

24  show now that whatever rights we have Fallbrook is junior

25  to.  Your Honor has ruled that.

p-5

1    THE COURT:  Whatever rights you have, Fallbrook is junior

2    to?

3    MR. VEEDER:  That is right.  Our view on what Mr. Sachse

4    has just stated, and I think it is extremely important, that

5    the United States is ~~as~~ certainly not going to agree that

6    if a physical solution is not worked out, we are ~~not~~ going

7    to agree that we will blandly sit by and let Fallbrook build

8    a dam up there.  I don't think it can be done.  But we do

9    think that the key to this litigation may well be the

10   construction by the National Government of DeLuz Dam on the

11   Enclave, and it would seem to me that if a contract could

12   be worked out with Fallbrook, if and when water is available

13   we will sell them some.  I don't see why they wouldn't agree

14   to that.  I think it would be an excellent way to terminate

15   this litigation,

16   I further think, in regard to the matter of the filing

17   of the statement, it is the initial step of the United States

18   of America to get DeLuz Dam constructed.  I will state into

19   the record now that investigations are underway to make

20   determinations for that DeLuz Dam to be recommended to

21   Congress.  I think it is certainly to Fallbrook's benefit,

22   too.

23   THE COURT:  Let me have over the noon hour this Draft

24   No. 4, if you have an extra copy of it.

25   MR. GIRARD:  Yes, I will give you my copy.  Do you have

p-6

1    an extra copy of it, Bill?

2         THE COURT:  Until I look it over, I don't know what

3    else we can say about it.

4         MR. SACHSE:  Your Draft No. 4 does change IX and X in

5    it, doesn't it?

6         MR. GIRARD:  Yes, it does.

7         MR. VEEDER:  Anything else now, your Honor?

8         THE COURT:  After I have looked this over this afternoon,

9    we may have a further comment or two to make.

10        But we have some drafts of findings, I take it, that you

11   can work on.

12        MR. VEEDER:  Yes.

13        And I would like to work further with Mr. Sachse, and

14   particularly Mr. Girard and Mr. Stahlman, to the end that

15   there can be a refinement of their positions so that I can

16   express it to Washington.  I want to get this done as fast

17   as I can.

18        MR. GIRARD:  I think, frankly, if we could meet with

19   Mr. Clark and Admiral Powers we might find exactly the right

20   thing we can agree to.  I can't conceive that we couldn't

21   sit in a room and draft something satisfactory to everybody.

22   We are all trying to reach the same goal.

23        THE COURT:  The only one bright light I see in this

24   whole thing, at least as the situation is now -- I looked

25   at the original document -- where the Attorney General and

p-7

the Secretary of the Navy have both signed a document.  This
is a big step forward, because this is not an easy thing to
get the Attorney General and the Secretary of the Navy g
together on some matter.  Let's consider that point.  I am
not happy at this turn of events, but this is some kind of
progress.

MR. VEEDER:  I think it is, your Honor.

THE COURT:  Let me look it over during the noon hour.
Come back at two o'clock.  See what you can do on some of
these findings we have been kicking around.

(Another matter)

20,113

p-8

1    SAN DIEGO, CALIFORNIA, MONDAY, JULY 2, 1962, 2:00 P.M.

2    ----

3    THE COURT:  The Fallbrook case we are going to continue

4    until tomorrow morning.

5    I understand you have a draft which you are going

6    to submit tonight and report in the morning whether it is

7    acceptable to the Assistant Attorney General.

8    MR. VEEDER:  That is correct.  We have worked on a

9    stipulation that I hope is acceptable and I'm going to talk

10   to Mr. Clark about it this evening or in the morning.

11   MR. SACHSE:  I have authority to sign this on behalf

12   of Fallbrook, if this draft is acceptable.

13   THE COURT:  I have read it over and it looks acceptable

14   to me, whatever that means.  I just happen to be a judge

15   here.  I don't approve or disapprove, but if it is any help

16   in your dealings with the Attorney General, I think it should

17   be entered into.  And the Attorney General has told me that

18   he definitely wants to get this litigation settled.

19   MR. VEEDER:  And so do I, your Honor.

20   THE COURT:  All right.  Do you want to be excused now

21   and come in tomorrow morning?

22   MR. VEEDER:  Yes.

23   THE COURT:  All right, ten o'clock.

24   I will put 7-2-62 on the top of this.

25   (Whereupon, at 2:15 p.m., an adjournment was taken )
                                                        (                              )
     (until Tuesday, July 3, 1962, 10:00 p.m.)          )

JOHN SWADER. OFFICIAL REPORTER

p-9

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,      )
                                )
        vs.                     )       NO. 1247-SD-C
                                )
FALLBROOK PUBLIC UTILITY        )
DISTRICT, et al.,               )
                                )
                Defendants.     )
_____)

CERTIFICATE OF REPORTER

I, the undersigned do hereby certify that I am, and on the date herein involved, to-wit July 2, 1962, was a duly qualified, appointed and acting official reporter of said Court:

That as such official reporter I did correctly report in shorthand the proceedings had upon the trial of the above entitled case; and that I did thereafter cause my said shorthand notes to be transcribed, and the within and the foregoing __35__ pages of typewritten matter constitute a full, true and correct transcript of my said notes.

WITNESS my hand at San Diego, California, this 2nd day of July, 1962.

_____
Official Reporter