SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                        No. 1247-SD-C

FALLBROOK PUBLIC UTILITY DISTRICT,
et al.,

Defendants

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:        San Diego, California

Date:        Tuesday, July 3, 1962

Pages:    20,115 - 20,145

FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____

JOHN SWADER
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-8211 - 232-3870

VOLUME 200                                                20,115

1          IN THE UNITED STATES DISTRICT COURT

2             SOUTHERN DISTRICT OF CALIFORNIA

3                   SOUTHERN DIVISION

4        HONORABLE JAMES M. CARTER, JUDGE PRESIDING

5

6    UNITED STATES OF AMERICA,        )
                                      )
7                  Plaintiff,         )
                                      )
8           v.                        )      No. 1247-SD-C
                                      )
9    FALLBROOK PUBLIC UTILITY DISTRICT,)
     et al.,                          )
10                                    )
                   Defendants.        )
11   _____)

12            REPORTER'S TRANSCRIPT OF PROCEEDINGS

13                  San Diego, California

14                 Tuesday, July 3, 1962

15   APPEARANCES:

16       For the Plaintiff:          WILLIAM H. VEEBER, ESQ.,
                                     Special Assistant to the
17                                   Attorney General,

18                                   CDR. DONALD W. REDD

19       For the Defendants:

20       Vail Company                GEORGE STAHLMAN, ESQ.,

21       Fallbrook Public Utility
         District, et al:            FRANZ R. SACHSE, ESQ.
22

23       State of California         FRED GIRARD, ESQ.

24

25

1    SAN DIEGO, CALIFORNIA, TUESDAY, JULY 3, 1962, 10:00 A. M.

2                          ---o0o---

3         (Other matters.)

4         THE CLERK:  Five, 1247-SD-C, United States vs.

5    Fallbrook.

6         MR. VEEDER:  Your Honor, I have discussed with Mr.

7    Clark the stipulation that we conferred about last night.

8    He has approved the form as drafted and has suggested that

9    I sign his name to the form and secure the signatures of

10   the other parties to it.

11        Do you have a copy of it, your Honor?

12        THE COURT:  I saw it last night.  I don't have it

13   in front of me.

14        MR. VEEDER:  Paragraph No. 1 was requested by the

15   Fallbrook Public Utility District.  We truly don't think

16   it was necessary to have such a statement in there because of

17   the position we have taken about filing a statement with

18   the State Water Rights Board.  However, Fallbrook desires

19   to have a proviso in there to the effect that:

20             "In the event a contract between the United

21        States of America and the Fallbrook Public Utility

22        District for the participation by the Fallbrook

23        Public Utility District in the use of the waters

24        impounded behind DeLuz Dam is not entered into before

25        the entry of final judgment by the above-entitled

20,117

Court in this cause, nothing contained in said

Statement or in this Stipulation shall be construed

to limit in any manner whatsoever the Fallbrook

Public Utility District from exercising its rights

to store water as may be adjudicated in the above-

entitled case."

We feel that really this matter is separate and

distinct to a marked degree from the litigation.

THE COURT:  But you are agreeable to it?

MR. VEEDER:  But we are agreeable to it.

THE COURT:  All right.

MR. VEEDER:  We feel also, I assume, the same about

Paragraph 2, that if the State desires to have a statement

in there that this is not a precedent, that is acceptable

to us.

In regard to Paragraph No. 3, of course, this does

relate quite appropriately to this case.  Any permits that

are outstanding will, of course, be adjudicated here, and

this is directed to applications now on file or which may

hereafter be filed with the State.

If agreeable to your Honor, I would have the

stipulation as written entered in the record to complete

the whole record.

THE COURT:  The stipulation may be entered into the

record.  But the document is going to be signed up, I take

1    it.

2        MR. VEEDER:  The document will be signed by me and by

3    counsel.

4        THE COURT:  By you in behalf of Mr. Clark?

5        MR. VEEDER:  And I will sign it on behalf of Mr.

6    Clark.  The modus operandi will be that as soon as this matter

7    is signed by other parties, I will return it to Mr. Clark

8    and he will forward the statement to the State Water Rights

9    Board with the proper letter of transmittal.  It will not be

10   filed by me, that is, the statement -- I am referring to the

11   stipulation.

