# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

UNITED STATES OF AMERICA,

Plaintiff,

vs.                                     No. 1247-SD-C

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

Defendants.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:      San Diego, California

Date:       **Tuesday, August 7, 1962.**

Pages:      20,146 - 20,167, Inclusive

# FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____
                          DEPUTY

JOHN SWADER
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

VOLUME  201                                              20,146

1            IN THE UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF CALIFORNIA

3                    SOUTHERN DIVISION
                         - - -

4        HONORABLE JAMES M. CARTER, JUDGE PRESIDING
                         - - -

6   UNITED STATES OF AMERICA,          )
                                       )
7                 Plaintiff,           )
                                       )
8            v.                        )     No. 1247-SD-C
                                       )
9   FALLBROOK PUBLIC  UTILITY DISTRICT, )
    et al.,                            )
10                                     )
                                       )
11                Defendants.          )
    _____)

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                 San Diego, California

15              Tuesday, August 7, 1962

16   APPEARANCES:

17      For the Plaintiff:          WILLIAM H. VEEDER, ESQ.,
                                    Special Assistant to the
18                                  Attorney General

19                                  CDR. DONALD W. REDD

20      For the Defendants:

21      Vail Company                GEORGE STAHLMAN, ESQ.,

22      Fallbrook Public Utility
        District, et al:            FRANZ R. SACHSE, ESQ.

23      State of California         FRED GIRARD, ESQ.

24

25

20,147

SAN DIEGO, CALIFORNIA, TUESDAY, AUGUST 7, 1962, 10:00 A. M.

---oOo---

(Other cases called.)

THE CLERK:  Six, 1247-SD-C, United States of America vs. Fallbrook, et cetera, et al.

THE COURT:  There has been an agenda proposed, which of course can be modified.  Without being particularly concerned about the contents of it, I will sign the agenda to give us something to start on.  You all have copies of it?

MR. SACHSE:  Yes, your Honor.

THE COURT:  Mr. Clerk, here is the original copy.

Here are additional copies, if anybody wants them.

MR. VEEDER:  Are we ready to proceed?

THE COURT:  Yes, sir.  Mr. Stahlman is around here somewhere.

MR. GIRARD:  He is taking a phone call, your Honor.

MR. VEEDER:  Do you want to wait, your Honor?

THE COURT:  We will wait.

We signed up the Domenigoni Valley findings, didn't we?

MR. VEEDER:  I understood those were signed, your Honor.

THE CLERK:  I don't show those having been signed, your Honor.

THE COURT:  We signed Domenigoni-Warm Springs, No. 36; it was entered on July 3rd.

MR. VEEDER:  Warm Springs is the proper designation.

I have prepared, your Honor, a set of findings reflective of what appeared from the record to have been the changes in the original findings that I prepared for the Indians.  I haven't had a chance to talk to Mr. Girard about the findings, and I think it would probably be more profitable for us to go to my office sometime and run through them.

THE COURT:  Yes.

MR. VEEDER:  At least, we now have tentative findings and conclusions.  I think it would be profitable if we sat down and went through them perhaps out of court.

THE COURT:  Have you prepared the conclusions on them, too?

MR. VEEDER:  Yes, your Honor, I gave you a set of those this morning.  They are, of course, tentative.

MR. SACHSE:  You have a judgment also, don't you?

MR. VEEDER:  That is right -- conclusions of law and interlocutory judgment.

(Mr. Stahlman is now present in the courtroom.)

MR. VEEDER:  Your Honor, are we ready to proceed now?

THE COURT:  Yes.

MR. VEEDER:  Mr. Clark has requested that I make a brief statement into the record regarding the motion of the United States which was filed on May 14, 1962 as to the kind

1   and type of decree that the United States is desirous of

2   having.

3        Your Honor now has a copy of the letter from the

4   State Water Rights Board directed to Mr. Clark in regard to

5   the statement which we have presented to that Board, and I

6   would ask your Honor to authorize a copy of the letter to

7   be put into the record.

