# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

— — —

UNITED STATES OF AMERICA,

                              Plaintiff,

vs.                                                    No. 1247-SD-C Civil

FALLBROOK PUBLIC UTIILITY DISTRICT,
et al,

                              Defendants.

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:      San Diego, California

Date:       November 7, 1962.

Pages:    20,698 to 20,722

# FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By_____
                            DEPUTY

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 · Ext. 370

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

UNITED STATES OF AMERICA,       )
                                )
                    Plaintiff,  )
                                )
vs.                             )     No. 1247-SD-C
                                )
FALLBROOK PUBLIC UTILITY        )
DISTRICT, et al,                )
                                )
                    Defendants. )
_____)


REPORTER'S TRANSCRIPT

Wednesday, November 7, 1962.

APPEARANCES:

| | |
|---|---|
| For Plaintiff: | WILLIAM H. VEEDER, ESQ. Special Assistant to the Attorney-General COMMANDER DONALD REDD |
| For Defendant Vail: | GEORGE STAHLMAN, ESQ. |
| For Defendant Fallbrook: | FRANZ R. SACHSE, ESQ. |
| For Defendant State of California: | FRED GIRARD, ESQ. Deputy Attorney-General of the State of California |

20,699

1    SAN DIEGO, CALIFORNIA, WEDNESDAY, NOVEMBER 7, 1962, 9:30 A.M.

2                          - - -

3         (Other matters.)

4                          - - -

5         THE COURT:  The "Fallbrook" case.

6         Can we lay out some kind of program of work that you can

7    do while I am trying this jury case from time to time?

8         MR. SACHSE:  May I ask, your Honor, what the prognosis

9    in this case is timewise?

10        THE COURT:  Forever.  I thought, the way we started out,

11   that I would be pretty near out of the woods by now.  But it

12   seems that both Counsel --

13        MR. SACHSE:  You expect to be busy at least the rest of

14   the week.

15        THE COURT:  Yes.  Believe it or not, you know what the

16   spread is in this case?  Defendants' figures are $2,100,000.

17   and the Government's figures are $280,000.

18        MR. VEEDER:  How much time will your Honor have this

19   morning with us?

20        THE COURT:  I thought first we would see what we have

21   and what we haven't and maybe put you to work on some

22   matters and arrange some other time later this afternoon.

23        MR. SACHSE:  It is my impression -- and Mr. Veeder has

24   to accept it -- but it is my impression that we should be

25   able ourselves to come to you with approval of interlocutory

1   judgments for De Luz, for vagrant-local water below the

2   Gorge -- that is No. 39A.

3        As far as I am concerned, I think Mr. Girard's Anza-

4   Cahuilla and the Indian Reservations are ready for execution.

5        And the Amendment to Interlocutory Judgment No. 37.

6        Then there are a couple that definitely are not ready

7   on which there is going to have to be further work:  No. 39,

8   which I wrote and hasn't been distributed yet, and the

9   Aguanga Ground Water Area are not nearly ready, and then the

10  order for Colonel Bowen's investigation of the wells.

11       I think, speaking for myself -- and I will put it up

12  to you, Bill -- I think we could probably put ourselves

13  in shape so that Mr. Veeder would be willing to say that

14  form-wise these four I mentioned are ready, and make his

15  objections to them for the record, and then maybe we can

16  iron out some of the problems on this order for inspection

17  of wells and on No. 39A and --

18       THE COURT:  This is what I had in mind.  Mr. Veeder

19  was in my office early this morning and told me he was not

20  ready to proceed with the proof --

21       MR. VEEDER:  Perennial yield.

22       THE COURT:  Yes -- from Mr. Kunkel.

23       MR. GIRARD:  We don't need that for any of the

24  findings.

25       MR. SACHSE:  We don't need that for any of the

findings at this stage of the game.

1    We could postpone that.

2          MR. VEEDER:  I agree with Mr. Sachse.  I have gone

3    through the Cahuilla, the Anza findings, the Indian findings.

4    I think if we were to sit down, Mr. Girard, you and I

5    could work out two or three problems that are presented

6    there.  I think we would be all right there.

