# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

        Defendants

No. 1247-SD-C

## REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:    San Diego, California

Date:    Friday, January 25, 1962

Pages:    20,993 - 21,055

# FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____

**JOHN SWADER**
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211 - Ext. 370

VOLUME   211                                                    20,993

1              IN THE UNITED STATES DISTRICT COURT

2              SOUTHERN DISTRICT OF CALIFORNIA

3                    SOUTHERN DIVISION

4                        - - -

5         HONORABLE JAMES M. CARTER, JUDGE PRESIDING

6                        - - -

7    UNITED STATES OF AMERICA,          )
                                        )
8                    Plaintiff,         )
                                        )
9         -vs-                          )    No. 1247-SD-C
                                        )
10   FALLBROOK PUBLIC UTILITY           )
     DISTRICT, et al.,                  )
11                                      )
                                        )
12                   Defendants.        )
     _____)

13

14              REPORTER's TRANSCRIPT OF PROCEEDINGS

15                  San Diego, California

16                Friday, January 25, 1962

17

18   APPEARANCES:

19        For the Plaintiff:           WILLIAM H. VEEDER, ESQ.,
                                       Special Assistant to the
20                                     Attorney General.

21                                     CDR. DONALD REDD

22        For Defendant Vail:          GEORGE STAHLMAN, ESQ.,

23        For Defendant Fallbrook:     FRANZ R. SACHSE, ESQ.

24        For Defendant State of
          California:                  FRED GIRARD, ESQ.
25

APPEARANCES:   (Continued)

     For Defendants Gibbon        CLAYSON, ROTHROCK & STARK
     and Cottle:                 BY: DONALD STARK, ESQ.


ALSO PRESENT:

Colonel Bowen

Mr. Fred Kunkel

Mr. Hoffman

Mr. Will Burnham

Mr. Wilkinson

SAN DIEGO, CALIFORNIA, FRIDAY, JANUARY 25, 1963, 9:30 A.M.

---oOo---

THE CLERK:  One, 1247-SD-C, United States v. Fallbrook.

MR. SACHSE:   Your Honor, before we get into the business at hand, I discovered a typographical error in Interlocutory Judgment No. 39, which was filed December 4th. This is so simple it can be corrected by interlineation -- it is just a number.

THE COURT:  We have to get the Judgment.

MR. SACHSE:  Bill brought it down for you.

On Page 12, Line 16, the language should read Finding XII instead of Arabic 43.  My secretary copied this out of some other judgment and left the number.  It should be XII instead of 43.

THE COURT:  All right, I will correct it.

MR. SACHSE:  Thank you, your Honor.

MR. VEEDER:  Your Honor, we have received and have been continuing to receive in the office these Letters of Acceptance that have been sent out by you and we have been incorporating them into Exhibit 207-E.  May I have those added?  This is the last of the bunch.

THE COURT:  They may be incorporated.

I want to take a recess about 10:25 and I will be back later in the morning.  The Childrens Home Society has a special Board meeting this morning involving a condemnation

20,996

1    matter.   I have agreed to go up there for a few minutes.   So,

2    what can we accomplish here to start?

3        MR. GIRARD:   Your Honor, I think we can pretty well iron

4    out the Gibbon/Cottle Findings.   I have discussed those

5    changes with all counsel on Paragraph 13 of the Findings, and

6    there is no objection to them, and I will incorporate into

7    the final draft for your signature.

8        The other change I would suggest would be on

9    Page 6 -- Mr. Stark called my attention to it, and it is

10   correct -- on Line 2 where it says, "which ditch and pipe

11   line parallel Temecula Creek unto . . . ."   It probably should

12   be "onto".   Change the word "unto" to "onton".

13       MR. STAHLMAN:   As I understand, Mr. Girard, Finding

14   No. 13 is at the request of Mr. Stark?

15       MR. GIRARD:   Yes.   There are some changes in it, which

16   were suggested, and frankly I concur in them, too.   I think

17   those findings are appropriate.

18       MR. STAHLMAN:   The only thing I was thinking about,

19   there was evidence on that matter.   That finding would

20   eliminate it.

21       MR. GIRARD:   The other change was on Page 9, Line 26.

22   Change the word "proper" to "beneficial," which is a term

23   of art.   I don't think it adds any thance in meaning at

24   all.

25       I think that is all the comments I have.

THE COURT:  Mr. Stark.

MR. STARK:  Your Honor, with regard to the findings, I understand them to have been made in accordance with the indication of your ruling on the issues  which were previously argued with regard to appropriative and prescriptive rights, and assuming that decision by your Honor with regard to appropriative and prescriptive rights, the form of the findings as corrected, I believe, is consistent with that decision.

On behalf of Gibbon and Cottle, I would simply state that I think our position was fairly and fully set forth in earlier argument.  I don't think anything is to be accomplished by renewing this argument.  The Court gave ample opportunity and consideration to it.

There is one further matter that I would like to restate for the record -- and here, again, it was stated, I believe, at the last hearing which I attended -- and this deals with the question of the scope and disposition of the case.

First of all, I would like to refer to the memorandum which was filed by Mr. Grover in May 1958, when there was a discussion of the scope of the case, in which it was suggested on behalf of Gibbon and Cottle that the case should properly not have proceeded as a  plenary case but that the Court should have exercised its discretion to compel

20,998

a dismissal as to all but the major defendants.

But having proceeded with the case as to all parties and having made findings which are in the nature of a declaratory judgment, it is our feeling that there is no longer reason, with a declaratory judgment and with the failure to establish proof leading to an apportionment, there is no need or justification for the Court to assume in its final judgment continuing jurisdiction in the matter. I understand that not only the Court's but apparently the prevailing view of counsel for the various parties is that continuing jurisdiction is and will be assumed in the case. We question whether a declaratory judgment simply defining the rights, not involving an apportionment, management or injunctive relief, is a proper occasion for the Court, by the assertion of continuing jurisdiction, thereby to keep open a case which had failed in its proof insofar as apportionment is concerned and thereby over a period of years to leave open the completion of a case that the Government failed to establish.

So we would urge -- and as I say, I again do not want to go on at length because I have previously stated this position -- but we would urge that the Court reconsider the matter of assuming continuing jurisdiction, and that this should be treated as at most a declaratory decree which defines these rights as of this date.  It leads to another

1    action at another time, if it seems appropriate -- the

2    matter of apportionment, which was not established here.

3              Again, with regard to the findings, while we

4    disagree with the conclusions of the Court as to appropriative

5    and prescriptive rights, we have no further objections to

6    the form of the findings, nor do we feel that the findings

7    are inconsistent with the conclusion if you assume the

8    Court's conclusion on these issues.

9              I don't believe any purpose would be served by

10   any more protracted statement on our behalf.  I appreciate

11   very much the courtesy that the Court has shown throughout

12   the case to us transient counsel.  We have some difficulty

13   bringing ourselves current with the case in view of its

14   magnitude.  We have had some doubt from the outset that it

15   would be possible fully and substantially to represent our

16   clients' interests short of every day appearance in Court,

17   which was obviously economically impossible, and we feel

18   that this was a burden that made the case from the outset

19   a most difficult one to represent parties from the very

20   nature of the case.  This is the reason we have earlier

21   urged that the Court restrict the scope.

22             But assuming the Court's decision that the scope

23   could not be restricted, we appreciate that we have had

24   every opportunity to present our case, barred only by the

25   fact that economics prevented the full defense by other than

1   a major defendant in a postion to stay every day in court.

2   THE COURT:  The case has been segmented, as it were,

3   and when we considered matters concerning your client you

4   have been advised.  You are familiar with the type of

5   interlocutory we have used, are you not?

6   MR. STARK:  Yes, your Honor.

7   THE COURT: There is nothing in these other interlocu-

8   tories that concern you particularly, except the groundwater

9   area in which your client is located, and you are familiar

10  with that judgment.

11  MR. STARK:  Yes, I am familiar with that judgment.

12  What I actually refer to is the practical problem that the

13  Court can't avoid in this type of case where a very few

14  parties are in a position, economically or by necessity, of

15  full attendance.  For instance, as to engineering and

16  geologic testimony, we were able to put on what we feel was

17  very good expert geologic testimony.  Nonetheless, that

18  testimony is to be weighed against Colonel Bowen's testimony,

19  and Colonel Bowen by his presence and by his very

20  integrity and depth of involvement in the case makes it

21  difficult at the conclusion of the trial covering so many

22  years to argue effectively the weight, for instance, of the

23  geologic testimony given some years prior.

