# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

— — —

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

UNITED STATES OF AMERICA,

                     Plaintiff,

    -vs-                   No.  1247-SD-C

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

               Defendants.

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

Place:     San Diego, California

Date:     Tuesday, May 7, 1963 and Wednesday, May 8, 1963

        Pages:  21,295 - 21,383, Inclusive

FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____
                     DEPUTY

JOHN SWADER
Official Reporter
United States District Court
325 West F Street
San Diego 1, California
BElmont 4-6211, Ext. 370

# I N D E X

## E X H I B I T S

**Plaintiff**

| PLAINTIFF'S EXHIBIT | FOR IDENTIFICATION | IN EVIDENCE |
|---|---|---|
| 19A - Runoff Records | | 21,303 |
| 20A - Runoff Records | | 21,303 |
| 21A - Runoff Records | | 21,303 |
| 22A - Runoff Records | | 21,303 |
| 23A - Runoff Records | | 21,303 |
| 24A - Runoff Records | | 21,303 |
| 25A - Runoff Records | | 21,303 |
| 26A - Runoff Records | | 21,303 |

1    SAN DIEGO, CALIFORNIA, TUESDAY, MAY 7, 1963; 10:00 A. M.

2                              ---oOo---

3           (Other matters.)

4           THE CLERK:  8 - 1247-SD-C, United States vs. Fallbrook.

5           THE COURT:  Did everybody get a copy of the letter from

6    Mr. Clark, the Assistant Attorney General?  Is there anyone

7    who doesn't have one?  Colonel Bowen, do you have one?

8           COLONEL BOWEN:  Yes, I have one, your Honor.

9           THE COURT:  I ask the clerk to file the original letter

10   in the proceedings.

11          I ask the clerk also to file a tentative agenda.

12   Have you served copies of that, Mr. Veeder?

13          MR. VEEDER:  Yes, I did, your Honor.

14          THE COURT:  Mr. Clerk (handing documents to the clerk).

15   One matter that is not listed on there is the proposed

16   Judgment 24A.

17          MR. VEEDER:  That is correct, your Honor.  Mr. Girard

18   gave me this amendment, which is the Lake O'Neill stipulation.

19   Mr. Sachse says it is agreeable to him, it is certainly

20   agreeable to me, and I think your Honor can sign it.

21          MR. SACHSE:  No objection to signing it now, your Honor.

22          THE COURT:  It has been checked over, has it?  Let me

23   have a pen, Mr. Clerk.

24          MR. VEEDER:  I think it is correct, your Honor.

25          THE COURT:  It looks satisfactory to me.  I will date it

today, the 7th, and sign it.

Mr. Clerk, file it.

MR. SACHSE:  That will require, then, your Honor, a handwritten interlineation on page 3 of the proposed final, filling in the date.  Oh, you have it in already.  Pardon me.

But there is a blank, Mr. Veeder, for Number 38.

MR. VEEDER:  There is no Judgment 38 that I can find.

THE COURT:  No Judgment 38?  Too bad to lose that number. Do you think we can get a short judgment formalizing the Veeder Creek or something like that?

MR. VEEDER:  I think that would be a good idea.

MR. GIRARD:  Mr. Veeder and I went over this 44 and I believe he will have a final copy today.

MR. VEEDER:  It is being run now.

MR. GIRARD:  And outside of Interlocutory Judgment Number 44, I don't think there are any other judgments which haven't been signed.

MR. VEEDER:  There is one matter that I would like to bring up now.

THE COURT:  Let me inquire now, before we go any further. This matter that we had with Mr. Anderson involving his client Mr. Ward, what judgment does that matter appear in?

MR. VEEDER:  I think that is the Temecula Creek, your Honor.  It is 34.  I think he was on Temecula Creek, and the question came up whether we would have a special judgment

1   for him and it was decided that he was taken care of on the

2   Temecula-Chihuahua.

3       THE COURT:  That is 34?

4       MR. VEEDER:  That is correct.

5       THE COURT:  All right.

6       MR. SACHSE:  Not Chihuahua.

7       MR. VEEDER:  No, it is the Temecula Creek Judgment.

8       MR. SACHSE:  But it has the name of the tributary.

9       MR. VEEDER:  He was in Dameron Valley, but his water was

10   taken out of Temecula Creek.

11       THE COURT:  You have reached agreement on 44 on the

12   Forest Lands?

13       MR. VEEDER:  Yes, your Honor.

14       THE COURT:  And will have that ready today?

15       MR. VEEDER:  It is being typed right now; yes, sir.

16   I am hoping that Mr. Girard and I can look at it during the

17   noon hour in final form.

18       THE COURT:  Shall we take up this matter of the Final

19   Judgment or the Stay first?

20       MR. VEEDER:  There is one thing I would like to bring

21   to your Honor's attention. We have Mr. Hoffman in the court-

22   room.  He has all of the runoff records down to date for each

23   of the gauging stations, and I would like to have those made

24   part of the record, if I may.  It brings them down through --

25          What is that, 1961-62, Mr. Hoffman?

1    MR. HOFFMAN:  Yes, 1962 water year.

2    THE COURT:  Do you have copies for everybody?

3    MR. VEEDER:  Yes, your Honor.  These are the actual

4  U. S. Geological Survey measurements.

5    MR. GIRARD:  I would like a copy.

6    MR. VEEDER:  I have copies for each one, I think.

7    MR. SACHSE:  I think they should be in.

8    MR. VEEDER:  That would bring everything up to date.

9  We will put them in on the A series.  I will hand them to the

10  clerk.

11    THE COURT:  What do you mean, the A series?  Where do

12  you want to put them in?

13    MR. VEEDER:  Just have them numbered the same -- in other

14  words, Exhibit 21, which is Santa Margarita near Temecula,

15  I would make that 21A and just put it in the same fold.

16    THE COURT:  What do they start with -- 21?

17    MR. VEEDER:  I think it is 19.

18    THE CLERK:  Nineteen.

19    THE COURT:  Have you got them marked properly for the

20  clerk?

21    MR. VEEDER:  Yes, your Honor.

22    THE CLERK:  19A, 20A --

23    MR. VEEDER:  21A, 22A, 23A, 24A, 25A and 26A.

24    THE COURT:  The runoff records, so marked, will be

25  received as exhibits with such numbers and made part of the

1  record.

2      MR. VEEDER:  Let the record show that copies are served

3  on all counsel.

4      MR. STAHLMAN:  May I ask one other question in connection

5  with this.  Are these confirmed, as the other records were,

6  with the U.S.G.S.?

7      MR. VEEDER:  We might put Mr. Hoffman on the stand on

8  that.  Mr. Hoffman is in the courtroom and has been sworn

9  and he can explain this.

10      Will you explain what these records are into the

11  record, Mr. Hoffman?

12      MR. HOFFMAN:  These are the actual gauging records of

13  runoff at the gauging stations in the Santa Margarita basin

14  and they represent the data as it has been or will be

15  published in the official publication of the Geological

16  survey.

17      THE COURT:  They are brought up, you say, through the

18  end of the --

19      THE WITNESS:  1962 water year.

20      MR. VEEDER:  When is that date?

21      THE WITNESS:  September 30, 1962.

22      MR. GIRARD:  Are they all the gauging stations?

23      MR. HOFFMAN:  Yes, all the gauging stations in the

24  Santa Margarita River basin.

25      MR. STAHLMAN:  What do you mean by "has been or will be"?

1    MR. HOFFMAN:  The records through 1961 have been

2  published in the official documents.  1962 has not yet been

3  published, but will be published within the next month or

4  two.

5    THE COURT:  Any other question of Mr. Hoffman?

6    MR. STAHLMAN:  We have some questions in connection with

7  Vail Lake.  Our engineer knows that some of these are in

8  error as far as Vail Lake is concerned.

9    THE COURT:  Which one is that?

10    MR. STAHLMAN:  That is 20A.

11    MR. VEEDER:  I would suggest that Mr. Hoffman and Mr.

12  Wilkinson get together on that.  I don't think we can

13  straighten it up here.

14    MR. STAHLMAN:  Maybe we can talk to Mr. Hoffman and see

15  where our differences are, here.

16    MR. VEEDER:  Yes.  Let them put this in together.

17  I don't know anything about it.

18    THE COURT:  You may confer about it.  But of course if

19  it is going to be published this way, this is the way it is

20  going to be published, errors or not.

21    MR. STAHLMAN:  The only question I have in mind is

22  whether or not the record should not reflect, inasmuch as

23  it has been expressed by Mr. Wilkinson that it doesn't

24  consider certain losses that must be taken into account in

25  order to determine what the actual figures are; so I would

21,302

1    suggest that Mr. Wilkinson and Mr. Hoffman discuss the matter

2    and come back a little later.

3        THE COURT:  All right.

4            (An interruption -- criminal matter.)

5        THE CLERK:  8 - 1247-SD-C, United States vs. Fallbrook.

6        MR. STAHLMAN:  I think Mr. Wilkinson and Mr. Hoffman

7    have conferred and we would like to have the record show

8    the result.

9        THE COURT:  All right.

10       MR. HOFFMAN:  Apparently, the difference between Mr.

11   Wilkinson and the Geological survey on these runoff figures

12   lies in the fact that Vail claims the salvage of water lost

13   by phreatopyte growth in the reservoir site prior to the

14   establishment of the reservoir or the installation of the

15   dam.  This is not taken into account in these figures of

16   runoff, your Honor.  These figures simply represent the

17   evaporation from the Lake surface itself, the draft or

18   release from the reservoir and the change in storage within

19   the reservoir, and make no provision or no adjustment for

20   this salvage of water due to the reservoir being installed.

21       MR. STAHLMAN:  To clarify it so that we may have a

22   proper understanding, your Honor may recall we did introduce

23   evidence that there were evapo-transpiration losses, and the

24   Vail Judgment indicates in its findings that there were evapo-

25   transpiration losses.  I believe we put it in under the report

1   of the engineer who built it as to what the factors were

2   that entered into this evapo-transpiration loss.  So I think

3   with that understanding and Mr. Hoffman's explanation here,

4   it is satisfactory.

5        THE COURT:  All right.

6        MR. VEEDER:  Then they are admitted?

7        THE COURT:  Yes, receive 19A through 26A.

8                              (Plaintiff's Exhibits 19A )
                               (through 26A received in  )
9                              (evidence.                )

10        MR. GIRARD:  You will give us a set later on?

11        MR. VEEDER:  I put them over there.  I think there were

12   three.  I make them available to counsel.  I think there is a

13   copy for each one of you there.

14        Are you ready to proceed, your Honor?

15        THE COURT:  Yes, sir.

16        MR. VEEDER:  We have the objections which were submitted

17   by individual landowners in letters directed to your Honor

18   and based upon notice that went pursuant to your direction.

19   I understand you desire to have these made part of the record,

20   your Honor.

21        THE COURT:  Yes, I think the clerk might just as well

22   make a file of them and keep them in a separate file.

23        Do you have to put a file stamp on each one of them?

24        THE CLERK:  A file stamp, yes, your Honor.

25        THE COURT:  No need to make them an exhibit, I don't think.

MR. VEEDER: I just thought they would be made part of the record.

THE CLERK: I will keep them in a folder.

THE COURT: Keep them in a folder. Put a file stamp on each one of them.

In addition to the letter written by landowners in most cases there is a copy of the reply written by the Court, is there not?

MR. VEEDER: I think that is correct. I think every letter that came to you has been answered.

THE COURT: All right, they may be filed. And the objections are overruled.

MR. VEEDER: I will deliver them, then, to the clerk. This is the material from our office.

THE COURT: All right. That is material that I sent down there from time to time also?

MR. VEEDER: That is correct. I answered some of them for you, but they were all over your signature.

THE COURT: I think I may have one in here I had better look at. Mr. Tarwater has one that I didn't do anything about.

MR. STAHLMAN: Is that a recent one, your Honor?

THE COURT: Yes. I will check it and add it to the group.

MR. VEEDER: I would like also to check our records.

1    I think Mr. Tarwater sent in a letter and I had Mrs. Tooker

2    contact him on it.  I don't know whether he want to confer

3    with you or not.

