# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

BEFORE HON. JOHN M. CRANSTON, SPECIAL MASTER

UNITED STATES OF AMERICA,
    Plaintiff,
vs.
FALLBROOK PUBLIC UTILITY DISTRICT, et al.,
    Defendants.

No. 1247-SD-C

## REPORTER'S TRANSCRIPT

**Volume:** V (a)
**Pages:** 1 - 13
**Date:** June 4, 1958
**Place:** Fallbrook, California

FILED
SEP 24 1963
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

RANDOL, FIVECOAT & STEWART
CERTIFIED SHORTHAND REPORTERS
1113 FIRST NATIONAL BUILDING
SAN DIEGO 1, CALIFORNIA
BELMONT 9-4191

1    MR. SACHSE: A situation has arisen that compels me to make
2  a formal complaint for the record of the conduct of the United
3  States in these proceedings. I am not confining my protest to
4  this statement, but I am also preparing certain motions directed
5  to Judge Carter that I hope will correct the situation.
6      Judge Carter has stated, on a number of occasions, that he
7  expected the parties in this case to cooperate with each other
8  in the exchange of pertinent information. The United States
9  has relied upon that understanding and has obtained from the
10 State of California literally hundreds of pages of documents from
11 State files. I have promptly supplied the United States with
12 whatever information has been requested of my clients. But the
13 United States has not seen fit to extend the same courtesy to
14 the defendants I represent, and I wish to make it clear that
15 my complaint is made not only as attorney for the Fallbrook
16 Public Utility District but also as attorney for 30-odd land-
17 owners in the De Luz Creek watershed.
18     Now I have these specific complaints:
19     1. On May 28 I wired the U.S. Soil Conservation Service
20 for certain photographic soil maps of the De Luz watershed. I
21 need those maps to prepare the cases of the individual De Luz
22 defendants. I received a prompt reply telling me the cost, but
23 stating that I could only obtain the maps upon authorization of
24 the Area Conservationist. After a half-dozen long distance
25 phone calls I was advised yesterday that the Soil Conservation

Service headquarters had issued instructions that I was not to be supplied with the material. I was further told that there was no point in trying to get a court order as it would take too long and the material would arrive too late for my use.

2. The same day I wired the Berkeley office of the Soil Conservation Service asking that they sell me a copy of their manual: "Guide for Preparing Soil Survey Legends". I require this material in connection with the defense of my individual De Luz defendants. On June 2nd I was advised that they had no authority to supply the material to me, but that it was being sent to Mr. Deutz, U. S. Attorney in Los Angeles. I tried to reach Mr. Deutz all day yesterday without success.

3. On May 12 I addressed a letter to Solicitor General Rankin asking for a copy of a certain engineering report on Camp Pendleton which is vital to the preparation of Fallbrook's case. I have not received the courtesy of a reply. On May 26th I raised the question to Mr. Veeder and Col. Robertson and was advised that the material would not be made available to me.

4. No single request I have made of the United States has been met within the time limits prescribed by the Federal rules.

5. I have finally received an answer to Fallbrook's interrogatories that is vague, evasive and non-responsive. I am forced to prepare a formal motion for more specific answers.

6. The United States has not answered my interrogatories

1  under oath, as is required by Federal rules. This is of extreme
2  importance since at least one answer is patently and demonstrably
3  false--whether through error or through intent, I do not know.
4  But without the signature of someone who can be cross-examined
5  on the statement it is difficult if not impossible to bring it
6  to the attention of the Court.
7      Now, these matters are serious. I believe they represent
8  a conscious attempt by the United States to prevent me from
9  preparing my case, to prevent me from obtaining facts and to
10 ham-string my efforts in behalf of my clients, thus forcing a
11 decision based upon physical and financial exhaustion rather
12 than on the merits. So counsel need not wait for a transcript,
13 I have a copy of this statement for Mr. Veeder.
14      THE MASTER: Mr. Sachse, you are making a motion--
15      MR. SACHSE: I am preparing a number of motions.
16      MR. VEEDER: I want to respond to this so that Mr. Sachse
17 has the truth. I want that clear.
18      In regard to the matters of the Soil Conservation data,
19 I had no word of it whatever until yesterday when I received a
20 phone call around 12 o'clock from Mr. Sachse. He advised me
21 that he attempted to secure this data concerning which I had
22 never heard--I had no knowledge about it--and I was completely
23 amazed that the inquiry was presented, and I think he was a little
24 self-conscious in presenting it because he apologized by reason
25 of the fact that he did not like to interrupt me with such

