ORIGINAL

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

———

BEFORE HON. JOHN M. CRANSTON, SPECIAL MASTER

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

          Defendants.

No. 1247-SD-C

REPORTER'S TRANSCRIPT

**FILED**

SEP 2 4 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____ DEPUTY

| | |
|---|---|
| **Volume:** | 23 |
| **Pages** | 2644-2680 |
| **Date:** | December 1, 1958 |
| | January 12, 1959 |
| **Place:** | Fallbrook, California |

RANDOL, FIVECOAT & STEWART
CERTIFIED SHORTHAND REPORTERS
1113 FIRST NATIONAL BUILDING
SAN DIEGO 1, CALIFORNIA
BELMONT 9-4191

1

## APPEARANCES:

2

3    LCDR DONALD W. REDD, U.S.N., representing the
     United States of America.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

FALLBROOK, CALIFORNIA, MONDAY, DECEMBER 1, 1958.   9:45 A. M.

THE CLERK:   Court is now in session.

THE MASTER:   At the session on November the 3rd, the hearing was adjourned with reference to the Fallbrook Creek area, and the area between Fallbrook Creek and the Santa Margarita River until this morning.

Commander Redd, do you have the final portion of the exhibit with reference to ownerships and legal descriptions to present at this time?

LCDR REDD:   Yes, your Honor.  I think at the last session we had presented all of the property descriptions within the Fallbrook Creek watershed, except those properties located in Section 24, 9 South, 4 West, San Bernardino Base and Meridian, and we have that one at this time.  I would like to have it marked as F-4-P for Identification.  And I offer this into evidence as F-4-P.

THE MASTER:   This will be received in evidence as Exhibit F-4-P, Fallbrook Creek watershed area.

LCDR REDD:   And I would like to state for the record that on F-4-P and on F-4-A through P on any properties that were riparian to Fallbrook Creek, under my direction in the Office of Ground Water Resources, the properties have been designated by the letter R in the left-hand margin opposite those properties that are riparian to the stream.

2645

1      THE MASTER:  And that has been done on all portions of

2  the F-4 series?

3      LCDR REDD:  Yes, sir.  And I would also like to state for

4  the record that the exhibits that were withdrawn by me at the

5  last hearing for additional work, including the F-4 series and

6  the F-6 series, the changes that were to be made have been made,

7  and the F-4 series has been returned to the Master; and at this

8  time I would like to submit or return F-6 series, which is the

9  Assessor's -- where we have drawn in the additional lines that

10  were indicated at the last hearing.

11      Your Honor, at this time we have nothing more to present.

12  That completes all of our evidence on Fallbrook Creek.  And at

13  the present time we have not completed the exhibits on the

14  property descriptions for the next area, that is the area north

15  of Fallbrook Creek and west of Rainbow, and south of the Santa

16  Margarita River, which will be ready to present at the next

17  hearing.

18      THE MASTER:  Well, then, at this time the hearing on

19  any objections to the findings of fact and conclusions of law

20  with reference to the De Luz Creek watershed area is continued

21  until Monday, January 12, 1959, at 9:30 A.M., at the Reche

22  School house.  And the date for hearing objections to findings

23  with reference to the Fallbrook Creek area is set for January

24  19, 1959, at 9:30 A.M., at the Reche School house.

25      And on January 12th, following the conclusion of the

2646

1    hearing on objections to De Luz Creek watershed, further evidence

2    will be received with reference to the area west of the Rainbow,

3    and between the Santa Margarita and Fallbrook Creek.

4         The hearing on January 12th on objections to De Luz Creek

5    watershed findings will be continued from day to day, if neces-

6    sary, until all objections have been heard and considered.

7         LCDR REDD:  Yes, your Honor.

8         THE MASTER:  So the hearings will be adjourned then

9    until January 12, 1959, at 9:30 A.M.

10

11                        --------

12

13

14

15

16

17

18

19

20

21

22

23

24

25

APPEARANCES:

    WILLIAM H. VEEDER, ESQ.,
     For United States of America.

    LCDR DONALD W. REDD, U.S.N.,
     For United States of America

    FRANZ R. SACHSE, ESQ.,
     For Fallbrook Public Utility District
     and named individual defendants.

    ADOLPHUS MOSKOVITZ, ESQ.,
     For State of California.

    JOHN B. MYERS,
     For William Butler.

1    FALLBROOK, CALIFORNIA, MONDAY, JANUARY 12, 1959.   9:45 A. M.

2

3         THE MASTER:  Court is now in session.  Will counsel state

4    their appearances for the record?

5         MR. VEEDER:  William H. Veeder for the United States of

6    America.

7         LCDR REDD:  Lcdr Redd for the United States of America.

8         MR. SACHSE:  Franz R. Sachse for the Fallbrook Public

9    Utility District and individual named defendants.

10         MR. MYERS:  John Myers for William Butler.

11         THE MASTER:  And there are certain individual defendants

12    also present in the courtroom.

13         This is the time set for hearing of objections to the

14    Findings which have been  proposed by the Master with reference

15    to the De Luz Creek watershed.  Certain objections have been

16    filed by the State of California and also by a few of the in-

17    dividual defendants.  And I shall consider those objections in a

18    few minutes and advise those here of my present thoughts with

19    reference to those objections.  I think that will probably save

20    time for everyone.

21         After I have done that, of course, I will be very willing

22    and anxious to hear any comments which either any defendant or

23    any counsel has with reference to my proposed rulings on the

24    objections.

25         Before referring to these objections,  however, I believe

2648

1   there are a couple of matters involving property descriptions

2   which Mr. Sachse wishes to present.

