# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

BEFORE HON. JOHN M. CRANSTON, SPECIAL MASTER

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

        Defendants.

No. 1247-SD-C

**REPORTER'S TRANSCRIPT**

**FILED**

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

**Volume:** 26

**Pages** 2832-2887

**Date:** April 6, 1959

**Place:** Fallbrook, California

RANDOL, FIVECOAT & STEWART

CERTIFIED SHORTHAND REPORTERS
1113 FIRST NATIONAL BUILDING
SAN DIEGO 1, CALIFORNIA
BELMONT 9-4191

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

INDEX TO WITNESSES

|  | Direct | Cross |
|---|---|---|
| Allen C. Bowen | 2860 | 2873 |
| Granville Pepple | 2876 | |

E X H I B I T S

|  | (Reports on:) | In Evidence |
|---|---|---|
| MR-1 | Charles E. Stubblefield | 2846 |
| MR-2 | George E. Shoudy | 2847 |
| MR-3 | Robert Steinberg | 2847 |
| MR-4 | Vendit L. Johnson | 2847 |
| MR-5 | Ida Boren | 2847 |
| MR-6 | Harry A. Chapman | 2848 |
| MR-7 | Steven Nemeth | 2848 |
| MR-8 | Rowland W. Schultz | 2848 |
| MR-9 | Albert J. Huber | 2848 |
| MR-10 | G. R. REYNOLDS | 2848 |
| MR-11 | Everett S. Dennler | 2848 |
| MR-12 | John M. Gustin and Nettie E. Frye | 2849 |
| MR-13 | Vincent P. Pellanda | 2849 |
| MR-14 | Robert D. Barnes | 2849 |
| MR-15 | Donald B. Baldwin | 2840 |
| MR-16 | Roy W. Ware | 2849 |
| MR-17 | William H. Hitt | 2849 |
| MR-18 | Rollin Brown | 2849 |
| MR-19 | Herbert H. Culling | 2849 |
| MR-20 | (Tabulation) | 2850 |
| MR-21 | Map | 2851 |

1   APPEARANCES:

2

3           WILLIAM H. VEEDER, ESQ.,
              For United States of America.

4           FRANZ R. SACHSE, ESQ.,
              For Fallbrook Public Utility District
5             and individually named defendants.

6           LCDR. DONALD W. REDD, USN,
              For the U. S. Navy.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    Fallbrook, California, Monday, April 6, 1959; 9:50 A.M.

2

3    THE CLERK:   Court is now in session.

4    THE MASTER:   Will counsel please state their appearance

5    for the record?

6    MR. VEEDER:   William H. Veeder for the United States of

7    America.

8    LCDR REDD:   Lcdr Redd for the United States of America.

9    MR. SACHSE:   Franz Sachse for the Fallbrook Public Utility

10   District and for named individual defendants.

11   THE MASTER:   And will those who are in the audience who

12   are not represented by counsel please state their names?

13   MR. HENDERSON:   Max Henderson.

14   MRS. WARREN:   Iris D. Warren.

15   MR. FREEMAN:   Robert L. Freeman and Mrs. Freeman.

16   THE MASTER:   Before we proceed I think the record should

17   show that in the testimony for the several days preceding there

18   have been statements with reference to exhibits labled F-1,

19   F-2, F-3, up to F-7.  I believe that all those exhibits have

20   actually been stamped with an identification beginning "MF",

21   and in any event if they have not, they will be corrected so

22   that the official reference will be to MF instead of merely to

23   F.  And it may be understood that all references in the

24   transcript to exhibits in the F series will be taken to refer to

25   exhibits in the MF series beginning with MF-1 and going through

3833

1  MF-7, including all numerical designations following the letter

2  F.   Is that understood?

3          MR. VEEDER:  That is my understanding, your Honor.

4          MR. SACHSE:  That is correct, your Honor.

5          THE MASTER:  Now,--

6          MR. SACHSE:  Your Honor, I have a couple of little house-

7  cleaning matters we ought to get straight.

8          THE MASTER:  Yes.

9          MR. SACHSE:  I would like to return to the Clerk I guess

10  it is MF-1-AA through -- well it is the FF-1 series, being

11  Assessor's Map of the Fallbrook Creek watershed.  They were

12  withdrawn by Fallbrook for the purposes of checking as to

13  whether there were any disagreements as to the clients I repre-

14  sent on legal description and so on.  There are none, and we

15  are completely satisfied with the exhibits introduced by the

16  United States.

17          THE MASTER:  The record will show then the exhibits have

18  also been returned to the Clerk.

19          MR. SACHSE:  Now, there are, however, three minor

20  disagreements  as to fact on the MF-7 series, and I would like

21  to state them into the record.  I have already advised counsel

22  for the United States informally.  On Exhibit MF-7-A, at page

23  7, Parcel 93W-7-14 the United States exhibit does not indicate

24  that this parcel is riparian to the Santa Margarita River.  We

25  believe, based on our condemnation surveys, that it is riparian.

1    This does not involve severance, Mr. Veeder.  This is the

2    parcel itself.

3    The second such controversy is on page 9 of the same

4    exhibit, Parcel 93W-7-15A  We believe that parcel is riparian.

5    The United States exhibit does not so indicate.

6    MR. VEEDER:  We have that matter under consideration,

7    Mr. Sachse, and we will check it out.

8    MR. SACHSE:  There is one more I didn't give you.

9    MR. VEEDER:  Excuse me.  All right.

10   MR. SACHSE:  And that is on MF-7-D, page 4, Parcel 94W-13-1,

11   the same situation there.  We believe that parcel is riparian

12   and the exhibit does not so indicate.

13   THE MASTER:  I understand, then, Mr. Veeder, that you

14   will make a further check to see if you can agree with Mr.

15   Sachse, or whether there will have to be further evidence as to

16   the actual status of those parcels.

17   MR. VEEDER:  That is correct, your Honor.  We will run

18   that out.  I don't know whether an on-the-ground check will be

19   necessary, but in any event we will do whatever has to be done,

20   and we will have evidence for your Honor in that regard.

21   THE MASTER:  Yes.

22   MR. SACHSE:  Now I think, your Honor, it might be well

23   for the record if I would state, even though I cannot cross-

24   index to Fallbrook's exhibit numbers in the Federal Court,

25   if I would specify the parcels in the MF-7 series where there

1   is involved an attempted reservation of riparian rights by the

2   owner.  That legal question will be settled before Judge Carter,

3   as I understand it.

4        MR. VEEDER:  You are going to give the names?

5        MR. SACHSE:  Yes.  These references are going to be to

6   your MF series and your parcel numbers.  I will use them, Mr.

7   Veeder.

8        The first one is MF-7-A, page 8 parcel 93W-7-15X1.  The

9   name is Kunkel.

10       THE MASTER:  Kunkel?

11       MR. SACHSE:  K-u-n-k-e-l.  May the record show it is not

12   Mr. Kunkel, the geologist for the United States, who is present

13   this morning.

14       MR. VEEDER:  No.

15       MR. SACHSE:  The next one--

16       MR. VEEDER:  Kunkel is a defendant, though, before the

17   Federal Court, isn't he?

18       MR. SACHSE:  Yes, this Kunkel I am referring to.  The

19   next, the same exhibit, page 13, parcel 93W-7-26X1, Smyth,

20   S-m-y-t-h.

21       MR. VEEDER:  Could I have that last number again?

22       MR. SACHSE:  93W-7-26X1, S-m-y-t-h.

23       The same exhibit, 93W--

24       THE MASTER:  What page?

25       MR. SACHSE:  Oh, pardon me, page 16.  93W-7-31X1 and 35X1,

1  Edwards.

2       THE MASTER:  I presume that is not the same Edwards as

3  the Clerk of this Court.

4       MR. SACHSE:  The same exhibit, page 20, parcel 93W-7-36B,

5  Peterson, Pe-t-e-r-s-o-n.

6       Now in Exhibit MF-7-B, on page 9, Parcel 93W-17 and 5, and

7  93W-8 and 11X1, Stenton, S-t-e-n-t-o-n.  I think that is the

8  only one.  Let me run through that exhibit.  There are no

9  corrections in the Exhibit MF-7-C and in MF-7-D.  No, there is

10 none in that one, either.

11      Now on those parcels which I have just listed for the

12 record, your Honor, in each case the land owner has by his

13 deed to the Fallbrook Public Utility District attempted to

14 reserve to the remainder his water rights, riparian rights.

15 The deeds for each of those parcels are now in evidence before

16 Judge Carter as the Fallbrook B-1 series.

17      I regret I cannot at this time give you exact deed cross-

18 references, but I will do so at a later session.

