# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

### BEFORE HON. JOHN M. CRANSTON, SPECIAL MASTER

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

Defendants.

No. 1247-SD-C

**REPORTER'S TRANSCRIPT**

**FILED**

SEP 2 4 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____ DEPUTY

Volume: 27

Pages: 2888 - 2941

Date: May 4 & 5, 1959

Place: Fallbrook, California

RANDOL, FIVECOAT & STEWART
CERTIFIED SHORTHAND REPORTERS
1113 FIRST NATIONAL BUILDING
SAN DIEGO 1, CALIFORNIA
BELMONT 9-4191

1

## INDEX TO WITNESSES

2

3

|                      | Direct | Cross |
|----------------------|--------|-------|
| Steven Nemeth        | 2893   |       |
| Allen C. Bowen       | 2897   | 2919  |
|                      | 2926   | 2929  |
|                      | 2933   |       |
| Giles E. Walker      | 2913   |       |

4

5

6

7

8

9

## E X H I B I T S

| Engineering Reports on: |  | In Evidence |
|---|---|---|
| MR-22 | James Warren | 2898 |
| MR-23 | James F. Clemons | 2902 |
| MR-24 | Donald K. Osborne | 2903 |
| MR-25 | Zana A. Royal | 2905 |
| MR-26 | William N. Davis | 2906 |
| MR-27 | Arno H. Ehrig | 2907 |
| MR-28 | Dorothy Moffat | 2908 |
| MR-29 | Frank C. McCracken | 2909 |
| MR-30 | W. B. Haney | 2910 |
| MR-31 | Ludy Estate | 2911 |
| MR-32 | Ed and Doris Suderman | 2912 |
| MR-33 | Arnold Glindset | 2912 |
| MR-34 | Map Santa Margarita River Watershed below Temecula | 2915 |
| MR-35 | Map Sandia Creek Watershed | 2916 |
| MR-36 | Vernon D. Simpson | 2927 |
| MR-37 | Carl N. Halde | 2928 |
| MR-38 | Frank R. Capra | 2929 |
| MR-39 | Johnnie Garner | 2934 |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  APPEARANCES:

2
    WILLIAM H. VEEDER, ESQ., and
3      LCDR DONALD W. REDD, U.S.N.,
     For United States of America.
4
    FRANZ R. SACHSE, ESQ.,
5       For Fallbrook Public Utility
     District and individually named
6       defendants.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2889

1    Fallbrook, California, Monday, May 4, 1959.  9:30 A.M.

2

3        THE CLERK:  Court is now in session.

4        THE MASTER:  Will counsel state their appearances for

5    the record?

6        MR. VEEDER:  William H. Veeder for the United States of

7    America.

8        MR. SACHSE:  Franz R. Sachse for Fallbrook Public Utility

9    District and named defendants in Rainbow watershed.

10       MR. STAHLMAN:  George Stahlman.  However, I have a

11   request for information from the Master.  I understand you are

12   handling Rainbow Creek today?

13       THE MASTER:  That is correct.

14       MR. STAHLMAN:  And I am interested in the matter of M. M.

15   Henderson, who is one of the parties to the stipulated judg-

16   ment.  And your Honor probably is aware of the fact that the

17   Vail Company have set up issues in their answer for the pur-

18   pose of being relieved from the stipulated judgment.  I under-

19   stand Henderson has filed an amendment to his answer request-

20   ing the same thing.  And I would therefore like to be present

21   at the time that the Henderson case is heard.  Will that be

22   heard today?

23       THE MASTER:  Mr. Veeder?

24       MR. VEEDER:  That I don't know.  He is not here.

25       MR. STAHLMAN:  May I ask this, then, your Honor, will

1   you hear and determine the matters relative to an issue of

2   that character, or will you refer that to the Court?  If heard

3   by the Court, could it be heard at the same time as the Vail

4   matter?  It is an equitable issue, and I think the Court will

5   make it.

6        THE MASTER:  Offhand, I think it would be made by Judge

7   Carter, unless he would refer the matter to me to take testi-

8   mony prior to rendering the decision.

9        MR. STAHLMAN:  Then I would like to be relieved of

10  appearance here, if it may be understood that if that issue

11  does come up before the Master I will be notified.

12       MR. VEEDER:  We are certainly amenable to that.  However,

13  I don't believe that would be within your Honor's reference.

14       THE MASTER:  I think I would in the first instance refer

15  that to Judge Carter, if anyone should raise the question here,

16  and ask him to either determine it or make a specific reference

17  to me for determination.

18       MR. STAHLMAN:  With that understanding I have no further

19  interest before the Master at the present time, until we get

20  on such streams as the Vail Company may have an interest in.

21       LCDR REDD:  Lcdr Redd for the United States.

22       THE MASTER:  Are there any individual defendants here

23  who are not represented by counsel?

24       MR. NEMETH:  I am.

25       THE MASTER:  Will you state your name, please?

1      MR. NEMETH:  Steve Nemeth.

2      THE MASTER:  Are there any others?

3      MR. WARREN:  James Warren.

4      THE MASTER:  Do you have property in the Rainbow district?

5      MR. WARREN:  Yes.

6      THE MASTER:  Has one of these engineering reports been

7 made on your property?

8      MR. WARREN:  Yes.  It has been signed and turned in.

9      THE MASTER:  Yes.  Well, we will have testimony presented

10 concerning that probably in a few minutes, and if you have any

11 questions then you may have an opportunity to ask them.

12      MR. WARREN:  I don't think there is any question in my

13 mind about it.  I also have one for my neighbor, Al Huber.

14 That gentleman-- I have forgot his name.  He came here about

15 three weeks ago, he was here and couldn't come back.  So I have

16 his in my car, if you wish it.

17      THE MASTER:  Are you referring to a form of answer or

18 to an engineering report?

19      MR. WARREN:  To the engineering report.

20      THE MASTER:  We will take that up when we finish with

21 Mr. Nemeth.  Very well.

22      MR. VEEDER:  That has already been entered in evidence,

23 the Huber report, MR-9, Albert J. Huber.

24      THE MASTER: I think I might state at this time for the

25 record that the hearing on April 6th was adjourned to Tuesday,

1    May 5th.  However, at a subsequent date it appeared that Col.

2    Bowen could not be present for the further hearings which were

3    scheduled for the 7th and 8th, and for that reason the date

4    of the hearings was advanced until Monday, May 4th.  So evi-

5    dence will be received today, and if any party should appear

6    tomorrow pursuant to the continuance announced on April 6th

7    and desires to present any further testimony with reference to

8    any matters which have been considered today, opportunity will

9    be given to him or at a later date to present such additional

10   evidence.

11        Mr. Veeder, I believe that Mr. Nemeth is present in

12   court, and you might present any evidence that you have with

13   reference to his engineering report.

14        MR. VEEDER:  Yes.  That report for Steven Nemeth is MR-7,

15   which was admitted into evidence at our last hearing.  And I

16   hand the report to Col. Bowen, Parcel 120, and suggest if Mr.

17   Nemeth has any interrogation of the Colonel he might proceed

18   that way.  I think it might expedite things.

19        THE MASTER:  Mr. Nemeth, do you have any questions you

20   want to ask Col. Bowen?

21        MR. NEMETH:  Well, I don't see-- I don't know if it will

22   be a question or an explanation, but I have no-- I find no

23   faults with the engineering report as to the lay of the land

24   or the type of soil, nor the amount of water we may use, that

25   we should be allotted according to this.  Our well is a shallow

1    well, and we pump it dry now in twenty minutes.  It will

2    irrigate right now about I would say a half of an acre.  And

3    then we can't pump--  If we let it go for 48 hours then we can

4    pump again for twenty minutes.  Half an hour is about the most

5    that it will pump it dry, a half a horsepower motor.

6         THE MASTER:  Mr. Nemeth, if you are going to testify

7    concerning your property you should be sworn as a witness and

8    then continue with what you wish to state.

9         Mr. Clerk, will you swear Mr. Nemeth as a witness?

10

11                       STEVEN NEMETH,

12   called as a witness in his own behalf, sworn, testified as

13   follows:

14

15                     DIRECT EXAMINATION

16        THE MASTER:  Do you want to take the witness stand, then,

17   and testify concerning your property?

18        THE WITNESS:  That will be all right, yes.

19        THE MASTER:  Now, what was it, you say your pump can be

20   pumped for about a half an hour?

