# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

BEFORE HON. JOHN M. CRANSTON, SPECIAL MASTER

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

Defendants.

No. 1247-SD-C

**REPORTER'S TRANSCRIPT**

# FILED

SEP 2 4 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____ DEPUTY

| | |
|---|---|
| Volume: | 30 |
| Pages | 3059 - 3081 |
| Date: | July 20, 1959 |
| Place: | Fallbrook, California |

RANDOL, FIVECOAT & STEWART
CERTIFIED SHORTHAND REPORTERS
1113 FIRST NATIONAL BUILDING
SAN DIEGO 1, CALIFORNIA
BELMONT 9-4191

1

## INDEX TO WITNESSES

2

3                                              D      X     Voir Dire

4        Allen C. Bowen                      3062          3064
                                             3065
5

6

7

8

9              ## INDEX TO EXHIBITS

10

11                                           Ident.     Evid.

12      MT-3   Tabulation                    3063       3067

13      MT-4   Map                           3063       3065

14

15

16

17

18

19

20

21

22

23

24

25

APPEARANCES

WILLIAM H. VEEDER, ESQ., and
LCDR DONALD W. REDD, U. S. N.,
 For United States of America

GEORGE STAHLMAN, ESQ.,
 For the Vail Company

1    Fallbrook, California, Monday, July 20, 1959; 9:40 A.M.

2

3      THE CLERK:  Court is now in session.

4      THE MASTER:  Will counsel state their appearances for the

5    record, as usual?

6      MR. VEEDER:  William H. Veeder for the United States of

7    America.

8      CDR. REDD:  Lcdr. Redd for the United States of America.

9      MR. STAHLMAN:  George Stahlman for the Vail Company.

10     MR. VEEDER:  We call Col. Bowen, unless there is some other

11   business to be transacted.

12     THE MASTER:  No.

13

14           ALLEN C. BOWEN,

15   recalled as a witness, having been previously sworn, testified

16   as follows:

17

18     MR. STAHLMAN:  I wonder, Mr. Veeder, if this is going to

19   be protracted or is it going to be short, or can you tell us

20   your plan as to how you are going to proceed?  My object in

21   asking is I am only interested if there are some claims that

22   might affect Vail Company.  Outside of that I don't want to have

23   to remain here.

24     MR. VEEDER:  I believe it is going to be very short, Mr.

25   Stahlman.  What I will do is identify the exhibits, offer them

1   in evidence, and have the Colonel identify the areas which are

2   involved.

3   And at this time I might as well state that this is the

4   reach of the stream in which is situated the Vail Company, the

5   Querry properties and the Erle Stanley Gardner properties,

6   which are the big operations in this particular area, which is

7   the area below Vail dam and the Temecula Gorge.

8   Now, those three to whom I have made reference are going to

9   be heard before Judge Carter, as I understand it.  These are

10   the smaller users.  And I truly believe it will be a very short

11   session, unless someone raises some point on which I have no

12   knowledge.

13

14                      DIRECT EXAMINATION

15

16   BY MR. VEEDER:

17   Q   I hand to you, Col. Bowen, the exhibit marked for

18   identification MT-4, and ask you first to read for the record

19   from the title block as to what it is.

20   THE MASTER:  By the way, Mr. Veeder, the last exhibit I

21   have marked is MT-2.  Is there an MT-3?

22   MR. VEEDER:  Well, I had MT-3 just marked.  I thought it

23   would be better to put in the map ahead of it.

24   THE MASTER:  Very well.  I just wanted to be certain that

25   my notes were correct.

1    (Document entitled "Legal Descriptions and Ownerships"

2  marked Plaintiff's Exhibit MT-3 for identification.   Map

3  marked Plaintiff's Exhibit MT-4 for identification.)

4    THE WITNESS:   Plaintiff's Exhibit MT-4 for identification

5  is described in the title block as "Temecula River watershed

6  below Vail Dam and above Temecula Gorge, land ownership."

7  BY MR. VEEDER:

8    Q   Now, under whose direction was that map prepared, Col.

9  Bowen?

10    A   Prepared under my direction.

11    Q   And would you state briefly into the record what is

12  depicted on the Identification MT-4?

