# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

BEFORE HON. JOHN M. CRANSTON, SPECIAL MASTER

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

Defendants.

No. 1247-SD-C

**FILED**

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

By _____ DEPUTY

**REPORTER'S TRANSCRIPT**

**Volume:** 32

**Pages** 3119 - 3150

**Date:** November 2, 1959

**Place:** Fallbrook, California

RANDOL, FIVECOAT & STEWART

CERTIFIED SHORTHAND REPORTERS

1113 FIRST NATIONAL BUILDING

SAN DIEGO 1, CALIFORNIA

BELMONT 9-4191

## INDEX TO WITNESSES

D

Allen C. Bowen                                          3123


## INDEX TO EXHIBITS

                                                  Iden.   Evid.

MR-37D-1   Supplemental Report,
           Carl N. Halde.                                 3127

MT-7       Engineering Report,
           Fletcher H. and Theda B. Hayward.      3128    3130

MT-8       Engineering Report,
           Lester W. Hagman.                      3131    3132

MT-9       Engineering Report,
           Gustav A. Spaniol.                     3133    3133

MT-10      Engineering Report,
           John H. Richie.                        3135    3135

MR-50      Engineering Report,
           Clara E. McDonald.                     3142    3144

MR-51      Engineering Report,
           Tempe C. Frick                         3144

3120

1    APPEARANCES:

2        WILLIAM H. VEEDER, ESQ., and
         LCDR DONALD W. REDD, U. S. N.,
3          For United States of America.

4        FRANZ R. SACHSE, ESQ.,
           For Fallbrook Public Utility District
5          and individually named defendants.

6        GEORGE STAHLMAN, ESQ.,
           For the Vail Company.

7

8        G. A. SPANIOL, in pro per.

9        L. W. HAGMAN, in pro per.

         FLETCHER H. and THEDA B. HAYWARD, in pro per.
10
         MRS. ROBERT BOURRET, in pro per.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    Fallbrook, California, Monday, November 2, 1959;   9:45 A. M.

2

3         THE CLERK:   Court is now in session.

4         THE MASTER:   Will counsel state their appearance for the

5    record?

6         MR. VEEDER:   William H. Veeder for the United States of

7    America.

8         LCDR REDD:   LCDR Donald W. Redd for the United States of

9    America.

10        MR. SACHSE:   Franz R. Sachse for Fallbrook Public Utility

11   District and individually named defendants.

12        MR. STAHLMAN:   George Stahlman for Vail Company.

13        THE MASTER:   There are several individuals here.   Would they

14   state their appearance for the record?

15        MR. SPANIOL:   G. A. Spaniol.

16        MR. HAGMAN:   L. W. Hagman.

17        MR. HAYWARD:   Theda B. Hayward and Fletcher H. Hayward.

18   We have sold the place to Mr. Stan Jessop and Mr. Bob Bourret,

19   and Mr. Bourret is here this morning.

20        MRS. BOURRET:   I am Mrs. Bourret.

21        THE MASTER:   Very well.

22        MR. VEEDER:   Would you call Col. Bowen?

23        Your Honor, I refer to the enginnering report prepared by

24   the Office of Ground Water Resources in connection with the

25   Halde property.

          MR. STAHLMAN:   What was the name?

1    MR. VEEDER: Halde, H-a-l-d-e. At the session which Mr.

2   Halde was in attendance some questions were raised regarding the

3   location of certain physical features of the Halde property.

4   Col. Bowen has now made a further investigation of the property.

5   And at our last hearing we had marked for identification MR-37D-1,

6   which is the supplemental report by Col. Bowen. The matter was

7   brought to the attention of Mr. Halde by our letter of September

8   22, 1959. Mr. Halde responded, stating that he would like to

9   have some foundation in support of Col. Bowen's report. And your

10   letter of October 5, 1959, you referred to the letter from Mr.

11   Halde stating that if Col. Bowen testified in accordance with

12   Mr. Halde's request that it would be proper in your view to

13   proceed, and stating "that unless I hear from Mr. Halde to the

14   contrary I shall assume that the foregoing procedure will be

15   acceptable to him."

16    On that basis I will proceed to ask a few more questions

17   in foundation from Col. Bowen, and then offer in evidence this

18   identification.

19    THE MASTER: In other words, you intend to proceed in

20   accordance with the course outlined in the correspondence between

21   your office, myself and Mr. Halde?

22    MR. VEEDER: Correct, your Honor.

23    THE MASTER: Very well.

24    MR. VEEDER: If that is acceptable to you.

25    THE MASTER: Yes, you may proceed.

1      MR. STAHLMAN: Mr. Veeder, I wonder if we might indicate

2  where that property is?

3      MR. VEEDER: In the course of foundation I will ask that

4  question.

