IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

BEFORE HON. JOHN M. CRANSTON, SPECIAL MASTER

UNITED STATES OF AMERICA,

        Plaintiff,

  vs.

FALLBROOK PUBLIC UTILITY DISTRICT, et al.,

        Defendants.

No. 1247-SD-C

FILED

SEP 24 1963

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

REPORTER'S TRANSCRIPT

Volume: 35

Pages: 3188-3205

Date: April 25, 1960

Place: Fallbrook, California

RANDOL, FIVECOAT & STEWART
CERTIFIED SHORTHAND REPORTERS
1113 FIRST NATIONAL BUILDING
SAN DIEGO 1, CALIFORNIA
BELMONT 9-4191

## INDEX TO WITNESSES

|  | D | X |
|---|---|---|
| Allen C. Bowen | 3190<br>3195 | 3191 |

## INDEX TO EXHIBITS

|  |  | Iden. | Evid. |
|---|---|---|---|
| MW-3 | Engineering Report |  | 3191 |
| MW-4 | Engineering Report |  | 3197 |
| MW-5 | Engineering Report |  | 3198 |
| MW-6 | Engineering Report |  | 3199 |
| MW-7 | Engineering Report |  | 3200 |

1  APPEARANCES:

2     WILLIAM H. VEEDER, ESQ., and
      LCDR DONALD W. REDD, U. S. N.,
3       For United States of America.

4     FRANZ R. SACHSE, ESQ.,
        For Fallbrook Public Utility District
5       and individually named defendants.

6     GEORGE STAHLMAN, ESQ.,
        For the Vail Company.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Fallbrook, California, Monday, April 25, 9:45 A. M.

THE MASTER: Maybe for the record we should still have counsel state their appearances, as we have in the past.

MR. VEEDER: William H. Veeder for the United States of America.

LCDR REDD: Lieutenant Commander Redd for the United States of America.

MR. SACHSE: Franz R. Sachse for Fallbrook Public Utility District and certain named defendants. I am going to cover three. Do you want me to name the three?

THE MASTER: You might name the three.

MR. SACHSE: Paul A. Hernley, Harry and Naomi Kohn, and Harry and Alice Bergman.

MR. STAHLMAN: George Stahlman for the Vail Company.

THE MASTER: And there are no other defendants present in person.

ALLEN C. BOWEN,
recalled as a witness, having been previously sworn, testified as follows:

DIRECT EXAMINATION

BY MR. VEEDER:

Q Col. Bowen, I refer you to MW-3 marked for identification

1  and ask you to read into the record the title block of that map.

2  A  MW-3 for Identification is entitled "Wilson Creek

3  Watershed Geology, Office of Ground Water Resources, Marine

4  Corps Base, Camp Pendleton, California."

5  Q  And under whose direction was that map prepared?

6  A  Under my direction.

7  Q  Is it accurate to your own personal knowledge, Colonel?

8  A  Yes, sir.

9  MR. VEEDER:  We offer in evidence MW-3.

10  THE MASTER:  That will be received in evidence as Plaintiff's

11  Exhibit MW-3.

12  (Map, previously marked Exhibit MW-3 for Identification,

13  received in evidence as Exhibit MW-3.)

14  MR. VEEDER:  Would you want to interrogate?

15  MR. SACHSE:  I will go right ahead, if you want.  What is

16  the number of the ownership map?  2.

