FILED **LODGED**

MAR 25 1966

CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

APR -6 1966

CLERK, U.S. DISTRICT COURT By
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

DEPUTY

ENTERED

APR -6 1966

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
              Plaintiff,       )
                               )
      v.                       )      No. 1247-SD-C
                               )
FALLBROOK PUBLIC UTILITY DISTRICT, )      MODIFIED
a public service corporation of )      FINAL JUDGMENT
the State of California, et al., )      AND DECREE
                               )
              Defendants.       )

The above-entitled cause came on regularly for trial be-
fore the Honorable James M. Carter, United States District
Judge, following remand from the United States Circuit Court
of Appeals for the Ninth Circuit, which directed that this
Court ". . . enter no judgment until the entire suit can be
disposed of at the same date."

Because of the complexities of this litigation and the
fact that the physical water resources were located through-
out the watershed, this Court determined that the said mandate
could best be complied with by adjudicating the rights of the
parties to the cause in segments of the watershed involving
limited areas and numbers of defendants and by entering
interlocutory judgments as the trial concerning each such
segment was concluded. Proceeding in this manner, this

1     Court has entered interlocutory judgments as the trial pro-

2     gressed, each of which concerns a specified area within the

3     Santa Margarita River watershed, or a limited legal issue

4     presented by the parties.  These interlocutory judgments

5     expressly provided that they were not final and not operative

6     until made a part of the final judgment.  This Court having

7     entered orders or interlocutory judgments on all areas within

8     the watershed and all issues presented for decision, and the

9     rights to the use of the waters of the Santa Margarita River

10    stream system having been adjudicated in those interlocutory

11    judgments, this Court therefore entered its final judgment

12    and decree on May 8, 1963, whereby the said Interlocutory

13    Judgments or Orders were listed, and the same, together with

14    the Findings of Fact and Conclusions of Law attached thereto,

15    were adopted as the final Findings of Fact, Conclusions of

16    Law, and Judgment and Decree of the Court.  Appeal from said

17    Final Judgment and Decree was taken to the United States

18    Court of Appeals.  The Court of Appeals, by its decision

19    dated May 26, 1965, reversed the judgment of this Court as to

20    the rights of the United States against Vail Company, and re-

21    manded the cause "with instructions that the final judgment

22    be appropriately modified to the end that the 1940 state

23    court decree is reinstated, subject to the rights of Vail

24    to seek relief from that judgment in accordance with the

25    views hereinbefore expressed."  In all other respects, the

26    final judgment and decree was affirmed.  By its order dated

27    October 4, 1965, the Court of Appeals denied the United

28    States petition for rehearing and clarification.

29        The cause is now before the Court pursuant to the mandate

30                      - 2 -

1   of the Court of Appeals for appropriate modification of the

2   Final Judgment consistent with that Court's opinion, and pur-

3   suant to Notice of Hearing for such purpose duly served upon

4   all parties to the cause except those heretofore determined

5   to have no interest in the required modification.  Upon con-

6   sideration of the mandate and opinion of the Court of Appeals

7   and the Final Judgment heretofore entered herein, the Court

8   hereby makes and enters the following Findings of Fact,

9   Conclusions of Law, and Modified Final Judgment and Decree:

10                      FINDINGS OF FACT

11                             I

12       On or about May 5, 1930, the Superior Court of the State

13   of California in and for the County of San Diego entered

14   findings of fact, conclusions of law and judgment in Case

15   No. 42850 in the records of said Court.  The parties to said

16   action were the Rancho Santa Margarita, Vail Company and

17   various individuals interested in that Company, the Executors

18   of the Will of Murray Schloss, deceased, and Philip Playtor.

19   The Rancho Santa Margarita, the Executors of the Will of

20   Murray Schloss, deceased, and Philip Playtor did not appeal

21   from said judgment.  Vail Company did appeal from certain

22   portions only of it.  Thereafter and on or about July 12,

23   1938, the Supreme Court of the State of California reversed

24   certain portions of the judgment.  Said Supreme Court remanded

25   the case with directions that the new trial be limited to

26   those matters specifically disapproved and affirmed the trial

27   court's judgment as to all other matters.  Said decision of

28   the Supreme Court is recorded in 11 Cal.2d 501.  Thereafter

29   on or about December 26, 1940, the Superior Court of the

30                          - 3 -

16--76776-1
GPO

3

1    State of California in and for the County of San Diego in

2    said Case No. 42850 entered a final judgment pursuant to the

3    stipulation of the parties.  A copy of the 1940 stipulated

4    judgment is attached hereto as Exhibit A.

5        Vail Company and the Executors of the Will of Murray

6    Schloss, deceased, are parties to the action before this

7    Court and Vail Company's successor in interest, Rancho

8    California, has now voluntarily appeared herein.  The United

9    States of America, a party to this action, is in privity with

10    and the successor of the Rancho Santa Margarita, and Max

11    Henderson, party in this action, is in privity with and the

12    successor of Philip Playtor.

13                  II

14        By Interlocutory Judgment No. 25 herein, dated April 25,

15    1961, this Court made certain findings of fact on the basis

16    of which it concluded, inter alia, (1) that the said 1930

17    findings of fact and judgment and the 1940 stipulated judg-

18    ment in the said state court action must be considered one

19    judgment, (2) that the said state court judgment was in-

20    equitable and should not be enforced as such by a court of

21    equity, and (3) that the said state court judgment was not a

22    contract, but if it were it had been rescinded by Vail

23    Company.  Interlocutory Judgment No. 25 then enjoined the

24    United States and the other parties to said state court ac-

25    tion from enforcing or attempting to enforce in any manner

26    any "judgment, provision or term, finding of fact or conclu-

27    sion of law" set forth in the said state court action in

28    either the Supreme Court of California or the Superior Court

29    in and for San Diego County.

