IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,           )
                                    )
                Plaintiff,          )
                                    )
        v.                          )       No. 1247-SD-C
                                    )
FALLBROOK PUBLIC UTILITY DISTRICT,  )       **FILED**
a public service corporation of     )
the State of California, et al.,    )       MAY 22 1968
                                    )
                Defendants.         )       CLERK, U.S. DISTRICT COURT
                                            SOUTHERN DISTRICT OF CALIFORNIA
                                            By _____ DEPUTY

PETITION FOR APPROVAL OF MEMORANDUM OF
UNDERSTANDING AND AGREEMENT AND FOR
ORDER AMENDING MODIFIED FINAL JUDGMENT
AND DECREE

TO THE HONORABLE JUDGE OF THIS COURT:

        The plaintiff, by and through its attorneys, and

defendant, Fallbrook Public Utility District, by and

through its attorneys, respectfully petition the court; and

in support of this petition allege as follows:

        1.   The above-entitled cause came on regularly

for trial before the Honorable James M. Carter, United

States District Judge, following remand from the United

States Circuit Court of Appeals for the Ninth Circuit, which

directed that this Court ". . . enter no judgment until the

entire suit can be disposed of at the same date."

        2.   Because of the complexities of this liti-

gation and the fact that the physical water resources were

located throughout the watershed, the Court determined that

the said mandate could best be complied with by adjudi-

cation of the rights of the parties to the cause in

segments of the watershed involving limited areas and

numbers of defendants and by entering interlocutory

judgments as the trial concerning each segment was concluded. Proceeding in this manner, the Court entered interlocutory judgments as the trial progressed, each of which concerned a specified area within the Santa Margarita River watershed, or a limited legal issue presented by the parties until orders or interlocutory judgments on all areas within the watershed and all issues presented for decision were entered.

3. On May 8, 1963, the Court entered its final judgment and decree whereby the said Interlocutory Judgments or Orders were listed, and the same, together with the Findings of Fact and Conclusions of Law attached thereto, were adopted as the final Findings of Fact, Conclusions of Law, and Judgment and Decree of the Court.

4. The Court of Appeals, by its decision dated May 26, 1965, reversed the judgment of this Court as to the rights of the United States against Vail Company, and remanded the cause with instructions that the final judgment be appropriately modified. In all other respects, the Final Judgment and Decree was affirmed. By its order dated October 4, 1965, the Court of Appeals denied the United States petition for rehearing and clarification. On April 6, 1966, this Court entered its Modified Final Judgment and Decree as directed by the Court of Appeals.

5. The Modified Final Judgment and Decree catalogued the water rights in the Santa Margarita River Stream System of the various parties to this cause but did not purport or attempt to apportion the waters of the said stream system or the uses thereof between the parties to this cause.

- 2 -

6.    It has long been recognized by the Court and the petitioners that the aforesaid Modified Final Judgment and Decree leaves unsolved many serious problems with respect to the use of the aforesaid waters and the division of these waters between the petitioners under their respective water rights in the Santa Margarita River Stream System.

7.    The petitioners are in agreement that neither can, without further serious controversy, effectively utilize its water rights in the Santa Margarita River Stream System and that the water resources of the stream system cannot be developed fully in the absence of a physical solution which makes equitable provisions as between them for the manner in which each of them shall make use of the waters of the stream system to which it is entitled under its water rights as determined by the Modified Final Judgment and Decree.

8.    Subject to the approval of this Court and subject also to congressional authorization of the project therein provided for, the petitioners have negotiated and executed an agreement for such a physical solution which is embodied in the attached Memorandum of Understanding and Agreement, dated March 4, 1968.

