RONALD ALBU
MICHAEL D. COX
GEORGE FORMAN
BRUCE R. GREENE
California Indian Legal Services
1860 So. Escondido Blvd.,P.O. Box 1868
Escondido, California 92025
Telephone: (714) 746-8941
Attorneys for the Pechanga Band of Mission Indians

FILED

NOV 26 1974

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY Myra Robeson DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>PECHANGA BAND OF MISSION INDIANS,<br>Plaintiff-Intervenor,<br>v.<br>FALLBROOK PUBLIC UTILITY DISTRICT, et. al.,<br>Defendants. | CASE NO. 1247-SD-C<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE |

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the Pechanga Band of Mission Indians has filed a motion to intervene as a party to the above-entitled action claiming an interest relating to the property which is the subject of this action and is so situated that the disposition of this action may as a practical matter impair or impede its ability to protect their interest in that such interest is not adequately represented by the present parties to this action.

Intervention as of Right

Moore states the requirements for non-statutory intervention as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure as follows: "The application must (1) be timely, (2) show an interest in the subject matter of the action, (3) show that the protection of the interest may be impaired by the disposition of the action, and (4) show that the interest is not adequately represented

by an existing party." 3B J. Moore's Federal Practice ¶ 24.09-1 [1], at 24-284, 285 (2d Ed. 1972).

It is Intervenor's contention that this motion is timely. A determination as to whether an application to intervene is timely does not depend solely upon the amount of time which has elapsed since the institution of the original action. Wooten v. Moore 400 F.2d 239 (4th circ. 1968), Cert. denied, 393 U.S. 1083. The trial court may take into account all the circumstances of the case. SEC v. Bloomberg, 299 F.2d 315, 320 (1st Cir. 1962). Furthermore, it has been suggested that "the most important factor to be considered by the trial court," "is whether any delay in moving for intervention will prejudice the existing parties to the case." 2 Barron & Holtzoff, Federal Practice and Procedure §594, at 364 (Wright ed. 1961). This principle was cited and applied by the Court in Smith Petroleum Service, Inc. v. Monsanto Chemical Co., 420 F.2d 1103 (5th Cir. 1970).

Although the Pechanga Band is petitioning to intervene almost 24 years after the filing of the original action, it is important to look closely at the nature of this most complex litigation and the primary purpose for which the Pechanga Band moves for intervention.

The Court, through a series of some 45 interlocutory judgments segment by segment adjudicated the rights of the parties to use of the Santa Margarita River Stream System. The Court entered its final judgment and decree on May 8, 1963. On April 6, 1966, the Court entered a modified final judgment and decree to conform to the Court of Appeals decision dated May 26, 1965. Though cataloging the water rights of the various parties to this cause, the Court expressly stated that it,

> ...did not purport or attempt to apportion the waters of the said stream system or the uses thereof between the parties to the cause.

Order Approving Memorandum of Understanding, entered June 27, 1968.

The Court went on to state:

> It has long been recognized by the Court, the United States of America and the Fallbrook Public Utility District that the aforesaid modified final judgment and decree leaves unresolved many serious problems with respect to the use of the waters of the Santa Margarita River Stream System and the division of these waters between the United States and Fallbrook Public Utility District under their respective water rights.

Recognizing that serious problems still remained unsolved, the Court ordered that it would (1) retain continuing jurisdiction of this action as to the use of all surface waters and all underground waters within the watershed of the Santa Margarita and (2) all present and future appropriative rights which may conflict with the exercise of any prior vested right. See, Modified Final Judgment and decree, page 14-15, entered April 6, 1966.

The fact that the Court has retained jurisdiction and has from time to time modified its original final judgment differentiates this action from the standard case where intervention is denied after final judgment. The primary reason for denial in these cases is that reopening after final judgment would delay or prejudice those parties who diligently pressed their claims and have relied on the Court's decree. No such situation exists here. Though the Pechanga Band of Mission Indians has not been a party to this action, the United States, as holder of the legal title to all the lands and rights to the use of water of the Pechanga Indian Reservation, has adjudicated the Band's equitable rights. See Interlocutory Judgment No. 41, entered November 8, 1962.

