WILLIAM BRANIFF
United States Attorney

PATRICK BARRY
LAUREN N. SOLL
Attorneys, Department of Justice
Environment and Natural
  Resources Division
Indian Resources Section
P.O. Box 44378
Washington, D.C. 20026-4378
(202) 272-5794

CSB. No. 147988


FILED
DON HENDRIX, CLERK
SEP - 4 1992
U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>FALLBROOK PUBLIC UTILITY DISTRICT,<br>a public service corporation of<br>the State of California, et. al.,<br><br>　　　　　　　Defendants. | CIVIL NO. 1247-SD-T<br><br>UNITED STATES'<br>OBJECTIONS TO<br>WATER MASTER'S<br>ANNUAL REPORT FOR<br>WATER YEAR 1990-1991<br><br>DEPT: Honorable Gordon<br>　　　　Thompson, Jr. |

I
INTRODUCTION

The United States hereby submits its objections to the "Santa Margarita River Watershed Annual Watermaster Report Water Year 1990-91" (hereinafter "Report"), which was submitted to this Court on August 4, 1992.



## II

## DISCUSSION

The United States registers three main objections to the Report:

(1) the failure to state clearly that Rancho California Water District's (RCWD) use of water for municipal and commercial/industrial purposes is unauthorized under State Water Resources Control Board (SWRCB) Permit 7032;

(2) the failure to report the magnitude of RCWD's unauthorized use even though the necessary information is readily available; and

(3) the inaccurate report of the percentage of extractions from the younger alluvium, the recharge to the older alluvium in the Pauba Valley, and the depth of the younger alluvium in the Murrieta Valley, which inaccuracy helps to obfuscate the extent of RCWD's unauthorized uses identified above.

We briefly address each of these points below.

A.  <u>RCWD's Unauthorized Uses</u>

Despite repeated requests for inclusion, the Watermaster has refused to state clearly in Section 8 - "Unauthorized Water Use" - of the Report that RCWD has been making certain substantial extractions and uses of water that are unauthorized under its SWRCB permit.  This unauthorized use has

FORM OBD-183
MAR. 83

been recognized by the State Water Resources Control Board. See Attachment 1 (letter from the State Water Resources Control Board).

Permit 7032 allows RCWD to impound water behind Vail dam and to release it for recharge, from which it then extracts water via wells. See Attachment 2. RCWD's permit only allows the use of this recharge water for irrigation purposes and domestic uses incidental to farming operations. Despite the limitations of the permit, RCWD for a long period of time has expanded its use of water to municipal and commercial/industrial purposes as well.[1] Although the Report appears to contain a few scattered references to these uses, it wholly fails to identify them as unauthorized or otherwise improper.[2]

Section 8 of the Report is specifically dedicated to report "Unauthorized Water Use". Yet the section is notably devoid of any report of RCWD's unauthorized use of the Vail recharge water for municipal and commercial/industrial uses. In Section 8.5, on page 54 of the Report, the Watermaster acknowledges that RCWD's Permit 7032 for its Vail Dam operations needs amendment. The section does not state the reason, however,

---

[1] Furthermore, we note that RCWD additionally extracts other water from the younger alluvium without any recognized right at all, and it produces groundwater from the older alluvium in derogation of Camp Pendleton's vested rights.

[2] We further note that the Report should align the categories of water use relevant to the SWRCB permit to those categories used in the permit itself. This alignment would make the information presented clearer and more accessible for analytic purposes.

- 3 -

FORM OBD-183
MAR. 83

for the necessary amendment - that RCWD engages in unauthorized municipal and commercial/industrial uses of Vail water.

Elsewhere in the Report, in Section 7.2, page 41, the Watermaster simply reports that RCWD is no longer extracting and using Vail Dam recharge exclusively for the purposes authorized in Permit 7032. In fact, although the permit only allows for irrigation and domestic uses incidental to farming operations, along with recreational uses at the lake behind Vail Dam, for many years RCWD has used recharge water for municipal and commercial/industrial purposes, including the provision of water for domestic, commercial, golf course and landscaping projects and developments within RCWD's rapidly expanding service area.

