JAMES S. JENKS, WATERMASTER
Santa Margarita River Watershed
P. O. Box 631
Fallbrook, CA.  92088-0631
(619) 728-1028

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>   v.<br><br>FALLBROOK PUBLIC UTILITY DISTRICT,<br>et al.,<br><br>          Defendants. | Case No. 1247-SD-GT<br><br>WATERMASTER RESPONSE TO UNITED STATES' OBJECTIONS TO WATERMASTER'S ANNUAL REPORT FOR WATER YEAR 1990-1991<br><br>Dept:  Honorable Gordon Thompson, Jr. |

I

INTRODUCTION

On September 3, 1992, the United States submitted its objections to the "Santa Margarita River Watershed Annual Watermaster Report Water Year 1990-91" (hereinafter "Report").  Three major objections were noted:

   1.   Failure to state clearly that Rancho California Water District's (RCWD) use of water for municipal and commercial/industrial purposes is unauthorized under State Water Resources Control Board (SWRCB) Permit 7032;

2.  Failure to report the magnitude of RCWD's unauthorized use even though the necessary information is readily available; and,

3.  Inaccurate reporting of the percentage of extractions from the younger alluvium, the recharge to the older alluvium in the Pauba Valley, and the depth of the younger alluvium in the Murrieta Valley, which inaccuracy helps to obfuscate the extent of RCWD's unauthorized uses identified above.

The Watermaster hereby submits the following response to those objections.

## II

## DISCUSSION

### Objection No. 1

There are two primary reasons why there is no clear statement about RCWD's water use under Permit 7032. First, the matter involves water use under a statutory appropriative water right which is administered in California by the SWRCB. The Court in Order No. VI to its Modified Final Judgment and Decree, dated April 6, 1966, granted the State of California Water Resources Control Board jurisdiction over all appropriative water rights in the Santa Margarita River Watershed. Order No. VI is as follows:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the STATE OF CALIFORNIA STATE WATER RIGHTS BOARD, or its successor agencies as may be provided by the laws of the State of California, shall continue to exercise its statutory jurisdiction over all present or future appropriative rights to the use of water of the Santa Margarita River and its tributaries.

2

The Watermaster's duty is to enforce the Court's orders, and the Court has granted jurisdiction over appropriative rights to the SWRCB; therefore, the Watermaster does not administer State appropriative rights.

The Report on page 54 states as follows:

2. <u>Rediversion and Use not in Accord with Terms of Permit 7032</u> - As noted in Section 7 of the report, the place of use, rediversion facilities and the type of use of water appropriated under Rancho California WD's Vail Dam Application No. 11518 and Permit 7032 have changed since the Application was filed in 1947. Thus Permit 7032 should be amended to provide for current and projected future conditions. Rancho California WD has agreed that an amendment is in order and has initiated action under the prescribed procedures of the State Water Resources Control Board.

In order to conclude that there has been unauthorized use an investigation would be required to determine precisely how much water from Vail Dam has been pumped and how much water is used for irrigation and domestic use incidental to farming operations within the areas specified in the Permit. To date that investigation has not been conducted by the SWRCB, which has jurisdiction over Permit matters.

The second reason is that without further data there is no basis for such a statement. The needed data are discussed under Objection No. 2.

<u>Objection No. 2</u>

The magnitude of RCWD's use of water under Permit 7032 could not have been reported because of lack of data.

RCWD's use of water under Permit 7032 involves diversion of water from Temecula Creek to storage in Vail Dam, release of that

ORM OBD-18J
MAR. 83

water for either direct use or for recharge into the underground downstream of Vail Dam, and the subsequent pumping of the recharged water from the underground along with other waters. Water pumped from the underground is blended with imported supplies within the RCWD system and put to various uses in RCWD's service area. Under Permit 7032 the water from Vail Dam is limited to irrigation use, domestic use incidental to farming operations and recreational use in areas specified in the Permit.

RCWD does report to the Watermaster information about its water production and use each month as required under the Court's Order appointing the Watermaster. These data are published in the Annual Watermaster Report.

