1  McCORMICK, KIDMAN & BEHRENS
   ARTHUR G. KIDMAN, ESQ., Bar No. 61719
2  MICHAEL D. MICHAELS, ESQ., Bar No. 97288
   3100 Bristol Street
3  Suite 290
   Costa Mesa, California 92626
4  (714) 755-3100

5  Attorneys for Defendant
   RANCHO CALIFORNIA WATER DISTRICT
6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,     )   CIVIL NO. 1247-SD-GT
                                 )
12             Plaintiff,        )   OPPOSITION BY RANCHO CALIFORNIA
                                 )   WATER DISTRICT TO THE UNITED
13 v.                            )   STATES' OBJECTIONS TO THE ANNUAL
                                 )   WATERMASTER REPORT; MEMORANDUM
14 FALLBROOK PUBLIC UTILITY      )   OF POINTS AND AUTHORITIES;
   DISTRICT, et al.,             )   DECLARATION OF ARTHUR G. KIDMAN
15                               )
               Defendants.       )   DATE:  NOVEMBER 16, 1992
16                               )   TIME:  10:30 A.M.
   _____)   DEPT:  1 [Honorable Gordon
17                                            Thompson, Jr.]

18

19                    OPPOSITION

20      Rancho California Water District ("RCWD" or "the District")

21 submits this opposition to the objections of the United States to

22 the Annual Watermaster Report, Water Year 1990-91 ("the Report")

23 for the Santa Margarita River Watershed. RCWD urges the court, for

24 the reasons set forth below, to overrule the United States'

25 objections.

26 ///

27 ///

28 ///

                              1

# TABLE OF CONTENTS

Page

OPPOSITION . . . . . . . . . . . . . . . . . . . . . . 1

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 2

A.    The Permit  . . . . . . . . . . . . . . . . . 4

B.    The Report  . . . . . . . . . . . . . . . . . 6

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . 9

I.    THE REPORT PROPERLY REFRAINS FROM LABELING RCWD'S
      WATER USE UNDER THE PERMIT AS "UNAUTHORIZED" . . . . . 9

      A.    Changes in the uses to which appropriated
            water is applied do not render the
            appropriation "unauthorized."  . . . . . . . . 10

      B.    The United States is before this court as
            a proprietary owner of land subject in all
            respects to California water rights law  . . . . 11

      C.    The Judgment reserves concurrent jurisdiction
            in the SWRCB to exercise its "statutory
            jurisdiction" over appropriative rights
            to water use . . . . . . . . . . . . . . . . . 13

      D.    Judicial policy strongly favors deferral to
            the State Board in matters of its expertise  . . 14

II.   THE REPORT CONTAINS SEVERAL DESCRIPTIONS
      OF THE DISTRICT'S MUNICIPAL AND COMMERCIAL
      USES OF WATER, QUANTIFIES THOSE USES AND
      EXPLAINS THE DEPTH OF THE YOUNGER ALLUVIUM  . . . . . 16

      A.    The Report describes in detail the municipal
            and commercial uses of water by RCWD.  . . . . 16

      B.    The Report properly describes RCWD production
            from younger and older alluvia . . . . . . . . 18

III.  CONCLUSION  . . . . . . . . . . . . . . . . . . . 20

McCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

-i-

### TABLE OF AUTHORITIES

**Page**

FEDERAL STATUTES

43 U.S.C. section 666(a)  . . . . . . . . . . . . . . 12

NINTH CIRCUIT DECISIONS

Farley Transp. Co. v. Santa Fe Trail Transp. Co.
    (9th Cir. 1985) 778 F.2d 1365  . . . . . . . . . . . . . 14

Funbus Systems, Inc. v. State of California Public
    Utilities Com. (9th Cir. 1986) 801 F.2d 1120 . . . . . . 15

People of the State of California v. United States
    (9th Cir. 1956) 235 F.2d 647 . . . . . . . . . . . . . . 11

Pinhas v. Summit Health, Ltd.
    (9th Cir. 1989) 894 F.2d 1024 . . . . . . . . . . . . . 15

United States v. Fallbrook Public Utilties District
    (9th Cir. 1965) 347 F.2d 48  . . . . . . . . . . . . . . 11,
                                                             12

DISTRICT COURT DECISIONS

Santa Margarita Mutual Water Co. v. State Water Rights
    Board of the State of California
    (S.D. Cal. 1958) 165 F.Supp. 870  . . . . . . . . . . . 15

United States v. Fallbrook Public Utilities District
    (S.D. Cal. 1958) 165 F.Supp. 806 . . . . . . . . . . . . 15

STATE STATUTES

Water Code section 1250    . . . . . . . . . . . . . . . . 13

Water Code section 1251    . . . . . . . . . . . . . . . . 13

Water Code section 1350    . . . . . . . . . . . . . . . . 13

Water Code section 1380    . . . . . . . . . . . . . . . . 13

Water Code section 1394    . . . . . . . . . . . . . . . . 14

Water Code section 1410    . . . . . . . . . . . . . . . . 14

Water Code section 1701    . . . . . . . . . . . . . . . . 14

Water Code section 1705    . . . . . . . . . . . . . . . . 14

McCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

<u>TABLE OF AUTHORITIES</u>

**Page**

<u>CALIFORNIA SUPREME COURT</u>

City of Los Angeles v. City of San Fernando (1975)
    14 Cal.3d 199 . . . . . . . . . . . . . . . . . 10

City of San Bernardino v. City of Riverside (1921)
    186 Cal. 7 . . . . . . . . . . . . . . . . . 10

National Audubon Society v. Superior Court (1983)
    33 Cal.3d 419 . . . . . . . . . . . . . . . . 13, 15

People v. Shirokow (1980) 26 Cal.3d 301 . . . . . . . . . . 13

<u>CALIFORNIA COURTS OF APPEAL</u>

Hand v. Carlson (1934) 138 Cal.App. 202   . . . . . . . . 10

Imperial Irrigation District v. State Wat. Resources
    Control Board (1990) 225 Cal.App.3d 548 . . . . . . . . 15

United States v. State Water Resources Control Board (1986)
    182 Cal.App.3d 82  . . . . . . . . . . . . . . . 15

<u>TREATISES</u>

Hutchins, "The California Law of Water Rights" (1956)
pages 175, 178 . . . . . . . . . . . . . . . . . 11

1 Rogers & Nichols, "Water for California" (1967)
sections 184, 199, pages 263, 283-284 . . . . . . . . . . 11

McCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

-iii-

<u>INTRODUCTION</u>

The Report properly declines the United States insistence that RCWD water use under State Water Resources Control Board ("State Board" or "SWRCB") Water Appropriation Permit 7032 ("Permit") should be characterized as "unauthorized."   The United States' Objections to the Report should be overruled because (1) the RCWD water uses under the Permit have not been determined, under California water law, to be "unauthorized," and (2) the Report reasonably and accurately presents RCWD water sources, management programs and usage, and does not, as the United States contends, obfuscate "unauthorized" uses under the Permit.

The United States objects to the Report on the supposed ground that RCWD water use under the Permit is "unauthorized" and that the Modified Final Judgment and Decree (entered April 6, 1966; herein-after referred to as the "Judgment" and attached as Exhibit 2) in this case and the Order for the Appointment of a Watermaster; Powers and Duties (entered March 13, 1989; hereinafter referred to as the "Order" and attached as Exhibit 1) require the Watermaster's annual reports to enumerate all "unauthorized" uses of water on the Santa Margarita River system under the court's continuing jurisdic-tion (references herein to the Santa Margarita River and the Santa Margarita system include Temecula Creek and Murrieta Creek).  Under the law of this case, (1) the United States is a party to the case in a proprietary capacity as the owner of Camp Pendleton and the Naval Enclave and enjoys only such water rights as would a private owner of the same land, (2) water rights issues are to be deter-mined according to California water law, and (3) jurisdiction is

///

2

expressly reserved to the State Board with regard to water appropriations such as the Permit.

