**ORIGINAL**

1   N. GREGORY TAYLOR, General Counsel
    KAREN L. TACHIKI, Assistant General Counsel
2   VICTOR E. GLEASON, Senior Deputy General Counsel
    The Metropolitan Water District of
3      Southern California
    350 S. Grand Avenue
4   P.O. Box 54153
    Los Angeles, CA 90054-0153
5
    (213) 217-6318
6
    Attorneys for The Metropolitan Water
7      District of Southern California

8

NOV 23 1994

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF C...

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12   UNITED STATES OF AMERICA,        )   Civ. No. 1247-SD-C
                                      )
13                  Plaintiff,        )
                                      )
14         v.                         )   **AMENDMENT OF MEMORANDUM OF**
                                      )   **UNDERSTANDING AND AGREEMENT ON**
15                                    )   **OPERATION OF DOMENIGONI VALLEY**
                                      )   **RESERVOIR**
16   FALLBROOK PUBLIC UTILITY         )
17   DISTRICT et al.,                 )
                                      )   Date:  January 9, 1995
18                  Defendants.       )   Time:  9:30 a.m.
     ─────────────────────────────    )   Courtroom:  1

19

20          Pursuant to Rule 15(a) of the Federal Rules of Civil

21   Procedure, Local Rule 15.1, and the attached Stipulation and Order

22   approved by the court on November 21, 1994, The Metropolitan Water

23   District of Southern California (Metropolitan) amends the

24   Memorandum of Understanding and Agreement for Operation of

25   Domenigoni Valley Reservoir (MOU) which it previously submitted to

26   the court for approval.

27   ///

                              - 1 -

1     Accordingly the attached November 1994 MOU is substituted

2   in place of the September 1994 MOU which was filed with the court

3   on November 8, 1994, as Exhibit A of the Memorandum of Points and

4   Authorities in Support of Metropolitan's Motion for Approval of the

5   MOU.   The MOU was amended to remove concerns raised at the

6   November 17, 1994, public hearing held by the Steering Committee

7   pursuant to the court's October 21, 1994 Order Setting Hearing and

8   Notice Requirements.

9          DATED:   November 22, 1994

10
                          N. GREGORY TAYLOR, General Counsel
11                        KAREN L. TACHIKI, Assistant General
                              Counsel
12                        VICTOR GLEASON, Senior Deputy General
                              Counsel
13

14

15   By _____

16   Attorneys for The Metropolitan Water
          District of Southern California

17

18

19

20

21

22

23

24

25

26   VEG:gld
     smr\amend
27

SUSAN M. TRAGER (State Bar #58497)
ROBERT C. HAWKINS (State Bar #144906)
MICHELE A. STAPLES (State Bar #144392)
LARRY B. MCKENNEY (State Bar #171331)
LAW OFFICES OF SUSAN M. TRAGER
2100 S.E. Main Street, Suite 104
Irvine, California  92714
(714) 752-8971

Attorneys for Francis Domenigoni,
Jean Domenigoni, the Francis N. and
Jean Domenigoni Family Trust,
Domenigoni-Barton Properties,
Elsa Barton, Fred Domenigoni,
Domenigoni Brothers Ranch,
and Cindy and Andy Domenigoni

FILED

NOV 21 1994

CLERK, U.S.
SOUTHERN...

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br><br>FALLBROOK PUBLIC UTILITY<br>DISTRICT, et al.,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1247-SD-C<br><br>STIPULATION AND ORDER<br><br>Date:　　　December 5, 1994<br>Time:　　　2:00 p.m.<br>Courtroom:　1 |

1          Metropolitan Water District of Southern California

2   ("MWD") has served and filed a Motion to Approve the Memorandum

3   of Understanding and Agreement on Operation of the Domenigoni

4   Valley Reservoir ("MOU").  The court has set this matter for

5   hearing on December 5, 1994 at 2:00 p.m. in Courtroom 1 at the

6   United States Courthouse, 940 Front Street, San Diego,

7   California.  On October 21, 1994, this court ordered a public

8   hearing on the MOU.  On November 17, 1994, MWD conducted the

9   court-ordered public hearing and received public comments on the

10  MOU.

11         MWD subsequently amended the MOU to address concerns

12  raised at the court-ordered public hearing, including concerns

13  raised by Francis Domenigoni, Jean Domenigoni, the Francis N.

14  and Jean Domenigoni Family Trust, Domenigoni-Barton Properties,

15  Elsa Barton, Fred Domenigoni, Domenigoni Brothers Ranch, and

16  Cindy and Andy Domenigoni (the "Domenigoni Family").  A copy of

17  the amended MOU is attached hereto as Exhibit "A".

18         MWD and the Domenigoni Family hereby stipulate as

19  follows:

20         1.   The December 5, 1994 hearing date currently set

21  for the hearing on MWD's Motion is continued until January 9,

22  1995, at/~~such time as the court deems appropriate~~, in Courtroom
         9:30 a.m.

23  1 at the United States Courthouse, 940 Front Street, San Diego,

24  California.

25         2.   By November 23, 1994, MWD will serve and file an

26  amended MOU as set forth in Exhibit "A" attached hereto as a

27  modification to its Motion.

28  ///

2100 S.E. MAIN STREET
SUITE 104
IRVINE, CALIFORNIA 92714
TELEPHONE (714) 752-8971

3.   If MWD files an amended MOU in accordance with subsection (2) of this stipulation, then the Domenigoni Family will not oppose the Motion.

4.   Notice of this stipulation will be given by MWD concurrently with MWD's service of the amended MOU.

DATED: _November 18 1994_        THE DOMENIGONI FAMILY


BY: _Susan M. Trager_
    Susan M. Trager
    Attorney for the
      Domenigoni Family


DATED: _November 18, 1994_       METROPOLITAN WATER DISTRICT
                                   OF SOUTHERN CALIFORNIA


BY: _Victor E. Gleason_
    Victor E. Gleason


IT IS SO ORDERED.

DATED: _11/21/94_

                                 GORDON THOMPSON, JR.

                                 JUDGE OF THE U.S. DISTRICT COURT

THE LANDMARK BUILDING
2100 S.E. MAIN STREET
SUITE 104
IRVINE, CALIFORNIA 92714
TELEPHONE (714) 752-8871

dom1\stip1.rch                          3

DOMENIGONI VALLEY RESERVOIR PROJECT

MEMORANDUM OF UNDERSTANDING AND AGREEMENT
ON OPERATION OF DOMENIGONI VALLEY RESERVOIR

NOVEMBER 1994

EXHIBIT A

DOMENIGONI VALLEY RESERVOIR PROJECT

**MEMORANDUM OF UNDERSTANDING AND AGREEMENT
ON OPERATION OF DOMENIGONI VALLEY RESERVOIR**

NOVEMBER 1994

*THE METROPOLITAN WATER DISTRICT
OF
SOUTHERN CALIFORNIA*

Domenigoni Valley Reservoir Project
Two California Plaza
350 South Grand Avenue
Los Angeles, California  90071-3123

**EXHIBIT A**

# TABLE OF CONTENTS

|  | Page |
|---|---|
| Recitals | 1 |
| Article I - Operating Principles | 3 |
| Article II - Implementing Criteria | 4 |
| Article III - Definitions | 6 |
| Article IV - Protection of Parties to the Action | 9 |
| Article V - Protection of Parties to MOU | 9 |
| Article VI - Submission to Court | 9 |
| Article VII - Review and Modification | 9 |
| Article VIII - U.S. Participation | 9 |
| Article IX - Protection of Parties With Litigation Pending | 9 |

List of Attachments

| Attachment A | Project Description and Background Information |
|---|---|
| Attachment B | Procedure for Calculating Surface Runoff and Surface Water Quality |
| Attachment C | Procedure for Determining Downstream Groundwater Elevations |
| Attachment D | Monthly Record Sheet |
| Attachment E | Interlocutory Judgments 36 and 36A |

MEMORANDUM OF UNDERSTANDING AND AGREEMENT

ON OPERATION OF DOMENIGONI VALLEY RESERVOIR


THIS MEMORANDUM OF UNDERSTANDING AND AGREEMENT ("MOU") is entered into as of the 21st day of November, 1994, by and between THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA ("Metropolitan"), a public entity; FALLBROOK PUBLIC UTILITY DISTRICT ("Fallbrook"), a public entity; RANCHO CALIFORNIA WATER DISTRICT ("Rancho"), a public entity; and the UNITED STATES, solely in its capacity as a water rights holder in the Santa Margarita River stream system.


<u>Recitals</u>


A.    The United States District Court for the Southern District of California ("Court") has adjudicated water rights to the Santa Margarita River stream system ("System"), in the case entitled <u>United States v. Fallbrook Public Utility District, et al.</u>, No. 1247-SD-C ("the Action"), by the Modified Final Judgment and Decree entered on April 6, 1966 and Amendatory Orders of June 27, 1968, January 16, 1975 and March 13, 1989 ("Judgment").


B.    Fallbrook, Rancho, and the United States are the principal existing and potential water users in the System; have been involved for some time in the Action to determine the respective rights and duties of the users of the waters of the System; and are parties of record in the Action.


C.    The Judgment retains continuing jurisdiction as to the use of all surface waters and certain underground waters within the watershed of the System, and Article II of the 1966 Decree adopts Interlocutory Judgment 28, which specifically retains continuing jurisdiction over impoundment of the surface waters of the System.

D.     Metropolitan is in the process of constructing an impoundment for imported water, known as the Domenigoni Valley Reservoir Project ("Project"), within the Warm Springs Creek Sub-Watershed of the System.  Although the Project's purpose is to provide regulatory storage capacity for Metropolitan's imported water distribution network, it will nonetheless unavoidably impound small amounts of surface waters of the System for short periods of time.  Attachment A to this MOU contains a general description of the Project.

