# EXHIBIT A

## MEMORANDUM OF UNDERSTANDING AND AGREEMENT ON OPERATION OF DOMENIGONI VALLEY RESERVOIR

November 1994

DOMENIGONI VALLEY RESERVOIR PROJECT

MEMORANDUM OF UNDERSTANDING AND AGREEMENT
ON OPERATION OF DOMENIGONI VALLEY RESERVOIR

NOVEMBER 1994

*THE METROPOLITAN WATER DISTRICT*
*OF*
*SOUTHERN CALIFORNIA*

Domenigoni Valley Reservoir Project
Two California Plaza
350 South Grand Avenue
Los Angeles, California  90071-3123

# TABLE OF CONTENTS

| | Page |
|---|---|
| Recitals | 1 |
| Article I - Operating Principles | 3 |
| Article II - Implementing Criteria | 4 |
| Article III - Definitions | 6 |
| Article IV - Protection of Parties to the Action | 9 |
| Article V - Protection of Parties to MOU | 9 |
| Article VI - Submission to Court | 9 |
| Article VII - Review and Modification | 9 |
| Article VIII - U.S. Participation | 9 |
| Article IX - Protection of Parties With Litigation Pending | 9 |

List of Attachments

| | | |
|---|---|---|
| Attachment A | Project Description and Background Information |
| Attachment B | Procedure for Calculating Surface Runoff and Surface Water Quality |
| Attachment C | Procedure for Determining Downstream Groundwater Elevations |
| Attachment D | Monthly Record Sheet |
| Attachment E | Interlocutory Judgments 36 and 36A |

i

## MEMORANDUM OF UNDERSTANDING AND AGREEMENT
## ON OPERATION OF DOMENIGONI VALLEY RESERVOIR

THIS MEMORANDUM OF UNDERSTANDING AND AGREEMENT ("MOU") is entered into as of the 21st day of November, 1994, by and between THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA ("Metropolitan"), a public entity; FALLBROOK PUBLIC UTILITY DISTRICT ("Fallbrook"), a public entity; RANCHO CALIFORNIA WATER DISTRICT ("Rancho"), a public entity; and the UNITED STATES, solely in its capacity as a water rights holder in the Santa Margarita River stream system.

### Recitals

A.     The United States District Court for the Southern District of California ("Court") has adjudicated water rights to the Santa Margarita River stream system ("System"), in the case entitled United States v. Fallbrook Public Utility District, et al., No. 1247-SD-C ("the Action"), by the Modified Final Judgment and Decree entered on April 6, 1966 and Amendatory Orders of June 27, 1968, January 16, 1975 and March 13, 1989 ("Judgment").

B.     Fallbrook, Rancho, and the United States are the principal existing and potential water users in the System; have been involved for some time in the Action to determine the respective rights and duties of the users of the waters of the System; and are parties of record in the Action.

C.     The Judgment retains continuing jurisdiction as to the use of all surface waters and certain underground waters within the watershed of the System, and Article II of the 1966 Decree adopts Interlocutory Judgment 28, which specifically retains continuing jurisdiction over impoundment of the surface waters of the System.

D.     Metropolitan is in the process of constructing an impoundment for imported water, known as the Domenigoni Valley Reservoir Project ("Project"), within the Warm Springs Creek Sub-Watershed of the System.  Although the Project's purpose is to provide regulatory storage capacity for Metropolitan's imported water distribution network, it will nonetheless unavoidably impound small amounts of surface waters of the System for short periods of time.  Attachment A to this MOU contains a general description of the Project.

E.     Article II of the 1966 Decree adopts Interlocutory Judgments 36 and 36A, for the Warm Springs Creek Sub-Watershed, which is tributary to Murrieta Creek.  Warm Springs Creek flows through the Project site.  Finding II of Interlocutory Judgment 36 states that Warm Springs Creek is an intermittent stream both as to time and place, flowing only during and immediately after periods of heavy precipitation and runoff.  Copies of Interlocutory Judgments 36 and 36A are appended to this MOU as Attachment E.  The exhibits to these Judgments are not included.

F.     The Project is located upstream of a geological feature described in Findings IV and V of Interlocutory Judgment 36, as being located in the general vicinity of the south line of Section 9, T6S, R2W, S.B.M.  Those Findings further described that feature as a "bedrock lip".

G.     Conclusion III and the third Order of Interlocutory Judgment 36 state that (a) groundwaters contained within alluvium north of the bedrock lip are not part of the System, so long as the groundwater level contained in the alluvium immediately north of the bedrock lip remains below elevation 1400 feet above Mean Sea Level (MSL); and (b) the groundwater elevation in that area is below 1400 feet MSL.  Recent investigations demonstrate that the groundwater elevation within alluvium north of the bedrock lip is currently at 1355 feet MSL.  Historic groundwater elevation data indicated that groundwater elevations near the bedrock lip have been below 1400 feet MSL since at least the late 1950's. Finding IV of Interlocutory Judgment 36 further states that the bedrock lip causes

- 2 -

groundwater that reaches that point to move out of the System and into the San Jacinto River watershed, when the groundwater elevation is below 1400 feet MSL.

H.     Finding IV of Interlocutory Judgment 36A determines that groundwater in basement complex or weathered basement complex, rather than alluvium, is not part of the System.

I.     Metropolitan will continue to coordinate with the parties to this MOU in efforts to improve water resource management programs involving the Santa Margarita River Basin.


NOW THEREFORE, the parties agree as follows:

Article I.  Metropolitan will operate the Project in accordance with the following principles:

A.     The basic function of the Reservoir is to provide regulatory storage capacity for Metropolitan's imported water distribution system.  The Reservoir will store only water that would not have been available in the absence of the Reservoir.

B.     The quantity and quality of surface runoff that would flow past the West Dam, in the absence of the Reservoir, will be determined and a like quantity of water, of similar quality, will be released from the Reservoir or San Diego Canal (SDC) into Warm Springs Creek.

C.    Rainfall on the reservoir will be retained in the Reservoir, subject to principle A, until it is released subject to principle B, or such time as it returns to the atmosphere as evaporation.

