1  ANDREW F. WALCH, Senior Counsel
   MICHAEL A. GHELETA, Trial Attorney
2  United States Department of Justice
   Environment and Natural Resources Division
3  999 18th Street, Suite 945
   Denver, Colorado, 80202
4  Telephone: (303)312-7303
   Facsimile: (303)312-7379
5
   Attorneys for the United States of America
6

FILED

03 AUG 18  AM 10: 07

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                    DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

51-cv-
CASE NO. 1247-SD-GT

UNITED STATES OF AMERICA,

                          Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT,
et al.

                          Defendants.

REPLY OF THE UNITED STATES TO
OPPOSITION BY RANCHO AND
EASTERN TO MOTION FOR LEAVE
TO FILE SECOND SUPPLEMENTARY
AND AMENDATORY COMPLAINT

Date:   August 25, 2003
Time:  2 p.m.
Courtroom:    8
Hon. Gordon Thompson, Jr.

Plaintiff United States of America respectfully submits the following reply to the opposition

by Rancho and Eastern to the motion of the United States for leave to file its Second Supplementary

and Amendatory Complaint (Supplementary Complaint).

**INTRODUCTION**

This case is about water.  As Rancho and Eastern have recognized, this Court has continuing

jurisdiction over "the use of all surface waters within the watershed of the Santa Margarita River

and all underground or sub-surface waters . . . which . . . add to, contribute to, or support the Santa Margarita River stream system."  1966 Modified Final Judgment and Decree, ¶ V, at 14.   The Court also has retained jurisdiction over present and future appropriative rights "insofar as such uses may conflict with or be adverse to the exercise of any prior vested water right...." Id. ¶ VII, at 15. Eastern's and Rancho's present and future actions in violation of the Four Party Agreement cause the impairment of surface and underground waters within the Santa Margarita River basin to the detriment of Camp Pendleton's rights to the beneficial use of its water, and bring this case squarely within the Court's retained jurisdiction.

The court in Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988), quoted Judge Haynsworth in words that are appropriate to this proceeding to allow supplemental pleadings:

> It is a useful device, enabling a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted.  So useful they are and of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears, though the court has the unquestioned right to impose terms upon their allowance when fairness appears to require them.

New Amsterdam Casualty Co. v. Waller, 323 F.2d 20, 28-29 (4th Cir. 1963), cert. denied, 376 U.S. 963 (1964).

In reviewing the responses filed by Rancho and Eastern,[1] it is clear that the central issue to be resolved at the hearing on August 25, 2003, is whether there is a  nexus between the United

---

[1]     Eastern argues that there is "no relationship" between the matters alleged in the Supplementary Complaint regarding the breach of the Four Party Agreement and the original action.  Eastern Opposition at 3, 6. Rancho argues that the allegations simply "arise out of a contractual dispute" among the parties, "unrelated" to the underlying action over water rights, Rancho Opposition at 4, as though water rights disputes never implicate contract rights. Here, our claim of impairment of our water rights previously recognized by this Court by the breach of the Four Party Agreement clearly demonstrates a relationship between the claims in this action and the rights determined in the original case.  See Keith v. Volpe, 858 F.2d at 474.

1  States' water rights as recognized in Case No. 1247 and the actions of Eastern and Rancho in

2  abrogating the Four Party Agreement, such that the Court should take jurisdiction of the claims in

3  the Supplementary Complaint.  As a consequence of the breach, defendants are and will be

4  unlawfully using waters that otherwise would have been available to the United States for beneficial

5  use, to the detriment of prior appropriative, riparian and other rights of the United States within the

6  Santa Margarita River basin.  The United States is and will be injured in the <u>quality and quantity</u> of

7  water available for its use as a result of the breach of the Four Party Agreement by Eastern and

8  Rancho, who gain financially because of their breach.[2]

9  

10  

11                                           **ARGUMENT**

12          1.  Neither Eastern nor Rancho recognize that the water rights of the United States adversely

13  impacted by the actions of Rancho and Eastern include appropriative rights, as well as riparian

14  rights.[3]  The United States is the owner of the oldest appropriative right in the watershed for storage

15  of water diverted from the Santa Margarita River for beneficial use in Lake O'Neill.  Interlocutory

16  Judgment No. 24.  (IJ No. 24).  Eastern, which has long been involved in water matters within the

17  basin, does not even acknowledge that the United States indeed has prior vested water rights, nor

18  

19  

20  

21  

22  

23  

[2]        The interests of judicial economy and the liberal interpretation of Rule 12(d) warrant granting leave to file the Supplementary Complaint, which, in addition to its water right court, also includes related breach of contract and California Environmental Quality Act (CEQA) claims. <u>Id.</u> at 473-77.

