1 | ANDREW F. WALCH, Senior Counsel
MICHAEL A. GHELETA, Trial Attorney
2 | United States Department of Justice
Environment and Natural Resources Division
3 | 999 18ᵗʰ Street, Suite 945
Denver, Colorado, 80202
4 | Telephone: (303) 312-7303
Facsimile: (303) 312-7379
5 |

FILED

03 AUG 29  AM 10:10

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                    DEPUTY

6 | Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                Plaintiff,

vs.

FALLBROOK PUBLIC UTILITY DISTRICT, et.al.

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 51CV1247-SD-GT

**UNITED STATES' EX PARTE APPLICATION FOR CLARIFICATION OF ORDER FILED AUGUST 20, 2003**

Date:   October 20, 2003
Time:   2 p.m.
Courtroom:   8
Hon. Gordon Thompson, Jr.

## INTRODUCTION

Plaintiff United States of America hereby applies *ex parte* for clarification of the Court's Order filed on August 20, 2003, as stated herein.[1] By this motion, the United States respectfully requests that the Court clarify the issues raised in its August 20, 2003 Order by forwarding

---

[1] The United States files this request on an *ex parte* basis so that the parties and the Watermaster can receive the clarification sought as soon as possible. This is not a request for reconsideration, as the Court's August 20, 2003 Order was not issued pursuant to a motion, application or petition of any party.

additional questions to the Watermaster concerning those issues.  The additional questions which

the United States suggests should be forwarded for response by the Watermaster are as follows:

> 6) does the original consent decree, as appended by subsequent incorporated agreements,
> govern the use of imported water in the event such use has an impact on natural flows;

> 7) whether the failure to implement the Four Party Agreement, and the exportation of
> Eastern's and Rancho's treated wastewater, could impact the quantity or quality of
> water within the Watershed;

> 8) regardless of the failure to implement the Four Party Agreement, whether the
> continuing and increasing exportation of Eastern's and Rancho's treated wastewater,
> whose source includes native water, could impact the riparian and appropriative
> rights to water in the Watershed;

> 9) whether there is an impact on the quantity or quality of the water within the Watershed as
> a result of the lowered standard for total dissolved solids (from 500 mg/l to 750 mg/l).

## DISCUSSION

The United States seeks to bring to the Court's attention several matters pled in the United

States' second supplementary and amendatory complaint for consideration by the Court in

conjunction with its request for additional information from the Watermaster, Mr. James Jenks.  In

its August 20, 2003 Order requesting additional information from the Watermaster, the Court posed

five questions identifying the specific information it sought.  Among the questions posed by the

Court to the Watermaster were the following:

> 1) does the original consent decree, as appended by subsequent incorporated
> agreements, govern just the natural flows of water within the Watershed or imported
> water as well;

> 3) the impact of the "Four Party Agreement," since its inception, on both the quantity
> and quality of the water within the Watershed;

> 4) whether or not the Four Party Agreement, since its inception, impacts the original
> parties' riparian and appropriative rights to water in the Watershed.

- 2 -

CASE NO. 51-CV-1247 (GT)

The phrasing of these questions suggests that the second supplementary and amendatory complaint does not address the use of treated effluent by Eastern and Rancho which may adversely impact water quality, water quantity and water rights within the Watershed. The phrasing of the questions also suggests an assumption that the Four Party Agreement has been fully implemented since its inception in 1990. The United States clarifies both of these matters below.

In its second supplementary and amendatory complaint, the United States alleged that it objected to "the exportation of treated wastewater from the Santa Margarita River watershed, regardless of whether the source is waters native to the Santa Margarita River or waters imported into the basin, because such exportation results in the further degradation and diminution of waters native to the basin, [and] adversely impacts the quality and quantity of water otherwise available for beneficial use by the Naval Enclave and Fallbrook. . . ." Second Supplementary and Amendatory Complaint, Count 28, ¶ 2.

The second supplementary and amendatory complaint also indicates that not long after the Four Party Agreement's inception, the parties entered into standstill agreements in 1992 and 1996, suspending performance under the Four Party Agreement while smaller flows were released through

- 3 -

CASE No. 51-CV-1247 (GT)

demonstration projects attempting to assess environmental impacts.[2/]  Thus, the Four Party

Agreement has not been fully implemented since its inception in 1990.

