FILED

03 NOV 19 PM 2:06

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                          DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>FALLBROOK PUBLIC UTILITY DISTRICT,<br>EASTERN MUNICIPAL WATER DISTRICT,<br>RANCHO CALIFORNIA WATER DISTRICT, et al.,<br><br>    Defendants. | Cv. No. 51-1247-SD-GT<br><br>**ORDER** |

On July 7, 2003, Plaintiff, the United States of America ("United States"), filed a Motion for Leave to File Second Supplementary and Amendatory Complaint ("Motion"). In the original action, filed in 1951, a Modified Final Judgment and Decree ("Final Judgement") was entered in 1966. The United States now seeks to re-open the approximately forty-year old case and add Eastern Municipal Water District ("Eastern") as a new defendant and allege several new claims. These new claims include declaratory judgment of rights with respect to the export of treated wastewater (Count 28), injunctive relief prohibiting the export of treated wastewater (Count 29), breach of the Four Party Agreement and money damages (Count 30), and a Writ of Mandate under

the California Environmental Quality Act ("CEQA") (Count 31). The Court has fully considered this matter including a review of the case file, the numerous briefs filed, the authorities cited therein and the arguments presented. For the reasons stated below, the United States' Motion is **DENIED**.

## BACKGROUND

The original action commenced on January 25, 1951 by the United States to quiet title to its rights to the use of water from the Santa Margarita River ("River") and its tributaries. Those waters were and still are used by the United States to supply the needs of a Naval Enclave, which includes Camp Pendleton (a Marine Corps training facility), an ammunition depot, and a naval hospital. The River watershed, which includes the Naval Enclave, is comprised of approximately 742 square miles within San Diego and Riverside Counties. The defendants in the original case were all upstream claimants to the right to the use of the waters of the River, which included the present defendants, Fallbrook Public Utility District ("Fallbrook") and Rancho California Water District ("Rancho"). However, defendant Eastern Municipal Water District ("Eastern") was not a defendant or party to this original action. In essence, the original action dealt with various water rights to native waters within the watershed including primarily riparian rights.

After a very lengthy litigation spanning several years, including forty-four interlocutory judgments and one appeal, the District Court entered the Final Judgment in 1966. In the Final Judgment, the Court retained limited jurisdiction over the "use of all surface waters within the watershed of the Santa Margarita River and all underground or sub-surface waters within the watershed of the Santa Margarita River, which are determined in any of the constituent parts of this Modified Final Judgement to be part of the sub-surface flow of any specific river or creek, or . . . to add to, contribute to, or support the Santa Margarita River stream system." (Final Judgment, § V, p. 14). Essentially, the Court retained limited jurisdiction over native surface water flowing in streams as well as the subsurface and underground water that the Court found to add to, contribute to and support the surface stream system. Most of the claims raised by the United States involve treated wastewater reclaimed in a treatment plant. Treated wastewater,

which is conveyed to and from treatment plants in pipelines, is not surface water nor is it subsurface or underground water that supports surface water. Thus, treated wastewater is normally outside the Court's retained jurisdiction.

Moreover, most of the treated wastewater originates as imported water, which enters the watershed in pipelines or aqueducts and is also outside the Court's jurisdiction. The relatively small amount of treated wastewater that originates as native waters has been found on a proportionate basis to be reused within the watershed.

Subsequent to the entry of the 1966 Final Judgment, the parties entered into several agreements which were incorporated into the original action and the Court's jurisdiction. For example, in 1968 the United States and Fallbrook entered into a Memorandum of Understanding and Agreement ("1968 MOU") regarding the impoundment, conservation and allocation of water within the River watershed. The 1968 MOU was the basis for the "Santa Margarita Project," which was a physical solution to the issue of the allocation and distribution of the River waters covered by the original action. The 1968 MOU was incorporated into the original action by order of the Court on June 27, 1968.

Similarly, in March of 2002, the United States and Rancho entered into the Cooperative Water Resource Management Agreement ("Cooperative Agreement"). Under the Cooperative Agreement, the United States and Rancho agreed to manage the water within the River watershed to meet their respective needs and remain consistent with the rights and obligations set forth in the Final Judgment and the 1940 Stipulated Judgment. Like the Santa Margarita Project, the Cooperative Agreement provides a physical solution to the issue of water rights raised in the original action. The Cooperative Agreement was submitted for the Court's approval and explicitly incorporated the agreement in the original action. (Cooperative Agreement, § 3, p.2).

In contrast, is the Four Party Agreement, which is at the heart of the United States' new allegations raised in its proposed Second Supplementary Complaint. In 1990, the United States, Fallbrook, Rancho and Eastern entered into what has been dubbed the Four Party Agreement. Although one of the parties to the Four Party Agreement, Eastern was not a

defendant or party in the original action. Moreover, the Four Party Agreement does not concern the allocation or distribution of River waters, but rather the resolution of issues arising from the management and disposal of treated wastewater. Furthermore, the Four Party Agreement was neither presented to this Court for approval nor incorporated into the original action by stipulation.

