FILED

05 FEB 17 PM 2: 04

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

                                        DEPUTY

# UNITED STATES DISTRICT COURT

## FOR THE

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs<br><br>FALLBROOK PUBLIC UTILITY DISTRICT, et al.,<br><br>                Defendants. | Civil Action No. 51-1247-SD-GT<br><br>ORDER APPROVING AMENDED MEMORANDUM OF UNDERSTANDING AND AGREEMENT ON OPERATION OF LAKE SKINNER AND AMENDING MODIFIED FINAL JUDGMENT AND DECREE |

Fallbrook Public Utility District (Fallbrook), having submitted a proposed Amended Memorandum of Understanding and Agreement on Operation of Lake Skinner (Amended MOU) to this Court and having requested an Amendment to the Modified Final Judgment and Decree, and the following having occurred:

1.    The Steering Committee established by this Court having agendiized, considered and received comments on the Amended MOU during 34 meetings between June 1995 and October 2003 and status reports having been given during 2004 quarterly meetings;

1

ORDER APPROVING AMENDED MEMORANDUM OF UNDERSTANDING

1      2.    Fallbrook Public Utility District having gone through the California Environmental

2  Quality Act (CEQA) process to obtain approval of the State Water Resources Control Board to

3  move its water rights Permit No. 11356 to Lake Skinner;

4      3.    The Parties to the Memorandum of Understanding and Agreement on Operation of

5  Lake Skinner having negotiated the Amended Memorandum of Understanding and Agreement on

6  Operation of Lake Skinner;

7      4.    Fallbrook having complied with this Court's Order Setting Hearing and Notice

8  Requirements for Public Comment on the Amended Memorandum of Understanding and

9  Agreement on Operation of Lake Skinner and Amending Modified Final Judgment entered

10  December 23, 2004, including:.

11      a.    Fallbrook having held a Public Hearing during the Santa Margarita River

12  Watershed Steering Committee held on January 18, 2005 at the offices of the Rancho California

13  Water District, 42135 Winchester Road, Temecula, CA to receive comments on the Amended

14  Memorandum of Understanding and Agreement on Operation of Lake Skinner;

15      b.    Fallbrook Public Utility District having reported the responses of the public

16  to this Court on January 27, 2005, within twenty days of the public hearing;

17      5.    The Watermaster of the Santa Margarita Watershed having approved and signed the

18  Amended Memorandum of Understanding and Agreement on Operation of Lake Skinner;

19      6.    A copy of the Amended Memorandum of Understand and Agreement on Operation

20  of Lake Skinner is attached hereto;

21      7.    Good cause appearing.

22  IT IS ORDERED THAT:

23      A.    The Amended Memorandum of Understanding and Agreement on Operation of

24  Lake Skinner dated January 18, 2005, is approved;

25      B.    The Modified Final Judgment and Decree in this cause is amended by incorporation

26  of said Amended Memorandum of Understanding and Agreement on Operation of Lake Skinner

27  into same; and,

28

2

ORDER APPROVING AMENDED MEMORANDUM OF UNDERSTANDING

1       C.     The provisions of said Amended Memorandum of Understanding and Agreement

2    on Operation of Lake Skinner are binding on all parties to this cause.

3       D.     The Court shall retain continuing jurisdiction over administration of said

4    Memorandum of Understand and Agreement, as amended, pursuant to Article V of the Modified

5    Final Judgment and Decree and Article II of Interlocutory Judgment 28 as incorporated in

6    Article II of the Modified Final Judgment and Decree.

8    DATED: February _16_, 2005

                      GORDON THOMPSON, JR., JUDGE

9                      UNITED STATES DISTRICT COURT

10   APPROVED AS TO FORM AND CONTENT:

13   James S. Jenks, Watermaster
     Santa Margarita River Watershed

3

1  Robert H. James, General Counsel
2  SACHSE, JAMES & LOPARDO
   205 W. Alvarado St.
3  Fallbrook, CA  92028-2002
   760-728-1154
4

