Case 3:51-cv-01247-JO-SBC   Document 4902   Filed 03/07/06   PageID.47338   Page 1 of 14

FILED
MAR 7 2006
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> vs. ) <br> ) <br> FALLBROOK PUBLIC ) <br> UTILITY DISTRICT, et al., ) <br> ) | Civil Action No. 51-1247-SD-GT <br><br> EMPLOYMENT AGREEMENT BETWEEN BETWEEN THE SANTA MARGARITA RIVER WATERMASTER STEERING COMMITTEE AND BINDER & ASSOCIATES CONSULTING, INC. TO SERVE AS WATERMASTER FOR THE SANTA MARGARITA RIVER WATERSHED |

Employment Agreement – Binder & Associates

# EMPLOYMENT AGREEMENT BETWEEN THE SANTA MARGARITA RIVER WATERMASTER STEERING COMMITTEE AND BINDER & ASSOCIATES CONSULTING, INC. TO SERVE AS WATERMASTER FOR THE SANTA MARGARITA RIVER WATERSHED

This Agreement is made and entered into as of February 21, 2006, by and between the Santa Margarita River Watermaster Steering Committee ("Steering Committee") and Binder & Associates Consulting, Inc. ("Binder").

## RECITALS

A.  In 1966, a Modified Final Judgment and Decree was entered by the United States District Court in the case of *United States v. Fallbrook Public Utility District, et al*, Case No. 1247-SD-T, pursuant to which the Court retained continuing jurisdiction over use of all surface waters within the Watershed of the Santa Margarita River ("Watershed") and all underground or subsurface waters within the Watershed. The Court appointed a watermaster ("Watermaster") to administer and enforce the provisions of the Modified Final Judgment and Decree.

B.  The Court appointed a Steering Committee to assist the Watermaster and the Court in the oversight and management of the case.

C.  Following the retirement of the Watermaster, who has served since 1989, the Court approved the solicitation for a new Watermaster. The Steering Committee evaluated the candidates and recommended the employment of Charles W. Binder, doing business as Binder & Associates Consulting, Inc. ("Binder") to serve as Watermaster. On November 15th, 2005, the Court issued an Order authorizing the Steering Committee to execute an Employment Agreement with Binder to serve as Watermaster.

## AGREEMENT

NOW, THEREFORE, IT IS AGREED AS FOLLOWS:

1. **Services.**

Binder shall provide the Court and the Steering Committee with the services described in the Scope of Services set forth in Exhibit "A" attached hereto.

2. **Compensation.**

   a. The Steering Committee shall pay for such services as follows:

      i. Binder shall receive compensation on an hourly basis at the rate of $125 per hour.

  ii. During the first twelve months from the Commencement Date, Binder shall be compensated for not to exceed 1,800 hours.

  iii. Following the first twelve months, the Steering Committee shall establish a maximum hourly effort from Binder and incorporate said maximum hourly effort in its annual budget.

  iv. Binder's hourly compensation shall be reviewed by the Steering Committee annually and shall be adjusted by the Steering Committee by an amendment to this Agreement.

 b. Binder shall be reimbursed by the Steering Committee for the following "out of pocket" expenses: travel, postage, copying, long distance telephone, and the like.

 c. Binder shall submit to Steering Committee, for all services actually performed, a monthly invoice for services, specifying the nature of services performed, the person performing the services, the number of hours expended in performing the services, and the expenses incurred in performing the services. Binder's fees shall be due and payable within thirty (30) days of the date of the invoice. Monthly invoices shall be submitted as follows:

  Watermaster of Santa Margarita River Watershed
  c/o Fallbrook Public Utility District Accounting Department
  P.O. Box 2290
  Fallbrook, CA 92088-2290

  Copies of the monthly invoices shall be submitted as follows:

  Watermaster of Santa Margarita River Watershed
  P.O. Box 631
  Fallbrook, CA 92088

  Santa Margarita River Watershed Steering Committee
  (Current Chair)
  [Address of the Agency represented by the Current Chair]

**3.** **Office and Office Services.**

It is the understanding of the parties that the Steering Committee arranges for, and provides, the Watermaster with an office, an assistant, office supplies, and other usual and necessary office-related supplies and services. The Office of the Watermaster is currently leased from the Fallbrook Public Utility District, and the Fallbrook Public Utility District employs the assistant, and provides all other office supplies and services. This arrangement shall be retained until such time as the Steering Committee and the Watermaster agree upon a change.

