Marco A. Gonzalez (State Bar No. 190832)
Rory R. Wicks (State Bar No. 85340)
COAST LAW GROUP LLP
169 Saxony Road, Suite 204
Encinitas, California 92024
Tel: (760) 942-8505
Fax: (760) 942-8515

Susan M. Williams (Pro Hac Vice)
Sarah S. Works (Pro Hac Vice)
Williams & Works, P.A.
P.O Box 1483
Corrales, NM 87049
Tel. (505) 899-7994
Fax. (505) 899-7972
swilliams@williamsandworks.net

Attorneys for Proposed Plaintiff in Intervention,
the Cahuilla Band of Indians

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> CAHUILLA BAND OF INDIANS, a federally recognized Indian tribe, <br><br> Proposed Plaintiff in Intervention, <br><br> v. <br><br> FALLBROOK PUBLIC UTILITY DISTRICT, a public service corporation of the State of California, et al., <br><br> Defendants. | CIVIL NO. 1247-SD-C <br><br> **CAHUILLA BAND OF INDIANS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE** <br><br> DATE: December 4, 2006 <br> TIME: 2:00 p.m. <br><br> JUDGE: Hon. Gordon Thompson <br> Courtroom 8, 3rd Floor |

## I. INTRODUCTION

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the Cahuilla Band of Indians (the "Cahuilla Tribe" or "Tribe") respectfully requests to intervene in this litigation to quantify and

1



1  protect the Cahuilla Tribe's senior, federal reserved water rights to the surface waters and
2  groundwater underlying the Cahuilla Reservation within the Anza Basin portion of the Santa
3  Margarita River System. The Cahuilla Tribe clearly is entitled to permissive intervention under Rule
4  24(b), and this Court should grant the Tribe permissive intervention. If the Court was to deny
5  permissive intervention, the Cahuilla Tribe would be entitled to intervene as a matter of right under
6  Rule 24(a).
7        On November 8, 1962, this Court entered *Findings of Fact, Conclusions of Law, and*
8  *Interlocutory Judgment No. 41 Concerning the Rights to the Use of Waters of Santa Margarita River*
9  *Stream System Held in Trust by the U.S.A. in Connection with the Ramona, Cahuilla and Pechanga*
10  *Reservations*, No. 1247-SD-C (S.D. Cal. filed Jan. 25, 1951) ("Interlocutory Judgment 41" or "IJ
11  41"). Through Interlocutory Judgment 41, this Court recognized a senior, federal reserved water
12  right for the Cahuilla Tribe to the surface waters and groundwater underlying the Cahuilla
13  Reservation. As an interlocutory judgment, IJ 41 specifically held that this Court retains continuing
14  jurisdiction over the Cahuilla Tribe's water rights by reserving final quantification of the Cahuilla
15  Tribe's water rights until circumstances so required. Interlocutory Judgment 41 at 23. The Cahuilla
16  Tribe now seeks this Court to grant the Tribe's Motion to Intervene in this case for the purpose of
17  quantifying the Tribe's senior, federal reserved water rights as contemplated by this Court in 1962
18  under Interlocutory Judgment 41.

19       **II.   FACTUAL BACKGROUND**

20        The Cahuilla Tribe is a sovereign nation federally recognized by the United States. See
21  Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of
22  Indian Affairs, 65 Fed. Reg. 13,298 (Mar. 13, 2000). The Cahuilla Tribe's occupancy of the Santa
23  Margarita River System long pre-dates the arrival of Europeans.
24        The Cahuilla Reservation was established by President Ulysses S. Grant in 1875. Exec.
25  Order of Dec. 27, 1875, *reprinted in* 1 CHARLES KAPPLER, INDIAN AFFAIRS: LAWS AND
26  TREATIES 820. In 1887, the Cahuilla Reservation was further enlarged by President Grover
27
28

2

Cleveland. Exec. Order of Mar. 14, 1887, *reprinted in 1* CHARLES KAPPLER, INDIAN AFFAIRS: LAWS AND TREATIES 824. The Cahuilla Reservation was further enlarged on December 29, 1891. Interlocutory Judgment 41 at 5.

When this Court entered Interlocutory Judgment 41, the Cahuilla Reservation contained approximately 18,292 acres, of which approximately 17,312 acres are located within the Anza Basin and the Santa Margarita River System. See Interlocutory Judgment 41 at 7.

