**ORIGINAL**

Curtis G. Berkey (CA State Bar No. 195485)
Scott W. Williams (CA State Bar No. 097966)
ALEXANDER, BERKEY, WILLIAMS & WEATHERS LLP
2030 Addison Street, Suite 410
Berkeley, CA 94704
Tel: 510/548-7070
Fax: 510/548-7080
E-mail: cberkey@abwwlaw.com
E-mail: swilliams@abwwlaw.com

FILED
06 OCT 18 AM 11:02

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

Attorneys for Proposed Plaintiff-Intervenor
Ramona Band of Cahuilla

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

RAMONA BAND OF CAHUILLA,

    Proposed Plaintiff-Intervenor,

v.

FALLBROOK PUBLIC UTILITY DISTRICT,
a public service corporation of the State of
California, et al.,

    Defendants.

) CIVIL NO.: 51-1247-SD-GT
)
)
) **MEMORANDUM OF POINTS AND**
) **AUTHORITIES IN SUPPORT OF**
) **MOTION BY THE RAMONA BAND**
) **OF CAHUILLA TO INTERVENE**
)
)
)
)
) Date: December 4, 2006
) Time: 2:00 p.m.
) Courtroom: 8 - Third Floor
) Judge: Hon. Gordon Thompson
)
)

part of 4907

Case No.: 51-cv-1247-SD-GT

# INTRODUCTION

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the Ramona Band of Cahuilla ("Band" or "Tribe") respectfully requests this Court for leave to intervene to assert its claims to a senior federal reserved right to the surface and underlying groundwaters of Ramona Reservation within the Anza Basin portion of the Santa Margarita River Watershed. The Band seeks intervention as of right, or in the alternative, permissive intervention. The Ramona Band of Cahuilla is a sovereign Indian tribe recognized as such by the United States. 65 FR 13298-01, 13301, List of Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs. The Ramona Band's use and occupancy of land and water in the Santa Margarita River Watershed and the Anza Basin in particular long pre-dates the arrival of Europeans. The Band's reservation, which was established in 1891, is located at the extreme northeastern corner of the Santa Margarita River Watershed, in the Anza Basin. Of the 560 acres of the Ramona Reservation, approximately 321 are located in the watershed that is the subject of this case.

When this case was filed in 1951, the United States as trustee of the Ramona Band of Cahuilla asserted claims to water on the Band's behalf. In 1962, this Court ruled that the United States, when it created the Ramona Reservation in 1891, intended to reserve for the Band's use sufficient water from the Santa Margarita River stream system for the Band's "present and future needs." This Court also ruled that the Band's federal reserved water right had a priority date of December 29, 1891, the date the federal government created the Ramona Reservation. This Court deferred, however, the task of quantifying that right until changing circumstances required resolution of that question. *Findings of Fact, Conclusions of Law and Interlocutory Judgment No. 41 Concerning the Rights to the Use of Waters of Santa Margarita River Stream System Held in Trust by the U.S.A. in Connection with the Ramona, Cahuilla and Pechanga Indian Reservations*, November 8, 1962, at pages 19, 24 (hereafter "Interlocutory Judgment No. 41"). Because the Ramona Band's economic development plans require certainty with regard to its water rights, and because extensive water use in the Anza Basin and anticipated further residential and commercial development is interfering with the Band's federal reserved water right, the time for a final quantification determination has arrived.

The United States, as trustee for the Ramona Band of Cahuilla, asserted the original claims on the Band's behalf in the early stages of this litigation, and has represented the Band in the case throughout the pendency of this suit. Although the United States will continue to participate in this case as the Band's trustee, the final quantification of the Band's water rights requires its participation as a full party plaintiff. As set forth below, the Band satisfies all four requirements for intervention as of right. In the alternative, this Court should exercise its discretion to grant the Band permissive intervention.

## ARGUMENT

### I. THE RAMONA BAND OF CAHUILLA IS ENTITLED TO INTERVENE AS OF RIGHT

Rule 24(a) of the Federal Rules of Civil Procedure establishes a four-part test for intervention as of right: a) timeliness; b) assertion of an interest relating to the subject matter of the action; c) practical impairment of the party's ability to protect that interest; and d) inadequate representation by the parties to the action. In the Ninth Circuit, these requirements are construed "broadly in favor of intervention." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993).

