ORIGINAL

FILED
07 APR 23 PM 12:13
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

1  Curtis G. Berkey (CA State Bar No. 195485)
   Scott W. Williams (CA State Bar No. 097966)
2  ALEXANDER, BERKEY, WILLIAMS & WEATHERS LLP
   2030 Addison Street, Suite 410
3  Berkeley, CA 94704
   Tel: 510/548-7070
4  Fax: 510/548-7080
   E-mail: cberkey@abwwlaw.com
5  E-mail: swilliams@abwwlaw.com

6  *Attorneys for Plaintiff-Intervenor*
   *Ramona Band of Cahuilla*
7
   Marco Gonzales (CA State Bar No. 190832)
8  COAST LAW GROUP LLP
   169 Saxony Road, Suite 204
9  Encinitas, CA 92024
   Tel: 760/942-8505
10 Fax: 760/942-8515

11 *Attorney for Plaintiff-Intervenor*
   *Cahuilla Band of Indians*
12
   Susan M. Williams (Pro Hac Vice)
13 Sarah S. Works (Pro Hac Vice)
   WILLIAMS & WORKS, P.A.
14 P.O. Box 1483
   Corrales, NM 87049
15 Tel: 505/899-7994
   Fax: 505/899-7972
16 E-mail: swilliams@williamsandworks.net

17 *Attorneys for Plaintiff-Intervenor*
   *Cahuilla Band of Indians*
18

                    UNITED STATES DISTRICT COURT
19
                 FOR THE SOUTHERN DISTRICT OF CALIFORNIA
20

21 | UNITED STATES OF AMERICA, | ) CIVIL NO.: 1247-SD-C
22 |           Plaintiff, | ) **PLAINTIFF-INTERVENORS'**
                          | ) **MEMORANDUM OF POINTS AND**
23 | RAMONA BAND OF CAHUILLA, CAHUILLA | ) **AUTHORITIES IN SUPPORT OF**
   | BAND OF INDIANS, | ) **JOINT MOTION FOR ORDER ON**
24 |           Plaintiff-Intervenors, | ) **SERVICE AND NOTIFICATION OF**
                                       | ) **TRIBAL WATER RIGHTS CLAIMS**
25 | v. | )
                                       | ) Date:    June 4, 2007
26 | FALLBROOK PUBLIC UTILITY DISTRICT, | ) Time:    2:00 p.m.
   | et al., | ) Courtroom: 8
27 |           | ) Hon. Gordon Thompson, Jr.
28 |           Defendants. | ) **ORAL ARGUMENT BY**
                           | ) **TELEPHONIC CONFERENCE**
                           | ) **REQUESTED**

Case No.: 05cv1247

# TABLE OF CONTENTS

| | | |
|---|---|---:|
| A. | Introduction | 1 |
| B. | Scope of This Litigation | 1 |
| C. | Legal and Factual Bases of Tribal Water Rights in This Case | 2 |
| D. | The Extraordinarily Large Number of Parties and the Cost and Difficulty of Determining Their Identities Justify Special Service and Notification Procedures | 3 |
| E. | The Tribes' Proposed Service Procedures Satisfy Due Process | 5 |
| | 1. Parties and Water Users in the Anza, Cahuilla and Terwilliger Valleys | 6 |
| | 2. Water Purveyors and Substantial Water Users | 7 |
| | 3. Water Users on the Approved Service List | 8 |
| | 4. Water Users Downstream of Anza, Cahuilla and Terwilliger Valleys | 9 |
| | 5. Notice by Publication and Web Posting/Access | 9 |
| F. | Conclusion | 10 |

# TABLE OF AUTHORITIES

## CASES

*City of Pasadena v. City of Alhambra*,
    33 Cal.2d 908 (Cal. 1949) .................................................. 8

*City of Philadelphia v. Morton Salt Co.*,
    248 F.Supp. 506 (D.C. Pa. 1965) .......................................... 3

*F.J. Hanshaw Enterprises, Inc. v. Emerald River Development, Inc.*,
    244 F.3d 1128 (9th Cir. 2001) ............................................. 3

*Hagmeyer v. U.S. Department of Treasury*,
    647 F.Supp. 1300 (D.D.C. 1986) .......................................... 4

*Heileman Brewing Co., Inc. v. Joseph Oat Corp.*,
    871 F.2d 648 (7th Cir. 1989) .............................................. 3

*Mennonite Board of Missions v. Adams*,
    462 U.S. 791 (1983) ....................................................... 5

