Dr. Mary E. Lee
41085 Lakeshore Blvd.
Aguanga, CA 92536
(951) 763-9644
*Defendant Pro Se*

FILED
2008 MAY 27 PM 4:25

CLERKS US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____KWH_____ DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

51cv 1247-GT-RBB

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 08cv1247 |
| Plaintiff, | ) |
| RAMONA BAND OF CAHUILLA, CAHUILLA BAND OF INDIANS, | ) ANSWER OF MARY E. LEE TO RAMONA BAND OF CAHUILLA'S NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE AND FIRST AMENDED COMPLAINT IN INTERVENTION |
| Plaintiff-Intervenors, | ) |
| v. | ) |
| FALLBROOK PUBLIC UTILITY DISTRICT, et al., | ) |
| Defendants. | ) |

## INTRODUCTION

Defendant is answering for herself. Defendant reserves the right to substitute an attorney at a later date for *pro se* and/or to join with other defendants named in the case. The defendant further reserves the right to amend this answer as further investigation or discovery may become available. Also, defendant asks the Court to make a determination regarding Rule 8, Federal Rules of Civil Procedures. "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

As an unrepresented party, defendant is certifying that to the best of her knowledge, information, and belief, she formed this answer after an inquiry which is reasonable under the circumstances. After receiving the Notice of Lawsuit and Request for Waiver of Summons and a copy of the Ramona Band of Cahuilla's First Amended Complaint in Intervention, defendant registered with the PACER Service Center and retrieved various documents relevant to the case.

## ANSWER TO
## NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS

The Notice of Lawsuit and Request for Waiver of Service of Summons contains misleading statements of fact. The plaintiff claims water rights "for their present and future needs on their reservations." This is not quite the way Judge Carter phrased the issue in Interlocutory Judgment 41,

> "The United States of America when it established said Ramona Indian Reservation on December 29, 1891, intended to reserve rights to the use of the waters of the Santa Margarita River stream system which under natural conditions would be physically available on the Ramona Reservation, including rights to the use of ground waters, sufficient for the present or future needs of the Indians *residing* thereon."[1] [Italics mine.]

The Ramona Band of Cahuilla has presented no evidence that any Indians currently live on the reservation. Their headquarters is currently in Anza, California which is not a part of their reservation land.

Plaintiff alleges that defendant is a party to this case because ". . .according to land title and court records . . ." defendant ". . . is a successor to a landowner on the original list compiled by the court when part of the case was adjudicated in the 1960s." Further, it is alleged that the defendant owns land "which overlies groundwater or is adjacent to surface water that is subject to the court's jurisdiction, and that [defendant] may hold water rights

---

[1] FINDINGS OF FACT, CONCLUSIONS OF LAW AND INTERLOCUTORY JUDGMENT NO. 41 CONCERNING THE RIGHTS TO THE USE OF WATERS OF SANTA MARGARITA RIVER STREAM SYSTEM HELD IN TRUST BY THE U.S.A. IN CONNECTION WITH THE RAMONA, CAHUILLA AND PECHANGA INDIAN RESERVATIONS. UNITED STATES OF AMERICA, Plaintiff, vs. FALLBROOK PUBLIC UTILITY DISTRICT, et al., Defendants, No. 1247-SD-C, p. 4.

under the court's prior judgments." It is incumbent upon the Plaintiff-Intervenor to produce land title and court records that support these allegations and the cause that makes me a defendant.

Plaintiff states requirements which, to a reasonable person, appear to be taken from the Federal Rules of Civil Procedure but are, in fact, merely directions from the Band's counsel. "If you own your property with another person or entity, signatures of both are required." This is blatant misrepresentation by innuendo.

## ANSWER TO THE FIRST AMENDED COMPLAINT IN INTERVENTION

1. The plaintiff states that the action filed by the United States in 1951 was to quiet title to its use of water and to enjoin unlawful impairment of water rights in the Santa Margarita River System. The action actually was to quiet title to the "*rights* to the use of water . . ." and to "enjoin the unlawful *interference* by the named defendants with those rights."[2] "Rights" to the use of water is distinctive from the use of water per se. The litigation concerns the "rights" to use water. "Impair" means to affect in an injurious manner, whereas "interference" is to enter into the concerns of others. "Impair" imports a negative connotation to the reasonable person.

