

**PECHANGA INDIAN RESERVATION**
*Temecula Band of Luiseño Mission Indians*

Post Office Box 1477 • Temecula, CA 92593
Telephone (951) 676-2768   Fax (951) 695-1778

Tribal Chairman:
Mark Macarro

Council Members:
Donna Barron
Mark Calac
Marc Luker
Andrew Masiel, Sr.
Russell "Butch" Murphy
Kenneth Perez

Tribal Secretary:
Darlene Miranda

Tribal Treasurer:
Christine Luker

March 13, 2008

Hon. Dirk Kempthorne
Secretary of the Interior
U.S. Department of the Interior
1849 C Street, NW
Washington, D.C.  20240

Subject:   Request for establishment of a Federal team to assist in the negotiated settlement of the water rights claims of the Pechanga Band of Luiseno Mission Indians

Dear Secretary Kempthorne:

  The Pechanga Band of Luiseno Mission Indians ("Pechanga") hereby formally requests negotiations of the Secretary of Interior to seek settlement of Pechanga's various claims to water rights, claims against the U.S. Government relating to water rights, and claims against third parties for injuries to Pechanga's water rights. This request is made pursuant to the *Criteria and Procedures for the Participation of the Federal Government in Negotiations for the Settlement of Indian Water Rights Claims*, 55 Fed. Reg. 9233 (Mar. 12, 1990) ("*Criteria and Procedures*"). Based on our direct discussions with Rancho California Water District, a water district holding agency title to the water rights of most, if not all, of the non-Federal parties involved in Pechanga's various water related claims, we understand that Rancho not only supports this request, but will be filing its own formal request shortly.

  In a recent meeting with Counselor Bogert in Phoenix, Arizona, he and other members of the Secretary's Indian Water Rights Office noted that the Criteria and Procedures do not provide detailed guidance on the Department's determination as to when to initiate formal claims settlement negotiations through the appointment of federal settlement teams. However, Counselor Bogert went on in this meeting to list a number of factors that might be considered in appointing such a settlement team. In reviewing these various factors, it is clear that the Department should approve Pechanga's request for the appointment of such a settlement team to seek settlement of Pechanga's various water-related claims.

7

In the first instance, there is already a pending general stream adjudication in which the bulk of Pechanga's claims for water are currently in litigation. Pechanga's claims to water from the Santa Margarita Basin were partially adjudicated through a prima facie finding of a quantified water right by the federal district court in *United States v. Fallbrook Public Utility District*, Interlocutory Judgment 41 (S.D. Cal. 1965).

Two other tribes in the Santa Margarita Basin, Ramona and Cahuilla, have initiated quantification proceedings in this adjudication proceeding, and Pechanga has, as a result, been forced to begin quantification efforts of its own. These proceedings are, in fact, imminent, another factor to consider in determining whether to establish a federal negotiation team for Pechanga. In the most recent status conference, the presiding judge in the adjudication, Judge Thompson, indicated that Ramona and Cahuilla must both serve their Complaint in Intervention on parties located in the Anza Valley no later than March 27, 2008, or show that meaningful progress has been made in their settlement efforts. These other two tribes must also serve their Complaint in Intervention on all other parties to the Fallbrook Adjudication no later than April 30, 2008. Our efforts on our own quantification of water rights are now intertwined in the efforts of the other two tribes and these deadlines are driving Pechanga as well.

Another factor to take into consideration is the fact that Pechanga has already been engaged in an effort to draw together the various water users that either are proximate to its Reservation or potential contributors to the overall settlement anticipated. In this regard, Pechanga successfully negotiated a groundwater delivery and basin management agreement with RCWD, the major water user in proximity to Pechanga's Reservation. This agreement will likely serve as one component of the overall settlement anticipated.

A third factor is the fact that Pechanga's interests in its water rights are already being affected by the actions of others in the Santa Margarita Basin. On the one hand, Pechanga's hydrologists indicate that water levels in our aquifer, the Wolf Valley Basin, are steadily declining due to over pumping by neighboring users, primarily Rancho California Water District. On the other hand, Pechanga's ability to craft its own solutions with its neighbors absent a settlement are being severely restricted by the actions of the other tribes in the basin, forcing Pechanga to precipitate a potential conflict with its neighbors through a Motion to Quantify that could likely be avoided if timely negotiations are initiated.

In addition, Pechanga just recently successfully negotiated a recycled water agreement with Eastern Municipal Water District, another proximate water user. This agreement also will likely serve as one component of the overall settlement anticipated. Finally, Pechanga has been in negotiations with Metropolitan Water District as a potential supplier, or wheeler of some of the additional imported water that will likely be necessary to pull together a meaningful final settlement.

Pechanga, and the United States, have moreover, also undertaken substantial factual and legal work on the development of the Tribe's water claim. This work, which can be verified by Patrick Barry of the U.S. Department of Justice, has taken place over the course of the last decade and more. It has recently accelerated with Pechanga's engagement of a new water team comprising experienced water attorneys, hydrologists and engineers. Thus, much of the necessary leg work has or is being done already.

With respect to the likelihood of prompt resolution, though one must be cautious in being too optimistic, the possibility of success in negotiations seems high. Our recent success in negotiations with both Rancho and Eastern give us confidence that we will be able to be pragmatic and effective in the negotiations that may remain. The key is obtaining federal engagement in the process, which will provide us with the necessary final elements to pull a settlement together.

Finally, we would note that there are potential disputes with the United States that could also be resolved, both on the Santa Margarita Basin and the San Luis Rey Basin. This also should be a positive factor in your consideration in our request.

This letter is only a preliminary outline of the factors we think should be considered in our formal request for the establishment of a federal water rights negotiation team for Pechanga. We would be happy to provide you with additional information should you determine that necessary.

We appreciate your consideration of our request and look forward to a prompt response. As noted above, court deadlines are looming for Pechanga and the establishment of a federal negotiation team is a critical first step in constructing a strategy that will allow us to avoid the expense and difficulty of protracted water rights litigation. I will be taking the liberty of following up with your Counselor, Michael Bogert, in the very near term to see if it would be possible for us to meet with him when I am next in Washington to discuss this request.

Sincerely,

Mark Macarro
Chairman


Cc:   L. Michael Bogert
      Pamela Williams
      Patrick Barry
      Rodney B. Lewis
      Michael Cowett
      Donald R. Pongrace

9