Dr. Mary E. Lee
41085 Lakeshore Blvd.
Aguanga, CA 92536
(951) 763-9644
*Defendant Pro Se*

FILED

JUN 0 6 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 51-cv-1247-GT |
| Plaintiff, | ) |
| RAMONA BAND OF CAHUILLA, CAHUILLA BAND OF INDIANS, | ) **FIRST AMENDED ANSWER OF MARY E. LEE TO RAMONA BAND OF CAHUILLA'S NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE AND FIRST AMENDED COMPLAINT IN INTERVENTION** |
| Plaintiff-Intervenors, | ) |
| v. | ) |
| FALLBROOK PUBLIC UTILITY DISTRICT, et al., | ) |
| Defendants. | ) |

## BASIS FOR FIRST AMENDED ANSWER

In the **NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS** dated March 26, 2008 the attorneys for Plaintiff-Intervenor Ramona Band of Cahuilla and Plaintiff-Intervenor Cahuilla Band of Indians stated, "If you choose to answer or respond to the Tribes' complaints, you may file a single response to both or a separate response to each." The **NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS** was signed by both attorneys.

- 1 -

51cv1247

On May 27, 2008 the Court filed the ANSWER OF MARY E. LEE TO RAMONA BAND OF CAHUILLA'S NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE AND FIRST AMENDED COMPLAINT IN INTERVENTION. Copies were sent to the Tribes' attorneys. The ANSWER related primarily to historical and factual details regarding the Ramona Band of Cahuilla; this FIRST AMENDED ANSWER is being submitted to address historical and factual details relating primarily to the Cahuilla Band of Indians. This FIRST AMENDED ANSWER is complete in itself and does not require reference to the ANSWER OF MARY E. LEE TO RAMONA BAND OF CAHUILLA'S NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE AND FIRST AMENDED COMPLAINT IN INTERVENTION.

## INTRODUCTION

Defendant is answering for herself. Defendant reserves the right to substitute an attorney at a later date for *pro se* and/or to join with other defendants named in the case. The defendant further reserves the right to amend this answer as further investigation or discovery may become available. Also, defendant asks the Court to make a determination regarding Rule 8, Federal Rules of Civil Procedures. "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

As an unrepresented party, defendant is certifying that to the best of her knowledge, information, and belief, she formed this answer after an inquiry which is reasonable under the circumstances. After receiving the NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SUMMONS and a copy of the RAMONA BAND OF CAHUILLA'S FIRST AMENDED COMPLAINT IN INTERVENTION and the CAHUILLA BAND OF INDIANS' FIRST AMENDED COMPLAINT IN INTERVENTION, defendant registered with the Public Access to Court Electronic Records (PACER) Service Center and retrieved various documents relevant to the case.

The legal setting for this lawsuit is parallel to the 1951 case. In a statement before the House of Representatives Special Subcommittee on Irrigation and Reclamation of the

Committee on Interior and Insular Affairs held in Fallbrook on August 13 – 14, 1951, the chair of the subcommittee clearly described the position of the individual in such litigation.

> ". . . I am interested in knowing why this litigation is necessary at all, and I assert that if it is necessary for an owner of the legal title to water to sue ten or twelve or sixteen thousand defendants in order to establish a water right then, so far as the average water owner is concerned, he is without legal remedy in the establishment of his rights in the streams of this country. And, if that condition exists, then all of us who assert any right on the streams of the far West, unless we have the resources and the attorneys that the Federal Government can carry on the payroll year after year, are helpless to assert and to prove the water rights on these streams because the average landowner simply cannot afford legislation of this magnitude."[1]

The absurdity of suing so many defendants, most of whom have not been joined together in the action and are, therefore, potentially adverse to each other, is characterized by counsel for the Fallbrook Public Utility District in the same Congressional Subcommittee hearing.

> ". . . if each person should then undertake to sue each other, and that, as I understand it, is Mr. Veeder's [Special Assistant, Department of Justice] idea of how to arrive at an adjudication so that each person would know just precisely what amount of water he was entitled to as against everybody else, then no single attorney could represent more than one single defendant, because every defendant being adverse to each other then one could not represent two conflicting claims. The result would be that instead of some 20 or 30 lawyers, as are presently in the case, there would, of necessity, according to ethics, have to be as many separate attorneys appearing for each separate defendant as there are defendants. And with this figure of 14,000 that has been mentioned, should everybody be a party, there wouldn't be enough attorneys in California and would have to import some . . ."[2]

The statements of fact and issues presented in the NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SUMMONS and the CAHUILLA BAND OF INDIANS' FIRST AMENDED COMPLAINT IN INTERVENTION are not easily understood. The issues

---

[1] House of Representatives, Special Subcommittee on Interior and Insular Affairs, SANTA MARGARITA WATER RIGHTS CONTROVERSY, CALIFORNIA, Fallbrook, California, August 13, 1951, p. 4.

