1  CURTIS G. BERKEY (SBN 195485)         JOHN KARACZYNSKI (SBN 93108)
   SCOTT W. WILLIAMS (SBN 097966)        RODNEY B. LEWIS (*Pro Hac Vice*)
2  Alexander, Berkey, Williams & Weathers LLP   JAMES MEGGESTO (*Pro Hac Vice*)
   2030 Addison Street, Suite 410        Akin Gump Strauss Hauer & Feld LLP
3  Berkeley, CA  94704                   2029 Century Park East, Suite 2400
   Telephone: (510) 548-7070            Los Angeles, California 90067-3012
4  E-mail: cberkey@abwwlaw.com           Telephone: (310) 229-1000
   E-mail: swilliams@abwwlaw.com         E-mail: rlewis@akingump.com
5  *Attorneys for Plaintiff-Intervenor*   E-mail: jmeggesto@akingump.com
   *Ramona Band of Cahuilla Indians*     *Attorneys for Plaintiff-Intervenor/Defendant*
6                                        *Pechanga Band of Luiseño Indians*

7

8  MARCO GONZALEZ (SBN 190832)          C. MICHAEL COWETT (SBN 53353)
   169 Saxony Road, Suite 204            Best Best & Krieger LLP
9  Coast Law Group LLP                   655 West Broadway, 15th Floor
   Encinitas, CA  92024                  San Diego, CA  92101
10 Telephone: (760) 942-8505            Telephone: (619) 525-1336
   E-mail: marco@coastlawgroup.com       Michael.Cowett@bbklaw.com
11 *Attorney for Plaintiff-Intervenor*   *Attorney for Rancho California Water District*
   *Cahuilla Band of Indians*

12 PATRICK BARRY (*Pro Hac Vice*)
13 United States Department of Justice
   P.O. Box 44378
14 Washington, D.C.  20026-4378
   Telephone: (202) 305-0254
15 E-mail: Patrick.Barry@usdoj.gov
   *Attorney for the United States*
16

17                    UNITED STATES DISTRICT COURT
18                  SOUTHERN DISTRICT OF CALIFORNIA

19
   UNITED STATES OF AMERICA,            Case No.: 51-cv-1247-SD-GTT
20
                     Plaintiff,
21                                        **JOINT REPLY TO OPPOSITION TO**
   RAMONA BAND OF CAHUILLA,              **JOINT MOTION TO STAY**
22 CAHUILLA BAND OF INDIANS, *et al*.    **PROCEEDINGS PENDING**
                                          **SETTLEMENT NEGOTIATIONS**
23                   Plaintiff-Intervenors,
                                          Hearing Date:  June 30, 2008
24        v.                              Time:  2:00 pm
                                          Courtroom:  8
25 FALLBROOK PUBLIC UTILITY
   DISTRICT, *et al.*,
26                                        Hon. Gordon Thompson, Jr.
                     Defendants.
27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# I.     A STAY WILL NOT PREJUDICE DEFENDANT MR. BURNETT AND OTHER DEFENDANTS

Defendant Mr. Burnett argues that he and other unidentified persons would be prejudiced by a stay because allegedly the Ramona and Cahuilla Tribes have unreasonably delayed in "effecting service of process."  Memorandum of Points and Authorities in Partial Opposition to Temporarily Stay the Proceedings at 8-10 (hereafter "Memo").  This is incorrect.

The two Tribes have diligently prosecuted this action to quantify their water rights.  Because of the large number of defendants that may have an interest in this adjudication, shortly following the granting of intervention, the Tribes requested special service procedures as authorized by law to provide an orderly and cost efficient method of notifying the large group of defendants.  This Court denied that motion on July 24, 2007, and required the Tribes to "name the appropriate defendants" and properly serve them under Rule 4(d) of the Federal Rules of Civil Procedure.  Order of July 18, 2007 (Dkt. No. 4941).

