1

2    Marco A. Gonzalez (SBN 190832)
     COAST LAW GROUP, L.L.P.
3    169 Saxony Road, Suite 204
     Encinitas, California 92024
4    Tel: 760-942-8505
     Fax: 760-942-8515
5

6    Scott B. McElroy (Pro Hac Vice)
     M. Catherine Condon (Pro Hac Vice)
     McELROY, MEYER, WALKER & CONDON, P.C.
7    1007 Pearl Street, Suite 220
     Boulder, Colorado  80302
8    Tel:  303-442-2021
     Fax: 303-444-3490
9    sbmcelroy@mmwclaw.com
     ccondon@mmwclaw.com
10

11   *Attorneys for Plaintiff in Intervention,*
       *Cahuilla Band of Indians*

12   **Additional attorney on next page**

13                    **IN THE UNITED STATES DISTRICT COURT**
                       **SOUTHERN DISTRICT OF CALIFORNIA**
14

15   UNITED STATES OF AMERICA,          )    Case No. 51-cv-1247-GT-RBB
                                        )
16          Plaintiff,                  )
                                        )
17   RAMONA BAND OF CAHUILLA,           )    Hearing Date: April 27, 2009
     CAHUILLA BAND OF INDIANS,          )    Time:        2:00 p.m.
     federally recognized Indian tribes,)    Courtroom:   8
18                                      )
            Plaintiffs in Intervention, )    Hon.  Gordon Thompson, Jr.
19                                      )
            v.                          )    **REPLY MEMORANDUM OF THE**
20                                      )    **CAHUILLA BAND OF INDIANS AND THE**
                                        )    **RAMONA BAND OF CAHUILLA TO THE**
21   FALLBROOK PUBLIC UTILITY           )    **OPPOSITIONS BY THE PECHANGA**
     DISTRICT, a public service corporation )  **BAND OF LUISEÑO INDIANS AND THE**
     of the State of California, et al.,  )  **SAN DIEGO STATE UNIVERSITY**
22                                      )    **RESEARCH FOUNDATION AND THE**
            Defendants.                 )    **STATEMENT OF THE STATE OF**
23   _____  )    **CALIFORNIA**

24

25

26

27

28
     _____
     Tribes' Reply Memorandum  to Oppositions                    Case No. 51-cv-1247-GT-RBB

1

2　Curtis G. Berkey
　ALEXANDER, BERKEY, WILLIAMS
3　 & WEATHERS, L.L.P.
　2030 Addison Street, Suite 410
4　Berkeley, CA 94704
　Tel: 510-548-7070
5　Fax: 510-548-7080
　cberkey@abwwlaw.com
6
　*Attorney for Plaintiff in Intervention,*
7　 *Ramona Band of Cahuilla*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In this memorandum, the Ramona Band of Cahuilla and the Cahuilla Band of Indians ("Tribes") reply to the *Opposition of San Diego State University Research Foundation to Joint Motion to Dismiss Claims Against Certain Defendants* (Apr. 14, 2009) ("SDSU Opposition"); *Opposition of San Diego State University Research Foundation to Motion for Leave to File Second Amended Complaints in Intervention* (Apr. 14, 2009); *Pechanga Band of Luiseno Indians' Opposition to Plaintiffs' Motion to Dismiss Claims Against Certain Defendants* (Apr. 15, 2009) ("Pechanga Opposition"); and *Statement of Specially Appearing Intervenor State of California Regarding Joint Motions to Dismiss and Joint Motions for Leave to File Second Amended Complaints in Intervention* (Apr. 15, 2009) ("State Statement").  In a separate memorandum, the Tribes respond to the requests for attorney fees and other conditions to the proposed dismissal of claims against parties using water outside of the Anza Cahuilla Sub-basin ("Sub-basin").

