ROBERT K. EDMUNDS (SBN 89477)
Email: robert.edmunds@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, CA 92101
Telephone: 619 239 8700
Facsimile: 619 702 3898

Attorneys for Specially Appearing and Dismissed Defendants
EDWARD F. REED TRUST, WARD FAMILY TRUST, and
WARD CREDIT TRUST

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>RAMONA BAND OF CAHUILLA,<br>CAHUILLA BAND OF INDIANS, et al.,<br><br>Plaintiff-Intervenors,<br><br>vs.<br><br>FALLBROOK PUBLIC UTILITY DISTRICT,<br>et al.,<br><br>Defendants. | Case No. 51-1247-GT-RBB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DISMISSAL WITH PREJUDICE OR, IN THE ALTERNATIVE, FOR ATTORNEYS' FEES AND COSTS**<br><br>Judge: Hon. Gordon Thompson, Jr.<br>Dept: 8<br>Date: No Hearing Date Set<br>Time: |

## STATEMENT OF FACTS

The Edward F. Reed Trust dated December 17, 1964, the Ward Family Trust dated June 16, 1981, and the Ward Credit Trust (collectively, the "Trusts") own certain unimproved real property (the "Property") located in the County of Riverside, adjacent to State Route 79 South, and several miles to the west-southwest of and outside the boundaries of the Anza-Cahuilla Ground Water Sub-Basin (the "Basin"), as defined in Interlocutory Judgment No. 33. (Declaration of Bradley Gates ("Gates Declaration"), ¶ 2.) Although the Property is not within the Basin, portions of it appear to overly groundwater subject to this Court's jurisdiction, and other portions appear to overly the basement complex.

The proceedings in this litigation described below took place against the following backdrop. For the past several years, the Trusts had been processing certain applications for land-use entitlements with the County of Riverside (the "County") for the purpose of subdividing the Property into lots for approximately 32 single-family residences. (Gates Declaration, ¶ 3.) Because the Property does not have access to publicly supplied potable water and because some portions of the Property appeared to overly groundwater to which the Tribes were claiming rights superior to the Trusts' rights, this litigation caused the County to become concerned about the Trusts' ability to obtain potable water from wells to be drilled on the Property. On or about June 11, 2008, the Riverside County Planning Commission gave final approval to the Trusts' development project subject to, among other things, a condition of approval (the "Condition of Approval") requiring the Trusts to demonstrate to the County's satisfaction the availability of an on-site water supply that was adequate to serve the development project and from which the Trusts could pump without interference by the Tribes, all before the Trusts could obtain a grading permit or record a final subdivision map. (Gates Declaration, ¶ 4.) Accordingly, the existence of this litigation created a major hurdle the Trusts had to cross before the County would allow them to develop their Property.

On or about May 9, 2008, the Trusts signed and returned to the Tribes the requested waiver of service of the summons. On or about May 27, 2008, the Tribes filed an ex parte application for an order approving extensions of time for several defendants, including the Trusts, to answer the

| MEMORANDUM OF POINTS AND AUTHORITIES | Case No.: 51-1247-GT-RBB |
|---|---|

Tribes' complaints. The extension of time the Tribes requested for the Trusts was up and including July 15, 2008. This Court's order approving the application was entered on June 10, 2008.

On or about June 6, 2008, the Tribes and the Pechanga Band of Luiseño Indians filed a joint motion for a temporary stay of this action pending the outcome of settlement negotiations. This Court's order granting the motion for a temporary stay was entered on June 30, 2008. The order required the Tribes to report to the Court on the status of the settlement negotiations within 90 days.

But for this Court's stay order, the Trusts would have answered the Tribes' complaints no later than July 15, 2008. Instead, the Trusts began to participate actively in settlement discussions organized by the Ramona Band. The Cahuilla Band did not hold any settlement discussions during the first 90 days following the commencement of the stay, and did not hold their first settlement discussions with the defendants until on or about December 2, 2008. Once the Cahuilla Band got its discussions started, the Trusts actively participated in those discussions as well.

