Marco A. Gonzalez (SBN 190832)
COAST LAW GROUP, L.L.P.
169 Saxony Road, Suite 204
Encinitas, California 92024
Tel: 760-942-8505, Fax: 760-942-8515
marco@coastlawgroup.com

Scott B. McElroy (Pro Hac Vice)
M. Catherine Condon (Pro Hac Vice)
McELROY, MEYER, WALKER & CONDON, P.C.
1007 Pearl Street, Suite 220
Boulder, Colorado 80302
Tel: 303-442-2021, Fax: 303-444-3490
sbmcelroy@mmwclaw.com
ccondon@mmwclaw.com
*Attorneys for Plaintiff in Intervention,*
  *Cahuilla Band of Indians*

Curtis G. Berkey
ALEXANDER, BERKEY, WILLIAMS
  & WEATHERS, L.L.P.
2030 Addison Street, Suite 410
Berkeley, CA 94704
Tel: 510-548-7070, Fax: 510-548-7080
cberkey@abwwlaw.com
*Attorney for Plaintiff in Intervention*
  *the Ramona Band of Cahuilla*

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> RAMONA BAND OF CAHUILLA, ) <br> CAHUILLA BAND OF INDIANS, ) <br> federally recognized Indian tribes, ) <br> ) <br> Plaintiffs in Intervention, ) <br> ) <br> v. ) <br> ) <br> FALLBROOK PUBLIC UTILITY ) <br> DISTRICT, a public service corporation ) <br> of the State of California, et al., ) <br> ) <br> Defendants. ) <br>_____ ) | Case No. 51-cv-1247-GT-RBB <br><br> **JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE CAHUILLA BAND OF INDIANS' AND RAMONA BAND OF CAHUILLA'S JOINT MOTION TO RECONSIDER A PORTION OF THE COURT'S APRIL 29, 2009 ORDER** <br><br> Hearing Date: June 29, 2009 <br> Time:            2:00 p.m. <br> Courtroom:    8 <br><br> Hon. Gordon Thompson, Jr. <br><br> ORAL ARGUMENT NOT REQUIRED |

Tribes' Joint Memorandum
of Points and Authorities                                                                                  Case No. 51-cv-1247

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       A.    DISMISSAL OF THE ANSWERING DEFENDANTS WITH PREJUDICE IS NOT CONSISTENT WITH INTERLOCUTORY JUDGMENT 41. . . . . . . . . 7

           1.    The Law of the Case Established by Interlocutory Judgment 41 Requires Dismissal of the Tribes' Claims Against the Answering Defendants Without Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           2.    Foreclosing the Tribes' Claims Under Interlocutory Judgment 41 Legally Prejudices the Tribes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       B.    NO FACTORS FAVORING DISMISSAL WITH PREJUDICE UNDER FED. R. CIV. P. 41(a)(2) ARE PRESENT IN THIS CASE . . . . . . . . . 10

       C.    THE TRIBES SHOULD HAVE BEEN NOTIFIED OF THE COURT'S INTENTION TO DISMISS WITH PREJUDICE AND AFFORDED AN OPPORTUNITY TO OBJECT . . . . . . . . . . . . . . . . . . . . . . . 14

       D.    SINCE THE UNITED STATES MAY STILL ASSERT CLAIMS ON BEHALF OF THE TRIBES, DISMISSAL WITH PREJUDICE SERVES NO USEFUL PURPOSE HERE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## **TABLE OF AUTHORITIES**

**CASES**

*Andes v. Versant Corp.*, 788 F.2d 1033 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Arizona v. California*, 460 U.S. 605 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 7, 11

*Brooks v. State Bd. of Elections*, 173 F.R.D. 547 (S.D. Ga. 1997) . . . . . . . . . . . . . . . . .  11, 13-15

*Burnette v. Godshall*, 828 F. Supp. 1439 (N.D. Cal. 1993)
    *aff'd sub nom. Burnette v. Lockheed Missiles & Space Co., Inc.*,
    72 F.3d 766 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 14

*Choice Hotels Int'l, Inc. v. Goodwin and Boone*, 11 F.3d 469 (4th Cir. 1993) . . . . . . . . . . . . . 11

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) . . . . . . . . . 5

*Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329 (9th Cir. 1985),
    *overruling in part on other grounds recognized by*
    *In re Keegan Mgmt. Co., Securities Litigation*, 78 F.3d 431 (9th Cir. 1996) . . . . . . . 9, 10

*Davis v. McLaughlin*, 326 F.2d 881 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Eichman v. Fotomat Corp.*, 880 F.2d 149 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8

*Grover By Grover v. Eli Lilly and Co.*, 33 F.3d 716 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 13

*Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143 (9th Cir. 1982) . . . . . . . . . . . . . 12

*Hargis v. Foster*, 312 F.3d 404 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Hyde & Drath v. Baker*, 24 F.3d 1162 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Exxon Valdez*, 102 F.3d 429 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-12

*In re Marino*, 181 F.3d 1142 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 15

*In re Sizzler Restaurants Int'l, Inc.*, 262 B.R. 811 (Bankr. C.D. Cal. 2001) . . . . . . . . . . 9, 12, 14

*In Re the General Adjudication of All Rights to Use Water*
    *in the Gila River Sys. and Source*, 989 P.2d 739 (Ariz. 1999) . . . . . . . . . . . . . . . . . . . . . 4

