Curtis G. Berkey (CA State Bar No. 195485)
Scott W. Williams (CA State Bar No. 097966)
ALEXANDER, BERKEY, WILLIAMS & WEATHERS LLP
2030 Addison Street, Suite 410
Berkeley, CA 94704
Tel: 510/548-7070
Fax: 510/548-7080
E-mail: cberkey@abwwlaw.com
E-mail: swilliams@abwwlaw.com
*Attorneys for Plaintiff-Intervenor*
*Ramona Band of Cahuilla*

Marco A. Gonzalez (CA State Bar No. 190832)
COAST LAW GROUP LLP
169 Saxony Road, Suite 204
Encinitas, CA 92024
Tel: 760/942-8505
Fax: 760/942-8515

Scott B. McElroy (Pro Hac Vice)
M. Catherine Condon (Pro Hac Vice)
McELROY, MEYER, WALKER & CONDON, P.C.
1007 Pearl Street, Suite 220
Boulder, CO 80302
Tel: 303/442-2021
Fax: 303/444-3490
E-mail: sbmcelroy@mmwclaw.com
E-mail: ccondon@mmwclaw.com
*Attorneys for Plaintiff-Intervenor*
*Cahuilla Band of Indians*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL NO.: 51-CV-1247-GT-RBB |
| Plaintiff, | **JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE RAMONA BAND OF CAHUILLA'S AND CAHUILLA BAND OF INDIANS' OPPOSITION TO MOTIONS FOR ATTORNEYS FEES** |
| RAMONA BAND OF CAHUILLA, CAHUILLA BAND OF INDIANS, et al., | |
| Plaintiff-Intervenors, | |
| v. | Hon. Gordon Thompson, Jr. |
| FALLBROOK PUBLIC UTILITY DISTRICT, et al., | **Date: No hearing date set** |
| Defendants. | **Time:** |
| | **Courtroom: 8** |

## TABLE OF CONTENTS

Page No.

INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

I.   THE ANSWERING DEFENDANTS WERE PROPERLY NAMED
     AS PARTIES TO DEFEND THE TRIBES' WATER RIGHTS CLAIMS  . . . . . . . . . . . .  2

II.  RULE 41 DOES NOT AUTHORIZE ATTORNEY FEE AWARDS
     UNDER THESE CIRCUMSTANCES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

     A.   If the Court Adheres to its Position Dismissing These Defendants
          With Prejudice, They Are Not Entitled to Attorney Fees  . . . . . . . . . . . . . . . . . . .  5

     B.   There Is No Basis to Award Attorney Fees to the Defendants If
          They Are Dismissed Without Prejudice  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

III. CONGRESS HAS NOT AUTHORIZED THE PAYMENT OF
     ATTORNEYS FEES AGAINST INDIAN TRIBES UNDER
     THESE CIRCUMSTANCES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

IV.  THE TRIBES HAVE NOT WAIVED THEIR IMMUNITY FROM
     CLAIMS FOR ATTORNEYS FEES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

V.   THE TRIBES MUST BE AFFORDED AN OPPORTUNITY TO
     WITHDRAW THEIR MOTIONS BEFORE THIS COURT
     CONDITIONS DISMISSAL ON AN AWARD OF ATTORNEYS FEES  . . . . . . . . . . . .  10

VI.  THE TRIBES ACTED IN GOOD FAITH WITH REGARD TO
     DEFENDANT BRYAN D. SAMPSON'S REQUEST FOR DISMISSAL
     WITH PREJUDICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

VII. THE TRIBES ARE ENTITLED TO AN EVIDENTIARY HEARING
     TO RESOLVE DISPUTED FACTUAL QUESTIONS REGARDING
     THE REASONABLENESS OF CLAIMED ATTORNEYS FEES  . . . . . . . . . . . . . . . .  12

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

1

## TABLE OF AUTHORITIES

2
Page No.

3
Cases

4
5
*Ardestani v. Immigration and Naturalization Service,*
    502 U.S. 129 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6
*Arizona v. San Carlos Apache Tribe of Arizona,*
    463 U.S. 545, 103 S.Ct. 3201 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7
8
*Blum v. Stenson,*
    465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

9
*Buckhannon Board & Care Home, Inc. v. West Virginia Dept. Of Health & Human Resources,*
    532 U.S. 598, 121 S. Ct. 1835 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

10
*Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway,*
    46 F.3d 1392 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11
12
*C & L Enterprises v. Citizen Band of Potawatomi Indian Tribe,*
    532 U.S. 411 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

13
14
*Cauley v. Wilson,*
    754 F.2d 769 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15
*Chalmers v. City of Los Angeles,*
    796 F.2d 1205 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

16
17
*Cherokee Nation v. Georgia,*
    30 U.S. 1 (1831) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18
*Colombrito v. Kelly,*
    764 F.2d 122 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

19
20
*Florida Paraplegic Association v. Miccosukee Tribe of Indians of Florida,*
    166 F.3d 1126 (11th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

21
*Gates v. Deukmejian,*
    987 F.2d 1392 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

22
23
*Hess v. Ramona Unified School District,*
    2008 WL 5381243 *6 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

24
*Jicarilla Apache Tribe v. Andrus,*
    687 F.2d 1324 (10th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

25
26
*Koch v. Hankins,*
    8 F.3d 650 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

27
*Lau v. Glendora Unified School District,*
    792 F.2d 929 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10

28

*Morgan v. Udy,*
58 Idaho 670, 79 P.2d 295 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Oklahoma Tax Commission v. Citizen Band of Potawatomi Indian Tribe,*
498 U.S. 505 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Rosebud Sioux Tribe v. Val-U Constr. Co.,*
50 F.3d 560 (8th Cir. 1995), *cert. denied,* 516 U.S. 819 (1995) . . . . . . . . . . . . . . . . . . . 9

