ROBERT K. EDMUNDS (SBN 89477)
Email: robert.edmunds@bipc.com
BUCHANAN INGERSOLL & ROONEY LLP
One America Plaza
600 West Broadway, Suite 1100
San Diego, CA 92101
Telephone:   619 239 8700
Facsimile:    619 702 3898

Attorneys for Specially Appearing and Dismissed Defendants
EDWARD F. REED TRUST, WARD FAMILY TRUST, and
WARD CREDIT TRUST

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>RAMONA BAND OF CAHUILLA, CAHUILLA BAND OF INDIANS, et al.,<br><br>Plaintiff-Intervenors,<br><br>vs.<br><br>FALLBROOK PUBLIC UTILITY DISTRICT, et al.,<br><br>Defendants. | Case No. 51-1247-GT-RBB<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO THE JOINT OPPOSITION OF THE RAMONA BAND OF CAHUILLA AND CAHUILLA BAND OF INDIANS TO MOTION FOR DISMISSAL WITH PREJUDICE OR, IN THE ALTERNATIVE, FOR ATTORNEYS' FEES AND COSTS**<br><br>Judge:   Hon. Gordon Thompson, Jr.<br>Dept:    8<br>Date:    No Hearing Date Set<br>Time: |

The Edward F. Reed Trust dated December 17, 1964, the Ward Family Trust dated June 16, 1981, and the Ward Credit Trust (collectively, the "Trusts") respectfully submit their reply to the joint opposition of the Ramona Band of Cahuilla and the Cahuilla Band of Indians (collectively, the "Tribes") to the Trusts' motion for dismissal with prejudice or, in the alternative, for attorneys' fees and costs (the "Motion").

### A.  Request for Joint Hearing with Tribes' Joint Motion for Reconsideration

On April 29, 2009, this Court entered the order (the "Order") that is the subject matter of this Motion and in which this Court dismissed certain out-of-Basin defendants with prejudice and other out-of-Basin defendants, including the Trusts, without prejudice. The Order also authorized certain of the dismissed out-of-Basin defendants to file motions for attorneys' fees and costs, and stated that the motions were to be decided on the pleadings and without a hearing. On or about May 28, 2009, the Tribes filed a joint motion for reconsideration in which the Tribes asked this Court to reconsider its dismissal of certain out-of-Basin defendants with prejudice and to dismiss them without prejudice. This Court set the Tribes' motion of reconsideration for hearing on June 29, 2009.

In light of the hearing on the Tribes' motion for reconsideration, the Trusts request that this Court also set the Trusts' Motion for hearing on June 29 so that the motions will be heard together. The Trusts are seeking to convert their dismissal without prejudice to a dismissal with prejudice because, but for not filing an answer, they were in the same position as the answering out-of-Basin defendants that the Court dismissed with prejudice. If, however, the Court grants the Tribes' motion for reconsideration and changes the dismissals of the answering out-of-Basin defendants from dismissals with prejudice to dismissals without prejudice, the portion of the Trusts' Motion seeking a dismissal with prejudice will likely be moot.

### B.  Dismissal with Prejudice

Assuming the Trusts' Motion for a dismissal with prejudice does not become moot, this Court should grant the Motion. The Trusts' Motion is grounded in the equitable principle that the similarly situated are to be treated similarly.

In their opposition, the Tribes argue that they dismissed the Trusts as a matter of right under Rule 41(a)(1) of the Federal Rules of Civil Procedure, and they cite several cases indicating this

1  Court has nothing more to say about it.  *See, e.g., Commercial Space Management Co., Inc. v.*
2  *Boeing Co., Inc.*, 193 F.3d 1074, 1078 (9th Cir. 1999); *Concha v. London*, 62 F.3d 1493, 1506 (9th
3  Cir. 1997).  Yet the Tribes do not address the cases in which the Courts of Appeal indicate that there
4  is a limit to a plaintiff's right to dismiss a non-answering defendant unilaterally.

5        In the *Swedberg v. Marotzke*, 339 F.3d 1139, 1142 (9th Cir. 2003), the Ninth Circuit said
6  that although the language of Rule 41(a)(1) leaves little room for interpretation, the rule is intended
7  to "safeguard against abuse by limiting its application to an early stage of the proceedings."
8  Similarly, the Eighth Circuit said that Rule 41(a)(1) allows unilateral dismissal only up to the point
9  at which the resources of the court and the defendant are committed to the extent that preclusive
10  consequences must be imposed for dismissal.  *In re Piper Aircraft Distrib. Sys. Antitrust Litigation*,
11  551 F.2d 213, 220 (8th Cir. 1977).  Clearly there is a limit to the Tribes' recourse to Rule 41(a)(1).

