Marco A. Gonzalez (CA State Bar No. 190832)
COAST LAW GROUP LLP
1140 S. Coast Hwy. 101
Encinitas, CA 92024
Tel: 760/942-8505, Fax: 760/942-8515
Email: marco@coastlawgroup.com

Scott B. McElroy (Pro Hac Vice)
M. Catherine Condon (Pro Hac Vice)
McELROY, MEYER, WALKER & CONDON, P.C.
1007 Pearl Street, Suite 220, Boulder, CO 80302
Tel: 303/442-2021, Fax: 303/444-3490
E-mail: smcelroy@mmwclaw.com
E-mail: ccondon@mmwclaw.com
*Attorneys for Plaintiff-Intervenor*
*Cahuilla Band of Indians*

Curtis G. Berkey (CA State Bar No. 195485)
Scott W. Williams (CA State Bar No. 097966)
BERKEY WILLIAMS LLP
2030 Addison Street, Suite 410, Berkeley, CA 94704
Tel: 510/548-7070, Fax: 510/548-7080
E-mail: cberkey@abwwlaw.com
E-mail: swilliams@abwwlaw.com
*Attorneys for Plaintiff-Intervenor*
*Ramona Band of Cahuilla*

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>RAMONA BAND OF CAHUILLA, CAHUILLA BAND OF INDIANS, et al.,<br><br>  Plaintiff-Intervenors,<br><br>v.<br><br>FALLBROOK PUBLIC UTILITY DISTRICT, et al.,<br><br>  Defendants. | CIVIL NO.: 51-CV-1247-LAB-RBB<br><br>**DECLARATION OF M. CATHERINE CONDON IN SUPPORT OF JOINT REPLY TO PARTIAL OPPOSITION TO TRIBES' MOTION FOR ORDER RE: SUCCESSORS-IN-INTEREST**<br><br>Hon. Larry Alan Burns<br><br>Date:  No hearing date set<br>Time:<br>Courtroom: 9 |

Case No.: 51-cv-1247-LAB-RBB

I, M. Catherine Condon, hereby declare as follows:

1. I make this declaration based on my personal knowledge.

2. I am counsel for the Cahuilla Band of Indians, a plaintiff-intervenor in the above-captioned case.

3. The Cahuilla Band of Indians and the Ramona Band of Cahuilla, plaintiff-intervenors in this action, completed service of their Second Amended Complaints[1] on the Defendants and notified the Court and the parties by status report filed on July 17, 2012.  *Status Report Submitted by the Cahuilla Band of Indians and the Ramona Band of Cahuilla* (July 17, 2012), Doc. No. 5386.  A list of the Defendants was filed with the Clerk of the Court on December 27, 2011.  *Notice of Defendants Subject to the Tribes' Complaints* (Dec. 19, 2011), Doc. No. 5369.

4. The original list of landowners subject to the Tribes' complaints was compiled by Oliver Page, consultant to the U.S. Department of Justice, as trustee for the Tribes.  *Declaration of Oliver S. Page in Support of Joint Reply to Opposition to Joint Motion to Stay Proceedings Pending Settlement Negotiations* (June 23, 2008), Doc. No. 5036-3.  Based on information provided by the County of Riverside Real Property Tax Assessor Geographic Information System, this list of defendants was current through October 1, 2007.  *Id.* ¶ 4.

5. During the course of service of process of the Tribes' Second Amended Complaints, the Tribes exercised due diligence to ascertain the identities and addresses of successors-in-interest to the defendants on the original list prepared by Mr. Page.  Upon learning from the process server that service could not be completed because of changes in ownership due to sale or conveyance of the parcel or the death of the record owner, the Tribes consulted electronic databases, such as WestlawNext/Public Records–People Map and others, to ascertain the identities and addresses for the new owners.  This required extensive investigation into the identity of the heirs of deceased landowners and subsequent purchasers.  When the new owners were determined, the Tribes sought to serve them by personal service or substitute service under California law.  These efforts are set out in detail in the *Affidavit of Daryl Ann Vitale Re: Efforts to Locate Certain Defendants in Order*

---

[1] *Cahuilla Band of Indians' Second Amended Complaint in Intervention* (Mar. 30, 2009), Doc. No. 5182; *Ramona Band of Cahuilla's Second Amended Complaint in Intervention* (Mar. 30, 2009), Doc. No. 5181 (collectively "Second Amended Complaints").

