1  William J. Brunick, Esq. (State Bar No. 46289)  *Exempt from filing fees pursuant*
   **BRUNICK, McELHANEY & KENNEDY PLC**         *to Govt. Code Sec. 6103*
2  1839 Commercenter West
3  San Bernardino, California 92408-3303

4  MAILING:
   P.O. Box 13130
5  San Bernardino, California 92423-3130

6  Telephone: (909) 889-8301
   Facsimile: (909) 388-1889
7  E-Mail: bbrunick@bmblawoffice.com
8  Attorneys for WATERMASTER SANTA MARGARITA RIVER WATERSHED

9

10

11              **UNITED STATES DISTRICT COURT**

12                        **FOR THE**

13                  **SOUTHERN DISTRICT**

14

15  UNITED STATES OF AMERICA,        Civil Action No. 51-cv-01247-GPC-RBB

16           Plaintiff,              **WATERMASTER OF THE SANTA**
                                      **MARGARITA RIVER**
17                                    **WATERSHED RESPONSE TO**
                                      **OBJECTION TO ANNUAL**
18  vs.                               **WATERMASTER REPORT FOR**
                                      **WATER YEAR 2011-12 BY**
19                                    **ARCHIE D. MCPHEE**

20  FALLBROOK PUBLIC UTLITY           Date:    November 8, 2013
    DISTRICT, *et al.*,              Time:    1:30 p.m.
21                                    Dept.:   2D
           Defendants.
22

23                                    Hon. Gonzalo P. Curiel

24                        I.

25                  **INTRODUCTION**

26       On July 23, 2013, the Watermaster submitted the Annual Watermaster

27  Report for Water Year 2011-12 ("Report") to the Court for posting to the

28  electronic docket (Docket Nos. 5416-1 through 5416-3) and a copy of the Report

1   was mailed to all individuals on the Watermaster Distribution List (See Docket

2   No. 5416), as well as interested parties who requested copies.  On August 13,

3   2013, the court filed the Annual Watermaster Report for Water Year 2011-12

4   (Docket Nos. 5416 through 5416-3) to the docket.  Pursuant to Section II of the

5   "Order For The Appointment Of A Watermaster; Powers and Duties."

6   ("Watermaster Order") entered by the Court on March 13, 1989 (Docket No.

7   4809), any party may file an objection to the Report within thirty (30) days of

8   service of the Report.  On August 5, 2013, Archie D. McPhee ("McPhee")

9   submitted what can loosely be described as written objections to the Report

10  ("McPhee Objection") as filed on August 26, 2013 (Docket No. 5418),

11  containing certain concerns related to the Report, but also containing extraneous

12  comments directed to the Watermaster and other parties.  McPhee is a land owner

13  of property located in Section 6, Township 9 South, Range 3 West, San

14  Bernardino Base and Meridian in the County of San Diego ("McPhee Property"),

15  adjacent to an unnamed intermittent tributary to the Santa Margarita River

16  ("SMR").  The McPhee Property is part of Parcel Nos. 96, 97 and 100 identified

17  in Interlocutory Judgment 39A, in which the Court retains continuing jurisdiction

18  with respect to surface waters, if any, found on the lands described in Exhibit "B"

19  of Interlocutory Judgment 39A.  McPhee is an elected member of the Board of

20  Directors of Fallbrook Public Utility District ("FPUD").

21      The Court ordered the Watermaster to file a response to the McPhee

22  Objection on or before October 25, 2013, and set a hearing on November 8, 2013

23  to address the objections to the Report.  (Docket No. 5424.)

24  / / /

25  / / /

26  / / /

27  / / /

28

## II.

## **BACKGROUND**

A.   The Watermaster Office

On January 25, 1951, the United States of America filed this instant action to seek a judicial determination of all respective water rights within the Santa Margarita River Watershed ("SMRW").   The Final Judgment and Decree was entered on May 8, 1963 (Docket No. 4489), and subsequently appealed to the U. S. Court of Appeals.   A Modified Final Judgment and Decree was entered on April 6, 1966 (Docket No. 4768).

On March 13, 1989, the Court issued the Watermaster Order (Docket No. 4809) appointing the Watermaster to administer and enforce the provisions of the Modified Final Judgment and Decree and subsequent orders of this Court.   The Watermaster Order describes the Watermaster's powers and duties as well as procedures for funding and operating the Watermaster's office.   Additionally, on March 13, 1989, the Court issued an order appointing a Steering Committee ("Steering Committee Order") (Docket No. 4805) that is currently comprised of representatives from the United States, represented by Camp Pendleton, Marine Corps Base, Eastern Municipal Water District, FPUD, Metropolitan Water District of Southern California, Pechanga Band of Luiseño Mission Indians, Rancho California Water District and Western Municipal Water District.   The purposes of the Steering Committee are to assist the Court, to facilitate litigation, and to assist the Watermaster.

As described above, the duties of the Watermaster are specified by Court Order.   One of the principal duties of the Watermaster is to prepare and submit to the Court the annual report that includes findings and conclusions regarding surface water and groundwater availability and use, imported and exported supplies, reservoir operations, water quality, threats to water supplies, water rights, and the annual budget for the Watermaster office.   An annual report has

3

1    been prepared and submitted by the Watermaster since Water Year 1988-89 to

2    present.    The Watermaster is also responsible for the administration of

3    agreements and memoranda of understanding between various parties related to

4    water operations in the SMRW.

5        The present Watermaster appointed by the Court (Docket No. 4902),

6    commencing on December 25, 2005, is Mr. Charles W. Binder, Principal

7    Engineer with Binder & Associates Consulting, Inc., with offices located in

8    Folsom, California. A copy of Mr. Binder's resume is attached hereto as Exhibit

9    "1." The Watermaster leases space from FPUD for offices for the Watermaster

10   and the Administrative Assistant to the Watermaster (See Exhibit "2").    In

11   addition to the Lease Agreement, the Watermaster and FPUD have entered into

12   an Employment Agreement for services to be provided by the Administrative

13   Assistant to the Watermaster and a Services Agreement for FPUD staff to

14   provide accounting and other services to the Watermaster (collectively the

15   "Agreements") (attached as Exhibits "3" and "4" respectively).    These

16   Agreements between the Watermaster and FPUD are consistent with the original

17   agreed upon requirements specified in the Watermaster Order.   The Steering

18   Committee has approved the current Agreements between the Watermaster and

19   FPUD along with the ongoing budget items for payment by the Watermaster

20   pursuant to the Agreements.

21       Section IV of the Watermaster Order states, "An audit will be conducted

22   annually by an independent auditor and copies of the report will be made

23   available to the parties and provided to the Court." (Docket No. 4809.) The

24   Watermaster is in compliance with this requirement. Each year an Independent

25   Auditor performs an audit and the Independent Auditor's Report setting forth the

26   financial condition of the Watermaster office is submitted to the Court and

27   provided to each Steering Committee member.    A copy of the Independent

28   Auditor' Report for Water Year 2011-12 is attached as Exhibit "5."

4

1    Additionally, a notice that the audit report is available at the Watermaster office

2    is served to the Watermaster Distribution List.

3         B.    Summary of Past Objections

4         The Watermaster has prepared an annual report beginning with Water Year

5    1988-89 with only four (4) previous objections being filed.    All previous

6    objections were limited to specific aspects of the annual report and all objections

7    were resolved under the direction of the Court.   Those four (4) objections are

8    summarized as follows:  (1) on September 9, 1992, the United States submitted

9    an objection (Docket No. 4824) to the Water Year 1990-91 report concerning

10   reporting of unauthorized diversions and after briefings and a hearing the Court

11   ordered (Docket No. 4831) the Watermaster to amend the report beginning in the

12   following Water Year 1991-92; (2) on August 9, 1994, the Cahuilla and

13   Pechanga bands submitted an objection (Docket No. 4842) to the Water Year

14   1992-93 report concerning reporting of water use on the two separate

15   reservations and without Court hearing the Watermaster and the parties reached

16   an agreement to modify language in future reports as confirmed by minute order

17   (Docket No. 4840); (3) on August 11, 1995, the Domenigoni Family submitted

18   an objection (Docket No. 4850) to the Water Year 1993-94 report regarding

19   characterization of project and groundwater conditions related to the West Dam

20   of Diamond Valley Lake at Domenigoni Valley, and upon request by the

21   Watermaster without Court hearing, the Court ordered (Docket No. 4861) the

22   Watermaster to modify the pertinent sections of the report beginning in the

23   following Water Year 1994-95; and (4) on August 29, 2002, the Domenigoni

24   Family submitted an objection (Docket No. 4870) to the Water Year 2000-01

25   report requesting clarification regarding potential groundwater impacts from

26   Diamond Valley Lake and mitigation for the Domenigoni Valley groundwater

27   basin and the Watermaster, and the parties, agreed to an amendment to the Water

28   Year 2000-01 report that was submitted by the Watermaster.

C.     McPhee Objection

On December 14, 2011, pursuant to McPhee's request, the Watermaster met with McPhee to discuss Watermaster operations and the role of the Watermaster in the SMRW as well as various SMRW projects and agreements. On January 13, 2012, the Watermaster had a follow-up telephone conversation with McPhee.   Additionally, on January 18, 2012, at McPhee's request, the Watermaster provided McPhee with twenty-one (21) documents, totaling over 1,200 pages (at no cost to McPhee), related to the establishment and protocols of the Watermaster office, and various Interlocutory Judgments and Orders related to this instant action and the SMRW (Attached as Exhibit "6".)

McPhee wrote three (3) letters to the Judge in relation to this instant action and the Watermaster's office.   The first two letters were rejected by the Court (Docket Nos. 5419 and 5420) due to untimely submission.   The McPhee Objection was timely and the comments and objections are addressed below.

On September 9, 2013, the FPUD Board of Directors passed and adopted Resolution No. 4799 "A Resolution of the Board of Directors of the Fallbrook Public Utility District Censuring and Sanctioning Director McPhee for Violations of the District's Ethics Policy and Comprehensive Code of Conduct."   (Attached as Exhibit "7".)

This Resolution states:

1.     The Board of Directors finds that the foregoing recitals are true and correct having reviewed and considered the evidence presented at its meeting of September 9, 2013, afforded an opportunity to Director McPhee to dispute and rebut such evidence, and therefore finds all of the following statements to be true.

2.     Director McPhee violated both the FPUD Administrative Code's Ethics Policy and Comprehensive Code of Conduct with regard to disclosure of confidential closed session board proceedings and

6

1   unauthorized communications with the Marine Corps, as described

2   above.

3   3.   In direct violation of District policies and without authorization from

4   the Board, Director McPhee authored three inaccurate and

5   inflammatory communications to the Commanding General of

6   Marine Corps Base Camp Pendleton, implying that his view and

7   contentions represented Fallbrook Public Utility District. These

8   communications jeopardize years of good faith negotiations to

9   resolve *United States of America v. Fallbrook Public Utility District,*

10  *et al.*, litigation to access the only available local water supplies for

11  FPUD customers.

## III.

## WATERMASTER RESPONSE
## TO CONCERNS BY ARCHIE D. MCPHEE

In an attempt to respond to the contents of the McPhee Objection (Docket No. 5418), Watermaster will address McPhee's concerns in numerical order as specified in his letter to the Court.

Concern No. 1:

Allegations of "Collaboration" by the Watermaster

The McPhee Objection suggests possible "collaboration" between the Watermaster, FPUD, and other members of the Steering Committee. The meaning of collaboration is unclear in McPhee's statement but infers there is some sort of inappropriate activity. This is certainly not the case as all interactions between the Watermaster and all members of the Steering Committee are conducted in accordance with the Court approved Watermaster and Steering Committee Orders. All business operations conducted between the Watermaster and FPUD comply with the Watermaster Order and agreements

7

1   approved by the Steering Committee.

2       The San Diego County Water Authority may attend Steering Committee

3   meetings if it so desires, but is not a member of the Steering Committee since it is

4   not a substantial user of water within the SMRW.

5       Concern No. 2:

6       Secretary of the Navy must approve any and all changes in the Santa

7   Margarita Conjunctive Use Project

8       The McPhee Objection incorrectly states the Department of the Navy is a

9   member of the Steering Committee.  The United States of America, represented

10  by Marine Corps Base, Camp Pendleton is a member of the Steering Committee.

11  The membership of the Steering Committee is composed of representatives from

12  the substantial water users within the SMRW in accordance with the Steering

13  Committee Order.  The San Diego County Water Authority and the United States

14  Geological Survey are not substantial users and are not members of the Steering

15  Committee.

16      The Santa Margarita River Conjunctive Use Project ("CUP") is a joint

17  project between FPUD and the United States of America, acting by and through

18  the Department of the Navy for the benefit of the Marine Corps Base, Camp

19  Pendleton ("CPEN").  McPhee's concern No. 2 includes several statements

20  related to the CUP.  Such comments are beyond the scope of the Watermaster

21  duties, but McPhee raises questions why certain allegations are being ignored by

22  the Watermaster.  It is the understanding of the Watermaster that at this time,

23  FPUD and CPEN are negotiating the final details of their agreement and the

24  agreement is under legal review.  The Watermaster is informed and believes the

25  above parties are acting in good faith and the parties will address all necessary

26  permitting and environmental requirements at appropriate stages of the project.

27  The Watermaster is informed and believes that there is no evidence that FPUD

28  and CPEN are proceeding with negotiating and planning the CUP without all

1  appropriate approvals, including necessary approvals by the Secretary of the

2  Navy.  The Steering Committee has been apprised as to the progress of the CUP

3  by representatives of FPUD and CPEN at previous Steering Committee meetings

4  and the members are aware of the progress.

5        Concern No. 3:

6        Waters of the United States and Conflict of Interest of Watermaster

7        The SMR is subject to the jurisdiction of this Court.  To the best of the

8  Watermaster's knowledge, all appropriate or necessary permits, including any

9  that may be required from the Army Corp of Engineers, will be obtained by the

10  appropriate parties.

11       The Watermaster is not now, nor has the Watermaster ever been, an

12  employee of FPUD.  The Watermaster is not now receiving, nor has the

13  Watermaster ever received, any salary or income from FPUD.  McPhee

14  repeatedly and incorrectly asserts the Watermaster is employed by FPUD.

15  McPhee has been provided the Watermaster Order, has received an explanation

16  of the Watermaster office operations and the Watermaster has made himself

17  available for further questions.

18       The McPhee Objection asserts the Watermaster has a conflict of interest

19  because the Watermaster is an employee of both FPUD and Judge Gonzalo P.

20  Curiel.  The Watermaster is not an employee of FPUD but rather appointed by

21  the Court, as a representative of the Court, to administer and enforce the

22  provisions of the Modified Final Judgment and Decree and all subsequent orders

23  of the Court. (See Binder Declaration attached as Exhibit "8".)   Clearly, no

24  conflict of interest exists.

25  / / /

26  / / /

27  / / /

28  / / /

WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED RESPONSE TO OBJECTION TO
ANNUAL WATERMASTER REPORT FOR WATER YEAR 2011-12 BY ARCHIE D. MCPHEE

1    Concern No. 4:

2    Camp Pendleton Marine Corps Commanding Officers and Staff are not

3    Members of the United States of America and not Subject to

4    Environmental Laws of the United States

5    This statement does not merit a response.

6    Concern No. 5:

7    Environmental Laws and Endangered Species

8    The Watermaster has identified and reported any threats to the SMRW

9    water supply that are within the jurisdiction of the Watermaster and in

10   compliance with the Watermaster Order the Report.

11   The Watermaster is confident and believes that all environmental laws and

12   endangered species issues will be addressed as projects move forward among the

13   lead agencies requiring environmental review.   McPhee does not seem to

14   understand that environmental issues, species, mitigation measures and

15   monitoring will be addressed by the appropriate agencies who implement

16   projects, not an independent Watermaster.

17   Concern No. 6:

18   Watermaster has not Identified Threats to Water Supplies

19   The Watermaster has identified and reported any threats to the SMRW

20   water supply that are within the jurisdiction of the Watermaster and in

21   compliance with the Watermaster Order.

22   Concern No. 7:

23   Department of the Navy and the SWRCB

24   McPhee suggests that the grouping of CPEN with the Secretary of the

25   Navy is incorrect and should be changed.

26   The suggested change will not be incorporated into the Report.   As

27   previously described, the CUP is a joint project between FPUD and the United

28   States of America acting by and through the Department of the Navy for the

10

benefit of CPEN.  Both CPEN and the United States Department of Justice have approved the current Report wording through review and comment on the draft report.

