FILED
Nov 15 2016
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   s/ darcig   DEPUTY

November 8, 2016

Honorable Gonzalo P. Curiel
United States District Court
Southern District of California
221 West Broadway, Suite 2190
San Diego, CA 92101

Honorable Ruben B. Brooks
United States District Court
Southern District of California
221 West Broadway, Suite 2160
San Diego, CA 92101

WATERMASTER
Santa Margarita River Watershed
P.O. Box 631
Fallbrook, CA 92088

Re:  *U.S.A. v. Fallbrook Public Utility District, et* al., Civil No. 51-cv-1247-GPC-RBB
     Final Annual Watermaster Report for Water Year 2014-2015

Dear Honorable Judges and Watermaster:

I strongly object to the proposed "final" annual Watermaster report (2014-2015) edition as printed and received in October, for several critical reasons.

I have lived in my current home (which I built new) since 2004 located in the sub-Anza water basin up in the town of Anza on 5 acres with my horses and dogs. I require water to live, to provide for my animals, and to grow food.  (look it up for quote -1 million gallons a year""""). While not a judge or attorney, I do practice residential real estate sales on a full time, career basis, within our local Anza area.

I am constantly hounded by people about ...the water, about the Indian law suit.  Both the disinformation as well as the lack of information is remarkable to say the least for people coming into our Valley.   Years ago, this was already out of hand so we created a Realtor® Board approved disclosure form  (included/attached).  Good, bad or indifferent, at least we have tried to minimally help the residents within the Watershed by providing some basic information.  Why is the Watermaster not doing this also?

1

Without any doubt to the reader of the report – the hugest clause or set of words contained in the entire document is Section 2, 2.1 Background wherein the Watermaster states that the April 6th, 1966 Modified Final Judgement and Decree provided that the Court:

> . . . retains continuing jurisdiction of this cause as to the use of all surface waters within the watershed of the Santa Margarita River and all underground or sub-surface waters within the watershed of the Santa Margarita River, which are determined in any of the constituent parts of this Modified Final Judgment to be a part of the sub-surface flow of any specific river or creek, or which are determined in any of the constituent parts of this Modified Final Judgment to add to, contribute to, or support the Santa Margarita River stream system.

BUT – there is NO explanation of what this HUGE statement means!

People want to know some simple stuff. In fact,

> In March 1989, the Court issued an Order appointing the Watermaster to administer and enforce the provisions of the Modified Final Judgment and Decree and subsequent orders of the Court. The appointing Order described the Watermaster's powers and duties as well as procedures for funding and operating the Watermaster's

The Watermaster has failed to administer and enforce the provision as per above.

1. Development and growth has dramatically occurred within the 722 square miles of the watershed since 1966. But up in different parts of the watershed, the court considers its jurisdiction means no development/no water supply permits – no one understands the rules. True the basin has not been "quantified", but this reasoning apparently has not applied to all those who have in fact established new water uses in the watershed since 1966.

2. The Watermaster DOES get into the weeds over other situations that are not even as compelling as ours up in Anza, i.e. Section 5.5 (as one example)

> Although all surface waters within the Santa Margarita River Watershed in Domenigoni Valley and Diamond Valley are subject to the continuing jurisdiction of the Court, groundwater contained within the alluvium, north of the south line of Section 9, Township 6 South, Range 2 West, SBM is not considered by the Court to be a part of the Santa Margarita River system as long as groundwater levels are below an elevation of 1400 feet. During 2014-15, groundwater elevations in Well MO-6, which is located along the south line of Section 9, rose 4.5 feet from 1,366.2 feet at the beginning of the water year to 1,370.7 feet on October 2, 2015.

With this reporting above, it appears that the Court has stated what waters are in or out, has determined the 1,400 ft level, (which to a degree "quantifies the referred to rights").

2

So who gets this assistance and guidance and who does not? Why cannot the Watermaster issue guidelines for all of us, to be applied as whatever general rule of thumb the Watermaster so determines?

3. The Watermaster is ordered by the court to administrate – the provisions... Where is the evidence within the report of this administration. There are a hundred pages of water use description, there are pages describing quasi-public/private and quasi-governmental agencies and water organizations within the watershed, and their activities – but where is the administration effort and results?

We see no rulings or new determinations since 1966. We can agree and understand that the Watermaster is so ordered to administrate the watershed based solely (as of today) on the findings of the last final decree, so be it. But, nothing is happening – this is pure negligence.

- How much water can people use?

- When can they use it?

- Do they have to ask someone for permission to use water?

- Can they get a piece of paper saying they can use water?

- Is the water going to be metered

- Can the court come up to my property and tell me what to do with my water?

- Anza is being over run by illegal, commercial grows of marijuana on vacant land (no housing) and the well permits are being allowed and issued. What is the Watermaster doing to prevent this illegal use of water?

- How does a landowner know the boundaries, restrictions, uses of the jurisdictional waters if he will not so report? Just what information has the Watermaster included in the report that address basic rules and principles of the court" "jurisdiction"?

If the Court has not issued one citation or court order to cease and desist within the Santa Margarita Watershed since 1966 – then by definition the Watermaster and Court are not administrating anything – where is that in the report?

I have a huge problem with the 100% lack of jurisdictional description by the Watermaster. The only fact based statement a reader can assume to use is – the Santa Margarita River Watershed, as an answer. The Court and Watermaster have already noted exceptions to the jurisdiction. It is obvious building and development occurs within the watershed. The court and Watermaster have reported within this report that certain ground waters are not contributing to the Watershed are not part of this "jurisdiction".

Since the Court can describe what their jurisdiction "is", then the court can certainly describe what it is "not". But we do not get to read any of this in the report, or truly the Court does not know? To administrate a watershed, this would require at a minimum to describe the watershed to begin with.

