December 14, 2016

Honorable Gonzalo P. Curiel
United States District Court          NUNC PRO TUNC
Southern District of California           12/23/16
221 West Broadway, Suite 2190
San Diego, CA 92101

FILED
Jan 03 2017
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ darcig    DEPUTY

Honorable Ruben B. Brooks
United States District Court
Southern District of California
221 West Broadway, Suite 2160
San Diego, CA 92101

WATERMASTER
Santa Margarita River Watershed
P.O. Box 631
Fallbrook, CA 92088

Re: *U.S.A. v. Fallbrook Public Utility District, et* al., Civil No. 51-cv-1247-GPC-RBB
Final Annual Watermaster Report for Water Year 2014-2015


**FORMAL COMMENT TO WATERMASTER RESPONSE - 12/08/2016, Docket No. 5554**


**General Conclusion:**

The Watermaster response to Objection filed on November 17, 2016 is both, in approach and by design, dismissive while overtly avoiding the issues raised in the Objection. The pages and pages of biographical information, business and livelihood information as well as voluminous writings as to what I personally may have done or think about the *USA v. Fallbrook* case, is overwhelming. Overwhelming, as all of it combined has NOTHING to do with the Objections or the merit of the Objections which is the issue in front of the Court.

Discussing my marital status (incorrectly, for the record, as I am unmarried) in the Response is another example of the sheer reluctance of the Watermaster to address the Objection in focused detail. Instead the Response provides hyperbolic, personal and individual data about myself and others as if somehow the people who wrote the Objection is at issue. **How does this Response serve the Annual Water report required of the Watermaster?** A professional response was expected, not a personal response.

1

I am a Santa Margarita River Watershed landowner, I am a property taxpayer and I am a United States citizen that deserves the right to input and inclusion with regard to the Annual Water report. If the Watermaster wants to accept that a taxpaying citizen owning land within the Santa Margarita River Watershed should not be given the full credit and respect due any other entity, the Court will have lowered the bar, that valid, existing stakeholders would in effect be ignored by the Watermaster.

### FOUR (4) SPECIFIC, FOCUSED OBJECTIONS WITH WATERMASTER RESPONSE:

**1. OMISSION #1 - Refusal to recognize pre-reservation, non-Indian rights**

Page 2, line 27/28, the Watermaster writes in the Response.... *"in which the Court retains continuing jurisdiction"*. The Watermaster is writing something that is misleading. The statement or representation by the Watermaster that the Court has "continuing jurisdiction over the Santa Margarita River Watershed waters" is **100% incorrect**. Given the Watermaster's vast experience and education, certainly the Watermaster is informed of existing legal water rights established prior to the formation of reservations by the United States of America. This should otherwise state – *"the Court maintains jurisdiction over certain parcels (not all) of the Santa Margarita Watershed"*.

DOCUMENT IN SUPPORT: Enclosed, for the benefit of all, are the results of a property search using the Watermaster's description of real property referred to as my Anza property. (Response - Page 2, lines 21 & 25). The Watermaster's physical description of the property is correct. The first two entries on the page for TWP 7S, RNG 3E, Section 5 are highlighted. More importantly, at the very top of this report from the BLM, or any chain of title report, **it records a priority date for these lands as 1866.** This is an **example** of a pre-Tribal reservation, non-Indian real estate title prior to any Indian property rights via the reservation system.

As a taxpaying landowner, this **OMISSION by the Watermaster -** that within the Santa Margarita River Watershed, titled, federal lands existed and exists before the United States formed the Ramona Reservation (1893) - is extremely unacceptable, for all stakeholders within the Watershed. This intentional omission of landowners who have pre-Indian reservation rights is **prejudicial**. Why? BECAUSE this omission violates proper disclosure and prevents/denies acknowledgement of a group of stakeholders that "as a class of real property owners", have real property rights which are senior to Tribal Indian rights.

