**REID & HELLYER**
A Professional Corporation
DAVID G. MOORE, State Bar No. 36078
MICHAEL G. KERBS, State Bar No. 131620
3880 Lemon Street, Fifth Floor
Post Office Box 1300
Riverside, California 92502-1300
Telephone: (951) 682-1771
Facsimile: (951) 686-2415

Attorneys for Defendant Gregory V. Burnett

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 51-cv-1247-GT-RBB |
| Plaintiff, | The Hon. Judge Gonzalo P. Curiel |
| v. | **DECLARATION OF DAVID G. MOORE IN SUPPORT OF MOTION AND MOTION FOR RELIEF FROM STAY FOR LIMITED PURPOSE OF ALLOWING GREGORY V. BURNETT TO FILE A MOTION TO DISMISS INTERVENORS' SECOND AMENDED COMPLAINTS** |
| RAMONA BAND OF CAHUILLA, CAHUILLA BAND OF INDIANS, et.al., | |
| Plaintiffs-Intervenors, | |
| v. | [Notice and Motion; and Declaration of Gregory V. Burnett] |
| FALLBROOK PUBLIC UTILITY DISTRICT, et.al., | Date: April 7, 2017
Time: 1:30 p.m.
Dept: Courtroom 2D
Judge: Hon. Gonzalo P. Curiel |
| Defendants. | |

I, David G. Moore declare:

1. I am an attorney duly licensed to practice law before all the courts of the State of California for the last 52 years and am a member of Reid & Hellyer, A Professional Corporation. Reid & Hellyer was recently retained by Gregory V. Burnett to represent him in this action. The facts set forth herein are of my own personal knowledge and if sworn I could and would testify competently thereto.

-1- Case No. 51-cv-1247
DECLARATION OF DAVID G. MOORE ISO MOTION FOR RELIEF FROM STAY FOR LIMITED PURPOSE

2. Based on a legal and factual analysis undertaken of Mr. Burnett's claims, I believe that there are well-founded grounds upon which to file a motion to dismiss the Complaints in Intervention filed by the Ramona Band of Cahuilla Indians' and Cahuilla Band of Indians' (collectively, the "Tribes") pursuant to Federal Rules of Civil Procedure Rule 12(b)(6).

3. In the latter part of December, 2016, I sent letters to the Tribes' counsel of record providing the legal and factual basis, along with documentary support, demonstrating why Mr. Burnett should be dismissed from the Tribes' complaints. A true and correct copy of one of these letters is attached hereto as Exhibit "A" (for brevity purposes, the attachments to the letters are not included). While I did receive a response from the Ramona Band, I did not receive a response from the Cahuilla Band. To date, neither of the Tribes have agreed to dismiss Mr. Burnett from this action. Instead, based on his letter in response, counsel for Ramona would have Mr. Burnett wait for an indefinite amount of time before achieving finality of his rights, specifically after settlement and congressional approval thereof, both or either of which may never occur. Mr. Burnett should not have to wait to assert his rights and have his day in court. A true and correct copy of the letter received from Ramona Band's counsel is attached hereto as Exhibit "B."

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 31st day of the January, 2017 at Riverside, California.

/s/David G. Moore
David G. Moore

**Exhibit "A"**

LAW OFFICES OF

# REID & HELLYER

A PROFESSIONAL CORPORATION
POST OFFICE BOX 1300
RIVERSIDE, CALIFORNIA 92502-1300
TELEPHONE (951) 682-1771
FACSIMILE (951) 686-2415

DAVID G. MOORE
THOMAS L. MILLER *
JAMES J. MANNING, JR.
MICHAEL G. KERBS
DANIEL E. KATZ
DOUGLAS A. PLAZAK
SCOTT TALKOV
CHRIS A. JOHNSON
ALEXANDER C. PAYNE

*A PROFESSIONAL LAW CORPORATION
** ALSO ADMITTED IN VIRGINIA

DAN G. McKINNEY
Of Counsel

MARK C. SCHNITZER**
Of Counsel

GEO. W. HELLYER (1886-1969)
ENOS C. REID (1915-1990)

