LESTER J. MARSTON
California State Bar No. 081030
RAPPORT AND MARSTON
405 West Perkins Street
Ukiah, California 95482
Telephone: 707-462-6846
Facsimile: 707-462-4235
Email: marston1@pacbell.net

*Attorney for Plaintiff-Intervenor*
*Cahuilla Band of Indians*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>CAHUILLA BAND OF INDIANS,<br><br>    Plaintiff-Intervenor,<br><br>v.<br><br>FALLBROOK PUBLIC UTILTIY DISTRICT, et al.,<br><br>    Defendants. | Case No. 3:51-cv-01247-GPC-RBB<br><br>**CAHUILLA BAND OF INDIANS' OPPOSITION TO MOTION FOR RELIEF FROM STAY FOR LIMITED PURPOSE OF ALLOWING GREGORY V. BURNETT TO FILE A MOTION TO DISMISS INTERVENORS' SECOND AMENDED COMPLAINTS**<br><br>Date: April 7, 2017<br>Time: 1:30 p.m.<br>Courtroom: 2D<br>Before the Honorable Gonzalo P. Curiel |

## INTRODUCTION

The Court should deny Defendant Gregory V. Burnett's ("Burnett") Motion for Relief from Stay for Limited Purpose of Allowing Gregory V. Burnett to File a Motion to Dismiss Intervenors' Second Amended Complaints ("Motion"). As demonstrated by

1

the Cahuilla Band of Indians ("Tribe") in this Opposition, the stay should remain in place because: (1) the circumstances that originally warranted the stay have not changed significantly; (2) Burnett's concerns are adequately addressed through the ongoing settlement negotiations; (3) the equities weigh in favor of keeping the stay in place as settlement negotiations progress, and (4) Burnett's underlying claims are not likely to succeed because they lack legal and factual foundation.

## ARGUMENT

### I.
### THE CIRCUMSTANCES WARRANTING THE STAY HAVE NOT CHANGED SIGNIFICANTLY.

"'The same court that imposes a stay of litigation has the inherent power and discretion to lift the stay.'" *Akeena Solar Inc. v. Zep Solar Inc.*, 2011 U.S. Dist. LEXIS 72847, *4-5 (N.D. Cal. July 7, 2011), *citing Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 74 (D.D.C. 2002). "'When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay.'" *Id.* A stay may be lifted "if the circumstances warranting its imposition have since 'changed significantly.'" *Cascades Comput. Innovation LLC v. RPX Corp.*, 2015 U.S. Dist. LEXIS 37186, *3-4 (N.D. Cal. Mar. 23, 2015), *quoting Evolutionary Intelligence, LLC v. LivingSocial, Inc.*, 2014 WL 2735185, *2 (N.D. Cal. June 16, 2014), *citing Canady*, 271 F. Supp. 2d at 74.

Here, the Tribe and the Ramona Band of Indians (hereinafter collectively the "Tribes") requested, and the Court ordered, a stay in this case "in order for meaningful negotiations to take place without the cost and interference of on-going litigation." *See* DKT. No. 5007, p. 3. With the appointment of the Federal Negotiating Team, the parties desired to work towards "a settlement to resolve each of the Tribes' claims without the need and cost of protracted litigation." *Id.* Since the time of Tribes' request and the Court's order, these circumstances have not significantly changed in a manner that warrants lifting of the stay.

At the time of the Court's first stay of this case, meaningful settlement negotiations had not yet taken place with the Tribe. Since then, the parties have made significant progress in developing a global settlement that resolves all of the Tribe's claims. Litigation of Burnett's priority date would unwind the progress that has been made under the stay and would reduce the likelihood of successful negotiations. The need for settlement negotiations to continue without the cost and interference of simultaneous litigation, thus, is even greater now than it was at the time the Court issued the original stay.

While Burnett's frustrations with the time spent negotiating the settlement are understandable, it must be recognized that this is a complicated case. This case has been on-going since 1951. It involves thousands of defendants. Significant issues that impact all water users remain under the continuing jurisdiction of the Court, including quantification of the Tribes' water rights. The complexity and magnitude of this case justify leaving the stay in place to allow settlement discussions to continue unhindered by litigation demands.

The circumstances originally warranting the stay have not changed. The Tribes continue to need time to meaningfully engage their neighbors and surrounding communities in negotiation discussions, community outreach, information sharing, and efforts to reach a settlement that benefits all water users without the burden of litigation. With the prospect of a global settlement closer than at any previous point in this case, the Court should not grant Burnett's Motion.

