Curtis G. Berkey (CA State Bar No. 195485)
BERKEY WILLIAMS LLP
2030 Addison Street, Suite 410
Berkeley, CA 94704
Tel: (510) 548-7070
Fax: (510) 548-7080
E-mail: cberkey@berkeywilliams.com
*Attorney for Plaintiff-Intervenor*
*Ramona Band of Cahuilla*

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>RAMONA BAND OF CAHUILLA,<br>CAHUILLA BAND OF INDIANS,<br><br>Plaintiffs-Intervenors,<br>vs.<br><br>FALLBROOK PUBLIC UTILITY<br>DISTRICT, et al.,<br><br>Defendants. | CIVIL NO.: 51-CV-01247-GPC-RBB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF THE RAMONA BAND OF CAHUILLA IN OPPOSITION TO MOTION OF GREGORY V. BURNETT TO LIFT STAY OF LITIGATION**<br><br>Date: April 7, 2017<br>Time: 1:30 p.m.<br>Dept.: Courtroom 2D<br><br>Hon. Gonzalo P. Curiel |

CIVIL NO.: 51-CV-1247-GPC-RBB

Pursuant to this Court's Order of February 1, 2017 (Document 5569), Plaintiff-Intervenor Ramona Band of Cahuilla (Band) submits this opposition to the Motion of Gregory V. Burnett (Burnett) to lift the stay of litigation for the purpose of moving to dismiss the Band's water rights claim for failure to state a claim. The motion should be denied because: 1) the pendency of the Ramona Band's claims does not impose hardship on Burnett sufficient to justify disruption of the settlement discussions; 2) lifting the stay would be futile because Burnett is precluded from re-litigating the correlative water right granted by this Court to his predecessor in 1962; 3) lifting the stay will impede progress toward a negotiated settlement of the Band's water rights claims; and 4) the Ramona Band properly refused to dismiss Burnett from this subproceeding because his claim to a superior water right lacks merit, and can be addressed in a subsequent proceeding without harm to him in the interim.

## Background

The Cahuilla ancestors of the Ramona Band owned and occupied the territory where the Anza community is now located long before Europeans arrived in the area, and long before railroads were gifted land from the public domain.  To provide a homeland for the Cahuilla people, in 1851 the United States and the Cahuilla Bands entered into a treaty that would have set aside a reservation protected by federal law. Treaty with the Taches, Cah-Wai, Etc., May 13, 1851, *Indian Affairs: Law and Treaties,* Volume IV, Part IV, pp. 1092-1094, Charles J. Kappler, ed.  Congress

1

CIVIL NO.: 51-CV-1247-GPC-RBB

refused to ratify the Treaty so the reservation was never legally established. Nevertheless, non-Indian settlers took advantage of the unratified treaty and subsequently unlawfully occupied large areas of the Cahuillas' aboriginal lands.

To guard against further dispossession, the President in the late 1880s created two reservations in the Anza Valley as permanent homes for the Ramona Band and Cahuilla Band. Created in 1891, the Ramona Reservation was selected in part because of its abundant water supplies. To secure the Band's water rights, in 1951 the United States as trustee for the Band asserted claims on its behalf in this case in order to establish a federal reserved water right under *Winters v. United States,* 207 U.S. 564 (1908). In 1962, this Court entered an interlocutory judgment that established the Band's federal reserved water rights, including groundwater rights, in amounts "sufficient for the present and future needs of the Indians," with a priority date of 1891.[1] Through no fault of the Ramona Band, the 1962 Interlocutory Judgment did not fully quantify the Band's federal reserved water right. At the time, this Court concluded that the circumstances then did not require a quantification decree in order to fully protect the Band's water supply. The Ramona Band monitored groundwater use by its neighbors over the years and, in 2007, concluded that because of non-Indian development in the area, a legally protected amount of

---

[1] *Findings of Fact, Conclusions of Law and Interlocutory Judgment No. 41 Concerning the Rights to the Use of Waters of Santa Margarita River Stream System Held in Trust by the U.S.A. in Connection with the Ramona, Cahuilla and Pechanga Indian Reservations,* November 8, 1962 (IJ 41) (Document 4430).

water was necessary to ensure sufficient water to meet present and future needs. This Court granted the Ramona Band's motion to intervene for this purpose in 2007. (Document 4919).

**Argument**

This Court has broad discretion to stay litigation, or lift a stay, as part of its inherent power to control its docket. *Landis v. North American Co.,* 299 U.S. 248 (1936). The court's discretionary power should be exercised to promote "economy of time and effort for itself, for counsel, and for litigants." *Id.* at 254. *See, also*, CMAX, *Inc. v. Hall,* 300 F. 2d 265, 268 (9th Cir. 1962) (specific factors regarding stay). Conversely, lifting a stay even for a limited purpose is justified only if the balance of hardships and other circumstances that warranted a stay have significantly changed. *See, e.g. Canady v. Erbe Elektromedizin GmgH,* 217 F. Supp. 2d 64, 74 (D.D.C. 2002). Burnett does not address, and certainly has not met his burden to show that the reasons for staying this litigation have significantly changed.

