**REID & HELLYER**
A Professional Corporation
DAVID G. MOORE, State Bar No. 36078
MICHAEL G. KERBS, State Bar No. 131620
3880 Lemon Street, Fifth Floor
Post Office Box 1300
Riverside, California 92502-1300
Telephone: (951) 682-1771
Facsimile: (951) 686-2415

Attorneys for Defendant Gregory V. Burnett

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 51-cv-1247-GT-RBB |
| Plaintiff, | The Hon. Judge Gonzalo P. Curiel |
| v. | **REPLY TO OPPOSITIONS TO MOTION FOR RELIEF FROM STAY FOR LIMITED PURPOSE OF ALLOWING GREGORY V. BURNETT TO FILE A MOTION TO DISMISS INTERVENORS' SECOND AMENDED COMPLAINTS FILED BY RAMONA BAND AND CAHUILLA BAND OF INDIANS** |
| RAMONA BAND OF CAHUILLA, CAHUILLA BAND OF INDIANS, et.al., | |
| Plaintiffs-Intervenors, | |
| v. | |
| FALLBROOK PUBLIC UTILITY DISTRICT, et.al., | Date: April 7, 2017<br>Time: 1:30 p.m.<br>Dept: 2D<br>Judge: Hon. Gonzalo P. Curiel |
| Defendants. | |

    Defendant Gregory V. Burnett ("Burnett") hereby submits the following in reply to the Oppositions filed by the Ramona Band of Cahuilla Indians (the "Ramona Band") and the Cahuilla Band of Indians (the "Cahuilla Band")(collectively, the "Tribes") to the Motion for Relief from Stay for the Limited Purpose of Allowing Burnett to file a Motion to Dismiss:

/ / /

# I

# INTRODUCTION

Burnett seeks relief from this Court to lift the judicial stay so as to permit him to advance the argument that the Tribes cannot enjoin him from withdrawing surface and groundwater in the Anza Ground Water Basin because Burnett has a superior claim to such waters. In response, the Tribes refer to Burnett's argument as a "specious legal theory" and a "novel theory of water rights." (Ramona Opp., 6:11; Cahuilla Opp., 5:13.) Ironically, however, both Tribes advance the same exact theory in their Complaints in Intervention.

The Tribes' Complaints in Intervention seek relief in the form of an injunction enjoining landowners in the Anza Ground Water Basin from "withdrawing surface waters and groundwater...that are in conflict with the senior federal reserved water rights" of the Tribes. (¶14(3) and (5) and ¶¶33-38 of Docket Nos. 5181 and 5182.) This "specious legal theory" and a "novel theory of water rights" is further advanced by the statement made in the Cahuilla Band's Opposition that, "the Tribe is seeking to...protect its senior, federally reserved water rights to surface and groundwater underlying the Cahuilla Indian Reservation." (Cahuilla Opp., 6-7.) Why is it that Burnett is not permitted to do the same by defending against the Tribes' claims?

The Tribes argue that Burnett does not have this right because:

(1) permitting one man to exercise his legal rights would impede the progress of nearly nine years' worth of settlement discussions;

(2) despite being a defendant in a lawsuit for the last ten years and the owner of land that cannot be developed due to the uncertainty created by the lawsuit, Burnett has not been harmed and any harm he has suffered "cannot be placed ahead of the interests of the Tribe";

(3) Burnett should compromise his legal rights by settling with the Tribes because policy favors settlement; and,

REID & HELLYER APC
3880 LEMON STREET, FIFTH FLOOR
RIVERSIDE, CALIFORNIA 92502-1300
TELEPHONE (951) 682-1771

1  (4)  Burnett's claims are unlikely to succeed.

2  As discussed further below, none of the foregoing demonstrate why Burnett
3 should not be permitted to assert a viable legal claim that would, at last, remove him
4 as a party to this lawsuit and would otherwise not force him to compromise his legal
5 rights.

## II

## ARGUMENT

### A. The Tribes Speculate That Burnett's Request for Limited Relief Would Derail Settlement Discussions

By way of the Motion for Relief, Burnett seeks for this Court to lift the current stay only as it relates to him and only as it relates to his defense against the Tribes' Complaints in Intervention. According to the Tribes, however, this single act by one man to assert his legal rights would derail nearly nine years' worth of settlement discussions.

