NAME AND ADDRESS OF ATTORNEY

Michael G. Kerbs, SBN 131620
Reid & Hellyer, APC
3880 Lemon Street, Fifth Floor/P.O. Box 1300
Riverside, CA 92502-1300

PHONE: (951) 682-1771

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

TRIAL JUDGE Gonzalo P. Curiel

COURT REPORTER NONE

Apellee RAMONA BAND OF CAHUILLA, CAHUILLA BAND OF INDIANS, et.al.,

(Appellant/Appellee)     Plaintiff

vs

Apellant Gregory V. Burnett

(Appellant/Appellee)     Defendant

CIVIL NO. 3:51-cv-01247-GPC-RBB

NOTICE OF APPEAL     (Civil)

Notice is hereby given that Gregory V. Burnett

Plaintiff ____ **x** ____ Defendant above named, hereby appeals to the United States Court of Appeals for the:     (check appropriate box)

**x** Ninth Circuit                    Federal Circuit

from the:     (check appropriate box)

_____ Final Judgment          **x** Order (describe)

entered in this proceeding on the ___6___ day of ___April___ 20_17_.
Transcripts required          Yes          **x** No.
Date civil complaint filed:          1/25/51

Date: 5/3/17                    /s/ MICHAEL G. KERBS
                                Signature

::ODMA\PCDOCS\WORDPERFECT\17861\1 May 5, 1999 (10:03am)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>RAMONA BAND OF CAHUILLA; CAHUILLA BAND OF INDIANS,<br><br>Plaintiff-Intervenors,<br>vs.<br><br>FALLBROOK PUBLIC UTILITY DISTRICT, et al.,<br><br>Defendants. | CASE NO. 51cv1247-GPC(RBB)<br><br>**ORDER DENYING DEFENDANT GREGORY BURNETT'S MOTION FOR RELIEF FROM STAY**<br><br>[Dkt. No. 5568.] |

On January 31, 2017, Defendant Gregory Burnett ("Burnett") filed a motion for relief from stay for the limited purpose of allowing him to file a motion to dismiss the Ramona Band of Cahuilla Indians and Cahuilla Band of Indians' second amended complaints in intervention. (Dkt. No. 5568.) Plaintiffs-Intervenors Cahuilla Band of Indians ("Cahuilla Band") and Ramona Band of Cahuilla ("Ramona Band") (collectively "Tribes") filed oppositions. (Dkt. Nos. 5575, 5576.) Burnett filed a reply. (Dkt. No. 5577.) The motions are submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). Based on the reasoning below, the Court DENIES Defendant's motion for relief from stay.

**Factual Background**

On January 25, 1951, the United States of America filed a complaint to "to quiet title to its rights to the use of waters of the Santa Margarita River systems in San Diego and Riverside counties, California." United States v. Fallbrook Pub. Util. Dist., 347 F.2d 48, 51 (9th Cir. 1965). The Court entered a series of forty-four Interlocutory Judgments. Id. at 61. Each interlocutory judgment made findings of fact and conclusions of law regarding the hydrology and water rights associated with particular sub-areas within the adjudication. The Court issued a Final Judgment and Decree on May 8, 1963. (Dkt. No. 4489.) On appeal, the Ninth Circuit Court of Appeals affirmed in part, reversed in part and remanded with instructions. Fallbrook Pub. Util. Dist., 347 F.2d at 61.

On November 8, 1962, the Court entered Interlocutory Judgment No. 41 which addressed the water rights as to the Tribes' reservations within the Santa Margarita River Watershed. (Dkt. No. 4430.) At the time, the Court did not quantify the Tribes' water rights, but reserved jurisdiction "to make such findings of fact, conclusions of law and judgment provisions in the future should the need occur." (Id. at 24.)

