EXECUTION VERSION

# PECHANGA BAND OF LUISEÑO MISSION INDIANS WATER RIGHTS SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (this "*Agreement*") is made and entered into as of November 29, 2017, by and among the **PECHANGA BAND OF LUISEÑO MISSION INDIANS**, a federally recognized Indian Tribe ("*Pechanga*"), **RANCHO CALIFORNIA WATER DISTRICT**, a California water district organized pursuant to California Water Code section 34000 *et seq.* ("*RCWD*") and the **UNITED STATES OF AMERICA** acting by and through the Secretary of the Department of the Interior.

## RECITALS

A. In 1951, the United States initiated litigation over water rights in the Santa Margarita River Watershed in *United States v. Fallbrook Public Utility District et al.*, Civ. No. 3:51-cv-01247 (S.D.C.A.) ("*Adjudication Proceeding*").

B. The Adjudication Proceeding eventually expanded to include all water users within the Santa Margarita River Watershed, including three Indian Tribes (Pechanga, the Ramona Band of Cahuilla Indians, and Cahuilla Band of Indians). The United States, as trustee, represented all three tribes in the Adjudication Proceeding.

C. The U.S. District Court for the Southern District of California issued a series of interlocutory judgments establishing water rights for various water users as part of the Adjudication Proceeding. These interlocutory judgments were eventually encompassed in the Fallbrook Decree in 1966. The U.S. District Court retained jurisdiction to be able to interpret and enforce the Fallbrook Decree. The U.S. District Court in such role is hereinafter referred to as the "*Adjudication Court.*"

D. On November 8, 1962, the Adjudication Court issued Interlocutory Judgment No. 41 "concerning the rights to the use of waters of Santa Margarita River Stream System held in trust by the U.S.A. in connection with the Ramona, Cahuilla and Pechanga Indian Reservations."

E. In 1975, Pechanga filed a Complaint in Intervention in the Adjudication Proceeding to "enjoin the unlawful interference and destruction of its rights to the present and future use of the waters of the Santa Margarita River by the defendants named in this action." In 2006, the Cahuilla Band and the Ramona Band also filed Complaints in Intervention in the Adjudication Proceeding to quantify and enforce their water rights reserved in Interlocutory Judgment No. 41.

F. On December 21, 2006, Pechanga and RCWD entered into the Groundwater Management Agreement for the management of the water in the Wolf Valley Groundwater Basin (as that term is defined in such agreement).

1

G.     On January 8, 2008, Pechanga and EMWD entered a Recycled Water Agreement providing for the sale and purchase of recycled water.

H.     On March 13, 2008, Pechanga requested that the Secretary of the Interior seek settlement of the water rights claims involving Pechanga, the United States, and non-Federal third parties through the formation of a Federal Negotiation Team under the Criteria and Procedures for Participation of the Federal Government in Negotiations for the Settlement of Indian Water Rights Claims, 55 Fed. Reg. 9223. The Secretary agreed to form a Federal Negotiation Team on August 1, 2008.

I.     Recognizing that final resolution of Pechanga's claims to water rights and injuries to water rights in the Adjudication Proceeding and certain other claims against the United States and other parties may take many years, entail great expense, prolong uncertainty concerning the availability of water supplies, and seriously impair the long-term economic well-being of all Parties, Pechanga, RCWD and the United States, have agreed to settle permanently certain disputes as specified herein, and to seek federal funding, in accordance with applicable law, for the implementation of this Agreement.

J.     As part of this settlement, the Parties seek to enhance the capacity for delivery of ESAA Water (as hereinafter defined) as necessary to allow for deliveries to Pechanga, to improve the quality of effluent delivered to Pechanga pursuant to its Recycled Water Agreement with EMWD, and to improve water quality for the Wolf Valley Groundwater Basin.

K.     In keeping with its trust responsibility to Indian tribes and to promote tribal sovereignty and economic self-sufficiency, it is the policy of the United States to settle whenever possible water rights claims of Indian tribes without lengthy and costly litigation.

L.     The Parties seek to memorialize the settlement among them. The settlement is set forth in this Agreement, which includes the agreements attached as Exhibits that are listed in Section 1.3.

# AGREEMENT

In consideration of the respective representations, warranties, covenants and agreements contained in this Agreement, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

1. **Interpretation and Construction of Agreement.**

    1.1 **Definitions.** Capitalized terms used in this Agreement shall have the meanings set forth below.

"*Act*" means the Pechanga Band of Luiseño Mission Indians Water Settlements Act, Subtitle D of Title III of Public Law 114-322.

"*Adjudication Court*" means the United States District Court for the Southern District of California, which exercises continuing jurisdiction over the Adjudication Proceeding.

