JAMES B. GILPIN, Bar No. 151466
james.gilpin@bbklaw.com
WHITNEY R. BLACKHURST, Bar No. 295239
whitney.blackhurst@bbklaw.com
BEST BEST & KRIEGER LLP
655 West Broadway, 15th Floor
San Diego, CA  92101
Telephone:  (619) 525-1300
Facsimile:  (619) 233-6118

Attorneys for Defendant
RANCHO CALIFORNIA WATER DISTRICT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FALLBROOK PUBLIC UTILITY DISTRICT, et al.,<br><br>　　　　　Defendant. | Case No.  51-cv-01247-GPC-RBB<br>Judge: Hon. Gonzalo P. Curiel<br><br>OBJECTION BY DEFENDANT RANCHO CALIFORNIA WATER DISTRICT TO PROPOSED WATERMASTER BUDGET FOR 2018-19 FOR THE SANTA MARGARITA RIVER WATERSHED |

**OBJECTION**

Defendant Rancho California Water District ("Rancho") objects to the Watermaster Office Budget ("Budget") published in Section 13 [Pages 107-111] of the Annual Watermaster Report for 2016-17. The objection is made on the grounds that the Budget includes the Watermaster's anticipated expenses in connection with the Anza Settlement Proceedings estimated to be $60,000, which are not broken out and are expected to be assessed to, and funded by, the current members of the Santa Margarita River Watershed Watermaster Steering Committee ("Steering Committee"), including Rancho, who are not parties to the Anza Settlement Proceedings and should not be required to pay for such expenses. Instead, the expenses, if approved, should be assessed to the parties to the Anza Settlement Proceeding.

Under its Order, the Court retained the right to assess other parties in the future. Since the time the Order was entered, the circumstances in the litigation have changed. Originally, most of the Watermaster activities were associated with the Santa Margarita and Murrieta-Temecula Groundwater Basins, with minimal activities related to the Anza Groundwater Basin. That changed in or about 2006 when the Cahuilla and Ramona Indian Reservations located in the Anza area intervened and initiated litigation related to alleged water rights in the Anza Groundwater Basin. The Watermaster, at the Court's request, began providing assistance in connection with the Anza Settlement Proceedings. The costs escalated from $18,000 in 2007, to $70,000 in 2015. The Watermaster's Office, past and present, has incurred in excess of $470,000 in expenses associated with the Anza Settlement Proceedings. The expenses are now the largest single task for the allocation of Watermaster billable hours and anticipated to be $60,000 in 2019.

The Watermaster's expenses are currently paid entirely by the members of the Steering Committee. None of the Steering Committee members, however, are parties to the Anza Settlement Proceedings. As a result, the entities and their rate payers should not be required to fund the Anza activities.

This objection is supported by the attached memorandum; the declaration of Eva Plajzer; the pleadings, records, and files in this action; and upon such other evidence and/or testimony as may be presented at the hearing.

## MEMORANDUM IN SUPPORT OF OBJECTION

Rancho objects to the inclusion in the Budget of expenses associated with the Anza Settlement Proceedings. Rancho is not a party to the Anza Settlement Proceedings and objects to being required to pay a portion of the costs incurred by the Watermaster in connection with the Anza Settlement Proceedings. Those expenses should be paid by the parties to the Anza Settlement Proceedings and not incorporated into the Budget and paid for solely by the members of the Steering Committee.

1. BACKGROUND.

In 1966, the Court entered a Modified Final Judgment and Decree ("Judgment") pursuant to which the Court retained continuing jurisdiction of all surface waters, and all underground or subsurface waters within the watershed of the Santa Margarita River. The Santa Margarita River Watershed principally includes three groundwater basins: (1) the Santa Margarita Groundwater Basin, (2) the Murrieta-Temecula Groundwater Basin, and (3) the Anza Groundwater Basin. The Santa Margarita Groundwater Basin is located along the Santa Margarita River at Camp Pendleton. The Murrieta-Temecula Groundwater Basin is located along Murrieta and Temecula creeks in the Upper Santa Margarita River Watershed. The Anza Groundwater Basin is located along Cahuilla Creek in the upper portion of the Santa Margarita River Watershed.

In March of 1989, the Court issued an Order appointing the Watermaster to administer and enforce the provisions of the Judgment and subsequent orders of the Court. The appointing Order described the Watermaster's powers and duties, as well as procedures for funding and operating the Watermaster's office.

