1   JAMES B. GILPIN
    james.gilpin@bbklaw.com
2   WHITNEY R. BLACKHURST, Bar No. 295239
    whitney.blackhurst@bbklaw.com
3   Best Best & Krieger LLP
    655 West Broadway, 15th Floor
4   San Diego, CA 92101
    Telephone: 619-525-1300
5   E-mail: James.Gilpin@bbklaw.com

6
7   Attorney for Defendant RANCHO
    CALIFORNIA WATER DISTRICT

8
9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12   UNITED STATES OF AMERICA,          Case No. 51-01247-GPC-RBB
                                        Judge: Hon. Gonzalo P. Curiel
13              Plaintiff,
                                        DECLARATION OF EVA PLAZJER
14        v.                            IN SUPPORT OF OBJECTION BY
                                        DEFENDANT RANCHO
15   FALLBROOK PUBLIC UTILITY           CALIFORNIA WATER DISTRICT TO
     DISTRICT, et al.,                  PROPOSED WATERMASTER
16                                      BUDGET FOR 2018-19 FOR THE
                Defendants.             SANTA MARGARITA RIVER
17                                      WATERSHED

18

19

20

21

22

23

24

25

26

27

28

1     I, Eva Plazjer, declare as follows:

2     1.     This declaration is submitted in support of the objection made by

3     Rancho California Water District ("Rancho") to the proposed Watermaster Budget

4     for 2018-19 ("Budget"), as published in the Annual Watermaster Report for 2016-

5     17.  I have personal knowledge of the facts contained herein and, if called to testify,

6     could competently testify thereto in a court of law.

7     2.     I am currently employed by Rancho as the Assistant General Manager

8     and have held that position since May of 2016.

9     3.     Rancho is a California Water District organized and operated pursuant

10    to the California Water District Law (Water Code, § 34010, et seq.).  Rancho was

11    formed to provide water service to an area known as Temecula/Rancho California,

12    which includes the City of Temecula, portions of the City of Murrieta, and

13    unincorporated areas of southwest Riverside County.

14    4.     Rancho is a party to the underlying proceeding and a member of the

15    Santa Margarita River Watershed Watermaster Steering Committee ("Steering

16    Committee").

17    5.     The Steering Committee currently includes representatives of Rancho,

18    the United States of America, Fallbrook Public Utility District, Eastern Municipal

19    Water District ("Eastern"), Metropolitan Water District of Southern California,

20    Pechanga Band of Luiseño Mission Indians, and Western Municipal Water District.

21    I have served as the Rancho representative on the Steering Committee since

22    October of 2016.

23    6.     I am informed and believe and on that basis declare that from

24    approximately February of 2006 up and until the end of 2016, Charles W. Binder

25    served as the Watermaster for the Watershed.  On or about January 4, 2016, Mr.

26    Binder announced his decision to cease serving as the Watermaster as of the end of

27    2016.

28

60028.00006\31733122.2               - 2 -               DECLARATION OF EVA PLAZJER
                                                         CASE NO. 51-01247-GPC-RBB

7.      Following the announcement, the Steering Committee developed and undertook a process to search for and select a replacement Watermaster.   The Steering Committee appointed a Watermaster Selection Committee, which conducted the selection process and designated three candidates to be considered for the appointment by the Court.

8.      On November 30, 2016, the Court selected and appointed Michael J. Preszler, P.E., to serve as the replacement Watermaster.

9.      In the Order Appointing Replacement Watermaster For Santa Margarita River Watershed and Authorizing Contract Negotiations dated November 30, 2016 (Docket No. 5551), the Court authorized the Steering Committee to complete negotiations of an agreement with Mr. Preszler.

10.     I was involved in the negotiations with Mr. Preszler and, on or about February 1, 2017, the Steering Committee and Mr. Preszler entered into a Professional Services Agreement to provide the Watermaster services described in the agreement.   A true and correct copy of the Professional Services Agreement is attached hereto as Exhibit "A."

11.     In May of 2017, the Steering Committee submitted a letter to the Watermaster formalizing its ongoing concerns regarding funding the Watermaster's efforts for work done in connection with the Anza Settlement Proceedings.   The concerns stemmed from the fact that members of the Steering Committee were providing 100 percent of the funding for the Watermaster's work in connection with the Anza Settlement Proceedings and none of the members of the Steering Committee were parties to, or involved in, the Anza Settlement Proceedings.   A true and correct copy of the May 31, 2017, letter is attached hereto as Exhibit "B."

12.     The objective of the Steering Committee was to have parties in the Anza Basin contribute to cover all costs associated with ongoing Watermaster activities in the Anza Basin and associated legal negotiations.   The Steering

Committee requested that the Watermaster formally address the issue with the Anza parties and/or the Court.

13.     On or about October 17, 2017, I attended a Watermaster Steering Committee Meeting where the Steering Committee gave an update on the ongoing discussion pertaining to financial restitution for the Watermaster's activities in connection with the Anza Settlement Proceedings.   The Steering Committee requested that the Watermaster prepare a report on the historic expenses.   A true and correct copy of the October 17, 2017, Meeting Minutes is attached hereto as Exhibit "C."

14.     On or about January 16, 2018, I attended another Watermaster Steering Committee Meeting where the Watermaster provided the Steering Committee with information regarding the historic expenses associated with the Anza Settlement Proceedings.   A true and correct copy of the January 16, 2018, Meeting Minutes is attached hereto as Exhibit "D."

15.     During the meeting, the Watermaster gave an update on the costs per year to the Watermaster's office with respect to the ongoing Watermaster involvement in the Anza Settlement Proceedings.   He informed the Steering Committee that a total of $491,000 (~ $41,000 per year) had been spent during the period of 2006 through 2017.   Costs per year varied from $18,000 in 2007 to a high of $70,000 in 2015.   A true and correct copy of a Memorandum prepared by the Watermaster dated January 5, 2018, regarding "Annual Budget Report for 2017 and Anza Indian Water Rights Settlement Summary Costs," which was distributed to the Steering Committee, is attached hereto as Exhibit "E."

16.     I am informed and believe and on that basis declare that the Anza Settlement work was performed at the direction of the Court under the auspices of "other duties as directed by the court" as set forth in the 1989 Order.

17.     The Anza Settlement work has now become the largest single task for the allocation of Watermaster billable hours.

18.     Following the report, the Steering Committee expressed its continued objection to funding the costs of the Anza Settlement Proceedings.  The Budget has been and continues to be funded by Rancho and the other members of the Steering Committee.   None of the members of the Steering Committee are parties to the Anza Settlement Proceedings – they are public agencies whose rate payers are being required to pay the expenses incurred as part of the Anza Settlement Proceedings – and the Anza Basin is not proximate to Rancho's service area and/or does not impact the portion of the Santa Margarita River Watershed where Rancho has interests.  As a result, the Steering Committee asked the Watermaster to discuss the Steering Committee's concerns with the Court.

19.     On or about April 17, 2018, I attended the Watermaster Steering Committee Meeting.  During the meeting, the Watermaster advised the Steering Committee that he and his attorney had met with the Court to discuss the Steering Committee's concerns over costs associated with the Watermaster's participation in the Anza Indian Water Rights Settlement process.  The Watermaster reported that the Court had directed him to work with the parties in an attempt to find a possible solution.   As a result, a meeting between the representatives of the Steering Committee and the Anza Settlement Proceedings was scheduled for July 17, 2018, prior to the regularly scheduled Steering Committee meeting.  A true and correct copy of the April 17, 2018, Meeting Minutes is attached hereto as Exhibit "F."

20.     On July 17, 2018, I, along with Rancho's legal counsel, attended a meeting with the Watermaster, other members of the Steering Committee and their respective counsels, and some counsel from the Anza Settlement group.  During the Meeting, the parties discussed possible approaches but were unable to reach any agreement regarding funding the Watermaster's expenses associated with the Anza Settlement Proceedings.

/ / /

21. On or about October 12, 2018, I received an email from the Watermaster related to his proposed costs associated with the Anza Settlement Proceedings. A true and correct copy of the October 12, 2018, email is attached hereto as Exhibit "G."

22. The Watermaster reported that for year 2018, his office spent about $45,000 on Anza Settlement-related tasks, which included travel costs of about $1,200 and Watermaster attorney costs of about $10,000. He stated that the work effort in year 2018 was pretty light and anticipated that the 2019 Watermaster costs associated with the Anza Settlement Proceedings would be greater. Accordingly, he budgeted $60,000 for year 2019 for his work associated with the Anza Settlement, which I understand included Watermaster, expenses, and cost for the Watermaster Attorney.

23. In response, on or about November 8, 2018, I submitted written comments on behalf of Rancho to the Watermaster. The comments included Rancho's objection to inclusion of costs associated with the Anza Settlement Proceedings in the Budget. A copy of the November 8, 2018, letter is attached hereto as Exhibit "H."

24. I also received a copy of a letter dated November 8, 2018, which included comments submitted by Eastern to the Draft Annual Report for the Water Year 2016-17 published on October 11, 2018. A true and correct copy of the November 8, 2018, letter is attached hereto as Exhibit "I."

25. On or about December 11, 2018, the Watermaster submitted a letter to the Court along with the Final Annual Watermaster Report for Water Year 2016-17. The letter provides that "Draft copies of this report were distributed to the Santa Margarita River Watershed Watermaster Steering Committee on October 11, 2018, and comments and suggestions received were incorporated into the final report as appropriate." A true and correct copy of the December 11, 2018, letter is attached hereto as Exhibit "J."

26.     Rancho and other members of the Steering Committee had requested that the Budget include a line item for the expenses associated with the Anza Settlement Proceedings.   This was not done and the proposed Budget does not include the requested line item.

27.     On or about December 13, 2018, Rancho received a copy of the Final Annual Watermaster Report for Water Year 2016-17.

28.     Rancho is not a party to the Anza Settlement Proceedings, but as a member of the Steering Committee, pays a pro rata share of the Watermaster's expenses.  The following are the amounts paid by Rancho since 2006:

| Date | Amount |
|------|--------|
| 2006 | $65,789.60 |
| 2007 | $49,750.00 |
| 2008 | $94,450.00 |
| 2009 | $78,355.00 |
| 2010 | $79,845.00 |
| 2011 | $83,730.00 |
| 2012 | $89,690.00 |
| 2013 | $93,460.00 |
| 2014 | $95,610.00 |
| 2015 | $99,700.00 |
| 2016 | $106,300.00 |
| 2017 | $109,084.64 |
| 2018 | $82,210.82 |
| Total | $1,127,975.06 |

29.     Rancho objects to Section 13 – Watermaster Office Budget as published at Pages 107-111 of the Annual Watermaster Report for 2016-17.  The objection is made on the grounds that the Budget includes anticipated expenses of

1   the Watermaster in connection with the Anza Settlement proceedings estimated to

2   be $60,000 which are not broken out and which should not be allocated to Rancho

3   and/or the other members of the Steering Committee to pay.

4        30.   The current members of the Steering Committee should not be

5   required to fund the costs incurred by the Watermaster in connection with the Anza

6   Settlement Proceedings.  Instead those costs should be funded by the parties to the

7   Anza Settlement Proceeding.

8        31.   I have personal knowledge of the facts contained herein, and, if called

9   to testify, could competently testify thereto in a court of law, except at to those

10  matters stated on information and belief.

11

12  Executed this _10_ day of January, 2019, at Temecula, California.

13

14                             Eva Plazjer

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# PROFESSIONAL SERVICES AGREEMENT BETWEEN SANTA MARGARITA RIVER WATERSHED WATERMASTER STEERING COMMITTEE AND MICHAEL J. PRESZLER CONSULTING, INC. dba CALIFORNIA WATER CONSULTING

## 1.   PARTIES AND DATE.

This Agreement is made and entered into this February 1,2017, by and between SANTA MARGARITA RIVER WATERSHED WATERMASTER STEERING COMMITTEE ("STEERING COMMITTEE") and Michael J. Preszler Consulting, Inc., a California corporation, transacting business under the fictitious business name of California Water Consulting ("CONSULTANT").   STEERING COMMITTEE and CONSULTANT are sometimes individually referred to as "Party" and collectively as "Parties" in this Agreement.

## 2.   RECITALS.

2.1   In 1966; a Modified Final Judgment and Decree ("Judgment") was entered by the United States District Court ("Court") in the case of the United States v. Fallbrook Public Utility District, et al., Case No. 1247-SD-T ("Fallbrook Case"), pursuant to which the Court retained continuing jurisdiction of all surface waters, all underground or subsurface waters within the Watershed of the Santa Margarita River Watershed and appointed a Watermaster to administer and enforce the provisions of the Judgment.

2.2   On February 3, 1989, the Court entered an Order for the Appointment of a Steering Committee ("1989 Steering Committee Order") [Docket No. 4805] in the Fallbrook Case appointing a steering committee known as the Santa Margarita River Watershed Watermaster Steering Committee ("STEERING COMMITTEE") to assist the Watermaster and the Court in oversight and management of the case.   The Duties and Responsibilities of the STEERING COMMITTEE are attached hereto and incorporated herein as Exhibit "A."

2.3   Initially, STEERING COMMITTEE was comprised of a representative appointed by each of the following parties: the United States of America, Fallbrook Public Utility District, and Rancho California Water District.   STEERING COMMITTEE is currently comprised of a representative appointed by the United States of America, Fallbrook Public Utility District, Rancho California Water District, Eastern Municipal Water District, Metropolitan Water District of Southern California, Pechanga Band of Luiseño Mission Indians, and Western Municipal Water District.

2.4   Pursuant to the 1989 Steering Committee Order, the duties and responsibilities of STEERING COMMITTEE include the responsibility to recommend to the Court a candidate for the position of Watermaster in the Santa Margarita River Watershed.

2.5   Following a search and submission of a Motion to Appoint a New Watermaster by the STEERING COMMITTEE, the Court has appointed Michael J. Preszler of Michael J. Preszler Consulting, Inc., doing business as California Water Consulting, to serve as

Watermaster for the Santa Margarita River Watershed to fulfill the roles and responsibilities set forth in Order for the Appointment of a Watermaster; Powers and Duties ("1989 Watermaster Order") [Docket No. 4809], and as specified in subsequent instructions and orders of the Court.

2.6     CONSULTANT desires to perform and assume the role and responsibilities of the Watermaster for the Santa Margarita River Watershed as set forth in the 1989 Watermaster Order, and as specified in subsequent instructions and orders of the Court.

2.7     The Court directed the STEERING COMMITTEE to complete negotiations and to enter into a professional services agreement with CONSULTANT to serve as Watermaster for the Santa Margarita River Watershed.

2.8     STEERING COMMITTEE and CONSULTANT have negotiated and agreed upon the following terms and conditions whereby CONSULTANT will serve as the Watermaster for the Santa Margarita River Watershed upon the retirement of the current Watermaster Charles W. Binder and provide the services as set forth in Order for the 1989 Watermaster Order [Docket No. 4809] and as specified in subsequent instructions and orders of the Court.

3.    TERMS.

3.1     Scope of Services and Term.

3.1.1     CONSULTANT promises and agrees to provide and furnish all services necessary to fully and adequately provide to the Court and STEERING COMMITTEE the services described in the Scope of Services attached hereto and incorporated herein as Exhibit "B" and such other services as may be necessary and required in subsequent instructions and orders of the Court and/or STEERING COMMITTEE ("Services").

3.1.2     Subject to the Termination Provisions set forth in Section 3.15.1, CONSULTANT shall serve as Watermaster pursuant to the Order of Court for an indefinite term, at the discretion of the Court, commencing on January 23, 2017 ("Commencement Date").

