**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>CAHUILLA BAND OF INDIANS,<br><br>Plaintiff-Intervenor,<br>RAMONA BAND OF CAHUILLA,<br><br>Plaintiff-Intervenor.<br>v.<br>FALLBROOK PUBLIC UTILTIY DISTRICT, et al.,<br><br>Defendants. | Case No. 51-CV-01247-GPC-RBB<br><br>**ORDER GRANTING MOTION TO EXTEND STAY**<br><br>[Dkt. No. 5669] |

A Joint Motion to Extend Stay was filed by Plaintiffs-Intervenors the Cahuilla Band of Indians and the Ramona Band of Cahuilla, (Dkt. No. 5669). No opposition to the motion was filed by any party.[1]

---

[1] Plaintiffs-Intervenors state the United States, State of California, County of Riverside, Riverside County Flood Control and Water Conservation District, Greenwood Landowners, Hemet Unified School District and Agri-Empire do not oppose their motion.

In their motion, Plaintiffs-Intervenors describe the many actions taken by the parties to achieve a settlement since the last stay was granted in this case by the Court. Since the last stay extension was granted on July 19, 2018, the settlement parties have engaged in extensive negotiations to conclude a settlement. The parties have drafted two settlement agreements. The first agreement requires the Cahuilla Band to pay for the costs of the water project from the revenues generated by the Cahuilla Band operating businesses on an economic development parcel that would be taken into trust by the United States for the Tribe under the terms of the settlement agreement. That agreement would have to be approved by the Governor. During the course of the negotiations, former Governor Brown was not provided with the information necessary to fully evaluate the Cahuilla Band's proposal regarding the economic development parcel in time to make a decision before the end of his administration. He did, however, advise the Cahuilla Band of the policy concerns raised by the proposal. Governor Newsom has not yet appointed a senior Tribal Advisor, but it is the parties' intention that, as soon as one is appointed, and after the Cahuilla Band provides the Governor's Office with the information necessary to evaluate the proposal, and after the information is reviewed, the Attorney General's Office will consult with and advise the Governor's Office regarding the proposal. Following that process, the Cahuilla Band expects to learn Governor Newsom's position on a settlement that includes a provision authorizing the United States to acquire the economic development parcel in trust for the Tribe.

The second proposed settlement agreement does not involve taking the economic development parcel into trust. Under the terms of the second agreement, the costs of the construction of the water project would be paid from an appropriation by Congress. The current draft of the second agreement consists of 59 pages and 15 sections which include, but are not limited to, sections covering general provisions, the Cahuilla Band's water rights, the Ramona Band's water rights, the federal agencies' water rights, the state agencies' water rights, the water rights of other represented parties, future use rights of

represented parties, water rights of nonparticipating parties (those not participating in the settlement discussions), enforcement of the final decree, administration of the settlement agreement and the final decree in both the Cahuilla Groundwater Basin and Anza Groundwater Basin, waivers and releases of claims, conditions precedent to enforceability, the federal legislation necessary to approve the agreement and six miscellaneous provisions.

Since the last stay was approved by the Court, the parties have had numerous telephone calls and face to face meetings to reach consensus on a proposed settlement agreement. The parties have reviewed the latest drafts of the proposed settlement agreements, have exchanged comments on the drafts, and have exchanged revisions to the drafts.

The principal provisions for which agreement has not yet been reached concern management of the groundwater basins in accordance with the goal of safe yield and sustainable groundwater management principles. Specifically: the outstanding questions are: (1) when sustainability principles require active groundwater management, who reduces their water use first and in what amounts; and (2) what is the best means to measure groundwater use to facilitate sound groundwater management, including whether meters should be installed on certain groundwater wells. The State of California has proposed a method for sustainable management that the parties currently have under review and will take up at their next face to face meeting scheduled for February 13, 2019, in San Diego. The next meeting with U.S. Magistrate Judge Brooks is a telephone conference call scheduled for February 20, 2019.

The parties have set April 1, 2019, as the target date for agreeing on a settlement or agreeing that they have reached an impasse. Within thirty days of the Governor's receipt of the necessary information from the Cahuilla Band, the parties expect to know Governor Newsom's position on the settlement agreement containing provisions pertaining to the Cahuilla Band acquiring the economic development parcel. In addition,

by April 1, 2019, the parties hope to have completed revisions to the latest draft of the settlement agreement that does not pertain to the acquisition of the economic development parcel. At that time, if the parties believe that they need Judge Brooks' assistance in helping them resolve the remaining outstanding issues, they will request that Judge Brooks schedule an in-person, in-court settlement hearing.

Since the last request of the parties to extend the stay, the parties have shown significant progress in reaching an overall settlement of the case. The Cahuilla Band of Indians have agreed as part of the settlement to cap the amount of water it would appropriate each year from the basin, purchase the Agi-Empire property and retire its water right so that there is sufficient water in the basin to meet all the parties' needs, purchase and develop the economic development property and use the revenues generated from the development of the property to pay for the construction and operation of the water project and operate the water project so that sufficient water will be available in the Anza/Cahuilla water basins to maintain the basins on a sustained yield basis.

The Cahuilla Tribe has developed a plan for the acquisition and purchase of the Agi-Empire property and the economic development property, the latter of which would be developed to generate revenue to pay for the costs of the water project. The settlement agreement has been revised by the Cahuilla Tribe to provide for this plan and has been reviewed and commented on by the parties.

The settlement process is moving forward and concrete actions are continuously being taken and it appears that the settlement negotiations are being conducted in good faith. As the Court noted in a prior order, "[w]hile nine years is a long period for a stay to be in place, it must be considered in light of the up to 3000 defendants in this case involving complicated technical and legal issues to resolve." (Dkt. No. 5582 at 11); see, e.g., *Central Delta Water Agency v. United States*, 306 F.3d 938, 943 (9th Cir. 2002) (stating that management of water resources is one of the most contentious issues in the western United States). As Judge Gould recently stated in his concurrence with the Court

of Appeals for the Ninth Circuit's recent decision upholding the stay in this case, "[S]ettlement is salutary and we recognize 'a clear policy of favoring settlement.' *Marek v. Chesney*, 473 U.S. 1, 10 (1985). . . . . [W]ater rights litigation is often complicated and protracted, includes here large numbers of water users, and it is encouraging that settlement talks to date have shown some signs of progress, including a prior water rights settlement concerning water users in a different part of the watershed." *United States and Ramona Band of Cahuilla Indians et al. v. Burnett, et al.*, United States Court of Appeals for the Ninth Circuit, Case No. 17-55664, Gould, Circuit Judge, concurring, at *1.

Based upon the forgoing, the Court GRANTS the motion to extend the stay by six months. Accordingly, IT IS HEREBY ORDERED that the motion to extend stay is granted and the stay is extended until **July 9, 2019**.

IT IS SO ORDERED.

Dated: January 17, 2019

Hon. Gonzalo P. Curiel
United States District Judge