Attachment 2

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 51cv1247-GPC(RBB) |
| | ) | |
| Plaintiff, | ) | **[PROPOSED] ORDER** |
| | ) | **APPROVING SETTLEMENT** |
| vs. | ) | **AGREEMENT** |
| | ) | |
| FALLBROOK PUBLIC UTILITY | ) | Hon. Gonzalo P. Curiel |
| DISTRICT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

1.      On March 5, 2019, Plaintiff the United States of America, acting by and through the Department of the Navy and the United States Marine Corps, for the benefit of the Marine Corps Base, Camp Pendleton ("Camp Pendleton"), and Defendant Fallbrook Public Utility District ("Fallbrook") (Camp Pendleton and Fallbrook sometimes referred to as the "Parties") filed a joint motion for approval of the Santa Margarita River Conjunctive Use Settlement Agreement ("Settlement Agreement").  A copy of the Settlement Agreement is attached to this Order.

2.      The Santa Margarita River water disputes between Camp Pendleton and Fallbrook and their predecessors have a lengthy and complex history.  The present case was filed in 1951, when the United States sued to quiet title to the use of water on the River, and enjoin others' interference therewith.  *United States v. Fallbrook Pub. Util. Dist.*, 347 F.2d 48, 51 (9th Cir. 1965).  A significant catalyst for the litigation between Camp Pendleton and Fallbrook was their dispute over the character and relative priority of their water rights.  The case subsequently expanded to include all water users within the Santa Margarita Watershed.

3.      In 1963, the Court finalized a number of Interlocutory Judgments and issued a final judgment and decree, whereby the Interlocutory Judgments or Orders were listed and, together with the Findings of Fact and Conclusions of Law attached to those Interlocutory Judgments or Orders, were adopted as the final Findings of Fact, Conclusions of Law, and Judgment and Decree of the Court.  (Doc. No. 4489).  This 1963 Final Judgment and Decree was appealed to the United States Court of Appeals for the Ninth Circuit.  Upon remand, in 1966 this Court entered its Findings of Fact, Conclusions of Law, and Modified Final Judgment and Decree (Doc. No. 4768) ("Fallbrook Decree").

4.      This litigation resulting in the Fallbrook Decree resolved the central issue of the existence and priority of Camp Pendleton's water rights relative to those of Fallbrook.  However the question of how these Parties would perfect and exercise those rights and to what extent each Party's use of its water rights would interfere with the other Party's water use was left open. Since that time, Camp Pendleton and Fallbrook—with the urging of the Court—have explored the development of a physical solution that would provide for the exercise of the Parties' water rights in a manner that would minimize the conflict between their rights and provide a more secure water supply for both Parties.

5.      After many unsuccessful attempts and decades of conflict, Camp Pendleton and Fallbrook have now reached a good faith, arms-length negotiated agreement on a physical solution to their long-standing water right dispute—the Santa Margarita River Conjunctive Use Project.  This Settlement Agreement establishes the Parties' rights and obligations concerning the Santa Margarita River Conjunctive Use Project and replaces the 1968 Memorandum of Understanding and Agreement between these Parties that addressed the then-proposed construction and operation of two dams, referred to as the "Two-Dam Project."  That 1968 Agreement was approved by the Court and incorporated into the Fallbrook Decree.  *See* Petition for Approval of Memorandum of Understanding and Agreement and for Order Amending Modified Final Judgment and Decree, May 22, 1968 (Doc. No. 4770), with attached March 4, 1968 Memorandum of Understanding and Agreement ("1968 MOU"); Order Approving

Memorandum of Understanding and Agreement and Amending Modified Final Judgment and Decree, June 27, 1968 (Doc. No. 4773) ("Order Approving 1968 MOU").

6.      A court's decision to approve or reject a settlement should be based on the court's determination that the settlement is "the product of good faith, arms-length negotiations," *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990), "is not the product of fraud or overreaching by, or collusion between the negotiating parties," and "is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). The court should approve the settlement if the court decides that "it is fair, reasonable and equitable and does not violate the law or public policy." *Sierra Club, Inc. v. Elec. Controls Design, Inc.,* 909 F.2d 1350, 1355 (9th Cir. 1990).

7.      The Settlement Agreement embodies a creative means of resolving the Parties' longstanding water use conflict in a manner consistent with the urging of the Court and the authorizations and appropriations already made by Congress. The Santa Margarita River Conjunctive Use Project will ensure a reliable local water supply for the benefit of both Parties. It will reduce the demand for imported water from the Sacramento San Joaquin Bay-Delta and the Colorado River, thus furthering an important statewide interest. The Project is designed to avoid the significant environmental impacts associated with on-channel surface water reservoirs, in favor of the largely environmentally benign subterranean storage using existing natural aquifers and the shared use of water so stored.

8.      The Settlement Agreement has Congressional support through the National Defense Authorization Act for Fiscal Year 2016, State support via Proposition 50 funding and the State Revolving Fund, and regional support consistent with the San Diego Integrated Regional Management Plan.

9.      Finally, the Settlement Agreement allows the Parties to finally and completely resolve remaining claims against one another in this litigation and to focus their efforts going forward on cooperative use of the resource in a manner that benefits both communities.

1
2
3

10.    The Settlement Agreement conforms to all applicable federal law and complies with the framework of the Fallbrook Decree and the Interlocutory Judgments incorporated into that Decree.

4

**NOW THEREFORE,** it is hereby ordered as follows:

5

1.    The Settlement Agreement, including all the Exhibits thereto, is hereby approved.

6
7
8

2.    This Order Approving Settlement Agreement supersedes and replaces the Order Approving 1968 MOU, which amended the Fallbrook Decree by incorporation of the 1968 MOU into that Decree.

9
10
11
12
13

3.    The Settlement Agreement, including all the Exhibits thereto, is hereby incorporated into the Fallbrook Decree as modified and amended, and supersedes and replaces the 1968 MOU which had been incorporated into the Fallbrook Decree by the Order Approving 1968 MOU, and which 1968 MOU subsequently expired by its own terms.

14
15

4.    Pursuant to the Settlement Agreement, all pending claims between these two Parties in this action are hereby dismissed.

16
17

5.    The Court retains jurisdiction to enforce the Settlement Agreement and resolve any disputes pertaining to the Settlement Agreement.

18
19
20

6.    In the event the Court's continued jurisdiction to enforce the Settlement Agreement is terminated, these two Parties or either of them shall have the remedy to file a new action in the above Court to enforce the Settlement Agreement consistent with its terms.

21
22

IT IS SO ORDERED.

23
24

Dated: _____

25
26
27

_____
Hon. Gonzalo P. Curiel
United States District Judge

28