1  BRUCE D. BERNARD (CO 12166)
2  UNITED STATES OF AMERICA
   UNITED STATES DEPARTMENT OF JUSTICE
3  Environment and Natural Resources Division
   Natural Resources Section
4  999 18th Street, South Terrace, Suite 370
5  Denver, CO 80202
   Telephone: (303) 844-1361
6  Email: bruce.bernard@usdoj.gov

7  Attorneys for Plaintiff UNITED STATES OF AMERICA

8  MARTHA H. LENNIHAN (SBN 122478)
9  LENNIHAN LAW
   6645 Garden Highway
10 Sacramento, California 95837
   Telephone: (916) 799-4460
11 Email: mlennihan@lennihan.net

12
13 Attorneys for FALLBROOK PUBLIC UTILITY DISTRICT

14              **UNITED STATES DISTRICT COURT**

15             **SOUTHERN DISTRICT OF CALIFORNIA**

16 UNITED STATES OF AMERICA   )   CASE NO. 51cv1247-GPC(RBB)
17                            )
            Plaintiff,        )   **DECLARATION OF**
18       v                    )   **PAUL R. BOUGHMAN**
19                            )
   FALLBROOK PUBLIC UTILITY   )
20 DISTRICT, *et al.*,        )
                              )
21      Defendants.           )
22                            )
                              )

23
24
25
26
27
28

DECLARATION OF PAUL R. BOUGHMAN – CASE NO. 51CV1247-GPC(RBB) – PAGE - 1

1  I, PAUL R. BOUGHMAN, provide this declaration under penalty of perjury. If called to
2  testify, I would testify as follows.

3  1. I am an Associate Counsel with the Western Area Counsel Office, a field office
4  for the Office of the General Counsel of the Navy, located on Marine Corps Base, Camp
5  Pendleton, and have been in this position since July 6, 2009.

6  2. I am involved in the Santa Margarita River Watershed water rights case of *United
7  States v. Fallbrook Public Utility District, et al.*, Case No. 51cv1247-GPC(RBB), United States
8  District Court, Southern District of California, commonly referred to as the *Fallbrook* case. My
9  involvement in the *Fallbrook* case is based upon my capacity as an attorney on behalf of the
10 United States of America, acting by and through the Department of the Navy and the United
11 States Marine Corps, for the benefit of the Marine Corps Base, Camp Pendleton ("Camp
12 Pendleton").

13 3. I have been involved with the *Fallbrook* case since joining the Western Area
14 Counsel Office at Camp Pendleton in April 2009 as a military judge advocate and thereafter
15 accepting civilian government service employment in July 2009 as an Associate Counsel for the
16 Western Area Counsel Office.

17 4. The Santa Margarita River water dispute between Camp Pendleton and the
18 Fallbrook Public Utility District ("Fallbrook") (Camp Pendleton and Fallbrook sometimes
19 referred to as the "Parties") and their predecessors has a long and complex history. The United
20 States initiated the *Fallbrook* case over water rights in the Santa Margarita River Watershed in
21 January 1951. A significant catalyst for the litigation between Camp Pendleton and Fallbrook
22 was their dispute over the character and relative priority of their claimed water rights. The
23 *Fallbrook* litigation eventually expanded to include the majority of water right holders within the
24 Santa Margarita River Watershed.

25 5. In 1966, upon remand from the United States Court of Appeals for the Ninth
26 Circuit, this Court entered its Findings of Fact, Conclusions of Law, and Modified Final
27 Judgment and Decree (Docket Nos. 4768) ("Fallbrook Decree").

28

6. The Fallbrook Decree resolved the central issue of the existence and priority of Camp Pendleton's water rights relative to those of Fallbrook. However, the question of how the Parties would perfect and exercise their respective water rights, and to what extent those rights might interfere with the other party's water use, was left open. Since that time, Camp Pendleton and Fallbrook have explored numerous potential engineering solutions that would provide for the exercise of the Parties' water rights in a manner that was feasible and that would minimize the conflict between their rights, while providing a more secure water supply for both Parties.

7. As reflected by Court filings, in 1968 the Parties agreed to the construction and operation of two proposed dams, referred to as the Two-Dam Project, as the physical solution to eliminating conflict between the Parties' water rights. At the request of the Parties, in June 1968, the Court entered an Order amending the Fallbrook Decree by incorporation of the Parties' Memorandum of Understanding and Agreement ("1968 MOU") concerning construction and operation of the Two-Dam Project. Order Approving Memorandum of Understanding and Agreement and Amending Modified Final Judgment and Decree, June 27, 1968 (Doc. No. 4773). However, the Parties were not successful in obtaining environmental approvals for construction of the Two-Dam Project, and the 1968 MOU expired by its own terms in 1978. The demise of the Two-Dam Project put the question of the physical solution to the Parties' water use conflict back on the table.

8. Based on my extensive review of Camp Pendleton's voluminous records and documents, negotiations over the project that would replace the Two-Dam Project took place throughout the 1980s and intensified in the mid- and late-1990s. Various project designs and concepts were evaluated and eventually the concept of conjunctive use—storage of surface flows in the natural underground aquifer underlying the Base—became the central focus.

