UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 51cv1247-GPC-RBB |
|---|---|
| Plaintiff, | **ORDER OVERRULING OBJECTIONS AND APPROVING ANNUAL WATERMASTER REPORT FOR WATER YEAR 2016-2017** |
| v. | |
| FALLBROOK PUBLIC UTILITY DISTRICT, *et al.*, | |
| Defendants. | |

The above-entitled action came on for hearing on April 5, 2019 on Objections of Rancho California Water District ("RCWD"), Western Municipal Water District ("WMWD"), Fallbrook Public Utility District ("FPUD"), Eastern Water Municipal District ("EWMD"), and Metropolitan Water District ("MWD") (collectively the "Objectors") to the Annual Watermaster Report for Water Year 2016-17 ("Annual WM Report"), the responses of Plaintiff-Intervenors Cahuilla Band of Indians ("Cahuilla Band") and Ramona Band of Cahuilla ("Ramona Band") (collectively the "Tribes"), and the Watermaster's response. (Dkt. Nos. 5667, 5668, 5670, 5671, 5675, 5690, 5691, 5694.) The Objectors argue that the Steering Committee should not be responsible for the proposed $60,000 in Watermaster costs for his involvement in the Anza Settlement Proceeding which solely involve the Tribes.

William J. Brunick, Esq. appeared on behalf of the Watermaster of the Santa Margarita River Watershed, Manuel Serpa, Esq., attorney for EMWD, and James Gilpin, Esq., attorney for RCWD, appeared on behalf of the Objectors. Curtis Berkey, Esq. appeared on behalf of Intervenor-Plaintiff Ramona Band of Cahuilla, and Patrick Barry, Esq. and Bruce Bernard, Esq. appeared on behalf of the United States. Having reviewed and considered the Objections, responses, and the arguments of the parties, the Court OVERRULES the Objections and APPROVES the Annual Watermaster's Report for Water Year 2016-17.

**Background**

On January 25, 1951, the United States of America filed a complaint "to quiet title to its rights to the use of waters of the Santa Margarita River systems in San Diego and Riverside counties, California." *United States v. Fallbrook Pub. Util. Dist.*, 347 F.2d 48, 51 (9th Cir. 1965). The Court entered a series of forty-four Interlocutory Judgments ("IJ"). *Id.* at 61. Each interlocutory judgment made findings of fact and conclusions of law regarding the hydrology and water rights associated with particular sub-areas within the adjudication.

On November 8, 1962, the Court entered Interlocutory Judgment No. 41 which addressed the water rights as to the Tribes' reservations within the Santa Margarita River Watershed. (Dkt. No. 4430.) The Court recognized the Ramona Band and Cahuilla Band's federal water rights, including groundwater rights, in amounts "sufficient for the present and future needs of the Indians," with a priority date of 1891 for the Ramona Band and 1875 for the Cahuilla Band. (*Id.* at 1, 4[1].) At the time, the Court did not quantify the Tribes' water rights, but reserved jurisdiction "to make such findings of fact, conclusions of law and judgment provisions in the future should the need occur." (*Id.* at 24.) The Court issued a Final Judgment and Decree on May 8, 1963. (Dkt. No. 4489.) On appeal, the Ninth

---

[1] Page numbers are based on the CM/ECF pagination.

Circuit Court of Appeals affirmed in part, reversed in part and remanded with instructions. *Fallbrook Pub. Util. Dist.*, 347 F.2d at 61. Pursuant to the Ninth Circuit's mandate, on April 6, 1966, the Court entered a Modified Final Judgment and Decree that incorporated Interlocutory Judgment No. 41. (Dkt. No. 4768 at 9-13.) In that Modified Final Judgment, the Court "retain[ed] continuing jurisdiction of this cause as to the use of all surface waters within the watershed of the Santa Margarita River and all underground or sub-surface waters within the watershed of the Santa Margarita River . . . ." (*Id.* at 14.)

The Santa Margarita River Watershed primarily consists of three groundwater basins: 1) the Santa Margarita Groundwater Basin, located along the Santa Margarita River at Camp Pendleton; 2) the Murrieta-Temecula Groundwater Basin, located along Murrieta and Temecula creeks in the Upper Santa Margarita River Watershed; and 3) the Anza Groundwater Basin, located along Cahuilla Creek in the upper portion of the Santa Margarita River Watershed. (Dkt. No. 5667 at 3.)

