LESTER J. MARSTON
California State Bar No. 081030
RAPPORT AND MARSTON
405 West Perkins Street
Ukiah, California 95482
Telephone: 707-462-6846
Facsimile: 707-462-4235
Email: marston1@pacbell.net

*Attorney for Plaintiff-Intervenor*
*Cahuilla Band of Indians*

CURTIS G. BERKEY
California State Bar No. 195485
BERKEY WILLIAMS LLP
2030 Addison Street, Suite 410
Berkeley, California 94704
Telephone: 510-548-7070
Facsimile: 510-548-7080
Email: cberkey@berkeywilliams.com

*Attorney for Plaintiff-Intervenor*
*Ramona Band of Cahuilla*

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>CAHUILLA BAND OF INDIANS,<br><br>    Plaintiff-Intervenor,<br><br>RAMONA BAND OF CAHUILLA,<br><br>    Plaintiff-Intervenor,<br><br>v.<br><br>FALLBROOK PUBLIC UTILTIY DISTRICT, *et al.*,<br><br>    Defendants. | Case No. 51-CV-01247-GPC-RBB<br><br>**JOINT MOTION TO EXTEND STAY**<br><br>Date: To Be Determined<br>Time: To Be Determined<br>Dept.: 9<br>Before the Honorable Gonzalo P. Curiel<br><br>**ORAL ARGUMENT NOT REQUIRED** |

Plaintiff-Intervenors the Cahuilla Band of Indians ("Cahuilla Band") and the Ramona Band of Cahuilla ("Ramona Band") (together, the "Tribes") respectfully move this Court for a 180-day extension of the stay of litigation until January 6, 2020. Under this Court's Order of January 17, 2019 (Docket No. 5672), the current stay will expire on July 9, 2019. Counsel for the Tribes is authorized to state that the United States of America, State of California, County of Riverside, Riverside County Flood Control and Water Conservation District, the Represented Landowner Group, Greenwald Estate, Hemet Unified School District, and Agri-Empire do not oppose the Tribes' request to extend the stay for 180 days. The Watermaster supports extension of the stay. U.S. Magistrate Judge Ruben Brooks, who is overseeing the settlement negotiations, has also advised the parties that the Tribes may represent to the Court that he too supports an extension of the stay.

As previously reported, the Cahuilla Band has proposed settling the case by constructing a water project that would import water into the Anza/Cahuilla Basins to ensure that there is enough water available to meet the reasonable needs of all parties. Towards that end, the parties have drafted two settlement agreements. The two settlement agreements are identical in form and content apart from one difference: one agreement includes a land acquisition and economic development activity that allocates revenue generated therefrom to pay for the costs of the water project operated by and for the benefit of the Cahuilla Band, and the other agreement does not include the land acquisition and economic development activity. The settlement parties have drafted the two settlement agreements, and have reached agreement in principle on one of them. The parties are now focused on revising the language of that settlement agreement to reflect the agreement that has been reached.

Since the last stay extension was granted on January 17, 2019, the settlement parties have intensified their efforts to conclude a settlement agreement and those efforts have resulted in an agreement in principle. The settlement parties have convened in-person or telephonically 19 times since the granting of the most recent stay extension.

Since the last stay extension, the settlement parties have taken action or discussed outstanding issues on the following dates:

| TABLE 1 |||
|---|---|---|
| **No.** | **Date** | **Action Taken** |
| 1. | February 13, 2019 | The parties held an in-person negotiation session. |
| 2. | February 20, 2019 | A telephonic attorneys-only settlement conference before U.S. Magistrate Judge Brooks was held to review settlement progress and to identify any outstanding issues to be resolved. |
| 3. | February 27, 2019 | A telephonic attorneys-only conference call was held to discuss the draft settlement agreements. |
| 4. | March 11, 2019 | An in-person meeting between the Cahuilla Tribe; Tribal Advisor, Office of Governor Gavin Newsom; Tribal Negotiations Advisor, Office of Governor Gavin Newsom; Chief Deputy Cabinet Secretary for Executive Branch Operations, Office of Governor Gavin Newsom; City Manager; City Staff; and City Attorney was held to present the settlement agreement/projects and to seek gubernatorial approval of the settlement agreement/projects. |
| 5. | March 15, 2019 | The parties held an in-person negotiation session. |
| 6. | March 28, 2019 | The parties held an in-person negotiation session. |
| 7. | March 29, 2019 | The parties held an in-person negotiation session. |
| 8. | April 8, 2019 | The parties held a conference call to discuss the draft settlement agreements. |
| 9. | April 10, 2019 | A telephonic attorneys-only settlement conference before U.S. Magistrate Judge Brooks was held to review settlement progress and to identify any outstanding issues to be resolved. |
| 10. | April 24, 2019 | The parties held a conference call to discuss an agenda for the in-person negotiation session scheduled for April 29, 2019 and April 30, 2019. |
| 11. | April 29, 2019 | The parties held an in-person negotiation session. |
| 12. | April 30, 2019 | The parties held an in-person negotiation session. |
| 13. | May 15, 2019 | A telephonic attorneys-only settlement conference before U.S. Magistrate Judge Brooks was held to review settlement progress and to identify any outstanding issues to be resolved. |
| 14. | May 17, 2019 | A telephonic attorneys-only conference call was held to |