12       THE COURT:  Has the statement been lodged?

13       MR. VEEDER:  I have lodged a copy with your Honor.  I

14   will have additional copies for you, your Honor.

15       THE COURT:  I don't know what you mean by the word

16   "lodged".  The Clerk has a stamp here that says "lodged."  Is

17   that what you want done?

18       MR. VEEDER:  I would like to have the stipulation and

19   the statement lodged with the Court and marked "lodged."  And

20   I would think that you would want it, because it is really the

21   background and the basis.

22       THE COURT:  The stipulation should be filed.

23       The statement, if you want, lodge it.

24       MR. VEEDER:  All right.

25       MR. SACHSE:  Don't forget that the stipulation has

attached to it the statement; so if you file the stipulation you are necessarily filing with it as an exhibit the statement.

THE COURT:  Then the stipulation will be filed when executed?

MR. VEEDER:  That is right.

THE COURT:  And attach to it the statement?  The statement, I take it, you are going to have the Clerk stamp "lodged," and then you are going to withdraw the statement from the Clerk and have it forwarded to the State Water Rights Board; is that right?

MR. VEEDER:  That is what I --

MR. GIRARD:  Is it permissible just to lodge and file a copy of the stipulation and the statement and send the original to the State Water Rights Board?  That is what you intended, didn't you?

MR. VEEDER:  I certainly intend to send the original to the State Water Rights Board.

MR. GIRARD:  It is all right with me to have just a copy of both the statement and the stipulation filed in this case and the original would be, as pointed out by Mr. Veeder, forwarded to Mr. Clark, to the State Water Rights Board, the body that is primarily concerned by matters set forth therein.

MR. VEEDER:  That is satisfactory with me.

THE COURT:  That is satisfactory with me.  On this

1    program, you would say that the statement and the stipulation

2    were forwarded to the Board.

3         MR. GIRARD:  Yes.

4         MR. STAHLMAN:  Your intention is that the copy that

5    is filed will be a signed copy here so that it will be of

6    record as a stipulation in this case.

7         MR. GIRARD:  I am not too concerned whether it is

8    signed or not.  A copy doesn't make that much difference.

9    The original would be filed with the State Water Rights

10   Board.  If you want a signed copy, I have no objection.

11        MR. VEEDER:  In regard to the filing of the stipulation,

12   I had thought the purpose was to send a copy of the

13   transcript to the State Water Rights Board.  Is that agreeable?

14        MR. GIRARD:  I have no objection to that.

15        THE COURT:  A copy of the transcript.  And the other

16   parties, then, will forward the stipulation to the State

17   Water Rights Board if they  want it?

18        MR. VEEDER:  That will be fine.

19        THE COURT:  Is that agreeable?

20        MR. STAHLMAN:  Yes, it is agreeable.

21        MR. GIRARD:  It is agreeable.  I want the signatures

22   on the original stipulation.  As I understood it, Mr. Clark

23   was going to forward it to the State Water Rights Board.

24        MR. VEEDER:  He is going to forward the statement.  He

25   is not going to forward the stipulation.

1      MR. GIRARD:    After you get the Assistant Secretary

2    of the Navy's signature on the original stipulation, whom

3    are you going to return it to so that someone can file it

4    with the State Water Rights Board?

5          MR. VEEDER:   I will certainly be pleased to forward

6    it to you.

7          MR. GIRARD:   All right, forward it to me and I will

8    file it with the State Water Rights Board.

9          MR. STAHLMAN:   In one of the earlier agreements we had,

10   you made some reference to the fact that you would supply

11   the State Water Rights Board certain data in connection with

12   the size of this dam.

13         MR. VEEDER:   Mr. Stahlman, that is in the statement.

14         MR. GIRARD:   Yes.

15         MR. SACHSE:   May I ask one thing, then, because this

16   takes several steps.  Mr. Veeder, would you ask that Mr.

17   Clark or your office send a carbon to all of us of the letter

18   of transmittal, so that we know when these things go in?

19   Otherwise, I am not going to know when it is filed.  Or, when

20   you file the statement with the State Water Rights Board, let

21   me have a covering letter saying you have done it.

22         And, Fred, when you file the stipulation, I would like

23   the same thing.