8        We feel that the first and initial step in effectuating

9   the proposal of the United States as to the kind and type of

10   decree it desires has now been accomplished.  We have made

11   our statement to the State Water Rights Board.  The State

12   Water Rights Board has acknowledge receipt of it.  It has

13   indicated a desire certainly to go along with us on most

14   of the major propositions.  I think the letter is reflective

15   of a desire to cooperate with the United States.

16        THE COURT:  The letter will be made a part of the

17   record and the reporter will copy it in.

18        MR. VEEDER:  I will give him a copy.

19        MR. STAHLMAN:  I have mine here that he can use.

20        (The letter above referred to is here set forth   )
                                                            )
21        (in full as follows:                              )

22

23

24

25

1      "STATE WATER RIGHTS BOARD

2          "1401 21st Street
           "P.O. Box 1592
3      "Sacramento 7, California

4    "August 1, 1962

5    "Mr. Ramsey Clark

6    Assistant Attorney General

7    "Department of Justice

8    "Lands Division

9    "Washington, D. C.

10   "SUBJECT:  Santa Margarita River Water Rights

11   "Dear Mr. Clark:

12   "Your letter of July 13, 1962, and the Statement of the

13   United States of America regarding intention to

14   construct a dam within the Naval Enclave on the Santa

15   Margarita River, receipt of which were previously

16   acknowledged, have been given careful consideration by

17   the State Water Rights Board.   The Statement includes

18   a request that the Board advise the United States of

19   its willingness to defer, until January 1, 1964, or until

20   Congress rejects the plans for the De Luz Dam, whichever

21   occurs first, issuance of permits to appropriate

22   waters of the Santa Margarita River stream system

23   which would affect the availability of water at

24   De Luz Dam.

25   "The Board reviewed with interest the information

1    contained in the Statement of the United States

2    concerning plans to conserve the flood flows of the

3    Santa Margarita River which now waste into the ocean by

4    construction of a large storage reservoir at the DeLuz

5    site, and that Congress will be requested to authorize

6    and provide funds for such a dam, and that the conserved

7    water will be made available for beneficial use both

8    by the United States and other water users.

9    "The Board is charged by law with responsibility for

10    allowing only those appropriations of water which will

11    best conserve the State's water resources to the

12    fullest possible extent in the public interest.  The

13    information that has been submitted is persuasive that

14    deferment of issuance of permits to others as requested

15    would be desirable and in the public interest.  However,

16    it also appears that a determination whether issuance

17    of a permit for another project should be deferred would

18    depend upon a consideration of the relative benefits that

19    such a project would produce and the effect upon it of

20    a deferment.  Those interested should also be heard

21    with respect to any substantial delay.  Therefore, a

22    blanket commitment to defer issuance of other permits

23    would not be appropriate at this time.

24    "You are advised that the Board will defer action as

25    requested by the United States unless it is made to

appear in a specific situation that the net effect of
such action would be adverse to the public interest.
Should consideration be given to issuance of a permit
in the category referred to in the statement of the
United States, you will be given notice and an
opportunity to present further information if you should
desire to do so.

"The recommendation of the United States that the Board
refrain from issuing permits which would conflict with
water rights adjudicated in United States of America
v. Fallbrook Public Utility District et al. can be
accepted without question.  As a matter of law, none
of the permits issued by the Board can conflict with
or otherwise affect vested rights.  The Board's policy
of issuing permits only to the extent it is established
that unappropriated water is available to the
applicant and that the applicant is in a position to
divert such water without interfering with prior rights
will, of course, be applied to the Santa Margarita
River.