7          In regard to De Luz, I have run through it rapidly.

8          MR. GIRARD:  How about No. 37?

9          MR. VEEDER:  I have 37 here.  The Amendment to 37?

10         MR. GIRARD:  Yes.

11         MR. VEEDER:  I think that is ready to go.  Do you have

12   it before you?

13         MR. GIRARD:  I know what is in it.  I have it right

14   here.

15         THE COURT:  Do you have a place to work?

16         MR. VEEDER:  They can come up to my office.

17         THE COURT:  Do you have room there?  The third-floor

18   courtroom is available.

19         MR. SACHSE:  That would be better.

20         MR. VEEDER:  That is better.  It is more room.

21         MR. STAHLMAN:  I have the first draft of No. 35A ready.

22         THE COURT:  As a matter of fact, rather than have

23   you move your material down here if you work up in the

24   third-floor courtroom, late this afternoon I will come up

25   there and see where you are and give you some time.

1    MR. SACHSE:  We might be able to present to you right

2  then three or four judgments for approval.

3    THE COURT:  Why don't you proceed to work?  I will

4  appoint Mr. Girard as sort of chairman of this group to

5  wield the big club and keep order -- that on the ground

6  that you are supposed to be fairly impartial in this

7  litigation, Mr. Girard.

8    MR. STAHLMAN:  Colonel Bowen is Master at Arms.

9    THE COURT:  The Colonel will be the Colonel at Arms,

10  and proceed to work and suppose I see you around 3:30.

11    MR. VEEDER:  Your Honor, do you have just one moment

12  before we break up now?

13    THE COURT:  Yes.

14    MR. VEEDER:   It is a problem that Mr. Stahlman and

15  I think Mr. Girard and Mr. Sachse are going to be interested

16  in.

17    I have, of course, always reserved the right to object

18  to all of the findings, conclusions of law and judgments.

19  You told me to bring them all in at once, but here is the

20  circumstance that arises now where I want to tender to

21  your Honor a thought.

22    When we wrote the Findings and Interlocutory Judgment

23  No. 37 your Honor made a ruling as to riparian acreage

24  within the Naval Ammunition Depot.  Of course, we reserved

25  our right to object to it.  Now you have asked us to come

up with irrigable acreage for the purpose of seeing

1   whether we can get together with Vail Company.

2       I have checked this matter back through now and I

3   believe your Honor has ruled that the lands in the Naval

4   Ammunition Depot are not, except for about 640 acres,

5   riparian and irrigable to the Santa Margarita River by

6   reason of the crest of the watershed of Fallbrook Creek.

7   Now at the same time, your Honor, in the Vail Company findings

8   you have ruled, as I comprehend, that all of the Rainbow

9   irrigable acreage is riparian to Temecula Creek.  It is our

10  view that the ruling which you applied to the United States

11  adheres then to all of the Pauba Valley, all of the Pauba

12  Rancho, and all of the Temecula Rancho north of the divide

13  between Santa Gertrudis Creek, Murietta Creek and Temecula

14  would be in the same status as the Naval Enclave.

15      I think we would have to have that straightened out

16  before I can tender to your Honor the acreage that you asked

17  us to submit.  That is something I would like to talk about

18  with the gentlemen today, if I can.

19      THE COURT:  All right, talk about it.  I certainly

20  can't straighten it out here in five or ten minutes.

21      MR. VEEDER:  No.

22      THE COURT:  I would want to have the maps and the

23  references and see just what the problem is.  I have a

24  general idea of it.  If you can organize that, too, and

25  present it, you may do so.

1    MR. GIRARD:  Of course, there is the difference, Bill.

2  You have one result when you are talking about the people

3  downstream from that kind of lands as contrasted to people

4  upstream.  That is the major difference.  In your factual

5  situation you said where everyone is upstream from you --

6  where Pauba sits, as far as you are concerned downstream.

7  But I would like to look at the map also.  But I recall the

8  findings on the Naval Enclave in regard to the Naval Ammuni-

9  tion Depot, and we drafted those findings with an assurance

10  that we would find some implied reservation to satisfy the

11  present water uses of the Naval Ammunition Depot on an

12  implied reservation theory.  Both Mr. Sachse and I agreed

13  to that.  I don't think there is any real evidence to support

14  it.  But are we quarreling with that reservation now or not?

15    THE COURT:  No.  Mr. Veeder raises this -- on my

16  request that he list how many acres the Government has that

17  are susceptible of practical and profitable irrigation.