24  THE COURT:  Are you asserting that your clients have

25  been denied a right to be heard?

21,001

MR. STARK:  No.

THE COURT:  Or a full hearing?

MR. STARK:  No.

THE COURT:  Or that in any way your clients have been legally prejudiced by having to segment the case as we did?

MR. STARK:  No, I don't know of any other way effectively that a case of this magnitude could be tried.  It was the suggestion in Mr. Grover's original memorandum that there is a question as to whether substantial due process can be accorded to minor defendants in a case of this  plenary nature extending over this period of time.

THE COURT: All the parties were brought in because of the order of the Judges of the Circuit Court.  Are you asserting that you feel there has been lack of due process as to your client?

MR. STARK:  It was our position that the Ninth Circuit decision -- and I realize the Court did not agree with this -- did not require all the parties to be brought in, but merely that they all be covered by a single judgment if brought in.  It was our position that the Court had jurisdiction and had discretion to compel a dismissal as to the minor defendants, and because of the magnitude of the case it was apparent that the minor defendants would be at a substantial disadvantage in that economically they could not involve themselves in full participation in the

21,002

1    case.

2         THE COURT:  Are you asserting that your clients have

3    been in any way prejudiced from a legal standpoint in this

4    matter?

5         MR. STARK:  Well, I think all of the minor defendants

6    all those parties who have been unable as a practical matter

7    to participate fully in the trial, are prejudiced, not by

8    reason of the procedures or by reason of any particular

9    act of the Court or of respective counsel, but simply

10   because the magnitude of the case has been such that it has

11   effectively prevented them from making a full defense as

12   might have followed from day to day participation in the

13   trial.  I think it is obvious that other than a major

14   taxing agency or a major ranch operation, such as the

15   Vail Company, it has been and from its outset clearly was

16   impossible for a party to participate fully without wiping

17   out at an early date all the value of the right they were

18   purporting to defend.

19        THE COURT:  I don't understand your remarks, Mr. Stark.

20   If you are asserting that your clients have not been

21   afforded a full opportunity to be heard, I don't think the

22   record bears you out.

23        MR. STARK:  No, I was not suggesting that they had not

24   had full opportunity to be heard.  In fact, I wish to

25   indicate that I thought the Court extended considerable

1  courtesies in the matter of time and method of presentation

2  for them to present their case.  It is the question  whether

3  presenting your case in a segmented form and not being in a

4  position to follow the day to day swing of testimony and

5  exchange among counsel and engineering experts on the

6  general aspects of the case, that leaves an individual party

7  uncertain as to whether on the particular days he appeared

8  all matters affecting and relating to his client and his

9  client's interests were or could have been covered.

10  THE COURT:  No final judgment has been entered.  So

11  notice will go out that a final judgment is to be entered.

12  MR. STARK:  Yes.

13  THE COURT: And I now advise you that I think it is your

14  responsibility to look over the interlocutory judgments

15  that have been prepared and if you have any questions about

16  the findings in any of them I will give you as much time

17  as you want.  I will even hear further testimony on behalf

18  of your clients if there is some matter in the case with

19  which you are not satisfied.

20  MR. STARK:  I understand that, your Honor.  And I

21  should indicate at this time that I do not contemplate

22  any further appearance in the case beyond the appearance

23  today, assuming that the Court is to enter a final order

24  in effect confirming the interlocutory judgments as they

25  exist.  I do not mean to indicate that.  I don't propose to

object further as to the findings relating to this client.

This is the reason, in ancticipation of that final judgment,

that I made the statement about continuing jurisdiction,

because I assume that would be included or is contemplated

to be included in the final judgment.  We would like to

suggest that it is not proper under the circumstances of

this case.  But beyond stating that position, I don't

contemplate any further appearance in the case, your Honor.

THE COURT:  Your objection as to continuing jurisdiction

is overruled.  If you want to be heard further on it, you

may come in at the time of the hearing on the final judgment.

But I propose to take continuing jurisdiction of the case.

If the remarks being incorporated with reference

to briefs and things of that sort raise objections, I assume

you are preserving your record generally as to the

objections that were made.  They will be again overruled.

You have indicated your content with the form of the judgment,

reserving your position.  So upon being redrafted it will

be signed in the form it is now agreed upon.

MR. STARK: Thank you, your Honor.

MR. STAHLMAN:  Your Honor, just by reason of the

remarks of Mr. Stark, I think for the benefit of somebody

reading this record it should be pointed out that there has

at all times during the entire proceedings been in attendance

a representative from the Attorney General's Office of the

State of California, and a very competent representative, who at all times has, I think, looked out for the interests of these so-called minor clients.

THE COURT: There are a lot of things that could be said. We have defaulted nobody. We have brought people in here by letter when we thought their interests were involved, who did not secure counsel. We have gone out of our way to do everything we possibly could to protect the rights of the various persons. It was understood, however, at the beginning of the trial that attorneys did not have to be present at all stages. It was their responsibility to see what was going on in the case and to make their own determination as to when they would be present and when they would participate. However, there has been a great amount of effort put out to try to keep counsel, notwithstanding this pre-trial order, advised of what was going on involving their particular areas and their particular clients.

MR. VEEDER: I think the record should also show that in regard to evidence the United States of America prepared and introduced what I think is as unbiased evidence as could possibly be presented, and I think Colonel Bowen did an excellent job with regard not only to the United States of America but in regard to every single individual client, and so far as I am concerned, there has certainly been due process throughout this whole proceeding. I think Mr. Stark

is in error when he says the United States of America in some way may have prejudiced the interests of these small clients.  I don't believe it ever has.

MR. SACHSE:  Your Honor, may I now lodge and ask that this be substituted for Interlocutory Judgment No. 31 which we lodged yesterday.  This is the corrected interlocutory judgment which, on Page 17, has the explanation of the hieroglyphics to which your Honor referred yesterday, and I believe this is now ready for signature, with the approval of all counsel.  Just tear up the old ones and these two will take their place.  We have supplied a new Page 17 to all counsel.

THE COURT:  Mr. Clerk, let me have your pen.

I have signed Interlocutory Judgment No. 31.

MR. GIRARD:  The Gibbon and Cottle Findings I presume I will stencil up and send it down and you will sign it without any further hearing.  Is that right, your Honor?

THE COURT:  Yes.  I take it you are going to change a few sheets in it there?

MR. GIRARD:  Yes, I will have to make the changes that were indicated this morning.  They are minor changes.

MR. VEEDER:  The record should now show that Mr. Stark has left the courtroom, after his complaints about representation.

THE COURT:  Do you have a copy of your revision of

Interlocutory Judgment No. 37?

MR. GIRARD:  Mr. Veeder has a copy.  Can we take a couple of minutes to go upstairs and get a copy for Mr. Sachse, Mr. Stahlman and myself.

THE COURT:  I have one thought about this to start. The Paul case is not yet final.  We talked about waiting until it was a final decision in the Paul case.  How much time do they have to petition for rehearing?

MR. GIRARD:  I can't say this for certain for our office, but as I understand -- and this is pure wild hearsay -- the only thing we contemplate is a few suggested changes of a factual nature where we felt the Court was mistaken on fixing dates, et cetera -- I think we well realize that with a six-three decision the chances of a petition for reconsideration are not great.  I don't know about the time.  I am not familiar with Supreme Court practice.

MR. VEEDER:  I think it is 30 days, your Honor.

THE COURT:  It was decided on January 14th, so that by our next hearing date it would be final if there is no petition for rehearing.

MR. VEEDER:  May I inquire as to the need of reference to the Paul case?  As I view it, we could very simply say that exclusive jurisdiction over the Naval Enclave has been ceded to the United States of America by the State of

California, that the cession was accomplished by, and then simply refer to the letter.  That would be the end of the finding.

Then as to the conclusion of law:  As stated in Finding No. 3 above, exclusive jurisdiction over the Naval Enclave resides in the United States of America.  Then over my objection put this in:  The laws of the State of California respecting the appropriation of rights to the use of water which were in force at the time of the cession of exclusive jurisdiction are still in force and effect at the time of the entry of this amendment.

Doesn't that do it?