4         THE COURT:  All right, what is next?

5         MR. VEEDER:  Your Honor, we filed a series of objections,

6    the United States of America did, and those are before your

7    Honor.  Copies have been served on all counsel.

8         THE COURT:  Shouldn't we go to the form of the Final

9    Judgment next?

10        MR. VEEDER:  That is certainly satisfactory to me, your

11   Honor.  I think that the question of the form of the Final

12   Judgment and the question of stay are interrelated and that

13   we could probably discuss the scope of the Judgment and the

14   breadth of the stay at the same time.

15        THE COURT:  Mr. Veeder arrived yesterday and I saw him

16   briefly and he stated something about being concerned about

17   the finality of this Judgment.  Apparently, he wants a Final

18   Judgment, as we all do, if we are going to enter it.  And I

19   was thinking about it over the evening.  If you will, take

20   these copies I dictated, something very rough, and I have to

21   make some corrections in it.  Let me show you the corrections

22   first and then we will take a recess and you can look it

23   over.

24        In paragraph (1), down about six lines, take out the

25   comma after "parties;" and on the line that starts "the

1   future" strike out "more" and put in "a general allocation"

2   and add "of the rights to the use of water."

3       MR. GIRARD:  Where, your Honor?

4       THE COURT:  It is on the first page at the end of the

5   first big paragraph.  One line says "parties to the use of

6   water".  Strike the comma after "parties".

7       MR. STAHLMAN:  What line is it on?

8       THE COURT:  If you will quit reading the document --

9   you can read it later.  At the end of the first big

10  paragraph where it says "the future more," strike "more" and

11  put in "a general allocation," and then add  "of the rights

12  to the use of water."

13          In the next line change the word "This" to "The,"

14  strike out the word "of" in front of "jurisdiction".

15      MR. SACHSE:  So that will read, then, "The continuing

16  jurisdiction. . ."

17      THE COURT:  ". . .of the Court reserved in this

18  judgment,. . ."

19          On the second page, under (3), the first line

20  starting "Interlocutory Judgment," put the word "In" in front

21  of "Interlocutory Judgment," and after "45" insert "Colonel

22  A. C. Bowen."

23          Down about the middle of the page there is a line

24  that starts "While measurements;" it should be "Well

25  measurements".

1    The fourth line from the bottom, "river the court,"

2    put a period after "river" and make a new sentence beginning

3    with the word "The".

4    This is just a suggestion, and it might be that

5    with this worked over we might insert some of this matter into

6    the Final Judgment, and I am thinking particularly about the

7    provision that the Court would not exercise this continuing

8    jurisdiction on other disputes in the watershed unless

9    application was made to the Circuit and permission given to

10   do it.   I think this would solve any problem of finality.

11   Take a few minutes to look it over and we will come

12   back and discuss it.

13   (Recess.)

14   THE COURT:  Does anybody have any views on this?

15   MR. VEEDER:  We have discussed it, your Honor.  It is

16   my understanding that the effect of a notice of appeal would

17   be to deprive this Court of further jurisdiction over any

18   subject matter on any point.  I think Mr. Stahlman agrees,

19   and Mr. Sachse and Mr. Girard agree, that the Notice of

20   Appeal having been filed it would be essential for the

21   continuance of Interlocutory Judgment Number 45 for us to

22   request a specific order from the Ninth Circuit.

23   THE COURT:  Yes.

24   MR. VEEDER:  Isn't that correct?

25   MR. STAHLMAN:  That is what I think.

MR. VEEDER:  Irrespective of the language that is used here.  I think this language would be important in the interim period.

MR. STAHLMAN:  We are all in favor of this continuing.

THE COURT:  I think probably that would be the better way, then.  In other words, follow Mr. Girard's suggestion and petition the Circuit for the authority.

MR. STAHLMAN:  When is this appeal going to be filed, Mr. Veeder?

MR. VEEDER:  I would say that Archibald Cox has a whole lot more to say about it than I do.

MR. SACHSE:  My thought was that this would probably be in your judgment, because we might assume there might not be an appeal, and this is important.

In the second place, Counsel who are here present can't stipulate right now on the record that will join in a request to the Circuit for such an order in the event an appeal is filed.  That doesn't take care of Mr. Krieger and other individuals.  But Mr. Veeder, I am sure, feels confident that on this basis he could get the appropriate order from the Circuit -- file his request simultaneously with the notice of appeal, if he wants -- so that there is absolutely no interruption timewise.  I think it would take care of it.

MR. STAHLMAN:  What is Mr. Krieger's attitude on this?

1   MR. SACHSE:  So far he has not objected to the factual

2   data.  He sent Mr. Littleworth down, as you remember, and

3   they objected to the meter clause, I think, and wanted an

4   alternative way, and we finally agreed, if alternative

5   methods of calculating extractions were satisfactory to

6   Colonel Bowen, they were satisfactory to the Court.  But they

7   didn't object to the continuing collection of data.

8       THE COURT:  Mr. Sachse, I don't know whether I get your

9   point.  You agree with Mr. Girard that there should be a

10  petition to the Circuit along the line he suggests.  But do

11  you agree there should be any of this material in the Final

12  Judgment?

13      MR. SACHSE:  Yes, I think it should go in.  I think you

14  should put it in right from the final.  We say now that we

15  will stipulate to join in a petition if the United States

16  appeals or anybody appeals.  Mr. Tarwater may appeal.

17      THE COURT:  We have talked about Judgment 45.  What about

18  this collection of clerical errors?  Will it be in the

19  petition to the Circuit, too?

20      MR. SACHSE:  Mr. Girard says he found a case -- I don't

21  know what it is -- where any changes et cetra were approved

22  pending appeal.

23      MR. STAHLMAN:  By whom?

24      MR. GIRARD:  By the District Court.  You have a

25  specific rule -- I can't recall the number, but the Civil

Rules provide for correction of the clerical matters.

MR. VEEDER:  Rule 60 provides for that.

THE COURT:  Does it provide for it while the appeal is pending?  The general rule is that once an appeal is taken the Court loses jurisdiction, except that part of its jurisdiction that concerns presenting the record to the Court.

MR. VEEDER:  That is right.

MR. SACHSE:  Isn't that what this is?  The record is inaccurate, if our names on legal descriptions are in error.

MR. STAHLMAN:  In the back of my mind there is a case on that, too.  I can't think of it.

MR. GIRARD:  I found a case where they allowed the District Court to make a substitution of defendants' names while it was on appeal.  That is the only one I found.

MR. VEEDER:  I believe that any corrections that would have to be made, if notice of appeal was filed, we would simply ask leave to make these mechanical changes, so there would be no question about it.

THE COURT:  Rule 60 covers it.  Probably we wouldn't have to say anything about it.  It says they may be corrected at any time on the Court's own initiative or on the motion of any party.  "During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the Appellate Court, and thereafter while the appeal is pending may be so corrected with leave of the Appellate Court."

MR. GIRARD:  Then we don't have to go any further.

THE COURT:  That takes care of it.

MR. GIRARD:  We couldn't go any further than that anyway.

THE COURT:  That takes care of that part right there.

What about the continuing jurisdiction?  It seems to me that we could only exercise jurisdiction if the Circuit Court during the appeal in substance restored our jurisdiction.

MR. SACHSE:  Yes.  May I pose this specific problem, the kind that might well arise.  I agree with what your Honor has said.  Let us assume, for instance, that somebody puts up a dam in the watershed in violation of the Interlocutory Judgment on these small impoundments that we felt had to be enjoined.  As I understand it, then, we would be required to go to the Circuit, obtain an order from the Circuit authorizing your Honor to consider an OSC on that point.  Is that the way it would work?

THE COURT:  Yes.

MR. SACHSE:  That is my understanding.

MR. STAHLMAN:  However, you want that in there, the continuing jurisdiction, you want that in the judgment?

MR. SACHSE:  Yes.

MR. STAHLMAN:  So that when Mr. Veeder loses the case on appeal the Court will then just take up the jurisdiction.

MR. GIRARD:  You have that in the judgment as drafted.

Three specifically says the Court has continuing

1    jurisdiction over the use of all these waters.  Now the

2    question is whether you want a specific reference now.

3         THE COURT:  Actually, let's stop -- that section, as I

4    have it now, reads:  Continuing jurisdiction over waters,

5    et cetra  It merely means that the jurisdiction of this

6    Court would be suspended while the case was on appeal, and

7    that after the appeal was determined, if the judgment was

8    affirmed, this Court would still have jurisdiction.

9         MR. GIRARD:  Yes.

10        THE COURT:  The interim situation -- I have not had this

11   come up except in a little different situation -- suppose a

12   case is tried and findings and judgment go up, and then

13   suppose the counsel move for a new trial on the grounds of

14   newly discovered evidence beyond the kind that can be brought

15   up at any time.  The Circuit has laid out a procedure on that,

16   and that is that the District Court indicates to the Circuit

17   that it would like to have jurisdiction restrored for the

18   purpose of hearing this motion.  When that goes to the Circuit,

19   the Circuit then sends the matter back to the District Court,

20   jurisdiction is restored, and the District Court hears it,

21   and the matter then again follows its course.  The District

22   Court really has no power at all except, as the Circuit has

23   indicated, to indicate to the Court on appeal that it would

24   like to have the matter back and have another look at it in

25   some way.

MR. SACHSE:  It seems to me our problem is a little different, here.  The real reason this continuing jurisdiction is here as much as anything is to get a future controversy before your Honor who has heard all of the evidence.  There is nothing in the world to stop any litigant here from filing a new suit involving the waters of the Santa Margarita River, unless you retain something of this kind in your order.

MR. VEEDER:  Oh, Franz.

MR. SACHSE:  Well, of course.  Everything is stayed, and if Mr. Yackey builds a big dam or something, I think you can file a new action.  I think we want it right here as part of the Santa Margarita River adjudication, and the way to do it is to set up the mechanics whereby we say we want this continuing right here and if a new controversy arises we will go to the Circuit and ask for an order sending it back to be heard under an OSC here.  How else would you do it, Bill?

MR. VEEDER:  We would go to the Ninth Circuit and have that portion of the Court's jurisdiction restored.

THE COURT:  That is what I say.

MR. SACHSE:  That is what I say.

MR. STAHLMAN:  Wait a minute.  There is another way of doing this, I think.  Before there is an appeal filed, why couldn't your Honor make an order in the nature of a restraining order or a temporary injunction, the effect of which is that no party in the water suit shall litigate any

of the matters in any other Court other than in this Federal

Court.

MR. SACHSE:  That is suspended, too, if there is an

Appeal.

MR. STAHLMAN:  No.

MR. GIRARD:  It would stop them from doing it in other

courts, but it wouldn't give them authority to do it here.

MR. SACHSE:  It would be suspended, but the Ninth Circuit

would still have it under consideration and they could enforce

it.

MR. GIRARD:  If you look at paragraph 3 of the judgment

draft and you just added to that the second paragraph starting

with "The continuing jurisdiction of this Court. . ."

MR. STAHLMAN:  It is right in the judgment.

MR. SACHSE:  I don't understand.

MR. GIRARD:  I would just add the language of this sub-

paragraph (1) to paragraph (3).

MR. SACHSE:  Yes.

MR. GIRARD:  And just say "The continuing jurisdiction

of this Court reserved in this judgment shall only be exercised

during the pendency of the appeal upon application to the

Circuit Court for leave to so proceed, and then cut out this

"in an instance as set forth above," and "and upon the

granting of an application to the Circuit Court and the

restoration to this Court for such limited purpose."

In other words, not tied down to an instance such as set

forth above, but in any instance where the Circuit Court

authorized you to do it.

MR. STAHLMAN:  That does that.  But I am thinking of

something else now.  We don't know what this appeal is going

to be from.  Is it going to be the entire case, or is it

going to be only in relation to certain matters?

MR. SACHSE:  We have to cover all the possibilities,

George.

THE COURT:  All right, that suits me.  I would suggest,

however, instead of saying "Circuit Court," say "Court of

Appeals for the Ninth Circuit," in the middle, and the second

time we repeat the "Ninth Circuit," and the granting of such

application by the Court of Appeals.  That will take care of

that.  We wouldn't need the preliminary part of it.  And we

have already solved the clerical error business.

Now, do you think Number Three should go in here?

MR. STAHLMAN:  Isn't that the one we agreed would have

to provide for the Circuit Court?