1  trivial matters. Now that was his statement, he said he didn't
2  want to interrupt me with such trivial matters and he was sorry
3  to cause me difficulty.
4      I told him that while I had no knowledge in regard to this
5  data that he wanted, and had he properly prepared his case he
6  would have had it a year ago; the matter could be obtained.
7      He advised me, by conversation with the Soil Conservation
8  people at Escondido--I think he said--that it was there--and
9  would I call Escondido and tell them to release it.
10     I advised him that I was in the preparation of our lawsuit,
11 and that if the Escondido man would call me I would personally
12 tell him to release the data to Mr. Sachse. Now that is for
13 number 1.
14     In regard to the material that he wanted, he wanted a
15 Guide for Preparing Soil Survey Legends, and he wanted to obtain,
16 as I understand it, the aerial photographs of the Soil Conserva-
17 tion Service. I think the flight was made in 1938 and the data
18 was prepared in 1955, yet he wants to wait until now--I have no
19 knowledge why--but that is beside the point. I advised him that
20 we had aerials, and I am sure he access to them--indeed I gave
21 him a full complete copy of our aerials and he certainly could
22 use those.
23     Now, in regard to contacting Mr. Deutz in Los Angeles, I
24 advised Mr. Sachse that the matter was being handled by us in
25 this office here and that we would be very glad to handle the

1 matter for him.

2 Now I am referring specifically to his number 3. By the
3 way, I have not yet been called by these Escondido people. I
4 stand ready to get this belated data for which he waited so long.
5 I still haven't heard from Escondido in regard to it. It cer-
6 tainly is material that he is entitled to if he wants, but why
7 he wants it I have no idea.

8 Now, in regard to the letter of May 12, I have made a con-
9 scious effort to discuss matters with Mr. Sachse. He asked me
10 for material. I told him at once, as soon as we could find out
11 about it, it would be released to him. That is in accord, in
12 full accord with the stipulation which the Fallbrook Public
13 Utility District has entered into with the United States of
14 America by specific stipulation and we have agreed where, for
15 military reasons the matter would not be available, that would
16 have to be it. So this attack upon Col. Robertson and me
17 approaches the absurd.

18 Now, no single request has been made within the time limit.
19 In each instance I have talked to Mr. Sachse about it and, again
20 I realize it is not in order to talk to him as a gentleman and
21 a lawyer. Hereafter we will treat him on the same basis as--
22 I won't finish that statement.

23 THE MASTER: I think you better not indulge in personalities
24 on either side.

25 MR. VEEDER: He entered into a great many against me a

1  moment ago and I realize I am not supposed to respond in these
2  matters, but I am quite provoked at his conduct.
3  Now, in regard to the answers to the Fallbrook interroga-
4  tories, that is a matter of--I don't know why he wants it to go
5  into the record--if he wants to file a motion why doesn't he do
6  so.  I will tell him from our standpoint his request for inter-
7  rogatories were largely absurd.
8  Now, in number 6 the answer to the interrogatories, I am
9  extremely anxious to know now, and I will give him an opportunity
10 to interpose a statement--because I want to make some more
11 statements about this--which of the statements that you have
12 received are demonstrably false, because I think it is important
13 that I know that now, Mr. Sachse.
14 MR. SACHSE:  I think you know.  You have a staff of
15 attorneys and a staff of experts.  Go to work and find it.
16 MR. VEEDER:  In other words you will not--
17 MR. SACHSE:  I will not.  It is patently and demonstrably
18 false.  Now go and find it.
19 MR. VEEDER:  I want that statement in the record.
20 Now, in regard to the small users in De Luz, I have abso-
21 lutely no information of how we have--and this is the only part--
22 I realize that Mr. Sachse is going to try to get out of trying
23 the lawsuit if he can--there is only one thing that I want to
24 know, and I am entitled to know.  We have done all we can for
25 the small users in the De Luz Creek area.  We are continuing to