3       MR. SACHSE:  Yes, your Honor.  And in each case I will

4   identify the particular client and parcel concerned.  The first

5   are the defendants Lewis and Taylor.  Their parcel is indicated

6   on Exhibit M-68 as Parcel 12.  The Finding in question is

7   Finding 11, found on page 15 of the Findings.

8       The Finding recites that this parcel is subject to a

9   deed of trust to Bank of America National Trust & Savings

10  Association as trustee in favor of William H. Godfrey and Vera

11  M. Godfrey, as Beneficiaries.  That is incorrect.  I have

12  presented the material to Cdr. Redd, and he has checked it out,

13  and it is my understanding that the United States will stipulate

14  that as far as they are concerned that language may be deleted,

15  because title is clear.

16      MR. VEEDER:  That is agreeable to us.

17      LCDR REDD:  Yes, sir.  I have checked this, and as of

18  26 June, 1958, which was the date of their conveyance, the land

19  was in them full title, with no encumbrance or anything else,

20  as joint tenants.

21      MR. SACHSE:  So to make it a little clearer, that would

22  mean that the language which appears on lines 4 through 7 of the

23  proposed Findings, "subject to a deed of trust", and so forth,

24  should be deleted.

25      THE MASTER:  Well, then, in the light of that stipulation

2649

1   Finding 11 on page 15 will be modified by deleting therefrom

2   the portion of line 4 reading "subject to a deed of trust",

3   deleting all of line 5, all of line 6, and deleting the word

4   "Beneficiaries" on line 7.

5       MR. SACHSE:  Now the second proposed correction relates

6   only to the description of Parcel 35.  That is 35 as indicated

7   on Exhibit M-68, the owners being Felix and Theodora Garnsey.

8   In that case I am referring to page 15 of Exhibit M-125-A,

9   which is the descriptions.  Those lines are not numbered.  But

10   it is the fourth line from the bottom.  The description pres-

11   ently reads:  "And also excepting a tract commencing at a

12   stake and stones", and so forth.  The language should read

13   "And also including a tract commencing at a stake and stones".

14   This also has been checked out with Cdr. Redd, and I believe he

15   will stipulate that according to the records of the United

16   States that amendment should be made.

17       LCDR REDD:  Yes, sir.  We are willing to so stipulate.

18       THE MASTER:  I notice that this language which is now

19   included as an exception to Parcel 37, which was referred to by

20   Mr. Sachse, is also excepted from Parcel--

21       MR. SACHSE:  45.

22       THE MASTER:  --45 on page 18 of the descriptions.

23       MR. SACHSE:  That is correct, your Honor.

24       THE MASTER:  And the Exhibit M-125-A in evidence.  And

25   the exhibit as attached to the Findings will be modified by

2650

1   changing the word "excepting" in the fourth line from the

2   bottom of page 15 so as to read "including".  So the description

3   will then include this particular description at the bottom

4   four lines of page 15 and the top four lines of page 16 as

5   part of Parcel 37.

6           Are those the only descriptions?

7           MR. SACHSE:  Those were the only legal descriptions or

8   title matters that I had to bring up, your Honor.

9           THE MASTER:  Very well.  The written objections which

10  have been presented with reference to the Findings were, for the

11  most part, the objections of the State of California and the

12  objections filed by Mr. Sachse on behalf of certain of his

13  clients.  In addition, Veria V. Click and Alma F. Click filed

14  objections in the form of two letters to the Findings affecting

15  their parcel.

16          MR. VEEDER:  How do you spell that name?

17          THE MASTER:  C-l-i-c-k, Parcel 31.  The objections which

18  the Clicks filed were based upon alleged discrepancies in the

19  description to their property.  They asserted by their objec-

20  tions that they actually own portions of the property which,

21  according to Exhibit M-125-A, are owned by Cora H. Myers,

22  Parcel 32; and Kathleen Diana Hodges and Kenneth V. Hodges,

23  Parcel 33; Diana Reid, Parcel 34; Maurice Rissman and Irene

24  Rissman, Parcel 35.

25          After receiving these objections, I examined very

1 carefully the exhibits which have been introduced in evidence

2 by the Clicks with reference to their parcel, including the

3 deed, the notes of the survey, and other documents.  And also

4 examined the quiet title decree in an action which had been

5 brought involving them and also A. G. Click.

6       As a result of the investigation of the quiet title

7 decree and consideration of the exhibits, I believe that their

8 objections are not well taken; that the ownership appears to

9 be as set forth in Exhibit M-125-A.  And there will be no change

10 made in the Findings with reference to the ownership, unless

11 something said here today at a later time should bring up any

12 new material which would justify such a change.

13       I think it should be said at this time that, at least

14 in my opinion, this is not a quiet title action in the sense

15 that any finding made is conclusive as to the ownership of any

16 particular parcel.  In other words, the Findings are findings

17 as to the water rights of the land.  It is an in rem action to

18 that extent.  The Findings as to the apparent owners are for

19 purposes of identification and to benefit the defendants, so

20 that each defendant will know that the Finding refers to

21 property in which he is interested.  But if a finding should be

22 made that John Jones is the apparent owner of a particular

23 piece of property, that would not preclude Henry Smith at a

24 later date from asserting that actually he owned that property

25 at that time.  At least, that is the view which I am taking of

2652

1   this matter.  The rights of the water on the property are de-

2   termined.  The ownership is not conclusively determined.

3         But, in any event, even if it were conclusively de-

4   termined, I believe that the Findings correctly set forth the

5   ownership of these parcels 31, 32, 33, 34 and 35.