19      THE MASTER:  Very well.  That will be satisfactory.

20      MR. VEEDER:  Now, your Honor, that has raised what I

21 think is partial response to the query that was presented off

22 the record, namely, as to how we should handle these matters

23 of the severance and reservations to which Mr. Sachse has

24 just made reference in regard to defendants Kunkel, Edwards,

25 Peterson and Stenton.

1          MR. SACHSE:   Smyth.

2          MR. VEEDER:   Smyth.   That is correct.   Our view on that,

3   your Honor, is that while the Fallbrook Public Utility District

4   has offered in evidence the deed, the real issue is between

5   Kunkel, Smyth, Edwards, Peterson, Stenton, et al., the United

6   States and all other defendants.   Isn't that the situation?

7          MR. SACHSE: I think that is correct.

8          MR. VEEDER:   And so I believe, as I stated to your Honor,

9   that maybe a consultation could be had with Judge Carter on

10   his return as to how we will handle those matters.   Because I

11   think-- Are you representing those people individually, Mr.

12   Sachse?

13          MR. SACHSE:   No, not as individuals.   There are one or

14   two-- none of this group, as it so happens.   But there will be

15   others who I do represent as individuals.   However, the District

16   has instructed me that in all cases where they have received a

17   deed from a seller which reserved to the seller the riparian

18   rights that I am to undertake to prove in his behalf and

19   without expense to such seller the facts necessary to establish

20   this reservation of riparian right, and to see that an appropriate

21   finding is entered.   So while I have not been retained by them,

22   I do feel it is my obligation to offer the evidence.

23          MR. VEEDER:   I am in complete accord, but I do think

24   Stenton, et al., should be notified that their legal question is

25   presented for resolution, don't you?

1    MR. SACHSE:  It is all right with me.

2    MR. VEEDER:  Either here or at the court or some place,

3  because certainly--

4    THE MASTER:  I would agree, Mr. Veeder, that probably the

5  matter should be presented to Judge Carter for his views as to

6  the method of procedure.  It is quite possible that he would

7  state that the matter should be presented to me in the first

8  instance, and I would make tentative findings and conclusions

9  to submit to him, or he might want to have the entire matter

10  presented to him in the first instance.  So I think probably

11  that is about as far as we can go now.  We have got the facts

12  in the record in connection with the exhibits.

13    MR. SACHSE:  I think it is entirely a question of law,

14  your Honor.  The facts are not going to be in dispute.  The

15  deeds are there, and the effect is the effect of the deed.

16    MR. VEEDER:  It will, will it not, establish the law of

17  the case throughout the valley?  There are other instances.  I

18  am not nearly so worried about these few people here, but

19  throughout the valley we will have the circumstance where a

20  man-- I know of at least one deed where a man has attempted a

21  reservation to the right to the use of water.

22    MR. SACHSE:  There are approximately twenty I will bring

23  up in the Fallbrook area.

24    THE MASTER:  Each case to a certain extent is a law unto

25  itself, depending upon the precise language.  If you have twenty

1   with the precise language, they become much the same.  You have

2   the same issue.  But if the language differs in each deed, each

3   one conceivably could have different results.  I don't know

4   how you could get twenty different results.

5       MR. VEEDER:  I could give you an experience in the San

6   Joaquin Valley that actually happened.  Miller and Lux had

7   written reservations throughout the whole valley, using a little

8   bit different language in their reservations.  And the upshot

9   of it was that some people had a reservation that was treated

10  as a covenant not to sue, but the rest of them were just null

11  and void.

12      THE MASTER:  It will be a question of interpreting what

13  the precise language is.  Presumably if the identical language

14  is used the same result would be reached in each case.  But

15  that wouldn't necessarily follow if the language was considered

16  to be ambiguous and subject to interpretation by parol evidence.

17  There again if the circumstances were the same, however, you

18  would reach the same result.

19      MR. SACHSE:  The five cases which are now specifically

20  before us have identical language.  The circumstances in all

21  five will be identical.  Those negotiated and purchased by the

22  Fallbrook Public Utility District under and pending condemna-

23  tion proceedings, the language will be identical.  The circum-

24  stances will be identical.

25      THE MASTER:  Those five, I take it, would all have to be

1   decided the same way.  But they would not necessarily control

2   the decision on any other reservations and other deeds if

3   those reservations had different language or if the deeds were

4   given under different circumstances.

5       MR. VEEDER:  It is entirely possible.  But I think it

6   is not a matter that can be lightly passed over.

7       MR. SACHSE:  Are we letting it go before Judge Carter

8   for the legal consideration, and in the meanwhile I will try

9   to keep the record straight, and when the situation arises,

10  try to give you cross-references to the Fallbrook exhibits.

11  That is all I will do at the moment.

12      THE MASTER:  Yes, unless Judge Carter directs some

13  different course be pursued.

14      MR. VEEDER:  Do I understand what we have just decided

15  here concludes all of the unfinished business from March 2nd,

16  1959?

17      MR. SACHSE:  So far as I am concerned, there is no

18  intention of any evidence being offered by me subject to these

19  minor corrections that Mr. Veeder and Commander Redd are going

20  to check.

21      MR. VEEDER:  I am speaking of the hearing, on March 2nd,

22  1959, Volume 25, pages 2813 to through 2831.

23      THE MASTER:  Do you have any evidence of your own to

24  present?

25      MR. VEEDER:  We do not.

1        MR. SACHSE:  Before we go to the next, may I--

2        THE MASTER:  Very well.

3        MR. SACHSE:  I understand the question was asked before

4    the proceeding started as to the right of land owners within

5    the Fallbrook Public Utility District to drill wells for

6    production of water for any purpose, including irrigation.

7    And it is my position and the position of the Fallbrook Public

8    Utility District that there are no restrictions of any kind

9    whatsoever on any land owner in the districts right to drill

10   a well for any purpose.  Have I made it broad enough?  Does

11   that answer that question?

12       THE MASTER:  Mr. Veeder, do you care to comment on that

13   statement?

14       MR. VEEDER:  Well, I am pleased Mr. Sachse and I are as

15   one on this point.  I believe it is a rather unique milestone

16   in this litigation.

17       THE MASTER:  I assume, Mr. Sachse-- I don't want now to

18   interject a sour note in these proceedings-- when you say that

19   you mean they have the right to drill it, but, of course, their

20   right to use the water is subject to the usual water rights

21   that they do not injure their neighbors by their manner of use.

22       MR. SACHSE: Oh, yes, your Honor.  In fact, I so stated

23   to the individuals before court.  They have an absolute right

24   to drill the well and use the water but they are subject to the

25   customary restrictions that their use may not injure those who

1    share from the same source.

2         THE MASTER:   And those restrictions were present whether

3    this lawsuit was present or not.

4         MR. SACHSE:   Those restrictions are in the basic law.

5         MR. VEEDER:   Of course, that is inherent in anything I

6    say.

7         THE MASTER:   Yes.   I just didn't want anyone in the

8    audience to have the erroneous impression they have an absolute

9    right to an unlimited quantity of water.

10        Now, is there anyone in the audience that wishes to

11   present any evidence at this time?   I think before the beginning

12   of the session I indicated informally that as far as I know

13   the Government is not prepared at the present time to present

14   any evidence, partially due to the fact that Col. Bowen, who

15   was expected to be the witness, sustained an accident and was

16   not able to be here this morning.   So to that extent the course

17   of the proceedings has been altered somewhat.

18        MR. VEEDER:   In that respect, your Honor, we have here

19   and have had marked for identification Exhibits MR-1 through

20   MR-20.   MR-1 through 19 are the reports prepared by the Office

21   of Ground Water Resources reporting on the lands of quite a

22   number of defendants, showing the soil survey, the land classi-

23   fications.   Now if Col. Bowen was here of course we would

24   simply offer those in evidence.   I personally feel that we have

25   encountered a difficult situation, not so much by reason of the

2843

1  fact he is not here, but by reason of the fact a lot of these

2  people I think haven't seen these reports, which is an additional

3  matter that concerns me somewhat.  In other words, I am becom-

4  ing increasingly of the mind that where we have reports,

5  engineering reports of the character to which I just made

6  reference, the individuals themselves should view them and

7  consider them and advise us as to their acceptability.  And I

8  don't think that has been done.

9       THE MASTER:  I think you are entirely correct, Mr. Veeder,

10  that these reports should be submitted to the individuals whose

11  property is involved, and that, of course, can be done, I

12  assume, by mail.  That is, you have the mailing address for

13  each one.

14       MR. VEEDER:  Copies are going to the people, that is

15  right.

16       THE MASTER:  These have just been prepared and they

17  haven't yet been mailed to them?

18       MR. VEEDER:  I think they are going out today.

19       CMDR REDD:  Could I state for the record that our field

20  man, in the cases where they can be delivered personally,

21  is making deliveries on those today and getting a signed

22  receipt on them.

23       THE MASTER:  And where he cannot deliver them personally

24  they will be mailed?