21        THE WITNESS:  Yes, that is about the longest that our

22   pump can pump to pump it dry.  And then if we use it the follow-

23   ing day, say if we pump it dry this morning then the following

24   morning it is dry in twenty minutes.  So we let it go for 48

25   hours instead, that is two days, and then we can pump it .

2894

1   for a half an hour.  I just want to illustrate on this that in

2   other words it doesn't give but a fraction of the water that we

3   use.  So we are using irrigation water, and by irrigating our

4   higher lands with irrigation water--  Our soil is from let's

5   say five feet to twenty feet deep; below that it is solid

6   rock.  And it all slopes down to your well, so we are using

7   the water over and over.  I would say 75% of these three acres,

8   that is two-thirds of it, lays in a manner  that the water

9   is directed right into the well.  We found that out during

10  this dry season by irrigating heavy all day the higher land,

11  the well fills up.

12      So what I wouldn't like to do is to pay for our water by

13  using irrigation water and then be penalized not to be able to

14  use our well, because that is our source of supply over and

15  over.

16      THE MASTER:  Now, when you say irrigation water you mean

17  water that you purchase from the Fallbrook Public Utility

18  District?

19      THE WITNESS:  Yes.

20      MR. SACHSE:  No, Rainbow, your Honor.

21      THE WITNESS:  Rainbow.  We get it through the Vallecito

22  Mutual.  That is, they get it from the Fallbrook--

23      MR. SACHSE:  No.  Let the record indicate that the water

24  to which Mr. Nemeth is referring is Vallecito Mutual, which is

25  purchased from Rainbow Municipal, which is purchased from the

1   Colorado--

2          THE MASTER:   And in turn from Metropolitan.

3          MR. SACHSE:   Fallbrook Public Utility District has no

4   service at this end of the Rainbow Valley.

5          THE MASTER:   Is there any portion of the report with

6   which you disagree?

7          THE WITNESS: No.

8          THE MASTER:   And is there anything further you wish to

9   present at this time?

10          THE WITNESS:   That is all.   I want to make that clear,

11   that I hope we will not be penalized or forbidden to use our

12   well water, because that would be unfair and it would be

13   entirely out of order.   We are paying for that water in the

14   first place, and it seeps into our well and we are using it;

15   we almost have to.

16          MR. VEEDER:   Please understand, Mr. Nemeth, there is no

17   idea of penalizing, or anything like that.   All we want to

18   know here is availability of water and places of use.   I am

19   glad you repeated that, because I didn't quite follow you in

20   the first instance.   There is no concept in this litigation

21   of penalizing, or anything of that character, from the stand-

22   point of water use; it is simply a matter of determining who

23   has what rights in the Santa Margarita River system.   So if

24   that is your sole concern, I daresay you have no concern.

25          THE WITNESS:   In fact, some part of that water finds its

2896

1   way into the Santa Margarita River, what I am paying for

2   through the Metropolitan Water Company.  So this is what I

3   wanted to explain.

4          THE MASTER:  Well, I think you have explained it.

5          MR. VEEDER:  I have no questions.

6          THE MASTER:  Mr. Sachse?

7          MR. SACHSE:  I have no questions, your Honor.

8          THE MASTER:  Did you wish to ask Col. Bowen any questions

9   then?

10          THE WITNESS:  No, other than will I or will we not be

11   permitted to use our water that we pay for?

12          THE MASTER:  Well, you can certainly continue to use it

13   until any final judgment is rendered.  And what will be in

14   that final judgment I can't say now, but in any event I don't

15   think you will be penalized.

16          THE WITNESS:  I don't look for it and I don't expect it.

17          THE MASTER:  Very well.  There will be no need for you

18   to stay longer, but you may if you wish.

19          May the record show also at this time that I have

20   received a telegram from Mr. Tom Halde, attorney for C. N.

21   and Hester M. Halde, H-a-l-d-e, who are the owners of Parcel

22   121, which is the next parcel from Mr. Nemeth's parcel, stating

23.   that he has just been released from the hospital, and request-

24   ing a continuance.  And I will advise him of dates of subse-

25   quent hearings, and I assume that he may present any evidence

1   or arguments that he wishes at a later time.

2       MR. VEEDER:  It is certainly agreeable with the United

3   States, your Honor.

4       MR. SACHSE:  Certainly, no objection.

5       THE MASTER:  Now, do you have the engineering report here

6   that the other gentleman referred to?

7       MR. VEEDER:  I would like to call Col. Bowen to the

8   stand and identify MR-22, which is the engineering report on

9   the property of James R. Warren.

10      MR. SACHSE:  Which parcel is that, Bill?

11      MR. VEEDER:  It is Parcel 22, MR-22.

12

13                      ALLEN C. BOWEN,

14  recalled as a witness, having been previously sworn, testified

15  as follows:

16

17                    DIRECT EXAMINATION

18  BY MR. VEEDER:

19      Q  Col. Bowen, I ask you to examine that identification

20  and state into the record under whose direction it was pre-

21  pared?

22      A  This Exhibit MR-22 was prepared under my direction

23  and supervision.

24      Q  And based upon your knowledge of the data which it

25  contains, will you state into the record whether in your

2898

1  opinion it is accurate?

2       A  Yes, sir, in my opinion it is accurate.

3       MR. VEEDER:  We offer in evidence the exhibit marked for

4  identification MR-22.

5       THE MASTER:  That will be received in evidence and so

6  marked.

7       MR. VEEDER:  I ask the Colonel to mark on MR-21 where

8  MR-22 is situated.  Will you use a red pencil?  Do you have one,

9  Colonel?

10      A  I have a red pen.  Plaintiff's Exhibit MR-22 is a

11  report on an area which is delineated on Plaintiff's Exhibit

12  MR-21 with the number 22 encircled contained within the outer

13  boundaries of the property.  And I will with a red pen write

14  MR-22 within the exterior boundaries of that parcel as shown on

15  MR-21.

16      MR. VEEDER:  Now, if Mr. Warren has questions I think

17  he could just take my place here and interrogate the Colonel.

18  I believe that would be the better way of handling it.

19      THE MASTER:  Very well.  Mr. Warren, do you wish to ask

20  Col. Bowen any questions concerning this report?

21      MR. WARREN:  There are no questions.  I assume that you

22  will allow that 6.8 acre-feet a year developed from the well,

23  if necessary, that is allotted in the engineering report?

24      THE MASTER:  Well, of course there will be no decision

25  rendered today--

1    MR. WARREN:  That is probably what it will be.

2    THE MASTER:  Any decision or judgment which is rendered

3 will be based upon the testimony in this report, and the other

4 testimony, and the equitable factors involved.  And in the

5 absence of testimony to the contrary, if the water is avail-

6 able it would certainly seem to be only equitable that you

7 should be entitled to use it.

8    MR. WARREN:  Sure.  We use most of the Colorado River

9 water, but this spring we use for household use.

10    THE MASTER:  Then there are no points in which you dis-

11 agree with Col. Bowen in the report?

12    MR. WARREN:  Oh, no, I am perfectly satisfied with it.

13    THE MASTER:  Is there any testimony that you wish to

14 present by your own testimony?

15    MR. WARREN:  No, none whatever.  We have been treated

16 very nicely by everybody, and we have got no kick coming what-

17 ever.

18    Mr. Huber hasn't turned in his report yet.  May I turn

19 it in here?

20    MR. VEEDER:  It is in, and it has been admitted, Mr.

21 Warren, the Huber report.

22    MR. WARREN:  But I mean this engineering report.

23    MR. VEEDER:  That is it.

24    THE MASTER:  In other words, Mr. Huber has his own copy,

25 but the Government has introduced another copy of his report,

1    as I understand it.

2         MR. VEEDER:  That is MR-9.  May I have MR-9?

3         MR. WARREN:  See, he has no wells of any kind, he de-

4    pends entirely on Colorado River water.

5         MR. VEEDER: Your Honor, here is the Huber report, if

6    there is some question you might want to ask Mr. Warren.  As

7    far as we are concerned--

8         MR. WARREN:  He is still up here for another four years,

9    and he is getting this built up and ready.

10        THE MASTER:  Has he asked you to try to present any

11   evidence with reference to his report?

12        MR. WARREN:  No, no.  I did take the report and give it

13   to him.

14        THE MASTER:  As far as you know is he satisfied with

15   this report?