13    A   Depicted on the exhibit for identification MT-4 is a

14  solid dark line circumscribing the outer portion of the map, which

15  is the crest of the watershed.   On the north the crest divides

16  the drainage which flows into Temecula Creek and northerly into

17  Murrieta Creek.   On the east it bounds the drainage which

18  enters Temecula Creek below the Vail Dam.   And on the south it

19  is the Santa Margarita watershed dividing the drainage that

20  flows into the Temecula Creek northerly and San Luis Rey River

21  southerly.   And on the west it is the drainage which enters

22  Temecula Creek above the confluence of Temecula Creek with

23  Murrieta Creek.

24    Q   And what is the name of that valley?

25    A   This watershed encloses what is known as the Temecula

1     Valley, and sometimes known as the Pauba Valley, which lies

2     within the Vail Ranch.

3          Q  Now, immediately west of that area what is the valley

4     known as?

5          A  Immediately west of this area the Murrieta Creek and

6     Temecula River or Creek join to form the Santa Margarita River,

7     which flows through the Temecula Canyon.

8          Q  Is this map accurate to your personal knowledge, Col.

9     Bowen?

10         A Yes, sir.

11         MR. VEEDER:  We offer in evidence the Identification

12    marked MT-4.

13         MR. STAHLMAN:  I wonder if I may ask a question, Mr.

14    Veeder.

15

16                    VOIR DIRE EXAMINATION

17

18    BY MR. STAHLMAN:

19         Q  Have you surveyed or indicated in any form what the

20    crest line is between the drainage into Pechanga, where it

21    divides with Temecula?

22         A  No, sir.

23         MR. VEEDER:  You are now referring to the sub --

24         MR. STAHLMAN:  I didn't hear.

25         MR. VEEDER:  You are now referring to the sub-watershed --

1    MR. STAHLMAN:  Yes.

2    MR. VEEDER:  -- of the Pechanga Creek as it refers to the

3  Temecula?

4    MR. STAHLMAN:  Yes.

5

6              FURTHER DIRECT EXAMINATION

7

8  BY MR. VEEDER:

9    Q  And you have not delineated that; is that right?

10    A  That is correct.

11    MR. VEEDER:  Anything more, Mr. Stahlman?

12    MR. STAHLMAN:  No.

13    MR. VEEDER:  We offer in evidence MT-4.

14    THE MASTER:  It will be received in evidence and marked

15  Plaintiff's Exhibit MT-4.

16    (Plaintiff's Exhibit MT-4 for identification received

17  in evidence.)

18  BY MR. VEEDER:

19    Q  Now, I hand to you, Col. Bowen, a document marked for

20  identification MT-3, entitled "Temecula River below Vail Dam

21  and above Temecula Gorge, Legal Descriptions and Ownerships",

22  and ask you to state under whose direction was the tabulation

23  prepared.

24    A  Prepared under my direction.

25    Q  And what is depicted?  What is set forth in that

1    document, to your personal knowledge?

2        A   The parcel descriptions, and apparent ownership of

3    properties therein delineated on Plaintiff's Exhibit MT-4.

4        Q   Now, would you correlate, if you would, please, and

5    give some examples from Identification MT-3 as it relates to

6    the map which is on the easel, Exhibit MT-4?

7        A   Beginning on page 13 of Plaintiff's Exhibit MT-3,

8    at the bottom of the page is shown parcel 82W -- 29 and 30,

9    in the Township, Range and Section -- 11, which is our parcel

10   number.   The parcel description follows that parcel number and

11   is completed on page 14 of MT-3.   On page 14 it shows the

12   ownership to be Frank O. Querry and Odessa D. Querry.   Parcel

13   No. 11 is located astride Pechanga Creek, with the numeral

14   11 encircled, contained within the perimeter of the parcel,

15   and appearing just above the word "Pechanga".   The Querry

16   property is bounded in part by the Vail property, which is

17   northeast of the Pala-Temecula Road.   And also northwest of

18   the northwesterly boundary of the Querry property. It is

19   bounded in part on the southeast at the Kelsey tract, which is

20   a part of the Pechanga Indian Reservation.

21       MR. VEEDER:   I would like the record to show at this

22   time, your Honor, that in the introduction of evidence before

23   Judge Carter in San Diego that we have in great detail delineated

24   and defined the areas of all these creeks which appear on

25   Exhibit MT-4.   And we are not offering that in particularity

1    here unless your Honor desires.

2        THE MASTER:  I don't see any necessity to duplicate that

3    here, because the purpose of the findings I make is for

4    enlightenment of Judge Carter.  And if the information is

5    already before him directly, I don't believe it is necessary

6    to take it here.