5

6            ALLEN C. BOWEN,

7  recalled as a witness, having been previously sworn, testified

8  as follows:

9

10           DIRECT EXAMINATION

11

12  BY MR. VEEDER:

13      Q Col. Bowen, I hand you the identification marked MR-37D-1,

14  and request that you state into the record the location of that

15  property to the end that we will all know exactly where it is

16  situated.

17      A The property reported on in Plaintiff's Exhibit MR-37D-1

18  is located on the Rainbow Creek, that creek being tributary

19  to the Santa Margarita River. Do we have a copy of the Rainbow

20  Creek watershed map?

21      THE MASTER: I didn't bring that from San Diego.

22      LCDR REDD: Here is an unofficial copy.

23  BY MR. VEEDER:

24      Q You might give the location from this map, if you would,

25  Colonel, in order to state it more specifically.

1    A  Approximately 40 acres, which is the southwest quarter

2  of the northeast quarter, Section 11, Township 9 South, Range

3  3 West, San Bernardino Base Line and Meridian.

4    Q  Now, Colonel, would you state the kind and type of

5  investigation that you undertook in the preparation of identifi-

6  cation MR-37D-1?

7    A  Yes, sir.  I personally went to the Halde property,

8  accompanied by my engineering officer, Lt. Woods, and in the

9  presence of Mr. Halde, Sr. -- that is Carl N. Halde -- Mr.

10  Woods and I made a complete reconnaisance of all of the water

11  supply and distribution facilities of this property.  That

12  included measuring the depth of water in wells, the diameter

13  of wells, the depth to water in wells, the diameter of the lines

14  delivering water from wells to his reservoirs, and the size

15  of the reservoirs.  In addition to the reconnaisance and

16  surveys that were conducted by me, and in view of the difference

17  of opinion on the size of two of the ground storage reservoirs,

18  I sent a --

19    Q  That is ground water?

20    A  No, sir, these are --

21    Q  Ground storage reservoirs?

22    A  Earth storage reservoirs.  I sent a topographic survey

23  party back under the supervision of Mr. Woods, who was acting

24  under my direction, to make topographic surveys with plane

25  table of two of these surface water storage reservoirs.  And the

topography which results from that survey is included with

Plaintiff's Exhibit MR-37D-1.  The capacity of those reservoirs

is indicated in the narrative report.

Q  Now, Col. Bowen, is MR-37D-1 for Identification

identical with the report and the attachments which you forwarded

yourself to Mr. Halde?

A  It is.

Q  And you mentioned Mr. Halde, Sr.  Was he the gentleman

who testified in this proceedings?

A  Yes, sir.

MR. VEEDER:  Unless someone has further questions on this

matter, or your Honor has, I will now offer in evidence MR-37D-1.

THE MASTER:  Well, this will be received in evidence as

Exhibit MR-37D-1.

I shall write to Mr. Halde, Jr., the attorney, advising

this has been received in evidence following the testimony

which Col. Bowen has given, and advise him that if he wishes to

make any further objection he should do so at the next session

of the court; and in the absence of such objection the document

will remain in evidence.  In other words, it is admitted

subject to his motion to strike it, if he makes it at the

next session of the hearings.

MR. SACHSE: I have no objection at all.  But I would like

to ask about two questions of Col. Bowen regarding that, if I

could.

3126

CROSS EXAMINATION

BY MR. SACHSE:

Q  Col. Bowen, what are the capacities you calculated for those reservoirs? You referred to it being in your report.

A  Yes, sir.  One reservoir is located in the northerly portion of that 40, that is an earth-filled dam with an earth-lined spillway, and is astride a small tributary to Rainbow Creek.  Now, the capacity of that reservoir is about two acre feet.

The other reservoir that we undertook topography on is formed by a structure astride Rainbow Creek itself.  That structure is located in the southwest corner of the Halde property and, although incomplete at the time of our survey, the volume of the reservoir as it would be with the dam complete was computed.

Q  What was that volume?

A  With maximum ponding, the capacity of the reservoir on Rainbow Creek will be about 3.2 acre feet.  At the stage of construction existing when the survey was made, the capacity was about .4 of an acre foot.

MR. SACHSE:  That is all I have.

MR. VEEDER: It will be recalled, your Honor, in connection with these impounding structures that objection has been made to the claimed right to the use of water by Mr. Halde, and of

3127

1    course those objections stand, irrespective of the fact that we

2    called Col. Bowen to put in this evidence.

3        MR. SACHSE:  Both Mr. Veeder and I had objections on the

4    ground there was no showing of permit, and he hadn't pleaded

5    permit, and his claimed water right without either a pleading

6    or a showing of a permit that he had no impoundment right as

7    such.

8        MR. VEEDER:  However, we have submitted to him, as I recall,

9    a copy of the transcript of that record.