17

18  CROSS EXAMINATION

19

20  BY MR. SACHSE:

21  Q  Directing your attention to MW-2, would you locate

22  Parcel 102, the lands of Harry Kohn?

23  A  Yes, sir.  Referring to Plaintiff's Exhibit MW-2,

24  Parcel 102 is shown lying partly in Section 4 and partly in

25  Section 5, Township 8 South, 1 East.

1   Q  Now, can you locate this same parcel, or approximately
2   locate it, on MW-3?
3   A  Yes, sir.  On MW-3 it is in that portion of the Section
4   4 previously described and includes the symbol QYAL as inscribed
5   within Section 4, 8 South, 1 East on MW-3.
6   Q  Now, your MW-3 uses the same geological symbols we have
7   had earlier, that is, the orange the older alluvium, the
8   yellow the younger alluvium, and the blue the basement complex;
9   is that right?
10  A  Yes, sir.
11  Q  And the Kohn properties, according to your knowledge,
12  are located in areas of older alluvium; is that correct?
13  A  Primarily older alluvium and secondarily basement
14  complex.
15  Q  Have you an opinion as to the character of ground
16  waters under those properties?
17  A  Yes, sir.
18  Q  What is that, please?
19  A  Very limited in that particular body of older alluvium.
20  It is very shallow, as indicated by the outcroppings of the
21  basement complex further east in Section 4, 8 South, 1 East as
22  shown on Plaintiff's Exhibit MW-3.
23  Q  Just to refresh my recollection, isn't that the area
24  when we took a drive through the country that you or someone
25  referred to as badlands, that were cut up pretty bad?

1   A   Yes, this is our coast material, and is eroded into
2   a typical badlands topography.
3   Q   Now, will you please locate Parcels 145 and 179, Paul
4   Hernley?
5   A   Will you repeat those parcel numbers again, Mr. Sachse?
6   Q   Pardon me. 145. Wait a minute. 145 on Wilson Creek.
7   It is 179 on the other exhibit. 145.
8   A   Yes, the Parcel No. 145 is delineated on Plaintiff's
9   Exhibit MW-2 and appears in Section 9, 8 South, 2 East.
10   MR. SACHSE:  May I state for the record, your Honor, that
11   parcel, as you will observe, overlaps the watershed line, and
12   on the exhibit for the upper Temecula Creek was Parcel 179.
13   And we had some previous testimony on this particular parcel
14   at the time of the Temecula Creek.
15   THE MASTER:  I recall that generally.
16   BY MR. SACHSE:
17   Q   Now, will you locate it in general on the geological
18   exhibit, MW-3, Col. Bowen?
19   A   Yes, sir.  Referring to Plaintiff's Exhibit MW-3, it is
20   shown as overlying basement complex.
21   Q   Do you have an opinion as to the character of ground
22   waters, if any, in that area?
23   A   Yes, sir.
24   Q   What is that opinion?
25   A   Ground water, if any, is found only in cracks and

1 fissures in the crystalline rock and is, in my opinion, local,
2 vagrant, percolating water.
3    Q  Now, Parcel 96, Harry Bergman, please.
4    A  Parcel 96 is delineated on Plaintiff's Exhibit MW-2 and
5 occupies most of Section 1, Township 8 South, Range 1 East.
6    Q  And Parcel 96 lies across or abuts on Coahuila Creek,
7 doesn't it?
8    A  Yes, Coahuila Creek flows through the northwest corner
9 of Parcel 96, as indicated on MW-2.
10    Q  Now, can you locate that same general area on MW-3?
11    A  Yes, Section 1, 8 South, 1 East is depicted on MW-3.
12 The entire Section is shown as overlying basement complex.
13    Q  And that portion of the Bergman lands through which
14 Coahuila Creek flows, is that also basement complex?
15    A  Yes, sir.
16    Q  What is your opinion as to the ground waters underlying
17 those lands?
18    A  Again, if there are any waters underlying those lands
19 they are found in the cracks and fissures in the crystalline
20 rock, and in my opinion are local, vagrant, percolating, not a
21 part of the Santa Margarita stream system.
22    MR. SACHSE:  I have no further questions.  Wait a minute,
23 there was one more.  I beg your pardon.  There is that small
24 Bergman town lot, No. 312, which is in one of your inserts.
25    THE WITNESS:  312 appears delineated on Plaintiff's Exhibit

MW-2. It lies in the southwest quarter of Section 16, Township 7 South, Range 3 East on MW-2. That particular quarter section refers to Marginal Map B, which appears in the upper left-hand corner of MW-2.

BY MR. SACHSE:

Q Now, that area --

A Parcel 312, Mr. Sachse, is delineated on Marginal Map B and is in the lower right-hand corner.