30                     - 4 -

16—76775-1
GPO

III

In its said opinion of May 26, 1965, the Court of Appeals determined that the 1940 stipulated judgment in the said state court action was not based upon the 1930 findings of fact but "upon agreement between the litigants." The Court of Appeals further stated: "It was upon that agreement that the California court relied and not upon the facts then (or earlier) existing." It was held that the 1940 stipulated judgment constituted a valid agreement between the parties to the stipulation, that the Vail Company had not established that it was entitled to rescind the agreement or that the United States had in any way repudiated it or estopped itself to assert its continuing validity and effectiveness, and that in any relitigation of rights as between the successor in interest of Rancho Santa Margarita and Vail Company, such relitigation "starts from where it last left off, which in this case, as to Vail, would be the 1940 decree."

IV

While holding that the 1940 stipulated state court judgment is valid and enforceable in this litigation as between the parties to that action, the Court of Appeals further noted "that some relief might be proper should Vail be able to show that mistakes of fact have caused it harm of sufficient magnitude to justify reformation." Without prejudging the question, the Court gave two examples of the kinds of circumstances which might, on application and adequate showing, be basis for some relief.

V

It is therefore plain that for this Court to carry out

- 5 -

1   the mandate of the Court of Appeals it is necessary that

2   Interlocutory Judgment No. 25, and the Conclusions of Law on

3   which it is based, be withdrawn and that there be included in

4   the final judgment of this Court a provision that the 1940

5   stipulated state court judgment is valid and enforceable as

6   between the parties thereto and their respective successors

7   in interest, subject to the rights of any of such parties

8   and their successors in interest to seek some relief from

9   the provisions thereof on showing that mistakes of fact have

10  caused the applicant harm of sufficient magnitude to justify

11  reformation.

12      The question whether the Findings of Fact on which Inter-

13  locutory Judgment No. 25 is based are of continuing validity

14  in light of the decision of the Court of Appeals is one about

15  which there is, or may be, considerable controversy between

16  the parties.  Without prejudging this question as to any of

17  such findings, the entry of this Modified Final Judgment and

18  Decree shall be without prejudice to the right of any party

19  in any future proceeding herein to attack or assert the

20  validity of any such Findings of Fact.

21                              VI

22      There are other provisions of the several Interlocutory

23  Judgments, as incorporated into the Final Judgment, and the

24  Findings of Fact and Conclusions of Law on which the same were

25  based, which are or may be inconsistent with the Court of

26  Appeals determination respecting the enforceability of the

27  1940 stipulated state court judgment as between the parties

28  thereto and their respective successors in interest.  However,

29  in view of the Court's continuing jurisdiction in this matter,

30                            - 6 -

16—76773-1
GPO

6

1   the Court perceives no immediate need to modify and correct

2   every provision in the constituent parts of the final judg-

3   ment as heretofore entered which is not wholly consistent

4   with the reinstatement of the 1940 stipulated state court

5   judgment. With the understanding that an application or

6   applications to modify such possibly inconsistent provisions

7   may be considered hereafter, none of the parties has at this

8   time requested that the Court take action now to do more than

9   the minimum required for compliance with the mandate of the

10  Court of Appeals.

11                      CONCLUSIONS OF LAW

12                              I

13      The 1940 stipulated judgment in the state court action

14  referred to in Finding I above, a copy of which is Exhibit A

15  hereto, is a valid and binding obligation of the parties

16  thereto and is enforceable in this action as between the

17  parties thereto and their successors in interest as such an

18  obligation and as a valid judgment of the Court by which the

19  same was entered. The said stipulated judgment should there-

20  fore be incorporated into and adopted as part of the Final

21  Judgment of the Court in this action. Consistent with the

22  mandate of the Court of Appeals, it is necessary that in so

23  incorporating the said 1940 stipulated judgment into this

24  Court's Final Judgment, and in adopting the same as a part

25  thereof, there be reserved to the parties thereto and their

26  successors in interest, the right to seek relief from any of

27  the provisions of said 1940 stipulated judgment with respect

28  to which it can be and is shown that mistakes of fact have

29                          - 7 -

30

1    caused harm to the applicant of sufficient magnitude to justi-

2    fy reformation.

3                                    II

4         The list of interlocutory judgments contained in para-

5    graph 1 of this Court's Final Judgment, dated May 8, 1963,

6    should be modified to conform to the provisions hereof with

7    respect to Interlocutory Judgment No. 25.

8                                   III

9         The right of any affected party to apply for modification

10   of any other provision of the several interlocutory judgments,

11   as incorporated into the Final Judgment, or of the Findings

12   of Fact or Conclusions of Law on which the same are based,

13   upon showing of incompatability with or inconsistency be-

14   tween such provision and the Court of Appeals determination

15   respecting enforceability of the 1940 stipulated state court

16   judgment and this Court's continuing jurisdiction to consider

17   any such application, should be expressly reserved.

18                                   IV

19        In all other respects, the Final Judgment of this Court,

20   as entered herein on May 8, 1963, should be continued in

21   force and effect.

22

23                          MODIFIED FINAL JUDGMENT

24        NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:

25                                    I

26        IT IS ORDERED, ADJUDGED, AND DECREED that the 1940 stip-

27   ulated judgment in the state court action, referred to in

28   Finding I above and attached hereto as Exhibit A, is a valid

29   and binding obligation of the parties thereto, is enforceable

30                                 - 8 -

in this action as between the parties thereto and their suc-
cessors in interest as such an obligation and as a valid
judgment of the Court by which the same was entered, and is
adopted as a part of and incorporated into this Modified
Final Judgment, provided, that there is expressly reserved
to the parties thereto and their successors in interest, the
right to apply for relief from any of the provisions of said
stipulated judgment with respect to which it can be and is
shown that mistakes of fact have caused the applicant harm
of sufficient magnitude to justify reformation.