WHEREFORE, petitioners pray that the court enter its order fixing the time for hearing on this petition and providing the manner in which and the persons to whom notice of such hearing shall be given and that at such time the aforesaid Memorandum of Understanding and

- 3 -

1  Agreement be approved by the court and that the Modified

2  Final Judgment and Decree in this cause be amended by the

3  incorporation of this Memorandum of Understanding and

4  Agreement into the same.

Respectfully submitted,

EDWIN L. MILLER, JR.
United States Attorney

DAVID R. WARNER

DONALD W. REDD,
Attorneys, Department of Justice

Attorneys for Plaintiff

SACHSE AND COOLEY

By: FRANZ R. SACHSE
Attorneys for Defendant
Fallbrook Public Utility District

- 4 -

16—76775-1
GPO

## ORDER OF HEARING

Upon presentation and consideration of the foregoing petition, it is hereby ordered and directed that a hearing be held on the subject matter of this petition on the 27 day of _____ June _____, 1968, at 10:00 A.M. in Courtroom 3 of the United States District Court, San Diego, California.  The following will receive notice of this hearing by having a copy of this petition and order, without the attachment, mailed to their attorney of record, if represented by an attorney, or to them individually at their last known address if not represented by an attorney:

1.   All attorneys of record in this cause;

2.   The State of California;

3.   Rancho California;

4.   All parties listed in Exhibit I of Interlocutory Judgment #30;

5.   All parties listed in Exhibit A of Interlocutory Judgment #32;

6.   All parties listed in Exhibits A, C-5, and C-5-1 of Interlocutory Judgment #39.

Copies of the attachment may be examined during normal working hours at the office of the Clerk of this Court or at the Office of Ground Water Resources, Marine Corps Base, Camp Pendleton, California.

DATED: 5/21 , 1968

_____
JUDGE
United States District Court

- 5 -

MEMORANDUM OF UNDERSTANDING AND AGREEMENT

1    This memorandum of understanding and agreement made the
2  4th day of March _____, 196 8 , between the United States
3  of America (hereinafter referred to as the "United States") through
4  the Attorney General of the United States, the Secretary of the
5  Interior, and the Secretary of the Navy, and the Fallbrook Public
6  Utility District (hereinafter referred to as "Fallbrook"), a public
7  service corporation of the State of California, acting through its
8  Board of Directors, Witnesseth:
9      Whereas, the United States and Fallbrook are the last water
10  users on the lower Santa Margarita River;
11      Whereas, the United States, Fallbrook, and others have been
12  involved for the past decade and a half in litigation to determine,
13  inter alia, their respective rights to use the waters of the Santa
14  Margarita River system;
15      Whereas, the United States and Fallbrook desire to compose the
16  differences which remain between them in connection with the above-
17  mentioned litigation and to proceed jointly with a unified and
18  comprehensive program for sound management and maximum beneficial
19  utilization of the water resources of the lower Santa Margarita
20  River;
21      Whereas, in a report entitled "Santa Margarita Project,
22  California, Reconnaissance Report," June 1966, Region 3 of the
23  Bureau of Reclamation, United States Department of the Interior,
24  stated its conclusions and recommendations as follows:
25      1.   Conclusions
26          a.   Both Camp Pendleton and the Fallbrook Public
27  Utility District are in a water deficient area in which
28  the local water supply is insufficient to meet present
29  and projected water requirements.
30          b.   The flows of the Santa Margarita River have not
31  been fully developed for beneficial use because of long
32  litigation over water rights.

c. Limited local water supplies can be developed at a cost comparable to the cost of alternate imported supplies.

d. A physical solution is attainable.

e. A joint project, consisting of either one or two dams, is economically justified and appears to be financially feasible.

f. The smaller two-dam plan has the largest net benefits of the three plans considered.

g. The plans studied would provide regulatory storage for imported water so that it could be accepted on a uniform delivery schedule.