Intervenor recognizes that it is bound by all findings and orders of this Court and by its intervention does not wish to re-litigate or reverse those findings and orders. The primary concern of the Pechanga Band is enforcement of the duties of the Watermaster as elaborated in Interlocutory Judgment No. 45, and eliminating problems in the proposed Memorandum of Understanding and Agreement regarding Lake Sherman. The Intervenor is concerned with the

present and the future problems which may arise among the water users on the Santa Margarita Stream System. Thus intervention clearly will not delay or prejudice the parties to this action.

The second requirement that Intervenor have an interest in the subject matter is also satisfied since the Pechanga Band's complaint in Intervention claims equitable ownership to rights to the use of the waters of the Santa Margarita River Stream System, held in trust by the United States for the benefit of the Pechanga Band of Mission Indians. The question of what constitutes an interest in the subject matter was dealt with in Nuesse v. Camp, 385 F.2d 694 (D.C. Cir. 1967). Thus the Court examined the policies behind the interest requirement and concluded that it was "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." 385 F.2d at 700. Even a narrower view of the "interest" requirement is met by the Intervenor. The narrow view is stated in Toles v. United States, 371 F.2d 784 (10th Cir. 1967) as a "specific legal or equitable interest in the chose." The tribe is claiming an equitable interest in the property which is the subject of this action.

The third requirement that the Pechanga Band's interest may be impeded or impaired by a decision without the tribe as a party is also satisfied. Moore states that if the applicant for intervention will or may be bound under the principles of res judicata he is within the rule. 3B J. Moore's Federal Practice 24.09-1[3], at 24-312. Clearly intervenor's rights to the use of the Santa Margarita are before this Court and consequently they are bound by its decree.

The fourth requirement regarding adequate representation by an existing party is also satisfied. Two leading commentators on federal practice have said that inadequacy of representation is or may be shown by proof of collusion between the representative

having or representing an interest adverse to the intervenor or by the failure of the representative in the fulfillment of his duty. 4 Moore's Federal Practice §24.08 pp. 38-39; 2 Barron & Holtzoff, Federal Practice and Procedure (Wright Revision), §597, pp. 381-82.

It is intervenor's contention that the United States as representative of the interests of both the Pechanga Band and the United States Navy is caught in a conflict of interest. Presently the Navy's interests are adverse to that of the intervenor's. The United States Navy has expressed its approval of the Memorandum of Understanding and Agreement on operation of Lake Skinner while the Interior Department has refused to sign the memorandum. Though the Memorandum of Understanding and Agreement has been rewritten to exclude the United States as a party because the Department of the Interior refused to ratify it, the Justice Department, as counsel for the United States, nevertheless, has indicated its intention to voice its approval and adoption as being in the best interests of the United States. The United States, through its counsel is clearly representing an interest adverse to that of the Pechanga Band, in violation of its obligations as trustee for the land and water rights of this Indian Band.

In addition, the United States as representative of both the Pechanga Band and the United States Navy has placed itself in a position whereby it must represent interests of its clients which may be antagonistic. The United States Navy and the Pechanga Band are both water users of a River Stream System which may be over appropriated. If this is the case, the United States would be hard pressed to adequately represent the competing interests. See <u>Wilderness Society v. Morton</u>, 463 F.2d 1261 (D.C. Cir. 1972).

Finally, it is Intervenor's position that the United States is not fulfilling its duty as representative of the Pechanga Band. In June of 1972, the area Director of the Bureau of Indian Affairs for the State of California wrote a letter to the Commissioner of

Indian Affairs in Washington recommending that the Secretary of the Interior demand that the Justice Department stop all pumping by Rancho California of the groundwater in violation of the 1940 Stipulated Judgment until such time as the Pechanga Band and the Interior Department could document evidence that Rancho California was not affecting the groundwater rights of the Pechanga Band. (Letter from William Finale to Commissioner of Indian Affairs, June 8, 1972. Attached as Appendix "A"). The Department of Justice has continually taken the position that no action on its part will be forthcoming until the Pechanga Band carries the burdon of showing proof of damage. Intervenor's believe that data required to be collected and diseminated by the Watermaster pursuant to Interlocutory Judgment No. 45 and incorporated into the Final Judgment would provide the necessary information needed by the Pechanga Band to show how it has been damaged but the United States has failed to take action to see that the Watermaster carry out his duties.

The United States claims legal title in trust for the Band. Both assert that the Santa Margarita River is being over-appropriated. Since this motion clearly falls within the class of cases under which intervention may be permitted under Rule 24(b), the only consideration remaining under 24(b) is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. As noted above, this motion has been timely filed and no delay and prejudice will be caused by this intervention.