Through these statements, the Watermaster implicitly understands and admits that RCWD's uses of water for municipal and commercial/industrial purposes are unauthorized. Yet again the Watermaster refuses to report that RCWD's current uses of water for those purposes are unauthorized. Instead, the Report states that this change in use might make an amendment to the permit "appropriate".

Finally, we note that, in the last paragraph on page 40 and the fifth paragraph on page 45, the Watermaster appears to imply that RCWD's various groundwater extractions are in fact legal and not a violation of its permit. If indeed the Watermaster has adopted that view, we strongly object.

- 4 -

FORM OBD-183
MAR. 83

B. <u>The Magnitude of RCWD's Unauthorized Uses</u>

The United States also objects to the Watermaster's refusal to report the magnitude of RCWD's unauthorized uses under Permit 7032. To understand properly their significance and impact, the Report should quantify separately and clearly RCWD's municipal and industrial uses. The Report instead combines and therefore obscures these uses under the domestic and commercial categories. The Watermaster could easily meet this need for clarification by including in Table 7.1 and other numerical tables and graphs a separate category corresponding to these uses. The Report admittedly does offer a small part of the necessary information in footnote 8 of Table 7.1, and acknowledges on page 35 of the Report that much of the water use reported under the non-agricultural category of use is for municipal purposes. This form of presentation, however, fails to reveal the critical nature and magnitude of these unauthorized municipal and commercial/industrial uses. The Watermaster recently has agreed to address this categorization issue in the future, but these flaws remain in this annual report.

C. <u>Inaccurate Information Regarding the Younger and Older Alluviums</u>

Our third objection relates to the information reported with respect to the condition and use of waters in the younger and older alluviums. The United States submits this fact-based objection only for purposes of preserving the record; it is not

intended to initiate or suggest any court proceeding, or even amendment of the Report, at this time. Such action would not be in the best interests of the parties at this juncture.

Our specific objection is that, in Table 7.4 and the accompanying text on pages 45-48, the Report inaccurately divides the extractions of groundwater between the older and younger alluvium formations. A much greater percentage of water should be allocated to the younger alluvium. Similarly, in the last paragraph of page 41, the Report cites an unrealistically low recharge to the older alluvium of waters impounded by Vail Dam. The accuracy of this category of information is important because the magnitude of RCWD's unauthorized uses of water under Permit 7032, as well as the scope of those other uses undertaken without any right whatsoever, is directly related to the division of water and use of water between the younger and older alluviums.[3]

In support of this objection, the United States has submitted to the Watermaster the preliminary analysis of this issue prepared by the United States' consultant, Stetson Engineers, Inc. This analysis demonstrates that the percentages and other information reported in Table 7.4 and in the text with respect to the allocations between the younger and older alluviums are inaccurate.

---

[3] The State Water Resources Control Board only has jurisdiction over the younger alluvium, which is defined as that water which "flows in a defined channel." The SWRCB's permit accordingly is limited to water extracted from the younger alluvium.

- 6 -

Finally, in this same vein, the United States objects to the use of thirty (30) feet as the depth of the younger alluvium in the Murrieta Valley and tributary sub-units. As discussed on page 39 of the Report, the Watermaster feels bound to use the depth estimated by this Court thirty years ago, despite the fact that a great deal of information has been gathered since 1962 regarding the hydrology of the Temecula-Murrieta Groundwater Area that contradicts this depth. As shown in RCWD's own reports and in the attached preliminary analysis, the younger alluvium in both the Murrieta Valley and the Pauba Valley and their respective tributary sub-units is significantly thicker than estimated thirty years ago. While the Watermaster concedes this fact as to the Pauba Valley, see second paragraph of page 46, and acknowledges the United States' objection to the use of that depth, page 40, the Report nonetheless employs the obsolete thirty-foot depth as the cutoff point in Murrieta Valley. This inaccurate approach lends the appearance of proper authorization to extractions by RCWD and Murrieta County Water District that in fact are not authorized.