However, conclusions about RCWD's water use in relation to Permit No. 7032 require more specific data which are not reported to the Watermaster:

    A.    Each month RCWD reports agriculture water use for the entire district, for two major divisions within the district and for several hydrogeologic areas within the district, but does not report to the Watermaster agricultural water use within the particular service area specified in Permit 7032.

    B.    As with agricultural water use, RCWD reports monthly domestic water use for the entire district, for two divisions within the district and for several hydrogeologic

areas within the district, but does not report to the Watermaster domestic use within the particular service area specified in Permit 7032.

In addition to the need for data specific to Permit 7032, there is also a need for the SWRCB to resolve what portion of the total RCWD domestic water use is "domestic use incidental to farming operations" as compared to other domestic water uses before clear statements can be made about RCWD's use of water under Permit 7032.

The United States' discussion of Objection No. 2 also claims that RCWD's water use should be reported by the Watermaster as municipal and industrial use instead of under domestic and commercial categories. Reporting domestic and commercial water use is specifically required under Section II of the Court's Order for the Appointment of a Watermaster; Powers and Duties dated March 13, 1989. Water use was reported under these categories for all districts in the Watermaster Reports for 1988-89 and for 1989-90 without objection from the United States. On May 20, 1992, after the tables for the 1990-91 Report were already prepared and published in draft form, the United States sought to have the water use reported under categories different from those in the foregoing Order. The tables presenting water use were not changed in response to the United States' suggestions. Instead the report was modified by noting on Page 35 that "...much of the non-agricultural water use in the Watershed can also be considered municipal use, which includes both the domestic and commercial uses shown in tables in this report."

In addition it was agreed to address the categorization issue prior to preparation of the 1991-92 report. This matter was discussed at the September 23, 1992, Steering Committee meeting where it was determined that:

A. Each district in the Watershed has a different definition of domestic use, commercial use and agricultural use; and,

B. There is a reluctance on the part of the districts to change the existing water use reporting categories.

Accordingly, the current plan is to continue to report water use under the present categories but definitions of the water use reported by each water purveyor will be included in the Watermaster reports beginning with the 1991-92 Annual Watermaster Report.

Objection No. 3

The United States' Objection No. 3 was submitted only for the purpose of preserving the record and the United States did not seek to have the Report changed. Accordingly, the following responses to the United States' Objection No. 3 are also presented only for the purpose of preserving the record.

In Objection No. 3, the United States objected to:

A. The percentages of extractions from the younger alluvium;

B. The recharge to the older alluvium in the Pauba Valley;

C. The depth of the younger alluvium in the Murrieta Valley.

The Watermaster's responses to these objections are as follows:

A. The United States claims that the Report on pages 45-48 and Table 7.4 inaccurately divides well production between the older and younger alluvium.

The reason this division is important to the United States is that water pumped from the younger alluvium is considered by the Court and by the State of California Water Resources Control Board to be surface water, and is therefore subject to established water rights procedures. Water pumped from the older alluvium is considered to be groundwater. In general, groundwater is outside the jurisdiction of the State Water Resources Control Board. The Court has reserved jurisdiction over the water in the older alluvium.

The bases for assigning the depths to younger alluvium listed in Table 7.4 are presented on pages 45 to 48 of the Report. The procedure followed was basically as follows:

1. Determine the Court's basis for establishing the areal extent and depth of younger alluvium in Pauba Valley. The areal extent of the younger alluvium is shown on U. S. Exhibit 15L and the maximum depths are shown on U. S. Exhibit 16. Copies of portions of these Exhibits are included as Attachments A and B to this Response.

2. Determine the basis used to identify the division between the younger and older alluvium by examining the well logs of wells used to develop U. S. Exhibit 16. These bases are listed on page 47 of the Report.

Basically the bottom of the younger alluvium is considered to be the first major clay layer shown in the well log.

3. Apply same basis to logs from current production wells to determine the division between younger alluvium and older alluvium for wells drilled after 1962.