State water law explicitly holds that changes of uses of appropriated water do not automatically render the appropriation "unauthorized." State law also provides specific procedures before the State Board for (1) the State Board, on its own motion or on the motion of an aggrieved party, to review compliance with the terms and conditions of water appropriation permits, and (2) a permit holder to seek modification of a permit because of changed uses or conditions. The United States has not availed itself of the procedures to challenge RCWD compliance before the State Board and obtain a determination that the appropriative water uses are "unauthorized." RCWD, on the other hand, has undertaken to seek a modification of the Permit to assure its continued compliance under State water law.

The Report fully and fairly presents RCWD water usage from the Santa Margarita River system, from local percolating groundwater, and from imported water sources. The United States contends that the Report does not adequately report (1) the types of uses to which RCWD actually devotes water derived from the Santa Margarita system or (2) the quantities of Santa Margarita water actually produced by RCWD and that these supposed inadequacies in the Report obscure the "unauthorized" nature of RCWD's use under the Permit.

RCWD contends that the Report is a reasonable presentation of RCWD's Santa Margarita River water usage, that the Report is in compliance with the Order, and that, if anything, the Report overstates, rather than understates as the United States contends, RCWD production from the younger alluvium (underflow) of the Santa

McCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

3

Margarita, as the younger alluvium is defined in the Judgment.

### A.   The Permit

The following synopsis may be gleaned from Interlocutory Judgment No. 30 and from the Report.

The Permit was granted to the Vail Company by the State of California on February 18, 1948, based upon approval of the amended Application No. 11518 submitted on June 17, 1947.  The Vail Company had submitted an application for the permit prior to that in 1919 under Application No. 1423.  The Permit provides for appropriation of up to 40,000 acre feet of water from Temecula Creek for storage within Vail Lake and for the subsequent release of stored water from behind Vail Dam to Temecula Creek, where it is directed to a spreading basin for recharge into the Temecula Creek underflow (young alluvium).  The Permit allows recovery wells to recapture the water thus stored in the underflow.  The original area of use consisted of an irrigated area of approximately 3,797 acres within the Pauba and Pechanga Valleys.  The purposes of use under the Permit are underflow replenishment/storage, agricultural irrigation, and domestic use incidental to agriculture within the use area.    In 1973, recreational uses at Vail Lake were added to reflect changes in use.

The Permit has passed from the Vail Company (as operated by the Vail family), to Rancho California (as Rancho California, later Kaiser Aetna, later Kacor Realty, Inc.), and finally to RCWD in October 1979.   The character of land use and the corresponding beneficial uses of water have changed over time.  Portions of the original Vail family ranch holdings have been developed as the Planned Community of Rancho California, and more recently

4

incorporated with surrounding areas into the new City of Temecula. The area served by the District now includes several suburban communities with homes of varying densities, commercial centers, and a large business park. Agriculture still holds a significant place in the region's economy, with extensive avocado and citrus groves, and numerous vineyards and wineries.

The District currently uses a combination of (1) local surface water appropriated under the Permit, (2) local percolating ground-water supplies, (3) imported water from Metropolitan Water District of Southern California (MWDSC), and (4) reclaimed wastewater, all to meet agricultural uses and municipal and industrial demands. (See attached Exhibit 3, the Annual Watermaster Report; pp. 35-36, 40-42, 45; Appendix A, Table A-5.)

The District provides a blend of water from its various sources (except reclaimed water which is not blended) through an integrated water distribution system serving municipal and industrial, as well as agricultural customers, throughout the District's service area. Thus, the place of use and purpose of use of water appropriated under the Permit have changed as a result of the integration of the District's Permit supply into a common distribution system.

RCWD has agreed to update the Permit to reflect contemporary conditions. In summary, the specific changes to be requested in Permit No. 7032 are: (1) to include the thirteen additional pumping wells located and shown as additional points of rediversion on Exhibit 2; (2) an expansion of the place of use to include the District's service area tributary to the Santa Margarita River; and (3) an expansion in types (purpose) of use to include municipal and

5

industrial.   The District has prepared the application and instituted compliance with the California Environmental Quality Act.  (See Declaration of Arthur G. Kidman, attached as Exhibit 4, and p. 54 of the Report, attached as Exhibit 3.)

There is no question that RCWD is using water today differently than the original permit holders used water under the Permit.  The Report shows that the Watermaster investigated this discrepancy and found that the State Board staff did not find it to be unusual in an urbanizing area like RCWD.  As recommended by the Report and the Watermaster, RCWD has initiated formal procedures to amend the Permit.

### B.  The Report

The Report shows that the Watermaster has carried out his duty to investigate the United States' allegations of "unauthorized" use by RCWD.  The Report describes the "issues" raised by the United States and the agreement by RCWD to apply for an amendment of Permit 7032.  (Exhibit 3; pp. 2, 52, 54.)

This court's Order for Appointment of a Watermaster; Power and Duties, entered March 13, 1989 (Exhibit 1), requires the Watermaster to annually prepare a written report summarizing Watermaster's findings and conclusions based upon data obtained in the prior year.  The report is required to include a list of all water users and their "vested rights and appropriative priority dates if any."  (Paragraph II, 2.)  The annual report also is to include a presentation for each "substantial user" in the water-shed, "showing for each such user the amount of water diverted, extracted, impounded, or imported and the amount used according

6

1   to category of use, including:   domestic, irrigation, other

2   agricultural, industrial, commercial, public and such other types

3   of uses as the Watermaster may deem appropriate." (Paragraph II,

4   3.)  In addition, the annual report is required to include a "list

5   of all unauthorized water uses" within the watershed.  (Paragraph

6   II, 4.)

7        The Watermaster states at the second page of the Report that

8   the United States "raised issues" of unauthorized water use under

9   the terms of the Permit.   (See attached Exhibit 3; Annual

10  Watermaster Report, Water Year 1990-91; p. 2.)  In Section 8 of the

11  Report on "Unauthorized Water Use," the Watermaster explains that

12  "complaints" concerning RCWD water uses were investigated.  (Id.,

13  p. 52.)   The Report informs the court that the District's water

14  uses under the Permit "have changed since the Application was filed

15  in 1947."  (Id., p. 54.)  The Watermaster concludes:  "Permit 7032

16  should be amended to provide for current and projected future

17  conditions.   [RCWD] has agreed that an amendment is in order and

18  has initiated action under the prescribed procedures of the

19  [SWRCB]."  (Ibid.)  The Watermaster states that "it would appear to

20  be appropriate to amend Permit 7032 by adding domestic and

21  commercial use to the type of use permitted. . . .  Discussions

22  with representatives of the . . . [SWRCB] indicate that it is not

23  unusual for urbanization to result in the need to change various

24  provisions of older water rights."  (Id., p. 41.)

25       The Report carefully presents the sources of water used by

26  RCWD and the end uses of water by RCWD customers.  As stated above,

27  these sources and uses of water are blended through an integrated

28  public water supply system operated by RCWD.   It is literally

MCCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

7

1   impossible to trace, as the United States apparently seeks, through

2   this integrated water system, each drop or molecule of Santa

3   Margarita River water to its ultimate use.   The Report shows in

4   substantial detail the quantities of various sources of water going

5   into the RCWD system and the quantities of water devoted to various

6   types of uses from the system.   It is not technologically possible

7   to show the precise nature of use or the precise location of use of

8   the specific water developed by RCWD from the Santa Margarita

9   system.   The Report handles this issue comprehensively, within the

10  limits of available information, and the United States' objections

11  must be overruled.

12       The Report also carefully delineates and documents the sources

13  of water to the RCWD system as between the younger and older

14  alluvia, as defined in the Judgment.   Here again, the United States

15  whines that the Report understates the young alluvium production

16  when, in fact, where the report deviates from the Judgment, it does

17  so in the favor of the United States' position.

18  ///

19  ///

20  ///

MCCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

8

## MEMORANDUM OF POINTS AND AUTHORITIES

I

### THE REPORT PROPERLY REFRAINS FROM LABELING

### RCWD'S WATER USE UNDER THE PERMIT AS

### "UNAUTHORIZED"

The essence of the United States objection to the Report is that the Watermaster has listed RCWD water use from the Santa Margarita River in the category of appropriative use (under Paragraph II, 2 of the Order for Appointment, etc.) rather than as an "unauthorized" use (under Paragraph II, 4). The United States further complains that the Report's presentation under Paragraph II, 3 of the Order for Appointment, etc., obfuscates the basis for the United States' contention that RCWD's use falls under Paragraph II, 4 rather than Paragraph II, 2.