E.     Article II of the 1966 Decree adopts Interlocutory Judgments 36 and 36A, for the Warm Springs Creek Sub-Watershed, which is tributary to Murrieta Creek.  Warm Springs Creek flows through the Project site.  Finding II of Interlocutory Judgment 36 states that Warm Springs Creek is an intermittent stream both as to time and place, flowing only during and immediately after periods of heavy precipitation and runoff.  Copies of Interlocutory Judgments 36 and 36A are appended to this MOU as Attachment E.  The exhibits to these Judgments are not included.

F.     The Project is located upstream of a geological feature described in Findings IV and V of Interlocutory Judgment 36, as being located in the general vicinity of the south line of Section 9, T6S, R2W, S.B.M.  Those Findings further described that feature as a "bedrock lip".

G.     Conclusion III and the third Order of Interlocutory Judgment 36 state that (a) groundwaters contained within alluvium north of the bedrock lip are not part of the System, so long as the groundwater level contained in the alluvium immediately north of the bedrock lip remains below elevation 1400 feet above Mean Sea Level (MSL); and (b) the groundwater elevation in that area is below 1400 feet MSL.  Recent investigations demonstrate that the groundwater elevation within alluvium north of the bedrock lip is currently at 1355 feet MSL.  Historic groundwater elevation data indicated that groundwater elevations near the bedrock lip have been below 1400 feet MSL since at least the late 1950's.  Finding IV of Interlocutory Judgment 36 further states that the bedrock lip causes

groundwater that reaches that point to move out of the System and into the San Jacinto River watershed, when the groundwater elevation is below 1400 feet MSL.

H.      Finding IV of Interlocutory Judgment 36A determines that groundwater in basement complex or weathered basement complex, rather than alluvium, is not part of the System.

I.      Metropolitan will continue to coordinate with the parties to this MOU in efforts to improve water resource management programs involving the Santa Margarita River Basin.

NOW THEREFORE, the parties agree as follows:

Article I.  Metropolitan will operate the Project in accordance with the following principles:

A.      The basic function of the Reservoir is to provide regulatory storage capacity for Metropolitan's imported water distribution system.  The Reservoir will store only water that would not have been available in the absence of the Reservoir.

B.      The quantity and quality of surface runoff that would flow past the West Dam, in the absence of the Reservoir, will be determined and a like quantity of water, of similar quality, will be released from the Reservoir or San Diego Canal (SDC) into Warm Springs Creek.

C.    Rainfall on the reservoir will be retained in the Reservoir, subject to principle A, until it is released subject to principle B, or such time as it returns to the atmosphere as evaporation.

D.    Water conservation and flood control are not explicit functions of the Reservoir.

E.    The elevation of groundwater in the vicinity of the bedrock lip will be monitored at the bedrock lip observation well, located in the southern half of the south half of Section 9, T6S, R2W, S.B.M.  This well is designated MO-6.  Attachment C provides a more detailed explanation of the procedure for monitoring groundwater elevations during reservoir operation.

F.    The outflow from the Reservoir will have little or no significant effect on the quality of the Warm Springs Creek water downstream of the West Dam.

Article II.    Metropolitan will implement those principles by operating the Project under the following criteria:

A.    Surface runoff that would normally flow downstream of the West Dam, in the absence of the Reservoir, shall be determined as set forth in Attachment B hereto.

B.    Reservoir releases shall be determined as follows:

1.    Mitigation releases from the Reservoir into Warm Springs Creek will begin within 24 to 72 hours after the surface runoff occurs, and will be adjusted daily as required by subsequent determinations of surface runoff.

2.  The rate of release from the Reservoir into Warm Springs Creek will be limited to the lesser of 50 cubic feet per second (cfs) or the computed mean daily rate of surface runoff that would have occurred at the West Dam in the absence of the Reservoir, except as noted in paragraphs 3 and 4.

3.  Releases into Warm Springs Creek, pursuant to paragraph 2, shall occur within reasonable and safe limits that would neither impair Metropolitan's use of the Project nor expose it to public liability. These flows may be limited as requested by the Watermaster.

4.  The start of any release from the Reservoir into Warm Springs Creek will be made at a low rate, and any increases in the rate of release will be made gradually in order that downstream parties may be alerted. This will be in addition to advance verbal notification of a pre-established list of critical downstream parties.

5.  Within the constraints imposed by physical limitations and other operating limits, as mentioned in paragraphs 2, 3, and 4 above, releases to Warm Springs Creek will be made at rates similar to those of the natural runoff that would have occurred in the absence of the Reservoir.

6.  Releases from the Reservoir into Warm Springs Creek will be continued following each flood event until the total computed quantity of surface runoff has been released.

C.  No storage space is specifically reserved in the Reservoir for flood control or conservation use. The releases from the Reservoir into Warm Springs Creek will be made through the Forebay or San Diego Canal.

D.    The quality of the imported water that is stored in the Reservoir will be adequate for intended uses.  Releases from the facilities will have little, if any, significant effect on the general water quality, as compared to the water quality that would have existed in the absence of the Reservoir.  Attachment B provides a brief summary of the water quality associated with sources that will be used for operation of the Domenigoni Valley Reservoir.

E.    Metropolitan will file a copy of the monthly record sheet, described in Attachment D hereto, with the Watermaster prior to the end of each respective following month.  The Watermaster will in turn deliver copies of each month's sheet to the parties hereto, other than Metropolitan.

Article III.    The following terms used in the MOU shall have the respective meaning given below unless otherwise indicated:

A.    <u>Alluvium</u> - The alluvial material, generally of a young geologic age, underlying the Domenigoni Valley and Menifee Valley.  This material is referred to as younger alluvium in Finding III of Interlocutory Judgment 36.

B.    <u>Downstream</u> - The area immediately west of (below) the West Dam and hydrologically down gradient from the Project including only that part of the Santa Margarita River system that would have received surface water from Warm Springs Creek in the absence of the DVR project.

C.    <u>DVR Watershed</u> - The Domenigoni Valley Reservoir (DVR) watershed, consisting of the 17.2 square mile drainage area tributary to Warm Springs Creek, upstream from the West Dam.  This includes the reservoir area.

D.    <u>East Dam</u> - An embankment dam that forms the eastern boundary of the Domenigoni Valley Reservoir.

E.      Export - Water that is released from the Reservoir into the Metropolitan water distribution system.

F.      Forebay - A water impoundment structure located downstream of the West Dam used to hold water for transfer in and out of the Reservoir, and in and out of the San Diego Canal.

G.      Groundwater - The water contained in the alluvial and rock aquifers within the zone of saturation in the basin downstream of the West Dam.

H.      Import - Water that flows into the Reservoir through the SDC and Eastside Pipeline.

I.      Inflow - Surface runoff and subsurface flow into the Reservoir from the area between the East and West Dams and above the Reservoir elevation.

J.      Maximum Storage Capacity - The maximum volume of water that may be stored in the Reservoir when the Reservoir surface water elevation is equal to the spillway crest elevation.

K.      Outflow - Discharges made through the Forebay or Reservoir outlets into Warm Springs Creek, seepage beneath the East, West, or Saddle Dams, and other subsurface flow out of the Reservoir.

L.      Project - The Domenigoni Valley Reservoir Project (DVRP) includes the East, West and Saddle Dams, and all ancillary facilities.

M.      Mitigation Release - Water that is released through the Forebay or West Dam outlets, or the San Diego Canal, into Warm Springs Creek.

N.    <u>Reservoir</u> - The Domenigoni Valley Reservoir created by the East, West and Saddle dams.

O.    <u>Saddle Dam</u> - An embankment dam that forms part of the northern boundary of the Domenigoni Valley Reservoir.

P.    <u>Steering Committee</u> - The Court appointed committee consisting of representatives from the substantial water users within the Santa Margarita Watershed.

Q.    <u>Storage</u> - The volume of water actually stored in the Reservoir at a given time.

R.    <u>Storage Space</u> - The difference between maximum storage capacity of the Reservoir and the storage at a given time.

S.    <u>Subsurface Flow</u> - Groundwater flowing below the ground surface.

T.    <u>Surface Runoff</u> - Surface water runoff from the tributary watershed that would have occurred at the West Dam in the absence of the East and West Dams.

U.    <u>Watermaster</u> - The individual designated by the court to act as Watermaster for the Santa Margarita River Watershed, to administer and enforce the provisions of the modified final Judgment and Decree and subsequent instructions and orders of the court.

V.    <u>West Dam</u> - An embankment dam that forms the western boundary of the Domenigoni Valley Reservoir.

Article IV.    Metropolitan's operation of the Project in the manner described in Articles I and II, above, shall not impair the rights of any of the parties to the Action under the judgement.

Article V.    Notwithstanding any other provisions in this MOU, or anything that might reasonably be implied or inferred therefrom, nothing herein shall be construed to affect in any manner any rights to the use of water from the Santa Margarita River or its tributaries that the Parties to this MOU hold.  Nothing in this MOU shall be construed as a transfer of or an attempt to transfer such rights or any part thereof between the Parties.

Article VI.    Upon execution of this MOU by the respective undersigned representatives on behalf of Fallbrook, Rancho, the United States, and Metropolitan, Metropolitan shall present this instrument to the United States District Court for the Southern District of California for approval and incorporation into the Judgment as the Court may determine appropriate under the circumstances.  Upon approval by the Court, this MOU shall become fully effective.

Article VII.    The criteria and reservoir release data referred to in Article II hereof, and the formulae included in the Attachments hereto shall be periodically reviewed and, based on operating experience, will be modified if deemed necessary or appropriate by the Parties hereto.

Article VIII.    Participation in this MOU is not to be construed as binding the United States regarding any rights, claims, obligations, interests, responsibilities, or duties it may have regarding the Domenigoni Valley Reservoir Project other than as a water rights holder in the Santa Margarita River System.

Article IX.    This MOU is not intended to be a determination of the nature or extent of Metropolitan's obligations in connection with its land acquisitions and mitigation programs for the Domenigoni Valley Reservoir Project, nor to create any estoppel to claims in litigation now pending in connection with those land acquisitions or mitigation programs.