D.    Water conservation and flood control are not explicit functions of the Reservoir.

E.    The elevation of groundwater in the vicinity of the bedrock lip will be monitored at the bedrock lip observation well, located in the southern half of the south half of Section 9, T6S, R2W, S.B.M. This well is designated MO-6. Attachment C provides a more detailed explanation of the procedure for monitoring groundwater elevations during reservoir operation.

F.    The outflow from the Reservoir will have little or no significant effect on the quality of the Warm Springs Creek water downstream of the West Dam.

Article II.    Metropolitan will implement those principles by operating the Project under the following criteria:

A.    Surface runoff that would normally flow downstream of the West Dam, in the absence of the Reservoir, shall be determined as set forth in Attachment B hereto.

B.    Reservoir releases shall be determined as follows:

1.    Mitigation releases from the Reservoir into Warm Springs Creek will begin within 24 to 72 hours after the surface runoff occurs, and will be adjusted daily as required by subsequent determinations of surface runoff.

2. The rate of release from the Reservoir into Warm Springs Creek will be limited to the lesser of 50 cubic feet per second (cfs) or the computed mean daily rate of surface runoff that would have occurred at the West Dam in the absence of the Reservoir, except as noted in paragraphs 3 and 4.

3. Releases into Warm Springs Creek, pursuant to paragraph 2, shall occur within reasonable and safe limits that would neither impair Metropolitan's use of the Project nor expose it to public liability. These flows may be limited as requested by the Watermaster.

4. The start of any release from the Reservoir into Warm Springs Creek will be made at a low rate, and any increases in the rate of release will be made gradually in order that downstream parties may be alerted. This will be in addition to advance verbal notification of a pre-established list of critical downstream parties.

5. Within the constraints imposed by physical limitations and other operating limits, as mentioned in paragraphs 2, 3, and 4 above, releases to Warm Springs Creek will be made at rates similar to those of the natural runoff that would have occurred in the absence of the Reservoir.

6. Releases from the Reservoir into Warm Springs Creek will be continued following each flood event until the total computed quantity of surface runoff has been released.

C. No storage space is specifically reserved in the Reservoir for flood control or conservation use. The releases from the Reservoir into Warm Springs Creek will be made through the Forebay or San Diego Canal.

D.   The quality of the imported water that is stored in the Reservoir will be adequate for intended uses.  Releases from the facilities will have little, if any, significant effect on the general water quality, as compared to the water quality that would have existed in the absence of the Reservoir.  Attachment B provides a brief summary of the water quality associated with sources that will be used for operation of the Domenigoni Valley Reservoir.

E.   Metropolitan will file a copy of the monthly record sheet, described in Attachment D hereto, with the Watermaster prior to the end of each respective following month.  The Watermaster will in turn deliver copies of each month's sheet to the parties hereto, other than Metropolitan.

Article III.   The following terms used in the MOU shall have the respective meaning given below unless otherwise indicated:

A.   Alluvium - The alluvial material, generally of a young geologic age, underlying the Domenigoni Valley and Menifee Valley.  This material is referred to as younger alluvium in Finding III of Interlocutory Judgment 36.

B.   Downstream - The area immediately west of (below) the West Dam and hydrologically down gradient from the Project including only that part of the Santa Margarita River system that would have received surface water from Warm Springs Creek in the absence of the DVR project.

C.   DVR Watershed - The Domenigoni Valley Reservoir (DVR) watershed, consisting of the 17.2 square mile drainage area tributary to Warm Springs Creek, upstream from the West Dam.  This includes the reservoir area.

D.   East Dam - An embankment dam that forms the eastern boundary of the Domenigoni Valley Reservoir.

E.   Export - Water that is released from the Reservoir into the Metropolitan water distribution system.

F.   Forebay - A water impoundment structure located downstream of the West Dam used to hold water for transfer in and out of the Reservoir, and in and out of the San Diego Canal.

G.   Groundwater - The water contained in the alluvial and rock aquifers within the zone of saturation in the basin downstream of the West Dam.

H.   Import - Water that flows into the Reservoir through the SDC and Eastside Pipeline.

I.   Inflow - Surface runoff and subsurface flow into the Reservoir from the area between the East and West Dams and above the Reservoir elevation.

J.   Maximum Storage Capacity - The maximum volume of water that may be stored in the Reservoir when the Reservoir surface water elevation is equal to the spillway crest elevation.

K.   Outflow - Discharges made through the Forebay or Reservoir outlets into Warm Springs Creek, seepage beneath the East, West, or Saddle Dams, and other subsurface flow out of the Reservoir.

L.   Project - The Domenigoni Valley Reservoir Project (DVRP) includes the East, West and Saddle Dams, and all ancillary facilities.

M.   Mitigation Release - Water that is released through the Forebay or West Dam outlets, or the San Diego Canal, into Warm Springs Creek.

N.   Reservoir - The Domenigoni Valley Reservoir created by the East, West and Saddle dams.

O.   Saddle Dam - An embankment dam that forms part of the northern boundary of the Domenigoni Valley Reservoir.

P.   Steering Committee - The Court appointed committee consisting of representatives from the substantial water users within the Santa Margarita Watershed.

Q.   Storage - The volume of water actually stored in the Reservoir at a given time.

R.   Storage Space - The difference between maximum storage capacity of the Reservoir and the storage at a given time.

S.   Subsurface Flow - Groundwater flowing below the ground surface.

T.   Surface Runoff - Surface water runoff from the tributary watershed that would have occurred at the West Dam in the absence of the East and West Dams.

U.   Watermaster - The individual designated by the court to act as Watermaster for the Santa Margarita River Watershed, to administer and enforce the provisions of the modified final Judgment and Decree and subsequent instructions and orders of the court.

V.   West Dam - An embankment dam that forms the western boundary of the Domenigoni Valley Reservoir.

Article IV.    Metropolitan's operation of the Project in the manner described in Articles I and II, above, shall not impair the rights of any of the parties to the Action under the judgement.

Article V.    Notwithstanding any other provisions in this MOU, or anything that might reasonably be implied or inferred therefrom, nothing herein shall be construed to affect in any manner any rights to the use of water from the Santa Margarita River or its tributaries that the Parties to this MOU hold.  Nothing in this MOU shall be construed as a transfer of or an attempt to transfer such rights or any part thereof between the Parties.