[3]        As to its riparian rights, this Court already has found that, with minor exceptions, "all uses of the waters of the Santa Margarita River by the United States within the Naval Enclave and within the watershed . . . are reasonable and beneficial riparian uses." Interlocutory Judgment ("IJ") No. 37, Conclusion of Law (COL) 8.  Further, this Court found that the facts concerning the "wells and surface diversions" within the Naval Enclave were true, and various data pertaining to gross acreage, irrigable acreages and water duty constitute prima facie evidence of their truth until contradicted or overcome by other evidence." IJ No. 37, Finding of Fact 52.

1  does it recognize that Eastern's use of treated wastewater in the basin may impact those water

2  rights.[4/]

3

4      The United States owns other rights to the use of water which are set forth in its

5  Supplementary Complaint. <u>See</u> Count 27, ¶ 20.  However, of greatest significance to this discussion

6  are the prior vested appropriative right for Lake O'Neill and the riparian rights of the United States

7  – all of which may be injured as a result of defendants' breach of the Four Party Agreement and the

8  improper use of waste waters or sewage effluent within the watershed, without regard to the adverse

9

10 impacts on water use by the United States, and without the right to appropriate and export native

11 waters intermingled with sewage effluent.[5/]

12      2.   It is long past the day when water quality can with impunity be contaminated without

13

14 regard to the rights of others to make beneficial use of those waters to which they have a right.  As

15 the Supreme Court recognized in <u>PUD No. 1 of Jefferson County v. Washington Dep't of Ecology</u>,

16 511 U.S. 700, 719 (1994).

17

18            Petitioners also assert more generally that the Clean Water Act is only
             concerned with water 'quality,' and does not allow the regulation of
19           water 'quantity.'  This is an artificial distinction.  In many cases, water
             quantity is closely related to water quality; <u>a sufficient lowering of the</u>
20           <u>water quantity in a body of water could destroy all of its designated</u>
             <u>uses, be it for drinking water, recreation, navigation or, as here as a</u>
21           <u>fishery</u>.   (Emphasis added.)

22      The United States has alleged that "the exportation of treated wastewater from the Santa

23

24 Margarita River watershed . . . results in the further degradation and diminution of waters native to

25

26 ───────────
   [4/]     It is not clear whether this is the result of, or the reason for Eastern's failure to comply with the
27 requirements of CEQA.  In either instance, however, it is the United States' position, as asserted in the
   Supplementary Complaint, Count 31, that a proper examination of the impact of Eastern's use of treated
28 wastewater within the basin or the export of that water outside the basin is necessary and would have
   revealed the rights detrimentally affected by Eastern's proposed actions.

   [5/]     Rancho argues that the United States and Rancho, by entering into the Cooperative Water
   Resource Management Agreement, confirmed by this Court in 2002, somehow established a precedent
   that would require all such agreements that may impact the water resources of Camp Pendleton to be
   likewise approved by the Court.  Although it may be desirable, no such requirement exists.

the basin, adversely impacts the quality and quantity of water otherwise available for beneficial use by the Naval Enclave and Fallbrook, and disregards the rules prohibiting unreasonable use and injury to prior vested rights."  Supplementary Complaint, Count 28, ¶ 2.[9]  The United States owns prior vested water rights.  As shown in the affidavit of Stephen Reich, ¶¶ 4-8,  attached as Exhibit 1 to this Reply, the actions of Rancho and Eastern will seriously degrade the quality of the water, and will have a direct and adverse impact on the quantity of water that may be used by the United States Marines based at Camp Pendleton under the Camp's prior vested water rights for domestic and other purposes.  Clearly, this is a matter to be resolved before this Court.