However, prior to the suspensions to allow completion of the demonstration projects and in

reliance on future flows pursuant to the Four Party Agreement, the United States and Fallbrook

Public Utility District performed their obligations under the Agreement by not opposing the

defendants' request, eventually granted, to lower the upper basin standard for total dissolved solids

(TDS) from 500 mg/l to 750 mg/l.  This lowering of the TDS standard allowed the degradation of

water quality in treated wastewater discharged in the upper basin of the Santa Margarita watershed,

but it was anticipated that this degradation would be offset by augmented flows and mitigation

facilities provided by defendants under the Four Party Agreement.  See Complaint, Count 27 at ¶¶

8-10.

---

[2/]Count 27, paragraphs 13 and 14 of the second supplementary and amendatory complaint explain:

13.  The plan contemplated in the Four Party Agreement encountered objections from the Environmental Protection Agency in June 1992, primarily with respect to the level of nutrients allowable in the treated wastewater that was to be released into the upper Basin.  As a result, a five-year demonstration project was agreed to by the parties, the San Diego Regional Water Quality Control Board and the Environmental Protection Agency ("EPA"), by way of which a closely monitored flow of up to two million gallons per day of treated wastewater was to be discharged into Murrieta Creek, the tributary of the Santa Margarita River which is located adjacent to defendant Rancho's wastewater treatment plan.  The purpose of the demonstration project was to demonstrate to the regulators that the nutrient level desired by defendants Eastern and Rancho was acceptable and would allow the discharge of treated water downstream to augment the flows.  In furtherance of the demonstration project, a collateral agreement suspending performance under the Four Party Agreement was executed by the parties on March 13, 1996, (the "Standstill Agreement") and a permit for discharge of the demonstration project flows was obtained by defendant Rancho.

14.  At the end of the five-year period, the results of the monitoring of the demonstration project flows proved to be inconclusive; therefore, a Second Standstill Agreement was executed by the parties to the Four Party Agreement and another demonstration project discharge permit was applied for to the San Diego Regional Water Quality Control Board by defendant Rancho.  The discharge of the demonstration project flows into Murrieta Creek was allowed to continue while the permit application of defendant Rancho was being processed.

- 4 -                    CASE NO. 51-CV-1247 (GT)

In addition, the phrasing of the Court's questions from the August 20 Order listed above appears to focus on the impacts of the Four Party Agreement to the exclusion of the defendants' actions associated with current future use and export of treated effluent whose source is both imported and native water.   While the United States has asserted in Count 30 a claim for breach of the Four Party Agreement, Counts 28 and 29 seek a declaration of rights and an injunction with respect to the export out of the Watershed of treated wastewater, wholly apart from any obligations under or breach of the Four Party Agreement.  The United States has alleged that "the exportation of treated wastewater from the Santa Margarita River watershed . . . results in the further degradation and diminution of waters native to the basin, adversely impacts the quality and quantity of water otherwise available for beneficial use by the Naval Enclave and Fallbrook, and disregards the rules prohibiting unreasonable use and injury to prior vested rights."  Supplementary Complaint, Count 28, ¶ 2.  Thus, Eastern's and Rancho's actions concerning export of treated wastewater from the watershed, and the impact of these actions on water quantity, water quality, and the original parties' riparian and appropriative rights to water in the Watershed are also at issue in this case.

In light of the matters discussed above, the United States respectfully requests that the Court clarify its August 20 Order by adding the following questions to the additional information sought from the Watermaster:

> 6) does the original consent decree, as appended by subsequent incorporated agreements, govern the use of imported water in the event such use has an impact on natural flows;
>
> 7) whether the failure to implement the Four Party Agreement, and the exportation of Eastern's and Rancho's treated wastewater, could impact the quantity or quality of water within the Watershed;

CASE NO. 51-CV-1247 (GT)

8) regardless of the failure to implement the Four Party Agreement, whether the continuing and increasing exportation of Eastern's and Rancho's treated wastewater, whose source includes native water, could impact the riparian and appropriative rights to water in the Watershed;

9) whether there is an impact on the quantity or quality of the water within the Watershed as a result of the lowered standard for total dissolved solids (from 500 mg/l to 750 mg/l).

## CONCLUSION

For all of the foregoing reasons, the United States respectfully requests that the Court clarify its August 20, 2003 Order by directing the Watermaster to provide additional information in response to the questions which the United States has set forth above.

Dated: August 28, 2003

Respectfully submitted,

_for_

ANDREW F. WALCH
Senior Counsel

MICHAEL A. GHELETA
Trial Attorney

U.S. Department of Justice
Environment & Natural Resources Div.
General Litigation Section
999 - 18th Street, Suite 945
Denver, CO   80202

ATTORNEYS FOR THE UNITED STATES

- 6 -                    CASE NO. 51-CV-1247 (GT)