The United States now seeks to file a Second Supplementary and Amendatory Complaint which requests a declaration of rights with respect to the export of treated wastewater (Count 28), an injunction prohibiting the export of treated wastewater (Count 29), alleges breach of the Four Party agreement and money damages for the alleged breach of contract (Count 30) and a Writ of Mandate under the California Environmental Quality Act ("CEQA") (Count 31). For the reasons stated below, the United States' Motion is **DENIED**.

## CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 15(d) provides the means for filing supplemental pleadings. Rule 15(d) states:

> Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.
> Fed.R.Civ.P, 19(d).

Leave to permit supplemental pleading is generally favored and given freely "when justice so requires." *Keith v. Volpe*, 858 f.2d 467, 473 (9th Cir. 1988); *Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). The goal of Rule 15(d) is to promote judicial efficiency and convenience. *See Keith*, 858 F.2d at 473. To determine judicial efficiency, the court assesses "whether the entire controversy between the parties could be settled in one action. . . ." *Planned Parenthood*, 130 F.3d at 402, *quoting,* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure:* Civil 2D § 1506 (1990). Generally, Rule 15(d) cannot be utilized to introduce a "separate, distinct and new cause of action." *Planned Parenthood*, 130 F.3d at 402, *quoting, Berssenbrugge v. Luce Mfg. Co.*, 30 F. Supp. 101, 102 (D.Mo. 1939); *see also* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure:*

Civil 2D § 1506 (1990) (noting that leave to file a supplemental pleading will be denied where "the supplemental pleading could be the subject of a separate action").

In a handful of cases, parties have been permitted to file supplemental pleadings despite the fact that the underlying actions had reached a final disposition. *See Griffin v. County Sch. Bd.*, 377 U.S. 218, 84 S.Ct. 1226, (1964); *Keith*, 858 F.2d at 467; *Poindexter v. Louisiana Fin. Assistance Comm'n,* 296 F.Supp 686 (E.D.La.), *aff'd sub nom. Louisiana Comm'n for Needy Children v. Poindexter*, 393 U.S. 17, 89 S. Ct. (1968). In *Keith* and *Poindexter*, the respective courts retained jurisdiction after entry of the final judgment. *Keith*, 858 F.2d at 474; *Poindexter*, 296 F. Supp. at 689. Despite the retained jurisdiction, the Ninth Circuit stated that "some relationship must exist between the newly alleged matters and the subject of the original action." *Keith*, 858 F.2d at 474. In each of the above cases, the Ninth Circuit allowed the supplemental filing because "the actions of the defendants which plaintiffs sought to challenge through supplemental pleading were alleged to be specific attempts by defendants to contravene the courts' earlier rulings." *Planned Parenthood*, 130 F.3d at 403.

However, that is not the case in this instance. Very simply, re-opening an approximately forty-year old case to add both a new party and new claims does not promote judicial efficiency or convenience. The original action was primarily for the determination of the riparian rights to the native waters within the River watershed. This determination was made and a modified final judgment was entered in 1966. The Court retained limited jurisdiction only as to the use of all surface waters within the River watershed and all underground or sub-surface waters.

By contrast, the new claims alleged in the Second Supplementary and Amendatory Complaint are, in reality, claims of breach of contract or breach of the Four Party Agreement. These claims could be tried more efficiently in a separate lawsuit rather than re-open a forty-year old case because they are new and separate causes of action. Moreover, the Four Party Agreement deals with the handling and disposal of treated wastewater, and not the use of surface, underground or sub-surface waters in the watershed which was the center of the controversy in the original action. Additionally, most of the treated wastewater originates from imported water and not native waters from the River watershed. Furthermore, the record

indicates that, proportionally, no native waters are exported from the River watershed as treated wastewater. Finally, Eastern was not a party to the original action. In short, the original action has long since been completed and resolved claims that are totally distinct from the new claims asserted the Second Supplementary and Amendatory Complaint.

Although in a very limited number of cases where the court has retained jurisdiction and plaintiffs have been allowed to supplement the pleadings long after a final disposition has been reached, these few cases are quite distinct from the present case. In the few cases mentioned above, the Ninth Circuit stated that "the actions of the defendants which plaintiffs sought to challenge through supplemental pleading were alleged to be specific attempts by defendants to contravene the courts' earlier rulings." *Planned Parenthood*, 130 F.3d at 403.

In this case, there is very little connection or nexus between the original action and the claims raised in the Second Supplementary and Amendatory Complaint. The Court's earlier decisions primarily decided the riparian rights to the native waters in the River watershed. The new claims asserted by the United States are essentially breach of contract claims that arise from the Four Party Agreement. This Four Party Agreement was not incorporated into the original final decree and concerns the disposal of treated wastewater, not the riparian rights to the water. Moreover, the treated wastewater in question is comprised mostly of imported water and not the native waters in the River watershed. The record indicates that, proportionally, no native waters are exported as treated wastewater. Hence, the Court finds that the new claims asserted by the United States are not specific attempts to contravene this Court's earlier rulings but are new and distinct causes of action. Therefore, the Court holds that allowing the United States to file a Second Supplementary and Amendatory Complaint would not be either efficient or convenient. Accordingly,

//
//
//
//
//

**IT IS ORDERED** that Plaintiff's Motion to File a Second Supplementary and Amendatory Complaint is **DENIED.**

November 19, 2003
date

GORDON THOMPSON, JR.
United States District Judge

cc: All counsel and parties without counsel