5  Attorneys for FALLBROOK PUBLIC UTILITY DISTRICT

6

7

8

9           UNITED STATES DISTRICT COURT

10                    FOR THE

11          SOUTHERN DISTRICT OF CALIFORNIA

12

13

14

15  UNITED STATES OF AMERICA,          )   Civil Action No. 51-1247-SD-GT
                                       )
16          Plaintiff,                 )   AMENDED MEMORANDUM OF
                                       )   UNDERSTANDING AND
17  FALLBROOK PUBLIC UTILITY DISTRICT, )   AGREEMENT ON OPERATION
    et al.,                            )   OF LAKE SKINNER
18          Defendants.                )
                                       )
19

20

21

22

23

24

25

26

27

28

AMENDED MEMORANDUM OF
UNDERSTANDING AND AGREEMENT

This Memorandum of Understanding and Agreement dated this twelfth day of November, 1974, and amended this _18_ day of _Jan._, 2004, among THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA (herein referred to as "Metropolitan", a public corporation of the State of California; FALLBROOK PUBLIC UTILITY DISTRICT (herein referred to as "Fallbrook"), a public corporation of the State of California; and RANCHO CALIFORNIA WATER DISTRICT, a California Water District, successor in interest to Rancho California and The Vail Company.

Whereas, the United States District Court for the Southern District of California, in the case entitled, United States v. Fallbrook Public Utility District, et al., No. 1247 – SD-C (herein referred to as "The Action"), has adjudicated water rights to the Santa Margarita River stream system (herein referred to as "System") by the Modified Final Judgments and Decrees entered on April 6, 1966 and June 27, 1968 (herein referred to as the "judgment");

Whereas, Fallbrook, and Rancho California Water District are the substantial water users in the System; have been involved for the past two decades in litigation to determine, the respective rights and duties of the users of the waters of the System; and are parties of record in the Action;

Whereas, Article V of the 1966 Order in the Judgment retains continuing jurisdiction as to the use of all surface waters within the watershed of the System, and Article II thereof adopts Interlocutory Judgment 28 by reference, which in

1

turn retains continuing jurisdiction over the impoundment of the surface waters of the System;

Whereas, Metropolitan has completed construction of a dam and reservoir with a capacity of some 44,000 acre feet in Auld Valley, Riverside County, on Tucalota Creek which is a tributary of the Santa Margarita River by way of Santa Gertrudis Creek and Murrieta Creek, being known as Auld Valley Dam and Lake Skinner (herein referred to as the "Project");

Whereas, the Project's purpose is to provide regulatory storage capacity for the San Diego pipelines, rather than to impound surface water of the System as set forth more fully in Attachment A hereto;

Whereas, the Project will nonetheless unavoidably impound small amounts of surface waters of the system for short periods of time;

Whereas, the Project lies within the Tucalota Creek sub-watershed which is a part of the Santa Gertrudis Creek sub-watershed as described in Interlocutory Judgments 31 and 31A, both of which have been incorporated by reference into the Judgment;

Whereas, Metropolitan has acquired a portion of the lands riparian to Tucalota Creek, along with the respective appurtenant water rights set forth in Interlocutory Judgment 31 listed in Attachment B hereto;

Whereas, the defendants in the Action, that are listed in Attachment C hereto, have assigned all or part of their water rights in Tucalota Creek to Metropolitan;

2

Whereas, on November 20, 2001, the State Water Resources Control Board amended Permit 11356 allowing Fallbrook to divert up to 10,000 acre feet into Lake Skinner between November 1 and June 1 of the succeeding year and deliver said water thirty (30) days after diversion;

Whereas, Condition No. 13 of Permit 11356 requires Fallbrook to release water into the Santa Margarita River downstream from the Point of Diversion in such amounts and at such rates as will be sufficient, together with inflow from downstream tributary sources, to supply downstream diversions of the surface flow under prior rights to the extent water would have been available for such diversions from flow unregulated by Fallbrook's works, and sufficient to maintain percolation of water from the stream channel as such percolation would occur from flow unregulated by Fallbrook's works, in order that operation of the Project shall not reduce natural recharge of groundwaters from the Santa Margarita River; and