4.  **Maintenance of Records.**

Books, documents, papers, accounting records, and other evidence pertaining to costs incurred shall be maintained by Binder and made available at all reasonable times for inspection by Steering Committee and the Court.

5.  **Time of Performance.**

Binder shall perform his services in a prompt and timely manner, at the direction of the Court and the Steering Committee.

6.  **Term.**

Binder shall serve as Watermaster pursuant to the Order of the Court for an indefinite term, at the discretion of the Court, commencing on December 27, 2005 ("Commencement Date").

7.  **Compliance with Law.**

Binder shall comply with all applicable laws, ordinances, codes and regulations of the federal, state and local government.

8.  **Standard of Care.**

Binder's services will be performed in accordance with generally accepted professional practices and principles and in a manner consistent with the level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions.

9.  **Independent Consultant.**

Binder is retained as an independent consultant and is not an employee of Steering Committee. No employee or agent of Binder shall become an employee of Steering Committee. The work to be performed shall be in accordance with the work described in Exhibit "A", subject to such directions and amendments from Steering Committee as herein provided.

10. **Employees.**

Binder's employees, if any, shall only perform Watermaster services pursuant to this Employment Agreement if said services are authorized by the Steering Committee.

11. **Integration.**

This Agreement represents the entire understanding of Steering Committee and Binder as to those matters contained herein, and supersedes and cancels any prior oral or written understanding, promises or representations with respect to those matters covered hereunder. This Agreement may not be modified or altered except in writing signed by both parties hereto. This is an integrated agreement.

12. **Insurance.**

   a. <u>Commercial General Liability.</u>

   (i) Binder shall take out and maintain, during the performance of all work under this Agreement, in amounts not less than specified herein, Commercial General Liability Insurance, in a form and with insurance companies acceptable to the Steering Committee.

   (ii) Coverage for Commercial General Liability insurance shall be at least as broad as Insurance Services Office Commercial General Liability coverage (Occurrence Form CG 0001).

   (iii) Commercial General Liability Insurance must include coverage for the following:

   (a) Bodily Injury and Property Damage
   (b) Personal Injury/Advertising Injury
   (c) Premises/Operations Liability
   (d) Products/Completed Operations Liability
   (e) Aggregate Limits that Apply per Project
   (g) Contractual Liability with respect to this Contract
   (h) Broad Form Property Damage
   (i) Independent Binders Coverage

   (iv) All such policies shall name the Steering Committee, its officers, employees, agents and Steering Committee designated volunteers as Additional Insureds under the policy.

   (v) The general liability program may utilize either deductibles or provide coverage excess of a self-insured retention, subject to written approval by the Steering Committee.

   b. <u>Automobile Liability.</u>

   (i) At all times during the performance of the work under this Agreement, Binder shall maintain Automobile Liability Insurance for bodily injury and property damage including coverage for owned, non-owned and hired vehicles, in a form and with insurance companies acceptable to the Steering Committee.

   (ii) Coverage for automobile liability insurance shall be at least as broad as Insurance Services Office Form Number CA 0001 (ed. 1/87) covering automobile liability, Code 1 (any auto).

   (iii) The automobile liability program may utilize deductibles, but not a self-insured retention, subject to written approval by the Steering Committee.

    (iv)    All such policies shall name the Steering Committee, its officers, employees, agents and Steering Committee designated volunteers as Additional Insureds under the policies.

c.    <u>Public Liability, Property Damage, Automobile Liability, and Employer's Liability</u>.