Pursuant to the Southern California Indian Land Transfer Act, Pub. L. No. 100-581, the Cahuilla Reservation was expanded by approximately 611 acres in 1988. Those lands are located within the Santa Margarita River System, but the Cahuilla Tribe is not asserting claims for water rights to those 611 acres at this time. Today, the Cahuilla Reservation contains approximately 18,884 acres, of which approximately 17,923 acres are located within the Santa Margarita River System.

The Cahuilla Reservation is located in the aboriginal territory of the Cahuilla Tribe. Tribal members have used and occupied the area since time immemorial. The Executive Orders creating the Cahuilla Reservation set aside the land and water resources of the Anza Basin for the benefit of the Cahuilla Tribe as a permanent homeland for its members. Interlocutory Judgment 41 at 17.

The United States filed this lawsuit in 1951 to quiet title and enjoin the unlawful impairment of federal water rights in the Santa Margarita River System. *United States v. Fallbrook Public Utility District*, No. 1247-SD-C (S.D. Cal. filed Jan. 25, 1951). As trustee for the Cahuilla Tribe, in the early stages of this litigation, the United States asserted claims to federal reserved water rights for the Cahuilla Reservation. In Interlocutory Judgment 41, this Court recognized the Tribe's claims and ruled that the United States had created the Cahuilla Reservation with full intent to reserve for the Cahuilla Tribe use of sufficient water from the Santa Margarita River System to meet the Tribe's "present and future needs." Interlocutory Judgment 41 at 17. The Court deferred, however, the task of quantifying the Tribe's water rights until future circumstances required its resolution. Interlocutory Judgment 41 at 23. Current water use levels in the Anza Basin, along with increasing

3

| UNITED STATES OF AMERICA v FALLBROK PUBLIC UTILITY DISTRICT et al | CAHUILLA BAND OF INDIANS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE | 1247-SD-C |

future demand from anticipated residential and commercial development, near the Cahuilla Reservation have emerged to threaten the Tribe's current and future water supply. The time for a final quantification of the Cahuilla Tribe's water right is at hand.

### III. SUMMARY OF THE ARGUMENT

Quantification and protection of the Cahuilla Tribe's water rights form the basis of the Cahuilla Tribe's motion to intervene in this case. Although the United States, as the Tribe's trustee, has previously acted on the Tribe's behalf in earlier stages of the litigation, a final quantification of the Cahuilla Tribe's water rights demands the Cahuilla Tribe's participation as a party plaintiff - a conclusion illustrated by the standards of Rule 24 of the Federal Rules of Civil Procedure. The Tribe meets the standard of Rule 24(a) and is entitled to permissive intervention for the reasons set forth in *Arizona v. California*, 460 U.S. 605 (1983). In that case, the Court granted five (5) federally recognized Indian tribes permissive intervention to assert their claims to federal reserved water rights to the Colorado River, even though the United States also represented the Tribes' interests in that case. *Arizona v. California*, 460 U.S. at 614-15. For this same reason, the Cahuilla Tribe is entitled to permissive intervention in this case to quantify and protect the Tribe's water rights as contemplated by this Court in Interlocutory Judgment 41.

In the alternative, if the Court was to deny permissive intervention under Rule 24(b), the Cahuilla Tribe would be entitled to intervene as a matter of right under the standards set forth in Rule 24(a) of the Federal Rules of Civil Procedure. The Cahuilla Tribe meets the standard of Rule 24(a) because: 1) the Tribe's motion to intervene is timely to protect its water rights from unlawful impairment by present and future water development in the Anza Basin; 2) the Tribe is quantifying its senior, federal reserved water rights to the Santa Margarita River System as contemplated by this Court in Interlocutory Judgment 41; 3) there is no practical impairment to other parties in this case if the Tribe is permitted to intervene and protect its water rights; and, 4) no other party to this case can adequately represent the Cahuilla Tribe's interests in this case.