#### A. The Motion to Intervene is Timely.

Timeliness is to be determined "from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366 (1973). The Ninth Circuit has instructed courts to evaluate timeliness according to three sub-factors: 1) the stage of the proceedings at which an applicant seeks to intervene; 2) the prejudice to the other parties; and 3) the reason for and the length of the delay. *League of Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). The Ramona Band of Cahuilla's motion is timely under each of these.

##### 1. The Band Has Not Waited Too Long To Intervene.

The United States filed this case in 1951. *United States v. Fallbrook Public Utility District, et al*, 101 F. Supp. 298 (S.D. Cal. 1951). Despite the long passage of time since the filing of the suit, with regard to the water rights of Indian tribes in the watershed, the case is still in an interlocutory phase. From the beginning, "because of the complexities of this litigation," this Court has adjudicated water rights in the Santa Margarita Watershed in "segments of the watershed involving

1  limited areas and numbers of defendants...." Modified Final Judgment and Decree, April 6, 1963,
2  at page 1. This Court reached the Indian water rights issues 11 years after the case was filed, but
3  those rights have not been completely and finally adjudicated.
4      Accordingly, in 1962, this Court partially adjudicated the federal reserved water right of the
5  Ramona Band of Cahuilla. The Court ruled that when the United States created the Ramona
6  Reservation, it intended to reserve from the waters of the Santa Margarita River stream system
7  sufficient amounts of water to satisfy the "present and future needs" of the Band, and that the priority
8  date for such right is December 29, 1891. Interlocutory Judgment No. 41, at page 19. Interlocutory
9  Judgment No. 41 was entered as a final judgment on May 8, 1963. Final Judgment and Decree, at
10 page 5. The Court of Appeals affirmed the judgment. *United States v. Fallbrook Public Utility*
11 *District*, 347 F.2d 48, 61 (9th Cir. 1965). This Court entered a Modified Final Judgment and Decree
12 on March 25, 1966.
13     In none of these judgments nor rulings was the Band's water right quantified, however:

> There is no issue presently presented which requires this Court to make findings of fact, conclusions of law or interlocutory judgment provisions concerned with the amount of water required for the Indians' use, the rights of any future assignees or successors in interest to said lands, and other related factors. As this Court will keep continuing jurisdiction of this cause, this Court can, if the occasion should arise in the future, make such findings and judgment provisions as may be then required on these issues

18 Interlocutory Judgment No. 41, Findings of Fact, ¶ 12, page 4. In the 1966 Modified Final Judgment
19 and Decree, this Court retained jurisdiction for this and other purposes. The Band wishes to
20 intervene in this action in order to have this Court complete the adjudication of its federal reserved
21 water right.
22     The mere passing of time is not dispositive of the timeliness inquiry. *NAACP v. New York,*
23 *supra*, at 366 ("Although the point to which the suit has progressed is one factor in the determination
24 of timeliness, it is not solely dispositive.") As this Court acknowledged, there is substantial
25 additional work required to complete the process of adjudication begun in 1951. The Ninth Circuit
26 has recognized that "a party's interest in a specific phase of a proceeding may support intervention at
27 that particular stage of the lawsuit." *United States v. Alisal Water District*, 370 F.3d 915, 921-922
28 (9th Cir. 2004). The need for quantification of the Band's water right has arisen only recently, in the

wake of threats to the Band's water supply from aggressive private residential and commercial development plans in the Anza Basin. This is precisely the kind of circumstance that this Court noted might trigger the need for additional proceedings to quantify the Band's right. Intervention before this date was simply not necessary nor warranted in light of the Band's relative isolation from other water disputes that commanded this Court's attention in the intervening years.

The circumstances here are analogous to those in *Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382 (1983), in which the Supreme Court granted intervention to five Indian tribes that sought to participate in a water rights suit 28 years after it was filed. The tribes sought intervention to seek additional water in a supplemental decree covering land areas for which claims had not been previously asserted by the United States on the tribes' behalf. From the tribes' perspective, the decree was not yet complete, just as the Ramona decree here is not yet complete in terms of quantification. Because the tribes' intervention there would not prejudice the other parties, the Court concluded the tribes' motions "are sufficiently timely with respect to this phase of the litigation." *Id.* at 615.