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .................................................... 5, 10

*Pitts ex rel. Pitts v. Seneca Sports, Inc.*,
    321 F.Supp.2d 1353 (S.D. Ga. 2004) ....................................... 5

*In re Rights to the Use of the Gila River*,
    171 Az. 230, 830 P.2d 442 (Ariz. 1992) .................................. 10

*State of Georgia v. City of East Ridge Tenn.*,
    949 F.Supp. 1571 (N.D. Ga. 1996) ......................................... 3

*State of Washington v. Acquavella*,
    100 Wash. 2d 651, 674 P.2d 160 (Wash. 1983) ............................. 8

*United States v. Fallbrook Public Utility District*,
    108 F.Supp. 72 (S.D. Cal. 1952) .......................................... 1

*United States v. Fallbrook Public Utility District*,
    347 F.2d 48 (9th Cir. 1965) ............................................ 1, 2

## MISCELLANEOUS

4 C Wright & Miller, *Federal Practice and Procedure* § 1063 ................ 4

## RULES AND REGULATIONS

Fed.R.Civ.Proc. Rule 4 ....................................................... 4

Fed.R.Civ.Proc. Rule 5 .................................................. 1, 3, 5

Fed.R.Civ.Proc. Rule 24 ...................................................... 3

### A. Introduction.

Pursuant to Fed.R.Civ.Proc. Rule 5, and this Court's inherent authority, Plaintiff-Intervenor Ramona Band of Cahuilla (Ramona) and Plaintiff-Intervenor Cahuilla Band of Indians (Cahuilla) (collectively "Tribes") move for an order establishing procedures for service of the Tribes' complaints-in-intervention and notification of the Tribes' intent to seek final quantification of their water rights. On January 22, 2007, this Court granted the Tribes' motions to intervene as plaintiffs to assert water rights claims in the Anza Groundwater Basin and Cahuilla Groundwater Basin areas of the Santa Margarita River Watershed. The complaints-in-intervention were filed with the Court on January 23, 2007.

### B. Scope of This Litigation.

The United States filed this action in 1951 to quiet title to its rights to water from the Santa Margarita River and its tributaries. In an early stage of this proceeding, this Court found that the public interest required that "all rights to the use of water in the Santa Margarita River system of all parties to this action be determined as against the others," and this Court therefore dispensed with the necessity of other water users filing cross-claims against the United States. *United States v. Fallbrook Public Utility District*, 108 F. Supp. 72, 75 (S.D. Cal. 1952). The United States initially named 50 defendants. An amended complaint named approximately 1,000 defendants and for a subsequent trial, the United States filed complaints against more than 3,000 defendants. Robert C. Miller, "The Fallbrook Case: A Study of the Struggle for Water Rights in the Santa Margarita River of Southern California, 1949-1968," (1987) at page 17 (unpublished masters degree thesis). This Court determined to resolve the myriad issues presented in the case by a series of interlocutory judgments confined to particular areas of the Santa Margarita River Watershed. By 1963, this Court had issued 43 such interlocutory judgments, which established *prima facie* water rights appurtenant to lands covering an area of more than 742 square miles. The interlocutory findings of fact, conclusions of law and judgments were entered as a final judgment on May 8, 1963. The Court of Appeals affirmed the final judgment, with modifications not relevant here, in 1965. *United States v. Fallbrook Public Utility District*, 347 F.2d 48 (9th Cir. 1965).

C. **Legal and Factual Bases of Tribal Water Rights in This Case.**

From the beginning of the case, the United States in its capacity as trustee has represented the interests of the Ramona Band of Cahuilla and the Cahuilla Band of Indians, both federally-recognized Indian tribes. Recently, the Tribes sought and were granted intervention to assert their water rights claims as co-plaintiffs with the United States. Order dated January 22, 2007. Throughout this case, the Tribes' water rights have been based on the legal theory of federal reserved rights derived from the establishment of their reservations between 1875 and 1891. The Ramona Reservation, created by presidential executive order in 1891, is comprised of 560 acres in the far northeastern portion of the Santa Margarita River Watershed in the Anza Valley. The Cahuilla Reservation, comprised of 18,884 acres and located in the Anza, Cahuilla and Terwilliger Valleys, was created by a series of executive orders from 1875 to 1891. For the Ramona Reservation, approximately 321 acres lie within the Watershed, and for the Cahuilla Reservation, approximately 17,924 acres are within the Watershed.