The Ramona Band of Cahuilla complaint states that "In the early stages of the case, the United States asserted on behalf of the Band a right to water under the federal reserved water rights doctrine in amounts sufficient to provide for the present and future needs of the members of the Band." In the case cited above, the United States clearly stated what amounts of water they considered sufficient for the Ramona reservation. ". . . there are approximately 300 acres of land within the watershed of the Santa Margarita River of which approximately 60 acres are susceptible of practicable and profitable irrigation. A reasonable diversion duty for the irrigation of those lands is four and two-tenths (4.2) acre-feet per acre per year."[3]

---

[2] COMPLAINT AND AMENDATORY COMPLAINT, UNITED STATES OF AMERICA, Plaintiff, v. FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., Defendants, No. 1247-SD-C, p. 1.

[3] Same as above, p. 28.

The United States itself further supported this proposition by stating that "There were reserved sufficient waters from the tributaries of Coahuila Creek for the needs of the Ramona Indian Reservation, as those needs existed when the Reservation was established or might exist in the future for irrigation, domestic and other purposes."[4]

The plaintiff claims "a prior and senior federal reserved right to the surface water and underlying groundwater of the Ramona Reservation within the Anza Basin portion of the Santa Margarita River System." If the Ramona Band of Cahuilla desires to take water already vested as a right for the defendants, it will have to be accomplished through eminent domain. This action may result in claims for just compensation by the users, a costly proposition with thousands of landowners named as defendants in this case.

2. Defendant agrees that the United States District Court has jurisdiction over this action.

3. Defendant contends that the Southern District of California is an improper venue upon the merits. The venue for this action should be the United States District Court, Central District of California. Plaintiff asserts that ". . . a number of the defendants reside in this [Southern District of California] district and the Santa Margarita River System is located within the geographical boundaries of the United States District Court for the Southern District of California." The facts do not support this contention: a) Other than military and related personnel located on Camp Pendleton, a predominance of the population (defendants including this defendant) live within the Santa Margarita watershed in Riverside County, particularly in the Temecula and Murrieta areas. b) The reservation of the Ramona Band of Cahuilla is located in Riverside County. c) The headquarters of the Ramona Band of Cahuilla is located in Anza, California which is in Riverside County. d) Geographically, over seventy-three

---

[3]COMPLAINT AND AMENDATORY COMPLAINT, UNITED STATES OF AMERICA, Plaintiff, v. FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., Defendants, No. 1247-SD-C, p. 28.

[4]COMPLAINT AND AMENDATORY COMPLAINT, UNITED STATES OF AMERICA, Plaintiff, v. FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., Defendants, No. 1247-SD-C, p. 28.

percent of the land encompassing the Santa Margarita watershed lies within Riverside County. "The Santa Margarita River is a non-navigable intermittent stream having a drainage area of 742 square miles, 197 square miles of which are situated in San Diego County, California, and 545 square miles in Riverside County, California."[5] The United States Code states,

> "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."[6]

4. Plaintiff-Intervenor Ramona Band of Cahuilla claims that "Since time immemorial, the members of the Band have used, and continue to use, the water resources and lands of the Anza Basin for subsistence, cultural, ceremonial, religious and commercial purposes." The purported "continuous use" is not borne out by the facts. In November, 1962 Judge James C. Carter wrote in Interlocutory Judgment No. 41 concerning the rights to the use of waters of the Santa Margarita River stream, "At the present time *no* Indians reside on the Ramona Indian reservation . . ." [Italics mine.] Judge Carter continues, ". . . but Indians of the Cahuilla Indian Reservation are using said lands for stock raising purposes." He also stated that "Within the Santa Margarita River watershed there are approximately 104 acres of irrigable land within the Ramona Indian Reservation."[8]

---

[5] UNITED STATES OF AMERICA, Plaintiff, FALLBROOK PUBLIC UTILITY DISTRICT, SAN MARGARITA MUTUAL WATER COMPANY, et al, Defendants, STATE OF CALIFORNIA, Defendant in Intervention, Stipulation on Pre-Trial setting forth the Agreed Facts, Civil No. 1247-SD, September 25, 1958.

[6] 28 United States Code, Section 1391(b), Venue generally.