[2] Same as above, p. 88.

presented are repetitious and poorly arranged making it difficult to formulate answers. The law is often misquoted conveying a faulty impression to the reader. Some of the allegations contained in the complaint are also stated in the NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS. Others are contradictory within the complaint itself. This defendant has answered each issue when it is first presented, regardless of the order presented by the Plaintiff-Intervenor.

## FIRST AMENDED ANSWER TO
## NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS

Defendant maintains that the NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS, which was signed by attorneys for both tribes, contains misleading statements of fact. The plaintiffs claim water rights ". . . for their present and future needs on their reservations." This is not the way Judge Carter phrased the issue in Interlocutory Judgment 41.

> "The United States of America, when it created the Cahuilla Indian Reservation . . . intended to reserve rights to the use of the water of the Santa Margarita River stream system which under natural conditions would be physically available on the Indian Reservation, including rights to the use of ground waters, sufficient for the present or future needs of the Indians *residing* thereon." [3] [Italics mine.]

In the same document Judge Carter wrote, "There are at the present time approximately 94 Indians in the Cahuilla Tribe *of which 32 are now residing on the Cahuilla Indian Reservation.*" [4] [Italics mine.] The Cahuilla Band of Indians has presented no evidence as to how many Indians currently reside on their reservation.

Plaintiff-Intervenor alleges that defendant is a party to this case because ". . .according to land title and court records . . ." defendant ". . . is a successor to a landowner on the

---

[3] FINDINGS OF FACT, CONCLUSIONS OF LAW AND INTERLOCUTORY JUDGMENT NO. 41 CONCERNING THE RIGHTS TO THE USE OF WATERS OF SANTA MARGARITA RIVER STREAM SYSTEM HELD IN TRUST BY THE U.S.A. IN CONNECTION WITH THE RAMONA, CAHUILLA AND PECHANGA INDIAN RESERVATIONS. UNITED STATES OF AMERICA, Plaintiff, vs. FALLBROOK PUBLIC UTILITY DISTRICT, et al., Defendants, Filed 11/8/1962, No. 1247-SD-C, p. 9.

[4] Same as above, p. 7.

original list compiled by the court when part of the case was adjudicated in the 1960s."

Further, it is alleged that the defendant owns land ". . . which overlies groundwater or is adjacent to surface water that is subject to the court's jurisdiction, and that [defendant] **may** hold water rights under the court's prior judgments."

Defendant believes that it is incumbent upon the Plaintiff-Intervenor to produce land title and court records that support these allegations and the causes that make her a defendant and to determine whether she **actually** holds water rights under the court's prior judgments.

A blatant misrepresentation by innuendo is found in the Plaintiff-Intervenors' statements regarding the request for waiver of summons. Requirements, which to a reasonable person appear to be taken from the Federal Rules of Civil Procedure, are, in fact, merely directions from the Bands' attorneys. "If you own your property with another person or entity, signatures of both are required."

### ANSWER TO CAHUILLA BAND OF INDIANS' FIRST AMENDED COMPLAINT IN INTERVENTION

**1 & 2.** The Cahuilla Band of Indians complaint states that "In the early stages of the case, the United States asserted on behalf of the Cahuilla Tribe a right to water under the federal reserved water rights doctrine in amounts sufficient to provide for the present and future needs of the members of the Band." As pointed out on page 3 of this FIRST AMENDED ANSWER, selective editing on the part of the Plaintiff-Intervenor changes the intention of the law. Judge Carter wrote ". . . members of the band *residing* thereon."

In the case referenced above, the United States clearly stated what amounts of water they considered sufficient for the Cahuilla reservation.

> "Within the Coahuila Indian Reservation there are approximately 17,500 acres of land within the watershed of the Santa Margarita River of which approximately 16,800 acres are susceptible of practicable and profitable irrigation. *A reasonable diversion duty for the irrigation of those lands is four and two-tenths (4.2) acre-feet per acre per year.*"[5] [Italics mine.]