Perhaps because of the age of this case, there is no current list of defendants.  Accordingly, the Tribes immediately began the task of identifying the successors to the original parties.  In light of the enormity of that task, on October 3, 2007, this Court granted the Tribes' request for an extension of time to complete service under Rule 4(d) through February 22, 2008.  (Dkt. No. 4946).  Simultaneously, the Tribes sought to structure a settlement process with interested parties, and several negotiation meetings were held.  On February 1, 2008, this Court granted the Tribes' motion to stay the proceedings for 60 days from February 22, 2008, to allow settlement discussions to proceed.  (Dkt. No. 4949)  However, based on events unrelated to the Tribes' conduct, on February 25, 2008, this Court vacated the stay and ordered the Tribes to "serve within 30 days all water right holders, subject to the Court's jurisdiction" and further ordered the Tribes "to complete service to the parties below the Vail Lake area" by April 30, 2008.  (Dkt. No. 4954).

Determination of the identities of the landowners subject to this Court's jurisdiction required substantial effort and resources.  The process involved three major steps:  1) determination of the boundaries of the ground water areas and surface streams as set forth in the various interlocutory judgments applicable to particular areas; 2) by use of county public real property tax records,

- 1 -

1  determination of the location, and identity and address of owners of land parcels; and 3) determination

2  of  those parcels that overlie or are adjacent to a water source that is subject to the Court's jurisdiction

3  and exclusion of those parcels that do not (alluvium, basement complex and deep aquifer).  Declaration

4  of Oliver Page at ¶¶ 3-6; Declaration of Curtis Berkey at ¶¶ 3-7.  This process took approximately

5  three months to complete.  Page Declaration at ¶ 6.

6        On March 26, 2008, the Tribes mailed 4(d) Notices of Lawsuit and Request for Waiver of

7  Service of Summons to 2,233 defendants subject to this Court's jurisdiction.  Berkey Declaration at ¶

8  8.  To allow sufficient time for the recipients to review the complaints, consult with counsel and decide

9  whether to sign and return the waiver, the Notice allowed 45 days for return of signed waivers, 15 days

10  longer than the minimum required by Rule 4(d).  The Tribes have received 492 signed waivers from

11  this group of defendants.  Only 16 were returned as undeliverable.  *Id* at ¶ 11.  The Tribes received

12  many requests for extensions of time for return of the waivers and filing of answers or responsive

13  motions.  To accommodate these requests, the Tribes have agreed to extensions and presented them to

14  this Court for approval pursuant to Local Rule 7.1.  Signed waivers are still being received.

15        On April 17, 2008, the Tribes sent the Notice and Request for Waiver of Service of Summons

16  to 385 landowners down gradient of Vail Lake.  Berkey Declaration at ¶ 9.  In addition, on April 30,

17  2008, the Tribes sent the Notice and Request for Waiver of Service of Summons to the water districts

18  located within the Santa Margarita River Watershed.[1]  Berkey Declaration at ¶ 10.  The water districts

19  were served in a representative capacity, as agents for service for their customers who own land

20  overlying ground water or adjacent to surface water subject to this Court's jurisdiction according to

21  applicable interlocutory judgments.  The Tribes have received waivers from the Eastern Municipal

22  Water District and the Rainbow Municipal Water District.  For the defendants below Vail Lake, the

23  Tribes have received 104 signed waivers.  Berkey Declaration at ¶ 11.  The deadline for return of those

24  waivers was June 14, although the Tribes have agreed to several extensions.

25

26

27        [1] The water districts include Rancho California Water District, Eastern Municipal Water District, Western Municipal Water District, Rainbow Municipal Water District; Elsinore Valley Municipal Water District; and Fallbrook Public Utility District.

28

1       The Tribes have vigorously worked to comply with this Court's Order to serve defendants

2  subject to the Court's jurisdiction pursuant to Rule 4(d). If there is delay here, it is perhaps most

3  attributable to Mr. Burnett and the large group of unidentified defendants for whom he purports to

4  speak. Mr. Burnett admits that he and others in his group of landowners received copies of the Tribes'

5  complaints. Burnett Declaration at ¶¶ 9, 11. He admits that he and others knowingly refused to return

6  the waivers to the Tribes, contrary to their obligation under Rule 4(d) to avoid the cost of personal

7  service by signing and returning the waiver of service of summons. *Id.* The legal duty in this regard is

8  unequivocal: "An individual, corporation or association that is subject to service . . . has a duty to

9  avoid unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d)(1). The significance of

10 this duty is underscored in the Tribal Notice, which contains the required statement under the bold

11 heading "Duty to Avoid Unnecessary Expenses of Serving a Summons."