## I.  <u>BACKGROUND.</u>

In the earlier stages of this litigation, the United States requested the Court to determine the nature and scope of the Tribes' rights and those of the Pechanga Band of Luiseño Indians ("Pechanga Band").  *See Reporters Transcript of Proceedings* at 20,266-20,268 (Aug. 8, 1962). Although the Court refused to quantify the tribal rights, it issued *Findings of Fact, Conclusions of Law, and Interlocutory Judgment 41 Concerning the Rights to the Use of Waters of Santa Margarita River Stream System Held in Trust by the U.S.A. in Connection with the Ramona, Cahuilla and Pechanga Reservations* (Nov. 8, 1962) ("IJ 41"), which established certain controlling principles regarding the Tribes' rights and those of the Pechanga Band.  The Court did not quantify the Tribes' rights.  Today, the import of many of the  IJ 41 principles are the subject of dispute among the parties.  Moreover, IJ 41 does not provide the specificity required to protect the Tribes' rights from interference from other water users.  *See In Re the General Adjudication of All Rights to Use Water in the Gila River System and Source,* 989 P.2d 739, 750 (Ariz. 1999) ("[O]nce a federal reservation establishes a reserved right to groundwater, it may invoke federal law to protect its groundwater from subsequent diversion to the extent such protection is necessary to fulfill its reserved right.").

Accordingly, in 2006, with groundwater usage increasing in the Sub-basin, the Tribes sought to intervene in this case to have their rights quantified in order to protect those rights from infringement by other water users. *See Ramona Band of Cahuilla's First Amended Complaint in Intervention* at 5 (July 2, 2007) ("Ramona Amended Complaint"); *Cahuilla Band of Indians' First Amended Complaint in Intervention* at 8-9 (July 9, 2007) ("Cahuilla Amended Complaint"). The Tribes asked the Court to quantify their rights and to enjoin those uses of water which would interfere with their ability to secure the water to which they are entitled. Ramona Amended Complaint at 5; Cahuilla Amended Complaint at 8-9. The Court ordered the Tribes to "serve any defendant that the [Tribes] expect to be bound by the Court's judgment." *Order* at 2 (July 17, 2007); *see also Minute Entry* (Feb. 25, 2008). The Tribes mailed requests for waiver of service pursuant to FED. R. CIV. P. 4 (d) to entities in the Santa Margarita watershed, both inside and outside the Sub-basin. Thereafter, the Tribes asked the Court to stay the litigation so that the parties, with the assistance of a federal negotiating team, could pursue the possible settlement of the Tribes' claims. *Notice of Joint Motion and Joint Motion for a Temporary Stay of Proceedings Pending Settlement Negotiations* (June 6, 2008). The Court granted that request. *Order Granting Joint Motion for a Temporary Stay of Proceedings Pending Settlement Negotiations* (June 30, 2008).

To date, the settlement discussions have been dominated by the concern of entities outside of the Sub-basin that they should not be included in the proceeding to further define the Tribes' rights since the out-of-basin use of water will not affect the availability of water to meet the tribal rights. In addition, questions have arisen about adequacy of the Tribes' service efforts. Because there is no current list of parties subject to the Court's jurisdiction, service on all of the parties outside of the Sub-basin who use or claim the right to use water from the Santa Margarita Watershed has proven to be a difficult, expensive and time-consuming job for the Tribes and threatens to preclude the judicial determination of the Tribes' rights.

The Tribes now seek to dismiss claims against certain parties outside the Sub-basin and to amend their complaints to limit the adjudication to the Sub-basin. *See Notice of Joint Motion and Joint Motion to Dismiss Claims Against Certain Defendants* (Apr. 1, 2009); *Notice of Joint*

*Motion and Joint Motion for Leave to File Second Amended Complaints in Intervention* (Apr. 1, 2009) (together "Joint Motions").  While the Tribes continue to ask the Court to quantify and protect those rights from improper interference, the Tribes presently seek no relief against entities using water outside of the Sub-basin.  The Tribes expressly ask the Court to declare that any resulting judgment shall not be binding on such parties.  *See, e.g., Cahuilla Band of Indians' Second Amended Complaint in Intervention* at 9 (Apr. 1, 2009) ("Cahuilla Second Amended Complaint").