On October 1, 2008, the Tribes reported to this Court as ordered and requested an extension of the temporary stay. Also on that date, Scott B. McElroy, with the law firm now known as McElroy, Meyer, Walker & Condon, became the attorney of record for the Cahuilla Band. This Court entered an order extending the temporary stay until April 28, 2009 to further facilitate settlement negotiations. This Court's order also set a trial date of June 22, 2009, a date which the Court described as firm.

After October 1, 2008, the Ramona Band continued its settlement discussions with the Trusts and other property owners. The Cahuilla Band held its first settlement meeting with the defendants on or about December 2, 2008. The Trusts continued to participate actively in the settlement discussions. In light of, among other things, the fast-approaching trial date of June 22, 2009, their need to satisfy the Condition of Approval the County imposed on their development project, and the seeming lack of progress by Cahuilla Band, the Trusts also began to investigate and analyze their claims and defenses under the applicable interlocutory judgments and applicable federal law.

From the outset of the settlement discussions, it was evident that the Trusts and nearly every other defendant owned property located outside and downstream of the Basin and that present or

future pumping of water by those out-of-Basin defendants would not interfere with the Tribes' pumping in the Basin and vice versa. Almost immediately, the Ramona Band proposed a settlement intended to recognize these facts, to remove the Trusts and the other out-of-Basin defendants from the litigation, and to limit the scope of the litigation to the very few defendants whose present or future pumping of water within the Basin could interfere with the Band's water rights.

As noted above, the Cahuilla Band did not hold its first settlement meeting with the defendants until on or about December 2, 2008. The Cahuilla Band also recognized that the Trusts and many of the other defendants owned land outside and downstream of the Basin and that the present or future pumping of water by those out-of-Basin defendants would not interfere with the Cahuilla Band's pumping within the Basin and vice versa. The Cahuilla Band also recognized that a multitude of defendants owned property inside the Basin and their present or future pumping of water could interfere with the Band's water rights within the Basin. Accordingly, the Cahuilla Band proposed a settlement intended to remove the out-of-Basin defendants from the litigation and to address the respective needs of the Band and the defendants within the Basin. As the Band acknowledged, the latter portion of its settlement proposal would likely require approval by Congress.

With the slow pace of the settlement discussions and the June 22, 2009 trial date little more than three months away, several defendants asked this Court to lift the stay to permit them to file motions seeking to quash the Tribes' service of their complaints. On March 12, 2009, this Court partially modified the stay to permit these motions by certain defendants. Likewise, the Tribes asked this Court to partially lift the stay so they could file motions to dismiss certain defendants, namely, those with property located outside the Basin, and to file a second amended complaint intended to limit the scope of the litigation to those property owners located within the Basin. This Court granted the Tribes' request on March 24, 2009, and the Tribes filed their motions on April 1, 2009.

On April 29, 2009, this Court entered an order dismissing the out-of-Basin defendants. The defendants that had filed answers were dismissed with prejudice; the defendants, such as the Trusts, that had not filed answers were dismissed without prejudice. The Court's order of dismissal did not

- 3 -
MEMORANDUM OF POINTS AND AUTHORITIES                    Case No.: 51-1247-GT-RBB

directly address defendants such as the Trusts that had returned waivers of service, but had not answered because of the stay. This Court also authorized any defendant that had filed an answer or that had returned a waiver of service to file a motion for attorneys' fees and costs.

Although not expressly authorized by this Court's order, the Trusts respectfully request this Court to change their dismissal without prejudice to a dismissal with prejudice on the ground that at all relevant times, they were in substantially the same position as the answering defendants in that the Trusts timely returned waivers of service and would have filed answers no later than July 15, 2008, but for the stay that first went into effect on June 30, 2008. The Trusts were also in substantially the same position as the answering defendants in that, like the answering defendants, the Trusts had no reasonable alternative but to begin preparing for trial because of the setting of the June 22, 2009 trial date, the plodding pace and uncertain outcome of the settlement negotiations, and the possibility the stay would be lifted. In the alternative, the Trusts request that this Court award them $43,970.00 in attorneys' fees and $ 2,035.58 in costs, because the Trusts reasonably and necessarily incurred these fees and costs in light of the Tribes' service of their complaints on the Trusts, the June 22, 2009 trial date, and the uncertainty of the settlement negotiations and because there is no reasonable likelihood that the Trusts will be able to use the resulting work product in future litigation involving the Tribes and their respective water rights in the Basin or the Santa Margarita River Watershed.