*Jaramillo v. Burkhart*, 59 F.3d 78 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kern Oil and Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380 (9th Cir. 1986) . . . . . . . . . . 12, 13

*Lau v. Glendora Unified School Dist.*, 792 F.2d 929 (9th Cir. 1986) ................... 13

*LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601 (5th Cir. 1976) ............................. 9-13

*Marlow v. Winston & Strawn*, 19 F.3d 300 (7th Cir. 1994) ...................... 10, 11, 14

*Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703 (9th Cir. 1990) ............ 7, 8

*Mir v. Fosburg*, 706 F.2d 916 (9th Cir. 1983) ....................................... 12

*Richardson v. United States*, 841 F.2d 993 (9th Cir. 1988),
   *amended by* 860 F.2d 357 (9th Cir. 1988) ........................................ 7

*State Eng'r of Nevada v. S. Fork Band of the Te-Moak Tribe of
   W. Shoshone Indians of Nevada*, 114 F. Supp. 2d 1046 (D. Nev. 2000) .......... 7, 11

*Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548 (9th Cir. 1986) ................. 9, 10

*United States v. Fallbrook Pub. Util. Dist.*, 347 F.2d 48 (9th Cir. 1965) .................. 3

*United States v. One Tract of Real Prop.*, 95 F.3d 422 (6th Cir. 1996) ................ 11, 14

*Westlands Water Dist. v. United States*, 100 F.3d 94 (9th Cir. 1996) ............... 9, 11-13

*Williams v. Peralta Cmty. College Dist.*, 227 F.R.D. 538 (N.D. Cal. 2005) ............... 11

*Williamsburg Wax Museum v. Historic Figures, Inc.*, 810 F.2d 243
   (D.C. Cir. 1987) ............................................................. 7

**RULES**

FED. R. CIV. P. 4(d) ................................................................ 5

FED. R. CIV. P. 41(a)(2) ........................................... 2, 9, 10, 11, 13

FED. R. CIV. P. 41(b) ....................................................... 12, 13

CivLR 7.1(i) ...................................................................... 1

## I. **INTRODUCTION.**

Pursuant to CivLR 7.1(i), the Cahuilla Band of Indians and the Ramona Band of Cahuilla (collectively "Tribes") respectfully request that the Court reconsider a portion of its *Order* (Apr. 29, 2009) ("April 29 Order"). Specifically, the Tribes request that the Court dismiss without prejudice the Tribes' claims against those defendants residing outside the boundaries of the Anza-Cahuilla Sub-Basin ("Sub-Basin") who answered the Tribes' complaints (collectively "Answering Defendants"), rather than dismissing them "with prejudice." *See* April 29 Order at 1-2. This jointly filed memorandum of points and authorities supports the Tribes' request.

On April 1, 2009, the Tribes filed both a *Notice of Joint Motion to Dismiss Claims Against Certain Defendants* (Apr. 1, 2009) ("Motion") and a *Joint Memorandum of Points and Authorities in Support of Motion to Dismiss Claims Against Certain Defendants* (Apr. 1, 2009) ("Memorandum"), wherein the Tribes requested that the Court dismiss the Tribes' claims against the Answering Defendants "without prejudice." Motion at 1; Memorandum at 1-4. Only two parties, the San Diego State University Research Foundation and the Pechanga Band of Luiseño Indians, objected to having the Tribes' claims against them dismissed altogether, and neither requested dismissal "with prejudice" as an alternative. *See Opposition of San Diego State University Research Foundation to Joint Motion to Dismiss Claims Against Certain Defendants* (Apr. 14, 2009) ("SDSU Opposition")[1]; *Pechanga Band of Luiseño Indians' Opposition to Plaintiffs' Motion to Dismiss Claims Against Certain Defendants* (Apr. 15, 2009) ("Pechanga Band Opposition"). Only one party, Answering Defendant Bryan Sampson, requested dismissal with prejudice. He did so on the purported grounds that claims against him are barred by

---

[1]Although the Tribes' claims against San Diego State University Research Foundation were dismissed with prejudice, the Foundation now seeks to intervene in the case. *Notice of Motion of San Diego State University Research Foundation to Intervene* (May 22, 2009).

Tribes' Joint Memorandum
of Points and Authorities                                1                              Case No. 51-cv-1247

Interlocutory Judgment 39A[2], "law of the case," and "issue preclusion" principles. *Defendant Bryan D. Sampson's Memorandum of Points and Authorities in Support of Opposition to Motion to Dismiss Claims Against Certain Defendants* at 4-6 (Apr. 13, 2009) ("Sampson Opposition"). Sampson's arguments raise issues outside the scope of FED. R. CIV. P. 41(a)(2) and ignore the fact that Sampson has always been a party subject to the Court's jurisdiction and who is bound by the prior rulings of the Court.[3] The Court, nevertheless, dismissed all of the Answering Defendants "with prejudice." April 29 Order at 1-2. As of right, the Tribes dismissed "without prejudice" their claims against those defendants residing outside the boundaries of the Sub-Basin who did not answer the complaints. *Id.* at 1; *see* Memorandum at 3.