*Sablan v. Department of Finance of Com. of Northern Mariana Islands,*
856 F.2d 1317 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Santa Clara Pueblo v. Martinez,*
436 U.S. 49 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Southwest Center for Biological Diversity v. Bartel,*
2007 WL 2506605 (S.D. Cal. 2007) (citing *Pennsylvania v. Delaware*
*Valley Citizens' Council for Clean Air,*
478 U.S. 546 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Stevedoring Services of America v. Armilla International B.V.,*
889 F.2d 919 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Unioil v. E.F. Hutton & Co., Inc.,*
809 F.2d 548 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Nevada,*
463 U.S. 110 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Truckee-Carson Irrigation District,*
649 F.2d 1286 (9th Cir. 1981), *aff'd in part, rev'd in part sub nom.,*
463 U.S. 110 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

*United States v. Wheeler,*
435 U.S. 313 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. White Mountain Apache,*
537 U.S. 465, 123 S.Ct. 1126 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATUTES, RULES AND REGULATIONS

28 U.S.C. § 2411(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 2411(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 2411(d)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. § 2412 (Equal Access to Justice Act) . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. Pro. Rule 5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. Pro. Rule 41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

Fed. R. Civ. Pro. Rule 41(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

## OTHER AUTHORITY

Interlocutory Judgment No. 33, Conclusion of Law No. 23, December 11, 1962  . . . . . . . . . .  4, 11

Interlocutory Judgment No. 39A  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Interlocutory Judgment No. 41  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

# INTRODUCTION

Pursuant to this Court's Order of April 29, 2009, Defendants Bryan D. Sampson, Frank Spitzer, the Sander Family Trust and Jannki Mithaiwala collectively have moved for attorneys fees and costs totaling $48,765.65.[1] The motions should be denied because 1) the Tribes' assertion of claims against these Defendants was not improper nor brought in bad faith; 2) under Rule 41and the circumstances of this case, attorneys fees cannot be awarded either because Defendants are prevailing parties or because of the continuing utility of the attorney work in question; 3) the Equal Access to Justice Act does not apply to Indian tribes; 4) the Tribes have not waived their immunity from attorneys fees claims and Congress has not abrogated that immunity; and 5) the requests lack sufficient documentation and evidentiary support to enable this Court to determine whether the fees and costs claimed are reasonable and consistent with prevailing rates in the Southern District of California.[2]

If this Court decides that there are grounds for awarding attorneys fees, the Tribes request the opportunity to withdraw the motion to dismiss claims against these parties. The Tribes are entitled to a reasonable opportunity under settled law in the Ninth Circuit to withdraw voluntary dismissal motions that are conditioned on the payment of attorneys fees. *Lau v. Glendora Unified School District,* 792 F.2d 929 (9th Cir. 1986).

Should this Court nonetheless reach the merits of the Defendants' motions, the Tribes are entitled to a hearing to resolve disputed questions regarding the reasonableness of the claimed fees and costs, the purpose for which legal work was allegedly performed, the prevailing rates for similar legal work in this district, and the necessity of such legal work to defend the Tribes' claims. In the absence of a hearing, this Court should deny the motions for the reason that the movants have not met

---

[1] The Tribes' claims against the Edward R. Reed Trust, the Ward Family Trust and the Ward Credit Trust, were dismissed without prejudice, but they have moved for an order of dismissal with prejudice, or in the alternative, for an award of attorneys fees and costs of $46,005.58. The Tribes respond to those arguments in a separate memorandum filed simultaneously with this response.

[2] In its Order of April 28, 2009, this Court limited the response to each motion for attorneys fees to 10 pages. Because the Tribes are responding JOINTLY to four motions in one opposition, this memorandum exceeds the 10 page limit.

1  their evidentiary burden to show reasonableness, consistency with prevailing rates, and necessity.

2  Self-serving attorney affidavits are insufficient to meet this burden.

3                                               **ARGUMENT**

4  **I.     THE ANSWERING DEFENDANTS WERE PROPERLY NAMED AS PARTIES TO**
5  **       DEFEND THE TRIBES' WATER RIGHTS CLAIMS**

6         The Tribes vigorously dispute the alleged facts on which the motions are based.  The motions

7  are based on the erroneous factual premise that the Tribes wrongly asserted water rights claims

8  against these defendants.  The record plainly shows otherwise.  Shortly after this Court granted

9  intervention in January, 2007, the Tribes moved for an order clarifying procedures for service of the

10 complaints-in-intervention.  Because they were intervening in an on-going case with an

11 extraordinarily large number of parties, the Tribes argued that, pursuant to Fed. R. Civ. Pro. Rule 5(a),

12 service of the complaints as a "subsequent pleading" on all parties that had appeared should be

13 sufficient to satisfy principles of due  process and fairness.  Dkt. # 4927, Plaintiff-Intervenors'

14 Memorandum of Points and Authorities in Support of Joint Motion for Order on Service and

15 Notification of Tribal Water Rights Claims, April 23, 2007.

16        Moreover, even at this early stage of the case, the Tribes acknowledged that varying degrees

17 of aquifer connectivity existed throughout the Santa Margarita River Watershed.  Based on this

18 premise, for purposes of service, the Tribes proposed to treat parties within the Anza-Cahuilla Sub-

19 Basin differently than those outside, with more extensive service coverage for those located inside

20 that area.  *Id.* at pages 6-9 (proposing *inter alia* first-class mail notice to all parties within the Anza-

21 Cahuilla Sub-Basin and publication notice elsewhere).  The Tribes further argued that Rule 4 service

22 was not the proper procedural vehicle for notifying the parties of the Tribes' intervention, because the

23 primary function of that rule is to provide notice of the commencement of an action.  *Id.* at page 4.

24 Rule 5 service appeared to be especially sensible in light of the fact that neither the Watermaster nor

25 this Court maintained an up-to-date list of parties following the entry of final judgment in 1963.

26        This Court rejected the Tribes' proposal on the ground that it "is [in]sufficient to satisfy

27 due process."  Order of July 18, 2007 (Dkt. # 4941).  Instead, this Court ordered the Tribes to

28

1   serve "any defendant that [they] expect to be bound by the Court's judgment," regardless of

2   location. *Id.*

3       Significantly, on February 25, 2008, the Court, in response to actions beyond the Tribes'

4   control, expanded the scope of service, directing the Tribes to serve "within 30 days all water

5   rights holders, subject to the Court's jurisdiction." Minute Order, Dkt. # 4954. The clear import

6   of these orders is that the Tribes' service on the movants was undertaken pursuant to this Court's

7   direction and authorization.