12        The Tribes reached the limit in this case.  Notwithstanding the stay this Court ordered on
13  June 30, 2008, on October 1, 2008, this Court set a firm trial of June 22, 2009.  In light of the
14  indisputably ponderous pace of the settlement negotiations with the Tribes and the prospect of a
15  trial only nine months away, no defendant, answering and non-answering alike, could afford to
16  stand idly by and not begin to prepare for trial by, among other things, analyzing the Tribes' claims,
17  possible defenses to the Tribes' claims, the applicable interlocutory judgments and federal law, and
18  the hydrological conditions inside and outside the Basin.  It is entirely unreasonable and self-serving
19  for the Tribes to suggest that the Trusts, as non-answering defendants, should have sat on their
20  hands under these circumstances.

21        That the Trusts had not filed answers makes no difference.  Certainly they could not rely on
22  the Tribes to settle with them or to dismiss them before trial.  All of the indications were that the
23  Tribes were not going to settle with the Trusts or any other defendants in time to avoid the June 22,
24  2009 trial, and the United States and the Federal Negotiating Team actively opposed settlements
25  involving only some of the defendants.  Not until late March 2009 -- a mere three months before the
26  June trial date, did the Tribes come up with the idea of dismissing the out-of-Basin defendants and
27  adjudicating their claims only against those defendants within the Basin.  Also, the Trusts could not
28  know whether this Court would hold to, or could be persuaded to continue, the trial date.  To the

- 2 -
REPLY MEMORANDUM OF POINTS AND AUTHORITIES    Case No.: 51-1247-GT-RBB

Trusts and any objective observer, trial seemed unavoidable, and reasonably so. It would have been foolhardy for the Trusts not to begin to prepare.

Consequently, when the Tribes filed their joint motions to dismiss the out-of-Basin defendants, the Trusts were, and had been from the day they waived service of summons, in the same boat as the answering defendants. That the Trusts did not file answers was an accident of the stay, for which the Trusts should bear no responsibility and which should provide the Tribes no safe haven. This Court should find that too much time had passed and the Trusts had been too exposed to the vicissitudes of litigation for the Tribes to be allowed to unilaterally dismiss the Trusts under Rule 41(a)(1).

### C. Attorneys' Fees and Cost

The Tribes posit various arguments against this Court's awarding attorneys' fees and costs to the Trusts. One argument is that the Tribes' sovereign immunity protects them against the award. The motion for attorneys' fees filed by Frank Spitzer succinctly disposes of the Tribes' argument and is incorporated herein by this reference. *See* Defendant Frank Spitzer's Motion for Attorneys Fees at 5, l. 4- 22 (filed May 18, 2009).

A second argument is that the substantially all of the Trusts' legal work should have been done before the Tribes intervened in this action in 2007 because the Trusts' interests in their land were subject to the interlocutory judgments entered in this action in the early 1960's. The Tribes' argument assumes a perfect world in which knowledge of this action was conveyed every time the land itself was conveyed. As the Tribes well know, the world is not a perfect place. This action started in January 1951, and the interlocutory judgments were entered more than 45 years ago. In those 45 years, the Tribes took no action to quantify their respective water rights, that is, not until just recently. As a result, the existence of the action faded from memory.

Moreover, the Tribes appear to assume that the conveyances of land always involve knowledgeable buyers and sellers, but in fact, conveyances take place in any number of ways, many of which do not involve a buyer and a seller. For example, land may be conveyed by gift or inheritance. Land may also be conveyed by non-judicial foreclosure and by judicial sale. In each of

1  these instances, the chances are almost nil that the grantee would be told of, or would have any
2  reasonable way of discovering the existence of, this action.
3        The Tribes also appear to believe this action is a matter a grantee of land could easily find in
4  the public record. In California, public notice of matters affecting land is given by filing a
5  document with the local county recorder, but here, the existence of the action cannot be found in the
6  Official Records of the Riverside and San Diego County Recorders. Surely the Tribes are not
7  suggesting a grantee should know to search the bowels of the federal courthouse to find this action.
8        Lastly, the Tribes complain about the adequacy of the descriptions of the legal services
9  rendered to the Trusts and ask this Court to set an evidentiary hearing. The Trusts would welcome
10 an evidentiary hearing if this Court thinks one is needed.

## CONCLUSION

12       For the foregoing reasons, the Trusts respectfully request this Court to dismiss them with
13 prejudice or, in the alternative, to award them attorneys' fees and costs.

14 DATED: June 15, 2009             BUCHANAN INGERSOLL & ROONEY LLP

/s/ Robert K. Edmunds
By:   ROBERT K. EDMUNDS
Attorneys for Specially Appearing and Dismissed Defendants THE EDWARD F. REED TRUST, THE WARD FAMILY TRUST and THE WARD CREDIT TRUST

#256559-v1;0075009/000001

- 4 -

REPLY MEMORANDUM OF POINTS AND AUTHORITIES        Case No.: 51-1247-GT-RBB