1                                             Case No.: 51-cv-1247-LAB-RBB

*to Serve Process Upon Them* (July 21, 2011), Doc. No. 5315-2, and *Individuals to be Served by Publication*, Attachment 1 to *Affidavit of Daryl Ann Vitale re: Efforts to Locate Certain Defendants in Order to Serve Process Upon Them* (July 21, 2011), Doc. 5315-3, and the *Affidavit of Martha Morales Re: Efforts to Locate Certain Defendants in Order to Serve Process Upon Them* (July 22, 2011), Doc. No. 5315-13.

6. Information maintained by the County of Riverside Real Property Tax Assessor was also consulted. However, after the initial mailing of the Tribes' Second Amended Complaints, Waiver of Service of Summons and Notice of Lawsuit and Request for Waiver of Service of Summons in September 2009, the Riverside County Assessor changed the information available on the website by deleting the mailing address field for all owners. The owners' names were never available on this website. Currently, for our purposes, the only information available on the Riverside County Assessor's website is the parcel number and property address.

7. For those parcels for whom new owners could not be reliably identified or who could not be served by personal service or substitute service, the Court authorized service by publication in local newspapers. *Order Granting Joint Motion to Authorize Service of Process by Publication* (July 29, 2011), Doc. No. 5321. That process was completed by July 17, 2012. *Status Report Submitted by the Cahuilla Band of Indians and the Ramona Band of Cahuilla* (July 17, 2012), Doc. No. 5386.

8. During the pendency of service of process, the Tribes identified several parcels that were subject to foreclosure proceedings. When the Tribes learned that a parcel was subject to foreclosure proceedings, they identified the bank's trustee and counsel for the Tribes contacted that entity by letter or telephone to determine the date of the foreclosure sale and related information. As of the date the Court authorized service by publication, only one foreclosure sale had been completed, but the identity of the new owner could not be identified. All of the owners of the parcels subject to foreclosure proceedings were included on the service by publication list.

9. To the best of my knowledge, there are no subscription services available that would enable the Tribes to indefinitely monitor and track at reasonable expense conveyances of parcels subject to the Tribes' Second Amended Complaints.

1    10.    Realty Trac contains data exclusively related to foreclosures and home values.  Based on information contained on its website, that service would be of no use in ascertaining information about voluntary transfers or conveyances to heirs through the probate process.

11.    The database known as County Records Research appears to be likewise limited to information about foreclosures, and, in fact, advertises itself as the "premier source for foreclosure information."  www.countyrecordsresearch.com (last visited Sept. 6, 2012).  Its website describes its services as a "subscription based service that provides daily default and foreclosure information on properties located throughout the states of California, Arizona and Nevada."  *Id.*

12.    DataQuick contains transaction information, but access to that information would require the Tribes to periodically search for information related to each of more than 1,600 parcels at a charge of $2.50 per parcel.  Information related to transaction history is charged at $5.00 per parcel.  Copies of documents, which will be required in order to confirm the identities of new owners, are provided at $5.75 per document.  *See,* DataQuick Pricing Plan, http://subscribe.dataquick.com (last visited Sept. 6, 2012).  An indefinite, post-judgment obligation to access this data base at that cost would soon impose an astronomical financial burden on the Tribes.  Moreover, upon information and belief, the raw data on which DataQuick bases its reports derives from real property information maintained by county real property tax assessors' offices.  That is problematic in the case of Riverside County because it recently removed all contact information, including addresses, about real property owners from its website.  *See supra* ¶ 6.  As a result, information provided by a subscription service such as DataQuick is not likely to be a reliable source of information about subsequent real property conveyances.

I declare under penalty of perjury that the foregoing is true and correct.

*/s/ M. Catherine Condon*

Date:  September 7, 2012

M. Catherine Condon