McPhee states that the abbreviation SWRCB has not been identified and challenges the use of the term "appropriated" as well as the physical description of the SMR.

These suggested changes will not be incorporated in the Report.  The SWRCB is an abbreviation that stands for State Water Resources Control Board, and is identified and short titled on Page One (1) of the Report.  Additionally, it is a commonly known and standard abbreviation in the water rights field.

McPhee objects to the use of the word "appropriated" that is in the title of SWRCB Order No. 91-07.  The Watermaster does not have the authority to change the title of an order of the State of California. Additionally, the use of the term confluence is also a quote from Order No. 91-07, which identifies the SMR as fully appropriated "from the confluence of the Santa Margarita River and the Pacific Ocean upstream."  The wording in the Report criticized by McPhee has been included in the Annual Watermaster Report since Water Year 1990-91.  The Watermaster will not change the Report because McPhee does not understand that the SMR stream system is a fully appropriated stream system pursuant to the State of California, SWRCB, Water Right Order No. 91-07, Exhibit A, Declaration of Fully Appropriated Stream Systems, August 22, 1991.

Concern No. 8:

Watermaster Funding and Fallbrook PUD, Unlawful Activity

The Watermaster office is funded by annual assessments to Steering Committee members as outlined in the Watermaster Order.  There are a total of seven (7) Steering Committee members.  The Watermaster office receives four (4) quarterly Steering Committee assessments from each Steering Committee

11

WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED RESPONSE TO OBJECTION TO
ANNUAL WATERMASTER REPORT FOR WATER YEAR 2011-12 BY ARCHIE D. MCPHEE

member during each water year (October 1 through September 30).[1]   Annual assessments are determined by dividing the approved budget by seven (7).   For example, for Water Year 2012-13, the budget was $649,600 with Steering Committee members paying four (4) quarterly assessments of $23,200, totaling $92,800, as approved by the Court in the Annual Watermaster Report for Water Year 2010-11.   For Water Year 2013-14, the budget is $658,840, as approved by the Court upon acceptance of this Report.   The resultant Steering Committee annual assessments for Water Year 2013-14 are $94,120, divided into four (4) quarterly payments of $23,530.

McPhee's concern contains confusing and incorrect descriptions of FPUD's quarterly Steering Committee assessment payments which are based on FPUD's fiscal year (July 1 – June 30) instead of the Watermaster fiscal or water year (October 1 – September 30).   For example, the August 27, 2012, $21,645 payment described is a fourth quarter payment for the Water Year 2011-12 approved budget of $606,060, not a first quarter payment as identified; and the December 31, 2012, $23,200 payment described is a first quarter payment for the Water Year 2012-13 approved budget of $649,600, not a second quarter payment as identified.   McPhee's request for total payments made to the Watermaster office for the period of July 1, 2012 to June 30, 2013, would result in an amount that is not reflected in the Watermaster budget as the Court ordered water year and adopted fiscal year is October 1 to September 30.   Clearly, the Watermaster water year differs from the FPUD fiscal year, therefore FPUD's accounting budget will obviously not reflect the same amount as the Watermaster budget.

FPUD does not directly pay the Watermaster for any task and the Watermaster is not an employee of FPUD.   The Watermaster does not receive payment from any Steering Committee member, including FPUD, except for

---

[1] The United States of America, represented by Marine Corps Base, Camp Pendleton, pays its Steering Committee assessment in one (1) annual payment through established U.S. Government vendor payment procedures.

1    Steering Committee assessment payments made pursuant to Court order for the

2    operation of the Watermaster office pursuant to the Court approved budget.

3         McPhee's concern contains several comments regarding the FPUD budget.

4    The Watermaster cannot address concerns related to FPUD's budget except to

5    note that the $94,300 identified for 2013-14 allocated to the Watermaster

6    corresponds to the original expected Water Year 2013-14 Steering Committee

7    annual assessment, subsequently reduced to and approved at $94,120.  McPhee is

8    a member of the FPUD Board of Directors and certainly has access to budget

9    information as a Board member.

10        The concern states that Mr. Binder's annual income is between $637,315

11   and $728,360. First, as explained below, McPhee's calculations are based upon

12   quarterly assessments paid by FPUD based on the FPUD fiscal year and not on

13   the Watermaster fiscal year.  McPhee incorrectly associates the total budget for

14   the Watermaster Office as the income for Mr. Binder.  This is absolutely false as

15   clearly identified in the annual budget line item for the Watermaster Office

16   presented on Page 105 of the Report.  As shown on Page 105, the total Water

17   Year 2013-14 budget for the Watermaster Office, including payments to the U.S.

18   Geological Survey for gaging station operations and groundwater monitoring, is

19   $658,840.    The line item for consulting services performed by Binder &

20   Associates Consulting, Inc., is $219,000, in which a portion of such fees may

21   reflect actual personal income for Mr. Binder.  The Water Year 2013-14 budget

22   for the Watermaster Office was approved by the Steering Committee and will be

23   approved by the Court upon acceptance of the Report.

24        McPhee's concern conjectures that the Watermaster is taking money from

25   FPUD management officials in the form of bribery.  There is absolutely no basis

26   for this assertion. The FPUD assessments paid to the Watermaster are billed and

27   paid in accordance with the Court approved Watermaster Order and Steering

28   Committee Order.  The Watermaster submits an annual budget to the Steering

13

WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED RESPONSE TO OBJECTION TO
ANNUAL WATERMASTER REPORT FOR WATER YEAR 2011-12 BY ARCHIE D. MCPHEE

1    Committee prior to the beginning of the Water Year and a certified, independent

2    audit report setting forth the financial condition of the Watermaster office is

3    submitted to the Court, provided to each Steering Committee member and

4    noticed to the to the Watermaster Distribution List.  (See Exhibit "5".)

5          Concern No. 9:

6          Santa Margarita River Conjunctive Use Project

7          The CUP is a joint project between FPUD and the United States of

8    America, acting by and through the Department of the Navy for the benefit of

9    CPEN.  Funding is provided by both entities.  Any budget items or questions by

10   McPhee as to FPUD spending should be directed to FPUD management.

11         Concern No. 10:

12         FPUD has no Water Rights on Santa Margarita River

13         McPhee's concern states, "The Fallbrook PUD has no water rights on the

14   Santa Margarita River and neither has the U.S. Marine Corps."  FPUD and the

15   United States have various riparian, non-statutory appropriative, and appropriate

16   water rights on the SMR and tributaries as identified in Interlocutory Judgment

17   No. 23 (Docket No. 4236), Interlocutory Judgment No. 24 (Docket No. 4262),

18   Interlocutory Judgment No. 24A (Docket No. 4486), Interlocutory Judgment No.

19   37 (Docket No. 4394), Interlocutory Judgment No. 39 (Docket No. 4439), and

20   Interlocutory Judgment No. 39A (Docket No. 4431), and any subsequent

21   amendments thereto, and also identified in permits and licenses issued by the

22   SWRCB.

23         These water rights were explained to McPhee during a meeting with the

24   Watermaster on December 14, 2011.  Copies of these interlocutory judgments

25   were provided to McPhee on January 18, 2012.  (See Exhibit "6".)

26         Table 6.1 of the Report was explained to McPhee during the December 14,

27   2011 meeting, as showing only the appropriative water rights for the SMRW,

28   including the appropriative rights for FPUD and the United States pursuant to the

14

permits and licenses issued by the SWRCB.

Table 6.1 shows one (1) water right owned by FPUD (A012178) for diversion from Tucalota Creek, which was previously approved as a change in point of diversion from the original point of diversion on the SMR.  Table 6.1 shows one (1) water right for the Department of the Navy (A021471A) for diversion from the SMR for use on CPEN.  Three (3) other water rights are shown on Table 6.1 as owned by the U.S. Bureau of Reclamation (A011587, A012179, and A021471B) for diversion from the SMR.  These three (3) water rights were assigned to the U.S. Bureau of Reclamation by FPUD and the Department of the Navy in 1974 for purposes of developing the Santa Margarita River Project for the benefit of FPUD and CPEN.  As stated on Page 49 of the Report, these three (3) water rights are currently subject to petitions for time extensions for completion of beneficial use and change petitions to conform to the CUP being developed jointly by the U.S Bureau of Reclamation, Department of the Navy, CPEN, and FPUD.

Concern No. 11:

Federal Employers are taking Kickbacks

The Watermaster is not aware of any federal employees that are committing crimes or taking kickbacks in connection with operations or projects involving entities or parties associated with the SMRW.

Concern No. 12:

Watermaster Reimbursements to FPUD for Services Provided

McPhee's concern relates to a FPUD budget document that identifies two (2) FPUD line items showing reimbursements by the Watermaster for services provided by FPUD in accordance with the Agreements between the Watermaster and FPUD.  (See Exhibits "3" and "4".)  The first line item "Watermaster Support - Job #603 – "Reimbursement Support for the Watermaster," is for reimbursement for the Administrative Assistant to Watermaster.  The second

15

line item "Watermaster Finance Support - Job #600- "Reimbursable Finance Support for the Watermaster," refers to services provided by FPUD to the Watermaster for accounting and other services. FPUD submits monthly invoices to the Watermaster for services provided to the Watermaster and for the lease payment for rented office space. The Agreements were approved by the Steering Committee and reviewed by the Independent Auditor.

Concern No. 13:

FPUD Budget

McPhee's concern relates to the FPUD budget and any such questions should be directed to FPUD management.

Concern No. 14:

Postal Delivery

This statement does not merit a response.

**IV.**

**CONCLUSION**

The Watermaster has addressed the concerns of McPhee and has spent considerable time and expense to respond to the comments contained in the McPhee Objection (Docket No. 5418) submitted to the Court by McPhee.

If the Court desires further clarification, the Watermaster will do so.

Dated: October 22, 2013

**BRUNICK, McELHANEY & KENNERDY, PLC**

By: _____
WILLIAM BRUNICK, Attorney for
WATERMASTER SANTA
MARGARITA RIVER WATERSHED

WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED RESPONSE TO OBJECTION TO
ANNUAL WATERMASTER REPORT FOR WATER YEAR 2011-12 BY ARCHIE D. MCPHEE

# EXHIBIT "1"

**EXHIBIT "1"**

# CHARLES W. BINDER, PE
## BINDER & ASSOCIATES CONSULTING, INC.

101 Parkshore Drive, Suite 100, Folsom, CA  95630
(916) 932-2335   ●   (916) 932-2336 (fax)   ●   cwbinder@binder-associates.com

## Education

- **Master of Business Administration,** University of California, Davis, 2003
  Graduate School of Management
      Concentration:  Finance and Accounting

- **Master of Science,** Colorado State University, Fort Collins, 1981
  Department of Civil Engineering
      Concentration:  Water Resources and Groundwater

- **Bachelor of Science,** Colorado State University, Fort Collins, 1978
  Department of Agricultural Engineering
      Concentration:  Irrigation

## Professional Engineering Registrations

- Arizona:  1996 (30319)
- California:  1987 (CE-43480)
- Colorado:  1983 (PE-20809)
- Nevada:  2000 (CE-014265)

## Employment History

| | |
|---|---|
| President and Principal Engineer, Binder & Associates Consulting, Inc., Folsom, CA | 2004 - present |
| Principal Engineer, Science Applications International Corporation, Sacramento, CA | 2001 - 2004 |
| Director, Bookman-Edmonston Engineering, Sacramento, CA | 1993 - 2001 |
| Senior Engineer, Todd Engineers, Berkeley, CA | 1989 - 1993 |
| Senior Engineer and Part Owner, Spronk Water Engineers, Denver, CO | 1985 - 1989 |
| Senior Engineer, Simons, Li & Associates, Salt Lake City, UT | 1983 - 1985 |
| Project Engineer, Ted Zorich & Associates, Denver, CO | 1980 - 1983 |

## Career Highlights

- Registered professional engineer with over 30 years consulting experience throughout western United States in water resources, engineering, environmental compliance, and water rights.

- Appointed Watermaster of the Santa Margarita River Watershed in the case United States of America v. Fallbrook Public Utility District, et al., United States District Court for the Southern District of California, Civil No. 51-cv-1247-GPC-RBB, to administer and enforce the provisions of the Modified Final Judgment and Decree and subsequent instructions and orders of the Court.

- Provided expert testimony and other litigation support services in cases involving water rights, flood control, land use, and land condemnation throughout the western United States.  Cases included court and administrative proceedings before the U.S. Supreme Court, federal district courts, state courts, and various state agencies.

- Past projects were related to groundwater and surface water planning and management, groundwater and surface water hydrology, irrigation, water rights, river basin management, groundwater and soil contamination and remediation, design and construction of water supply facilities, flood control, hydraulics, storm drainage, erosion, and reservoir operation.

## Selected Project Experience

Appointed Watermaster of the Santa Margarita River Watershed in the case United States of America v. Fallbrook Public Utility District, et al., United States District Court for the Southern District of California, Civil No. 51-cv-1247-GPC-RBB, to administer and enforce the provisions of the Modified Final Judgment and Decree and subsequent instructions and orders of the Court.  Court ordered duties include preparation of annual Watermaster report on diversions of native and imported water, surface water flows, groundwater levels, reservoir operations, water quality, and water rights; tabulation of uses and water rights for all substantial users in watershed; investigation of unauthorized water uses and appropriations in watershed; administration of Lake Skinner and Diamond Valley Lake agreements for reservoirs owned and  operated by Metropolitan Water District of Southern California; administration of Cooperative Water Resource Management Agreement between United States and Rancho California Water District; and reporting to Steering Committee appointed by the Court for ongoing litigation in the case.

Provided expert testimony and other litigation support services on behalf of Truckee-Carson Irrigation District for variety of water rights issues on the Truckee and Carson Rivers, Nevada.  Issues related to alleged over-diversions of Truckee River supplies for delivery to the Newlands Project, temporary transfers of water rights, change in use of water rights, operations of upper Truckee River reservoirs, and impacts of proposed Truckee River Operating Agreement.

Provided water resources planning and hydrological analyses services for developing water supplies in Gila River Basin in southwestern New Mexico and southeastern Arizona.  Analyses included identifying and evaluating possible water supply and exchange alternatives as well as modeling water operations scenarios.  Issues include reservoir operations, satisfying existing water rights, quantity and quality of water supplies, reliability, exchange mechanisms, Central Arizona Project operations, groundwater supplies, interstate issues, legal and institutional considerations, and environmental issues.

Served as Principal-in-Charge for hydrologic analyses and risk assessment for projecting energy generation and gross revenues for Lahontan New Power Plant, Truckee-Carson Irrigation District, Newlands Project, Nevada.  Analyses included development of spreadsheet model to simulate water operations using historical hydrological conditions to project monthly releases and water surface elevations for Lahontan Reservoir.  The simulated water operations were then converted to energy generation and gross revenues based on the standard power equation and estimated overall efficiencies.  Sensitivity and scenario analyses were conducted in conjunction with statistical analyses to assess risks for purposes of potential acquisition of the generation asset.  An analysis was also conducted to determine gross revenues required to fully fund the purchase of the New Plant under various scenarios and financing assumptions.

Provided expert testimony and other litigation support services on behalf of Nevada Waterfowl Association and Nevada Department of Wildlife for acquisition and change in place of use of water rights for water supplies for Carson Lake and Pasture wetlands.

Conducted hydrogeological and water rights investigations on behalf of Hopland Public Utility District concerning groundwater classification issues for the Russian River, California.  Issues include percolating groundwater versus subterranean stream flow, surface water and groundwater interaction, and water rights enforcement and administration by the State Water Resources Control Board.

Provided litigation support services on behalf of four oil companies in Santa Maria Groundwater Basin Adjudication, California.  Issues related to determination of groundwater overdraft conditions and delineation of water rights for overlying landowners and water purveyors.  Analyses included evaluation of hydrogeologic information, determination of groundwater basin boundaries, quantification of land use and historical water use practices, preparation of hydrologic inventories, and formulation of elements of groundwater management plan.

Conducted hydrogeologic analyses and operations studies for a prefeasibility evaluation of a conjunctive use and banking project in San Bernardino County, California. Analyses included an evaluation of recoverable groundwater to maintain safe yield of local groundwater, operations studies to evaluate recharge, storage, and extraction potential for various water supply and demand scenarios, review of modeling to evaluate horizontal migration of groundwater beyond capture zones, and preliminary sizing of recharge and extraction facilities. Evaluations also included identification of legal and institutional considerations as well as environmental compliance and other considerations for implementation.