3

Certainly after 55 years, the Watermaster should being doing this and explain why some people who appear to be in the watershed can receive water permits and then why others are denied. Just exactly what are the rules?

The Watermaster report is incorrect in that it states and reviews all the types of water rights that exist within the watershed. In fact, it states many different user's rights, such as Ramona: (page 77)

> Order No. 1 in Interlocutory Judgment No. 41 specifies for the Ramona Indian Reservation the following:
>
>> IT IS ORDERED, ADJUDGED AND DECREED that the United States of America when it established the Ramona Indian Reservation intended to reserve and did reserve rights to the use of waters of the Santa Margarita River stream system which under natural conditions would be physically available on the Ramona Reservation, including rights to the use of ground waters, sufficient for the present and future needs of the Indians residing thereon with a priority date of December 29, 1891.

The Watermaster has failed to acknowledge the existence of routine and normal federal water rights associated to federal lands sold to private landowners within the watershed, prior to the December 21, 1981 priority date of Ramona. These deeded water rights would be superior to either Ramona or the Court's jurisdiction as they exist prior to 1891.

Lastly, even with mass misunderstanding and confusion, the Watermaster has the authority and scope to guide and inform people within the watershed as to manner in which the court's jurisdiction operates. Since the report is void of any reference to defining, explaining, conditioning the words... "the court maintains jurisdiction over the cause...." the report is simply incomplete – to the detriment of the taxpaying citizens within the watershed (who help fund and/or subsidize the costs of the production of said report as ordered by the court).

When is a water user forced to hire formal counsel and litigate its rights – as the court has offered to do (explained within the report) – or is there a system whereby the court can assist water users to make determinations? Just exactly how is the court and Watermaster managing this administrative responsibility? Again, the report is incomplete in this regard.

Sincerely,

*Cindy Barker*

Cindy L. Barker
37060 Bonita Vista Rd.
Anza, CA 92539   (APN: 573-080-049)
818 621 7700

# Water Rights Litigation Disclosure

# For Real Property located within the Santa Margarita Watershed

This disclosure is provided to real estate sellers, real estate buyers as well as the public on a best efforts possible basis to better serve the public and keep the real estate community informed with regards to water rights litigation.

There is active, ongoing water rights litigation involving the case known as United States of America, Ramona Band of Cahuilla and Cahuilla Band of Indians v. Fallbrook Public Utility District, et al., Civ. No. 1247-SD-C. It is being heard by the Unites States Court for the Southern District of California. This water rights litigation involves decades of legal activity, is currently active and ongoing, and is considered complex in terms of all the laws and issues involved.

THIS DISCLOSURE STATEMENT CONCERNS THE REAL PROPERTY SITUATED IN RIVERSIDE COUNTY, CALIFORNIA DESCRIBED AS:

_____

THIS DISCLOSURE IS NOT A WARRANTY OF ANY KIND BY THE SELLER(S) OR ANY AGENT(S) REPRESENTING ANY PRINCIPAL(S) IN THIS TRANSACTION. THE INFORMATION HEREIN IS A DISCLOSURE AND IS NOT INTENDED TO BE ANY CONTRACT BETWEEN BUYER AND SELLER.

The Cahuilla Band of Indians has asked the United States Federal Court to quantify their water rights within their rights of a federal reserve water right as it pertains to their reservations. Also Cahuilla Band of Indians also asked non-Indian water users to be enjoined from unlawful impairment of their water rights.

All issues over this water litigation are based on water supplies within the Santa Margarita Watershed System in Riverside and San Diego Counties, California. The date when this litigation could become finalized is unknown.

Further, as the Owner(s) and Seller(s) of the above described property, I/we disclose that either:

_____ To the best of my knowledge, as the owner of the property herein, I have been served notice of legal actions by the Cahuilla Bands, and I am a potential defendant.

or,

_____ To the best of my knowledge, while I could possibly be a defendant or party to the above referenced case, I have not been served notice of legal action.

| _____ | _____ | _____ |
|---|---|---|
| Date | Seller | Seller |

**THE BUYER IS URGED TO SEEK LEGAL ADVICE FROM AN ATTORNEY FAMILIAR WITH REAL ESTATE LAW TO DETERMINE THE IMPACT OF THIS LITIGATION UPON THE BUYER. FURTHERMORE, THE BUYER(S) HEREIN ACKNOWLEGE THAT REAL ESTATE COMPANIES, REAL ESTATE BROKERS AND AGENTS ARE NOT LICENSED TO PRACTICE LAW, CANNOT GIVE LEGAL ADVICE AND CANNOT ADVISE ANY PARTY TO THIS TRANSACTION AS TO THE STATUS, RISK, OR OUTCOME OF THE REFERENCED WATER RIGHTS LITIGATION INCLUDING ANY IMPACT TODAY OR IN THE FUTURE AS TO YOUR RIGHTS TO WATER ON OR BELOW THE REAL PROPERTY REPRESENTED HEREIN BY YOUR INTENDED PURCHASE. FOR ADVICE OF THIS MATTER, YOU ARE ADVISED TO SEEK LEGAL COUNSEL**

Buyer Acknowledges receipt of this Water Rights Litigation Disclosure:

| _____ | _____ | _____ |
|---|---|---|
| **Date** | **Buyer** | **Buyer** |

Listing Agent: _____Date _____

Selling Agent: _____ Date _____

Cindy Barker
First Real Estate Service
P.O. Box 391111
Anza, CA 92539



7016 0340 0000 1200 0819

U.S.A. v. Fallbrook Public Utility District, et al.,
Civil No. 51-cv-1247-GPC-RBB

Honorable Gonzalo P. Curiel
United States District Court
Southern District of California
221 West Broadway, Ste 2190
San Diego CA 92101-8974