In fact, with abject refusal, NO WHERE in the Annual Water report does the Watermaster reference or mention the group of stakeholders that have pre-reservation priority dates – while at the same time – explaining in the Annual Report that the Watermaster has described all sources of

2

water rights (supposedly/otherwise). The Watermaster is appropriately acknowledged as an experienced professional and the final authority regarding the administration of the Santa Margarita River Watershed/USA v. Fallbrook. HOW, or more importantly, WHY, does the Watermaster not disclose the obvious, historical, legal, pre-reservation real property rights held by non-Indians?

The Honorable Court is so informed of this omission.


## 2. OMMISSION #2 – Conflicts of Interest and lack of administrative representation by Watermaster

Page 10, beginning line 8 (Response - 2. Barker Objection) A serious, relevant conflict of interest has not been disclosed within the Annual Report. The Watermaster serves with the STEERING COMMITTEE, and the STEERING COMMITTEE is requested to review and approve the Watermaster's Annual Water report.

The current, Honorable **Chairperson** of the STEERING COMMITTEE is a welcomed Pechanga Tribal member. With absolutely nothing but impunity and only words of respect and fellowship for any specific, individual, Pechanga Tribal member; the obvious fact of the cultural, economic and legal relationships between Pechanga, Cahuilla and Ramona, as well as the **obvious fact of all three Indian Tribes participating** (as Plaintiffs) within *USA v. FALLBROOK*, should, at minimum, be disclosed to all as a conflict. As conflicts go, the Watermaster should be asked to address the conflict and consider whether any Tribal member should be professionally recused from any involvement or review of the Annual Watermaster report.

Watermaster explains to us in the Response that members of the Steering Committee represents water boards and/or water districts. NONE of these water board or water districts receives funds or service fees from stakeholders in the upper portion of the Watershed. These agencies provide no services to thousands of landowners in the upper Watershed. Yet, the Steering Committee members are also, apparently, the only people who pay for the Watermaster. There is no representation within the Steering Committee for thousands of stakeholders in the upper portion of the Watershed. It is understood the Court has explained a purpose of the Steering Committee is to be representative and inclusive to stakeholders. At minimum, a disclosure that all Watershed landowners are represented by members of the STEERING COMMITTEE – except the self-sustaining landowners in the Upper portion of the Watershed, is warranted. Accordingly, the Watermaster can address how and when the interests of these unrepresented landowners are considered by the Watermaster with its assigned administrative duties and responsibilities.

3

### 3. Pink Elephant #1 – Watermaster misstates water danger to non-Indians, omits ongoing damages

Watermaster writes (page 7, line 9 of his Response), *"The development of real estate has become problematic in light of the County of Riverside and the State of California's interpretation of the Technical, Managerial and Financial ("TMF") Assessment process imposed by the Safe Drinking Act of 1996 and the Tribes Second Amended Complaints-In-Intervention which could potentially affect ground water production in the Anza Basin".*

*"Problematic"* could not be a poorer choice of words. How about these words:

The development of real estate within the upper portion of the Santa Margarita River Watershed, including communities such as Anza, Lake Riverside Estates and Aguanga **(involving thousands of people)** has ceased – for years. All types of various jurisdictions have now had their attention raised by activity and reporting from the Watermaster. Due to new focus on this issue, other jurisdictional parties have stopped issuing development permits. Land owning citizens within the Watershed are being denied use of water they have proven rights to. And why…..?

BECAUSE the Watermaster writes things like," ….*the Tribes Second Amended Complaints-In-Intervention which could potentially affect groundwater production in the Anza Basin"*. This is the pink elephant in the room. This statement is like a big, huge, legal, red flag warning.

The Watermaster does not write things like:

What is referred to "on the street" as the Indian lawsuit, otherwise known as Intervenors - Ramona within **USA v. Fallbrook,** has not been litigated within the Court and there is no process or Court determination, at this time, to represent any claims from the Indian lawsuit are either valid or invalid.