3880 LEMON STREET, FIFTH FLOOR
RIVERSIDE, CA 92501

OUR FILE NUMBER
T0699-001

December 28, 2016

*VIA STANDARD MAIL*
Curtis G. Berkey
ALEXANDER, BERKEY, WILLIAMS & WEATHERS, LLP
2030 Addison Street, Suite 410
Berkeley, CA 94704

Re: *Ramona Band of Cahuilla v. Fallbrook PUD; USDC Case No. 51-cv-1247*

Dear Counsel:

This office has recently been retained by Gregory V. Burnett to represent him in the above-referenced action. I have had the opportunity to review the procedural history of the case and the operative pleadings and analyze the issues therein. Based on the following, I request that you dismiss my client from this matter.

### THE TRIBE'S ADJUDICATED PRIORITY DATE

In Interlocutory Judgment 41, the US District Court established the legal and factual bases of the federal reserved water rights for the Ramona Band of Cahuilla (the "Tribe"). The Court held that the United States reserved for the Tribe "rights to the use of the waters of the Santa Margarita River stream system . . . including rights to the use of the ground waters, sufficient for the present and future needs of the Indians." (*Interlocutory Judgment 41* at 1107, ¶1, 1108, ¶3.) The Court then assigned a priority date of 1891, the date the Tribe's Reservation was created, to the Tribe's reserved water rights. (*Id.* at 1107, ¶1.)

Subsequently, the Tribe has acknowledged that it is bound by the actions of the United States as its trustee as to the terms of Interlocutory Judgment 41. (*Motion to Intervene* (Doc. No. 4907), 6:27-28; 7:1-4, citing *Arizona v. California* 460 U.S. 615 and *Canadian St. Regis Band of Mohawk Indians v. State of New York*, 146 F.Supp.2d 170, 189 (N.D.N.Y. 2001) for the proposition that a tribe is precluded from bringing a claim to land that has already been adjudicated in an action brought by the United States.) Therefore, there is no triable issue of fact regarding the facts set forth above. Instead, the Tribe is conclusively bound thereby to all terms set forth in Interlocutory Judgment 41, including the priority date assigned to the Tribes' water rights of 1891.

REID & HELLYER

Curtis G. Berkey
December 28, 2016
Page 2

The Court retained jurisdiction over the use of surface water and groundwater. (*Interlocutory Judgment 41* at 1110, ¶10.) It was on this basis that the Tribe named my client, Mr. Burnett as a defendant to this action, seeking to prevent Mr. Burnett from withdrawing surface waters and groundwater in the Sub Basin underlying the Tribe's Reservation on the ground that such action was in conflict with the senior, federal reserved water rights of the Tribe and its members. To this end, I have been retained by Mr. Burnett to file a substantive motion with the Court to obtain a dismissal of him from this action on the ground that his rights to withdraw surface waters and groundwater in the area are senior to the Tribe's priority date as finally adjudicated by the Court. The purpose of this letter is to attempt to obtain your cooperation in dismissing Mr. Burnett from this action without the necessity of filing a formal motion for summary judgment.

### *HISTORICAL ANALYSIS*

On July 27, 1866, the United States Congress adopted 14 Stat. 292, Railroad and Telegraph Line Lands Act (the "1866 Act"). The 1866 Act granted the Atlantic and Pacific Railroad Company alternate odd-numbered sections of land on each side of the railroad right of way extending outward for forty miles, plus the right to select as "in lieu" lands alternate odd-numbered sections within an additional ten miles on each side of the right of way. (*Santa Fe Pacific Railroad Co. v. United States*, 294 F.3d 1336, 1338-39 (Fed. Cir. 2002).)

On March 12, 1872, the Atlantic and Pacific Railroad Company filed a map of definite location with the Secretary of the Interior and thereafter the railroad was constructed. (*Chapman v. Santa Fe Pac. Railroad Co.* 198 F.2d at 499.) At that point, the company's title to the designated lands was no longer "floating" but attached as of July 27, 1866. (*United States v. Southern Pac. Railroad Co.*, 146 U.S. at 595 (1892).)