## II.
## BURNETT'S CONCERNS ARE ADEQUATELY ADDRESSED THROUGH THE ONGOING SETTLEMENT NEGOTIATIONS.

"[T]he law favors and encourages compromise settlements." *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977), *citing Richards Constr. Co. v. Air Conditioning Co.*, 318 F.2d 410, 414 (9th Cir. 1963). This rule is based on the priniciple

that "there is an overriding public interest in settling and quieting litigation." *Id.*, *citing Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). "The primary purpose of a compromise settlement is to avoid the necessity of determining sharply contested and dubious issues." *Cal. Associated Prods. Co. v. Wil-Rud Corp.*, 183 F.2d 946, 949-950 (9th Cir. 1950). Moreover, settlements encourage the "avoidance of wasteful litigation as well as the expense[s] incident thereto." *Pfizer v. Lord*, 456 F.2d 532, 543 (8th Cir. 1972).

Since the issuance of the stay in these proceedings, the parties have continuously worked to develop a global settlement of the case. These settlement negotiations have included the drafting of a comprehensive settlement agreement, the identification of the issues that need to be resolved to conclude the settlement, the assigning of tasks and the collection of data and information needs to reach final resolution of the outstanding issues, and the establishment of a schedule for continued settlement negotiations.

Burnett's concerns with respect to the stay currently in place relate to a perceived "cloud over Burnett's water use" and his alleged difficulty in implementing "a small water system to support" a residential development owned by Burnett. Motion, p. 6. These are issues than can and should be addressed through the ongoing settlement negotiations, rather than through the litigation of contested and dubious issues like Burnett's allegedly superior priority date, which could place all of the progress made in the settlement negotiations at risk.

In the time since the Tribe substituted undersigned counsel in this case (approximately one year), Burnett has never participated in any of the negotiation sessions, never contacted the Tribe's counsel by telephone, letter, email or otherwise expressed his concerns or attempted in any way to resolve the issues raised in his motion with counsel for the Tribe. Other than receiving communications second-hand through counsel for the Ramona Band of Cahuilla Indians, counsel for the Tribe has not been contacted with respect to negotiating a resolution of Burnett's claims outside of

the filing of the current motion. Burnett states in his declaration, however, that "[s]ince 2007, and more recently in the last few years, I have asserted my position that I am not a proper party to this action. My efforts have included communications with the Tribes, the Tribes' counsel, the Watermaster, and counsel for the Watermaster." Declaration of Gregory V. Burnett in Support of Motion [sic] and Motion for Relief From Stay for Limited Purpose of Allowing Gregory V. Burnett to File a Motion to Dismiss Intervenors' Second Amended Complaints ("Burnett Declaration"), p. 2, ¶ 3. None of Burnett's assertions have been made to the Tribe's current counsel and, more importantly, none of those assertions relate to Burnett's underlying concerns—the ability to finance a residential development and development of a small water system.[1] Rather than work with the Tribes to develop a solution to Burnett's actual problem, Burnett has demanded that counsel for the Tribes dismiss him from this action based on a specious legal theory.

The Tribe is ready and willing to negotiate directly with Burnett with respect to his underlying concerns. This will allow Burnett's issues to be addressed without threatening the global settlement process. Rather than lift the stay, the Court should require Burnett to come to the negotiating table and work with the parties to develop a solution to the underlying issues.

### III.
### THE EQUITIES WEIGH IN FAVOR OF KEEPING THE STAY IN PLACE AS SETTLEMENT NEGOTIATIONS PROGRESS.

Burnett argues that he is prejudiced by the litigation stay because, as the owner and founder of Thomas Mountain Ranch, a residential development in the Anza Valley, this case "has placed a cloud over Burnett's water use" and "has interfered with Burnett's attempts to implement a small water system to support Thomas Mountain

---

[1] It is also important to note that Burnett has not filed an objection to a request for an extension of the stay since April 27, 2010—nearly seven years ago. *See* DKT. No. 5245.

Ranch, and impacted Burnett's ability to obtain financing to support the development." Motion, p. 6. These financial concerns pale in comparison to the issues raised by the Tribes in their complaints.