    1.    <u>Burnett Has Not Shown Hardship</u>

Burnett has not met his burden to show that he will suffer hardship if the stay is not lifted. By blaming Indian Tribes, Burnett misunderstands the fundamental basis of this water quantification proceeding. First, the filing of the Band's complaint in intervention had no effect on Burnett's water rights, or his ability to develop his property. (His conclusory statements to the contrary in his Declaration are not

supported by specific facts showing causation). Neither the Ramona Band nor the Cahuilla Band has requested any preliminary relief that would enjoin or inhibit the production or use of water by Burnett during the pendency of the case. There is currently no order of this Court or any other court that would impede water use or development in the Anza Valley under the rights granted by the *Fallbrook* decree. If Burnett is unable to secure a community water system permit for his residential development from the County of Riverside, it is not due to the Bands' complaints. It may be that if the County is unwilling to issue the permit, it is because neither the Watermaster nor any other authority can certify that the groundwater system would have adequate water to serve the community's needs. The absence of quantified water rights for Anza residents is not attributable to the Bands' water case, but rather to the fact that none of the landowners who have rights under the *Fallbrook* decree have such rights quantified.[2] It is not the pendency of the Tribes' claims that precludes the County from issuing community water system permits, but rather the unique nature of the *Fallbrook* case itself, which declared adjudicated water rights without also quantifying them. Burnett would thus encounter the same purported obstacles even if the Bands had not intervened in the case in 2007.[3]

---

[2] *Findings of Fact, Conclusions of Law, and Interlocutory Judgment No. 33 Pertaining to Anza and Cahuilla Groundwater Basins,* December 11, 1962 (Interlocutory Judgment No. 33) (Document 4436).

[3] Even though Burnett's claims are meritless, as early as October 2016, the Ramona Band offered to work with Burnett to resolve this issue with the County. He

4

CIVIL NO.: 51-CV-1247-GPC-RBB

Without factual support, Burnett asserts that he has been powerless to protect against harm caused by the filing of the Ramona Band's complaint. His conduct immediately following the Band's intervention suggests he had the capacity to protect himself against alleged harm. Mr. Burnett actively participated in the early stages of the settlement negotiations, and was represented by counsel for this purpose. *Berkey Declaration* at ¶ 4. He was also a member of the Litigation Committee for the Anza-Aguanga Citizens for Water Rights, which functioned as a defense committee with regard to the Tribes' water rights claims. *See, Declaration of Gregory Burnett, et al. in Support of Motion to Quash, or Alternatively, Motion to Dismiss,* April 8, 2009 ¶ 6 (Document 5112) ("I am a member of the Litigation Committee for AACWR, an organization of more than 1,500 individuals formed for the purposes of defending [the Tribes'] complaints."). For reasons unknown to the Ramona Band, Burnett abandoned his efforts to cooperate with the Band and all other parties to resolve these claims through settlement. Nonetheless, throughout those negotiations, he has had the opportunity to participate. The landowner group in which he initially participated shared the cost of counsel. *Berkey Declaration* at ¶ 4.

2. <u>Burnett is Bound by the Ruling that His Predecessor Has A Correlative Water Right</u>

The Ramona Band refused to agree to lift the stay as to Burnett because there is

---

responded by filing this motion. *Declaration of Curtis Berkey* at ¶ 3. (hereafter *Berkey Declaration*)

no valid legal basis to his claim of a water right with priority over all others in the Basin. Burnett argues that the alleged fact that his land title derives from a federal patent issued to a predecessor railroad company in 1921 under an 1866 federal statute gives him a "superior" water right. He does not explain whether that water right is based on federal or state law, or how tracing one's land title to a federal railroad patent that was issued in 1921 confers any kind of water right, much less one superior to the Ramona Band's 1891 right.

Burnett's novel theory of water rights is contrary to the law of correlative water rights. In Interlocutory Judgment No. 33, the Southern Pacific Land Company, Burnett's predecessor, acquired a "correlative overlying right" to both the shallow aquifer and deep aquifer of the Anza Groundwater Basin. *Interlocutory Judgment No. 33,* ¶¶ 11, 12 (The Southern Pacific Land Company is listed on pages 3 and 24 of Exhibit B, the list of overlying landowners with correlative water rights). Under California law, correlative overlying water rights holders have the right to reasonable and beneficial use of water beneath their land, but they have no priority as against other correlative or riparian uses, and certainly not as against federal reserved water rights of Indian tribes. *See, Tehachapi-Cummings County Water Dist. v. Armstrong,* 49 Cal.App.3d 992 (5th Dist. 1975). Under principles of claim and issue preclusion, Burnett as a successor landowner is bound by the findings of Interlocutory Judgment No. 33, which were incorporated into the final judgment affirmed by the Ninth

Circuit in 1965. *United States v. Fallbrook Public Utility District,* 347 F. 2d 48 (9th Cir. 1965). There would be no purpose in lifting the stay when Burnett is precluded from asserting a new water rights theory in a motion to dismiss the Ramona Band's complaint. [4]