In support of this argument, the Tribes fail to produce anything more than speculative conjecture as to the impact should this Court grant Burnett's request, utilizing comments such as, "likely to encourage others to file the same or similar motions" and "may well be motivated to leave the settlement talks" and "[a]ll of the progress, hard work, and compromise...could be lost." (Ramona Opp., 9:8-13; Cahuilla Opp., 6:24-25.) The Tribes offer nothing in the way of actual proof that permitting Burnett to file a substantive motion would risk the purported progress achieved to date.

Instead, the Ramona Band argues that lifting the stay might induce others to file similar motions. (Ramona Opp., 9:8-9.) In other words, what Burnett's actions actually threaten is the Tribes' upperhand to stall indefinitely the assertion of legal rights by Burnett and others similarly situated. If there are others in Burnett's position, they too should be permitted to file substantive motions, especially ten years after being named to a lawsuit with no evidence of a resolution in the near future and

REID & HELLYER APC
3880 LEMON STREET, FIFTH FLOOR
RIVERSIDE, CALIFORNIA 92502-1300
TELEPHONE (951) 682-1771

no recognition by the one person placed in charge of administering water rights, the Watermaster. (See Burnett Decl., ¶3; See also, Burnett's Objections to Watermaster Report at Docket Nos. 5546 and 5560.)

The circumstances of this case have changed since the Court granted a stay of this action nine years ago. Nine years ago, Burnett and others similarly situated were hopeful that a resolution would be forthcoming, thereby eliminating the uncertainty created by the lawsuit, putting an end to the financial costs of being defendants in a lawsuit, and permitting them to develop land they owned. Today, Burnett is no longer hopeful for a resolution without this Court's assistance and everyday that Burnett remains a party to this action is one more day causing him financial and emotional harm. As such, arguments in the form of speculative conjecture do not demonstrate that the risk of settlement discussions being disrupted is greater than the harm being suffered by Burnett. For this reason, the Motion for Relief should be granted.

**B.  The Tribes Fail to Refute the Harm Being Suffered by Burnett and Unconvincingly Argue That the Balance of Harms Weighs in Their Favor**

In its Opposition, the Ramona Band argues that Burnett has not shown hardship if the stay is not lifted because "the filing of the Band's complaint in intervention had no effect on Burnett's water rights, or his ability to develop his property." (Ramona Opp., 3:22-28.) This argument not only runs contrary to the statements made in Burnett's Declaration filed with the Motion for Relief, but also runs contrary to the nature of the Tribes' Complaints in Intervention.

The Tribes seek to enjoin Burnett from withdrawing surface waters and groundwater...that are in conflict with the senior federal reserved water rights" of the Tribes. (¶14(3) and (5) and ¶¶33-38 of Docket Nos. 5181 and 5182.) While Burnet is not hindered in his use of water during the pendency of this action, the Tribes' request for relief creates an uncertainty in how much water will be available in the

REID & HELLYER  APC
3880 LEMON STREET, FIFTH FLOOR
RIVERSIDE, CALIFORNIA 92502-1300
TELEPHONE (951) 682-1771

future to support development, occupancy, and long-term residency. It is this uncertainty that has plagued Burnett's residential development and has made any investment in the residential development for lenders, the County of Riverside, and outside investors a risky proposition. (See, Burnett Decl., ¶5 filed with the Motion for Relief.)

The Cahuilla Band acknowledges that Burnett is suffering harm as a result of this action, but argues that Burnett's "financial concerns pale in comparison" to the Tribes' and "cannot be placed ahead of the interests of the Tribe." (Cahuilla Opp., 6:2 and 6:11-12.) In support, the Cahuilla Band states that "[s]ince time immemorial" the Tribe has used the waters in the Sub-Basin for subsistence and the members are dependent upon the water to provide a homeland for members and meet the needs of the 19,000-acre reservation. (Cahuilla Opp., 6:8-16.) Not only do such facts run contrary to the findings made in Interlocutory Judgment No. 41 (¶¶19 and 20 at p. 7, stating that only 12,988 acres are irrigable, only 32 members reside on the reservation, primary use of the water is for "limited domestic use and livestock purposes"), such facts are irrelevant to the Motion for Relief.[1]

Burnett is currently suffering harm as a direct result of the stay put into place in this action. The Tribes are not suffering any harm because, as the Ramona Band points out, there has been no preliminary relief in this action that prevents any party from production or use of the water. (Ramona Opp., 4:1-3.) In fact, the Tribes continually seek to extend the stay. The Court needs to consider the balance of the hardships as such hardships relate to the lifting of the stay, not the hardship that may result to the Tribes if Burnett is successful in asserting his legal rights. When this is done, sufficient grounds exist to grant the Motion for Relief.