On October 6, 2006, the Cahuilla Band of Indians filed a motion to intervene as Plaintiffs which was granted on January 22, 2007. (Dkt. Nos. 4904, 4919.) On October 18, 2006, the Ramona Band of Cahuilla Indians filed a motion to intervene as Plaintiffs which was also granted on January 22, 2007. (Dkt. No. 4907, 4919.) The Pechanga Band of Luiseno Indians ("Pechanga Band") has been a plaintiff-intervenor and a party to this proceeding on its own behalf since 1975. (Dkt. No. 4790.) Pechanga has not sought to quantify its water rights but filed a compliant to protect its water rights. (Dkt. No. 4792.)

On January 23, 2007, Cahuilla Band and Ramona Band filed their complaints in intervention seeking to quantify the Tribes' water rights. (Dkt. Nos. 4920 at 5; 4921 at 1.) The Tribes filed first amended complaints in intervention in July 2007. (Dkt. Nos. 4936, 4937.) Then, the Tribes were granted leave to file a second amended

complaints in interventions which were filed on September 18, 2009. (Dkt. Nos. 5181, 5182.)

Ramona Band's second amended complaint in intervention seeks, *inter alia*, to quantify its "right to groundwater underlying the Ramona reservation in an amount sufficient to meet the present and future needs of the Ramona Band of Cahuilla on the Ramona Reservation." (Dkt. No. 5181, SAC in Intervention at 5.) It also seeks to enjoin Defendants from "withdrawing surface and groundwater in the Anza-Cahuilla Sub-Basin underlying the Ramona Reservation that are in conflict with the senior federal reserved water rights of the Ramona Band of Cahuilla and its members as, declared and decreed by this Court in Interlocutory Judgment No. 41." (Id.) Cahuilla Band also seeks to quantify the "federal reserved rights to the surface waters and groundwater underlying the Cahuilla Reservation within the Sub-Basin in an amount sufficient to meet the present and future needs of the Cahuilla Tribe on the Cahuilla Reservation, as declared and decreed by this Court in Interlocutory Judgment 41." (Dkt. No. 5182 at 9.) It similarly seeks to enjoin Defendants "from withdrawing surface waters and groundwater in the Sub-Basin underlying the Cahuilla Reservation that is in conflict with the senior, federal reserved water rights of the Cahuilla Tribe and its members, as declared and decreed by this Court in Interlocutory Judgment 41." (Id.)

Prior to the filing of the second amended complaints in intervention, on June 6, 2008, Plaintiff United States, Plaintiff-Intervenor Ramona Band, Plaintiff-Intervenor Cahuilla Band, Plaintiff-Intervenor/Defendant Pechanga Band, and Defendant Rancho California Water District filed a joint motion for a temporary stay of the proceedings in order to negotiate and engage in settlement discussion concerning each of the Tribes' unquantified water rights without the "need and cost of protracted litigation." (Dkt. No. 5007 at 2-3.) On June 13, 2008, Burnett, specially appearing since he had not yet been served with the complaints in intervention, filed an opposition to the stay. (Dkt. No. 5018.) Part of his argument was that he and thousands of landowners would be severely

prejudiced by the continued clouding of their land titles due to the litigation. (Id. at 4.) The moving parties filed a reply on June 23, 2008 contending that they have demonstrated sufficient hardship to justify a stay. (Dkt. No. 5036.) A hearing was held on June 30, 2008 (Dkt. No. 5047), and the Court granted the joint motion for a temporary stay of proceedings pending settlement negotiations and in ninety days, the moving parties were directed to appear before the Court and provide a status update on the settlement negotiations including the need for additional time. (Dkt. No. 5046.) The parties, including Burnett, submitted status reports, (Dkt. Nos. 5058, 5080, 5245), and at the hearing on September 29, 2008, the Court granted a further 180 day stay. (Dtk. No. 5062.) Since that time, the parties continued to submit status reports, including Burnett, and the Court held subsequent hearings on the status of the settlement negotiations. (See e.g., Dkt. No. 5062, 5075, 5095.)

Magistrate Judge Ruben B. Brooks started holding settlement conferences beginning in March 2009. (Dkt. No. 5096.) On May 18, 2010, at the request of Burnett and with the Tribes' support, Magistrate Judge Brooks was directed to oversee the settlement process. (Dkt. No. 5250.) The Court granted subsequent joint motions to stay until the most recent one filed on January 17, 2017, that expires on July 17, 2017. (Dkt. Nos. 5562, 5564.)