"*Adjudication Proceeding*" means litigation initiated by the United States regarding relative water rights in the Santa Margarita River Watershed in *United States v. Fallbrook Public Utility District et al.*, Civ. No. 3:51-cv-01247 (S.D.C.A.), including any litigation initiated to interpret or enforce the relative water rights in the Santa Margarita River Watershed pursuant to the Adjudication Court's continuing jurisdiction over the Fallbrook Decree.

"*AFY*" means acre-feet per Year.

"*Agency Agreement*" means a recorded document by which a real property owner of land located within the RCWD service area has assigned the right to manage any water rights appurtenant to such owner's real property to RCWD for the benefit of all RCWD customers.

"*Agreement*" means this agreement and the Exhibits attached hereto.

"*Allottee*" means an individual who holds a beneficial real property interest in an Indian allotment that is: (A) located within the Pechanga Reservation; and (B) held in trust by the United States.

"*Amended GMA*" means the "Amended and Restated Groundwater Management Agreement" between Pechanga and RCWD, setting forth terms and conditions governing their joint management of groundwater pumping from the Wolf Valley Groundwater Basin, which is hereby incorporated by reference. A copy of the Amended GMA is attached as Exhibit A.

"*Appendix*" means an attachment to this Agreement designated as an Appendix. For clarity, such term does not include Exhibits.

"*Claims*" means rights, claims, demands, actions, compensation or causes of action, whether known or unknown.

3

"*EMWD*" means Eastern Municipal Water District, a municipal water district organized and existing in accordance with the Municipal Water District Act of 1911, Division 20 of the Water Code of the State of California, as amended.

"*Enforceability Date*" means the date on which the Secretary publishes in the Federal Register the statement of findings described in section 3407(e) of the Act.

"*ESAA Capacity Agreement*" means the "ESAA Capacity Agreement", among Pechanga, RCWD and the United States which is hereby incorporated by reference. A copy of the ESAA Capacity Agreement is attached as Exhibit G.

"*ESAA Water Delivery Agreement*" means the agreement among Pechanga, RCWD and EMWD, establishing the terms and conditions of water service to Pechanga, which is hereby incorporated by reference. A copy of the ESAA Water Delivery Agreement is attached as Exhibit H.

"*Exhibit*" means an exhibit to this Agreement, each of which is hereby incorporated herein by this reference. For clarity, such term does not include any Appendix.

"*Extension of Service Area Agreement*" means the "Extension of Service Area Agreement", among Pechanga, EMWD, and MWD for the provision of water service by EMWD to a designated portion of the Pechanga Reservation using water supplied by MWD, which is hereby incorporated by reference. A copy of the Extension of Service Area Agreement is attached as Exhibit F.

"*Fallbrook Decree*" means the "Modified Final Judgment And Decree" entered in the Adjudication Proceeding on April 6, 1966, a copy of which is attached to this Agreement as Appendix 1. The term "Fallbrook Decree" includes all court orders, interlocutory judgments and decisions supplemental to the "Modified Final Judgment And Decree", including Interlocutory Judgment No. 30, Interlocutory Judgment No. 35, and Interlocutory Judgment No. 41.

"*Injury to Water Rights*" means an interference with, diminution of, or deprivation of water rights under Federal or State law.

"*Interlocutory Judgment No. 30*" means Interlocutory Judgment No. 30 issued in the Adjudication Proceeding on March 8, 1962, including all court orders, judgments and decisions supplemental to that interlocutory judgment.

"*Interlocutory Judgment No. 35*" means Interlocutory Judgment No. 35 issued in the Adjudication Proceeding on May 8, 1962, including all court orders, judgments and decisions supplemental to that interlocutory judgment.

"*Interlocutory Judgment No. 41*" means Interlocutory Judgment No. 41 issued in the Adjudication Proceeding on November 8, 1962, including all court orders, judgments and decisions supplemental to that interlocutory judgment.

"*Member*" or "*Members*" means any person or persons duly enrolled as members of the Pechanga Band of Luiseño Mission Indians.

"*MWD*" means The Metropolitan Water District of Southern California, a metropolitan water district organized and incorporated under the Metropolitan Water District Act of the State of California (Stats. 1969, Ch. 209, as amended).

"*Party*" means any entity represented by a signatory to this Agreement and "*Parties*" means more than one of such entities. The United States' participation as a Party shall be in the capacity as described in the definition of the term "United States".

"*Pechanga*" means the Pechanga Band of Luiseño Mission Indians, a federally recognized sovereign Indian tribe that functions as a custom and tradition Indian tribe, acting on behalf of itself and its members (but not members in their capacities as Allottees).

"*Pechanga Reservation*" means land depicted on the map attached as Exhibit I. The term "Pechanga Reservation" is solely for the purposes of this Agreement, the Act and any judgment or decree issued by the Adjudication Court approving the Agreement, and not for any of the Exhibits, and shall not be used for any other purpose.