The Court also appointed the Steering Committee to assist the Court and the Watermaster. The Steering Committee is currently comprised of representatives from Rancho, the United States of America, Fallbrook Public Utility District, Eastern Municipal Water District ("Eastern"), Metropolitan Water District of Southern California, Pechanga Band of Luiseño Mission Indians, and Western Municipal Water District. (Declaration of Eva Plazjer ("Plazjer Dec."), ¶ 5.)

On November 15, 2005, the Court entered an Order authorizing the Steering Committee to negotiate and execute an employment contract with Charles W. Binder to serve as the

LAW OFFICES OF
BEST BEST & KRIEGER LLP
655 WEST BROADWAY, 15TH FLOOR
SAN DIEGO, CA 92101

Watermaster for the Watershed. Thereafter, on February 21, 2006, the Steering Committee entered into a written agreement with Binder & Associates Consulting, Inc., to serve as the Watermaster for the Watershed. (Plazjer Dec., ¶ 6.)

In or about 2006, the Cahuilla and Ramona Indian Reservations located in the Anza area filed Motions to Intervene in the Fallbrook Litigation. Each sought to quantify federal reserved water rights in the Anza Groundwater Basin. On February 25, 2009, the Court ordered the Cahuilla Band and Ramona Band, as plaintiffs, to serve by April 30, 2009, all water right holders subject to the Court's jurisdiction within the entire Watershed. Service was completed and thereafter, the parties commenced settlement negotiations.

On April 1, 2009, the Cahuilla and Ramona Bands filed motions to dismiss claims against certain downstream defendants and limited their claims to the Anza-Cahuilla Groundwater Area. Accordingly, the Anza litigation does not include downstream defendants such as Rancho and the other members of the Steering Committee. (Plazjer Dec., ¶ 28.)

On or about January 4, 2016, Mr. Binder announced his decision to cease serving as the Watermaster as of the end of 2016. (Plazjer Dec., ¶ 6.) Following this announcement, the Steering Committee developed and undertook a proposed process for the search and selection of the new Watermaster. (*Id*. at ¶ 7.) The Steering Committee appointed a Watermaster Selection Committee, which conducted the selection process and designated three candidates to be considered for the appointment as the new Watermaster upon the retirement of Mr. Binder. (*Id*.)

On November 30, 2016, the Court appointed Michael J. Preszler, P.E., as the replacement Watermaster. (Plazjer Dec., ¶ 8; Order Appointing Replacement Watermaster For Santa Margarita River Watershed and Authorizing Contract Negotiations, November 30, 2016 [Docket No. 5551].) Thereafter, the Court authorized the Steering Committee to complete negotiations of an agreement with Mr. Preszler.

On or about February 1, 2017, the Steering Committee entered into a Professional Services Agreement with Mr. Preszler to provide the services described in the Professional Services Agreement and such other services as may be required in subsequent instructions and

1  orders of the Court and/or the Steering Committee ("Services").  (Plazjer Dec., ¶ 10, Ex. A.)
2  Thereafter, Mr. Preszler began serving as the Watermaster.  (*Id*.)

3  In May of 2017, the Steering Committee submitted a letter to the Watermaster formalizing
4  its on-going concerns regarding funding for work done in connection with the Anza Settlement
5  Proceedings.  (Plazjer Dec., ¶ 11, Ex. B.)  The concerns stemmed from the fact that members of
6  the Steering Committee were providing 100 percent of the funding for the Watermaster's work in
7  connection with the Anza Settlement Proceedings, but none of the members are parties to, or
8  involved in, the Anza Settlement Proceedings.  (*Id*.)  The Steering Committee requested that the
9  Watermaster formally address the issue with the Anza parties and/or Judge Curiel in an effort to
10 develop a resolution in which parties in the Anza Basin would contribute to cover all costs
11 associated with on-going Watermaster activities in the Anza Basin and associated legal
12 negotiations.  (*Id*. at ¶ 12.)

13 Thereafter, in October of 2017, the Steering Committee discussed seeking financial
14 restitution for the Watermaster activities in connection with the Anza Settlement Proceedings.
15 (Plazjer Dec., ¶ 13, Ex. C.)  The Steering Committee requested that the Watermaster prepare a
16 report on the historic expenses of the Watermaster activities in connection with the Anza
17 Settlement Proceedings.  (*Id*.)