3.1.3     All Services shall be subject to, and performed in accordance with this Agreement, the exhibits attached hereto and incorporated herein by reference, and all applicable local, state and federal laws, rules and regulations.

3.2     Independent Contractor.

3.2.1     STEERING COMMITTEE retains CONSULTANT as an independent contractor and not as an employee. No employee or agent of CONSULTANT shall become an employee of STEERING COMMITTEE.

3.2.2     CONSULTANT will determine the means, methods and details of performing the Services subject to the requirements of this Agreement.

//

//

3.3     Provision of Services.

      3.3.1     CONSULTANT shall perform the Services expeditiously, at the discretion of the Court and the STEERING COMMITTEE, within the term of this Agreement. CONSULTANT represents that it has the professional and technical personnel required to perform the Services in conformance with such conditions.

      3.3.2     CONSULTANT shall comply with all applicable laws, ordinances, codes and regulations of the federal, state and local government.

      3.3.3     CONSULTANT's services will be performed in accordance with generally accepted professional practices and principles and in a manner consistent with the level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions.

3.4     Key Personnel/Consultant's Representative.

      3.4.1     CONSULTANT has represented to STEERING COMMITTEE that certain key personnel, Michael J. Preszler will perform and coordinate the Services under this Agreement.

      3.4.2     CONSULTANT hereby designates Michael J. Preszler to act as its representative for the performance of this Agreement ("CONSULTANT'S REPRESENTATIVE"). CONSULTANT'S REPRESENTATIVE shall have full authority to represent and act on behalf of the CONSULTANT for all purposes under this Agreement.

      3.4.3     CONSULTANT'S REPRESENTATIVE shall supervise and direct the Services, using the standard of care defined in this Agreement, and shall be responsible for all means, methods, techniques, sequences and procedures and for the satisfactory coordination of all portions of the Services under this Agreement.

      3.4.4     CONSULTANT'S REPRESENTATIVE agrees to work closely with STEERING COMMITTEE in the performance of Services and shall be available to STEERING COMMITTEE at all reasonable times.

      3.4.5     Should Michael J. Preszler become unavailable, CONSULTANT may not substitute other personnel without prior written approval of STEERING COMMITTEE and/or order of the Court.

3.5     Compensation and Expenses.

      3.5.1     CONSULTANT shall receive compensation for all Services rendered under this Agreement as follows:

      3.5.1.1     CONSULTANT shall receive compensation, as detailed in the Compensation Schedule attached hereto and incorporated herein as Exhibit "C." CONSULTANT's compensation shall be reviewed by the STEERING COMMITTEE annually,

on a water year basis (October 1st, Y1-September 30, Y2), and shall be adjusted by the STEERING COMMITTEE by an amendment to this Agreement.

        3.5.1.2    For all services performed by CONSULTANT during the first five years of this Agreement, STEERING COMMITTEE shall retain and place in an interest-bearing escrow account Two and One Half percent (2.5%) of the amount paid to CONSULTANT up to but not in excess of $5,000.00 per year until the total amount of the retention reaches $25,000.00. The retention shall be withheld up and until CONSULTANT completes five (5) years of service. Upon the completion of five (5) years of service, the retention shall be released to CONSULTANT. If CONSULTANT terminates this Agreement before the 5th year anniversary, the retention will be forfeited and returned to the STEERING COMMITTEE. Five (5) years of service shall be calculated from the Commencement Date.

    3.5.2    <u>Reimbursement of Expenses.</u>

        3.5.2.1    CONSULTANT shall be reimbursed by the STEERING COMMITTEE for the following "out of pocket" expenses: travel, postage, copying, long distance telephone, and the like.

    3.6    CONSULTANT shall submit to the STEERING COMMITTEE, for all services actually performed, a monthly itemized invoice for services, specifying the nature of services performed, the person performing the services, the number of hours expended in performing the services, and the expenses incurred in performing the services. The invoice shall describe the amount of Services and supplies provided since the initial commencement date of Services under this Agreement, and since the start of the subsequent billing periods, through the date of the invoice. CONSULTANT's fees shall be due and payable within thirty (30) days of the date of the invoice. Monthly invoices shall be submitted to

    "Watermaster of Santa Margarita River Watershed"
    c/o Fallbrook Public Utility District
    Accounting Department
    P.O. Box 2290
    Fallbrook, CA 92088-2290

or as otherwise directed by the STEERING COMMITTEE.

    3.7    <u>Conflicts of Interest.</u>

        3.7.1    CONSULTANT represents and warrants that it does not have personal bias or prejudice concerning any party to the Fallbrook Case, or any personal knowledge of disputed evidentiary facts concerning the proceeding as of Commencement Date.

        3.7.2    CONSULTANT represents and warrants that it does not have any existing contracts or serve as a consultant on work for any of the parties to the Fallbrook Case and members of the STEERING COMMITTEE including but not limited to the United States of America, Fallbrook Public Utility District, Rancho California Water District, Eastern Municipal

Water District, Metropolitan Water District of Southern California, Pechanga Band of Luiseño Mission Indians, and/or Western Municipal Water District.

3.7.3    CONSULTANT represents and warrants that it, either individually or as a fiduciary, does not have a financial interest in the subject matter in controversy, or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

3.7.4    During the term of this Agreement, CONSULTANT shall not enter into any contracts with, or undertake work for or on behalf of any of the parties to the Fallbrook Case including but not limited to the United States of America, Fallbrook Public Utility District, Rancho California Water District, Eastern Municipal Water District, Metropolitan Water District of Southern California, Pechanga Band of Luiseño Mission Indians, and/or Western Municipal Water District.

### 3.8    Office and Office Services.

CONSULTANT shall provide all office space and office equipment necessary to the execution of this agreement.

### 3.9    Standard of Care.

3.9.1    CONSULTANT represents that it has all licenses, permits, qualifications and approvals of whatever nature that are legally required to perform the Services and that such licenses and approvals shall be maintained throughout the term of this Agreement.

3.9.2    As provided for in the indemnification provisions of this Agreement, CONSULTANT shall perform, at its own cost and expense and without reimbursement from STEERING COMMITTEE, any services necessary to correct errors or omissions which are caused by CONSULTANT'S failure to comply with the standard of care provided for herein.

### 3.10    Laws and Regulations.

3.10.1    CONSULTANT shall keep itself fully informed of and in compliance with all local, state and federal laws, rules and regulations in any manner affecting the performance of the Services and shall give all notices required by law.

3.10.2    CONSULTANT shall be liable for all violations of local, state and federal laws, rules and regulations in connection with the provision of the Services.  If the CONSULTANT performs any work knowing it to be contrary to such laws, rules and regulations and without giving written notice to STEERING COMMITTEE, CONSULTANT shall be solely responsible for all costs arising therefrom.

3.10.3    CONSULTANT shall defend, indemnify and hold STEERING COMMITTEE its members, officers, representatives, and agents free and harmless, pursuant to the indemnification provisions of this Agreement, from any claim or liability arising out of any failure or alleged failure to comply with such laws, rules or regulations.

3.11   Insurance.

      3.11.1   CONSULTANT shall, at its expense, procure and maintain for the duration of the Agreement, and shall also require all of its subcontractors to procure and maintain, insurance coverage meeting at least the following minimum levels of coverage:

      (A)   *General Liability*:   Insurance   Services   Office Commercial General Liability coverage (occurrence form CG 0001).   CONSULTANT shall procure and maintain, and require its subconsultants to procure and maintain, Commercial General Liability coverage at least as broad as Insurance Services Office Commercial General Liability coverage in the amount of One Million Dollars ($1,000,000) per occurrence for bodily injury, personal injury and property damage.

      (a)   Commercial General Liability Insurance must include coverage for the following:

      i.    Bodily Injury and Property Damage;
      ii.   Personal Injury/Advertising Injury;
      iii.  Premises/Operations Liability;
      iv.  Products / Completed Operations Liability;
      v.   Aggregate Limits that Apply per Project;
      vi.  Contractual Liability with respect to this Contract;
      vii. Broad Form Property Damage; and
      viii. Independent Binders Coverage.

      (b)   All such policies shall name the STEERING COMMITTEE, its officers, employees, agents and Steering Committee designated volunteers as Additional Insureds under the policy.

      (c)   The general liability program may utilize either deductibles or provide coverage excess of a self-insured retention, subject to written approval by the STEERING COMMITTEE.

      (B)   Automobile   Liability:   Insurance   Services   Office Business Auto Coverage form number CA 0001, code 1 (any auto).   At all times during the performance of the work under this Agreement, CONSULTANT shall procure and maintain, and require its subconsultants to procure and maintain Automobile Liability: Insurance Services Office Business Auto Coverage in the amount of One Million Dollars ($1,000,000) combined single limit (each accident) for bodily injury and property damage including coverage for owned, non-owned and hired vehicles, in a form and with insurance companies acceptable to STEERING COMMITTEE.

      (a)   Coverage for automobile liability insurance shall be at least as broad as Insurance Services Office Form Number CA 0001 (ed. 1/87) covering automobile liability, Code 1 (any auto).

(b)     The automobile liability program may utilize deductibles, but not a self-insured retention, subject to written approval by the STEERING COMMITTEE.

(c)     All such policies shall name the STEERING COMMITTEE, its officers, employees, agents and STEERING COMMITTEE designated volunteers as Additional Insureds under the policies.

(C)     *Workers' Compensation and Employer's Liability*: If it employs any persons, CONSULTANT shall procure and maintain, and require its subconsultants to procure and maintain, Workers' Compensation insurance as required by the State of California and Employer's Liability Insurance - Workers' Compensation limits as required by the Labor Code of the State of California with Employer's Liability limits of One Million Dollars ($1,000,000) per accident for bodily injury or disease.

(D)     *Professional     Liability/Errors     and     Omissions*: Professional Liability/Errors and Omissions.  CONSULTANT shall procure and maintain, and require its subconsultants to procure and maintain, for a period of five (5) years following completion of the Services, professional liability/errors and omissions liability insurance appropriate to their profession in an amount not less than $1,000,000 per claim, and shall be endorsed to include contractual liability.  "Covered Professional Services" as designated in the Professional Liability/Errors and Omissions policy must specifically include work performed under this Agreement.

3.11.2     CONSULTANT shall not commence the Services under this Agreement until it has provided evidence satisfactory to STEERING COMMITTEE that it has secured all insurance required under this section.

3.11.3     In addition, CONSULTANT shall not allow any subcontractor to commence work on any subcontract until it has provided evidence satisfactory to STEERING COMMITTEE that the subcontractor has secured all insurance required under this section.

3.11.4     Requirements of specific coverage or limits contained in this section are not intended as a limitation on coverage, limits, or other requirement, or a waiver of any coverage normally provided by any insurance.

3.11.5     Any available coverage shall be provided to the parties required to be named as additional insured pursuant to this Agreement.  Defense costs shall be payable in addition to the limits in accordance with terms set forth in Section 3.15.6 entitled "Attorney's Fees."

3.11.6     Insurance Endorsements.  The insurance policies shall contain the following provisions, or if they do not contain such provisions, CONSULTANT shall provide endorsements on forms supplied or approved by STEERING COMMITTEE to add the following provisions to the insurance policies:

(A)     Commercial General Liability.  The commercial general liability policy shall be endorsed to provide the following: (1) STEERING COMMITTEE, its members, officials, officers, employees, agents and volunteers shall be covered as additional insureds using ISO endorsement forms CG 20 10 10 01 and 20 37 10 01, or endorsements providing the exact same coverage; (2) the insurance coverage shall be primary insurance as respects STEERING COMMITTEE, its members, officials, officers, employees, agents and volunteers, or if excess, shall stand in an unbroken chain of coverage excess of the CONSULTANT 's scheduled underlying coverage.  Any insurance or self-insurance maintained by STEERING COMMITTEE, its members, officials, officers, employees, agents and volunteers shall be excess of the CONSULTANT 's insurance and shall not be called upon to contribute with it in any way; and (3) the insurance coverage shall contain or be endorsed to provide waiver of subrogation in favor of STEERING COMMITTEE, its members, officials, officers, employees, agents and volunteers or shall specifically allow CONSULTANT to waive its right of recovery prior to a loss. CONSULTANT hereby waives its own right of recovery against STEERING COMMITTEE, and shall require similar written express waivers and insurance clauses from each of its subconsultants.

(B)     Automobile Liability.  The automobile liability policy shall be endorsed to provide the following: (1) STEERING COMMITTEE, its members, officials, officers, employees, agents and volunteers shall be covered as additional insureds with respect to the ownership, operation, maintenance, use, loading or unloading of any auto owned, leased, hired or borrowed by the CONSULTANT or for which the CONSULTANT is responsible; (2) the insurance coverage shall be primary insurance as respects STEERING COMMITTEE, its members, officials, officers, employees, agents and volunteers, or if excess, shall stand in an unbroken chain of coverage excess of the CONSULTANT 's scheduled underlying coverage.   Any insurance or self-insurance maintained by STEERING COMMITTEE, its members, officials, officers, employees, agents and volunteers shall be excess of the CONSULTANT 's insurance and shall not be called upon to contribute with it in any way; and (3) the insurance coverage shall contain or be endorsed to provide waiver of subrogation in favor of STEERING COMMITTEE, its members, officials, officers, employees, agents and volunteers or shall specifically allow CONSULTANT to waive its right of recovery prior to a loss. CONSULTANT hereby waives its own right of recovery against STEERING COMMITTEE, and shall require similar written express waivers and insurance clauses from each of its subconsultants.

(C)     Workers' Compensation and Employers Liability Coverage. If such a policy is required, the insurer shall agree to waive all rights of subrogation against STEERING COMMITTEE, its members, officials, officers, employees, agents and volunteers for losses paid under the terms of the insurance policy which arise from work performed by the CONSULTANT.

(D)     All Coverages.  Each insurance policy required by this Agreement shall be endorsed to state that:  (A) coverage shall not be suspended, voided, reduced or canceled except after thirty (30) days prior written notice by certified mail, return receipt requested, has been given to STEERING COMMITTEE; and (B) any failure to comply with reporting or other provisions of the policies, including breaches of warranties, shall not affect

coverage provided to STEERING COMMITTEE, its members, officials, officers, employees, agents and volunteers.

3.11.7    Separation of Insureds; No Special Limitations.  All insurance required by this Section shall contain standard separation of insureds provisions.  In addition, such insurance shall not contain any special limitations on the scope of protection afforded to STEERING COMMITTEE, its members, officials, officers, employees, agents and volunteers.

3.11.8    Deductibles and Self-Insurance Retentions.  Any deductibles or self-insured retentions must be declared to and approved by STEERING COMMITTEE. CONSULTANT members shall guarantee that, at the option of STEERING COMMITTEE, either: (1) the insurer shall reduce or eliminate such deductibles or self-insured retentions as respects STEERING COMMITTEE, its members, officials, officers, employees, agents and volunteers; or (2) the CONSULTANT shall procure a bond guaranteeing payment of losses and related investigation costs, claims and administrative and defense expenses.

3.11.9    Acceptability of Insurers.  Insurance is to be placed with insurers with a current A.M. Best's rating no less than A:VII, admitted to transact in the business of insurance in the State of California, or otherwise allowed to place insurance through surplus line brokers under applicable provisions of the California Insurance Code or any federal law, and satisfactory to STEERING COMMITTEE.

3.11.10    Verification of Coverage.  CONSULTANT shall furnish STEERING COMMITTEE with original certificates of insurance and endorsements effecting coverage required by this Agreement on forms satisfactory to STEERING COMMITTEE.  The certificates and endorsements for each insurance policy shall be signed by a person authorized by that insurer to bind coverage on its behalf, and shall be on forms provided by the STEERING COMMITTEE if requested.  All certificates and endorsements must be received and approved by the STEERING COMMITTEE before work commences.  The STEERING COMMITTEE reserves the right to require complete, certified copies of all required insurance policies, at any time.