9. When I joined the Western Area Counsel Office in April 2009 while still on active duty in the United States Marine Corps, the Parties had agreed on this basic conjunctive use approach to settlement—storage of surface flows in the natural underground aquifers underlying the Base and delivery of water from the Base to Fallbrook. The Parties were continuing their negotiations over the design and operation of the project and on the terms of a

settlement agreement that would spell out the Parties' respective roles in constructing and operating the project, risk allocation, water banking, and other matters.

10. The Parties initially envisioned that the project would be operated entirely by Fallbrook—including on Base. However, this proposal to have Fallbrook operate the project on Base was rejected by Headquarters Marine Corps. The Parties then resumed negotiations to develop a project compatible with Department of the Navy requirements. The Parties renegotiated their respective roles and landed on the current approach which calls for each Party to be responsible for facilities and operations within its jurisdiction.

11. Since joining the Western Area Counsel Office in April 2009, as the legal counsel for the Department of the Navy and in coordination with the Department of Justice counsel assigned to represent the Department of the Navy, I have attended nearly all the meetings with representatives of Fallbrook and Camp Pendleton's water resources staff and our water resources experts from Stetson Engineers, Inc.

12. During these meetings, I observed representatives of Fallbrook assert their legal and technical positions as to the equitable manner of resolving the Parties' disputes over their exercise of water rights which differed significantly from Camp Pendleton's stated positions.

13. Throughout these negotiations, the Parties had significant disagreements and disputes as to the terms of the project and the associated settlement. I attended many meetings in which it appeared the Parties would be unable to bridge their differences and reach an agreeable solution because the Parties' positions were on such opposite ends of the workable spectrum.

14. However, the Parties continued to exchange numerous proposals and counter-proposals over settlement terms.

15. Finally, in 2016—after these years of negotiations and back-and-forth drafts of settlement terms—the Parties reached substantial agreement concerning the Santa Margarita River Conjunctive Use Project. Engineering design and environmental review of the Project was carried out over the last ten years. This agreement on the conceptual direction of the Santa Margarita River Conjunctive Use Project enabled the Parties to agree on the filing of the State-

required petitions for extension and change of the Parties' post-1914 appropriative water rights to make those rights available for the Project.

16. The Secretary of the Navy approved the settlement in November 2017, and the Fallbrook Board of Directors approved the settlement in December 2017. The approval process through the United States Department of Justice management chain was completed on February 19, 2019. The Parties completed the execution of the Settlement Agreement on February 25, 2019.

17. After many unsuccessful attempts and decades of conflict, Camp Pendleton and Fallbrook have now reached a good faith, arms-length negotiated agreement on a practical physical solution, which secures a reliable water yield for the benefit of both Parties.

18. The Conjunctive Use Project as described in the Settlement Agreement embodies a creative and feasible means of resolving the Parties' long-standing water use conflict in a manner consistent with the Court's urging and the authorizations and appropriations made by Congress.

19. Under the terms of the Settlement Agreement, each Party is responsible for Project facility construction, operation, and regulatory compliance within its own jurisdiction. The primary water diversion and storage facilities are located on Camp Pendleton as described in Exhibit 4 to the Settlement Agreement. These facilities include the bi-directional pipeline, the weir within the channel of the Santa Margarita River, and several wells. Construction of the weir is a major project involving replacement of the existing vertical steel sheet pile weir with a new four-section inflatable weir spanning the entire 250-foot width of the Santa Margarita River, and anchored with a two-foot thick concrete slab foundation.

20. Funding for Camp Pendleton's portion of the Project was approved under the military construction authorization in the National Defense Authorization Act for Fiscal Year 2016 which appropriated $44.5 million for construction of the Project. Pub. L. No. 114-92, § 2201, 129 Stat. 726, 1149-50 (2016). Camp Pendleton has also secured the major regulatory approvals required for construction of the facilities for which it is responsible and construction of those facilities is well under way. Camp Pendleton has substantially completed construction of

the bi-directional pipeline and is nearing completion of the weir construction. In total, Camp Pendleton has already contracted and spent approximately two-thirds of the $44.5 million appropriated for the Project.

21. It is my opinion that the Settlement Agreement represents a fair and practical compromise that will enable the Parties to exercise their rights in a mutually beneficial manner. The Settlement Agreement is the product of abundant and detailed negotiations, significant engineering input, and compromises between the Parties to reach a settlement of the Parties' decades-long dispute in a fair and reasonable manner.

22. The Santa Margarita River Conjunctive Use Project will ensure a reliable local water supply for the benefit of both Parties. It will reduce the demand for imported water from the Sacramento San Joaquin Bay-Delta and the Colorado River, which furthers an important statewide interest. The Project is specifically designed to avoid the significant environmental impacts associated with on-channel surface reservoirs. It uses the environmentally benign subterranean storage of the existing natural aquifers on Camp Pendleton and provides for the shared use of the stored water.

23. The Settlement Agreement has Congressional support through the National Defense Authorization Act for Fiscal Year 2016, State support via Proposition 50 funding and the State Revolving Fund, and regional support consistent with the San Diego Integrated Regional Management Plan.

24. Finally, the Settlement Agreement allows the parties to completely resolve remaining claims against one another in this litigation and to focus their efforts going forward on cooperative use of this important and limited resource in a manner that benefits both entities.

Executed this **26** day of February, 2019, at Camp Pendleton, California.

Paul R. Boughman
Associate Counsel
Western Area Counsel Office
Marine Corps Base, Camp Pendleton