On February 3, 1989, the Court issued an order appointing a Steering Committee. (Dkt. No. 4805.) The Order states that the "membership of the Steering Committee shall be composed of representatives from the substantial water users within the Santa Margarita watershed." (*Id.* at 1.) The initial members of the Steering Committee were the United States of America, Fallbrook Public Utility District and Rancho California Water District. (*Id.*) The Order provides that "[a]ny party participating as a member of the Steering Committee shall share the costs, fees and expenditures of the Watermaster, along with any other party, as specified by the Court." (*Id.* at 2.) It also states that the "Steering Committee shall review the budget and proposed expenditures of the Watermaster and make its recommendation with respect thereto." (*Id.*) Currently, the Steering Committee is now comprised of the following members: United States of America, Pechanga Band of Luiseno Mission

Indians, FPUD, RCWD, EMWD, MWD, and WMWD.[2] (Dkt. No. 5667-1, Plazjer Decl. ¶ 5.)

On March 13, 1989, the Court issued an order appointing a Watermaster to administer and enforce the provisions of the Modified Final Judgment and Decree and subsequent orders of the Court. (Dkt. No. 4809.) One of the duties of the Watermaster is to provide an annual water report that summarizes his findings and conclusions. (*Id.* at 3-5.) Initially, the Watermaster fees and expenses were paid by the existing Steering Committee members - the United States, FPUD and RCWD. (*Id.* at 6.) The order also provided that the "Court shall retain the right upon its own motion or the motion of any party to assess any other party using water under the provisions of the applicable judgments, decrees and Orders for the Santa Margarita River watershed for the costs, fees and expenditures of the Watermaster." (*Id.* at 6-7.)

In 2006, the Tribes successfully moved to intervene as Plaintiffs. (Dkt. Nos. 4904, 4907, 4919.) On January 23, 2007, Cahuilla Band and Ramona Band filed their complaints in intervention. (Dkt. Nos. 4920 at 5; 4921 at 1.) The Tribes filed first amended complaints in intervention in July 2007. (Dkt. Nos. 4936, 4937.) Then, the Tribes were granted leave to file second amended complaints in interventions which were filed on September 18, 2009 which seek to quantify the Tribes' water rights. (Dkt. Nos. 5181, 5182.)

On November 30, 2016, Michael Preszler was appointed the Watermaster of the Santa Margarita River Watershed after the prior Watermaster retired. (Dkt. Nos. 5531, 5551.)

The Annual WM Report proposes a Watermaster budget for year 2018-2019 to be $791,733. (Dkt. No. 5665-1, Annual WM Report at p. 111, Table 13.2.) The

---

[2] The United States of America and Pechanga Band of Luiseno Mission Indians do not object to the Annual Watermaster Report.

anticipated Watermaster costs associated with the Anza Settlement process is $60,000, or about 8% of the total Watermaster budget. (Dkt. No. 5691, Preszler Decl. ¶ 11.)

On December 17, 2018, the Watermaster filed the Annual WM Report. (Dkt. No. 5665.) Pursuant to the 30 day objection period, on January 11, 2019, RCWD filed an Objection to the Watermaster's anticipated expenses in connection with the Anza Settlement Proceeding. (Dkt. No. 5667.) On the same day, WMWD and FPUD filed a Notice of Joinder in the Objection. (Dkt. Nos. 5668, 5670.) On January 16, 2019, EWMD filed a Notice of Joinder in the Objection, and on January 22, 2019, MWD also filed a Notice of Joinder in the Objection. (Dkt. Nos. 5671, 5675.) On March 8, 2019, Plaintiff-Intervenors Cahuilla Band and Ramona Band filed a response to the Objections. (Dkt. No. 5690.) On March 20, 2019, the Watermaster filed a response. (Dkt. No. 5691.)

## Discussion

The Objectors argue that the Watermaster's anticipated expenses in connection with the Anza Settlement Proceeding of about $60,000 should not be assessed by the Steering Committee members because none of the members are parties to the Anza Settlement Proceeding. Instead, the $60,000 should be assessed to the Tribes as they are involved in the Anza Settlement Proceeding.