| | | |
|---|---|---|
| | | discuss the draft settlement agreements. |
| **15.** | May 22, 2019 | The parties held an in-person negotiation session. |
| **16.** | May 22, 2019 | An in-person attorneys-only settlement conference before U.S. Magistrate Judge Brooks was held to review settlement progress and to identify any outstanding issues to be resolved. |
| **17.** | June 14, 2019 | The parties held a conference call to discuss the draft settlement agreements. |
| **18.** | June 18, 2019 | The parties held an in-person negotiation session. |
| **19.** | June 18, 2019 | A telephonic attorneys-only settlement conference before U.S. Magistrate Judge Brooks was held to review settlement progress and to identify any outstanding issues to be resolved. |
| **20.** | June 28, 2019 | The parties held a conference call to discuss the draft settlement agreements. |

In addition, counsel for the parties have also conducted teleconferences as necessary outside the larger group meetings to continue progress toward resolving outstanding issues. The parties also continue to correspond by email on a weekly or bi-weekly basis.

Since the last stay extension, the settlement parties have reached consensus on all of the issues required to finalize a settlement agreement that allocates water to the parties while maintaining the groundwater basins on a sustainable basis. The next step is to capture that consensus in the settlement agreement itself, and the settlement parties are in the process of drafting or revising the provisions of the settlement agreement to reflect that consensus.

**A.    Settlement Progress; February 2019**

As set forth in Table 1 above, the settlement parties convened twice telephonically and met for one day of in-person negotiations in February of 2019. During this period, the settlement parties explored alternatives for monitoring water use without the requirement of installing meters on every well, due to concerns expressed by the Represented Landowner Group about this approach. The settlement parties also discussed other unresolved issues in the settlement agreements, including: the development of a reliable and economical method by which the basins could be

maintained and managed on a sustainable basis; whether resetting the Safe Yield every ten years is necessary to meet sustainability goals; whether metering all wells is necessary to obtain accurate information to manage the basins on a sustainable basis; and the development of a fair process for the reduction of the parties' water usage during drought conditions or times of water shortage in order to meet sustainability goals.

### B. Settlement Progress; March 2019

As set forth in Table 1 above, in March the settlement parties met for three days of in-person negotiations and the Cahuilla Band, in addition, attended one in-person meeting between staff members of the Office of Governor, Gavin Newsom, and City of Norco to present the economic development settlement agreement and projects and to seek gubernatorial approval of the economic development settlement agreement and projects.

At a telephonic attorneys-only settlement conference, on March 15, 2019, the parties discussed a methodology for maintaining the basins on a sustainable basis by using monitoring wells and data collected from the wells to annually measure changes, if any, in basin groundwater levels. The settlement parties agreed that this methodology could obviate the need for a redetermination of Safe Yield every ten years, and agreed to further consider this alternative. Also, rather than order percentage reductions in all water use by the parties, the settlement parties agreed to consider reductions in water use by type of use, under phased reductions that would increase in scale if water levels did not successfully recover.

Under this approach, the Watermaster and Technical Committee would identify existing wells installed in the alluvium to be used as a network of monitoring wells. Based on data obtained from the monitoring wells, as well as groundwater basin studies, the Watermaster and Technical Committee would then establish acceptable well levels at which the basins could be maintained on a sustainable basis. If the monitoring well levels fell below the acceptable well level and the Watermaster determined that the drop

placed the basins at risk, under this framework, phased reductions would aim to restore water levels to a level at which the basins could be maintained on a sustainable basis.