24         MR. GIRARD:   All right.

25         MR. VEEDER:   I see no reason why it can't be done.

20,122

MR. GIRARD:  Being that the transcript is going to the State Water Rights Board, I want it perfectly clear in the record that the reason the Attorney General is signing this is that it is tied in with the settlement negotiations. I think in the absence of the settlement negotiation and the efforts to terminate this case, we would not be interested in signing any such stipulation as we have.

MR. STAHLMAN:  That is the basis on which we are all signing.

MR. VEEDER:  Again, Mr. Girard, you will find there is a paragraph in the statement to that effect.

MR. GIRARD:  I want to make it clear for the record.

One other point, Mr. Veeder.  You are going to change the first page in the United States' statement.  Inadvertently, my name got up on the left-hand corner of the first page of the United States' statement to the State Water Rights Board.  It is agreeable to me to type the statement identically and leave my name off.

MR. VEEDER:  Do the parties agree to that?

MR. SACHSE:  No objection.  That is in the counsel's block on the upper left.

THE COURT:  Is that on the original statement?

MR. VEEDER:  That is.

THE COURT:  You have authority to take it off.

MR. VEEDER:  I now have authority from the gentleman

1   here.  I don't worry about my own authority to change the

2   page.  I don't want to go to jail.

3       THE COURT:  We have a great authority on agency

4   seated at the counsel table here.  If we have any problems,

5   we will refer them to him for a definitive statement.

6       This settles the matter, then, of the statement and

7   the stipulation.

8       MR. SACHSE:  Yes.

9       MR. VEEDER:  I think it does, and if we may have a

10  moment we will get it signed up and be through with it.

11      THE COURT:  Are you going to do any work on these

12  findings while you are all here?

13      MR. VEEDER:  Mr. Sachse and I are going to do some

14  work on it, I hope, before he leaves.

15      MR. SACHSE:  We have, as I understand, Warm Springs

16  Creek, with the exhibits ready.

17      MR. VEEDER:  That is right.

18      MR. SACHSE:  I trust a hasty review should have it

19  in condition for your Honor to sign.

20      We have Rainbow, which is a very much more difficult

21  problem, and will probably call for a few words and

22  additional evidence.

23      MR. VEEDER:  And a few orders from your Honor.

24      MR. SACHSE:  The transcript as a whole, where I can't

25  make a finding without a little more, I would like to go over

20,124

1    that with Mr. Veeder.   But I would hope that this weekend

2    we would get Warm Springs Creek done, if possible.

3         THE COURT:   Can we adjourn until 2:00 o'clock so I

4    can go back to the "Bank" case?

5         MR. SACHSE:   Yes, your Honor.

6         MR. VEEDER:   All right.

7         THE COURT:   Be back here at 2:00 p.m.

8         MR. VEEDER:   Thank you.

9         THE COURT:   Take a short recess.

10    (Recess.)

11                ---o0o---

12

13

14

15

16

17

18

19

20

21

22

23

24

25

20,125

SAN DIEGO, CALIFORNIA, TUESDAY, JULY 3, 1962, 2:20 P. M.

---oOo---

THE COURT:  The Fallbrook case.

Well, what have you accomplished, gentlemen?

MR. VEEDER:  Well, we have finished the stipulation and the statement.  It is signed and ready to be -- the statement to be marked "lodged" with the Court and the stipulation to be marked "filed."  Then the original will be sent back to Washington for signature on the stipulation by the Secretary of the Navy.

THE COURT:  You want it marked "filed" here before it is sent back?

MR. VEEDER:  I do, your Honor.

THE COURT:  Filed here and then withdrawn?

MR. VEEDER:  If there is agreement.

Isn't that correct?

THE COURT:  All right.

MR. STAHLMAN:  Why don't you file it and leave a copy?

MR. VEEDER:  I am leaving copies, George.  That is exactly what is going to be done.

THE COURT:  All right, the stipulation may be filed. Permission is granted to withdraw the original and send it to Washington.  And supply a copy to the file also, so we will have something on file here.  The statement to be lodged and        permission granted to withdraw it to forward

it.   It is already signed, I take it.

MR. VEEDER:   That is correct, your Honor, and the parties have signed it.

THE COURT:   And forward it to the State Water Rights Board, and the copy of the statement to be filed here.