"The recommendation of the United States that if
Congress authorizes and appropriates money for
construction of De Luz Dam prior to January 1, 1964,
all applications by others to appropriate water of the
Santa Margarita River system be denied or subordinated

to use of water at De Luz Dam, will be given considera-
tion at such time as other applications are before the
Board for decision.   Any action the Board might take
would of necessity be within the framework and scope of
State law which established the Board and clothed it
with its powers and responsibilities.   Appropriation
by the United States in accordance with State law of
water  to be stored at De Luz Dam would greatly
facilitate the extension to the United States of the
procedures made available by State law through the
medium of the State Water Rights Board for protection
of vested rights, including relief from interference
by others with the source of supply before it reaches
the Naval Enclave.   In the absence of such an
appropriation by the United States, the extent to which
the Board could lawfully subordinate valid appropria-
tions by others is vertainly not free from  doubt.

"Very truly yours,

"(s) Kent Silverthorne

"(t) Kent Silverthorne
"Chairman

"cc:  Hon. Stanley Mosk
      Attorney General.
      Room 538, Library and Courts Bldg.
      Sacramento, California
      Attn. Mr. Frederick G. Girard
            Deputy Attorney General

"Mr. George Stahlman
Attorney at Law
Rt. 1, Box 235
Fallbrook, California

"Mr. Franz R. Sachse
Attorney at Law
1092 S. Main Street,
Fallbrook, California

"Hon. James Carter
Judge of the U. S. District Court
312 N. Spring Street,
Los Angeles, California

"Hon. William Warne, Administrator
Resources Agency of California
1120 N Street
Sacramento, California (2 encs.) "


(END OF COPIED MATERIAL)

1       MR. VEEDER:  We believe, your Honor, that the proposal

2   to build De Luz Dam and the progress that is being made

3   toward preparing a report on it, the request for legislation,

4   certain lays the groundwork for the entry of what we would

5   desire from the standpoint of an effective decree.

6       You will note that we have suggested that the next

7   hearing, whenever that is, be directed to that particular

8   motion and to obtain agreement, to the extent possible, of

9   the parties as to the kind and type of relief we truly think

10  is necessary if an effective decree is to be entered.

11      MR. GIRARD:  One question, Mr. Veeder, and maybe you

12  don't know -- maybe this should be addressed to Mr. Sachse

13  and Colonel Bowen.  But how far along are the negotiations

14  with Fallbrook and the Navy insofar as specific price of

15  water to Fallbrook is concerned?

16      MR. SACHSE:  They aren't -- nothing.

17      MR. GIRARD:  The reason I am pointing that out is that

18  I would think that should be resolved before you go in with

19  your bill in Congress.

20      MR. VEEDER:  That may be possibly true, Mr. Girard.  I

21  haven't given the matter any thought, so I couldn't comment

22  on it.  I do think we are now in a position where the motion

23  of the United States could and should be considered to the

24  fullest extent possible.  I would like written observations

25  from the parties, if possible.  In other words, I think we are

1    down now where the various items that are included in that

2    motion should be specifically reviewed and specifically

3    passed upon in the courtroom.

4         MR. SACHSE:   I would certainly have no objection.   But

5    I don't like the idea of written observations, Mr. Veeder.

6    It just takes a long time.   As a matter of fact, you say at

7    the next hearing.   I understand Mr. Stahlman hasn't got his

8    copy.  But as far as I am concerned, I would be glad to take

9    it up at any time this week.   I have a full set of notes that

10   I made on it on May 14th.   I am ready to go.   But if you want

11   to postpone it until later, all right.

12        MR. VEEDER:   It was your convenience, Mr. Sachse.

13        MR. SACHSE:   I didn't bring it with me.   But I could

14   have it tomorrow.

15        MR. VEEDER:   As I pointed out in Item No. 1 on the

16   agenda, we were to direct our attention at the next hearing

17   towards that.

18        MR. STAHLMAN:   I think in that motion there are a lot

19   of things that should be completely explored and understood.

20        MR. VEEDER:   I would be delighted, if we have time

21   this week, to give it some consideration.   Really, it was

22   for the convenience of all parties, because this was a

23   matter that hadn't been presented before.