18    MR. GIRARD:  Yes.

19    THE COURT:  On a different theory.

20    MR. GIRARD:  But the Naval Ammunition Depot riparian

21  right was reserved for specific uses on specific lands.

22    MR. VEEDER:  That is right.

23    MR. GIRARD:  And on that I made no comment.  And it

24  was not an irrigable reserve, as I recall it.

25    MR. VEEDER:  You are right.

1   MR. GIRARD:   It was to use water on facilities which

2   are used by the Navy at the Ammunition area.

3   MR. VEEDER:   That is not the point.  We are talking

4   about the irrigable acreage as related to the Vail Company.

5   THE COURT:   Mr. Bailiff, take them up to the third-

6   floor courtroom and make them at home.

7   Shall we say at 3:30?  I may bring this jury back at

8   1:00 and work from 1:00 to 3:30 and then see you around 3:30.

9   MR. SACHSE:   Very well, your Honor.

10   MR. GIRARD:   Thank you, your Honor.

11                               - - -

12   (Other matters.)

13                               - - -

SAN DIEGO, CALIFORNIA, WEDNESDAY, NOVEMBER 7, 1962, 3:50 P.M.

- - -

(Third-floor courtroom)

MR. GIRARD:  Does your Honor have a copy of these various drafts?

THE COURT:  I have some.  I have De Luz.

MR. GIRARD:  How about No. 37 to start?  That is the addition to the Naval Enclave one.

THE COURT:  Yes, I have it.

MR. GIRARD:  On the title page, the order page, at line 23, we would like to insert with pen and ink the word "Paragraph" in front of 18, so that it will read "Inter-locutory Judgment Paragraph 18."

THE COURT:  All right.

MR. GIRARD:  Then go over to page 4, on line 13, and correct the spelling, with pen and ink, of the word "curtail" -- it should be c-u-r-t-a-i-l.

Other than that this judgment is ready to sign.

However, in all of these Mr. Veeder has made it clear that this ready-for-signature means, as far as he is con- cerned, that the findings are drafted in light of your Honor's rulings and that he reserves the right to object to the actual basic determinations of fact and conclusions of law and interlocutory judgment.

MR. VEEDER:  In all interlocutory judgments.

1      MR. SACHSE:  Yes, in all cases.

2      MR. GIRARD:  Other than those submitted by you, I

3 presume.

4      MR. VEEDER:  Oh, yes.

5      MR. GIRARD:  That will take care of that one.

6      THE COURT:  This is ready for signature, then.

7      MR. GIRARD:  Yes -- assuming it is correct with your

8 Honor.  I think the changes as reflected on this are the

9 changes that you suggested and that we had typed out in the

10 transcript by Mr. Swader (reporter).

11      THE COURT:  I will read it tonight.  What is this date

12 No. 37 was entered?

13      MR. GIRARD:  I guess we should have that date.  I don't

14 have it.

15      MR. VEEDER:  April 6.

16      MR. GIRARD:  We will get that.

17      THE COURT:  All right.  That is ready for me to look

18 over.

19      What is the next one?

20      MR. GIRARD:  The next one, your Honor, is Findings of

21 Fact and Interlocutory Judgment No. 33.  On page 2, line 30,

22 where it says "Township 6 South" we would like to change it

23 so that it would read "Township 7 South.

24      And going over to page 3, the same thing on line 27.

25      As far as the findings themselves go, they are ready

1    for signature.  However, I crossed up Commander Redd's

2    office a little bit in setting out this format and he hasn't

3    quite got the exhibits ready.  They will be prepared by the

4    next hearing for sure and we can just attach them.  The

5    exhibits are not quite ready for this judgment yet.  The

6    basic reason is that I had a finding in here which expressly

7    required the delineation of those lands which overlie the

8    deep aquifer, and that has to be put on the exhibits.

9        MR. SACHSE:  The judgment is done.

10        MR. GIRARD:  The judgment is done.  Just ready for the

11    exhibits.

12        THE COURT:  You say by the next meeting.  You mean not

13    tomorrow?  You mean a month from now or whenever we meet.

14        MR. GIRARD:  I presume so.

15        THE COURT:  Mr. Veeder, do you have underlying

16    objections to this?