MR. GIRARD:  The reason I made findings on it specifically, Mr. Veeder, was because in the Paul case they referred that fact to the District Court to make findings on.  The reason I referred to the Paul case in the preliminary statement is because the conclusion of law and judgment in the original Interlocutory Judgment No. 37 state specifically that the reason the Court is withholding decision on this issue at that time was the Paul case, and this is just consistent with reciting that and justifying the now entry of the provisions because the Paul case has been entered.

MR. VEEDER: But doesn't it accomplish all you want?  You concede cession of exclusive jurisdiction, and what you

1   want to do is preserve the proviso that the laws of the

2   State of California respecting appropriative rights to the

3   use of water that were in force at the time of the cession

4   are substantially the same today.  Won't that do everything

5   you want?

6        MR. GIRARD:  I think that is what I have done, Mr.

7   Veeder.

8        MR. VEEDER:  The only thing I am saying is that by

9   referring to the Paul case you have the situation where

10  you will not have finality until you have findings by the

11  District Court.  Isn't that right?

12       MR. GIRARD:  No, the Paul case is a decision of the

13  Supreme Court.  The findings which will be made by the

14  trial court as to whether the California provisions were

15  or were not in effect at the time is critical in the matter

16  of sovereignty.

17       MR. VEEDER:  You also have the additional question of

18  whether there has been a cession as to some of those

19  lands concerning which there is a question as to whether

20  there is a cession.  In other words, the District Court

21  has two jobs as I see it.  My own view is that it would

22  become very simple simply to preserve the thing you want

23  by one sentence in there and we would be through with it.

24       MR. GIRARD:  I think it is better to refer to the

25  Paul case in the preliminary statement.  I don't think it is

important, but since it was done in the original
judgment
interlocutory/provision I think it expressly said that this

Court will enter these findings when the Paul case before

the Supreme Court becomes final.

MR. VEEDER:  You would want to reserve the proviso that

you have suggested even if the Paul case were to be reversed;

isn't that right?

MR. GIRARD:  What proviso are you talking about?

MR. VEEDER:  You have a proviso that the laws of the

State of California are applicable to the United States

even though exclusive jurisdiction has been accomplished.

MR. GIRARD:  That is right.

MR. VEEDER:  Preserve that, if you want.  What difference

does it make in regard to the Paul case, then?

MR. GIRARD:  I don't think it would be proper to put

that finding in there until the Paul case has become final.

That is what we are relying on.

MR. VEEDER:  Whatever you want suits me.  I would

object, one, to the form that has been offered and, two,

to the conclusion of law.  I simply feel you are inviting

some difficulty that is not necessary, Mr. Girard.

MR. GIRARD:  There is no question at all, then, Mr.

Veeder, as far as the United States is concerned, that the

statutory scheme on the appropriation of water, as set

forth on Page 2, Line 21, through Page 3, Line 18, of this

proposed draft is factually correct?

MR. VEEDER:  As I said yesterday, I have checked it out as nearly as I can and I believe that you could correctly state that the law regarding the application for permits and licenses to acquire rights to the use of water was substantially the same at the time of cession of exclusive jurisdiction as it is now.

MR. GIRARD:  Yes.

MR. VEEDER:  I think that is correct.  I think it is irrelevant.  But why don't you just write a sentence to that effect and then we would be through with this amendment.

MR. GIRARD:  I would rather just let it remain, if it is factually correct.

THE COURT:  Because of this recess I have to take, I will let you gentlemen talk a little about that.  What other matters do we have to do today?

MR. VEEDER:  You have to leave at a quarter after, you say?

THE COURT:  About twenty after.

MR. VEEDER:  We are doing this, your Honor, we are checking out every parcel and every legal description, every name, and seeing that every piece of land has been covered by the interlocutories.  Necessarily, there are some mistakes and some duplications because of the vast number of them.  I have talked to Mr. Sachse and Mr. Girard about

21,012

this.  We would like to tender to the Court any changes that we find necessary because of mechanical mistakes in the exhibits.  If we could have an order to that effect, then as we progress through the work we could, without having to serve all counsel in the case, just tender those mechanical corrections.

THE COURT:  I think that is the only way you can do.

MR. SACHSE:  I don't think it will be necessary -- I think Mr. Veeder is absolutely right -- I hardly think it will be necessary actually to change the judgments.  We may find cases where you are going to have to and we should reserve jurisdiction to do so.  But I think the type of thing he is talking about in almost every case will be accomplished by changing the exhibit to be attached -- addition of names, deletion of names from the exhibit, something like that.

MR. VEEDER:  Would you permit the substitution of a page?

MR. SACHSE:  Yes.  In other words, I think you should reserve, in your final judgment, complete authority to change these exhibits without formal notice and hearing.

MR. VEEDER:  You see, your Honor, we had to go, as you well know, by subwatersheds.  Sometimes there is overlap.  Sometimes there is just a situation where the piece of land will appear on an A series and will also

21,013

appear on a non A series.   That kind of correction I would like to have an order or whatever is necessary so that we can make these and bring this down to date without any further delay in regard to it.

THE COURT:   You will submit them to the Court each time.

MR. VEEDER:   Yes, they would be tendered to your Honor.

THE COURT:   Certainly you don't need any order.   Just proceed to cure as many of these defects as you can.

MR. VEEDER:   And it wouldn't be on a court day, necessarily, when we got the matter done.

MR. GIRARD:   I haven't made objection to any of that type of errors.   Do it any day whether I'm here or not.

MR. VEEDER:   You will be advised of the revisions.

MR. SACHSE:   That is what I would like to have.   I think probably more than any other single person here, other than Mr. Veeder and Colonel Bowen, I am basically more familiar with wide areas of the watershed, and if you will, I would like at least to know who they are talking about and look at them.   But I'm sure I will not object. Whatever he says will go -- it has gone so far.

MR. VEEDER:   The second matter I would like to refer to is that in the Fallbrook area there are some names and some parcels that have not been covered by interlocutory

judgments.   I have talked to Mr. Sachse about this.   He has agreed that we can put in an A-series for the ones that are nonriparian, nonoverlying, and then put in the regular over-all judgment for those who do appear to be riparian.

Is that agreeable?

MR. SACHSE:   Yes.

MR. VEEDER:   Those are the two items of housekeeping I wanted to get out of the way.

MR. GIRARD:   I presume as far as these additional defendants, the ones you know about, that will be done by the next meeting on the 20th -- whatever you are going to do as to these defendants in the Fallbrook area?

MR. VEEDER:   Yes.

MR. GIRARD:   It is not going to be any additional finding, just names.

MR. VEEDER:   I think it will be another interlocutory.

MR. GIRARD:   Another interlocutory A series?

MR. VEEDER:   Yes.

MR. GIRARD:   Will that be done by the 20th, our next meeting?

MR. VEEDER:   I am convinced that it will -- in fact, the work is going on now.

MR. GIRARD:   I will have for the next session Interlocutory Judgment No. 34, Temecula above Aguanga groundwater area.   Colonel Bowen, I am sure, can have the

exhibits by the 29th.

Then assuming that we can iron out this morning after your Honor comes back this question about Interlocutory Judgment No. 37.

I will also have here next week the Gibbon and Cottle findings.

And I think somebody should draft up a letter on the 20th, so that on the 20th we can send out notices to anyone who desires to come in and look at them, if they want, and set a date for objections.

THE COURT:  I thought we were going to try to do that before the 20th.

MR. GIRARD:  I don't think we can now, primarily because of my fault in not doing Interlocutory Judgment No. 34, which I just overlooked.

THE COURT:  Suppose you knock Interlocutory Judgment No. 34 out within the week and send it down for signature.

MR. GIRARD:  Cmdr. Redd is going to forward me the map on Monday. Assuming I get that map on Tuesday, I can have them in the mail Thursday of next week.

MR. VEEDER:  Mr. Girard, we have quite an interest in that matter of Forest Service rights. Do you have all that data for No. 34? This is the largest single area we have in the National Forest.

MR. GIRARD:  Colonel Bowen, if you will just let me

1   know what land is Forest, I will state in there that it

2   is Forest service.

3       MR. VEEDER:   All right.

4       MR. GIRARD:   How do you want to handle that, Bill?

5   Do you want to handle it like we handled the Indians, or

6   do you want to give them a riparian right?

7       MR. VEEDER:   I would just as soon handle them --

8   no.

9       MR. GIRARD:   You had better handle them like the

10  riparian.