MR. SACHSE:  May we go back to Number Two for a minute.

Instead of the new whole paragraph, couldn't you add that on

as we did the last one under paragraph Six of the proposal?

Just add the last sentence of your Two to the end of the

existing Six.

MR. STAHLMAN:  You don't need Two.

MR. SACHSE:  You are not going to use Two at all?

MR. GIRARD:  You don't need Two.

THE COURT:  No, I thought we were going to use the last paragraph of Two.

MR. GIRARD:  Mr. Sachse is on another point.  I think we are going to use the last paragraph of your paragraph One.

THE COURT:  Yes.

MR. SACHSE:  Yes.

MR. GIRARD:  And then we are going to ignor Two, because that is covered by the statute.

THE COURT:  Let's take up Two for a minute.

MR. GIRARD:  I don't care whether you add it in or not.

THE COURT:  Let's take up Two.  You have paragraph Six, here, which is the same thing.

MR. GIRARD:  Yes.

THE COURT:  And possibly, in view of Rule 60A, it might be better to revise Six by a reference to Rule 60A.

MR. GIRARD:  I think you are right.

MR. SACHSE:  Just add onto the end "as provided by the Rule of Civil Procedure 60A."

MR. GIRARD:  What is the rule?

THE COURT:  60A.

MR. GIRARD:  Rule 60A of the Federal Rules of Civil Procedure.

THE COURT:  Are you going to put it at the end?

MR. GIRARD:  Yes.

MR. SACHSE:  Right at the end, yes.

THE COURT:  All right, that solves that.

Now, the next point is that your Seven presently concerns this same thing we were talking about in my One.

MR. GIRARD:  Yes.

THE COURT:  So that either way we oughtn't put that insert at the end of Three, or we ought to strike out Seven.

MR. VEEDER:  What does Seven add?

MR. STAHLMAN:  It says "in accordance with the rules of this court."

MR. VEEDER:  I think we are all going to live by that, anyway.

MR. STAHLMAN:  I know.

MR. GIRARD:  This Seven is in there not for the basis of pending appeal, but on the situation as if this judgment is affirmed or no appeal is taken, and I think this is a proper provision in that light.

MR. SACHSE:  I think it is enough the way it is, your Honor.  "In accordance with the rules" takes care of it.

THE COURT:  All right, there is no inconsistency there. Where do you suggest the Three go?  We don't have a paragraph in here about this 45, do we?

MR. GIRARD:  We just listed it as incorporated.

MR. STAHLMAN:  It should be Number Eight, and Number

1   Eight should be Number Nine, shouldn't it?

2       THE COURT:  I would suggest if you use anything like

3   Three, that we add to it that if an appeal is taken, applica-

4   tion be made to the Circuit to permit this activity to

5   continue.  Or that would not be necessary if you are going

6   to file application at the same time.

7       MR. SACHSE:  I don't think it is necessary, your Honor.

8   You are going to file an application on your appeal, I think.

9           Don't you think that is better, Mr. Veeder?

10      MR. VEEDER:  I think it is better not to have Three in.

11      THE COURT:  Not to have it in at all?

12      MR. VEEDER:  That is right.  For several reasons, your

13  Honor.  If 45 is going to be part of the Final Judgment, the

14  matter is taken care of there.  Isn't that correct?

15      THE COURT:  No, it is not taken care of unless you do

16  something further -- unless you go to the Circuit and present

17  something like Mr. Girard suggested.

18      MR. VEEDER:  I think, as I said -- and I thought Mr.

19  Girard agreed with me -- that that has to be done.

20      MR. GIRARD:  I think the best way is to just sign the

21  stipulation somewhat along the lines of the language used in

22  Three, in the event you appeal and submit it to the Circuit

23  Court and ask the Circuit Court to order this Court to

24  continue to exercise jurisdiction for the purposes of performing

25  the duties set forth in Interlocutory Judgment Number 45

during the pendency of the appeal.  I don't have any objection if you throw it in this judgment either, although I have a little doubt whether or not it is valid.  I think it would be better to do it in the Circuit Court.

MR. VEEDER:  I have just touched on this point with Colonel Bowen this morning.  The matter has arisen as to what is the Colonel's status.  Certainly we want to be able to continue this work irrespective of who does it.  As I understand it, the matter is being taken up in Washington now.

MR. SACHSE:  Isn't the simple way, Mr. Veeder -- we will tell you we will stipulate, you will know by the time you appeal what Colonel Bowen's status is -- do as Mr. Girard suggests, either sign a stipulation that you can take it to the Circuit and get an order which let Judge Carter appoint a new one, if it is not Colonel Bowen.  I will amend 45 then.

MR. VEEDER:  That is the answer.

MR. GIRARD:  That is hardly the answer either, because I am not sure what the United States' position is in regard to the continuance of 45.  I, personally, want it continued.

MR. SACHSE:  You can go up --

MR. GIRARD:  I can't go up and ask them for the continuance, if the Government is going to divest Colonel Bowen of this function.

MR. STAHLMAN:  In connection with this matter, I wonder if we are not overlooking something.

1    THE COURT:  Are you talking about the same subject

2  matter?

3    MR. STAHLMAN:  Yes, your Honor, I am talking about the

4  same subject matter.  And I think there are probably other

5  matters of the same nature that are going to arise.  I can

6  think of some things.  Suppose somebody drills another big

7  well up there in the Murrieta during the pendency of this

8  appeal and it affects other peoples' property.  What is the

9  situation?  I would think, with the many facets this case has,

10  the Circuit Court would maybe, in several respects, desire

11  that this Court would be appointed maybe in the nature, as

12  this Court did, appoint a master or something that during the

13  pendency of this Appeal factual matters would be considered

14  by this Court and maybe the evidence would be necessary to be

15  taken in certain matters.

16    THE COURT:  We have taken care of that by what we talk

17  about in Three -- application be made to the Circuit for

18  jurisdiction for a limited purpose.  That takes care of that.

19    MR. STAHLMAN:  I was going to expand it a little bit.

20  Suppose there is a controversy arises.  Somebody files an

21  action or thinks they can get some benefit in some other

22  court.  I don't know.  I am just throwing this out.

23  I wonder if it wouldn't be well that there be something in

24  here that they be restrained from going into another court.

25    THE COURT:  We can cross those bridges when we get

to them.  You might go to the Circuit and restrain them, or

they might restore jurisdiction for that purpose.

MR. STAHLMAN:  I thought that should be done maybe in

this first thing.  We could foresee some of these possibilities

that might occur.

THE COURT:  You can't restrain some action you don't

know about.  You don't know whom to serve.

MR. SACHSE:  What is our agreement on your Honor's Three,

then, your Honor?

THE COURT:  I am inclined to think it shouldn't go in

this judgment, and be part of the application to the Circuit.

MR. SACHSE:  We can state now on the record, and I will

so state, that if the United States desires an order from the

Circuit directing this Court to continue its studies under

45, Fallbrook will stipulate to such an order from the

Circuit, for what it is worth.  Everything is in the record

now that protects you on it.

MR. VEEDER:  I think that is desirable.  And I think

the State is agreeable to that, isn't it?

MR. GIRARD:  Yes, we want that type of activity

continued.

MR. VEEDER:  The only reason I haven't spoken out more

on this matter is that I think -- George touched on it --

there is a tremendous variety of circumstances in addition

to these measurements where relief may be necessary in this

Court.

MR. SACHSE:   But you can't cover them all in the final decree.

MR. VEEDER:   That is what I'm saying, Franz.   I am simply saying, let's do what we originally agreed to, that if we want restored to this court any jurisdiction it be done by application in regard to any part of the valley.

MR. STAHLMAN:   I wonder when the first application were made if we might sound out the Circuit Court.   They have had involved cases before undoubtedly where there were matters and they may have some ideas of their own as to how this should be done.

MR. VEEDER:   I know how it is handled.   You file a motion and an affidavit on it, and if they want to restore it they do it.

THE COURT:   Then I am content to insert nothing further in the judgment except that addition to the present paragraph 3.

MR. SACHSE:   You also had a very brief one to Six, "as provided in Rule 60A".

THE COURT:   Yes.

MR. GIRARD:   I have it copied.   Maybe I had better read it.

MR. VEEDER:   Are you on Three?

MR. GIRARD:   Yes, on page 5 of my draft, you would add

a paragraph after the word "system" on line 31.

"The continuing jurisdiction of the Court reserved in this judgment shall only be exercised during the pendency of an appeal upon an application to the Court of Appeals of the Ninth Circuit for leave to so proceed, and upon the granting of such application by the Court of Appeals and the restoration of jurisdiction to this Court for such limited purpose."

MR. SACHSE: That is right.

THE COURT: That looks all right to me.

MR. VEEDER: It looks all right to me.

MR. GIRARD: On Six you just add the phrase "as provided in Rule 60A of the Federal Rules of Civil Procedure."

THE COURT: All right. Are there any other thoughts about this?

MR. GIRARD: I have added the last paragraph, your Honor, dealing with condemnation because I recall somebody wanted it specifically provided that these judgments determining rights did not in any way limit the United States' rights or anyone else's to acquire property by eminent domain. To be perfectly clear, if the United States wants to condemn, assuming they lose this case or anything else, they have a perfect right to purchase water rights by the exercise of eminent domain.

MR. SACHSE:  I think it is pure surplusage.  I don't think Mr. Veeder needs it.

MR. VEEDER:  We are not going to change the power of the National Government to exercise eminent domain.  But I don't care if it is in or not.

MR. SACHSE:  I think it is pure surplusage.

MR. GIRARD:  I'll be very happy to take it out.

MR. VEEDER:  I didn't know the question was raised.

MR. GIRARD:  Yes, it was raised.

THE COURT:  Go to page 4 of the judgment.  You list this Judgment Number 38.

MR. GIRARD:  That should be crossed out.

MR. VEEDER:  There should be a line through there.

MR. GIRARD:  There is no Judgment 38.

THE COURT:  I think you should say "No such judgment".  Just take it out.  What do you want to do?

MR. GIRARD:  I think we can just leave it out.  I don't think you have to say anything, because you are only incorporating the ones set forth.

MR. VEEDER:  The real reason for that is because Vail's 35 took care of that area.

MR. SACHSE:  This is going to have to be retyped.  It is just a question whether we scratch it or put "38 (No judgment)".

MR. VEEDER:  I would say the logical sequitur would be

"No 38".

THE COURT:  1 think you would put in "38 (No judgment with such number)".

MR. GIRARD:  All right.

THE COURT:  Otherwise somebody starts to look around, where is 38?

Now, Mr. Veeder, do you have any other suggestions as to the form of this document?

MR. VEEDER:  No, your Honor, I haven't.

THE COURT:  Any objections you have to it don't concern the form or language of it?

MR. VEEDER:  Of the Final Judgment and Decree.  I have specific objections as to the overall decree, your Honor, and I have put those in this Number 8 in my objections.

THE COURT:  I knew that you were not going to approve of a short final decree.  You did give notice of that.  But in your Number 8 you even criticize the use of interlocutory judgments.  I am not just so sure but that the record will show you were one of the fellows that helped devise this system of Interlocutory Judgments.

MR. VEEDER:  I think the record will show, your Honor, that it became very clear that I reserved objections to the form they were taking, and certainly, your Honor, I have undertaken succinctly to state in 8 my feelings in regard to the judgment as drafted.

THE COURT:  I suppose counsel has a right to say anything he wants to and to take various positions.

MR. STAHLMAN:  If he loses on every other point and prevails on that, we will just have to draw a new judgment.

THE COURT:  Let's look at Mr. Girard's material on the stay, then.  Or do you want to work this over, in view of what we talked about?

MR. SACHSE:  I would prefer, if we could, to get onto the stay.  We are all ready to go with the final, if we straighten out the stay requirement.

MR. VEEDER:  Do you have a copy of your proposed stay there?

MR. GIRARD:  No, I didn't have a proposed stay.

MR. VEEDER:  That is what the Court said, that there was a proposed stay.

THE COURT:  He has a proposed stipulation here.  You have seen that, haven't you?

MR. GIRARD:  Yes.

MR. STAHLMAN:  I think that is out, in view of our previous discussions.