1  do so, and if there is something that we have not done I owe it
2  to my boss; I owe it to the people in De Luz, to be advised at
3  once where we have fallen down, because we have an obligation to
4  provide those people with the best service we can. I thought
5  we had. I have no knowledge and I have never received, I don't
6  think, a complaint from people in the De Luz area. I am going
7  to inquire from Colonel Bowen.

8  Have we never received a complaint from the people in
9  De Luz about our efforts to help them?

10  COLONEL BOWEN: No.

11  MR. VEEDER: Now it is a shocking experience to hear such
12  statements as these, because I have just been feeling that with
13  Judge Carter's efforts to outline to the people the true objec-
14  tives of the suit--and your Honor's effort to meet with the
15  people--has been most helpful. I think that the suit is on the
16  road to being tried as it should be. Now, if Mr. Sachse is
17  attempting to pour some gasoline on the fire and to revive it,
18  I am terribly sorry about it because I deeply feel that the
19  United States of America must have this ajudication. I think it
20  is good for everyone.

21  So everyone of these bitter attacks are childish, whining
22  and can do nothing but stir up the people again in a manner that
23  is shameful. I have lived through it for seven years and we
24  can go on living with it, but I protest strongly that a member
25  of the Bar would conduct himself as Mr. Sachse has conducted

1  himself this morning.

2  THE MASTER: I don't think that personal statements or
3  comments from one counsel concerning the other counsel on either
4  side have any place in this matter.

5  Now, Mr. Sachse, if you have some motions to present, you,
6  of course, have the right to present them and should present them.
7  I take it from this interchange that Mr. Veeder has indicated
8  that the information which you have requested will be made
9  available to you to the extent that it is not within security
10 regulations, and if it was within security regulations the only
11 means by which you can request it is by some type of a formal
12 motion.

13 MR. SACHSE: That has been done, your Honor.

14 I would like to clarify this. Some of Mr. Veeder's state-
15 ments are correct and some are not quite. This will be no
16 personal interchange--

17 THE MASTER: I don't want any more personalities.

18 MR. SACHSE: No more personalities. He is quite correct,
19 I called him yesterday and I apologized for bothering him. I
20 told him that I was under the impression that I could get this
21 material without having to go through him that was the reason
22 for my apology.

23 He is quite correct, he told me to advise the Escondido
24 Area Conservationist--withdraw that. He first told me to wire
25 Portland, their office, that he approved the release of the

1 material. I pointed out to him that I didn't think my statement
2 to that effect, to Portland, would be much good, and he then
3 suggested that I have the Area Conservationist in Escondido
4 call him.

5     I called the Area's Conservationist in Escondido and told
6 him. Mr. Veeder's message. He said that he could not release
7 the material; that Mr. Veeder didn't mean anything to him. I
8 told him I would be compelled to get a court order and it was
9 then I was told that there was no point in trying to get a court
10 order because it will take too long and the material wouldn't
11 be available by the time I needed it.

12     Now that is the windup of the Escondido conversation on
13 that point. I hadn't yet advised Mr. Veeder. I have nothing
14 further.

15     THE MASTER: Mr. Veeder, I suggest that you might contact
16 the Escondido office and ascertain if that is their position and
17 see if that can be changed without the necessity of proceeding
18 to the Court.

19     MR. VEEDER: The thing that is quite amazing to me, your
20 Honor, is that the material requested is a book, a Guide on
21 Preparing Soil Survey Legends, and I don't know why--I don't
22 believe it could even be held up. I think it is a report that
23 is broadcast and that anybody can get it.

24     THE MASTER: In that event, you can probably obtain that
25 through the Escondido office by personal conversation with the

1  man.

2  MR. VEEDER: I didn't know there was a Soil Conservation
3  office in Escondido.

4  MR. SACHSE: Your Honor, there is one in Fallbrook and
5  they refused to give it to me. They wouldn't let me have it and
6  they wouldn't let me bring it home.