6         Now, with reference to the objections filed by Mr.

7   Sachse, objection No. 1 has already been covered by the stipula-

8   tion.  That was with reference to the deed of trust on Parcel

9   12.  Objection No. 2 dealt with the Bleeker property, Parcel 30,

10  page 25 of the Findings.  The objection is that in referring

11  to the unnamed intermittent stream discussed in this Finding

12  there is no statement as to the period during which it flows

13  or the character of the waters underlying it.  It is believed

14  that the Finding should be amended to state that the stream

15  in question flows only during and immediately after periods of

16  precipitation and runoff, and that the waters underlying said

17  stream are vagrant local waters not a part of the Santa

18  Margarita River system.

19        In my opinion the Finding does cover this matter, although

20  there is a typographical error-- or rather two slight typo-

21  graphical errors in line 24, which may be responsible for the

22  objection.  The last phrase of this Finding, beginning on Line

23  24, should read "the unnamed tributary and the East Fork of

24  De Luz Creek flow intermittently throughout the year across the

25  surface of the ground across this parcel."

2653

1      MR. SACHSE:   That would satisfy the objection, your

2  Honor.

3      THE MASTER:   So the finding will be modified by changing

4  the word "in" in line 24, page 25, to "and" and changing the

5  word "flows" in the same line to "flow".

6      The finding is supported by the transcript, page 1443,

7  line 10, to page 1445, line 6.

8      The third objection, Finding 26, the McDowell parcel,

9  page 29.  The objection is that the finding is that the two

10  forks of De Luz Creek join near the southwesterly boundary of

11  the parcel.  It is believed the finding should be clarified to

12  indicate whether the stream joins on or off the lands of the

13  defendant.

14      I believe the objection is well taken.  The transcript

15  indicates that the juncture is actually within the parcel.  And

16  I will accordingly modify Finding 26 on page 29, line 7, by

17  inserting after the words "the main channel" the words "within

18  the parcel".  So that the finding will read that the "property

19  is riparian to the main channel of De Luz Creek, and also to the

20  East Fork of De Luz Creek which joins the main channel within

21  the parcel near the southwesterly boundary of said parcel".

22      The next objection is with reference to Finding 27 and

23  the Garnsey Parcel 37, beginning on page 31.

24      The Finding recites the existence of two Permits to

25  appropriate water from Cottonwood Creek issued by the State of

1  California to the defendants, but does not recite the fact that

2  any actual diversion and use has been made under such permits.

3  The uncontradicted testimony is to the effect that the defendants

4  have stored and diverted water under said Permits continuously,

5  although no mathematically accurate statement as to the amount

6  of water diverted could be made.  It is believed that the Find-

7  ings should state that storage and diversions have been made by

8  defendants since the date of the Permits without specifying any

9  specific amount.

10      That is the end of Mr. Sachse's comment with reference

11  to that Finding.

12      The record should state that Mr. Moskovitz has now

13  entered the courtroom.

14      MR. SACHSE:  Your Honor, do we have another one of those

15  which you just handed out?

16      THE MASTER:  Yes.  The State of California has also, as

17  I have indicated, filed objections, one of which deals with

18  this same material.  And I will therefore consider the objec-

19  tion of the State of California to this Finding at the same time.

20  That is objection No. 6 of the State, found on page 4 of their

21  objections, which states that the Finding recites that the land

22  owners of Parcel 37 owned two permits to appropriate water from

23  the State of California, but no findings are made as to actual

24  uses of water pursuant to the permits.  And the objection

25  points out that a permit to appropriate does not constitute a

1  right to use water, citing the code, and that without a finding

2  as to such use it would not be proper to conclude that an

   appropriative right had vested.

4       Taking those objections together, and in the light of

5  the evidence which is actually presented in the record, I

6  propose to modify this Finding by inserting on page 32, between

7  lines 29 and 30, the following paragraph:-- this is paragraph

8  number 9 on this list of proposed changes.

9           "The said defendants have diverted

10          water for use upon certain portions of

11          their property every year since 1945, and

12          for use upon other portions of their

13          property from about 1935 until 1949.

14          Defendants have irrigated a total of about

15          70 acres of their property although they

16          have never irrigated all of said area at

17          one time.  The defendants have also stored

18          water since said Permits Nos. 5505 and

19          8166 were issued, but the precise periods

20          of time of such storage cannot be estab-

21          lished from the record.  The evidence is

22          also insufficient to determine the precise

23          amount of water diverted and stored and/or

24          used pursuant to the provisions of said

25          Permits."

2656

1        The transcript testimony which is referred to in this

2   paragraph is the portion of the transcript in the main part,

3   beginning at page 1934, continuing through page 1949, although

4   there are also certain additional references in other portions

5   of the transcript which I believe support this paragraph.

6        I did not feel, however, that I could make the paragraph

7   any more specific without going outside the record.

8        As I have previously indicated, I am following this

9   method of outlining my views simply to save time and, of course,

10  any--

11       MR. SACHSE:  Would you like us to indicate as we go

12  along if we have objection?

13       THE MASTER:  I thought I would finish the whole thing

14  up and then you can come back and make any comments.  And these

15  Findings, of course, are still subject to modification.

16       The next objection of Mr. Sachse was as to Finding 51 on

17  page 59.  It is believed that this Finding should be amended to

18  recite that there is no evidence of a present deficiency of

19  supply for the needs of the users within the De Luz Creek

20  watershed, such statement to be follows by the language presently

21  contained in the Finding that the "flow is insufficient to meet

22  the ultimate needs and uses".

23       I have considered the transcript with reference to this.

24  And I do not believe that the objection is well taken.  It

25  appears to me that the testimony of Mr. Wilson at page 567 and

1   Mr. Butler at page 613 supports the finding in the present form.

2   And unless there is some other portion of the transcripts

3   presented to me which would override that, it is my present

4   thought not to amend that finding.