25       CMDR REDD:  They will be mailed.

2844

1          MR. SACHSE:  Can I ask a question about this exhibit,

2     Bill?  As I understand it,-- oh, you haven't even numbered

3     them, have you?

4          MR. VEEDER:  Yes, this is MR-20.  The map is 21.

5          MR. SACHSE:  And the descriptions are MR-20?

6          THE CLERK:  Yes, MR-20.

7          MR. VEEDER:  MR-20, and the map is 21.

8          MR. SACHSE:  Now, would you look here for a minute.  Where

9     it says Parcel 1, and then there are a number of individuals,

10    that refers to everything included in here?

11         CMDR REDD:  That is United States land.

12         MR. SACHSE:  Where it says Parcel 3, that would be the

13    block marked on MR-21 with a 3 in a circle; is that right?

14         CMDR REDD:  That is right.

15         MR. VEEDER:  I would like, Franz, if I could, I would

16    like to finish what we were talking about on these engineering

17    reports, because it is a matter of concern to me that we-- these

18    are just going out to those people.  I don't know if they want--

19    I don't know, there may be objections to them.  They have been

20    marked for identification.  If they are offered and received

21    in evidence, my view is that they would be subject to review

22    by anybody that wanted to raise objection to them.

23         THE MASTER:  I think that is certainly true.  In other

24    words, even if the particular defendant had seen them and he

25    had no objection to the introduction of them in evidence, some

1  other defendant has at least a theoretical right to object to

2  them.

3      MR. VEEDER:  That is correct.  That is one reason, even

4  though these are marked for identification and I would like to

5  see them in evidence, I think that they should go in as evidence

6  for the individual defendants and I think the individual

7  defendant and anyone else certainly has a right to tender his

8  objection to them at some later time.

9      THE MASTER:  Well, now, is there anything that you can

10  present at this time then in the absence of Col. Bowen, and

11  deferring consideration of these specific reports until the

12  individual defendants have had an opportunity to examine them?

13      MR. VEEDER:  Well, the only thing we have, your Honor,

14  would be this map which has been marked for identification

15  MR-21, which is the map of the Rainbow watershed, and is desig-

16  nated ownership map.  We have also had marked for identification

17  MR-20, which is the tabulation of legal description and owner-

18  ship for the Rainbow area.  Now, this has been the procedure

19  we have pursued in the past.  In other words, identify the

20  legal description on the map and place the legal description

21  and the map in evidence.  Now, again I would tender this thought,

22  we might offer these in evidence, and if anyone has any objec-

23  tion to them why they could raise the objection at some later

24  time.

25      THE MASTER:  I would say in the interests of conserving

1  time that all these exhibits might be offered in evidence now,

2  subject to objection at a later time.  They might be identified

3  as completely as possible to identify them at the present time,

4  for the record.

5      MR. VEEDER:  Well, that is what I would like to do, if

6  I could.  I would just simply go ahead and make reference to the

7  individual tract.

8      THE MASTER:  Very well.

9      MR. VEEDER:  The identification MR-1 is engineering report

10  on the property of Charles E. Stubblefield.  Now, shall we

11  make these offers as we go along on the basis to which I have

12  just made reference?

13      THE MASTER:  I think they might be identified and then

14  all offered as a unit on these conditions.

15      MR. SACHSE:  If you want to do them one at a time I

16  will be prepared to state-- I mean as you go along-- who I

17  represent.

18      THE MASTER:  We will take them one at a time, if you

19  will state who you represent.  Do you represent Mr. Stubblefield?

20      MR. SACHSE:  No, not Stubblefield.

21      MR. VEEDER:  The next is MR-2, George E. Shoudy,

22  S-h-o-u-d-y.

23      MR. SACHSE:  I represent Shoudy.

24      THE MASTER:  Now Exhibit MR-1 will be received in

25  evidence and so marked, subject to the proviso that either

1    Stubblefield or any other defendant may raise objections at a

2    later date.

3       MR. VEEDER:   We would like that applicable to all of

4    them, your Honor.

5       THE MASTER:   Yes, and that will be true as to Exhibit

6    MR-2, likewise.

7       MR. VEEDER:   The next is Identification MR-3, Robert

8    Steinberg, S-t-e-i-n-b-e-r-g.

9       THE MASTER:   It will be admitted subject to the same

10   ruling.

11      MR. VEEDER:   The next identification is MR-4, Vendit,

12   V-e-n-d-i-t, L. Johnson.

13      MR. SACHSE:   What is this again?

14      MR. VEEDER:   Johnson, Vendit L. Johnson.

15      MR. SACHSE:   Wait a minute.   No.

16      THE MASTER:   It will be received subject to the same

17   ruling.

18      MR. VEEDER:   The next identification is MR-5, Ida Boren,

19   B-o-r-e-n.

20      MR. SACHSE:   No.

21      THE MASTER:   It will be received subject to the same

22   ruling.

23      MR. VEEDER:   The next identification is MR-6, Harry A.

24   Chapman.

25      MR. SACHSE:   Yes.   That is MR-6?

1    MR. VEEDER:  MR-6.  And you are representing him?

2    MR. SACHSE:  I represent Chapman.

3    THE MASTER:  Received, subject to the same ruling.

4    MR. VEEDER:  MR-7, Steven Nemeth, N-e-m-e-t-h.

5    THE MASTER:  How do you spell Steven?

6    MR. VEEDER:  S-t-e-v-e-n.

7    THE MASTER:  Thank you.  That will be received subject

8    to the same ruling.  Do you represent Mr. Nemeth?

9    MR. SACHSE:  No, your Honor.  I will just state them if

10   I do.

11   THE MASTER:  Very well.

12   MR. VEEDER:  Rowland W. Schultz, R-o-w-l-a-n-d W.

13   S-c-h-u-l-t-z, Schultz.

14   THE MASTER:  Received, subject to the same ruling.

15   MR. VEEDER:  MR-9, Albert J. Huber, H-u-b-e-r.

16   THE MASTER:  Received, subject to the same ruling.

17   MR. VEEDER:  Engineering report marked MR-10, G. R.

18   Reynolds, R-e-y-n-o-l-d-s.

19   THE MASTER:  It will be received subject to the same

20   ruling.

21   MR. VEEDER:  Everett S. Dennler, E-v-e-r-e-t-t D-e-n-n-

22   l-e-r.

23   THE MASTER:  It will be received subject to the same

24   ruling.

25   MR. VEEDER:  John M. Gustin and Nettie E. Frye.

1    G-u-s-t-i-n, F-r-y-e.

2         THE MASTER:  It will be received subject to the same

3    ruling.

4         MR. VEEDER:  MR-13, Vincent P. Pellanda, Pe-l-l-a-n-d-a.

5         THE MASTER:  It will be received subject to the same

6    ruling.

7         MR. VEEDER:  Engineering report on the property of

8    Robert D. Barnes, MR-14.

9         THE MASTER:  It will be received subject to the same

10    ruling.

11        MR. VEEDER:  MR-15, Donald B. Baldwin.

12        THE MASTER:  It will be received subject to the same

13    ruling.

14        MR. VEEDER:  MR-16, Roy W. Ware, W-a-r-e.

15        THE MASTER:  That will be received subject to the same

16    ruling.

17        MR. VEEDER:  William H. Hitt, H-i-t-t, MR-17.

18        THE MASTER:  That will be received subject to the same

19    ruling.

20        MR. VEEDER:  MR-18, Rollin Brown.

21        THE MASTER:  That will be received subject to the same

22    ruling.

23        MR. VEEDER:  Herbert H. Culling, C-u-l-l-i-n-g, Iden-

24    tification MR-19.

25        THE MASTER:  That will be received subject to the same

1    ruling.

2         MR. VEEDER:   That is the extent, your Honor, of the

3    engineering reports which we have available as of today.   Now,

4    it is my understanding, and I would like the record to show

5    copies of those engineering reports are being today delivered

6    to or mailed to the defendants to whom I have made reference

7    as each of these identifications were offered.

8         THE MASTER:   The record will show that--   Mr. Sachse, you

9    represent only Mr. Chapman and Mr. Shoudy; is that correct?

10        MR. SACHSE:   Yes.   I want to be quite clear that isn't

11   all of the Rainbow Creek watershed.   You must have another

12   bundle of these.

13        MR. VEEDER:   That is correct.   We will run up as high as

14   50 on these, I think, but they are not completed yet.

15        The next identification I have here is MR-20.   It is the

16   Rainbow Creek watershed, legal descriptions and ownerships,

17   which is a parcel tabulation, showing the land descriptions,

18   which in turn are disclosed on the designation MR-21.   And from

19   the title block I will read the identification of that exhibit.