16        MR. WARREN:  Yes.  He has signed the thing, I have it in

17   my car if you wish it now.

18        THE MASTER:  I take it what he signed was acknowledging

19   receipt of the report.  That was all he signed, wasn't it?

20        MR. WARREN:  Yes.

21        THE MASTER:  I don't think it would be necessary for you

22   to remain in connection with his report or your report.

23        MR. WARREN:  A friend was supposed to get up one day last

24   week, and I happened to be out for a few minutes and missed

25   him.

1        LCDR REDD:  You can hand that to me.

2        MR. WARREN:  Thanks.

3        THE MASTER:  Very well.

4        MR. VEEDER:  Thank you.  Then, your Honor, we will

5   proceed with the introduction into the record of the engineer-

6   ing reports which have been marked MR-23 through 33.

7        Q  Now, Col. Bowen, I hand you exhibit marked MR-23

8   and ask you to state first the name of the party, and to

9   state under whose direction that report was prepared.

10       A  Plaintiff's Exhibit MR-23 is an engineering report

11  on the property of James F. Clemons, C-l-e-m-o-n-s.  This

12  report was prepared under my direction and supervision.

13       Q  Is it correct to your personal knowledge, Colonel?

14       A  Yes, sir.

15       Q  And would you identify that on MR-21, please, using

16  your red pen?

17       MR. SACHSE:  Will you state, please, into the record,

18  Colonel, what the parcel number is so we can cross-index these?

19       THE WITNESS:  Yes, sir.  Plaintiff's Exhibit MR-23 is a

20  report on Parcel No. 152, which is delineated on Plaintiff's --

21  that is, the parcel is delineated on Plaintiff's Exhibit MR-21

22  with the number 152 encircled contained within the outer

23  boundaries of the property.  And with a red pen on MR-21 I

24  will write MR-23 within the exterior boundaries of Parcel No.

25  152.

1    MR. VEEDER:  We offer in evidence MR-23.

2    MR. SACHSE:  Let the record indicate that I represent

3    Clemons, and there is no objection, the report is entirely

4    satisfactory and there will be no contradictory testimony.

5    THE MASTER:  Very well.  The report will be admitted and

6    so marked.  And the record will show that there is to be no

7    contradictory testimony.

8    BY MR. VEEDER:

9    Q  I hand you Exhibit MR-24 and ask you to state into

10   the record the name of the party, and under whose direction

11   that engineering report was prepared.

12   A  On the property of Donald K. Osborne, Parcel No. 21,

13   Rainbow watershed.  This report was prepared under my super-

14   vision and direction.

15   Q  And in your opinion is it correct, sir?

16   A  Yes, sir.

17   Q  Now, would you kindly mark that on MR-21?

18   A  MR-21 is delineated-- the parcel No. 21-- near the

19   watershed boundary of Rainbow Creek.  And I will with a red

20   pen write MR-24 within the exterior boundaries of Parcel No.

21   21 as it appears on Plaintiff's Exhibit MR-21.

22   MR. VEEDER:  We offer in evidence identification marked

23   MR-24.

24   MR. SACHSE:  Let the record show that is my client, and

25   there is no objection to its admission.  I do have one or two

1    questions on the report I would like to ask the Colonel.  No

2    objection to its admission.

3            THE MASTER:  That will be received in evidence as MR-24.

4            MR. VEEDER:  Why don't you do it now?

5    BY MR. SACHSE:

6        Q  Col. Bowen, directing your attention to this Parcel

7    21, that lies very close to the southern boundary of the

8    Rainbow Creek watershed, does it not?

9        A  Yes, sir.

10       Q  And are you familiar with that general area?

11       A  Yes, sir.

12       Q  Am I not correct in stating that the watershed line

13   there is extremely difficult to locate on the ground surface,

14   that is the actual line of demarcation between Santa Margarita

15   drainage and San Luis Rey River drainage is hard to spot on

16   the surface?

17       A  On that particular area, Mr. Sachse, the land is

18   rising from Rainbow Valley, and the watershed boundary is

19   better defined than it is farther to the west.

20       Q  In other words, along the watershed line west of the

21   Osborne property it is hard to tell from the ground surface--

22   it is hard to tell which way the water flows?

23       A  Yes, sir.

24       Q  Now, I have not noticed in any of those reports any

25   expression of opinion as to whether the ground waters in those

2904

1   areas that are doubtful on the surface drain to the San Luis

2   Rey or drain to the San Luis Rey.  Do you have such an opinion?

3        THE MASTER:  Drain to the San Luis Rey--

4        MR. SACHSE:  Or the Santa Margarita.

5        THE WITNESS:  Referring specifically now to Parcel No.

6   21?

7   BY MR. SACHSE:

8        Q  I am just using this as a general-- to find the

9   general area immediately west of that where the surface drain-

10  age is difficult to distinguish.

11       A  Well, I haven't formed any opinion as to which way

12  the ground waters flow, or where the ground water divide might

13  be in Rainbow Valley.

14       MR. SACHSE:  I have no further questions.

15  BY MR. VEEDER:

16       Q  Col. Bowen, I hand you exhibit marked MR-25 and ask

17  you to state the name of the owner as shown on there, and to

18  state into the record under whose direction that report was

19  prepared.

20       A  Plaitiff's Exhibit MR-25 is a report on the property

21  of Zana, Z-a-n-a, A. Royal.  It was prepared under my super-

22  vision and direction.

23       THE MASTER:  What is the parcel number?

24       THE WITNESS:  Parcel No. 130 and 134.

25

BY MR. VEEDER:

Q   And I ask you to state whether in your opinion the data contained in it is accurate?

A   It is.

Q   And would you kindly step to MR-21 and locate MR-25 on that map, using a red pen?

A   On Plaintiff's Exhibit MR-21 the exterior boundaries of Parcels 130 and 134 are delineated.  And with a red pen I have written MR-25 within the exterior boundaries of Parcel 130 as it appears on MR-21.  And I have indicated also in red with a connecting sign the relationship of Parcel 130 with Parcel 134 as it appears on Plaintiff's Exhibit MR-21, the arrow pointing from MR-25 to Parcel 134.  Is that satisfactory, your Honor?

THE MASTER:  Yes, I think that is clear.

MR. VEEDER:  We offer in evidence the identification marked MR-25.

THE MASTER:  It will be received and so marked.

BY MR. VEEDER:

Q   I hand you, Col. Bowen, the identification marked MR-26 and ask you to state into the record the name of the party to which it has reference, and under whose direction that engineering report was prepared.

A   Plaintiff's Exhibit MR-26 is a report on the property of William N. Davis, and this report was prepared under my

2906

1   supervision and direction.

2       Q   And in your opinion is it accurate?

3       A   Yes, sir.

4       Q   And would you step to MR-21 and locate MR-26, using

5   your red pen for that purpose?

6       A   MR-26 is a report on Parcel No. 175. 21 appears in

7   error on the face of MR-26, your Honor.

8       Q   The witness is deleting it.

9       A   On Plaintiff's Exhibit MR-21 Parcel 175 is delineated,

10  and the number 175 encircled contained within the exterior

11  boundaries of the parcel.

12      MR. VEEDER:  Would you read that back?  I didn't hear

13  what you said.

14      (Record read.)

15      MR. VEEDER:  I was afraid that 21 was mixed up.

16      THE WITNESS:  With a red pen I have marked MR-26 within

17  the exterior boundaries of Parcel 175 as it appears on Plain-

18  tiff's Exhibit MR-21.

19      MR. VEEDER:  We offer in evidence Exhibit marked MR-26

20  for Identification.

21      THE MASTER:  It will be received and so marked.

22  BY MR. VEEDER:

23      Q   I hand you Identification MR-27 and ask you to read

24  into the record the name of the person to whom it has reference,

25  and under whose direction that engineering report was prepared.

1      A  Plaintiff's Exhibit MR-27 is a report on the property

2  of Arno H. Ehrig, E-h-r-i-g.  This report was prepared under

3  my supervision and direction.

4      Q  Now, is that accurate to your personal knowledge?

5      A  Yes, sir.

6      Q  As I understand, this is a client of yours, Mr. Sachse?

7      MR. SACHSE:  That is right.  I have no objection to its

8  offer, but I would like to ask a question or two.

9      MR. VEEDER:  I would like to have you mark on MR-21 the

10  location of MR-27, Colonel, if you would, please.