7        MR. VEEDER:  Perhaps Mr. Stahlman will recall something

8    that isn't in there, but I believe we have covered the whole

9    matter.  And I offer in evidence Plaintiff's Exhibit marked

10   MT-3 for identification.

11       THE MASTER:  That will be received in evidence as Plaintiff's

12   Exhibit MT-3.

13       (Plaintiff's Exhibit MT-3 for identification received in

14   evidence as Plaintiff's Exhibit MT-3.)

15       THE MASTER:  In that connection, Col. Bowen, I notice on

16   this map there are a great many parcels, chiefly in the Indian

17   Reservation, all of which seem to have a little 1 in a circle.

18   What is the significance of that?  That is not a parcel number,

19   is it?

20       THE WITNESS:  That is all Government-owned land, your

21   Honor.  It includes the Pechanga Indian Reservation, which is

22   shown  with horizontal hatching on MT-4.  It includes the

23   public domain, which is shown with diagonal lines on MT-4.

24   And it includes the portion of the Cleveland National Forest,

25   which is shown with a wavy diagonal cross-hatching.

1          THE MASTER:  I was just wondering about the significance

2     of the 1 in the circle.

3          THE WITNESS:  That is the parcel number, your Honor, which

4     would be parcel No. 1 as described on MT-3, from pages 1 through

5     6, inclusive.

6          MR. VEEDER:  I might add further in that regard that the

7     United States has put into evidence before Judge Carter all of

8     the data, soil surveys, land descriptions, supporting documentary

9     material in regard to the Pechanga Indian Reservation and the

10    national forest and the public domain, so-called.

11         THE MASTER:  Then does that also include this area you

12    referred to as northeast of the Pala-Temecula Road and the

13    Vail Ranch, which also seems to have a 1?  Is that also included

14    in that same description?

15         CDR. REDD:  That 1 there is a mistake.

16         THE WITNESS:  That is in error.  That is the Vail property

17    to which I just referred.  And I am checking MT-3 to see if the

18    Vail property is described.

19         MR. VEEDER:  I want the record to show that Mr. Stahlman

20    is viewing it very closely.  And we did not intend to steal the

21    Vail Company by putting that 1 on.

22         MR. STAHLMAN:  I think that is a rather self-serving

23    declaration, that you did not intend to steal the Vail property.

24         THE WITNESS:  Your Honor, a description of the Vail

25    property is not included in MT-3, and the number 1 which appears

1  encircled within the boundaries of the Vail Ranch should be

2  deleted from Exhibit MT-4.

3      MR. VEEDER:  I ask you, Col. Bowen, to take a pen and

4  simply eradicate that number 1 from the Vail property.

5      THE WITNESS:  With a pen I have eradicated the number 1

6  which appeared on the Vail property, depicted on Plaintiff's

7  Exhibit MT-4.

8      THE MASTER:  Then MT-3 is a list of the ownerships in the

9  area referred to below the Vail Dam as well as above Temecula

10  Gorge, exclusive of any portion of the Vail Ranch itself.

11      THE WITNESS:  Yes, sir.

12  BY MR. VEEDER:

13      Q  Now, also for purposes of clarification, I notice the

14  figure 71 in a circle near what appears to be a highway. I

15  take it that is an indication of a highway and not intended to be

16  a parcel number.

17      A  Yes, sir.  That is California  State Highway No. 71,

18  which traverses the Vail property.

19      Q  And there is no parcel of that number and that is not

20  intended as a parcel designation?

21      MR. STAHLMAN:  Why don't you just write "Highway" over

22  that?

23      THE WITNESS:  That is correct, your Honor.

24      CDR. REDD:  I think you will note that 71 is in larger

25  case numerals than the others, to distinguish.

1          I might state for the record here, too, that these parcel

2     numbers indicate the approximate location of the property.   That

3     is, at least the Township and Section.   As an example, on page

4     17 we have parcel 92W -- 4-19.   That would be this property.

5     This would indicate that this property was located in Township

6     9 South 2 West, Section 4, and for this sub-watershed that has

7     been designated as parcel 19.

8          THE MASTER: I think that is clear.

9          MR. VEEDER:  Your Honor, I observe another lady has come

10    into the courtroom.   It might be she has something to say.

11         THE MASTER:. Mrs. Wilson, --

12         MRS. WILSON:  Yes.

13         THE MASTER:   -- you didn't have any testimony to present

14    this morning, or did you?

15         MRS. WILSON:  No.

16         THE MASTER:  Very well.

17         MR. WILSON:  No, I am not in on this.   I am just listening.

18         MR. VEEDER:  Your Honor, we have nothing further to offer

19    at this time in the record.