10       MR. SACHSE: That is right.

11       MR. VEEDER:  So there is no doubt that he is fully informed

12   of the character and type of our objections.

13       THE MASTER:  I believe those objections were also raised

14   while Mr. Halde, the attorney, was here at the hearing.  And he

15   is fully advised of that.  And this evidence is merely evidence

16   of the physical condition on the ground, and there is no

17   objection by anybody as to the facts arising from that physical

18   condition.

19       MR. VEEDER:  I just wanted the record clear on that, your

20   Honor.

21       THE MASTER:  This Exhibit MR-37D-1 may be marked as in

22   evidence now.

23       MR. VEEDER:  May we proceed with the other matters in the

24   Temecula area?

25       THE MASTER:  Yes.  That concludes any evidence which you

1   may have with reference to the Halde property then?

2       MR. VEEDER:  That is correct, your Honor, I have nothing

3   further.  I have an exhibit here to be marked for identification.

4   It appears to me that the next exhibit here would be MT-6, is

5   that correct, your Honor?  MT-7.

6       THE MASTER:  MT-7, yes.

7

8                          DIRECT EXAMINATION

9

10  BY MR. VEEDER:

11      Q  Col. Bowen, I hand you identification marked MT-7, and

12  ask you to state into the record what is contained in that

13  identification?

14      A  This is an engineering report on the property of Theda

15  and Fletcher Hayward.

16      Q  And under whose direction was that prepared?

17      A  Prepared under my direction and supervision.

18      Q  And would you generally locate that engineering report

19  and the lands to which it pertains on MT-5, if you please?

20      A  The property reported on in MT-7 for identification

21  is comprised of parcels 98 and 86, which are shown by those

22  numbers in circles, the 98 being within the outer perimeter of

23  the property, the 86 with a line indicating a small property.

24  These delineations are made on Plaintiff's Exhibit MT-5.

25      Q  Colonel, is 86 reflective on your soil survey aerial

1    photograph?

2         A   Yes, sir.  86 is bounded by the red line which appears

3    on the first aerial photo reproduction included within the

4    report.

5         Q   And is the other parcel similarly identified in this

6    engineering report?

7         A   No.  98 is described, beginning on page 1 of the report.

8    And it is shown on both of the aerial photographs included

9    within the report, bounded by a red line.  However, it was

10   called to my attention this morning that we have included

11   within parcel 98 as outlined in MT-7 for identification a

12   small piece of land, approximately 75 feet wide, from east to

13   west, and approximately 250 feet long from north to south,

14   which is situated along the east -- or, west property line in

15   the northwest quarter of the southwest quarter, Section 26,

16   Township 8 South, Range 1 East, San Bernardino Base Line and

17   Meridian.  On this copy of MT-5 which is on the board, the

18   approximate position of that exception has been penciled in

19   within the outer limits of parcel 98.

20        Q   Now, Col. Bowen, is that engineering report correct to

21   your own personal knowledge?

22        A   Yes, sir, with the exception which I have just described.

23        MR. VEEDER:  We offer in evidence --

24        MR. STAHLMAN:  May I ask a question, Mr. Veeder?  I have

25   no objection to your offering it in evidence, but for my own

1    information.

2         MR. VEEDER:  I will complete the sentence.  We offer in

3    evidence MT-7.

4         THE MASTER:  If there is no objection, MT-7 will be

5    received in evidence.

6         Now, Mr. Stahlman.

7         MR. STAHLMAN:  The aerial photographs, are they of a

8    recent flight?

9         THE WITNESS: These are reproductions, Mr. Stahlman, of the

10   1955 flight.

11        MR. STAHLMAN:  That is all I have.

12        MR. VEEDER:  Any further questions, your Honor?

13        THE MASTER:  Mr. Veeder, has a copy of this report been

14   given to Mr. Hayward?

15        MR. VEEDER: Yes, it has, your Honor.

16        THE MASTER:  Mr. Hayward, do you have any questions

17   concerning this report, or any objections to the statements

18   contained therein?

19        MR. HAYWARD:  No, sir, I am well pleased with the report.

20   In fact, it has done better by us than my reply to the summons.

21   And whatever the Court pleases or thinks is just, we are well

22   satisfied.

23        THE MASTER:  Thank you.  Do you wish that to be sworn

24   testimony, Mr. Veeder?

25        MR. VEEDER:  I will take that kind of testimony any way it

1   comes, your Honor.

2        MR. STAHLMAN:  The customer is always right.

3        THE MASTER:  Then there are no questions you wish to ask

4   Col. Bowen?

5        MR. HAYWARD:  No.  It is a very complete report, and it

6   shows that the Marine Corps knows what they are talking about.

7        THE MASTER:  Thank you.

8   BY MR. VEEDER:

9        Q  Col. Bowen, I hand you identification MT-8, and ask you

10   to state into the record what is comprised in that identification.