Q Now, this area overlies the younger alluvium of Coahuila Valley or Terwilliger Valley, doesn't it?

A Yes, sir. This is shown on MW-3.

Q And I presume your testimony is the ground water in that area is a part of the stream system of Coahuila Creek.

A That is correct.

MR. SACHSE: I have no further questions.

FURTHER DIRECT EXAMINATION

BY MR. VEEDER:

Q Col. Bowen, I hand to you exhibit marked MW-4 for Identification, and I ask you to state into the record what is the content of that Identification.

A MW-4 for Identification is a report, engineering report prepared on the property of William R. Bradford.

Q Under whose direction was that prepared?

1   A   That was prepared under my direction.

2   Q   And would you locate for the court MW-4 on MW-2 for the
3   purposes of further identifying the properties?

4   A   The William R. Bradford property, described in MW-4
5   for Identification, is comprised in part of the southeast
6   quarter of the northwest quarter and the north half of the
7   southeast quarter and the southeast quarter of the southeast
8   quarter of Section 8, Township 8 South, Range 2 East. That is
9   delineated on Plaintiff's Exhibit MW-2 with No. 143 encircled,
10  contained within the outer perimeter of the property. And
11  Parcel 143 extends, as shown on MW-2, into Section 9, 8 South,
12  2 East. It extends into Sections 15 and 16, 8 South, 2 East,
13  all identified by the Parcel No. 143.

14      MR. VEEDER:  May we go off record for just a moment?

15      (Discussion off record.)

16      MR. VEEDER:  May we go on the record.

17  BY MR. VEEDER:

18  Q   Col. Bowen, would you locate the properties covered by
19  MW-4 as related to the watershed line of the area in question?

20  A   Yes, sir. The portion of Parcel 143 which appears in
21  Sections 15 and 16, 8 South, 2 East, lie largely in the Temecula
22  Creek Watershed. The divide between Wilson Creek and Temecula
23  Creek cuts through the extreme northeast corner of that portion
24  of Parcel 143 which appears in Section 16, 8 South, 2 East.

25      MR. VEEDER:  We offer in evidence MW-4.

1    THE MASTER: That will be received as Exhibit MW-4.
2    (Engineering Report, previously marked Exhibit MW-4 for
3    Identification, received in evidence as MW-4.)
4  BY MR. VEEDER:
5    Q Col. Bowen, I hand you the report marked MW-5 for
6  Identification, and ask you to state into the record what is
7  the content of that Identification.
8    A MW-5 for Identification is a copy of an engineering
9  report prepared on the property of Ione Bradford.
10   Q And under whose direction was that prepared?
11   A Under my direction.
12   Q And would you locate that property on MW-2 for the
13 purpose of further identifying it?
14   A Yes, sir. This property, which is reported on in MW-5,
15 is in the vicinity of the property reported on in MW-4, and
16 appears on Plaintiff's Exhibit MW-2 as Parcel No. 141. Parcel
17 141 is described on page 68 in Plaintiff's Exhibit MW-1.
18 Similarly, Parcel No. 143, reported in Plaintiff's Exhibit
19 MW-4, is described on page 69 of Plaintiff's Exhibit MW-1.
20 Parcel No. 141 is delineated on Plaintiff's Exhibit MW-2 and
21 appears in part in Sections 7, 8, 15, 17 and 18, all in
22 Township 8 South, Range 2 East.
23   Q Colonel, is Exhibit MW-4, which has already been marked,
24 and MW-5, which we are now offering, correct to your personal
25 knowledge?

1    A  Yes, sir.

2    MR. VEEDER: We offer in evidence MW-5 for Identification.

3    THE MASTER: That will be received in evidence as MW-5.

4    (Engineering report, previously marked Plaintiff's Exhibit for Identification,
5    MW-5/ received in evidence as Plaintiff's Exhibit MW-5.)

6  BY MR. VEEDER:

7    Q  Col. Bowen, I hand to you the exhibit marked for

8  Identification MW-6, the engineering report of the property

9  of Edward M. and Barbara Jane McClain, and ask you under whose

10 direction that Identification was prepared?