### I-A

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Inter-
locutory Judgment No. 25, and the Conclusions of Law on which
the same is based, are hereby withdrawn; provided, that the
entry of this Modified Final Judgment and Decree shall be
without prejudice to the right of any party in any future
proceeding herein to attack or assert the validity of any of
the Findings of Fact in said Interlocutory Judgment No. 25.

### II

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each of
the following Interlocutory Judgments or Orders and the Find-
ings of Fact and Conclusions of Law attached thereto, includ-
ing amendments, if any, are also adopted by reference as
part of and incorporated into the Final Findings of Fact,
Conclusions of Law, and Modified Final Judgment and Decree
of this Court:

- 9 -

9

| Number | Date Interlocutory Judgment or Order Entered | Brief Description of Subject Matter |
|---|---|---|
| 1 | April 7, 1961 | Jack & Cosette Garner (Wilson Creek Area) - now merged into 33A |
| 2 thru 21 | April 7, 1961 | Fallbrook & Area South (non-riparian) - now included in Amended 39A |
| | November 21, 1962 | Amendment to 2 (Parcels to be included in 42 - Rainbow) |
| 22 | April 7, 1961 | Regarding Water Rights on Lands Originally Conveyed by Mexican Grants |
| 23 | April 7, 1961 April 4, 1962 | Appropriative Rights - FPUD Amendment to 23 |
| 24 | April 13, 1961 | Non-Statutory Appropriative Rights of USA in SMR for Lake O'Neill |
| 24A | May 7, 1963 | Stipulation Respecting Appropriative Rights to Use of Waters of SMR for Lake O'Neill - USA & FPUD |
| 25 | April 25, 1961 | Subject to provisions of paragraph I-A and any other applicable provisions of this Modified Final Judgment and Decree |
| 26 | April 25, 1961 | Oviatt (Parcels in 33 and 34A) |
| 27 | April 25, 1961 | Knox (All parcels included in 40) |
| 28 | May 24, 1961 | Miscellaneous Surface Impoundments |
| | December 8, 1961 | Amendments to 29A, 31A, 32A, 33A & 34A (Explanation of parcel numbers) |
| | February 8, 1962 | Amendments to 29A, 31A, 32A, 33A, 34A & 38A (Jurisdiction of surface waters) |
| 29A | August 1, 1961 | Sandia Creek sub-watershed (All Parcels now included in 39A) |

10

| Number | Date Interlocutory Judgment or Order Entered | Brief Description of Subject Matter |
|---|---|---|
| 30 | March 8, 1962 | Murrieta-Temecula Ground Water Area (Riverside County subdivisions) |
| | July 3, 1962 | Amendment to 30 (Storage Units 1, 2, 3, 4 - approximately 418,000 ac.ft.) |
| | March 6, 1963 | Amendment to 30 - Respecting Stipulation--Settling Rights |
| 30A | March 13, 1963 | Murrieta-Temecula - Outside Ground Water Area |
| 31 | January 25, 1963 | Santa Gertrudis (Lower Murrieta) |
| 31A | July 27, 1961 | Tucalota Creek Sub-watershed Amended (Lower Murrieta) |
| | March 6, 1963 | Amendment to 31A - Respecting Stipulation - Settling Rights |
| 32 | December 11, 1962 | DeLuz Creek Sub-watershed |
| | March 6, 1963 | Amendment to 32 - Respecting Stipulation - Settling Rights |
| 32A | August 4, 1961 | DeLuz Creek Sub-watershed |
| 33 | December 11, 1962 | Anza Valley, Wilson Creek & Coahuilla-Down to ground water area |
| 33A | August 4, 1961 | Wilson & Coahuilla Creeks Sub-watershed |
| | March 6, 1963 | Amendment to 33A - Respecting Stipulation - Settling Rights |
| | April 9, 1963 | Amendment to 33A - Interlocutory Judgment 1 merged into 33A |
| 34 | February 20, 1963 | Temecula Creek above Aguanga Ground Water Area |
| | March 6, 1963 | Amendment to 34 - Respecting Stipulation - Settling Rights |
| 34A | December 7, 1961 | Temecula Creek Sub-watershed Above Vail Dam |

-11-

16—70775-1
GPO

| Number | Date Interlocutory Judgment or Order Entered | Brief Description of Subject Matter |
|---|---|---|
| | March 6, 1963 | Amendment to 34A - Respecting Stipulation - Settling Rights |
| 35 | June 4, 1962 | Vail Company (Temecula Creek Below Vail Dam and to the Gorge) |
| 35A | December 11, 1962 | Vail Company |
| 36 | July 3, 1962 | Warm Springs & Diamond-Domenigoni (Upper Murrieta) |
| 36A | February 20, 1963 | Warm Springs (Upper Murrieta) |
| | March 6, 1963 | Amendment to 36A - Respecting Stipulation - Settling Rights |
| 37 | April 6, 1962 | Military Enclave |
| | November 8, 1962 | Amendment to 37 (Sewage effluent discharges & Water conservation practices) |
| | February 20, 1963 | Amendment to 37 (Exclusive jurisdiction) |
| 38 | | (No Judgment #38) |
| 38A | January 3, 1962 | Temecula Creek Sub-watershed - Below Vail Dam and above Gorge |
| | March 6, 1963 | Amendment to 38A - Respecting Stipulation - Settling Rights (1/30/62 Order setting aside 38A 2/1/62 Order vacated) |
| 39 | December 11, 1962 | SMR - Below Gorge and above Enclave (Includes Sandia) |
| | April 9, 1963 | Amendment to 39 - (Includes Fallbrook and Area South) |
| 39A | November 8, 1962 | SMR - Below Gorge and above Enclave (Includes 29A) |
| | March 13, 1963 | Amendment to 39A (Includes Fallbrook and Area South) (Also 2 thru 21) |
| 40 | December 12, 1962 | Aguanga Ground Water Area (Temecula & Wilson) |