2. <u>Recommendations</u>. It is recommended that:

a. Officials of the United States and the Fallbrook Public Utility District actively negotiate a physical solution including an agreement on operation of a project.

b. The Bureau of Reclamation initiate feasibility studies to demonstrate the financial feasibility of the project which will implement the negotiated physical solution.

c. The two-dam plan consisting of a 140,000 acre-foot DeLuz Reservoir and a 36,500 acre-foot Fallbrook Reservoir be the primary plan considered in future studies;

Whereas, the Department of the Navy and Fallbrook have agreed, subject to the various approvals hereinafter provided for, upon the general terms of a physical solution predicated upon the construction of a two-dam project to be constructed and owned by the United States, and operated as a single water conservation facility by the Bureau of Reclamation;

Whereas, the Department of the Navy and Fallbrook have agreed upon a plan for allocation of the water developed by such a project;

2

1    Whereas, the Department of the Navy and Fallbrook desire that

2    the Bureau of Reclamation proceed with its studies to determine the

3    feasibility of a project to implement that physical solution; and

4    Whereas, the United States and Fallbrook are the owners of the

5    water rights in the Santa Margarita River system and the appropria-

6    tion permits and licenses described and decreed to each of them,

7    respectively, in the Modified Final Judgment and Decree entered on

8    April 6, 1966, in the case entitled United States v. Fallbrook Util-

9    ity District, et al., No. 1247-SD-C, in the United States District

10    Court for the Southern District of California, Southern Division,

11    (now U. S. District Court for the Southern District of California).

12    In addition, the United States is the holder of Permit No. 15,000

13    issued by the State Water Rights Board of the State of California

14    on November 18, 1965.

15    NOW, THEREFORE, in evidence of the understandings and agree-

16    ments which have been reached, the United States and Fallbrook,

17    subject to the various approvals hereinafter provided for, do here-

18    by declare such understandings and agreements to be as follows:

19    1.  The United States will prosecute a Feasibility Study of the

20    project recommended in the Reconnaissance Report of June 1966, on

21    the Santa Margarita Project, and Fallbrook will lend any necessary

22    technical or other similar assistance which may be requested of it

23    by the United States.

24    2.  On the condition that the project shall have been determined,

25    upon completion in due form of such feasibility study, to be finan-

26    cially, economically, and engineeringly feasible, the signatory

27    officers of the United States and their representatives, subject to

28    the requisite clearance within the Executive Branch of the Govern-

29    ment, will cooperate with Fallbrook in attempting to obtain

30    appropriate congressional authorization for such project, including

31    the initiation and sponsorship of requests consistent with Executive

32    policy requirements for new legislation or the modification of

3

1   existing legislation, and, further, within the established Execu-
2   tive Policy guidelines referred to above, to seek to obtain the
3   authorization for and the appropriation of funds sufficient to
4   construct and operate the recommended project as it is generally de-
5   scribed in the Reconnaissance Report, as that general description
6   may be modified by this agreement and by the Feasibility Report
7   hereinabove provided for.
8   3.   Upon receipt of the necessary authorizations and the appropria-
9   tion of funds for the project, the United States, acting through
10  the Bureau of Reclamation, will, following execution by Fallbrook
11  of a reclamation construction and repayment contract and such other
12  contracts as may be required by law, initiate and prosecute the
13  construction of the project to its completion and will operate it
14  under the authority of Section 9 of the Reclamation Project Act of
15  1939, the act authorizing the project, and such other provisions of
16  existing law as may be applicable or such other authority as
17  Congress may provide for the construction and operation of this
18  project; provided, that Fallbrook Public Utility District will share
19  in the reimbursable costs of the project construction, operation,
20  maintenance and replacement on the basis of an equitable allocation
21  of costs as determined by the Secretary of the Interior using the
22  standard allocation procedure.   It is the desire of the parties to
23  this agreement that the Interior-Fallbrook agreements for Fallbrook's
24  sharing in the said reimbursable costs of the project be water-
25  service contract type arrangements.
26  4.   Fallbrook agrees to transfer to the United States such of the
27  property it now holds for a reservoir at its so-called Lippincott
28  site as may be required for construction and operation of the proj-
29  ect; provided, that Fallbrook shall not be required to transfer such
30  property at a value less than its appraised fair market value, as
31  of the date of approval of this agreement by the Court as provided
32  in Section 21, unenhanced by any increase in value attributable to

4

the project.