Permissive Intervention

In addition to the protection offered the Band by allowing intervention is the interest in judicial economy and efficiency to be joined by determining common questions of law and fact in one action rather than several actions. Federal Rule 24(b) permits intervention in the discretion of the Court, "When an applicant's claim or defense and the main action have a question of law or fact

in common." The claim of the Pechanga Band of Mission Indians against the defendants in this action raises identical legal and factual questions as the claim of the United States against the defendants. The Pechanga Band claims an equitable interest in the right to the use of waters of the Santa Margarita River and the United States claims legal title to those same water rights in trust for the Pechanga Band. Both parties assert that the Santa Margarita River is being over-appropriated. Since this motion clearly falls within the class of cases under which intervention may be permitted under Rule 24(b), the only consideration remaining under 24(b) is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. As noted above, this motion has been timely filed and no delay or prejudice will be caused by this intervention.

Further, it is interesting to note that former President Richard M. Nixon was aware of the general problems of the United States' rôle as the legal trustee for the land and water rights of American Indians. In a message to Congress in which the former President established his Indian policy, he called for the establishment of an Indian Trust Counsel Authority to be independent of the Department of Interior and the Department of Justice. The purpose of the Trust Counsel Authority would be to protect the rights of American Indians to their natural resources. He stated:

> Every trustee has a legal obligation to advance the interests of the beneficiaries of the trust without reservation and with the highest degree of diligence and skill. Under present conditions, it is often difficult for the Department of the Interior and the Department of Justice to fulfill this obligation. No self-respecting law firm would ever allow itself to represent two opposing clients in one dispute; yet the Federal government has frequently found itself in precisely that position. There is considerable evidence that the Indians are the losers when such situations arise. More than that, the credibility of the Federal government is damaged whenever it appears that such a conflict of interest exists.

President Nixon's Message to Congress, July 8, 1970. For one example of the conflict of interest problem, see Pyramid Lake Tribe

of Paiute Indians v. Morton, 354 F. Supp. 252 (D.C.D.C. 1972).

CONCLUSION

The Pechanga Band of Mission Indians has shown that its application for intervention under Rule 24 is timely, that it has an interest in the subject matter of the action, that its ability to protect its property interests would be impaired or impeded if it were not a party to this action, and finally that its interest is not adequately represented by an existing party. Therefore, the Pechanga Band has established its right to intervene as of right under Rule 24(a), and has further shown that it satisfied the requirements for permissive intervention based on common questions of law and fact under Rule 24(b). For these reasons, the Pechanga Band of Mission Indians' Motion to Intervene should be granted.

Dated: November 25, 1974

Respectfully submitted,

RONALD ALBU
MICHAEL D. COX
GEORGE FORMAN
BRUCE R. GREENE
California Indian Legal Services

[signature]
by RONALD ALBU

RECEIVED ... 1 2 1972

IN REPLY REFER TO:
Land Operations
Pechanga 341.7

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
Sacramento Area Office
2800 Cottage Way
Sacramento, California 95825

JUN 8 1972

Commissioner of Indian Affairs

Washington, D. C. 20242

Sir:

The Pechanga Band of Mission Indians on May 21, 1972, passed two resolutions in which it again requested the United States to protect its water rights. One resolution petitioned the Secretary of the Interior to withhold approval of the Santa Margarita Project until adequate provisions are made for the protection and development of the Pechanga Band's Winters Doctrine Rights. Our office supports the Band's position, as was stated in our letter of January 26, 1971, to the Regional Director, Region 3, Bureau of Reclamation. A copy of the letter is enclosed.

The second resolution is a petition to the Attorney General to reopen the case of United States v. Fallbrook to restructure the decree in accordance with the instructions from the Ninth Circuit Court of Appeals to take whatever steps are necessary to prevent further depletion of the Murrietta-Temecula groundwater basin. If no response is made to this petition by July 1, 1972, the resolution authorizes California Indian Legal Services to institute suit if necessary against the Attorney General and the Secretary of the Interior to protect the Winters Doctrine rights of the Pechanga Band. The California Indian Legal Services transmitted this information to us by letter of May 22, 1972. A copy of the letter is enclosed.