## III

## CONCLUSION

The United States objects to the absence in the Watermaster's Annual Report for Water Year 1990-91 of any statement or report that RCWD engages in municipal and commercial/industrial uses of water that are unauthorized under

- 7 -

Permit 7032. We further object to the failure to report readily available data that would provide the information needed to appreciate the magnitude of these unauthorized uses. Finally, the United States objects to the inaccuracy of the data and measurements relating to the division of water and the uses of water between the older and younger alluvium formations.

Respectfully submitted on this 3rd day of September, 1992.

Lauren N. Soll
Patrick Barry
Attorneys, Department of Justice
Environment and Natural
  Resources Division
Indian Resources Section
P.O. Box 44378
Washington, D.C. 20026-4378
(202) 272-5794

Canal, ditch, flume: Width on top (at water line)_____ _____ bottom _____
feet; depth of water_____feet; length_____feet; grade_____ per 1,000 feet; materials _____
of construction._____
      Earth, rock, timber, etc.    See Supplement No. 3
    (b) Pipe line: Diameter_____inches; length_____feet; grade_____ feet per
1,000 feet; total fall from intake to outlet_____feet; kind_____

NOTE.—If a combination of different sizes or kinds of conduit is to be used, attach extra sheets with complete description, also show location of each clearly on map.

9. The estimated capacity of the diversion works proposed is __20 Cubic feet per second__

The estimated cost of the diversion works proposed is __$1,013,000__

## Completion Schedule

10. Construction work will begin on or before __October 1, 1947__

Construction work will be completed on or before __October 1, 1948__

The water will be completely applied to the proposed use on or before __May 1, 1949__

## Description of Proposed Use

11. Place of Use. __3797 acres in Pauba Ranch in Sections 5, 6, 7 & 18,__
__Tp. 8S, R 1 W; in Sections 1,10,11,12,13,14,15,16,17,18,19,20,21,28,__
__and 29 Tp. 8S, R2W; in Sections 13 and 24 Tp. 8S, R3W as shown on map filed__
__with State Engineer.__

Does applicant own the land whereon use of water will be made? __Yes__

If applicant does not own land whereon use of water will be made, state what arrangements have been made with owner.

12. Domestic Use. Domestic use is proposed as follows: __Incidental to farming operations__

The amount for which application is made was determined by_____

13. Irrigation Use. The area to be irrigated is __3797 acres__ _____acres.
The segregation of acreage as to crops is as follows: Rice_____acres; alfalfa_____acres;
orchard_____acres; general crops_____acres; pasture_____acres.

The irrigation season will begin about __May 1st__ and end about __October 31st__

The land to be irrigated has __no other__ water right or source of water supply other than that herein applied for. The nature and amount of the additional supply referred to is_____

14. Power Use. The total fall to be utilized is_____feet.
The maximum amount of water to be used through the penstock is_____cubic feet per second.
The maximum theoretical horsepower capable of being generated by the works is_____horsepower.
The use to which the power is to be applied is_____
The nature of the works by means of which power is to be developed is_____
The size of nozzle to be used is_____inches.
The water will / will not be returned to_____ in_____ of
Sec._____ Tp._____ R._____ M.

FILE IN DUPLICATE

(For full information concerning the filling out of this form refer to Regulation 4 of Rules and Regulations Governing the Appropriation of Water.)

## STATE OF CALIFORNIA—DEPARTMENT OF PUBLIC WORKS
### DIVISION OF WATER RESOURCES
### STATE ENGINEER

Amended & completed
Application No. 11518    Filed August 16, 1946 at 8:37 A.M.
JUN 17 1947   AMENDED APPLICATION RECEIVED

## APPLICATION TO APPROPRIATE UNAPPROPRIATED WATER

This application involves in no way the right to construct a dam

1. VAIL COMPANY (See Supplement No. 1) — Notice of Assignment (Over)
   Name of applicant
   of _____Los Angeles_____ County of _____Los Angeles_____
   State of _____California_____, do hereby make application for a permit to appropriate the following described unappropriated waters of the State of California, SUBJECT TO EXISTING RIGHTS, TO

### Source, Amount, Use and Location of Diversion Works

1. The source of the proposed appropriation is __Temecula Creek__
located in __Riverside__ County, tributary to __Santa Margarita River__

2. The amount of water which applicant desires to appropriate under this application is as follows:

   (a) For diversion to be directly applied to beneficial use without storage _____ cubic feet per second, to be diverted from _____ to _____ of each season.