In this connection, it is noteworthy that the Court's definitions of the younger alluvium in Pauba Valley are presented in Findings of Fact of Interlocutory Judgment No. 30. These Findings, and specifically Nos. 23 and 24, define the younger alluvium as having the following characteristics:

1. Ground water flow in the younger alluvium is within a known and definite channel with the older alluvial deposits, basement complex and/or volcanic rocks forming the bed and banks of the channel;

2. The older alluvial material, basement complex and volcanic deposits which form the bed and banks of the channel are composed of considerably more compacted materials of less permeability than the younger alluvium;

3. Ground waters within the younger alluvium move in the identical direction as the surface flow of Temecula Creek;

)RM OBD-183
MAR. 83

    4.    Ground waters within the younger alluvium in Pauba Valley and surface flow of Temecula Creek constitute a single stream referred to as Temecula Creek.

    The United States contends that geologic studies conducted subsequent to 1962 show the depth of the younger alluvium to be deeper than the depths identified by the Watermaster. However careful review of these studies indicates that the studies were done primarily to identify ground water aquifers which serve as the source of water to production wells. These studies were not done with the aim of defining which portion of the underground waters should be considered to be surface water and therefore part of the Temecula Creek stream system.

    The differing objectives of these studies has led to considerable confusion about how the younger alluvium, which is a hydrologic unit defined by the Court, relates to other hydrologic an/or geologic units defined in other studies and reports developed after 1962. None of these more recent studies address "younger alluvium" as defined by the Court.

B.    The United States claims the Watermaster has inaccurately reported recharge to the older alluvium on page 41 of the

M OBD-18J
MAR. 83

Report.  The following regarding recharge of the older alluvium is quoted from page 41 of the Report:

> The Vail recharge has been reduced by five percent to reflect evaporation and transpiration losses during recharge as well as minor recharge to the older alluvium.  This five percent loss rate will be considered as a provisional rate until data or analysis are developed to improve this estimate.

In brief the Court found in Interlocutory Judgment No. 30 that the younger alluvium overlies the older alluvium in the Pauba Valley downstream from Vail Dam.  Water is released from Vail Dam by RCWD and allowed to recharge into the younger alluvium for storage.  As the water is recharged a portion of the water is lost to evaporation and transpiration.  The quantity of this loss has not been calculated or estimated.  While the water is stored in the younger alluvium a portion may percolate into the underlying older alluvium.  The quantity of this percolation has not been calculated or estimated.  Because the foregoing quantities of recharge have not been calculated or estimated, they are included in the provisional rate noted in the Report.  Such a provisional rate is not an "... inaccurate report of ... the recharge to the older alluvium in the Pauba Valley, ...."

C.  The United States claims the Watermaster has inaccurately reported the depth of the younger alluvium in the Murrieta Valley and tributary subunits on page 39 of the Report.

The following regarding depth of younger alluvium is quoted from page 39 of the Report:

> Interlocutory Judgment No. 30 indicates that in Murrieta Valley the younger alluvium deposits extend in various depths to a maximum of approximately 30 feet from the ground surface. This finding was based on evidence available to the Court prior to the Judgment date of March 8, 1962. The Court also noted that it was impossible based on evidence available at that time to determine the depth of the younger alluvial deposits throughout the Valley with exactness but that subsequent findings could be made if needed because the Court would retain continuing jurisdiction. Older alluvial deposits are found below the younger alluvium.

As in the Pauba Valley the United States claims information gathered since 1962 contradicts a depth of 30 feet maximum for the younger alluvium. It is true that a number of geologic studies have been conducted since the Court's ruling in 1962. However as previously noted none of these studies were for the same purpose as the Court's - that of defining the younger alluvium for the purpose of establishing the Murrieta Creek stream system. Therefore there was no basis for concluding that the maximum depth of the younger alluvium is other than 30 feet.

When the Report was being prepared the specific criteria that the Court used to establish the maximum 30 foot depth in Murrieta Valley was not known. However, since then it has been learned that a geologic section of Murrieta Creek which shows the wells whose logs were used to define the depth to younger alluvium in the Murrieta

Valley is shown on U. S. Exhibit 16. The portion of that Exhibit which shows the Murrieta Valley is attached with this Response as Attachment C. Examination of the logs of wells shown on U. S. Exhibit 16 indicates that the same criteria was used on Murrieta Creek as on Pauba Valley to define the depth of the younger alluvium -- the depth to the first major clay layer. This same criteria will be applied to the logs of wells drilled in the Murrieta Valley after 1962 to update the Court's findings on the same basis that the Court originally used.