The United States objections must be overruled. RCWD exercises appropriative rights under the Permit issued by the State Board which have not been revoked or otherwise declared "unauthorized" by that Board. California law clearly holds that an appropriative right is not rendered invalid because of changed uses. Further, the law of this case is that the United States is a mere propriety owner of land before this Court, that the Court will apply California water law to the case, and that concurrent jurisdiction has been reserved to State Board concerning appropriative rights in the Santa Margarita River and its tributaries. The Watermaster has no authority under the Judgment or under the Order for Appointment, etc., to declare water use under the Permit to be "unauthorized." The Watermaster's Report properly defers to the

9

State Board on this issue.  Judicial policy as well as the law of the case indicate that the court should sustain the Watermaster's deference and should likewise defer to the State Board on issues involving interpretation and enforcement of the Permit terms and conditions.

A.   Changes in the uses to which appropriated water is applied do not render the appropriation "unauthorized."

The California Supreme Court has long held that an appropriator may change the use of water without losing his appropriative right.  In City of San Bernardino v. City of Riverside (1921) 186 Cal. 7, 28, the Supreme Court stated:  "It has long been settled in this state with regard to water rights by appropriation that the appropriator may change the place of use thereof or the character of the use, without affecting his right to take it, and that other persons interested in the source from which it comes have no right to object to such changes.  [Citations.]"  [Emphasis added.]  The principle that a change in use does not affect an appropriator's right to take water was reiterated more recently by the California Supreme Court in City of Los Angeles v. City of San Fernando (1975) 14 Cal. 3d 199, 259.  In Hand v. Carlson (1934) 138 Cal.App. 202, 208, the California Court of Appeal affirmed the trial court's judgment that plaintiff could change his initial appropriative use of water for mining to agriculture without impairing his appropriative right.

Commentators on California water law agree that an appropriator's change in use for water under a permit is allowed, provided

10

that the water rights of others are not impaired.   (1 Rogers &
Nichols, "Water for California" (1967), §§ 184, 199, pp. 263, 283-
284; Hutchins, "The California Law of Water Rights" (1956), pp.
175, 178.)

The Watermaster has properly refrained from labeling RCWD
water use under the Permit as "unauthorized," deferring to the
SWRCB for the interpretation and enforcement of the Permit, before
characterizing RCWD water uses.   This court is requested to
overrule the objections of the United States, and itself defer to
the special expertise of the SWRCB on issues of appropriative
rights and water uses in California.

B.   The United States is before this court as a proprietary owner
     of land subject in all respects to California water rights
     law.

The United States' objections do not and cannot raise a
federal question with which this court needs to be concerned.   The
Ninth Circuit Court of Appeals decided that in this case the United
States is claiming water rights as a mere proprietary owner, and
not in any sovereign status.   (347 F.2d at pp. 53, 55; see also
People of the State of California v. United States (9th Cir. 1956)
235 F.2d 647, 656.)   The Ninth Circuit has cited a stipulation
entered by the United States and the State of California on
November 29, 1951, and decided: "By this stipulation the United
States excluded from the scope of this . . . suit any claim that
rights had been acquired by virtue of its sovereign status, and
///

McCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

11

1   agreed that the issue was simply the extent of its rights secured

2   pursuant to California law."  (347 F.2d at p. 53.)

3       Nine years before citing the stipulation in 1965, the Ninth

4   Circuit already declared:  "Here the United States 'claims only

5   such rights to the use of water as it acquired when it purchased

6   Rancho Santa Margarita, together with any rights which it may have

7   gained by prescription or use or both since' that time."  (235 F.2d

8   at p. 653.)  The Court of Appeals concluded:  "The government, as

9   regards all claimants to water outside the enclave, is not in the

10  position of sovereign, but in the position of a lower riparian

11  which is compelled to make beneficial use within the watershed and

12  for other than proper riparian uses must show an appropriation

13  according to law."  (Id., at p. 656.)

14      The Ninth Circuit Court of Appeals has determined that the

15  California law of water rights is controlling in this case.

16  (United States v. Fallbrook Public Utilities Dist. (9th Cir. 1965)

17  347 F.2d 48, 53, 55.)  It is long-standing federal policy to

18  determine water rights in accordance with state law when the United

19  States is a party to an adjudication.  (See McCarran Amendment, 43

20  U.S.C. § 666(a).)

21      Under California law, a mere change in use does not make an

22  appropriative right unauthorized.  Also under California law, the

23  SWRCB is the administrative body vested with the authority to

24  determine whether an appropriative use is "unauthorized."  This

25  controlling principle is underscored by the Judgment in this case.

26  ///

27  ///

28  ///

MCCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

C.   The Judgment reserves concurrent jurisdiction in the SWRCB to exercise its "statutory jurisdiction" over appropriative rights to water use.

The Modified Final Judgment and Decree entered April 6, 1966, ordered that the State Board "shall continue to exercise its statutory jurisdiction over all present or future appropriative rights to the use of water of the Santa Margarita River [watershed]." (Exhibit 2; pp. 14-15; emphasis added.)  In light of this deferral to the State Board, it is entirely proper for the Report to refrain from interpreting RCWD's uses under the Permit as "unauthorized."

In 1913 California enacted the Water Commission Act to provide a procedure for the appropriation of water for beneficial use.  Though originally conceived as ministerial, the authority granted to the State Board under this act "has steadily evolved from the narrow role of deciding priorities between competing appropriators to the charge of comprehensive planning and alloca-tion of waters."  (National Audubon Society v. Superior Court (1983) 33 Cal.3d 419, 444.)  This "comprehensive regulatory scheme" has been held to occupy the field of law governing appropriative uses of water in  California and to prevent the acquisition of appropriative rights through other means, such as prescription. (People v. Shirokow (1980) 26 Cal.3d 301, 309.)

This statutory scheme includes provisions for the issuance of permits for appropriation (Wat. Code, §§ 1250, 1380), for the investigation and determination of unauthorized uses (Wat. Code, §§ 1251, 1350), for the exercise of continuing jurisdiction over

McCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

13

1   compliance with permit terms and conditions (Wat. Code, § 1394),

2   for modification of permits under changed circumstances (Wat. Code,

3   §§ 1701, 1705), and the revocation of permits for noncompliance

4   with permit terms and conditions (Wat. Code, §1410).

5      The Watermaster was correct to refrain from entering into the

6   jurisdictional domain of the State Board, to make a determination

7   and declaration, as urged by the United States, that RCWD uses

8   under the Permit are "unauthorized."  The Judgment and State law

9   leave this determination to the State Board.

10

11  D.   Judicial policy strongly favors deferral to the State Board in

12       matters of its expertise.

13

14      Even though the Judgment reserves continuing jurisdiction to

15  the court concurrent with the jurisdiction of the State Board, the

16  court should defer to the Board in issues of whether current water

17  uses by RCWD are "unauthorized" under the Permit.  The Ninth

18  Circuit Court of Appeals has articulated the doctrine of primary

19  jurisdiction which is clearly applicable to this case.  In Farley

20  Transp. Co. v. Santa Fe Trail Transp. Co. (9th Cir. 1985) 778 F.2d

21  1365, 1370, the Court of Appeals concluded:  "The doctrine [of

22  primary jurisdiction] is applicable whenever the enforcement of a

23  claim subject to a specific regulatory scheme requires resolution

24  of issues that are 'within the special competence of an adminis-

25  trative body.'  [Citation.]. . . .  If the doctrine applies, the

26  judicial process should be suspended and the issues referred to the

27  appropriate administrative body for its views.  [Citation.]"  The

28  United States' claims regarding "unauthorized" water uses are

McCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

14

1  perfectly suited for the "uniform and expert administration" of
2  California's regulatory scheme by SWRCB. (Ibid.) (See also Funbus
3  Systems, Inc. v. State of California Public Utilities Com. (9th
4  Cir. 1986) 801 F.2d 1120, 1129; Pinhas v. Summit Health, Ltd. (9th
5  Cir. 1989) 894 F.2d 1024, 1031.)  Deference to the SWRCB is
6  particularly compelling in this case because the District's
7  application to amend the Permit will present to the Board the
8  issues alleged by the United States.