IN WITNESS WHEREOF the undersigned have executed this Memorandum of Understanding and Agreement on behalf of their respective principals.


**THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA**

**APPROVED AS TO FORM**

N. Gregory Taylor
General Counsel

_____
John R. Wodraska
General Manager

_____

**FALLBROOK PUBLIC UTILITY DISTRICT**


By:_____
[name]
[title]


**RANCHO CALIFORNIA WATER DISTRICT**


By:_____
[name]
[title]


**UNITED STATES OF AMERICA**


By:_____
[name]
[title]

# ATTACHMENT A

## PROJECT DESCRIPTION AND BACKGROUND INFORMATION

21 November 1994

Metropolitan will construct a reservoir in Domenigoni and Diamond Valleys, Riverside County, State of California (Figure A-1). This reservoir will be known as the Domenigoni Valley Reservoir (DVR). Figure A-2 presents a more detailed location map of the Project, which is near the San Diego Canal (SDC) and the northern boundary of the Santa Margarita River Watershed. It will be located three miles south of, and between, the communities of Winchester and Hemet or about 70 miles east of the City of Los Angeles. The DVR project is compatible with the highest standards of water management. The need for the project was determined only after implementing studies of extensive water conservation, wastewater reclamation, groundwater conjunctive use, decontamination of groundwater aquifers, water transfers, and related water management measures. The five primary objectives the reservoir will accomplish are to:

o    provide emergency storage of imported water,

o    provide carryover (drought) storage of imported water,

o    provide seasonal storage of imported water,

o    preserve operating reliability of imported water, and

o    optimize groundwater programs within Metropolitan's service area.

Figure A-2 depicts the general layout of project facilities. The DVR will be formed by two earth/rockfill dams, 4.4 miles apart, within the Domenigoni and Diamond Valleys, plus a third saddle dam of the earth/rockfill type at the low point in the north rim. Associated hydraulic structures consist of an inlet/outlet tower, pump station, connecting tunnels, forebay and spillway. The East Dam will be approximately 178 feet high and 10,800 feet long, while the West Dam will be approximately 280 feet high and over 8,000 feet long. The Saddle Dam will be approximately 174 feet high and 2,300 feet long. The total earthwork volume of the East and West Dams is approximately 98,000,000 cubic yards. Relocations within the reservoir area include Newport Road and its parallel utilities, which will be relocated north of the valley, and the SDC. The SDC crossed the valley under the axis of the West Dam, and has already been relocated west of the West Dam.

DVR will serve as a regulatory and emergency water storage facility for imported water. When completed, the reservoir will nearly double the amount of surface storage available in Metropolitan's service area.  This will provide for more reliable delivery of imported water during peak summer months, droughts, and emergencies.  It will cover 4,800 acres and hold 800,000 acre feet, or 261 billion gallons of water when the reservoir is full.  SWP water will be delivered to the reservoir via the new underground Inland Feeder and its extension, the Eastside Pipeline, which will be located adjacent to the SDC.  Water from the CRA will be delivered to the reservoir via the SDC.  Water from the canal will be diverted into the pumping forebay west of the West Dam and pumped into the reservoir by pumping plant P-1.  Deliveries from the reservoir into the CRA will be through the Eastside Pipeline, bypassing the P-1 pumping plant.  Deliveries to the SDC will be made through P-1 and the forebay into the canal.

DVR will also serve as a public recreation area under a Master Plan developed with county agencies, surrounding cities and communities, and recreation and environmental interests. This plan includes development proposals for camping, picnicking, golfing, fishing, and boating with related recreational facilities.  In addition, a trail system is proposed for equestrians and hikers that will link the DVR recreation areas and also connect these areas with Lake Skinner and Salt Creek.   Two separate wildlife preserves are also part of the DVR project:  the newly created Dr. Roy E. Shipley Reserve and the expanded Santa Rosa Plateau Ecological Reserve.

After construction of the DVR project, reservoir operation will significantly modify surface and most subsurface water flows regimes from the present 17.2-square-mile Domenigoni Valley watershed to Warm Springs Creek.  As part of this project Metropolitan has acquired a portion of the lands riparian to Warm Springs Creek and overlying the Domenigoni/Menifee aquifer, along with the respective appurtenant water rights.

THE METROPOLITAN WATER DISTRICT
OF SOUTHERN CALIFORNIA

M.W.D. FACILITIES WITHIN
SANTA MARGARITA RIVER
WATERSHED BOUNDARY

Figure A-2

NOT TO SCALE





**ATTACHMENT B**

**PROCEDURE FOR CALCULATING SURFACE RUNOFF**

**AND SURFACE WATER QUALITY**

<u>Watershed and Runoff Characteristics</u>

The drainage system of the Domenigoni watershed essentially forms the headwater basin of Warm Springs Creek, a tributary of the Santa Margarita River through Murrieta Creek. Upstream from the West Dam, the drainage area can be considered in two parts:  (1) the entire drainage area of 17.2 square miles; and (2) the Goodhart Canyon Creek drainage area of 4.2 square miles.  Figure B-1 depicts the boundaries of both of these drainage areas. Field investigation has shown that the watershed and runoff characteristics of Goodhart Canyon up to the area of the East Dam resemble, to a reasonable extent, those characteristics found in Domenigoni Valley.

During operation, the Domenigoni Valley Reservoir will intercept runoff originating upstream from the West Dam.  Under pre-project conditions, the rain falling upstream of the West Dam may be considered as having two methods of disposal:

(1)     a very large percentage of the rain is locally converted to vapor by evaporation and transpiration;

(2)     a small percentage of the rain becomes runoff and joins the surface flows of Warm Springs Creek.

During operation of the Reservoir it will be necessary to mitigate for the second means of disposal (2) on an individual storm basis.  To determine the mitigation release it is planned to measure the volume of runoff from the Goodhart Canyon drainage area by means of a detention basin located just east of the East Dam.  The volume of runoff can then be correlated to the mitigation release required.

Method for Determining Surface Runoff Volume for Release

The Goodhart Canyon detention basin will have a capacity of 1,070 acre-feet, based on a theoretical 8-day event with a 100-year recurrence period.  This is adequate to store the entire volume of the most severe storm of record.  Additionally, 1.5 feet of freeboard will be provided above the 1,070 acre-feet storage level.

The basin will be located in the southeast corner of the East Side Recreation Area.  It will receive sheet flow from along its southern bank and concentrated runoff from a gully that will be diverted from flowing toward the East Dam to the detention basin.  The maximum water surface elevation in the basin during the design event will be 1623.5 feet MSL.  The lowest elevation in the basin will be 1,600 feet MSL.  The invert of the outlet pipe culvert will be elevation 1,608 feet, resulting in less than 50 acre-feet of dead storage.  The low area, below the outlet, will act as a sediment trap and will be cleaned as required to maintain the elevation versus capacity curve of the basin.

A continuous level measurement will be made to monitor the stored volume in the detention basin.  Any level increase in the basin below the invert of the outlet culvert will correspond directly to runoff volume from Goodhart Canyon.  The flowrate through the outlet culvert will be measured and integrated to determine the volume of Goodhart Canyon runoff released from the detention basin.  This volume will be added to the change in stored volume in the basin, based on the level measurement and the elevation versus capacity curve.  Based on the observed field conditions during operation of the detention basin the precise procedure for measuring the volume of runoff from Goodhart Canyon could be further refined, if necessary, to account for such factors as seepage from the basin.  However, continuous monitoring of detention basin water level should preclude the need for such refinement.

An increase in stored volume will be recorded as a positive value and a decrease in stored volume will be recorded as a negative value.  When the outflow volume added to the change in stored volume in the detention basin is greater than zero this value corresponds to the

runoff from Goodhart Canyon during the period being analyzed.  A negative or zero sum of these values indicates there has been no runoff into the basin, and no additional mitigation release is required to be determined for that period of time.

Using a straight forward linear extrapolation of the Goodhart Canyon runoff to determine the mitigation release is based on two assumptions.  First, the differences in rainfall over the two drainage areas are negligible.  Second, the difference in runoff per square mile in the entire Domenigoni Valley drainage area compared to the runoff per square mile in the Goodhart Canyon drainage area is negligible.  Thus, the mitigation volume to be released downstream from the West Dam is calculated as $17.2/4.2 = 4.1$ times the volume of runoff measured at the detention basin.

<u>Source, Location and Rate of Release</u>

Ultimately, the mitigation flows must be discharged into the existing natural drainage of Warm Springs Creek and the groundwater aquifer at the Project boundary.  Mitigation flows will be released from the Reservoir or a point on the SDC to the defined existing Warm Springs Creek.  This method of discharge requires a small improved channel from the release location, across the West Side Recreation Area, to  culverts that will be installed under Holland Road.  The new culverts will discharge into the existing drainage ditch along the east side of Winchester Road.  Drainage flows continue south in the existing ditch to an existing box culvert, which crosses under Winchester Road and discharges into the existing Warm Springs Creek.

For this proposed mitigation the project boundary is Holland Road.  When dam construction cuts off natural drainage through the valley, the ability to make mitigation releases must be in place.  Mitigation releases shall be made within reasonable and safe limits that would neither impair Metropolitan's use of the Project nor expose it to public liability.

The volume of runoff from Goodhart Canyon will be determined for each 24-hour period. This volume will be multiplied by 4.1 to determine the mitigation release volume. When this volume corresponds to a mean daily flowrate of less than 50 cfs, releases will be made at the mean daily flowrate or the maximum reasonable and safe limit, whichever is less. If releases are already being made at the reasonable and safe limit, up to 50 cfs, because of a prior event, the subsequent event volume will be added to the prior event and releases will be continued at the reasonable and safe limit, up to 50 cfs, until the entire volume of required release has been made. When the mean daily flowrate exceeds 50 cfs, releases will be made at 50 cfs, or the maximum reasonable and safe limit, until the required release volume has been met. The mitigation release rate will be limited to a maximum discharge capacity of 50 cfs or the maximum reasonable and safe limit, in order to avoid access, overflow, and other problems downstream.