Article VI.    Upon execution of this MOU by the respective undersigned representatives on behalf of Fallbrook, Rancho, the United States, and Metropolitan, Metropolitan shall present this instrument to the United States District Court for the Southern District of California for approval and incorporation into the Judgment as the Court may determine appropriate under the circumstances.  Upon approval by the Court, this MOU shall become fully effective.

Article VII.    The criteria and reservoir release data referred to in Article II hereof, and the formulae included in the Attachments hereto shall be periodically reviewed and, based on operating experience, will be modified if deemed necessary or appropriate by the Parties hereto.

Article VIII.    Participation in this MOU is not to be construed as binding the United States regarding any rights, claims, obligations, interests, responsibilities, or duties it may have regarding the Domenigoni Valley Reservoir Project other than as a water rights holder in the Santa Margarita River System.

Article IX.    This MOU is not intended to be a determination of the nature or extent of Metropolitan's obligations in connection with its land acquisitions and mitigation programs for the Domenigoni Valley Reservoir Project, nor to create any estoppel to claims in litigation now pending in connection with those land acquisitions or mitigation programs.

\MOU\Revision 11                          - 9 -                          21 November 1994

IN WITNESS WHEREOF the undersigned have executed this Memorandum of Understanding and Agreement on behalf of their respective principals.

THE METROPOLITAN WATER DISTRICT
OF SOUTHERN CALIFORNIA

APPROVED AS TO FORM

N. Gregory Taylor
General Counsel

_____

John R. Wodraska
General Manager

_____

FALLBROOK PUBLIC UTILITY DISTRICT

By:_____
[name]
[title]

RANCHO CALIFORNIA WATER DISTRICT

By:_____
[name]
[title]

UNITED STATES OF AMERICA

By:_____
[name]
[title]

# ATTACHMENT A

## PROJECT DESCRIPTION AND BACKGROUND INFORMATION

Metropolitan will construct a reservoir in Domenigoni and Diamond Valleys, Riverside County, State of California (Figure A-1). This reservoir will be known as the Domenigoni Valley Reservoir (DVR). Figure A-2 presents a more detailed location map of the Project, which is near the San Diego Canal (SDC) and the northern boundary of the Santa Margarita River Watershed. It will be located three miles south of, and between, the communities of Winchester and Hemet or about 70 miles east of the City of Los Angeles. The DVR project is compatible with the highest standards of water management. The need for the project was determined only after implementing studies of extensive water conservation, wastewater reclamation, groundwater conjunctive use, decontamination of groundwater aquifers, water transfers, and related water management measures. The five primary objectives the reservoir will accomplish are to:

o    provide emergency storage of imported water,

o    provide carryover (drought) storage of imported water,

o    provide seasonal storage of imported water,

o    preserve operating reliability of imported water, and

o    optimize groundwater programs within Metropolitan's service area.

Figure A-2 depicts the general layout of project facilities. The DVR will be formed by two earth/rockfill dams, 4.4 miles apart, within the Domenigoni and Diamond Valleys, plus a third saddle dam of the earth/rockfill type at the low point in the north rim. Associated hydraulic structures consist of an inlet/outlet tower, pump station, connecting tunnels, forebay and spillway. The East Dam will be approximately 178 feet high and 10,800 feet long, while the West Dam will be approximately 280 feet high and over 8,000 feet long. The Saddle Dam will be approximately 174 feet high and 2,300 feet long. The total earthwork volume of the East and West Dams is approximately 98,000,000 cubic yards. Relocations within the reservoir area include Newport Road and its parallel utilities, which will be relocated north of the valley, and the SDC. The SDC crossed the valley under the axis of the West Dam, and has already been relocated west of the West Dam.

DVR will serve as a regulatory and emergency water storage facility for imported water. When completed, the reservoir will nearly double the amount of surface storage available in Metropolitan's service area. This will provide for more reliable delivery of imported water during peak summer months, droughts, and emergencies. It will cover 4,800 acres and hold 800,000 acre feet, or 261 billion gallons of water when the reservoir is full. SWP water will be delivered to the reservoir via the new underground Inland Feeder and its extension, the Eastside Pipeline, which will be located adjacent to the SDC. Water from the CRA will be delivered to the reservoir via the SDC. Water from the canal will be diverted into the pumping forebay west of the West Dam and pumped into the reservoir by pumping plant P-1. Deliveries from the reservoir into the CRA will be through the Eastside Pipeline, bypassing the P-1 pumping plant. Deliveries to the SDC will be made through P-1 and the forebay into the canal.

DVR will also serve as a public recreation area under a Master Plan developed with county agencies, surrounding cities and communities, and recreation and environmental interests. This plan includes development proposals for camping, picnicking, golfing, fishing, and boating with related recreational facilities. In addition, a trail system is proposed for equestrians and hikers that will link the DVR recreation areas and also connect these areas with Lake Skinner and Salt Creek. Two separate wildlife preserves are also part of the DVR project: the newly created Dr. Roy E. Shipley Reserve and the expanded Santa Rosa Plateau Ecological Reserve.

After construction of the DVR project, reservoir operation will significantly modify surface and most subsurface water flows regimes from the present 17.2-square-mile Domenigoni Valley watershed to Warm Springs Creek. As part of this project Metropolitan has acquired a portion of the lands riparian to Warm Springs Creek and overlying the Domenigoni/Menifee aquifer, along with the respective appurtenant water rights.

**INSERT FIGURE A-1 FROM MOU DATED SEPTEMBER 1994**

General Location Map



VICINITY MAP

NOT TO SCALE

THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA

M.W.D. FACILITIES WITHIN SANTA MARGARITA RIVER WATERSHED BOUNDARY

Figure A-2

**INSERT FIGURE A-2**

**detailed location map**

**INSERT FIGURE A-3 FROM MOU DATED SEPTEMBER 1994**

Color map of DVR Project Facilities

# ATTACHMENT B

# PROCEDURE FOR CALCULATING SURFACE RUNOFF AND SURFACE WATER QUALITY

21 November 1994

Watershed and Runoff Characteristics

The drainage system of the Domenigoni watershed essentially forms the headwater basin of Warm Springs Creek, a tributary of the Santa Margarita River through Murrieta Creek. Upstream from the West Dam, the drainage area can be considered in two parts:  (1) the entire drainage area of 17.2 square miles; and (2) the Goodhart Canyon Creek drainage area of 4.2 square miles.  Figure B-1 depicts the boundaries of both of these drainage areas. Field investigation has shown that the watershed and runoff characteristics of Goodhart Canyon up to the area of the East Dam resemble, to a reasonable extent, those characteristics found in Domenigoni Valley.