Contrary to Rancho's position that "the Four Party Agreement has nothing to do with the allocation and distribution of natural flows within the Santa Margarita River watershed," Rancho Opposition at 2, the Marines cannot use natural flows which have been or will be significantly polluted by the actions of Rancho and Eastern as a result of the abrogation of the Four Party Agreement.  The  Four Party Agreement (Agreement) would have provided much cleaner water to the lower Santa Margarita River as a result of the treatment of sewage effluent and its distribution downstream under the Agreement.  With the breach of the Agreement, water that otherwise would have been available to mitigate the loss of natural flow in the stream will be unavailable for use by Fallbrook and Camp Pendleton; the availability of natural flow for use as potable water by the Base and for other domestic uses will have been diminished by pollution caused now and in the future by Eastern and Rancho.  Reich Declaration, ¶¶ 6-7.

---

[9]     There is no question that treated wastewater made up of both groundwater produced within the Santa Margarita River basin and water imported into the basin are exported by Eastern. Santa Margarita River Watershed Annual Watermaster's Report (Watermaster's Report), Water Year 2000-2001, at 50-51, lodged with the Court. Inflows to Rancho's treatment plant also are similarly constituted. Id. at 54. The basin is fully appropriated and the groundwater resources are being depleted by the excess demand, which accounts for ever increasing amounts of water being imported. Id., Tables A-1, B-1.

3.  Officials at Camp Pendleton signed the Agreement in good faith and on the understanding that Eastern and Rancho would meet its obligations and provide the water it contracted to provide in 1990.  The United States gave consideration for the Agreement by agreeing to a lowering of the water quality standards in the upper part of the watershed, thereby allowing Eastern and Rancho to profit.  Failure of Eastern and Rancho to perform has not only deprived the Camp of a source of additional water to meet its needs and the needs of Fallbrook,[2] but the breach has also caused and will continue to cause a further degradation of the waters of the basin and ultimately reduce the quantities of water available to the Camp for beneficial use under its water rights. Reich Declaration, ¶¶ 6-8.

4.  Eastern has alleged that it does not produce water from the basin that is within the jurisdiction of this Court, and that "all water sold by Eastern for domestic use within the Santa Margarita River watershed  is foreign, or imported water," Eastern Opposition at 2.  The United States is informed and believes that in addition to the waters produced by Rancho, treated wastewater the source of which originates both within the basin and from outside the basin is sold by Eastern and Rancho for use within the basin, including the irrigation of golf courses, and Eastern is exporting sewage effluent from the watershed for that and other purposes, in violation of the water rights of the United States. Watermaster's Report, Tables A-1, A-5, B-1, B-6; pp. 50-51, 54. Reich Declaration, ¶¶ 10, 12.  Thus, while Eastern may not presently produce water from within the basin, as it did from 1976 to 2002, id. and Pack Declaration, ¶ 4, it certainly processes water

---

[2]      Although Fallbrook Public Utility District has been a defendant in this action from the outset, its interests in this action now appear to be more aligned with plaintiff. "The alignment of the parties as designated in the original complaint is not binding on the court," but may be aligned according to their interests. Keith v. Volpe, 858 F.2d at 476.

CASE NO. 51-CV-1247 (GT)

produced within the basin by Rancho and sells that water as sewage effluent to users within and

outside the basin.

5. Eastern may argue that only that sewage effluent derived from imported water will be

exported in the future, or that more water is imported than exported, and thus there will be no net

export of native water. See Watermaster Report, Table A-1, B-1.   However, the water imported by

Eastern and Rancho into the basin intermingles with native waters and pervades the entire basin.

Although Rancho at present sells only to its customers within the watershed, Eastern sells it to its

customers both within and outside the basin.  Exports by Eastern, though now significant, will

increase dramatically if it is allowed to complete its 42 to 48 inch new pipeline to export sewage

effluent from the Santa Margarita basin to Lake Elsinore in the San Jacinto watershed.[9]  These

actions by Eastern and Rancho to sell water produced from sewage effluent have and will continue

to diminish the quality of water used by Camp Pendleton, ultimately rendering it unfit for beneficial

use, and inevitably causing a reduction in the quantity of water available for beneficial use.  There

can be no question that the actions by defendants Eastern and Rancho in failing to meet the

requirements of the Agreement and provide better quality water to Camp Pendleton violate that

Agreement and will, indeed, "injure, or derogate from, the United States' rights to the water" within

the Santa Marganita River basin.  See Eastern Opposition at 4;  Reich Declaration, ¶ 12.