Whereas, by separate agreements (herein referred to as "Delivery Agreements") between Fallbrook, Metropolitan and the San Diego County Water Authority (herein referred to as the "Authority"), Metropolitan has agreed to wheel up to 10,000 acre feet of the water subject to Permit 11356 in and through Lake Skinner to Fallbrook through the Authority, and the Authority has agreed to deliver the water to Fallbrook, all subject to the terms of the Delivery Agreements;

3

NOW, THEREFORE, in evidence of the understandings and agreements which have been reached, the undersigned parties to this memorandum do hereby declare such understandings and agreements to be as follows:

I.      Metropolitan will operate the Project in accordance with the following principles:

A.      The basic function of Lake Skinner is to provide regulatory Storage Capacity for the San Diego Pipelines.  Consistent with the Delivery Agreements, Metropolitan also will wheel to Fallbrook its water under Permit 11356 through the Authority, which will subsequently deliver the water to Fallbrook.  Only water that would have been available in the Drainage Basin in the absence of the Reservoir is to be wheeled.  The permit also would allow Fallbrook to divert water into Lake Skinner and deliver that water to Fallbrook thirty (30) days after diversion.

B.      Lake Skinner will be operated so that subsurface water Outflow will approximate the flow that would have occurred in the absence of the Reservoir.

C.      The quantity of all Local Runoff will be determined, then the Required Releases will be made to Tucalota Creek with the remainder, "Fallbrook Diversion" defined by Table 1 as the difference between Column 1 and Column 2 or Column 3, whichever is applicable, diverted and wheeled to Fallbrook through the Authority thirty (30) days after diversion.

D.      Rainfall on the Reservoir will be retained in Lake Skinner.

4

E.    Water conservation and flood control are not explicit functions of Lake Skinner.

F.    The Groundwater immediately downstream from the Dam will be maintained at the approximate level that would have existed in the absence of the Project.

G.    The Outflow from Lake Skinner will have no significant effect on the quality of the water downstream of the Dam.

II.    Metropolitan will implement those principles set forth in Article I, above, by operating the Project under the following criteria:

A.    Local Runoff shall be determined as follows with more specific descriptions set forth in Attachment D hereto:

1.    Local Runoff into the Reservoir from the Drainage Basin above the Dam will be computed daily.

2.    Local Runoff into the Reservoir will be computed as a residual quantity in a water balance of all other measured Imports, Inflows, Exports, Outflows, and changes in Storage Content of the Reservoir.

3.    In the determination of Local Runoff, no distinction will be made between runoff from lands belonging to Metropolitan and runoff from land owned by others.

4.    Rainfall on the Reservoir surface will not be included as a component of Local Runoff into the Reservoir but will be considered as if it were a Metropolitan Import.

5 .

5.      Evaporation from the Reservoir surface will be included in the water balance as if it were a Metropolitan Export.

6.      Miscellaneous consumptive uses of water for the Skinner Filtration Plant, for recreational developments and other local uses, will be included in the water balance as if the water were a Metropolitan Export.

7.      Metropolitan Water District shall maintain a record of the above-referenced computations and data in a "Lake Skinner – Tucalota Creek Water Rights Monthly Record Sheet." (hereinafter "Record Sheet")

B.    Reservoir Releases shall be determined as follows, with more specific description set forth in Attachment E hereto:

1.      Releases from the Reservoir into Tucalota Creek will begin shortly after the daily quantity of Local Runoff is computed and will be adjusted daily as required by subsequent determinations of Local Runoff.

2.      The  Release from the Reservoir into Tucalota Creek will be limited to the computed mean daily  Local Runoff into the Reservoir, or the Required Release determined as set forth in Attachment E hereto, whichever is lesser, except as noted in paragraph 3, below.

3.      Releases into Tucalota Creek may be made as requested by the Watermaster, within reasonable and safe limits that would

6

neither impair Metropolitan's use of the Project nor expose it to public liability.

4. The start of any Release from the Reservoir into Tucalota Creek will be made at a low rate, and any increases in the rate of Release will be made gradually to alert downstream parties.

5. Within the constraints imposed by physical limitations and other operating limits as mentioned in Paragraphs 2, 3 and 4, above, Releases to Tucalota Creek will be made at rates similar to those which would have occurred in the absence of the Reservoir.

6. Releases from the Reservoir into Tucalota Creek will be continued during and following each flood event until the total computed quantity of Required Release has been released.