    (i)    The following insurance limits are required for the Agreement:

        Combined Single Limit

| | |
|---|---|
| Commercial General Liability | $1,000,000 per occurrence/$2,000,000 aggregate for bodily injury, personal injury, and property damage |
| Automobile Liability | $1,000,000 per occurrence for bodily injury and property damage |

d.    <u>Evidence Required</u>. Binder shall file with the Steering Committee evidence of insurance from an insurer or insurers certifying to the coverage of all insurance required herein. Such evidence shall include original copies of the ISO CG 2010 (or insurer's equivalent) signed by the insurer's representative and Certificate of Insurance (Acord Form 25-S or equivalent). All evidence of insurance shall be provided by a properly authorized officer, agent, or qualified representative of the insurer and shall provide the names of the insured, any additional primary insureds, where appropriate, the type and amount of the insurance, the location and operations to which the insurance applies, and the expiration date of such insurance.

e.    <u>Policy Provisions Required</u>.

    (i)    All policies shall contain a provision for 30 days advance written notice by the insurer(s) to the Steering Committee of any cancellation with the exception for nonpayment of premium, in which case 10 days' notice will be given. Statements that the carrier "will endeavor" and "that failure to mail such notice shall impose no obligation and liability upon the company, its agents or representatives," will not be acceptable on certificates.

    (ii)    All policies shall contain a provision stating that Binder's policies are primary insurance and the insurance of the Steering Committee or any named insureds shall not be called upon to contribute to any loss.

f.    <u>Qualifying Insurers</u>. All policies required shall be issued by acceptable insurance companies, as determined by the Steering Committee.

Insurance carriers shall be qualified to do business in California and maintain an agent for process within the state. Such insurance carrier shall have not less than an "A-" policyholder's rating and a financial rating of not less than "Class VII" according to the latest Best Key Rating Guide.

g. <u>Additional Insurance Provisions</u>.

(i) The foregoing requirements as to the types and limits of insurance coverage to be maintained by Binder, and any approval of said insurance by the Steering Committee, is not intended to and shall not in any manner limit or qualify the liabilities and obligations otherwise assumed by Binder pursuant to this Agreement, including but not limited to, the provisions concerning indemnification.

(ii) If at any time during the life of the agreement, Binder fails to maintain in full force any insurance required by the Agreement, the Steering Committee may acquire the necessary insurance for Binder and deduct the cost thereof from the appropriate progress payments due Binder.

(iii) Binder shall include all subconsultants as insureds under its policies or shall furnish separate certificates and endorsements for each subconsultant. All coverage for subconsultants shall be subject to all of the requirements stated herein.

(iv) The Steering Committee may require Binder to provide complete copies of all insurance policies in effect for the term of this Agreement.

**13. Indemnification.**

Binder agrees to protect, save, and hold harmless Steering Committee and each member of the Steering Committee, from any and all claims, liabilities, expenses or damages of any nature, including attorneys' fees, for injury or death or any person, or damage to property, or interference with use of property, including loss of use, arising out of or in any way connected with the negligent performance or willful misconduct under this Agreement by Binder, Binder's agents, officers, employees, subconsultants, or independent consultants hired by Binder. The only exception to Binder's responsibility to protect, save, and hold harmless Steering Committee, is due to the negligence, willful misconduct or active negligence of Steering Committee. The policy limits do not act as a limitation upon the amount of indemnification to be provided by Binder.

**14. Laws.**

This Agreement shall be interpreted in accordance with the laws of the State of California.

15. **Notice.**

Any notice or instrument required to be given or delivered by this Agreement may be given or delivered by depositing the same in any United States Post Office, certified mail, return receipt requested, postage prepaid, addressed to:

**IF for the Steering Committee:**

Santa Margarita River Watershed Steering Committee
(Current Chair)
[Address of the Agency represented by the Current Chair]

**IF for Binder:**

Charles W. Binder
Binder & Associates Consulting, Inc.
101 Parkshore Drive, Suite 100
Folsom, CA 95630

**IF for the Court:**

United States District Court
Southern District of California
880 Front Street, Suite 4290
San Diego, CA 92101-8900


IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first written above.


| THE SANTA MARGARITA RIVER WATERSHED STEERING COMMITTEE | BINDER & ASSOCIATES CONSULTING, INC. |
|---|---|
| By: _____ <br> Chair | By: _____ <br> Mr. Charles W. Binder |