///

4

UNITED STATES OF AMERICA v
FALLBROOK PUBLIC UTILITY
DISTRICT et al

CAHUILLA BAND OF INDIANS'
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION TO INTERVENE

1247-SD-C

## IV. ARGUMENT

### A. The Cahuilla Tribe is Entitled to Permissive Intervention in this Case.

The Cahuilla Tribe respectfully requests this Court to permit the Tribe to intervene under Rule 24(b) of the Federal Rules of Civil Procedure. Permissive intervention is appropriate when "an applicant's claim or defense and the main action have a question of law or fact in common." *Beckman Industries, Inc. v. International Co.*, 966 F.2d 470, 472 (9th Cir. 1992). The existence of a common question is liberally construed. See *Stallworth v. Monsanto*, 558 F.2d 257, 265 (5th Cir. 1977).

The Cahuilla Tribe undeniably has the requisite interests to satisfy this standard. The Tribe seeks to participate in the quantification and protection of the Tribe's senior, federal reserved water rights to the Santa Margarita River System, which must occur in this case as contemplated by Interlocutory Judgment 41. The Cahuilla Tribe's situation is therefore squarely analogous to that of *Arizona v. California*, 460 U.S. 605 (1983).

In *Arizona v. California*, the Supreme Court granted five (5) federally recognized Indian tribes permissive intervention to assert their claims to federal reserved water rights to the Colorado River, even though the United States also represented the Tribes' interests in that case as the tribes' trustee. *Arizona v. California*, 460 U.S. at 614-15. In that case, the five tribes sought intervention to pursue additional water for claims that had not been previously asserted by the United States as the tribes' trustee. 460 U.S. at 612. From the perspective of the five Indian tribes, all previous decrees in the case were not yet complete. The Supreme Court agreed and permitted the tribes to intervene to protect their water rights. *Id.* at 613. The Court reasoned that participation by the tribes themselves in water rights litigation is "critical to their welfare [and] should not be discouraged." *Id.*

Similarly, in this suit, the judgments relevant to the Cahuilla Tribe are not yet comprehensive or final with regard to quantification of the Cahuilla Tribe's senior, federal reserved water rights to the Santa Margarita River System. In Interlocutory Judgment 41, this Court expressly left the issue open and reserved final quantification of the Cahuilla Tribe's federal reserved water rights until

1  circumstances so required. <u>Interlocutory Judgment 41</u> at 23. Circumstances now require this Court
2  to quantify and protect the Cahuilla Tribe's water rights. Thus, the Cahuilla Tribe is entitled to
3  permissive intervention in this case to quantify and protect the Tribe's senior, federal reserved water
4  rights as contemplated by this Court in <u>Interlocutory Judgment 41</u>.

5        B.    <u>**The Cahuilla Tribe Is Entitled to Intervene as a Matter of Right to Protect the**</u>
6            <u>**Tribe's Senior, Federal Reserved Water Rights.**</u>

7      If this Court was to deny permissive intervention, the Cahuilla Tribe is entitled to intervene in
8  this case as a matter of right under Rule 24(a) of the Federal Rules of Civil Procedure. Rule 24(a)
9  establishes a four-part test for determining when a party shall be permitted intervention as a matter of
10 right: 1) timeliness; 2) assertion of an interest relating to the subject matter of the action; 3) practical
11 impairment of the party's ability to protect that interest; and 4) inadequate representation by the
12 parties to the action. The Ninth Circuit Court of Appeals construes these four factors "broadly in
13 favor of applicants for intervention." Greene v. United States, 996 F.2d 973, 976 (9th Cir. 1993).
14 Upon the undisputed facts of this case, the Cahuilla Tribe's request for intervention satisfies the
15 requirements of Rule 24(a).

16       1.    <u>**The Cahuilla Tribe Asserts an Interest Related to the Subject Matter of This**</u>
17           <u>**Case.**</u>

18     The interest test for intervention under Rule 24(a) is "a practical guide to disposing of
19 lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due
20 process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). The Cahuilla Tribe has an
21 undeniably strong interest in a perfected and final quantified water right, which merits entry as a
22 party under Rule 24(a).

23     An adequate and permanently protected water supply is critical to the Cahuilla Tribe's
24 economic, cultural, and political development as a sovereign Indian nation. <u>Interlocutory Judgment</u>
25 <u>41</u> has already declared that the Tribe possesses a federal reserved water right in all relevant
26 resources of the Anza Basin within the Santa Margarita River System. This conclusion of
27
28

6

| UNITED STATES OF AMERICA v FALLBROK PUBLIC UTILITY DISTRICT et al | CAHUILLA BAND OF INDIANS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE | 1247-SD-C |

Interlocutory Judgment 41 indisputably establishes that the Cahuilla Tribe has an acute interest in any eventual quantification and preservation of the Tribe's senior, federal reserved water rights.