        2.      <u>No Party Is Prejudiced By the Band's Intervention.</u>

Courts have recognized several kinds of prejudice that weigh against intervention, none of which apply here. First, this is not a case where the Band's participation would delay resolution of other issues in the case. Even if it were, this kind of delay by itself cannot cause prejudice to the parties; otherwise intervention motions would always be denied because by definition such motions carry the "prospect of prolonging the litigation." *League of Latin American Citizens v. Wilson, supra* at 1304. Second, this is not a case where granting the Band's intervention would unduly complicate the issues or inject new issues into the case. *United State v. Alisal Water District, supra* at 922 (denying intervention because it would inject new issues into the case). This Court specifically reserved the quantification determination for future proceedings, so the parties have been on notice since the early stages of the case that this issue would be litigated at some later time. Third, this is not a case where the Band seeks to upset or modify carefully negotiated settlement terms. *United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990) (denying motion of Makah Indian Tribe to intervene to challenge Columbia River fish management plan). Fourth, the Band is not seeking to intervene at a

1  time when this litigation is "beginning to wind itself down." *League of Latin American Citizens v.*
2  *Wilson, supra* at 1304. This Court has retained jurisdiction, not only over the Indian water rights
3  issues, but also over "all surface flows of the Santa Margarita River Watershed and all underground
4  waters determined by the Court to be subsurface flows of streams or creeks or which is determined
5  by the Court to add to, support or contribute to the Santa Margarita River stream system." *Santa*
6  *Margarita River Watershed Annual Watermaster Report, Water Year 2003-04, August, 2005* at page
7  1. The Watermaster's annual report summarizes the on-going issues with water use pursuant to this
8  Court's decrees, some of which no doubt will require this Court's resolution.
9       Thus, no party is prejudiced by resolution of the previously deferred issues of quantification.
10             3.    <u>The Ramona Band Has Not Unreasonably Delayed in Moving to Intervene.</u>
11      An applicant must intervene "when he knows or has reason to know his interests might be
12  adversely affected by the outcome of the litigation." *United States v. Oregon, supra* at 589. The
13  timing of the Ramona Band's motion to intervene is consistent with this rule. It is not necessary for
14  this Court to determine when the Band knew or should have known that its interests might be
15  affected by this litigation. Since the inception of the suit, the United States as trustee has been
16  representing the Band. Moreover, this Court's 1962 interlocutory judgment strongly suggests that
17  final quantification of the Band's water right legitimately could be delayed indefinitely. In practical
18  effect, the Court's partial decree allowed the Band to determine for itself the appropriate time and
19  circumstance to seek a quantification of its adjudicated federal reserved water right. If competition
20  for scarce water supplies were to intensify, the task begun in 1951 could be completed in a
21  quantification proceeding. As a result, under the terms of the partial decree, the Band was fully
22  justified in waiting until its economic development plans required legal certainty before asking this
23  Court to quantify its rights. In fact, in the absence of a compelling need for a judicial decree, a
24  motion to intervene by the Band might have raised issues too abstract or hypothetical to justify this
25  Court's time and effort. The Band has not unreasonably delayed in seeking intervention.
26  ///
27  ///
28  ///

### B. The Ramona Band Asserts an Interest Related to the Subject Matter of This Action.

The interest test is a "practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). Because the Ramona Band has an undeniably strong interest in a perfected and final quantified water right, the Band satisfies this prong of Rule 24(a). It is axiomatic that an adequate supply of water that is permanently protected against diminution is critical to the Ramona Band's economic, cultural and political development as a sovereign Indian nation in the modern world. This Court's 1962 ruling that the Band's federal reserved water right derives from the creation of the Ramona Reservation, and has a priority date of 1891, without question gives the Band an interest in the subject of this lawsuit.