In 1962, this Court partially adjudicated the Tribes' water rights, by ruling the Tribes are entitled under their federal reserved water rights to sufficient amounts of water to satisfy their present and future needs; establishing the number of acres on each Reservation capable of crop production; setting senior priority dates for the Tribes' federal reserved water rights; and establishing an appropriate water duty for sustainable and economically feasible crops on the respective Reservations. *Findings of Fact, Conclusions of Law and Interlocutory Judgment No. 41 Concerning the Rights to the Use of Waters of Santa Margarita River Stream System Held in Trust by the U.S.A. in Connection with the Ramona, Cahuilla and Pechanga Indian Reservations*, November 8, 1962. This Court stopped short of entering a final quantification decree, however, reserving that question until the circumstances on the Tribes' Reservations and surrounding areas required certainty and finality with regard to tribal water rights. Interlocutory Judgment 41 was entered as a final judgment in 1963 and the Court of Appeals affirmed it in 1965. *United States v. Fallbrook Public Utility District*, 347 F.2d 48, 61 (9th Cir. 1965).

Since the entry of Interlocutory Judgment 41 as a final judgment over 40 years ago, the areas surrounding the Tribes' Reservations have undergone substantial and widespread residential

and commercial development, and the water used for these purposes threatens to deprive the Tribes of the water to which they are entitled under federal law for their present and future needs. Additional development, which will take even more water, is planned. This Court thus granted the Tribes intervention to permit the complete and final quantification of their water rights and to protect their access to their water resources. Following service of the complaints-in-intervention and notification of the Tribes' water rights claims, the Tribes will move for an order confirming and finalizing their water rights.

### D. The Extraordinarily Large Number of Parties and the Cost and Difficulty of Determining Their Identities Justify Special Service and Notification Procedures.

This Court's authority to adopt service and notification measures specifically tailored to the unique circumstances of this case derives from the terms of Fed.R.Civ.Proc. Rule 5(a) and from this Court's inherent power to manage its docket in order to promote the "just, speedy, and inexpensive determination of every action." *See, e.g., F.J. Hanshaw Enterprises, Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001); *Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 652-653 (7th Cir. 1989). Rule 5(a) provides that "every pleading subsequent to the original complaint" shall be served upon each party "unless the court otherwise orders." For parties represented by attorneys, service under Rule 5(a) is to be made on the attorney, "unless the court orders service on the party." Rule 5(b). Service may be carried out in person or by mail to the recipient's last known address. No summons is required. Rule 5(b)(2)(A) and (B).

The Tribes' complaints-in-intervention are plainly "pleadings filed subsequent to the original complaint" in this case, and service is, therefore, governed by the Rule 5 requirements. Rule 24 (c) provides that the motion to intervene and the complaint-in-intervention shall be served "upon the parties as provided in Rule 5." Federal courts have consistently interpreted intervention complaints as pleadings filed subsequent to the original complaint under Rule 5(a). *See, e.g. State of Georgia v. City of East Ridge Tenn.*, 949 F. Supp. 1571, 1582 (N.D. Ga. 1996); *City of Philadelphia v. Morton Salt Co.*, 248 F. Supp. 506, 509 (D.C. Pa. 1965) (service of intervenor complaints on defendant's attorney is proper under Rule 5(b)).

The service of process rules set out in Rule 4, which require the issuance of a summons by the court, do not apply here because their primary function is to "provide the mechanisms for bringing notice of the commencement of an action to the defendant's attention and to provide a ritual that marks the court's assertion of jurisdiction over the lawsuit." 4 C Wright & Miller, *Federal Practice and Procedure* § 1063, at 204. This action commenced long ago and this Court has had continuing jurisdiction over the defendants since the 1950s. In any event, the propriety of service "should turn on its own facts within the limits of the flexibility provided by the Rule itself," consistent with the "modern conception of service of process as primarily a notice-giving device." *Hagmeyer v. U.S. Dept. of Treasury*, 647 F. Supp. 1300, 1303 (D.D.C. 1986) (internal citations omitted). This Court thus has discretionary authority to fashion service and notice rules that fit the special circumstances of this case.