[7] FINDINGS OF FACT, CONCLUSIONS OF LAW AND INTERLOCUTORY JUDGMENT NO. 41 CONCERNING THE RIGHTS TO THE USE OF WATERS OF SANTA MARGARITA RIVER STREAM SYSTEM HELD IN TRUST BY THE U.S.A. IN CONNECTION WITH THE RAMONA, CAHUILLA AND PECHANGA INDIAN RESERVATIONS. UNITED STATES OF AMERICA, Plaintiff, vs. FALLBROOK PUBLIC UTILITY DISTRICT, et al., Defendants, No. 1247-SD-C, p. 3.

[8] Same as above, p. 2.

Defendant denies Plaintiff-Intervenor's allegation that "The Band's past, present and future enjoyment of the waters of the Santa Margarita River System has been, is being and will continue to be injured by defendants' on-going unlawful interference with the Band's federal reserved water right."

In 1958 the United States of America determined that the Ramona Indian Reservation had sufficient waters. In 1962 there were no Ramona Indians residing on the reservation. The 104 acres of irrigable land within the reservation were not being utilized, and the Cahuilla Indians were tending stock on the Ramona reservation . It would appear that the water needs had been met, and the Ramona Band of Cahuilla was not injured.

5. The defendants in this action are, according to the Plaintiff-Intervenor, ". . . public service corporations, persons, corporations, unincorporated associations, municipalities, water districts and other entities that use water, claim right to use water or deliver water from the Santa Margarita River System . . ." Although the United States of America is the trustee of the Ramona Band of Cahuilla, people like those just described have recourse to redress a legislative wrong through the Congress. The chair of the House of Representatives Special Subcommittee on Irrigation and Reclamation of the Committee on Interior and Insular Affairs met on August 13, 1951 in Fallbrook, California regarding the "Santa Margarita Water Rights Controversy, California." The chair explained that the subcommittee was also the legislative committee of the House dealing with the problems of water and water law and reclamation law throughout the entire West. He explained that the Constitution ". . . guarantees to the people of this country the right of petition to their Congress and the pendency of litigation in a Federal court in no way abridges the right of the people of the United States to petition the appropriate committees of the Congress of the United States."[10] He continued to say "that it

---

[9]COMPLAINT AND SUPPLEMENTARY AND AMENDATORY COMPLAINT for UNITED STATES OF AMERICA, Plaintiff, FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., Defendants, No. 1247-SD-C, p. 28.

[10] *House of Representatives, Special Subcommittee on Interior and Insular Affairs,* SANTA MARGARITA WATER RIGHTS CONTROVERSY, CALIFORNIA, Fallbrook, California, p. 3.

- 6 -

08cv1247

has always been the view of the Congress of the United States that the Federal Government owns no water rights other than as any other property owner would own water rights."[11]

Plaintiff-Intervenor contends that "Some of the defendants use or claim rights to use water in a manner that impairs the federal reserved water right of the Ramona Band of Cahuilla." Unless this defendant is identified as one of the "some of the defendants," it is impossible to know whether to answer this claim. It would seem also, in the spirit of fairness, that individuals utilizing water from a water district should be served in this case, since many of them are landowners using water from the Santa Margarita River watershed.

Plaintiff-Intervenor alleges that the "The priority dates of the defendants' claimed rights to use water are junior to the federally-protected water rights of the Ramona Band of Cahuilla and its members." The dates are not necessarily the issue. The issue is how the law will protect the rights of the members of the Ramona Band of Cahuilla as well as other individuals. In a letter from the Assistant Attorney General to a member of the House of Representatives he writes, "I wish to assure you through many years of performing services of this character, Mr. Veeder, in full conformity with the policy of this Department, has always sought to protect the citizens to the end that not only the rights of the United States but those of the individual would be equally protected in litigation of this character."[12]

A decision of the United States Circuit Court of Appeals for the Ninth District addresses the question of federal sovereignty versus the rights of the individual. "The United States brought an action against some three thousand (3,000) defendants to quiet title to water rights claimed to be appurtenant to lands acquired in 1941-1943 and used for various purposes of the army and navy. "The question of 'sovereign rights' of the United States pervades this entire case and has done so from the beginning. Not only that, but the steady beating of the

---

[11] House of Representatives, Special Subcommittee on Interior and Insular Affairs, SANTA MARGARITA WATER RIGHTS CONTROVERSY, CALIFORNIA, Fallbrook, California, p. 3.