---

[5] COMPLAINT AND SUPPLEMENTARY AND AMENDATORY COMPLAINT, UNITED STATES OF AMERICA, Plaintiff, v. FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., Defendants, Filed April 7, 1958, No. 1247-SD-C, p. 26.

The United States further established the intended use of the water in the same case.

> "There were reserved by the United States of America sufficient waters of Coahila Creek and its tributaries for the needs of the Coahila Indian Reservation, as those needs existed when the reservation was established or might exist in the future, for *irrigation, domestic and other purposes.*" [6] [Italics mine.]

In Interlocutory Judgment No. 41 Judge Carter reiterated the needs of the members of the Cahuilla Band of Indians.

> "At present the waters contained upon or within the lands which comprise the Cahuilla Indian Reservation are *primarily used for limited domestic use and livestock purposes.*" [7] [Italics mine.]

It seems evident that the federal government provided sufficient water rights for the stated purposes and needs of the Cahuilla Tribe.

3. The Plaintiff-Intervenor claims that Judge Carter in the November 8, 1962 Interlocutory Judgment No. 41 ". . . made findings of fact to serve as the basis for quantifying the amount of water reserved for the Cahuilla Tribe." Judge Carter actually wrote, "*There is no issue presently presented which requires this Court to make findings of fact*, conclusions of law or judgment provisions *concerning the amount of water* required for the Indians' use on said lands . . ." [8] [Italics mine.]

The Plaintiff-Intervenor also claims entitlement ". . . to use the surface waters and groundwater underlying the Cahuilla Reservation within the Anza Basin portion of the Santa Margarita River System to satisfy the Tribe's federal reserved water rights." Judge Carter in Interlocutory Judgment No. 41 stated that "All ground waters contained within the deep

---

[6] COMPLAINT AND SUPPLEMENTARY AND AMENDATORY COMPLAINT, UNITED STATES OF AMERICA, Plaintiff, v. FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., Defendants, Filed April 7, 1958, No. 1247-SD-C, p. 26.

[7] FINDINGS OF FACT, CONCLUSIONS OF LAW AND INTERLOCUTORY JUDGMENT NO. 41 CONCERNING THE RIGHTS TO THE USE OF WATERS OF SANTA MARGARITA RIVER STREAM SYSTEM HELD IN TRUST BY THE U.S.A. IN CONNECTION WITH THE RAMONA, CAHUILLA AND PECHANGA INDIAN RESERVATIONS. UNITED STATES OF AMERICA, Plaintiff, vs. FALLBROOK PUBLIC UTILITY DISTRICT, et al., Defendants, Filed November 8, 1962, No. 1247-SD-C, p. 7.

[8] Same as above, p. 9.

aquifer of the Anza Ground Water Basin and within the Cahuilla Indian Reservation *are not a part of the Santa Margarita River stream system* nor do said ground waters add to, contribute to or support the Santa Margarita River or any tributary thereto." [9] [Italics mine.]

The waters of the Anza Ground Water Basin are more fully discussed in Interlocutory Judgment No. 33 including shallow and deep aquifers. On December 11, 1962 Judge Carter wrote regarding the Anza Ground Water Basin, "That said ground waters consist of two parts or units, one part or unit being those contained within the shallow aquifer which extends to a maximum but variable depth of approximately 100 feet below ground surface elevation." [10] He further identified specific properties that have a correlative overlying right to the use of the ground waters contained within the Cahuilla Ground Water Basin, properties that have correlative riparian rights to the use of the surface and sub-surface waters of the creeks, and properties that have correlative overlying rights to the use of ground water in the shallow aquifer. [11] Judge Carter further ordered that ". . . this Court has no jurisdiction over the use of said waters contained within the deep aquifer of the Anza Ground Water Basin, that said lands which overlie the deep aquifer are described and designated on Exhibit B, and it is ordered, adjudged and decreed that all ground waters contained within said lands below 100 feet in elevation from land surface are ground waters contained within said deep aquifer." [12] He made a similar decree regarding the sub-watersheds of Cahuilla Creek and Wilson Creek. [13]

---

[9] FINDINGS OF FACT, CONCLUSIONS OF LAW AND INTERLOCUTORY JUDGMENT NO. 41 CONCERNING THE RIGHTS TO THE USE OF WATERS OF SANTA MARGARITA RIVER STREAM SYSTEM HELD IN TRUST BY THE U.S.A. IN CONNECTION WITH THE RAMONA, CAHUILLA AND PECHANGA INDIAN RESERVATIONS. UNITED STATES OF AMERICA, Plaintiff, vs. FALLBROOK PUBLIC UTILITY DISTRICT, et al., Defendants, Filed November 8, 1962, No. 1247-SD-C, p. 6-7.