12      Mr. Burnett suggests he, and presumably others whom he does not name, was justified in not

13 returning the waiver because the means of mailing was defective and the Notice contained erroneous

14 instructions with regard to co-owners. Burnett Declaration at ¶ 10. These suggestions do not merit

15 serious consideration.[2] The Tribes mailed the Notices by United States Postal Service using a bulk

16 mail rate to conserve resources. Rule 4(d) requires the Notice to be sent by "first-class mail or other

17 reliable means." Fed. R. Civ. P. 4(d)(1)(G). Mailing the Notices by bulk mail is surely a reliable

18 means, as demonstrated that only 16 mailings were returned unopened or undelivered to the addressee.

19 In any event, Mr. Burnett admits he received the Notice and alleges that his 1,000 colleagues did as

20 well.[3]

21 _____

22      [2] The Advisory Committee Note accompanying Rule 4(d) states that "sufficient cause [for a failure to return the waiver] should be rare" and suggests only two instances in which good cause may

23 exist: 1) when a defendant did not receive the request; or 2) when a defendant was insufficiently literate in English to understand the request. Fed. R. Civ. P. 4 Advisory Committee Note (1993). As

24 one commentator has noted, the purpose of restricting the circumstances in which good cause may be found is to prevent defendants from unnecessarily driving up the costs of litigation, which apparently is

25 Mr. Burnett's intent here. Wright and Miller, *Federal Practice and Procedure: Civil 3d* § 1092.1 (2002) (noting also that claiming that the court lacks jurisdiction over the case is not good cause).

26      [3] Mr. Burnett cannot complain about the instruction in the Notice with regard to co-owners.

27 He is not a co-owner so the instruction with regard to that circumstance does not apply to him. He does not assert that any of the 1,000 landowners for whom he purports to speak are co-owners. Even if

28 they were, the instruction was not erroneous. The Notice fully complied with the requirements of due process. The names of co-owners and the nature of their interest in the property were not readily

1    The refusal of Mr. Burnett, and the group he purports to represent, to sign and return the waiver

2    impedes the sensible and expeditious prosecution of this action.  Approximately one-fourth of the

3    defendant landowners have returned signed waivers, and as to that group, the Ramona and Cahuilla

4    Tribes have already begun discussions aimed toward out-of-court settlements.  The refusal of Mr.

5    Burnett's group may impose short term costs on the Ramona and Cahuilla Tribes if they are required to

6    personally serve them, but ultimately the costs will fall on the defendants.  Rule 4(d) obligates the

7    court to impose on non-waiving defendants the "expenses incurred in making service and "the

8    reasonable expenses, including attorneys fees, of any motion required to collect those service

9    expenses."  Fed. R. Civ. P. 4(d)(2)(A), (B).  A proceeding to collect the costs of personal service will

10   further complicate and delay the resolution of the merits of this action, but this delay will be

11   attributable to Mr. Burnett and not the Ramona and Cahuilla Tribes.

12   **II.    THE TRIBES HAVE SHOWN SUFFICIENT HARDSHIP TO JUSTIFY A STAY**

13   The requirement of the moving party to show hardship in being required to go forward is

14   minimal when the prejudice to the non-moving party is less than a "fair possibility."  *Dependable*

15   *Highway Exp., Inc. v. Navigators Ins. Co.,* 498 F.3d 1059, 1066 (9th Cir. 2007).  Mr. Burnett has not

16   met his burden to show prejudice from the granting of a stay, so the Ramona and Cahuilla Tribes'

17   burden to show hardship in being required to litigate their claims is correspondingly reduced.

18   To be sure, in ordinary litigation, the obligation to prosecute the action, without more, is

19   generally not sufficient hardship to justify a stay.  *See, Lockyer v. Mirant,* 398 F.3d 1098, 1112 (9th Cir.