Although a few parties seek to condition the dismissal of the entities outside of the Sub-basin, only San Diego State University Research Foundation ("SDSU") and the Pechanga Band, both of whom use water outside of the Sub-basin, oppose the Tribes' request to limit the adjudication to issues within the Sub-basin.  In addition, although apparently not opposing the limitation of the litigation to issues within the Sub-basin, the State of California ("State") -- which the Tribes understand owns property within the Sub-basin -- has advised the Court "that it does  not waive any of its rights or party status by not opposing [the Tribes'] Motions at this time."  State Statement at 1.  The Tribes respond to these concerns as follows.

## II.  ARGUMENT.

### A.  DISMISSAL OF THE OUT OF SUB-BASIN PARTIES WILL NOT ADVERSELY AFFECT THE INTERESTS OF SDSU.

SDSU's arguments are fundamentally flawed.  First, although recognizing that the standard for denying dismissal is "plain legal prejudice," SDSU Opposition at 2, SDSU never describes its own rights, let alone demonstrates that any such rights would be adversely affected by the proposed dismissal of claims against parties outside of the Sub-basin.  Second, SDSU wrongfully contends that the Tribes seek to have the Court adjudicate the Tribes' rights against parties outside of the Sub-basin or to otherwise bind such parties by the results of any settlement or adjudication.  *See* SDSU Opposition at 6 ("[D]ownstream users will be bound by the determination in this matter.").  Third,  SDSU mistakenly believes that the case as presently structured will result in the "quantification of the water rights of all impacted parties . . . ." SDSU Opposition at 5.

1    **1.    SDSU's Legal Interests Will Be Protected if the Adjudication Is Limited to the Sub-basin.**

Contrary to SDSU's contentions, the Tribes have expressly asked the Court to declare that any judgment shall not affect the rights of parties using or claiming the right to use water outside of the Sub-basin. *See, e.g.,* Cahuilla Second Amended Complaint at 9 (requesting the Court to "[d]eclare and confirm that nothing in the resulting judgment shall bind or otherwise affect the rights of those parties to the Fallbrook litigation that use or claim rights to use surface and/or ground water outside of the Sub-basin."). To be sure, SDSU and the other parties outside of the Sub-basin are bound by the terms of IJ 41, but the proposed effort to further quantify and protect the Tribes' rights to use the water supplies of the Sub-basin will not be binding on such parties. Moreover, SDSU has not advised the Court or the parties of the nature of the rights which it claims in the Santa Margarita Watershed nor demonstrated that any such rights would be legally or physically affected by the quantification of the Tribes' rights to use water within the Sub-basin. In the absence of a determination of SDSU's rights and a hydrological determination that tribal uses infringe on such rights, the Court would not, in any event, be able to limit tribal water use within the Sub-basin. Thus, as a legal matter, the interests of SDSU (whatever they might be) will not -- and cannot -- be prejudiced by the determination of the respective rights of the parties within the Sub-basin so long as that determination is not binding on those parties with interests outside the Sub-basin. Except for SDSU and the Pechanga Band, all of those parties support the limitation of the adjudication proposed by the Tribes.

SDSU's failure to demonstrate that it will suffer any adverse legal impact provides a complete answer to its opposition to the Joint Motions. But even if the test were the effect on the available water supplies, examination of the hydrology of the Sub-basin and the Santa Margarita River establishes that there is no adverse physical effect on the water supplies available to SDSU by the Tribes' use of water in the Sub-basin. The Sub-basin is located far upstream from SDSU's lands and there are many intervening uses between the Sub-basin and SDSU's lands. *See Second Declaration of Oliver Page* ¶ 5 and Figure 1 (Apr. 20, 2009), attached as Exhibit 1.

1  In addition, the groundwater in the Sub-basin is geologically separated from the downstream

2  areas.