## ARGUMENT

A. Request for Dismissal with Prejudice.

Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure allows a plaintiff to dismiss an action without a court order by filing a notice of dismissal before the opposing party files an answer or a motion for summary judgment. The Ninth Circuit has noted that while "[t]he language of this rule leaves little room for interpretation," the rule is intended to "safeguard against abuse by limiting its application to an early stage of the proceedings." *Swedberg v. Marotzke*, 339 F.3d 1139, 1142 (9th Cir. 2003). The Eighth Circuit has said that the rule allows unilateral dismissal only up to the point at which the resources of the court and the defendant are committed to the extent that

preclusive consequences must be imposed for dismissal. *In re Piper Aircraft Distrib. Sys. Antitrust Litigation*, 551 F.2d 213, 220 (8th Cir. 1977).

Here, the Trusts had accepted service of the Tribes' complaints and were preparing to file answers no later than July 15, 2008, but because of the June 30 stay order, they did not answer. To dismiss the Trusts, the Tribes might have filed a notice of dismissal, but the Tribes did not do that. Instead, the Tribes included the Trusts with all of the other out-of-Basin defendants in their joint motion to dismiss as demonstrated by the following excerpt from the Tribes' Joint Notice of Motion and Joint Motion:

> Pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and this Court's Order of March 24, 2009, Plaintiff-Intervenor Ramona Band of Cahuilla and Plaintiff-Intervenor Cahuilla Band of Indians hereby move to dismiss without prejudice all claims against those defendants whose names appear on the attached Exhibits A and B. *These lists include those defendants who own parcels of land located outside the boundaries of the Anza-Cahuilla Ground Water Sub-Basin, as defined in Interlocutory Judgment Number 33, and who have been served by the Tribes pursuant to Rule 4(d) of the Federal Rules of Civil Procedure in that they have returned executed waivers of service of the summons.* (Tribes' Notice of Joint Motion and Joint Motion to Dismiss Claims Against Certain Defendants at 2, l. 1-8, filed on April 1, 2009 (emphasis added).)[1]

Thus, the Tribes recognized that given all of the facts and circumstances, including the stay, the slow and uncertain progress of the settlement negotiations, the setting of the June 2009 trial date, and the out-of Basin defendants' need to begin preparing for trial, the litigation was no longer in its early stages, and further that the served, non-answering defendants such as the Trusts had been required to commit their resources to such an extent that unilateral dismissal under Rule 41(a)(1) was not appropriate.

This Court's order of dismissal also recognized that unilateral dismissal under Rule 41(a)(1) was not appropriate. Under Rule 41(a)(1), the filing of a notice of dismissal automatically terminates the action as to the defendants subject to the notice. *Concha v. London*, 62 F.3d 1493,

---

[1] Exhibits A and B were not attached to the Tribes' Notice of Joint Motion, but instead were attached to the Tribes' Joint Memorandum of Points and Authorities in Support of Motion to Dismiss Claims Against Certain Defendants, also filed on April 1, 2009. The Trusts were listed in Exhibit A, under the names Bradley Gates and Edward Ward.

1506 (9th Cir. 1997). "A dismissal under Rule 41(a)(1) is effective on filing, no court order is required, the parties are left as though no action had been brought, the defendant can't complain, and the district court lacks jurisdiction to do anything about it." *Commercial Space Management Co., Inc. v. Boeing Co., Inc.*, 193 F.3d 1074, 1078 (9th Cir. 1999) (district court loses jurisdiction and cannot impose any terms or conditions on the dismissal). Here, however, this Court issued an order dismissing both the answering defendants and the non-answering defendants. This Court also authorized the non-answering defendants that had returned waivers of service to file motions for attorneys' fees and costs. Accordingly, this Court's order is consistent with a request for dismissal under Rule 41(a)(2).