## II. BACKGROUND.

This case is unusual, especially as it concerns the rights of the Tribes. In 1951, the United States initiated this litigation to declare, quiet title to, and enjoin the unlawful interference with its rights to water within the Santa Margarita River watershed. *Complaint* at 8-10 (Jan. 25, 1951). While the United States sought to establish its own rights to use the waters of the Santa Margarita River for various purposes, it also requested that the Court determine the nature and scope of the water rights which it holds in trust for the Tribes. *Reporters Transcript of Proceedings* at 20,266-668 (Aug. 8, 1962). Thus, the tribal interests -- irrespective of the

---

[2] *Findings of Fact, Conclusions of Law and Interlocutory Judgment No. 39A, Respecting Lands in Santa Margarita River Watershed, Below Temecula, Gorge and Above the Naval Enclave, Which Does Not Overlie Any Groundwaters Which Feed or Contribute to the Santa Margarita River or its Tributaries* (Nov. 8, 1962) ("Interlocutory Judgment 39A").

[3] The Tribes discuss more fully the substance of Sampson's allegations in their separately filed response to *Defendant Bryan D. Sampson's Motion for Attorneys Fees and Costs* (May 13, 2009). Sampson argued that the determination in Interlocutory Judgment No. 39A that the property which he currently owns does not overlie groundwater that feeds or contributes to the Santa Margarita River warranted his dismissal with prejudice. *Id.* at 2. Sampson did not contest, nor could he, that the surface water on his land was subject to the Court's continuing jurisdiction and therefore that he was properly served under the Court's Orders. *Id.* at 5. Nor did he commit that he would not seek to challenge the Tribes' use of water in the future.

Tribes' intervention -- have always been a part of the litigation. *See Arizona v. California*, 460 U.S. 605, 615 (1983) ("The Tribes' interests in the water of the Colorado basin have been and will continue to be determined in this litigation since the United States' action as their representative will bind the Tribes to any judgment.") (citations omitted). The parameters of the water rights which the United States holds in trust for the Tribes were laid out in the *Findings of Fact, Conclusions of Law and Interlocutory Judgment No. 41 Concerning the Rights to the Use of Waters of Santa Margarita River Stream System Held in Trust by the U.S.A. in Connection with the Ramona, Cahuilla and Pechanga Indian Reservations* (Nov. 8, 1962) ("Interlocutory Judgment 41" or "IJ 41"). The Court subsequently adopted Interlocutory Judgment 41 by reference in its *Final Judgment and Decree* at 5 (May 8, 1963), which in turn was affirmed, in relevant part, by the Ninth Circuit. *United States v. Fallbrook Pub. Util. Dist.*, 347 F.2d 48, 61 (9th Cir. 1965); *see Modified Final Judgment and Decree* at 2, 13 (Apr. 6, 1966) ("Final Decree"). As a result, the provisions of Interlocutory Judgment 41 are now the law of this case. *See Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir. 1989); Sampson Opposition at 4 (arguing Interlocutory Judgment 39A is "law of the case").

The Court retained continuing jurisdiction over the case after it issued its Final Decree. *See* Final Decree at 14-15; *see also Findings of Fact, Conclusions of Law, and Interlocutory Judgment No. 33 Pertaining to Anza and Cahuilla Ground Water Basins and Cahuilla and Wilson Creeks* at (Dec. 11, 1962) ("Interlocutory Judgment 33 or "IJ 33") ("this Court does have jurisdiction over the use of any waters insofar as the United States of America, on behalf of any Indians, asserts rights to such waters which were adjudged in [IJ 41]."). Interlocutory Judgment 33 also expressly stated that "in any judgment provision entered hereinabove quieting rights against the United States of America, the use of the term 'United States of America' does not apply when the United States of America asserts rights on behalf of any Indians which rights were adjudged in Interlocutory Judgment No. 41." IJ 33 at 26.

In 2006, with groundwater usage increasing in the Sub-Basin, the Tribes sought to intervene in this case to quantify their rights in order to provide certainty as to the precise amount of water to which they are entitled and to protect those rights from infringement by other water users. *See Ramona Band of Cahuilla's First Amended Complaint in Intervention* at 5 (July 2, 2007) ("Ramona Amended Complaint"); *Cahuilla Band of Indians' First Amended Complaint in Intervention* at 8-9 (July 9, 2007) ("Cahuilla Amended Complaint"). By intervening in the case, the Tribes did not seek to re-litigate issues already decided. *See Arizona v. California,* 460 U.S. at 615 ("Of course, permission to intervene does not carry with it the right to relitigate matters already determined in the case, unless those matters would otherwise be subject to reconsideration."). But without further clarification by the Court, Interlocutory Judgment 41 does not provide the specificity required to protect the Tribes' rights from interference by other water users or to inform the Tribes (or others) of the precise nature and extent of the rights to which the Tribes are entitled. *See In Re the General Adjudication of All Rights to Use Water in the Gila River Sys. and Source,* 989 P.2d 739, 750 (Ariz. 1999) ("[O]nce a federal reservation establishes a reserved right to groundwater, it may invoke federal law to protect its groundwater from subsequent diversion to the extent such protection is necessary to fulfill its reserved right."). Accordingly, the Tribes asked the Court to quantify their rights and to enjoin those uses of water which would interfere with the Tribes' ability to secure the water to which they are entitled. Ramona Amended Complaint at 5; Cahuilla Amended Complaint at 8-9.