8       Consistent with this Court's prior orders, it was entirely proper for the Tribes to serve any

9   party who is subject to this Court's jurisdiction, either because his or her land overlies or abuts

10  water that contributes to the Santa Margarita River system, or because that party claimed rights

11  under an interlocutory judgment issued by this Court. The fact that water users or rights holders

12  downstream of the Tribes may not adversely impact the water supply available on the Tribes'

13  Reservations does not take those parties out of the case. Rather, they needed to be in the case to

14  enable the Tribes to defend claims by such parties that the Tribes' water use adversely impacted

15  them. Moreover, as more fully explained below, <u>any</u> party in the case has the right to challenge

16  any other party's water rights, regardless of the degree of physical connectivity among water

17  sources. Defendants' arguments that the Tribes knew before they sought intervention that such

18  parties were not necessary to the fair and complete adjudication of the Tribes' water rights claims

19  are simply specious.

20      None of the answering defendants disclaim party status, nor could they, unless they

21  renounced the water rights they hold under interlocutory judgments in this case. In a multiparty

22  water rights case of this magnitude, each party is legally adverse to every other party,

23  notwithstanding a party's location within the watershed or the degree of potential physical

24  interference. Judge Carter in this case applied that general rule to the parties here: "It is further

25  ordered, adjudged an decreed . . . that <u>all parties are adverse one to the other</u>, thus dispensing with

26  cross-pleadings, and all parties to this proceeding may object to these Findings of Fact,

27  Conclusions of Law and Interlocutory Judgment and will be given full opportunity upon due

28

1  notice to interpose their objection prior to entry of final judgment in this cause." Interlocutory

2  Judgment No. 33, Conclusion of Law No. 23, December 11, 1962 (emphasis added).

3       Indeed, water rights adjudications proceed on the premise that "all parties' water rights are

4  interdependent." *United States v. Truckee-Carson Irrigation District*, 649 F.2d 1286, 1309 (9th

5  Cir. 1981), *aff'd in part, rev'd in part sub nom.*, 463 U.S. 110 (1983). There, the Ninth Circuit

6  explained that physical adversity is not required to assert claims in general stream adjudications

7  because "[s]tability in water rights therefore requires that all parties be bound in all combinations.

8  Further, in many water adjudications there is no actual controversy between the parties." *Id.* As

9  one state Supreme Court put it: "[I]n the settlement of cases of this character every user of water

10  on the stream and all of its tributaries in litigation are interested in the final award to each

11  claimant. . . . Every claimant of the water of either stream, it matters not whether it be at the

12  upper or lower end of either, or after the junction of the two, is interested in a final adjudication of

13  all claimants at the lower end of the stream." *Morgan v. Udy,* 58 Idaho 670, 681, 79 P.2d 295,

14  299 (1938). The Supreme Court applied the rule of this case in a res judicata context in the

15  Pyramid Lake Paiute water rights case,  adding that "[t]his rule seems to be generally applied in

16  stream adjudications in the western States." *United States v. Nevada,* 463 U.S. 110, 139-140

17  (1983).

18       The Tribes have acted in good faith throughout this case.  They complied with this Court's

19  service orders by painstakingly and diligently compiling a list of successors to the original parties

20  found by this Court to be subject to its jurisdiction, either because their land overlay water that

21  contributed to the Santa Margarita River Watershed or because, in the case of Defendant

22  Sampson, this Court's interlocutory judgments quieted title to certain water resources.  This was

23  the first time in more than 45 years that the list of parties was brought up to date, and the Tribes

24  and the United States bore the entire cost of preparing the list.

25       It was reasonable and proper for the Tribes to seek to protect their water rights against

26  future collateral attack by binding the largest practicable number of defendants with the final

27  quantification of the Tribes' water rights.  The decision to limit the case to the Anza-Cahuilla

28  Sub-Basin was made in response to the defendants' requests to be dismissed during settlement

negotiations; indeed it may be thought of as a product of those discussions. Having so limited the case, the Tribes now face the risk that a future challenge to the quantification of the Tribes' water rights could be brought by those parties against whom claims have been dismissed.

Contrary to the Answering Defendants' assertions, the decision to accept that risk was not based on some newly discovered evidence that the degree of physical connection among the water sources was less than originally believed. Rather, it was based on interests of judicial economy and on the need to simplify the issues for resolution by this Court. Having been granted their request to have the Tribes' claims dismissed, the Answering Defendants now have the temerity to demand that the Tribes pay for their legal work. There is no principle of law that authorizes or requires such payments.

## II.   RULE 41 DOES NOT AUTHORIZE ATTORNEY FEE AWARDS UNDER THESE CIRCUMSTANCES

### A.   If the Court Adheres to its Position Dismissing These Defendants with Prejudice, They Are Not Entitled to Attorney Fees.

Pursuant to Rule 41(a)(2), this Court's Order dismissed the Tribe's claims with prejudice against each of the Defendants demanding attorneys fees. The governing rule is that attorneys fees are "almost never awarded" when claims are dismissed with prejudice, because the defendant "has been freed of the risk of relitigation of the issues just as if the case had been adjudicated in his favor after a trial, in which event (absent statutory authorization) the American Rule would preclude such an award." *Colombrito v. Kelly,* 764 F.2d 122, 134 (2d Cir. 1985). To the same effect is *Cauley v. Wilson,* 754 F.2d 769, 772 (7th Cir. 1985), in which the circuit court ruled that "[f]ees are not awarded when a plaintiff obtains a dismissal with prejudice because the defendant cannot be made to defend again." (internal quotation omitted). There are no exceptional circumstances here which would justify making this case perhaps the first in judicial history to make an award of attorney fees to defendants dismissed with prejudice.

### B.   There Is No Basis to Award Attorney Fees to the Defendants If They Are Dismissed Without Prejudice.

The Tribes have asked this Court to reconsider the dismissal with prejudice and to revise the order to dismiss the claims against these and other answering defendants without prejudice. If

1   this Court grants that motion, it must then determine whether the dismissal without prejudice

2   should be conditioned on the payment of attorneys fees.  The Tribes submit that there is no legal

3   or factual basis for such conditions.  Moreover, as set forth below, the Tribes retain their

4   immunity from such claims.