Provided expert testimony and other litigation support services on behalf of North Kern Water Storage District in California Superior Court for Kern River water rights litigation. Principal issues concerned the historical use of surface water supplies in accordance with the Miller-Haggin Agreement, Shaw Decree and other agreements governing the use and allocation of water rights on the Kern River; the loss of water rights through forfeiture, prescription, and abandonment; evaluation of historical groundwater conditions; and estimated effects on groundwater conditions and water supplies for various scenarios. Analyses included evaluation of historical streamflow and diversion records, analysis of water supplies for the North Kern Water Storage District 1950 Project, and development of water balance models. Developed process for identifying and evaluating possible water supply sources and delivery options for a water development project in eastern Arizona. Process included a pre-screening evaluation to identify fatal flaws. The formal screening process involved Level 1 screening to sort and rank possible sources based on several attributes related to quantity and quality of water, adequacy, reliability, delivery mechanisms, legal and institutional considerations, environmental compliance, socioeconomic aspects, capital and operating costs, and implementation time. Level 2 screening included prefeasibility evaluations of the most favorable alternatives. Alternatives evaluated included water supplies developed from the Central Arizona Project, local surface water rights, groundwater resources, wastewater reclamation, and interstate supplies.

Prepared the Delta Water Transfer Handbook--Guidelines for Temporary and Long-Term Transfers Through the Delta. The Handbook outlines the procedures necessary to successfully implement water transfers through the Sacramento-San Joaquin Delta in California. Three main topics are included in the Handbook: (1) explanation of the issues pertinent to transfers through the Delta, (2) identification of guidelines and procedures for formulating a transfer petition, and (3) description of procedures to facilitate approval by the State Water Resources Control Board and other legally responsible entities.

Managed study to evaluate water management alternatives for securing one million acre-feet of water in the Snake River Basin, Idaho and Oregon, to assist in recovering threatened and endangered salmon species. Alternatives included changed operation of reservoirs, improved irrigation practices, conjunctive use of groundwater and surface water supplies, water marketing, and land fallowing. The alternatives were evaluated using the Idaho Department of Water Resources Upper Snake River Planning Model and Snake Plain Aquifer Model. Spreadsheet models were developed to analyze reservoir operations for Owyhee Reservoir and the Boise River system. The study included economic input/output modeling to evaluate regional direct and indirect impacts in terms of jobs and dollars associated with retiring 450,000 to 600,000 acres of irrigated lands. Economic impacts on hydroelectric power generation due to changed timing of streamflow and increased streamflow were also evaluated.

Provided expert testimony on behalf of the United States in the Kansas v. Colorado--Arkansas River Compact litigation regarding water budget analyses, river basin modeling, streamflow, irrigation, evapotranspiration, and reservoir operation for 500,000-acre basin upstream of Colorado-Kansas state line. Principal issues concerned differences in state line flows comparing historical winter irrigation practices with changed operations which include storage of winter streamflows for subsequent summer irrigation. Analyses included review and evaluation of historical irrigation diversion records and river streamflow records, estimation of winter soil evaporation, and error analysis of the river basin model.

# EXHIBIT "2"

EXHIBIT "2"

## LEASE/AGREEMENT

This lease/agreement is made and entered into this _30th_ day of _November_, 2011, by and between the FALLBROOK PUBLIC UTILITY DISTRICT (hereinafter "LANDLORD") and the SANTA MARGARITA RIVER WATERSHED WATERMASTER (hereinafter "TENANT").

The LANDLORD hereby leases to TENANT that real property located at 990 East Mission Road, Fallbrook, California 92028 and described as:

> An air-conditioned, heated and carpeted space known as Room Nos. 110, 112, 113, and 114 (approximately 1,000 square feet) located at the southeast corner of the Fallbrook Public Utility District office building

TENANT shall pay to the LANDLORD the sum of $1,500 payable in advance on the first day of each month.  Rent shall be payable without notice or demand without any deduction in lawful money of the United States to the LANDLORD at 990 East Mission Road, Fallbrook, California 92028 or mailed to the LANDLORD at P.O. Box 2290, Fallbrook, California 92088.  Any future increases in rent shall be determined by mutual agreement.

LANDLORD shall pay all taxes and general assessments against trade fixtures, furnishings, equipment and other personal property owned by TENANT.

LANDLORD shall provide water, light, power, security, use of LANDLORD's internet connection, and janitorial services to the premises, as well as allow access to restrooms and parking facilities.

TENANT shall not make any permanent alterations, improvements, or additions in or about the premises without LANDLORD'S written approval.

TENANT shall indemnify and hold LANDLORD harmless from and against any and all claims arising from TENANT'S occupancy of the premises or from the conduct of its business or from any activity, work, or things which may be permitted or suffered by TENANT in or about the premises including all damages, costs, attorney's fees, expenses and liabilities incurred in the defense of any claim or action or proceeding arising therefrom.  TENANT shall not voluntarily by or by operation of law transfer, assign, subject, mortgage or otherwise transfer or encumber all or any part of TENANT'S interest in the lease/agreement without LANDLORD'S prior written consent which consent shall not be unreasonably withheld.

LANDLORD shall indemnify and hold TENANT harmless from and against any and all claims arising from LANDLORD'S ownership of the premises or occupancy and use of adjacent

1

premises or from the conduct of its business or from any activity, work, or things which may be permitted or suffered by LANDLORD in or about the premises including all damages, costs, attorney's fees, expenses and liabilities incurred in the defense of any claim or action or proceeding arising therefrom.

TENANT agrees to supply LANDLORD with proof of TENANT'S liability insurance in an amount satisfactory to the District and a certificate naming the LANDLORD as additional insured under such coverage.

It is agreed between the parties hereto that if any rent shall be due hereinafter and unpaid, or if TENANT shall default and breach any other covenant of the lease, then the LANDLORD, after giving the proper notice required by law, may re-enter the premises and remove any property and any and all persons therefrom in the manner allowed by law.  The LANDLORD may, at its option, either maintain this lease in full force and effect and recover the rent and other charges as they become due or, in the alternative, terminate this lease/agreement.  In addition, the LANDLORD may recover all rentals and any other damages and pursue any other rights and remedies which the LANDLORD may have against the TENANT by reason of such default as provided by law.

Either Party may terminate this lease/agreement with a six (6) month written notice unless shorter notice is agreed to by both parties.

Whenever under this lease/agreement a provision is made for any demand, notice or declaration of any kind, it shall be in writing and served either personally or sent by registered United States mail, postage prepaid, addressed at the address as set forth below:

TO LANDLORD:        FALLBROOK PUBLIC UTILITY DISTRICT
                    P.O. BOX 2290
                    FALLBROOK, CA 92088-2290

TO TENANT:          SANTA MARGARITA RIVER WATERSHED WATERMASTER
                    P.O. BOX 631
                    FALLBROOK, CA 92088-0631

The parties hereto have executed this lease/agreement on the date first above written.


LANDLORD:                                   TENANT:


By: _____                By: _____
    Brian J. Brady                             Charles W. Binder
    General Manager                            Watermaster


2

# EXHIBIT "3"

**EXHIBIT "3"**

# EMPLOYMENT AGREEMENT

This Employment Agreement is made this 21st day of November, 2011, by and between FALLBROOK PUBLIC UTILITY DISTRICT (hereinafter referred to as "EMPLOYER"), Alisa E. Monian (hereinafter referred to as "EMPLOYEE"), and Watermaster of the Santa Margarita River Watershed (hereinafter referred to as "WATERMASTER").

## RECITALS

1.     EMPLOYEE shall serve as the Administrative Assistant to the WATERMASTER, who is not a District EMPLOYEE.

2.     The WATERMASTER budget is funded by each representative on the Steering Committee presently comprised of United States [Camp Pendleton], Eastern MWD, Western MWD, Fallbrook PUD, Metropolitan WD, Rancho California WD and the Pechanga Tribe and such budget includes the position of the EMPLOYEE.

3.     The WATERMASTER reimburses EMPLOYER on a monthly basis for all expenses (salary, benefits, etc.) EMPLOYER makes on behalf of the EMPLOYEE at the direction of the WATERMASTER.

4.     EMPLOYEE shall be an employee of EMPLOYER, pursuant to the terms and conditions of this Agreement.

5.     EMPLOYEE's position solely supports the WATERMASTER.  If the Federal Court determines that a Watermaster is no longer needed, or if EMPLOYER does not continue to be a member of the Steering Committee, this Administrative Assistant position will cease to exist and this Agreement will be terminated.

## AGREEMENT

6.     <u>EMPLOYMENT</u>:  EMPLOYER hereby employs EMPLOYEE and EMPLOYEE hereby accepts employment with EMPLOYER commencing on November 21, 2011.

7.     <u>EMPLOYEE'S DUTIES</u>:  EMPLOYEE is hereby hired and employed by EMPLOYER as an Administrative Assistant to the WATERMASTER.  The job description for this position is attached hereto as Exhibit "A" and incorporated herein by reference.  The parties agree that this job description is part of EMPLOYER's Personnel Regulations.

8.     <u>EMPLOYMENT CATEGORY</u>:  EMPLOYEE is hired as a Regular Employee.

9.     <u>TERMS AND CONDITIONS OF EMPLOYMENT</u>: The terms and conditions of employment are as set forth in EMPLOYER's Personnel Regulations, as revised effective April 25, 2011 ("Personnel Regulations"), except as modified in this Agreement.

10.     <u>REPRESENTATION</u>:  Because EMPLOYEE works solely for the WATERMASTER, and because EMPLOYEE's salary and benefits are paid for by the WATERMASTER through reimbursement to EMPLOYER, EMPLOYEE is not within any

bargaining unit of the Fallbrook Public Utility District Employees' Association ("FPUDEA") and is not subject to any of the provisions of the Memorandum of Understanding between EMPLOYER and FPUDEA. EMPLOYEE does not pay FPUDEA dues. EMPLOYEE will contribute to the recreational fund of FPUD which is currently $4.00 per payday to cover the costs of employee functions such as the holiday dinner, gifts for co-workers and items of condolence.

11.   <u>COMPENSATION OF EMPLOYEE</u>:  As compensation for services rendered under this Agreement, EMPLOYEE shall receive the salary established for her job classification in EMPLOYER's Personnel Regulations, as such may be modified from time to time by EMPLOYER.

12.   <u>BONUS</u>:  EMPLOYEE shall be entitled to receive an annual bonus, based on performance as part of the EMPLOYEE's annual performance appraisal, as determined in the sole discretion of the WATERMASTER, but not to be greater than 5% per year.

13.   <u>EMPLOYEE BENEFITS</u>:   EMPLOYEE's benefits are established by EMPLOYER's Personnel Regulations.  EMPLOYEE will be provided those same benefits as established by EMPLOYER for Regular Employees.  However, the following provisions of the Personnel Regulations (as may be modified from time to time) do <u>not</u> apply:

A.   <u>REDUCTION IN FORCE</u>:  Section 11.7 of EMPLOYER's Personnel Regulations shall not be applicable to this Agreement and, in the event of a layoff or reduction in force by EMPLOYER, EMPLOYEE shall have no priority as set forth in EMPLOYER's Personnel Regulations.

B.   <u>GRIEVANCE PROCEDURES</u>: Section 11.8 of EMPLOYER's Personnel Regulations shall not be applicable to this Agreement and procedures for grievances, if any, shall be established solely by the WATERMASTER.

C.   <u>DISCIPLINE</u>:  Section 11.9 of EMPLOYER's Personnel Regulations shall not apply and procedures for discipline, if any, shall be established solely by the WATERMASTER.

D.   <u>COLLECTIVE BARGAINING</u>:   Section 11.11 of EMPLOYER's Personnel Regulations shall not apply and EMPLOYEE agrees to waive any right to belong to and/or be represented by any employee association.

E.   <u>HOURS OF WORK</u>:   Section 11.12 of EMPLOYER's Personnel Regulations shall not apply and the hours of work shall be established solely by the WATERMASTER.

F.   <u>USE OF EMPLOYER VEHICLES</u>:  Section 11.27 shall not apply and EMPLOYEE's benefits as related to these provisions, if any, will only be as established by the WATERMASTER.

G.   TUITION REIMBURSEMENT:   Section 11.28 shall not apply and EMPLOYEE's benefits as related to these provisions, if any, will only be as established by the WATERMASTER.

14.   USE AND DISCLOSURE OF CONFIDENTIAL DATA:   In the course of EMPLOYEE's duties, EMPLOYEE may obtain information that is confidential.  In particular, in the course of the duties of the WATERMASTER as an officer of the Federal District Court, EMPLOYEE shall not use any confidential information or circulate it to any other person or persons except when specifically authorized in advance by the WATERMASTER.

15.   TERMINATION OF EMPLOYMENT:   This Agreement may be terminated by EMPLOYER upon written request of the WATERMASTER to EMPLOYER to give EMPLOYEE ten (10) days written notice of termination.  Termination pursuant to this section shall not prejudice any remedy that EMPLOYER or the WATERMASTER may have either at law, in equity, or under this Agreement.  EMPLOYEE is entitled to no payments or other benefits on termination except as required by law for accrued vacation and/or compensatory time.  The WATERMASTER has chosen to also pay, upon termination, 50% of accrued sick leave up to a maximum of 600 hours.

16.   ENTIRE AGREEMENT:   Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, other than those set forth herein have been made by any party, or anyone acting on behalf of any party, and that no other agreement, statement, or promise not contained in this Agreement shall be valid or binding.

17.   PARTIAL INVALIDITY:   If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or enforceable, the remaining provisions shall nevertheless continue in full force and effect without being impaired or invalidated in any way.

EMPLOYER:

EMPLOYEE:

_____
FALLBROOK PUBLIC UTILITY DISTRICT
By:  Brian J. Brady, General Manager

_____
Alisa E. Monian

WATERMASTER OF SANTA MARGARITA
RIVER WATERSHED

_____
Charles W. Binder

# EXHIBIT "4"

EXHIBIT "4"

## AGREEMENT FOR SERVICES

Agreement dated this 1st day of July, 2012, by and between the FALLBROOK PUBLIC UTILITY DISTRICT, hereinafter referred to as "District" and the WATERMASTER of the SANTA MARGARITA RIVER WATERSHED, hereinafter referred to as "Watermaster".

WHEREAS, the Watermaster requires accounting support services,

WHEREAS, the Watermaster requires human resources services,

WHEREAS, the Watermaster requires GIS and CAD technician support services, and

WHEREAS, the Watermaster requires clerical support.

IT IS THEREFORE AGREED:

1.      ACCOUNTING SUPPORT SERVICES:      District shall provide accounting support services to the Watermaster based on actual staff time expended in providing such services.  Staff assignments for providing such services shall be agreed upon by the District Administrative Services Manager/Treasurer and the Watermaster.  Hourly rates for providing such services shall be determined on an annual basis to include wages and fringe benefits for the District personnel.  The District hourly rates for providing support services to the Watermaster are shown in Exhibit A.  The District shall provide an updated Exhibit A for approval by the Watermaster by June 1st of each year to be effective for the subsequent District fiscal year of July 1st through June 30th.  The accounting support services provided by the District shall include the following:

   a)   Banking functions including maintenance of checking and money market accounts.

   b)   Investment management of excess funds in conjunction with Watermaster.

   c)   Maintaining accounting records and providing monthly financial statements to the Watermaster.

   d)   Maintaining a payables system and making payments when directed by Watermaster.

   e)   Providing support to the Watermaster for the annual independent audit of the Watermaster accounting records and financial statements.

2.      HUMAN RESOURCES SERVICES:      District shall provide human resources services to the Watermaster based on actual staff time expended by the District Human Resources Administrator.  Hourly rates for providing such services shall be determined on an annual basis to include wages and fringe benefits for the District personnel.  The District hourly rates for providing support services to the Watermaster are shown in Exhibit A.  The

1

District shall provide an updated Exhibit A for approval by the Watermaster by June 1st of each year to be effective for the subsequent District fiscal year of July 1st through June 30th.

3.   GIS and CAD TECHNICIAN SUPPORT SERVICES:  District shall provide GIS and CAD technician support services to the Watermaster based on actual staff time expended in providing such services.  Such services shall be provided by District on a project-by-project basis as agreed upon by the District Engineering & Planning Manager as District staff is available.  Staff assignments for providing such services shall be agreed upon by the District Engineering & Planning Manager and the Watermaster.  Hourly rates for providing such services shall be determined on an annual basis to include wages and fringe benefits for the District personnel.  The District hourly rates for providing support services to the Watermaster are shown in Exhibit A.  The District shall provide an updated Exhibit A for approval by the Watermaster by June 1st of each year to be effective for the subsequent District fiscal year of July 1st through June 30th.