It is statements within the Annual Water report and pro-Indian differential treatment that has now economically damaged people and families in the Anza basin. 1) Property values have been held below market because of these unproven claims over real property rights conflicts. 2) An unproductive and untimely "cloud" over certain titled real property now circulates throughout numerous jurisdictions. 3) Real property rights have been taken or at least postponed indefinitely. Damaging non-Indian lives in the Anza basin due to economic prejudice and one sided warnings within the Annual Water report is more than "problematic".

The Court is so informed.

Is the Watermaster an attorney? Does he make a legal warning, i.e. *."could potentially impact Anza groundwater"?* He further underlines this cause with continual reference to *"ongoing litigation"* (as if there was indeed court litigation ongoing). There is NO ongoing litigation, but instead – a court ordered stay. Plaintiffs–in-Intervention have not provided the Court or the Watermaster one page of evidence as to their claims, one page of case law litigation in almost 10

years.  But the Watermaster wants <u>everyone to know</u> about the "ongoing litigation" - **that does not exist**.  The proposed Defendants, have not been allowed to litigate and have not yet presented the Court one page of defense against the Ramona and its attempts to enjoin non-Indian water users.  Why is this not appropriately reviewed in the Annual Water report instead of comments and official analysis that come across like threats and pro-Tribal prejudice from the Watermaster?

How about these words (re: *Fallbrook* case litigation):

- The USA v. Fallbrook case (1951) is currently (2016) "in stay" as ordered by the District Court.
- Accordingly, there is no ongoing litigation activity occuring before the Court.
- Accordingly, no evidence regarding any litigation brought forward by the Indian Tribes has been presented or heard by the Court and the Court has made no new determinations since 1966.
- No defense by Defendants of Tribal Indian claims has been heard or considered by the Court.
- Since 1951, with the advent of the USA v. Fallbrook case, the Federal Court has issued NO order or inunction regarding any water use, regarless of type – commercial, industrial, residential,  to any water user in the Anza water basin.

This type of fact sharing truth is something the Watermaster seems unwilling to do, but othjerwise is relevant, pertinent information for all to understand.


**4. Pink elephant #2 – Watermaster creates and tells a story.**


On page 7, line 15, the Watermaster writes:

*"The inability of the parties to resolve the ongoing litigation and the inability of the Watermaster to quantify and certify the water rights of Burnett, Barker and Garrison under the TMF Assessment process seem to be the primary reason for filing three objections (Docket No.s 5544, 5545, and 5546) rather than substanitve flaws related to Watermaster report".*

The Watermaster has informed the Court as to the "real" motivation and reasoning behind people's "behavior" in filing an Objection.  The presentation and reference to his theory is highly personal and prejudical – not worthy of inclusion in a "Response" by any Federal Watermaster.

No reference to or mention of these Technical, Managerial and Financial Assessment issues, the activity of the CSWRB, the Clean Water Act of 1966, the Tribes Second Amended Complaints-In-Intervention occurred in the Objection.  Why and what is the Watermaster referring to?
Because the Watermaster has treaded into the territory of why an Objection was filed, a brief, accurate answer is provided.

5

It is represented to the Honorable Court and to the Watermaster, the motivation and purpose of the Objection is to stop and further prevent the approval and publication of inaccurate, misleading, and prejudical information contained within the written report – as well as to note critical OMISSIONS that are not contained within the report. All Watershed citizens have the right to accurate and critically pertinent information that impacts all water users with the Watershed.

**Is the Court really going to accept important, official work from its Watermaster who then writes heresay, self invented, inaccurate details about people who object to his report?**

The Watermaster concludes the Objection does not really address any "*substanative flaws*" within the report. What a convenient rational for addressing almost nothing within the Objection. The Watermaster has mis-directed the Courts attention with this irrelevant commentary.