> If anything in the land laws of the United States can be considered as thoroughly settled by repeated decisions, it is this. It matters not when the map of definite location of the Southern Pacific was filed and approved -- whether before or after April 11, 1872 -- for when filed, the grant could taken effect by relation only as of March 3, 1871, and at that time, and for nearly five years theretofore, the title to these lands had been in the Atlantic and Pacific. It matters not that the act of 1871 in terms purports to bestow the same rights, grants, and privileges as were granted to the Southern Pacific Railroad Company by the act of 1866. That merely defines the extent of the grant and the character of the rights and privileges. It does not operate to make the latter grant take effect by relation as of the date of the prior grant. (*Id.* at 604.)

REID & HELLYER

Curtis G. Berkey
December 28, 2016
Page 3

The words also import a transfer of a present title, not a promise to transfer one in the future. The route not being at the time determined, the grant was in the nature of a float, and the title did not attach to any specific sections until they were capable of identification; but when once identified, the title attached to them as of the date of the grant, except as to such sections as were specifically reserved. It is in this sense that the grant is termed one in praesenti -- that is to say, it is of that character as to all lands within the terms of the grant, and not reserved from it at the time of the definite location of the route. This is the construction given to similar grants by this Court, where the question has been often considered; indeed, it is so well settled as to be no longer open to discussion. (*St. Paul & Pacific Railroad Company v. Northern Pacific Railroad Company*, 139 U. S. 1, 5-6 (1891).)

As discussed below, Mr. Burnett's title can be traced back to the 1866 Act. Based on Interlocutory Judgment 41, the Tribe is collaterally estopped from asserting that its reserved water rights arose any earlier than 1891. As such, Mr. Burnett's title is not subject to encumbrance. (*United States v. Santa Fe Pac. R. Co.*, 314 U.S. 339, 359, n. 24 (1941).)

Furthermore, even if the Tribe were not collaterally estopped from arguing a priority date prior to 1891, unless the Tribe can establish that it did not relinquish and otherwise properly asserted original occupancy claims within the statutory two-year window provided in the Act of March 3, 1851, ch. 41, 9 Stat. 631, commonly known as the California Land Claims Act of 1851, the Tribe is precluded from relying on such a claim in this action. (See, *United States v. Santa Fe Pac. R. Co.*, 314 U.S. 339, 347 and *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*, 2015 U.S. Dist. LEXIS 49998, 28-29 (C.D. Cal. Mar. 20, 2015).) Here, there is no evidence that the Tribe properly asserted original occupancy claims that pre-date the creation of the Reservation. As such, the Tribe is precluded from asserting a water right superior to that of Mr. Burnett. (*Western Shoshone Nat. Council v. Molini*, 951 F.2d 200, 203 (9th Cir. 1991), holding that the creation and acceptance of a reservation is a forfeiture of tribal claims to lands which they might have had outside that reservation, including aboriginal rights in land or water.)

### MR. BURNETT IS A SUCCESSOR-IN-INTEREST TO THE SOUTHERN PACIFIC RAILROAD COMPANY OF CALIFORNIA

Section 18 of the 1866 Act gave the Southern Pacific Railroad Company of California authority to connect with the Atlantic and Pacific Railroad with "similar grants of land" as that provided to the Atlantic and Pacific Railroad. To this end, the United States of America granted to Southern Pacific Railroad Company of California certain lands situated in the State of California. (See enclosed text of 1866 Act.)

REID & HELLYER

Curtis G. Berkey
December 28, 2016
Page 4

On March 3, 1871, by an official act of Congress, the Southern Pacific Railroad Company, as successor-in-interest to the Southern Pacific Railroad Company of California, was provided with authority to construct a railroad from a point at or near Tehachapi Pass to the Colorado River with "the same rights, grants and privileges...as were granted to said Southern Pacific Railroad Company of California, by the aforesaid Act of July 27, 1866." To this end, certain tracts of land were granted by the United States of America to the Southern Pacific Railroad Company, which included the Property. (See enclosed text of 1871 Act.)