While Burnett is seeking to be dismissed from this case in order to more easily obtain financing for his residential development and to develop a small watering system to support the development, the Tribe is seeking to quantify and protect its senior, federally reserved water rights to surface and groundwater underlying the Cahuilla Indian Reservation. Since time immemorial, the members of the Tribe have used, and continue to use, the lands, surface waters, and groundwater underlying the Cahuilla Reservation within the Sub-Basin for subsistence, cultural, ceremonial, religious, and commercial purposes. Burnett's personal interests in his prospective residential development cannot be placed ahead of the interests of the Tribe, as a governmental entity and the approximately 600 members of the Tribe that are dependent on the Tribe having the water necessary to fulfill the purposes for which the Reservation was created: to provide a homeland where Tribal members can live, work, preserve their culture, and practice their religion.

The amount of water at stake for Burnett, moreover, is minimal when compared to the water at stake for the Tribe. The future water needs of Burnett's 500 acre development, where no one is currently living, are considerably less than the present and future water needs of the nearly 19,000 acre Cahuilla Reservation and the Tribe's approximately 600 members.

Finally, if the Court were to lift the stay now to allow Burnett to assert an alleged superior priority date and a lack of jurisdiction, the entire settlement negotiation process will be jeopardized. All of the progress, hard work, and compromise made in the time since the stay was first implemented could be lost if the parties are required to shift their time and resources to complex, fact-specific litigation of Burnett's, and potentially

other land owners', priority dates. The risk of losing the progress made towards a global settlement greatly outweighs Burnett's interests.

For these reasons, a balancing of the equities militates in favor of denying Burnett's Motion and keeping the stay in place.

## IV.
## BURNETT'S UNDERLYING CLAIMS ARE NOT LIKELY TO SUCCEED BECAUSE THEY LACK LEGAL AND FACTUAL FOUNDATION.

While the determination as to whether the stay should be lifted is left to the sound discretion of the Court, Burnett should be required demonstrated at least some likelihood of success on his underlying claim of an 1866 priority date prior to the lifting of the stay and the disruption of the settlement negotiations. Burnett's Motion, however, fails to include any cognizable legal theory that supports an 1866 priority date. His Motion also fails to state a *prima facie* case establishing any of the facts that would be required to prove that Burnett's priority date is superior to that of the Tribe.

First, with respect to Burnett's legal theory, there is no support for the claim that Burnett's priority date was established by the July 27, 1866, Railroad and Telegraph Line Lands Act, 14 Stat. 292, 39 Cong. Ch. 278 (the "Act"). Nothing in the text of the Act conveys, or purports to convey, any water rights to the Atlantic and Pacific Railroad Company or the Southern Pacific Railroad. *Cf.* Sec. 2 of the Act [granting to the Atlantic and Pacific Railroad Company "the right, power, and authority…to take from the public lands adjacent to the line of said road material of earth, stone, timber, and so forth, for the construction thereof."]. The Supreme Court, furthermore, has held that, even if Burnett's ownership could be traced back to a federal patent issued pursuant to the Act, such a patent does not create a federal water right and cannot therefore establish a priority date. *California Oregon Power Co. v. Beaver Portland Cement Co.*, 295 U.S. 142, 158 (1935) ("*California Oregon Power*")[A patent issued under the land laws of the United States "carried with it, of its own force, no common-law right to water

flowing through or bordering upon the land conveyed."]; *Ickes v. Fox*, 300 U.S. 82, 95-96 (1937) ("*Ickes*")["Acquisition of the government title to a parcel of land was not to carry with it a water-right….And in those states, generally,…it long has been established law that the right to the use of water can be acquired only by prior appropriation for a beneficial use…"]. Consistent with the holdings in *California Oregon Power* and *Ickes*, Burnett's priority date cannot date back to the 1866 Act because a patent issued pursuant to the Act carried with it no water right.

Second, with respect to Burnett's factual deficiencies, because patents issued pursuant to the Act do not include a common-law right to water, Burnett would be required to establish that a predecessor in interest acquired water rights through bona fide prior appropriation for a beneficial use at a date earlier than the date of the creation of the Tribe's reservation. *Cappaert v. United States*, 426 U.S. 128, 139, fn. 5 (1976). Burnett would also be required to prove that the water right, if one could be established, was never abandoned, *i.e.*, the water right was put to continuous use from the date of the bona fide prior appropriation for a beneficial use until the present time. *United States v. Alpine Land & Reservoir Co.*, 291 F.3d 1062, 1077 (9th Cir. 2002)["At a minimum, proof of continuous use of the water right should be required to support a finding of lack of intent to abandon."]. Instead, Burnett has not presented the Court with any admissible evidence making even a *prima fascia* showing that he could prove any of the necessary facts to substantiate a priority date superior to the Tribes.[2]

Because of the clear lack of legal authority and factual support for his claim, Burnett's likelihood of success on a motion to dismiss based on these claims is, at best, questionable. Even if Burnett attempted to further substantiate the legal and/or factual bases for his claims on reply, such an attempt would come too late. Since Burnett has

---

[2] That Burnett would be required to produce evidence of these facts also reveals the substantial time, effort, and financial resources that the parties would need to shift from settlement negotiations to litigation of Burnett's priority date if the stay were lifted.

not presented a legal theory or factual scenario that has even a minimal chance of prevailing on a motion to dismiss, the Court should not lift the stay to allow Burnett to offer his arguments, particularly because lifting the stay has the potential to significantly derail the ongoing settlement negotiations. Accordingly, Burnett's Motion should be denied.