Burnett's theory overlooks a key feature of the 1866 Railroad and Telegraph Act. That statute protects Indian rights of occupancy against disposals of public domain lands to non-Indians. The Act provided that the railroad company must select other lands if any section had been "reserved . . . or otherwise disposed of" before it was granted to the railroad. Act of July 27, 1866, 14 Stat. 292, 295, sec. 3. The Supreme Court has held that possession of land by Indians falls within the "reserved lands" exception for railroad grants under an identical federal statute, even when such possession is not recognized in a ratified treaty. *Cramer v. United States,* 261 U.S. 219, 230 (1923). This statute raises complex and substantial legal and factual questions about whether Burnett's predecessor took its title subject to the Cahuillas' right of occupancy. To the extent Burnett relies on bare legal title to land as the basis for his water right, arguably that right cannot be deemed "superior" to the rights of

---

[4] Even if Burnett could raise his new legal theory on a motion to dismiss, he is not likely to be able to overcome controlling Supreme Court authority that the patenting of federal land from the public domain severs the water rights attached thereto. *See, e.g., California Oregon Power Co. v. Beaver Portland Cement Co.,* 295 U.S. 142, 158 (1935) (a patent issued under the public land laws of the United States conveys only title to the land, not rights to water); *Cappaert v. United States,* 426 U.S. 128, 139, n. 5 (1976) (federal patentees acquire water rights by "bona fide appropriation" as determined by state law).

the Ramona Band or Cahuilla Band, because Burnett's predecessor did not have clear title.  Litigation of this issue in the midst of settlement discussions serves no useful purpose, and would threaten to derail those negotiations.  Burnett can either participate in those discussions, as he has done previously, or take advantage of the opportunity to be given to all non-settling parties to object to the settlement agreement.  Because the pendency of the Band's claims and the on-going settlement discussions in no way impede his production of water pursuant to his correlative right, he is not harmed by postponing the litigation of this theory to an appropriate later time.

       3.      <u>Lifting the Stay Will Impede Progress in Settlement Discussions</u>

In 2008, this Court weighed the competing interests and granted the Ramona Band's and Cahuilla Band's request to stay the litigation in order to allow for settlement negotiations.  Since then, substantial progress toward a negotiated settlement has been achieved.  The Bands have reported on the status of the negotiations and requested extensions of the stay every three to four months.  With few exceptions, the settlement parties have supported extensions of the stay for this purpose, and, and as the status reports reflect, the discussions have resolved many significant issues, substantially narrowed differences among the parties, and simplified the remaining issues.  The current stay extends through July 17, 2017. (Document 5564).

8

CIVIL NO.: 51-CV-1247-GPC-RBB

Lifting the stay under these circumstances would disrupt the settlement discussions. Although Burnett's motion purports to limit the resumption of litigation to adjudication of his asserted superior water right, that limitation would not preclude other landowner parties in the Anza Groundwater Basin or Cahuilla Groundwater Basin from seeking to litigate the same or other factual and legal issues during the period the stay is not in effect. In fact, lifting the stay to adjudicate Burnett's motion is likely to encourage others to file the same or similar motions. Also, the parties currently participating in settlement negotiations may well be motivated to leave the settlement talks to focus exclusively on Burnett's dismissal motion, because Burnett's legal theory would arguably give him a right that is senior to <u>all</u> water users in the basins, not just the Bands. Because Burnett's motion threatens to end settlement negotiations and expand the litigation, the motion should be denied.

    4. <u>The Ramona Band has not Improperly Refused Burnett's Request</u>

Burnett also argues that the stay should be revoked because the Ramona Band has willfully refused to dismiss him when faced with evidence of his superior water right based on a derivative federal land patent in 1921. The Ramona Band carefully reviewed the evidence Burnett provided in support of his "superior" water right and concluded it lacked sufficient merit to warrant dismissal from the Band's complaints. On October 14, 2016, the Band responded in writing to Burnett's request, noting that the federal patent on which he relied was issued in 1921, more than 30 years after the

Ramona Reservation was established, and referring him to legal authorities that undermine his legal theory. *Berkey Declaration* at ¶ 4. There was no response to this letter until counsel for the Band received the demand from Burnett's counsel in late December to voluntarily dismiss him.

## Conclusion

Lifting the stay to allow litigation of a legal theory of water rights that lacks a sound basis in fact or law would unnecessarily disrupt settlement discussions that hold promise for resolving complex tribal water rights claims through a negotiated resolution. The motion should be denied.

Date: March 3, 2017                           Respectfully submitted,

                                                        BERKEY WILLIAMS LLP

                                                        By: *s/Curtis G. Berkey*
                                                            Curtis G. Berkey
                                                            2030 Addison Street, Suite 410
                                                            Berkeley, California  94704
                                                            Tel: 510/548-7070
                                                            Fax: 510/548-7080
                                                            E-mail: cberkey@berkeywilliams.com
                                                            *Attorney for Plaintiff-Intervenor,*
                                                            *Ramona Band of Cahuilla*