---

[1] In addition to the points raised in the following paragraph, the statement that the Tribes have used the water from "time immemorial" is also irrelevant because of the judicial adjudication of the Tribes' priority date to water rights in Interlocutory Judgment No. 41. as the date the government established the reservation, which is consistent with *Winters v. United States* (1908) 207 U.S. 564, 576.

1 Additionally, the Tribes fail to address the fact that Burnett and others similarly situated have repeatedly gone unrecognized, unnamed, and unrepresented in the Watermaster Report. A watermaster is appointed to administer competing water rights, settle future disputes, and monitor use. (*Tehachapi-Cummings County Water Dist. v. Armstrong* (1975) 49 Cal.App.3d 992, 1002.) A failure to even recognize Burnett as a person that must be considered in the administration of water rights in the Anza Ground Water Basin, after repeatedly being requested to do so, demonstrates the current harm being suffered by Burnett and the potential for tremendous harm in the future when the Watermaster fails to account for Burnett in his management of the use of the water.

Finally, the Tribes fail to acknowledge the fact that Burnett has expended time and resources to participate in this action. Instead of recognizing this as a financial burden to Burnett, the Tribes fault him for abandoning such efforts after years of no progress and repeated non-recognition by the Tribes and the Watermaster.

Burnett has, and will continue to, suffer harm as a result of this action. "[T]he hard reality is that years-long litigation over [Indian] water rights works to no party's benefit, exacts enormous financial costs and creates further obstacles to long-range economic planning and development." (Carl Artman, Assistant Secretary for Indian Affairs, U.S. Department of Interior, March 18, 2008.) Burnett acknowledges that, in hundreds of cases throughout the United States, this noted "hard reality" exists and this case is no different. What makes this case different from the others, however, is the legal and viable claims of an innocent man needlessly caught in the middle. A man requesting that his voice be heard and not be lost amongst the large players to this action and not be disregarded by remarks such as his "personal rights...cannot be placed ahead of the interests of the Tribe." (Cahuilla Opp., 6:11-12.) For this reason, the Motion for Relief should be granted.

///

///

### C. The Tribes Cannot Force Burnett to Compromise His Rights

Rather than granting Burnett's request, the Cahuilla Band would have this Court "require Burnett to come to the negotiating table and work with the parties to develop a solution to the underlying issues." (Cahuilla Opp., 5:16-18.) While Burnett acknowledges the policy that the law **favors** and **encourages** parties to settle disputes, the law does not **require** persons to settle disputes. If Burnett's defense to the Tribes' Complaints in Intervention has merit, Burnett should not be forced to compromise his legal rights. It is this test of merit that Burnett seeks to obtain from this Court.

### D. Although Minimally Relevant to the Motion for Relief, the Tribes Have Not Demonstrated That a Motion to Dismiss Would be Without Merit

Burnett's defense against the Tribes' claim of a senior federal reserved water arises from the ability to show, through documents capable of judicial notice, that Burnett has a water right senior to that of the Tribes'. As set forth in the letter attached as Exhibit "A" to the Declaration of David G. Moore filed with the Motion for Relief, such claimed senior right derives from the tracing back of Burnett's real property title to a July 27, 1866 Congressional act creating the Railroad and Telegraph Line Lands Act (the "1866 Act").[2] It is upon this ground that Burnett will seek to dismiss the Tribes' Complaints in Intervention under Federal Rules of Civil Procedure Rule 12(b)(6) if the Court lifts the stay.

/ / /

/ / /

---

[2] The Ramona Band's argument that the 1866 Act cannot be used by Burnett to establish a prior property right because the statute protected Indian rights of occupancy ignores the impact of the California Land Claims Act, which barred Native Americans who failed to assert original occupancy claims within the statutory two-year window from relying on such a right in future disputes. (See, *Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.* (C.D. Cal. Mar. 20, 2015) 2015 U.S. Dist. LEXIS 49998, 28-29.)

The Tribes argue, however, that the stay should not be lifted because Burnett's claim is not likely to succeed. (Ramona Opp., pp. 5-8; Cahuilla Opp., pp. 7-8.) Due to the limited nature of the relief sought in the Motion for Relief, the following is not intended to be an exhaustive discussion of the issues raised, but Burnett will briefly refute each of the arguments made.

The Tribes argue that Burnett's title to the real property does not carry with it riparian rights. (Ramona Opp., 7:23-28; Cahuilla Opp., 7:15-27 and 8:1-7.) As the predecessor-in-interest to real property that was withdrawn by the federal government from the public domain and reserved for a federal purpose, however, Burnett has an implied federally reserved water right that originated with the 1866 Act.