In his motion, Burnett asserts he owns over "500 acres of real property located in the Anza Valley and overlying the Anza Ground Water Basin." (Dkt. No. 5568-2, Burnett Decl. ¶ 1.) He is the owner and founder of a residential development known as Thomas Mountain Ranch overlying the Anza Ground Water Basin. (Id. ¶ 5.) He was named as a defendant in the complaints in intervention filed by the Ramona Band and the Cahuilla Band. (Id. ¶ 1.) He states that he has participated in and monitored the actions in this case since around 2007. (Id. ¶ 2.) He personally attended courts hearing, settlement conferences and filed documents with the Court. (Id.) Due to being named a defendant in this case, and the length of time it has been pending and the uncertainty that has arisen because of the Tribes' claims to superior water rights, he has been unable

to implement a small water system to support his development and he has been impeded in his ability to obtain financing to support the development. (Id. ¶ 5.) He also has spent countless hours trying to have his voice heard and ensure that his water rights are preserved which has resulted in loss of income, emotional distress and loss of goodwill to Thomas Mountain Ranch due to lack of developmental progress. (Id.)

He seeks a temporary lifting of the stay in order to allow him to file a motion to dismiss because he claims he has superior water rights to those of the Tribes that originate " via the July 27, 1866 Railroad and Telegraph Line Lands Act", and therefore he is not a proper party to the case.

## Discussion

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997) (citing Landis v. N. Am.Co., 299 U.S. 248, 254 (1936)). In determining whether to grant a motion to stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." Lockyer v. Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005). These interests include: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. Id. The burden is on the moving party. Clinton, 520 U.S. at 708.

"The corollary to this power is the ability to lift a stay previously imposed." Boyle v. County of Kern, No. 03cv5162-OWW-GSA, 2008 WL 220413, at 5 (E.D. Cal. Jan. 25, 2008). "[T]he court may abandon its imposed stay of litigation if the circumstances that persuaded the court to impose the stay in the first place have changed significantly." Canady v. Erbe Elektromedizin GMBH, 271 F. Supp. 2d 64, 75 (D.D.C. 2002) ("The same court that imposes a stay of litigation has the inherent power and discretion to lift the stay."). A court may lift the stay when "circumstances have

changed such that the court's reasons for imposing the stay no longer exist or are inappropriate." Id. at 74.

### A. Parties' Arguments

Burnett seeks to lift the stay for the limited purpose of filing a motion to dismiss the intervenors' second amended complaint based on the fact that he claims he has superior water rights and therefore, he is not a proper party to this action. He claims that he, and other small landowners, have been harmed because there is no indication that a settlement is likely in the near future and as such, the litigation has "placed a cloud over Burnett's water use" "has interfered with Burnett's attempts to implement a small water system to support Thomas Mountain Ranch" and affected his "ability to obtain financing to support the development." (Dkt. No. 5568 at 6.) Lastly, he claims that there is no guarantee that he will be adequately represented in any global settlement reached by the "large players" in this case.

Cahuilla Band first contends that circumstances have not changed to warrant the lifting of the stay. It argues that the parties have made "significant progress" towards a global settlement that resolves all the Tribes' claims. (Dkt. No. 5575 at 3.) This includes "drafting of a comprehensive settlement agreement, the identification of the issues that need to be resolved to conclude the settlement, the assigning of tasks and the collection of data and information needs (sic) to reach final resolution of the outstanding issues, and the establishment of a schedule for continued settlement negotiation." (Id. at 4.) Next, as to equities, Cahuilla asserts that Burnett's prejudice as a single landowner of a residential development pales in comparison to the issues of quantifying the Tribes' federally reserved water rights to surface and groundwater underlying its reservation since time immemorial and the approximate 600 members of the Cahuilla tribe that rely on the water in order to live on the reservation. Moreover, if the Court were to lift the stay to allow one landowner to file a motion to dismiss based on an alleged superior priority date and lack of jurisdiction, the entire settlement process will be jeopardized as resources would shift to handling Burnett's claims and

1 will open the door for other landowners to seek the same relief. The risk of the
2 unraveling of a global settlement outweighs Burnett's interests. Finally, Cahuilla Band
3 claims that Burnett's underlying claim of a superior water right is without any legal or
4 factual foundation.