"*Pechanga Water Code*" means a water code to be adopted by Pechanga in accordance with Section 7.

"*RCWD*" means the Rancho California Water District organized pursuant to California Water Code section 34000 *et seq.* and includes all real property owners for whom RCWD acts as an agent pursuant to an Agency Agreement.

"*RCWD Water Rights*" means RCWD's water rights in the Santa Margarita River Watershed, as the successor in interest to the Vail Company, as set forth in Interlocutory Judgment No. 30 and Interlocutory Judgment No. 35.

"*Recycled Water Agreement*" means the "Recycled Water Agreement (Agreement No. 04-07)", dated January 8, 2008, as amended by "Amendment No. 1 to Recycled Water Agreement (Agreement No. 04-07)" between Pechanga and EMWD, providing for the sale and purchase of recycled water, which is hereby incorporated by reference. A copy of the Recycled Water Agreement is attached as Exhibit B.

"*Recycled Water Infrastructure Agreement*" means the "Agreement for Recycled Water Infrastructure" among Pechanga, RCWD, and the United States, which is hereby incorporated by reference. A copy of the Recycled Water Infrastructure Agreement is attached as Exhibit E.

"*Recycled Water Scheduling Agreement*" means the "Agreement for Ordering, Scheduling, Delivery and Payment for Recycled Water" among Pechanga, EMWD and RCWD, which is hereby incorporated by reference. A copy of the Recycled Water Scheduling Agreement is attached as Exhibit D.

"*Recycled Water Transfer Agreement*" means the "Recycled Water Transfer Agreement" between Pechanga and RCWD, which is hereby incorporated by reference. A copy of the Recycled Water Transfer Agreement is attached as Exhibit C.

"*Santa Margarita River Watershed*" means the watershed that is the subject of the Adjudication Proceeding and the Fallbrook Decree.

"*Secretary*" means the Secretary of the United States Department of the Interior.

"*Section*" means a section or subsection of this Agreement.

"*Settlement Coordination Committee*" means the committee of individuals chosen by Pechanga and RCWD to coordinate the activities, actions and obligations established by this Agreement and in the Act.

"*State*" means the State of California.

"*Tribal Water Right*" means the water rights ratified, confirmed and declared to be valid for the benefit of Pechanga and Allottees, as specifically set forth and described in Section 2.

"*United States*" except as set forth in Section 2.1 hereof, means the United States or the United States of America acting in its capacity as trustee for Pechanga, its Members and Allottees.

"*Wolf Valley Groundwater Basin*" means that groundwater subject to the jurisdiction of the Adjudication Court located beneath Wolf Valley, as depicted in exhibit A-4 of the Amended GMA.

"*Year*" means a calendar year of January through December.

### 1.2 Construction.

(a) The words "include," "includes," and "including" will be deemed to be followed by "without limitation." The words "this Agreement," "herein," "hereof," "hereby," "hereunder," and words of similar import refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

(b) The Section headings contained in this Agreement are inserted for convenience only and shall not affect in any way, and shall not be considered in, the meaning or interpretation of this Agreement.

### 1.3 Exhibits.

(a) Following is a list of Exhibits included in this Agreement:

Exhibit A:   Amended and Restated Groundwater Management Agreement

        Exhibit B:      Recycled Water Agreement

        Exhibit C:      Recycled Water Transfer Agreement

        Exhibit D:      Recycled Water Scheduling Agreement

        Exhibit E:      Recycled Water Infrastructure Agreement

        Exhibit F:      Extension of Service Area Agreement

        Exhibit G:      ESAA Capacity Agreement

        Exhibit H:      ESAA Water Delivery Agreement

        Exhibit I:      Map depicting Pechanga Reservation

      (b)    All of the Parties have reviewed the Exhibits, and no Party shall object to or contest the terms and conditions of the Exhibits in any judicial, administrative or legislative proceedings relating to the approval, interpretation or enforcement of this Agreement.

      (c)    Amendments to Exhibits shall be governed by, and no Party shall have any right to object to an amendment to an Exhibit except as provided in <u>Section 17.3</u>.

      (d)    Each Exhibit shall be binding only on the specific parties to such Exhibit.

      (e)    No Party shall have, by reason of this Agreement, any third-party enforcement or other rights under any Exhibit to which said Party is not a party, unless otherwise provided in the Exhibit.

      (f)    A definition in an Exhibit shall be confined to the Exhibit in which it appears unless such definition is specifically incorporated by reference in this Agreement or in another Exhibit.