18 On January 16, 2018, the Watermaster provided the Steering Committee with information
19 regarding the historic expenses associated with the Anza Settlement Proceedings.  (Plazjer Dec., ¶
20 14, Ex. D.)  The Watermaster informed the Steering Committee that a total of $491,000 (~
21 $41,000 per year) had been spent during the period of 2006 through 2017 in connection with the
22 Anza Settlement Proceedings.  (*Id*. at ¶ 15, Ex. E.)  The costs per year varied from $18,000 in
23 2007 to a high of $70,000 in 2015.  (*Id*.)  The work has become the largest single task for the
24 allocation of Watermaster billable hours.  (*Id*. at ¶ 17.)  Following the report, the Steering
25 Committee expressed its continued objection to funding the Anza Settlement costs and asked the
26 Watermaster to discuss the Steering Committee's concerns with the Court.  (*Id*. at ¶ 18.)

27 Thereafter, at the April 17, 2018, Watermaster Steering Committee Meeting, the
28 Watermaster advised the Steering Committee that he and his attorney had met with Judge Curiel

LAW OFFICES OF
BEST BEST & KRIEGER LLP
655 WEST BROADWAY, 15TH FLOOR
SAN DIEGO, CA 92101

LAW OFFICES OF
BEST BEST & KRIEGER LLP
655 WEST BROADWAY, 15TH FLOOR
SAN DIEGO, CA 92101

to discuss the Steering Committee's concerns over costs associated with the Watermaster's participation in the Anza Settlement Proceedings. (Plazjer Dec., ¶ 19, Ex. F.) The Watermaster reported that Judge Curiel requested the Watermaster to work with the parties to find a possible solution. (*Id*.)

The Watermaster and the Steering Committee arranged to meet with the Anza parties on July 17, 2018. (Plazjer Dec., ¶ 19, Ex. F.) At the meeting, the parties discussed potential approaches to resolve the dispute over covering the costs associated with ongoing Watermaster activities in the Anza Settlement Proceedings. (*Id*. at ¶ 20.) The Steering Committee and the Anza Parties were unable to reach an agreement to resolve the issue. (*Id*.)

Thereafter, the Steering Committee requested that in the 2019 Budget, the Watermaster break out the anticipated costs for assisting in the Anza Settlement Proceedings. On October 11, 2018, the Watermaster published a draft Annual Report for the Water Year 2016-17. In an email dated October 12, 2018, the Watermaster informed the Steering Committee that although the work effort in year 2018 was pretty light, the Watermaster office spent about $45,000 on the Anza task, including travel (~$1,200) and Watermaster attorney costs (~$10,000). (Plazjer Dec., ¶¶ 21, 22, Ex. G.) He anticipated that the 2019 Watermaster costs associated with the Anza Settlement Proceedings would be greater than those incurred in 2018, and, accordingly, budgeted $60,000 for year 2019. (*Id*.)

On November 8, 2018, Rancho submitted written comments to the Watermaster regarding the draft Annual Report for the Water Year 2016-17. (Plazjer Dec., ¶ 23, Ex. H.) In its comments, Rancho objected to the inclusion of costs associated with the Anza Settlement Proceedings. (*Id*.) Eastern also submitted comments on the October 11, 2018, draft. (Plazjer Dec., ¶ 24, Ex. I.) In its letter, Eastern also objected to the costs associated with the Anza Settlement Proceedings being included in the budget. (*Id*.)

On or about December 11, 2018, the Watermaster submitted a letter to the Court along with the Final Annual Watermaster Report for Water Year 2016-17. (Plazjer Dec., ¶ 25, Ex. J.) The letter provides that "Draft copies of this report were distributed to the Santa Margarita River Watershed Watermaster Steering Committee on October 11, 2018, and comments and suggestions

received were incorporated into the final report as appropriate." (*Id.*) Despite the request of the Steering Committee, the Budget does not include a line item for the expenses associated with the Anza Settlement Proceedings. (*Id.* at ¶ 26.) Nor does the Budget deal with the issue of who will pay for the expenses.

2. ARGUMENT

The roles and responsibilities of the Watermaster are set forth in the Order for the Appointment of a Steering Committee ("1989 Steering Committee Order") [Docket No. 4805] and include preparation of an Annual Watermaster Report, which includes a proposed budget. The Budget is established on an annual basis and is approved by the Court upon acceptance of the Annual Watermaster Report. Any party may object to the Annual Watermaster Report by submitting an objection to the Court within 30 days.