3.11.11    Subconsultants.  CONSULTANT shall not allow any subcontractors or subconsultants to commence work on any subcontract until they have provided evidence satisfactory to the STEERING COMMITTEE that they have secured all insurance required under this section.  Policies of commercial general liability insurance provided by such subcontractors or subconsultants shall be endorsed to name STEERING COMMITTEE as an additional insured using ISO form CG 20 38 04 13 or an endorsement providing the exact same coverage.  If requested by CONSULTANT, STEERING COMMITTEE may approve different scopes or minimum limits of insurance for particular subcontractors or subconsultants.

3.11.12    Compliance with Coverage Requirements.  If at any time during the life of the Agreement, any policy of insurance required under this Agreement does not comply with these specifications or is canceled and not replaced, STEERING COMMITTEE shall notify the CONSULTANT in writing of the noncompliance or cancellation of the required policy of insurance. If the CONSULTANT fails to resolve the matter and reinstate the required insurance within two (2) business days, then the STEERING COMMITTEE has the right but not the duty

to obtain the insurance it deems necessary and any premium paid by STEERING COMMITTEE will be promptly reimbursed by CONSULTANT or STEERING COMMITTEE will withhold amounts sufficient to pay premium from CONSULTANT payments.

3.12   Maintenance of Records.

3.12.1   Books, documents, papers, accounting records, and other evidence pertaining to costs incurred shall be maintained by CONSULTANT and made available at all reasonable times for inspection by STEERING COMMITTEE and the Court. All prior Watermaster digital and paper files, documents, accounting records, evidence pertaining to costs incurred and other archives shall be turned over to the CONSULTANT upon commencement of this Agreement.

3.13   Extra Work.

3.13.1   At any time during the term of this Agreement, STEERING COMMITTEE may request that CONSULTANT perform Extra Work.

3.13.2   As used herein, "Extra Work" means any work which is not described in Exhibit "B" and is required by subsequent order of the Court.

3.13.3   CONSULTANT shall not perform, nor be compensated for, Extra Work without written authorization from STEERING COMMITTEE.

3.13.4   Where Extra Work is ordered by the Court, the STEERING COMMITTEE will prepare an amendment to this Agreement that adds a scope of services ordered by the Court and will be executed by CONSULTANT and STEERING COMMITTEE Extra Work will be billed to the STEERING COMMITTEE on the same terms, conditions and fee schedule hereunder unless, the court approves an amended fee schedule or orders otherwise.

3.13.5   Amendments for Extra Work shall not render ineffective or invalidate unaffected portions of this Agreement.

3.13.6   Within 90 days of the commencement date, CONSULTANT shall review with the STEERING COMMITTEE items covered by Court Order 4902, Section II. Powers and Duties of the Watermaster, Item 14 … duties as may be assigned by the Court… and listed in Exhibit C.  The CONSULTANT shall work with the STEERING COMMITTEE to define the limits of these duties and propose compensation mechanism for activities outside the service areas of current STEERING COMMITTEE members.

3.14   Accounting Records.

3.14.1   CONSULTANT shall maintain complete and accurate records with respect to all costs and expenses incurred under this Agreement.  All such records shall be clearly identifiable.

3.14.2   CONSULTANT shall allow a representative of STEERING COMMITTEE during normal business hours to examine, audit, and make transcripts or copies of such records and any other documents created pursuant to this Agreement.

3.14.3   CONSULTANT shall allow inspection of all work, data, documents, proceedings, and activities related to the Agreement deemed non-confidential by the Watermaster for a period of three (3) years from the date of final payment under this Agreement.

3.15   General Provisions.

3.15.1   Termination of Agreement.

3.15.2   Nothing in this Agreement shall limit STEERING COMMITTEE's Duties and Responsibilities identified in the 1989 Steering Committee Order [Docket No. 4805] in the Fallbrook Case appointing STEERING COMMITTEE attached hereto as Exhibit "A."

3.15.3   Nothing in this Agreement shall limit the CONSULTANT's Duties of the Watermaster identified in the 1989 Watermaster Order [Docket No. 4809] in the Fallbrook Case appointing the Watermaster attached hereto as Exhibit "B."

3.15.3.1   During the time that the CONSULTANT serves as Watermaster pursuant to the Order of the Court, as set forth in Section 3.1, the terms of this agreement shall remain in effect. If, at the discretion of the Court, the CONSULTANT no longer serves as Watermaster, the STEERING COMMITTEE may terminate the whole or any part of this Agreement at any time and without cause by giving written notice to CONSULTANT of such termination, and specifying the effective date thereof, at least seven (7) days before the effective date of such termination. Notwithstanding the foregoing, the Court may terminate this Agreement, in whole or in part, at any time and without cause, such termination being effective immediately. The STEERING COMMITTEE and/or its members reserve the right to seek an Order of Court to terminate CONSULTANT.

3.15.3.2   Upon termination, CONSULTANT shall be compensated only for those Services which have been rendered to STEERING COMMITTEE, and CONSULTANT shall be entitled to no further compensation.

3.15.3.3   CONSULTANT shall not be entitled to payment for unperformed Services, and shall not be entitled to damages or compensation for termination of this Agreement by STEERING COMMITTEE except for the amounts authorized herein.

3.15.3.4   If this Agreement is terminated as provided herein, STEERING COMMITTEE may require CONSULTANT to provide all finished or unfinished Documents and Data (defined below) and other information of any kind prepared by CONSULTANT in connection with the performance of Services under this Agreement. CONSULTANT shall be required to provide such documents and other information within fifteen (15) days of the request.

3.15.3.5    In the event this Agreement is terminated in whole or in part as provided herein, STEERING COMMITTEE may procure, upon such terms and in such manner as it may determine appropriate, services similar to those terminated.

3.15.3.6    In the event this Agreement is terminated in whole or in part as provided herein, STEERING COMMITTEE will release the retention as retained in Section 3.5.1.2.

3.15.3.7    In the event CONSULTANT terminates this Agreement on or before the completion of five (5) years of service, STEERING COMMITTEE shall be entitled to keep the retention specified in Section 3.5.1.2 of this Agreement.

3.15.4    <u>Delivery of Notices</u>.    All notices permitted or required under this Agreement shall be given to the respective Parties at the following address, or at such other address as the respective parties may provide in writing for this purpose:

| **STEERING COMMITTEE** | **CONSULTANT** |
|---|---|
| Attn: WATERMASTER | Michael J Preszler Consulting, Inc. |
| c/o Fallbrook Public Utility District | Michael J. Preszler |
| P.O. Box 2290 | 3096 Clermont Way |
| Fallbrook, CA  92088-2290 | El Dorado Hills, CA 95762 |

Such notice shall be deemed made when personally delivered or when mailed, forty-eight (48) hours after deposit in the U.S. Mail, first class postage prepaid and addressed to the Party at its applicable address.  Actual notice shall be deemed adequate notice on the date actual notice occurred, regardless of the method of service.

3.15.5    <u>Cooperation; Further Acts</u>.  The Parties shall fully cooperate with one another, and shall take any additional acts or sign any additional documents as may be necessary, appropriate or convenient to attain the purposes of this Agreement.

3.15.6    <u>Attorney's Fees</u>.  If either Party commences an action against the other Party, either legal, administrative or otherwise, arising out of or in connection with this Agreement, the prevailing party in such litigation shall be entitled to have and recover from the losing party reasonable attorney's fees and all other documented costs of such action.

3.15.7    <u>Indemnification</u>.    To the fullest extent permitted by law, CONSULTANT shall defend, indemnify and hold STEERING COMMITTEE, its members, officers, employees, volunteers, and agents free and harmless from any and all claims, demands, causes of action, costs, expenses, liability, loss, damage or injury, in law or equity, to property or persons, including wrongful death, in any manner arising out of, pertaining to, or relating to any negligence, recklessness, or willful misconduct of CONSULTANT, its officials, officers, employees, agents, subconsultants, and/or subcontractors arising out of or in connection with the performance of the Services, or this Agreement; except with respect to such matters resulting from or arising out of the negligence, recklessness, or willful misconduct of STEERING COMMITTEE, its members, officers, employees, volunteers, and agents.

3.15.8    Entire Agreement.  This Agreement contains the entire Agreement of the Parties with respect to the subject matter hereof, and supersedes all prior negotiations, understandings or agreements.  This Agreement may only be modified by a writing signed by both Parties.

3.15.9    Governing Law.  This Agreement shall be governed by the laws of the State of California.  Venue shall be in San Diego County, California.

3.15.10    Successors and Assigns.  This Agreement shall be binding on and shall inure to the benefit of the successors in interest, executors, administrators and assigns of each Party.

3.15.11    Assignment or Transfer.    CONSULTANT shall not assign, hypothecate, or transfer, either directly or by operation of law, this Agreement or any interest herein without the prior written consent of STEERING COMMITTEE.  Any attempt to do so shall be null and void, and any assignees, hypothecates or transferees shall acquire no right or interest by reason of such attempted assignment, hypothecation or transfer.

3.15.12    Subcontracting.    CONSULTANT shall notify the STEERING COMMITTEE prior to subcontracting any portion of the work required by this Agreement, except as expressly stated herein.  Subcontracts, if any, shall contain a provision making them subject to all provisions stipulated in this Agreement.

3.15.13    Construction; References; Captions.  Since the Parties or their agents have participated fully in the preparation of this Agreement, the language of this Agreement shall be construed simply, according to its fair meaning, and not strictly for or against any Party.  Any term referencing time, days or period for performance shall be deemed calendar days and not work days.  All references to CONSULTANT include all personnel, employees, agents, and subcontractors of CONSULTANT, except as otherwise specified in this Agreement.  All references to STEERING COMMITTEE include its members, officers, employees, agents, and volunteers except as otherwise specified in this Agreement.  The captions of the various articles and paragraphs are for convenience and ease of reference only, and do not define, limit, augment, or describe the scope, content, or intent of this Agreement.

3.15.14    Amendment; Modification.    No supplement, modification, or amendment of this Agreement shall be binding unless executed in writing and signed by both Parties.

3.15.15    Waiver.  No waiver of any default shall constitute a waiver of any other default or breach, whether of the same or other covenant or condition.  No waiver, benefit, privilege, or service voluntarily given or performed by a Party shall give the other Party any contractual rights by custom, estoppel, or otherwise.

3.15.16    No Third Party Beneficiaries.  There are no intended third party beneficiaries of any right or obligation assumed by the Parties.

3.15.17    Invalidity; Severability.  If any portion of this Agreement is declared invalid, illegal, or otherwise unenforceable by a court of competent jurisdiction, the remaining provisions shall continue in full force and effect.

3.15.18    Equal Opportunity Employment.  CONSULTANT represents that it is an equal opportunity employer and it shall not discriminate against any subcontractor, employee or applicant for employment because of race, religion, color, national origin, handicap, ancestry, sex or age.  Such non-discrimination shall include, but not be limited to, all activities related to initial employment, upgrading, demotion, transfer, recruitment or recruitment advertising, layoff or termination.

3.15.19    Labor Certification.   By its signature hereunder, CONSULTANT certifies that it is aware of the provisions of Section 3700 of the California Labor Code which require every employer to be insured against liability for Workers' Compensation or to undertake self-insurance in accordance with the provisions of that Code, and agrees to comply with such provisions before commencing the performance of the Services.

3.15.20    Authority to Enter Agreement.   CONSULTANT has all requisite power and authority to conduct its business and to execute, deliver, and perform the Agreement. Each Party warrants that the individuals who have signed this Agreement have the legal power, right, and authority to make this Agreement and bind each respective Party.

3.15.21    Counterparts.  This Agreement may be signed in counterparts, each of which shall constitute an original.

Attached Exhibits

Exhibit A – Steering Committee Duties and Responsibilities

Exhibit B - Scope of Services

Exhibit C – Compensation Schedule

Exhibit D – Watermaster Budget for Water Year 2016-2017

[Signatures on Following Page]

Dated: 2/1/17

SANTA MARGARITA RIVER
WATERSHED WATERMASTER
STEERING COMMITTEE

By: _____

Nick Kanetis, P.E.
Chairperson
Steering Committee
Santa Margarita River Watershed
Watermaster

Dated: 1/31/17

MICHAEL J. PRESZLER CONSULTING, INC
DBA CALIFORNIA WATER CONSULTING

By: _____

Michael J. Preszler, P.E.
President
Michael J. Preszler Consulting, Inc.,
dba California Water Consulting

## EXHIBIT "A"

### STEERING COMMITTEE
### DUTIES AND RESPONSIBILITIES

The Steering Committee shall have the responsibility for coordinating the conduct of litigation in the following manner:

1.  Recommend to the Court a candidate for the position of Watermaster in the Santa Margarita watershed;

2.  Recommend to the Court the scope of reference for the Watermaster's duties and responsibilities;

3.  Assist the Watermaster by providing information and data regarding as requested by the Watermaster;

4.  Meet with the Watermaster on a quarterly basis to discuss the status of the Watermaster's investigations in Santa Margarita watershed, including long and short term budget requirements;

5.  The Steering Committee shall review the budget and proposed expenditures of the Watermaster and make its recommendation with respect thereto; and

6.  Any other tasks as determined to be necessary by the Court.

Steering Committee meetings shall be held quarterly beginning on April 1, 1989 and shall be open to the public. Notice as to the time and place of such meetings shall be sent out to all parties on the Court approved service list ten days before the meeting date. In addition, notice shall be posted for five consecutive days, fifteen days prior to any such meeting, at the following locations: Fallbrook Public Utility District, 990 E. Mission Road, Fallbrook, California; Rancho California Water District, 28061 Diaz Road, Temecula, California; and at the Post Office at Anza, California. The Steering Committee may call additional meetings at the discretion of the chairman or upon the request of a majority of the members of the Steering Committee. Notice of such meetings shall be in the same manner as above.

EXHIBIT "B"
SCOPE OF SERVICES


- ATTACHED BEHIND THIS PAGE –

## Exhibit B

### Duties of the Watermaster

To the extent not superseded herein, these Duties of the Watermaster incorporate by reference the powers and duties granted by Order of the Court in *United States vs. Fallbrook Public Utility District* in its Order filed March 13, 1989 (herein referred to as the "1989 Order"). The following Duties of the Watermaster are adapted from the 1989 Order to include additional duties described herein:

I

### REPORTING DUTIES

Promptly after the end of each water year[1], the Watermaster shall report to the Court, in writing, a summary of his findings and conclusions, as follows:

1.   A summary of water availability within the Santa Margarita River watershed for the previous year and, to the extent feasible, a forecast of the same for the upcoming water year. The summary shall include a compilation, by hydrologic sub-unit, of the following water quantities:

a.   Surface Water:

1)   Surface flow of the Santa Margarita River and its tributaries, with identification by quantity of the specific sources of such surface flow, including water from natural runoff, water imported from outside the watershed, and water from each of the subsurface sources identified in the applicable interlocutory judgments.

2)   Diversions of surface water, with identification by quantity of the related consumptive uses, losses, and returns.

3)   Water in surface storage on the last day of the previous water year.

b.   Subsurface water:

1)   Extractions from each of the subsurface sources identified in the applicable interlocutory judgments, with identification by quantity of the related consumptive uses, losses, and returns.

2)   For each such subsurface source, (i) the quantity of water in subsurface storage at the end of the previous water year, (ii) the source and quantity of recharge.