The Objectors contend that their members are public agencies, many of which have responsibilities to their ratepayers. The Watermaster did not start work in the Anza basin until about 2006 when Cahuilla Band and Ramona Band filed motions to intervene as Intervenors and now the Anza Settlement Proceeding has become the largest single task for the allocation of the Watermaster's billable hours. Objectors do not believe the intent of the original Steering Committee order was to have the existing members fund on-going extensive efforts outside their service areas. Because the 1989 order allows the Court to "assess any other party using water under

the provisions of the applicable judgments, decrees and Orders for the Santa Margarita River Watershed for the costs, fees and expenditures for the Watermaster", (Dkt. No. 4809 at 6-7), the Court should direct that the Tribes pay for any amounts that the Watermaster spends on their settlement.

Ramona Band and Cahuilla Band respond with five arguments. First, they argue that the Objectors incorrectly assert that no Steering Member has interests or rights in Anza. The United States is a member of the Steering Committee from its creation and represents the interests of the Tribes as trustee under federal law. *See* Criteria and Procedures for the Participation of the Federal Government in Negotiations for the Settlement of Indian Water Rights Claims, 55 Fed. Reg. 9223 (Mar. 12, 1990) ("Indian water rights are vested property rights for which the United States has a trust responsibility, with the United States holding legal title to such water in trust for the benefit of the Indians."). Even IJ 41 acknowledged that the United States holds the tribal water rights and resources in trust on behalf of the Tribes. (Dkt. No. 4430, ¶ 14 at 23.) Furthermore, the United States representative on the Steering Committee stated that he speaks for both Camp Pendleton and the Bureau of Indian Affairs because he is the representative on the Steering Committee and that Camp Pendleton is funding the share of the Watermaster budget to be paid by the United States. (Dkt. No. 5690-1, Berkey Decl., Ex. B, Steering Committee Meeting dated Oct. 20, 2015.)

Second, the Tribes assert that the settlement process is nearing completion with April 1, 2019 as the target date for a settlement agreement. (Dkt. No. 5672.) Once the settlement agreement is signed, the Watermaster's role will be substantially diminished as the focus will be on the U.S. Department of the Interior for its review, the federal Office of Management and Budget for its review and Congress for its approval. Congress will be asked to appropriate funds to implement the Tribes'

settlement. Because the Watermaster's work will be reduced in the coming months, the Court should not impose cost-sharing on the Anza parties.

Third, the Tribes argue that the Watermaster's work on the Anza Settlement falls within the purview of the Steering Committee's responsibility to "assist the Court and to facilitate [the *Fallbrook*] litigation" and is not limited to specific areas.

Fourth, the Objectors' implication that the Tribes have not contributed their share of the costs is incorrect. For example, in 2018, Ramona Band secured a $600,000 grant under Proposition 1 Integrated Regional Water Management Grant Program from the California Department of Water Resources to allow the U.S. Geological Survey ("USGS") to undertake the first phase of the massive groundwater study for the Anza and Cahuilla groundwater basins. (Dkt. No. 5690-1, Berkey Decl. ¶ 6.) Because of the grant, the Ramona Band has entered into contract with the USGS. (*Id.*) The Tribes claim that the study will extend beyond the Tribes' settlement but also will yield hydrologic information indispensable for the Watermaster's ability to administer and enforce IJ Nos. 41, and 33.

Finally, the Tribes claim that the Watermaster frequently devotes substantial amount of time to projects that benefit a small subset of the Steering Committee members without these members having to pay project-specific costs. To implement such a practice would be difficult to implement. The Watermaster works on the *Fallbrook* case as a whole and not for individual members of the Steering Committtee or other individual water users in the watershed.

The Watermaster asserts that the Watermaster and the Steering Committee perform services for the Santa Margarita water basin as a whole and the Objectors' effort to "Balkanize" the watershed into independent areas was not the intent of the Modified Final Judgment. He explains that each Steering Committee member pays equal shares (1/7th) of the Watermaster costs; therefore, each Steering Committee member is anticipated to pay $8,571.43 for budget year 2018-2019 for the

Watermaster's participation in the Anza Settlement. (Dkt. No. 5691, Preszler Decl. ¶ 11.) Participation in the Anza Settlement process is not the largest single expenditure by the Watermaster. (*Id.* ¶ 12.) The Watermaster also spends time on other assignments in the Anza/Cahuilla Basins such as "1) requesting, receiving, and processing water use data from users in the basin, 2) requesting, receiving and processing water quality data in the basin, and 3) investigation of potential water quantity and quality threats to the basin." (*Id.* ¶ 13.) Moreover, the United States is a primary participant in the Anza Settlement process representing the Cahuilla Band of Indians and the Ramona Band of Cahuilla Indians as the Tribe's federal trustee. (Id. ¶ 7.)