Consistent with the topics discussed during the March 15, 2019 telephonic attorneys-only settlement conference, the Tribes drafted revisions to the draft settlement agreement for circulation and discussion at the parties' in-person negotiation sessions scheduled for March 28 and 29, 2019. There, the parties reviewed the revisions and determined that additional revisions to those provisions as well as others needed to be prepared.

The settlement parties compiled a list of tasks that needed to be completed in order to finalize the settlement agreements. Those tasks included, but were not limited to, the following:

1. The Cahuilla and Ramona Tribes agreed to draft and circulate for review and comment the revised sustainable management tool discussed at the March 28 and 29 negotiation sessions, as well as enforcement measures.

2. The Anza Landowners Group agreed to prepare and circulate for review and comment revisions to sections 7 and 8 of the settlement agreement that deal with the transferability of current and future water rights for certain represented settlement parties.

3. The State of California agreed to provide the settlement parties with exemplars of sustainable ground water management plans used in other basins in California.

4. The settlement parties agreed to continue the preparation of exhibits to the settlement agreement, including having an expert prepare a new map delineating the boundaries of the alluvium that is the subject of the litigation.

5. The settlement parties agreed that the parties' hydrologists would review the sustainability section of the settlement agreement to determine whether the model that is being proposed is feasible and workable, and the

    Watermaster agreed to convene a telephonic meeting to reach consensus among the consultants about the viability of this approach and any changes that may be necessary.

6.  The Represented Landowners Group agreed to meet with Riverside County to explore the possibility of financial assistance to defray the landowners' share of the cost of purchasing a seat on the Steering Committee as a means to cover the Watermaster's costs.

Since that time, the parties have completed (or substantially completed) all of the tasks identified above.

### C. Settlement Progress; April 2019

As set forth in Table 1 above, in April the settlement parties convened three times telephonically and met for two days of in-person negotiations. To prepare for the in-person meetings, the parties circulated draft provisions intended to be included in the Watermaster Rules and Regulations, including: Violations and Enforcement Provisions; a Ground Water Basin Management Program; and an Emergency Water Use Priority Scheme. The parties reviewed and circulated comments on those drafts and, on April 24, 2019, the parties convened telephonically for an initial discussion of the drafts and to set the agenda for in-person negotiation sessions scheduled for April 29 and 30, 2019.[1]

At the in-person negotiation sessions, the settlement parties received a report from the Watermaster and Timothy Ross, Senior Scientist, California Department of Water Resources concerning the results of the Technical Committee's meeting regarding the outstanding technical and resource protection issues. The report informed the settlement parties that, in order to maintain the basins on a sustainable basis during emergency conditions by triggering staged cutbacks in permitted use based on the status of the basins, the basins would need to be divided into between two and five

---

[1] On April 4, 2019, the Represented Landowner Group also circulated its latest draft versions of sections 7 and 8 of the settlement agreement.

management zones. Management of the basins in zones was determined to be necessary because the basins react differently in different areas and, therefore, cutbacks in one part of the basin would not necessarily have an effect on other parts of the basins. The parties then discussed, through inquiry and consultation with the Watermaster and Timothy Ross, what factors ought to be used to design/designate the zones in order to ensure that staged cutbacks during emergency conditions can be directed at particular/individualized zones in order to best manage the health of the basins.

The parties, the Watermaster and Timothy Ross also discussed the status of the current wells and the reliability of information regarding the current status of the basins. The parties reached consensus that the construction of new monitoring wells is not currently necessary and that, instead, the parties can request a sufficient number of private well owners to allow the parties to gather data from those existing wells.

The parties next discussed the sustainable management approach whereby the basins are managed though use of an Emergency Water Use Priority Scheme. The parties deliberated, through consultation with the Watermaster, Timothy Ross, and their technical consultants regarding the number of stages that should be used to ensure the sustainability of the basins and the cutbacks that should be imposed within those stages. The parties discussed how the stages should be designed in light of the new information regarding the need to divide the basins into management zones. Based on these negotiations, the parties concluded that the Ramona Band would draft modifications to the Emergency Water Use Priority Scheme that reflected the negotiations held on April 29th and the new information regarding managing the basins in zones.