MR. VEEDER:   Is that agreeable to counsel?

MR. SACHSE:   That is agreeable.

MR. VEEDER:   All right, I will hand the stipulation and a copy of the statement --

MR. GIRARD:   Do you have any objection to entitling the statement "Application to Appropriate Water," Bill?

MR. VEEDER:   I want it completely understood that it doesn't even remotely resemble an application, nor is there any intendment that it be treated as an application.

THE COURT:   Let's not be facetious.   As far as the Court is concerned, it looks like an application.   It looks to me like a protest, and you yesterday said, in substance, it was a protest.

MR. VEEDER:   Oh, no, your Honor.   If I did, I move to withdraw it now and strike it from the record.

THE COURT:   Motion denied.

Are these my copies, Mr. Veeder?

MR. VEEDER:   Yes, your Honor.

I am now withdrawing the filed copy of the stipulation

1    and the lodged copy, your Honor.

2           THE COURT:  All right.

3           What else have you accomplished, if anything?

4           MR. GIRARD:  Warm Springs Creek is ready to be filed.

5           MR. SACHSE:  We have an interlocutory judgment for

6    you, your Honor.

7           MR. VEEDER:  Before we get off of this subject, there

8    are one or two spots in the record I would like to refer to,

9    because, as I comprehend it, you are going to send this

10   record, is that right, Mr. Girard, to the State Water Rights

11   Board?

12          MR. GIRARD:  I will make my copy available to them,

13   yes, whatever the value of it is.

14          MR. VEEDER:  I am extremely anxious -- do you have

15   today's record before your Honor?

16          MR. STAHLMAN:  I have a copy here.

17          THE COURT:  Mr. Bailiff, it is on the Fallbrook

18   shelf.  Will you get yesterday's record?

19          MR. VEEDER:  That is right.  It is Volume 199, dated

20   July 2, 1962.

21          MR. STAHLMAN:  It might be interesting to note that

22   today's volume will be 200.

23          THE COURT:  What page?

24          MR. VEEDER:  If your Honor will turn to Page 20,110,

25   Line 5, after the word "is" on Line 5, I ask that there be

1   deleted "as" and following on Line 6 delete the word "not".

2       THE COURT:  Let me read it.

3       MR. GIRARD:  Which "not" are you talking about on

4   Line 6?

5       MR. VEEDER:  The last one.  It says:  ". . .if a

6   physical solution is not worked out we are not going to

7   agree . . ."

8       I will read the sentence as I want it changed starting

9   on Line 5:  ". . .the United States is not going to agree

10   that if a physical solution is not worked out we are going

11   to agree that we will blandly sit by and let Fallbrook build

12   a dam up there."

13       THE COURT:  All right, take out the second "not" on

14   Line 6 and the word "as" on Line 5.

15       MR. VEEDER:  All right.

16       Go to Page 20,107, Line 17 and change "Mr. Sachse"

17   to "Mr. Veeder".

18       THE COURT:  Yes.  I think that should be "Mr. Veeder."

19       MR. VEEDER:  Turn to Page 20,098, Line 16.  I would

20   ask that a period be put after the word "express" and delete

21   the balance of it.  The statement as it there appears just

22   doesn't make sense.

23       MR. STAHLMAN:  That is what you said.

24       THE COURT:  You want to put a period after the word

25   "express"?

1   MR. VEEDER:  Yes, and delete the rest of it.

2   THE COURT:  All right, I don't mind a little editorial

3   dressing up.  We can strike out also, to make it read a little

4   better, the word "do" -- "I do believe".  Make it read,

5   "I believe."   We want to put you in the best possible light

6   up there before the State Water Rights Board.

7   MR. VEEDER:  Now on Page 20,083, I inadvertently used

8   the word "prayer".  It should have been "recommendation,"

9   on Lines 11 and 12.  There is no "prayer".  It is a

10  "recommendation."

11  THE COURT:  You want to strike out "prayer" and leave

12  in the word "recommendation".

13  MR. VEEDER:  That is correct.

14  THE COURT:  Strike the words "prayer or the" on Line

15  11.

16  MR. VEEDER:  And in lieu of "prayer" put in

17  "recommendation."

18  MR. STAHLMAN:  What you said, though, was "the prayer

19  or the recommendation".