24        MR. STAHLMAN:   Let me see if I am correct in what

25   happened heretofore.   You presented your motion.   I believe

1  the Court made comment on the fact that it would be

2  considered at a later date, that the matter pertaining to the

3  DeLuz Dam should be considered first; isn't that correct?

4  I don't think we are far enough on the De Luz Dam to make

5  any determination with relation to that.   Is it possible to

6  bring us up to date with respect to what has been done in

7  connection with De Luz Dam -- as to whether or not there is

8  a bill in preparation, as to whether or not any Congressional

9  Committees have been contacted with relation to the bill,

10  what engineering has been done in relation to it, what the

11  progress is?   I think that is something we should be familiar

12  with.

13          MR. VEEDER:   I am glad you thought of that, Mr.

14  Stahlman.   Investigations are proceeding in regard to the

15  runoff in the Santa Margarita River watershed and matters

16  essential to the preparation of a bill.   There has been, to

17  my knowledge, no bill finally drafted, nor has any bill been

18  offered certainly to any Committee of Congress at this time.

19  However, these are matters that we have said before we hope

20  to present at the next session of Congress.   It will not be

21  at this session of Congress, I am quite certain.

22          MR. SACHSE:   May I right at this point then make the

23  suggestion.   It seems to me that if this is all going to be

24  the basis of a friendly cooperation as represented by your

25  letter to the State Water Rights Board and by our stipulation

20,158

1   and agreement to your statement, I think it would be very

2   wise if you could suggest to Mr. Clark that before a bill

3   is drafted that it be checked with California, Fallbrook and

4   Vail.   If we are going to try to make a stipulated

5   settlement of something here, it seems to me it would be a

6   little unfortunate if you put in a bill which, for some

7   reason, I, representing Fallbrook, or Mr. Girard representing

8   California, might have to then go to Congress and oppose.

9   I would like to know what the thing says and what the

10  proposal is for the division of water and what the proposal

11  is as to the cost of water and what the proposal is as to

12  water rights in the bill itself are, instead of just having

13  an accomplished fact presented to a committee.   Do you think

14  I am out of line in asking for it?

15       MR. VEEDER:   Your recommendation will certainly be

16  brought to Mr. Clark's attention.   It is beyond the pale of

17  my authority to make any agreement along that line.   But I

18  will certainly tell him what you stated and I will recommend

19  that that course be followed.

20       THE COURT:   I would certainly recommend it.   I don't

21  think you can proceed on the basis of preparing some bill

22  without some consultation with the various parties who are

23  interested.   You might   get the bill in and have some

24  situation come up where you would have serious objection.

25  Ultimately Congress will have to decide what the bill will

be.  But we can certainly know something about it beforehand.

MR. VEEDER:  Your Honor has expressed his view.  As I say, I will bring it to the attention of Mr. Clark, and that is all I can do.  But I do think that one of the most pressing things is now out of the way.  I think there is a real opportunity here to proceed with De Luz Dam.  We believe the State Water Rights Board has been most cooperative in this letter.  I think it is indicative that there is/real basis for proceeding now.

I just handed Mr. Stahlman a copy of the motion.  If tomorrow or the next day you desire to discuss it, I would certainly be pleased to do so.

MR. SACHSE:  I would like to as soon as possible, because I think we have got to face up to two basic problems that are going to exist:  (1) The cost to Fallbrook and (2) perhaps the even more fundamental one, and it is pretty clearly stated in the last sentence of Mr. Silverthorne's letter:

". . .In the absence of such an appropriation by the United States, the extent to which the Board could lawfully subordinate valid appropriations by others is certainly not free from doubt."

I think that is an understatement -- that it is not free from doubt.

MR. VEEDER:  Let's not look at the black side.  I suggest

20,160

1    that we look at the affirmative side.

2         MR. SACHSE:  The only reason I am pointing this out

3    now is that that is why I am very strongly in favor, as

4    quickly as possible, if we can, of resolving with his Honor

5    the suggestions contained in your motion as to form of final

6    decree, because frankly, I think a lot of those things can't

7    be done that you have requested and I think we should find

8    out from the Court just as soon as possible and I would like

9    to see it this week.  I am still addressing myself to this

10   first point that you raise, Mr. Veeder.  I would like to

11   hammer that out quickly.