17        MR. VEEDER:  Yes, I do.  But this conforms with what

18    your Honor has said.

19        THE COURT:  All right.

20        MR. GIRARD:  The next one is Interlocutory Judgment

21    No. 41, which concerns the Indians.  This we will have ready

22    for signature tomorrow, if your Honor will permit us just to

23    delete the last page, page 24, and substitute a new page 24.

24    The reason for that is that Mr. Veeder desired -- and I think

25    correctly -- an express interlocutory provision providing,

1   in essence, that you are not making findings, conclusions of

2   law, etc. concerning the amount of water required for the

3   Indians' use or the rights of future assignees of the Indians

4   and you reserve jurisdiction to determine that in any future

5   proceeding.  In other words, the interlocutory judgment would

6   correspond with the language in Finding of Fact No. 12 on

7   page 24, the last paragraph.  I have written that finding.

8   It will be inserted as Finding No. 16 on page 24.  We will

9   just type a new page 24 which will have one additional judg-

10  ment, not findi ng, and that will be ready for signature

11  tomorrow morning.

12      THE COURT:  Here is the original and my copy.  I hand it

13  to you.

14      MR. GIRARD:  All right.  My secretary Mr. Sachse has

15  complete notes.

16      THE COURT:  I think you gentlemen get more work done

17  when I am not here.

18      MR. GIRARD:  The next one, your Honor, is De Luz Creek

19  findings,  No. 32, prepared by Mr. Sachse.

20      MR. SACHSE:  This is not ready for signature.  However,

21  we have hammered it out, except for the exhibits and except

22  for a practical question which we have to take up with your

23  Honor.

24      MR. VEEDER:  Your Honor, this is a problem that has

25  arisen by reason of the fact that your De Luz findings of

1   fact and conclusions of law are not an adoption of the

2   findings of fact and conclusions of law of the Special

3   Master.  In other words, you, your Honor, are making

4   independent findings, and your Honor will recall --

5       THE COURT:  Am I relying in any part on the Master's

6   work?

7       MR. VEEDER:  I don't think you are.  I think you are

8   relying on the oral testimony and the exhibits that were

9   introduced before the Master, and I think the problem is

10  presented --

11      THE COURT:  I am relying on that, but not entirely on

12  his conclusions.

13      MR. SACHSE:  The real problem, your Honor, was one of

14  format.  As you know, De Luz was the first.  And the Master's

15  findings simply don't conform as to the approach with a lot

16  of things we said later.  The substance is the same.  There

17  is no difference in the substance.

18      MR. VEEDER:  Of course, the rule is that in all trials

19  the testimony of witnesses shall be taken orally in open

20  court, unless otherwise provided.  In other words, as I see

21  it, you are proceeding to make the determination on a record

22  that was not taken before your Honor.  In other words, I

23  think that if someone came alo ng and said, "This evidence

24  was introduced before a Special Master and not before Judge

25  Carter," they might have a very  valid objection on the

1    ground of due process.

2         THE COURT:  Suppose you do this.  Suppose somebody at

3    this time moves to introduce in evidence all the proceedings

4    before the Master, including the proceedings taken on De Luz

5    Creek.  Look at Ex Parte Peterson in the Supreme Court, which

6    involved a Master's findings.  I think the rule is that the

7    Master's findings are then prima facie of what is therein

8    and that the Court may consider the evidence and the Master's

9    findings and go from there.

10        MR. VEEDER:  All right.

11        MR. GIRARD:  I will so move the introduction in evidence,

12   then.

13        MR. VEEDER:  I have no objection.  I have this feeling.

14   I think the De Luz Creek situation is perhaps an explosive

15   one by reason of the filings that have been made up there by

16   Mr. Dennis' clients.

17        MR. SACHSE:  You wanted to suggest something to the

18   effect that I draft an order specifically superseding the

19   Master's findings and judgment, Bill.

20        MR. VEEDER:  Or whatever you think you have to do to

21   clear up this problem.

22        MR. SACHSE:  Don't look at me.  You are the Federal

23   expert.  You tell us.

24        MR. VEEDER:  I think your Honor is right.  I think you

25   will have to take some kind of action adopting the evidence

1   and proceed from there.