11      MR. VEEDER:   Not the way you handled the Indians.

12      MR. GIRARD:   Some day you are going to get up there,

13  the way we handled the Indians, they are going to scalp

14  you.

15      MR. VEEDER:   They're not going to get much.   All I

16  am saying, Mr. Girard, is that you be sure that I get

17  a copy of that interlocutory before you tender it, because

18  we may have some objections.

19      MR. SACHSE:   I would suggest that your Honor's

20  procedure is right.   This letter you are contemplating

21  sending out is a letter inviting the people to come in and

22  make objections.   If they don't come in and make

23  objections, the final is signed.   We should get the letter

24  notice out by the 20th.

25      MR. VEEDER:   To every defendant?

21,017

MR. SACHSE;   Sure.

MR. STAHLMAN:   Should there be some discussion also in connection with this form the final judgment will take?

MR. SACHSE:   We will have to take that up with the Court this afternoon.   I want to discuss that.

THE COURT:   How big a job is it getting this mailing out to all these parties?

MR. VEEDER:   It is going to be a big job, your Honor. I don't know how long it will take.   I think we will have to work with the Clerk on it.

THE COURT:   The envelopes have not been addressed?

MR. GIRARD:   They have a complete addressograph, I think, for every single ownership we know of.   All they have to do is run it through the Addressograph machine.

MR. VEEDER:   We will try to get it done.

THE COURT:   Once the form of the notice is formulated and the copy signed, how long does it take to run these through the Addressograph?

MR. VEEDER:   I will ask Colonel Bowen.

COLONEL BOWEN:   Very little time, your Honor.   That will not be significant.

THE COURT:   Then you have to stuff the envelopes?

COLONEL BOWEN:   Yes.

THE COURT:   That will be a bigger job.

COLONEL BOWEN:   That will be a bigger job.   I think we

1    could get some manpower to put to work on that and

2    accelerate that, so that it will move along.

3    MR. GIRARD:   I can have them run off once they are

4    copied.   If it is just a one-page letter, I can have a

5    couple thousand --

6    THE COURT:   What kind of notice should this be?   I

7    suggest you take your own recess, if you want, but give

8    some thought to that.

9    MR. SACHSE:   My thinking has been that it would be the

10    simplest kind of letter simply directed to every defendant,

11    stating that the Court contemplates such-and-such a date

12    the entry of a Final Judgment reaffirming all the

13    interlocutories heretofore entered.   Any defendant having

14    any objection to this procedure submit it in writing and

15    appear on the 20th.

16    THE COURT:   And incorporating the interlocutories by

17    reference in the final judgment.

18    MR. SACHSE:   Yes.

19    MR. STAHLMAN:   Also, I think you would have to state

20    in there that they are available at the Clerk's office.

21    MR. SACHSE:   Yes, tell them the interlocutories are

22    available for examination in the Clerk's office.

23    MR. VEEDER:   I would like to take a look at the rules

24    as to  what the Clerk's notice would have to be on that.

25    THE COURT:   All right, that is something to do.   Let's

1    list it, too.

2            Have we ever wound up with what to do with these

3    offers and acceptances?

4        MR. VEEDER:  Your Honor, I have gone through those and

5    I have checked them out.  I find that there are probably

6    10 or 12 of those that are on interlocutory judgments that

7    have been entered, and my own recommendation, which I made

8    the last time here, is that we simply send out these

9    notices that we send along to these specific people advising

10   them that they are being set aside and that their lands are

11   being included in the interlocutory judgments.

12       MR. SACHSE:  They are getting more out of the

13   interlocutories.

14       MR. VEEDER:  That is right.  They are getting more out

15   of the interlocutories than they are out of the offer and

16   acceptance.  I don't think they should object.

17       THE COURT:  What do you mean ten or twelve of them

18   were included in the interlocutory?

19       MR. VEEDER:  Most of those offers and acceptances were

20   in the Fallbrook area.  I would say 90% of them were.  We

21   saw to it that none of those were included in any of these

22   interlocutories that were entered.  In regard to the

23   Temecula groundwater area, there were seven or eight of

24   those up in the Valley whose lands were actually referred to

25   in that  interlocutory judgment.  That is why I don't think

21,020

1   you can have an all-encompassing order.  I think what you

2   have to do is write those people specifically and let them

3   know.  There are only seven or eight of them.

4         THE COURT:  All these people who signed these consents

5   are named in some judgment.

6         MR. VEEDER:  No.

7         MR. SACHSE:  Not necessarily.  In the Fallbrook segment

8   we did them in blocks by actually named defendants.  The

9   first ones we put in.  That is what Mr. Veeder was pointing

10  out a moment ago.  We didn't do them by watershed.  Fallbrook

11  has 11 or 12 interlocutories dealing with different groups

12  of names.  That is what he was talking about a moment ago --

13  that there are a bundle who would not be included in a

14  single A-Series Judgment.

15        MR. VEEDER:  And those people, in my view would be

16  included in this A-Series.  I think they should be notified

17  that their interests are now encompassed in an interlocutory

18  judgment and that you are setting aside their offer and

19  acceptance by the United States.  I think that is what should

20  be done in the Fallbrook area.  And in regard to those few

21  people up there in the Murrieta groundwater area who also

22  signed but s whose names are included in whatever judgment it

23  is, they should simply be advised.  I worked on that when we

24  got through this last time and I am convinced the only way

25  to do it is the way I suggest.

THE COURT:  I think it might be a good idea in this interlocutory judgment for Fallbrook to recite in the judgment that numerous of these people have signed consents, but that the judgment now being entered is broader and provides more extensive rights than the consents, and therefore the consents will not be acted upon.

MR. VEEDER:  That is what we will do.

MR. SACHSE:  If we could say that in the letter, that would be a great help.

THE COURT:  In the judgment, too.

MR. SACHSE:  Yes.

THE COURT:  But in the letter.

Let me take a recess.  Mr. Girard, I will give you the job of working out some little agenda of the things we have talked about this morning that we are going to continue to talk about when I get back here.  I expect to be back at a little after 11:00.

MR. GIRARD:  All right.

(Recess taken.)

MR. GIRARD:  Your Honor, I have drafted a letter or a notice form which I think should be stenciled.  It could be easily stenciled on one single piece of paper, and I presume it would be signed by the Clerk or by the Court -- I don't know which -- which I will read.  I have read it to Mr. Sachse, Mr. Stahlman and Mr. Veeder and they think it

21,022

1   seems to take care of the problem.  This would be mailed

2   out by Colonel Bowen's staff to all defendants.

3           "This Court having heretofore filed and entered

4   Findings of Fact, Conclusions of Law and Interlocutory

5   judgments concerned with the rights to the use of all

6   waters of the Santa Margarita River and its tributaries;

7   and it further appearing that all of said Interlocutory

8   Judgments are on file with the Clerk of this Court, Room

9   207, U. S. Court House, 325 West F Street, San Diego,

10  California, and are available for inspection during

11  regular court business hours;

12          "And it further appearing that this Court will,

13  on February 20, 1963 at 10:00 A.M. in Court Room

14  No. 1, located in the U. S. Court House, 325 West F

15  Street, San Diego, California, hear all objections

16  whether written or oral why this Court should not

17  forthwith enter a Final Judgment in this cause and

18  therein incorporate by referebce into said Final

19  Judgment all provisions of the above referred to

20  Findings of Fact, Conclusions of Law and Interlocutory

21  Judgments;

22          "NOW THEREFORE you are advised that any objections

23  to any provisions contained in said Findings of Fact,

24  Conclusions of Law and Interlocutory Judgments, or any

25  other objections, shall be filed in writing with this

Court prior to February 20, 1963, or presented orally

to this Court, at 10:00 A.M. on the 20th day of

February, 1963, at Court Room No. 1, United States

Court House, 325 West F Street, San Diego, California.

"Dated _____

" _____

JAMES M. CARTER
Judge, United States District Court"

MR. STAHLMAN:  How about that provision about all these

changes?  Wasn't there to be a paragraph on that?

MR. GIRARD:  No, it wouldn't be in this notice at all.

This is a notice that they have an opportunity to come in

and read these interlocutory judgments and that this Court

intends to enter a Final Judgment incorporating the

provisions of the interlocutory judgments and notifying

them that they have an opportunity to object, either in

writing or orally, on a specific date.  And I presume this

would go to every defendant in the case.

THE COURT:  First, does the Clerk have extra copies

of any of these judgments, if any ot them want them?