MR. SACHSE:  That is out.  The stipulation is dispossed of.

MR. STAHLMAN:  I think this is disposed of.

THE COURT:  I understand this is the stipulation that will be presented to the Circuit.

21,327

MR. STAHLMAN:  That is right.

THE COURT:  Why is it out?

MR. GIRARD:  It is certainly a lot broader than we discussed before.  I don't think it is out.  I don't care whether you follow this route or not, but these were just some of the things I thought maybe we ought to try.

MR. SACHSE:  The reason I say I think it is out, I don't think the stipulation alone accomplished by us, executed by us, would permit Mr. Veeder to go up and get the order.  He is going to have to petition, anyway.  I think if we stipulate to cooperating with him in his order we have done everything we could by writing a formal stipulation.  So why clutter up the record with a formal stipulation?  Mr. Veeder and we all agree he is going to have to get an order from the circuit.

MR. STAHLMAN:  I think this particular stipulation at this particular time is premature because there are some matters in there that I think require consideration that affect people other than those of us who want to stipulate to certain matters.

THE COURT:  What matters do you refer to?

MR. STAHLMAN:  For instance, Number 3, to enter such orders  as may be appropriate to assure the ground water contained within the alluvial deposits in the Santa Margarita are not depleted, withdrawn, et cetra.

MR. SACHSE:  1 agree with Mr. Stahlman, your Honor.
That is something that would have to be taken up.  If somebody
thinks Murrieta is pumping too much water, they would have to
go up and get an order telling you to take care of this.

MR. GIRARD:  This assumed Mr. Veeder would have to go up
and get an order.  But I thought it might be a little easier
for him to get such an order if the major parties at least
were in agreement on it, if he wants this kind of
stipulation.  I don't know whether he wants this kind of
stipulation.

MR. VEEDER:  I don't think it adds anything, I really
don't.

MR. GIRARD:  All right.

MR. VEEDER:  I think if there is a situation where we
believe there is an overdraft above us, I think we simply
have to notice the parties invoved and go up.  I certainly
wouldn't want to try to anticipate the circumstances that
might call for such action.  George says, suppose somebody
puts a big hole down and begins pumping a lot of water.  We
can't anticipate that.  I think we would have to notice the
party.

MR. GIRARD:  Of course, this situation does not
destroy your right of notice.  This situation would be a
vehicle whereby, before this thing happened, this record
would be here available to the Court on an order to show

cause.  If you wait until an event is threatened, then you have to go to the Circuit Court, get them to remand it back to Judge Carter's Court, and then give notice, again through Judge Carter, that he is going to hear this matter, and by that time the thing may have all occurred.

MR. STAHLMAN:  I think we are discussing matters that should be discussed before the Circuit Court.

MR. VEEDER:  My own view on that, your Honor, unless somebody urges it strenuously, I would just as soon forget about the stipulation that has been proposed here.

MR. GIRARD:  Fine.  It's up to you.

THE COURT:  What is the effect of an appeal?  That the judgment is stayed except insofar as the Circuit lets it become effective?

MR. VEEDER:  I think that is the situation.

MR. SACHSE:  I think that is the situation.

THE COURT:  So the stipulated judgment is still operative?

MR. STAHLMAN:  Not as I view it, your Honor.

MR. SACHSE:  I don't see it.

MR. STAHLMAN:  I think Mr. Girard clearly outlines that in this letter he sent to your Honor, or brief, whatever it is.

THE COURT:  Let's understand each other on that.

MR. VEEDER:  That becomes extremely important, under

the circumstances.

MR. GIRARD:  Remember that not only was the stipulated judgment refused to be enforced, but this Court expressly found that Vail Company rescinded it on its own volition. You not only have the judgment here.  The Court here refused to enforce the stipulated judgment.  You also have an express finding by this Court that Vail Company rescinded the stipulated judgment and was privileged to do so, and I think merely a stay of that judgment does not ipso facto mean that the stipulation is drawn back into full force and effect.

MR. VEEDER:  My comprehension of the word "stay," as used here, is that the judgment is not going to be enforced during the period of the appeal and therefore everything is suspended during this period.

MR. GIRARD:  That is right.

MR. SACHSE:  Yes, including your right to exercise rights under the Vail Judgment is suspended.

MR. VEEDER:  No.

MR. GIRARD:  By suspending a judgment, you don't create a judgment.

THE COURT:  No, but I think you are all on the wrong track.  I think if a judgment is stayed, I think the effect is to go back to the status quo that existed before.

MR. VEEDER:  That is correct.

1      THE COURT:  That is true with injunctions.  There is a

2  Circuit Court case that came down recently -- you might want

3  to look at it over the lunch hour -- where the court points

4  out the fact that injunctions are issued to protect the

5  status quo.  But it is the status quo that the Courts are

6  concerned with where there is a stay of a judgment.  I am

7  inclined to think that, under these rules, if there is a stay,

8  the effect of the judgment is stayed.  There is no judgment

9  then operative, and you then have to go back to the status

10  quo.

11      MR. VEEDER:  That was certainly my understanding of it,

12  and that is what I meant when I said, "stay," your Honor.

13      MR. GIRARD:  I think you are legally wrong.

14      MR. STAHLMAN:  Isn't this something, again, that if

15  occasion arises where some party appeals it would be up to

16  the Ninth Circuit?  Wouldn't they be the ones then to deter-

17  mine this?  Let us assume, for instance, that the three and

18  a half second cubic feet go down the river --

19      THE COURT:  I don't think there is much we can do about

20  it, in view of Rule 62.  I think an appeal, unless the Circuit

21  wants to direct the Court to do something --

22      MR. STAHLMAN:  Your Honor, I think to some extent we are

23  kind of spinning our wheels.  We don't know what they are

24  going to appeal from -- whether they are going to appeal from

25  the whole judgment or just certain parts of the judgment.

That would make a difference, too, wouldn't it?

MR. VEEDER:  It becomes extremely important to me to have this construction of the word "stay" understood by all. When I was talking about "stay," when I filed the motion that I set out, my comprehension, as in other litigation I have been engaged in, is namely, that when you have everything stayed you revert to the status quo as it was when the judgments were entered.

MR. SACHSE:  May I ask a question, then, Bill.  Take the example George just gave.  There is insufficient water in the River and you decide you want to call on Vail to release three second feet.  How do you do it with this stay in effect?  What would you do?  The only thing you could do would be to go to the Circuit and ask Judge Carter to accept jurisdiction of it.  The mere word "stay" would not give you a right to go to Judge Carter and ask for the order. That is the point I make.

MR. VEEDER:  The point I am making, though, is that from what Fred said and what George was saying, that there has been a total abrogation of the stipulated judgment, and it is my comprehension that that is not the case.

MR. SACHSE:  I don't think it goes quite that far.

MR. VEEDER:  All right.  But that is what they were saying.  My view is that if we want to have this enforced after notice, I believe we probably would have to go to the

Ninth Circuit.

MR. STAHLMAN:  You are right.

MR. VEEDER:  But I don't want it understood that there has been a total abrogation here.  Everything is stayed.

MR. SACHSE:  I filed a memorandum saying I didn't object to your language, because this is the reason.  I think it is stayed anyway under the judgment.  I don't think you can do anything at all about going to the Ninth Circuit.

MR. VEEDER:  Suppose Fallbrook throws on its pumps and shuts down the stream and we are in a situation where there is no water coming down for the Ammunition Depot.

MR. SACHSE:  You would have to go to the Circuit and ask for an order giving Judge Carter authority to accept jurisdiction of this question on an order to show cause. That is my understanding of it.  Judge Carter would have no jurisdiction to accept it, nor would any other court, pending appeal, without an order from the Circuit.

MR. GIRARD:  But assume you went to the Circuit Court and they said, "Send it back to Judge Carter to hear the merits," Judge Carter could restore part of the diversion because there is a judgment, even though it is stayed, which says the Ammunition Depot's rights are rights which are prior to Fallbrook.  In other words, your use on the Naval Ammunition Depot and your use on Lake O'Neill are not under the restrictions of your uses below DeLuz Creek.  So you would

have a valid right.  But say you wanted to make the demand

on other riparians so that you could continue to use water

outside the watershed and you went to the Circuit Court and

they said, "All right, send it back to Judge Carter so that

he can hear an order to show cause on why water should not be

released to come down below DeLuz Creek," my question to you

is, what right would you be relying on to have those people

release water to you below DeLuz Creek so that you could

export it outside the watershed?  And the mere fact that all

the judgments have been stayed by Judge Carter does not mean

that you have a right.

MR. VEEDER:  I think you are wrong, Mr. Girard.  I think

when the word "stay" is used, I think the operative effect of

the penalty that has been imposed upon us in regard to our

riparian and overlying rights is not effective.

MR. STAHLMAN:  Let us suppose you want to fill Lake

O'Neill.  We say, "No, it is stayed -- the whole judgment is

stayed.  You have no right to fill Lake O'Neill."

THE COURT:  I am not satisfied that sufficient study

has been given to Rule 62.  Subdivision A says Automatic

Stay; Exceptions -- Injunctions, Receiverships, and Patent

Accountings.  Except as stated herein, no execution shall

issue upon a judgment nor shall proceedings be taken for its

enforcement until the expiration of 10 days after its entry.

Unless otherwise ordered by the court, an interlocutory

or final judgment in an action for an injunction. . ." this

isn't really an action for an injunction.

MR. GIRARD:   It is a quiet title suit where there is

injunctive language in each judgment restraining people from

exercising rights contrary to the rights adjudicated.

THE COURT:"Unless otherwise ordered by the court, an

interlocutory or final judgment in an action for an

injunction or in a receivership action, or a judgment or

order directing an accounting in an action for infringement

of letters patent, shall not be stayed during the period

after its entry and until an appeal is taken or during the

pendency of an appeal." Then it says "The provisions of

subdivision (c) of this rule govern the suspending, modifying,

restoring, or granting of an injunction during the pendency

of an appeal."

Now, of course, the rule doesn't talk about it

until you get a little further over, but there is a regular

provision that you get a supercedeas if there is a money

judgment and thereby get your stay.

Then you come to (c):  When an appeal is taken from

an interlocutory or final judgment granting, dissolving, or

denying an injunction, the court in its discretion may

suspend, modify, restore. . . . This is speaking of the District

Court in (c).

MR. VEEDER:   That is right.

THE COURT:  Then (d):  When an appeal is taken the appellant by giving a supersedeas bond, may obtain a stay subject to the exceptions contained in subdivision (a). And the United States doesn't have to put up a bond.

MR. VEEDER:  That is right.  We view the stipulated judgment as an injunction that has been in force.  It is mandatory in some respects.  We believe under the circumstances of this appeal it remains operative under the request for the stay.

THE COURT:  Subdivision (d) doesn't talk about injunction.  "When an appeal is taken the appellant . . . may obtain a stay."  Then the Circuit Court's powers are not limited to granting a stay.

I don't think there is any question but that the United States can get a stay.

MR. SACHSE:  I agree.

THE COURT:  If they get a stay, what is the effect of the stay?  Does it restore the thing to the status quo?

MR. VEEDER:  Necessarily, your Honor.  You, yourself, brought up the point.  Here is an injunction.  The injunction has been entered.

MR. SACHSE:  Which injunction?

MR. VEEDER:  I am giving an example.

MR. SACHSE:  Give us a specific one in this case.

MR. VEEDER:  The stipulated judgment is an injunction,

1  in effect.  It is an apportionment, it is a limition of the
2  respective rights.  It provides for the delivery of X quantity
3  of water at the Gorge.  To me that is an injunction.
4       MR. SACHSE:  This Court didn't make that order.  This
5  Court said this was not in effect.
6       MR. VEEDER:  But the stipulated judgment is before this
7  Court and it is part of the court record here, and it is a
8  right under which we are claiming and we are seeking to have
9  our rights under it enforced.  My view is -- if I am in
10  error, I had better check it out -- but I am of the opinion --
11       MR. STAHLMAN:  Better think of a few things, too.  Just
12  think if you further project it into controversy all during
13  this appeal, et cetra.
14       MR. SACHSE:  Let's leave that for a moment.  I want to
15  know how you would enforce this judgment.  Suppose you have a
16  stay.  Suppose we are in agreement -- I am not conceding it,
17  but suppose I concede, for the sake of argument, that all
18  your rights under your stipulated judgment you thought you
19  had before this case was filed are still in existence.  How
20  do you go about enforcing them, if Vail isn't giving you what
21  you want?  The mere stay doesn't give Judge Carter any right
22  to do anything about it.  You are going to have to go to the
23  Circuit Court with an order and bring the question up.  That
24  is what you are going to have to do.  Judge Carter's stay
25  doesn't give him power to issue a mandatory direction to Vail

to pump three second feet.  The same applies to Fallbrook.