7  MR. VEEDER: Let me bring out one more word which is
8  extremely important. Certainly the refusal of the Soil Conserva-
9  tion people, whatever they are doing, does not come from anyone
10 connected with this lawsuit. No one--I will raise my hand--I
11 am so amazed because it is such routine material.

12 Now, in regard to the aerials, I don't know where those
13 aerials are held or maintained. Now, when I want aerials I con-
14 tact the Salt Lake office. Isn't that right, Colonel Bowen?
15 Isn't that the place? I think everyone can get it.

16 MR. SACHSE: Mr. Veeder, I have a telegram in the file
17 telling me exactly what it would cost; exactly how much postage
18 I have to send, and they say they can give them to me from their
19 office to which I wired, and the office name was given me by
20 the local Soil Conservation Service, so I went to the right
21 place, and they told me how much it would cost for airmail, how
22 much to send for postage but he said "I can't have them."

23 THE MASTER: Would you put those wires into the record?
24 MR. SACHSE: I don't have them here. I will bring them.
25 MR. VEEDER: I am going to open this thing up because it

11b

1 is extremely important. Everyone is entitled to aerials; they
2 are public property. All you have to do is pay for them.
3    MR. SACHSE: I will bring the wires in this afternoon, Mr.
4 Veeder.
5    MR. VEEDER: I am extremely concerned because I don't want
6 the case delayed.
7    MR. SACHSE: I am not asking for a delay.
8    MR. VEEDER: May I inquire as to when you made the request,
9 Mr. Sachse?
10    MR. SACHSE: I made the request by telegram on May 28.
11 I received a reply the next day from both offices; immediate
12 reply.
13    THE MASTER: The telegrams are going to be presented this
14 afternoon. I take it there is no use of prolonging this inter-
15 change at the present time as to what the content of the tele-
16 grams is, and what they show. So I will suggest that the matter
17 be considered between counsel, during the noon hour, in an effort
18 to see what can be arrived at in as expeditiously a manner as
19 possible. Some information may be obtained.
20    MR. SACHSE: I have not requested any delay, your Honor.
21    THE MASTER: I appreciate that.
22    MR. STAHLMAN: This is none of my fight, but I, too,
23 represent a client and I have spoken in this Court for a good
24 many of the property owners along the Santa Margarita River
25 about the conditions that have existed in this trial.

Now, Mr. Sachse is probably entitled to certain information, but this prolongs the trial and expense to the people. Here is a matter--much more serious matters than these have gone to Court in front of Judge Carter and, in a few minutes, they are settled.

When Mr. Sachse comes in here, which he has a right to do, and then makes rather a personal attack, and with a written statement and the local newspaperman who has never been here to the trial before except for the first day suddenly shows up at this time and this finds itself in the hands of politicians we have other conditions, or conditions that we have had in this trial before that have delayed it and caused expense and caused confusion and caused misunderstanding and hysteria in the area. I would think that a matter of this character, taken up before Judge Carter, as we have many times off the record in the case, could be settled without adding fuel to the fire here which is already, I think, far beyond what the character and type of case merits. That is all I have to say. It is an expense to us. It adds time to the trial. I have watched this case from its inception and I have seen moves time and time again that direct themselves into political thinking, encouraging hysteria and half of it gets into the local newspaper and the other half does not.

MR. SACHSE: May I ask whether that statement was made on behalf of the Vail's or whether you appear for any other

defendants?

MR. STAHLMAN: Yes, I have Mrs. Tittle and Mrs--

MR. SACHSE: Are you appearing for them?

MR. STAHLMAN: Well, I have appeared off the record for them. I am making the statement--

MR. SACHSE: I want to find out now, and I believe I am entitled to know, which defendants Mr. Stahlman appears for when he makes the statement.

MR. STAHLMAN: The statement is on the record for itself.

THE MASTER: I think this is enough of this interchange, so the matter will be considered by counsel at the appropriate time, during recess and during the noon hour, and we will now proceed with the evidence of this morning. . . .