5       MR. SACHSE:  You skipped one, your Honor, my No. 5.

6       THE MASTER:  Yes, that is right.  No. 5 of Mr. Sachse

7   relates to the Anderson property, Parcel 48, page 43.  It says

8   this Finding recites that Parcel 48 is riparian to Fern Creek

9   and to Camps Creek.  Since the two streams named do not merge

10  on the lands of the defendants, it is believed that the Finding

11  should be amended to state that the portion of Parcel 48 lying

12  within the watershed of Camps Creek is riparian to Camps Creek,

13  and the portion lying within the watershed of Fern Creek is

14  riparian to Fern Creek.

15      I have accordingly modified this finding so as to add

16  on page 43 certain language.  This is referred to in paragraph

17  10 of my proposed additions.

18      Page 43, line 14, delete the portion of the line follow-

19  ing the words "Parcel 48," and insert instead the following

20  words "the portion of said parcel lying within the watershed

21  of Fern Creek is riparian to Fern Creek, and the portion of

22  said parcel lying within the watershed of Camps Creek is

23  riparian".  That is the end of the insert, but it would then

24  continue in the Findings on line 15 "to Camps Creek."

25      Now, referring to the objections filed by the State of

1   California, the first objection is to page 4, lines 10, 19 and

2   20.  It states that from Exhibit M-32, the De Luz Creek water-

3   shed ownership map, it appears that Parcel No. 4 is traversed

4   by Cottonwood Creek.  This Finding that this parcel is "not

5   riparian to any stream or creek within the De Luz watershed" is

6   not consistent with the map.

7         The objection is well taken, and I have accordingly

8   proposed to modify the findings by deleting lines 19 and 20 on

9   page 4.  The language is then transferred to page 6, line 13 and

10  one-half.  So that this parcel will then be listed in Finding

11  No. 5 as a parcel which is traversed by a stream.

12        MR. SACHSE:  Your Honor, I am lost.  Which one of your

13  numbers is this?

14        THE MASTER:  This is now No. 1 and 3.

15        MR. SACHSE:  Of your corrections?

16        THE MASTER:  Of my corrections.  In other words, Parcel

17  No. 4 is being removed from Finding No. 4 by the proposed change

18  No. 1.  It is inserted in Finding No. 5, line 13½, by a proposed

19  correction No. 3.  So that the Finding will then be it is

20  traversed by an intermittent stream.

21        The State's second objection is to the same effect with

22  reference to Parcel No. 66.  And I believe again that the objec-

23  tion is well taken, and accordingly by proposed change No. 2

24  I am deleting lines 31 and 32 on page 4, removing Parcel No. 66

25  from Finding 4, and by proposed change No. 4 that parcel is

1   placed in Finding No. 5 as property which is traversed by an

2   intermittent stream.  So that Parcel 66 will be added at line

3   12½ on page 8.

4           The State's third objection is that a number of Findings

5   state that a specific parcel of land is riparian to more than

6   one tributary or branch of De Luz Creek.  And then some fifteen

7   specific instances are referred to.  The comment is made that

8   the fact that the same parcel of land is traversed by more than

9   one tributary does not mean that the entire parcel is riparian

10   to each, and that the rule as to riparian rights appears to

11   depend on whether those against whom such rights are asserted

12   are upstream or downstream from the confluence of tributaries.

13   And certain cases are referred to which indicate that it is

14   important in certain cases whether land is riparian to one

15   tributary or another.  The comment is made:  "Therefore, we

16   believe the findings should make it plain that only that part

17   of a parcel of land that is within the watershed of each

18   tributary is riparian to that tributary, at least in so far as

19   the correlative rights of other riparians upstream from the

20   confluence of the tributaries are concerned."

21           The legal proposition, of course, is correct.  The

22   evidence is not always-- as a matter of fact, I don't think that

23   in any case is the evidence adequate to attempt a metes and

24   bounds description of the parcel which is riparian to one

25   tributary and a similar segregation of the portion of the parcel

1  which is riparian to another tributary.

2       I believe that I have met this objection, in so far as

3  the evidence permits, by adding a proposed Finding No. 52.   This

4  is my proposed change No. 13.   Page 60, line 2½, following the

5  51 proposed findings, to add a new Finding 52 to read as

6  follows:

7         "No portion of any parcel of property

8         above mentioned is riparian to any particular

9         tributary unless said portion of said parcel

10         lies within the watershed of said particular

11         tributary.   Wherever in the foregoing Find-

12         ings it is found that any particular parcel

13         is riparian to more than one tributary, said

14         Finding is made in the light of this Finding

15         LII and means that a certain portion, or

16         certain portions, of said parcel are riparian

17         to another of said tributaries.   Nothing in

18         these Findings contained shall be construed

19         as a finding that any portion of any parcel

20         which is physically outside the watershed of

21         a particular tributary is riparian to said

22         tributary."

23       Now that is admittedly a comprehensive statement.   And

24  it is possible that Mr. Moskovitz or some of the other parties

25  may wish to make some further changes.   But at least that is

1    the method in which I would now propose to meet this objection.

2         The State's fourth objection relates to Parcel 14, the

3    Matthews property, which is referred to in Finding 13.  On page

4    18, lines 1 to 10, the finding is made that the defendants have

5    diverted from De Luz Creek for storage and reservoirs located on

6    an unnamed canyon in the Northeast Quarter of the Northeast

7    Quarter of Section 20, and so forth, 50 acre feet of water per

8    year, and that they have acquired a right to a continuous

9    diversion.