20   It is Rainbow Creek watershed, ownership map, Office of Ground

21   Water Resources, Marine Corps Base, Camp Pendleton, California.

22        Now, I will offer in evidence, subject, of course, to

23   challenge by anyone on these matters, both the Idenfification

24   MR-20 and MR-21.

25        MR. SACHSE:   No objection.

2851

1      THE MASTER:   Those will be received as Exhibits MR-20 and

2   MR-21, subject to objection by any defendant at a later date.

3      Was there any testimony you had to present with reference

4   to any of these exhibits at the present time?

5      MR. VEEDER:   No, I don't think so, your Honor.   I think

6   that the map, which is Exhibit MR-21, is easily read in connec-

7   tion with MR-20, which is the tabulation.   So there will be

8   no problem there.   You can see what we have on the map, the

9   parcel number, which will appear on the tabulation MR-20.

10      THE MASTER:   And is the same parcel number referred to

11   on the particular engineering report?

12      MR. VEEDER:   That is correct.

13      THE MASTER:   That refers to that parcel?

14      MR. VEEDER:   That is correct.   We have no further evidence

15   in this matter, your Honor.

16      THE MASTER:   Do you know when Col. Bowen will be able to

17   testify?

18      MR. VEEDER:   Well, I understand he will be here at noon

19   today.

20      MR. SACHSE:   Your Honor, very hastily-- this is an awfully

21   long exhibit, of course, MR-20, and I have a lot of--if your

22   Honor wants to recess, I will try by your reconvening after

23   lunch to give-- or tomorrow, I can do it-- to give both the

24   Court and Mr. Veeder an exact rundown of how many of these

25   hundred and some parcels I will be representing.   There is a

1    lot of them.  Going through them, I can see an awful lot.

2         MR. VEEDER:  You can give it to us by noon?

3         MR. SACHSE:  I think I can do it that fast.  It is just

4    a question of checking against my files.  But there is a bunch.

5    Just going through, I can see it.

6         THE MASTER:  I was wondering if we could adjourn at this

7    time, then, maybe until 1 o'clock.  Col. Bowen will be avail-

8    able then.  And start this afternoon and try to present as

9    much of the evidence as possible this afternoon.

10        MR. VEEDER:  I think that would be desirable.

11        MR. SACHSE:  It would be a great help to me, and I think

12   I could speed things up if I have time to run through this,

13   help Mr. Veeder and you.

14        THE MASTER:  Very well.  Now, are there any defendants

15   that wish to present any evidence at this time?  So far as Dr.

16   Henderson is concerned, apparently your engineering report is

17   not among those which is now presented, so we don't have that

18   available for you.  Is there anything which you wish to present

19   independently of that report?

20        MR. HENDERSON:  No, your Honor, not independently.  I

21   would like to know if you are going to consider only Rainbow

22   Creek first, so I can be here when--

23        MR. VEEDER:  That has been our intention.

24        MR. HENDERSON:  That is the intention.  The paper said

25   both.

1          MR. VEEDER:  I think the notice was jurisdictional.

2          THE MASTER:  Yes, the notice has to be somewhat broader

3   possibly than the actual area which will be presented on any

4   single day.

5          MR. HENDERSON:  I will come back when the main river is

6   considered, if that is satisfactory, your Honor.

7          THE MASTER:  That is perfectly satisfactory so far as I

8   am concerned.  I don't know how we can give you notice which

9   will pinpoint any particular date on that, but we will try

10  through general notices to make it convenient as possible for

11  you, in any event.

12          Now, is there anyone else here that wants to give evidence?

13          MR. CLEVELAND:  I would like to know where I stand.

14  Nobody can give me any information from the office.

15          THE MASTER:  What is your name?

16          MR. CLEVELAND:  Cleveland.

17          THE MASTER:  Where is you property located?

18          MR. CLEVELAND:  Fifth and Mission.  Mission by Fifth

19  Street.  I am right there at the border.  I was served and I

20  was notified-- I was notified verbally that I was out.  And

21  I was resurveyed.  And the survey had said I was out.  No  work,

22  nothing has been done on it.  I don't know anything about it.

23          THE MASTER:  Mr. Veeder, Mr. Sachse.

24          MR. CLEVELAND:  The watershed is in the San Luis Rey River.

25          THE MASTER:  If you would come here, Mr. Cleveland.  I

1   think we had better use the exhibit which is on the easel here.

2        Mr. Cleveland, do you want to come to the map?

3        MR. VEEDER: Better use the exhibit.  Out records show

4   your property is situated almost in its entirety in the San

5   Luis Rey watershed, designated Parcel 178.  Are you able to

6   locate your property?  You have seen the legal description

7   of it?

8        MR. SACHSE:  Yes.

9        MR. CLEVELAND:  Yes, although I am in the townsite, K & L

10  Townsite, Lot 2.

11       MR. VEEDER:  That is entirely possible.

12       MR. CLEVELAND:  I have never been notified of anything

13  except the summons.  The man doing the work at the office in

14  Rainbow also stated that I should not have been served.  He

15  came in again and said that the surveyors would be in again, which

16  they did, surveyed the property over again, and said I was out.

17       THE MASTER:  Now, do you own more than one parcel of

18  property or do you have a trust deed or some interest in more

19  than one parcel of property?

20       MR. CLEVELAND:  The property is divided up legally in

21  Block K and L of Rainbow Townsite and Block L, Lot 2, of Rainbow

22  Colony.  It consists of ten acres.

23       THE MASTER:  But it is all one specific parcel?

24       MR. CLEVELAND:  It is all in one specific piece.  I have

25  since sold the ten acres.  They have not been served.  It would

1    be the ten acres-- well, let's say this is Main Street, this

2    would be Fifth Street.  That is running east and west.  This

3    is running north and south, approximately.  There is five acres

4    here in city lots.

5        THE MASTER:  This would be on the south?

6        MR. CLEVELAND:  That would be on the north side.  My ten

7    acres back here like that, with five acres here.  There is

8    20 acres in the subdivision plot, see.

9        THE MASTER:  You have the 15 acres now excluding the

10    five acres at the corner of those two streets?

11        MR. CLEVELAND:  That is it exactly.

12        MR. VEEDER:  It appears to me, your Honor, Mr. Cleveland's

13    property-- you are not using any water at all from the Santa

14    Margarita river Valley?

15        MR. CLEVELAND:  Absolutely not.

16        MR. VEEDER:  I will tell you what we will do, we will be

17    in contact with you, and as long as you are outside of the water-

18    shed very largely I think we can make arrangements with you

19    personally to get you out of this lawsuit.

20        MR. CLEVELAND:  In fact, I have no water except Metro-

21    politan water.  There is a deep well there, a post hole.  I

22    have got a two-and-a-quarter-inch cylinder on it.  There is

23    two shallow wells at the house, and we have got two-inch float

24    valves on them.  And everything I have made in that ranch I

25    have put back hunting for water.  And all you have to do is

2856

1  contact the Metropolitan or the San Diego County Water

2  Authority and you will find the ditch was rock from top to

3  bottom from the tunnel north.

4  MR. VEEDER:  Mr. Cleveland, what we will do is be in

5  contact with you, and I think you are out of the lawsuit.

6  MR. CLEVELAND:  That settles it.

7  THE MASTER:  Then it is understood Mr. Cleveland need not

8  appear again unless you specifically notify him.

9  MR. VEEDER:  And he need not remain.  We will take care

10  of him.

11  MR. CLEVELAND:  Thank you very much.

12  THE MASTER:  Then--

13  MR. CLEVELAND:  By the way, gentlemen, in regard to

14  flood waters, the armed forces-- I didn't pay no attention--

15  This last year at least 500 inches of water came off my place.

16  The armed forces came through there and took flash bulb pictures.

17  A man, the same insignia as that gentleman has.  The water goes

18  to the San Luis Rey River.

19  MR. VEEDER:  Right.

20  MR. CLEVELAND:  The gentleman who was running the office

21  in Rainbow said he waded through it.

22  MR. VEEDER:  All right, we will take care of you, Mr.

23  Cleveland.

24  THE MASTER:  Then there is nothing further to present

25  until Col. Bowen is ready at noon.

2857

1          MR. VEEDER:   That is how it appears to me, your Honor.

2          THE MASTER:   In that event then we will recess now

3   until 1 o'clock.   If you can get it done by 1 we will try and

4   finish as much as we can this afternoon.

5          (Noon recess.)

1          Fallbrook, California, Monday, April 6, 1959.   1 P.M.

2

3          MR. SACHSE:  Your Honor, I would like to state the

4     appearances that I am making in this Fallbrook Creek watershed.

5     I have given a list of these to Mr. Veeder, but I think I

6     had better also state it for the record.

7          Parcel 3, Crabtree.

8          Parcel 7, Crabtree, Knight and others.

9          Parcel 21, Osborne.

10         Parcel 39, William Hayes.

11         THE MASTER:  By the way, are these parcel numbers that

12    you are giving by reference to Exhibit MR-21?