11      THE WITNESS:  On Plaintiff's Exhibit MR-21 Parcel No. 151

12  is delineated, and the number 151 appears within a circle

13  within the exterior boundaries of the parcel.  With a red pen

14  I have written MR-27 within the exterior boundaries of Parcel

15  151 as it is delineated on Plaintiff's Exhibit MR-21.

16      MR. VEEDER:  We offer in evidence MR-27.

17      MR. SACHSE:  No objection.

18      THE MASTER:  It will be received and so marked.

19      MR. SACHSE:  I do have a question or two.

20      Q  Col. Bowen, did you find that Parcel 151, Ehrig,

21  abuts upon any stream or is traversed by any stream?

22      A  No, sir, I found that it is not traversed by any

23  stream.

24      Q  And how would you characterize the ground waters that

25  might be developed underlying Parcel 151?

1       A   This property is underlain throughout by Woodson

2   Mountain granodiorite.   And in my opinion any ground water,

3   if it were to be found, would be contained only within the

4   cracks and fissures of the granodiorite.   And in my opinion

5   it would be local vagrant percolating water, not a part of the

6   stream system.

7       MR. SACHSE:   I have no further questions.

8   BY MR. VEEDER:

9       Q   Col. Bowen, I hand you Plaintiff's Exhibit marked

10  MR-28 and ask you to state into the record for whom that report

11  was prepared, and under whose direction it was prepared.

12      A   Plaintiff's Exhibit MR-28 is a report on the property

13  of Dorothy Moffat, Parcel No. 129.   This report was prepared

14  under my supervision and direction.

15      Q   And in your opinion is it accurate?

16      A   Yes, sir.

17      Q   Would you kindly mark on Plaintiff's Exhibit MR-21

18  the location of Identification MR-28?

19      A   Plaintiff's Exhibit MR-28 is a report on a property

20  designated as Parcel 129, which is delineated on MR-21.   And

21  with a red pen I have written MR-28 within the exterior

22  boundaries of Parcel 129 as it appears on Plaintiff's Exhibit

23  MR-21.

24      MR. VEEDER:   We offer in evidence MR-28.

25      THE MASTER:   It will be received and so marked.

BY MR. VEEDER:

Q  I hand you, Colonel, Identification MR-29, and state into the record the name of the party, and state also under whose direction that report was prepared.

A  Plaintiff's Exhibit MR-29 is a report on the property of Frank C. McCracken, Parcel No. 104.  This report was prepared under my supervision and direction.

Q  And in your opinion is it an accurate report?

A  Yes, sir.

Q  Would you kindly mark MR-29 upon Exhibit MR-21, please?

A  With a red pen I have written MR-29 within the exterior boundaries of Parcel No. 104 as it is delineated on Plaintiff's Exhibit MR-21.

MR. VEEDER:  We offer in evidence MR-29.

MR. SACHSE:  That is my client.  There is no objection. I do have a question, however.

THE MASTER:  That will be received and so marked.

BY MR. SACHSE:

Q  Col. Bowen, this Parcel 104 is traversed by Rainbow Creek, is it not?

A  Yes, sir.

Q  And I observe that on page 1 of the report, the next to the last paragraph, the language "Ground water storage is non-existent on this property."  By that am I to understand that if ground waters were found it is your opinion that they

1      are not a part of the stream?

2          A   Yes, sir.

3          MR. SACHSE:   No further questions.

4      BY MR. VEEDER:

5          Q   I hand you Plaintiff's Exhibit MR-30 and ask you to

6      state into the record the name of the party, and under whose

7      direction that report was prepared.

8          A   Plaintiff's Exhibit MR-30 is a report on the property

9      of W. B. Haney, H-a-n-e-y, Parcel No. 62.   This report was

10     prepared under my supervision and direction.

11         Q   In your opinion is it accurate?

12         A   Yes, sir.

13         Q   And would you kindly locate it on MR-21, using your

14     red pen?

15         A   I have written MR-30 within the exterior boundaries

16     of Parcel No. 62 as it appears on Plaintiff's Exhibit MR-21.

17         MR. VEEDER:   We offer in evidence MR-30.

18         THE MASTER:   That will be received and so marked.

19     BY MR. VEEDER:

20         Q   I hand you Plaintiff's Exhibit MR-31 and ask you to

21     state into the record the name of the party to whom it has

22     reference, and state also under whose direction that engineering

23     report was prepared.

24         A   Plaintiff's Exhibit MR-31 is a report on the property

25     of the Ludy, L-u-d-y, Estate, Parcel No. 160.   This report was

1    prepared under my supervision and direction.

2        Q   Would you state into the record whether in your

3    opinion it is accurate?

4        A   It is.

5        Q   And would you kindly go to MR-21 and locate MR-31

6    on that exhibit, using your red pen?

7        A   With a red pen I have written MR-31 within the

8    exterior boundaries of Parcel 160 as it is delineated on

9    Plaintiff's Exhibit MR-21.

10       MR. VEEDER:   We offer in evidence Identification MR-31.

11       THE MASTER:   That will be received and so marked.

12   BY MR. VEEDER:

13       Q   I hand you exhibit marked MR-32 and ask you to state

14   into the record the name of the party to whom it has reference,

15   and also state who prepared the report.

16       A   Plaintiff's Exhibit MR-32 is a report on the property

17   of Ed and Doris Suderman, S-u-d-e-r-m-a-a-n, Parcel No.125.

18   This report was prepared under my supervision and direction.

19       Q   Is it accurate to your knowledge?

20       A   Yes, sir.

21       Q   Would you kindly step to Exhibit MR-21 and locate

22   MR-32 on that exhibit, using your red pen?

23       A   With a red pen I have written MR-32 within the ex-

24   terior boundaries of Parcel No. 125 as it is delineated on

25   Plaintiff's Exhibit MR-21.

1    MR. VEEDER:  We offer in evidence MR-32.

2    THE MASTER:  That will be received and so marked.

3  BY MR. VEEDER:

4    Q  I hand you, Col. Bowen, MR-33 and ask you to state into

5  the record the name of the party to whom it has reference, and

6  also state under whose direction that report was prepared.

7    A  MR-33 is a report on the property of Arnold Glindset,

8  G-l-i-n-d-s-e-t, Parcel No. 19.  This report was prepared under

9  my supervision and direction.

10    Q  In your opinion is it accurate, Col. Bowen?

11    A  Yes, sir, it is.

12    Q  Would you kindly mark that 33-- locate 33, rather,

13  upon Exhibit MR-21?

14    A  With a red pen I have marked MR-33 within the ex-

15  terior boundaries of Parcel No. 19 as it is delineated on

16  Plaintiff's Exhibit MR-21.

17    MR. VEEDER:  We offer in evidence MR-33.

18    THE MASTER:  That will be received in evidence as

19  Exhibit MR-33.

20    MR. VEEDER:  May we have a moment's recess, your Honor?

21    THE MASTER:  Surely.  Court will be in recess.

22    (Recess.)

23    MR. VEEDER:  Your Honor, we would like at this time to

24  call Lt. Walker to offer into evidence some of the exhibits

25  which are presently part of the record in the main case before

2913

1    Judge Carter.

2          THE MASTER:  Very well.

3

4                    GILES E. WALKER,

5    called as a witness in behalf of the plaintiff, sworn, testified

6    as follows:

7

8                    DIRECT EXAMINATION

9    MR. VEEDER:

10          I think this should be MR-34, Mr. Clerk, if you would

11   mark that for us.

12          MR. SACHSE:  Mr. Veeder, can you cross-reference those

13   for me?

14          MR. VEEDER:  I think this is 70.  I don't want to be held

15   to that, however.

16          I will put this up on the board, if I may, and it will

17   be easier to interrogate.

18          Q  Lt. Walker, will you refer to exhibit marked MR-34

19   and read into the record from the title block?

20          A  Referring to MR-34, the title block shows this to be

21   geology--  Excuse me, a portion of the Santa Margarita River

22   watershed below Temecula, geology.

23          Q  Now, who prepared that map?

24          A  The geology was prepared by myself.

25          Q  And would you state the extent of your investigation

1  and survey in connection with that exhibit-- that identifica-

2  tion, rather?

3      A   The geology was done over a period of time whereby I

4  covered the country both by using physical means, by foot and

5  Jeep, covering the entire area, whereby I plotted the geology

6  on topographical sheets prepared by the United States Geological

7  Survey.

8      Q   Now, how does MR-34 compare with the map which is

9  part of the evidence in the case before Judge Carter?  I believe

10  that is Exhibit No. 70.