20         THE MASTER:  Very well. Mr. Stahlman, do you have any

21    questions you wish to ask?

22         MR. STAHLMAN:  No.

23         THE MASTER:  Now, will you have any engineering reports

24    or testimony with regard to the nature of these parcels, and

25    particularly the riparian character, if any, and the nature of

1  the underground water?

2      MR. VEEDER:  Col. Bowen, would you respond to that?

3      THE WITNESS:  Yes, sir.  We have prepared a report on

4  the Querry property, which is parcel No. 11, depicted on MT-4.

5  We have prepared or are in the process of preparing a report on

6  the Erle Stanley Gardner property, which is parcel No. 31 and

7  parcel No. 36, on Plaintiff's Exhibit MT-4.   We have prepared

8  reports, and those reports are in evidence, of Pechanga Indian

9  Reservation, the public domain and national forest land depicted

10  on MT-4.

11      THE MASTER: Those are in evidence before Judge Carter?

12      MR. VEEDER:  That is correct.  That was the point I was

13  making, your Honor.  From the standpoint of the geological aspects

14  of the area, the hydrology of the area, land use in the area, and

15  the related data in regard to ground water, it is all presently

16  in the record before Judge Carter.  For example, the area which

17  is known as Wolf Valley is a ground water basin concerning which

18  a great deal of evidence has been offerred.  Col. Bowen has

19  prepared, and they are now in the record, the soil surveys in

20  regard to the Pechanga areas, in regard to the Pechanga Indian

21  Reservation, and also in regard to all the rest of the public

22  domain.  So for practical purposes the physical phenomena of

23  the Pechanga sub-watershed are all in the record at the present

24  time.  And, as I say, I inquired whether your Honor desired me

25  to have those reintroduced here or whether you desire to have

1   that made available for you in making your findings.  It depends

2   entirely upon your Honor in that regard.

3       THE MASTER:  I had misunderstood your statement earlier.

4   I thought you merely meant evidence in regard to the physical

5   location or the course followed by these creeks.  That is,

6   identifying them in that manner.

7       MR. VEEDER:  Very detailed, your Honor, the material that

8   is in the record in regard to -- I am not speaking now about

9   the smaller parcels, although we do have data in the record in

10   general terms with regard to this aspect of the case, the aspect

11   to which I am referring, that is, the hydrology and the geology.

12   But it may be that you would want to have that data made avail-

13   able to you, and I will arrange to have it brought to your

14   office, if you want me to, and also the transcript of the record

15   I think might be helpful to you.

16       THE MASTER:  Well, if I am to make any kind of findings

17   at all on this property I would have to have that evidence

18   available.  Otherwise, any finding I would make would simply be

19   limited to reference to these exhibits and a statement of who

20   owned the land, and that would be about it.

21       MR. VEEDER:  Of course I think there is an additional

22   factor.  These people have been noticed and had  the opportunity

23   to come in and prove up their rights.

24       THE MASTER:  Yes.

25       MR. VEEDER:  And it will be observed there is no one here,

1   which is a matter which has always concerned me, because we are

2   in the position of offering evidence here as impartial scientists

3   putting in the data. At the same time I had hoped that the

4   individual defendants who have been served and who are part of

5   the litigation would be here so there would be no question with

6   regard to their tracts.

7       I will make the data available to your Honor and assist

8   in any way I can in that connection.

9       THE MASTER: Is that information more or less in concen-

10  trated form or is it spread out through several hundred or

11  thousand pages of transcript?

12      MR. VEEDER: Oh, no. I will say what we will do is iden-

13  tify the areas pertinent to you. In other words, Col. Bowen

14  has taken aerials showing the entire watershed, of each sub-

15  watershed, and identified the course of the stream. We have

16  called witnesses who are geologists and have shown where the

17  ground water basins are situated. And we have, of course, the

18  overall aerials   which will show the locations and material

19  like that.

20      It is my thought you would probably want to review this,

21  and if you desire to have us be more specific than has been

22  done, we can do so. I think it is essential that we do that.

23      THE MASTER: Well, I would think then probably the thing

24  to do would be to have you make available to me the portions of

25  the record before Judge Carter which you think are pertinent to

1  this area, and, as I say, try to indicate which specific pages

2  of the transcript will be applicable.  And then I can discuss

3  the matter with Judge Carter as to the extent to which he

4  wishes me to go into it and the extent to which he expects to

5  make even the initial determinations himself.