11       A  Plaintiff's Exhibit MT-8 for Identification is a copy

12   of an engineering report made on the property of Lester W.

13   Hagman.

14       Q  And under whose direction was that engineering report

15   prepared?

16       A  Under my direction.

17       Q  Now, will you locate that identification MT-8 on Exhibit

18   MT-5, please, and state into the record the location of it?

19       A  The property reported on in Plaintiff's Exhibit MT-8

20   for Identification is delineated on Plaintiff's Exhibit MT-5

21   with the parcel No. 61 encircled and contained within the outer

22   perimeter of that parcel.

23       Q  Now, are the contents of that engineering report MT-8

24   correct to your personal knowledge, Col. Bowen?

25       A  Yes, sir.

No.?

1       MR. VEEDER:   We offer in evidence engineering report marked

2   MT-8 for Identification.

3       THE MASTER: That will be received in evidence as Plaintiff's

4   Exhibit MT-8.

5       Do you intend to ask Col. Bowen any questions about the

6   report?

7       MR. VEEDER:   I have no questions, your Honor.

8       THE MASTER:  Mr. Hagman, have you had a copy of this

9   report?

10      MR. HAGMAN:   I have received a copy of the report and, as

11  far as I know, it is correct.

12      THE MASTER:  Do you have any questions you wish to ask

13  Col. Bowen?

14      MR. HAGMAN:   Just a silly one.  How does he know that there

15  is a reservoir of water under my place?

16      THE MASTER:  Col. Bowen, what is your answer?

17      THE WITNESS:  This property that is owned by Mr. Hagman is

18  situated over the older alluvium, which has been called Temecula

19  arkose.  It is water-borne sedimentary material which is

20  generally water bearing.  And for that reason on page 1 of

21  Plaintiff's Exhibit MT-8 the statement is included that ground

22  water storage is present underlying the property.  We don't

23  say that ground water is there, Mr. Hagman, but simply that

24  the geologic formation has the capacity to store water if there

25  is water running in there, or in contact with it.

1        THE MASTER:   Do you have any further questions, Mr. Hagman?

2        MR. HAGMAN:   No, sir.

3        THE MASTER:   Mr. Veeder?

4        MR. VEEDER:   I have none, your Honor.

5        Q   I hand you, Col. Bowen, identification MT-9 and ask you

6    what is comprised in that identification.

7        A   Plaintiff's Exhibit MT-9 is an engineering report on

8    the property of Gustav A. Spaniol.

9        Q   Now, Colonel, would you locate MT-9 on the map MT-5?

10       A   Yes, sir.  The Spaniol property is numbered parcel 52,

11   with 52 encircled contained within the outer limits of the

12   property as shown on Plaintiff's Exhibit MT-5.

13       Q   Now, is the content of that engineering report correct

14   to your personal knowledge?

15       A   Yes, sir.

16       MR. VEEDER:   We offer in evidence the identification marked

17   MT-9.

18       THE MASTER:   That will be received in evidence as Plaintiff's

19   Exhibit MT-9.

20       Mr. Spaniol, do you have any questions of Col. Bowen con-

21   cerning that report?

22       Have you received a copy of it?

23       MR. SPANIOL:   Well, the only one I have got to say is they

24   missed one of my water wells, but there ain't no water in it.

25   Other than that, it is O. K.

1      THE MASTER:  Do you wish to ask Col. Bowen any questions

2  about the report?

3      MR. SPANIOL:  No, sir, everything has already been settled.

4      THE MASTER:  Col. Bowen, what about the well that was

5  missed that doesn't have any water in it?

6      MR. SPANIOL:  It is on the opposite side of the road, it

7  is on the south side of the road. I used to own land on the

8  south side of the road, and I traded it for land on the north

9  side and kept that well on the south side.

10     THE MASTER:  As I understand it, that well is not on the

11  parcel which is described --

12     MR. SPANIOL:  No, it is on the opposite side of the highway,

13  on the south side of the highway.

14     THE MASTER:  Then it is not located on the parcel shown in

15  Exhibit MT-9?

16     MR. SPANIOL:  No, sir, but I kept the well through the

17  deed.  It was stipulated in there that I would retain ownership.

18     THE MASTER:  In other words, you have certain rights, the

19  exact nature of which, of course, I cannot now determine, to

20  take water from a well on the other side of the road by

21  reason of a deed to that property which you gave some time ago.

22  Is that correct?

23     MR. SPANIOL:  Yes. I deeded it to Doc Conover when he was

24  living, but there is no water in it, anyway.

25     THE MASTER:  I think that sufficiently clears up the record.

BY MR. VEEDER:

Q Col. Bowen, I hand to you identification marked MT-10, and ask you to state into the record the content of that identification.