11   A  Prepared under my direction.

12   Q  Is it correct to your personal knowledge?

13   A  Yes, sir.

14   Q  And would you identify that property by reference both

15 to MW-1 and to MW-2?

16   A  MW-6 for Identification is the McClain property

17 which is described on page 69 of Plaintiff's Exhibit MW-1, and

18 is assigned Parcel No. 142. It appears on MW-2 in Section 8,

19 Township 8 South, 2 East. And the Parcel No. 142, encircled,

20 is within the outer perimeter of the 40 acres reported on in

21 MW-6. That 40 acres is traversed by the crest of the divide

22 between Wilson Creek and Temecula Creek.

23   Q  As disclosed on MW-2?

24   A  As disclosed on MW-2, yes, sir.

25   Q  And is this report correct to your personal knowledge,

1 Col. Bowen?

2     A   Yes, sir.

3     MR. VEEDER: We offer MW-6 in evidence.

4     THE MASTER: That will be received in evidence as Exhibit

5 MW-6.

6     (Engineering report, previously marked Plaintiff's Exhibit

7 No. 6 for Identification, received in evidence as Plaintiff's

8 Exhibit No. 6.)

9 BY THE MASTER:

10    Q   Col. Bowen, going back to this Exhibit MW-5 in Parcel

11 141, as near as I can see on MW-2 there are two separate

12 parcels marked 141.

13    A   Yes, sir. They are all a part of the property reported

14 on in MW-5.

15    Q   But they are not contiguous with each other. That is

16 correct, isn't it?

17    A   That is correct, sir, as shown on MW-2.

18    Q   I just wanted to be certain that my interpretation of

19 the map was correct.

20    A   Yes, sir.

21 BY MR. VEEDER:

22    Q   Col. Bowen, I hand to you engineering report marked

23 for identification MW-7 for C. S. Contreras, and ask you under

24 whose direction that report was prepared.

25    A   Prepared under my direction.

1  Q  Is it correct to your personal knowledge?

2  A  Yes, sir.

3  Q  Would you identify that property both in MW-1 and MW-2,
4  please?

5  A  Yes, sir.

6  THE WITNESS:  You have an alphabetical list here,
7  Commander Redd.

8  LCDR REDD:  Yes, sir.

9  A  Yes, sir.  The property reported on in MW-7 for
10  Identification is shown on page 170 of Plaintiff's Exhibit MW-1
11  at the bottom of the page.  It shows the owners -- apparent
12  owners as Minor, Minor, Security First National Bank, Contreras
13  and Contreras.  That property is delineated on MW-2, shown
14  with the Parcel No. 361 encircled, contained within the outer
15  limits of the property, and adjoins the Coahuila Indian
16  Reservation, as shown on MW-2.  The southerly boundary of
17  Parcel 361 is adjacent to the Coahuila Reservation.

18  Q  Is that report correct to your personal knowledge,
19  Colonel Bowen?

20  A  Yes, sir.

21  MR. VEEDER:  We offer in evidence MW-7.

22  THE MASTER:  That will be received in evidence as MW-7.

23  (Engineering report, previously marked Plaintiff's Exhibit
24  MW-7 for Identification, received in evidence as Plaintiff's
25  Exhibit MW-7.)

    MR. VEEDER: That is the extent of the material we have, your Honor, for today.

    THE MASTER: I would like to ask Col. Bowen a few questions.

BY THE MASTER:

    Q  On this last exhibit, Col. Bowen, on Parcel 361, is it true that is shown on Exhibit MW-3 as lying in the area which is colored yellow near the symbol QUAL?

    A  That is QYAL, your Honor.

    Q  QYAL.

    A  That is correct, indicating younger alluvium. Your Honor's observation is correct. Parcel 361 does overlie younger alluvium, as shown by the Plaintiff's Exhibit MW-3.

    Q  The report MW-7, does that state the nature of any water underlying the property covered by the report?