-12-

| Number | Date Interlocutory Judgment or Order Entered | Brief Description of Subject Matter |
|---|---|---|
| 41 | November 8, 1962 | Indian Reservations |
| 42 | October 10, 1962 | Rainbow Creek |
| 42A | February 25, 1963 | Rainbow Creek |
| 43 | February 6, 1963 | Cottle & Gibbon |
| 44 | May 8, 1963 | National Forest Lands |
| 45 | December 12, 1962 | Order Regarding Water Extractions |
|  | January 27, 1966 | Order Superseding No. 45 and Order of September 3, 1964 |

Provided, that there is hereby expressly reserved the
jurisdiction of this Court to consider, and the right of
any affected party to make application for, modification
of any of the provisions of said Interlocutory Judgments
or Orders, or of the Findings of Fact and Conclusions of
Law attached thereto, which is incompatible or inconsistent
with the provisions of paragraph I of this Modified Final
Judgment or with the Court of Appeals' determination
respecting enforceability of the said 1940 stipulated state
court judgment as between the parties thereto and their
respective successors in interest.

III

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that
questions with respect to interpretation and application
of the said 1940 stipulated state court judgment which
are not hereby specifically decided will be considered
and determined upon application of any affected party
after notice to other affected parties.

13

IV

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the judgment provisions as set forth in the aforesaid interlocutory judgments and orders and the original Final Judgment herein are effective as of May 8, 1963, the date of entry of said Final Judgment (or any later dates as of which a modification of any thereof may have been entered), and that the modifications of the said Final Judgment hereby made are effective as of the date of entry of this Modified Final Judgment and Decree.

V

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court retains continuing jurisdiction of this cause as to the use of all surface waters within the watershed of the Santa Margarita River and all underground or sub-surface waters within the watershed of the Santa Margarita River, which are determined in any of the constituent parts of this Modified Final Judgment to be a part of the sub-surface flow of any specific river or creek, or which are determined in any of the constituent parts of this Modified Final Judgment to add to, contribute to, or support the Santa Margarita River stream system.

VI

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the STATE OF CALIFORNIA STATE WATER RIGHTS BOARD, or its successor agencies as may be provided by the laws of the State of California, shall continue to exercise its statutory jurisdiction over all present or future

-14-

16—76775-1
GPO

1   appropriative rights to the use of waters of the Santa

2   Margarita River and its tributaries.

3                              VII

4        IT IS FURTHER ORDERED, ADJUDGED AND DECREED that

5   this Court shall also continue to exercise jurisdiction

6   concerning all present or future appropriative rights

7   insofar as such uses may conflict with or be adverse to

8   the exercise of any prior vested water right within the

9   Santa Margarita River watershed, as adjudicated by the

10  provisions of the Interlocutory Judgments or orders

11  above set forth and by this Modified Final Judgment.

12                             VIII

13       IT IS FURTHER ORDERED, ADJUDGED AND DECREED that

14  this Court reserves the right to amend, nunc pro tunc,

15  upon its own motion either with or without notice, any

16  interlocutory judgment or order or exhibit attached

17  thereto or this Modified Final Judgment, for the purpose

18  of correcting errors or inaccuracies in names, legal

19  descriptions or other similar factual data contained in

20  said interlocutory judgments or orders or exhibits, as

21  provided in Rule 60A of the Federal Rules of Civil

22  Procedure.

23                              IX

24       IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the

25  continuing jurisdiction reserved by this Court will be

26  exercised on the Court's own Motion, or upon the motion

27  of any party to this cause, his heirs, successors, or

28  assigns, made upon notice and in accordance with the

29  Rules of this Court.

30                            -15-

X

1

2   IT IS FURTHER ORDERED, ADJUDGED AND DECREED that

3   neither this Modified Final Judgment and Decree nor any

4   Interlocutory Judgment or order incorporated herein shall

5   in any manner affect the right of the United States of

6   America to acquire by the exercise of the power of

7   eminent domain property including water rights of any

8   nature as is or may be authorized by the laws of the

9   United States of America; nor shall this Modified Final

10  Judgment and Decree or any Interlocutory Judgment or

11  order incorporated herein prevent any defendant from

12  acquiring property including water rights of any nature

13  by the exercise of the power of eminent domain as is or

14  may be authorized by the laws of the State of California.

15      DATED:   4/6/66              , 1966.

16

17

18  _____
    JAMES M. CARTER, Judge

19  United States District Court

20

21

22

23

24

25

26

27

28

29

30                        -16-

EXHIBIT "A"

Cosgrove & O'Neil,
1031 Rowan Bldg.,
458 So. Spring St.,
Los Angeles, Calif.
     Trinity 6656
Attorneys for Plaintiff

O'Melveny & Myers,
900 Title Insurance Bldg.,
433 So. Spring St.,
Los Angeles, Calif.
     Michigan 2611
Attorneys for Defendants.

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN and For the County of San Diego

RANCHO SANTA MARGARITA
     a corporation

          Plaintiff

        vs.

M. R. Vail, Mary Vail Wilkinson,
Mahlon Vail, Edward N. Vail,
Margaret Vail Bell, The Vail
Company, an association of persons
transacting business under that
common name, M. R. Vail, Mary Vail
Wilkinson, Mahlon Vail, Edward N.
Vail and Margaret Vail Bell, as
Trustees of said Vail Company,
Mahlon Vail, Executor of the Estate
of Margaret R. Vail, Deceased, and
Laura Perry Vail, Executrix of the
Estate of William Banning Vail,
Deceased.