5.   Operation of the project to be constructed under this agreement shall be commenced at such time as the Secretary of the Interior, after giving notice to the Department of the Navy, Fallbrook and any other affected parties, shall determine that sufficient of the project has been completed and is operable and that operation of the project is feasible.   Project water shall be allocated 60 percent to the United States and 40 percent to Fallbrook to be determined on a continuing basis by the project operator after consultation with Fallbrook and the designee of the Secretary of the Navy, provided, that in every water year the United States may first use so much as necessary of the project water to satisfy its rights to use the waters of the Santa Margarita River system within the Naval Enclave as those rights are determined by the above referred to Modified Final Judgment and Decree entered on April 6, 1966, in the said case entitled <u>United States</u> v. <u>Fallbrook Public Utility District, et al.</u>, No. 1247-SD-C, or as such Modified Final Judgment and Decree may be further modified from time to time.   The rights of the United States referred to in the foregoing proviso are more specifically described as follows:

a.   Its riparian rights to use the waters of the Santa Margarita River system upon its lands within the Naval Enclave, as those rights are presently defined in Interlocutory Judgment No. 37, as amended and as incorporated into said Modified Final Judgment and Decree, and as the same may hereafter be further defined by further modification of said Modified Final Judgment and Decree;

b.   Its Lake O'Neill right, as defined in Interlocutory Judgments No. 24 and 24a, as incorporated into said Modified Final Judgment and Decree, and as the same may hereafter be further defined by further

1   allocation provisions of this agreement, or included within the
2   water so allocated, and the right to use the same shall belong
3   solely to the United States; provided, however, that such water
4   shall be taken into account in determining the total amount of
5   water available to the United States in connection with the provi-
6   sions of Section 5 which authorize short-run over-allocations of
7   water to the United States when its allocation of project water
8   would be inadequate to satisfy its needs under the rights specified
9   in the proviso in said Section 5.
10  7.  Water taken under Permit No. 12599 (Yackey) issued by the State
11  Water Rights Board of the State of California, shall be included
12  within, rather than in addition to, the total amount of water avail-
13  able to Fallbrook under the 40 percent allocation provided by this
14  agreement.
15  8.  Fallbrook shall deliver potable water through its water dis-
16  tribution system (including any extension thereof made necessary
17  by this section of this agreement) to satisfy the requirement of
18  the Naval Weapons Station, Fallbrook.  In return for such service,
19  the United States shall compensate Fallbrook for the handling and
20  treatment costs of such water, such compensation to be established
21  by separate agreement between the Department of the Navy and
22  Fallbrook.  Said deliveries shall commence at a time mutually
23  agreeable to the Department of the Navy and Fallbrook.  The water
24  delivered by Fallbrook shall be a part of the water allocated to
25  the United States and shall not be charged against Fallbrook's
26  allocated share.
27  9.  If the Secretary of the Navy or his designee shall at any time
28  determine that any portion of the water allocated to the United
29  States is excess to the requirements of the United States, as those
30  requirements may be defined by the Secretary or his designee, the
31  excess water shall be made available for sale first to Fallbrook,
32  and if Fallbrook does not desire to purchase all or any part of

7

1    such excess, it may be made available for sale to the DeLuz Heights

2    Municipal Water District.  If the DeLuz Heights Municipal Water

3    District does not desire to purchase all or any part of such ex-

4    cess, then it may be made available for sale to such qualified

5    parties as the Secretary of the Interior or his designee shall des-

6    ignate, provided, that sales and deliveries of such waters shall be

7    in accordance with authorizations under applicable federal or state

8    laws, regulations, licenses or permits in effect at the time of the

9    proposed sale or delivery.

10   10.  If Fallbrook shall determine that any portion of the water al-

11   located to Fallbrook is excess to Fallbrook's requirements, such

12   excess water shall be made available first to the United States,

13   and if the United States does not desire to purchase all or any

14   part of the excess, it may be offered for sale first to DeLuz

15   Heights Municipal Water District.  If DeLuz Heights Municipal Water

16   District does not desire to purchase all or any part of such excess,

17   then it may be made available for sale to such qualified parties as

18   may be designated by the Secretary of the Interior or his designee,

19   provided, that sales and deliveries of such waters shall be in ac-

20   cordance with authorizations under applicable federal or state laws,

21   regulations, licenses or permits in effect at the time of the pro-

22   posed sale or delivery.