The protection of the Band's water rights was the subject of numerous meetings and conferences with representatives of the Department of Justice, Office of the Solicitor and your office. On January 20, 1971, the Assistant Attorney General wrote to the Solicitor and stated if the Band in cooperation with the Bureau of Indian Affairs could take certain actions which produced evidence that the pumping activities of Rancho California are adversely affecting the groundwater supply of the Pechanga Reservation, he would give serious consideration to a request for appropriate action to protect Pechanga Reservation's ground water supply.

EXHIBIT A

The actions suggested by the Office of the Solicitor and reiterated in the Justice letter were to renovate the pump and well on the Kelsey Tract, drill and develop for domestic use on the main reservation a well which would demonstrate the effect of pumping by Rancho California on the groundwater and establish a method of measuring and recording the wells in the vicinity of the reservation.

We requested funds to drill a test well on the Pechanga Reservation for the dual purpose of monitoring the groundwater table and for determining the feasibility of drilling a production well. Such a well could furnish evidence of infringement upon the Band's water rights. If a producing well is found to be feasible, the Band will then know that water is available for development of its reservation. We anticipate funds for the test well will be available in F.Y. 1973.

Funding was made available by this office for the Pechanga Band to enter into a contract with a land planning firm. This study is currently in progress. With the completion of the study and the test well, the Band will then have the information to plan the orderly development of both its land and water.

The U. S. Public Health Service has drilled several wells to develop a domestic water supply on the reservation. We understand that those drilled near the center of the reservation were unsuccessful but the one near the West boundary may be developed into a producing well. We do not yet have complete data on these wells but we expect the data to be made available to us. If funds are made available, we anticipate the test well will be drilled early in F. Y. 1973. With the data thus made available, it should be possible for an agency such as U. S. Geological Survey or the Marine Corps Base at Camp Pendleton to evaluate the effect of the pumping on the Band's water rights.

This process to establish satisfactory evidence that the pumping of the groundwater basin by others is depleting the supply available for the Pechanga Band will take several years. The members of the Pechanga Band are greatly concerned that their groundwater will be irretrievably lost to them by the time we obtain the documentation Justice has stated will be needed to develop a case. We are in complete agreement with the Band. The Justice Department is aware that for years Rancho California has been pumping in violation of Section 10 of the 1940 Stipulated Judgment.

Our recommendation is that the Secretary demand Justice to stop all pumping of the groundwater now in violation of the existing decree and stipulation until such time as the Pechanga Band and the Secretary have documentary evidence that the pumping by Rancho California is not affecting the groundwater rights of the Pechanga Band. The United

EXHIBIT A

States as trustee for these water rights has no alternative!

Sincerely yours,

(Sgd.) William E. Finale

Area Director

Enclosures (2)

CC:
CILS, Escondido

EXHIBIT A

RECEIVED JUN 2 3 1972

UNITED STATES DEPARTMENT OF JUSTICE

WASHINGTON, D.C. 20530

June 20, 1972

Address Reply to the Division Indicated and Refer to Initials and Number

DRW:DWR
90-1-2-478

AIR MAIL

David C. Crosby, Esquire
California Indian Legal Services
1080 West Washington Avenue
P. O. Box 1868
Escondido, California 92025

Dear Mr. Crosby:

This is in response to your letter of May 22, 1972, to the Attorney General requesting that the United States take immediate action to protect the water rights of the Pechanga Band of Mission Indians. This matter was discussed between representatives of the Department of Justice, the Department of the Interior, and representatives of the Pechanga Band at two meetings at Camp Pendleton in 1970. We advised the Department of the Interior and the Band that legal action based on damage to the water rights of the Pechanga Band as a result of Rancho California's activities required evidence of such damage and causation by the questioned activities. We advised then, and we continue of the view, that the so-called Stipulated Judgment of 1940 would not be adequate to support a claim of invasion of rights of the Pechanga Reservation. It was our understanding that representatives of the Band and of the Department of the Interior intended to undertake a program for the development of the evidence needed to proceed with the action the Pechanga Band was requesting.

Since then we have not been advised of the evidence developed to establish that the Pechanga underground water

EXHIBIT A

rights are being damaged or threatened with damage. If you and the Department of the Interior do have such evidence available at this time, we urge that you take appropriate steps in cooperation with Interior to have the same made available to us in order that this Department can make a determination of the appropriate action, if any, to be taken in the circumstances.

Sincerely,

Kent Frizzell
Assistant Attorney General
Land and Natural Resources Division

By: [signature]
David R. Warner
Chief, General Litigation Section

EXHIBIT A