   (b) For diversion to be stored temporarily and later applied to beneficial use __40,000__ acre-feet per annum, to be collected between __November 1st__ and __April 30th__ of each season.

3. The use to which the water is to be applied is __Irrigation and Domestic__ purposes.

4. The point of diversion is to be located __in the Pauba Ranch, a Mexican Grant,__ at __Pauba__ dam site, head of Nigger Canyon, bearing N. 46° 41' W. 14,025 feet from a granite monument marked "P.R.S" of Pauba Survey. (See Supplement No. 2) being within the __NW¼__ of __NW¼__ of
Section __10__, Tp. __8 S__, R. __1__, S.B.B.& M., in the County of __Riverside__
   ∞ SW¼ of NE¼ of Sec. 20

5. The main conduit terminates in __SW¼__ of __SW¼__, of Sec. __17__, Tp. __8 S__, R. __2 W__, SBB¼ M.

### Description of Diversion Works

NOTE—An application can not be approved for an amount grossly in excess of the estimated capacity of the diversion works.

6. Intake or Headworks (fill only those blanks which apply)
   Re-
   (a) Diversion will be made by pumping: Capacity of plant __8100__ gallons per minute. (See Supp.#3 from stream
   (b) Diversion will be by gravity, the diverting dam being __110__ feet in height (stream bed to level of overflow); __440__ feet long on top; and constructed of __concrete__

   (c) The storage dam will be __110__ feet in height (stream bed to overflow level); __440__ feet long on top; have a freeboard of __5__ feet, and be constructed of __concrete__

7. Storage Reservoir __Pauba Reservoir__
   The storage reservoir will flood lands in __Pauba Rancho per map__ /Tp. 8 S. R1W (Projected) Sections 10,11,14,&15,

15. Municipal Use. This application is made for the purpose of serving_____
_____ having a present population of_____

The estimated average daily consumption during the month of maximum use at the end of each five-year period until the full amount applied for is put to beneficial use is as follows:

_____
_____
_____

16. Mining Use. The name of the mining property to be served is_____
_____ and the nature of the mines is_____

The method of utilizing the water is_____

It is estimated that the ultimate water requirement for this project will be_____

The water will / will not be polluted by chemicals or otherwise_____

and it will / will not be returned to_____ in_____ of_____

Sec._____, Tp._____, R._____, M._____

17. Industrial Use. The nature of the use proposed is_____
_____

The amount for which application is made was determined by_____
_____

18. Recreational Use. Water will be used for_____

The amount for which application is made was determined by_____
_____

### General

19. Are the maps as required by the Rules and Regulations filed with Application? __Yes__. If not, state specifically the time required for filing same._____

20. Does the applicant own the land at the proposed point of diversion? __Yes__. If not, state what steps have been taken to secure right of access thereto._____

21. What is the name of the post office most used by those living near the proposed point of diversion?
    Temecula, Riverside County, California

22. What are the names and addresses of claimants of water from the source of supply below the proposed point of diversion? United States Marine Base, Camp Pendleton, Oceanside, Calif.
Philip Playtor, C/o Walter G. Lincoln, Atty., 742 S. Hill St., Los Angeles, Cal.
Estate of Murray Schloss       "         "         "         "         "         "         "

[SIGNATURE OF APPLICANT] Vail Company
By Mahlon Vail
Managing Trustee & Attorney-In-Fact
for all other Trustees

APPLICANT MUST NOT FILL IN BLANKS BELOW

## PERMIT No. 7032

This is to certify that the application of which the foregoing is a true and correct copy has been considered and is hereby approved SUBJECT TO VESTED RIGHTS and the following limitations and conditions:

1. The amount of water appropriated shall be limited to the amount which can be beneficially used, and shall not exceed forty thousand (40,000) acre-feet per annum by storage to be collected from about November 1 of each year to about April 30 of the succeeding year.