## III

### SUMMARY

In summary, there is no clear statement about RCWD water use under Permit 7032 because it is an appropriative water right matter and the Court has granted jurisdiction over appropriative water rights to the SWRCB.

There is no clear statement about the magnitude of such water use because data needed to disclose such use have not been reported and the definition of "domestic use incidental to farming operations" has yet to be determined.

Information regarding the older and younger alluvium is not inaccurately reported in the Report. Specifically:

    A.   The percentage of extraction from the younger alluvium is accurately computed based on a procedure clearly presented in the Report. The procedure used to define the younger

alluvium is similar to that used by the Court in 1962, and based on evidence presented in Court.

B. A provisional five percent rate is indicated in the Report to provide for evaporation and transpiration losses from water released from Vail Dam and recharged into the younger alluvium. That rate also provides for recharge to the underlying older alluvium. Use of a provisional rate does not constitute an "inaccurate report."

C. Subsequent to the Court's findings in Interlocutory Judgment No. 30 in 1962 no comparable studies of more recent data have been conducted which would serve as a basis for changing the Court's original conclusions about the depth of the younger alluvium in Murrieta Valley.

Respectfully submitted on this 29 day of October, 1992.

James S. Jenks, Watermaster
Santa Margarita River Watershed
P. O. Box 631
Fallbrook, CA   92088-0631
(619) 728-1028

ATTACHMENT A

To Watermaster Response to United States' Objections to Annual Watermaster Report for 1990-91

PAUBA VALLEY PORTION OF U. S. EXHIBIT 15L ENTITLED "MAP OF MURRIETA, BACHELOR MOUNTAIN AND PARTS OF THE WILDOMAR, PECHANGA AND TEMECULA QUADRANGLE, CALIFORNIA, SHOWING GEOLOGY, LOCATIONS OF WELLS AND WATER LEVEL CONTOURS FOR AUTUMN 1959"



**ATTACHMENT B**

To Watermaster Response to United States' Objections to Annual Watermaster Report for 1990-91

ATTACHMENT C

To Watermaster
 Response to
 United States'
 Objections to
 Annual Watermaster
 Report for 1990-91



MURRIETA CREEK PORTION OF U.S. EXHIBIT 16 ENTITLED "GEOLOGIC SECTIONS ALONG THE SANTA MARGARITA-TEMECULA RIVER AND MURRIETA CREEK VALLEYS"

```
JAMES S. JENKS, WATERMASTER
Santa Margarita River Watershed
P. O. Box 631
Fallbrook, CA.  92088-0631
(619) 728-1028
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,            )<br>                                      )<br>           Plaintiff,                )<br>                                      )<br>      v.                              )<br>                                      )<br>FALLBROOK PUBLIC UTILITY DISTRICT,    )<br>et al.,                               )<br>                                      )<br>           Defendants.               )<br>_____) | Case No. 1247-SD-GT<br><br><br><br><br><br>CERTIFICATE OF SERVICE<br><br>Dept:  Honorable Gordon<br>              Thompson, Jr. |

This is to certify that copies of "Watermaster Response to United States' Objections to Watermaster's Annual Report for Water Year 1990-1991" were mailed, postage prepaid, properly addressed, on this __29__ day of October, 1992, to the following:

```
Arthur G. Kidman, Esquire
McCormick & Kidman
3100 Bristol Street
Costa Mesa, CA    92626

Robert H. James, Esquire
Sachse, James, Croswell & Lopardo
205 West Alvarado Street
Fallbrook, CA     92028
```

M OBD-183
MAR. 83

Patrick Barry
Lauren N. Soll
Environment and Natural Resources Division
Indian Resources Section
P. O. Box 44378
Washington, D.C.   20026-4378

Respectfully submitted,

James S. Jenks, Watermaster
Santa Margarita River Watershed
P. O. Box 631
Fallbrook, CA   92088-0631
(619) 728-1028

IM OBD-183
MAR. 83