9      In reported decisions, this court has deferred to the juris-
10 diction of the SWRCB in resolving issues concerning appropriative
11 rights to water in this litigation. (United States v. Fallbrook
12 Public Utilities Dist. (S.D. Cal. 1958) 165 F.Supp. 806, 830-831,
13 855; Santa Margarita Mutual Water Co. v. State Water Rights Board
14 of the State of California (S.D. Cal. 1958) 165 F.Supp. 870, 873,
15 879.)

16     The issues surrounding the Permit are within the Board's
17 expert knowledge and a part of its duty of comprehensive water
18 planning.  (National Audubon Society v. Superior Court (1983) 33
19 Cal.3d 419, 451.)  The California Supreme Court has cautioned that
20 while the courts exercise concurrent jurisdiction with the State
21 Board, the courts "need not proceed in ignorance" and need not
22 "invest the time required to acquire the skills and knowledge the
23 Board already possesses." (Ibid.)  California Courts of Appeal
24 have emphasized that SWRCB is best equipped to decide on the
25 amendment of a permit, and is "The agency entrusted with the
26 orderly and efficient administration of the water resources of the
27 state." (Imperial Irrigation Dist. v. State Wat. Resources Control
28 Bd. (1990) 225 Cal.App.3d 548, 569, original emphasis; United

McCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

15

1   <u>States</u> v. <u>State Water Resources Control Bd</u>. (1986) 182 Cal.App.3d

2   82, 129.)

3

4                                    II

5        THE REPORT CONTAINS SEVERAL DESCRIPTIONS OF THE

6          DISTRICT'S MUNICIPAL AND COMMERCIAL USES OF

7            WATER, QUANTIFIES THOSE USES AND EXPLAINS

8                 THE DEPTH OF THE YOUNGER ALLUVIUM

9

10  A.   The Report describes in detail the municipal and commercial

11       uses of water by RCWD.

12

13       It seems the United States is reading a different report than

14  the 113-page document submitted to this court.   The United States

15  does not, and cannot, allege that the Watermaster failed to report

16  municipal and commercial uses of water by RCWD under the Permit.

17  Instead, the U.S. objects that the Watermaster failed to "state

18  clearly" that municipal and commercial uses of water by RCWD are

19  "unauthorized" under Permit 7032.   (See U.S. Objections; p. 2,

20  lines 6-9, 23.)   The United States admits in its objections that

21  the Report makes "scattered references" to the District's municipal

22  and commercial uses of water.   (Objections; p. 3; line 12.)   The

23  United States erroneously asserts that Section 8 of the Report on

24  "Unauthorized Water Use" is "notably devoid" of any discussion of

25  the District's municipal and commercial uses of water.

26       The Report explains that "municipal" use includes domestic and

27  commercial purposes for water.   The Report states: "Uses are listed

28  under agricultural, commercial, and domestic categories.   It is

McCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

16

noted also that much of the non-agricultural water use in the Watershed can also be considered municipal use, which includes both the domestic and commercial uses shown in tables in this Report." (Exhibit 3; p. 35.)   There are at least seven discussions in the Report, including five tables filled with extensive District data, on municipal and commercial water uses by RCWD.  (*Id*., p. 34.)   For instance, Table 7.1 lists the specific quantity of water used by RCWD in 1990-91 for agricultural, commercial, and domestic purposes.   (*Id*., p. 36.)   The Report identifies the quantity of water imported to RCWD and produced by seventy District wells, and lists the quantity used for agricultural, commercial, domestic, golf course irrigation, and landscaping purposes.  (*Id*., p. 40; Appendix A, Table A-5.)   The Report states that in 1990-91 "approximately 29% of the District's water use was for domestic and commercial purposes."  (*Id*., p. 41.)

The United States' second objection is that the Watermaster refused to report "the magnitude" of the District's water uses under the Permit, and "should quantify separately and clearly RCWD's municipal and industrial uses."  (Objections; p.5, lines 2-6.)  The detailed explanations and tables in the Report refute the objection.  The Watermaster need not trace every molecule of water from its source to its use.  The Report shows clearly that RCWD obtains water from several sources, all blended in the RCWD public water supply systems and serving numerous uses which have been broken into several categories.  (Exhibit 3; p. 36, 45; Appendix A, Table A-5.)  It is physically impractical to trace through RCWD's integrated public water supply system every drop of water from the Santa Margarita River System to its ultimate uses.

17

B.   The Report properly describes RCWD production from younger and older alluvia.

The third objection by the United States is the most disingenuous of the government's complaints about the Report. The United States argues that the Watermaster should not use thirty feet as the depth of the younger alluvium in the Murrieta Valley or calculated depths based upon well drilling data for the depth in the Pauba Valley. The government asserts that the depth used in the Report results in an inaccurate division of groundwater extractions between the younger alluvium and older alluvium, and "an unrealistically low recharge to the older alluvium" in the Pauba Valley. (Objections; p. 6, lines 5-10; p. 7, lines 1-3.) But the United States refers to its third complaint as a "fact-based objection" made "only for purposes of preserving the record." (Id., at p. 5, lines 25-26.) The government states that the objection is "not intended to initiate or suggest any court proceeding, or even amendment of the Report. . . ." (Id., at p. 6, lines 1-2.)

The objection is totally without merit. The March 1989 Order which appointed the Watermaster directed him "to administer and enforce the provisions of the Modified Final Judgment and Decree." (Exhibit 1; p. 2.) The Modified Final Judgment specifically adopted Interlocutory Judgment number 30 as part of this court's order in April 1966. (Exhibit 2; pp. 9, 11.) The Report explains that Interlocutory Judgment number 30 determined the maximum depth of the younger alluvium in the Murrieta Valley to be about thirty feet and 130 feet in the Pauba Valley. (Exhibit 3, p. 39.)

18

The Report describes the District's pumping from the younger alluvium in the Pauba Valley. (Exhibit 3; p. 45.) The Watermaster contrasts this court's initial determination of a 130-foot depth for the younger alluvium in Pauba Valley with more recent data indicating an approximate depth of 200 feet in some wells. (Id., pp. 46-47.) Tables are included with data from thirty-two RCWD wells to evaluate the younger alluvium in Pauba Valley. (Id., pp. 47, 49.) The Report utilized perforated intervals in RCWD wells to formulate an equation which increased the District's extractions from the younger alluvium in Pauba Valley (id., p. 48) compared to what the production would be using 130 feet as the maximum depth of the younger alluvium. Thus, where the Report varies from strict application of Interlocutory Judgment number 30, it does so in favor of increasing the estimate of RCWD's production from the younger alluvium. This interpretation by the Watermaster is favorable to the United States' position and, though it disadvantages RCWD, the District does not object for it has recognized that the depth figures in the Interlocutory Judgment were estimates only and should be modified accordingly as better data are available. The United States' objections in this subject should not only be overruled, they should be disregarded as so much groundless whining.

///

///

///

McCORMICK, KIDMAN & BEHRENS
LAWYERS
A PARTNERSHIP
OF PROFESSIONAL CORPORATIONS

19

### III

### CONCLUSION

The foregoing facts and authorities demonstrate that the objections of the United States to the Annual Watermaster Report should be overruled.  The United States should not be allowed to coerce the Watermaster into changing a comprehensive and correct Report.  Any viable issue concerning the propriety of RCWD's appropriative uses of water under the Permit should be resolved by the SWRCB.

DATED: November 2, 1992

Respectfully submitted,
McCORMICK, KIDMAN & BEHRENS
ARTHUR G. KIDMAN, ESQ.
MICHAEL D. MICHAELS, ESQ.

By: _Arthur G. Kidman_
ARTHUR G. KIDMAN, ESQ.
Attorneys for Defendant RANCHO
CALIFORNIA WATER DISTRICT

rcwd\mdm10a.opp

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

FILED
ENTERED
LODGED
RECEIVED

MAR 13 1989

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DE. UT.