Calculation of a daily flow duration curve indicates that significant runoff occurs at or above a daily flow of 50 cfs for 0.10 percent exceedance time and is associated with the major storms. In most cases mitigation flow would be able to be released within 24 hours following the precipitation at this flow rate. Only in extremely unusual situations would a release system sized in this manner take longer than a week to pass the required flow for a given storm.

Rainfall on the Reservoir

Rainfall that falls on the Reservoir surface, which under pre-reservoir conditions would normally be disposed of locally by evaporation and transpiration, will also naturally evaporate from the surface of the Reservoir. Thus, current mitigation releases are designed to ensure that the quantity of runoff that is released downstream, after the Domenigoni Valley Reservoir is constructed, is the same quantity of runoff that would have naturally occurred had the Reservoir not been construction, as provided by operating principles A, B, and C of Article II.

Water Quality of the Release

The following table includes a comparison of concentrations (in mg/l) of selected constituents of imported water and Lake Skinner water. The data are from the 1992 Metropolitan Water District Annual Report, which is the most recent report containing comprehensive chemical analyses for these waters.

| Constituent | Units | Colorado River Water | State Water Project | Surface Water Winchester Road | Lake Skinner |
|---|---|---|---|---|---|
| TDS | mg/l | 641 | 375 | 358 | 624 |
| Alkalinity | mg/l | 135 | 87 | 65 | 130 |
| Bicarbonate ($HCO_3$) | mg/l | 165 | 106 | 80 | 154 |
| Calcium (Ca) | mg/l | 76 | 27 | 28 | 72 |
| Chloride (Cl) | mg/l | 83 | 104 | 29 | 87 |
| Hardness | mg/l | 311 | 131 | 122 | 298 |
| Magnesium (Mg) | mg/l | 29.5 | 15.5 | 5.2 | 29 |
| Nitrate ($NO_3$) | mg/l | 0.8 | 2.85 | 19 | 0.6 |
| Potassium (K) | mg/l | 4.5 | 3.8 | 149 | 4.5 |
| Sulfate ($SO_4$) | mg/l | 260 | 72 | 105 | 245 |
| Boron (B) | mg/l | 0.1 | 0.22 | 0.1 | 0.14 |
| Conductivity | $\mu$mho/cm | 1033 | 677 | 454 | 1014 |

Additional samples are being collected to substantiate the above results. It should be noted that the imported water, which will be used in this project, has essentially the same chemical composition as water released for surface water mitigation at Lake Skinner.

For comparison, the concentrations are included from a surface water sample collected at the culvert that passes under Winchester Road. The sampling location is identified in Figure C-1 as SW-4, located approximately 2,500 feet south of the intersection of Holland and Winchester roads. The sample was collected on 19 March 1994 during high flow conditions. The elevated levels of nitrate observed in the Winchester Road surface water sample are the

result of irrigation water being mixed with surface runoff.  Elevated levels of nitrate would not be associated with reservoir construction or operation.



LEGEND:

................. GOODHART CANYON
DRAINAGE BOUNDARY

— — — — RESERVOIR
DRAINAGE
BOUNDARY

———————— DVR PROJECT
SITE BOUNDARY

0   2000   4000   5000
SCALE IN FEET

Domenigoni Valley Reservoir Project

Basco) (Bechtel & Theeson Engineers Corp.)

WINCHESTER

WARM SPRINGS CREEK

WINCHESTER ROAD

WEST DAM AXIS

SADDLE DAM AXIS

SALT CREEK

DOMENIGONI VALLEY

13 SQ. MI.

DIAMOND VALLEY

NEWPORT ROAD

GOODHART CANYON
2.2 SQ. MI.

EAST DAM AXIS

HEMET

FARM AVE.

STATE STREET

MWD
METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA

DISTRIBUTION SYSTEM
DOMENIGONI VALLEY RESERVOIR PROJECT
RUNOFF, WATER, EROSION &
SEDIMENTATION CONTROL
DOMENIGONI VALLEY RESERVOIR
AND GOODHART CANYON
WATERSHED BOUNDARIES

DESIGNED
DRAWN
RECOMMENDED
APPROVED

DATE
AUGUST 1994

# ATTACHMENT C

## PROCEDURE FOR DETERMINING DOWNSTREAM GROUNDWATER ELEVATIONS

The Diamond and Domenigoni Valleys comprise a groundwater basin filled with alluvium, bounded by areas of consolidated rock materials that are considerably less permeable than the alluvial deposits.  Downstream of the West Dam these rocks are similar in texture and composition to granite.  Quantifying groundwater flow downstream from the reservoir presents a significant problem, thereby making it difficult to regulate.  Metropolitan has been continuously monitoring selected wells in the Valley since April 1990.

The extent and location of this groundwater basin alluvium have been delineated and incorporated by exhibit reference into Interlocutory Judgment 36.  In addition, the Court adjudged that all ground waters below an elevation of 1,400 feet MSL, contained in areas of alluvium located north of the south line of Section 9, T6S, R2W, S.B.M., are not a part of the waters of the Santa Margarita River system due to the presence of a bedrock lip rising to elevation 1,400 feet MSL.

This bedrock lip is a barrier to the southward movement of all ground waters below elevation 1,400 feet and causes such ground waters to move westward into the Menifee Valley of the San Jacinto River watershed, instead of down Warm Springs Creek.  Recent data indicate that water levels in the alluvial aquifer continue to be below elevation 1,400 feet MSL in the immediate vicinity of the bedrock lip.  In July 1994 the groundwater elevation observed in MO-6, located about 2,000 feet northeast of the bedrock lib was 1355.7 ft MSL.  A copy of the hydrograph for MO-6 is included at the end of this Attachment.

However, a shallow perched zone in the immediate vicinity of the bedrock lip provides a source of groundwater that flows over the bedrock lip and into the Santa Margarita basin. Field evidence and the 1960 Court testimony suggest that the volume of groundwater flowing over the bedrock lip and into the Santa Margarita River basin is about 1 acre-feet per year. This is local recharge into the basin and would not be affected by the construction or operation of the DVR project.  Finding V of Interlocutory Judgment 36 determined that groundwater that does move over the bedrock lip and down Warm Springs Creek is consumed almost in its entirety by evaporation and transpiration losses within a relatively

short distance downstream.  In addition, the quality of water flowing over the bedrock lip will not be affected by construction or operation of the DVR project.

Groundwater levels in the vicinity of the bedrock lip will be measured on a monthly basis using the bedrock lip monitoring well (MO-6).  The results of monitoring the bedrock lip observation well will be included in the monthly record sheet, and used to demonstrate compliance with Recital "G" and operating principle "E".  Groundwater levels measured in this well will be used to determine if the groundwater elevation in the alluvium exceeds 1400 feet MSL.



LOCATION - North: 2185303   East: 6305229
GROUND SURFACE ELEVATION:  1445.8 ft NAVD88
STICKUP:  2.1 feet above ground surface          DATE WELL INSTALLED:  June 22, 1994

| DATE MEASURED | DEPTH BELOW TOP OF CASING, ft | ELEVATION OF GROUNDWATER SURFACE, ft | DATE MEASURED | DEPTH BELOW TOP OF CASING, ft | ELEVATION OF GROUNDWATER SURFACE, ft | DATE MEASURED | DEPTH BELOW TOP OF CASING, ft | ELEVATION OF GROUNDWATER SURFACE, ft |
|---|---|---|---|---|---|---|---|---|
| 07/22/94 | 92.3 | 1355.6 | | | | | | |
| 08/11/94 | 92.4 | 1355.5 | | | | | | |
| 09/08/94 | 92.9 | 1355.0 | | | | | | |

SCREEN PERFORATION:  0.040-inch slot (110.5-30.5 ft) SAND PACK:  Lonestar #3 (115-25.5 ft)
TYPE/THICKNESS OF SEAL(s):  Bentonite pellets 25.5-20.5 ft, 5% bentonite-cement
  grout 20.5 ft to surface, with steel protective casing
AQUIFER COMPLETION:  alluvium;   MONITORING REQUIREMENTS:  long term, water level

Project:   Domenigoni  Valley  Reservoir
Project Location:  Riverside  County,  California

**GROUNDWATER ELEVATION vs. TIME  in Boring No. MO- 6**

SNA 10/20/94 DVGWEL DVRAL


EBASCO / Black & Veatch
Woodward-Clyde

Proj. Feature:  WB



ATTACHMENT D

MONTHLY RECORD SHEET

**21 November 1994**

Routine monitoring data will be forwarded to the Watermaster in accordance with the operating principles set forth in section I of these criteria.  Specific data will include:

a.    Monthly groundwater elevation data.

b.    Mitigation releases from the reservoir or the SDC, including release quantity, time of release, duration of release, and flow rate of the release.

c.    Import and natural surface water quality data [submitted when collected]

d.    Daily stage measurements at the Goodhart Canyon detention basin.

e.    Daily measurements at the Goodhart Canyon gaging station, if constructed

f.    Estimated daily local runoff.

g.    Daily precipitation at the reservoir.

ATTACHMENT E

INTERLOCUTORY JUDGMENT No. 36, dated 3 JULY 1963
INTERLOCUTORY JUDGMENT No. 36A, dated 20 FEBRUARY 1968
(WITHOUT EXHIBITS)

LAW OFFICES
SACHSE AND PRICE
1045 SOUTH MAIN STREET
FALLBROOK, CALIFORNIA
RANDOLPH 6-1154

ENTERED

JUL 3 – 1962

Attorneys for   Defendants

**LODGED**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

☐ 18 1961

CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT

**FILED**

### SOUTHERN DISTRICT OF CALIFORNIA

JUL 3 – 1962

#### SOUTHERN DIVISION

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
By _____ DEPUTY

UNITED STATES OF AMERICA,

Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

Defendants.