During operation, the Domenigoni Valley Reservoir will intercept runoff originating upstream from the West Dam.  Under pre-project conditions, the rain falling upstream of the West Dam may be considered as having two methods of disposal:

(1)     a very large percentage of the rain is locally converted to vapor by evaporation and transpiration;

(2)     a small percentage of the rain becomes runoff and joins the surface flows of Warm Springs Creek.

During operation of the Reservoir it will be necessary to mitigate for the second means of disposal (2) on an individual storm basis.  To determine the mitigation release it is planned to measure the volume of runoff from the Goodhart Canyon drainage area by means of a detention basin located just east of the East Dam.  The volume of runoff can then be correlated to the mitigation release required.

Method for Determining Surface Runoff Volume for Release

The Goodhart Canyon detention basin will have a capacity of 1,070 acre-feet, based on a theoretical 8-day event with a 100-year recurrence period. This is adequate to store the entire volume of the most severe storm of record. Additionally, 1.5 feet of freeboard will be provided above the 1,070 acre-feet storage level.

The basin will be located in the southeast corner of the East Side Recreation Area. It will receive sheet flow from along its southern bank and concentrated runoff from a gully that will be diverted from flowing toward the East Dam to the detention basin. The maximum water surface elevation in the basin during the design event will be 1623.5 feet MSL. The lowest elevation in the basin will be 1,600 feet MSL. The invert of the outlet pipe culvert will be elevation 1,608 feet, resulting in less than 50 acre-feet of dead storage. The low area, below the outlet, will act as a sediment trap and will be cleaned as required to maintain the elevation versus capacity curve of the basin.

A continuous level measurement will be made to monitor the stored volume in the detention basin. Any level increase in the basin below the invert of the outlet culvert will correspond directly to runoff volume from Goodhart Canyon. The flowrate through the outlet culvert will be measured and integrated to determine the volume of Goodhart Canyon runoff released from the detention basin. This volume will be added to the change in stored volume in the basin, based on the level measurement and the elevation versus capacity curve. Based on the observed field conditions during operation of the detention basin the precise procedure for measuring the volume of runoff from Goodhart Canyon could be further refined, if necessary, to account for such factors as seepage from the basin. However, continuous monitoring of detention basin water level should preclude the need for such refinement.

An increase in stored volume will be recorded as a positive value and a decrease in stored volume will be recorded as a negative value. When the outflow volume added to the change in stored volume in the detention basin is greater than zero this value corresponds to the

runoff from Goodhart Canyon during the period being analyzed. A negative or zero sum of these values indicates there has been no runoff into the basin, and no additional mitigation release is required to be determined for that period of time.

Using a straight forward linear extrapolation of the Goodhart Canyon runoff to determine the mitigation release is based on two assumptions. First, the differences in rainfall over the two drainage areas are negligible. Second, the difference in runoff per square mile in the entire Domenigoni Valley drainage area compared to the runoff per square mile in the Goodhart Canyon drainage area is negligible. Thus, the mitigation volume to be released downstream from the West Dam is calculated as $17.2/4.2 = 4.1$ times the volume of runoff measured at the detention basin.

Source, Location and Rate of Release

Ultimately, the mitigation flows must be discharged into the existing natural drainage of Warm Springs Creek and the groundwater aquifer at the Project boundary. Mitigation flows will be released from the Reservoir or a point on the SDC to the defined existing Warm Springs Creek. This method of discharge requires a small improved channel from the release location, across the West Side Recreation Area, to culverts that will be installed under Holland Road. The new culverts will discharge into the existing drainage ditch along the east side of Winchester Road. Drainage flows continue south in the existing ditch to an existing box culvert, which crosses under Winchester Road and discharges into the existing Warm Springs Creek.

For this proposed mitigation the project boundary is Holland Road. When dam construction cuts off natural drainage through the valley, the ability to make mitigation releases must be in place. Mitigation releases shall be made within reasonable and safe limits that would neither impair Metropolitan's use of the Project nor expose it to public liability.

The volume of runoff from Goodhart Canyon will be determined for each 24-hour period. This volume will be multiplied by 4.1 to determine the mitigation release volume. When this volume corresponds to a mean daily flowrate of less than 50 cfs, releases will be made at the mean daily flowrate or the maximum reasonable and safe limit, whichever is less. If releases are already being made at the reasonable and safe limit, up to 50 cfs, because of a prior event, the subsequent event volume will be added to the prior event and releases will be continued at the reasonable and safe limit, up to 50 cfs, until the entire volume of required release has been made. When the mean daily flowrate exceeds 50 cfs, releases will be made at 50 cfs, or the maximum reasonable and safe limit, until the required release volume has been met. The mitigation release rate will be limited to a maximum discharge capacity of 50 cfs or the maximum reasonable and safe limit, in order to avoid access, overflow, and other problems downstream.

Calculation of a daily flow duration curve indicates that significant runoff occurs at or above a daily flow of 50 cfs for 0.10 percent exceedance time and is associated with the major storms. In most cases mitigation flow would be able to be released within 24 hours following the precipitation at this flow rate. Only in extremely unusual situations would a release system sized in this manner take longer than a week to pass the required flow for a given storm.

Rainfall on the Reservoir

Rainfall that falls on the Reservoir surface, which under pre-reservoir conditions would normally be disposed of locally by evaporation and transpiration, will also naturally evaporate from the surface of the Reservoir. Thus, current mitigation releases are designed to ensure that the quantity of runoff that is released downstream, after the Domenigoni Valley Reservoir is constructed, is the same quantity of runoff that would have naturally occurred had the Reservoir not been construction, as provided by operating principles A, B, and C of Article II.