Although it may be true that "under California water law, the United States cannot require

Eastern to continue to supply any foreign water," Eastern Opposition at 5-6, the United States may

seek to enjoin Eastern and Rancho from exporting water that otherwise would remain in the basin,

thereby degrading water to which the United States has a right of beneficial use, all in derogation of

---

[9]     Eastern's attempt to adopt a mitigated negative declaration for its proposed pipeline to export
water from the basin in violation of CEQA is being challenged in the Supplementary Complaint, Count
30.

its rights under the Agreement.  It has long been the law in California that a senior appropriator

within the basin, such as the United States, is entitled to protection against the actions of others,

such as Eastern's and Rancho's actions in breach of the Agreement, which materially degrade the

quality of the water available for beneficial use.  See, e.g., Phoenix Water Co. v. Fletcher, 23 Cal.

481, 487 (1863); Dripps v. Allison's Mines Co., 45 Cal. App. 95, 99, 187 P. 448, 450 (1919);

Wright v. Best, 19 Cal. 2d 368, 378, 121 P.2d 702, 708-09 (1942);  Joerger v. Pacific Gas & Elec.

Co., 207 Cal. 8, 25-26, 276 P. 1017, 1025-26 (1929).

 6.  Pursuant to the doctrine of pendent jurisdiction, the Court has jurisdiction to prevent such

abuses as alleged above relative to its water rights.  The United States requests that the Court

resolve all issues raised in the Supplementary Complaint because injury to our water rights is

directly related to the breach of the Agreement and the failure of Eastern to properly comply with

CEQA.  No new or complex issue of State law requires remand of any count to State court, and the

water rights issues are part and parcel of the breach of contract and CEQA claims.  Executive

Software North America, Inc. v. United States Dist. Court for Cent. Dist. of California, 24 F.3d

1545, 1555-56 (9th Cir. 1994), Qualcomm, Inc. v. Motorola, Inc., 989 F. Supp. 1048, 1051 (S.D.

Cal. 1997), cf. Jeffrey v. Home Depot U.S.A., Inc., 90 F. Supp.2d 1066 1070-71 (S.D. Cal. 2000).

Accordingly, this case should proceed under the jurisdiction of this Court.  See 1966 Modified Final

Judgment and Decree, ¶¶ V, VII at 14, 15; 28 U.S.C. § 1345; and, 28 U.S.C. § 1367.

 7.  Eastern complains that it was not a party to the original action, filed in 1951, and that its

subsequent actions in accepting this Court's jurisdiction and joining the Steering Committee do not

extend to "designat(ing) Eastern as a defendant in this case."  Eastern Opposition at 2.  It alleges

that it no longer produces water from within the watershed, either underground or surface waters.

Pack Declaration, ¶ 5.  However, while we do not read these pleadings as an assertion that Eastern

- 8 -    CASE NO. 51-CV-1247 (GT)

1   objects to the jurisdiction of this court or service by the United States of its motion to supplement

2   and amend the prior pleadings, or to being a party to this proceeding if the Court grants the motion

3

4   to amend and supplement,[9] by its actions Eastern has waived any such objection by virtue of its

5   voluntary appearances before this Court.  See Fed. R. Civ. P. 12(h); Jackson v. Hayakawa, 682 F.2d

6   1344, 1347 (9th Cir. 1982); Cactus Pipe & Supply v. M/V Montmartre, 756 F.2d 1103, 1108 (5th Cir.

7   1985).

8
                                    **CONCLUSION**
9

10          The United States and Fallbrook Public Utility District continue to actively work to achieve

11  a physical solution to their respective rights to the use of the waters of the Santa Margarita River

12  watershed, as envisioned in the June 27, 1968 Agreement regarding the Santa Margarita Project.