7. As a general operating procedure, freeboard will be maintained between the elevation of the water surface and the spillway crest elevation.

C. No Storage Space is specifically reserved in the Reservoir for flood control or conservation use; and Releases from the Reservoir into Tucalota Creek will normally be made through the Dam outlets, as described more fully in Attachment F hereto.

D. The water level of the Groundwater immediately below the Dam will be monitored by means of a representative well, and will be maintained at levels that would have existed in the absence of the Project by means of Releases from the Reservoir, if seepage through the Dam and Subsurface

7

Flows are inadequate for this purpose, as more fully described in Attachment G hereto.

E.    The quality of the imported water which is stored in the Reservoir will be adequate for all intended uses; and Releases from the Reservoir will have little if any, effect on the general water quality as compared to the quality that would have existed in the absence of the Reservoir, as more fully described in Attachment H hereto.

F.    Metropolitan will file a copy of the monthly Record Sheet described in Attachment E hereto, with the Watermaster prior to the end of each respective following month.  The Watermaster will in turn deliver copies of each month's sheet to each party to the Judgment.

III.    The following terms used in this Memorandum of Understanding and Agreement, shall have the respective meaning given below unless otherwise indicated:

A.    <u>Dam</u>—The Auld Valley Dam constructed by Metropolitan on Tucalota Creek.

B.    <u>Discharge Capacity</u>—The maximum capability of the Dam outlets or spillway with the Dam valves or gates in a full-open position.

C.    <u>Drainage Basin</u>—The area tributary to Tucalota Creek upstream from the Auld Valley Dam.

D.    <u>Export</u>—Water which is released from the Reservoir through the San Diego pipelines evaporation from the Reservoir surface and local consumptive use by Metropolitan.

8

E.      Groundwater—The general subsurface water body in the zone of saturation in the basin downstream of the Dam.

F.      Import—Water which flows into the Reservoir through the San Diego Canal and pipelines and rainfall on the Reservoir surface.

G.      Inflow—Local Runoff and subsurface Flow into the Reservoir from the Drainage Basin above the Dam.

H.      Local Runoff—Surface water runoff from the Drainage Basin into the Reservoir.

I.      Outflow—Releases made through the Dam outlets and over the Dam spillway into Tucalota Creek and seepage through the Dam and other Subsurface Flow.

J.      Release—Water which flows through the Dam outlets or over the Dam spillway into Tucalota Creek.

K.      Required Release—The release rate determined using the procedures set forth in Attachment E hereto.

L.      Reservoir—Lake Skinner created by Auld Valley Dam.

M.      Storage Capacity—The maximum volume of water which may be stored in the Reservoir.

N.      Storage Content—The volume of water actually stored in the Reservoir at a given time.

O.      Storage Space—The Storage Capacity of the Reservoir which is not filled with water at a given time.

P.      Subsurface Flow—All water flowing below the land surface.

9

Q.   <u>Watermaster</u>—The individual appointed pursuant to Interlocutory

Judgment 45 as incorporated in the Judgment.

IV.   Metropolitan's operation of the Project in the manner described in Articles

I and II will not impair the downstream rights of any of the parties to the Action.

V.   Notwithstanding any other provision of this Agreement or anything which

might reasonably be implied or inferred therefrom, nothing herein shall be

construed to affect in any manner any rights to the use of water from the Santa

Margarita River or its tributaries which the Parties to this Agreement hold.

Nothing in this Agreement shall be construed as a transfer of or an attempt to

transfer such rights or any part thereof between the parties.

VI.   Upon execution of this Memorandum and Agreement by the respective

undersigned representatives on behalf of Fallbrook,  Rancho California Water

District and Metropolitan,  Fallbrook shall present this instrument to the United

States District Court for the Southern District of California for approval and

incorporation into the Judgment as the Court may determine appropriate in the

circumstances.  Upon approval by the Court this Agreement shall become fully

effective and will remain in effect so long as the Delivery Agreements remain in

effect.

VII.   No assignment or transfer of the rights defined in this Agreement or any

part or interest therein shall be valid unless approved all the parties hereto.