## EXHIBIT A

### Duties of the Watermaster

To the extent not superseded herein, these Duties of the Watermaster incorporate by reference the powers and duties granted by Order of the Court in *United States vs. Fallbrook Public Utility District* in its Order filed March 13, 1989 (herein referred to as the "1989 Order"). The following Duties of the Watermaster are adapted from the 1989 Order to include additional duties described herein:

I

### REPORTING DUTIES

Promptly after the end of each water year[1], the Watermaster shall report to the Court, in writing, a summary of his findings and conclusions, as follows:

1. A summary of water availability within the Santa Margarita River watershed for the previous year and, to the extent feasible, a forecast of the same for the upcoming water year. The summary shall include a compilation, by hydrologic sub-unit, of the following water quantities:

   a. Surface Water:

   1) Surface flow of the Santa Margarita River and its tributaries, with identification by quantity of the specific sources of such surface flow, including water from natural runoff, water imported from outside the watershed, and water from each of the subsurface sources identified in the applicable interlocutory judgments.

   2) Diversions of surface water, with identification by quantity of the related consumptive uses, losses, and returns.

   3) Water in surface storage on the last day of the previous water year.

   b. Subsurface water:

   1) Extractions from each of the subsurface sources identified in the applicable interlocutory judgments, with identification by quantity of the related consumptive uses, losses, and returns.

   2) For each such subsurface source, (i) the quantity of water in subsurface storage at the end of the previous water year, (ii) the source and quantity of recharge.

---

[1] "Water Year" shall be defined as that twelve-month period beginning on October 1 and ending September 30.

    c.    The source and quantity of water imported for use within the Santa Margarita River watershed.

    d.    The source and quantity of water exported from the Santa Margarita River watershed.

2. A list of all water users within the Santa Margarita River watershed, including for each a description of vested rights and appropriative priority dates if any.

3. A report on the use of water by each substantial user[2] within the Santa Margarita River watershed for the previous water year showing for each such user the amount of water diverted, extracted, impounded, or imported and the amount used according to category of use, including: domestic, irrigation, other agricultural, industrial, commercial, public and such other types of uses as the Watermaster may deem appropriate.

4. A list of all unauthorized water use within the Santa Margarita River watershed, along with an explanation of actions taken or recommended to be taken with respect to such use.

5. A statement of conditions and activities which, if continued, may pose a threat to the long-term water supply of the Santa Margarita River watershed.

6. Report on the water quality within the Santa Margarita River watershed by hydrologic sub-unit during the previous water year.

7. An update of the Watermaster's projected tasks, expenditures and requirements over the next five years.

8. A proposed budget for the following water year.

9. Other information deemed appropriate by the Watermaster.

A copy of the Watermaster's written report shall be mailed to each party listed on the Court approved mailing list, and to any party requesting a copy. In addition, five copies of the report will be made available for inspection by the public, during regular business hours, at Fallbrook Public Utility District, 990 E. Mission Road, Fallbrook, California; Rancho California Water District, 42135 Winchester Road, Temecula, California; State Department of Forestry and Fire Protection, 56560 Highway 371, Anza, California; and Hamilton School/Library, 57550 Mitchell Road, Anza, California.

---

[2] "Substantial user" means any person that claims a right to use water under the orders, judgments or decrees of this Court in the above entitled action, and any person previously designated by this Court or the Watermaster to be a substantial user; any person using water or who claims a right to use water in an amount equal to or greater than or in a manner similar to the uses designated in Exhibit A to the 1989 Order; or any person using water within the Santa Margarita River watershed and designated by the Watermaster to be a substantial user.

Any party that objects to a portion of the Watermaster's report, including the Watermaster's designation of substantial users, may do so by filing written Notice of his objection within thirty days of service of the Watermaster's report. Objections filed with this Court must refer to that portion of the Watermaster's report that is objectionable and state specifically the grounds for the objection. Thereafter, the Court may determine a date for hearing the noticed objection. Any party wishing to intervene on behalf of the objecting party or on behalf of the Watermaster may do so within the discretion of the Court.