This case comprises the forum in which quantification of rights to the Santa Margarita River System will be determined. It will thus function as the only means available to the Cahuilla Tribe for defining and perfecting its senior, federal reserved water rights, and is thereby integral to the survival of the Cahuilla Reservation community and economy. The Supreme Court has underscored the importance of tribal participation in water rights adjudications that affect the ability to secure adequate supplies of the resource: "[T]he Indians' participation in [water rights] litigation critical to their welfare should not be discouraged." *Arizona v. California*, 460 U.S. at 615. On this well recognized basis, the Cahuilla Tribe satisfies this requirement for intervention in this case.

2. **Failure to Include the Cahuilla Tribe as a Party Would Impair the Tribe's Interest in Protecting the Tribe's Senior, Federal Reserved Water Rights.**

The third factor that justifies intervention as a matter of right under Rule 24(a) is when an applicant for intervention is "so situated that the disposition of an action may as a practical matter impair or impede the applicant's ability to protect that interest." FED. R. CIV. P. 24(a)(2). Importantly, this requisite impairment of an interest may occur in several ways. As the Ninth Circuit has noted, "Rule 24 refers to impairment as a practical matter," and a court is therefore "not limited to consequences of a strictly legal nature" when analyzing a request to intervene. *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1498 (9th Cir. 1995) (internal citations omitted).

In this instance, there are both legal and practical consequences for the Cahuilla Tribe should the pending litigation be finally concluded without the Tribe's active participation in the process of quantifying the Tribe's senior, federal water rights to the Santa Margarita River System.

a) <u>Legal Consequences</u>:

The Cahuilla Tribe will likely be legally bound by, and precluded from relitigating, any adjudications affecting the Tribe's water rights that are reached in this proceeding. Well settled law concludes that

7

the actions of the United States as a trustee bind Indian tribes as beneficiaries. In *Arizona v. California*, the Supreme Court held that: "The Tribes' interests in the water of the Colorado basin have been and will continue to be determined in this litigation since the United States' action as their representative will bind the Tribes to any judgment." 460 U.S. at 615 (citing *Heckman v. United States*, 224 U.S. 413, 444-45 (1912)); see also *Canadian St. Regis Band of Mohawk Indians v. State of New York*, 146 F. Supp.2d 170, 189 (N.D. N.Y. 2001) (tribe precluded from bringing land related claim that had been adjudicated previously in an action brought by the United States on the tribe's behalf). Since the United States currently represents the Cahuilla Tribe as the Tribe's trustee in this case, the Tribe would almost certainly be obligated to comply with any ultimate results. This circumstance represents a fundamental legal "impairment" of interest - the very type of impairment contemplated by Rule 24(a).

      b) <u>Practical Consequences</u>:

At stake in this case is the Cahuilla Tribe's protection of an adequate supply of water for its present and future needs. The practical implications of any adjudications affecting this issue are immense. The nature of such results will impact the Tribe's future progress toward economic self-sufficiency, not to mention its basic survival as a Reservation community. Well documented private and commercial development near the Cahuilla Reservation constitutes an emerging threat that may prove catastrophic if the Tribe's senior, federal reserved water rights are not quantified and protected in this case.

    3. **<u>The Cahuilla Tribe's Rights and Interests Are Not Adequately Represented by Any Current Party to the Case.</u>**

In order to merit intervention as of right, a petitioner need only show that representation by other parties "may be inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538, n. 10 (1972) (emphasis added). The applicant's burden in meeting this requirement "should be treated as minimal." *Trbovich*, 404 U.S. at 538, n. 10. While analyzing any possible inadequacy of representation, this Court should consider whether any current party: 1) "will undoubtedly make all

of the intervenor's arguments;" 2) "is capable of and willing to make such arguments," and 3) "whether the intervenor offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

Importantly, in the context of this inquiry:

> "The applicant should be treated as the best judge of whether the existing parties adequately represent his or her interests, and . . . any doubt regarding adequacy of representation should be resolved in favor of the proposed intervenors."