This case is an adjudication of rights to water in the Santa Margarita River Watershed, including the portion of the watershed in which the Band's reservation is located. As such, it may be the only forum available to the Ramona Band to perfect its federal water right. The Supreme Court has underscored the importance of tribal participation in water rights adjudications that affect the tribes' interests in securing water for their present and future needs: "[T]he Indians' participation in [water rights] litigation critical to their welfare should not be discouraged." *Arizona v. California, supra* at 615. The interest requirement is satisfied.

### C. The Disposition of This Action in the Ramona Band's Absence Would, as a Practical Matter, Impair the Band's Interest.

The third requirement is that the applicant be "so situated that the disposition of the action may, as a practical matter impair or impede the applicant's ability to protect that interest." Rule 24(a)(2). As the Ninth Circuit has noted, "[R]ule 24 refers to impairment 'as a practical matter.' Thus, the court is not limited to consequences of a strictly legal nature." *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1498 (9th Cir. 1995). Here, there are both legal and practical consequences for the Ramona Band should this action be finally concluded without quantification of its water right.

The legal consequence is that the Ramona Band would likely be precluded from relitigating in a separate action any of the issues already decided by this Court in Interlocutory Judgment No. 41.

It is settled law that the actions of the United States as trustee bind Indian tribes as beneficiaries. As the Supreme Court held in *Arizona v. California*: "The Tribes' interests in the water of the Colorado basin have been and will continue to be determined in this litigation since the United States' action as their representative will bind the Tribes to any judgment." 460 U.S. at 615; *see also, Canadian St. Regis Band of Mohawk Indians v. State of New York*, 146 F. Supp.2d 170, 189 (N.D. N.Y. 2001) (tribe precluded from bringing claim to land that had been adjudicated previously in an action brought by the United States on its behalf). The United States represents the Ramona Band in the same trusteeship capacity in this action, so the same rule would likely preclude the Band from litigating these issues in a separate action.[1] The United States and the Ramona Band are joined together in this action, and that insuperable connection means that the Band's distinct interest will be impaired if this action is taken to final judgment in its absence.

**D.     The Ramona Band's Interests Are Not Adequately Represented by Any Party.**

This requirement is satisfied if the applicant shows that representation by other parties "may be" inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538, n. 10 (1972). The applicant's burden in meeting this requirement "should be treated as minimal." *Id.* In applying this requirement, the Ninth Circuit has directed that the "focus should be on the 'subject of the action,' not just the particular issues before the court at the time of the motion." *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001). In deciding this issue, this Court should consider whether any party "will undoubtedly make all of the intervenor's arguments," whether any party "is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). Further, "the applicant should be treated as the best judge of whether the existing parties adequately represent his or her interests, and . . . any doubt regarding adequacy of representation should be resolved in favor or the proposed intervenors." 6 James Wm.

---

[1] Those issues include the purpose for which the Ramona Reservation was created, which in large part determines the standard of water right quantification; the priority date of the water right, whether time immemorial or the date the reservation was created; the number of arable acres on the reservation in 1963; and the water duty for a cropping pattern that this Court limited to row crops, pasture, alfalfa, fruit, small grains, avocados and citrus.

Moore et al., *Moore's Federal Practice* § 24.03[4][a] (3d ed.), cited with approval in *Miami Tribe of Oklahoma v. Walden*, 206 F.R.D. 238 (S.D. Ill. 2001).

No party to this action can adequately represent the Ramona Band's interest in this action. The Ramona Band has made the independent judgment that at this critical time in its history, its water rights must be quantified in order to ensure it has adequate water supplies necessary to achieve economic self-sufficiency. Through the Band's action, this case has now reached the pivotal stage of quantification. The Band should therefore be permitted to participate in the case as a party. No other party is capable of adequately representing the unique legal interests of the Ramona Band in this proceeding. No other party can fully grasp the significance of water for the Band; no other party can present the necessary evidence about the Band's history and water use; and no other party can be expected to assert the Band's claims in the manner the Band itself will present them. The other parties are either likely competitors for the Band's water, or have no incentive or inclination to represent its interests.