Due to the large number of original defendants and widespread changes in land ownership and water use since the inception of this case in 1951, the Tribes seek approval for special service and notice procedures that provide effective notice but do not require them to serve the complaints-in-intervention on each and every party and water user. Despite reasonable efforts and due diligence, the Tribes have been unable to determine the identities of the current defendants and the precise location of the lands subject to the water rights decrees in this case and this Court's continuing jurisdiction. *See generally* Declaration of Curtis G. Berkey, attached. The Office of the Watermaster, established by this Court in 1989, and charged with the responsibility to maintain a list of all water users within the Watershed, does not maintain a current list of such defendants. Counsel has been able to ascertain the identities of those water users the Watermaster regards as "substantial users," whether or not they are also defendants. Order for the Appointment of a Watermaster; Powers and Duties, March 13, 1989.

The task of tracing land titles from the original 1962 lists of landowner defendants to current successor landowners would be herculean and beyond the financial means of the Tribes. The parcel or lot maps included as exhibits to the interlocutory judgments in 1962 use a unique and different format from the one the counties' modern plat maps use to show current land ownership. Identifying the successors to the landowners who participated as parties in the 1960s and whose

1  rights were decreed in the interlocutory judgments would therefore be a monumental task. Berkey
2  Declaration at ¶¶ 4-8.
3        The Ramona Reservation overlies the Anza Ground Water Basin in the Anza Valley. The
4  Cahuilla Reservation overlies the Anza Basin Ground Water Basin and the Cahuilla Ground
5  Water Basin. The threat to the Tribes' water supply originates in the Anza, Cahuilla and the
6  Terwilliger Valleys. Because the Tribes do not have the financial resources to conclusively
7  identify the parties and successors to parties in these areas, the Tribes' propose service procedures
8  that include essentially all of the water users and landowners there, regardless of party status. For
9  this area, the Tribes' service proposal may be somewhat overinclusive, but it is nonetheless more
10 economical and reasonable than determining a list of current successor landowners. Elsewhere in
11 the Santa Margarita River Watershed, the Tribes propose to serve only substantial water users,
12 persons on the Approved Service List and others by publication of notice, as set forth below.
13       **E.   The Tribes' Proposed Service Procedures Satisfy Due Process.**
14       The Tribes request an order authorizing and directing the Tribes to fulfill their service
15 obligations under Rule 5 by means of first-class mailings, publication in newspapers of general
16 circulation, posting in libraries, and creation of a website on which the complaints and other
17 relevant information can be accessed. The procedures proposed by the Tribes are designed to
18 ensure that all parties and other water users whose interests might be affected by the Tribes' water
19 rights claims are notified and given an opportunity to be heard.
20       These procedures comport with fundamental notions of due process. "Constitutional due
21 process requires that notice of adverse judicial action be reasonably calculated to apprise the
22 defendant of the action and afford an opportunity to defend." *Pitts ex rel. Pitts v. Seneca Sports,*
23 *Inc.*, 321 F.Supp.2d 1353, 1360 (S.D. Ga. 2004) (citing *Mullane v. Central Hanover Bank & Trust*
24 *Co.,* 339 U.S. 306 (1950)). Service and notice by mail satisfies minimal constitutional due
25 process requirements. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983). Service by
26 mail, which Rule 5(b) expressly sanctions, along with widespread publication and web-access, are
27 reasonably calculated means under these circumstances to inform the existing parties, and other
28 interested water users, of the Tribes' claims.

The Tribes' service proposal is targeted at five principal groups: 1) parties, successors to parties and water users in the Anza, Cahuilla and Terwilliger Valleys; 2) water purveyors and substantial water users throughout the Santa Margarita River Watershed, as determined by the Watermaster; 3) water users and others on this Court's Approved Service List; 4) certain landowners downstream of Cahuilla Ground Water Basin extending to Vail Lake, along the mainstems of Cahuilla Creek and Wilson Creek (to be served by the Cahuilla Band only); and 5) other water users with a probable interest in the Tribes' claims but not included within these groups. The notice procedures and rationale for each of these groups are discussed below.

### 1. Parties and Water Users in the Anza, Cahuilla and Terwilliger Valleys

For this group, the Tribes propose service by first class mail of a Court-approved written Summary of the Tribes' Water Rights Claims. Each landowner in the Anza, Cahuilla and Terwilliger Valleys, as determined by the Assessor Parcel Number (APN) List prepared and maintained by the County of Riverside, will be served. The Summary will also include instructions for obtaining a copy of the complaints-in-intervention for those who desire them. We also propose to notify recipients of a 45-day deadline for responding to the Tribes' claims by either appearing and filing a response for existing parties, or by filing a motion to intervene for non-parties. A proposed Summary is attached to the Proposed Order.