[12] UNITED STATES OF AMERICA, Plaintiff vs. FALLBROOK PUBLIC UTILITY DISTRICT et al, Defendants, PEOPLE OF THE STATE OF CALIFORNIA, Defendants in Intervention, Exhibit "B."

war drums in the government's brief by references to 'military necessity' tends to deflect full consideration from the property rights of ordinary citizens."[13]  "Now it must be conceded by all parties that the United States had sovereign rights in the enclave. . . But the physical possession of the corpus of the water after it enters the enclave and ability and legal right then to use it for whatever purposes are not evidentiary of a water right, for the right to use water is a property right and is appurtenant to particular parcels of land."[14] "This case must be remanded because of the apparent misconceptions of the law of the enclave by the trial court and the application of the theory of sovereignty to the subversion of vested and inchoate private rights."[15]

In a statement before the House of Representative subcommittee by counsel for the Fallbrook Public Utility District, he clearly described the plight of the individual in such litigation.

> ". . . I am interested in knowing why this litigation is necessary at all, and I assert that if it is necessary for an owner of the legal title to water to sue ten or twelve or sixteen thousand defendants in order to establish a water right then, so far as the average water owner is concerned, he is without legal remedy in the establishment of his rights in the streams of this country.  And, if that condition exists, then all of us who assert any right on the streams of the far West, unless we have the resources and the attorneys that the Federal Government can carry on the payroll year after year, are helpless to assert and to prove the water rights on these streams because the average landowner simply cannot afford legislation of this magnitude."[16]

The absurdity of suing so many defendants, most of whom have not been joined together in the action and are, therefore, potentially adverse to each other, is characterized by counsel for the Fallbrook Public Utility District in the same Congressional Subcommittee hearing.

---

[13] House of Representatives, Special Subcommittee on Interior and Insular Affairs, SANTA MARGARITA WATER RIGHTS CONTROVERSY, CALIFORNIA, Fallbrook, California, p .88.

[14] United States Court of Appeals March 30, 1956, p. 8.

[15] United States Court of Appeals March 30, 1956, p. 9.

[16] House of Representatives, Special Subcommittee on Interior and Insular Affairs, SANTA MARGARITA WATER RIGHTS CONTROVERSY, CALIFORNIA, Fallbrook, California, p. 88.

"... if each person should then undertake to sue each other, and that, as I understand it, is Mr. Veeder's idea of how to arrive at an adjudication so that each person would know just precisely what amount of water he was entitled to as against everybody else, then no single attorney could represent more than one single defendant, because every defendant being adverse to each other then one could not represent two conflicting claims. The result would be that instead of some 20 or 30 lawyers, as are presently in the case, there would, of necessity, according to ethics, have to be as many separate attorneys appearing for each separate defendant as there are defendants. And with this figure of 14,000 that has been mentioned, should everybody be a party, there wouldn't be enough attorneys in California and would have to import some . . ."[17]

The United States Court of Appeals for the Ninth Circuit has made it clear that the laws of California prevail regarding water rights. "The law of California, by stipulation here and by the federal Constitution, controls the water rights within its boundaries."[18] "Every water right in private ownership in California and each use or diversion thereof as appurtenant to land is subject to the limitations and prohibitions of the Constitutional amendment."[19]

6. The Ramona Band of Cahuilla is, therefore, under the Constitution of the State of California which provides that "The right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water."[20] Having been granted the land by the federal government does not translate into reckless and uncontrolled demands for the use of water.

7. The Plaintiff-Intervenor again changes the emphasis in the law by selective editing.

---

[17] House of Representatives, Special Subcommittee on Interior and Insular Affairs, SANTA MARGARITA WATER RIGHTS CONTROVERSY, CALIFORNIA, Fallbrook, California, p .88.

[18] PEOPLE OF THE STATE OF CALIFORNIA, appellant, vs. UNITED STATES OF AMERICA, Appellee, and SANTA MARGARITA MUTUAL WATER COMPANY, Appellant, vs. UNITED STATES OF AMERICA, Appellee, No. 14,049 Mar. 30, 1956, p. 3.

[19] PEOPLE OF THE STATE OF CALIFORNIA, appellant, vs. UNITED STATES OF AMERICA, Appellee, and SANTA MARGARITA MUTUAL WATER COMPANY, Appellant, vs. UNITED STATES OF AMERICA, Appellee, No. 14,049 Mar. 30, 1956, p. 13.

[20] CONSTITUTION OF THE STATE OF CALIFORNIA, Article XIV, Sec. 3.