[10] FINDINGS OF FACT, CONCLUSIONS OF LAW, AND INTERLOCUTORY JUDGMENT NO. 33 PERTAINING TO ANZA AND CAHUILLA GROUND WATER BASINS AND CAHUILLA AND WILSON CREEKS, Filed December 11, 1962, No. 1247-SD-C, p. 2.

[11] Same as above pp. 11, 12-13, 15.

[12] Same as above p. 19.

[13] Same as above p. 24.

Plaintiff-Intervenor further alleges that "This Court, however, reserved final quantification **until** circumstances required." This is another example of the law being misquoted. Judge Carter actually wrote, "As this Court will keep continuing jurisdiction of this cause, this Court can, *if the occasion should arise in the future*, make such findings and judgment provision as may then be required on these issues." [14] [Italics mine.] It is clear that the judge did not anticipate the issue of quantity to arise in the future, since he used the word "if" and not "when" or "until" as Plaintiff-Intervenor claims.

This conditional phrase of possibility is also used by Judge Carter In Interlocutory Judgment No. 33.

> *"If in fact in the future determinations as to the riparian status of lands to Cahuilla Creek are necessary*, this Court in the exercise of its continuing jurisdiction can and will make determinations based on these Findings of Fact, and evidence to be introduced as to what land is held under one chain of title and part of which abuts upon or is traversed by Cahuilla Creek." [15] [Italics mine.]

Interlocutory Judgment No. 41 was finalized in 1963. That was over 45 years ago. Why, suddenly, in 2008, does there arise a sense of urgency regarding water rights? The Plaintiff-Intervenors certainly had sufficient time to file this suit in a timely manner.

4. The Plaintiff-Intervenor alleges that "Circumstances now require a final decree from this Court to quantify and protect the Cahuilla Tribe's senior, federal reserved water rights due to increasing development in the Anza Basin." Although the Cahuilla Tribe may believe that they require a final decree to quantify their federal reserved water rights, the alleged federal status of their perceived water rights may not afford them the protection they desire.

---

[14] FINDINGS OF FACT, CONCLUSIONS OF LAW AND INTERLOCUTORY JUDGMENT NO. 41 CONCERNING THE RIGHTS TO THE USE OF WATERS OF SANTA MARGARITA RIVER STREAM SYSTEM HELD IN TRUST BY THE U.S.A. IN CONNECTION WITH THE RAMONA, CAHUILLA AND PECHANGA INDIAN RESERVATIONS. UNITED STATES OF AMERICA, Plaintiff, vs. FALLBROOK PUBLIC UTILITY DISTRICT, et al., Defendants, No. 1247-SD-C, pp. 6-7.

[15] FINDINGS OF FACT, CONCLUSIONS OF LAW, AND INTERLOCUTORY JUDGMENT NO. 33 PERTAINING TO ANZA AND CAHUILLA GROUND WATER BASINS AND CAHUILLA AND WILSON CREEKS, Filed December 11, 1962, No. 1247-SD-C, p. 9.

The United States Court of Appeals for the Ninth Circuit has made it clear that the laws of California prevail regarding water rights. "The law of California, by stipulation here and by the federal Constitution, controls the water rights within its boundaries." [16]

The United States Court of Appeals for the Ninth Circuit has made it clear that the laws of California prevail regarding water rights. "The law of California, by stipulation here and by the federal Constitution, controls the water rights within its boundaries." [16]

The Cahuilla Band of Indians is, therefore, subject to the provisions of the Constitution of the State of California which provides that "The right to water or to the use or flow of water in or from any natural stream or water course in this State is and shall be limited to such water as shall be reasonably required for the beneficial use to be served, and such right does not and shall not extend to the waste or unreasonable use or unreasonable method of use or unreasonable method of diversion of water." [17] The Cahuilla Band of Indians is also subject to the California Civil Code, Sections 1410a-1422, regarding appropriative rights to water.