20   2005).  But this is an extraordinary case involving thousands of defendants.  The litigation is in its

21   early stages, but the pleadings that have been filed thus far strongly suggest that the complexity and

22   magnitude of this case justify a stay to allow settlement discussions to proceed unhindered by litigation

23   demands.  Among the 596 defendants who have returned signed waivers, 20 have filed Answers or

24

25   ascertainable by the Tribes, as the Counties' public records do not contain the names of such co-owners

26   on their real property tax rolls.  The Notices were sent to the owner registered with the County for
     purpose of real property tax bill notification.  Under the circumstances, the Tribal Notices were

27   reasonably calculated to inform the owners of the pendency of the Tribes' claims, which is all that due
     process requires.  *See e.g., Mennonite Board of Missions v. Adams,* 462 U.S. 791, 799 (1983).  In any

28   event, a purported defect in notice to one party is not sufficient for another party to refuse to sign and
     return the waiver.

other responses.  Deadlines for pretrial proceedings before the "assigned Judicial Officer supervising discovery" are rapidly approaching, and in the absence of a case management order from this Court consolidating claims, issues or parties, the Tribes and the defendants will be required to conduct such proceedings one at a time.  Local Rule 16.5.l.  Many of the defendants have expressed interest in settlement discussions.  In light of the existence of common facts and issues with regard to affirmative defenses, this case is especially well-suited to a stay to allow the parties to seek to fashion remedies that are appropriate to their circumstances.[4]

### III.   GRANTING THE MOTION FOR STAY PROMOTES THE ORDERLY COURSE OF JUSTICE, JUDICIAL ECONOMY AND ELIMINATES UNNECESSARY COSTS FOR ALL PARTIES TO THE LITIGATION.

Mr. Burnett misconstrues the purpose and benefit that a stay will provide to all parties and the Court.  As a general rule, "the law favors and encourages compromise settlements."  *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977).  This rule is based on the notion that "there is an overriding public interest in settling and quieting litigation."  *Id.*  "The primary purpose of a compromise settlement is to avoid the necessity of determining sharply contested and dubious issues."  *Cal. Associated Prods. Co. v. Wil-Rud Corp.*, 183 F.2d 946, 949-950 (9th Cir. 1950).  Moreover, settlements encourage the "avoidance of wasteful litigation as well as the expense[s] incident thereto."  *Pfizer v. Lord*, 456 F.2d 532, 543 (8th Cir. 1972).

This proceeding involves more than two thousand water users and complex issues relating to the interpretation of orders and judgments issued by this Court and the quantification of two different Tribes' water rights.[5]  Continued litigation of the issues presented by the two Tribes' complaints will require the expenditure of hundreds of thousands of dollars by the parties and could take years to

---

[4]  The hardship element is particularly telling with respect to two of the moving parties for the Joint Stay:  Pechanga and Rancho California Water District.  Both have an interest in the prosecution and outcome of the claims being litigated by Ramona and Cahuilla, particularly as to their precedential effect on similar claims that Pechanga could prosecute but which Pechanga has, pending its own series of independent settlement negotiations, not sought to pursue at this time.  Neither Pechanga nor Rancho sought this litigation and would strongly prefer that it be stayed to at least allow their own, separate negotiations an opportunity to develop and succeed, an outcome for which those two parties have an optimistic view.

[5]  This case could ultimately also include quantification of Pechanga's water rights depending on how the litigation proceeds, if at any point the Tribe determines that it is necessary to file a Motion to Quantify in order to fully protect its interests.

Joint Reply to Opposition in Response to Joint Motion for Stay                    Case No. 51-1247-SD-GT

finally resolve.  Indeed, "[t]he typical stream adjudication law suit can take decades to complete, leave in an uncertain state for that time the legal title to water of thousands of claimants, cost millions of dollars for all parties, polarize communities and leave unanswered all but the issue of bare title to water rights."  John A. Folk-Williams, *The Use of Negotiated Agreements to Resolve Water Disputes Involving Indian Rights*, 28 Nat. Resources J. 63, 69 (Winter 1988).

This litigation has been on-going since 1951 and while the Court has issued numerous interlocutory judgments relating to various parties' water rights, significant issues that potentially impact all water users remain under the continuing jurisdiction of the Court and have yet to be decided, including quantification of the two Tribes water rights.[6]  The filing of the two Tribes' complaints has admittedly caused uncertainty among water users in the Santa Margarita Watershed.  But the Tribes are seeking to do only what the Court expressly reserved for future determination – quantification of their water rights.  Interlocutory Judgment 41 at ¶ 16 (Nov. 08, 1962) (Dkt. No. 4430).

Granting the stay so that the Tribes can meaningfully engage their neighbors and surrounding communities in negotiation discussions allows the Tribes to fully devote their time and resources to community outreach, information sharing and efforts to reach a settlement that benefits all water users. In turn, individual water users, like Mr. Mr. Burnett, including many of whom likely have limited resources, will similarly be able to dedicate their resources to reach a compromise rather than litigate towards an uncertain ending that may ultimately be contrary to their interests.