3  　　　Despite those facts, SDSU argues that the use of groundwater by the Tribes will

4  somehow affect the water supplies available to downstream water users such as SDSU.  The

5  likelihood that groundwater uses within the Sub-basin will affect the water supplies available to

6  SDSU and other parties outside of the Sub-basin is, at most, extremely remote.  *See Affidavit of*

7  *Daniel D. Hart* ¶ 19 (Apr. 16, 2009) ("Hart Affidavit") ("[C]urrent and future groundwater use

8  in the Anza/Cahuilla sub-basin will not impact downstream water supply."), attached as Exhibit

9  2.  Indeed, there are significant intervening water uses in the reach between the Sub-basin and

10  SDSU's lands.  Nevertheless, SDSU argues that it is possible that groundwater uses in the Sub-

11  basin might have an impact on downstream water supplies.  SDSU Opposition at 3-4.  SDSU

12  makes no attempt to argue that any of its water rights would be affected.

13  　　　Examination of the two SDSU declarations, however, reveals that they do no more than

14  ask questions about various aspects of the *Declaration of Oliver Page in Support of Joint Motion*

15  *to Dismiss Claims Against Certain Defendants* (Mar. 30, 2009) ("First Page Declaration") which

16  the Tribes previously submitted.  Neither declaration opines that there will be downstream

17  impacts from increased water use within the Sub-basin, let alone that any legally protected

18  interest of SDSU will be affected.  *See, e.g., Declaration of Matthew E. Rahn Ph.D. in Support*

19  *of Opposition of San Diego State University Research Foundation to Joint Motion to Dismiss*

20  *Claims Against Certain Defendants* ¶ 6 (Apr. 10, 2009); *Declaration of David Huntley Ph.D. in*

21  *Support of Opposition of San Diego State University Research Foundation to Joint Motion to*

22  *Dismiss Claims Against Certain Defendants* ¶ 13 (Apr. 9, 2009) ("It is therefore my opinion that

23  one cannot preclude downstream impacts from groundwater withdrawal from Cahuilla Sub-basin

24  based on the information presented in Mr. Page's declaration.").  As the Hart Affidavit

25  demonstrates, SDSU's declarants are not familiar with the facts of the Sub-basin and have

26  merely asked questions about certain aspects of the First Page Declaration that are readily

27  answered by a geologist familiar with the Sub-basin.  Hart Affidavit ¶¶ 14-18.  In fact, the

28  existing technical reports related to the Sub-basin support the conclusion that groundwater uses

1    within the Sub-basin will not affect the water supply available to downstream users.  *Id.* ¶ 8.  In

2    short, SDSU has not demonstrated that there is any reasonable likelihood that groundwater uses

3    within the Sub-basin will affect its legally protected interests -- whatever those may be -- or the

4    water supplies available to parties outside of the Sub-basin.  Nor has SDSU raised any credible

5    questions about the conclusions of Mr. Page, with which Mr. Hart agrees, that such effects are

6    highly unlikely.  In any event, the Court is not required to resolve the factual question regarding

7    possible impacts to the downstream water supply.  The law in the Ninth Circuit is settled that

8    "the threat of future litigation which causes uncertainty is insufficient to establish plain legal

9    prejudice."  *Westlands Water District v. United States*, 100 F.3d 94, 96 (9th Cir. 1996).

10                   **2.      The Tribes' Case is Not a General Stream Adjudication.**

11            SDSU also appears to labor under the misconception that, as presently structured, the

12   Tribes' case will result in an adjudication of all of the water rights in the Santa Margarita

13   Watershed.  SDSU Opposition at 5 ("quantification of the water rights of all impacted parties"),

14   6 ("[T]he complex water rights claims herein of all 'upstream' and 'downstream' owners should

15   be determined through one action, to facilitate technical discovery, and promote judicial

16   economy.").  The Tribes, however, seek only to have the Court quantify and protect their rights;

17   not to determine the water rights of all of the parties in the Santa Margarita Watershed.  Needless

18   to say, adjudication of all of the rights within the Santa Margarita Watershed and the

19   determination of the appropriate means to administer all such rights would be a monumental

20   undertaking.  It would also delay the resolution of the issues surrounding the Tribes' rights in the

21   Sub-basin.  The Tribes never envisioned such a general adjudication when they originally

22   intervened, but sought only to preclude future challenges to the rights decreed to them from

23   parties outside of the Sub-basin.  If SDSU truly wishes to see such an adjudication occur, it

24   should bear the cost and opprobrium associated with such massive litigation.