Rule 41(a)(2) provides, in pertinent part, that "an action may be dismissed at the plaintiff's request only by court order, on terms the court considers proper," and that "[u]nless the order states otherwise, a dismissal under this paragraph (2) is without prejudice." Here, this Court granted the Tribes' motions to dismiss the answering defendants on two conditions: (i) the dismissals were with prejudice; and (ii) the answering defendants could have the opportunity to apply to this Court for an award of attorneys' fees and costs. As for the served, non-answering defendants, the Court dismissed those defendants without prejudice, but it added a condition giving them the opportunity to apply for their attorneys' fees and costs.

Inclusion of conditions in its dismissal order is well within this Court's discretion under Rule 41(a)(2) to order to protect the interests of the dismissed defendants from legal prejudice. *Koch v. Hankins*, 8 F.3d 650 (9th Cir. 1993); *Cauley v. Wilson*, 754 F.2d 769 (7th Cir. 1985). The Trusts submit, however, that this Court should have treated the answering defendants and the Trusts as served, non-answering defendants identically, because at all relevant times, they were in essentially the same position. Like the answering defendants, the Trusts had been served with the summons, and they were required to analyze their legal positions in order to respond to the Tribes' complaints. Like the answering defendants, the Trusts were required to prepare for the trial this Court set on a firm date in June 2009.

Furthermore, the Tribes sought to dismiss all of the out-of-Basin defendants less than three months before the June 2009 trial date. Dismissal in close proximity to a scheduled trial is a

- 6 -

recognized factor supporting a district court's determination to grant a plaintiff's voluntary request for dismissal with prejudice, rather than without prejudice. *Doe v. Urohealth Sys., Inc.*, 216 F.2d 157, 160 (1st Cir. 2000); *see, e.g., Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994) (noting factors for dismissal with prejudice).[2]

The only difference between the answering defendants and the Trusts is that the Trusts did not file answers, which they would have done no later than July 15, 2008 but for the stay that first went into effect on June 30, 2008. This Court should disregard this procedural difference because of the Tribes' service of summons on the Trusts, the setting of the June 2009 trial date, and the slow and uncertain progress of the settlement negotiations an necessarily required the Trusts to begin their preparations for trial in case the settlement negotiations failed and/or the stay was lifted.

The Trusts also had a significant economic interest for analyzing their water rights vis-à-vis the Tribes. In June 2008, the Riverside County Planning Commission approved the Trusts' 32-lot residential development project subject to the Condition of Approval requiring the Trusts to demonstrate the availability of an on-site water supply that was adequate to serve the development project and from which the Trusts could pump without interference by the Tribes, all before the Trusts could obtain a grading permit or record a final subdivision map. So long as the Tribes' claims against the Trusts were not resolved, the Trusts' ability to obtain permission from the County to develop their project was in undisputable jeopardy.

The Trusts respectfully submit that all of the facts and circumstances related to the threats to the Trusts' interest, and to their development project in particular, arising from the Tribes' claims warrant a dismissal of the Trusts with prejudice. Moreover, anything less than a dismissal with

---

[2] In fairness to the Ramona Band, it should be noted that from the start of its settlement negotiations with the defendants, the Tribe proposed a settlement which, if approved by this Court, would have removed the out-of-Basin defendants and would have limited the parties to the litigation to the Tribe and property owners within the Basin. It appeared to the Trusts that the Tribe's effort to proceed with its settlement proposal were hindered in part by the Cahuilla Band's substantial delay in getting its settlement negotiations started and by statements by the Federal Negotiating Team that it did not want the Ramona Band to proceed ahead of the Cahuilla Band because it objected to a piece-meal resolution of the issues affecting the Basin. Nevertheless, the Ramona Band did not take affirmative steps to dismiss the out-of-Basin defendants until late March 2009, when by then the June 2009 trial date was but three months away.