Recognizing that no list of all of the parties subject to the Court's continuing jurisdiction existed, the Tribes sought to establish an expedited process to provide notice to the parties of the Tribes' intervention. *See Plaintiff-Intervenors' Memorandum of Points and Authorities in Support of Joint Motion for Order on Service and Notification of Tribal Water Rights Claims* (Apr. 23, 2007). The Tribes proposed different procedures for various parties, depending on the geographical area in which their water use occurred and the likelihood that tribal uses would affect the water supply in a particular area. *Id.* at 6-10. The Anza and Cahuilla basins, along

with the Terwilliger basin, were to receive the most intensive notice under the Tribes' approach. *Id.* The Court rejected the Tribes' proposal, however, initially ordering the Tribes to "serve any defendant that the [Tribes] expect to be bound by the Court's judgment." *Order* at 2 (July 18, 2007). The Court subsequently directed the Tribes "serve within 30 days all water rights holders, subject to the Court's jurisdiction . . . ." *Minute Entry* (Feb. 25, 2008). In an effort to comply with the Court's directives, the Tribes mailed requests for waiver of service pursuant to FED. R. CIV. P. 4(d) to entities in the Santa Margarita watershed, both inside and outside the Sub-Basin. Thereafter, the Tribes asked the Court to stay the litigation so that the parties, with the assistance of a federal negotiating team, could pursue the possible settlement of the Tribes' claims. *Notice of Joint Motion and Joint Motion for a Temporary Stay of Proceedings Pending Settlement Negotiations* (June 6, 2008). The Court granted that request. *Order Granting Joint Motion for a Temporary Stay of Proceedings Pending Settlement Negotiations* (June 30, 2008).

The Tribes' efforts to effect service on all of the parties which they believed were subject to the Court's continuing jurisdiction caused an uproar among the parties outside the Sub-Basin who received requests for waivers of service. While some of those concerns were related to the means by which the Tribes were proceeding, the vast majority of the concerns related to whether parties potentially subject to the Court's jurisdiction, but outside of the Sub-Basin, needed to be included in the litigation over the Tribes' rights. While it was always unlikely that the Tribes would seek to curtail the use of water by "downstream" parties outside of the Sub-Basin, the Tribes sought to include those parties in the case, both because they were parties subject to the Court's continuing jurisdiction and because the Tribes wished to see their rights declared against such parties in order to protect against any future claim that tribal water uses were interfering with the water supply available to meet downstream rights. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 810-11 (1976) (noting the interrelated nature of all water rights on a stream system).

Ultimately, and as part of the settlement process, the Tribes, with the concurrence of many of the water users in the litigation, sought to dismiss their claims against parties who used or claimed the right to use water outside the Sub-Basin. *See Status Report* (Mar. 11, 2009). To ensure that the adjudication of the Tribes' rights within the Sub-Basin would not bind or otherwise affect the interests of parties outside the Sub-Basin, the Tribes' proposed amended complaints expressly asked the Court to declare that any judgment shall not affect the rights of parties using or claiming the right to use water outside of the Sub-Basin. *See, e.g., Cahuilla Band of Indians' Second Amended Complaint in Intervention* at 9 (Apr. 1, 2009) (requesting the Court to "[d]eclare and confirm that nothing in the resulting judgment shall bind or otherwise affect the rights of those parties to the Fallbrook litigation that use or claim rights to use surface and/or ground water outside of the Sub-basin."). The Tribes filed their Motion and Memorandum seeking to dismiss their claims against parties outside of the Sub-Basin "without prejudice." Motion at 1; Memorandum at 1-4. The Tribes also filed a *Notice of Joint Motion and Joint Motion for Leave to File Second Amended Complaints in Intervention* (Apr. 1, 2009). The Court, however, dismissed all of the Answering Defendants "with prejudice." April 29 Order at 1-2. As of right, the Tribes dismissed "without prejudice" those defendants residing outside the boundaries of the Sub-Basin who did not answer the complaints. *Id.* at 1; *see* Memorandum at 3.[4]

### III. ARGUMENT.

Dismissal with prejudice is not appropriate here. First, dismissal of the Answering Defendants with prejudice places a cloud on the previous judgment entered by this Court recognizing certain rights in the Tribes. Second, those factors that generally weigh in favor of dismissal with prejudice are not present in this case. Third, the Court neither notified the Tribes of its intention to dismiss with prejudice nor provided them an opportunity to object, both of

---

[4] Although only three parties requested attorneys fees, the Court permitted all of the Answering Defendants as well as anyone outside the Sub-Basin who returned a waiver of service to request attorney fees. April 29 Order at 2. The Tribes' response to those requests are due on June 1, 2009.

which are required under applicable law. Fourth, dismissal with prejudice does not protect the Answering Defendants, because the United States, as the Tribes' trustee, may still assert the Tribes' rights against those defendants.

### A. DISMISSAL OF THE ANSWERING DEFENDANTS WITH PREJUDICE IS NOT CONSISTENT WITH INTERLOCUTORY JUDGMENT 41.

Due to prior judgments in this action, by both this Court and the Ninth Circuit, law of the case principles limit the Court's discretion to dismiss the Tribes' claims against the Answering Defendants with prejudice. Moreover, in light of the Tribes' recognized rights in those prior judgments, the legal prejudice to the Tribes precludes dismissal with prejudice of the Tribes' claims against the Answering Defendants. For both of these reasons, dismissal without prejudice is required here.