5        In the Ninth Circuit, defendants are entitled to recover fees and costs only for "work which

6   is not useful in continuing litigation between the parties." *Koch v. Hankins*, 8 F.3d 650, 652 (9[th]

7   Cir. 1993). [3]  The Answering Defendants make only vague and generalized assertions that their

8   attorney work product will not be useful in future litigation.  Because here the attorneys' work

9   consisted exclusively of investigation of the nature and scope of their water rights, responses to

10  the Notice and Request for Waiver of Service of the Summons, preparation of answers and

11  sporadic settlement discussions, they have not met the appropriate standard.  Virtually all of this

12  work will be useful if the Tribes or the United States assert claims against them in the future, as

13  the nature of the Tribes' water rights or those of the Defendants will not change.  Conversely, if

14  these downstream Defendants assert claims that the Tribes' water use is interfering with their

15  own, this work product will certainly be useful in that proceeding, as establishing their own water

16  rights will be a necessary predicate of any such suit.

17       In any event, the Ninth Circuit has ruled that district courts should deny requests to

18  condition dismissals on the payment of attorneys fees where the plaintiff "had a realistic chance of

19  prevailing." *Stevedoring Services of America v. Armilla International B.V.,* 889 F.2d 919, 922 (9[th]

20  Cir. 1989).  The Tribes easily meet that standard here.  Interlocutory Judgment 41, which was

21  incorporated into the final judgment affirmed by the Court of Appeals, established the Tribes'

22  federal reserved water rights with priority dates enforceable against all defendants, leaving only

23  the precise amount of the water entitlement to be determined.  The prospect of a final

24  quantification of the Tribes' water rights against all parties – including these Defendants – who

25

26

27

28
[3] Of course, if the motion for reconsideration is denied and the claims against these
Defendants are dismissed with prejudice, the question of the future utility of work product is
moot, in that defendants will have obtained an adjudication on the merits, thereby arguably
precluding future litigation with the Tribes.

1  claim rights under the umbrella of the Court's final judgment was far more than a mere "realistic

2  chance."

### III.   CONGRESS HAS NOT AUTHORIZED THE PAYMENT OF ATTORNEYS FEES AGAINST INDIAN TRIBES UNDER THESE CIRCUMSTANCES

5          In an effort to avoid the usual rules under F.R. Civ. P. 41(a)(2) and tribal sovereign

6  immunity, the Answering Defendants argue that because they are prevailing parties, the Equal

7  Access to Justice Act, 28 U.S.C. § 2412, is statutory authority for an award of attorneys fees

8  against the Tribes.  Even a cursory examination of that statute shows it does not apply here –even

9  if the Answering Defendants are dismissed with prejudice and thus considered to be prevailing

10  parties.  There can be no doubt that the text of the Act authorizes attorney fee awards against only

11  the United States, its agencies or officials.  *See, e.g.*, 28 U.S.C. § 2411(b) ("The United States

12  shall be liable for such fees and expenses to the same extent that any other party would be liable"

13  for such fees.); § 2411(c)(2) ("Any judgment against the United States or any agency and any

14  official of the United States . . . for fees and expenses of attorneys . . . shall be paid as provided in

15  sections 2414 and 2517 of this title . . . ."); § 2411(d)(1)(A) (fees against the United States shall

16  not be awarded if "the position of the United States was substantially justified or that special

17  circumstances make an award unjust."); *Ardestani v. Immigration and Naturalization Service,* 502

18  U.S. 129, 136 (1991) (Equal Access to Justice Act renders the United States liable for attorneys

19  fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign

20  immunity).  Significantly, nowhere does the statute  mention Indian tribes.  Thus, the Act cannot

21  be interpreted as "explicit statutory authority" for an award of attorneys fees against Indian tribes.

22  *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources,* 532

23  U.S. at  602 (2001).  None of the cases cited by the Defendants in support of this novel

24  proposition involved claims for attorneys fees against Indian tribes; all of them concerned claims

25  against the United States.

26          The United States' role in this case as trustee for the Tribes does not change this

27  conclusion.  The federal government's responsibility to represent Indian tribes in litigation

28  involving their water rights does not convert those tribes into agencies of the United States, nor

1   bring them within the coverage of the Equal Access to Justice Act.  Under rudimentary principles

2   of trust law, the trustee and the beneficiary are distinct legal entities with separate rights and

3   responsibilities.  *See, e.g., United States v. White Mountain Apache*, 537 U.S. 465, 474, 123 S.Ct.

4   1126, 1133 (2003) (the United States as trustee is under legal duty to use reasonable care and skill

5   to preserve tribal trust property in which the Indian tribe as beneficiary has a separate legal

6   interest).  Since 1831, Indian tribes have had the legal status under federal law as "domestic

7   dependent nations."  *Cherokee Nation v. Georgia*, 30 U.S. 1, 17 (1831).  That is a separate and

8   distinct legal status from the United States.  The United States and Indian tribes are separate

9   sovereigns.  *United States v. Wheeler*, 435 U.S. 313, 328 (1978) (it is not double jeopardy for a

10  Navajo tribal member to be tried for a criminal offense in both the Navajo and federal courts

11  because the Navajo Nation and the United States are separate sovereigns).

12          The inapplicability of the Equal Access to Justice Act is reinforced by the cardinal rule of

13  federal Indian law that congressional abrogation of tribal sovereign immunity "cannot be implied

14  but must be unequivocally expressed."  *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978);

15  *accord, C & L Enterprises v. Citizen Band of Potawatomi Indian Tribe*, 532 U.S. 411, 418 (2001)

16  (congressional abrogation of tribal sovereign immunity must "unequivocally express that

17  purpose.")  Movants concede that the Tribes here have sovereign immunity from attorney fees

18  claims.  *See* Defendant Bryan D. Sampson's Memorandum of Points and Authorities in Support of

19  Motion for Attorneys Fees and Costs, at page 4 (hereafter "Sampson Memo") ("Defendant

20  Sampson does not dispute that the Tribes cannot be held liable for costs and fees absent statutory

21  authority or an express waiver of sovereign immunity.")  Their argument that the Equal Access to

22  Justice Act abrogates such immunity fails for the simple reason that the Act nowhere mentions

23  Indian tribes.  A statute that is completely silent on abrogation of tribal immunity surely cannot be

24  construed as an "unequivocal" expression that Indian tribes should be subject to claims for

25  attorneys fees.