4.   EMPLOYMENT OF CLERICAL SUPPORT:  District shall provide clerical support pursuant to the current employment agreements dated November 7, 2011 (Exhibit B) and November 21, 2011 (Exhibit C), and any subsequent employment agreements.  The Watermaster shall reimburse District for wages and fringe benefits.

5.   ENTIRE AGREEMENT:  This agreement supersedes any and all other agreements, either oral or in writing, between the parties with respect to the services provided by the District to the Watermaster.  Each party to this agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, other than those set forth herein have been made by any party, or anyone acting on behalf of any party, and that no other agreement, statement, or promise not contained in this agreement shall be valid or binding.

6.   TERMINATION OF AGREEMENT:  Either party may terminate this agreement with a six (6) month written notice unless shorter notice is agreed to by both parties.

7.   PARTIAL INVALIDITY:  If any provision of this agreement is held by a court of competent jurisdiction to be invalid, void or enforceable, the remaining provisions shall nevertheless continue in full force and effect without being impaired or invalidated in any way.

DISTRICT:                                          WATERMASTER:


_____   _____
FALLBROOK PUBLIC UTILITY DISTRICT   CHARLES W. BINDER

2

**EXHIBIT A**

The following hourly rates shall apply for the FALLBROOK PUBLIC UTILITY DISTRICT, hereinafter referred to as "District" to provide support services to the WATERMASTER of the SANTA MARGARITA RIVER WATERSHED, hereinafter referred to as "Watermaster" in accordance with the Agreement for Services by and between the District and the Watermaster.   Hourly rates for providing such services shall be determined on an annual basis to include wages and fringe benefits for the District personnel.  Said services shall include accounting support services, human resources services, and GIS and CAD technician support services.  The District shall provide an updated Exhibit A for approval by the Watermaster by June 1st of each year to be effective for the subsequent District fiscal year of July 1st through June 30th.

| District Personnel Title | Hourly Rate |
|---|---|
| Accountant | $82.66/hr |
| Accounting/Customer Service Assistant II | $53.02/hr |
| Administrative Services Manager/Treasurer | $153.37/hr |
| Engineering & Planning Manager | $144.84/hr |
| Engineering Technician II (CAD) | $66.20/hr |
| GIS Specialist | $74.91/hr |
| Human Resources Administrator | $118.06/hr |
| Information Systems Technician | $74.90/hr |

The above hourly rates shall be effective through June 30, 2013.

5/17/2012

EXHIBIT B

## EMPLOYMENT AGREEMENT

This Employment Agreement is made this _7_ day of _November_ 2011, by and between FALLBROOK PUBLIC UTILITY DISTRICT (hereinafter referred to as "EMPLOYER"), Ruth B. Beglin (hereinafter referred to as "EMPLOYEE"), and Watermaster of the Santa Margarita River Watershed (hereinafter referred to as "WATERMASTER").

### RECITALS

1.      EMPLOYEE shall serve as the Administrative Assistant to the WATERMASTER, who is not a District EMPLOYEE.

2.      The WATERMASTER budget is funded by each representative on the Steering Committee presently comprised of United States [Camp Pendleton], Eastern MWD, Western MWD, Fallbrook PUD, Metropolitan WD, Rancho California WD and the Pechanga Tribe and such budget includes the position of the EMPLOYEE.

3.      The WATERMASTER reimburses EMPLOYER on a monthly basis for all expenses (salary, benefits, etc.) EMPLOYER makes on behalf of the EMPLOYEE at the direction of the WATERMASTER.

4.      EMPLOYEE shall be an employee of EMPLOYER, pursuant to the terms and conditions of this Agreement.

5.      EMPLOYEE's position solely supports the WATERMASTER.  If the Federal Court determines that a Watermaster is no longer needed, or if EMPLOYER does not continue to be a member of the Steering Committee, this Administrative Assistant position will cease to exist and this Agreement will be terminated.

### AGREEMENT

6.      EMPLOYMENT: EMPLOYER hereby employs EMPLOYEE and EMPLOYEE hereby accepts employment with EMPLOYER commencing on _11/7/11_ .

7.      EMPLOYEE'S DUTIES:   EMPLOYEE is hereby hired and employed by EMPLOYER as an Administrative Assistant to the WATERMASTER.  The job description for this position is attached hereto as Exhibit "A" and incorporated herein by reference.  The parties agree that this job description is part of EMPLOYER's Personnel Regulations.

8.      EMPLOYMENT CATEGORY: EMPLOYEE is hired as a Regular Employee.

9.      TERMS AND CONDITIONS OF EMPLOYMENT: The terms and conditions of employment are as set forth in EMPLOYER's Personnel Regulations, as revised effective April 25, 2011 ("Personnel Regulations"), except as modified in this Agreement.

10.     REPRESENTATION:   Because EMPLOYEE works solely for the WATERMASTER, and because EMPLOYEE's salary and benefits are paid for by the WATERMASTER through reimbursement to EMPLOYER, EMPLOYEE is not within any

1

EXHIBIT B

bargaining unit of the Fallbrook Public Utility District Employees' Association ("FPUDEA") and is not subject to any of the provisions of the Memorandum of Understanding between EMPLOYER and FPUDEA. EMPLOYEE does not pay FPUDEA dues. EMPLOYEE will contribute to the recreational fund of FPUD which is currently $4.00 per payday to cover the costs of employee functions such as the holiday dinner, gifts for co-workers and items of condolence.

11.    COMPENSATION OF EMPLOYEE:  As compensation for services rendered under this Agreement, EMPLOYEE shall receive the salary established for her job classification in EMPLOYER's Personnel Regulations, as such may be modified from time to time by EMPLOYER.

12.    BONUS: EMPLOYEE shall be entitled to receive an annual bonus, based on performance as part of the EMPLOYEE's annual performance appraisal, as determined in the sole discretion of the WATERMASTER, but not to be greater than 5% per year.

13.    EMPLOYEE BENEFITS:   EMPLOYEE's benefits are established by EMPLOYER's Personnel Regulations.  EMPLOYEE will be provided those same benefits as established by EMPLOYER for Regular Employees. However, the following provisions of the Personnel Regulations (as may be modified from time to time) do not apply:

A.    REDUCTION IN FORCE:  Section 11.7 of EMPLOYER's Personnel Regulations shall not be applicable to this Agreement and, in the event of a layoff or reduction in force by EMPLOYER, EMPLOYEE shall have no priority as set forth in EMPLOYER's Personnel Regulations.

B.    GRIEVANCE PROCEDURES: Section 11.8 of EMPLOYER's Personnel Regulations shall not be applicable to this Agreement and procedures for grievances, if any, shall be established solely by the WATERMASTER.

C.    DISCIPLINE:  Section 11.9 of EMPLOYER's Personnel Regulations shall not apply and procedures for discipline, if any, shall be established solely by the WATERMASTER.

D.    COLLECTIVE BARGAINING:   Section 11.11 of EMPLOYER's Personnel Regulations shall not apply and EMPLOYEE agrees to waive any right to belong to and/or be represented by any employee association.

E.    HOURS OF WORK:  Section 11.12 of EMPLOYER's Personnel Regulations shall not apply and the hours of work shall be established solely by the WATERMASTER.

F.    USE OF EMPLOYER VEHICLES: Section 11.27 shall not apply and EMPLOYEE's benefits as related to these provisions, if any, will only be as established by the WATERMASTER.

EXHIBIT B

G.    TUITION REIMBURSEMENT:   Section 11.28 shall not apply and EMPLOYEE's benefits as related to these provisions, if any, will only be as established by the WATERMASTER.

14.    USE AND DISCLOSURE OF CONFIDENTIAL DATA:   In the course of EMPLOYEE's duties, EMPLOYEE may obtain information that is confidential.  In particular, in the course of the duties of the WATERMASTER as an officer of the Federal District Court, EMPLOYEE shall not use any confidential information or circulate it to any other person or persons except when specifically authorized in advance by the WATERMASTER.

15.    TERMINATION OF EMPLOYMENT:   This Agreement may be terminated by EMPLOYER upon written request of the WATERMASTER to EMPLOYER to give EMPLOYEE ten (10) days written notice of termination.  Termination pursuant to this section shall not prejudice any remedy that EMPLOYER or the WATERMASTER may have either at law, in equity, or under this Agreement.  EMPLOYEE is entitled to no payments or other benefits on termination except as required by law for accrued vacation and/or compensatory time.  The WATERMASTER has chosen to also pay, upon termination, 50% of accrued sick leave up to a maximum of 600 hours.

16.    ENTIRE AGREEMENT:   Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, other than those set forth herein have been made by any party, or anyone acting on behalf of any party, and that no other agreement, statement, or promise not contained in this Agreement shall be valid or binding.

17.    PARTIAL INVALIDITY:   If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or enforceable, the remaining provisions shall nevertheless continue in full force and effect without being impaired or invalidated in any way.

EMPLOYER:                                EMPLOYEE:

_____                  _____
FALLBROOK PUBLIC UTILITY DISTRICT        Ruth B. Beglin
By:  Brian J. Brady, General Manager

WATERMASTER OF SANTA MARGARITA
RIVER WATERSHED

_____
Charles W. Binder

EXHIBIT C

## EMPLOYMENT AGREEMENT

This Employment Agreement is made this 21st day of November, 2011, by and between FALLBROOK PUBLIC UTILITY DISTRICT (hereinafter referred to as "EMPLOYER"), Alisa E. Monian (hereinafter referred to as "EMPLOYEE"), and Watermaster of the Santa Margarita River Watershed (hereinafter referred to as "WATERMASTER").

### RECITALS

1.     EMPLOYEE shall serve as the Administrative Assistant to the WATERMASTER, who is not a District EMPLOYEE.

2.     The WATERMASTER budget is funded by each representative on the Steering Committee presently comprised of United States [Camp Pendleton], Eastern MWD, Western MWD, Fallbrook PUD, Metropolitan WD, Rancho California WD and the Pechanga Tribe and such budget includes the position of the EMPLOYEE.

3.     The WATERMASTER reimburses EMPLOYER on a monthly basis for all expenses (salary, benefits, etc.) EMPLOYER makes on behalf of the EMPLOYEE at the direction of the WATERMASTER.

4.     EMPLOYEE shall be an employee of EMPLOYER, pursuant to the terms and conditions of this Agreement.

5.     EMPLOYEE's position solely supports the WATERMASTER.  If the Federal Court determines that a Watermaster is no longer needed, or if EMPLOYER does not continue to be a member of the Steering Committee, this Administrative Assistant position will cease to exist and this Agreement will be terminated.

### AGREEMENT

6.     EMPLOYMENT: EMPLOYER hereby employs EMPLOYEE and EMPLOYEE hereby accepts employment with EMPLOYER commencing on November 21, 2011.

7.     EMPLOYEE'S DUTIES:   EMPLOYEE is hereby hired and employed by EMPLOYER as an Administrative Assistant to the WATERMASTER.  The job description for this position is attached hereto as Exhibit "A" and incorporated herein by reference.  The parties agree that this job description is part of EMPLOYER's Personnel Regulations.

8.     EMPLOYMENT CATEGORY: EMPLOYEE is hired as a Regular Employee.

9.     TERMS AND CONDITIONS OF EMPLOYMENT: The terms and conditions of employment are as set forth in EMPLOYER's Personnel Regulations, as revised effective April 25, 2011 ("Personnel Regulations"), except as modified in this Agreement.

10.   REPRESENTATION:   Because EMPLOYEE works solely for the WATERMASTER, and because EMPLOYEE's salary and benefits are paid for by the WATERMASTER through reimbursement to EMPLOYER, EMPLOYEE is not within any

EXHIBIT C

bargaining unit of the Fallbrook Public Utility District Employees' Association ("FPUDEA") and is not subject to any of the provisions of the Memorandum of Understanding between EMPLOYER and FPUDEA.  EMPLOYEE does not pay FPUDEA dues. EMPLOYEE will contribute to the recreational fund of FPUD which is currently $4.00 per payday to cover the costs of employee functions such as the holiday dinner, gifts for co-workers and items of condolence.

11.   COMPENSATION OF EMPLOYEE:  As compensation for services rendered under this Agreement, EMPLOYEE shall receive the salary established for her job classification in EMPLOYER's Personnel Regulations, as such may be modified from time to time by EMPLOYER.

12.   BONUS:  EMPLOYEE shall be entitled to receive an annual bonus, based on performance as part of the EMPLOYEE's annual performance appraisal, as determined in the sole discretion of the WATERMASTER, but not to be greater than 5% per year.

13.   EMPLOYEE BENEFITS:   EMPLOYEE's benefits are established by EMPLOYER's Personnel Regulations.  EMPLOYEE will be provided those same benefits as established by EMPLOYER for Regular Employees.  However, the following provisions of the Personnel Regulations (as may be modified from time to time) do not apply:

A.   REDUCTION IN FORCE:  Section 11.7 of EMPLOYER's Personnel Regulations shall not be applicable to this Agreement and, in the event of a layoff or reduction in force by EMPLOYER, EMPLOYEE shall have no priority as set forth in EMPLOYER's Personnel Regulations.

B.   GRIEVANCE PROCEDURES:  Section 11.8 of EMPLOYER's Personnel Regulations shall not be applicable to this Agreement and procedures for grievances, if any, shall be established solely by the WATERMASTER.

C.   DISCIPLINE:  Section 11.9 of EMPLOYER's Personnel Regulations shall not apply and procedures for discipline, if any, shall be established solely by the WATERMASTER.

D.   COLLECTIVE BARGAINING:   Section 11.11 of EMPLOYER's Personnel Regulations shall not apply and EMPLOYEE agrees to waive any right to belong to and/or be represented by any employee association.

E.   HOURS OF WORK:   Section 11.12 of EMPLOYER's Personnel Regulations shall not apply and the hours of work shall be established solely by the WATERMASTER.

F.   USE OF EMPLOYER VEHICLES:  Section 11.27 shall not apply and EMPLOYEE's benefits as related to these provisions, if any, will only be as established by the WATERMASTER.

EXHIBIT C

G.    TUITION REIMBURSEMENT:  Section 11.28 shall not apply and EMPLOYEE's benefits as related to these provisions, if any, will only be as established by the WATERMASTER.

14.    USE AND DISCLOSURE OF CONFIDENTIAL DATA:  In the course of EMPLOYEE's duties, EMPLOYEE may obtain information that is confidential.  In particular, in the course of the duties of the WATERMASTER as an officer of the Federal District Court, EMPLOYEE shall not use any confidential information or circulate it to any other person or persons except when specifically authorized in advance by the WATERMASTER.

15.    TERMINATION OF EMPLOYMENT:  This Agreement may be terminated by EMPLOYER upon written request of the WATERMASTER to EMPLOYER to give EMPLOYEE ten (10) days written notice of termination.  Termination pursuant to this section shall not prejudice any remedy that EMPLOYER or the WATERMASTER may have either at law, in equity, or under this Agreement.  EMPLOYEE is entitled to no payments or other benefits on termination except as required by law for accrued vacation and/or compensatory time.  The WATERMASTER has chosen to also pay, upon termination, 50% of accrued sick leave up to a maximum of 600 hours.

16.    ENTIRE AGREEMENT:  Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, other than those set forth herein have been made by any party, or anyone acting on behalf of any party, and that no other agreement, statement, or promise not contained in this Agreement shall be valid or binding.

17.    PARTIAL INVALIDITY:  If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, void or enforceable, the remaining provisions shall nevertheless continue in full force and effect without being impaired or invalidated in any way.

EMPLOYER:                                                        EMPLOYEE:

_____          _____
FALLBROOK PUBLIC UTILITY DISTRICT          Alisa E. Monian
By: Brian J. Brady, General Manager

WATERMASTER OF SANTA MARGARITA
RIVER WATERSHED

_____
Charles W. Binder

# EXHIBIT "5"

EXHIBIT "5"



**Hosaka, Rotherham & Company**
Certified Public Accountants

hrccpa.com

James A. Rotherham, CPA
CEO & Managing Partner

..........................................