In addition to the four, numbered response points above (numbered/summarized below):

1. OMISSION #1  -   Prior to Tribal reservations, non- Indian real property rights exist.

2. OMISSION #2  -   Conflicts of Interest and pro-Indian influence,

3. Pink Elephant #1 - Asserts Plaintiff Intervention by Tribes could rule the day – everything stops for non-Indians,

4. Pink Elephant #2 - Dismiss the Objection as Watermaster has so informed the Court that the Objection is insincere,

the Response from Watermaster was in effect, non-responsive. The simple, clear, focused Objections including issues inaccurately, incompletely reported on, including omissions, that better report a pro-Indian position, are repeated herein.

- No sourcing or data description used to issue a Nitrate Concentration warning for Anza.
- No sourcing or description of data to issue warning of overdraft condition for Anza.
- No well monitoring, scientific evidence to make any determinations as per Watermaster.
- Watermaster has no available science or process to establish any reliable model for an overdrafting discussion for the Anza Water basin.
- No description of the Watershed; or who is, or who is not in the watershed jurisdcition?
- No serious description of adminstrative efforts and no discussion of the impact or success/failure of said administration efforts. A reference to a "2008 meeting" seven years ago - is not adequate or acceptable; but instead demonstrates the merit of the Objection.
- No response or explanation or available answers to basic, primary questions such as who owns the water, do I need permission from the Federal Court to use my water, do I need a permit to use my water, will water wells be metered, etc.?

WITH both the four numbered issues as well as the remaining, unresolved objections (above and bulleted) to the Annual Watermaster Report, it is requested the Honrable Court NOT approve the current edition of the 2014/2015 year Annual Water report until the Objections have been

addressed including further clarity, accuracy, relevance, service and assistance to the landowners within the Santa Margarita River Watershed.

Encl.  (one page total)

Sincerely,

*[signature: Greg Burnett]*

Greg Burnett

## Land Patent Details

| Accession Nr: 828446 | Document Type: Serial Patent | State: California | Issue Date: 10/15/1921 | Cancelled: No |
|---|---|---|---|---|

### Names On Document

SOUTHERN PACIFIC RAILROAD CO

Military Rank: ---

### Miscellaneous Information

| Land Office: | Los Angeles |
|---|---|
| US Reservations: | No |
| Mineral Reservations: | No |
| Tribe: | --- |
| Militia: | --- |
| State In Favor Of: | --- |
| Authority: | July 27, 1866: Grant-RR-Atlantic and Pacific (14 Stat. 292) |

### Document Numbers

| Document Nr: | 110 |
|---|---|
| Misc. Doc. Nr: | --- |
| BLM Serial Nr: | CACAAA 087416 |
| Indian Allot. Nr: | --- |

### Survey Information

| Total Acres: | 24838.55 |
|---|---|
| Survey Date: | --- |
| Geographic Name: | --- |
| Metes/Bounds: | No |