In March, 1912, the Southern Pacific Railroad Company granted the land it had received under the 1866 Act and the 1871 Act to the Southern Pacific Land Company. (See enclosed Deed E9C-D.) In 1988, Southern Pacific Land Company merged with Santa Fe Pacific Realty Corporation. (See enclosed merger documents.) In January, 1990, by way of Grant Deed recorded in Riverside County, title to the Property was granted from Santa Fe Pacific Realty Corporation to SF Properties, Inc. (See enclosed 1990 Grant Deed.) In January, 2003, by way of Grant Deed recorded in Riverside County, SF Properties, Inc. granted the Property to Gregory V. Burnett. (See enclosed 2003 Grant Deed.)

Based on the foregoing, as successor-in-interest to the Southern Pacific Railroad Company of California, Mr. Burnett's rights to the Property date back to 1866, which pre-dates the Tribe's adjudicated water rights priority date of 1891.

## CONCLUSION

Mr. Burnett has been severely impacted as a result of being named as a defendant in this action and has been informed by the County of Riverside that his application for a Small Water System cannot be processed until he is dismissed. Based on the undisputed facts establishing Mr. Burnett's title and the judicial estoppel that precludes the Tribe from arguing any other priority date, it is likely that the Court will agree that Mr. Burnett should be dismissed from this action. In an effort to avoid utilizing the resources of the Court to resolve this issue, however, I hope to hear from you regarding the foregoing.

If I do not hear from you, I will proceed with filing a motion for relief from the stay for the purpose of permitting Mr. Burnett to respond to the Second Amended Complaint and to, simultaneously therewith, file a motion for summary judgment and seek reimbursement of attorneys' fees and costs pursuant to 28 U.S.C. §2412, subdivision (d).

REID & HELLYER

Curtis G. Berkey
December 28, 2016
Page 5

      Thank you for your time and consideration of these issues. I look forward to hearing from you and working with you in the future.

                                  Respectfully yours,

                                  REID & HELLYER
                                  A PROFESSIONAL CORPORATION

                                  David G. Moore

Encls.

Cc:    Client

**Exhibit "B"**



**Berkey Williams** LLP

2030 Addison Street, Suite 410
Berkeley, CA 94704

(510) 548-7070
(510) 548-7080 (Fax)
www.berkeywilliams.com

January 5, 2017

**By Email and U.S. Mail**

David G. Moore
Reid & Hellyer
P.O. Box 1300
Riverside, CA 92502-1300

    RE:    <u>Gregory V. Burnett</u>

Dear Mr. Moore:

    I have received your letter dated December 28, 2016, requesting the Gregory V. Burnett be dismissed from the matter you captioned as *Ramona Band of Cahuilla v. Fallbrook PUD; USDC Case No. 51-cv-1247*. You did not indicate a time frame for the Ramona Band of Cahuilla to respond to this request. Given the voluminous attachments accompanying your letter, I have not had time to review those documents nor discuss this matter thoroughly with my client. Based on what I have been able to review thus far, I must say that the legal basis for your demand is not clear to me. However, it does appear that the motivation for this request is the refusal of the County of Riverside to issue Mr. Burnett a community water system permit without completion of a form requiring certification of the availability of a sufficient water supply. We may be able to resolve that problem without having to litigate the water rights issues. To that end, I would like to suggest an approach to this problem that may avoid premature litigation of the legal and factual issues your letter raises.

    The Ramona Band of Cahuilla is willing to join with you and your client in seeking a satisfactory resolution of the water system permit problem. I understand that preliminary discussions are already underway among various parties to reach such a resolution, and the Band and Mr. Burnett together could materially advance those efforts. As you know, neither the Ramona Band nor the Cahuilla Band of Indians, the other tribal water rights claimant in this *Fallbrook* subproceeding, has asked the Court to enjoin water use or production during the pendency of the case, and there is no such injunction that prohibits or restrains water use by Mr. Burnett or any other landowner. The Ramona Band is not seeking to impede the economic development plans of your client or any other landowner in the Anza Groundwater Basin. The Ramona Band's goal is to secure a permanent and legally protected supply of water to satisfy its current and future needs, as provided by federal law. We are confident that can be achieved while at the same time respecting current water use and providing for future water use by the Band's non-Indian neighbors.

David G. Moore
January 5, 2017
Page 2

---

   I respectfully ask you and your client to consider the Ramona Band's offer to assist in resolving the permit problem in the context of the current settlement negotiations that are underway. Since shortly after the Tribes intervened in *Fallbrook* to secure their federal reserved water rights, the Ramona Band of Cahuilla, Cahuilla Band of Indians, the United States, the State of California, the County of Riverside and hundreds of landowners in the Anza Groundwater Basin and Cahuilla Groundwater Basin have been engaged in discussions in an effort to resolve the Tribes' claims in a fair and reasonable manner. Mr. Burnett in fact participated in the early stages of those settlement discussions. I am certain you can appreciate that litigation of the Tribes' claims would have created severe economic dislocation, social strife and enormous cost to the Anza community. The Tribes and the United States deliberately decided not to pursue that path, and instead are seeking to resolve their claims in the least disruptive manner possible, through settlement discussions. You may have had an opportunity to review the motions filed by the Tribes to extend the stay of litigation in which we have reported on the progress in the discussions. We remain hopeful that a settlement can be reached this year. United States Magistrate Judge Ruben B. Brooks is assisting the parties as a settlement judge, and his efforts have substantially enhanced the prospects of settlement.

   If those discussions succeed, and a settlement agreement is reached, we anticipate that Congress will be asked to ratify the settlement agreement and appropriate funds for water infrastructure projects and related items that will benefit the Anza community as a whole. Following congressional approval, the settlement, as modified by the legislation if necessary, will be presented to the federal court for approval and entry of a final decree. At that point, opportunity will be given to any party to object to the settlement. It is at that stage that Mr. Burnett would have an opportunity to make his arguments about his priority water right. Alternatively, Mr. Burnett may find that the settlement is more advantageous to him than litigation. In any event, the court will rule on the objections and decide whether the objector should be bound by the decree or whether the settlement agreement should be modified to address the objector's concerns. Although we strongly disagree with the legal theory on which Mr. Burnett bases his alleged superior water right, we believe the time to address those arguments will come at the court approval stage following congressional ratification.

   In the meantime, if the Ramona Band and Mr. Burnett can work together to resolve the community water permit issue, the parties can continue their settlement discussions without the necessity of responding to a motion to lift the stay and motion for summary judgment, and Mr. Burnett can continue to develop his properties. The Ramona Band is willing to advocate for Mr. Burnett's participation in the settlement talks as represented by counsel, if he is interested. If these issues are litigated, no doubt there are many landowners in the Anza Groundwater Basin and Cahuilla Groundwater Basin who will be interested in being heard on the important question about the nature and scope of a water right allegedly derived from a predecessor in a federal chain of title. Moreover, if you succeed in lifting the stay of litigation, thousands of landowner defendants may be required to answer or otherwise respond to the Tribes' second amended complaints, and no doubt there will be cross-claims filed at the same time for those parties to

David G. Moore
January 5, 2017
Page 3

_____

secure an allocation of water under a state law water right. In other words, Mr. Burnett's threatened actions may transform an orderly and efficient settlement process into an *inter se* basin-wide groundwater adjudication.

    For these reasons, we hope Mr. Burnett finds the Ramona Band's offer to assist in resolving his water permit problem acceptable. If you and your client are interested in talking about this, we are willing to attend a meeting at your office for this purpose.

    Thank you for your consideration.

                        Very truly yours,

                        BERKEY WILLIAMS LLP

                        Curtis Berkey

cc:    Joseph Hamilton
       Chairman
       Ramona Band of Cahuilla

       Lester Marston
       Counsel, Cahuilla Band of Indians

       Patrick Barry
       U.S. Department of Justice