## CONCLUSION

Burnett has been a "party to this action since 2007, when he was first given notice of the Ramona Band of Cahuilla Indians' and Cahuilla Band of Indians' … Complaints in Intervention." Motion, p. 3. Rather than bring the instant Motion requesting that the stay be lifted to file a motion to dismiss based on the assertion of an alleged 1866 priority date at that time, Burnett sat on his alleged priority date claim for nearly a decade—a decade of negotiations, compromises, time, money, and hard work spent developing a settlement agreement. Burnett's Motion jeopardizes the progress made over the last ten years and threatens the possibility of a global settlement of this case.

The Court therefore, should not lift the stay and threaten the progress made in settlement negotiations to permit Burnett to pursue his claims that are not supported by any facts or law.

For the all of the reasons stated above, the Court should deny the Motion.

Dated: March 3, 2017                                  Respectfully Submitted,

                                                      RAPPORT AND MARSTON

                                                      By:    /s/ Lester J. Marston
                                                             LESTER J. MARSTON
                                                             Attorney for Plaintiff, Cahuilla Band
                                                             of Indians

# CERTIFICATE/PROOF OF SERVICE

I am a citizen of the United States of America, over the age of 18 years, and not a party to the above-entitled action. My business address is 405 West Perkins Street, Ukiah, CA 95482.

On March 3, 2017, I electronically filed on behalf of the Cahuilla Band of Indians the following document in *United States of America, et al. v. Fallbrook Public Utility District, et al.*, Case No. 3:51-cv-1247-GPC-RBB:

**CAHUILLA BAND OF INDIANS' OPPOSITION TO
MOTION FOR RELIEF FROM STAY**

by using the CM/ECF system, which generated and transmitted a notice of electronic filing to the following CM/ECF registrants:

B. Tilden Kim: tkim@rwglaw.com; lpomatto@rwglaw.com
Bill J. Kuenziger: bkuenziger@bdasports.com; rjones@bhsmck.com
Bryan D. Sampson: bsampson@sampsonlaw.net; b.sampson3@cox.net; mfickel@sampsonlaw.net;  psampson@sampsonlaw.net
Charles W. Binder: courtdocs@smrwm.org
Curtis G. Berkey: cberkey@berkeywilliams.com; mmorales@berkeywilliams.com
Daniel J. Goulding: dgoulding@qualityloan.com; jmolteni@qualityloan.com; srogato@qualityloan.com
David Leventhal: davelevlaw@yahoo.com
David Philip Colella: dcolella@flsd.com
Donald R. Timms: dontimms@san.rr.com
F. Patrick Barry: patrick.barry@usdoj.gov
George Chakmakis: george@chakmakislaw.com
Gerald (Jerry) Blank: gblank@san.rr.com; mary@geraldblank.sdcoxmail.com
Grant Alan Reader: garlaw71@gmail.com
Harry Campbell Carpelan: hcarpelan@redwinesherrill.com
Herbert W. Kuehne, Marlene C. Kuehne: hwkuehne@pacbell.net
James B. Gilpin: james.gilpin@bbklaw.com; lisa.grennon@bbklaw.com; marta.stasik@bbklaw.com
James Michael Powell: jpowellesq@gmail.com; info@mydebtorlaw.com
John A. Karaczynski: jkaraczynski@akingump.com; dpongrace@akingump.com; jfukai@akingump.com
John Christopher Lemmo: jl@procopio.com; laj@procopio.com
Jonathan M. Deer: jdeer@taflaw.net; gsuchniak@taflaw.net; jondeeresq@earthlink.net

10
**ENTRY OF APPEARANCE [CASE NO. 3:51-CV-01247-GPC-RBB]**

Joseph Anthony Vanderhorst: jvanderhorst@mwdh2o.com; gosorio@mwdh2o.com
Kevin Patrick Sullivan: ksullivan@sanlawyers.com; kstanis@sanlawyers.com
Thomas Caldwell; Linda Caldwell: goforthvillage2@yahoo.com
Marco Antonio Gonzalez: marco@coastlawgroup.com; sara@coastlawgroup.com
Marilyn H. Levin: marilyn.levin@doj.ca.gov; MichaelW.Hughes@doj.ca.gov
Mary L. Fickel: mfickel@fickeldavislaw.com; rdavis@fickeldavislaw.com
Matthew L. Green: matthew.green@bbklaw.com; lisa.atwood@bbklaw.com
Michael Duane Davis: michael.davis@greshamsavage.com; terigallagher@greshamsavage.com
Michele A. Staples: mstaples@jdtplaw.com; dtankersley@jdtplaw.com; pgosney@jdtplaw.com
Patricia Grace Rosenberg: prosenberg@hnattorneys.com
Richard Alvin Lewis: Rlewis@RichardLewis.com
Robert H. James: bob@fallbrooklawoffice.com; deborah@fallbrooklawoffice.com
Robert K. Edmunds: robert.edmunds@bipc.com; lisa.largent@bipc.com
Robert M. Cohen: rcohen@cohenburgelaw.com; vzareba@cohenburgelaw.com; wwendelstein@cohenburgelaw.com
Steve Michael Bodmer: sbodmer@pechanga-nsn.gov
Thomas C. Stahl: Thomas.Stahl@usdoj.gov; Ginger.Stacey@usdog.gov; efile.dkt.civ@usdoj.gov; sandra.huston@usdoj.gov
Timothy P. Johnson: tjohnson@johnson-chambers.com; cww@johnson-chambers.com
William K. Koska: wkoska@koskalaw.com; alice.ross@clmlawfirm.com; bill.koska@clmlawfinn.com

I further certify that on March 3, 2017, I caused to be served the following documents:

**CAHUILLA BAND OF INDIANS' OPPOSITION TO  
MOTION FOR RELIEF FROM STAY**

by depositing a copy in the United States mail at Ukiah, California, in an envelope with first class postage fully paid, addressed as follows:

San Francisco, CA 94117

Khyber Courchesne          Carolyn Ellison
1264 Page Street           49975 Indian Rock

11

**ENTRY OF APPEARANCE [CASE NO. 3:51-CV-01247-GPC-RBB]**

Aguanga, CA 92536

John Ellison
49975 Indian Rock
Aguanga, CA 92536

Carl Gage
40685 Tumbleweed Trail
Aguanga, CA 92536

Donna Gage
40685 Tumbleweed Trail
Aguanga, CA 92536

Anna Gale James
40275 Curry Court
Aguanga, CA 92536

Mary E. Lee
42010 Rolling Hills Drive
Aguanga, CA 92536

Cindy L. Barker
37060 Bonita Vista Rd.
Anza, CA 92539

Edward Lueras
623 Beverly Blvd.
Fullerton, CA 96833

Carol Lueras
623 Beverly Blvd.
Fullerton, CA 96833

Michael J. Machado
P.O. Box 391607
Anza, CA 92539

Pamela M. Machado
P.O. Box 391607

Anza, CA 92539

Diane Mannschreck
1600 Kiowa Ave.
Lake Havasu City, AZ 86403

Robert Mannschreck
1600 Kiowa Ave.
Lake Havasu City, AZ 86403

James L. Markman
Richards, Watson & Gershon
1 Civic Center Circle
P.O. Box 1059
Brea, CA 92822-1059

Briar McTaggart
1642 Merion Way, 40E
Seal Beach, CA 90740

Barbara Cole
40225 Curry Court
Aguanga, CA 92536

Thomas C. Perkins
7037 Gaskin Place
Riverside, CA 92506

John S. Wilson
14205 Minorca Cove
Del Mar, CA 92014-2932

Peggy Wilson
14205 Minorca Cove

Del Mar, CA 92014-2932

Archie D. McPhee
40482 Gavilan Mountain R
Fallbrook, CA 92028

Robyn M. Garrison
ERA Excel Realty
56070 Highway 371
Anza, CA 92539

Greg Burnett
The Burnett Group
P.O. Box 391111
Anza, CA 92539

**ENTRY OF APPEARANCE [CASE NO. 3:51-CV-01247-GPC-RBB]**

1
2        I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct; executed on March 3, 2017, at Ukiah, California.
3
4                                        */s/ Ericka Duncan*
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ENTRY OF APPEARANCE [CASE NO. 3:51-CV-01247-GPC-RBB]**