Otherwise as owner of real property located in the Anza Valley and overlying the Anza Ground Water Basin, however, Burnett has overlying water rights:

> With regard to water in underground basins, 'courts typically classify water rights . . . as overlying, appropriative, or prescriptive.' Overlying rights are analogous to riparian rights, and are 'special rights to make use of groundwater under the owner's property.' An overlying right gives the owner the right 'to take water from the ground underneath for use on his land within the basin or watershed; it is based on the ownership of the land and is appurtenant thereto.' 'One with overlying rights has rights superior to that of other persons who lack legal priority, but is nonetheless restricted to a reasonable beneficial use.'

*United States v. East Mun. Water Dist.* (C.D. Cal. Aug. 4, 2009) 2009 U.S. Dist. LEXIS 70786, 148-149.

Due to the implied reserved right and/or Burnett's overlying water rights, the Cahuilla Band's argument that Burnett would have to prove appropriation or prescriptive rights, which would cause "substantial time, effort, and financial resources that the parties would need to shift from the settlement negotiations" is without merit. (Cahuilla Opp., 8:8-20 and fn. 8.)

The Ramona Band further argues that Burnett's defense will not prevail because his predecessor acquired a "correlative overlying right" to the waters of the Anza Groundwater Basin, which has no priority as against other correlative uses. (Id. at 6:11-28.) What is most interesting about this argument is that if Burnett's defense

1 fails based on this argument, then so do the Tribes' claims to, at least, groundwater, water from the shallow aquifer, and surface waters. (See, Interlocutory Judgment No. 41 at ¶7 at p. 2; ¶15 at p. 6; ¶25 at p. 8; ¶¶42 and 43 at p. 15; ¶2 at p. 16; ¶¶5 and 7 at p. 17 and ¶¶12 and 13 at p. 23, providing in sum that the groundwater, water from the shallow aquifer, and surface waters all contribute to the Santa Margarita river system and there are no appropriative or prescriptive rights to any waters that contribute to the Santa Margarita river system on "any of the lands which comprise the Ramona, Cahuilla and Pechanga Indian Reservations.") Therefore, based on Ramona Band's own argument, the Tribes only have a correlative overlying right to certain waters, which does not have priority and any attempt to establish quantification based on such purported priority, as they seek to do in the Complaints in Intervention, must fail.

Finally, the Tribes' argument regarding a patent is without merit. Burnett's title to the real property does not derive strictly from a patent, but rather, years of Congressional and Executive action. Furthermore, it has been said that, "[i]t is nearly hornbook that a patent passes to the patentee all interest the government has, on the date of that patent, to everything embraced within the meaning of the term 'land.'" (*Energy Transp. Systems, Inc. v. U. PAC. R. Co.* (D. Wyo. 1977) 435 F. Supp. 313, 317, citing to 63 Am.Jur., Public Lands, Section 73 and *Swendig v. Washington Water Power Co*. (1924) 265 U.S. 322, 331.) Here, the patent passed everything to Burnett's predecessor-in-interest, including an implied reserved water right.

Accordingly, while only minimally relevant to the instant motion before the Court, the foregoing demonstrates that granting Burnett's request for relief from the stay to file a motion to dismiss would not be an exercise in futility.

///

///

**IV**

# CONCLUSION

Based on all of the foregoing, the Motion, the Declarations of Gregory V. Burnett and David G. Moore, and on the moving papers, on the pleadings, papers, and records on file herein, and on such oral and documentary evidence as may be presented at the hearing, Burnett respectfully requests that this Court lift the stay for the limited purpose of allowing him the opportunity to file a Motion to Dismiss to test the merits of his claim.

DATED: March 13, 2017

REID & HELLYER
A PROFESSIONAL CORPORATION


By: __S/ MICHAEL G. KERBS__
DAVID G. MOORE
MICHAEL G. KERBS
Attorneys for Defendant Gregory V. Burnett

REID & HELLYER APC
3880 LEMON STREET, FIFTH FLOOR
RIVERSIDE, CALIFORNIA 92502-1300
TELEPHONE (951) 682-1771

S:\wp\T0699\001\PLEADINGS\REPLY [stay].wpd   -10-   Case No. 51-cv-1247
REPLY TO OPPOSITIONS TO MOTION FOR RELIEF FROM STAY FOR LIMITED PURPOSE