5       Ramona Band argues that Burnett has not demonstrated that he will suffer
6 hardship if the stay is not lifted because the filing of the Tribes' complaints in
7 intervention had no effect on his water rights or his ability to develop the property but
8 he suffers hardship based on the unique nature of the Fallbrook case itself which
9 declared adjudicated water rights but did not quantify them. (Dkt. No. 5576 at 4-5.)
10 Irrespective of the Tribes' complaints, Burnett would still encounter the same obstacles
11 concerning the inability to secure a water permit from the County of Riverside.
12 Moreover, Ramona notes that Burnett was actively participating in the early stages of
13 the settlement negotiations and was represented by counsel and was also a member of
14 the Litigation Committee for the Anza-Aguanga Citizens for Water Rights, which
15 functioned as a defense committee concerning the Tribes' water rights claims. (Dkt.
16 No. 5112.) However, Burnett subsequently abandoned his participation in the
17 settlement proceedings. Furthermore, Ramona Band argues that lifting the stay will
18 impede and threaten to derail settlement negotiations because "[s]ubstantial progress"
19 has been made. (Dkt. No. 5576 at 9.) Lifting the stay would threaten to end settlement
20 negotiations and expand the litigation. Burnett's concerns can be addressed by either
21 participating in settlement negotiations or he can object to the settlement agreement at
22 a later point in time. Ramona Band finally argues that his alleged theory that he has
23 superior water rights is without merit.

24       In reply, Burnett argues that it is speculation that his limited relief would derail
25 settlement discussions and the Tribes offer no real proof. He further contends that if
26 there are other landowners in the same position as him, they should also be able to file
27 substantive motions. He argues that when the stay was put in place, he was hopeful a
28 resolution would be forthcoming but the circumstances have changed so that there is

1 | no longer any hope for a resolution and he continues to remain a party causing him
2 | financial and emotional harm.

3 | **B.   Analysis**

4 | While both parties cite generally to Landis as the standard to apply for imposing
5 | a stay, Burnett does not provide the legal standard to apply when seeking to lift a stay
6 | that has already been imposed. The Tribes both cite to Canady[1] as the standard to apply
7 | for lifting a stay and contend that no significant changes have occurred in the case to
8 | warrant lifting the stay. In reply, Burnett argues that circumstances have changed since
9 | the stay was imposed nine years ago. (Dkt. No. 5577 at 4.) Nine years ago, he was
10 | hopeful that a settlement would be forthcoming but today, he is no longer hopeful and
11 | everyday that he is a defendant is causing him financial and emotional harm. (Id.)
12 | When Plaintiff-Intervenor Ramona Band, Cahuilla Band, Pechanga Band, the
13 | United States and Rancho California Water District filed their joint motion for a
14 | temporary stay of proceedings, in June 2008, the United States, through the Department
15 | of Interior, had approved the appointment of a Federal Water Negotiating Team for the
16 | three Tribes in reaching settlements. (Dkt. No. 5007-2.) The appointment of a Federal
17 | Water Negotiating Team demonstrated the Tribes' commitment to reaching a settlement
18 | since no settlement could be reached without approval from the United States, as trustee
19 | and holder of legal title to the water. (Id. at 3-5) While the parties recognized that
20 | settlement negotiations could proceed while litigating the case, the enormity of not only
21 | the number of defendants which approximate about 3000 landowners and the
22 | complexity and breadth of the legal issues supported the stay in the interests of judicial
23 | economy. (Id.) For example, the usual simple task of service of process of a complaint
24 | had been significantly complicated due to the large number of defendants, up to 3000
25 | defendants, and the task of identifying the defendants and if relevant, the successors of
26 | the original parties. (Dkt. No. 5036 at 2-3.) Therefore, a stay of the complicated and
27 |
28 | _____
[1] Canady involved a motion to lift stay pending outcome of Patent and Trademark Office reexamination proceedings.

complex proceedings involving the interpretation of numerous interlocutory judgment relating to the parties' water rights, would allow the parties to focus on settlement. After a hearing, the Court stayed the proceedings. Burnett continued to participate in settlement negotiations and provided status reports opposing further stays and attended status hearings and settlement conferences with his last filing on April 27, 2010. (Dtk. No. 5245.) Since then, the docket does not reflect and it does not appear he attended any further settlement conferences. (See Dkt. No. 5576-1, Berkey Decl. ¶ 4.)

First, Burnett's alleged changed circumstance that he was initially hopeful for a settlement and now he is not hopeful is not supported by any factual bases. The evidence in the record does not support Burnett's view that settlement is not likely in the near future. In their opposition, the Tribes assert that the parties have made "significant" and "substantial" progress towards a global settlement that resolves all the Tribes' claims. (Dkt. No. 5575 at 3; Dkt. No. 5576 at 9.) According to the most recent joint motion to extend the stay filed on January 17, 2017, the settlement parties have "focused their discussions on refining the characteristics of the water rights to be recognized in the settlement agreement and measures to enhance water supplies in the basins. Further, discussions have included proposed revisions to the groundwater management plan under principles of safe yield, and the technical basis for those proposed revisions. These discussions are informing the development of a groundwater management plan that meets sustainability goals. The settlement parties have also discussed certain proposed revisions to the draft settlement agreement." (Dkt. No. 5562 at 2.) The existence of a draft settlement agreement indicates that settlement is near.

On January 5, 2017, counsel for Ramona Band responded to Burnett's letter asking that the Tribes dismiss him based on his superior water rights. (Dkt. No. 5568-1, Moore Decl. Ex. B.) In that letter, counsel noted that he is hopeful that settlement may be reached this year. (Id. at 11.)

Moreover, on June 16, 2016, Plaintiff-Intervenor/Defendant Pechanga Band, Rancho California Water District and United States submitted a status report on the

settlement of the Pechanga Band water rights claims. (Dkt. No. 5526.) In that status report, it was reported that a bill to ratify a proposed settlement was introduced and it was reported favorably out of the Senate Committee Indian Affairs without amendment on February 3, 2016 and a hearing on the proposed settlement was scheduled before the House Natural Resources Subcommittee on Water, Power and Oceans for June 23, 2016. (Id.) Contrary to Burnett's claims, these developments demonstrate that significant progress has been made and the parties are actively working towards a global settlement that is impending.

Next, as to Burnett's concern that the litigation has placed a cloud over his water use, impeded his development of Thomas Mountain Ranch and hindered his ability to obtain financing for the development do not demonstrate that significant changes have occurred that warrant the lifting of the stay. These concerns have remained consistent since the inception of the stay. While the Court recognizes that the stay imposed has lasted nine years and has affected the Defendant landowners, it also realizes that enormous litigation costs, time and judicial resources will have been saved if a settlement is reached. A settlement would benefit the Anza community as a whole. If the Court were to grant Burnett's motion, it may dismantle the nine years of negotiations, as allowing Burnett to file a motion to dismiss may open the floodgates to other Defendant landowners to assert, whether valid or not, their alleged superior water rights. Not only would granting Burnett's motion potentially derail nine years of settlement negotiations but it could result in many more years of protracted litigation.

Furthermore, even if the Court found merit to Burnett's claim and granted his dismissal from the case, the Fallbrook litigation affects all water users in the Santa Margarita River Watershed. Therefore, Burnett's water use, whether he has superior rights or not, will be a factor in any settlement concerning quantification of the parties' water rights. Any claim that Burnett or any other landowner has superior water rights to the Tribes may be addressed through the settlement negotiations which are currently

ongoing or may be addressed during the objection period before final court approval. Moreover, it is not clear whether Burnett, if he were dismissed from the case, would get approval for a water permit from the County of Riverside due to the existence of the litigation. Based on Ramona Band's counsel's letter, Burnett's immediate concerns may be adequately addressed if he works with the Ramona Band as it is already working with various parties to reach a resolution to the water system permit problem.

The original reason why the case was stayed was to allow the parties to negotiate a settlement instead of focusing on litigation as both would have involved significant time and resources. While nine years is a long period for a stay to be in place, it must be considered in light of the up to 3000 defendants in this case involving complicated technical and legal issues to resolve. The Court concludes that Burnett has not demonstrated a significant change that justifies lifting the stay at this time.

## Conclusion

Based on the above, the Court DENIES Defendant Gregory Burnett's motion for relief from stay for limited purpose of allowing Burnett to file a motion to dismiss intervenors' second amended complaints.

IT IS SO ORDERED.

DATED: April 6, 2017

HON. GONZALO P. CURIEL
United States District Judge

# PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF RIVERSIDE

I am a citizen of the United States and employed in Riverside County, California. I am over the age of eighteen years and not a party to the within-entitled action. My; my business address is 3880 Lemon Street, Fifth Floor, Post Office Box 1300, Riverside, California 92502-1300.

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of these documents via the court's CM-ECF system per Federal Rule of Civil Procedure 5(b )(2)(E). Any other counsel of record and parties will be served by first class mail this 3rd of May, 2017.

I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service. On May 3, 2017, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s):

**NOTICE OF APPEAL**

on the interested parties in this action as stated on the attached mailing list.

Executed on May 3, 2017, at Riverside, California.

[ ✓ ] (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Brenda M. Schenkkan
Type or print name                             Signature

-1-

## SERVICE LIST

ATTACHMENT A
UNITED STATES OF AMERICA V. FALLBROOK PUBLIC UTILITY DISTRICT, ET AL.,
CASE No. 51-cv-1247-GPC-RBB

Anna Gale James
40275 Curry Court
Aguanga, CA 92536

Archie D. McPhee
40482 Gavilan Mountain Road
Fallbrook, CA 92028

Barbara Cole
40225 Curry Court
Aguanga, CA 92536

Briar McTaggart
1642 Merion Way 40E
Seal Beach, CA 90740

Carl Gage
40685 Tumbleweed Trail
Aguanga, CA 92536

Carol Lueras
623 Beverly Blvd.
Fullerton, CA 96833

Carolyn Ellison
49975 Indian Rock
Aguanga, CA 92536

Diane Mannschreck
1600 Kiowa Ave
Lake Havasu City, AZ 86403

Donna Gage
40685 Tumbleweed Trail
Aguanga, CA 92536

Edward Lueras
623 Beverly Blvd.
Fullerton, CA 96833

John Ellison
49975 Indian Rock
Aguanga, CA 92536

John S Wilson
14205 Minorca Cove
Del Mar, CA 92014-2932

REID & HELLYER APC
3880 LEMON STREET, FIFTH FLOOR
RIVERSIDE, CALIFORNIA 92502-1300
TELEPHONE (951) 682-1771

-3-

**ATTACHMENT A**
**UNITED STATES OF AMERICA V. FALLBROOK PUBLIC UTILITY DISTRICT, ET AL.,**
**CASE No. 51-cv-1247-GPC-RBB**

Khyber Courchesne
1264 Page Street
San Francisco, CA 94117

Lester J. Marston, Esq.
Law Offices of Rapport and Marston
405 West Perkins Street
Ukiah, CA 95482

Mary E Lee
42010 Rolling Hills Drive
Aguanga, CA 92536

Michael J Machado
POBox 391607
Anza, CA 92539

Pamela M Machado
POBox 391607
Anza, CA 92539

Peggy Wilson
14205 Minorca Cove
Del Mar, CA 92014-2932

Robert Mannschreck
1600 Kiowa Ave
Lake Havasu City, AZ 86403

Thomas C Perkins
7037 Gaskin Place
Riverside, CA 92506