    **1.4**    **<u>Appendices</u>.**

      (a)    Following is a list of Appendices attached to this Agreement:

        Appendix 1:    Fallbrook Decree

        Appendix 2:    Form of Proposed Judgment and Decree

      (b)    Each Appendix is attached to this Agreement for informational purposes only and is not incorporated in or made part of this Agreement.

**2.**    **<u>Tribal Water Right</u>.**

**2.1** The Parties, including the United States in all of its capacities (except as trustee for Indian tribes other than Pechanga), ratify, confirm, declare to be valid, and shall not object to, dispute, or challenge in the Adjudication Proceeding, or in any other judicial, legislative or administrative proceeding, the Tribal Water Right as such is further described below.

**2.2** A Tribal Water Right of up to 4,994 acre-feet of water per year that, under natural conditions, is physically available on the Reservation is confirmed in accordance with the Findings of Fact and Conclusions of Law set forth in Interlocutory Judgment No. 41, as affirmed by the Fallbrook Decree.

**2.3** The Tribal Water Right as set forth in <u>Subsection 2.2</u> shall be held in trust by the United States on behalf of Pechanga and the Allottees in accordance with this section; include the priority dates described in Interlocutory Judgment No. 41, as affirmed by the Fallbrook Decree; and not be subject to forfeiture or abandonment.

**2.4** Subject to the terms of this Agreement, the Act, the Fallbrook Decree, and applicable Federal law, Pechanga may use the Tribal Water Right for any purpose on the Pechanga Reservation.

**2.5** Pechanga shall have the right, subject to applicable Federal law, to allocate water to all users on the Pechanga Reservation pursuant to the Pechanga Water Code and manage, regulate, and govern the use on the Pechanga Reservation of the Tribal Water Right in accordance with this Agreement.

**2.6** Pechanga and the United States recognize that, pursuant to 25 U.S.C. § 381, Allottees within the Pechanga Reservation are entitled to a just and equitable allocation of water by Pechanga for irrigation and domestic purposes from the Tribal Water Right.

**2.7** Pechanga and the United States shall not seek the enforcement of the Tribal Water Right in the Adjudication Proceeding for so long as this Agreement, including all of its Exhibits, remains in force and effect. In the event that this Agreement, or any of its Exhibits, is terminated for any reason, other than expiration of a stipulated term for such agreement, Pechanga and the United States shall have the right to seek enforcement of the Tribal Water Right without limitation. In the event of termination, if Pechanga or the United States seek enforcement of the Tribal Water Right RCWD shall have the right to unilaterally terminate the Amended GMA without further cause.

**2.8** Notwithstanding Section 3, in the event that this Agreement, or any of its Exhibits, is terminated for any reason after the Enforceability Date, other than expiration of a stipulated term for such agreement, 1) the Tribal Water Right survives the termination of this Agreement, or any of its Exhibits, and 2) the RCWD Water Rights survive the termination of this Agreement, or any of its Exhibits but the United States and Pechanga shall be able to object to any use of water by RCWD that is not authorized by the otherwise ratified and confirmed RCWD Water Rights.

3. **RCWD Water Rights.**

The Parties, including the United States, ratify, confirm, and declare to be valid the RCWD Water Rights. Subject to Section 2.8(2) regarding possible objections to unauthorized water use, the United States and Pechanga shall not object to, dispute, or challenge the RCWD Water Rights in the Adjudication Proceeding, or in any other judicial or administrative proceeding.

4. **Amended and Restated Groundwater Management Agreement.**

Pechanga and RCWD have entered into the Amended GMA, which agreement shall be enforceable in accordance with its terms.

5. **Recycled Water Agreements.**

    5.1   Pechanga and EMWD have entered into the Recycled Water Agreement, which agreement shall be enforceable in accordance with its terms.

    5.2   Pechanga and RCWD have entered into the Recycled Water Transfer Agreement, which agreement shall be enforceable in accordance with its terms.

    5.3   Pechanga, RCWD and EMWD have entered into the Recycled Water Scheduling Agreement, which agreement shall be enforceable in accordance with its terms.

    5.4   Pechanga, RCWD, and the United States have entered into the Recycled Water Infrastructure Agreement, which agreement shall be enforceable in accordance with its terms.

6. **ESAA and Related Agreements.**

    6.1   Pechanga, EMWD and MWD have entered into the Extension of Service Area Agreement, which agreement shall be enforceable in accordance with its terms.

    6.2   Pechanga, RCWD, and the United States have entered into the ESAA Capacity Agreement, which agreement shall be enforceable in accordance with its terms.

    6.3   Pechanga, EMWD and RCWD have entered into the ESAA Water Delivery Agreement, which agreement shall be enforceable in accordance with its terms.

7. **Pechanga Water Code.**

    7.1   No later than eighteen (18) months after the Enforceability Date, Pechanga shall enact a Pechanga Water Code governing the use of the Tribal Water Right. Any provisions of the Pechanga Water Code affecting the rights or interests of Allottees shall be approved by the

Secretary. The Secretary shall administer the Tribal Water Right until the Pechanga Water Code is enacted and required approvals are obtained from the Secretary, at which time Pechanga shall have authority, subject to the Secretary's authority under section 7 of the Act of February 8, 1887 (25 U.S.C. § 381), to manage, regulate and govern the use of the Tribal Water Right. The Pechanga Water Code shall include, at a minimum, the following provisions, subject to the approval of the Secretary:

    (a)    that allocations of water to Allottees shall be satisfied with water from the Tribal Water Right;

    (b)    that charges for delivery of water for irrigation purposes for Allottees shall be assessed on a just and equitable basis;;

    (c)    a process by which an Allottee may request that the Band provide water for irrigation or domestic purposes in accordance with the Act;

    (d)    a due process system for the consideration and determination by the Band of any request by an Allottee (or any successor in interest to an Allottee) for an allocation of such water for irrigation or domestic purposes on allotted land, including a process for appeal and adjudication of any denied or disputed distribution of water and resolution of any contested administrative decision;

    (e)    a requirement that any Allottee with a claim relating to the enforcement of rights of the Allottee under the Pechanga Water Code or relating to the amount of water allocated to land of the Allottee must first exhaust remedies available to the Allottee under tribal law and the Pechanga Water Code before initiating an action against the United States or petitioning the Secretary pursuant to subsection 3405(d)(4) of the Act;

    (f)    Pechanga's right to prohibit the severance of water rights from allotted lands;

    (g)    conditions, limitations and permit requirements relating to the storage, recovery and use of any portion of the Tribal Water Right in accordance with this Agreement;

    (h)    Pechanga's right to regulate the appurtenant right of allotted lands to an allocation of the Tribal Water Right, to ensure the use of such water on such allotted lands is reasonable and beneficial;

    (i)    a requirement that any Allottee who seeks an authorization to divert or pump water, not otherwise reported by Pechanga, for use on his or her allotment install and maintain, at his or her expense, devices to measure and record such diversion or pumping, and that the Allottee use his or her best efforts to maintain such measuring and recording devices in accordance with industry standards; and

  (j) a requirement that the Allottee report to Pechanga at least quarterly the diversions or pumping measured and recorded with the devices required by Section 7.1(h).

 **7.2** Nothing in this Agreement shall be construed to affect the right of an Allottee or any successor in interest to an Allottee to transfer, convey or lease pursuant and subject to all applicable Federal laws his or her interest in allotted lands, including appurtenant water rights, provided that such water rights remain appurtenant to such allotted lands.

**8.** **Waiver of Claims By Pechanga and the United States Acting in its Capacity as Trustee for Pechanga.**

 **8.1** Subject to the retention of rights set forth in Section 12, in return for recognition of the Tribal Water Right and other benefits as set forth in the Act and this Agreement, Pechanga, and the United States, acting as trustee for Pechanga hereby waive and release all claims for water rights within the Santa Margarita River Watershed that Pechanga, or the United States acting as trustee for Pechanga, asserted or could have asserted in any proceeding, including the Adjudication Proceeding, except to the extent that such rights are recognized in the Act and this Agreement.

 **8.2** Subject to the retention of rights set forth in Section 12, and notwithstanding any provisions to the contrary in this Agreement, Pechanga and the United States, on behalf of Pechanga and Allottees, fully release, acquit and discharge RCWD from the following Claims:

  (a) Claims for Injuries to Water Rights in the Santa Margarita River Watershed for land located within the Pechanga Reservation arising or occurring at any time up to and including June 30, 2009;

  (b) Claims for Injuries to Water Rights in the Santa Margarita River Watershed for land located within the Pechanga Reservation arising or occurring at any time after June 30, 2009 resulting from the diversion or use of water in a manner not in violation of this Agreement or the Act;

  (c) Claims for subsidence damage to land located within the Pechanga Reservation arising or occurring at any time up to and including June 30, 2009;

  (d) Claims for subsidence damage arising or occurring after June 30, 2009 to land located within the Pechanga Reservation resulting from the diversion of underground water in a manner consistent with this Agreement or the Act; and

  (e) Claims arising out of, or relating in any manner to, the negotiation or execution of this Agreement or the negotiation or execution of the Act.

**9.** **Waiver of Claims By RCWD.**

**9.1** Subject to the retention of rights set forth in Section 13, and in return for the ratification, confirmation and declaration to be valid of the RCWD Water Rights and other benefits, including the commitments by Pechanga and the United States as set forth in this Agreement and the Act, RCWD hereby waives and releases all claims for water rights within the Santa Margarita River Watershed that RCWD asserted or could have asserted in any proceeding, including the Adjudication Proceeding, except to the extent that such rights are recognized in the Fallbrook Decree.

**9.2** Subject to the retention of rights set forth in Section 13, and in return for the ratification, confirmation and declaration to be valid of the RCWD Water Rights and other benefits, including the commitments by Pechanga and the United States as set forth in this Agreement and the Act, RCWD fully releases, acquits and discharges Pechanga and the United States (solely in its capacity as trustee on behalf of Pechanga and Allottees) from the following Claims:

(a) Claims for Injuries to Water Rights in the Santa Margarita River Watershed for lands located outside the Pechanga Reservation arising or occurring at any time up to and including June 30, 2009;

(b) Claims for Injuries to Water Rights in the Santa Margarita River Watershed for lands located outside the Pechanga Reservation arising or occurring at any time after June 30, 2009 resulting from the diversion or use of the Tribal Water Right or any other water in a manner not in violation of this Agreement or the Act;

(c) Claims for subsidence damage to lands located outside the Pechanga Reservation arising or occurring at any time up to and including June 30, 2009;

(d) Claims for subsidence damage arising or occurring after June 30, 2009 to lands located outside the Pechanga Reservation resulting from the diversion of underground water in a manner not in violation of this Agreement or the Act; and

(e) Claims arising out of or relating in any manner to the negotiation or execution of this Agreement or the negotiation or execution of the Act.

**10.  Waiver by the United States Acting in Its Capacity as Trustee for Allottees.**

Subject to the retention of rights set forth in Section 12, in return for recognition of the Tribal Water Right and other benefits as set forth in the Act and this Agreement, the United States, acting as trustee for Allottees hereby waives and releases all claims for water rights within the Santa Margarita River Watershed that the United States, acting as trustee for the Allottees, asserted or could have asserted in any proceeding, including the Adjudication Proceeding, except to the extent that such rights are recognized in this Agreement and the Act..

**11.  Waiver by Pechanga as to the United States.**

12

Subject to the retention of rights set forth in Section 12, Pechanga hereby waives and releases:

(a) all Claims against the United States (including the agencies and employees of the United States) relating to claims for water rights in, or water of, the Santa Margarita River Watershed that the United States, acting in its capacity as trustee for Pechanga, asserted, or could have asserted, in any proceeding, including the Adjudication Proceeding, except to the extent that such rights are recognized in the Act and this Agreement;

(b) all Claims against the United States (including the agencies and employees of the United States) relating to damages, losses, or injuries to water, water rights, land, or natural resources due to loss of water or water rights (including damages, losses or injuries to hunting, fishing, gathering or cultural rights due to loss of water or water rights, claims relating to interference with, diversion or taking of water or water rights, or claims relating to failure to protect, acquire, replace, or develop water, water rights or water infrastructure) in the Santa Margarita River Watershed that first accrued at any time up to and including the enforceability date;

(c) all Claims against the United States (including the agencies and employees of the United States) relating to the pending litigation of claims relating to Pechanga's water rights in the Adjudication Proceeding; and

(d) all Claims against the United States (including the agencies and employees of the United States) relating to the negotiation or execution of this Agreement or the negotiation or execution of the Act.

12. **Reservation of Rights and Retention of Claims by Pechanga and the United States.**

Notwithstanding the waivers and releases authorized in the Act and provided in this Agreement, Pechanga and the United States retain:

(a) all Claims for enforcement of this Agreement and the Act;

(b) all Claims against any person or entity other than the United States and RCWD, including claims for monetary damages;

(c) all Claims for water rights that are outside the jurisdiction of the Adjudication Court;

(d) all rights to use and protect water rights acquired on or after the Enforceability Date of the Act; and

(e) all remedies, privileges, immunities, powers and Claims, including Claims for water rights, not specifically waived and released pursuant to the Act and this Agreement.

13. **Reservation of Rights and Retention of Claims by RCWD.**

13

Notwithstanding the waivers and releases provided in this Agreement, RCWD retains:

(a)  all Claims for enforcement of this Agreement and the Act;

(b)  all Claims against persons other than the Parties;

(c)  all Claims for water rights that are outside the jurisdiction of the Adjudication Court;

(d)  all rights to use and protect water rights acquired on or after the Enforceability Date of the Act; and

(e)  all remedies, privileges, immunities, powers and Claims, including Claims for water rights, not specifically waived and released pursuant to the Act and this Agreement.

## 14. Limitation of Effect.

Nothing in this Agreement or the Act:

(a)  affects the ability of the United States, acting as sovereign, to take actions authorized by law, including any laws relating to health, safety, or the environment, including—

    (i) the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. 9601 et seq.);

    (ii) the Safe Drinking Water Act (42 U.S.C. 300f et seq.);

    (iii) the Federal Water Pollution Control Act (33 U.S.C. 1251 et seq.); and

    (iv) any regulations implementing the Acts described in subparagraphs (i) through (iii);

(b)  affects the ability of the United States to take actions acting as trustee for any other Indian Tribe or an Allottee of any other Indian tribe;

(c)  confers jurisdiction on any State court—

    (i)  to interpret Federal law regarding health, safety, or the environment;

    (ii)  to determine the duties of the United States or other parties pursuant to Federal law regarding health, safety, or the environment; or

    (iii)  to conduct judicial review of Federal agency action; or

(d)  waives any claim of a Member of Pechanga in an individual capacity that does not derive from a right of Pechanga;

14

(e) limits any funding that RCWD would otherwise be authorized to receive under any federal law, including the Reclamation Wastewater and Groundwater Study and Facilities Act (43 U.S.C. 390h et seq.) as that Act applies to permanent facilities for water recycling, demineralization, and desalination, and distribution of nonpotable water supplies in Southern Riverside County, California;

(f) characterizes any amounts received by RCWD under this Agreement or the Act as Federal for purposes of section 1649 of the Reclamation Wastewater and Groundwater Study and Facilities Act (43 U.S.C. 390h-32); or

(g) affects the requirement of any Party to this Agreement or any of the Exhibits thereto to comply with the National Environmental Policy Act of 1969 (42 U.S.C. 4321 et seq.) or the California Environmental Quality Act prior to performing the respective obligations of that Party under this Agreement or any Exhibits to this Agreement.

## 15. Replacement, Substitution and Satisfaction.

**15.1** The benefits provided to Pechanga and Allottees under this Agreement and the Act shall be in complete replacement of, complete substitution for, and full satisfaction of all Claims of Pechanga against the United States that are waived and released pursuant to this Agreement and the Act.

**15.2** The benefits realized by the Allottees under this Agreement and the Act shall be in complete replacement of, complete substitution for, and full satisfaction of all Claims that are waived and released pursuant to this Agreement and the Act and any Claims of the Allottees against the United States that the Allottees have or could have asserted that are similar in nature to any claim described in this Agreement or the Act.

**15.3** Any entitlement of Pechanga or the United States on behalf of Pechanga and Allottees to water for lands located within the Pechanga Reservation shall be satisfied out of the Tribal Water Right and other benefits granted, confirmed or recognized by Pechanga and the United States on behalf of Pechanga and Allottees by this Agreement and in the Act.

## 16. Settlement Coordination Committee.

**16.1** The Parties shall establish the Settlement Coordination Committee to coordinate the activities, actions and obligations established by this Agreement and in the Act.

**16.2** The Settlement Coordination Committee shall be comprised of one (1) individual designated in writing by each Party. Each Party shall provide written notice to all other Parties of the individual designated to represent such Party on the Settlement Coordination Committee.

**16.3** The Settlement Coordination Committee shall meet regularly and in the first ten (10) years after the date of enactment of the Act, shall meet no less than every six (6) months. The first meeting shall be held within six (6) months of the date of enactment of the Act.

**16.4** The Chair of the Settlement Coordination Committee shall rotate among members every twelve (12) months. The first Chair of the Settlement Coordination Committee shall be the individual designated by Pechanga as its representative to the Settlement Coordination Committee.

## 17. Other Provisions.

**17.1 Other Tribes Not Adversely Affected.** Nothing in this Agreement quantifies or diminishes any land or water right, or any Claim or entitlement to land or water, of an Indian tribe, band, or community other than Pechanga.

**17.2 Entire Understanding.** This Agreement constitutes the entire understanding among the Parties. Evidence of conduct or statements made in the course of negotiating this Agreement, including, but not limited to previous drafts of this Agreement, is inadmissible in any legal proceedings other than one for approval or confirmation of this Agreement.

**17.3 Modifications to Agreement and Amendments to Exhibits.** No modification of this Agreement shall be effective unless it is in writing, signed by all Parties, and is approved by the Adjudication Court. Notwithstanding the foregoing, Exhibits to this Agreement may be amended by the parties to such Exhibits in accordance with their terms, without court approval, unless such approval is required in the Exhibit or by law; provided, however, that no amendment of any Exhibit may violate any provisions of the Act, or this Agreement, or adversely affect the rights under this Agreement of any Party who is not a signatory of such an amendment.

**17.4 Venue.** Any Party shall have the right to petition the Adjudication Court for such declaratory or injunctive relief as may be necessary to enforce the terms, conditions, and limitations of this Agreement and monetary relief as provided for in this Agreement.

**17.5 Governing Law.** This Agreement shall be construed in accordance with applicable Federal law.

**17.6 Successors and Assigns.** This Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties.

**17.7 Anti-Deficiency Act.** The expenditure or advance of any money or the performance of any obligation by the United States, in any of its capacities, under this Agreement shall be contingent upon appropriation of funds therefor. No liability shall accrue to the United States, in any of its capacities, in the event funds are not appropriated.

**17.8 No Benefit to Members of Congress or Resident Commissioners.** No member of or delegate to Congress or Resident Commissioner shall be admitted to any share of this Agreement or to any benefit that may arise herefrom. This restriction shall not be construed to extend to this Agreement if made with a corporation or company for its general benefit.

**17.9** **Federal Authority.** Subtitle D of Title III of Public Law 114-322 is the Act that authorizes the Federal action required to carry out this Agreement. If any amendment of the Act is enacted prior to the Enforceability Date that materially and adversely affects a Party's rights or interests under this Agreement without the written consent of that Party, then that Party, upon its written notice to all other Parties, shall be relieved of its rights, obligations, and entitlements hereunder; provided, however, that such written notice must be given no later than the Enforceability Date.

**17.10** **Notices.** All notices required to be given hereunder shall be in writing and may be given in person, by facsimile transmission, or by U.S. mail postage prepaid, and shall become effective at the earliest of actual receipt by the Party to whom notice is given, when delivered to the designated address of the Party, or if mailed, forty-eight (48) hours after deposit in the U.S. mail addressed as shown below or to such other address or addressee as such Party may from time to time designate in writing.

If to Pechanga:
    Mark Macarro
    Chairman
    Pechanga Band of Luiseño Indians
    P.O. Box 1477
    Temecula, CA 92593

With a copy to:

    General Counsel
    Pechanga Band of Luiseño Indians
    P.O. Box 1477
    Temecula, CA 92593

And to:

    Donald R. Pongrace
    Akin Gump Strauss Hauer & Feld LLP
    1333 New Hampshire Avenue, NW
    Suite 400
    Washington, DC 20036

If to the United States:
    Assistant Secretary for Indian Affairs
    U.S. Department of the Interior
    1849 C St. NW, 4660 MIB
    Washington, DC 20240-0001

And to:

```
                        Regional Director
                        Pacific Regional Office
                        Bureau of Indian Affairs
                        2800 Cottage Way
                        Sacramento, CA 95825

    And to:

                        Chief, Indian Resources Section
                        Environment and Natural Resources Division
                        U.S. Department of Justice
                        601 D Street, NW
                        Washington, DC 20004

    And to:

                        Associate Solicitor
                        Division of Water Resources
                        1849 C Street, NW  MS 6413
Washington, DC 20240
If to RCWD:             General Manager
                        Rancho California Water District
                        42135 Winchester Road
                        Temecula, CA 92590

                        And to:
                        James Gilpin
                        Best Best & Krieger LLP
                        655 West Broadway
                        15th Floor
                        San Diego, CA 92101
```

**17.11  Obligation to Seek Approval and Enforceability of Agreement.**

  (a)  The Parties shall cooperate in seeking approval of this Agreement by the Adjudication Court by jointly filing in the Adjudication Proceeding a proposed judgment and decree in substantially the same form as Appendix 2 to this Agreement.

  (b)  Each Party shall have the obligation to work in good faith to satisfy the conditions set forth in section 3407(e) of the Act.

18

(c)     Except as provided in Sections 17.11(a) and (b) and in certain Exhibits, no Party, by reason of its execution of this Agreement, shall be required to perform any of the obligations or be entitled to receive any of the benefits under this Agreement until the Enforceability Date.

**17.12  Authority to Execute.** By signing this Agreement each signatory represents and warrants that he or she has the authority to execute it. Without limitation of the foregoing, RCWD represents that it has full authority under each Agency Agreement to bind the property owner that is party to such Agency Agreement to this Agreement, and RCWD shall, and hereby does, indemnify, defend and hold harmless Pechanga and the United States against any Claim asserted by any such property owner and arising from or in connection with this Agreement.

**17.13  Duplicate Originals and Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall constitute an original, and all of which, when taken together, shall constitute one and the same instrument. This Agreement also may be executed in duplicate originals, each of which shall constitute an original Agreement.

**IN WITNESS WHEREOF,** the Parties have executed this Agreement dated as of the date first above written.

**PECHANGA BAND OF LUISEÑO MISSION INDIANS**

By: _____
     Tribal Chairman

Date: 11/29/17

Approved as to form:

By: _____

**RANCHO CALIFORNIA WATER DISTRICT**

By: _____
     General Manager

Date: 11/29/17

Approved as to form:

By: _____
     General Counsel

**THE UNITED STATES OF AMERICA**

By: _____
     Secretary of the Interior

Dated: 29 NOV 17