On or about December 13, 2018, Rancho received a copy of the Final Annual Watermaster Report for Water Year 2016-17. (Plazjer Dec., ¶ 27.) The Budget includes approximately $60,000 in anticipated expenses for the Anza Settlement Proceedings and provides that such expense will be assessed equally to the members of the Steering Committee. (*Id.* at ¶¶ 22, 29.) Rancho is not a party to the Anza Settlement Proceedings and, as a member of the Steering Committee, does not believe is should be required to pay any of the costs associated with the Anza Settlement Proceedings. (*Id.* at ¶¶ 28-30.)

All of the current members of the Steering Committee are public agencies, many of which have responsibilities to their ratepayers. Under the current Order, the members of the Steering Committee fund and pay for the expenses of the Watermaster. (Plazjer Dec., ¶ 18.) The Watermaster did not undertake work in the Anza basin until approximately 2006 when the Cahuilla and Ramona Bands filed Motions to Intervene as Plaintiffs-Intervenors in the proceeding. The Anza Settlement Proceedings have now become the largest single task for the allocation of Watermaster billable hours. (*Id.* at ¶ 17.) Rancho does not believe the intent of the original Order was to have the existing members continue to fund on-going extensive efforts outside of their service areas.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
655 WEST BROADWAY, 15TH FLOOR
SAN DIEGO, CA 92101

60028.00006\31740033.1 - 6 -

OBJECTION TO WATERMASTER
ANNUAL BUDGET
Case No. 51-cv-01247-GPC-RBB

1 In the 1989 Order, the Court specifically retained the right to "assess any other party using
2 water under the provisions of the applicable judgments, decrees and Orders for the Santa
3 Margarita River Watershed for the costs, fees and expenditures for the Watermaster." Rancho
4 believes the costs of the settlement efforts which it and the other members of the Steering
5 Committee have been funding should be borne by the parties to the Anza Settlement Proceedings.
6 (Plazjer Dec., ¶¶ 29-30.) The Steering Committee had requested that the costs associated with the
7 Anza Settlement Proceedings be presented as a separate line item in the proposed budget. (*Id*. at
8 ¶ 26.) However, Table 13.2 in the Draft Annual Report does not have a line item for the Anza
9 efforts. (*Id*.) Nonetheless, the Watermaster has reported that approximately $60,000 is included
10 in the Budget for anticipated work by the Watermaster in connection with the Anza Settlement
11 Proceedings in 2019. (*Id*. at ¶¶ 22, 29.)

12 The Anza Basin has little or no measurable effect on the downstream basins and none of
13 the members of the Steering Committee were identified as having rights or interests in the Anza
14 basin. The Report includes a separate section for the Anza Basin. As a result, Rancho and the
15 other members of the Steering Committee who are not parties to the settlement negotiations
16 should not be required to fund the activities of the Watermaster associated solely with the Anza
17 Settlement Proceedings.

18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

LAW OFFICES OF
BEST BEST & KRIEGER LLP
655 WEST BROADWAY, 15TH FLOOR
SAN DIEGO, CA 92101

60028.00006\31740033.1 - 7 -

OBJECTION TO WATERMASTER
ANNUAL BUDGET
Case No. 51-cv-01247-GPC-RBB

1  Accordingly, Rancho objects to the inclusion of the Watermaster's costs associated with
2  the Anza Settlement Proceedings in the Watermaster Budget and objects to the requirement that
3  Rancho be required to pay any of those expenses. If the Budget is approved, Rancho requests that
4  the Court specifically assess to the parties to the Anza Settlement Proceedings the costs of the
5  Watermaster associated with those proceedings. Those expenses should be paid by the parties
6  thereto.

Dated: January 11, 2019                                BEST BEST & KRIEGER LLP

By: /S/ James B. Gilpin
    JAMES B. GILPIN
    WHITNEY R. BLACKHURST
    Attorneys for Defendant RANCHO
    CALIFORNIA WATER DISTRICT

LAW OFFICES OF
BEST BEST & KRIEGER LLP
655 WEST BROADWAY, 15TH FLOOR
SAN DIEGO, CA 92101

60028.00006\31740033.1                           - 8 -                    OBJECTION TO WATERMASTER
                                                                                  ANNUAL BUDGET
                                                                          Case No. 51-cv-01247-GPC-RBB