---

[1] "Water Year" shall be defined as that twelve-month period beginning on October 1 and ending September 30.

8

c.     The source and quantity of water imported for use within the Santa Margarita River watershed.

d.     The source and quantity of water exported from the Santa Margarita River watershed.

2.     A list of all water users within the Santa Margarita River watershed, including for each a description of vested rights and appropriative priority dates if any.

3.     A report on the use of water by each substantial user[2] within the Santa Margarita River watershed for the previous water year showing for each such user the amount of water diverted, extracted, impounded, or imported and the amount used according to category of use, including: domestic, irrigation, other agricultural, industrial, commercial, public and such other types of uses as the Watermaster may deem appropriate.

4.     A list of all unauthorized water use within the Santa Margarita River watershed, along with an explanation of actions taken or recommended to be taken with respect to such use.

5.     A statement of conditions and activities which, if continued, may pose a threat to the long-term water supply of the Santa Margarita River watershed.

6.     Report on the water quality within the Santa Margarita River watershed by hydrologic sub-unit during the previous water year.

7.     An update of the Watermaster's projected tasks, expenditures and requirements over the next five years.

8.     A proposed budget for the following water year.

9.     Other information deemed appropriate by the Watermaster.

A copy of the Watermaster's written report shall be mailed to each party listed on the Court approved mailing list, and to any party requesting a copy. In addition, five copies of the report will be made available for inspection by the public, during regular business hours, at Fallbrook Public Utility District, 990 E. Mission Road, Fallbrook, California; Rancho California Water District, 42135 Winchester Road, Temecula, California; State Department of Forestry and Fire Protection, 56560 Highway 371, Anza, California; and Hamilton School/Library, 57550 Mitchell Road, Anza, California.

---

[2] "Substantial user" means any person that claims a right to use water under the orders, judgments or decrees of this Court in the above entitled action, and any person previously designated by this Court or the Watermaster to be a substantial user; any person using water or who claims a right to use water in an amount equal to or greater than or in a manner similar to the uses designated in Exhibit A to the 1989 Order; or any person using water within the Santa Margarita River watershed and designated by the Watermaster to be a substantial user.

Any party that objects to a portion of the Watermaster's report, including the Watermaster's designation of substantial users, may do so by filing written Notice of his objection within thirty days of service of the Watermaster's report. Objections filed with this Court must refer to that portion of the Watermaster's report that is objectionable and state specifically the grounds for the objection. Thereafter, the Court may determine a date for hearing the noticed objection. Any party wishing to intervene on behalf of the objecting party or on behalf of the Watermaster may do so within the discretion of the Court.

II

POWERS AND DUTIES OF THE WATERMASTER

The Watermaster shall have the following powers and duties:

1.     To update and maintain the list of substantial users.

2.     To collect water consumption data and require monthly reports from the substantial users including, for each such user, the amount of water diverted, extracted, impounded or imported and the amount of water used, as follows:

a.     To require every substantial user of subsurface water to supply in writing the following factual data for each well owned or operated within the watershed:

1)     The well owner;

2)     The location of the well;

3)     The quantity in acre-feet of the water pumped during that month and the use by quantity to which the water was put; and

4)     The depth in feet to water on or about the last day of that month and designate the zone(s) or aquifer(s) from which well casing perforations permit the production of water.

b.     To require every substantial user that diverts surface water to supply in writing the following factual data for each designated point of diversion within the watershed:

1)·     The diverter's name;

2)     The location of the point of diversion; and

3)     The quantity in acre-feet of water diverted for the preceding month.

c.     To require every substantial user to supply in writing the following factual data for each designated surface storage reservoir:

10

1)    The reservoir owner;

2)    The location of the storage facility;

3)    The quantity, in acre-feet of water held in storage in such facility on the last day of the preceding month; and

4)    The purpose for which such water was stored.

d.    To require every water importer subject to this Court that imports water to supply in writing the following factual data:

1)    The importer's name;

2)    The discharge point or point of connection of such imported water; and

3)    The quantity in acre-feet, of water imported for the preceding month.

e.    To require every substantial user and every importer of water within the Santa Margarita River Watershed to supply in writing the following factual data:

1)    The user's name; and

2)    The quantity of water devoted to the uses listed below in each hydrologic sub-unit or area designated by the Watermaster:

A.    Domestic

B.    Agricultural irrigation

C.    Other agriculture

D.    Industrial

E.    Commercial

F.    Public

G.    Others as Watermaster may deem appropriate.

f.    To require every producer of reclaimed waste water subject to this Court to supply in writing the following factual data:

1)    The producers' name;

2)    The location of use or discharge of reclaimed water; and

3)   The quantity in acre-feet of reclaimed water produced, delivered and discharged for the preceding month.

3.   To make all reasonable efforts to collect and reconstruct water consumption data for the periods 1966 to date.

4.   To obtain necessary pump efficiency data.

5.   To operate and maintain gaging stations, investigate water availability and hydrology, and conduct water quality testing.

6.   To perform such duties as are required under the Memorandum of Understanding and Agreement on Operation of Lake Skinner.

7.   To take custody of existing records and reports, maintain proper records, and prepare periodic written reports as required by this Court.

8.   To locate and investigate unauthorized water appropriations within the Santa Margarita River watershed.

9.   To assist in locating, investigating and enjoining water quality violations within the Santa Margarita River Watershed.

10.   The Watermaster shall have the authority to enter, upon reasonable notice and at reasonable times, upon the lands of any party to conduct such tests and measurements as he deems necessary to carry out the provisions of this, or any other order of the Court with respect to the duties enumerated above.

11.   To the extent not superceded herein, this Agreement incorporates by reference the powers and duties granted by the Court in its Order filed January 27, 1966, as modified on April 6, 1966.

12.   To design, print and distribute the forms necessary to convey the information required by any applicable Order of the Court.

13.   To report to the Steering Committee, established pursuant to Court Order, on a quarterly basis regarding the status of the Watermaster's investigation, proposed budget items for the upcoming water year and to respond to questions regarding the progress of any programs established by the Watermaster in implementing this Order.

14.   To perform such other duties as may be assigned by the Court or by the Steering Committee.

15.   To perform such duties as are required under the Memorandum of Understanding and Agreement on Operation of Domenigoni Valley Reservoir (now known as Diamond Valley Lake).

16.   To perform such duties as are required under the Cooperative Water Resource Management Agreement between the United States and Rancho California Water District.


III

JURISDICTION

This Court retains jurisdiction, upon the application of any party or of the Watermaster or upon its own motion to make such further or supplemental orders or directions as may be necessary or appropriate for interpretation, enforcement or carrying out of this Court's judgments, decrees and orders with respect to the Santa Margarita River watershed.

**EXHIBIT "C"**
**COMPENSATION**

**- ATTACHED BEHIND THIS PAGE –**

## EXHIBIT C
### COST PROPOSAL - January 24, 2017[1]
### SANTA MARGARITA RIVER WATERSHED WATERMASTER
SUBMITTED TO SANTA MARGARITA RIVER WATERSHED WATERMASTER STEERING COMMITTEE
BY MICHAEL J. PRESZLER CONSULTING, INC. dba as CALIFORNIA WATER CONSULTING

| Team Member / Role on Project | Michael Preszler Watermaster | Technical Analyst | Word Processing | Hours Per Task | Cost Per Subtask |
|---|---|---|---|---|---|
| Rate per hour | $ 175 | $ 75 | $ 35 | | |
| **Watermaster Office Duties** ($258,650) | | | | | |
| Reporting Duties (Section I, Items 1-9 of Exhibit B - Scope of Services) | 225 | 378 | 32 | 634.5 | $ 88,828 |
| Powers and Duties of the Watermaster (Section II, Item 1 of Exibit B - Scope of Services) | 20 | | | 20 | $ 3,500 |
| Powers and Duties of the Watermaster (Section II, Item 2-4 of Exibit B - Scope of Services) | 275 | 462 | 39 | 775.5 | $ 84,123 |
| Powers and Duties of the Watermaster (Section II, Item 5 of Exibit B - Scope of Services) | 20 | | | 20 | $ 3,500 |
| Powers and Duties of the Watermaster (Section II, Items 6-9 of Exibit B - Scope of Services) | 40 | | | 40 | $ 7,000 |
| Powers and Duties of the Watermaster (Section II, Item 10-13 of Exibit B - Scope of Services) | 160 | | | 160 | $ 28,000 |
| Powers and Duties of the Watermaster (Section II, Item 14 of Exibit B - Scope of Services) | 340 | | | 340 | $ 59,500 |
| **Total Hours** | 1,080 | 840 | 70 | 1,990 | |
| **Total Labor** | $ 189,000 | $ 63,000 | $ 2,450 | | $ 254,450 |
| **Sub-Consultants** *(No markup)* | | | | | |
| Audit (Independent Audit, $2,000 has been paid for 2017) | | | | $ 4,600 | |
| Accounting (Accounting Services provided by FPUD) | | | | $ 5,700 | |
| Lease (Watermaster Office Lease (February and March)) | | | | $ 3,000 | |
| Legal (legal services, assumes $5,000 has been expended in 2017) | | | | $ 25,000 | |
| USGS Gaging Station | | | | $ 177,800 | |
| USGA Surface Water Quality | | | | $ 24,950 | |
| USGS Groundwater Monitoring - Water Levels | | | | $ 51,850 | |
| USGS Groundwater Monitoring - Water Quality | | | | $  - | |
| **Expenses** *(No markup)* | | | | | |
| Insurance (Watermaster office Insurance) | | | | $ 600 | |
| Travel (airfare, hotel, mileage) | | | | $ 20,000 | |
| Printing (Printing of Annual Report) | | | | $ 11,500 | |
| Mailing (Postage, Mailing Annual Report) | | | | $ 2,000 | |
| Publications | | | | $ 3,300 | |
| Office Relocation | | | | $ 3,000 | |
| Miscellaneous (only used if required) | | | | $ 35,000 | |
| Total Expenses = | | | | | $ 368,300 |
| Total Budget = | | | | | $ 622,750 |

[1] Budget represents projection of costs through September 30, 2017.
The scope of work in this proposal is limited to the hours allocated in the budget for each task.

EXHIBIT "D"
WATERMASTER BUDGET FOR WATER YEAR 2016-217

- ATTACHED BEHIND THIS PAGE –

60028.00001\29518186.1

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

TABLE 13.2

*SANTA MARGARITA RIVER WATERSHED*
PROPOSED WATERMASTER BUDGET FOR WATER YEAR 2016-17

| Line Item | Water Year 2016-17 | | |
| --- | --- | --- | --- |
| | Proposed Budget 2016-17 1/ | Approved Budget 2015-16 2/ | Increase Over Approved Budget 2015-16 |
| | $ | $ | $ %  |
| *Watermaster Office* | | | |
| Accounting Services | $8,500 | $8,400 | $100 1.2% |
| Audit | 6,600 | 6,600 | 0 0.0% |
| Clerical/Analyst | 114,200 | 115,700 | −1,500 −1.3% |
| Conference/Training | 1,600 | 1,400 | 200 14.3% |
| Equipment and Furniture | 1,000 | 1,000 | 0 0.0% |
| Human Resources Services | 800 | 800 | 0 0.0% |
| Insurance | 600 | 600 | 0 0.0% |
| IT System/Computer | 10,000 | 10,000 | 0 0.0% |
| Legal Services | 30,000 | 20,000 | 10,000 50.0% |
| Miscellaneous | 33,400 | 1,325 | 32,075 2,420.8% |
| Postage | 2,000 | 2,000 | 0 0.0% |
| Printing | 11,500 | 10,000 | 1,500 15.0% |
| Publications | 3,300 | 3,300 | 0 0.0% |
| Rent | 18,000 | 18,000 | 0 0.0% |
| Supplies | 1,900 | 1,900 | 0 0.0% |
| Telephone | 3,000 | 3,000 | 0 0.0% |
| Travel | 1,500 | 1,000 | 500 50.0% |
| *Watermaster Services* | | | |
| Consulting Services | 242,000 | 241,000 | 1,000 0.4% |
| Travel Reimbursement | 27,600 | 27,600 | 0 0.0% |
| SUBTOTAL WATERMASTER OFFICE | $517,500 | $473,625 | $43,875 9.3% |
| | | | |
| USGS | | | |
| Gaging Station | $177,800 | $172,175 | $5,625 3.3% |
| Surface Water Quality | 24,950 | 24,800 | 150 0.6% |
| Groundwater Monitoring - Water Levels | 51,850 | 45,500 | 6,350 14.0% |
| Groundwater Monitoring - Water Quality | 0 | 0 | 0 0.0% |
| SUBTOTAL USGS | $254,600 | $242,475 | $12,125 5.0% |
| | | | |
| TOTAL | $772,100 | $716,100 | $56,000 7.8% |

1/     Proposed budget for 2016-17; final budget to be approved by the Court upon acceptance of the Annual Watermaster Report for Water Year 2014-15.

2/     Budget for 2015-16 approved by the Court as reported in the Annual Watermaster Report for Water Year 2013-14, published in August 2015.

# EXHIBIT B

STEERING
COMMITTEE

OF THE

SANTA MARGARITA
RIVER WATERSHED
WATERMASTER

May 31, 2017

**Members:**

Eastern Municipal
Water District

Fallbrook Public
Utilities District

Metropolitan Water
District of
Southern California

Pechanga Band of
Luiseño Indians

Rancho California
Water District

United States of America
Camp Pendleton

Western Municipal
Water District

Michael J. Preszler
Santa Margarita River Watershed Watermaster
895 Embarcadero Drive, Suite 105
El Dorado Hills, CA 95762

Dear Mr. Preszler:

I am writing on behalf of the Santa Margarita River Watershed Steering Committee to formalize the Committee's on-going concerns regarding the funding for the Watermaster's efforts for work directly supporting the water rights settlement in the Anza area.

As you are aware, the Steering Committee has no members from the Anza area and the existing Steering Committee members provide 100% of the funding for all Watermaster work. This arrangement results in the existing parties' ratepayers funding Watermaster activities that provide no direct benefit to them since the conditions in the Anza basin have little or no measurable effect on the downstream basins.

This fiscal concern was specifically identified to the previous Watermaster. He indicated that the court directed him to continue under the current arrangement. This issue has continued for several years without resolution. The Steering Committee requests that you formally address this issue with the Anza parties and/or Judge Curiel with the intent that a resolution be developed in which parties in the Anza basin will contribute to cover all costs associated with on-going Watermaster activities in the Anza basin and associated legal negotiations.

This work continues to be performed under the auspices of the original 1989 Watermaster Appointment Order as "other duties as directed by the court" which has become the largest single task for the allocation of Watermaster billable hours. The Steering Committee does not believe the intent of the original Order was to have the existing members continue to fund on-going extensive efforts outside of their service areas under this item in the Order. Additionally, in the Order, the Court specifically retained the right to "assess any other party using water under the provisions of the applicable judgments, decrees and Orders for the Santa Margarita River Watershed for the costs, fees and expenditures for the Watermaster."

Mr. Michael J. Preszler
May 31, 2017
Page 2

We appreciate your efforts to address this issue and to assist in developing a solution that is equitable and viable for all parties.

Sincerely,

Nick Kanetis, Chair
Santa Margarita River Watershed Steering Committee

c:     Santa Margarita River Watershed Steering Committee Member Representatives

# EXHIBIT C

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

## *SANTA MARGARITA RIVER WATERSHED*

### WATERMASTER STEERING COMMITTEE MEETING

On October 17, 2017, a meeting of the Watermaster Steering Committee was held at the Rancho California Water District Board Room.

| Steering Committee Members | Representing |
|---|---|
| Kelley Gage, Chair | Eastern Municipal Water District |
| Karly Gaynor, Vice Chair | Western Municipal Water District |
| Jack Bebee | Fallbrook Public Utility District |
| Keith Nobriga | Metropolitan Water District |
| Eva Plajzer | Rancho California Water District |
| John Simpson | Camp Pendleton |

The committee member from Pechanga Band of Luiseño Mission Indians was unable to attend the meeting.

The following were also present and signed the sign-in sheet:

Michael J. Preszler, Watermaster
Robert A. Heather, Watermaster Office
Rod Lewis, Attorney for Pechanga Band of Luiseño Indians
Dan Bartu, Camp Pendleton
Dave Depoy, Camp Pendleton
C.H. Hamilton, Rainbow Municipal Water District
Paul Boughman, Department of the Navy/United States Marine Corps.
Lynette Stewart, Pechanga Water System
Eagle Jones, Pechanga Water System
Doug Mcpherson, USBR
Jesus Gastelum, Elsinore Valley Municipal Water District
Joseph Hamilton, Ramona Band of Cahuilla Indians


The Chair called to order the Steering Committee of the Santa Margarita River Watershed Watermaster at about 10:04 a.m. and welcomed participants.

1.   Approval of Minutes of April 18, 2017 Steering Committee Meeting

The April 18, 2017 Steering Committee Meeting Minutes were approved unanimously.

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Santa Margarita River Watershed Watermaster Steering Committee
October 17, 2017 Meeting Minutes
Page 2 of 4

2.    Watermaster Office General Business

The Watermaster summarized the status of the accounting responsibilities with respect to FPUD and RCWD.  Watermaster explained to the Steering Committee the responsibility of FPUD to maintain the book keeping through September 30, 2017 and that RCWD would be responsible for the accounting starting October 1, 2017.  FPUD acknowledged their responsibility with respect to the accounting through September 30, 2017.

3.    USGS Gaging Station and Groundwater Monitoring Operations

The Watermaster explained the ongoing agreement between USGS and the Watermaster office.  The Watermaster explained to the Steering Committee that the Joint Funding Agreement is not fully executed at the time of the meeting, but is expected soon.

4.    MWD Update on Lake Skinner MOU

Watermaster explained the "hold" status of the Lake Skinner MOU.   The Watermaster stated the necessity to update the Lake Skinner MOU.  Updating and exploring potential ways to efficiently generate the 2nd Amended MOU were identified by the Watermaster as specific actions to be taken to relieve the "hold" status.  The MWD Steering Committee Representative agreed with the comments made by the Watermaster.

5.    Camp Pendleton/RCWD Cooperative Water Resource Management Agreement (CWRMA)

A.  Groundwater Management Model Runs

Watermaster updated the Steering Committee with respect to the use of the findings of the Groundwater Management Model Runs and the future implementation of the findings from the Technical Advisory Committee into the Watermaster Annual Report.  It was reported by the RCWD Steering Committee Representative that the required final report stemming from the DWR Grant, to administer the project, had been completed and submitted to DWR, satisfying the grant requirements imposed.

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Santa Margarita River Watershed Watermaster Steering Committee
October 17, 2017 Meeting Minutes
Page 3 of 4

6. Quantification of Federal Reserve Water Rights Claims for Cahuilla, Ramona, and Pechanga Bands

   A. Cahuilla and Ramona Bands

   Watermaster provided an update on the ongoing settlement process. Watermaster informed the Steering Committee that meetings and discussions are still under way, and an in-person status update with Magistrate Judge Brooks was held on August 23, 2017. Next check-in meeting is scheduled for November 28, 2017.

   B. Pechanga Band

   Representation for the Pechanga Band updated the status of the Pechanga settlement. The Steering Committee was informed that the Settlement Agreement was passed by Congress (December 2016), and the Extension of Service Area Agreement with RCWD has been completed and signed. The Congressionally approved Settlement Agreement will be signed in the week following the October 2017 SC Meeting. Pechanga Representative informed the Steering Committee that the Settlement Agreement Parties have until April 30, 2021 to incorporate into the Fallbrook Case. However, Pechanga has the intentions to secure a Court date with Judge Curiel in early 2018.

7. Motion to add Steering Committee Member

   Steering Committee gave an update on the ongoing discussion pertaining the addition of a Steering Committee Member and/or financial restitution for Watermaster activities pertaining the Anza Settlement. The formation of a Work Group was purposed to organize the issues to be presented to Judge Curiel. Steering Committee asked Watermaster if he would provide the time/cost for the Watermaster activities associated with the Anza settlement.

   Action items for the Watermaster include, (1) providing the Steering Committee with past costs and/or time spent on the Anza Settlement, and (2) follow up with Judge Curiel pertaining the said USMC Counsel letter.

   Action items for the Steering Committee include the formation of the Work Group.

8. Camp Pendleton/FPUD Conjunctive Use Project (CUP)

   Watermaster inquired about a summary of the status of the Conjunctive Use Project. USMC Counsel informed the Steering Committee of an upcoming meeting between the Watermaster and the CUP parties in November 2017. USMC Counsel informed the Steering Committee about the status of the Draft Settlement

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Santa Margarita River Watershed Watermaster Steering Committee
October 17, 2017 Meeting Minutes
Page 4 of 4

Agreement.  It was presented that the Draft Settlement Agreement has been approved by the appropriate Parties associated with the Department of the Navy and construction is currently underway for the facilities associated with the CUP on the Naval Weapons Station.  USMC Counsel explained that the Secretary of the Navy would need the Department of the Justice's approval to proceed, after which FPUD would have an opportunity to approve the agreement.  An explanation on how the implementation of the Settlement Agreement would be incorporated/filed into the Fallbrook Case was given by USMC Counsel, including the final approval from the Court.  The Watermaster inquired about the timeline for the CUP, to which USMC Counsel responded with looking for DOJ approval within 6 months, with implementation into the Fallbrook Case to follow.

9.   Annual Watermaster Report for Water Year 2016

The Watermaster informed the Steering Committee the status of the Annual Watermaster Report for Water Year 2016.  A version is in circulation within the Watermaster Office with the Draft version for Steering Committee review is expected soon.  The Watermaster presented the court required information to be included in the report annually to the Steering Committee.   The Steering Committee presented the potential opportunity to streamline the reporting process by possibly updating and automating the data processing portion of the report, to which the Watermaster agreed.

10.   Election of Chairperson of Steering Committee

The Watermaster stated that the term for the current chairperson of the Steering Committee, held by the EMWD Steering Committee Representative, expires at the conclusion of the October Steering Committee Meeting.  It was decided that the representative for WMWD would be the Chair and the representative for MWD would act as the Vice Chair.  The Steering Committee approved the decision unanimously.

11.   Other Business

12.   Proposed Date of Next Steering Committee Meeting

The proposed date for the next meeting is **Tuesday, January 16, 2018**, at the Rancho California Water District Board Room.

The Steering Committee meeting was adjourned at 10:45 a.m.

# EXHIBIT D

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

## *SANTA MARGARITA RIVER WATERSHED*

### WATERMASTER STEERING COMMITTEE MEETING

On January 16, 2018, a meeting of the Watermaster Steering Committee was held at the Rancho California Water District Board Room.

| Steering Committee Members | Representing |
|---|---|
| Karly Gaynor, Vice Chair | Western Municipal Water District |
| David Shank | Fallbrook Public Utility District |
| Timothy Kellett | Metropolitan Water District |
| Eva Plajzer | Rancho California Water District |
| John Simpson | Camp Pendleton |

The committee members from Pechanga Band of Luiseño Mission Indians and Eastern Municipal Water District were unable to attend the meeting.

The following were also present and signed the sign-in sheet:

Michael J. Preszler, Watermaster
Robert A. Heather, Watermaster Office
Michael McPhereson, Consultant
Dan Bartu, Camp Pendleton
Hayden Hamilton, Rainbow Municipal Water District
Patrick Taber, Bureau of Indian Affairs
Lynette Stewart, Pechanga Water System
Eagle Jones, Pechanga Water System
Paul Boughman, Department of the Navy/United States Marine Corps.
Steve Reich, Stetson Engineers, Inc.
Jeff Kirshberg, Rancho California Water District
Jesus Gastelum, Elsinore Valley Municipal Water District
Phoy St. John, Bureau of Indian Affairs
Greg Burnett, Citizen

The Vice Chair called to order the Steering Committee of the Santa Margarita River Watershed Watermaster at about 10:01 a.m. and welcomed participants.

1.    Approval of Minutes of October 17, 2017 Steering Committee Meeting

The October 17, 2017 Steering Committee Meeting Minutes were approved unanimously.

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Santa Margarita River Watershed Watermaster Steering Committee
January 16, 2018 Meeting Minutes
Page 2 of 6

2.   Watermaster Office General Business

A.   Watermaster Accounting Duties

Watermaster explained to the Steering Committee the current activities associated with the Watermaster Office accounting and financial duties. Watermaster informed the Steering Committee that the responsibilities have been moved to RCWD from FPUD, and the transition has been smooth.

B.   Annual Budget Report for 2016-17 and Anza Indian Water Rights Settlement Summary Costs

Watermaster provided the Steering Committee with information relating to the expenditures for year 2016-17. Watermaster noted that the approved budget for that year is $772,100. Watermaster noted that the expenditures for the said year totaled $679,039. The reduction of $93,061 can be attributed to the absorption of costs into the line item titled "Consulting Services". Another reason is that some of the work associated with the budget was not completed within the year 2016-17. Watermaster reported to the Steering Committee that some of this funding will be rolled over into year 2017-2018 in order to complete the work that was tasked for year 2016-2017.

Watermaster gave an update on the costs per year to the Watermaster office with respect to the ongoing Watermaster involvement in the Anza settlement negotiations. Watermaster informed the Steering Committee that a total of $491,000 has been spent during the period of 2006 through 2017. Costs per year varied from $18,000 in 2007, to a high of $70,000 in 2015. The cumulative costs of $491,000 is equivalent to about $41,000 per year on average. Watermaster explained that these values did not include costs associated with Watermaster legal services or travel expenses incurred.

3.   MWD Diamond Valley/Lake Skinner Operation (Update Lake Skinner MOU)

A.   Diamond Valley Lake

Watermaster informed the Steering Committee that for Water Year 2017-18 through November 30, 2017, MWD records show no local inflow was measured at Goodhart Canyon, therefore, no required releases into Warm Springs Creek in accordance with the Diamond Valley Lake MOU were performed.

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Santa Margarita River Watershed Watermaster Steering Committee
January 16, 2018 Meeting Minutes
Page 3 of 6

For Water Year 2017-18 through November 30, 2017, MWD records show a cumulative total of 150.22 AF of imported water were delivered for agricultural uses in the Domenigoni Valley. The December 5, 2017 reading indicated the groundwater elevation for the Monitoring Well MO-6 is 1,376.15 feet. This elevation is below the decreed elevation of 1,400.00 feet indicating that the groundwater in Domenigoni Valley is not presently within the Court's jurisdiction.

B. Lake Skinner

Watermaster reported to the Steering Committee that for Water Year 2017-18 through November 30, 2017, MWD records show no local runoff into Lake Skinner and thus, no water was required to be released into Tucalota Creek in accordance with the Lake Skinner MOU. Additionally, records show that 10.0 AF has been releases into Tucalota Creek for the specific purpose of groundwater replenishment. No water has been released for maintenance purposes into Tucalota Creek. Watermaster informed the Steering Committee that on November 24, 2017 the monitoring well (AV-28B) indicated a groundwater elevation of 1,356.94 feet which is 0.31 feet above the minimum elevation of 1,356.64 feet that would initiate groundwater replenishment releases.

Watermaster informed the Steering Committee that there were no additional maintenance releases from the MWD distribution system for Water Year 2017-18 through November 30, 2017.

Watermaster informed the Steering Committee that the annual release letter pertaining to the operation of Lake Skinner, provided in the Agenda Memo, has been prepared and submitted to the appropriate parties.

C. MWD Update of Lake Skinner MOU

Watermaster explained the current status of the need to amend the Lake Skinner MOU. Watermaster expressed interest in a meeting with MWD, FPUD, and RCWD to initiate the process of updating the Lake Skinner MOU.

4. Camp Pendleton/RCWD Cooperative Water Resource Management Agreement CWRMA

A. Groundwater Management Runs/Current and Future Activities/Recent Activities

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Santa Margarita River Watershed Watermaster Steering Committee
January 16, 2018 Meeting Minutes
Page 4 of 6

Watermaster updated the Steering Committee with the activities associated with the updating of the groundwater model.  Update to the modeling has been finalized and the Watermaster runs have been completed.  How to implement this information is a topic for the upcoming TAC meeting.

B. Next TAC Meeting

Watermaster reported the TAC will conduct its next meeting on January 16, 2018 at 11:00 a.m., at the offices of RCWD to discuss implementation of study/model findings.

5. Quantification of Federal Reserved Water Rights Claims by Cahuilla, Ramona, and Pechanga Bands

A. Cahuilla and Ramona Bands

The Watermaster updated the Steering Committee on the status of the Anza Settlement.  Negotiations are still under way and the parties continue to conduct settlement discussions. Telephonic status conferences with Magistrate Judge Brooks were held on November 28, 2017 and January 9, 2018.  Watermaster explained that the current Stay expired on January 13, 2018 and that he was unaware if a Joint Motion to Extend the Stay had been filed.

B. Pechanga Band

Watermaster reported that on November 29, 2017 the Pechanga Water Settlement Agreement was executed.  Signatories included the Pechanga Tribal Chairman, U.S. Secretary of the Interior, and the RCWD President.

6. Motion to add Steering Committee Member

Watermaster communicated that the Steering Committee has been investigating the process to add a member. Watermaster informed the Steering Committee that Judge Brooks had explained to the Watermaster that this should be addressed by Judge Curiel.  Watermaster asked the Steering Committee for an update on the process to add a member.   RCWD representative informed the Watermaster that legal counsel has a draft motion ready for filing with the Court and that they were waiting for input from on how to proceed from Judge Curiel (or his assistant) before any decision was made on behalf of the Steering Committee.  Watermaster inquired whether there had been any feedback to this point to which the Steering Committee replied there hadn't been any feedback from the Court.

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Santa Margarita River Watershed Watermaster Steering Committee
January 16, 2018 Meeting Minutes
Page 5 of 6

7.   Camp Pendleton/FPUD Conjunctive Use Project(CUP)

   A.   CUP Facilities Field Trip

   Watermaster informed the Steering Committee that on December 11, 2017
   the Watermaster Office participated in a field trip, led by FPUD and CPEN
   representatives, to observe the CUP facilities currently being constructed.

   B.   FPUD Board Meeting

   Watermaster reported that the Watermaster Office attended the FPUD
   Board of Directors meeting on December 11, 2017.  Watermaster stated
   that the CUP Settlement Agreement had been approved by the FPUD
   Board of Directors.

8.   EMWD/MWD/RCWD Cyclic Agreement

   Steering Committee representative updated the Watermaster with respect the
   cyclical storage program offered by MWD.  RCWD representative announced
   that although MWD is suspending the cyclical program at the end of January
   2018, 1,800 AF of water was introduced to the groundwater basin before the
   suspension of program.  Watermaster inquired as to how long the suspension
   of the program would be.  The representative from MWD explained that due to
   low projected water supply, MWD is suspending "surplus" programs such as
   Cyclical and Conjunctive Use programs.  MWD representative explained that
   surplus conditions allow for storage programs to be implemented, and that if no
   surplus conditions are expected, no such storing programs are to be
   implemented.

   MWD representative asked RCWD representative how quick they could turn
   facilities back on to initiate the program again if supply conditions changed.
   RCWD responded with they could quickly turn the system back on to receive
   deliveries, but that other commitments have been made, and additional Cyclic
   Agreement deliveries would require re-evaluation and coordination between
   the parties.

9.   Annual Watermaster Report for Water Year 2016

   Watermaster happily informed the Steering Committee that the Annual Report
   for Water Year 2015-16 was complete and ready for filing with the court.

10.   Other Business

   A citizen posed a question to the Steering Committee with respect to the
   implication of the CUP Settlement Agreement (between CPEN and FPUD) and
   how it affects the adjudication.  CPEN representative gave an overview of the

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Santa Margarita River Watershed Watermaster Steering Committee
January 16, 2018 Meeting Minutes
Page 6 of 6

physical solution that the CUP creates.  CPEN representative informed the citizen about logistics of the project, including a general delivery schedule to FPUD based on hydrological condition, approval process, and general agreement provisions.  CPEN representative explained that the CUP aims to provide both a legal and physical solution.  Legal counsel for CPEN informed the status of the agreement with respect to incorporating into the Court's docket.  Specifically, that it had been agreed to, approved, and signed by all the parties involved and that it still needed to be incorporated into the adjudication (Fallbrook Case).  Legal Counsel for CPEN explained that the lawsuit would still be active with respect to the parties.

11.   Next Meeting

The proposed date for the next meeting is **Tuesday, April 17, 2018,** at the Rancho California Water District Board Room.

The Steering Committee meeting was adjourned at 10:34 a.m.

# EXHIBIT E

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

# MEMORANDUM

TO: SANTA MARGARITA RIVER WATERSHED WATERMASTER STEERING
COMMITTEE

FROM: MICHAEL J. PRESZLER, WATERMASTER

DATE: January 5, 2018

RE: ANNUAL BUDGET REPORT FOR 2017 AND ANZA INDIAN WATER
RIGHTS SETTLEMENT SUMMARY COSTS

## INTRODUCTION

The purpose of this memorandum is to provide the Steering Committee with a report on the actual costs for the Watermaster for the year 2016-17, discussion of "carry over" Watermaster efforts and associated funding to year 2017-2018, and provide a summary discussion on the Watermaster costs incurred for the ANZA Indian Water Rights Settlement process.

## 2016-17 ACTUAL COSTS COMPARED TO APPROVED BUDGET

The budget for 2016-2017 in the amount of $772,100 was approved by the Court as reported in the September 2016 Annual Watermaster Report for Water Year 2014-2015. The budget and actual costs for 2016-2017 are compared in the attached Table 1. The comparison shows the actual costs were $93,061 less than the approved budget, which corresponds to a reduction of about 13.7 percent. The 2016-2017 assessments paid by the Steering Committee members were established based on the Court-approved budget of $772,100 and thus the revenues derived from assessments were greater than the actual costs.

The net gain resulted in an increase in the reserves (retained earnings) to an ending balance on September 30, 2017 of $504,255. These funds are invested in short-term securities and represent reserves at about 67 percent of the proposed budget for 2017-18 of $755,085.

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Memorandum to Santa Margarita River Watershed
  Watermaster Steering Committee
Annual Budget Report for 2017
January 5, 2018
Page 2 of 3

As indicated in Table 1, the primary favorable variances in projected versus budgeted costs for 2016-2017 include cost for Accounting Services being less than budgeted in the amount of $5,949 reflecting actual costs being less due to staff retirement and associated reduction in services/costs and costs for Conference/Training, Equipment and Furniture, IT System/Computer, Postage, Printing Publications, Rent, Supplies, and Telephone being less than budgeted reflecting actual costs being less due to much of these items being covered by California Water Consulting with no separate line item charged to the Watermaster Office.

As indicated in Table 1, the primary unfavorable variance in actual versus budgeted costs for 2016-2017 pertains to the Legal Services with costs greater than budgeted in the amount of $7,678 reflecting expected increases in costs related to the ongoing Anza Indian Water Rights Settlement and Costs for Watermaster Consulting Services greater than budgeted in the amount of $37,102, which is due to many of the costs associated with the Watermaster Office being "absorbed" into the Consulting Services costs.

**CARRY OVER FUNDING TO 2017-2018**

One reason for the favorable variance of the actual Watermaster Office costs as compared to the approved budget for year 2016-2017 is because the 2015-2016 Annual Watermaster Report planned to be completed during year 2017-2018 was not completed prior to September 30, 2017 (the end of the financial year) and therefore that portion of funding associated with that work effort was preserved.  The Watermaster Office plans to utilize this portion of the funding during the 2017-2018 to complete the 2015-2016 Annual Report.

**ANZA INDIAN WATER RIGHTS SETTLEMENT SUMMARY COSTS**

The Watermaster participates in the Anza Indian Water Rights Settlement process.  The process began in 2006 and continues today.  Over time, the Watermaster effort has varied depending the level of effort required during the year. The attached Table 2, lists the Watermaster costs associated with the Anza Indian Water Rights Settlement process. Annual costs have ranged from $18,092 (2007) to $70,001 (2015) with an average annual cost of $40,952.  This amount corresponds to about 21% of the Watermaster annual time and $5,850 per year, per Steering Committee Member.  The total cost of the Watermaster for the period 2006 through year 2017 was about $491,419.  These costs do not include

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Memorandum to Santa Margarita River Watershed
  Watermaster Steering Committee
Annual Budget Report for 2017
January 5, 2018
Page 3 of 3


Watermaster support staff (Current Watermaster Assistant has not spent effort on the Anza Indian Water Rights Settlement process) or legal counsel. Watermaster legal counsel costs relating to the Anza effort vary per year and are around $20,000 annually.

Table 1
Comparison of Budget and Actual Costs for 2016-17
Watermaster--Santa Margarita River Watershed

| Item | Approved Budget 2016-17 $ | Actual Costs 2016-17 $ | Actual Costs Minus Approved Budget 2016-17 $ | % |
|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) |
| Watermaster Office | | | | |
|    Accounting Services | $8,500 | $2,551 | -$5,949 | -70.0% |
|    Audit | 6,600 | 8,780 | 2,180 | 33.0% |
|    Clerical/Analyst | 114,200 | 44,764 | -69,436 | -60.8% |
|    Conference/Training | 1,600 | 0 | -1,600 | -100.0% |
|    Equipment and Furniture | 1,000 | 0 | -1,000 | -100.0% |
|    Human Resources Services | 800 | 27,000 | 26,200 | 3275.0% |
|    Insurance | 600 | 575 | -25 | -4.2% |
|    IT System/Computer | 10,000 | 989 | -9,011 | -90.1% |
|    Legal Services | 30,000 | 37,678 | 7,678 | 25.6% |
|    Miscellaneous | 41,050 | 3,526 | -37,524 | -91.4% |
|    Postage | 2,000 | 181 | -1,819 | -91.0% |
|    Printing | 11,500 | 2,434 | -9,066 | -78.8% |
|    Publications | 3,300 | 897 | -2,403 | -72.8% |
|    Rent | 18,000 | 6,000 | -12,000 | -66.7% |
|    Supplies | 1,900 | 422 | -1,479 | -77.8% |
|    Telephone | 3,000 | 1,034 | -1,966 | -65.5% |
|    Travel | 1,500 | 613 | -887 | -59.1% |
| Watermaster Services | | | | |
|    Consulting Services | 242,000 | 279,102 | 37,102 | 15.3% |
|    Travel Reimbursement | 27,600 | 16,662 | -10,938 | -39.6% |
| **SUBTOTAL WATERMASTER OFFICE** | **$525,150** | **$433,208** | **-$91,942** | **-21.2%** |
| | | | | |
| USGS Gaging Station | $177,800 | $176,995 | -$805 | -0.5% |
| USGS Surface Water Quality | 15,900 | $15,828 | -72 | -0.5% |
| USGS Groundwater Monitoring--Water Levels | 53,250 | $53,009 | -241 | -0.5% |
| USGS Groundwater Monitoring--Water Quality | 0 | 0 | 0 | 0.0% |
| **SUBTOTAL USGS** | **$246,950** | **$245,831** | **-$1,119** | **-0.5%** |
| | | | | |
| **TOTAL** | **$772,100** | **$679,039** | **-$93,061** | **-13.7%** |

Notes:
(2)  Budget for 2016-17 approved by the Court as reported in the September 2016 Annual Watermaster
    Report for Water Year 2014-15.
(3)  Actual costs from Financial Statements for period ending September 30, 2017.
(4)  = (3) - (2)
(5)  = ((3) - (2)) / (2)

## Table 2
## Watermaster Costs Related to Indian Water Rights Settlements
## Santa Margarita River Watershed Watermaster

| Year | Percent of Watermaster Time | Cost for Watermaster Time Only (a)(c) |
|---|---|---|
| 2006 | 15.4% | $23,500 |
| 2007 | 11.9% | $18,092 |
| 2008 | 26.3% | $43,679 |
| 2009 | 17.3% | $29,682 |
| 2010 | 22.9% | $45,982 |
| 2011 | 13.3% | $27,160 |
| 2012 | 23.1% | $50,264 |
| 2013 | 26.2% | $57,319 |
| 2014 | 24.2% | $52,407 |
| 2015 | 27.5% | $70,006 |
| 2016 (b) | 19.7% | $47,778 |
| 2017 | 11.8% | $25,550 |
| | | |
| Total | | $491,419 |
| | | |
| Average | 20.8% | $40,952 |

(a) Cost does not include travel expenses or costs for staff and legal counsel.
(b) Missing information for year 2016, data is estimated.
(c) Cost shown for years 2006-2015 based on calendar year (Jan-Dec) and
   costs for show for year 2017 based on water year (Oct 2016 - Sep 2017).

# EXHIBIT F

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

## *SANTA MARGARITA RIVER WATERSHED*

### WATERMASTER STEERING COMMITTEE MEETING

On April 17, 2018, a meeting of the Watermaster Steering Committee was held at the Rancho California Water District Board Room.

| Steering Committee Members | Representing |
|---|---|
| Karly Gaynor, Chair | Western Municipal Water District |
| Timothy Kellett, Vice Chair | Metropolitan Water District |
| Jack Bebee | Fallbrook Public Utility District |
| Eva Plajzer | Rancho California Water District |
| John Simpson | Camp Pendleton |
| Kelley Gage | Eastern Municipal Water District |

The committee member from Pechanga Band of Luiseño Mission Indians was unable to attend the meeting.

The following were also present and signed the sign-in sheet:

Michael J. Preszler, Watermaster
Robert A. Heather, Watermaster Office
Michael McPherson, Consultant
Doug McPherson, U.S. Bureau of Reclamation
Roberto Beltran, U.S. Bureau of Reclamation
Steven O'Neill, Eastern Municipal Water District, General Counsel
Lynette Stewart, Pechanga Water System
Eagle Jones, Pechanga Water System
Jesus Gastelum, Elsinore Valley Municipal Water District

The Chair called to order the Steering Committee of the Santa Margarita River Watershed Watermaster at about 10:04 a.m. and welcomed participants.

1.   Approval of Notes of January 16, 2018 Steering Committee Meeting

The January 16, 2018 Steering Committee Meeting Notes were approved unanimously.

2.   Watermaster Office General Business

A. The Watermaster informed the Steering Committee that the Watermaster Office has moved to 169 Parkshore Drive, Suite 110, Folsom, California.

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Santa Margarita River Watershed Watermaster Steering Committee
April 17, 2018 Meeting Notes
Page 2 of 5

3.    MWD Diamond Valley/Lake Skinner Operation (Update Lake Skinner MOU)

A.   Diamond Valley Lake

Watermaster informed the Steering Committee that for Water Year 2017-18 through February 28, 2018, MWD records show that cumulative inflow and required release at 1.219 AF into Warm Springs Creek in accordance with the Diamond Valley Lake MOU were performed.

For Water Year 2017-18 through February 28, 2018, MWD records show a cumulative total of 295.83 AF of imported water were delivered for agricultural uses in the Domenigoni Valley.  The March 5, 2018 reading indicated the groundwater elevation for the Monitoring Well MO-6 is 1,376.56 feet.  This elevation is below the decreed elevation of 1,400.00 feet indicating that the groundwater in Domenigoni Valley is not presently within the Court's jurisdiction.

B.   Lake Skinner

Watermaster reported to the Steering Committee that for Water Year 2017-18 through February 28, 2018, MWD records show no local runoff into Lake Skinner and thus, no water was required to be released into Tucalota Creek in accordance with the Lake Skinner MOU.  Additionally, records show that 18.0 AF has been releases into Tucalota Creek for the specific purpose of groundwater replenishment, and 4.0 AF has been released for maintenance purposes into Tucalota Creek.  Watermaster informed the Steering Committee that on February 23, 2018 the monitoring well (AV-28B) indicated a groundwater elevation of 1,357.30 feet which is 0.66 feet above the minimum elevation of 1,356.64 feet that would initiate groundwater replenishment releases.

C.   MWD Update of Lake Skinner MOU

Watermaster re-introduced the topic for the need to update the Lake Skinner MOU.  Watermaster explained the topics for inclusion in the 2nd Amended Lake Skinner MOU, including the Quagga Mussel Control plan as well as the need to update/investigate the methodology for the local runoff computation.  FPUD representative updated the Watermaster in regards to the current method, and effort that has gone into updating the local runoff computation.

As stated by the FPUD representative, the current method is essentially a water balance (inflows and outflows) to determine the local inflow into Lake Skinner.  FPUD worked with MWD in order to create a model to potentially increase the accuracy of the runoff determination.  It was stated that stream gages had previously been put in place, although they are currently offline.

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Santa Margarita River Watershed Watermaster Steering Committee
April 17, 2018 Meeting Notes
Page 3 of 5

FPUD representative informed the Watermaster that data collection with the said monitoring devices lasted for about five years, and that a model had been developed. It was reported that the inaccuracies associated with the model did not present a viable option for the local inflow computation. As a result, FPUD did submit to the State Board, a request for approval for the water balance method for determining the local runoff into Lake Skinner (approval is needed for this computation as FPUD is not currently actively measuring the runoff). FPUD reported that they are satisfied with the current water balance calculation. MWD representative asked FPUD if there was a timeline in which the State would respond to FPUD regarding accepting this method of the computation, to which FPUD replied that they were unaware of when the State Board would reply. FPUD informed the Watermaster that they would provide the Watermaster Office with the correspondence with the State Board.

Watermaster explained that the new MOU would have to incorporate other items to be included in the 2nd Amended Lake Skinner MOU. MWD wanted to make sure that the effort and need for the updated MOU still needed to be completed in the eyes of the Watermaster, to which the Watermaster informed MWD that the accuracy of the water balance method still needs to be investigated by the Watermaster. Watermaster also informed the Steering Committee that local runoff computation would be examined and explored by the Watermaster, as the Watermaster did not currently have an opinion in regards to the runoff computation and that more effort would be made to further understand the accuracy of the current method, as well as any implications associated with downstream users with priority. The representative from FPUD offered the Watermaster Office the data and information regarding the efforts to date, including field data collected pertaining to the calibration of the developed/undeveloped FPUD model.

Watermaster asked the MWD representative when the Draft 2nd Amended MOU could be provided to the Watermaster Office, to which the MWD representative answered that it could be provided in a couple of days, upon approval of MWD Management.

4.   Camp Pendleton/RCWD Cooperative Water Resource Management Agreement CWRMA

     A. Groundwater Management Runs/Current and Future Activities/Recent Activities

        Watermaster informed the Steering Committee with the ongoing activities associated with the CWRMA TAC. Activities include implementation of the

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Santa Margarita River Watershed Watermaster Steering Committee
April 17, 2018 Meeting Notes
Page 4 of 5

model runs into both the Watermaster Annual Report, as well as the CWRMA Annual Report.

B. Next TAC Meeting

Watermaster reported the TAC will conduct its next meeting on April 17, 2018 at 11:00 a.m., at the offices of RCWD to discuss implementation of study/model findings.

5. Quantification of Federal Reserved Water Rights Claims by Cahuilla, Ramona, and Pechanga Bands

A. Cahuilla and Ramona Bands

The Watermaster updated the Steering Committee on the status of the Anza Settlement. A request to extend the Stay of Proceedings (Stay) was filed on January 17, 2018 and on January 22, 2018, the Court extended the Stay through July 16, 2018. Negotiations are still under way and the parties continue to conduct settlement discussions. A telephonic status conferences with Magistrate Judge Brooks was held on March 14, 2018. Watermaster informed the Steering Committee that the next conference is scheduled for May 31, 2018.

B. Pechanga Band

A representative from the Pechanga Band updated the Steering Committee and Watermaster pertaining to the Pechanga Band Water Rights Settlement. It was announced that no new activities associated with these efforts had occurred.

6. Coordination with the Court on Anza Settlement Party Issue

Watermaster reported to the Steering Committee that on Feb 20, 2018 Watermaster met with Judge Curiel and Watermaster Attorney Bill Brunick, pertaining the SC concerns with Watermaster costs associated with involvement in Anza Settlement negotiations. It was reported that Judge Curiel requested the Watermaster to work with parties to find a possible solution. Watermaster informed the Steering Committee that Pat Berry (DOJ) and Doug Garcia (BIA) would be available for a potential meeting with the Steering Committee parties in Temecula on May 24, 2018. The Steering Committee reported that they were interested in attending the meeting, with the understanding that said parties for the United States were not going to make the claim that the representation, and fiduciary responsibility, was being fulfilled by the Camp Pendleton Steering Committee membership. Steering Committee coordinated a potential telephonic conference among themselves and respective legal counsels, prior to meeting the parties representing the United

WATERMASTER
SANTA MARGARITA RIVER WATERSHED

Santa Margarita River Watershed Watermaster Steering Committee
April 17, 2018 Meeting Notes
Page 5 of 5

States in the Anza negotiations. It later decided that the meeting with the United States representatives would be scheduled for July 17, 2018 prior to the regularly scheduled Steering Committee meeting, pending further organization by the Watermaster.

7.   Camp Pendleton/FPUD Conjunctive Use Project (CUP)

FPUD representative informed the Watermaster and the Steering Committee that the process for filing of the Settlement Agreement with the Court is currently underway.  FPUD representative reminded the Steering Committee and Watermaster that the agreement has been adopted by the FPUD Board, and is currently being finalized through DOJ.

Watermaster inquired on the status of the change petition with respect to the water rights associated with the Conjunctive Use Project and Settlement Agreement.  FPUD representative reported they received the draft conditions from the state board, and finalizing comments back to them, the last remaining protest has been dismissed.

8.   Annual Watermaster Report for Water Year 2016 and 2017

Watermaster informed the Steering Committee that the Annual Report for Water Year 2016 was submitted to the Court on January 22, 2018 and that no objections were submitted to the court.  Watermaster also reported that the Watermaster Office is nearing completion of the draft Annual Report for Water Year 2017 and it should be distributed in the near future.

9.   Other Business

Nothing to report.

10.  Next Meeting

The proposed date for the next meeting is **Tuesday, July 17, 2018,** at the Rancho California Water District Board Room.

The Steering Committee meeting was adjourned at 10:48 a.m.

# EXHIBIT G

**James Gilpin**

| | |
|---|---|
| **From:** | mpreszler@smrwm.org |
| **Sent:** | Friday, October 12, 2018 3:56 PM |
| **To:** | 'Karly Gaynor'; 'Keith E Nobriga'; 'Stacie Takeguchi'; 'Jack Bebee'; Eva Plajzer; 'John O. Simpson'; 'Gage, Kelley'; 'Marc Luker'; 'Gray, Rachel' |
| **Subject:** | 2019 Watermaster Anza Settlement Negotiation process costs. |

Hello Steering Committee,

At the July Watermaster Steering Committee meeting it was requested I break-out the anticipated Watermaster Anza Settlement negotiation costs for the 2019 year/budget. I don't yet know how many meetings will occur, how many Court Status Conferences, and generally the work effort that will be required, therefore the value should be considered an estimate. For year 2018 the Watermaster office spent about $45,000 on the Anza task. This includes travel (~$1,200) and Watermaster Attorney costs of about $10,000. The work effort in year 2018 was pretty light as the nature of the settlement agreement process included development of significant information that did not include the Watermaster. I do anticipate that the 2019 Watermaster costs associated with the Anza Settlement will be greater than occurred in 2018. I have budgeted $60,000 for year 2019, which includes Watermaster, expenses, and Watermaster Attorney.

If you have any questions or would like to discuss this information, please give me a call or email.

Thanks,
Michael

Michael J. Preszler, P.E.
Watermaster – Santa Margarita River Watershed
*(530) 368-6343*

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

# EXHIBIT H



**Rancho Water**

Board of Directors

Ben R. Drake
President

Bill J. Wilson
Senior Vice President

Carol Lee Brady

Angel Garcia

Lisa D. Herman

Danny J. Martin

William E. Plummer

Officers

Jeffrey D. Armstrong
General Manager

Eva Plajzer, P.E.
Assistant General Manager
Engineering and Operations

Richard R. Aragon, CPFO
Assistant General Manager
Chief Financial Officer/Treasurer

Jason A. Martin
Director of Administration

Eileen Dienzo
Director of Human Resources

Kelli E. Garcia
District Secretary

James B. Gilpin
Best Best & Krieger LLP
General Counsel

November 8, 2018

Michael J. Preszler
**Santa Margarita River Watershed Watermaster**
895 Embarcadero Drive, Suite 105
El Dorado Hills, CA 95762

**SUBJECT:** **COMMENTS ON THE WATERMASTER DRAFT ANNUAL REPORT FOR THE WATER YEAR 2016-17**

Dear Mr. Preszler:

Rancho California Water District (RCWD/District) respectfully submits the following comments on the Draft Annual Report for the Water Year 2016-17, published on October 11, 2018 (Draft Annual Report). Fundamentally, the District objects to the inclusion of costs associated with the Anza Settlement Proceedings in the budget. RCWD is not a party to the settlement proceedings and should not be required to pay costs associated with the Watermaster's work in the Anza Settlement Proceedings. Those costs are for the direct benefit of the parties to the settlement proceedings and should be borne by those parties. The Steering Committee has requested on a number of occasions at meetings and, most recently, in a letter dated May 31, 2017, that funding for costs associated with the Anza Settlement Proceedings be funded by the parties involved, instead of by the members of the Steering Committee. To date, no satisfactory resolution of the issue has been achieved.

In addition, the Steering Committee has requested that the costs associated with the Anza Settlement Proceedings be presented as a separate line item in the proposed budget; however, Table 13.2 in the Draft Annual Report does not have a line item for the Anza efforts. In an email to the Steering Committee, dated October 12, 2018, you indicated that you have budgeted $60,000 in the proposed 2018-19 budget for efforts associated with the Anza settlement, including costs for Watermaster, Watermaster attorney, and expenses. These costs need to be shown as a separate line item in Table 13.2.

As you are aware, the members of the Steering Committee provide 100 percent of the funding for all Watermaster work. None of the members are parties of the Anza Settlement Proceedings. This arrangement results in non-parties and their ratepayers funding activities that provide no direct benefit to the portion of the watershed where they have interests. The Anza groundwater basin has little or no measurable effect on the downstream basin.

Letter to Michael J. Preszler/Watermaster
November 8, 2018
Page Two

This fiscal concern was specifically identified to the previous Watermaster and has still not been resolved. Work associated with the Anza Settlement Proceedings continues to be performed under the auspices of the original 1989 Watermaster Appointment Order (Order) as "other duties as directed by the court." This has become the largest single task for the allocation of Watermaster billable hours and the District does not believe that it or the other members of the Steering Committee should be required to fund costs for the benefit of other parties. The intent of the original Order was not to have the existing members continue to fund ongoing extensive efforts outside of their service areas under this item in the Order. In the Order, the court specifically retained the right to "assess any other party using water under the provisions of the applicable judgments, decrees and Orders for the Santa Margarita River Watershed for the costs, fees and expenditures for the Watermaster."

As we have indicated on numerous occasions, the District continues to object to the inclusion of the costs associated with the Watermaster's work on the Anza Settlement Proceedings to it and/or other members of the Steering Committee. Accordingly, the District requests that the costs be removed from the budget and that another mechanism to fund such activities be identified.

Sincerely,

RANCHO CALIFORNIA WATER DISTRICT

Eva Plajzer, P.E.
Assistant General Manager-Engineering and Operations

cc:     Jeff Armstrong, General Manager
        Rich Ottolini, Water Operations Manager

18\EvaP:lm020\FEG



# EXHIBIT I



November 8, 2018


Michael J. Preszler
Santa Margarita River Watershed Watermaster
895 Embarcadero Drive, Suite 105
El Dorado Hills, CA 95762

Dear Mr. Preszler:

Eastern Municipal Water District (EMWD) respectfully submits these comments on the Draft Annual Report for the Water Year 2016-17 published on October 11, 2018.

As discussed at prior Watermaster Steering Committee meetings, EMWD objects to costs associated with the Anza Settlement Proceedings being included in the budget.  EMWD is not a party to the Settlement Proceedings and should not be required to pay costs associated with the Watermaster's work in the Anza Settlement Proceedings.  Those costs are for the direct benefit of the parties to the Settlement Proceedings and, as such, should be borne by those parties.  The Steering Committee has requested on a number of occasions at numerous Steering Committee meetings and, most recently, in a letter dated May 31, 2017, that funding for costs associated with the Anza Settlement Proceedings be funded by the parties involved, and not by the current members of the Steering Committee.  To date, no satisfactory resolution of the issue has been achieved.

As you are aware, the members of the Steering Committee provide 100% of the funding for all Watermaster work.  None of the members are parties of the Anza Settlement Proceedings.  This arrangement results in non-parties and their ratepayers funding activities that provide no direct benefit to our respective agencies or the watershed where we have interests.  Additionally, the Anza groundwater basin has little or no measurable effect on the downstream basin.

This fiscal concern was specifically identified to the previous Watermaster and has still not been resolved.  Work associated with the Anza Settlement Proceeding continues to be performed under the auspices of the original 1989 Watermaster Appointment Order as "other duties as directed by the court."  This has become the largest single task for the allocation of Watermaster billable hours and the District does not believe that it or any other member of the Steering Committee should be obligated to fund costs for the benefit of other parties.  The intent of the original Order was not to have the existing

Board of Directors

David J. Slawson, President    Ronald W. Sullivan, Vice President    Josesph J. Kuebler, CPA, Treasurer    Philip E. Paule    Randy A. Record

2270 Trumble Road • P.O. Box 8300 • Perris, CA 92572-8300
T 951.928.3777 • F 951.928.6177   www.emwd.org

Mr. Michael Preszler
November 8, 2018
Page 2

members continue to fund on-going extensive efforts outside of their service areas.  In the Order, the Court specifically retained the right to "assess any other party using water under the provisions of the applicable judgments, decrees and Orders for the Santa Margarita River Watershed for the costs, fees and expenditures for the Watermaster."

As discussed on numerous occasions, EMWD continues to object to the inclusion of the costs associated with the Watermaster's work on the Anza Settlement Proceedings to it and/or other members of the Steering Committee.  Accordingly, EMWD requests that these costs be removed from the budget and that another mechanism to fund such activities be identified.

Sincerely,

Nick Kanetis
Deputy General Manager

C:      Santa Margarita River Watershed Steering Committee Member Representatives

EASTERN MUNICIPAL WATER DISTRICT

# EXHIBIT J

RECEIVED

DEC 1 3 2018

RCWD

RCWD
Distribution Stamp
With
Attach

J. Armstrong ☒ + orig report
E. Plaizer ☒ + orig report
R. Ottolini ☒ + orig report
J. Kirshberg ☒ + orig report
J. Wiley ☒ + orig report
Central Files ☒
Copied and
distributed by: KW

**WATERMASTER**
SANTA MARGARITA RIVER WATERSHED
169 PARKSHORE AVE, SUITE 110
FOLSOM, CA 95630

December 11, 2018

Honorable Gonzalo P. Curiel
United States District Court
Southern District of California
221 West Broadway, Suite 2190
San Diego, CA  92101

Re:   *U.S.A. v. Fallbrook Public Utility District, et al.,* Civil No. 51-cv-1247-GPC-RBB
      Final Annual Watermaster Report for Water Year 2016-17

Dear Judge Curiel:

In accordance with Section II of the Order for the Appointment of a Watermaster, Powers and Duties, dated March 13, 1989 ("Order"); enclosed please find a hard copy and a CD containing the PDF files for the final Annual Watermaster Report for the Water Year 2016-17.  Draft copies of this report were distributed to the Santa Margarita River Watershed Watermaster Steering Committee on October 11, 2018, and comments and suggestions received were incorporated into the final report as appropriate.

Copies of this letter and the Annual Watermaster Report were provided on December 11, 2018, to the parties listed on the Watermaster distribution list provided below.  In addition, five copies of the report have been made available for inspection at the Fallbrook Public Utility District, 990 East Mission Road, Fallbrook, CA and Rancho California Water District, 42135 Winchester Road, Temecula, CA.  Five copies of the report have also been made available at the Anza Station of the State Department of Forestry and Fire Protection, 56560 Highway 371, Anza, CA and the Hamilton School/Library in Anza, CA. The report will be mailed to any party requesting a copy.

The Order notes that any party objecting to any portion of the Annual Watermaster Report may file written notice with the Court within 30 days of service.  Objections must refer to the portion of the report that is objectionable and state specifically the grounds for the objections.

Honorable Gonzalo P. Curiel
Re:  Final Annual Watermaster Report for Water Year 2016-17
December 11, 2018
Page 2 of 8

　　As indicated above the PDF files for the report is contained on the enclosed CD. Please make arrangements for posting the PDF files on the electronic docket.

　　If you have any questions, please do not hesitate to call.

Sincerely,

*Michael J Preszler*

Michael J. Preszler, P.E.
Watermaster

MJP:rah
Enclosures
cc (w/ Hard Copy of Encl.):  Honorable Ruben B. Brooks
　　　　　　　　　　　　　　Distribution List – Attached

Honorable Gonzalo P. Curiel
Re:  Final Annual Watermaster Report for Water Year 2016-17
December 11, 2018
Page 3 of 8

Report has been delivered by mail to:

Patrick Barry, Esq.
U.S. Dept. of Justice
Env. & Natural Resources Div.
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044-7611

Javin Moore, Superintendent
Bureau of Indian Affairs
U.S. Dept. of Interior
1451 Research Park Drive, #100
Riverside, CA  92507-2154

Doug Garcia, Esq.
Bureau of Indian Affairs
U.S. Dept. of Interior
2800 Cottage Way
Sacramento, CA  95825

Charles Jachens
Bureau of Indian Affairs
U.S. Dept. of Interior
2800 Cottage Way, Rm W-2821
Sacramento, CA  95825

Michael E. McPherson, Esq.
344 Plumosa Avenue
Vista, CA  92083

Christina Mokhtarzadeh
U. S. Department of Interior – BIA
Branch of Water Resources
1849 C Street, NW – M.S  4637
Washington, DC  20240

Chris Watson, Esq.
Office of the Solicitor
U. S. Dept. of Interior
1849 C St., N.W. – M.S. 6513
Washington, D.C.  20240

Noel Ludwig, Hydrologist
CA Desert District
Bureau of Land Management
22835 Calle San Juan de Los Lagos
Moreno Valley, CA  92553

Leslie Cleveland
US Bureau of Reclamation
27708 Jefferson Ave, #202
Temecula, CA  92590

Bill Steele
US Bureau of Reclamation
27708 Jefferson Ave, #202
Temecula, CA  92590

Wesley R. Danskin
USGS
San Diego Projects Office
4165 Spruance Road, Suite 200
San Diego, CA  92101

Scott Patterson
USGS
South Poway Field Office
12110 Tech Center Drive
Poway, CA  92064

Matthew K. Landon
USGS
San Diego Projects Office
4165 Spruance Road, Suite 200
San Diego, CA  92101

Michael T. Wright
USGS
San Diego Projects Office
4165 Spruance Road, Suite 200
San Diego, CA  92101

Anthony Madrigal, Sr.
899 Oakland Hills Drive
Banning, CA  92220-5176

Cahuilla Band of Indians
P. O. Box 391760
Anza, CA  92539

Lester J. Marston, Esq.
Law Offices of Rapport and Marston
405 West Perkins Street
Ukiah, CA  95482

David DePoy
Water Resources Division
Box 555013
Marine Corps Base, Bldg. 220105-T
Camp Pendleton, CA  92055-5013

John O. Simpson, Director
Water Resources Division
Box 555013
Marine Corps Base, Bldg. 220105-T
Camp Pendleton, CA  92055-5013

Dan Bartu
Water Resources Division
Box 555013
Marine Corps Base, Bldg. 220105-T
Camp Pendleton, CA  92055-5013

David Glazer, Esq.
US DOJ Env & Nat Res Division
Natural Resources Section
301 Howard Street, Suite 1050
San Francisco, CA  94105

Honorable Gonzalo P. Curiel
Re:  Final Annual Watermaster Report for Water Year 2016-17
December 11, 2018
Page 4 of 8

Greg Seaman
Water Resources Division
Box 555013
Marine Corps Base, Bldg. 220105-T
Camp Pendleton, CA 92055-5013

Stetson Engineers, Inc.
2171 E. Francisco Blvd., Suite K
San Rafael, CA 94901

Zandro Mallari
Eastern MWD
P. O. Box 8300
Perris, CA 92572-8300

General Manager
Elsinore Valley MWD
P.O. Box 3000
Lake Elsinore, CA 92530

Robert H. James, Esq.
3668 Katie Lendre Drive
Fallbrook, CA 92028

Amy Dorado
Metropolitan Water District
Diamond Valley Lake, Field Office
33752 Newport Road
Winchester, CA 92596

Eagle Jones
Pechanga Water Systems
Pechanga Band of Luiseño Indians
P. O. Box 1477
Temecula, CA 92593

Michael-Corey Hinton, Esq.
Akin Gump Straus Hauer &
Feld LLP
1333 New Hampshire Ave., N.W.
Washington, D.C 20036-1564

Paul R. Boughman, Esq.
Western Area Counsel Office
Box 555231
Marine Corps Base, Bldg. 1254
Camp Pendleton, CA 92055-5231

Paul D. Jones, II, General Manager
Eastern MWD
P.O. Box 8300
Perris, CA 92572-8300

Michele Buriss
Eastern MWD
P. O. Box 8300
Perris, CA 92572-8300

Darwin Potter
Metropolitan Water District
Skinner Branch
33740 Borel Road.
Winchester, CA 92596

Mark Macarro
Pechanga Tribal Chairman
Pechanga Band of Luiseño Indians
P. O. Box 1477
Temecula, CA 92593

Mike Luker
Pechanga Water Systems
Pechanga Band of Luiseño Indians
P. O. Box 1477
Temecula, CA 92593

Katherine A. Brossy, Esq.
Akin Gump Straus Hauer &
Feld LLP
1333 New Hampshire Ave., N.W.
Washington, D.C. 20036-1564

Steve Larson
S.S. Papadopulos & Assoc.
7944 Wisconsin Avenue
Bethesda, MD 20814-3620

Charles J. Bachmann
Eastern MWD
P. O. Box 8300
Perris, CA 92572-8300

Steven P. O'Neill, Esq.
Lemieux & O'Neill
4165 E. Thousand Oaks Blvd.
Suite 350
Westlake Village, CA 91362

Ganesh Krishnamurthy
Elsinore Valley MWD
P.O. Box 3000
Lake Elsinore, CA 92530

Jeff Marchand
Fallbrook Public Utility District
P. O. Box 2290
Fallbrook, CA 92088

Keith Nobriga
Metropolitan Water District
P. O. Box 54153
Los Angeles, CA 90054-0153

Joseph Vanderhorst, Esq.
Assistant General Counsel
Metropolitan Water District
P. O. Box 54153
Los Angeles, CA 90054-0153

Marc Luker
Pechanga Tribal Council
Pechanga Band of Luiseño Indians
P. O. Box 1477
Temecula, CA 92593

Steve Bodmer, General Counsel
Pechanga Band of Luiseño Indians
Government Center
P. O. Box 1477
Temecula, CA 92593

Honorable Gonzalo P. Curiel
Re:  Final Annual Watermaster Report for Water Year 2016-17
December 11, 2018
Page 5 of 8

General Manager
Rainbow MWD
3707 Old Highway 395
Fallbrook, CA  92088-9372

Nicolette Jonkhoff
EPA Manager
Ramona Band of Cahuilla Indians
P. O. Box 391372
Anza, CA  92539

Andy Webster
Rancho California Water District
P. O. Box 9017
Temecula, CA  92589-9017

Rich Ottolini
Rancho California Water District
P. O. Box 9017
Temecula, CA  92589-9017

Director
Riverside Co. Planning
4080 Lemon Street, 9th Floor
Riverside, CA  92501

John Rossi, General Manager
Western MWD
14205 Meridian Parkway
Riverside, CA  92518

Brenda Dennstedt
Board of Directors
Western MWD
14205 Meridian Parkway
Riverside, CA  92518

Dennis A. Sanford
Board of Directors
Rainbow MWD
1493 Via Ladera
Rainbow, CA  92028

Eva Plajzer
Rancho California Water District
P. O. Box 9017
Temecula, CA  92589-9017

Piero C. Dallarda, Esq.
Best, Best & Krieger
P.O. Box 1028
Riverside, CA  92502

Ray Lyons
Kennedy Jenks Consultants
3210 El Camino Real, Suite 150
Irvine, CA  92602-1365

Jason Uhley
Riverside Co. Flood Control
1995 Market Street
Riverside, CA  92501

Pamela Walls, Esq.
County of Riverside
Office of County Counsel
3960 Orange Street, Suite 500
Riverside, CA 92501

Western MWD
14205 Meridian Parkway
Riverside, CA  92518

Donald R. Pongrace, Esq.
Akin Gump Strauss Hauer &
Feld LLP
1333 New Hampshire Ave., N.W.
Washington, D.C.  20036-1564

Eugene Franzoy
Franzoy Consulting, Inc.
8141 West Gelding Drive
Peoria, AZ  85381

Joseph D. Hamilton
Tribal Chairman
Ramona Band of Cahuilla Indians
P. O. Box 391670
Anza, CA  92539

Mark Shaffer
6837 NE New Brooklyn Road
Bainbridge Island, WA  98110

Jeffrey D. Armstrong
General Manager
Rancho California Water District
P.O. Box 9017
Temecula, CA  92589-9017

Jeff Kirshberg
Rancho California Water District
P. O. Box 9017
Temecula, CA  92589-9017

Dr. Dennis Williams
GEOSCIENCE Support Services Inc.
P. O. Box 220
Claremont, CA  91711

Honorable Gonzalo P. Curiel
Re:  Final Annual Watermaster Report for Water Year 2016-17
December 11, 2018
Page 6 of 8

Marilyn Levin, Deputy Atty. Gen.
State of California
Office of the Attorney General
300 South Spring Street, #1702
Los Angeles, CA  90013

Agri-Empire, Inc.
P. O. Box 490
San Jacinto, CA  92383

James P. Bryson, P.G.
ARCADIS U.S., Inc.
320 Commerce, Suite 200
Irvine, CA  92602

Bluebird Ranch
c/o Abraham Poladian
P.O. Box 1089
Fallbrook, CA  92088

Francis & Jean Domenigoni  Trust
Domenigoni-Barton Properties; and
Domenigoni Brothers Ranch
33011 Holland Road
Winchester, CA  92596

John R. Flocken, Esq.
Greenwald & Hoffman, LLP
1851 E. First Street, Suite 860
Santa Ana, CA  92705-4039

Victor H. Heimbach
VH Design
P.O. Box 428
Temecula, CA  92593

Kathy Unger
Hawthorn Water System
23866 Chelsea Way
Murrieta, CA 92562

Jill Willis, Esq.
Best Best & Krieger
300 S. Grand Ave. 25th Floor
Los Angeles, CA  90071

John O'Hagen
CA State Water Res. Control Board
Division of Water Rights
P.O. Box 2000
Sacramento, CA  95812

Robert A. Davis, Jr., Esq.
Davis & Wojcik
1001 East Morton Place, Suite A
Hemet, CA  92543

AVMAC
Attn:  Secretary
P. O. Box 391076
Anza, CA  92539-0908

Barbara Booth
3883 Ridgemoor Drive
Studio City, CA  91604

Chambers Family LLC
c/o Thomas Montllor
910 N. Pacific Street, Apt. # 38
Oceanside, CA  92054

Cindy and Andy Domenigoni
33011 Holland Road
Winchester, CA 92596

EG High Desert Properties, LLC
12881 Bradley Avenue
Sylmar, CA  91342

Todd Shibata
Riverside County Waste Mgmt
14310 Frederick Street
Moreno Valley, CA  92553

Raymond M. Mistica, Esq.
County of Riverside
Office of County Counsel
3960 Orange Street, Suite 500
Riverside, CA 92501

Tim Barr
Western MWD
14205 Meridian Parkway
Riverside, CA  92518

Jason M. Ackerman, Esq.
Best, Best & Krieger
P.O. Box 1028
Riverside, CA  92502

Bob Pierotti, Chief
Resources Assessment Branch
CA Dept. of Water Resources
770 Fairmont Avenue, Suite 102
Glendale, CA  91203-1035

Bob Rinker
CA State Water Res. Control Board
Division of Water Rights
P.O. Box 2000
Sacramento, CA  95812

Larry Minor
P.O. Box 398
San Jacinto, CA  92581

Elsa Barton
217 No. Palm
Hemet, CA  92543

Honorable Gonzalo P. Curiel
Re:  Final Annual Watermaster Report for Water Year 2016-17
December 11, 2018
Page 7 of 8

Dan Walsh
42551 Highway 79S.
Aguanga, CA  92536

Jeffrey A. Hoskinson, Esq.
Bowie, Arneson, Wiles & Giannone
4920 Campus Drive
Newport Beach, CA  92660

Gregory B. Burnett
P.O. Box 391111
Anza, CA  92539

Flavia Kreig
P.O. Box 716
Aguanga, CA  92536

Hill Springs Farms, LLC
P. O. Box 1946
Duarte, CA  91009

Les Harris
44700 Sage Road – H
Aguanga, CA  92536

Louidar
Mount Palomar Winery
33820 Rancho California Road
Temecula, CA  92591

Lake Riverside Estates
Community Association
41610 Lakeshore Boulevard
Aguanga, CA  92536

Kenna Jones
Hawthorn Water System
25403 Edna
Murrieta, CA 92562

Frank C. Miller
Jane Grabowski-Miller
930 Cornell Court
Madison, WI  53705

Robert A. Krieger
Krieger & Stewart
3602 University Avenue
Riverside, CA  92501

Zen-Kamata, LLC
Soliton Tech
2635 N. First Street, Suite 213
San Jose, CA  95134

Wagner Family Trust
41128 DeLuz Road
Fallbrook, CA  92028

James Markman, Esq.
Richards, Watson & Gershon
P.O. Box 1059
Brea, CA  92822-1059

Art Kidman
Kidman Law, LLP
2030 Main Street, Suite 1300
Irvine, CA  92614

Joe Ornelas
Quiet Oaks Mobile Home Park
26455 Paradise Valley Road
Warner Springs, CA  92086

Archie McPhee
40482 Gavilan Mountain Road
Fallbrook, CA  92028

Gordon Lanik
P.O. Box 291273
Anza, CA  92539

Twin Creeks Ranch
c/o Chester Mason
P.O. Box 892378
Temecula, CA  92589

Mr. and Mrs. Alfred Mori
1936 Mancha Way
Monterey Park, CA  91755

Richard & Christine McMillan
Gary & Patricia McMillan
c/o McMillan Farm Management
29379 Rancho California Rd, # 201
Temecula, CA  92591-5210

William J. Brunick, Esq.
Brunick, McElhaney & Kennedy PLC
P.O. Box 13130
San Bernardino, CA 92423-3130

Serafina Holdings, LLC
40376 Sandia Creek Road
Fallbrook, CA  92028

Bertha Mendoza
35853 Calle Nopal
Temecula, CA  92592

Honorable Gonzalo P. Curiel
Re:  Final Annual Watermaster Report for Water Year 2016-17
December 11, 2018
Page 8 of 8

Twin Legacy, LLC
c/o Robert Yanik
41750 Highway 79
Aguanga, CA  92536

Michael Zarro, Deputy Atty. Gen.
State of California
Office of the Attorney General
300 South Spring Street, #1702
Los Angeles, CA  90013

Mr. Brian Strange
Val Verde Partners
104 Fifth Street
Encinitas, CA  92024

Report has been electronically mailed to:

| | |
|---|---|
| Heriberto F. Diaz | hdiaz@mwdh2o.com |
| Chairperson | tribalcouncil@cahuilla.net |
| James Gilpin | james.gilpin@bbklaw.com |
| Assad Safadi | office@nrce.com |
| Wes Strickland | wstrickland@jw.com |
| Karly Gaynor | kgaynor@wmwd.com |
| Lawrence Carlson | chappoh2o@gmail.com |
| Jesus Gastelum | jgastelum@evmwd.net |
| Parag Kalaria | pkalaria@evmwd.net |
| Jason Dafforn | jdafforn@evmwd.net |
| EVWMD | margie@evmwd.net |
| Roger Doverspike | rkd@doverspikeassociates.com |
| Jean Moran | jeanm@stetsonengineers.com |
| SWRCB | waterrights@waterboards.ca.gov |
| Eloise Berryman | eloise.berryman@waterboards.ca.gov |
| Larry McKenney | larry.mckenney@gmail.com |
| Stephanie Burnside | gm@ranchorvr.com |
| Michelle Staples | mstaples@jacksontidus.law |
| Kelly Lawler | kelly.lawler@water.ca.gov |
| Curtis Berkey | cberkey@berkeywilliams.com |
| Jack Easton | jeaston@riversandlands.org |
| Jack Bebee | jackb@fpud.com |
| Mary Lou Boultinghouse | maryloub@fpud.com |
| Michael Powers | mpowers@rainbowmwd.com |
| Rainbow MWD | engineering@rainbowmwd.com |
| Erick Miller | emiller@aspectconsulting.com |
| Timothy Ross | timothy.ross@water.ca.gov |
| Martha Lennihan | mlennihan@lennihan.net |
| Hannah Pheasant | hannah.pheasant@usdoj.gov |
| Marilyn Levin | marilyn.levin@doj.ca.gov |
| Michael Zarro | michael.zarro@doj.ca.gov |