After careful review of the Modified Final Judgment and Decree, the Order for the Appointment of a Steering Committee, and the Order for the Appointment of a Watermaster, the Court concludes that the Court's jurisdiction covers the entire Santa Margarita River Watershed, (Dkt. No. 4768 at 14), the Watermaster's duties also cover the entire Santa Margarita River Watershed, (Dkt. No. 4809), and the Steering Committee members consist of substantial water users within the Santa Margarita Watershed, and their purpose is to assist the Court and facilitate litigation, (Dkt. No. 4805).

From the outset, it was the purpose of the Steering Committee members, as substantial water users, to bear the costs and fees of the Watermaster despite the existence of thousands of parties in the case that would not contribute to these costs and fees. Contrary to the Objector's argument, no prior court orders specify that the Watermaster's work would be limited to the Steering Committee's "service areas." (See Dkt. No. 5667 at 7 ("Rancho does not believe the intent of the original Order was to have the existing members continue to fund on-going extensive efforts outside of their service areas.")). The Objectors' proposal to parcel out the Watermaster's work on the Anza Settlement would set a precedent that would be

difficult to implement and manage. Any work by the Watermaster conducted outside the Steering Committee's members' geographic purview would be subject to challenge and does not align with the purpose of the Steering Committee.

However, the Court recognizes the Objectors' concern. At the hearing, EMWD additionally argued that a one-time or small ongoing assessment should be imposed throughout the basin so that the Steering Committee members are not bearing all of the Watermaster's costs. (Dkt. No. 5696 at 14-16.) In considering the equities of a potential assessment, the Court notes that Steering Committee members are the "substantial water users" in the Watershed. (Dkt. No. 5665-1 at 71; see also Dkt. No. 5665-3, App'x B at 17-44.) In fact, in order to be a Steering Committee member, the member must be a "substantial water user." (Dkt. No. 4805 at 1.) Substantial water users are those who "irrigate eight or more acres or who produce or use an equivalent quantity of water." (Dkt. No. 5665-1 at 29, 71; see also Dkt. No. 4814 at 9 ("minimum acreage irrigated by a substantial water user is eight acres").) In the Annual WM Report, the Objectors' annual production and use of water in 2017 ranged from the thousands to ten thousands acre feet, (Dkt. No. 5665-3, App'x B at 17-44), while Cahuilla Band's estimated annual water use, in 2016-17, was around 18 or 63 acre feet per year[3], (Dkt. No. 5665-1 at 91), and Ramona Band's production of water was 1.49 acre feet in 2016-17, (id. at 92). Therefore, the Tribes' water usage and production pale in comparison to the Objectors' use and production of water. Therefore, if an assessment were imposed, the Steering Committee members would significantly bear more of the Watermaster's costs than the Tribes, as non-substantial water users. Therefore, the $8,571.43 for each individual entity of the Steering Committee to pay for the Watermaster's costs for the year 2018-19 is not burdensome or unfair.

---

[3] The Annual WM Report notes that domestic water use on the Cahuilla Indian Reservation is not measured. (Dkt. No. 5665-1 at 91.)

Moreover, as argued by the Tribes, there is overlap between work conducted with the Anza Settlement and the other basins making it difficult to parcel out costs. For example, Ramona Band's $600,000 grant to allow USGS to undertake the first phase of the massive groundwater study for the Anza and Cahuilla groundwater basins will provide hydrologic information indispensable for the Watermaster's ability to administer and enforce IJ Nos. 41, and 33. (Dkt. No. 5690-1, Berkey Decl. ¶ 6.) Furthermore, contrary to the Objections that no Steering Committee members have any rights or interests in the Anza basin, the United States is a Steering Committee member that acts as a trustee to the Tribes and has an interest in the Anza Settlement. Finally, the success of the Anza Settlement Proceeding would provide an overall benefit to the entire Santa Margarita River Watershed. Litigating the Tribes' water rights would have, whether directly or indirectly, affected all users in the Watershed. At this time, the Court does not find good reason to assess the Tribes for the Watermaster's work in the Anza Settlement Proceeding.

**Conclusion**

Based on the above, the Court OVERRULES the Objections and APPROVES the Annual Watermaster Report for Water Year 2016-17.

IT IS SO ORDERED.

Dated: May 21, 2019

Hon. Gonzalo P. Curiel
United States District Judge