At the second day of in-person meetings, the parties discussed methods to incentivize metering, whether particular water reduction targets should be included in each emergency stage, the Violations and Enforcement Provisions of the Watermaster Rules and Regulations, the types of penalties the Watermaster should have the power to impose on violators of the Emergency Water Use Priority Scheme, how the scale of the violation should be addressed in relation to whether the landowner has previously

committed a violation, and what involvement the Court should have in the scheme. The Ramona Band agreed to draft revisions to the Violations and Enforcement Provisions to reflect the consensus reached through these negotiations. Finally, the parties also discussed the proposed Watermaster budget and how to fund it.

At the April 29 and 30, 2019 in-person negotiation sessions, the parties updated their list of tasks that needed to be completed in order to finalize the settlement agreement. Those tasks included, but were not limited to, the following:

1. The Ramona Band agreed to draft and circulate for review and comment a revised draft of the Emergency Water Use Priority Scheme to reflect the progress made at the April 29 and 30, 2019 in-person negotiation session.

2. The Ramona Band agreed to draft and circulate for review and comment a revised draft of the Violations and Enforcement Provisions to reflect the progress made at the April 29 and 30, 2019 in-person negotiation session.

3. The Cahuilla Band agreed to draft and circulate for review and comment a new "agricultural equity" plan for certain parts of the basin.

Since that time, the Tribes have completed all of the tasks identified above.

**D.     Settlement Progress; May 2019**

As set forth in Table 1 above, in May the settlement parties convened three times telephonically and met for two days of in-person negotiation sessions. . During this period, the parties continued to discuss the methods by which the Watermaster would order water use reductions.  The parties drafted and circulated revised drafts of the Sustainable Groundwater Plan and the Watermaster Rules and Regulations that address the Watermaster's powers, accounting rules, well construction, and establishment of recharge areas and methods. On May 22, 2019, the parties also circulated a number of new proposals regarding the transferability of water rights, a key issue to resolve in order to reach agreement.

### E. Settlement Progress; June 2019

As set forth in Table 1 above, in June the settlement parties convened three times telephonically and met for one in-person negotiation session. During this period, the parties reached agreement on the terms of the Sustainable Groundwater Plan and worked to update the Watermaster Rules and Regulations to make them consistent with the sustainability plan. The parties also continued discussions regarding the transferability of water rights. Additionally, the parties, with the assistance of U.S. Magistrate Judge Brooks, developed a plan to garner support for the draft of the settlement agreement that includes an economic development project designed to pay for the Watermaster's costs. Finally, the parties compiled an updated list of exhibits to the settlement agreement that remain outstanding and decided who would prepare some of those exhibits.

At the June 28, 2019 telephonic conference, the parties resolved the last remaining issues in dispute. The parties tentatively agreed that the Represented Landowners Group proposal for paying its proportion share of the Watermaster's costs to implement the settlement was a potentially viable proposal. The Ramona Band and Cahuilla Band approved the Represented Landowners Group proposal regarding the severance and transferability of the Landowners water right with one minor exception. The Represented Landowners agreed with the Tribes' proposal for the funding of their costs for the Watermaster's work in implementing the settlement agreement and final decree. The Represented Landowners, Riverside County, the Watermaster and Ramona Band also agreed to provide the Cahuilla Band with appropriate letters/resolutions supporting the economic development settlement agreement that could be presented to the Governor for his consideration.

At the conclusion of the call, the Ramona Band agreed to draft a new provision setting forth how the parties' settlement costs would be paid. The Cahuilla Band agreed to draft a revised economic development settlement agreement. The parties agreed to

circulate these drafts among the parties for review and comment and agreed to meet in person on July 26, 2019, in San Diego.

### F. Planned Settlement Progress

The settlement parties plan to take action or discuss outstanding settlement issues on the following dates:

| | TABLE 2 | |
|---|---|---|
| **No.** | **Date** | **Planned Action To Be Taken** |
| 1. | July 9, 2019 | The Ramona Band and State of California will circulate the Draft Watermaster Rules and Regulations to the Cahuilla Band and Watermaster for their review and comment. |
| 2. | July 19, 2019 | Draft Watermaster Rules and Regulations will be circulated to the settlement group for review and comment. A revised Settlement Agreement will be circulated to the settlement parties for review and comment. |
| 3. | July 26, 2019 | The parties will hold an in-person negotiation session. |
| 4. | July 26, 2019 | Telephonic settlement conference with U.S. Magistrate Judge Brooks at 9 a.m. |

The settlement parties have compiled a list of future tasks that need to be completed in order to finalize the settlement agreements, which include, but are not limited to: (1) revision of the Draft Watermaster Rules and Regulations to incorporate the sustainability plan; (2) identification of tools to be provided to Watermaster in order to implement the sustainability plan; (3) finalizing the language of the settlement agreement; (4) submitting the settlement agreement to the Department of the Interior for review and (5) drafting the legislation for consideration by Congress.

The settlement parties are committed to continuing these discussions. A 180-day extension of the stay will permit them to continue settlement efforts without the cost or distraction of litigation. The settlement parties believe a longer period of stay will facilitate progress toward a resolution of the outstanding issues.

For these reasons, the Ramona Band of Cahuilla and the Cahuilla Band of Indians respectfully request that the stay of litigation be extended to January 6, 2020.

1 | Dated: July 2, 2019                      Respectfully Submitted,

RAPPORT AND MARSTON

By:   */s/ Lester J. Marston*
       LESTER J. MARSTON
       Attorney for Plaintiff-Intervenor,
       Cahuilla Band of Indians

BERKEY WILLIAMS LLP

By:   */s/ Curtis G. Berkey*
       CURTIS G. BERKEY
       Attorney for Plaintiff-Intervenor,
       Ramona Band of Cahuilla

# CERTIFICATE/PROOF OF SERVICE

I am a citizen of the United States of America, over the age of 18 years, and not a party to the above-entitled action. My business address is 405 West Perkins Street, Ukiah, CA 95482.

On July 2, 2019, I electronically filed on behalf of the Cahuilla Band of Indians the following document in *United States of America, et al. v. Fallbrook Public Utility District, et al.*, Case No. 51-cv-1247-GPC-RBB:

### JOINT MOTION TO EXTEND STAY

by using the CM/ECF system, which generated and transmitted a notice of electronic filing to the following CM/ECF registrants:

B. Tilden Kim: tkim@rwglaw.com; lpomatto@rwglaw.com
Bill J. Kuenziger: bkuenziger@bdasports.com; rjones@bhsmck.com
Bryan D. Sampson: bsampson@sampsonlaw.net; b.sampson3@cox.net; mfickel@sampsonlaw.net; psampson@sampsonlaw.net
Charles W. Binder: courtdocs@smrwm.org
Curtis G. Berkey: cberkey@berkeywilliams.com; mmorales@berkeywilliams.com
Daniel J. Goulding: dgoulding@qualityloan.com; jmolteni@qualityloan.com; srogato@qualityloan.com
David Leventhal: davelevlaw@yahoo.com
David Philip Colella: dcolella@flsd.com
Donald R. Timms: dontimms@san.rr.com
F. Patrick Barry: patrick.barry@usdoj.gov
George Chakmakis: george@chakmakislaw.com
Gerald (Jerry) Blank: gblank@san.rr.com; mary@geraldblank.sdcoxmail.com
Grant Alan Reader: garlaw71@gmail.com
Harry Campbell Carpelan: hcarpelan@redwinesherrill.com
Herbert W. Kuehne, Marlene C. Kuehne: hwkuehne@pacbell.net
James B. Gilpin: james.gilpin@bbklaw.com; lisa.grennon@bbklaw.com; marta.stasik@bbklaw.com
James Michael Powell: jpowellesq@gmail.com; info@mydebtorlaw.com
John A. Karaczynski: jkaraczynski@akingump.com; dpongrace@akingump.com; jfukai@akingump.com
John Christopher Lemmo: jl@procopio.com; laj@procopio.com
Jonathan M. Deer: jdeer@taflaw.net; gsuchniak@taflaw.net; jondeeresq@earthlink.net
Joseph Anthony Vanderhorst: jvanderhorst@mwdh2o.com; gosorio@mwdh2o.com
Kevin Patrick Sullivan: ksullivan@sanlawyers.com; kstanis@sanlawyers.com
Thomas Caldwell; Linda Caldwell: goforthvillage2@yahoo.com
Marco Antonio Gonzalez: marco@coastlawgroup.com; sara@coastlawgroup.com
Marilyn H. Levin: marilyn.levin@doj.ca.gov; MichaelW.Hughes@doj.ca.gov
Mary L. Fickel: mfickel@fickeldavislaw.com; rdavis@fickeldavislaw.com
Matthew L. Green: matthew.green@bbklaw.com; lisa.atwood@bbklaw.com
Michael Duane Davis: michael.davis@greshamsavage.com; terigallagher@greshamsavage.com
Michele A. Staples: mstaples@jdtplaw.com; dtankersley@jdtplaw.com; pgosney@jdtplaw.com
Patricia Grace Rosenberg: prosenberg@hnattorneys.com
Paul Greenwald: pegreenwald@peglaw.us

Richard Alvin Lewis: Rlewis@RichardLewis.com
Robert H. James: bob@fallbrooklawoffice.com; deborah@fallbrooklawoffice.com
Robert K. Edmunds: robert.edmunds@bipc.com; lisa.largent@bipc.com
Robert M. Cohen: rcohen@cohenburgelaw.com; vzareba@cohenburgelaw.com; wwendelstein@cohenburgelaw.com
Steve Michael Bodmer: sbodmer@pechanga-nsn.gov
Thomas C. Stahl: Thomas.Stahl@usdoj.gov; Ginger.Stacey@usdog.gov; efile.dkt.civ@usdoj.gov; sandra.huston@usdoj.gov
Timothy P. Johnson: tjohnson@johnson-chambers.com; cww@johnson-chambers.com
William K. Koska: wkoska@koskalaw.com; alice.ross@clmlawfirm.com; bill.koska@clmlawfinn.com

I further certify that on July 2, 2019, I caused to be served the following documents:

**JOINT MOTION TO EXTEND STAY**

by depositing a copy in the United States mail at Ukiah, California, in an envelope with first class postage fully paid, addressed as follows:

| | | |
|---|---|---|
| Khyber Courchesne<br>1264 Page Street<br>San Francisco, CA 94117 | Edward Lueras<br>623 Beverly Blvd.<br>Fullerton, CA 96833 | Briar McTaggart<br>1642 Merion Way, 40E<br>Seal Beach, CA 90740 |
| Carolyn Ellison<br>49975 Indian Rock<br>Aguanga, CA 92536 | Carol Lueras<br>623 Beverly Blvd.<br>Fullerton, CA 96833 | Barbara Cole<br>40225 Curry Court<br>Aguanga, CA 92536 |
| John Ellison<br>49975 Indian Rock<br>Aguanga, CA 92536 | Michael J. Machado<br>P.O. Box 391607<br>Anza, CA 92539 | Thomas C. Perkins<br>7037 Gaskin Place<br>Riverside, CA 92506 |
| Carl Gage<br>40685 Tumbleweed Trail<br>Aguanga, CA 92536 | Pamela M. Machado<br>P.O. Box 391607<br>Anza, CA 92539 | John S. Wilson<br>14205 Minorca Cove<br>Del Mar, CA 92014-2932 |
| Donna Gage<br>40685 Tumbleweed Trail<br>Aguanga, CA 92536 | Diane Mannschreck<br>1600 Kiowa Ave.<br>Lake Havasu City, AZ 86403 | Peggy Wilson<br>14205 Minorca Cove<br>Del Mar, CA 92014-2932 |
| Anna Gale James<br>40275 Curry Court<br>Aguanga, CA 92536 | Robert Mannschreck<br>1600 Kiowa Ave.<br>Lake Havasu City, AZ 86403 | Archie D. McPhee<br>40482 Gavilan Mountain R<br>Fallbrook, CA 92028 |
| Mary E. Lee<br>42010 Rolling Hills Drive<br>Aguanga, CA 92536 | James L. Markman<br>Richards, Watson & Gershon<br>1 Civic Center Circle<br>P.O. Box 1059<br>Brea, CA 92822-1059 | Robyn M. Garrison<br>ERA Excel Realty<br>56070 Highway 371<br>Anza, CA 92539 |
| Cindy L. Barker<br>37060 Bonita Vista Rd.<br>Anza, CA 92539 | | |

1 | Greg Burnett
The Burnett Group
2 | P.O. Box 391111
Anza, CA 92539
3

4 |     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct; executed on July 2, 2019, at Ukiah, California.

5 |                                                              /s/ Ericka Duncan