20  THE COURT:  What other change do you want on that

21  page?

22  MR. VEEDER:  On the next line there, your Honor.

23  THE COURT:  Do you want to change "prayer" to

24  "recommendation"?

25  MR. VEEDER:  That is right.

MR. STAHLMAN:  In the next sentence you say, "In my view, there has been no substantive change in the prayer at all."

THE COURT:  That is what he is changing now.  He wants to change the word "prayer" to "recommendation".

MR. STAHLMAN:  You did say "prayer."

MR. VEEDER:  That is correct, and that was a mis-statement on my part.

MR. STAHLMAN:  Referring to the request you are making to the Board.

MR. GIRARD:  He certainly doesn't want to pray to the State Water Rights Board.

MR. VEEDER:  I certainly don't pray to the State.

THE COURT: What else?

MR. VEEDER:  I want it clear that in making this statement to the State Water Rights Board and having the stipulation, it in no way changes the course and conduct of this litigation.  This is understood by all parties, that this is simply an effort to get a dam built, and which may work out as a physical solution.

THE COURT:  It is part of an overall effort to get some kind of settlement.

MR. VEEDER:  That is right.

THE COURT: And it was our understanding that even if a settlement eventually was effected, this case would go to

20,131

1   judgment.

2        MR. VEEDER:  That is correct.

3        THE COURT:  So in that sense it does not necessarily

4   affect the course of the litigation.  It is our hope, however,

5   that if a settlement is worked out and a dam is built, there

6   will be no appeal.

7        MR. VEEDER:  That is correct.  But there is no change

8   in the course of the conduct of the case.

9        MR. GIRARD:  Let's put it like this --

10        MR. STAHLMAN:  There should be a change in attitude,

11   at least.

12        MR. VEEDER:  I hope, George, you will change your

13   attitude.

14        MR. STAHLMAN:  If I do, you will be the first to know.

15        THE COURT:  What else?

16        MR. VEEDER:  Your Honor, I raise the question in

17   regard to the several hundred stipulations entered into by

18   the people early, before this case was even started, in which

19   they agreed to limit their uses to domestic uses.  Mr. Sachse

20   has three clients in somewhat a similar situation.  I have

21   talked this over with Mr. Clark.  He agrees with my

22   recommendation that some steps should be taken to relieve

23   these people of the stipulations, if they desire to be so

24   relieved.  Any direction from your Honor in that regard would

25   be appreciated.

20,132

1      THE COURT:  We are all in agreement that we going to

2 act upon those stipulations.  What ought to be done, I think,

3 will take a little thought.  Whether we should make merely

4 some minute order, or whether we should write them all a

5 letter, or what we should do.  I don't think it is something

6 we ought to act on hurriedly.

7      MR. VEEDER:  I would like to have a recommendation.

8      MR. STAHLMAN:  Won't they be included in the eventual

9 judgment?

10      THE COURT:  Are you gentlemen going to be back here

11 on Thursday?

12      MR. GIRARD:  Not I, if I can avoid it.

13      MR. SACHSE:  I am available.

14      MR. STAHLMAN:  I am available on Thursday morning.

15      THE COURT:  But you cannot be here, Mr. Girard?

16      MR. GIRARD:  No, your Honor.  I am not going to be in

17 trial on Thursday, but I am going to be in trial the following

18 week and I would like to spend a couple of days getting ready

19 for it.

20      THE COURT:  How much time will you want this afternoon?

21      MR. SACHSE:    Your Honor, Mr. Veeder is sort of

22 marking time.

23      MR. VEEDER:  The last thing we have to do this

24 afternoon, your Honor, is to present to you for signature the

25 Warm Springs Creek interlocutory judgment.

1      MR. GIRARD:   It is agreeable to the State.   I have

2  looked at it.

3      MR. VEEDER:   It is being assembled now.

4      THE COURT:   Have those been double checked?

5      MR. GIRARD:   I have checked it.

6      THE COURT:   It takes in the whole watershed?

7      MR. SACHSE:   The whole watershed; not the valley.

8      THE COURT:   It has in it the findings that you first

9  worked out that the underground flow goes into the other

10  watershed?

11      MR. SACHSE:   Yes.   And after the exhibit is prepared

12  by Commander Redd it is in final form.

13      THE COURT:   We have a number assigned to it, do we not?

14      MR. VEEDER:   That is correct;   No. 36.

15      MR. SACHSE:   Yes.   In connection with that -- I don't

16  know what is customary with the Court -- there are two prior

17  sets of proposed findings that were lodged when we were

18  talking about doing this on the basis of Diamond and

19  Domenigoni Valleys; whether these ought to be actually

20  destroyed and withdrawn from the file is up to your Honor

21  and the Clerk.   They are just going to foul things up, because

22  somebody will see "Diamond and Domengoni Valley" and may not

23  realize that it is now embraced in Interlocutory Judgment

24  No. 36.

25      THE COURT:   Any objection to having them withdrawn?

MR. GIRARD:  Not on my part.

THE COURT:  All right, withdraw them on Diamond and Domengoni.

The Clerk tells me, of course, he has a whole folder of proposed interlocutory judgments in these other areas.  Of course, they were never used because we signed up eventually a different set.  Any objection to withdrawing them?

MR. SACHSE:  I would say get rid of them, your Honor.

THE COURT:  The Clerk is instructed to throw into the wastebasket all the prior proposed forms of interlocutory judgments where we have signed the judgment involving the areas.

MR. SACHSE:  This Judgment No. 36 is not here.  Mrs. Tooker is stapling it together and it should be here in a minute.

THE COURT:  All right.

MR. SACHSE:  In the meantime, I redrafted again that Amendment to Interlocutory Judgment No. 30 which your Honor, I believe, dictated.

THE COURT:  Have you all looked at it?

MR. SACHSE:  I mailed the copies to all counsel.

THE COURT:  I think this is the way we worked it out last time.

MR. SACHSE:  In court, yes, your Honor.

MR. VEEDER:  Yes.

THE COURT:  All right, I will sign the amendment to Interlocutory Judgment No. 30.

If you have some prior copies of that, throw them away, Mr. Clerk.  There were at least one or two prior forms of that amendment.

THE CLERK:  Yes, your Honor.

MR. VEEDER:  I can bring down that form when it is prepared, your Honor, for your signature.

MR. GIRARD:  We are certainly agreeable to sign Diamond and Domengoni Valley as soon as it is completed.

THE COURT:  I will execute it as soon as it comes in. When do you want to come back?

MR. SACHSE:  Mr. Veeder and I worked at the Rainbow Judgment , so that, with Colonel Bowen's help, it should be ready for action at the next session.

THE COURT: What is that?

MR. SACHSE:  The Rainbow Judgment.  It will have to be retyped.  We couldn't attempt to present it now.

MR. GIRARD:  I will have a complete draft incorporating my ideas in Mr. Veeder's draft on Wilson and Anza Valley, too, before the next session.

MR. VEEDER:  In that regard, as long as we are kicking this thing around a little bit here, your Honor, I think we are going to have to vacate the original approval of the Masters Findings on Rainbow.  Is that correct?

1    MR. SACHSE:  Yes.

2    THE COURT:  We don't have to vacate them, I don't

3  think, because the order I made was that they were approved

4  except insofar as they would be in conflict with the

5  judgments hereafter entered by this Court.

6    MR. SACHSE:  Can we defer it until your Honor sees it?

7  There are some places where there is direct conflict.  And

8  again, it might clarify the record for future litigants.

9    THE COURT:  All right, let's put that on the agenda

10  for the next meeting, the Rainbow situation.

11    Let's put on the agenda the matter of what to do about

12  these consents involving the domestic use.  And I would like

13  to have somebody give a little thought to what kind of

14  pattern or program we should use to handle that.  Mr. Veeder

15  said these people should be relieved of these consents, if

16  they want to be relieved.  Well, they all automatically have

17  a right, if they are riparian, to domestic use, and all they

18  did was to limit themselves to that and waive other rights.

19  So they have everything automatically.  They have by law

20  everything that they reserve to themselves, and many of them

21  much more.  Whether we will start a hornet's nest by

22  writing them all -- I would like somebody to give thought

23  to it.

24    MR. STAHLMAN:  Wouldn't it be just as well to wait

25  until the judgment is signed and then when they are notified,

1   as I presume all people will be notified, at the termination

2   of the case?

3       THE COURT:  Mr. Sachse, will you give this some thought?

4       MR. SACHSE:  Yes.  I think your Honor's statement is

5   in error.  The great bulk, if not all, of the stipulations

6   don't involve riparians.  They involve, am I not correct,

7   smaller landowners overlying the areas in the Fallbrook area?

8   There is no riparian right in the great bulk of them.

9       MR. GIRARD:  Overlying would be the same situation.

10      MR. SACHSE:  Well, it is vagrant, local water.

11      MR. VEEDER:  Mr. Sachse, you have in the Interlocutory

12  Judgment No. 30 area the Murrieta-Temecula area several of

13  those, and those people, I believe, are being gravely

14  prejudiced if they are not permitted to participate on the

15  same basis as other parties in Interlocutory Judgment No. 30.

16      THE COURT:  Those people have already been included

17  in Interlocutory Judgment No. 30.

18      MR. VEEDER:  That is correct, but they have the

19  stipulation that limits them to domestic uses, and that is

20  the point I am raising.

21      THE COURT:  We have to bear in mind that in that

22  situation, if we do communicate with them, we would tell them

23  that their rights under Interlocutory Judgment 30 are broader

24  than their rights under the stipulation, and we therefore are

25  returning or destroying the stipulation.

MR. VEFDER:  I think that is the fair thing to do.

THE COURT:  Give it some thought, Mr. Sachse, and give me some recommendations in writing as to how we should approach this prbblem.

MR. SACHSE:  Yes, your Honor.

We have 2 through 22, don't we, Bill, in the Fallbrook area, which doesn't include everything, and I think we ought to be thinking about whether we are going to tear them all up and make one single one.  As far as I am aware, the language is identical in each case.  We could add just another catch-all to finish the area.  But it is largely a problem for Mr. Veeder and Commander Redd, whatever is easiest for them.

THE COURT:  Let's continue that, then, on the agenda for the next meeting -- what to do about Interlocutory Judgments 2 through 22.

And then we have also on the list Wilson Creek.

MR. GIRARD:  Wilson Creek will be drafted.

MR. VEEDER:  Aguanga and Anza.

MR. GIRARD:  Anza, Wilson Creek and Coahuilla will all be in one finding.  But not Aguanga.  Aguanga will be separate.

MR. VEEDER:  Aguanga is a separate groundwater area.

MR. GIRARD:  Yes.  I will do Wilson Creek, Anza and Coahuilla.

THE COURT:  Who is working on this groundwater area?

MR. VEEDER:  I have written up the findings and copies have been sent to Mr. Girard and he is reviewing them and he will be in touch with me.

THE COURT:  Where do we stand on the Indians?

MR. VEEDER:  They are in the Anza Valley findings.

THE COURT:  That is the findings we went over at the last session.

MR. GIRARD:  That is right.

MR. VEEDER:  There are references in those findings to the Indians, but I have prepared a separate set of findings for all of the Indians in the area.  So you will have that, too, your Honor.

THE COURT:  When do you want to come back?

MR. SACHSE:  One more question before you do that. On DeLuz Creek we have the Masters Findings and Conclusions of Law, which I think are adequate.  I don't think the problem exists that exists in Rainbow where we will have conflict.  There is no judgment as such.  If your Honor so desires, I will try to write a judgment to go with the findings and conclusions heretofore drawn by the Master and have that ready the next time and submit it.

MR. VEEDER:  You will run those findings back against your Rainbow, because  you are going to see a conflict there.

MR. SACHSE:  If necessary, we will have to do the

whole thing.

THE COURT:  You take on that responsibility.

MR. SACHSE:  Yes.

THE COURT:  Check with Colonel Bowen to see that you have everything you need.

MR. SACHSE:  Yes, your Honor.

THE COURT:  Mr. Veeder, when do you want to come back?

MR. VEEDER:  I want to come back shortly after Christmas, but I think that is probably too late.  I am hard pressed through July and in the first part of August.

THE COURT:  Are you hardpressed the week of August 7th?

MR. VEEDER:  I will probably be as free on August 7th as I ever will be.

MR. GIRARD:  Is August 7th a Monday, your Honor?

THE COURT:  August 6th is a Monday.

MR. GIRARD:  I have a pre-trial on that date, but somebody else can handle that.  That's all right.

MR. VEEDER:  Then we are down for 10:00 o'clock on August 7th?

THE COURT:  I suggest that date, although it is the date of the American Bar.  I have to be in San Francisco the week preceding, and I have to be back in San Francisco the 13th.  Then I am going to be away the week of the 20th.

So that the week of the 7th would be the only week I would have in there.

    MR. GIRARD:  It is all right with me.

    THE COURT:  August 7th?

    MR. SACHSE:  Can we tentatively plan four days?

    THE COURT:  We hope to be through with the "Bank" case by that time and we will figure on doing as much as we can.

    Continued to August 7th at 10:00 o'clock.

    MR. VEEDER:  Thank you, your Honor.  I will bring these back for signature.

    THE COURT: All right.

    (Whereupon, an adjournment was taken until Tuesday, )
    (                                                    )
    (August 7th, 1962, at 10:00 o'clock a.m.             )

---o0o---

(The following is the Stipulation herein referred   )
(                                                   )
(to which is made a part of the record in this case.)


IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
     vs.                       )          STIPULATION
                               )
FALLBROOK PUBLIC UTILITY       )
DISTRICT, et al.,              )
                               )
          Defendants.          )

WHEREAS, on July 3, 1962, the United States of
America lodged with the above entitled Court, a copy of the
document designated "Statement of the United States of
America Respecting Intention To Construct a Dam  Within
the Naval Enclave on the Santa Margarita River," a copy of
which is attached to this Stipulation.

WHEREAS, the United States of America has requested
the Attorney General of the State of California, Vail
Company and Fallbrook Public Utility District to join in the
recommendations contained in said Statement,

WHEREFORE, in lcarification and amplification of said
Statement, the following stipulation is entered into:

1.   In the event a contract between the United States

of America and the Fallbrook Public Utility District for the participation by the Fallbrook Public Utility District in the use of the waters impounded behind DeLuz Dam is not entered into before the entry of final judgment by the above-entitled Court in this cause, nothing contained in said Statement or in this Stipulation shall be construed to limit in any manner whatsoever the Fallbrook Public Utility District from exercising its rights to store water as may be adjudicated in the above-entitled case.

2.   The said Statement and Stipulation are signed by the United States of America and approved by the signatory parties for the purpose of amicably settling the above mentioned case and do not constitute a precedent in regard to any other matters.

3.   The recommendations contained in the said Statement are expressly understood to apply only to pending applications to appropriate water and such applications as may be subsequently filed, and does not apply to permits to use waters of the Santa Margarita River as may be adjudicated in the above mentioned case.

July 3rd, 1962                   UNITED STATES OF AMERICA

_____
                                 Secretary of the Navy

s/  Ramsey Clark
_____
                                 Assistant Attorney General
                                 By William H. Veeder

20,144

1

                                    s/ _F. G. Girard_
2                                      STANLEY MOSK, Attorney General
                                       of the State of California
3                                    F. G. GIRARD
                                       Deputy Attorney General
4

5                                    s/ _George Stahlman_
                                       GEORGE STAHLMAN
6                                      Attorney for Vail Company

7

8                                    s/ __Franz R. Sachse_
                                       FRANZ R. SACHSE,
9                                      Attorney for Fallbrook Public
                                       Utility District

10

11               (END OF COPIED MATERIAL)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,            )
                                     )
                Plaintiff,           )
                                     )
        vs.                          )        No. 1247-SD-C
                                     )
FALLBROOK PUBLIC UTILITY DISTRICT,   )
et al.,                              )
                                     )
                Defendants.          )
                                     )

CERTIFICATE OF REPORTER

        I, the undersigned do hereby certify that I am, and
on the date herein involved, to-wit July 3, 1962, was a
duly qualified, appointed and acting official reporter of
said Court:

        That as such official reporter I did correctly report
in shorthand the proceedings had upon the trial of the above
entitled case; and that I did thereafter cause my said
shorthand notes to be transcribed, and the within and the
foregoing   31   pages of typewritten matter constitute a
full, true and correct transcript of my said notes.

        WITNESS my hand at San Diego, California, this 3rd
day of July, 1962.

                                _____
                                        Official Reporter