12        MR. VEEDER:  You understand, Mr. Sachse, I am at your

13   disposal all week and I will be glad to do whatever you

14   desire.

15        MR. SACHSE:  So am I, and I am ready to go on it.

16        MR. VEEDER:  In formulating the agenda, I did it

17   strictly on the basis of the last transcript, and certainly

18   I have no -- you may tear the agenda up and throw it away,

19   I don't care.  I am ready and anxious to discuss the motion

20   now, if you want to take the time.

21        MR. SACHSE:  I think I should state to the Court that

22   I agreed to have ready today Rainbow, your Honor.  Actually,

23   there is a page that will have to be done over.  I have my

24   girl doing it now.  I will have the full draft of the

25   corrected Rainbow findings as we work them out with Mr.

1   Veeder tomorrow.

2   MR. VEEDER:   We do have the suggested form for the

3   Indians -- the findings, conclusions of law and interlocutory

4   judgment.   I would just as soon sit down and go through

5   something that is prepared, and those are prepared, and we

6   can move along.

7   THE COURT:   Have counsel looked over the Indian matter?

8   MR. GIRARD:   I just got them this morning, your Honor.

9   I looked them over hastily.

10   THE COURT:   I would say they are not ready for the

11   Court to take them up.

12   MR. VEEDER:   That is what I say.

13   THE COURT:   What is the other one you say you have

14   ready for the Court?

15   MR. VEEDER:   To my knowledge, there is nothing

16   prepared.   Mr. Girard had some items that he was going to

17   prepare.

18   MR. GIRARD:   I was charged with preparing Wilson Creek,

19   and frankly I have been in trial two straight weeks on

20   Oroville Dam and haven't done it.   I promise to have it next

21   time.   I just couldn't get to anything.

22   THE COURT:   I suggest that you spend the rest of the

23   time this morning going over this Indian situation and try

24   to get that in shape.

25   MR. GIRARD:   All right.

THE COURT:  At 2:00 o'clock I have to go out and view a motion picture, "The Immoral Mr. Tease."

MR. VEEDER:  We can work in my office.

THE COURT:  You may work in here, if you want to.

And then tomorrow I would suggest that we take up this Indian matter and get it out of the way, and then go into the matter of this so-called motion of the United States.

MR. SACHSE:  I will have Rainbow in their hands tomorrow.  We may be able to take care of it by the end of the week, I am sure.

THE COURT:  As I recall the prior discussion of that motion of the United States, I made some suggestions.

MR. GIRARD:  Yes.

THE COURT:  It seemed to me like you had the cart before the horse.  In other words, you were talking about apportionment of water, percentages and all, and obviously that can't be done until you get profitable irrigable acreage, and that is a matter that has to be done.  As I recall, my suggestion was that the first step to be included in a final judgment would be to put the Master to work on that score to get materials ready to pass on those questions. We can take that up tomorrow or the next day.

We are going to convene here at 2:00 o'clock to see what we do about "The Immoral Mr. Tease."  So if you will be back here at 2:00 we will find out whether I will be

1    back later this afternoon.

2         Does that suit you, to take some time now on the

3    Indian matter?

4         MR. VEEDER:  Very satisfactory.

5         THE COURT:  Tommorow on the Indians and Rainbow.

6         MR. VEEDER:  Yes.

7         THE COURT:  And get into this outline of a final

8    judgment.

9         MR. VEEDER:  That is correct.

10        MR. STAHLMAN:  There is one matter that Mr. Sachse

11   and I talked about yesterday, and that was the relationship

12   of some of these findings that were made by the Master as

13   being a little bit different from some of the findings made

14   by the Court here.

15        MR. VEEDER:  That is on the agenda, too.

16        MR. STAHLMAN:  In fact, he asked me what my opinion

17   was as to whether there should not be some revamping of the

18   findings so that they be uniform.  I think there should be.

19   I think they should be consistent.  If there is any

20   difference between even the language in one tributary as

21   compared to another, I think it might cause some conflict

22   in the future.  I think those things should be reconciled.

23        MR. SACHSE:  Thank you, George.

24        That is the same thing I discussed with you, Mr.

25   Veeder.  I told the Court I would try to draft the judgment

portion for De Luz Creek using the Special Master's Finding of Fact and Conclusions of Law.  I did not do it because his findings of fact and conclusions of law, while they reach the same ultimate end that we have reached here, are phrased very differently than what we have used in other cases, and the question in my mind was whether it is wise to write a judgment when the findings of fact and conclusions of law are not going to be uniform, or wouldn't it be better to sort of rewrite the whole thing?  There will be no difference in the result, but there will be some serious differences in language, particularly on De Luz Creek.  I wanted the Court's and Mr. Veeder's views on it.

MR. VEEDER:  Certainly it should be uniform.  I have tried to correlate them and they just wouldn't correlate.

MR. SACHSE:  We are rewriting Rainbow.  I think we will probably have to do it for De Luz also, if we want it uniform.

For instance, the Special Master find vagrant local percolating water, and then he says, "it is unnecessary to make any further findings with reference to the nature and character of any of said parcels."  We have now quieted title to vagrant local percolating.  That is one fundamental distinction.

Then when it comes to intermittent streams his findings will say "intermittent stream which flows only during and

immediately after periods of heavy precipitation," the way we do.  Then he goes on that "there is no evidence that any specific amount of water could be withdrawn from (any intermittent stream) and put to beneficial use . . .; it is unnecessary to make any further findings at this time with reference to the nature and character of any of said parcels . . ."  Again, the ultimate result is going to be the same, but the language is very different from what we have found.

Then in some cases he even goes so far as to say that a parcel of land is only riparian to the Santa Margarita River during periods of precipitation.  That is contrary to what we have done elsewhere.  We have always said they are riparian as to surface flow, but that surface flow is part of the stream system.  But I question whether we can say that land is riparian one minute and not riparian the next.

There are a lot of that type of inconsistency which would mean that the DeLuz findings just won't jibe with, for instance, Warm Springs or with any of the others.

MR. VEEDER:  That is an understatement.

THE COURT:  Generally the facts he finds aren't in dispute with what we find.

MR. SACHSE:  No, the facts and the ultimate result are going to be exactly the same thing.

THE COURT:  We made an order heretofore approving the

findings except insofar as we vary them by other findings and conclusions that we prepare.  Wasn't that the order?

MR. SACHSE:  Yes.

THE COURT:  So it looks to me like probably you will have to rewrite them.

MR. SACHSE:  Yes.  It shouldn't be too big a job. Everything is here.  It is just a matter of taking the time to get them typed.

THE COURT:  We will adjourn, then, until 2:00 o'clock, and you may get busy on that Indian matter and discuss the problems.

> (Whereupon, an adjournment was taken until 2:00 )
> (                                               )
> (o'clock p.m. of this same date.                )

> (Whereupon, at 2:00 o'clock p.m. an adjournment )
> (                                               )
> (was taken until 10:00 o'clock a.m., Wednesday, )
> (                                               )
> (August 8, 1962.                                )

---oOo---

20,167

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA, )
)
          Plaintiff, )
)
     v. )      No. 1247-SD-C
)
FALLBROOK PUBLIC UTILITY DISTRICT, )
et al., )
)
          Defendants. )
)

CERTIFICATE OF REPORTER

I, the undersigned do hereby certify that I am, and on the date herein involved, to-wit, August 7, 1962, was a duly qualified, appointed and acting official reporter of said Court:

That as such official reporter I did correctly report in shorthand the proceedings had upon the trial of the above entitled case; and that I did thereafter cause my said shorthand notes to be transcribed, and the within and the foregoing ___23___ pages of typewritten matter constitute a full, true and correct transcript of my said notes.

WITNESS my hand at San Diego, California, this 7th day of August, 1962.

_____
Official Reporter