2   THE COURT:  You move the admission before this Court --

3   Were transcripts made?

4   MR. VEEDER:  Yes, very extensive transcripts and exhibits.

5   THE COURT:  -- all the evidence taken before the Master

6   involving De Luz and all the exhibits entered into evidence

7   before the Master.

8   MR. GIRARD:  Let's make it all the evidence introduced

9   before the Master in all the various sub-watersheds.

10  MR. SACHSE:  Because this is going to come up on others.

11  THE COURT:  And all the exhibits, is that right?

12  MR. GIRARD:  Yes, your Honor.

13  THE COURT:  All right, that will be received in evidence

14  in this case.  It may be we need a special order on this case

15  in addition to this judgment granting that motion, and maybe

16  we ought to serve a copy of it on Mr. Dennis and some of

17  these other people.

18  MR. VEEDER:  If there is a chance of objection to what

19  we are doing on De Luz Creek, I think we should do that.  I

20  think maybe due process is involved if we are not careful.

21  THE COURT:  Think about it overnight.  Go ahead from

22  there.

23  MR. SACHSE:  There is a question or two on De Luz, your

24  Honor.  The record in this case, both before your Honor and

25  the Master, is not complete as to De Luz.  We know, and we

1  have discussed in open court and on the record, the fact

2  that there are additional findings concerning which there is

3  no evidence here.  Your Honor has even heard it on the record.

4  So our understanding, if it meets your Honor's approval, is

5  that by the next session we will have from Fred, from the

6  State Water Rights Board, a new tabulation bringing up to

7  date the status of all vested and inchoate rights on De Luz

8  Creek.  We will introduce it in evidence,  In the meantime

9  we will have Colonel Bowen's staff prepare a special exhibit

10  and we will have to attach to your findings an exhibit stating

11  the status of all vested and inchoate rights on De Luz Creek

12  as of the date of the judgment.

13      MR. GIRARD:  You mean vested and appropriative rights.

14      MR. SACHSE:  Appropriative rights.  Because there are

15  several of them on which there is no evidence.

16      THE COURT:  All right.

17      MR. SACHSE:  I have one other question.  I don't think

18  we know the answer to it.  Maybe Bill does.  What did we do?

19  You never sent out the Clerk's notice on the Master's

20  findings, did you?

21      MR. VEEDER:  No.

22      Did we, Mr. Luddy (the Clerk)?

23      THE CLERK:  No, we did not.

24      MR. SACHSE:  Okay, we are all right then.

25      THE COURT:  We did something, though.

THE COURT:  Do you have the rule on Masters?

MR. GIRARD:  The rule provides that within ten days after filing notice has to be sent out, and as I recall you withdrew them from filing -- you didn't file them.

THE COURT:  We lodged them.

MR. GIRARD:  Yes, we lodged them and they weren't filed then and we didn't send out notice.  But maybe I am wrong.

MR. SACHSE:  That is my understanding.

But now comes the next step -- and this ties in with Mr. Veeder's problem.  We have Master's findings lodged but not filed, we have in evidence all the Master's evidence.  To take care of Mr. Veeder's due process problem maybe we ought to do something to get rid of the Master's findings and let you be able to write your own, without compelling Mr. Luddy to send notice to all the people on the Master's findings.

MR. GIRARD:  You don't have to file the Master's findings.

MR. SACHSE:  Can we just forget them and have you issue new ones or have some sort of order?

THE COURT:  Let's take a look at the cases on this subject.  I think I can give you the citation of Ex Parte Peterson.  Take a look at it and talk about it tomorrow.

MR. SACHSE:  All right.

Outside of that, factually, insofar as the language and text etc. of De Luz Creek are concerned, the draft is ready

1   for me to take back and do it in final form now and reproduce

2   enough copies.

3       MR. VEEDER:  I want to take a look at that case.

4       MR. GIRARD:  The other point where we have reached, I

5   think, fairly substantial agreement and had a good deal of

6   discussion was the draft of an order for Colonel Bowen which

7   Commander Redd and I prepared relating to the determination

8   of certain factual matters, and we have made some changes in

9   the draft of the language.  I don't know whether your Honor

10  wants me to give you those or not.  They are not overly

11  extensive.  I can read the changes into the record at least.

12      THE COURT:  Just read them.

13      MR. GIRARD:  Mr. Veeder, starting with the preliminary

14  paragraph, did not want the language to read that the United

15  States had requested the installation of meters.  So it

16  would read now that the United States of America having

17  filed a motion with this Court which, in part, requests this

18  Court to determine which wells extract substantial amounts of

19  water, and then continuing on.

20      On Finding of Fact No. 1, at line 26, delete the last

21  sentence starting with the word "Because".

22      THE COURT:  Who moved that that go out?

23      MR. GIRARD:  Everyone, I believe, but me.  I had no

24  objection to its going out.

25      THE COURT:  I thought Mr. Veeder would just jump up and

1   down when he read Finding No. 1.

2      MR. SACHSE:  I made the particular objection, your

3   Honor, because it directly and absolutely contradicted the

4   very next finding, and you were going to have to do something

5   to tie the two together.  We finally decided the best thing

6   to do was to take it out.

7      THE COURT:  The second sentence, paragraph 1, is out

8   then.

9      MR. GIRARD:  Yes.

10     MR. SACHSE:  Yes.

11     MR. VEEDER:  These have been tentative discussions with

12  these gentlemen.  This is a matter I want Mr. Ramsay Clark to

13  review and to consider himself the whole matter.

14     THE COURT:  All right.

15     MR. GIRARD:  The next one is on line 31, page 1:  after

16  the word "be", which is the last word on line 31, add the

17  word "consumptively".

18     MR. STAHLMAN:  Did you not also want to insert -- or

19  did you do it -- in another place, instead of confining this

20  to Colonel Bowen, and persons under his direction?

21     MR. GIRARD:  Yes, I have done that at another place.

22     THE COURT:  All right, I see that.

23     MR. GIRARD:  On line 3, page 2, cross out the word

24  "use" and substitute the word "extraction," and then strike

25  the word "irreparable," so it will read "the amount of water

available for extraction without injury to the ground water storage area".

On Finding of Fact No. 3 cross out "as requested by the United States of America" and add "to obtain desired factual information".

MR. VEEDER: How will that read?

MR. GIRARD: So it will read "that the cost of installation of meters to obtain desired factual information would in the aggregate be substantial".

THE COURT: All right.

MR. GIRARD: Going down to line 28, after the word "be" add the word "consumptively," so it will read "which are presently being consumptively used".

THE COURT: All right.

MR. GIRARD: Conclusion of Law or interlocutory order 3 on page 3, after the word "users" on line 16 add "who are not metering extractions from wells or surface diversions" -- the point being that if the people are actually metering, much of the information required in these monthly reports is not necessary.

THE COURT: All right.

MR. GIRARD: And then going down to line 27 I would add the following language:  that substantial water users who are metering extractions or diversions shall submit the meter figures to Lieutenant Colonel Bowen monthly and such other

1    factual matters as may be requested.

2         THE COURT:  All right.

3         MR. GIRARD:  Going over to page 4, line 22, strike the

4    word "desirable" and change it to "necessary," so it reads

5    "such tests and measurements as he deems necessary."

6         And then go over to page 5 and insert another paragraph

7    in there as 8 and change the 8 to 9, which would read as

8    follows:  "As used herein, the designated Lieutenant Colonel

9    A. C. Bowen shall include persons who are working under his

10   direct supervision."

11        THE COURT:  All right,

12        MR. GIRARD:  As Mr. Veeder says -- I don't think he has

13   agreed on this in this form as yet -- he wants to discuss it

14   with Mr. Clark.

15        THE COURT:  Let me study it.  I have looked it over

16   hurriedly.  Let me study it over tonight, the alterations,

17   and tell you tomorrow what I think about it.

18        You will not be able to tell us, is that right, Mr.

19   Veeder?

20        MR. VEEDER:  I will get information on it.

21        MR. GIRARD:  That really accomplishes the extent of our

22   agreements and discussions where I think we were able to

23   convince one or the other and accomplish something tangible.

24        We have left to discuss, which we did not reach today,

25   the Aguange ground water findings, which may involve a good

20,719

1    deal of discussion, and Vail's 35-A series, which is the

2    vagrant-local-percolating waters, which I think are in pretty

3    good shape as far as I am concerned.

4        MR. SACHSE:  No. 39-A, which is in pretty good shape.

5        And 39, which is going to take a lot of discussion.

6        THE COURT:  Have you given me copies?

7        MR. STAHLMAN:  I have not.  I have given the others.  I

8    will give your Honor a copy.

9        MR. GIRARD:  We did discuss the question raised by Mr.

10   Veeder as to whether or not there was an inconsistency between

11   the Navy findings and the Vail findings insofar as considering

12   irrigable acreage is concerned.  Mr. Veeder is of the opinion

13   that there is.  Mr. Sachse, Mr. Stahlman and I are of the opinion

14   that there is no inconsistency and both findings are correct.

15       MR. VEEDER:  I would like to withhold discussion of that

16   point until tomorrow.

17       MR. GIRARD:  Sure.  I just wanted to bring out that we

18   had no agreement on that point.

19       THE COURT:  Mark these findings with the date 11-7-62

20   so we will know what draft it is.

21       MR. SACHSE:  I am going to hand the Clerk and your Honor

22   an original and one of the draft of Interlocutory Judgment

23   No. 39, which, however, is limited to the findings of fact

24   on that.  I don't have the conclusions yet because I think

25   this is going to be pretty controversial.  I didn't see any

1    sense in doing it.  We will get into them tomorrow.

2        THE COURT:  Will you go to work tomorrow at such time

3    as you find convenient, and then meet up here again at 3:30?

4        MR. VEEDER:  I think that is a very good idea, your Honor.

5    I think we can go through the Aguanga tomorrow.

6        MR. GIRARD:  We should be able to go through Aguange and

7    Vail at least.

8        MR. SACHSE:  And I think 39-A.

9        MR. VEEDER:  39-A is not ready.  39-A needs a map.

10       THE COURT:  Have I got a copy of 39-A?

11       MR. VEEDER:  I don't think so.

12       THE COURT:  You gave me 39.

13       MR. SACHSE:  Here is 39.  It needs a map.  It has every-

14    thing except a map.

15       MR. VEEDER:  That is right, and I think we can lodge it

16    with the Court and the map will be prepared and handed to

17    the Court and it can be put on.

18       MR. GIRARD:  As soon as the map is attached, can it be

19    signed?

20       MR. VEEDER:  Right.

21       MR. GIRARD:  No need discussing it.

22       THE COURT:  Are you all satisfied with 39-A?

23       MR. GIRARD:  I am.

24       MR. SACHSE:  I am.

25       THE COURT:  Lodge it, Mr. Clerk.

1    Mr. Veeder, is this the one to be lodged?

2    MR. VEEDER:  39-A?  Yes.

3    MR. STAHLMAN:  Your Honor, have you passed that point

4    now?

5    Have you, Fred?

6    MR. GIRARD:  Yes.

7    MR. STAHLMAN:  Several of us are concerned about what

8    the future will be.  We will be here tomorrow.  How about

9    after that?  I have some problems.  I think Mr. Veeder has,

10   too.

11   THE COURT:  After that there is only Friday.

12   MR. STAHLMAN:  I can't be here Friday.

13   THE COURT:  So you want to wind up tomorrow afternoon.

14   MR. STAHLMAN:  Yes.

15   MR. SACHSE:  I would suggest this, George.  Let's do

16   yours first tomorrow.

17   Can you stay, Fred, if there is anything to do?

18   MR. STAHLMAN:  Bill said he wanted to get away.  That is

19   the reason I brought it up.

20   THE COURT:  Let's see what we can do to wind up tomorrow.

21   MR. VEEDER:  We covered a lot of ground today.

22   THE COURT:  Let's talk about our next date.

23   I will be here in the morning, if you want to see me

24   before we start at 9:30, downstairs.  I can meet you again

25   tomorrow morning at a quarter to eleven.  I will be up here

1    at a quarter of eleven.

2        MR. GIRARD:  We may have some of these in final draft.

3        THE COURT:  All right, I will be up here at a quarter to

4    eleven.

5                            - - -

6        (ADJOURNMENT TO NOVEMBER 8, 1962.)

7        (AFTER SOME WORK AMONG COUNSEL ON NOVEMBER 8, 1962, THE

8    MATTER WAS CONTINUED TO DECEMBER 11, 1962, AT 10 A.M.)

9                            - - -