MR. GIRARD:  Along this line, your Honor, when this

goes out -- I have discussed this with Mr. Veeder and I am

sure he is agreeable -- I am hopeful that the Navy could

have either Mrs. Tooker or Commander Redd available here

with possibly extra copies of these judgments, and also to

assist Mr. Luddy in just locating specific provisions which

21,024

might concern the individuals who might inquire.

MR. VEEDER:  I think Mr. Luddy could simply refer anyone to my office for the purpose of explanation as to how the matter would be handled.

MR. GIRARD:  I think that would be an excellent idea.

MR. VEEDER:  When they come in, just send them up to Room 202-203.

THE COURT:  You think this notice should be published in some of the local papers?

MR. GIRARD:  I have no objection to that, your Honor.

MR. VEEDER:  I got a call from United Press yesterday and they wanted to know if anything had happened.  They might put it on the wire.

THE COURT:  Is there any paper at Temecula?

MR. GIRARD:  I don't have any idea, your Honor.

MR. SACHSE:  The Fallbrook Enterprise puts out what they call a "Extra-prise," something like that.  It is a free shopping news thing which is distributed in Temecula.  But there is no paper in Temecula.  I could arrange, I am sure, if you wanted a notice, to have it put in that special Temecula edition which is free.

MR. VEEDER:  Isn't there a Riverside paper?

MR. SACHSE:  Yes.  But this is a free one that happens to be stuffed in every mailbox in the Murriety-Temecula area.  I could take care of that.

21,025

THE COURT:  If it went into the Fallbrook Enterprise it would reach the Fallbrook people.  Is there a Riverside paper?

MR. SACHSE:  Yes, and it should go in that.  And there is a Hemet paper.

MR. STAHLMAN:  Also the Elsinore paper is distributed in that area.

THE COURT:  No other papers around there?  There is the San Diego Tribune.

MR. GIRARD:  If there is any question as to the cost of publication, they can send the bill to us and we will pay it.

MR. VEEDER:  Colonel Bowen suggests the Los Angeles Times is helpful throughout.

THE COURT:  It doesn't seem to me that it should be paid for/the State of California.  Is there any problem about the Federal Government paying for this?

MR. GIRARD:  If there is any problem, we can pay it.

MR. VEEDER: There is always a problem.  Why don't you pay for it?

MR. GIRARD:  Have the bill directed to my attention.

THE COURT:  Let's see, then, that it is put into these papers.

MR. GIRARD:  I would prefer that someone down here do that as far as seeing that it gets in there.  Direct the

bill to my attention.

THE COURT:  Mr. Sachse, will you see that it gets into these papers?

MR. SACHSE:  Yes, if someone will supply me with a notice and tell me to whome to send the bill.

MR. GIRARD:  Bill it to the State of California and send the bill to my attention.

MR. SACHSE: All right.

THE COURT:  Do you have the list of papers?  The Riverside paper, the Hemet paper, Elsinore paper, and Fallbrook paper.  Do you think the San Diego Union-Tribune?

MR. SACHSE:  They have widespread circulation in the North County.

MR. VEEDER:  They have a special issue for the North County, don't they?

MR. STAHLMAN:  It is widely distributed.  This notice should be noticed to all defendants in the case.

MR. GIRARD:  That is right.

THE COURT:  It starts out "Notice to All Defendants". The point is, there have been a lot of changes of ownership, and I think we should also put it in the San Diego Union-Tribune.  Now posting in these Post Offices doesn't mean very much, does it?

MR. SACHSE:  No.  Word of mouth is going to take care of a lot of the people.  The people who will be deluged with

1    frantic inquiries will be Colonel Bowen's office and my

2    office.

3         THE COURT:  Any objection to that form of notice?

4         MR. VEEDER:  No.

5         MR. SACHSE:  Do you want to put one in the Post Offices

6    in those little towns?

7         MR. GIRARD:  Ace's office is going to mail these.  I

8    am sure he can tack it up in the Post Office, can't you?

9         COLONEL BOWEN:  Either I or my representative.

10        THE COURT:  What Post Offices are there?

11        MR. STAHLMAN:  There is the Fallbrook Post Office,

12   there is the Murrieta Post Office, the Temecula Post Office.

13   Does Bonsall cover any of the area?

14        MR. SACHSE:  No; that is all San Luis Rey.

15        THE COURT:  No other Post Office up there?

16        MR. WILKINSON:  The Hemet is worthless.

17        THE COURT:  What about in Anza Valley?  Any Post

18   Office up there?

19        MR. VEEDER:  There is a Post Office at Anza.

20        MR. SACHSE:  There is one at Radec and at Aguanga.

21        MR. WILKINSON:  There is one at Wildomar.

22        MR. STAHLMAN:  Shouldn't there be an affidavit of

23   posting, too?

24        THE COURT: Colonel, you arrange to have somebody post

25   these notices in all the Post Offices you can find.

21,028

COLONEL BOWEN:  Yes, sir, I will do that.

THE COURT:  And have an affidavit made as to when they were posted and where.

COLONEL BOWEN:  Yes, sir.

MR. VEEDER:  This notice, as I comprehend it, doesn't relate to the objections provided for in the rules in regard to findings.

(An interruption.)

The question I was raising, in the light of this notice is that the rules provide for the filing within ten days of objections to findings of fact, conclusions of law and judgment after the judgment is entered.  I was wondering whether this would in any way supersede that, or how we would treat it?

THE COURT:  I don't know which rule you are talking about.

MR. VEEDER:  There is a rule.  Is it Rule 43?  I will check it.  In any event, provision is made for the filing of objections by any party.  What is it?

THE CLERK: Five days.

MR. VEEDER:  Is it five days?  You make objections to the findings of fact, conclusions of law and judgment, and then it is set down for hearing and argument.

MR. GIRARD:  They are getting more than ten days notice here.

1   MR. VEEDER:   I am asking if it is intended to supersede

2   that because we are doing this in advance of the entry

3   of judgment.

4   MR. SACHSE:   Don't you have two problems, Bill?   You

5   are sending notice of the entry on all of the pro pers.

6   THE COURT:   There is no rule of that sort in the Rules

7   of Federal Procedure.   There is Rule 52, concerning

8   findings, which says, "Upon motion by a party made not later

9   than ten days after entry of judgment, the Court may amend

10   its findings or may make additional findings and may amend

11   the judgment accordingly."

12   MR. VEEDER: That is right.

13   THE COURT: And this notice doesn't, of course, supersede

14   that at all.

15   MR. VEEDER:   This doesn't touch it.

16   THE COURT:   There is a local rule that objections must

17   be made to findings of fact and proposed judgments served

18   upon them within five days after they are served.

19   MR. VEEDER:   That is right.   As I comprehend this

20   notice here, it is simply for the benefit of these pro

21   pers and a lot of small people, so that they should know

22   this is going to be done and if they w ant to review the

23   judgments and findings, they have the opportunity to do so.

24   Isn't that what it amounts to?

25   THE COURT:   Yes.

MR. VEEDER:  It has nothing to do with the regular rules in regard to the entry of findings of fact, et cetera.

MR. STAHLMAN:  It satisfies the legal requirement.

MR. VEEDER:  I just want to be sure from our standpoint what kind of objections we are going to file.

MR. GIRARD:  Now, the second point, Mr. Veeder, can your office type up the original of this on a stencil for the signature of the Court or the Clerk?

MR. VEEDER:  Yes.

MR. GIRARD:  And then it will be given to Colonel Bowen to run off copies and they will mail them out and post them. And send Mr. Sachse a few so that he can have them available.

THE COURT:  I will sign it.

MR. GIRARD: The next point is the amendment to Interlocutory Judgment No. 37.  Mr. Veeder has suggested certain changes in this, which I, at least, feel are agreeable, and then one point with which he disagrees, I think,  On Page 3, Line 23, Conclusion of Law No. 2, this language was suggested by Mr. Veeder instead of the language I have:  The laws of the State of California referred to in Finding of Fact No. 3 which were in force at the time when exclusive jurisdiction or sovereignty was transferred to the United States of America are substantially the same as the laws which are in effect as of the date of this amendment to Interlocutory Judgment No. 37.

1    Now I would suggest that after "Interlocutory

2    Judgment No. 37" there be a comma and we would continue on

3    with the language:  And were not rendered inapplicable by

4    the transfer of sovereignty.  I think Mr. Veeder disagrees

5    with that particular language on that conclusion of law.

6         Now, before we get into the argument, I would go

7    over to the Interlocutory Judgment, Page 4, and Mr. Veeder

8    has some suggested changes on that which I think are

9    acceptable.

10        THE COURT: What are they?

11        MR. GIRARD:  It starts out:  "It is further, adjudged

12   and decreed," and then after the word "decreed" I would

13   insert "that the United States of America is the owner, in

14   fee simple, of the lands described or referred to in

15   Finding of Fact No. 1," and then it goes right on the way

16   the rest of it is.

17        MR. VEEDER:  Could we use "exclusive jurisdiction or

18   sovereignty" there, Fred?

19        MR. GIRARD:  All right -- and that exclusive jurisdiction

20   or sovereignty.

21        THE COURT:  Now you are referring to findings of fact

22   not in the old document, are you?

23        MR. GIRARD:  Yes.  So that the whole thing would read

24   now:  "It is further ordered, adjudged and decreed that

25   the United States of America is the owner, in fee simple, of

the lands described and referred to in Finding of Fact

No. 1, and that exclusive jurisdiction or sovereignty over

the specific lands referred to in Finding of Fact No. 3

was transferred to the United States of America on the

specific dates of the Letters of Acceptance set forth in

Finding of Fact No. 3."

Now, one problem we didn't really have to face,

your Honor.   Most of these lands where there were no Letters

of Acceptance are outside the watershed, and really the

question of sovereign jurisdiction is probably not too

important as far as those lands are concerned in this

lawsuit, because you will remember Finding of Fact No. 1

describes all the lands of the Military Reservation without

regard to their being in the watershed.

MR. VEEDER:   The point I make in regard to this

amendment that Mr. Girard has just been reading and the

comments that I made, I think it is reflective of your

Honor's ruling in regard to the Paul case.   I don't agree

that these conclusions are at all relevant, but I think it

is in keeping with what you have said.

THE COURT: What is your objection now to this

Conclusion of Law No. 2?

MR. VEEDER:   My thought that I tendered to Mr. Girard

was very simple.   I said that exclusive jurisdiction

resided in the United States of America by reason of the

1    cession of the State of California, and he wants to have this

2    additional factor in, in regard to applicability or in-

3    applicability of the laws of the State of California.   I

4    don't believe that is pertinent.   But he has certainly written

5    in my view, what your Honor ruled upon yesterday.

6        MR. GIRARD:   I take it, Bill, the findings of fact at

7    least are correct?

8        MR. VEEDER:   The dates.

9        MR. GIRARD:   The dates and the other data.

10       MR. VEEDER:   Yes, in regard to the 1914 law.   I say it

11   is irrelevant, but I say you are reflecting what the

12   situation is.

13       MR. GIRARD:   Yes.

14       THE COURT:   I would suggest in that Conclusion of Law

15   Number 3, down along about Line 23, wherever you started,

16   you say, "set forth in Finding of Fact No. 3," you mean

17   as above amended?

18       MR. GIRARD:   That is correct.

19       MR. VEEDER:   Of course.

20       THE COURT:   Again the same thing would appear in the

21   judgment -- referred to Finding of Fact No. 3 as amended.

22       MR. GIRARD:   One other correction.   I believe this is

23   a typographical error.   On Page 2 it says the land consists

24   of approximately 147.55 acres.

25       MR. VEEDER:   It is 9,147.55.

21,034

MR. GIRARD:  9,147.55.

MR. VEEDER: You are going to rerun this whole thing. Any typographical errors will be picked up.

MR. GIRARD: That is correct.  I am going to rerun the whole thing, but I presume that when I rerun it now I will run it ready for signature.

MR. VEEDER: That is right.

THE COURT:  Were there any other suggestions you had, Mr. Veeder?  Mr. Girard started by saying he was proposing certain matters and that you had some other thoughts.

MR. VEEDER:  He has read into the record the thoughts I had in regard to your Honor's ruling and what I thought you had said.

THE COURT: All right.

MR. GIRARD:  The suggested changes in language were the suggestions of Mr. Veeder.

MR. STAHLMAN:  I am wondering whether the caption may not be a little misleading.  It may be too broad, technically. It says, "Order Supplementing Findings of Fact and Conclusions of Law and Interlocutory Judgment No. 37."  It is only as to one particular phase.

MR. GIRARD: All right.

MR. VEEDER:  It is an amendment and a supplement.

MR. STAHLMAN:  But it refers to only certain specific things.

THE COURT:  Amending and supplementing.

MR. GIRARD:  Amending and supplementing Findings of Fact No. 3, Conclusion of Law No. 2, and Interlocutory Judgment Paragraph 27.

THE COURT: All right.  That can be run, then, and checked, and when it is okayed it can be signed.  Is that right?

MR. GIRARD: That is right.

MR. VEEDER: That is right.

MR. GIRARD: The next item.  The Gibbon and Cottle Findings of Fact will be prepared by me and I will have them in the mail to the Court and counsel the first of next week at the latest ready for signature, with the changes as reflected this morning.

MR. VEEDER:  May I inquire right now in regard to this amendment, because we are extremely interested in the amendment that is being made of Interlocutory Judgment No. 37.  Will Mr. Swader run this off for the Court's signature? I would like to have it mailed to me at once.

MR. GIRARD:  I will run it off on my stencil and mail you a copy at the same time I send it down to the Court.

MR. VEEDER: All right.

MR. GIRARD:  Interlocutory Judgment No. 34, which is Temecula Above the Aguanga Groundwater Area, will be prepared by me as soon as I receive certain information.

21,036

Commander Redd is going to send me on Monday the geology

map which is being prepared and which will be introduced

at the next hearing specifically concerned with this area,

and that will be checked to make sure it corresponds with

the geology map used in Interlocutory Judgment No. 34-A.

In addition, Mr. Veeder is going to advise me in

writing, and I hope next week, how he wants me to treat

certain Forest Service rights.  As you recall, there are

substantial areas in this area which are Forest lands and

which were withdrawn, say, in the late 1890's or the

early 1900's.  We can either treat these lands as specific

riparian lands and take care of them the same as any other

riparian.  Or, we can treat them -- and I think this is

the position Mr. Veeder wants -- treat them as reserve lands

having rights to water based on the date of the reservation,

subject to all prior vested rights, which would include

all the prior riparian rights to speak of.

There is one other additional problem.  I don't

care how the United States wants to treat it.  In evidence,

in these exhibits are certain filings that the Forest

Service have made for appropriative rights.  Now, they have

under State law, at least, filed application --

MR. SACHSE:  No, there are no permits in the area.  I

have just checked them out, Fred.  There are five

applications.

MR. GIRARD:  There are five applications that they have filed with the State Water Rights Board.  It is entirely up to the United States whether they want those recognized or not recognized in the judgment.  I, personally, feel that they have a right under California law, but it is up to the United States to suggest how they want to treat that, and I will leave that up to Mr. Veeder's discretion.

MR. VEEDER:  They neither add to nor detract from.

MR. GIRARD:  I am not going to say they neither add to nor detract from, because I think they add to.

MR. SACHSE:  There is something else.  I have one client up here -- I have just checked him out -- and in those areas, on a hasty checkout, your Honor, there are six licenses that have been granted to private individuals by the State Water Rights Board, each of which licenses, I believe is, in turn, subject to a revocable license of the Forest Service.  There is one permit and there are five Forest Service applications in this Temecula area.  As a quick look, I also discover one license on Wilson Creek. Better check into that one to see how we handle it.  And one, I think, in the Aguanga Groundwater Area -- although it may be up in the basement complex.  I don't know.

MR. VEEDER: Are those last two on the National Government's land?

MR. SACHSE:  I think each one of them.

MR. VEEDER:  Wilson Creek?

MR. SACHSE:  That is what it says.  Maybe it is not on Government land.

MR. VEEDER:  I will have to check it out.

MR. SACHSE:  I will make a list of these, if you want, and turn them over to Fred, Colonel Bowen and Mr. Veeder.

MR. VEEDER:  All right.

MR. SACHSE:  But the point is, I think it would be worthwhile, your Honor, to avoid a lot of double talk at our next session, to find out how Mr. Girard is going to handle this.  As far as I am concerned, they should be listed in the exhibit as State permits, because they are State permits or State licenses but if they are going to be listed in a different fashion because they are subject to a revocable Forest Service license, that we should decide.

MR. VEEDER:  Simply recite the fact that these applications have been made, that they are on National Forest Service lands, that they are on there by license from the National Forest Service.  It is the fact.

MR. SACHE:  It is not the fact.

MR. GIRARD:  I have no problem with these, because there the water right under State law is owned by an individual.  It is true he has a right to divert the water from the United States, which is conditioned entirely upon

1    consent of the United States and may be cut off immediately.

2    But his water right is from the State, not from the United

3    States.

4       MR. VEEDER:   The fact that I don't argue with you

5    doesn't mean that I agree with you.

6       MR. GIRARD:   My main problem, Mr. Veeder, is handling

7    the Forest Service applications which were filed by the

8    Forest Service for its own use.   You will let me know how

9    you want to handle that.

10      MR. VEEDER:   Yes, I will.

11      MR. SACHSE:   I think you are both overlooking a point

12   I am trying to make.

13      MR. VEEDER:   I know the point you are making.

14      MR. SACHSE:   No, you don't.

15      MR. VEEDER:   Go ahead and say it again.

16      MR. SACHSE:   Mr. Veeder has not introduced in evidence

17   a single Forest Service license.   I know my client has one

18   and I introduced it for Williamson.   So the rest of these --

19   Jerkovich, Ewing, Cal-Verde Company, et cetera -- their

20   only piece of evidence before this Court is that they hold

21   a State license.   There is no piece of evidence before this

22   Court that there is a revocable Forest Service permit here.

23   This is a problem for the United States and I am calling

24   it to Mr. Veeder's attention.

25      MR. VEEDER:   It is certainly not my burden to put in

Jerkovich's license.

MR. SACHSE: Then there will be a judgment which will
say, I presume, that he holds a license from the State of
California to appropriate certain water.  If you are
satisfied, I am not concerned.  I am just calling your
attention to it.

MR. VEEDER:  Here is my worry about Mr. Jerkovich --
I hadn't heard about it -- I think you are very wise to have
in this record evidence that Mr. Jerkovich had a license
from the Forest Service.  I will contact the Forest Service
in San Diego and find out whether they have issuedlicenses
to each of these people.  I didn't know.

THE COURT:  We do have in evidence a list of these
licenses.

MR. SACHSE:  You have a list of the licenses from the
State, your Honor.

THE COURT:  Can't we just leave it open by saying that
the Court does not have evidence in the record to show
whether or not this is dependent upon or subject to a prior
license?

MR. VEEDER:  I am sure that it is or they couldn't
have gone on the land.

THE COURT:  But if there is any question, we could
do it that way.

MR. SACHSE:  Sure.

THE COURT:  In other words, let us not make a flat finding, unless we are certain.  That the Court does not have evidence, therefore, makes no finding, as to whether this is subject to some prior right.

MR. GIRARD:  Here is the Oviatt one, which is similar to many of these, at least factually:  It is not true that there exists any water right, riparian, prescriptive or otherwise, to use the water of the State.

No, that is not it.

MR. VEEDER: Oviatt had one in which it said whatever he had was subject to a revocable license held from the Forest Service.

MR. GIRARD:  The only difference between Oviatt and these is that Oviatt was taking the water pursuant to a permissive license of the United States but he had never gone to the State Water Rights Board and got a filing.

MR. VEEDER:  Yes.

MR. GIRARD:  As soon as I receive this information from Mr. Veeder and Commander Redd, I will prepare the Findings of Fact and Conclusions of Law and send them down to the Court immediately within a day or two after I get back.

There has to be a new interlocutory judgment in the A-Series in the Fallbrook area.  Mr. Sachse is going to prepare that -- no, Mr. Veeder is preparing it now, and I presume that will be filed and served upon counsel in the

immediate future.

THE COURT: What would that number be?

MR. GIRARD:  I don't know.

MR. SACHSE:  We have 15 judgments in the Fallbrook area. I think Mr. Veeder could just pick 16-A or 5-A or any one of them.

MR. VEEDER: The next one would be No. 44.

MR. SACHSE:  I think if you tie it in to one of the existent  Fallbrook judgments you have, it would be more orderly.

MR. VEEDER:  I think we are also going to have to have an A-Series for Rainbow Creek.

MR. SACHSE:  Possibly.

MR. VEEDER: And we are working on that.

THE COURT:  What number is Rainbow Creek?

MR. VEEDER:  I have it right here.  Rainbow is No. 42. It would be 42-A.

THE COURT:  Who is working that up?

MR. GIRARD: We are not sure we need that yet, but Mr. Veeder is checking out if we need it.

MR. VEEDER:  There are quite a number of those in the basement complex that are not included in No. 42.

MR. GIRARD:  Okay.

MR. VEEDER:  Do you have another moment on this matter?

We have talked through as to the best way of

1   handling these changes that have to be made by reason of

2   just mechanical mistakes.   They are bound to come up.   Mr.

3   Sachse has agreed that when we find a page upon which an

4   error is made we would correct the page, serve counsel with

5   it -- I mean the ones  who have been here, and simply have it

6   inserted into the exhibits.   I am talking about the exhibits

7   where there is a piece of land that has been duplicated or

8   has been treated as basement complex when it should be over-

9   lying.   We will simply substitute.

10   MR. SACHSE:   Correct the pages in the exhibits, and no

11   formal notice or hearing of any kind, as far as I am

12   concerned, is necessary.   We are taking Colonel Bowen's

13   staffs' studies anyway.

14   MR. GIRARD:   The final point is the final judgment,

15   and we pretty much felt that this will have to be discussed

16   a little bit, but that each person who desires to do so

17   should prepare a draft of the final judgment for consideration

18   and discussion and, I am sure, for elaboration for the next

19   session.   There are many aspects of the final judgment

20   problem which do require discussion, including the basic

21   one even whether it will be entered immediately.   But at

22   least we should, all of us who desired, try our hand at

23   drafting one.

24   THE COURT:   And copies of those would be supplied to

25   me before the hearing?

1    MR. GIRARD:  Yes.

2    THE COURT:  And copies to all counsel.

3    MR. SACHSE:  And switch them around among ourselves.

4    MR. VEEDER:  I think that is right.

5    MR. SACHSE:  In that connection, your Honor, can we

6    hope that another day or even two will be available the

7    week after our hearing on the 20th?

8    THE COURT:  We will just make it available.

9    MR. SACHSE:  The thought that is in my mind is that

10   on this final judgment I am sure that there will be largely

11   formal differences, but that we might appear before you and

12   be able to hammer one out and if we could come back the next

13   day we could get it done then.  That was my thinking.

14   MR. VEEDER: There is a holiday.

15   MR. SACHSE:  The 20th is Wednesday, and Friday is

16   Washington's Birthday.

17   THE COURT: Wednesday and Thursday would be available.

18   MR. SACHSE:  Wednesday and Thursday.

19   THE COURT:  Mr. Sachse wrote the letter to Mr. Clark

20   as he agreed.  Put a copy of it in the record.

21   MR. SACHSE:  I gave all counsel a copy.

22   (THE LETTER ABOVE REFERRED TO APPEARS AT THE END OF  )
23   (                                                     )
     (THIS TRANSCRIPT.                                     )

24   MR. VEEDER:  But there was another letter that was

25   written, wasn't there?

THE COURT:  I wwas going to  write Mr. Clark.  I haven't got it completed yet.

MR. VEEDER: That was apparently the one that I remembered.

MR. GIRARD:  Bill, I will hand you this notice to all defendants, which is prepared.  You will stencil it up and bring it down to Judge Carter and give it to Ace?

MR. VEEDER:  That is to go out with your name on it?

THE COURT:  Mr. Veeder, are you still going to work toward trying to accomplish a physical solution in this case? Or have you abandoned any idea?

MR. VEEDER:  Your Honor, I am just the guy down in the trenches.  I do what I am told.  And if I am told to work for a physical solution, I will work for a physical solution.

THE COURT:  Like the reporter who asked the politician a question.  The politician said, "Well, maybe yes, maybe no, but don't quote me."

Anything further?

MR. VEEDER:  10:00 o'clock on February 20th; is that right?

THE COURT:  Yes.  Will you return to Washington?

MR. VEEDER:  I am hopeful to be in there before very many hours go by.

THE COURT:  Will you tell Mr. Clark that all of us are going to be up at that meeting on the 4th in Los

1    Angeles?

2        MR. VEEDER:  Yes, I will tell him.

3        THE COURT:  And that we would like to talk to him.

4        MR. VEEDER:  I will certainly tell him, your Honor.

5        THE COURT:  All right, thank you.

6        (Whereupon, an adjourment was taken until Wednesday, )
                                                              )
7        (February 20, 1962 at 10:00 o'clock a.m.             )

8

9                      ---oOo--

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

21,047

C O P Y

UNITED STATES DISTRICT COURT
Southern District of Calfornia
San Diego 1, California

James M. Carter
Judge

January 25, 1963

Honorable Ramsey Clark
Assistant Attorney General
Department of Justice
Washington 25, D.C.

Re:  U.S.A. v Fallbrook Public Utility District
     No.1247-SD-C

Dear Mr. Clark:

As you are aware, the case has now reached the stage
where it is possible for me to enter the final judgment on
or about February 20, 1963.  If this is done the time for
filing a notice of appeal would commence running.  I hesitate
to take this step if there exists a reasonable possibility
that the case can be settled on the basis of a physical
solution acceptable to all.

At the hearing this week Mr. Girard advised the Court
and counsel that it will be impossible for the California
Water Rights Board to delay consideration of the DeLuz
Creek filings indefinitely, and that in all probability
if nothing further is done by the United States  the
California Water Rights Board will consider those filings
on their merits in the immediate future.  Mr. Sachse has

also advised the Court that at his recent meeting with you,

it was generally agreed that the United States recognized

that before Fallbrook could be asked to participate in a

joint project, the United States would have to take steps to

obtain a water right which would be defensible under state

law.   I also am advised that you were forwarded a copy of

Mr. Girard's letter to Mr. Sachse dated January 22, 1963,

which discussed the recent case rendered January 13, 1963, by

the Supreme Court (Paul v United States, No. 19, Oct. Term

1962).

From the above, it appears that the accomplishment

of a physical solution might well be rendered moot if the

United States does not take steps immediately to obtain a

water right defensible under state law.   If the California

Water Rights Board were to grant permits to those persons

and entities who have filed applications for DeLuz creek

water, it is obvious that the physical solution would be

impossible, for there would be insufficient water available

to store at the DeLuz dam site.

Thus, it is imperative that the United States

immediately take steps to obtain a water right if in

fact settlement by physical solution is desired.

Without considering in detail the effect of the

language used in the Paul case insofar as state water

right laws are concerned, it does at least provide a

1   vehicle which would justify the Justice department from

2   departing in this case, from what has been its historic

3   position, and filing or permitting the Navy to file an

4   application with the California Water Rights Board for the

5   surplus waters of the Santa Margarita river.

6       If this is not done, it appears probable that

7   there can be no physical solution.  In this event, the

8   best that could be accomplished is further litigation,

9   which of course does not meet the real problem, which is

10  to develop the available water resources.

11      These filings should include the following:

12      (1) Filing on unappropriated water in DeLuz Creek

13      (2) Filing on unappropriated water in Santa Margarita-

14          (a) Up to the time Fallbrook actually builds a dam,

15  and  (b)  Any surplus over and above Fallbrook's

16              entitlement.

17      (3)  Filing to appropriate water from the alluvial

18              basins in the enclave which are fed and supplied

19              in part, by the waters referred to above.

20      In addition, the application could point out that

21  the government is prepared to store a substantial part of

22  the waters filed on in these alluvial basins.

23      It appears tragic to me that we should sit by and

24  let happen ten years later or more, a situation similar to

25  that which occurred when Fallbrook made its original filing.

The government abandoned subsequent filing, but probably had it gone to hearing the public interest in the Marine Base would have prevailed over the earlier filing by Fallbrook.

Mr. Girard, attorney for the State of California, I think has accurately summarized the Paul case, as follows:

". . .What the Paul case held was that when the United States obtained sovereignty (over government reservations) all laws in effect at that time continued in effect thereafter and are binding on the United States, unless (as in the Armed Services Procurement Act) Congress has acted to the contrary.  Insofar as I know, there is no congressional act concerned with acquisition of water rights on military reservations.  Congress has enacted certain provisions dealing with reclamation projects, but nothing dealing with the acquisition of water rights in other fields.  Ever since 1914, and certainly at the time the United States obtained sovereignty and certainly thereafter, State law has set forth a procedure concerning appropriative water right which has remained unchanged . . ."

It is true that the Supreme Court was considering the sale of milk and not water, but this holding certainly opens the door to justify action by either the

21,051

1 Justice department or the Navy in filing applications

2 pursuant to State law, since these laws were in effect at

3 the time the Base was acquired.

4      If you have any thoughts in this matter which you

5 would like to discuss, I would be glad to talk it over

6 with you on the telephone or supply additional information.

7      Sincerely,

8      JAMES M. CARTER,

9      U. S. District Judge.

10

11           (END OF COPIED MATERIAL)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C O P Y

LAW OFFICES

FRANZ R. SACHSE

January 24, 1963

MR. RANSEY CLARK,

Assistant Attorney General

Department of Justice

Washington D. C.

Re:  U.S.A v. Fallbrook et al.

Dear Mr. Clark:

At our hearing on the above matter January 24,
Carter inquired as to the present status of negotiations
toward a possible physical solution.  In replying, Mr.
Veeder stated that to the best of his knowledge there was no
present intention on the part of the United States to make
filings for appropriative waters with the State.

I then advised the Court that Fallbrook could not
ontelligently discuss a  joint project without some
specific information as to the actual appropriative rights of
the United States, and I read into the record the first
point contained in my letter to Mr. Fred Girard dated
December 28, 1962, summarizing our conference of December
21st.  I also pointed out to the Court that even if the
United States were to make filings with the State Water
Rights Board today, from six to eight months would

1    necessarily elapse before action could be expected from

2    the Water Rights Board.

3          It seems obvious to me that until this fundamental

4    question of water rights has been determined, it is useless

5    to discuss secondary questions of cost, quantity and priority

6    and details of the operation of a joint project.  There is

7    no doubt that a final judgment will have been entered, and

8    the 60 day period for filing notice of appeal will have run,

9    before any action from the Water Rights Board on the DeLuz

10   Creek filings.  Since all parties are agreed that "no appeal"

11   is an essential of any physical solution, it is imperative that

12   the United States make its filings immediately.   I

13   respectfully suggest that the interests of Camp Pendleton

14   can best be served by two filings:

15          (1)  A filing on ground waters to meet the Navy's

16   export needs, to be extracted from the Santa Margarita River

17   trhough the present pumping installations on Camp Pendleton.

18          (2)  A filing on all un-appropriated waters of the

19   Santa Margarita River and DeLuz Creek, for storage at the

20   proposed DeLuz dam.

21          Such a procedure would offer the Navy the greatest

22   possible protection, regardless of whether or not a joint

23   project at DeLuz were ever undertaken, and regardless of the

24   outcome of any appeal.  If the idea of a DeLuz dam were

25   abandoned, the first filing would protect the export need of

21,054

1   the Navy and would re-vitalize its riparian rights.   If a

2   joint project became a reality, the filings would expedite

3   its final accomplishment.   Such filings would further

4   provide an insurance policy against the possibility that an

5   appeal by the United States prove unsuccessful.   I believe

6   there is no question but that the State Water Rights Board

7   will act upon the presently pending DeLuz filings before

8   July, unless the United States takes some positive action

9   of its own.

10          It is my present intention to attend the Water

11   Coordinating Council conference in Los Angeles on February

12   4, at which you are programmed as one of the speakers on

13   the question of State-Federal Water Rights.   If you feel

14   that discussion with me at that time would be helpful, I

15   will arrange to be available either before or after  the

16   conference, at your convenience.   Will you please advise me?

17          Kindest personal regards.

18              Very truly yours,

19              FRANZ R. SACHSE

20   CC Hon. James M. Carter
21      Mr. Fred Girard
22      Mr. George Stahlman
        Fallbrook Public Utility District

23

24

25

21,055

# C E R T I F I C A T E

I hereby certify that I am a duly appointed, qualified and acting official court reporter of the United States District Court for the Southern District of California.

I further certify that the foregoing is a true and correct transcript of the proceedings had in the above-entitled cause on the date specified therein, and that my said transcript is a true and correct transcription of my stenographic notes.

Dated this _____ day of _____ A.D. 1963.

_____

**Official Reporter**