MR. VEEDER:  I would think it does under a stay, your Honor.

MR. SACHSE:  Oh, dear me.

THE COURT:  I have a luncheon appointment.  I have in my law clerk's office a good set called "Cyc of Federal Procedure, Third Edition," and I am confident if you want to crack the books you will find what a stay means under Rule 62.  That is what we are talking about.

MR. VEEDER:  That is correct.

THE COURT:  There is not much doubt about the fact that, with the exception of injunctions, the Rule is pretty clear. You get a stay.  The Circuit can give you a stay.  But what does it mean if you get a stay?  Does it restore the status quo?

I agree with Mr. Sachse that even if the status quo is restored and the Vail stipulated judgment is not effective, my power is gone when the appeal comes along and there is nothing you can do but write letters and make demands, unless you go to the Circuit Court and give me some power to give some relief.

But let's find out what is meant by a stay, when you stay a judgment.  Mr. Girard has a rather logical theory that a stay doesn't blow life back into a document that the Court, for instance, holds invalid.  I am not so sure but

that if there is a stay you go right back to the status quo before the judgment was entered.

All right, do some work on it and I'll see you at 2:00 o'clock.  You may come back earlier and line up some of this matter.

(Noon recess.)

SAN DIEGO, CALIFORNIA, TUESDAY, MAY 7, 1963; 2:00 P. M.

---o0o---

THE COURT:   I don't think we have to decide this question now.

MR. GIRARD:   No.

THE COURT:   But I think I know what the law is.   When you look at Moore and the discussion of these sections you find first, Rule 62 (a) the Automatic Stay, and there is an automatic stay for ten days, unless otherwise ordered by the Court. And when there is a reference to injunctions, et cetra, shall not be stayed during the period or after its entry, nor during the pendency of an appeal.   There is an exception to the rule. So there is an automatic stay when an appeal is taken.

Now, to prevent an execution you have to put up a supersedeas bond.   But there is this exception as to injunctions, which is dealt with in other sections.

Then you go to 62(c), involving injunctions, and Moore says, reading from section 62.05, under the title "Injunctions Pending Appeal":   "Rule 62(c) is merely expressive of a power inherent in the court to preserve the status quo where, in its sound discretion, the court deems the circumstances so justify"   (Talking about status quo). And then the note to that statement cites a case which holds that Rule 62(c) is an exception to the rule that perfection of an appeal deprives the District Court of jurisdiction to act

further in the case and recognizes the power of the District Court to preserve the status quo.

Then there is one other reference in here, in Moore 62.06, discussing Rule 62(d) -- this is Stay Upon Appeal: "Subdivision (d) is a modification of former 28 USC 874 (on supersedeas). By doing all the acts necessary to perfect an appeal and by giving a proper supersedeas bond an appellant may obtain a stay as of right, 'subject to the exceptions contained in subdivision (a)'." Those are the exceptions about injunction and accounting.

I conclude that these stays are to preserve the status quo.

And in this recent Circuit Court case (April 22, 1963), Tanner Motor Delivery Limited vs. Avis, Inc. (I have no citation for it), Judge Barnes says: "It has been said, and we agree, that 'the status quo is the last uncontested status which preceded the ending controversy."

I think that what flows from this is that the stay follows an appeal  If there are injunctive provisions, the Government would have to determine whether to seek that stay from the Circuit as to those. Everything else is stayed automatically because the Government doesn't have to put up a bond.

But this cuts both ways. It leaves the matter as it was before this judgment, so that as far as Lake O'Neill

is concerned you have got a judgment that is stayed, as far
as the stipulated judgment is concerned I think you have got
a judgment that is stayed.  Now, as far as the provision
that United States can't reach upstream until it ceases
exportation, I think you have got a judgment that is stayed.
That is hardly an injunction.  It is a declaratory judgment,
which is typical of a quiet title action declaring the
rights of the parties.  I don't think that is an injunction.
I think it is stayed.

What views do counsel have on this?  I don't think
it is a problem now.  It is a problem that may come up while
the appeal pends.

MR. VEEDER:  I think your Honor has stated the way I
believe it is, and I think you have touched on the examples
that we have discussed in the course of the conversation.
Whether the gentlemen agree with me or not I don't know.

MR. GIRARD:  I am going to look it up a little more.
But I would say right now, your Honor, that is, in fact, the
stay on the judgment you rendered on the stipulated judgment
were to require Vail and United States and the rest of the
parties to comply with the terms of the stipulated judgment
during an appeal, we will oppose a stay.  In other words,
our position will change from what we stated in our brief.
We will oppose a stay on the facts, if the United States can-
not show facts sufficient to warrant a stay in that instance,

if that is the basis of it.  I don't think we have to decide

that now, because I don't think you make your stay in this

situation until after the appeal is filed.

MR. VEEDER:  The point I was going to make is that the

proposition advanced by Mr. Girard is at issue before your

Honor if we did seek relief under the stipulated judgment.

Those would be the factors I would raise.  That is the point

I was trying to make.

MR. GIRARD:  All I would want to be is in a position

that the Court wouldn't merely just because this judgment

is stayed, have to say to Vail, "Waste three second feet an

hour (whatever it is) all summer long just to have water

waste into the ground."

THE COURT:  Let's analyze this.  If the stay, as I think

it does, puts the matter back in status quo, then it is the

old stipulated judgment between Vail and the United States.

There is no judgment in this Court about the matter.  The

Government, I suppose, could write letters and make demands

in connection with the old stipulated judgment.  But there

is nothing here in this court that they could enforce.

And I doubt if they would want to try to reopen the old

Vail case to go back into the Vail case and secure enforce-

ment there.  They would probably try to come into this court

and seek some kind of relief in this court.  But the fact

that the matter of the judgment on the stipulated judgment

is stayed doesn't put into effect any judgment in this court.
It leaves in effect --

MR. VEEDER:  The status quo, as your Honor said.

THE COURT:  -- the old status quo.  But how do you
enforce the status quo?  Suppose you say Vail has cut off
running water down here, and we want Vail to run three
second feet down the river.  Where do you go?

MR. STAHLMAN:  Fallbrook pumps it out.

MR. SACHSE:  We take it out.

MR. VEEDER:  May I tender this thought:  Sufficient to
the day is the evil thereof.

THE COURT:  We all agree to that.  But where do you go?
If you go into the old Vail judgment and try to open it up
and get relief out of it, I imagine there would be proceed-
ings in the Circuit throwing it all back into this court.
If you come into this court to seek in this court a mandatory
injunction under Rule 62 requiring Vail to run this three
second feet down -- and apparently under 62(c) this court
would have some power even on appeal to grant some
injunctive relief -- but this would necessitate a new hearing
and a new order of the Court.  In other words, with a stay,
there is no order of this Court that Vail runs the water
down.

MR. GIRARD:  Yes, as long as there is a full hearing
on the merits.

MR. VEEDER:  I think you have to have it.

MR. STAHLMAN:  Then let's think how this goes.  Assume we pump it down.  Then how are they going to stay Fallbrook? They have a valid permit.  They can't stop them until after they refrain from going out of the watershed.

Another thing.  Suppose we say "O. K." we go up in the Hutch and pump the three and a half, which we can do under the stipulated judgment.  Then you have a lot of people up there, you run into all kinds of problems.

MR. VEEDER:  And the problems are just as numerous as there are people and issues.  My own view is that your Honor is right in what he said.  I think that would be it.

THE COURT:  Let's take Lake O'Neill.  If there is a stay, then it is true you have an agreement with Fallbrook, a stipulation, sort of changing the time when you fill Lake O'Neill.  But you have got no judgment on it, and technically you would have no right to demand.

MR. SACHSE:  Mr. Veeder just conceded that to me.

MR. VEEDER:  He and I have been talking about the precise point.

When you say I conceded, I was kicking the ball around, Mr. Sachse.

MR. GIRARD:  Fallbrook isn't the one who will control whether you fill Lake O'Neill.  They may have a few little pumps in there in the summertime.  But suppose the upstream

people suddenly decide they don't want to let water come down

to fill Lake O'Neill -- Vail Dam, for example.

MR. VEEDER:  I think we would have some kind of remedy.

I am not going to quarrel about these things that are going

to transpire.  I am simply saying that I think your Honor is

correct in what he says.  I would like to see that kind of

disposition made of it.

THE COURT:  I don't know that I have to do anything about

it.

MR. SACHSE:  I don't think you have to do a thing.

THE COURT:  You get an automatic stay, unless there is

an injunctive provision; and I asked you to go through these

findings and judgments and point out where there were

injunctive proceedings, and you never did it.  You get an

automatic stay of the judgment by an appeal.

MR. SACHSE:  Every one is injunctive, to some extent.

MR. GIRARD:  In a quiet title judgment there are a lot

of instances where the language is injunctive, but they are

prohibitive injunctive measures and not mandatory.

THE COURT:  What do you propose?  That I grant the

Government's motion for a stay insofar as there are

injunctive provisions?

MR. STAHLMAN:  I think it has to be done, for many

reasons.  Not only that we don't know what they are going to

appeal from.

MR. SACHSE: I think the request for a stay, proced-
urally, should be made during this ten-day mandatory stay,
after the notice of appeal, when we know what is going to be
appealed from. It is theoretically possible -- theoretically,
although I am not anticipating -- that the United States
might say, "The only one we are unhappy about is Vail.
We are going press this until Hell freezes over. But
Fallbrook, go ahead and build your dam."

MR. VEEDER: Dreamer.

MR. SACHSE: This is possible. That is why the rules
are made in this fashion. Then when an appeal is written and
we know what they seek to stay, then they ask for it.

THE COURT: Let's decide that. Is it agreeable that I
consider any obligation for a stay after the notice of
appeal has been filed?

MR. VEEDER: Your Honor, I have this motion before you.
I think you could -- whatever you want to do. It is all
right with me.

THE COURT: All right, that is what I will do on that.

MR. SACHSE: On this Final Judgment, your Honor, --

MR. VEEDER: Just a moment. As I comprehend what your
Honor has said, based upon the circumstances that prevail,
did you say that an appeal would automatically stay every-
thing? I didn't hear what you said on that point.

THE COURT: I think an appeal automatically stays all

provisions of the judgment except those that involve either

mandatory or prohibitory injunctions, and as to those I think,

under the rules, you have to make an application for that

kind of stay.

MR. STAHLMAN:  And I think he has to notify everybody

that might be affected by it.  He has to make a motion.

MR. VEEDER:  Under the circumstances, I have this

motion pending, your Honor.  Do I understand that you're

not going to grant the motion?  You are going to deny the

motion, is that it?

THE COURT:  I will either postpone the motion until

after the Final Judgment is signed and after an appeal is

taken, or I would deny it without prejudice to its renewal.

MR. VEEDER:  Frankly, I want a disposition of it,

because I have filed a motion.  I talked to Mr. Clark about

it.  He says that he wanted a stay as soon as the Final

Judgment was entered.  I'm not quite sure of the breadth of

what your Honor has said.  As I see it, under the circum-

stances that prevail, I see no reason why the motion could

not be granted at the same time the judgment is entered.

Then if no appeal is taken, the whole thing is done away

with.

THE COURT:  Is there going to be opposition to the

Government's motion for a stay now or if it is made after

the notice of appeal is taken?

MR. STAHLMAN:  Your Honor, I don't know, except I say
there is some areas that we have to explore in order to reach
a sound decision as to whether there would be.  Take this
situation, for instance.  Here we have to go right into
certain matters of controversy in the case where, for
instance, if this is stayed in relation to the injunctive
procedure and Vail would be called upon to release water
down to Pendleton and it comes out of what we now know would
be a common source up there and affects other people who have
pumps in that basin, I think they would be concerned in this
thing, too.  So I can see where there would be no advantage
to granting a stay in this case.

MR. SACHSE:  Fallbrook will not object to the stay.
I agree with Mr. Stahlman that the problems that are
presented by the restoration to the status quo, which says
that the Mesa Silt is not a part of the stream, for instance,
and some of these things, that also becomes part of the
status quo, in effect.  That is the old judgment, the Vail
vs. O'Neill, not even the stipulated judgment, that was
never appealed from.  The problems that are then involved
are such that they affect, I know, one of Mr. Krieger's
clients, who would be entitled to be heard on it.  I will
not object.  I don't care whether it is granted today or
after the notice or any other time.  But simply volunteering
as an interested party who has been through this case, I can

see all sorts of ramifications for Murrieta.

MR. STAHLMAN:  For instance, if Vail pumped from the Hutch or from the Navy well, they are pumping from a common source of water which we know, under the circumstances of this case, regardless how this appeal terminates, the factual situation now, according to the Government's own testimony, this is a common source we are pumping out of.

MR. VEEDER:  Let's stop right there.

MR. STAHLMAN:  Just a moment, Mr. Veeder.

THE COURT:  I have your point.  In other words, if an attempt was made by the United States, during the appeal, to get an order that Vail pump, the Government's case would be predicated on the old stipulated judgment, to which, however, none of the other persons in the valley were parties.  Whereupon they would come in and oppose it, saying, "We are not bound by this judgment.  We are not concerned with any agreement between the United States and Vail, and we therefore oppose this provision that makes Vail release water downstream out of the common source so that the United States could pump it out of the watershed."

MR. VEEDER:  But your Honor, now you are ignoring -- I hate to have the whole thing opened up, but you are ignoring the indisputable facts that are in evidence right now that as long as the ground water divide stays where it is the pumping above Vail doesn't affect anybody else.

21-351

That is the situation.  I have no desire to open this thing

up.  I thought truly we could have a stay order.  If we came

in to enforce the stipulated judgment, whatever notices would

be required would be taken care of then.

THE COURT:  On whom did you serve your motion for a

stay?

MR. VEEDER:  Just on the --

MR. SACHSE:  All the cases are very clear, at least just

reading the footnotes, your Honor, that this is a matter of

your discretion, this kind of stay of an injunction, and that

you shall be shown irreparable injury et cetra, and I think

you have got to see that notice goes to these other people

who are affected.

MR. VEEDER:  You mean the six-thousand people?

MR. SACHSE:  No, not to the DeLuz Creek people.  I don't

see anything that hurts anybody there.

THE COURT:  I think as a practical matter you would only

have to serve notice on those people you think might contest

it.  That would be the Murrieta farmers and maybe some of the

big ranchers on the other tributaries.

MR. SACHSE:  I am not going to object to it.

THE COURT:  But you haven't served them now.

MR. VEEDER:  I served the parties that are here.

MR. STAHLMAN:  Just because we come into court --

THE COURT:  You are not prejudice.  I will deny your

motion for a stay without prejudice to its being renewed

upon the same documents in the file after a notice of appeal

is filed, on commission, however, that this motion for a

stay is served upon certainly Mr. Krieger and the big users

in the Murrieta and such other of the ranchers above the

Gorge as you think might later contest the action.  You did

at your peril if you don't serve some individual and he

later comes in and kicks about it.  Then of course you have

to have a new proceeding again.

MR. VEEDER:  I think that is true.  I think we always

proceed at our peril.

THE COURT:  But this is not too harmful.  Suppose you

serve the people I am indicating, and X comes in and says,

"I was not bound by that."  You make a new motion -- during

the appeal, one has jurisdiction to hear this -- make a new

motion, serve him and bring him in.

MR. VEEDER:  Don't I proceed at my peril right now?

I have notified these people.  If there is somebody, an

indispensable party, the burden is on them to show they are

an indispensable party.  If there is someone else, I have

got to let him come in and show he is affected.  I am saying

this, your Honor, that anyone who is seeking relief has the

responsibility of noticing the people who, he thinks, should

be apprised of it.  It would be our position, and it is my

position now, and I will always stand on the position --

21,353

THE COURT: Mr. Veeder, it is so obvious that Mr. Krieger's clients would be interested. Have they been served?

MR. VEEDER: I will have to check that, your Honor. But in any event, as I said before, your Honor, my feeling is that Fallbrook, Vail Company and California are the only ones that I would care to notice. I surely don't believe that Rorapaugh and the rest of them, if they wanted to come in and complain, or if they just wanted to show they are indispensable parties -- but it is not my burden.

MR. STAHLMAN: Why should we take the burden on his motion? This is a discretionary matter and I think it should be approached in the light of what are the reasonable things to do in the case.

MR. VEEDER: If that is your Honor's ruling, that is your Honor's ruling.

THE COURT: You are not hurt. And certainly the people in the Murrieta should be served and should have a chance to be heard on this.

All right, what about the Final Judgment?

MR. SACHSE: If we are in agreement -- I have read this hastily and reviewed it -- it looks to me like three and a half pages have to be re-done. The first three pages are perfect. I think it would be good if we could arrange --

THE COURT: It can be done overnight, can't it?

MR. SACHSE: I think so.

MR. VEEDER: We are trying to get it done. I want to work with Mr. Girard.

MR. GIRARD: We should have 44 ready for you to submit this afternoon.

MR. VEEDER: Let's go up and check it. I have the exhibits ready and it is already to go.

MR. GIRARD: Then all we have to do is to have typed the Final Judgment. It is just a question of typing it. In other words, it has all been discussed and I presume it can be signed as soon as it is ready.

MR. VEEDER: If we can get 44 done, that is what I want to do now.

MR. SACHSE: I would like to know where we are going on this final. Do we expect to get it done? I will get a girl to sit up until 10:00 o'clock tonight if you want to do it.

MR. VEEDER: My own view is we will get it done as soon as we can and get it signed up tonight or in the morning.

THE COURT: We are going to have to rule on your objections to this interlocutory judgment, noticing Number 7: "It was error for the Court to refuse to declare and determine that sub-irrigation upon the Santa Margarita coastal basin of natural grasses and forage on the surface of that basin is a proper riparian, beneficial use of water

of the Santa Margarita River." What is the factual situation there? What are the findings? What did I find?

MR. VEEDER: You said you would make no ruling one way or the other on the question of vegetative cover in the basin.

MR. GIRARD: Yes, that was reasonable in the light of the water storage, I believe.

MR. VEEDER: Yes, that is what you said. You said you would not rule on it.

MR. GIRARD: However, I would have little doubt that it is not in this watershed, because in order to sub-irrigate you have to keep the complete basin full of water.

MR. VEEDER: I would be glad to argue it.

MR. STAHLMAN: If it is good for them, it is good for Vail. We have had the same right. How could they call for this water to go downstream?

MR. SACHSE: Let's not argue these again.

THE COURT: There is no affidavit of service attached to the motion to stay. Maybe it can be filed later, but I am going to stay by my ruling. Actually, your motion is now premature because we haven't signed the Final Judgment. I suppose you should renew the motion after the final judgment is signed. Then I would propose to deny it without prejudice to its being renewed, on codition that you serve the major users on the Murrieta. And as far as the upstream

21,356

users above Vail Dam, I suppose you would want to serve them.

MR. VEEDER:  Service of counsel for the major parties is all that is required then.

THE COURT:  Yes.

MR. VEEDER:  Have you ruled on the objections that are filed, your Honor?  I think that is the last thing.

THE COURT:  I don't see that there is anything new presented.  Have counsel had a chance to look them over?

MR. GIRARD:  I have looked them over, your Honor. I think everything has been ruled on.

MR. SACHSE:  I think everything has been ruled on many times.

THE COURT:  The objection is overruled.

MR. VEEDER:  Should we bring down 44 this afternoon?

THE COURT:  Yes, bring it down.  I'll be here.

What time do you want to meet in the morning? Do you want to meet again this afternoon?

MR. GIRARD:  After Mr. Veeder gets 44, let's meet for just a minute and see what we have to do tomorrow.

THE COURT:  I will be available.  We will assemble in court whenever you are ready this afternoon.

(Recess.)

THE COURT:  The case is continued until 10:00 A.M. tomorrow morning.  All objections to findings et cetra are continued until 10:00 o'clock tomorrow morning.

21,357

(Adjournment until Wednesday, May 8, 1963 at 10:00 A. M.)

---oOo---

VOLUME 217

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

HONORABLE JAMES M. CARTER, JUDGE PRESIDING

- - -

UNITED STATES OF AMERICA,      )
                               )
               Plaintiff,      )
                               )
        -vs-                   )      No.   1247-SD-C
                               )
FALLBROOK PUBLIC UTILITY       )
DISTRICT, et al.,              )
                               )
               Defendants.     )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

San Diego, California

Wednesday, May 8, 1963.


APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | WILLIAM H. VEEDER, ESQ., Special Assistant to the Attorney General. |
| | CDR. DONALD REDD. |
| For Defendant Vail: | GEORGE STAHLMAN, ESQ. |
| For Defendant Fallbrook: | FRANZ R. SACHSE, ESQ. |
| For Defendant State of California: | FRED GIRARD, ESQ. |

SAN DIEGO, CALIFORNIA, WEDNESDAY, MAY 8, 1963, 10:00 A. M.

---o0o---

THE CLERK: 1 - 1247-SD-C, United States vs. Fallbrook.

MR. VEEDER: Are you ready to proceed, your Honor?

THE COURT: Yes.

MR. VEEDER: I would like, your Honor, at this moment to refer to what transpired yesterday in regard to the question of stay. The matter of notice and other factors were raised, and you indicated that everyone should have been noticed on this matter. Now, what we did, your Honor, was precisely what you directed me to do. You told me to submit to counsel copies of the proposal of the United States on the matter of the stay, which I did. You said --

THE COURT: Well, don't shift the burden to me. I probably said that, and you submitted it, and counsel replied. Now the question comes up as to whether I should rule on the stay without your serving the landowners in the Murrieta.

MR. VEEDER: There is only thing I want clear. I did precisely what you directed me to do. I want the record to show that. I also want the record to show there was no statement that I should serve anyone on the basis of your direction. If you desire me to proceed that way --

THE COURT: I am not criticizing you. If you want me to take the blame for it, I will take the blame, and I

should have them anticipated that arguments would later come

up.  I will take the responsibility.

MR. VEEDER:  I am not asking anyone to take the

responsibility.  I just want the record to show I did

precisely what your Honor directed me to do.

THE COURT:  I am not criticizing you at all.  I think

it is just better procedure to do it the other way.

MR. VEEDER:  May I inquire then, just so that I get the

"modus operandi" here, as they say, at the time of the

filing of the notice of appeal we should then renew our

motion in regard to the stay; is that correct, sir?

THE COURT:  Yes.

MR. VEEDER:  I just want to be sure.

THE COURT:  Your motion probably could not properly be

entertained by me anyhow until after this Final Judgment is

signed, so that our discussion yesterday was, in a sense,

premature -- although we understood that if the Final

Judgment is signed today, that I take it then we would talk

about the stay.  But it comes after the Final Judgment is

signed.  But I think it is better to wait until you file

your notice of appeal.

MR. VEEDER:  Precisely, your Honor.

I have tendered to your Honor Findings of Fact

Number 44.  Counsel have been given copies.  It is in form

to be signed, in conformity with the agreement that

Mr. Girard and I arrived at last evening.

THE COURT:  Well, in looking at page 24, paragraph 6 --
I suppose there is no problem:  "It is further ordered,
adjudged and decreed that the United States if the owner of
the rights to the use of all the waters in the springs and
other sources. . ." there is no effort here to renew your
"bucket at the end of the stream" theory.

MR. VEEDER:  No, your Honor.

THE COURT:  The owners of the rights to the use of water
on those lands where the waters exist.

MR. VEEDER:  I would like to clear the record again.
I never ever advanced the theory of the "bucket at the end
of the stream," your Honor.  Just so the record is clear.

THE COURT:  Just so the record is clear.

MR. VEEDER:  I recall, your Honor, I stipulated
originally that we had certainly no intention of claiming
for Camp Pendleton any Forest Service rights or any --

THE COURT:  The record will show what you claimed
heretofore in the past.  But presently the record shows
that you disclaim any right to have a bucket at the end of
the stream for waters which fall --

MR. VEEDER:  Only for blood, your Honor.

THE COURT:  Is this ready to be signed, then?

MR. SACHSE:  Yes, your Honor.

MR. GIRARD:  Yes, your Honor.

MR. VEEDER:  In that regard, on page 5 of the **Final**
**Judgment** and Decree, gentlemen, we should write in "May 8."

THE COURT:  Mr. Clerk, here is a copy of 44.

On page 8?

MR. VEEDER:  On page 5 of the Final Decree the date
should be entered, your Honor.

THE COURT:  Line 32.

Is this Final the same as the one that was lodged
on May 3?  It is not.

MR. SACHSE:  No.

MR. VEEDER:  There are revisions in it.  I call your
attention, your Honor, to the language that was added to
paragraph 3.  Your Honor might want to clarify it to some
extent.  I am not sure.  You see line 19?  Are you with me
there, Fred?

MR. GIRARD:  Yes.

MR. VEEDER:  "The continuing jurisdiction of this
Court reserved in this judgment shall only be exercised
during the pendency of an appeal upon an application to the
Court of Appeals for the Ninth Circuit for leave to so
proceed, and upon the granting of such application by the
Court of Appeals and the restoration of jurisdiction to the
Court for such limited purpose."  Now, to a degree, that is
a ruling on our motion for a stay in advance of filing the
motion for a stay.  Isn't that about what it amounts to,

your Honor?

MR. GIRARD:  No.

MR. SACHSE:  I don't think so.

THE COURT:  I don't think so.  I think it is just what it purports to be.  That we reserve continuing jurisdiction, but we understand that we can only exercise that during the appeal with the permission of the Circuit.

MR. VEEDER:  I am not sanguine on the subject, but if we were to get a stay in regard to certain aspects of it, you will simply consider the motion when it is presented to you irrespective of that sentence; is that correct, your Honor?

THE COURT:  Right.

MR. VEEDER:  Thank you.

THE COURT:  Now, we have signed all the interlocutory judgments, and all parties have been given an opportunity to object, and the Court, I take it, now is in a position to overrule all objections that have been made -- this has been done before, but repeat the ruling -- and we are now prepared to enter the Final Judgment.

MR. GIRARD:  Yes, your Honor.

MR. STAHLMAN:  Your Honor, before that is done, I would like the record to show that there were proceedings on two occasions in the month of February 1959 that occurred in Chambers that were not written up, and I would at this time

request the Court to have those prepared and made part of the record in this case.

MR. VEEDER:  I am going to interpose an objection to that, your Honor.  I am not going to agree to that at all. I think that it is a situation where, if we want to re-open an unhappy circumstance in this matter, that is all right, let's open it all the way or else not at all.

MR. STAHLMAN:  I make that motion by reason of the fact that it is my recollection that during the taking of that testimony which was not written up, at the conclusion of it your Honor indicated that at the termination of the case your Honor would then take up the matter.  That is the reason I make the motion.  I think there are matters in there that are pertinent to the case.  I don't know what other counsel think.

MR. SACHSE;  Your Honor, I have no concern or interest in the contraverse that, I understand, is represented in those two days' transcript.  But your Honor may recall that neither Fallbrook nor the State of California were present at some of these closed hearings in Chambers, and if there is a possibility of an appeal I believe we should at least have the opportunity of reviewing that transcript.  I intend to take no part in the controversy, but for all I know there might be matters of great concern on appeal, and I would join in the request that a transcript of those closed

21,365

proceedings be released and made part of the transcript in the case.

THE COURT:  First, gentlemen, there is no information I have that there were two instances where testimony was taken out of the presence of the parties.  I have a file which, when the matter was raised yesterday, I dug out, and in that file there is the reporter's original -- that is, the copy on the front and the back so that it can be duplicated -- and it runs ten pages.  There is no date on it.  I tried to find where it occurred and I couldn't.  I have no knowledge of any other proceeding than the one outside the proceedings.  This one that I have has certain dates in it.  First it says, "Mr. Veeder, on the 27 day of last month, called Mr. Hall in Los Angeles. . ."  That was January 27, 1959, as I put it together.  So this occurred, then, sometime in February.  We are talking about the last month.  The only other reference to a date in here in on page 5; I say, "I propose to go into this matter on the 24th or the 25th."  So that apparently would be the 24th or 25th of February.  Mr. Lincoln said he wanted the matter to be heard on the 27th.  I take it that is February.  I don't understand this.  Mr. Lincoln said, "May I suggest that the matter not be heard on the 27th.  I would suggest the 24th or 25th."  And I told him I didn't see how it concerned him.

MR. VEEDER:  Let's face the fact, your Honor, that if

this matter is going to be opened up, I necessarily have to call some witnesses, and necessarily I ask that the record be held open and that no decree be entered at this time.  I am not going to let this go in, in this way.  I talked to your Honor about it, I referred to your Honor over a year ago, eighteen months ago.  If George wants to fight about it, it suits me.

MR. STAHLMAN:  Your Honor, it is not a question of fighting about it.  It is just a question of calling the Court's attention to a circumstance that occurred.

MR. VEEDER:  Your Honor, we are going to do what I say or -- because so far as I am concerned I have let the thing rest because of an old man.

THE COURT:  Let me first say this.  I have been unable to find this part of the transcript where this excerpt fits in.  My recollection was that this was discussed in Chambers.  I don't see why Mr. Sachse was not here.

MR. SACHSE:  There were two discussions, your Honor. I recall very perfectly that Mr. Moskovitz and I were quite concerned because there were two discussions at which all other parties were present in Chambers except us.

THE COURT:  You were not invited in?

MR. SACHSE:  Yes, your Honor.  Then at the close of the second one we were invited in, and I know Mr. Swader was present on that occasion because that is the occasion

your Honor reviewed the matter briefly and said you wanted
this dropped until the close of the case.

THE COURT:  I was going to say, why would Mr. Lincoln
be invited in, if you were not?

MR. SACHSE:  He was in on the last one.  I think that
is what you have there.  And I am sure I was not.

THE COURT:  On the last one?

MR. SACHSE:  Everybody was.

THE COURT: I have no indication that the first one was
reported.

MR. SACHSE:  It may not have been.

THE COURT:  If it was reported, it was not written up.
But my recollection was that I inquired of counsel whether
there was anything about this matter that would keep the trial
from progressing, and I was assured that there was not, that
we could go ahead.  And at  one time there was even at
least the thought in my mind, I find from my notes, that I
was going to call Mr. Hall as my own witness, if necessary,
and that either party might cross-examine him.  But is was
agreed, and I think it is in the record somewhere, that the
case would proceed and this would be put over until after
the conclusion of the case.

MR. SACHSE:  That is correct, your Honor.

MR. STAHLMAN:  That is correct.

THE COURT:  So that actually it doesn't come up now

before the Final Judgment.  It should come up after the

Final Judgment, at the conclusion of the case, so far as I

am concerned.

MR. VEEDER:  I can't permit it to be a part of the

record in this case.

THE COURT:  Secondly, my thought in the matter is this.

I don't see how this partial transcript that I have here does

any good as part of the record.  It has nothing to do with

the merits of this case.  Mr. Hall was called earlier.

No one has since wanted him called.  No one has suggested

that I call him as the Court's witness.  There is no

problem on that.  We are all over the trial of the issues.

But this partial transcript was made.  My reaction would be

to find where it belongs in the transcript, to file it with

the clerk and to order it sealed.  If the Circuit wants to

look at it, all right.  Otherwise, there is nothing to hide.

But I don't see that it has anything to do with the merits

of this case.

MR. VEEDER:  But your Honor, here is why it does have

something to do with the matter.  I simply put it to one

side, I left it to one side.  It remains there.

THE COURT:  That is what I am proposing to do.

MR. VEEDER:  Yes, but we will be in this position.

George will come along and say, "here's a transcript," and I

will not have an opportunity to respond to it.  I have

forgotten it, I have written it off.  If he wants to make

something more out of it, fine.  But I say if we are going to

have anything done with it at all, let's fight.

THE COURT:  Look, Mr. Veeder --

MR. VEEDER:  That is my view, your Honor.

THE COURT:  Look, Mr. Veeder, a transcript was taken by

an official court reporter, at which time certain parties

were present.  I have no right to destroy this transcript or

to conceal it.  I probably have no right to keep it in my

file.  What I would propose to do would be to give it to the

clerk -- find out where it belongs in the orderly list of

our transcript, what the page number should be -- seal it,

make an order that it has nothing to do with the merits of

this case, and if somebody can convince some judge who would

have a right to look at it that it has something to do with

the merits, it can then be made part of the official

transcript of the case.  My personal view is that it has

nothing to do with the merits of this case.

MR. VEEDER:  And are you going to so order?

THE COURT:  I would so order.  That is what I propose

to do.

MR. STAHLMAN:  As I indicated, at the time when the

transcript is written up you will find at the conclusion of

it when we were discussing what disposition would be made

of this matter, your Honor indicated you would take it up

at the termination of the case.  As I indicated to your

Honor, I thought it was my duty to bring it to the attention

of the Court, and it affected our case and it should have been

brought to the attention of the Court because, as I expressed

at the time, I thought this was reprehensible conduct on the

part of an officer of this court.  And I will indicate to the

Court that there are other investigations that were made that

substantiated the statements I made to your Honor in

Chambers -- they were done by an independent investigation,

and that there is other evidence available that reflects on

this situation as it may affect the parties invovled.

I will say, however, at this time I am not telling

the Court what I think the Court should do in this matter.

Whatever your Honor does I am going to be satisfied with.

If your Honor desires other and further information, I will

be very glad to assist in any way I can to  indicate to your

Honor where this other material is.  If your Honor desires

not to do anything with it, that is up to the Court;

I think Mr. Veeder would like to forget it.  If your Honor

wants to forget it --

MR. VEEDER:  Let's open it up, your Honor.  He wants

to fight about it.  Don't sign the decree.  Let's have this

out.

MR. GIRARD:  Let's sign the decree, your Honor.

Let's not get hysterical, Mr. Veeder.

MR. SACHSE:  Let's not get hysterical.

MR. VEEDER:  I am not getting hysterical.  If Mr. Stahlman wants to come up with this again --

MR. STAHLMAN:  I am merely doing what the Court said at that time -- taking it up at the end of the case.

THE COURT:  I said I would take it up at the conclusion of the case, and the conclusion of the case means after I have signed the Final Decree.  And I have indicated what I propose to do.  But if I am even going to do that, counsel has to assist me by finding where in the record this thing belongs.  I just don't want to keep a private transcript in my file, that's all.  I think I have said enough now that the Circuit could know it has nothing to do with the merits of this case, and therefore if it is brought up before them -- they might want to look at it, and they probably would arrive at the same conclusion that I arrived at and that would be the end of it.

So let's proceed with the Final Decree.

MR. SACHSE:  Before the Final Decree is signed, I would like to make for the record a statement on behalf of Fallbrook Public Utility District and the many individuals, small defendants, whom I represented.

I would like the record to show our very deep gratitude to the State of California for the legal, engineering and technical assistance they have given us,

and I am sure that we could not have hoped to present the case in as effective a manner as we did had it not been for the cooperation of the State of California throughout this second trial.

MR. STAHLMAN: Your Honor, I would like to subscribe to what Mr. Sachse has said and add thereto, also, that I feel that the assistance of the Attorney General's office, throught Mr. Fred Girard, has lent a great deal of aid and assistance in legal situations that were complex, and I feel that it was of great assistance to the Court as well as to the many people who were involved in this case that we did have a man who was able to give the aid and assistance that he did give in legal matters pertaining to the case.

THE COURT: These are nice compliments to Mr. Girard, and the Court subscribes to them. I think Mr. Girard in this case has demonstrated his lawyer-like training and ability to a marked degree. He has done an excellent job in being of assistance to the Court, as well as of assistance to counsel. The State of California, of course, was in this case pro patriae and therefore was not particularly aligned with one side or the other on various issues. On some of the issues, at least, the position of the State of California has been different than that taken by Fallbrook and by Vail and the United States. In other instances California's position has coincided with the position of one of the other

parties.

If we are going to pass out compliments, I think we should not ignor Colonel A. C. (commonly known as "Ace") Bowen. I think that the Colonel has been a big factor in reducing the size of this case. I have in mind the fact that his soil surveys have been uniformly accepted time and time again by parties, many of whom did not have counsel, and those with counsel, and he has shown a great grasp of the problems in this watershed. Of course, it goes without saying he has done a terrific job for the Marine Base in his combatting the intrusion of salt water, in the conservation and re-use of water, in the regulation of the use of water, in the spreading of waters in gravels to get as much into the basin as possible. I think the Colonel has been, although not a lawyer, a tremendous factor in this case. My compliments to the Colonel and to his staff -- Colonel Redd and all the people who work for him.

MR. STAHLMAN: May I add something to that, that I think is important. The Court will recall that years ago when this case was in its early stages there was a great deal of feeling and public prejudice.

THE COURT: Yes.

MR. STAHLMAN: I recall going to a meeting where Colonel Bowen happened to be there and I thought they were going to ride him out of town on a rail -- it got pretty hot

1   and heavy, and I recall an occasion when a United States

2   Congressman asked him what he was doing at a meeting such as

3   this, and as the case proceeded and as he made these various

4   studies for different landowners throughout the area, these

5   many small people, the entire attitude in the area here

6   changed by reason of the contact with the operations of the

7   staff of the Marine Corps under Colonel Bowen.  It became an

8   entirely different attitude toward the knowledge of the

9   aspects of this case.  So that when we proceeded to the

10  courtroom here it finally changed to the point where there

11  was great confidence and good feeling rather than this

12  atmosphere that had existed in the early stages of this case.

13  I think he has demonstrated that he is not only a good

14  engineer, but a very fine public relations' man.

15      MR. SACHSE:  I will concur in the comment of Mr.

16  Stahlman and Mr. Girard.

17      THE COURT:  The bailiff just communicates that I have

18  upgraded Commander Redd to Colonel.

19      COMMANDER REDD:  Thank you, your Honor.

20      THE COURT:  I didn't do that intentionally.  I hope this

21  may transpire some day.  I want the Commander to know I have

22  no such authority to give him that elevation.

23      Apropos of what Mr. Stahlman said, this is

24  entirely correct.  This was first evidence, of course, in

25  the Fallbrook area where there had been the great newspaper

publicity about how the Government would take all the water

away from the small farmers in the Fallbrook area, and when

it became apparent that the Colonel was testifying that the

waters underlying a lot of this ground in the Fallbrook area

were local, vagrant, percolating waters and not part of the

stream system, this was a big factor in restoring confidence

This happened throughout the watershed.

Well, we have complimented everybody but Mr.

Sachse. Like I say, he is a very able lawyer and has done

a terrific job for his clients.

Mr. Veeder, whom I consider a dedicated public

servant, who, I hope some day in his lifetime, will settle

a lawsuit. No lawyer should practice all his life without

having --

MR. VEEDER: I win them, your Honor.

THE COURT: -- the terrific emotional satisfaction that

comes from once having settled a lawsuit. And I hope that

sometime in your career you will have that experience.

MR. VEEDER: As long as I am right, your Honor, I never

settle.

THE COURT: However, you have been dedicated to your

cause, and you also have been helpful to the Court on many,

many occasions, although occasionally you have caused the

Court a good bit of work and have had continually to combat

the urging of sovereignty, which was disavowed before the

1    Congress by the stipulation.

2       MR. VEEDER:  Ride on, your Honor, ride on, ride on.

3    It has been four years you have ridden me good and hard.

4    Let's finish it up this way.

5       THE COURT:  No, no.  You never can tell, the case might

6    eventually turn on the question of sovereignty.

7       MR. VEEDER:  I think that Dugan vs. Fresno unquestion-

8    ably will have the effect on this Court that it had on

9    Pierson Hall's court.

10      THE COURT:  If the Supreme Court or the Circuit Court

11    thinks that high officials of the Justice Department can go

12    before the Congress of the United States and in public

13    hearings disavow theories of sovereignty and that written

14    stipulations can be signed and entered into by Government

15    officials outlining the way a case is to be tried -- that

16    California Law shall apply, the Government claims only such

17    rights as a private person would have acquired when they

18    bought the Santa Margarita -- if an AppellateCCourt, in spite

19    of those two things, still thinks sovereignty is involved

20    here, I don't know.

21      MR. VEEDER:  Shall we argue it again, your Honor.

22      MR. GIRARD:  Let's hope the reference by Justice

23    Douglass in that Indian case, that great nations like great

24    men should keep their word, will prevail.

25      THE COURT:  Incidentally, Mr. Veeder, I was not trying

1   to ride you.

2        MR. VEEDER:  I don't mind it, your Honor.

3        THE COURT:  I was trying to pay you a compliment, because

4   I have stated publicly, and I have stated privately to your

5   superiors, that you are a dedicated public servant.

6             I think we should, sort of in summary, notice that

7   we have spent about 216 days, we have about 22,000 pages of

8   transcript, the Master had about thirty-five days of

9   hearings and 3,200 pages of transcript, and the Clerk

10  advises me that there are roughly 2,300 exhibits.

11            Does that count the subdivisions of the exhibits?

12       THE CLERK:  Yes, your Honor.

13       THE COURT:  So that as we come to the end of the record

14  and say farewell to this "monstrosity," if there is any

15  better name for it, it has taken a lot out of all of us.

16       MR. VEEDER:  Keep a candle burning in the window for the

17  time when it comes back, your Honor.

18       THE COURT:  Well, Mr. Veeder, I retire in about five and

19  a half years and there is a good possibility that if it

20  comes back I wouldn't have to re-try it.  It will take that

21  long probably to get it back here.  There will be some

22  younger judge who will be willing to welcome you and other

23  counsel and go over it again.

24       MR. VEEDER:  Too bad.

25       THE COURT:  Are you ready to have me sign the Final

1     Judgment?

2          MR. GIRARD:  Yes, your Honor.

3          THE COURT:  All right.

4          MR. GIRARD:  Because of the length of the case, we have

5     pens -- that will probably result in some difficulty in

6     signing it -- and we are going to give those to Colonel

7     Bowen, who will put them on a plaque.

8          MR. SACHSE:  Colonel Bowen has brought a photographer.

9     May he use him in the courtroom?

10         THE COURT:  Not in the courtroom.  I will sign it again

11    at my desk.

12         MR. SACHSE:  All right.

13         THE COURT:  We will use them all here, if they work.

14    Are you charging the State of California for these pens?

15         MR. GIRARD:  No, your Honor, this is a labor of love.

16              I am sure Mrs. Girard, like Mrs. Veeder, will be

17    quite tickled that this is over.

18         THE COURT:  Well, Mr. Veeder will be sent out on some

19    other long case.

20              There you are, gentlemen.

21         MR. GIRARD:  I will give these pens to Colonel Bowen.

22         MR. SACHSE:  Thank you, your Honor.

23         THE COURT:  Now, let's take a short recess.  Does

24    anybody have any other clues as to these dates?

25         MR. VEEDER:  Are you going back on this thing again?

THE COURT: I want to get rid of this transcript I have.

Take a short recess.

MR. VEEDER: I would like to be on the record on this, if I may.

THE COURT: All right, still on the record.

MR. VEEDER: There is one thing, Fred, that I am interested in now. Is there notice to be sent out of the entry of the judgment?

MR. GIRARD: Yes.

THE CLERK: I just checked with Colonel Bowen and Commander Redd, your Honor.

MR. VEEDER: All right, they are going to be sent out. Here is the situation that came up. There are a large number of transfers of property et cetra where there are a great number of people who are named defendants who are no longer at the addresses et cetra. We would like to drop them out, if we could. It would involve about a thousand separate envelopes and a thousand separate notices, and I truly believe that the people have moved away -- you can't find them.

THE COURT: Do you have a list of them that you can file with the clerk so that you can make some kind of record?

MR. VEEDER: I will have a list made, your Honor.

THE COURT: A list of people to whom mailings have heretofore been made and letters have been returned or word

1    has been received that they have moved and you have no

2    further address.

3        MR. VEEDER:  That is right.  And have your Honor enter

4    an order to direct the clerk to drop those off.

5        THE COURT:  All right, prepare the list, and the clerk

6    will make a minute order that no notice need be sent to

7    these people.

8        MR. VEEDER:  Also, do you desire us to send copies?

9    Mr. Krieger and those people will be notified, so that if

10   they want a copy it is all right.

11       MR. SACHSE:  I am going to notify them by phone.  I am

12   sure they are going to want copies of the judgment.

13       MR. VEEDER:  Yes.

14       THE COURT:  We will take a short recess and reassemble

15   here.

16            (Recess.)

17       THE COURT:  Mr. Girard was excused, but Mr. Sachse and

18   Mr. Stahlman are here.

19            We have found the part of the transcript where the

20   matters -- some pages have been written up, unnumbered, and

21   were in my private file -- involving this controversy

22   between Mr. Veeder and Mr. Stahlman involving Mr. Hall, and

23   they come in following page 8,812 and before page 8,813.

24       MR. VEEDER:  What is your volume on that?

25       THE COURT:  That is Volume 77.

1     MR. VEEDER:  And the page on that?

2     THE COURT:  After page 8,812 and before page 8,813.

3   The record shows that this was on February 19, 1959,

4   Volume 77.  It shows that we adjourned to open court at

5   2:38 P.M.  We apparently had met in Chambers at 2:00.

6         The reporter will now write up -- apparently part

7   of that was written up and I found it in this private file

8   of mine -- the reporter will write that up in entirety,

9   number it 8,812A, 8,812B, et cetra, and make a transcript

10   of it.  Copies will be available to counsel as any part of

11   the record.  The original will be delivered to the clerk and

12   it will be by the clerk's seal as not a part of the record

13   that has any bearing on the merits of this case.  It will be

14   transmitted along with the other papers to the Circuit.

15   It may be unsealed by order of this Court or by order of

16   the Circuit.

17         Now, the other part of the record that pertains

18   to this matter, so that we will have it all before us,

19   appears in Volume 78, beginning at page 8,939, where the

20   Court says:

21         "I have been thinking about the matter we discussed

22       yesterday, and my present information is to proceed

23       with this lawsuit and not hold any hearings on any

24       other matters except the matters concerning the

25       trial of the merits of this case until this case

is over with.  If anybody wants to object to that procedure, they may do so."

I state again, on line 24:

"It will be postponed until this case is concluded."

Then I inquired as to whether any party was asking for a mistrial, if the parties were willing to go ahead with the suit, and apparently they were.  And it winds up at page 8,941, line 7.  That is all I have been able to find in the record about it.  The portion from pages 8,939 to 8,941 is already in the record and will be part of the record that goes up on appeal, but it has no bearing on the merits of this contraversy, except that the part referred to in Volume 78, on February 20, shows that there was no reason to take any other action at that time than the action that I took.

MR. VEEDER:  And you are specifically ruling that this has no bearing on the case?

THE COURT:  No bearing on the merits of the interlocutory judgments or the final judgment.

All right, gentlemen, thank you very much.

MR. SACHSE:  Thank you, your Honor.

(Adjournment.)

---o0o---

# C E R T I F I C A T E

I hereby certify that I am a duly appointed, qualified and acting official court reporter of the United States District Court for the Southern District of California.

I further certify that the foregoing is a true and correct transcript of the proceedings had in the above-entitled cause on the date specified herein, and that my said transcript is a true and correct transcription of my stenographic notes.

Dated this _____ day of _____, A.D., 1963.


_____
                              Official Reporter

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

- - -

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1247-SD-C |
| ) | |
| FALLBROOK PUBLIC UTILITY ) | |
| DISTRICT, et al., ) | |
| ) | |
| Defendants. ) | |

- - -

C E R T I F I C A T E

I hereby certify that I am a duly appointed, qualified
and acting official court reporter of the United States
District Court for the Southern District of California.

I further certify that the foregoing is a true and
correct transcript of the proceedings had in the above
entitled cause on the dates specified therein, and that
said transcript is a true and correct transcription of my
stenographic notes.

Dated at San Diego, California, this 29th day of
August , 1963.

*John Swader*
Official Reporter

_____
Official Reporter

_____
Official Reporter