10        The objection is that open, notorious and adverse use

11   for the period of five years may result in the acquisition of a

12   prescriptive right to continue to do so, but that the pre-

13   scription couldn't run during the pendency of a lawsuit in

14   which the water rights of the prescriptive claimant and those

15   against whom he claims are in issue.  And that since this

16   lawsuit was filed by January of 1958, the period of prescrip-

17   tion would not have run against the Government at that time,

18   and that in any event a prescriptive right couldn't be acquired

19   against the United States because property rights owned by the

20   Federal Government could not be lost by prescription.  Citing

21   Smith vs. Hawkins, 110 Cal. 122; Wilkins vs. McCue, 46 Cal. 656;

22   and Mathews vs. Ferrea, 45 Cal. 51.

23        The cases cited seem to support the legal statement.  And

24   I would propose to modify Finding 13 on page 18 in accordance

25   with that principle of law.  The change is No. 5 on the

1    proposed changes and additions.  On page 18, line 9, insert

2    after the words "prescriptive right" the words "against all

3    said lower owners excepting the plaintiff United States of

4    America".  In other words, prescription would not, of course,

5    have run upstream, and it would only run downstream as against

6    individuals and not as against the plaintiff, the United States

7    of America.

8         The next reference is to what is obviously a typo-

9    graphical error on page 22, lines 8 and 9, where the Finding

10   simply refers to Township 28 South.  The Findings should refer

11   to Section 28, Township 8 South.  And Finding 17 will be

12   modified by making that correction in line 8.

13        The next objection, No. 6, has already been commented on

14   in connection with Mr. Sachse's objection to Parcel 37.

15        The next objection of the State is No. 7.

16             "In a number of Findings there are

17             statements that water underlying certain

18             portions of a parcel are vagrant and per-

19             colating waters not part of the flow of

20             any stream, or conversely are part of the

21             subsurface flow of a specific stream.  In

22             many instances there is a question whether

23             the descriptions of these portions of

24             parcels are specific and definite enough to

25             enable them to be located, and hence whether

1    the Findings may not be fatally vague in this
2    respect."
3         Then there are some twelve examples given of such Find-
4    ing.
5         Well, I admit that the descriptions in the Findings are
6    vague, but I can't find any evidence to justify more specific
7    findings.  The Findings, for example, that the water underlying
8    the alluvial area is part of the stream, or that the water
9    underlying the high ground on the northeast corner is not part
10   of the stream-- well, that is as far as the testimony goes.
11   There is no better description given in the record, at least
12   that I have been able to find.  If there is, I will be very
13   happy to have it pointed out to me, and to insert the more
14   definite description in the Findings wherever possible.
15        It does occur to me, though, that it is better to have
16   even that vague description than to have no description; that
17   at a future date it will be easier to tell what is the alluvial
18   area, for example, under which the water would be part of the
19   stream, and what is the high ground under which they wouldn't
20   be, with that finding in.  It would be of greater advantage
21   to the parties.  It still leaves, I suppose, a kind of a no
22   man's land where it can be argued that this land is the
23   alluvial land or this land is the high land, for example.  But,
24   in any event, the Finding does cover land as to which there
25   can be no reasonable doubt.  In other words, certain land will

2664

1   clearly be in the alluvial area, for example.  There couldn't

2   be any argument about it.  Other land will obviously be high

3   land and not alluvial land.  And my present thought is that

4   findings in the present form are better than no findings, and

5   that they can't be made more definite.  But I am open to correc-

6   tion if anybody can supply some better landmarks.

7        The next objection, No. 8, relates to page 59, lines 1

8   to 9.

9            "This Finding states in part that the

10           evidence is insufficient to establish

11           whether or not it is economically feasible

12           to use any land in the De Luz Creek water-

13           shed for raising poultry or to determine the

14           amount of water which would be required for

15           such purposes.  We agree that there is in-

16           sufficient evidence to make such Findings.

17           This, however, points up that the Findings

18           also fail to state whether in this watershed

19           it is economically feasible to grow the

20           various irrigated crops mentioned in many

21           of the Findings, or the amount of water which

22           would be required for the irrigation of such

23           crops.  It would seem desirable for the Findings

24           to state expressly that no such Findings were

25           made because of a similar insufficiency of

2665

1    evidence on those matters."

2    I cannot agree with this objection.  The testimony of

3    Col. Bowen was based at least in part on economic feasibility,

4    particularly in connection with certain parcels of property

5    where there was a dispute by the particular defendant as to

6    the amount of acreage which was suitable say for avocados.

7    Col. Bowen indicated that, yes, you could grow an avocado tree

8    on that particular parcel, but the area was so small or it was

9    so isolated or for one reason or another it was not economic-

10   ally feasible to grow it in that area, and that for that reason

11   he did not consider that particular area as avocado land.  The

12   soil might have been proper, but it was not generally recognized

13   as being avocado land.

14   So I cannot, from my present view of the evidence,

15   support the objection of the State that I haven't made findings

16   because of an insufficiency of evidence.  I think that the

17   evidence is to the effect that, at least as economic feasibility

18   is now determined, the crops mentioned are economically feasible

19   in each case.

20   Here again, of course, I am not attempting to rule

21   finally on these objections.  This is merely so if you believe

22   what I am now saying you won't have to argue to convince me.

23   If you believe to the contrary, why I am still open to suggestion.

24   The next objection, page 60, lines 6 to 11.

25   "This conclusion of law must be considered

in connection with the comments on the

Findings on page 18 concerning the acquisi-

tion of a prescriptive right."

This again is a conclusion of law relating to the

Matthews property.

I have accordingly proposed a change.  This is change

No. 1 under the heading "Conclusions of Law" on page 3 of my

proposed changes, to entirely delete the original conclusion

of law No. 1 and to insert instead the following:

"The owners of Parcel 14 have acquired

and now possess the prescriptive right as

against lower riparian owners upon De Luz

Creek, excepting the plaintiff United States

of America, to divert from Le Luz Creek and

store 50 acre-feet of water per year, said

water to be stored in the existing reservoirs

on Parcel 14, and to be used for recreational

purposes and for irrigation upon Parcel 14;

no right by prescription has been acquired

against the plaintiff or against any owner

above said Parcel 14 on De Luz Creek, or against

any owner of property located on a tributary

of De Luz Creek above the point of confluence

of said tributary with De Luz Creek."

I believe that meets the objection.

1       The next objection is No. 10, page 60, lines 13 to 27,

2  a conclusion of law with reference to the Garnsey property,

3  which, according to the State, must be considered in connection

4  with the comments on the Findings concerning the acquisition

5  of appropriative rights.

6       Here again I have modified the conclusion in accordance

7  with the modification of the finding.  This is proposed change

8  No. 2 in the Conclusions of Law, page 60, line 18, to delete

9  the semicolon following the words "200 acre-feet per annum" and

10  insert the following "or the amount which has actually been

11  diverted by said owners pursuant to the provisions of said

12  Permit No. 5505 referred to in Finding XXVII above, whichever

13  amount is smaller;".  So that the conclusion would then be that

14  the owners of Parcel 37 are now required to possess the

15  appropriative right, and so forth, to divert one cubic foot

16  of water per second for irrigation purposes upon said Parcel 37

17  during the period March 1st to December 15th, annually, the

18  total amount of said diversions not to exceed 200 acre-feet

19  per annum, or the amount which has actually been diverted

20  pursuant to the provisions of the permit, whichever amount is

21  smaller.

22       Then there would be a similar deletion and addition

23  at the end of the Conclusions, which is set forth in my

24  proposed change No. 3, to delete the portion of line 24

25  following the semicolon, after the words "158 acre-feet per

1   annum", to delete the remaining lines of that finding and to

2   insert instead certain language which is set forth on page

3   4 of my propose change.  So that the conclusion would then be

4   that they had acquired and possessed an appropriative right

5   to divert without storage from Cottonwood Creek three-quarters

6   of a cubic foot of water per second for irrigation purposes

7   upon said Parcel 37 during the period January 1 to December 31

8   annually, the total amount of said diversions not to exceed

9   158 acre-feet per annum, or the amount which has actually been

10   diverted by said owners pursuant to the provisions of said

11   Permit No. 8166, whichever amount is smaller, together with the

12   right to divert for storage and impound from about November 1st

13   of each year to about April 30th of the succeeding calendar year,

14   to be later applied to beneficial use upon said parcel an amount

15   of water which is not in excess of (1) 42 acre-feet per year or

16   (2) the amount actually so diverted and stored in any one year

17   by said owners pursuant to the provisions of said Permit No.

18   8166, whichever amount is smaller.

19         Now I regret that even as so modified the conclusion

20   still refers to no definite amount, but refers solely to the

21   smallest amount which has been diverted in the past.  However,

22   I could find nothing in the record which would justify any more

23   specific finding or conclusion than that.

24         Finally, the State's eleventh objection relates to the

25   conclusion of law on page 62, lines 12 to 29, Conclusions of Law

1   No. 8 and  No 9.  It says:

    "These two conclusions of law set forth that

    owners of riparian lands have correlative

    riparian rights and obligations with all other

5       owners of property which is riparian to the

6       same stream.  The conclusion which follows

7       states that correlative rights and obligations

8       extend to both the surface flow and the sub-

9       surface flow of a stream.  However, nowhere

10      is it stated that owners of parcels of land

11      which overlie waters that are part of the sub-

12      surface flow of the various streams also have

13      correlative rights and obligations of a

14      riparian nature with all those whose lands

15      are riparian to the surface flow of the same

16      stream.  It is suggested that such a conclusion

17      of law be added."

18  The objection I think is well taken.  I propose to add

19  that, but it apparently was not transcribed in this list of

20  proposed changes.  So that the conclusion of law will be

21  modified in that respect.  However, as I say, I regret the

22  modification did not get into the list of proposed changes.

23  The last objection, page 63, lines 20 and 21.

24      "Instead of the words 'beneficial or

25      reasonable' we suggest the words 'reasonable,

1     beneficial".

2          I have accordingly suggested that change be made, page

3     63, lines 20 and 21, that the language be changed to read "used

4     for any reasonable, beneficial use".

5          Now in addition there were certain objections or sug-

6     gestions which occurred to me in going through the Findings

7     which I would refer to at the present time, which I have not

8     referred to up to date.

9          Suggested change No. 11, page 47, line 17, which is

10    with reference to the Wilson property, Parcel No. 50, the

11    Wilsons being represented by Mr. Eberhard -- line 17, to delete

12    the semicolon following the word "used for livestock" and add

13    the following words "and for irrigation; these springs are

14    fed by the vagrant, percolating waters hereinafter mentioned;".

15    And then in the same Finding at line 21 insert at the beginning

16    of the line the words "which constitutes a portion of the

17    surface or subsurface flow of De Luz Creek".  So that the

18    Finding would then read, beginning at line 15:

19               "in addition, there are two other

20          springs about 200 yards from the channel

21          of De Luz Creek, the water from which is

22          used for livestock and for irrigation; these

23          springs are fed by the vagrant, percolating

24          waters herinafter mentioned; at present there

25          are approximately 12 acres of pasture, three

acres of olives, and two acres of hay, all of
which lie in the De Luz Creek watershed and
all of which are irrigated; the amount of
water used for such purposes which consti-
tutes a portion of the surface or subsurface
flow of De Luz Creek is 65 acre-feet per year."

I believe that was the only other change which I made
in the Findings which I have not commented upon.

I believe what we might do now would be to take a short
recess.  You can consider the comments which I have made.  And
I will then be very glad to hear any objections which anyone
may have to the proposed rulings on the objections which have
been made.

(Recess.)

MR. SACHSE:  There is one inquiry--

THE MASTER:  I guess we might as well start with you,
since I mentioned your objections first, Mr. Sachse.

MR. SACHSE:  I was just going to inquire if there was
anyone here who is not represented by counsel.

THE MASTER:  No one here who is not represented by
counsel has filed any written objections.  Is there anyone
here who wishes to file any, or make any objections at this
time?

There seems to be no one.  All right, Mr. Sachse.

MR. SACHSE:  Then taking my objections to Findings as

2672

1  they were discussed by you, I can cover it very briefly.  I am

2  satisfied with the corrections and the changes you have made.

3  And I have no desire to press anything further.  And solely for

4  the record, I have no objection to any of the changes you have

5  indicated in line with the objections of the State of California.

6  In other words, I am satisfied with the changes that your Honor

7  has made.

8            THE MASTER:  Very well.  Mr. Moskovitz?

9            MR. MOSKOVITZ:  I believe that the State also will be

10 satisfied with the changes you have made.  I want to make one

11 explanation with respect to the objection No. 4, beginning on

12 page 3 of the State's objections.  You have indicated that the

13 finding would be changed to make it plain that the prescriptive

14 rights would not run against the United States.  The other

15 aspect of that objection, that is, whether the prescriptive

16 rights could run against others, has been cleared up by informa-

17 tion which Mr. Sachse has given me that the owners of this

18 particular parcel involved in the Finding as to prescriptive

19 rights were not joined as parties to this lawsuit until after

20 January 1st, 1958.  So that they would have acquired prescriptive

21 rights against other people other than the United States because

22 they had not yet been sued.  So I think the objection has been

23 completely satisfied.

24        I wanted to make that explanation, because in part it

25 came from information Mr. Sachse gave me as to the date upon

1    which those people had been brought into the lawsuit.

2    THE MASTER:  Yes.  Of course, that date would appear in

3    the records of the action.

4    MR. MOSKOVITZ:  Yes.  Otherwise, I have no further

5    comments.  I am satisfied with your disposition of the objec-

6    tions.

7    THE MASTER:  That is, the suggested revisions which are

8    set forth in the proposed changes appear to you to meet your

9    objections; is that correct?

10    MR. MOSKOVITZ:  Yes, they do.

11    THE MASTER:  Mr. Myers, do you have any comments on any

12    of the proposed changes or upon the Findings as originally

13    proposed?

14    MR. MYERS:  No.  I have one suggestion for an amendment,

15    though.  On page 45, Findings of Fact.  And this is Finding 38.

16    I would like one word added on line 31, after "seasonal storage".

17    The 27 acre-foot reservoir is used for seasonal storage "and

18    recreation".  This is a finding of fact and not a conclusion

19    of law.

20    THE MASTER:  Wait a minute.  This is page 45?

21    MR. MYERS:  Page 45, Finding 38.

22    THE MASTER:  Yes.

23    MR. MYERS:  Line 31.

24    MR. SACHSE:  Line--

25    MR. MYERS:  Line 31.  I would like to have the words

1    "and recreation".  That is substantiated by Mr. Bowen's geology

2    report.  I am trying to find the exact page in the transcript

3    where Mr. Butler testified to that effect.  But I just want

4    the word "recreation" in the finding of fact.  I don't think

5    there will be any opposition to that.

6          MR. SACHSE:  I have no objection.  And I recall that is a

7    fact as to the reservoir.

8          MR. MYERS:  I have no other objections to any of the

9    proposed findings or amendments.

10         THE MASTER:  I was trying to see if I could find the

11   transcript reference on that.

12         MR. MYERS:  I will find it for you.

13         THE MASTER:  My recollection is that you are right on

14   that.  I would want to be certain there was something actually

15   in the transcript.

16         MR. MYERS:  It is in the engineering report-- I know it

17   is in evidence-- of Mr. Bowen.  I can refer to that.

18         I don't seem to find it in the transcript.  I thought it

19   was in there.

20         THE MASTER:  It talks about the reservoir at page 601,

21   but at least in that general area of the transcript he doesn't

22   specifically say what the water was used for, or that it was

23   used for recreation purposes.

24         MR. MYERS:  No, he doesn't specifically.  I thought he did

25   in the transcript there.  He talks about the lake.  He didn't

1   say specifically for recreation in there.

2           THE MASTER:  He talks about using the water for irrigation

3   purposes, definitely.

4           MR. MYERS:  I will have to waive that, then, your Honor.

5   I thought he specifically said in the transcript-- I thought he

6   had.  I know it is in the geology report here somewhere.

7           THE MASTER:  If you can show me any portion which

8   supports such a finding--

9           MR. MYERS:  It is not in the transcript, your Honor.

10          THE MASTER:  Well, then, unless you can establish some

11  evidence in some of the exhibits which which would support it,

12  the finding will remain as proposed originally.

13          Mr. Veeder, I understand that you wish to reserve objec-

14  tions on behalf of the United States until you have had an

15  opportunity to consider the geology testimony presented before

16  Judge Carter.

17          MR. VEEDER:  Well, I would like to go through the whole

18  thing, your Honor, from the standpoint of investigations we

19  have made and also the additional factors-- well, all factors.

20  And that was one reason why I inquired about who was here, be-

21  cause my thought will be that we will make a run through the

22  whole-- all your findings.  And there were things, for example,

23  that came up today that I thought I would tender a proposal upon.

24  For example, the matter of the delineation of the contact

25  between the alluvium and the older deposits on some of these

1    basin areas.  Should we find we are able to make a more specific

     delineation on those, we might tender the thought of introduc-

3    ing some more evidence on the point-- matters of that character.

4         THE MASTER:  Yes.  If that can be done it would, of

5    course, make the Findings of more value in the event of future

6    controversy.

7         MR. VEEDER:  That is precisely the reason why we have

8    taken a great deal of time on this matter.

9         THE MASTER:  Yes.

10        MR. VEEDER:  Because I think this, when we get through

11   if we could be as specific as possible on every one of these

12   matters, then the Marines would have a better knowledge-- and I

13   am thinking not only of De Luz area, I am thinking of a pattern

14   we cut, once we take the stand, for all areas.  And I think

15   that what we will do is go through everything once more.  We

16   have gone through it, and I have gone through your Findings

17   and studied them over.  What we will do then is come up with

18   a proposal, and if there is any place we think we can offer

19   supplemental or additional evidence, we may do so.  Of course,
                     motion
20   upon/to your Honor and agreement by parties.

21        THE MASTER:  Yes.  Of course, that would require sufficient

22   notice to the other parties so they could appear.

23        MR. VEEDER:  That is right.

24        THE MASTER:  And object to any such evidence, if they

25   desired.

2677

1          MR. VEEDER:  But I think we are all remembering we are

cutting some new trails when we start in on this thing.  I mean

the method of introducing evidence.  And there may be places

where we can shore up some of the data that has been offered.

If not, why we will so advise.

6          THE MASTER:  Do you have any comments in connection with

the proposed changes and the matters which were raised by the

objections of Mr. Sachse and Mr. Moskovitz?

9          MR. VEEDER:  The only thought I had in that regard was

10  where there was indication there was insufficient evidence to

11  support any more definite Findings, and I have already touched

12  on those points.  I have nothing further on those, your Honor.

13          THE MASTER:  In so far as the Findings are specifically

14  modified in these proposed changes and additions which I have

15  submitted, do you believe that the proposed changes are satis-

16  factory?  That is, subject to your general qualification--

17          MR. VEEDER:  Yes.

18          THE MASTER:  --of further testimony.

19          MR. VEEDER:  Yes.  I think that is correct.  And whatever

20  we do, whatever we would come up with we would endeavor to be

21  as specific as we can on each item tendered to your Honor to

22  consider, and if there is anything further to be done we will

23  make a proposal at that time. As I recall, it will be February.

24     .      THE MASTER:  The 12th.

25          MR. VEEDER:  The 12th?

8678

THE MASTER:  The 10th.

MR. VEEDER: February 10th, that is right.  Your Honor, we are working on it and we will be more specific as soon as we can get the data pulled together.

THE MASTER: Very well.  Then there are no further objections to be presented at this time?

MR. VEEDER:  I have none, your Honor.

MR. SACHSE:  Nothing, your Honor.

THE MASTER:  And no one else in the courtroom seems to have any objection to present.  The order which was previously made with reference to the hearings on the proposed Findings on the Fallbrook Creek watershed, setting the date for the hearing on January 19th, will be modified.  So that those Findings will be heard, and objections to them will be heard on Tuesday, February 10th.  And there will be no hearing on the 19th of January.  The hearing on the objections to the proposed Findings of Fact and Conclusions of Law on the De Luz Creek watershed is now continued until February 10th at 9:30 A.M. at this same place.  And after the conclusion of the hearing on objections to Findings on the De Luz Creek watershed and on the Fallbrook Creek watershed, we will then proceed to hear further evidence with reference to the area between the Fallbrook Creek watershed and the Santa Margarita River.  And after that we will then take up whatever areas are determined upon by the parties as being those to which the evidence is in the best

2679

1   shape to present.  The United States, it is understood, will

2   submit any objections which it may have on or before February

3   2nd; is that correct?

4           MR. VEEDER:  Yes, that is correct.

5           THE MASTER:  And, of course, copies of any such objec-

6   tions will be served upon the other counsel.

7           MR. VEEDER:  Now, that was a matter that I was interested

8   in.  It is not limited to the counsel that is here, it is as to

9   all counsel; is that correct?

10          THE MASTER:  I take it it should be all counsel who have

11  participated in the De Luz Creek hearings.  In other words,

12  there are a good many counsel that are named of record who have

13  not taken any part in these hearings.

14          MR. VEEDER:  Who have no interest here.

15          THE MASTER:  Who have no interest in the De Luz Creek

16  area.  And I do not deem it necessary they be served, because

17  they will have an opportunity to protest so far as Judge

18  Carter's final findings are concerned.

19          MR. VEEDER:  What about the pro pers, your Honor?

20          THE MASTER:  I believe if an objection is filed as to

21  any finding the particular pro per whose finding is involved

22  should be served.

23          MR. VEEDER:  Yes.

24          THE MASTER:  But if there is no objection as to say Mr.

25  Smith, then you needn't serve Mr. Smith because your objection

2680

1   is as to some finding of Mr. Brown, unless some counsel believes

2   to the contrary.

3          MR. VEEDER:   We will proceed that way, your Honor.

4          THE MASTER:   Yes.   Then the hearing will be adjourned

5   until Tuesday, February 10th, at 9:30 for conclusion of the

6   objections on the De Luz Creek area, for consideration of

7   objections on the Fallbrook Creek area, and then for further

8   testimony on the area between Fallbrook Creek and the Santa

9   Margarita River.

10                                    ------

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25