13         MR. SACHSE:  That is correct, your Honor.

14         Parcel 58, Bouslog, Keller and others.

15         Parcel 60, Yaple, Y-a-p-l-e.

16         Parcel 61, W. D. Hayes.

17         Parcels 50 and 51, Chess.

18         Parcel 68, Stenton.

19         Parcel 69B, Ray and Barr, B-a-r-r.

20         Parcel 74, Nicholas.

21         Parcel 78, Hamilton.

22         Parcel 84, Paulson, P-a-u-l-s-o-n.

23         Parcel 95, Hook.

24         Parcel 100, Sachse.

25         Parcel 101, Capra.

2859

1        Parcel 104, McCracken.

2        Parcel 107, Ghika de Arocha, G-h-i-k-a d-e- A-r-o-c-h-a.

3        MR. VEEDER: That is Alexander Ghika de Arocha.

4        MR. SACHSE:  Parcel 126, Costello.

5        Parcel 151, Ehrig, E-h-r-i-g.

6        Parcel 152, Clemons.

7        Parcel 154, Riggle, R-i-g-g-l-e and Shoudy, S-h-o-u-d-y.

8        Parcel 157, Chapman.

9        Now, in addition, Parcel 66, as shown on MR-21, is now

10   entirely owned by the Fallbrook Public Utility District, and

11   in addition portions of the following parcels are owned by the

12   Fallbrook Public Utility District, and I will give the number

13   of the parcel and the name of the owner who appears in Exhibit

14   MR-20.

15        Parcel 57 identified as Warren's parcel on MR-20.

16        CMDR. REDD:  Just a minute, Mr. Sachse.  We have made

17   these corrections on this list.  If you will notice, you prob-

18   ably have a carbon copy sheet inserted for those particular

19   parcels which has corrected those property descriptions.

20        MR. SACHSE:  Oh, you have.  You have deleted already the

21   P.U.D. portion.

22        MR. VEEDER:  Yes.

23        MR. SACHSE:  All right.  Then I will just drop the rest

24   of this.

25        Then I would like, your Honor, unless there are questions

1   on those appearances of mine, to identify for the record four

2   parcels that are represented by Mr. Harry Teasdall, T-e-a-s-

3   d-a-l-l, attorney of Fallbrook, who cannot be here this after-

4   noon, but asked me to state for the record his clients in this

5   watershed.   They are Parcel 70, Pyron, P-y-r-o-n.   Parcel 75,

6   Estate of Eachel, E-a-c-h-e-l.   Parcel 76, Gallacher,

7   G-a-l-l-a-c-h-e-r.   And parcel 71, Sim, S-i-m.

8         I think that does it, then, your Honor.

9         MR. VEEDER:   I want to be sure your list is correct

10   on this MR-20, and would you just check back against the

11   exhibit that is in the record.

12         (Discussion off record.)

13         MR. VEEDER:   We would like to proceed then, if it is all

14   right.

15         THE MASTER:   Very well, you may proceed, Mr. Veeder.

16

17                   ALLEN C. BOWEN,

18   recalled as a witness, having been previously sworn, testified

19   as follows:

20

21                 DIRECT EXAMINATION

22   BY MR. VEEDER:

23         Q   In regard to the Exhibits MR-1 through 19, I ask you,

24   Col. Bowen, to state into the record under whose direction

25   those exhibits were prepared.

1        A   They were prepared under my direction and supervision.

2        Q   And assuming that you were interrogated in regard

3   to the matters contained in those reports, would your testimony

4   into the record be the same as the content of those reports?

5        A   Yes, sir.

6        Q   Now, would you correlate the Exhibits MR-1 through

7   MR-19 with the Exhibit MR-20, which is a tabulation, and MR-21,

8   which is the map of Rainbow Creek watershed, ownership map?

9        A   Yes, sir.  The Exhibits MR-1 through 19 each have now

10  a parcel number in red ink written just below the exhibit

11  number in the upper right-hand corner of the report covered.

12  That parcel number in each instance refers to the parcel number

13  contained in Exhibit MR-20.  The parcels appear in numerical

14  order in the tabulation, MR-20.  And taking, for example, the

15  Exhibit MR-1, which is Parcel No. 49, and turning to page 28

16  of Exhibit MR-20, you find that parcel at the top of the page.

17  It is designated parcel 93W-1 and 2, which indicates it is

18  in Township 9 South, Range 3 West, Sections 1 and 2.  And the

19  number 49 follows that legal subdivision.  The description

20  of the property then follows the parcel number, and the

21  apparent owner in this instance, Charles E. Stubblefield, Sr.,

22  is listed therein.

23       Q   Turning to MR-21, would you identify your MR-1 from

24  the standpoint of legal description and also parcel number?

25       A   May I have that red pen, Mr. Veeder, please?

1  Again taking Exhibit MR-1 and referring to Exhibit MR-21,

2  the number 49 encircled is contained within the outer limits

3  of the property reported on in Plaintiff's Exhibit MR-1.  It

4  lies partly in Sections 1 and 2, Township 9 South, Range 3

5  West.  And with a red pencil I will write "MR-1".  I believe

6  your Honor wanted it correlated with Exhibit No. 1.

7      THE MASTER:  In certain instances a parcel may be too

8  small,but where it is possible I would like to have that done.

9      THE WITNESS:  With a red pencil I will write M-R-1 over the

10 encircled numeral 49, which appears on MR-21.

11 BY MR. VEEDER:

12     Q  And you can follow through in regard to each one of

13 the exhibits MR-1 through 19 and locate them in that same

14 manner on MR-21; is that correct?

15     A  Yes, sir.

16     MR. VEEDER:  Your Honor, could we do this out of court?

17 I think it would probably save some time if we did that.

18     THE MASTER:  So far as I am concerned it is acceptable.

19     MR. SACHSE:  It is all right with me.

20     THE MASTER:  Very well.  You can do that out of court,

21 then.

22     MR. VEEDER:  I have no further questions then of Col.

23 Bowen.  If your Honor or Mr. Sachse has--

24     MR. SACHSE:  I have no questions at this time.  Can you

25 tell us what the rest of your procedure is, Mr. Veeder, how you

1  figure on going ahead?

2      MR. VEEDER:   Now, here is the situation as we see it,

3  your Honor.

4      As I advised the Court, I think about six weeks ago,

5  we have upwards to around fifty of these engineering reports

6  to put into the record.  We have completed nineteen of them,

7  which are presently exhibits in the record today.  Col. Bowen

8  advises me that we will have in about a four-week period

9  completed all of the engineering reports for which requests

10  have been made.  At the outside it is six weeks.  And if I am

11  wrong in that, Col. Bowen, I would like to have you make it

12  clear.

13      THE WITNESS:   That is correct, sir.

14      MR. VEEDER:   The thought that I would like to tender

15  to your Honor would be this, that we could convene again in

16  May at your Honor's convenience.  Looking at the calendar, and

17  giving us the very outside period of time in which to get our

18  work completed, if we were to convene again on Wednesday, May

19  6, and run the 6th, 7th and 8th, that would bring us down to

20  very nearly a completion of all the engineering reports

21  concerning which Col. Bowen's office has been requested to

22  prepare in the Rainbow area and in the area below the con-

23  fluence of the Murrieta and the Temecula, on down to Sandia;

24  is that correct, Colonel?

25      THE WITNESS:   Yes, sir.

2864

1     MR. VEEDER:  And that would, in other words, just about
2  complete all of the engineering reports that we would have.
3  It might be there would be a few we had not completed, your
4  Honor.  And then I would ask for another hearing before you in
5  that connection.

6     By taking that course we would be able to be more
7  efficient with our time and your time.

8     THE MASTER:  You wouldn't be able to present that evi-
9  dence you believe any earlier than that week?

10    MR. VEEDER:  No, I don't believe so.  I have asked
11  Colonel to give me the best date on that, and that is what he
12  gave me just a minute ago.  But that would complete all of our
13  work below the confluence of the two streams.

14    THE MASTER:  Then after that evidence was presented, what
15  testimony would there be to be presented before me?

16    MR. VEEDER:  Well, we, of course, have -- I think we
17  have innumerable small parcels scattered out throughout the
18  valley, and I don't know about the segregation of areas, but
19  I think that between now and the dates which I just last mentioned
20  we shall make a determination as to where we would function
21  and where we would go ahead.

22    THE MASTER:  How does that fit in with the proposed
23  schedule before Judge Carter?

24    MR. VEEDER:  Well, the schedule before Judge Carter at
25  the present time-- and I want Mr. Sachse to check me on this,

1  because I am not-- I am simply stating my understanding of it--

2  the trial commenced on May 12th of 1959. It is my understand-

3  ing that at that time that if Mr. Krieger has anything further

4  to put in he will go ahead. Then the Vail Company will proceed

5  with their case.

6      MR. SACHSE:   That is right.

7      MR. VEEDER:   And which would run us down to-- I won't

8  say how long it will run us. The question was raised to me in

9  regard to summer vacation, and as I understand it, Mr. Sachse

10  desires to tour Europe after or during-- commencing the last

11  week in June. But he can speak for himself on that.

12      MR. SACHSE:   We have an agreement with his Honor, Judge

13  Carter, that there will be a 60-day recess, approximately 60

14  days, during July and August. And we hoped at the time he made

15  that agreement, after checking with all counsel, the hope was

16  we might be through or we would be through with the case in

17  chief of everybody before him. That would leave wide open,

18  of course, Mr. Veeder, who can't estimate his time, we realize,

19  on rebuttal until he knows what the Vail Company does. But

20  the idea would be we would certainly be finished with the case

21  in chief, Vail and others, in all probability-- I won't say

22  certainly. But then the United States would still have the

23  question of rebuttal before Judge Carter after the summer

24  recess.

25      MR. VEEDER:   That is the way I look at it. I don't see

2866

1    how we can do otherwise than to--

2         MR. SACHSE:  We don't know until the Vail case goes on.

3    That is the whole point.

4         MR. VEEDER:  If it goes into a full trial I don't need

5    to describe what it would be.

6         THE MASTER:  During the time then in May and June it

7    would be before Judge Carter you would probably be in the same

8    situation you have been in the last several months, when you

9    won't be able to present any additional evidence in hearings

10   here at Fallbrook.

11        MR. VEEDER:  I had thought this, your Honor-- I would

12   like very much to do it-- in looking at the calendar, if we

13   could-- it would suit me very well to schedule May 11th, if

14   that is amenable to Col. Bowen, to wind up the reports if we

15   had them finished.  Would that be all right, Colonel, do you

16   think?

17        THE WITNESS:  Yes, sir.

18        MR. VEEDER:  In other words, we would not be in trial on

19   Monday.  Maybe the 18th would be more suitable to you, I don't

20   know.  But I think we could use a Monday to wind up everything

21   below the confluence of the Murrieta and the Temecula, because

22   I think we should get that finished.

23        THE MASTER:  Of course, as far as I am concerned both

24   those two dates are not good.  Monday the 25th would be better,

25   from my point of view.  That time would give you a greater

2867

1   period of time.

2       MR. VEEDER:   The 25th would be very happy for us as far

3   as we see it now.

4       MR. SACHSE:   You still have in mind to follow Mr. Veeder's

5   suggestion that we would take the 6th of May, was it not?

6       MR. VEEDER:   The 6th,7th and 8th.

7       MR. SACHSE:   The 6th, 7th and 8th of May.   Is that still

8   on?

9       THE MASTER:   Could you make that the 5th, 6th and 7th,

10  because I have a meeting on the 8th.   That would be Tuesday,

11  Wednesday and Thursday.

12      MR. VEEDER:   I can adjust that, yes.   I was going up

13  north, but I can move that up a little bit.

14      MR. SACHSE:   Your Honor, that would be then the 5th, 6th and

15  7th, your Honor, of May?

16      THE MASTER:   The 5th, 6th and 7th of May.

17      MR. SACHSE:   That is Wednesday, Thursday and Friday of

18  May.

19      THE MASTER:   That is Tuesday, Wednesday and Thursday.

20      MR. VEEDER:   May 5th, 6th and 7th is Tuesday, Wednesday

21  and Thursday.

22      MR. SACHSE:   What am I looking at?

23      MR. VEEDER:   This is '59, Franz.

24      MR. SACHSE:   Yes, I thought I had '59 here.   Oh, I am

25  just reading the date wrong.   Tuesday, Wednesday and Thursday.

8868

1   You are correct.

2       MR. VEEDER:  Then we would adjourn to the 25th; is that

3   correct, your Honor?

4       THE MASTER:  That is my thought, take those three days

5   and then the 25th.

6       MR. VEEDER:  I think the more time the Colonel has the

7   better.

8       THE MASTER:  That would give him an additional almost

9   three-week period in there to wind up any loose ends on that.

10      MR. SACHSE:  May I make an inquiry about this, your

11  Honor?  Do I understand, Mr. Veeder, that is going to mean the

12  Colonel will have engineering reports on everything below the

13  Narrows?

14      MR. VEEDER:  Everything for which request has been made.

15      MR. SACHSE:  Everything for which engineering requests

16  have been made.  That is why I asked the question.  Don't you

17  think there are people going to be popping in saying, "I didn't

18  know about it, Colonel.  Won't you make me a survey?"

19      MR. VEEDER:  I think that is going to be going on until

20  his Honor takes the axe and says that is the end of the lawsuit.

21      THE MASTER:  We had that on De Luz Creek and I think we

22  will probably have it here.

23      MR. VEEDER:  And I think it is proper.

24      THE MASTER:  Yes, there is no way we can anticipate the

25  number of those requests until they come in.

1      MR. VEEDER:  That is right.

2      THE MASTER:  So if we can plan now for dates to present

3   the evidence which we know we will have, then if these other

4   requests are made, after they are made we can figure how long

5   it is going to take the Colonel to get the reports prepared and

6   then how much time it will take to present the reports when

7   they have been prepared.

8      MR. VEEDER:  I think that is the only thing we can do,

9   Mr. Sachse.

10     THE MASTER:  Then after that hearing there would be none

11  tentatively scheduled until sometime then in September.

12     MR. SACHSE:  No, your Honor, I don't believe that is so.

13  I think there was some idea you might move into the upper

14  watershed while--

15     THE MASTER:  If you are going to be presenting evidence

16  before Judge Carter all through the month of June--

17     MR. SACHSE: But the idea was during the July-August

18  recess, while I am going to be away I have relatively few

19  clients in the upper watershed, and I have an understanding

20  with Mr. Krieger if your decision as to which subwatersheds you

21  took first should embrace any of my clients, he will put on the

22  evidence.  So there will be no request that you delay hearings

23  in the upper watershed because of the fact I am away.

24     MR. VEEDER:  I sincerely hope we will be able to operate

25  during that time.

8870

1      MR. SACHSE:  Mine can go on.  I will not request any
2  delays because of my absence.

3      MR. VEEDER: I would be available up until August 10th.
4  Then I was going to take a vacation the last part of August,
5  be back the first of September.

6      As I see it, if we are going ahead with hearings I think
7  it is up to Judge Carter and you.

8      THE MASTER:  Yes.

9      MR. VEEDER:  But my own feeling is-- and, of course,
10  dependent upon Col. Bowen's work, how things are going with
11  him,-- I am in favor of pressing on and getting these things in
12  if we can.

13      THE MASTER:  I certainly would like to do it, but it is
14  apparently impossible to present anything further between now
15  and say the 5th of May, then, as I understand it.

16      MR. VEEDER:  That is correct, your Honor.  But don't you
17  think it is desirable for us to continue completing our
18  engineering reports in anticipation of getting the material
19  in for the small user as fast as we can?

20      THE MASTER:  That is correct.

21      MR. VEEDER:  In other words, we will simply go ahead with
22  the requests before us.

23      THE MASTER:  Then as far as my own plans are concerned,
24  during the month of July presumably the reports could be avail-
25  able and testimony could be presented.

2871

1    MR. VEEDER:  We would undertake it, yes, your Honor.  Is

2    that agreeable, Col. Bowen?

3    THE WITNESS:  Yes.

4    MR. VEEDER:  In so far as we are concerned, I think-- I

5    don't know how long the rebuttal will be, but it is going to be

6    a comprehensive undertaking.

7    MR. SACHSE:  If you jump up to Murrieta drainage, as

8    distinct from Temecula, during the summer months, I have very

9    few clients there, not over two or three, which is where most

10   of Krieger's are.  And Mr. Krieger will undertake to place the

11   evidence in for my clients, what little there will be.

12   CMDR. REDD:  Let me state something so far as that is

13   concerned.  That is the area where our titles are the most

14   complicated, and our original plan was we would swing up the

15   main stem of the Temecula first, then go around to that.  So

16   we have left our title research to that part for the most part

17   to the last.

18   MR. SACHSE:  It doesn't matter to me, either one.

19   MR. VEEDER:  It is wide open.  I think the three principal

20   people in this matter are Judge Carter, Judge Cranston and Col.

21   Bowen, because we have to schedule it to fit your desires. And

22   also, as we all know, Col. Bowen has the job for the Ground

23   Water Resources.  We will go as fast as we can and as directly.

24   MR. SACHSE:  I will not request any delays in the upper

25   watershed.

1          I do have another question.  Do you intend, Mr. Veeder, to

2   put on any basic testimony on this entire subwatershed, or is

3   it all going to be in the form of the engineering reports?

4          MR. VEEDER:  I think the individual engineering reports

5   will be the basic data.

6          MR. SACHSE:  Then I do think I have some questions of

7   Col. Bowen, whether this is the time or later.

8          Can we go off record for just a minute?

9          (Discussion off record.)

10         MR. SACHSE:  For the record, I have no cross-examination

11  of Col. Bowen at this time.

12         THE MASTER:  Now I notice Mr. and Mrs. Pepple have

13  returned.  And I understand they have some questions in connec-

14  tion with a report which the Office of Ground Water Resources

15  made sometime ago, which is not one of the exhibits which was

16  introduced in evidence this morning.  However, I believe that

17  Col. Bowen could probably testify upon the basis of the report,

18  a copy of which they have with them.  And would you like to

19  ask Col. Bowen any questions at this time, Mr. Pepple?

20         MR. VEEDER:  Why don't you take my chair, Mr. Pepple.

21

22

23

24

25

8873

1                          ALLEN C. BOWEN,

2    recalled as a witness herein, having been previously sworn,

3    testified further as follows:

4

5                          CROSS-EXAMINATION

6    BY MR. GRANVILLE C. PEPPLE:

7        Q   I would just like to get the-- understand what this is

8    here.  Now, Col. Bowen, the man that came out there, you sent

9    one man out there later for a survey of the place?

10       A   Yes, sir.

11       Q   And while he was there why he said he didn't take any

12   land that had a certain grade to it.  And I forget now what the

13   degree was.  And some of that land there now is in avocados and

14   producing.  So I would like to have a little better understand-

15   ing of -- in other words, if I want to put trees there, I think

16   that is my right.

17       A   I am not going to deny you, Mr. Pepple, putting trees

18   wherever you want.

19       Q   That is right.  But in your engineering report then

20   you cut me down considerably to what the other people had

21   accepted, you see, when Mr. Turnbull was out there.  And your

22   engineering report-- now their allowance was five miner's inches.

23   In other words, 23 acres that would be suitable for crop land.

24   And your engineer cut it down to 15, I believe.  That is your

25   last engineer.

A   I would have to refresh my memory and look over your report again, Mr. Pepple. I remember it very well, but when it comes right down to acreages, I would have difficulty.

THE MASTER:  Can you let Col. Bowen look at this report so he will know what it is you are asking him about?

MR. PEPPLE:  Yes, sir, you bet. And I would like to get it straightened out, because this is the report now you had out there last.

THE WITNESS:  I believe the Fallbrook Public Utility District took a portion of this, now, didn't they?

MR. PEPPLE:  The 3.41 acres at the foot of the grade there-- I mean along the creek there, Colonel. And I believe that there is about a half-acre of that that we considered was in the pasture land.

BY THE MASTER:

Q   Now, Col. Bowen, for the sake of the record can you state whether this report that you are now looking at involves land which is shown on Exhibit MR-21?

A   Yes, sir, it does.

Q   Which parcel number?

MR. SACHSE:  63, isn't it?

THE WITNESS:  This is a portion of the Southwest Quarter of the Northwest Quarter, Township 9 South, Range 4 West, Section 9.

2875

BY THE MASTER:

Q   Is that marked No. 63 on that map?

A   The Southwest of the Northwest is No. 63, yes, sir, on Plaintiff's Exhibit MR-21, Parcel No. 63.

Q   And this report that Mr. Pepple has given you contains what findings by your staff as to irrigable acreage?

A   We found 15½ acres susceptible to irrigation on this entire quarter-section-- I mean a sixteenth of a section. A portion of that would be reduced by this taking that the Fallbrook Public Utility District made.

Q   That is, the Fallbrook Public Utility District took something between three and four acres?

A   Yes, sir.  And I have no record of just how much of his irrigable land would be included in that acreage.  I believe, though, Mr. Pepple, the land primarily in dispute or in question was the higher land.  Is that not correct?

MR. PEPPLE:  That is correct.  You see the land where the avocados are are clear down to the line, and then clear down to the road.  That is all very good land in there, and it is deep soil, very good soil.

THE MASTER:  Just a minute, Mr. Pepple.  Maybe if you are going to be testifying you should be sworn first.  Then what you say can be considered as part of the record.  So, Mr. Clerk, will you--

2876

1                    GRANVILLE PEPPLE,

2     called as a witness in his own behalf, sworn, testified as

3     follows:

4

5                    DIRECT EXAMINATION

6     BY THE MASTER:

7         Q  Do you want to tell me, then, Mr. Pepple, what you

8     think about your property and the respects in which you believe

9     that Col. Bowen's report is incomplete or erroneous?

10        A  The way I understand it, the man that came out there,

11    the geologist that surveyed it, he said that-- I asked him

12    about that steep soil.  And he said that they only took a

13    certain slope.  If it was steeper than that they didn't take

14    it.  And we know-- and I have avocados growing on some of the

15    slope I believe he didn't accept.  And they do produce on steep

16    slopes.  And I don't want to lose that, the right to that land,

17    you know.

18        Q  Well, now, can you describe your property for me, then?

19        A  You mean describe the property?

20        Q  Well, the nature of the slope.  You referred to steep

21    slopes.  Is all your property hilly?

22        A  Yes, most of it is on the hillside, yes, sir.

23        Q  And how much of it is actually planted to avocados?

24        A  Well, there is only 400 trees at the present time.

25        Q  About how many acres would that be?

1     A   Well, it is somewhat over four acres in area, but it

2     is-- I don't know, that part of it--

3     Q   And part of that area which is actually planted was

4     not included in this engineering report as avocado land; is that

5     correct?

6     A   That is right.  And also the slope that we plan on

7     using was not included in that, I believe.

8     Q   How many acres are there of this land which is planted

9     and which was not regarded as irrigable in this report?

10    A   Now much part is planted?

11    Q   Yes.

12    A   Well, I couldn't say exactly as to that, but I do know

13    that there is a few trees, some trees that is growing on that,

14    and I plan on-- and it is good soil and I plan on going on

15    farther down.

16    Q   How many acres altogether do you believe are irrigable

17    in addition to the number of irrigable acres as stated by Col.

18    Bowen, that is, 15½ acres?

19    A   Well, I was pretty well satisfied with that 23 acres,

20    the first.  There was several boys out there.  There was at

21    least five and maybe six of the boys out there that took this

22    survey the first time.

23    Q   That is, you believe you have 23 irrigable acres?

24    A   That is right, yes, at least 23 acres.

25    Q   And for what crops, avocados?

1    A   I have berries and then oranges.  The oranges are

2    growing, producing right at the 500-foot level, better than

3    500-foot level.  And avocados.  Then there was a grape vineyard

4    there on the place when I moved there.  But it was claimed by

5    another party until we had another survey and finally found

6    out the grape vineyard was mine.  And I lost it, so I can

7    really put it back into a grape vineyard again.  And it is

8    very fine soil.  I know it was very good for that purpose.

9    And I feel that I could get-- I could use the water that I

10   have-- more than what I have been allotted on this survey.

11       Q   Well, what is the source of your water?

12       A   It is a well situated right in the creek.  That is

13   our diversion point.  And the source of the water is some

14   surface water and also there is a crack in the granite which

15   causes a spring to form there, and there is where we get most

16   of our water, right out of this spring.

17       Q   I notice on this Parcel No. 63 on the map there is a

18   little square diamond.  Do you know what that represents on your

19   property?  Is that your house?

20       A   I wouldn't know.  The house is right on the creek.  Is

21   this diamond right on the creek?

22       Q   This is your parcel, this rectangle in here?

23       A   Um-hmm.

24       Q   And this seems to be the flow of the creek across your

25   parcel.

1          A   That must be the house, then.  And that may be.  The

2     diversion point is right by the house, close to the house.

3     This diversion point has been there since I have been there,

4     and I have been there nineteen years.  And I know that water

5     has been pumped out of there since 1890.  That was a homestead.

6     And there have been pumps more or less, and I have had pumps

7     there during my time.  But the water has been used since 1890.

8          Q   On how many acres of land?

9          A   Well, I wouldn't know about that, because some of

10    that land even across the creek was developed and then when I

11    came there, well, it was let go and hasn't been redeveloped

12    again.

13    BY MR. VEEDER:

14         Q   Is your house on the land taken by the Fallbrook--

15         A   No, our house is not on the condemned land that is

16    taken by Fallbrook.  Fallbrook is taking our-- up to-- about

17    up to within 20 feet of the diversion point on the creek.

18    BY THE MASTER:

19         Q   How long have you personally taken water from the

20    creek?

21         A   Nineteen years.

22         Q   And what is the amount of land that you have irrigated

23    with that water?

24         A   Well, I believe that at one time we figured 13 acres,

25    but-- that I had under development.

2880

Q  Has that area been under development for the entire period?

A  Well, no.  There is times it hasn't been and times it has there.

Q  Well, has substantially that amount been developed through the entire period?

A  Well, my pump before this one was a five by five Myers reciprocal pump, and then I had also a centrifugal pump, when there was plenty of water, laying right in the creek and pumped out and all.  And now then I have a pump that will produce about 80 gallons a minute to the top of the hill.

Q  What I meant, Mr. Pepple, was have you irrigated between say 12 and 13 acres consistently year after year?

A  No, I wouldn't say that, because sometimes I have let it lay idle and I haven't used the land.

Q  For how long a time would that be?

A  Well, different years.  Whenever I was prepared to take care of it and had the time, I would.  And when I wasn't I wouldn't.  I haven't been too well supplied with money to do this work with, and I would have to lay off.  But I have intentions of planting that hillside.  It is started, and it is a very good hill.  That is where the avocados are.

Q  That would be the balance of this 23 acres?

A  Well, as far as I am concerned-- and I gave $500 to get a man to appraise it, and he said there was very little

1  of the land that wasn't usable. But then as far as I am

2  concerned the 23 acres would be acceptable. And I feel like

3  that I could use that amount. And that would be my right to

4  use that amount.

5    THE MASTER: Mr. Veeder, do you want to ask Mr. Pepple

6  any questions?

7    MR. VEEDER: I have no questions.

8    THE MASTER: Mr. Sachse?

9    MR. SACHSE: No questions.

10    THE MASTER: Now do you want to ask Col. Bowen any more

11  questions? You were asking him questions and then you were

12  also stating your own beliefs. So I asked you to be sworn

13  so that your testimony could be considered. Now, you, of

14  course, have the right to ask Col. Bowen additional questions

15  or make additional comments.

16    THE WITNESS: I just wonder if it would be possible to

17  revise that geological survey that would give me the benefit

18  and use of my land, because I feel like that a riparian user

19  has that right if I want to develop later, so this will all

20  come up later. If I develop it then there would be another

21  squabble, wouldn't they?

22    THE MASTER: Col. Bowen, maybe we should give you a few

23  minutes to look it over and see if you believe it is subject to

24  revision.

25    THE WITNESS: And may I also state that we have had this

1    in court before-- that is, the people that owned it before I

2    did.  And we have this judgment here and it states in there,

3    and I was told when I bought the place, that the water rights

4    were there.  And this judgment gave to these-- the people that

5    owned the place all the water in the Rainbow Creek up to 20

6    inches.

7              THE MASTER:  Could I see the copy that you have there?

8              THE WITNESS:  Yes, sir, you may see it.  And I have also

9    filed one with the Court.  I believe that is it, isn't it?

10             THE MASTER:  Yes.

11             MR. VEEDER:  Your Honor, I am going to interpose an

12   objection at this time-- just for the record, Mr. Pepples.

13   Certainly we are not bound by that judgment.  And I have to be

14   guided by what Col. Bowen says in regard to the acres and the

15   right to use the water.  I would like to preserve and reserve

16   my objections, both as to Mr. Pepple's construction of the

17   document, and in regard to his legal conclusion as to his rights

18   to the use of water and in regard to the admissibility of the

19   judgment in this record, stating that in my view that the

20   judgment is incompetent, irrelevant, and immaterial, and not

21   tending to prove any issue in the case.  And, of course, the

22   United States, not being a party to it, would not be bound

23   by it.

24             Just a matter of the record.

25             MR. SACHSE:  I have never seen it, so I don't know what

1    we are talking about.  Have you got a copy?

2         MR. VEEDER:  No.  Oh, yes, here is a copy.

3         THE MASTER:  I understand that a copy of this judgment

4    is attached to Mr. Pepple's answer.  But I did not have that

5    answer and that copy here, for which reason I wish to now

6    examine the copy he has now presented to me.  And it certainly

7    would follow that the United States would not be bound by the

8    judgment unless it was a successor in interest of a party who

9    was bound by the judgment, and then only, of course, to the

10   extent that its rights were the same or dependent upon those

11   of the predecessor in interest.

12        MR. VEEDER:  I am just making a record on this, your

13   Honor.  I am not contesting Mr. Pepple.

14        THE MASTER:  I appreciate that.

15        MR. VEEDER:  I think Col. Bowen can make a statement that

16   may be of interest to your Honor and Mr. Pepple.

17        THE MASTER:  Very well, Colonel.

18        COL. BOWEN:  The question was asked by Mr. Pepple if we

19   would be willing to go back and look at it again.  My answer,

20   of course, is in the affirmative.  We are always more than

21   anxious to go back and try to satisfy the customer, so to

22   speak.  I might say I have been on the ground myself and I have

23   some understanding of it.  But in view of the fact that a part

24   of this sixteenth of a section is no longer owned by Mr. Pepple

25   I would like to have your Honor's leave to go back and look at

2884

1      it with Mr. Pepple and determine what, if any, irrigable land

2      has been acquired by the Fallbrook Public Utility District,

3      and at the same time we will check out the slopes and soil

4      conditions on this upper land again for Mr. Pepple.

5           THE MASTER:  Then you could have a revised report to

6      submit for further hearings in May; is that correct?

7           COL. BOWEN:  Yes, sir.

8           THE MASTER:  And you could furnish a copy of that report

9      to Mr. Pepple, of course, prior to that time?

10          COL. BOWEN:  Yes, sir.

11          THE MASTER:  And then you would have an opportunity

12     either to agree with the report, or if you still disagreed with

13     any revised report, to present your evidence and the points

14     of disagreement at the further hearing of this case on May 5th,

15     6th, or 7th.  Is that clear to you, Mr. Pepple?

16          MR. PEPPLE:  Yes, that is very clear.  I can understand

17     that all right.  Then also that would do away with this more

18     or less agreement we had with the first people here that we

19     had it taken in front of Mrs. Graydon-- down with Mrs. Graydon

20     down there.

21          THE MASTER:  Well, in other words, the final report which

22     they would make would represent the Government's considered

23     judgment, and you could either agree or disagree with that

24     final statement.  And it would not be necessary to consider

25     points of agreement or disagreement as previous statements.

1     MR. PEPPLE: This was an 80-acre feet, you see, and that

2  is what I feel like that we will need eventually when the place

3  is developed.  I don't see hardly how we could, in view of the

4  fact that the water is there, how we can give up any of the

5  rights that we feel like we have.

6     THE MASTER:  Of course we are not asking you to give up

7  any rights that you have, Mr. Pepple.  And I think that the

8  thing for you to do would be to arrange with Col. Bowen for

9  further investigation by his staff, and you will be furnished

10 with a copy of that report and you can consider that at that

11 time.

12    Now, is there any further evidence to present at this

13 time by any party?

14    MR. VEEDER:  The United States has no more, your Honor.

15    MR. SACHSE:  I have nothing at this time, your Honor.

16    THE MASTER:  Well, then, in line with the statements

17 previously made we will recess at this time until Tuesday,

18 May the 5th, with the understanding that by that time the

19 engineering reports on this Rainbow Creek area will at least be

20 substantially completed so far as all requests have been made.

21 And we will plan to proceed on Tuesday, Wednesday and Thursday,

22 the 5th, 6th and 7th, and then to continue again on May 25 to

23 wind up, if possible, the Rainbow Creek area.

24    MR. SACHSE:  May I ask, your Honor, what you have in mind

25 as to the possibility of findings on this other block that we

did?  I have got these three very minor questions pending that
I gave to Comdr. Redd and Mr. Veeder this morning.  Outside
of that I am perfectly willing to have you go ahead with the
findings.  Did you have in mind preparing-- have us submit
proposals or anything of that kind?

THE MASTER:  What I will do, I will see to what extent
I can go ahead and prepare a draft of these findings, to be
submitted to counsel, and to give defendants who have appeared
personally.  Although I can recall now no defendants who have
appeared personally on this last area.  And if those are
presented prior to May 5th and counsel have objections, they
could be presented at that time, even though no formal notice
of hearing of objections would have been given them.  The
formal notice could go out and formal hearing, objections could
be had at a later time.

MR. SACHSE:  May I suggest then, Mr. Veeder, that if when
you check those three or four you should find out that the
designation is in error or wrong you would advise Mr. Cranston
and also me, if you would, or if you find out that you are
right and I am wrong.

MR. VEEDER:  We will be in touch with you, that is correct,
and we will notify your Honor.

THE MASTER:  Yes.  Now, as far as the descriptions on
that De Luz Creek area, you still don't have those prepared.

MR. VEEDER:  That is correct.

1            THE MASTER:   Will you be able to get that done during

2    the month of April?

3            MR. VEEDER:   We will do the best we can, your Honor.   We

4    will try very hard.

5            THE MASTER:   Very well.   Then at this time we will

6    adjourn until 9:30 A.M. on May the 5th, at which time we will

7    continue with evidence on the Rainbow Creek watershed.

8

9                              ------

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25