11      A   MR-34 corresponds to Exhibit 70, which has been

12  presented to Judge Carter, completely with the exception of

13  one area generally southeast of Rainbow Valley, where recent

14  plane table surveys have shown a small area which had not

15  formerly been encompassed within the watershed, has shown that

16  that area in fact is within the watershed; and the addition

17  has been made on this map using a dashed line to show that

18  area.

19      Q   Is that not the southwest?

20      A   Excuse me.  That is the southwest, right.

21      Q   And who ran the plane table survey?

22      A   The plane table survey was done by Lt. Woods in our

23  office.

24      Q   Was it done under your direction?

25      A   I was familiar with it.

1          MR. VEEDER:  Now we offer in evidence MR-34.

2          THE MASTER:  That will be received in evidence as

3    Exhibit MR-34.

4          MR. SACHSE:  Could I inquire about that for just a

5    second?  Is this little addition--

6          LCDR. REDD:  That is on that map there.

7          MR. SACHSE:  It is shown on this map as in the watershed?

8          MR. VEEDER:  You are referring to MR-21?

9          MR. SACHSE:  Yes.

10          THE WITNESS:  I could perhaps explain that by saying

11    this space-- we didn't get the base map correct, and that is

12    why it has been dashed with a pen here.

13          THE MASTER:  That is, Exhibit 70 before Judge Carter

14    shows the boundary with a solid line, and the area partially

15    colored blue and partially colored a brownish orange, below

16    the solid line and above the dotted line, is the area that

17    you have mentioned?

18          THE WITNESS:  That is right.

19          THE REPORTER: May we have your full name, Lieutenant?

20          THE WITNESS:  Giles, G-i-l-e-s, E. Walker, W-a-l-k-e-r.

21    BY MR. VEEDER:

22          Q  You are the same Lt. Giles Walker who testified be-

23    fore Judge Carter?

24          A  That is right.

25          Q  Now, Lt. Walker, referring to MR-35, I ask that you

read into the record the title block on that identification.

A   MR-35, the title block shows this to be the Sandia Creek watershed geology.

Q   Would you compare that with the exhibit entered in the record before Judge Carter-- Exhibit No. 67, I believe, your Honor, I will check that out-- and state whether they are identical or whether they are not?

A   MR-35 is identical with the exhibit as lodged before Judge Carter, No. 67 or 68-- again I don't recall, either-- it is identical.  However, it just comes to mind, I can't recall for sure, perhaps on the map that we showed before Judge Carter we may have put in red areas where rising water had been observed in the stream.

MR. SACHSE:  You did, yes.

BY MR. VEEDER:

Q   But in other respects--

A   In all other respects the map is identical.

Q   And it is accurate to your knowledge?

A   Yes, it is.

MR. VEEDER:  We offer in evidence MR-35, your Honor.

THE MASTER:  That will be received in evidence and so marked.

MR. VEEDER:  Your Honor, that is the extent of the engineering reports that we have.  We are going to have additional reports available in the morning.  Is that correct?

1    LCDR REDD:  Yes, sir.

2    MR. SACHSE:  How about the geology of the Rainbow Creek

3    watershed, didn't you have that before Judge Carter?

4    THE WITNESS:  That is part of the big map.

5    THE MASTER:  Now, is there any testimony in addition that

6    you wish to present in reference to the engineering reports

7    and the map that you have already introduced?

8    MR. VEEDER:  I believe they speak for themselves, your

9    Honor, unless Col. Bowen has something in addition.  But to

10   my knowledge there is nothing.

11   THE MASTER:  Well, in other words, Mr. Sachse this

12   morning, for example, asked Col. Bowen questions concerning

13   the ground water under certain specific parcels where he

14   represented the owners.  Now, I of course have not examined

15   these maps or the engineering reports that were introduced

16   this morning in any detail.  Is there information on these

17   maps and in the reports which will show the nature of the ground

18   water and whether the parcels are riparian, and so forth, or

19   should testimony to that effect be given by Col. Bowen or

20   someone else?

21   MR. VEEDER:  I will ask Col. Bowen to expound to that

22   inquiry, your Honor.

23   THE MASTER:  Very well.  Colonel?

24   COL. BOWEN:  Your Honor, I would say, in a brief answer

25   to your question, in the affirmative, that there is information

1   on these maps and on the individual reports which would permit

2   your Honor to arrive at conclusions in regard to the nature of

3   the ground water.  For example, each report has its section on

4   geology which indicates the underlying material, either basement

5   complex of some nature or other, granodiorite, and so forth,

6   and Recent alluvium.  And the report also states in the

7   general description found on page 1 whether or not a named

8   creek traverses the property.

9          For example, the one I have before me here is Plaintiff's

10  Exhibit MR-33, and MR-21 shows the Rainbow Creek traversing it,

11  and that statement is included in the report, that the property

12  is traversed by Rainbow Creek.

13         MR. SACHSE:  I would like to ask, if I could, then,

14  Col. Bowen a couple of very brief questions.  It would be

15  repetitious, I believe, of the ones that are already in the

16  record before Judge Carter when these other exhibits were

17  introduced.

18         THE MASTER:  Very well.  Does anybody have any further

19  questions of Lt. Walker?

20         MR. VEEDER:  I have no further questions.

21         MR. SACHSE:  I have none of Lt. Walker.

22

23

24

25

ALLEN C. BOWEN,

recalled as a witness, having been previously sworn, testified as follows:


CROSS-EXAMINATION

BY MR. SACHSE:

Q   Col. Bowen, I will direct your attention first to MR-35, Sandia Creek watershed.

A   Yes, sir.

Q   Am I correct in stating that it is your opinion that the ground waters underlying everything delineated in blue and brown on that map would be vagrant local percolating waters, not a part of the stream system?

A   Yes, sir, that is my opinion.

Q   And the only ground waters that would be a part of the stream system on MR-35 would be those underlying the areas shown in yellow, Recent alluvium?

A   Yes, sir.

Q   And if you will look at Exhibit MR-34, would your testimony again be the same, that the ground waters underlying the areas shown in blue and brown are vagrant local percolating, whereas ground waters shown under the areas shown in yellow would be a part of the stream system?

A   That is correct.

Q   Now, with particular reference to the southerly edge

1   of the watershed as shown on MR-34, immediately below the

2   place name Rainbow, am I not correct in stating that the

3   alluvial deposits in that area extend across the watershed line

4   and on south into the San Luis Rey watershed?

5        A  Yes, sir, you are correct.

6        Q  And do you have any opinion as to where the ground

7   water dividing line between Rainbow and-- between Santa

8   Margarita and San Luis Rey watershed would be in that area?

9        A  No, sir, I have formed no opinion on that matter.

10       MR. SACHSE:  I have no further questions.

11       MR. VEEDER:  I have no questions.

12       THE MASTER:  Now, in that connection, in the case of

13  De Luz Creek watershed you are still working on descriptions,

14  as I understand it?

15       MR. VEEDER:  That is correct.

16       THE MASTER:  To identify portions of parcels where the

17  underlying waters are vagrant, or portions of parcels where

18  the underlying waters are a part of the stream system.  Now,

19  in connection with this Rainbow Creek area it would appear that

20  the ground waters which are vagrant are not divided on parcel

21  boundaries.  Now, is there anything in the record which would

22  be sufficient to give the descriptions of the portions of a

23  parcel which are say within the blue area or the brown area,

24  and the portions of the parcel which are within the yellow

25  areas?

1        MR. VEEDER:  What would be your response to that, Colonel?

2        THE WITNESS:  Well, I would say the information is in

3   the record, your Honor, but it would probably require an

4   engineer-draftsman to work out those descriptions.

5        THE MASTER:  It seems to me from having them on De Luz

6   Creek we need them here just as much.

7        MR. VEEDER:  I am interested in having them done, your

8   Honor.

9        THE MASTER:  Of course, in a great many instances it

10  would appear that entire parcels, the majority of most parcels

11  is probably in the blue or the brown area, and all of certain

12  parcels would appear to be in the yellow areas; but there are

13  going to be a good many others where part of the parcel is in

14  and part of it is out, and I think your description here is

15  just as necessary as it was in De Luz.

16       MR. VEEDER:  I think, as I stated before, that it is a

17  matter that we should develop as we can, and we are trying to.

18  I think the burden on Col. Bowen has been almost insuperable

19  under the circumstances, so that we can't very well do every-

20  thing at once.  And I hope that your Honor understands our

21  circumstances.

22       THE MASTER:  Well, I appreciate the fact that you are

23  trying to do a terrific task without sufficient manpower to do

24  it as rapidly as you would like to.

25       MR. VEEDER:  Your Honor, may I let the record show that

1   if we brought in sufficient manpower to do everything at once

2   that we would be doing nothing else.

3      THE MASTER:  Well, the only fact I had there would be

4   that the findings on this area could not be completed until

5   that information had been made available.

6      MR. VEEDER:  That is correct, your Honor.

7      MR. SACHSE:  I don't concur.  I felt your findings were

8   sufficiently adequate on the De Luz area, and I think the same

9   kind of findings could be made here, that those portions of

10   Parcel X which overlie Recent alluvium are ground waters a

11   part of the stream system.  But if the United States wants to

12   spell it out in greater detail that is all right with me.

13      THE MASTER:  I would say this, in the absence of detailed

14   surveys I think the findings made with reference to De Luz and

15   similar findings here would be adequate.  But if the United

16   States can produce the more detailed information it might be

17   of assistance to persons at a later date.

18      MR. SACHSE:  I certainly haven't any objection, don't

19   misunderstand me.

20      MR. VEEDER: I will be candid with your Honor, we may

21   never be this way again and I would like to have it buttoned

22   up just as completely as we can.

23      MR. SACHSE:  I have nothing further from Col. Bowen.

24      MR. VEEDER:  There is nothing further until in the morn-

25   ing, your Honor, when we have some additional reports.

2923

1          MR. HENDERSON:  Your Honor, Henderson is my name.  My

2     place is over on the main stem.  Could I ask that Mr. Stahlman

3     be notified when my case comes up?

4          THE MASTER:  Yes.  Mr. Stahlman was here this morning

5     and he stated he wished to be notified when your property

6     comes up.

7          MR. HENDERSON:  Thank you.

8          THE MASTER:  Do I understand, Mr. Veeder, that you do

9     not know at the moment when Mr. Henderson's property will be

10    considered?

11         MR. VEEDER:  I don't at the moment, but I will try to

12    check it out today and let Mr. Henderson and Mr. Stahlman know.

13         THE MASTER:  Is there any further testimony to present

14    at the present time?

15         MR. VEEDER:  Not at this time, your Honor.

16         MR. SACHSE:  Not from me.

17         THE MASTER:  At this time we will recess until tomorrow

18    morning at 9:30 A.M., May 5th.

19

20                              ------

21

22

23

24

25

1        <u>Fallbrook, California, Tuesday, May 5, 1959.  9:30 A.M.</u>

2

3        THE CLERK:  Court is now in session.

4        THE MASTER:  Will counsel state their appearances for

5    the record?

6        MR. VEEDER:  William H. Veeder for the United States of

7    America.

8        LCDR REDD:  Lcdr Redd for the United States of America.

9        MR. SACHSE:  Franz R. Sachse for Fallbrook Public Utility

10    District and individual named defendants.

11        MR. WILLETT:  P. W. Willett for Eugene Neal Swearingen,

12    Ardyth Louise Lattimer and Charles E. Stubblefield.

13        MR. KENNEDY:  G. Norman Kennedy for the defendants Ed M.

14    and Doris Lucille Suderman.  I will stipulate that Government's

15    Exhibit No. MR-32 may be received in evidence.  There is no

16    objection to the report by the defendants Suderman.

17        THE MASTER: Very well.  In so far as the hearing yester-

18    day is concerned, Mr. Kennedy, the hearing had been adjourned

19    until today with the expectation we would hold hearings today

20    and tomorrow, and Col. Bowen was called away, with the under-

21    standing that anyone who had anything to be heard yesterday

22    could be heard today.

23        MR. KENNEDY:  It has been explained to me.  There is no

24    use in my taking up your time, as long as Mr. Veeder has signed

25    the stipulation.

1     MR. VEEDER:  As long as there is agreement.

2     THE MASTER:  I understand that you have stipulated that

3 the engineering report is a correct statement of facts?

4     MR. KENNEDY:  Yes, sir.  And the stipulation is offered.

5     MR. VEEDER:  The stipulation between Mr. Kennedy and

6 myself is now offered to the Special Master.  I don't think

7 you want to make it a part of the record.

8     THE MASTER:  It will be received and filed with the

9 pleadings.

10     MR. KENNEDY:  Yes.

11     MR. VEEDER:  We do have, your Honor, an addendum to the

12 Stubblefield engineering report, which is MR-1.  And I would

13 like to have the record show that copies of that addendum are

14 being handed to the Clerk for incorporation into Exhibit MR-1.

15     THE MASTER:  That should be marked then Exhibit MR-1-A.

16     MR. VEEDER:  If that is your desire.

17     THE MASTER:  I believe so, to indicate it was not a part

18 of the exhibit offered on April the 6th.

19     Mr. Willett, is there any objection to this addendum

20 to the engineering report on Mr. Stubblefield's property?

21     MR. WILLETT:  No.

22     THE MASTER:  That will be received in evidence then as

23 MR-1-A and physically incorporated in the engineering report

24 MR-1.

25     Mr. Willett, did you have any evidence which you wish

1    to present at the present time?

2         MR. WILLETT:  No.  The defendants are not here and I

3    couldn't reach them, they are out of town, so I would have to

4    have them appear at a later date.

5         THE MASTER:  Well, there will be a further hearing on

6    May 25th, and if you wish to present evidence you may have

7    your defendants or any other witnesses present then at that

8    time.

9         MR. SACHSE:  Could we go off the record, your Honor?

10        THE MASTER:  Yes.

11        (Discussion off record.)

12        THE MASTER:  Back on the record.

13        MR. VEEDER:  Call Col. Bowen, please.

14

15                    ALLEN C. BOWEN,

16   recalled as a witness, having been previously sworn, testified

17   as follows:

18

19                    DIRECT EXAMINATION

20   BY MR. VEEDER:

21        Q  Col. Bowen, I hand you exhibit marked MR-36 for Iden-

22   tification and ask you to state into the record the name of

23   the party for whom that engineering report was prepared, and to

24   state under whose direction the report was prepared.

25        A  Plaintiff's Exhibit MR-36 is a report on the property

1  of Vernon D. Simpson.  This report was prepared under my direc-

2  tion and supervision.

3       Q  Is it in your opinion accurate?

4       A  Yes, sir.

5       Q  Would you kindly identify that exhibit as it relates

6  to Plaintiff's Exhibit MR-21, using your red pen to identify

7  it on that exhibit?

8       THE WITNESS:  May I ask Commander Redd if this is a 43?

9       LCDR REDD:  Yes, that is a 43.

10      THE WITNESS:  With a red pen I have marked MR-36 within

11  the exterior boundaries of Parcel No. 43 as it is delineated

12  on Plaintiff's Exhibit MR-21.

13      MR. VEEDER:  We offer in evidence MR-36.

14      THE MASTER:  That will be received in evidence as

15  Exhibit MR-36.

16      MR. VEEDER:  Is that a client of yours?

17      THE WITNESS:  43, Simpson.

18      MR. SACHSE:  No.

19  BY MR. VEEDER:

20      Q  I hand you engineering report marked MR-37 and ask

21  you to state into the record the name of the party to whom

22  that pertains, and to state under whose direction that engin-

23  eering report was prepared.

24      A  MR-37 is the report on the property of Carl N. Halde,

25  H-a-l-d-e.  This report was prepared under my direction and

2928

1    supervision, and is Parcel No. 121.

2          Commander Redd, you have 21 on here.

3          LCDR REDD:   121.

4    BY MR. VEEDER:

5          Q   Under whose direction was that prepared?

6          A   It was prepared under my direction.

7          Q   And is it accurate to your knowledge?

8          A   Yes, sir.

9          Q   And would you identify it on MR-21, please?

10         A   With a red pen I have marked MR-37 within the ex-

11   terior boundaries of Parcel No. 121 as it is delineated on

12   Plaintiff's Exhibit MR-21.

13         MR. VEEDER:   We offer in evidence MR-37.

14         THE MASTER:   That will be received in evidence as Exhibit

15   MR-37.

16         I believe this is the parcel of property where the owners

17   appeared yesterday and stated that their son was to represent

18   them as their attorney and that they would probably be here on

19   May 25th.

20         LCDR REDD:   Yes.

21   BY MR. VEEDER:

22         Q   I hand you Exhibit MR-38 and ask you to state into the

23   record for whom that engineering report was prepared, and to

24   state under whose direction.

25         A   MR-38 is a report of the property of Frank R. Capra.

1   This report was prepared under my supervision and direction.

2      Q  And to your personal knowledge is it accurate?

3      A  Yes, sir.

4      Q  And would you kindly identify it on Exhibit MR-21,

5   using a red pen?

6      A  In red pen I have marked MR-38 within the exterior

7   limits of Parcel No. 101 as it is delineated on Plaintiff's

8   Exhibit MR-21.

9      MR. VEEDER:  We offer in evidence MR-38.

10      MR. SACHSE:  Let the record indicate that the owner of

11   that parcel is represented by me.  I have no objection to the

12   introduction of the exhibit, but I would like to ask a couple

13   of questions of Col. Bowen.

14      THE MASTER:  Very well.  The exhibit will be received in

15   evidence as Exhibit MR-38.

16      MR. SACHSE:  First I would like to state, your Honor,

17   that I am in a peculiar position.  I observe I represent both

18   of these people.  Col. Bowen--

19      MR. VEEDER:  When you say both of these people--

20      MR. SACHSE:  I am going to explain in a moment.

21

22                · CROSS-EXAMINATION

23   BY MR. SACHSE:

24      Q  Col. Bowen, in Parcel 101 on your geologic survey

25   map you indicate a dam on a small tributary of Rainbow Creek

1  in the most westerly 40 acres of the parcel. Do you see the

2  dam to which I refer?

3       A   Yes, sir.

4       Q   Is that dam located as a result of a survey on the

5  ground, and are you quite certain, in other words, whether it

6  lies north or south of that property line?

7       A   Well, the dam, Mr. Sachse, is located exactly where

8  the symbol designates as it appears on the photograph.  So

9  there can be no question of the location of the dam with

10  respect to the terrain.  But the property lines are rather

11  uncertain in that area, and we make no pretense to locate

12  property lines accurately.  We don't make actual property line

13  surveys.

14      MR. SACHSE:  I would like to state for the record, or

15  perhaps-- Withdraw that.  One more question.

16       Q   According to the property lines as indicated on your

17  photograph and on MR-21, the dam would appear to be on Parcel

18  101.  Is that correct?

19       A   Yes, sir.

20       Q   And the lake would appear to extend onto Parcel 61.

21  Is that correct?

22       A   Yes, sir.  The pond would be partly on 101 and partly

23  on 61, as indicated in the map contained in Plaintiff's MR-38.

24      MR. SACHSE:  For the record, your Honor, I represent

25  the owner of Parcel 61, also, Hayes.  And it is my impression,

2931

1  and I think my answer so pleads, that Hayes has a dam. I

2  would simply like to request at this time the Court's permis-

3  sion at the next hearing to attempt to file a stipulation,

4  or something of the kind, between Hayes and Capra identifying

5  which one of these two men has the dam, for whatever value it

6  may be.  The United States is apparently not sure exactly

7  where the property line is.

8       THE MASTER:  In other words, you would endeavor between

9  now and the date of the next hearing to make whatever ground

10  survey is required to establish whether the property line is

11  north or south of the dam?

12       MR. SACHSE:  Of the dam, yes.

13       THE MASTER:  Very well.

14       MR. SACHSE:  I will say right now that there is no prayer

15  on the part of Mr. Capra for any storage facilities of any kind

16  on Rainbow Creek.  And if the dam is in fact on the Capra land,

17  then the dam will constitute a trespass on his land, because

18  Capra doesn't think he has a dam on his land.

19       MR. VEEDER:  I want the record to show, of course, not

20  only in regard to MR-38 but all other engineering reports that

21  we have offered in evidence that the United States assumes no

22  responsibility whatever in regard to the location of boundary

23  lines of these parcels, it couldn't and it shouldn't, and we

24  certainly don't.

25       THE MASTER:  In other words, you are introducing evidence

1    which is true to the best of your knowledge, but you are

2    not guaranteeing that every boundary line is correct to the

3    foot?

4         MR. VEEDER:  We don't guarantee any boundary lines,

5    your Honor.  We do in regard to soil surveys and to similar

6    matters, but certainly as to acreages or as to location of

7    lines I don't think we could assume that responsibility, and

8    certainly we don't.

9         THE MASTER:  Yes.  I assume, Mr. Sachse, between now and

10   the date of the next hearing, which will be May 25th, you will

11   make whatever investigation is necessary and will present some

12   stipulation between the property owners, or testimony with

13   reference to the actual location of the dam with reference to

14   Parcel 61 and Parcel 101?

15        MR. SACHSE:  Yes, your Honor.  It seems to me that the

16   United States should be interested in this.

17        MR. VEEDER:  We are.

18        MR. SACHSE:  If the prayer of their complaint as to

19   restraint of diversions of surface water-- and it is a matter

20   which I have heard Mr. Veeder discuss at some length before

21   Judge Carter-- these small upstream dams is granted somebody

22   is going to be enjoined or restricted in some way.  Well, he

23   doesn't want a restriction against the fellow who doesn't own

24   the dam.  So I will try to get the facts and present them to

25   Col. Bowen's office.

1    MR. VEEDER:  May we proceed?

2    MR. SACHSE:  That is all I have of Col. Bowen, thank you.

3

4                    FURTHER DIRECT EXAMINATION

5    BY MR. VEEDER:

6        Q   I hand you, Col. Bowen, MR-39 and ask you to name to

7    whom that report pertains, and also to state under whose

8    direction it was prepared.

9        A   MR-39 is a report on the property of Johnnie Garner,

10   G-a-r-n-e-r.  The report was prepared under my supervision and

11   direction.

12       Q   And would you state if in your opinion it is accurate?

13       A   It is.

14       Q   Would you kindly step to Exhibit MR-21 and mark with

15   a red pen the location of that tract of land?

16       A   This is a small parcel of land, your Honor, and it

17   would be difficult to put the exhibit number within the ex-

18   terior boundaries.  With your permission I will draw a line

19   out beyond the watershed--

20       THE MASTER:  Yes.

21       THE WITNESS:  --and put the number there.  With an

22   arrowhead terminating within the exterior boundaries of Parcel

23   35 I have written in red ink the symbol MR-39 outside of the

24   Rainbow Creek watershed, with a red line extending from that

25   symbol and terminating in an arrowhead within the exterior

1  boundaries of Parcel 35 as that parcel is delineated on

2  Exhibit MR-21.

3  THE MASTER:  I notice although that is a small parcel

4  of property it has a large property description.

5  LCDR REDD:  Sometimes the size of the parcel and the

6  description are in inverse proportion.

7  MR. VEEDER:  We offer Exhibit MR-39.

8  THE MASTER:  It will be received in evidence.

9  MR. VEEDER:  Your Honor, that is the extent of the

10  evidence we have this morning.

11  THE MASTER:  That is, you have no further reports on

12  the Rainbow Creek area?

13  MR. VEEDER:  Those are in the process of preparation,

14  and there are about a dozen.  Am I correct on that, Col. Bowen?

15  THE WITNESS:  If I may refer to my briefcase I will give

16  you the exact number.  There will be ten more reports that we

17  have to complete, they are in the process now of being

18  reproduced, and that will complete everything that we have

19  been requested to report upon within both the Rainbow Creek

20  watershed and the watershed of the Santa Margarita River, in-

21  cluding Sandia Creek below the confluence of Murrieta and

22  Temecula Creek.

23  MR. VEEDER:  And at this time I would like to inquire,

24  your Honor, as to where in your opinion the next area which is

25  to be considered will be located.  You asked me I think on the

1   last hearing whether in our opinion we should go through the

2   months of July and August.

3        THE MASTER:  Well, through the months of July and the

4   first week of August, because I will be taking my vacation

5   during the last half of August.

6        MR. VEEDER:  Well, I think that we should necessarily

7   schedule now, if we can.

8        THE MASTER:  Well, I think we should, also.  Before we

9   get to that point, though, if we have these ten additional

10  reports on this area, that will mean reports on say 50 parcels

11  or less out of a total of 181.  That will leave then presum-

12  ably as the only evidence on the balance of the watershed the

13  evidence to be derived from the maps themselves.  Is that cor-

14  rect?

15       MR. VEEDER:  Well, your Honor, that is, I think, one of

16  the most perplexing problems we have.  It is simply indicative

17  that a great many who have been served simply haven't appeared.

18  And I would be reluctant to say that that would be the only

19  evidence-- Strike that, please.

20       My own view is that before we conclude an area below

21  the confluence of the Murrieta and the Temecula we had better

22  make a canvass that all parties who have a potential claim be

23  given notice, so that they can come in and prove up their

24  rights.  I don't think any of us have a desire to leave

25  potential claims either undisclaimed or unproved.  That is one

8936

1    of the biggest concerns we have right at the moment.

2        MR. SACHSE:  Your Honor, I had the same thought in mind.

3    And some of the people that I represent do not have engineering

4    reports on them, and I was going to ask for them.  But I have

5    checked them pretty carefully and I do not know of a single

6    case-- and if Col. Bowen thinks I am in error I wish he would

7    tell me-- where in the light of his testimony as to ground

8    waters we don't have evidence in the record that would obviate

9    the necessity of anything further.  In other words, those

10   parcels that are underlain entirely by vagrant local percolat-

11   ing ground waters, there is no need for a record of irrigable

12   acreage, and we have the testimony both before Judge Carter

13   and a very brief examination of Col. Bowen yesterday that all

14   of the blue and the brown are underlain by vagrant local.  Now,

15   in Rainbow Valley proper there is a big chunk of alluvium where

16   we don't have studies on them, but with that single exception

17   I think we have got them.

18       MR. VEEDER:  Well, I am not being specific at this

19   juncture, I am saying it is a regard that we have on the record

20   down to date on these hearings.  And certainly I think that

21   each and every individual, some kind and type of notice is

22   required before we should close the Master's records on any of

23   it.  That is my feeling.

24       THE MASTER:  Well, of course on the De Luz Creek area

25   we sent out specific notices to individual defendants requesting

2937

1    them to be present if they wished to present any evidence at

2    specific times.   That was not done in connection with Fallbrook

3    Creek because of the nature of the testimony there.   In this

4    case it would seem that it would not be necessary to send such

5    notices to all of the defendants' whose property is clearly

6    within the blue or the brown areas, particularly where they are

7    not traversed by any stream.   If they have property in the

8    yellow areas and there is no engineering reports and they have

9    not appeared, then I would think that it would be proper to

10    send them notices the same as we sent to the De Luz Creek

11    property owners.

12        MR. VEEDER:   Well, we are making a complete canvass of

13    every name, every pleading, and everything has been done in

14    making maps, so I think we will be in a position to know.   And

15    when that is done I will report to you on it.

16        THE MASTER:   Can you try to classify the owners along

17    the line I suggested there?

18        MR. VEEDER:   Well, we up to this juncture haven't talked

19    to Col. Bowen about it, but we will, and we will check it out.

20    As I say, I am extremely anxious to have all loose ends wound

21    up once we leave a particular area.

22        THE MASTER:   Yes, I would want to have all of the

23    evidence available which would be of assistance, and which

24    would not be merely cumulative.   I don't see the need to call

25    in a lot of people if it is unnecessary, in view of the

1    evidence we have.  But where they do overlie ground waters

2    which are a part of the stream system, if they haven't actually

3    appeared they should be given a notice of a specific date upon

4    which to appear.

5         MR. VEEDER:  Yes.  Well, your Honor understands as well

6    as do I that we are in the position of our own witness putting

7    in the evidence on these matters, and I don't want the question

8    of due process of law to come up at sometime unexpectedly.  And

9    I just want to be sure that adequate notice is given everybody

10   that, after discussion with your Honor, we think should be

11   given notice.  That is all I am saying.  And I think Mr. Sachse

12   will agree, we have no desire to foreclose anyone from being

13   heard if he should at sometime have--

14        THE MASTER:  Then do you anticipate that you would by

15   May 25th have this information compiled which would enable

16   you to send out notice to all persons?

17        MR. VEEDER:  We will drive towards that, but I am not

18   sure that we can.  But we will try very hard and have it for

19   you as soon as possible.

20        THE MASTER:  Very well.  Now, as to the question which

21   you asked about the areas to--

22        MR. SACHSE:  If your Honor please, there is one matter

23   about this watershed that I meant to correct yesterday for the

24   record.  Parcel 100 on Exhibit MR-20 and MR-21 is indicated as

25   being owned by myself and wife.  That parcel has been trans-

     ferred, escrow has closed, and the name should be L. Neal Hook,

2939

1   H-o-o-k, and Frances K. Hook.  And the trust deed and bene-

2   ficiary indicated in Exhibit MR-20 are paid in full.

3        THE MASTER:  Well, in the absence of any--

4        MR. SACHSE:  Hook is already a party to this case and I

5   represent him, and he is fully informed.

6        THE MASTER:  Well, in the absence of any evidence by the

7   Government it will be the finding that Mr. and Mrs. Hook are

8   the apparent owners, and it would indicate that the trust deed

9   has been paid.  There is no engineering report on this parcel?

10       MR. SACHSE:  No, your Honor.  That is all I have.

11       THE MASTER:  Now, in that connection there is no indica-

12   tion on MR-20, which is the property description in parcels,

13   by number to which parcels are riparian.  The only evidence as

14   to the riparian character of the parcels is contained on the

15   map and the engineering reports on the specific parcels.  Is

16   that correct?

17       LCDR REDD:  Yes, sir.

18       MR. SACHSE:  That is correct, your Honor.

19       THE MASTER: Now, at the time of the hearing on April 6th

20   Mr. Pepple was present, and there was a question raised in

21   regard to his property.  And I understood that there would be

22   a further conference between the Government representative and

23   Mr. Pepple.  Has that been done?

24       COL. BOWEN:  Yes, sir.  I have walked over Mr. Pepple's

25   property with him again and have revised the soil survey that

1    was included in the report, which has been given to him, and

2    that will be ready by the 25th, the next hearing.

3    THE MASTER:  Is that one of the ten?

4    COL. BOWEN:  No, sir, that is an addition.  That will be

5    11.

6    MR. SACHSE: There is one other comment in connection

7    with your Honor's reference to riparian status that perhaps I

8    ought to put into the record.  Parcels 58 and 68 as shown on

9    MR-21 and MR-20 do not--

10   THE MASTER:  What were those parcel numbers?

11   MR. SACHSE:  58 and 68.  --do not appear to be riparian

12   to the main stream of the Santa Margarita River.  However,

13   both of those parcels have introduced in the case before Judge

14   Carter deeds of a portion of their land abutting on the main

15   stream, in which those land owners purport to reserve to the

16   remainder of their land riparian rights.  This matter has come

17   up briefly before Judge Carter.  Mr. Veeder and I both are

18   aware that there will be considerable legal discussion over it.

19   I want to call your Honor's attention to the fact that there

20   are two purported reservations of riparian rights in this

21   block that you are considering.

22   MR. VEEDER:  Which matter will be resolved by Judge Carter.

23   MR. SACHSE:  Yes.  I just wanted to remind his Honor that

24   any finding here as to their riparian nature would have to be

25   reviewed by Judge Carter.

1        THE MASTER:  You say those deeds have been introduced

2   before him?

3        MR. SACHSE:  Yes, your Honor.

4        THE MASTER:  Now, at the hearing in April, as far as the

5   testimony which is to be presented in July and the first part

6   of August was concerned, the indication was that that would

7   relate to property which is represented at least in part by

8   Mr. Krieger.  Is that your understanding, Mr. Veeder?

9        MR. VEEDER:  Yes.  Well, now, Mr. Krieger certainly has

10  some lands up in there, and I have talked to him about how he

11  wants to proceed.  Now, whether--

12       MR. SACHSE:  Bill, I suggest we save a few nickels on

13  the reporter while we kick it around.

14       THE MASTER:  Off the record.

15       (Discussion off record.)

16       THE MASTER:  Back on the record.

17       Court will now adjourn until Monday, May 25th, at 9:30,

18  for the further presentation of evidence on the Rainbow Creek

19  watershed.  And on May 25th we will determine what areas to

20  take up and on what future dates hearings will be held.  Mr.

21  Veeder, do you wish to add anything?

22       MR. VEEDER:  No, your Honor.

23       MR. SACHSE:  That does it, your Honor.

24                        -------

25