6      MR. VEEDER:  I think that is the only thing we can do,

7  your Honor, when the individuals have not requested soil surveys

8  and have not themselves appeared.

9      THE MASTER:  Yes.

10     MR. VEEDER:  It concerns us greatly, because they should

11 be heard, if they are making claims.   And if they aren't making

12 claims, we would like to know that, too.

13     But I will make the data available to you and I will have

14 the pages that we think are pertinent in the transcript marked.

15 And we will circulate it so that anyone who might disagree with

16 our designation -- We will circulate a listing of the pages.

17 I am not going to send it to everyone, your Honor, unless you

18 direct me to.  But I will make it available to counsel who have

19 been here.

20     THE MASTER:  I think that is all that would be required,

21 because if parties have not even appeared at the hearing here to

22 hear testimony which might have been presented orally, I don't

23 see any reason why they should be given written notice of

24 testimony which has been given before Judge Carter.

25     MR. VEEDER:  I will pursue that line, your Honor, and we

1   will see that is made available to you.

2   THE MASTER:  If you will do that, then I will check in

3   with Judge Carter and ascertain the extent to which he wishes

4   me to try to make detailed findings and the extent to which he

5   is going to make those himself.  And if after discussing it with

6   him and examining the record which you make available it appears

7   that some further evidence should be presented before me, I

8   will advise you in time so that you can prepare it.

9   MR. VEEDER: Thank you, your Honor.

10   MR. STAHLMAN:  I am waiting for you to finish.

11   MR. VEEDER:  I am through.

12   MR. STAHLMAN:  When you get through with this, Mr. Veeder,

13   are you going to have a compilation of what the water uses on

14   Pechanga Creek are, we will say, out of that drainage area?

15   MR. VEEDER:  To the extent that we can.  And that is one

16   of the matters that concerns us is if a man has a well up there

17   and he doesn't come in and claim it, we are in a difficult

18   position on that point.  And I think this Pechanga area is going

19   to be important.  I mean it is important to Vail Company, it is

20   important to us.

21   MR. STAHLMAN:  That is the reason I say that.  For instance,

22   we are in the position where we are obligated to prove what our

23   present use is.  And, in fact, what we have used in the past, to

24   some extent.  And I think as long as we have to, in order to get

25   our sights on what the water usage is and the potential water

1   duty in these areas, that when we get through here we should

2   have the figure in relation to other properties that presently

3   use or potentially can use water in say Pechanga Creek.   And on

4   other tributaries I think the same thing should be done.

5       MR. VEEDER:  We are at the moment, as you know, making

6   recordings in the Pechanga Valley, Wolf Valley, and on some of

7   the Vail properties.  We are going to install recorders on some

8   of the Pechanga Indian land.  Material like that has to be part

9   of the overall record.  That is my view.  And we will try and

10  have an analysis and proposed findings overall.  And I think it

11  is a matter of how best to correlate your Honor's findings and

12  the Court's findings.  And that is why I have suggested the

13  manner and course that has been outlined here.

14      THE MASTER: Yes, I think it is a problem that only can be

15  answered finally after we have had an opportunity to discuss this

16  further with Judge Carter after going over the portions of the

17  record which you make available to me.

18      MR. VEEDER:  We are certainly anxious to have these matters

19  brought to a close as to each individual.  And if he does

20  have a water use I think the Court should make some direction

21  as to how that should be handled, because he is entitled to be

22  protected.  That is my view.  As I said, we have nothing more to

23  offer, although I would certainly carry out what I stated to your

24  Honor.

25      MR. STAHLMAN:  Do you have any  information as to how many

1  people on Pechanga Creek, for instance, have applied for study?

2  You mentioned Gardner, you mentioned Querry.  Are these the

3  only ones or are there others in there that requested this study

4  of their water use?

5       COL. BOWEN:  There are a few small owners, Mr. Stahlman,

6  such as Dorland, who is south of the Vail Ranch, parcel No. 40,

7  indicated on MT-4 with the numeral 40 encircled within the

8  limits of the property.

9       Bethell, Mr. Gardner's secretary, who has a small parcel,

10  No. 32.  Agnes H. Bethell.  And a few other small owners, but

11  very few.

12       THE MASTER:  Will those reports be presented then at a

13  later hearing?

14       MR. VEEDER: It has been our intention, your Honor, in

15  regard to, for example, the Erle Stanley Gardner property, that

16  that would go in before Judge Carter, because that is going to be

17  a case -- and the Querry case is one where we think evidence

18  should be taken down --

19       THE MASTER:  What about this property say of Mr. Gardner's

20  secretary, where she has requested a report?  Will that go before

21  Judge Carter, too?

22       MR. VEEDER: I thought that would be the case, but -- and

23  it would seem to me that they are contiguous, are they not,

24  Colonel?

25       COL. BOWEN: Yes, they are.

1      THE MASTER:  I think that would be the logical course to

2  pursue, then.

3      MR. VEEDER:  That is one of the problems of having two

4  hearings.   I am not complaining a bit.  It is difficult to know

5  where to draw the line, your Honor.

6      THE MASTER:  It is. I recognize the problem you have

7  there.  Then if there is nothing further to present at this time

8  the question would be to set a date for the next hearing and

9  also to indicate the property, the geographic area, which would

10  be considered at that time, in addition to presenting any

11  further evidence on this area which might prove to be necessary

12  in the light of discussion with Judge Carter.

13      MR. VEEDER:  Well, I think that from the standpoint of time

14  it would be suitable for us to put the matter  over until

15  September 17th and 18th, because we are going to reconvene on

16  the 22nd of September.  My notes show the 22nd.  It may be the

17  23rd.  Anyway, it is the week of the 21st.  Tuesday is the 22nd;

18  isn't that correct?

19      THE MASTER:  That is correct.

20      MR. VEEDER:  And the next area that would be involved

21  would be Temecula River above the Vail Dam.  Again we have the

22  problem of -- the problem which becomes increasingly important

23  to us in that area, the large holdings/of the Holcombs, the successors

24  in interest of the Barbees.  Mr. Sachse  has clients in the area.

25  I think the Stardust Ranch is there.  And the Garnsey properties

3079

1   are situated there.  All of which I believe will be before

2   Judge Carter.  But there are, of course, small holding in there.

3   I tender your Honor this thought.  It may be desirable to discuss

4   with Judge Carter just exactly what he desires to have done in

5   the circumstances.  There are a large number of parcels in the

6   area.  Col. Bowen, could you state into the record how many

7   requests for soil surveys have been made in that area aside from

8   the larger owners to which I have made mention, if you recall?

9        COL. BOWEN:  Aside from the large owners there are

10  probably not more than a half a dozen, Mr.Veeder, who have

11  made requests for surveys.

12       MR. VEEDER:  Well, I think we would want to put those in.

13  Again, we are in this situation where we have had very extensive

14  hearings in connection with the geology of the area.  Both the

15  State and the United States  have called witnesses and have put

16  in I would say a thousand pages in regard to this area, including

17  documents.  And it is an area of importance, I am sure, to the

18  Vail Company, as it is to us, in regard to the geology of the

19  area and the conflicting claims.  That is the area in which the

20  Barbee-Oviatt suit was originally started, and in which the Vails

21  intervened, as I remember; isn't that right, in the State court?

22       MR. STAHLMAN:  Yes.

23       MR. VEEDER:  So the issues there are very important to

24  the large owners.

25       THE MASTER:  That would be the next area which you would

1    consider, in any event, then?

2        MR. VEEDER:  That was in accordance with our agreement

3    with Mr. Sachse, that we would go counterclockwise.

4        THE MASTER:  Yes.  I would assume then what we should do

5    is adjourn the hearing then until September 17th, and at that

6    time would consider any additional evidence which might be

7    presented in the light of developments between now and then

8    with reference to the area here below the Vail Dam and above

9    the Temecula Gorge which we have discussed this morning, and

10   then also present any evidence which you desire to present

11   at that time in regard to the property on the Temecula River

12   above the Vail Dam.

13       MR. VEEDER:  I think that would be desirable.

14       THE MASTER:  And then at that time we could consider the

15   extent of additional testimony in these two areas which would be

16   presented before me, and could then also determine the time and

17   the area to be considered at the next hearing.

18       MR. VEEDER: That is correct, your Honor.  I think that

19   would be the way to proceed.

20       THE MASTER:  Very well, then.  At this time we will

21   adjourn the hearing until Thursday, September the 17th, for

22   further consideration of evidence, if any, on property in the

23   Temecula River watershed below the Vail Dam and above the

24   Temecula Gorge, and also for initial consideration of the Teme-

25   cula River above the Vail Dam.  And the determination of the

1    course to be followed after that will be announced on September

2    17th.

3            MR. VEEDER:   Thank you.

4            THE MASTER: The hearing is adjourned until September 17th.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25