A MT-10 for Identification is an engineering report on the property of John H. Richie.

Q Now, under whose direction was that engineering report prepared?

A It was made under my direction.

Q Now, would you locate that property on MT-5?

A The Richie property described in Plaintiff's Exhibit MT-10 for Identification is delineated on Plaintiff's Exhibit MT-5 as parcel No. 36, with the number 36 encircled contained within the outer perimeter of the property as delineated on MT-5.

Q Will you state into the record whether based upon your personal knowledge the date contained in that exhibit is correct?

A It is.

MR. VEEDER: We offer in evidence the identification marked MT-10.

THE MASTER: That will be received in evidence as Plaintiff's Exhibit MT-10.

Now, has a copy of that been sent to Mr. Richie?

THE WITNESS: Yes, sir.

THE MASTER: Mr. Richie is not here, is he?

1    BY MR. VEEDER:

2        Q  Did you state that a copy had been sent to him?

3        A  Yes, sir, a copy has been sent to Mr. Richie.

4        Q  And have there been any complaints received from him or

5    any objections to it, Col. Bowen?

6        A  No, sir, I have received no complaints or objections.

7        Q  Or any comment?

8        A  You are correct, Mr. Veeder.

9        MR. VEEDER:  Your Honor, at this juncture it concludes the

10   evidence which we have to offer in connection with the area now

11   under consideration, that is the Temecula area above Vail Dam.

12       THE MASTER:  That is you have had no other requests for

13   engineering reports in that area, or you haven't completed the

14   reports on the requests that you have had?

15       MR. VEEDER:  We have, and I want Col. Bowen to correct me if

16   I am in error, we have concluded everything that would appear

17   before your Honor, the special master.  There are other reports

18   which will come before Judge Carter.

19       MR. SACHSE:  Before you switch, I would like to clarify the

20   record on three of my people in this area.

21       MR. VEEDER:  Go ahead.

22

23

24

25

CROSS EXAMINATION

BY MR. SACHSE:

Q  Col. Bowen, if you will approach the exhibit, and way up at the upper corner slopping over out of the watershed you will find No. 178, parcel 178 -- 179, I read it wrong. Do you see the one to which I refer?

A  Yes, sir, I do.

Q  Would you be prepared at this time, or do you have any findings of any kind on the character of ground water or surface waters on this parcel?

A  Yes, sir. I have with me a geologic map of the area which I would like to refer to.

Q  Please do.

THE MASTER:  I take it, Mr. Sachse, you are now going into the matters which you referred to at page 3113 of the previous transcripts?

MR. SACHSE:  No, those matters on the previous transcript were back on Pechanga Creek that I was referring to.

Q  What do you find to be the character of the geologic structure in that area?

A  With reference to parcel 179 as depicted on Plaintiff's Exhibit MT-5, it is my opinion that ground water, if any, is local vagrant percolating, and not a part of the stream system. That property overlies basement complex, it is

1  astride the divide between the upper Temecula Creek watershed

2  and the Coahuilla-Wilson Creek watershed.

3      Q  Now, Col. Bowen, if you would drop down in --

4      MR. VEEDER:  Before we proceed, primarily I would like to

5  get the legal subdivision in the record, if it has not already

6  gone in.

7      MR. SACHSE:  No, it has not gone in.

8      MR. VEEDER:  Would you give us the legal subdivision on that?

9      THE WITNESS:  Yes, sir.  Parcel 179, as depicted on

10  Plaintiff's MT-5, comprises the north half and the southeast

11  quarter of the southeast quarter, Section 9, Township 8 South,

12  Range 2 East, that being approximately a hundred and twenty

13  acres.

14      MR. VEEDER:  Thank you, Colonel.

15      MR. SACHSE:  Colonel --

16      MR. VEEDER:  May I put in one more statement here?  Mr.

17  Sachse and I are at the present time considering the entry of

18  an interlocutory judgment in connection with this property to

19  which reference has just been made, so we are clearing that up

20  now.

21      THE MASTER:  Very well.

22  BY MR. SACHSE:

23      Q  Now, if I could direct your attention to Section 12,

24  9 South, 1 East, parcel 133, it is approximately, I think, the

25  southeast quarter of that section, am I right, 133?

1     A  Yes, sir.

2     Q  That section, as I -- that quarter section, as I observe

3  it, does overlie a portion of the alluvium of Temecula Creek.

4  Is that correct?

5     A  That is correct, sir.

6     Q  Now, directing your attention immediately to the north,

7  130, that parcel also overlies a portion of the alluvium of

8  Temecula Creek.  Is that correct, sir?

9     A  That is correct, sir.

10     MR. SACHSE:  That is all I have, Mr. Veeder.

11     MR. VEEDER:  I have no questions.  Correct me if I am --

12     MR. SACHSE:  Those last two are not in any interlocutory.

13     MR. VEEDER:  I just wanted to be very sure.

14     At this time, your Honor, unless there is something in

15  addition concerning the area, we would like to go back to the

16  Rainbow area where we have two engineering reports, namely, for

17  Clara E. McDonald and T. C. Frick.

18     MR. STAHLMAN:  I wonder if I might ask a question at this

19  time?  I may forget it.

20     MR. VEEDER:  Go ahead.

21  BY MR. STAHLMAN:

22     Q  Has there been any tabulation on any of these creeks

23  that you have completed, for which tabulation has been made as

24  to what the total water duty is within the area of those particular

25  creeks?

1       A  Not to my knowledge, Mr. Stahlman.  You would be

2  referring specifically to De Luz Creek?

3       MR. STAHLMAN:  Yes, De Luz Creek, we have finished that.

4       THE MASTER:  And Fallbrook Creek.

5       MR. STAHLMAN:  Fallbrook Creek, yes.  And I wondered what

6  the mechanics would be by which we would get that tabulation,

7  when we would get it.

8       MR. VEEDER:  We are at the present moment working on a

9  complete list of all parties who have answered in the areas

10  in the lands involved, and we will make and we are now making

11  a tabulation.  It is in conjuction with work that we are doing

12  for Mr. Sachse and his clients concerning which disclaimers

13  have been made, but it is an overall survey.

14       MR. STAHLMAN:  It will be some time in the future when

15  those things are available?

16       MR. VEEDER:  Yes.  I hope nt too distant.  It is a big job.

17       THE MASTER:  Mr. Veeder, may I ask this question before

18  you get into the Rainbow area.  Do you intend to offer before

19  me this map which Col. Bowen used in connection with his answers

20  to Mr. Sachse's questions, or to offer any evidence as to the

21  geological structure underlying the portion of Temecula River

22  here which we are considering, in addition to the specific

23  statements in the engineering report which has been introduced

24  in evidence?

25       MR. VEEDER:  Your Honor, I will be guided by your thoughts

1   in that regard.  Here is the situation, we have put in the

2   general geology before Judge Carter.  And it occurs to me that

3   you might desire to have us stipulate into the record here that

4   testimony and the exhibits.  Now, this particular map has not

5   as yet been offered before Judge Carter.  Am I right on that?

6       THE WITNESS:  You are right.

7       MR. VEEDER:  We have done some refinement on it, it is

8   not at all in conflict; it is a refinement of what is before the

9   Court.  I think we will ask Judge Carter to have this put in as

10   a supplement to the basic geology that has gone in on Exhibit

11   15.  But what we would -- Could we go off the record for a

12   moment?

13       THE MASTER:  Sure.

14       (Discussion off record.)

15       THE MASTER:  Back on the record then.  You have some matters

16   to present with reference to Rainbow Creek?

17       MR. VEEDER:  Yes, your Honor.  Do you want me to state into

18   the record here what we have concluded here, that we will proceed

19   to submit to the Special Master a summarization of all exhibits

20   and all testimony that has been introduced before Judge Carter

21   in connection with the geology and other physical features of

22   the areas concerning which testimony has been adduced in the

23   Special Master's hearing.  We will make the page and witness

24   references and submit to you that compilation.  Whether you put

25   that in the record or how it will be handled I think would be

1   up to your judgment.

2       THE MASTER:  But that would be submitted to me prior to the

3   next hearing?

4       MR. VEEDER:  Yes, it will, your Honor.

5       MR. SACHSE:  May I have a question off the record?

6       THE MASTER:  Sure.

7       (Discussion off record.)

8       THE MASTER:  Back on the record.

9       MR. VEEDER:  Your Honor, at this juncture we would like to

10  proceed with some evidence respecting the area which has been

11  designated Rainbow Creek watershed.  We have put on the easel

12  a copy of Exhibit MR-20, which is the ownership map for that

13  area.  We are, however, not using the exhibit entered in the

14  record, because it doesn't happen to be here, but this is a

15  copy of it.

16      THE MASTER:  Well, the copy may be referred to with the

17  same effect as if the original were present.   And if any

18  markings are made on this they may be transferred to the original.

19

20              DIRECT EXAMINATION

21

22  BY MR. VEEDER:

23      Q  Col. Bowen, I hand you identification marked MR-50, and

24  I ask you to state into the record the content of that

25  identification.

1      THE MASTER:  What was the number, Mr. Veeder?

2      MR. VEEDER:  MR-50, that is the next Rainbow exhibit.

3      THE MASTER:  Very well.

4      THE WITNESS: Plaintiff's Exhibit MR-50 for Identification

5  is an engineering report of the property of Clara E. McDonald.

6  BY MR. VEEDER:

7      Q  And under whose direction was that prepared, Col. Bowen?

8      A  It was made under my direction and supervision.

9      Q  Would you kindly locate that on the map marked MR-20?

10     A  May I have a copy of the exhibit tabulation of owners,

11  Commander Redd?

12     MR. VEEDER:  Would you like to go off the record for a

13  moment, Col. Bowen?

14     THE WITNESS:  Yes, sir.

15     MR. VEEDER:  Could we go off the record for a moment, your

16  Honor?

17     THE MASTER: Surely.

18     (Recess.)

19  BY MR. VEEDER:

20     Q  Col. Bowen, I hand to you the identification marked

21  MR-50, and ask you to state into the record the content of

22  that identification.

23     A  I believe I have already stated that this contains an

24  engineering report on the property of Clara E. McDonald.

25     Q  And would you then locate that on the exhibit MR-20?

1      A  The property is located in the Rainbow Creek watershed,

2  Rainbow Creek being tributary to the Santa Margarita River.

3  And it is delineated on Plaintiff's Exhibit MR-20 with the

4  parcel No. 139a encircled contained within the outer limits of

5  that property.  And I have indicated with a black pencil MR-50

6  within that property as designated on MR-20.

7      Q  Now, is the content of that identification correct to your

8  personal knowledge?

9      A  Yes, sir.

10      MR. VEEDER:  We offer in evidence the identification

11  marked MR-50.

12      THE MASTER: This will be received in evidence and so marked.

13      MR. VEEDER:  And the owner is not present.  Isn't that

14  correct, your Honor?

15      THE MASTER:  The owner is not present, that is correct.

16  BY MR. VEEDER:

17      Q  Have you had any report from the owner in regard to your

18  engineering investigation, Colonel?

19      A  None that I recall, sir.

20      Q  I hand to you Plaintiff's Identification MR-51, and ask

21  you to state into the record its content.

22      A  Plaintiff's Exhibit MR-51 for Identification is a copy

23  of an engineering report made on the property of Tempe C. Frick.

24      Q  And under whose direction was that engineering report

25  prepared?

1           A  It was made under my direction and supervision.

2           Q  Would you kindly identify that on MR-20?

3           A  The property reported on in Plaintiff's Exhibit MR-51

4    for Identification is delineated on Plaintiff's Exhibit MR-20

5    with the parcel No. 139b encircled within the outer perimeter

6    of the property as delineated on MR-20.  And with a black

7    pencil I will indicate MR-51 within the property as shown on

8    MR-20.

9           MR. VEEDER:  Your Honor, in that regard, it will be

10   necessary then when we have the exhibit MR-20 to have Col.

11   Bowen enter the MR-51, to the end that that exhibit will be

12   reflective of his testimony and to the state of the record.

13          THE MASTER:  That is correct.  And the same will be true

14   of the notation MR-50.

15          MR. VEEDER:  Do you have those in your office, your Honor?

16          THE MASTER:  Yes.

17          MR. VEEDER:  In other words, we can pick those up and

18   have it done?

19          THE MASTER:  Yes.

20          MR. VEEDER:  We offer in evidence MR-51.

21          THE MASTER:  That will be received and so marked.

22          MR. VEEDER:  Unless there is other evidence someone else

23   has to offer, that will conclude the extent of the material

24   that we have to offer today.

25          THE MASTER:  Now, Mr. Stahlman, do you have any questions

1    to ask concerning any evidence that has been presented today,

2    or any other questions?

3        MR. STAHLMAN:  I don't see anything that reflects directly

4    on this testimony.

5        MR. SACHSE: I have nothing directly in connection with the

6    Rainbow watershed.  But I do have a question or two in connection

7    with the Pechanga, if Col. Bowen has his map.

8        Your Honor will recall that the testimony was given on

9    that area during my absence.

10       MR. VEEDER:  I would like to have the Clerk provide us with

11   the exhibit number.

12       MR. SACHSE:  It is on there, that is the correct number.

13   I have it on the back.  It is Exhibit No. MT-4, is the correct

14   number of the original exhibit.

15       MR. VEEDER:  Well, as I do not have that exhibit, we will

16   proceed on the basis it is Exhibit MT-4, if that is agreeable.

17

18                    CROSS EXAMINATION

19

20   BY MR. SACHSE:

21       Q  Col. Bowen, could I direct your attention first to the

22   parcel shown on MT-4, Section 30, Township 8 South, Range 2

23   West, parcel 12?  According to your Exhibit MT-3, that parcel

24   is owned by Victor J. and Alma E. Paulson.  Would you check to

25   make sure I have that right?

1           A   8 South, 2 West, Section 30, Parcel No. 12, yes, sir.

2           Q   Have you any conclusions as to the character of ground

3   waters on that parcel?

4           A   Yes, sir, I have.

5           Q   What are they, please?

6           A   Parcel No. 12, which might be described as the southeast

7   quarter of the southeast quarter of Section 30, 8 South, 2 West,

8   is underlain entirely by a basement complex material.  The

9   ground water, if present, would be only in cracks and fissures

10  within the basement complex, rocks, and in my opinion is local

11  vagrant percolating in nature, not a part of the stream system.

12          Q   May I direct you, please, to the same Section, to the

13  parcel indicated as parcel 9?  And again I will direct your

14  attention to your ownership exhibit MT-3.  Please check and

15  see if I am right, that it is the Thomas and Victor Paulson

16  parcel?

17          A   Yes, sir.

18          Q   What are your observations as to ground waters in that

19  parcel?

20          A   My observations are the same.  That parcel is also

21  underlain by basement complex material, and any water, if

22  present, would be only in cracks and fissures in the rock.  It

23  would be local vagrant percolating, and not a part of the

24  stream system, in my opinion.

25          MR. VEEDER:  Colonel, when you say not a part of the stream

1    system, you have in mind the Santa Margarita and subsurface

2    basins and subsurface streams?

3           THE WITNESS:  Yes, sir.

4    BY MR. SACHSE:

5           Q  May I direct to your attention parcel 6, and I will

6    point out on the larger scale that slops over into the Rainbow

7    Creek watershed.  It shows as parcel 4 in the Rainbow Creek

8    watershed, I think, or am I mistaken?

9           THE WITNESS:  That is parcel 7.  Parcel No. 7 as shown on

10   Plaintiff's Exhibit MT-4 is the same as parcel 6 as shown on

11   Plaintiff's Exhibit MR-20 --

12          Q  I don't want that one.

13          A  Parcel 6 as shown on MT-4 is the same as parcel 84 as

14   shown on MR-20.

15          Q  Now, may I direct your attention to your exhibit MT-3

16   which identifies parcel 6, 8 South, Range 2 West.  Please check

17   it and see if I have the right one, and see if it is owned by

18   Victor and Thomas and Alma Paulson?

19          A  Yes, sir.

20          Q  What are your observations of the ground waters under-

21   lying that parcel?

22          A  That parcel No. 6, as delineated on Plaintiff's Exhibit

23   MT-4, lying mostly within the Pechanga Creek watershed is underlain

24   by basement complex.  And water, if any, in my opinion is local

25   vagrant percolating, not a part of the Santa Margarita River

1     stream system.

2          Q  Now, Colonel, may I direct your attention to Exhibit

3     MT-4, parcel No. 4 -- same section, parcel No. 4?  And would

4     you check your MT-3 -- beg your pardon, parcel No. 5.  Would

5     you check on MT-3 and see if it is correct that it is owned

6     by Mildred Stiles Gagnon?

7          A  That is correct, sir.

8          Q  What are your observations on that, Colonel?

9          A  Parcel No. 5, as delineated on Plaintiff's Exhibit

10    MT-4, overlies a basement complex material.  And any underground

11    water is, in my opinion, moving through cracks and fissures in

12    that rock, and is local vagrant percolating in nature, and not

13    a part of the Santa Margarita River stream system.

14          MR. SACHSE:  For the record, and so there is no possible

15    misunderstanding, your Honor, I think I should state that this

16    particular defendant, however, also owns lands in the Township

17    of Murietta, overlying alluvium.  I want to be very careful

18    in drafting our findings that you do not refer solely to the

19    defendant without referring to the lands involved.

20          MR. VEEDER:  When you say Township of Murietta --

21          MR. SACHSE:  I mean town site of Murietta.

22          Q  Now, I will direct your attention to parcel 4, same

23    section, as shown on MT-4.  And againas to Exhibit 3, is that

24    parcel owned by Paulson Manufacturing Corporation?

25          A  Yes, sir.

1    Q. What are your observations on that parcel?

2    A. Parcel No. 4, as indicated on Exhibit No. 4, overlies

3 basement complex. And water, if any, that might be found

4 underground is in my opinion local vagrant percolating in

5 nature, and is not a part of the Santa Margarita stream system.

6    MR. SACHSE: I have nothing further in the Pechanga

7 watershed, your Honor. That disposes of all clients in whom I

8 am interested in that area.

9    THE MASTER: Do you have any questions on any of the other

10 matters taken up this morning?

11    MR. SACHSE: On none of the others, your Honor.

12    MR. VEEDER: That would conclude it as far as the United

13 States is concerned, your Honor.

14    THE MASTER: The hearing will be adjourned until Monday,

15 January 11, 1960, at 9:30, at which time further testimony

16 will be received with reference to areas heretofore considered,

17 and also possibly additional areas to the east and north.

18

19

20

21

22

23

24

25