    A  No, sir. It states that it is overlying recent alluvium, but it makes no observation as to the nature of the water under the property, your Honor.

BY MR. VEEDER:

    Q  Would you state into the record, Colonel, what that area generally is known as in which these properties are situated?

    A  That area is sometimes called the Anza Valley, sometimes the Coahuila Valley.

    Q  Sometimes Terwilliger Valley, is it not?

    A  Well, Terwilliger Valley is that portion which is

1  southerly of Section 21, extending on into the Coyote Creek
2  watershed, which drains down through Borrego into the Salton
3  Sink.
4      MR. VEEDER: I have no further questions, sir.
5  BY THE MASTER:
6      Q What would be the nature of the water underlying this
7  Parcel 361, then?
8      A In my opinion, your Honor, it is part of the ground
9  water body there contained in the recent alluvium, and hence
10 is part of the stream system.
11     Q Now, would that be true of any ground water underlying
12 any portion of the territory which is colored yellow, the same
13 color on Exhibit MW-3?
14     A Yes, sir.
15     Q And with the observation that you have made with
16 reference to the water underlying basement complex land in
17 connection with Parcel 145 and also Parcel 96 of Paul Hernley,
18 would that observation be true of the remaining land which is
19 colored blue on MW-3?
20     A Yes, sir.
21     Q Now, the land which is colored orange on MW-3, what is
22 the nature of that land?
23     A That is the older alluvium, comprised of arkosic sands,
24 silt and gravels.
25     Q What would be the nature of any water underlying the

1  land that is so colored on Exhibit MW-3?

2     A That varies, your Honor. It varies in thickness. As

3  indicated here in Sections 3 and 4, 8 South, 1 East, which

4  contains in part Parcel No. 102, according to which I have

5  previously testified, the thickness of the older alluvium there

6  is indicated as not great, because of the outcroppings of

7  basement complex as shown on MW-3. Also that material is

8  water bearing, the older alluvium, but its relationship to the

9  faults which traverse this area also have some bearing. So it

10 is impossible to make just a general observation as to the

11 probability of water underlying them. I can only say that

12 they are of a water bearing nature.

13    Q But you cannot make any generalization with reference

14 to that type of land as you could with reference to the other

15 two types; is that correct?

16    A That is correct, your Honor. Of course, even on the

17 younger alluvium its thickness is variable, and that depends

18 on -- I mean that would determine its importance as a water

19 bearing formation.

20    Q Well, yes. In otherwords, on all the yellow area you

21 could not say that the probability of obtaining water in one

22 portion was anywhere near equal to obtaining water in another

23 portion.

24    A That is correct, your Honor.

25    Q But if water was obtained in each case, it would have

1  come out of some portion of the stream system; is that correct?

2      A  Well, there again it is difficult to generalize on it,

3  because one may well pierce the younger alluvium and obtain

4  the water from an underlying formation.

5      Q  Would that not be true of any formation of the area

6  colored yellow on the map?

7      A  Any probability of water underlying the formation

8  below the recent alluvium, your Honor?

9      Q  Yes, sir.

10     A  I believe that determination is something which would

11 have to be made on the facts existing for each particular

12 location, your Honor. It can't be stated from the evidence we

13 have on MW-3 that that would be true of any particular area.

14     MR. VEEDER: In that regard, your Honor, a well canvass

15 is going on right now at the direction of Judge Carter. So I

16 think that some of the more specific matters may be in keeping

17 with what Col. Bowen said, to be borne out by that

18 investigation.

19     THE MASTER: Very well, I was trying to ascertain to what

20 extent generalizations can be made, not, of course, to try to

21 make a generalization where it can't be.

22     Mr. Sachse, do you have any question?

23     MR. SACHSE: Nothing further, your Honor.

24     THE MASTER: Off the record.

25     (Discussion off record.)

1   THE MASTER: Back on the record. Then at this time the
2   hearing will be adjourned until Wednesday, May 25, at 9:30, at
3   which time further evidence will be offered with reference to
4   the Wilson Creek property.