          Defendants.

Guy Bogart, Lucy Parkman Bogart
and Fred Reinhold, Executors of
the will of Murray Schloss, de-
ceased, and Philip Playtor,

          Interveners.

) No. 42850

STIPULATED JUDGMENT

    This cause came on regularly for trial in the above entitled court and depart-
ment thereof on Monday, October 18, 1926, at the hour of 10:00 o'clock A. M., be-
fore the court, Honorable L. D. Jennings, Judge, presiding; Messrs. Hunsaker, Britt
& Cosgrove appearing as attorneys for the plaintiff, Messrs. Haas & Dunnigan, Messrs.
Ward, Ward & Ward, Messrs. Stephens & Stephens, and Messrs. O'Melveny, Milliken &
Tuller, appearing as attorneys for defendants, and Walter Gould Lincoln, Esq.,
appearing as attorney for intervenors. The introduction of evidence, oral and
documentary, being completed, arguments, oral and in writing, having been submitted,
the court having considered the same and being fully advised in the premises,
findings of fact and conclusions of law having been signed by the court and filed
with the clerk thereof, and judgment on said findings and conclusions having been
signed and entered; defendants and each of them thereupon appealed from said judg-
ment and from each part thereof, but said interveners

17

EXHIBIT A

did not appeal from said judgment; the Supreme Court of said State of California
upon said appeal having reversed said judgment and directed a new trial upon cer-
tain issues designated in the opinion of said court reported Rancho Santa Margarita,
a corporation, vs. Margaret R. Vail, et al., L. A. No. 15078, 11 Cal. (2nd) 501,
and said plaintiff and defendants having stipulated to the entry of the following
judgment,

Now, therefore, IT IS ORDERED, ADJUDGED AND DECREED that:


Section First: The plaintiff, Rancho Santa Margarita, a corporation, and
defendants, N. R. Vail, Mary Vail Wilkinson, Mahlon Vail, Edward N. Vail, Margaret
Vail Bell, the Vail Company, an association of persons transacting business under
that common name, N. R. Vail, Mary Vail Wilkinson, Mahlon Vail, Edward N. Vail and
Margaret Vail Bell, as Trustees of said Vail Company, Mahlon Vail, Executor of the
estate of Margaret R. Vail, Deceased, and Laura Perry Vail, Executrix of the
Estate of William Banning Vail, Deceased, and interveners, Guy Bogart, Lucy Parkman
Bogart and Fred Reinhold, Executors of the Will of Murray Schloss, Deceased, and
Philip Playtor, have and each has rights in and to the waters of the Temecula-
Santa Margarita River and its tributaries, and in and to the use of said waters for
all beneficial and useful purposes on their respective lands herein more specifically
described.

Section Second: The plaintiff is entitled to take and use upon the whole or
any part of its lands lying within the Rancho Santa Margarita y Las Flores, San
Diego County, California, sixty-six and two-thirds per cent (66-2/3%) of the water
of said Temecula-Santa Margarita River and all its tributaries which naturally,
when not artificially diverted or abstracted, flows and descends in the channel
thereof at that certain joint gaging station hereinafter in this judgment designated
as Measuring Station No. Six (6).

Section Third: Defendants are entitled to take and use upon the whole or any
part of their lands hereinafter mentioned, thirty-three and one-third per cent
(33-1/3%) of the water of said Temecula-Santa Margarita River and all its trib-
utaries which naturally, when not artificially diverted or abstracted, flows and
descends in the channel thereof at that certain joint gaging station hereinafter
designated Measuring Station No. Six (6).



- 3 -

The lands of the defendants herein referred to consist of those certain lands in Riverside County, California, known as Pauba Grant, Lost A, B, C, and D of Little Temecula Grant, or Rancho as shown on the Wolf partition map of Little Temecula Grant as described in the final decree of partition in the case of William Wold vs. Ramona Wolf, being Case No. 5756 in the Superior Court of San Diego County, State of California, said final decree of partition being recorded in Book 199 of Deeds, page 464, et seq., records of San Diego County, California, the southeasterly approximately one-half of Temecula Grant, excluding therefrom the town site of the unincorporated city of town of Temecula and the various parcels of land owned by persons other than the defendants herein, as shown by map entitled "Triangulation Map of Pauba Ranch and Vicinity, Riverside County" received in evidence in this case and marked "Plaintiff's Exhibit No. U-4", which exhibit has been incorporated into and constitutes a part of the Transcript on Appeal in this action, (reference is hereby made to said Transcript and to said Exhibit No. U-4 and by such reference said exhibit is incorporated into and constitutes a part of this judgment), Santa Rosa Grant, and Vail governments lands, which said Vail government lands, approximately four hundred sixty (460) acres in area, are more particularly described as: Those certain lands lying within sections twenty-one (21), twenty-seven (27), twenty-eight (28) and twenty-nine (29) of Township Eight (8) south, Range Two (2) west, S. B. B. M., Riverside County, California, and being more particularly identified as Lots Nineteen (19), Twenty (20), Twenty-one (21), Twenty-six (26), Twenty-seven (27), Thirty (30) and Thirty-one (31) of Block Fifteen (15), and those portions of Lots Seventeen (17) and Eighteen (18) of said Block Fifteen (15) lying without but contiguous to the southeasterly boundary of Lot D of said Little Temecula Grant.

Section Fourth: The intervener Philip Playtor is entitled to take and use upon the whole or any part of his lands riparian to said Temecula-Santa Margarita River, as hereinafter delineated and defined, one (1) miner's inch continuous flow of the waters of said Temecula-Santa Margarita River. The lands of said Philip Playtor riparian to said river are described as follows: The northwest one-quarter (NW$\frac{1}{4}$) of the southeast one-quarter (SE$\frac{1}{4}$) and the south one-half (S$\frac{1}{2}$) of the south one-half (S$\frac{1}{2}$) of section thirty-three (33) and the southwest one-quarter (SW$\frac{1}{4}$) of the southwest one-quarter (SW$\frac{1}{4}$) of section thirty-four (34), Township Eight (8) South, Range Three (3) West, S. B. M., Riverside County, California.

*19*
15

- 4 -

Section Fifth: The interveners Guy Bogart, Lucy Parkman Bogart and Fred Reinhold, as executors under the will of Murray Schloss, deceased, own certain real property in San Diego County, California, of which approximately twenty (20) acres are riparian to a certain tributary of said Temecula-Santa Margarita River by the name of Stone Creek and are susceptible of practical and profitable irrigation with the water of said creek, said approximately twenty (20) acres being described as follows: The south one-half ($S\frac{1}{2}$) of the northeast one-quarter ($NE\frac{1}{4}$) of the northeast one-quarter ($NE\frac{1}{4}$) of section four (4) Township Nine (9) South, Range Three (3) west, S. B. M., San Diego County, in said state. Said interveners are entitled to take from the surface and subsurface waters of said Stone Creek and use the same on said twenty (20) acres riparian to said Stone Creek, throughout said dry or irrigation season of each calendar year and from the 1st day of May of each year until the 31st day of October of the same calendar year, the entire flow of the waters of said Stone Creek and all its tributaries which naturally, when not artificially diverted or abstracted, flows or descends in the channel thereof to and upon said twenty (20) acre parcel; and are entitled to take from said Stone Creek, during the rainy or winter season of each year, for use upon said twenty (20) acres of riparian land for all beneficial purposes, five (5) miner's inches continuous flow.

Section Sixth: The waters of said stream and its tributaries herein apportioned to the interveners shall be deducted from the fractional part of the waters of said stream herein allotted to plaintiff.

Section Seventh: For the purpose of dividing among, and allocating to, the parties of this action, the waters of the Temecula-Santa Margarita River and its tributaries, at the places and in the amounts specified in this judgment, the plaintiff and the defendants immediately shall establish, and thereafter shall maintain jointly (unless established and/or maintained by U. S. Geological Survey, Division of Water Resources State Department of Public Works, or other public body), stream-flow (automatically registering) gaging stations at the following three locations on the Temecula-Santa Margarita River:

Station No. One (1): The upper end of Nigger Canyon at or near the present location of the Nigger Canyon gaging station;

Station No. Three (3): The upper end of Temecula Gorge, immediately downstream from the confluence of Murrieta Creek, at or near the present location of

20

- 5 -

the Temecula Gorge gaging station;

Station No. Six (6):  The Narrows, at or near the present location of the
Ysidora gaging station.

And plaintiff and defendants shall establish and maintain jointly (unless
established and/or maintained by U. S. Geological Survey, Division of Water
Resources State Department of Public Works, or other public body), gaging stations
for measuring (and automatically registering) the surface flow of said stream, or
any of its tributaries, at any point thereon where the plaintiff, the defendants,
or the interveners, or any of them, hereafter may construct or maintain appliances for
the diversions of the surface flow of said stream, or any of its tributaries.
(The cost of establishing and maintaining joint gaging stations as are required
hereunder, including the taking of measurements and observations thereof, shall be
borne equally by the plaintiff and the defendants.)

Each party shall establish and maintain meters to determine and automatically
register the amount of the underground waters abstracted or diverted by such party
from the underground waters of Temecula-Santa Margarita River and/or its tributaries
by means of wells, either artesian or pumped (except windmill wells and/or domestic
use wells of the parties and/or their tenants); such meters shall be of a type
which will meet the approval of both plaintiff and defendants or the approval of
either party and the engineer in charge of the Los Angeles office of the U. S.
Geological Survey, and shall be installed and maintained in such manner and place
as to be available for inspection by either plaintiff or defendants at all times.

Section Eighth:  Whenever the total normal flow of said Temecula-Santa Mar-
garita River (when not artificially diverted or abstracted) measured at gaging
station No. Three (3) exceeds the total normal flow measured at Gaging Station No.
Six (6), then and in that instance the flow of said stream at said Gaging Station
No. Three (3) shall be considered as the total flow of said stream, and at such time
the apportionments and allotments herein provided for shall be predicated upon the
flow of said stream at said Gaging Station No. Three (3).

Section Ninth:  For the purpose of apportioning to defendants thirty-three and
one-third per cent (33-1/3%) of the waters of said stream as in Section Third pro-
vided, it shall be deemed that an amount of water equal to one-half (1/2) the sur-
face flow at Station No. Six (6) or Station No. Three (3), wherever the flow is the

greater (as provided in Section Eighth), pumped and/or diverted from the subsurface and/or surface waters of said river at points upstream from said Station No. Three (3), shall constitute thirty-three and one-third per cent (33-1/3%) of the waters of said stream.

It is recognized that the practical operation of the various pumping plants upon the defendants' lands for irrigation makes it difficult, if not impossible, for defendants to abstract and divert each day an amount of water the exact equivalent of the proportion of the stream flow measured at Station No. Six (6) or Station No. Three (3) to which defendants are entitled under this decree. Accordingly, whenever it is observed that defendants are abstracting and diverting, or have abstracted and diverted surface and/or underground waters in amounts in excess of that to which they are entitled hereunder, defendants, upon learning or being informed of such fact, thereupon shall reduce their diversions below the amount to which they are entitled under this decree, and shall continue such reduced diversions for the same period of time as near as is practicable and in an amount equivalent to the amount of water which defendants had diverted in excess of that to which they were entitled under this decree.

Section Tenth: In addition to the thirty-three and one-third per cent (33-1/3%) of the waters of said stream herein in Section Third allotted to defendants, they may also divert or abstract from the underground waters of said Temecula-Santa Margarita River, but not from the surface waters of said stream, at the places, during the times and upon the conditions hereinafter in this Section specifically set forth, but not otherwise, a specified amount of subsurface water herein in this judgment referred to as "Storage Water". The amount of Storage Water which the defendants may divert or abstract during any irrigation season shall be determined by the elevation of water (When not artificially disturbed) on May 1st of each year in a certain well located on defendants' land known as Windmill Well, in accordance with the following table:

| Depth to water below ground surface as shown in casing of Windmill Well on May 1st | Amount of Storage Water defendants may divert and apply to beneficial use during irrigation season |
| --- | --- |
| 20 feet or less | 1,500 acre feet |
| 30 feet | 1,125 acre feet |
| 40 feet | 750 acre feet |
| 50 feet | 375 acre feet |
| 60 feet or more | No acre feet |



- 7 -

At depths to water intermediate to those above stated proportionate quantities of water may be taken.

The spreading of flood water which does not involve surface impoundment (either temporary or otherwise) but which may raise the level of water in the underground basin in which said Windmill Well is drilled and upon which said well is located, shall not be considered as an artificial disturbance of the elevation of water in said Windmill Well. Storage water may be directed and used only upon said lands of defendants hereinbefore described and not elsewhere.

For the purpose of indicating the places at which said Storage Water may be pumped, reference is hereby made to "Plaintiff's Exhibit No. 265". Said Exhibit by reference has been incorporated into and constitutes a part of the Transcript on Appeal in this action. Reference is hereby made to said Transcript and to said Exhibit No. 265 and by such reference said Exhibit is incorporated into and constitutes a part of this judgment.

Shown upon said Exhibit No. 265, and extending in a generally northerly and southerly direction, is a certain line of wells (hereafter referred to as the E line of wells) desiganted on said Exhibit as E-3, E-2 North, E-1 North, E-1 South and E-2 South.

Easterly thereof, shown upon said Exhibit, and extending in a generally north-westerly and southeasterly direction, is a certain line of wells (hereafter referred to as the P. V. line of wells) designated on said Exhibit as P.V.9, P.V.6, and P.V.6X. Immediately adjacent to said P.V. line of wells and parallel thereto, is a certain highway commonly known as Old Warners Ranch Road (now not in common use).

(a)  Not more than Thirty per cent (30%) of said Storage Water which defendants are entitled to pump during any irrigation season may be pumped from that portion of defendants' lands lying between a line drawn through said E line of wells and extended across said underground basin, and a line drawn through said P.V. line of wells and extended across said basin.

(b)  At least seventy per cent (70) of said Storage Water which defendants are entitled to pump during any irrigation season shall be pumped from that portion of defendants' lands lying easterly of a line drawn through said P. V. line of wells and extended across said underground basin.

The well hereinbefore described as Windmill Well is situated on Pauba Grant South Sixty-seven degrees fifteen minutes (S 67 deg. 15 min?) East of B.M.11 a

23

- 8 -

distance of approximately eleven hundred (1100) feet, and South forty-seven degrees twenty minutes (S 47 deg. 20 min) West of B.M. 12 a distance of approximately fifteen hundred eighty (1580) feet, said bench marks being designated as Nos. 11 and 12 on said Exhibit No. 265.

Should said Windmill Well collapse or otherwise cease to be available or useful for the purpose of determining ground water elevations in the vicinity thereof, then another well shall be drilled by the defendants in the same general location, at approximately the same ground surface elevation above sea level, but not to exceed a distance of one hundred (100) feet from the location of said Windmill Well. Such new well shall be approximately the same depth and diameter of casing as said Windmill Well.   In event the parties hereto are unable to agree upon location, depth and diameter of casing of such well, these matters, upon petition of the parties hereto or either of them, shall be determined by order of this court.

For the purpose of determining defendants' total diversions of the waters of the Temecula-Santa Margarita River and its tributaries (meaning thereby to include both the allotment of thirty-three and one third per cent (33-1/3%) of the waters of the river as defined in Section Third, and the additional Storage Water as defined in this Section Tenth hereof), any water abstracted or diverted by defendants from the underground waters of said river (including underground basins of percolating water within the watershed of said river and its tributaries) by use of wells or pumps or other means of diversion, whether now existing or hereafter established, except as hereinafter in this section provided, shall be added to any surface diversions by the defendants from the waters of said river.   Such abstractions by the defendants of the underground waters of the Temecula-Santa Margarita River are, and for all purposes of this judgment shall be (except as hereinafter provided) considered as diversions of the waters of said river, and are and shall be chargeable against the fractional part of the surface flow of said stream and the additional amount of Storage Waters herein allotted to defendants.

Water abstracted or diverted from said underground Water of said river which shall not be subject to the provisions of this section are as follows:

1.  Windmill wells maintained by defendants for the purpose of supplying water for cattle.

2.  Water used by defendants or their tenants for domestic use exclusively (but not including any irrigation use);



- 9 -

3. Waters which defendants may pump directly into the surface flow of said stream pursuant to the requirements of Section Eleventh hereof.

Section Eleventh:

Part 1. During the irrigation season of each year, to wit, May 1 to October 31, inclusive, excepting as otherwise in Part 1 of this Section permitted, defendants shall cause to be maintained at Gaging Station No. Three (3) a constant flow of water of not less than three (3) cubic feet per second (one (1) cubic foot per second being the equivalent of fifty (50) miner's inches.).

The surface flow at said Station No. Three (3) may be permitted to fall below three (3) cubic feet per second during said irrigation season upon the following conditions and not otherwise:

1. Said surface flow shall not be permitted to fall below three (3) cubic feet per second for any continuous period of more than ten (10) days;

2. An interval of at least ten (10) days shall elapse between periods during which said surface flow falls below three (3) cubic feet per second;

3. Defendants shall contribute to the surface flow at Station No. Three (3), by means of pumping from Temecula Alluvial Basin, or otherwise, an amount of water equal to the amount that the actual flow during said period was less than the required flow of three (3) second feet;

4. Such contributions shall be made at the same rate and over the same period (as near as practicable) as the rate at which said surface flow was less than Three (3) second feet;

5. Such contributions shall be made immediately following the period in which said required flow of three (3) second feet was not maintained;

6. Defendants by means of pumping underground waters directly into the surface flow of the stream or otherwise during any period in which said required flow of three (3) second feet was not maintained, shall always maintain a constant surface flow at Station No. Three (3) of not less than two (2) second feet.

Part II: In the event that, during the irrigation season of any year, to wit, May 1 to October 31, inclusive, the irrigation of crops on said lands of defendants reasonably requires more water than they otherwise are entitled to take under this decree, defendants may abstract and divert underground waters only, in amounts in excess of that to which they are otherwise entitled hereunder. Such excessive diversions may be made upon the following conditions and not otherwise:

25

1. Excessive diversions shall not continue for a period to exceed eight (8) days consecutively;

2. Following any period of excessive diversion, an interval shall elapse before any further period of excessive diversion, which interval shall not be less than the number of days during the period of excessive diversions immediately preceding;

3. Defendants shall reduce their diversions below the amount to which they are otherwise entitled under this decree, such reductions to be in an amount not less than the amount of water which defendants have diverted in excess of that to which they are otherwise entitled under this decree;

4. Such reductions of their diversions shall be made by defendants immediately following the period during which such excessive diversions were made and shall be completed within ten (10) days thereafter;

5. Defendants, at least one (1) day in advance of the commencement of such diversions, shall advise plaintiff in writing of their requirement and of their intention to avail themselves of the privilege of excessive diversions afforded under part II of this Section.

Parts I and II of this Section Eleventh are complementary one of the other and not inconsistent one with the other and hereafter shall be so construed. The purpose of Part I is to require defendants to maintain a constant flow at Station No. Three (3) of not less than three (3) cubic feet per second excepting under the conditions stated when the flow may be permitted to fall below three (3) cubic feet per second but not below two (2) cubic feet per second, and when such diminution of the stream flow occurs the amount of such diminution shall be contributed by the defendants by pumping directly into the surface flow of the stream from the Temecula Alluvial Basin or otherwise. Part II permits defendants under the conditions stated to use for short periods amounts of water in excess of their allotment but requires them to contribute shortly thereafter the amount of such excessive diversions by reducing (in an amount not less than the amount of such excessive diversions) the amount of the diversions to which they are otherwise entitled. No part of such excessive diversions is required to be contributed by defendants through direct pumping from the subsurface waters of the Temecula Alluvial Basin into the surface flow of the stream if, during the period of such excessive diversions, the constant stream flow at Station No. Three (3) equals or exceeds three (3) second feet.

- 11 -

Section Twelfth: Defendants at all times shall be entitled to divert from the Temecula-Santa Margarita River and its tributaries, and to apply to beneficial use upon their said lands, an amount of water equal to one-half the amount which the plaintiff is entitled to divert from said river and its tributaries and apply to beneficial use upon its lands.

For the purpose of determining the amount of water which defendants are entitled to divert and apply to such beneficial use, computations of the amount of water diverted and applied to beneficial use by each of the parties hereto shall be made monthly, based on joint measurements maintained as herein required. In event said measurements disclose that the amount of water which defendants are entitled to divert and apply to beneficial use pursuant to the provisions of this judgment is less than one-half the amount being applied to beneficial use by plaintiff, thereupon defendants shall be entitled to increase their diversions and applications to beneficial use to an amount sufficient to make defendants' diversions and applications to beneficial use equal to one-half the amount diverted and applied by plaintiff; provided, however, that such additional diversions and applications, if and when made, shall be in addition to diversions made under Sections Third and Tenth hereof, and shall be made by defendants during the irrigation season in which such right accrues, or in the first subsequent season, or part in the same season and the remainder in the first subsequent season, and such diversion, if any, shall be made by pumping from the underground basin at points easterly from said P. V. line of wells.

Section Thirteenth: Each of the parties hereto shall have the right to construct dams or reservoirs on its or their respective lands or elsewhere, for the purpose of intercepting or impounding or conserving such party's share of the flood waters of said river and its tributaries; provided, however, in the event any such dam or reservoir is hereafter constructed by defendants for such purpose, the rights of defendants to abstract and divert Storage Water pursuant to Section Tenth hereof shall cease and terminate.

Defendants shall not make, during any irrigation season, any surface diversions of the waters of said river at the Bridge Pumping Plant, The Cantarini Pumping Plant or the Tule Pumping Plant referred to in the findings herein, or at any other point

27

- 12 -

on said Temecula-Santa Margarita River below the point of Rising Water as shown on said Exhibit No. 265.

Section Fourteenth:  The plaintiff, Rancho Santa Margarita, a corporation, shall have and recover of and from the defendants, its costs and disbursements herein taxed at Six Thousand Thirty-six and 62/100 Dollars ($6,036.62).

Dated at San Diego, California, this 26 day of December, 1940.


Gordon Thompson

Judge


Records indicate that this judgment was recorded in San Diego and Riverside Counties on 26 December 1940.