23   11.  If at any time, or from time to time, capacity is determined

24   to be available in the project facilities in excess of the total

25   amount of capacity which is required for the regulation and stor-

26   age of Santa Margarita River water, for flood control, and for other

27   project purposes, all as may be determined by the Secretary of the

28   Interior or his designee, the availability of such excess capacity

29   for the storage of imported water shall be certified to the

30   Secretary of the Navy or his designee and to Fallbrook and shall be

31   allocated to the United States and Fallbrook on the basis of 60

32   percent and 40 percent, respectively.  If at any time either party

8

Bureau of Reclamation's Feasibility Report, or as provided by Congress. Such charges shall remain fixed for the period of the repayment contract but will thereafter be subject to renegotiation if and as provided by law; provided, that title to the project facilities shall remain in the United States unless Congress shall provide otherwise. The payment by or on account of Fallbrook of charges thereunder shall not affect the title of the United States to the project facilities. Receipt by the United States of charges for project water or the storage of imported water by third persons not party to this agreement, likewise shall not affect the title of the United States to the project facilities. '

14. Subject to modification in the repayment contract:

    a. The proceeds from charges to Fallbrook for project water and storage space for imported water allocated to it shall be credited against Fallbrook's current obligation to the United States.

    b. The proceeds from charges for the use by Fallbrook or third parties of project water or storage capacity allocated to the United States shall be covered into miscellaneous receipts of the Treasury of the United States unless otherwise provided by law.

    c. The proceeds received by Fallbrook from charges to the United States or to third parties for project water and storage space for imported water allocated to Fallbrook shall be transmitted to the United States and shall be credited against Fallbrook's obligation to the United States for the last year of the repayment contract, and if such proceeds exceed the total obligation for that year, against the obligation for the next preceding years beginning with the next-to-the-last year and continuing forward to the present.

15. For the purpose of determining the quantities of water in

storage which are delivered or are deliverable to any party from time to time the following principles shall apply:

    a.  Evaporation losses of water in storage shall be charged to the respective parties in direct proportion to the volume of water in their respective storage accounts.

    b.  In the event of spills past DeLuz dam, imported water then in storage will be deemed to have spilled before any project water spills and such spills shall be charged to the parties for whom imported water is then being held in proportion to the respective quantities of imported water being held for them.

    c.  In the event of spills of project water past DeLuz dam, the water so spilled shall be assigned to the respective parties in direct proportion to the volume of project water in their respective storage accounts when the spill or spills occur.

    d.  Seepage past DeLuz dam into the Santa Margarita Coastal Basin, as determined by the project operator, shall be charged against the United States' allocation of project water.

16.  Variations in the quality of the water stored in or impounded by the project reservoirs shall not be taken into account in allocating water under this agreement, and neither shall variations in the quality of water allocated or delivered to a party to this agreement give that party any right of action or claim against the other or the project operator; provided, that nothing in this section shall preclude either the Navy or Fallbrook from bringing an action against the other for acts or omissions which result in degradation of water quality to its injury.

17.  Notwithstanding any other provision of this agreement or

1  anything which might reasonably be implied or inferred therefrom,
2  nothing herein shall be construed to affect in any manner any
3  rights to the use of water from the Santa Margarita River or its
4  tributaries which the United States holds in any capacity, whether
5  as owners or trustee or otherwise, of lands in the Santa Margarita
6  River watershed other than those rights which it holds in connec-
7  tion with, or which are exercisable with respect to, its lands
8  which are located within the Naval Enclave.  With respect to the
9  rights of the United States and Fallbrook referred to in the last
10  recital hereof on page 3, nothing in this agreement shall be con-
11  strued as a transfer of or an attempt to transfer such rights or
12  any part thereof between the parties.
13  18.   The Secretary of the Interior shall have the power to adopt
14  and apply reasonable rules and regulations for the operation of the
15  project facilities so long as those rules and regulations are not
16  inconsistent with this agreement, any further agreements which the
17  parties may make for the purpose of specifying the manner and mode
18  of operation of the project facilities, and the act or acts of
19  Congress authorizing construction and operation of the project;
20  provided, that if any of the rules and regulations so adopted are
21  considered to be unreasonable or inconsistent with this agreement,
22  such further agreements of the parties or such act or acts of
23  Congress by either Fallbrook or the Secretary of the Navy, judicial
24  review of such rule or regulation shall be had by proceedings in
25  the United States District Court for the Southern District of
26  California under its continuing jurisdiction in the Fallbrook case
27  to which reference has previously been made in this agreement.
28  19.   Fallbrook and the United States recognize that this agreement
29  does not deal with all matters respecting the use and operation of
30  the project facilities which should eventually be subjects of an
31  agreement or agreements between them.  In recognition of that fact,
32  the parties agree to negotiate in good faith toward mutually

12

1    acceptable solutions to such subjects.

2    20.  The United States may undertake such action by way of nego-

3    tiation, litigation, or otherwise, as in its sole discretion if

4    considers appropriate to protect, exercise, more precisely define

5    or modify the rights and obligations of the United States as

6    against Rancho California, the present owner of the former Vail

7    Ranch, and its successors in interest.

8    21.  This memorandum and agreement shall be executed on behalf of

9    Fallbrook and by the undersigned officers on behalf of the United

10   States.  Upon such execution, this instrument shall be presented

11   to the United States District Court for the Southern District of

12   California for approval and incorporation into the decree in the

13   Fallbrook case following such proceedings as the Court may deter-

14   mine appropriate in the circumstances.  Upon approval by the Court,

15   this agreement shall become fully effective, subject to approval

16   by Congress of the project contemplated herein, by its authori-

17   zation and appropriation of funds for the project; provided, that

18   if the reclamation construction and repayment contract and other

19   agreements required by law are not executed by Fallbrook, this

20   agreement shall be void at such time as Fallbrook expresses in

21   writing its unconditional and final refusal to execute such con-

22   tract, or after the expiration of ten years from the date of exe-

23   cution hereof, whichever occurs earlier.  If either the United

24   States or Fallbrook concludes that the approval of the Water

25   Resources Control Board of the State of California, or its succes-

26   sor agency, is either necessary or desirable fully to protect

27   rights under permits or licenses issued by the State of California

28   which may be utilized or relied upon in connection with the project,

29   the parties agree that they will cooperate to obtain such approval,

30   it being understood that in any such proceedings, the United States

31   may, as it did in proceedings precedent to the issuance of Permit

32   No. 15,000, appear in the interest of comity only

13

without acquiescing in the State's jurisdiction over it with re-
spect to the project.

22.  Unless the context clearly indicates a different meaning was
intended, these definitions shall be used in construing the fol-
lowing terms:

     a.  The term "project facilities" shall mean the
physical facilities which are necessary to the success-
ful and reasonable operation of the water conservation
and management facility envisioned by this agreement
and the subsequent Feasibility Report on the Santa
Margarita Project;

     b.  The term "project water" shall mean all inflow
into the project facilities except water imported for
storage in the project, and shall not include that
portion of the water of the Santa Margarita River
which originates or is contributed to that river at
points below the lower (DeLuz) reservoir;

     c.  The term "water year" shall mean the period
from October 1st of each calendar year through September
30th of the next calendar year;

     d.  The term "imported water" shall mean water
produced outside the Santa Margarita River watershed
and brought to the Santa Margarita River watershed by
aqueducts, pipelines, or other artificial means;

     e.  The term "Naval Enclave" means the area de-
scribed in Finding of Fact No. 1 in Interlocutory
Judgment No. 37, included in and incorporated into
the Modified Final Judgment and Decree in the Fallbrook
case..

     f.  The term "Fallbrook case" means the case of
United States v. Fallbrook Utility District, et al.,
No. 1247-SD-C in the United States District Court for

1     the Southern District of California.

2  23.  No assignment or transfer of this agreement or any part or

3  interest therein shall be valid unless approved by the Secretary of

4  the Interior and the Secretary of the Navy.

5  24.  No Member of or Delegate to Congress or Resident Commissioner

6  shall be admitted to any share or part of this agreement or to any

7  benefit that may arise herefrom; but this restriction shall not be

8  construed to extend to this agreement if made with a corporation or

9  company for its general benefit.

10  25. Notice

11          a.   One copy each of any notice authorized or

12      required to be given to the United States shall be

13      delivered to the Commanding General, Marine Corps Base,

14      Camp Pendleton, California 92055, to the Attorney

15      General of the United States, Department of Justice,

16      Washington, D. C. 20530, and to the Secretary of the

17      Interior, Department of the Interior Building,

18      Washington, D. C. 20240.

19          Any notice authorized or required to be

20      given to Fallbrook shall be delivered to the business

21      office of the Fallbrook Public Utility District,

22      Mission Road and Santa Margarita Drive, Fallbrook,

23      California 92028.

24          b.   The designation of the addressees or the

25      addresses given above may be changed by notice given

26      in the manner provided in this section.

27

28

29

30

31

32

15

1    IN WITNESS WHEREOF the undersigned Attorney General and the
2  Secretaries of the Interior and of the Navy have executed this
3  memorandum of understanding and agreement in behalf of the United
4  States, and the Fallbrook Public Utility District, by authority of
5  its Board of Directors, has caused the same to be executed in its
6  behalf by the President of its said Board and attested by its
7  Secretary.

8                        UNITED STATES OF AMERICA

9

10                    By _____
                          Attorney General

11                    _____
12                        Secretary of the Interior

13                    _____
                          Secretary of the Navy

14

15

16                    FALLBROOK PUBLIC UTILITY DISTRICT

17                    By _____
                          President of the Board of Directors

18  ATTEST:

19  _____
20        Secretary

21

22

23

24

25

26

27

28

29

30

31

32

                              16

RESOLUTION NO. __947__

WHEREAS the FALLBROOK PUBLIC UTILITY DISTRICT
has been negotiating with representatives of the ATTORNEY
GENERAL; the SECRETARY OF THE INTERIOR; and the SECRETARY
OF THE NAVY of the UNITED STATES OF AMERICA relative to the
execution of an Agreement by all of the said parties
intended to establish an apportionment of the waters of
the Santa Margarita River between the UNITED STATES OF
AMERICA (Navy Department) and the FALLBROOK PUBLIC UTILITY
DISTRICT and to provide for the joint efforts of the
parties for the construction of a two dam project on the
said River; and

WHEREAS, on September 19, 1967, a final
draft of the proposed Memorandum of Understanding and
Agreement was approved by representatives of all parties;
and

WHEREAS, FALLBROOK PUBLIC UTILITY DISTRICT
wishes at this time to indicate its formal approval and
to authorize the execution of the said Agreement and to
thereafter forward the same for execution by the other
agencies involved;

NOW, THEREFORE, BE IT RESOLVED that the
Memorandum of Understanding and Agreement, a copy of
which is attached to this Resolution be and the same is
hereby approved by the Board of Directors of the FALLBROOK
PUBLIC UTILITY DISTRICT; and

BE IT FURTHER RESOLVED that the President

- 1 -

RESOLUTION NO. _____ 949 _____, cont.

and Secretary of the Board of Directors of the FALLBROOK
PUBLIC UTILITY DISTRICT are hereby authorized to execute
the same on behalf of said District.

     I hereby certify that the foregoing is a
true copy of a RESOLUTION unanimously adopted by the
Board of Directors of the FALLBROOK PUBLIC UTILITY
DISTRICT at its regular meeting, October 9, 1967.

          *Katherine Enigenburg*
          KATHERINE ENIGENBURG
          SECRETARY

Approved as to
form and legality.
*George R. Bachle*
      Attorney

- 2 -