2. The maximum amount herein stated may be reduced in the license if investigation so warrants.

3. Actual construction work shall begin on or before June 1, 1948 and shall thereafter be prosecuted with reasonable diligence, and if not so commenced and prosecuted this permit may be revoked.

4. Said construction work shall be completed on or before December 1, 1950

5. Complete application of the water to the proposed use shall be made on or before December 1, 1952.

6. Progress reports shall be filed promptly by permittee on forms appropriate to the purpose which will be provided annually by the State Engineer until license is issued.

7. All rights and privileges under this permit including method of diversion, method of use and quantity of water diverted are subject to the continuing authority of the Department acting through the State Engineer in accordance with law and in the interest of the public welfare to prevent waste, unreasonable use, unreasonable method of use or unreasonable method of diversion of said water, and to prevent unreasonable interference with vested rights.

This permit is issued and permittee takes it subject to the following provisions of the Water Code:

Section 1390. A permit shall be effective for such time as the water actually appropriated under it is used for a useful and beneficial purpose in conformity with this division (of the Water Code), but no longer.

Section 1391. Every permit shall include the enumeration of conditions therein which in substance shall include all of the provisions of this article and the statement that any appropriator of water to whom a permit is issued takes it subject to the conditions therein expressed.

Section 1392. Every permittee, if he accepts a permit, does so under the conditions precedent that no value whatsoever in excess of the actual amount paid to the State therefor shall at any time be assigned to or claimed for any permit granted or issued under the provisions of this division (of the Water Code), or for any rights granted or acquired under the provisions of this division (of the Water Code), in respect to the regulation by any competent public authority of the service or the price of the service to be rendered by any permittee or by the holder of any rights granted or acquired under the provisions of this division (of the Water Code) or in respect to any valuation for purposes of sale to or purchase, whether through condemnation proceedings or otherwise, by the State or any city, city and county, municipal water district, irrigation district, lighting district, or any political subdivision of the State, of the rights and property of any permittee, or the possessor of any rights granted, issued, or acquired under the provisions of this division (of the Water Code).

Witness my hand and the seal of the Department of Public Works of the State of California this 18th day of February 19 48

EDWARD HYATT
State Engineer

## SUPPLEMENT No. 1

Wherever the name Vail Company appears in this application it is used to designate: Mary Vail Wilkinson, Mahlon Vail, Edward N. Vail, Margaret Vail Wise (Formerly Margaret Vail Bell), and Anita M. Vail, trustees doing business as Vail Company under that Indenture of Trust dated December 31, 1912, recorded in Book 371, page 279 of Deeds, Riverside County records, and in Book 5436, page 82, of Deeds, Los Angeles County Records, and as from time to time thereafter amended.

## SUPPLEMENT No. 2

The point of reference is a granite monument marked "P.5", being corner No. 5 on the plat of the Pauba Rancho finally confirmed to Luis Vignes, surveyed in December 1858 and January 1859, approved by J.W. Manderville, U.S. Surveyor General, San Francisco, California. Recorded Patent Book 1, page 45, San Diego County Records, April 21, 1869.

## SUPPLEMENT No. 3

A portion of the water stored in Pauba [Vail] Reservoir will be released into the streambed of Temecula Creek and spread over the wash just below the mouth of Nigger Canyon. This water will be recovered by four pumps marked on maps: "J.K."; "Well 30"; "Cantarini"; and "Lower".

[See letter of 8-25-47]

Main conduits are as follows:

```
21" diam. length 15,800 ft. fall 5.7 ft. per 1000 ft.
18"  "      "    32,100 "    "   7.8 "   "  1000 "
12"  "      "     6,500 "    "  10.  "   "  1000 "
12"  "      "    12,500 "    "   8.4 "   "  1000 "
```

Total fall from inlet to outlet 330 feet; kind - concrete.

The spreading area for diversions from Pauba [Vail] Reservoir is in S½ of NW¼, and in S½ of Section 5, T8S, R1W, S.B.B.& M.

Cantarini Well and Pumping Plant are in SW¼ of SE¼ of Section 17, T8S, R2W, S.B.B.& M. bearing N. 58° 45' E. 10,575 ft. from closing corner S 25 and 30, T8S, R2 and 3W, S.B.B.& M.

Lower Well and Pumping Plant are in SW¼ of SE¼ of Section 18, T8S, R2W, S.B.B.& M. bearing N. 32° 30' E. 6780 ft. from closing corner S 25 and 30, T8S, R2 and 3W, S.B.B.& M.

Well 30 and Pumping Plant are in NE¼ of SE¼ of Section 11, T8S, R2W, S.B.B.& M. bearing N. 21° E. 11,900 ft. from Pauba Ranch corner No. 2, see Supplement No. 2.

J.K. Well and Pumping Plant are in NE¼ of SE¼ of Section 12, T8S, R2W, S.B.B.& M. bearing N. 3° 30' E. 5500 ft. from Pauba Ranch corner No. 3, see Supplement No. 2.

## SUPPLEMENT No. 4

Underground storage in Pauba Valley will be located in Sections 5,6,7,10,11,12,13,14,15,16,17,20,18,19, T8S, R2W and Sections 13 and 24 T8S, R3W, S.B.B.& M. The approximate area is about 3200 acres, and the capacity about 70,000 acre feet.

PETITION FOR CHANGE IN CHARACTER OF USE

Application __11518__   Permit __7032__   License _____

State Water Resources Control Board
Division of Water Rights
Resources Building, Room 1140
1416 Ninth Street
Sacramento, California  95814

I request permission to change the character of use described in this permit or license as follows:

Addition of recreational use.  All other uses set forth in the Permit
(State all purposes for which water is to be used)

to be retained.

Give reason for proposed change:   To have Permit in conformance with past use patterns and intended future use.

Does this change involve any place of use not described in the permit or license?

__No[1]__  .  If answer is yes, give legal description:  [1]This is a
(yes or no)
nonconsumptive use of water that will occur at the location where appropriated waters are stored behind Vail Dam as described in the original application for the Permit No. 11518.

THIS CHANGE DOES NOT INVOLVE AN INCREASE IN THE AMOUNT OF THE APPROPRIATION OR SEASON OF USE.

Give names and addresses of parties who may be affected by the proposed change:

We do not know of any parties that would be adversely affected by this request.

_____
(Signature)
Attorney for Rancho California

Date:   May 4, 1971

Section 1547 of the Water Code requires a $10 filing fee with petitions for changes.

WRCB
22E (12-67)

STATE OF CALIFORNIA—THE RESOURCES AGENCY

RONALD REAGAN, Governor

STATE WATER RESOURCES CONTROL BOARD
**DIVISION OF WATER RIGHTS**
ROOM 1140, RESOURCES BUILDING
1416 NINTH STREET · SACRAMENTO 95814



ORDER ALLOWING CHANGE IN CHARACTER
OF USE AND PLACE OF USE

Permit 7032                                Application 11518

WHEREAS the State Water Resources Control Board has found that the character of use under Permit 7032, for which petition was submitted on May 6, 1971, will not operate to the injury of any other legal users of water, and

WHEREAS the Board has approved and allowed said changes and has directed that an order be issued to describe said character of use in accordance with said petition;

NOW THEREFORE IT IS ORDERED that permission be and the same is hereby granted to change the character of use under said Permit 7032, to a character of use described as follows, to wit:

IRRIGATION, DOMESTIC AND RECREATIONAL USES, AND

IT IS FURTHER ORDERED that permission be and the same is hereby granted to change the place of use under said Permit 7032, to a place of use described as follows, to wit:

RECREATIONAL USE AT VAIL RESERVOIR WITHIN
SECTION 10, T8S, R1W, SBB&M; IRRIGATION OF
3797 ACRES AND DOMESTIC USES WITHIN RANCHO
CALIFORNIA, BEING WITHIN SECTIONS 5, 6, 7,
AND 18, T8S, R1W; SECTIONS 1, 10, 11, 12,
13, 14, 15, 16, 17, 18, 19, 20, 21, 28,

AND 29, T8S, R2W; SECTIONS 13 AND 24, T8S, R3W,
SBB&M AS SHOWN ON MAP FILED WITH STATE WATER
RESOURCES CONTROL BOARD.

Dated: JUL 28 1971

K. L. Woodward, Chief
Division of Water Rights

WILLIAM BRANIFF
United States Attorney

PATRICK BARRY
LAUREN N. SOLL
Attorneys, Department of Justice
Environment and Natural
  Resources Division
Indian Resources Section
P.O. Box 44378
Washington, D.C. 20026-4378
(202) 272-5794

CSB. No. 147988

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | CIVIL NO. 1247-SD-T |
| v. | |
| FALLBROOK PUBLIC UTILITY DISTRICT, a public service corporation of the State of California, et. al., | |
| Defendants. | CERTIFICATE OF SERVICE |

This is to certify that copies of "United States' Objections to Water Master's Annual Report for Water Year 1990-1991" were mailed, postage prepaid, properly addressed, on this 3rd day of September, 1992, to the following:

FORM OBD-183
MAR. 83

James Jenks
Watermaster
Santa Margarita River Watershed
P.O. Box 631
Fallbrook, CA  92028


Arthur G. Kidman, Esquire
McCormick & Kidman
3100 Bristol Street
Costa Mesa, CA  92626


Robert H. James, Esquire
Sachse, James, Croswell & Lopardo
P.O. Box 427
205 West Alvarado Street
Fallbrook, CA  92028

         Respectfully submitted,

         */s/ Lauren N. Soll*
         Lauren N. Soll
         Attorneys, Department of Justice
         Indian Resources Section
         Environment and Natural Resources
          Division
         601 Penn. Avenue, N.W.
         Washington, D.C. 20004
         (202) 272-5794

FORM OBD-183
MAR. 83

(916) 324-5715

SEPTEMBER 18 1990

In Reply Refer
To:342:RJM:11518

Rancho California Water District
28061 Diaz Road
Temecula, CA  92390

Gentlemen:

PERMIT 7032 (APPLICATION 16518) TEMECULA CREEK IN RIVERSIDE COUNTY

While processing your petition for an extension of time, a review of the file reveals several irregularities which are listed below:

1. The last "Progress Report" states the amount of land irrigated with water authorized under this permit was 12,800 acres. The amount of acreage authorized to be irrigated under this permit is 3,797 acres. This would indicate water in an amount exceeding the permitted amount is being used for irrigation. Under what water right is the additional amount of water authorized?

2. The "Progress Report" shows water under this permit is being used for Industrial and Municipal purposes. Permit 7032 does not list Industrial and Municipal as a purpose of use. Therefore, water being used for those purposes is a violation of the permit.

3. The file indicates that Rancho California Water District (District) is storing up to 49,000 acre-feet (af) in Vail Reservoir. Permit 7032 authorizes the storage of 40,000 af. This was pointed out to the District at a meeting in 1984. To date, no application has been received for the additional 9,000 acre-feet of stored water.

4. At the 1984 meeting, it was also pointed out that a petition is needed to add new points of diversion and rediversion to the permit. Enclosed are the necessary forms.

5. In 1984, Condition 9 was added to the permit and requires that a water conservation plan be submitted for approval by the Board within one year. To date no water conservation plan has been filed with the Board.

Rancho California Water District    -2-

6.  The District's claim to riparian water rights does not appear to be clear. Normally, riparian water rights do not include stored water and the fact that the District has never filed a statement for those riparian water rights, as required by law, makes those riparian rights questionable.

Until these matters can be cleared up, the Board can not act on your petition for an extension of time. Your response at your earliest convenience will be appreciated.

If you have any questions, please contact Rick Miner at (916) 324-5687.

Sincerely,

ORIGINAL SIGNED BY:

Jim Pankratz, Chief
Petition Unit

Enclosure

!JHPankratz:plede:15518:Rancho:9-13-90