UNITED STATES OF AMERICA,            )
                                     )
                    Plaintiff,       )        Civ. No. 1247-SD-T
                                     )
        vs.                          )        ORDER FOR THE APPOINTMENT
                                     )        OF A WATERMASTER; POWERS
                                     )        AND DUTIES.
FALLBROOK PUBLIC UTILITY             )
DISTRICT, et al.,                    )
                                     )
                    Defendants       )
                                     )

RECEIVED

APR 17 1989

RANCHO WATER DIST
TEMECULA, CA 92390

   In 1951, the United States of America brought this case to

seek a judicial determination of all respective water rights

within the Santa Margarita River watershed.   That litigation

culminated in this Court's decision <u>United States</u> v. <u>Fallbrook</u>

<u>Public Utility District, et al.</u>, 193 F.Supp. 342 (S.D.Cal. 1961),

<u>aff'd in part and reversed in part</u> 347 F.2d 48 (9th Cir. 1965)

and finally in the Modified Final Judgment and Decree, entered

April 6, 1966.

   During the course of this litigation the Court appointed

Lieutenant Colonel A. C. Bowen to collect water consumption data

from substantial users within the watershed and to report to the

Court on his findings.   By Order of January 19, 1975, Colonel

Bowen was appointed as Watermaster with broad powers to

administer and enforce the provisions of the Court's Modified

FORM OBD-183
MAR. 83

# EXHIBIT   1-1

1   Final Judgment and Decree.  Colonel Bowen served in this capacity

2   until his death in 1981.  No replacement has been appointed.

3   In June of 1988 the United States of America, Rancho

4   California Water District and Fallbrook Utility District

5   requested that this Court act to appoint a replacement for

6   Colonel Bowen.  After a hearing on June 13, 1988, this Court

7   ordered the three parties to advertise for and interview

8   prospective candidates for the position of Watermaster.  That

9   process having been completed, notice was given of this hearing

10  for any party[1]/ to show cause why this Court should not appoint

11  the candidate recommended by the United States, Rancho California

12  Water District and the Fallbrook Public Utility District.  Having

13  received no substantial objection to this candidate it is hereby

14  Ordered, Adjudged and Decreed:

15                              I

16              APPOINTMENT OF A WATERMASTER

17  James Jenks is hereby designated by this Court to act as

18  Watermaster for the Santa Margarita River watershed, to

19  administer and enforce the provisions of the Modified Final

20  Judgment and Decree and subsequent instructions and orders of

21  this Court.

22

23

24

25  _____

26  [1]/  For the purpose of this Order, party shall mean any party to
         the original adjudication and their successors in interest.

                              - 2 -

                              1-2

FORM OBD-183
MAR. 83

## II

### REPORTING DUTIES

Promptly after the end of each water year,[2/] the Watermaster shall report to the Court, in writing, a summary of his findings and conclusions in accordance with paragraph V of this Order and as follows:

1. A summary of water availability within the Santa Margarita River watershed for the previous water year and, to the extent feasible, a forecast of the same for the upcoming water year. The summary shall include a compilation, by hydrologic sub-unit, of the following water quantities:

a. Surface Water:

    1) Surface flow of the Santa Margarita River and its tributaries, with identification by quantity of the specific sources of such surface flow, including water from natural runoff, water imported from outside the watershed, and water from each of the subsurface sources identified in the applicable interlocutory judgments.

    2) Diversions of surface water, with identification by quantity of the related consumptive uses, losses, and returns.

    3) Water in surface storage on the last day of the previous water year.

b. Subsurface Water:

    1) Extractions from each of the subsurface sources identified in the applicable interlocutory judgments, with identification by quantity of the related consumptive uses, losses, and returns.

    2) For each such subsurface source, (i) the quantity of water in subsurface storage at the

---

2/ For the purposes of this Order a "water year" shall be defined as that twelve-month period beginning on October 1 and ending September 30.

- 3 -

1-3

end of the previous water year, (ii) the source and quantity of recharge.

c.   The source and quantity of water imported for use within the Santa Margarita River watershed.

d.   The source and quantity of water exported from the Santa Margarita River watershed.

2.  A list of all water users within the Santa Margarita River watershed, including for each a description of vested rights and appropriative priority dates if any.

3.  A report on the use of water by each substantial user[1] within the Santa Margarita River watershed for the previous water year showing for each such user the amount of water diverted, extracted, impounded, or imported and the amount used according to category of use, including:  domestic, irrigation, other agricultural, industrial, commercial, public and such other types of uses as the Watermaster may deem appropriate.

4.  A list of all unauthorized water use within the Santa Margarita River watershed, along with an explanation of actions taken or recommended to be taken with respect to such use.

5.  A statement of conditions and activities which, if continued, may pose a threat to the long-term water supply of the Santa Margarita River watershed.

6.  Report on the water quality within the Santa Margarita River watershed by hydrologic sub-unit during the previous water year.

7.  An update of the Watermaster's projected tasks, expenditures and requirements over the next five years.

---

[1] For the purposes of this Order, "substantial user" means any person that claims a right to use water under the orders, judgments or decrees of this Court in the above entitled action, and any person previously designated by this Court or the Watermaster to be a substantial user; any person using water or who claims a right to use water in an amount equal to or greater than or in a manner similar to the uses designated in Exhibit A to this Order; or any person using water within the Santa Margarita River watershed and designated by the Watermaster to be a substantial user.

- 4 -

1-4

8.   A proposed budget for the following water year, as more fully described in paragraph III, below.

A copy of the Watermaster's written report shall be mailed to each party listed on the Court approved mailing list, as attached to this Order, and to any party requesting a copy.  In addition, five copies of the report will be made available for inspection by the public, during regular business hours, at the Fallbrook Public Utility District, 990 E. Mission Road, Fallbrook, California; at Rancho California Water District, 28061 Diaz Road, Temecula, California and at Anza, California.

Any party that objects to a portion of the Watermaster's report, including the Watermaster's designation of substantial users, may do so by filing written notice of his objection within thirty days of service of the Watermaster's report.  Objections filed with this Court must refer to that portion of the Watermaster's report that is objectionable and state specifically the grounds for the objection.  Thereafter, the Court may determine a date for hearing the noticed objection.  Any party wishing to intervene on behalf of the objecting party or on behalf of the Watermaster may do so within the discretion of the Court.

III

OPERATING BUDGET

The Watermaster shall, within sixty days from the date of this Order, submit for approval by this Court a proposed operating budget for the 1989 water year.  The Watermaster shall set forth the estimated expense for discharging his duties as described

- 5 -

FORM OBO-183
MAR. 83

1-5

herein, including his recommendations for necessary staff, equipment and supplies. A copy of the proposed budget shall be mailed to each of the parties listed on the Court's approved mailing list and to any party that requests a copy of the proposed budget in writing. Any party may file objections to the proposed budget within thirty days of service. Thereafter the Court will set a date for hearing any objections filed.

If objections to the proposed budget are heard by the Court, then the final budget may be confirmed or adjusted in whole or part as the Court may deem proper.

Within 120 days of this Order the Watermaster shall submit for approval by this Court a proposed operating budget for the 1990 water year. Parties shall be served in accordance with paragraph II, above. Objections shall be filed and a hearing held in accordance with paragraph III, above. Thereafter, the Master shall submit his proposed budget for the following water year as a part of his annual report to the Court.

IV

FEES AND EXPENSES

The fees, compensation and expenses of the Watermaster hereunder initially shall be borne by the parties in the following proportions: One third by the United States; one third by the Fallbrook Public Utility District; and one third by Rancho California Water District. For the 1989 Water Year, the total assessment against the three parties shall not exceed $150,000.00. The Court shall retain the right upon its own

- 6 -

motion or the motion of any party to assess any other party using water under the provisions of the applicable judgments, decrees and Orders for the Santa Margarita River watershed for the costs, fees and expenditures of the Watermaster.

Payment of the amount assessed to a party shall be paid 30 days prior to the beginning of the Water Year to which the final budget is applicable.

The Watermaster is directed to use the fund control and payroll services that shall be provided by Fallbrook Public Utility District, and as fully set forth in Exhibit B, for administration of the Watermaster Budget.  An interest-bearing account shall be established at a local bank to maintain funds that may be contributed from time to time by the parties.  An audit will be conducted annually by an independent auditor and copies of the report will be made available to the parties and provided to the Court.

The Watermaster may apply for appropriate relief from this Court for failure of any party to pay the amount assessed for a particular water year.

## V

### POWERS AND DUTIES OF THE WATERMASTER

The Watermaster shall have the following powers and duties:

1.  To update the list of substantial users contained in Sections A, B and C of Exhibit A to this Order.

2.  To collect water consumption data and require monthly reports from the substantial users including, for each such user, the amount of water diverted, extracted, impounded or imported and the amount of water used, as follows:

- 7 -

a. To require every water user designated in Section A of Exhibit A to supply in writing the following factual data for each well owned or operated within the watershed:

1. The well owner;

2. The location of the well;

3. The quantity in acre-feet of water pumped during that month and the use by quantity to which the water was put; and

4. The depth in feet to water on or about the last day of that month and designate the zone(s) or aquifer(s) from which well casing perforations permit the production of water.

b. To require every water user designated in Section B of Exhibit A that diverts surface water to supply in writing the following factual data for each designated point of diversion within the watershed:

1. The diverter's name;

2. The location of the point of diversion;

3. The quantity in acre-feet of water diverted for the preceding month; and

c. To require every water user designated in Section C of Exhibit A to supply in writing the following factual data for each designated surface storage reservoir:

1. The reservoir owner;

2. The location of the storage facility;

3. The quantity, in acre-feet of water held in storage in such facility on the last day of the preceding month.

4. The purpose for which such water was stored.

- 8 -

FORM OBD-183
MAR. 83          © U.S. GPO: 1989-202-041/84933

d. To require every water importer subject to this Order that imports water to supply in writing the following factual data:

    1. The importer's name;

    2. The discharge point or point of connection of such imported water;

    3. The quantity in acre-feet, of water imported for the preceding month; and

e. To require every water user designated in Section A and B of Exhibit A and every importer of water within the Santa Margarita River Watershed to supply in writing the following factual data:

    1. The user's name;

    2. The quantity of water devoted to the uses listed below in each hydrologic sub-unit or area designated by the Watermaster:

        A.   Domestic

        B.   Agricultural irrigation

        C.   Other agriculture

        D.   Industrial

        E.   Commercial

        F.   Public

        G.   Others as Watermaster may deem appropriate.

f. To require every producer of reclaimed waster water subject to this Order to supply in writing the following factual data:

    1. the producers' name;

    2. The location of use or discharge of reclaimed water;

    3. The quantity in acre-feet of reclaimed water produced, delivered and discharged for the preceding month.

- 9 -

3. To make all reasonable efforts to collect and reconstruct water consumption data for the periods 1966 to date.

4. To obtain necessary pump efficiency data.

5. To operate and maintain gaging stations, investigate water availability and hydrology, and conduct water quality testing.

6. To perform such duties as are required under the Memorandum of Understanding and Agreement on Operation of Lake Skinner.

7. To take custody of existing records and reports, maintain proper records, and prepare periodic written reports as required by this Court.

8. To locate and investigate unauthorized water appropriations within the Santa Margarita River watershed.

9. To assist in locating, investigating and enjoining water quality violations within the Santa Margarita River Watershed.

10. The Watermaster shall have the authority to enter, upon reasonable notice and at reasonable times, upon the lands of any party to conduct such tests and measurements as he deems necessary to carry out the provisions of this, or any other order of the Court with respect to the duties enumerated above.

11. To the extent not superceded herein, this Order incorporates by reference the powers and duties granted by the Court in its Order filed January 27, 1966, as modified on April 6, 1966.

12. To design, print and distribute the forms necessary to convey the information required by this or any other applicable Order of the Court.

13. To report to the Steering Committee, established pursuant to Court Order, on a quarterly basis regarding the status of the Watermaster's investigation, proposed budget items for the upcoming water year and to respond to questions regarding the progress of any programs established by the Watermaster in implementing this Order.

14. To prepare a written plan within 120 days of the date of this Order stating the methodology and procedures for accomplishing the duties described above, including:

- 10 -

a.  A timetable for identifying substantial users and characterizing their use;

b.  A list of locations, numbers and descriptions of existing and proposed gaging stations;

c.  A detailed plan for the conduct of water quality testing to include collecting existing hydrological information and conducting additional tests of both surface and ground water;

The Watermaster shall serve the above-described plan to the parties in accordance with paragraph II, above.

VI

FAILURE TO COMPLY

Failure to comply with this Order in furnishing information and reports required herein may lead to an Order that the party is in default and whatever sanctions are appropriate.

VII

JURISDICTION

This Court retains jurisdiction, upon the application of any party or of the Watermaster or upon its own motion to make such further or supplemental orders or directions as may be necessary or appropriate for interpretation, enforcement or carrying out of this Court's judgments, decrees and orders with respect to the Santa Margarita River watershed.

1 5 MAR 1989

GORDON THOMPSON, JR.
UNITED STATES DISTRICT JUDGE

- 11 -

FORM OBD-183
MAR. 83      U.S. GPO: 1988-202-047/86933

1 - 11

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

FALLBROOK PUBLIC UTILITY DISTRICT,
a public service corporation of
the State of California, et al.,

    Defendants.

No. 1247-SD-C

MODIFIED
FINAL JUDGMENT
AND DECREE

The above-entitled cause came on regularly for trial before the Honorable James M. Carter, United States District Judge, following remand from the United States Circuit Court of Appeals for the Ninth Circuit, which directed that this Court ". . . enter no judgment until the entire suit can be disposed of at the same date."

Because of the complexities of this litigation and the fact that the physical water resources were located throughout the watershed, this Court determined that the said mandate could best be complied with by adjudicating the rights of the parties to the cause in segments of the watershed involving limited areas and numbers of defendants and by entering interlocutory judgments as the trial concerning each such segment was concluded. Proceeding in this manner, this

EXHIBIT 2-1

Court has entered or confirmed judgments, each of which concerns a specified area within the

Santa Margarita River watershed, or a limited legal issue

presented by the parties.  These interlocutory judgments

expressly provided that they were not final and not operative

until made a part of the final judgment.  This Court having

entered orders or interlocutory judgments on all areas within

the watershed and all issues presented for decision, and the

rights to the use of the waters of the Santa Margarita River

stream system having been adjudicated in those interlocutory

judgments, this Court therefore entered its final judgment

and decree on May 8, 1963, whereby the said Interlocutory

Judgments or Orders were listed, and the same, together with

the Findings of Fact and Conclusions of Law attached thereto,

were adopted as the final Findings of Fact, Conclusions of

Law, and Judgment and Decree of the Court.  Appeal from said

Final Judgment and Decree was taken to the United States

Court of Appeals.  The Court of Appeals, by its decision

dated May 26, 1965, reversed the judgment of this Court as to

the rights of the United States against Vail Company, and re-

manded the cause "with instructions that the final judgment

be appropriately modified to the end that the 1940 state

court decree is reinstated, subject to the rights of Vail

to seek relief from that judgment in accordance with the

views hereinbefore expressed."  In all other respects, the

final judgment and decree was affirmed.  By its order dated

October 4, 1965, the Court of Appeals denied the United

States petition for rehearing and clarification.

The cause is now before the Court pursuant to the mandate

- 2 -

Final Judgment consistent with that Court's opinion and pursuant to Notice of Hearing for such purpose duly served upon all parties to the cause except those heretofore determined to have no interest in the required modification. Upon consideration of the mandate and opinion of the Court of Appeals and the Final Judgment heretofore entered herein, the Court hereby makes and enters the following Findings of Fact, Conclusions of Law, and Modified Final Judgment and Decree:

## FINDINGS OF FACT

### I

On or about May 5, 1930, the Superior Court of the State of California in and for the County of San Diego entered findings of fact, conclusions of law and judgment in Case No. 42850 in the records of said Court. The parties to said action were the Rancho Santa Margarita, Vail Company and various individuals interested in that Company, the Executors of the Will of Murray Schloss, deceased, and Philip Playtor. The Rancho Santa Margarita, the Executors of the Will of Murray Schloss, deceased, and Philip Playtor did not appeal from said judgment. Vail Company did appeal from certain portions only of it. Thereafter and on or about July 12, 1938, the Supreme Court of the State of California reversed certain portions of the judgment. Said Supreme Court remanded the case with directions that the new trial be limited to those matters specifically disapproved and affirmed the trial court's judgment as to all other matters. Said decision of the Supreme Court is recorded in 11 Cal.2d 501. Thereafter on or about December 26, 1940, the Superior Court of the

- 3 -

said Case No. 30 entered a final judgment pursuant to the
stipulation of the parties. A copy of the 1940 stipulated
judgment is attached hereto as Exhibit A.

Vail Company and the Executors of the Will of Murray
Schloss, deceased, are parties to the action before this
Court and Vail Company's successor in interest, Rancho
California, has now voluntarily appeared herein. The United
States of America, a party to this action, is in privity with
and the successor of the Rancho Santa Margarita, and Max
Henderson, party in this action, is in privity with and the
successor of Philip Playtor.

## II

By Interlocutory Judgment No. 25 herein, dated April 25,
1961, this Court made certain findings of fact on the basis
of which it concluded, inter alia, (1) that the said 1930
findings of fact and judgment and the 1940 stipulated judg-
ment in the said state court action must be considered one
judgment, (2) that the said state court judgment was in-
equitable and should not be enforced as such by a court of
equity, and (3) that the said state court judgment was not a
contract, but if it were it had been rescinded by Vail
Company. Interlocutory Judgment No. 25 then enjoined the
United States and the other parties to said state court ac-
tion from enforcing or attempting to enforce in any manner
any "judgment, provision or term, finding of fact or conclu-
sion of law" set forth in the said state court action in
either the Supreme Court of California or the Superior Court
in and for San Diego County.

- 4 -

In its said opinion of May 26, 1965, the Court of Appeals determined that the 1940 stipulated judgment in the said state court action was not based upon the 1930 findings of fact but "upon agreement between the litigants." The Court of Appeals further stated: "It was upon that agreement that the California court relied and not upon the facts then (or earlier) existing." It was held that the 1940 stipulated judgment constituted a valid agreement between the parties to the stipulation, that the Vail Company had not established that it was entitled to rescind the agreement or that the United States had in any way repudiated it or estopped itself to assert its continuing validity and effectiveness, and that in any relitigation of rights as between the successor in interest of Rancho Santa Margarita and Vail Company, such relitigation "starts from where it last left off, which in this case, as to Vail, would be the 1940 decree."

IV

While holding that the 1940 stipulated state court judgment is valid and enforceable in this litigation as between the parties to that action, the Court of Appeals further noted "that some relief might be proper should Vail be able to show that mistakes of fact have caused it harm of sufficient magnitude to justify reformation." Without prejudging the question, the Court gave two examples of the kinds of circumstances which might, on application and adequate showing, be basis for some relief.

V

It is therefore plain that for this Court to carry out

- 5 -

the mandate of the Court of Appeals be as necessary that

Interlocutory Judgment No. 25, and the Conclusions of Law on

which it is based, be withdrawn and that there be included in

the final judgment of this Court a provision that the 1940

stipulated state court judgment is valid and enforceable as

between the parties thereto and their respective successors

in interest, subject to the rights of any of such parties

and their successors in interest to seek some relief from

the provisions thereof on showing that mistakes of fact have

caused the applicant harm of sufficient magnitude to justify

reformation.

The question whether the Findings of Fact on which Inter-

locutory Judgment No. 25 is based are of continuing validity

in light of the decision of the Court of Appeals is one about

which there is, or may be, considerable controversy between

the parties.  Without prejudging this question as to any of

such findings, the entry of this Modified Final Judgment and

Decree shall be without prejudice to the right of any party

in any future proceeding herein to attack or assert the

validity of any such Findings of Fact.

VI

- There are other provisions of the several Interlocutory

Judgments, as incorporated into the Final Judgment, and the

Findings of Fact and Conclusions of Law on which the same were

based, which are or may be inconsistent with the Court of

Appeals determination respecting the enforceability of the

1940 stipulated state court judgment as between the parties

thereto and their respective successors in interest.  However,

in view of the Court's continuing jurisdiction in this matter,

- 6 -

every provision in the constituent parts of the final judgment as heretofore entered which is not wholly consistent with the reinstatement of the 1940 stipulated state court judgment.  With the understanding that an application or applications to modify such possibly inconsistent provisions may be considered hereafter, none of the parties has at this time requested that the Court take action now to do more than the minimum required for compliance with the mandate of the Court of Appeals.

### CONCLUSIONS OF LAW

#### I

The 1940 stipulated judgment in the state court action referred to in Finding I above, a copy of which is Exhibit A hereto, is a valid and binding obligation of the parties thereto and is enforceable in this action as between the parties thereto and their successors in interest as such an obligation and as a valid judgment of the Court by which the same was entered.  The said stipulated judgment should therefore be incorporated into and adopted as part of the Final Judgment of the Court in this action.  Consistent with the mandate of the Court of Appeals, it is necessary that in so incorporating the said 1940 stipulated judgment into this Court's Final Judgment, and in adopting the same as a part thereof, there be reserved to the parties thereto and their successors in interest, the right to seek relief from any of the provisions of said 1940 stipulated judgment with respect to which it can be and is shown that mistakes of fact have

- 7 -

Case 3:51-cv-01247-JO-SBC   Document 4628   Filed 11/02/9?   PageID.46425   Page 42 of 50

fy reformation.

## II

The list of interlocutory judgments contained in paragraph 1 of this Court's Final Judgment, dated May 8, 1963, should be modified to conform to the provisions hereof with respect to Interlocutory Judgment No. 25.

## III

The right of any affected party to apply for modification of any other provision of the several interlocutory judgments, as incorporated into the Final Judgment, or of the Findings of Fact or Conclusions of Law on which the same are based, upon showing of incompatability with or inconsistency between such provision and the Court of Appeals determination respecting enforceability of the 1940 stipulated state court judgment and this Court's continuing jurisdiction to consider any such application, should be expressly reserved.

## IV

In all other respects, the Final Judgment of this Court, as entered herein on May 8, 1963, should be continued in force and effect.

### MODIFIED FINAL JUDGMENT

NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED:

## I

IT IS ORDERED, ADJUDGED, AND DECREED that the 1940 stipulated judgment in the state court action, referred to in Finding I above and attached hereto as Exhibit A, is a valid and binding obligation of the parties thereto, is enforceable

- 8 -

2-8

in this action as between the parties thereto and their suc-
cessors in interest as such an obligation and a valid
judgment of the Court by which the same was entered, and is
adopted as a part of and incorporated into this Modified
Final Judgment, provided, that there is expressly reserved
to the parties thereto and their successors in interest, the
right to apply for relief from any of the provisions of said
stipulated judgment with respect to which it can be and is
shown that mistakes of fact have caused the applicant harm
of sufficient magnitude to justify reformation.

I-A

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Inter-
locutory Judgment No. 25, and the Conclusions of Law on which
the same is based, are hereby withdrawn; provided, that the
entry of this Modified Final Judgment and Decree shall be
without prejudice to the right of any party in any future
proceeding herein to attack or assert the validity of any of
the Findings of Fact in said Interlocutory Judgment No. 25.

II

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each of
the following Interlocutory Judgments or Orders and the Find-
ings of Fact and Conclusions of Law attached thereto, includ-
ing amendments, if any, are also adopted by reference as
part of and incorporated into the Final Findings of Fact,
Conclusions of Law, and Modified Final Judgment and Decree
of this Court:

- 9 -

| Number | Date Interlocutory Judgment or Order Entered | Brief Description of Subject Matter |
|---|---|---|
| 1 | April 7, 1961 | Jack & Cosette Garner (Wilson Creek Area) - now merged into 33A |
| 2 thru 21 | April 7, 1961 | Fallbrook & Area South (non-riparian) - now included in Amended 39A |
| | November 21, 1962 | Amendment to 2 (Parcels to be included in 42 - Rainbow) |
| 22 | April 7, 1961 | Regarding Water Rights on Lands Originally Conveyed by Mexican Grants |
| 23 | April 7, 1961 April 4, 1962 | Appropriative Rights - FPUD Amendment to 23 |
| 24 | April 13, 1961 | Non-Statutory Appropriative Rights of USA in SMR for Lake O'Neill |
| 24A | May 7, 1963 | Stipulation Respecting Appropriative Rights to Use of Waters of SMR for Lake O'Neill - USA & FPUD |
| 25 | April 25, 1961 | Subject to provisions of paragraph I-A and any other applicable provisions of this Modified Final Judgment and Decree |
| 26 | April 25, 1961 | Oviatt (Parcels in 33 and 34A) |
| 27 | April 25, 1961 | Knox (All parcels included in 40) |
| 28 | May 24, 1961 | Miscellaneous Surface Impoundments |
| | December 8, 1961 | Amendments to 29A, 31A, 32A, 33A & 34A (Explanation of parcel numbers) |
| | February 8, 1962 | Amendments to 29A, 31A, 32A, 33A, 34A & 38A (Jurisdiction of surface waters) |
| 29A | August 1, 1961 | Sandia Creek sub-watershed (All Parcels now included in 39A) |

-10-

2-10

| Number | Date - Interlocutory Judgment or Order Entered | Brief Description of Subject Matter |
|---|---|---|
| 30 | March 8, 1962 | Murrieta-Temecula Ground Water Area (Riverside County subdivisions) |
| | July 3, 1962 | Amendment to 30 (Storage Units 1, 2, 3, 4 - approximately 418,000 ac.ft.) |
| | March 6, 1963 | Amendment to 30 - Respecting Stipulation--Settling Rights |
| 30A | March 13, 1963 | Murrieta-Temecula - Outside Ground Water Area |
| 31 | January 25, 1963 | Santa Gertrudis (Lower Murrieta) |
| 31A | July 27, 1961 | Tucalota Creek Sub-watershed Amended (Lower Murrieta) |
| | March 6, 1963 | Amendment to 31A - Respecting Stipulation - Settling Rights |
| 32 | December 11, 1962 | DeLuz Creek Sub-watershed |
| | March 6, 1963 | Amendment to 32 - Respecting Stipulation - Settling Rights |
| 32A | August 4, 1961 | DeLuz Creek Sub-watershed |
| 33 | December 11, 1962 | Anza Valley, Wilson Creek & Coahuilla-Down to ground water area |
| 33A | August 4, 1961 | Wilson & Coahuilla Creeks Sub-watershed |
| | March 6, 1963 | Amendment to 33A - Respecting Stipulation - Settling Rights |
| | April 9, 1963 | Amendment to 33A - Interlocutory Judgment 1 merged into 33A |
| 34 | February 20, 1963 | Temecula Creek above Aguanga Ground Water Area |
| | March 6, 1963 | Amendment to 34 - Respecting Stipulation - Settling Rights |
| 34A | December 7, 1961 | Temecula Creek Sub-watershed Above Vail Dam. |

-11-

| Number | Judgment or Order Entered | Brief Description of Subject Matter |
|---|---|---|
| | March 6, 1963 | Amendment to 34A - Respecting Stipulation - Settling Rights |
| 35 | June 4, 1962 | Vail Company (Temecula Creek Below Vail Dam and to the Gorge) |
| 35A | December 11, 1962 | Vail Company |
| 36 | July 3, 1962 | Warm Springs & Diamond-Domenigoni (Upper Murrieta) |
| 36A | February 20, 1963 | Warm Springs (Upper Murrieta) |
| | March 6, 1963 | Amendment to 36A - Respecting Stipulation - Settling Rights |
| 37 | April 6, 1962 | Military Enclave |
| | November 8, 1962 | Amendment to 37 (Sewage effluent discharges & Water conservation practices) |
| | February 20, 1963 | Amendment to 37 (Exclusive jurisdiction) |
| 38 | | (No Judgment #38) |
| 38A | January 3, 1962 | Temecula Creek Sub-watershed - Below Vail Dam and above Gorge |
| | March 6, 1963 | Amendment to 38A - Respecting Stipulation - Settling Rights (1/30/62 Order setting aside 38A 2/1/62 Order vacated) |
| 39 | December 11, 1962 | SMR - Below Gorge and above Enclave (Includes Sandia) |
| | April 9, 1963 | Amendment to 39 - (Includes Fallbrook and Area South) |
| 39A | November 8, 1962 | SMR - Below Gorge and above Enclave (Includes 29A) |
| | March 13, 1963 | Amendment to 39A (Includes Fallbrook and Area South) (Also 2 thru 21) |
| 40 | December 12, 1962 | Aguanga Ground Water Area (Temecula & Wilson) |

-12-

| Number | Date Interlocutory Judgment or Order Entered | Brief Description of Subject Matter |
|--------|-------------|-----------|
| 41 | November 8, 1962 | Indian Reservations |
| 42 | October 10, 1962 | Rainbow Creek |
| 42A | February 25, 1963 | Rainbow Creek |
| 43 | February 6, 1963 | Cottle & Gibbon |
| 44 | May 8, 1963 | National Forest Lands |
| 45 | December 12, 1962 | Order Regarding Water Extractions |
| | January 27, 1966 | Order Superseding No. 45 and Order of September 3, 1964 |

Provided, that there is hereby expressly reserved the
jurisdiction of this Court to consider, and the right of
any affected party to make application for, modification
of any of the provisions of said Interlocutory Judgments
or Orders, or of the Findings of Fact and Conclusions of
Law attached thereto, which is incompatible or inconsistent
with the provisions of paragraph I of this Modified Final
Judgment or with the Court of Appeals' determination
respecting enforceability of the said 1940 stipulated state
court judgment as between the parties thereto and their
respective successors in interest.

III

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that
questions with respect to interpretation and application
of the said 1940 stipulated state court judgment which
are not hereby specifically decided will be considered
and determined upon application of any affected party
after notice to other affected parties.

-13-

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the judgment provisions as set forth in the aforesaid interlocutory judgments and orders and the original Final Judgment herein are effective as of May 8, 1963, the date of entry of said Final Judgment (or any later dates as of which a modification of any thereof may have been entered), and that the modifications of the said Final Judgment hereby made are effective as of the date of entry of this Modified Final Judgment and Decree.

V

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court retains continuing jurisdiction of this cause as to the use of all surface waters within the watershed of the Santa Margarita River and all underground or sub-surface waters within the watershed of the Santa Margarita River, which are determined in any of the constituent parts of this Modified Final Judgment to be a part of the sub-surface flow of any specific river or creek, or which are determined in any of the constituent parts of this Modified Final Judgment to add to, contribute to, or support the Santa Margarita River stream system.

VI

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the STATE OF CALIFORNIA STATE WATER RIGHTS BOARD, or its successor agencies as may be provided by the laws of the State of California, shall continue to exercise its statutory jurisdiction over all present or future

-14-

2-14

Margarita River and its tributaries.

## VII

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that
this Court shall also continue to exercise jurisdiction
concerning all present or future appropriative rights
insofar as such uses may conflict with or be adverse to
the exercise of any prior vested water right within the
Santa Margarita River watershed, as adjudicated by the
provisions of the Interlocutory Judgments or orders
above set forth and by this Modified Final Judgment.

## VIII

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that
this Court reserves the right to amend, nunc pro tunc,
upon its own motion either with or without notice, any
interlocutory judgment or order or exhibit attached
thereto or this Modified Final Judgment, for the purpose
of correcting errors or inaccuracies in names, legal
descriptions or other similar factual data contained in
said interlocutory judgments or orders or exhibits, as
provided in Rule 60A of the Federal Rules of Civil
Procedure.

## IX

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
continuing jurisdiction reserved by this Court will be
exercised on the Court's own Motion, or upon the motion
of any party to this cause, his heirs, successors, or
assigns, made upon notice and in accordance with the
Rules of this Court.

-15-

2-15

X

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that neither this Modified Final Judgment and Decree nor any Interlocutory Judgment or order incorporated herein shall in any manner affect the right of the United States of America to acquire by the exercise of the power of eminent domain property including water rights of any nature as is or may be authorized by the laws of the United States of America; nor shall this Modified Final Judgment and Decree or any Interlocutory Judgment or order incorporated herein prevent any defendant from acquiring property including water rights of any nature by the exercise of the power of eminent domain as is or may be authorized by the laws of the State of California.

DATED: *April 6*                    , 1966.


*S/ James M. Carter*
JAMES M. CARTER, Judge
United States District Court

-16-

2-16