No. 1247-SD-C

FINDINGS OF FACT, CONCLUSIONS
OF LAW, AND INTERLOCUTORY
JUDGMENT No. 36, WARM SPRINGS
CREEK SUB-WATERSHED.

## FINDINGS OF FACT

### I

Warm Springs Creek, a tributary of Murrieta Creek, rises in Sections nine (9) and fifteen (15), Township six (6) South, Range one (1) West, S.B.M., and flows in a generally southwesterly direction through areas known as Diamond and Domenigoni Valleys. It leaves Domenigoni Valley at a point near the Southeast (SE) corner of the Southwest Quarter (SW 1/4) of the Southwest Quarter (SW 1/4) of Section nine (9), Township six (6) South, Range two (2) West, S.B.M. From that point Warm Springs Creek proceeds in a generally south and westerly direction throughout a rather deeply incised valley to its point of confluence with Murrieta Creek in Section twenty-four (24), Township seven (7) South, Range three (3) West, S.B.M. The course and location of Warm Springs Creek are delineated upon U. S. Exhibits 274, and 208-F, made a part hereof

1247

by reference.

Warm Springs Creek is an intermittent stream both as to time and place, flowing only during and immediately after periods of heavy precipitation and run-off.  There is no evidence as to the amount or rate of flow of Warm Springs Creek, or as to the average, maximum, minimum, normal or anticipated flow of Warm Springs Creek, and the Court expressly makes no findings thereon because of such lack of evidence.

III

Warm Springs Creek has its source in and flows through Diamond and Domenigoni Valleys.  These valleys comprise a ground water basin filled with sedimentary material described herein as younger alluvium.  The extent and location of said ground water basin is delineated upon United States Exhibits 274 and 208-F, made a part hereof by reference.

The ground water basin referred to herein is part of a continuous body of younger alluvium which extends from within the San Jacinto River watershed in Sections 33 and 34, T5S, R 1 W, and Section 3, T6S, R 1 W, across the watershed divide in Sections 3 and 4, T6S, R 1 W, and Sections 32 and 33, T 6 S, R 2 W, S.B.M. into the Santa Margarita River watershed; thence continuing in a generally westerly and southwesterly direction as delineated on United States Exhibits 274 and 208-F; thence crossing the water-shed divide out of the Santa Margarita River watershed and into the San Jacinto River watershed in Sections 8 and 9, T6S, R 2 W, S.B.M.

IV

The southerly limit of said ground water basin is in the general vicinity of the south line of Section 9, T 6 S, R 2 W, S.B.M.  At that point the said ground water basin is enclosed by a lip of basement complex material rising to elevation 1400',

- 2 -

1040

1  which lip prevents the movement of ground water from said basin
2  southwesterly into the remainder of Warm Springs Creek sub-
3  watershed and the Santa Margarita River watershed, excepting at
4  such times as the ground waters north of said lip exist at or above
5  elevation 1400'.

6        The presence of said basement complex lip is a barrier
7  to the movement of all ground waters within said basin below
8  elevation 1400', and causes such ground waters to move out of
9  said basin and out of the Santa Margarita River watershed and into
10 Menifee Valley of the San Jacinto River watershed in Section 8,
11 T 6 S, R 2 W, S.B.M.

12              V

13        Due to the relatively low permeability of the alluvium
14 underlying Warm Springs Creek at and near said basement complex
15 lip, the quantities of ground water which can percolate through
16 it are small.  At such times as the ground water level in said
17 basin is above elevation 1400', the larger proportion of such
18 ground waters move westerly out of the Santa Margarita River
19 watershed and into Menifee Valley of the San Jacinto River water-
20 shed; and the smaller proportion of such ground waters move over
21 the basement complex lip and on down Warm Springs Creek.  The
22 ground waters which do move down Warm Springs Creek downstream from
23 the south line of Section 9, T6S, R 2 W, S.B.M. are consumed
24 almost in their entirety by evaporation and transpiration losses
25 within a relatively short distance downstream.

26              VI

27        United States Exhibit 208-F, incorporated herein by
28 reference delineates  the sub-watershed of Warm Springs Creek,
29 and its relation to the Murrieta-Temecula Ground Water Area,
30 subject of Interlocutory Judgment 30 herein.  On said map are
31 delineated the geologic formations found in said sub-watershed,
32 including the areas of younger alluvium that comprise Diamond and

- 7 -

Dominguez Basin. There are also delineated thereon the exterior
boundaries of all land ownerships in said sub-watershed, indicated
by parcel numbers, as said land ownerships appeared at the date
of recordation of Notice of Lis Pendens, April 9, 1958, in Book
2252, page 17, Official Records of Riverside County.

Attached hereto, marked Exhibit A, and made a part
hereof by reference, is a tabulation of the land ownerships
delineated upon United States Exhibit 208-F, which tabulation
indicates property descriptions and apparent ownerships, and in
addition thereto may contain factual statements concerning the
following matters:

1. Wells.

2. Surface diversions.

3. Gross acreages.

4. Irrigated acreages.

5. Irrigable acreages.

6. Water duty.

The factual statements contained in said Exhibit which
pertain to well and surface diversions are true as of the date of
this Interlocutory Judgment. The factual statements as to apparent
ownerships are set forth for convenience only, and are not neces-
sarily correct and are not intended to be determinative or probative
on the issue of ownership of any real property described in said
Exhibit.

The factual statements contained in said exhibits which
pertain to gross acreages, irrigated acreages, irrigable acreages
and water duty almost without exception are based on evidence
introduced in this case by the United States of America with an
express assurance by its counsel that apportionment was not being
sought at this stage of the litigation; because of this fact and
the fact that this Court is not at this time making any order
apportioning or regulating the use of the waters involved herein,

1   That facts pertaining to gross acreages, irrigated acreages,
2   irrigable acreages and water duty are not material to any issue
3   decided by Interlocutory Judgment No. 36 entered herewith; that
4   in the exercise of this Court's continuing jurisdiction in this
5   cause said facts may well be material to an issue presented to
6   this Court in the future; therefore, this Court finds that such
7   factual statements which are contained in said Exhibit A which
8   pertain to gross acreages, irrigated acreages, irrigable acreages
9   and water duty are supported by the evidence in this case and
10  such factual statements shall be prima facie evidence as to gross
11  acreages, irrigated acreages, irrigable acreages and water duty
12  in any subsequent proceeding before this Court in this cause;
13  as used herein prima facie evidence is that which suffices for
14  the proof of a particular fact until contradicted or overcome by
15  other evidence.

16.                         VII

17       Certain defendants are presently extracting waters from
18  the ground water basins of Diamond and Domenigoni Valleys and are
19  using such waters for domestic and agricultural purposes upon
20  their lands.

21       All of the uses to which such defendants are putting
22  water upon their lands, and all of the methods of use of water by
23  defendants are reasonable and beneficial and within the limitations
24  imposed upon the use of water by the Constitution and Statutes of
25  the State of California.  Under present conditions it would be
26  wasteful and unreasonable and contrary to the Constitution and
27  Statutes of the State of California to require that the water
28  level in Diamond and Domenigoni Basins be maintained at elevation
29  1400' or above, and any such requirement would interfere with the
30  reasonable use of the said ground waters by overlying landowners.

31                         VIII

32       That the issue of apportionment as to the quantity of

1    the ground waters of Diamond or Domenigoni Basins to which any
2    overlying landowners may be entitled has not been reached at
3    this stage in this case, and the Court has taken no evidence
4    directed to this issue.  This issue is left open, is not decided
5    herein and shall be litigated by this Court if and when in the
6    future it becomes necessary to do so.

                                IX

8         That because of the fact that the movement of ground
9    waters within Diamond and Domenigoni Basins is westerly and out
10   of the Santa Margarita River watershed and into the San Jacinto
11   watershed it would be impossible for this Court at this time to
12   make an allocation of said waters among all owners of lands over-
13   lying said basins in that those persons who own lands which over-
14   lie said basin within the San Jacinto watershed are not parties
15   to this suit.

                                X

17        The course of Warm Springs Creek downstream from the
18   south line of Section 9, T 6 S, R 2W, S.B.M. to the boundary of
19   the Murrieta-Temecula Ground Water area which is more particularly
20   described in Interlocutory Judgment No. 30 herein, is delineated
21   upon United States Exhibit No. 208-F, made a part hereof by
22   reference.  Throughout most of this area there are areas of
23   younger alluvium, the location and extent of which is delineated
24   upon United States Exhibit 208-F.  These younger alluvial deposits
25   are water-bearing when saturated, and rest upon and are confined
26   laterally by deposits of consolidated rock described on said
27   Exhibit 208-F as "basement complex" or "basement complex (weathered)".
28   These deposits of consolidated rock are essentially non-water-
29   bearing, and the materials of which they are composed are con-
30   siderably more compacted and less permeable than the alluvial
31   deposits.  As a result thereof, any ground waters found within
32   said alluvial deposits do not move laterally or vertically into

                              - 6 -

                                                    1852
                                                      7

1  the consolidated rocks, but on the contrary move down the
2  hydraulic gradient through the younger alluvial deposits.

### XI

4      At such times as there is surface flow of Warm Springs
5  Creek, the location of such surface flow fluctuates considerably
6  and shifts its position upon the younger alluvial deposits from
7  season to season and even within each rainy season.

### XII

9      The deposits of consolidated rock on either side of the
10 younger alluvial deposits and upon which said younger alluvial
11 deposits rest, impede any ground waters within said younger
12 alluvial deposits from moving out of the younger alluvial deposits
13 and into the consolidated rock, and do in fact act in the same
14 manner as substantially impermeable bed and banks of a surface
15 stream.  The ground waters within said younger alluvial deposits
16 are in fact in a known and defined channel and do constitute the
17 underground stream of Warm Springs Creek.  The ground waters, if
18 any, contained within said alluvial deposits are a part of the
19 waters of the Santa Margarita River system.

### XIII

21     Attached hereto marked Exhibit B, and incorporated
22 herein, are descriptions of the smallest tract of land held
23 under one chain of title, a portion of which abuts upon Warm
24 Springs Creek as herein described.

### XIV

26     The ground waters, if any, contained within areas of
27 basement complex, basement complex (weathered), volcanic rock
28 or older continental deposits as delineated on Exhibit 208-F
29 within the sub-watershed of Warm Springs Creek are the subject
30 of Interlocutory Judgment 36-A in these proceedings.

31                         -----

32                         -----

1853
8

<u>CONCLUSIONS OF LAW</u>

I

All surface waters upon lands depicted on United States
Exhibits 274 and 208-F within the sub-watershed of Warm Springs
Creek are a part of the Santa Margarita River and are subject to
the continuing jurisdiction of this Court.

II

All ground waters found within areas of younger
alluvium downstream from the south line of Section 9, T 6 S,
R 2 W, S.B.M. as such areas of younger alluvium are depicted
upon United States Exhibit 274 and 208-F, are a part of the
Santa Margarita River system and are subject to the continuing
jurisdiction of this Court.

III

At the present time, and so long as the ground waters
contained within areas of younger alluvium immediately north of
the south line of Section 9, T 6 S, R 2 W, S.B.M. remain below
elevation 1400°, all ground waters contained within areas of
younger alluvium north of said line, as the same are depicted
upon United States Exhibits 274 and 208-F, are not a part of the
Santa Margarita River system and do not contribute to the waters
of said river system downstream from said south line of Section 9,
T 6 S, R 2 W, S.B.M.

IV

That it would be wasteful and unreasonable, and contrary
to the provisions of Article XIV, Section 3, California Consti-
tution, to require the maintenance of a water level in Diamond
and Domenigoni Valleys at elevation 1400° or above for the purpose
of supporting a ground water movement southwesterly past the
south line of Section 9, T 6 S, R 2 W, S.B.M. and down Warm
Springs Creek, and for that reason the extractions of ground
water from within Diamond and Domenigoni Basins will not be

- 8 -

presently regulated or restricted in these proceedings for the
purpose of maintaining such a flow.  However, the Court will
retain continuing jurisdiction of this cause for the purpose
of reviewing or reconsidering possible control of future ground
water extractions should substantial changes in circumstances so
require.

V

Those lands described in Exhibit A attached hereto and
incorporated herein which in whole or in part overlie Diamond
and Domenigoni Basins north of the south line of Section 9,
T 6 S, R 2 W, S.B.M., as the same are delineated upon United States
Exhibits 274 and 208-F have correlative overlying rights to the
use of the ground waters contained within the younger alluvial
deposits of said basins.

VI

All lands described in Exhibit B attached hereto and
incorporated herein have a correlative riparian right to the use
of the waters of Warm Springs Creek as the same have been
defined herein.

VII

That at the present status of this case the issue of
apportionment or the quantity or proportion of waters to which any
lands are entitled has not been presented and this Court has taken
no evidence directed to establishing whether any water uses pursuant
to riparian or overlying rights are reasonable or unreasonable as to
amount of water used in the light of the correlative rights which may
exist as to such waters, and this issue is left open, is not decided
herein and shall be litigated by this Court if and when in the fu-
ture it becomes necessary to do so; in the exercise of this contin-
uing jurisdiction this Court will judge and pass upon the exercise
of such riparian or overlying right based on the facts as they
may then appear and pursuant to California law.

INTERLOCUTORY JUDGMENT

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that all surface waters which flow over or upon the lands depicted on United States Exhibits 274 and 208-F within the Santa Margarita River watershed, which exhibits are incorporated herein by reference, are a part of the Santa Margarita River and subject to the continuing jurisdiction of this Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all ground waters contained within areas of younger alluvium downstream from the south line of Section 9, T 6 S, R 2 W, S.B.M., as such areas of younger alluvium are depicted upon United States Exhibits 274 and 208-F, which Exhibits are incorporated herein by reference, are a part of the Santa Margarita River and subject to the continuing jurisdiction of this Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all ground waters contained in areas of younger alluvium located north of the south line of Section 9, T 6 S, R 2 W, S.B.M., as such areas of younger alluvium are depicted on United States Exhibits 274 and 208-F, incorporated herein by reference are not a part of the waters of the Santa Margarita River system at this date, but this Court retains continuing jurisdiction of this cause to further consider such question at such time as the elevation of such ground waters may change.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all lands described in Exhibit A attached hereto and incorporated herein, which overlie in whole or in part younger alluvial deposits of Diamond and Domenigoni Basins as the same are delineated upon United States Exhibits 274 and 208-F, incorporated herein, have correlative overlying rights to the use of the ground waters contained in the younger alluvial deposits on said lands.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all lands described on Exhibit B attached hereto and incorporated

11

herein have correlative riparian rights to the use of the waters
of Warm Springs Creek.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
correlative overlying rights and correlative riparian rights
described in this Interlocutory Judgment shall be and are subject
to the continuing jurisdiction of this Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the
issue of apportionment has not been presented and this Court
has taken no evidence directed to establishing whether the use
of any waters herein adjudged to be subject to the continuing
jurisdiction of this Court are reasonable or unreasonable as to
amount of water used in the light of correlative rights which
may exist as to such waters and this issue is left open, is not
decided herein and shall be litigated by this Court if and when
in the future it becomes necessary to do so.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this
Interlocutory Judgment is not appealable, is not final and shall
not be operative until made a part of the final judgment, and this
Court expressly reserves jurisdiction to modify or vacate it,
either upon its own motion or upon motion of any party to this
proceeding until such time as final judgment in this case is
entered.

Dated: _____7/3,_____, 1962

_____
JUDGE

- 11 -

1357
12

ENTERED
FEB 20 1962
CLERK...
SOUTHERN...

FILED
FEB 2 0 1962
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

FALLBROOK PUBLIC UTILITY
DISTRICT, et al.,

        Defendants.

No. 1247-SD-C

WARM SPRINGS CREEK SUB-WATERSHED

INTERLOCUTORY JUDGMENT No. 36-A

FINDINGS OF FACT, CONCLUSIONS OF LAW
AND INTERLOCUTORY JUDGMENT No. 36-A,
RESPECTING LANDS IN THE SUB-WATERSHED
OF WARM SPRINGS CREEK UPSTREAM FROM
THE BOUNDARY OF THE MURIETTA-TEMECULA
GROUND WATER AREA.

    This Court, based upon the record before it in the

subject case, makes and enters the following Findings of Fact:

I

    The United States Court of Appeals for the Ninth Circuit

remanded this case for trial, declaring that: "The only proper

method of adjudicating the rights on a stream, whether riparian

or appropriative or mixed, is to have all owners of land on the

watershed and all appropriators who use water from the stream

involved in another watershed in court at the same time."

II

    Proceeding in accordance with that mandate, the Complaint

and Amendatory and Supplementary Complaint in this cause was served

- 1 -

1945

1  upon the owners of the lands within the watershed of the Santa
2  Margarita River and all appropriators who used water from that
3  stream in any other watershed.  Moreover, those parties named in
   the cause who could not be served personally were served by
5  publication.

6

                                III

7      The subject matter of this case, based upon the pleadings
8  and the issues joined in it, relates only to the rights to the
9  use of the waters of the Santa Margarita River, its tributaries and
10 to the ground waters which feed, add to, support and contribute to
11 the waters of the Santa Margarita River and its tributaries.

12

                                IV

13     There are situated within the watershed of the Santa
14 Margarita River and the sub-watershed of Warm Springs Creek up-
15 stream from the boundary of the Murrieta-Temecula Ground Water
16 Area as the same is described in Interlocutory Judgment No. 30
17 herein, certain parcels or tracts of lands which do not overlie
18 any of the ground waters which feed, add to, support or contribute
19 to the waters of the Santa Margarita River or its tributaries.
20 Those lands are comprised of basement complex or weathered basement
21 complex, the ground waters of which, if any, are vagrant, local
22 and percolating, not a part of the surface or sub-surface flow or
23 sub-surface basins of the Santa Margarita River, below Temecula
24 Gorge and above the Naval Enclave, nor do these ground waters feed,
25 add to, support or contribute to the waters of the Santa Margarita
26 River or any of its tributaries

27     a.  Attached to this Interlocutory Judgment marked
28         Exhibit A and made a part hereof by reference is
           an alphabetical list of the apparent owners of all
           parcels of land referred to in these Findings.
       b.  Attached to this Interlocutory Judgment marked
           Exhibit B and made a part hereof by reference are

                              - 2 -

                                              1946

land descriptions of all parcels of land referred to in these Findings.

c.   Attached hereto marked Exhibit C and made a part hereof by reference is a map, U.S.A. Exhibit 208-F in these proceedings, on which map are located all of the lands referred to in these Findings.  There are set forth on said Map, Exhibit C hereunto attached, lands, the ground waters of which add to, contribute and support the Santa Margarita River and its tributaries and are a part of the waters of that stream system.  References to those lands have been deleted from the tabulation of names (Exhibit A) and the legal descriptions (Exhibit B) referred to above, and although the exterior boundaries of such lands appear on said map Exhibit C, this Interlocutory Judgment does not relate to them.

d.   All of the lands referred to in "a" "b" and "c" above appear in  the Notices of Lis Pendens, recorded April 8, 1958, in Book 7028, page 159, Official Records, San Diego County, California; and recorded April 9, 1958, in Book 2252, page 17, Official Records, Riverside County, California.  The apparent owners referred to in this Interlocutory Judgment were the owners of record on the dates last mentioned, unless specific information has been received of the transfer of a particular parcel, then the change is reflected in the name of the apparent owners.

V

This Court retains continuing jurisdiction over all surface waters within the drainage area of the watershed of the Santa Margarita River and its tributaries, within  the area which is the subject of this Interlocutory Judgment.

1947

CONCLUSIONS OF LAW

This Court makes the following Conclusions of Law respecting the lands referred to in Finding IV above and which are described in Exhibit B:

I

The defendants referred to in Finding IV, their successors, heirs, executors, administrators and assigns, have no rights to the use of ground waters which feed, add to, support or contribute to the waters of the Santa Margarita River or its tributaries, within the area subject of this Interlocutory Judgment, in connection with the lands referred to in Finding IV, which are described with particularity in Exhibit B.

II

There is not at issue before this Court in this cause and there is not decreed, determined or adjudged, inter sese, as to the lands or owners of land referred to in Finding IV in this cause, the rights, if any, to the use of the vagrant, local, percolating waters which may underlie any of the lands referred to in the above set forth Finding IV and which are described with particularity in Exhibit B of these Findings of Fact, Conclusions of Law and Interlocutory Judgment.

III

The United States of America, and all other parties to this action, having rights to the use of waters of the Santa Margarita River or its tributaries, as those rights are or may hereafter be determined by the final Judgment of this Court, are entitled to have quieted their title in and to those rights against any and all adverse claims of the defendants referred to in Finding IV, who are listed in Exhibit A of these Findings of Fact, Conclusions of Law and Interlocutory Judgment, their heirs, successors, executors, administrators and assigns, asserted by reason of their ownership of the lands described with particularity in Exhibit B

LAW OFFICES
SWING AND PRICE
I.G. MAIN STREET
ILSOORE, CALIF.
HISOLRE 6-1154

1948

of these Findings of Fact, Conclusions of Law and Interlocutory Judgment.

IV

The defendants referred to in Finding IV, whose names are listed in Exhibit A and whose lands are described with particularity in Exhibit B of these Findings of Fact and Conclusions of Law, their heirs, successors, administrators, executors and assigns, are entitled to have quieted their titles in and to their rights to the use of the vagrant, local, and percolating ground waters, if any, underlying those lands described in Exhibit B, against the adverse claims, if any, of the United States of America and all parties to this cause, their heirs, successors, administrators, executors and assigns, by reason of rights asserted by the United States of America and all parties to this cause, their heirs, successors, administrators, executors and assigns, in and to the use of the waters of the Santa Margarita River and its tributaries.

V

This Court retains continuing jurisdiction with respect to surface waters, if any, found on those lands described on Exhibit B of these Findings of Fact, Conclusions of Law and Interlocutory Judgment.

VI

The preceding Findings of Fact and Conclusions of Law do not in any way pertain to surface waters which arise upon, flow across or which are diverted or are impounded upon the lands, to which they have application.

INTERLOCUTORY JUDGMENT

IT IS HEREBY

ORDERED, ADJUDGED AND DECREED, that:

I

The defendants referred to in Finding IV and listed in

1949

Exhibit A of these Findings, the apparent owners of the lands des-
cribed with particularity in Exhibit B of these Findings of Fact,
Conclusions of Law and Interlocutory Judgment, their heirs,
successors, executors, administrators and assigns, by reason of
their ownership of those lands, have no right, title or interest in
or to the ground waters which feed, add to, support or contribute
to the waters of Santa Margarita River and its tributaries, within
the area subject of this Interlocutory Judgment.

II

The titles to the rights of the United States of America
and all other parties in this action having rights in and to the
surface and ground waters of the Santa Margarita River and its
tributaries, as they are adjudicated, decreed and determined by
the final Judgment of this Court, shall be and they are forever
quieted against any and all adverse claims of the defendants
referred to in Finding IV, and who are listed in Exhibit A, their
heirs, successors, administrators, executors and assigns, who
assert rights by reason of their ownership of the lands described
in Exhibit B of these Findings of Fact, Conclusions of Law and
Interlocutory Judgment; and those defendants, and each of them,
and their heirs, successors, executors, administrators and assigns,
who by reason of their ownership of the lands described in Exhibit
B assert rights in the vagrant, local, percolating waters therein,
are forever restrained from asserting, claiming or setting up any
right, title or interest in or to the waters of the Santa Marga-
rita River or its tributaries, by reason of their ownership of
those lands described in Exhibit B.

III

The ground waters, if any, which underlie the lands re-
ferred to in Finding IV, and described with particularity in
Exhibit B of these Findings of Fact, Conclusions of Law and Inter-
locutory Judgment, are vagrant, local and percolating, not a part

- 6 -

1950

of the waters of the Santa Margarita River or its tributaries, and are not in this cause adjudged, determined or decreed among the defendants listed in Exhibit A of these Findings of Fact, Conclusions of Law and Interlocutory Judgment, their heirs, executors, administrators, successors or assigns, inter sese.

IV

The titles to the rights of the defendants listed in Exhibit A, their heirs, executors, administrators, successors or assigns, in and to the vagrant, local percolating ground waters, if any, to which these Findings of Fact, Conclusions of Law and Interlocutory Judgment pertain, which are not a part of the waters of the Santa Margarita River and its tributaries, underlying the lands described in Exhibit B of these Findings of Fact, Conclusions of Law and Interlocutory Judgment, shall be and they are forever quieted against any and all adverse claims, if any, of the United States of America and all parties to this cause, their heirs, successors, administrators, executors and assigns, having or claiming rights in and to the surface and ground waters of the Santa Margarita River and its tributaries, and the United States of America and all other parties to this cause, their heirs, successors, administrators, executors and assigns, having or claiming rights in and to the surface and ground waters of the Santa Margarita River and its tributaries, are forever restrained from asserting, claiming or setting up any right, title or interest in or to those vagrant, local, percolating ground waters.

V

This Court retains continuing jurisdiction with respect to surface waters, if any, found on those lands described on Exhibit B of these Findings of Fact, Conclusions of Law and Interlocutory Judgment.

VI

This Interlocutory Judgment neither relates to waters

- 8 -

1951

which arise upon, flow across, or are diverted or impounded upon
the lands to which it relates, nor does it purport to adjudicate
those rights.

## VII

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, based
upon the decision of the United States Court of Appeals for the
Ninth Circuit, <u>California v. United States</u>, 235 F.2d 647 (C.A.9,
1956), that this is not a final decree, but is interlocutory in
character and by reason of the Order by this Court that all parties
are adverse one to another, thus dispensing with cross-pleadings,
all other parties to this proceeding may object to these Findings
of Fact, Conclusions of Law and Interlocutory Judgment and will be
given full opportunity upon due notice to interpose their
objections to these Findings of Fact, Conclusions of Law and
Interlocutory Judgment.

Dated: 1/20/63

JAMES H. CARTER
Judge, United States District Court

NOTE:  The parcel numbers appearing on Exhibits A, B and
C attached are explained as follows:  The first number refers to
the Township; the second number refers to the Range; the next
number or numbers refer to the Section or Sections or parts of
Sections; the final number or numbers separated by a dash is the
parcel number, thus:  72W-8, 13-141 indicates Township 7 South,
Range 2 West, Sections 8 and 13 - Parcel 141.

LAW OFFICES
SACHSE AND PRICE
1115 SIXTH STREET
OCEANSIDE, CALIF.
HUGOLPH O-1184

1952

## PROOF OF SERVICE BY MAIL

ORIGINAL

STATE OF CALIFORNIA    )
                           )   ss.
COUNTY OF LOS ANGELES  )

       I am a citizen of the United States and a resident of the County aforesaid.  I am over the age of eighteen years and not a party to the within entitled action.  My business address is 350 South Grand Avenue, Los Angeles, California 90071.

       On ___November 22___ ,1994, I served the foregoing documents described as:

   **1.  AMENDMENT OF MEMORANDUM OF UNDERSTANDING AND AGREEMENT ON OPERATION OF DOMENIGONI VALLEY RESERVOIR; and**

   **2.  NOVEMBER 21, 1994 STIPULATION and ORDER.**

on the interested parties in said action by placing a true copy thereof enclosed in a sealed envelope addressed as indicated on the **attached list**.

       I certify under penalty of perjury that the foregoing is true and correct.

       Executed on November _22_, 1994, at Los Angeles, California.

                             Declarant

gld
proof.mou
Attachment

## MAILING LIST

**SUBSTANTIAL USERS OUTSIDE ORGANIZED WATER SERVICE AREAS**
**Not included in Basic Service List**
**(Per pages C-9 to C-13 of Watermaster's 1994 Annual Report)**

Mr. Thomas J. Poyorena
22145 Grand Ave.
Wildomar, CA  92395

Albert & Sylvia Ezor
3142 Cavendish Dr.
Los Angeles, CA  90064

Ms. Donna J. Woosley
Rt. 6, Box 49-B
Fallbrook, CA  92028

Harold & Mary Raley
41125 DeLuz Road
Fallbrook, CA  92028

John & Jeraldine Herbel
41257 DeLuz Road
Fallbrook, CA  92028

Leland Henderson
President
Margarita Land & Development
P.O. Box 584
Fallbrook, CA  92088

Mitchell Stock Farm, Inc.
42125 Elm Street
Murrieta, CA  92362

International Immunology
25549 Adams Avenue
Murrieta, CA  92362

-1-

Ms. Clydene Boots
P.O. Box 321
Murrieta, CA  92564

Nevada Beverage Company
P.O. Box 93538
Las Vegas, Nevada  89193

Nevada Beverage Company
c/o Kenneth Roberts or
Joanne Clark
P.O. Box 506
Murrieta, CA  92362

David M. & Carol J. Carson
25471 Hayes Avenue
Murrieta, CA  92362

Rancho California Assoc. No. 2
3146 Quiet Hills
Escondido, CA  92025

Bear Valley Vineyard Co., Ltd.
c/o McMillan Farm Management
29379 Rancho Cal Rd., #201
Temecula, CA  92390

Manley Bear Valley Partners
c/o McMillan Farm Management
29379 Rancho Cal Rd., #201
Temecula, CA  92390

Douglas J. & Sue Welburn
Rt. 6, Box 77
Fallbrook, CA  92028

Cal June, Inc.
P.O. Box 9551
North Hollywood, CA  91609

Temecula Ranchos
c/o Chester Rowell
2100 Tulare St. #405
Fresno, CA  93271

Anza Grove
c/o McMillan Farm Management
29379 Rancho Cal Rd., #201
Temecula, CA  92390

Wilbur & Shirley Wagner
14539 San Dieguito Drive
La Mirada, CA  90638

Don & Margaret Durling
41500 DeLuz Road
Fallbrook, CA  92028

Mr. Don Durling
Durling Nursery
41500 DeLuz Road
Fallbrook, CA  92028

Robert & Eleanor Durling
40401 DeLuz Road
Fallbrook, CA  92028

Pete & Dorothy Prestininzi
2525 E. Mission Road
Fallbrook, CA  92028

John & Linda Zamora
JZ Stock Farm
39800 East Benton Road
Temecula, CA  92390

Mr. Robert R. Chambers
Clytia M. Chambers
11439 Laurelcrest Drive
Studio City, CA  91604

Richard & Janet Robertson
Sage Ranch Nursery
P.O. Box 7060
Hemet, CA  92545

Mr. Mohammed Nezami
Bluebird Ranch
2193 Calle Rociada
Fallbrook, CA  92028

srvc1.lst

## SIGNIFICANT PARCELS IN WARM SPRINGS CREEK SUB-WATERSHED
## SERVICE LIST

Anheuser Busch Inc.
1 Busch Pl.
St. Louis, MO 63118

Mr. Alexander F. Borel
30195 Auld Road
Murrieta, CA 92563

Domenigoni-Barton Properties
33011 Holland Road
Winchester, CA 92596

Pete H. Vanloon
13550 Del Monte #117C
Seal Beach, CA 90740

Andy Domenigoni
31851 Winchester Rd.
Winchester, CA 92596

Warrens Turf Nursery, Inc.
7502 S. Main St.
Crystal Lake, IL 60014

Warrens Turf Nursery, Inc.
29771 Eagle Point Dr.
Canyon Lake, CA 92587

SFP Minerals Corp.
P.O. Box 27019
Albuquerque, NM 87125

Singh Narindar
14642 Newport Ave. #250
Tustin, CA 92680

Harris Vance Edward
31690 Scott Rd.
Winchester, CA 92596

Rickey M. Payne
Psc 557 #1203
Fpo Ap 96379

Philip J. Dawson
31260 Scott Rd.
Winchester, CA 92596

David B. Richardson
31385 Scott Rd.
Wichester, CA 92596

Eric S. & Aida H. Raymond
33274 Baldwin Blvd.
Lake Elsinore, CA 92530

Jack D. Stiefel
32760 Holland Rd.
Winchester, CA 92596

Andrew D. McElhinney
Dorothy D. McElhinney
P.O. Box 460
Wildomar, CA 92595

Frederick E. Domenigoni
31011 Winchester Rd.
Winchester, CA 92596

Joe A. Gonzalez
44344 Mayberry Ave.
Hemet, CA 92544

Bill Johnson
44344 Mayberry Ave.
Hemet, CA 92544

3M Property Investment Co.
c/o James De Recat
Graham & James
801 S. Figueroa St., 14th Fl.
Los Angeles, CA 90017-5554

H.G. Allison
18411 Santiago Blvd.
Villa Park, CA 92667

Harold G. Leichtfuss
18411 Santiago Blvd.
Villa Park, CA 92667

Walter A. Schroeder
P.O. Box 603
Murrieta, CA 92564

Pourroy Fredric, Jr.
33501 Leon Road
Winchester, CA 92596

Clyde Hufbauer Architect Inc.
2148 Avenida De La Playa
La Jolla, CA 92037

Liang I-Chang
Lien Chung
23320 Lyon Avenue
San Jacinto, CA 92582

Chen Wung Fu
5311 Fairview Avenue
Buena Park, CA 90621

Chester Z. Horning
5230 Copco Rd.
Hornbrook, CA 96044

Stanley C. Horning
38660 Clydesdale Ct.
Hemet, Ca 92543

Andrea Burke
P.O. Box 636
San Jacinto, CA 92581

H. A. Assn.
21202 Kroll Ln.
Huntington Beach, CA 92646

Karen Luu
852 Peachwood Avenue
Westminster, CA 92683

Glenn E. Gilstrap
8312 Grapewin St.
Corona, CA 91720

Mervin Chard
2845 K Avenue
National City, CA 91950

Moira L. & Ronald P. Wilhelm
1155 Skyline Dr.
Laguna Beach, CA 92651

Harold O. Wilhelm
P.O. Box 95
Thousand Palms, CA 92276

Diamond Family, Ltd.
31499 Cora Lee Ln.
Hemet, CA 92543

R. E. Fritts
8000 Auto Dr.
Riverside, CA 92504

Chester Z. Horning
5230 Copco Rd.
Hornbrook, CA 96044

Ruth E. Horning
30601 Palm Ave.
Hemet, CA 92543

BSW Ranch
P.O. Box 764
Hemet, CA 92546

srvc2.lst

# BASIC SANTA MARGARITA RIVER WATERSHED
## SERVICE LIST

Mr. Tom Rodda
Agri-Empire, Inc.
P.O. Box 490
San Jacinto, CA  92383

George Buchanan
Metropolitan Water District
33740 Borel Road
Winchester, CA  92396

Mr. Thomas G. Cottle
42551 Highway 79
Aguanga, CA  92536

Mr. James Laughlin
General Manager
Elsinore Valley MWD
P.O. Box 3000
Lake Elsinore, CA  92330

Mr. David Hansen
Western MWD
P.O. Box 5286
Riverside, CA  92517

Mr. Leland Henderson
Margarita Land and Development
P.O. Box 584
Fallbrook, CA  92028

Director
Riverside County Planning
4080 Lemon Street, 9th Floor
Riverside, CA  92501

-1-

C. Michael Cowett, Esq.
Best, Best & Krieger
550 West C Street, 16th Floor
San Diego, CA 92101-3540

Art Kidman, Esq.
McCormick, Kidman, Behrens & Holzwarth
3100 Bristol St., #290
Costa Mesa, CA 92626

Mr. Barry Martin
Director of Water Utilities
City of Oceanside--Water Utilities Dept.
300 N. Hill Street
Oceanside, CA 92054

Mr. Fred Ervin
AVMAC
49990 Mojave Court
Aguanga, CA 92536

Mr. William D. Taylor
1650 San Luis Rey Avenue
Vista, CA 92083

Mr. Chester Rowell
Temecula Ranchos
Rowell Building, Suite 405
2100 Tulare Street
Fresno, CA 93721

Mr. James J. Jaeger
Thousand Trails
12301 N. E. 10th Place
Bellevue, Washington 98005

Patrick Barry, Esq.
Justice Department
Land & Natural Resources
Indian Resources Section
P.O. Box 44378
Washington, D.C. 20026-4378

Mr. Gordon W. Tinker
General Manager and Chief Engineer
Fallbrook Public Utility District
P.O. Box 1390
Fallbrook, CA  92028

Assistant Chief of Staff Facilities
Headquarters, Marine Corps Base
Building 1160
Camp Pendleton, CA  92055

Robert H. James, Esq.
Sachse, James, & Lopardo
205 W. Alvarado
Fallbrook, CA  92028

Mr. Art Diaz
Riverside County Flood Control
  and Water Conservation District
P.O. Box 1033
Riverside, CA  92502

General Manager
Eastern MWD
P.O. Box 8300
Hemet, CA  92383-1300

Eugene Madrigal, Esq.
28581 Front Street, #108
Temecula, CA  92590

Richard & Christine McMillan
Gary & Patricia McMillan
McMillan Farm Management
29379 Rancho California Road, Ste. 201
Temecula, CA  92362

Mr. Larry Minor
P.O. Box 398
San Jacinto, CA  92383

-3-

General Manager
Murrieta County Water District
P.O. Box 949
Murrieta, CA  92362

General Manager
Rainbow MWD
P.O. Box 2500
Fallbrook, CA  92088-2500

General Manager
Fallbrook Sanitary District
431 S. Main Street
Fallbrook, CA  92028

Counsel Western Bases
Marine Corps Base--Bldg. 1160
Camp Pendleton, CA  92055

Mr. John F. Hennigar
General Manager
Rancho California WD
P.O. Box 9017
Temecula, CA  92390-0737

Pechanga Tribal Spokesperson
Pechanga Indian Reservation
P.O. Box 1477
Temecula, CA  92390

Assistant Chief of Staff
Environmental Security
Box 555008
Marine Corps Base
Camp Pendleton, CA  92055-5008

Attn:  Larry Carlson

Michael E. McPherson, Esq.
344 Plumosa Avenue
Vista, CA  92083

Ms. Lois Candelaria
Chairperson
Cahuilla Band of Indians
P.O. Box 860
Anza, CA  92306

Christian Nagler, P.E.
Department of Water Resources
Southern District
P.O. Box 29068
Glendale, CA  91209-9068

Andrew F. Walch, Esq.
U.S. Department of Justice
Environment & Natural Resources Division
999 Eighteenth Street, Ste. 945
Denver, Colorado  80202

Ms. Pamela Williams
Solicitor's Office
U.S. Department of Interior
Division of Indian Affairs
1849 C Street
Washington, D.C.  20240

Mr. Gilbert A. Stuart
U.S. Department of Interior
Bureau of Indian Affairs
3600 Lime Street, #722
Riverside, CA  92501

Mr. Joseph D. Hamilton
Ramona Reservation
39440 Cary Road
Anza, CA  92539

Mr. John Richards
Office of the Chief Counsel
State Water Resources Control Board
901 P Street
Sacramento, CA  95814

-5-

Larry McKinney, Esq.
Law Offices of Susan M. Trager
2100 Southeast Main St., Ste. 104
Irvine, CA  92714

srvc3.lst