Water Quality of the Release

The following table includes a comparison of concentrations (in mg/l) of selected constituents of imported water and Lake Skinner water. The data are from the 1992 Metropolitan Water District Annual Report, which is the most recent report containing comprehensive chemical analyses for these waters.

| Constituent | Units | Colorado River Water | State Water Project | Surface Water Winchester Road | Lake Skinner |
|---|---|---|---|---|---|
| TDS | mg/l | 641 | 375 | 358 | 624 |
| Alkalinity | mg/l | 135 | 87 | 65 | 130 |
| Bicarbonate ($HCO_3$) | mg/l | 165 | 106 | 80 | 154 |
| Calcium (Ca) | mg/l | 76 | 27 | 28 | 72 |
| Chloride (Cl) | mg/l | 83 | 104 | 29 | 87 |
| Hardness | mg/l | 311 | 131 | 122 | 298 |
| Magnesium (Mg) | mg/l | 29.5 | 15.5 | 5.2 | 29 |
| Nitrate ($NO_3$) | mg/l | 0.8 | 2.85 | 19 | 0.6 |
| Potassium (K) | mg/l | 4.5 | 3.8 | 149 | 4.5 |
| Sulfate ($SO_4$) | mg/l | 260 | 72 | 105 | 245 |
| Boron (B) | mg/l | 0.1 | 0.22 | 0.1 | 0.14 |
| Conductivity | $\mu$mho/cm | 1033 | 677 | 454 | 1014 |

Additional samples are being collected to substantiate the above results. It should be noted that the imported water, which will be used in this project, has essentially the same chemical composition as water released for surface water mitigation at Lake Skinner.

For comparison, the concentrations are included from a surface water sample collected at the culvert that passes under Winchester Road. The sampling location is identified in Figure C-1 as SW-4, located approximately 2,500 feet south of the intersection of Holland and Winchester roads. The sample was collected on 19 March 1994 during high flow conditions. The elevated levels of nitrate observed in the Winchester Road surface water sample are the

result of irrigation water being mixed with surface runoff.  Elevated levels of nitrate would not be associated with reservoir construction or operation.

**Insert Figure B-1  FROM MOU DATED SEPTEMBER 1994**

plot of Goodhart and Domenigoni watershed boundaries

# ATTACHMENT C

## PROCEDURE FOR DETERMINING DOWNSTREAM GROUNDWATER ELEVATIONS

General: The Diamond and Domenigoni Valleys comprise a groundwater basin filled with alluvium, bounded by areas of consolidated rock materials that are considerably less permeable than the alluvial deposits. Downstream of the West Dam these rocks are similar in texture and composition to granite. Quantifying groundwater flow downstream from the reservoir presents a significant problem, thereby making it difficult to regulate. Metropolitan has been continuously monitoring selected wells in the Valley since April 1990.

The extent and location of this groundwater basin alluvium have been delineated and incorporated by exhibit reference into Interlocutory Judgment 36. In addition, the Court adjudged that all ground waters below an elevation of 1,400 feet MSL, contained in areas of alluvium located north of the south line of Section 9, T6S, R2W, S.B.M., are not a part of the waters of the Santa Margarita River system due to the presence of a bedrock lip rising to elevation 1,400 feet MSL.

This bedrock lip is a barrier to the southward movement of all ground waters below elevation 1,400 feet and causes such ground waters to move westward into the Menifee Valley of the San Jacinto River watershed, instead of down Warm Springs Creek. Recent data indicate that water levels in the alluvial aquifer continue to be below elevation 1,400 feet MSL in the immediate vicinity of the bedrock lip. In July 1994 the groundwater elevation observed in MO-6, located about 2,000 feet northeast of the bedrock lib was 1355.7 ft MSL. A copy of the hydrograph for MO-6 is included at the end of this Attachment.

However, a shallow perched zone in the immediate vicinity of the bedrock lip provides a source of groundwater that flows over the bedrock lip and into the Santa Margarita basin. Field evidence and the 1960 Court testimony suggest that the volume of groundwater flowing over the bedrock lip and into the Santa Margarita River basin is about 1 acre-feet per year. This is local recharge into the basin and would not be affected by the construction or operation of the DVR project. Finding V of Interlocutory Judgment 36 determined that groundwater that does move over the bedrock lip and down Warm Springs Creek is consumed almost in its entirety by evaporation and transpiration losses within a relatively

short distance downstream.  In addition, the quality of water flowing over the bedrock lip will not be affected by construction or operation of the DVR project.

Groundwater levels in the vicinity of the bedrocl lip will be measured on a monthly basis using the bedrock lip monitoring well (MO-6).  The results of monitoring the bedrock lip observation well will be used to demonstrate compliance with Recital "G" and operating principle "E".  Groundwater levels measured in this well will be used to determine if the groundwater elevation in the alluvium exceeds 1400 feet MSL.

Insert Figure C-1  FROM MOU DATED SEPTEMBER 1994

location of long-term monitoring wells



**LOCATION** - North: 2185303   East: 6305229
**GROUND SURFACE ELEVATION:** 1445.8 ft NAVD88
**STICKUP:** 2.1 feet above ground surface          **DATE WELL INSTALLED:** June 22, 1994

| DATE MEASURED | DEPTH BELOW TOP OF CASING, ft | ELEVATION OF GROUNDWATER SURFACE, ft | DATE MEASURED | DEPTH BELOW TOP OF CASING, ft | ELEVATION OF GROUNDWATER SURFACE, ft | DATE MEASURED | DEPTH BELOW TOP OF CASING, ft | ELEVATION OF GROUNDWATER SURFACE, ft |
|---|---|---|---|---|---|---|---|---|
| 07/22/94 | 92.3 | 1355.6 | | | | | | |
| 08/11/94 | 92.4 | 1355.5 | | | | | | |
| 09/08/94 | 92.9 | 1355.0 | | | | | | |

**SCREEN PERFORATION:** 0.040-inch slot (110.5-30.5 ft)  **SAND PACK:** Lonestar #3 (115-25.5 ft)
**TYPE/THICKNESS OF SEAL(s):** Bentonite pellets 25.5-20.5 ft, 5% bentonite-cement
     grout 20.5 ft to surface, with steel protective casing
**AQUIFER COMPLETION:** alluvium;  MONITORING REQUIREMENTS: long term, water level

**Project:** Domenigoni Valley Reservoir
**Project Location:** Riverside County, California

**GROUNDWATER ELEVATION vs. TIME in Boring No. MO- 6**

EBASCO / Bird & Veatch Woodward-Clyde

SNA 10/20/94 DVGWEL DVRAL                                        Proj. Feature: W6

Routine monitoring data will be forwarded to the Watermaster in accordance with the operating principles set forth in section I of these criteria.  Specific data will include:

a.   Monthly groundwater elevation data.

b.   Mitigation releases from the reservoir or the SDC, including release quantity, time of release, duration of release, and flow rate of the release.

c.   Import and natural surface water quality data [submitted when collected]

d.   Daily stage measurements at the Goodhart Canyon detention basin.

e.   Daily measurements at the Goodhart Canyon gaging station, if constructed

f.   Estimated daily local runoff.

g.   Daily precipitation at the reservoir.

ATTACHMENT E

INTERLOCUTORY JUDGMENT No. 36, dated 3 JULY 1963
INTERLOCUTORY JUDGMENT No. 36A, dated 20 FEBRUARY 1968
(WITHOUT EXHIBITS)

**DELETE ATTACHMENT F**

D - 3

**SERVICE LIST**

Mr. James Jenks, Watermaster
Santa Margarita River Watershed
c/o Fallbrook Public Utility District
990 East Mission Road
Fallbrook, California 92028

Andrew F. Walch, Esq.
Environmental and Natural Resources Division
United States Department of Justice
999 Eighteenth Street, Suite 945
Denver, CO 80202

Robert H. James, Esq.
Sachse, James & Lopardo
205 West Alvarado Street
Fallbrook, CA 92028

Michael Cowett, Esq.
Best, Best & Krieger
550 West C Street, 16th Floor
San Diego, CA 92101-3540

# EXHIBIT  G

# Markup of MOU & Agreement
# Showing Amendments

# DOMENIGONI VALLEY RESERVOIR PROJECT

## MEMORANDUM OF UNDERSTANDING AND AGREEMENT ON OPERATION OF DOMENIGONI VALLEY RESERVOIR

NOVEMBER~~SEPTEMBER~~ 1994

## THE METROPOLITAN WATER DISTRICT
### OF
### SOUTHERN CALIFORNIA

Domenigoni Valley Reservoir Project
Two California Plaza
350 South Grand Avenue
Los Angeles, California  90071-3123

# TABLE OF CONTENTS

Page

Recitals ........................................................................................ 1

Article I - Operating Principles ........................................... 3

Article II - Implementing Criteria ...................................... 4

Article III - Definitions ...................................................... 6 7

Article IV - Protection of Parties to the Action ............... 9 10

Article V - Protection of Parties to MOU .......................... 9 10

Article VI - Submission to Court ........................................ 9 10

Article VII - Review and Modification Transfer Limitation ... 9 10

Article VIII - U.S. Participation Review and Modification ... 9 10

Article IX - Protection of Parties With Litigation Pending U.S. Participation ... 9 11

List of Attachments

| | |
|---|---|
| Attachment A | Project Description and Background Information |
| Attachment B | Procedure for Calculating Surface Runoff and Surface Water Quality |
| Attachment C | Procedure for Determining Downstream Groundwater Elevations |
| Attachment D | Monthly Record Sheet |
| Attachment E | Interlocutory Judgments 36 and 36A |
| Attachment F | Domenigoni Valley Area Parcels |

MEMORANDUM OF UNDERSTANDING AND AGREEMENT
ON OPERATION OF DOMENIGONI VALLEY RESERVOIR

THIS MEMORANDUM OF UNDERSTANDING AND AGREEMENT ("MOU") is entered into as of the 21st 28th day of November September, 1994, by and between THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA ("Metropolitan"), a public entity; FALLBROOK PUBLIC UTILITY DISTRICT ("Fallbrook"), a public entity; RANCHO CALIFORNIA WATER DISTRICT ("Rancho"), a public entity; and the UNITED STATES, solely in its capacity as a water rights holder in the Santa Margarita River stream system.

## Recitals

A.     The United States District Court for the Southern District of California ("Court") has adjudicated water rights to the Santa Margarita River stream system ("System"), in the case entitled United States v. Fallbrook Public Utility District, et al., No. 1247-SD-C ("the Action"), by the Modified Final Judgment and Decree entered on April 6, 1966 and Amendatory Orders of June 27, 1968, January 16, 1975 and March 13, 1989 ("Judgment").

B.     Fallbrook, Rancho, and the United States are the principal existing and potential water users in the System; have been involved for some time in the Action to determine the respective rights and duties of the users of the waters of the System; and are parties of record in the Action.

C.     The Judgment retains continuing jurisdiction as to the use of all surface waters and certain underground waters within the watershed of the System, and Article II of the 1966 Decree adopts Interlocutory Judgment 28, which specifically retains continuing jurisdiction over impoundment of the surface waters of the System.

D.     Metropolitan is in the process of constructing an impoundment for imported water, known as the Domenigoni Valley Reservoir Project ("Project"), within the Warm Springs Creek Sub-Watershed of the System.  Although the Project's purpose is to provide regulatory storage capacity for Metropolitan's imported water distribution network, it will nonetheless unavoidably impound small amounts of surface waters of the System for short periods of time.  Attachment A to this MOU contains a general description of the Project.

E.     Article II of the 1966 Decree adopts Interlocutory Judgments 36 and 36A, for the Warm Springs Creek Sub-Watershed, which is tributary to Murrieta Creek.  Warm Springs Creek flows through the Project site.  Finding II of Interlocutory Judgment 36 states that Warm Springs Creek is an intermittent stream both as to time and place, flowing only during and immediately after periods of heavy precipitation and runoff.  Copies of Interlocutory Judgments 36 and 36A are appended to this MOU as Attachment E.  The exhibits to these Judgments are not included.

F.     The Project is located upstream of a geological feature described in Findings IV and V of Interlocutory Judgment 36, as being located in the general vicinity of the south line of Section 9, T6S, R2W, S.B.M.  Those Findings further described that feature as a "bedrock lip".

G.     Conclusion III and the third Order of Interlocutory Judgment 36 state that (a) groundwaters contained within alluvium north of the bedrock lip are not part of the System, so long as the groundwater level contained in the alluvium immediately north of the bedrock lip remains below elevation 1400 feet above Mean Sea Level (MSL); and (b) the groundwater elevation in that area is below 1400 feet MSL.  Recent investigations demonstrate that the groundwater elevation within alluvium north of the bedrock lip is currently at 1355 feet MSL.  Historic groundwater elevation data indicated that groundwater elevations near the bedrock lip have been below 1400 feet MSL since at least the late 1950's.  Finding IV of Interlocutory Judgment 36 further states that the bedrock lip causes

- 2 -

groundwater that reaches that point to move out of the System and into the San Jacinto River watershed, when the groundwater elevation is below 1400 feet MSL.

H.    Finding IV of Interlocutory Judgment 36A determines that groundwater in basement complex or weathered basement complex, rather than alluvium, is not part of the System.

I.    ~~Metropolitan is in the process of acquiring over 13,000 acres of land within the Domenigoni Valley, along with respective appurtenant water rights set forth in Interlocutory Judgments 36 and 36A. A listing of the specific parcels being acquired is given in Attachment F.~~

~~J.~~    Metropolitan will continue to coordinate with the parties to this MOU in efforts to improve water resource management programs involving the Santa Margarita River Basin.

NOW THEREFORE, the parties agree as follows:

Article I. Metropolitan will operate the Project in accordance with the following principles:

A.    The basic function of the Reservoir is to provide regulatory storage capacity for Metropolitan's imported water distribution system. The Reservoir will store only water that would not have been available in the absence of the Reservoir.

B.    The quantity and quality of surface runoff that would flow past the West Dam, in the absence of the Reservoir, will be determined and a like quantity of water, of similar quality, will be released from the Reservoir or San Diego Canal (SDC) into Warm Springs Creek.

- 3 -

C.   Rainfall on the reservoir will be retained in the Reservoir, subject to principle A, until it is released subject to principle B, or such time as it returns to the atmosphere as evaporation.

D.   Water conservation and flood control are not explicit functions of the Reservoir.

E.   ~~During reservoir operation the groundwater immediately downstream from the West Dam will be monitored by means of representative wells.   Metropolitan will restore production capability to groundwater wells through seepage from the reservoir, or other appropriate actions, to ensure and maintain historical water availability to affected well owners.~~  The elevation of groundwater in the vicinity of the bedrock lip will be monitored at the bedrock lip observation well, located in the southern half of Section 9, T6S, R2W

S.B.M.  This well is designated MO-6.  Attachment C provides a more detailed explanation of the procedure for monitoring groundwater elevations during reservoir operation.

~~E.     During the period of construction requiring dewatering of excavations, downstream groundwater levels will be monitored.   Any downstream groundwater user that experiences a significant decline in well production, which reduces their water supply below a reasonable level, will be supplied water of similar quality by Metropolitan.   Attachment C contains a more detailed explanation of the procedure for monitoring groundwater levels during construction.~~

~~F.~~

- 4 -

F.   The outflow from the Reservoir will have little or no significant effect on the quality of the Warm Springs Creek water downstream of the West Dam.

G.   ~~During the period of construction requiring dewatering of excavations, downstream groundwater users that are deprived of their existing source of groundwater as a result of these dewatering operations will be supplied water of similar quality by Metropolitan.~~

Article II.   Metropolitan will implement those principles by operating the Project under the following criteria:

A.   Surface runoff that would normally flow downstream of the West Dam, in the absence of the Reservoir, shall be determined as set forth in Attachment B hereto.

B.   Reservoir releases shall be determined as follows:

1.   Mitigation releases from the Reservoir into Warm Springs Creek will begin within 24 to 72 hours after the surface runoff occurs, and will be adjusted daily as required by subsequent determinations of surface runoff.

2.   The rate of release from the Reservoir into Warm Springs Creek will be limited to the lesser of 50 cubic feet per second (cfs) or the computed mean daily rate of surface runoff that would have occurred at the West Dam in the absence of the Reservoir, except as noted in paragraphs 3 and 4.

3.   Releases into Warm Springs Creek, pursuant to paragraph 2, shall occur within reasonable and safe limits that would neither impair

- 5 -

Metropolitan's use of the Project nor expose it to public liability. These flows may be limited as requested by the Watermaster.

4. The start of any release from the Reservoir into Warm Springs Creek will be made at a low rate, and any increases in the rate of release will be made gradually in order that downstream parties may be alerted. This will be in addition to advance verbal notification of a pre-established list of critical downstream parties.

5. Within the constraints imposed by physical limitations and other operating limits, as mentioned in paragraphs 2, 3, and 4 above, releases to Warm Springs Creek will be made at rates similar to those of the natural runoff that would have occurred in the absence of the Reservoir.

6. Releases from the Reservoir into Warm Springs Creek will be continued following each flood event until the total computed quantity of surface runoff has been released.

C. No storage space is specifically reserved in the Reservoir for flood control or conservation use. The releases from the Reservoir into Warm Springs Creek will be made through the Forebay or San Diego Canal.

D. ~~The elevation of groundwater downstream of the West Dam will be monitored at the well of record in the southern half of the south half of Section 9, T6S, R2W.~~ The quality of the imported water that is stored in the Reservoir will be adequate for intended uses. Releases from the facilities will have little, if any, significant effect on the general water quality, as compared to the water quality that would have existed in the absence of the Reservoir. Attachment B provides a brief summary of the water quality associated with sources that will

- 6 -

be used for operation of the Domenigoni Valley Reservoir.

~~G.~~E. Metropolitan will file a copy of the monthly record sheet, described in Attachment D hereto, with the Watermaster prior to the end of each respective following month. The Watermaster will in turn deliver copies of each month's sheet to the parties hereto, other than Metropolitan.

Article III. The following terms used in the MOU shall have the respective meaning given below unless otherwise indicated:

A. Alluvium - The alluvial material, generally of a young geologic age, underlying the Domenigoni Valley and Menifee Valley. This material is referred to as younger alluvium in Finding III of Interlocutory Judgment 36.

B. Downstream - The area immediately west of (below) the West Dam and hydrologically down gradient from the Project including only that part of the Santa Margarita River system that would have received surface water from Warm Springs Creek in the absence of the DVR project.

~~Downstream - The area immediately west of (below) the West Dam and hydrologically down gradient from the Project including only that part of the Santa Margarita River system that would have received water from Warm Springs Creek in the absence of the DVR project. In terms of delineating the extent of the alluvial aquifer this refers to the south half Section 3, north half Section 10, and east half Section 9, T6S, R2W, S.B.M.~~

C. DVR Watershed - The Domenigoni Valley Reservoir (DVR) watershed, consisting of the 17.2 square mile drainage area tributary to Warm Springs Creek, upstream from the West Dam. This includes the reservoir area.

D.   East Dam - An embankment dam that forms the eastern boundary of the Domenigoni Valley Reservoir.

E.   Export - Water that is released from the Reservoir into the Metropolitan water distribution system.

F.   Forebay - A water impoundment structure located downstream of the West Dam used to hold water for transfer in and out of the Reservoir, and in and out of the San Diego Canal.

G.   Groundwater - The water contained in the alluvial and rock aquifers within the zone of saturation in the basin downstream of the West Dam.

H.   Import - Water that flows into the Reservoir through the SDC and Eastside Pipeline.

I.   Inflow - Surface runoff and subsurface flow into the Reservoir from the area between the East and West Dams and above the Reservoir elevation.

J.   Maximum Storage Capacity - The maximum volume of water that may be stored in the Reservoir when the Reservoir surface water elevation is equal to the spillway crest elevation.

K.   Outflow - Discharges made through the Forebay or Reservoir outlets into Warm Springs Creek, seepage beneath the East, West, or Saddle Dams, and other subsurface flow out of the Reservoir.

L.   Project - The Domenigoni Valley Reservoir Project (DVRP) includes the East, West and Saddle Dams, and all ancillary facilities.

- 8 -

M.   <u>Mitigation Release</u> - Water that is released through the Forebay or West Dam outlets, or the San Diego Canal, into Warm Springs Creek.

N.   <u>Reservoir</u> - The Domenigoni Valley Reservoir created by the East, West and Saddle dams.

O.   <u>Saddle Dam</u> - An embankment dam that forms part of the northern boundary of the Domenigoni Valley Reservoir.

P.   <u>Steering Committee</u> - The Court appointed committee consisting of representatives from the substantial water users within the Santa Margarita Watershed.

Q.   <u>Storage</u> - The volume of water actually stored in the Reservoir at a given time.

R.   <u>Storage Space</u> - The difference between maximum storage capacity of the Reservoir and the storage at a given time.

S.   <u>Subsurface Flow</u> - Groundwater flowing below the ground surface.

T.   <u>Surface Runoff</u> - Surface water runoff from the tributary watershed that would have occurred at the West Dam in the absence of the East and West Dams.

U.   <u>Watermaster</u> - The individual designated by the court to act as Watermaster for the Santa Margarita River Watershed, to administer and enforce the provisions of the modified final Judgment and Decree and subsequent instructions and orders of the court.

V.   ~~Well of Record - the well, or group of wells, designated as providing a representative groundwater elevation downstream of the West Dam for~~

- 9 -

~~purposes of demonstrating compliance with the operating criteria.~~

~~W.~~   <u>West Dam</u> - An embankment dam that forms the western boundary of the Domenigoni Valley Reservoir.

Article IV.    ~~Metropolitan's operation of the Project in the manner described in Articles I and II, above, shall not impair the rights of any of the parties to the Action under the judgement.~~    Metropolitan's operation of the Project in the manner described in Articles I and II, above, will not impair the rights of any of the parties to the Action.

Article V.     Notwithstanding any other provisions in this MOU, or anything that might reasonably be implied or inferred therefrom, nothing herein shall be construed to affect in any manner any rights to the use of water from the Santa Margarita River or its tributaries that the Parties to this MOU hold.  Nothing in this MOU shall be construed as a transfer of or an attempt to transfer such rights or any part thereof between the Parties.

Article VI.     Upon execution of this MOU by the respective undersigned representatives on behalf of Fallbrook, Rancho, the United States, and Metropolitan, Metropolitan shall present this instrument to the United States District Court for the Southern District of California for approval and incorporation into the Judgment as the Court may determine appropriate under the circumstances.  Upon approval by the Court, this MOU shall become fully effective.

Article VII.   ~~No assignment or transfer of the rights defined in this MOU or any part or interest therein shall be valid unless approved by all the Parties hereto.~~

~~Article VIII.~~  The criteria and reservoir release data referred to in Article II hereof, and the formulae included in the Attachments hereto shall be periodically reviewed and, based on operating experience, will be modified if deemed necessary or appropriate by the Parties hereto.

Article VIII.

- 11 -

Participation in this MOU is not to be construed as binding the United States regarding any rights, claims, obligations, interests, responsibilities, or duties it may have regarding the Domenigoni Valley Reservoir Project other than as a water rights holder in the Santa Margarita River System.

~~This MOU is not intended to be a determination of the nature or extent of water rights acquired by Metropolitan in connection with its land acquisitions for the Domenigoni Valley Reservoir Project, nor to create any estoppel to claims in litigation now pending in connection with those land acquisitions.~~

Article IX.   This MOU is not intended to be a determination of the nature or extent of Metropolitan's obligations in connection with its land acquisitions and mitigation programs for the Domenigoni Valley Reservoir Project, nor to create any estoppel to claims in litigation now pending in connection with those land acquisitions or mitigation programs.

- 12 -

IN WITNESS WHEREOF the undersigned have executed this Memorandum of Understanding and Agreement on behalf of their respective principals.


**THE METROPOLITAN WATER DISTRICT**
**OF SOUTHERN CALIFORNIA**                    APPROVED AS TO FORM

                                             N. Gregory Taylor
                                             General Counsel


_____

John R. Wodraska
General Manager                              _____

**FALLBROOK PUBLIC UTILITY DISTRICT**


By:_____
[name]
[title]

**RANCHO CALIFORNIA WATER DISTRICT**


By:_____
[name]
[title]

**UNITED STATES OF AMERICA**


By:_____
[name]
[title]


- 13 -