13
    The United States and Rancho California Water District have entered into the Cooperative Water
14

15  Resource Development Agreement in 2002 to resolve its disputes over their rights to the use of the

16  waters of the Santa Margarita River.  It is only when a cooperative approach to resolving water

17
    rights issues breaks down that resort is reluctantly made to seek the good offices of this Court to
18

19  resolve our disputes.  The Supplementary Complaint to remedy the breach of the Agreement is well

20  founded in the circumstances surrounding this 50+ year old litigation.  The United States believes

21  that it would be a waste of time and judicial resources to require initiating a new action in federal

22
    district court to vindicate its rights under the Agreement on matters that are so integrally tied to Case
23

24  No. 1247.

25

26

27  [9]    "There is ample authority for adding new defendants in a supplemental complaint," to cover
    events happening after suit.  Keith v. Volpe, 858 F.2d at 476, quoting Griffen v. County School Bd. of
28  Prince Edward County, 377 U.S. 218, 227 (1964) ("Persons participating in these new events may be
    added if necessary.") .

                                            - 9 -          CASE NO. 51-CV-1247 (GT)

1   The United States respectfully requests that the Court allow this action to proceed, order

2   defendants to file their answers or otherwise respond, and proceed with a resolution of these

3   disputes over the breach of the Agreement, the degradation of water quality caused by Eastern and

4

5   Rancho, and the loss of water quantity as a result of defendants' actions.

6

7   Dated: August 15, 2003

8

9                                    Respectfully submitted,

10                                   UNITED STATES OF AMERICA

11

12

13                                   *Andrew F. Walch (mag)*
                                     ANDREW F. WALCH
14                                   Senior Counsel

15

16

17                                   *Michael A. Gheleta*
                                     MICHAEL A. GHELETA
18                                   Trial Attorney

19
                                     U.S. Department of Justice
20                                   Environment & Natural Resources Div.
                                     General Litigation Section
21                                   999 - 18th Street, Suite 945
                                     Denver, CO  80202
22

23                                   ATTORNEYS FOR THE UNITED STATES

24

25

26

27

28

1   ANDREW F. WALCH, Senior Counsel
    MICHAEL A. GHELETA, Attorney
2   U.S. Department of Justice
    Environment and Natural Resources Division
3   999 18th Street, Suite 945
    Denver, CO 80202
4   Telephone:    (303) 312-7303
    Facsimile:    (303) 312-7379
5
6   Attorneys for the United States of America

7

8                    UNITED STATES DISTRICT COURT

9          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          )   CASE NO. 1247-SD-GT
                          Plaintiff,   )
12                                     )   DECLARATION OF STEPHEN
                                       )   REICH IN SUPPORT OF
13  vs.                                )   MOTION FOR LEAVE TO FILE
                                       )   SECOND SUPPLEMENTARY AND
14  FALLBROOK PUBLIC UTILITY DISTRICT, )   AMENDATORY COMPLAINT
    etc., et al.                       )
15                        Defendants.  )
                                       )   Date: August 25, 2003
16  _____)   Time: 2:00 p.m.
                                           Courtroom: No. 8, 3rd Floor
17                                         Hon. Gordon Thompson, Jr.

18

19      I, Stephen Reich, declare as follows:

20      1. I am a Senior Supervising Engineer, employed for more than 11 years, by Stetson Engineers,

21  Inc., located in San Rafael, California.  I have worked with the United States Marine Corps Base

22  Camp Pendleton (Base) on water related issues since 1993, under contract to the United States

23  Department of Justice (DOJ) and the United States Navy (Navy).  As lead technical consultant of the

24  United States' negotiation team regarding the settlement reached with Rancho California Water

25  District (Rancho) in 2002, the Cooperative Water Resource Management Agreement, in the *United*

26  *States v. Fallbrook Public Utility District*, Case No. 1247 (Fallbrook case), I participated in all

27  surface and ground water issues of the Santa Margarita River Basin.  As a sub-consultant to the

28  Navy, I led a team of civil engineers, groundwater hydrologists, surface water hydrologists, and

                            -1-            Case No. 51-CV-1247 (GT)

                            **Exhibit 1**

1  water quality experts to develop various wastewater effluent alternatives to allow the Base to meet

2  its own discharge requirements. Currently, I am the lead technical consultant for the United States in

3  the Fallbrook case. I also am charged every year with compiling the United States' comments to the

4  Santa Margarita River Watershed Annual Report prepared by the Watermaster, providing me with an

5  annual review of all major water and wastewater purveyors in the Santa Margarita River watershed.

6      2. I have reviewed Eastern Municipal Water District's (Eastern) Memorandum of Points and

7  Authorities in Opposition to the United States of America's Motion for Leave to File Second

8  Supplementary and Amendatory Complaint (Opposition Memorandum) and the attached Declaration

9  of Anthony Pack. My statements provided in this declaration are in response to both the Opposition

10  Memorandum and the Pack Declaration and are supported by data and information available to

11  Eastern and other members of the Santa Margarita River Steering Committee.

12      3. I have reviewed the water quality in the Santa Margarita River watershed, the Four-Party

13  Agreement, and other documents supporting the historical, existing, and planned development in the

14  Santa Margarita River watershed. In response to Eastern's and Rancho's cessation of wastewater

15  effluent releases to Murrieta Creek, which originally began in 1997, and Eastern's anticipated export

16  of all effluent from the watershed, Stetson Engineers reviewed the water quality of the Santa

17  Margarita River watershed. This review included the analysis of historical, existing, and future

18  water quality changes in the Santa Margarita River watershed system.

19      4. Results of the preliminary water quality analysis indicate that changes in the Santa Margarita

20  River water quality resulting from the present and proposed actions by Eastern and Rancho will

21  directly affect Camp Pendleton's ability to appropriate water from the river under its water rights.

22  The actions and proposed actions of Eastern and Rancho will further degrade the water quality

23  ultimately rendering a portion unusable unless remedial action is taken. The adverse impact to the

24  Base's water supply may be measured by increases in salinity alone, although other organic and

25  inorganic constituents not investigated for this analysis will have similar effects on the Base's water

26  supply.

27      5. The State of California Department of Water Resources has identified the Santa Margarita

28  River as a fully appropriated stream system (Annual Watermaster Report for Water Year 2000-2001,

-2-                      Case No. 51-CV-1247 (GT)

pp. 41, 43).  Under this designation, no other potential appropriator may file an application for diversion of water from the river.  Similar to other water basins in the arid southwestern United States, the Santa Margarita River is limited in its ability to supply water.  The Base, although senior in priority, lies at the downstream end of the Santa Margarita River system and must rely on the available flows in the river to meet its military, domestic, and agricultural needs.

6. As evidenced by the increase in salinity of the Base's aquifers and waters throughout most of the watershed, resulting from the actions and proposed actions of Eastern, Rancho, and others, salinity is expected to increase as development above the Base continues and additional imported water is introduced to the watershed by Eastern to meet the growing demands.  Degradation to the Santa Margarita River watershed's water quality will continue to occur due to poor quality imported water being applied by Eastern and Rancho for domestic, commercial, industrial, and agricultural development.  Excess water from these uses will enter the Santa Margarita River watershed and reduce the useable potable portion of water available to downstream users.

7. The impact to the Base of Eastern's and Rancho's actions now and in the future will be two fold: a reduction in potable water available to meet their military, domestic, and agricultural needs; and an increase in costs required to treat and dispose of non-potable byproduct water.  Available water quantity to the Base is thereby reduced because as water quality degrades, byproduct "reject" water increases.  For example, while a certain portion of reject water is generated when treating water that is 600 milligrams per Liter (mg/L) in total salinity, a greater proportion of reject byproduct is created when treating a water supply that is 750 mg/L in total salinity.  The impact, as stated above, is two fold:  less potable water is available to serve demand and the costs to treat and dispose of reject water increase.

8. The Base soley depends on meeting their south system water demands by the finite water supply available from the Santa Margarita River system.  As development above the Base boundary continues to expand and urban runoff continues to occur, degradation to the quality of the Base's only supply of water will continue.  The removal and export of relatively good quality wastewater effluent from the Santa Margarita River watershed will reduce the Base's ability to fully perfect its appropriative permits and meet its growing military and domestic demands.

-3-                            Case No. 51-CV-1247 (GT)

9. Pack Declaration #6 states: "Eastern serves imported domestic water within the Santa Margarita watershed, treats the sewage produced by its costumers and sells as much of the treated wastewater as it can for use within the watershed, exporting what cannot be sold." And, Pack Declaration #3 and #4 state, respectively: "Eastern once had one well producing water in the Santa Margarita watershed. The water produced by this well was used in the watershed." and "In January, 2002, Eastern took that well out of production."

10. On the record, Eastern has produced and sold native Santa Margarita River groundwater, as a groundwater appropriator, to its customers every year since 1976 until February, 2002 (Table B-1, Annual Watermaster Report for Water Year 2000-2001). The groundwater it pumps is from the local aquifer which contributes to, adds to, and supports the flow of the Santa Margarita River. The native groundwater distributed to its customers eventually flows to Eastern's Wastewater Treatment Plant, representing a portion of treated effluent discharged from their facility. Historically, Eastern's portion of native groundwater, as compared to total water, distributed to its customers has exceeded 31%. (Table B-1, Annual Watermaster Report for Water Year 2000-2001). Eastern's Opposition Memorandum and the Pack Declaration make no assurances that native groundwater will not be distributed to its customers in the future, eventually making up a portion of the Wastewater Treatment Plant effluent that Eastern plans to construct.

11. Pack Declaration #7 states: "Because Eastern provides sewage treatment service within the Santa Margarita watershed, it treats some sewage produced by domestic customers of Rancho California Water District ("Rancho")." And, Pack Declaration #8 states: "Eastern does not use water produced by Rancho for domestic purposes but, as stated, only treats sewage produced by some of Rancho's customers.".

12. A significant portion of the sewage originating from Rancho water customers is native groundwater from within the Santa Margarita River watershed. Table 7.5 of the Annual Watermaster Report for Water Year 2000-2001 indicates that about 48% of the water delivered to customers in the Rancho Division was made up of native groundwater. This water, served to Rancho's water customers and treated at Eastern's Wastewater Treatment Plant, makes up a substantial portion of the treated effluent discharged from Eastern's facility. Although the portion of

-4-                      Case No. 51-CV-1247 (GT)

native groundwater to non-native water delivered to Rancho's customers varies from year to year, Rancho's 1997 Master Plan indicates that they will rely on native groundwater to supply their customers throughout development and the eventual "build-out" of their service area. Eastern has produced and distributed native Santa Margarita River watershed groundwater for domestic purposes throughout its service area from 1976 until February, 2002. Whether they could resume producing native groundwater for its domestic water customers in the future is not known, but the use of imported water by Eastern increased dramatically in 2002. (Table B-1, Watermaster Annual Report, 2002).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th Day of August, 2003, at San Rafael, California.

Stephen B. Reich, PE

-5-                                Case No. 51-CV-1247 (GT)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee in the Denver Field Office of the United States Department of Justice, Environment and Natural Resources Division, 999 18th Street, Suite 945, Denver, Colorado 80202; and is a person of such age and discretion to be competent to serve papers.

That on August 15, 2003, 2003, she served a copy of the attached:

REPLY OF THE UNITED STATES TO OPPOSITION BY RANCHO
AND EASTERN TO MOTION FOR LEAVE TO FILE SECOND
SUPPLEMENTARY AND AMENDATORY COMPLAINT.

in the manner specified below to the persons hereinafter named, at the places and addresses stated below, which are the last known addresses, from Denver, Colorado.

**By E-Mail and First Class U.S. Mail:**

Arthur L. Littleworth, Esq.
C. Michael Cowett, Esq.
James B. Gilpin, Esq.
Melissa W. Woo, Esq.
Best Best & Krieger, LLP
402 West Broadway, 13th Floor
San Diego, CA 92101-3542
Email: cmcowett@bbklaw.com
        *Attorneys for Rancho California Water District*

Tom Bruyneel, Esq.
Redwine and Sherrill
1950 Market Street
Riverside, CA 92501–1701
Email: tbruyneel@redwineandsherrill.com
        *Attorney for Eastern Municipal Water District*

Robert H. James, Esq.
205 W. Alvarado St.
Fallbrook, CA 92028
Phone: 760/728-1154
Fax: 760/728-9648
Email: rhjames@sbcglobal.net
        *Attorney for Fallbrook Public Utilities District*


Helena Engelhart, Legal Assistant