VIII.   The criteria and reservoir release data referred to in Article II hereof, the

terms used in Article III hereof, and the formulae included in the Attachments

10

hereto shall be periodically reviewed and, based on operating experience, will be modified if deemed necessary or appropriate by the parties hereto.

IX.   No member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this Agreement or to any benefit that may arise herefrom; but this restriction shall not be construed to extend to this Agreement if made within a corporation or company for its general benefit.

   IN WITNESS WHEREOF the undersigned have executed this Memorandum of Understanding and Agreement on behalf of their respective principals.

APPROVED AS TO FORM
Jeffrey Kightlinger

By: JAMES F. ROBERTS
Deputy General Counsel

ATTEST:

ATTEST:

ATTEST:

THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA

By: _____
   Ron Gastelum, CEO

FALLBROOK PUBLIC UTILITY DISTRICT

By: _____
   Keith Lewinger, General Manager

RANCHO CALIFORNIA WATER DISTRICT

By: _____
   Brian Brady, General Manager

By _____
   James Jenks, Watermaster
   Santa Margarita Watershed

11

Attachment E

## RESERVOIR RELEASES

1.     Required Releases from Lake Skinner will be made at the following rates for the periods indicated.

A.     During the months of June, July, August, September, and October the Required Release will be limited to the computed mean daily rate of Local Runoff into the Reservoir except as noted in Article II, Paragraph B (3), as described in Procedure 2.

B.     During the months of November, December, January, February, March, April and May, after annual diversions for Fallbrook total 10,000 acre feet, the Required Release will be limited to the computed mean daily rate of Local Runoff into the Reservoir except as noted in Article II, Paragraph B (3), as described in Procedure 2.

C.     During the months of November, December, January, February, March, April and May, when annual diversions for Fallbrook total less than 10,000 acre feet, the Required Release for a given Local Runoff will be as shown on Table 1 for days when Local Runoff is greater than the previous day and for all other days, except as noted in Article II, Paragraph B (3) and except as modified by paragraph D below.

D.     The Required Release described in Paragraph C, above, for days when the Local Runoff exceeds that of the previous day, may be reduced proportionately to reflect development along Tucalota Creek, when the development of riparian land along Tucalota Creek begins to rely exclusively on

1

imported water supply; however, in no event can the Required Release be reduced to a level below that used on all other days.  The proportionate reduction factor may be developed by dividing the length of the watercourse crossing the developed parcel as listed in Table 2 by the total length of watercourse from Lake Skinner downstream to the existing channelized portion of Tucalota Creek (23,683 feet).  The Required Release may then be reduced by a rate developed by multiplying the factor times the appropriate release rate shown in Table 1.  A parcel shall be deemed to be relying on an imported water supply upon issuance of a building permit by Riverside County.

Each year during October, the Watermaster will advise Metropolitan of the appropriate factor to use for the ensuing year.

E.     Procedure 2 of Attachment E and the attached Record Sheet of Attachment E provides details regarding Required Releases.  Such Required Releases will begin approximately four hours after the preceding 24-hour accumulation period.

Note:  The Record Sheet is to be amended by adding a column for "Required Release", a column for "Fallbrook Diversion", a column for "Cumulative Fallbrook Diversions", and a column for Delivery Date.  Cumulative Fallbrook Diversions will be reset at zero on October 30 of each year.

2.     It should be noted that if the Required Release as determined in Procedure 2 rate exceeds Discharge Capacity, Metropolitan will continue to make Releases at the maximum Discharge Capacity and increase the duration of

2

the Release until volume equivalence is reached.  It should also be noted that the spillway at the Dam is ungated.  Any Reservoir elevation above the Dam's spillway crest elevation will automatically result in water being spilled until the Reservoir level returns to the spillway crest elevation.  Metropolitan will not use elevations in excess of the spillway crest at any time in its calculations. Therefore, any temporary surcharge storage above the spillway crest will not be included in the computation of Reservoir Releases.

3.    Metropolitan will observe a maximum Reservoir elevation during the rainy season which will keep 1,000 acre-feet of Storage Space below the Dam's spillway crest evacuated at all times except during flood events.  The purpose of this is to preclude any spillway overflow in excess of that which would have naturally passed downstream.

4.    It is impossible to identify precisely that portion of the Local Runoff which will enter Reservoir bank storage during the short period of time that Local Runoff is held in Lake Skinner.  However, this quantity will be small and will be more than offset by the increase in Local Runoff due to the saturated lands adjacent to the Reservoir.

5.    Fallbrook Diversion in Procedure 2 is defined as the flow to be delivered to Fallbrook thirty (30) days after runoff enters Lake Skinner (Runoff as calculated on Monthly Record Sheet minus Required Releases as shown on Table 1, calculated daily).

3

<u>Procedure 2</u>

Procedure for determining quantity and rate of Required Releases from Lake Skinner into Tucalota Creek.

A.   Definitions:

Q = External accumulation in acre-feet

P = Precipitation on the lake surface in acre-feet

A = Actual Local runoff into Lake Skinner in acre-feet

Calculation:   $A = Q - P$

B.   Calculation of Required Releases during the months of November, December, January, February, March, April and May prior to annual diversions for FPUD reaching 10,000 acre-feet.

After calculating "A" above, determine

Required Releases from Table 1.

C.   Calculation of Required Releases during the months of November, December, January, February, March, April and May after diversions for FPUD exceed 10,000 acre-feet and during the months of June, July, August, September and October.

Required Releases = "A" as calculated above.

4

D.    Rate of Required Releases:

(1)    Release of runoff will begin at 1100 hours after readings and calculations are made relative to the period ending at 0700 hours.

(2)    The rate of release will begin at 5 cfs or less and be incremented in 5 cfs or less steps until the rate (from Procedure 1) is attained and then will be continued constant until the volume A has been released.

(3)    The rate of Release possible is shown on Graph 1. Metropolitan will release incidentally stored water at rates greater than rate R upon request from responsible authorities, within reasonable limits that will neither impair Metropolitan's use of the Project nor expose it to public liability.

5

| TABLE 1 | | |
|---|---|---|
| REQUIRED RELEASES FROM LAKE SKINNER | | |
| During months of November, December, January, February, March, April and May Prior to Annual Diversions for FPUD Reaching 10,000 Acre-Feet | | |
| | REQUIRED RELEASE TO TUCALOTA CREEK | |
| Local Runoff Acre Feet/Day | Days When Local Runoff is Greater than the Previous Day Acre Feet/Day | All Other Days          Acre Feet/Day |
| (1) | (2) | (3) |
| 5 | 5 | 5 |
| 10 | 10 | 7 |
| 15 | 14 | 9 |
| 20 | 17 | 10 |
| 25 | 19 | 10.5 |
| 30 | 21 | 11 |
| 35 | 22.5 | 11.5 |
| 40 | 24 | 12 |
| 45 | 25.5 | 12.25 |
| 50 | 27 | 12.5 |
| 55 | 28 | 12.75 |
| 60 | 29 | 13 |
| 65 | 30 | 13.12 |
| 70 | 31 | 13.25 |
| 75 | 31.5 | 13.37 |
| 80 | 32 | 13.5 |
| 85 | 32.25 | 13.62 |
| 90 | 32.5 | 13.75 |
| 95 | 32.75 | 13.87 |
| 100 | 33 | 14 |
| > 100 | 33 | 14 |

| Parcel No. | Owner | Feet Below Lake Skinner | | Length of Watercourse Feet | Area of Parcel Acres | Comments |
|---|---|---|---|---|---|---|
| 958 04 024 | MWD | 0 | 3,500 | 3500 | 591.26 | Parcel owned by MWD to Washington Street |
| 958 09 022 | MWD | 3,500 | 4,914 | 1414 | 45.04 | |
| 958 09 021 | Carvi Auto Body & Paint Inc | 4,914 | 5,267 | 353 | 4.99 | |
| 958 09 020 | Mazoe Smith 2003 Trust | 5,267 | 5,653 | 386 | 4.86 | |
| 958 09 019 | Avila, Jessie/Leticia | 5,653 | 5,910 | 257 | 4.73 | |
| 958 09 029 | Cuevas, Roger/Cecilia | 5,910 | 6,360 | 450 | 6.88 | |
| 958 09 030 | Samuel Desantiago | 6,360 | 6,746 | 386 | 6.89 | |
| 958 09 036 | Larry A. Urban | 6,746 | 6,971 | 225 | 20.4 | Borders Buena Ventura Road |
| 958 09 035 | Larry A. Urban | 6,971 | 8,064 | 1093 | 19.54 | |
| 958 17 006 | Tessier, Anthony J. | 8,064 | 8,385 | 321 | 4.68 | |
| 958 17 003 | Hopkins, David Ray/Cherlyn Ann | 8,385 | 8,835 | 450 | 4.43 | |
| 958 17 002 | Carter, Robert B & Jane L. | 8,835 | 9,221 | 386 | 4.79 | |
| 958 17 024 | Munoz, Alfonso/Manuela | 9,221 | 9,671 | 450 | 4.63 | |
| 958 17 023 | Cornejo, Francisco; Wenzel, Hans F. | 9,671 | 10,121 | 450 | 4.64 | Borders Pourroy Road |
| 958 14 009 | Rancho Bella Vista LLC | 10,121 | 11,792 | 1671 | 22.72 | TR 23418, Approved February 1989 |
| 958 14 010 | Rancho Bella Vista LLC | 11,792 | 13,013 | 1221 | 36.82 | Expired February 1992 |
| 958 14 003 | Borel, Alexander Ray, et al and Borel, Leonard Roy | 13,013 | 14,427 | 1414 | 109.3 | |
| 958 14 002 | Borel, Alexander A. | 14,427 | 15,841 | 1414 | 40 | Borders Leon Road - PP 17631 - In Dept. Review |
| 958 27 012 | Borel, Alex A | 15,841 | 17,705 | 1864 | 40 | |
| 957 32 006 | French Valley Commercial Partners | 17,705 | 19,955 | 2250 | 150.29 | Reservoir - In Department Review |
| 957 32 005 | French Valley Commercial Partners | 19,955 | 20,919 | 964 | 11.04 | |
| 957 35 002 | Pulte Home Corp - May have been subdivided | 20,919 | 23,683 | 2764 | 241.04 | Approved April 2001, Expires March 2004 |

**TABLE 2**
**RIPARIAN OWNERS ALONG TUCALOTA CREEK**
**DOWNSTREAM FROM LAKE SKINNER**

9/16/2004

THE METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA
LAKE SKINNER – TUCALOTA CREEK WATER RIGHTS
MONTHLY RECORD SHEET

| (month) Day of Month | I Inflow (af) | O Outflow (af) | D Release (af) | E Evaporation (af) | S Storage Change (af) | O External Water (af) | B Rate of Accumulation (cfs) | P Precipitation (af) | A Runoff (af) | LMIN Well Depth AV-28 (ft) | Lake Storage (af) | Required Release[1] (af) | Fallbrook Diversion[2] (af) | Cumulative Fallbrook Diversions[3] (af) | Delivery Date[4] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | | |
| 11 | | | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | | | |
| 19 | | | | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | | | |
| 21 | | | | | | | | | | | | | | | |
| 22 | | | | | | | | | | | | | | | |
| 23 | | | | | | | | | | | | | | | |
| 24 | | | | | | | | | | | | | | | |
| 25 | | | | | | | | | | | | | | | |
| 26 | | | | | | | | | | | | | | | |
| 27 | | | | | | | | | | | | | | | |
| 28 | | | | | | | | | | | | | | | |
| 29 | | | | | | | | | | | | | | | |
| 30 | | | | | | | | | | | | | | | |
| 31 | | | | | | | | | | | | | | | |
| TOTAL | | | | | | | | | | | | | | | |

Notes:
Q=S+O+D+E-I
R=O.504Q
A=Q-P

[1] "Required releases" are either Column 2 or 3 from Table 1, whichever is applicable based on whether or not runoff is increasing.
[2] "Fallbrook Diversion" is defined as (from the Monthly Record Sheet), the Column labeled "A Runoff" minus the Column labeled "Required Release" from Table 1, either Column 2 or 3, whichever is applicable.
[3] Cumulation of daily Fallbrook Diversion
[4] Calculation Date Plus 30 Days

Attachment F