II

POWERS AND DUTIES OF THE WATERMASTER

The Watermaster shall have the following powers and duties:

1.  To update and maintain the list of substantial users.

2.  To collect water consumption data and require monthly reports from the substantial users including, for each such user, the amount of water diverted, extracted, impounded or imported and the amount of water used, as follows:

    a.  To require every substantial user of subsurface water to supply in writing the following factual data for each well owned or operated within the watershed:

        1)  The well owner;

        2)  The location of the well;

        3)  The quantity in acre-feet of the water pumped during that month and the use by quantity to which the water was put; and

        4)  The depth in feet to water on or about the last day of that month and designate the zone(s) or aquifer(s) from which well casing perforations permit the production of water.

    b.  To require every substantial user that diverts surface water to supply in writing the following factual data for each designated point of diversion within the watershed:

        1)  The diverter's name;

        2)  The location of the point of diversion; and

        3)  The quantity in acre-feet of water diverted for the preceding month.

    c.  To require every substantial user to supply in writing the following factual data for each designated surface storage reservoir:

  1)  The reservoir owner;

  2)  The location of the storage facility;

  3)  The quantity, in acre-feet of water held in storage in such facility on the last day of the preceding month; and

  4)  The purpose for which such water was stored.

 d. To require every water importer subject to this Court that imports water to supply in writing the following factual data:

  1)  The importer's name;

  2)  The discharge point or point of connection of such imported water; and

  3)  The quantity in acre-feet, of water imported for the preceding month.

 e. To require every substantial user and every importer of water within the Santa Margarita River Watershed to supply in writing the following factual data:

  1)  The user's name; and

  2)  The quantity of water devoted to the uses listed below in each hydrologic sub-unit or area designated by the Watermaster:

    A. Domestic

    B. Agricultural irrigation

    C. Other agriculture

    D. Industrial

    E. Commercial

    F. Public

    G. Others as Watermaster may deem appropriate.

 f. To require every producer of reclaimed waste water subject to this Court to supply in writing the following factual data:

  1)  The producers' name;

  2)  The location of use or discharge of reclaimed water; and

       3)  The quantity in acre-feet of reclaimed water produced, delivered and discharged for the preceding month.

3. To make all reasonable efforts to collect and reconstruct water consumption data for the periods 1966 to date.

4. To obtain necessary pump efficiency data.

5. To operate and maintain gaging stations, investigate water availability and hydrology, and conduct water quality testing.

6. To perform such duties as are required under the Memorandum of Understanding and Agreement on Operation of Lake Skinner.

7. To take custody of existing records and reports, maintain proper records, and prepare periodic written reports as required by this Court.

8. To locate and investigate unauthorized water appropriations within the Santa Margarita River watershed.

9. To assist in locating, investigating and enjoining water quality violations within the Santa Margarita River Watershed.

10. The Watermaster shall have the authority to enter, upon reasonable notice and at reasonable times, upon the lands of any party to conduct such tests and measurements as he deems necessary to carry out the provisions of this, or any other order of the Court with respect to the duties enumerated above.

11. To the extent not superceded herein, this Agreement incorporates by reference the powers and duties granted by the Court in its Order filed January 27, 1966, as modified on April 6, 1966.

12. To design, print and distribute the forms necessary to convey the information required by any applicable Order of the Court.

13. To report to the Steering Committee, established pursuant to Court Order, on a quarterly basis regarding the status of the Watermaster's investigation, proposed budget items for the upcoming water year and to respond to questions regarding the progress of any programs established by the Watermaster in implementing this Order.

14. To perform such other duties as may be assigned by the Court or by the Steering Committee.

15. To perform such duties as are required under the Memorandum of Understanding and Agreement on Operation of Domenigoni Valley Reservoir (now known as Diamond Valley Lake).

16.  To perform such duties as are required under the Cooperative Water Resource Management Agreement between the United States and Rancho California Water District.

## III

## JURISDICTION

This Court retains jurisdiction, upon the application of any party or of the Watermaster or upon its own motion to make such further or supplemental orders or directions as may be necessary or appropriate for interpretation, enforcement or carrying out of this Court's judgments, decrees and orders with respect to the Santa Margarita River watershed.