James Wm. Moore et al., *Moore's Federal Practice* § 24.03[4][a] (3d ed.), *cited with approval, Miami Tribe of Oklahoma v. Walden*, 206 F.R.D. 238, 243 (S.D. Ill. 2001).

The Cahuilla Tribe has reached the independent conclusion that the critical issue of quantifying and protecting the Tribe's senior, federal reserved water rights may be less than ideally addressed by any other party to this litigation. It is the position of the Cahuilla Tribe that a truly optimal quantification will incorporate knowledge and facts about the Cahuilla Tribe that are best presented to this Court by the Tribe itself. No other party can fully grasp the significance of water for the Cahuilla Tribe, or know its precise need and threats to that need. Nor can any current party assert the Cahuilla Tribe's interests in the same strategic manner as the Tribe itself could, unfettered by demands or distractions from other water claimants involved in this case. Such a conclusion is adequate to merit intervention.

Further, the presence of potential competing interests between the Cahuilla Tribe and other entities represented by the United States in this case solidifies the Tribe's need for intervention. *See Miami Tribe of Oklahoma v. Walden*, 206 F.R.D. at 243. Although the United States presently acts on the Tribe's behalf with respect to its water rights, the United States must represent concurrently the interests of other entities including the Ramona Band of Cahuilla Indians. The United States legally may be able to represent the competing interests of federal and tribal entities it represents in this case. However, the Cahuilla Tribe must represent its own interests in this case because if the United States does not achieve the Cahuilla Tribe's best interests here, the Cahuilla Tribe's recourse

9

UNITED STATES OF AMERICA v FALLBROK PUBLIC UTILITY DISTRICT et al | CAHUILLA BAND OF INDIANS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE | 1247-SD-C

is a lawsuit against the United States for monetary damages. In this case, there is an immediate and urgent need for water to satisfy the Cahuilla Tribe's water rights.

Federal policies promoting Indian self-determination and self-governance further support the Cahuilla Tribe's intervention as a matter of right in this case. See Indian Self-Determination and Education Assistance Act of 1975, Pub. L. No. 93-638 (codified as amended at 25 U.S.C. § 450 et seq.) (the "ISDEAA"). The ISDEAA recognizes "the obligation of the United States to respond to the strong expression of the Indian people for self-determination by assuring maximum Indian participation in the direction of . . . Federal services to Indian communities." 25 U.S.C. § 450a(a). Under the ISDEAA, tribes may enter into contracts with the federal government to take over administration of programs formerly administered by the federal government on their behalf. *Id.* § 450f(a)1. Thus, rather than requiring the Cahuilla Tribe to depend entirely on the United States to present its case for a final quantification and protection of the Tribe's senior, federal reserved water rights, the federal policy of promoting Indian self-determination supports the Cahuilla Tribe's intervention in this case.

### 4. The Cahuilla Tribe's Application for Intervention is Timely.

The Cahuilla Tribe's motion to intervene is timely at this stage of the case because changed circumstances now require final quantification and protection of the Cahuilla Tribe's senior, federal reserved water rights due to the immediate and urgent threat of increased development in the Anza Basin. As contemplated by this Court in Interlocutory Judgment 41, these changed circumstances now require this Court to enter a final judgment that quantifies and protects the Tribe's water rights from impairment by junior water users in the Anza Basin. See Interlocutory Judgment 41 at 23.

### V. CONCLUSION

For all of the reasons stated above, the Cahuilla Tribe respectfully requests this Court to grant the Tribe's Motion to Intervene for the purpose of quantifying and protecting the Tribe's senior, federal reserved water rights to the Santa Margarita River System, as contemplated by this Court in 1962 in Interlocutory Judgment 41.

Respectfully submitted this 6th day of October, 2006.

Williams & Works, P.A.

By: /s/ Susan Williams

Susan Williams
Sarah S. Works
Williams & Works, P.A.
P.O Box 1483
Corrales, NM 87049
Tel. (505) 899-7994
Fax. (505) 899-7972

Attorneys for Intervenor-Applicant,
the Cahuilla Band of Indians

11

UNITED STATES OF AMERICA v
FALLBROOK PUBLIC UTILITY
DISTRICT et al

CAHUILLA BAND OF INDIANS'
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION TO INTERVENE

1247-SD-C