This conclusion holds true for the United States as well, even though its status as trustee obligates it to continue to represent the Band in this case. The Supreme Court has held in very similar circumstances that the United States cannot adequately represent the interests of Indian tribes in water rights adjudications because "the Indians are entitled to take their place as independent qualified members of the modern body politic." *Arizona v. California, supra* at 615. (internal quotations and citations omitted). This is consistent with the general rule that the Ramona Band needs to make a showing only of minimal inadequacy. If it demonstrates that the existing parties' interests "are not completely identical to and may come into conflict with its own interests," the Band's burden is met. *Miami Tribe of Oklahoma v. Walden, supra* at 243.

Here, although the United States and the Band share the same ultimate objective – a final quantification of the Band's water rights – the interests of the Band are not identical to those of the United States.[2] The difference derives from the nature of the federal interest here. With regard to

---

[2] The interests of the Ramona Band and the United States do not now conflict, although the Band notes that the federal government also has a trust duty to represent the Cahuilla Tribe of Indians, whose reservation is located in the general vicinity of the Ramona Reservation. Should

the Indian water claims, the United States sued both on its own behalf and on behalf of the tribes as trustee. The federal government's separate and distinct interest in its own right is sufficiently different from the more narrow interest of the Ramona Band to make federal representation inadequate for purposes of Rule 24. *See Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995) (the Forest Service cannot adequately represent the interests of local governments because it is required to represent a "broader view.") The federal government has largely unreviewable discretion to decide which claims to bring and on what legal theory. *Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476 (D.C. Cir. 1995). Whether or not the Ramon Band agrees with those litigation decisions, it is critical that the Band participate in the case as a separate party to ensure that any disagreements that might arise do not prejudice the Band and the ultimate vindication of its water rights. For these reasons, the United States cannot adequately represent the Ramona Band here.

## II. THE RAMONA BAND OF CAHUILLA IS ENTITLED TO PERMISSIVE INTERVENTION

If this Court determines that the Ramona Band is not entitled to intervention as of right, it should nonetheless be permitted to intervene under Rule 24(b). Permissive intervention is granted when "an applicant's claim or defense and the main action have a question of law or fact in common." *Beckman Industries, Inc. v. International Co.*, 966 F.2d 470, 472 (9th Cir. 1992). The existence of a "common question" is liberally construed. *Stallworth v. Monsanto*, 558 F.2d 257, 265 (5th Cir. 1977). Permissive intervention is a question committed to the sound discretion of this Court. *Donnellly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). Rule 24(b) also directs the court to consider whether intervention "will unduly prejudice the adjudication of the rights of the original parties."

---

a conflict arise between these tribes with regard to this case, the United States as a practical matter could not represent both Ramona and Cahuilla on their conflicting claims. *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992) (Because of its role as trustee, the Government cannot sufficiently represent the competing interests and divergent concerns of different tribes). The potential for conflict underscores the necessity of the Ramona Band's participation in this suit as a separate party.

The Ramona Band satisfies this standard. The Band's claim to a sufficient supply of water from the watershed that is the subject of this case seeks resolution of legal and factual issues that were deferred in the 1962 Interlocutory Judgment. There is obvious commonality between the issues of quantification the Band seeks to raise now and the issues preserved for further proceedings in 1962. Moreover, no party is prejudiced by the Band's permissive intervention because, again, this Court reserved the quantification proceeding for a later time, and all parties are on notice that at some future time that proceeding would be held. In sum, permissive intervention should be granted because the Ramona Band's participation will significantly contribute to the resolution of outstanding issues and to the "just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Board of Education*, 552 F.2d 1326, 1329 (9th Cir. 1977). Finally, the Supreme Court granted permissive intervention to five Indian tribes asserting additional water rights claims in an on-going general stream adjudication in which the United States represented them as trustee. *Arizona v. California, supra.* The same rationale applies here: "[t]he Indians' participation in litigation critical to their welfare should not be discouraged." *Id.* at 615.

## CONCLUSION

For the foregoing reasons, the motion should be granted.

Dated: October 16, 2006

Respectfully submitted,

ALEXANDER, BERKEY, WILLIAMS & WEATHERS LLP

By: _____
Curtis G. Berkey
Scott W. Williams
2030 Addison Street, Suite 410
Berkeley, California 94704
Tel: (510) 548-7070
Fax: (510) 548-7080

*Attorneys for Proposed Plaintiff-Intervenor,
Ramona Band of Cahuilla*