The rationale for this approach, which is more inclusive than for the other groups, is based on the fact that the greatest threat to the security of the Tribes' rights to an adequate present and future supply of water comes from groundwater users in these areas. Conversely, it is believed there are a large number of non-Indian water users in the Anza Ground Water Basin and Cahuilla Ground Water Basin near and adjacent to the Tribes' Reservations may have an interest in responding to the Tribes' claims. As a result, the Tribes' service proposal provides the broadest scope of coverage to this group.

Based on Riverside County real property tax records, we estimate this group of water users to include approximately 3,446 persons, corporations, organizations and entities. To the best of our knowledge, this list includes both successors to parties (and perhaps original parties as well) and non-parties who are nonetheless pumping or obtaining groundwater or intend to do so. As

noted, due to the Tribes' limited resources, the state of the record and the long passage of time, it is not possible with due diligence and reasonable cost to separate the parties from the non-parties on this list.

The Tribes' proposal ensures the widest possible scope for the binding effect of a decree establishing the Tribes' water rights, while at the same time promoting the interests of judicial economy. Consistent with notions of fundamental due process, virtually all of the water users in the Anza, Cahuilla and Terwilliger Valleys within the Santa Margarita River Watershed would be given an opportunity to respond to the Tribe's claims by filing a response (for current parties) or by intervening or otherwise participating in the adjudication (for non-parties).

2. <u>Water Purveyors and Substantial Water Users</u>

The Tribes propose to serve by first class mail the complaints-in-intervention and a written Summary of the Tribes' Water Rights Claims to each water purveyor in the Santa Margarita River Watershed and to those persons and entities included on the Watermaster's Substantial Water Users List. The Summary will include the same instructions for responding to the Tribes' claims as noted above.

The water purveyors and water users outside organized water service areas within the Santa Margarita River Watershed may have an interest in responding to the Tribes' water rights claims, even though they are located considerable distances from the Tribes' Reservations. Some of these persons or entities may be named defendants in the case, but, despite due diligence on the part of the Tribes, their identities as parties cannot be confirmed without a large expenditure of funds the Tribes do not have available. The Municipal Water Purveyors include: Eastern Municipal Water District, Elsinore Valley Municipal Water District, Fallbrook Public Utility District, Rainbow Municipal Water District, Rancho California Water District, Murrieta County Water District, and United States Marine Corps Camp Pendleton. The Tribes' list of substantial users is taken from Appendix C to the *Santa Margarita River Watershed* Annual Watermaster Report, Water Year 2004-2005, published in August, 2006. This Court's Order for the Appointment of a Watermaster defined "substantial user" as "any person that claims a right to use water under the orders, judgments or decrees of this Court . . . and any person previously

1 designated by this Court or the Watermaster to be a substantial user." Order of March 13, 1989.
2 It is believed that the practice of the Watermaster is to treat any person or entity irrigating more
3 than eight acres as a "substantial water user." Under this definition, the Watermaster treats 31
4 water purveyors and water users as substantial users.

Regardless of the status of the substantial water users as parties or as non-party water users, the Tribes propose to notify this group by means of first class mailing of the complaints-in-intervention with instructions for responding or intervening. Serving only substantial water users outside the Anza, Cahuilla and Terwilliger Valleys is reasonable and justifiable under these circumstances. As the Supreme Court of California observed in a slightly different water adjudication context, "[t]he line must be drawn somewhere in order to bring the proceeding within practical bounds." *City of Pasadena v. City of Alhambra*, 33 Cal.2d 908, 920 (Cal. 1949) (rejecting argument that in water rights adjudication "every person having some actual or potential right to the water in the basin" must be joined in order to render a valid judgment). Moreover, because there is an identity of interest between the water districts and their water user customers, in a "large and complex" water rights adjudication, service on the water districts is constitutionally sufficient to put individual water users on notice of the suit. *See, e.g., State of Washington v. Acquavella*, 100 Wash.2d 651, 674 P.2d 160 (Wash. 1983).

### 3. Water Users on the Approved Service List

For persons and entities on the Approved Service List, the Tribes propose service by first class mail of the complaints-in-intervention and a written Summary of the Tribes' Water Rights Claims. The Summary will include the same instructions for responding to the Tribes' claims as noted above.

In 1989, "[b]ecause of the unusually large number of parties in this litigation," this Court ordered the preparation of an "approved service list" for the service of "all pleadings and Orders of this Court." Order for the Appointment of a Steering Committee, March 13, 1989, IV at page 3. Any party could be added to the list, but that party "may be subject to an assessment for the costs, fees and expenditures of the Watermaster" in an amount to be determined by the Court. Today, the Approved Service List contains 65 persons, corporations, government agencies, water

districts and others. The Tribes propose to serve copies of the complaints-in-intervention with accompanying instructions to each name appearing on this list. Although there may be some overlap between this list and the Substantial Water Users list, service on the entire list is necessary to ensure all substantial water users in the Watershed receive actual notice.

4. <u>Water Users Downstream of Anza, Cahuilla and Terwilliger Valleys</u>

For the group of landowners downstream of the Cahuilla Ground Water Basin extending to Vail Lake within the northern portion of the Aguanga Ground Water Basin along Cahuilla Creek, Wilson Creek, and tributaries including but not limited to portions of Wilson Valley and Lancaster Valley, as described in more detail in Interlocutory Judgment No. 40 and appurtenant exhibits, the Cahuilla Band of Indians proposes service by first class mail of a Court-approved written Summary of the Tribe's Water Rights Claims. Each landowner in this downstream area, as determined by the Assessor Parcel Number (APN) List prepared and maintained by the County of Riverside for that area, will be served. The Summary will also include information for responding and for obtaining a copy of the Cahuilla Band's complaint-in-intervention for those who desire it. A proposed Summary is attached to the Proposed Order.

5. <u>Notice by Publication and Web Posting/Access</u>

Though the procedures set forth above are likely sufficient to ensure actual notice to virtually all of the parties in the Anza, Cahuilla and Terwilliger Valleys, as well as interested water purveyors and substantial water users within the Santa Margarita River Watershed, the Tribes also propose to provide notice by publication to reach the largest number of water users possible. The Tribes propose to publish a notice in two newspapers of general circulation throughout the Watershed, along with instructions for obtaining a copy of the complaints-in-intervention and directions for responding to such pleadings for both parties and non-parties. Copies of the complaints-in-intervention and the instructions will also be placed at the locations where the Annual Watermaster Report is posted: Fallbrook Public Utility District; Rancho California Water District; the Anza Station of the State Department of Forestry and Fire Protection; and the Hamilton School/Library in Anza. In addition, copies of the complaints will be placed in at seven libraries throughout the Watershed. The Tribes also propose to create and

maintain a website on which the complaints-in-intervention will be accessible. The instructions and deadlines for responding to the complaints will also be available there.

For those persons who do not receive actual notice by mailing, these procedures are sufficient to satisfy principles of due process, particularly where, as is the case here, the identities and addresses of those persons cannot be determined with reasonable efforts. *See In re Rights to the Use of the Gila River*, 171 Az. 230, 830 P.2d 442 (Ariz. 1992) (in water rights adjudication involving 849,000 potential claimants, notice by publication satisfies due process where identities and addresses could not be established through reasonable and affordable efforts).

**F.     Conclusion.**

The procedures proposed by the Tribes represent good faith efforts to notify the largest number of parties and water users that might have an interest in responding to the Tribes claims, consistent with the Tribes' resources, the enormous difficulty of ascertaining the identities of the parties and the great diversity of water use and water users within the Santa Margarita River Watershed. As the Supreme Court has observed, "the means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The Tribes' proposal meets that standard, and should, therefore, be approved.

Respectfully submitted,

Dated: April 20, 2007

ALEXANDER, BERKEY, WILLIAMS & WEATHERS LLP

By: /s/ Curtis Berkey
Curtis G. Berkey
Scott W. Williams
2030 Addison Street, Suite 410
Berkeley, California 94704
Tel: 510/548-7070
Fax: 510/548-7080
E-mail: cberkey@abwwlaw.com
E-mail: swilliams@abwwlaw.com

*Attorneys for Plaintiff-Intervenor,
Ramona Band of Cahuilla*

COAST LAW GROUP LLP

By: /s/ Marco Gonzales
Marco Gonzales
169 Saxony Road, Suite 204
Encinitas, CA 92024
Tel: 760/942-8505
Fax: 760/942-8515

*Attorney for Plaintiff-Intervenor,
Cahuilla Band of Indians*

WILLIAMS & WORKS, P.A.

By: /s/ Susan Williams
Susan M. Williams (Pro Hac Vice)
Sarah S. Works (Pro Hac Vice)
P.O. Box 1483
Corrales, NM 87049
Tel: 505/899-7994
Fax: 505/899-7972
E-mail: swilliams@williamsandworks.net

*Attorneys for Plaintiff-Intervenor,
Cahuilla Band of Indians*