The complaint reads, ". . . the United States intended to reserve, and in fact did reserve, rights to the use of the Manta Margarita River system . . ." Interlocutory Judgment No. 41reads, ". . . the United States intended to reserve rights to the use of the waters of the Santa Margarita River *stream* system . . ." [Italics mine.] "*. . . and in fact did reserve . . .*" is not part of the law. As noted in page 2 of this answer, Interlocutory Judgment No. 41 reads ". . . sufficient for the present or future needs of the Indians *residing* thereon." [Italics mine.] These may seem small points, but they do change the nuance of the intended effect of the law.

   8. Please refer to Paragraph 4 for similar misstatements of fact.

   9. Defendant denies the allegations that "Defendants' withdrawal and use of the ground water underlying and adjacent to the Ramona Reservation is increasing, and, is further threatening the Band's ability to achieve economic self-sufficiency. Unless the requested relief is granted, the rights and interest of the Ramona Band of Cahuilla and its members will be adversely affected and irreparably harmed by the defendants." The waters of the Anza Ground Water Basin are more fully discussed in Interlocutory Judgment No. 33 including shallow and deep aquifers. Waters below 100 feet are considered to be in the deep aquifer and not part of the Santa Margarita River stream system.[21]

   In Interlocutory Judgment No. 41the quantity of water is referenced.

> "There is no issue presently presented which requires this Court to make findings of fact, conclusions of law or interlocutory Judgment provisions concerned with the amount of water required for the Indians' use . . . As this Court will keep continuing jurisdiction of this cause, this Court can, *if the occasion should arise in the future,* make such findings and judgment provision as may then be required on these issues."[22] [Italics mine.]

---

[21] FINDINGS OF FACT, CONCLUSIONS OF LAW, AND INTERLOCUTORY JUDGMENT NO. 33 PERTAINING TO ANZE AND CAHUILLA GROUND WATER BASINS AND CAHUILLA AND WILSON CREEKS, UNITED STATES OF AMERICA, Plaintiff, vs. FALLBROOK PUBLIC UTILITY DISTRICT, et al., Defendants, No. 1247-SD-C.

[22] FINDINGS OF FACT, CONCLUSIONS OF LAW AND INTERLOCUTORY JUDGMENT NO. 41 CONCERNING THE RIGHTS TO THE USE OF WATERS OF SANTA MARGARITA RIVER STREAM SYSTEM HOLD IN TRUST BY THE U.S.A. IN CONNECTION WITH THE RAMONA, CAHUILLA AND PECHANGA INDIAN RESERVATIONS, UNITED STATES OF AMERICA, Plaintiff, vs. FALLBROOK PUBLIC UTILITY DISTRICT, et al., Defendants, No. 1247-SD-C, p. 4.

It is clear that the judge did not anticipate the issue of quantity to arise in the future, since he used the word "if" and not "when." Interlocutory Judgment No. 41 was finalized in 1963. That was over 45 years ago. Suddenly, in 2008, there arises a sense of urgency regarding water rights. If the withdrawal and use of ". . . groundwater underlying and adjacent to the Ramona Reservation is increasing, . . ." why is the Plaintiff-Intervenor suing thousands of landowners downstream of them?

## JUDGMENT AND RELIEF

1. The Defendant refutes the relief sought by the Plaintiff-Intervenor in **PARAGRAPHS 10 – 13 (1)-(7)** of the complaint;

2. Whereas real estate values have plummeted, and there is rancor between parties living in close proximity to each other, the Defendant asks the Court for a judgment directing the Ramona Band of Cahuilla to cease and desist from this litigation and to seek a solution to their alleged water problem through consensus of interested parties;

3. The Defendant asks the Court to be relieved of all liability regarding this suit since the Defendant has properties which are located several miles from the Ramona reservation, are used only for domestic purposes, and could have little effect upon the use of water by the Ramona Band of Cahuilla ;

4. The defendant requests the Court to relieve the Defendant of any and all costs for the suit demanded by the Plaintiff-Intervenor;

5. The Defendant asks the Court to award costs and such other relief to the Defendant as the Court may deem to be just and proper; and

6. If the Plaintiff-Intervenor persists in pursuing this suit, then the Defendant asks the Court to consider relieving her from continuing with the suit.

Dated:  May 25, 2008                                    Respectfully submitted,

                                                        Mary E. Lee, Ph.D. *Defendant Pro Se*

41085 Lakeshore Blvd., Aguanga, CA  92536               (951) 763-9644