The United States itself further supports the point of view that private lands are separate and apart from the federal government's holding of title and water rights. "The United States of America is the holder of the legal title to all of the lands and rights to the use of water of the Coahuila Indian Reservation, *with the exception*, if any, *of those lands title to which may have passed into private ownership.*" [18] It would follow that properties to which private ownership is attached are outside the jurisdiction of the federal government. Having been granted the land by the federal government does not translate into entitlement to reckless and uncontrolled demands for the use of water against the rights of others or to the flagrant disregard of state law.

5. Within the complaint itself there are contradictory statements regarding the waters claimed by the Cahuilla Tribe. In this allegation by the Cahuilla Tribe it seeks ". . . a judicial decree quantifying and protecting the Cahuilla Tribe's senior, federal reserved rights

---

[16] PEOPLE OF THE STATE OF CALIFORNIA, appellant, vs. UNITED STATES OF AMERICA, Appellee, and SANTA MARGARITA MUTUAL WATER COMPANY, Appellant, vs. UNITED STATES OF AMERICA, Appellee, Filed May 3, 1956, No. 14,049, p. 3.

[17] CONSTITUTION OF THE STATE OF CALIFORNIA, Article XIV, Sec. 3.

[18] COMPLAINT AND SUPPLEMENTARY AND AMENDATORY COMPLAINT for UNITED STATES OF AMERICA, Plaintiff, FALLBROOK PUBLIC UTILITY DISTRICT, ET AL., Defendants, Filed April 7, 1958, No. 1247-SD-C, p. 25.

to the surface waters and underlying groundwater of the Cahuilla Reservation **within the Anza Basin portion** of the Santa Margarita River System . . ." . On page 4, item 14, of the complaint the Plaintiff-Intervenor alleges that "Since time immemorial, the members of the CAHUILLA TRIBE have used and continue to use, the lands, surface waters and groundwater underlying the Cahuilla Reservation within the Santa Margarita River System, **including but not limited to Cahuilla Creek and the Anza Basin,** for subsistence, cultural, ceremonial, religious, and commercial purposes." This statement on page 4 of the complaint is contradicted on page 6, item 27. "**The surface and groundwater underlying the Cahuilla Reservation constitute the sole source of water for the Cahuilla Tribe and its members.**" If the surface and groundwater underlying the Cahuilla Reservation are in fact the sole source of water for the Cahuilla Tribe and its members, why is the Plaintiff-Intervenor suing thousands of landowners downstream of them?

    **6.** Defendant agrees that the United States District Court has jurisdiction over this action except where specifically exempted by Judge Carter in Interlocutory Judgment No. 33 and No. 41.

    **7.** Defendant contends that the Southern District of California is an improper venue upon the merits. The venue for this action should be the United States District Court, Central District of California. Plaintiff asserts that ". . . a number of the defendants reside in this [Southern District of California] district and the Santa Margarita River System is located within the geographical boundaries of the United States District Court for the Southern District of California." The facts do not support this contention: a) Other than military and related personnel located on Camp Pendleton, a predominance of the population (defendants including this defendant) live within the Santa Margarita watershed in Riverside County, particularly in the Temecula and Murrieta areas. b) The reservation of the Cahuilla Band of Indians is located in Riverside County. c) The headquarters of the Cahuilla Band of Indians is located on the reservation near Anza, California which is in Riverside County. d) Geographically, over seventy-three percent of the land encompassing the Santa Margarita watershed lies within

Riverside County. "The Santa Margarita River is a non-navigable intermittent stream having a drainage area of 742 square miles, 197 square miles of which are situated in San Diego County, California, and 545 square miles in Riverside County, California."[19] The United States Code states,

> "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."[20]

8. – 12. Defendant neither denies nor confirms the allegations contained herein.

13. Plaintiff-Defendant's use of the term "water resources" is overly broad, ill-defined and not supported by subsequent laws.

14. Plaintiff-Intervenor claims that the Cahuilla Tribe has used and continues to use ". . . the lands, surface waters and groundwater underlying the Cahuilla Reservation within the Santa Margarita River System, *including but not limited to Cahuilla Creek and the Anza Basin* . . ." What waters has the Cahuilla Tribe been using since time immemorial—the deep aquifer of the Anza Basin and/or deep aquifers in other parts of the Santa Margarita River watershed—to which they have no federal reserved or other established legal rights? Perhaps a claim by defendants against the Cahuilla Tribe is in order.

15. The defendants in this action are, according to the Plaintiff-Intervenor, ". . . public service corporations, persons, corporations, unincorporated associations, municipalities, water districts and other entities that use water, claim right to use water or deliver water from the Santa Margarita River System . . ." The Plaintiff-Intervenor has presented no evidence that the list of defendants is inclusive. The United States Court of Appeals for the Ninth Circuit

---

[19] UNITED STATES OF AMERICA, Plaintiff, FALLBROOK PUBLIC UTILITY DISTRICT, SAN MARGARITA MUTUAL WATER COMPANY, et al, Defendants, STATE OF CALIFORNIA, Defendant in Intervention, STIPULATION ON PRE-TRIAL setting forth the Agreed Facts, Filed May 8, 1958, Civil No. 1247-SD, p. 2.

[20] 28 United States Code, Section 1391(b), Venue generally.

addressed this dilemma in 1965. "The court found the decree defective in that it purported to allocate all the waters of the stream between the litigants in disregard of the rights of other users who had not even been made parties." [21] It would seem, in the spirit of fairness, inclusiveness, and nondiscrimination that individuals who are landowners and who are utilizing water from a water district that is using water from the Santa Margarita River watershed should also be served individually with a NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS regarding this complaint.

Although the United States of America is the trustee of the Cahuilla Band of Indians, individual land owners like those just described have recourse to redress a perceived wrong through the legislative branch of the federal government known as the Congress. The House of Representatives Special Subcommittee on Irrigation and Reclamation of the Committee on Interior and Insular Affairs met on August 13, 1951 in Fallbrook, California regarding the "Santa Margarita Water Rights Controversy, California." The chair explained that the subcommittee was also the legislative committee of the House dealing with the problems of water and water law and reclamation law throughout the entire West. He explained that the Constitution ". . . guarantees to the people of this country the right of petition to their Congress and the pendency of litigation in Federal court in no way abridges the right of the people of the United States to petition the appropriate committees of the Congress of the United States." [22] He continued to say "that it has always been the view of the Congress of the United States that the Federal Government owns no water rights other than as any other property owner would own water rights." [23]

---

[21] UNITED STATES OF AMERICA, Appellant and Cross-Appellee vs. FALLBROOK PUBLIC UTILITY DISTRICT, et al., Appellees and Cross-Appellants, STATE OF CALIFORNIA, Intervener, Filed November 29, 1965, No. 18,931, p. 13.

[22] House of Representatives, Special Subcommittee on Interior and Insular Affairs, SANTA MARGARITA WATER RIGHTS CONTROVERSY, CALIFORNIA, Fallbrook, California, p. 3.

[23] Same as above.

16. Plaintiff-Intervenor contends that "Some of the defendants use or claim rights to use water in a manner that impairs the federal reserved water right of the Cahuilla Tribe." Until this defendant is identified as one of the "some of the defendants," it is impossible to answer this claim.

17. Plaintiff-Intervenor alleges that the "The priority dates of the defendants' claimed rights to use water are junior to the federally-protected water rights of the Ramona Band of Cahuilla and its members." The dates are secondary to the issue of federal rights vs. the rights of individual property owners. The issue is how the law will protect the rights of the members of the Ramona Band of Cahuilla **as well as** other individuals. In a letter from the Assistant Attorney General to a member of the House of Representatives he writes, "I wish to assure you through many years of performing services of this character, Mr. Veeder, in full conformity with the policy of this Department, has always sought to protect the citizens to the end that not only the rights of the United States but those of the individual would be equally protected in litigation of this character." [24]

A decision of the United States Court of Appeals for the Ninth Circuit addresses the question of federal sovereignty versus the rights of the individual. The United States brought an action against some three thousand (3,000) defendants to quiet title to water rights claimed to be appurtenant to lands acquired in 1941-1943 and used for various purposes of the army and navy. "The question of 'sovereign rights' of the United States pervades this entire case and has done so from the beginning. Not only that, but the steady beating of the war drums in the government's brief by references to 'military necessity' tends to deflect full consideration from the property rights of ordinary citizens." [25] "Now it must be conceded by

---

[24] UNITED STATES OF AMERICA, Plaintiff vs. FALLBROOK PUBLIC UTILITY DISTRICT et al, Defendants, PEOPLE OF THE STATE OF CALIFORNIA, Defendants in Intervention, Exhibit "B," Letter from Assistant Attorney General Vanech.

[25] PEOPLE OF THE STATE OF CALIFORNIA, Appellant, vs. UNITED STATES OF AMERICA, Appellee, SANTA MARGARITA MUTUAL WATER COMPANY, Appellant, vs. UNITED STATES OF AMERICA, Appellee., United States Court of Appeals for the Ninth Circuit, March 30, 1956, No. 14,049, p. 7.

all parties that the United States had sovereign rights in the enclave. . . But the physical possession of the corpus of the water after it enters the enclave and ability and legal right then to use it for whatever purposes are not evidentiary of a water right, for the right to use water is a property right and is appurtenant to particular parcels of land." [26] "This case must be remanded because of the apparent misconceptions of the law of the enclave by the trial court and the application of the theory of sovereignty to the subversion of vested and inchoate private rights." [27]

18. Defendant denies that the Cahuilla Tribe will be injured by Defendant's ". . ongoing interference with the Tribe's senior, federal reserved water rights to the Santa Margarita River System and underlying groundwater." In Interlocutory Judgment No. 33 Judge Carter stated,

> "That no surface diversion or use of the waters of Cahuilla or Wilson Creeks, or their tributaries or extraction of use of the ground waters contained within the Anza Ground Water Basin or the Cahuilla Ground Water Basin have been open, notorious, adverse or hostile to any party in this cause and no prescriptive rights to the use of the surface or ground waters from any such diversion or extraction or use exists." [28]

Regarding appropriative rights and applications filed with the California State Water Rights Board, Judge Carter stated,

> "This Court finds that such factual statements are true and the applicants for appropriate said waters as appear on said exhibits have such water rights as such stated facts warrant under and pursuant to the laws of the State of California concerned with appropriation of water." [29] (Inter 33 p. 14.)

---

[26] PEOPLE OF THE STATE OF CALIFORNIA, Appellant, vs. UNITED STATES OF AMERICA, Appellee, SANTA MARGARITA MUTUAL WATER COMPANY, Appellant, vs. UNITED STATES OF AMERICA, Appellee., United States Court of Appeals for the Ninth Circuit, March 30, 1956, No. 14,049, p. 8.

[27] Same as above, p. 9.

[28] FINDINGS OF FACT, CONCLUSIONS OF LAW, AND INTERLOCUTORY JUDGMENT NO. 33 PERTAINING TO ANZA AND CAHUILLA GROUND WATER BASINS AND CAHUILLA AND WILSON CREEKS, Filed December 11, 1962, No. 1247-SD-C, p. 14.

[29] Same as above.

These statements contradict the allegation by the Cahuilla Tribe of ". . . ongoing interference with the tribe's federal reserved water rights . . ."

19. Defendant denies that the Cahuilla Tribe will be ". . . adversely affected and irreparably harmed . . ." by the Defendant. No evidence has been presented to support this allegation.

20. It is incumbent upon the Plaintiff-Intervenor to prove that "Plaintiff's injury in fact is . . . traceable . . ." to Defendant's conduct.

21. – 28. These allegations are repetitious and have already been addressed by Defendant.

29. Defendant denies that "The [defendant's] withdrawal and use of the groundwater underlying and adjacent to the Cahuilla Reservation adversely affects the ability of the Cahuilla Tribe and its members to exercise their senior, federal reserved water rights . . ." These "federal reserved water rights" are not limitless by definition. In addition to the 4.2 acre feet of water cited earlier, in Interlocutory Judgment No. 41, Judge Carter set forth water duty requirements for irrigation on the Cahuilla Indian Reservation for various crops and stated that

> ". . . such findings concerning water duty and irrigable acreage as set forth in these findings shall be <u>prima facie</u> evidence as to these facts *in any future proceedings wherein the question of water duty or irrigable acreage is relevant.* As used herein, <u>prima facie</u> evidence shall mean that which suffices for the proof of a particular fact until contradicted or overcome by other evidence." [30] [Italics mine.]

30. Defendant denies that "[Defendant's] withdrawal and use of the groundwater underlying and adjacent to the Cahuilla Reservation is increasing, thereby further threatening plaintiff Cahuilla Tribe's ability to achieve economic self-sufficiency now and in the future."

Judge Carter made clear that the water rights in Interlocutory Judgment No. 41 were not infinite when he wrote,

---

[30] FINDINGS OF FACT, CONCLUSIONS OF LAW AND INTERLOCUTORY JUDGMENT NO. 41 CONCERNING THE RIGHTS TO THE USE OF WATERS OF SANTA MARGARITA RIVER STREAM SYSTEM HELD IN TRUST BY THE U.S.A. IN CONNECTION WITH THE RAMONA, CAHUILLA AND PECHANGA INDIAN RESERVATIONS. UNITED STATES OF AMERICA, Plaintiff, vs. FALLBROOK PUBLIC UTILITY DISTRICT, et al., Defendants, No. 1247-SD-C, pp. 14-15.

> "That ***except as expressly provided hereinabove there are no rights to the use of the waters*** of the Santa Margarita River and its tributaries or waters which add to and support said River and its tributaries owned or held by the United States of America in trust for the Indians or in trust as to said Indian Reservations."[31]

No evidence has been presented that the quantifiable amounts of water, as stated in Interlocutory Judgment No. 41, have not been available to the Cahuilla Tribe. Nor has any evidence been presented that indicates that the Cahuilla Tribe has ever suffered from a lack of sufficient water.

    If the Cahuilla Tribe is laying claim to waters ". . . adjacent to the Cahuilla Reservation . . .," there may be a conflict with land owners whose properties are located adjacent to the reservation. If the tribal members desire to take water already vested as a right for some defendants, they will have to accomplish it through eminent domain. This action may result in claims for just compensation by the users, a costly proposition with thousands of landowners named as defendants in this case.

    31. – 36. These allegations are repetitious and have already been addressed by Defendant.

    38. – 39. Plaintiff-Intervenor must cite laws which have been broken in order for actions of Defendant to be considered "illegal."

    As a final word, Judge Carter in both Interlocutory Judgment No. 33 and No. 41 ordered that, ". . . this is not a final decree but is interlocutory in nature and by reason of the order by this Court that ***all parties are adverse one to the other***, thus dispensing with cross pleadings . . ."[32] The resulting complications resulting from such a situation were addressed by the Defendant in the INTRODUCTION to this FIRST AMENDED ANSWER.

---

[31] FINDINGS OF FACT, CONCLUSIONS OF LAW, AND INTERLOCUTORY JUDGMENT NO. 33 PERTAINING TO ANZA AND CAHUILLA GROUND WATER BASINS AND CAHUILLA AND WILSON CREEKS, Filed December 11, 1962, No. 1247-SD-C, p. 26.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND INTERLOCUTORY JUDGMENT NO. 41 CONCERNING THE RIGHTS TO THE USE OF WATERS OF SANTA MARGARITA RIVER STREAM SYSTEM HELD IN TRUST BY THE U.S.A. IN CONNECTION WITH THE RAMONA, CAHUILLA AND PECHANGA INDIAN RESERVATIONS. UNITED STATES OF AMERICA, Plaintiff, vs. FALLBROOK PUBLIC UTILITY DISTRICT, et al., Defendants, No. 1247-SD-C, p. 23.

## JUDGMENT AND RELIEF

1. The Defendant requests that the Court deny the relief sought by the Cahuilla Band of Indians in **PARAGRAPHS 31-39, CLAIM FOR RELIEF,** and **PARAGRPHS A.–G, PLAINTIFF'S PRAYER FOR RELIEF.**

2. Whereas real estate values have plummeted, and there is rancor between parties living in close proximity to each other, the Defendant asks the Court for a judgment directing the Cahuilla Band of Indians to cease and desist from this litigation and to seek a solution to their alleged water problem through consensus of interested parties;

3. The Defendant asks the Court to be relieved of all liability regarding this suit since the Defendant has properties which are used only for domestic purposes and could have little effect upon the use of water by the Cahuilla Band of Indians;

4. The defendant requests the Court to relieve the Defendant of any and all costs for the suit demanded by the Plaintiff-Intervenor;

5. The Defendant asks the Court to award costs and such other relief to the Defendant as the Court may deem to be just and proper; and

6. If the Plaintiff-Intervenor persists in pursuing this suit, then the Defendant asks the Court to consider relieving her from continuing with the suit.

Dated: June 6, 2008                                Respectfully submitted,

_____
Mary E. Lee, Ph.D. *Defendant Pro Se*
41085 Lakeshore Blvd.
Aguanga, CA 92536
(951) 763-9644