The stay will allow the parties to devise a sensible and reasonable way to structure a process and conduct settlement negotiations in coordination with the Federal Negotiation Team.  Responses to the Notice of Lawsuit and Answers to the Complaint show that a number of Defendant groups can be identified and organized to participate in settlement discussions.[7]  Some of the discussions have already begun.  Ramona has nearly completed settlement discussions with one Defendant.[8]

---

[6] As noted above previously Pechanga's water rights have also not been quantified, and although Pechanga has chosen not to seek quantification at this time it reserves the right to do so in the future.  *See* Joint Motion to Stay at n.3.

[7] The two Tribes are aware that if the litigation continues without a stay it will be necessary to personally serve their Complaints on many individuals, or to serve them pursuant to state law procedures.  However, that does not mean that these individuals are not aware of the litigation and

If the stay is denied, the potential for serious negotiation discussions will severely diminish because of the enormous amount of time required to prepare for a trial on each of the Tribe's quantification questions (including devoting significant time and resources to participation in discovery, depositions, briefing on the merits, resolution of procedural issues and defending and opposing motions).  But granting a stay for purposes of negotiation creates the opportunity for parties to come together outside the adversarial process and work towards solutions that are mutually beneficial in addressing the needs of all parties.

## IV.   CONCLUSION

This Joint Motion for a Stay requires the Court to balance competing interests.  Considering the lack of prejudice to Mr. Burnett and the hardship to the Tribes in being required to go forward, the Tribes submit that the most efficient and fairest course is to stay this case for 90 days to allow a meaningfully explore settlement and develop a process for further negotiations.

Respectfully submitted,

Dated:  June 23, 2008

ALEXANDER, BERKEY, WILLIAMS &        COAST LAW GROUP LLP
WEATHERS LLP

By:s/Curtis G. Berkey                            By:s/Marco Gonzalez
    CURTIS G. BERKEY (SBN 195485)            Marco Gonzalez
    SCOTT W. WILLIAMS (SBN 97966)           169 Saxony Road, Suite 204
    2030 Addison Street, Suite 410              Encinitas, CA  92024
    Berkeley, CA  94704                         Telephone: (760) 942-8505
    Telephone: (510) 548-7070                  E-mail: marco@coastlawgroup.com
    E-mail: cberkey@abwwlaw.com               *Attorney for Plaintiff-Intervenor*
    E-mail: swilliams@abwwlaw.com             *Cahuilla Band of Indians*
    *Attorneys for Plaintiff-Intervenor*
    *Ramona Band of Cahuilla Indians*

/ / /

/ / /

cannot be identified for purposes of pursuing a settlement.  Even Mr. Mr. Burnett himself has conceded that he received the Tribes' Notices of Lawsuit and Request for Waiver of Service.

[8] Pechanga has also reached private agreements with entities like Rancho California Water District that would ultimately be tied into a comprehensive settlement of the Tribe's water rights.

- 7 -

AKIN GUMP STRAUSS HAUER &
FELD LLP


By:s/Rodney B. Lewis
    Rodney B. Lewis
    2029 Century Park East, Suite 2400
    Los Angeles, California 90067-3012
    Telephone: (310) 229-1000
    E-mail: rlewis@akingump.com
    E-mail: jmeggesto@akingump.com
    *Attorneys for Plaintiff-*
    *Intervenor/Defendant*
    *Pechanga Band of Luiseño Indians*


BEST BEST & KRIEGER LLP


By:s/C. Michael Cowett
    C. Michael Cowett
    655 West Broadway, 15th Floor
    San Diego, CA   92101
    Telephone: (619) 525-1336
    Michael.Cowett@bbklaw.com
    *Attorney For Rancho*
    *California Water District*

UNITED STATES OF AMERICA


By:s/Patrick Barry
    Patrick Barry
    United States Department of Justice
    P.O. Box 44378
    Washington, D.C.  20026-4378
    Telephone: (202) 305-0254
    E-mail: Patrick.Barry@usdoj.gov
    *Attorney for the United States*

Joint Reply to Opposition in Response to Joint Motion for Stay    Case No. 51-1247-SD-GT