25   **B.      THE PECHANGA BAND'S ARGUMENTS LACK MERIT.**

26            The Pechanga Band "was permitted to intervene in the Fallbrook litigation decades ago

27   and since then has participated in its own right in the case."  Pechanga Opposition at 2.  Contrary

28   to the Pechanga Band's contentions, the Tribes do not seek to dismiss the Pechanga Band from

the case or to prohibit it from "contribut[ing] to judicial consideration of fundamental questions of law." *Id.* at 3.  Rather, the Tribes seek only to dismiss their claims against the Pechanga Band.  The Pechanga Band's rights, like those of the Tribes, are the subject of IJ 41.  If the Tribes' settlement efforts do not work and the Tribes' rights are adjudicated, the Court will undoubtedly address the meaning and intent of that interlocutory judgment.  Given the Pechanga Band's ongoing status as a party with rights defined by IJ 41, it will be able to participate in the resolution of the legal issues that concern it.  Certainly, the Band may provide its views to the Court if it believes that the Tribes are not adequately advocating the tribal interests in IJ 41.  In other words, the limitation of the present proceedings to issues related to the Tribes' rights in the Sub-basin would not foreclose the involvement of the Pechanga Band in the resolution of the legal questions about the meaning and import of IJ 41.

Perhaps most telling, the Pechanga Band also opposes the Tribes' request to limit the scope of the present proceedings because it may need to use the broader forum of the entire watershed for the litigation of its own rights.  *Id.* at 4.  Although the Pechanga Band has been a party to this litigation for many years, it apparently has never examined whether water uses in the Sub-basin may affect the water supplies available to satisfy its claimed rights.  *Id.* at 2-3. Limiting the present proceeding to the determination of issues within the Sub-basin will not preclude the Pechanga Band from invoking the jurisdiction of the Court to adjudicate its rights if the need arises in the future.  In the meantime, the Tribes should not be forced to carry the costs of such an effort or to bear the associated delay of bringing all such parties into the litigation. Nor should those parties who have determined that their interests are not affected by the Tribes' claims be compelled to remain in the litigation.

## III.  **CONCLUSION.**

For the reasons set forth above and in the Tribes' Joint Motions, this case should be limited to the adjudication of the rights of the Tribes within the Anza Cahuilla Sub-basin.

1  Respectfully submitted this 20th day of April, 2009.

2                                                    Marco A. Gonzalez (SBN 190832)
                                                     COAST LAW GROUP LLP
3                                                    169 Saxony Road, Suite 204
                                                     Encinitas, California  92024
4                                                    Tel:  760-942-8505 Fax:  760-942-8515

5                                                    Scott B. McElroy (Pro Hac Vice)
                                                     M. Catherine Condon (Pro Hac Vice)
6                                                    McELROY, MEYER, WALKER
                                                       & CONDON, P.C.
7                                                    1007 Pearl Street, Suite 220
                                                     Boulder, Colorado  80302
8                                                    Tel:  303-442-2021, Fax: 303-444-3490
                                                     sbmcelroy@mmwclaw.com
9                                                    ccondon@mmwclaw.com

10                                                            /s/ Scott B. McElroy
                                                     By:_____
11                                                           Scott B. McElroy

12                                                   *Attorneys for Plaintiff in Intervention,*
                                                       *the Cahuilla Band of Indians*
13
                                                     Curtis G. Berkey
14                                                   ALEXANDER, BERKEY, WILLIAMS &
                                                     WEATHERS LLP
15                                                   2030 Addison Street, Suite 410
                                                     Berkeley, CA 94704
16                                                   Tel: 510-548-7070, Fax: 510-548-7080
                                                     cberkey@abwwlaw.com
17
                                                            */s/ Scott B. McElroy for*
18                                                   By:_____
                                                           Curtis G. Berkey
19
                                                     *Attorney for Plaintiff in Intervention*
20                                                     *the Ramona Band of Cahuilla*

21

22

23

24

25

26

27

28

Tribes' Reply Memorandum  to Oppositions          8                    Case No. 51-cv-1247-GT-RBB

1

**PROOF OF SERVICE**

2

I, Scott B. McElroy, declare:

3

I am a resident of the State of Colorado, over the age of 18 years, and not a party to the
within action.  My business address is McElroy, Meyer, Walker & Condon, P.C., 1007 Pearl St.,

4

Suite 220, Boulder, Colorado.  On April 20, 2009, I electronically filed the foregoing *Reply*
*Memorandum of the Cahuilla Band of Indians and the Ramona Band of Cahuilla to the*

5

*Oppositions by the Pechanga Band of Luiseno Indians and the San Diego State University*
*Research Foundation and the Statement of the State of California* with the Clerk of the Court

6

using the CM/ECF system, which will generate and transmit a notice of electronic filing to the
following CM/ECF registrants:

7

8

Elsinore Valley Municipal Water District, matthew.green@bbklaw.com

9

M.E.M. Limited Partnership, prosenberg@hnattorneys.com
MCMX, LLC, sharper@bhsmck.com

10

Rancho California Water District, matthew.green@bbklaw.com
Sander Family Trust, gblank@san.rr.com

11

Alice E. Walker, awalker@mmwclaw.com, dvitale@mmwclaw.com
Anthony Madrigal, anthonymad2002@yahoo.com

12

B. Tilden Kim, tkim@rwglaw.com, gduran@rwglaw.com
Bill J Kuenzinger, bkuenzinger@bhsmck.com, rjones@bhsmck.com

13

Bryan D. Sampson, mfickel@sampsonlaw.net
Charles W Binder, cwbinder@smrwm.org

14

Curtis G Berkey, cberkey@abwwlaw.com, mmorales@abwwlaw.com
Daniel E. Steuer, dsteuer@mmwclaw.com, dvitale@mmwclaw.com

15

Daniel J Goulding, jhester@mccarthyholthus.com
Donald R Timms, dontimms@san.rr.com

16

F Patrick Barry, patrick.barry@usdoj.gov
Frank Spitzer, george@chakmakislaw.com

17

Gary D Leasure, gleasure@garydleasure.com
George Chakmakis, george@chakmakislaw.com

18

Gerald (Jerry) Blank, gblank@san.rr.com, mejoslyn@sbcglobal.net
Harry Campbell Carpelan, hcarpelan@redwineandsherrill.com

19

John A Karaczynski, jkaraczynski@akingump.com, dcolvin@akingump.com,
dpongrace@akingump.com, jfukai@akingump.com, jmeggesto@akingump.com,

20

kamorgan@akingump.com, msbolefflevy@akingump.com
John Christopher Lemmo, jl@procopio.com, laj@procopio.com

21

Jonathan M Deer, jdeer@taflaw.net, gsuchniak@taflaw.net,
          jondeeresq@earthlink.net

22

Kevin Patrick Sullivan, ksullivan@pshlawyers.com, kstanis@pshlawyers.com

23

M. Catherine Condon, ccondon@mmwclaw.com, dvitale@mmwclaw.com
Milan L. Brandon, mbrandon@brandon-law.com

24

Marco Antonio Gonzalez, marco@coastlawgroup.com, sara@coastlawgroup.com
Marilyn H Levin, marilyn.levin@doj.ca.gov, blanca.cabrera@doj.ca.gov

25

Mark L Brandon, mbrandon@brandon-law.com, dslack@brandon-law.com
Mary L Fickel, mfickel@sampsonlaw.net, bsampson@sampsonlaw.net

26

Matthew L Green, matthew.green@bbklaw.com, lisa.grennon@bbklaw.com
Matthew N Falley, mfalley@ggfirm.com

27

Michael Duane Davis, michael.davis@greshamsavage.com, teri.gallagher@greshamsavage.com
Michele A Staples, mstaples@jdtplaw.com, dtankersley@jdtplaw.com, pgosney@jdtplaw.com

28

Patricia Grace Rosenberg, prosenberg@hnattorneys.com

1   Peter J Mort, pmort@akingump.com, jfukai@akingump.com
    Richard Alvin Lewis, Rlewis@RichardLewis.com
2   Robert H James, bob@fallbrooklawoffice.com
    Robert M Cohen, rcohen@bcandblaw.com, vzaremba@bcandblaw.com,
3        wwendelstein@bcandblaw.com
    Scott B. McElroy smcelroy@mmwclaw.com, dvitale@mmwclaw.com
4   Thomas C Stahl, Thomas.Stahl@usdoj.gov, efile.dkt.civ@usdoj.gov
    Timothy P Johnson, tjohnson@johnson-chambers.com, cww@johnson-chambers.com
5   William Kenneth Koska, wkoska@koskalaw.com
    Jason.Ackerman@bbklaw.com
6
7        I further certify that on April 20, 2009, I served the foregoing *Reply Memorandum of the
    *Cahuilla Band of Indians and the Ramona Band of Cahuilla to the Oppositions by the Pechanga*
8   *Band of Luiseno Indians and the San Diego State University Research Foundation and the*
    *Statement of the State of California* on the following who are not registered with the CM/ECF
9   system, by placing a copy of the  document in a sealed envelope with postage thereon fully
    prepaid, in the United States mail at Boulder, Colorado, addressed as set forth below.  I am
10  readily familiar with the firm's practice for collecting and processing correspondence for mailing
    with the U.S. Postal Service on the same day with postage thereon fully prepaid in the ordinary
11  course of business.  I am aware that on motion of the party served, service is presumed invalid if
    postal cancellation date or postage meter date is more than one day after date of deposit for
12  mailing contained in this affidavit.

13
    Wiederrich Family Trust                    James L. Markman
14  13440 St. Andrews Pl.                      Richards Watson & Gershon
    Poway, CA 92064                            1 Civic Center Circle
15                                             PO Box 1059
                                               Brea, CA 92822-1059
16  Anna Gale James
    40275 Curry Court
17  Aguanga, CA 92536                          John S Wilson
                                               14205 Minorca Cove
18                                             Del Mar, CA 92014-2932
    Barbara J Carr Trust
19  Barbara J. Carr, Trustee
    20571Bexley Road                           Khyber Courchesne
20  Jamul, CA 91935-7945                       1264 Page Street
                                               San Francisco, CA 94117
21
    Billy Ward
22  P O Box 5878                               Marianne E Pajot
    San Diego, CA 92165
23                                             40225 Curry St.

24                                             Aguanga, CA  92536
    Briar McTaggart
25  1642 Merion Way 40E
    Seal Beach, CA 90740                       Mary E Lee
26                                             41085 Lakeshore Blvd.
                                               Aguanga, CA 92536
27

28

---

1   Michael J Machado
2   P O Box 391607
    Anza, CA 92539
3
4   Pamela M Machado
    P O Box 391607
5   Anza, CA 92539
6   Peggy Wilson
7   14205 Minorca Cove
    Del Mar, CA 92014-2932
8
9   Thomas C Perkins
    7037 Gaskin Place
10  Riverside, CA 92506

11          I declare under penalty of perjury under the laws of the State of Colorado that the above is
12  true and correct.

13          Executed on April 20, 2009                        */s/ Scott B. McElroy*
14                                                    _____
15                                                            Scott B. McElroy
16
17
18
19
20
21
22
23
24
25
26
27
28