MEMORANDUM OF POINTS AND AUTHORITIES                Case No.: 51-1247-GT-RBB

prejudice might not be sufficient to convince Riverside County that the Tribes cannot and will not later on assert their water rights to prevent the Trusts from drilling wells and pumping water for their development project. The County understands as well as anyone that a dismissal without prejudice leaves the door open for the Tribes to bring the Trusts back into the litigation.

### B. Request for Attorneys' Fees and Costs.

If this Court grants the Trusts' request to be dismissed with prejudice, the Trusts' request for an award of attorneys' fees will be moot. *Cauley v. Wilson*, 754 F.2d at 772 (attorneys' fees not awarded where dismissal with prejudice because defendant cannot be made to defend again).

Assuming this Court does not dismiss the Trusts with prejudice, the Trusts request an award of attorneys' fees and costs to compensate them for the preparation of work product they cannot use later on in litigation with the Tribes. All of the facts, circumstances, and arguments presented above in support of a dismissal with prejudice equally support the Tribes' request for attorneys' fees and costs. In addition, district courts typically require a plaintiff to reimburse a defendant for its attorneys' fees and costs as a condition of granting a voluntary dismissal under Rule 41(a)(2). *Koch v. Hankins*, 8 F.3d at 652; *Cauley v. Wilson*, 754 F.2d at 771.

The rule in the Ninth Circuit is that "a defendant is entitled only to recover, as a condition of dismissal under Fed.R.Civ.P. 41(a)(2), attorneys fees or costs for work which is not useful in continuing litigation between the parties." *Koch v. Hankins*, 8 F.3d at 652; *see Westland Water Dist. v. United States*, 100 F.3d 94, 98 (9th Cir. 1996). In awarding fees and costs, a district court is to "determine which costs rose from the preparation of work product which might be useful in the continuing litigation between the parties, and which costs arose from the preparation of work product rendered useless by the dismissal of the [plaintiff's] federal action." *Id.*

The Tribes' stated basis for dismissing all of the out-of-Basin defendants was the following:

> The hydrologic rationale for limiting the scope of the case is set out in the Declaration of Oliver Page. As Mr. Page concludes, there is no impact from groundwater development inside the Anza-Cahuilla Sub-Basin on the availability of water outside that area. Page Decl. ¶ 7 (geologic impediment to the movement of groundwater from the Anza-Cahuilla Sub-basin to those areas outside). The converse is also true; water pumping outside this sub-basin will not have any measurable impact on the availability of water for the Tribes' use on their Reservations inside the sub-basin. Page Decl. ¶ 7. Because there is no impact

occurring in either direction, the Tribes are willing to accept quantification of their water rights that does not bind water users and landowners outside the Anza-Cahuilla Sub-Basin. Similarly, it appears to the Tribes that the dismissal of claims against those defendants does not put them at risk of adverse effect from the Tribes' pumping inside the sub-basin. (Tribes' Joint Memorandum of Points and Authorities in Support of Motion to Dismiss Claims Against Certain Defendants at 2, l. 10-20, filed on April 1, 2009.)

No statement by the Tribes could make it plainer that there was no hydrologic or legal basis for the Tribes to assert their water rights against the Trusts and the other out-of-Basin defendants in the first place and that there will be no hydrologic or legal basis for the Tribes to assert those rights against the Trusts and those other defendants in the future. Accordingly, there is no reasonable possibility of continuing litigation between the Tribes and the Trusts in the future. It necessarily follows then that the Tribes' dismissal of the Trusts has rendered useless the work product the Trusts prepared in this litigation, and an award of attorneys' fees and costs is therefore appropriate.

## CONCLUSION

For the foregoing reasons, the Trusts respectfully request this Court to dismiss them with prejudice or, in the alternative, to award them attorneys' fees and costs.

DATED: May 18, 2009     BUCHANAN INGERSOLL & ROONEY LLP


/s/ Robert K. Edmunds
By:   ROBERT K. EDMUNDS
      Attorneys for Specially Appearing and Dismissed Defendants EDWARD F. REED TRUST, WARD FAMILY TRUST and WARD CREDIT TRUST

#254824-v1;0075009/000001      - 9 -

MEMORANDUM OF POINTS AND AUTHORITIES     Case No.: 51-1247-GT-RBB