#### 1. The Law of the Case Established by Interlocutory Judgment 41 Requires Dismissal of the Tribes' Claims Against the Answering Defendants Without Prejudice.

Under the law of the case doctrine, previous decisions by the same court or a higher appellate court in the same case are generally binding in subsequent proceedings in that case. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) (citing *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988), *amended by* 860 F.2d 357 (9th Cir. 1988)). Although the doctrine does not purport to limit a court's power to review decisions that were clearly erroneous or were affected by a change in law or evidence, the law of the case must still "guide the exercise of [a court's] discretion." *State Eng'r of Nevada v. S. Fork Band of the Te-Moak Tribe of W. Shoshone Indians of Nevada*, 114 F. Supp. 2d 1046, 1047 (D. Nev. 2000) (citing *Arizona v. California*, 460 U.S. at 618). Furthermore, the doctrine "'encompasses a court's explicit decisions as well as those issues decided by necessary implications.'" *Eichman*, 880 F.2d at 157 (quoting *Williamsburg Wax Museum v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987)). The provisions of Interlocutory Judgment 41, including the determination of issues necessarily implied, are now the law of this case. *See id.* at 157; Sampson Opposition at 4.

Interlocutory Judgment 41 "ordered, adjudged and decreed" that the United States, when it established the Tribes' reservations, "intended to reserve and did reserve" for the Tribes rights to water "sufficient for the[ir] present and future needs." IJ 41 at 1107, 1108. Priority dates for these rights, ranging from 1875 to 1891, were also set. *Id.* In addition, all uses of water by the Tribes on their reservations remain subject to the Court's "continuing jurisdiction," and the Tribes' water rights were "forever quieted against all parties claiming rights to the waters of the Santa Margarita River [watershed]." *Id.* at 1110. The Court expressly declined to quantify the Tribes' water rights at that time, but retained jurisdiction to do so, as well as determine "other related factors . . . in the future should the need occur." *Id.* at 1112.

The express terms of Interlocutory Judgment 41, which were adopted in the Final Decree and affirmed by the Ninth Circuit, makes the Court's continuing jurisdiction over the Tribes' water use the law of this case. *See Milgard*, 902 F.2d at 715; IJ 41 at 1110. The express reservation of jurisdiction by this Court to quantify the Tribes' water rights is also the law of this case. *See Milgard*, 902 F.2d at 715; IJ 41 at 1112. Dismissing the Tribes' claims against the Answering Defendants with prejudice, however, would appear to bar any further actions between the Tribes and the Answering Defendants that are based on the claims raised in the Tribes' complaints which seek to address the very issues over which the Court retained jurisdiction. *See In re Marino*, 181 F.3d 1142, 1144 (9th Cir. 1999) ("res judicata effect" of dismissal with prejudice). It would also appear to preclude the Tribes from asserting their federal reserved water rights as a defense in any subsequent action brought by the Answering Defendants to challenge the Tribes' use of water. Although the likelihood of future litigation between the Tribes and the Answering Defendants may be remote, *see Declaration of Oliver Page in Support of Joint Motion to Dismiss Claims Against Certain Defendants* (Apr. 1, 2009), dismissal of the Answering Defendants with prejudice still thwarts the very purposes behind the Court's continuing jurisdiction. The terms of Interlocutory Judgment 41 necessarily imply that dismissal of the Tribes' claims against the Answering Defendants with prejudice is improper here. *See Eichman*,

880 F.2d at 157. The Court should, therefore, amend its April 29 Order to dismiss the Answering Defendants without prejudice.

### 2. Foreclosing the Tribes' Claims Under Interlocutory Judgment 41 Legally Prejudices the Tribes.

In addition to the law of the case, the legal prejudice caused to the Tribes precludes dismissal of the Answering Defendants with prejudice. The claims in the Tribes' complaints are based on their federal reserved water rights recognized in Interlocutory Judgment 41, which are guaranteed by the Final Decree and the Ninth Circuit. Dismissal with prejudice normally would have a res judicata effect on those claims, however. Hence, as explained below, precluding the Tribes from asserting these claims in any future litigation is the ultimate form of legal prejudice because it arguably deprives the Tribes of rights which they currently possess. The common law under FED. R. CIV. P. 41(a)(2) does not allow such a result.

It is well-settled that the terms of dismissal imposed by a court pursuant to FED. R. CIV. P. 41(a)(2) may not legally prejudice a plaintiff. *In re Lowenschuss*, 67 F.3d 1394, 1399 (9th Cir. 1995) (citing *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603-04 (5th Cir. 1976)); *Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548, 556 (9th Cir. 1986) (citing *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1342 (9th Cir. 1985)), *overruling in part on other grounds recognized by In re Keegan Mgmt. Co., Securities Litigation*, 78 F.3d 431, 434-35 (9th Cir. 1996). Legal prejudice is not harm to a party in a general sense, *LeCompte*, 528 F.2d at 603; *In re Sizzler Restaurants Int'l, Inc.*, 262 B.R. 811, 822 n.8 (Bankr. C.D. Cal. 2001), but rather, it is "prejudice to some legal interest, some legal claim, [or] some legal argument." *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996); *see infra* Section III.B. A court may set conditions on voluntary dismissals that prejudice the plaintiff in some "practical" way, such as ordering the production of documents or witnesses or the payment of some costs. *LeCompte*, 528 F.2d at 603-04; *accord Unioil*, 809 F.2d at 555-56 (citing *LeCompte*). But a condition that "severely circumscribe[s]" a plaintiff's ability to bring a later suit, even if dismissal is labeled "without prejudice," is legally prejudicial and is appealable. *LeCompte*, 528 F.2d at 604; *accord Unioil*,

809 F.2d at 555-56 (citing *Coursen*, 764 F.2d at 1342-43).  Dismissal of claims with prejudice has a res judicata effect on those claims, *In re Marino*, 181 F.3d at 1144, so clearly, such dismissal would severely circumscribe a plaintiff's ability to bring those claims in the future.  The extreme condition of dismissal with prejudice is impermissible, therefore, where effective relief can still be fashioned by allowing dismissal without prejudice.  *In re Lowenschuss*, 67 F.3d at 1399.

Here, the Tribes are legally prejudiced by the dismissal with prejudice of their claims against the Answering Defendants.  That is, their claims against the Answering Defendants under Interlocutory Judgment 41 presumably will be forever barred, including in any litigation initiated by the Answering Defendants seeking to curtail tribal water uses in the future.  *See In re Marino*, 181 F.3d at 1144; *LeCompte*, 528 F.2d at 604; *Unioil*, 809 F.2d at 555-56.  Pursuant to Ninth Circuit case law, therefore, the Court must account for this legal prejudice to the Tribes and fashion its ruling so as not to harm them in this extreme manner.  *See In re Lowenschuss*, 67 F.3d at 1399; *Unioil*, 809 F.2d at 556.  This is especially true where, as here, the Answering Defendants, with the exception of Sampson, did not even request dismissal with prejudice.  *See Marlow v. Winston & Strawn*, 19 F.3d 300, 302-06 (7th Cir. 1994); SDSU Opposition; Pechanga Band Opposition; *infra* Section III.B.  Furthermore, the Tribes sent waiver requests and the complaints to the defendants in compliance with the Court's *Minute Entry* (Feb. 25, 2008) directing the Tribes to serve "all water right holders, subject to the Court's jurisdiction."  Thus, the Tribes should not be penalized by having their claims foreclosed against the Answering Defendants.  In short, dismissal without prejudice is required in order to avoid legally prejudicing and unfairly penalizing the Tribes.

**B.     NO FACTORS FAVORING DISMISSAL WITH PREJUDICE UNDER FED. R. CIV. P. 41(a)(2) ARE PRESENT IN THIS CASE.**

Even ignoring Interlocutory Judgment 41, dismissal with prejudice pursuant to FED. R. CIV. P. 41(a)(2) is not appropriate here, where the Answering Defendants will not be legally prejudiced by dismissal without prejudice and no other circumstances that generally weigh in favor of dismissal with prejudice are present.

Tribes' Joint Memorandum
of Points and Authorities                                    10                                    Case No. 51-cv-1247

If a motion to voluntarily dismiss fails to specify whether dismissal is sought with or without prejudice, the matter is generally left to the court's discretion. *Williams v. Peralta Cmty. College Dist.*, 227 F.R.D. 538, 539 (N.D. Cal. 2005) (citing *Hargis v. Foster*, 312 F.3d 404, 406 (9th Cir. 2002)). In other words, a movant implicitly accepts, or acquiesces to, either determination when it fails to state a preference. *Hargis*, 312 F.3d at 412; *LeCompte*, 528 F.2d at 604. The court's discretion is lessened, however, when the plaintiff specifically requests voluntary dismissal without prejudice. *See Hargis*, 312 F.3d at 412 ("motion did not preclude" dismissal with prejudice when no preference indicated). This is especially true when a defendant does not propose dismissal with prejudice as an alternative. *Marlow*, 19 F.3d at 302-06. In addition, as explained above, law of the case principles must "guide the exercise of [a court's] discretion." *S. Fork Band*, 114 F. Supp. 2d at 1047 (citing *Arizona v. California*, 460 U.S. at 618); *see supra* Section III.A.1.

A court may still condition voluntary dismissal on being with prejudice even where the plaintiff requests dismissal without prejudice, *United States v. One Tract of Real Prop.*, 95 F.3d 422, 425 (6th Cir. 1996); *see*, *e.g.*, *Burnette v. Godshall*, 828 F. Supp. 1439, 1443-44 (N.D. Cal. 1993), *aff'd sub nom. Burnette v. Lockheed Missiles & Space Co., Inc.*, 72 F.3d 766 (9th Cir. 1995), but just as with any other condition the court is considering, it must first determine that dismissal with prejudice is both "proper," FED. R. CIV. P. 41(a)(2), and absolutely "'necessary to protect the legitimate interest'" of the party being dismissed. *In re Lowenschuss*, 67 F.3d at 1400 (quoting *LeCompte*, 528 F.2d at 605); *accord Westlands*, 100 F.3d at 96; *Marlow*, 19 F.3d at 306 (dismissal with prejudice inappropriate unless "only acceptable means" of protecting defendants). Such careful consideration by the court is required because dismissal with prejudice pursuant to FED. R. CIV. P. 41(a)(2) is the "ultimate condition." *Brooks v. State Bd. of Elections*, 173 F.R.D. 547, 549 (S.D. Ga. 1997), *cited with approval in Williams*, 227 F.R.D. at 540; *accord Marlow*, 19 F.3d at 306 (dismissal with prejudice is "extreme remedy") (quoting *Andes v. Versant Corp.*, 788 F.2d 1033, 1037 (4th Cir. 1986)); *Choice Hotels Int'l, Inc. v. Goodwin and Boone*, 11 F.3d 469,

471 (4th Cir. 1993) ("draconian"); *cf. Mir v. Fosburg*, 706 F.2d 916, 918-19 (9th Cir. 1983) (dismissal with prejudice is too "drastic" of a sanction for involuntary dismissal under FED. R. CIV. P. 41(b) absent prejudice to defendant).

Due to the extreme consequences of dismissal with prejudice, courts "generally allow dismissal without prejudice unless the defendant will suffer 'some plain legal prejudice as a result of the dismissal.'" *In re Sizzler*, 262 B.R. at 820 (quoting *Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143, 145 (9th Cir. 1982)); *accord LeCompte*, 528 F.2d at 604. Similar to the analysis of legal prejudice caused to a plaintiff, in determining whether a defendant will be legally prejudiced, courts primarily "focus on the rights and defenses available to a defendant in future litigation." *Westlands*, 100 F.3d at 97; *see supra* Section III.A.2. Again, courts focus on prejudice that is "legal" in nature, *id.* ("prejudice to some legal interest, some legal claim, some legal argument"), not harm to the defendant generally. *In re Sizzler*, 262 B.R. at 822 n.8 (prejudice to reputation not "legal" prejudice under *Westlands*). The Ninth Circuit repeatedly holds, therefore, that the mere threat to a defendant of a future lawsuit does not establish plain legal prejudice. *Westlands,* 100 F.3d 96 (citing *Hyde & Drath v. Baker*, 24 F.3d 1162, 1169 (9th Cir. 1994); *Hamilton*, 679 F.2d at 145); *In re Lowenschuss*, 67 F.3d at 1400-01. Specifically, "continued uncertainty over water rights, created by the specter of future litigation over the proper apportionment of water," is not plain legal prejudice to a defendant. *Westlands*, 100 F.3d at 96. In addition, the fact that a defendant will be inconvenienced because it already commenced trial preparations and incurred expenses is not legal prejudice. *Id.* at 97 (citing *Hamilton*, 679 F.2d at 146); *Hyde & Drath*, 24 F.3d at 1169 (citing *Hamilton*); *see Kern Oil and Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1390 (9th Cir. 1986) (legal prejudice "questionable" even when plaintiff moved for dismissal without prejudice on morning of trial). An example of legal prejudice, rather, is where dismissal restricts the ability of a defendant to pursue a counterclaim. *In re Sizzler*, 262 B.R. at 821-22 (law required plaintiff's claim to be decided on the merits before

defendant's counterclaim could go forward); *cf. LeCompte*, 528 F.2d at 604 (condition "severely circumscrib[ing]" plaintiff's claim is legal prejudice).

Furthermore, courts do not usually dismiss with prejudice unless legal prejudice to the defendant "is especially aggravated," such as when a plaintiff makes a motion for dismissal without prejudice only because an adverse ruling is imminent. *Brooks*, 173 F.R.D. at 549-50 (citing *Grover By Grover v. Eli Lilly and Co.*, 33 F.3d 716, 719 (6th Cir. 1994); *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)). When a plaintiff seeks to dismiss a frivolous cause of action without prejudice, dismissal of that claim with prejudice may also be appropriate. *Lockheed Missiles*, 72 F.3d 766 (affirming *Burnette*, 828 F. Supp 1439). Also, for example, where on the day of trial a motion for dismissal without prejudice pursuant to FED. R. CIV. P. 41(a)(2) was denied due to forum shopping and the plaintiff subsequently refused to deliver an opening statement, the district court was justified in dismissing with prejudice for failure to prosecute under FED. R. CIV. P. 41(b). *Kern Oil*, 792 F.2d at 1389-90. Last, the Ninth Circuit has "long held" that it is appropriate to convert a dismissal without prejudice to one with prejudice *after* a plaintiff fails to comply with the conditions placed on the original dismissal. *Lau v. Glendora Unified School Dist.*, 792 F.2d 929, 930 n.2 (9th Cir. 1986) (citing *Davis v. McLaughlin*, 326 F.2d 881, 883-84 (9th Cir. 1964)).

The Tribes expressly requested that the claims against the Answering Defendants be dismissed "without prejudice." Motion at 1. No party but Sampson sought to have the Tribes' claims against them dismissed with prejudice and all but two of the parties outside the Sub-Basin implicitly or explicitly supported the Tribes' Motion. In any event, the Tribes do not implicitly accept, or acquiesce to, the dismissal of the Answering Defendants with prejudice. *See Hargis*, 312 F.3d at 412; *LeCompte*, 528 F.2d at 604. Moreover, the Answering Defendants will not be legally prejudiced by dismissal without prejudice, because neither the potential for future litigation nor the incurring of expenses constitutes legal prejudice. *See Westlands*, 100 F.3d at 96-97. In particular, any uncertainty that will remain in this case over water rights as between the

Tribes' Joint Memorandum
of Points and Authorities                      13                            Case No. 51-cv-1247

Tribes and the Answering Defendants is not legal prejudice. *See id.* at 96.  In addition, the Tribes were not expecting any adverse ruling when they moved for voluntary dismissal without prejudice, *see In re Exxon Valdez*, 102 F.3d 429, 432-33 (9th Cir. 1996), their claims are based on Interlocutory Judgment 41 so they are not frivolous, *see Lockheed Missiles*, 72 F.3d 766; *supra* Section III.A., and they are diligently prosecuting this action.  *See Kern Oil*, 792 F.2d at 1389-90. Last, the Answering Defendants made no effort to prove legal prejudice, nor did they even propose dismissal with prejudice as an alternative.  *See Marlow*, 19 F.3d at 302-06; SDSU Opposition; Pechanga Band Opposition.  Hence, for all of the foregoing reasons, dismissal with prejudice is neither proper nor necessary, and the Answering Defendants should be dismissed without prejudice.

### C. THE TRIBES SHOULD HAVE BEEN NOTIFIED OF THE COURT'S INTENTION TO DISMISS WITH PREJUDICE AND AFFORDED AN OPPORTUNITY TO OBJECT.

Prior to issuing its order, the Court was required to notify the Tribes of its inclination to dismiss with prejudice and to provide them an opportunity to object to, or accept, this condition of dismissal.  The first time the Tribes became aware that the Court was considering imposing this extreme remedy, however, was at the hearing before the Court on April 27, 2009.  Since the Tribes had no advance notice, they were never provided an adequate opportunity to address this issue prior to entry of the order.

The requirement that a court notify the plaintiff of its intention to dismiss with prejudice, and provide it an opportunity to object, is well-settled.  *One Tract*, 95 F.3d at 425-26; *Jaramillo v. Burkhart*, 59 F.3d 78, 79 (8th Cir. 1995); *Marlow*, 19 F.3d at 305-06; *Andes*, 788 F.2d at 1033; *Brooks*, 173 F.R.D. at 550; *In re Sizzler*, 262 B.R. at 823.  As these courts reason, "[i]t upsets notions of fundamental fairness for a court, in response to a party's request for dismissal without prejudice, to grant the request by dismissing *with* prejudice, while failing to give the moving party notice of its inclination to impose this extreme remedy."  *Andes*, 788 F.2d at 1037.

Again, the Tribes did not become aware that the Court would dismiss the Answering Defendants with prejudice until the close of the hearing on April 27, 2009. As a result, the Tribes were not properly notified and were denied a meaningful opportunity to object to this extreme condition. Thus, dismissal with prejudice is not appropriate at this time.

**D.  SINCE THE UNITED STATES MAY STILL ASSERT CLAIMS ON BEHALF OF THE TRIBES, DISMISSAL WITH PREJUDICE SERVES NO USEFUL PURPOSE HERE.**

Dismissal of the Answering Defendants with prejudice will not serve to protect the Answering Defendants, if indeed that is the Court's intention. That is, the Tribes will certainly be barred from raising certain claims against the Answering Defendants now and in the future, *see In re Marino*, 181 F.3d at 1144, but the United States, as the Tribes' trustee, is still a party to the action and in the future may raise those same claims, or additional claims, against the Answering Defendants on the Tribes' behalf. Hence, if the purpose is to protect the Answering Defendants from future litigation over the meaning and intent of Interlocutory Judgment 41, that purpose will not be served by dismissing the Tribes' claims against the Answering Defendants with prejudice. Such an extreme remedy should not be imposed when it will not even serve its intended purpose. *See Brooks*, 173 F.R.D. at 549. For this reason also, dismissal without prejudice is proper here.

## IV.  <u>CONCLUSION</u>.

For all of the foregoing reasons, the Tribes respectfully request that the Court grant the relief requested herein by amending its April 29 Order to dismiss the Answering Defendants without prejudice.

Tribes' Joint Memorandum
of Points and Authorities           15           Case No. 51-cv-1247

Respectfully submitted this 28th day of May, 2009.

                Marco A. Gonzalez (SBN 190832)
                COAST LAW GROUP LLP
                169 Saxony Road, Suite 204
                Encinitas, California  92024
                Tel:  760-942-8505 Fax:  760-942-8515

                Scott B. McElroy (Pro Hac Vice)
                M. Catherine Condon (Pro Hac Vice)
                McELROY, MEYER, WALKER
                 & CONDON, P.C.
                1007 Pearl Street, Suite 220
                Boulder, Colorado  80302
                Tel: 303-442-2021, Fax: 303-444-3490
                sbmcelroy@mmwclaw.com
                ccondon@mmwclaw.com

                  */s/ Scott B. McElroy*
                By:_____
                  Scott B. McElroy

                *Attorneys for Plaintiff in Intervention,*
                 *the Cahuilla Band of Indians*

                Curtis G. Berkey
                ALEXANDER, BERKEY, WILLIAMS &
                WEATHERS LLP
                2030 Addison Street, Suite 410
                Berkeley, CA 94704
                Tel: 510-548-7070, Fax: 510-548-7080
                cberkey@abwwlaw.com

                  */s/ Scott B. McElroy for*
                By:_____
                  Curtis G. Berkey

                *Attorney for Plaintiff in Intervention*
                 *the Ramona Band of Cahuilla*