26          *Florida Paraplegic Association v. Miccosukee Tribe of Indians of Florida*, 166 F.3d 1126

27  (11th Cir. 1999) provides an instructive analogy.  Invoking the settled rule that "Congress

28  abrogates tribal immunity only where the definitive language of the statute itself states an intent to

1    either abolish Indian tribes' common law immunity or to subject tribes to suit under the act," the

2    circuit court ruled that the Miccosukee Tribe cannot be sued for violations of the Americans with

3    Disabilities Act because the Act contains "no specific reference to Indians or Indian tribes

4    anywhere in Title III." *Id.* at 1131.  So too here, the fact that the Equal Access to Justice Act

5    contains no reference to Indians tribes leads to the inescapable conclusion that the Act does not

6    abolish the Tribes' common law immunity from suit or subject them to claims for attorneys fees

7    in this case.  *See also, Arizona v. San Carlos Apache Tribe of Arizona,* 463 U.S. 545, 567, n.17,

8    103 S.Ct. 3201 (1983) (McCarren Amendment, which abrogated the immunity of the United

9    States in water rights cases in state court, did not abrogate the immunity of Indian tribes, who are

10   not mentioned in the Act).

11   **IV.    THE TRIBES HAVE NOT WAIVED THEIR IMMUNITY FROM CLAIMS FOR**
12   **ATTORNEYS FEES**

13          The Answering Defendants also suggest that the Tribes have "acknowledged" they do not

14   have immunity from attorneys fees claims because the complaints in intervention contain requests

15   for attorneys fees.  *See* Sampson Memo at page 5.  They do not argue that this is an unequivocal

16   waiver of sovereign immunity, nor could they, because pleading attorneys fees falls far short of

17   meeting the legal standard for a waiver of tribal immunity.  Tribal waivers must be "clear,

18   express" and "unequivocally expressed."  *Rosebud Sioux Tribe v. Val-U Constr. Co.,* 50 F.3d 560,

19   562 (8th Cir. 1995), *cert. denied,* 516 U.S. 819 (1995).  An Indian tribe's decision to litigate does

20   not subject the tribe to affirmative relief by defendants in that or any other case.  The Tribes'

21   intervention here is not a waiver of their immunity.  The Supreme Court has ruled that by filing a

22   lawsuit, an Indian tribe does not waive its immunity from compulsory counterclaims.  *Oklahoma*

23   *Tax Commission v. Citizen Band of Potawatomi Indian Tribe,* 498 U.S. 505 (1991).  In that case,

24   the Tribe filed suit to enjoin the collection of state taxes on its reservation.  The State

25   counterclaimed to enforce the tax assessment and to require the Tribe to collect the taxes in the

26   future.  The Court found that the counterclaim was barred by the Tribe's sovereign immunity, for

27   the reason that if the Tribe is immune from a direct suit, logically it would be immune from a

28   cross-suit as well.  *Id.* at 509.  The Court concluded that "an Indian tribe does not waive its

1    sovereign immunity from actions that could not otherwise be brought against it merely because

2    those actions were pleaded in a counterclaim to an action filed by the Tribe." *Id.* (internal citation

3    omitted).

4           The only exception to the rule that an intervening Indian tribe does not subject itself to

5    claims by defendants in the same lawsuit is the doctrine of equitable recoupment, and even as to

6    that exception, the Ninth Circuit has not adopted it. *See Jicarilla Apache Tribe v. Andrus,* 687

7    F.2d 1324 (10th Cir. 1982).  In any event, immunity against recoupment claims is waived only to

8    the extent of defeating the Tribe's claims, but not to the extent of an affirmative judgment against

9    the Tribe which exceeds the Tribe's claims. *Id.* at 1344.  Because Ramona and Cahuilla seek no

10   monetary relief in this case, there can be no judgment against which an award of attorneys fees

11   could be offset.  An order awarding attorneys fees against the Tribes would be a grant of

12   affirmative relief in violation of their unextinguished sovereign immunity.  Further, there has been

13   no determination of the Tribes' entitlement to attorneys fees, so there is no judgment against

14   which to offset attorneys fees claimed by the Defendants.  The recoupment exception does not

15   apply under these circumstances.

16   **V.    THE TRIBES MUST BE AFFORDED AN OPPORTUNITY TO WITHDRAW**
         **THEIR MOTIONS BEFORE THIS COURT CONDITIONS DISMISSAL ON AN**
17      **AWARD OF ATTORNEYS FEES**

18          This Court's Order dismissing claims against the Answering Defendants with prejudice,

19   while leaving open the possibility of attorney fees as a condition of the dismissal, puts this case in

20   an unusual procedural posture.  The law is settled that an order granting a conditional voluntary

21   dismissal does not take effect of its own force. *Lau v. Glendora Unified School District,* 792 F.2d

22   929 (9th Cir.1986).  Rather, the plaintiff is entitled to "a reasonable period of time within which

23   [either] to refuse the conditional voluntary dismissal by withdrawing [the] motion for dismissal or

24   to accept the dismissal despite the conditions." *Id.* at 931.  Although this Court granted the

25   motion to dismiss without affording the Tribes an opportunity to make their election, the Tribes

26   plainly preserved that option at oral argument.  Counsel for the Ramona Band of Cahuilla

27   specifically referenced the Tribes' right to withdraw the motion in response to the arguments by

28   several defendants that they were entitled to attorneys fees.

1    If this Court decides to impose attorneys fees as an after-the-fact condition of dismissal,

2    the Tribes will refuse to accept that condition and withdraw their motions as to those Defendants

3    who have moved for fees and costs.  The Tribes have not consented to the imposition of

4    conditions on their voluntary dismissal, and they must be given a reasonable time within which to

5    withdraw their motion.  *See Unioil v. E.F. Hutton & Co., Inc.,* 809 F.2d 548, 555 (9th Cir. 1987)

6    (After plaintiffs have notice of the proposed conditions on voluntary dismissal, they are deemed to

7    have consented to such conditions unless they withdraw their motion within a reasonable time).

8    **VI.   THE TRIBES ACTED IN GOOD FAITH WITH REGARD TO DEFENDANT**
     **BRYAN D. SAMPSON'S REQUEST FOR DISMISSAL WITH PREJUDICE**
9

10    Defendant Sampson argues that he is entitled to attorneys fees because the Tribes wrongly

11    included him in the litigation for "almost a year."  Sampson Memo at page 6.  As the record

12    shows, the Tribes acknowledged that Defendant Sampson, as the successor to an original party,

13    owns land that overlies at least in part a water source that has been found not to contribute to the

14    Santa Margarita River system.  However, there has never been any doubt that Defendant Sampson

15    is a party subject to this Court's continuing jurisdiction.  The Tribes properly served their

16    complaints on him.  The possibility of physical impact on the Tribes' water supply may be remote,

17    but that does not remove him from the case, nor make service on him unjustified.  As subsequent

18    negotiations with Defendant Sampson showed, he was not willing to agree to give up the right to

19    challenge the Tribes' water rights in the future, a risk that the Tribes sensibly were not prepared to

20    accept, regardless of the degree of possible physical interference.[4]

21    As a party, Defendant Sampson retained that right, because in this water rights

22    adjudication each party is adverse to all other parties.  *See, e.g.,* Interlocutory Judgment No. 33,

23

---

24    [4] The question of possible physical connection between water on Defendant Sampson's
property and water on the Tribes' Reservations is an unresolved issue of fact.  This Court in

25    Interlocutory Judgment 39A expressly excluded surface water from the Findings of Fact and
Conclusions of Law contained therein.  Conclusions of Law No. VI ("The preceding Findings of

26    Fact and Conclusions of Law do not in any way pertain to surface waters which arise upon, flow

27    across or which are diverted or are impounded upon the lands, to which they have application.")
The question of whether Defendant Sampson's property contains surface water that may be

28    connected to water sources flowing from the Tribes' Reservations has not been investigated.
Defendant Sampson's unequivocal statement that the water on his property does not contribute to
the Santa River Margarita River system may be in error.

1    Conclusion of Law No. 23, December 11, 1962; *see also, United States v. Truckee-Carson*

2    *Irrigation District,* 649 F.2d at 1309 (in water rights adjudications "all parties water rights are

3    interdependent.")  The record plainly shows that the principal reason Defendant Sampson and the

4    Tribes were not able to resolve their differences before the Tribes' filed their motion for voluntary

5    dismissal was that Defendant Sampson was not willing to extend to the Tribes any protection

6    against adverse claims from him in the future.  *See* Sampson Memo, Exhibit 4, Email

7    Correspondence from Curtis Berkey, Counsel for Ramona Band of Cahuilla to Mary Fickel,

8    Counsel for Defendant Sampson, December 24, 2008, (summarizing proposal that the stipulated

9    dismissal include language from Interlocutory Judgment 39A that the United States and the Tribes

10   have quieted title to water against adverse claims of Defendant Sampson); *Id.* at Exhibit 7, Email

11   Correspondence from Curtis Berkey to Mary Fickel, January 7, 2009 (reiterating that the

12   stipulation should include language quieting title in the United States and the Tribes against

13   Defendant Sampson's adverse claims, as provided in IJ 39A).   Defendant Sampson refused to

14   agree to this provision.  It was unreasonable for him to ask the Tribes to give up their right to

15   defend against his future challenges, while at the same time insisting that his water use remain

16   beyond challenge by the Tribes.  The Tribes acted in good faith throughout these discussions.

17   **VII.   THE TRIBES ARE ENTITLED TO AN EVIDENTIARY HEARING TO RESOLVE
           DISPUTED FACTUAL QUESTIONS REGARDING THE REASONABLENESS OF
18         CLAIMED ATTORNEYS FEES**

19          The Answering Defendants have not provided adequate documentation of their attorneys'

20   time and fees to allow this Court to determine whether the amounts and rates claimed are

21   reasonable and the purposes for which the work was performed are related to the issues raised by

22   the Tribes' complaints.  An award of attorneys fees must be "reasonable both in terms of the

23   hourly rates and the hours expended." *Southwest Center for Biological Diversity v. Bartel,* 2007

24   WL 2506605 (S.D. Cal. 2007) (citing *Pennsylvania v. Delaware Valley Citizens' Council for*

25   *Clean Air,* 478 U.S. 546, 562-566 (1986)).  The court may consider a variety of factors, such as

26   the time and labor expended, the difficulty of the legal questions, the experience, reputation and

27

28

ability of the attorneys and the results obtained. *Id.*[5] The decision to hold an evidentiary hearing is within the discretion of the district court, and a hearing is required when the court cannot fairly decide disputed questions of fact based on affidavits and other documentation. *See, e.g., Sablan v. Department of Finance of Com. of Northern Mariana Islands*, 856 F.2d 1317, 1322 (9th Cir. 1988); *Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995).

The Tribes dispute the facts alleged in support of these excessive fee demands. First, Defendants Frank Spitzer, Sander Family Trust and Jannki Mithaiwala provide no documentation whatever of the hours worked and the matters on which their attorneys worked, other than conclusory, self-serving statements in their attorneys' affidavits. The fee applicant bears the burden of documenting the hours spent on the litigation and "must submit evidence to support his claim." *Hess v. Ramona Unified School District*, 2008 WL 5381243 *6 (S.D. Cal. 2008). Without an evidentiary hearing at which the itemized billing records and other admissible documentation can be tested by cross-examination and rebuttal evidence, this Court cannot determine whether the claimed amounts are reasonable. In the absence of a hearing, the motions should be denied for failure to submit evidence to support the application.

Second, the billing records submitted by Defendant Sampson are not sufficiently detailed and supported to enable this Court to determine whether the time spent and hours billed are reasonable. The billing records of Mary Fickel, the attorney for Defendant Sampson, are vague and incomplete. For example, the entry on December 11, 2008 simply states "[r]eview files, perform legal analysis, prepare draft brief regarding lifting stay." Sampson Memo, Exhibit 17. Other entries state "prepare and attend hearing on stay motion." *Id.*, June 30, 2008. Faced with similar "block-billed, extremely vague, or generally non-descriptive" billing records, this Court reduced the applicant's hours by 29.7%. *Hess v. Ramona Unified School District*, 2008 WL 5381243 *6 (S.D. Cal. 2008) (billing entries for "work on preliminary injunction brief" or

---

[5] These factors are drawn from a decision considering attorneys fees under the Endangered Species Act, which of course has no application here. The Tribes cite them as illustrative of the kinds of factors a court should consider if there is otherwise statutory authority for an award of attorneys fees. As set forth above, there is no such statute here.

1  "prepare for hearing on preliminary injunction" are too vague for awarding the full hours

2  claimed).  The hours claimed by Defendant Sampson should be reduced by a similar amount, or

3  the evidentiary hearing should inquire into the nature and scope of the legal work actually

4  conducted.

5       Third, none of the attorney affidavits provide any factual support for their conclusions that

6  the rates billed are the prevailing rates for the locality at issue.  The governing standard is "the

7  community of attorneys of equal experience in the forum district." *Gates v. Deukmejian,* 987 F.2d

8  1392, 1405 (9th Cir. 1992).  None of the attorney affidavits offer any facts with regard to billing

9  rates in the Southern District of California for attorneys of equal experience.  The burden is on the

10  applicant to produce "satisfactory evidence-in addition to the attorneys own affidavits-that the

11  requested rates are in line with those prevailing in the community for similar services by lawyers

12  of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 897

13  (1984).  "Determination of a reasonable hourly rate is not made by reference to the rates actually

14  charged the prevailing party." *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.

15  1986).  Either the motions should be denied on the ground that the applicants have failed to meet

16  this burden or this issue should also be set for hearing.

17       Fourth, none of the attorneys claiming attorneys fees have any experience in water rights

18  litigation.  An evidentiary hearing is necessary to determine the degree to which the fees claimed

19  should be reduced in light of the attorneys' inexperience in the types of issues raised by the

20  Tribes' complaints.  Another factor to be considered is the degree of skill and experience required

21  to address the issues raised by the Tribes' claims.  Further reductions are warranted under this

22  factor.

23       Last, it is apparent from the scanty billing records that have been submitted and the

24  conclusory affidavits of counsel that the great majority of the hours worked concerned the

25  investigation and research into the nature and extent of the water rights held by their clients.  It

26  would not be fair to require the Tribes to pay for the legal work that should have been done years

27  ago to determine whether these parties held water rights under the interlocutory judgments.  In

28  fact, but for the Tribes service of their complaints in this action, these Defendants may still not be

1   aware of their water rights.  The Tribes have cooperated at every turn with all of the attorneys

2   requesting assistance in investigating their clients' rights in this case.  The reward for such

3   cooperation appears to be excessive attorneys fees demands.

**CONCLUSION**

5       Rule 41 does not authorize shifting fees to the Tribes in the circumstances of this case

6   whether the defendants are dismissed with or without prejudice.  The Tribes have conducted this

7   litigation in good faith and sought initially to effect service against the Defendants as water right

8   claimants under this Court's Final Judgment.  The Tribes' subsequent willingness to forgo

9   litigating their claims against out-of-basin parties was an effort to streamline the litigation and to

10  allow such parties to avoid the cost of litigation – despite the fact that they were subject to the

11  Court's continuing jurisdiction.  There is no statute or rule that authorizes a fee award under these

12  circumstances.  The Tribes have not waived their immunity.  For these reasons, the motions

13  should be denied.  In the alternative, this Court must allow the Tribes a reasonable opportunity to

14  withdraw their motion as to these defendants.  If the motions are to be considered, an evidentiary

15  hearing is necessary to enable this Court to determine whether the fees and costs requested are

16  reasonable in light of all of the circumstances.

17  Date:  June 1, 2009                          Respectfully submitted,

18                                               ALEXANDER, BERKEY, WILLIAMS &
                                                 WEATHERS LLP
19

20                                               By:/s/Curtis G. Berkey
21                                                  Curtis G. Berkey
                                                    Scott W. Williams
22                                                  2030 Addison Street, Suite 410
                                                    Berkeley, California 94704
23                                                  Tel: 510/548-7070
                                                    Fax: 510/548-7080
24                                                  E-mail: cberkey@abwwlaw.com
                                                    E-mail: swilliams@abwwlaw.com
25
                                                 *Attorneys for Plaintiff-Intervenor,*
26                                               *Ramona Band of Cahuilla*

27

28

COAST LAW GROUP LLP

By:/s/Marco Gonzales
  Marco Gonzales
  169 Saxony Road, Suite 204
  Encinitas, CA 92024
  Tel: 760/942-8505
  Fax: 760/942-8515

  *Attorney for Plaintiff-Intervenor,*
  *Cahuilla Band of Indians*


McELROY, MEYER, WALKER & CONDON, P.C.

By:/s/Scott B. McElroy
  Scott B. McElroy (Pro Hac Vice)
  M. Catherine Condon (Pro Hac Vice)
  1007 Pearl Street, Suite 220
  Boulder, Colorado
  Tel: 303/442-2021
  Fax: 303/444-3490
  E-mail: sbmcelroy@mmwclaw.com
  E-mail: ccondon@mmwclaw.com

  *Attorneys for Plaintiff-Intervenor,*
  *Cahuilla Band of Indians*

Case No.: 51-cv-1247-GT-RBB

## DECLARATION OF SERVICE BY U.S. MAIL

I, the undersigned, declare as follows:

I am a citizen of the United States of America, over the age of 18 years, and not a party to the above-entitled action.  My business address is 2030 Addison Street, Suite 410, Berkeley, California, 94704.

On June 1, 2009, I caused to be served the following document(s) in United States of America, et al. v. Fallbrook Public Utility District, et al., Case No. 51-1247-SD-GT:

1)   **JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE RAMONA BAND OF CAHUILLA'S AND CAHUILLA BAND OF INDIANS' OPPOSITION TO MOTIONS FOR ATTORNEYS FEES**

by depositing a copy in the United States mail at Berkeley, California, in an envelope with first class postage fully paid, addressed as follows:

Nobuo Komota
c/o Richard Woo
Soliton Tech
2635 N. First Street, Suite 213
San Jose, CA 95134

Agri-Empire, Inc.
P.O. Box 490
San Jacinto, CA 92383

Bill Steele
U.S. Bureau of Reclamation
27708 Jefferson Ave., #202
Temecula, CA 92590

Director
Riverside Co. Planning
4080 Lemon Street, 9th Floor
Riverside, CA 92501

General Manager
Rancho Cal RV Resort CA
P.O. Box 214
Aguanga, CA 92536

SDSU Field Station Programs
ATTN: Matt Rahn, Reserve Director
5500 Campanile Drive
San Diego, CA 92182-4614

Anthony J. Pack, General Manager
Eastern MWD
P.O. Box 8300
Perris, CA 92572-8300

General Manager
Rainbow MWD
3707 Old Highway 395
Fallbrook, CA 92028-9327

Michael Lopez
Metropolitan Water District
Lake Skinner Section
33740 Borel Road
Winchester, CA 92596

General Manager
Elsinore Valley MWD
P.O. Box 3000
Lake Elsinore, CA 92330

Jack S. Safely
Western MWD
P.O. Box 5286
Riverside, CA 92517

Arthur L. Littleworth
James B. Gilpin
C. Michael Cowett
BEST BEST & KRIEGER LLP
655 West Broadway, 15th Floor
San Diego, CA 92101

Louidar
c/o McMillan Farm Management
29379 Rancho California Road, #201
Temecula, CA 92591

Robert H. James, Esq.
SACHSE, JAMES & LOPARDO
205 W. Alvarado St., Suite 1
Fallbrook, CA 92028

Richard & Christine McMillan
Gary & Patricia McMillan
McMillan Farm Management
29379 Rancho California Road, Suite 201
Temecula, CA 92362

Darwin Potter
Metropolitan Water District
Lake Skinner Section
33740 Borel Road
Winchester, CA 92596

John Rossi, General Manager
Western MWD
P.O. Box 5286
Riverside, CA 92517

James Carter
P.O. Box 28739
Santa Ana, CA 92799-8739

Brian Brady, General Manager
Rancho California WD
P.O. Box 9017
Temecula, CA 92589-9017

Michael E. McPherson, Esq.
344 Plumosa Avenue
Vista, CA 92083

Manuel Hamilton
Joseph Hamilton
P.O. Box 391372
Anza, CA 92539

Assistant Chief of Staff
Environmental Security
Box 555008
Marine Corps Base
Camp Pendleton, CA 92055-5008

Keith Lewinger, General Manager
Fallbrook Public Utility District
P.O. Box 2290
Fallbrook, CA 92088

Mike Luker
Eastern MWD
P.O. Box 8300
Perris, CA 92572-8300

Counsel Western Bases
P.O. Box 555231
Marine Corps Base - Bldg. 1254
Camp Pendleton, CA 92055-5231

Tulvio Durand, Chairman
AVMAC
P.O. Box 390908
Anza, CA 92539

Linda Garcia
Riverside Co. Flood Control and Water Conservation Dist.
1995 Market Street
Riverside, CA 92501

Larry Minor
P.O. Box 398
San Jacinto, CA 92581

Craig Elitharp, Director of Operations
Rancho California Water District
P.O. Box 9017
Temecula, CA 92589-9017

David Glazer, Esq.
Environment and Natural Resources Division
Natural Resources Section
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA 94105

Leslie Cleveland
U.S. Bureau of Reclamation
27708 Jefferson Avenue, #202
Temecula, CA 92590

Peter E. Von Haam, Sr. Deputy General Counsel
Metropolitan Water District of Southern California
P.O. Box 54153
Los Angeles, CA 90054

Pamela Williams
Office of the Solicitor
U.S. Department of the Interior
Division of Indian Affairs
1849 C Street, NW, Room 6456
Washington, D.C. 20240

Elsa Barton
217 No. Palm
Hemet, CA 92543

Anza Mutual Water Company
P.O. Box 390117
Anza, CA 92539-0117

Chairperson
Cahuilla Band of Indians
P.O. Box 391760
Anza, CA 92539

Amy Gallaher
Metropolitan Water District
P.O. Box 54153
Los Angeles, CA 90054-0153

Stephen B. Reich
Stetson Engineers, Inc.
2171 E. Francisco Blvd., Suite K
San Rafael, CA 94901

Khyber Courchesne
1264 Page Street
San Francisco, CA 94117

Anna Gale James
40275 Curry Court
Aguanga, CA 92536

Mary E Lee
41085 Lakeshore Blvd.
Aguanga, CA 92536

Michael J Machado
Pamela M. Machado
P O Box 391607
Anza, CA 92539

Marianne E. Pajot
40225 Curry Court
Aguanga, CA 92536-9742

Jeffry F. Ferre
Jill N. Willis
BEST BEST & KRIEGER LLP
3750 University Avenue
P.O. Box 1028
Riverside, CA 92502

Don Forsyth
Metropolitan Water District
33752 Newport Road
Winchester, CA 92596

Assistant Chief of Staff, Facilities
Attn: Office of Water Resources
Box 555013
Camp Pendleton, CA 92055-5013

James J. Fletcher
U. S. Department of the Interior
Bureau of Indian Affairs
1451 Research Park Drive
Riverside, CA 92507-2471

Mark Shaffer
6837 NE New Brooklyn Road
Bainbridge Island, WA 98110

Thomas Perkins
7037 Gaskin Place
Riverside, CA 92506

Briar McTaggart
1642 Merion Way 40E
Seal Beach, CA 90740

Billy Ward
P O Box 5878
San Diego, CA 92165

John S Wilson
Peggy Wilson
14205 Minorca Cove
Del Mar, CA 92014-2932

Barbara J Carr Trust
Barbara J. Carr, Trustee
20571 Bexley Road
Jamul, CA 91935-7945

Louidar
P.O. Box 891510
Temecula, CA 92591

Eugene Franzoy
Franzoy Consulting, Inc.
1392 W. Stacey Lane
Tempe, AZ 85284

Steve Larson
S.S. Papadopilos & Associates
7944 Wisconsin Ave.
Bethesda, MD 20814-3320

Wiederrich Family Trust
13440 St. Andrews Place
Poway, CA 92064

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration was executed on June 1, 2009, at Berkeley, California.

_____
Martha Morales