Roy T. Hosaka, CPA
Retired

James C. Nagel, CPA
Retired

**WATERMASTER OF THE
SANTA MARGARITA RIVER WATERSHED**

**INDEPENDENT AUDITORS' REPORT**

**FOR THE FISCAL YEAR ENDED
SEPTEMBER 30, 2012**

1011 Camino Del Rio South, Suite 410, San Diego, CA 92108  /  T: 619.543.9702  /  F: 619.546.0116

**WATERMASTER OF THE
SANTA MARGARITA RIVER WATERSHED**

**INTRODUCTORY SECTION**

**SEPTEMBER 30, 2012**

WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED
TABLE OF CONTENTS
SEPTEMBER 30, 2012

|  | Page Number |
|---|---|
| INTRODUCTORY SECTION | |
| Table of Contents | i |
| FINANCIAL SECTION | 1 |
| Independent Auditors' Report | 2 - 3 |
| Statement of Net Assets | 4 |
| Statement of Activities | 5 |
| Statement of Cash Flows | 6 |
| Notes to Financial Statements | 7 - 11 |
| SUPPLEMENTARY INFORMATION SECTION | 12 |
| Statement of Activities - Budget and Actual | 13 |
| OTHER INDEPENDENT AUDITORS' REPORTS SECTION | 14 |
| Report on Internal Control Over Financial Reporting and on Compliance and Other Matters Based on an Audit of Financial Statements Performed in Accordance with *Government Auditing Standards* | 15 - 16 |
| FINDINGS AND RECOMMENDATIONS SECTION | 17 |
| Schedule of Audit Findings and Questioned Costs | 18 - 19 |
| Summary Schedule of Prior Audit Findings | 20 |

**WATERMASTER OF THE**
**SANTA MARGARITA RIVER WATERSHED**

**FINANCIAL SECTION**

**SEPTEMBER 30, 2012**



**Hosaka, Rotherham & Company**
Certified Public Accountants

hrccpa.com

James A. Rotherham, CPA
CEO & Managing Partner

..............................................

Roy T. Hosaka, CPA
Retired

James C. Nagel, CPA
Retired

## INDEPENDENT AUDITORS' REPORT

Steering Committee
Watermaster of the Santa Margarita River Watershed
Fallbrook, California

We have audited the accompanying statement of financial position of Watermaster of the Santa Margarita River Watershed as of September 30, 2012, and the related statements of activities and cash flows for the fiscal year then ended. These financial statements are the responsibility of Watermaster of the Santa Margarita River Watershed's management. Our responsibility is to express an opinion on these financial statements based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States of America and standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States.  Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation.  We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Watermaster of the Santa Margarita River Watershed as of September 30, 2012, and the changes in its net assets and its cash flows for the fiscal year then ended in conformity with accounting principles generally accepted in the United States of America.

In accordance with *Government Auditing Standards*, we have also issued our report dated December 4, 2012, on our consideration of the Watermaster of the Santa Margarita River Watershed's internal control over financial reporting and our tests of its compliance with certain provisions of laws, regulations, contracts, grant agreements and other matters.  The purpose of that report is to describe the scope of our testing of internal control over financial reporting and compliance and the results of that testing, and not to provide an opinion on the internal control over financial reporting or on compliance.  That report is an integral part of an audit performed in accordance with *Government Auditing Standards*, and important for assessing the results of our audit.

**INDEPENDENT AUDITORS' REPORT**
Page 2

Our audit was performed for the purpose of forming an opinion on the financial statements of Watermaster of the Santa Margarita River Watershed taken as a whole.  The accompanying supplementary information listed in the Table of Contents is presented for purposes of additional analysis and is not a required part of the financial statements of Watermaster of the Santa Margarita River Watershed.  Such information has been subjected to the auditing procedures applied in the audit of the financial statements and, in our opinion, is fairly stated, in all material respects, in relation to the financial statements taken as a whole.

*Hosaka, Rotherham & Company*

San Diego, California
December 4, 2012

**WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED**
**STATEMENT OF NET ASSETS**
**SEPTEMBER 30, 2012**

**ASSETS**

Current assets:

| | | |
|---|---|---:|
| Cash and cash equivalents (Note 2) | $ | 243,179 |
| Short-term investments (Note 3) | | 200,937 |
| Accounts receivable | | 23,200 |
| Total current assets | | 467,316 |
| Fixed assets, net of depreciation | | 3,472 |
| Total assets | $ | 470,788 |

**LIABILITIES AND  NET ASSETS**

Current liabilities:

| | | |
|---|---|---:|
| Advanced assessments | $ | 139,200 |
| Total current liabilities | | 139,200 |

Net assets:

| | | |
|---|---|---:|
| Unrestricted | | 331,588 |
| Total net assets | | 331,588 |
| Total liabilities and net assets | $ | 470,788 |

The notes to the financial statements are an integral part of this statement.

**WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED**
**STATEMENT OF ACTIVITIES**
**FOR THE FISCAL YEAR ENDED SEPTEMBER 30, 2012**

Revenues

| | | |
|---|---|---|
| Assessments | $ | 606,060 |
| Interest | | 844 |
| Total revenues | | 606,904 |

Expenses

| | |
|---|---|
| Watermaster fees: | |
| Consulting services | 232,791 |
| Travel reimbursements | 20,735 |
| Other expenses: | |
| Gauging station operation | 232,050 |
| Human resource services | 2,255 |
| Rent | 17,706 |
| Accounting services | 6,322 |
| Supplies | 3,454 |
| Insurance | 475 |
| Printing | 9,170 |
| Audit | 6,339 |
| Legal services | 370 |
| Publications | 2,918 |
| Clerical / Data management | 159,811 |
| Telephone / Internet | 3,398 |
| Travel | 736 |
| Office equipment and software | 4,805 |
| Network expenses | 5,103 |
| Miscellaneous | 4,620 |
| Total expenses | 713,058 |

| | | |
|---|---|---|
| Change in net assets | | (106,154) |
| Net assets - beginning | | 437,742 |
| Net assets - ending | $ | 331,588 |

The notes to the financial statements are an integral part of this statement.

WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED
STATEMENT OF CASH FLOWS
FOR THE FISCAL YEAR ENDED SEPTEMBER 30, 2012

Cash flows used by operating activities:

| | | |
|---|---|---|
| Receipts from customers | $ | 613,835 |
| Receipts from interest | | 844 |
| Payment to suppliers and vendors | | (713,058) |
| Net cash used by operating activities | | (98,379) |

Cash flows from financing activities:

| | | |
|---|---|---|
| Increase in short-term investments | | (200,937) |
| Net cash provided by financing activities | | (200,937) |

Cash flows used by investing activities:

| | | |
|---|---|---|
| Acquisition of fixed assets | | (3,472) |
| Net cash used by operating activities | | (3,472) |

| | | |
|---|---|---|
| Change in cash and cash equivalents | | (302,788) |
| Cash and cash equivalents - beginning | | 545,967 |
| Cash and cash equivalents - ending | $ | 243,179 |

Reconciliation of operating revenues to net cash
used by operating activities

| | | |
|---|---|---|
| Change in net assets | $ | (106,154) |

Adjustment to reconcile net income to net cash
used by operating activities
(Increase) Decrease in:

| | | |
|---|---|---|
| Accounts receivable | | (1,554) |
| Increase (Decrease) in: | | |
| Advanced assessments | | 9,329 |
| Net cash used by operating activities | $ | (98,379) |

The notes to the financial statements are an integral part of this statement.

WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED
NOTES TO FINANCIAL STATEMENTS
SEPTEMBER 30, 2012

## NOTE 1 - ORGANIZATION AND SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

A. <u>Nature of operations</u>

Watermaster of the Santa Margarita River Watershed (Watermaster) was created by order of the United States District Court, Southern District of California (Court). The Court, as part of its continuing jurisdiction in the case of United States vs. Fallbrook Public Utility District et al., has authority to make judicial determination of all water rights within the Santa Margarita River Watershed. Watermaster is empowered by the Court to administer and enforce the provisions of a Modified Final Judgment and Decree entered April 6, 1966, and subsequent instructions and orders of the Court. On November 15, 2005, the Court issued an Order authorizing the Steering Committee to execute an Employment Agreement with Charles W. Binder, DBA Binder & Associates Consulting, Inc., to serve as Watermaster.

A Steering Committee was appointed by the Court to assist Watermaster and the Court. The Steering Committee is comprised of representatives from the United States (Camp Pendleton Marine Corps Base), Rancho California Water District, Fallbrook Public Utility District (FPUD), Eastern Municipal Water District, Metropolitan Water District of Southern California, the Pechanga Band of Luiseño Mission Indians, and Western Municipal Water District.

The fees and expenses of Watermaster during the water year ended September 30, 2012 were, per court order, paid from equal assessments against the Steering Committee members. The Court retains the right to assess other parties in the watershed in future years. Pursuant to an agreement between Watermaster and the US Geological Survey (USGS), the USGS provides operations and maintenance services for the stream gauging stations in the watershed.

B. <u>Basis of accounting</u>

The accounting policies of the Watermaster substantially conform to generally accepted accounting principles. The accounting records are maintained on an accrual basis. Revenue is recognized when earned and expenses are recorded upon incurrence of a liability. Accounts receivable represent amounts due from Steering Committee members.

C. <u>Cash and cash equivalents</u>

Cash and cash equivalents are from time to time variously composed of cash in banks and liquid investments with original maturities of three months or less.

D. <u>Investments</u>

The Watermaster presents its investments in accordance with Accounting Standards. Investments in marketable securities with readily determinable fair values and all investments in debt securities are reported at their fair values in the Statement of Financial Position. The fair values of these investments are subject to change based on the fluctuations of market values. Unrealized gains and losses are included in the change in net assets. Investment income and gains restricted by a donor or by the Watermaster are reported as increases in unrestricted net assets if the restrictions are met (either by the passage of time or by use) in the reporting period in which the income and gains are recognized.

E. <u>Accounts receivable</u>

Watermaster considers accounts receivable to be fully collectible; accordingly, no allowance for doubtful accounts is required.

- 7 -

**WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED**
**NOTES TO FINANCIAL STATEMENTS (CONTINUED)**
**SEPTEMBER 30, 2012**

## NOTE 1 - ORGANIZATION AND SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES (CONTINUED)

F.   Fixed assets

Fixed assets are recorded at cost and depreciated under the straight-line method over their estimated useful lives of 3 to 10 years. Repair and maintenance costs, which do not extend the useful lives of the asset, are charged to expense. The cost of assets, sold or retired, and related amounts of accumulated depreciation are eliminated from the accounts in the year of disposal, and any resulting gain or loss is included in the earnings. Management has elected to capitalize and depreciate all assets costing $2,000 or more; all other assets are charged to expense in the year incurred.

G.   Advanced assessments

Advanced assessments represent amounts levied or collected in the current year that apply to the next fiscal year.

H.   Use of estimates

The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect certain reported amounts and disclosures. Accordingly, actual results could differ from those estimates.

I.   Classification of items

Certain items may have been classified different from one year to another.

J.   Income taxes

Watermaster was created by order of the Court and is exempt from taxation.

K.   Excess of expenses over budgets

Excess of expenses over budgets in individual accounts are as follows:

| | | |
|---|---|---:|
| Watermaster fees - consulting | $ | (24,791) |
| Human resource services | $ | (2,255) |
| Rent | $ | (3,006) |
| Accounting services | $ | (122) |
| Supplies | $ | (2,054) |
| Audit | $ | (39) |
| Legal services | $ | (370) |
| Publications | $ | (618) |
| Clerical / Data management | $ | (73,511) |
| Telephone / Internet | $ | (398) |
| Office equipment and software | $ | (2,805) |
| Miscellaneous | $ | (2,785) |

WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED
NOTES TO FINANCIAL STATEMENTS (CONTINUED)
SEPTEMBER 30, 2012

NOTE 1 - ORGANIZATION AND SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES
(CONTINUED)

K.   Excess of expenses over budgets (continued)

There were three major items that the actual expenses accessed over budget amount.

- Watermaster fees - consulting - The Steering Committee approved the annual hours worked by the Watermaster to be 1,450 hours. Due to an unanticipated increase in workload for the Watermaster, the actual hours worked by the Watermaster were 1,620.75 hours, resulting in the cost overrun.

- Rent, supplies, office equipment and software, etc. - Due to FPUD's need to consolidate and rearrange office space, the suite leased by the Watermaster was needed for FPUD personnel. Another suite was made available for lease by the Watermaster, resulting in relocation costs, in addition to an increase in monthy lease payments. The unanticipated move was not included in the approved budget.

- Clerical / Data management - FPUD assisted the Watermaster in recruitment and hiring of an additional administrative assistant due to the anticipated retirement of the first administrative assistant, and this was not included in the budget. There was a 10-month overlap of two administrative assistants for training and transition purposes, and the new administrative assistant worked full time compared to the part time employment of the first administrative assistant.

NOTE 2 - CASH AND CASH EQUIVALENTS

Cash and cash equivalents at September 30, 2012, consisted of the following:

| | | |
|---|---|---:|
| Cash in banks | $ | 1,758 |
| Money market | | 241,421 |
| Total cash and cash equivalents | $ | 243,179 |

Cash and cash equivalents balances held in banks are insured up to $250,000 by the Federal Depository Insurance Corporation (FDIC). At September 30, 2012, the Watermaster did not have any uninsured funds.

WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED
NOTES TO FINANCIAL STATEMENTS (CONTINUED)
SEPTEMBER 30, 2012

## NOTE 3 - SHORT-TERM INVESTMENTS

Short-term investments at September 30, 2012, are stated at Fair Market Value and consist of the following:

|  | Cost | Fair Value | Carrying Value |
|---|---|---|---|
| Unrestricted: | | | |
| Pacific Western Bank | | | |
| certificate of deposit | $ 50,823 | $ 50,937 | $ 50,937 |
| Union Bank | | | |
| certificate of deposit | 150,000 | 150,000 | 150,000 |
| Total unrestricted | $ 200,823 | $ 200,937 | $ 200,937 |

Short-term investment activity for the fiscal year ended September 30, 2012, consisted of the following:

|  | Unrestricted |
|---|---|
| Interest and dividends | $ 114 |
| Net investment return | $ 114 |

Watermaster realized a gain or loss on the Union Bank certificate of deposit when it earned its interest. During the fiscal year, Watermaster recognized the entire interest income related to the Union Bank certificate of deposit in the amount of $300.

## NOTE 4 - FIXED ASSETS

Fixed assets at September 30, 2012, consisted of the following:

| | |
|---|---|
| Computer equipment | $ 8,261 |
| Office furniture and equipment | 19,461 |
| Less: accumulated depreciation | (24,250) |
| Total fixed assets, net of depreciation | $ 3,472 |

The Watermaster purchased fixed assets during the fiscal year ended September 30, 2012; however, there was no depreciation expense charged during the year because the fixed assets will not be depreciated until 2012-2013.

## NOTE 5 - RELATED PARTY TRANSACTIONS

The Watermaster has entered into an agreement with Fallbrook Public Utility District (FPUD), which is a member of the Watermaster Steering Committee, whereby FPUD provides office space and accounting services. Rent of office space and accounting services for the fiscal year ended September 30, 2012, were $17,706 and $6,322, respectively.

**WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED**
**NOTES TO FINANCIAL STATEMENTS (CONTINUED)**
**SEPTEMBER 30, 2012**

## NOTE 5 - RELATED PARTY TRANSACTIONS (CONTINUED)

Data management and clerical support services are performed at the Watermaster office by an FPUD employee under contract. Watermaster reimburses FPUD for the actual cost of wages and fringe benefits. For the fiscal year ended September 30, 2012, these reimbursements totaled $159,811.

## NOTE 6 - OPERATING LEASES

The Watermaster leases a copier and electronic storage under operating lease arrangements. Future minimum lease payments under the signed lease arrangements are as follows:

| Year ending September 30, | | Lease payments |
|---|---|---|
| 2013 | $ | 4,619 |
| 2014 | | 2,505 |
| 2015 | | 1,800 |
| 2016 | | 1,800 |
| 2017 | | 150 |
| Total | $ | 10,874 |

The Watermaster will receive no sublease rental revenue, nor pay any contingent rental for this property. At September 30, 2012, Watermaster's lease expense was $5,769.

**WATERMASTER OF THE**
**SANTA MARGARITA RIVER WATERSHED**

**SUPPLEMENTARY INFORMATION SECTION**

**SEPTEMBER 30, 2012**

WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED
STATEMENT OF ACTIVITIES - BUDGET AND ACTUAL
FOR THE FISCAL YEAR ENDED SEPTEMBER 30, 2012

| | Original/ Final Budget | Actual | Variance Favorable (Unfavorable) |
|---|---:|---:|---:|
| **Revenues** | | | |
| Assessments | $ 606,060 | $ 606,060 | $ - |
| Interest | - | 844 | 844 |
| Total revenues | 606,060 | 606,904 | 844 |
| **Expenses** | | | |
| Watermaster fees: | | | |
| Consulting services | 208,000 | 232,791 | (24,791) |
| Travel reimbursements | 21,000 | 20,735 | 265 |
| Other expenses: | | | |
| Gauging station operation | 232,225 | 232,050 | 175 |
| Human resource services | - | 2,255 | (2,255) |
| Rent | 14,700 | 17,706 | (3,006) |
| Accounting services | 6,200 | 6,322 | (122) |
| Supplies | 1,400 | 3,454 | (2,054) |
| Insurance | 500 | 475 | 25 |
| Printing | 9,500 | 9,170 | 330 |
| Audit | 6,300 | 6,339 | (39) |
| Legal services | - | 370 | (370) |
| Publications | 2,300 | 2,918 | (618) |
| Clerical / Data management | 86,300 | 159,811 | (73,511) |
| Telephone / Internet | 3,000 | 3,398 | (398) |
| Travel | 800 | 736 | 64 |
| Office equipment and software | 2,000 | 4,805 | (2,805) |
| Network expenses | 10,000 | 5,103 | 4,897 |
| Miscellaneous | 1,835 | 4,620 | (2,785) |
| Total expenses | 606,060 | 713,058 | (106,998) |
| Change in net assets | - | (106,154) | (106,154) |
| Net assets - beginning | 437,742 | 437,742 | - |
| Net assets - ending | $ 437,742 | $ 331,588 | $ (106,154) |

**WATERMASTER OF THE**
**SANTA MARGARITA RIVER WATERSHED**

**OTHER INDEPENDENT AUDITORS' REPORTS SECTION**

**SEPTEMBER 30, 2012**



**Hosaka, Rotherham & Company**
Certified Public Accountants

hrccpa.com

James A. Rotherham, CPA
CEO & Managing Partner

...............................................

Roy T. Hosaka, CPA
Retired

James C. Nagel, CPA
Retired

## REPORT ON INTERNAL CONTROL OVER FINANCIAL REPORTING AND ON COMPLIANCE AND OTHER MATTERS BASED ON AN AUDIT OF FINANCIAL STATEMENTS PERFORMED IN ACCORDANCE WITH *GOVERNMENT AUDITING STANDARDS*

Steering Committee
Watermaster of the Santa Margarita River Watershed
Fallbrook, California

We have audited the financial statements of the Watermaster of the Santa Margarita River Watershed, as of and for the fiscal year ended September 30, 2012, and have issued our report thereon dated December 4, 2012.  We conducted our audit in accordance with auditing standards generally accepted in the United States of America and the standards applicable to financial audits contained in *Government Auditing Standards*, issued by the Comptroller General of the United States.

Internal Control Over Financial Reporting

Management of Watermaster of the Santa Margarita River Watershed is responsible for establishing and maintaining effective internal control over financial reporting. In planning and performing our audit, we considered Watermaster of the Santa Margarita River Watershed's internal control over financial reporting as a basis for designing our auditing procedures for the purpose of expressing our opinion on the financial statements, but not for the purpose of expressing an opinion on the effectiveness of Watermaster of the Santa Margarita River Watershed's internal control over financial reporting. Accordingly, we do not express an opinion on the effectiveness of Watermaster of the Santa Margarita River Watershed's internal control over financial reporting.

A *deficiency in internal control* exists when the design or operation of a control does not allow management or employees, in the normal course of performing their assigned functions, to prevent, or detect and correct misstatements on a timely basis. A *material weakness* is a deficiency, or combination of deficiencies, in internal control such that there is a reasonable possibility that a material misstatement of the entity's financial statements will not be prevented, or detected and corrected on a timely basis.

Our consideration of internal control over financial reporting was for the limited purpose described in the first paragraph of this section and was not designed to identify all deficiencies in internal control over financial reporting that might be deficiencies, significant deficiencies, or material weaknesses.  We did not identify any deficiencies in internal control over financial reporting that we consider to be material weaknesses, as defined above.

**REPORT ON INTERNAL CONTROL OVER FINANCIAL REPORTING AND
ON COMPLIANCE AND OTHER MATTERS BASED ON AN AUDIT OF
FINANCIAL STATEMENTS PERFORMED IN ACCORDANCE WITH**
*GOVERNMENT AUDITING STANDARDS*
Page 2

Compliance and Other Matters

As part of obtaining reasonable assurance about whether Watermaster of the Santa Margarita River Watershed's financial statements are free of material misstatement, we performed tests of its compliance with certain provisions of laws, regulations, contracts, and grant agreements, noncompliance with which could have a direct and material effect on the determination of financial statements amounts. However, providing an opinion on compliance with those provisions was not an objective of our audit, and accordingly, we do not express such an opinion. The results of our tests disclosed no instances of noncompliance or other matters that are required to be reported under *Government Auditing Standards*.

This report is intended solely for the information and use of Management, Steering Committee, federal awarding agencies and pass-through entities, where applicable, and is not intended to be and should not be used by anyone other than these specified parties.

*Hosaka, Rotherham & Company*

San Diego, California
December 4, 2012

WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED

FINDINGS AND RECOMMENDATIONS SECTION

SEPTEMBER 30, 2012

**WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED**
**SCHEDULE OF AUDIT FINDINGS AND QUESTIONED COSTS**
**FOR THE FISCAL YEAR ENDED SEPTEMBER 30, 2012**

**Section I -- Summary of Auditors' Results**

*Financial Statements*

Type of auditors' report issued: _____ Unqualified _____

Internal control over financial reporting:
One or more material weaknesses identified? _____ Yes    X    No
One or more significant deficiencies identified that
   are not considered to be material weaknesses? _____ Yes    X    None

Noncompliance material to financial statements noted? _____ Yes    X    No

*Federal Awards*

Internal control over major programs:
One or more material weaknesses identified? _____ Yes    N/A    No
One or more significant deficiencies identified that
   are not considered to be material weaknesses? _____ Yes    N/A    None

Type of auditors' report issued on compliance for
   major programs: _____ N/A _____

Any audit findings disclosed that are required to be
   reported in accordance with Circular A-133,
   Section 510(a). _____ Yes    N/A    No

Identification of major <u>programs:</u>

        <u>CFDA Number</u>                        <u>Name of Federal Program</u>

       This Organization did not have any major programs.

Dollar threshold used to distinguish between Type A
   and Type B programs: N/A

Auditee qualified as low-risk auditee? N/A

- 18 -

**WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED**
**SCHEDULE OF AUDIT FINDINGS AND QUESTIONED COSTS (CONTINUED)**
**FOR THE FISCAL YEAR ENDED SEPTEMBER 30, 2012**

**Section II -- Financial Statement Findings**

No matters were reported.

**Section III -- Federal Award Findings and Questioned Costs**

No matters were reported.

**Section IV -- State Award Findings and Questioned Costs**

No matters were reported.

- 19 -

WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED
SUMMARY SCHEDULE OF PRIOR AUDIT FINDINGS
SEPTEMBER 30, 2012

| Findings/Recommendations | Current Status | Explanation If Not Implemented |
|---|---|---|
| None | N/A | N/A |



**Hosaka, Rotherham & Company**
Certified Public Accountants

hrccpa.com

James A. Rotherham, CPA
CEO & Managing Partner

..................................................

Roy T. Hosaka, CPA
Retired

James C. Nagel, CPA
Retired

# WATERMASTER OF THE
## SANTA MARGARITA RIVER WATERSHED

### REPORT TO THE
### STEERING COMMITTEE

### SEPTEMBER 30, 2012

1011 Camino Del Rio South, Suite 410, San Diego, CA 92108  /  T: 619.543.9702  /  F: 619.546.0116



**Hosaka, Rotherham & Company**
Certified Public Accountants

hrccpa.com

James A. Rotherham, CPA
CEO & Managing Partner

Roy T. Hosaka, CPA
Retired

James C. Nagel, CPA
Retired

To the Steering Committee
Watermaster of the Santa Margarita River Watershed
Fallbrook, California

We have audited the financial statements of Watermaster of the Santa Margarita River Watershed (Watermaster), for the year ended September 30, 2012 and have issued our report thereon dated December 4, 2012. Professional standards require that we provide you with the following information related to our audit.

## Our Responsibility Under U.S. Generally Accepted Auditing Standards and Government Auditing Standards

As stated in our engagement letter, our responsibility, as described by professional standards, is to plan and perform our audit to obtain reasonable, but not absolute, assurance about whether the financial statements are free of material misstatement and are fairly presented in accordance with U. S. generally accepted accounting principles. Because an audit is designed to provide reasonable, but not absolute, assurance and because we did not perform a detailed examination of all transactions, there is a risk that material misstatements may exist and not be detected by us.

As part of our audit, we considered the internal control of Watermaster. Such considerations were solely for the purpose of determining our audit procedures and not to provide any assurance concerning such internal control.

As part of obtaining reasonable assurance about whether the financial statements are free of material misstatement, we performed tests of Watermaster's compliance with certain provisions of laws, regulations, contracts, and grants. However, the objective of our tests was not to provide an opinion on compliance with such provision.

## Significant Accounting Policies

Management is responsible for the selection and use of appropriate accounting policies. In accordance with the terms of our engagement letter, we will advise management about the appropriateness of accounting policies and their application. The significant accounting policies used by Watermaster are described in Note 1 to the financial statements. New accounting policies were adopted and the applications of existing policies were changed during the year ended September 30, 2012. We noted no transactions entered into by Watermaster during the year that were both significant and unusual, and of which, under professional standards, we are required to inform you, or transactions for which there is a lack of authoritative guidance or consensus.

Watermaster of the Santa Margarita River Watershed
Steering Committee Report
Page 2 of 3

## Accounting Estimates

Accounting estimates are an integral part of the financial statements prepared by management and are based on management's knowledge and experience about past and current events and assumptions about future events.

## Audit Adjustments

For purposes of this letter, professional standards define an audit adjustment as a proposed correction of the financial statements that, in our judgment, may not have been detected except through our auditing procedures. An audit adjustment may or may not indicate matters that could have a significant effect on Watermaster's financial reporting process (that is, cause future financial statements to be materially misstated).

## Disagreements With Management

For purposes of this letter, professional standards define a disagreement with management as a matter, whether or not resolved to our satisfaction, concerning a financial accounting, reporting, or auditing matter that could be significant to the financial statements or the auditors' report. We are pleased to report that no such disagreements arose during the course of our audit.

## Consultations With Other Independent Accountants

In some cases, management may decide to consult with other accountants about auditing and accounting matters, similar to obtaining a "second opinion" on certain situations. If a consultation involves application of an accounting principle Watermaster's financial statements or a determination of the type of auditor's opinion that may be expressed on those statements, our professional standards require the consulting accountant to check with us to determine that the consultant has all the relevant facts. To our knowledge, there were no such consultations with other accountants.

## Issues Discussed Prior to Retention of Independent Auditors

We generally discuss a variety of matters, including the application of accounting principles and auditing standards, with management each year prior to retention as Watermaster's auditors. However, these discussions occurred in the normal course of our professional relationship and our responses were not a condition to our retention.

## Difficulties Encountered in Performing the Audit

We encountered no difficulties in dealing with management in performing and completing our audit.

Watermaster of the Santa Margarita River Watershed
Steering Committee Report
Page 3 of 3

This report is intended solely for the information and use of management and Steering Committee, and is not intended to be and should not be used by anyone other than these specified parties.

*Hosaka, Rotherham & Company*

Hosaka, Rotherham & Company
December 4, 2012

# EXHIBIT "6"

EXHIBIT "6"

WATERMASTER
SANTA MARGARITA RIVER WATERSHED
P.O. Box 631
Fallbrook, California 92088
(760) 728-1028
FAX (760) 728-1990

January 18, 2012

Hand Delivery via Pickup at FPUD Offices

Mr. Archie D. McPhee, Director
Fallbrook Public Utility District
40482 Gavilan Mountain Road
Fallbrook, CA  92028

Re:    *U.S.A. v. Fallbrook Public Utility District, et al.*, Civil No. 1247-SD-GT-SDD—
       Request for Documents

Dear Mr. McPhee:

In accordance with your request during our meeting on December 14, 2011, and our
telephone conversation on January 13, 2012, enclosed please find copies of the
following documents related to the above-captioned case in *U.S.A. v. Fallbrook Public
Utility District, et al.*:

1.   Final Judgment and Decree filed on May 8, 1963.

2.   Ninth Circuit Court Decision filed on November 29, 1965.

3.   Modified Final Judgment and Decree filed on April 6, 1966.

4.   Order and Agreement between the United States and Fallbrook Public
     Utility District (FPUD) filed on June 27, 1968.

5.   Interlocutory Judgment 23 regarding FPUD appropriative water rights filed
     on February 14, 1961.

6.   Amendment to Interlocutory Judgment 23 filed on April 4, 1962.

7.   Interlocutory Judgment 24 regarding water rights for Lake O'Neill filed on
     April 13, 1961.

8.   Amendment to Interlocutory Judgment 24 filed on May 7, 1963.

9.   Interlocutory Judgment 37 regarding the Military Enclave filed on April 6,
     1962.

10.  Amendment No. 1 to Interlocutory Judgment 37 filed on November 8, 1962.

11.  Amendment No. 2 to Interlocutory Judgment 37 filed on February 20, 1963.

12.  Interlocutory Judgment 39 regarding the Santa Margarita River below Gorge
     and above Military Enclave filed on December 11, 1962.

13.  Amendment No. 1 to Interlocutory Judgment 39 filed on April 9, 1963.

14.  Interlocutory Judgment 39A regarding the Santa Margarita River below
     Gorge and above Military Enclave filed on November 8, 1962.

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Mr. Archie D. McPhee
Re:    Request for Documents
January 18, 2012
Page 2 of 2

15.  Amendment No. 1 to Interlocutory Judgment 39A filed on March 13, 1963.

16.  Interlocutory Judgment 41 regarding Indian Reservations filed on November 8, 1962.

17.  March 13, 1989 Order regarding Watermaster duties and responsibilities.

18.  March 13, 1989 Order regarding Steering Committee duties and responsibilities.

19.  March 7, 2006 Order regarding Watermaster duties and responsibilities.

20.  Order and Stipulation regarding Cooperative Water Resource Management Agreement filed on August 20, 2002.

21.  Cooperative Water Resource Management Agreement dated March 26, 2002.

Please note that the Annual Watermaster Report for Water Year 2011 is in preparation. We have added you to the report distribution list and once the report is completed you will receive a copy.  The expected completion date for the 2011 report is September 2012.   In the meantime, please refer to the 2010 report that we provided to you previously.

With respect to your request for copies of documents related to the water rights permit held directly by FPUD and those permits that would provide the underlying water rights for the proposed Santa Margarita River Conjunctive Use Water Project between FPUD and Camp Pendleton, we request that you obtain such documents directly from Dr. Brian Brady or Mr. Jack Bebee on the FPUD staff.  Likewise we request that you speak to Messrs. Brady and Bebee regarding your questions and request for documents related to the so-called Four Party Litigation.

If you have any questions regarding the documents that we provided, please do not hesitate to contact us.

Sincerely,

Charles W. Binder, P.E.
Watermaster

CWB:aem
Enclosures

cc (w/o Encls.):     Dr. Brian Brady
                     Mr. Jack Bebee

# EXHIBIT "7"

EXHIBIT "7"

**FALLBROOK PUBLIC UTILITY DISTRICT**
**BOARD OF DIRECTORS**

C E R T I F I C A T I O N

\* \* \* \* \*

I, Mary Lou Boultinghouse, Secretary of the Board of Directors of the FALLBROOK PUBLIC UTILITY DISTRICT, do hereby certify that the attached and foregoing is a full, true, and correct copy of Resolution No. 4799 of said Board passed and adopted at a special meeting of the Board of Directors on September 9, 2013.

Executed this 12th day of September, 2013, at Fallbrook, California.

_____
Secretary, Board of Directors



RESOLUTION NO. 4799

A RESOLUTION OF THE BOARD OF DIRECTORS OF
THE FALLBROOK PUBLIC UTILITY DISTRICT
CENSURING AND SANCTIONING DIRECTOR MCPHEE FOR
VIOLATIONS OF THE DISTRICT'S ETHICS POLICY AND
COMPREHENSIVE CODE OF CONDUCT

* * * * *

**WHEREAS**, Article 2 of the Fallbrook Public Utility District (FPUD) Administrative Code is entitled, Board of Directors, Organization of; and

**WHEREAS**, Section 2.15, Ethics Policy, stipulates that "This Ethics Policy provides the following general guidelines and specific prohibitions to which elected District officials must conform in pursuit of their assigned duties and responsibilities"; and

**WHEREAS**, Section 2.15 (A), Disclosure of Closed Session Matters, states "No member of the District shall disclose to any person, other than members of the Board, General Manager, or other District staff designated by the General Manager to handle such matters of confidential District business, the content or substance of any information presented or discussed during a closed session meeting, unless the District first authorizes such disclosure by the affirmative vote of three members"; and

**WHEREAS**, Section 2.15 (B), Disclosure of Confidential Communications, states "Except when disclosure is mandated by State or Federal law, no member of the District Board shall disclose confidential or privileged communications to any person other than members of the Board, General Manager, or other District staff designated by the General Manager to handle such matters, unless the Board of Directors first authorizes such disclosure by the affirmative vote of three members of the Board of Directors"; and

**WHEREAS**, Section 2.15 (C), Conduct During Negotiations/Litigation, states "The Board of Directors is authorized to provide direction to specifically identified negotiators in a legally constituted closed session on matters involving pending litigation, real estate negotiations, and labor negotiations. If the Board of Directors, in closed session, provides such direction to its negotiators, all contact with the negotiating party or party's representative shall be limited to and made by those individuals designated to handle the negotiations. In addition, during litigation or real estate negotiations, no member of the District Board (unless they have been designated as a negotiator) shall have any contact or discussion with litigating or negotiating party of the party's representative regarding the subject matter of the pending litigation or real estate negotiations"; and

**WHEREAS**, Section 2.16.6, Board Orientation and Training, stipulates, "Every Board member shall participate in an orientation and training to be offered by the District

within 60 days of election, re-election to office, or assuming office, as a condition to receiving compensation or allowance of expenses. The orientation and training shall include:

- 2. - An explanation of Board policies, procedures, and committee structure and delivery of a copy of the current Board policies and procedures.

- 3.d. - Legal responsibilities of Board members"; and

WHEREAS, Archie McPhee, being a duly elected Director of the Fallbrook Public Utility District, is subject to Article 2 of the District's Administrative Code; and

WHEREAS, Director McPhee has refused to complete the required orientation and training during his tenure as outlined in Section 2.16.6; and

WHEREAS, Director McPhee was formally admonished on March 25, 2013, by the Board of Directors for the following: (1) violated the FPUD Administrative Code and the Brown Act with regard to disclosure of confidential closed session board proceedings, (2) authored inappropriate and disruptive communications to District staff, and (3) was directed to communicate with District staff only through the FPUD General Manager's office; and

WHEREAS, The Santa Margarita River Conjunctive Use Project (SMRCUP) is the subject of active long-term negotiations between the District and Marine Corps Camp Pendleton with General Manager Brian J. Brady as the District's designated negotiator; and

WHEREAS, Director McPhee authored three letters to the Commanding General of Marine Corps Base Camp Pendleton dated March 15, 2013, April 25, 2013, and May 31, 2013, which, in part, disclosed confidential closed session information in violation of Sections 2.15 (A), (B), and (C); and

WHEREAS, the letters were reviewed by both the FPUD Personnel Committee and the FPUD General Manager at the May 22, 2013, June 14, 2013, and August 14, 2013, meetings of the Committee and were found to be disruptive communications, which on their face, served to undermine years of negotiations with the Marine Corps regarding the Santa Margarita River Conjunctive Use Project; and

WHEREAS, Section 2.15 (E), Violations and Penalties, states "Any perceived violation of this Ethics Policy by a member of the Board shall be referred to the Board President or the full Board of Directors for investigation, and consideration of any appropriate action warranted. A violation of this policy may be addressed by the use of such remedies as are available by law to the District, including but not limited to: (a) adoption of a resolution expressing disapproval of the conduct of the Board member who has violated this policy; (b) injunctive relief; (c) referral of the violation to the Attorney General, District Attorney, Fair Political Practices Commission (FPPC), and/or

the Grand Jury; or the specific actions available to the Board enumerated in greater detail in Sections 2.16.3 and 2.16.4."; and,

> **WHEREAS**, Section 2.16.4, <u>Violations of Board Policies or Law Outside of Board Meetings</u>, states, "When a violation of a Board policy by a member of the Board is alleged to have occurred outside of a Board meeting, the President or any member of the Board may request that an item be placed on the agenda to consider what sanctions may be appropriate, if any. ... The Board member accused of misconduct shall have an opportunity to present evidence and respond to the allegations made. Formal rules of evidence shall not apply. After consideration of the evidence presented, the Board may take such actions as it may deem appropriate, including but not limited to those described in section C of this policy, other than section 2.16.3, paragraph C.5."

## NOW, THEREFORE, BE IT RESOLVED THAT:

1. The Board of Directors finds that the foregoing recitals are true and correct having reviewed and considered the evidence presented at its meeting of September 9, 2013, afforded an opportunity to Director McPhee to dispute and rebut such evidence, and therefore finds all of the following statements to be true.

2. Director McPhee violated both the FPUD Administrative Code's Ethic Policy and Comprehensive Code of Conduct with regard to disclosure of confidential closed session board proceedings and unauthorized communications with the Marine Corps, as described above.

3. In direct violation of District policies and without authorization from the Board, Director McPhee authored three inaccurate and inflammatory communications to the Commanding General of Marine Corps Base Camp Pendleton, implying that his view and contentions represented the Fallbrook Public Utility District. These communications jeopardize years of good faith negotiations to resolve United States of America v. Fallbrook Public Utility District, et al. litigation to access the only available local water supplies for FPUD customers.

**IN ACCORDANCE WITH THE ADMINISTRATIVE CODE, THE BOARD OF DIRECTORS OF THE FALLBROOK PUBLIC UTILITY DISTRICT HEREBY ORDERS ALL OF THE FOLLOWING:**

1. That Director McPhee is directed to cease and desist from any unauthorized FPUD-related correspondence with the Marine Corps or any other party to such litigation.

2. That Director McPhee shall forfeit all meeting fees until he is in compliance with Section 2.16.6 of the FPUD Administrative code.

3. That in taking the above unauthorized actions, Director McPhee has acted outside of the scope and duties of an FPUD Director. Neither the District nor its Directors and Officers insurance carrier will provide any defense or indemnification for Director McPhee for any proceedings which arise out of Director McPhee's conduct, as described herein.

4. That Director McPhee shall be excluded from all closed sessions that relate to: SMRCUP, Personnel related issues based upon this history of misconduct. In addition, the Board will consider exclusion of Director McPhee from additional closed sessions on a case-by-case basis where McPhee has demonstrated or threatens to undermine the interests of the District and violate the Brown Act by disclosing confidential information.

5. That Director McPhee shall be denied any travel, meals, reimbursement for expenses while carrying out any District business, including but not limited to participation in seminars, conferences, training and other district functions, unless specifically approved by the Board in advance, until the balance of his current term. In addition, Director McPhee will not be allowed to participate in any of the "advanced attendance" items that the board approves on a regular basis.

6. That Director McPhee shall not serve on any standing or ad hoc committees. Director McPhee shall also be further denied the privilege of serving as an alternate to the NCJPA.

7. That the Board directs the General Manager to write to any and all appropriate elected or appointed county, state, federal official(s) to inform them of this action and sanctions imposed upon Director McPhee. This correspondence will include this resolution and other such supporting data as required or requested. These letters shall include, and not be limited to, the following: US Senators Feinstein and Boxer, Congressmen Issa and Hunter, Bureau of Reclamation, Secretary on the Interior, Secretary of the Navy, CNO, Commandant of the Marine Corps, State Senator Anderson, Assemblywoman Waldron, San Diego County Board of Supervisors, State Attorney General, District Attorney Bonnie Dumanis, San Diego County Grand Jury, Commanding General, USMC Base Camp Pendleton, and others as deemed necessary.

**PASSED AND ADOPTED** by the Board of Directors of the Fallbrook Public Utility District at a special meeting of the Board held on the 9th day of September, 2013, by the following vote:

|          |                                    |
|----------|------------------------------------|
| AYES:    | Davies, Gebhart, Hayden, McDougal  |
| NOES:    | None                               |
| ABSTAIN: | None                               |
| ABSENT:  | McPhee                             |

_____

President, Board of Directors

ATTEST:

_____

Secretary, Board of Directors

# EXHIBIT "8"

EXHIBIT "8"

1   William J. Brunick, Esq. (State Bar No. 46289)
2   **BRUNICK, McELHANEY & KENNEDY PLC**
    1839 Commercenter West
3   San Bernardino, California 92408-3303

4   MAILING:
    P.O. Box 13130
5   San Bernardino, California 92423-3130

6   Telephone: (909) 889-8301
7   Facsimile: (909) 388-1889
    E-Mail:  bbrunick@bmblawoffice.com

8   Attorneys for WATERMASTER SANTA MARGARITA RIVER WATERSHED

9

10

11              **UNITED STATES DISTRICT COURT**

12                        **FOR THE**

13                  **SOUTHERN DISTRICT**

14

15   UNITED STATES OF AMERICA,        Civil Action No. 51-cv-01247-GPC-RBB

16          Plaintiff,                **DECLARATION OF CHARLES**
                                       **W. BINDER, P.E., IN SUPPORT**
17                                     **OF WATERMASTER OF THE**
                                       **SANTA MARGARITA RIVER**
18   vs.                               **WATERSHED RESPONSE TO**
                                       **OBJECTION TO ANNUAL**
19                                     **WATERMASTER REPORT FOR**
                                       **WATER YEAR 2011-12 BY**
20   FALLBROOK PUBLIC UTLITY           **ARCHIE D. MCPHEE**
     DISTRICT, *et al.*,
21                                     Date:     November 8, 2013
            Defendants.               Time:     1:30 p.m.
22                                     Dept.:    2D

23

24                                    Hon. Gonzalo P. Curiel

25          I, Charles W. Binder, declare as follows:

26          1.      I am a licensed Professional Engineer in the State of California and

27   President and Principal Engineer of Binder & Associates Consulting, Inc., in

28
     _____

Folsom, California.  A copy of my professional resume is attached as Exhibit "1" to Watermaster of the Santa Margarita River Watershed Response to Objection to Annual Watermaster Report for Water Year 2011-12 by Archie D. McPhee.

2.     Commencing on December 27, 2005, I was appointed Watermaster of the Santa Margarita River Watershed ("SMRW") in this instant action, to administer and enforce the provisions of the Modified Final Judgment and Decree and subsequent instructions and orders of this Court.

3.     On July 23, 2013, I submitted the Annual Watermaster Report for Water Year 2011-12 ("Report") to this Court for posting to the electronic docket, and served a copy of the Report to all individuals listed on the Watermaster Distribution List, as well as interested parties who requested copies.

4.     On August 26, 2013, I received a Notice of Electronic filing of a written objection to the Report by Archie D. McPhee ("McPhee"), dated August 5, 2013.

5.     On December 14, 2011, pursuant to McPhee's request, I met with McPhee to discuss Watermaster operations and the role of the Watermaster in the SMRW as well as various SMRW projects and agreements.

6.     On January 13, 2012, I had a follow-up telephone conversation with McPhee in which I continued to further explain Watermaster operations and to inform McPhee that the Watermaster office was progressing on completing his request for documents.

7.     On January 18, 2012, at McPhee's request, I provided McPhee with twenty-one (21) documents, totaling over 1,200 pages (at no cost to McPhee), related to the establishment and protocols of the Watermaster office, and various Interlocutory Judgments and Orders related to this instant action and the SMRW.
/ / /

2

DECLARATION OF CHARLES W. BINDER, P.E., IN SUPPORT OF WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED RESPONSE TO OBJECTION TO ANNUAL WATERMASTER REPORT FOR WATER YEAR 2011-12 BY ARCHIE D. MCPHEE

8. I am not now, nor have I ever been, an employee of Fallbrook Public Utility District ("FPUD"). I am not now receiving, nor have I ever received, any salary or income from FPUD.

9. I have never been involved in any collusion, conflicts of interest or illegal activities related to my position as the Watermaster.

10. I have never been offered a bribe, or accepted a bribe, by FPUD management officials, or any other member of the Steering Committee, during my tenure as the Watermaster.

I declare, under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Dated: October 17, 2013

By: _Chas W-Bin_____
     Charles W. Binder, P.E.
     WATERMASTER SANTA MARGARITA
     RIVER WATERSHED

3

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA  }**
**COUNTY OF SAN BERNARDINO}**

3

4        I am employed in the County of the San Bernardino, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1839 Commercenter West, San Bernardino, California 92408-3303.

5

6        On October 22, 2013, I served the foregoing document described as: **WATERMASTER OF THE SANTA MARGARITA RIVER WATERSHED RESPONSE TO OBJECTION TO ANNUAL WATERMASTER REPORT FOR WATER YEAR 2011-12 BY ARCHIE D. MCPHEE** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

7

8

**SEE ATTACHED DISTRIBUTION LIST**

9

10    **XX  BY MAIL AS FOLLOWS**: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Bernardino, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

11

12

13

14    _____ BY ELECTRONIC MAIL AS FOLLOWS:  On this date, the aforesaid document was transmitted by electronic mail to the person(s) whose name(s) and e-mail address are listed. The transmission(s) were reported without error.

15

16    _X__  (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

17

18        Executed on October 22, 2013, at San Bernardino, California.

19

20                                                    P. Jo Anne Quihuis

21

22

23

24

25

26

27

28

**WATERMASTER SANTA MARGARITA RIVER WATERSHED
DISTRIBUTION LIST**
*United States of America, Plaintiff vs. Fallbrook Public Utility District, et al.
Civil Action No. 51-cv-01247-GPC-RBB*

Honorable Gonzalo P. Curiel
United States District Court
Southern District of California
221 West Broadway
San Diego, CA  92101

Honorable Ruben B. Brooks
U. S. District Court
Southern District of CA
221 West Broadway
San Diego, CA  92101

Patrick Barry, Esq.
U.S. Dept. of Justice
Environment and Natural Resources Div.
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044-7611

Robert Eben, Superintendent
Bureau of Indian Affairs
U.S. Dept. of Interior
1451 Research Park Drive, #100
Riverside, CA  92507-2154

Doug Garcia
Bureau of Indian Affairs
U.S. Dept. of Interior
2800 Cottage Way
Sacramento, CA  95825

Charles Jachens
Bureau of Indian Affairs
U.S. Dept. of Interior
2800 Cottage Way, Room W-2821
Sacramento, CA  95825

Christina Mokhtarzadeh
Bureau of Indian Affairs
U.S. Dept. of Interior
1451 Research Park Drive, #100
Riverside, CA  92507-2471

Chris Watson
Office of the Solicitor
U. S. Dept. of Interior
1849 C St., N.W. -- M.S. 6513
Washington, D.C.  20240

Noel Ludwig, Hydrologist
CA Desert District
Bureau of Land Management
22835 Calle San Juan de Los Lagos
Moreno Valley, CA  92553

Leslie Cleveland
US Bureau of Reclamation
27708 Jefferson Ave, #202
Temecula, CA  92590

Bill Steele
US Bureau of Reclamation
27708 Jefferson Ave, #202
Temecula, CA  92590

Wesley R. Danskin
USGS
San Diego Projects Office
4165 Spruance Road, Suite 200
San Diego, CA  92101

Scott Patterson
USGS
South Poway Field Office
12110 Tech Center Drive
Poway, CA  92064

Michael T. Wright
USGS
San Diego Projects Office
4165 Spruance Road, Suite 200
San Diego, CA  92101

Anthony Madrigal, Sr.
899 Oakland Hills Drive
Banning, CA 92220-5176

Luther Salgado, Sr., Chairperson
Cahuilla Band of Indians
P. O. Box 391760
Anza, CA  92539

Scott McElroy, Esq.
McElroy, Meyer, Walker & Condon P.C.
1007 Pearl Street, Suite 220
Boulder, CO  80302

Assad Safadi
NRCE
131 Lincoln Avenue, Suite 300
Fort Collins, CO  80524

**Asst. Chief of Staff
Environmental Security
Box 555008
Marine Corps Base
Camp Pendleton, CA  92055-5008**

**Asst. Chief of Staff
Facilities
Box 555013
Marine Corps Base
Camp Pendleton, CA  92055-5013**

**John O. Simpson, Director
Office of Water Resources
Box 555013
Marine Corps Base
Camp Pendleton, CA  92055-5013**

**Dan Bartu
Office of Water Resources
Box 555013
Marine Corps Base
Camp Pendleton, CA  92055-5013**

**Larry Carlson
Office of Water Resources
Box 555013
Marine Corps Base
Camp Pendleton, CA  92055-5013**

**Khalique Khan
Office of Water Resources
Box 555013
Marine Corps Base
Camp Pendleton, CA  92055-5013**

**WATERMASTER SANTA MARGARITA RIVER WATERSHED**
**DISTRIBUTION LIST**
*United States of America, Plaintiff vs. Fallbrook Public Utility District, et al.*
*Civil Action No. 51-cv-01247-GPC-RBB*

**Counsel Western Bases**
**Box 555231**
**Marine Corps Base - Bldg. 1254**
**Camp Pendleton, CA  92055-5231**

**Paul R. Boughman, Esq.**
**Western Area Counsel Office**
**Box 555231**
**Marine Corps Base, Bldg. 1254**
**Camp Pendleton, CA  92055-5231**

**Michael E. McPherson, Esq.**
**344 Plumosa Avenue**
**Vista, CA  92083**

**David Depoy**
**Office of Water Resources**
**Box 555013**
**Marine Corps Base**
**Camp Pendleton, CA  92055-5013**

**Kyle R. Cook**
**Environmental Security, Building 22165**
**Box 555008**
**Marine Corps Base**
**Camp Pendleton, CA 92055-5008**

**Mark Bonsavage**
**Environmental Security**
**Box 555008**
**Marine Corps Base**
**Camp Pendleton, CA  92055-5008**

David Glazer, Esq.
US DOJ Env & Nat Res Division
Natural Resources Section
301 Howard Street, Suite 1050
San Francisco, CA  94105

Stetson Engineers, Inc.
2171 E. Francisco Blvd., Suite K
San Rafael, CA  94901

Stephen B. Reich
Stetson Engineers, Inc.
2171 E. Francisco Blvd., Suite K
San Rafael, CA  94901

Molly Palmer
Stetson Engineers, Inc.
2171 E. Francisco Blvd., Suite K
San Rafael, CA  94901

Paul D. Jones, II, General Manager
Eastern MWD
P.O. Box 8300
Perris, CA  92572-8300

Mike Luker
Eastern MWD
P. O. Box 8300
Perris, CA  92572-8300

Nancy Swiatly
Eastern MWD
P. O. Box 8300
Perris, CA  92572-8300

Khos Ghaderi
Eastern MWD
P. O. Box 8300
Perris, CA  92572-8300

Zandro Mallari
Eastern MWD
P. O. Box 8300
Perris, CA  92572-8300

Steven P. O'Neill, Esq.
Lemieux & O'Neill
4165 E. Thousand Oaks Blvd.
Suite 350
Westlake Village, CA  91362

General Manager
Elsinore Valley MWD
P.O. Box 3000
Lake Elsinore, CA  92530

Archie McPhee
Board of Directors
Fallbrook Public Utility District
40482 Gavilan Mountain Road
Fallbrook, CA  92028

Dr. Brian J. Brady, General Manager
Fallbrook Public Utility District
P. O. Box 2290
Fallbrook, CA  92088

Jack Bebee
Fallbrook Public Utility District
P. O. Box 2290
Fallbrook, CA  92088

Jeff Marchand
Fallbrook Public Utility District
P. O. Box 2290
Fallbrook, CA  92088

Robert H. James, Esq.
Sachse, James, & Lopardo
205 W. Alvarado
Fallbrook, CA  92028

Martha H. Lennihan, Esq.
Lennihan Law
1661 Garden Highway, #102
Sacramento, CA  95833

Joseph Vanderhorst, Esq.
Deputy General Counsel
Metropolitan Water District
P. O. Box 54153
Los Angeles, CA  90054-0153

Amy Gallaher
Metropolitan Water District
Diamond Valley Lake, Field Office
33752 Newport Road
Winchester, CA  92596

Darwin Potter
Metropolitan Water District
Skinner Branch
33740 Borel Road
Winchester, CA  92596

Michael J. Lopez
Metropolitan Water District
33740 Borel Road
Winchester, CA  92596

## WATERMASTER SANTA MARGARITA RIVER WATERSHED
## DISTRIBUTION LIST
### *United States of America, Plaintiff vs. Fallbrook Public Utility District, et al.*
### *Civil Action No. 51-cv-01247-GPC-RBB*

John Mora, Director
Pechanga Water Systems
Pechanga Band of Luiseño Indians
P. O. Box 1477
Temecula, CA  92593

Andrew Masiel, Sr.
Pechanga Tribal Council
Pechanga Band of Luiseño Indians
P. O. Box 1477
Temecula, CA  92593

Benjamin Vasquez
Pechanga Tribal Council
Pechanga Band of Luiseño Indians
P. O. Box 1477
Temecula, CA  92593

Pechanga Tribal Spokesperson
Pechanga Band of Luiseño Indians
P. O. Box 1477
Temecula, CA  92593

Rick Briones
Pechanga Water Systems
Pechanga Band of Luiseño Indians
P. O. Box 1477
Temecula, CA  92593

John Macarro, General Counsel
Pechanga Band of Luiseño Indians
Government Center
P. O. Box 1477
Temecula, CA  92593

Michael-Corey Hinton, Esq.
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Ave., N.W.
Washington, D.C.  20036-1564

Donald R. Pongrace, Esq.
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036-1564

John A. Karaczynski, Esq.
Akin Gump Strauss Hauer & Feld LLP
2029 Century Park East, Suite 2400
Los Angeles, CA  90067-3012

Rodney B. Lewis, Esq.
Akin Gump Strauss Hauer & Feld LLP
4035 E. Cathedral Rock Drive
Phoenix, AZ  85044

James Meggesto, Esq.
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Ave., N.W.
Washington, D.C.  20036-1564

Katherine A. Brossy, Esq.
Akin Gump Straus Hauer & Feld LLP
1333 New Hampshire Ave., N.W.
Washington, D.C.  20036-1564

Eugene Franzoy
Franzoy Consulting, Inc.
8141 West Gelding Drive
Peoria, AZ 85381

Steve Larson
S.S. Papadopulos & Associates, Inc.
7944 Wisconsin Avenue
Bethesda, MD  20814-3620

General Manager
Rainbow MWD
3707 Old Highway 395
Fallbrook, CA  92088-9372

Dennis Sanford, Board of
Directors – Rainbow MWD
1493 Via Ladera
Rainbow, CA  92028

Mr. Joseph D. Hamilton, Tribal Chm.
Ramona Band of Cahuilla Indians
P. O. Box 391670
Anza, CA  92539

Manual Hamilton, Vice Chairman
Ramona Band of Cahuilla Indians
P. O. Box 391372
Anza, CA  92539

Curtis Berkey, Esq.
Berkey Williams LLP
2030 Addison Street, Suite 410
Berkley, CA  94704

Mark Shaffer
6837 NE New Brooklyn Road
Bainbridge Island, WA  98110

General Manager
Rancho Cal RV Resort OA
P. O. Box 214
Aguanga, CA  92536

Matt Stone, General Manager
Rancho California Water District
P.O. Box 9017
Temecula, CA  92589-9017

Richard S. Williamson
Rancho California Water District
P. O. Box 9017
Temecula, CA  92589-9017

Craig Elitharp
Rancho California Water District
P. O. Box 9017
Temecula, CA  92589-9017

Andy Webster
Rancho California Water District
P. O. Box 9017
Temecula, CA  92589-9017

James B. Gilpin, Esq.
Best, Best & Krieger
655 West Broadway, 15th Floor
San Diego, CA  92101-8493

Roxanne Nagel
Kennedy Jenks
143 Union Blvd. Suite 600
Lakewood, CO  80228

**WATERMASTER SANTA MARGARITA RIVER WATERSHED**
**DISTRIBUTION LIST**
*United States of America, Plaintiff vs. Fallbrook Public Utility District, et al.*
*Civil Action No. 51-cv-01247-GPC-RBB*

Dr. Dennis Williams
GEOSCIENCE Support Services Inc.
P. O. Box 220
Claremont, CA 91711

Director
Riverside Co. Planning
4080 Lemon Street, 9th Floor
Riverside, CA 92501

Linda Garcia
Riverside Co. Flood Control
1995 Market Street
Riverside, CA 92501

Todd Shibata
Riverside County Waste Mgmt
14310 Frederick Street
Moreno Valley, CA 92553

Jack Easton
Riverside Land Conservancy
4075 Mission Inn Avenue
Riverside, CA 92501

Pamela Walls, Esq.
Deputy County Counsel
County of Riverside
Office of County Counsel
3960 Orange Street, Suite 500
Riverside, CA 92501

Raymond M. Mistica, Esq.
Deputy County Counsel
County of Riverside
Office of County Counsel
3960 Orange Street, Suite 500
Riverside, CA 92501

John Rossi, General Manager
Western MWD
14205 Meridian Parkway
Riverside, CA 92518

Tim Barr
Western MWD
14205 Meridian Parkway
Riverside, CA 92518

Brenda Meyer
Western MWD
14205 Meridian Parkway
Riverside, CA 92518

Joseph Lomeli
Western MWD
14205 Meridian Parkway
Riverside, CA 92518

Brenda Dennstedt
Board of Directors
Western MWD
14205 Meridian Parkway
Riverside, CA 92518

Fakhri Manghi
Western MWD
14205 Meridian Parkway
Riverside, CA 92518

Jill Willis, Esq.
Best Best & Krieger
300 S. Grand Ave. 25th Floor
Los Angeles, CA 90071

Renee Konstantine
Graduate Programs &
Field Stations Coordinator
San Diego State University, Biology Dept.
5500 Campanile Dr., LS-104
San Diego, CA 92182-4614

Marilyn Levin, Deputy Atty. Gen.
State of California
Office of the Attorney General
300 South Spring Street, #1702
Los Angeles, CA 90013

Timothy Ross
Chief, Groundwater Section
CA Department of Water Resources
770 Fairmont Avenue, Suite 102
Glendale, CA 91203-1035

Bob Pierotti, Chief
Resources Assessment Branch
CA Department of Water Resources
770 Fairmont Avenue, Suite 102
Glendale, CA 91203-1035

Kelly Lawler
CA Department of Water Resources
770 Fairmont Avenue, Suite 102
Glendale, CA 91203-1035

John O'Hagen
CA State Water Res. Control Board
Division of Water Rights
P.O. Box 2000
Sacramento, CA 95812

Bob Rinker
CA State Water Res. Control Board
Division of Water Rights
P.O. Box 2000
Sacramento, CA 95812

Agri-Empire, Inc.
P. O. Box 490
San Jacinto, CA 92383

Robert A. Davis, Jr., Esq.
Davis & Wojcik
1001 East Morton Place, Suite A
Hemet, CA 92543

Larry Minor
P.O. Box 398
San Jacinto, CA 92581

James P. Bryson, P.G.
ARCADIS U.S., Inc.
320 Commerce, Suite 200
Irvine, CA 92602

AVMAC
Attn: Secretary
P. O. Box 391076
Anza, CA 92539-0908

Elsa Barton
217 No. Palm
Hemet, CA 92543

**WATERMASTER SANTA MARGARITA RIVER WATERSHED**
**DISTRIBUTION LIST**
*United States of America, Plaintiff vs. Fallbrook Public Utility District, et al.*
*Civil Action No. 51-cv-01247-GPC-RBB*

Barbara Booth
3883 Ridgemoor Drive
Studio City, CA  91604

Gregory B. Burnett
P.O. Box 391111
Anza, CA  92539

Mr. James A. Carter
Wild Horse Peak Vineyard Mountain
3719 South Plaza Drive
Santa Ana, CA  92704

Ruth E. Cyriacks
P.O. Box 2024
Oakhurst, CA  93644-2024

Cindy and Andy Domenigoni
31851 Winchester Road
Winchester, CA  92596

Francis & Jean Domenigoni  Trust
Domenigoni-Barton Properties; and
Domenigoni Brothers Ranch
33011 Holland Road
Winchester, CA  92596

Michelle Staples, Esq.
Jackson, DeMarco & Peckenpaugh
2030 Main Street, Suite 1200
Irvine, CA  92614

Roger Doverspike
41919 Moreno Road, Suite F
Temecula, CA  92590

EMARCD
21535 Palomar St., Suite A
Wildomar, CA  92595

John R. Flocken, Esq.
Greenwald & Hoffman, LLP
1851 E. First Street, Suite 860
Santa Ana, CA  92705-4039

Randy Greenwald
6010 Wilshire Blvd. #500
Los Angeles, CA  90036

Les Harris
44700 Sage Road – H
Aguanga, CA  92536

Jeffrey A. Hoskinson, Esq.
Bowie, Arneson, Wiles & Giannone
4920 Campus Drive
Newport Beach, CA  92660

Nobuo Kamata
C/O Richard Woo
Soliton Tech
2635 N. First Street, Suite 213
San Jose, CA  95134

Art Kidman
Kidman Law, LLP
2030 Main Street, Suite 1300
Irvine, CA  92614

Flavia Kreig
P.O. Box 716
Aguanga, CA  92536

Robert A. Krieger
Krieger & Stewart
3602 University Avenue
Riverside, CA  92501

Gordon Lanik
P.O. Box 291273
Anza, CA  92539

Duane Larson
Hawthorn Water System
40058 Temple Court
Murrieta, CA  92563

Bob Lemons
31040 Avenida Buena Suerte
Temecula, CA  92591

Louidar
1632 Colina Vista
Fallbrook, CA  92028

James Markman, Esq.
Richards, Watson & Gershon
P.O. Box 1059
Brea, CA  92822-1059

Richard & Christine McMillan
Gary & Patricia McMillan
McMillan Farm Management
29379 Rancho California Rd, # 201
Temecula, CA  92591-5210

Larry McKenney
88 Meridian Drive
Aliso Viejo, CA  92656

Frank C. Miller
Jane Grabowski-Miller
930 Cornell Court
Madison, WI  53705

Mr. and Mrs. Alfred Mori
1936 Mancha Way
Monterey Park, CA  91755

Nicole Rowan, P.E., D.WRE
Camp Dresser & McKee, Inc.
555 17th Street, Suite 1100
Denver, CO  80202

**WATERMASTER SANTA MARGARITA RIVER WATERSHED**
**DISTRIBUTION LIST**
*United States of America, Plaintiff vs. Fallbrook Public Utility District, et al.*
*Civil Action No. 51-cv-01247-GPC-RBB*

Mr. Herb Smith
42545 Kalmia Street
Murrieta, CA 92562

Anna Gale James
40275 Curry Court
Aguanga, CA 92536

Archie D. McPhee
40482 Gavilan Mountain Road
Fallbrook, CA 92028

Briar McTaggart
1642 Merion Way 40E
Seal Beach, CA 90740

Carl Gage
40685 Tumbleweed Trail
Aguanga, CA 92536

Carol Lueras
623 Beverly Blvd.
Fullerton, CA 96833

Carolyn Ellison
49975 Indian Rock
Aguanga, CA 92536

Diane Mannschreck
1600 Kiowa Ave
Lake Havasu City, AZ 86403

Donna Gage
40685 Tumbleweed Trail
Aguanga, CA 92536

Edward Lueras
623 Beverly Blvd.
Fullerton, CA 96833

James L. Markman
Richards Watson & Gershon
1 Civic Center Circle
PO Box 1059
Brea, CA 92822-1059

John Ellison
49975 Indian Rock
Aguanga, CA 92536

John S Wilson
14205 Minorca Cove
Del Mar, CA 92014-2932

Khyber Courchesne
1264 Page Street
San Francisco, CA 94117

Marianne E Pajot
40225 Curry Court
Aguanga, CA 92536

Mary E Lee
42010 Rolling Hills Drive
Aguanga, CA 92536

Michael J Machado
P O Box 391607
Anza, CA 92539

Pamela M Machado
P O Box 391607
Anza, CA 92539

Peggy Wilson
14205 Minorca Cove
Del Mar, CA 92014-2932

Robert Mannschreck
1600 Kiowa Ave
Lake Havasu City, AZ 86403

Thomas C Perkins
7037 Gaskin Place
Riverside, CA 92506