### Land Descriptions

| State | Meridian | Twp - Rng | Aliquots | Section | Survey # | County |
|---|---|---|---|---|---|---|
| CA | San Bernardino | 007S - 003E | SE¼ | 5 | | Riverside |
| CA | San Bernardino | 007S - 003E | NE¼SW¼ | 5 | | Riverside |
| CA | San Bernardino | 007S - 003E | NE¼ | 9 | | Riverside |
| CA | San Bernardino | 007S - 003E | E½NW¼ | 9 | | Riverside |
| CA | San Bernardino | 007S - 003E | N½SE¼ | 9 | | Riverside |
| CA | San Bernardino | 007S - 003E | NE¼SW¼ | 9 | | Riverside |
| CA | San Bernardino | 007S - 003E | N½ | 11 | | Riverside |
| CA | San Bernardino | 007S - 003E | N½S½ | 11 | | Riverside |
| CA | San Bernardino | 009S - 006E | E½ | 19 | | San Diego |
| CA | San Bernardino | 009S - 006E | E½W½ | 19 | | San Diego |
| CA | San Bernardino | 009S - 006E | | 21 | | San Diego |
| CA | San Bernardino | 009S - 006E | | 27 | | San Diego |
| CA | San Bernardino | 009S - 006E | | 29 | | San Diego |
| CA | San Bernardino | 009S - 006E | E½ | 31 | | San Diego |
| CA | San Bernardino | 009S - 006E | | 33 | | San Diego |
| CA | San Bernardino | 009S - 006E | | 35 | | San Diego |
| CA | San Bernardino | 010S - 006E | S½ | 1 | | San Diego |
| CA | San Bernardino | 010S - 006E | S½ | 3 | | San Diego |
| CA | San Bernardino | 010S - 006E | S½N½ | 3 | | San Diego |
| CA | San Bernardino | 010S - 006E | SE¼ | 5 | | San Diego |
| CA | San Bernardino | 010S - 006E | E½ | 7 | | San Diego |
| CA | San Bernardino | 010S - 006E | N½ | 9 | | San Diego |
| CA | San Bernardino | 010S - 006E | | 11 | | San Diego |
| CA | San Bernardino | 010S - 006E | | 13 | | San Diego |
| CA | San Bernardino | 010S - 006E | NE¼ | 19 | | San Diego |
| CA | San Bernardino | 010S - 006E | N½SE¼ | 19 | | San Diego |
| CA | San Bernardino | 010S - 006E | SE¼SE¼ | 19 | | San Diego |
| CA | San Bernardino | 010S - 006E | E½ | 31 | | San Diego |
| CA | San Bernardino | 010S - 007E | E½ | 7 | | San Diego |
| CA | San Bernardino | 010S - 007E | W½ | 17 | | San Diego |
| CA | San Bernardino | 010S - 007E | SE¼ | 17 | | San Diego |
| CA | San Bernardino | 010S - 007E | E½ | 19 | | San Diego |
| CA | San Bernardino | 010S - 007E | W½ | 21 | | San Diego |
| CA | San Bernardino | 010S - 007E | SE¼ | 21 | | San Diego |
| CA | San Bernardino | 010S - 007E | W½ | 27 | | San Diego |
| CA | San Bernardino | 010S - 007E | SE¼ | 27 | | San Diego |
| CA | San Bernardino | 010S - 007E | | 29 | | San Diego |
| CA | San Bernardino | 010S - 007E | E½ | 31 | | San Diego |
| CA | San Bernardino | 010S - 007E | | 33 | | San Diego |
| CA | San Bernardino | 010S - 007E | | 35 | | San Diego |
| CA | San Bernardino | 010S - 021E | E½ | 7 | | Imperial |
| CA | San Bernardino | 010S - 021E | | 9 | | Imperial |
| CA | San Bernardino | 011S - 006E | W½SW¼ | 5 | | San Diego |
| CA | San Bernardino | 011S - 006E | SE¼SW¼ | 5 | | San Diego |
| CA | San Bernardino | 011S - 006E | E½ | 7 | | San Diego |
| CA | San Bernardino | 011S - 006E | NE¼ | 13 | | San Diego |
| CA | San Bernardino | 011S - 006E | N½SE¼ | 13 | | San Diego |
| CA | San Bernardino | 011S - 006E | | 17 | | San Diego |
| CA | San Bernardino | 011S - 006E | NE¼ | 19 | | San Diego |
| CA | San Bernardino | 011S - 006E | | 21 | | San Diego |
| CA | San Bernardino | 011S - 006E | W½ | 23 | | San Diego |
| CA | San Bernardino | 011S - 006E | SE¼ | 23 | | San Diego |



THOMAS
MOUNTAIN
RANCH
DREAM
EXPERIENCE
LIVE



7016 0340 0000 1200 2240



$6.470
US POSTAGE
FIRST-CLASS
FROM 92536
DEC 21 2016
stamps.com

Honorable Gonzalo P. Curiel
United States District Court
Southern District of California
221 West Broadway, Ste 2190
San Diego CA 92101-8974



DEC 23 2016
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA